UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | * | MDL NO. 2592 |
| | * | SECTION L |
| THIS DOCUMENT RELATES TO: ALL CASES | * | |
| | * | JUDGE ELDON E. FALLON |
| | * | |
| | * | MAG. JUDGE NORTH |
| ********************************************* | * | |

### APPLICATION OF MICHAEL A. LONDON FOR APPOINTMENT TO PLAINTIFFS' STEERING COMMITTEE IN ROLE OF A CO-LEAD OR LEADERSHIP COUNSEL

I respectfully submit this Application to serve in a leadership role and/or member of the Plaintiffs' Executive Committee ("PEC") of the Plaintiffs' Steering Committee ("PSC") for Multi-District Litigation ("MDL") No. 2592, in accordance with Pretrial Order ("PTO") No. 1, or in such other role as the Court deems appropriate and warranted.

1. I, Michael A. London, was born in New York, New York, and am one of the founding partners of the law firm Douglas & London, P.C., located in downtown New York City.[1]

2. In evaluating applications for leadership and inclusion on the PSC, and insomuch as the Court is essentially tasked with building a law firm of lawyers from different law firms, scattered across the country, and with different skill sets to prosecute this case as one unit or one steering committee, there are a few areas that I submit warrant highlighting within my application.

3. First, I have served on 15 court-appointed PSC's. Of these appointments, eight (8) were in heightened leadership roles. As set forth in more detail below, these PSC leadership roles were in some of the largest mass torts in recent years, and all of which resolved within 37 months or less. To this end, I believe that it is an important criterion that the Court not just see who served on a PSC here or there in the past, or had members of their firm serve on a PSC here or there, but that applicants have actual and significant experience and had successful outcomes; this factor should, respectfully, be a cornerstone for both PSC and/or PEC leadership appointment. Second, and in conjunction with this former point, I served as co-lead counsel for In re: Pradaxa (Dabigatran Etexilate) Products Liability Litigation, MDL-2385 (where one of my partners was serving as lead trial counsel in the first case set for trial and where, in addition to my role and duties as co-lead counsel, I personally served as one of two primary negotiators for the global settlement), which as discussed below, has significant relevance for the Xarelto litigation.

---

[1] I obtained my Bachelor of Arts degree from the University of Miami in Coral Gables, Florida, and my Juris Doctor degree from Brooklyn Law School in Brooklyn, New York. I am admitted and licensed to practice law in the States of New York and New Jersey, as well as in the U.S.D.C. for the Eastern District, Southern District, and Western District of New York, as well as the District of New Jersey. I am also admitted to practice in the Court of Federal Claims in Washington, D.C. Since obtaining my law degree, I have devoted my entire career to representing consumers and injury victims, primarily in mass tort settings. Formerly a partner at another national plaintiffs' law firm, my practice area in the law has *always* focused on, and continues to focus on, products liability and complex litigation with an emphasis in pharmaceutical litigation.

As it pertains to the litigation at bar, I do not think anyone would dispute that my firm was one of the earliest firms involved in litigation surrounding Xarelto, and we have been actively representing Xarelto clients for nearly one year. Currently, we represent almost 600 clients alleging injuries caused by the ingestion of Xarelto. Simply put, and while detailed more below, it is for these reasons that I submit this application for a leadership position on the Court's PSC in this matter.

4.      Indeed, the applicability of the Pradaxa case (and our role in it) is highly relevant to this MDL case. It is widely recognized that the science with respect to Xarelto and Pradaxa, two of the four new oral anticoagulants on the market since 2010 that are intended to replace warfarin, is similar if not nearly identical.[2] In Pradaxa, our firm, with your undersigned as co-lead counsel and firm partner Gary Douglas, Esq. (with our associate Lara Say, Esq.) as co-chair of the Science Committee, conducted over a dozen science and liability depositions as lead or co-lead examiner as well as playing a central role in spearheading and developing the expert theories and liability themes.[3]  These facts, respectfully, render us uniquely qualified to help take on the challenges in the Xarelto litigation. Moreover, we are already well into developing the Xarelto case, having retained important indispensable experts.

 5.      As noted above, I have been appointed to, and have served in, leadership roles on eight (8) PSC's in some of the largest national mass tort and complex litigations in recent years:[4]  *Vice-Chairman of PSC* – In re: Zyprexa Products Liability Litigation, MDL-1596, before the Hon. Jack B. Weinstein in the U.S.D.C. for the Eastern District of New York (status: resolved under two years, $690 million settlement of approximately 8,000 claims); *Liaison Counsel and PEC Member* – In re: Ortho Evra Products Liability Litigation, MDL-1742, before the Hon. David S. Katz in the U.S.D.C. for the Northern District of Ohio (status: resolved in under two years, individual confidential settlements of approximately 3,000 claims in federal and state courts); *Co-Lead Counsel of PSC* – In re: Yasmin and Yaz (Drospirenone) Marketing Sales Practices and Products Liability Litigation, MDL-2100, pending before the Hon. David R. Herndon

---

[2]  See Cohen, D. Dabigatran: how the drug company withheld important analyses. BMJ 2014;349:g4670; Douxfils, J. et al.; ten Cate, H. New oral anticoagulants: discussion on monitoring and adherence should start now! Thrombosis Journal 2013, 11:8; Non-VKA Oral Anticoagulants or NOACs:  Accurate measurement of plasma drug concentrations. BioMed Research International, Article ID 345138.

