

**USA-Serve**
*Nationwide Process Services*

Mickleton, NJ 08056
1-888-778-8721
www.usa-serve.com



ORDER#

DOCUMENT PRINTED
Monday, February 09, 2015

23022

JOSEPH O. COLE AND KAREN COLE

{Plaintiff}

VS.

JOHNSON & JOHNSON; JANSSEN PHARMACEUTICALS, INC.; JANSSEN RESEARCH & DEVELOPMENT, LLC, F/K/A JOHNSON & JOHNSON RESEARCH & DEVELOPMENT, LLC, ET AL.

{Defendant}

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NORTH CAROLINA**

**DOCKET #:**   2:15-CV-00010-FL

EASTERN DISTRICT OF LOUISIANA CASE # 15-539

# AFFIDAVIT OF SERVICE

**Person/Entity To Be Served (Name & Address):**
JANSSEN RESEARCH & DEVELOPMENT, LLC
C/O JOHNSON & JOHNSON
ONE JOHNSON AND JOHNSON PLAZA
NEW BRUNSWICK        NJ        08933

**Service Requested By:**
Hardison & Cochran, PLLC
4800 Six Forks Rd.
Ste. 220
Raleigh                          NC        27609

**File Number:**   218045-17775

| **Document(s):** | SUMMONS & COMPLAINT-JANSSEN R&D LLC | | |
|---|---|---|---|
| **Attempts:** | | | |

**Service Status:**   Served          **Date:**  Thursday, February 05, 2015          **Time:**   04:00 PM

Delivered a true copy to a person authorized to accept service on behalf of the company or agency.

**Name of person served and relationship/title:**

MS KIM GIGANTI
MANAGING AGENT

**Address Served:**   ONE JOHNSON AND JOHNSON PLAZA NEW BRUNSWICK NJ

**Witness/Statutory Fee Served:**

$0.00

**Description of person accepting service:**

| Sex: | Female | Age: | 51-60 | Height: | 5'4"-5'6" | Weight: | 160-170 | Race: | White | Hair Color: | Brown |
|---|---|---|---|---|---|---|---|---|---|---|---|

Other:

**Verification:**

SUBSCRIBED AND SWORN to before me, a notary public, the named authorized person who proved on the basis of satisfactory evidence to be the person who appeared before me and declared that the statements therein contained are true and correct

on this ____9th____ day of ___FEBRUARY___, 20_15_.

(x) _____

Notary Public Signature / Commission Expiration

DENISE LOWE
ID # 2428632
NOTARY PUBLIC
STATE OF NEW JERSEY
My Commission Expires April 15, 2018

**Authorized Person:**

I,  TASHA THOMAS                        , was at the time of service a competent adult of suitable age and discretion not having a direct interest in the litigation. I declare under penalty that the foregoing is true and correct.

BLUE INK HERE ONLY

(x) _____

TASHA THOMAS
USA-Serve, LLC.

2-9-15

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of North Carolina

| | |
|---|---|
| JOSEPH O. COLE and KAREN COLE ⟩<br>⟩<br>⟩<br>⟩<br>_____ ⟩<br>*Plaintiff(s)* ⟩<br>v. ⟩<br>⟩<br>JOHNSON & JOHNSON; JANSSEN ⟩<br>PHARMACEUTICALS, INC.; JANSSEN RESEARCH ⟩<br>& DEVELOPMENT, LLC, f/k/a JOHNSON & ⟩<br>JOHNSON RESEARCH&DEVELOPMENT,LLC,et al. ⟩<br>_____ ⟩<br>*Defendant(s)* ⟩ | Civil Action No. 2:15-cv-00010-FL |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* Janssen Research & Development LLC
c/o Johnson & Johnson
One Johnson & Johnson Plaza
New Brunswick, NJ 08933

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are: Karen Collins, Attorney
Hardison & Cochran, PLLC
4800 Six Forks Rd., Ste. 220
Raleigh, NC 27609

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

JULIE RICHARDS JOHNSTON
*CLERK OF COURT*

Date: 2/4/2015

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  2:15-cv-00010-FL

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .


I declare under penalty of perjury that this information is true.


Date: _____


_____
*Server's signature*


_____
*Printed name and title*


_____
*Server's address*

Additional information regarding attempted service, etc:

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT NORTH CAROLINA

_____
:
JOSEPH O. COLE and KAREN COLE, :
 :  **Civil Action No.:** 2:15-00010-FL
   Plaintiffs, :
 :  [This document relates to MDL 2529
v. :  in the Eastern District of Louisiana -
 :  In Re:  Xarelto (Rivaroxaban), Products
JOHNSON & JOHNSON; JANSSEN :  Liability Litigation – Section: L – Judge
PHARMACEUTICALS, INC.; JANSSEN :  Fallon – Magistrate Judge Shushan]
RESEARCH & DEVELOPMENT, LLC, f/k/a :
JOHNSON & JOHNSON RESEARCH & :
DEVELOPMENT, LLC; JANSSEN ORTHO, :
LLC; BAYER HEALTHCARE LLC; BAYER :
HEALTHCARE PHARMACEUTICALS, INC.; :
BAYER PHARMA AG; BAYER :
CORPORATION; BAYER HEALTHCARE AG; :
BAYER AG, :
 :
   Defendants. :
_____ :

## COMPLAINT AND DEMAND FOR JURY TRIAL

  Plaintiffs, by attorneys, Hardison & Cochran, PLLC, as and for the Complaint against

Defendants, allege, upon information and belief, the following:

## STATEMENT OF THE CASE

1. Plaintiff, Joseph O. Cole, is an individual who has consumed Defendants' medication,

  Xarelto® (also known as rivaroxaban – hereinafter, "Xarelto").

2. This is an action to recover damages for personal injuries sustained by Plaintiff, Joseph

  O. Cole, and derivative damages of his wife, Karen Cole, as the direct and proximate

result of the wrongful conduct of Defendants in connection with the designing,

developing, testing, manufacturing, marketing, labeling, advertising, promoting,

distributing, and selling of Xarelto.

## PARTIES, JURISDICTION AND VENUE

3.   At all relevant times Plaintiffs are citizens of and resided in Jackson, North Carolina.

4.   At all relevant times, Plaintiff Joseph O. Cole and Plaintiff Karen Cole were and are

husband and wife.

5.   Defendants, their agents or employees, were involved in the design, development, testing,

manufacture, marketing, labeling, advertising, promotion, distribution, and/or sale

Xarelto in the United States.

6.   At all relevant times, Defendants have substantial and continuing contact with the state of

North Carolina, and derive substantial revenue from goods used and consumed within the

State of North Carolina, and Defendants actively sell, market and promote Xarelto to

physicians and consumers in the State of North Carolina, and derive substantial revenue

from interstate commerce within the United States, including the State of North Carolina,

and Defendants expected or should have expected their acts to have consequences within

the United States, including in the State of North Carolina.

7.   Defendant Johnson & Johnson (hereinafter, "J&J") is a corporation organized and

existing pursuant to the laws of the State of New Jersey, with its principal place of

business located at One Johnson & Johnson Plaza, New Brunswick, New Jersey.

