1               UNITED STATES DISTRICT COURT

2               EASTERN DISTRICT OF LOUISIANA

3

4

5   IN RE:  XARELTO           *    Docket No. MDL-2592
    (RIVAROXABAN) PRODUCTS    *    Section L
6   LIABILITY LITIGATION      *
                              *    New Orleans, Louisiana
7   * * * * * * * * * * * * * * * *    January 29, 2015

8

9            MONTHLY STATUS CONFERENCE BEFORE THE
              HONORABLE ELDON E. FALLON
10           UNITED STATES DISTRICT JUDGE

11

    APPEARANCES:
12

13  For the Plaintiffs:        Herman, Herman & Katz
                               BY:  LEONARD A. DAVIS, ESQ.
14                             820 O'Keefe Avenue
                               New Orleans, Louisiana 70113
15

16
                               Gainsburg, Benjamin, David,
17                              Meunier & Warshauer, LLC
                               BY:  GERALD E. MEUNIER, ESQ.
18                             2800 Energy Centre
                               1100 Poydras Street
19                             New Orleans, Louisiana  70163-2800

20

21  For the Defendants:        Irwin Fritchie
                               BY:  JAMES B. IRWIN, ESQ.
22                             400 Poydras Street
                               Suite 2700
23                             New Orleans, Louisiana 70130

24

25

1   APPEARANCES:

2   Official Court Reporter:        Jodi Simcox, RMR, FCRR
                                    500 Poydras Street
3                                   Room HB-406
                                    New Orleans, Louisiana 70130
4                                   (504) 589-7780

5

6   Proceedings recorded by mechanical stenography, transcript

7   produced by computer.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**PROCEEDINGS**

**(January 29, 2015)**

**\*\*\*\*\*\***

(OPEN COURT.)

**THE COURT:**  Be seated, please.

Good morning, ladies and gentlemen.

Would you call the case, please?

**THE DEPUTY CLERK:**  MDL No. 2592, *In re:  Xarelto Products Liability Litigation.*

**THE COURT:**  Will liaison counsel make their appearance for the record, please?

**MR. MEUNIER:**  Gerry Meunier with the firm of Gainsburg Benjamin, co-liaison counsel for plaintiffs, Your Honor.

**MR. DAVIS:**  Good morning, Your Honor.  I'm Leonard Davis with the firm of Herman, Herman & Katz, co-liaison plaintiffs counsel.

**MR. IRWIN:**  Good morning, Your Honor.  Jim Irwin, Irwin Fritchie, defense liaison counsel, and my colleague.

**MR. OLINDE:**  Is John Olinde, Chaffe McCall here in New Orleans.

**THE COURT:**  Okay.  Thank you.

Let me make a few comments.  First, I'd like to welcome all of you all to the first meeting.  I appreciate you

9:00AM  1   being here.  I'm glad the weather permitted some of our friends

9:00AM  2   from New York and New Jersey and the other places to come in.

9:00AM  3               As you know, I've appointed liaison counsel.

9:00AM  4   Let me mention, too, those of you who are not from here, we

9:00AM  5   have an attorney conference center in the building.  It's on

9:00AM  6   the second floor in the Hale Boggs building.  There are

9:00AM  7   conference rooms, there are lounges.  There's places for

9:01AM  8   copying, Internet service, and there's no charge for the use of

9:01AM  9   the room.  So if you need to use those facilities, please feel

9:01AM  10  free to do so.  If you need anything else, get to chambers and

9:01AM  11  we'll see if we can accommodate you.

9:01AM  12              As I was saying, I've appointed liaison counsel

9:01AM  13  to be of assistance, particularly in the early stages of the

9:01AM  14  case, with notice and things of that sort.  I will be

9:01AM  15  appointing the Plaintiffs' Steering Committee and the

9:01AM  16  Defendants' Steering Committee.

9:01AM  17              With regard to the Plaintiffs' Steering

9:01AM  18  Committee, I've received a number of applications.  I suspect

9:01AM  19  I'll be receiving more.  Let me remind you, those of you who

9:01AM  20  have applied, and are applying, that it's quite a commitment in

9:01AM  21  time and, unfortunately, it's quite a commitment in resources

9:02AM  22  also.

9:02AM  23              I mention that to you because this is not my

9:02AM  24  first case, and I try to move these cases relatively fast.  So

9:02AM  25  it takes some time and you have to put things on the back

burner and some of your other clients may be suffering.  So be aware of that.  It takes a lot of commitment, both in time as well as resources.

I look to you to participate in the litigation, and I look to you to devote whatever time is necessary.  To help you in that regard, I make the appointments for one year at a time.  There are no term limits.  But the second year, I'm interested in hearing from you as to what you did in the past year:  How many depositions you've participated in, or discovery, or briefs, or whatever it takes.  That helps me decide on the next year's slate.

I also try to open the matter, as much as I can open it, to people even who are not on the Plaintiffs' Steering Committee.  I expect the Plaintiffs' Steering Committee -- and I'll be talking to the committee after I appoint them to make sure that my communication has set in -- I look to them to form subcommittees.

Anybody, any plaintiff lawyer, who's interested in participating in the case, who's interested in working on the case, even if you're not on the steering committee, you should feel you have a right to participate if you have something to give and something to offer.

It needs to be coordinated, and I look to lead counsel to help coordinate it.  But if you can't get on that work detail, then I have a provision that you can talk to the

9:04AM   1    Court and I'll make sure your work is accommodated.

9:04AM   2              With regard to the defense committee, it's

9:04AM   3    somewhat self-appointed.  I'll be talking to defense liaison

9:04AM   4    and getting your requests at that time.

9:04AM   5              Next, let me make some comments about some

9:04AM   6    infrastructure.  Because a case of this sort, numbers, MDLs in

9:04AM   7    general, not all of them, but most of our MDLs are about 9 to

9:04AM   8    10, 12 cases.  But, unfortunately, I've had the detail of

9:04AM   9    having a couple more cases than 9 or 10.

