```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


IN RE: XARELTO (RIVOROXABAN)   *    MDL 2592 "L"
PRODUCTS LIABILITY LITIGATION  *
                               *
                               *    April 1, 2015
                               *
                               *
THIS DOCUMENT RELATES TO       *    Judge Eldon E. Fallon
ALL CASES                      *
                               *
                               *    Mag. Judge Michael North
*******************************************************************

    REPORTER'S OFFICIAL TRANSCRIPT OF THE STATUS CONFERENCE
         BEFORE THE HONORABLE ELDON E. FALLON,
                 UNITED STATES JUDGE.

    *********************************************************


APPEARANCES:


FOR THE PLAINTIFFS'
LIAISON COUNSEL:                HERMAN HERMAN & KATZ
                                BY: LEONARD A. DAVIS,ESQ.
                                820 O'KEEFE AVE.
                                NEW ORLEANS, LA  70113


                                GAINSBURGH BENJAMIN DAVID
                                MEUNIER AND WARSHAUER
                                BY: GERALD E. MEUNIER, ESQ.
                                2800 ENERGY CENTRE
                                1100 POYDRAS ST., STE. 2800
                                NEW ORLEANS, LA  70163


FOR THE PLAINTIFFS:             LEVIN PAPANTONIO THOMAS MITCHELL
                                RAFFERTY & PROCTOR
                                BY: BRIAN H. BARR, ESQ.
                                316 SOUTH BAYLEN ST., STE. 600
                                PENSACOLA, FL  32502
```

**APPEARANCES CONTINUED:**

```
FOR THE DEFENDANTS'
LIAISON COUNSEL:              IRWIN FRITCHIE URQUHART &
                             MOORE
                             BY: JAMES B. IRWIN, V, ESQ.
                             TEXACO CENTER
                             400 POYDRAS ST., STE. 2700
                             NEW ORLEANS, LA  70130


FOR THE DEFENDANTS:          DRINKER BIDDLE & REATH
                             BY: SUSAN M. SHARKO, ESQ
                             500 CAMPUS DR.
                             FLORHAM PARK, NJ  07932


                             KAYE SCHOLER
                             BY: STEVEN GLICKSTEIN, ESQ
                             250 WEST 55TH ST.
                             NEW YORK, NY  10019


                             CHAFFE MCCALL
                             BY: JOHN F. OLINDE, ESQ.
                             1100 POYDRAS STREET
                             NEW ORLEANS, LA  7016


ALSO PRESENT:                Daniel Gallucci
                             Michael Weinkowitz
                             Gibson Vance




REPORTED BY:   Mary V. Thompson, RMR, FCRR
               500 Poydras Street
               Box B2-13
               New Orleans, LA  70130
               (504) 589-7783
               mary_v_thompson@laed.uscourts.gov
```

# AGENDA ITEM INDEX

PAGE NO.

Pretrial Orders................................ 6
Counsel Contact Information Form.............. 6
Plaintiffs' Steering Committee................ 7
File & Serve Express.......................... 7
MDL Centrality/Fact Sheets.................... 8
PFS/DFS Census Forms.......................... 10
Master Discovery.............................. 10
Preservation Order............................ 11
Document Production Protocol.................. 11
Privilege Log................................. 12
Protective Order.............................. 12
Case Management Order......................... 12
Science Day................................... 14
Federal/State Coordination.................... 16
Next Status Conference........................ 25

```
 1                         P R O C E E D I N G S
 2                              (Call to order of the court.)
 3              THE COURT:  Be seated, please.
 4              Good morning, ladies and gentlemen.
 5              Let's call the case, please.
 6              THE CASE MANAGER:  MDL No. 2592, In Re: Xarelto
 7   Products Liability Litigation.
 8              THE COURT:  Counsel, make your appearances for the
 9   record.
10              MR. MEUNIER:  Gerry Meunier, co-liaison for
11   plaintiffs.
12              MR. IRWIN:  Jim Irwin, defense liaison.
13              THE COURT:  Okay.  We're here today for our monthly
14   meeting.  I met with lead liaison a moment ago to discuss it
15   with them.
16              The main things on the agenda today are what I call
17   infrastructure.  I think a big difference in a case of this
18   type and the one-on-one case is that it's very helpful if you
19   establish some infrastructure in the very beginning.
20              I met with the CPA that I've assigned and appointed
21   to this case.  He's worked out some methods for recording time
22   and expenses.  As I mentioned before, I meet with him once a
23   month to go over that so that I keep in touch with what's
24   happening in the litigation.
25              In addition to that type of thing, we need issues
```

