AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Eastern District of Louisiana

| In re: Xarelto® (Rivaroxaban) Products Liab. Lit. | ) | |
|---|---|---|
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. MDL No. 2592 |
| | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: United States Food & Drug Administration
10901 New Hampshire Ave, Silver Spring, MD 20993

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: to produce all documents and/or communication pertaining to Xarelto®, including, but not limited to all documents, information and other things listed in the Subpoena Duces Tecum (Schedule A)

| Place: Herman, Herman & Katz, LLC, 820 O'Keefe Avenue, New Orleans, LA 70113 | Date and Time: 05/27/2015 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 04/22/2015

| *CLERK OF COURT* | OR | [signature] |
|---|---|---|
| Signature of Clerk or Deputy Clerk | | Attorney's signature |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* **Plaintiffs by Plaintiffs' Co-Liaison Counsel (issuer)**, who issues or requests this subpoena, are:

Leonard A. Davis, Esq., 820 O'Keefe Ave., New Orleans, LA 70113, ldavis@hhklawfirm.com, (504) 581-4892

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  MDL No. 2592

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

Case 2:14-md-02592-EEF-MBN Document 754-1 Filed 04/22/15 Page 3 of 19

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
     **(i)** is a party or a party's officer; or
     **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
     **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     **(i)** expressly make the claim; and
     **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANNA

| | |
|---|---|
| IN RE:  XARELTO® (RIVAROXABAN) PRODUCTS LIABLITY LITIGATION | MDL NO. 2592<br><br>SECTION L<br><br>JUDGE ELDON E. FALLON<br><br>MAG. JUDGE NORTH<br><br>**SCHEDULE A TO SUBPOENA DUCES TECUM TO FDA** |

### DEFINITION OF TERMS

1. The terms **"and"** and **"or"** shall be construed broadly and either conjunctively or disjunctively to bring within the scope of the request any information which might otherwise be construed be outside its scope.

2. The term **"communication"** means each manner or means of disclosure or exchange of information, regardless of means utilized, whether oral, electronic, by document or otherwise, and whether face-to-face, in a meeting, by telephone, email, mail, discussions, text message, releases, personal delivery, through any social media medium, or otherwise.

3. The term **"Defendants"** shall include, but is not limited to: Janssen Research & Development LLC f/k/a Johnson and Johnson Pharmaceutical Research and Development LLC, Janssen Ortho, LLC, Janssen Pharmaceuticals, Inc. f/k/a Ortho-McNeil-Janssen Pharmaceuticals, Inc., Bayer Corporation, Bayer AG, Bayer Healthcare LLC, and Bayer Healthcare Pharmaceuticals, Inc. and Does 1-100.

4. The term **"document"** means any written, recorded, or graphic matter of any nature whatsoever, regardless of how recorded, and whether original or copy, including, but not limited to the following: memoranda, reports, expense reports, books, manuals,

instructions, financial reports/statements, working papers, records notes, letters, notices, confirmations, telegrams, receipts, appraisals, pamphlets, magazines, newspapers, prospectuses, interoffice and intra-office communications, electronic mail (email), contact, cables, notations of any type of conversation, telephone call, meetings or communications, fillable form (electronic or otherwise), bulletins, printed matter, computer printouts, teletypes, invoices, transcripts, diaries, analyses, returns, summaries, minutes, bills, accounts, estimates, projections, comparisons, messages, correspondence, press releases, circulars, reviews, opinions, offers, studies, test, pre-clinical or clinical trials, investigations, questionnaires and surveys, and work sheets (and all drafts, preliminary versions, alterations, modifications, revisions, changes, amendments of any of the foregoing, as well as any attachments or appendices hereto). The term also means any graphic or oral records or representations of any kind, (including without limitation, photographs, charts, graphs, voicemails, microfiche, microfilm, videotape, recording and motion pictures), electronic and mechanical records or presentation of any kind (including, without limitation, tapes, cassettes, disks, computer server files, computer hard drive files, CDs, DVDs, memory sticks, text message, social media of any kind, and recording), and other written, printed, typed, or other graphic or recorded matter of any kind of nature, however produced or reproduced, and whether preserved in writing, film, tape, videotape or otherwise. A document bearing any notation not a part of the original text is considered a separate document. A draft or non-identical copy is a separate document within the meaning of this term.

5. The term **"documents in your possession, custody, or control"** means (a) documents that are in your possession, custody, or control, whether held by you or your past or present agents, employees, or representatives acting on your behalf; (b) documents that you have a legal right to obtain, that you have a right to copy, or to which you have access; and (c) documents that you have placed in the temporary possession, custody or control of any third party.

