**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: XARELTO (RIVAROXABAN) | ) | MDL No. 2592 |
| PRODUCTS LIABILITY LITIGATION | ) | |
| | ) | SECTION: L |
| _____ | ) | |
| | ) | JUDGE FALLON |
| THIS DOCUMENT RELATES TO: | ) | MAG. JUDGE NORTH |
| ALL ACTIONS | ) | |
| _____ | ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF**
**THEIR POSITION ON DOCUMENT PRODUCTION ISSUES**

The Defendants' position on the feasibility of a January 15, 2016, document production completion date amounts to nothing more than pure *ipse dixit* supported only by self-serving declarations and estimates. Defendants assert that a January 15, 2016, document production complete date is "impossible" to meet. And, because Defendants have come to the conclusion that such a date is "impossible," they contend that the Parties should not even attempt to meet such a date.

The Plaintiffs take a different approach. The Plaintiffs do not turn a theoretical estimate on the volume of document production into a real impediment to discovery. Rather, the Plaintiffs provide a schedule that will allow the parties to appropriately prepare for trial – a schedule that provides for a meaningful production of documents in a timely manner.

The Plaintiffs cannot afford a delay of the completion of document production for forty-five (45) days based on the Defendants' fear of impossibility. If the Defendants' concerns on document production become reality, the Parties and the Court can address the issues and make any necessary adjustments in the schedule. After all, the Parties will be providing a bi-weekly status of the production to the Court. The Court will be intimately involved, and Plaintiffs suggest any real issues will become apparent and can be addressed during these conferences.

1

Given that many of the dates of the discovery schedule hinge on the production of documents, the Plaintiffs suggest that it makes more sense to set an earlier date that could be moved back if the date was truly impossible to meet rather than a later date that can never be moved earlier in time if the Defendants' worst fears are not realized.

I.      **The Plaintiffs' Proposed Document Production Completion Date Provides Plaintiffs with the Documents in Time for the Production to be Meaningful**

The Court set the first bellwether trial for September 12, 2016.  The timely production of documents is critical to the Plaintiffs' ability to be prepared for trial.  The production of documents drives all other aspects of discovery and trial preparation.  From the depositions of corporate witnesses and prescribing doctors to the preparation of expert reports, every significant discovery event requires a substantial document production.  Given the critical importance of document production and review, Plaintiffs will be prejudiced in their ability to prepare for trial if Defendants' production is allowed to be completed past January 15, 2016.

A review of the other portions of the Plaintiffs' proposed CMO 2 shows why any delay of the document production completion date will prejudice the Plaintiffs.  Under the Plaintiffs' schedule, the Plaintiffs will have until April 22, 2016, to complete the depositions of defense witnesses.  Plaintiffs will only have three months from the completion of document production to the close of discovery for the first bellwether trial.  This is three months to review and understand the documents and then implement the documents into the Plaintiffs' discovery plans. This is not a substantial amount of time.  In addition, assuming Defendants produce their last document on January 15, 2016, the Defendants have thirty (30) days to provide to Plaintiffs a privilege log of any documents withheld as allowed under PTO 19.  This allows the Plaintiffs only two months to review the log, make any appropriate challenges and conduct either necessary depositions or use these documents in depositions.

Delay of document production prejudices Plaintiffs in other parts of the schedule as well. Plaintiffs propose a March 11, 2016 date for the conclusion of discovery for the bellwether discovery pool.  As the Plaintiffs have previously addressed in briefs to the Court, the deposition of each of the discovery pool plaintiff's prescribing doctor is critical testimony.  The internal documents of the Defendants evidencing what the Defendants knew and discussed about Xarelto is highly relevant to these depositions.  While Plaintiffs are hopeful that such documents will be produced early in the document production process (and Plaintiffs will certainly attempt to prioritize custodians that Plaintiffs determine are likely to have such documents), there is no way to know at the present time when such documents will be produced, either early or late.  Given this reality, the Plaintiffs' proposal gives two months from the completion of document production to the conclusion of discovery pool depositions.

