# EXHIBIT 1

Will Kemp, Esq.
Nevada Bar No.: 1205
Eric M. Pepperman, Esq.
Nevada Bar No.: 11679
KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Pkwy., 17th Fl.
Las Vegas, NV  89169
m.jacobs@kempjones.com
702.385.6000 (work)
702.385.6001 (fax)

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO® PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | <u>Taggart v. Janssen Research & Development</u><br>Case No: 2:14-cv-02944 |

## AMENDED COMPLAINT

Plaintiff, JUDITH GAIL TAGGART, individually and as Special Administrator of the Estate of RICHARD H. TAGGART (Decedent), by and through her attorneys of record, Will Kemp, Esq. and Eric Pepperman, Esq. of the law firm KEMP, JONES, & COULTHARD, LLP, and for her causes of action against JANSSEN RESEARCH & DEVELOPMENT LLC f/k/a JOHNSON AND JOHNSON PHARMACEUTICAL RESEARCH AND DEVELOPMENT LLC; JANSSEN ORTHO LLC; JANSSEN PHARMACEUTICALS, INC. f/k/a JANSSEN PHARMACEUTICA INC. f/k/a ORTHO-MCNEIL JANSSEN PHARMACEUTICALS, INC.; BAYER HEALTHCARE PHARMACEUTICALS, INC.; BAYER PHARMA AG; BAYER CORPORATION; BAYER HEALTHCARE LLC; BAYER HEALTHCARE AG; BAYER AG; DOES I-X; and ROE CORPORATIONS XI-XX, hereby alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the amount in controversy as to the Plaintiff exceeds $75,000.00, exclusive of interest and costs, and because there is complete diversity of citizenship between the Plaintiff and the Defendants.

2.     Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claim occurred in this District, and because Defendants' conduct substantial business in this District.

3.     This Court has personal jurisdiction over the Defendants because they have done business in the State of Nevada, have committed a tort in whole or in part in the State of Nevada, have substantial and continuing contact with the State of Nevada, and derive substantial revenue from goods used and consumed within the State of Nevada.  The Defendants actively sell, market, and promote their pharmaceutical product Xarelto to physicians and consumers in this state on a regular and consistent basis.

## NATURE OF THE CASE

4.     This action is brought on behalf of Plaintiff JUDITH TAGGART because Plaintiff's spouse, RICHARD H. TAGGART (deceased), suffered injuries and ultimately died from the severe effects of bleeding caused by the prescription drug rivaroxaban manufactured and distributed by Defendants under the trade name Xarelto, which is a medication used to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, to treat deep vein thrombosis (hereinafter referred to as "DVT") and pulmonary embolism (hereinafter referred to as "PE"), to reduce the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

5.     Defendants, JANSSEN RESEARCH & DEVELOPMENT LLC f/k/a JOHNSON AND JOHNSON PHARMACEUTICAL RESEARCH AND DEVELOPMENT LLC, JANSSEN ORTHO LLC, JANSSEN PHARMACEUTICALS, INC. f/k/a JANSSEN PHARMACEUTICA INC. f/k/a ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC., BAYER HEALTHCARE PHARMACEUTICALS, INC., BAYER PHARMA AG, BAYER CORPORATION, BAYER HEALTHCARE LLC, BAYER HEALTHCARE AG, and BAYER AG (hereinafter collectively referred to as "Defendants") designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed Xarelto.

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

6.    When warning of safety and risks of Xarelto, Defendants negligently and/or fraudulently represented to the medical and healthcare community, the Food and Drug Administration (hereinafter referred to as the "FDA"), to RICHARD TAGGART, and the public in general, that Xarelto had been tested and was found to be safe and/or effective for its indicated use.

7.    Defendants concealed their knowledge of Xarelto's defects from RICHARD TAGGART, the FDA, the public in general, and/or the medical community specifically.

8.    These representations were made by Defendants with the intent of defrauding and deceiving RICHARD TAGGART, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing the public in general, and the medical community in particular, to recommend, dispense and/or purchase Xarelto for use to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, to treat DVT and PE, to reduce the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery, all of which evinced a callous, reckless, willful, depraved indifference to health, safety and welfare of RICHARD TAGGART.

9.    Defendants negligently and improperly failed to perform sufficient tests, if any, on humans using Xarelto during clinical trials, forcing RICHARD TAGGART, and RICHARD TAGGART's physicians, hospitals, and/or the FDA, to rely on safety information that applies to other non-valvular atrial fibrillation treatment and DVT/PE treatment and prophylaxis, which does not entirely and/or necessarily apply to Xarelto whatsoever.

10.    As a result of the foregoing acts and omissions, RICHARD TAGGART was caused to suffer serious and dangerous side effects, including, *inter alia*, life-threatening bleeding, which ultimately caused his death, as well as other severe and personal injuries, physical pain, mental anguish, and expenses for hospitalization and medical treatment prior to his death.

11.    Defendants concealed their knowledge of the defects in their products from RICHARD TAGGART, and RICHARD TAGGART's physicians, hospitals, pharmacists, the FDA, and the public in general.

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

12.     Consequently, Plaintiff, as RICHARD TAGGART's heir, seeks general, special, and economic damages as a result of RICHARD TAGGART's use of Xarelto and his wrongful death.

13.     Consequently, Plaintiff also seeks general, special, and economic damages as result of RICHARD TAGGART's use of Xarelto and his resulting injures and wrongful death, as Plaintiff has suffered damages and harm, including, but not limited to, emotional distress, medical expenses, other economic harm, as well as a loss of consortium, services, society, companionship, love and comfort.

### PARTY PLAINTIFF

14.     Plaintiff JUDITH GAIL TAGGART (hereinafter "Plaintiff "), at all times relevant hereto, is a citizen and resident of the State of Nevada, and the lawful heir to Decedent, RICHARD TAGGART. She is also the duly authorized Special Administrator of the Estate of Decedent RICHARD TAGGART. As Special Administrator, Plaintiff is authorized to bring this action on behalf of Decedent's Estate.

15.     Decedent RICHARD TAGGART (hereinafter "Decedent"), at all times relevant hereto, was a citizen and resident of the State of Nevada.

16.     Upon information and belief, Decedent was prescribed Xarelto in the State of Nevada, on or around May 12, 2014, upon direction of his physician for the treatment of an embolism, or blood clot.

17.     Upon information and belief, Decedent first began using Xarelto on or about May 12, 2014, and used Xarelto up through his admission to the hospital later that month.

18.     Upon information and belief, as a direct and proximate result of the use of Defendants' Xarelto, Decedent experienced bleeding, causing him serious personal injuries, which required a lengthy period of hospitalization and ultimately led to his death on or about June 4, 2014.

19.     As a direct and proximate result of the use of Defendants' Xarelto, Decedent suffered serious and dangerous side effects including, life-threatening bleeding, which ultimately caused his death, as well as other severe and personal injuries, physical pain and mental anguish, including, diminished enjoyment of life, and expenses for hospitalization and medical treatment, while

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

hospitalized prior to his death.

20.     As a direct and proximate result of Decedent's use of Xarelto and his resulting injures and death, Plaintiff has suffered damages and harm, including, but not limited to, loss of comfort, support, companionship, society and consortium, and further, has suffered great grief, sorrow and extreme emotional distress as a result of the death of her husband.

21.     The injuries and damages sustained by Plaintiff were caused by Defendants' Xarelto.

## **PARTY DEFENDANTS**

22.     Upon information and belief, Defendant JANSSEN RESEARCH & DEVELOPMENT LLC f/k/a JOHNSON AND JOHNSON RESEARCH AND DEVELOPMENT LLC (hereinafter referred to as "JANSSEN R&D") is a limited liability company organized under the laws of New Jersey, with a principal place of business at One Johnson & Johnson Plaza, New Brunswick, Middlesex County, New Jersey 08933.  Defendant JANSSEN R&D's sole member is Janssen Pharmaceuticals, Inc., which is a Pennsylvania corporation with a principal place of business at 1125 Trenton-Harbourton Road, Titusville, New Jersey 08560. Accordingly, JANSSEN R&D is a citizen of Pennsylvania and New Jersey for purposes of determining diversity under 28 U.S.C. § 1332.  Defendant JANSSEN R&D is the holder of the approved New Drug Application ("NDA") for Xarelto as well as the supplemental NDA.

23.     As part of its business, JANSSEN R&D is involved in the research, development, sales, and marketing of pharmaceutical products including Xarelto and rivaroxaban.

24.     Upon information and belief, Defendant JANSSEN R&D has transacted and conducted business in the State of Nevada.

25.     Upon information and belief, Defendant JANSSEN R&D has derived substantial revenue from goods and products used in the State of Nevada.

26.     Upon information and belief, Defendant, JANSSEN R&D, expected or should have expected its acts to have consequence within the United States of America and the State of Nevada, and derived substantial revenue from interstate commerce within the United States and the State of Nevada, more particularly.

