# EXHIBIT

# B

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ELSIE M. SMITH, BY HER ATTORNEY-IN-FACT ELISA S. SMITH, <br><br><br>             Plaintiff, <br><br> v. <br><br> JANSSEN RESEARCH & DEVELOPMENT, LLC f/k/a JOHNSON AND JOHNSON PHARMACEUTICALS RESEARCH AND DEVELOPMENT LLC; JOHNSON & JOHNSON COMPANY; JANSSEN ORTHO LLC, JANSSEN PHARMACEUTICALS, INC. f/k/a JANSSEN PHARMACEUTICA, INC. f/k/a ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC., BAYER HEALTHCARE PHARMACEUTICALS, INC., BAYER PHARMA AG, BAYER CORPORATION, BAYER HEALTHCARE LLC, BAYER HEALTHCARE AG, and BAYER AG, <br><br>             Defendants. | **AMENDED COMPLAINT** and **JURY DEMAND** <br><br> **No. 2:15-cv-00525** |

## FIRST AMENDED COMPLAINT

COMES NOW the Plaintiff, ELSIE M. SMITH, BY HER ATTORNEY-IN-FACT, ELISA S. SMITH, (hereinafter, Plaintiff) by and through the undersigned counsel, and hereby submits this Complaint against Defendants, JANSSEN RESEARCH & DEVELOPMENT LLC f/k/a JOHNSON AND JOHNSON PHARMACEUTICAL

1

RESEARCH AND DEVELOPMENT LLC, JOHNSON & JOHNSON COMPANY; JANSSEN ORTHO LLC, JANSSEN PHARMACEUTICALS, INC. f/k/a JANSSEN PHARMACEUTICA INC. f/k/a ORTHOMCNEIL-JANSSEN PHARMACEUTICALS, INC., BAYER HEALTHCARE PHARMACEUTICALS, INC., BAYER PHARMA AG, BAYER CORPORATION, BAYER HEALTHCARE LLC, BAYER HEALTHCARE AG, and BAYER AG (hereinafter collectively referred to as "Defendants") seeking equitable relief, monetary restitution, and compensatory and punitive damages arising from injuries sustained by her as a result of her use of Xarelto (rivaroxaban) and alleges as follows:

1.      Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed Xarelto to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation to treat deep vein thrombosis (hereinafter "DVT") and pulmonary embolism (hereinafter "PE") to reduce the risk of recurrence of DVT and/or PE and for DVT prophylaxis for patients undergoing hip and knee replacement surgery.

2.      When warning of safety and risks of Xarelto, Defendants negligently and/or fraudulently represented to the medical and healthcare community, the Food and Drug Administration (hereinafter referred to as the "FDA"), to Plaintiff and the public in general, that Xarelto had been tested and was found to be safe and/or effective for its indicated use.

3.      These representations were made by Defendants with the intent of

2

defrauding and deceiving Plaintiff, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing the public in general, and the medical community in particular, to recommend, dispense and/or purchase Xarelto for use to reduce the risk of stroke and systemic embolis in patients with non-valvular atrial fibrillation, to treat DVT and PE, to reduce the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery, all of which evinced a callous, reckless, willful, depraved indifference to health, safety and welfare of the Plaintiff herein.

4.      Defendants negligently and improperly failed to perform sufficient tests, if any, on humans using Xarelto during clinical trials, forcing Plaintiff, and Plaintiffs physicians, hospitals, and/or the FDA, to rely on safety information that applies to other non-valvular atrial fibrillation treatment and DVT/PE treatment and prophylaxis, which does not entirely and/or necessarily apply to Xarelto whatsoever.

5.      As a result of the foregoing acts and omissions, the Plaintiff was and still continues to suffer serious and dangerous side effects including inter alia life-threatening bleeding, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences. Plaintiff herein has sustained certain of the above health consequences due to Plaintiff's use of Xarelto.

3

6.      Defendants concealed their knowledge of the defects in their products from the ELSIE M. SMITH, and ELSIE M. SMITH's physicians, hospitals, pharmacists, the FDA, and the public in general.

7.      Defendants concealed their knowledge of Xarelto's defects, from ELSIE M. SMITH, the FDA, the public in general and/or the medical community specifically.

8.      Consequently, Plaintiff seeks compensatory damages as a result of ELSIE M. SMITH use of the Xarelto, which has caused ELSIE M. SMITH to suffer from life-threatening bleeding, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

## PARTY PLAINTIFF

9.      At all relevant times, ELISA S. SMITH was and is the Attorney-in-Fact and is the Power of Attorney for Plaintiff ELSIE M. SMITH and is a citizen of the United States of America, and a resident of the State of Connecticut.

10.      ELSIE M. SMITH brings the instant action by and through her Attorney-in-Fact and the Power of Attorney, ELISA S. SMITH.

11.      Plaintiff ELSIE M. SMITH, is a citizen of the United States of America, and is a resident of the State of Connecticut.

4

12.     ELSIE M. SMITH, was born on July 15, 1927.

13.     ELSIE M. SMITH, first began using Xarelto in or about January 2012, and used Xarelto up through approximately January 21, 2014.

14.     As result of using Defendants' Xarelto, ELSIE M. SMITH, was caused to suffer from life-threatening bleeding in or about January 21, 2014, and was caused to sustain severe and permanent personal injuries, pain, suffering, and emotional distress.

15.     The injuries and damages sustained by ELSIE M. SMITH, were caused by Defendants' Xarelto.

## PARTY DEFENDANTS

16.     Upon information and belief, Defendant JANSSEN RESEARCH & DEVELOPMENT LLC f/k/a JOHNSON AND JOHNSON RESEARCH AND DEVELOPMENT LLC (hereinafter referred to as "JANSSEN R&D") is a limited liability company organized under the laws of New Jersey, with its principal place of business located at 920 U.S. Route 202, Raritan, New Jersey.  JANSSEN R&D's sole principal or member is Centocor Research Development, Inc. (hereinafter "CENTOCOR") a Pennsylvania corporation with its principal place of business located at 200 Great Valley Parkway, Malvern, Pennsylvania. Centocor is a subsidiary or division of Johnson & Johnson, and at all times relevant herein, engaged in the research, design, marketing, sale and distribution of Xarelto. Defendant JANSSEN R&D is the holder of the approved New Drug Application ("NDA") for Xarelto as well as the supplemental NDA.

5

17.    Upon information and belief, and at all relevant times, Defendant, JANSSEN R&D, was in the business of and did design, research, manufacture, test, advertise, promote, market, sell, and distribute the drug Xarelto for use as an oral anticoagulant, the primary purposes of which are to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, to treat DVT and PE, to reduce the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

18.    Defendant JOHNSON & JOHNSON (hereinafter "J&J"), is a fictitious name adopted by Defendant JOHNSON & JOHNSON COMPANY, a New Jersey corporation which has its principal place of business at One Johnson & Johnson Plaza, New Brunswick, Middlesex County, New Jersey 08933.  At all times relevant herein, Defendant JOHNSON & JOHNSON was engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling and/or selling Xarelto.

19.    Defendant JANSSEN R&D, JOHNSON & JOHNSON and CENTOCOR all transact substantial business within the state of Connecticut and throughout the United States, including the research, manufacture, sale, distribution and marketing of Xarelto, as set forth herein.

20.    Upon information and belief, Defendant JANSSEN ORTHO LLC (hereinafter referred to as "JANSSEN ORTHO") is a limited liability company organized

6

under the laws of Delaware, having a principal place of business at Stateroad 933 Km 0 1, Street Statero, Gurabo, Puerto Rico 00778. Defendant JANSSEN ORTHO is a subsidiary of Johnson & Johnson.

21.     At all times relevant hereto, JANSSEN ORTHO manufactures, and continues to manufacture Xarelto.  JANSSEN ORTHO is involved in the research, development, sales, and marketing of pharmaceutical products including Xarelto and rivaroxaban. At all relevant times herein, Defendant JANSSEN ORTHO derived, and continues to derive substantial revenue from services, goods and products developed, marketed, sold, distributed, disseminated and used in the state of Connecticut.

22.     Upon information and belief, Defendant JANSSEN PHARMACEUTICALS, INC. f/k/a JANSSEN PHARMACEUTICA INC. f/k/a ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC. (hereinafter referred to as "JANSSEN PHARM") is a Pennsylvania corporation, having a principal place of business at 1125 Trenton-Harbourton Road, Titusville, New Jersey 08560.

23.     As part of its business, JANSSEN PHARM is involved in the research, development, sales, and marketing of pharmaceutical products including Xarelto and rivaroxaban.

24.     Upon information and belief, Defendant, JANSSEN PHARM has transacted and conducted business in the State of Connecticut.

25.     Upon information and belief, Defendant, JANSSEN PHARM, has derived

7

substantial revenue from goods and products used in the State of Connecticut.

26.     Upon information and belief, Defendant, JANSSEN PHARM, expected or should have expected its acts to have consequence within the State of Connecticut, and derived substantial revenue from interstate commerce within the United States and the State of Connecticut, more particularly.

27.     Upon information and belief, and at all relevant times, Defendant, JANSSEN PHARM, was in the business of and did design, research, manufacture, test, advertise, promote, market, sell, and distribute the drug Xarelto for use as an oral anticoagulant, the primary purposes of which are to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, to treat DVT and PE, to reduce the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

28.     Upon information and belief, and at all relevant times, Defendant, JANSSEN ORTHO, was in the business of and did design, research, manufacture, test, advertise, promote, market, sell, and distribute the drug Xarelto for use as an oral anticoagulant, the primary purposes of which are to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, to treat DVT and PE, to reduce the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

29.     Upon information and belief, Defendant BAYER HEALTHCARE

8

PHARMACEUTICALS, INC. is, and at all relevant times was, a corporation organized under the laws of the State of Delaware with its principal place of business in Montville, New Jersey.

30. Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC., is a US-based pharmaceuticals operation of Bayer HC.

31. Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC. was formerly known as Berlex Laboratories, Inc., which was formerly known as Berlex, Inc. and BAYER HEALTHCARE PHARMACEUTICALS, INC. is the same corporate entity as Berlex, Inc. and Berlex Laboratories, Inc.

32. As part of its business, BAYER HEALTHCARE PHARMACEUTICALS, INC. is involved in the research, development, sales, and marketing of pharmaceutical products including Xarelto and rivaroxaban.

33. Upon information and belief, Defendant, BAYER HEALTHCARE PHARMACEUTICALS, INC., has transacted and conducted business in the State of Connecticut.

