**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION** | **MDL No. 2592** |
| | **SECTION L** |
| **THIS DOCUMENT RELATES TO ALL ACTIONS** | **JUDGE ELDON E FALLON** |
| | **MAG. JUDGE NORTH** |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR PROPOSED CMO 3**

Defendants submit this memorandum in support of their proposed CMO 3 attached as Exhibit 1.

**INTRODUCTION**

The Court has already decided the principal issue in dispute on CMO 3. At the September 17, 2015 chambers conference with lead and liaison counsel – after the parties submitted competing orders and letter briefs – the Court specified that the 40 discovery pool plaintiffs should be geographically divided as follows:

- 20 from the Eastern District of Louisiana (10 selected by the parties and 10 selected randomly)
- 6 from Mississippi
- 2 from Texas
- 12 from other states.

Defendants' proposed CMO 3 implements the Court's rulings. Plaintiffs seek reconsideration. Defendants respectfully suggest that the Court's initial ruling was correct, and it should adhere to its prior decision.

## PROCEDURAL HISTORY

On September 15, 2015, in a joint email from Messrs. Barr and Glickstein (attached as Exhibit 2), the parties submitted their competing versions of CMO 3. The joint email explained that while the parties agreed on most case management issues in CMO 2 (attached as Exhibit 3), they were unable to agree upon "the method of selection and geographic composition of discovery pool plaintiffs and bellwether trial plaintiffs." *See* Ex. 2. Consequently, the joint email attached the "Plaintiffs' and Defendants' differing proposals for CMO 3." *Id*.

The parties further "agreed that they will not re-brief the issues as to which they disagree, but will instead refer Judge Fallon to the portions of their July 6, 2015 and July 21, 2015 letter briefs which address the disputed issues." *See* Ex. 2. The joint email attached the prior briefs and directed the Court to sections of those briefs addressing disputed issues. *Id*.

The main difference between the competing CMO 3s concerned geographic distribution of discovery pool plaintiffs. To put the dispute in context, the parties ***stipulated*** in CMO 2 that:

- The first two trials would be in the Eastern District of Louisiana.
- The third and fourth trials would be in Mississippi and Texas respectively.[1]
- There would be 40 discovery pool plaintiffs.
- Of the 40 discovery pool plaintiffs, 20 would be selected randomly and 20 would be selected by the parties (ten per side).

*See* Ex. 2 ¶¶ 2, 5(b), 5(c).

The competing CMO 3s submitted on September 15 differed on how many party selections and random selections should come from the stipulated trial venues. Plaintiffs'

---

[1] The parties reserved the right, under specifically enumerated circumstances, to request a change of venue for the third and fourth trials, but Mississippi and Texas were the stipulated venues until and unless the Court determined a change was warranted. (Ex. 2 ¶ 2.)

proposed order did not specify that there be a particular number of plaintiffs from the trial venues – or that any random selections be from the trial venues – relying solely on party selections to assure at least some plaintiffs would be from the trial venues. Defendants expressed concern that there be a sufficient number of plaintiffs from each trial venue to assure the Court had adequate choices when bellwether trial plaintiffs were chosen. Defendants proposed that 20 discovery pool plaintiffs be from Louisiana because half the trials would be from Louisiana, and that the remaining 20 discovery pool plaintiffs be divided as follows: 8 from Mississippi, 4 from Texas, and 8 from two other states. Defendants further proposed an equal split of party selections and random selections within each state.

The Court addressed the dispute at the September 17 chambers conference with lead and liaison counsel. It did not accept either side's proposal in its entirety. The Court agreed that the majority of the discovery pool should come from the stipulated trial venues to assure an adequate choice of bellwether trial plaintiffs from those venues. The Court also thought that there should be somewhat greater national representation in the discovery pool than Defendants had proposed. Consequently, the Court ruled that 20 of the discovery pool plaintiffs should be from the Eastern District of Louisiana (10 selected randomly and 10 by the parties); 6 of the discovery pool plaintiffs should be from Mississippi; 2 of the discovery pool plaintiffs should be from Texas; and the remaining 12 discovery pool plaintiffs should be from 12 other states.

