# EXHIBIT "J"

MINUTE ENTRY
FALLON, J.
JULY 9, 2009

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRY WALL PRODUCTS LIABILITY LITIGATION | : : : : : : : | MDL NO. 2047<br><br>SECTION:  L<br><br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |

**THIS DOCUMENT RELATES TO ALL CASES**

The monthly status conference was held on this date in the Courtroom of Judge Eldon E. Fallon. The Court first met with Plaintiffs' Liaison Counsel ("PLC"), Russ Herman, and the Defendants' Liaison Counsel ("DLC"), Kerry Miller, to discuss agenda items for the conference. At the conference, counsel reported to the Court on the topics set forth on the Proposed Agenda. This monthly status conference was transcribed by Ms. Karen Anderson Ibos, Official Court Reporter. Counsel may contact Ms. Ibos at (504)589-7776 to request a copy of the transcript. A summary of the monthly status conference follows.

I.      INTRODUCTORY REMARKS BY JUDGE FALLON

On June 15, 2009, the Judicial Panel on Multidistrict Litigation issued an order transferring the Chinese Manufactured Drywall Products Liability Litigation to this Court for coordinated or consolidated pretrial proceedings. Upon receipt of that order, the Court issued Pretrial Order No. 1 on June 16, 2009. The Court also established a website, which can be accessed at http://www.laed.uscourts.gov/Drywall/Drywall.htm. Pretrial Order No. 1 and all subsequent pretrial orders are available on this website. Attorneys are encouraged to check this

website regularly for updates.

II.     STATUS OF APPLICATION FOR STEERING AND OTHER COMMITEES

The Court advised counsel that applications for the Plaintiffs' Steering Committee ("PSC") continue to be submitted.  The deadline for submission of these applications is July 10, 2009.  Thereafter, all counsel will have until July 17, 2009 to file written objections to these applications.  The Court expressed a concern that certain attorneys in other MDL cases who have been appointed to serve on a PSC may have delegated the majority of their PSC responsibilities to other attorneys.  Accordingly, the Court advised counsel of its intent to appoint members of the PSC for a limited term.  At the expiration of their term, PSC members will be required to reapply for the position, at which time the Court will consider their body of work throughout their term of service.  The Court further advised counsel that there will be no limit upon the number of terms that an individual may serve on the PSC.

DLC indicated to the Court that they had agreed on their nominations for a Defendants' Steering Committee ("DSC") and expressed their intention to submit an unopposed motion for appointment of the nominated individuals to the DSC.

III.    SERVICE OF PLEADINGS ELECTRONICALLY THROUGH A SERVICE LIKE
        LEXISNEXIS

PLC and DLC advised that they have met with LexisNexis to discuss cost, security, work product, and privacy issues, master service list, and other items relating to electronic service.  It appears that the parties plan to use LexisNexis for the service of pleadings electronically in order to facilitate service to all counsel.  Counsel are reminded that official pleadings must be served upon BOTH LexisNexis and this Court.

IV.     SEPARATION OF PROPERTY DAMAGE FROM PERSONAL INJURY CLAIMS
        AND DEFERRAL OF CLASS CERTIFICATION ISSUES

The Court advised counsel that in its early assessment of the case, claims can be categorized into two groups: 1) claims exclusively for property damage; and 2) claims for personal injury and property damage. It is the Court's intent to move quickly with regards to the claims exclusively for property damage, and to schedule a small number of cases for Bellwether trials in approximately four to six months. The Court is aware that claims involving both personal injury and property damage will involve different issues and will likely take longer to resolve. Trials in those cases are anticipated to begin in one year.

V.   INITIAL DISCOVERY ON PROPERTY DAMAGE CLAIMS/DISCOVERY LIMITATION ISSUES

The Court advised counsel that it is important to move quickly on the property damage claims and to come up with a process and protocol for inspecting properties. The Court further advised that it intends to have these inspections completed within one month. PLC and DLC are working together to develop fact sheets for this purpose and to select teams of experts to inspect the properties of claimants. The parties are optimistic that these issues will be resolved within one week so that inspections can commence.

VI.   PRESERVATION OF EVIDENCE/SPOILATION ISSUE/REMEDIATION IN HARDSHIP CASES

The Court advised of the possibility of determining damages prior to determining liability in order to minimize spoilation of evidence and to aid those claimants who are in need of remediation in hardship cases.

