UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO ALL ACTIONS | JUDGE ELDON E. FALLON |
| | MAG. JUDGE NORTH |

### DEFENDANTS' REPLY BRIEF REGARDING CMO 3

CMO 2 specifies that the Court will select 4 bellwether trial plaintiffs in August 2016. Ex. 3 ¶ 6.[1]  Those 4 trial plaintiffs will be selected from the 40 discovery pool plaintiffs chosen in January 2016.  *Id*. ¶ 5(c).  All 40 discovery pool plaintiffs must satisfy eligibility criteria and fall within representative categories that are either agreed upon by the parties or absent agreement determined by the Court in December 2015.  *Id*. ¶ 5(b).  The first two trials will be in the Eastern District of Louisiana.  *Id*. ¶ 2.  The third and fourth trials will be in districts to be determined in Mississippi and Texas, absent compelling circumstances warranting a change.  *Id*.

The purpose of selecting 40 discovery pool plaintiffs is to provide the Court with sufficient choices so that, when the time comes in August 2016 to narrow the 40 discovery pool plaintiffs to 4 bellwether trial plaintiffs, the Court will be able to select trial plaintiffs with representative fact patterns.  This means providing the Court with more choices <u>*in the venues where cases will be tried*</u>.  An abundance of choices in venues where cases will not be tried – and a shortage of choices in venues where cases will be tried – will not be of great benefit to the Court.

---

[1]  Exhibits 1-4 were attached to Defendants' initial memorandum.

The Court's rulings at the September 17, 2015 chambers conference with lead and liaison counsel struck the correct balance between maximizing the Court's choices in the venues where cases will be tried and providing the parties with information about plaintiffs from other states. The September 17 decision required that 20 discovery pool plaintiffs be from the Eastern District of Louisiana (half party selected and half randomly selected), 6 plaintiffs from Mississippi, 2 plaintiffs from Texas, and 12 plaintiffs from other states. Defendants' CMO 3 implements the Court's decision. Plaintiffs' CMO 3 departs drastically from that ruling.

Plaintiffs' request to reconsider the September 17 decision should be denied. As demonstrated more fully below, the Court's September 17 decision correctly balanced the competing concerns of maximizing choice in the trial venues and assuring national representation. By contrast, Plaintiffs' proposed CMO 3 minimizes the Court's choices in the three venues where cases will be tried.

**A.     CMO 2 AND THE ISSUES IN DISPUTE**

Plaintiffs' CMO 3 proposal, as well as their brief, is written as if the stipulated trial venues in CMO 2 did not exist and as if the stipulated provisions concerning random selection did not exist. In CMO 2, the parties agreed – and the Court ordered – that:

- The first two trials will be in the Eastern District of Louisiana
- The third trial will be in a federal district in Mississippi
- The fourth trial will be in a federal district in Texas
- The venues of the first two trials in the Eastern District of Louisiana are not subject to change

- The venues of the third and fourth trials in Mississippi and Texas can be changed only upon a showing of specifically enumerated circumstances, and until such a showing is made the trials will be in Mississippi and Texas

- 20 of the 40 discovery pool plaintiffs will be selected by the parties

- 20 of the 40 discovery pool plaintiffs will be selected randomly

Ex. 3 ¶¶ 2, 5(d). These provisions were STIPULATED to. The stipulation was accepted by the Court. The terms are not subject to renegotiation or reconsideration. CMO 3 must, as a starting point, be designed to fully implement – and not undercut – CMO 2.

**B.  PLAINTIFFS' PROPOSAL IGNORES THE STIPULATED TRIAL VENUES AND PROVIDES THE COURT WITH LESS CHOICE**

Plaintiffs do not like *Lexecon*. They want Defendants to waive their rights under that Supreme Court decision so that an Ohio case or California case or New York case can be tried in New Orleans. But the Supreme Court has said that Defendants cannot be compelled to waive their venue rights. And in this case it would be prejudicial for Defendants to do so, because they would have to forfeit the live testimony of the plaintiff's prescribing physician, who – because Xarelto is continuing to be used to save patients' lives – is likely to contradict the trial testimony of plaintiffs and plaintiffs' hired experts. A CMO 3 which, as its core principle, requires Defendants to waive their venue rights under *Lexecon*, is impractical.

