UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) ) ) ) ) | MDL No. 2592 SECTION: L JUDGE FALLON MAG. JUDGE NORTH |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | | |

### PLAINTIFFS' RESPONSE TO DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR PROPOSED CMO3

**MAY IT PLEASE THE COURT:**

While it may serve certain strategic interests they have in limiting trial testimony to live witnesses and/or having more restrictive product liability law applied, Defendants' Proposed CMO 3 effectively undermines this Court's expectation, as expressed in CMO 2, that the parties should "select representative plaintiffs whose trials will provide meaningful information to the Court and the Parties." Indeed, while CMO 2 invited the possibility for the parties "to meet and confer as to the random selection process" and the geographic composition of the discovery pool, the Defendants' proposal makes it clear that they see no advantage in implementing a process which reflects the diversity of all of the cases on the MDL docket. Given the Defendants' continuing refusal to waive *Lexecon*, as well as their apparent determination to dissuade this Court from seeking authority to preside in trials outside of the Fifth Circuit, their CMO 3 approach to Discovery Pool selection comes as no surprise. Again placing preferred trial strategy above all else, their proposed protocol virtually assures trial cases that are simply not representative of the geographic composition of this nationwide MDL docket. An essential objective of bellwether selection would be frustrated in the process.

1

In entering CMO 3, the Court is faced with a decision that will be a determinative factor in the ultimate success of this litigation.  It can either adopt a bellwether plan as proposed by Plaintiffs that is consistent with jurisprudence and principles of an instructive bellwether process, or it can accede to a proposal which is tantamount to a trial plan unlike any ever adopted in MDL litigation, one that utterly precludes participation by plaintiffs outside of the Fifth Circuit and makes the geography of venue a factor above all others.  In characterizing Defendants' CMO 3 proposal as a trial plan rather than a true bellwether blueprint, the PSC need only cite the obvious: the proposal is devoid of any effort to identify plaintiffs who would be representative of the MDL case inventory.  Instead, it draws a line around three states, and suggests that the Court and the parties invest enormous resources in conducting discovery, and ultimately proceeding to trial, with plaintiffs from a small subset of the docket who happen to have claims governed by state law which Defendants deem favorable.

Representativeness is the foundation of any bellwether plan in an MDL, and must remain this Court's preeminent consideration in the matter at hand, because it is the representativeness of the Plaintiff(s) which allows the parties' discovery and trial activity to be truly instructive and useful in the end.  While Defendants cannot be forced to waive *Lexecon*, and in fact may have valid concerns about the ability to call prescribing doctors live to testify, these concerns cannot be used to tilt the balance in favor of a process that clearly strays from the fundamental objective of identifying plaintiffs representative of the entire docket.  Indeed, Plaintiffs have equivalent, tactical interests in presenting live witnesses at trial.  Plaintiffs might prefer that all bellwether cases be tried in venues where certain corporate employees and former employees could be compelled to testify in person and not remotely or by deposition.  However, had Plaintiffs proposed a trial plan that required the vast majority of plaintiffs to come from venues where such

corporate witnesses could be compelled to testify, their plan surely would have been challenged by Defendants as frustrating the objectiveness of the bellwether process for the sake of trial presentation. The Defendants' desire to call witnesses live is no more, or less, important than that of the Plaintiffs, and it should not weigh dispositively in this Court's adoption of CMO 3.

The Plaintiffs' version of CMO 3 provides a reasonable compromise as to the parties' competing interests. The first two cases would be tried in this venue, presumably with plaintiffs from the Eastern District of Louisiana. Defendants thus will have the ability to try the first two cases as they desire, with live appearances by the prescribing doctors. The third and fourth trials then would proceed with no further consideration of the question whether a prescribing physician can be compelled to testify or may agree to appear in person at trial. This is hardly a "confounder" in terms of what the parties learn in trying such cases. Should these cases be remanded to their home districts following the bellwether process, it is likely that many of them will have to be tried without a prescriber being available to testify at trial, but rather appearing through a pretrial deposition taken for trial purposes. The Plaintiffs' proposal will provide guidance on how such a trial will proceed and will be valuable to the parties.

The PSC does not consider it an exaggeration to state that Defendants' proposal places not simply this MDL, but potentially each future MDL, at considerable risk of not remaining a viable endeavor for merits discovery on trial activity. Under the Defendants' procedures, Plaintiffs can envision a multitude of presently-unfiled plaintiffs choosing to remain outside of the MDL because of concerns raised by the bellwether process proposed by Defendants. Their choice to do so would be encouraged by a proposal such as this which: (1) does not allow for significant participation in the bellwether discovery process outside of cases within the Fifth Circuit; and (2) is not representative of the scope of national docket, thereby creating the risk that

issues of importance to all plaintiffs will be viewed by bellwether juries only through the prism of state laws which are not truly representative of the laws governing most of the cases. If Defendants' CMO 3 is accepted, both they and other Defendants will use such an order to promote similar bellwether procedures in other MDLs. No MDL court has ever entered a bellwether order similar to that proposed by Defendants; and Your Honor, particularly given this Court's standing in Multi-District Litigation, should not be the first to do so.

