## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

IN RE: XARELTO (RIVAROXABAN)             **MDL No. 2592**
PRODUCTS LIABILITY LITIGATION

                                                **SECTION L**

**THIS DOCUMENT RELATES TO ALL ACTIONS**     **JUDGE ELDON E FALLON**

                                                **MAG. JUDGE NORTH**

## MEMORANDUM REGARDING CONTACT WITH PHYSICIANS

As this Court has recognized, the prescribing physician is one of the key fact witnesses in a products liability litigation such as this.  It is critical that these witnesses remain independent and not influenced by *ex parte* presentations by counsel on either side before deposition. Defendants ask the Court to enter an order in the form attached as Exhibit A governing the interactions that the parties may have with prescribing and treating physicians.  Specifically, defendants request an order that:

1. Permits *ex parte* communications between plaintiffs' counsel and prescribing or treating physicians regarding the physician's diagnosis and treatment of the plaintiff and plaintiff's medical condition (*see* Proposed Order ¶ 1);

2. Prohibits *ex parte* communications between defendants' counsel and prescribing or treating physicians regarding the physician's diagnosis and treatment of the plaintiff and the plaintiff's medical condition (*see id*. ¶ 2);

3. Prohibits *ex parte* communications by both plaintiffs' counsel and defendants' counsel with prescribing or treating physicians regarding liability issues or theories, defendants' conduct, product warnings, and documents produced by defendants or third parties (*see id*. ¶ 3);

4. Provides limited exceptions to the prohibitions in paragraphs (2) and (3) so that both parties can retain in good faith a reasonable number of physician-experts from among the MDL Plaintiffs' prescribing or treating physicians (*see id*. ¶¶ 4-7).

Defendants' proposed order -- which would allow plaintiffs' counsel to engage in *ex parte* communications with plaintiffs' physicians, but would limit those *ex parte*

communications to those involving the physician's treatment of the plaintiff -- is supported by orders in other mass tort pharmaceutical and medical device litigations.  The proposed order also is fully consistent with the concerns expressed by the Court in its two orders addressing *ex parte* physician communications in the *Vioxx* litigation:  it permits plaintiffs' counsel to evaluate cases before filing a complaint and protects the sanctity of the physician-patient relationship, while putting the plaintiffs and defendants on an equal footing concerning issues having nothing to do with that privileged relationship.

Defendants' proposed order differs significantly from the order sought by defendants in *Vioxx*.  In *Vioxx*, defendants sought to restrict ***all*** communications between plaintiffs' counsel and plaintiffs' physicians.  Defendants here, however, would explicitly allow plaintiffs' counsel to have *ex parte* discussions with physicians about their treatment of plaintiffs.  Unlike in *Vioxx*, defendants' proposed order would restrict plaintiffs' counsel only from having *ex parte* discussions on liability issues, *e.g.*, defendants' conduct, product warnings, and documents produced by defendants or third parties.  To our knowledge, this Court has never addressed the propriety of the more limited relief sought in this motion.

Further, because Xarelto® -- unlike Vioxx -- is still on the market, there is a greater need to prevent plaintiffs' counsel from presenting to physicians a one-sided (and not immediately rebuttable) presentation of defendants' documents to physicians.  There is a grave risk that if the physician hears from counsel for only one side and receives an unrefuted advocacy presentation, it could unfairly influence the doctor's risk-benefit assessment of an FDA-approved medicine that he/she is currently using successfully to treat patients.  If in fact the physician changes his/her prescribing decisions as a result of such a one-sided presentation, it will affect not only the plaintiff but also the physicians' other patients, most of whom are using the product

00325216

- 2 -

successfully, have not had a complication, are not involved in litigation, and have no counsel

(but only the Court) to protect their interests.

As we demonstrate below, the narrowly tailored relief sought by defendants is:

- Essential as a matter of due process and fundamental fairness, which requires that both sides have an equal opportunity to develop the evidence in this case, and to hear at the same time the unfiltered and uncolored testimony of these important and independent fact witnesses;

- Strongly supported by the case law, which holds that there should be a level playing field so that both plaintiffs' and defendants' counsel have an equal opportunity to present defendants' documents in proper context to the treating and prescribing physicians; and

- Consistent with this Court's prior *Vioxx* decisions, because it fully protects the right of plaintiffs' counsel to undertake *ex parte* communications concerning privileged physician-patient matters while treating the parties equally concerning non-privileged matters.

