# Exhibit A

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

IN RE: XARELTO (RIVAROXABAN)          MDL No. 2592
PRODUCTS LIABILITY LITIGATION
                                      SECTION L

THIS DOCUMENT RELATES TO ALL ACTIONS   JUDGE ELDON E FALLON

                                      MAG. JUDGE NORTH

## [PROPOSED] ORDER REGARDING CONTACT WITH PHYSICIANS

The following will govern the parties' interactions with an MDL Plaintiff's prescribing and treating physicians. As used in this order, an "MDL Plaintiff's prescribing or treating physician" is a physician who has one or more patients who have filed a lawsuit (or whose representative has filed a lawsuit) pending in this MDL proceeding alleging that the patient sustained an injury caused by Xarelto.

1. Plaintiffs' counsel may engage in *ex parte* communications with any MDL Plaintiff's prescribing or treating physician regarding the physician's diagnosis and treatment of the Plaintiff and the Plaintiff's medical condition.

2. Defendants' counsel shall not engage in *ex parte* communications with any MDL Plaintiff's prescribing or treating physician regarding his or her treatment of any Plaintiff or the Plaintiff's medical condition.

3. Except as set forth in Paragraphs 4 and 5 below, counsel for the parties may not engage in *ex parte* communications with any MDL Plaintiff's prescribing or treating physician regarding liability issues or theories, Defendants' conduct, product warnings, or documents produced by any Defendant or third party.

4. Plaintiffs' counsel may communicate with a reasonable number of MDL Plaintiffs' prescribing or treating physicians, as a prospective or retained consulting or testifying physician-expert (a "physician-expert"), provided that no substantive communication shall take place unless Plaintiffs' counsel first informs the potential physician-expert that they wish to consider the physician as a potential expert for the Plaintiffs, and the proposed physician-expert has affirmatively expressed a *bona fide* interest in being potentially considered as a retained expert by the Plaintiffs.  The physician may be questioned at his or her deposition about all such discussions.

5. Defendants' counsel may communicate with a reasonable number of MDL Plaintiffs' prescribing or treating physicians, as a physician-expert, provided that no substantive communication shall take place unless Defendants' counsel first informs the potential physician-expert that they wish to consider the physician as a potential expert for the Defendants, and the proposed physician-expert has affirmatively expressed a *bona fide* interest in being potentially considered as a retained expert by the Defendants. The physician may be questioned at his or her deposition about all such discussions.

6. Defendants and their counsel may not use an MDL Plaintiff's treating or prescribing physician as a physician-expert in the particular case in this MDL proceeding where that physician's present or former patient is the named plaintiff (or, if the case is brought in a representative capacity, is the individual who was allegedly treated with Xarelto and is the subject of that case).  Defendants' counsel shall not discuss, and shall instruct any retained physician-expert that they may not discuss, the physician-expert's physician's diagnosis and treatment of the Plaintiff or the Plaintiff's medical condition of any patient who has filed (or whose representative has filed) a lawsuit pending in this MDL proceeding.

7.  If any MDL Plaintiff's prescribing or treating physician is consulted as an actual or potential expert under Paragraphs 4 or 5 above, counsel should refrain from sharing internal documents of defendants or third parties until after the physician's deposition as a fact witness.   All other documents shown by the consulting party to the physician, and all documents independently reviewed by the physician in connection with the consultation, will be produced to the opposing party five (5) business days prior to the physician's deposition as a fact witness.   The taking of the physician's deposition as a fact witness shall not preclude a later deposition of the physician with respect to the physician's expert report if the physician is later formally designated as an expert in a particular case.

8.  Defendants may rely on the disclosures in Plaintiffs' Fact Sheets, at the time the expert is retained, in determining whether a physician is an MDL Plaintiff's prescribing or treating physician.   No physician-expert shall be disqualified as a result of a Plaintiff disclosure first made after the date the physician-expert was initially consulted.

NEW ORLEANS, LOUISIANA this ___ day of _____, 2016.

_____
UNITED STATES DISTRICT JUDGE

# Exhibit B

1          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

2             COUNTY OF LOS ANGELES, CENTRAL DISTRICT

3

4    COORDINATION PROCEEDING SPECIAL  )
     TITLE [RULE 3.550(c)]            )
5                                     )
     DePUY ASR HIP SYSTEM CASES       )
6    _____  )    JCCP Case No. 4649

7    THIS DOCUMENT RELATES TO:        )
                                      )
8    Loren Kransky and Sheryl         )
     Kransky (originally filed under  )
9    Sandra Ellis, et al. v. DePuy,   )
     Inc., et al.)                    )
10                                    )
     Los Angeles Superior Court       )
11   Case No. BC456086                )
     _____  )
12

13

14                      Transcript of

15                    TRIAL PROCEEDINGS

16

17

18                  Los Angeles, California,
                   Thursday, February 7, 2013

19

20

21   REPORTED BY:  Lisa Moskowitz, CSR 10816, RPR, CLR

22

23               GOLKOW TECHNOLOGIES, INC.
                      877.370.DEPS
24                  Deps@golkow.com

25

2313

JEFFREY HANSEN, M.D. - EXAMINATION

1         ANSWER:  Once I agreed to get
2     involved, I presumed that it would be,
3     yes.
4         QUESTION:  On page 2, you talk about
5     the possibility that there is more likely
6     than not medically with a reasonable
7     degree of medical certainty to involve
8     actual worsening of his condition.
9         Do you see that?
10        ANSWER:  Yes.
11        QUESTION:  Are those words that you
12    typically use or include in your medical
13    progress notes?
14        ANSWER:  No, not really.  I was
15    coached into that particular statement.
16        QUESTION:  Coached by Mr. Johnson?
17        ANSWER:  Right.  Partly because with
18    his failing health, we did not know he
19    had metastatic kidney disease at the
20    time, but we did know -- yeah, metastatic
21    kidney cancer.  We did know that he had
22    kidney disease and that even though it's
23    unknown that the metal ions might be
24    damaging his kidney further, Mr. Johnson
25    did tell me that if we could expedite his

JEFFREY HANSEN, M.D. - EXAMINATION

1      surgery with that statement, that it

2      would be more likely for him to get -- in

3      my mind, get it paid for.

4          Now -- so that's the honest truth.

5          QUESTION:  At least in part,

6      Deposition Exhibit 9 is written for

7      medical/legal purposes in addition to any

8      treatment information that it may contain

9      relating to Mr. Kransky.  Is that fair?

10         ANSWER:  That's fair, yes.

11         QUESTION:  You talked about a stack

12     of review articles that the family told

13     you that Dr. Shannon had, suggesting that

14     heavy metals tend to poison the kidneys.

15         Was that information you received

16     from Mr. Kransky or his family or from

17     Mr. Johnson?

18         ANSWER:  That would be information

19     from his family, yes.  You know, his two

20     daughters came in and said, "We have a

21     stack of articles that describes how

22     metal ions poison the kidneys."  And

23     perhaps I could have put that in a little

24     bit different fashion.  The word "poison"

25     is pretty -- pretty -- I guess that's

1          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

2              COUNTY OF LOS ANGELES, CENTRAL DISTRICT

3

4    COORDINATION PROCEEDING SPECIAL  )
     TITLE [RULE 3.550(c)]            )
5                                     )
     DePUY ASR HIP SYSTEM CASES       )
6    _____  )   JCCP Case No. 4649

7    THIS DOCUMENT RELATES TO:        )
                                      )
8    Loren Kransky and Sheryl         )
     Kransky (originally filed under  )
9    Sandra Ellis, et al. v. DePuy,   )
     Inc., et al.)                    )
10                                    )
     Los Angeles Superior Court       )
11   Case No. BC456086                )
     _____  )
12

13

14                      Transcript of

15                    TRIAL PROCEEDINGS

16

17

18                 Los Angeles, California,
                   Friday, February 8, 2013
19

20

21   REPORTED BY:  Lisa Moskowitz, CSR 10816, RPR, CLR

22

23             GOLKOW TECHNOLOGIES, INC.
                    877.370.DEPS
24                Deps@golkow.com

25

                                                          2586

JEFFREY HANSEN, M.D. - EXAMINATION (RESUMED)

1    have on Mr. Kransky if he didn't have the
2    revision?
3         ANSWER:  I would say with -- you
4    know, in a way, I became influenced or
5    drank the Kool-Aid, so to speak, thinking
6    there was more clear-cut knowledge about
7    the potential damage of these metal ions
8    at the time I did it, to be honest with
9    you, than I do now.  I think it's more
10   unclear, quite honestly, if I look at all
11   the literature at least, you know, a
12   dozen papers that talk about that issue.
13   I'm less convinced now.
14        I was a little more convinced now
15   that the ions were a potential health
16   risk enough that that was maybe a little
17   weightier.  I still did the revision
18   because I thought his hip was hurting
19   enough to warrant it.  I don't know if I
20   answered the question or that was too
21   roundabout or whatever.
22        QUESTION:  Did you ever talk to
23   Dr. Trotsky about Mr. Kransky's hip?
24        ANSWER:  I think I did, yes.
25        QUESTION:  The cup?

2595

# Exhibit C

SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000
-and-
HOLLINGSWORTH LLP
1350 I Street, NW
Washington, DC 20005
(202) 898-5800
Attorneys for Defendants
Novartis Pharmaceutical Corporation



| | |
|---|---|
| WALTER GAUS,<br><br>     Plaintiff,<br><br>vs.<br><br>NOVARTIS PHARMACEUTICALS<br>CORP.,<br><br>     Defendant. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION – MIDDLESEX COUNTY<br>DOCKET NO. MID-L-007014-07-MT<br>*(This document relates to all cases on the attached list.)*<br>    CASE NO. 278<br><br>    CIVIL ACTION<br>In re Aredia® and Zometa® Litigation<br><br>     **ORDER** |

  THIS MATTER having been opened by the Court by Sills Cummis & Gross P.C.,

attorneys for defendant Novartis Pharmaceuticals Corporation ("NPC"), seeking an order

permitting *ex parte* contacts with Plaintiffs' treating physicians, and the Court having reviewed

the papers submitted on this motion,        , and good cause

having been shown,

  IT IS on this 29th day of October, 2009,

  ORDERED that NPC's motion be and hereby is granted; and it is further

  ORDERED that NPC is permitted to conduct *ex parte* interviews with plaintiffs' treating

and prescribing physicians; and it is further

**DENIED**

ORDERED that a copy of this Order be served upon all counsel within seven (7) days of

the date hereof.

_____
Hon. Jessica R. Mayer, ~~P.J.Cv. J.~~ S.C.

✔ Opposed

_____ Unopposed

\*   For the reasons set forth in the
   cant's written memorandum.

**OPPOSED**

2

## List of Related Cases

| Docket | Case | Filing Date |
|---|---|---|
| MID-L-007014-07-MT | Gaus, et al. v. Novartis Pharmaceuticals Corp, et al. | 8/16/2007 |
| MID-L-007017-07-MT | Restivo v. Novartis Pharmaceuticals Corp | 8/16/2007 |
| MID-L-007020-07-MT | Milne v. Novartis Pharmaceuticals Corp | 8/16/2007 |
| MID-L-007021-07-MT | Allmond v. Novartis Pharmaceuticals Corp | 8/16/2007 |
| MID-L-007023-07-MT | Fokas, et al. v. Novartis Pharmaceuticals Corp, et al. | 8/16/2007 |
| MID-L-007665-07-MT | Campbell, et al. v. Novartis Pharmaceuticals Corp | 9/6/2007 |
| MID-L-007667-07-MT | Knopp, et al. v. Novartis Pharmaceuticals Corp | 9/6/2007 |
| MID-L-007668-07-MT | Isaacs, et al. v. Novartis Pharmaceuticals Corp | 9/6/2007 |
| MID-L-007669-07-MT | Hitchcock, et al. v. Novartis Pharmaceuticals Corp | 9/6/2007 |
| MID-L-007670-07-MT | Meng v. Novartis Pharmaceuticals Corp | 9/6/2007 |
| MID-L-007954-07-MT | Ward, et al. v. Novartis Pharmaceuticals Corp | 9/19/2007 |
| MID-L-007956-07-MT | Walton v. Novartis Pharmaceuticals Corp | 9/19/2007 |
| MID-L-007957-07-MT | Pensabene v. Novartis Pharmaceuticals Corp | 9/19/2007 |
| MID-L-007958-07-MT | Kearney, et al. v. Novartis Pharmaceuticals Corp | 9/19/2007 |
| MID-L-008005-07-MT | Zarro, et al. v. Novartis Pharmaceuticals Corp | 9/20/2007 |
| MID-L-008662-07-MT | Mueller v. Novartis Pharmaceuticals Corp | 10/10/2007 |
| MID-L-008895-07-MT | Bermender v. Novartis Pharmaceuticals Corp, et al. | 10/19/2007 |
| MID-L-009369-07-MT | Brown v. Novartis Pharmaceuticals Corp, et al. | 11/7/2007 |
| MID-L-009866-07-MT | Barwell, et al. v. Novartis Pharmaceuticals Corp | 11/20/2007 |
| MID-L-009867-07-MT | Davies v. Novartis Pharmaceuticals Corp | 11/20/2007 |
| MID-L-010188-07-MT | Severe v. Novartis Pharmaceuticals Corp | 12/4/2007 |
| MID-L-010189-07-MT | Richardson v. Novartis Pharmaceuticals Corp | 12/4/2007 |
| MID-L-010194-07-MT | Tobias v. Novartis Pharmaceuticals Corp | 12/4/2007 |
| MID-L-010208-07-MT | Schmitt v. Novartis Pharmaceuticals Corp | 12/4/2007 |
| MID-L-010209-07-MT | McPhilomy v. Novartis Pharmaceuticals Corp | 12/4/2007 |
| MID-L-010210-07-MT | Schneider v. Novartis Pharmaceuticals Corp | 12/4/2007 |
| MID-L-010211-07-MT | Leadman v. Novartis Pharmaceuticals Corp | 12/4/2007 |
| MID-L-010212-07-MT | Ferguson v. Novartis Pharmaceuticals Corp | 12/4/2007 |
| MID-L-010213-07-MT | Jones v. Novartis Pharmaceuticals Corp | 12/4/2007 |
| MID-L-010214-07-MT | McCully v. Novartis Pharmaceuticals Corp | 12/4/2007 |
| MID-L-000363-08-MT | MacMurtry v. Novartis Pharmaceuticals Corp | 1/17/2008 |
| MID-L-000365-08-MT | Stoller v. Novartis Pharmaceuticals Corp | 1/17/2008 |
| MID-L-000626-08-MT | Smits v. Novartis Pharmaceuticals Corp | 1/25/2008 |
| MID-L-000628-08-MT | Warren v. Novartis Pharmaceuticals Corp | 1/25/2008 |
| MID-L-000631-08-MT | Fisher, et al v. Novartis Pharmaceuticals Corp | 1/25/2008 |
| MID-L-001517-08-MT | Hassman v. Novartis Pharmaceuticals Corp | 1/30/2006 |
| MID-L-001552-08-MT | Stein v. Novartis Pharmaceuticals Corp | 2/27/2008 |
| MID-L-001555-08-MT | Teel v. Novartis Pharmaceuticals Corp | 2/27/2008 |
| MID-L-001815-08-MT | Irby v. Novartis Pharmaceuticals Corp | 3/29/2006 |
| MID-L-001817-08-MT | Weill v. Novartis Pharmaceuticals Corp | 3/10/2008 |
| MID-L-001820-08-MT | Harary v. Novartis Pharmaceuticals Corp | 5/12/2006 |

