UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  XARELTO (RIVAROXABAN) | * | MDL 2592 |
| PRODUCTS LIABILITY LITIGATION | * | |
| | * | SECTION L |
| THIS DOCUMENT RELATES TO | * | |
| ALL CASES | * | JUDGE ELDON E. FALLON |
| | * | |
| | * | MAG. JUDGE NORTH |

* * * * * * * * * * * * * * * * * * * * * * * *

---

**MEMORANDUM IN SUPPORT OF THE ENTRY OF THE
PLAINTIFFS' STEERING COMMITTEE'S VERSION OF A
PRE-TRIAL ORDER REGARDING DEPOSITION GUIDELINES**

---

## I.   <u>INTRODUCTION</u>

Deposition guidelines can effectively prevent inequities, inefficiencies and discovery abuses. However, guidelines unfairly-drafted or one-sided have the opposite result and can create more inequities than they cure. The Plaintiffs' Steering Committee (PSC) has been more than willing to work cooperatively with the Defendants to reach an agreement on fairly drafted deposition guidelines for this MDL. Despite lengthy negotiations, the parties have reached an impasse on seven (7) disputed provisions as set forth in the attached redlined, proposed deposition guidelines.[1] For the reasons set forth below, the PSC moves the Court to enter a pre-trial order containing the PSC's version of deposition guidelines, resolving certain disputed provisions in the PSC's favor.[2]

---

[1]A version of the proposed deposition guidelines PTO with the parties' disputed positions (the PSC's position is in **"blue"** text and the Defendants' is in **"red"** text) is attached as Exhibit "1."

[2]The version of the proposed deposition guidelines that the PSC requests be entered is attached as Exhibit "2."

## II.    SUMMARY OF DISPUTED PROVISIONS

As set forth in Exhibit "1," the seven (7) disputed issues which the parties ask the Court

to resolve are summarized in the chart below:

| | DISPUTED ISSUE / QUESTIONS FOR THE COURT TO DECIDE | PSC | DEFENDANTS | Paragraph in Proposed PTO (Exhibit "2") |
|---|---|---|---|---|
| 1 | Notice of Attendance (*Advance Notice of Attendees*)<br><br>(How many days before a deposition must notice be given about attendance?) | **2** days | **14** days | 5 |
| 2 | Notice of Attendance (*Identifying Primary Examiners*)<br><br>(Notwithstanding that the Federal Rules have no such requirement, must the PSC identify the questioning attorney(s) in advance of the deposition?) | No | Yes | |
| 3 | Duration (*Additional Time for Translator*)<br><br>(If a translator is necessary – how much additional time should the maximum length of a deposition be increased?) | Maximum length (2 days) **increased 100%** to (4 days). | Maximum length (2 days) **increased 75%** to (3.75 days). | 13 |
| 4 | Duration (*Running the Clock Out By Reading Docs*)<br><br>(Is the time a witness takes to read a document counted against a parties' time limit?) | No<br><br>(the time should not count). | Yes<br><br>(the time counts against the total) | |

| 5 | Custodial File Production (*Personnel File Materials*)<br><br>(Is the PSC entitled to receive certain relevant documents from a deponent's personnel file in advance of the deposition?) | Yes | No | 28 |
|---|---|---|---|---|
| 6 | Authenticity *(Timing to Identify and Resolve Disputes)*<br><br>(Should the parties begin the process of stipulating as to the authenticity of deposition exhibits shortly after the deposition or should they wait until after the discovery period is over?) | 20 days after deposition – Defendants notify if not authentic or deemed authentic. | Shortly after discovery period – meet and confer and cooperate | 44 |
| 7 | Additional Cameras on attorneys<br><br>(Notwithstanding the fact that the Federal Rules do not provide for additional cameras on attorneys, is the Defendant entitled to videotape counsel during a deposition? | No | Yes | 45(e) |

## III.    ARGUMENT

### A.    NOTICE OF ATTENDANCE ISSUES[3]

#### 1)  The Court Should Adopt the PSC's Proposed Timing for Advance Notice of Who May Be Attending a Deposition

Providing opposing counsel with a list of attendees two (2) days before the deposition is fair, efficient and workable notice. This will enable opposing counsel sufficient time to make arrangements for adequate deposition space and to notify building security, if necessary to facilitate access. Moreover, it will minimize the need for multiple updates to the attendee list which will inevitably occur if Defendants' request for fourteen (14) days advance notice of attendees is required. The PSC's proposal of two (2) days notice is far more consistent with

---

[3]*See* Exhibit "2," paragraph 5.

similar provisions in deposition protocols from other pharmaceutical and medical device litigations than is Defendants' proposed 14 days notice.[4]

---

[4] **7 Business Days**

- *In re Vioxx Products Liability Litigation*, MDL 1657, PTO-9 (Amended) at I(C)(3)(7 business days) attached as Exhibit "3;"

- *In re Oil Spill by the Oil Rig "Deep Water Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL 2179, PTO-17, I(C)(3); PTO-27 and 44 (7 business days) attached as Exhibit "4;"

- *In re Ethicon, Inc. Pelvic Repair System Products Liability Litigation*, MDL 2327, PTO-38 (1 week) attached as Exhibit "5;"

- *In re C.R. Bard, Inc., Pelvic Repair System Products Liability Litigation,* MDL 2187, PTO-40 at A(3)(1 week) attached as Exhibit "6;"

**5 Days then Final Notice 3 Days for Live Attendance and 2 Days Notice for Remote Participation**

- *In re Testosterone Replacement Therapy Products Liability Litigation*, MDL 2545, CMO-21, para III.E.3 and 4.b (5 days then final notice 3 days for live attendance and 2 days notice for remote participation by telephone or internet). Exhibit "7;"

**5 Days**

- *In re Pradaxa Products Liability Litigation*, MDL 2385, CMOs-8 and 13 (5 days) attached as Exhibit "8;"

**3 Days**

- *In re Baycol Products Liability Litigation*, MDL 1431, PTO-7, para 2 (c) (3 days) attached as Exhibit "9;"

- *In re Zoloft Products Liability Litigation*, MDL 2342,  PTO-30 at I (C)(3) (3 days or 2 days for remote participation) attached as Exhibit "10;"

- *In re Avandia Marketing, Sales Practices and Products Liability Litigation*, MDL 1871, (PTO-38, at I(D) (3 days) attached as Exhibit "11;"

- *In re Yaz/Yasmin Products Liability Litigation*, MDL 2100, CMO-28, para B.5 (3 days) attached as Exhibit "12;"

- *In re Actos (Pioglitazone)Products Liability Litigation*, MDL 2299, CMO (Discovery Order), V.H.2, page 14 (3 days) attached as Exhibit "13;"

