# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: ZOLOFT (SERTRALINE HYDROCHLORIDE) PRODUCTS LIABILITY LITIGATION | : MDL NO. 2342<br>: 12-MD-2342<br>:<br>: HON. CYNTHIA M. RUFE |
| THIS DOCUMENT RELATES TO ALL ACTIONS | :<br>:<br>: |

## SPECIAL DISCOVERY MASTER'S REPORT AND RECOMMENDATION NO. 12 (REGARDING PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF EMPLOYMENT FILES)

February 18, 2015

Plaintiffs seek the personnel or employment files maintained by Pfizer in its Human Resources Department related to all of the Pfizer employees or ex-employees who have been or will be deposed by plaintiffs. I understand that there are more than 70 people in that category. Plaintiffs' motion arose in the context of a specific request for the personnel file of one ex-employee, Julie Fisher, but the motion and Pfizer's opposition relate generally to the many other employees and ex-employees who were or may be witnesses.

The record related to Ms. Fisher does not support production of the file related to her, much less to the files related to the many other witnesses. This is partly because an *in camera* examination of the personnel file of this ex-employee shows that the file does not contain any records that are pertinent to the purpose for which plaintiffs seek the records. Pfizer's record keeping method did not result in retention in the personnel file of the records that plaintiffs seek. Therefore, I recommend that the motion be denied insofar as it relates to the single employee whose employment history was dealt with on this motion. Plaintiffs have not made a specific showing that the file is clearly relevant to their claims.

I further recommend that the motion be left open insofar as it relates to other Pfizer employees and ex-employees. If plaintiffs seek to compel production of the personnel records of any of these other people, the analysis set forth below should be applied to determine whether production of the files of these other people is required. The cases cited below require individualized review of the circumstances related to the particular employees or ex-employees and of the issues to which the facts of their employment relate. Whether discovery of portions of their files that relate to particular issues is required must be determined on a case by case basis. Pfizer's record keeping system differed from time to time, and it may well be there is a basis for requiring a search for certain records related to other employees and ex-employees on specific topics. Even though plaintiffs' request for the personnel or employment files of all of the Pfizer personnel who have been identified so far cannot be sustained on a wholesale basis, discovery of personnel records might be permitted in some cases on an individual basis.

## I.   PROCEDURAL AND FACTUAL BACKGROUND

This matter is before me upon Plaintiffs' Motion to Compel Production of Employment Files, filed on June 5, 2014. (Dkt. No. 944) It was referred to me on June 9, 2014. (Dkt. No. 950) Pfizer filed its response on June 19, 2014. (Dkt. No. 975) All proceedings in this Multidistrict Litigation were stayed on July 1, 2014. (Dkt. No. 982) The stay was lifted on January 7, 2015 (Dkt. No. 1107), and the matter is now ripe for decision.

The motion dealt with documents that had been requested in anticipation of the deposition of Julie Fisher, who was employed by Pfizer from about 1986 to 2007. Plaintiffs noticed the deposition of Ms. Fisher on May 14, 2014, calling for the deposition to be held July 7, 2014. The notice included a request for documents, among which were ". . . [a] copy of the personnel file and/or employment file for the deponent." (Dkt. No. 944-3, p. 6 of 8) To this

specific request, Pfizer interposed twelve general objections and referred plaintiffs to "the custodial file document production for Ms. Fisher." Based on the enumeration of the documents, it appeared that the custodial file contained more than 19,000 pages. (Id.)

The custodial file for Ms. Fisher that Pfizer produced consists of documents and emails received and/or generated by Ms. Fisher during the course of her employment, along with documents authored or attributed to her in Pfizer's document systems. Until this motion was filed and referred to me, Pfizer had not conducted an independent search for Julie Fisher's personnel files within Pfizer's Human Resources department. Unless a document that Human Resources maintains was sent to or from Ms. Fisher, or was authored by or attributed to her, it is not in what the parties refer to as her custodial file. Apparently, any evaluations of Ms. Fisher were not sent to her, at least not in a format that caused them to be preserved in her custodial file. Similarly, salary and other compensation information do not appear in her custodial file.

