# EXHIBIT E

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO ALL ACTIONS | JUDGE ELDON E. FALLON |
| | MAG. JUDGE NORTH |

### DECLARATION OF HENNING MOELLE

**FRANKFURT AM MAIN**

**GERMANY**

I, **HENNING MOELLE**, hereby state and swear that:

1. I am a German attorney-at-law (*Rechtsanwalt*) practicing law in Frankfurt am Main (Germany). I have passed the German First Legal State Exam at the University of Passau in 1992 and the German Second Legal State Exam before the Higher Regional Court of Schleswig (Germany) in 1996. I have been awarded the degree of a *doctor iuris* from the University of Passau (Germany) in 1995 and of a Master of Laws (LL.M.) from the University of Nottingham (UK) in 2005. I was admitted to the legal bar of the courts of Frankfurt a.M. (Germany) in 1997. Since then, I have been practicing law as a German attorney (*Rechtsanwalt*) with a focus on national and trans-border litigation.

2. I submit this Declaration based upon my personal knowledge of the matters stated herein.

3. I have been advised by Bayer Pharma AG (hereafter referred to as "Bayer") that Bayer is a defendant in the Xarelto product liability litigation pending before courts in the USA. Further, I have been advised by Bayer that plaintiffs have requested Bayer to make certain personnel files" (hereafter referred to as "Personnel Records") available for discovery in the US litigation. Bayer has advised me that this discovery request relates to Personnel Records of several current and potentially to former employees of Bayer in Germany

4. Bayer has asked me to opine whether under German data protection laws Bayer could lawfully make the Personnel Records available for discovery in the US litigation as requested by the plaintiffs.

5. As explained in more detail below, absent the explicit consent of its current and former employees whose Personnel Records have been requested, Bayer would violate German data protection laws if it processed and transferred the Personnel Records or any parts of it (e.g. performance reviews, compensation records, etc.) to the USA as sought by the plaintiffs. Under the German Data Protection Act, Bayer could only process and transfer the Personnel Records to the extent they are necessary for the purpose of the US litigation *and* if there were "no reason to assume" that the employees have an overriding interest against the disclosure of their Personnel Records (balancing test). This balancing test must take into

1

account the principle of proportionality, the nature of the personal data and the relevance of the personal data to the litigation. This balancing test leads to the result that Bayer could not lawfully process and transfer the Personnel Records as requested by plaintiffs.

6.  It is generally possible to accommodate the interest of an individual in the protection of his or her personal data by making the disclosure of the personal data subject to imposing rigid confidentiality obligations upon the recipient of the data (*e.g.*, by way of confidentiality orders). Such confidentiality arrangements are then one further element to be considered in the context of the balancing test to be performed under the German Data Protection Act. However, under the German data protection laws, a disclosure of Personnel Records in the US litigation would substantially differ from a disclosure of any business-related records and the personal data contained in such business records. Considering the importance that the German Courts and the German legislature have placed on restricting the use of Personnel Records to legitimate purposes of the employment relationship, considering the broad definition of Personnel Records made by plaintiffs, and further considering the sheer mass as well as the nature quality of the personal data contained in the Personnel Records (e.g. health information, performance reviews, compensation records, etc.), a processing and transfer of the Personnel Records would undermine the data privacy rights of the employees to an extent that their legitimate interest in the privacy of their personnel data cannot be sufficiently accommodated by a confidentiality arrangement that would apply only after a processing and transfer of the Personnel Records has taken place. Thus, there is clearly "reason to assume" that the employees have an overriding interest that their Personnel Records are not processed and transferred as sought by plaintiffs, irrespective of whether or not the personal data would be protected under a confidentiality order after they have been processed and transferred.

<u>The Legal Framework of Data Protection in Germany</u>

7.  Under German laws, data protection is recognized as a fundamental right and high-ranking legal principle. Already in 1983, the German Federal Constitutional Court has held that the German Constitution (*"Grundgesetz"*) guarantees a <u>"right to informational self-determination"</u> (Decisions of the Federal Constitutional Court, Vol. 65, p. 1 *et seq.*). This is a constitutional right of every individual to determine the use of data that concern his or her person and includes the right to determine which personal data may be collected or used by whom for which purpose and under which conditions. As emphasized by the Constitutional Court as well as by the German legislature, this right may be invoked by any individual whose personal data are processed in Germany, irrespective of the nationality, citizenship or domicile of the individual.

