UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | *  MDL NO. 2592 |
| | *  SECTION L |
| | * |
| | *  JUDGE ELDON E. FALLON |
| | * |
| | *  MAG. JUDGE NORTH |
| ************************************************ | * |

**THIS DOCUMENT RELATES TO:**
  *All Cases*

## ORDER & REASONS

The issue before the Court is whether or to what extent the Plaintiff Steering Committee ("PSC") is entitled to receive personnel files of Defendants employees prior to conducting their depositions. Having reviewed the parties' briefs and the applicable law, the Court now issues this Order & Reasons.[1]

### I. PROPOSED DISCOVERY PROTOCOL

This dispute concerns the discoverability of employee personnel files. The parties do not dispute that Plaintiffs are entitled to the "custodial file" of any employee or former employee of Defendants who Plaintiffs seek to depose. Custodial files are maintained by the employee and concern the documents generated or received by the employee concerning the employee's work. R. Doc. 1922 at 2. In contrast, the personnel file is not maintained by the employee. The personnel file is maintained by the Human Resources department of an employer, and is likely to contain confidential employer evaluations which the employee may have never seen. R. Doc.

---

[1] With respect to Bayer, the issue of German law raises other issues which need further scrutiny by the parties. This Order & Reasons has no bearing on the applicability of the "right to informational self-determination" protected by the German Constitution and the German Federal Data Protection Act. R. Doc. 1922 at 10.

1922 at 2. The personnel file also may include other sensitive information, such as salary, information concerning physical or mental health issues, "alimony and child support garnishment, tax records, and drug test results." *Williams v. Roy O. Martin Lumber Co.* LLC, 51 Fed. Appx. 483, at *6 (5th Cir. 2002).

The parties contest whether the Plaintiffs are entitled to the deponent's personnel file under the federal rules concerning discovery. The PSC contends that the Court must balance privacy interests against the interest in discovery, and that the relevance of the personnel files to "rush to the market" liability[2] and employee bias weighs in favor of discovery. Defendants disagree, and argue that the personnel files are not relevant to the claims or defenses in this case and employee privacy interests trump the PSC's broad non-particularized requests. The Court must therefore determine whether if, in a products liability MDL, allegations of "rush to the market" liability and a non-particularized interest in discovering evidence of witness bias are sufficient to override the privacy interests of all deposed employees and former employees in their personnel files.

### A. The PSC's Proposal for the Discovery of Personnel Files

Plaintiffs offer the following language concerning the discovery of personnel files of employees:

> Subject to the limitations set forth in Case Management Order No. 2 as to the number of depositions to be conducted, the custodial file of an employee, or former employee, shall be produced in advance of a deposition as set forth in the Document Production Protocol (PTO 21), including paragraphs 20 and 16. *The custodial file of any employee or former employee designated for deposition shall include the personnel file.*

---

[2] Plaintiffs advance, among other theories, a "rush to the market" theory of liability, meaning that Plaintiffs allege that Xarelto was prematurely placed on the market ("rushed to the market").

[2]

R. Doc. 1920-1 at 8 (emphasis added). PTO 21 set the protocol for the production of custodial files, specifically allowing for their production and review prior to depositions. PTO 21 does not define what is contained in a custodial file. Defendants' object to requirements beyond those set forth in PTO 21, and specifically object to the aforementioned provision calling for the production of personnel files. R. Doc. 1920-1 at 8.

Plaintiffs do not seek the entirety of each personnel file. Plaintiffs limit their discovery to

> performance reviews, evaluations, critiques, rewards, and action plans related to Xarelto; any self-review, self-evaluation, self-critique and/or action plans created as a part of any formal policy related to the witness's performance related to Xarelto; any document evidencing periodic reviews of performance or discipline up to and including termination related to the witness's performance, related to Xarelto; any documents reflecting any award given to the witness under any incentive plan, salary, bonus, or other forms of compensation related to the witness's performance; and any portion of any termination, severance or separation document reflecting: (i) any post-employment consulting relationship with Defendants or any agreement to provide assistance to Defendants in connection with litigation; (ii) the reasons for termination, or (iii) any non-disparagement clause or provision. The PSC also seek [sic] the employee or former employee's compensation for each year or the time period that the employee or former employee was involved with Xarelto. Additionally, the PSC seeks the production of these materials well in advance of the deposition of the Sales Representatives in each of the cases being worked-up as part of the bellwether process.

