# EXHIBIT 35

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: ZOLOFT (SERTRALINE HYDROCHLORIDE) PRODUCTS LIABILITY LITIGATION | : : : : : | MDL NO. 2342 12-MD-2342 HON. CYNTHIA M. RUFE |
| THIS DOCUMENT RELATES TO ALL ACTIONS | : : : | |

SPECIAL DISCOVERY MASTER'S REPORT AND RECOMMENDATION NO. 2
(REGARDING *EX PARTE* CONTACTS WITH WITNESSES
AND DEPOSITION PROTOCOLS)

June 13, 2013

  The Parties have been attempting to reach agreement on a protocol regarding depositions in the 25 cases selected for the initial rounds of discovery and on depositions aimed at getting information that would be generally applicable to all Zoloft birth defect cases.  The parties reached agreement on a number of issues about aspects of the depositions, and met with me to discuss open issues on May 22. 2013.  At this meeting, they presented differing views and proposals on elevan issues that related to the deposition protocol or to a protocol on selection of cases for the trial pool.

  After the meeting of May 22, 2013, in accordance with the procedures set out on pages 2 and 3 of Pretrial Order No. 22, I gave my views in an informal written presentation on the eleven issues that had not been the subject of agreement.  The parties report to me that they have continued to negotiate with the benefit of the guidance that I provided on these issues  They report that they are nearly ready to present an agreed upon protocol for trial pool selection.  They report that they have not reached agreement on one issue that is related to depositions.  The parties have presented competing proposals on this issue, along with letter briefs in support of their proposals.

  The question is whether there should be limits or conditions on how the plaintiffs, through their counsel, may communicate with plaintiffs' treating or prescribing physicians who have been designated as witnesses in the impending round of depositions.

  Pfizer proposes that the following:

1

1. Contact with a treating or prescribing health care provider for a plaintiff will be governed by "relevant procedural rules"[1] in the jurisdiction in which the healthcare provider resides.

2. Notwithstanding the rules that are the subject of the preceding provision, the parties' contact with these physicians will be limited to discussions of the individual care of the individual plaintiff, and the parties will not show, provide to or discuss with those healthcare provides any documents other than those providers' records of treatment for a plaintiff or documents that the physician previously received from Pfizer. (The parties will also be permitted to discuss scheduling of or payment for depositions and to discuss the plaintiffs' medical care.)

3. The party having contact with a physician will send to opposing counsel copies of correspondence enclosing records sent to that physician as well as copies of correspondence related to scheduling of or payment for a deposition.[2]

Plaintiffs propose that the protocol should include no limitations on either side's counsel's *ex parte* contacts with any of plaintiffs' treating or prescribing physicians. They recognize that there are limits on how *ex parte* contacts with witnesses may be carried out, and that these limits vary from jurisdiction to jurisdiction. They argue that the Court should not impose additional limits or limits that vary from those of the jurisdictions that govern each contact.

When I considered the competing positions of the parties on May 22, 2013, I did so with the benefit of very brief presentations by the two sides. I stated that I agreed with the plaintiff, and wrote a paragraph describing why.[3]

---

[1] Contact with a plaintiff's physician may be governed by ethical limitations on attorneys' conduct, by statutes, and by professional limitations placed on physicians. I understand Pfizer's proposal to include provisions like these to fall within its proposal to have contact with physicians to be governed by "relevant procedural rules." In addition, the limits placed on attorneys may be those of their own states and the states in which they are doing their work, and the relevant rules governing *ex parte* contacts may be those of the state where the treatment occurred, not only where the physician currently resides.

[2] The proposal by Pfizer does not say that the actual documents sent by one party to the physician should be disclosed to the counsel for the other side. Some of the cases that I have reviewed include consideration of a provision whereby counsel who interviews a physician is required to give to opposing counsel copies of substantive documents (not merely cover letters and procedural or scheduling correspondence) to opposing counsel.

[3] The only authority presented to me when I stated my opinion on May 22, 2013, was *In re Chantix (Vaenicline) Products Liability Litigation,* MDL No. 2092 (N.D. Alabama, Order of June 28, 2011). The parties and I agreed that the best course was for me to state my opinions within hours of the completion of our session together so that the parties could continue to

2

This guidance did not produce agreement. On June 6, 2013, the parties presented briefs to me on the issue. Consideration of them results in this Report and Recommendation.

