# EXHIBIT 38

Case 2:14-md-02592-EEF-MBN Document 2062-15 Filed 02/02/16 Page 2 of 9
Case 2:09-cv-02039-IPJ Document 306 Filed 06/30/11 Page 1 of 8

FILED
2011 Jun-30 AM 11:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

**IN RE: CHANTIX (VARENICLINE) PRODUCTS LIABILITY LITIGATION**

Master File No.: 2:09-CV-2039-IPJ
MDL No. 2092

This Order Relates To:

    ALL CASES

## ORDER

A status conference was held in the above case on June 28, 2011, at which Lead Counsel for plaintiffs and Lead Counsel for defendant were present in person, and many individual plaintiffs' counsel were present in person or by telephone, and wherein, or as a result of, the following proceedings were held and actions taken:

With the agreement of the parties, it is Ordered by the court that the next status conference shall be held July 29, 2011, at 10:00 a.m., in Florence, Alabama.

At the status conference held June 28, 2011, the court received a report on the items listed on the parties' proposed agenda. The parties informed the court that they were working together to resolve their differences regarding privilege log matters, and would continue to do so.

As to Agenda item number 3.b., concerning the status of discovery

pursuant to Pretrial Order No. 4, counsel informed the court that the parties are attempting to resolve their differences concerning the defendant's production of Adverse Event data and documents post-dating July 2009. Should the parties and their counsel be unable to resolve this issue, the same shall be set as an Agenda item for the court's status conference in July 2011, and the parties are given leave to file memoranda concerning their respective positions on this issue on or before July 25, 2011.

Regarding the status of plaintiff fact sheet production, Agenda item number 3.c., the defendant informed the court that approximately 60 plaintiffs' fact sheets remain deficient in some significant manner. Counsel for defendant shall file appropriate motions as needed to resolve these deficiencies.

Item Four on the parties' Agenda concerns the issue of *ex parte* contact with the plaintiffs' physicians, which the parties briefed prior to the status conference. *See* defendant's memorandum concerning *ex parte* contact with physicians (doc. 294) and plaintiffs' memorandum of law in opposition to defendant's request seeking permission to communicate, *ex parte*, with plaintiffs' healthcare providers (doc. 293). Although neither the plaintiffs nor the defendant filed a motion to allow or disallow such communications, the defendant did make an oral motion to be allowed to contact plaintiffs' physicians, as set out in defendant's memorandum, and the court heard oral

2

argument in support of and in opposition to said oral motion. The parties agree that they seek a global approach to this issue, rather than the court applying the law of the underlying jurisdictions on a case by case basis.

The defendant seeks to speak *ex parte* to the plaintiffs' individual physicians who actually prescribed Chantix for each of the bellwether plaintiffs, although the defendant stated in both its memorandum and in open court that it does not seek to speak to those physicians about their actual care of the individual plaintiffs. Rather, the defendant asserts it seeks to question these non-party physicians concerning the physicians general prescribing practices and factual information that is in the public domain, such as labeling and promotional materials. The plaintiffs object to any such *ex parte* communications, asserting they have not waived "the physician patient privilege." Plaintiffs' memorandum, at 5.

At the status conference, the plaintiffs argued that defendant already knows plaintiffs' doctors prescription practices, because the defendant's representatives meet with these doctors on a regular basis. Similarly, the plaintiffs argued that the defendant already knows what promotional materials the plaintiffs' physicians have received, because the defendant is the source of these materials. Furthermore, the plaintiffs assert that the doctors have already reported to the defendant concerning the plaintiffs' adverse events.

3

According to the defendant, the cases selected for bellwether trials fall roughly into equal halves regarding the permissibility of defendant having *ex parte* contact with the plaintiffs' physicians based on the underlying jurisdiction of each of those cases. In other words, under state law in about half the bellwether cases, the defendant has the right to have *ex parte* communications with a plaintiff's non-party physician. The defendant stressed that it does not seek to have such *ex parte* conversations with plaintiffs' treating physicians concerning the individual plaintiffs' medical care. By the same token, the court is aware that the defendant already has information and medical records for the individual plaintiffs as the plaintiffs have completed detailed individual fact sheets and provided defendant with access to their individual medical records.

The defendant argued that since it has the right to talk to the individual plaintiffs' treating physicians in roughly half the bellwether cases, and that since it is willing to "sacrifice" this right in exchange for being able to speak to all plaintiffs' physicians about their generalized knowledge and prescribing practices, that the plaintiffs' counsel should be prohibited from speaking *ex parte* with treating physicians concerning defendant's internal documents or other information that is not publicly available.

