UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


IN RE:  XARELTO (RIVAROXABAN)   *          14-MD-2592
PRODUCTS LIABILITY LITIGATION   *
                                *          Section L
                                *
Relates to:  All Cases          *          January 29, 2016
                                *
                                *
*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *


STATUS CONFERENCE BEFORE THE
HONORABLE ELDON E. FALLON
UNITED STATES DISTRICT JUDGE


Appearances:


For the Plaintiffs:          Gainsburgh Benjamin David Meunier
                               & Warshauer, LLC
                             BY:  GERALD E. MEUNIER, ESQ.
                             1100 Poydras Street, Suite 2800
                             New Orleans, Louisiana 70173


For the Plaintiffs:          Levin Papantonio Thomas Mitchell
                               Rafferty & Proctor, P.A.
                             BY:  BRIAN H. BARR, ESQ.
                             316 Baylen Street, Suite 600
                             Pensacola, Florida 32502


For the Plaintiffs:          Beasley Allen Crow Methvin
                               Portis & Miles, P.C.
                             BY:  ANDY D. BIRCHFIELD, ESQ.
                             218 Commerce Street
                             Post Office Box 4160
                             Montgomery, Alabama 36103

<u>Appearances</u>:

For the Plaintiffs:          Ventura Ribeiro & Smith
                             BY:  KELLY A. FITZPATRICK, ESQ.
                             235 Main Street
                             Danbury, Connecticut 06810


For the Defendants:          Irwin Fritchie Urquhart
                               & Moore, LLC
                             BY:  JAMES B. IRWIN, ESQ.
                             400 Poydras Street, Suite 2700
                             New Orleans, Louisiana 70130


For the Defendants:          Chaffe McCall, LLP
                             BY:  JOHN F. OLINDE, ESQ.
                             1100 Poydras Street, Suite 2300
                             New Orleans, Louisiana 70163


For the Defendants:          Drinker Biddle & Reath, LLP
                             BY:  SUSAN M. SHARKO, ESQ.
                             600 Campus Drive
                             Florham Park, New Jersey 07932


Official Court Reporter:     Toni Doyle Tusa, CCR, FCRR
                             500 Poydras Street, Room B-275
                             New Orleans, Louisiana 70130
                             (504) 589-7778


Proceedings recorded by mechanical stenography using
computer-aided transcription software.

**PROCEEDINGS**

**(January 29, 2016)**

**THE COURT:**  Hello.  Good afternoon, everyone.  This is Judge Fallon.  Who is on the line for the plaintiffs?

**MR. BARR:**  Good afternoon, Judge Fallon.  It's Brian Barr for the plaintiffs.

**MR. BIRCHFIELD:**  Andy Birchfield.

**MS. FITZPATRICK:**  Kelly Fitzpatrick.

**THE COURT:**  Anyone else for the plaintiffs?

How about for the defendants?

**MR. IRWIN:**  Hello, Your Honor.  Jim Irwin.

**THE COURT:**  Anyone else?

**MS. SHARKO:**  Yes.  Susan Sharko.

**MR. OLINDE:**  Judge, this is John Olinde.

**THE COURT:**  Anyone else?

Okay.  We are here today to discuss the discovery of the personnel files.  There are two issues before the Court.

First, I issued an order on January 26, 2016, dealing with this matter.  The Plaintiffs' Steering Committee at that time sought the personnel files of all employees of the defendants whose depositions would be taken without specifying anything about those individuals or the material with specificity.  They did in some general terms.  I felt that it was too broad.  They wanted the personnel files.

03:02

1    Of course, the personnel files are different

2  from the custodial files.  The custodial files deal with

3  information that the employee generates dealing with their

4  activities involving Xarelto; whereas the personnel files are

5  not files that are generated by the employee but generally by

6  the employer or one of the employer's departments.

7    They contain private information, including

8  evaluation forms or things of that sort that the employee has

9  not even seen, in addition to some personal information of the

10 employee.  Because of that, I think the Fifth Circuit looks and

11 scrutinizes the personnel files and puts those discoveries to a

12 test, a little bit more specificity, a lot more relevance, and

13 things of that nature.

14    So I denied the motion of the plaintiffs on the

15 26th.  I indicated that it was denied without prejudice; and if

16 the plaintiffs were able to be more specific, I would at least

17 entertain review again.  That's one aspect.  They have now

18 written me a letter.  They now want two employees.  They have

19 given me some information about those employees.  The

20 defendants still feel that there's not enough relevance and not

21 enough specificity.  They have both written me letters

22 explaining their positions.  They are pretty detailed letters,

23 and I do understand their positions.

24    The second aspect of this discussion today has

25 to do with Bayer.  When I wrote the Order and Reasons on

1   January 26, I recognized that while there were some aspects of

2   the request that were also relevant or germane to Bayer, Bayer

3   also had another argument that J&J didn't have.  Bayer took the

4   position that they were a German corporation.  In addition to

5   all of the objections that J&J made, Bayer pointed to the

6   German law which indicates that a company should not or cannot

7   or ought not give personnel information; and if they do, they

8   are subject to a fine and jail term.  So they raised that

9   particular issue.

10          I had nothing from either side dealing with the

11  specificity of the German law, so I indicated that I didn't

12  feel that my January 26 Order and Reasons were totally

13  applicable to Bayer because I didn't focus on the aspect of

14  German law.  That is another reason for hearing it today.

15          The defendants have given me an affidavit from a

16  German attorney indicating the German law with great

17  specificity and giving me his opinion.  The defendants have

18  also written a memorandum in support of their position.  I

19  haven't received anything from the plaintiffs responding to

20  that, but we can talk about that aspect of the case too.

21          So the first issue, then, is whether the

22  plaintiffs' trimmed-down information request is sufficient to

23  compel production.  I can either hear from the parties or you

24  can give it to me on your briefs.

25          MR. MEUNIER:  Excuse me, Your Honor.  This is

1  Jerry Meunier.  I had difficulty getting on, but I did join

2  after the roll call.  I want to confirm for the record your law

3  clerk contacted me, and we verified that we did not have any

4  additional submission in writing on the German law in question.

5          THE COURT:  Okay.

6          MR. OLINDE:  Your Honor, before we get started, this

7  is John Olinde.  William Hoffman is the person who is most

8  knowledgeable about the issue of the German law.  He is not on

9  the call because he is actually out of the country.  So

10  that's --

11          THE COURT:  Probably in Germany.

12          MR. OLINDE:  Probably is.  I think he is.

13          MR. BARR:  Your Honor, it's Brian Barr.  I can

14  address the German thing quickly, and we can probably remove

15  that from the table.  We are not intending on filing anything

16  additional on that.  We heard Your Honor at the hearing, we

17  understand the position of the defendants, and we are willing

18  to live with what Your Honor said at the hearing on the German

19  law issue.  So I don't know that we need to discuss that any

20  further.

21          THE COURT:  Well, either way.  Let's deal with the

22  first one, in any event.  Anything further on the request for

23  two individuals with the --

24          MR. BARR:  We don't have a lot.  We set out, we

25  thought, in our letter brief very particularized facts about

03:08

1   these two individuals, showing that these are high-level people

2   with the company that have the ability to influence policy,

3   have the ability to make decisions.

4            The defendants, in their letter briefs, say that

5   they don't have unfettered authority.  Well, that's not the

6   law.  The law isn't their ability to uniformly and unilaterally

7   decide things.  It's about their ability to influence, and that

8   is what Your Honor set out in your order, which was very

9   helpful to provide us guidance; which was we can provide a

10  description of their job title and classification, their area

11  of responsibility and decision-making authority, ability to

12  influence policy, and a particularized explanation of the

13  relevance of each category.  We have done that at this point.

14           We just want to remind the Court that right now,

15  for the immediate decision, we aren't making the decision of

16  whether or not this information --

17           **THE COURT:**  Hello?  Everyone?  Anybody still with me?

18  Hello?

19           (Recess.)

20           **THE COURT:**  Hello, everybody.  Something happened.

21           Brian, you just started to speak.  I'm awfully

22  sorry.  Something happened.

23           **MR. BARR:**  That's okay.  We believe Your Honor set

24  out for us some very clear standards on what you expect to not

25  produce the files to us, but to conduct an in camera review.

03:13

1    That's where we are right now.  We are not making the decision

2    on whether or not the information in these two gentlemen's

3    personnel file is coming to the plaintiff.  We are making the

4    decision that we have made a particularized enough showing for

5    Your Honor to conduct an in camera review so that you can look

6    at what's in the file that's Xarelto related and make the

7    appropriate decision, balancing the discovery interests from

8    the privacy interests.

9                    I don't want to go completely through everything

10   we have already written to you showing what these two gentlemen

11   did.  At the end of the day, Mr. Moye is the director of

12   cardiovascular marketing.  Large parts of his job dealt with

13   the marketing materials, training sales reps, those types of

14   things.  He had the ability to influence those policies, which

15   is what the standard is.

16                    Defendants write in their letter that none of

17   them had unfettered authority.  Well, that's not the standard

18   you set out.  The standard you set out was the ability to

19   influence.  There's no question that the director of marketing

20   has the ability to influence marketing policies, marketing

21   brochures, sales training programs, those types of things.

22                    So we believe for all of the reasons we cite in

23   our letter that Mr. Moye's file should at least be subjected to

24   an in camera review.

25                    Then you move to Dr. Nessel.  Dr. Nessel has

03:15

1    been with the company a long time.  He was heavily involved in

2    the conduct of the ROCKET trial.  As Your Honor has become

3    aware, the conduct and the way the ROCKET trial was conducted

4    has been publicly questioned at this point because of the use

5    of a defective point-of-care device.

6                 We know at this point from documents we have

7    seen that Dr. Nessel was aware of issues pertaining to that

8    device back in 2005-2006 when it was being used.  We also know

9    that the issues with that device were not disclosed to the FDA

10   until this issue about it became public back in 2015.

11                What we don't know is why Dr. Nessel or anybody

12   else with Janssen did not disclose this to the FDA.  A lot of

13   that information, clearly, we can find in the custodial file.

14   There's no question about that.  But there is information,

15   particularly when it comes to evaluations of Dr. Nessel's job

16   performance, self-evaluations, and incentive plan, that could

17   explain some of the why this wasn't disclosed.

18                So it's our view, Your Honor, that we have met

19   the standard to have an in camera review.  We believe that

20   that's what should happen, so that Your Honor can review these

21   documents and decide whether or not they are appropriate to

22   disclose to plaintiffs.

23             **THE COURT:**  Let me hear the other side.  Jim, are you

24   going to argue?

25             **MR. IRWIN:**  Yes, sir.  Yes, sir, I am.  Judge, I was

03:17

1    going to try to go through the six factors.  I do think there

2    actually may be a seventh, when I went back and looked at

3    *Frankenhauser*, that it's relevant to just mention.  I'll try to

4    comment on a couple of things Brian said in the letter about

5    Moye and Nessel.  Judge, specific questions about them, if you

6    have any more beyond what I might try to offer, would probably

7    be best answered by Susan.

8                There are some comments I have about

9    particularity and the connexity -- my favorite word here is

10   "speculative" connection -- between some of the suggestions

11   made about Moye and Nessel and the real issues in the case.  So

12   that's pretty much what I was going to cover.

13               I think it's important to keep in mind that we

14   are talking about four categories of what Brian and his folks

15   have recognized are Xarelto related materials.  One is

16   supervisor evaluations, another one is self-evaluations,

17   another is compensation/salary sort of thing, and the final is

18   bonus/incentives, that sort of thing.

19               So the six factors, turning to them, Factor 1

20   that Your Honor addressed -- we know there were three or four

21   that were not relevant because that was a 1983 police brutality

22   case, as we know.

23               The first factor was the impact upon persons who

24   have given information, of having their identities disclosed.

25   I think in a narrower sense, in that police brutality

03:18

1  investigation case that probably related to confidential

2  informants, but it easily translates here and properly

3  translates here to people like supervisors and the risk of

4  having their identity disclosed, how that could hurt the

5  relationship between the supervisor and the employee.

6  Your Honor has touched upon that and recognized that in your

7  opinion of the 26th.

8          Factor 2 was whether the information sought is

9  factual or evaluative.  Of these factors, I would say that one

10  may be the second most important, as far as we are concerned,

11  because once again we know that this was a 1983 police

12  brutality case, and what was sought was not personnel files but

13  investigative files.

14          Significantly, this is what the *Frankenhauser*

15  court said:  "Disclosure, under the circumstances of this case,

16  would not reveal any details of police self-evaluation because

17  we will limit disclosure to factual data as opposed to

18  evaluative summaries and recommendations."

19          Of course, what we are concerned about here more

20  than anything else are subjective opinions.  Whether it is

21  self-critical opinions where one tries to criticize one's own

22  behavior or criticize one's own productivity, I think we all

23  would recognize that a self-evaluation -- what's probably most

24  valuable about a self-evaluation is not what you do well, but

25  what you think you may not do so well and what you want to try

03:20

1    to improve on.  That's probably what's most important to the

2    employment relationship, is somebody who will be honest about

3    their shortcomings and not pat themself on the back about their

4    successes.

5              By the same token, that's what you would hope to

6    see from supervisors, supervisors who feel appropriately

7    protective about making constructive criticisms.  Pats on the

8    back are wonderful and should be encouraged, but constructive

9    criticisms are probably the most important thing that can come

10   from a supervisor.  So that's why that's such an important

11   distinction here because in *Frankenhauser* that was never in the

12   cards.  The opinions or the evaluations of those investigators

13   was never in the cards.  It was just the facts.

14             Then next is -- and I don't think this one

15   translates to our situation -- whether the party seeking the

16   discovery is an actual or potential defendant in any criminal

17   proceeding, either pending or reasonably likely.  Well, the

18   facts are, of course, no with respect to these two folks.  I

19   suspect that this factor really would relate more directly to a

20   situation where somebody is under indictment and wants to get

21   the investigative files.  Of course, so much of disclosure and

22   discovery in that situation tilts in favor of the defendant and

23   disclosure.

24             Then the next is whether the suit is

25   nonfrivolous and brought in good faith.  Of course, we agree

1     that this is not frivolous.  We believe it's brought in good

2     faith.  We regret that in the beginning many of these orders

3     that came from some of the courts were not the subject of the

4     kind of careful analysis that's been happening more recently.

5     So, no doubt, many of the PSC's constituents would expect them

6     to pursue disclosure of these materials, and we certainly do

7     not think it's frivolous or brought in bad faith.

8              Whether the information sought is available

9     through other discovery and other sources, I think Brian has

10    candidly and fairly admitted that they already have a lot of

11    this information.  He has made some comments about when

12    Dr. Nessel knew something and what he did or didn't do, and

13    that's the core information, those are the facts -- whether

14    it's true or not, I don't know, and Susan would be much more

15    capable of speaking to the ROCKET study on those particulars,

16    Judge.  They have the core information, and they can ask

17    Dr. Nessel about that all day long.  It's pure speculation

18    about whether something like that, what he knew and when he

19    knew about something, is in a personnel file, evaluations or

20    otherwise.  It is pure speculation.

21             Number 6, the importance of the information

22    sought to the plaintiffs' case, that's the balancing thing that

23    Your Honor talked about.  I'm going to come back to that one.

24             Here's what I saw as No. 7, going back and

25    looking at *Frankenhauser*, and I do think it translates to our

03:23

1    situation.  I think Your Honor has already touched upon it.
2    Again, in a criminal context or a police brutality context, it
3    said "the degree to which governmental evaluation and
4    consequent program improvement would be chilled by disclosure."
5    I think you could just recognize that that government
6    evaluation is the equivalent here of supervisory or
7    self-evaluation, and improvement of the program would be
8    employment improvement.  I think Your Honor has already
9    recognized that there is clearly the possibility of a chilling
10   effect here.
11           Moye and Nessel, again Susan can speak to the
12   particulars better than I can, but there was a reference --
13   I'll talk about Moye first, and this was in our letter.  The
14   suggestion that his personnel file would be relevant to the
15   rush to the market isn't born out by the facts because the drug
16   was already on the market when he assumed his responsibilities.
17           What they do do, though, is in order to try to
18   satisfy the specificity requirement, in their letter they
19   describe some more narrow marketing issues in the sense that he
20   had responsibility for branding messages and training of sales
21   reps and outreach to key opinion leaders, speaker programs, and
22   advertisers.  Your Honor, you could say that about every pharma
23   marketing manager that we have seen come and go in the MDLs we
24   have worked on.  They all have those responsibilities, every
25   one of them.  That goes with the territory.  Simply by reciting

03:25

1    those responsibilities doesn't get us any closer to the

2    particularity requirements that are necessary.

3            They do make a reference to something that he

4    was associated with about "obstacle handlers."  It sounded to

5    me ominous, but it couldn't have been all that ominous because

6    they must have had a document that referenced obstacle

7    handlers.  If it had been something troublesome, they could

8    have described it, and they did not.

9            Then there's Nessel.  They say he participated

10   in the design of the ROCKET study.  Brian mentioned some issues

11   about how there was a device that's being looked at -- I think

12   it's being looked at by Duke and FDA -- as to whether that

13   device may have affected some of the readings.  The answer to

14   all of that is unknown.  One of the things that Brian said on

15   the earlier call, the one thing he said that I agreed with, he

16   said something to that effect; that even though it's under

17   investigation, there's nothing that's been determined yet about

18   whether there' an issue here or a problem, I should say.  I

19   know there's a question.

20           So it still remains to be a theory, as we put in

21   our letter, that there may be a problem with the ROCKET study.

22   I don't see anything in *Frankenhauser*, *Sunrise*, or anyplace

23   else that a theory opens up the door.

24           There's a reference about Nessel having

25   publications in the *New England Journal* and *JAMA*.  Well, good,

03:27

1    that's great, but what does that have to do with a decision
2    Your Honor has to make today?  There's nothing said about that
3    other than the fact he has publications.
4              There's also a reference to his making a
5    presentation to the advisory committee in connection with the
6    NDA.  As we know, those ADCOM committee things are all public
7    record, the transcript, his presentation, all of that.  If
8    there's anything in there, they have it, No. 1.  If there was a
9    problem with any of it, No. 2, they could have mentioned it,
10   and they did not.
11             So I believe that as for Moye and Nessel, the
12   things that they have raised do nothing more than yet again
13   create speculation.  Moye, they suggest that his evaluation
14   could show marketing activities that should have been, to use
15   their word, "accelerated."  Number 1, that's speculation.
16   Number 2, I don't know what's wrong with trying to accelerate
17   things.  Everyone on this phone call tries to get work done
18   more efficiently and quickly.
19             As for Nessel, they speculate again that these
20   supervisory evaluations might contain information that
21   encouraged him to modify or obscure his data; it might contain
22   an evaluation that rewarded him or criticized him for modifying
23   or obscuring data presented to the FDA.  I find it hard to
24   believe, Judge, that any evaluation in J&J's files would
25   contain a supervisory review about an employee who did

03:29

1    something that's almost -- well, it's unethical.  Tampering

2    with scientific data and presenting false reports to the FDA I

3    do not believe are going to be in personnel files.  They are

4    going to be someplace else.

5              Judge, just to conclude, coming back to the

6    other factor, the balance, Your Honor said, I thought, sort of

7    like the bottom line was you are going to have to balance the

8    privacy interest against the interest in discovery.  It was

9    reminiscent of your comment about Rule 26, how discovery must

10   be proportional to the needs of discovery.

11             So I look at it this way.  We have an invasion

12   on one hand, an invasion of privacy, something that we all know

13   creates a special condition.  On the other hand, we have -- I

14   won't use the word "speculative."  We have suggested spoils

15   from this invasion.  So what is the cost of the invasion and

16   what are the rewards of these spoils?  That's the balance.

17             Well, the cost, at very minimum, is damage to

18   the employee's privacy.  It's damage to the supervisor's

19   privacy and disclosure of the supervisor's identify and maybe

20   names of people in the supervisor's report that provided the

21   supervisor with information.  It's going to damage the

22   supervisory and self-evaluation process that I described

23   earlier.  Who is going to make a criticism of themselves or an

24   employee, constructively or otherwise, if it's subject to

25   disclosure down the line?  It's going to damage the employment

03:30

1  relationship at a minimum.  Without a doubt, it's going to put

2  a chill on what is a very important process of employment in

3  any business.

4            What are the rewards of these spoils?  At best,

5  they get secondary, tertiary, or even more remote facts that

6  are remote from the witnesses and the documents that Your Honor

7  and we all will say to the jury is what the jury will consider

8  of the evidence in this case when we eventually get to trial.

9  That's the evidence.

10            Somebody's subjective opinions -- the subjective

11  opinions that *Frankenhauser* never even thought about

12  producing -- may not even be admissible, and how valuable are

13  they as secondary as they are?  The evidence, if it is

14  admissible, is nothing more than supplemental, complementary,

15  and maybe even redundant.

16            So we believe, Your Honor, that still they have

17  not done the basic requirements of particularity, specificity,

18  and proportionality to require us to go to the work to get

19  these materials, much less for Your Honor to go to the work to

20  review it.  They can go take the depositions.  You indicated in

21  your order that you left it open.  If they get more

22  specificity, proportionality, they always have the right to

23  come back.  We ask that you maintain your order of January 26.

24            **THE COURT:**  Thank you.

25            Anything further from the defendants?  Susan, do

03:32

1   you have anything to supplement?

2           **MS. SHARKO:**  Yes, if I could just make a correction

3   to the record.  There is no evidence that this alleged

4   malfunction in this device had any negative impact on the

5   result of the ROCKET study.  In fact, Duke did an entire

6   reevaluation of the study, as did Janssen and Bayer, and they

7   found that the results didn't change.

8           **MR. BARR:**  Your Honor, could I have a brief

9   follow-up?

10          **THE COURT:**  Just a couple minutes, please, Brian.

11          **MR. BARR:**  I'll be quick.  To start with, I can't

12  respond to what Susan just said.  That's the subject of the

13  motion to compel.  We would certainly like that information,

14  but they are unwilling to give it to us at this point.  We are

15  going to hear about that next week.

16              On what Jim was talking about, let me just go

17  back and remind everybody where we are.  Certainly the

18  *Frankenhauser* factors are important, but that is to produce

19  this information to the parties.  That's not where we are.

20              I would suggest that it sounds like, listening

21  to defendants, that their speculation about what may or may not

22  be in the file is just as great if not greater than ours.  Jim

23  has suggested a parade of horribles that could happen if these

24  files are produced, but it was purely based on his speculation

25  of what may or may not be in these personnel files.  It doesn't

1    sound like they reviewed them to know.

2                 I also find it hard to believe that there would

3    be some sort of damage to the employee-employer relationship

4    when we are talking about the production of a personnel file

5    from a vice president.  The maintenance of these personnel

6    files has been going on in these companies for years.  They are

7    produced in other litigations, and it has not chilled any

8    discussion or evaluation in any one personnel file.

9                 Finally, Your Honor, one of the points the

10   defendants have made is that we can go and we can ask questions

11   in depositions and find this out.  On the other hand, they have

12   made a very strong point that these aren't files that are

13   maintained by the employee.  So how can the employee answer

14   that question?  He may not even know what is or is not in the

15   personnel file.

16                 So that's why we believe that the appropriate

17   course at this point, to balance the privacy interest with the

18   discovery interest, is to conduct the in camera review of these

19   two files.

20                 THE COURT:  Thanks, the three of you all.  It's very

21   helpful to get written and also verbal presentations.  I think

22   I do understand the issue.

23                 The way that I see it at this point -- and I'm

24   dealing with discovery.  I'm not dealing with trial.  I make no

25   comment about whether or not the matter is admissible.  I'm not

03:35

1    even thinking about admissibility during trial.  I just remind

2    everybody that the area in discovery is that, at least in the

3    United States, a party can discover any nonprivileged matter

4    which is relevant to any party's claim or defense and

5    proportional to the needs of the case.  The last aspect of that

6    is really something that many courts have been conscious of,

7    but in any event now we all have to be conscious of it because

8    it's in the new amendments to the rules.

9             The way that I see it is that I think that the

10   initial request of the plaintiffs, giving all information or

11   substantially all information dealing with all of the employees

12   that you intend to depose, I didn't know how many were going to

13   be deposed.  I didn't really have a feel for the type of

14   information.  I couldn't make any decision on it, so I felt

15   that was too broad.

16            They are now requesting two employees, and they

17   are being specific as to what they want.  I think they have

18   satisfied who, what, and why.

19            At this point I'm not going to say that they are

20   entitled to the information, but I do feel that they have

21   reached a point where some aspects of the personnel files

22   should be presented to the Court for an in camera review.

23            Jim, I'm conscious of the *Frankenhauser* and

24   *Coughlin* factors.  I take them very seriously.  I will be using

25   those.  At this point J&J is directed to obtain and review the

personnel files of Dr. Christopher Nessel and Mr. Michael Moye
and collect the documents related to:

        (1)   The performance reviews;

        (2)   The annual compensation information;

        (3)   The incentive information, such as bonus
information; and

        (4)   Any postemployment information.

        Present it to the Court for an in camera review.
If a person is critiqued because they don't dress properly or
they are not looking at you when they are speaking or they are
flirting with men or women around the place, I don't think that
has anything to do with the defenses or claims.  But if an
individual's critique is that he is just too conservative in
his views of things, we are never going to get this thing on
the market if we keep him there without giving some incentive,
that may or may not be significant, but it's in a different
area.  It's at least important for me to review that
information and material and carefully balance the discovery
needs against the privacy interests using the *Frankenhauser* and
the *Coughlin* factors.

        I would like to get that information two to
three days before the depositions.  I'm starting a long trial
on Monday.  I can do it at night, but I do need some time to
look over the material.  So please give it to me in enough time
so I can do it.

03:39

1          Thank you very much.  Let me talk to you now

2    about the German aspect.

3          John, you mentioned that one of your colleagues

4    was not available, and it seems like the plaintiffs don't need

5    any expression from the Court.  Do you want me just to think

6    out loud with you all on that so that we don't have to come

7    back later on?  I will do either one.  I will do either one,

8    whichever one you want me to do.

9          **MR. OLINDE:**  Your Honor, with respect to the German

10   aspect, if it's going to require any more information or

11   argument, we should at least set a time for that.  If indeed

12   the Court would like to think out loud, I'm certainly amenable

13   to that.

14         **THE COURT:**  I think I understand the issue.  Just by

15   way of background, this is a request, just as we have done

16   before, a request for the material, the personnel files.  I

17   talked about J&J, but Bayer presents another issue, and that is

18   the German law issue.

19         I've had an opportunity to review the material

20   that at least the defendants have given to me.  In general, as

21   I mentioned a moment ago, in the United States a party, we all

22   know, can discover matters that are not privileged but that are

23   relevant to any party's claim or defense and proportional to

24   the needs of the case.  That's something that we live with, and

25   we have been living with it since the '30s, as modified last

03:41

1   year with the proportionality aspect, but that's not the

2   general rule in Europe.  In Europe it's a civil law area.  For

3   Louisiana, it's not a big deal, but in Europe and other aspects

4   of this country it is a significant change.

5                In Europe the collection of evidence is very

6   restrictive or I should say more restrictive.  "Very" is a

7   weasel word.  More restrictive than the United States.

8   Generally in Europe, throughout Europe, the requirement is it

9   be produced to the judge or to a magistrate.  They don't have

10  such a thing as producing to each other.  They haven't gotten

11  there yet, may never get there.  Also, there are various laws

12  that are applicable.

13               In Germany particularly, there's a German Data

14  Protection Act which prohibits the disclosure of personal data

15  to a party outside the European Union without the subject's

16  consent.  If that is done without the party's consent or

17  without other exceptions, the violation can bring about an

18  administrative fine, a substantial fine, a couple hundred

19  thousand euros in some instances, and also a violation can

20  constitute a possible criminal offense punishable by

21  imprisonment for up to two years in Germany.

22               "Personnel data" is broadly defined in Germany,

23  and I think it would include the material that's kept -- most

24  of it, in any event -- in the personnel files:  job, familial

25  status, credit information, medical history, fingerprints,

1    x-rays.  They do a lot of other things in their personnel

2    files, but I think the description that I read and the German

3    law would cover this information.

4            There's some exceptions to that Data Protection

5    Act.  I mentioned the consent exception.  There's also a

6    purpose exception and there's a transfer exception.  Without

7    getting into the weeds, it looks to me like none of those

8    exceptions would apply to this fact situation.

9            If a German party does not disclose the

10   information, the requesting party in a situation such as we are

11   in can ask a U.S. court for a motion to compel discovery.  If

12   the court orders discovery but the company still refuses the

13   discovery, the information can actually subject the company to

14   sanctions by the American court.

15           The sanctions, I looked at the cases, and they

16   do carry some fines to them.  None of them really support

17   dismissing a claim or dismissing a defense, but they do support

18   substantial claims.  In *International Business Machine*

19   *Corporation*, the information wasn't forthcoming, and the court

20   taxed IBM $150,000 per day.  The Second Circuit affirmed,

21   saying that IBM was big enough to take that fine in stride.

22           In *Richmark Corporation v. Timber Falling*

23   *Consultants*, a party cited a blocking statute -- it was a

24   Chinese statute in that case -- which made it illegal to

25   disclose the information.  The court said nonetheless that the

1    information should be disclosed, and the failure to do so would

2    bring about attorney's fees as well as up to $10,000 a day.

3            So, in summary, there's a conflict between the

4    broad U.S. discovery and the restrictive discovery which is in

5    Europe and also China and Japan, and it puts the company in a

6    tight situation.  It is caught between Scylla and Charybdis.

7    On the one hand, the company would be expected to provide the

8    information to avoid a very large fine from a U.S. court.  On

9    the other hand, the company would be required by German law in

10   this case not to reveal the information on threats of civil or

11   criminal penalties.  It's a difficult situation for a company

12   to be in.

13           The courts say that the mere existence of a

14   blocking statute is not sufficient to prevent discovery.  When

15   there is a direct conflict between the federal discovery rules

16   and a blocking statute, as I read the cases, the U.S.

17   Supreme Court may still require the foreign company to disclose

18   the data even if they would require the company to break the

19   laws of its own company.  It seems strange to me, but that's

20   what I see in the cases.

21           The Supreme Court in the *Societe Nationale* case,

22   482 U.S. 522, does direct the lower courts to be cognizant of

23   foreign laws, as they put it, including blocking statutes, when

24   ruling on discovery issues.  It's unfortunate that the courts

25   would have to be reminded of that.  It seems apparent to me.

1    In any event, it's underscored and underlined by the
2    Supreme Court.
3              So it's not something that courts do
4    willy-nilly.  In trying to be cognizant of foreign law and at
5    the same time fair to the parties, U.S. courts use the
6    *Societe Nationale* case I mentioned before and the restatements
7    test to balance the interests of the parties asking for the
8    discovery against the interests of the foreign state preventing
9    the discovery.
10              Of course, the restatements, I think, set out
11   what we have been talking about in the J&J issue.  It says that
12   federal courts should keep in consideration:
13              (1)  The importance of the material;
14              (2)  The degree of specificity of the request.
15   Whether the information originated in the United States, that
16   may be something significant in this case;
17              (3)  The availability or alternate means of
18   securing the information; is there some easier way of doing it.
19   If there is, I think any court, certainly this Court, would be
20   conscious of that and not require a foreign company to violate
21   its own laws; and
22              (4)  The extent to which noncompliance with the
23   request would undermine the important interests of the
24   United States.  I don't know necessarily whether that would be
25   an issue, but I can see where that can possibly come up.

03:50

1        So in this situation I think I would have to

2    analyze, if I were called upon to do so, witness by witness

3    with not only the specificity which I would do with the J&J

4    material, but even more so taking into consideration all of

5    those other factors:  the who, the what, the why, and can it be

6    gotten from some other source.

7        Since it's not before me at this time, I don't

8    need to rule on that.  You have asked me to think out loud with

9    you.  If I do rule on it, hopefully it will be a little more

10   elegant than what I just rambled about.  Thank you.

11       **MR. BARR:**  Your Honor, that was very helpful to me,

12   at least.

13       **THE COURT:**  Thank you, folks.

14       **MR. MEUNIER:**  Judge, we appreciate you taking the

15   time and rescheduling and allowing us to be heard today.

16       **THE COURT:**  Thank you.  Have a good Mardi Gras, those

17   of you who it's applicable to.

18       (Proceedings adjourned.)

19                          * * *

20

21

22

23

24

25

1          **<u>CERTIFICATE</u>**

2          I, Toni Doyle Tusa, CCR, FCRR, Official Court

3 Reporter for the United States District Court, Eastern District

4 of Louisiana, certify that the foregoing is a true and correct

5 transcript, to the best of my ability and understanding, from

6 the record of proceedings in the above-entitled matter.

7

8

9                              *s/ Toni Doyle Tusa*

                              Toni Doyle Tusa, CCR, FCRR
10                             Official Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**$**

$10,000 [1] 26/2
$150,000 [1] 25/20

**'**

'30s [1] 23/25

**0**

06810 [1] 2/4
07932 [1] 2/13

**1**

1100 [2] 1/16 2/10
14-MD-2592 [1] 1/4
1983 [2] 10/21 11/11

**2**

2005-2006 [1] 9/8
2006 [1] 9/8
2015 [1] 9/10
2016 [3] 1/6 3/2 3/19
218 [1] 1/23
2300 [1] 2/10
235 [1] 2/3
2592 [1] 1/4
26 [5] 3/19 5/1 5/12 17/9 18/23
26th [2] 4/15 11/7
2700 [1] 2/7
275 [1] 2/15
2800 [1] 1/16
29 [2] 1/6 3/2

**3**

316 [1] 1/19
32502 [1] 1/20
36103 [1] 1/24

**4**

400 [1] 2/7
4160 [1] 1/23
482 [1] 26/22

**5**

500 [1] 2/15
504 [1] 2/16
522 [1] 26/22
589-7778 [1] 2/16

**6**

600 [2] 1/19 2/13

**7**

70130 [2] 2/7 2/16
70163 [1] 2/10
70173 [1] 1/16
7778 [1] 2/16

**A**

ability [9] 7/2 7/3 7/6 7/7 7/11 8/14 8/18
8/20 29/5
able [1] 4/16
about [46]
above [1] 29/6
above-entitled [1] 29/6
accelerate [1] 16/16
accelerated [1] 16/15
Act [2] 24/14 25/5
activities [2] 4/4 16/14
actual [1] 12/16
actually [3] 6/9 10/2 25/13
ADCOM [1] 16/6
addition [2] 4/9 5/4
additional [2] 6/4 6/16

address [1] 6/14
addresses [1] 9/20
adjourned [1] 28/18
administrative [1] 24/18
admissibility [1] 21/1
admissible [3] 18/12 18/14 20/25
admitted [1] 13/10
advertisers [1] 14/22
advisory [1] 16/5
affected [1] 15/13
affidavit [1] 5/15
affirmed [1] 25/20
after [1] 6/2
afternoon [2] 3/3 3/5
again [6] 4/17 11/11 14/2 14/11 16/12
16/19
against [3] 17/8 22/19 27/8
ago [1] 23/21
agree [1] 12/25
agreed [1] 15/15
aided [1] 2/19
Alabama [1] 1/24
all [21] 1/6 3/21 5/5 8/22 11/22 13/17
14/24 15/5 15/14 16/6 16/7 17/12 18/7
20/20 21/7 21/10 21/11 21/11 23/6
23/21 28/4
alleged [1] 19/3
Allen [1] 1/14
allowing [1] 28/15
almost [1] 17/1
already [5] 8/10 13/10 14/1 14/8 14/16
also [11] 5/2 5/3 5/18 9/8 16/4 20/2
20/21 24/11 24/19 25/5 26/5
alternate [1] 27/17
always [1] 18/22
am [1] 9/25
amenable [1] 23/12
amendments [1] 21/8
American [1] 25/14
analysis [1] 13/4
analyze [1] 28/2
ANDY [1] 1/22 3/7
annual [1] 22/4
another [5] 5/3 5/14 10/16 10/17 23/17
answer [2] 15/13 20/13
answered [1] 10/7
any [24] 6/3 6/19 6/22 10/6 11/16 12/16
15/1 16/9 16/24 18/3 19/4 20/7 20/8
21/3 21/4 21/7 21/14 22/7 23/5 23/10
23/23 24/24 27/1 27/19
anybody [2] 7/17 9/11
Anyone [3] 3/9 3/12 3/15
anyplace [1] 15/22
anything [10] 3/23 5/19 6/15 6/22 11/20
15/22 16/8 18/25 19/1 22/12
apparent [1] 26/25
Appearances [2] 1/13 2/1
applicable [3] 5/13 24/12 28/17
apply [1] 25/8
appreciate [1] 28/14
appropriate [3] 8/7 9/21 20/16
appropriately [1] 12/6
are [56]
area [4] 7/10 21/2 22/17 24/2
aren't [2] 7/15 20/12
argue [1] 9/24
argument [2] 5/3 23/11
around [1] 28/1
as [26] 9/2 10/22 11/10 11/10 11/17
13/24 15/12 15/20 16/6 16/11 16/19
18/13 18/13 19/6 19/22 21/17 22/5
23/15 23/20 23/25 24/10 25/10 26/2
26/2 26/16 26/23

ask [4] 13/16 18/23 20/10 25/11
asked [1] 10/10
asking [1] 27/7
aspect [8] 4/17 4/24 5/13 5/20 21/5 23/2
23/10 24/1
aspects [3] 5/1 21/21 24/3
associated [1] 15/4
assumed [1] 14/16
at [33]
attorney [1] 5/16
attorney's [1] 26/2
authority [3] 7/5 7/11 8/17
availability [1] 27/17
available [2] 13/8 23/4
avoid [1] 26/8
aware [2] 9/3 9/7
awfully [1] 7/21

**B**

B-275 [1] 2/15
back [12] 9/8 9/10 10/2 12/3 12/8 13/23
13/24 17/5 18/23 19/17 23/7
background [1] 23/15
bad [1] 13/7
balance [6] 17/6 17/7 17/16 20/17 22/18
27/7
balancing [2] 8/7 13/22
BARR [3] 1/19 3/6 6/13
based [1] 19/24
basic [1] 18/17
Bayer [8] 4/25 5/2 5/2 5/3 5/5 5/13 19/6
23/17
Baylen [1] 1/19
be [41]
Beasley [1] 1/21
became [1] 9/10
because [12] 4/10 5/13 6/9 9/4 10/21
11/11 11/16 12/11 14/15 15/5 21/7 22/9
become [1] 9/2
been [11] 9/1 9/4 13/4 15/5 15/7 15/17
16/14 20/6 21/6 23/25 27/11
before [7] 1/10 3/17 6/6 22/22 23/16
27/6 28/7
beginning [1] 13/2
behavior [1] 11/22
being [4] 9/8 15/11 15/12 21/17
believe [10] 7/23 8/22 9/19 13/1 16/11
16/24 17/3 18/16 20/2 20/16
Benjamin [1] 1/14
best [3] 10/7 18/4 29/5
better [1] 14/12
between [5] 10/10 11/5 26/3 26/6 26/15
beyond [1] 10/6
Biddle [1] 2/12
big [2] 24/3 25/21
BIRCHFIELD [2] 1/22 3/7
bit [1] 4/12
blocking [4] 25/23 26/14 26/16 26/23
bonus [2] 10/18 22/5
bonus/incentives [1] 10/18
born [1] 14/15
both [1] 4/21
bottom [1] 17/7
Box [1] 1/23
branding [1] 14/20
break [1] 26/18
BRIAN [10] 1/19 3/6 6/13 7/21 10/4
10/14 13/9 15/10 15/14 19/10
Brian Barr [1] 3/6
brief [2] 6/25 19/8
briefs [2] 5/24 7/4
bring [2] 24/17 26/2
broad [3] 3/25 21/15 26/4

**B**

broadly [1]  24/22
brochures [1]  8/21
brought [3]  12/25 13/1 13/7
brutality [4]  10/21 10/25 11/12 14/2
business [2]  18/3 25/18
but [30]

**C**

call [4]  6/2 6/9 15/15 16/17
called [1]  28/2
came [1]  13/3
camera [7]  7/25 8/5 8/24 9/19 20/18
 21/22 22/8
Campus [1]  2/13
can [28]  5/20 5/23 5/24 6/13 6/14 7/9
 8/5 9/13 9/20 12/9 13/16 14/11 14/12
 18/20 20/10 20/10 20/13 21/3 22/23
 22/25 23/22 24/17 24/19 25/11 25/13
 27/25 27/25 28/5
can't [1]  19/11
candidly [1]  13/10
cannot [1]  5/6
capable [1]  13/15
cardiovascular [1]  8/12
cards [2]  12/12 12/13
care [1]  9/5
careful [1]  13/4
carefully [1]  22/18
carry [1]  25/16
case [15]  5/20 10/11 10/22 11/1 11/12
 11/15 13/22 18/8 21/5 23/24 25/24
 26/10 26/21 27/6 27/16
cases [4]  1/6 25/15 26/16 26/20
categories [1]  10/14
category [1]  7/13
caught [1]  26/6
CCR [3]  2/15 29/2 29/9
certainly [5]  13/6 19/13 19/17 23/12
 27/19
CERTIFICATE [1]  29/1
certify [1]  29/4
Chaffe [1]  2/9
change [2]  19/7 24/4
Charybdis [1]  26/6
chill [1]  18/2
chilled [1]  14/4 20/7
chilling [1]  14/9
China [1]  26/5
Chinese [1]  25/24
Christopher [1]  22/1
Circuit [2]  4/10 25/20
circumstances [1]  11/15
cite [1]  8/22
cited [1]  25/23
civil [2]  24/2 26/10
claim [3]  21/4 23/23 25/17
claims [2]  22/12 25/18
classification [1]  7/10
clear [1]  7/24
clearly [2]  9/13 14/9
clerk [1]  6/3
closer [1]  15/1
cognizant [2]  26/22 27/4
colleagues [1]  23/3
collect [1]  22/2
collection [1]  24/5
come [6]  12/9 13/23 14/23 18/23 23/6
 27/25
comes [1]  9/15
coming [2]  8/3 17/5
comment [3]  10/4 17/9 20/25

comments [2]  10/8 13/11
commission [1]  21/17
committee [3]  3/20 16/5 16/6
companies [1]  20/6
company [13]  5/6 7/2 9/1 25/12 25/13
 26/5 26/7 26/9 26/11 26/17 26/18 26/19
 27/20
compel [3]  5/23 19/13 25/11
compensation [2]  10/17 22/4
compensation/salary [1]  10/17
complementary [1]  18/14
completely [1]  8/9
computer [1]  2/19
computer-aided [1]  2/19
concerned [2]  11/10 11/19
conclude [1]  17/5
condition [1]  17/13
conduct [5]  7/25 8/5 9/2 9/3 20/18
conducted [1]  9/3
CONFERENCE [1]  1/10
confidential [1]  11/1
confirm [1]  6/2
conflict [2]  26/3 26/15
Connecticut [1]  2/4
connection [2]  10/10 16/5
connexity [1]  10/9
conscious [4]  21/6 21/7 21/23 27/20
consent [3]  24/16 24/16 25/5
consequent [1]  14/4
conservative [1]  22/13
consider [1]  18/7
consideration [2]  27/12 28/4
constituents [1]  13/5
constitute [1]  24/20
constructive [2]  12/7 12/8
constructively [1]  17/24
Consultants [1]  25/23
contacted [1]  6/3
contain [4]  4/7 16/20 16/21 16/25
context [1]  14/2 14/2
core [2]  13/13 13/16
corporation [3]  5/4 25/19 25/22
correct [1]  29/4
correction [1]  19/2
cost [2]  17/15 17/17
Coughlin [2]  21/24 22/20
could [10]  9/16 11/4 14/5 14/22 15/7
 16/9 16/14 19/2 19/8 19/23
couldn't [2]  15/5 21/14
country [2]  6/9 24/4
couple [3]  10/4 19/10 24/18
course [7]  4/1 11/9 12/18 12/21 12/25
 20/17 27/10
court [23]  1/1 2/15 3/18 7/14 11/15
 21/22 22/8 23/5 23/12 25/11 25/12
 25/14 25/19 25/25 26/8 26/17 26/21
 27/2 27/19 27/19 29/2 29/3 29/10
courts [8]  13/3 21/6 26/13 26/22 26/24
 27/3 27/5 27/12
cover [2]  10/12 25/3
create [1]  16/13
creates [1]  16/13
credit [1]  24/25
criminal [4]  12/16 14/2 24/20 26/11
critical [1]  11/21
criticism [1]  17/23
criticisms [2]  12/7 12/9
criticize [2]  11/21 11/22
criticized [1]  16/22
critique [1]  22/13
critiqued [1]  22/9
Crow [1]  1/21
custodial [3]  4/2 4/2 9/13

**D**

damage [5]  17/17 17/18 17/21 17/25
 20/3
Danbury [1]  2/4
data [9]  11/17 16/21 16/23 17/2 24/13
 24/14 24/22 25/4 26/18
David [1]  1/14
day [4]  8/11 13/17 25/20 26/2
days [1]  22/22
deal [3]  4/2 6/21 24/3
dealing [6]  3/20 4/3 5/10 20/24 20/24
 21/11
dealt [1]  8/12
decide [2]  7/7 9/21
decision [8]  7/11 7/15 7/15 8/1 8/4 8/7
 16/1 21/14
decision-making [1]  7/11
decisions [1]  7/3
defective [1]  9/5
defendant [2]  12/16 12/22
defendants [15]  2/5 2/9 2/12 3/10 3/22
 4/20 5/15 5/17 6/17 7/4 8/16 18/25
 19/21 20/10 23/20
defense [3]  21/4 23/23 25/17
defenses [1]  22/12
defined [1]  24/22
degree [2]  14/3 27/14
denied [2]  4/14 4/15
departments [1]  4/6
depose [1]  21/12
deposed [1]  21/13
depositions [4]  3/22 18/20 20/11 22/22
describe [1]  14/19
described [2]  15/8 17/22
description [2]  7/10 25/2
design [1]  15/10
detailed [1]  4/22
details [1]  11/16
determined [1]  15/17
device [6]  9/5 9/8 9/9 15/11 15/13 19/4
did [11]  3/24 6/1 6/3 8/11 9/12 13/12
 15/8 16/10 16/25 19/5 19/6
didn't [7]  5/3 5/11 5/13 13/12 19/7 21/12
 21/13
different [2]  4/1 22/16
difficult [1]  26/11
difficulty [1]  6/1
direct [2]  26/15 26/22
directed [1]  21/25
directly [1]  12/19
director [2]  8/11 8/19
disclose [5]  9/12 9/22 25/9 25/25 26/17
disclosed [5]  9/9 9/17 10/24 11/4 26/1
disclosure [9]  11/15 11/17 12/21 12/23
 13/6 14/4 17/19 17/25 24/14
discover [2]  21/3 23/22
discoveries [1]  4/11
discovery [22]  3/17 8/7 12/16 12/22 13/9
 17/8 17/9 17/10 20/18 20/24 21/2 22/18
 25/11 25/12 25/13 26/4 26/4 26/14
 26/15 26/24 27/8 27/9
discuss [2]  3/16 6/19
discussion [2]  4/24 20/8
dismissing [2]  25/17 25/17
distinction [1]  12/11
DISTRICT [5]  1/1 1/2 1/11 29/3 29/3
do [34]
document [1]  15/6
documents [4]  9/6 9/21 18/6 22/2
does [3]  16/1 25/9 26/22
doesn't [2]  15/1 19/25
doing [1]  27/18

**D**

don't [16]  6/19 6/24 7/5 8/9 9/11 12/14
13/14 15/22 16/16 22/9 22/11 23/4 23/6
24/9 27/24 28/7
done [5]  7/13 16/17 18/17 23/15 24/16
door [1]  15/23
doubt [2]  13/5 18/1
down [2]  5/22 17/25
Doyle [2]  2/15 29/2 29/9 29/9
Dr. [8]  8/25 8/25 9/7 9/11 9/15 13/12
13/17 22/1
Dr. Christopher [1]  22/1
Dr. Nessel [6]  8/25 8/25 9/7 9/11 13/12
13/17
Dr. Nessel's [1]  9/15
dress [1]  22/9
Drinker [1]  2/12
Drive [1]  2/13
drug [1]  14/15
Duke [2]  15/12 19/5
during [1]  21/1

**E**

each [2]  7/13 24/10
earlier [2]  15/15 17/23
easier [1]  27/18
easily [1]  11/2
EASTERN [2]  1/2 29/3
effect [2]  14/10 15/16
efficiently [1]  16/18
either [6]  5/10 5/23 6/21 12/17 23/7 23/7
ELDON [1]  1/10
elegant [1]  28/10
else [7]  3/9 3/12 3/15 9/12 11/20 15/23
17/4
employee [4]  4/3 4/5 4/8 4/10 11/5
16/25 17/24 20/3 20/13 20/13
employee's [1]  17/18
employee-employer [1]  20/3
employees [5]  3/21 4/18 4/19 21/11
21/16
employer [2]  4/6 20/3
employer's [1]  4/6
employment [4]  12/2 14/8 17/25 18/2
encouraged [2]  12/8 16/21
end [1]  8/11
England [1]  15/25
enough [5]  4/20 4/21 8/4 22/24 25/21
entertain [1]  4/17
entire [1]  19/5
entitled [2]  21/20 29/6
equivalent [1]  14/6
ESQ [7]  1/15 1/19 1/22 2/3 2/6 2/9 2/12
Europe [7]  24/2 24/2 24/3 24/5 24/8
24/8 26/5
European [1]  24/15
euros [1]  24/19
evaluation [12]  4/8 11/16 11/23 11/24
14/3 14/6 14/7 16/13 16/22 16/24 17/22
20/8
evaluations [7]  9/15 9/16 10/16 10/16
12/12 13/19 16/20
evaluative [2]  11/9 11/18
even [10]  4/9 15/16 18/5 18/11 18/12
18/15 20/14 21/1 26/18 28/4
event [4]  6/22 21/7 24/24 27/1
eventually [1]  18/8
every [2]  14/22 14/24
everybody [3]  7/20 19/17 21/2
everyone [3]  3/3 7/17 16/17
everything [1]  8/9
evidence [5]  18/8 18/9 18/13 19/3 24/5

**F**

fact [3]  16/3 19/5 25/8
factor [5]  10/19 10/23 11/8 12/19 17/6
factors [7]  10/1 10/19 11/9 19/18 21/24
22/20 28/5
facts [6]  6/25 12/13 12/18 13/13 14/15
18/5
factual [2]  11/9 11/17
failure [1]  26/1
fair [1]  27/5
fairly [1]  13/10
faith [3]  12/25 13/2 13/7
Falling [1]  25/22
FALLON [3]  1/10 3/4 3/5
false [1]  17/2
familial [1]  24/24
far [1]  11/10
favor [1]  12/22
favorite [1]  10/9
FCRR [3]  2/15 29/2 29/9
FDA [5]  9/9 9/12 15/12 16/23 17/2
federal [2]  26/15 27/12
fees [1]  26/2
felt [3]  3/24 21/14
Fifth [1]  4/10
Fifth Circuit [1]  4/10
file [10]  8/3 8/6 8/23 9/13 13/19 14/14
19/22 20/4 20/8 20/15
files [25]  3/17 3/21 3/25 4/1 4/2 4/2 4/4
4/5 4/11 7/25 11/12 11/13 12/21 16/24
17/3 19/24 20/6 20/12 20/19
21/21 22/1 23/16 24/24 25/2
filing [1]  6/15
final [1]  10/17
Finally [1]  20/9
find [4]  9/13 16/23 20/2 20/11
fine [5]  5/8 24/18 24/18 25/21 26/8
fines [1]  25/16
fingerprints [1]  24/25
first [5]  3/19 5/21 6/22 10/23 14/13
FITZPATRICK [2]  2/3 3/8
flirting [1]  22/11
Florham [1]  2/13
Florida [1]  1/20
focus [1]  5/13
folks [3]  10/14 12/18 28/13
follow [1]  19/9
follow-up [1]  19/9
foregoing [1]  29/4
foreign [5]  26/17 26/23 27/4 27/8 27/20
forms [1]  4/8
forthcoming [1]  25/19
found [1]  19/7
four [2]  10/14 10/20
Frankenhauser [9]  10/3 11/14 12/11
13/25 15/22 18/11 19/18 21/23 22/19
Fritchie [1]  2/5
frivolous [2]  13/1 13/7
further [6]  6/20 6/22 18/25

exception [3]  25/5 25/6 25/6
exceptional [2]  24/17 25/8
Excuse [1]  5/25
existence [1]  26/13
expect [2]  7/24 13/5
expected [2]  26/7
explain [1]  9/17
explaining [1]  4/22
explanation [1]  7/12
expression [1]  23/5
extent [1]  27/22

**G**

Gainsburgh [1]  1/14
general [3]  3/24 23/20 24/2
generally [2]  4/5 24/8
generated [1]  4/5
generates [1]  4/3
gentlemen [1]  8/10
gentlemen's [1]  8/2
GERALD [1]  1/15
German [17]  5/4 5/6 5/11 5/14 5/16 5/16
6/4 6/8 6/14 6/18 23/2 23/9 23/18 24/13
25/2 25/9 26/9
germane [1]  5/2
Germany [4]  6/11 24/13 24/21 24/22
get [12]  6/6 12/20 15/1 16/17 18/5 18/8
18/18 18/21 20/21 22/14 22/21 24/11
getting [2]  6/1 25/7
give [4]  5/7 5/24 19/14 22/24
given [4]  4/19 5/15 10/24 23/20
giving [3]  5/17 21/10 22/15
go [8]  8/9 10/1 14/23 18/18 18/19 18/20
19/16 20/10
goes [1]  14/25
going [18]  9/24 10/1 10/12 13/23 13/24
17/3 17/4 17/7 17/21 17/23 17/25 18/1
19/15 20/6 21/12 21/19 22/14 23/10
good [6]  3/3 3/5 12/25 13/1 15/25 28/16
gotten [2]  24/10 28/6
government [1]  14/5
governmental [1]  14/3
Gras [1]  28/16
great [5]  5/16 16/1 19/22
greater [1]  19/22
guidance [1]  7/9

**H**

had [10]  5/3 5/10 6/1 8/14 8/17 14/20
15/6 15/7 19/4 23/19
hand [5]  17/12 17/13 20/11 26/7 26/9
handlers [2]  15/4 15/7
happen [2]  9/20 19/23
happened [2]  7/20 7/22
happening [1]  13/4
hard [2]  16/23 20/2
has [17]  4/8 4/24 8/20 8/25 9/2 9/4 11/6
13/9 13/11 14/1 14/8 16/2 16/3 19/23
20/6 20/7 22/12
have [60]
haven't [2]  5/19 24/10
having [3]  10/24 11/4 15/24
he [18]  6/8 6/9 6/12 8/14 9/1 13/11
13/12 13/18 13/18 14/16 14/19 15/3
15/9 15/15 15/15 16/3 20/14 22/13
hear [3]  5/23 9/23 19/15
heard [2]  6/16 28/15
hearing [3]  5/16 6/16 6/18
heavily [1]  9/1
Hello [5]  3/3 3/11 7/17 7/18 7/20
helpful [3]  7/9 20/21 28/11
here [9]  3/16 10/9 11/2 11/3 11/19 12/11
14/6 14/10 15/18
Here's [1]  13/24
high [1]  7/1
high-level [1]  7/1
him [4]  16/21 16/22 16/22 22/15
his [11]  5/17 8/12 10/14 14/4 14/16
16/4 16/7 16/13 16/21 19/24 22/14
history [1]  24/25
Hoffman [1]  6/7
honest [1]  19/7
Honor [27]  3/11 5/25 6/6 6/13 6/16 6/18
7/8 7/23 8/5 9/2 9/18 9/20 10/20 11/6

**H**

Honor... [13]  13/23 14/1 14/8 14/22 16/2
17/6 13/6 18/16 18/19 19/8 20/9 23/9
28/11
HONORABLE [1]  1/10
hope [1]  12/5
hopefully [1]  28/9
horribles [1]  19/23
how [7]  3/10 11/4 15/11 17/9 18/12
20/13 21/12
hundred [1]  24/18
hurt [1]  11/4

**I**

I'll [3]  10/3 14/13 19/11
I'm [9]  7/21 13/23 20/23 20/24 20/25
21/19 21/23 22/22 23/12
I've [1]  23/19
IBM [2]  25/20 25/21
identify [1]  17/9
identities [1]  10/24
identity [1]  11/4
if [24]  4/15 5/7 10/5 15/7 16/7 16/8
17/24 18/13 18/21 19/2 19/22 19/23
22/9 22/12 22/15 23/10 23/11 24/16
25/9 25/11 26/18 27/19 28/2 28/9
illegal [1]  25/24
immediate [1]  7/15
impact [2]  10/23 19/4
importance [2]  13/21 27/13
important [9]  10/13 11/10 12/1 12/9
12/10 18/2 19/18 22/17 27/23
improve [1]  12/1
improvement [3]  14/4 14/7 14/8
in [114]
in camera [7]  7/25 8/5 8/24 9/19 20/18
21/22 22/8
incentive [3]  9/16 22/5 22/15
incentives [1]  10/18
include [1]  24/23
including [2]  4/7 26/23
indeed [1]  23/11
indicated [3]  4/15 5/11 18/20
indicates [1]  5/6
indicating [1]  5/16
indictment [1]  12/20
individual's [1]  22/13
individuals [3]  3/23 6/23 7/1
influence [6]  7/2 7/7 7/12 8/14 8/19 8/20
informants [1]  11/2
information [43]
initial [1]  21/10
instances [1]  24/19
intend [1]  21/12
intending [1]  6/15
interest [4]  17/8 17/8 20/17 20/18
interests [6]  8/7 8/8 22/19 27/7 27/8
27/23
International [1]  25/18
into [2]  25/7 28/4
invasion [4]  17/11 17/12 17/15 17/15
investigation [2]  11/1 15/17
investigative [2]  11/13 12/21
investigators [1]  12/12
involved [1]  9/1
involving [1]  4/4
Irwin [3]  2/5 2/6 3/11
is [82]
isn't [2]  7/6 14/15
issue [12]  5/9 5/21 6/8 6/19 9/10 15/18
10/22 23/14 23/17 23/18 27/11 27/25

issued [1]  3/19
issues [7]  10/7 9/11 9/11 11/19
15/10 26/24
it [62]
it's [31]
its [2]  26/19 27/21

**J**

J's [1]  16/24
jail [1]  5/8
JAMA [1]  15/25
JAMES [1]  2/6
Janssen [2]  9/12 19/6
January [6]  1/6 3/2 3/19 5/1 5/12 18/23
January 26 [4]  3/19 5/1 5/12 18/23
Japan [1]  26/5
Jerry [1]  6/1
Jerry Meunier [1]  6/1
Jersey [1]  2/13
Jim [5]  3/11 9/23 19/16 19/22 21/23
job [4]  7/10 8/12 9/15 24/24
JOHN [4]  2/9 3/14 6/7 23/3
join [1]  6/1
Journal [1]  15/25
judge [11]  1/11 3/4 3/5 3/14 9/25 10/5
13/16 16/24 17/9 22/4 28/14
Judge Fallon [1]  3/4
jury [2]  18/7 18/7
just [17]  7/14 7/21 10/3 12/13 14/5 17/5
19/2 19/10 19/12 19/16 19/22 21/1
22/13 23/5 23/14 23/15 28/10

**K**

keep [3]  10/13 22/15 27/12
KELLY [2]  2/3 3/8
kept [1]  24/23
key [1]  14/21
kind [1]  13/4
knew [3]  13/12 13/18 13/19
know [17]  6/19 9/6 9/8 9/11 10/20 10/22
11/11 13/14 15/19 16/6 16/16 17/12
20/1 20/14 21/12 23/22 27/24
knowledgeable [1]  6/8

**L**

large [2]  8/12 26/8
last [2]  21/5 23/25
later [1]  23/7
law [15]  5/6 5/11 5/14 5/16 6/2 6/4 6/8
6/19 7/6 7/6 23/18 24/2 25/3 26/9 27/4
laws [4]  24/11 26/19 26/23 27/21
leaders [1]  14/21
least [7]  4/16 8/23 21/2 22/17 23/11
23/20 28/12
left [1]  18/21
less [1]  18/19
let [3]  9/23 19/16 23/1
Let's [1]  6/21
letter [9]  4/18 6/25 7/4 8/16 8/23 10/4
14/13 14/18 15/21
letters [2]  4/21 4/22
level [1]  7/1
Levin [1]  1/18
LIABILITY [1]  1/5
like [10]  11/3 13/18 17/7 19/13 19/20
20/1 22/21 23/4 23/12 25/7
likely [1]  12/17
limit [1]  11/17
line [3]  3/4 17/7 17/25
listening [1]  19/20
LITIGATION [1]  1/5
litigations [1]  20/7
little [2]  4/12 28/9

live [2]  6/18 23/24
LLC [2]  1/15 2/6
LLP [2]  2/9 2/12
long [3]  9/1 13/7 22/22
look [3]  8/5 17/11 22/24
looked [4]  10/2 15/11 15/12 25/15
looking [2]  13/25 22/10
looks [2]  4/10 25/7
lot [5]  4/12 6/24 9/12 13/10 25/1
loud [3]  23/6 23/12 28/8
LOUISIANA [7]  1/2 1/16 2/7 2/10 2/16
24/3 29/4
lower [1]  26/22

**M**

Machine [1]  25/18
made [7]  5/5 8/4 10/11 13/11 20/10
20/12 25/24
magistrate [1]  24/9
Main [1]  2/3
maintain [1]  18/23
maintained [1]  20/13
maintenance [1]  20/5
make [8]  7/3 8/6 15/3 16/2 17/23 19/2
20/24 21/14
making [6]  7/11 7/15 8/1 8/3 12/7 16/4
malfunction [1]  19/4
manager [1]  14/23
many [4]  13/2 13/5 21/6 21/12
Mardi [1]  28/16
Mardi Gras [1]  28/16
market [3]  14/15 14/16 22/15
marketing [8]  8/12 8/13 8/19 8/20 8/20
14/19 14/23 16/14
material [8]  3/23 22/18 22/24 23/16
23/19 24/23 27/13 28/4
materials [4]  8/13 10/15 13/6 18/19
matter [4]  3/20 20/25 21/3 29/6
matters [1]  23/22
may [16]  10/2 11/10 11/25 15/13 15/21
18/12 19/21 19/21 19/25 19/25 20/14
22/16 22/16 24/11 26/17 27/16
maybe [2]  17/19 18/15
McCall [1]  2/9
MD [1]  1/4
MDLs [1]  14/23
me [24]  4/18 4/19 4/21 5/15 5/17 5/24
5/25 6/3 7/17 9/23 15/5 19/16 22/17
22/24 23/1 23/5 23/8 23/20 25/7 26/19
26/25 28/7 28/8 28/11
means [1]  27/17
mechanical [1]  2/18
medical [2]  24/25
memorandum [1]  5/18
men [1]  22/11
mention [1]  10/3
mentioned [6]  15/10 16/9 23/3 23/21
25/5 27/6
mere [1]  26/13
messages [1]  14/20
met [1]  9/18
Methvin [1]  1/21
Meunier [3]  1/14 1/15 6/1
Michael [1]  22/1
might [3]  10/6 16/20 16/21
Miles [1]  1/22
mind [1]  10/13
minimum [2]  17/17 18/1
minutes [1]  19/10
Mitchell [1]  1/18
modified [1]  23/25
modify [1]  16/21

## M

modifying [1]  16/22
moment [1]  23/21
Monday [1]  22/23
Montgomery [1]  1/24
Moore [1]  2/6
more [19]  4/12 4/12 4/16 10/6 11/19
12/19 13/4 13/14 14/19 16/12 16/18
18/5 18/14 18/21 23/10 24/6 24/7 28/4
28/9
most [6]  6/7 11/10 11/23 12/1 12/9
24/23
motion [3]  4/14 19/13 25/11
move [1]  8/25
Moye [8]  8/11 10/5 10/11 14/11 14/13
16/11 16/13 22/1
Moye's [1]  8/23
Mr. [3]  8/11 8/23 22/1
Mr. Michael [1]  22/1
Mr. Moye [1]  8/11
Mr. Moye's [1]  8/23
much [5]  10/12 12/21 13/14 18/19 23/1
must [2]  15/6 17/9
my [3]  5/12 10/9 29/5

## N

names [1]  17/20
narrow [1]  14/19
narrower [1]  10/25
Nationale [2]  26/21 27/6
nature [1]  4/13
NDA [1]  16/6
necessarily [1]  27/24
necessary [1]  15/2
need [4]  6/19 22/23 23/4 28/8
needs [4]  17/10 21/5 22/19 23/24
negative [1]  19/4
Nessel [14]  8/25 8/25 9/7 9/11 10/5
10/11 13/12 13/17 14/11 15/9 15/24
16/11 16/19 22/1
Nessel's [1]  9/15
never [5]  12/11 12/13 18/11 22/14 24/11
new [7]  1/16 2/7 2/10 2/13 2/16 15/25
21/8
New England [1]  15/25
next [3]  12/14 12/24 19/15
night [1]  22/23
nilly [1]  27/4
no [8]  8/19 9/14 12/18 13/5 16/8 16/9
19/3 20/24
No. [1]  13/24
No. 7 [1]  13/24
noncompliance [1]  27/22
none [3]  8/16 25/7 25/16
nonetheless [1]  25/25
nonfrivolous [1]  12/25
nonprivileged [1]  21/3
not [57]
nothing [5]  5/10 15/17 16/2 16/12 18/14
now [7]  4/17 4/18 7/14 8/1 21/7 21/16
23/1
Number [3]  13/21 16/15 16/16

## O

objections [1]  5/5
obscure [1]  16/21
obscuring [1]  16/23
obstacle [2]  15/4 15/6
obtain [1]  21/25
offense [1]  24/20
offer [1]  10/6
Office [1]  1/23

Official [3]  2/15 29/2 29/10
okay [3]  9/6 16/7 23/5
OLINDE [3]  2/9 3/14 6/7
ominous [2]  15/5 15/5
on [43]
once [1]  11/11
one [20]  4/6 4/17 6/22 10/15 10/16 11/9
11/21 12/14 13/23 14/25 15/14 15/15
17/12 20/8 20/9 23/3 23/7 23/7 23/8
26/7
one's [2]  11/21 11/22
only [1]  28/3
open [1]  18/21
opens [1]  15/23
opinion [3]  5/17 11/7 14/21
opinions [5]  11/20 11/21 12/12 18/10
18/11
opportunity [1]  23/19
opposed [1]  11/17
or [51]
order [7]  3/19 4/25 5/12 7/8 14/17 18/21
18/23
orders [2]  13/2 25/12
originated [1]  27/15
Orleans [4]  1/16 2/7 2/10 2/16
other [15]  9/23 13/9 13/9 16/3 17/6
17/13 20/7 20/11 24/3 24/10 24/17 25/1
26/9 28/5 28/6
otherwise [2]  13/20 17/24
ought [1]  5/7
our [7]  6/25 8/23 9/18 12/15 13/25 14/13
15/21
ours [1]  19/22
out [12]  6/9 6/24 7/8 7/24 8/18 8/18
14/15 20/11 23/6 23/12 27/10 28/8
outreach [1]  14/21
outside [1]  24/15
over [1]  22/24
own [4]  11/21 11/22 26/19 27/21

## P

P.A [1]  1/18
P.C [1]  1/22
Papantonio [1]  1/18
parade [1]  19/23
Park [1]  2/13
participated [1]  15/9
particular [1]  5/9
particularity [3]  10/9 15/2 18/17
particularized [3]  6/25 7/12 8/4
particularly [2]  9/15 24/13
particulars [2]  13/15 14/12
parties [3]  9/23 19/19 27/5 27/7
parts [1]  8/12
party [7]  12/15 21/3 23/21 24/15 25/9
25/10 25/23
party's [3]  21/4 23/23 24/16
pat [1]  12/3
Pats [1]  12/7
penalties [1]  26/11
pending [1]  12/17
Pensacola [1]  1/20
people [3]  7/1 11/3 17/20
per [1]  25/20
performance [2]  9/16 22/3
person [2]  6/7 22/9
personal [2]  4/9 24/14
personnel [23]  3/17 3/21 3/25 4/1 4/4
4/11 5/7 8/3 11/12 13/19 14/14 17/3
19/25 20/4 20/5 20/8 20/15 21/21 22/1
23/16 24/22 24/24 25/1
persons [1]  10/23
pertaining [1]  9/7

pharma [1]  14/22
place [1]  22/11
plaintiff [1]  8/3
plaintiffs [13]  1/14 1/18 1/21 2/2 3/4 3/6
3/9 4/14 4/16 5/19 9/22 21/10 23/4
plaintiffs' [3]  3/20 5/22 13/22
plan [1]  9/16
please [2]  19/10 22/24
point [11]  7/13 9/4 9/5 9/6 19/14 20/12
20/17 20/23 21/19 21/21 21/25
point-of-care [1]  9/5
pointed [1]  5/5
points [1]  20/9
police [5]  10/21 10/25 11/11 11/16 14/2
policies [1]  8/14 8/20
policy [2]  7/2 7/12
Portis [1]  1/22
position [3]  5/4 5/18 6/17
positions [1]  4/22 4/23
possibility [1]  14/9
possible [1]  24/20
possibly [1]  27/25
Post [1]  1/23
postemployment [1]  22/7
potential [1]  12/16
Poydras [4]  1/16 2/7 2/10 2/15
prejudice [1]  4/15
Present [1]  22/8
presentation [2]  16/5 16/7
presentations [1]  20/21
presented [2]  16/23 21/22
presenting [1]  17/2
presents [1]  23/17
president [1]  20/5
pretty [2]  4/22 10/12
prevent [1]  26/14
preventing [1]  27/8
privacy [7]  8/8 17/8 17/12 17/18 17/19
20/17 22/19
private [1]  4/7
privileged [1]  23/22
probably [8]  6/11 6/12 6/14 10/6 11/1
11/23 12/1 12/9
problem [3]  15/18 15/21 16/9
proceeding [1]  12/17
proceedings [4]  2/18 3/1 28/18 29/6
process [2]  17/22 18/2
Proctor [1]  1/18
produce [2]  7/25 19/18
produced [3]  19/24 20/7 24/9
producing [2]  18/12 24/10
production [2]  5/23 20/4
productivity [1]  11/22
PRODUCTS [1]  1/5
program [2]  14/4 14/7
programs [2]  8/21 14/21
prohibits [1]  24/14
properly [2]  11/2 22/9
proportional [3]  17/10 21/5 23/23
proportionality [3]  18/18 18/22 24/1
Protection [2]  24/14 25/4
protective [1]  12/7
provide [3]  7/9 7/9 26/7
provided [1]  17/20
PSC's [1]  13/5
public [2]  9/10 16/6
publications [2]  15/25 16/3
publicly [1]  9/4
punishable [1]  24/20
pure [2]  13/17 13/20
purely [1]  19/24
purpose [1]  25/6

## P

pursue [1] 13/6
put [3] 15/20 18/1 26/23
puts [2] 4/11 26/5

## Q

question [5] 6/4 8/19 9/14 15/19 20/14
questioned [1] 9/4
questions [2] 10/5 20/10
quick [1] 19/11
quickly [2] 6/14 16/18

## R

Rafferty [1] 1/18
raised [2] 5/8 16/12
rambled [1] 28/10
rays [1] 25/1
RE [1] 1/4
reached [1] 21/21
read [2] 25/2 26/16
readings [1] 15/13
real [1] 10/11
really [4] 12/19 21/6 21/13 25/16
reason [1] 5/14
reasonably [1] 12/17
reasons [3] 4/25 5/12 8/22
Reath [1] 2/12
received [1] 5/19
recently [1] 13/4
Recess [1] 7/19
reciting [1] 14/25
recognize [2] 11/23 14/5
recognized [4] 5/1 10/15 11/6 14/9
recommendations [1] 11/18
record [4] 6/2 16/7 19/3 29/6
recorded [1] 2/18
redundant [1] 18/15
reevaluation [1] 19/6
reference [4] 14/12 15/3 15/24 16/4
referenced [1] 15/6
refuses [1] 25/12
regret [1] 13/2
relate [1] 12/19
related [4] 8/6 10/15 11/1 22/2
Relates [1] 1/6
relationship [4] 11/5 12/2 18/1 20/3
relevance [3] 4/12 4/20 7/13
relevant [6] 5/2 10/3 10/21 14/14 21/4
23/23
remains [1] 15/20
remind [3] 7/14 19/17 21/1
reminded [1] 26/25
reminiscent [1] 17/9
remote [2] 18/5 18/6
remove [1] 6/14
report [1] 17/20
Reporter [3] 2/15 29/3 29/10
reports [1] 17/2
reps [2] 8/13 14/21
request [8] 5/2 5/22 6/22 21/10 23/15
23/16 27/14 27/23
requesting [2] 21/16 25/10
require [5] 18/18 23/10 26/17 26/18
27/20
required [1] 26/9
requirement [2] 14/18 24/8
requirements [2] 13/8 18/17
rescheduling [1] 28/15
respect [2] 12/18 23/9
respond [1] 19/12
responding [1] 5/19
responsibilities [3] 14/16 14/24 15/1

responsibility [2] 7/11 14/20
[State] [1] 27/24
restrictive [4] 24/6 24/6 24/7 26/4
result [1] 19/5
results [1] 19/7
reveal [2] 11/16 26/10
review [14] 4/17 7/25 8/5 8/24 9/19 9/20
16/25 18/20 20/18 21/22 21/25 22/8
22/17 23/19
reviewed [1] 20/1
reviews [1] 22/3
rewarded [1] 16/22
rewards [2] 17/16 18/4
Ribeiro [1] 2/2
Richmark [1] 25/22
right [3] 7/14 8/1 18/22
risk [1] 11/3
RIVAROXABAN [1] 1/4
ROCKET [6] 9/2 9/3 13/15 15/10 15/21
19/5
roll [1] 9/2
Room [1] 2/15
rule [4] 17/9 24/2 28/8 28/9
Rule 26 [1] 17/9
rules [2] 21/8 26/15
ruling [1] 26/24
rush [1] 14/15

## S

said [11] 6/18 10/4 11/15 14/3 15/14
15/15 15/16 16/2 17/6 19/12 25/25
salary [1] 10/17
sales [3] 8/13 8/21 14/20
same [2] 12/5 27/5
sanctions [2] 25/14 25/15
satisfied [1] 21/18
satisfy [1] 14/18
saw [1] 13/24
say [9] 7/4 11/9 14/22 15/9 15/18 18/7
21/19 24/6 26/13
saying [1] 25/21
says [1] 27/11
scientific [1] 17/2
scrutinizes [1] 4/11
Scylla [1] 26/6
second [3] 4/24 11/10 25/20
secondary [2] 18/5 18/13
Section [1] 1/5
securing [1] 27/18
see [6] 12/6 15/22 20/23 21/9 26/20
27/25
seeking [1] 12/15
seems [3] 23/4 26/19 26/25
seen [3] 4/9 9/7 14/23
self [8] 9/16 10/16 11/16 11/21 11/23
11/24 14/7 17/22
self-critical [1] 11/21
self-evaluation [5] 11/16 11/23 11/24
14/7 17/22
self-evaluations [2] 9/16 10/16
sense [2] 10/25 14/19
seriously [1] 21/24
set [7] 6/24 7/8 7/23 8/18 8/18 23/11
27/10
seventh [1] 10/2
SHARKO [2] 2/12 3/13
shortcomings [1] 12/3
should [11] 5/6 8/23 9/20 12/8 15/18
16/14 21/22 23/11 24/6 26/1 27/12
show [1] 16/14
showing [3] 7/1 8/4 8/10
side [2] 5/10 9/23
significant [3] 22/16 24/4 27/16

Significantly [1] 11/14
since [2] 23/25 28/7
sir [2] 9/25 9/25
situation [9] 12/15 12/20 12/22 14/1 25/8
25/10 26/6 26/11 28/1
six [2] 10/1 10/19
Smith [1] 2/2
so [33]
Societe [2] 26/21 27/6
Societe Nationale [1] 27/6
software [1] 2/19
some [22] 3/24 4/9 4/19 5/1 7/24 9/17
10/8 10/10 13/3 13/11 14/19 15/10
15/13 20/3 21/21 22/15 22/23 24/19
25/4 25/16 27/18 28/6
somebody [2] 12/2 12/20
Somebody's [1] 18/10
someplace [1] 17/4
something [14] 7/20 7/22 13/12 13/18
13/19 15/3 15/7 15/16 17/1 17/12 21/6
23/24 27/3 27/16
sorry [1] 7/22
sort [5] 4/8 10/17 10/18 17/6 20/3
sought [5] 3/21 11/8 11/12 13/8 13/22
sound [1] 20/1
sounded [1] 15/4
sounds [1] 19/20
source [1] 28/6
sources [1] 13/9
speak [2] 7/21 14/11
speaker [1] 14/21
speaking [2] 13/15 22/10
special [1] 17/13
specific [3] 4/16 10/5 21/17
specificity [10] 3/24 4/12 4/21 5/11 5/17
14/18 18/17 18/22 27/14 28/3
specifying [1] 3/22
speculate [1] 16/19
speculation [6] 13/17 13/20 16/13 16/15
19/21 19/24
speculative [2] 10/10 17/14
spoils [3] 17/14 17/16 18/4
standard [4] 8/15 8/17 8/18 9/19
standards [1] 7/24
start [1] 19/11
started [2] 6/6 7/21
starting [1] 22/22
state [1] 27/8
STATES [8] 1/1 1/11 21/3 23/21 24/7
27/15 27/24 29/3
status [2] 1/10 24/25
statute [4] 25/23 25/24 26/14 26/16
statutes [1] 26/23
Steering [1] 3/20
stenography [1] 2/18
still [6] 4/20 7/17 15/20 18/16 25/12
26/17
strange [1] 26/19
Street [7] 1/16 1/19 1/23 2/3 2/7 2/10
2/15
stride [1] 25/21
strong [1] 20/12
study [5] 13/15 15/10 15/21 19/5 19/6
subject [5] 5/8 13/3 17/24 19/12 25/13
subject's [1] 24/15
subjected [1] 8/23
subjective [3] 11/20 18/10 18/10
submission [1] 6/4
substantial [2] 24/18 25/18
substantially [1] 21/11
successes [1] 12/4
such [4] 12/10 22/5 24/10 25/10

**S**

sufficient [2]  5/22 26/14
suggest [2]  16/13 19/20
suggested [2]  17/14 19/23
suggestion [1]  14/14
suggestions [1]  10/10
suit [1]  12/24
Suite [4]  1/16 1/19 2/7 2/10
summaries [1]  11/18
summary [1]  26/3
Sunrise [1]  15/22
supervisor [4]  10/16 11/5 12/10 17/21
supervisor's [3]  17/18 17/19 17/20
supervisors [3]  11/3 12/6 12/6
supervisory [4]  14/6 16/20 16/25 17/22
supplement [1]  19/1
supplemental [1]  18/14
support [3]  5/18 25/16 25/17
Supreme [3]  26/17 26/21 27/2
Supreme Court [3]  26/17 26/21 27/2
SUSAN [7]  2/12 3/13 10/7 13/14 14/11
 18/25 19/12
suspect [1]  12/19

**T**

table [1]  6/15
take [3]  18/20 21/24 25/21
taken [1]  3/22
taking [2]  28/4 28/14
talk [3]  5/20 14/13 23/1
talked [2]  13/23 23/17
talking [4]  10/14 19/16 20/4 27/11
Tampering [1]  17/1
taxed [1]  25/20
term [1]  5/8
terms [1]  3/24
territory [1]  14/25
tertiary [1]  18/5
test [2]  4/12 27/7
than [8]  11/20 14/12 16/3 16/12 18/14
 19/22 24/7 28/10
Thank [5]  18/24 23/1 28/10 28/13 28/16
Thanks [1]  20/20
that [175]
that's [30]
their [18]  4/3 4/22 4/23 5/18 7/4 7/6 7/7
 7/10 7/10 8/16 10/24 11/4 12/3 12/3
 14/18 16/15 19/21 25/1
them [9]  8/17 10/5 10/19 13/5 14/25
 20/1 21/24 25/16 25/16
themself [1]  12/3
themselves [1]  17/23
then [5]  5/21 8/25 12/14 12/24 15/9
theory [2]  15/20 15/23
there [21]  3/17 5/1 9/14 10/1 10/8 10/20
 14/9 14/12 15/11 15/21 16/8 16/8 19/3
 20/2 22/15 24/11 24/11 24/11 26/15
 27/18 27/19
there' [1]  15/18
there's [15]  4/20 8/19 9/14 15/9 15/17
 15/19 15/24 16/2 16/4 16/8 24/13 25/4
 25/5 25/6 26/3
these [19]  7/1 7/1 8/2 8/10 9/20 11/9
 12/18 13/2 13/6 16/19 17/16 18/4 18/19
 19/23 19/25 20/5 20/6 20/12 20/18
they [61]
thing [8]  6/14 10/17 10/18 12/9 13/22
 15/15 22/14 24/10
things [12]  4/8 4/13 7/7 8/14 8/21 10/4
 15/14 16/6 16/12 16/17 22/14 25/1
think [28]  4/10 6/12 10/1 10/13 10/25
 11/22 11/25 12/14 13/7 13/9 13/25 14/1
 14/5 14/8 15/11 20/21 21/9 21/17 22/11
 27/19 28/1 28/8
thinking [1]  21/1
this [44]
Thomas [1]  1/18
those [16]  3/23 4/11 4/19 8/13 8/14 8/21
 12/12 13/13 13/15 14/24 15/1 16/6
 21/25 25/7 28/5 28/16
though [2]  14/17 15/16
thought [3]  6/25 17/6 18/11
thousand [1]  24/19
threats [1]  26/10
three [3]  10/20 20/20 22/22
through [3]  8/9 10/1 13/9
throughout [1]  24/8
tight [1]  26/8
tilts [1]  12/22
Timber [1]  25/22
time [8]  3/21 9/1 22/23 22/24 23/11 27/5
 28/7 28/15
title [1]  7/10
today [5]  3/16 4/24 5/14 16/2 28/15
token [1]  12/5
Toni [4]  2/15 29/2 29/9 29/9
too [4]  3/25 5/20 21/15 22/13
took [1]  5/3
totally [1]  5/12
touched [2]  11/6 14/1
training [2]  8/13 8/21 14/20
transcript [2]  16/7 29/5
transcription [1]  2/19
transfer [1]  25/6
translates [4]  11/2 11/3 12/15 13/25
trial [6]  9/2 9/3 18/8 20/24 21/1 22/22
tries [2]  11/21 16/17
trimmed [1]  5/22
trimmed-down [1]  5/22
troublesome [1]  15/7
true [2]  13/14 29/4
try [5]  10/1 10/3 10/6 11/25 14/17
trying [2]  16/16 27/4
turning [1]  10/19
Tusa [4]  2/15 29/2 29/9 29/9
two [11]  3/17 4/18 6/23 7/1 8/2 8/10
 12/18 20/19 21/16 22/21 24/21
type [1]  21/13
types [2]  8/13 8/21

**U**

U.S [6]  25/11 26/4 26/8 26/16 26/22
 27/5
under [3]  11/15 12/20 15/16
underlined [1]  27/1
undermine [1]  27/23
underscored [1]  27/1
understand [4]  4/23 6/17 20/22 23/14
understanding [1]  29/5
unethical [1]  17/1
unfettered [2]  7/5 8/17
unfortunate [1]  26/24
uniformly [1]  7/6
unilaterally [1]  7/6
Union [1]  24/15
UNITED [8]  1/1 1/11 21/3 23/21 24/7
 27/15 27/24 29/3
United States [5]  21/3 23/21 24/7 27/15
 27/24
unknown [1]  15/14
until [1]  9/10
unwilling [1]  19/14
up [5]  15/23 19/9 24/21 26/2 27/25
upon [4]  10/23 11/6 14/1 28/2

**V**

valuable [2]  11/24 18/12
various [1]  24/11
Ventura [1]  2/2
verbal [1]  20/21
verified [1]  6/3
very [13]  6/25 7/8 7/24 17/17 18/2 20/12
 20/20 21/24 23/1 24/5 24/6 26/8 28/11
vice [1]  20/5
view [1]  9/18
views [1]  22/14
violate [1]  17/20
violation [2]  24/17 24/19

**W**

want [8]  4/18 6/2 7/14 8/9 11/25 21/17
 23/5 23/8
wanted [1]  3/25
wants [1]  12/20
Warshauer [1]  1/15
was [35]
wasn't [2]  9/17 25/19
way [6]  6/21 9/3 17/11 20/23 21/9 23/15
 27/18
we [77]
weasel [1]  24/7
weeds [1]  25/7
week [1]  19/15
well [10]  6/21 7/5 8/17 11/24 11/25
 12/17 15/25 17/1 17/17 26/2
went [1]  10/2
were [11]  4/16 5/1 5/2 5/4 5/12 9/9
 10/20 10/21 13/3 21/12 28/2
what [38]
what's [4]  8/6 11/23 12/1 16/16
when [12]  4/25 9/8 9/15 10/2 13/11
 13/18 14/16 18/8 20/4 22/10 26/14
 26/23
where [7]  8/1 11/21 12/20 19/17 19/19
 19/21 27/25
whereas [1]  4/4
whether [16]  5/21 7/16 8/2 9/21 11/8
 11/20 12/15 12/24 13/8 13/13 13/18
 15/12 15/18 20/25 27/15 27/24
which [11]  5/6 7/8 7/9 8/14 14/3 21/4
 24/14 25/24 26/4 27/22 28/3
whichever [1]  23/8
while [1]  5/1
who [10]  3/4 6/7 10/23 13/2 12/6 16/25
 17/23 21/18 28/5 28/17
whose [1]  3/22
why [6]  9/11 9/17 12/10 20/16 21/18
 28/5
will [8]  11/17 12/2 18/7 18/7 21/24 23/7
 23/7 28/9
William [1]  6/7
willing [1]  6/17
willy [1]  27/4
willy-nilly [1]  27/4
without [8]  3/22 4/15 18/1 22/15 24/15
 24/16 24/17 25/6
witness [2]  28/2 28/2
witnesses [1]  18/6
women [1]  22/11
won't [1]  17/14
wonderful [1]  12/8

Urquhart [1]  2/5
us [3]  14/24 21/17 22/7
use [4]  9/4 16/14 17/14 27/5
used [4]  9/8
using [3]  2/18 21/24 22/19

# W

word [4]  10/9 16/15 17/14 24/7
work [3]  16/17 18/18 18/19
worked [1]  14/24
would [32]
write [1]  8/16
writing [1]  6/4
written [5]  4/18 4/21 5/18 8/10 20/21
wrong [1]  16/16
wrote [1]  4/25

# X

x-rays [1]  25/1
XARELTO [4]  1/4 4/4 8/6 10/15

# Y

year [1]  24/1
years [2]  20/6 24/21
Yes [4]  3/13 9/25 9/25 19/2
yet [3]  15/17 16/12 24/11
you [39]
your [35]
Your Honor [22]  3/11 5/25 6/13 6/18 7/8
7/23 8/5 9/2 9/18 9/20 10/20 11/6 13/23
14/8 14/22 16/2 17/6 18/6 18/16 18/19
20/9 23/9