UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


IN RE:  XARELTO (RIVAROXABAN)  *        14-MD-2592
PRODUCTS LIABILITY LITIGATION  *
                               *        Section L
                               *
Relates to:  All Cases         *        January 22, 2016
                               *
                               *
*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *


ORAL ARGUMENT BEFORE THE
HONORABLE ELDON E. FALLON
UNITED STATES DISTRICT JUDGE


<u>Appearances</u>:


For the Plaintiffs:            Gainsburgh Benjamin David Meunier
                                 & Warshauer, LLC
                               BY:  GERALD E. MEUNIER, ESQ.
                               1100 Poydras Street, Suite 2800
                               New Orleans, Louisiana 70163


For the Plaintiffs:            Herman Herman & Katz, LLC
                               BY:  LEONARD A. DAVIS, ESQ.
                               820 O'Keefe Avenue
                               New Orleans, Louisiana 70113


For the Plaintiffs:            Levin Papantonio Thomas Mitchell
                                 Rafferty & Proctor, P.A.
                               BY:  BRIAN H. BARR, ESQ.
                               316 Baylen Street, Suite 600
                               Pensacola, Florida 32502

<u>Appearances</u>:

For the Defendants:          Irwin Fritchie Urquhart
                               & Moore, LLC
                             BY:  JAMES B. IRWIN, ESQ.
                             400 Poydras Street, Suite 2700
                             New Orleans, Louisiana 70130


For the Defendants:          Kaye Scholer, LLLP
                             BY:  WILLIAM HOFFMAN, ESQ.
                             901 Fifteenth Street, NW
                             Washington, DC  20005


For the Defendants:          Drinker Biddle & Reath, LLP
                             BY:  SUSAN M. SHARKO, ESQ.
                             600 Campus Drive
                             Florham Park, New Jersey 07932


Official Court Reporter:     Toni Doyle Tusa, CCR, FCRR
                             500 Poydras Street, Room B-275
                             New Orleans, Louisiana 70130
                             (504) 589-7778



Proceedings recorded by mechanical stenography using
computer-aided transcription software.

<u>**INDEX**</u>

|                                |  <u>Page</u> |
| --- | --- |
| Oral Argument | |
| James B. Irwin, Esq. | 5 |
| William Hoffman, Esq. | 17 |
| Brian H. Barr, Esq. | 21 |
| James B. Irwin, Esq. | 26 |
| William Hoffman, Esq. | 27 |
| | |
| Oral Argument | |
| Susan M. Sharko, Esq. | 32 |
| Leonard A. Davis, Esq. | 33 |
| Brian H. Barr, Esq. | 34 |
| Susan M. Sharko, Esq. | 40 |
| Brian H. Barr, Esq. | 41 |

09:27

**<u>PROCEEDINGS</u>**

**(January 22, 2016)**

1
2
3  **THE COURT:**  Be seated, please.
4          Before we get started, let me tell you what I
5  understand the issue to be, and then you can flesh it out a
6  little bit.
7          We are dealing with two types of files here.
8  One is called the custodial file, and the other one is a
9  personnel file.  The custodial file consists of documents
10  generated and received by the employee concerning the
11  employee's work, particularly the work involved with Xarelto.
12          The personnel file is a file not generated by
13  the employee.  The personnel file is actually generated by the
14  employer or by the human resource department of the employer.
15          Both sides agree that the custodial files are
16  discoverable.  They are relevant.  They have something to do
17  with the litigation.  They seem to be in agreement that those
18  are discoverable.
19          The parties disagree on the personnel file.  The
20  plaintiffs take the position that the personnel file is
21  significant because they want to know whether or not any
22  bonuses were given, any special treatment, any special
23  salaries, things of that sort were paid to the individual to
24  hasten the development of the drug.  Their position may be that
25  this drug was rushed on the market or that it was put into play

sooner than necessary and that there was some interest in the employee doing that, and perhaps they didn't do what they could or should have done.  In any event, they feel that's relevant. There are other reasons, but basically it has to do with their actions and their credibility and things of that sort.

The defendants take the position that the personnel file is very personal:  may have to do with divorces; may have to do with alimony; may have to do with getting a traffic ticket or failing an exam when you were in school or something of that sort.  It has nothing to do with the litigation.  It can be simply embarrassing to the individual, and it's not relevant, and to have these disclosed on a general, broad basis is improper.

Bayer also takes the position that regardless of whether or not they would be willing to turn it over, they are not able to turn it over because German law is very conscious of privacy issues and that there's laws that prevent them from turning over such files in connection with anything.  They are private, and they should not be turned over, according to German law.

That's my understanding of the dispute between the parties.  I will hear anything you have to say.

**MR. IRWIN:**  Thank you, Your Honor.  Jim Irwin for defendants.

We believe that this question -- and I'm going

09:37

1   to do my best to articulate it in a moment.  We believe that

2   this question has not been answered by the Fifth Circuit, our

3   Fifth Circuit.  It has not been answered by this good

4   courthouse.  We don't think that Your Honor has had to decide

5   it in your MDLs.

6              So a little background to the question that we

7   think is the legal question.  I do think you are right,

8   Your Honor, about your description of generally what they are

9   looking for:  bonus and compensation information plus employee

10  evaluations, whether they are supervisory evaluations or

11  self-evaluations.

12             The case that they cited, the guiding case from

13  the U.S. Fifth Circuit, is *Coughlin*.  That was an employment

14  termination case in Harry Lee's office, our former sheriff of

15  Jefferson Parish.  In that case personnel files were produced.

16  I think, importantly, the Court suggested that considerations

17  about the production of those personnel files could be guided

18  and district courts have been instructed to consider 10 factors

19  that arose out of a 1983 case in Pennsylvania called the

20  *Frankenhauser* case.

21             I think it's important to know what the

22  *Frankenhauser* case was about.  It was a 1983 civil rights case.

23  It involved a police shooting, and what was requested in that

24  Eastern District of Pennsylvania case was the investigative

25  files of that incident of that shooting.  So *Coughlin* required

09:39

1    and justified the production of employment files.

2              I used to try employment cases with my former

3    partner Dan Lund.  We all know that in employment cases

4    involving disparate treatment, personnel files are directly

5    connected to the issues in the case.  They are not attenuated

6    from the issues.  They are often the grist of the issues in a

7    disparate treatment case.

8              By the same token, in *Frankenhauser* the

9    investigative files of that discrete incident involving a

10    shooting in a 1983 case were directly relevant to that case.

11    It's not surprising, therefore, Your Honor, that the Eastern

12    District cases -- and I'm going to go through them in a little

13    while quickly.  The Eastern District cases and some of the

14    Western District cases break down into those two categories.

15    They deal with employment cases, disparate treatment cases, and

16    the production of employee personnel files in that context.

17              They also interestingly, with your background,

18    deal with admiralty cases, collisions and, what I learned from

19    my old firm, allisions, where many times an accident

20    investigation after a collision or an allision involved the

21    production of drug tests directly relevant to the incident.

22              I don't think Your Honor has decided this

23    question in your MDLs.  I remember serving in this Court in

24    *Propulsid*.  It did not come up in *Propulsid*.  I understand that

25    in *Vioxx* it was determined by Judge Higbee, if I have it right,

up in New Jersey and personnel files were ordered, and that order carried over here.  Doug Marvin and his people agreed essentially to the same process, so it was parallel with the state court proceedings.  My friend Steve Glickstein tells me that it has not been raised in *Drywall*.

So to the best of our information, you have not had to decide this question.  Here, if I may read -- because I have worked hard to try to define this issue.  Here is what we believe the question on the table is:  In a product liability MDL involving a medicine that is alleged to be unreasonably dangerous, are sweeping allegations of rush to the market and improper marketing legally sufficient to invade the privacy of company employees by the production of sensitive materials contained in their confidential personnel files, some of which they may have never seen themselves?

I'm going to touch upon three categories of things going through this discussion:

(1)   What do the plaintiffs want and why do they want it;

(2)   The case law coming down from *Coughlin* and *Frankenhauser* to where we are today;

(3)   The impact and the effects on this privacy and what do we get out of it, what do the plaintiffs get out of this invasion.

So what do they want?  They tell us what they

09:43

1    want in footnote 25, page 11, of their brief.  It is taken, I

2    noticed, Your Honor, virtually word for word from Judge Moss'

3    consent order.  It was a consent order in *Yaz*, in the mass tort

4    court in Philadelphia, almost word for word.  So that's its

5    pedigree.

6                    They want eight categories of documents, and the

7    first three categories are clearly defined to be

8    Xarelto-related.  The other five are, I think, fairly assumed

9    to be Xarelto-related because they were described as

10   Xarelto-related in Judge Moss' consent order.  So the first

11   three are:

12                   Number 1, performance reviews, these will be

13   reviews by supervisors of an employee's performance; good, bad,

14   or indifferent.

15                   Number 2 would be self-reviews, where an

16   employee is asked, probably more importantly, to criticize his

17   or her performance than to praise it and hope to achieve

18   improvements.

19                   Number 3 is annual compensation involved with

20   Xarelto.

21                   The others, which I'm assuming are

22   Xarelto-related for the reasons I advanced, are incentives and

23   bonuses.

24                   Then the last four of this eight would seem to

25   apply only to former employees:  postemployment consulting,

09:45

1   litigation assistance, reasons for termination, and

2   nondisparagement clause.

3            Most of my comments, Your Honor, are going to

4   relate to the evaluation issues, the evaluation information

5   that they are asking for, whether supervisory or self, and

6   bonuses and compensation.

7            Now, why do they want this material?  It is

8   advanced in the brief, as I saw in their memorandum, in only

9   one sentence on page 14, and this is what it says:  "This

10  information is highly relevant and speaks directly to

11  plaintiffs' contention that Xarelto was rapidly commercialized

12  and rushed to the market in a highly competitive environment or

13  otherwise improperly marketed."

14           Those are familiar themes in cases of this kind,

15  but they are sweeping themes.  Rushing to the market would be

16  something that covers perhaps a decade.  Marketing covers maybe

17  half of a decade because it started before it was released onto

18  the market in 2011 and continues today.  The time frame is

19  massive when you compare it to a disparate treatment case or a

20  collision on the Mississippi River.

21           The cases.  I talked about Harry Lee's case, the

22  *Coughlin* case.  Let's focus for a moment on our Eastern

23  District cases.

24           The plaintiffs cited a couple cases, and there

25  are others similar to this from the Eastern District.  One is

1    *George v. Entergy Services*.  Magistrate Knowles produced a

2    thoughtful opinion on this.  It was a race and a sex

3    discrimination case.  He found that the files were relevant to

4    disparate treatment.

5           *Lenihan* was another case of sex harassment and

6    equal pay.  That is a Magistrate Wilkinson case, and I can see

7    that he is more or less the guru in this courthouse for this

8    issue.  He found that in this equal pay case the files were

9    relevant, and he produced a sentence that I think he got from

10   Judge Minaldi on a similar issue.  This phrase follows, and I

11   think it's a very special word.  He said:  "Discovery of

12   personnel files of nonparty individual employees presents" --

13   and here's the word -- "special concerns about the privacy

14   rights of the individuals involved."

15          "Special."  Personnel files, Your Honor, we

16   would respectfully submit, are special.

17          In the admiralty cases, *Eckstein Marine v.*

18   *M/V Basin Pride* -- actually, this is a Western District case.

19   Judge Methvin -- it was an Intracoastal Waterway collision --

20   felt that the files would be producible because of a rumor of a

21   positive drug test.  He looked at the file and found there was

22   no drug test in the file.  It was not needed to be produced.

23          *Meche v. Maintenance Dredging*, Magistrate

24   Wilkinson, it was not clear to me what the incident was here,

25   but given the nature of the parties, it sounds like an

1    admiralty matter.  The magistrate discussed drug screening.

2              *Poseidon Oil*, another admiralty case, a

3    limitation case by Magistrate Wilkinson.

4              *Consolidated Grain*, an allision case involving

5    some of the operating seamen in that event.

6              I talked about *Frankenhauser*, 1973, the case

7    that was incorporated by *Coughlin* in our Fifth Circuit.

8              There is a descendant from the Eastern District

9    of Pennsylvania that is just as relevant as *Frankenhauser* is.

10   If the U.S. Fifth Circuit takes notice of *Frankenhauser*, it's

11   thoughtful to take a look at what happened, I guess, 16 years

12   later in the *Sunrise* case in the Eastern District because the

13   *Sunrise* case gets closer to our situation.

14             The *Sunrise* case was a securities case, and it

15   involved an argument that the auditors were negligent in doing

16   audits, and there was a request to get the auditors' personnel

17   files to support this argument of auditor negligence.

18             The Eastern District established, in looking at

19   this, or articulated what they called, with respect to

20   personnel files, a clearly relevant standard.  They have to be

21   clearly relevant to produce them.  We don't have that standard

22   in those words, but I would suggest that the word "special" has

23   a close connection with "clearly relevant."  Our word is

24   "special" here.  In the Eastern District of Pennsylvania, it's

25   "clearly relevant."

09:50

1        What the court said was *Sunrise* recognized a

2   difference between the *Frankenhauser* 1983 case where the

3   investigative file into a discrete incident of a shooting was

4   relevant and differentiated that from audit files, which the

5   court said the connection between an audit and the personnel

6   files of the people who did an audit is "speculative."  It was

7   a speculative connection between the contents of the personnel

8   files and whether the audit was "negligently conducted."

9        The court said -- Your Honor, we think this is

10  so fundamental -- "General allegations of wrongdoing do not

11  open the season for fishing expeditions."  I would put it

12  another way in our Eastern District of Louisiana lexicon.  I

13  would suggest the general allegations of rush to market and

14  improper marketing do not open the file cabinet for the

15  production of the special personnel files.

16        What effect is the production of these personnel

17  files likely to have, and what kind of value can the litigation

18  expect to get out of the production of this information?  One

19  thing we know will happen is that the production of these

20  private personnel files -- as I said, some of which our

21  witnesses will have never seen -- will intimidate them.  They

22  will feel embarrassed.  They will ask, "Why can a lawyer see

23  this stuff and sometimes I can't see it?"

24        That may put some of those people into a very

25  uncomfortable position.  They are going to be on videotape.

09:53

1    You are going to see their face.  It's going to present a
2    demeanor when those videos are shown to this jury that may not
3    be fair.
4                   If they are shown evaluations, particularly a
5    self-evaluation, that could be humiliating when somebody is
6    trying to evaluate themselves honestly and defensively,
7    particularly a five- or six-year-old evaluation.  Imagine,
8    then, the chilling effect on this whole process.  That's
9    something the *Sunrise* case talked about; that not only is it an
10   invasion of privacy, naturally and logically it's going to
11   chill some employee.  "Why should I write something critical
12   about myself in a self-evaluation if somebody someday is going
13   to get it in litigation and embarrass me with it?"
14                   Or a supervisor might say, "Why should I say
15   something critical about this employee in the hopes that I can
16   get this employee properly disciplined and improved if it's
17   going to be exposed and embarrass me, the supervisor, and the
18   employee and damage our relationship?  Why should I do that?"
19                   So we are looking at damage to the employee's
20   pride, damage to the supervisor's ability to fairly and
21   comfortably say what's good and bad about that employee, damage
22   to the business for a medicine that's still on the market.
23                   Then bonuses.  What is the relevance of bonuses?
24   I respectfully disagree with the *Pradaxa* decision that talks
25   about bonuses.  There's a paragraph that's quoted in their

1    brief that says in this -- this was used by the court to

2    justify the production or the requirement and the disclosure of

3    bonus information.  The justification was it was relevant to

4    know if a 10 percent bonus was for an employee who made $50,000

5    or if a 10 percent bonus was for an employee who made $500,000.

6              I think that's meaningless, Your Honor, because

7    you don't know, I don't know, we don't know the circumstances

8    involving that employee.  That meager $5,000 bonus for the

9    $50,000 employee could have made all the difference in the

10   world to that person.  The $50,000 bonus for the $500,000

11   employee could mean nothing or everything.  Maybe they bought

12   too many Corvettes that year.  It doesn't tell you anything,

13   but it presumes that there's something wrong with the bonus,

14   that somehow somebody who is getting a bonus will do something

15   improper.  Maybe the bigger the bonus, the more improper they

16   will be.

17             I don't know how many lawyers in this courtroom

18   have bonuses at the end of the year.  Many of us do, and our

19   bonuses are often tied to productivity.  Well, is there a

20   presumption that if I get a bonus this year from productivity

21   that I did something unethical?  Maybe I got lucky or a

22   plaintiff lawyer got a big hit because he tried a great case.

23   So I don't and we don't accept the proposition that bonuses for

24   a $50,000 employee or a $500,000 employee prove anything.

25             Then what's the return on this invasion of

privacy and this chilling effect and embarrassing these people?
The real evidence in this case comes from the millions and
millions of pages of documents that we're going to be
producing, the depositions we will take of their people and the
depositions they will take of our people, what Your Honor is
familiar with, the PowerPoints, the e-mails, the business
plans, the correspondence with the FDA, the studies.  That's
the real evidence.  What is a bonus going to add to that pile
of evidence?  What is a self-evaluation of an employee going to
add to that at the expense of getting it?

We think it boils down to this:  Because these
files are special, you can't get them just by saying, "You're
negligent.  Give me all the personnel files of your employees."
"You rushed it to the market.  Give me all the personnel files
of your employees."

If that's the test, then there's nothing special
about those files.  What they need to do is what happened in
*Sunrise* and what happened in *Zofran*.  The court in *Zofran*
applied *Sunrise*.  If you can establish a reasonable connection
of what you need in this employment file to this case that's
not speculative, like trying to get the personnel files of the
auditors, that's not speculative, if you can tie it in some way
to issues in this case, like not changing the warning label --
not just failure to warn, but you didn't do this in not
changing the warning label, or you did something to tinker with

09:59

1   the study, or if you did something like -- monitoring is an

2   issue.  If you can tie it to one of these things and present

3   Rule 11 facts that show that, well, then maybe you get there,

4   but we are not there.  We are simply:  "You're negligent.  Give

5   me all the files."

6              That cannot be the law, and we respectfully

7   suggest that they haven't done what they need to do to get

8   there.  Maybe they will.  In *Zofran* the judge said, "If you get

9   more information, I will keep it open.  You can come back and I

10  will look at it."

11             Mr. Hoffman would like to address the Court.

12        **THE COURT:**  Thank you.

13        **MR. HOFFMAN:**  Good morning, Your Honor.  I will be

14  quick on this issue.

15             Whatever Your Honor decides with respect to the

16  broader issue of personnel files with respect to U.S.-based

17  employees of the defendants, based on German law the Court

18  cannot and should not order the production of information from

19  the personnel files of German witnesses of the Bayer

20  defendants.

21             As we explained in our papers, which included

22  the affidavit of a German legal expert, the German constitution

23  includes a right for German citizens to something referred to

24  as informational self-determination.  German citizens have a

25  powerful control over what happens with respect to information

1   that they share with their employers and that are found in

2   personnel files.

3          Germany has a data protection statute that its

4   parliament enacted decades ago that fleshes out this

5   constitutional right and makes clear that the kinds of

6   information that the plaintiffs are seeking from the personnel

7   files are within the core area of constitutional protection

8   under German law.  German cases make that point clear.

9          In terms of the very rare situations in which

10   information like this might be up for discussion in terms of

11   disclosure, German law makes clear that the powerful default

12   rule is against disclosure.

13          We have cited the vast body of U.S. case law

14   that touches on this issue, starting with the Supreme Court

15   decision in *Aerospatiale*, which establishes -- which I know

16   Your Honor is familiar with -- the principle of comity to

17   foreign laws that govern disclosure of information, both

18   general laws and specific data protection laws like the one at

19   issue here.

20          There are a number of cases that have dealt with

21   this issue specifically in the context of personnel files of

22   German employees of German defendants in U.S. litigation, and

23   they have all concluded that disclosure would be inappropriate;

24   that the overwhelming importance that Germany, through its

25   constitution and statutes and court decisions, attaches to this

1   kind of information needs to be considered as a prohibition on

2   disclosure.  Those cases have considered the idea of whether

3   confidentiality orders or protective orders, for example, can

4   be an adequate protection, and have concluded that they cannot.

5   To the degree provisions exist in those confidentiality orders,

6   they largely are pointed at custodial files.

7               Your Honor started our discussion today by

8   pointing out a distinction which occasionally will have stray

9   information that is personal; and rather than create a huge

10  problem over stray references, protective orders,

11  confidentiality orders deal with that.  This is a very

12  different animal.  Even with the limitations that are described

13  in the plaintiffs' papers, we are in what American

14  constitutional law would call the heartland of German

15  constitutional protections here.

16              So we have cited the cases that are out there.

17  We have described, through the affidavit of a German law

18  expert, just how overwhelming the barrier to production would

19  be here.  Even though the plaintiffs had noticed that this was

20  an issue, they have submitted nothing on it.  They have cited

21  no cases.  They have cited no orders where this kind of

22  discovery was allowed.  They have not gotten an expert who

23  could attempt to explain how they are going to get over the

24  mountaintop of German privacy law.

25              In fact, in recent cases plaintiffs have largely

1   conceded this case.  Mr. Irwin mentioned that the proposal

2   that's found in Point 3 comes from an order in the *Yaz*

3   litigation.  In that litigation plaintiffs did not contest this

4   issue.  So we are a little surprised that they are not.  There

5   doesn't appear to be any basis in this case to treat the

6   situation differently.

7                   Compensation information, performance reviews,

8   those are absolutely central to the German structure, and our

9   German law expert makes that point very, very explicitly, very,

10  very clear.  So it's not just health information or personal

11  disclosures, but under German law even things like compensation

12  are core protected privileges.

13                  I don't think I can emphasize enough how

14  important this issue is.  German law imposes criminal sanctions

15  on employers who make a mistake and disclose this kind of

16  information.  It is not a trivial matter.  I think Your Honor

17  is surely aware that these kind of data protection differences

18  between our country and Germany are the subject of disputes in

19  the relations between those two nations.  This is about as

20  important an issue for the Germans as one can imagine.

21                  Thank you, Your Honor.

22          **THE COURT:**  Thank you very much.

23                  Let me hear the other side of it.

24          **MR. BARR:**  Bear with me one second, Your Honor.

25          **MR. IRWIN:**  Your Honor, I object to those absolutely

10:06

1    beautiful children.  I could give you some cuter ones.

2              **MR. BARR:**  I will just make that my argument.

3              Your Honor, Brian Barr for the plaintiffs.  I

4    think we would like to make a few things clear because I think

5    there's maybe a little bit of overstating as to what our

6    position is on this issue.

7              I think Mr. Irwin laid out very well the

8    categories of documents we are looking for.  We believe that

9    those categories are relevant in this case.

10             What one has to remember is credibility of the

11   witness is always at issue and any evidence that a jury could

12   consider to weigh credibility and determine the weight of

13   testimony is discoverable and allowed to be presented.

14             We are not seeking the disclosure of personnel

15   files of every Janssen and Bayer employee that ever had

16   anything to do with Xarelto.  This is a much narrower group of

17   people we are looking at.  I believe we have requested

18   somewhere in excess of 100 custodial files at this point.

19   That's a broad process.  This process is purely people that we

20   are noticing for deposition.  That's what we are looking for.

21   Those people are likely going to be the people whose testimony

22   is either played for the jury or come live to testify to the

23   jury, and their credibility is at issue.

24             So, Your Honor, under *Coughlin v. Lee* at no

25   point did the Fifth Circuit set out that this body of case law

10:07

1   or this precedent is limited to this very narrow set of

2   factors.  This is the controlling law of the Fifth Circuit

3   which says that personnel files are discoverable.

4            Now, certainly some limitations were put on

5   that.  There was a weighing that needs to be done to balance

6   the privacy interests with the discovery interests.  We

7   understand that.  We acknowledge that.  It's very common in

8   litigation to have to weigh the discovery interest with the

9   privacy interest, and we do things in litigation to overcome

10  that.  We agree to protective orders.  We agree certain types

11  of material can be redacted.  They can mark things

12  "confidential"; it can only be disclosed to certain classes of

13  people.  That's all part of the body of law.  What we made

14  clear to them is that is what we want, and we are willing to

15  put all of this stuff under a protective order.

16           Again, this information has become routinely

17  produced in MDLs at this point.  It was certainly produced in

18  *Pradaxa*.  It was produced in *Testosterone*.  It was produced in

19  *Tylenol*.  It was produced in *Yaz*.  I'm told by people on my

20  side that that was actually a litigated issue, not a consent

21  order.  I wasn't involved in that, so I just have to go with

22  what was represented to me.

23           So this is not uncommon to be done because those

24  courts -- as the court in *Pradaxa* very well laid out, all of

25  these reviews are related to the person's work.  *Vioxx* is a

10:09

1    very good example of the relevance of these files and how they
2    are used in litigation.
3              Your Honor, I'm sure, remembers Dr. Alise
4    Reicin.  Dr. Reicin was held out as a key witness for Merck, a
5    top scientist.  She was very authoritative about Merck acting
6    appropriately and providing full disclosure on the issues
7    related to that, but what we found in her personnel file was a
8    review talking about "you have been a tenacious defender of the
9    *Vioxx* franchise."
10             Well, that is information that a jury can use to
11   consider the weight of her testimony.  If she is getting a
12   positive performance review that "you are a tenacious defender
13   of the drug," that is something the jury should be able to
14   consider when they are determining whether or not to place
15   weight on what she is saying about the company.  That is our
16   basic view.
17             Now, we aren't doing this to intimidate and
18   embarrass.  We aren't going through a fishing expedition trying
19   to find out people's medical histories and anything bad they
20   have ever done or anything good they have ever done that's in
21   their personnel file.  What we are looking for is a self-review
22   where they say something like "I need to do better at
23   explaining the particular details about the drug to somebody."
24   I don't know that that's in there, but it could be.  Or a
25   superior saying, "Look, you are too open about what you tell

1    people about the drug."  Those are relevant pieces of material.

2    That is our point.

3                 As an alternative, because of the way we have

4    set this out, at no point is the defendant going to come to us

5    and just hand us the personnel file.  They are going to go

6    through it.  They are going to redact certain pieces of

7    information.  It's my strong suspicion, based upon what we have

8    said we've asked for, they are only going to give us

9    information that is very narrowly tied to a Xarelto issue.

10                If they are not comfortable with that,

11   Your Honor, what we would be comfortable with is they could

12   produce the information to you, and you could review it

13   in camera and tell us whether or not you think there is stuff

14   in there.  We would be more than happy to have that decision

15   binding upon us.  If you look at the personnel file and say it

16   is not appropriate to show this to the witness, then we would

17   accept that decision.  That is an alternative that we are

18   comfortable with.

19                I'm not going to spend as much time as Mr. Irwin

20   did.  I don't disagree with him on a lot of the legal issues.

21   I do think it was important to point out to the Court that we

22   are really narrowly focused here.

23                Now, on the German issue, regardless of German

24   law, if personnel files are relevant -- and we believe they

25   are -- and they have to be produced under the Fifth Circuit, as

1   we believe they do under the balancing test, then they are

2   relevant here.  So then the question becomes:  How do you deal

3   with these German law issues?  Is the German law so strong that

4   under no set of circumstances can you provide the personnel

5   file?  I don't believe that's the case.

6               We have dealt with this issue with the

7   protective orders that we have negotiated.  If you look at

8   PTO 12 and PTO 20 here, we are dealing with the German data

9   privacy information.  They are allowed to mark anything that is

10  personal data, which is the protected information under German

11  law, as protected.  This sets out what all of that type of

12  stuff is.

13              It says in the order, if you look at

14  paragraph 8(d):  "In particular, this provision applies to the

15  following documents:  personnel records and information."  This

16  was a consent-negotiated order, and now it looks like we are

17  trying to undo it.

18              Then on top of that we have PTO 20.  PTO 20 is

19  the ESI order.  It establishes the format of production and

20  what they can redact.  What we agreed to as part of PTO 20 was

21  that information that was personal data, that was stuff like

22  sex life, health life, philosophical beliefs, religious and

23  political opinions, they can redact that.  We don't want that.

24              If you read down further:  "An example is an

25  e-mail of a German employee because it identifies individuals.

10:15

1    If produced as relevant and nonprivileged, the content and
2    personal data would not be redacted for the reasons expressed
3    above."  They have agreed to do it.  So we are a little
4    surprised, given this language and what we negotiated over
5    periods of weeks, that we are now hearing that this information
6    can't be produced because we specifically negotiated it.

7                    That's all we really have to say about it,
8    Your Honor.  I'm happy to answer any questions.

9              **MR. IRWIN:**  Less than two minutes, Your Honor?

10             **THE COURT:**  Sure.  I will hear from you.

11             **MR. IRWIN:**  Seeking discovery on issues of
12   credibility is not the standard.  "I want everything I can get
13   from you in order to determine whether or not you are
14   credible," that is not discovery.

15                   Number 2, in camera, they have not pled enough.
16   Their allegations are not specifically enough connected.  It's
17   speculative to require that we do their work or,
18   respectfully -- I know how hard Your Honor works -- you do
19   their work in camera, they are not there yet.  Thank you very
20   much.

21             **THE COURT:**  Let me hear from you on that area.
22   What's your response to the orders?

23             **MR. HOFFMAN:**  PTO 12 deals with custodial files and
24   stray documents that might be found in those files.

25             **THE COURT:**  Yes.

1          **MR. HOFFMAN:**   PTO 20 also has a provision that says

2     the defendants can redact personal information, again, in a

3     custodial file, stray files.   Pursuant to PTO 20, which allows

4     us to redact that, what they are asking for from us then would

5     be a bunch of blank pages because what's in the personnel files

6     is core personal information that would be redacted under

7     PTO 20.

8               So these two orders are not dealing with a

9     specific request for personnel files.   When they were

10     discussed, that was not an issue.   They are dealing with stray

11     references in custodial files.   In all events, PTO 20 does

12     allow us to redact personal information if we identify it

13     before production.   So I don't think these orders in any way

14     trump the protections of the German data privacy laws.   I think

15     they were intended to get at something very different.

16          **THE COURT:**   I probably ought to write on this, but

17     let me just tell you what I see in it.   As I mentioned, as I

18     see it, there are two separate types of files:   the custodial

19     files and the personnel files.

20               I think it's clear and the parties agree that

21     the custodial files are likely to have relevant information and

22     should be discoverable.   On a blanket basis, I think that the

23     custodial files should be discoverable.

24               With regard to the personnel files, I think it

25     raises a couple of issues.   One is privacy issues, the

10:18

1    relevancy issues, things of that sort that the custodial files

2    don't raise.  I think that it would be improper for me to issue

3    a blanket order that all of the personnel files ought to be

4    discoverable.  I think, however, there may be some areas that

5    the personnel files may be relevant and may be discoverable in

6    certain instances.

7              I do think that at this stage in it, the

8    plaintiffs need to show more particularity and more relevancy.

9    If they can establish that, then my thinking is that the files

10   ought to be given to the Court in camera so that I can weigh

11   the relevancy and the particularity and also consider some of

12   the proportionality as well as the privacy issues before I

13   would turn any of those over.  If I do turn them over or turn

14   over portions of them, I also think that ought to be under seal

15   and only used in connection with a deposition and returned back

16   to the parties, but I'm not there yet.

17             With regard to blanket discovery, I'm going to

18   be denying that.  I do think that as the case moves on, I may

19   have to look at it with regard to particularity and relevancy

20   on a case-by-case basis.  I think certain individuals may be

21   more significant.  Decision makers, things of that sort, may be

22   more significant than somebody on the line that has no

23   authority, no power to do anything.

24             I will write on this so that we do have

25   something that the parties can, if they disagree with, take up.

1        **MR. BARR:**  Your Honor, just one point of guidance.

2   The first deposition is coming up on February 10.

3        **THE COURT:**  Who is the individual?

4        **MR. BARR:**  It is Moye who is coming up.

5        **MS. SHARKO:**  Mr. Moye, M-O-Y-E.  He is a senior

6   marketing person.

7        **MR. BARR:**  Obviously, we would like the personnel

8   file for that.  We understand your ruling, but what type of

9   showing are you looking for us to make before that deposition?

10       **THE COURT:**  The type of job he has, the area of his

11  responsibility, the authority that he has in making some of the

12  decisions.  If the person is a janitor in the place, that

13  doesn't mean to me that he ought to disclose his personnel

14  file.  If a person is authorized to make decisions, authorized

15  to dictate policy, has the power of doing so, I can see more

16  significance in a particularized position in that type of

17  situation.

18       **MR. DAVIS:**  Your Honor, I understand everything you

19  are saying, but what that means is we may not know that

20  information until the deposition.  As a result, my suggestion

21  would be that the deposition should be left open so that we can

22  address the issue with the Court and then resolve the matter.

23       **THE COURT:**  Well, I'm not going to make that decision

24  at this point.  I don't think that that would be appropriate.

25  Let me look over the material that you have given to me.

1          Now, with regard to the German case with Bayer,

2     it does add another layer to it.  I'm not going to be able to

3     negate German law.  I haven't heard anything that the

4     plaintiffs have cited that interferes or contests or takes an

5     opposite position on German law.

6          You take the position that they have already

7     agreed to it, but they take the position that they didn't agree

8     to it.  What they agreed to do was give you the custodial files

9     and reserve their right to exclude any personal data that

10    happens to seep into those custodial files.  They haven't

11    agreed to give you the personnel files.  That can be an issue

12    that J&J doesn't have but the German Bayer does.

13          I have to look at German law on it.  If you have

14    anything that contests that, I will take that into

15    consideration, but I didn't see anything in the briefs.  Your

16    argument is that they have agreed to it and they are stuck with

17    the agreement.  Their position is that they didn't agree to it;

18    it has nothing to do with what you all have agreed to.  I'm not

19    going to be able to deal with Bayer in the same way that I can

20    deal with J&J.

21          **MR. BARR:**  We understand, Your Honor.  We have a

22    discovery call, I believe, next Tuesday.  So what we are going

23    to endeavor to do is get more information on the noticed

24    witnesses to you so that we can set up an in camera review if

25    you think that's appropriate.

10:24

1          THE COURT:  Okay.  We will do that.  If I can get out

2  my opinion before then, I will do so.

3               Do you having something?

4          MS. SHARKO:  If we are going to proceed with the

5  discovery call on Tuesday, is it possible to do it at another

6  time?  I'm supposed to speak at a mass torts seminar at that

7  time.

8          THE COURT:  Sure.  Let's see what I have.

9          MS. SHARKO:  Thank you.

10         THE LAW CLERK:  Your 1:30 and 8:30 are booked that

11  day, but we could do 10:00 or 2:00.

12         THE COURT:  What's good for you all?  10:00?  2:00?

13         MS. SHARKO:  Either is fine.

14         THE COURT:  What's the date?

15         THE LAW CLERK:  January 26.

16         MS. SHARKO:  January 26 at 2:00.

17         THE COURT:  Are you okay with that, Brian?

18         MR. BARR:  Yes, Your Honor.

19         MS. SHARKO:  Thank you very much.

20         THE COURT:  Thank you very much.  I appreciate it.

21         MR. BARR:  Your Honor, there's some additional

22  matters.

23         THE COURT:  Sorry.  I'm ready.

24         MS. SHARKO:  Very briefly.

25         THE COURT:  That's all right.  Take your time.

10:25

1    **MS. SHARKO:**  What we want to do here is what we have

2    been doing in all of the product liability MDLs, state and

3    federal, that I have been involved in for the last 10 years or

4    so, and that is to have a camera on the questioner as well as a

5    camera on the witness; so that when the depositions are shown

6    at trial, if the particular trial judge agrees, the jury gets

7    to see both the questioner and the witness to better recreate

8    the reality of the courtroom.

9        When you look at these two-camera videos, they

10   are much more interesting.  They are much more informative, I

11   think, than just the traditional talking head.  The fact is

12   that when someone is in the witness box there, the jurors are

13   not glued to the witness.  Their heads go back and forth from

14   the questioner to the witness.

15   **THE COURT:**  So you are looking for a split screen,

16   basically, presentation during the trial.

17   **MS. SHARKO:**  Exactly.  We are not arguing for

18   permission to do that in this Court in this trial next year,

19   but we are just asking for the opportunity to preserve it so

20   that Your Honor has the option, so that the state court judges

21   around the country and the other federal judges will have the

22   option to use those.

23   **THE COURT:**  Okay.  What's the opposite side?

24   **MR. DAVIS:**  Your Honor, Brian is going to really

25   address this, but I just wanted to introduce him and make a few

10:27

1   comments.  I begin by saying we are not in Hollywood.  We have

2   the Federal Rules.  Rule 1 begins with the purpose that the

3   rules are employed by the court and the parties to secure the

4   just, speedy, and inexpensive determination of every action and

5   proceeding.  We know the rules were recently amended.

6          I have history in this courthouse in *Propulsid*,

7   *Vioxx*, *Chinese Drywall*, *BP*, and the *Pool* litigation.  In not

8   one of those cases have we ever done anything like defendants

9   suggest.  What we have had is, on occasion, two cameras.  One

10  camera focuses on the witness.  One camera may focus on

11  exhibits.  That's been the sole purpose.  The reason of that is

12  because of Rule 30, which says the purpose is to record the

13  witness' testimony.  The testimony is to be recorded.

14          We are not Hollywood, and that's what's

15  happening here.  That's what's being suggested.  It's never

16  happened, to my knowledge, in any matter in this district or in

17  this courthouse.  The few times where it has happened, I think,

18  are exceptions.

19          Brian, I'm going to turn that over to you to

20  make the argument.

21          **MR. BARR:**  Your Honor, Brian Barr again.  Hopefully I

22  will be about the same amount of time as I was on my last one.

23          As Lenny points out, the Federal Rules guide us

24  to minimize costs and maximize efficiency.  The additional

25  cameras that the defendants want to bring in do the exact

10:29

1   opposite.

2                 What they are actually proposing isn't a split

3   screen of the witness and the examiner.  What they are actually

4   proposing is three cameras in the deposition:  a camera on the

5   witness; a camera on the examining lawyer; a camera on the

6   defense lawyer, possibly two cameras on the defense lawyers

7   since there are two major pharmaceutical companies here.

8                 Now, that's a lot of faces on a screen for a

9   jury to have to see.  It's pretty confusing.  You add to that

10  you are also going to have on the screen the document that's

11  being talked about.  You have seen this done in trials.  When

12  you are working with these documents, you have the tech that

13  blows up the box so the jury can really see what's being

14  focused on.  You will have that on the screen as well.

15                So you end up with six or seven boxes on the

16  screen, only two of which are evidence.  The lawyer is not

17  evidence.  Most of the time that lawyer won't even be in the

18  courtroom.  He may be here for the bellwether trials.  But for

19  the state court trials that are going to be using these

20  depositions because they are cross-noticing, for the remand

21  cases when we put together a trial package, they don't want my

22  face.  Some lawyer who has his case remanded back to federal

23  court, if he has to go to trial, he doesn't want my face on all

24  of his depositions.  That's not appropriate.

25                We have all watched mock jurors.  We have all

watched them convene back in the room.  You never know what a juror is going to latch on to and decide a case based upon.  We should not facilitate them to decide cases on things other than the evidence.  They shouldn't be watching a video focused on the lawyer in a little box and worried about what tie he is wearing.  They should be focused on the evidence, and that's what Rule 30 sets out.

You look at Rule 30 -- and it's Rule 30(b) -- and it says that the party noticing the deposition decides the manner in which to record the testimony.  The other party has the right, with notice, to designate another method of recording the testimony.  There is nothing in the rules that allows an opposing party to put cameras on the lawyers.

Now, the defendants are arguing that they want to do this because it recreates; it's a more compelling presentation.  Well, there is an easy solution to that.  If they want a compelling, interesting presentation to the jury, bring the witness.  We would love to have a live witness in the box.  That is our preference.

They have already stated that preference.  As you know, they have stated countless times that the live testimony of the prescribing doctor is critical to them, and they aren't willing to accept his video deposition.  So video is not good enough for them.  They want the doctor live.  They want him to leave his office, leave his patients he is caring

1  for, and come into this courtroom and testify live to the jury.

2          Well, you know what?  We want the same thing.

3  We want their corporate people to leave their offices, come

4  down to New Orleans, sit in the stand, and answer the questions

5  in front of the jury.  Any process we set up that assists them

6  in facilitating avoiding bringing that person live is

7  prejudicial to the plaintiffs, and we don't believe that there

8  is anything in the rules that allows for it.

9          Ms. Sharko talked about in her 10 years this is

10 what's done.  Well, in all of these cases, no additional

11 cameras were authorized.  I have done a lot of mass tort MDL

12 practice myself.  I have never seen an additional camera in a

13 deposition.  So all of these cases don't address the issue.

14         Now, Ms. Sharko points out in her brief that

15 here are the orders that allow it.  Well, the *Yaz* order, the

16 *Levaquin* order, and the *Ortho-Evra* order were consent orders.

17 It was a negotiated order.  The plaintiffs, for whatever reason

18 they may have had -- maybe they got something in trade for it,

19 for the order, who knows -- but the plaintiffs agreed to it.

20 That shouldn't be binding upon us.

21         The other order she points out -- *Propulsid*,

22 *PPA*, *Rezulin*, and *Norplant* -- if you read the order, it's not

23 talking about defense counsel bringing additional cameras; it's

24 saying the questioner may use a two-video-camera system in

25 *Propulsid* and *PPA*.  In *Rezulin* it's the examiner may use a two-

1   or three-camera system.

2           That is consistent with the rules because the

3   rules allow the noticing party to bring in additional cameras

4   to record the testimony.  I did a bunch of *Rezulin* depositions.

5   I don't recall a camera ever being there to record me

6   questioning the witness.  What I do remember was a camera

7   recording the documents because that was in a time where the

8   technology wasn't at where it is today.  People were using

9   ELMOs, they were using screens, all these types of things, and

10  they had to have a separate camera record the presentation of

11  those documents.

12          We don't have to do that anymore today.  We are

13  able to run things through computer systems and record the

14  presentation of the documents without using the camera.  So you

15  don't see the plaintiffs asking for that type of information.

16          Now, I have talked about how we would prefer

17  that they come live.  We agree with the defendants that video

18  is more compelling than transcripts.  That's what the law they

19  cite talks about, how a video deposition is more compelling

20  than a transcript, but we can't allow that compelling

21  presentation to obscure the evidence.

22          I know we don't have to decide today whether or

23  not these videos would ever be played in court.  I understand

24  that.  But all we are doing is taking that issue and we are

25  creating a future dispute down the road.  We are also creating,

10:36

1   as I talked about, significant issues in the remand cases and

2   in the state court trials because they are going to come into

3   court -- and you may decide in the bellwether trial that it's

4   not appropriate, you don't want that in front of your jury

5   after you look at it, but those feeds are still available.  So

6   then they go down to the remand court and the state court, and

7   they try to convince that judge that this is appropriate.

8   Your Honor, I have rarely seen these used.

9           What they really want to do is put a camera on

10  plaintiffs' counsel because they think that will somehow

11  handcuff us.  They think that we may misbehave, and they would

12  like to catch that on video.  Well, there's been no showing by

13  their side that anybody from the plaintiffs has misbehaved in

14  the conduct of depositions in this case.

15          We have instructed every person taking

16  depositions on how to follow the rules of professionalism and

17  what is expected of them by Your Honor in how they conduct

18  themselves in depositions.  There aren't going to be problems

19  on the plaintiffs' side.

20          We think that's what's really going on.  They

21  want to catch plaintiffs' counsel in moments that they hope

22  they can show to the jury that maybe put plaintiffs' counsel in

23  a bad light.  That's the goal.

24          I will talk about Amsterdam.  A 26-hour, 30-hour

25  deposition is not like a trial.  In a trial you're

1    cross-examining somebody for two or three hours.  In a

2    deposition you have them for a while.  You have never heard

3    them testify.  They say things that you weren't expecting.  You

4    maybe express some surprise, you may be reaching into your box,

5    and then they want to show that to the jury.  That's not

6    appropriate, Your Honor.  We need to avoid any effort to try to

7    do that.

8            Now, costwise, the amount of costs that this

9    will add to discovery in this case is staggering.  I will give

10   you Amsterdam as an example.  We are going over to Amsterdam, I

11   believe, in three weeks to take four witnesses.  Some of those

12   depositions overlap.  So under what they are proposing, we

13   would have to bring six to eight videographers to Amsterdam,

14   fly them over there, bring their equipment, feed them, pay for

15   their time, put them up in a hotel.  Then we have to take all

16   that video and sync it to the transcript.  It's expensive

17   enough when you are doing it with one to do that.  You are now

18   exploding that cost.

19           Then you are using the resources of the

20   plaintiffs now having to argue whether we can use this stuff in

21   trial.  You are making deposition designations an almost

22   impossible task.  If Your Honor rules on a deposition

23   designation that I have to go back and take out what you said I

24   can't play, I now have to work with three or four different

25   videos to do that.  That is a significant expense to our side

1  and, Your Honor, it's an effort that just doesn't need to be

2  done.

3           If we are going to do this -- I think their

4  major point is they want to do this with their witnesses.  We

5  would insist that it be done with all witnesses if we are doing

6  this.  So we would have to show up in medical doctors' offices

7  with three or four cameras.

8           I've taken a lot of doctor depositions.  Most of

9  their offices are a little smaller than that jury box.  It's

10  going to be hard to get three or four cameras in there.  So

11  then we are going to have to move the doctor to a different

12  place to take his deposition.

13           It's an inefficiency that's completely

14  unnecessary, particularly when all they have to do to solve

15  their problem on a compelling presentation is bring the

16  witness.  That's what we want, Your Honor.  For all those

17  reasons we oppose additional cameras.

18           **THE COURT:**  Any response?

19           **MS. SHARKO:**  Yes.  I was at most of the *Ortho-Evra*

20  MDL depositions.  That was Judge Katz' MDL.  We had two cameras

21  in all of those depositions.  It's not a problem.  It's not

22  disruptive.  It's one extra camera focused on the questioner.

23  The defense pays for that.  If the plaintiffs want to videotape

24  the defense lawyers, I guess they have that right.  We wouldn't

25  object to that.  We have done it hundreds of times.

1    In the *Levaquin* litigation which was cited,

2    there were two cameras.  I think that's part of Judge Tunheim's

3    standing orders in Minnesota.  Not only were there two cameras

4    at the depositions in the *Levaquin* cases, at least in the

5    *Levaquin* case I tried before Judge Higbee, she showed the jury

6    the split screen videos of the witnesses.  Frankly, I thought

7    they were effective.

8    But that's not the issue before the Court today.

9    The issue before the Court is a very simple one:  Can we bring

10   a second camera to film the questioner so that we have the

11   ability down the road to argue to Your Honor, to the state

12   court judges, to the remand judges that the split screens

13   should be used?  That's all we ask, the ability to bring in

14   that camera at our expense.  Thank you.

15   **MR. BARR:**  Your Honor, can I respond?  I'm sorry.  I

16   hate to do this.

17   **THE COURT:**  All right.  I will let you respond.

18   **MR. BARR:**  Perhaps it would help if Your Honor looked

19   at the language that's being proposed.  The language is not

20   limited to one camera.  It gives the plaintiffs the option,

21   which we will of course exercise, to bring in the third camera

22   that they are paying for.  There's no question about it.  But

23   it's not just this one camera.  There are multiple cameras that

24   are going to have to be brought in here.  Just look at the

25   language and how it is just going to explode the cost and the

1    inefficiencies.

2            THE COURT:  I will look at the language.

3                As I understand what the defendants are asking

4    is that they have a camera on the witness, which we always

5    have, and a camera on the questioner, whoever is asking the

6    question, the questioner.  That, they say, gives them the

7    opportunity to do a split screen, but it doesn't necessarily

8    require them or require a court to do the screen.  The court

9    can say, "I'm aware of the questioner, but we are not going to

10   use that.  We are going to use only the camera on the

11   individual," which is the traditional way of doing it.  That's

12   what they are asking.

13               Let me look at the wording, at the notice.  I

14   hadn't focused on the notice.  I'll do so, and I'll decide

15   that.

16               Anything further that I haven't talked about?

17   Any motions that you all want to argue more?

18           MR. MEUNIER:  Your Honor, as we mentioned in

19   chambers, there are some additional issues we still don't have

20   resolution of dealing with depo protocol, but we are going to

21   work with the defendants.  Hopefully by the time we talk with

22   you next Tuesday or, if necessary, later, we can take those up,

23   only if we need to.

24           THE COURT:  Okay.  Thank you very much.  Court will

25   stand in recess.

10:44

1          **THE DEPUTY CLERK:**  All rise.

2                (Proceedings adjourned.)

3                      * * *

4                   <u>CERTIFICATE</u>

5          I, Toni Doyle Tusa, CCR, FCRR, Official Court

6    Reporter for the United States District Court, Eastern District

7    of Louisiana, certify that the foregoing is a true and correct

8    transcript, to the best of my ability and understanding, from

9    the record of proceedings in the above-entitled matter.

10

11

12                              *s/ Toni Doyle Tusa*
                              Toni Doyle Tusa, CCR, FCRR
13                            Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25

**$**

$5,000 [1] 15/8
$50,000 [24] 15/4 15/9 15/10 15/24
$500,000 [3] 15/5 15/10 15/24

**0**

07932 [1] 2/10

**1**

10 [3] 29/2 32/3 36/9
10 factors [1] 6/18
10 percent [2] 15/4 15/5
100 [1] 21/18
10:00 [2] 31/11 31/12
11 [2] 9/1 17/3
1100 [1] 1/16
12 [2] 25/8 26/23
14 [1] 10/9
14-MD-2592 [1] 1/4
16 [1] 12/11
1973 [1] 12/6
1983 [4] 6/19 6/22 7/10 13/2
1:30 [1] 31/10

**2**

20 [8] 25/8 25/18 25/18 25/20 27/1 27/3 27/7 27/11
20005 [1] 2/7
2011 [1] 10/18
2016 [2] 1/6 4/2
22 [2] 1/6 4/2
25 [1] 9/1
2592 [1] 1/4
26 [2] 31/15 31/16
26-hour [1] 38/24
2700 [1] 2/4
275 [1] 2/12
2800 [1] 1/16
2:00 [3] 31/11 31/12 31/16

**3**

30 [4] 33/12 35/7 35/8 35/8
30-hour [1] 38/24
316 [1] 1/22
32502 [1] 1/23

**4**

400 [1] 2/4

**5**

500 [1] 2/12
504 [1] 2/13
589-7778 [1] 2/13

**6**

600 [2] 1/22 2/10

**7**

70113 [1] 1/19
70130 [2] 2/4 2/13
70163 [1] 1/16
7778 [1] 2/13

**8**

820 [1] 1/19
8:30 [1] 31/10

**9**

901 [1] 2/7

**A**

ability [4] 14/20 41/11 41/13 43/8
able [5] 5/16 23/13 30/2 30/19 37/13

about [31] 6/8 6/17 6/22 10/21 11/13
16/17 20/19 23/5 23/8 23/15 23/23
23/25 24/1 26/7 33/22 34/11 35/5 36/9
36/23 37/16 37/19 38/1 38/24 41/22
42/16
above [2] 26/3 43/9
above-entitled [1] 43/9
absolutely [2] 20/8 20/25
accept [1] 15/23 24/17 35/23
accident [1] 7/19
according [1] 5/19
achieve [1] 9/17
acknowledge [1] 22/7
acting [1] 23/5
action [1] 33/4
actions [1] 5/5
actually [5] 4/13 11/18 22/20 34/2 34/3
add [5] 16/8 16/10 30/2 34/9 39/9
additional [8] 31/21 33/24 36/10 36/12
36/23 37/3 40/17 42/19
address [4] 17/11 29/22 32/25 36/13
adequate [1] 19/4
adjourned [1] 43/2
admiralty [4] 7/18 11/17 12/1 12/2
advanced [2] 9/22 10/8
Aerospatiale [1] 18/15
affidavit [2] 17/22 19/17
after [2] 7/20 38/5
again [3] 22/16 27/2 33/21
against [1] 18/12
ago [1] 18/4
agree [7] 4/15 22/10 22/10 27/20 30/7
30/17 37/17
agreed [9] 8/2 25/20 26/3 30/7 30/8
30/11 30/16 30/18 36/19
agreement [4] 4/17 30/17
agrees [1] 32/6
aided [1] 2/17
alimony [1] 5/8
Alise [1] 23/3
all [34] 1/6 7/3 15/9 16/13 16/14 17/5
18/23 22/13 22/15 22/24 25/11 26/7
27/11 28/3 30/18 31/12 31/25 32/2
34/23 34/25 34/25 36/10 36/13 37/9
37/24 39/15 40/5 40/14 40/16 40/21
41/13 41/17 42/17 43/1
allegations [4] 8/11 13/10 13/13 26/16
alleged [1] 8/10
allision [2] 7/20 12/4
allisions [1] 7/19
allow [4] 27/12 36/15 37/3 37/20
allowed [2] 19/22 21/13 25/9
allows [3] 27/3 35/13 36/8
almost [1] 9/4 39/21
already [2] 30/6 35/20
also [7] 5/14 7/17 27/1 28/11 28/14
34/10 37/25
alternative [2] 24/3 24/17
always [2] 21/11 42/4
amended [1] 33/5
American [1] 19/13
amount [2] 33/22 39/8
Amsterdam [4] 38/24 39/10 39/10 39/13
animal [1] 19/12
annual [1] 9/19
another [6] 11/5 12/2 13/12 30/2 31/5
35/11
answer [2] 26/8 36/4
answered [2] 6/2 6/3
any [15] 4/21 4/22 4/22 5/3 20/5 21/11
26/8 27/13 28/13 30/9 33/16 36/5 39/6
40/18 42/17

anybody [1] 38/13
anymore [1] 39/16
anything [15] 5/18 5/22 15/12 15/24
21/16 23/19 23/20 25/9 28/23 30/3
30/14 30/15 33/8 36/8 42/16
appear [1] 20/5
Appearances [2] 1/13 2/1
applied [1] 16/19
applies [1] 25/14
apply [1] 9/25
appreciate [1] 31/20
appropriate [7] 24/16 29/24 30/25 34/24
38/4 38/7 39/6
appropriately [1] 23/6
are [140]
area [3] 18/7 26/21 29/10
areas [1] 28/4
aren't [4] 23/17 23/18 35/23 38/18
argue [3] 39/20 41/11 42/17
arguing [2] 32/17 35/14
argument [7] 1/10 3/9 12/15 12/17 21/2
30/16 33/20
arose [1] 6/19
around [1] 32/21
articulate [1] 6/1
articulated [1] 12/19
as [36] 9/9 10/8 12/9 12/9 13/20 17/21
17/24 19/1 20/19 20/20 21/5 22/24 23/4
24/3 24/19 24/19 24/25 25/11 25/20
26/1 27/17 27/17 28/12 28/12 28/18
29/20 32/4 32/4 33/22 33/23 34/14
35/20 38/1 39/10 42/3 42/18
ask [2] 13/22 41/13
asked [2] 9/16 24/8
asking [7] 10/5 27/4 32/19 37/15 42/3
42/5 42/12
assistance [1] 10/1
assists [1] 36/5
assumed [1] 9/8
assuming [1] 9/21
at [43] 11/21 12/11 12/18 14/19 15/18
16/10 17/10 18/18 19/6 21/11 21/17
21/18 21/23 21/24 22/17 23/22 24/4
24/15 25/7 25/13 27/15 28/7 28/19
29/24 30/13 31/5 31/6 31/6 31/16 32/6
32/9 35/8 37/8 38/5 40/19 41/4 41/4
41/14 41/19 41/24 42/2 42/13 42/13
attaches [1] 18/25
attempt [1] 19/23
attenuated [1] 7/5
audit [4] 13/4 13/5 13/6 13/8
auditor [1] 12/17
auditors [2] 12/15 16/22
auditors' [1] 12/16
audits [1] 12/16
authoritative [1] 23/5
authority [2] 28/23 29/11
authorized [3] 29/14 29/14 36/11
available [1] 38/5
Avenue [1] 1/19
avoid [1] 39/6
avoiding [1] 36/6
aware [2] 20/17 42/9

**B**

B-275 [1] 2/12
back [6] 17/9 28/15 32/13 34/22 35/1
39/23
background [2] 6/6 7/17
bad [4] 9/13 14/21 23/19 38/23
balance [1] 22/5
balancing [1] 25/1
BARR [3] 1/22 21/3 33/21

Case 2:14-md-02592-EEF-MBN Document 12836-11 Filed 03/12/19 Page 45 of 53

**B**

barrier [1] 19/18
based [4] 17/16 17/17 24/7 35/2
basic [1] 23/16
basically [2] 5/4 32/16
Basin [1] 11/18
basis [4] 5/13 20/5 27/22 28/20
Bayer [6] 5/14 17/19 21/15 30/1 30/12 30/19
Baylen [1] 1/22
be [81]
Bear [1] 20/24
beautiful [1] 21/1
because [23] 4/21 5/16 8/7 9/9 10/17 11/20 12/12 15/6 15/22 16/11 21/4 22/23 24/3 25/25 26/6 27/5 33/12 34/20 35/15 37/2 37/7 38/2 38/10
become [1] 22/16
becomes [1] 25/2
been [9] 6/2 6/3 6/18 8/5 23/8 32/2 32/3 33/11 38/12
before [10] 1/10 4/4 10/17 27/13 28/12 29/9 31/2 41/5 41/8 41/9
begin [1] 33/1
begins [1] 33/2
being [5] 33/15 34/11 34/13 37/5 41/19
beliefs [1] 25/22
believe [11] 5/25 6/1 8/9 21/8 21/17 24/24 25/1 25/5 30/22 36/7 39/11
bellwether [2] 34/18 38/3
Benjamin [1] 1/14
best [3] 6/1 8/6 43/8
better [2] 23/22 32/7
between [6] 5/21 13/2 13/5 13/7 20/18 20/19
Biddle [1] 2/9
big [1] 15/22
bigger [1] 15/15
binding [2] 24/15 36/20
bit [2] 4/6 21/5
blank [1] 27/5
blanket [3] 27/22 28/3 28/17
blows [1] 34/13
body [3] 18/13 21/25 22/13
boils [1] 16/11
bonus [1] 6/9 15/3 15/4 15/5 15/8 15/10 15/13 15/14 15/15 15/20 16/8
bonuses [9] 4/22 9/23 10/6 14/23 14/23 14/25 15/18 15/19 15/23
booked [1] 31/10
both [3] 4/15 18/17 32/7
bought [1] 15/11
box [6] 32/12 34/13 35/5 35/19 39/4 40/9
boxes [1] 34/15
BP [1] 33/7
break [1] 7/14
BRIAN [6] 1/22 21/3 31/17 32/24 33/19 33/21
brief [4] 9/1 10/8 15/1 36/14
briefly [1] 31/24
briefs [1] 30/15
bring [9] 33/25 35/18 37/3 39/13 39/14 40/15 41/9 41/13 41/21
bringing [2] 36/6 36/23
broad [2] 5/13 21/19
broader [1] 17/16
brought [1] 41/24
bunch [2] 27/5 37/4
business [2] 14/22 16/6
but [30] 5/4 10/15 11/25 12/22 15/13 16/24 17/4 20/11 23/7 23/24 27/16
28/16 29/8 29/19 30/7 30/12 30/15 30/18 31/8 32/18 33/6 34/20 36/17 37/20 37/24 38/5 41/8 41/22 42/7 42/9 42/20

**C**

cabinet [1] 13/14
call [3] 19/14 30/22 31/5
called [3] 4/8 6/19 12/19
camera [30] 24/13 26/15 26/19 28/10 30/24 32/4 32/5 32/9 33/10 33/10 34/4 34/5 34/5 36/12 36/24 37/1 37/5 37/6 37/10 37/14 38/9 40/22 41/10 41/14 41/20 41/21 41/23 42/4 42/5 42/10
cameras [15] 33/9 33/25 34/4 34/6 35/13 36/11 36/23 37/3 40/7 40/10 40/17 40/20 41/2 41/3 41/23
Campus [1] 2/10
can [38] 4/5 5/11 11/6 13/17 13/22 14/15 16/19 16/22 17/2 17/9 19/3 20/13 20/20 22/11 22/11 22/12 23/10 25/4 25/20 25/23 26/12 27/22 28/9 28/10 28/25 29/15 29/21 30/11 30/19 30/24 31/1 34/13 38/22 39/20 41/9 41/15 42/9 42/22
can't [5] 13/23 16/12 26/6 37/20 39/24
cannot [3] 17/6 17/18 19/4
caring [1] 35/25
carried [1] 8/2
case [51]
case-by-case [1] 28/20
cases [27] 1/6 7/2 7/3 7/12 7/13 7/14 7/15 7/15 7/18 10/14 10/21 10/23 10/24 11/17 18/8 18/20 19/2 19/16 19/21 19/25 33/8 34/21 35/3 36/10 36/13 38/1 41/4
catch [2] 38/12 38/21
categories [6] 7/14 8/16 9/6 9/7 21/8 21/9
CCR [3] 2/12 43/5 43/12
central [1] 20/8
certain [5] 22/10 22/12 24/6 28/6 28/20
certainly [2] 22/4 22/17
CERTIFICATE [1] 43/4
certify [1] 43/7
chambers [1] 42/19
changing [2] 16/23 16/25
children [1] 21/1
chill [1] 14/11
chilling [2] 14/8 16/1
Chinese [1] 33/7
Circuit [8] 6/2 6/3 6/13 12/7 12/10 21/25 22/2 24/25
circumstances [2] 15/7 25/4
cite [1] 37/19
cited [8] 6/12 10/24 18/13 19/16 19/20 19/21 30/4 41/1
citizens [1] 17/23 17/24
civil [1] 6/22
classes [1] 22/12
clause [1] 10/2
clear [8] 11/24 18/5 18/8 18/11 20/10 21/4 22/14 27/20
clearly [5] 9/7 12/20 12/21 12/23 12/25
close [1] 12/13
closer [1] 12/13
collision [1] 7/20 10/20 11/19
collisions [1] 7/18
come [8] 7/24 17/9 21/22 24/4 36/1 36/3 37/17 38/2
comes [2] 16/2 20/2
comfortable [3] 24/10 24/11 24/18
comfortably [1] 14/21
coming [3] 8/20 29/2 29/4

comity [1] 18/16
comments [1] 11/2
commercialized [1] 10/11
common [1] 22/7
companies [1] 34/7
company [2] 8/13 23/15
compare [1] 10/19
compelling [6] 35/15 35/17 37/18 37/19 37/20 40/15
compensation [5] 6/9 9/19 10/6 20/7 20/11
competitive [1] 10/12
completely [1] 40/13
computer [2] 2/17 37/13
computer-aided [1] 2/17
conceded [1] 20/1
concerning [1] 4/10
concerns [1] 11/13
concluded [2] 18/23 19/4
conduct [2] 38/14 38/17
conducted [1] 13/8
confidential [2] 8/14 22/12
confidentiality [3] 19/3 19/5 19/11
confusing [1] 34/9
connected [2] 7/5 26/16
connection [6] 5/18 12/23 13/5 13/7 16/19 28/15
conscious [1] 5/16
consent [6] 9/3 9/3 9/10 22/20 25/16 36/16
consent-negotiated [1] 25/16
consider [5] 6/18 21/12 23/11 23/14 28/11
consideration [1] 30/15
considerations [1] 6/16
considered [2] 19/1 19/2
consistent [1] 37/2
consists [1] 4/9
Consolidated [1] 12/4
constitution [2] 17/22 18/25
constitutional [4] 18/5 18/7 19/14 19/15
consulting [1] 9/25
contained [1] 8/14
content [1] 26/1
contention [1] 10/11
contents [1] 13/7
contest [1] 20/3
contests [2] 30/4 30/14
context [2] 7/16 18/21
continues [1] 10/18
control [1] 17/25
controlling [1] 22/2
convene [1] 35/1
convince [1] 38/7
core [3] 18/7 20/12 27/6
corporate [1] 36/3
correct [1] 43/7
correspondence [1] 16/7
Corvettes [1] 15/12
cost [2] 39/18 41/25
costs [2] 33/24 39/8
costwise [1] 39/8
Coughlin [6] 6/13 6/25 8/20 10/22 12/7 21/24
could [12] 5/2 6/17 14/5 15/9 15/11 19/23 21/1 21/11 23/24 24/11 24/12 31/11
counsel [4] 36/23 38/10 38/21 38/22
countless [1] 35/21
country [2] 20/18 32/21
couple [2] 10/24 27/25
course [1] 41/21
court [38] 1/1 2/12 6/16 7/23 8/4 9/4

# C

court... [32] 13/1 13/5 13/9 15/1 16/18
17/11 17/17 18/14 18/25 22/24 24/21
28/10 29/22 32/18 32/20 33/3 34/19
34/23 37/23 38/2 38/3 38/6 38/6 41/8
41/9 41/12 42/8 42/8 42/24 43/5 43/6
43/13
courthouse [4] 6/4 11/7 33/6 33/17
courtroom [4] 15/17 32/8 34/18 36/1
courts [2] 6/18 22/24
covers [2] 10/16 10/16
create [1] 19/9
creating [2] 37/25 37/25
credibility [5] 5/5 21/10 21/12 21/23
26/12
credible [1] 26/14
criminal [1] 20/14
critical [3] 14/11 14/15 35/22
criticize [1] 9/16
cross [2] 34/20 39/1
cross-examining [1] 39/1
cross-noticing [1] 34/20
custodial [14] 4/8 4/9 4/15 19/6 21/18
26/23 27/3 27/11 27/18 27/21 27/23
28/1 30/8 30/10
cuter [1] 21/1

# D

damage [4] 14/18 14/19 14/20 14/21
Dan [1] 7/3
dangerous [1] 8/11
data [9] 18/3 18/18 20/17 25/8 25/10
25/21 26/2 27/14 30/9
date [1] 31/14
David [1] 1/14
DAVIS [1] 1/18
day [1] 31/11
DC [1] 2/7
deal [6] 7/15 7/18 19/11 25/2 30/19
30/20
dealing [5] 4/7 25/8 27/8 27/10 42/20
deals [1] 26/23
dealt [2] 18/20 25/6
decade [2] 10/16 10/17
decades [1] 18/4
decide [7] 6/4 8/7 35/2 35/3 37/22 38/3
42/14
decided [1] 7/22
decides [2] 17/15 35/9
decision [6] 14/24 18/15 24/14 24/17
28/21 29/23
decisions [3] 18/25 29/12 29/14
default [1] 18/11
defendant [1] 24/4
defendants [15] 2/2 2/6 2/9 5/6 5/24
17/17 17/20 18/22 27/2 33/8 33/25
35/14 37/17 42/3 42/21
defender [2] 23/8 23/12
defense [5] 34/6 34/6 36/23 40/23 40/24
defensively [1] 14/6
define [1] 8/8
defined [1] 9/7
degree [1] 19/5
demeanor [1] 14/2
denying [1] 28/14
department [1] 4/14
depo [1] 42/20
deposition [16] 21/20 28/15 29/2 29/9
29/20 29/21 34/4 35/9 35/23 36/13
37/19 38/25 39/2 39/21 39/22 40/12
depositions [14] 16/4 16/5 32/5 34/20
34/24 37/4 38/14 38/16 38/18 39/12

40/8 40/20 40/21 41/4
described [3] 9/9 19/12 19/17
description [1] 6/8
designate [1] 35/11
designation [1] 39/23
designations [1] 39/21
details [1] 23/23
determination [2] 17/24 33/4
determine [2] 21/12 26/13
determined [1] 7/25
determining [1] 23/14
development [1] 4/24
dictate [1] 29/15
did [9] 7/24 13/6 15/21 16/25 17/1 20/3
21/25 24/20 37/4
didn't [5] 5/2 16/24 30/7 30/15 30/17
difference [1] 13/2 15/9
differences [1] 20/17
different [4] 19/12 27/15 39/24 40/11
differentiated [1] 13/4
differently [1] 20/6
directly [4] 7/4 7/10 7/21 10/10
disagree [4] 14/24 14/24 20/24 28/25
disciplined [1] 14/16
disclose [2] 20/15 29/13
disclosed [2] 5/12 22/12
disclosure [8] 15/2 18/11 18/12 18/17
18/23 19/2 21/14 23/6
disclosures [1] 20/11
discoverable [8] 4/16 4/18 21/13 22/3
27/22 27/23 28/4 28/5
discovery [10] 11/11 19/22 22/6 22/8
26/11 26/14 28/17 30/22 31/5 39/9
discrete [2] 7/9 13/3
discrimination [1] 11/3
discussed [2] 12/1 27/10
discussion [3] 8/17 18/10 19/7
disparate [5] 7/4 7/7 7/15 10/19 11/4
dispute [2] 5/21 37/25
disputes [1] 20/18
disruptive [1] 40/22
distinction [1] 19/8
district [19] 1/1 1/2 1/11 6/18 6/24 7/12
7/13 7/14 10/23 10/25 11/18 12/8 12/12
12/18 12/24 13/12 33/16 43/6 43/6
divorces [1] 5/7
do [62]
doctor [4] 35/22 35/24 40/8 40/11
doctors' [1] 40/6
document [1] 34/10
documents [10] 4/9 9/6 16/3 21/8 25/15
26/24 34/12 37/7 37/11 37/14
does [3] 27/11 30/2 30/12
doesn't [7] 15/12 20/5 29/13 30/12 34/23
40/1 42/7
doing [9] 5/2 12/15 23/17 29/15 32/2
37/24 39/17 40/5 42/11
don't [26] 6/4 7/22 12/21 15/7 15/7 15/7
15/17 15/23 15/23 20/13 23/24 24/20
25/5 25/23 27/13 28/2 29/24 34/21 36/7
36/13 37/5 37/12 37/15 37/22 38/4
42/19
done [13] 5/3 17/7 22/5 22/23 23/20
23/20 33/8 34/11 36/10 36/11 40/2 40/5
40/25
Doug [1] 8/2
down [8] 7/14 8/20 16/11 25/24 36/4
37/25 38/6 41/11
Doyle [4] 2/12 43/5 43/12 43/12
Dr. [2] 23/3 23/4
Dr. Alise [1] 23/3
Dr. Reicin [1] 23/4

Dredging [1] 11/23
Drilling [1] 11/8
Drive [1] 2/10
drug [9] 4/24 4/25 7/21 11/21 11/22 12/1
23/13 23/23 24/1
Drywall [2] 8/5 33/7
during [1] 32/16

# E

e-mail [1] 25/25
e-mails [1] 16/6
EASTERN [12] 1/2 6/24 7/11 7/13 10/22
10/25 12/8 12/12 12/18 12/24 13/12
43/6
easy [1] 35/16
Eckstein [1] 11/17
effect [3] 13/16 14/8 16/1
effective [1] 41/7
effects [1] 8/22
efficiency [1] 33/24
effort [2] 39/6 40/1
eight [3] 9/6 9/24 39/13
either [2] 21/22 31/13
ELDON [1] 1/10
ELMOs [1] 37/9
embarrass [3] 14/13 14/17 23/18
embarrassed [1] 13/22
embarrassing [2] 5/11 16/1
emphasize [1] 20/13
employed [1] 33/3
employee [21] 4/10 4/13 5/2 6/9 7/16
9/16 14/11 14/15 14/16 14/18 14/21
15/4 15/5 15/8 15/9 15/11 15/24 15/24
16/9 21/15 25/25
employee's [3] 4/11 9/13 14/19
employees [7] 8/13 9/25 11/12 16/13
16/15 17/17 18/22
employer [2] 4/14 4/14
employers [2] 18/1 20/15
employment [6] 6/13 7/1 7/2 7/3 7/15
16/20
enacted [1] 18/4
end [2] 15/18 34/15
endeavor [1] 30/23
enough [5] 20/13 26/15 26/16 35/24
39/17
Entergy [1] 11/1
entitled [1] 43/9
environment [1] 10/12
equal [2] 11/6 11/8
equipment [1] 39/14
ESI [1] 25/19
ESQ [6] 1/15 1/18 1/22 2/3 2/6 2/9
essentially [1] 8/3
establish [2] 16/19 28/9
established [1] 12/18
establishes [2] 18/15 25/19
evaluate [1] 14/6
evaluation [6] 10/4 10/4 14/5 14/7 14/12
16/9
evaluations [4] 6/10 6/10 6/11 14/4
even [4] 19/12 19/19 20/11 34/17
event [2] 5/3 12/5
events [1] 27/11
ever [6] 21/15 23/20 23/20 33/8 37/5
37/23
every [3] 21/15 33/4 38/15
everything [3] 15/11 26/12 29/18
evidence [9] 16/2 16/8 16/9 21/11 34/16
34/17 35/4 35/6 37/21
Evra [2] 36/16 40/19
exact [1] 33/25
Exactly [1] 32/17

**E**

exam [1]  5/9
examiner [2]  34/3 36/25
examining [2]  34/5 39/1
example [4]  19/3 23/1 25/24 39/10
exceptions [2]  33/18
excess [1]  21/18
exclude [1]  30/9
exercise [1]  41/21
exhibits [1]  33/11
exist [1]  19/5
expect [1]  13/18
expected [1]  38/17
expecting [1]  39/3
expedition [1]  23/18
expeditions [1]  13/11
expense [3]  16/10 39/25 41/14
expensive [1]  39/16
expert [4]  17/22 19/18 19/22 20/9
explain [1]  19/10
explained [1]  17/21
explaining [1]  23/23
explicitly [1]  20/9
explode [1]  41/25
exploding [1]  39/18
exposed [1]  14/17
express [1]  39/4
expressed [1]  26/2
extra [1]  40/22

**F**

face [3]  14/1 34/22 34/23
faces [1]  34/8
facilitate [1]  35/3
facilitating [1]  36/6
fact [2]  19/25 32/11
factors [2]  6/18 22/2
facts [1]  17/3
failing [1]  5/9
failure [1]  16/24
fair [1]  14/3
fairly [2]  9/8 14/20
FALLON [1]  1/10
familiar [3]  10/14 16/6 18/16
FCRR [2]  2/12 43/5 43/12
FDA [1]  16/7
February [1]  29/2
February 10 [1]  29/2
federal [5]  32/3 32/21 33/2 33/23 34/22
feed [1]  39/14
feeds [1]  38/5
feel [2]  5/3 13/22
felt [1]  11/20
few [3]  21/4 32/25 33/17
Fifteenth [1]  2/7
Fifth [8]  6/2 6/3 6/13 12/7 12/10 21/25 22/2 24/25
Fifth Circuit [8]  6/2 6/3 6/13 12/7 12/10 21/25 22/2 24/25
file [22]  4/8 4/9 4/9 4/12 4/12 4/13 4/19 4/20 5/7 11/21 11/22 13/3 13/14 16/20 23/7 23/21 24/5 24/15 25/5 27/3 29/8 29/14
files [61]
film [1]  41/10
find [1]  23/19
fine [1]  31/13
firm [1]  7/19
first [3]  9/7 9/10 29/2
fishing [2]  13/11 23/18
five [2]  9/8 14/7
flesh [1]  4/5

fleshes [1]  18/4
flinched [1]  41/2
Florida [1]  1/23
fly [1]  39/14
focus [2]  10/22 33/10
focused [6]  24/22 34/14 35/4 35/6 40/22 42/14
focuses [1]  33/10
follow [1]  38/16
following [1]  25/15
follows [1]  11/10
footnote [1]  9/1
foregoing [1]  43/7
foreign [1]  18/17
format [1]  25/19
former [3]  6/14 7/2 9/25
forth [1]  32/13
found [7]  11/3 11/8 11/21 18/1 20/2 23/7 26/24
four [5]  9/24 39/11 39/24 40/7 40/10
frame [1]  10/18
franchise [1]  23/9
Frankenhauser [8]  6/20 6/22 7/8 8/21 12/6 12/9 12/10 13/2
Frankly [1]  41/6
friend [1]  8/4
Fritchie [1]  2/2
front [2]  36/5 38/4
full [1]  23/6
fundamental [1]  13/10
further [2]  25/24 42/16
future [1]  37/25

**G**

Gainsburgh [1]  1/14
general [4]  5/13 13/10 13/13 18/18
generally [1]  6/8
generated [3]  4/10 4/12 4/13
George [1]  11/1
GERALD [1]  1/15
German [33]  5/16 5/20 17/17 17/19 17/22 17/22 17/23 17/24 18/8 18/8 18/11 18/22 18/22 19/14 19/17 19/24 20/8 20/9 20/11 20/14 24/23 24/23 25/3 25/3 25/8 25/10 25/25 27/14 30/1 30/3 30/5 30/12 30/13
Germans [1]  20/20
Germany [3]  18/3 18/24 20/18
get [19]  4/4 8/23 8/23 12/16 13/18 14/13 14/16 15/20 16/12 16/21 17/3 17/7 17/8 19/23 26/12 27/15 30/23 31/1 40/10
gets [2]  12/13 32/6
getting [3]  5/8 15/14 16/10 23/11
give [8]  16/13 16/14 17/4 21/1 24/8 30/8 30/11 39/9
given [5]  4/22 11/25 26/4 28/10 29/25
gives [2]  41/20 42/6
Glickstein [1]  8/4
glued [1]  32/13
go [7]  7/12 22/21 24/5 32/13 34/23 38/6 39/23
goal [1]  38/23
going [45]
good [8]  6/3 9/13 14/21 17/13 23/1 23/20 31/12 35/24
got [16]  11/9 15/21 15/22 36/18
gotten [1]  19/22
govern [1]  18/17
Grain [1]  12/4
great [1]  15/22
grist [1]  7/6
group [1]  21/16
guess [2]  12/11 40/24

guidance [1]  29/1
guide [1]  19/16
guided [1]  6/17
guiding [1]  6/12
guru [1]  11/7

**H**

had [8]  6/4 8/7 19/19 21/15 33/9 36/18 37/10 40/20
hadn't [1]  42/14
half [1]  10/17
hand [1]  24/5
handcuff [1]  38/11
happen [1]  13/19
happened [5]  12/11 16/17 16/18 33/16 33/17
happening [1]  33/15
happens [2]  17/25 30/10
happy [2]  24/14 26/8
harassment [1]  11/5
hard [3]  8/8 26/18 40/10
Harry [2]  6/14 10/21
has [23]  5/4 5/10 6/2 6/3 6/4 7/22 8/5 12/22 18/3 21/10 22/16 27/1 28/22 29/10 29/11 29/15 30/18 32/20 33/17 34/22 34/23 35/10 38/13
hasten [1]  4/24
hate [1]  41/16
have [104]
haven't [4]  17/7 30/3 30/10 42/16
having [2]  31/3 39/20
he [17]  11/3 11/7 11/8 11/9 11/9 11/11 11/21 15/22 29/5 29/10 29/11 29/13 34/18 34/23 34/23 35/5 35/25
head [1]  32/11
heads [1]  32/13
health [2]  20/10 25/22
hear [4]  5/22 20/23 26/10 26/21
heard [2]  30/3 39/2
hearing [1]  26/5
heartland [1]  19/14
held [1]  23/4
help [1]  41/18
her [5]  9/17 23/7 23/11 36/9 36/14
here [18]  4/7 8/2 8/7 8/8 11/24 12/24 18/19 19/15 19/19 24/22 25/2 25/8 32/1 33/15 34/7 34/18 36/15 41/24
here's [1]  11/13
Herman [2]  1/18 1/18
Higbee [2]  7/25 41/5
highly [2]  10/10 10/12
him [3]  24/20 32/25 35/25
his [10]  8/2 9/16 29/10 29/13 34/22 34/24 35/23 35/25 35/25 40/12
histories [1]  23/19
history [1]  33/6
hit [1]  15/22
HOFFMAN [2]  2/6 17/11
Hollywood [2]  33/1 33/14
honestly [1]  14/6
Honor [44]
HONORABLE [1]  1/10
hope [2]  9/17 38/21
Hopefully [2]  33/21 42/21
hopes [1]  14/15
hotel [1]  39/15
hour [2]  38/24 38/24
hours [1]  39/1
how [12]  15/17 19/18 19/23 20/13 23/1 25/2 26/18 37/16 37/19 38/16 38/17 41/25
however [1]  28/4
huge [1]  19/9

**H**

human [1] 4/14
humiliating [1] 14/5
hundreds [1] 40/25

**I**

I'll [2] 42/14 42/14
I'm [18] 5/25 7/12 8/16 9/21 22/19 23/3 24/19 26/8 28/16 28/17 29/23 30/2 30/18 31/6 31/23 33/19 41/15 42/9
I've [1] 40/8
idea [1] 19/2
identifies [1] 25/25
identify [1] 27/12
if [44]
imagine [2] 14/7 20/20
impact [1] 8/22
importance [1] 18/24
important [4] 6/21 20/14 20/20 24/21
importantly [2] 6/16 9/16
imposes [1] 20/14
impossible [1] 39/22
improper [6] 5/13 8/12 13/14 15/15 15/15 28/2
improperly [1] 10/13
improved [1] 14/16
improvements [1] 9/18
in [190]
in camera [4] 24/13 26/15 28/10 30/24
inappropriate [1] 18/23
incentives [1] 9/22
incident [5] 6/25 7/9 7/21 11/24 13/3
included [1] 17/21
includes [1] 17/23
incorporated [1] 12/7
INDEX [1] 3/1
indifferent [1] 9/14
individual [5] 4/23 5/11 11/12 29/3 42/11
individuals [3] 11/14 25/25 28/20
inefficiencies [1] 42/1
inefficiency [1] 40/13
inexpensive [1] 33/4
information [34] 6/9 8/6 10/4 10/10 13/18 15/3 17/9 17/18 17/25 18/6 18/10 18/17 19/1 19/9 20/7 20/10 20/16 22/16 23/10 24/7 24/9 24/12 25/9 25/10 25/15 25/21 26/5 27/2 27/6 27/12 27/21 29/20 30/23 37/15
informational [1] 17/24
informative [1] 32/10
insist [1] 40/5
instances [1] 28/6
instructed [2] 6/18 38/15
intended [1] 27/15
interest [3] 5/1 22/8 22/9
interesting [2] 32/10 35/17
interestingly [1] 7/17
interests [2] 22/6 22/6
interferes [1] 30/4
intimidate [2] 13/21 23/17
into [9] 4/25 7/14 13/3 13/24 30/10 30/14 36/1 38/2 39/4
Intracoastal [1] 11/19
introduce [1] 32/25
invade [1] 8/12
invasion [3] 8/24 14/10 15/25
investigation [1] 7/20
investigative [3] 6/24 7/9 13/3
involved [8] 4/11 6/23 7/20 9/19 11/14 12/15 22/21 32/3
involving [5] 7/4 7/9 8/10 12/4 15/8
Irwin [6] 2/2 2/3 5/23 20/1 21/7 24/19

is [144]
isn't [3] 3/3
issue [29] 4/5 8/8 11/8 11/10 17/2 17/14 17/16 18/14 18/19 18/21 19/20 20/4 20/14 20/20 21/6 21/11 21/23 22/20 24/9 24/23 25/6 27/10 28/2 29/22 30/11 36/13 37/24 41/8 41/9
issues [16] 5/17 7/5 7/6 7/6 10/4 16/23 23/6 24/20 25/3 26/11 27/25 27/25 28/1 28/12 38/1 42/19
it [110]
it's [30] 5/12 6/21 7/11 11/11 12/10 12/24 14/1 14/10 14/16 20/10 22/7 24/7 26/16 27/20 33/15 34/9 35/8 35/15 36/22 36/23 36/25 38/3 39/16 40/1 40/9 40/13 40/21 40/21 40/22 41/23
its [3] 9/4 18/3 18/24

**J**

JAMES [1] 2/3
janitor [1] 29/12
Janssen [1] 21/15
January [4] 1/6 4/2 31/15 31/16
January 26 [1] 31/15
Jefferson [1] 6/15
Jersey [2] 2/10 8/1
Jim [1] 5/23
job [1] 29/10
judge [12] 1/11 7/25 9/2 9/10 11/10 11/19 17/8 32/6 38/7 40/20 41/2 41/5
Judge Higbee [2] 7/25 41/5
Judge Moss' [1] 9/10
judges [4] 32/20 32/21 41/12 41/12
juror [1] 35/2
jurors [2] 32/12 34/25
jury [17] 14/2 21/11 21/22 21/23 23/10 23/13 32/6 34/6 34/13 35/17 36/1 36/5 38/4 38/22 39/5 40/9 41/5
just [18] 12/9 16/12 16/24 19/18 20/10 21/2 22/21 24/5 27/17 29/1 32/11 32/19 32/25 33/4 40/1 41/23 41/24 41/25
justification [1] 15/3
justified [1] 7/1
justify [1] 15/2

**K**

Katz [1] 1/18
Katz' [1] 40/20
Kaye [1] 2/6
keep [1] 17/9
key [1] 23/4
kind [6] 10/14 13/17 19/1 19/21 20/15 20/17
kinds [1] 18/5
know [18] 4/21 6/21 7/3 13/19 15/4 15/7 15/7 15/7 15/17 18/15 23/24 26/18 29/19 33/5 35/1 35/21 36/2 37/22
knowledge [1] 33/16
Knowles [1] 11/1
knows [1] 36/19

**L**

label [2] 16/23 16/25
laid [1] 21/7 22/24
language [2] 26/4 41/19 41/19 41/25 42/2
largely [2] 19/6 19/25
last [3] 9/24 32/3 33/22
latch [1] 35/2
later [2] 12/12 42/22
law [35] 5/16 5/20 8/20 17/6 17/17 18/8 18/11 18/13 19/14 19/17 19/24 20/9 20/11 20/14 21/25 22/2 22/13 24/24

25/3 25/3 25/11 30/3 30/5 30/13 37/18 37/16 37/18 38/8 18/17 27/14
lawyer [8] 13/22 15/22 34/5 34/6 34/16 34/17 34/22 35/5
lawyers [4] 15/17 34/6 35/13 40/24
layer [1] 30/2
learned [1] 7/18
least [1] 41/4
leave [3] 35/25 35/25 36/3
Lee [1] 21/24
Lee's [2] 6/14 10/21
left [1] 29/21
legal [2] 6/7 17/22 24/20
legally [1] 8/12
Lenihan [1] 11/5
Lenny [1] 33/23
LEONARD [1] 1/18
less [2] 11/7 26/9
let [7] 4/4 20/23 26/21 27/17 29/25 41/17 42/13
Let's [2] 10/22 31/8
Levaquin [2] 36/16 41/1 41/4 41/5
Levin [1] 1/21
lexicon [1] 13/12
liability [3] 1/5 8/9 32/2
life [2] 25/22 25/22
light [1] 38/23
like [16] 11/26 16/21 16/23 17/1 17/1 18/10 18/10 18/18 20/11 21/4 23/22 25/16 25/21 29/7 33/8 38/12 38/25
likely [3] 13/17 21/21 27/21
limitation [1] 12/3
limitations [2] 19/12 22/4
limited [2] 22/1 41/20
line [1] 28/22
litigated [1] 22/20
litigation [14] 1/5 4/17 5/11 10/1 13/17 14/13 18/22 20/3 20/3 22/8 22/9 23/2 33/7 41/1
little [8] 4/6 6/6 7/12 20/4 21/5 26/3 35/5 40/9
live [7] 21/22 35/18 35/21 35/24 36/1 36/6 37/17
LLC [3] 1/15 1/18 2/3
LLLP [1] 2/6
LLP [1] 2/9
logically [1] 14/10
look [15] 12/11 17/10 23/25 24/15 25/7 25/13 29/19 29/25 30/13 32/9 35/8 38/5 41/24 42/2 42/13
looked [2] 11/21 41/18
looking [9] 6/9 12/18 14/19 21/8 21/17 21/20 23/21 29/9 32/15
looks [1] 25/16
lot [4] 24/20 34/8 36/11 40/8
LOUISIANA [7] 1/2 1/16 1/19 2/4 2/13 13/12 43/7
love [1] 35/18
lucky [1] 15/21
Lund [1] 7/3

**M**

M-O-Y-E [1] 29/5
M/V Basin [1] 11/18
made [4] 15/4 15/5 15/9 22/13
magistrate [5] 11/1 11/6 11/23 12/1 12/3
Magistrate Knowles [1] 11/1
mail [1] 25/25
mails [1] 16/6
Maintenance [1] 11/23
major [2] 34/7 40/4
make [9] 18/8 20/15 21/2 21/4 29/9 29/14 29/23 32/25 33/20

**M**

makers [1]  28/21
makes [3]  18/5 18/11 20/9
making [2]  29/11 39/21
manner [1]  35/10
many [4]  7/19 15/12 15/17 15/18
Marine [1]  11/17
mark [2]  22/11 25/9
market [8]  4/25 8/11 10/12 10/15 10/18
 13/13 14/22 16/14
marketed [1]  10/13
marketing [4]  8/12 10/16 13/14 29/6
Marvin [1]  8/2
mass [3]  9/3 31/6 36/11
massive [1]  10/19
material [4]  10/7 22/11 24/1 29/25
materials [1]  8/13
matter [5]  12/1 20/16 29/22 33/16 43/9
matters [1]  31/22
maximize [1]  33/24
may [23]  4/24 5/7 5/8 5/8 8/7 8/15 13/24
 14/2 28/4 28/5 28/5 28/18 28/20 28/21
 29/19 33/10 34/18 36/18 36/24 36/25
 38/3 38/11 39/4
maybe [10]  10/16 15/11 15/15 15/21
 17/3 17/8 21/5 36/18 38/22 39/4
MD [1]  1/4
MDL [4]  8/10 36/11 40/20 40/20
MDLs [4]  6/5 7/23 22/17 32/2
me [19]  4/4 8/4 11/24 14/13 14/17 16/13
 16/14 17/5 20/23 20/24 22/22 26/21
 27/17 28/2 29/13 29/25 29/25 37/5
 42/13
meager [1]  15/8
mean [2]  15/11 29/13
meaningless [1]  15/6
means [1]  29/19
mechanical [1]  2/16
Meche [1]  11/23
medical [2]  23/19 40/6
medicine [2]  8/10 14/22
memorandum [1]  10/8
mentioned [3]  20/1 27/17 42/18
Merck [2]  23/4 23/5
method [1]  35/11
Methvin [1]  11/19
Meunier [2]  1/14 1/15
might [3]  14/14 18/10 26/24
millions [2]  16/2 16/3
Minaldi [1]  11/10
minimize [1]  33/24
Minnesota [1]  41/3
minutes [1]  26/9
misbehave [1]  38/11
misbehaved [1]  38/13
Mississippi [1]  10/20
mistake [1]  20/15
Mitchell [1]  1/21
mock [1]  34/25
moment [2]  6/1 10/22
moments [1]  38/21
monitoring [1]  17/1
Moore [1]  2/3
more [17]  9/16 11/7 15/15 17/9 24/14
 28/8 28/8 28/21 28/22 29/15 30/23
 32/10 32/10 35/15 37/18 37/19 42/17
morning [1]  17/13
Moss' [2]  9/2 9/10
most [4]  10/3 34/17 40/8 40/19
motions [1]  42/17
mountaintop [1]  19/24
move [1]  40/11

moves [1]  28/18
moving [1]  2/18
Mr. [5]  17/11 20/1 21/7 24/19 29/5
Mr. Hoffman [1]  17/11
Mr. Irwin [1]  20/1 21/7 24/19
Mr. Moye [1]  29/5
Ms. [2]  36/9 36/14
Ms. Sharko [2]  36/9 36/14
much [9]  20/22 21/16 24/19 26/20 31/19
 31/20 32/10 32/10 42/24
multiple [1]  41/23
my [17]  5/21 6/1 7/2 7/19 8/4 10/3 21/2
 22/19 24/7 28/9 29/20 31/2 33/16 33/22
 34/21 34/23 43/8
myself [2]  14/12 36/12

**N**

narrow [1]  22/1
narrower [1]  21/16
narrowly [2]  24/9 24/22
nations [1]  20/19
naturally [1]  14/10
nature [1]  11/25
necessarily [1]  42/7
necessary [2]  5/1 42/22
need [8]  16/17 16/20 17/7 23/22 28/8
 39/6 40/1 42/23
needed [1]  41/22
needs [2]  19/1 22/5
negate [1]  30/3
negligence [1]  12/17
negligent [3]  12/15 16/13 17/4
negligently [1]  13/8
negotiated [5]  25/7 25/16 26/4 26/6
 36/17
never [6]  8/15 13/21 33/15 35/1 36/12
 39/2
New [7]  1/16 1/19 2/4 2/10 2/13 8/1 36/4
New Jersey [1]  8/1
New Orleans [1]  36/4
next [3]  30/22 32/18 42/22
no [11]  11/22 19/21 19/21 21/24 24/4
 25/4 28/22 28/23 36/10 38/12 41/22
nondisparagement [1]  10/2
nonparty [1]  11/12
nonprivileged [1]  26/1
Norplant [1]  36/22
not [74]
nothing [6]  5/10 15/11 16/16 19/20
 30/18 35/12
notice [4]  12/10 35/11 42/13 42/14
noticed [3]  9/2 19/19 30/23
noticing [4]  21/20 34/20 35/9 37/3
now [15]  10/7 22/4 23/17 24/23 25/16
 26/5 30/1 34/8 35/14 36/14 37/16 39/8
 39/17 39/20 39/24
number [5]  9/12 9/15 9/19 18/20 26/15
NW [1]  2/7

**O**

O'Keefe [1]  1/19
object [2]  20/25 40/25
obscure [1]  37/21
Obviously [1]  29/7
occasion [1]  33/9
occasionally [1]  14/22
office [2]  6/14 35/25
offices [3]  36/3 40/6 40/9
Official [3]  2/12 43/5 43/13
often [2]  7/6 15/19
Oil [1]  12/2
okay [4]  31/1 31/17 32/23 42/24
old [2]  7/19 14/7

on [74]
once [1]  18/13
one [6]  18/6 19/3 19/10 18/11
 18/18 20/20 20/24 21/10 27/25 29/1
 33/8 33/9 33/10 33/22 39/17 40/22 41/9
 41/20 41/23
ones [1]  21/1
only [10]  9/25 10/8 14/9 22/12 24/8
 28/15 34/16 41/3 42/10 42/23
onto [1]  10/17
open [5]  13/11 13/14 17/9 23/25 29/21
operating [1]  12/5
opinion [2]  11/2 31/2
opinions [1]  25/23
opportunity [2]  32/19 42/7
oppose [1]  40/17
opposing [1]  35/13
opposite [3]  30/5 32/23 34/1
option [3]  32/20 32/22 41/20
or [50]
ORAL [1]  1/10 3/9
order [20]  8/2 9/3 9/3 9/10 17/18 20/2
 22/15 22/21 25/13 25/16 25/19 26/13
 28/3 36/15 36/16 36/16 36/17 36/19
 36/21 36/22
ordered [1]  8/1
orders [14]  19/3 19/3 19/5 19/10 19/11
 19/21 22/10 25/7 26/22 27/8 27/13
 36/15 36/16 41/3
Orleans [5]  1/16 1/19 2/4 2/13 36/4
Ortho [2]  36/16 40/19
Ortho-Evra [2]  36/16 40/19
other [8]  4/8 5/4 9/8 20/23 32/21 35/3
 35/10 36/21
others [1]  9/21 10/25
otherwise [1]  10/13
ought [5]  27/16 28/3 28/10 28/14 29/13
our [22]  6/2 6/14 8/6 10/22 12/7 12/13
 12/23 13/12 13/20 14/18 15/18 16/5
 17/21 19/7 20/8 20/18 21/5 23/15 24/2
 35/19 39/25 41/14
out [22]  4/5 6/19 8/23 8/23 13/18 18/4
 19/8 19/16 21/7 21/25 22/24 23/4 23/19
 24/4 24/21 25/11 31/1 33/23 35/7 36/14
 36/21 39/23
over [16]  5/15 5/16 5/18 5/19 8/2 17/25
 19/10 19/23 26/4 28/13 28/13 28/14
 29/25 33/19 39/10 39/14
overcome [1]  22/9
overlap [1]  39/12
overstating [1]  21/5
overwhelming [2]  18/24 19/18

**P**

P.A [1]  1/21
package [1]  34/21
page [3]  3/2 9/1 10/9
page 14 [1]  10/9
pages [2]  16/3 27/5
paid [1]  4/23
Papantonio [1]  1/21
papers [2]  17/21 19/13
paragraph [2]  14/25 25/14
paragraph 8 [1]  25/14
parallel [1]  8/3
Parish [1]  6/15
Park [1]  2/10
parliament [1]  18/4
part [2]  22/13 25/20 41/2
particular [2]  23/23 25/14 32/6
particularity [3]  28/8 28/11 28/19
particularized [1]  29/16
particularly [4]  4/11 14/4 14/7 40/14
parties [7]  4/19 5/22 11/25 27/20 28/16

**P**

parties... [2] 28/25 33/3
partner [1] 7/3
party [4] 35/9 35/10 35/13 37/3
patients [1] 35/25
pay [3] 11/6 11/8 39/14
paying [1] 41/22
pays [1] 40/23
pedigree [1] 9/5
Pennsylvania [4] 6/19 6/24 12/9 12/24
Pensacola [1] 1/23
people [15] 8/2 13/6 13/24 16/1 16/4
 16/5 21/17 21/19 21/21 21/21 22/13
 22/19 24/1 36/3 37/8
people's [1] 23/19
percent [2] 15/4 15/5
performance [5] 9/12 9/13 9/17 20/7
 23/12
perhaps [3] 5/2 10/16 41/18
periods [1] 26/5
permission [1] 32/18
person [6] 15/10 29/6 29/12 29/14 36/6
 38/15
person's [1] 22/25
personal [10] 5/7 19/9 20/10 25/10
 25/21 26/2 27/2 27/6 27/12 30/9
personnel [47]
pharmaceutical [1] 34/7
Philadelphia [1] 9/4
philosophical [1] 25/22
phrase [1] 11/10
pieces [2] 24/1 24/6
pile [1] 16/8
place [3] 23/14 29/12 40/12
plaintiff [1] 15/22
plaintiffs [22] 1/14 1/18 1/21 4/20 8/18
 8/23 10/24 18/6 19/19 19/25 20/3 21/3
 28/8 30/4 36/7 36/17 36/19 37/15 38/13
 39/20 40/23 41/20
plaintiffs' [6] 10/11 19/13 38/10 38/19
 38/21 38/22
plans [1] 16/7
play [2] 4/25 39/24
played [1] 21/22 37/23
please [1] 4/3
pled [1] 26/15
plus [1] 6/9
point [12] 18/8 20/2 20/9 21/18 21/25
 22/17 24/2 24/4 24/21 29/1 29/24 40/4
pointed [1] 19/6
pointing [1] 19/8
points [3] 33/23 36/14 36/21
police [6/23]
policy [1] 29/15
political [1] 25/23
Pool [1] 33/7
portions [1] 28/14
Poseidon [1] 12/2
position [11] 4/20 4/24 5/6 5/14 13/25
 21/6 29/16 30/5 30/6 30/7 30/17
positive [2] 11/21 23/12
possible [1] 31/5
possibly [1] 34/6
postemployment [1] 9/25
power [2] 28/23 29/15
powerful [2] 17/25 18/11
PowerPoints [1] 16/6
Poydras [3] 1/16 2/4 2/12
PPA [2] 36/22 36/25
practice [1] 36/12
Pradaxa [3] 14/24 22/18 22/24
praise [1] 9/17

precedent [1] 22/1
preceded [1] ...
preference [2] 35/19 35/20
prejudicial [1] 36/7
prescribing [1] 35/22
present [2] 14/1 17/2
presentation [7] 32/16 35/16 35/17
 37/10 37/14 37/21 40/15
presented [1] 21/13
presents [1] 11/12
preserve [1] 32/19
presumes [1] 15/13
presumption [1] 15/20
pretty [1] 34/9
prevent [1] 5/17
pride [2] 11/18 14/20
principle [1] 18/16
privacy [13] 5/17 8/12 8/22 11/13 14/10
 16/1 19/24 22/6 22/9 25/9 27/14 27/25
 28/12
private [2] 5/19 13/20
privileges [1] 20/12
probably [2] 9/16 27/16
problem [3] 19/10 40/15 40/21
problems [1] 38/18
proceed [1] 31/4
proceeding [1] 33/5
proceedings [5] 2/16 4/1 8/4 43/2 43/9
process [5] 8/3 14/8 21/19 21/19 36/5
Proctor [1] 1/21
produce [2] 12/21 24/12
produced [12] 6/15 11/1 11/9 11/22
 22/17 22/17 22/18 22/18 22/19 24/25
 26/1 26/6
producible [1] 11/20
producing [1] 16/4
product [2] 8/9 32/2
production [14] 6/17 7/1 7/16 7/21 8/13
 13/15 13/16 13/18 13/19 15/2 17/18
 19/18 25/19 27/13
productivity [2] 15/19 15/20
PRODUCTS [1] 1/5
professionalism [1] 38/16
prohibition [1] 19/1
properly [1] 14/16
proportionality [1] 28/12
proposal [1] 20/1
proposed [1] 41/19
proposing [3] 34/2 34/4 39/12
proposition [1] 15/23
Propulsid [5] 7/24 7/24 33/6 36/21 36/25
protected [3] 20/12 25/10 25/11
protection [5] 18/3 18/7 18/18 19/4
 20/17
protections [2] 19/15 27/14
protective [5] 19/3 19/22 22/10 22/15
 25/7
protocol [1] 42/20
prove [1] 15/24
provide [1] 25/4
providing [1] 23/6
provision [2] 25/14 27/1
provisions [1] 19/5
PTO [10] 25/8 25/8 25/18 25/18 25/20
 26/23 27/1 27/3 27/7 27/11
PTO 12 [2] 25/8 26/23
PTO 20 [8] 25/8 25/18 25/18 25/20 27/1
 27/3 27/7 27/11
purely [1] 21/19
purpose [3] 33/2 33/11 33/12
Pursuant [1] 1/21
put [10] 4/25 13/11 13/24 22/4 22/15
 34/21 35/13 38/9 38/22 39/15

**Q**

question [10] 5/25 6/2 6/6 6/7 7/23 8/7
 8/9 25/2 41/22 42/6
questioner [9] 32/4 32/7 32/14 36/24
 40/22 41/10 42/5 42/6 42/9
questioning [1] 37/6
questions [2] 26/8 36/4
quick [1] 17/14
quickly [1] 7/13
quoted [1] 14/25

**R**

race [1] 11/2
Rafferty [1] 1/21
raise [1] 28/2
raised [1] 8/5
raises [1] 27/25
rapidly [1] 10/11
rare [1] 18/9
rarely [1] 38/8
rather [1] 19/9
RE [1] 1/4
reaching [1] 39/4
read [3] 8/7 25/24 36/22
ready [1] 31/23
real [2] 16/2 16/8
reality [1] 32/8
really [6] 24/22 26/7 32/24 34/13 38/9
 38/20
reason [1] 33/11 36/17
reasonable [1] 16/19
reasons [5] 5/4 9/22 10/1 26/2 40/17
Reath [1] 2/9
recall [1] 37/5
received [1] 4/10
recent [1] 19/25
recently [1] 33/5
recess [1] 42/25
recognized [1] 13/1
record [7] 33/12 35/10 37/4 37/5 37/10
 37/13 43/9
recorded [2] 2/16 33/13
recording [2] 35/12 37/7
records [1] 25/15
recreate [1] 32/7
recreates [1] 35/15
redact [6] 24/6 25/20 25/23 27/2 27/4
 27/12
redacted [3] 22/11 26/2 27/6
references [2] 19/10 27/11
referred [1] 17/23
regard [4] 27/24 28/17 28/19 30/1
regardless [2] 5/14 24/23
Reicin [2] 23/4 23/4
relate [1] 10/4
related [6] 9/8 9/9 9/10 9/22 22/25 23/7
Relates [1] 1/6
relations [1] 20/19
relationship [1] 14/18
released [1] 10/17
relevance [2] 14/23 23/1
relevancy [4] 28/1 28/8 28/11 28/19
relevant [2] 4/16 5/3 5/12 7/10 7/21
 10/10 11/3 11/9 12/9 12/20 12/21 12/23
 12/25 13/4 15/3 21/9 24/1 24/24 25/2
 26/1 27/21 28/5
religious [1] 25/22
remand [4] 34/20 38/1 38/6 41/12
remanded [1] 34/22
remember [3] 7/23 21/10 37/6
remembers [1] 23/3
Reporter [3] 2/12 43/6 43/13

**R**

represented [1]  22/22
request [2]  12/16 27/9
requested [2]  6/23 21/17
require [3]  26/17 42/8 42/8
required [1]  6/25
requirement [1]  15/2
reserve [1]  30/9
resolution [1]  42/20
resolve [1]  29/22
resource [1]  4/14
resources [1]  39/19
respect [4]  12/19 17/15 17/16 17/25
respectfully [4]  11/16 14/24 17/6 26/18
respond [2]  41/15 41/17
response [2]  26/22 40/18
responsibility [1]  29/11
result [1]  29/20
return [1]  15/25
returned [1]  28/15
review [5]  23/8 23/12 23/21 24/12 30/24
reviews [5]  9/12 9/13 9/15 20/7 22/25
Rezulin [3]  36/22 36/25 37/4
right [9]  6/7 7/25 17/23 18/5 30/9 31/25
  35/11 40/24 41/17
rights [2]  6/22 11/14
rise [1]  43/1
RIVAROXABAN [1]  1/4
River [1]  10/20
road [2]  37/25 41/11
room [2]  2/12 35/1
routinely [1]  22/16
rule [7]  17/3 18/12 33/2 33/12 35/7 35/8
  35/8
Rule 11 [1]  17/3
Rule 30 [4]  33/12 35/7 35/8 35/8
rules [10]  33/2 33/3 33/5 33/23 35/12
  36/8 37/2 37/3 38/16 39/22
ruling [1]  29/8
rumor [1]  11/20
run [1]  37/13
rush [2]  8/11 13/13
rushed [3]  4/25 10/12 16/14
Rushing [1]  10/15

**S**

said [8]  11/11 13/1 13/5 13/9 13/20 17/8
  24/8 39/23
salaries [1]  4/23
same [5]  7/8 8/3 30/19 33/22 36/2
sanctions [1]  20/14
saw [1]  10/8
say [10]  5/22 14/14 14/14 14/21 23/22
  24/15 26/7 39/3 42/6 42/9
saying [6]  16/12 23/15 23/25 29/19 33/1
  36/24
says [7]  10/9 15/1 22/3 25/13 27/1 33/12
  35/9
Scholer [1]  2/6
school [1]  5/9
scientist [1]  23/5
screen [9]  32/15 34/3 34/8 34/10 34/14
  34/16 41/6 42/7 42/8
screening [1]  12/1
screens [2]  37/9 41/12
seal [1]  28/14
seamen [1]  12/5
season [1]  13/11
seated [1]  4/3
second [2]  20/24 41/10
Section [1]  1/5
secure [1]  33/3

securities [1]  12/14
SEC [1]  1/6
See [11]  10/16 12/3 14/7 14/17 15/19
  27/18 29/15 30/15 31/8 32/7 34/9 34/13
  37/15
seeking [3]  18/6 21/14 26/11
seem [2]  4/17 9/24
seen [5]  8/15 13/21 34/11 36/12 38/8
seep [1]  30/10
self [8]  6/11 9/15 10/5 14/5 14/12 16/9
  17/24 23/21
self-determination [1]  17/24
self-evaluation [3]  14/5 14/12 16/9
self-evaluations [1]  6/11
self-review [1]  23/21
self-reviews [1]  9/15
seminar [1]  31/6
senior [1]  29/5
sensitive [1]  8/13
sentence [2]  10/9 11/9
separate [2]  27/18 37/10
Services [1]  11/1
serving [1]  7/23
set [6]  21/25 22/1 24/4 25/4 30/24 36/5
sets [2]  25/11 35/7
seven [1]  34/15
sex [3]  11/2 11/5 25/22
share [1]  18/1
SHARKO [3]  2/9 36/9 36/14
she [5]  23/5 23/11 23/15 36/21 41/5
sheriff [1]  6/14
shooting [4]  6/23 6/25 7/10 13/3
should [13]  5/3 5/19 14/11 14/14 14/18
  17/18 23/13 27/22 27/23 29/21 35/3
  35/6 41/13
shouldn't [2]  35/4 36/20
show [6]  17/3 24/16 28/8 38/22 39/5
  40/6
showed [1]  41/5
showing [2]  29/9 38/12
shown [3]  14/2 14/4 32/5
side [6]  20/23 22/20 32/23 38/13 38/19
  39/25
sides [1]  4/15
significance [1]  29/16
significant [5]  4/21 28/21 28/22 38/1
  39/25
similar [2]  10/25 11/10
simple [1]  41/9
simply [2]  5/11 17/4
since [1]  34/7
sit [1]  36/4
situation [3]  12/13 20/6 29/17
situations [1]  18/9
six [3]  14/7 34/15 39/13
six-year-old [1]  14/7
smaller [1]  40/9
so [44]
software [1]  2/17
sole [1]  33/11
solution [2]  35/16
solve [1]  40/14
some [18]  5/1 7/13 8/14 12/5 13/20
  13/24 14/11 16/22 21/1 22/4 28/4 28/11
  29/11 31/21 34/22 39/4 39/11 42/19
somebody [6]  14/5 14/12 15/14 23/23
  28/22 39/1
someday [1]  14/12
somehow [2]  15/14 38/10
someone [1]  32/12
something [18]  4/16 5/10 10/16 14/9
  14/11 14/15 15/13 15/14 15/21 16/25
  17/1 17/23 23/13 23/22 27/15 28/25
  31/3 36/18

sometimes [1]  13/23
somewhere [2]  28/18 21/18
sooner [1]  5/7
sorry [2]  31/23 41/15
sort [5]  4/23 5/5 5/10 28/1 28/21
sounds [1]  11/25
speak [1]  31/6
speaks [1]  10/10
special [11]  4/22 4/22 11/11 11/13 11/15
  11/16 12/22 12/24 13/15 16/12 16/16
specific [2]  18/18 27/9
specifically [3]  18/21 26/6 26/16
speculative [5]  13/6 13/7 16/21 16/22
  26/17
speedy [1]  33/4
spend [1]  24/19
split [5]  32/15 34/2 41/6 41/12 42/7
stage [1]  28/7
staggering [1]  39/9
stand [2]  36/4 42/25
standard [3]  12/20 12/21 26/12
standing [1]  41/3
started [3]  4/4 10/17 19/7
starting [1]  18/14
state [7]  8/4 32/2 32/20 34/19 38/2 38/6
  41/11
stated [2]  35/20 35/21
STATES [1]  1/1 1/11 43/6
statute [1]  18/3
statutes [1]  18/25
stenography [1]  2/16
Steve [1]  8/4
still [3]  14/22 38/5 42/19
stray [5]  19/8 19/10 26/24 27/3 27/10
Street [5]  1/16 1/22 2/4 2/7 2/12
strong [2]  24/7 25/3
structure [1]  20/8
stuck [1]  30/16
studies [1]  16/7
study [1]  17/1
stuff [6]  13/23 22/15 24/13 25/12 25/21
  39/20
subject [1]  20/18
submit [1]  11/16
submitted [1]  19/20
such [1]  5/18
sufficient [1]  8/12
suggest [4]  12/22 13/13 17/7 33/9
suggested [2]  6/16 33/15
suggestion [1]  29/20
Suite [3]  1/16 1/22 2/4
Sunrise [7]  12/12 12/13 12/14 13/1 14/9
  16/18 16/19
superior [1]  23/25
supervisor [2]  14/14 14/17
supervisor's [1]  14/20
supervisors [1]  9/13
supervisory [2]  6/10 10/5
support [1]  12/17
supposed [1]  31/6
Supreme [1]  18/14
Supreme Court [1]  18/14
sure [3]  23/3 26/10 31/8
surely [1]  20/17
surprise [1]  39/4
surprised [2]  20/4 26/4
surprising [1]  7/11
SUSAN [1]  2/9
suspicion [1]  24/7
sweeping [2]  8/11 10/15
sync [1]  39/16
system [2]  36/24 37/1
systems [1]  37/13

**T**

table [1] 8/9
take [15] 4/20 5/6 12/11 16/4 16/5 28/25 30/6 30/7 30/14 31/25 39/11 39/15 39/23 40/12 42/22
taken [2] 9/1 40/8
takes [3] 5/14 12/10 30/4
taking [2] 37/24 38/15
talk [2] 38/24 42/21
talked [8] 10/21 12/6 14/9 34/11 36/9 37/16 38/1 42/16
talking [3] 23/8 32/11 36/23
talks [2] 14/24 37/19
task [1] 39/22
tech [1] 34/12
technology [1] 37/8
tell [6] 4/4 8/25 15/12 23/25 24/13 27/17
tells [1] 8/4
tenacious [2] 23/8 23/12
termination [2] 6/14 10/1
terms [2] 18/9 18/10
test [4] 11/21 11/22 16/16 25/1
testify [3] 21/22 36/1 39/3
testimony [9] 21/13 21/21 23/11 33/13 33/13 35/10 35/12 35/22 37/4
Testosterone [1] 22/18
tests [1] 7/21
than [11] 5/1 9/17 19/9 24/14 26/9 28/22 32/11 35/3 37/18 37/20 40/9
Thank [10] 5/23 17/12 20/21 20/22 26/19 31/9 31/19 31/20 41/14 42/24
that [281]
that's [39] 5/3 5/21 9/4 14/8 14/22 14/25 15/6 16/7 16/16 16/20 16/22 20/2 21/19 21/20 22/13 23/20 23/24 25/5 26/7 30/25 31/25 33/11 33/14 33/15 34/8 34/10 34/24 35/6 37/18 38/20 38/23 39/5 40/13 40/16 41/2 41/8 41/13 41/19 42/11
their [27] 4/24 5/4 5/5 8/14 9/1 10/8 14/1 14/25 16/4 18/1 21/23 23/21 26/16 26/17 26/19 30/9 30/17 32/13 36/3 36/3 38/13 39/14 39/15 40/3 40/4 40/9 40/15
them [21] 5/17 7/12 12/21 13/21 16/12 22/14 28/13 28/14 35/1 35/3 35/22 35/24 36/5 38/17 39/2 39/3 39/14 39/14 39/15 42/6 42/8
themes [2] 10/14 10/15
themselves [3] 8/15 14/6 38/18
then [20] 4/5 9/24 14/8 14/23 15/25 16/16 17/3 24/16 25/1 25/2 25/18 27/4 28/9 29/22 31/2 38/6 39/5 39/15 39/19 40/11
there [34] 5/1 5/4 10/24 11/21 12/8 12/16 15/19 17/3 17/4 17/8 18/20 19/16 20/4 22/5 23/24 24/13 24/14 26/19 27/18 28/4 28/16 32/12 34/7 35/12 35/16 36/7 37/5 38/18 39/14 40/10 41/2 41/3 41/23 42/19
there's [8] 5/17 14/25 15/13 16/16 21/5 31/21 38/12 41/22
therefore [1] 7/11
these [21] 5/12 9/12 13/16 13/19 16/1 16/11 17/2 20/17 22/25 23/1 25/3 27/8 27/13 32/9 34/12 34/19 36/10 36/13 37/9 37/23 38/8
they [129]
thing [2] 13/19 36/2
things [14] 4/23 5/5 8/17 17/2 20/11 21/4 22/9 22/11 28/1 28/21 35/3 37/9 37/13 39/3
think [39] 6/4 6/7 6/7 6/16 6/21 7/22 9/8
11/9 11/11 13/9 15/6 16/11 20/13 20/16 23/1 24/13 24/20 27/18 27/02
27/20 27/22 27/24 28/2 28/4 28/7 28/14 28/18 28/20 29/24 30/25 32/11 33/17 38/10 38/11 38/20 40/3 41/2
thinking [1] 28/9
third [1] 41/21
this [105]
Thomas [1] 1/21
those [28] 4/17 6/17 7/14 10/14 12/22 13/24 14/2 16/17 19/2 19/5 20/8 20/19 20/25 21/9 21/21 22/23 24/1 26/24 28/13 30/10 32/22 33/8 37/11 38/5 39/11 40/16 40/21 42/22
though [1] 41/6
thought [1] 41/6
thoughtful [2] 11/2 12/11
three [10] 8/16 9/7 9/11 34/4 37/1 39/1 39/11 39/24 40/7 40/10
three-camera [1] 37/1
through [7] 7/12 8/17 18/24 19/17 23/18 24/6 37/13
ticket [1] 5/9
tie [3] 16/22 17/2 35/5
tied [2] 15/19 24/9
time [10] 10/18 24/19 31/6 31/7 31/25 33/22 34/17 37/7 39/15 42/21
times [4] 7/19 33/17 35/21 40/25
tinker [1] 16/25
today [7] 8/21 10/18 19/7 37/8 37/12 37/22 41/8
together [1] 34/21
token [1] 7/8
told [1] 22/19
Toni [4] 2/12 43/5 43/12 43/12
too [2] 15/12 23/25
top [2] 23/5 25/18
tort [2] 9/3 36/11
torts [1] 31/6
touch [1] 8/16
touches [1] 18/14
trade [1] 36/18
traditional [2] 32/11 42/11
traffic [1] 5/9
transcript [3] 37/20 39/16 43/8
transcription [1] 2/17
transcripts [1] 37/18
treat [1] 20/5
treatment [6] 4/22 7/4 7/7 7/15 10/19 11/4
trial [10] 32/6 32/6 32/16 32/18 34/21 34/23 38/3 38/25 38/25 39/21
trials [4] 34/11 34/18 34/19 38/2
tried [2] 15/22 41/5
trivial [1] 20/16
true [1] 43/7
trump [1] 27/14
try [4] 7/2 8/8 38/7 39/6
trying [4] 14/6 16/21 23/18 25/17
Tuesday [3] 30/22 31/5 42/22
Tunheim's [1] 41/2
turn [6] 5/15 5/16 28/13 28/13 28/13 33/19
turned [1] 5/18
turning [1] 5/18
Tusa [4] 2/12 43/5 43/12 43/12
two [17] 4/7 7/14 20/19 26/9 27/8 27/18 32/9 33/9 34/6 34/7 34/16 36/24 36/25 39/1 40/20 41/2 41/3
two-camera [1] 32/9
two-video-camera [1] 36/24
Tylenol [1] 22/19
type [5] 25/11 29/8 29/10 29/16 37/15

types [4] 4/7 22/10 27/18 37/9

**U**

U.S [4] 6/13 12/10 18/13 18/22
U.S. [1] 17/16
U.S.-based [1] 17/16
uncomfortable [1] 13/25
uncommon [1] 22/23
under [11] 18/8 20/11 21/24 22/15 24/25 25/1 25/4 25/10 27/6 28/14 39/12
understand [8] 4/5 7/24 22/7 29/8 29/18 30/21 37/23 42/3
understanding [2] 5/21 43/8
undo [1] 25/17
unethical [1] 15/21
UNITED [3] 1/1 1/11 43/6
unnecessary [1] 40/14
unreasonably [1] 8/10
until [1] 29/20
up [13] 7/24 8/1 18/10 28/25 29/2 29/4 30/24 34/13 34/15 36/5 39/15 40/6 42/22
upon [5] 8/16 24/7 24/15 35/2 36/20
Urquhart [1] 2/2
us [14] 8/25 15/18 24/4 24/5 24/8 24/13 24/15 27/4 27/4 27/12 29/9 33/23 36/20 38/11
use [7] 23/10 32/22 36/24 36/25 39/20 42/10 42/10
used [6] 7/2 15/1 23/2 28/15 38/8 41/13
using [6] 2/16 34/19 37/8 37/9 37/14 39/19

**V**

value [1] 13/17
vast [1] 18/13
very [25] 5/7 5/16 11/11 13/24 18/9 19/11 20/9 20/9 20/10 20/22 21/7 22/1 22/7 22/24 23/1 23/5 24/9 26/9 27/15 31/19 31/20 31/24 41/9 42/24
video [8] 35/4 35/23 35/23 36/24 37/17 37/19 38/12 39/16
videographers [1] 39/13
videos [5] 14/2 32/9 37/23 39/25 41/6
videotape [2] 13/25 40/23
view [1] 23/16
Vioxx [4] 7/25 22/25 23/9 33/7
virtually [1] 9/2

**W**

want [28] 4/21 8/18 8/19 8/25 9/1 9/6 10/7 22/14 25/23 26/12 32/1 33/25 34/21 34/23 35/14 35/17 35/24 35/25 36/2 36/3 38/4 38/9 38/21 39/5 40/4 40/16 40/23 42/17
wanted [1] 32/25
warn [1] 16/24
warning [2] 16/23 16/25
Warshauer [1] 1/15
was [58]
Washington [1] 2/7
wasn't [2] 22/21 37/8
watched [2] 34/25 35/1
watching [1] 35/4
Waterway [1] 11/19
way [6] 13/12 16/22 24/3 27/13 30/19 42/11
we [142]
we're [1] 16/3
we've [1] 24/8
wearing [1] 35/6
weeks [2] 26/5 39/11
weigh [3] 21/12 22/8 28/10

**W**

weighing [1]  22/5
weight [3]  21/12 23/11 23/15
well [14]  15/19 17/3 21/7 22/24 23/10
28/12 29/23 32/4 34/14 35/16 36/2
36/10 36/15 38/12
were [21]  4/22 4/23 5/9 6/15 7/10 8/1
9/9 11/3 11/8 12/15 22/4 27/9 27/15
33/5 36/11 36/16 37/8 37/9 41/2 41/3
41/7
weren't [1]  39/3
Western [2]  7/14 11/18
what [72]
what's [12]  14/21 15/25 26/22 27/5
31/12 31/14 32/23 33/14 33/15 34/13
36/10 38/20
whatever [2]  17/15 36/17
when [13]  5/9 10/19 14/2 14/5 23/14
27/9 32/5 32/9 32/12 34/11 34/21 39/17
40/14
where [9]  7/19 8/21 9/15 13/2 19/21
23/22 33/17 37/7 37/8
whether [11]  4/21 5/15 6/10 10/5 13/8
19/2 23/14 24/13 26/13 37/22 39/20
which [19]  8/14 9/21 13/4 13/20 17/21
18/9 18/15 18/15 19/8 22/3 25/10 27/3
33/12 34/16 35/10 41/1 41/21 42/4
42/11
while [2]  7/13 39/2
who [10]  13/6 15/4 15/5 15/14 19/22
20/15 29/3 29/4 34/22 36/19
whoever [1]  42/5
whole [1]  14/8
whose [1]  21/21
why [6]  8/18 10/7 13/22 14/11 14/14
14/18
Wilkinson [3]  11/6 11/24 12/3
will [33]  5/22 9/12 13/19 13/21 13/21
13/22 13/22 15/14 15/16 16/4 16/5 17/8
17/9 17/10 17/13 19/8 21/2 26/10 28/24
30/14 31/1 31/2 32/21 33/22 34/14
38/10 38/24 39/9 39/9 41/17 41/21 42/2
42/24
WILLIAM [1]  2/6
willing [3]  5/15 22/14 35/23
within [1]  18/7
without [1]  37/14
witness [16]  21/11 23/4 24/16 32/5 32/7
32/12 32/13 32/14 33/10 34/3 34/5
35/18 35/18 37/6 40/16 42/4
witness' [1]  33/13
witnesses [7]  13/21 17/19 30/24 39/11
40/4 40/5 41/6
won't [1]  34/17
word [8]  9/2 9/2 9/4 9/4 11/11 11/13
12/22 12/23
wording [1]  42/13
words [1]  12/22
work [7]  4/11 4/11 22/25 26/17 26/19
39/24 42/21
worked [1]  8/8
working [1]  34/12
works [1]  26/18
world [1]  15/10
worried [1]  35/5
would [33]  5/15 9/15 9/24 10/15 11/16
11/20 12/22 13/11 13/13 17/11 18/23
19/14 19/18 21/4 24/11 24/14 24/16
26/2 27/4 27/6 28/2 28/13 29/7 29/21
29/24 35/18 37/16 37/23 38/11 39/13
40/5 40/6 41/18
wouldn't [1]  40/24

write [3]  14/11 27/16 28/24
wrong [1]  15/13
wrongdoing [1]  13/10

**X**

XARELTO [10]  1/4 4/11 9/8 9/9 9/10
9/20 9/22 10/11 21/16 24/9
Xarelto-related [4]  9/8 9/9 9/10 9/22

**Y**

Yaz [4]  9/3 20/2 22/19 36/15
year [5]  14/7 15/12 15/18 15/20 32/18
years [3]  12/11 32/3 36/9
Yes [3]  26/25 31/18 40/19
yet [2]  26/19 28/16
you [98]
you're [3]  16/12 17/4 38/25
your [57]
Your Honor [40]  5/23 6/4 6/8 7/11 7/22
9/2 10/3 11/15 13/9 15/6 17/13 17/15
18/16 19/7 20/16 20/21 20/25 21/3
21/24 23/3 24/11 26/8 26/9 26/18 29/1
29/18 30/21 31/21 32/20 32/24 33/21
38/8 38/17 39/6 39/22 40/1 40/16 41/11
41/15 41/18

**Z**

Zofran [3]  16/18 16/18 17/8