UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO ALL ACTIONS | JUDGE ELDON E. FALLON |
| | MAG. JUDGE NORTH |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR ENTRY OF A PROPOSED ORDER REGARDING CONTACT WITH PHYSICIANS**

Plaintiffs' opposition is grounded on several incorrect premises:

**Incorrect Premise No.1:** *Absent an order prohibiting BOTH sides from conducting ex parte interviews on matters not involving the physician's diagnosis and treatment of the plaintiff, Defendants' counsel are precluded from interviewing physician witnesses regarding such non-privileged matters.* This is not true. Under Louisiana Supreme Court authority, defense counsel may interview a physician *ex parte* so long as the interview does not involve information covered by the physician-patient privilege. *Coutee v. Beurlot*, 2006-2943 (La. 09/05/07), 964 So. 2d 304, 307 (discussed at pp. 4-5 below). Nothing in Louisiana law prohibits Defendants' counsel from interviewing physicians about non-privileged matters such as:

- the physician's communications and interactions with Defendants' employees;
- the physician's knowledge of the product label and medical literature;
- whether the physician has seen or relied upon advertising;
- the information the physician has obtained from other physicians about Xarelto; and
- the physician's general experience with Xarelto unrelated to a particular patient.

Defense counsel have agreed to forego their right to conduct *ex parte* interviews on any topic, but only if Plaintiffs' counsel restrict their interviews of the physicians to the care and

63325278
2641495-1

treatment of their particular plaintiff. Absent an order prohibiting both parties from conducting interviews on non-privileged topics, Defense counsel reserve their right to conduct *ex parte* interviews to the full extent permitted by applicable law.

**Incorrect Premise No. 2:** *Defendants' proposed order is predicated on Plaintiffs' counsel acting unethically.* That is not true. Defendants' motion is based on the constitutional guarantees of due process and equal protection under the law, not on an assumption that Plaintiffs' counsel will act unethically.

Ours is an adversarial system of justice in which lawyers properly act as advocates for their clients' positions. It is not unethical — within certain bounds — for Plaintiffs' counsel conducting non-party witness interviews to marshal the evidence most favorable to their clients' positions, minimize the contrary evidence, and suggest inferences favorable to their clients from undisputed evidence. A skilled advocate acting ethically can make an adversarial presentation of documents and disputed facts that may powerfully influence a witness's testimony.

What due process and equal protection require are that both parties' lawyers are treated the same. At least as to matters not involving the physician-patient privilege, the Court has a binary choice: the Court may allow both parties' counsel to interview the physician *ex parte* before his or her formal testimony, or the Court may limit both parties' counsel to the formal discovery process. What due process and equal protection do not allow is for the Court to discriminate in favor of one party and against another by allowing only one party's counsel to conduct an informal interview on non-privileged matters prior to the witness's formal testimony.

**Incorrect Premise No. 3:** *A one-sided order that permits Plaintiffs' counsel but not Defendants' counsel to interview physicians on liability issues is necessary to overcome Defendants' advertising and other communications with physicians.* This is incorrect for

multiple reasons. First, Plaintiffs have undertaken their own enormous advertising and marketing efforts to disparage Xarelto, including as much as $80 million of negative lawyer advertising, a plethora of negative websites, and flyers distributed to doctors' offices. *See* Ex. 1; Dep. of Michael Moye, 756:15-760:1 (Ex. 2). In addition, physicians have access to numerous sources of information, including their clinical experience with Xarelto, the clinical experience of their medical colleagues, the medical literature, and representatives of other manufacturers that are attempting to prove the benefits of alternatives to Xarelto. The notion that the Court should favor Plaintiffs' counsel because physicians have access only to information from Defendants lacks a factual premise.

Second, one cannot compare a general advertisement or company representative's presentation of benefits and risks of Xarelto, unrelated to this litigation and strictly regulated by the FDA, with a legal advocate's targeted presentation to a doctor keyed to specific issues in a lawsuit. A presentation by a lawyer focused on specific documents and issues in litigation will more likely influence testimony about those documents and issues than a non-lawyer presentation about more general topics.

   A. **If the Court Does Not Limit Plaintiffs'** *Ex Parte* **Communications With Doctors, It Should Not Limit Defense Counsel's** *Ex Parte* **Communications With Doctors**

It does not follow, even in jurisdictions such as Louisiana where a doctor is prohibited from disclosing confidential information protected by the physician-patient privilege *ex parte* to defense attorneys, that the doctor also is prohibited from discussing non-confidential information *ex parte*. Louisiana's Code of Evidence provides that "a patient has a privilege to refuse to disclose and to prevent another from disclosing a confidential communication made for the purpose of advice, diagnosis or treatment of his health condition . . . ." La. C.E. art. 510(B)(1). The privilege does not apply "[w]hen the communication relates to the health condition of a

3

patient who brings or asserts a personal injury claim in a judicial or worker's compensation proceeding," which constitutes a waiver of the privilege as to testimony at trial or through formal discovery procedures. La. C.E. art. 510(B)(2)(a); (E). Nothing in Article 510 or otherwise in Louisiana law prohibits Defense counsel from having *ex parte* communications with Plaintiffs' doctors about non-confidential matters.

In *Coutee v. Beurlot*, 2006-2943 (La. 09/05/07), 964 So. 2d 304, the Louisiana Supreme Court reversed a judgment against a doctor for an alleged violation of the physician-patient privilege where defense counsel met *ex parte* with the doctor after his deposition to discuss new information about the plaintiff that changed the doctor's opinion at trial. In doing so, the Court held "neither the meeting nor the receipt of information in themselves were in derogation of the privilege" because the physician-patient "privilege is designed to keep a physician from divulging information concerning a patient, not to prevent him from receiving information relating to a patient." *Id.* at 307; *see also Hortman v. La. Steel Works*, 96-1433 (La. App. 1 Cir. 06/20/97) 696 So. 2d 625, 627-29 (Louisiana law permits *ex parte* communication where defense counsel provided plaintiff's doctor with new information regarding plaintiff).[1]

Other discovery pool states permit ex *parte* interviews on non-privileged matters. Like Louisiana, Colorado, Illinois, and Utah permit *ex parte* communications on non-privileged issues.[2] Texas and Alabama do not restrict Defendants' communications with Plaintiffs' doctors

---

[1] The *Coutee* Court held that it was "unnecessary to discuss whether or not [the doctor's] giving of a new, different opinion at the ex parte meeting constituted a violation of the doctor-patient privilege" because the plaintiff had failed to prove other elements of his claim. 964 So.2d at 309. That is not an issue here because Defendants have agreed not to discuss the Plaintiff during any *ex parte* interview with the doctor.

[2] *See Samms v. Dist. Court*, 908 P.2d 520, 526 (Colo. 1995) (en banc); *In re Zimmer NextGen Knee Implant Prods. Liab. Litig.*, 890 F. Supp. 2d 896, 910 (N.D. Ill. 2012) (construing Illinois and Utah law).

at all—even as to confidential information—so obviously in those states Defendants can interview doctors *ex parte* on non-confidential matters.[3] New York permits defendants to have *ex parte* communications regarding confidential information with treating doctors if defendants obtain a court order; self-evidently in New York a court could also authorize communications about non-confidential matters.[4] The remaining discovery pool states have not explicitly addressed the propriety of *ex parte* communications on non-privileged matters.[5]

As provided in Defendants' proposed order, neither side should be permitted to have *ex parte* communications with Plaintiffs' doctors regarding non-confidential information because advocates' ex *parte* presentations pose a risk of unfairly slanting the testimony of those important fact witnesses on critical liability issues. But if Plaintiffs are permitted to engage in *ex parte* communications regarding non-confidential information with their doctors, then Defendants should be permitted to do so as permitted under governing state privilege law.

**B. Permitting Plaintiffs to Make a One-Sided Presentation to Their Treating Doctors Would Lead to Skewed Testimony on Critical Issues from Those Key Witnesses**

Plaintiffs want the unilateral right not only to interview doctors about privileged matters, which Defendants do not oppose, but also the unilateral right to interview doctors *ex parte* about non-privileged matters. Plaintiffs say they intend to discuss *ex parte* with doctors information

---

[3] *See In re Collins*, 286 S.W.3d 911, 916 (Tex. 2009); *Mull v. String*, 448 So.2d 952, 954 (Ala. 1984).

[4] *See Arons v. Jutkowitz*, 9 N.Y.3d 393, 415 (N.Y. 2007).

[5] While there is case law prohibiting *ex parte* physician interviews in some of those states, all involve attempts by defendants to obtain privileged information rather than non-privileged information. We know of no discovery pool state that has explicitly prohibited defendants from communicating with doctors *ex parte* about non-privileged matters. Nor do we believe it would be constitutional to do so without placing the same restriction on Plaintiffs' counsel.

5

that Plaintiffs contend Defendants withheld concerning Xarelto and how that allegedly withheld information might have affected the doctor's prescribing decision.  *See* Pls. Opp. at 18-20.[6]

Defendants of course vigorously dispute Plaintiffs' characterization of what the evidence will show.  Permitting Plaintiffs the opportunity to have *ex parte* communications with doctors on those disputed fact issues—while denying Defendants the same opportunity—would inevitably result in skewed testimony from these "key fact witnesses" (*id.* at 18).  Prior to their formal testimony, those doctors would develop preconceived notions on critical disputed fact issues based on a one-sided presentation of evidence, including review of a subset of Defendants' internal documents cherry-picked by Plaintiffs' lawyers to showcase their clients' litigation positions in their most favorable light.[7]

The danger of providing Plaintiffs with the unilateral opportunity for *ex parte* communications with doctors is exacerbated where, as here, Xarelto is still being prescribed successfully to treat patients' serious medical conditions.  Those patients are not represented in the litigation but their interests should be considered.  For example, Plaintiffs suggest that they intend to inform doctors about alleged "flaws" in the ROCKET AF clinical trial, and specifically that a device used in that clinical trial to make certain measurements was recalled from the

---

[6] Plaintiffs' opposition presupposes that they can share information in Defendants' internal documents with their treating doctors outside formal depositions.  But PTO 12 expressly reserves to the Court for future decision the question of whether Plaintiffs can do that:  "The parties will continue to meet and confer regarding the disclosures to plaintiffs' prescribing and treating physicians, nurse practitioners, or other medical professionals who treated plaintiffs (and their respective staffs) and the conditions upon which those disclosures may be made outside of a deposition."  PTO 12 ¶ 19(l).  Until and unless PTO 12 is modified, Plaintiffs are prohibited from showing protected documents to doctors except at deposition or trial.

[7] Contrary to Plaintiffs' contention, the rationale of Defendants' motion does not lead to the conclusion that "no counsel should *ever* have *ex parte* communications with any witness other than their client because of the risk of biasing that witness."  Pls. Opp. at 14 (emphasis by Plaintiffs).  Defendants do not take issue with lawyers conducting informal interviews, only with the proposition that only one party can do so.

6

2641495-1

market after the results of the trial were published. Pls. Opp. at 20 & n. 43. Two separate independent analyses recently confirmed the results of the ROCKET AF study demonstrating the positive benefit-risk balance of Xarelto for stroke prevention in patients with atrial fibrillation. The first was performed by the Sponsors and approved by the European Medicines Agency ('EMA"). *See* EMA Press Release, dated February 5, 2016 (Ex. 3). The second was conducted by the ROCKET AF Executive Committee, which ran the trial under the direction of the Duke Clinical Research Institute ("Duke"). The independent analysis conducted by Duke, which was subjected to a rigorous peer review process and subsequently published in the New England Journal of Medicine, concluded that the results "are consistent with the overall trial findings" and any possible malfunctions in the device "did not have any significant clinical effect on the primary efficacy and safety outcomes in the trial."[8]

There is no reason why self-interested litigation advocates—whether Plaintiffs' or Defendants' counsel—should talk to doctors about the ROCKET AF trial outside of a formal deposition. And certainly there is no basis for allowing only one party's lawyer to do so. A Plaintiff counsel's advocacy presentation on ROCKET AF, with no ability of defense counsel to rebut until the formal deposition, would risk influencing doctors' treatment decisions to the potential detriment of patients who are unrepresented parties.

Plaintiffs' contention that "vigorous cross-examination" is sufficient to cure any prejudice to Defendants (Pls. Opp. at 15), is misguided. First, cross-examination does not address the harm to unrepresented patients if in the interim their doctors alter prescribing decisions based upon a party's one-sided presentation. Second, Defendants seek an equal

---

[8] *See* Patel, M.R., Hellkamp, A.S., Fox, Fox K.A.A., Point-of-Care Warfarin Monitoring in the ROCKET AF Trial (N. Engl. J. Med. 2016) (available at http://www.nejm.org/doi/full/10.1056/NEJMc1515842?af= R&rss=currentIssue).

opportunity to develop affirmative testimony from the physician; the opportunity to neutralize adverse testimony through cross-examination is not the same as having an equal chance to develop affirmative testimony. Third, if "vigorous cross-examination" of doctors is sufficient for Defendants, then it should be sufficient for Plaintiffs as well. All parties should be limited to "vigorous cross-examination" or none should be.

### C. Defendants' Proposed Order Does Not Prejudice Plaintiffs' Ability To Prepare Their Cases

Plaintiffs concede that "doctors are key fact witnesses in these cases" because they have information about "what Defendants communicated to the Plaintiffs' doctors about the drug" and also "may have dealt with other patients who have experienced similar injuries from Xarelto." Pls. Opp. at 19. In addition, Plaintiffs say that "doctors are undeniably *the* key witnesses . . . to rebut the Defendants' failure to warn arguments and the 'learned intermediary' defense." *Id.* (emphasis by Plaintiffs). Plaintiffs want to question doctors on these topics and "ask the doctors 'did you know "x" and "y" that Defendants knew,'" and "'would it have made any difference in how you treated this patient if you had been provided this information?'" *Id.* at 20.

Nothing in Defendants' proposed order prejudices plaintiffs' preparation by restricting their access to information or preventing them from asking those questions. The only issue is whether that will occur at formal depositions when both sides have an equal opportunity to ask questions in the context of evidence that each side deems relevant or whether Plaintiffs also will have the unilateral right to do so at informal interviews. Defendants' proposed order seeks only to ensure that all parties have the same access to informal and formal discovery methods.

If access to formal discovery for communicating with doctors is sufficient for Defendants to prepare their cases, then it should be sufficient for Plaintiffs as well. Conversely, if informal discovery of doctors is necessary for Plaintiffs to prepare their cases, then it is equally necessary

8

2641495-1

for Defendants. Plaintiffs already have an advantage because they have a unilateral right to communicate with doctors *ex parte* concerning their medical diagnosis and treatment. As to obtaining non-confidential information from doctors, the parties should be on an equal footing.

**D. The Relief Sought by Defendants is Consistent With that Sought in *Vioxx* and Plaintiffs' Other Cases**

It is undisputed that the relief sought in Defendants' proposed order is consistent with that granted in other cases. *See* Memorandum Regarding Contact with Physicians [Doc. 1844-1] at 7-9. Plaintiffs do not rebut any of the points set forth in Defendants' opening memorandum that explain the material differences between the circumstances here and those in *Vioxx*. *See id.* at 5-6. Indeed, one of Plaintiffs' other cases supports Defendants' position that *ex parte* interviews between plaintiff's counsel and their treating doctors "should be limited to the particular plaintiff's medical condition at issue in the current litigation," which is precisely what Defendants' proposed order would do. *In re Nuvaring Prods. Liab. Litig.*, No. 4:08MD1964 RWS, slip op. at 4 (E.D. Mo. Mar. 20, 2009) (Pls. Opp., Ex. 26). Finally, all of Plaintiffs' other cases impose disclosure obligations requiring plaintiffs' counsel to disclose the documents that they show to doctors during *ex parte* interviews prior to the doctors' depositions and/or place restrictions on plaintiffs' *ex parte* communications by prohibiting them from showing doctors documents they have highlighted or otherwise marked to emphasize certain portions, or showing the doctors medical literature with which the doctor is not already familiar.[9] At a minimum, if the Court permits Plaintiffs to have *ex parte* communications with treating doctors regarding non-confidential information, it should place the same restrictions on Plaintiffs' counsel.

---

[9] *See*, *e.g.*, *In re Ethicon, Inc. Pelvic Repair Sys. Prods. Liab. Litig.*, MDL No. 2327, 2015 U.S. Dist. LEXIS 139926, at *3290-*3291 (S.D. W. Va. Oct. 13, 2015); *In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig.*, MDL No. 2342, slip op. at 5-6 (E.D. Pa. June 13, 2013).

2641495-1

### E. The Court Should Approve the Defendants' Proposed Reasonable Accommodations Regarding the Retention of Experts

Defendants' proposed order makes accommodations for both parties to engage in *ex parte* communications with a reasonable number of treating doctors as consulting or testifying experts. *See* Proposed Order [Doc. 1844-2, Ex. A] at ¶¶ 4-8. As the authorities cited in Defendants' opening memorandum (at 11) acknowledged, absent such an order, both party's ability to retain experts will be prejudiced by severely limiting the pool of available doctors.

Relying on state and federal court decisions in the *Kugel* Mesh litigation, Plaintiffs only response is that Defendants' cannot be trusted to honor a commitment prohibiting them from inquiring about individual cases with physician-experts. *See* Pls. Opp. at 31. Defendants respectfully submit that the *Kugel Mesh* decisions are wrongly decided, based on an unwarranted mistrust of counsel, and understate the prejudice to the parties. Defendants' proposed order expressly prohibits Defendants' counsel from using a treating doctor as an expert in an individual case in which the doctor's patient is a named Plaintiff. It further prohibits Defendants' counsel from discussing, and requires them to disclose to any retained physician expert, that they are not permitted to discuss "the physician expert's physician's diagnosis and treatment of the Plaintiff or the Plaintiff's medical condition of any patient who has filed (or whose representative has filed) a lawsuit pending in this MDL proceeding." Proposed Order at ¶ 6. There is no reason to assume that Defendants' lawyers and Plaintiffs' doctors will violate those provisions.

10

2641495-1

Respectfully submitted,

KAYE SCHOLER LLP

*/s/ Steven Glickstein*
Steven Glickstein
William Hoffman
KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8485
Facsimile: (212) 836-6485
sglickstein@kayescholer.com
*Co-Lead Defense Counsel*


DRINKER BIDDLE & REATH LLP

*/s/ Susan M. Sharko*
Susan M. Sharko
DRINKER BIDDLE & REATH LLP
*A Delaware Limited Liability Partnership*
600 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
Facsimile: (973) 360-9831
susan.sharko@dbr.com
*Co-Lead Defense Counsel*


IRWIN FRITCHIE URQUHART & MOORE LLC

*/s/ James B. Irwin*
James B. Irwin
Kim E. Moore
IRWIN FRITCHIE URQUHART & MOORE LLC
400 Poydras Street
Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
Facsimile: (504) 310-2120
jirwin@irwinllc.com

*Defendants' Co-Liaison Counsel*

CHAFFE MCCALL L.L.P.

*/s/ John F. Olinde*
John F. Olinde (1515)
CHAFFE McCALL L.L.P.
1100 Poydras Street
Suite 2300
New Orleans, LA 70163
Telephone: (504) 585-7241
Facsimile: (504) 544-6084
olinde@chaffe.com

*Defendants' Co-Liaison Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on February 17, 2016, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

*/s/      John F. Olinde*

2641495-1