```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


IN RE: XARELTO (RIVAROXABAN)      *     MDL 2592 "L"
PRODUCTS LIABILITY LITIGATION     *
                                  *
                                  *     February 23, 2016
                                  *
                                  *
                                  *     Judge Eldon E. Fallon
                                  *
THIS DOCUMENT RELATES TO          *
ALL CASES                         *     Mag. Judge Michael North
                                  *
*****************************************************************
```

**REPORTER'S OFFICIAL TRANSCRIPT OF THE STATUS CONFERENCE**
**BEFORE THE HONORABLE ELDON E. FALLON,**
**UNITED STATES JUDGE.**

```
*****************************************************************
```

**REPORTED BY:**        Mary V. Thompson, RMR, FCRR
                        500 Poydras Street
                        Box B2-13
                        New Orleans, LA  70130
                        (504) 589-7783
                        mary_v_thompson@laed.uscourts.gov

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT PRODUCED BY COMPUTER.**

**APPEARANCES:**

FOR THE PLAINTIFFS'
LIAISON COUNSEL:                    HERMAN HERMAN & KATZ
                                    BY: LEONARD A. DAVIS, ESQ.
                                    820 O'KEEFE AVE.
                                    NEW ORLEANS, LA  70113


                                    GAINSBURGH BENJAMIN DAVID
                                    MEUNIER AND WARSHAUER
                                    BY: GERALD E. MEUNIER, ESQ.
                                    2800 ENERGY CENTRE
                                    1100 POYDRAS ST., STE. 2800
                                    NEW ORLEANS, LA  70163


FOR THE DEFENDANTS'
LIAISON COUNSEL:                    IRWIN FRITCHIE URQUHART &
                                    MOORE
                                    BY: JAMES B. IRWIN, V, ESQ.
                                    TEXACO CENTER
                                    400 POYDRAS ST., STE. 2700
                                    NEW ORLEANS, LA  70130


FOR THE DEFENDANTS:                 DRINKER BIDDLE & REATH
                                    BY: SUSAN M. SHARKO, ESQ.
                                    500 CAMPUS DR.
                                    FLORHAM PARK, NJ  07932


                                    KAYE SCHOLER
                                    BY: STEVEN GLICKSTEIN, ESQ.
                                    250 WEST 55TH ST.
                                    NEW YORK, NY  10019


                                    CHAFFE MCCALL
                                    BY: JOHN F. OLINDE, ESQ.
                                    1100 POYDRAS STREET
                                    NEW ORLEANS, LA  70163


**OFFICIAL TRANSCRIPT**

## AGENDA ITEM INDEX

PAGE NO.

Pretrial Orders.....................................   4

Case Management Order Nos. 2,3 & 4..................   5

Bellwether Selections..............................   5

Counsel Contact Information Form...................   7

Plaintiff Fact Sheets..............................   8

Defendant Fact Sheets..............................  10

Bundling of Complaints/Answers/Responsive Pleadings.  10

Preservation Order.................................  11

Proposed Order Governing Parties' Interactions with
MDL Plaintiffs' Prescribing and Treating Physicians.  11

Discovery..........................................  11

Deposition Guidelines..............................  12

Discovery Issues To Third Parties..................  12

Federal/State Coordination.........................  14

Matters Set For Hearing Following Status Conference.  21

Next Status Conference.............................  21

**OFFICIAL TRANSCRIPT**

**P R O C E E D I N G S**

                                     (Call to order of the court.)

        THE COURT:  Be seated, please.

        Good morning, ladies and gentlemen.

        Let's call the case, please.

        THE CASE MANAGER:  MDL 2592, *In Re:  Xarelto Products Liability Litigation.*

        THE COURT:  Ladies and gentlemen, make your appearances for the record, please.

        MR. DAVIS:  Good morning, Your Honor.  Leonard Davis on behalf of plaintiffs.

        MR. IRWIN:  And Jim Irwin for Bayer and Janssen.

        THE COURT:  We're here today for our monthly status conference.  We have a number of people on the phone so please use the microphone.

        I met a moment ago with the liaison lead counsel to discuss the proposed agenda.  Let's take it in the order it's given.

        Anything on pretrial order, No. 1?

        MR. DAVIS:  Yes, Your Honor.  Since the last status conference, there have been a couple new pretrial orders that have been issued.  Specifically, Pretrial Order 11-D, which updates the exemplar joint complaint.

        And I'll speak more about that when we get to that in the joint report with respect to bundling of matters.

**OFFICIAL TRANSCRIPT**

1          In addition to that, Pretrial Order No. 23 was entered
2     on February 17th, which sets forth deposition guidelines.
3          And I'll talk about depositions later in the discovery
4     section.
5          THE COURT:  Anything on case management orders?
6          MR. DAVIS:  There is nothing new to report, Your Honor.
7          THE COURT:  And bellwether selection, how is that
8     going?
9          MR. DAVIS:  Your Honor, we are moving forward with the
10    bellwether pool that has been selected.
11         As the Court's aware, there was a pool that was
12    prepared, and the parties have suggested and proposed to the
13    Court that a notification be provided to all who are in the pool.
14    And we understand that Your Honor desires for that to occur.
15         THE COURT:  Right.  What we're trying to do in this
16    matter is that, in the bellwether process and the selection, the
17    problem in the past has been that the defendants legitimately
18    indicate that they don't know much about the cases, so it's very
19    difficult for them to pick the bellwether cases.
20         Also the plaintiffs may not know about the case -- at
21    least the PSC may not know about the cases.
22         So what we are trying to do is to get a grouping of
23    about 40 cases, which hopefully mirror the census of the
24    litigation.  That can be done a little bit better than you can do
25    by taking six cases.

**OFFICIAL TRANSCRIPT**

1        So we take this pool of about 40 cases.  Hopefully,
2   they will mirror the litigation -- or at least do a better job of
3   that.

4        Then the parties drill down on those cases.  They
5   discover those cases.  Those are the cases that are subjected to
6   rigorous discovery.

7        After that process is finished, then the bellwether
8   cases come from those cases.

9        But individuals ought to know whether or not their
10  cases have been involved in the bellwether pool, because many of
11  them are calling and trying to find out.  It's important for
12  everybody to know, this is the bellwether pool.  And they can see
13  whose attorney is in the bellwether pool and whose is not.

14       Of course, I'm told that it's a broader base.  It's not
15  just the PSC members' cases.  It's more than those cases.  It's a
16  whole grouping of the cases, both inside and outside of the PSC,
17  so that everybody has a shot at it, and we'll deal with it in
18  that form.

19       But I will get out an order listing the cases that are
20  in bellwether.

21       MR. DAVIS:  The PSC has met and had a number of
22  discussions.  And in particular, Co-Lead Counsel Andy Birchfield,
23  is heading up, for the PSC, the coordination and organization of
24  the plaintiff bellwether selections and is meeting and has
25  ongoing meetings with counsel to address the various issues.

**OFFICIAL TRANSCRIPT**

1          So there is a coordinated effort on the plaintiffs'

2     side for this process, and if anyone has questions, they should

3     feel free to contact Andy Birchfield or anyone on the executive

4     committee.

5          But we are reviewing the various cases, and as

6     Your Honor just mentioned, the discovery process is going to

7     embark upon us.  We're looking at profile forms -- and I know

8     defendants are looking at profile forms -- and as issues come up

9     with those, whether they be deficiencies or the like, those

10    issues will have the meet-and-confer process.  And then we will,

11    if necessary, bring any issues to the attention of the Court.

12         THE COURT:  Okay.

13         MR. DAVIS:  Counsel contact information forms, I bring

14    that really for the attention of those who haven't turned in

15    their contact form.  We continue to get them.  But it's very

16    helpful for folks, especially those on the phone who aren't

17    familiar with it, to visit the Court's website and send in the

18    contact information form and register at Centrality so that they

19    can get pleadings and other information regarding filings.

20         On plaintiff fact sheets, which is Section 5 of the

21    joint report, we encourage, as the Court has done in the past,

22    that fact sheets get submitted timely.  Those are important for

23    keeping track of the various cases that are in this MDL.  And as

24    the Court has addressed in prior status conferences, and as both

25    plaintiffs and defendants have addressed, we've gone through the

**OFFICIAL TRANSCRIPT**

1   process of looking at deficiencies that are claimed by the
2   defendants, specifically, with respect to two areas.  One is the
3   Xarelto use, and the second being failure to submit a profile
4   form.

5       We have had ongoing meet-and-confers with the
6   defendants, and we have attempted to address the alleged
7   deficiencies with defendants and also assist the Court in getting
8   plaintiffs, who defendants claim haven't complied, to the table
9   so that they can address these alleged deficiencies.

10       After a time period, we have gone through various names
11   that defendants have provided, and most recently defendants have
12   filed rules to show cause on Xarelto use and failure to submit
13   profile forms.

14       There are 193 cases that are subject to a recent motion
15   that was filed, and 115 of those deal with Xarelto use and 78 of
16   those are failure to submit profile forms.

17       Those motions, or rules to show cause, were filed, and
18   I expect that we will have noticed shortly the actual date of
19   those, which are going to be set on March 16th so that all of the
20   claimants and the counsel, who are in those 193 cases, have
21   sufficient notice that the intent is for them to come to court
22   and show cause as to why the issue should or should not be dealt
23   with by the Court.  And we encourage those lawyers to address
24   those issues and reach out to deal with the issues.

25       Sindhu Daniel from our side has been involved with many

**OFFICIAL TRANSCRIPT**

1    of the lawyers in an attempt to try to get the responses in; and

2    I encourage folks that, if they have any questions on the

3    plaintiffs' side, to reach out to leadership and see if we can

4    assist in some way to try to get these matters resolved before

5    the hearing on March 16th.

6         THE COURT:  They need to know that if they're not

7    resolved, then the cases may well be dismissed.  So it's

8    important to comply with the fact sheet requirements.  If you

9    don't want to comply, then you shouldn't be in the litigation.

10        MR. DAVIS:  We will continue to help and try to assist

11   with those matters, Your Honor.

12        THE COURT:  All right.  Good.

13        MR. DAVIS:  In addition to that, we've had discussions

14   with defendants regarding various extensions that have been filed

15   with the Court for providing a plaintiff fact sheet.  Defendants

16   have asked that if, in fact, a request is made, that a prior

17   reaching out or meet-and-confer occur in particular with

18   Jim Irwin, defense liaison counsel, so that they can address the

19   time frames and either consent or provide some type of response

20   to that.

21        But it is helpful to get the fact sheet in on a timely

22   basis, and we encourage that.  And if folks have an issue with

23   respect to submitting a plaintiff fact sheet, that they do their

24   best to submit it now.  You can always supplement it, but get the

25   thing submitted as soon as possible.  You have a time frame under

**OFFICIAL TRANSCRIPT**

1  the Court's order.  And if you have problems with that, submit

2  what you can now, and it can always be supplemented as you get

3  more materials.

4          I think, Your Honor --

5          THE COURT:  How about defendant fact sheets?

6          MR. DAVIS:  With respect to defendant fact sheets,

7  we've addressed those issues with the defendants; and if there

8  are deficiencies, we'll raise those with the defendants and meet

9  and confer.  And if we feel that issues need to be brought to the

10  Court's attention, we will do that.

11          But there is an ongoing dialogue right now regarding

12  defendant fact sheets.

13          THE COURT:  Next item, bundling.

14          MR. DAVIS:  We have had ongoing discussions with the

15  defendants regarding the template, which has been posted on the

16  Court's website.

17          And I said I would come back to this earlier when I

18  spoke about the new pretrial orders.

19          Specifically, Pretrial Order No. 11-D, which was

20  entered January 27th, allowed for a new exemplar joint complaint

21  to be posted on the Court's website.  That is really to be used

22  as a guidepost and is not intended to provide any type of legal

23  advice, Your Honor.  It's just an exemplar, which the Court,

24  quite frankly, asked that we provide so that folks could use it.

25          But there are ongoing activities with respect to

1  defendants and their jurisdiction that we're mindful of, and we
2  want all counsel to be aware of.  Specifically, the citizenship
3  of some of the Bayer, LLCs are at issue, so reliance on that
4  exemplar should be done with caution.  And we are continuing to
5  have discussions with defendants regarding jurisdiction issues.
6       THE COURT:  Yeah.  That's important to reinforce, and
7  that is that the attorneys, who are going to use this exemplar,
8  can't just routinely adopt it.  They have to tailor it to their
9  facts and their case.  And it's up to them to make sure that
10  whatever they file is consistent with their case and not just
11  utilize the exemplar blindly.
12       It's your responsibility, as attorneys, to design the
13  form that best fits your case.  You can have forms, but you can't
14  just rely on those forms.  You have to make a decision on your
15  particular case before filing it.
16       What about the preservation order?
17       MR. DAVIS:  There is nothing new to report, Your Honor.
18       THE COURT:  Nine is the woodshed motion?  Is that --
19       MR. DAVIS:  Yes, Your Honor.  That's to be argued after
20  this status conference.
21       THE COURT:  Right.
22       And discovery?
23       MR. DAVIS:  With respect to discovery, we have
24  addressed, in the earlier conference, the new personnel file
25  issue, and we'll defer that matter at this time.

**OFFICIAL TRANSCRIPT**

1    THE COURT:  Deposition guidelines, have y'all been able
2  to --
3    MR. DAVIS:  Deposition guidelines, as I mentioned
4  earlier, Pretrial Order No. 23 was issued on December 17th, and
09:19:09  5  so that's now in place.
6    THE COURT:  And the depositions are ongoing, and I
7  think you have one coming up tomorrow in Germany?
8    MR. DAVIS:  We have depositions of German witnesses.
9  They are being taken in Amsterdam, Your Honor.  Those depositions
09:19:26  10  are proceeding.
11    We've also had depositions up in New Jersey going
12  forward, and we have more that are scheduled.  And I expect that
13  those depositions will continue as we had expected.  And if
14  issues arise, we'll address those in the biweekly conferences
09:19:42  15  that we have with the Court, which have been very helpful.
16    THE COURT:  And the scheduling, as I understand it, is
17  to take the depositions of the -- on issues of general causation
18  and then go into the plaintiffs.  Is that correct?
19    MR. DAVIS:  At this point, we are taking depositions
09:19:56  20  that involve the totality of the case.  So they are general in
21  nature; they are not specific as to individual plaintiffs or
22  individual causation.
23    THE COURT:  All right.
24    MR. DAVIS:  But defendants have been producing
09:20:11  25  documents.  We have been going through those through our

**OFFICIAL TRANSCRIPT**

1  depository.  We have a discovery committee that has gone through

2  the documents with a number of folks who are working to review

3  documents in order to prep for these depositions and in order to

4  take the various documents that have been produced and put them

5  in a package so that we can utilize them through this case.

6       THE COURT:  All right.  The depositions that are being

7  taken, they can be utilized in state court litigation also; is

8  that right?

9       MR. DAVIS:  The deposition --

10      THE COURT:  Is anybody from the state court liaison

11  here?

12      MS. BARRIOS:  Your Honor, I believe Philadelphia is

13  participating in those depositions.

14      THE COURT:  Okay.

15      MR. DAVIS:  There is a coordination effort with the

16  state liaison, who has been involved in the depositions, is aware

17  of the depositions that are being set, and, in fact, they have

18  had representatives at the depositions.  And I'm sure that they

19  are reporting back to their judge, wherever they are, whether it

20  be Philadelphia or the like.  But they have been active, and they

21  have been participating in the depositions, Your Honor.

22      THE COURT:  Okay.

23      MR. DAVIS:  With respect to Item No. 12, discovery

24  issue to third parties, there are ongoing discussions with the

25  FDA as well as DCRI, Duke Clinic.  And we expect to be receiving

**OFFICIAL TRANSCRIPT**

1  additional documents that are responsive to the subpoena from

2  those third parties.

3        With respect to state/federal coordination, Ms. Barrios

4  is here.

09:21:45

5        MS. BARRIOS:  Thank you, Mr. Davis.

6        Pardon me, Your Honor.

7                        (A pause in the proceedings.)

8        MS. BARRIOS:  Good morning, Your Honor.  Dawn Barrios

9  for the federal/state committee.

09:22:05

10       I provided your law clerk with the Xarelto state court

11 stats as of yesterday.  And if you'll note, going through the

12 four pages, there's been a total of 112 Xarelto users added

13 throughout the other states.

14       We have a change in the number of cases filed in state

09:22:30

15 court by 89.

16       So as you can see, the cases continue to go through

17 state court.

18       As of Pennsylvania, they had a status conference

19 yesterday before Judge New.  Everything was moving along swiftly

09:22:46

20 just as Lenny reported to you.

21       Mr. Weinkowitz and Mr. Gallucci reported to Judge New,

22 and no trial date has yet been set in Pennsylvania.

23       I've been alerted by one of our PSC members,

24 Ms. Relkin, that there is a petition for a JCCP filing in

09:23:08

25 California, and I have a copy of that petition for you,

**OFFICIAL TRANSCRIPT**

1    Your Honor.  And there will be a hearing on March 25th.  The

2    petition and it's attachments have a total, I think, of eight

3    cases, but I understand that many more will be filed shortly.

4              THE COURT:  Okay.  Before a court or several courts in

09:23:30    5    California?

6              MS. BARRIOS:  It's before one court.  Sort of like the

7    JPML.

8              THE COURT:  Okay.

9              MS. BARRIOS:  Thank you, Your Honor.

09:23:38    10             THE COURT:  Thank you.

11             MR. DAVIS:  Your Honor, I failed to mention earlier

12   when I talked about fact sheets that BrownGreer is present and

13   able to give a report.  They're here, and I know that the Court

14   wants a report from BrownGreer.

09:23:53    15             THE COURT:  Yes, right.

16                               (A pause in the proceedings.)

17             MR. WOODY:  Thank you, Your Honor.  My name is

18   Jake Woody from BrownGreer here to give just a brief report on

19   the MDL Centrality in the Xarelto matter.

09:25:31    20             So far we have 3,978 plaintiff fact sheets submitted.

21             We have another 1,639 in progress.

22             That gives us a total of 5,617 plaintiffs in the

23   system.

24             We do have another 1,320 plaintiffs who have amended

09:25:50    25   their fact sheet.

**OFFICIAL TRANSCRIPT**

1    As Lenny mentioned earlier, you can amend a fact sheet

2  at any time through the system by following the same procedure

3  that you followed when you submitted the original fact sheet.

4    In terms of our time frame of receiving fact sheets,

5  the first deadline to submit a fact sheet was in July of last

6  year.  Ever since that time, we've received a really consistent

7  number of fact sheets every month.

8    The average is about 480 plaintiff fact sheets every

9  month.  That has been very consistent, and I expect -- based on

10  the number of cases filed, I expect that to continue for the

11  foreseeable future.

12    Defendant fact sheets are very similar.  And as you can

13  see, the pace of submission matches the pace of submission of the

14  plaintiff fact sheets.

15    We have a total of 4,009 defendant fact sheets

16  submitted, split fairly evenly among the two defendants.  And so

17  far in February alone, we had 1,041 defendant fact sheets

18  submitted.

19    Defendants submit those through MDL Centrality.  To

20  view those, you can log in, and they're available in the

21  documents associated with the file along with any documents

22  uploaded in support of the defendant fact sheet.

23    I wanted to talk briefly about the demographics that we

24  can pull from MDL Centrality.

25    We have 51 percent of all the plaintiff fact sheets are

**OFFICIAL TRANSCRIPT**

1    from men and 49 percent are from women.

2              I've broken the age of injury into several categories.

3              I wanted to mention in particular the fact that three

4    quarters of all plaintiffs have injuries when they're between 60

5    and 89.

6              And I think that's indicative of this particular

7    product.

8              And I think these facts are important, because, if you

9    take the bellwether pool, the 40 cases, 21 are from men and 19

10   are from women, so that matches our overall pool very well.

11             And likewise, 30 of the 40 allege an injury between 60

12   and 89, so that matches the three quarters that you see in the

13   overall population as well.

14             So I think that's indicative of a fairly good start to

15   the bellwether pool.  I wanted to mention -- because this is the

16   whole reason for the system, is to be able to match important

17   things like the bellwether pool, the demographics, to the overall

18   MDL.

19             THE COURT:  Yes, that's what we're trying to do in this

20   case and in other cases, in MDLs, is to get out front immediately

21   and see whether or not we can get information that first

22   determines whether or not somebody is even taking the drug.

23   That's key.

24             And you would think that that would be a no-brainer,

25   but you find that a lot of people think they took the drug, and

**OFFICIAL TRANSCRIPT**

1  when they have to fill out a form, they find out they didn't take

2  the drug.  Or they did, but it's been two, three, four, five or

3  ten years ago.

4          So at least it gives you an opportunity to look at

5  those cases, scrutinize those cases a little bit more quickly to

6  determine whether or not they should or should not be in the

7  litigation.

8          But then when you get through with that grouping, it's

9  helpful to be able to look at the census.  And we've got enough

10 cases now in here that probably this is going to be indicative of

11 the census as it continues because there's enough cases.

12         And when you are dealing with bellwethers, there's no

13 sense in picking all of the bellwether cases from age 17 to 39,

14 because that's only 3 percent of the whole litigation.  That

15 won't give you any information that you need.

16         So this will help you pick the bellwether cases, the

17 pool, a little bit better.  And then you'll be able to pick your

18 bellwether cases from that pool.  The pool will be more

19 representative of the litigation, and this will help you do that.

20         I think we're moving in that direction with MDLs.  We

21 probably have to figure out a little bit more about the fact

22 sheets and put sections in it so you can get a quick view of the

23 scope of the litigation immediately.  And then if it has to be

24 supplemented, they can supplement it, but it won't change the

25 census data.  You'll be able to know what you're dealing with as

**OFFICIAL TRANSCRIPT**

1   a litigant; put your hands around it a little bit more quickly.

2          It's been very difficult before we had this technology,

3   because you had to put in various groupings, a hard copy, and it

4   was just very difficult to deal with.  It's becoming easier with

5   the technology.  And we're learning from this process, but I

6   think that we're onto something with the future MDLs.

7          MR. WOODY:  I would also like to mention the states

8   where people are from, where the plaintiffs are from.  I haven't

9   listed all 50 states here; although we do have PFSs from all 50

10  states.  I've listed the top 20.

11         And you can see that Texas has the most with 349, which

12  is about 10 percent of the entire fact sheet population.

13         Louisiana is second with 282.

14         And California is third with 237.

15         I won't go through the whole list, but, again, this is

16  another piece of information that we're able to easily pull from

17  the fact sheets for use in whatever purpose the parties and the

18  Court would like.

19         I wanted to talk briefly about the system, who's using

20  it.

21         We have 321 firms, plaintiff firms, registered with MDL

22  Centrality in Xarelto.

23         1,120 people have access to the system and use it

24  regularly.

25         We have 47,982 documents uploaded.  Those are medical

**OFFICIAL TRANSCRIPT**

1    records, HIPAA authorizations, miscellaneous records.  That's a
2    pretty significant number of documents.  And, obviously, with
3    every fact sheet, there are about a dozen documents, so that
4    increases exponentially with fact sheet submissions.

5            The largest file we have in the system is
6    883 megabytes.  I mention that because people ask whether we have
7    a limitation on files.  When you talk about medical records,
8    obviously, those can be very large files.  We do not have a
9    limit.  And you can see that the largest file is pretty large.
10   That's about the size of a movie.  If you were to download a
11   movie, that's how much that would be.  That's a pretty big file.

12           And I just wanted to mention we do distribute pleadings
13   and orders through MDL Centrality.  We save them in the database,
14   and e-mail them individually to people along with a summary at
15   the end of the day.

16           We have 2,464 pleadings served through MDL Centrality.

17           There have been, over the last few days, a lot of
18   documents coming through, and I wanted to remind people that you
19   don't want to receive notification of every individual pleading.
20   You can opt out of that process, and we can just send you a
21   summary at the end of the day.  That's a chart that shows
22   everything.

23           If you want to opt out of the individual pleadings, you
24   can let us know by e-mailing us at MDLcentrality@BrownGreer.com.

25           If you change your mind later, we can always opt you

**OFFICIAL TRANSCRIPT**

1   back in.  That's an easy process for us.

2           And the portal is available at

3   www.MDLcentrality.com/MDL2592.

4           Again, you can e-mail us with questions about anything,

5   including those pleadings that I mentioned, at

6   MDLcentrality@BrownGreer.com.

7           And if you need to call us, we're at (804)521-7200.

8           I will send this presentation to Thomas, who can post

9   it on the Court's website, if anybody needs it.

10          THE COURT:  Thank you very much.

11          MR. WOODY:  Thank you, Your Honor.

12          THE COURT:  That's very helpful.

13          MR. DAVIS:  Your Honor, Item 14 on the joint report is

14  matters set for hearing following status conference.  There is

15  one matter that's set, which is the motion for entry of proposed

16  order regarding contact with physicians.

17          And then the next status conference.

18          THE COURT:  The next status conference is -- we have

19  one in March, but the following one is April 20th.

20          What is the one in March?

21          THE LAW CLERK:  The 16th at 2:00.

22          THE COURT:  March 16th at 2:00.

23          And the April 20th is at 9:00.

24          Anything from anyone before we move on?

25          (No response.)

**OFFICIAL TRANSCRIPT**

1        THE COURT:  We'll take a five-minute break and come

2  back and hear the motion.

3        Court will stand in recess.

4                                    (Proceedings adjourned.)

5

6                          *  *  *  *

7                          CERTIFICATE

8

9        I hereby certify this 24th day of February, 2016, that

10 the foregoing is, to the best of my ability and understanding, a

11 true and correct transcript of the proceedings in the

12 above-entitled matter.

13

14                              /s/ Mary V. Thompson

15                              _____
                                Official Court Reporter

16

17

18

19

20

21

22

23

24

25

**OFFICIAL TRANSCRIPT**