**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN)  PRODUCTS LIABILITY LITIGATION | * MDL NO. 2592 |
| | * SECTION L |
| | * |
| | * JUDGE ELDON E. FALLON |
| | * |
| | * MAG. JUDGE NORTH |
| ********************************************* | * |

**THIS DOCUMENT RELATES TO:**
         *All Cases*

<u>ORDER & REASONS</u>

Before the Court are the parties' briefs concerning Defendants' Motion for Entry of a Protective Order Regarding Attorney Work Product.[1] Exs., 1, 2.  Having reviewed the parties' letter briefs, the applicable law, and hearing oral argument the Court now issues this Order & Reasons.

**I.        BACKGROUND**

This matter arises from damages Plaintiffs claim to have suffered from the manufacture, sale, distribution, and/or use of the medication known as Xarelto, an anti-coagulant used for a variety of blood-thinning medical purposes.  The Plaintiffs have filed suits in federal courts throughout the nation against Defendants, Bayer Corporation, Bayer HealthCare LLC, Bayer HealthCare Pharmaceuticals Inc., Bayer HealthCare AG, Bayer Pharma AG, and Bayer AG (collectively, Bayer), Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC, Janssen Ortho LLC, and Johnson & Johnson (collectively, Janssen).  The Plaintiffs allege that they or their family members suffered severe bleeding and other injuries due to Xarelto's allegedly inadequate warning label, among other things, as well as Xarelto's purported lack of reliance on regular blood monitoring.

---

[1] While no motion was filed on the docket, the Court construes the Defendants' letter brief as a motion for the

The Judicial Panel on Multidistrict Litigation determined that the Plaintiffs' claims involved common questions of fact and that centralization under 28 U.S.C. § 1407 would serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. Therefore, on December 12, 2014, the Judicial Panel on Multidistrict Litigation consolidated the Plaintiffs' Xarelto claims into a single multidistrict proceeding ("MDL 2592"). MDL 2592 was assigned to Judge Eldon E. Fallon of the United States District Court for the Eastern District of Louisiana to coordinate discovery and other pretrial matters in the pending cases. Subsequent Xarelto cases filed in federal court have been transferred to this district court to become part of MDL 2592 as "tag along" cases. The Court has appointed committees to represent the parties, and discovery has commenced.

## II. THE DEFENDANTS' MOTION

On March 16, 2016, the parties requested a status conference to discuss an issue pertaining to the discovery of lists of documents which Defense counsel showed to witnesses prior to their depositions. The Court subsequently set telephonic oral argument for March 28, 2016, and ordered the parties to submit letter briefing on the issue by March 23, 2016. R. Doc. 2830. Pursuant to the Court's Order, the parties timely filed their letter briefs (attached as Exhibits A and B), and participated in oral argument.

In the present motion, Defendants move the Court to issue a pretrial order labeling lists of documents compiled by counsel and shown to a witness prior to a deposition as attorney work product, thereby making the lists immune from discovery.

### A. Defendants' Brief (Ex. A).

Defendants take the position that the production of a list of the documents prepared by defense counsel and used for witness preparation intrudes on confidential opinion work product,

purposes of this Order & Reasons.

because it reveals their opinions as to the significance of various documents and their approach or strategy in handling the matter. Defendants begin by citing case law from other circuits. The Defendants lean heavily on the Third Circuit's much-cited opinion in *Sporck v. Peil*, where the circuit court held that the selection and compilation of documents in preparation for pretrial discovery falls within the protected category of opinion work-product. 759 F.2d 312, 316 (3d Cir. 1985). Defendants argue that *Sporck* announced the current majority rule, which they contend is followed by the Fourth and Eighth Circuits. *See In re Allen*, 106 F.3d 582, 608 (4th Cir. 1997); *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1320 (8th Cir. 1986).

Defendants also cite case law from the Fifth Circuit. Defendants first cite *Burns v. Exxon Corp.*, and argue that *Burns* is controlling. 158 F.3d 336 (1998). In *Burns*, the district court conducted a Rule 612 *in camera* review of a list of deposition preparation documents compiled by attorneys, and found that the documents were irrelevant to the issues before the Court. *Id.* at 342. The district court also found that withholding of the documents was harmless and moot, because the Plaintiffs already had the information in the record. *Id.* at 342–43. On appeal, the Fifth Circuit upheld the district court's ruling that the list of documents should not be disclosed. *Id.* at 343.

The Defendants also cite in *Hanover Ins. Co. v. Plaquemines Parish Government*. 304 F.R.D. 494 (2015). In *Hanover*, the Parish of Plaquemines claimed that Rule 612 of the Federal Rules of Evidence required the disclosure of all documents shown to the witness prior to the deposition. The District Court disagreed. The Court found that in a case involving over 20,000 documents of written discovery that "selection of documents [to prepare a witness for deposition] necessarily reveals the attorney's opinions regarding the litigation." *Id.* at 500. Defendants close by arguing *Burns* and *Hanover* control the present issues, and that the Court should issue a protective order stating the same.

**B.  Plaintiffs' Brief (Ex. B)**

The PSC argues in opposition that a list of documents used by the witness in preparation for a deposition is not privileged and should be discoverable.  Further, they suggest that under Rule 612 of the FRE that they are entitled to know what the witness reviewed so they can effectively cross examine the witness.  The PSC cites MDL courts that have compelled the production of lists of documents given to witnesses in preparation for deposition.  For instance, the PSC contends that Bayer unsuccessfully raised the present work product objection in *In re Trasylol Prod. Liab. Litig.*.  No. 08-MD-1928, 2009 WL 936597, at *3 (S.D. Fla. Apr. 9, 2009).  In that case, Judge Middlebrooks of the Southern District of Florida rejected Bayer's argument, finding that disclosure would not "create[] a real, non-speculative danger of revealing counsel's thoughts."  Similarly, in the Yaz/Yasmin litigation, Judge Herndon of the Southern District of Illinois held that Plaintiffs should be granted a complete list of the documents and materials reviewed by the witness in preparation for the deposition.  *In re Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Relevant Prod. Liab. Litig.*, 2011 WL 2580764, at *3 (S.D. Ill. June 29, 2011).  Judge Herndon also employed this procedure in the Pradaxa litigation, finding that "[e]ither party should be allowed to know what documents a witness reviewed prior to a deposition for purposes of efficacy.  Neither side will be permitted to ask which, if any, of the documents reviewed were selected by counsel."  *In re Pradaxa (Dabigatran Etexilate) Prod. Liab. Litig.*, 2013 WL 1776433, at *3 (S.D. Ill. Apr. 25, 2013); *see also In re Seroquel Prod. Liab. Litig.*, 2008 WL 591929 (M.D. Fla. Feb. 28, 2008).

Plaintiffs close by citing a case from the Southern District of Texas as in-circuit support for their position.  In *Fisher v. Haliburton*, the district court held that "to imbue every compilation of documents reviewed by a witness before testifying—at trial or at deposition— with work product privilege protection would all but write Rule 612 of the Federal Rules of

Evidence out of existence." 2009 WL 483890, at *1-2 (S.D. Tex. Feb. 25, 2009). Plaintiffs contend that *Fisher* controls the present issue, and that the Court should therefore decline to label the at-issue lists of witness preparation documents as opinion work product.

## III. DISCUSSION

### A. Historical Background

The present matter lies at the intersection of the purposes of the memory-refreshment doctrine, codified in Federal Rule of Evidence 612, and the work-product doctrine, first articulated in *Hickman v. Taylor*. Numerous scholars have observed that there is a potential for conflict between these two doctrines. *See* Martha J. Aaron, *Resolving the Conflict Between Federal Rule of Evidence 612 and the Work-Product Doctrine: A Proposed Solution*, 38 U. Kan. L. Rev. 1039, 1041 (1990); Charles P. Cercone, *The War Against Work Product Abuse : Exposing the Legal Alchemy of Document Compilations As Work Product*, 64 U. Pitt. L. Rev. 639, 668 (2003); Daisy Hurst Floyd, *A "Delicate and Difficult Task": Balancing the Competing Interests of Federal Rule of Evidence 612, the Work Product Doctrine, and the Attorney-Client Privilege*, 44 Buff. L. Rev. 101, 138 (1996); Megan McCrea., *Civil Procedure-Disclosure of Attorney Work Product Under Federal Rule of Evidence 612: An Abrogation of Work Product Protection?-Sporck v. Peil, 759 F.2d 312 (3d Cir.), Cert. Denied, 106 S. Ct. 232 (1985)*, 59 Temp. L. Rev. 1043, 1069 (1986); Alfreda Robinson, *Duet or Duel: Federal Rule of Evidence 612 and the Work Product Doctrine Codified in Civil Procedure Rule 26(b)(3)*, 69 U. Cin. L. Rev. 197, 244 (2000); *cf.* Michael Zimmerman, *An Ounce of Improper Preparation Isn't Worth the Cure: The Impact of Military Rule of Evidence 612 on Detecting Witness Coaching*, Army Law. 21, 24 (2014). In order to adequately address the concerns raised by academia and the present parties, the Court finds it helpful to review the history of the memory-refreshment doctrine and the work-product doctrine, as well as applicable precedent.

i.   Rule 612 and the Memory-Refreshment Doctrine

Federal Rule of Evidence 612 provides that: "an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness about it, and to introduce in evidence any portion that relates to the witness's testimony."  Fed. R. Evid. 612(b). In the Fifth Circuit, to prove that Rule 612 is applicable to a writing, a party must show that "(1) the witness requires refreshment, and (2) the writing actually refreshes the witness's memory." *U.S. v. Carey*, 589 F.3d 187, 190 (5th Cir. 2009); *see also* Fed. R. Evid. 612(a).  Additionally, if the refreshment material is used before testifying, a court must also find that "justice requires" granting the adverse party Rule 612's options for attacking the witness's reliance on the refreshment material.  Fed. R. Evid. 612(a)(2).

Rule 612 applies to materials used both while testifying and before testifying.  Fed. R. Evid. 612(a).  The Advisory Committee explicitly rejected a distinction between memory refreshment prior to testifying and during testifying, noting that "the risk of imposition and the need of safeguard is just as great in both situations."  Fed. R. Evid. 612 advisory committee's note to 1972 enactment; *see also* Aaron, *supra*, at 1041 (citing *Berkey Photo, Inc. v. Eastman Kodak Co.*, 74 F.R.D. 613 (S.D.N.Y. 1977) ("One can argue that the scope of inspection by opposing counsel should be broader when refreshment has occurred in private, because there is no court supervision to prevent abuses.")).  "The vast majority of cases that have considered the issue have concluded that Rule 612 is applicable to depositions . . . ." Victor J. Gold, 28 *Federal Practice & Procedure Evidence* § 6183 (2d ed.); *see also* 1 *McCormick On Evidence* § 9 (7th ed. 2013) (noting that the goals of memory-refreshment doctrine and Rule 612 are applicable to interviews conducted before trial).

The memory-refreshment doctrine, as codified in Rule 612, is a mechanism for guiding the examination of witnesses towards the ideal: a witness should have the facts clear in his or her

mind, recall all important details, and be in command of his or her narrative during cross-examination.  Clifford S. Fishman & Anne T. McKenna, 5 *Jones on Evidence* § 32:1 (7th ed. 2016); *see also* Fed. R. Evid. 612, advisory committee's note to 1972 enactment ("The purpose of the rule is . . . to promote the search of credibility and memory.").  But the courts recognize that this policy may be subject to abuse.  A witness may not "parrot" what is written on the paper, or otherwise substitute refreshment material for the witness' own memory.  Fishman, *supra*, § 32:1.

Two safeguards have traditionally been employed to alleviate the dangers of memory refreshment.  First, before the witness is exposed to any refreshment material, the judge has the opportunity to determine that the witness's memory had lapsed.  Aaron, *supra*, at 1041.  Second, opposing counsel is given the opportunity to review the refreshment material, and later cross-examine the witness regarding its contents.  *Id.*  With these cautionary remedies, the memory-refreshment doctrine walks the delicate line between either aiding a witness' memory or providing substitutes for a witness' memory.

While the purpose of Rule 612 is to aid the pursuit of truth by prompting the unavoidably imperfect memories of witnesses, courts struggle with litigants who attempt to use Rule 612 for purposes of discovery.  *See Derderian v. Polaroid Corp.*, 121 F.R.D. 13, 17 (D. Mass. 1988) (denying a Rule 612 request on the grounds that "Rule 612 is a rule of *evidence*, not a rule of *discovery*.").  Scholars criticize courts for failing to acknowledge the discovery implications and accompanying incentives provided by Rule 612.  For instance, in his treatise Floyd takes the position that "Rule 612, to the extent it allows a court to order disclosure of documents to an adversary, is a rule of discovery.  Therefore, the rule needs to recognize the traditional limitations on discovery[, such as] work product protection . . . ."  Floyd, *supra*, at 138.  Articles on this point are numerous, and scholars have suggested a variety of solutions.  *See*

Aaron, *supra*, at 1056–59 (arguing that Rule 612 should be confined to materials that a witness uses to refresh his recollection, rather than any documents examined prior to testifying); Cercone, *supra*, at 646–52 (2003) (criticizing the discovery gamesmanship that occurs in the shadow of Rule 612 and work-product doctrine, and suggesting that work-product doctrine be limited in response); Floyd, *supra*, at 135–38 (suggesting that Rule 612 should be amended to clarify its limitations in the face of work product privilege).

ii.    The Opinion Work-Product Doctrine

Attorney-client privilege is one of the oldest common law privileges protecting confidential communications. *See Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998). The privilege is intended "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The scope of the privilege is governed by the principles of common law "as interpreted by United States courts in the light of reason and experience." Fed. R. Evid. 501. In addition to communications made between attorneys and clients or their agents that are protected by the attorney-client privilege, the work-product doctrine also protects materials prepared in anticipation of litigation that would not otherwise be privileged as attorney-client communications. *See generally Hickman v. Taylor*, 329 U.S. 495 (1947).

The work-product doctrine is defined as the "protection that applicable law provides for tangible material (or its intangible equivalent) prepared in anticipation of litigation or for trial." Fed. R. Evid. 502(g)(2). Work product protection encompasses both ordinary work product, such as memoranda and outlines, and opinion work product, including the opinions, strategies, or mental impressions of an attorney. Restatement (Third) Of The Law Governing Lawyers § 87 (2000). Ordinary work product is generally immune from discovery unless the party seeking

disclosure "has a substantial need for the material in order to prepare for trial and is unable without undue hardship to obtain the substantial equivalent of the material by other means" or another exception applies (i.e., waiver of immunity or the use of work product by a client to commit a crime or fraud). *Id*. at § 88. Opinion work product, however, is immune from disclosure unless an exception applies or "extraordinary circumstances" warrant disclosure. *Id*. at § 89. A lawyer's analysis and mental processes are thus afforded broader protection under the doctrine than ordinary work product, because an attorney's analysis could be replicated by opposing counsel and is usually inadmissible in evidence at trial. *Id*. at § 87 cmt. b. Underlying factual information, on the other hand, that relates directly to disputed issues is usually discoverable in forms that do not reveal the lawyer's analysis and strategy. *Id*.

Prior to the adoption of the Federal Rules of Civil Procedure, pre-trial discovery was relatively limited, and thus American courts did not have a need to utilize a protective mechanism for work product. Jeff A. Anderson et al., *The Work Product Doctrine*, 68 Cornell L. Rev. 760, 765 (1983). At that time discovery was done through pleadings, so the attorney-client privilege was sufficient to prevent the attorney from being forced to divulge a client's secret on the witness stand at trial. *Id*. at 766. Upon the adoption of the Federal Rules of Civil Procedure and thereby the practice of notice pleading, discovery became necessary. This provided the impetus for expanding the work product protection to include materials prepared in advance of trial in addition to communications between attorney and client. *Id.* at 767. Over time, federal courts developed varying approaches for how to apply the Rules and appropriately protect trial preparation materials, leading the Advisory Committee to suggest a number of changes to the Rules during the 1940s. *Id*. at 771–72. In response, the United States Supreme Court sought to clarify the scope of work product protection by granting certiorari in the case of *Hickman v. Taylor*, which became the milestone decision articulating the standard of protection for work

product.  329 U.S. 495 (1947).

In that case, an attorney for the owners of a tugboat retained records of interviews with witnesses after the tugboat sank and five crew members were killed.  *Hickman*, 329 U.S. at 498. The records were retained in three forms: (1) written statements signed by the witnesses; (2) personal memoranda written by the attorney regarding interviews with certain witnesses; and (3) the attorney's unrecorded memories of the interviews.  *Id.*  A representative of one of the deceased crew members sought information about the written statements and personal memoranda through pre-trial interrogatories, which the attorney refused to supply as "privileged matter obtained in preparation for litigation."  *Id*. at 499.  The United States Court of Appeals for the Third Circuit denied discovery by invoking attorney-client privilege.  The Supreme Court affirmed, but grounded its denial of discovery on a work-product doctrine that was more limited than the attorney-client privilege and which was not specifically identified in the Federal Rules. Anderson, *supra*, at 775–76.

After *Hickman*, the Advisory Committee drafted various modifications to the discovery rules to clarify the effect of the decision for lower courts, including drafting new Rule 26(b)(3) to codify the decision's holding in the 1970 amendments to the Federal Rules.  *Id*. at 782–83. Because Rule 26(b)(3) codifies only part of the doctrine, an understanding of the underlying policies supporting the doctrine's historical development is useful in resolving work product discovery disputes which the rule does not directly address.

In *Hickman v. Taylor*, the Supreme Court explained the policy justifications for the work-product doctrine:

> Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and

> their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways…the 'Work product of the lawyer.' Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

329 U.S. 495, 510-11 (1947).  The doctrine thus has several justifications, including the assumption that the adversarial system of justice is best served by the competitive development by opposing lawyers of their own factual and legal information. Restatement (Third) Of The Law Governing Lawyers § 87 cmt. b (2000). Protecting work product from discovery prevents ill-prepared opposing counsel from piggy-backing on the effort put forth by a more diligent attorney on the other side.  *See United States v. Frederick*, 182 F.3d 496, 500 (7th Cir. 1999) ("The work-product privilege is intended to prevent a litigant from taking a free ride on the research and thinking of his opponent's lawyer and to avoid the resulting deterrent to a lawyer's committing his thoughts to paper.").  Additionally, the protection encourages the diligent representation of clients by reducing the risk that lawyers will forego thorough preparatory techniques, such as note-taking.  *Id.  But see In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1018 (1st Cir. 1988) ("[W]e think it unlikely that an attorney will forgo an integral part of his preparation due to his inability to shield that preparation as opinion work product").

**B.  A Review of the Cases Discussing the Production of the Material at Issue**

The Third Circuit court of appeal in *Sporck v. Peil*, 759 F.2d 312 (3d Cir. 1985), was the first case to address the issue of whether a list of documents selected by counsel and reviewed by a witness in preparation for a deposition is discoverable, and concluded such material is not because it is attorney work product.  *Sporck* arose in the context of a securities fraud class action. *Sporck*, 759 F.2d at 313.  Over one hundred thousand documents were at issue in the case, and the plaintiff sought to depose Sporck, who was president of the defendant corporation and a key witness in the case.  *Id.*  At the deposition, plaintiffs' counsel asked Sporck which documents Sporck reviewed in preparation for the deposition.  *Id.* at 313–14.  Plaintiffs' counsel did not seek the identity of documents which were given to Sporck by his attorneys.  *Id.*  Defense counsel objected, claiming that the question encroached on the defense's compilation of materials provided to Sporck for purposes of deposition preparation.  *Id.* at 314.  The district court subsequently found that the list of documents provided to Sporck had to be turned over, because the documents were not opinion work product.  *Id.*

The Third Circuit disagreed.  According to the Third Circuit, discovery of the compilation was contrary to one of the fundamental goals of work-product doctrine: providing breathing space for attorneys to prepare witnesses for depositions.  *See id.* at 317.  "In the instant case, without the protection that the work-product doctrine accords his preparation, defense counsel may have foregone a sifting of the documents, or at the very least chosen not to show the documents to [Sporck]."  *Id.*  The Court also found that the memory-refreshment doctrine, as codified in Rule 612, could not override work product protection unless a party appropriately laid a foundation under Rule 612.  *Id.* at 318.  Both the Fourth and Eighth Circuits have followed the majority's opinion in *Sporck*.  *See In re Allen*, 106 F.3d 582, 608 (4th Cir. 1997); *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1329 (8th Cir. 1986).

The Fifth Circuit has not adopted the *Sporck* court's approach.  Only one Fifth Circuit case appears potentially relevant to the matter at hand, and the Court finds that *Burns v. Exxon Corp.*, 158 F.3d 336 (5th Cir. 1998), does not adopt the holding of *Sporck*.  In *Burns*, the district court denied a Rule 612 motion to compel refreshment materials on the grounds that the documents were mostly irrelevant to claims and defenses, as well as harmless and moot to the extent that the plausibly relevant documents were not produced.  *Id.* at 342–43.  The Fifth Circuit upheld the district court, declining to overrule the district court's factual determination of irrelevance and mootness following *in camera* inspection of Rule 612 material.  *Id.* at 343.  The Fifth Circuit therefore did not rule on the *Sporck* question of when preparatory materials constitute work product, or when and if Rule 612 is the proper mechanism for seeking preparatory materials.

However, one district court opinion[2] from the Fifth Circuit can be read as following *Sporck*.  In *Hanover Ins. Co. v. Plaquemines Parish Government*, 304 F.R.D. 494, 500 (E.D. La. 2015), The district court held that work-product privilege prevents a party from using Rule 612 to compel a witness to identify all documents shown to him or her by opposing counsel prior to the deposition.  While *Hanover* does not cite *Sporck*, the logic of the Third Circuit inundates the *Hanover* opinion.  In *Hanover,* the Court expressed the same concerns as the Third Circuit when it found that the selection of documents by counsel inherently revealed counsel's opinions regarding the litigation, and therefore material identifying selected documents was protected opinion work product.  *Compare id.* ("[A]sking a witness to identify all the documents that he

---

[2] Magistrate Judge Roby's opinion in *Freeport-McMoran Sulphur, LLC v. Mike Mullen Energy Equip. Res., Inc.*, Civ. A. No. 03-1496, 2004 WL 1237450, at *7–8 (E.D. La. June 2, 2004), does not reach the question before the Court.  In *Freeport*, the party seeking production of preparatory materials conceded that the materials were protected by work-product doctrine, and instead argued that work-product immunity was waived by virtue of Rule 612.  *Id.* at *7.  The Court agrees with the Magistrate that the "waiver" approach to resolving conflicts between Rule 612 and work-product doctrine, *see* Cercone, 64 U. Pitt. L. Rev. 639, 670–71 (2003), is flawed.  To the extent that the Magistrate later applied the prongs of Rule 612, the Magistrate was applying the framework jointly agreed to by the parties.  The propriety of said framework was not argued to the Magistrate.

was shown by the corporate attorney prior to the deposition necessarily asks the witness to reveal the thoughts and opinions of the corporate attorney."), *with Sporck*, 759 F.2d at 316 (internal citations omitted) (quoting *James Julian, Inc. v. Raytheon Co.*, 93 F.R.D. 138, 144 (D. Del. 1982)) ("In selecting and ordering a few documents out of thousands counsel could not help but reveal important aspects of his understanding of the case.").

The holding in *Sporck* has not been uniformly embraced outside the Third Circuit.  In direct opposition to *Sporck* and its progeny, some courts have held that lists of materials given to a witness by counsel are not attorney work product.  One commentator titles this position the "No Problem" approach, because withholding work product classification eliminates the problematic conflict between work-product doctrine, as codified in Rule 26(b)(3), and memory-refreshment doctrine, as codified in Rule 612.  *See* Cercone, 64 U. Pitt. L. Rev. 639, 668 (2003). While the logic of this position can be traced to the dissent in *Sporck*, the first court to formally adopt the "No Problem" approach was the District of Kansas in *Pepsi-Cola Bottling Co. of Pittsburg v. Pepsico, Inc.*, No. CIV.A. 01-2009-KHV, 2001 WL 1478659, at *1 (D. Kan. Nov. 8, 2001).  In *PepsiCo*, plaintiffs' counsel sought the documents reviewed by Gerald Casey, Vice President and General Counsel of PepsiCo, in preparation for his deposition.  *Id.* at *1.  Counsel for the defense objected, arguing that the materials were protected by attorney-client privilege. *Id.*  Reconsidering the motion to compel after an initial denial, the district court found that "the identities of the documents that Mr. Casey reviewed prior to his deposition . . . are objective facts and are not, in themselves, the opinion or thought processes of an attorney."  *Id.* at *2.  In so holding, the District of Kansas rejected the *Sporck* majority's reasoning.  *Id.* at *2; *see also U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, No. 05-CV-2192-JWL-DJW, 2008 WL 2548129, at *10 (D. Kan. June 23, 2008) (relying on *PepsiCo* in finding that "[t]he risk for invasion of work product is minimal at best" when a party seeks documents shown by an attorney to a witness in

preparation for a deposition); a*ccord Hotel Fire Litig.*, 859 F.2d at 1013–19 (applying a meaningfully different standard than chosen by the *Sporck* dissent, but nevertheless agreeing that the trial strategy which may be gleaned from witness preparation materials is insufficient to allow work product protection to trump Rule 612).  Thus, the dissent in *Sporck* has become the majority rule in at least one district.

While neither *PepsiCo* nor *U.S. Fire* has been explicitly adopted in the Fifth Circuit, the Southern District of Texas arguably joined *PepsiCo* in its holding in *Fisher v. Halliburton*, Civ. A. Nos. 05-1731, 06-1971, 2009 WL 483890, at \*1–2 (S.D. Tex. 2009).  In *Fisher*, the plaintiffs deposed Keith Richard, a former employee of defendant Halliburton.  *Id.* at \*1.  Richard's attorney instructed Richard not to answer questions concerning documents Richard reviewed in preparation for his deposition.  *Id.*  The Court declined to extend work product privilege to "the identity of the documents [the deponent] reviewed in preparation for his deposition," on the grounds that "imbue[ing] ever compilation of documents reviewed by a witness before testifying—at trial or at deposition—with work product privilege protection would all but write Rule 612 of the Federal Rules of Evidence out of existence."  *Id.* at 1–2; *see also In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1240 (5th Cir. 1982) (quoting Fed R. Civ. P. 26(b)(3)) (holding that materials prepared by an investigative audit committee were not work product because they were not the "mental impressions, conclusions, opinions or legal theories of an attorney").

Since the advent of the controversy involving the discovery of deposition preparation material, judges and academics faced with the tension between memory-refreshment doctrine and work-product doctrine have suggested that counsel employ alternative mechanisms to obtain the information they seek.  For instance, the *Sporck* court suggested that counsel could avoid work product claims by "first elicit[ing] specific testimony from petitioner, and then

question[ing] petitioner as to which, if any, documents informed that testimony . . . ."; *see also* Cercone*, supra*, at 690–91 (suggesting that counsel avoid the "work product conundrum" by applying a questioning protocol that allows the deposing attorney to identify preparatory documents "through her own efforts and wits").  The Court labels this position the "Method of Questioning" approach, as it focuses on the procedure of questioning rather than the substantive conflict between the work-product and memory-refreshment doctrines.

Judge Herndon of the Southern District of Illinois has provided a "Method of Questioning" solution in two MDLs before his court, *Pradaxa* and *Yasmin*.  In the *Yasmin* MDL, Judge Herndon joined the holding of *Sporck*, but provided a twist.  *See In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Relevant Prod. Liab. Litig.*, No. 3:09-MD-02100-DRH, 2011 WL 2580764, at *1 (S.D. Ill. June 29, 2011).  Concerned by some questions posed by the plaintiffs, Bayer sought a ruling that "questioning designed to elicit the identity of documents *compiled by defense counsel* and reviewed by the witness in preparation for his or her deposition."[3]  *In re Yasmin*, 2011 WL 2580764, at *1.  Judge Herndon agreed with Bayer, and cited *Sporck* in holding that compilations of deposition preparation materials prepared by lawyers may constitute opinion work product.  *Id.* at *1–2.

However, Judge Herndon distinguished his views from *Sporck*, finding that compilations of preparatory materials are only work product insofar as they reveal which documents were compiled by counsel.  *Id.* at *3.  "Identification of the documents or materials that a witness reviewed prior to his or her deposition—without designating which, if any, of the documents were selected by counsel—does not implicate the same work product concerns [as the disclosure of an attorney's compilations of witness preparation materials]."  *Id.* at 2; *see also In re Pradaxa*

---

[3] Bayer conceded that the work product privilege does not limit the identification of "documents reviewed by the witness in preparation for the deposition *independent of counsel* . . . ."  *See In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Relevant Prod. Liab. Litig.*, No. 3:09-MD-02100-DRH, 2011 WL 2580764, at *1 (S.D. Ill.

*(Dabigatran Etexilate) Prod. Liab. Litig.*, 2013 WL 1776433, at *3 (S.D. Ill. Apr. 25, 2013) (rejecting the argument that all documents reviewed by employee witnesses necessarily have to be documents selected by counsel).  In so holding, Judge Herndon found that a list of deposition preparation materials are subject to the production and evidentiary principles of Rule 612, as well as generally discoverable.  *Id.* at *3–4.  "Plaintiffs' counsel will be permitted to inquire of Bayer's witnesses the complete list of documents and materials the witness reviewed prior to and in preparation for the deposition. . . . The same principle applies with the application of [Rule] 612."  *Id.*  While *Yasmin* does not explicitly refer to Rule 26(b), the opinion recognizes a distinction between the production of preparatory documents pursuant to Rule 26(b), and the production of refreshment materials pursuant to Rule 612 and its foundation requirements.

## IV.  DISCUSSION

### A.  The Applicable Rule for Discovery of Lists of Witness Preparation Materials

At first blush, the dispute in this case over the discovery of deposition preparation material seems to present a clash between Federal Rule of Evidence 612 and the attorney-client/work-product doctrine.  As revealed in the Court's historical review, it is clear that each doctrine is historically grounded, and both are highly treasured legal principles.  They are two superheroes of the legal world.  To appropriately characterize or adequately describe the significance of a conflict between them in today's terminology would be to say it is a contest between Batman and Superman.

But when the present issue in this case is viewed microscopically, that is to say upon close examination, two separate and distinct issues are revealed: (1) is an adverse party entitled to discover what material or documents a witness reviewed in preparation for a deposition; and (2) are these documents or material admissible, and can they be used to interrogate the witness.

June 29, 2011) (citing a June 6, 2011, email from S. Weber to Chief Judge Herndon).

The first question involves the scope of proper discovery, and the second involves admissibility and use.  The first is governed by Rule 26 of the Federal Rules of Civil Procedure, and the second is governed by Rule 612 of the Federal Rules of Evidence.

The PSC seeks the production of lists of documents reviewed prior to depositions.  Because this is a discovery request, the foundational requirements of Rule 612 are inapplicable at this point, and the Court must apply Rule 26.

Rule 26(b) defines the scope of discovery as "any nonprivileged matter that is relevant to the party's claim or defense and proportionate to the needs of the case . . . ." unless otherwise limited by a court order."  The plain meaning of Rule 26(b) suggests that it controls all requests for the production of documents.  Rule 612 is not a court order for purposes of Rule 26(b).  Instead, Rule 612 simply provides an adverse party options for impeaching a witness's memory concerning memory refreshment materials.  To ensure that the witness is testifying from a refreshed memory and not simply parroting the document presented to him for review, Rule 612 provides that the memory refreshment materials must be "produced *at the hearing*," Fed. R. Evid. 612(b) (emphasis added).  Production of discoverable material at the hearing ensures that the witness can be effectively cross examined, and the document or parts of it may be introduced into evidence.  The reference to production in Rule 612 is incidental from this perspective, and cannot be read as displacing Rule 26(b)'s dominion over the scope of discovery.

Moreover, the Court finds that Rule 612 is inapplicable to the scope of discovery, because Rule 612 is contained in the Federal Rules of Evidence.  When considering the promulgation and amendment of the rules defining the scope of discovery, neither Congress nor the Court would have considered placing that framework outside of the Federal Rules of Civil Procedure.  Rule 612(b)'s reference to "production" must therefore serve evidentiary purposes, rather than a civil procedure function such as setting the boundaries of the scope of discovery.

*See Derderian*, 121 F.R.D. at 17 ("Rule 612 is a rule of *evidence*, not a rule of *discovery*."). Following this principle, the Court interprets Rule 612(b) as serving two evidentiary functions: (1) setting the standard for the admissibility and usage of memory refreshment evidence at trial; and (2) providing for the timely procurement of memory refreshment material at trials and depositions, so that the material may later be entered into evidence or used to cross examine the witness. Neither of these functions dictate the scope of what a party is entitled to discover. Any request for the discovery of documents, memory refreshment material or otherwise, is instead governed by Rule 26(b).

Furthermore, from a practical perspective, Rule 26(b) must govern the production of memory refreshment materials in order to fully vindicate the goals of discovery. Rule 26(b) grants a deposing attorney a mechanism for efficiently identifying the material underpinning a witness's impressions of key facts and issues. "In the instant case, millions of documents have already been produced. Either party should be allowed to know what documents a witness reviewed prior to a deposition for purposes of efficacy." *See In re Pradaxa*, 2013 WL 1776433, at *3. Without knowing beforehand which documents the witness has reviewed, the witness would have to be asked whether he or she has reviewed each document. Over three million documents are at issue in this litigation—the practice would take days. Additionally, the PSC's request allows for the potential discovery of documents which may have eluded production during the written discovery process. The Rule 26(b) production of reviewed materials flushes out the possibility that the witness may have looked at a document that neither party possesses, and is therefore prudent. In the real world of litigation, counsel defending depositions, through no fault of their own, are often surprised to learn that their witness glanced at a heretofore unidentified document such as personal notes or spreadsheets which the witness prepared unknown to anyone and remembered and consulted prior to his impending deposition. *See id.*

(finding unpersuasive the argument that witnesses do not independently select and review documents in preparation for their depositions). The Court finds telling the exchange between Plaintiffs' counsel and Dr. Nessel regarding a previously unknown spreadsheet. R. Doc. 2380 Exhibit K (Under Seal). Upon learning of the spreadsheet, deposing counsel informally moved to compel the spreadsheet's production under Rule 26(b). Opposing counsel agreed to consider the request. *Id.* The Court anticipates that similarly smooth exchanges will occur regarding lists of materials reviewed in anticipation of the deposition, and that these exchanges may result in the identification and production of undiscovered relevant materials. *Id.*

For the aforementioned reasons, the Court finds that Rule 26(b) is the applicable rule for determining whether documents, including memory refreshment documents sought under Rule 612, fall within the scope of discovery. Since Rule 26(b) limits discovery to nonprivileged items, the Court must examine whether a list of documents reviewed by a deponent in preparation for a deposition is discoverable under Rule 26(b).

### B. Privileges Applicable to Witness Preparation Materials

As a rule of discovery, Rule 26 is broadly interpreted to achieve the discovery goal of "adequately informing litigants in civil trials." *Pettit v. Heebe*, Civ. A. No. 15-3084, 2016 WL 1089351, at *1 (E.D. La. Mar. 21, 2016) (citing *Herbert v. Lando*, 441 U.S. 153, 176 (1979). "It is well established that the scope of discovery is within the sound discretion of the trial court." *Coleman v. American Red Cross*, 23 F.3d 1091, 1096 (6th Cir. 1994)).

Simply put, the PSC requests leave to ask a witness, "What documents did you review in preparation for this deposition." This is a textbook deposition question. *See Nutramax Labs., Inc. v. Twin Labs. Inc.*, 183 F.R.D. 458, 461 (D. Md. 1998) ("During a deposition [in a case involving substantial document production], counsel questioning a witness will seldom fail to ask the witness about what he or she did to prepare for the deposition, and the identity of any

documents reviewed for this purpose.").  It is beyond dispute that the list of materials reviewed by a witness in preparation for a deposition contains material relevant to claims or defenses.  The only potential obstacle is Rule 26(b)(1)'s restriction of discovery to "nonprivileged matter[s]."

In the present case, millions of documents have been produced by the parties.  It would encroach on the work-product doctrine to ask a witness what documents were given to him or her by counsel for review before the deposition.  *See Hanover Ins. Co. v. Plaquemines Parish Government.*  304 F.R.D. 494, 500 (2015).  The answer could reveal the thought process or opinion of counsel as to which documents counsel considered important.  *Id.*

However, either party should know what documents or material the witness reviewed before the deposition so that counsel can be prepared to efficiently examine the witness on these documents.  Otherwise, the witness would have to be shown one document at a time, and asked if he or she reviewed Document 1, Document 2, and so on until reaching the vicinity of Document 3,000,000.  This is impractical and unworkable.

Furthermore, in the non-MDL world it is routine to ask a witness what they reviewed in preparation for the deposition.  This is particularly true with expert witnesses who must usually disclose in their report the material reviewed in formulating their opinion.  The fact that an MDL case involves millions of documents rather than a handful should not require discarding well-established litigation practices.  Of course, neither party will be permitted to inquire which, if any, of the documents reviewed were selected by counsel.

In short, a list of documents reviewed by a witness in preparation for a deposition is discoverable under Rule 26(b), because the list is relevant, proportional to the needs of the case, and not privileged.

### V. CONCLUSION

For the aforementioned reasons, **IT IS ORDERED** that Defendants' Motion for Entry of a Protective Order Regarding Attorney Work Product is hereby **DENIED**.

The motion is further **DENIED** insofar as Defendants argue that the PSC must satisfy Rule 612 of the Federal Rules of Evidence in order to obtain a list of documents witnesses reviewed in preparation for depositions.  The PSC may seek the list under Rule 26(b) of the Federal Rules of Civil Procedure.

New Orleans, Louisiana, this 6th day of April 2016.

_____
UNITED STATES DISTRICT JUDGE