## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | §<br>§<br>§<br>§<br>§<br>§<br>§ | MDL NO. 14- MDL- 2592<br><br>SECTION L-5<br><br>JUDGE ELDON E. FALLON<br><br>MAG. JUDGE NORTH |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**THIS DOCUMENT RELATES TO:**

| | | |
|---|---|---|
| ROBERT MURPHY, Individually and as Legal Representative of the ESTATE OF KATHLEEN MURPHY, deceased; SCOTT MURPHY; CHRISTINE MURPHY; and BRIAN MURPHY,<br><br>        *Plaintiffs*,<br>v.<br><br>JEROME M.  KANE, MD; RELIANT REHABILITATION HOSPITAL MID-CITIES in its Assumed or Common Name; RELIANT REHABILITATION HOSPITAL MID-CITIES, L.P. d/b/a RELIANT REHABILITATION HOSPITAL MID-CITIES; JOHNSON & JOHNSON; JANSSEN PHARMACEUTICALS, INC. f/k/a JANSSEN PHARMACEUTICA, INC. f/k/a ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC.;  JANSSEN RESEARCH AND DEVELOPMENT, LLC f/k/a JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH AND DEVELOPMENT, LLC; JANSSEN ORTHO, LLC; BAYER HEALTHCARE PHARMACEUTICALS, INC.; BAYER PHARMA AG; BAYER CORPORATION; BAYER HEALTHCARE LLC; BAYER HEALTHCARE AG and BAYER AG,<br><br>        *Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO.:<br>2:16-cv-01066- EEF - MBN |

## PLAINTIFFS' BRIEF IN SUPPORT OF THEIR
## MOTION FOR REMAND

## T<small>ABLE OF</small> C<small>ONTENTS</small>

**Page**

TABLE OF CONTENTS.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

I.     THE FEDERAL COURT LACKS SUBJECT MATTER JURISDICTION. . . . . . . . 1

II.    THE REMOVING DEFENDANTS HAVE FAILED TO PROVE THE
NONDIVERSE DEFENDANTS WERE "FRAUDULENTLY" JOINED. . . . . . . . . 2

III.   THE REMOVING DEFENDANTS' RELIANCE UPON *IN RE REZULIN
PRODS. LIAB. LITIG.,* MDL NO. 1348, 2002 WL 31852826 (S.D.N.Y.
DEC. 18, 2002)(KAPLAN, J) TO SUPPORT A FINDING OF IMPROPER
JOINDER IS MISPLACED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

IV.   THE CLAIMS AGAINST THE NONDIVERSE HEALTHCARE PROVIDERS
ARE PROPERLY JOINED INTO THIS ACTION AND THERE IS NO
EVIDENCE OF "FRAUDULENT MISJOINDER". . . . . . . . . . . . . . . . . . . . . . . . . 10

V.    RULE 21 SEVERANCE SHOULD NOT BE USED TO CREATE FEDERAL
JURISDICTION WHERE IT DOES NOT EXIST . . . . . . . . . . . . . . . . . . . . . . . . . . 12

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

<u>INDEX OF AUTHORITIES</u>

## <u>Cases</u>

<u>Page</u>

*Acuna v. Brown & Root, Inc*.,
  200 F.3d 335 (5th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Akerblom v. Ezra Holdings Limited,*
  509 Fed. Appx. 340 (5th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Arana v. Allstate Texas Lloyds*,
  2013 U.S. Dist. LEXIS 70033 (N.D. Tex. May 17, 2013)(Fitzwater, CJ). . . . . . . . . . 3

*Ash v. Providence Hosp.*,
  No. 08-cv-0525, 2009 U.S. Dist. LEXIS 12794, (S.D. Ala. Feb. 17, 2009). . . . . . . 14

*Bell Atlantic Corporation v. Twombly*,
  550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). . . . . . . . . . . . . . . . . . . . . . . 4

*Brown v. Jevic*,
  575 F.3d 322, 326 (3d Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Centaurus Southern Oaks,LP v. Lexington Insurance Co.,*
  CIV.A. H-10-4123, 2011 U.S. Dist. LEXIS 2479 (S.D. Tex. January 10, 2011). . . . 11

*Cohen v. Office Depot, Inc.,*
  204 F.3d 1069 (11th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*De Aguilar v. Boeing Co*.,
  47 F.3d 1404 (5th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Delta Air Lines, Inc. v. Chimet, S.p.A.*,
  619 F.3d 288, 294 (3d Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*DNJ Logistic Group, Inc. v. DHL Express (USA), Inc.,*
  727 F. Supp. 2d 160 (E.D. N.Y. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Donaldson v. Spinal Concepts, Inc.*,
  2003 U.S. Dist. LEXIS 14093, (E.D.La.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Eastus v. Blue Bell Creameries, L.P.*,
  97 F.3d 100 (5th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Echols v. OMNI Med. Grp., Inc.*,
 751 F. Supp. 2d 1214, 1217 (N.D. Okla. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Edwea, Inc. v. Allstate Insurance Company*,
 Civil Action No. H-10-2970, 2010 U.S. Dist. LEXIS 129582, 2010 WL 5099607
 (S.D. Tex. Dec. 8, 2010).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Glidewell v. Safeco Ins. Co.*,
 No. 3:13-CV-1099-G, 2015 U.S. Dist. LEXIS 106795 (N.D. Tex. August
 13, 2015).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 8, 11

*Gonzales v. Merck & Co.*,
 C-06-520, 2006 U.S. Dist. LEXIS 87065 (S.D. Tex. Dec. 1, 2006). . . . . . . . . . . . . 11

*Gray v. Beverly Enters.-Miss, Inc.*,
 390 F.3d 400 (5th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*,
 313 F.3d 305 (5th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Guillory v. PPG Indus., Inc.*,
 434 F.3d 303 (5th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Henderson v. Washington National Insurance Company*,
 454 F.3d 1278 (11th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Hutchens v. Smith & Nephews, Inc.*,
 No. 3-13-CV-4979, 2014 U.S. Dist. LEXIS 116839 (N.D. Tex. August
 22, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 7

*In Re Rezulin Prods. Liab. Litig.*,
 MDL NO. 1348, 2002 WL 31852826 (S.D.N.Y. DEC. 18, 2002). . . . . . . . . . . . . . . . 8

*In re Rezulin Products Liability Litigation*,
 MDL 1348, 2002 U.S. Dist. LEXIS 26723 (S.D.N.Y. April 12, 2002). . . . . . . . 8, 9, 10

*Jamison v. Purdue Pharma Co.*,
 251 F. Supp. 2d 1315, 1321 n.6 (S.D. Miss. 2003). . . . . . . . . . . . . . . . . . . . . . . . . 15

*Kips Bay Endoscopy Ctr., PLLC v. Travelers Indem. Co.*,
 No. 14-cv-7153, 2015 U.S. Dist. LEXIS 96957 (S.D.N.Y. July 24, 2015). . . . . . 14,15

*Kuperstein v. Hoffman-La Roche, Inc.*,
 457 F. Supp. 2d 467 (S.D. N.Y. 2006).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Lincoln Prop. Co. v. Roche*,
546 U.S. 81  (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Moote v. Eli Lilly & Co.*,
No. C-06-472, 2006 U.S. Dist. LEXIS 92357 (S.D. Tex. Dec. 20, 2006). . . . . . . . . . 12

*Newman-Green, Inc. v. Alfonzo-Lorrain*,
490 U.S. 826, 837 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Nolan v. Olean Gen. Hosp.*,
No. 13-cv-333-A, 2013 U.S. Dist. LEXIS 96420 (W.D.N.Y. July 10, 2013). . . . . . . 15

*Oesch v. Women's Hosp. Of Texas*,
No. H-11-770, 2012 U.S. Dist. LEXIS 37345 (S.D. Tex. Mar. 20, 2012). . . . . . . . . 12

*Parish v. Exxon Mobile Corporation*,
No. 13-6717, 2015 U.S. Dist. LEXIS 87881 (E.D. La. July , 2015). . . . . . . . . . . . 4, 11

*Phillips v. R.R. Dawson Bridge Co.*,
LLC, No. 14-cv-00480, 2014 U.S. Dist. LEXIS 111087 (N.D. Ala. Aug. 12, 2014). 15

*Piper Aircraft Co. v. Reyno*,
454 U.S. 235 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Robinson v. Swedish Health Servs.*,
10-cv-0113, 2010 U.S. Dist. LEXIS 29047 (W.D. Wash. Mar. 4, 2010) . . . . . . . . . 14

*Rodriguez by Rodriguez v. Abbott Laboratories*,
151 F.R.D. 529 (S.D.N.Y. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Rost v. Pfizer Inc.*,
502 F. App'x 51, 53 (2d Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Reuter v. Medtronic, Inc.*,
No. 10-3019, 2010 U.S. Dist. LEXIS 150793 (D. N.J., November 5, 2010). . . . . . . . 17

*Salazar v. Lopez*,
No. 3:13-CV-118, 2013 U.S. Dist. LEXIS 36683 (March 13, 2013)(Lynn, J). .   11, 13

*Sauceda v. Pfizer, Inc.*,
C-06-519, 2006 U.S. Dist. LEXIS 93019 (S.D. Tex. Dec. 26, 2006) (Jack, J.). . . . . . 12

*Saviour v. Stravropoulos*,
No. 15-5362, 2015 U.S. Dist. LEXIS 150793 (E.D. Pa., November
5, 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 15

*SFTF Holdings, LLC v. Bank of America,*
   2011 U.S. Dist. LEXIS 29036 (N.D. Tex. March 22, 2011). . . . . . . . . . . . . . . . . . . . . 7

*Shamrock Oil & Gas Corp. v. Sheets,*
   313 U.S. 100 (1941). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Slater v. Hoffman-La Roche Inc.,*
   771 F. Supp. 2d 524, 530 (E.D. Pa. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Smallwood v. Illinois Central R.R. Co.,*
   385 F.3d 568 (5th Cir. 2004) (*en banc*). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 8

*Smith-Manning v. State Farm Lloyds,*
   2013 U.S. Dist. LEXIS 147901, 2013 WL 5637539 (N.D. Tex. October
   14, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Sons of the Revolution in New York, Inc. v. Travelers Indem. Co. of Am.,*
   No. 14-cv-03303, 2014 U.S. Dist. LEXIS 171654(S.D.N.Y. Dec. 11, 2014) . . . . . . 14

*Tapscott v. MS Dealer Serv. Corp.,*
   77 F.3d 1353 (11th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Triggs v. John Crump Toyota, Inc.,*
   154 F.3d 1284 (11th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Turner v. Ethicon Endo-Surgery,*
   No. 03-3334-C, 2003 U.S. Dist. LEXIS 21644 (E.D. La., December
   2, 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 17

*United Mine Workers of America v. Gibbs,*
   383 U.S. 715 (1966). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Warren v. State Farm Mutual Automobile Insurance Company,*
   Civil Action No. 3:08-CV-0768-D, 2008 U.S. Dist. LEXIS 68646,
   2008 WL 4133377 (N.D. Tex. Aug. 29, 2008) (Fitzwater, C.J.). . . . . . . . . . . . . . . . . 4

*Willy v. Costal Corporation,*
   855 F.2d 1160 (5th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## **Statutes**

28 U.S.C. § 1332 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

28 U.S.C. § 1447(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Tex. Civ. Prac. & Rem. Code § 74.001(a)(13). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Tex. Civ. Prac. & Rem. Code § 74.051. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Tex. Civ. Prac. & Rem. Code § 74.351(b)(2)(r)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## Rules

Fed R. Civ. P.12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fed. R. Civ. P. 20(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

Fed R. Civ. P. 21. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 15

Fed. R. Civ. P. 82. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17

Tex. R. Civ. P. 40(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## TREATISES

16 J. Moore et al., Moore's Federal Practice § 107.14[2][c], at 107-67 (3d ed. 2005). . . . . . 14

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Plaintiffs Robert Murphy, Individually and as Legal Representative of the Estate of Kathleen Murphy (Deceased), Scott Murphy, Christine Murphy and Brian Murphy, (hereinafter referred to as "Plaintiffs") and file this Brief In Support of Their Motion for Remand, and would respectfully show the Court as follows:

## I. THE FEDERAL COURT LACKS SUBJECT MATTER JURISDICTION

1.1     At the time this cause of action arose and this case was filed in state court, Plaintiffs Robert Murphy and Brian Murphy were and remain citizens and residents of the State of Texas. [App. at p. 3].

1.2     At the time this cause of action arose and this case was filed in state court, Defendant Jerome M. Kane, MD was a licensed physician who was and remains a citizen and resident of Texas. [App. at p. 3]

1.3     At the time this cause of action arose and this case was filed in state court, Defendant Reliant Rehabilitation Hospital, Mid-Cities, LP d/b/a Reliant Rehabilitation Hospital Mid-Cities was a limited partnership formed under the laws of the State of Texas whose principal office was located in Addison, Dallas County, Texas.  Reliant Rehabilitation Hospital Mid-Cities, LP remains a Texas limited partnership with its headquarters in Texas. [App. at p. 4].

1.4     Upon a plaintiff's motion for remand, if "it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).  Removal statutes are construed strictly against removal and for remand because "removal jurisdiction raises significant federalism concerns." *Willy v. Costal Corporation*, 855 F.2d 1160, 1164 (5th Cir. 1988), *see also*, *Eastus v. Blue Bell Creameries, L.P.*, 97 F.3d 100, 106 (5th Cir. 1996) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941)).  All "doubts

regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction." *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000). Once a motion to remand has been filed, the burden is on the removing party to establish that federal jurisdiction exists. *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995). All factual allegations are evaluated in the light most favorable to the plaintiff. *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308 (5th Cir. 2005).

1.5     Despite the undisputed fact that this cause of action lacks the complete diversity necessary to confer jurisdiction upon the federal courts, Defendants Bayer HealthCare Pharmaceuticals, Inc., Bayer HealthCare, LLC, Bayer Corporation, Janssen Research & Development, LLC, Janssen Ortho, LLC, Janssen Pharmaceuticals, Inc., Johnson and Johnson [hereinafter the "Removing Defendants"][1] have now removed this case asserting that the nondiverse defendants Jerome M. Kane, MD [hereinafter "Dr. Kane"] and Reliant Rehabilitation Hospital Mid-Cities, LP d/b/a  Reliant Rehabilitation Hospital Mid-Cities [hereinafter "Reliant Hospital"] were fraudulently joined by the Plaintiffs to prevent removal. [App. at pp. 27, 28, 34 & 37].

## II.     THE REMOVING DEFENDANTS HAVE FAILED TO PROVE THE NONDIVERSE DEFENDANTS WERE "FRAUDULENTLY" JOINED.[2]

2.1     In their arguments for fraudulent joinder, the Removing Defendants do not allege that the  improper joinder resulted from the Plaintiffs making any false allegations regarding jurisdictional facts. Thus, the Court must examine whether the Removing Defendants have

---

[1]     The Plaintiffs' state court petition also names Bayer AG, Bayer HealthCare AG and Bayer Pharma AG as defendants. Bayer Pharma AG was serviced with process on December 7, 2015 pursuant to the Hague Convention. The remaining German companies are in the process of being served pursuant to the Hague Convention.

[2]     The Fifth Circuit adopts the term "improper joinder" as "being more consistent with the statutory language than the term 'fraudulent joinder,' which has been used in the past." *Smallwood v. Illinois Central R.R. Co.,* 385 F.3d 568, 571 at n.1 (5th Cir. 2004 (enbanc)*; see also*, *Hutchens v. Smith & Nephew, Inc.*, No. 3:13-CV-4979, 2014 U.S. Dist. LEXIS 116839 at *7 n. 4 (August 22, 2014).

met their heavy burden of showing that there is no possibility that Plaintiffs may recover against Dr. Kane or Reliant Hospital under applicable state law. *Smallwood v. Illinois Central R.R. Co.,* 385 F.3d 568, 573 (5th Cir. 2004) (*en banc*); *see also, Glidewell v. Safeco Ins. Co.*, No. 3:13-CV-1099-G, 2015 U.S. Dist. LEXIS 106795, at *4-6 (N.D. Tex. August 13, 2015), *Hutchens v. Smith & Nephews, Inc.*, No. 3-13-CV-4979, 2014 U.S. Dist. LEXIS 116839 at *7-8 (N.D. Tex. August 22, 2014), *Arana v. Allstate Texas Lloyds*, 2013 U.S. Dist. LEXIS 70033 at *4-5 (N.D. Tex. May 17, 2013).  "'If there is arguably a reasonable basis for predicting that state law might impose liability on the facts involved, then there is no [improper] joinder.' *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 312 (5th Cir. 2002).  In other words, 'if there is even a possibility that a state court would find the complaint states a cause of action against any one of the resident defendants, the federal court must find the joinder was proper and remand the case to the state court.' *Triggs [v. John Crump Toyota, Inc.,* 154 F.3d 1284, 1287 (11th Cir. 1998)]." *Hutchens*, 2014 U.S. Dist LEXIS 116839 at *8; *see also*, *Glidewell, 2015 U.S. Dist LEXIS at *5-6.*

> To determine whether the plaintiff is unable to establish a cause of action against a non-diverse defendant, the court should 'conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant.'  [*Smallwood,* 385 F.3d at] 573. If the complaint survives the analysis, there is generally no improper joinder. *Id.*

*Glidewell*, 2015 U.S. Dist. LEXIS 106795 at *6.

2.2    In conducting the Rule 12(b)(6) analysis of the Plaintiffs' state court petition, the U.S. District Court for the Northern District of Texas has consistently found that the Texas "notice pleadings" standard is to be applied, not the federal pleading standard under *Bell Atlantic*

*Corporation v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).   In fact,

the Hon. A.  Joe Fish has recently held:

> '[t]he majority of courts have held that a federal court should not look to the federal standard for pleading . . . to determine whether the state-court petition provides a reasonable basis for predicting that the plaintiff could recover against the in-state defendant at least when . . . the state pleading standard is more lenient." *Edwea, Inc. v. Allstate Insurance Company, Civil Action No. H-10-2970, 2010 U.S. Dist. LEXIS 129582, 2010 WL 5099607, at *5 (S.D. Tex. Dec. 8, 2010)* (citing, *e.g., Warren v. State Farm Mutual Automobile Insurance Company, Civil Action No. 3:08-CV-0768-D, 2008 U.S. Dist. LEXIS 68646, 2008 WL 4133377, at *4 (N.D. Tex. Aug. 29, 2008)* (Fitzwater, C.J.) ("Because state court plaintiffs should not be required to anticipate removal to federal court, the court assesses the sufficiency of the factual allegations of [the plaintiff's] complaint under Texas' notice-pleading standard.")). In *Akerblom v. Ezra Holdings Limited, 509 Fed. Appx. 340, 344-345 (5th Cir. 2013)*, the Fifth Circuit endorsed the *Edwea* approach by applying Texas' notice pleading requirements when conducting an improper joinder analysis. *Id. at 344-345*. Applying the state pleading standard in these circumstances is "[t]he more logical choice . . . because 'the purpose of a fraudulent joinder analysis is to determine whether a state court might permit a plaintiff to proceed with his claims . . ..'" *DNJ Logistic Group, Inc. v. DHL Express (USA), Inc., 727 F. Supp. 2d 160, 165 (E.D. N.Y. 2010)* (quoting *Kuperstein v. Hoffman-La Roche, Inc., 457 F. Supp. 2d 467, 471-72 (S.D. N.Y. 2006)*). Furthermore, "the decision as to the sufficiency of the pleadings is for the state courts, and for a federal court to interpose its judgment would fall short of the scrupulous respect for the institutional equilibrium between the federal and state judiciaries that our federal system demands." *Henderson v. Washington National Insurance Company, 454 F.3d 1278, 1284 (11th Cir. 2006)*. Thus, Texas' fair notice pleading standard applies.

*Glidewell*, 2015 U.S. Dist. LEXIS 106795 at *6-8, *accord, Parish v. Exxon Mobile*

*Corporation*, No. 13-6717, 2015 U.S. Dist. LEXIS 87881 at *38-39 (E.D. La. July 7,

2015)(holding state joinder principles apply to determine the propriety of joinder in a

removal analysis).

2.3     In Texas, a medical malpractice claim is premised upon Chapter 74 of the Texas Civil

Practice & Remedies Code which states, in part:

'Health care liability claim' means a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

Tex. Civ. Prac. & Rem Code § 74.001(a)(13).

2.4    The Plaintiffs' state court petition states the following facts:

a.    In September of 2013, Kathleen Murphy had a diagnosis of normal pressure hydrocephalus which was treated by the placement of an intracranial, intradural shunt.  On September 26, 2013, an occipital ventriculopleural shunt was surgically placed in her skull.  On September 28, 2013, Mrs. Murphy was transferred to Reliant Rehabilitation Hospital Mid-Cities placed under the care of Jerome M. Kane, MD. [App. at p. 11]

b.    At the time of her admission to Reliant Rehabilitation Hospital Mid-Cities, Dr. Kane ordered that Mrs. Murphy be administered Xarelto 10mg once per day according to the standing order for DVT prophylaxis.  Mrs. Murphy received her first dose of Xarelto at 7:09 p.m. on September 29, 2013 and the medication was administered once per day until her discharge on October 3, 2013. [App. at p. 11].

c.    Xarelto was introduced in the United States on July 1, 2011, and is part of a class of drugs called New Oral Anticoagulants ("NOACs").  This class of NOACs, which also includes Pradaxa and Eliquis, is marketed as the next generation of blood-thinning drugs to replace warfarin (Coumadin); an established safe treatment for preventing stroke and systemic embolism for the past 60 years.  Xarelto is an anticoagulant that acts as a Factor Xa inhibitor, and is available by prescription in oral tablet doses of 20mg, 15mg, and 10mg. [App. at p. 12].

d.    The use of Xarelto can cause major, life-threatening bleeding events.  Importantly, Xarelto's significant risk of severe, and sometimes fatal, internal bleeding has no antidote to reverse its effects, unlike warfarin.  Therefore, in the event of hemorrhagic complications, such as that suffered by Kathleen Murphy, there is no available reversal agent. [App. at p. 12].

e.    Mrs. Murphy's condition was noted to be improving until shortly after midnight on October 3, 2013.  At that time, she became nauseous and began vomiting.  As the day progressed, she became increasing confused and lethargic.  Paramedics were called and Mrs. Murphy was taken by ambulance

5

to the emergency department at Texas Health Harris Methodist Hospital Fort Worth.  A CT scan revealed that she had suffered a large, acute intraventricular hemorrhage with additional parenchymal hemorrhage surrounding the right occipital jejunostomy catheter.  The health care providers at Texas Health Harris Methodist Hospital Fort Worth were not initially aware that the rehabilitation center had placed her on Xarelto and subsequently openly questioned why that medication had been ordered for her care.  Kathleen Murphy died on October 18, 2013 from hypoxic respiratory failure related to her intracranial hemorrhage. [App. at pp. 11-12].

      f.      On October 14, 2014, the Plaintiffs' counsel mailed the Defendants, Jerome M. Kane, MD and Reliant Rehabilitation Hospital Mid-Cities, LP d/b/a Reliant Rehabilitation Hospital Mid-Cities, formal notice under § 74.051 of the Civil Practice and Remedies Code that Plaintiff intended to assert a health care liability claim arising out of the medical care rendered to Kathleen Murphy. [App. at p. 10].

2.5     These facts alone are sufficient to state a claim under Texas law, but the Plaintiffs' state pleading goes a step further as it then ties the precise factual allegations to specific violations of the standard of care:

      a.      Defendant Kane departed from the accepted standard of medical care in the following respects, among others:

            (1)      prescribing Xarelto to Kathleen Murphy;

            (2)      failing to accurately assess Kathleen Murphy's condition and create a proper medical care plan to meet her needs; and

            (3)      failing to implement a proper care plan for Kathleen Murphy.

      b.      The Hospital Defendants departed from the accepted standard of medical care in the following respects, among others:

            (1)      utilizing Xarelto as part of a standard protocol for a prophylactic anti-coagulation to prevent the development of DVTs in all post-surgery patients;

            (2)      administering Xarelto to Kathleen Murphy;

            (3)      failing to implement a proper care plan for Kathleen Murphy; and,

> (4)     failing to challenge Dr. Kane's order to administer Xarelto to Kathleen Murphy.

[App. at pp. 13-15].

2.6     "In applying the 'fair notice' standard, Texas courts look to 'whether the opposing party can ascertain from the pleading[s] the nature and basic issues of the controversy and what testimony will be relevant.' *SFTF Holdings, LLC v. Bank of America,* 2011 U.S. Dist. LEXIS 29036 (N.D. Tex. March 22, 2011) at *1 . . . ." *Hutchens*, 2014 U.S. Lexis 116839 at *11 (additional citations omitted).   The state court petition filed by the Plaintiffs clearly sets forth a medical malpractice claim against Dr. Kane and Reliant Hospital which meets the requirements of the state's "fair notice" pleading standard.

2.7     Chapter 74 of the Texas Civil Practice and Remedies Code also requires that a claimant seeking relief under Medical Liability Act shall, not later than the 120th day after the date each defendant's original answer is filed, serve upon each defendant an expert report which:

> provides a fair summary of the expert's opinions and as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards and the causal relationship between that failure and the injury, harm or damages claimed.

2.8     Dr. Kane filed his answer to Plaintiffs' state court petition on October 26, 2015. [App. at pp. 45 to 50].   Reliant Hospital filed its answer in the state court proceeding on October 30, 2015. [App. at pp. 52 to 54].   Plaintiffs served Defendants Kane and Reliant Hospital with their Chapter 74 expert report on February 18, 2016. [App. at pp. 56 to 87].   Plaintiff has therefore satisfied all requirements set by Chapter 74 pursuing a medical malpractice

claim and the Removing Defendants cannot assert a failure to comply with the statute as a basis for ignoring the Plaintiffs' claims against the non-diverse parties.

2.9     The Removing Defendants have failed to meet their burden of proving any improper joinder, therefore, remand is mandated.  *Smallwood*, 385 F.3d at 575; *see also*, *Glidewell v. Safeco Ins. Co.*, 2015 U.S. Dist. LEXIS 106795 at *4-6.

> **III.    THE REMOVING DEFENDANTS' RELIANCE UPON *IN RE REZULIN PRODS. LIAB. LITIG.*, MDL NO. 1348, 2002 WL 31852826 (S.D.N.Y. DEC. 18, 2002)(KAPLAN, J) TO SUPPORT A FINDING OF IMPROPER JOINDER IS MISPLACED.**

3.1      In the *Rezulin* opinion cited by the Removing Defendants in their notice of removal, the U.S. district judge found that "Plaintiffs' claims against the physician defendants fail for the fundamental reason that they do not provide the physician defendants with sufficient notice of the claims against them." *Id.* at *8.    In reaching his decision, Judge Kaplan *specifically rejected* the argument that fraudulent joinder had occurred simply because the Plaintiffs had included allegations that the manufacturing defendants' withheld information regarding the safety and efficacy of Rezulin. Judge Kaplan expressly held:

> The fact that plaintiffs' pleadings may be inconsistent is not fatal. Parties may plead in the alternative and inconsistently pursuant to Fed. R. Civ. P. 8(e)(2). In any case, each plaintiff's assertion that his or her physician breached his 'duty to warn patients of known risks of taking the drug Rezulin' is not necessarily refuted by other allegations in the complaints that pharmaceutical representative 'falsely and fraudulently represented to the physicians . . .[that] the drug was in fact safe. . . when the Defendants knew or should have known that Rezulin was unsafe.'

*Id.* at *6.

3.2     The *Rezulin* opinion the Removing Defendants failed to cite, but which would have been very instructive, was also penned by Judge Kaplan. In *In re Rezulin Products Liability Litigation*, MDL 1348, 2002 U.S. Dist. LEXIS 26723 (SDNY April 12, 2002)(Kaplan, J),

8

Judge Kaplan reviewed the state court pleadings which had joined five nondiverse prescribing physicians into the product liability action and determined that the facts and allegations pled in those complaints required that the cases be remanded. "The five plaintiffs here who allege claims against a physician have separately alleged that a particular one of the nondiverse physician defendants treated them and prescribed Rezulin to them and in consequence each has a reasonable possibility of holding a nondiverse physician defendant liable." *Id.* *12. So instead of being 0-1 in the law arising from the *Rezulin* litigation, the Plaintiffs here are 2-0.

3.3     The Plaintiffs' allegations against Dr. Kane and Reliant Hospital go far beyond a mere conclusion that they failed to adequately warn the Plaintiffs. In addition to the allegations that the manufacturing defendants withheld factual information regarding the risks and safety of Xarelto, the Murphys have pled specific causes of actions against nondiverse healthcare defendants, Dr. Kane and Reliant Hospital, each of which present a reasonable possibility of holding them liable for the death of Kathleen Murphy. [App. pp. 11-15].

3.4     In their state court petition, the Plaintiffs specifically allege that Xarelto is an anticoagulant which has a history of causing major, life-threatening bleeding events, and that despite Xarelto's significant risk of severe, and sometimes fatal, internal bleeding, there is no antidote to reverse its effects. [App. at p. 12]. The Plaintiffs specifically pled that Dr. Kane ordered Mrs. Murphy be administered Xarelto according to Reliant Hospital's standing order for DVT prophylaxis and that the staff at Reliant Hospital administered Xarelto to Mrs. Murphy despite the fact she was recovering from recent brain surgery. [App. at pp. 11-12].

3.5     The Plaintiffs' state court petition specifically alleges that the medical staff at the hospital where the brain surgery was performed, and to which Mrs. Murphy was transferred

after suffering a large intracranial hemorrhage, did not know that she had been given Xarelto and openly questioned why the anticoagulant had been administered to her given her medical history. [App. at p. 11-12].

3.6.    These allegations support a finding of medical malpractice against both Dr. Kane and Reliant Hospital.  As a neurosurgery patient, Mrs. Murphy should not have been prescribed any anticoagulant medications, let alone one which has no approved antidote that could be used in the event a bleed occurred.  By prescribing a "standard" prophylactic dose of Xarelto for Kathleen Murphy, Dr. Kane failed to accurately assess her condition or create a proper medical care plan to meet her needs as a patient recovering from brain surgery.

3.7.    The fact the nursing staff at Reliant Hospital administered repeated doses of Xarelto to Mrs. Murphy, a patient recovering from brain surgery, supports a finding that Reliant Hospital failed to implement a proper care plan for Kathleen Murphy, failed to recognize the danger of utilizing Xarelto as part of a standard protocol for a prophylactic anticoagulation in all post-surgery patients and failed to challenge the order to give Xarelto to a patient who had recently undergone brain surgery.

3.8    These allegations clearly support holding each of these non-diverse defendants liable for the death of Kathleen Murphy. Thus, under specific facts plead by the Plaintiffs in this case, the "allegations are sufficient to render the citizenship of the physician defendants material for diversity purposes." *In re Rezulin Products Liability Litigation*, 2002 U.S. Dist LEXIS 26723 at *10.

3.9    The court need not decide whether the Plaintiffs have sufficiently pled each cause of action; "rather, if the court finds a reasonable basis to predict [they] can potentially recover on any of these causes of action, the court must remand the entire case. *Smith-Manning v.*

10

*State Farm Lloyds*, 2013 U.S. Dist. LEXIS 147901, 2013 WL 5637539, at *2 (N.D. Tex. October 14, 2013)(Lynn, J.) (quoting *Gray v. Beverly Enters.-Miss, Inc.*, 390 F.3d 400, 412 (5th Cir. 2004)('[The] holistic approach to removal mandates that the existence of even a single valid cause of action against in state defendants, despite the pleading of several unavailing claims, requires remand of the entire case to state court').)" *Glidewell,* 2015 U.S. Dist. LEXIS 106795 *10.

###    IV.    The Claims Against the Nondiverse Healthcare Providers Are Properly Joined into this Action and There is No Evidence of "Fraudulent Misjoinder".

4.1    "Fraudulent misjoinder" as referenced in the Removing Defendants' Notice of Removal, is a rarely applied and disfavored concept that has its origins in the Eleventh Circuit's opinion in *Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353 (11th Cir. 1996), *abrogated on other grounds by, Cohen v. Office Depot, Inc.,* 204 F.3d 1069 (11th Cir. 2000). The Fifth Circuit has never expressly adopted the "fraudulent misjoinder" theory, but there are district courts in Texas and Louisiana that have considered, without deciding, that "fraudulent misjoinder" is a possible ground for finding improper joinder.  Significantly, each of those courts have agreed that: "'[M]ere misjoinder,' however, does not constitute *fraudulent* misjoinder under *Tapscott.*" *See*, *Salazar v. Lopez*, No. 3:13-CV-118, 2013 U.S. Dist. LEXIS 36683 at *3 (N. D. Tex., March 13, 2013)(Lynn, J), *accord*, *Parish v. Exxon Mobile Corporation*, No. 13-6717, 2015 U.S. Dist. LEXIS 87881 (E.D. La. July , 2015) at *36.   "Fraudulent misjoinder is established only by "egregious" instances of misjoinder involving 'wholly distinct' claims so devoid of 'real connection with the controversy' that their joinder border[s] on a sham." *Tapscott*, 77 F.3d at 1360; *Salazar v. Lopez*, 2013 U.S. Dist. LEXIS 36683 at *3; *see also*, *Parish*, 2015 U.S. Dist . LEXIS 87881 at *36 ("only the

'egregious' misjoinder of parties with no real connection to each other, and not 'mere' misjoinder, constitutes fraudulent joinder. Stated differently, Tapscott misjoinder applies only where the connection between the claims against the individual parties is so tenuous that disregarding the citizenship of the joined parties is just, or when there is no palpable connection between the claims and parties"); *Centaurus Southern Oaks,LP v. Lexington Insurance Co., CIV.A. H-10-4123, 2011 U.S. Dist. LEXIS 2479 at \*3* (S.D. Tex. January 10, 2011)(holding that even if the claims did not satisfy the Texas joinder rule, they "do not represent the type of egregious joinder, bordering on sham, that is disallowed for purposes of determining fraudulent joinder in this court")

4.2     Rule 40(a) of the Texas Rules of Civil Procedure provides that claims against multiple defendants may be joined in one action if a plaintiff has asserted against them "any right to relief . . . arising out of the same transaction, occurrence, or series of  transactions or occurrences" and involving at least one common "question of law or fact."  Where a plaintiff has alleged harm arising out of the manufacture and marketing of a particular product against a diverse defendant and has also alleged substandard medical care involving that product against nondiverse defendants, courts have repeatedly held that such claims are properly joined under Texas Rule of Civil Procedure 40(a). *Salazar v. Lopez*, 2013 U.S. Dist. LEXIS 36683 at \*6-9; *see also*, *Oesch v. Women's Hosp. Of Texas*, No. H-11-770, 2012 U.S. Dist. LEXIS 37345 (S.D. Tex. Mar. 20, 2012) *at \*15-16*; *Sauceda v. Pfizer, Inc.*, C-06-519, 2006 U.S. Dist. LEXIS 93019 (S.D. Tex. Dec. 26, 2006) (Jack, J.); *Moote v. Eli Lilly & Co.*, No. C-06-472, 2006 U.S. Dist. LEXIS 92357 (S.D. Tex. Dec. 20, 2006) (Head, C.J.); *Gonzales v. Merck & Co.*, C-06-520, 2006 U.S. Dist. LEXIS 87065 (S.D. Tex. Dec. 1, 2006) (Jack, J.).

4.3     The Plaintiffs' product liability claims and medical malpractice claims all arise from

the same transaction and occurrence, the harm resulting from the introduction of Xarelto into Mrs. Murphy's body when she was recovering from brain surgery.  Therefore, the joinder of Dr. Kane and Reliant Hospital with the product liability defendants is not an "egregious" attempt to misjoin wholly distinct claims so devoid of  real connection with the controversy that their joinder borders on a sham. *See*,  *Salazar v. Lopez*, 2013 U.S. Dist. LEXIS 36683 at *8-9.

**V.    RULE 21 SEVERANCE SHOULD NOT BE USED TO CREATE FEDERAL JURISDICTION WHERE IT DOES NOT EXIST.**

5.1    The Supreme Court has cautioned that the court's severance power under Rule 21 "should be exercised sparingly." *Newman-Green, Inc. v. Alfonzo-Lorrain*, 490 U.S. 826, 837 (1989)[the court "should carefully consider whether the dismissal of a nondiverse will prejudice any of the parties in the litigation."].  It is particularly important to exercise this caution in the context of a case that involves removal of a cause of action that was properly brought in state court and the severance of the non-diverse defendants is the only way to create federal jurisdiction..

5.2    This issue was very recently addressed by the U.S. District Court for  the Eastern District of Pennsylvania. In *Saviour v. Stravropoulos*, No. 15-5362, 2015 U.S. Dist. LEXIS 150793 (E.D. Pa., November 5, 2015), the plaintiff brought suit against the manufacturers of a Inferior Vena Cava filter ("IVC filter") and the physician who implanted the device in the Court of Common Pleas of Philadelphia County. The manufacturers removed the case to the federal district court and then sought to have the court severe the non-diverse defendant to "preserve federal jurisdiction" so that the case against the manufacturers could be litigated within an existing MDL.

13

5.3     The *Saviour* court denied the motion to sever and remanded the case to the state court.

In making this determination the court found:

> . . . severance 'will prejudice plaintiff, who will be required to litigate in two different fora.' *Slater v. Hoffman-La Roche Inc.*, 771 F. Supp. 2d 524, 530 (E.D. Pa. 2011) (DuBois, J.). Specifically, plaintiff would have to litigate her claims against Stavropoulos in Pennsylvania state court while simultaneously litigating her claims against the Bard Defendants in the MDL centralized in the District of Arizona.

> A number of courts have declined to sever non-diverse parties under circumstances similar to those presented in this case, even where the remaining claims could have been transferred to an MDL. See, e.g., *Echols v. OMNI Med. Grp., Inc.*, 751 F. Supp. 2d 1214, 1217 (N.D. Okla. 2010); *Robinson v. Swedish Health Servs.*, 10-cv-0113, 2010 U.S. Dist. LEXIS 29047, 2010 WL 816818, at *2 (W.D. Wash. Mar. 4, 2010); *Ash v. Providence Hosp.*, No. 08-cv-0525, 2009 U.S. Dist. LEXIS 12794, 2009 WL 424586, at *9 n.19 (S.D. Ala. Feb. 17, 2009); *see also Rost v. Pfizer Inc.*, 502 F. App'x 51, 53 (2d Cir. 2012) (holding that the district court did not abuse its discretion by denying a motion to sever a non-diverse defendant in order to avoid litigating 'one [case] in federal court against the diverse defendants and one [case] in state court'). This Court agrees with these cases.

> Second, plaintiff would be prejudiced by being forced to litigate in an undesired forum. The Court is 'mindful of the deference to be afforded plaintiff's choice of forum.' *Slater*, 771 F. Supp. 2d at 530. '[A] plaintiff's choice of forum should rarely be disturbed.' *Delta Air Lines, Inc. v. Chimet, S.p.A.*, 619 F.3d 288, 294 (3d Cir. 2010) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981)); *see Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 91, 126 S. Ct. 606, 163 L. Ed. 2d 415 (2005) ('[T]he plaintiff is the master of the complaint and has the option of naming only those parties the plaintiff chooses to sue.' (*quoting* 16 J. Moore et al., Moore's Federal Practice § 107.14[2][c], at 107-67 (3d ed. 2005)).

> In addition, removing defendants 'carr[y] a heavy burden' of showing that the case is properly before the district court. *Brown v. Jevic*, 575 F.3d 322, 326 (3d Cir. 2009). Severing a non-diverse party at this stage of the litigation would be inconsistent with that burden. '[W]hile Rule 21 is routinely employed in cases that began in federal court, the federal courts have frowned on using the Rule 21 severance vehicle to conjure removal jurisdiction that would otherwise be absent.' *Kips Bay Endoscopy Ctr., PLLC v. Travelers Indem. Co.*, No. 14-cv-7153, 2015 U.S. Dist. LEXIS 96957, 2015 WL 4508739, at *4 (S.D.N.Y. July 24, 2015) (quoting *Sons of the Revolution in New York, Inc. v. Travelers Indem. Co. of Am.*, No. 14-cv-03303, 2014 U.S. Dist. LEXIS 171654, 2014

WL 7004033, at *2 (S.D.N.Y. Dec. 11, 2014)). Severing Stavropoulos upon the removal of the case 'would circumvent the strict constraints of the removal statute and unduly expand diversity jurisdiction.' *Id.* '[M]any defendants would likely attempt to seek this post-removal action by the courts in order to avoid meeting the burdens associated with fraudulent joinder. Such a broad right would be inconsistent with the strict construction of the removal statute and the presumption in favor of remand.' *Phillips v. R.R. Dawson Bridge Co.*, LLC, No. 14-cv-00480, 2014 U.S. Dist. LEXIS 111087, 2014 WL 3970176, at *5 (N.D. Ala. Aug. 12, 2014).

Finally, Federal Rule of Civil Procedure 82 provides that '[t]hese rules shall not be construed to extend or limit the jurisdiction of the [district courts].' Fed. R. Civ. P. 82. Some courts have found that employing Rule 21 to sever non-diverse parties, particularly where the case was originally and properly filed in state court, violates Rule 82. *See Jamison v. Purdue Pharma Co.*, 251 F. Supp. 2d 1315, 1321 n.6 (S.D. Miss. 2003) ('[A] district court may run afoul of **Rule 82** when it uses a federal rule to sever the claims in a removed case, if those claims were properly joined under state law when the suit was originally filed.') (emphasis in original)); *Nolan v. Olean Gen. Hosp.*, No. 13-cv-333-A, 2013 U.S. Dist. LEXIS 96420, 2013 WL 3475475, at *7 (W.D.N.Y. July 10, 2013). The Court agrees with these cases.

*Id.* at *12-13.

5.4     The Removing Defendants' sole basis for severing the non-diverse defendants, Dr. Kane and Reliant Hospital, is that other courts have found the joinder of a malpractice claim with a product liability action was improper. Regardless of what other courts may have done, that is not the position the U.S. District Court for Eastern District of Louisiana has taken under similar circumstances. In *Turner v. Ethicon Endo-Surgery*, No. 03-3334-C, 2003 U.S. Dist. LEXIS 21644 (E.D. La., December 2, 2003), the Plaintiffs filed a product liability case in state court against Ethicon Endo-Surgery while their medical malpractice claim was pending before the Louisiana Medical Review Board. Ethicon removed the case based on diversity jurisdiction. The Plaintiffs amended their petition adding a treating physician and hospital and so destroyed diversity. *Id.* at *2-4. Ethicon filed a motion to dismiss or strike the amended petition arguing the physician and hospital could not be properly joined to the

product liability case. *Id.* at *4. Judge Berrigan denied Ethicon's Motion to Dismiss or Strike the Plaintiffs Amended Petition and remanded the case to state court.   In *Turner* court specifically found:

> Under Fed. R. Civ. P. 20(a), defendants may be joined as defendants in one action 'if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.'  Under this rule, 'the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.' *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724, 16 L. Ed. 2d 218, 86 S. Ct. 1130 (1966).
>
> Applying these broad principles, the Court finds that the joinder of Physician and Hospital to this action is permitted under Rule 20(a). *See e.g. Donaldson v. Spinal Concepts, Inc.*, 2003 U.S. Dist. LEXIS 14093, 2003 WL 22175986 (E.D.La.)(allowing joinder of products liability claim against spinal device manufacturer and medical malpractice claim against doctor). Initially, the Court finds that the Plaintiffs' claims against Physician and Hospital arise out of the same series of transactions or occurrences as their claims against Ethicon. Specifically, Plaintiffs' claims arise out of a single procedure involving Endicon's suturing device, Physician and Hospital.
>
> The Court also finds that questions of law and fact common to Ethicon, Physician and Hospital exist in this action. There are overlapping issues with regard to the cause and extent of the Plaintiffs' injuries. Common issues will also arise with regard to the relative liability of these three parties under different legal theories.  The fact that different legal theories are asserted does not preclude joinder under Rule [6] 20(a). *See Rodriguez by Rodriguez v. Abbott Laboratories*, 151 F.R.D. 529, 533 (S.D.N.Y. 1993)('… the presence of two different legal claims does not prevent joinder where the claims arise from a single source'). Most telling, perhaps, is the fact that Ethicon points to the fault of Physician and Hospital in its Answer. (Rec. Doc. 10). The Court finds that the Physician and Hospital can be properly joined in this action under Rule 20(a).

*Id.* at *4-7.

5.5    In this case the Plaintiffs are alleging that Ms. Murphy died from an intracranial hemorrhage caused by Xarelto.  The Petition alleges, in part, that Dr. Kane's order to give

Mrs. Murphy Xarelto and the staff at Reliant Hospital's administration of the blood thinner to a patient recovering from brain surgery fell below the standard of care.  The Petition also alleges that Xarelto is a defective product which increased the potential for Mrs. Murphy to suffer a cerebral hemorrhage and for which no reversal agent was available.  Clearly these allegations arise from the same transaction, there are overlapping issues with regard to the cause of Mrs. Murphy's injuries and common issues will arise with regard to the relative liability of these parties under different legal theories.  The joinder of all the claims is permitted under Rule 20(a) and severance of the claims should be denied.  *See Turner,* 2003 U.S. Dist LEXIS 21644 at *6; see also, Reuter v. Medtronic, Inc.,* No. 10-3019 (WJM), 2010 U.S. Dist. LEXIS 150793 (D. N.J., November 5, 2010) at *16 -*18 ("To the extent each defendant tries to shift liability, the design and manufacture of the product and Dr. Sarkara's conduct will be central issues. Severing the claims would result in the duplication of evidence, increase the cost of litigation and carries with it the potential for inconsistent verdicts.").  The case should be remanded to the state court.

5.6     The Removing Defendants are asking this court to reward them for removing a case that was properly filed in the state court when there was no legal ground to do so and create diversity where none existed for the purpose of imposing federal jurisdiction in the U.S. District Court in Louisiana in contravention of the Plaintiffs' chosen forum, the Texas State Court.  By severing the non-diverse parties, this court would be extending federal jurisdiction beyond the limits imposed by 28 U.S.C. § 1332 and would be acting in contravention of Rule 82 of the Federal Rules of Civil Procedure.  The Plaintiffs' Motion for Remand should be granted and the Removing Defendants' request to have the claims against the non-diverse defendants "severed or dropped" should be denied.

17

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request that this Court remand this case to the 68th District Court of Dallas County, Texas.

Respectfully submitted,

**LAW OFFICES OF BEN C. MARTIN**

*/s/ Thomas Wm Arbon*
Ben C. Martin
State Bar No. 13052400
Thomas Wm. Arbon
State Bar No. 01284275
3219 McKinney Avenue, Suite 100
Dallas, Texas 75204
(214) 761-6614
(214) 744-7590 (facsimile)
bmartin@bencmartin.com
tarbon@bencmartin.com

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of April, 2016, a copy of the *Plaintiffs' Brief in Support of Their Motion for Remand* was served electronically and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter.

*/s/ Thomas Wm. Arbon*
Thomas Wm. Arbon