UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE ELDON E. FALLON |
| *Murphy, et al. v. Kane, et al.*, Case No. 2:16-cv-01066 | MAGISTRATE MICHAEL B. NORTH |

### PHARMACEUTICAL DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND

Defendants Bayer HealthCare LLC, Bayer HealthCare Pharmaceuticals Inc., Bayer Corporation, Bayer Pharma AG, Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC, Johnson & Johnson, and Janssen Ortho LLC (collectively, the "Pharmaceutical Defendants") hereby file this Response in Opposition to Plaintiffs' Motion for Remand (Doc. 3035) ("Remand Br.").

### INTRODUCTION

Plaintiffs filed a product liability action in Texas against the Pharmaceutical Defendants arising out of their Decedent Kathleen Murphy's use of Xarelto®. In an attempt to defeat federal diversity jurisdiction, Plaintiffs have fraudulently and improperly joined two Texas health care providers, a physician and hospital (collectively, the "Physician Defendants"), alleging medical malpractice claims. But based on the allegations in the complaint, there is no basis for Plaintiffs' claims against the Texas Physician Defendants or, in the alternative, under Federal Rules of Civil Procedure 21, the claims against the Physician Defendants should be severed. Either way, remand should be denied and the action against the Pharmaceutical Defendants should remain in the MDL.

Notably, this action is one of numerous Xarelto product liability actions brought by Texas

1

2691110-1

citizens in this MDL against the diverse, nonresident Pharmaceutical Defendants—the true targets of these actions.  There are no Xarelto actions currently pending in Texas state court.  Thus, as a threshold matter, and consistent with well-established precedent, this Court should exercise its discretion to manage MDL proceedings and defer ruling on these motions until, at a minimum, the completion of generic discovery.  If this case is remanded, it will create a parallel state court proceeding, undermining the efficiencies and consistencies associated with this coordinated MDL proceeding.

## PRELIMINARY STATEMENT

In establishing the Xarelto MDL proceeding, the Judicial Panel on Multidistrict Litigation ("JPML") recognized that centralization "will serve the convenience of the parties and witnesses and ***promote the just and efficient conduct of this litigation*** [,] . . . eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel and the judiciary."  *In re Xarelto (Rivaroxaban) Prods. Liab. Litig.,* 65 F. Supp. 3d 1402, 1405 (J.P.M.L. 2014) (emphasis added).  In the context of an MDL proceeding, remanded cases in separate state court proceedings create well-known inefficiencies that undermine the efficiencies and consistency for which the MDL process was created, and indeed, for which this very MDL was formed.  This is particularly so with respect to this action originally filed in Texas state court, a jurisdiction in which there are currently no other Xarelto actions, making substantially the same claims and general allegations as the claims of numerous plaintiffs pending in the MDL.  If remanded, discovery in this one-off case will not be coordinated with the other ongoing generic (and bellwether) discovery taking place in this MDL proceeding.  Such inefficiencies alone justify deferring ruling on remand in this action.

Absent outright denial of remand, because a state court proceeding is not likely to

proceed more efficiently, quickly, or justly than this MDL, this Court should defer ruling on the pending motions. It is well-established that "MDL courts must be given greater discretion to organize, coordinate and adjudicate its proceedings." *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 496 F.3d 863, 866 (8th Cir. 2007). Moreover, as a member of the JPML (and former MDL judge) has recognized, MDL courts may "defer consideration of the jurisdictional challenges" pursuant to their "broad scope to manage their own dockets in light of considerations of 'economy of time and effort for itself, for counsel, and for litigants.'" *In re Zyprexa Prods. Liab. Litig.*, 594 F.3d 113, 127 (2d Cir. 2010) (Kaplan, J., concurring) (citations omitted).

If contrary to this authority, this Court decides to rule on Plaintiffs' remand motion, the motion should be denied. In an effort to destroy diversity and thereby evade this Court's jurisdiction and the MDL proceeding, Plaintiffs joined to their product liability claims a separate medical-malpractice case against Ms. Murphy's Texas-based healthcare providers, Dr. Jerome M. Kane and Reliant Rehabilitation Hospital Mid-Cities. This Court should disregard the citizenship of the Physician Defendants because they were fraudulently joined. Plaintiffs moved to remand the case based on the Physician Defendants' Texas citizenship. As other courts have held, the Petition's numerous allegations that the manufacturers allegedly concealed the risks of Xarelto from virtually everyone, including the Decedent's physicians, "negate[] any possible liability of the physicians." *Chiles v. Am. Home Prods. Corp.*, No. 4:03-CV- 802-A, slip op. at *4 (N.D. Tex. Sept. 26, 2003) (attached as Exhibit A); *King v. Pfizer, Inc.*, No. 8:13CV290, 2013 WL 6905305, at *8 (D. Neb. Dec. 31, 2013), *report and recommendation adopted*, No. 8:13CV290, 2014 WL 29088 (D. Neb. Jan. 2, 2014); *In re Rezulin Prods. Liab. Litig.*, No. 00 Civ. 2843 (LAK), 2002 WL 31852826, at *2 (S.D.N.Y. Dec. 18, 2002); cases cited in n.1, *infra*.

2691110-1

In the alternative, and as other federal courts have done, this Court should sever the claims against the Physician Defendants under Rule 21 because those claims are not necessary or indispensable to the resolution of Plaintiffs' claims against the Pharmaceutical Defendants. This Court has recognized that "Rule 21 provides courts with 'broad discretion' to sever improperly joined parties." *In re Vioxx Prods. Liab. Lit.*, MDL No. 1657, 2008 WL 4681368 at *8 (E.D. La. Oct. 21, 2008). Severance is particularly appropriate here in light of the MDL proceeding. Remanding the entire case based on the joinder of local Physician Defendants would "defeat the entire purpose of the MDL" and disrupt efforts to achieve uniform resolution of the product liability claims. *See Sullivan v. Calvert Mem'l Hosp.*, 117 F. Supp. 3d 702, 707 (D. Md. 2015); other cases cited in Section III.A., *infra*. Moreover, the Physician Defendants were improperly *misjoined*, a doctrine recognized in this Circuit, and the claims against them can be severed on that basis as well to preserve jurisdiction over the claims against the Pharmaceutical Defendants. *In re Benjamin Moore & Co.*, 318 F.3d 626, 630 (5th Cir. 2002); *see also Stone v. Zimmer, Inc.*, No. 09-80252-CIV, 2009 WL 1809990, at *1 (S.D. Fla. June 25, 2009); other cases cited in Section III.B., *infra*.

**ARGUMENT**

**I.      This Court Should Defer Ruling On Remand.**

As an initial matter, although Plaintiffs' claims against the Physician Defendants are due to be severed and the Physician Defendants' citizenship disregarded for purposes of assessing subject-matter jurisdiction in this case, to ensure efficiency and judicial economy, the Court should defer ruling on Plaintiffs' remand motion pending completion of generic discovery.

This is especially true because "MDL court[s] must be given greater discretion to organize, coordinate and adjudicate its proceedings. . . ." *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 496 F.3d 863, 866 (8th Cir. 2007). As another Court of

4

2691110-1

Appeals has acknowledged:

> [M]ultidistrict litigation is different because of the large number of cases that must be coordinated, its greater complexity, and the court's statutory charge to promote the just and efficient conduct of the actions. . . . As a result, the considerations that inform the exercise of discretion in multidistrict litigation may be somewhat different, and may tip the balance somewhat differently, from ordinary litigation on an ordinary docket.

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F. 3d 1217, 1222 (9th Cir. 2006).

Likewise, as a member of the JPML (and former MDL judge) has recognized, MDL district courts may "defer consideration of the jurisdictional challenges" pursuant to their "broad scope to manage their own dockets in light of considerations of 'economy of time and effort for itself, for counsel, and for litigants.'" *In re Zyprexa Prods. Liab. Litig.*, 594 F.3d 113, 127 (2d Cir. 2010) (Kaplan, J., concurring) (citations omitted). The MDL court "reasonably may conclude that the court's time, especially early in the litigation, is better spent on [other] activities," for example, when "the expenditure of judicial resources on remand motions likely would be wasted," or when "new cases and new remand motions are likely to be filed throughout the pendency of the litigation." *Id.*

Generic and bellwether discovery in this MDL proceeding are at the early stages. If this case is remanded, the efficiencies of coordinated discovery—one of the mandates of the MDL statute and the JPML's order establishing this proceeding—will be lost. This loss is particularly acute because there are no other Xarelto actions currently pending in Texas state court. Moreover, another case naming a local physician defendant, in which plaintiffs have opposed MDL transfer based on a purported jurisdictional objection, will likely be transferred to this Court shortly and another remand motion involving physician defendants may thus be before this Court soon. *See Morris v. Blake* (E.D. Ky., Case No. 5:16-cv-00081).

2691110-1

To further judicial economy and the coordinated discovery in these cases, this Court should defer ruling on the remand motion pending completion of generic discovery.

## II.     The Physician Defendants Were Fraudulently (Or Improperly) Joined.

In the event this Court proceeds with Plaintiffs' remand motion, it should assess subject-matter jurisdiction without regard to the citizenship of the Physician Defendants, who have been fraudulently (or improperly) joined because Plaintiffs have no "reasonable possibility of recovery" against them. *Kling Realty Co. v. Chevron USA, Inc.*, 575 F.3d 510, 515 (5th Cir. 2009).

Plaintiffs' product liability claims turn on allegations that the Pharmaceutical Defendants failed to adequately warn of the risks of Xarelto and made alleged misrepresentations (affirmatively and by omission) to Ms. Murphy's physicians regarding Xarelto's safety, fitness, and effectiveness. *See* Plaintiffs' Petition ¶¶ 8.1–8.18. That theory necessarily "negates any possible liability of the physicians." *Chiles v. Am. Home Prods. Corp.*, No. 4:03-CV- 802-A, slip op. at *4 (N.D. Tex. Sept. 26, 2003) (attached as Exhibit A). Indeed, *Chiles* is directly on point. There, the plaintiffs—like Plaintiffs here—alleged that the drug-manufacturer defendant made misrepresentations about its product. And the plaintiffs there—again, like Plaintiffs here—sued in-state health-care providers, presumably in an effort to defeat federal jurisdiction. The defendant removed on the basis of fraudulent joinder, and the court denied a motion to remand because the plaintiffs' allegations against the drug manufacturer left no possibility of liability on the part of the health-care providers. *Id.*

Other courts have denied motions to remand on precisely the same reasoning. In *King v. Pfizer*, for example, the court held that the in-state physician had been fraudulently joined where the "overwhelming tenor of the [plaintiff's] complaint [was] how the pharmaceutical defendants negligently, recklessly, and intentionally misled prescribing physicians concerning the risks

6

associated with metoclopramide use and concealed known material risks of metoclopramide from prescribing physicians, including [plaintiff's physician]." *King v. Pfizer, Inc.*, No. 8:13CV290, 2013 WL 6905305, at *8 (D. Neb. Dec. 31, 2013), *report and recommendation adopted*, No. 8:13CV290, 2014 WL 29088 (D. Neb. Jan. 2, 2014). The court denied a motion to remand because the plaintiff's allegations of misrepresentation and concealment—coupled by the lack of any allegations "regarding the information [the plaintiff's] physician knew or should have known"—meant that there was "no reasonable possibility of recovery" against the in-state physician. *Id.* Similarly, the court presiding over the *Rezulin* litigation held that claims against in-state physicians were fraudulently joined and denied remand in a case where—like here—the plaintiffs alleged that a prescription medication "was an unsafe drug and that the manufacturers concealed its risks from the public, physicians, and others." *In re Rezulin Prods. Liab. Litig.*, No. 00 Civ. 2843 (LAK), 2002 WL 31852826, at *2 (S.D.N.Y. Dec. 18, 2002). Numerous courts—including district courts in this Circuit—have used the same reasoning to hold that in-state defendants were fraudulently joined and, accordingly, to deny remand.[1]

---

[1] *See, e.g.*, *Chiles v. Am. Home Prods. Corp.*, No. 4:03-CV- 802-A, slip op. at *4 (N.D. Tex. Sept. 26, 2003) (attached as Exhibit A); *Baisden v. Bayer Corp.*, 275 F. Supp. 2d 759, 763 (S.D. W. Va. 2003) (denying remand in action naming physician defendant where "gravamen of the malpractice case against [physician] is his failure to know what allegedly was deliberately hidden"); *Whatley v. Nastech Pharm. Co.*, No. 1:03cv162GR, slip op. at 5 (S.D. Miss. June 20, 2003) (attached as Exhibit B) (denying remand in action naming physicians; citing *In re Rezulin* with approval); *Welborn v. AstraZeneca Pharm., LP*, No. 4:04CV191LN, slip op. at 4-5 (S.D. Miss. Jan. 28, 2005) (attached as Exhibit C) (denying remand despite presence of non-diverse doctor because "plaintiff has alleged throughout his complaint that the manufacturer/seller misrepresented to physicians . . . that the drug was safe and effective, . . . and failed to disclose the risks of the drug to physicians"); *In re Baycol Prods. Litig.*, MDL No. 1431 (MJD), 02-4835, 2003 WL 21223842, at * 2 (denying remand because "the main thrust of [plaintiff's] action [was] that the [pharmaceutical manufacturer] misrepresented [the medication's] risks and failed to adequately warn of such risks" and the "[p]laintiff [did] not include[ ] any factual assertions ... to support the conclusory allegation that [the defendant physician] 'knew or should have known' of [the medication's] risks"); *Smith v. Bayer Corp.* (*In re Baycol Prods. Litig.*), No. 02-139, MDL No. 1431, slip op. at 4 (D. Minn. May 24, 2002) (attached as Exhibit D) (ruling that pharmacy

7

Plaintiffs attempt to distinguish *In re Rezulin* by mischaracterizing the Pharmaceutical Defendants' argument and Judge Kaplan's *Rezulin* decisions. Plaintiffs point to language in the decision—and from a prior decision by the same court—that alleging "inconsistent claims" is not enough to show fraudulent joinder. *See* Remand Br. at 8–10. But that's not the argument here. Rather, Plaintiffs' claims against the in-state physicians have no "reasonable possibility" of success because they allege that the Pharmaceutical Defendants misrepresented and concealed

---

"cannot be held liable for failing to warn of unknown risks"); *Omobude v. Merck & Co., Inc. et al.*, No. 3:03CV528LN, slip op. at 5, 8 (S.D. Miss. Oct. 3, 2003) (attached as Exhibit E) (denying remand and reasoning that "where a plaintiff has specifically alleged facts from which one would necessarily infer that the defendant in question would not have known information otherwise alleged to have been misrepresented or concealed from him, . . . to sustain his pleading burden, the plaintiff would have to plead at least some facts tending to show why or how the defendant knew or should have known of the information that has been misrepresented to or concealed from him"); *Brown et al. v. Bristol-Myers Squibb Co*, No. 4:02CV301LN, slip op. at 11–12 (S.D. Miss. Nov. 30, 2002) (attached as Exhibit F) (denying remand and reasoning that the allegation that plaintiff's doctor "did not fully disclose to her the specific risks associated" with the drug in question is "essentially meaningless" where the plaintiff "consistently and repeatedly allege[s] throughout the complaint that in the manufacturing defendants' aggressive marketing of Stadol, they failed to disclose all possible side effects associated with the use of Stadol, including, in particular, addiction, and specifically misrepresented the safety and effectiveness of Stadol"); *Porter v. Merck & Co.*, No. 4:03CV12LN, slip op. at 8 (S.D. Miss. June 17, 2003) (attached as Exhibit G) (denying remand and explaining that plaintiffs' "explicit, repeated and consistent charge that the manufacturer defendants concealed and misrepresented information about the subject drugs to physicians," coupled with the conclusory allegation that the doctors "knew or should have known, of the dangerous side effects of these medications," "strongly suggests to the court that the plaintiffs have sued the physicians only as a means of avoiding federal court"); *Flores v. Merck & Co.*, No. C-03-362, slip op. at 2 (S.D. Tex. Mar. 15, 2004) (attached as Exhibit H) (denying remand where allegations against the physician were conclusory and where plaintiffs "claim[ed] that [the manufacturer] 'failed to adequately and timely inform the health care industry of the risks of serious personal injury and death from Vioxx ingestion'"); *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, MDL No. 1407, C02-423R, 2002 WL 34418423, at *3 (W.D. Wash. Nov. 27, 2002) (denying remand in PPA litigation where "the complaint alleges that the manufacturer defendants concealed material facts regarding PPA through product packaging, labeling, advertising, promotional campaigns and materials, and other methods. This allegation directly undermines and contradicts the idea that [the pharmacy] had knowledge or reason to know of alleged defects"); *Louis v. Wyeth-Ayerst Pharm., Inc.*, No. 5:00CV102LN, slip op. at 4–5, 9 (S.D. Miss. Sept. 25, 2000) (attached as Exhibit I) (denying remand because pharmacy defendants lacked "knowledge or reason to know of any of the dangers associated with the product(s)").

8

the very risks that Plaintiffs contend Ms. Murphy's physicians ignored, and they have not alleged how the physicians otherwise should have known of the alleged risks. The earlier *Rezulin* decision ***did not address whether allegations that manufacturing defendants concealed risks from physicians provided notice to physicians as defendants.*** When presented with that question, the *Rezulin* court specifically held the in-state physicians fraudulently joined—not due to inconsistent pleadings, but on the ground that "plaintiffs' claims . . . do not provide the physician defendants sufficient notice of the claims against them," and denied remand. *See* 2002 WL 31852826, at *2.

This Court should do the same. In light of Plaintiffs' misrepresentation and concealment allegations and claims against the Pharmaceutical Defendants and the failure to allege how the Physician Defendants otherwise knew or should have known about the risks of Xarelto, there is no reasonable basis to support Plaintiffs' claims against the Physician Defendants. The Court should hold that the Physician Defendants were fraudulently (or improperly) joined and deny Plaintiffs' motion to remand.

### III. The Physician Defendants Should Be Severed Because They Are Not Necessary Parties To The Product Liability Action.

In addition to being improperly joined, the Physician Defendants are not necessary or indispensable parties to this products liability action. *See* Fed. R. Civ. P. 19. Accordingly, the Court has authority to sever (or drop) Plaintiffs' claims against the Physician Defendants. *See* Fed. R. Civ. P. 21. Severance is particularly warranted here in light of the pending *Xarelto* MDL. Moreover, Plaintiffs have fraudulently (or improperly) *misjoined* the claims against the Physician Defendants. This Court should sever the claims against the Physician Defendants to preserve federal jurisdiction over the product liability claims against the Pharmaceutical Defendants.

9

2691110-1

> **A.     This Court Should Sever Plaintiffs' Claims Against The Physician Defendants, Which Are Not Necessary Or Indispensable Parties**
>
>> *1.     District courts possess broad discretion to sever in-state healthcare providers that are not necessary or indispensable to a product liability case.*

As this Court and others have held, Rule 21 provides a district court with "'broad discretion' to sever improperly joined parties." *In re Vioxx Prods. Liab. Lit.*, MDL No. 1657, 2008 WL 4681368 at *8 (E.D. La. Oct. 21, 2008) (citations omitted). *Accord Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 505 (5th Cir. 2014); *see also Horn v. Lockhart*, 84 U.S. 570, 579 (1873) ("[T]he question always is, or should be, when objection is taken to the jurisdiction of the court by reason of the citizenship of some of the parties, whether to a decree authorized by the case presented, they are indispensable parties, for if their interests are severable and a decree without prejudice to their rights can be made, the jurisdiction of the court should be retained and the suit dismissed as to them"). Indeed, courts routinely sever and remand claims against non-diverse healthcare defendants to preserve their jurisdiction over claims against pharmaceutical manufacturers. *See, e.g.*, *Varley v. Tampax, Inc.*, 855 F.2d 696, 700–01 (10th Cir. 1988) (ordering dismissal without prejudice of non-diverse malpractice claims and judgment in favor of diverse product liability defendant); *Sullivan v. Calvert Mem'l Hosp.*, 117 F. Supp. 3d 702, 707 (D. Md. 2015) (citing "different and distinct" standards of care applicable to medical-malpractice and product liability claims as justification to "sever the claims against the two groups of defendants"); *Mayfield v. London Women's Care, PLLC*, No., 2015 WL 3440492, at *4 (E.D. Ky. May 28, 2015) (same); *Cooke-Bates v. Bayer Corp.*, No. 3:10-cv-261, 2010 WL 3984830, at *4–5 (E.D. Va. Oct. 8, 2010) (severing malpractice claims against a provider from product liability claim against pharmaceutical manufacturer); *DeGidio v. Centocor, Inc.*, No. 3:09-CV-721, 2009 WL 1867676, at *2 (N.D. Ohio June 29, 2009) (severing and remanding non-diverse

10

healthcare defendants).

In determining whether to drop a non-diverse defendant, the Court must first determine whether, under Rule 19(a), a party is "necessary" to the case. A party is necessary if "(1) complete relief cannot be given to existing parties in his absence; (2) disposition of his absence might impair his ability to protect his interest in the controversy; or (3) his absence would expose existing parties to substantial risk of double or inconsistent obligations." Fed. R. Civ. P. 19(a). If the Court finds that the party is "necessary" to the action, then it must evaluate the factors under Rule 19(b) regarding whether the party is "indispensable," by considering whether "(1) a judgment rendered in the party's absence would prejudice the available party; (2) such prejudice could be lessened or avoided; (3) a judgment rendered in the party's absence would be adequate; and (4) the plaintiff has an adequate remedy if the action is dismissed for nonjoinder." Fed. R. Civ. P. 19(b); *see, e.g.*, *Degidio*, 2009 WL 1867676, at *3. Unless the in-state defendants are indispensable to the plaintiff's claims against the out-of-state defendants, the Court may sever and remand the claims of the in-state defendants in order to preserve diversity jurisdiction. *See* Fed. R. Civ. P. 19(b).

Plaintiffs failed to dispute in their motion to remand that the Physician Defendants are not necessary or indispensable parties to the resolution of Plaintiffs' claims against the Pharmaceutical Defendants. Indeed, they cannot dispute that fact. The standard that will apply to the claims against Dr. Kane and Reliant is whether they—as a physician and hospital, respectively—acted below the standard of care for a treating physician/hospital in treating Ms. Murphy and prescribing her Xarelto. These claims have no connection to Plaintiffs' claims against the Pharmaceutical Defendants for allegedly defectively designing Xarelto, providing inadequate warnings with the product, or making misrepresentations and omissions in the

11

product labeling. The Physician Defendants certainly are not *necessary* for the resolution of those claims; they played no role in the design or labeling of the product.

Numerous courts likewise have held that in-state physicians are not necessary or indispensable to the resolution of product liability claims that would otherwise remain in federal court. *See, e.g.*, *Temple v. Synthes Corp.*, 498 U.S. 5 (1990) (holding that doctor and hospital were not necessary parties to claim against medical device manufacturer, even if the defendants are joint tortfeasors); *Sullivan*, 117 F. Supp. 3d at 707 (severing claims against in-state healthcare providers because they were not necessary or indispensable parties to product liability action); *Mayfield*, 2015 WL 3440492, at *3–5 (same). The Physician Defendants will not be prejudiced by severance because, in the unlikely event they are found to be liable for damages, remand of their case will not prevent Plaintiffs from exercising their legal rights against the Pharmaceutical Defendants. *See Dayton Indep. Sch. Dist. v. U.S. Mineral Prods. Co.*, 906 F.2d 1059, 1067-68 (5th Cir. 1990).

> 2. *Severance is particularly appropriate in a case like this one where the product liability claims are subject to an MDL proceeding.*

As in *Vioxx*, this Court should order severance because "joinder does not serve the interests of judicial economy and instead threatens to prejudice the Defendant." *Vioxx*, 2008 WL 4681368 at *8 (ordering severance of health plan plaintiffs). The fact that this case is in an MDL proceeding adds "a critical policy reason why th[e] Court [should exercise] its discretion and sever the two defendant groups." *Sullivan*, 117 F. Supp. 3d at 707; *see also Cooke-Bates*, 2010 WL 3984830, at *4 (favoring severance of claims that block access to MDL proceedings). Remanding this case, despite the option of severing the Physician Defendants to preserve jurisdiction over Plaintiffs' claims against the Pharmaceutical Defendants, would "defeat the entire purpose of the MDL" and disrupt efforts to achieve uniform resolution of the product

liability claims. *Sullivan*, 117 F. Supp. 3d at 707. "Whatever inconvenience [a plaintiff] might suffer from her having to litigate her claims in two separate forums, that inconvenience is far exceeded by the prejudice of requiring the manufacturer . . . to defend on 'many more than just two fronts.'" *Id.*; *see also, e.g.*, *Sutton v. Davol, Inc.*, 251 F.R.D. 500, 505 (E.D. Cal. 2008) ("Defendant's legal and factual position [regarding severance] is compelling, especially in the context of MultiDistrict Litigation. . . . Plaintiffs' claims against the [non-diverse] California Defendants are severed and remanded pursuant to Rule 21 . . . so as to preserve the Pharmaceutical Defendants' right to removal in the remaining multidistrict action and to preserve the interests of judicial expediency and justice so that all pre-trial discovery on the products liability case can be coordinated in a single forum").[2]

\* \* \*

This Court should sever the claims against the Physician Defendants under Rule 21 to preserve federal jurisdiction over this case so that the claims against the Pharmaceutical Defendants can proceed in this MDL proceeding.

**B.  This Court Should Sever The Claims Against The Physician Defendants Because They Have Been Fraudulently (Or Improperly) Misjoined.**

The Physician Defendants also have been fraudulently (or improperly) misjoined, which provides an independent basis for severance. *See Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). This Court has acknowledged that the Fifth Circuit "has appeared to adopt the [*Tapscott* improper joinder] doctrine." *Ngo v. Essex Ins. Co.*, No. 07-7643, 2008 WL 4544352, at \*2 (E.D. La. Oct. 9, 2008). *See also, Hospitality Enters., Inc. v. Westchester Surplus*

---

[2] Plaintiffs rely on cases declining to sever malpractice claims, in actions (unlike this action) not already transferred to an MDL proceeding. Remand Br. at 12-16. The Pharmaceutical Defendants submit that this MDL Court should follow the reasoning of the cases cited herein and sever the claims against the Physician Defendants.

13

*Lines Ins. Co.*, No. 11-234, 2011 WL 1303954, at *2 (E.D. La. Mar. 31, 2011) ("the Fifth Circuit recognizes the doctrine of fraudulent misjoinder").

Another federal district court, employing the doctrine of fraudulent misjoinder (sometimes referred to as, "procedural misjoinder"), severed and remanded negligence and fraud claims against non-diverse healthcare providers, while retaining federal jurisdiction over product liability claims against a pharmaceutical defendant. *See Stone v. Zimmer, Inc.*, No. 09-80252-CIV, 2009 WL 1809990, at *1 (S.D. Fla. June 25, 2009). The *Stone* court reasoned that the plaintiff's claim against her doctor "sounds in medical malpractice, and would require evidence on medical care, treatment and services . . . ." *Id.* at *4. Accordingly, the court held that the claims "do not both involve common questions of law or fact" and do not "aris[e] out of the same transaction or occurrence." *Id.*; *accord Sires v. Eli Lilly & Co.*, No. 5:05-cv-117-JMH, slip op. at 7 (E.D. Ky. May 24, 2005) (attached as Exhibit J) (holding claims against pharmaceutical manufacturer "do not arise out of the same transaction or occurrence as the claims against" healthcare-provider defendants and denying remand); *In re Zyprexa Prods. Liab. Litig.*, No. MDL 1596, 04-CV-1615, 2004 WL 2812095, at *1–2 (E.D.N.Y. Dec. 3, 2004) (severing claims against physicians).

Plaintiffs' two contentions in response to this fraudulent (or improper) misjoinder argument are without merit. First, Plaintiffs contend that the Fifth Circuit "has never expressly adopted the 'fraudulent misjoinder' theory." Remand Br. at 11. But the Fifth Circuit has noted the "force" of the fraudulent-misjoinder theory, and, as shown above, other district courts have applied the theory in similar cases. *In re Benjamin Moore & Co.*, 318 F.3d 626, 630 (5th Cir. 2002); *see also Stone*, 2009 WL 1809990, at *1; *Sires*, slip op. at 7; *In re Zyprexa Prods. Liab. Litig.*, 2004 WL 2812095, at *1–2. Second, Plaintiffs contend that their claims do in fact arise

out of "the same transaction or occurrence" (Remand Br. at 11–12), but that is not so. As the cases cited above show, the claims that the Pharmaceutical Defendants allegedly failed to adequately test their product and allegedly misrepresented or concealed information are independent and distinct from the medical-malpractice claims against the Physician Defendants.[3]

The Court should sever Plaintiffs' improperly misjoined claims against the Physician Defendants.

## CONCLUSION

This Court should defer ruling on this remand motion pending completion of generic discovery to insure consistency and efficiency in Xarelto actions. If the Court elects instead to consider Plaintiffs' motion to remand, that motion should be denied. Plaintiffs' claims against the Physician Defendants are fraudulently joined, and those claims should be severed from the case to allow the Court to preserve jurisdiction over the Pharmaceutical Defendants.

---

[3] Although this Court in other actions (*see Ngo* and *Hospitality Enterprises, supra*) has found that the misjoinder did not rise the level of "egregious misjoinder," for the reasons set forth above, this Court should conclude that the standard is satisfied here, particularly in the context of an MDL proceeding.

15

2691110-1

Respectfully submitted,

KAYE SCHOLER LLP

By: /s/Andrew Solow
Andrew K. Solow
Steven Glickstein
KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8000
Facsimile: (212) 836-8689
andrew.solow@kayescholer.com
steven.glickstein@kayescholer.com


DRINKER BIDDLE & REATH LLP

By: /s/ Susan M. Sharko
Susan M. Sharko
DRINKER BIDDLE & REATH LLP
600 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
Facsimile: (973) 360-9831
susan.sharko@dbr.com


IRWIN FRITCHIE URQUHART & MOORE LLC

By: /s/ James B. Irwin
James B. Irwin
Kim E. Moore
IRWIN FRITCHIE URQUHART
& MOORE LLC
400 Poydras Street
Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
Facsimile: (504) 310-2120
jirwin@irwinllc.com

2691110-1

CHAFFE MCCALL L.L.P.

By: /s/ *John F. Olinde*
John F. Olinde
CHAFFE McCALL L.L.P.
1100 Poydras Street
Suite 2300
New Orleans, LA 70163
Telephone: (504) 585-7241
Facsimile: (504) 544-6084
olinde@chaffe.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that on May 17, 2016, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs and Defendants by operation of the court's electronic filing system and served on all other plaintiff counsel via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre-Trial Order No. 17.

    /s/ *John F. Olinde*