[3]  Some of the theories in Pradaxa, which are based on the high variability of the drug, are identical to the underlying theories for Xarelto in that it is alleged that both drugs require some degree of testing to determine if the patient is receiving the correct dose, and yet, both drugs were heavily marketed as not needing this monitoring or testing.

[4]   I have also been asked to serve and have been formally appointed to sit on PSC's (without elevated roles as lead or liaison counsel) in the following cases: In re: Kugel Mesh Hernia Patch Products Liability Litigation, MDL-1842, before the Hon. Mary M. Lisi in the U.S.D.C. of Rhode Island (status: resolved); In re: Heparin Products Liability Litigation, MDL-1953, before the Hon. James G. Carr in the U.S.D.C. for the Northern District of Ohio (status: resolved);  In re: Imagitas Inc. Drivers' Privacy Protection Act Litigation, MDL-1828, before the Hon. Timothy J. Corrigan in the U.S.D.C. for the Middle District of Florida (status: resolved); In re: Light Cigarettes Marketing and Sales Practices Litigation, MDL-2068, before the Hon. John A. Woodcock, Jr. in the U.S.D.C. for the District of Maine (status: resolved); In re: Bextra/Celebrex Products Liability Litigation, before the Hon. Shirley Werner Kornreich in the Supreme Court of the State of New York, County of  New York (status: resolved); In re: Zimmer NexGen Knee Implant Products Liability Litigation, MDL-2272, before the Hon. Rebecca R. Pallmeyer in the U.S.D.C. for the Northern District of Illinois (status: active); In re: Denture Cream Products Liability Litigation, MDL-2051, before the Hon. Cecilia M. Altonaga in the U.S.D.C. for the Southern District of Florida (status: resolved); and  In re: DePuy Orthopaedics, Inc., ASR Hip Implant Products Liability Litigation, MDL-2197, before the Hon. David A. Katz in the U.S.D.C. for the Northern District of Ohio (status: resolved). Not only have I held the court-appointed PSC positions as set forth above, I have also been involved in other complex litigations in various committee roles, including serving on discovery committees, expert committees, law and briefing committees, and class action committees. I have also represented hundreds of women exposed, in utero, to the drug Diethylstilbestrol ("DES") in litigation pending before the Hon. Jack B. Weinstein. I also represented and continue to represent children and families who were victims of the medical device/procedure Chorionic Villi Sampling, as well as many other toxic and mass torts for which formal PSC's were not established.

in the U.S.D.C. for the Southern District of Illinois (status: over 90% of over 18,000 claims resolved through individual and mass semi-confidential settlements of claims in federal and state courts, with the defendants already paying close to $2 billion, within 27 months); *Co-Lead Counsel and Liaison Counsel for PSC* – In re: Bayer Corp. Combination Aspirin Products Marketing and Sales Practice Litigation, MDL-2023, before the Hon. Brian M. Cogan in the U.S.D.C. for the Eastern District of New York (status: resolved within 37 months, approval for class settlement of $15 million); *Co-Liaison Counsel for all Plaintiffs* – In re: Levaquin Litigation, centralized and consolidated litigation, which was before the Hon. Carol E. Higbee in the Superior Court of New Jersey, Atlantic County (status: resolved within three years, individual confidential settlements of hundreds of claims in federal and state courts); *Co-Lead Counsel of PSC* – Pradaxa, MDL-2385, before the Hon. David R. Herndon in the U.S.D.C. for the Southern District of Illinois (status: resolved in under two years, $650 million settlement of approximately 4,300 claims); *Co-Lead Counsel of PSC* – In re: E.I. du Pont de Nemours and Company C-8 Personal Injury Litigation, MDL-2433, before the Hon. Edmund A. Sargus, Jr., in the U.S.D.C. for the Southern District of Ohio (status: active); and *PEC Member* – In re: Testosterone Replacement Therapy Products Liability Litigation, MDL-2545, before the Hon. Matthew F. Kennelly in the U.S.D.C. for the Northern District of Illinois (status: active).

6. As noted above, and for which I am quite proud, in six (6) of the eight (8) national litigations where I have held these leadership appointments (*i.e.*, lead or liaison counsel), the resolutions were accomplished in the span of 18 to 37 months from when centralization occurred until announcement of settlement parameters.[5]

7. Furthermore, of significant relevance to my application here, the same defendants involved in this litigation, the Johnson & Johnson entities and Bayer, were also the defendants in four (4) of the six (6) successfully resolved litigations in which I served as lead or liaison counsel for the PSC. Simply put, I have long-standing working relationships with these defendants and their national counsel.

8. In addition to my roles as leadership counsel in successful MDL's, I have served as trial counsel in multiple tobacco trials, including the *first* successful verdict against the tobacco industry in the state of New York, where I and one of my law firm's partners, Mr. Douglas, secured a $20 million plus verdict for the widow of a former smoker. In addition to the tobacco trials, my firm has been involved in other significant and substantial trials both in New York State and nationally. Examples of such roles include: serving as co-trial counsel in the *first* Norplant products liability trial in the State of New York; Mr. Douglas receiving the *first* verdict against Chrysler in airbag litigation; Mr. Douglas and the firm being co-lead trial counsel in one of the first Ortho Evra cases set for trial; Mr. Douglas and the firm (along with the Levin Papantonio law firm) trying and winning the first Fosamax osteonecrosis of the jaw case in the country; Mr. Douglas and the firm being co-lead trial counsel in the first Yaz/Yasmin case set for trial in MDL-2100, which was stayed for global settlement discussions 11 days before trial; Mr. Douglas and the firm designated as lead trial counsel in the first Pradaxa trial case in MDL-2385, which was stayed due to a global settlement that was achieved; and the firm's other partner, Ms. Stephanie O'Connor, Esq., serving on the PEC and as Science Chairperson in In re: Actos (Pioglitazone) Products Liability Litigation, MDL-2299, pending in the U.S.D.C. of the Western District of Louisiana before the Hon. Rebecca Doherty, and

---

[5] Pertaining to the two most recent cases in which I was appointed to hold a leadership role, C-8, MDL-2433, is in its mid-stages. However, in just over one year since MDL centralization, we have the first four (4) trial dates, the first of which is less than nine (9) months away, we have completed the initial core bellwether case discovery work, and initial summary judgment briefing and initial decisions have been issued. In the Testosterone litigation, I serve on the PEC, and not as a co-lead. Because of my non-lead counsel duties in the case (and because there are already three (3) co-leads and a very large PEC), this litigation has not been a drain on my time, and thus I am confident that I have the time to devote to this litigation.

playing a pivotal role in the first MDL trial where the trial team secured a $9 billion verdict against those defendants.

9. In PTO No. 1, the Court set forth the primary requisite parameters for all applying counsel: (a) willingness and availability to commit to a time-consuming project; (b) ability to work cooperatively with others; (c) professional experience in this type of litigation; and (d) willingness to commit the necessary resources to pursue this matter. (*See* PTO No. 1, Para. 16).

10. Pursuant to the primary requisite parameters set forth by the Court, I submit the following: First, I am extremely interested in serving the Court in a leadership role on the PSC in this case, and I personally have the time to commit to serving in a leadership position on the PSC and/or on any PEC. My firm has been a leader in managing the Xarelto cases before the JPML transferred this litigation (having hosted meetings of plaintiffs' counsel and informally helping to coordinate the litigation for the past seven (7) plus months by and between plaintiffs' counsel).[6] Since centralization before this Court we have been working informally with Leonard Davis, Esq., and others who we believe will be seeking positions of both leadership and/or membership on the PSC. Second, I believe both my firm and I have demonstrated a strong ability to work cooperatively with others. This commitment is evidenced by my being asked to serve and appointed to leadership positions in jurisdictions across the country. Further, my firm has been asked to serve as trial counsel and to help with science and other issues in numerous different mass tort actions. Third, I submit that both my experience and that of my firm's is at the highest level in the area of pharmaceutical mass torts, and particularly with respect to the drug at issue here, Xarelto, as demonstrated by our extensive work in Pradaxa, our work to date over past seven (7) months regarding Xarelto and having nearly 600 clients. Fourth, our firm has the willingness to commit necessary resources. More specifically, we have both the financial resources and the people power (we currently intend to commit, at the very least, myself, my partner Mr. Douglas, and our associate, Ms. Say, to this project).

11. Lastly, I believe that it is important to underscore that our firm has an unwavering commitment both to this cause and case, as well as to our clients. As is hopefully clear from this application, our firm is not "new" to mass torts or significant products liability litigation. We appreciate what is at stake for all parties, as well as the tremendous time and investment by the Court. Our firm wants what is best for our clients, the Court, and ultimately the defendants. We understand how resolutions and compromises work in this type of case and how they can be achieved (which is through many different models or types of models).

12. In conclusion, I look forward to serving the Court in a leadership position on the PSC and/or on any PEC, and we look forward to working with the other gifted and talented lawyers and law firms who will bring their own unique contributions to this litigation as we build together a litigation-specific law firm to prosecute the case on behalf of our many clients and our common interests. I am available for an interview at the Court's convenience.

Dated: New York, New York
        January 26, 2015

/s/Michael A. London
Michael A. London

---

[6] Our firm has also made efforts at effectuating service of process under the Hague convention, as is required for certain non-U.S. defendants, and we have met-and-conferred with defendants' national counsel in advance of the JPML hearing.

## **CERTIFICATE OF SERVICE**

      I, Michael A. London, hereby certify that on January 26, 2015, a true and correct copy of the foregoing Application of Michael A. London for Appointment to Plaintiffs' Steering Committee in Role of a Co-Lead or Leadership Counsel was served via U.S. Mail on all counsel listed on Schedule B attached to Pretrial Order No. 1 and filed electronically via the Court's CM/ECF electronic filing system.

                                                        /s/Michael A. London
                                                        Michael A. London