8.   Jurisdiction exists as against the Defendant J&J pursuant to 28 U.S.C. Section 1332, in

that the Plaintiffs are citizens and residents of the State of North Carolina, and upon

information and belief, Defendant J&J is a corporation organized and existing under the

laws of the State of New Jersey, with a principal place of business and address at One Johnson & Johnson Plaza, New Brunswick, New Jersey, and J&J regularly conducts business in the State of New Jersey, and the amount in controversy exceeds the sum of $75,000.00 exclusive of interests and costs.

9. Defendant Janssen Pharmaceuticals, Inc. (hereinafter, "JPI") is a corporation organized and existing pursuant to the laws of the State of Pennsylvania, with its principal place of business located at 1125 Trenton-Harbourton Rd., Titusville, New Jersey.

10. Defendant JPI's agents and employees responsible for or having involvement in clinical research, development, medical affairs, regulatory approvals, compliance, labeling, marketing, and sales of Xarelto, are based in the State of New Jersey.

11. Jurisdiction exists as against the Defendant JPI pursuant to 28 U.S.C. Section 1332, in that the Plaintiffs are citizens and residents of the State of North Carolina, and upon information and belief, Defendant JPI is a corporation organized and existing under the laws of the State of Pennsylvania, with a principal place of business and address at 1125 Bear Tavern Rd., Titusville, New Jersey, and JPI regularly conducts business in the State of Pennsylvania and/or the State of New Jersey, and the amount in controversy exceeds the sum of $75,000.00 exclusive of interests and costs.

12. Defendant JPI is a subsidiary of Defendant J&J.

13. JPI was formerly known as Janssen Pharmaceutica Inc., which was formerly known as Ortho-McNeil-Janssen Pharmaceuticals, Inc.

14. Defendant, Janssen Research & Development, LLC (hereinafter, "JRD"), is a limited liability company existing pursuant to the laws of the State of New Jersey, with a principal place of business at 920 US Highway 202, Raritan, New Jersey.

15. JRD was formerly known as Johnson & Johnson Pharmaceutical Research & Development, LLC.

16. JRD is a subsidiary or affiliate of J&J.

17. Defendant JRD was/is involved with research and development of Xarelto.

18. JRD's sole member is JPI.

19. JRD holds the approved New Drug Application for Xarelto in addition to the supplemental New Drug Application.

20. JRD is involved in research, development, sales, and marketing of Xarelto.

21. Jurisdiction exists as against the Defendant JRD pursuant to 28 U.S.C. Section 1332, in that the Plaintiffs are citizens and residents of the State of North Carolina, and upon information and belief, Defendant JRD is a limited liability company, organized and existing under the laws of the State of New Jersey, with a principal place of business and address at 920 US Highway 202, Raritan, New Jersey, and JRD regularly conducts business in the State of New Jersey, and the amount in controversy exceeds the sum of $75,000.00 exclusive of interests and costs.

22. Defendant, Janssen Ortho, LLC (hereinafter, "JO"), is a limited liability company existing pursuant to the laws of the State of Delaware, with a principal place of business at Stateroad 933Km 0 1 St. Statero, Gurabo, Puerto Rico.

23. JO is a subsidiary or affiliate of J&J.

24. JO is a subsidiary or affiliate of JPI.

25. Defendant JO was involved in the manufacturing of the finished product of Xarelto.

26. Jurisdiction exists as against the Defendant JO pursuant to 28 U.S.C. Section 1332, in that the Plaintiffs are citizens and residents of the State of North Carolina, and upon

information and belief, Defendant JO is a limited liability company, organized and existing under the laws of the State of Delaware, with a place of business and address at Stateroad 933Km 0 1 St. Statero, Gurabo, Puerto Rico, and JO regularly conducts business in Puerto Rico, and the amount in controversy exceeds the sum of $75,000.00 exclusive of interests and costs.

27. Defendant, Bayer HealthCare Pharmaceuticals, Inc. (hereinafter, "BHCPI") is a corporation organized and existing pursuant to the laws of the State of Delaware, with its principal place of business located at 100 Bayer Boulevard, Whippany, New Jersey.

28. Defendant BHCPI was formerly known as Berlex Laboratories, Inc., which was formerly known as Berlex, Inc.

29. Defendant BHCPI is a subsidiary of Defendant, Bayer Corporation.

30. Jurisdiction exists as against the Defendant BHCPI pursuant to 28 U.S.C. Section 1332, in that the Plaintiffs are citizens and residents of the State of North Carolina, and upon information and belief, Defendant BHCPI is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business and address at 100 Bayer Boulevard, Whippany, New Jersey, and BHCPI regularly conducts business in the State of New Jersey, and the amount in controversy exceeds the sum of $75,000.00 exclusive of interests and costs.

31. Defendant, Bayer Pharma AG (hereinafter, "BPAG"), is a pharmaceutical company domiciled in Germany.

32. Defendant BPAG was formerly known as Bayer Shering Pharma AG, which was formerly known as Schering AG.

33. Jurisdiction exists as against the Defendant BPAG pursuant to 28 U.S.C. Section 1332, in that the Plaintiffs are citizens and residents of the State of North Carolina, and upon information and belief, Defendant BPAG is a pharmaceutical company, organized and existing under the laws of Germany, and is domiciled in Germany, with a place of business in Germany, and BPAG regularly conducts business in Germany, and the amount in controversy exceeds the sum of $75,000.00 exclusive of interests and costs.

34. Defendant Bayer Corporation (hereinafter, "BC"), is a corporation organized and existing pursuant to the laws of the State of Indiana, with a principal place of business at 100 Bayer Road, Pittsburgh, Pennsylvania.

35. BC is the sole member of Defendant Bayer Healthcare LLC, which owns 100% of Shering Berlin, Inc., which owns 100% of Defendant BHCPI, and accordingly Defendant BC is a parent company of Defendant, BHCPI.

36. Jurisdiction exists as against the Defendant BC pursuant to 28 U.S.C. Section 1332, in that the Plaintiffs are citizens and residents of the State of North Carolina, and upon information and belief, Defendant BC is a corporation organized and existing under the laws of the State of Indiana, with a principal place of business at 100 Bayer Road, Pittsburgh, Pennsylvania, and BC regularly conducts business in Pennsylvania, and the amount in controversy exceeds the sum of $75,000.00 exclusive of interests and costs.

37. Defendant Bayer Healthcare LLC (hereinafter "BHC") is a limited liability company, organized and existing pursuant to the laws of the State of Delaware, with a principal place of business at 100 Bayer Boulevard, Whippany, New Jersey.

38. Jurisdiction exists as against the Defendant BHC pursuant to 28 U.S.C. Section 1332, in that the Plaintiffs are citizens and residents of the State of North Carolina, and upon

information and belief, Defendant BHC is a limited liability company, organized and

existing under the laws of the State of Delaware, with a place of business and address at

100 Bayer Boulevard, Whippany, New Jersey, and BHC regularly conducts business in

New Jersey, and the amount in controversy exceeds the sum of $75,000.00 exclusive of

interests and costs.

39. Defendant, Bayer Healthcare AG (hereinafter, "BHAG"), is a company domiciled in

Germany.

40. Jurisdiction exists as against the Defendant BHAG pursuant to 28 U.S.C. Section 1332,

in that the Plaintiffs are citizens and residents of the State of North Carolina, and upon

information and belief, Defendant BHAG is a company, organized and existing under the

laws of Germany, and is domiciled in Germany, with a place of business in Germany, and

BHAG regularly conducts business in Germany, and the amount in controversy exceeds

the sum of $75,000.00 exclusive of interests and costs.

41. Defendant BHAG is the parent/holding company of Defendants BC, BHC, BHCPI, and

BPAG.

42. BHC's sole member is Defendant BC, and is wholly owned by Defendant BC.

43. Defendant BHAG exercises dominion and control over Defendants BC, BHC, BHCPI,

and BPAG.

44. Defendant Bayer AG (hereinafter, "BAG") is a German chemical and pharmaceutical

company, with headquarters in Leverkusen, North Rhine-Wesphalia, Germany.

45. Defendant BAG is one of the world's largest pharmaceutical companies, and is the

parent/holding company of all other named defendants.

7

46. Jurisdiction exists as against the Defendant BAG pursuant to 28 U.S.C. Section 1332, in that the Plaintiffs are citizens and residents of the State of North Carolina, and upon information and belief, Defendant BAG is a chemical and pharmaceutical company, organized and existing under the laws of Germany, and is domiciled in Germany, with a place of business in Germany, and BAG regularly conducts business in Germany, and the amount in controversy exceeds the sum of $75,000.00 exclusive of interests and costs.

47. Venue is proper pursuant to 28 U.S.C. Section 1391, in the Districts where Defendants do business, or in the Eastern District of North Carolina where the medication was ingested, the injuries and damages sustained, where Plaintiff Joseph O. Cole treated/treats, and where Plaintiffs reside.

## BACKGROUND

48. Xarelto is an anticoagulant drug, a blood thinner which acts as a Factor Xa inhibitor.  It is a prescription medication, available in oral tablet doses of 20 mg, 15 mg, and 10 mg.

49. Xarelto was initially approved by the Federal Drug Administration (hereinafter, "FDA") in or about July 2011 for patients who recently underwent a hip or knee replacement, to prevent blood clots.  The FDA then approved this drug in or about November 2011, for patients who have nonvalvular atrial fibrillation (an irregular heartbeat not caused by a heart valve problem, known also as Afib) to reduce the risk of stroke.  In or about November 2012, the FDA approved this drug for the general treatment of deep vein thrombosis (DVT) and pulmonary embolism (PE).

50. Defendants started promoting, marketing, and selling Xarelto in the United States in about 2011, and added indication for treatment of DVT and PE and claims of reduction in DVT and PE recurrence to the label in or about November, 2012.

51. Defendants have promoted, marketed, and advertised Xarelto as a prescription blood thinner, including for patients who have recently undergone hip replacement surgery, to reduce the risk of PE, particularly asserting that it is taken once a day and there is no need for routine blood monitoring.

52. At all relevant times, there was/is no known specific antidote for Xarelto and patients who took/are taking Xarelto are at risk for serious bleeds.

53. The levels of Xarelto that remain in a patient after ingestion vary from patient to patient.

54. Upon information and belief, the studies Defendants used as a predicate for promotion of Xarelto also set forth risks of bleeding, which Defendants minimized in their promotions, advertising, and labeling of this medication.

55. Defendants knew or should have known that Xarelto was not safe and that the user could sustain injuries and harm from this drug.

56. Despite the dangerous risk of bleeds, of which Defendants knew or should have known, Xarelto has been marketed and promoted without a sufficient warning as to the danger of bleeds, lack of an antidote, and no routine monitoring, and defendants have downplayed the concomitant risks.

57. When warning of safety and risks of Xarelto, Defendants negligently and/or fraudulently represented to the medical/healthcare community, the FDA, Plaintiff, and the public in general, that Xarelto was tested and found to be safe and effective for its indicated use.

58. Defendants concealed their knowledge of defects of Xarelto, from Plaintiff, the FDA, the public in general and/or the medical community specifically.

59. Defendants widely disseminated direct-to-consumer advertising designed to influence patients to make inquiries to their prescribing physician about Xarelto and/or request prescriptions for Xarelto.

60. Defendants failed to adequately warn medical providers that unlike generally-known measures taken to treat and stabilize bleeding in warfarin (Coumadin) usere, there was/is no effective agent to reverse anticoagulation effects of Xarelto, and thus no effective means to treat and stabilize patients who experience uncontrolled bleeding from Xarelto ingestion.

61. Defendants failed to adequately warn patients that there is no agent to reverse the anticoagulation effects of Xarelto and that serious bleeding may occur as a result of taking Xarelto, and it may be irreversible, permanently disabling, and life-threatening.

62. In the course of the direct-to-consumer advertisements, Defendants overstated the efficacy of Xarelto with respect to preventing stroke and systemic embolism, failed to adequately disclose to patients, including Plaintiff Joseph O. Cole, that there is no drug, agent, or means to reverse the anticoagulation effects of Xarelto, and that such irreversibility could have permanently disabling, life-threatening and fatal consequences.

63. These representations were made by Defendants with the intent of defrauding and deceiving Plaintiff Joseph O. Cole, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing the public in general, and the medical community in particular, to recommend, dispense and/or purchase Xarelto for use to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, to treat DVT and PE, to reduce the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement

surgery, all of which evinced a callous, reckless, willful, depraved indifference to health, safety and welfare of patients, including Plaintiff Joseph O. Cole.

64. Defendants negligently and improperly failed to adequately test Xarelto.

65. Defendants concealed their knowledge of the defects in their products from Plaintiff Joseph O. Cole, and Plaintiff's physicians, hospitals, pharmacists, the FDA, and the public in general.

## BACKGROUND AS TO PLAINTIFF, JOSEPH O. COLE

66. On or about January 3, 2012, Plaintiff, Joseph O. Cole, underwent a right total hip arthroplasty, and shortly thereafter was prescribed Xarelto to prevent PE, and he then took such medication daily.

67. As a result of Defendants' omissions and/or misrepresentations and/or negligence, Plaintiff, Joseph O. Cole, suffered acute gastrointestinal blood loss secondary to anticoagulation while on Xarelto, and was hospitalized and required blood transfusions, all with serious and severe consequences.

68. As a result of the foregoing acts and omissions of Defendants, Plaintiff Joseph O. Cole was caused to suffer serious and dangerous side effects including inter alia life-threatening bleeding, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain, mental anguish, and emotional distress, including diminished enjoyment of life.

## COUNT I
## NEGLIGENCE

69. Plaintiffs repeat each prior allegation as if more fully set forth herein at length.

70. At all times mentioned, Defendants were under a duty to exercise reasonable care in the design, testing, development, manufacturing, marketing, labeling, packaging, processing, advertising, promotion, distribution, and sale of Xarelto.

71. Defendants negligently, recklessly, grossly negligently, wantonly and willfully displayed a morally culpable and conscious disregard of the rights of others in that they failed to exercise reasonable care and failed to fulfill the above-stated duty by the manner that Defendants, directly or indirectly, advertised, marketed and promoted Xarelto, even though Xarelto was not, in fact, reasonably safe for use, as Defendants promoted, and Defendants failed to adequately warn of the increased risk of serious bleeds, of which Defendants knew or should have known.

72. Defendants negligently, recklessly, grossly negligently, wantonly and willfully displayed a morally culpable and conscious disregard of the rights of others by manufacturing, distributing, selling, advertising, marketing and promoting Xarelto even though such drug was not safe because it causes serious bleeds, and by failing to adequately warn the trusting public and prescribing health care providers of the true, complete, and accurate risks of no routine monitoring and bleeds.

73. The aforesaid incident and injuries sustained by Plaintiff, Joseph O. Cole, were caused or contributed to by the Defendants' negligence, recklessness, gross negligence, wantonness, willfulness, and conscious and callous disregard of the safety of the public, including Plaintiff, in the design, testing, development, manufacturing, marketing, labeling, packaging, processing, advertising, promotion, distribution, and sale of Xarelto, including by advertising, marketing and promoting Xarelto as being safe and effective in decreasing the risk of PE and strokes, and by inducing the public, including Plaintiff

Joseph O. Cole and his prescribing physicians, to believe that Xarelto was safe and effective for the conditions for which it was prescribed.

74. Defendants failed to exercise reasonable care in the design, testing, development, manufacturing, marketing, labeling, packaging, processing, advertising, promotion, distribution, and/or sale of Xarelto in one or more of the following respects:

    a.  Designing, marketing, processing, advertising, packaging, distributing and/or selling a product that Defendants knew, or should have known, carried the risk of serious life threatening side effects such as bleeds, particularly without adequate warnings;

    b.  Failure to adequately test Xarelto prior to placing it on the market;

    c.  Failure to use care in designing, developing, testing, and manufacturing of Xarelto so as to avoid posing unnecessary health risks to users of this drug;

    d.  Failure to conduct adequate pre-clinical testing and post-marketing surveillance to determine the safety of Xarelto;

    e.  Failure to adequately warn consumers, such as Plaintiff, Joseph O. Cole, that consumption of Xarelto may result in severe bleeds and disabling side effects, including but not limited to gastrointestinal bleeding;

    f.  Failure to adequately warn consumers, such as Plaintiff, Joseph O. Cole, that consumption of Xarelto without adequate monitoring may result in severe bleeds and disabling side effects, including but not limited to gastrointestinal bleeding;

    g.  Failure to adequately advise the medical and scientific communities of the potential for severe and disabling bleeds and side effects;

    h.  Failure to provide timely and adequate warnings about the health risks associated with the use of Xarelto, including bleeds;

i.   All other acts of negligence with respect to Xarelto which may be shown at trial.

75. At all times mentioned herein, upon information and belief, the culpable conduct of Defendants was a proximate cause of Plaintiffs' injuries and damages.

76. As a direct and proximate result of Defendants' carelessness, negligence, willfulness and wantonness, as set forth herein, Plaintiff Joseph O. Cole suffered severe and permanent injuries and debilitation from ingestion of Xarelto, and loss of quality of life.  Plaintiff Joseph O. Cole has endured substantial pain and suffering and has undergone extensive medical and surgical procedures, and must endure such suffering and treatment in the future.  Plaintiff Joseph O. Cole's injuries and damages are permanent and will continue into the future.  Plaintiffs have incurred significant expenses for medical care and treatment of Plaintiff Joseph O. Cole, and will continue to incur such expenses in the future.  Plaintiffs suffered and will continue to suffer extensive economic loss, including necessary medical, hospital, and other healthcare related expenses, and have otherwise been physically, emotionally, and economically injured, and Plaintiff Joseph O. Cole was deprived of a chance for safe and effective treatment.

77. Due to the foregoing, Plaintiffs sustained damages in a sum which exceeds the jurisdictional limits of all lower courts which would have jurisdiction of this matter, and Plaintiffs also seek punitive and exemplary damages against Defendants in an amount to be determined upon the trial of this matter.

78. WHEREFORE, Plaintiffs demand judgment against Defendant for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all other relief as the Court may deem just and proper.

## COUNT II
## FAILURE TO ADEQUATELY WARN
## Negligence and Product Liability – N.C. Gen. Stat. §99B-5

79. Plaintiffs repeat each prior allegation as if more fully set forth herein at length.

80. At all relevant times, Defendants researched, designed, developed, tested, manufactured, inspected, marketed, labeled, advertising, promoted, distributed, sold, and/or otherwise released Xarelto into the stream of commerce, and in the course of same, directly advertised or otherwise marketed Xarelto to the FDA, consumers, and persons responsible for consumers, and therefore had a duty to properly and adequately warn of the risks associated with the use of Xarelto.

81. At all relevant times, Xarelto was under the exclusive control of Defendants as aforesaid, and was unaccompanied by appropriate and proper warnings regarding all possible adverse risks, side effects and complications associated with the use of Xarelto, of which Defendants knew or should have known.

82. At all relevant times, Defendants failed to perform or facilitate adequate testing, which would have shown that Xarelto posed serious and potentially life-threatening risks, side effects and complications, with respect to which full and proper warning accurately and fully reflecting the risks, symptoms, scope and severity should have been made to medical care providers, the FDA and the public, including Plaintiff, Joseph O. Cole.

83. Defendants' product, Xarelto, was defective due to inadequate post-marketing warning and/or instruction because, after Defendants knew or should have known of the risk of serious and potentially life-threatening side effects and complications and risks from the use of Xarelto, Defendant failed to provide adequate warnings to medical care providers,

the FDA and the consuming public, including Plaintiff, Joseph O. Cole, and continued to promote Xarelto aggressively.

84. As a direct and proximate result of Defendants' carelessness, negligence, willfulness and wantonness in failing to adequately warn, as set forth herein, Plaintiff Joseph O. Cole suffered severe and permanent injuries from ingestion of Xarelto, and loss of quality of life.  Plaintiff Joseph O. Cole has endured substantial pain and suffering and has undergone extensive medical and surgical procedures, and must endure such suffering and treatment in the future.  Plaintiff Joseph O. Cole's injuries and damages are permanent and will continue into the future.  Plaintiffs have incurred significant expenses for medical care and treatment of Plaintiff Joseph O. Cole, and will continue to incur such expenses in the future.  Plaintiffs suffered and will continue to suffer extensive economic loss, including necessary medical, hospital, and other healthcare related expenses, and have otherwise been physically, emotionally, and economically injured, and Plaintiff Joseph O. Cole was deprived of a chance for safe and effective treatment.

85. Due to the foregoing, Plaintiffs sustained damages in a sum which exceeds the jurisdictional limits of all lower courts which would have jurisdiction of this matter, and Plaintiffs also seek punitive and exemplary damages against Defendants in an amount to be determined upon the trial of this matter.

86. WHEREFORE, Plaintiffs demand judgment against Defendant for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all other relief as the Court may deem just and proper.

**COUNT III**
**INADEQUATE DESIGN/FORMULATION**
**Negligence and Product Liability – N.C. Gen. Stat. §99B-6**

87. Plaintiffs repeat each prior allegation as if more fully set forth herein at length.

88. At all relevant times, Defendants researched, designed, developed, tested, manufactured, inspected, marketed, labeled, advertising, promoted, distributed, sold, and/or otherwise released Xarelto into the stream of commerce, and in the course of same, directly advertised or otherwise marketed Xarelto to the FDA, consumers, and persons responsible for consumers, and therefore had a duty to properly and adequately design, develop, test, and formulate Xarelto in such a manner as to avoid unreasonably dangerous risks to consumers/patients upon ingestion of this medication.

89. At all relevant times, Xarelto was under the exclusive control of Defendants as aforesaid, and in the course of designing, testing, and developing Xarelto, Defendants knew or should have known of the serious adverse risks, side effects and complications associated with the use of Xarelto.

90. At all relevant times, Defendants failed to perform or otherwise facilitate adequate testing in that such testing would have shown that Xarelto posed serious and potentially life-threatening risks, side effects and complications.

91. Defendants failed to adopt a safer, and reasonable alternative that would have prevented or substantially reduced the risk of harm of Xarelto.

92. Defendants' product, Xarelto, was so unreasonably that a reasonable person aware of the relevant facts, would not have chosen to consume this drug, with its serious and potentially life-threatening side effects and complications and risks, or which Defendants knew or should have known.

93. As a direct and proximate result of Defendants' carelessness, negligence, willfulness and wantonness in failing to properly and adequately design, test, and formulate Xarelto, as

set forth herein, Plaintiff Joseph O. Cole suffered severe and permanent injuries from ingestion of Xarelto, and loss of quality of life.  Plaintiff Joseph O. Cole has endured substantial pain and suffering and has undergone extensive medical and surgical procedures, and must endure such suffering and treatment in the future.  Plaintiff Joseph O. Cole's injuries and damages are permanent and will continue into the future.  Plaintiffs have incurred significant expenses for medical care and treatment of Plaintiff Joseph O. Cole, and will continue to incur such expenses in the future.  Plaintiffs suffered and will continue to suffer extensive economic loss, including necessary medical, hospital, and other healthcare related expenses, and have otherwise been physically, emotionally, and economically injured, and Plaintiff Joseph O. Cole was deprived of a chance for safe and effective treatment.

94. Due to the foregoing, Plaintiffs sustained damages in a sum which exceeds the jurisdictional limits of all lower courts which would have jurisdiction of this matter, and Plaintiffs also seek punitive and exemplary damages against Defendants in an amount to be determined upon the trial of this matter.

95. WHEREFORE, Plaintiffs demand judgment against Defendant for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all other relief as the Court may deem just and proper.

## COUNT IV
## NEGLIGENCE *PER SE*

96. Plaintiffs repeat each prior allegation as if more fully set forth herein at length.

97. At all times mentioned herein, Defendants had an obligation not to violate the law, in the manufacture, design, formulation, compounding, testing, production, processing,

assembling, inspection, research, distribution, marketing, labeling, packaging, preparation

for use, sale and in warning of the risks and dangers of Xarelto.

98. At all times herein mentioned, Defendants violated the Federal Food, Drug and Cosmetic

Act, 21 U.S.C. Section 301 *et seq.*, related amendments and codes and federal regulations

provided thereunder, and other applicable laws, statutes and regulations, concerning their

involvement with Xarelto.

99. Plaintiff, Joseph O. Cole, as purchaser and consumer of the product, is within the class of

persons the statutes and regulations described above are designed to protect, and the

injuries alleged herein are the type of harm these statutes are designed to prevent.

100.       Defendants' acts constitute an adulteration and/or misbranding as defined by the

Federal Food, Drug and Cosmetics Act, 21 U.S.C. § 331, and constitutes a breach of duty

subjecting Defendants to civil liability for all damages arising therefrom, under theories

of negligence *per se*.

101.       Defendants failed to meet the standard of care set by the applicable statutes and

regulations, which were intended for the benefit of individuals such as Plaintiff, Joseph

O. Cole, making Defendants negligent *per se*, including in the following respects: (a) the

labeling lacked adequate information on the risks of use of Xarelto; (b) the labeling failed

to provide adequate warnings of risks of severe and disabling medical conditions as soon

as there was reasonable evidence of their association with the drug; (c) there was

inadequate information for patients and the medical community regarding risks of severe

and disabling medical conditions with use of Defendants' drug; and (d) the labeling was

misleading and promotional.

102.     As a direct and proximate result of Defendants' negligence *per se*, as set forth

herein, Plaintiff Joseph O. Cole suffered severe and permanent injuries from ingestion of

Xarelto, and loss of quality of life.  Plaintiff Joseph O. Cole has endured substantial pain

and suffering and has undergone extensive medical and surgical procedures, and must

endure such suffering and treatment in the future.  Plaintiff Joseph O. Cole's injuries and

damages are permanent and will continue into the future.  Plaintiffs have incurred

significant expenses for medical care and treatment of Plaintiff Joseph O. Cole, and will

continue to incur such expenses in the future.  Plaintiffs suffered and will continue to

suffer extensive economic loss, including necessary medical, hospital, and other

healthcare related expenses, and have otherwise been physically, emotionally, and

economically injured, and Plaintiff Joseph O. Cole was deprived of a chance for safe and

effective treatment.

103.     Due to the foregoing, Plaintiffs sustained damages in a sum which exceeds the

jurisdictional limits of all lower courts which would have jurisdiction of this matter, and

in addition, Plaintiffs seek punitive and exemplary damages against Defendants in an

amount to be determined upon the trial of this matter.

104.     WHEREFORE, Plaintiffs demand judgment against Defendant for compensatory,

treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all

other relief as the Court may deem just and proper.

## <u>COUNT V</u>
## <u>NEGLIGENT MISREPRESENTATION</u>

105.     Plaintiffs repeat each prior allegation as if more fully set forth herein at length.

106.     Defendants, in addition to knowing misrepresentations, made misrepresentations without any reasonable grounds for believing their statements to be true to Plaintiff, Joseph O. Cole, other patients, and the medical community.

107.     Defendants, through their misrepresentations, intended to induce justifiable reliance by Plaintiff, Joseph O. Cole, other patients, and the medical community.

108.     Defendants, through their marketing campaign and communications with treating physicians, were in a relationship so close to that of Plaintiff, Joseph O. Cole, and other patients, that it approaches and resembles privity.

109.     Defendants owed a duty to the medical community, Plaintiff, Joseph O. Cole, and other consumers, to conduct appropriate and adequate studies and tests for Xarelto, and to provide appropriate and adequate information and warnings.

110.     Defendant failed to exercise reasonable care by failing to conduct appropriate and adequate studies and tests of Xarelto.

111.     As a direct and proximate result of Defendants' negligent misrepresentations as set forth herein, Plaintiff Joseph O. Cole suffered severe and permanent injuries from ingestion of Xarelto, and loss of quality of life.  Plaintiff Joseph O. Cole has endured substantial pain and suffering and has undergone extensive medical and surgical procedures, and must endure such suffering and treatment in the future.  Plaintiff Joseph O. Cole's injuries and damages are permanent and will continue into the future.  Plaintiffs have incurred significant expenses for medical care and treatment of Plaintiff Joseph O. Cole, and will continue to incur such expenses in the future.  Plaintiffs suffered and will continue to suffer extensive economic loss, including necessary medical, hospital, and other healthcare related expenses, and have otherwise been physically, emotionally, and economically

injured, and Plaintiff Joseph O. Cole was deprived of a chance for safe and effective treatment.

112.    Due to the foregoing, Plaintiffs sustained damages in a sum which exceeds the jurisdictional limits of all lower courts which would have jurisdiction of this matter, and in addition, Plaintiffs seek punitive and exemplary damages against Defendants in an amount to be determined upon the trial of this matter.

113.    WHEREFORE, Plaintiffs demand judgment against Defendant for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all other relief as the Court may deem just and proper.

## COUNT VI
## BREACH OF EXPRESS WARRANTY

114.    Plaintiffs repeat each prior allegation as if more fully set forth herein at length.

115.    Defendants expressly represented to Plaintiff Joseph O. Cole, other consumers, and the medical community, that Xarelto was safe and fit for its intended purposes, that it was of merchantable quality, that it did not produce any dangerous side effects, and that it was adequately tested.

116.    Xarelto does not conform to Defendants' express representations because it is not safe, has serious side effects, including uncontrolled bleeding, and causes severe and permanent injuries.

117.    At all relevant times Xarelto did not perform as safely as an ordinary consumer would expect, when used as intended or in a reasonably foreseeable manner.

118.    Plaintiff, Joseph O. Cole, other consumers, and the medical community relied upon Defendant's express warranties.

119.     As a direct and proximate result of Defendants' breach of express warranties as set

forth herein, Plaintiff Joseph O. Cole suffered severe and permanent injuries from ingestion

of Xarelto, and loss of quality of life.  Plaintiff Joseph O. Cole has endured substantial pain

and suffering and has undergone extensive medical and surgical procedures, and must

endure such suffering and treatment in the future.  Plaintiff Joseph O. Cole's injuries and

damages are permanent and will continue into the future.  Plaintiffs have incurred

significant expenses for medical care and treatment of Plaintiff Joseph O. Cole, and will

continue to incur such expenses in the future.  Plaintiffs suffered and will continue to suffer

extensive economic loss, including necessary medical, hospital, and other healthcare

related expenses, and have otherwise been physically, emotionally, and economically

injured, and Plaintiff Joseph O. Cole was deprived of a chance for safe and effective

treatment.

120.     Due to the foregoing, Plaintiffs sustained damages in a sum which exceeds the

jurisdictional limits of all lower courts which would have jurisdiction of this matter, and in

addition, Plaintiffs seek punitive and exemplary damages against Defendants in an amount

to be determined upon the trial of this matter.

121.     WHEREFORE, Plaintiffs demand judgment against Defendant for compensatory,

treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all

other relief as the Court may deem just and proper.

## COUNT VII
## BREACH OF IMPLIED WARRANTY

122.     Plaintiffs repeat each prior allegation as if more fully set forth herein at length.

123.     The Defendants marketed, distributed, supplied and sold Xarelto as a blood thinner.

124.    At the time that the Defendants marketed, distributed, supplied, and sold Xarelto, they knew of the use for which the subject product was intended and impliedly warranted it to be of merchantable quality and safe and fit for such use.

125.    Plaintiff, Joseph O. Cole, individually and through prescribing physicians, reasonably relied upon the skill, superior knowledge and judgment of the Defendants.

126.    Plaintiff, Joseph O. Cole, was prescribed, purchased, and used Xarelto for its intended purpose.

127.    Due to Defendants' wrongful conduct as alleged herein, Plaintiff, Joseph O. Cole, could not have known about the nature of the risks and side effects associated with Xarelto until after use.

128.    Contrary to the implied warranty, Xarelto was not of merchantable quality, and was not safe or fit for its intended uses and purposes as alleged herein.

129.    As a direct and proximate result of Defendants' breach of implied warranties as set forth herein, Plaintiff Joseph O. Cole suffered severe and permanent injuries from ingestion of Xarelto, and loss of quality of life.  Plaintiff Joseph O. Cole has endured substantial pain and suffering and has undergone extensive medical and surgical procedures, and must endure such suffering and treatment in the future.  Plaintiff Joseph O. Cole's injuries and damages are permanent and will continue into the future.   Plaintiffs have incurred significant expenses for medical care and treatment of Plaintiff Joseph O. Cole, and will continue to incur such expenses in the future.  Plaintiffs suffered and will continue to suffer extensive economic loss, including necessary medical, hospital, and other healthcare related expenses, and have otherwise been physically, emotionally, and economically

injured, and Plaintiff Joseph O. Cole was deprived of a chance for safe and effective treatment.

130.     Due to the foregoing, Plaintiffs sustained damages in a sum which exceeds the jurisdictional limits of all lower courts which would have jurisdiction of this matter, and in addition, Plaintiffs seek punitive and exemplary damages against Defendants in an amount to be determined upon the trial of this matter.

131.     WHEREFORE, Plaintiffs demand judgment against Defendant for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all other relief as the Court may deem just and proper.

## COUNT VIII
## FRAUDULENT MISREPRESENTATION

132.     Plaintiffs repeat each prior allegation as if more fully set forth herein at length.

133.     Defendants widely advertised and promoted Xarelto as a safe and effective medication both in fraudulent promotion direct-to-consumer marketing and to health care providers, including prescribing physicians of Plaintiff, Joseph O. Cole.

134.     Defendants had a duty to disclose material information of serious side effects and risks to consumers such as Plaintiff, Joseph O. Cole.  Additionally by virtue of Defendants' partial disclosures about the medication, in which Defendants touted Xarelto as safe and effective, Defendants had a duty to disclose all facts about the risks of use of the medication, including the potential to cause serious bleeding.  Defendants intentionally failed to adequately disclose this information for the purpose of inducing consumers, such as Plaintiff, Joseph O. Cole, to purchase Defendants' dangerous product.

135.     Had Plaintiff, Joseph O. Cole, been aware of the hazards associated with Xarelto, he would not have consumed this medication that lead proximately to his adverse and serious health effects.

136.     Defendants' advertisements regarding Xarelto made material misrepresentations to the effect that it was a safe and effective treatment, which misrepresentations Defendants knew to be false, for the purpose of fraudulently inducing consumers, such as Plaintiff, Joseph O. Cole, to purchase such product.  Plaintiff, Joseph O. Cole, relied in part on these material misrepresentations in deciding to purchase and consume Xarelto, to his detriment.

137.     The damages sustained by Plaintiff, Joseph O. Cole, were a direct and foreseeable result of, and were proximately caused by Defendants' misrepresentations, concealment and omissions.

138.     Defendants' conduct was willful, wanton, and reckless.  Based on the intentionally dishonest nature of Defendant's conduct, directed at Plaintiff, Joseph O. Cole, his medical providers, and the public generally, Defendant should also be liable for punitive damages.

139.     Any applicable statutes of limitation have been tolled by Defendants' knowing and active concealment and denial of the facts alleged herein.  Plaintiff, Joseph O. Cole, and other members of the public who were prescribed and who ingested Xarelto were kept in ignorance of vital information, without any fault or lack of diligence on their part, and could not reasonably have discovered the fraudulent nature of Defendants' conduct, and information and documents concerning the safety and efficacy Xarelto.  Furthermore, due to the aforesaid allegations, Plaintiff, Joseph O. Cole, may rely on the discovery rule in pursuit of this claim.

140.     As a direct and proximate result of Defendants' fraudulent misrepresentation as set forth herein, Plaintiff Joseph O. Cole suffered severe and permanent injuries from ingestion of Xarelto, and loss of quality of life.  Plaintiff Joseph O. Cole has endured substantial pain and suffering and has undergone extensive medical and surgical procedures, and must endure such suffering and treatment in the future.  Plaintiff Joseph O. Cole's injuries and damages are permanent and will continue into the future.  Plaintiffs have incurred significant expenses for medical care and treatment of Plaintiff Joseph O. Cole, and will continue to incur such expenses in the future.  Plaintiffs suffered and will continue to suffer extensive economic loss, including necessary medical, hospital, and other healthcare related expenses, and have otherwise been physically, emotionally, and economically injured, and Plaintiff Joseph O. Cole was deprived of a chance for safe and effective treatment.

141.     Due to the foregoing, Plaintiffs sustained damages in a sum which exceeds the jurisdictional limits of all lower courts which would have jurisdiction of this matter, and in addition, Plaintiffs seek punitive and exemplary damages against Defendants in an amount to be determined upon the trial of this matter.

142.     WHEREFORE, Plaintiffs demand judgment against Defendant for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all other relief as the Court may deem just and proper.

**COUNT IX**
**UNJUST ENRICHMENT**

143.     Plaintiffs repeat each prior allegation as if more fully set forth herein at length.

144.     To the detriment of Plaintiffs, Defendants have been, and continue to be, unjustly enriched as a result of the unlawful and/or wrongful collection of, inter alia, payments for Xarelto.

145.     Plaintiff, Joseph O. Cole, was injured by the cumulative and indivisible nature of the Defendants' conduct.  The cumulative effect of the Defendants' conduct directed at physicians and consumers was to artificially create a demand for Xarelto at an artificially inflated price.  Each aspect of the Defendants' conduct combined to artificially create sales of Xarelto.

146.     Defendants have unjustly benefited through the unlawful and/or wrongful collection of, inter alia, payments for Xarelto, to Plaintiffs' detriment and expense.

147.     Accordingly, Plaintiffs seeks full disgorgement and restitution of the Defendant's enrichment, benefits, and ill-gotten gains acquired as a result of the unlawful and/or wrongful conduct alleged herein.

148.     The injuries and damages of Plaintiff Joseph O. Cole are permanent and will continue into the future.  The Plaintiffs seek actual and punitive damages from Defendants as alleged herein.

149.     Due to the foregoing, Plaintiffs sustained damages in a sum which exceeds the jurisdictional limits of all lower courts which would have jurisdiction of this matter, and in addition, Plaintiffs seek punitive and exemplary damages against Defendants in an amount to be determined upon the trial of this matter.

150.     WHEREFORE, Plaintiffs demand judgment against Defendant for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all other relief as the Court may deem just and proper.

## COUNT X
## PUNITIVE DAMAGES

151.     Plaintiffs repeat each prior allegation as if more fully set forth herein at length.

152.     At all relevant times, the Defendants knew or should have known that Xarelto was inherently more dangerous than alternative blood thinner medication, with respect to the risks of serious bleeding and its consequences, the consequences of lack of proper monitoring of a patient on Xarelto, and the fact that there was no known antidote.

153.     Defendants attempted to and did misrepresent facts concerning safety of Xarelto.

154.     Defendants' misrepresentations included knowingly withholding material information from the medical community and the public, including the Plaintiff, Joseph O. Cole, concerning the safety of Xarelto.

155.     At all times material hereto, the Defendants knew or should have known, and recklessly disregarded the fact that Xarelto may cause debilitating and potentially lethal bleeding with greater frequency than safer alternative blood thinner medications, that there was/is no known antidote, and that regular monitoring if this medication was being ingested, would be prudent and reasonable.

156.     Notwithstanding the foregoing, the Defendants continued to aggressively market Xarelto to consumers, including the Plaintiff, Joseph O. Cole, and his medical providers, without disclosing the aforesaid side effects when there were safer alternative treatments.

157.     The Defendants knew of Xarelto's defective and unreasonably dangerous nature, as set forth herein, but continued to design, develop, manufacture, market, promote, distribute and sell this product so as to maximize sales and profits at the expense of the health and safety of the public, including the Plaintiff, Joseph O. Cole, in conscious and/or negligent disregard of the foreseeable harm caused by Xarelto.

158.    Defendants intentionally concealed and/or recklessly failed to disclose to the public, including Plaintiff, Joseph O. Cole, and medical providers, the potentially life threatening risks and side effects of Xarelto, to ensure continued and increased sales.

159.    The Defendants' intentional and/or reckless failure to disclose such information deprived the Plaintiff, Joseph O. Cole, of necessary information to enable him to weigh the true risks of using the Xarelto against its benefits.

160.    As a direct and proximate result of Defendants' acts and omissions as set forth herein, Plaintiff Joseph O. Cole suffered severe and permanent injuries from ingestion of Xarelto, and loss of quality of life.  Plaintiff Joseph O. Cole has endured substantial pain and suffering and has undergone extensive medical and surgical procedures, and must endure such suffering and treatment in the future.  Plaintiff Joseph O. Cole's injuries and damages are permanent and will continue into the future.   Plaintiffs have incurred significant expenses for medical care and treatment of Plaintiff Joseph O. Cole, and will continue to incur such expenses in the future.  Plaintiffs suffered and will continue to suffer extensive economic loss, including necessary medical, hospital, and other healthcare related expenses, and have otherwise been physically, emotionally, and economically injured, and Plaintiff Joseph O. Cole was deprived of a chance for safe and effective treatment.

161.    The aforesaid conduct of Defendants was committed with knowing, conscious, and deliberate disregard for the rights and safety of consumers, including the Plaintiff, Joseph O. Cole, thereby entitling the Plaintiffs to punitive damages in an amount appropriate to punish the Defendant and deter them from similar conduct in the future.

162.     Due to the foregoing, Plaintiffs sustained damages in a sum which exceeds the jurisdictional limits of all lower courts which would have jurisdiction of this matter, and in addition, Plaintiffs seek punitive and exemplary damages against Defendants in an amount to be determined upon the trial of this matter.

163.     WHEREFORE, Plaintiffs demand judgment against Defendant for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all other relief as the Court may deem just and proper.

**COUNT XI**
**UNFAIR OR DECEPTIVE ACTS OR PRACTICES**
**N.C. Gen. Stat. § 75-1, et seq.**

164.     Plaintiffs repeat each prior allegation as if more fully set forth herein at length.

165.     Defendants are the researchers, developers, manufacturers, distributors, marketers, promoters, suppliers and sellers of Xarelto, which they represented would be free from defects and fit for its intended purpose.

166.     Defendants advertised, labeled, marketed and promoted Xarelto, representing the quality to the FDA, Plaintiff Joseph O. Cole, health care professionals including Plaintiff's health care providers, and the public, in such a way as to induce its purchase or use.  More specifically, Defendants represented that Xarelto was safe and effective for use by individuals such as Plaintiff Joseph O. Cole.

167.     Defendants knew or should have known that Xarelto did not or would not conform to Defendants' representations and promises.

168.     Defendants knew that Xarelto subjected patients to severe and permanent personal injuries, including but not limited to severe and serious bleeding as well as other severe and permanent health consequences.

169.     Defendants concealed knowledge of these and other serious risks associated with Xarelto, and concealed testing and research data, or selectively and misleadingly revealed or analyzed testing and research data, all to promote sales of Xarelto.

170.     Defendants' actions and conduct, as alleged in this Complaint, constitute unfair and/or deceptive acts or practices "in or affecting commerce" in violation of the provisions of Chapter 75 of the North Carolina General Statutes.

171.     As a direct and proximate result of Defendants' acts and omissions as set forth herein, Plaintiff Joseph O. Cole suffered severe and permanent injuries from ingestion of Xarelto, and loss of quality of life.  Plaintiff Joseph O. Cole has endured substantial pain and suffering and has undergone extensive medical and surgical procedures, and must endure such suffering and treatment in the future.  Plaintiff Joseph O. Cole's injuries and damages are permanent and will continue into the future.  Plaintiffs have incurred significant expenses for medical care and treatment of Plaintiff Joseph O. Cole, and will continue to incur such expenses in the future.  Plaintiffs suffered and will continue to suffer extensive economic loss, including necessary medical, hospital, and other healthcare related expenses, and have otherwise been physically, emotionally, and economically injured, and Plaintiff Joseph O. Cole was deprived of a chance for safe and effective treatment.

172.     The aforesaid conduct of Defendants was committed with knowing, conscious, and deliberate disregard for the rights and safety of consumers, including Plaintiff Joseph O. Cole, thereby entitling the Plaintiffs to punitive damages in an amount appropriate to punish the Defendant and deter them from similar conduct in the future.

173.      As a direct and proximate result of Defendants' unfair and/or deceptive conduct, in or affecting commerce, Plaintiffs are entitled to recover treble damages from Defendants, pursuant to the provisions of North Carolina General Statute § 75-16, and to recover their reasonable attorneys' fees, as provided for in North Carolina General Statute § 75-16.1.

174.      Due to the foregoing, Plaintiffs sustained damages in a sum which exceeds the jurisdictional limits of all lower courts which would have jurisdiction of this matter, and in addition, Plaintiffs seek punitive and exemplary damages against Defendants in an amount to be determined upon the trial of this matter.

175.      WHEREFORE, Plaintiffs demand judgment against Defendant for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all other relief as the Court may deem just and proper.

## COUNT XII
## WIFE'S LOSS OF CONSORTIUM, SERVICES, COMPANIONSHIP, SOCIETY, AND ECONOMIC LOSS

176.      Plaintiffs repeat each prior allegation as if more fully set forth herein at length.

177.      At all relevant times, Plaintiff Joseph O. Cole and Plaintiff Karen Cole are husband and wife, including when Plaintiff Joseph O. Cole sustained his injuries due to Xarelto.

178.      As a direct and proximate result of ingestion of Defendants' drug, Xarelto, as prescribed and as promoted by Defendants, Plaintiff, Joseph O. Cole, suffered the severe and serious injuries set forth hereinabove.

179.      Before suffering these injuries, Plaintiff Karen Cole's spouse, Plaintiff, Joseph O. Cole, was able to and did perform all duties of a husband, including, but not limited to, assisting in maintaining the home, and providing love, companionship, affection, society, sexual relations, moral support, and solace to Plaintiff, Karen Cole.

180.     Because of these injuries caused by Defendants' drug, Xarelto, the spouse of Plaintiff Karen Cole was unable to perform these duties when he developed his injuries, and upon information and belief, will be unable to perform these duties in the future due to his condition which resulted from his consumption/ingestion of Xarelto.

181.     As a direct and proximate result of Defendants' drug, Xarelto, Plaintiff Karen Cole, has been deprived of her spouse's consortium, companionship and society, and upon information and belief, will be so deprived in the future, due to his consumption/ ingestion of Xarelto, all to the damage, of Plaintiff, Karen Cole, in a total amount to be established by proof at trial.

182.     Due to Defendants' wrongful acts and omissions as set forth herein, Plaintiffs have also suffered and will continue to suffer economic loss regarding care and treatment of Plaintiff, Joseph O. Cole, and the cost of services necessary to maintain Plaintiffs' household during the times that Plaintiff, Joseph O. Cole is debilitated from the effects of having consumed/injested Xarelto.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

(1)     Judgment for Plaintiffs and against Defendants;

(2)     Damages in the form of compensatory damages in excess of the jurisdictional limits;

(3)     Damages for physical pain and suffering of the Plaintiff, Joseph O. Cole;

(4)     Damages for loss of quality of life of Plaintiff, Joseph O. Cole;

(5)     Pre and post judgment interest at the lawful rate;

(6)     Reasonable attorneys' fees and costs and expert fees;

(7)     A trial by jury on all issues of the case;

(8)     For any other relief as this court may deem equitable and just;

(9)     Restitution of all purchase costs that Plaintiff paid for Xarelto, disgorgement of

Defendant's profits, and such other relief as provided by law;

(10)    Exemplary and punitive damages in an amount in excess of the jurisdictional limits,

trebled on all applicable counts;

(11)    All Bill of Costs elements; and

(12)    Such other relief this Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs demand a jury trial on all claims so triable in this action.


Dated:  February 3, 2015

Respectfully submitted,
Hardison & Cochran, PLLC

 _s/Karen Collins_____
By:  Karen Collins (NC - 36524)
Hardison & Cochran, PLLC
     Attorneys for Plaintiffs
4800 Six Forks Rd., Suite 220
Raleigh, NC  27609
Phone: (919) 829-0449
Fax: (919) 835-1379
Karen@lawyernc.com