9:05AM  10              In those larger MDLs -- and I might say by way

9:05AM  11    of just statistics, the latest statistics indicate that between

9:05AM  12    30 and 35 percent of all civil cases in the United States are

9:05AM  13    in MDLs.  So it's a significant commitment, but it takes some

9:05AM  14    infrastructure, particularly the larger MDLs.

9:05AM  15              One of the things I'll be doing shortly is

9:05AM  16    confirming the appointment of a CPA.  I'll be putting out the

9:05AM  17    pretrial orders talking about the type of work that is common

9:05AM  18    benefit work and the type of expense that is common benefit

9:05AM  19    expense.  But anybody doing that from the plaintiffs' side on

9:06AM  20    the common benefit expense and hope for fees has to submit the

9:06AM  21    time and expense to the court-affirmed CPA, and it has to be

9:06AM  22    done relatively soon.  I'll give you a month or so to get to

9:06AM  23    him.

9:06AM  24              We've created some software for that.  You need

9:06AM  25    to know that I meet with the CPA every month and go over all of

9:06AM  1   those documents.  He gives me a summary and I'm able to see
9:06AM  2   who's doing the work and who's putting up the costs and things
9:06AM  3   of that sort.  It's essential that you follow those rules.
9:06AM  4   I'll be setting some protocols that will be of assistance to
9:06AM  5   you in that regard.
9:07AM  6              Next, by way of logistics and infrastructure, I
9:07AM  7   think the traditional meet and confer regarding getting
9:07AM  8   information, initial disclosure, as we call it, and also
9:07AM  9   interrogatories, particularly interrogatories, a weak discovery
9:07AM 10   device.  It's questions asked by attorneys and generally
9:07AM 11   answered by attorneys; and the attorneys asking the questions
9:07AM 12   want everything from day one in the world, and the person
9:07AM 13   answering wants to give nothing.  So as a result it causes a
9:07AM 14   lot of motion practice and a lot of wasted time.
9:07AM 15              So I try to shortcut that and we don't have many
9:07AM 16   interrogatories.  I don't want to discourage it if you need
9:07AM 17   them.  But, hopefully, we have some vehicle to take that place,
9:08AM 18   and we call it profile or we call it fact sheets.  After I
9:08AM 19   appoint the committees, I'm looking for the committees to get
9:08AM 20   together and see whether or not they can come up with a fact
9:08AM 21   sheet calling on each of them to give certain information and
9:08AM 22   certain documents that we can shortcut this process.
9:08AM 23              In that regard, I've been meeting with Orran
9:08AM 24   Brown to try to come up with some way of dealing with this
9:08AM 25   issue that has a broader purpose.  I think fact sheets not only

9:08AM   1   give you the information, but we have to make them searchable,

9:08AM   2   and we have to make them retrievable, and we have to do

9:08AM   3   something with them to assist us in selecting bellwether cases,

9:09AM   4   and to assist us in getting a handle on the litigation.

9:09AM   5            We have to know whether or not we can categorize

9:09AM   6   this litigation into four or five different categories and then

9:09AM   7   pick from those categories cases for bellwether to give the

9:09AM   8   lawyers for both sides an opportunity to at least look at the

9:09AM   9   case and see what the whole census of the case offers.

9:09AM  10            In that regard, I've talked a bit with Orran

9:09AM  11   Brown.

9:09AM  12            Orran, are you here today?

9:09AM  13            MR. BROWN:  Yes, Your Honor.

9:09AM  14            THE COURT:  I'd like a quick demonstration of what

9:09AM  15   we've been talking about just to give everybody a heads-up on

9:09AM  16   it.

9:09AM  17            MR. BROWN:  Thank you, Your Honor.

9:09AM  18            I'm Orran Brown from BrownGreer in Richmond.

9:09AM  19   It's a pleasure to be here.  I have Jake Woody and Roma

9:09AM  20   Petkauskas.  Jake is from our Richmond office; Roma is from our

9:09AM  21   New Orleans office.  I'm happy to have this chance to show this

9:10AM  22   to the Court and the parties, recognizing that none of this is

9:10AM  23   etched in stone.  This is all customizable and can be made to

9:10AM  24   fit whatever the parties and the Court would want to use in

9:10AM  25   this program.

9:10AM  1                    This is just a way to update the manner in which
9:10AM  2    fact sheets, or profile forms, are filled out and served on
9:10AM  3    each other, and tracked and stored and accessed, and then
9:10AM  4    analyzed as you go forward in this litigation.  We're calling
9:10AM  5    this "MDL Centrality."  We wanted to quickly compare what this
9:10AM  6    application can do to what we see parties doing in the world
9:10AM  7    out there now.
9:10AM  8                    For example, this is from the Testosterone MDL
9:10AM  9    from last fall.  Kind of current, state-of-the-art about how
9:10AM  10   these fact sheets, or profile forms, are done.  They're done on
9:10AM  11   paper with a long form of questions that people write on or
9:10AM  12   fill out by hand, and then they end up serving them on each
9:10AM  13   other.
9:10AM  14                   In that program, the order -- the case
9:10AM  15   management order directed that the people -- the plaintiffs
9:11AM  16   serve them on 12 different defense counsel.  So you're sending
9:11AM  17   12 e-mails.  So this is doing it on paper, PDFs, e-mails and
9:11AM  18   sending 12 of them out to serve them.
9:11AM  19                   Now, this MDL Centrality program allows you to
9:11AM  20   do that all in one place online and in an automated way without
9:11AM  21   having to do it piecemeal.  And it also gives you live data
9:11AM  22   that you can analyze and survey.
9:11AM  23                   Basically, what we want to show here is that as
9:11AM  24   we understand -- and I've done litigation.  I did it for 15
9:11AM  25   years.  I know interrogatories.  I know how this process works.

1   But in this world, we can update from the sort of stagecoach
2   technology that's being used to being in a hybrid electric that
3   parks itself.  This is using the technology to make this easier
4   and faster.
5            If we go through the steps or the functions that
6   you need out of these fact sheets, first is just completing
7   them, filling them out, serving them on each other.  This
8   system allows you to do that online in one place in an
9   automated way:  Fill it out online -- the claimants can fill
10   them out or the lawyers for the claimants can fill them out; if
11   there's a defendant fact sheet, the defense counsel can fill
12   them out -- all online -- and store them and then submit them
13   and serve them online.
14            It also allows uploading records.  If there's
15   medical records that are required with the fact sheet, then
16   they get uploaded to this system instead of served around on
17   people, and they're stored in the system.  It also allows if
18   there's a medical authorization or medical records
19   authorization form, the claimant can sign that online, or sign
20   it in hard copy, if that's what people wish, and it gets stored
21   online.
22            So then everything is in one place, centralized,
23   filled out, put in one place that's accessible to the parties
24   who are authorized to see it.
25            The second thing is tracking the deadlines.

9:13AM  1    These all have periods of time when they're supposed to be due

9:13AM  2    after the order or after the transfer order that sends the case

9:13AM  3    here.  This allows everybody to track when they're due.  It

9:13AM  4    allows claimants' counsel to keep track of when they have them

9:13AM  5    due.  You can run reports.  It shows you the deadlines.  And

9:13AM  6    users of this -- the authorized users of this can see who's

9:13AM  7    done it and who hasn't.

9:13AM  8              The signing of these documents can be done

9:13AM  9    online electronically.  Under the Federal Esign Act and the

9:13AM  10   state equivalence, these are as binding as hard copy

9:13AM  11   signatures, or actual signatures.  Though, if the parties want

9:13AM  12   an actual signature, that can be signed, uploaded, and is

9:13AM  13   placed in along with the records as well.  It all is a matter

9:13AM  14   of what the parties want and the Court wants.  This can evolve

9:13AM  15   to do whatever you want to do.

9:13AM  16             The last thing on this page is tracking:  Who's

9:13AM  17   done it; what answers are filled out; who's in the middle of

9:13AM  18   it.  This allows you immediately, the claimants, their counsel,

9:13AM  19   and the defense counsel, and the Court, if it wishes, to see

9:14AM  20   where those things stand and keep up with them.

9:14AM  21             As you look ahead, as the Court mentioned, using

9:14AM  22   this information, it's now live information.  It's not

9:14AM  23   statistic or dead data; it's live data that you can query, and

9:14AM  24   you can slice and dice and analyze.  And it helps you review

9:14AM  25   what you have in terms of injuries or use or duration of use or

9:14AM   1   treaters or prescribers.  And it allows, I think, easier access

9:14AM   2   for counsel and the Court then to pick the sample cases and

9:14AM   3   pick test cases or bellwether cases.

9:14AM   4              If there's going to be an end game, if there's

9:14AM   5   going to be some settlement program or some resolution later,

9:14AM   6   that data is all there to categorize the injuries and how many

9:14AM   7   there are and how many of a certain type or age of the

9:14AM   8   claimants.  It's all there and can be accessed and analyzed.

9:14AM   9              And if there is an end game, and if there is a

9:14AM  10   claims program, then all that data is already there live to

9:15AM  11   pre-fill those claim forms, and even pull the records over, if

9:15AM  12   that's what the parties want, to be able to make that process

9:15AM  13   work faster and smoother.

9:15AM  14              Then, of course, we want this to be able to keep

9:15AM  15   up with the cases:  What's been filed; what's been transferred;

9:15AM  16   what's been remanded.  And down the road, end game issues, when

9:15AM  17   those cases have to be dismissed or taken care of, this allows

9:15AM  18   immediate access to that information.

9:15AM  19              Some questions we get about this, because we've

9:15AM  20   talked about it with a lot of people, these are just a few of

9:15AM  21   them -- and we're open to meet any time with any of the lawyers

9:15AM  22   who want to see this or learn more about it or have questions

9:15AM  23   about it, we can show it to them at any time that their

9:15AM  24   schedule allows -- how are these fact sheets signed?

9:15AM  25              They can be signed electronically.  If the

9:15AM  1    parties agree, the lawyer can sign them.  If the claimant has

9:15AM  2    to sign them, then the claimant has to sign them.  They can

9:15AM  3    sign them electronically, that's binding.  But as I said, they

9:15AM  4    can sign them, print the hard copy, sign it in actual

9:15AM  5    signature, upload it, it gets placed with that plaintiff in the

9:16AM  6    record.

9:16AM  7                    Who has access to it?  Well, that depends on

9:16AM  8    what the parties want.  That's going to be agreed upon and

9:16AM  9    ordered by the Court as to lead counsel.  Each law firm that

9:16AM  10   represents one, or any number, of these plaintiffs can only see

9:16AM  11   his or her own claimants on this system.  Lead counsel, liaison

9:16AM  12   counsel, PSC can have more general access if the parties agree

9:16AM  13   and the Court allows.

9:16AM  14                   What you can see on this is entirely a function

9:16AM  15   of the credentials you get when you log on.  You get a user

9:16AM  16   name and a password that is unique to you that allows you to

9:16AM  17   see what you're permitted to see.

9:16AM  18                   This system has work spaces in it for

9:16AM  19   plaintiffs' counsel to work with their clients in filling them

9:16AM  20   out.  It has work spaces where any counsel, defense counsel or

9:16AM  21   other, can look at documents, tag them, make comments, come

9:16AM  22   back to them later, I'm going to use it in this deposition or

9:17AM  23   not.  That's all private.  It's secure to each side.  Nobody

9:17AM  24   can see your metadata or thought processes.

9:17AM  25                   And we think that the case management order, if

9:17AM 1   there is one that directs use of this or authorizes use of
9:17AM 2   this, would say that that area is subject to work product
9:17AM 3   privileges and it's not going to alter the privilege or work
9:17AM 4   product protection that would otherwise apply to it.
9:17AM 5            If there is a plaintiff without a computer or
9:17AM 6   access to the Internet, they can fill it out in hard copy, send
9:17AM 7   it to their counsel, they can fill it out online or they can
9:17AM 8   send it to us.
9:17AM 9            What does it cost?  This is a new program.  This
9:17AM 10  is a brand-new, cutting-edge program.  We have not established
9:17AM 11  what it would cost.  We were thinking that a fair cost is
9:17AM 12  around $50 per fact sheet.  But that's a matter that we can
9:17AM 13  discuss with counsel and the Court because we're not in this to
9:17AM 14  gouge people for costs.  We want this to be much more
9:18AM 15  affordable and efficient and cost-effective than what people
9:18AM 16  are doing now.  So this is open for discussion.
9:18AM 17            We've built it to where if there's a law firm
9:18AM 18  that has 100 claimants/clients, or a thousand clients, they can
9:18AM 19  upload it in an Excel in a bulk upload instead of doing it one
9:18AM 20  at a time.  We're trying to make that easier.  We've build it
9:18AM 21  to where we can establish links with record retrieval companies
9:18AM 22  that will allow those records to come over directly to us.
9:18AM 23  We're trying to make that process smooth and easy.
9:18AM 24            This is the last part of this, Your Honor.  It's
9:18AM 25  just some screenshots.  This is kind of what it would look like

9:18AM 1 online. This is your welcome page, you log in and you start

9:18AM 2 the process. This is the central place where everybody goes to

9:18AM 3 work on profile forms, to fill them out, see them, serve them,

9:18AM 4 and analyze them.

9:18AM 5 And this, for example, is the first start for

9:18AM 6 registering a plaintiff. You fill in basic information: Date

9:18AM 7 of birth; social security number is nice to have to be able to

9:19AM 8 distinguish people. Again, it's all secure. This is much more

9:19AM 9 secure than e-mail. That process in Testosterone of e-mailing

9:19AM 10 those things around is really not a secure way to transfer

9:19AM 11 personal information.

9:19AM 12 This is a registration page, basic information.

9:19AM 13 This is like a fact sheet. These are some of the questions

9:19AM 14 that people would fill out. Again, this is interactive so that

9:19AM 15 you only fill out the ones that apply. If you answer no to a

9:19AM 16 question, you don't have to worry about all the rest of the

9:19AM 17 sections about filling out things that you see on a hard copy

9:19AM 18 claim form or a profile form.

9:19AM 19 Now, this is customizable to this program.

9:19AM 20 Whatever the fact sheet that the parties agree on, if there is

9:19AM 21 one, it's built into this system with the questions that show

9:19AM 22 up. If you run searches, you can see, you can query it to see

9:19AM 23 who's done it, who's complete, who's not. This allows either

9:19AM 24 side, or whoever's got access -- permitted access to see where

9:19AM 25 people stand, have they done it or not. It allows you

9:19AM 1 immediately to see all the data points that relate to whether

9:20AM 2 somebody has done it or not and when you can export this into

9:20AM 3 Excel if you want to keep it on your own system.

9:20AM 4 This is keeping up with the cases. You want to

9:20AM 5 be able to track where the cases are so that you have that

9:20AM 6 information later about dismissals or remands.

9:20AM 7 We've heard some firms talk about having kind of

9:20AM 8 a bulk upload feature where you basically register all your

9:20AM 9 claimants. Even if they're not participating in the MDL yet,

9:20AM 10 you can register them all to keep track of how many there are.

9:20AM 11 This feature allows that, to import hundreds of names at a time

9:20AM 12 and then tell you how many were successful or what was missing

9:20AM 13 about them. It's all interactive and designed to make it

9:20AM 14 easier for people to do this.

9:20AM 15 If there's a defendant fact sheet, it's done the

9:20AM 16 same way. It can be filled out online. For example, in cases

9:20AM 17 where a defendant has to provide information about sales reps'

9:20AM 18 contacts with prescribing physicians, this would automatically

9:20AM 19 pull the plaintiffs' physicians and then ask the defendant to

9:21AM 20 fill in as to those contacts and to provide records for them.

9:21AM 21 So it's all interactive and relates to the information that's

9:21AM 22 already in there.

9:21AM 23 This is allowing claimants -- or counsel,

9:21AM 24 defense counsel, to upload documents and flag them and mark

9:21AM 25 them for later use. You can run sophisticated reports from the

9:21AM 1   data on your own, or have us run them for you.  This is a way
9:21AM 2   to see how many you have, where they are, the dates, and
9:21AM 3   everything else can be done automatically.  And it allows you
9:21AM 4   to keep track of all the cases, the injuries and the live data.
9:21AM 5            And we're thinking that this is better utility
9:21AM 6   and functionality than what's being done now, much more
9:21AM 7   convenient and easier to use, much more secure than what's
9:21AM 8   being done today to protect this information.  We think it will
9:21AM 9   save time.  And we think it will save money for everybody over
9:21AM 10  the methods that are being done by hand now.
9:21AM 11           THE COURT:  Okay.
9:21AM 12           MR. BROWN:  So thank you, Your Honor, for this time.
9:22AM 13  We're available to answer questions or show this to anybody at
9:22AM 14  any time.
9:22AM 15           THE COURT:  Okay.  Thank you, Orran.
9:22AM 16           I'm interested in this process because the fact
9:22AM 17  sheets, I think, have been limited in use in the past.  This is
9:22AM 18  the first time any case has been trying to use this type of
9:22AM 19  information; but I think with your help and your input, I think
9:22AM 20  we can make this work, and work to the benefit of everybody.
9:22AM 21           MR. BROWN:  Thank you, Your Honor.
9:22AM 22           THE COURT:  Thank you.
9:22AM 23           MR. BROWN:  We also have some draft case management
9:22AM 24  order language if people would like to see it that would enact
9:22AM 25  this, if that would help.

9:22AM 1                    Thank you, Your Honor.

9:22AM 2          **THE COURT:**  Yes.  Thank you.

9:22AM 3                    One last thing on that, a problem that has

9:22AM 4   developed in MDLs in general is with the clerks' offices

9:22AM 5   finding out which cases are still open, which cases are not

9:22AM 6   open, which cases need to be closed, and things of that sort.

9:22AM 7   So, hopefully, this can remedy some of those issues, too.  So I

9:23AM 8   am interested in this and I'll be talking with you more about

9:23AM 9   it.

9:23AM 10                   Another logistical aspect to the case is the Web

9:23AM 11  site.  As many of you know who worked with me in the past, I

9:23AM 12  prepare a Web site for these cases.  The Web site for this

9:23AM 13  case, you'll go to www.laed.uscourts.gov and click on the MDL

9:23AM 14  class action, and then from there you can click on "Xarelto"

9:23AM 15  and pull up everything.

9:23AM 16                   On the Web site, I put a calendar so everybody

9:23AM 17  knows what's coming up.  I put all of the recent developments.

9:23AM 18  I put transcripts of all of the meetings.  A transcript of this

9:23AM 19  meeting will go on it so that anybody who is not able to be

9:23AM 20  present can pull that up and see what happened during the

9:24AM 21  meetings.  So it's accessible to everybody.

9:24AM 22                   One problem that MDLs have traditionally had is

9:24AM 23  a complaint that the litigants don't know what's happening to

9:24AM 24  their case.  They filed it in Arizona and all of a sudden it's

9:24AM 25  been transferred to New Orleans, and nobody's been in New

9:24AM  1    Orleans, why is it there, what's happening to the case?  Well,
9:24AM  2    they can click on the Web site and see what's happening.  If
9:24AM  3    they have any questions, they can, hopefully, get them
9:24AM  4    answered.

9:24AM  5             Another thing that I do that I found helpful is
9:24AM  6    monthly meetings.  I'll be meeting monthly on this case, and my
9:24AM  7    monthly meetings are in open court.  A half an hour or so
9:24AM  8    before the monthly meeting, I meet with liaison and lead
9:24AM  9    counsel to discuss the agenda to tell them what I'm going to be
9:25AM 10    covering so that they know what the agenda will be and better
9:25AM 11    able to work with it.  Then I meet in open court.

9:25AM 12             Anybody's welcome, litigants as well as lawyers.
9:25AM 13    I also have access and open up the phone lines.  We have a
9:25AM 14    couple hundred people online today, and we'll keep that
9:25AM 15    throughout the meetings.

9:25AM 16             Finally, after the committees are appointed, and
9:25AM 17    I'll be doing that before the next meeting, I need them to get
9:25AM 18    together and talk about a protocol for direct filing, a
9:25AM 19    protocol for depositions, a protocol for a preservation order,
9:25AM 20    protective orders, a protocol for document production.

9:25AM 21             Also, I'll be looking to liaison counsel to give
9:25AM 22    me a listing of the cases in state court and the judges who are
9:25AM 23    handling those cases in state court.  I work closely with the
9:26AM 24    state judges and try to be of assistance to them; and,
9:26AM 25    hopefully, they'll reciprocate and be of assistance to me in

9:26AM 1    our mutually handling these cases.

9:26AM 2                I've been very fortunate to have great state

9:26AM 3    court judges in the cases that I've worked with, and it

9:26AM 4    certainly made my life easier; and, hopefully, I've contributed

9:26AM 5    a little bit to theirs.

9:26AM 6                Those are just the general comments that I

9:26AM 7    wanted to make.  I'll hear from liaison counsel now on their

9:26AM 8    proposed agenda.

9:26AM 9         **MR. MEUNIER:**  Thank you, Your Honor.  Gerry Meunier,

9:26AM 10   co-liaison counsel for plaintiffs.

9:26AM 11               Your Honor, Mr. Davis and I, first of all, of

9:26AM 12   course, appreciate the opportunity the Court has given us to

9:26AM 13   serve as co-liaison.  We're especially appreciative for the

9:26AM 14   early cooperation and dialogue we've had with Mr. Irwin and his

9:26AM 15   group.

9:26AM 16               We met with those interests, counsel, last

9:27AM 17   night, went through the agenda for today.  And I can just say

9:27AM 18   that so far there's been a high level of professionalism, as we

9:27AM 19   would expect, a high level of courtesy and cooperation.  I

9:27AM 20   would look forward to more of that.

9:27AM 21               I would also be remiss if we didn't thank at the

9:27AM 22   outset our plaintiff friends and colleagues who have come

9:27AM 23   forward to ask for opportunities to be of assistance.

9:27AM 24               And, of course, once the committee's appointed,

9:27AM 25   we will do whatever we can as liaison to implement Your Honor's

9:27AM 1   concept of the full use of subcommittees to give all interested

9:27AM 2   counsel an opportunity to do common benefit work.

9:27AM 3         THE COURT:  I might say that in these cases, it's

9:27AM 4   been my experience that they work, and they work well; but they

9:27AM 5   work well, not necessarily because of the judge, but because of

9:27AM 6   the quality of the lawyers who are handling these cases.  We're

9:27AM 7   very fortunate in this type of litigation to get the best of

9:27AM 8   the best.  I'm looking in the room, I can see that that's the

9:28AM 9   case here.

9:28AM 10        But because of the quality of the lawyers in

9:28AM 11  cases of this sort, the cases are able to be handled and the

9:28AM 12  system works well.

9:28AM 13        MR. MEUNIER:  Your Honor, the first item on the

9:28AM 14  agenda was just review of pretrial orders.  Since the Joint

9:28AM 15  Report was filed, a couple -- a few additional orders have been

9:28AM 16  issued.  So Pretrial Order 1, which is Document 2, set forth a

9:28AM 17  number of initial and important matters, including the setting

9:28AM 18  of this conference, of course, as well as some broad provisions

9:28AM 19  for preservation of evidence, et cetera.

9:28AM 20        Pretrial Order 2, which is Document 38, provided

9:28AM 21  for the appointment of liaison counsel, Mr. Davis and I.

9:28AM 22        Pretrial Order 3, Document 39, appointed

9:28AM 23  Mr. Irwin as defense liaison.

9:28AM 24        And then since the Joint Report, Pretrial

9:28AM 25  Order 4, which is Document 61, set forth the requirement for

9:28AM  1    counsel to provide contact information to Mr. Davis and me as

9:29AM  2    liaison.

9:29AM  3              Pretrial Order 4-A actually provided a form for

9:29AM  4    contact information, and that attachment is important for

9:29AM  5    counsel to refer to and utilize.  We understand from the

9:29AM  6    Court's order that all counsel in this case are expected to

9:29AM  7    keep their contact information on that form current and up to

9:29AM  8    date, with the understanding that Mr. Davis and I, as liaison,

9:29AM  9    will be relying fully on that form for purposes of notification

9:29AM  10   and service in the matter.

9:29AM  11             And then Pretrial Order 5, which is Document 63,

9:29AM  12   modified Rule 1.6 of the Rules of Procedure for MDLs to allow

9:29AM  13   for the transferor court to send a copy -- an electronic copy

9:29AM  14   of the file of the case being transferred.

9:29AM  15             So those are the orders, Your Honor.  Beyond our

9:29AM  16   wishing to emphasize the importance of the contact information

9:30AM  17   form, the other matter to be covered on the agenda under Item 2

9:30AM  18   has to do with File & Serve, which I understand to be the new

9:30AM  19   title, if you will, of LexisNexis, which is familiar to this

9:30AM  20   Court --

9:30AM  21             THE COURT:  Right.

9:30AM  22             MR. MEUNIER:  -- and to many others in this room.

9:30AM  23             We understand the Court is interested in a

9:30AM  24   uniform, consistent system for electronic filing and service.

9:30AM  25   We, Mr. Davis and I, as liaison, have asked File & Serve to

9:30AM 1    provide a proposal for the implementation of that system.

9:30AM 2             And yesterday, in meeting with defendants'

9:30AM 3    liaison and defense counsel, it was understood that that

9:30AM 4    proposal, obviously, would be presented to both sides through

9:30AM 5    liaison.  And we'll have an opportunity then to report back to

9:30AM 6    the Court after we've discussed issues like cost and security

9:30AM 7    and those kinds of important details.

9:30AM 8             THE COURT:  Yes.  Let me know if I can be of

9:30AM 9    assistance there.  I'm concerned about costs, always.  I think

9:30AM 10   that that has to be taken into consideration in all cases, in

9:31AM 11   particularly MDLs.  So I am interested in that.

9:31AM 12            File & Serve, the only thing that I mention in

9:31AM 13   File & Serve, who are outside providers, is that that doesn't

9:31AM 14   mean that you don't have to file in court.  That simply means

9:31AM 15   that it's easier if you're going to have to serve lawyers, they

9:31AM 16   do that rather than your doing it.  So they upload what's been

9:31AM 17   filed, and then they actually conduct the service.  It's very

9:31AM 18   efficient and it's very helpful in doing that.

9:31AM 19            So I'd urge the parties to consider some outside

9:31AM 20   provider and pick the one that you're most comfortable with.

9:31AM 21            MR. MEUNIER:  Your Honor, Item 3 on the agenda is the

9:31AM 22   Plaintiffs' Steering Committee.  Of course, pursuant to PTO

9:31AM 23   No. 1, applications for appointment to the PSC are to be filed

9:32AM 24   with the Court no later than February 2nd, 2015.  Objections to

9:32AM 25   be filed by February 5th.  Mr. Davis and I will be prepared to

9:32AM 1  convene a meeting of the PSC immediately upon this Court's

9:32AM 2  appointment of those members.

9:32AM 3          **THE COURT:**  Okay.

9:32AM 4          **MR. MEUNIER:**  Item 4 is direct filing and master

9:32AM 5  complaint.  We understand, obviously, the need to address early

9:32AM 6  on in this MDL the filing and the coordination of allegations

9:32AM 7  by plaintiffs, et cetera.  We have agreed to report to Your

9:32AM 8  Honor following the appointment of the PSC whether the Court

9:32AM 9  should be asked to enter orders dealing with, for example, the

9:32AM 10  direct filing in the MDL, the filing of a master complaint, et

9:32AM 11  cetera.

9:32AM 12          We have been furnished -- Mr. Davis and I have

9:32AM 13  been furnished a proposed direct filing order by the defendants

9:32AM 14  through Mr. Irwin.  We have advised that that will be reviewed

9:33AM 15  and we will provide immediate feedback immediately on the

9:33AM 16  creation of the PSC.  That we, as liaison, don't feel like we

9:33AM 17  have authority, except to set up the predicate, for decision

9:33AM 18  making on something like the direct filing order.

9:33AM 19          I think Mr. Davis will now cover the remaining

9:33AM 20  items on the agenda, Your Honor.

9:33AM 21          **THE COURT:**  Okay.

9:33AM 22          **MR. DAVIS:**  Thank you, Your Honor.  It was a pleasure

9:33AM 23  to serve the Court and assist with all the counsel that have

9:33AM 24  shown up today.  I do appreciate that.  And to work with Gerry

9:33AM 25  Meunier, as well as opposing counsel.

9:33AM  1          As Gerry mentioned earlier, we did have a

9:33AM  2  meeting last night.  We spoke with all counsel for the

9:33AM  3  defendants, and it was a very productive meeting.  We did get

9:33AM  4  to talk about a number of the issues, including the agenda.

9:33AM  5          Item 5 on the agenda was discussed in detail,

9:33AM  6  profile disclosure forms.  And counsel opposite understands

9:33AM  7  that when a steering committee is put in place, we can discuss

9:34AM  8  this further.

9:34AM  9          I appreciate BrownGreer's presenting their

9:34AM  10  computer program today.  I can assure BrownGreer that we are

9:34AM  11  mindful of Your Honor's desire, and we will discuss with them

9:34AM  12  items that they've brought up.  Some of the items in particular

9:34AM  13  that I know we've heard from various people are, how will

9:34AM  14  revisions be done before the final gets up there, and we'll

9:34AM  15  talk to BrownGreer about that.  But cost, obviously, is an

9:34AM  16  issue.

9:34AM  17        **THE COURT:**  Right.  If I can be of any assistance

9:34AM  18  there.  I'm looking to counsel for both sides to really take

9:34AM  19  the lead on this and decide what information you need.  I'd

9:34AM  20  like you all to get together and see if you can come up with

9:34AM  21  one fact sheet, proposed fact sheet, or a disclosure form.  If

9:35AM  22  you can't, then each of you give it to me and I'll come up with

9:35AM  23  it.  If you have any discussion that needs me in the meantime,

9:35AM  24  get to me and I'll work with you on it.

9:35AM  25        But it's a way of streamlining some of this.

The material is going to be produced one way or the other, so it's helpful to get it up front so that each of you then can concentrate on significant matters as opposed to just discovery matters.

MR. DAVIS:  We are mindful of Rule 26 and how Rule 26 frames the entirety of a profile form, and Your Honor's earlier comments about interrogatories and trying to short-circuit some of these through meet and confers, and how profile forms can really be utilized with Rule 26.  We've spoken briefly about that.  So we will utilize that.

THE COURT:  Keep in mind that usually in the past in MDLs, we used the profile forms just for information gathering.  But I'm trying to use it this time, and I think MDLs around the country are trying to focus a little bit on this aspect of it, whether we can use the profile forms, or the fact sheets, for a broader purpose, to get a feel for the litigation.

That's a big problem oftentimes when we're thinking about bellwether cases and also discovery cases.  I don't know how many cases there are going to be in this case.  But you can't discover all of the cases, it doesn't make any sense to me, before you begin picking bellwether cases.

So we've got to, first of all, get together and talk about whether or not we can have a discovery pool.  That discovery pool may be 30, 40 cases instead of thousands and thousands of cases.  But those 30 or 40 cases have to represent

9:37AM 1    the entire census to make it make sense.  But then you drill

9:37AM 2    down and discover those cases, and from that discovery pool

9:37AM 3    pick your bellwethers.  That's a way of doing it, and it's a

9:37AM 4    cost-effective way.

9:37AM 5          Because if you spend tons of money discovering

9:37AM 6    50,000 cases, not that in this case, but other cases that I've

9:37AM 7    handled, it takes ten years, you haven't done anything.  So

9:37AM 8    these fact forms will help us move that along quite well, I

9:37AM 9    think.

9:37AM 10         **MR. DAVIS:**  We are mindful, Your Honor, of the desire

9:37AM 11   to get the census.  Then, as Your Honor mentioned earlier,

9:37AM 12   maybe to bucket cases.  We are mindful of that.  We will have

9:37AM 13   meet and confers and discuss those issues.

9:37AM 14         Item 6 on the agenda is preservation order,

9:37AM 15   document production protocol, and protective order.  Defense

9:37AM 16   counsel has provided to us some draft orders that we have

9:38AM 17   looked at.  We did briefly discuss that when we met yesterday.

9:38AM 18   Counsel is aware that the process needs to begin.  We have

9:38AM 19   advised counsel that in order to start that process, we need

9:38AM 20   some basic information so that when the committee is in place,

9:38AM 21   we can have some meaningful discussions.

9:38AM 22         For instance, just the basics of what systems

9:38AM 23   are out there, how is information stored, so we can get into

9:38AM 24   those types of discussions.  But once the committee is in

9:38AM 25   place, we will have further discussions and we'll meet and

9:38AM  1    confer.  We expect that defendants will be getting us the

9:38AM  2    information so we can have those meet and confers.

9:38AM  3                Item 7 on the agenda is the Court's Web site.  I

9:38AM  4    know the Court's already spoken about that.  I might just

9:38AM  5    repeat that for people on the phone just so they have that.  We

9:39AM  6    will in the Joint Report post that information so that folks

9:39AM  7    can get access to the Web site.  I know the Court relies upon

9:39AM  8    that.  And folks can go to www.laed.uscourts.gov and tab on

9:39AM  9    "Xarelto."

9:39AM  10               Your Honor, I failed to mention something on the

9:39AM  11   prior, and I just looked at my notes and noticed that I did.

9:39AM  12   We are mindful of the Court's preservation order that's already

9:39AM  13   in place in Pretrial Order No. 1.  We've also had a discussion

9:39AM  14   about that last night with defense counsel.  We're mindful of

9:39AM  15   their awareness of it and their requests with respect to their

9:39AM  16   orders.

9:39AM  17               Once the steering committee is in place, we will

9:39AM  18   address that further, and we've told counsel that.  And I

9:39AM  19   failed to mention it, and I apologize.

9:39AM  20               On No. 8, state/federal coordination, there are

9:40AM  21   a number of cases that are in Pennsylvania.  I think folks are

9:40AM  22   aware of that.  I don't have a census to report to the Court.

9:40AM  23   But we are mindful of the Court's desire for coordination and

9:40AM  24   we heard what Your Honor said earlier.  We also addressed that

9:40AM  25   with opposing counsel, Gerry and myself did, yesterday.  We

9:40AM 1   will work with counsel and get you the information at the next

9:40AM 2   status conference that you asked for and we'll be able to

9:40AM 3   report to the Court on that.

9:40AM 4              Item 9 is position papers.  I know that both

9:40AM 5   sides did submit, pursuant to your order, on January 20th what

9:40AM 6   I'll call in camera, or under seal, or however the Court wants

9:40AM 7   to frame it, the position paper of the respective sides.  They

9:40AM 8   were not exchanged by the parties.  Our appreciation is is that

9:41AM 9   they're solely for the Court's review as a preliminary

9:41AM 10  statement of the legal and factual issues.

9:41AM 11             From the plaintiffs' side, we have not shared

9:41AM 12  that with others.  Although, I will tell you, there was an

9:41AM 13  organizational meeting early on, weeks ago, where about 150

9:41AM 14  people did show up from the plaintiffs' side.  The ideas and

9:41AM 15  the concepts that were in that position paper were discussed,

9:41AM 16  and we did invite the input of folks to give us their

9:41AM 17  information, and we received quite a lot of input which was

9:41AM 18  incorporated in.

9:41AM 19             I do appreciate the input that was given by

9:41AM 20  counsel who attended that and through e-mails and the like.  I

9:41AM 21  know Gerry and I spent a lot of time looking at that and

9:41AM 22  putting that together.

9:41AM 23             **THE COURT:**  Yes.  This information is just for my

9:41AM 24  purposes.  It allows me to get up to speed as quickly as I can

9:41AM 25  on the information that's involved in the case because I'm

9:41AM 1    making certain judgments on selecting of people.  When I look

9:42AM 2    at the Plaintiffs' Steering Committee, I'm, in effect, creating

9:42AM 3    a law firm.

9:42AM 4                So I have to look at people who write well; I

9:42AM 5    have to look at people who discover well; I have to look at

9:42AM 6    people who try well; I have to look at people who settle well;

9:42AM 7    I have to look at people who organize well.  And all of those

9:42AM 8    things, I take into consideration when I'm trying to form a

9:42AM 9    Plaintiffs' Steering Committee and this information helps me

9:42AM 10   make some of those decisions.

9:42AM 11               MR. DAVIS:  We have not shared that position paper

9:42AM 12   with anyone else, Your Honor.

9:42AM 13               The last item on the agenda is the next status

9:42AM 14   conference.

9:42AM 15               THE COURT:  Yes.  The next status conference will be

9:42AM 16   February 27th at 9:00 in open Court.  I'll meet with liaison

9:42AM 17   and lead counsel at 8:30.  By then I will have the committees

9:43AM 18   appointed and I'll be meeting with the committees.

9:43AM 19               One thing I will be talking to them about is

9:43AM 20   whether or not I need some information on the chemistry or the

9:43AM 21   science of the particular drug.  It's not unusual for me to

9:43AM 22   have each side give me a bibliography and then to put on some

9:43AM 23   experts to just teach me the basics of it.  We call it a

9:43AM 24   "science day."  It can get me up to speed so that I'm better

9:43AM 25   able to follow the case as it proceeds.  But I'll look to you

9:43AM  1    for guidance on that, whether I need it or not.

9:43AM  2                    Also, in the past in some instances where we

9:43AM  3    have a lot of lawyers -- one case I have 1400 lawyers on the

9:44AM  4    case and oftentimes discovery gets a little difficult,

9:44AM  5    particularly in the beginning where everybody wants to

9:44AM  6    participate in depositions.  You obviously can't do that or

9:44AM  7    we'd have to have every deposition in the Superdome.

9:44AM  8                    So we've used in the past TV depositions, online

9:44AM  9    depositions, that two people from each side go, one asks the

9:44AM  10   questions, the other has a laptop, and anybody who wants to log

9:44AM  11   into the deposition can do so with their social security number

9:44AM  12   and pull up the deposition on their laptop or computer at home

9:44AM  13   or wherever and watch the deposition.

9:44AM  14                   On the left-hand side is the transcript, and on

9:44AM  15   the right-hand side is voice and image.  And if you have a

9:44AM  16   question, you type it in and it goes to the person next to the

9:44AM  17   questioner and it appears; and at the appropriate time that

9:45AM  18   person is able to nudge the individual and say, Arizona wants

9:45AM  19   this, New Orleans wants this, Hawaii wants this, and so forth.

9:45AM  20                   It's helpful.  With this many people,

9:45AM  21   oftentimes, it makes it economically good, too.  The good thing

9:45AM  22   about it is sometimes if there's a contentious deposition, I

9:45AM  23   can log on and I'll rule immediately on it so that you can move

9:45AM  24   forward in the case.  The concept is to do it efficiently and

9:45AM  25   effectively and as cheaply as we possibly can in matters of

9:45AM 1 │ this sort.

9:45AM 2 │            Okay.  Anything from defense liaison?

9:45AM 3 │            MR. IRWIN:  Your Honor, I would only add -- this is

9:45AM 4 │ Jim Irwin.  I would only add my appreciation to Mr. Davis and

9:45AM 5 │ Mr. Meunier.  As I think the Court already knows, they've

9:45AM 6 │ already provided courtesies to our side arising out of some of

9:45AM 7 │ our travel issues that thankfully did not come to pass.

9:45AM 8 │            THE COURT:  I'm glad my colleague in charge of the

9:45AM 9 │ weather was able to move that storm a little further.

9:45AM 10 │            MR. IRWIN:  We thought you might have had a hand in

9:46AM 11 │ that.

9:46AM 12 │            Also, we were grateful for them coming over to

9:46AM 13 │ our office last night because of some of our travel plans.  I

9:46AM 14 │ believe that the very measured handling that both Mr. Meunier

9:46AM 15 │ and Mr. Davis have done this morning in presenting and

9:46AM 16 │ reviewing the agenda is a product of that work yesterday.

9:46AM 17 │            I would only add that I want to express my

9:46AM 18 │ thanks to Mr. Olinde, my colleague, Mr. Olinde, in helping me

9:46AM 19 │ fulfill the responsibilities as the defense liaison counsel.

9:46AM 20 │            THE COURT:  Okay.  Folks, I'll see you all then at

9:46AM 21 │ the next status conference.  Thank you again for your input.  I

9:46AM 22 │ appreciate you all being here.

9:46AM 23 │            Court will stand in recess.

9:46AM 24 │            THE DEPUTY CLERK:  All rise.

9:46AM 25 │            (WHEREUPON, the proceedings were concluded.)

JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

1                              *****

2                          <u>**CERTIFICATE**</u>

3              I, Jodi Simcox, RMR, FCRR, Official Court Reporter

4    for the United States District Court, Eastern District of

5    Louisiana, do hereby certify that the foregoing is a true and

6    correct transcript, to the best of my ability and

7    understanding, from the record of the proceedings in the

8    above-entitled and numbered matter.

9

10

11                         _s/Jodi Simcox, RMR, FCRR_
                             Jodi Simcox, RMR, FCRR
12                           Official Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25