1    solved like file and serve, we need protective orders, we need

2    privileged drafts, we need a deposition protocol.  All of

3    these things, if we get them laid out before the case ramps up

4    with discovery, it's very helpful.  It's like building a

5    subdivision.  It's best if you do some infrastructure before

6    you build the houses.

7            And that's what we're doing, and hopefully we'll be

8    through with that.

9            I've worked with counsel on a CMO.  I met with them

10   yesterday to make some final decisions on it.  They're going

11   to give me a rough draft of what I mentioned to them and we'll

12   go from there.

13           Once we get the CMO, that's our map for the case.

14   And we'll be able to follow that, hopefully, and make it more

15   efficient.

16           In addition to the discovery, I try to give the

17   parties an opportunity to see what juries have done with their

18   cases so we'll set a number of bellwether cases.  And at that

19   point I will have done what I try to do, give counsel an

20   opportunity to look at the case, get a feel for what juries

21   can do or will do, and then they can decide whether or not

22   to proceed with the next step.

23           Let me hear from the parties.

24           The first item on the agenda is pretrial order.

25           MR. MEUNIER:  Thank you, Judge.  Gerry Meunier,

1    co-liaison for plaintiffs.

2          By agreement with my co-liaison, Lenny Davis, I'll

3    be proceeding with the joint report for this morning's

4    conference.

5          In pretrial orders, Judge, we would simply note on

6    that list in Item 1 of the joint report that two orders have

7    been entered since the last status conference.

8          That is Pretrial Order No. 9, which is Record

9    Document 356, providing for the direct filing of complaints in

10   the MDL; and Pretrial Order No. 10, Record Document 357, which

11   provides for the streamline service on certain Bayer

12   defendants.

13         THE COURT:  Okay.

14         MR. MEUNIER:  Nothing further on the Item No. 2,

15   Judge, which is counsel contact information form, except to

16   re-emphasize to those plaintiff counsel who may be listening

17   how important it is to keep liaison counsel current with

18   accurate information on the form that's been approved by the

19   Court in PTO-4A.

20         THE COURT:  Yes.  I reinforce that, because I want

21   everybody to know what's happening in the case.

22         I've also established a website in this case.  I

23   have the website up and running.  I'll put on the website a

24   calendar of events.  I'll put on the website all of the forms

25   which have been utilized or can be utilized; all of my

1  pretrial orders.

2       I also make a transcript of these meetings, and put

3  it on the website for those of you who are not able to meet --

4  to either be present or present on the phone.

5       By the way, on the phone -- I appreciate people

6  calling in.  We have about 250 today so that's a good sign of

7  interest in the case.

8       MR. MEUNIER:  Item No. 3, Judge, Plaintiffs'

9  Steering Committee.

10       Your committee has met repeatedly.  We have

11  organized into subcommittees for the common benefit work to be

12  done by plaintiffs.  We're very proud of the hard work that's

13  been done to date by the members of the PSC who are a weighted

14  jury in the box.  I might say the best-looking jury that I've

15  seen in this court in a long time.

16       THE COURT:  They look fair to you, I suppose.

17       MR. MEUNIER:  Fair and balanced.  Fair and balanced.

18       Judge, on Item 4, File & Serve Express, we list

19  three options in the joint report for the service of filed

20  matters, and the plaintiffs have narrowed it down to the use

21  of either File & Serve or the BrownGreer MDL Centrality

22  software.

23       We've received competing cost estimates, and we are

24  very close to making an election and will do so in the very

25  near future.

1        My understanding is that, from the defendants'
2   standpoint, they'll opt, for Item 2 on this list in this part
3   of the report, to simply use the ECF notice process of the
4   court.
5        THE COURT:  Okay.  Yes, it's doable from the
6   standpoint of the defendants.  It's not doable from the
7   standpoint of the plaintiffs because of so many individuals.
8        In some cases it's even not doable from the
9   defendants' standpoint.  In *Chinese Drywall* I have 1,000
10  defendants so that's a problem in those types of cases.
11       This time we don't have more than two defendants so
12  they can keep in touch with each other and keep everybody
13  advised.
14       From the plaintiffs' standpoint it's a challenge.
15  And so rather than have just liaison counsel endeavor to
16  notify everybody about everything, it's easier to get some
17  service, an outside service, to be able to do that so that
18  people get the information that they need and act on it
19  accordingly and timely.
20       MR. MEUNIER:  The next item on the agenda, Judge,
21  deals with the use of MDL Centrality for fact sheets, and we
22  are very excited that this MDL might be the first to utilize
23  that particular software program.
24       The parties have had extensive discussions and
25  in-person meetings with Orran Brown with BrownGreer to fully

1    understand the program.  He made a presentation in this court

2    at a previous status conference.

3          And the good news is that we are now in agreement,

4    both sides, to the use of MDL Centrality for fact sheets.

5    There is a written agreement, which is in the process of being

6    finalized by both sides, and we expect it to be executed

7    shortly.  It will include the needed cost-sharing

8    arrangements.  And we do expect to submit to the Court in the

9    near future an order for the use of MDL Centrality for the

10   execution of fact sheets.

11         THE COURT:  I think that will be very helpful.  I

12   met a number of times with Orran Brown in the drafting of the

13   software, and it makes sense to me that -- one problem we've

14   had in the past with cases of this sort is that oftentimes the

15   clerk's office is overwhelmed by it.  We don't know which

16   cases are still active, which cases are not still active.  It

17   becomes a real chore, particularly at the end of the case, to

18   close it out.  Because there are so many names and numbers, it

19   gets to be problematic.

20         Also in a case of this sort, it's helpful, at least

21   from my standpoint, to be able to get my hands around the

22   census of the litigation to find out whether or not it can be

23   categorized in some fashion that makes sense to take

24   bellwether cases from each of those sections, and that will

25   help in this way.

1    So I'm really excited about the use of that type of
2  software.  Hopefully it will make it a lot easier in this case
3  and in future cases that my colleagues will be handling.
4    MR. MEUNIER:  The next item are the plaintiff and
5  defendant fact sheets.
6    Your Honor, there have been, as you know, extended
7  negotiations between plaintiffs' and defendants' counsel on
8  the form and content of those fact sheets.  And as was
9  reported to you just this morning, the differences have now
10  been narrowed down to a few very discrete issues that you,
11  Your Honor, were good enough to help us with this morning.
12    So I think we're very close to having agreed upon
13  fact sheets to submit to the Court for approval.
14    THE COURT:  Okay.  I appreciate the negotiators and
15  the work of the negotiators on those fact sheets.  During the
16  interim, both have done great work in trying to resolve their
17  differences, and for the most part they have.  I put my thumb
18  on the scale just a moment or two ago to resolve the other
19  issues, and hopefully that will give us fact sheets for both
20  sides.
21    MR. MEUNIER:  Item 7 deals with master discovery.
22    For some time now the defendants have had a draft
23  master request for production that was submitted to them
24  simply to provoke some discussions, meet-and-confer
25  discussions, about that discovery request.  And it will be

1    addressed, Judge, in the case management order, which, as

2    you've indicated, the parties will now have a draft of in the

3    near future.

4            And in that we will provide for a date to propound,

5    a date by which to make objections, and then on some

6    prioritized and rolling basis the furnishing of documents that

7    are not objected to in that request.

8            THE COURT:  Okay.

9            MR. MEUNIER:  Preservation order is one of those

10   infrastructure orders, Judge, which we've been working hard on

11   with the defendants.  And since the entry of PTO-1, which in

12   Paragraph 13 does provide for preservation, we've been aware

13   that there is a need for a more case-specific preservation

14   order and we have negotiated at length with the defendants.

15           I believe now we're at a point where the differences

16   have been narrowed to just a few discreet matters which will

17   require the Court's attention.  And this morning we discussed

18   that it may be appropriate for us to submit to the Court

19   competing versions of a preservation order next Tuesday, and

20   at that time advise the Court of what we believe is needed in

21   the way of a record and/or in the way of our position

22   statements or briefing on the differences.

23           THE COURT:  Okay.

24           MR. MEUNIER:  Item No. 9 on the report, another

25   infrastructure order.

1       The document production protocol is one in which a
2   lot of progress has been made after extended negotiations.
3   Nonetheless, there are a few differences remaining, and that,
4   too, will be a matter which we think is best now addressed by
5   having competing versions of a protocol submitted to the Court
6   next Tuesday, again with advice to the Court on what kind of
7   followup is needed to resolve those differences.
8       THE COURT:  Okay.  Yes, I'll resolve all those
9   matters so that by next time we'll have the infrastructure all
10  in place.
11      Privilege log.
12      MR. MEUNIER:  No. 10, privilege log, that's now
13  something that's been completed.  The format and protocol for
14  the privilege log have been agreed upon, and all what remains
15  is an order to be submitted to the Court for approval.  And
16  that will be done very shortly, I understand.
17      Item No. 11, the protective order, is likewise an
18  infrastructure order that we have worked hard on to reach
19  agreement.  There's been significant progress.  There still do
20  remain a few issues, and again we submit that the way to bring
21  closure will be to submit competing versions of that to the
22  Court next Tuesday with some schedule, then, for briefing
23  and/or the needed record to resolve those differences.
24      THE COURT:  Okay.
25      MR. MEUNIER:  Item No. 12, the case management

order.

          The Court had previously directed the parties to submit Case Management Order No. 1 by March 26th.  We were unable to reach an agreed-upon version of the CMO, and so competing versions were submitted to the Court by that deadline date of March 26th.  And then we met with Your Honor this week, March 31st, to discuss the differences in the two competing versions of Case Management Order No. 1.

          We now believe it's appropriate, with the Court having given feedback on those issues where we differ, to submit to you a draft of a CMO which incorporates what the Court has given us as feedback to resolve those differences, and we believe we will be able to do that in short order.

          That will then put this on track for a final entry certainly before the next status conference.

          THE COURT:  One thing we talked about is bundling in that.

          MR. MEUNIER:  I wanted to mention, just for plaintiffs' counsel who might be monitoring and interested, that in that case management order there will be a provision to allow for bundled complaints.  This has been discussed with the clerk's office and with the Court, and it will allow plaintiffs to put any number of plaintiffs' names on a complaint and then allow for a single answer by the defendant.

          MR. IRWIN:  And we will be sharing in that

1   efficiency by working with plaintiffs' counsel to craft a
2   master answer.
3        THE COURT:  Yes, that would be helpful, because
4   there's no sense, if we do bundling, to have the defendants
5   answer the 15 or 20 or 30 or 50 cases in that bundle.  They
6   ought to just do it one time.  So we'll deal with that.
7        But I will allow bundling.  I think it's helpful to
8   the litigation.  It makes it easier, less expensive, and also
9   easier for the MDL to get the census of the cases that's
10  necessary.
11       MR. IRWIN:  We appreciate that, Judge.
12       THE COURT:  Yes.
13       MR. MEUNIER:  The next item on the report is science
14  day.
15       We know that the Court has requested this, and we
16  were, of course, interested in knowing how the Court saw the
17  purpose of that day going forward so we would know how to
18  shape it and the format, and Your Honor has helped us.
19       THE COURT:  Yes, I talked to counsel about it.  I
20  need to understand the science that's involved in the
21  litigation, that's involved in this process.  I'd like to get
22  a bibliography of some basic reading that I can do to get up
23  to speed on it.  Then at science day I'd like to have some
24  experts.
25       I don't plan to have this recorded, because it's

1    informal and it's just for my use.  I'll do it in court.

2    Anybody can be present at it.

3              But they can educate me in the basics of the

4    science, what's this drug designed to do, how it goes about

5    doing it, and things of that nature, so that I understand

6    what's involved so I can make some decisions on *Daubert* later

7    on and other areas that might call for some scientific

8    knowledge.

9              It also assists me -- if I see an area that's not

10   clear to me, I can either ask about it, or, for that matter,

11   decide whether or not I need to appoint some 706 professorial

12   expert to be able to help me on it if necessary.

13             But I'll alert counsel before I do anything of that

14   sort.

15             But the basics of the drug, the structure of the

16   drug, what it's designed to do, how it goes about doing it,

17   and even what areas are problematic so that I understand what

18   the basics of the drug are.

19             MR. MEUNIER:  Your Honor, we had talked about

20   scheduling that in mid-June around the time of the status

21   conference, but of course since the Court wants to hear from

22   scientists and experts and not simply from lawyers, that

23   scheduling is dependent on the availability of those

24   individuals.

25             THE COURT:  Right.

1    MR. MEUNIER:  And there may be an issue with
2  mid-June.  We're going to work that out with opposing counsel.
3    THE COURT:  Yes, if there's an issue with them, I
4  understand that.
5    Also if it's convenient -- or if it's more
6  convenient for them to hook up by television, I can set it up
7  here and we can have closed-circuit television.
8    But I'll leave that to you all.  If it's a problem
9  timewise, I'll work with you on time.
10    I just would like to get up to speed as quickly as I
11  can on the scientific aspects of this case.
12    MR. MEUNIER:  Thank you, Judge.
13    The next item is state/federal coordination, and
14  Ms. Barrios is here as the court-appointed liaison.
15    MS. BARRIOS:  Thank you, Mr. Meunier.
16    Good morning, Your Honor.  Dawn Barrios for the
17  federal/state committee.
18    Before I begin my report, I would like to introduce
19  the co-leads of the Philadelphia litigation.  Both Mike
20  Weinkowitz is here and Dan Gallucci.
21    And I believe Mr. Weinkowitz has some material that
22  he'd like to make a presentation to the Court on.
23    THE COURT:  All right.  Come forward, please.
24    First I appreciate both of you all agreeing to
25  serve.  It's a very important committee.  And I like to keep

1   in touch with my colleagues in state court, and so I would be

2   obliged if you would participate as much as you possibly can

3   in the litigation.  Feel free to come to all of the meetings,

4   and, if you have anything to add, please do so --

09:23:40   5   MR. WEINKOWITZ:  Thank you.

6   MR. DAVIS:  Your Honor --

7   THE COURT:  -- if you have something.

8   MR. DAVIS:  Your Honor, if I may, we also have

9   Gibson Vance here who's another individual --

09:23:46   10   THE COURT:  Gibson, good.  Welcome to you the same

11   way.

12   MR. WEINKOWITZ:  Your Honor, first of all, it's a

13   pleasure to appear in front of you.

14   I would like to give you the background of the

09:23:58   15   complex litigation and how it's designed and how it works.

16   THE COURT:  Yes.

17   MR. WEINKOWITZ:  And a status of the Xarelto --

18   THE COURT:  And that's in Philadelphia?

19   MR. WEINKOWITZ:  That's in Philadelphia,

09:24:08   20   Pennsylvania.

21   The petition was filed on June 2, 2014, and about

22   30 days later the Court granted the consolidation into what we

23   call a mass tort.  That actually was right around the same

24   time that the JPML consolidated and transferred it here.

09:24:30   25   Currently there are 168 cases filed in Philadelphia.

1    Officially, when the litigation came together, there were

2    43 cases.  We're getting about five or ten cases a week.

3         It's -- the coordinating judge is Judge Arnold New.

4    Judge Arnold New is -- he handles all pretrial order matters,

09:24:54   5    like Your Honor does, but he does not actually try cases.

6    There are eight individual mass tort judges that he assigns

7    the case out to.

8         We have not had a status conference yet.  We have

9    one coming up on April 16th, our first status conference.

09:25:08   10   We have two CMOs that are in place.  Case Management

11   Order No. 1 appointed liaison counsel and instructed us to

12   meet and confer on various orders including the infrastructure

13   orders that were being discussed here, plaintiff fact sheet,

14   defense fact sheet, and those matters.  Those matters are

09:25:25   15   currently under discussion.

16        CMO 2 set up a schedule for master pleadings.  We

17   have a master complaint.  Actually today the Court just

18   approved a short form complaint for filing of cases.

19        We don't have bundling in our state.

09:25:37   20   We have actually spoken with and I have had a

21   presentation from BrownGreer.  I think it would be a very good

22   idea to have fact sheets centralized through the BrownGreer

23   system.  I think it will help all parties, understanding the

24   parameters of the litigation.  So we're considering that and

09:25:53   25   we're going to present that to Judge New at the first status

1    conference.

2          Just a little bit of background about the mass tort

3    program in Philadelphia.  There are 24 mass tort litigations.

4    There are a total of 5,405 cases that Judge New manages.

5          Xarelto has, obviously, 168 cases.  It presents

6    currently 2.2 percent of his mass tort docket.

7          The other cases that he manages include Yaz Yasmin.

8    There are 379 cases.  It's one of the more active cases.  It's

9    going to trial.  There's a trial starting June 22nd.

10          Judge New puts a lot of pressure on everybody.  He

11    will actually try cases -- once he starts, you get one trial a

12    month.  So he has a Yaz Yasmin case June, July, August,

13    September, October, and then there will be a break.  And

14    that's how he tries a number of his cases.

15          The other active litigations, there's Risperdal.

16    There's still Fen/Phen litigation.  And Reglan.

17          The parties in our jurisdiction don't know who the

18    judge is until the week before.  All of the pretrial work is

19    done before Judge New.

20          He appoints a discovery master, and he stays

21    discovery, like Your Honor does, except for the exchange of

22    fact sheets.  And then he appoints pools -- he selects pools

23    of cases to move through the process.

24          And that's generally it, Your Honor.

25          THE COURT:  Okay.  Well, thank you very much.  And I

1  look forward to working with Judge New.  I'll reach out to him

2  in the immediate future and we are going to try to coordinate

3  our respective cases so that we're not meeting on the same day

4  and that we're taking advantage of each other's work product.

5  09:27:34          I certainly look forward to working with him and

6  getting some guidance from him.

7          MR. WEINKOWITZ:  Thank you, Your Honor.

8          THE COURT:  Thank you very much.

9          MS. SHARKO:  Judge, if I could just add, there are

10  09:27:46 about half a dozen forum non motions pending before Judge New

11  in Philadelphia.  They have been pending for some months even

12  before the coordination.  Less than 10 percent of the

13  Pennsylvania docket is actually from Pennsylvania.

14          THE COURT:  I see.

15  09:28:01          MS. SHARKO:  So we hope we'll get an argument date

16  on those motions soon.

17          THE COURT:  Okay.  Fine.  Thank you.

18          MS. SHARKO:  Thank you.

19          MS. BARRIOS:  Your Honor, from the information given

20  09:28:10 to me by the defendants, there are 20 law firms, basically,

21  that have all the Xarelto cases to date in the United States.

22  The defendants have provided me with -- and I'll be happy to

23  pass it to you through your law clerk if you don't have it --

24  a list of law firms and the number of their cases.

25  09:28:33          May I?

1           THE COURT:  Right.  I think I have it, but why don't

2    you give it to me and I'll check it against the ones that I

3    have.

4           MS. BARRIOS:  Okay, Your Honor.

5           THE COURT:  I do have 20.

6           MS. BARRIOS:  The first page is just a list of law

7    firms and how many cases they have.

8           The next is just a list of cases, plaintiff's

9    counsel, the firm name only, and the judge's name.

10           Since I was honored to be appointed federal/state

11    liaison counsel, the first thing I did was approach the

12    defendants to ask for copies of all the state court

13    complaints.  Despite several meet-and-confers with myself and

14    I understand with liaison counsel, the defendants have been

15    reluctant to provide us with copies of the complaints,

16    et cetera.

17           And I have to say, in all the MDLs I've appeared in

18    before you, this is the first time I've ever had to argue and

19    ask for some relief.

20           The key to a federal/state coordination is

21    communication.  That is, advising the state court litigants of

22    the status conferences, of the different deadlines; giving you

23    the information about the judge, his or her e-mail address.  I

24    can't do that effectively and efficiently unless I have the

25    actual complaint.

1        The information that I would like the defendants to

2   provide is the original complaint, the amended complaint --

3        And the reason I ask for the amended complaint is

4   because many times not only do allegations change, but counsel

5   changes.

6        -- any CMOs that come out, hearings on major

7   motions, trial dates, and dismissals.

8        I come to you and ask this with authority.  I am

9   privileged enough to be federal/state liaison counsel in both

10  the GM litigation and in the Actos litigation.

11       Judge Furman in his Order No. 15 has required GM to

12  provide me with this information on a weekly basis.

13       Judge Doherty in the Actos litigation has required

14  the defendants to provide this to me on a monthly basis.

15       Toyota gives it to me voluntarily.

16       All that is involved, Your Honor, is a press of a

17  button sending the electronic copy of the complaint, which I

18  can only imagine defense counsel has, over to me, and any

19  other major pleadings.

20       When I had a discussion with defense counsel, I was

21  requested to see if I could get that information from

22  Philadelphia.  I had several conversations with Mr. Weinkowitz

23  and Mr. Longer.  They can't give me the information because

24  each of those cases in Philadelphia has an individual docket

25  number and you need a special pin to get in to that docket

1    number.

2         So what I'm asking you to do, Your Honor, is to

3    order the defendants just to simply press a button.

4         The way that they have set it up here, the paralegal

5    has to look at the complaint, take information off of it,

6    provide it to me.  I then have to give it to my paralegal, and

7    I have to start looking up information.

8         And in the Toyota litigation, at the beginning there

9    was a huge issue that arose because a paralegal forgot to add

10   a case onto the state case list.

11        So, Your Honor, I'm asking it on behalf of the

12   efficiency that an MDL is supposed to have, on behalf of the

13   avoidance of duplicative work which an MDL is supposed to

14   have, and ask that you order the defendants to provide us with

15   the information that I've requested.

16        And I would be happy to provide a proposed order to

17   that effect.

18        THE COURT:  Let me hear from Jim or Susan on that.

19        MR. IRWIN:  Thank you.

20        Your Honor, we -- the list that we have prepared,

21   and we have promised to update every month five days before

22   the status conference, contains the identity of the

23   plaintiffs, the name of the court, the docket number, the home

24   state, the plaintiff counsel, and the judge.

25        We have agreed, and will agree, to provide and

1    update that information every month for every state.

2         With respect to the mass tort proceedings in

3    Philadelphia, we have agreed to provide the master complaint

4    and we have agreed to provide every complaint for every

5    so-called one-off case around the country.

6         Since -- as Mr. Weinkowitz said, since there is a

7    master complaint procedure in the mass tort proceeding in

8    Philadelphia, we believe that the provision of us providing

9    the master complaint would satisfy the state liaison's

10   responsibilities and requirements.

11        I am told it's not just as easy as pushing a button

12   on each subcomplaint, on each short-form complaint.

13        In any event, we're here to cooperate in whichever

14   way the Court believes and deems appropriate to advance the

15   cause of state/federal coordination.  We believe in that.  We

16   think that the information we're providing is satisfactory.

17   Obviously we'll do whatever the Court says.

18        THE COURT:  Okay.  I do think that in the past what

19   we've used with state coordination, I think -- I agree with

20   counsel that communication is really important.

21        So get with the defense counsel, and if you can't

22   agree on it, then give me an order.  I do want you to have all

23   of the information.

24        If there's some expense involved, I'll deal with

25   that, but let's get to you the initial pleadings and

1   amendments so that you know who's filed them and who's the

2   counsel.

3           MS. BARRIOS:  Thank you, Your Honor.  We'll do that.

4           THE COURT:  Thank you.

5           But meet and confer first, please.

6           MS. BARRIOS:  Yes, Your Honor.

7           THE COURT:  Okay.  So next status conference.

8           MR. MEUNIER:  Next status conference.

9           THE COURT:  Okay.  The next status conference is

10  May 13, 2015.

11          Do we have a following one?

12          THE LAW CLERK:  June 10th.

13          THE COURT:  The one following is June 10th.

14          Anything else from the audience?

15          (No response.)

16          THE COURT:  All right, folks.  Thank you very much.

17  I appreciate it.

18                          (Proceedings adjourned.)

19

20                          *  *  *  *
                            **CERTIFICATE**

21

22      **I hereby certify this 2nd day of April, 2015, that the
    foregoing is, to the best of my ability and understanding, a
    true and correct transcript of the proceedings in the**

23  **above-entitled matter.**

24                          */s/ Mary V. Thompson*
                            _____
25                          **Official Court Reporter**