6. The term **"drug product"** shall mean a finished dosage form that contains a drug substance, generally, but not necessarily, in association with one or more other ingredients.

7. The term **"drug substance"** shall mean an active ingredient that is intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure or any function of the human body, but does not include intermediates used in the synthesis of such ingredient.

8. The term **"FDA"** shall refer to the United States Food & Drug Administration, including without limitation its employees, scientists, technicians, agents, examiners, laboratories, consultants and special governmental employees.

9. The term **"NDA"** shall refer to a New Drug Application filed with the FDA pursuant to 21 U.S.C. §355(b), and section 505(b) of the Federal, Food, Drug, and Cosmetic Act (FDCA), including but not limited to the original application, and any supplements and/or amendments thereto. Specifically, **"NDA"** refers to approval and supplemental submissions and amendments for FDA applications 022406 and 202439.

10. The terms **"person"** or **"persons"** means natural persons, firms, partnerships, associations, corporations, subsidiaries, divisions, departments, joint ventures, proprietorships, syndicates, or other legal, business or government entities, and all subsidiaries, affiliates, divisions, departments, branches and other units thereof.

11. The terms **"referring"**, **"relating"**, **"concerning"**, and **"in connection"** with respect to any given subject means anything that constitutes, contains, embodies, reflects, states, refers to, deals with, or is in any manner whatsoever pertinent to that subject.

12. The term **"Xarelto®"** means the rivaroxaban formulation(s) sold under that trademark.

13. The singular form of any word includes plural number, and vice versa.

14. The masculine form of any word includes the feminine and neutral genders.

3

## INSTRUCTIONS FOR PRODUCTION

1. This subpoena applies to electronic records as well as physical documents.

2. This subpoena applies to all documents in your possession, custody, or control, or any combination thereof.

3. Documents responsive to this subpoena should not be destroyed, modified, removed, transferred or made otherwise inaccessible.

4. Each document produced should be produced in a form that renders the document capable of being copied and in its original electronic format.

5. Documents produced should identify the paragraph or clause that responds to the subpoena.

6. Documents produced should be produced together with copies of file labels, dividers, or identifying markers with which they were associated when this subpoena was issued. To the extent that documents were not stored with file labels, dividers or identifying markers, they should be organized into separate folders by subject matter prior to production.

7. Each folder and box should be numbered and a description of the contents of each folder and box, including the paragraph or clause of the subpoena to which the documents are responsive, should be provided in an accompanying index.

8. If any of the subpoenaed information is available in machine-readable or electronic form (such as on a computer server, hard drive, CD, DVD, memory stick or computer backup tape), please consult with our office to determine the appropriate format in which to produce the information. Documents produced in electronic format should be organized, identified, and indexed electronically in a manner comparable to the organizational structure called for in sections 4-7 above

or as otherwise requested. Documents produced in an electronic format should also be produced in a searchable format.

9. If any document or other item responsive to this subpoena was, but no longer is, in your possession, custody or control, you should identify the document or other item (stating its date, author, subject, and recipient(s)) and explain the circumstances by which the document ceased to be in your possession, custody or control, including identifying any person to whom possession, custody, or control was transferred.

10. If a date or other descriptive detail set forth in this subpoena referring to a document is inaccurate, but the actual date or other descriptive detail is known to you or is otherwise apparent from the context of the description of this subpoena, you must produce all documents which would be responsive if the date or other descriptive detail were correct.

11. Except for privileged materials, the FDA will produce each responsive document in its entirety by including all attachments and all pages, regardless of whether they directly relate to the specified subject matter. Except for privileged material, the FDA will not mask, cut, expunge, edit, or delete any responsive document or portion thereof in any manner.

12. For any claim of privilege from discovery, the FDA is requested to list such documents by request number and to provide the following information:

    a. Identity of the author(s);

    b. Identity of all recipients;

    c. The date of the document;

    d. The subject matter or purpose of the document;

  e. The nature of the relationship between the authors and counsel with sufficient particularity to sustain the asserted privilege;

  f. Whether direct quotes or paraphrases of advice from counsel or other parties were identified;

  g. Whether such quotes could be redacted, leaving non-privileged information; and

  h. Any other information necessary to reveal the basis upon which the document is withheld to allow the Plaintiff to make a determination of whether the withholding is proper.

13. Unless otherwise stated, the scope of this request is from July 28, 2008 through the present and is continuing in nature, until further notice, or the underlying matter has been terminated, whichever is earlier, and applies to any newly discovered document. Any document not produced because it has not been located or discovered by the return date should be produced immediately upon location or discovery subsequent thereto.

14. Compliance with this subpoena requires a search of all documents in the possession, custody or control of the FDA, including, but not limited to, officers, directors, employees, agents, representatives, scientists, investigators, reviewers, examiners, technicians, laboratories, government agencies or consultants. In the event that any person is unwilling to have his or her files searched, or is unwilling to produce responsive documents, the FDA must provide counsel serving this request with the name, address, telephone number and relationship to the FDA of any and all person or persons who refuse.

15. If any requested documents cannot be produced in full, produce the remainder and state whatever information, knowledge, or belief the FDA has concerning the unproduced portion.

16. The FDA will produce all documents, including electronically-stored documents, in hard copy. In addition to the hard copies, the FDA will submit the electronically-stored documents in an electronic, searchable format in the exact format as when stored by the FDA.

17. The source and location of each responsive document shall be designated, including the corporate entity and/or person from which it was obtained. Responsive documents from each entity and/or person's files shall be produced together, in folders separated by request number. If a document is responsive to more than one request, it shall be produced in response to the request to which it is primarily responsive. An index of responsive documents is requested in hard copy and machine-readable format identifying for each document produced: the corporate identification and consecutive control number, the numbered request to which it is responsive, the person from whom the document was obtained, and for documents generated by the recipient, the person and/or file name or number from which it was obtained.

18. In addition to hard-copy documents, the FDA will search its electronically-stored data. Sources of such data include, but are not limited to, the following:

    a. Desktop personal computers ("PCs") and workstations; PCs, workstations, minicomputers, and mainframes used as file servers, application servers, or mail servers; laptops, notebooks, hand-held devices and other portable computers available for shared use; and home computers used for work-related purposes;

    b. Backup disks and tapes, archive disks and tapes, and other forms of offline storage, whether stored onsite with the computer used to generate them, stored offsite in another FDA facility or stored offsite by a third-party, such as in a disaster recovery center;

7

    c. Computers and related offline storage used by the FDA as defined herein, which may include persons who are not employees of the FDA or who do not work on FDA premises; and

    d. Any electronic submission system used by the FDA, including, but not limited to the Electronic Submissions Gateway, and FDA Adverse Events Reporting System.

        i. All documents in the Electronic Common Technical Document (eCTD) format, must be in line with FDA PDF specifications and ICH M4 Granularity Annex organization (table of contents, folders, headings and hierarchy), including PDF search features.

        ii. All documents produced from electronic source(s) must be made in the exact format as it was provided to/received by the FDA.

19. All documents should be Bates-stamped sequentially and produced.

20. As a matter of convenience, should the producing party require that the documents be produced to a location in the producing party's venue, the issuer of this subpoena duces tecum will accommodate the producing party provided arrangements are made in advance by the producing party to select an alternative location for production.

## DOCUMENTS TO BE PRODUCED

**REQUEST NO. 1:** All documents produced to the FDA by any Defendant, certified research organization (CRO) or third party in connection with Xarelto® (rivaroxaban) (hereafter "Xarelto®").

**REQUEST NO. 2:** All documents produced by the FDA to any Defendant, certified research organization (CRO) or third party in connection with Xarelto® (rivaroxaban) (hereafter "Xarelto®").

**REQUEST NO. 3:**   All documents relating to communications between the Defendants, CROs, any third party, and the FDA regarding all new drug application(s) (NDA), supplemental applications, and any amendment submissions to any NDA or supplemental application for any indication or use of Xarelto®.

**REQUEST NO. 4:**   All documents submitted by Defendants, any CRO, or third party to the FDA in support of the NDA, any supplemental applications and/or amendments, of Xarelto®, including, but not limited to:

   a. All documents made part of the Defendants' NDA or any supplemental applications submitted to the FDA;

   b. All documents referenced in the Defendants' NDA or any supplemental applications submitted to the FDA;

   c. All documents submitted to the FDA in support of or related in any way to Xarelto® NDA, any supplemental applications or amendments;

   d. All responsive documents to FDA requests, including, but not limited to: responses to requests for additional information for any areas of concern (study, review, etc.), letters of official action or voluntary action, responses to FDA request for post-market study plan and results, responses to inquiries regarding unreliable data, testing sites, manufacturing and control, monitoring, investigators, trial practices, labeling, promotional and marketing practices, compliance issues (including action taken as to employees acting out of compliance with FDA requirements, etc.); and

   e. All documents submitted by any Defendant in any means and any form, including, but not limited to those documents submitted via the Electronic Submissions Gateway relating to any use or indication of Xarelto® in connection with or related to a NDA, supplemental application or amendment.

9

**REQUEST NO. 5:** All documents transmitted to, prepared by, or in any way communicated by the FDA to any Defendant, internally, to any other agency or third-party related in any way to the Defendants' NDA or any supplemental applications for Xarelto®, including but not limited to:

   a. Any approval letter or deficiency letter or notice written or received by the FDA in relation to the NDA, any supplemental applications or amendments for Xarelto®;

   b. Each document concerning any approval letter or deficiency letter or notice written or received by the FDA in relation to the NDA, any supplemental applications or amendments for Xarelto®; and

   c. All documents supporting or rejecting approval or in any way related to any NDA, supplemental application or amendment of Xarelto®, including, but not limited to: administrative correspondence, approval documents, chemical reviews, medical reviews, toxicology reviews, risk assessments, pharmacology, pharmacokinetic and bioavailabilty reviews, clinical studies and data review, labeling review, statistical and/or summary reviews, carcinogenicity reviews, post-market requirements, internal meeting notes, communications and/or notes regarding any of the same.

**REQUEST NO. 6:** All documents relating in any way to the drug substance and/or drug product that was the subject of the Defendants' NDA for Xarelto®, including any supplemental applications or amendments thereto.

**REQUEST NO. 7:** All documents in the FDA's possession relating to the chemical, biological, pharmacological, pharmacokinetic, and/or toxicity properties of the product that was the subject of the Defendants' NDA or supplemental applications relating to Xarelto®, including but not limited to:

a. Each document concerning studies or testing of any Xarelto® dosage or formulation including without limitation any solubility tests/studies, studies or tests reflecting the influence of pH, dissolution tests/studies, stability tests/studies, carcinogenicity and toxicity studies, studies/tests on the effects of coating, whether or not the information from those studies/tests were used in the consideration of approval of any NDA, any supplemental application or amendments for Xarelto®;

b. Each document that concerns any test, analysis, results or evaluation performed by Defendants, third parties or the FDA concerning the properties, characteristics, design, activity, benefits or performance of Xarelto® in any NDA, supplemental application or amendments and whether those tests, analysis, results or evaluations were used in any filing or FDA approval of Xarelto®; and

c. Each document that concerns any preclinical or clinical test, both in vitro and in vivo, including, but not limited to bioavailabilty, comparative use in testing and clinical studies relating to any other anti-coagulant approved by the FDA for the same/similar indications, and/or any other formulation of Xarelto® that was the subject of the NDA or any supplemental applications, whether or not used in any filing or FDA approval of Xarelto®.

**REQUEST NO. 8:** All documents which identify the formulation contained in the Xarelto® NDA, any supplemental applications or amendments.

**REQUEST NO. 9:** All documents identifying officers, directors, employees, agents, attorneys, representatives, economic consultants, lobbyists, public relations consultants, or any person acting or purporting to act on behalf of Defendants with regards to submissions to the FDA for any Xarelto® NDA, supplemental application or amendments.

**REQUEST NO. 10:** All documents which relate to any agreements or proposed agreements between any Defendant(s) and the FDA concerning Xarelto®.

**REQUEST NO. 11:**   All communications between the FDA and any other person or entity relating to Xarelto®.

**REQUEST NO. 12:**   All documents exchanged between the FDA and any other person or entity relating to Xarelto®.

**REQUEST NO. 13:**   All documents or other information reflecting pre-clinical or clinical testing or any other efforts by any Defendant(s), CRO, or third party, in the possession, custody or control of the FDA, to develop alternative indications for Xarelto® whether or not used in an NDA, supplemental application or amendment.

**REQUEST NO. 14:**   All documents in the possession, custody or control of the FDA, regarding monitoring of blood coagulation for patients prescribed Xarelto® whether or not used in an NDA, supplemental application or amendment.

**REQUEST NO. 15:**   All documents in the possession, custody or control of the FDA, regarding communications with any Defendant, CRO or third party regarding monitoring of blood coagulation for patients prescribed Xarelto® whether or not used in an NDA, supplemental application or amendment.

**REQUEST NO. 16:**   All documents in the possession, custody or control of the FDA, regarding communications with any Defendant, CRO or third party regarding pre-clinical, clinical and post-market studies related to the monitoring of blood coagulation for patients prescribed Xarelto® whether or not used in an NDA, supplemental application or amendment.

**REQUEST NO. 17:**   All documents in the possession, custody or control of the FDA, submitted by any Defendant, CRO or third party through the FDA's electronic submission gateway regarding Xarelto® including but not limited to the following:

   a. Investigational New Drug Application(s);
   b. New Drug Application(s);
   c. Abbreviated New Drug Application(s);
   d. Supplemental New Drug Application(s);
   e. Master Files;

    f. Pre-Clinical studies;
    g. Post-Approval studies;
    h. Adverse Event reports;
    i. Product Labeling;
    j. Drug Establishment;
    k. Post Marketing Safety Reports;
    l. Clinical Site Data;
    m. Study Data;
    n. Study Protocols;
    o. Case Report Forms; and
    p. Advertising and Promotional materials.

This request requires production of said documents in the exact format, folder structure and functionality as originally submitted to the FDA by any Defendant(s), CRO or third party through the FDA's electronic submission gateway and shall include all roadmap.pdf files.

**REQUEST NO. 18:** All documents reflecting, concerning, mentioning, or relating to Xarelto®, including, but not limited to correspondence, internal documents, internal memoranda, drafts, outlines, emails, projections, technical analyses, studies, strategic plans, marketing plans, labeling or business plans.

**REQUEST NO. 19:** All communications or correspondence received or sent by the FDA to Defendant(s), a CRO, internally, any other government agency, or any third party regarding Xarelto® relating to adverse outcomes, reactions or endpoints (within or outside of the United States) between July 2008 and present, including, but not limited to reported adverse events by consumers, unexpected outcomes, disputes between Defendant(s) and an injured, interested, or affected party, clinical study data, investigator data, investigator conduct, adverse human events, action taken for non-compliance, failure to report adverse events/data, etc.

**REQUEST NO. 20:** All trials, studies or reports, including ECG waveform data, initiated, supported or sponsored by Defendants relating to Xarelto®, including any trials, studies, or reports initiated outside of the United States and used in connection with any NDA or Investigational New Drug (IND) application, including any supplemental applications and amendments.

**REQUEST NO. 21:** For those studies published or presented at any major medical meeting(s),where the FDA was in attendance or had occasion to obtain copies, a copy of all publications and abstracts, including any circulated drafts, and all other materials given to participants in relation to Xarelto®.

**REQUEST NO. 22:** All documents relating to Xarelto® provided to or by the FDA, including advisory committees.

**REQUEST NO. 23:** All FDA advisory committee meeting minutes, transcripts, reports, recordings, videotapes, presentations and memoranda relating to Xarelto®.

**REQUEST NO. 24:** All documents concerning FDA reviews relating to Xarelto®, including but not limited to reviews by the Office of Surveillance and Epidemiology.

**REQUEST NO. 25:** All documents in relation to Xarelto® from July 28, 2008 to present time, including, but not limited to:

   a. All presentations, training sessions, or materials given to employees or agents who approved, marketed or otherwise promoted Xarelto®, including speakers and/or consultants;

   b. All pamphlets, literature, and other information to be shown or given to physicians by sales representatives, and also all related communications;

   c. All labeling, including, but not limited to proposed and approved versions with regard to any use or indication of Xarelto®, the date the label was approved, any subsequent labeling changes and dates of changes, as well as any documents supporting or explaining reasons for changes;

   d. All packet inserts (PIs), including proposed and approved versions, with regarding to any use or indication of Xarelto®, date of approval, date of any change to PI and documents supporting or explaining reasons for changes;

e.  All other communications provided to or for the benefit of healthcare providers regarding the safety and efficacy of Xarelto®, and all related communications;

f.  All internal and external presentations or reports based on the marketing plan for Xarelto®, and all communications related to such presentations or reports;

g.  All internal and external presentations or reports related to physicians' prescribing patterns including data on specialty or prescriber and indications for use, and all communications related to these presentations or reports submitted to or created by or with the FDA by Defendant(s), CROs, other governmental agencies or third parties related to these presentations or reports;

h.  All internal and external presentations or reports relating to continuing medical education, and all communications related to these presentations or reports;

i.  All internal or external presentations or reports relating to off-label use, and all communications related to these presentations or reports;

j.  All documents relating to funding support provided for nonprofit professional medical organizations or consumer/patient organizations;

k.  All marketing department correspondence with nonprofit professional medical organizations or consumer/patient organizations; and

l.  All documents and/or communications relating to post-market requirements (PMR) advanced in any Xarelto® approval stemming from an NDA, supplemental application or amendments, including, but not limited to: testing, monitoring, reports, evaluations, data integrity, adverse events, reporting of adverse events, and/or any actions taken by Defendant(s) either voluntarily or by requirement to address further resulting PMR data. This includes submissions/reports made and/or received on the FDA Adverse Event Reporting

System (FAERS), periodic safety reports, and post-marketing individual case safety reports (ICSRs).