The Plaintiffs' proposal not only provides more time with the documents; it also provides an important safe harbor provision.  Prescribing doctor depositions would not be allowed to go forward absent agreement of the parties until document production was complete (see Plaintiffs' Proposed CMO No. 2, Paragraph 5(e)).  Thus, Plaintiffs would be protected from prejudice should the Defendants not produce documents in a timely manner or improperly designate materials as protected.

The Plaintiffs' proposed document production completion date provides Defendants approximately five and a half months to complete document production of a limited document set.  This is a reasonable timeframe given the volume limitation imposed and the fact that first cases alleging an injury due to Xarelto were filed over seventeen months ago.[1]  Defendants have known litigation such as this MDL was coming since the initial petition was filed at the Judicial Panel on Multidistrict litigation on October 9, 2014.  Defendants have had ample time to identify

---

[1] The first case was filed in February 2014 in Pennsylvania.  The first federal case was filed in June 2014.

3

and collect files and prepare them for production.  Defendants have known these productions would be required for at least one year.[2]

In sum, the Plaintiffs' schedule sets a reasonable schedule that requires a document production completion date that is meaningful and appropriately tied to the discovery that follows.  Moving the production date past January 15, 2016, will require other parts of the schedule to be condensed in ways that prejudice the Plaintiffs.  Not surprisingly, this is exactly what Defendants propose.

## II.	The Defendants' Proposed Delay of Document Production Inappropriately Condenses the Discovery Schedule in a Manner that is Highly Prejudicial to Plaintiffs

To overcome the Defendants' claimed theoretical impossibility on document production, the Defendants propose a schedule that prejudices the Plaintiffs not just by a later production of documents but also by condensing the discovery schedule.  Defendants have to make up for the loss of forty-five days somewhere in the schedule with their later document production and that time is made up at the Plaintiffs' expense.

The Defendants proposal moves the document production date from January 15, 2016 to February 26, 2016 – nearly one and a half months.  To make up for part of that time period and still meet a September 12, 2016, trial date, the Defendants reduce the amount of time to take depositions from the completion of document production to the close of discovery.  Defendants propose a deposition conclusion date of May 11, 2016.  This is approximately one and a half months – half of the amount of time that would be allowed under the Plaintiffs' schedule.  With this schedule, Plaintiffs would be required to take the depositions of the majority of the corporate

---

[2] Defendants were served master discovery requests in Pennsylvania in December 2014.  The Defendants have since responded to that discovery.  Defendants were also provided draft Requests for Production of Documents from the Plaintiffs in this MDL in February 2015.

witnesses *prior* to the completion of production and the conclusion of the privilege log process. This is highly prejudicial to the Plaintiffs.

If the Defendants do not produce relevant documents to Plaintiffs in sufficient time, the production has limited, if any, value. It makes little sense to order the Defendants to produce a sufficient volume of documents but allow them to produce the documents over such an extended period that Plaintiffs cannot use the documents. Again, nearly every discovery event is driven by the production of documents. The production has to come first and then the rest of the discovery will follow.

As to the discovery pool plaintiff depositions, Defendants would conclude discovery pool depositions by March 28, 2016, and provide for no safe-harbor provision related to prescribing physicians. Defendants' proposal completes document production only one month before the close of discovery pool depositions. This is insufficient time to even review the documents, much less use them. More specifically, the Plaintiffs proposed schedule allows for 56 days for depositions with a complete production whereas the Defendants provide only 31 days. The Plaintiffs' proposal is nearly 100% longer and allows time to deal with potential issues with documents withheld under PTO 19. While Defendants suggest that depositions could possibly be re-opened for good cause shown, Plaintiffs suggest that the parties should set a schedule that inconveniences practicing physicians with patients to treat as minimally as possible. While there is always a possibility of re-opening a deposition for good cause, the schedule should not build such a possibility into it. Rather, it should require the Defendants to timely produce the documents. Again, for all of the reasons set out above, the Defendants' proposal is highly prejudicial to the Plaintiff.

III.    **The Discovery Schedule Should be Set to Provide the Parties the Discovery Needed for Trial Rather than Defendants' Baseless Fears**

It is inequitable to the Plaintiffs to shorten the already accelerated discovery schedule, and in particular the deposition schedule, to satisfy the Defendants' theoretical concerns pertaining to their ability to meet their production obligations.  The Court and the Plaintiffs have repeatedly attempted to address the Defendants' fears to no avail by moving the deadline for document production back.

The Plaintiffs originally proposed a November 9, 2015, document production deadline. This proposal was made as an effort to compromise with the Defendants given the Court's suggestion that document production be completed within sixty (60) days.  In response to the Plaintiffs' compromise and the Defendants' continuing complaints, the Court indicated a document production date in January 2016.  Rather than acknowledging that they would make all efforts to meet such a production schedule, the Defendants continue to try to push the date back. Plaintiffs respectfully suggest the completion deadline should not be moved past January 15, and, at the very least, the parties should embark on schedule that provides documents in such a timeframe before bumping the date back again.

Not only is the Defendants' fear of impossibility completely theoretical, Defendants' claims of impossibility ring hollow.  In order to come to the conclusion that a January 15, 2016, document production completion date is "mathematically impossible," the Defendants make multiple assumptions.  To start, Defendants assume that each custodial file will average 50,000 documents.  The Defendants then assume that 50,000 documents will average 500,000 pages. These assumptions bring the Defendants to the conclusion that 60 million pages of documents **may** need to be produced.  There is no actual support for these assumptions beyond Mr. Coon's assumptions.     These assumptions have no real basis in this litigation, and, in Plaintiffs

6

experience, the Defendants' assumptions are likely high.  *See* Declaration of Roger Denton (Aug. 3, 2015) (attached as Exhibit 1).  If in actuality the average custodial file is 250,0000 pages, the amount to be produced falls to 30 million pages.  In other words, Defendants would have already produced more than half of documents for the first four bellwether trials.

The simple fact is that Defendants cannot possibly provide a reasonably accurate estimate on the pages to be produced without knowing the custodians Plaintiffs will select.  In fact, even for the custodians that are in the Defendants' collection process, Defendants have been either unable or unwilling to provide Plaintiffs an accurate page count.  Further, Defendants do not indicate whether their assumptions account for duplicate files or whether these assumptions are unique files.  As Defendants point out in their brief, the de-duplication process is intended to reduce the burden on the parties and require the production of unique documents.  Plaintiffs have agreed to de-duplication thereby reducing the Defendants' burden.

The Defendants also argue that the Court's required 5 million pages per month is:  (1) unprecedented in the pharmaceutical MDL history; and (2) their maximum capacity.   The Plaintiffs remind the Court that this MDL has two large, international pharmaceutical entities as the defendants.  A requirement to produce 2.5 million pages a month per defendant is hardly unprecedented.  In fact, one of these defendants alone, Bayer, produced 3.3 million pages per month during the Yaz litigation.[3]  Thus, the Court is not requesting any type of Herculean effort that is unmatched in MDL history.

The Defendants' own productions in this case are inconsistent with their arguments on their abilities.  When trying to convince the Court all of the effort they have expended to this

---

[3] Defendants attempt to discredit this fact in their brief by indicating that a lot of duplicate files were included in the Yaz productions and the volumes produced are not comparable because the Xarelto production would be unique files.  Plaintiffs agreed to de-duplication in an effort to make document production more efficient.  If it turns out that de-duplication makes production more difficult, Plaintiffs suggest that de-duplication be removed from the production protocol.

point, the Defendants trumpet their glory by pointing out to the Court that they have, in very short order, already produced 37 million pages of documents.[4]   However, Defendants want to ignore that they produced this information extraordinarily quickly.  Document production began on April 30.  In this period, the Defendants have produced over 30 million pages of documents. Given that volume, it is clear that, given certain circumstances, the Defendants are capable of producing substantially higher volumes than 5 million pages per month.

From the Plaintiffs' view, the primary reasons the Defendants appear to be having issues meeting the necessary production completion date are issues of the Defendants making.  First, as previously briefed to the Court, the Defendants are unnecessarily redacting information that may otherwise be considered protected under the Court's Protective Order.  It is not necessary to redact the information that Defendants are redacting – in many cases inappropriately based on "relevance."   While Plaintiffs agree the Defendants need some period of time to review documents for privilege, such a review should be able to be expediently done simply by searching for files with authors or recipients that could possibly be providing privileged communications.  This should be a quick process.  However, Defendants should not require any substantial time for responsiveness review.  It is not necessary for Defendants to review and redact non-responsive information – even if that information pertains to other products.  The Plaintiffs agreed to a Protective Order that allows Defendants to designate such information as protected and not free to be disclosed.  The Plaintiffs understand the Defendants desire to protect trade secrets and confidential information.  By designating the material as confidential, the Defendants are protected.  The extra effort to redact is unnecessary and serves simply as a

---

[4] Approximately 28 million of these pages are the NDA and IND – documents that were voluntarily produced by the Defendants pursuant to CMO No. 1.  The reality is that the Defendants have produced very few pages from custodial files actually requested by Plaintiffs.

hindrance to efficient document production.  The Defendants' efforts in this regard are wasteful if not inappropriate.

The second issue also of the Defendants' creation was the decision to pool resources for document production.  All of the Defendants' statements about the resources expended on document production treat these two large international corporations as one entity.  They are not one entity.  They did not have to hire one company to handle or coordinate document production. Had the Defendants decided to conduct document production independently of each other, each could be producing documents at the 5 million page per month level and many of the issues being dealt with by the Court on this issue would not be present.  Defendants are of course allowed to structure their defense team as they wish.  However, their decision to combine efforts for document production should not be able to be used as a shield to defend against timely document production.

This is why the Plaintiffs continue to advocate that a more reasonable position is to endeavor to start the document production with a completion date of January 15, 2016.  The Parties should not assume impossibility based on speculation.  Once the production completion date is set beyond January 15, 2016, the Parties will not be able to go back to January 15 if it turns out that Defendants' "Chicken Little" prophesies are not accurate.

**IV.** **Plaintiffs are Willing to Establish an Infrastructure and Believe the Court's Involvement at the Bi-Weekly Discovery Conferences Will Keep the Parties on a Reasonable Schedule**

Plaintiffs recognize that to meet a January 15, 2016, document production completion date issues like the timing of requesting custodial sources and the search term list are important issues.  Plaintiffs will timely provide these requests.  All of these issues can be handled and

discussed at the bi-weekly discovery conferences to make sure that the Parties are each providing the information needed to meet the production completion date.

Defendants incorrectly argue that Plaintiffs oppose any infrastructure pertaining to document production.  Plaintiffs have informed the Defendants on multiple occasions that Plaintiffs are willing to prioritize the custodial productions and discuss a schedule to provide names of custodial files and non-custodial sources to Defendants.  Plaintiffs have already provided, without any significant discovery, more than half of the 120 allowed custodial names. Unfortunately, Defendants' "herculean" efforts have not resulted in a meaningful production as Defendants have produced only a portion of a small minority of these files.  Defendants have yet to even indicate that a single custodial file is complete.  Rather than engage the Plaintiffs on such a schedule, the Defendants have limited their infrastructure request to a demand that Plaintiffs be limited to files that Defendants pre-selected for collection without the input of the Plaintiffs.

Plaintiffs are unwilling to entertain an infrastructure that allows the Defendants to limit the custodians that may be requested by the Plaintiffs.  Plaintiffs have agreed to limit the production for the first four bellwether trials to 120 custodian files and 25 non-custodial sources. These are severe limitations.[5]  Because Plaintiffs are only receiving a limited document set for the bellwether trials (rather than a complete response to the Plaintiffs' Request for Production of Documents), the actual custodians selected for production are critical to the Plaintiffs' ability to conduct discovery.  The custodians selected and produced will determine the extent of the documents Plaintiffs receive.  There are both practical and strategic reasons behind the Plaintiffs selections – not the least of which is trying to select custodians that will not provide documents

---

[5] Defendants citation to Fed. R. Civ. P. 26(b)(2)(C)(iii) to argue for a longer production time is misplaced.  The Plaintiffs have already agreed to limit the extent of discovery.  The present dispute is about the timing – not the extent of discovery.  The Court suggested early trial dates.  The Plaintiffs agree with that suggestion and have agreed to limits on the extent of discovery in order to meet the Court's timeframes.

that are substantially the same.  Plaintiffs have no knowledge of how the Defendants selected the custodians they identified for document collection; however, Plaintiffs are sure it was not with the Plaintiffs' discovery needs in mind.  As shown below, Plaintiffs have attempted to make custodial selections based on their status as a witness for which the Defendants have begun collection.  However, the Plaintiffs have to be allowed to implement their own discovery strategy.

At this point, Plaintiffs have requested sixty-six (66) individual custodial files from the Defendants.  Plaintiffs previously provided Defendants with forty-four (44) custodians based upon very limited public information and the Defendants voluntary disclosures.  At least as to Bayer, many, if not most, of these custodians were not part of the Defendants' collection process. This is troubling as these were individuals identified by Plaintiffs in their own independent investigation of individuals involved with Xarelto.  Plaintiffs have recently provided Defendants with an additional twenty-two (22) custodians – most of whom are on the list of custodians for which Defendants have begun collection.  Thus, at this early stage and with very limited document production, the Plaintiffs have already provided sixty-six (66) of their allowed 120 custodians.  Plaintiffs are endeavoring to provide Defendants with additional custodians as soon as reasonably possible; however, the selection of custodians is driven by the timely production of documents.  Through these productions, Plaintiffs will become aware of additional custodians that need to be requested.  To the extent the Defendants want to expedite this process, Plaintiffs suggest the best way to achieve such expedited selection is the early production of custodial files.

As to search terms, the Defendants believe that the search term list has the potential to delay the process.  The Plaintiffs agree.  The Parties have been engaged in discussions on the

search term list.  However, the formation of search terms is by its nature an iterative process.  As more information is learned, the search term list can be better refined.

Defendants initially provided the PSC with a list of search terms that was, in essence, several hundred derivations of the word Xarelto.  Plaintiffs have since provided the Defendants with recommended revisions to the list.  Defendants have accepted some, are testing others and have rejected still more.  Plaintiffs are engaged in the process and working toward an agreed list, but Plaintiffs are operating at a disadvantage.  Plaintiffs do not have substantial discovery by which to refine the search term list.  As discovery goes forward, Plaintiffs necessarily obtain more knowledge and can further refine the terms.  Defendants apparently want the Plaintiffs to agree to a search term list without the requisite information.  This is not a workable solution. Instead, the Parties must arrive at an agreed schedule for finalizing search terms.  Again, these issues can all be addressed during the bi-weekly conferences and addressed by the Court if they become a problem.

Finally, the Defendants assert that activities in jurisdictions outside of the MDL may impact their ability to produce documents in this proceeding.  The PSC has consistently stated its willingness to coordinate with other venues.[6]  However, the effort to coordinate does not mean that the PSC can control the actions in other venues.  Judges and counsel in other jurisdictions have their own schedules that must be met.  These are outside of the control of the PSC.  Again, the PSC desires coordination but it cannot be held responsible for the discovery needs of counsel outside of the MDL.  However, the PSC will not be able to obtain coordination if the Defendants are unwilling to commit to a robust discovery schedule in the MDL.  If other jurisdictions view

---

[6] Defendants point to a letter received from counsel in the Pennsylvania state court litigation.  To start, Defendants mistakenly refer to the counsel that provided the letter as a PEC firm.  That is incorrect.  Mr. Weinkowitz is a partner in the Levin Fishbein firm.  His partner is a PSC member.  Second, the PEC was not consulted on the letter or the request and was informed only after its submission to defense counsel.  Further, the PEC was informed that the request was due to the Defendants' motion to dismiss for forum *non conveniens*.

the MDL discovery plan as too restrictive, they will attempt to obtain their own, independent plans in state court that satisfy their particular discovery needs.

At the time of Plaintiffs' proposed document production completion date, the parties will be eleven months from the formation of this MDL, over a year from the JPML petition and well over a year and a half since the first lawsuit.  Completion of document production should be delayed no longer.

Respectfully submitted,

*/s/ Leonard A. Davis*

_____
Leonard A. Davis, Esq. (Bar No. 14190)
*HERMAN, HERMAN & KATZ, LLC*
820 O'Keefe Avenue
New Orleans, LA  70113
PH:  (504) 581-4892
FAX:  (504) 561-6024
Email:  ldavis@hhklawfirm.com


Gerald E. Meunier (Bar No. 9471)
*GAINSBURGH BENJAMIN DAVID MEUNIER
& WARSHAUER, LLC*
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA  70163-2800
PH:  (504) 522-2304
FAX: (504) 528-9973
Email:  gmeunier@gainsben.com

*Plaintiffs' Liaison Counsel*

## PLAINTIFFS' STEERING COMMITTEE

| | |
|---|---|
| Andy D. Birchfield, Jr. (Co-Lead Counsel)<br>234 Commerce Street<br>Post Office Box 4160<br>Montgomery, Alabama 36103-4160<br>Phone: (334) 269-2343<br>Fax: (334) 954-7555<br>Email: Andy.Birchfield@BeasleyAllen.com | Bradley D. Honnold<br>11150 Overbrook Rd., Ste. 200<br>Leawood, KS 66211<br>Phone: (913) 266-2300<br>Fax: (913) 266-2366<br>Email: bhonnold@bflawfirm.com |
| Brian H. Barr (Co-Lead Counsel)<br>316 Baylen Street, Suite 600<br>Pensacola, FL 32502<br>Phone: (850) 435-7045<br>Fax: (850) 436-6044<br>Email: bbarr@levinlaw.com | Frederick Longer<br>510 Walnut Street, Suite 500<br>Philadelphia, PA 19106<br>Phone: (215) 592-1500<br>Fax: (215-592-4663<br>Email: flonger@lfsblaw.com |
| Russell T. Abney<br>2100 RiverEdge Parkway,<br>Suite 720<br>Atlanta, Georgia 30328<br>Email: rabney@lawyerworks.com | Sindhu S. Daniel<br>550 Broad Street, Suite 920<br>Newark, NJ 07102<br>Phone: (973) 639-9100<br>Fax: (973) 639-9393<br>Email: sdaniel@seegerweiss.com |
| Dr. Mark Alan Hoffman<br>1650 Market Street, Suite 3450<br>Philadelphia, PA 19103<br>Phone: (215) 574-2000<br>Fax: (215) 574-3080<br>Email: mhoffman@rossfellercasey.com | Roger C. Denton<br>100 S. 4th Street<br>St. Louis, MO 63102<br>Phone: (314) 621-6115<br>Email: rdenton@uselaws.com |
| Michael Goetz<br>201 N. Franklin St., 7th Floor<br>Tampa, FL 33602<br>Phone: (813) 221-6581<br>Fax: (813) 222-4737<br>Email: MGoetz@ForThePeople.com | Dianne M. Nast<br>1101 Market Street, Suite 2801<br>Philadelphia, Pennsylvania 19107<br>Phone: (215) 923-9300<br>Email: dnast@nastlaw.com |
| Neil D. Overholtz<br>17 E. Main Street , Suite 200<br>Pensacola, Florida 32501<br>Phone: (850) 916-7450<br>Fax: (850) 916-7449<br>Email: noverholtz@awkolaw.com | Ellen Relkin<br>700 Broadway<br>New York, New York 10003<br>Phone: (212) 558-5500<br>Fax: (212) 344-5461<br>Email: Erelkin@weitzlux.com |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 3, 2015, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs and Defendants by operation of the court's electronic filing system and served on all other plaintiff counsel via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre-Trial Order No. 17.

*/s/ Leonard A. Davis*
**Leonard A. Davis**