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

27.     Upon information and belief, and at all relevant times, Defendant, JANSSEN R&D, was in the business of and did design, research, manufacture, test, advertise, promote, market, sell, and distribute the drug Xarelto for use as an oral anticoagulant, the primary purposes of which are to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, to treat DVT and PE, to reduce the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

28.     Upon information and belief, Defendant JANSSEN PHARMACEUTICALS, INC. f/k/a JANSSEN PHARMACEUTICA INC. f/k/a ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC. (hereinafter referred to as "JANSSEN PHARM") is a Pennsylvania corporation, having a principal place of business at 1125 Trenton-Harbourton Road, Titusville, New Jersey 08560.

29.     As part of its business, JANSSEN PHARM is involved in the research, development, sales, and marketing of pharmaceutical products including Xarelto and rivaroxaban.

30.     Upon information and belief, Defendant, JANSSEN PHARM has transacted and conducted business in the State of Nevada.

31.     Upon information and belief, Defendant, JANSSEN PHARM, has derived substantial revenue from goods and products used in the State of Nevada.

32.     Upon information and belief, Defendant, JANSSEN PHARM, expected or should have expected its acts to have consequence within the United States of America and the State of Nevada, and derived substantial revenue from interstate commerce within the United States and the State of Nevada, more particularly.

33.     Upon information and belief, and at all relevant times, Defendant, JANSSEN PHARM, was in the business of and did design, research, manufacture, test, advertise, promote, market, sell, and distribute the drug Xarelto for use as an oral anticoagulant, the primary purposes of which are to reduce the risk of stroke and systemic embolism in patients with non- valvular atrial fibrillation, to treat DVT and PE, to reduce the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

34.     Upon information and belief, Defendant JANSSEN ORTHO LLC (hereinafter referred to as "JANSSEN ORTHO") is a limited liability company organized under the laws of Delaware, having a principal place of business at Stateroad 933 Km 0 1, Street Statero, Gurabo, Puerto Rico 00778  Defendant JANSSEN ORTHO is a subsidiary of Johnson & Johnson  The only member of JANSSEN ORTHO LLC is OMJ PR Holdings, which is incorporated in Ireland with a principal place of business in Puerto Rico.  Accordingly, JANSSEN ORTHO LLC is a citizen of Delaware, Ireland and Puerto Rico for purposes of determining diversity under 28 U.S.C. § 1332.

35.     As part of its business, JANSSEN ORTHO is involved in the research, development, sales, and marketing of pharmaceutical products including Xarelto and rivaroxaban.

36.     Upon information and belief, Defendant, JANSSEN ORTHO has transacted and conducted business in the State of Nevada.

37.     Upon information and belief, Defendant, JANSSEN ORTHO, has derived substantial revenue from goods and products used in the State of Nevada.

38.     Upon information and belief, Defendant, JANSSEN ORTHO, expected or should have expected its acts to have consequence within the United States of America and the State of Nevada, and derived substantial revenue from interstate commerce within the United States and the State of Nevada more particularly.

39.     Upon information and belief, and at all relevant times, Defendant, JANSSEN ORTHO, was in the business of and did design, research, manufacture, test, advertise, promote, market, sell, and distribute the drug Xarelto for use as an oral anticoagulant, the primary purposes of which are to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, to treat DVT and PE, to reduce the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

40.     Upon information and belief, Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC. is, and at all relevant times was, a corporation organized under the laws of the State of Delaware, with its principal place of business in the State of New Jersey.

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

41.     Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC. was formerly known as Berlex Laboratories, Inc., which was formerly known as Berlex, Inc. and BAYER HEALTHCARE PHARMACEUTICALS, INC. is the same corporate entity as Berlex, Inc. and Berlex Laboratories, Inc.

42.     As part of its business, BAYER HEALTHCARE PHARMACEUTICALS, INC. is involved in the research, development, sales, and marketing of pharmaceutical products including Xarelto and rivaroxaban.

43.     Upon information and belief, Defendant, BAYER HEALTHCARE PHARMACEUTICALS, INC., has transacted and conducted business in the State of Nevada.

44.     Upon information and belief, Defendant, BAYER HEALTHCARE PHARMACEUTICALS, INC., has derived substantial revenue from goods and products used in the State of Nevada.

45.     Upon information and belief, Defendant, BAYER HEALTHCARE PHARMACEUTICALS, INC., expected or should have expected its acts to have consequence within the United States of America and the State of Nevada, and derived substantial revenue from interstate commerce within the United States and the State of Nevada, more particularly.

46.     Upon information and belief, and at all relevant times, Defendant, BAYER HEALTHCARE PHARMACEUTICALS, INC., was in the business of and did design, research, manufacture, test, advertise, promote, market, sell, and distribute the drug Xarelto for use as an oral anticoagulant, the primary purposes of which are to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, to treat DVT and PE, to reduce the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

47.     Upon information and belief, Defendant BAYER PHARMA AG is a pharmaceutical company domiciled in Germany.

48.     Defendant BAYER PHARMA AG is formerly known as Bayer Schering Pharma AG and is the same corporate entity as Bayer Schering Pharma AG. Bayer Schering Pharma AG is

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

1  formerly known as Schering AG and is the same corporate entity as Schering AG.

2      49.    Upon information and belief, Schering AG was renamed Bayer Schering Pharma AG

3  effective December 29, 2006.

4      50.    Upon information and belief, Bayer Schering Pharma AG was renamed BAYER

5  PHARMA AG effective July 1, 2011.

6      51.    As part of its business, BAYER PHARMA AG is involved in the research,

7  development, sales, and marketing of pharmaceutical products including Xarelto and rivaroxaban.

8      52.    Upon information and belief, Defendant, BAYER PHARMA AG, has transacted and

9  conducted business in the State of Nevada.

10      53.    Upon information and belief, Defendant, BAYER PHARMA AG, has derived

11  substantial revenue from goods and products used in the State of Nevada.

12      54.    Upon information and belief, Defendant, BAYER PHARMA AG, expected or should

13  have expected its acts to have consequence within the United States of America and the State of

14  Nevada, and derived substantial revenue from interstate commerce within the United States and the

15  State of Nevada, more particularly.

16      55.    Upon information and belief, and at all relevant times, Defendant, BAYER

17  PHARMA AG, was in the business of and did design, research, manufacture, test, advertise,

18  promote, market, sell, and distribute the drug Xarelto for use as an oral anticoagulant, the primary

19  purposes of which are to reduce the risk of stroke and systemic embolism in patients with non-

20  valvular atrial fibrillation, to treat DVT and PE, to reduce the risk of recurrence of DVT and/or PE,

21  and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

22      56.    Upon information and belief, Defendant BAYER CORPORATION is an Indiana

23  corporation with its principal place of business at 100 Bayer Road, Pittsburgh, Pennsylvania

24  15205.

25      57.    Upon information and belief, Defendant BAYER CORPORATION is the sole

26  member of BAYER HEALTHCARE LLC, which owns 100% of Schering Berlin, Inc., which owns

27  100% of Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC.  As such, Defendant

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

BAYER CORPORATION is a parent of Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC.

58.     At relevant times, Defendant BAYER CORPORATION was engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drug Xarelto.

59.     At relevant times, Defendant BAYER CORPORATION conducted regular and sustained business in the State of Nevada, by selling and distributing its products in the State of Nevada and engaged in substantial commerce and business activity in the State of Nevada.

60.     Upon information and belief, Defendant BAYER HEALTHCARE LLC is a limited liability company duly formed and existing under and by the virtue of the laws of the State of Delaware, with its principal place of business located in the State of New Jersey.

61.     Upon information and belief, at all relevant times, Defendant BAYER HEALTHCARE LLC has transacted and conducted business in the State of Nevada, and derived substantial revenue from interstate commerce.  Defendant BAYER CORPORATION is the sole member of Defendant BAYER HEALTHCARE LLC.

62.     Upon information and belief, at all relevant times, Defendant BAYER HEALTHCARE LLC expected or should have expected that its acts would have consequences within the United States of America and in the State of Nevada, and derived substantial revenue from interstate commerce.

63.     Upon information and belief, at all relevant times, Defendant BAYER HEALTHCARE LLC was in the business of and did design, research, manufacture, test, advertise, promote, market, sell, and distribute Xarelto for use as an oral anticoagulant, the primary purposes of which are to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, to treat DVT and PE to reduce the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

64.     Upon information and belief, Defendant BAYER HEALTHCARE AG is a company domiciled in Germany and is the parent/holding company of Defendants BAYER CORPORATION, BAYER HEALTHCARE LLC, BAYER HEALTHCARE PHARMACEUTICALS, INC, and BAYER PHARMA AG.

65.     Upon information and belief, at all relevant times, Defendant BAYER HEALTHCARE AG has transacted and conducted business in the State of Nevada, and derived substantial revenue from interstate commerce.

66.     Upon information and belief, at all relevant times, Defendant BAYER HEALTHCARE AG expected or should have expected that its acts would have consequences within the United States of America, and in the State of Nevada, and derived substantial revenue from interstate commerce.

67.     Upon information and belief, at all relevant times, Defendant BAYER HEALTHCARE AG exercises dominion and control over Defendants BAYER CORPORATION, BAYER HEALTHCARE LLC, BAYER HEALTHCARE PHARMACEUTICALS, INC., and BAYER PHARMA AG.

68.     Upon information and belief, Defendant BAYER AG is a German chemical and pharmaceutical company that is headquartered in Leverkusen, North Rhine-Westphalia, Germany.

69.     Upon information and belief, Defendant BAYER AG is the third largest pharmaceutical company in the world.

70.     Upon information and belief, and at all relevant times, Defendant BAYER AG is the parent/holding company of all other named Defendants.

71.     Upon information and belief, at all relevant times, Defendant BAYER AG has transacted and conducted business in the State of Nevada, and derived substantial revenue from interstate commerce.

72.     Upon information and belief, at all relevant times, Defendant BAYER AG expected or should have expected that its acts would have consequences within the United States of America, and in the State of Nevada, and derived substantial revenue from interstate commerce.

73.     Upon information and belief, at all relevant times, Defendant BAYER AG was in the business of and did design, research, manufacture, test, advertise, promote, market, sell, and distribute Xarelto for use as an oral anticoagulant, the primary purposes of which are to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, to treat DVT and PE, to reduce the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

**FACTUAL BACKGROUND**

74.     At all relevant times, Defendants were in the business of and did design, research, manufacture, test, advertise, promote, market, sell and distribute Xarelto and rivaroxaban to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, to treat DVT and PE, to reduce the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

75.     Defendants received FDA approval for Xarelto, also known as rivaroxaban, on July 1, 2011, for the prophylaxis of DVT and PE in patients undergoing hip replacement or knee replacement surgeries (NDA 022406).

76.     Defendants then received additional FDA approval for Xarelto to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation on November 4, 2011 (NDA 202439).

77.     The additional indication for treatment of DVT and/or PE and the reduction in recurrence of DVT and/or PE was added to the label on November 2, 2012.

78.     Defendants launched Xarelto in the United States (hereinafter referred to as the "U.S.") in 2011.

79.     Xarelto is an anticoagulant that acts as a Factor Xa inhibitor, and is available by prescription in oral tablet doses of 20mg, 15mg, and 10mg.

80.     Approval of Xarelto for the prophylaxis of DVT and PE in patients undergoing hip replacement or knee replacement surgeries was based on a series of clinical trials known as the Regulation of Coagulation in Orthopedic Surgery to Prevent Deep Venous Thrombosis and

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

Pulmonary Embolism studies (hereinafter referred to as the "RECORD" studies). The findings of the RECORD studies showed that rivaroxaban was superior to enoxaparin for thromboprophylaxis after total knee and hip arthroplasty (based on the Defendants' definition), accompanied by similar rates of bleeding. However, the studies also showed a greater incidence with Xarelto of bleeding leading to decreased hemoglobin levels and transfusion of blood. (Lassen, M.R., et al. *Rivaroxaban versus Enoxaparin for Thromboprophylaxis after Total Knee Arthroplasty.* N.Engl.J.Med. 2008;358:2776-86; Kakkar, A.K., et al. *Extended duration rivaroxaban versus short-term enoxaparin for the prevention of venous thromboembolism after total hip arthroplasty: a double-blind, randomised controlled trial.* Lancet 2008;372:31-39; Ericksson, B.I., et al. *Rivaroxaban versus Enoxaparin for Thromboprophylaxis after Hip Arthroplasty.* N.Engl.J.Med. 2008;358:2765-75.)

81.     Approval of Xarelto for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation in the U.S. was based on a clinical trial known as the Rivaroxaban Once Daily Oral Direct Factor Xa Inhibition Compared with Vitamin K Antagonism for Prevention of Stroke and Embolism Trial in Atrial Fibrillation study (hereinafter referred to as "ROCKET AF"). The study's findings showed that rivaroxaban was non-inferior to warfarin for the prevention of stroke or systemic embolism in patients with non-valvular atrial fibrillation, with a similar risk of major bleeding. However, "bleeding from gastrointestinal sites, including upper, lower, and rectal sites, occurred more frequently in the rivaroxaban group, as did bleeding that led to a drop in the hemoglobin level or bleeding that required transfusion." (Patel, M.R., et al. *Rivaroxaban versus Waifarin in Nonvalvular Atrial Fibrillation.* N.Engl.J.Med. 2011;365:883-91.)

82.     Approval of Xarelto for the treatment of DVT and/or PE and the reduction in recurrence of DVT and/or PE in the U.S. was based on the clinical trials known as the EINSTEIN-DVT, EINSTEIN-PE, and EINSTEIN-Extension studies. The EINSTEIN-DVT study tested Xarelto versus a placebo, and merely determined that Xarelto offered an option for treatment of DVT, with obvious increased risk of bleeding events as compared to placebo. (The EINSTEIN Investigators. *Oral Rivaroxaban for Symptomatic Venous Thromboembolism.* N.Engl.J.Med. 2010;363:2499-510).

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

1   The EINSTEIN-Extension study confirmed that result. (Roumualdi, E., et al. *Oral rivaroxaban after*

2   *symptomatic venous thromboembolism: the continued treatment study (EINSTEIN-Extension study).*

3   Expert Rev. Cardiovasc. Ther. 2011;9(7):841-844).  The EINSTEIN-PE study's findings showed that

4   a rivaroxaban regimen was non-inferior to the standard therapy for initial and long-term treatment of

5   PE.  However, the studies also demonstrated an increased risk of adverse events with Xarelto,

6   including those that resulted in permanent discontinuation of Xarelto or prolonged hospitalization.

7   (The EINSTEIN- FE Investigators.  *Oral Rivaroxaban for the Treatment of Symptomatic Pulmonary*

8   *Embolism.* N.Engl.J.Med. 2012;366:1287-97.)

9       83.     Defendants use the results of the ROCKET AF study, the RECORD studies, and the

10  EINSTEIN studies to promote Xarelto in their promotional materials, including the Xarelto website,

11  which tout the positive results of those studies.  However, Defendants' promotional materials fail to

12  similarly highlight the increased risk of gastrointestinal bleeding and bleeding that required

13  transfusion, among other serious bleeding concerns.

14      84.     Defendants market Xarelto as a new oral anticoagulant treatment alternative to

15  warfarin (Coumadin), a long-established safe treatment for preventing stroke and systemic

16  embolism, in 60 years.  Defendants emphasize the supposed benefits of treatment with Xarelto over

17  warfarin, which they refer to as the Xarelto Difference - namely, that Xarelto does not require

18  periodic monitoring with blood tests and does not limit a patient's diet.

19      85.     However, in its QuarterWatch publication for the first quarter of the 2012 fiscal year,

20  the Institute for Safe Medication Practices ("ISMP") noted that, even during the approval process,

21  FDA "[r]eviewers also questioned the convenient once-a-day dosing scheme [of Xarelto], saying

22  blood level studies had shown peaks and troughs that could be eliminated by twice-a-day dosing."

23      86.     Importantly, there is no antidote to Xarelto, unlike warfarin.  Therefore, in the event

24  of hemorrhagic complications, there is no available reversal agent.  The original U.S. label approved

25  when the drug was first marketed in the U.S. did not contain a warning regarding the lack of

26  antidote, but instead only mentioned this important fact in the over dosage section.

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

87.     Defendants spent significant money in promoting Xarelto, which included at least $11,000,000.00 spent during 2013 alone on advertising in journals targeted at prescribers and consumers in the U.S.  In the third quarter of the 2013 fiscal year, Xarelto was the number one pharmaceutical product advertised in professional health journals based on pages and dollars spent.

88.     As a result of Defendants' aggressive marketing efforts, in its first full year of being on the market, Xarelto garnered approximately $582 million in sales globally.

89.     Defendants' website for Xarelto claims that over seven million people worldwide have been prescribed Xarelto.  In the U.S., approximately 1 million Xarelto prescriptions had been written by the end of 2013.

90.     During the Defendants' 2012 fiscal year, Xarelto garnered approximately $658 million in sales worldwide.  Then, in 2013, sales for Xarelto increased even further to more than clear the $1 billion threshold commonly referred to as "blockbuster" status in the pharmaceutical industry, ultimately reaching approximately $2 billion for the fiscal year.  Thus, Xarelto is now considered the leading anticoagulant on a global scale in terms of sales.

91.     As part of their marketing of Xarelto, Defendants widely disseminated direct-to-consumer advertising campaigns that were designed to influence patients, including Plaintiff, to make inquiries to their prescribing physician about Xarelto and/or request prescriptions for Xarelto.

92.     In the course of these direct to consumer advertisements, Defendants overstated the efficacy of Xarelto with respect to preventing stroke and systemic embolism, failed to adequately disclose to patients that there is no drug, agent, or means to reverse the anticoagulation effects of Xarelto, and that such irreversibility could have permanently disabling, life-threatening and fatal consequences.

93.     On June 6, 2013, Defendants received an untitled letter from the FDA's Office of Prescription Drug Promotion (hereinafter referred to as the "OPDP") regarding its promotional material for the atrial fibrillation indication, stating that, "the print ad is false or misleading because it minimizes the risks associated with Xarelto and makes a misleading claim" regarding dose adjustments, which was in violation of FDA regulations.  The OPDP thus requested that Defendants

immediately cease distribution of such promotional material.

94. Prior to Decedent's prescription of Xarelto, Plaintiff is informed and believes that Decedent became aware of the promotional materials described herein.

95. Prior to Decedent's prescription of Xarelto, Plaintiff is informed and believes that Decedent's prescribing physician received promotional materials and information from sales representatives of Defendants that Xarelto was just as effective as warfarin in reducing strokes in patients with non-valvular atrial fibrillation, as well as preventing DVT/PE in patients with prior history of DVT/PE or undergoing hip or knee replacement surgery, and was more convenient, without also adequately informing prescribing physicians that there was no reversal agent that could stop or control bleeding in patients taking Xarelto.

96. At all times relevant hereto, Defendants also failed to warn emergency room doctors, surgeons, and other critical care medical professionals that unlike generally-known measures taken to treat and stabilize bleeding in users of warfarin, there is no effective agent to reverse the anticoagulation effects of Xarelto, and therefore no effective means to treat and stabilize patients who experience uncontrolled bleeding while taking Xarelto.

97. At all times relevant to this action, The Xarelto Medication Guide, prepared and distributed by Defendants and intended for U.S. patients to whom Xarelto has been prescribed, failed to warn and disclose to patients that there is no agent to reverse the anticoagulation effects of Xarelto and that if serious bleeding occurs, it may be irreversible, permanently disabling, and life-threatening.

98. In the year leading up to June 30, 2012, there were 1,080 Xarelto-associated "Serious Adverse Event" ("SAE") Medwatch reports filed with the FDA, including at least 65 deaths. Of the reported hemorrhage events associated with Xarelto, 8% resulted in death, which was approximately twofold the risk of a hemorrhage-related death with warfarin.

99. At the close of the 2012 fiscal year, a total of 2,081 new Xarelto-associated SAE reports were filed with the FDA in its first full year on the market, ranking tenth among other pharmaceuticals in direct reports to the FDA. Of those reported events, 151 resulted in death, as

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

KEMP JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

compared to only 56 deaths associated with warfarin.

100.     The ISMP referred to these SAE figures as constituting a "strong signal" regarding the safety of Xarelto, defined as "evidence of sufficient weight to justify an alert to the public and the scientific community, and to warrant further investigation."

101.     Of particular note, in the first quarter of 2013, the number of reported serious adverse events associated with Xarelto (680) overtook that of Pradaxa (528), another new oral anticoagulant, which had previously ranked as the number one reported drug in terms of adverse events in 2012.

102.     Moreover, on a global scale, in the first eight months of 2013, German regulators received 968 Xarelto-related averse event reports, including 72 deaths, as compared to a total of 750 reports and 58 deaths in 2012.

103.     Despite the clear signal generated by the SAE data, Defendants failed to either alert the public and the scientific community, or perform further investigation into the safety of Xarelto.

104.     Defendants original and in some respects current labeling and prescribing information for Xarelto:

(a)     failed to investigate, research, study and define, fully and adequately, the safety profile of Xarelto;

(b)     failed to provide adequate warnings about the true safety risks associated with the use of Xarelto;

(c)     failed to provide adequate warning regarding the pharmacokinetic and pharmacodynamic variability of Xarelto and its effects on the degree of anticoagulation in a patient;

(d)     failed to provide adequate warning that it is difficult or impossible to assess the degree and/or extent of anticoagulation in patients taking Xarelto;

(e)     failed to disclose in the "Warnings" Section that there is no drug, agent or means to reverse the anticoagulation effects of Xarelto;

(f)     failed to advise prescribing physicians, such as the Plaintiffs physician, to instruct patients that there was no agent to reverse the anticoagulant effects of Xarelto;

(g)     failed to provide adequate instructions on how to intervene and/or stabilize a patient who suffers a bleed while taking Xarelto;

(h)     failed to provide adequate warnings and information related to the increased risks of bleeding events associated with aging patient populations of Xarelto users;

(i)     failed to provide adequate warnings regarding the increased risk of gastrointestinal bleeds in those taking Xarelto, especially, in those patients with a prior history of gastrointestinal issues and/or upset;

(j)     failed to provide adequate warnings regarding the increased risk of suffering a bleeding event, requiring blood transfusions in those taking Xarelto;

(k)     failed to provide adequate warnings regarding the need to assess renal functioning prior to starting a patient on Xarelto and to continue testing and monitoring of renal functioning periodically while the patient is on Xarelto;

(l)     failed to provide adequate warnings regarding the need to assess hepatic functioning prior to starting a patient on Xarelto and to continue testing and monitoring of hepatic functioning periodically while the patient is on Xarelto;

(m)     failed to include a "BOXED WARNING" about serious bleeding events associated with Xarelto;

(n)     failed to include a "BOLDED WARNING" about serious bleeding events associated with Xarelto; and

(o)     in their "Medication Guide" intended for distribution to patients to whom Xarelto has been prescribed, Defendants failed to disclose to patients that there is no drug, agent or means to reverse the anticoagulation effects of Xarelto and that if serious bleeding occurs, such irreversibility could have permanently disabling, life-threatening or fatal consequences.

105.     During the years since first marketing Xarelto in the U.S., Defendants modified the U.S. labeling and prescribing information for Xarelto, which included additional information regarding the use of Xarelto in patients taking certain medications. Despite being aware of: (1)

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

serious, and sometimes fatal, irreversible bleeding events associated with the use of Xarelto; and (2) 2,081 SAE Medwatch reports filed with the FDA in 2012 alone, including at least 151 deaths, Defendants nonetheless failed to provide adequate disclosures or warnings in their label as detailed in Paragraphs 104 (a)-(o).

106.    Prior to applying for and obtaining approval of Xarelto, Defendants knew or should have known that consumption of Xarelto was associated with and/or would cause the induction of life-threatening bleeding, and Defendants possessed at least one clinical scientific study, which evidence Defendants knew or should have known was a signal that life-threatening bleeding risk needed further testing and studies prior to its introduction to the market.

107.    Upon information and belief, despite life-threatening bleeding findings in a clinical trial and other clinical evidence, Defendants failed to adequately conduct complete and proper testing of Xarelto prior to filing their New Drug Application for Xarelto.

108.    Upon information and belief, from the date Defendants received FDA approval to market Xarelto, Defendants made, distributed, marketed, and sold Xarelto without adequate warning to Plaintiffs prescribing physicians or Plaintiff that Xarelto was associated with and/or could cause life-threatening bleeding, presented a risk of life-threatening bleeding in patients who used it, and that Defendants had not adequately conducted complete and proper testing and studies of Xarelto with regard to severe side effects, specifically life-threatening bleeding.

109.    Upon information and belief, Defendants concealed and failed to completely disclose their knowledge that Xarelto was associated with or could cause life-threatening bleeding as well as their knowledge that they had failed to fully test or study said risk.

110.    Upon information and belief, Defendants ignored the association between the use of Xarelto and the risk of developing life-threatening bleeding.

111.    Defendants' failure to disclose information that they possessed regarding the failure to adequately test and study Xarelto for life-threatening bleeding risk further rendered warnings for this medication inadequate.

112.   By reason of the foregoing acts and omissions, the Decedent was caused to suffer from life-threatening bleeding, which ultimately led to his death, as well as other severe and personal injuries, physical pain and mental anguish, including diminished enjoyment of life, expenses for hospitalization and medical treatment, and loss of earnings prior to his death.

113.   By reason of the forgoing acts and omissions, Plaintiff has suffered damages and harm, including, but not limited to, emotional distress, medical expenses, other economic harm, as well as a loss of consortium, services, society, companionship, love and comfort.

## FIRST CAUSE OF ACTION AS AGAINST THE DEFENDANTS

### (NEGLIGENCE)

114.   Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

115.   Defendants had a duty to exercise reasonable care in the designing, researching, manufacturing, marketing, supplying, promoting, packaging, sale and/or distribution of Xarelto into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous side effects.

116.   Defendants failed to exercise ordinary care in the designing, researching, manufacturing, marketing, supplying, promoting, packaging, sale, testing, quality assurance, quality control, and/or distribution of Xarelto into interstate commerce in that Defendants knew or should have known that using Xarelto created a high risk of unreasonable, dangerous side effects, including, life-threatening bleeding, and other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, expenses for hospitalization and medical treatment, and loss of earnings.

117.   The negligence of the Defendants, their agents, servants, and/or employees, included but was not limited to the following acts and/or omissions:

(a)     Manufacturing, producing, promoting, formulating, creating, and/or designing
        Xarelto without thoroughly testing it;

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

(b)   Manufacturing, producing, promoting, formulating, creating, and/or designing Xarelto without adequately testing it;

(c)   Not conducting sufficient testing programs to determine whether or not Xarelto was safe for use; in that Defendants herein knew or should have known that Xarelto was unsafe and unfit for use by reason of the dangers to its users;

(d)   Selling Xarelto without making proper and sufficient tests to determine the dangers to its users;

(e)   Negligently failing to adequately and correctly warn the Decedent, the public, the medical and healthcare profession, and the FDA of the dangers of Xarelto;

(f)   Failing to provide adequate instructions regarding safety precautions to be observed by users, handlers, and persons who would reasonably and foreseeably come into contact with, and more particularly, use, Xarelto;

(g)   Failing to test Xarelto and/or failing to adequately, sufficiently and properly test Xarelto.

(h)   Negligently advertising and recommending the use of Xarelto without sufficient knowledge as to its dangerous propensities;

(i)   Negligently representing that Xarelto was safe for use for its intended purpose, when, in fact, it was unsafe;

(j)   Negligently representing that Xarelto had equivalent safety and efficacy as other forms of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery;

(k)   Negligently designing Xarelto in a manner which was dangerous to its users;

(l)   Negligently manufacturing Xarelto in a manner which was dangerous to its users;

(m)   Negligently producing Xarelto in a manner which was dangerous to its users;

(n)   Negligently assembling Xarelto in a manner which was dangerous to its users;

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

(o)   Concealing information from the Decedent knowing that Xarelto was unsafe, dangerous, and/or non-conforming with FDA regulations;

(p)   Improperly concealing and/or misrepresenting information from the Decedent, healthcare professionals, and/or the FDA, concerning the severity of risks and dangers of Xarelto compared to other forms of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

118.   Defendants under-reported, under-estimated and downplayed the serious dangers of Xarelto.

119.   Defendants negligently compared the safety risk and/or dangers of Xarelto with other forms of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

120.   Defendants were negligent in the designing, researching, supplying, manufacturing, promoting, packaging, distributing, testing, advertising, warning, marketing and sale of Xarelto in that they:

(a)   Failed to use due care in designing and manufacturing Xarelto so as to avoid the aforementioned risks to individuals when Xarelto was used for treatment for reducing the risk of stroke and systemic embolism in patients with non- valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery;

(b)   Failed to accompany their product with proper and/or accurate warnings regarding all possible adverse side effects associated with the use of Xarelto;

(c)   Failed to accompany their product with proper warnings regarding all possible adverse side effects concerning the failure and/or malfunction of Xarelto;

(d)   Failed to accompany their product with accurate warnings regarding the risks of all

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

possible adverse side effects concerning Xarelto;

(e)     Failed to warn Decedent of the severity and duration of such adverse effects, as the warnings given did not accurately reflect the symptoms or severity of the side effects;

(f)     Failed to conduct adequate testing, including pre-clinical and clinical testing and post-marketing surveillance to determine the safety of Xarelto;

(g)     Failed to warn Decedent, prior to actively encouraging the sale of Xarelto, either directly or indirectly, orally or in writing, about the need for more comprehensive, more regular medical monitoring than usual to ensure early discovery of potentially serious side effects;

(h)     Were otherwise careless and/or negligent.

121.     Despite the fact that Defendants knew or should have known that Xarelto caused unreasonably dangerous side effects, Defendants continued and continue to market, manufacture, distribute and/or sell Xarelto to consumers, including the Decedent.

122.     Defendants knew or should have known that consumers such as the Decedent would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care, as set forth above.

123.     Defendants' negligence was the proximate cause of Decedent's injuries and ultimate death, and Plaintiff's harm and economic loss.

124.     As a result of the foregoing acts and omissions, Decedent was caused to suffer serious and dangerous side effects including, life-threatening bleeding, which resulted in his death, as well as other severe and personal injuries, physical pain and mental anguish, diminished enjoyment of life, expenses for hospitalization and medical treatment, and loss of earnings prior to his death.

125.     As a result of the foregoing acts and omissions, Plaintiff has suffered damages and harm, including, but not limited to, emotional distress, medical expenses, other economic harm, as well as a loss of consortium, services, society, companionship, love and comfort.

126.     By reason of the foregoing, Plaintiff has suffered damages as alleged herein.

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

## SECOND CAUSE OF ACTION AS AGAINST THE DEFENDANTS

### (STRICT PRODUCTS LIABILITY, INCLUDING COUNTS FOR (1) DEFECTIVE DESIGN; (2) MANUFACTURING AND DESIGN DEFECT; AND (3) FAILURE TO ADEQUATELY WARN)

127.    Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

128.    At all times herein mentioned, the Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, distributed, and/or have recently acquired the Defendants who have designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed Xarelto as herein above described that was used by the Decedent.

129.    That Xarelto was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by the Defendants.

130.    At those times, Xarelto was in an unsafe, defective, and dangerous condition, which was dangerous to users, and in particular, the Decedent herein.

131.    The Xarelto designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants was defective in design or formulation in that, when it left the hands of the manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design or formulation of Xarelto.

132.    The Xarelto designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants was defective in design and/or formulation, in that, when it left the hands of the Defendants, manufacturers, and/or suppliers, it was unreasonably dangerous, and it was more dangerous than an ordinary consumer would expect.

133.    At all times herein mentioned, Xarelto was in a defective condition and unsafe, and Defendants knew or had reason to know that said product was defective and unsafe, especially when used in the form and manner as provided by the Defendants.

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

134.   Defendants knew, or should have known that at all times herein mentioned, their Xarelto was in a defective condition, and was and is inherently dangerous and unsafe.

135.   At the time of the Decedent's use of Xarelto, Xarelto was being used for the purposes and in a manner normally intended, namely to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, to reduce the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

136.   Defendants with this knowledge voluntarily designed its Xarelto in a dangerous condition for use by the public, and in particular the Decedent.

137.   Defendants had a duty to create a product that was not unreasonably dangerous for its normal, intended use.

138.   Defendants created a product unreasonably dangerous for its normal, intended use.

139.   The Xarelto designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants was manufactured defectively in that Xarelto left the hands of Defendants in a defective condition and was unreasonably dangerous to its intended users.

140.   Xarelto designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants reached their intended users in the same defective and unreasonably dangerous condition in which the Defendants' Xarelto was manufactured.

141.   Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed a defective product which created an unreasonable risk to the health of consumers and to the Decedent in particular; and Defendants are therefore strictly liable for the injuries sustained by the Decedent.

142.   The Decedent could not, by the exercise of reasonable care, have discovered Xarelto's defects herein mentioned and perceived its danger.

143.   The Xarelto designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants was defective due to inadequate warnings or instructions, as the Defendants knew or should have known that the product created a risk of serious and dangerous side effects including, life-threatening bleeding, as well as other severe and personal

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

1  injuries which are permanent and lasting in nature and the Defendants failed to adequately warn of

2  said risk.

3        144.    The Xarelto designed, researched, manufactured, tested, advertised, promoted,

4  marketed, sold and distributed by Defendants was defective due to inadequate warnings and/or

5  inadequate testing.

6        145.    The Xarelto designed, researched, manufactured, tested, advertised, promoted,

7  marketed, sold and distributed by Defendants was defective due to inadequate post-marketing

8  surveillance and/or warnings because, after Defendants knew or should have known of the risks of

9  serious side effects including, life-threatening bleeding, as well as other severe and permanent health

10  consequences from Xarelto, they failed to provide adequate warnings to users or consumers of the

11  product, and continued to improperly advertise, market and/or promote their product, Xarelto.

12        146.    By reason of the foregoing, the Defendants have become strictly liable in tort to the

13  Plaintiff for the manufacturing, marketing, promoting, distribution, and selling of a defective

14  product, Xarelto.

15        147.    Defendants' defective design, manufacturing defect, and inadequate warnings of

16  Xarelto were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

17        148.    That said defects in Defendants' drug Xarelto were a substantial factor in causing

18  Decedent's injuries.  As a result of the foregoing acts and omissions, Decedent was caused to suffer

19  serious and dangerous side effects including, life-threatening bleeding, which resulted in his death,

20  as well as other severe and personal injuries, physical pain and mental anguish, diminished

21  enjoyment of life, expenses for hospitalization and medical treatment, and loss of earnings prior to

22  his death.

23        149.    As a result of the foregoing acts and omissions, Plaintiff has suffered damages and

24  harm, including, but not limited to, emotional distress, medical expenses, other economic harm, as

25  well as a loss of consortium, services, society, companionship, love and comfort.

26        150.    By reason of the foregoing, Plaintiff has suffered injuries and damages as alleged

27  herein.

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

## THIRD CAUSE OF ACTION AS AGAINST THE DEFENDANTS

## (BREACH OF EXPRESS WARRANTY)

151.    Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

152.    Defendants expressly warranted that Xarelto was safe and well accepted by users.

153.    Xarelto does not conform to these express representations because Xarelto is not safe and has numerous serious side effects, many of which were not accurately warned about by Defendants.  As a direct and proximate result of the breach of said warranties, Decedent suffered severe personal injuries resulting in his death and harm and economic loss prior to his death.

154.    Decedent did rely on the express warranties of the Defendants herein.

155.    Members of the medical community, including physicians and other healthcare professionals, relied upon the representations and warranties of the Defendants for use of Xarelto in recommending, prescribing, and/or dispensing Xarelto.

156.    The Defendants herein breached the aforesaid express warranties, as their drug Xarelto was defective.

157.    Defendants expressly represented to Decedent, Decedent's physicians, healthcare providers, and/or the FDA that Xarelto was safe and fit for use for the purposes intended, that it was of merchantable quality, that it did not produce any dangerous side effects in excess of those risks associated with other forms of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery, that the side effects it did produce were accurately reflected in the warnings and that it was adequately tested and fit for its intended use.

158.    Defendants knew or should have known that, in fact, said representations and warranties were false, misleading and untrue in that Xarelto was not safe and fit for the use intended, and, in fact, produced serious injuries to the users that were not accurately identified and represented

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

by Defendants.

159.    As a result of the foregoing acts and omissions, Decedent was caused to suffer serious and dangerous side effects including, life-threatening bleeding, which resulted in his death, as well as other severe and personal injuries, physical pain and mental anguish, diminished enjoyment of life, expenses for hospitalization and medical treatment, and loss of earnings prior to his death.

160.    As a result of the foregoing acts and omissions, Plaintiff has suffered damages and harm, including, but not limited to, emotional distress, medical expenses, other economic harm, as well as a loss of consortium, services, society, companionship, love and comfort.

161.    By reason of the foregoing, Plaintiff has suffered injuries and damages as alleged herein.

## FOURTH CAUSE OF ACTION AS AGAINST THE DEFENDANTS
## (BREACH OF IMPLIED WARRANTIES)

162.    Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

163.    At all times herein mentioned, the Defendants manufactured, compounded, portrayed, distributed, recommended, merchandized, advertised, promoted and sold Xarelto and/or have recently acquired the Defendants who have manufactured, compounded, portrayed, distributed, recommended, merchandized, advertised, promoted and sold Xarelto, to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, to treat DVT and PE, to reduce the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

164.    At the time Defendants marketed, sold, and distributed Xarelto for use by Decedent, Defendants knew of the use for which Xarelto was intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

165.    The Defendants impliedly represented and warranted to the users of Xarelto and their physicians, healthcare providers, and/or the FDA that Xarelto was safe and of merchantable quality and fit for the ordinary purpose for which said product was to be used.

166.    That said representations and warranties aforementioned were false, misleading, and inaccurate in that Xarelto was unsafe, unreasonably dangerous, improper, not of merchantable quality, and defective.

167.    Decedent, and/or members of the medical community and/or healthcare professionals did rely on said implied warranty of merchantability of fitness for a particular use and purpose.

168.    Decedent and Decedent's physicians and healthcare professionals reasonably relied upon the skill and judgment of Defendants as to whether Xarelto was of merchantable quality and safe and fit for its intended use.

169.    Xarelto was injected into the stream of commerce by the Defendants in a defective, unsafe, and inherently dangerous condition and the products and materials were expected to and did reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

170.    The Defendants herein breached the aforesaid implied warranties, as their drug Xarelto was not fit for its intended purposes and uses.

171.    As a result of the foregoing acts and omissions, Decedent was caused to suffer serious and dangerous side effects including, life-threatening bleeding, which resulted in his death, as well as other severe and personal injuries, physical pain and mental anguish, diminished enjoyment of life, expenses for hospitalization and medical treatment, and loss of earnings prior to his death.

172.    As a result of the foregoing acts and omissions, Plaintiff has suffered damages and harm, including, but not limited to, emotional distress, medical expenses, other economic harm, as well as a loss of consortium, services, society, companionship, love and comfort.

173.    By reason of the foregoing, Plaintiff has suffered injuries and damages as alleged herein.

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

## FIFTH CAUSE OF ACTION AS AGAINST THE DEFENDANTS

### (FRAUDULENT MISREPRESENTATION)

174.    Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

175.    The Defendants falsely and fraudulently represented to the medical and healthcare community, and to the Decedent, and/or the FDA, and the public in general, that said product, Xarelto, had been tested and was found to be safe and/or effective to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, to treat DVT and PE, to reduce the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

176.    That representations made by Defendants were, in fact, false.

177.    When said representations were made by Defendants, they knew those representations to be false and they willfully, wantonly and recklessly disregarded whether the representations were true.

178.    These representations were made by said Defendants with the intent of defrauding and deceiving the Decedent, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing the public in general, and the medical and healthcare community in particular, to recommend, prescribe, dispense and/or purchase said product, Xarelto, for use to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, to reduce the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery, all of which evinced a callous, reckless, willful, depraved indifference to the health, safety and welfare of the Plaintiff herein.

179.    At the time the aforesaid representations were made by the Defendants and, at the time the Decedent used Xarelto, the Decedent was unaware of the falsity of said representations and reasonably believed them to be true.

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

180.    In reliance upon said representations, the Decedent was induced to and did use Xarelto, thereby sustaining severe personal injuries resulting in death.

181.    Said Defendants knew and were aware or should have been aware that Xarelto had not been sufficiently tested, was defective in nature, and/or that it lacked adequate and/or sufficient warnings.

182.    Defendants knew or should have known that Xarelto had a potential to, could, and would cause severe and grievous injury, including death, to the users of said product, and that it was inherently dangerous in a manner that exceeded any purported, inaccurate, and/or down-played warnings.

183.    Defendants brought Xarelto to the market, and acted fraudulently, wantonly and maliciously to the detriment of the Decedent and Plaintiff.

184.    As a result of the foregoing acts and omissions, Decedent was caused to suffer serious and dangerous side effects including, life-threatening bleeding, which resulted in his death, as well as other severe and personal injuries, physical pain and mental anguish, diminished enjoyment of life, expenses for hospitalization and medical treatment, and loss of earnings prior to his death.

185.    As a result of the foregoing acts and omissions, Plaintiff has suffered damages and harm, including, but not limited to, emotional distress, medical expenses, other economic harm, as well as a loss of consortium, services, society, companionship, love and comfort.

186.    By reason of the foregoing, Plaintiff has suffered injuries and damages as alleged herein.

## SIXTH CAUSE OF ACTION AS AGAINST THE DEFENDANTS
### (FRAUDULENT CONCEALMENT)

187.    Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

188.   At all times during the course of dealing between Defendants and Decedent, and/or Decedent's healthcare providers, and/or the FDA, Defendants misrepresented the safety of Xarelto for its intended use.

189.   Defendants knew or were reckless in not knowing that its representations were false.

190.   In representations to Decedent, and/or Decedent's healthcare providers, and/or the FDA, Defendants fraudulently concealed and intentionally omitted the following material information:

(a)   that Xarelto was not as safe as other forms of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery;

(b)   that the risks of adverse events with Xarelto were higher than those with other forms of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery;

(c)   that the risks of adverse events with Xarelto were not adequately tested and/or known by Defendants;

(d)   that Defendants were aware of dangers in Xarelto, in addition to and above and beyond those associated with other forms of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery;

(e)   that Xarelto was defective, and that it caused dangerous side effects, including but not limited to life-threatening bleeding, as well as other severe and permanent health consequences, in a much more and significant rate than other forms of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of

DVT for patients undergoing hip and knee replacement surgery;

(f)     that patients needed to be monitored more regularly than normal while using Xarelto;

(g)     that Xarelto was manufactured negligently;

(h)     that Xarelto was manufactured defectively;

(i)     that Xarelto was manufactured improperly;

(j)     that Xarelto was designed negligently;

(k)     that Xarelto was designed defectively; and

(l)     that Xarelto was designed improperly.

191.    Defendants were under a duty to disclose to Decedent, and Decedent's physicians, hospitals, healthcare providers, and/or the FDA the defective nature of Xarelto, including but not limited to the heightened risks of life-threatening bleeding and death.

192.    Defendants had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects, and hence, cause damage to persons who used Xarelto, including the Decedent, in particular.

193.    Defendants' concealment and omissions of material facts concerning the safety of Xarelto was made purposefully, willfully, wantonly, and/or recklessly, to mislead Decedent, and Decedent's physicians, hospitals and healthcare providers into reliance, continued use of Xarelto, and actions thereon, and to cause them to purchase, prescribe, and/or dispense Xarelto and/or use the product.

194.    Defendants knew that Decedent, and Decedent's physicians, hospitals, healthcare providers, and/or the FDA had no way to determine the truth behind Defendants' concealment and omissions, and that these included material omissions of facts surrounding Xarelto, as set forth herein.

195.    Decedent, as well as Decedent's doctors, healthcare providers, and/or hospitals reasonably relied on facts revealed which negligently, fraudulently and/or purposefully did not include facts that were concealed and/or omitted by Defendants.

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

196.     As a result of the foregoing acts and omissions, Decedent was caused to suffer serious and dangerous side effects including, life-threatening bleeding, which resulted in his death, as well as other severe and personal injuries, physical pain and mental anguish, diminished enjoyment of life, expenses for hospitalization and medical treatment, and loss of earnings prior to his death.

197.     As a result of the foregoing acts and omissions, Plaintiff has suffered damages and harm, including, but not limited to, emotional distress, medical expenses, other economic harm, as well as a loss of consortium, services, society, companionship, love and comfort.

198.     By reason of the foregoing, Plaintiff has suffered injuries and damages as alleged herein.

## SEVENTH CAUSE OF ACTION AS AGAINST THE DEFENDANTS
## (NEGLIGENT MISREPRESENTATION)

199.     Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

200.     Defendants had a duty to represent to the medical and healthcare community, and to the Decedent, the FDA, and the public in general that said product, Xarelto, had been tested and found to be safe and effective to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, to reduce the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

201.     The representations made by Defendants were, in fact, false.

202.     Defendants failed to exercise ordinary care in the representation of Xarelto, while involved in its manufacture, sale, testing, quality assurance, quality control, and/or distribution of said product into interstate commerce, in that Defendants negligently misrepresented Xarelto's high risk of unreasonable, dangerous side effects.

203.     Defendants breached their duty in representing Xarelto's serious side effects to the medical and healthcare community, to the Decedent, the FDA and the public in general.

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

204.   As a result of the foregoing acts and omissions, Decedent was caused to suffer serious and dangerous side effects including, life-threatening bleeding, which resulted in his death, as well as other severe and personal injuries, physical pain and mental anguish, diminished enjoyment of life, expenses for hospitalization and medical treatment, and loss of earnings prior to his death.

205.   As a result of the foregoing acts and omissions, Plaintiff has suffered damages and harm, including, but not limited to, emotional distress, medical expenses, other economic harm, as well as a loss of consortium, services, society, companionship, love and comfort.

206.   By reason of the foregoing, Plaintiff has suffered injuries and damages as alleged herein.

## EIGHTH CAUSE OF ACTION AS AGAINST THE DEFENDANTS
## (FRAUD AND DECEIT)

207.   Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

208.   Defendants conducted research, or lack thereof, and used Xarelto as part of their research.

209.   As a result of Defendants' research and testing, or lack thereof, Defendants blatantly and intentionally distributed false information, including but not limited to assuring the public, the Decedent, Decedent's doctors, hospitals, healthcare professionals, and/or the FDA that Xarelto was safe and effective for use as a means to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, to reduce the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

210.   As a result of Defendants' research and testing, or lack thereof, Defendants intentionally omitted certain results of testing and research to the public, healthcare professionals, and/or the FDA, including the Decedent.

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

211.    Defendants had a duty when disseminating information to the public to disseminate truthful information and a parallel duty not to deceive the public and the Decedent, as well as Decedent's respective healthcare providers and/or the FDA.

212.    The information distributed to the public, the FDA, and the Decedent, by Defendants, including but not limited to reports, press releases, advertising campaigns, television commercials, print ads, magazine ads, billboards, and all other commercial media contained material representations of fact and/or omissions.

213.    The information distributed to the public, the FDA, and the Decedent, by Defendants intentionally included representations that Defendants' drug Xarelto was safe and effective for use to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, to reduce the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

214.    The information distributed to the public, the FDA, and the Decedent, by Defendants intentionally included representations that Defendants' drug Xarelto carried the same risks, hazards, and/or dangers as other forms of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

215.    The information distributed to the public, the FDA, and the Decedent, by Defendants intentionally included false representations that Xarelto was not injurious to the health and/or safety of its intended users.

216.    The information distributed to the public, the FDA, and the Decedent, by Defendants intentionally included false representations that Xarelto was as potentially injurious to the health and/or safety of its intended users, as other forms of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

217.    These representations were all false and misleading.

218.    Upon information and belief, Defendants intentionally suppressed, ignored and disregarded test results not favorable to the Defendants, and results that demonstrated that Xarelto was not safe as a means of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery, and/or was not as safe as other means of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

219.    Defendants intentionally made material representations to the FDA and the public, including the medical profession, and the Decedent, regarding the safety of Xarelto, specifically but not limited to Xarelto not having dangerous and serious health and/or safety concerns.

220.    Defendants intentionally made material representations to the FDA and the public in general, including the medical profession, and the Decedent, regarding the safety of Xarelto, specifically but not limited to Xarelto being a safe means of reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

221.    That it was the purpose of Defendants in making these representations to deceive and defraud the public, the FDA, and/or the Decedent, to gain the confidence of the public, healthcare professionals, the FDA, and/or the Decedent, to falsely ensure the quality and fitness for use of Xarelto and induce the public, and/or the Decedent to purchase, request, dispense, prescribe, recommend, and/or continue to use Xarelto.

222.    Defendants made the aforementioned false claims and false representations with the intent of convincing the public, healthcare professionals, the FDA, and/or the Decedent that Xarelto was fit and safe for use as treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

223.    Defendants made the aforementioned false claims and false representations with the intent of convincing the public, healthcare professionals, the FDA, and/or the Decedent that Xarelto was fit and safe for use as treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery, and did not pose risks, dangers, or hazards above and beyond those identified and/or associated with other forms of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

224.    Defendants made claims and representations in its documents submitted to the FDA, to the public, to healthcare professionals, and the Decedent that Xarelto did not present serious health and/or safety risks.

225.    That Defendants made claims and representations in its documents submitted to the FDA, to the public, to healthcare professionals, and the Decedent that Xarelto did not present health and/or safety risks greater than other oral forms of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

226.    That these representations and others made by Defendants were false when made, and/or were made with a pretense of actual knowledge when knowledge did not actually exist, and/or were made recklessly and without regard to the actual facts.

227.    That these representations and others, made by Defendants, were made with the intention of deceiving and defrauding the Decedent, including Decedent's respective healthcare professionals and/or the FDA, and were made in order to induce the Decedent and/or Decedent's respective healthcare professionals to rely upon misrepresentations and caused the Decedent and/or Decedent's respective healthcare professionals to purchase, use, rely on, request, dispense, recommend, and/or prescribe Xarelto

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

228.     That Defendants, recklessly and intentionally falsely represented the dangerous and serious health and/or safety concerns of Xarelto to the public at large, the Decedent in particular, for the purpose of influencing the marketing of a product known to be dangerous and defective and/or not as safe as other alternatives, including other forms of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

229.     That Defendants willfully and intentionally failed to disclose the material facts regarding the dangerous and serious safety concerns of Xarelto by concealing and suppressing material facts regarding the dangerous and serious health and/or safety concerns of Xarelto.

230.     That Defendants willfully and intentionally failed to disclose the truth, failed to disclose material facts and made false representations with the purpose and design of deceiving and lulling the Decedent, as well as his respective healthcare professionals into a sense of security so that Decedent would rely on the representations made by Defendants, and purchase, use and rely on Xarelto and/or that Decedent's respective healthcare providers would dispense, prescribe, and/or recommend the same.

231.     Defendants, through their public relations efforts, which included but were not limited to the public statements and press releases, knew or should have known that the public, including the Decedent, as well Decedent's respective healthcare professionals would rely upon the information being disseminated.

232.     Defendants utilized direct to consumer adverting to market, promote, and/or advertise Xarelto.

233.     That the Decedent and/or Decedent's respective healthcare professionals did in fact rely on and believe the Defendants' representations to be true at the time they were made and relied upon the representations as well as the superior knowledge of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

replacement surgery, and were thereby induced to purchase, use and rely on Defendants' drug Xarelto.

234.   That at the time the representations were made, the Decedent and/or Decedent's respective healthcare providers did not know the truth with regard to the dangerous and serious health and/or safety concerns of Xarelto.

235.   That the Decedent did not discover the true facts with respect to the dangerous and serious health and/or safety concerns, and the false representations of Defendants, nor could the Decedent with reasonable diligence have discovered the true facts.

236.   That had the Decedent known the true facts with respect to the dangerous and serious health and/or safety concerns of Xarelto, Decedent would not have purchased, used and/or relied on Defendants' drug Xarelto.

237.   That the Defendants' aforementioned conduct constitutes fraud and deceit, and was committed and/or perpetrated willfully, wantonly and/or purposefully on the Decedent.

238.   As a result of the foregoing acts and omissions, Decedent was caused to suffer serious and dangerous side effects including, life-threatening bleeding, which resulted in his death, as well as other severe and personal injuries, physical pain and mental anguish, diminished enjoyment of life, expenses for hospitalization and medical treatment, and loss of earnings prior to his death.

239.   As a result of the foregoing acts and omissions, Plaintiff has suffered damages and harm, including, but not limited to, emotional distress, medical expenses, other economic harm, as well as a loss of consortium, services, society, companionship, love and comfort.

240.   By reason of the foregoing, Plaintiff has suffered damages as alleged herein.

## NINTH CAUSE OF ACTION AS AGAINST THE DEFENDANTS

### (VIOLATION OF NEVADA CONSUMER FRAUD AND

### DECEPTIVE PRACTICES ACT)

241.   Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

fully set forth herein.

242.     Defendants have a statutory duty to refrain from making false or fraudulent representations and/or from engaging in deceptive acts or practices in the sale and promotion of Xarelto pursuant to the Nevada Consumer Fraud and Deceptive Trade Practice Act as defined in NRS Chapter 598 (hereinafter "the Act"), which prohibits "the use of any deception, fraud, false pretense, false promise, misrepresentation or concealment, suppression or omission of any material fact...in the conduct of any trade or commerce" and declares such acts or practices as unlawful.

243.     Defendants engaged in unfair, deceptive, false and/or fraudulent acts and/or practices in violation of the Act through its false and misleading promotion of Xarelto designed to induce Decedent to purchase and use Xarelto.

244.     Defendants' conduct as described herein constituted unfair and deceptive acts and practices, including, but not limited to:

(a)     Publishing instructions and product material containing inaccurate and incomplete factual information;

(b)     Engaging in fraudulent or deceptive conduct that creates a likelihood of Misrepresenting the nature, quality, and characteristics about the product; and

(c)     confusion or misunderstanding.

245.     Defendants misrepresented the alleged benefits of Xarelto, failed to disclose material information concerning known side effects of Xarelto, misrepresented the quality of Xarelto, and otherwise engaged in fraudulent and deceptive conduct which induced Decedent to purchase and use Xarelto.

246.     Defendants uniformly communicated the purported benefits of Xarelto while failing to disclose the serious and dangerous side-effects related to the use of Xarelto, its safety, its efficacy, and its usefulness.  Defendants made these representations to physicians, the medical community at large, and to patients and consumers such as Decedent in the marketing and advertising campaign described herein.

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

247.    Defendants' conduct in connection with Xarelto was impermissible and illegal in that it created a likelihood of confusion and misunderstanding, because Defendants misleadingly, falsely and or deceptively misrepresented and omitted numerous material facts regarding, among other things, the utility, benefits, costs, safety, efficacy and advantages of Xarelto.

248.    Defendants' conduct as described above was a material cause of Decedent's decision to purchase Xarelto.

249.    As a direct, foreseeable and proximate cause of Defendants' conduct in violation of the Act, Decedent suffered damages, including personal injuries, which resulted in his death and economic damages, and non-economic damages prior to his death.  Defendants' conduct was further wanton, egregious, and reckless so as to warrant the award of punitive damages.

250.    As a result of the foregoing acts and omissions, the Decedent was caused to suffer serious and dangerous side effects including, life-threatening bleeding, which resulted in his death, as well as other severe and personal injuries, physical pain and mental anguish, diminished enjoyment of life, expenses for hospitalization and medical treatment, and loss of earnings prior to his death.

251.    As a result of the foregoing acts and omissions, Plaintiff has suffered damages and harm, including, but not limited to, emotional distress, medical expenses, other economic harm, as well as a loss of consortium, services, society, companionship, love and comfort.

252.    By reason of the foregoing, Plaintiff has suffered damages as alleged herein.

**TENTH CAUSE OF ACTION AS AGAINST THE DEFENDANTS**

**(LOSS OF CONSORTIUM)**

253.    Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

254.    Decedent and Plaintiff were at all times relevant husband and wife.

255.    Decedent has suffered injuries, which caused his death, and damages as alleged herein.  Plaintiff was married to the Decedent at the time of his injuries from Xarelto, including his

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

1   death.

2   256.   As a direct and proximate result of the injuries and injurious consequences suffered

3   by Decedent, as pled, Plaintiff has suffered damages and harm, including but not limited to

4   emotional distress, medical expenses and other economic harm, as well as lost consortium of her

5   husband, which includes society, services, love, comfort, companionship, sexual gratification and

6   affection.

7   **ELEVENTH CAUSE OF ACTION AS AGAINST THE DEFENDANTS**

8   **(WRONGFUL DEATH)**

9   257.   Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint

10  contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more

11  fully set forth herein.

12  258.   Plaintiff is the heir of the Decedent and is entitled to maintain an action for damages

13  against the Defendants for the wrongful death of her husband; including but not limited to grief,

14  sorrow, loss of probable support, damages for pain and suffering and disfigurement as set forth in

15  NRS 41.085 (4).

16  259.   Pursuant to NRS 41.085, JUDITH GAIL TAGGART is the Special Administrator of

17  the estate of the Decedent and may also maintain an action for damages against the Defendants for

18  special damages and penalties, including but not limited to exemplary or punitive damages as set for

19  th in NRS 41.085(5).

20  260.   As a result of the injuries to, and death of RICHARD TAGGART, Plaintiff is entitled

21  to damages, including, but not limited to: pecuniary damages for grief and sorrow, loss of probable

22  support, companionship, society, comfort and consortium, damages for pain, suffering and

23  disfigurement of the Decedent, any special damages, such as medical expenses sustained or incurred

24  by the Decedent before his death, funeral expenses, and any penalties, including but not limited to

25  exemplary or punitive damages that the Decedent would have recovered had he lived.

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

## TWELFTH CAUSE OF ACTION AS AGAINST THE DEFENDANTS

## (ADMINISTRATOR'S CLAIM FOR DAMAGES PURSUANT TO N.R.S 41.085(5))

261.    Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

262.    As a result of the wrongful death of the Decedent, directly and proximately caused by Defendants, and each of them, medical, funeral and burial expenses have been incurred by the Estate of Richard H. Taggart, deceased, and as more specifically outlined herein, Defendants, and each of them, are liable to the Estate of Richard H. Taggart, deceased, for exemplary and punitive damages.

263.    As the Administrator of the Estate of Richard H. Taggart, deceased, Plaintiff is entitled to recover on behalf of the Estate of Richard H. Taggart, deceased, medical, funeral and burial expenses as well as exemplary and punitive damages from Defendants, and each of them.

264.    Pursuant to NRS 41.085(5), Defendants, and each of them, as a direct and proximate result of their actions resulting in the wrongful death of the Decedent, have caused his estate damages which includes medical, funeral and burial expenses, as well as exemplary and punitive damages.

## THIRTEENTH CAUSE OF ACTION AS AGAINST THE DEFENDANTS

## (PUNITIVE DAMAGES)

265.    Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

266.    The conduct of Defendants, and each of them, individually and in concert with one another as alleged herein, was willful, intentional, oppressive, fraudulent, malicious and done with a wanton and reckless disregard for the rights of the Plaintiff and Decedent, thereby warranting the imposition of punitive damages.

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against the Defendants on each of the above-referenced claims and Causes of Action and as follows:

1.      Awarding compensatory damages in excess of the jurisdictional amount, including, but not limited to pain, suffering, emotional distress, loss of enjoyment of life, and other non-economic damages in an amount to be determined at trial of this action;

2.      Awarding economic damages in the form of medical expenses, out of pocket expenses, lost earnings and other economic damages in an amount to be determined at trial of this action;

3.      Punitive and/or exemplary damages for the wanton, willful, fraudulent, reckless acts of the Defendants who demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and to the Decedent in an amount sufficient to punish Defendants and deter future similar conduct;

4.      Prejudgment interest;

5.      Post-judgment interest;

6.      Awarding Plaintiff's reasonable attorneys' fees;

7.      Awarding Plaintiff's costs of these proceedings; and

8.      Such other and further relief as this Court deems just and proper.

Dated this ____ day of _____, 2015.

KEMP, JONES & COULTHARD, LLP

_____
Will Kemp, Esq.
Nevada Bar No.: 1205
Eric M. Pepperman, Esq.
Nevada Bar No.: 11679
3800 Howard Hughes Pkwy., 17th Fl.
Las Vegas, NV  89169
m.jacobs@kempjones.com
Attorneys for Plaintiff

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all issues.

Dated this ____ day of _____, 2015.

KEMP, JONES & COULTHARD, LLP

_____
Will Kemp, Esq.
Nevada Bar No.: 1205
Eric M. Pepperman, Esq.
Nevada Bar No.: 11679
3800 Howard Hughes Pkwy., 17th Fl.
Las Vegas, NV  89169
m.jacobs@kempjones.com
Attorneys for Plaintiff

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com