34. Upon information and belief, Defendant, BAYER HEALTHCARE PHARMACEUTICALS, INC., has derived substantial revenue from goods and products used in the State of Connecticut.

35. Upon information and belief, Defendant, BAYER HEALTHCARE PHARMACEUTICALS, INC., expected or should have expected its acts to have

9

consequence within the United States of America and the State of Connecticut, and derived substantial revenue from interstate commerce within the State of Connecticut, more particularly.

36.     Upon information and belief, and at all relevant times, Defendant, BAYER HEALTHCARE PHARMACEUTICALS, INC., was in the business of and did design, research, manufacture, test, advertise, promote, market, sell, and distribute the drug Xarelto for use as an oral anticoagulant, the primary purposes of which are to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, to treat DVT and PE, to reduce the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

37.     Upon information and belief, Defendant BAYER PHARMA AG is a pharmaceutical company domiciled in Germany.

38.     Defendant BAYER PHARMA AG is formerly known as Bayer Schering Pharma AG and is the same corporate entity as Bayer Schering Pharma AG. Bayer Schering Pharma AG is formerly known as Schering AG and is the same corporate entity as Schering AG.

39.     Upon information and belief, Schering AG was renamed Bayer Schering Pharma AG effective December 29, 2006.

40.     Upon information and belief, Bayer Schering Pharma AG was renamed BAYER PHARMA AG effective July 1, 2011.

10

41.    As part of its business, BAYER PHARMA AG is involved in the research, development, sales, and marketing of pharmaceutical products including Xarelto and rivaroxaban.

42.    Upon information and belief, Defendant, BAYER PHARMA AG, has transacted and conducted business in the State of Connecticut.

43.    Upon information and belief, Defendant, BAYER PHARMA AG, has derived substantial revenue from goods and products used in the State of Connecticut.

44.    Upon information and belief, Defendant, BAYER PHARMA AG, expected or should have expected its acts to have consequence within the United States of America and the State of Connecticut, and derived substantial revenue from interstate commerce within the United States and the State of Connecticut, more particularly.

45.    Upon information and belief, and at all relevant times, Defendant, BAYER PHARMA AG, was in the business of and did design, research, manufacture, test, advertise, promote, market, sell, and distribute the drug Xarelto for use as an oral anticoagulant, the primary purposes of which are to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, to treat DVT and PE, to reduce the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

46.    Upon information and belief, Defendant BAYER CORPORATION is an Indiana corporation with its principal place of business at 100 Bayer Road, Pittsburgh,

11

Pennsylvania 15205.

47.   Upon information and belief, Defendant BAYER CORPORATION is the sole member of BAYER HEALTHCARE LLC, which owns 100% of Schering Berlin, Inc., which owns 100% of Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC. As such, Defendant BAYER CORPORATION is a parent of Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC.

48.   At relevant times, Defendant BAYER CORPORATION was engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drug Xarelto.

49.   At relevant times, Defendant BAYER CORPORATION conducted regular and sustained business in the State of Connecticut, by selling and distributing its products in the State of Connecticut and engaged in substantial commerce and business activity in the State of Connecticut.

50.   Upon information and belief, Defendant BAYER HEALTHCARE LLC is a Delaware limited liability company duly formed and existing under and by the virtue of the laws of the State of Connecticut, with its principal place of business located at 100 Bayer Road, Pittsburg, Pennsylvania 12505 and 100 Global View Drive, Warrendale, Pennsylvania.   BAYER HEALTHCARE LLC is a subsidiary of Bayer and jointly

12

developed Xarelto with J&J and Janssen R&D.

51.    Upon information and belief, and at all relevant times, Defendant BAYER HEALTHCARE LLC has transacted and conducted business including the research, manufacture, sale distribution and marketing of Xarelto in the State of Connecticut and throughout the United States, and derived substantial revenue from interstate commerce. Defendant BAYER CORPORATION is the sole member of Defendant BAYER HEALTHCARE LLC and as such for purposes of establishing diversity of citizenship; Defendant BAYER HEALTHCARE LLC is a citizen of Indiana and Pennsylvania.

52.    Upon information and belief, and at all relevant times, Defendant BAYER HEALTHCARE LLC expected or should have expected that its acts would have consequences within the United States of America, in the State of Connecticut, and derived substantial revenue from interstate commerce.

53.    Upon information and belief, and at all relevant times, Defendant BAYER HEALTHCARE LLC was in the business of and did design, research, manufacture, test, advertise, promote, market, sell, and distribute Xarelto for use as an oral anticoagulant, the primary purposes of which are to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, to treat DVT and PE to reduce the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

54.    Upon information and belief, Defendant BAYER HEALTHCARE

13

AG is a company domiciled in Germany and is the parent/holding company of Defendants BAYER CORPORATION, BAYER HEALTHCARE LLC, BAYER HEALTHCARE PHARMACEUTICALS, INC, and BAYER PHARMA AG.

55.    Upon information and belief, and at all relevant times, Defendant BAYER HEALTHCARE AG has transacted and conducted business in the State of New York, and in the State of Connecticut, and derived substantial revenue from interstate commerce.

56.    Upon information and belief, and at all relevant times, Defendant BAYER HEALTHCARE AG expected or should have expected that its acts would have consequences within the United States of America, and in the State of New York and in the State of Connecticut, and derived substantial revenue from interstate commerce.

57.    Upon information and belief, and at all relevant times, Defendant BAYER HEALTHCARE AG exercises dominion and control over Defendants BAYER CORPORATION, BAYER HEALTHCARE LLC, BAYER HEALTHCARE PHARMACEUTICALS, INC., and BAYER PHARMA AG.

58.    Upon information and belief, Defendant BAYER AG is a German chemical and pharmaceutical company that is headquartered in Leverkusen, North Rhine-Westphalia, Germany.

59.    Upon information and belief, Defendant BAYER AG is the third largest pharmaceutical company in the world.

60.    Upon information and belief, and at all relevant times Defendant BAYER

14

AG is the parent/holding company of all other named Defendants.

61.    Upon information and belief, and at all relevant times, Defendant BAYER AG has transacted and conducted business in the State of New York and in the State of Connecticut, and derived substantial revenue from interstate commerce.

62.    Upon information and belief, and at all relevant times, Defendant BAYER AG expected or should have expected that its acts would have consequences within the United States of America, in the State of Connecticut, and in the State of New York, and derived substantial revenue from interstate commerce.

63.    Upon information and belief, and at all relevant times, Defendant BAYER AG was in the business of and did design, research, manufacture, test, advertise, promote, market, sell, and distribute Xarelto for use as an oral anticoagulant, the primary purposes of which are to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, to treat DVT and PE, to reduce the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

## JURISDICTION AND VENUE

64.    The Court has jurisdiction over this civil action pursuant to 28 U.S.C. §1332(a) inasmuch as the amount in controversy exceeds $75,000.00 and the Plaintiff is a citizen of different states than the Defendants.

15

65.     This court has jurisdiction over the non-resident Defendants because they have done business in the State of Connecticut, have committed a tort in whole or in part in the State of Connecticut and have continuing contacts with the State of Connecticut.

66.     Venue in this district is proper because the Plaintiff resides in this district, the product Xarelto was prescribed and dispensed to Plaintiff in this district, her injury occurred in this district, and Defendants sold and marketed Xarelto in this district.

67.     The United States Judicial Panel on Multi-District Litigation (JPML) issued a Transfer Order *In Re: Xarelto (Rivaroxaban) Products Liability Litigation* in order to centralize product liability cases involving Xarelto such as this one for pre-trial purposes in the United States District Court for the Eastern District of Louisiana, MDL 2592, and Plaintiff asserts that this action should be transferred to that proceeding for pre-trial purposes.  However, Plaintiff reserves her right to have the trial of these issues brought in the United States District Court for the District of Connecticut.

## FACTUAL BACKGROUND

68.     At all relevant times, Defendants, directly or by and through their agents, apparent agents, servants and employees, designed, manufactured, marketed, advertised, distributed promoted, labeled and sold  Xarelto and rivaroxaban as an anti-coagulant to

16

reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation ("AFib"), to treat DVT and PE, to reduce the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

69.     Defendants submitted a New Drug Application for Xarelto to the U.S. Food and Drug Administration in July 2008.

70.     Defendants received FDA approval for Xarelto, also known as rivaroxaban, on July 1, 2011 for the prophylaxis to reduce the risk of blood clots, DVT and PE in patients undergoing hip replacement or knee replacement surgeries (NDA 022406).

71.     Defendants then received additional FDA approval for Xarelto to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation on November 4, 2011 (NDA 202439).

72.     The additional indication for treatment of DVT and/or PE and the reduction in recurrence of DVT and/or PE was added to the label on November 2, 2012.

73.     Defendants launched Xarelto in the United States (hereinafter referred to as the "U.S.") in 2011.

74.     Xarelto (Rivaroxaban) is an oxazolidinone derivative optimized for inhibiting both free Factor Xa and Factor Xa bound in the prothrombinase complex. It is a highly selective direct Factor Xa inhibitor with oral bioavailability and rapid onset of action. Inhibition of Factor Xa interrupts the intrinsic and extrinsic pathway of the blood

17

coagulation cascade, inhibiting both thrombin formation and development of thrombin. Rivaroxaban does not inhibit thrombin (activated Factor II) and is available by prescription in oral tablet doses of 20mg, 15mg, and 10mg.

75.    According to the Defendants' marketing and informational materials, and widely disseminated to the consuming public, "Xarelto is the direst and only once-a-day prescription blood thinner for patients with AFib not caused by a heart valve problem, that is proven to reduce the risk of a stroke—without routine blood monitoring."[1]

76.    As Defendants state on their website, "XARELTO has been proven to lower the chance of having a stroke if you have atrial fibrillation (AFib), not caused by a heart valve problem.  XARELTO is an anticoagulant or blood thinning medicine that works by helping to keep clots from forming…it's been prescribed to more than seven million people around the world to help treat or reduce their risk of dangerous clots and it begins working a few hours after you start taking it, and keeps working for as long as you take it.."[2]  Defendants further assert that "XARELTO is proven to help treat and prevent DVT and PE blood clots and reduc[es] the risk of these dangerous clots [from] happening again."[3]

77.    Defendants claim that patients with AFib, DVT, or PE taking Xarelto do not need regular blood monitoring and there are no known dietary restrictions. In addition,

---

[1]http://www.fda.gov/downloads/Drugs/GuidanceComplianceRegulatoryInformation/EnforcementActivitiesbyFDA/WarningLettersandNoticeofViolationLetterstoPharmaceuticalCompanies/UCM357833
[2] http://www.xarelto-us.com/how-xarelto-works
[3] http://www.xarelto-us.com/dvt-pe/treatment-of-dvt-pe

18

patients with AFib only need to take Xarelto once a day with an evening meal.[4]

78.    Defendants claim that patients with AFib are 5 times more likely than a person without Afib to suffer from a stroke and that "disability is more likely to be severe" and "the outcome is almost twice as likely to be fatal" and "the chances of having another major stroke go up."[5]

79.    The Defendants' marketing materials suggest that Xarelto represented a therapeutic simplification and therapeutic progress because it did not require patients to undergo periodic monitoring with blood tests and because there were no dietary restrictions.

80.    Defendants routinely marketed Xarelto as a "one size fits all" drug. In their fervent marketing of Xarelto, Defendants' misinformed patients and their healthcare providers as to the necessity to routinely monitor any patient requiring a blood thinning agent. In essence, the Defendants have created a new drug, Xarelto, which is not better than warfarin from a safety perspective. The idea of this apparently easier-to-use anticoagulant evidently appealed to physicians, who were subject to extreme marketing and promotion by the Defendants, but ignores patient safety.

81.    Approval of Xarelto for the prophylaxis of DVT and PE in patients undergoing hip replacement or knee replacement surgeries was based on a series of clinical trials known as the Regulation of Coagulation in Orthopedic Surgery to

---

[4] http://www.xarelto-us.com/dvt-pe/xarelto-difference#
[5] http://www.xarelto-us.com/knowing-your-stroke-risk

Prevent Deep Venous Thrombosis and Pulmonary Embolism studies (hereinafter referred to as the "RECORD" studies). The findings of the RECORD studies showed that rivaroxaban was superior to enoxaparin for thromboprophylaxis after total knee and hip arthroplasty (based on the Defendants' definition), accompanied by similar rates of bleeding. However, the studies also showed a greater incidence with Xarelto of bleeding leading to decreased hemoglobin levels and transfusion of blood. (Lassen, M.R., et al. *Rivaroxaban versus Enoxaparin for Thromboprophylaxis after Total Knee Arthroplasty.* N.Engl.J.Med. 2008;358:2776-86; Kakkar, A.K., et al. *Extended duration rivaroxaban versus short-term enoxaparin for the prevention of venous thromboembolism after total hip arthroplasty: a double-blind, randomised controlled trial.* Lancet 2008;372:31-39; Ericksson, B.1., et al. *Rivaroxaban versus Enoxaparin for Thromboprophylaxis after Hip Arthroplasty.* N.Engl.J.Med. 2008;358:2765-75.)

82.     Approval of Xarelto for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation in the U.S. was based on a clinical trial known as the Rivaroxaban Once Daily Oral Direct Factor Xa Inhibition Compared with Vitamin K Antagonism for Prevention of Stroke and Embolism Trial in Atrial Fibrillation study (hereinafter referred to as "ROCKET AF"). The study's findings showed that rivaroxaban was "noninferior to warfarin for the prevention of stroke or systemic embolism in patients with non-valvular atrial fibrillation, with a similar risk of major bleeding. However, bleeding from gastrointestinal sites, including upper, lower, and rectal

20

sites, occurred more frequently in the rivaroxaban group, as did bleeding that led to a drop in the hemoglobin level or bleeding that required transfusion." (Patel, M.R., et al. *Rivaroxaban versus Warfarin in Nonvalvular Atrial Fibrillation.* N.Engl.J.Med. 2011;365:883-91.)

83.    Defendants' boxed warning did not address the increased risk for serious and fatal bleeding, despite the fact that the information listed on their website originating from the Rocket AF clinical trial sponsored by Defendants, states that in comparison to warfarin, patients taking Xarelto have more gastrointestinal bleeds and need more transfusions. In spite of this reference regarding bleeds, the information is still wholly inadequate because, this information was not conveyed in the boxed warning on the Xarelto label.

84.    Approval of Xarelto for the treatment of DVT and/or PE and the reduction in recurrence of DVT and/or PE in the U.S. was based on the clinical trials known as the EINSTEIN-DVT, EINSTEIN-PE, and EINSTEIN-Extension studies. The EINSTEIN-DVT study tested Xarelto versus a placebo, and merely determined that Xarelto offered an option for treatment of DVT, with obvious increased risk of bleeding events as compared to placebo. (The EINSTEIN Investigators. *Oral Rivaroxaban for Symptomatic Venous Thromboembolism.* N.Engl.J.Med. 2010;363:2499-510). The EINSTEIN-Extension study confirmed that result. (Roumualdi, E., et al. *Oral rivaroxaban after symptomatic venous thromboembolism:*

21

*the continued treatment study (EINSTEIN-Extension study).* Expert Rev. Cardiovasc. Ther. 2011;9(7):841-844). The EINSTEIN-PE study's findings showed that a rivaroxaban regimen was non-inferior to the standard therapy for initial and long-term treatment of PE. However, the studies also demonstrated an increased risk of adverse events with Xarelto, including those that resulted in permanent discontinuation of Xarelto or prolonged hospitalization. (The EINSTEIN-PE Investigators. *Oral Rivaroxaban for the Treatment of Symptomatic Pulmonary Embolism.* N.Engl.J.Med. 2012;366:1287-97).

85.    Defendants used the results of the ROCKET AF study, the RECORD studies, and the EINSTEIN studies to promote Xarelto in their promotional materials, including the Xarelto website, which touts the positive results of those studies. However, Defendants' promotional materials fail to similarly highlight the increased risk of gastrointestinal bleeding and bleeding that required transfusion, among other serious bleeding concerns.

86.    Defendants also market Xarelto as a new oral anticoagulant treatment alternative to warfarin (Coumadin), a long-established 60 year safe treatment for preventing stroke and systemic embolism.  Defendants emphasize the supposed benefits of treatment with Xarelto over warfarin, which they refer to as the Xarelto Difference — namely, that Xarelto does not require periodic monitoring with blood tests and does not limit a patient's diet.

22

87.     However, in its QuarterWatch publication for the first quarter of the 2012 fiscal year, the Institute for Safe Medication Practices ("ISMP") noted that, even during the approval process, FDA "[r]eviewers also questioned the convenient once-a-day dosing scheme [of Xarelto], saying blood level studies had shown peaks and troughs that could be eliminated by twice-a-day dosing."

88.     Importantly, there is no antidote to Xarelto, unlike warfarin. Therefore, in the event of hemorrhagic complications, there is no available reversal agent. The original U.S. label approved when the drug was first marketed in the U.S. did not contain a warning regarding the lack of antidote, but instead only mentioned this important fact in the over dosage section.

89.     Defendants spent significant money to promote Xarelto, which included at least $11,000,000.00 spent during 2013 alone on advertising in journals targeted at prescribers and consumers in the U.S. In the third quarter of the 2013 fiscal year, Xarelto was the number one pharmaceutical product advertised in professional health journals based on pages and dollars spent.

90.     As a result of Defendants' aggressive marketing efforts, in its first full year of being on the market, Xarelto garnered approximately $582 million in sales globally.

91.     Defendants' website for Xarelto claims that over seven million people worldwide have been prescribed Xarelto. In the U.S., approximately 1 million Xarelto prescriptions had been written by the end of 2013.

23

92.     During the Defendants' 2012 fiscal year, Xarelto garnered approximately $658 million in sales worldwide. Then, in 2013, sales for Xarelto increased even further to more than clear the $1 billion threshold commonly referred to as "blockbuster" status in the pharmaceutical industry, ultimately reaching approximately $2 billion for the fiscal year. Thus, Xarelto is now considered the leading anticoagulant on a global scale in terms of sales.

93.     As part of their marketing of Xarelto, Defendants widely disseminated direct-to-consumer advertising campaigns that were designed to influence patients, including ELSIE M. SMITH, to make inquiries to their prescribing physician about Xarelto and/or request prescriptions for Xarelto.

94.     In the course of these direct to consumer advertisements, Defendants overstated the efficacy of Xarelto with respect to preventing stroke and systemic embolism, failed to adequately disclose to patients that there is no drug, agent, or means to reverse the anticoagulation effects of Xarelto, and that such irreversibility could have permanently disabling, life-threatening and fatal consequences.

95.     On June 6, 2013, Defendants received an untitled letter from the FDA's Office of Prescription Drug Promotion (hereinafter referred to as the "OPDP") regarding its promotional material for the atrial fibrillation indication, stating that, "the print ad is false or misleading because it minimizes the risks associated with Xarelto and makes a misleading claim" regarding dose adjustments, which was in violation of FDA

24

regulations. The OPDP thus requested that Defendants immediately cease distribution of such promotional material.

96.     Prior to Plaintiff's prescription of Xarelto, she became aware of the promotional materials described herein.

97.     Prior to Plaintiff's prescription of Xarelto, Plaintiff's prescribing physician received promotional materials and information from sales representatives of Defendants that Xarelto was just as effective as warfarin in reducing strokes in patients with non-valvular atrial fibrillation, as well as preventing DVT/PE in patients with prior history of DVT/PE or undergoing hip or knee replacement surgery, and was more convenient, without also adequately informing prescribing physicians that there was no reversal agent that could stop or control bleeding in patients taking Xarelto.

98.     At all times relevant hereto, Defendants also failed to warn emergency room doctors, surgeons, and other critical care medical professionals that unlike generally-known measures taken to treat and stabilize bleeding in users of warfarin, there is no effective agent to reverse the anticoagulation effects of Xarelto, and therefore no effective means to treat and stabilize patients who experience uncontrolled bleeding while taking Xarelto.

99.     At all times relevant to this action, The Xarelto Medication Guide, prepared and distributed by Defendants and intended for U.S. patients to whom Xarelto has been

prescribed, failed to warn and disclose to patients that there is no agent to reverse the anticoagulation effects of Xarelto and that if serious bleeding occurs, it may be irreversible, permanently disabling, and life-threatening.

100.   In the year leading up to June 30, 2012, there were 1,080 Xarelto-associated "Serious Adverse Event" ("SAE") Medwatch reports filed with the FDA, including at least 65 deaths. Of the reported hemorrhage events associated with Xarelto, 8% resulted in death, which was approximately twofold the risk of a hemorrhage-related death with warfarin.

101.   At the close of the 2012 fiscal year, a total of 2,081 new Xarelto-associated SAE reports were filed with the FDA in its first full year on the market, ranking tenth among other pharmaceuticals in direct reports to the FDA. Of those reported events, 151 resulted in death, as compared to only 56 deaths associated with warfarin.

102.   The ISMP referred to these SAE figures as constituting a "strong signal" regarding the safety of Xarelto, defined as "evidence of sufficient weight to justify an alert to the public and the scientific community, and to warrant further investigation."

103.   Of particular note, in the first quarter of 2013, the number of reported serious adverse events associated with Xarelto (680) overtook that of Pradaxa (528), another new oral anticoagulant, which had previously ranked as the number one reported drug in terms of adverse events in 2012.

104.   Moreover, on a global scale, in the first eight months of 2013, German

regulators received 968 Xarelto-related averse event reports, including 72 deaths, as compared to a total of 750 reports and 58 deaths in 2012.

105.   Despite the clear signal generated by the SAE data, Defendants failed to either alert the public and the scientific community, or perform further investigation into the safety of Xarelto.

106.   Defendants original and in some respects current labeling and prescribing information for Xarelto:

a.   failed to investigate, research, study and define, fully and adequately, the safety profile of Xarelto;

b.   failed to provide adequate warnings about the true safety risks associated with the use of Xarelto;

c.   failed to provide adequate warning regarding the pharmacokinetic and pharmacodynamic variability of Xarelto and its effects on the degree of anticoagulation in a patient;

d.   failed to disclose in the "Warnings" Section that there is no drug, agent or means to reverse the anticoagulation effects of Xarelto;

e.   failed to advise prescribing physicians, such as the Plaintiff's physician, to instruct patients that there was no agent to reverse the anticoagulant effects of Xarelto;

f.   failed to provide adequate instructions on how to intervene and/or stabilize a patient who suffers a bleed while taking Xarelto;

g.   failed to provide adequate warnings and information related to the increased risks of bleeding events associated with aging patient populations of Xarelto users;

h.   failed to provide adequate warnings regarding the increased risk of gastrointestinal bleeds in those taking Xarelto, especially, in those patients

27

with a prior history of gastrointestinal issues and/or upset;

i.  failed to provide adequate warnings regarding the increased risk of suffering a bleeding event requiring blood transfusions in those taking Xarelto;

j.  failed to provide adequate warnings regarding the need to assess renal functioning prior to starting a patient on Xarelto and to continue testing and monitoring of renal functioning periodically while the patient is on Xarelto;

k.  failed to provide adequate warnings regarding the need to assess hepatic functioning prior to starting a patient on Xarelto and to continue testing and monitoring of hepatic functioning periodically while the patient is on Xarelto;

l.  failed to include a **"BOXED WARNING"** about serious bleeding events associated with Xarelto;

m. failed to include a **"Bolded Warning"** about serious bleeding events associated with Xarelto; and

n.  in their "Medication Guide" intended for distribution to patients to whom Xarelto has been prescribed, Defendants failed to disclose to patients that there is no drug, agent or means to reverse the anticoagulation effects of Xarelto and that if serious bleeding occurs, such irreversibility could have permanently disabling, life-threatening or fatal consequences.

107.  During the years since first marketing Xarelto in the U.S., Defendants modified the U.S. labeling and prescribing information for Xarelto, which included additional information regarding the use of Xarelto in patients taking certain medications. Despite being aware of: (1) serious, and sometimes fatal, irreversible bleeding events associated with the use of Xarelto; and (2) 2,081 SAE Medwatch reports filed with the FDA in 2012 alone, including at least 151 deaths, Defendants nonetheless failed to

28

provide adequate disclosures or warnings in their label as detailed in Paragraphs 104 a-n.

108.   Prior to applying for and obtaining approval of Xarelto, Defendants knew or should have known that consumption of Xarelto was associated with and/or would cause the induction of life-threatening bleeding, and Defendants possessed at least one clinical scientific study, which evidence Defendants knew or should have known was a signal that life-threatening bleeding risk needed further testing and studies prior to its introduction to the market.

109.   Upon information and belief, despite life-threatening bleeding findings in a clinical trial and other clinical evidence, Defendants failed to adequately conduct complete and proper testing of Xarelto prior to filing their New Drug Application for Xarelto.

110.   Upon information and belief, from the date Defendants received FDA approval to market Xarleto, Defendants made, distributed, marketed, and sold Xarelto without adequate warning to Plaintiff' s prescribing physicians or Plaintiff that Xarelto was associated with and/or could cause life-threatening bleeding, presented a risk of life-threatening bleeding in patients who used it, and that Defendants had not adequately conducted complete and proper testing and studies of Xarelto with regard to severe side effects, specifically life-threatening bleeding.

111.   Upon information and belief, Defendants concealed and failed to completely disclose its knowledge that Xarelto was associated with or could cause life-

threatening bleeding as well as its knowledge that they had failed to fully test or study said risk.

112.   Upon information and belief, Defendants ignored the association between the use of Xarleto and the risk of developing life-threatening bleeding.

113.   Defendants' failure to disclose information that they possessed regarding the failure to adequately test and study Xarelto for life-threatening bleeding risk further rendered warnings for this medication inadequate.

114.   Defendants willfully, wantonly and with malice withheld the knowledge of increased risk of irreversible bleeds in users of Xarelto to prevent any chances of their product's registrations being delayed or rejected by FDA.

115.   With the knowledge of the true relationship between use of Xarelto and irreversible bleeds, rather than taking steps to pull the drug off the market, provide strong warnings, or create an antidote, Defendants promoted and continue to promote Xarelto as a safe and effective treatment for AFib.

116.   While Defendants enjoy great financial success from their expected blockbuster drug, Xarelto, they continue to place American citizens at risk of severe bleeds and death.

117.   By reason of the foregoing acts and omissions, the ELSIE M. SMITH was caused to suffer from life-threatening bleeding, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish,

30

including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

118.    Plaintiff has endured and continues to suffer the mental anguish and psychological trauma of living with the knowledge that Plaintiff has suffered serious and dangerous side effects including, *inter alia* life-threatening bleeding, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of redeveloping similar health issues.

119.    By reason of the foregoing, Plaintiff has been severely and permanently injured, and will require more constant and continuous medical monitoring and treatment than prior to Plaintiff's use of Defendants' Xarelto drug.

## CASE-SPECIFIC FACTUAL ALLEGATIONS

120.    On or around January 1, 2012, Plaintiff was prescribed and began taking Xarelto at the direction of her physician for suspected atrial fibrillation. Subsequently, as a direct result of Plaintiff's ingestion of Xarelto, Plaintiff presented to Yale New Haven hospital on or about January 21, 2014 and was diagnosed with a hemorrhagic brain bleed.

121.    Plaintiff was admitted on or about January 21, 2014 to the Yale New

31

Haven Hospital in New Haven, Connecticut, where she underwent treatment in the stroke unit, and is now permanently confined to a long term care center.

122.   As a proximate result of Defendants' acts and omissions, Plaintiff suffered the injuries described hereinabove due to Plaintiff's ingestion of Xarelto. Plaintiff accordingly seeks damages associated with these injuries.

123.   Plaintiff would not have used Xarelto had Defendants properly disclosed the risks associated with its use, as safer alternatives without the aforesaid risks were available.

**COUNT I**
**CONNECTICUT PRODUCTS LIABILITY ACT**
**C.G.A §52-272m**
**(Against All Defendants)**

Comes now Plaintiff and for Count I of this Complaint alleges:

124.   Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

125.   Plaintiff brings Count I of this complaint for the injuries Plaintiff suffered as a result of ingesting Xarelto.

126.   Defendants are liable to Plaintiffs under CPLA, Conn. Gen. Stat §52-272m et seq. for the safety of their products, like the one referred to herein.

**A. STRICT LIABILITY- FAILURE TO WARN**

127.   Defendants are liable under CPLA, Conn. Gen. Stat. §52-272m et seq. for the innocent, negligent and/or willful failure to provide adequate warnings and other clinically relevant information and data regarding Xarelto to Plaintiff and to the health care providers that sold, prescribed and administered it to her.

128.   Defendants, as sellers of pharmaceutical products, are held to the level of knowledge of experts in the field, and further, Defendants knew or should have known that warnings and other clinically relevant information and data that they distributed regarding the risk of injuries and death associated with the use of Xarelto were inadequate.

129.   Plaintiff did not have the same knowledge as Defendants and no adequate warning or other clinically relevant information and data was ever communicated to her or her health care providers.  Defendants owed a duty of reasonable care to adequately warn of the risks associated with the use of Xarelto and to provide adequate directions for the safe and effective use of Xarelto to Plaintiff, her prescribing healthcare providers, and the general public.

130.   Defendants' failure to adequately warn of clinically relevant information, including the risks and benefits associated with the use of Xarelto, resulted in the distribution of a defective product to consumers, including the Plaintiff.

131.   The Xarelto ingested by Plaintiff was defective at the time it was distributed by the Defendants or left their control.

132.   Plaintiff was a person who would reasonably be expected by Defendants to use Xarelto.

133.   Defendants knew or should have known that consumers, and specifically Plaintiff and/or her health care providers, would foreseeably and needlessly suffer injury as a result of Defendants' failures.

134.   As a direct and proximate result of the actions and inactions of the Defendants as set forth above, Plaintiff was exposed to Xarelto and suffered the injuries and damages set forth hereinabove.

135.   Plaintiff seeks all damages to which they may be justly entitled.

## B.  DESIGN DEFECT

136.   Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

137.   At all times material to this lawsuit, Defendants were engaged in the business of designing, manufacturing, testing, marketing, distributing and selling Xarelto for the sale to, and use by, members of the public.

138.   The Xarelto manufactured by Defendants reached Plaintiff without substantial change and was ingested as directed.  The Xarelto was defective and unreasonably dangerous when it entered into the stream of commerce and was used by

34

the Plaintiff.

139.   Defendants sold the Xarelto which was ingested by Plaintiff.

140.   Defendants owed a duty to the general public, and specifically to the Plaintiff, to exercise reasonable care in the design, study, development, manufacture, promotion, sale, marketing and distribution of their prescription medications, including the Xarelto at issue in this lawsuit.  Defendants failed to exercise reasonable care in the design of Xarelto because as designed, Xarelto was not sufficiently beneficial or effective to justify the risk of serious personal injuries such as those suffered by Plaintiff during foreseeable use. Defendants also failed to exercise reasonable care in the marketing of Xarelto because they failed to warn, that as designed, Xarelto was capable of causing serious personal injuries such as those suffered by Plaintiff during foreseeable use.

141.   Xarelto was defective due to inadequate post-marketing warnings and instruction because Defendants knew or should have known of the risk and danger of serious bodily harm and/or death from the use of Xarelto, but failed to provide an adequate warning to patients and prescribing physicians of the product, knowing the product could cause serious injury and/or death.

142.   The Xarelto ingested by Plaintiff was defective and, because of its defects, was unreasonably dangerous to persons who might reasonably be expected to require its use.  Moreover, this drug was dangerous to the extent beyond which could

35

be reasonably understood by Plaintiff.  Any benefit of Xarelto was far outweighed by the serious and undisclosed risks of its use, and other pharmaceutical drugs performed the same function without the increased risk of Xarelto.

143.  Defendants' failure to exercise reasonable care in the design, dosing information, marketing, warnings, and/or manufacturing of Xarelto was a proximate cause of Plaintiff's injuries and damages.

144.  As a direct and proximate result of the actions and inactions of the Defendants as set forth above, Plaintiff was exposed to Xarelto and suffered the injuries and damages set forth hereinabove.

145.  Plaintiff seeks all damages to which they may be justly entitled.

## C. NEGLIGENCE IN DEVELOPMENT, STUDY, MANUFACTURE, DISTRIBUTION AND SALE

146.  Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

147.  Defendants are liable to Plaintiff under Defendants are liable under CPLA, Conn. Gen. Stat. §52-272m et seq. due to their negligent development, study, manufacture, distribution and sale of Xarelto.

148.  At all times relevant to this lawsuit, Defendants owed a duty to consumers, including Plaintiff, to exercise reasonable care in the developing,

36

researching, manufacturing, marketing, supplying, promoting, packaging, sale and/or distribution of Xarelto into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous side effects, and to suspend distribution and sale of Xarelto when Defendants discovered it to be unreasonably dangerous.

149. Defendants duties included, but were not limited to, carefully and properly designing, testing, manufacturing, promoting, selling, and/or distributing Xarelto into the stream of commerce, and providing adequate information regarding the appropriate use of this product.

150. Defendants failed to exercise ordinary care in the designing, researching, manufacturing, marketing, supplying, promoting, packaging, sale, testing, quality assurance, quality control, and/or distribution of Xarelto into interstate commerce in that Defendants knew or should have known that using Xarelto created a high risk of unreasonable, dangerous side effects, including, life-threatening bleeding, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of redeveloping similar health issues.

151. The negligence of the Defendants, their agents, servants, and/or employees, included but was not limited to the following acts and/or omissions:

37

a.  manufacturing, producing, promoting, formulating, creating, and/or designing Xarelto without thoroughly testing it;

b.  manufacturing, producing, promoting, formulating, creating, and/or designing Xarelto without adequately testing it;

c.  not conducting sufficient testing programs to determine whether or not Xarelto was safe for use, in that Defendants herein knew or should have known that Xarelto was unsafe and unfit for use by reason of the dangers to its users;

d.  selling Xarelto without making proper and sufficient tests to determine the dangers to its users;

e.  negligently failing to adequately and correctly warn the Plaintiff the public, the medical and healthcare profession, and the FDA of the dangers of Xarelto;

f.  failing to provide adequate instructions regarding safety precautions to be observed by users, handlers, and persons who would reasonably and foreseeably come into contact with, and more particularly, use, Xarelto;

g.  failing to test Xarelto and/or failing to adequately, sufficiently and properly test Xarelto.

h.  negligently advertising and recommending the use of Xarelto without sufficient knowledge as to its dangerous propensities;

i.  negligently representing that Xarelto was safe for use for its intended purpose, when, in fact, it was unsafe;

j.  negligently representing that Xarelto had equivalent safety and efficacy as other forms of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery;

k.  negligently designing Xarelto in a manner which was dangerous to its users;

l.  negligently manufacturing Xarelto in a manner which was dangerous to its users;

m.  negligently producing Xarelto in a manner which was dangerous to its users;

n.  negligently assembling Xarelto in a manner which was dangerous to its users;

o.  concealing information from the Plaintiff in knowing that Xarelto was unsafe, dangerous, and/or non-conforming with FDA regulations;

p.  improperly concealing and/or misrepresenting information from the Plaintiff, healthcare professionals, and/or the FDA, concerning the severity of risks and dangers of Xarelto compared to other forms of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

152.  Defendants under-reported, underestimated and downplayed the serious dangers of Xarelto.

153.  Defendants negligently compared the safety risk and/or dangers of Xarelto with other forms of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

154.  Defendants were negligent in the designing, researching, supplying, manufacturing, promoting, packaging, distributing, testing, advertising, warning, marketing and sale of Xarelto in that they:

39

a.  failed to use due care in designing and manufacturing Xarelto so as to avoid the aforementioned risks to individuals when Xarelto was used for treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery;

b.  failed to accompany their product with proper and/or accurate warnings regarding all possible adverse side effects associated with the use of Xarelto;

c.  failed to accompany their product with proper warnings regarding all possible adverse side effects concerning the failure and/or malfunction of Xarelto;

d.  failed to accompany their product with accurate warnings regarding the risks of all possible adverse side effects concerning Xarelto;

e.  failed to warn Plaintiff of the severity and duration of such adverse effects, as the warnings given did not accurately reflect the symptoms, or severity of the side effects;

f.  failed to conduct adequate testing, including pre-clinical and clinical testing and post-marketing surveillance to determine the safety of Xarelto;

g.  failed to warn Plaintiff, prior to actively encouraging the sale of Xarelto, either directly or indirectly, orally or in writing, about the need for more comprehensive, more regular medical monitoring than usual to ensure early discovery of potentially serious side effects;

h.  were otherwise careless and/or negligent.

155.  Despite the fact that Defendants knew or should have known that Xarelto caused unreasonably dangerous side effects, Defendants continued and continue to market, manufacture, distribute and/or sell Xarelto to consumers, including the Plaintiff.

40

156.   Defendants knew or should have known that consumers such as the Plaintiff would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care, as set forth above.

157.   Defendants' negligence was the proximate cause of Plaintiff's injuries, harm and economic loss which Plaintiff suffered and/or will continue to suffer.

158.   As a result of the foregoing acts and omissions, the Plaintiff was caused to suffer serious and dangerous side effects including, life-threatening bleeding, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications.

159.   As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

160.   As a direct and proximate result of the actions and inactions of the Defendants as set forth above, Plaintiff was exposed to Xarelto and suffered the injuries and damages set forth hereinabove.

161.   Plaintiff seeks all damages to which they may be justly entitled.

**D.  FAILURE TO WARN**

41

162.   Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

163.   Defendants are liable to Plaintiff under Defendants are liable under CPLA, Conn. Gen. Stat. §52-272m et seq. due to their failure to warn Plaintiff and/or her health care professionals as to the true risks and benefits of Xarelto.

164.   Defendants owed a duty to warn of any dangerous defects or side effects; a duty to assure their product did not cause users unreasonable and dangerous risks, reactions, and side effects; and a duty to provide adequate post market surveillance and warnings as it learned of Xarelto's substantial dangers.

165.   Plaintiff was prescribed and used Xarelto for its intended purpose.

166.   Plaintiff could not have known about the dangers and hazards presented by Xarelto.

167.   The warnings that were given by the Defendants were not accurate, clear, complete and/or were ambiguous and were incorrect and misleading in the following material respects:

   a. Xarelto was unaccompanied by proper warnings regarding all possible side effects associated with its use and comparative severity, incidence, and duration of such adverse effects; and

   b. Xarelto was defective due to inadequate post-marketing warnings or instructions because Defendants failed to provide adequate warnings and adequate directions for use to consumers and continued to aggressively promote Xarelto, even after it knew or should have known of the risk of

42

injury from this drug, and Xarelto was unaccompanied by proper warnings regarding irreversible bleeding caused by Xarelto and Defendants continued to aggressively promote Xarelto, even after it knew of or should have known of the risk of irreversible bleeding from this drug; and

c.   Defendants failed to warn that there were other drugs available that did not have the same risks as Xarelto

168.   Defendants had a continuing duty to provide consumers, including Plaintiff, and Plaintiff's prescribing physicians with warnings and other clinically relevant information and data regarding the risks and dangers associated with Xarelto, as it became or could have become available to the Defendants.

169.   Defendants marketed, promoted, distributed and sold an unreasonably dangerous and defective prescription drug, Xarelto, to health care providers empowered to prescribe and dispense Xarelto to consumers, including Plaintiff, without adequate warnings and other clinically relevant information and data. Through both omission and affirmative misstatements, Defendants misled the medical community about the risk and benefit balance of Xarelto, which resulted in injury to Plaintiff.

170.   Despite the fact that Defendants knew or should have known that Xarelto caused unreasonable and dangerous side effects, they continued to promote and market Xarelto without stating that there existed safer and more or equally effective alternative drug products and/or providing adequate clinically relevant information and data.

171.   Defendants knew or should have known that consumers, including Plaintiff specifically, would foreseeably and needlessly suffer injury and/or death as a result of

43

Defendants' failures.

172.    Defendants failed to provide timely and adequate warnings to physicians, pharmacies, and consumers, including Plaintiff, and to Plaintiff's intermediary physicians, in the following ways:

    a.  Defendants failed to include adequate warnings and/or provide adequate clinically relevant information and data that would alert Plaintiff and Plaintiff's physicians to the dangerous risks of Xarelto including, among other things, irreversible bleeds;

    b.  Defendants failed to provide adequate post-marketing warnings and instructions and adequate directions for use after the Defendants knew or should have known of the significant risks of, among other things, irreversible bleeds and the need for blood monitoring;

    c.  Defendants continued to aggressively promote and sell Xarelto, even after they knew or should have known of the unreasonable risks of irreversible bleeds from this drug.

173.    The warnings, or lack thereof, that were given by the Defendants failed to properly warn prescribing physicians of the risk of irreversible bleeding and other serious injuries and side effects, and failed to instruct prescribing physicians to test and monitor for the presence of the injuries for which Plaintiff and others had been placed at risk.

174.    The warnings that were given by the Defendants failed to properly warn Plaintiff and prescribing physicians about the prevalence of irreversible bleeds.

175.    The Plaintiff, individually and through her prescribing physician, reasonably relied upon the skill, superior knowledge and judgment of the Defendants.

44

The Defendants had a continuing duty to warn the Plaintiff and the prescribing physician of the dangers associated with Xarelto.  Had the Plaintiff received adequate warnings regarding the risks of Xarelto, she would not have used it.

176.   Defendants had an obligation to provide Plaintiff and Plaintiffs physicians with adequate clinically relevant information and data and warnings regarding the adverse health risks associated with exposure to Xarelto, and/or that there existed safer and more or equally effective alternative drug products.

177.   By failing to provide Plaintiff and Plaintiffs physicians with adequate clinically relevant information and data and warnings regarding the adverse health risks associated with exposure to Xarelto, and/or that there existed safer and more or equally effective alternative drug products, Defendants breached their duty of reasonable care and safety.

178.   Defendants' actions described above were performed willfully, intentionally, and with reckless disregard of the life and safety of the Plaintiff and the general public.

179.   Defendants' failure to exercise reasonable care in the design, dosing information, marketing, warnings, and/or manufacturing of Xarelto was a proximate cause of Plaintiff's injuries and damages.

180.   As a result of the foregoing acts and omissions, the Plaintiff was caused to suffer serious and dangerous side effects including, life-threatening

bleeding, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications.

181.   As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

182.   As a direct and proximate result of the actions and inactions of the Defendants as set forth above, Plaintiff was exposed to Xarelto and suffered the injuries and damages set forth hereinabove.

183.   Plaintiff seeks all damages to which they may be justly entitled.


**E. NEGLIGENCE**

184.   Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

185.   Defendants had a duty to the general public, and specifically the Plaintiff, to exercise reasonable care in the designing, researching, manufacturing, marketing,

46

supplying, promoting, packaging, sale and/or distribution of Xarelto into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous side effects.

186. Defendants' duties included, but were not limited to, carefully and properly designing, testing, manufacturing, licensing, packaging, promoting, advertising, selling or distributing Xarelto into the stream of commerce, and to provide warnings with regard to the drug.

187. Defendants failed to exercise ordinary care in the designing, researching, manufacturing, marketing, supplying, promoting, packaging, sale, testing, quality assurance, quality control, and/or distribution of Xarelto into interstate commerce in that Defendants knew or should have known that using Xarelto created a high risk of unreasonable, dangerous side effects, including, life-threatening bleeding, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of redeveloping the same health issues.

188. The negligence of the Defendants, their agents, servants, and/or employees, included but was not limited to the following acts and/or omissions:

    a.  manufacturing, producing, promoting, formulating, creating, and/or designing Xarelto without thoroughly testing it;

    b.  manufacturing, producing, promoting, formulating, creating, and/or

47

designing Xarelto without adequately testing it;

c.  not conducting sufficient testing programs to determine whether or not Xarelto was safe for use; in that Defendants herein knew or should have known that Xarelto was unsafe and unfit for use by reason of the dangers to its users;

d.  selling Xarelto without making proper and sufficient tests to determine the dangers to its users;

e.  negligently failing to adequately and correctly warn the Plaintiff, the public, the medical and healthcare profession, and the FDA of the dangers of Xarelto;

f.  failing to provide adequate instructions regarding safety precautions to be observed by users, handlers, and persons who would reasonably and foreseeably come into contact with, and more particularly, use, Xarelto;

g.  failing to test Xarelto and/or failing to adequately, sufficiently and properly test Xarelto.

h.  negligently advertising and recommending the use of Xarelto without sufficient knowledge as to its dangerous propensities;

i.  Negligently representing that Xarelto was safe for use for its intended purpose, when, in fact, it was unsafe;

j.  negligently representing that Xarelto had equivalent safety and efficacy as other forms of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery;

k.  negligently designing Xarelto in a manner which was dangerous to its users;

l.  negligently manufacturing Xarelto in a manner which was dangerous to its users;

48

    m. negligently producing Xarelto in a manner which was dangerous to its users;

    n. negligently assembling Xarelto in a manner which was dangerous to its users;

    o. concealing information from the Plaintiff in knowing that Xarelto was unsafe, dangerous, and/or non-conforming with FDA regulations;

    p. improperly concealing and/or misrepresenting information from the Plaintiff, healthcare professionals, and/or the FDA, concerning the severity of risks and dangers of Xarelto compared to other forms of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

189. Defendants under-reported, underestimated and downplayed the serious dangers of Xarelto.

190. Defendants negligently compared the safety risk and/or dangers of Xarelto with other forms of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

191. Defendants were negligent in the designing, researching, supplying, manufacturing, promoting, packaging, distributing, testing, advertising, warning, marketing and sale of Xarelto in that they:

    a. failed to use due care in designing and manufacturing Xarelto so as to avoid the aforementioned risks to individuals when Xarelto was used for treatment for reducing the risk of stroke and systemic embolism in patients

49

with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery;

b.  failed to accompany their product with proper and/or accurate warnings regarding all possible adverse side effects associated with the use of Xarelto; Failed to accompany their product with proper warnings regarding all possible adverse side effects concerning the failure and/or malfunction of Xarelto;

c.  failed to accompany their product with accurate warnings regarding the risks of all possible adverse side effects concerning Xarelto;

d.  failed to warn Plaintiff of the severity and duration of such adverse effects, as the warnings given did not accurately reflect the symptoms, or severity of the side effects;

e.  failed to conduct adequate testing, including pre-clinical and clinical testing and post-marketing surveillance to determine the safety of Xarelto;

f.  failed to warn Plaintiff, prior to actively encouraging the sale of Xarelto, either directly or indirectly, orally or in writing, about the need for more comprehensive, more regular medical monitoring than usual to ensure early discovery of potentially serious side effects;

g.  were otherwise careless and/or negligent.

192.   Despite the fact that Defendants knew or should have known that Xarelto caused unreasonably dangerous side effects, Defendants continued and continue to market, manufacture, distribute and/or sell Xarelto to consumers, including the Plaintiff.

193.   Defendants knew or should have known that consumers such as the Plaintiff would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care, as set forth above.

194.   Defendants' negligence was the proximate cause of Plaintiff's injuries, harm and economic loss which Plaintiff suffered and/or will continue to suffer.

195.   As a result of the foregoing acts and omissions, the Plaintiff was caused to suffer serious and dangerous side effects including, life-threatening bleeding, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications.

196.   As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

197.   As a direct and proximate result of the actions and inactions of the Defendants as set forth above, Plaintiff was exposed to Xarelto and suffered the injuries and damages set forth hereinabove.

198.   Plaintiff seeks all damages to which they may be justly entitled.

## F. NEGLIGENT MISREPRESENTATION

199.   Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force

and effect as if more fully set forth herein.

200.   Defendants had a duty to represent to the medical and healthcare community, and to the Plaintiff, the FDA and the public in general that said product, Xarelto, had been tested and found to be safe and effective to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, to reduce the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

201.   Defendants knew, or should have known, that there were dangerous side effects resulting from the use of Xarelto.

202.   Defendants knew or reasonably should have known that consumers such as Plaintiff would not have known about the increased risk of irreversible bleeds, among other things, associated with Xarelto.

203.   Defendants, armed with the knowledge stated in the preceding paragraphs, proceeded with the design, production, manufacture, promotion, advertising, and sale of Xarelto without adequate warning of the side effects and dangerous risks to the consuming public, including Plaintiff.

204.   Defendants negligently represented to Plaintiff the safety and effectiveness of Xarelto and concealed material information, including adverse information regarding the safety and effectiveness of Xarelto. The misrepresentations and/or material omissions made by or perpetuated by Defendants are as follows:

a.  Defendants failed to conduct sufficient testing which, if properly performed, would have shown that Xarelto had serious side effects, and warn users of those risks; and/or

b.  include adequate warnings with Xarelto that would alert users to he potential risks and serious side effects of Xarelto, as well as the limited benefits and the approved uses; and/or

c.  warn Plaintiff that use of Xarelto carried a risk of death or permanent injury from irreversible bleeding, and other serious side effects; and/or

d.  advise the FDA, the health care industry, and the public about the adverse reports it had received regarding Xarelto.

205.   The representations made by Defendants were, in fact, false.

206.   Defendants made the misrepresentations and omissions with the intent that Plaintiff and the consuming public rely upon such information or the absence of such information in selection of Xarelto.

207.   Defendants failed to exercise ordinary care in the representation of Xarelto, while involved in its manufacture, sale, testing, quality assurance, quality control, and/or distribution of said product into interstate commerce, in that Defendants negligently misrepresented Xarelto's high risk of unreasonable, dangerous side effects.

208.   Defendants breached their duty in representing Xarelto's serious side effects to the medical and healthcare community, to the Plaintiff, the FDA and the public in general.

209.   Plaintiff justifiably relied on and/or was induced by the misrepresentations and/or active concealment by Defendants and relied upon the absence of safety

53

information, which Defendants suppressed, concealed, or failed to disclose, all to her detriment.

210.   As a direct and proximate result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental and related expenses. Plaintiff believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

211.   Plaintiff seeks all damages to which they may be justly entitled.

## G. BREACH OF EXPRESS WARRANTY

212.   Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

213.   Defendants expressly warranted that Xarelto was safe and well accepted by users.

214.   Xarelto does not conform to these express representations because Xarelto is not safe and has numerous serious side effects, many of which were not accurately warned about by Defendants. As a direct and proximate result of the breach of said warranties, Plaintiff suffered and/or will continue to suffer severe and permanent personal injuries, harm and economic loss.

54

215.   Plaintiff did rely on the express warranties of the Defendants herein.

216.   Members of the medical community, including physicians and other healthcare professionals, relied upon the representations and warranties of the Defendants for use of Xarelto in recommending, prescribing, and/or dispensing Xarelto.

217.   The Defendants herein breached the aforesaid express warranties, as their drug Xarelto was defective.

218.   Defendants expressly represented to Plaintiff, her physicians, healthcare providers, and/or the FDA that Xarelto was safe and fit for use for the purposes intended, that it was of merchantable quality, that it did not produce any dangerous side effects in excess of those risks associated with other forms of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery, that the side effects it did produce were accurately reflected in the warnings and that it was adequately tested and fit for its intended use.

219.   Defendants knew or should have known that, in fact, said representations and warranties were false, misleading and untrue in that Xarelto was not safe and fit for the use intended, and, in fact, produced serious injuries to the users that were not accurately identified and represented by Defendants.

220.   As a result of the foregoing acts and omissions, the Plaintiff was caused to

55

suffer serious and dangerous side effects including, life-threatening bleeding, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of redeveloping similar health issues.

221.   By reason of the foregoing, Plaintiff has been severely and permanently injured, and will require more constant and continuous medical monitoring and treatment than prior to Plaintiff's use of Defendants' Xarelto drug.

222.   As a result of the foregoing acts and omissions, the Plaintiff was caused to suffer serious and dangerous side effects including, life-threatening bleeding, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications.

223.   As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

224.   As a direct and proximate result of the actions and inactions of the

Defendants as set forth above, Plaintiff was exposed to Xarelto and suffered the injuries and damages set forth hereinabove.

225.   Plaintiff seeks all damages to which they may be justly entitled.

## H. BREACH OF IMPLIED WARRANTY

226.   Defendants researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold and/or otherwise released into the stream of commerce Xarelto, in the course of same, directly advertised or marketed the product to the FDA, healthcare professionals and consumers, including Plaintiff, or persons responsible for consumer.

227.   Defendants impliedly warranted to Plaintiff, her physicians, healthcare providers, and/or the FDA that Xarelto was safe and fit for use for the purposes intended, that it was of merchantable quality, that it did not produce any dangerous side effects in excess of those risks associated with other forms of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery, that the side effects it did produce were accurately reflected in the warnings and that it was adequately tested and fit for its intended use.

228.   Defendants impliedly warranted that their Xarelto, which they

57

manufactured and/or distributed and sold, and which Plaintiff purchased and ingested, to be of merchantable quality and fit for the common, ordinary, and intended uses for which the product was sold.

229.   At the time Defendants marketed, sold, and distributed Xarelto for use by Plaintiff, Defendants knew of the use for which Xarelto was intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

230.   The Defendants impliedly represented and warranted to the users of Xarelto and their physicians, healthcare providers, and/or the FDA that Xarelto was safe and of merchantable quality and fit for the ordinary purpose for which said product was to be used.

231.   That said representations and warranties aforementioned were false, misleading, and inaccurate in that Xarelto was unsafe, unreasonably dangerous, improper, not of merchantable quality, and defective.

232.   Plaintiff, and/or members of the medical community and/or healthcare professionals did rely on said implied warranty of merchantability of fitness for a particular use and purpose.

233.   Plaintiff and Plaintiff's physicians and healthcare professionals reasonably relied upon the skill and judgment of Defendants as to whether Xarelto was of merchantable quality and safe and fit for its intended use.

234.   Xarelto was injected into the stream of commerce by the Defendants in a

defective, unsafe, and inherently dangerous condition and the products and materials were expected to and did reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

235.   The Defendants herein breached the aforesaid implied warranties, as their drug Xarelto was not fit for its intended purposes and uses.

236.   As a result of the foregoing acts and omissions, the Plaintiff was caused to suffer serious and dangerous side effects including, life-threatening bleeding, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including

237.   Defendants breached their implied warranties of Xarelto sold to Plaintiff because this product was not fit for its common, ordinary, and intended use.

238.   As a direct, foreseeable and proximate result of Defendants' breaches of Implied warranties, Plaintiff suffered grievous bodily injury and consequential economic and other losses, as described above, when Plaintiff ingested Xarelto, in reasonable reliance upon the implied warranties, leading to Plaintiff's injuries.

239.   As a result of the foregoing acts and omissions, the Plaintiff was caused to suffer serious and dangerous side effects including, life-threatening bleeding, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or

59

medications.

240.   As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

241.   As a direct and proximate result of the actions and inactions of the Defendants as set forth above, Plaintiff was exposed to Xarelto and suffered the injuries and damages set forth hereinabove.

242.   The Plaintiff's injuries and damages are severe and permanent, and will continue into the future. As a result, the Plaintiff seeks actual and punitive damages from the Defendants.

243.   Plaintiff seeks all damages to which they may be justly entitled.

## COUNT II
## UNFAIR AND DECEPTIVE TRADE PRACTICES
Conn. Gen. Stat. §42-110a *et seq.*
### Against All Defendants

244.   Plaintiffs hereby incorporate by reference all preceding paragraphs as if fully set forth herein.

245.   Defendants are liable to Plaintiffs under the Connecticut Unfair Trade Practices Act (CUTPA), Conn. Gen. Stat. §42-110a *et seq.* Wholly separate and apart

60

from the personal injuries sustained by Plaintiffs, Plaintiffs further suffered financial injury and other ascertainable losses.

246.   Defendants have a statutory duty to refrain from unfair or deceptive acts or trade practices in the design, development, manufacture, promotion, and sale of the drug products.

247.   Defendants financed, assisted, supported and participated in the promotion and use of Xarelto in order to create consumer demand for the drug.

248.   Defendants violated CUTPA by engaging in unfair methods of competition or deceptive acts or practices that were proscribed by law, including the following:

    a.   representing that goods or services have characteristics, ingredients, uses benefits or quantities that they do not have;

    b.   advertising goods or services with the intent not to sell them as advertised; and

    c.   engaging in fraudulent or deceptive conduct that creates a likelihood of confusion or misunderstanding.

249.   Defendants violated consumer protection laws through their use of false and misleading misrepresentations or omissions of material fact relating to the safety of Xarelto.

250.   Defendants uniformly communicated the purported benefits of Xarelto while failing to disclose the serious and dangerous side-effects related to the use of Xarelto and of the true state of Xarelto regulatory status, its safety, its efficacy, and its usefulness. Defendants made these representations to physicians, the medical community

at large, and to patients and consumers such as Plaintiff in the marketing and advertising campaign described herein.

251.   Defendants' conduct in connection with Xarelto was also impermissible and illegal in that it created a likelihood of confusion and misunderstanding, because Defendants misleadingly, falsely and or deceptively misrepresented and omitted numerous material facts regarding, among other things, the utility, benefits, costs, safety, efficacy and advantages of Xarelto.

252.   As a result of these violations of consumer protection laws, Plaintiff incurred and will incur, serious physical injury, pain, suffering, loss of income, loss of opportunity, loss of family and social relationships, and medical, hospital and surgical expenses and other expense related to the diagnosis and treatment thereof, for which Defendants are liable.

253.   As a result of the foregoing acts and omissions, the Plaintiff was caused to suffer serious and dangerous side effects including, life-threatening bleeding, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications.

254.   As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health,

incidental and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

255.   As a direct and proximate result of the actions and inactions of the Defendants as set forth above, Plaintiff was exposed to Xarelto and suffered the injuries and damages set forth hereinabove.

256.   Plaintiff seeks all damages to which they may be justly entitled.


## COUNT III
## FRAUDULENT MISREPRESENTATION
### Against All Defendants

257.   Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

258.   The Defendants falsely and fraudulently represented to the medical and healthcare community, and to the Plaintiff, and/or the FDA, and the public in general, that said product, Xarelto, had been tested and was found to be safe and/or effective to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, to treat DVT and PE, to reduce the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

259.   That representations made by Defendants were, in fact, false.

63

260.   When said representations were made by Defendants, they knew those representations to be false and it willfully, wantonly and recklessly disregarded whether the representations were true.

261.   These representations were made by said Defendants with the intent of defrauding and deceiving the Plaintiff, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing the public in general, and the medical and healthcare community in particular, to recommend, prescribe, dispense and/or purchase said product, Xarelto, for use to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, to reduce the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery, all of which evinced a callous, reckless, willful, depraved indifference to the health, safety and welfare of the Plaintiff herein.

262.   At the time the aforesaid representations were made by the Defendants and, at the time the Plaintiff used Xarelto, the Plaintiff was unaware of the falsity of said representations and reasonably believed them to be true.

263.   In reliance upon said representations, the Plaintiff was induced to and did use Xarelto, thereby sustaining severe and permanent personal injuries, and/or being at an increased risk of sustaining severe and permanent personal injuries in the future.

264.   Said Defendants knew and were aware or should have been aware that

Xarelto had not been sufficiently tested, was defective in nature, and/or that it lacked adequate and/or sufficient warnings.

265.   Defendants knew or should have known that Xarelto had a potential to, could, and would cause severe and grievous injury to the users of said product, and that it was inherently dangerous in a manner that exceeded any purported, inaccurate, and/or down-played warnings.

266.   Defendants brought Xarelto to the market, and acted fraudulently, wantonly and maliciously to the detriment of the Plaintiff.

267.   As a result of the foregoing acts and omissions, the Plaintiff was caused to suffer serious and dangerous side effects including, life-threatening bleeding, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications.

268.   As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

269.   As a direct and proximate result of the actions and inactions of the

65

Defendants as set forth above, Plaintiff was exposed to Xarelto and suffered the injuries and damages set forth hereinabove.

270.   Plaintiff seeks all damages to which they may be justly entitled.


## COUNT IV
## FRAUDULENT CONCEALMENT
### Against All Defendants

271.   Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

272.   At all times during the course of dealing between Defendants and Plaintiff, and/or Plaintiffs healthcare providers, and/or the FDA, Defendants misrepresented the safety of Xarelto for its intended use.

273.   Defendants knew or were reckless in not knowing that its representations were false.

274.   In representations to Plaintiff, and/or Plaintiff's healthcare providers, and/or the FDA, Defendants fraudulently concealed and intentionally omitted the following material information:

     a. that Xarelto was not as safe as other forms of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for

66

prophylaxis of DVT for patients undergoing hip and knee replacement surgery;

b. that the risks of adverse events with Xarelto were higher than those with other forms of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery;

c. that the risks of adverse events with Xarelto were not adequately tested and/or known by Defendants;

d. that Defendants were aware of dangers in Xarelto, in addition to and above and beyond those associated with other forms of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery;

e. that Xarelto was defective, and that it caused dangerous side effects, including but not limited to life-threatening bleeding, as well as other severe and permanent health consequences, in a much more and significant rate than other forms of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery;

f. that patients needed to be monitored more regularly than normal while using Xarelto;

g. that Xarelto was manufactured negligently; that Xarelto was manufactured defectively, that Xarelto was manufactured improperly, that Xarelto was designed negligently;

h. that Xarelto was designed defectively, and that Xarelto was designed improperly.

275. Defendants were under a duty to disclose to Plaintiff, and Plaintiff's

67

physicians, hospitals, healthcare providers, and/or the FDA the defective nature of Xarelto, including but not limited to the heightened risks of life-threatening bleeding.

276.   Defendants had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects, and hence, cause damage to persons who used Xarelto, including the Plaintiff, in particular.

277.   Defendants' concealment and omissions of material facts concerning, *inter alia*, the safety of Xarelto was made purposefully, willfully, wantonly, and/or recklessly, to mislead Plaintiff, and Plaintiffs physicians, hospitals and healthcare providers into reliance, continued use of Xarelto, and actions thereon, and to cause them to purchase, prescribe, and/or dispense Xarelto and/or use the product.

278.   Defendants knew that Plaintiff, and Plaintiff's physicians, hospitals, healthcare providers, and/or the FDA had no way to determine the truth behind Defendants' concealment and omissions, and that these included material omissions of facts surrounding Xarelto, as set forth herein.

279.   Plaintiff, as well as Plaintiffs doctors, healthcare providers, and/or hospitals reasonably relied on facts revealed which negligently, fraudulently and/or purposefully did not include facts that were concealed and/or omitted by Defendants.

280.   As a result of the foregoing acts and omissions, the Plaintiff was caused to suffer serious and dangerous side effects including, life-threatening bleeding, as well as other severe and personal injuries which are permanent and lasting in nature,

physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of redeveloping similar health issues.

281.   As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

282.   As a result of the foregoing acts and omissions, the Plaintiff was caused to suffer serious and dangerous side effects including, life-threatening bleeding, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications.

283.   As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

284.   As a direct and proximate result of the actions and inactions of the

Defendants as set forth above, Plaintiff was exposed to Xarelto and suffered the injuries and damages set forth hereinabove.

285.   Plaintiff seeks all damages to which they may be justly entitled.


## COUNT V
## FRAUD AND DECEIT
### Against all Defendants

286.   Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

287.   Defendants conducted research and used Xarelto as part of their research.

288.   As a result of Defendants' research and testing, or lack thereof, Defendants blatantly and intentionally distributed false information, including but not limited to assuring the public, the Plaintiff, Plaintiffs doctors, hospitals, healthcare professionals, and/or the FDA that Xarelto was safe and effective for use as a means to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, to reduce the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

289.   As a result of Defendants' research and testing, or lack thereof, Defendants intentionally omitted certain results of testing and research to the public, healthcare

70

professionals, and/or the FDA, including the Plaintiff.

290. Defendants had a duty when disseminating information to the public to disseminate truthful information and a parallel duty not to deceive the public and the Plaintiff, as well as Plaintiff's respective healthcare providers and/or the FDA.

291. The information distributed to the public, the FDA, and the Plaintiff by Defendants, including but not limited to reports, press releases, advertising campaigns, television commercials, print ads, magazine ads, billboards, and all other commercial media contained material representations of fact and/or omissions.

292. The information distributed to the public, the FDA, and the Plaintiff by Defendants intentionally included representations that Defendants' drug Xarelto was safe and effective for use to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, to reduce the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

293. The information distributed to the public, the FDA, and the Plaintiff, by Defendants intentionally included representations that Defendants' drug Xarelto carried the same risks, hazards, and/or dangers as other forms of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

294.   The information distributed to the public, the FDA, and the Plaintiff, by Defendants intentionally included false representations that Xarelto was not injurious to the health and/or safety of its intended users.

295.   The information distributed to the public, the FDA, and the Plaintiff, by Defendants intentionally included false representations that Xarelto was as potentially injurious to the health and/or safety of its intended as other forms of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

296.   These representations were all false and misleading.

297.   Upon information and belief, Defendants intentionally suppressed, ignored and disregarded test results not favorable to the Defendants, and results that demonstrated that Xarelto was not safe as a means of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery, and/or was not as safe as other means of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

298.   Defendants intentionally made material representations to the FDA and the public, including the medical profession, and the Plaintiff, regarding the safety of Xarelto, specifically but not limited to Xarelto not having dangerous and serious health and/or safety concerns.

299.   Defendants intentionally made material representations to the FDA and the public in general, including the medical profession, and the Plaintiff, regarding the safety of Xarelto, specifically but not limited to Xarelto being a safe means of reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

300.   That it was the purpose of Defendants in making these representations to deceive and defraud the public, the FDA, and/or the Plaintiff, to gain the confidence of the public, healthcare professionals, the FDA, and/or the Plaintiff, to falsely ensure the quality and fitness for use of Xarelto and induce the public, and/or the Plaintiff to purchase, request, dispense, prescribe, recommend, and/or continue to use Xarelto.

301.   Defendants made the aforementioned false claims and false representations with the intent of convincing the public, healthcare professionals, the FDA, and/or the Plaintiff that Xarelto was fit and safe for use as treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip

73

and knee replacement surgery.

302. Defendants made the aforementioned false claims and false representations with the intent of convincing the public, healthcare professionals, the FDA, and/or the Plaintiff that Xarelto was fit and safe for use as treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery, and did not pose risks, dangers, or hazards above and beyond those identified and/or associated with other forms of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

303. That Defendants made claims and representations in its documents submitted to the FDA, to the public, to healthcare professionals, and the Plaintiff that Xarelto did not present serious health and/or safety risks.

304. That Defendants made claims and representations in its documents submitted to the FDA, to the public, to healthcare professionals, and the Plaintiff that Xarelto did not present health and/or safety risks greater than other oral forms of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for

74

prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

305.   That these representations and others made Defendants were false when made, and/or were made with a pretense of actual knowledge when knowledge did not actually exist, and/or were made recklessly and without regard to the actual facts.

306.   That these representations and others, made by Defendants, were made with the intention of deceiving and defrauding the Plaintiff, including her respective healthcare professionals and/or the FDA, and were made in order to induce the Plaintiff and/or her respective healthcare professionals to rely upon misrepresentations and caused the Plaintiff to purchase, use, rely on, request, dispense, recommend, and/or prescribe Xarelto

307.   That Defendants, recklessly and intentionally falsely represented the dangerous and serious health and/or safety concerns of Xarelto to the public at large, the Plaintiff in particular, for the purpose of influencing the marketing of a product known to be dangerous and defective and/or not as safe as other alternatives, including other forms of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

308.   That Defendants willfully and intentionally failed to disclose the material facts regarding the dangerous and serious safety concerns of Xarelto by concealing and suppressing material facts regarding the dangerous and serious health and/or safety concerns of Xarelto.

309.   That Defendants willfully and intentionally failed to disclose the truth, failed to disclose material facts and made false representations with the purpose and design of deceiving and lulling the Plaintiff, as well as her respective healthcare professionals into a sense of security so that Plaintiff would rely on the representations and purchase, use and rely on Xarelto and/or that Plaintiff's respective healthcare providers would dispense, prescribe, and/or recommend the same.

310.   Defendants, through their public relations efforts, which included but were not limited to the public statements and press releases, knew or should have known that the public, including the Plaintiff, as well as Plaintiff's respective healthcare professionals would rely upon the information being disseminated.

311.   Defendants utilized direct to consumer adverting to market, promote, and/or advertise Xarelto.

312.   That the Plaintiff and/or her respective healthcare professionals did in fact rely on and believe the Defendants' representations to be true at the time they were made and relied upon the representations as well as the superior knowledge of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery, and were thereby induced to purchase, use and rely on Defendants' drug Xarelto.

313.   That at the time the representations were made, the Plaintiff and/or her

respective healthcare providers did not know the truth with regard to the dangerous and serious health and/or safety concerns of Xarelto.

314.   That the Plaintiff did not discover the true facts with respect to the dangerous and serious health and/or safety concerns, and the false representations of Defendants, nor could the Plaintiff with reasonable diligence have discovered the true facts.

315.   That had the Plaintiff known the true facts with respect to the dangerous and serious health and/or safety concerns of Xarelto, Plaintiff would not have purchased, used and/or relied on Defendants' drug Xarelto.

316.   That the Defendants' aforementioned conduct constitutes fraud and deceit, and was committed and/or perpetrated willfully, wantonly and/or purposefully on the Plaintiff.

317.   As a result of the foregoing acts and omissions, the Plaintiff was caused to suffer serious and dangerous side effects including, life-threatening bleeding, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of redeveloping similar health issues.

318.   As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health,

incidental and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

319.   Plaintiff seeks all damages to which they may be justly entitled.


## COUNT VI
## PUNITIVE DAMAGES
### C.G.S §52-240b as against All Defendants

320.   Plaintiff hereby incorporates by reference all preceding paragraphs as if fully set forth herein.

321.   Plaintiff is entitled to punitive damages pursuant to Conn. Gen. Stat. §52-572m and 52-240b because Defendants' actions were reckless and without regard for the public's safety and welfare. Defendants misled both the medical community and the public at large, including Plaintiff, by making false representations about and concealing pertinent information regarding Xarelto. Defendants downplayed, understated and disregarded their knowledge of the serious and permanent risks associated with the use of Xarelto, despite information demonstrating the product was unreasonably dangerous.

322.   The conduct of the Defendants in designing, testing, manufacturing, promoting, advertising, selling, marketing, and distributing Xarelto, and in failing to warn Plaintiff and other members of the public of the dangers inherent in the use of the Compounded Medication, which were known to the Defendants, was attended by

circumstances of malice, avarice, or willful and wanton conduct, **done** heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, including Plaintiff.

323.   At all times material hereto, Defendants had a duty to exercise reasonable care in the design, manufacture, testing, research and development, processing, advertising, marketing, labeling, packaging, distribution, promotion and sale of Xarelto.

324.   Defendants breached their duty and were wanton and reckless in their actions, misrepresentations, and omissions toward the public generally, and Plaintiff specifically, in the following ways: Defendants continued to promote the safety of Xarelto, while providing to consumers and there health care providers no warnings or insufficient warnings about the risk of irreversible bleeding associated with it, even after Defendants knew of that risk.

325.   Defendants' conduct was committed with knowing, conscious and deliberate disregard for the rights and safety of consumers, including the Plaintiff, or with such wanton and/or reckless disregard as to meet the threshold of C.G.S §52-240b, thereby entitling the Plaintiffs to punitive damages in an amount appropriate to punish the Defendants and deter them from similar conduct in the future.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff demands judgment for damages against Defendant for all

Damages allowable by law against Defendants together with interest, costs and attorney's fees, including but not limited to those damages provided pursuant to applicable law, set forth below, and requests a trial by jury of all issues so triable, to wit:

a) Monetary damages from the Defendants sufficient to compensate Plaintiff for her damages, including but not limited to, past, present, and future economic expenditures and medical expenses, pain and suffering, in connection with the injuries sustained by Plaintiff as a result of his ingesting Defendants' Xarelto;

b) Any and all loss of earnings of the Plaintiff;

c) Punitive damages in an amount to be awarded as provided by law; and

d) For all other just and proper relief.

## DEMAND FOR JURY TRIAL

The Plaintiff hereby demands a trial by jury on all Counts and as to all issues.

Respectfully submitted this _____ day of September, 2015

By: _____
Kelly A. Fitzpatrick
VENTURA RIBEIRO & SMITH
235 Main Street
Danbury, CT 06810
Ph: (203) 791-9040
Fax: (203) 791-9264
kfitzpatrick@vrslaw.com