The Court asked the parties to submit an order implementing its rulings . Defendants have done so. Plaintiffs seek reconsideration.

**<u>THE PARTIES' COMPETING PROPOSALS</u>**

**A. Defendants' Proposed CMO 3**

Defendants' CMO 3 tracks the Court's ruling at the September 17, 2015 status conference. It provides that the 40 discovery pool selections be divided as follows:

- 20 from the Eastern District of Louisiana (5 plaintiff, 5 defendant and 10 random selections)
- 6 from Mississippi (2 plaintiff, 2 defendant and 2 random selections)
- 2 from Texas (1 plaintiff and 1 defendant selections)
- 12 from other states (2 plaintiff, 2 defendant and 8 random selections)

*See* Ex. 1 ¶ 1(a), 1(c) and 1(d). The 12 plaintiffs from the non-trial venues could either come from 12 different states (reflected in black type in Defendants' proposed order) or from 4 different states (reflected in blue type in Defendants' proposed order). *Id.*[2] The Court's proposal of 12 different states is acceptable to Defendants. The alternative proposal of having the 12 non-trial venue plaintiffs from 4 states with 3 plaintiffs each – with 1 party selection and 2 random selections per state – is designed to address a concern expressed by Plaintiffs' that under the Court's ruling, some states would have only one randomly selected plaintiff and no party selections. The alternative proposal is equally acceptable to Defendants.

Defendants' proposed CMO 3 contains the following protections against aberrational cases being selected either by the parties or randomly:

- All selections – both party picks and random picks – must satisfy eligibility criteria and representative categories that are to be approved by the Court at the December 21, 2015 status conference. Hopefully these categories will be presented to the Court on joint motion but if not the Court can decide any disputes concerning the appropriate criteria and categories. This is a significant protection against atypical cases because plaintiffs not meeting the eligibility criteria or whose cases are not within the representative categories (as determined by MDL Centrality) will not be in the discovery pool. *See* Ex. 1 ¶¶ 1 (b), (e)-(f) .
- As a further protection, each side would have the right to challenge any party selection or random selection for cause if it could establish that there was something unusual about the particular plaintiffs' case that made that case an inappropriate choice for the discovery pool. The Court would be the arbiter in case a dispute. *See id.* ¶ 1(f).

---

2 In either case, each party would select half the states. *Id.*

- As an additional protection, each side would be permitted to strike 1 random selection without cause. If a strike was exercised, it would be replaced by another random selection from the same district. The replacement would be subject to a for cause challenge, but not to a further peremptory strike. *See id*.

These three layers of protection – (1) eligibility criteria/representative categories, (2) one peremptory strike per side, (3) unlimited challenges for cause – should be more than adequate to assure that aberrational plaintiffs are not included in the discovery pool.

Defendants' CMO 3 also confirms that the parties' stipulation in PTO 9 – concerning proper venue of non-Louisiana plaintiffs who directly file in the Eastern District of Louisiana – is implemented in the selection process. (Ex. 1 ¶ 1(d)). PTO 9 (attached as Exhibit 4) provides that:

> "[u]pon completion of all pretrial proceedings applicable to a case directly before this Court, pursuant to this Order, this Court, pursuant to 28 U.S.C. §1404(a), will transfer that case to the federal district court in the district where the plaintiff allegedly was injured or where plaintiff resided at the time of his or her alleged injury, after giving the parties an opportunity to meet and confer and be heard on the issue."

*See* Ex. 4 ¶ II(D). Incorporating PTO 9 into CMO 3 should be non-controversial; the practical effect is that Mississippi and Texas residents who direct filed in Louisiana would be considered Mississippi and Texas plaintiffs in the selection process, because e that is where the parties stipulated their case would be tried.

Finally, Defendants' CMO 3 contains a proposal to prevent manipulation of the discovery pool through dismissals. Under Defendants' proposal, any discovery pool case that is dismissed other than on the merits must be replaced. *See* Ex. 1 ¶1(g). Moreover, to deter strategic dismissals, the method of selecting the replacement would be in the discretion of the Court depending on the circumstances; if the Court believed a dismissal could unfairly skew the pool, it would have the authority to order that the replacement be selected by the party not initiating the dismissal. *Id*. We note that this proposal would apply to all dismissals other than dispositions on

the merits, regardless of which party initiates the dismissal. The authority of the Court to select the method of replacing a dismissed case should serve as a deterrent against strategic dismissals initiated by either party, and if such a dismissal did occur would prevent unfair prejudice to the party not initiating the dismissal.

**B. Plaintiffs' Proposed CMO 3**

Plaintiffs' CMO 3 provides no assurance that there will be a sufficient number of plaintiffs in the stipulated trial venues. Under their proposal, each party must select at least 2 plaintiffs from the Eastern District of Louisiana, but other than that all the party selections and all the random selections can come from outside the stipulated trial venues. *See* Pltf. Proposed CMO 3 ¶1¶ (c)-(d). The Court previously ruled that there should be 20 plaintiffs from the E.D. La, and that there be 6 plaintiffs from Mississippi and 2 plaintiffs from Texas. The Court's prior ruling – designed to assure the Court has sufficient choices from which to choose the four bellwether trial plaintiffs – is ignored in Plaintiffs' proposal.

Plaintiffs' CMO 3 also contains two provisions that eviscerate the Court's prior ruling (and the parties' stipulation in CMO 2) that 20 of the discovery pool plaintiffs be randomly selected. First, Plaintiffs attempt to convert random selections into party selections. They do so by asking the Court to approve the following process: 30 plaintiffs would be selected randomly instead of 20, and then Plaintiffs and Defendants would pick 10 plaintiffs each from that group. In other words, Plaintiffs want to strike 33% of the random pool without cause. *See* Pltf. Proposed CMO 3 ¶1 (d). This proposal violates the procedure agreed to in CMO 2, which specified that there would be 20 random picks – period. Under Plaintiffs' CMO 3, the 20 random picks are no longer random; they are now 10 additional party picks per side.

Second, Plaintiffs want there to be no requirement that a specified number of random selections come from the stipulated trial venues of Louisiana, Mississippi and Texas. Instead

they want all 20 random selections to be spread across all 50 states without regard to where the trials will be – thus assuring that few, if any, random selections will be from the states where cases will be tried. This procedure is inconsistent with the Court's direction at the September 17 chambers conference which specified that 10 random picks should be from Louisiana because half the bellwether trials will be in that venue. Plaintiffs' proposal also violates the spirit if not also the letter of CMO 2, for it would render every (or virtually every) randomly selected plaintiff ineligible for the final trial pool.

## ISSUES TO BE DECIDED

### A. Geographic Distribution of Discovery Pool

#### 1. Stipulated Trial Venues

Defendants ask that the Court adhere to its initial ruling that 20 discovery pool plaintiffs be from the Eastern District of Louisiana, 6 from Mississippi, 2 from Texas and 12 from other states. The Court's initial ruling strikes the correct balance between assuring that the Court has sufficient choices from which to select the bellwether plaintiffs in the three states where trials will take place, while also assuring adequate national representation.

The more choices the Court has from the trial venues the more likely it will be that the Court will be able to choose trial plaintiffs with truly representative fact patterns. If the Court is limited to a small number of plaintiffs handpicked by the parties, it is more likely that the Court will be presented with cases reflecting the two extremes: atypically strong cases favoring the plaintiffs chosen by plaintiffs' counsel and atypically weak cases favoring defendants selected by Defendants' counsel. An adequate number of choices from the trial venues means an adequate number of choices from which the Court may make its final selections.

It is appropriate that 20 discovery pool plaintiffs be from the Eastern District of Louisiana because half the bellwether trials will be from this district and because, being the first two trials,

they are the most important. Six plaintiffs from Mississippi are fewer than Defendants had previously proposed, but Defendants (unlike Plaintiffs) are willing to accept the Court's prior ruling as a reasonable compromise. Likewise, 2 plaintiffs from Texas are fewer than Defendants had previously proposed, but again Defendants are willing to accept the Court's prior ruling as a reasonable compromise. There is no reason for the Court to revisit its earlier ruling – which was a fair resolution of the competing concerns expressed by both parties.

**2. Non-Trial Venues**

The Court previously ruled that 12 discovery pool plaintiffs should be from non-trial venues. This again was a compromise ruling by the Court which weighed the competing concerns of both sides. Defendants had suggested that there should be 8 plaintiffs from non-trial venues and the Court increased the number to 12 in response to Plaintiffs' arguments.

The Court expressed several reasons for increasing the number of non-trial venue plaintiffs from 8 to 12. First, the Court wanted cases to be worked up under other state's laws. Second, the Court wanted lawyers from other states to feel like they had a stake in the discovery pool. Third, the Court wanted to have options for the third and fourth trials in the unlikely event the Court determined it would be practical to obtain a trial assignment outside the Fifth Circuit or the Defendants changed their mind about waiving venue under *Lexecon*.

The Court's prior ruling achieves all these objectives without unduly depleting the pool of available plaintiffs from the three stipulated trial venues. Under the Court's decision, a full 30% of the discovery pool (12 of 40) is now from outside the Fifth Circuit. With that many plaintiffs from other states, there should be more than sufficient representation of different state laws and there should be room for lawyers from outside the Fifth Circuit to participate. We note, as well, that there is no reason why lawyers from outside the Fifth Circuit could not be assigned

to work up cases and/or participate in trials in Louisiana, Mississippi and Texas, especially when your Honor will be the trial judge in all those venues.

Finally, the 12 plaintiffs from other states are more than sufficient to provide an adequate choice if the Court can obtain an assignment outside the Fifth Circuit or Defendants waive *Lexecon*. We note, initially, that this is only a consideration for the third and fourth trials; under CMO 2, the parties reserve the right to seek a change of venue only for the third and fourth trials in Mississippi and Texas and not for the first two trials in the Eastern District of Louisiana. The 12 discovery pool plaintiffs from other states exceed the 8 plaintiffs that the Court has specified for Mississippi and Texas. So in the unlikely event that the third and fourth trials will be from other states, the Court has left itself with at least as much choice as it currently has for Mississippi and Texas.

We make one final comment. Defendants are comfortable with choosing the 12 non-trial venue plaintiffs from 12 different states, as the Court suggested on September 17. Plaintiffs have expressed a concern that the Court's proposal would leave some states with only one randomly selected plaintiff who might not be representative for that state. We are not sure whether this is a genuine concern because Plaintiffs' proposed CMO 3 does not specify a minimum number of plaintiffs per state and therefore still has the same potential for some states to have a single randomly selected plaintiff. However, if Plaintiffs are uncomfortable with a state having a single randomly selected plaintiff, Defendants are amenable to having the 12 non-trial venue plaintiffs drawn from 4 states instead of 12 states. In Defendants' proposed order, the 12 plaintiffs from 12 states proposal is written in black type, and the 12 plaintiffs from 4 states is written in blue type. Either proposal would be acceptable to Defendants.

**3. Allocation of Random Selections**

The Court previously ruled that of the 20 Louisiana plaintiffs selected for the discovery pool, 10 should be selected by the parties (five each) and 10 should be selected randomly. Defendants' proposal implements this suggestion. Plaintiffs' proposal does not.

Defendants' proposal also asks that of the 6 Mississippi plaintiffs designated by the Court to be in the discovery pool, 4 should be selected by the parties (two each) and 2 should be selected randomly. Plaintiffs' proposal does not allocate any discovery pool plaintiffs to Mississippi and therefore is silent as to how those cases would be selected. Presumably, under their proposal, there would be only party selections and no random selections in Mississippi.

Because the Court allocated only 2 selections to Texas, Defendants propose that each side make 1 selection from that state. Although Defendants would prefer a random selection from Texas, the Court's prior ruling does not allow it and Defendants acquiesce in the Court's decision.

Under Defendants' proposal, the 12 plaintiffs from other states would be allocated so as to implement the parties' stipulation in CMO 2 that the total discovery pool would consist of 20 party selections (ten each) and 20 random selections. That would mean that 4 of the plaintiffs from other states would be selected by the parties (two each) and 8 plaintiffs from other states would be selected randomly.

Plaintiffs' proposal attempts to assign the random selections to oblivion in two ways. First they attempt to convert the random selections to party selections by having 30 plaintiffs randomly selected instead of 20, and then letting each side pick 10. This procedure to allow the parties to strike 30% of the random pool without cause violates the parties' stipulation in CMO 2 which provided that there will be 20 random selections, period. Moreover, it defeats the three purposes of having random selections which are: (1) to have a set of plaintiffs that are more

reflective of the average case instead of the strongest cases selected by Plaintiffs' counsel and the weakest cases selected by Defendants' counsel, (2) to give the parties a better idea of whether there are more strong or weak cases in the inventory as a whole, since party selection always results in a 50-50 split of strong and weak cases regardless of the overall distribution of strong and weak cases in the inventory, and (3) to provide a set of discovery cases not subject to party manipulation. Allowing each party to select the random cases they like and to discard the random cases they don't like means that: (1) once again the average case will be left out as the parties select the cases that are best for them, (2) the distribution will gravitate unfairly to a 50-50 split of strong or weak cases without regard to the quality of the inventory as a whole, and (3) once again the parties can manipulate all the picks.

Second, Plaintiffs try to marginalize random selection by making it highly unlikely that any random selections will be from the three stipulated trial venues. Plaintiffs' proposal provides that no random selections will be assigned to Louisiana, Mississippi or Texas – meaning that hardly any, if any, randomly selected cases will be eligible for consideration as bellwether trial plaintiffs. This proposal is inconsistent with the Court's prior ruling – which specified that 10 of the 20 Louisiana plaintiffs in the discovery pool should be randomly selected. Moreover, the proposal emasculates the parties' stipulation in CMO 2 that half the discovery pool plaintiffs should be randomly selected by assuring that almost none of the random selections will be eligible to be trial plaintiffs. In essence, Plaintiffs' proposal seeks to make random selections less important and less impactful than party selections. That is a violation of CMO 2, which did not distinguish between how party selections and random selections would be treated.

Plaintiffs are likely to argue that their proposals with respect to random selections are needed to assure that atypical, oddball plaintiffs are not part of the discovery pool. Defendants' proposal, however, protects against this possibility in three ways. First, under both Plaintiffs' and Defendants' proposals, the random selections have to meet the same eligibility criteria and must come from the same representative categories as party selections. One of the major benefits of MDL Centrality is that the parties will be able to assure that only plaintiffs meeting the Court-approved eligibility criteria and having fact patterns that fit within the Court-approved representative categories will be eligible for random selection. This, in and of itself, should be sufficient protection against crazy cases being selected. However, as an additional protection, Defendants would permit each side to strike one randomly selected case without cause. Finally, as a third level of protection, Defendants propose that each side can challenge any selection (whether a party selection or random selection) for cause. At a certain point, if a party wants to argue that a case is so atypical that is should not even be worked up – even though the case fits all the Court-approved eligibility criteria and representative categories – the party should have to prove to the Court that this is so.

We also note that – as yet another protection against atypical selection – the Court will have the final say over which of the discovery pool plaintiffs are selected as the bellwether trial plaintiffs. There is no reason why CMO 3 needs to marginalize random selections in order to accomplish the ultimate goal of picking the most representative bellwether trial plaintiffs. Treating random selections and party selections equally – in the way proposed by Defendants – will give the Court more choices when it comes time to finally picking the bellwether trial plaintiffs. Treating random selections as second class citizens – by allowing (as Plaintiffs propose) 30% of the selections to be stricken without cause and by assuring that none will be

eligible for trial selection because they are not from the trial venues – will give the Court fewer choices.

**4. Proper Venue Under PTO 9**

Defendants' CMO 3 contains a provision implementing the stipulated venue provisions of PTO 9. Paragraph II(D) of PTO 9 provides that the cases of non-Louisiana residents who directly filed their actions in the Eastern District of Louisiana will have their cases transferred to their home districts for trial under 28 U.S.C. §1404. In other words, a Mississippi or Texas plaintiff who filed in the Eastern District of Louisiana has stipulated that his/her case will be tried in Mississippi or Texas. Because many Mississippi and Texas residents have direct filed in this district, it would be helpful to clarify that, although their cases are not now pending in those states, for discovery pool purposes they should be treated as Mississippi and Texas residents, as that is where they have stipulated their cases will be tried. We doubt this provision will be controversial since PTO 9 has already been agreed to by the parties and entered by the Court.

**B. Dismissals**

All experienced mass tort litigators and judges are familiar with the practice of parties attempting to maximize the chance that only their most favorable cases will be tried by dismissing unfavorable cases. Defendants' proposed CMO 3 attempts to deter this practice by requiring any dismissed case to be replaced and giving the Court discretion, depending on the circumstances, to allow the party not initiating the dismissal to select the replacement case. If the deterrent did not work, the same order would minimize the unfair prejudice resulting from the dismissal if the Court determined that such was necessary. We note that the order pertains to both parties equally. We note as well that Defendants' proposed dismissal provision is flexible: it provides the Court with discretion not to impose a penalty for dismissal if, in the Court's discretion, the circumstances do not warrant it. Nonetheless, a provision requiring dismissed

cases to be replaced and authorizing the Court (in its discretion) to permit the party not initiating the dismissal to select the replacement should go a long way toward protecting the integrity of the selection process.

## CONCLUSION

For the reasons set forth above, the Court should enter CMO 3 in the form attached as Exhibit 1.

KAYE SCHOLER LLP

By: /s/ *Steven Glickstein*
Steven Glickstein
William Hoffman
KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8485
Facsimile: (212) 836-6485
sglickstein@kayescholer.com

*Co-Lead Defense Counsel*

DRINKER BIDDLE & REATH LLP

By: /s/ *Susan M. Sharko*
Susan M. Sharko
DRINKER BIDDLE & REATH LLP
*A Delaware Limited Liability Partnership*
600 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
Facsimile: (973) 360-9831
susan.sharko@dbr.com

*Co-Lead Defense Counsel*

IRWIN FRITCHIE URQUHART & MOORE LLC

By: /s/ *James B. Irwin*
James B. Irwin
Kim E. Moore
IRWIN FRITCHIE URQUHART
& MOORE LLC
400 Poydras Street
Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
Facsimile: (504) 310-2120
jirwin@irwinllc.com

*Defendants' Co-Liaison Counsel*

CHAFFE MCCALL L.L.P.

By: /s/ *John F. Olinde*
John F. Olinde
CHAFFE McCALL L.L.P.
1100 Poydras Street
Suite 2300
New Orleans, LA 70163
Telephone: (504) 585-7241
Facsimile: (504) 544-6084
olinde@chaffe.com

*Defendants' Co-Liaison Counsel*