VII.   DIRECT FILING IN MDL

Although the normal practice is for cases to be filed in state courts and then transferred to MDL, the Court advised of the advantages to both plaintiffs and defendants of filing directly in the MDL. However, the Court is aware that doing this will require the cooperation of all parties

involved. The Court further advised that for this to happen, the defendants would need to be willing to waive any objections to venue while maintaining all other defenses.

VIII.    ADDITION OF NEW PARTIES

Both PLC and DLC advised of the possibility of the addition of new parties to this litigation. Potential additions include insurers, as well as unknown manufacturers and suppliers. Steps are already being taken to identify these individuals, but as the inspections begin, the parties will be better equipped to add parties.

The Court advised that it will be to the advantage of those potential defendants who remain unknown to come forward, participate in the discovery process, and attempt to get out of the litigation if it becomes clear that they are not involved. Otherwise, these defendants run the risk of missing out on their opportunity to participate in the MDL discovery process.

IX.    MASTER COMPLAINT

The parties will look into the possibility of drafting a master complaint as more information emerges regarding claims, theories of liability and defenses.

X.    RESPONSE TO MASTER COMPLAINT

The parties are awaiting more information regarding this issue.

XI.    RESPONSE TO UNDERLYING COMPLAINTS

The parties are awaiting more information regarding this issue.

XII.    SERVICE ISSUES ON FOREIGN DEFENDANTS

The Court advised counsel of the difficulties of service upon foreign defendants through the Hague Convention and the substantial costs associated with that process. The Court further advised that it might be to the advantage of defendants to waive this requirement because otherwise plaintiffs will file suit against local builders and suppliers who can then wait years

before joining foreign defendants.

XIII. <u>PERSONAL JURISDICTION OVER FOREIGN DEFENDANTS AND OTHER PRETRIAL MOTIONS FOR WHICH PARTICULAR DISCOVERY MIGHT BE NEEDED</u>

The Court is aware of the possibility of discrete legal issues that are likely to arise in this litigation and will deal with them at the appropriate time, with the involvement of state court judges where appropriate.

XIV. <u>EARLY BELLWETHER TRIALS</u>

The Court advised counsel of its intent to begin to conduct Bellwether trials as soon as six months from now. The Court plans to allow each side to select ten cases initially to perform discovery on. After discovery, each side will be permitted to select five cases for trial. Each side will have two (2) vetoes so that six(6) cases remain. Five will be tried with one standby.

XV. <u>STATE/FEDERAL COORDINATION ORDER</u>

This Court has already been, and will continue to be, in communication with state court judges to facilitate this litigation and enable it to progress as smoothly as possible. As previously mentioned, where difficult issues of state law arise, it is this Court's intent to involve judges from the appropriate state. Hopefully, Daubert/Frey hearings can be conducted with all judges participating.

XVI. <u>PLAINTIFF TIME-BILLING GUIDELINES</u>

The Court has appointed Phil Garrett to be the CPA in this litigation. At the conference Mr. Garrett spoke about the importance of submitting thorough, accurate, and timely reports of expenses incurred for the common benefit. Mr. Garrett also gave a brief demonstration of the software that will be used to make these submissions. The Court indicated its intent to coordinate common benefit cost submissions with state courts in order to prevent disputes from

arising at the tail end of this litigation.

XVII.  OTHER MATTERS

Hillary Bass spoke on behalf of a certain subgroup of homebuilder defendants and expressed concerns that the interests of her defendant and other homebuilders may not be aligned with the interests of other defendants in this case.  She further advised the Court of the existence of a Florida statute providing builders an absolute right to cure any defect of which they have noticed, and of certain procedural issues that may arise in connection with this statute.

The Court advised Counsel that if the homebuilders felt it was necessary, the Court would consider appointing a subgroup within the DSC, or perhaps even a separate DSC to represent the interests of the homebuilders.  Further, the Court advised that it was aware of issues regarding unique state law and that it would deal with these issues at the appropriate time.

Jan Atlas spoke on behalf of certain supplier defendants and expressed similar concerns regarding divergent interests and state law.

XVIII. NEXT STATUS CONFERENCE

The next monthly status conference will be held on Tuesday, August 11, 2009, at 9:00 a.m., central time.  Any interested persons unable to attend in person may listen-in via telephone at 1-866-213-7163.  The access code will be 19729103 and the Chairperson will be Judge Fallon.