Plaintiffs do not want to try a case in Mississippi or Texas. But, as part of a series of compromises that led to CMO 2, they stipulated that the third and fourth trials will be in Mississippi and Texas unless there are compelling circumstances to change. A CMO 3 which, as its core principle, is designed to make a trial in Mississippi or Texas impractical, by giving the Court no meaningful choices in those states, is not a good faith attempt to implement CMO 2.

2567562-1

1.  **Louisiana**

The Court's prior decision and Defendants' CMO 3 provide the Court with 20 choices from which to select representative plaintiffs in the first two trials in the Eastern District of Louisiana. Plaintiffs' proposal gives the Court 4 choices. Defendants' proposal guarantees the Court will be able to consider both party selections and random selections in the Eastern District of Louisiana. Plaintiffs' proposal would limit the Court to party selections. It is difficult to understand Plaintiffs' argument that their proposal (which provides the Court with fewer choices) is more likely – rather than less likely – to result in the Court being able to select representative fact patterns for the first two trials in this District.

2.  **Mississippi**

The Court's prior decision and Defendants' CMO 3 provide the Court with 6 choices from which to select representative plaintiffs in the third trial in Mississippi – 2 selected by plaintiffs, 2 selected by defendants, and 2 selected randomly. This is two fewer than Defendants initially suggested for Mississippi, but Defendants have acquiesced in the Court's decision.

Plaintiffs' proposed CMO 3 does not guarantee that a single discovery pool plaintiff will be from Mississippi, leaving it solely to the parties to designate or not designate a plaintiff from the third stipulated trial venue, and making it unlikely that the Court will be able to consider a randomly selected plaintiff from that venue.

Plaintiffs' proposal is not a good faith effort to implement CMO 2 and its Court-approved stipulation that the third trial will be in Mississippi. How can the Court possibly find a representative plaintiff from Mississippi if – as Plaintiffs propose – the Court has no choices (or almost no choices) for Mississippi? It is self-evident that Plaintiffs don't want to try a case in Mississippi, even though they stipulated to trial there absent compelling circumstances. Their proposed order dramatically curtailing the Court's choices in Mississippi is designed to create a

self-fulfilling prophecy – less choice means a greater likelihood that no plaintiffs will be deemed representative which means a greater likelihood that the Court will want to change venue. That is not a good faith implementation of the venue provisions in CMO 2.

### 3. Texas

The Court's September 17 ruling and Defendants' CMO 3 give the Court two choices from Texas. This is not ideal; Defendants initially proposed double that number to assure an adequate number of choices. Nonetheless, Defendants have acquiesced in the Court's decision in recognition of the fact that the Court is seeking to balance competing interests.

Plaintiffs' proposal does not guarantee that a single discovery pool plaintiff will be from Texas, even though they stipulated that the fourth trial will be there. Here again, Plaintiffs are attempting to create a self-fulfilling prophecy: deprive the Court of adequate choices in Texas and the Court will have no option but to take Texas off the trial calendar. That is not a good faith attempt to implement CMO 2.

### 4. Statistics for Louisiana, Mississippi and Texas

Plaintiffs state inaccurately that the stipulated trial venues do not provide the Court with a large enough universe of plaintiffs from which to select truly representative plaintiffs. If that were true (and it is not), Plaintiffs should not have stipulated that the first four trials would be in those venues. Fortunately, however, Plaintiffs' concerns are unfounded.

First, there are more than enough Eastern District of Louisiana, Texas and Mississippi plaintiffs from which to find representative fact patterns. Keep in mind that the definition of a representative fact pattern is that the fact pattern is fairly common, not rare. If the parties suggest and the Court adopts eligibility criteria and representative categories that are common – which after all is the goal – it should not be too hard to find 20 plaintiffs from the Eastern District of Louisiana out of the 107 that have filed fact sheets, or 6 plaintiffs from Mississippi out

5

of the 45 that have filed fact sheets, or 2 plaintiffs from Texas out of the 179 that have filed fact sheets. *See* P. Br. at p.3n.1 (providing the number of fact sheets per venue as of November 3). Plaintiffs are worried that Louisiana, Mississippi and Texas plaintiffs may be aberrational and not have fact patterns that are common to other states. This is highly unlikely, but if that turns out to be the case, the Court can deal with that situation if and when it arises. There is no reason for CMO 3 to anticipate such an unlikely circumstance.

Second, as to the representativeness of the jurisdictions, we note that that Texas and Louisiana rank first and second in terms of the states with the most plaintiffs in this MDL: there are 283 Texas plaintiffs (the most of any state in the country), followed by 249 Louisiana plaintiffs (the second most). Mississippi residents also play a significant role in this MDL -- 66 Mississippi residents have filed cases in the MDL. We also note that many states besides Texas have statutory or common law rebuttable presumptions of liability based on FDA approval[2], and

---

2  *See* Colo. Rev. Stat. Ann. § 13-21-403(1); Fla. Stat. Ann. § 768.1256(1); Ind. Code Ann. § 34-20-5-1; Kan. Stat. Ann. § 60-3304(a); Mich. Comp. Laws Ann. § 60.2946(5); N.J. Stat. Ann. § 2A:58C-4; N.D. Cent. Code Ann. § 28-01.3-09; Tenn. Code Ann. § 29-28-104(a). Further, while the Court has not ruled on choice of law on punitive damages, many states have statutory or common law defenses to punitive damages based on compliance with FDA safety regulations. *See* N.J. Stat. Ann. § 2A:58C-5(c); Ariz. Rev. Stat. Ann. § 12-701; N.D. Cent. Code Ann. § 32-03.2-11(6); Ohio Rev. Code Ann. § 2307.80(C)(1); Or. Rev. Stat. Ann. § 30.927; Tenn. Code Ann. § 29-28-104(b); Utah Code Ann. § 78B-8-203; *Nader v. Allegheny Airlines, Inc.*, 626 F.2d 1031, 1035 (D.C. Cir. 1980); *In re Miamisburg Train Derailment Litig.*, 725 N.E.2d 738, 752 (Ohio Ct. App. 1999); *Richards v. Michelin Tire Corp.*, 21 F.3d 1048, 1059 (11th Cir. 1994); *Sloman v. Tambrands, Inc.*, 841 F. Supp. 699, 703 & n.8 (D. Md. 1993); *Boyette v. L.W. Looney & Son, Inc.*, 932 F. Supp. 1344, 1347-49 (D. Utah 1996); *Lopez v. Three Rivers Elec. Coop.*, 26 S.W.3d 151, 160 (Mo. 2000); *Barger v. Garden Way, Inc.*, 499 S.E.2d 737, 743 (Ga. App. 1998); W. Page Keeton et al., *The Law of Torts* § 36, at 233 n.41 (5th ed. 1984).

many states besides Mississippi have statutory limits on non-economic damages[3]. Even if CMO 2 were subject to renegotiation – and it is not – it was proper for the Court to chose Texas and Mississippi as trial venues in addition to Louisiana. These venues give the Court and the parties a chance to see how juries with different demographics react to the parties' themes and witnesses, and they have the benefit of being the most likely venues where the Court will be able to obtain a temporary assignment to try the case.

Third, we should not forget that the Court has accommodated Plaintiffs' concern for national representation by designating 30 percent of the discovery pool to come from non-trial venues. The Court's September 17 ruling accepted by Defendants in their proposed CMO 3 – grants Plaintiffs their wish to have a robust pool of plaintiffs from other states. The Court's prior ruling was fair. There is no basis to reconsider.

### 5. Other States

Defendants initially proposed that 8 discovery pool plaintiffs be selected from states where cases will not be tried. The Court disagreed and increased that number to 12. Plaintiffs from outside the three trial venues now comprise 30 percent of the discovery pool. If, as the Court suggested, there will be one plaintiff from 12 different states, the parties will have the benefit of cases worked up under a wide variety of state laws.

Moreover, the parties have stipulated the first two trials *must* be in the Eastern District of Louisiana. As Plaintiffs concede, "the first two plaintiffs should be properly venued in the Eastern District." P. Br. at 17. Under CMO 2, only the third and fourth trials are subject to a possible change of venue, and then only if one of the following circumstances apply: "(a) the

---

[3] *See* Alaska Stat. § 09.17.010(b); Colo. Rev. Stat. § 13-21-102.5(3); Idaho Code Ann. § 6-1603(1); Md. Code Ann., Cts. & Jud. Proc. § 11-108; Mich. Comp. Laws § 600.2946a(1); Ohio Rev. Code Ann. § 2315.18(B)(2); Okla. Stat. tit. 12, § 61.2.

Court is not able to obtain a temporary assignment to try a case in another district pursuant to 28 U.S.C. 292, (b) the parties agree to waive *Lexecon* permitting the trial of a non-Louisiana case in the Eastern District of Louisiana, or (c) the Court determines after input from the parties that trial of a plaintiff's case in another venue is more appropriate." Ex. 3 ¶ 2.

The question, therefore, is whether the Court's September 17 ruling that there be 12 plaintiffs from outside the three stipulated trial venues is sufficient to accommodate these contingencies:

- Contingency (a) contemplates that the Court won't be able to obtain a temporary assignment in Mississippi or Texas and will therefore have to try all four bellwether cases in the Eastern District of Louisiana. If this unlikely contingency were to occur, <u>*all four*</u> bellwether trial plaintiffs would have to come from this District. In that event, the Court will want more choices from the Eastern District of Louisiana, not fewer. Plaintiffs' proposal to reduce the number of Eastern District discovery pool plaintiffs from 20 to 4 – and to replace the Eastern District plaintiffs with plaintiffs from other states – would thus be counterproductive.

- Contingencies (b) and (c) are long shots. Contingency (b) requires Defendants to waive their *Lexecon* rights. Contingency (c) requires the Court to be able to obtain a temporary assignment outside the Fifth Circuit, which may be problematic, and in addition to determine that the alternative venue is more appropriate than the stipulated venue. It does not seem wise to design a case management order that presumes such contingencies will occur. If the contingencies do not occur, the Court will have no meaningful choices from

8

Mississippi or Texas, where the trials are now scheduled (and are more likely) to take place.

The Court's September 17 ruling and Defendants' CMO 3 strike the right balance between maximizing the Court's choices in the venues where the trials will likely occur, while providing flexibility should the Court have a compelling reason and option to try a case elsewhere. We expect the Court will be satisfied with its choices from Mississippi and Texas, and will see no need to change venue in order to make a representative selection. But if the Court is dissatisfied with its choices from one or both states when the final bellwethers are to be selected in August 2016 – and if the Court can obtain an assignment outside the Fifth Circuit so that trial outside the circuit is feasible – the Court will still have 12 options from other states.

We also confess not to understand Plaintiffs' argument for why 12 discovery pool plaintiffs will fail to provide sufficient choice for either the third or the fourth trials should contingency (b) or (c) occur. Plaintiffs argue that 4 Eastern District of Louisiana plaintiffs provide the Court with sufficient choice for the first and second trials. Why, then, are 12 plaintiffs from other states insufficient for the third or fourth trial? There is no consistency to Plaintiffs' argument.

Plaintiffs have shown no reason for the Court to reconsider its September 17 decision – which was itself a compromise between the parties' competing positions. Defendants request the Court to adhere to its prior ruling.

## C. PLAINTIFFS' PROPOSAL TO DISCRIMINATE AGAINST RANDOM SELECTIONS IS UNWISE AND WILL PROVIDE THE COURT WITH LESS CHOICE

Plaintiffs say that "[w]hile Plaintiffs continue to believe that random selection is not an appropriate methodology to obtain representative plaintiffs, Plaintiffs are not-rearguing the issue at present." P. Br. at 12. This is sophistry. Plaintiffs ARE rearguing random selection, as their

9

proposal seeks (a) to convert random selection to party selection, and (b) to marginalize the impact of random selection by assuring that few if any randomly selected plaintiffs come from the three stipulated trial venues.

Plaintiffs proposal to have the parties each select 10 cases from a group of 30 randomly selected cases is NOT random selection, it is party selection.  The whole purpose of random selection is to provide the Court with choices that are not controlled by the parties.  The whole purpose of Plaintiffs' proposed CMO 3 is to take the randomness out of the selection and to restore control to the parties.  Whatever merit or lack of merit might be in this proposal, Plaintiffs waived it when they stipulated that there would be 20 randomly selected cases, period.  Their proposal to convert random selection to party selection should be rejected for this reason alone.  It is difficult to see how Defendants can have confidence in any agreements they reach with Plaintiffs if the Court allows the plain language of the agreement to be so easily twisted.

Plaintiffs' proposal to prioritize party selections over random selections– by dispersing all the random selections across the 50 states, while enabling Plaintiffs and Defendants to concentrate their party selections in the three stipulated trial venues – also should be rejected.  A key purpose of random selection is to give the Court more options in selecting bellwether trial plaintiffs.  Party selections tend to gravitate toward the extremes, with Plaintiffs selecting what they perceive to be good plaintiff cases and Defendants picking what they perceive to be good defense cases.  Random selection contains no such bias and therefore has the potential to provide the Court with cases that are more in the middle and may be more typical.  At the very least, the Court should look at random cases in the trial venues, so that it can make an informed decision about whether any are better suited as bellwether trial plaintiffs than the parties' self-serving picks.

Plaintiffs attack a strawman when they argue that geographic location should not be the sole criteria for random selections. P. Br. at 6. Nobody is arguing that. Both parties agree that random selections must meet the same eligibility criteria and representative categories as party selections. P. CMO 3 ¶ 1(b); D. CMO 3 (Ex. 1) ¶¶ 1(b), 1(f). Both parties also agree that MDL Centrality is well suited to assure that random selections, like party selections, come from the same substantive universe of cases as defined by eligibility criteria and representative categories. *Id*. Therefore, the random selections are guaranteed to have the same general fact patterns as party selections. Defendants' point concerning geographic location is that party selections and random selections should be treated the same. Since it makes sense to distribute party selections geographically to assure the Court has adequate choices in each stipulated trial venue, it also makes sense to distribute random selections geographically in the same way to provide more trial options for the Court.

The Court undoubtedly recognized this when, in its September 17 ruling, it specified that the 20 Eastern District of Louisiana discovery pool plaintiffs be divided equally between party and random selections. Although the Court did not specify how the 6 Mississippi plaintiffs should be broken down, the same reasoning which led the Court to conclude that the Louisiana plaintiffs should include random selections also dictates that there be some random selections among the Mississippi plaintiffs. Given that the math will not permit an equal split, Defendants propose 4 party selections and 2 random selections. With respect to Texas, with the Court specifying that there be only 2 discovery pool plaintiffs, it is not practical to have a random selection since each party must have at least one pick. Although this is not ideal, Defendants acquiesce in the Court's decision as a fair compromise.

In sum, Plaintiffs' attempt to convert random selection to party selection – and to marginalize random selection by making random picks inferior to party picks – should be rejected as both inconsistent with CMO 2 and unwise. Defendants ask the Court to enforce the parties' stipulation in CMO 2 and provide a meaningful role for randomly selected cases, as its September 17 ruling did and Defendants' CMO 3 does.

### D. DEFENDANTS' PROPOSAL SAFEGUARDS AGAINST NON-REPRESENTATIVE SELECTIONS

Plaintiffs' brief is somewhat hysterical in hypothesizing that the Court's September 17 ruling will lead to atypical, oddball cases being tried. Defendants' CMO 3 contains many safeguards – totally ignored by Plaintiffs – to assure this does not happen.

**Protection Number 1** is that all discovery pool plaintiffs – whether party selections or random selections – must meet Court approved eligibility criteria and representative categories to be determined by the Court after input from the parties. Both parties agree on this. *Compare* P. CMO 3 ¶ 1(b) *with* D. CMO 3 (Ex. 1) ¶¶ 1(b), 1(f). While under CMO 2 the precise criteria and categories are not to be determined until the December status conference (Ex. 3 ¶ 5(b)) – and so the specific suggestions in Plaintiffs' brief and in footnote 1 of their proposed order are premature – the important point is that Defendants are not disputing that EVERY discovery pool plaintiff needs to have a representative fact pattern and that MDL Centrality should (and will) screen out EVERY potential plaintiff who does not meet the representative fact patterns adopted by the Court. This protection, standing alone, should satisfy Plaintiffs that atypical cases will not be selected. But there is more.

**Protection Number 2** is that, under Defendants' proposed CMO 3, each side can strike a randomly selected plaintiff without cause. This peremptory challenge should provide additional comfort that extreme cases will not be chosen. But there is more.

**Protection Number 3** is that, in addition to a peremptory strike, each side can challenge an unlimited number of party picks or random selections for cause. Defendants doubt that for cause challenges will actually be necessary – given the screens afforded by Protection Numbers 1 and 2. But if somehow an aberrant case slips through the cracks, the parties will have the chance to convince the Court that a particular discovery pool plaintiff has unique facts that make it unfair to consider his or her case. But again there is more.

**Protection Number 4** is that the Court has the ultimate say as to which of the 40 discovery pool plaintiffs become the 4 bellwether plaintiffs. So if – despite the three other layers of protection there is a discovery pool plaintiff who gets to the end of the process and whose case is so unique that he or she should not be considered for trial, the Court won't pick that plaintiff as one of the four bellwethers.

Given these multiple safeguards, Defendants suggest that Plaintiffs concerns about non-representative cases being tried are fanciful. If Defendants' CMO 3 is adopted, there are four different screens to assure that the bellwether trial plaintiffs will have representative fact patterns.

**E.     THE COURT SHOULD ADOPT DEFENDANTS' DISMISSAL PROPOSAL**

Defendants' CMO 3 prevents manipulation of the bellwether trial selection process through strategic dismissals of weak cases so that only strong cases are eligible for trial. Protection Numbers 1, 2 and 3 are ineffective against strategic dismissals because the dismissal occurs AFTER the operation of those screens. A weak case may properly belong in the discovery pool precisely because it is representative and meets all selection criteria. But suddenly, despite passing all three screens because of its typicality, the case disappears from the pool due to a dismissal.

2567562-1

The problem with strategic dismissals is that they can create a misleading impression that the inventory is stronger than it actually is. If several cases with weak fact patterns are dismissed prematurely, and the Court only considers the fact patterns of the stronger non-dismissed cases, the Court may incorrectly conclude that the stronger cases are more typical, which could skew the Court's selection of bellwethers and therefore nullify Protection Number 4.

Defendants propose **Protection Number 5** to address this potential issue. **Protection Number 5** requires that any discovery pool case that is dismissed other than on the merits be replaced, and that the Court have discretion to determine the method of replacing the case. The provision would allow – but would not require – the Court to permit the party not initiating the dismissal to pick the replacement. Whether the Court decided to exercise this authority would depend on the circumstance and be committed to the discretion of the Court. The existence of the provision, however, should deter strategic dismissals and, if the deterrent fails, prevent unfair prejudice to a party if a case is strategically dismissed.

## CONCLUSION

For the reasons stated above and in their initial brief, Defendants' request that the Court adopt their proposed CMO 3.

KAYE SCHOLER LLP

By: /s/ *Steven Glickstein*
Steven Glickstein
William Hoffman
KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8485
Facsimile: (212) 836-6485
sglickstein@kayescholer.com

*Co-Lead Defense Counsel*

DRINKER BIDDLE & REATH LLP

By: /s/ *Susan M. Sharko*
Susan M. Sharko
DRINKER BIDDLE & REATH LLP
*A Delaware Limited Liability Partnership*
600 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
Facsimile:  (973) 360-9831
susan.sharko@dbr.com

*Co-Lead Defense Counsel*

IRWIN FRITCHIE URQUHART & MOORE LLC

By: /s/ *James B. Irwin*
James B. Irwin
Kim E. Moore
IRWIN FRITCHIE URQUHART
& MOORE LLC
400 Poydras Street
Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
Facsimile:  (504) 310-2120
jirwin@irwinllc.com

*Defendants' Liaison Counsel*

15

                        CHAFFE MCCALL L.L.P.

                        By: /s/ *John F. Olinde*
                        John F. Olinde
                        CHAFFE McCALL L.L.P.
                        1100 Poydras Street
                        Suite 2300
                        New Orleans, LA 70163
                        Telephone: (504) 585-7241
                        Facsimile: (504) 544-6084
                        olinde@chaffe.com