The MDL process should encourage participation and representation from plaintiffs from all venues, not a select few. While Defendants may argue that their proposal allows some participation from Plaintiffs outside of the Fifth Circuit, it is their full intent that the only cases to go to trial come from Louisiana, Mississippi and Texas. Plaintiffs do not perceive any benefit to Defendants' trial plan because it promises to provide little to no information to the parties if implemented as a bellwether selection process. Such a plan, from the Plaintiffs' view, will have little credibility in shaping any meaningful dialogue between the parties.

The Defendants' Proposed CMO 3 is designed to minimize selection of cases from outside their target jurisdictions of Louisiana, Mississippi, and Texas. Defendants propose to divide the discovery pool on the following basis:

- 20 plaintiffs from the Eastern District of Louisiana (5 selected by Plaintiffs, 5 selected by Defendants, and 10 selected randomly)
- 6 plaintiffs from Mississippi (2 selected by Plaintiffs, 2 selected by Defendants, and 2 selected randomly)
- 2 plaintiffs from Texas (1 selected by Plaintiffs and 1 selected by Defendants)
- 12 from other states (2 selected by Plaintiffs, 2 selected by Defendants and 8 selected randomly)

By weighting selections from the Eastern District of Louisiana and Mississippi alone to 70% of the overall selections contemplated by the Defendants' proposal, Defendants attempt to

virtually assure themselves a gerrymandered result that would not be representative of all the cases on the docket of the MDL.  Likewise, the Defendants' Proposed CMO 3 limits to only 30% the impact of plaintiffs from states outside of the Fifth Circuit.  If Black's Law Dictionary were illustrated, Defendants' Proposed CMO 3 would literally serve as an apt reference for the definition of "forum-shopping." This is the antithesis of what the bellwether selection process is supposed to achieve:  an accurate, and instructive, reflection of "the individual categories of cases that comprise the MDL *in toto*."[1]

Similarly, none of the Defendants' so-called "protections" would provide any safeguards to the selection process that would justify their use.  Instead, the Defendants' insistence on peremptory strikes and limitless "for cause" challenges would provide them with the means to raise unlimited disputes over Plaintiffs' selections, further incentivized by the prospect of Defendants themselves selecting the replacements.   While couched as a means to "prevent manipulation," these "protections" portend an open invitation to the Defendants to challenge each of the Plaintiffs' selections and cause unnecessary distractions.  This hardly bodes well for the swift and efficient trials of bellwether cases.

The Defendants are using the venue restriction of *Lexecon* to drive a trial plan that they want, *i.e.,* a plan that attempts to limit triable cases to plaintiffs from the Fifth Circuit.  Should the Court accede to this tactic, it would surprise no one if, at the time the Court selects the four bellwether trials from Louisiana, Mississippi and Texas, Defendants then agree to the customary waiver of *Lexecon's* restriction and allow non-E.D. La. cases from these states to be tried in this Court.  Defendants strategically would have obtained what they wanted, namely, trials based on state laws that:  (1) do not allow for punitive damages (Louisiana); (2) cap non-economic

---

[1] Eldon E. Fallon, *Bellwether Trials in Multidistrict Litigation*, 82 Tulane L. Rev. 2323, 2343 (2008).

damages (Mississippi); and (3) likely precludes a trial on failure to warn (Texas). The concerns pertaining to punitive damages and non-economic damages are particularly significant given that the majority of plaintiffs in this case are elderly.

Fortunately, the Court does not have to accept Defendants' demands in order to have cases available for trial. The Plaintiffs' proposal allows cases to be tried without regard to the Defendants' ultimate *Lexecon* decision. Most importantly, the Plaintiffs' proposal focuses on identifying representative plaintiffs for these trials. Once the parties conduct discovery and the Court selects the four bellwether trials, the Defendants obviously must confirm their *Lexecon* position for these specific trials. If Defendants continue with their present position, the Court and the parties can decide the best path forward by selecting different trial cases or seeking temporary assignments in the appropriate courts. But there is no need to make this decision now and burden the entire bellwether pool based on an assumption that the Defendants will maintain their current *Lexecon* position. The steps that must be taken to try cases can and should be decided only <u>after</u> the Defendants formally decide not to waive *Lexecon* in the four trial cases. The entire process does not need to bend to the Defendants' refusal to fully "buy in" to the bellwether process by manipulating the discovery pool. The process needs to hold true to all of the core bellwether principles that have been espoused by Your Honor and relied upon by MDL Courts throughout the nation.

In contrast to Defendant's proposal, Plaintiffs' CMO 3 would allow Plaintiffs and Defendants to each select ten individual plaintiffs whose cases meet the eligibility criteria for entry into the bellwether pool, with the requirement that two out of the ten selections be properly venued in the Eastern District of Louisiana. This would ensure that at least four discovery pool plaintiffs would be available for trial in this Court. Plaintiffs' proposal also envisions a random

selection of thirty cases from the panoply of cases on the MDL docket, followed by a culling process (ten picks per side) to reach the desired twenty randomly-selected plaintiffs. Defendants contend that through this proposal, Plaintiffs are seeking reconsideration of a decision already set in stone by this Court. To the contrary, CMO 2 was worded so as to be sufficiently flexible for purposes of the later adoption of discovery pool and bellwether trial approaches. CMO 2 urged the parties to pursue whatever selection methods would be true to the object of a representative and instructive discovery and trial process. The PSC certainly did not hear the Court as making a final or definitive pronouncement to limit methods aimed at accomplishing what was called for under CMO 2.

Plaintiffs' Proposed CMO 3 observes the boundaries of CMO 2, while still addressing the paramount concern to the plaintiffs, i.e., the avoidance of imposing geographic venue limitations (three jurisdictions) so as to produce a process which cannot be reflective of true randomness.

Defendants' proposal also includes a replacement procedure for any discovery pool plaintiff that is dismissed. Plaintiffs submit that contemplating such a procedure at this juncture is premature. While Plaintiffs agree that a replacement procedure may become necessary (particularly given the potential issues with random selection), the parties should be allowed to engage in meaningful meet and confer discussions on the appropriate replacement procedures after the Court resolves the fundamental disparities in the parties' positions is to CMO 3.

As this Court is well aware, the PSC has opposed the use of random selection as a tool for MDL discovery or bellwether plaintiff selection, and it continues to view this methodology as neither accepted nor appropriate in this context. Nevertheless, since Defendants have successfully urged the Court to adopt randomness as a selection technique, Plaintiffs' CMO 3

does include its implementation, while at the same time seeking to do so without undermining the essential purpose of a representative bellwether selection and trial process.

For both the reasons stated in their initial memorandum and those stated above, Plaintiffs respectfully submit that their proposal, or one shaped by the Court that is consistent with that proposal rather than with Defendants' strategic trial plan, now be entered as CMO 3.

Respectfully submitted,

 /s/ Leonard A. Davis
Leonard A. Davis (Bar No. 14190)
**Herman, Herman & Katz, LLC**
820 O'Keefe Avenue
New Orleans, LA  70113
Phone:  (504) 581-4892
Fax:  (504) 561-6024
ldavis@hhkc.com


/s/ Gerald E. Meunier
Gerald E. Meunier (Bar No. 9471)
**Gainsburgh, Benjamin, David, Meunier & Warshauer, LLC**
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

*Plaintiffs' Liaison Counsel*

**PLAINTIFFS' STEERING COMMITTEE**

Andy D. Birchfield, Jr. (Co-Lead Counsel)
234 Commerce Street
Post Office Box 4160
Montgomery, Alabama 36103-4160
Phone: (334) 269-2343
Fax: (334) 954-7555
Email: Andy.Birchfield@BeasleyAllen.com

Brian H. Barr (Co-Lead Counsel)
316 Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7045
Fax: (850) 436-6044
Email: bbarr@levinlaw.com

Russell T. Abney
2100 RiverEdge Parkway,
Suite 720
Atlanta, Georgia 30328
Email: rabney@lawyerworks.com

Dr. Mark Alan Hoffman
1650 Market Street, Suite 3450
Philadelphia, PA 19103
Phone: (215) 574-2000
Fax: (215) 574-3080
Email: mhoffman@rossfellercasey.com

Michael Goetz
201 N. Franklin St., 7th Floor
Tampa, FL 33602
Phone: (813) 221-6581
Fax: (813) 222-4737
Email: MGoetz@ForThePeople.com

Neil D. Overholtz
17 E. Main Street , Suite 200
Pensacola, Florida 32501
Phone: (850) 916-7450
Fax: (850) 916-7449
Email: noverholtz@awkolaw.com

Bradley D. Honnold
11150 Overbrook Rd., Ste. 200
Leawood, KS 66211
Phone: (913) 266-2300
Fax: (913) 266-2366
Email: bhonnold@bflawfirm.com

Frederick Longer
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215-592-4663
Email: flonger@lfsblaw.com

Sindhu S. Daniel
550 Broad Street, Suite 920
Newark, NJ 07102
Phone: (973) 639-9100
Fax: (973) 639-9393
Email: sdaniel@seegerweiss.com

Roger C. Denton
100 S. 4th Street
St. Louis, MO 63102
Phone: (314) 621-6115
Email: rdenton@uselaws.com

Dianne M. Nast
1101 Market Street, Suite 2801
Philadelphia, Pennsylvania 19107
Phone: (215) 923-9300
Email: dnast@nastlaw.com

Ellen Relkin
700 Broadway
New York, New York 10003
Phone: (212) 558-5500
Fax: (212) 344-5461
Email: Erelkin@weitzlux.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that on November 11, 2015 a copy of the above and foregoing Notice of Oral and Videotaped Deposition Pursuant to Fed.R.Civ.P. 30(b)(6) of Bayer Defendants (Re: Corporate Structure) has contemporaneously with or before filing been served on all parties or their attorneys in a manner authorized by FRCP 5(b)(2), Local Rule 5.1 of the Eastern District of Louisiana and via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre-Trial Order No. 17.

                                    */s/ Gerald E. Meunier*
                                    **Gerald E. Meunier**