### STATEMENT OF FACTS

Xarelto® is an anticoagulant medication that was first approved by the FDA on July 1,

2011.  Unlike other medications that typically come to an MDL -- which often are formed after a

product has been withdrawn from the market -- Xarelto® continues to be approved by the FDA

and prescribed by physicians as a potentially life-saving medication for five indications:  (1) to

reduce the risk of stroke and systemic embolism in patients with nonvalvular atrial fibrillation;

(2) for treatment of deep vein thrombosis ("DVT"); (3) for the treatment of pulmonary embolism

("PE"); (4) for the reduction in the risk or recurrence of DVT and PE; and (5) for the prophylaxis

of DVT, which may lead to PE, in patients undergoing knee or hip replacement surgery.

The prescribing information for Xarelto® always has warned of the risk of bleeding

which can be serious or fatal, and that there is not a specific reversal agent for the medicine.  The

prescribing information also warns of the increased risk of blood clots and other events upon

discontinuation of Xarelto®, as well as that any decision to stop using Xarelto® should be under

the direction and supervision of a physician.

**LEGAL ARGUMENT**

**THE COURT SHOULD ORDER THAT *EX PARTE* CONTACT BETWEEN PLAINTIFFS' COUNSEL AND TREATING AND PRESCRIBING PHYSICIANS BE LIMITED TO DISCUSSIONS OF THE PHYSICIANS' DIAGNOSIS, PLAINTIFFS' TREATMENT, MEDICAL CONDITION AND RELATED MATTERS.**

Prescribing and treating physicians have a unique role as fact witnesses in pharmaceutical products liability litigation.  Defendants do not dispute the right of plaintiffs' counsel to engage in *ex parte* communications with their clients' prescribing and treating physicians regarding such physicians' diagnosis and treatment of those plaintiffs.  But in this type of litigation, plaintiffs' counsel often make a concerted effort to guide the physicians' testimony on important liability issues relating to defendants' conduct and warnings.  They do so through *ex parte* communications discussing such topics, and in particular by showing the defendants' internal documents to physicians without providing the proper context.

As this Court has recognized:

> Physicians who have prescribed [the medication] to Plaintiffs in this MDL have actualized or potential interests in this lawsuit. Therefore, they are just as susceptible to being influenced and colluding with Plaintiffs' counsel as they are to engaging in improper agreements with Defendants' counsel.

*In re Vioxx Prods. Liab. Litig.*, 230 F.R.D. 470, 472 (E.D. La. 2005).

An example of this type of "woodshedding" occurred in the California ASR litigation, where the treating physician testified that he was "coached" by the plaintiff's lawyer and plaintiff's family into making certain diagnosis and using certain terminology in his records. (*Kransky* Trial Tr. at 2521-22, Feb. 7. 2013; attached hereto as Exhibit B.)  Thus, the physician used the term "poison" and testified that his statement that "metal ions might be damaging his kidney further" would make it "more likely for [plaintiff] to get" his surgery "paid for."  *Id*.  The physician testified that he did not believe there was currently medical evidence to support these

statements and that he drank the "kool aid" and decided to include the language in his medical records, when he should not have done so.  *Id*. at 2595 (attached hereto as Exhibit B).

**The *Vioxx* Orders Did Not Address the Relief Sought by Defendants in this Litigation.**

In the *Vioxx* MDL, this Court considered defendants' request to preclude both plaintiffs' and defendants' counsel from engaging in ***any*** *ex parte* communications with plaintiffs' prescribing and treating physicians.  After recognizing the inherent unfairness in "unconstrained interviews" of physicians, the Court initially ordered that no *ex parte* communications occur absent advance notice to opposing counsel so that counsel for both plaintiffs and defendants could attend.  *Vioxx*, 230 F.R.D. at 472.

Following plaintiffs' motion to modify the ruling, and notwithstanding the Court's prior acknowledgement that "logic and reasoning" favored leveling the playing field, the Court deferred to "the practical effect which has created unintended consequences that can cause more problems than it sought to solve."  *Vioxx*, 2005 WL 2036797, at *2.  Accordingly, the Court modified its order to limit its original restriction to cases naming the physician as a defendant and permitted plaintiffs' counsel to engage in *ex parte* communications with the physicians without notice in all other cases.

In reversing itself, the Court identified several concerns, none of which apply to defendants' proposed order here:

1. In *Vioxx*, the Court emphasized plaintiff counsel's need to access plaintiffs' physicians in order to satisfy the due diligence necessary "in determining whether to take or keep a case."  *Id*.  Here, defendants' proposed order permits such access by permitting plaintiffs' counsel to have *ex parte* discussions with physicians about the physician's diagnosis and treatment of plaintiffs.  That is sufficient to provide plaintiffs' counsel with adequate information to decide whether to take a case.  Individual plaintiff's counsel do not need *ex parte* access to the physician on liability issues because liability issues are being worked up by the PSC collectively on behalf of all MDL Plaintiffs.

2. In *Vioxx*, the Court found that prohibiting plaintiffs' counsel from interviewing plaintiffs' physician would undermine the trust between doctor and patient and would interfere

with, and impair, the sanctity of the confidential physician-patient relationship. *Id.* at *3-*4. Here, defendants' proposed order preserves that confidential relationship by permitting plaintiffs' counsel (but not defense counsel) to communicate *ex parte* with plaintiffs' physicians regarding the confidential physician-patient relationship, *i.e.*, the physician's diagnosis and treatment of plaintiffs. By the same token, there should be no adverse impact on the physician-patient relationship if the Court treats both sides equally and bars plaintiffs' counsel in addition to defense counsel from having *ex parte* discussions about defendants' conduct or documents. Those subjects are not covered by the physician-patient privilege and do not involve physician-patient privacy issues.

3. In *Vioxx*, the state court litigation was out in front of the MDL. This Court observed that restricting plaintiffs' counsel's access to plaintiffs' physicians would have a "chilling effect on the MDL process" because it would be inconsistent with *Vioxx* state court cases where plaintiffs' counsel had such access. *Id.* at *2. But no such orders have been entered in any state court venue in the Xarelto® litigation. Defendants intend to request that a similar order regarding *ex parte* contact with treating physicians be entered in the state court proceedings as part of the state/federal coordination effort. This Court has already established a line of communication with Judge New in the PCCP, the only other active center of Xarelto® litigation. There is no reason why parallel orders could not be entered in both jurisdictions, especially if the Court communicates the sound reasons for its MDL order. And, even if the order is not entered in the PCCP, this Court should not let that drive the analysis of this issue.

This type of limitation on plaintiffs' counsel's *ex parte* contact with physicians on liability issues are even more necessary in this case, where Xarelto® is still being used by many patients to treat serious medical conditions and who have experienced excellent results with no complications. In addition to potentially skewing physicians' testimony in the litigation, a one-sided, not immediately rebuttable, advocate's presentation of the liability evidence could unfairly deter physicians from prescribing Xarelto® and deprive patients of the benefits that they could receive by taking the FDA-approved medication.

Accordingly, defendants respectfully request that this Court enter an order governing the interactions that counsel for the parties may have with prescribing and treating physicians. The proposed order -- which would allow plaintiffs' counsel to engage in *ex parte* communications with plaintiffs' physicians, but would limit those *ex parte* communications to those involving the physician's treatment of the plaintiff and allow for a limited equal number of physician-experts,

but not permit defense counsel to discuss any particular plaintiff's medical condition or treatment -- is fully consistent with the concerns expressed by the Court in its two orders addressing *ex parte* physician communications in the *Vioxx* litigation.[1]

**The Requested Relief is Consistent with the Approach Taken by Other Courts.**

Since this Court's decision in *Vioxx*, a growing number of courts in other MDLs and coordinated proceedings have taken the balanced approach suggested by defendants here. Specifically, to level the playing field, those courts have limited plaintiffs' counsel's contacts with plaintiffs' prescribing and treating physicians to eliminate the "incongruous [e]ffect that [plaintiffs' counsel's *ex parte* contacts] can have on pretrial efficiency." *See Gaus v. Novartis Pharmaceuticals Corp.*, Docket No. L-704-07-MT, at 16 (*In re Aredia and Zometa Litig.*, Case No. 278) (N.J. Super. Ct. Law Div. Oct. 29, 2009) (attached hereto as Exhibit C).[2]

For example, in the *Ortho Evra* MDL, Judge Katz ordered that plaintiffs' counsel's *ex parte* communication with plaintiffs' physicians be limited to discussions of "the physicians' records, course of treatment and related matters," and "liability issues or theories, product warnings, Defendant research documents or related materials" could not be discussed. *In re Ortho Evra Prods. Liab. Litig.*, MDL Docket No. 1742, No. 1:06-40000, 2010 WL 320064, at *2 (N.D. Ohio Jan. 20, 2010) (emphasis added).

Similarly, in the *Chantix* MDL, Judge Johnson held that plaintiffs' counsel's communications with plaintiffs' treating physicians be "limited to the individual care of the

---

[1]   In *Vioxx*, this Court noted the presence of physicians as defendants, which does not appear to be a significant issue in this litigation.  Moreover, as the Court's ultimate *Vioxx* decision makes clear, the naming of physicians favors limiting, not expanding, access to those physicians.

[2]   In *Gaus*, the court leveled that playing field by ordering "[a]ll parties to proceed by way of formal deposition of Plaintiffs' treating physicians."  *Id*. at 18.

individual plaintiffs, such as the plaintiffs' treatment, medical records and conversations with their health care providers," and shall not include discussions of "defendant's internal documents." *In re Chantix (Varenicline) Prods. Liab. Litig.*, No. 2:09-cv-2039-IPJ, 2011 WL 9995561, at *4 (N.D. Ala. June 30, 2011) (emphasis added).

This approach has been followed in various state court coordinated proceedings as well. For example, in the *Pelvic Mesh/Gynecare* litigation, the Hon. Carol Higbee ordered that plaintiffs' counsel's *ex parte* communications with plaintiffs' physicians be limited to "discussions of the facts of the treatment that the given treating physician provided to the given plaintiff and the plaintiff's medical condition and medical history." *In re Pelvic Mesh/Gynecare Litigation*, Docket No. ATL-L-6341-10, at 6 (N.J. Super. Ct. Law Div. Dec. 3, 2013) (attached hereto as Exhibit D).  The court ordered that:

> Plaintiff's counsel may not have ex parte discussions with the treating doctors about (1) their understanding of the risks and benefits of pelvic mesh products except as to what they knew and understood about when they used a particular product on the particular patient; (2) their past and present use of pelvic mesh products in general; (3) the risk and benefit information they received from agents or sales representatives of the defendants; (4) scientific literature, seminars, warnings or other tools the doctor used to obtain knowledge about the risks and benefits of the products; (5) theories of liability of the plaintiffs in the pelvic mesh litigation.

*Id.*  The court also prohibited plaintiffs' counsel "from showing the treating doctor any depositions or internal documents produced by defendants or scientific studies or literature prior to the deposition." *Id.*

Similarly, in the *Actos* litigation, a California state court judge limited "Plaintiffs' counsel's *ex parte* contacts with treating physicians . . . to a discussion of the physicians' records, course of treatment and related issues such as diagnosis and prognosis; and  . . . barr[ed]

Plaintiffs' counsel from discussing liability issues or theories, product warnings, Defendants' research documents, medical literature, or related materials with, or showing or providing any such documents to, treating physicians before the physicians' deposition." *In re Actos Prods. Liab. Cases*, No. BC411687 (Cal. Super. Ct. Mar. 20, 2015) (attached hereto as Exhibit E) (emphasis added).

The same protections are appropriate in this case. Allowing plaintiffs' counsel to have exclusive *ex parte* access to physicians -- with the unilateral ability to present and discuss defendants' documents -- permits plaintiffs' counsel to have a unique and unfair opportunity to sway the perspectives and testimony of key witnesses. Due process and fundamental fairness require the Court to level the playing field, and consistent with the MDL and other precedents set forth above, (1) limit all *ex parte* discussions between plaintiffs' counsel and treating and prescribing physicians to the treatment of plaintiffs and plaintiffs' medical history; and (2) prohibit all discussions regarding liability issues or theories, defendants' conduct, product warnings, and documents produced by defendants or third parties, except where there is a good faith belief that that physician will be an expert witness. *See* Proposed Order ¶¶ 4-7.

**Both Plaintiffs' and Defendants' Counsel Should Be Permitted to Engage in *Ex Parte* Communications with A Reasonable Number of Physician-Experts.**

Notwithstanding the general limitation that should be imposed on *ex parte* communications with physicians, defendants appreciate the need for plaintiffs to retain physician-experts in this litigation, some of whom may have treated MDL Plaintiffs. Defendants have similar concerns about their ability to retain qualified experts if they are prohibited from having *ex parte* communications with physicians without any exceptions for retained experts. In a litigation involving thousands of plaintiffs, who have among them seen thousands of doctors, any order prohibiting *ex parte* communications with physicians has the potential to disqualify

large numbers of potential physicians from serving as experts.  Accordingly, as set forth in defendants' proposed order, plaintiffs' counsel should be permitted to engage in *ex parte* communications with a reasonable number of MDL Plaintiffs' prescribing or treating physicians, as a prospective or retained consulting or testifying expert, without the limitations on the nature of those communications, provided that the sharing of internal documents of defendants or third parties should not occur until after the physician has been deposed and after he or she has expressed an affirmative and good faith interest in serving as an expert witness in the litigation on issues beyond the care and treatment of the plaintiff.

By the same token, and to ensure a level playing field, defendants' counsel should be permitted the same access to a reasonable number of MDL Plaintiffs' prescribing or treating physicians, as a prospective or retained consulting or testifying expert, provided that the physician is not used as an expert in the particular case in this MDL proceeding in which that physician's present or former patient is the named plaintiff (or if the case is brought in a representative capacity, is the individual who allegedly was treated with Xarelto® and is the subject of that case).  In addition, defendants' counsel shall instruct such physician-experts not to discuss their care or treatment of any MDL Plaintiff.  *See* Proposed Order ¶ 6.

To assure that those communications are limited to those situations where there is the actual or potential expert relationship, plaintiffs' counsel or defendants' counsel would have to advise the physician of their interest in potentially retaining them as an expert -- and the physician would have to affirmatively express an interest in being considered as an expert for that side -- before substantive communications begin.

Accordingly, this Court should permit both plaintiffs' and defendants' counsel to retain and engage in *ex parte* communications with a reasonable number of MDL Plaintiffs' prescribing or treating physicians, subject to the limitations set forth in the proposed order.

Many MDL courts have recognized a need for an exception to prohibiting *ex parte* communications with physicians to allow for the retention of experts.  *See, e.g.*, *In re Zimmer NextGen Knee Implant Prods. Liab. Litig.*, 890 F. Supp. 2d 896, 906 (N.D. Ill. 2012) ("exclud[ing] from the potential pool of experts all of the physicians who have treated the 500+ Plaintiffs whose cases have already been consolidated into this MDL" would "unfairly limit[]" defendants);  *In re Seroquel Prods. Liab. Litig.*, 2008 WL 821889, at *3-*4 (M.D. Fla. Mar. 21, 2008) (precluding defendants from contacting treating physicians would "limit[] the local pool of physicians available to serve as experts significantly" and potentially "deprive [defendant] of a fair opportunity to present its defense in the cases to be tried in [the MDL state]" ); *In re Prempro Prods. Liab. Litig.,* No. 4:03-cv-1507-WRW (E.D. Ark. Dec. 7, 2005) (attached hereto as Exhibit F) ("[d]efendants will not be prohibited from retaining a physician as an expert witness who is identified on a plaintiffs' fact sheet," subject to limitations).

Under defendants' proposed order, there would be several provisions to prohibit abuse and to prevent the exception from swallowing the rule:

- As previously noted, the proposed physician-expert must affirmatively express a *bona fide* interest in being potentially considered as a retained expert on behalf of that particular party before any substantive *ex parte* discussions regarding liability issues take place.  This protects both sides from opposing counsel circumventing the general prohibition against *ex parte* discussions when there is no real likelihood that the physician will serve as an expert.  But the sharing of internal documents of the defendants or third parties should not occur until after the physician has been deposed as a fact witness.  *See* Proposed Order ¶¶ 4-5.

- Defendants' counsel may not have *ex parte* discussions with a retained physician-expert regarding that physician's treatment of the physician's patient.  This protects the physician-patient privilege and the sanctity of the physician-patient relationship.  *See id.* ¶ 2.

- Defendants may not use a physician as an expert in the particular case where that physician's present or former patient is the named plaintiff (or otherwise the subject of the case).  This provision further protects the physician-patient privilege and the sanctity of the physician-patient relationship.  *See id.* ¶ 6.

- To assure that the physician's fact testimony is not unfairly skewed by a one-sided presentation of select internal company documents, neither plaintiff's counsel nor defense counsel may show an MDL Plaintiff's physician internal company documents before the physician has been deposed as a fact witness.  In addition, all other documents shown by the consulting party to the physician, and all documents independently reviewed by the physician in connection with the consultation, will be produced to the opposing party 5 business days prior to the physician's deposition as a fact witness.  This protects both sides from unfair surprise at a fact deposition as to information regarding liability issues that a physician may have reviewed *ex parte* prior to giving factual testimony.  *See id*. ¶ 7.

- Defendants may rely on the disclosures in Plaintiffs' Fact Sheets, at the time the expert is retained, in determining whether a physician is an MDL Plaintiffs' prescribing or treating physician.  This provision protects defendants against losing the right to use experts based on subsequent MDL disclosures and the possibility that a plaintiff's counsel will cherry-pick new plaintiffs simply based on whether a defendant's physician-expert treated that plaintiff so as to disqualify that expert.

Accordingly, this Court should permit both plaintiffs' and defendants' counsel to retain, and engage in *ex parte* communications with a reasonable number of physicians, subject to the other limitations set forth in the proposed order.

## CONCLUSION

For the reasons set forth above, defendants request that the Court enter an order attached as Exhibit A governing both sides' *ex parte* communications with MDL Plaintiffs' physicians.

Respectfully submitted,


KAYE SCHOLER LLP

By: /s/ *Steven Glickstein*
Steven Glickstein
William Hoffman
KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8485
Facsimile: (212) 836-6485
sglickstein@kayescholer.com

*Co-Lead Defense Counsel*



DRINKER BIDDLE & REATH LLP

By: /s/ *Susan M. Sharko*
Susan M. Sharko
DRINKER BIDDLE & REATH LLP
*A Delaware Limited Liability Partnership*
600 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
Facsimile:  (973) 360-9831
susan.sharko@dbr.com

*Co-Lead Defense Counsel*

IRWIN FRITCHIE URQUHART & MOORE LLC

By: /s/ *James B. Irwin*
James B. Irwin
Kim E. Moore
IRWIN FRITCHIE URQUHART
& MOORE LLC
400 Poydras Street
Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
Facsimile:  (504) 310-2120
jirwin@irwinllc.com

*Defendants' Co-Liaison Counsel*

CHAFFE MCCALL L.L.P.

By: /s/ *John F. Olinde*
John F. Olinde
CHAFFE McCALL L.L.P.
1100 Poydras Street
Suite 2300
New Orleans, LA 70163
Telephone: (504) 585-7241
Facsimile: (504) 544-6084
olinde@chaffe.com

*Defendants' Co-Liaison Counsel*

00325216

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on January 6, 2016, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to Liaison Counsel for Plaintiffs and Defendants by operation of the court's electronic filing system and served on all other plaintiff counsel via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre-Trial Order No. 17.

*/s/ James B. Irwin*
**James B. Irwin**