## List of Related Cases

| Docket | Case | Filing Date |
|---|---|---|
| MID-L-001821-08-MT | Scalamoni v. Novartis Pharmaceuticals Corp | 8/25/2006 |
| MID-L-001835-08-MT | Bessemer, et al. v. Novartis Pharmaceuticals Corp | 1/30/2006 |
| MID-L-001843-08-MT | Oakes, et al. v. Novartis Pharmaceuticals Corp, et al. | 6/23/2006 |
| MID-L-001872-08-MT | Harris, et al. v. Novartis Pharmaceuticals Corp | 1/3/2006 |
| MID-L-001899-08-MT | Lecompte, et al. v. Novartis Pharmaceuticals Corp | 1/12/2007 |
| MID-L-002013-08-MT | Armstead v. Novartis Pharmaceuticals Corp | 3/17/2008 |
| MID-L-002015-08-MT | Scala v. Novartis Pharmaceuticals Corp | 3/17/2008 |
| MID-L-002023-08-MT | Koppel, et al. v. Novartis Pharmaceuticals Corp | 5/14/2007 |
| MID-L-002050-08-MT | Gillispie v. Novartis Pharmaceuticals Corp | 7/30/2007 |
| MID-L-002258-08-MT | Hassell v. Novartis Pharmaceuticals Corp | 3/28/2008 |
| MID-L-002262-08-MT | Holloway v. Novartis Pharmaceuticals Corp | 3/28/2008 |
| MID-L-003156-08-MT | Schoenfeldt v. Novartis Pharmaceuticals Corp | 5/14/2007 |
| MID-L-003276-08-MT | Moghaddam v. Novartis Pharmaceuticals Corp | 4/29/2008 |
| MID-L-003277-08-MT | Dougherty v. Novartis Pharmaceuticals Corp | 4/29/2008 |
| MID-L-003278-08-MT | Drowns v. Novartis Pharmaceuticals Corp | 4/29/2008 |
| MID-L-003302-08-MT | Gilbert v. Novartis Pharmaceuticals Corp | 4/30/2008 |
| MID-L-003385-08-MT | Chance v. Novartis Pharmaceuticals Corp | 5/1/2008 |
| MID-L-003386-08-MT | Aleman v. Novartis Pharmaceuticals Corp | 5/1/2008 |
| MID-L-003388-08-MT | Dorn v. Novartis Pharmaceuticals Corp | 5/1/2008 |
| MID-L-003391-08-MT | Davis v. Novartis Pharmaceuticals Corp | 4/28/2008 |
| MID-L-003393-08-MT | Traphagen v. Novartis Pharmaceuticals Corp, et al. | 4/30/2008 |
| MID-L-003395-08-MT | Wiesner, et al. v. Novartis Pharmaceuticals Corp, et al. | 4/30/2008 |
| MID-L-003510-08-MT | Bryant v. Novartis Pharmaceuticals Corp | 1/17/2008 |
| MID-L-003655-08-MT | Baughman v. Novartis Pharmaceuticals Corp | 5/12/2008 |
| MID-L-003656-08-MT | Gordon v. Novartis Pharmaceuticals Corp | 5/12/2008 |
| MID-L-003657-08-MT | Kent v. Novartis Pharmaceuticals Corp | 5/12/2008 |
| MID-L-003953-08-MT | Perrone v. Novartis Pharmaceuticals Corp | 5/20/2008 |
| MID-L-003954-08-MT | Getz v. Novartis Pharmaceuticals Corp | 5/20/2008 |
| MID-L-003955-08-MT | Rheinheimer v. Novartis Pharmaceuticals Corp | 5/20/2008 |
| MID-L-004163-08-MT | Hughes v. Novartis Pharmaceuticals Corp | 3/28/2006 |
| MID-L-004224-08-MT | Shelton v. Novartis Pharmaceuticals Corp | 5/28/2008 |
| MID-L-004226-08-MT | Rindy v. Novartis Pharmaceuticals Corp | 5/28/2008 |
| MID-L-004228-08-MT | Smith v. Novartis Pharmaceuticals Corp | 5/28/2008 |
| MID-L-004370-08-MT | McGuckin v. Novartis Pharmaceuticals Corp | 5/30/2008 |
| MID-L-004946-08-MT | Auxier v. Novartis Pharmaceuticals Corp | 6/19/2008 |
| MID-L-004948-08-MT | Garavel v. Novartis Pharmaceuticals Corp | 6/19/2008 |
| MID-L-004950-08-MT | Diliberto v. Novartis Pharmaceuticals Corp | 6/19/2008 |
| MID-L-005000-08-MT | Wolms v. Novartis Pharmaceuticals Corp | 6/20/2008 |
| MID-L-005001-08-MT | Tepper v. Novartis Pharmaceuticals Corp | 6/20/2008 |
| MID-L-005003-08-MT | Strickland v. Novartis Pharmaceuticals Corp | 6/20/2008 |
| MID-L-005688-08-MT | Gemmell v. Novartis Pharmaceuticals Corp | 7/15/2008 |

## List of Related Cases

| Docket | Case | Filing Date |
|---|---|---|
| MID-L-005689-08-MT | Beck v. Novartis Pharmaceuticals Corp | 7/15/2008 |
| MID-L-005690-08-MT | Thomas v. Novartis Pharmaceuticals Corp | 7/15/2008 |
| MID-L-005691-08-MT | Levine v. Novartis Pharmaceuticals Corp | 7/15/2008 |
| MID-L-006027-08-MT | Bagley v. Novartis Pharmaceuticals Corp | 7/23/2008 |
| MID-L-006030-08-MT | Hansen v. Novartis Pharmaceuticals Corp | 7/23/2008 |
| MID-L-006031-08- MT | Walsh v. Novartis Pharmaceuticals Corp | 7/23/2008 |
| MID-L-006603-08-MT | Carline v. Novartis Pharmaceuticals Corp | 8/13/2008 |
| MID-L-006604-08-MT | Benevento v. Novartis Pharmaceuticals Corp | 8/13/2008 |
| MID-L-006605-08-MT | Boone v. Novartis Pharmaceuticals Corp | 8/13/2008 |
| MID-L-006758-08-MT | McPherson v. Novartis Pharmaceuticals Corp | 8/19/2008 |
| MID-L-006759-08-MT | Marksbury v. Novartis Pharmaceuticals Corp | 8/19/2008 |
| MID-L-006761-08-MT | Marquez v. Novartis Pharmaceuticals Corp | 8/19/2008 |
| MID-L-006798-08-MT | Nicholson v. Novartis Pharmaceuticals Corp | 8/20/2008 |
| MID-L-006801-08-MT | Neal v. Novartis Pharmaceuticals Corp | 8/20/2008 |
| MID-L-006802-08-MT | Morris v. Novartis Pharmaceuticals Corp | 8/20/2008 |
| MID-L-006868-08-MT | Pettit v. Novartis Pharmaceuticals Corp | 8/21/2008 |
| MID-L-006872-08-MT | Kourafas v. Novartis Pharmaceuticals Corp | 8/21/2008 |
| MID-L-006873-08-MT | Stacy v. Novartis Pharmaceuticals Corp | 8/21/2008 |
| MID-L-006935-08-MT | Dahlman v. Novartis Pharmaceuticals Corp | 8/22/2008 |
| MID-L-006942-08-MT | Lewis v. Novartis Pharmaceuticals Corp | 8/22/2008 |
| MID-L-006943-08-MT | Mangels v. Novartis Pharmaceuticals Corp | 8/22/2008 |
| MID-L-007037-08-MT | Imburgia v. Novartis Pharmaceuticals Corp | 8/25/2008 |
| MID-L-007038-08-MT | Green v. Novartis Pharmaceuticals Corp | 8/25/2008 |
| MID-L-007041-08-MT | De La Fuente v. Novartis Pharmaceuticals Corp | 8/25/2008 |
| MID-L-007378-08-MT | Kresge v. Novartis Pharmaceuticals Corp | 9/9/2008 |
| MID-L-007435-08-MT | Hudson v. Novartis Pharmaceuticals Corp | 9/10/2008 |
| MID-L-007436-08-MT | Hyman v. Novartis Pharmaccuticals Corp | 9/10/2008 |
| MID-L-007437-08-MT | Gray v. Novartis Pharmaceuticals Corp | 9/10/2008 |
| MID-L-008050-08-MT | Baker, et. al. v. Novartis Pharmaceuticals Corp | 9/29/2008 |
| MID-L-008052-08-MT | Clawson, et. al. v. Novartis Pharmaceuticals Corp | 9/29/2008 |
| MID-L-008164-08-MT | Floyd v. Novartis Pharmaceuticals Corp | 10/2/2008 |
| MID-L-008165-08-MT | Anne v. Novartis Pharmaceuticals Corp | 10/2/2008 |
| MID-L-008166-08-MT | Carrion v. Novartis Pharmaceuticals Corp | 10/2/2008 |
| MID-L-008196-08-MT | Jackson v. Novartis Pharmaceuticals Corp | 10/3/2008 |
| MID-L-008197-08-MT | Jaynes v. Novartis Pharmaceuticals Corp | 10/3/2008 |
| MID-L-008220-08-MT | San Miguel v. Novartis Pharmaceuticals Corp | 10/6/2008 |
| MID-L-008222-08-MT | Heley v. Novartis Pharmaceuticals Corp | 10/6/2008 |
| MID-L-008223-08-MT | Fricke v. Novartis Pharmaceuticals Corp | 10/6/2008 |
| MID-L-008270-08-MT | Bosma v. Novartis Pharmaceuticals Corp | 10/7/2008 |
| MID-L-008271-08-MT | Jones v. Novartis Pharmaceuticals Corp | 10/7/2008 |
| MID-L-008272-08-MT | Lewis v. Novartis Pharmaceuticals Corp | 10/7/2008 |

## List of Related Cases

| Docket | Case | Filing Date |
|---|---|---|
| MID-L-008321-08-MT | Lynch v. Novartis Pharmaceuticals Corp | 10/8/2008 |
| MID-L-008324-08-MT | Schomer v. Novartis Pharmaceuticals Corp | 10/8/2008 |
| MID-L-008325-08-MT | Welch v. Novartis Pharmaceuticals Corp | 10/8/2008 |
| MID-L-008451-08-MT | Smith v. Novartis Pharmaceuticals Corp | 10/15/2008 |
| MID-L-008452-08-MT | Wilson v. Novartis Pharmaceuticals Corp | 10/15/2008 |
| MID-L-008453-08-MT | Woodard v. Novartis Pharmaceuticals Corp | 10/15/2008 |
| MID-L-009136-08-MT | DeSantis v. Novartis Pharmaceuticals Corp | 11/5/2008 |
| MID-L-009139-08-MT | Laney v. Novartis Pharmaceuticals Corp | 11/5/2008 |
| MID-L-009142-08-MT | Werner v. Novartis Pharmaceuticals Corp | 11/5/2008 |
| MID-L-02370-08-MT | Kelly, et al. v. Novartis Pharmaceuticals Corp | 10/11/2007 |
| MID-L-000223-09-MT | Compton, et.al. v. Novartis Pharmaceuticals Corp | 1/12/2009 |
| MID-L-000369-09-MT | McInerney v. Novartis Pharmaceuticals Corp | 1/16/2009 |
| MID-L-000371-09-MT | Gamble v. Novartis Pharmaceuticals Corp | 1/16/2009 |
| MID-L-000372-09-MT | Morningstar, et.al., v. Novartis Pharmaceuticals Corp | 1/16/2009 |
| MID-L-000705-09-MT | Carfagno v. Novartis Pharmaceuticals Corp | 1/30/2009 |
| MID-L-000754-09-MT | Lourenso v. Novartis Pharmaceuticals Corp | 2/2/2009 |
| MID-L-000757-09-MT | Pickett v. Novartis Pharmaceuticals Corp | 2/2/2009 |
| MID-L-001383-09-MT | Wilkowsky v. Novartis Pharmaceuticals Corp | 2/24/2009 |
| MID-L-001384-09-MT | Tolford, et al. v. Novartis Pharmaceuticals Corp, et al. | 2/24/2009 |
| MID-L-001761-09-MT | Dobson et al. v. Novartis Pharmaceuticals Corp, et al. | 3/9/2009 |
| MID-L-001763-09-MT | Slockish v. Novartis Pharmaceuticals Corp | 3/9/2009 |
| MID-L-001765-09-MT | Katterman v. Novartis Pharmaceuticals Corp | 3/9/2009 |
| MID-L-001766-09-MT | DiCicco et al. v. Novartis Pharmaceuticals Corp | 3/9/2009 |
| MID-L-001805-09-MT | Higgins, et al. v. Novartis Pharmaceuticals Corp | 3/10/2009 |
| MID-L-001952-09-MT | Bracamonte v. Novartis Pharmaceuticals Corp | 3/12/2009 |
| MID-L-001953-09-MT | Marchain v. Novartis Pharmaceuticals Corp | 3/12/2009 |
| MID-L-004858-09-MT | Moss v. Novartis Pharmaceuticals Corp | 6/9/2009 |
| MID-L-007182-09-MT | Harold, et al. v. Novartis Pharmaceuticals Corp | 8/26/2009 |

List of Related Cases

As to defendants Teva Parental Medicines, Inc., APP Pharmaceuticals, Inc., Hospira, Inc., and Bedford Laboratories, this Order is applicable to the following In re Zometa/Aredia cases:

| Docket | Case | Filing Date |
|---|---|---|
| MID-L-1761-09-MT | Dobson v. Novartis Pharmaceuticals Corp. | 3/9/2009 |
| MID-L-1763-09-MT | Slockish v. Novartis Pharmaceuticals Corp. | 3/9/2009 |
| MID-L-705-09-MT | Carfagno v. Novartis Pharmaceuticals Corp. | 1/30/2009 |
| MID-L-4858-09-MT | Moss v. Novartis Pharmaceuticals Corp. | 6/9/2009 |

# SUPERIOR COURT OF NEW JERSEY

CHAMBERS OF
JESSICA R. MAYER, J.S.C.
JUDGE



MIDDLESEX COUNTY COURT HOUSE
P.O. Box 964
NEW BRUNSWICK, NEW JERSEY 08903-964

## NOT FOR PUBLICATION WITHOUT THE
## APPROVAL OF THE COMMITTEE ON OPINIONS

### Memorandum of Decision on Defendant's
### Motion for *Ex Parte* Contacts with Plaintiffs' Treating Physicians

Gaus v. Novartis Pharmaceuticals Corp.
Docket No. L-7014-07MT (In re: Aredia and Zometa, Case No. 278)

| | |
|---|---|
| For Defendants: | Beth S. Rose, Esq. for Novartis Pharmaceuticals Corporation |
| | Katherine Latimer, Esq. for Novartis Pharmaceuticals Corporation |
| | Joe Hollingsworth, Esq. for Novartis Pharmaceuticals Corporation |
| | Neil S. Bromberg, Esq. for Novartis Pharmaceuticals Corporation |
| | Glenn S. Kerner, Esq. for Teva Parenteral Medicines, Inc. |
| | Steven A. Karg, Esq. for APP Pharmaceuticals, Inc. |
| | Ricky M. Guerra, Esq. for Hospira, Inc. |
| | Lauren E. Handler, Esq. for Bedford Laboratories |

| | |
|---|---|
| For Plaintiffs: | Michael L. Rosenberg, Esq. |
| | John J. Vecchione, Esq. |

| | |
|---|---|
| Dated: | October 29, 2009 |

## Defendant's Motion

On September 4, 2009, Defendant Novartis Pharmaceuticals Corporation ("NPC" or "Defendant") filed a motion to engage in substantive *ex parte* contacts with the treating or prescribing physicians of Plaintiff Walter Gaus and plaintiffs in all related cases (collectively

"Plaintiffs").[1]   Relying heavily on a similar order that was granted in a federal litigation involving Aredia® and Zometa® in 2006 in the United States District Court for the Middle District of Tennessee ("the MDL"), Defendant argues that permitting *ex parte* contacts will allow Defendant to forgo the deposition of some physicians and promote efficiency in the depositions that are conducted.

Defendant begins by informing the court of the MDL court's holding, which stated that Defendant, in that case, was permitted to engage in *ex parte* communications with plaintiffs' treating physicians in the following jurisdictions: Alabama, California, Georgia,[2] Kansas, Kentucky, Louisiana, Maryland, Massachusetts, Michigan, Missouri, New Jersey, New York, North Dakota, Ohio, Oklahoma, South Carolina, Texas, and Wisconsin.[3]   Defendant then cites the MDL Magistrate Judge's Order for the proposition that "[p]laintiffs' treating physicians are fact witnesses and [p]laintiffs' counsel is not entitled to restrict access to the witnesses," adding that "no party has an exclusive right to any witness." Order (Jan. 17, 2008), MDL DE 1094, at 2.

Defendant explains that the MDL court set "reasonable" guidelines for NPC's *ex parte* contacts with the plaintiff's treating physicians, including the following: Defendant must inform all physicians that (1) participation in *ex parte* interviews is voluntary and (2) the physician may request counsel to be present. MDL Order at 3. As to plaintiffs in New Jersey, the MDL court

---

[1] Additional motions requesting *ex parte* contacts with Plaintiffs' treating physicians were filed by defendants Teva Parental Medicines, Inc., APP Pharmaceuticals, Inc., Hospira, Inc., and Bedford Laboratories applicable to the following In re Zometa/Aredia cases: Dobson, L-1761-09-MT; Slockish, L-1763-09-MT; Carfagno, L-705-09-MT; and Moss, L-4858-09-MT. Hereinafter, this memorandum will refer to the filing defendants as "Defendant."

[2] Defendant notes that the Georgia state appellate case relied on in the MDL order has since been overturned by the Georgia Supreme Court, which subsequently held that, before defense counsel can engage in ex parte discussions with a plaintiff's physician, the plaintiff must first consent.

[3] Defendant notes that the MDL Magistrate Judge did not allow *ex parte* contacts with physicians located in the following twelve (12) states: Arizona, Arkansas, Illinois, Indiana, Iowa, Minnesota, Mississippi, North Carolina, Pennsylvania, Rhode Island, Tennessee, and Washington. It appears that Defendant is stipulating that such contacts would not be permissible in this case and, therefore, is not moving for the court to permit such contacts in those states.

2

additionally imposed the restrictions outlined in <u>Stempler v. Speidell</u>, 100 <u>N.J.</u> 368 (1985).
Defendant notes that the MDL court did not require Defendant to provide plaintiffs' counsel with
written questions it intended to ask nor did the MDL court require Defendant to record the
interviews.[4]

Arguing that *ex parte* contacts are permitted in the majority of jurisdictions in which the
Plaintiffs in this case reside, Defendant asserts that, under <u>Stempler</u>, New Jersey law expressly
allows *ex parte* contacts with plaintiffs' treating physicians as a means of efficiently engaging in
discovery and trial preparation. <u>Stempler</u>, <u>supra</u>, 100 <u>N.J.</u> at 382; <u>see also</u>, <u>In re Diet Drug Litig.</u>,
384 <u>N.J. Super.</u> 546, 551-52, 554-56 (Law Div. 2005); <u>Smith v. Am. Home Prods. Corp.</u>, 372
<u>N.J. Super.</u> 105, 112 (Law Div. 2003). Defendant further explains that, by engaging in *ex parte*
communications with Plaintiffs' treating physicians, Defendant will be able to distinguish the
medical treaters whose testimony is essential to the Plaintiffs' claims from those who provided
mere ancillary care. According to Defendant, this will allow it to narrow the number of
physicians to depose and concentrate resources on physicians whose depositions will provide
better fact gathering for trial.

The purpose of <u>Stempler</u> conditions, as recognized by Defendants, is to strike a balance
between the physician-patient privilege and a party's right to conduct informal discovery.
Defendant maintains that, because both parties in a litigation are generally permitted to engage in
private communications with fact witnesses, the only reason to deny a defendant's *ex parte*

---

[4] Defendant also notes that Plaintiffs' Steering Counsel Committee ("PSC") in the MDL, which included
the same counsel representing plaintiffs in this case, "conceded that" *ex parte* contacts are allowed in New Jersey,
subject only to <u>Stempler</u> conditions and no further conditions.

Furthermore, Defendant states that PSC also "agreed" that *ex parte* contacts are permitted in the following
eleven (11) states in which fifty-three (53) of the plaintiffs in this case reside: Alabama, Kansas, Kentucky,
Maryland, Missouri, New Jersey, New York, North Dakota, Oklahoma, South Carolina, and Wisconsin.

And, although Plaintiffs objected, the MDL court permitted *ex parte* contacts in the following three (3)
states in which twenty-three (23) plaintiffs in this litigation reside: California, Massachusetts, and Ohio.

contacts with a plaintiff's treating physician is the physician-patient privilege. This privilege is, however, waived by a plaintiff upon initiating a personal injury suit and, thereby, placing his or her medical condition at issue. See N.J.S.A. § 2A:84A-22.4; see also In re Diet Drug Litig., 384 N.J. Super. at 560-61. Yet, despite the N.J.S.A. § 2A:84A-22.4 waiver, Stempler protects the patient's privilege by imposing several conditions on defense counsel's *ex parte* contacts with the physician. Under Stempler, defense counsel must:

(1)     provide treating physicians "with a description of the anticipated scope of the interview;"

(2)     "communicate with unmistakable clarity the fact that the physician[s'] participation in an ex parte interview is voluntary;" and

(3)     provide "plaintiffs' counsel with reasonable notice of the time and place of the proposed interviews."

[Stempler, supra, 100 N.J. at 382.]

The Stempler Court added that "plaintiff[s'] counsel should provide written authorization[s] to facilitate the conduct of interviews," but that "[i]f such authorizations are withheld unreasonably," the court may compel their production. Ibid.

Defendant further argues that the restrictions outlined in Stempler are inapplicable to non-privileged contacts with plaintiffs' physicians. Defendant contends that Stempler exists only to protect the physician-patient privilege and, therefore, is not triggered where the communication does not concern any privilege. Thus, according to Defendant, there is no need to advise Plaintiffs' counsel of any such communication and Plaintiffs' counsel has no right to object to such communication.

Defendant provides the following examples of matters outside the scope of Stempler and its protections: (1) contacting a plaintiff's physician merely to schedule a deposition; and (2) inquiring as to "matters other than the care and treatment of [P]laintiffs, such as [the physician's] experience with company sales representatives and [the physician's] views on general

4

causation." According to Defendant, it will "clearly and explicitly tell each physician –
immediately upon first contact and subsequently – that it does not want information about any
aspect of the care or treatment of a particular plaintiff and that the physician may not disclose
such information," and that, if the matter of the discussion begins to concern the care and
treatment of Plaintiffs, Defendant will comply with the Stempler requirements. (Def. Br. at 8-9).

### Plaintiffs' Opposition

In opposition, Plaintiffs contend that Defendant's motion is "largely moot" because core
discovery has now been completed; fact discovery is about to close; the bellwether case roster
has been reduced to four cases; and discovery in those four bellwether cases is proceeding.
Plaintiffs argue that, therefore, *ex parte* communications are not warranted here. Plaintiffs then
allege that Defendant "overstates" the MDL court's ruling, clarifying that: (1) the MDL court
only permitted *ex parte* contacts in those states that either do not have a physician-patient
privilege and/or do not have clear decisions or statutes which prohibit *ex parte* communications;
(2) the court imposed certain restrictions on "any" communications; and (3) New Jersey has
certain additional restrictions imposed under Stempler.[5] Plaintiffs also contend that *ex parte*
contacts should not be permitted because a physician-patient privilege exists in New Jersey.

If *ex parte* contacts are permitted by this court, Plaintiffs assert that such contacts should
be governed by Judge Garruto's July 10, 2006 Order, issued in In re HRT Litig., Mass Tort No.
266 (N.J. Super. Law Div. July 10, 2006). Plaintiffs list the following provisions from Judge
Garruto's Order that Plaintiffs believe should be adopted by this court and reflected in any order
allowing *ex parte* contacts:

---

[5] In addition to the provisions required by Stempler, some New Jersey trial courts have imposed further
restrictions on *ex parte* contacts, see, e.g., In re HRT Litig., Mass Tort No. 266, at 2 (N.J. Super. Law Div., July 10,
2006) (slip op.).

(1)     Defendant must provide Plaintiffs' counsel with 21 days notice of any interviews;

(2)     Defendant must provide Plaintiffs with a list of proposed question;

(3)     Defendant must produce all records and materials pertaining to Defendant's contacts with, and materials provided to, the physician, identified in Plaintiffs' authorizations; and

(4)     the Order permitting *ex parte* contacts will not apply to any states which do not compel plaintiffs to consent to such interviews.

Plaintiffs argue that these provisions, and the others set forth in Judge Garruto's Order, strike an appropriate balance between Plaintiffs' privacy expectations concerning their health care treatment and Defendant's access to witnesses.

Plaintiffs also take issue with Defendant's assertion that Stempler applies only to protected and privileged matters – an interpretation that, in Plaintiffs' view, renders Stempler ineffectual. According to Plaintiffs, by permitting Defendant to contact Plaintiffs' physicians without adhering to the restrictions outlined in Stempler, Defendant would have "unbridled free reign to contact all of the treating physicians without any method of holding [Defendant] accountable for its conversations with these treaters." (Pl. Opp. at 8).

Lastly, Plaintiffs criticize Defendant's reference to the MDL, arguing: (1) the federal court is subject to different precedent than this court; (2) there were more than four active cases for scheduling of depositions in the MDL; (3) "once the orders were issued, failure to make a motion should not be construed as a waiver here;" (4) the MDL excreised discretion; and, (5) because Erie does not apply in New Jersey, this court should apply and administer one set of expectations on the parties for the sake of efficiency and clarity. (Pl. Opp. at 8). For these reasons, Plaintiffs urge that this court deny Defendant's motion.

6

**Defendant's Reply**

Defendant argues that its motion applies to the entire inventory of 151 pending cases in this mass tort, not just the initial bellwether cases and, therefore, is not moot. Even as to the four cases where formal discovery is almost complete, Defendant contends that informal discovery is useful for trial preparation in the four bellwether cases.

Defendant then notes that the MDL did not "severely limit[] Novartis' ability to engage in *ex parte* communications," but instead imposed the restrictions described in Stempler for New Jersey residents and for plaintiffs whose treating physicians were located in other jurisdictions in which *ex parte* contacts are available and required Defendant only to inform all physicians that (1) participation in *ex parte* interviews is voluntary and (2) they may request plaintiffs' counsel to participate. Defendant does not oppose this court's entry of such "reasonable guidelines" here.

Finally, Defendant asserts that there is no reason to restrict *ex parte* contacts beyond the conditions in Stempler, as such additional conditions "would increase the cost and defeat the purpose of conducting an informal interview." (Def. Reply at 6-7). Defendant further notes that Plaintiffs' counsel in the MDL did not take the position that additional restrictions be imposed by the MDL, nor did Plaintiffs suggest that the laws of other jurisdictions in which *ex parte* contacts are permitted require the imposition of additional safeguards. Accordingly, Defendant concludes that this court should permit *ex parte* interviews without additional constraints beyond Stempler.

## Plaintiffs' Supplemental Opposition

At the Case Management Conference held on September 23, 2009. Plaintiffs requested permission to file a supplemental brief. In their supplemental brief, Plaintiffs contend that this court should ban *ex parte* interviews of Plaintiffs' treating physicians by defense counsel. In the alternative, Plaintiffs argue that, if *ex parte* interviews are permitted, this court should closely monitor and impose strict conditions on such contacts to prevent any inadvertent disclosure of patients' medical information.

Plaintiffs suggest that complications have arisen from the standard medical authorizations that have been used to implement Stempler conditions. In addition, Plaintiffs note that the Stempler Court indicated that *ex parte* interviews may not be appropriate in "extreme cases," and that mass torts have been classified as such.[6]

Plaintiffs then identify a number of opinions that have either refused to allow *ex parte* interviews or have imposed additional safeguards beyond those declared in Stempler. See Smith, supra, 372 N.J. Super. at 136 (Judge Corodemus refused to permit *ex parte* interviews and ordered the defendants to proceed with formal depositions). Additionally, Plaintiffs rely on a series of rulings and opinions arising out of the Diet Drug mass tort, in which the judges handling the matter determined that Stempler interviews would not be allowed, noting the difficulties that would arise from trying to control and administer interviews for such a large volume of cases. See Bonnanno v. American Home Products (no citation provided by Plaintiffs' counsel). Judge Walsh, while permitting the defendant to conduct informal discovery, imposed

---

[6] Neither the New Jersey Supreme Court nor any other New Jersey court has ruled that *all* mass tort cases are necessarily "extreme cases." Judge Corodemus first applied the term "extreme" to a Law Division mass tort case in Smith, supra, 372 N.J. Super. 105, holding that Smith, in particular, was an "extreme" case under Stempler. In categorizing Smith as such, Judge Corodemus considered a number of specific factors beyond the case's mere designation as a mass tort. Further, although Judge Walsh broadly referred to mass tort cases as "extreme" in In re Diet Drug Litig., supra, he did not define the term "extreme." 384 N.J. Super. at 566.

various safeguards beyond those required by Stempler. See In re Diet Drug Litig., supra, 384 N.J. Super. at 564 (recording and transcribing of all the defendants' *ex parte* interviews with plaintiffs' physicians and providing a copy of the transcript to plaintiffs' counsel at the time of the deposition).

Judge Wilson, who succeeded Judge Walsh in managing the Diet Drug litigation, subsequently denied defendants' motion seeking *ex parte* interviews, focusing on the uniqueness of mass tort cases. According to Judge Wilson:

> [i]n mass tort dockets, the alleged efficiency of allowing Stempler interviews does not outweigh the impracticality of doing so. The court does not have unlimited judicial resources nor unlimited time. To permit these interviews opens a "Pandora's Box." Litigation over the litany of potential problems (i.e., length of notification of plaintiffs' doctors, valid consent disputes, valid authorization submission on HIPAA, etc.) will severely limit the court's ability to move these cases to trial. The court finds it important to note that such disputes occurred over just the handful of Stempler interviews which Judge Walsh did allow.
>
> [In re Diet Drug Litig., No. L-6016-04, p. 5 (N.J. Super. Law Div. Jan 13, 2006).]

Judge Wilson expressly rejected the idea that Stempler interviews would lead to simpler, cheaper, and more efficient discovery in the context of mass tort litigation. Judge Wilson wrote:

> [a]llowing Stempler interviews to be conducted in the current litigation will only open the "floodgates of litigation" in terms of an abundance of motion practice. This motion practice will arise out of the difficulty of overseeing the *ex parte* interviews on the part of the court.
>
> [Id. at p. 4.]

Plaintiffs then cite Judge Higbee's November 17, 2004 opinion in In re Vioxx, Case Code 619 (N.J. Super. Law Div.). Judge Higbee also barred defendants from conducting *ex parte* interviews with plaintiffs' physicians based on the concern that such informal discovery methods would not result in cheaper, more efficient discovery in the context of that mass tort. Judge Higbee, in her opinion, explained that, to the contrary, (i) some of the doctors would insist on

9

having their own lawyers at the interviews, (ii) the doctors might have to be advised of possible liability for HIPAA violations and of the right to have their own counsel present, and (iii) most of the doctors likely would be deposed even if there were Stempler interviews.  In re Vioxx, supra, Case Code 619, p. 8.

Lastly, Plaintiffs refer this court to the HRT litigation in Middlesex County.  Judge Garruto's July 10, 2006 Order in the HRT litigation was discussed at length in Plaintiffs' initial Opposition brief.  (See Pl. Opp. at 5).

Relying on Stempler and other cited judicial decisions, Plaintiffs request that this court prohibit *ex parte* contacts due to manageability issues and the absence of any benefit from such informal discovery methods.  Plaintiffs explain that the large number of plaintiffs involved in this litigation will create manageability difficulties for this court with regard to the medical authorizations that must be specifically tailored for each plaintiff and compliant with HIPAA's privacy requirements.  In light of the fact that there are at least three physician interviews per case and about 150 pending cases in this litigation, Plaintiffs argue that it will be impossible to monitor the informal interviews to ensure that there are no inadvertent disclosures of Plaintiffs' confidential medical information.

Based on the MDL, Plaintiffs believe that Defendant will conduct the same number of formal depositions regardless of whether Defendant is permitted to conduct informal discovery.  Thus, Plaintiffs opine that the primary purpose of Stempler – to eliminate the need for formal depositions of witnesses – will not be advanced in this case.  Therefore, Plaintiffs urge this court to prohibit Defendants from conducting *ex parte* interviews with Plaintiffs' treating physicians.

If this court does permit *ex parte* contacts, Plaintiffs, in the alternative, urge this court to impose conditions beyond those identified in Stempler, and even beyond those identified in the HRT litigation. Specifically, Plaintiffs request that this court impose the following conditions:

1. Novartis must provide 21 days advance notice to plaintiff's counsel of any interview;
2. Novartis must provide to the physician and plaintiff's counsel a written list of the questions it intends to ask, also 21 days before the scheduled interview;[7]
3. Follow-up on the listed questions should not be permitted;
4. The interviews must be recorded, with the recordings to be transcribed and provided to plaintiff's counsel within 30 days of the interview or, if the physician is deposed, at least 5 days prior to the deposition, whichever is earlier;
5. The Order shall apply only to New Jersey plaintiffs.

Plaintiffs assert that, if permitted, *ex parte* interviews should not lead to *ex parte* follow-up conversations. Plaintiffs explain that Stempler does not explicitly permit post-interview communications between defense counsel and plaintiffs' physicians and state that such unfettered access would cause further problems. Therefore, Plaintiffs maintain, any communications between defense counsel and plaintiffs' treating physicians must be limited to pre-deposition contact.

## Defendant's Supplemental Reply

Defendants address Plaintiffs' reliance on several unpublished New Jersey cases that deny *ex parte* contacts in mass tort matters. Defendant contends that this mass tort matter is distinguishable from all of the mass tort cases cited by Plaintiffs. First, Defendant quotes language from the Smith case stating that its holding "does not imply that Stempler is not available as an informal discovery tool for mass tort cases." Smith, supra, 372 N.J. Super. at 136.

---

[7] Plaintiffs also assert that the "basic Stempler disclosure requirements" would require the form of authorization state that: "(a) the physician's participation is entirely voluntary; (b) the plaintiff-patient has not requested the physician to participate in the interview; (c) the court has not requested the physician to participate in the interview."

Defendant argues that the "limited holding" of Smith is not applicable to the case at bar because, like In re Diet Drug Litig., supra, 384 N.J. Super. at 564-66, there are no docket management issues present here.

Defendant further asserts that this mass tort is not an "extreme" case and is distinguishable from Smith because Defendant "has made its request for *ex parte* interviews early in discovery and permitting such interviews will not impact the schedule in this litigation." (Def. Supplemental Reply at 3). Defendant adds that formal fact discovery has closed in only four cases, which are scheduled for trial in March 2010, and almost 150 cases remain in which no depositions have occurred.

Defendant then addresses the unpublished opinions relied on by Plaintiffs, noting that this court is not bound by these opinions. Further, Defendant believes that the docket management issues and other concerns raised by the courts in those cases are not present here. As to In re Diet Drug Litig., supra, No. L-6016-04, Defendant responds by noting that the MDL allowed *ex parte* interviews in the hundreds of cases in that litigation and that "there have been no discovery disputes on that issue in the federal litigation." (Def. Supplemental Reply at 4).

In response to Plaintiffs' reliance on In re Vioxx, supra, Case Code 619, Defendant asserts that, whereas in In re Vioxx, defense counsel for Merck conceded that formal depositions would "almost always be required even if there were Stempler interviews," (Def. Supplemental Reply at 5), NPC maintains that it has used *ex parte* contacts in the MDL to eliminate unnecessary depositions. While Defendant admits that it will likely depose each plaintiff's prescribing oncologist, primary dentist, and primary oral surgeon, it claims that there are additional peripheral treaters whose depositions can be avoided through *ex parte* communications. Defendant further asserts that, "[a]bsent *ex parte* interviews, [it] has no choice

but to take these physicians' depositions despite their peripheral role in the case to determine the basis for their causation opinions. . . ." (Def. Supplemental Reply at 6).

Defendant further distinguishes this litigation from In re Vioxx by explaining that, in Vioxx, that court was concerned with potential disputes over the "proper scope for each interview." According to Defendant, in this litigation, the use of Plaintiff-authorized broad medical and mental health releases place the full medical history of each plaintiff within the scope of said interviews. In other words, Defendant explains, Plaintiffs have failed to indicate what confidential medical information would be within the ambit of disputable information.

Last, for the sake of fundamental fairness and due process, Defendant asks that Plaintiffs not be permitted more liberal access to Plaintiffs' treating physicians than Defendant is permitted. Fundamental fairness includes leveling the playing field with respect to access to important fact witnesses, as well as the notion that no party has a proprietary right to any witness or any evidence that that witness may have. Accordingly, Defendant requests that, if the court prohibits Defendant from having *ex parte* contacts with Plaintiffs' treating physicians, Plaintiffs' counsel should be denied such informal access as well.

## Conclusion

After consideration of the parties' written submissions and counsel having agreed to submit the matter to this court "on the papers," this court denies Defendant's Motion for an Order Permitting *Ex Parte* Contacts with Plaintiffs' Treating Physicians. Both parties shall be required to proceed directly to deposition of Plaintiffs' treating physicians.

Under Stempler, New Jersey law expressly allows *ex parte* contacts with plaintiffs' treating physicians as a means of efficiently engaging in discovery and trial preparation. Stempler, supra, 100 N.J. at 382; see also, Smith, supra, 372 N.J. Super. 105, 112; In re Diet

Drug Litig., supra, 384 N.J. Super. 546, 551-52, 554-56. To protect the physician-patient privilege while still promoting a party's right to conduct informal discovery, the Stempler court imposed a number of "procedural safeguards" that limit defense counsel's *ex parte* contacts with the physician. Under Stempler, New Jersey courts may, and have, imposed further conditions for *ex parte* interviews. Id. at 383 ("permit[ting] trial courts and counsel to fashion appropriate procedures in unusual cases without interfering unnecessarily with the use of personal interviews in routine cases"). See, e.g., In re Diet Drug Litig., supra, 384 N.J. Super. at 564-66 (employing additional procedural safeguards to insure HIPAA compliance); In re HRT Litig., supra, Mass Tort No. 266, at 2.

While *ex parte* contacts are permitted under Stempler, the Supreme Court clearly noted that *ex parte* contacts are not mandatory in all cases. See Stempler, supra, 100 N.J. at 383. Stempler gave trial courts the discretion to prohibit the use of *ex parte* contacts, explaining that, in certain instances, the court may require depositions in accordance with formal discovery rules. Ibid. (trial court supervision "can take the form of an order . . . requiring defendant's counsel to proceed by deposition," and allowing "trial courts and counsel to fashion appropriate procedures in unusual cases"); see also, Smith, supra, 372 N.J. Super 105, 132 (noting the Stempler Court's reference to "extreme cases" in vesting discretion with the trial court).

Although Stempler did not articulate the kinds of cases warranting adherence to formal discovery rules, this issue was addressed by Judge Corodemus in Smith, a mass tort litigation involving 300 individual cases. Smith, supra, 372 N.J. Super. at 133.[8] Judge Corodemus held that Smith presented the kind of "extreme case" mentioned in Stempler that necessarily required more formal discovery. Smith, supra, 372 N.J. Super. at 133-34.

---

[8] While this court is not bound by the published decision of another trial court/mass tort judge, this court recognizes Judge Corodemus' service as the mass tort judge in Middlesex County for many years and values her insight and experience on mass tort litigation matters.

Mindful of Stempler's explicit authorization for plaintiffs to "seek and obtain a protective order if under the circumstances a proposed *ex parte* interview with a specific physician threatens to cause . . . substantial prejudice to plaintiff," Stempler, supra, 100 N.J. at 383, Judge Corodemus explained that "it would be improvident to cease discovery to hold extensive hearings as to what constitutes 'pertinent' medical information and/or to cite all 'more stringent' statutory privacy constraints that may apply to *ex parte* interviews" in each of the 300 pending cases. Smith, supra, 372 N.J. Super. at 133. Judge Corodemus concluded that "for nearly 300 mass tort cases with a prospective four to ten medical personnel for each. . . ," and bearing in mind the increased privacy implications of HIPAA, the risk of wrongful disclosure of information was likely in a mass tort litigation. Smith, supra, 372 N.J. Super. at 134; cf. In re Diet Drug Litig., supra, 384 N.J. Super. at 566 (agreeing with Judge Corodemus that mass tort cases are "'extreme' cases, requiring special management"). Accordingly, Judge Corodemus held that the "inherent[] complex[ity]" of mass tort cases and "the magnitude of the potential intricacies of entirely redoing the discovery process to include informal discovery with HIPAA-complaint authorizations . . . [render] the most practical recourse . . . to deny the use of Stempler interviews." Smith, supra, 372 N.J. Super. at 136.

Other New Jersey mass tort judges facing the same practical concerns as Judge Corodemus in Smith have come to the same conclusion regarding *ex parte* contacts with plaintiffs' treating physicians. In the Vioxx litigation, Judge Higbee also barred defendants from conducting *ex parte* interviews with plaintiffs' physicians. Judge Higbee explained that the informal discovery method would amount to a "practical nightmare" because, "given the large number of cases [193 plaintiffs] involved in this mass tort and the even larger number of doctors involved, the court would be unduly burdened by hearings to determine the permissible scope of

15

each interview." Judge Higbee further explained that, in a mass tort litigation the size of Vioxx, the purpose of *ex parte* interviews – "to allow a simpler, cheaper, more efficient and informal means of discovery than depositions" – would not be achieved. Ibid. (noting that *ex parte* interviews sometimes involve physicians' own attorneys, highlighting the lack of efficiency and informality of such interviews).

Likewise, in In re Diet Drug Litig., supra, No. L-6016-04, Judge Wilson denied defendant's motion to conduct *ex parte* interviews in a mass tort litigation for reasons similar to that of Judges Corodemus and Higbee. Judge Wilson explained that allowing *ex parte* contacts in that litigation would be contrary to the design of Stempler because it would open the "'floodgates of litigation' in terms of an abundance of motion practice" that would "arise out of the difficulty of overseeing the *ex parte* interviews on the part of the court." Id. at 6. Judge Wilson further explained that, "[i]n mass tort dockets, the alleged efficiency of allowing Stempler interviews does not outweigh the impracticability of doing so," referencing the potential disputes likely to occur – "length of notification of plaintiffs' doctors, valid consent disputes, valid authorization submissions on HIPAA. . . ." Id. at 7.

Similarly, a number of federal MDL cases have faced practical difficulties with *ex parte* contacts and have recognized the incongruous affect that this informal discovery method can have on pretrial efficiency. For example, in In re Vioxx Products Liability Litigation, 230 F.R.D. 473 (E.D. La. 2005), an Eastern District of Louisiana MDL, Judge Fallon prohibited defense counsel from initiating *ex parte* contacts with plaintiffs' physicians after initially ruling in In re Vioxx Products Liability Litigation, 230 F.R.D. 470 (E.D. La. 2005), that both parties were permitted to engage in *ex parte* contacts. Judge Fallon explained that the "practical effect [of his initial ruling] created unintended consequences that can cause more problems than it

16

sought to solve." In re Vioxx, 230 F.R.D. at 475; see also, e.g., In re Kugel Mesh Hernia Repair Patch Litig., 2008 U.S. Dist. LEXIS 63475 (D.R.I. Jan. 22, 2004) (as a "practical solution of the issue," denying request for *ex parte* contacts); In re Baycol Products Litigation, 219 F.R.D. 468 (D. Minn. 2003) (denying request for *ex parte* treating physician communications in Baycol cholesterol drug MDL); Benally v. United States, 216 F.R.D. 478 (D. Ariz. 2003) (denying request for *ex parte* treating physician communications in FTCA medical malpractice case).

While this court is not legally bound by the mass tort opinions of the state court judges (both published and unpublished) or the federal MDL cases cited above, this court stands to benefit from the guidance of similarly-situated judges faced with the same practical concerns currently at issue in this litigation. Although there is a general presumption in New Jersey that defendants should be permitted to initiate *ex parte* contacts with plaintiffs' treating physicians, the unique set of practical concerns presented in mass tort cases should not be underappreciated.

Although New Jersey allows *ex parte* contacts with plaintiffs' treating physicians, such informal discovery is not required under Stempler. Stempler, supra, 100 N.J. at 383. The Zometa/Aredia matters are a complex mass tort involving over 150 plaintiffs at the present time (and the number of filed cases continues to grow), each with several treating physicians, such that the Zometa/Aredia matters clearly fall under category of "unusual" or "extreme" cases, as mentioned in Stempler and Smith. Thus, this court has the discretion to condition or prohibit the use of *ex parte* contacts. Ibid.

This court lacks sufficient judicial resources and time to process the inevitable motions for protective orders that are likely to be filed in this action. Plaintiffs, in filing motions for protective orders, are entitled to a delay in the discovery process until this court can schedule hearings concerning, e.g., what constitutes "pertinent" medical information. Such a procedure

17

fails to promote a simpler, cheaper, more efficient, and informal means of discovery and, hence, would be contrary to the primary purpose of allowing *ex parte* contacts.

Further, this court is aware that both parties should have the same right of access to all non-party witnesses, including Plaintiffs' own treating physicians, see Stempler, supra, 100 N.J. at 380 (quoting Lazorick v. Brown, 195 N.J. Super. 444, 456 (App. Div. 1984)), and that no party has a proprietary right to any witness's evidence, see Stempler, supra, 100 N.J. at 381 (quoting Doe v. Eli Lilly & Co., 99 F.R.D. 126, 128 (D.D.C. 1983)). Accordingly, in the interest of fairness to all, no party – Plaintiffs nor Defendants – shall engage in *ex parte* contacts with Plaintiffs' treating physicians or influence the deposition or trial testimony of Plaintiffs' treating physicians. To hold otherwise would facilitate the potential for either counsel to influence Plaintiffs' treating physicians. To ensure that all parties have the same right of access to all non-party fact witnesses, this court shall prohibit the parties from engaging in *ex parte* contacts with Plaintiffs' treating physicians.

While this court was only recently assigned to handle mass tort litigation matters, the court recognizes and appreciates the coordinated efforts shown by counsel in the handling of these large and complex matters. The herculean task of managing these cases toward trial falls not just upon counsel for the parties, but the court and its staff as well. It is the opinion of this court that the limited resources of all involved are best spent in preparing cases for trial and not debating the true value of informal discovery or the filing of motions to compel and/or protect parties regarding informal discovery.

Accordingly, this court denies Defendant's Motion for an Order permitting *Ex Parte* Contacts with Plaintiffs' Treating Physicians. All parties shall proceed by way of formal

deposition of Plaintiffs' treating physicians.  A "filed" copy of the Order memorializing this

court's decision is attached.

_____
Jessica R. Mayer, J.S.C.

# Exhibit D





E-SERVICE
54644340
Dec 03 2013
03:58PM
File & ServeXpress

## NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE COMMITTEE ON OPINIONS

# SUPERIOR COURT OF NEW JERSEY
## COUNTIES OF
## ATLANTIC AND CAPE MAY

**CAROL E. HIGBEE, P.J.Cv.**

1201 Bacharach Boulevard
Atlantic City, NJ 08401-4527
(609) 594-3396

## MEMORANDUM OF DECISION ON MOTION
### Pursuant to Rule 1:6-2(f)

**CASE:**      **In re Pelvic Mesh/Gynecare Litigation**

**DOCKET #:**      **ATL-L-6341-10**

**DATE:**      **December 3, 2013**

**MOTIONS:**      **Motion for Protective Order/Motion to Compel**

**ATTORNEYS:**      **Adam M. Slater, Esq. – Plaintiffs**
                        **Kelly S. Crawford, Esq. – Defendants**
                        **Christy Jones, Esq. – Defendants**

Having carefully reviewed the papers submitted and any response received, I have ruled on the above Motions as follows:

### Statement of Facts and Procedural History

This Motion for Protective Order and Motion to Compel comes before the court by motions filed on behalf of Defendants Ethicon and Johnson & Johnson on October 31, 2013.

*"The Judiciary of New Jersey is an equal Opportunity/Affirmative Action Employer"*

Defendant has requested that the court prohibit plaintiffs' counsel from communicating ex parte with plaintiffs' treating physicians; or alternatively, limit the scope of any ex parte communications by plaintiffs' counsel with a plaintiffs' treating physician solely and exclusively to the facts constituting the treatment that the given treating physician provided to the given plaintiff and the plaintiff's medical condition, and prohibiting plaintiffs' counsel from providing to and/or discussing with plaintiffs' treating physicians the contents of any documents produced by defendants in this action.

Additionally, defendants requested that the court order that plaintiffs immediately (a) identify the names of all treating physicians with whom communications have taken place; (b) identify the time, place and duration of all such communications; (c) identify each person who participated in the communications; and (d) identify and produce copies of all documents, litigation materials, transcripts, videos, communications, or other materials, shared in any way with any of plaintiffs' treating physicians.

On October 31, 2013, defendants filed this Motion for Protective Order and Motion to Compel. In response to these motions, plaintiffs filed a Cross-Motion for Protective Order and an Opposition to defendants' Motion for Protective Order.

### **Legal Analysis**

Motion for Protective Order

Generally any party can contact any witness and discuss facts and show the witness whatever literature or documents they would like the witness to review.

"Under <u>Stempler</u>, New Jersey law expressly allows ex parte contacts with plaintiffs' treating physicians as a means of efficiently engaging in discovery and trial preparation." <u>Gaus v.</u>

Novartis Pharmaceuticals Corp., No. MID-L-007014-07-MT, at *13 (N.J. Super. Law. Div. Oct. 29, 2009) (citing Stempler v. Speidell, 100 N.J. 368, 382 (1985)). The Court in Stempler stated that "personal interviews . . . are an accepted, informal method of assembling facts and documents in preparation for trial. Their use should be encouraged as should other informal means of discovery that reduce the cost and time of trial preparation." Stempler, 100 N.J. at 382. The issue in Stempler was that while both parties usually are free to communicate with witnesses prior to trial, treating physicians are not usually willing to talk to anyone without authorization from their patients.  In the Stempler case, the plaintiff refused to authorize the doctor to discuss the patient ex parte with defense counsel.  The court held that the plaintiff had to allow such contact with specific conditions.  However, "[w]hile ex parte contacts are permitted under Stempler, the Supreme Court clearly noted that ex parte contacts are not mandatory in all cases. Stempler gave trial courts the discretion to prohibit the use of ex parte contacts, explaining that, in certain instances, the court may require depositions in accordance with formal discovery rules." Gaus, No. MID-L-007014-07-MT, at  *14, (citing Stempler, 100 N.J. at 383). Under Stempler, depositions can be required when "under the circumstances a proposed ex parte interview with a specific physician threatens to cause such substantial prejudice to [the opposing party] as to warrant the supervision of the trial court." Stempler, 100 N.J. at 382.

Plaintiffs claim in their Opposition that there is no precedent limiting a plaintiff's right to explore substantive issues with treating physicians. However, several courts handling mass tort cases similar to the case at bar have limited plaintiffs' ex parte communications with treating physicians to discussion of the facts, prohibiting ex parte discussions involving litigation theory. For example, in In re Ortho Evra Products Liability Litigation, the court entered an order allowing plaintiffs' counsel to meet ex parte with the treating physicians to discuss the

physicians' records, course of treatment, and related matters, and prohibiting plaintiffs' counsel

from discussing with treating physicians liability issues or theories, product warnings, defendant

research documents, or related materials. 2010 WL 320064, at *2 (N.D. Ohio Jan. 20, 2010).

Similarly, in In Re: Chantix (Varenicline) Products Liability Litigation, the court ruled:

> [a]lthough plaintiffs' counsel is clearly permitted by law to have ex parte
> communications with their clients' treating physicians, . . . such
> communications are limited to the individual care of the individual
> plaintiffs, such as the plaintiffs' treatment, medical records and
> conversations with their health care providers. Plaintiffs' counsel shall not
> discuss defendant's internal documents with plaintiffs' health care providers
> outside of a deposition or other on the record setting.

No. 2:09-CV-2039-IPJ, at *7 (N.D. Al. June 30, 2011). Additionally, in In re Nuvaring Products

Liability Litigation, the court limited plaintiffs' communications with treating physicians to "the

particular plaintiff's medical condition at issue in the current litigation." 2009 WL 775442, at *2

(E.D. Mo. March 20, 2009).

    In this case, plaintiffs' counsel's interviews with the treating physicians have included

plaintiffs' counsel sharing with the physicians documents produced by defendants in discovery in

this lawsuit. Plaintiffs maintain the defendants sales representatives have in the past, and

continue now to present misleading information to the physicians and they need to show the

doctors materials they have not seen.

    Treating physicians are a unique type of witness. They are fact witnesses who can

describe the basic facts such as medical history symptoms, the type of treatment given and the

patient's response, but they also give expert testimony even when the treating doctors are not

retained as experts. Physicians are frequently allowed to give opinion testimony even when not

retained as experts. For example, by stating what their diagnosis is they are stating a fact, but

also giving a medical opinion. When asked, they frequently are allowed under the Rules of

4

Evidence to give opinions on causation.  In cases involving the claim that the defendant manufacturer failed to properly disclose information about the risks of a product, they will be asked what they knew about the product and why they used the product.  They are often asked if they still use the product.  In a product liability case involving the use of a drug or a medical device, the questioning about the doctors knowledge and use of the product in question is much more complicated than in most personal injury cases.

The plaintiffs argue that the doctors were and are being educated by the defendants about the pelvic mesh products involved in the litigation.  There is no doubt that physicians are regularly visited by pharmaceutical product detail representatives who explain the risks and benefits of the defendants' products to doctors.  The plaintiffs claim the defendant has given doctors a misleading picture of pelvic mesh products and they want to be able to give the doctors scientific literature, studies, and in some cases, internal documents of the defendants that present a different view of the pelvic mesh products.

On a larger scale, the plaintiffs argue they have a right to "educate" the medical community about the risks of pelvic mesh products by providing them with information that has been wrongfully concealed from them by the defendants.  They argue that there is a public benefit to product liability litigation that can improve consumer safety.  The U.S. Supreme Court in the landmark case of <u>Levine v. Wyeth</u>, 555 <u>U.S.</u> 555 stated "state law remedies further consumer protection... ."

The defendant counters that in preparation for depositions, the plaintiffs' counsel are the ones who present one side of the story to doctors that may impact their testimony unfairly without the defendants being able to counter the information given by plaintiffs' counsel to the witnesses.

This is a difficult decision because there is merit to the arguments on each side.  The primary goal of the court is to ensure that no witnesses are unduly swayed by either side to modify their testimony.  The court orders that plaintiffs' counsel shall limit the scope of ex parte communications with plaintiffs' treating physicians to discussions of the facts of the treatment that the given treating physician provided to the given plaintiff and the plaintiff's medical condition and medical history.  They can discuss diagnosis, prognosis and causation as it relates to the particular patient/plaintiff.  Plaintiff's counsel may not have ex parte discussions with the treating doctors about (1) their understanding of the risks and benefits of pelvic mesh products except as to what they knew and understood about when they used a particular product on the particular patient; (2)  their past and present use of pelvic mesh products in general; (3)  the risk and benefit information they received from agents or sales representatives of the defendants; (4) scientific literature, seminars, warnings or other tools the doctor used to obtain knowledge about the risks and benefits of the products; (5) theories of liability of the plaintiffs in the pelvic mesh litigation.

The plaintiffs' counsel are also prohibited from showing the treating doctor any depositions or internal documents produced by defendants or scientific studies or literature prior to the deposition of the treating doctor although they may show these documents to treating doctors and question them at their depositions about these materials if the questions are relevant to the case.  These restrictions shall not apply to plaintiff's counsel's ex parte communications with plaintiffs' treating physicians whom plaintiffs have retained as expert witnesses.

Defendants' sales people, detail people or other representatives of the defendant are prohibited from discussing with any treating physicians prior to their depositions the litigation or defense theories in the litigation or any pelvic mesh product they are not currently selling or

attempting to sell to the doctor. This limitation does not apply to treating physicians who have

been retained as experts. All pre-deposition communications by plaintiffs' counsel shall be

limited to the facts of the specific patient's history and treatment, the understanding of the doctor

of the products used on the patient at the time they were used and opinions on prognosis,

diagnosis and causation during the doctor treatment of the patient/plaintiff.

Motion to Compel

Defendants seek to compel plaintiffs to (a) produce the names of all treating physicians

with whom ex parte communications have taken place; (b) identify the time, place and duration

of all such ex parte communications; (c) identify each person who participated in the ex parte

communications; and (d) identify and produce copies of all documents or other materials that

plaintiffs' counsel shared with plaintiffs' treating physicians.

"The work product doctrine . . . protects from disclosure those documents and other

tangible things that a party or a party's representative prepares in anticipation of litigation."

Laporta v. Gloucester Cty. Bd. of Chosen Freeholders, 340 N.J. Super. 254, 259 (App. Div.

2001). "[A] party may obtain discovery of [materials] prepared in anticipation of litigation . . .

only upon a showing that the party seeking discovery has substantial need of the materials in the

preparation of the case and is unable without undue hardship to obtain the substantial equivalent

of the materials by other means." R. 4:10-2(c). "[A] statement or other document will be

considered to have been prepared in anticipation of litigation if the 'dominant purpose' in

preparing the document was concern about potential litigation and the anticipation of litigation

was 'objectively reasonable.'" Miller v. J.B. Hunt Transport, Inc., 339 N.J. Super. 144, 150

(App. Div. 2001).

7

Defendants request that this court order plaintiffs to reveal the names of the treating physicians with whom plaintiffs' counsel has engaged in ex parte communications; the time, place, and duration of the ex parte communications; and the names of each person who participated in the ex parte communications. This information constitutes protected work product, and it therefore does not have to be disclosed to defendants. Plaintiffs' counsel's ex parte communications with the physicians were in anticipation of litigation. The "dominant purpose" in communicating with the treating physicians was the concern about potential litigation. The anticipation of litigation was "objectively reasonable" because plaintiffs had already filed their claims at the time of the communications.

The exception to the work product doctrine does not apply because although defendants likely have substantial need of this information in the preparation of their case, they are able without undue hardship to obtain the substantial equivalent of the information by other means. Defendants can depose the treating physicians and inquire as to whether they engaged in ex parte communications with plaintiffs' counsel. If the treating physicians answer affirmatively, then defendants can ask for the location, time, and duration of the ex parte communications, and the names of each person that participated in the ex parte communications.

The documents and other materials that plaintiffs' counsel shared with the treating physicians during ex parte communications constitute protected work product, and therefore these materials do not have to be disclosed to defendants. Other courts have found that when an attorney sifts through a myriad of documents and selects certain documents to show to a witness, the selection of documents is entitled to work product protection. In Sporck v. Peil, the court stated that "[i]n selecting and ordering a few documents out of thousands counsel could not help but reveal important aspects of his understanding of the case. Indeed, in a case . . . involving

extensive document discovery, the process of selection and distillation is often more critical than pure legal research." 759 F.2d 312, 316 (3d Cir. 1985). "Proper preparation of a client's case demands that [an attorney] assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." Id. Additionally, in Mercator Corp. v. United States, the court stated that "[t]he principle underlying the work product doctrine – sheltering the mental processes of an attorney as reflected in documents prepared for litigation – is not generally promoted by shielding from discovery materials in an attorney's possession that were prepared neither by the attorney nor his agents." 318 F.3d 379, 384 (2d Cir. 2003). However, "where a request is made for documents already in the possession of the requesting party, with the precise goal of learning what the opposing attorney's thinking or strategy may be, even third-party documents may be protected." Id. at 385.

Plaintiffs' counsel showed these documents and other materials to the treating physicians because of their anticipation of litigation. The exception to the work product doctrine does not apply because although defendants likely have substantial need of the materials in the preparation of the case, they are able without undue hardship to obtain the substantial equivalent of the materials by other means. Defendants can depose the treating physicians and ask them which documents and other materials plaintiffs' counsel showed them during their ex parte communications with plaintiffs' counsel.

Defense counsel shall submit the appropriate Order.

CAROL E. HIGBEE, P.J.Cv.

# Exhibit E

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

MAR 2 0 2015

Sherri R. Carter, Executive Officer/Clerk
By: Roxanne Arraiga, Deputy

# SUPERIOR COURT OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| COORDINATION PROCEEDING SPECIAL TITLE (Rule 2.550)<br><br>ACTOS PRODUCT LIABILITY CASES | LASC Case No: BC411687<br><br>COURT'S RULING AND ORDER RE: DEFENDANTS' MOTION TO REGULATE *EX PARTE* CONTACT |
| THIS DOCUMENT RELATES TO:<br><br>*Reuven Bar Yotam, et al. v. Takeda Pharmaceuticals North America, Inc., et al., San Francisco Superior Court, Case No. CGC-12-519107* | Hearing Date: February 10, 2015 |

## I.

## BACKGROUND

In this coordinated litigation, Plaintiffs have sued the Defendants, manufacturers of the prescription drug Actos (the trade name for pioglitazone HC1 tablets), which is used to treat type 2 diabetes mellitus. Plaintiffs allege that they developed bladder cancer from ingesting the drug.

The Plaintiffs in these cases allege various theories for products liability (including claims for negligence, strict liability – failure to warn, strict liability – defective design, breach of the implied warranty for a particular purpose, breach of the implied warranty of merchantability, violation of the Unfair Competition Law ("UCL") and False Advertising Law ("FAL"), deceit by concealment, negligent misrepresentation, and violation of the Consumer Legal Remedies Act ("CLRA")).

The Takeda Defendants and Defendant Eli Lilly (collectively, "Defendants") have brought the instant motion to regulate the Plaintiffs' counsel's *ex parte* contact with the treating physicians.  Specifically, the Defendants seek an order: 1) limiting Plaintiffs' counsel's *ex parte* contacts with treating physicians in JCCP 4696 to a discussion of the physicians' records, course of treatment and related issues such as diagnosis and prognosis; and 2) barring Plaintiffs' counsel from discussing liability issues or theories, product warnings, Defendants' research documents, medical literature, or related materials with, or showing or providing any such documents to, treating physicians before the physicians depositions.

Alternatively, Defendants request an order: 1) authorizing Defendants' counsel to meet *ex parte* with treating physicians to discuss liability issues and theories, product warnings, Defendants' research documents, medical literature, and related materials (but not to discuss the physicians' care and treatment of Plaintiffs); and 2) requiring the parties to disclose contemporaneously any documents or other information – none of which should be allowed to contain any highlighting or other annotations – shown or provided to the physicians.

Both sides have filed motions to seal.  Defendants seek an order sealing documents attached to Defendants' papers in support of the motion to seal.  Plaintiffs have moved to seal portions of Litzenburg Declaration in Connection with Plaintiffs' opposition to the Defendants' motion limiting *ex parte* contact.

Plaintiffs also sought an order striking the Defendants' reply in support of Defendants' motion to seal and the supporting Declaration of Mollie Benedict.  At the Court's February 10, 2015 hearing, the Court granted the Plaintiffs the chance to file supplemental briefing on the issues raised in the Plaintiffs' motion to strike the Defendants' reply.  Plaintiffs also seek an order sealing exhibits 1 and 6 to their supplemental briefing.

For the reasons discussed *infra*, the motion to limit Plaintiffs' counsel's ex parte contact with treating physicians is granted.  The Court issues the instant order: 1) limiting Plaintiffs' counsel's *ex parte* contacts with treating physicians in JCCP 4696 to a discussion of the physicians' records, course of treatment and related issues such as diagnosis and prognosis; and 2) barring Plaintiffs' counsel from discussing liability issues or theories, product warnings, Defendants' research documents, medical literature, or related materials with, or showing or providing any such documents to, treating physicians before the physicians' depositions.  Further, having considered all supplemental papers filed subsequent to the hearing dealing with Defendants' motion to seal[1], the Court grants in full the Defendants' motion to seal and the Plaintiffs' motions to seal.  The Plaintiffs' motion to strike Defendants' reply brief in support of Defendants' motion to seal and the supporting Benedict Declaration is denied.

## II.

## MOTIONS TO SEAL

### 1. Defendants' Motion to Seal

Defendants seek an order sealing the following exhibits:

---

[1] In their Response to Plaintiffs' Supplemental Brief, Defendants request the Court strike or at least disregard all of the Plaintiffs' Supplemental Brief apart from that portion of Section II that Defendants claim relates to the purportedly new material with which Plaintiffs took issue in their motion to strike.  That request is denied, as the Court has considered all arguments advanced by Plaintiffs in the Supplemental Brief.

1. Pages 20-27 and 89 of Exhibit 31 to Dr. David Chappell's October 2, 2014 deposition in the *Rohyans* case, respectively, communications with FDA re: Actos' risk of bladder cancer and a November 2004 Protocol Amendment for the KPNC study (Exhibit B to the Declaration of Molly F. Benedict in Support of Defendants' Motion for Order Regulating Plaintiffs' Counsel's *Ex Parte* Contacts with Treating Physicians);

2. The European Medicines Agency's July 21, 2011 CHMP assessment report for Actos, Glustin, Competcact, Glubrava, and Tandemact, bates numbered TAL-STUARA-00101923-61 (Exhibit C to the Declaration of Molly F. Benedict in Support of Defendants' Motion for Order Regulating Plaintiffs' Counsel's *Ex Parte* Contacts with Treating Physicians); and

3. Portions of the transcript of the October 2, 2014 deposition of David Chappell, M.D., pages 89-90, 91, and 183 (Exhibit D to the Declaration of Molly F. Benedict in Support of Defendants' Motion for Order Regulating Plaintiffs' Counsel's *Ex Parte* Contacts with Treating Physicians).

At the outset, Defendants claim that the motion to seal is not subject to the requirements of California Rule of Court ("CRC") 2.550, because these exhibits are materials produced in discovery and filed in connection with a discovery motion. CRC 2.550(a)(3) provides that Rules 2.550-2.551 "do not apply to discovery motions and records filed or lodged in connection with discovery motions or proceedings. However, the rules do apply to discovery materials that are used at trial or submitted as a basis for adjudication of matters other than discovery motions or proceedings." See CRC 2.550(a)(3). Notwithstanding this rule, however, "a right of public access may exist and sealing rules may apply where the discovery motion involves 'questions of great significance to members of the public.'" California Practice Guide, Civil Procedure Before Trial, ¶9:418.26 (The Rutter Group 2014) (citing *H.B. Fuller Co. v. Doe* (2007) 151 Cal.App.4th 879, 893).

Here, the Court determines that the instant discovery motion *does* involve "questions of great significance to members of the public." The *Actos* coordinated litigation before this Court, as well as the Actos cases around the United States, affects hundreds of Plaintiffs throughout the United States. The *ex parte* motion brought by the Defendants undoubtedly is of great significance to members of the public. Accordingly, the Court believes that Rules 2.550-2.551

apply to the motions to seal, and the Court will apply those applicable rules in determining whether sealing is appropriate.

Unless confidentiality is required by law, court records are presumed to be open to the public. CRC 2.550(c). Therefore, pleadings, motions, discovery documents, and other papers may not be filed under seal merely by stipulation of the parties. A prior court order must be obtained. California Practice Guide, Civil Procedure Before Trial, The Rutter Group, ¶9:416 (2014) (citing CRC 2.551(a) and *H.B. Fuller Co. v. Doe, supra,* 151 Cal.App.4th at 888).

California Rule of Court 2.550 states that the Court may order a record be filed under seal only if it expressly finds facts that establish:

> 1) There exists an overriding interest that overcomes the public right of access to the record;
>
> 2) The overriding interest supports sealing the record;
>
> 3) A substantial probability exists that the overriding interest will be prejudiced if the record is not sealed;
>
> 4) The proposed sealing is narrowly tailored; and
>
> 5) No less restrictive means exist to achieve the overriding interest. CRC 2.550(d).

These findings embody *constitutional* requirements for a request to seal court records, protecting the First Amendment Right of public access to civil trials. California Practice Guide, Civil Procedure Before Trial, The Rutter Group, ¶9:418 (2014) (citing *NBC Subsidiary (KNBC-TV), Inc. v. Superior Court* (1999) 20 Cal.4th 1178; *Huffy Corp. v. Sup. Ct. (Winterthur Swiss Ins. Co.)* (2003) 112 Cal.App.4th 97, 104; and *People v. Jackson* (2005) 128 Cal.App.4th 1009, 1026-1027). Importantly, "[a] record must not be filed under seal without a court order. The court must not permit a record to be filed under seal based solely on the agreement or stipulation of

the parties." CRC 2.551(a).  CMO No. 3 echoes these requirements, providing that any motion to seal must comply with the provisions of CRC 2.550, et seq.[2]

Taking the CRC 2.550 factors in turn, it is apparent that there exists an overriding interest that overcomes the public right of access to these records.

Exhibit 31 to the Chappell Deposition, pages 20-27 is the response to the FDA's July 28, 2011 Advice/Information Request Letter that contains an unpublished nested-case control study from the KPNC clinical study.  The overriding interests at issue with this document are that: 1) it is an unpublished clinical study and related document; 2) it constitutes information submitted to a governmental or regulatory agency that is exempt from public disclosure; and 3) was produced pursuant to a protective order.

Exhibit 31 to the Chappell Deposition, page 89 is the November 8, 2004 proposed amendment to protocol for nested-case control study from a KPNC clinical study.  This document contains proprietary marketing, development, and research information; is an unpublished clinical study; constitutes information submitted to a governmental or regulatory agency that is exempt from public disclosure; and was produced pursuant to a protective order.

The CHMP Assessment Report is the third exhibit for which Defendants seek a sealing order.  This Report constitutes proprietary marketing, development, and research information.  It also is information submitted to a governmental or regulatory agency that is exempt from public disclosure, and was produced pursuant to a protective order.

Finally, Defendants seek an order sealing three portions of the transcript of the Chappell Deposition, dealing with: 1) discussion of June 1, 2012 email discussing unpublished clinical results and strategy for potential publication of results; 2) discussion of April 28, 2011 email to external consultant discussing unpublished clinical study results and interpretation of data; and

---

[2] See CMO No. 3 at 9.

3) discussion of draft of internal company document entitled "Global PROactive GPST Meeting Minutes" that includes a summary of internal company meeting discussing unpublished preliminary clinical data.

There is an overriding interest in sealing each of these exhibits. As Defendants note, these documents represent proprietary knowledge and commercially valuable information. They contain confidential information related to opinion leaders or other consultants; proprietary marketing, development and research information; unpublished clinical studies and related doctrines and information submitted to a governmental or regulatory agency exempt from public disclosure. These overriding interests support the sealing of these records, and a substantial probability exists that these overriding interests will be prejudiced if the records are not sealed. The proposed sealing is narrowly tailored, as Defendants seek only orders sealing these specific documents, and not the other portions of the enumerated exhibits.

Finally, there are no less restrictive means to achieve the overriding interest.

Plaintiffs claim that these documents were used during a prior trial, and that one of the documents (the European Medicine Agency web page) is a public site. However, the European Medicine Agency's website reference provided by Plaintiffs is not the same document filed by Defendants. Further, the use of internal documents in other Actos cases does not automatically transform confidential documents into public ones.

For these reasons, the Court determines that Defendants' motion is well-taken and is granted pursuant to CRC 2.550.

## 2. Plaintiffs' motion to seal portions of Litzenburg Declaration

Plaintiffs have filed the Litzenburg Declaration and the exhibits attached thereto under seal "out of an abundance of caution" consistent with CRC 2.550 and CMO No. 3. Plaintiffs, while filing the sealing motion, do not believe that the documents and information at issue should be sealed under CRC 2.550(c).

Defendants have filed a brief in support of the sealing order, and note that there are two documents at issue in Plaintiffs' motion for which the sealing order is sought:

> 1) Exhibit 4, an internal email discussing physicians, opinion leaders, and other consultants, and contains proprietary knowledge and commercially valuable information; and

> 2) Exhibit 7, financial and related information involving Dr. David Chappell, who is not a party to this case.

A sealing order is warranted for both exhibits. Exhibit 4 does indeed appear to be an internal email discussing various physicians, and it does contain proprietary knowledge and confidential information. Exhibit 7 reflects various payments made to Dr. Chappell and expenses claimed by him on a spreadsheet, as well as honoraria paid to him. Both exhibits contain commercially sensitive information, and this commercially sensitive information overcomes the public's right to access these records. A substantial probability exists that these overriding interests will be prejudiced if the records are not sealed. The proposed sealing is also narrowly tailored, as there are two exhibits to the Litzenburg Declaration dealing with commercially sensitive information, and financial information involving Dr. Chappell. There are no less restrictive means to protect these interests than by the sealing order.

As such, a sealing order is also warranted in full as to these two exhibits to the Litzenburg Declaration, and the Plaintiffs' motion to seal is granted.

In connection with the supplemental briefing, Plaintiffs seek an order sealing Exhibits 1 and 6. These exhibits are:

> 1. Takeda's response to an FDA information request and related cover letter; and

> 2. An unpublished scientific article entitled "Final Report of a Cohort Study of Pioglitazone and Bladder Cancer in Patients with Diabetes."

Having reviewed these exhibits, the Court determines that the CRC 2.550 analysis applies to both exhibits (again, given the public's interest in the Actos cases in California and throughout the country). The Court agrees that Exhibit 1 contains confidential communications

with the FDA (and a cover letter) that were subject to the initial motion to seal filed by
Defendants. The Court also believes that Exhibit 6 contains confidential information, as it is an
unpublished scientific article which may or may not be accepted for publication. The
confidential information in both exhibits overcomes the public's right to access these records. A
substantial probability exists that these overriding interests will be prejudiced if the records are
not sealed. The proposed sealing is also narrowly tailored, as there are only two exhibits to the
supplemental briefing for which Defendants seek the sealing order. There are no less restrictive
means to protect the confidential communications and the unpublished article than through a
sealing order. As such, the motion to seal Exhibits 1 and 6 to the Plaintiffs' Supplemental Brief
is granted.

### III.

### OBJECTIONS TO EVIDENCE

Defendants have lodged objections to the Declarations of Thomas Girardi, Mark
Crawford, and Timothy Litzenburg submitted in support of Plaintiffs' opposition to the motion
for an order regulating Plaintiffs' counsel's ex parte contacts with treating physicians. The
Court's rulings on the objections follow.

1. Girardi Decl., ¶3: **Sustained**.

2. Girardi Decl., ¶4: **Sustained**.

3. Girardi Decl., ¶5a: **Sustained**.

4. Girardi Decl., ¶5b: **Sustained**.

5. Girardi Decl., ¶5c: **Sustained**.

6. Girardi Decl., ¶5d: **Sustained**.

7. Girardi Decl., ¶6: **Sustained**.

8. Girardi Decl., ¶7a-f: **Sustained**.

9

9. Girardi Decl., ¶8: **Sustained**.

10. Girardi Decl., ¶9: **Sustained**.

11. Girardi Decl., ¶10: **Sustained**.

12. Girardi Decl., ¶11, l. 3-9: **Sustained**.

13. Girardi Decl., ¶11, l. 9-17: **Sustained**.

14. Girardi Decl., ¶12, l. 18-23: **Sustained**.

15. Girardi Decl., ¶12, l. 23-27: **Sustained**.

16. Girardi Decl., ¶13, p. 4:28-5:7: **Sustained**.

17. Girardi Decl., ¶13, p. 5:7-11: **Sustained.**

18. Girardi Decl., ¶14, ¶14: **Sustained**.

19. Crawford Decl., ¶3, l. 6-7: **Overruled**.

20. Crawford Decl., ¶6, l. :3-6: **Overruled**.

21. Crawford Decl., ¶9, l. 25-28: **Overruled**.

22. Crawford Decl., ¶10, l. 6-8: **Overruled**.

23. Crawford Decl., ¶14, l. 3-7: **Overruled**.

24. Litzenburg Decl., ¶2, l. 3-5: **Overruled**.

25. Litzenburg Decl., ¶3: **Overruled**.

26. Litzenburg Decl., ¶4, l. 9-10: **Sustained**.

27. Litzenburg Decl., ¶4, l. 10-13: **Overruled**.

28. Litzenburg Decl., ¶5, l. 16-18: **Overruled**.

29. Litzenburg Decl., ¶12, l. 23-25: **Sustained**, with respect to statement "in their 15 year misinformation campaign," otherwise, **overruled**.

////

////

////

# IV.

## MOTION TO REGULATE EX PARTE CONTACT WITH PHYSICIANS

By virtue of the instant motion, Defendants Takeda and Eli Lilly seek an order from the Court regulating Plaintiffs' counsel's *ex parte* contact with Plaintiffs' treating physicians. In particular, the proposed parameters of such an order would be:

1) limiting Plaintiffs' counsel's *ex parte* contacts with treating physicians in JCCP 4696 to a discussion of the physicians' records, course of treatment and related issues such as diagnosis and prognosis; and

2) barring Plaintiffs' counsel from discussing liability issues or theories, product warnings, Defendants' research documents, medical literature, or related materials with, or showing or providing any such documents to, treating physicians before the physicians depositions.

As an alternative, Defendants seek an order:

1) authorizing Defendants' counsel to meet *ex parte* with treating physicians to discuss liability issues and theories, product warnings, Defendants' research documents, medical literature, and related materials (but not to discuss the physicians' care and treatment of Plaintiffs); and

2) requiring the parties to disclose contemporaneously any documents or other information – none of which should be allowed to contain any highlighting or other annotations – shown or provided to the physicians.

There is significant history leading up to the Defendants' filing of the instant motion, which will not be repeated here (it is discussed more thoroughly *supra* and is set forth in the papers). The major points, however, are these. Plaintiffs' counsel have been providing Plaintiffs' treating physicians (including Dr. David Chappell in the *Rohyans* case) with various documents (deemed "confidential") outside of the normal discovery process, and in anticipation of their depositions. Counsel has been making this contact with the treating physicians on an *ex parte* basis. The treating physicians have not been designated as experts, yet they are still provided with various documents weeks before their depositions occur. The treating physicians are able to review these documents, and, according to Defendants, the views of the treating physicians are "tainted" as a result.

### 1. Regulation of *ex parte* contacts with counsel and the physician-patient privilege

There are two broad issues for the Court's consideration on this motion. The first is the extent to which the Court may regulate, consistent with the physician-patient privilege, Plaintiffs' counsel's *ex parte* communications with treating physicians. Defendants claim that Plaintiffs' counsel is effectively transforming the treating physicians into undesignated experts (by providing the physicians with the designated-confidential documents prior to, and in anticipation of, deposition), and giving Plaintiffs an unfair advantage. With respect to expert witnesses, CCP §2034.260(c) provides in part:

> **(c)** If any witness on the list is an expert as described in subdivision (b) of Section 2034.210, the exchange shall also include or be accompanied by an expert witness declaration signed only by the attorney for the party designating the expert, or by that party if that party has no attorney.

In turn, CCP §2034.210(b) provides:

> (b) If any expert designated by a party under subdivision (a) is a party or an employee of a party, or has been *retained* by a party *for the purpose of forming and expressing an opinion in anticipation of the litigation or in preparation for the trial of the action*, the designation of that witness *shall include or be accompanied by an expert witness declaration* under Section 2034.260. (Emphasis added.)

In *Schreiber v. Estate of Kiser* (1999) 22 Cal.4th 31, the California Supreme Court discussed the role of the treating physician as a witness, and noted as follows:

> A treating physician is a percipient expert, but that does not mean that his testimony is limited only to personal observations. Rather, like any other expert, *he may provide both fact and opinion testimony*. As the legislative history clarifies, what distinguishes the treating physician from a retained expert is not the *content* of the testimony, but the *context* in which he *became familiar with the plaintiff's injuries* that were ultimately the subject of litigation, and which form the factual basis for the medical opinion. The contextual nature of the inquiry is implicit in the language of section 2034, subdivision (a)(2), which describes a retained expert as one "retained by a party *for the purpose* of forming and expressing an opinion in anticipation of the litigation or in preparation for the trial of the action." (Italics added.) A treating physician is not *consulted* for litigation purposes, but rather *learns* of the plaintiff's *injuries* and *medical history* because of the underlying physician-patient relationship. *Schreiber, supra,* 22 Cal.4th at 35-36.

While the treating physicians are percipient "experts" (and may in fact provide fact and opinion testimony), they are not *designated* experts.  By providing the confidential literature to the treating physicians on an *ex parte* basis, Plaintiffs, in effect, would circumvent the specific requirements under the Code of Civil Procedure for expert witness designations.

The Court is not persuaded by Plaintiffs' argument that any limitation on counsel's ability to engage in *ex parte* communications "would severely undermine a Plaintiff's ability to prove a failure to warn claim."  As Defendants point out in their reply brief, Plaintiffs' counsel may meet *ex parte* with treating physicians and ask them questions about the information obtained by an examination of their patients.  Plaintiffs' counsel may then use the information learned from the *ex parte* contacts to tailor deposition questioning.  As Defendants note, during deposition, Plaintiffs' counsel may show the treating physicians medical articles and documents (those which have been deemed confidential) and ask them whether they would have made prescribing decisions had they known certain facts at the relevant time.

Plaintiffs claim in the motion that to provide the confidential exhibits to the treating physicians at the time of deposition would exponentially lengthen the deposition, and it would be "impossible" to complete the testimony.  However, the parties are ordered to cooperate on the length of the treating physician depositions.  The Court will be willing to permit extended depositions, within reason and on a showing of good cause, where confidential documents are brought to the attention of the treating physicians at their depositions.  This would prevent any unfair element of surprise, and at the same time, would permit Plaintiffs the full right to question the physicians at deposition about their treating decisions based in part on the confidential documents.

There is authority for the *ex parte* limiting order.  In *In re Ortho Evra Prods. Liab. Litig.* (N.D. Ohio Jan. 20, 2010) 2010 WL 320064 at *2, the Court held "Plaintiffs' counsel may meet *ex parte* to discuss the physicians' records, course of treatment and related matters, but not as to

liability issues or theories, product warnings, Defendant research documents or related materials." *See also In re: Chantix (Verenicline) Prods. Liab. Litig.* (N.D. Ala. June 30, 2011) 2011 U.S. Dist. LEXIS 156968 at *18 (noting that plaintiffs' counsel's *ex parte* communications must be "limited to the individual care of the individual plaintiffs, such as the plaintiffs' treatment, medical records and conversations with their health care providers" and that "[p]laintiffs' counsel shall not discuss defendants' internal documents with plaintiffs' health care providers outside of a deposition"). The Court finds that it does have authority to regulate Plaintiffs' counsel's *ex parte* contacts.

## 2. CMO No. 3

The second major issue posed by the motion is the effect of CMO No. 3 on the *ex parte* contacts with Plaintiffs' treating physicians. According to Plaintiffs, CMO No. 3 specifically permits them to provide this confidential material to treating physicians, provided they abide by the terms of the CMO. Defendants, however, claim that CMO No. 3 does not allow Plaintiffs' counsel to send Defendants' confidential documents to treating physicians before their depositions. The applicable language from CMO 3 states:

> (c) A plaintiff's current or former healthcare provider who has agreed to maintain the confidentiality of any document subject to this order: or who has agreed on the record at deposition to maintain the confidentiality of any document intended to be used at the deposition *may be shown or questioned about Confidential Discovery Material at the deposition*, provided that no copies of the Confidential Discovery Material *shall be left in the possession of the healthcare provider witness* and copies of that Confidential Discovery Material shall not be attached to or included with any original or copy of the transcript of that deposition provided to the healthcare provider; however, copies of the Confidential Discovery Material shall be attached to the deposition transcript and made available for the use of the deponent in the event he or she testifies at trial.

> Counsel present at the deposition should make a good faith effort to obtain the healthcare provider's agreement on the record to maintaining confidentiality and no counsel shall make efforts to dissuade the healthcare provider from refusing to agree on the record to maintaining the confidentiality of any such documents. Regardless of whether any deponent signs the Declaration attached as Exhibit A, this Order will apply to any deponent who is shown or examined about Confidential Discovery Material and the deponent cannot take any exhibits with

them nor can he/she reveal any information learned from the confidential materials shown to them. This paragraph is not intended to prevent any party or deponent from seeking other relief from this Court.  See CMO No. 3, ¶7(c) (emphasis added).

By its terms, there is nothing in this provision demonstrating an agreement to an *ex parte* disclosure of documents designated "confidential."  The record is vague as to whether Defendants' counsel understood that CMO No. 3 was intended to permit such *ex parte* disclosure, but for their part, Defendants' counsel adamantly states there was no such agreement. The Court is not persuaded by Plaintiffs' assertions that the parties' past course of dealing in other Actos cases warrants a different result.  The Miller Firm apparently sent materials to treating physicians in a number of Actos cases, but there is nothing to indicate that they were provided with documents deemed *confidential* under the CMO.

There does not appear to be any real dispute that, as a general principle, ex parte contact between Plaintiffs' counsel and the Plaintiff's treating physician is permissible.  However, the means by which Plaintiffs are dealing with the treating physicians on an *ex parte* basis appears to stand in opposition CMO No. 3, and circumvent the requirements for designation of experts.

With all of that said, Defendants' alternative relief (to permit Defendants *ex parte* contact with the treating physicians) is not appropriate.  To allow such alternative relief would potentially invade the physician-patient privilege.  It is better, from a practical standpoint, to require Defendants' contacts with Plaintiffs' treating physicians occur within the scope of the discovery process.

For all of these reasons, the Court finds that CMO No. 3 does not allow Plaintiffs to, on an *ex parte* basis and outside the scope of a deposition, provide Plaintiffs' treating physicians with confidential documents.

## V.

## CONCLUSION

For the foregoing reasons, the motion to limit Plaintiffs' counsel's ex parte contact with treating physicians is granted. The Court orders as follows: 1) Plaintiffs' counsel's *ex parte* contacts with treating physicians in JCCP 4696 shall be limited to a discussion of the physicians' records, course of treatment and related issues such as diagnosis and prognosis; and 2) Plaintiffs' counsel may not discuss liability issues or theories, product warnings, Defendants' research documents, medical literature, or related materials with, or showing or providing any such documents to, treating physicians before the physicians depositions. The Defendants' motion to seal, and the Plaintiffs' motions to seal, are granted in full. The Plaintiffs' motion to strike Defendants' reply brief in support of Defendants' motion to seal and the supporting Benedict Declaration is denied.

The issues addressed in this Ruling and Order present controlling questions of law as to which there are substantial grounds for difference of opinion. Pursuant to Code of Civil Procedure §166.1, the Court finds that appellate resolution of these issues may materially assist in the resolution of the litigation.

Dated: March 20, 2015

**KENNETH R. FREEMAN**

Kenneth Freeman
Judge of the Superior Court

16

# Exhibit F

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

In re:                                    §          MDL Docket No. 4:03CV1507WRW
                                          §
PREMPRO PRODUCTS LIABILITY                §          ALL CASES
          LITIGATION                      §
                                          §

**FILED**
EASTERN DISTRICT COURT
DISTRICT ARKANSAS

DEC 0 7 2005

JAMES W. McCORMACK, CLERK
By:_____
                          DEP CLERK

## ORDER Re: RETENTION OF EXPERTS

Before the Court are Defendants' Submission Re Retention of Physician Experts (Doc. No.

774), Plaintiffs' Response to Defendant's Submission Re Retention of Physician Experts (Doc. No.

784), Plaintiffs' Objections to Defendants' Proposed Order Re: Retention of [Plaintiffs' Physicians as]

Experts (Doc. No. 851), and Defendants' Memorandum in Support of Order Re Retention of Experts

(Doc. No. 864). Oral arguments were heard at the at the September 16 and November 18, 2005 Status

Conferences.

Based on the findings of fact and conclusions of law made at the status conferences, I hold that

Defendants will not be prohibited from retaining a physician as an expert witness who is identified on

a plaintiff's fact sheet. The following restrictions will apply:

1.     Defendants and their attorneys will not communicate with the physician-expert about

       any of his patients who are involved in or are likely to become involved in this MDL.

2.     Defendants and their attorneys cannot use a physician as an expert in a case where that

       physician's patient is a plaintiff in that particular case.

3.     Defendants and their attorneys, before having any substantive communication with a

       prospective physician-expert, will provide the physician with this Order and will secure

       the physician's written acknowledgment that he/she has read the attached

       Memorandum to Physicians.

IT IS SO ORDERED this 7th day of December, 2005 (Pearl Harbor Day).

                                   /s/ Wm. R. Wilson, Jr.
                                   UNITED STATES DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

| | | |
|---|---|---|
| **In re:** | § | **MDL Docket No. 4:03CV1507WRW** |
| | § | |
| **PREMPRO PRODUCTS LIABILITY** | § | **ALL CASES** |
| **LITIGATION** | § | |
| | § | |

### MEMORANDUM TO PHYSICIAN

Defendants in this litigation are permitted to retain as expert witnesses physicians who may have treated one or more women who are Plaintiffs. Despite their service as experts, these physicians are still bound by the physician-patient privilege and are forbidden from communicating with Defendants, Defendants' employees and Defendants' attorneys about their patients who are Plaintiffs, absent another order from the Court. Defendants and their agents must identify which of a physician's patients are Plaintiffs before any substantive communications begin. If a physician, at any time, believes that a Defendant is attempting to communicate about a patient who is a Plaintiff, directly or indirectly, the physician should contact the patient or her attorney or the Court.

/s/ Wm. R.Wilson,Jr._____
UNITED STATES DISTRICT COURT

I have read, understand and agree to be bound by the terms of this memorandum to physicians.

_____
Signature

_____
Print Name