- *In re Mirena IUD Products Liability Litigation,* MDL 2434, Order No. 12, para 10 (3 days) attached as Exhibit "14;"

- *In re Levaquin Products Liability Litigation*, MDL No. 08-1943, PTO-2, para 5(c) (3 days) attached as Exhibit "15;"

- *In re Guidant Corp. Implantable Defibrillators Products Liability Litigation*, MDL 1708, PTO-3, para. 7(c) (3 days) attached as Exhibit "16;"

- *In re Medtronic, Inc., Implantable Defibrillators Products Liability Litigation*, MDL 1726, "Deposition Guidelines", para. 5(c) attached as Exhibit "17;"

**2) There Is No Requirement Under the Federal Rules of Civil Procedure That Advance Notice of the Primary Deposition Examiners Must Be Given To The Opposing Party And The PSC Should Not Be Compelled To Provide Such Notice**

Fed.R.Civ.P. 30(b)(1) mandates what the required content of a deposition notice is and does not require that a party identify the attorney who will be questioning the deponent.[5] As stated above, the PSC has no objection to providing the Defendants with a list of attendees in advance of a deposition which will include the primary examiners. However, the Defendants insist that each party identify the questioning attorney in advance of the deposition.[6] The PSC objects to identifying the primary examiner in advance of the deposition, particularly fourteen

---

**48 Hours**

- *In re Zimmer Nexgen Knee Implant Products Liability Litigation* MDL No. 2272, CMO-7, para. A.2 (48 hours) attached as Exhibit "18;"

**No Notice Required or No Specific Time for Notice**

- *In re Propulsid Products Liability Litigation,* MDL 1355, PTO-7, at A.4 (requirement for advance notice but no time period specified), attached as Exhibit "19;"

- *In re Cook Medical, Inc, IVC Filters Marketing, Sales Practices and Products Liability Litigation*, MDL 2570, CMO-2 (no requirement for advance notice of attendees), attached as Exhibit "20;"

- *In re Tylenol Products Liability Litigation*, MDL 2436, CMO-14 (no requirement for advance notice of attendees) attached as Exhibit "21;"

- *In re Ortho Evra Products Liability Litigation*, MDL 1742, CMO-7 (no requirement for advance notice of attendees) attached as Exhibit "22;"

- *In re National Hockey League Players' Concussion Injury Litigation*, MDL 2551, PTO-6 (no requirement for advance notice of attendees) attached as Exhibit "23."

[5] Rule 30(b)1 states:

> Notice in General. A party who wants to depose a person by oral questions must give reasonable written notice to every other party. The notice must state the time and place of the deposition and, if known, the deponent's name and address. If the name is unknown, the notice must provide a general description sufficient to identify the person or the particular class or group to which the person belongs.

Similarly, to the extent consideration of the Federal/State coordination comes into play in the context of the Philadelphia Mass Tort Program's Xarelto Litigation overseen by Judge New, Pa.R.Civ.P. 4007.1 does not require that a deposition notice identify the examiner.

[6] *See* Exhibit "1," paragraph 5. The PSC objects to the inclusion of "including the identity of the questioning attorneys."

(14) days in advance of the deposition. The vast majority of MDL courts do not require the identification of the primary examiner either in the deposition notice or in the provision of the protocol requiring advance notice of attendees.[7] Courts that have done so, including this Court in the *Vioxx* and *Propulsid* MDLs, appear to do so primarily to provide individual plaintiff's counsel and other interested persons with a contact person with details about the time, date and location of the depositions.[8] In the parties' proposed deposition guidelines in this litigation,[9] the need to identify the primary examiner so that individual plaintiff's counsel have a scheduling contact is alleviated by making Liaison Counsel[10] that point-of-contact. Thus, there is simply no need to identify the primary examiners by either side in advance of the deposition.[11]The only reason it appears that Defendants want this provision is to gain some strategic advantage so that

---

[7] Exhibit "4," *Deep Water Horizon MDL*, PTO 17, II.2.G; "Exhibit "5," *Ethicon Mesh MDL*, PTO 38, A.3; Exhibit "6," *Bard Mesh MDL*, PTO 40, A.3; Exhibit "7," *Testosterone MDL*, CMO 21, III.E.3 (Notice includes contact information for the designated Deposition Point person to allow interested counsel to obtain information regarding the deposition. III.D.2 at p. 4 and III.E.3 at p 5-6 which does not require identity of questioners with notice of intent to attend); Exhibit "8," *Pradaxa MDL*, CMO- 8, B.4 p. 4 and 13 (notice include "attorney point of contact" information; Liaison counsel to confer 5 business days before as to expected attendance); Exhibit "10," *Zoloft MDL*, PTO-3, (I.B.2, p. 2 and I.B.3, p. 3, notice contains name of "Lead deposition counsel" appointed for each side and notice of all attendees (not primary examiners) to "Lead deposition counsel"; Exhibit "12," *Yaz/Yasmin MDL*, CMO-28 (B1.p.3 and B.5, p.4 no attorney point of contact in notice and primary questioner not required to be identified with advanced attendance); Exhibit "20," *Cook IVC MDL*, CMO-2, A.1; Exhibit "21," *Tylenol MDL, CMO-14,* 5a, p. 4; Exhibit "23," *NHL MDL*, PTO-6; Exhibit "29," *Diet Drugs MDL*, PTO-21 and 292; Exhibit "14," *Mirena MDL*, Order no. 12, at para. 6 and 10; Exhibit "16," *Guidant Defibrillator MDL*, PTO-3, at para. 7(c); Exhibit "17," *Medtronic Defibrillator MDL*, Deposition Guidelines Order, para. 5(c); Exhibit "18," *Zimmer NextGen Knee Implant, MDL*, CMO-7.

[8] Exhibit "3," *Vioxx MDL,* PTO-9, II.G; Exhibit "19," *Propulsid MDL,* PTO-7, A.3; Exhibit "9," *Baycol MDL,* PTO-7, 3.d, p.3; Exhibit "11," *Avandia MDL,* PTO-38, I.B.2, p. 12, I.D.3, p.2; II.A, p.3) and Exhibit "22," *Ortho Evra,* PTO-7, A.3).

[9] *See* Exhibit "1" and "2."

[10] *See* Exhibit "1" and "2" at para. 5.

[11] In the event the Court requires the parties to identify the primary deposition questioner, the PSC requests that the deposition guideline specify that any change in primary examiner alone shall not be cause for postponing the deposition. *See* Exhibit "13," *Actos MDL,* CMO (Deposition Protocol), paragraph V.J.2, p. 16.

witnesses can be prepared to the examiner.  However, there is no authority for what Defendants

seek.  Accordingly, the PSC respectfully requests that the Court not impose such a requirement.

### B.  ISSUES INVOLVING THE DURATION OF THE DEPOSITION

Fed. R. Civ. P. 30(d)(2) addresses the seven-hour deposition limit[12]:

> Unless otherwise authorized by the court or stipulated by the parties, a deposition is limited to one day of seven hours. The court must allow additional time consistent with Rule 26(b)(2) if needed for a fair examination of the deponent or if the deponent or another person, or other circumstance, impedes or delays the examination.

In evaluating good cause for an extension, the court should consider issues such as

whether the deposition will cover events occurring over a long period of time, the need to fully

explore the theories upon which the witness relies, whether the witness needs a translator, or

whether the witness will be questioned about numerous or lengthy documents.[13]

---

[12] With  State/Federal coordination in mind, unlike the Federal Rules of Civil Procedure, the Pennsylvania Rules of Civil Procedure do not impose time-limits on length of a deposition.

[13] *See Pratt v. Archstone Willow Glen Apartments*, 2009 WL 2032469, at *1 (N.D. Cal. July 10, 2009)(*citing Boston Scientific v. Cordis Corp*., 2004 WL 1945643, at *2 (N.D. Cal. Sept. 1, 2004)); *see also Johnson v. Couturier*, 261 F.RD 188, 190 (E.D Cal. Aug. 21, 2009)(citing *Saunders v. Knight*, 2007 WL 38000, at *3 (E.D. Cal. Jan 4, 2007)); *Tatum v. Schwartz*, 2008 WL 298824, at *2, n. 1 (E.D. Cal. Feb.1, 2008). "The court [should] also consider[] the voluminous and ongoing production of documents that have been made in this case." *California Earthquake Authority v. Metropolitan West Securities*, LLC, 2012 WL 5880342 at *4 (E.D. Cal. Nov. 21, 2012); *see also In re Republic of Ecuador*, 2012 WL 487158, at *3 (E.D. Cal. Feb. 14 2012) (considering, in part, the voluminous documents produced in granting extension to deposition); *Adelphia Recovery Trust v. Bank of Am., N.A*., 2009 WL 1794992, at *2 (M.D. Pa. June 23, 2009); *California Earthquake Authority*, 2012 WL 5880342 at *4 ("Pertinent to this case and to this deponent is the magnitude of the factual issues presented and [Defendant's] role in the facts which give rise to them."); *see also Johnson v. Couturier*, 261 F.R.D 188, 190 (E.D Cal. Aug. 21, 2009) (granting plaintiff's motion for order extending time limits for defendant's depositions on the grounds that "[p]laintiff's seven hour deposition of [defendant] was not long enough to cover all necessary topics.").

1) **The Court Should Adopt the PSC Proposed Increase of the Maximum Deposition Time Where a Translator is Necessary**

The Advisory Committee Notes for the 2000 Amendment to Rule 30(d)(2) state that one of the factors the court may consider in granting an extension of time for a deposition includes "[f]or example, if the witness needs an interpreter, that may prolong the examination."[14][15]

The parties have agreed to propose that the maximum length of a deposition is two (2) days,[16] however they have reached an impasse in the case of depositions where a translator is needed on whether the maximum length shall be increased by 100% (from 2 to 4 days) as the PSC proposes or 75% (to 3.5 days) as the Defendants propose.[17]

The court should accept the PSC's proposal because the anticipated depositions where a translator will be required are foreign employees and former employees of Bayer who speak German and they will be testifying about the most complex scientific and medical issues in the litigation. These witnesses are primarily high level scientists involved in the early development and pre- and post-approval clinical trial for Xarelto. Since these witnesses' primary language is

---

[14] Rule 30, Advisory Committee's Note - Amend. 2000); *see e.g. Aerocrine AB v. Apieron Inc.,* 267 F.RD. 105, 110 (D. Del. 2010); *Gibbs v. Am. School for the Deaf*, No. 3:05cv563, 2007 U.S. Dist. LEXIS 25036, at *2 (D.Conn. Apr. 3, 2007) (granting plaintiff an additional seven hours to depose a witness where the deposition was "slowed down and interrupted because of the need to use sign language interpreters")

[15] This Court is all too familiar with the difficulties presented by discovery involving foreign defendants from its experience in *In re Chinese Manufactured Drywall Products Liability Litigation*, MDL No. 2047 (E.D. La.). Out the outset of that litigation, disputes over interpretation of deposition testimony of Chinese witnesses "degenerated" into what this Court characterized as "'chaos and old night,' to borrow a phrase from Milton's *Paradise Lost.*" *Id.*, Order & Reasons (Sept. 9, 2011). These disputes ultimately required this Court to travel to Hong Kong to personally insure that the depositions were conducted appropriately. Yet, even with qualified interpreters, the language barrier was always present and delays in translation of questions and answers inevitably resulted in lengthier depositions. On several occasions disputes over the duration of foreign witness depositions were presented to the Court, and while in most instances the parties were able to resolve their differences, this Court was regularly consulted to resolve the need for additional time for questioning.

[16] Exhibit "1," para 12.

[17] Exhibit "1," para 13.

German and they will need translation of both  question and answer (thereby doubling the time of the deposition), the PSC's request is more than reasonable. Moreover, the additional time the PSC proposes is further warranted with multiple translators (as there will be in this matter) agreements over translation and interpretation are inevitable and any such dispute will and should be on the record.

The PSC anticipates that the Defendants will argue that this Court should adopt their proposal limiting the increase of the maximum length of a deposition by 75% because it is consistent with the increase granted by the MDL court in *Pradaxa* and *Yaz/Yasmin*. There is reason in this case for a 100% increase as requested by the PSC that did not exist in both *Pradaxa* and *Yaz/Yasmin*. This litigation, unlike *Pradaxa* and *Yaz/Yasmin,* involves two distinct and separate drug company defendants, Janssen and Bayer, that have divergent and opposing financial interests that will be determined depending on liability discovery in this matter evolves. The various collaborative, development, and specialty market, pharmacovigilance and other agreements between the Janssen and Bayer involving Xarelto ███████████████ ████████████████████████████████████████████████████████████████ ███████████████████████████████████.[18] These activities will need to be addressed during discovery and may necessitate one or both Defendants questioning the other's employees or former employees during their depositions.  Both Defendants have different counsel that have had separate attorneys representing their respective interest at that depositions that have occurred thus far in this litigation, and for good reason.[19] Courts have increased the

---

[18] *See* Exhibit "32," the 2005 Collaborative, Development and License Agreements ("CDLA") between Bayer Healthcare AG and Ortho-McNeil Pharmaceutical Inc. ███████████████████████ in the various other agreements governing the collaborative relationship between the defendants with regard to the development and commercialization of Xarelto.

[19] *See* Exhibit "24," from the transcripts of the depositions that reflect that both Bayer and Janssen have had separate counsel representing their respective interests at the depositions in this litigation to date.

length of depositions, not only when a translator is necessary, but where an additional party involved may need to question a witness.[20]

There is more than ample justification to grant a greater increase here than was ordered in both the *Pradaxa* and *Yaz/Yasmin* MDLs.

### 2) The Court Should Not Count Witness Time Spent Reviewing Documents Against Time-Limits

Members of the PEC and the PSC have had extensive past and recent experience deposing Defendants' employees and former employee's in numerous other mass tort litigations and similarly have extensive experience litigating against the able and talented law firms representing the Defendants in this matter. As is appropriate, defense witnesses are thoroughly and intensively prepared for days for their depositions. They are shown documents during their preparations and it has become abundantly clear based on prior experience that they are instructed to read each document fastidiously, slowly, and line-by-line before they endeavor to answer a question posed regarding the document. From the PSC's experience, Defendants' employees and former employees more than take this instruction seriously, they take it to the extreme to effectively run-out-the-clock.[21] The PSC requests that the Court include in paragraph 13 of the proposed deposition guidelines that "Time spent reviewing documents by a witness shall not count against the time limits."[22] This prophylactic ground-rule will go a long way towards eliminating any run-out-the-clock strategy and increase efficiency of depositions in this litigation.

---

[20] *See In re Intel Corp. Microprocessor Antitrust Litig.* ("*In re Intel*"), No. MDL 05-1717 JJF, 2008 WL 5377979 (D. Del. Dec. 18, 2008), increasing deposition duration where there were three parties questioning the witnesses in that case).

[21] Proof that even paranoids have enemies - Defendants refuse to agree to include the proposed sentence which appears to validates that such a strategy is in fact utilized.

[22] *See* Exhibit "2," proposed PTO-7 at para. 18.

**C.    DEFENDANTS SHOULD BE COMPELLED TO PRODUCE CERTAIN RELEVANT DOCUMENTS FROM EMPLOYEE OR FORMER EMPLOYEE PERSONNEL FILES**

PTO-21, paragraph 10 states that "[a]bsent good cause, a request for a custodial file or an update to a previously produced file must be made at least 75 days in advance of any proposed deposition of that custodian so that the file review can be completed and production made at least 30 days in advance of the deposition."  PTO-21 does not specifically define what is contained in a "custodial file." The proposed deposition guidelines incorporate paragraph 10 and 16 of PTO-21.[23]

The parties have reached an impasse on whether Defendants should, as part of their production of a "custodial file," produce documents from an employee or former employee's personnel file in advance of a deposition.[24] The PSC contends that a "custodial file" should include an employee or former employee's personnel records. Setting aside the definitional semantics, the PSC requests that the Court order the Defendants to produce certain personnel-type documents.[25]

---

[23] *See* Exhibit "1," PTO-7, para 28.

[24] *Id.*

[25] To be clear, the PSC does not seek a witness's entire personnel file but rather seeks any personnel or performance reviews, evaluations, critiques, rewards, and action plans related to Xarelto; any self-review, self-evaluation, self-critique and/or action plans created as a part of any formal policy related to the witness's performance related to Xarelto; any document evidencing periodic reviews of performance or discipline up to and including termination related to the witness's performance, related to Xarelto; any documents reflecting any award given to the witness under any incentive plan, salary, bonus or other forms of compensation related to the witness's performance; and any portion of any termination, severance or separation document reflecting: (i) any post-employment consulting relationship with Defendants or any agreement to provide assistance to Defendants in connection with litigation; (ii) the reasons for termination, or (iii) any non-disparagement clause or provision. The PSC also seek the employee or former employee's compensation for each year or the time period that the employee or former employee was involved with Xarelto. Additionally, the PSC seeks the production of these materials well in advance of the deposition of the Sales Representatives in each of the cases being worked-up as part of the bellwether process.  *See* CMO-17 from the Pennsylvania state court *Yaz/Yasmin* consolidated litigation ordering a production similar to the production requested by the PSC herein, attached as Exhibit "25."

1)  **Courts in the Fifth Circuit Have Balanced the Federal Rules' Liberal
    Discovery Standard Against Privacy Interests to Resolve Disputes Over
    the Production of Personnel Records**

The U.S. Court of Appeals for the Fifth Circuit addressed the discoverability of personnel

files in *Coughlin v. Lee*, 946 F.2d 1152 (5th Cir. 1991), which involved claims by former deputy

sheriffs alleging improper dismissal. The court in *Coughlin* concluded that the district court erred

by limiting discovery of personnel files, and emphasized the liberal breadth of the relevance

standard under the Federal Rules of Civil Procedure.[26] The court remanded with instructions to

consider the factors outlined in *Frankenhauser v. Rizzo*,[27] which were designed to balance

competing privacy and discovery interests.[28]

Although *Coughlin* involved discovery from a governmental entity, courts in the Fifth

Circuit have applied its standard to discovery from private entities: "*Coughlin* and its subsequent

progeny make clear that in resolving disputes regarding personnel files, the court is required to

balance the competing interests of the parties in a considered manner, with regard for the breadth

of the federal discovery rules."[29] *George* involved a racial discrimination claim, and the court

---

[26] *See* Fed. R. Civ. P. 26(b) ("Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."); *Coughlin*, 946 F.2d at 1159.

[27] 59 F.R.D. 339, 344 (E.D.Pa.1973).

[28] The ten factors are: "(1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case." *Frankenhauser*, 59 F.R.D. at 344. Presumably, only factors 2, 4, 5, 8, 9, and 10 would apply to cases not involving discovery from a governmental entity.

[29] *George v. Entergy Servs., Inc.*, 2010 WL 3802452, at *4 (E.D. La. Sept. 17, 2010); *see also Eckstein Marine Serv., Inc. v. M/V Basin Pride, Basin Offshore, Inc.*, 168 F.R.D. 38 (W.D. La. 2009).

employed the *Frankenhauser* factors (without specifying which factors it considered) and found that the plaintiff's need for production outweighed the privacy concerns of the three employees.[30] Ultimately, "the proper approach in deciding whether personnel files should be disclosed is to balance the respective interests of the parties."[31]

### 2) MDL and other Courts Outside the Fifth Circuit Have Allowed Discovery of Company Employee Personnel Files

In the *Pradaxa*,[32] *Testosterone*[33] and *Tylenol*[34] MDLs, the courts have recently compelled the production of deponent personnel files. In *Pradaxa*, the PSC directed the deponents to produce, among other things, portions of the witnesses' personnel files reflecting compensation and/or bonuses and all performance reviews related to Pradaxa. Judge Herndon acknowledged the relevance of this information and ordered its production:

> Clearly, performance reviews "related to Pradaxa" are relevant to the instant litigation. The requested compensation and bonus information is also relevant. This information speaks to the plaintiffs' contention that Pradaxa was prematurely rushed or otherwise improperly placed on the market. The plaintiffs also contend that all compensation and bonus information for the subject employees – not just that related to Pradaxa – is necessary to provide a complete picture regarding the subject employees' incentives, motivation, and/or bias. The Court agrees. Accordingly, the Court will not limit the plaintiffs' request to "Pradaxa related" compensation and/or bonus information. The Court also finds that the specific dollar amount of employee compensation is relevant and necessary. The implications of an employee receiving a bonus that amounts to 10% of his or her salary cannot be fully assessed without knowing whether that employee makes $50,000 annually or $500,000 annually. Although portions of this information may not ultimately be admissible at trial, the issue presently before the Court is discoverability and not admissibility. Therefore, the Court will not allow BIPI to

---

[30] *Id.*

[31] *Eckstein Marine Service, Inc. v. M/V Basin Pride, Basin Offshore, Inc.*, 168 F.R.D. 38 (W.D. La. 2009).

[32] *In re Pradaxa Prods. Liab. Litig.*, MDL 2385, 3:12-md-02385 (S.D. Ill. Apr. 26, 2013) (D.E. 166, at 5).

[33] *See In re*: *Testosterone Replacement Therapy Prods. Liab. Litig.*, MDL 2545, 1:14-cv-01748 (N.D. Ill. Oct. 1, 2015) (D.E. 1014) attached as Exhibit "26."

[34] *See Tylenol* MDL Order dated February 26, 2014 attached as Exhibit "27."

redact the specific dollar amount of employee compensation or bonus information.[35]

Additionally, in the *Testosterone* MDL, in a one-page order, the court compelled the Defendants to produce deponent personnel files of company employees, although the scope of the production is to be negotiated shortly.[36]

The PSC anticipates that Defendants may argue the PSC is attempting to conduct a fishing expedition. However, the PSC is not seeking the personnel file for every custodian, only the files of employees and former employees that are deposed and at this point Sales Representatives in bellwether pool, are addressed by the deposition guidelines.[37] The PSC will be deposing Defendants' employees and former employees who undisputedly were actively involved in, among other things, the development, approval and marketing of Xarelto. The requested personnel documents, which might include, amongst other things, compensation and bonus information, are related to the deponents' motivation for performing those Xarelto-related duties. The PSC is not seeking personnel-type information of individuals who had nothing to do with Xarelto. Clearly this is not a fishing expedition. The documents in the personnel files are relevant information as they may be pregnant with details such as compensation, bonuses and performance reviews, compensation arrangements based upon the sale of Xarelto, audits and inspections, employee benchmarks, corporate goals, employee publications, revenue targets, contacts, physician recruitment. This information is highly relevant and speaks directly to the plaintiffs' contention that Xarelto was rapidly commercialized and rushed to the market in a highly competitive environment or otherwise improperly marketed. Without access to these files, plaintiffs will be prevented from being able to fully question the witnesses about these and many

---

[35] *In re Pradaxa Prods. Liab. Litig.*, MDL 2385, 3:12-md-02385 (S.D. Ill. Apr. 26, 2013) (D.E. 166, at 5).

[36] *Id.*

[37] *See* fnt. 24 *infra.*

other relevant topics. Access to these files also allows plaintiffs to be more efficient when deposing Defendants' employees, saving the parties and the witnesses' significant time and expense.

Under the Federal Rules of Evidence, the credibility of a witness may be attacked by any party, including the party calling the witness.[38] Although not directly covered by a specific rule of evidence, a witness may be impeached by showing that he or she is biased, has an interest in the outcome of the litigation, is prejudiced in some relevant way, or has a motive to testify in a particular way.[39] "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested."[40] Although the district court retains its broad discretion to prevent repetitive and unduly harassing interrogation, a witness's possible biases, prejudices, or "motivation" are "subject to exploration at trial, and [are] 'always relevant as discrediting the witness and affecting the weight of his testimony.'"[41] The production of personnel related documents is intended to reveal potential witnesses' bias.

For example, this Court may well remember Dr. Alise Reicin, Merck's key witness and top scientist,[42] who testified at trial before this Court in the *Vioxx* litigation, who was poised, authoritative and firm about her conviction that Merck acted appropriately and fully disclosed all

---

[38] Fed. R. Evid. 607.

[39] *United States v. Abel*, 469 U.S. 45, 49–52, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984)(permitting bias impeachment despite no rule of evidence specifically allowing it); Weinstein Treatise, § 607.04[1]; 27 Charles Allen Wright & Victor James Gold, FEDERAL PRACTICE AND PROCEDURE § 6095 (1990); MICHAEL GRAHAM, HANDBOOK OF FEDERAL EVIDENCE, § 607.7 (4th ed.1996) Christopher B. Mueller & Laird C. Kirkpatrick, EVIDENCe, § 6.33 (4th ed.1995); MCCORMICK ON EVIDENCE § 39 (John W. Strong, ed., 5th ed.1999).

[40] *Id.* (citation omitted); *Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974).

[41] *See also Olden v. Kentucky*, 488 U.S. 227, 231, 109 S.Ct. 480, 483, 102 L.Ed.2d 513 (1988); *United States v. Alexius*, 76 F.3d 642, 645 (5th Cir.1996).

[42] Dr. Reicen helped design, oversee and write up the study known as VIGOR.

of its information about Vioxx. Dr. Reicin's personnel file[43] revealed that her colleagues and supervisors hailed her as the "Tenacious Defender of the Vioxx Franchise" and that she was highly praised (and compensated) because she "Tirelessly Defends the Vioxx Franchise."

In an order compelling Johnson & Johnson to produce information regarding the compensation of employees and former employees in the *Tylenol* MDL,[44] the court reasoned that the sources of bias or prejudice are nearly limitless, and include:

> love, hate, fear, family relationship, sexual preference, ***financial interest in outcome***, ***business relationship,*** membership in an organization, shared beliefs, payment by a party such as that made to an expert witness, and in criminal matters the fact that the witness has not been charged with a crime, been granted immunity or is currently awaiting sentence.[45]

Certainly, personnel file documents disclosing compensation and bonus information of witnesses who are or were actively working on Xarelto are potentially relevant evidence of bias. It is axiomatic that compensation information be available in discovery to establish bias. Surely the fact finder must know what biases, if any, a witness may have and is entitled to know about all witnesses' biases, financial or otherwise.

### 3)  Any Privacy Concerns Raised by the Defendants Regarding Disclosure of Personnel Files Have Been Addressed Through Protective Orders

Defendants may also contend that privacy concerns outweigh any relevance of information contained in a personnel file.  The implication of privacy interests "does not mean that a party is never entitled to discover . . . the personnel files of an opponent's employees or that everything contained in them is irrelevant."[46] Rather, the "court must balance the interests of

---

[43] Exhibit "28," attached, is Judge Higbee's order dated October 14, 2004 ordering the production of personnel files of any deponent that is a current and former employee of Merck.

[44] Exhibit "27."

[45] *Id.* fnt. 3 citing Graham, HANDBOOK OF FEDERAL EVIDENCE, at § 607.7(emphasis added).

[46] *Meche v. Maintenance Dredging, Inc.*, 2012 WL 519882, at *2 (E.D. La. Feb. 16, 2012).

the parties in obtaining relevant discovery against the privacy interests of individual non-parties [and] has discretion to determine whether discovery of such files is warranted."[47] Courts have frequently addressed these privacy concerns through (a) protective orders; (b) ordering production of less than all of the personnel file, or (c) *in camera* review.[48] The U.S. Court of Appeals for the Fifth Circuit also has affirmed an order compelling the production of personnel files for *in camera* review, albeit in the context of an age discrimination claim where the files of other (non-party) terminated employees were deemed relevant to the plaintiff's claim.[49] This MDL Court, and the Pennsylvania state court, have entered nearly identical Protective Orders that provide more than adequate safeguards to protect any confidential information produced from an employee or former employee's personnel file.[50] Thus, any objection based on a lack of privacy safeguards by the Defendants are without merit and should be rejected.

The request for deponents' personnel file materials is not overly broad or unduly burdensome. The PSC has limited its request to the personnel files of those employees who were allegedly highly involved in the development, approval, and/or marketing of Xarelto, *i.e.* the employees being deposed and Sales Representatives in the early trial pool cases. In addition, any privacy concerns have been adequately addressed via the Protective Order currently in place. There is no issue regarding the dissemination of personal or confidential information. Production

---

[47] *Id*; *see also Lenihan*, 2002 WL 31427367, at *1.

[48] *See, e.g.*, *Henderson v. Liberty Mut. Ins. Co.*, 2012 WL 3267544, at *2 (S.D. Miss. 2012) (adopting the Magistrate Judge's order to produce portions of personnel records, in part because a protective order was already in place); *see also Lenihan*, 2002 WL 31427367, at *1 (ordering *in camera* review of personnel files to evaluate both relevance and need for confidentiality); *Poseidon Oil Pipeline Co., L.L.C., v. Transocean Sedco Forex, Inc.*, 2002 WL 1919797, at *4 (E.D. La. Aug. 20, 2002) (same); *Meche v. Maintenance Dredging, Inc.*, 2012 WL 519882, at *2 (E.D. La. Feb. 16, 2012) (same); *Brassell v. Turner*, 2006 WL 1806465, at * (S.D. Miss. June 29, 2006) (same); *Consolidated Grain & Barge Co., Inc. v. M/V CSS ATLANTA*, 2000 WL 495740, at *1 (E.D. La. Apr. 24, 2000) (same).

[49] *Atkinson v. Denton Pub. Co.*, 84 F.3d 144, 148 (5th Cir. 1996).

[50] *See* MDL PTO-12 and PA CMO-5.

under these conditions is appropriate and sufficiently protects any sensitive information contained within the requested personnel files.

### D. THE PSC'S PROPOSAL FOR HANDLING THE AUTHENTICITY OBJECTIONS OF DEPOSITION EXHIBITS IS FAR MORE EFFICIENT THAN THE DEFENSE PROPOSAL AND WILL FACILITATE AN EXPEDITED PRE-TRIAL AND BELLWETHER TRIAL PROCESSES

The *Manual for Complex Litigation* (Fourth), 2004 recognizes that "[i]n managing documents, the court should therefore also take into account the need for effective and efficient procedures to establish the foundation for admission, which can be accomplished by stipulation, requests for admission, interrogatories, or depositions (particularly Rule 31 depositions on written questions)."[51]

The parties have reached an impasse on how to handle the objection to the authenticity exhibits used at a deposition.[52] The PSC's proposal for Defendants to make any objection regarding authenticity (20) days after the deposition is a far more efficient approach than waiting until the end of the discovery period to negotiate admissibility as the Defendants propose. The PSC's proposal is an approach that was taken by the court in the *Tylenol* MDL[53] and effectively and efficiently resolve most authentication issues well in advance of the first bellwether trial in this litigation. In contrast to the "here and now" of the PSC's proposal, the Defendants are simply "kicking the can down the road."

The primary purpose of the PSC's proposal is to address authenticity disputes (like the one set forth in footnote 54, *supra*.) in an efficient and manageable manner and not delay until a later time when the task becomes an immense burden on both the parties and the Court in terms

---

[51] *Manual* § 11.445; *see also* § 11.471 (Stipulation of Facts).

[52] *See* Exhibit "2," para 44.

[53] Exhibit "21," Tylenol MDL, Deposition Protocol for Non-Expert Witnesses, CMO-14, para. 12(g).

of the sheer volume of work to be completed at once. It is a far more efficient and organized procedure for the Defendants to inform the PSC of any objection to the authenticity of a document shortly after the document is used at a deposition than it is to delay addressing authenticity as the Defendants propose. The PSC has a right to know before the close of discovery whether the Defendants are seriously objecting to the authenticity of documents[54] so if additional discovery is needed it can be undertaken while discovery remains open.

---

[54] As evidenced by the following testimony and colloquy at the  Bayer 30(b)(6) deposition of Keith Abrams, General Associate Counsel, authenticity appears to be an issue even with organizational charts produced by the Defendants in this litigation:

BY MR. WEINKOWITZ:

Q.    No.  11,  Exhibit  11  XARELTO_BHCP  06291217  through XARELTO_BHCP 06291229, can you identify this document for the record?

A.    This document states that it is the organizational structure of Bayer Healthcare Pharmaceuticals, Inc. as of January 1, 2014.

Q.    Did you review Exhibits 10 and 11 in preparation for your deposition today?

A.    Yes.

Q.    BHCP -- I am sorry, No. 12, XARELTO_BHCP 06291194 through XARELTO_BHCP 06291216, can you identify this document for the record?

A.    Yes.  This document states it is the organizational structure of Bayer Healthcare Pharmaceuticals, Inc. as of January 1, 2015.

Q.    Did you review this document in preparation for your deposition today?

A.    I did, yes.

Q.    And were all of these documents prepared in the regular course of business before –

MR. HASTON:   Object to the form.

THE WITNESS:   I don't have the knowledge of how these were prepared.

Q.    Do these appear to be business documents, sir?

MR. HASTON:   Object to the form.

THE WITNESS:   These appear to be documents which I have generated by a program which -- from which you can prepare organizational charts or employ organizational charts.

Additionally, if the Defendants are not inclined to agree on authenticity, and or the criteria of Fed.R.Evid. 803(6), as reflected in the example in footnote 54, than a two (2) day depositions will be far from adequate, rather at least a four (4) day deposition will be necessary because of the exponential increase in time it will take to authenticate each document and establish that a) it was made at or near the time by someone with knowledge; b) kept in the course of regularly conducted activity; c) making the record was a regular practice of that activity; d) testified to by a qualified witness; and e) there is no other showing indicating a lack of trustworthiness.

Alternatively, the Court could add a provision to the Deposition Guidelines that at the end of all questioning but before the conclusion of any deposition, there should be a document authenticity/admissibility period, whereby the parties meet and confer on authenticity, and to the extent there is no agreement, then the Defendants must produce a proper knowledgeable corporate representative on an expedited basis to speak to the authenticity/admissibility of any documents. This deposition should not be counted towards the total limit of witnesses for

---

Q.     Is that program used in the regular course of BHCP's business?

A.     I don't have an answer to that.

MR. WEINKOWITZ:  Can we stipulate these are business records?

MR. HASTON:     *No, we can't do that*, but we can stipulate that they are documents that he produced and reviewed in preparation for his deposition.

MR. WEINKOWITZ:   So are we going to have a difficulty with business records?

MR. HASTON:  I hope not.

MR. WEINKOWITZ:   Because these clearly appear to be business records.

MR. HASTON:  I can't do that today.  I can't.

(Exhibit "31," Abrams dep. at 125:5-128:6)(emphasis added)).

depositions. Only after that authenticating process is concluded, will the original witness's deposition be considered concluded, assuming there are no other issues.

The PSC respectfully requests that its approach be implemented, or the alternative procedure described in the preceding paragraph.

E.      THERE IS NO BASIS FOR ADDITIONAL CAMERAS ON COUNSEL DURING A DEPOSITION AND THE COURT SHOULD NOT ORDER THEM

Over the objection of the PSC, the Defendants insist on including paragraph 45(e) regarding additional cameras.  There is no provision in the Federal Rules of Civil Procedure[55] that authorizes additional cameras to be focused on the questioning attorney during a videotaped deposition.[56]

The PSC believes that the Defendants' attempt to have cameras on the questioning attorneys is simply a ploy to chill or somehow intimidate plaintiff's counsel. There is no dispute that the questioning by counsel is not evidence – the answers by sworn witnesses to the question is testimony. It is unlikely that the questioning and defending attorneys' video will ever be shown to a jury.

Further, because there has not been any showing of abuse, nor can the Defendants point to a single instance of an attorney acting improperly at any deposition taken thus far in this case, there is no basis for the guideline provision which adds additional cameras to the deposition

---

[55] *See* Fed. R. Civ. P. 30(b)(4) and similarly in Pennsylvania, *see* Pa.R.Civ.P. 4017.1.

[56] Defendants may argue that neither the Federal Rules of Civil Procedure (nor the procedural rules of Pennsylvania) prohibit a party from using additional cameras.  Such an argument misses the point, just because the rules do not prohibit or limit a procedure does not mean such a procedure is authorized. Additional cameras do not advance the *just, speedy, and inexpensive* determination of every action and proceeding for which the rules are to be administered and employed as set forth under Fed.R.Civ.P.1. For example, Defendants are proposing double-tracked depositions in Amsterdam which, if extra cameras are allowed, will result in the parties incurring the considerable and excessive expense for six (6) camera/video operators flying across the Atlantic, in addition to the costs of hotels, meals and daily video-operator fees.

room. In the event that there is any impropriety in the future -- and there will not be on the plaintiff-side – the Defendants will still have their right to seek to have additional cameras trained on counsel.  Until such a showing can be made, the inclusion of a provision for additional cameras and Defendants' proposed paragraph 45(d) is unwarranted and unnecessary.

Additional cameras do not advance the *just, speedy, and inexpensive* determination of every action and proceeding for which the Rules of Civil Procedure are to be administered and employed.[57] On the contrary, additional cameras are disruptive, inordinately more expensive, and the vast majority of courts in mass tort litigation have not included a provision for additional cameras in depositions protocols.

The Defendants may make the argument that courts in other mass tort litigations "commonly" permit the use of multiple cameras referring to order entered in the Superior Court of New Jersey consolidated matters involving *Levaquin*, *Risperdal/Seroquel/Zyprexa* and the *Ortho Evra* patch to orders the *Yaz/Yasmin* MDL and Pennsylvania state-court litigation.[58] This argument is meritless.  It is not "common" and indeed the vast majority of mass tort cases do not permit additional cameras.  For example, additional cameras were not included in the deposition guidelines in this Court's guidelines in *Vioxx* and *Propulsid*.  Likewise, there was no provision for additional cameras in the deposition protocols in any of the following MDLs: *Deep Water Horizon, Ethicon Mesh, Bard Mesh, Testosterone, Pradaxa, Baycol, Zoloft, Avandia, Cook IVC Filter, Tylenol, Ortho Evra, NHL, Mirena, Diet Drugs*, *Guidant Defibrillator* ("Only the

---

[57] Fed.R.Civ.P.1; Pa.R.Civ.P. 126.

[58] Members of the PSC and the federal state liaison committee who were directly involved in the first bellwether trial preparations in the *Yaz/Yasmin* MDL and Pennsylvania state court litigations, report that notwithstanding Bayer's use of additional cameras to record attorneys during depositions, at no time in the weeks leading up to the initial bellwether trials did Bayer advise the Plaintiffs or the courts of any intent to utilize the video from the additional cameras at trial even as the parties exchanged deposition cuts.

deponent and demonstrative materials or other exhibits used during the deposition will be videotaped); *Levaquin* and *Bextra-Celebrex* ("Each witness, attorney, and other person attending the deposition shall be identified on camera at the commencement of the deposition. Thereafter, only the deponent and any demonstrative materials and exhibits used during the deposition, which may be taped *via* split screen will be videotaped").[59]

Defendants undoubtedly will attempt to justify their request for additional cameras by arguing that showing the jury video of both the examining attorney and the witness is more representative of the true experience and makes the video presentation more dynamic and interesting. However, if the Defendants videotape the Plaintiffs' attorney examining a witness, the PSC will insist that a camera be placed on both the Bayer and Janssen attorneys at the deposition. If at trial Defendants elect to show the video of the examining attorney then Plaintiffs' counsel will want to show the video of the two defense attorneys. This will necessitate four (4) split screens (in addition to a screen showing the document that the witness is being questioned about) which will be distracting to the witness, not dynamic or interesting. More importantly, the documents that the witness is being questioned about will be difficult for the jury to see. There will be too many screens and additional equipment at trial. The jury will be distracted from focusing on the witness limiting its ability to judge veracity and credibility.

Furthermore, the goal of discovery and bellwether trials in an MDL is, in part, to create a trial package[60] for use by Plaintiffs on remand. Defendants' request for additional cameras will

---

[59] Exhibit "30" *In re Bextra and Celebrex Products Liability Litigation*, MDL 1699, PTO 17.

[60] *See In re Vioxx Products Liab. Litig.* 802 F.Supp.2d 740 (E.D. La.2011); *In re: Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Products Liab. Litig.* 2002 WL 32154197, at *12 (E.D. Pa. Oct. 3, 2002); Eldon E. Fallon, Jeremy T. Grabill, & Robert Pitard Wynne, *Bellwether Trials in Multidistrict Litigation*, 82 TUL. L. REV. 2323, 22325n.74 (2008) ("At a minimum, the bellwether process should lead to the creation of 'trial packages' that can be utilized by local counsel upon the dissolution of MDLs."); *see id.* at 2340 ("Ultimately, the availability of a trial package ensures that the

result in a trial package with video of attorneys that appear before the jurors in the remand court. This will lead to confusion in addition to the distraction described in the preceding paragraph. While video contains the voices of counsel that might not be recognized by jurors on remand, video of unfamiliar attorneys would only serve to create more confusion, not less. This will result in prejudice to Plaintiff's counsel at trial on remand thereby diminishing value and the work that went into the creation of the trial package.

Finally, the Defendants' proposal imposes upon the PSC the additional expense of having to sync the video with the transcript. Syncing four camera feeds into one video will be very costly and the PSC should not have to incur these additional potentially substantial costs.

The PSC respectfully requests that the Court strike Defendants' proposed paragraph 45(d) and disallow additional cameras in depositions.[61] Again, it is the answer of the sworn witness that is admissible testimony not the question or the demeanor of the examining attorney.

---

knowledge acquired by coordinating counsel is not lost if a global resolution cannot be achieved in the transferee court.").

[61] Should the Court permit the use of multiple cameras on counsel, Defendants should bare <u>all</u> of the cost of the additional cameras (three; including one for each Defendants' counsel-Bayer and Janssen) and all the costs of BOTH SIDES for syncing the attorney video at trial if Plaintiff's so request. *See* Exhibit 15, *Levaquin MDL*, PTO-2 (requiring requesting party to pay for both the cost of the additional camera and the subsequent synchronization with the witnesses' testimony.).

IV.    **CONCLUSION**

For all of the foregoing reasons, the PSC respectfully the Court to enter the PSC's version of *Deposition Guidelines*.

Respectfully submitted,

*/s/ Leonard A. Davis*

_____

Leonard A. Davis, Esq. (Bar No. 14190)
*HERMAN, HERMAN & KATZ, LLC*
820 O'Keefe Avenue
New Orleans, LA  70113
PH:  (504) 581-4892
FAX:  (504) 561-6024
Email:  ldavis@hhklawfirm.com

Gerald E. Meunier (Bar No. 9471)
*GAINSBURGH BENJAMIN DAVID MEUNIER
& WARSHAUER, LLC*
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA  70163-2800
PH:  (504) 522-2304
FAX: (504) 528-9973
Email:  gmeunier@gainsben.com

*Plaintiffs' Liaison Counsel*

**PLAINTIFFS' STEERING COMMITTEE**

| | |
|---|---|
| Andy D. Birchfield, Jr. (Co-Lead Counsel)<br>234 Commerce Street<br>Post Office Box 4160<br>Montgomery, Alabama 36103-4160<br>Phone: (334) 269-2343<br>Fax: (334) 954-7555<br>Email: Andy.Birchfield@BeasleyAllen.com | Bradley D. Honnold<br>11150 Overbrook Rd., Ste. 200<br>Leawood, KS 66211<br>Phone: (913) 266-2300<br>Fax: (913) 266-2366<br>Email: bhonnold@bflawfirm.com |
| Brian H. Barr (Co-Lead Counsel)<br>316 Baylen Street, Suite 600<br>Pensacola, FL 32502<br>Phone: (850) 435-7045<br>Fax: (850) 436-6044<br>Email: bbarr@levinlaw.com | Frederick Longer<br>510 Walnut Street, Suite 500<br>Philadelphia, PA 19106<br>Phone: (215) 592-1500<br>Fax: (215-592-4663<br>Email: flonger@lfsblaw.com |

| | |
|---|---|
| Russell T. Abney<br>2100 RiverEdge Parkway,<br>Suite 720<br>Atlanta, Georgia 30328<br>Email: rabney@lawyerworks.com | Jeffrey S. Grand<br>550 Broad Street, Suite 920<br>Newark, NJ 07102<br>Phone: (973) 639-9100<br>Fax: (973) 639-9393<br>Email: jgrand@seegerweiss.com |
| Dr. Mark Alan Hoffman<br>1650 Market Street, Suite 3450<br>Philadelphia, PA 19103<br>Phone: (215) 574-2000<br>Fax: (215) 574-3080<br>Email: mhoffman@rossfellercasey.com | Roger C. Denton<br>100 S. 4th Street<br>St. Louis, MO 63102<br>Phone: (314) 621-6115<br>Email: rdenton@uselaws.com |
| Michael Goetz<br>201 N. Franklin St., 7th Floor<br>Tampa, FL 33602<br>Phone: (813) 221-6581<br>Fax: (813) 222-4737<br>Email: MGoetz@ForThePeople.com | Dianne M. Nast<br>1101 Market Street, Suite 2801<br>Philadelphia, Pennsylvania 19107<br>Phone: (215) 923-9300<br>Email: dnast@nastlaw.com |
| Neil D. Overholtz<br>17 E. Main Street , Suite 200<br>Pensacola, Florida 32501<br>Phone: (850) 916-7450<br>Fax: (850) 916-7449<br>Email: noverholtz@awkolaw.com | Ellen Relkin<br>700 Broadway<br>New York, New York 10003<br>Phone: (212) 558-5500<br>Fax: (212) 344-5461<br>Email: Erelkin@weitzlux.com |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 15, 2016, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to Liaison Counsel for Plaintiffs and Defendants by operation of the court's electronic filing system and served on all other plaintiff counsel via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre-Trial Order No. 17.

*/s/ Leonard A. Davis*
**LEONARD A. DAVIS**