While the motion arose from plaintiff's efforts to get Pfizer's Human Resources Department's personnel file on Ms. Fisher, the motion itself called for compelled production of "personnel files and/or employment files" on other Pfizer employees, as well. Plaintiffs seek, in this motion, the personnel files or employment files on all of the Pfizer personnel who have been deposed or will be deposed in this litigation.

The discovery produced by Pfizer with respect to its employees and ex-employees other than Ms. Fisher is similar to what was given with respect to Ms. Fisher. Custodial file productions in advance of depositions of other Pfizer employees did not include production of wage, compensation or evaluative documents unless those documents had also made their way into the custodial files of the witnesses as a result of their having been sent to or from the witnesses. Therefore, the plaintiffs have received only a smattering of evaluative documents;

these were the product of the witnesses having written self-evaluations or statements of goals and of having received responses and feedback. Generally, though, evaluations were not sent to the employees (at least not in a format that was preserved so that they would be found in a search responsive to discovery requests) or written by them, and they were therefore not produced in custodial file productions. Similarly, wage and compensation information was not produced as part of custodial files.

Julie Fisher was an employee at Pfizer for about twenty years, holding various positions from 1987[1] to 2007, at which point her employment ended. She began her employment as a secretary, became an exhibits coordinator a few months later, and then became an administrative convention coordinator in 1989. The record submitted to me does not show what jobs and responsibilities she had after 1989. The motion states—and Pfizer does not contest—that the positions held after that related to marketing. (Dkt. No. 944, p. 1 of 7)

Plaintiffs asserted in their motion that Ms. Fisher's personnel file is likely to contain "highly relevant" information that "can be central to assessing and testing" her "credibility, qualifications and bias." (Dkt. No. 944, p. 1 of 7) Plaintiffs point to a number of types of information that they anticipate will be revealed by disclosure of a personnel file and that they argue would be "highly relevant:"

- whether an employee was (or was not) disciplined for incorrectly handling or reporting adverse events;
- whether an employee received a bonus, raise or positive review for ensuring the warning label for a drug was not enhanced;
- whether an employee was disciplined or terminated because the employee expressed an opinion about the safety or efficacy of a drug;
- whether an employee's severance agreement contained a "non-disparagement"

---

[1] The briefing states that Ms. Fisher went to work for Pfizer in January 1987. The documents produced *in camera* refer to her having started working for Pfizer in January 1986.

>
> clause;
>
> - whether an employee has stock ownership in the Company; or
>
> - whether an employee's compensation was directly tied to efforts to market or sell Zoloft to women of childbearing potential and/or Ob/Gyns instead of psychiatrists.

(Dkt. No. 944, p. 2 of 7)

In the course of argument, held on June 23, 2014, plaintiffs submitted additional materials to me. On that date, plaintiffs submitted statements of goals and capability assessments relating to four Pfizer employees other than Ms. Fisher, dating from between 2000 and 2003. These documents had been produced as part of the disclosure of custodial files of Pfizer employees other than Ms. Fisher. At my request, Pfizer made a search of evaluative documents and documents and information related to Ms. Fisher's wages and compensation that could be found in the personnel file maintained on Ms. Fisher by the Human Resources department of Pfizer. Pfizer submitted these materials for my *in camera* review on June 26, 2014.

Ms. Fisher's file that was produced *in camera* did not include what plaintiffs anticipated might be there. The file contains various papers called "personnel action documents," that reflect changes in job title or compensation. These end in 1989, before Ms. Fisher could have had any marketing responsibilities related to Zoloft. There are documents related to Ms. Fisher's request that Pfizer pay for some courses that she was taking. These date from 1987, 1988 and 1994. There is a technical document related to a payroll entry dating from 2001. There are documents relating to time off and vacation in 1991. Ms. Fisher's evaluation of her own performance contributions during 1989—before Zoloft was marketed—appears in the file, as do evaluations by others of her work as an administrative coordinator of convention displays in the late 1980s.

If there are documents that plaintiffs seek about Ms. Fisher somewhere in the Pfizer system, they are not in the Human Resources Department's personnel file. Pfizer's counsel stated during argument on this motion that, as a general matter, few evaluative documents have been kept in Human Resources personnel files over the years. Pfizer did not consistently call for copying of manager-subordinate evaluations into the central Human Resources file during the time when Ms. Fisher was employed. In connection with the *in camera* submission of Ms. Fisher's file, Pfizer's counsel stated that retention of evaluations by supervisors in a central Human Resources Department file stopped during the earlier part of Ms. Fisher's employment and did not resume "until more recently." Pfizer does not pinpoint the date "more recently" when centralized retention of supervisor evaluations may have resumed; presumably it occurred around or some time after Ms. Fisher's departure in 2007.

## II. **LEGAL STANDARD**

A leading case in this district on the discovery of personnel files is *In re Sunrise Sec. Litig.*, 130 F.R.D. 560 (E.D. Pa. 1989) (O'Neill, J.). In that multidistrict litigation arising from the insolvency of Sunrise Savings and Loan Association, the court was considering a number of motions relating to first phase document production. *Id.*, at 562. Sunrise's auditor, Deloitte Haskins & Sells ("DHS") sought to withhold performance evaluations and other personnel records of those of its employees who had worked on the audits of Sunrise. *Id.*, at 580. The court declined to compel production of the personnel documents, reasoning as follows:

> Strong public policy exists against disclosure of the personnel records sought by the moving parties because disclosure would invade DHS employees' privacy, and "firms might cease to frankly criticize and rate their own performance, for fear that any written evaluations they make might be used against them or their employees in a lawsuit." *New York Stock Exchange, Inc. v. Sloan*, 22 Fed. R. Serv. 2d (Callaghan) 500, 503 (S.D.N.Y. 1976). As with income tax returns, discovery of personnel records is permissible "if (1) the material sought is 'clearly relevant,' and

(2) the need for discovery is compelling because the information sought is not otherwise readily obtainable." *Matter of Hawaii Corp.*, 88 F.R.D. at 524 (citing *Sloan*, 22 F.R.Serv.2d at 505).

The moving parties claim that the personnel records are clearly relevant to the allegations of negligence and wrongdoing by DHS in this litigation. Any connection, however, between these records and the allegations of negligently conducted audits, fraud and conspiracy is speculative. *See Sloan*, 22 F.R.Serv.2d at 502 (holding that personnel records were irrelevant to allegations of negligently conducted audits because they concerned only what "management thought of the employees it assigned to the audit."). The one allegation to which the personnel records might be relevant, FSLIC's allegation that DHS acted negligently in "planning" and "staffing" its audits, is too general to make clearly relevant all available information about the employees who conducted the audits. As discussed above, general allegations of wrongdoing do not, standing alone, open the season for fishing expeditions.

For DHS's personnel records to be clearly relevant, the moving parties must make specific allegations or some initial showing, based on deposition testimony or other evidence, that DHS acted negligently in using particular employees on the Sunrise audits.

*In re Sunrise Sec. Litig.*, 130 F.R.D. 560, 580 (E.D. Pa. 1989).

The teaching of *Sunrise* is that personnel files are generally protected from discovery. A mere showing that they appear reasonably likely to lead to discovery of admissible evidence under Federal Rule of Civil Procedure 26(b)(1) may not be enough to give rise to disclosure, as the documents sought must be "clearly relevant," and the information sought must not be readily available from sources outside of the personnel file." *Id*. This approach was followed in *In re One Bancorp Sec. Litigation*, 134 F.R.D. 4, 12 (D. Me. 1991).

The approach of Sunrise was followed in this district in *Closterman v. Liberty Mutual Ins. Co.*, 1995 U.S. Dist. LEXIS 11356 (E.D. Pa., August 9, 1995). There, the plaintiff claimed that the defendant insurer had handled and processed plaintiff's fire insurance claim in bad faith. Plaintiff sought discovery of the evaluation and compensation records of the employees of

defendant who had handled the claim and of the claims manager. Citing cases that had also been cited in *Sunrise,* the court stated:

> Plaintiff was simply not entitled to the evaluations or compensation records of the employees of Defendant. There exists a strong public policy against the disclosure of personnel files. *In re the One Bancorp Securities Litigation*, 134 F.R.D. 4 (D. Me. 1991). Employees "justifiably expect [their personnel files] to be kept confidential". *New York Stock Exchange v. Sloan*, 22 F.R. Serv. 2d 500, 503 (S.D.N.Y. 1976). The disclosure of personnel files and evaluations would discourage the candid evaluations of employees and thereby hamper the ability of companies to maintain their standard and improve their performance. *Id.*
>
> Moreover, the requested personnel files are not relevant to the issues in this case, namely the propriety of Defendant's conduct in handling Plaintiff's claim of loss. Even if the material was considered relevant, said relevancy was insufficient to overcome the confidential nature of the material.

*Closterman v. Liberty Mutual Ins. Co.,* 1989 U.S. Dist. LEXIS 11356, at *4 (E.D. Pa., August 9, 1995).

A similar approach was taken in this district in *Stabilius, Div. of Fichtel & Sachs Industries, Inc. v. Haynsworth, Baldwin, Johnson and Greaves, P.A.*, 144 F.R.D. 258 (E.D. Pa. 1992). *Stabilius* was a legal malpractice case, in which the plaintiff alleged that defendant gave defective legal advice in connection with the plaintiff's union contract negotiations and subsequent labor disputes. *Id.*, at 261. See also *Santer v. Teachers Ins. And Annuity Asso.*, 2008 U.S. Dist. LEXIS 21767 (E.D. Pa. March 19, 2008), at *18 (citing cases beginning with *Sunrise* calling for heightened standard of relevance in evaluation of request for personnel information).

Most of the cases cited above restrict personnel file discovery because of the chilling effect that such discovery might have on the willingness of people to write honest and critical evaluations. *E.g., Sunrise, supra.* Under Pennsylvania law, it is hard to see how the possibility of discovery years later by a third party will inhibit a person from writing a critical endorsement

when the employee whose work is evaluated has an unqualified right to see the evaluation right after it is written. 43 P.S. § 1322 (employee may, upon request, inspect employment file). The more compelling policy concerns arise from a desire to protect the privacy of the employee, who may consider evaluative materials as well as personal information, such as health information, information about dependents, and personal financial information, to be sensitive. Some of these concerns, of course, may be alleviated by the confidentiality requirements that are agreed to by the parties in this litigation. However the policy considerations may be weighed, *Sunrise* and cases like it remain the law in this district.

In the context of multidistrict pharmaceutical litigation, the parties discuss two cases where courts have permitted the discovery of employee personnel files over objections by the defendant. In *In re Pradaxa*, plaintiffs sought to discover "all compensation and bonus information for the subject employees — not just that related to Pradaxa," arguing that it was "necessary to provide a complete picture regarding the subject employees' incentives, motivation, and/or bias." 2013 U.S. Dist. LEXIS 59843, *2 (S.D. Ill. Apr. 26, 2013). The United States District Court for the Southern District of Illinois agreed, finding that "the subject request is not overly broad or unduly burdensome" because the "plaintiffs have limited their request to the personnel files of those employees who were allegedly highly involved in the development, approval, and/or marketing of Pradaxa." Id. The court also attempted to assuage confidentiality concerns by highlighting the "protective order currently in place." Id.

In *In re Trasylol*, plaintiffs filed a motion to compel the personnel file of a drug maker's associate director of regulatory affairs, seeking documents which "relate to her compensation and performance reviews." 2009 U.S. Dist. LEXIS 46488, (S.D. Fla. Apr. 7, 2009). Much like Pfizer in the instant case, the defendants claimed that a "strong public policy against the

discovery of personnel files," militated against granting plaintiffs' motion. Id. The defendants also argued that "absent plaintiff making a specific, rather than a generalized, showing as to why they need private and personal information ... such materials should not be produced." Id. The court granted the motion to compel the production of this single employee's personnel file because:

> The Plaintiffs informed me that they are seeking all files within Ms. Foley's personnel file relating to her performance reviews and compensation, because in the personnel files of some Bayer employees, there are documents which indicate that there is some relationship between sales of particular drugs and an individual employee's compensation or review. They seek to determine whether Ms. Foley's compensation or performance reviews had any such type of relationship with the sales of Trasylol.

Id, at *58.

In all of these cases, as in this case, it is important to evaluate on an individual basis the question of whether material in a particular employee's personnel file is likely to be relevant to a claim or defense that is being pursued in the case. In *Traylol*, for instance, the court dealt with the file of one employee, and made the determination that production is required based on what had been seen in files of other employees. The court's opinion states that the court would not have been inclined to require production of personnel files of all witnesses. This is consistent with *Sunrise*, which was decided in connection with "first phase discovery;" the opinion does not appear to foreclose production of individual personnel files upon specific showings that the files were likely to contain "clearly relevant" material not discoverable by other means. *Id.*, 130 F.R.D. at 162. (See also *Gehring v. Case Corp.*, 43 F.3d, 340, 342 (7th Cir. 1994) (affirming based on district court's employee by employee determination of whether their personnel files should be produced).

### III. CONCLUSION

In the specific case of Ms. Fisher, the determination of this motion is not complicated. It is facilitated by my *in camera* review of Ms. Fisher's personnel file. There is nothing in the personnel file maintained by the Human Resources Department of Pfizer on Ms. Fisher that deals with any of the scenarios described or posited by plaintiffs and described at page 4, above. The file has some evaluations made before Zoloft was marketed, and there is no mention of Zoloft in those evaluations. It has salary and other financial information that goes no farther than 1994. I see reason to compel the production of these materials. For this reason alone, I recommend that the motion be denied insofar as it is with respect to the personnel or employee files of Ms. Fisher in Pfizer's Human Resources Department.

The denial of this motion with respect to information about Ms. Fisher does not deal with all of the questions presented on the motion. It is natural to pose the question of whether there are evaluative materials or compensation information about Ms. Fisher and others that are more likely to be the proper subject of discovery. And, if there are such materials, where are they kept besides the Human Resources personnel file? It is apparent that they are not in the custodial productions.

Pfizer's submission to me stated that personnel information may have been kept in a central repository on a consistent basis "more recently" than Ms. Fisher's departure, but how recently that began is not disclosed  It is possible that discovery taken of Pfizer will reveal the likely existence and retention of personnel materials related to some employees and ex-employees that will meet the test of *Sunrise* and similar cases.

In the absence of any presentation in the motion about any of the other employees, and, for example, about what roles these employees played with respect to marketing or research, or

about what personnel actions were taken with respect to these employees that might give rise to the need for discovery, it is not possible for me to make a particularized determination about what discovery is appropriate with respect to them.[2] I cannot begin to make determinations about whether particular information about any one of these employees or ex-employees is likely to be "clearly relevant" within the meaning of *Sunrise, supra*, not subject to discovery by means other than review of personnel files, and obtainable without undue burden. I therefore recommend that the motion be left open and within my jurisdiction so that plaintiffs may make presentations about the need for discovery about them if that need falls within the standards stated in this Report and Recommendation.

Respectfully submitted,

Andrew A. Chirls,
Special Discovery Master

Fineman Krekstein & Harris P.C.
1735 Market Street, Suite 600
Philadelphia, PA 19103

---

[2] I do not fault the plaintiffs for making a presentation that is sparing in this regard. At least for requests for relief that are filed directly with the Special Discovery Master, there has been a seven page limit on briefs. The issue was properly pitched up with Ms. Fisher's information as an exemplar, and could not possibly have been presented comprehensively with respect to so many other employees within the time and space limits that were then in existence.

I have considered Pfizer's argument that the timing of the presentation of this motion should weigh against plaintiffs. The question of whether personnel or employment files should be produced could have been presented before it was. The main consideration raised by Pfizer's argument, however, is whether personnel and employment file discovery is practical in light of the amount of time left for discovery, not so much in light of how much time had passed. In the summer of 2014, when this motion was filed, the end of discovery was, paradoxically, nearer than it is now. Because there will be renewed *Daubert* consideration of a general causation expert to be presented by plaintiffs, there is likely to be more time to take discovery before trial than was the case in the summer of 2014. See Pretrial Order No. 63 (Dkt. No. 949), establishing deadlines which will now be reset.