8.  The scope of this constitutional right was codified and specified by the <u>Federal Data Protection Act</u> (*"Bundesdatenschutzgesetz", **BSDG***) in 1990.[1] Accordingly, the BDSG serves to protect *"the individual against his right to privacy being impaired through the handling of personal data"* (§ 1(3) BDSG).

---

[1] I attach an English translation of the BDSG to this Declaration. I have taken this translation from the homepage of The Federal Commissioner for Data Protection and Freedom of Information of Germany (http://www.bfdi.bund.de/SharedDocs/Publikationen/GesetzeVerordnungen/BDSG_DE_EN.pdf?__blob=publicationFile&v=1). It reflects the status of the BDSG as last amended in 2010. This is the most recent version of the BDSG of which an English translation has been published by competent German data protection authorities. The BDSG has undergone a few modifications since then. None of these modifications however have affected any of the provisions referenced in this Declaration or have any impact on the issues addressed in this Declaration.

9. Following its enactment in 1990, the BDSG was later amended and reinforced to conform to the EU Data Protection Directive of 1995 (Directive 95/46/EC). The EU Directive requires the EU Member States *"to protect the fundamental rights and freedoms of natural persons, and in particular their right to privacy with respect to the processing of personal data"* (Art. 1(1) of the Directive). Thus, today the BDSG reflects the significance of data protection under the German Constitution and the EU Data Protection Directive.

10. To achieve a maximum degree of data protection, the BDSG establishes the principle that the collection, processing and use of personal data is prohibited unless otherwise permitted:

*"The collection, processing and use of personal data shall be lawful only if permitted or ordered by this Act or other law, or if the data subject has provided consent"* (§ 4(1) BDSG).

11. Violations of the BDSG are subject to prosecution as administrative or criminal offences and are punishable by fines or imprisonment of up to two years (§§ 43-44 BDSG). Also, the data subject can sue a party that collects, processes or uses his or her personal data in violation of the BDSG for damages (§ 7 BDSG) and may also seek an injunction against that party.

Application of the BDSG to the Request for Discovery of Personnel Records

12. To account for the constitutional right of informational self-determination and to maximize the protection of personal data in accordance with the EU Data Protection Directive, the BDSG defines *"personal data"* broadly as

*"any information concerning the personal or material circumstances of an identified or identifiable individual ('data subject')"* (§ 3(1) BDSG).

13. Thus, the BDSG applies to any data that concern an individual, irrespective of the nature of the data and in particular irrespective of how significant or sensitive the data may appear. "Personal data" for example include an individual's address information (private and business address, phone number, email address, etc.), date of birth, sex, nationality or ethnic background as well as any and all information about family members, friendships, lifestyle, physical characteristics, religion, political beliefs, health, education, employment, professional experience, memberships in sports clubs, professional associations or trade unions, financial status, etc. Further, personal data include any information about an individual's past actions or conduct or plans for the future, about opinions the individual has expressed, and any communication he or she has made or received including the time and circumstances of the communication. Also, the BDSG applies to all personal data irrespective of the circumstances under which the data have been generated or the purpose for which they have been collected. In particular, the BDSG similarly applies to personal data generated in a business context and strictly limited to business matters as well as to data relating to the private life of an individual.

14. Accordingly, Personnel Records (in this Declaration, I use this term according to plaintiffs' definition in the discovery request) contain personal data within the sense of the BDSG. In fact, Personnel Records are, by their nature, a compilation of personal data about the employees to which they relate. In addition, Personnel Records also contain personal data

of other individuals, *e.g.*, the name of the individual to whom the employee reports or has reported in the past, the name of an individual who has provided a performance evaluation of the employee, references to another individual who has signed an employment contract or has made any communication to the employee on behalf of the employer.

15. The Personnel Records fall within the scope of the BDSG irrespective of whether they are kept in electronic format or as hard copies. Outside the public sector, the BDSG applies to private entities (such as Bayer) *"that collect data for use in data processing systems, or use such systems to process or use data, or collect data in or from non-automated filing systems, or use such systems to process or use data"* (§ 1(2)(3) BDSG). The BDSG thus applies to the extent that Bayer stores the Personnel Records in electronic format ("data collected for use in data processing systems"). But the BDSG also applies to Personal Records maintained as hard copies. If maintained as hard copies, Personnel Records are considered a *"non-automated filing system,"* which is defined as *"any non-automated collection of personal data which is similarly structured and which can be accessed and evaluated according to specific characteristics"* (§ 3(2) BDSG).

16. Collection of the Personnel Records in plaintiffs' discovery request would entail a processing of data within the sense of the BDSG in several regards. Under the BDSG, *"processing"* of data includes the *"recording"* and the *"storage"* of data (§ 3(4) BDSG). Such recording and storage would occur if copies or images of the Personnel Records were generated and, even if only temporarily, stored for transmission to plaintiffs or the US courts. In addition, "processing" of data includes any *"transfer"* of data (§ 3(4) BDSG), which is defined as *"disclosure of personal data recorded or obtained by data processing to a third party either (a) through transfer of the data to a third party, or (b) by the third party inspecting or retrieving data available for inspection or retrieval"* (§ 3(4)(3) BDSG). Such transfer would occur when the Personnel Records (or any copies thereof) were made available to the plaintiffs, plaintiffs' counsel or the courts in the USA.

Lawfulness of the Processing and Transfer of Personnel Records to the USA

17. As the Personnel Records and their processing (recording, storage, and transfer) for the purpose of the US litigation clearly fall under the protection afforded by the BDSG, Bayer could only lawfully comply with plaintiffs' discovery request if the processing and transfer of the Personnel Records *(i)* occurs with the consent of the data subjects, or *(ii)* is prescribed or permitted by the BDSG or by other law (*see* § 4(1) BDSG).

Consent of the Data Subjects

18. Consent of a data subject to the processing and use of its personal data is effective only *"when based on the data subject's free decision"* (§ 4a(1) BDSG). Where the collection, processing or use of personal data relates to *"special categories of personal data"*, the consent must also specifically refer to these data (§ 4a(3) BDSG). Such "special categories of personal data" are data the BDSG, in accordance with the EU Data Protection Directive, considers as particularly sensitive and for which the BDSG therefore awards an even higher level of protection. "Special categories of data" are *"information on racial or ethnic origin, political opinions, religious or philosophical beliefs, trade-union membership, health or sex life"* (§ 3(9) BDSG).

4

19.     Consent *"based on the data subject's free decision"* means that the data subject must have a real opportunity to withhold his consent without suffering any disadvantage, or to withdraw his consent if he changes his mind later. A German employer has no right to request its employee to grant such consent or to not withdraw any consent given later. Any attempt by a German employer to exercise pressure upon its employee in this regard would invalidate any consent subsequently declared by the employee and would also be considered as a violation of the employer's duties under the employment contract.

### Prescription by Law

20.     The processing of the Personnel Records for the purpose of their processing and transfer for the US litigation is not prescribed (i.e., mandatory and hence, of course also authorized) by the BDSG or by other laws. In particular, only German laws can qualify as "other laws" within this sense. Foreign legal statutes or regulation (*e.g.* US civil procedure rules) apply in the foreign jurisdiction but cannot make the processing of personal data mandatory in Germany within the sense of Section 4(1) BDSG.

### Justification under the BDSG or by Other Law

21.     There are no legal provisions outside the BDSG which could permit the processing and transfer of the Personnel Records for the US litigation. Only German laws could determine if such processing or transfer is lawful under German laws.

22.     The only legal provision under the BDSG that may permit Bayer to process and transfer Personal Records for the purpose of the US litigation is Section 28(1)(2) BDSG. Section 28(1)(2) BDSG justifies the collection, recording, alteration or transfer of personal data

*"as far as necessary to safeguard legitimate interests of the controller and there is no reason to assume that the data subject has an overriding legitimate interest in ruling out the possibility of processing or use"*.

23.     Section 28(1)(2) BDSG thus requires Bayer (as *"the controller"* of the personal data) to confirm two conditions: (i) the processing and transfer of the Personal Records as well as the scope of such processing and transfer (*"as far as"*) must be necessary to safeguard a legitimate interest of Bayer, and (ii) there must be no reason to assume an overriding legitimate interest of the data subjects against such processing or transfer (balancing test).

### Use for Litigation as a Legitimate Interest

24.     As a general matter, the BDSG, in accordance with the EU Data Protection Directive, prohibits a transfer of personal data to any jurisdiction outside the European Union and the European Economic Areas (EEA) that does not provide for rules on data protection functionally equivalent to the EU and therefore does not provide for *"an adequate level of data protection"* (§ 4b(2) BDSG). German and EU lawmakers have determined that US data privacy laws do not provide for an adequate level of data protection.

25.     However, as an exception to the rule, the BDSG allows the transfer of personal data outside the European Union and the EEA to the extent that the transfer is

5

2579873-1

necessary *"for the establishment, exercise or defence of legal claims"* (§ 4c(1)(3) BDSG). Thus, the exercise or defence of legal claims is recognised as a legitimate interest that may justify a transfer of personal data to the USA.

### Balancing with the Rights and Interests of the Data Subjects

26. While a generally legitimate interest of Bayer has thus been established, Bayer may only process personal data and transfer the data to the USA as far as necessary to fulfil this interest and if there is no reason to assume that the data subjects have an overriding interest against such processing and transfer of their data (*see* § 28 (1)(2) BDSG). This is a balancing test. As the responsible data controller within the sense of the BDSG, Bayer must weigh its own interest in the processing and transfer of the personal data for the purpose of the US litigation against the constitutional rights of the data subjects. This balancing test must take into account the principle of proportionality, the nature of the personal data and the relevance of the personal data to the litigation.

27. This balancing test clearly leads to the result that Bayer would violate German data protection laws if it disclosed the Personnel Records sought in plaintiffs' discovery request. This applies irrespective of whether or not the confidentiality of the personal data contained in the Personnel Records would be protected under a confidentiality order after they have been processed and transferred to plaintiffs:

28. *First*, it must be noted that the employees to which the Personnel Records relate as well as the other employees whose personal data is contained in the Personnel Records (*e.g.*, information on the employee's supervisor) are foreign to the US litigation and have no direct genuine interest in the disclosure of their personal data for the purpose of the litigation. This applies to Bayer's current employees and even more apparently with regard to the Personnel Records of Bayer's former employees.

29. *Second*, German courts as well as the German legislator have emphasized the high importance which must be placed to the protection of an employee's personal data and to the need to strictly limit their use for purposes outside the employment relationship.

30. The personal data contained in Personnel Records are entrusted to an employer by the employee under the implicit proviso that such data are used for the purposes of the employment relationship and subject to strict confidentiality standards only. The Federal German Labor Court has held that, by virtue of the fiduciary duties an employer owes to its employees and to safeguard the constitutional rights of its employees to data privacy, an employer must keep Personnel Records of its employees strictly confidential (Decision of the Federal Labor Court of 12 September 2006, file number 9 AZR 271/06; *see also* Decision of the German Federal Labor Court of 15 July 1987, file number 5 AZR 215/86). The employer must prevent their disclosure to and use by any third party to the extent that such disclosure and use is not necessary for a legitimate purpose of the employment relationship. The employer may thus disclose Personnel Records on a strict need to know basis only (*e.g.*, to staff of its HR department and, where necessary, to its legal department or officers); also, before any necessary disclosure takes thus place, the employer has to ensure that the recipient is itself subject to an obligation to keep the Personnel Records confidential at all times and to use them for the purpose of the employment relationship only. German courts have thus acknowledged that the privacy rights of an employee with regard to Personnel Records merit particular protection.

6

31. The importance of data protection with regard to an employee's personal data has also been emphasized by the German legislature. Effective 1 September 2009, a new Section 32 has been introduced into the BDSG that specifically deals with the use of personal data of employees for employment-related purposes. While this new provision does not change the law (*see* Bulletin of the German Parliament (*Bundestagsdrucksache*) No 16/13657 of 1 July 2009, p. 35), by dedicating explicit regulation to the protection of personal data of employees (contrary to the general concept of the BDSG, which tends to regulate data protection on a rather abstract level and not with regard to specific areas), the legislature has clearly emphasized the importance that it places on the protection of such data and the need to restrict their use for purposes not justified by the employment relationship.

32. This does not *per se* exclude the possibility that, under the circumstances of an individual case, a processing of certain personal data contained in the Personnel Records may be justified for a legitimate purpose of the employer outside the employment relationship. However, the very high level of an employee's legitimate interest against disclosure of its Personnel Records for any purpose not related to the employment relationship has thus been clearly recognized by the German courts and by the German legislature.

33. *Third*, German data protection law is governed by the principles of data reduction and data economy. The BDSG requires that *"as little personal data as possible"* shall be collected, processed and used (§ 3a BDSG). In accordance with this principle, Section 28(1)(2) BDSG only justifies a processing of personal data *"as far as"* the processing is *"necessary"* to pursue a legitimate interest of the data controller. The personal data must therefore be adequately relevant and not be excessive in relation to the purpose for which they shall be processed.

34. While this principle may create a tension with the perceived needs of the parties to a US litigation to obtain all information prior to then determining their relevance to the issues within the litigation, German data protection laws nonetheless requires that, to protect the rights of the data subject, the data controller (and not the prospective recipient of the data) consider the issue of relevance before the processing and transfer of the data. A German data controller involved in litigation is therefore under the obligation to take such steps as reasonably appropriate to limit the discovery of personal data to that which is or can be objectively relevant to the issues being litigated (*e.g.*, by culling the data before their further processing and transfer for the purpose of the litigation). In the Xarelto Litigation, however, plaintiffs request discovery of "personnel files" without any limitation as to their potential relevance to the subject matter of the litigation.

35. *Fourth*, Personnel Records are nothing else than a massive compilation of personal data of the employee. Under the perspective of German data protection laws, the employee's constitutional right to informational self-determination would be significantly undermined by the sheer mass of personal data which were processed and transferred to the USA if Bayer made the Personnel Records available for discovery as requested by plaintiffs. Plaintiffs' request for discovery of the Personnel Records insofar fundamentally differs from any request for the discovery of business records, which usually contain personal data of an employee in a limited number and often more or less by chance or as a side product only.

36. *Fifth*, Personnel Records contain a variety of data which, by their nature, are highly personal and particularly sensitive *e.g.*, health information, performance reviews,

disciplinary notices, self-evaluations, compensation records, etc.. Again, there can be no reasonable doubt that the employer has a strong and legitimate interest in the non-disclosure of such data to any third party for purposes which are unrelated to the employment relationship and that this interest would override Bayer's interest to process, transfer and use such data in the US litigation, thus making it impossible for Bayer to process and transfer the Personnel Records for the purpose of the US litigation without violating German data protection laws.

37. Summarizing, under German data protection laws and in consideration of the underlying constitutional rights of its (current and former) employees to informational self-determination, Bayer could only lawfully process and transfer the Personnel Records for the purpose of the US litigation to the extent that, before any such processing and transfer, Bayer has confirmed that the personal data contained in the Personnel Records are objectively relevant to the litigation and only if there is "no reason to assume" that the data subjects, in particular the (current and former) employees to which the Personnel Records relate, have no overriding interest against the disclosure of the Personnel Records and their personal data respectively. These conditions are clearly not met. In particular, in consideration of the importance the German Courts and the German legislature have placed on restricting the use of Personnel Records to legitimate purposes of the employment relationship, considering the broad definition of Personnel Records made by plaintiffs in their discovery request, and further considering the sheer mass as well as the nature of personal data contained in Personnel Records, there clearly is "reason to assume" that the employees have an overriding interest that their Personnel Records are not processed and transferred as sought by plaintiffs even if their personal data should be protected under a confidentiality order after any such processing and transfer has taken place. Bayer would therefore violate German data protection laws if it made the Personnel Records or any parts of it (e.g. performance reviews, compensation records, etc.) available for discovery in the US litigation as requested by plaintiffs.

38. The foregoing statements made by me are true to the best of my knowledge and belief. I realize that I am subject to punishment for any willfully false statement made by me.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on ___ day of December, 2015.

_____<br>
**Dr. Henning Moelle**