R. Doc. 1920 at 11 n. 25. The PSC further limits its discovery by restricting its request for personnel files to "employees and former employees that are deposed and at this point Sales Representatives in [sic] bellwether pool." R. Doc. 1920 at 14.

To support Plaintiffs' expanded definition of custodial file, the PSC cites the Fifth Circuit's opinion in *Coughlin v. Lee*, 946 F.2d 1152 (5th Cir. 1991), and argues that the *Coughlin* test for balancing competing privacy and discovery interests controls this dispute. R. Doc. 1920 at 12. The PSC does not analyze the factors of the test in its brief, but broadly notes that the

discoverability of personnel files is ultimately a question of balancing the interests of the parties. R. Doc. 1920 at 12–13.  The PSC also denies allegations that its request for personnel files is a "fishing expedition," and notes that this information is critical to both its "rush[] to the market" theory of liability as well as its right to impeach witnesses through the use of bias.  R. Doc. 1920 at 14. Such bias may be implied by a link between an employee's compensation or performance reviews with the timely success of Xarelto.  The PSC specifically points to Dr. Alise Reicin, a key witness for the defense in the *Vioxx* litigation, as an example of an MDL witness whose personnel file revealed that she was seen as a "Tenacious Defender of the Vioxx Franchise" by Vioxx employees, and was highly compensated as such.  R. Doc. 1920 at 15–16.

The PSC also points to other MDLs which have allowed for the discovery of personnel files: *Pradaxa*, *Testosterone*, and *Tylenol*.  R. Docs. 1920 at 13; 1920-26; 1920-27.  The PSC then argues that any privacy-related interests on the part of Defendants' witnesses are protected through already-negotiated protective orders.  However, if privacy concerns remain, the PSC proposes the use of additional protective orders or individualized *in camera* review to determine the propriety of personnel file disclosure.  R. Doc. 1920 at 16–18.

### B.  The Defense's *Memorandum in Opposition to Plaintiffs' Proposed Deposition Protocol Concerning Personnel Files and Other Issues*

The Defendants begin by accentuating the differences between custodial files and personnel files.  Defendants argue that personnel files, unlike custodial files, raise serious privacy concerns, and that the employee's privacy interest in personnel files is much greater than a custodial file or other employee records.  R. Doc. 1922 at 4.  Defendants cite precedent from the Fifth Circuit, as well as other circuits, which supports a finding that personnel files raise significant privacy interests.  R. Doc. 1922 at 5.  Defendants also point to MDLs where courts

have denied or restricted access to personnel files, including *Zoloft* and *Benicar*. R. Doc. 1922 at 7–8.

Beyond the privacy concerns of employees, Defendants argue that the unrestricted disclosure of personnel files would have negative public policy effects. Producing personnel files with confidential performance evaluations might chill supervisors from honestly and critically evaluating an employee's performance. R. Doc. 1922 at 8. Production of such materials may harm the company in the event of litigation by the employee, and it may also damage the employer-employee relationship if confidential evaluations by a supervisor are revealed to the employee in a deposition or at trial.

Defendants argue in the alternative that even if the Court finds some material in the personnel files sufficiently probative to overcome the related privacy interests, the Court should limit disclosure to the need demonstrated by the Plaintiffs, and conduct an *in camera* review for the purpose of balancing the probative value and privacy interests of each piece of evidence individually. R. Doc. 1922 at 9.

Defendants conclude by asking this Court to issue a protective order precluding Plaintiffs from seeking the personnel files of Defendants' current and former employees.

## II. LAW AND ANALYSIS

### A. Applicable Law

Rule 26(b) of the Federal Rules of Civil Procedure provides that "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or

expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The Court is also cognizant of Rule 1's promise of "just, speedy and inexpensive" litigation. Fed. R. Civ. P. 1.

In the premiere case on personnel file production in this jurisdiction, the Fifth Circuit held in *Coughlin* that the district court was incorrect in restricting discovery of personnel files. *Coughlin v. Lee*, 946 F.2d 1152, 1155–57 (5th Cir. 1991). The plaintiffs in *Coughlin* were former deputy sheriffs who claimed they were wrongfully discharged. *Id.* The deputies argued that the cited reason for their discharge was pretextual, and sought discovery of personnel files within the department in an effort to show that other employees who had committed similar infractions had not been dismissed. The Fifth Circuit found that the district court had failed to weigh the competing privacy and discovery interests at issue, and then ordered the district court on remand to consider ten factors outlined in *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. 1973). *Coughlin* 946 F.2d at 1160.

*Frankenhauser*, a § 1983 case, arose from the fatal shooting of an unarmed man following an encounter and chase in a Philadelphia dyeworks. *Frankenhauser*, 59 F.R.D. at 339–40. The plaintiffs sought discovery of law enforcement's investigation materials relating to the decedent, and the government asserted executive privilege. The *Frankenhauser* court held that "when the executive privilege is asserted, the court must balance the public interest in the confidentiality of governmental information against the needs of a litigant to obtain data . . . ." *Id.* at 344. The court then enumerated ten factors, six of which are relevant in a civil case against a private defendant such as the one at bar: (1) "the impact upon persons who have given information of having their identities disclosed;" (2) "whether the information sought is factual data or evaluative summary;" (3) "whether the party seeking the discovery is an actual or

[6]

potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question;" (4) whether the plaintiff's suit is non-frivolous and brought in good faith;" (5) "whether the information sought is available through other discovery or from other sources; and" (6) "the importance of the information sought to the plaintiff's case." *Id.* The court emphasized the importance of particularity, calling for a "case to case" balancing of the variables before the court.

Courts in the Eastern District of Louisiana continue to adhere to *Coughlin* and its reference to *Frankenhauser* for cases involving personnel files. "*Coughlin* and its subsequent progeny make clear that in resolving disputes regarding personnel files, the court is required to balance the competing interests of the parties in a considered manner, with regard for the breadth of the federal discovery rules." *George v. Entergy Servs., Inc.*, 2010 WL 3802452, at *4 (E.D. La. Sept. 17, 2010); *see also Eckstein Marine Serv., Inc. v. M/V Basin Price, Basin Offshore, Inc.*, 168 F.R.D. 38, 40 (W.D. La. 2009) (allowing discovery of a personnel file after *in camera* review and noting that "the proper approach in deciding whether personnel files should be disclosed is to balance the respective interests of the parties"). Privacy interests are not to be weighed lightly in this equation; this Court has noted that the personnel files of non-party employees present "special concerns" about the privacy rights of the individuals involved. *See Poseidon Oil Pipeline Co., L.L.C. v. Transocean Sedco Forex, Inc.*, Civ. A. 00-760, 2002 WL 1919797, at *4 (E.D. La. Aug. 20, 2002); *see also Fieldwood Energy, L.L.C. v. Diamons Servs. Corp.*, Civ. A. 14-650, 2015 WL 1415501, at *1 (E.D. La. Mar. 27, 2015) (quoting the same). Therefore, a court ruling on the discoverability of the personnel files of non-party employees must balance privacy and discovery interests, as informed by *Frankenhauser*, and give

appropriate weight to the "special concerns" presented by personnel files in each case. *Poseidon*, 2002 WL 1919797, at *4.

### B. Discussion

The Court finds that a plaintiff in a products liability MDL cannot discover a non-party employee's personnel file without an individualized showing of relevancy, proportionality, and particularity. Plaintiffs have failed to make this showing in both their memorandum and proposed pretrial order. Rule 26(b) commands that all discovery be both relevant and proportional. Fed. R. Civ. P. 26(b). *Coughlin* and its progeny signal that personnel files are discoverable if the interest in discovery exceeds the interest in privacy. *See George*, 2010 WL 3802452, at *4. The PSC argues that its discovery request is both limited in scope and restricted to enumerated deponents. However, the PSC fails to present its discovery request on a witness-by-witness basis, and therefore the PSC fails to demonstrate sufficient relevancy and particularity under the Federal Rules of Civil Procedure and *Coughlin* to overcome the "special concerns" affiliated with privacy interests in the sought personnel files. *Poseidon*, 2002 WL 1919797, at *4.

Personnel files have a specific discovery test in the Fifth Circuit for a reason: they are special. *See Poseidon*, 2002 WL 1919797, at *4. The privacy concerns implicated by a personnel file are distinct from those presented by a custodial file, because they are far more likely to contain personal, embarrassing material. *See Williams v. Roy O. Martin Lumber Co. LLC*, 51 Fed. Appx. 483, at *6 (5th Cir. 2002) (noting that "alimony and child support garnishment, tax records, and drug test results" may be found in a personnel file). Personnel files also present thorny issues of corporate policy; many files in a personnel file are not intended to be shared with an employee or disclosed outside of the company. A deponent-employee may be embarrassed or upset by the production of a critical performance evaluation or self-evaluation,

and allowing personnel records to be *per se* discoverable following a generalized showing of "rush to the market" conditions or a need for evidence of bias would eviscerate any semblance of protection afforded to employee privacy interests. *Cf. In re Sunrise Secs. Litig.*, 130 F.R.D. 560, 580 (E.D. Pa. 1989) ("Strong public policy exists against disclosure of the personnel records . . . because disclosure would invade [the] employees' privacy, and firms might cease to frankly criticize and rate their own [employees'] performance.").

The Court finds that the relevant *Frankenhauser* factors weigh in favor of protecting the employee's interest in privacy due to the non-particularized nature of Plaintiffs' discovery request. On the facts at bar, the Court finds the two most relevant *Frankenhauser* factors to be "the impact upon persons who have given information of having their identities disclosed" and "the importance of the information sought to the plaintiff's case." *Frankenhauser*, 59 F.R.D. at 344. On the one hand, the PSC's request for information such as performance reviews, self-reviews, and the rationale for termination (if applicable) raises serious privacy concerns for employees. Personnel records often raise "special concerns," and the requested materials are no exception. *Poseidon*, 2002 WL 1919797, at *4. But it is not clear that this information is sufficiently relevant and particularized to a "rush to the market" theory of liability or employee bias. The Court has been given no information about the targets of the PSC's discovery request for personnel files, except that the PSC intends to depose them and that they are currently or were at one time employees of Defendants. R. Doc. 1920 at 14.

*Coughlin* holds that a court reviewing a discovery request for personnel files must weigh the interest in discovery against the interest in privacy. *Coughlin*, 946 F.2d at 1159–60. Courts in the Fifth Circuit allowing for the disclosure of personnel records have done so only when the personnel files contained material highly relevant to the case at hand and were requested with

particularity, because the information in personnel records invariably contains a significant privacy interest. The PSC at this time, has failed to demonstrate sufficient relevance and particularity under this standard to satisfy *Coughlin*. Plaintiffs' cited cases applying *Coughlin* and ruling in favor of disclosure are correctly decided, but they are distinguishable on the facts.

For example, the district court in *Coughlin* allowed for the limited discovery of personnel files that evidenced removal or disclosure of confidential material. However, evidence of the failure to safeguard confidential material was highly relevant in that wrongful termination case, because the plaintiff was terminated for allegedly engaging in that behavior. *Id.* One of the most direct methods of proving pretext, and thereby substantiating the claim, is to determine whether defendants terminated other employees who engaged in the same behavior. *Id.* The information sought in the personnel files was therefore highly relevant and particularized in light of plaintiff's theory of the case, and consequently outweighed the employee's privacy interests. *See also Frankenhauser*, 59 F.R.D. at 344 (allowing for the discovery of police investigative files in a § 1983 case focused on a police investigation and subsequent fatal shooting by police).

This Court's most recent case applying *Coughlin* further elaborates on the high degree of relevance and particularity needed to overcome privacy interests in a personnel file. In *George v. Entergy Servs., Inc.*, 2010 WL 3802452, at *4 (E.D. La. Sept. 17, 2010), this Court held in a racial discrimination claim that the plaintiff's need for production outweighed the privacy concerns of three employees. The Court noted that "[d]iscovery in Title VII suits is often heavily factual given the need for evidence to compare the plaintiff to other potentially similarly-situated employees." *Id.* Once again, the high evidentiary value of the personnel files of three similarly situated employees in a Title VII case overcome the privacy interest at issue.

Courts applying *Coughlin* outside of the context of a discrimination suit have also restricted discovery of personnel files to situations where the personnel files were highly relevant to the theory of the case and the request was particularized. For instance, in *Eckstein Marine Serv., Inc. v. Anglo Am. Ins. Co., Ltd.*, 168 F.R.D. 38, 39–40 (W.D. La. 1996), the court allowed for the discovery of a personnel file in a vessel collision case. The plaintiff in *Eckstein* sought evidence of the employer-defendant's knowledge of drug use by the employee-captain. *Id.* at 39. The plaintiff's theory of negligence partially hinged on the boat captain's marijuana intoxication at the time of the accident, and the plaintiff provided a failed drug test by the captain in the wake of the accident to support that theory. *Id.* at 39. The personnel file at issue was highly relevant and particularized to one critical witness, and consequently the interest in discovery outweighed the defendant's privacy interest in his personnel file.

On the face of the PSC's discovery request and briefing on this matter, the Court cannot find that Plaintiffs show sufficient relevance and particularity to overcome the third-party employee's privacy interests in the personnel records. A broadly sketched "rush to the market" theory of liability in a products liability case or the ever-present search for evidence of witness bias[3] are insufficient under *Coughlin* without additional evidence of relevance and particularity to compel the personnel file of every employee. With respect to the custodial records, the parties are correct that the materials are discoverable. With respect to the personnel records, a one-size-fits-all discovery request for eight separate categories of documents[4] for all deposed witnesses in

---

[3] The Court notes that if a broadly-sketched call for impeachment evidence were sufficient to override privacy interests in personnel files, the *Coughlin* standard would be meaningless. Parties seeking access to personnel files for impeachment purposes must summon a more particularized argument of relevance than a mere allusion to the use of bias evidence against all deponents at trial.

[4] The Court interprets the PSC's memorandum as a request for eight separate categories of Xarelto-related documents: performance reviews, self-reviews, annual compensation information, incentive information, bonus information, post-employment information, the reason for the employee's termination (if applicable), and the existence (or lack thereof) of a non-disparagement clause. R. Doc. 1920 at 11 n. 25.

[11]

this matter is insufficient under the *Coughlin* standard. Plaintiffs must show relevancy and particularity on a witness-by-witness basis. For example, a request for the personnel files of a lower-level employee with no authority or decision-making power would not present sufficient relevance to outweigh "the impact upon persons who have given information of having their identities disclosed." *Frankenhauser*, 59 F.R.D. at 344. A request for personnel files which included a deponent's job title and classification, his or her area of responsibility, his or her decision-making authority, his or her ability to influence policy, and a particularized explanation of the relevance of each category of information sought within the deponent's personnel file may be sufficient to warrant an *in camera* review of the personnel file at issue. This information would provide sufficient context to allow the Court to weigh "the importance of the information sought to the plaintiff's case" and the propriety of disclosing each category of information sought by the PSC. *Id.*

If an *in camera* review is conducted, this Court will balance privacy against the relevancy and particularity of the sought information before it is released. Released material may be required to be placed under seal and used exclusively for purposes of upcoming depositions.

**IV. CONCLUSION**

For the aforementioned reasons, **IT IS ORDERED** that Plaintiffs' discovery request for deponent personnel files presented in its Memorandum in Support of the Entry of the Plaintiffs' Steering Committee's Version of a Pretrial Order Regarding Deposition Guidelines. R. Doc. 1920, is hereby **DENIED WITHOUT PREJUDICE**. The PSC may file a separate motion for *in camera* review of the personnel files which addresses the flaws in relevance and particularity in its original memorandum.

New Orleans, Louisiana, this 26th day of January, 2016.

_____

UNITED STATES DISTRICT JUDGE

[13]