Prohibitions on discussions between a defendants' lawyer and a plaintiffs' physician exist in many, but not all, states. In general, this is because a patient's discussions with his or her physician about medical care are in most states privileged. *In re Chantix (Vaenicline) Products Liability Litigation,* MDL No. 2092 (N.D. Alabama, Order of June 28, 2011). The physician-patient privilege is designed—like the attorney-client privilege—to foster unfettered communication between physician and patient (or, at least, to foster unfettered communication by the patient). Generally, if a patient sues the physician for professional malpractice, the privilege is deemed to have been waived. In some states, the privilege is deemed to be waived when a patient makes a legal claim against anyone if the claim places the medical condition of the plaintiff at issue and if the patient-physician communication relates to that issue.

Nevertheless, the waiver that arises from the making of a claim does not in all jurisdictions permit defense counsel to have unrestricted discussions with the physician. Generally, the restrictions are imposed because the waiver is not unlimited. For example, a patient placing the condition of his or her shoulder at issue might not be deemed to have waived the privilege with respect to discussions about psychiatric issues. Or a patient who has placed a recent development in his or her medical conditions at issue might not be deemed to have waived the privilege with respect to discussions about conditions that had arisen and been resolved years before.

The result of limitations on the waiver is, in some jurisdictions, limitations or restrictions on the method, forum and subject matter of communications between a party's physician and a lawyer for someone other than the party. *E.g., Neubeck v. Lundquist,* 186 F.R.D. 249 (D. Me. 1999); Domako v. Rowe, 475 N.W.2d 30 (Mich. 1991); *Horner v. Rowan,* 153 F.R.D. 597 (W.D. Tex. 1994). These limits vary from jurisdiction to jurisdiction. They are not always codified in rules of court or ethical provisions; they are sometimes developed in case law in a way that precludes one from saying that there is a clear, definitive and simple rule.

Defendant Pfizer, Inc., does not propose that restrictions on its counsel's contact with plaintiffs' physicians such as those described above be changed significantly in this MDL. Pfizer does seek to impose restrictions like these on counsel for plaintiffs.

---

negotiate that evening. I stated that the *Chantix* opinion reflected ambivalence on the issues presented, and I fear that this statement may be misconstrued as a criticism. The fact is that rules governing *ex parte* contacts with physician witnesses vary quite a bit among the many jurisdictions, and they vary quite a bit in some states depending on which party is having the contact. *See* 50 ALR4th 714. They also may vary depending on whether the issue is presented in mass tort litigation or in individual cases. The *Chantix* order also described how another court considering similar issues had changed its views upon reconsideration, which is also an indication of the difficulty of the issues. *In re: Vioxx Products Liability* Litigation, 230 F.R.D. 473 (E.D. La. 2005). Any lengthy consideration of the issues—and most thoughtful ones—will reflect the diversity of outcomes of various precedents and the competing considerations that bear on the them.

Generally, where mass torts are not being litigated, there are fewer restrictions on discussions between plaintiffs' lawyers and plaintiffs' physicians. The lawyers, as agents for their clients, are talking with their clients' own physicians, and privilege issues that arise when a stranger or an adversary to the patient is conversing with the physician are not implicated.

If I were to recommend that this Court impose limitations on contacts between plaintiffs' lawyers and plaintiffs' physicians that are different from those that might vary from state to state, it would be based on considerations other than the physician-patient privilege. It would be based on the related ideas that: (1) administration of the MDL would be improved by imposing a uniform limitation on these contacts; (2) the mass tort administration context gives rise to issues of fairness that are different from those presented in standard cases that are not consolidated into mass tort forums; or (3) that, as Pfizer argued at page 8 of its submission, it is better to anticipate abuses by the plaintiffs than it is to have to deal with them after discovery has progressed.

For the most part, I do not find these considerations weighty enough to warrant disturbance of the law governing *ex parte* contacts as it has developed in a variety of ways in the many states where these *ex parte* contacts will occur. It is not, in my view, appropriate to develop a uniform rule to govern all of these *ex parte* contacts where the uniform rule will differ from the varying rules of many of the states where the contacts will occur.

It is true that there is an appearance of simplicity of administration in writing a single rule that will govern all investigation and discovery in the MDL. In this case, where there is an initial discovery pool, we do not have the varying restrictions of all fifty states and a few other jurisdictions at issue. The plaintiffs in the pool appear to come from only about twenty states. Because the pool has only 25 plaintiffs, the difficulty of overseeing discovery and investigation in a huge number of cases is not present. I predict that the parties will be capable, with the assistance of counsel familiar with the law of the home states of the plaintiffs, of dealing with the complexity of varying rules governing witness interviews. I predict that the Court will not be unduly burdened by the variety of rules governing these contacts, either.

There are cases in which the transferee court has overridden or supplemented the rules of the jurisdiction from which cases are transferred, but the volume of the discovery appears to have been higher than it will be in the discovery pool selected here. In *Ortho Evra Products Liability Litigation,* 2010 WL 320064 (N.D. Ohio, January 20, 2010), the court noted that the need to limitations on *ex parte* contacts is reduced where the court is supervising discovery in bellwether cases. The court in *Gaus v. Novartis Pharaceuticals Corp*, N.J. Superior Court, L. Div., No. L-9014-07MT, opinion of October 29, 2009 (Exhibit E to Pfizer's submission), also appears to have turned in part on the volume of cases, recognizing that a single rule might be more important where there is an abundance of cases in which discovery will take place. In that opinion (at pages 15-17) the court cited a number of federal cases where this consideration was important.

I also see the wisdom in allowing each state's law to govern the methods and contents of *ex parte* witness interviews. The court's opinion on reconsideration in the *Vioxx Products Liability Litigation, supra*, describes why it would be unwise to create a different rule for *ex parte* contacts in an MDL than for similar cases not transferred to the MDL court. While it is appealing to have the same rule govern all of the cases in the MDL, it is just as unappealing—and difficult to administer—to have different rules govern the same claim depending on when it

is filed, where it is filed, and when the interviews take place. (In the case on which Pfizer relies most heavily, the parties agreed that a uniform approach to contacts with physicians should be imposed; that circumstance is not present here.)

I am not persuaded by the idea that the restrictions proposed by Pfizer are necessary to prevent abusive contacts. I was not a participant in the Court's designation of Liaison Counsel and the Plaintiffs' Steering and Executive Committees. But I do assume that the Court evaluated the experience, records and character of the lawyers whom it chose. Plaintiffs' attorneys in this case have not been shown to be anything other than honorable and respectful of ethical and legal restrictions on what they may do. I do not understand Pfizer to be saying otherwise. If developments show that restrictions should be imposed, the Court has appointed me to consider them upon presentation of those developments by either side. *In re Yasmin and Yaz Prod. Liab. Litigation*, 2011 WL 9996459 (S.D. Ill., March 4, 2011).

The abuse that led to sanctions in *Parker v. Upsher-Smith Laboratories, Inc.*, 2009 WL 418596 (D. Nev., Feb. 18, 2009), had nothing to do with the kinds of concerns expressed by Pfizer in this case. It was an individual case in which plaintiffs obstructed *ex parte* contacts.

Just as there are cases that show that plaintiffs' lawyers engage in conduct that courts are required to remedy, there are also cases where defendants' attorneys have engaged in such conduct. And conduct that is sanctioned in one state may not be in another. *See Pearce v. Ollie*, 826 P.2d 888 (Id. 1992). I do not believe that we should, in this MDL, attempt to rewrite the rules of practice, or impose conflicting ones, in the states from which the individual cases originate.

I decline to recommend imposition on Pfizer's proposed limits on the subject matter of contacts between lawyers and treating physicians.

I do see in the cases cited above, the presentations of the parties, and other cases cited by the parties in their briefs an approach that will likely make the depositions go more smoothly and will also allow the defendant to explore whether the physician's testimony is the product of what it calls "woodshedding" of the physician.

I recommend that all documents sent by one party to any physician witness by any party be disclosed to the other party.

      The disclosure should include cover letters, letters about scheduling and letters about compensation to the physician, as Pfizer seeks in its proposed order.  The disclosure should also identify documents (or provide copies of the documents) that are provided to the physician.  If the copies shown to the physicians have markings, highlighting or tabs affixed to them, these should be disclosed.  This should occur within a week after the document has been provided to the physician, or three days before any deposition of the physician, whichever comes first. (Other courts have imposed different rules as to timing; this recommendation allows the non-interviewing party to assess whether there is what it calls woodshedding in a timely manner, and allows ample time for preparation for depositions.)  These disclosures will allow the non-interviewing party to examine the physician fully on what might have influenced the physician's testimony, and disclosures well in advance of the depositions will allow for the depositions to go more quickly than if disclosures are made, for example, at the depositions.

                                          */s/ Andrew A. Chirls*
                                          Andrew A. Chirls
                                          Special Discovery Master