Having considered the respective arguments of the parties, as well as their written memoranda, the court notes that it has no authority to make a physician

4

talk to both plaintiffs' counsel and defense counsel in a fair and equal manner. Clearly, in any jurisdiction, the plaintiffs' counsel may have unlimited conversations with plaintiffs' individual doctors about plaintiffs' treatment. As to access to plaintiff's treating physicians by defense counsel, in some jurisdictions there is a statutory physician-patient privilege, in some jurisdictions there is a common-law physician-patient privilege, and in some jurisdictions, no such privilege exists.

The purpose of statutory or common law privileges protecting communications between a doctor and his patient is to promote greater freedom of communication between physicians and their patients by providing the relationship with a "cloak of confidence" and to prevent disclosure of information concerning the patient which might result in his or her humiliation, embarrassment or disgrace. However, as one court aptly noted;

> The privilege was never intended ... to be used as a trial tactic by which a party entitled to invoke it may control to his advantage the timing and circumstances of the release of information he must inevitably see revealed at some time.

*Doe v. Eli Lilly & Co.,* 99 F.R.D. 126, 128 (D.D.C.1983). Yet the court is struck by how the parties before it are attempting to posture themselves and to control the information provided a future trial witness to their own advantage.

Plaintiffs' counsel also suggested to the court that waiting until deposition

5

to show plaintiffs' physicians documents of the defendant will require each of these depositions to take two days rather than just several hours. However, the court notes that under the parties' various proposals, the doctors in question will be contacted not once for a deposition, but up to three separate occasions. Furthermore, what both the defendant and plaintiffs seek to obtain through *ex parte* communications can easily be gotten through depositions of these doctors.

Regardless of whether an actual privilege exists, "patients enjoy a right to privacy and confidentiality with regard to disclosures made within the doctor-patient relationship." *See e.g., Ex parte St. Vincent's Hospital*, 991 So.2d 200, 208 (Ala.2008); *In re Kugel Mesh Hernia Repair Patch Litigation*, 2008 WL 2420997 (D.R.I. 2008) (denying defendant *ex parte* communications "in order to preserve Plaintiffs' time honored privilege in their communications with their healthcare providers"); *In re Vioxx Products Liability Litigation,* 230 F.R.D. 473, 476 (E.D.La.2005)(holding that allowing defense counsel access to plaintiffs' treating physicians "without the approval of the patient, other than in a deposition or pursuant to a court order, would be in direct conflict with the time honored doctor-patient confidential relationship which has been recognized and protected in both Western and Eastern civilization for over 2000 years").

The court has considered the wisdom of United States District Judge Eldon Fallon's words in a factually similar situation. He stated

6

> The Court, upon further reflection, now feels that the just option in this case is to protect the relationship between a doctor and patient by restricting defendants from conducting ex parte communications with Plaintiffs' treating physicians but allowing Plaintiffs' counsel to engage in ex parte interviews with those doctors who have not been named as defendants. This approach appears, at first glance, to be one sided and unfair. However, in actuality and as a practical matter, it is not. This modification does not leave the Defendants without any access to information. The Defendants still are entitled to all of the medical records of the Plaintiffs as well as the Plaintiff Profile Forms setting forth each Plaintiff's detailed medical history. The Defendants can also continue to exercise their right to depose the Plaintiffs' treating physicians or confer with them in the presence of Plaintiffs' counsel. Furthermore, as a practical matter, the Defendants already have information, including documentation, regarding what its representatives told the treating physicians about Vioxx. Therefore, the Defendants do not need the doctors to tell them in ex parte conferences what they already know.

*In re Vioxx Products Liability Litigation,* 230 F.R.D. 473, 477 (E.D.La.2005).

Having considered the foregoing, the court concludes that neither plaintiffs' counsel nor defense counsel shall be allowed unfettered access to the plaintiffs' treating physicians. Although plaintiffs' counsel is clearly permitted by law to have *ex parte* communications with their clients' treating physicians, the court **ORDERS** such communications are limited to the individual **care** of the individual plaintiffs, such as the plaintiffs' **treatment**, **medical records** and **conversations with their health care providers**. Plaintiffs' counsel shall **not discuss defendant's internal documents** with plaintiffs' health care providers outside of a deposition or other on the record setting. Similarly, the court

7

**ORDERS** that defendant and defense counsel shall not meet *ex parte* with plaintiffs' treating physicians regarding any matters, generalized or specific to the plaintiffs' individual claims.

**DONE** and **ORDERED** this 30th day of June, 2011.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE