**EXHIBIT F**

Case 2:14-md-02592-EEF-MBN Document 3265-6 Filed 05/17/16 Page 2 of 16
Case 3:15-cv-03590-B Document 1-14 Filed 11/05/15 Page 2 of 16 PageID 275
8:13-cv-00290-LSC-TDT Doc # 1-6 Filed: 09/17/13 Page 2 of 16 - Page ID # 54

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

NICOLE M. BROWN, SANDRA NEELY,
MIRIAM M. LONG, KAREN RODERICK AND
MISTY STALCUP                                                    PLAINTIFFS

VS.                                          CIVIL ACTION NO. 4:02CV301LN

BRISTOL-MYERS SQUIBB COMPANY;
APOTHECON, INC.; CEPHALON, INC.;
AND TERRY FRENCH, M.D., AND
FICTITIOUS PERSONS A, B, C AND D                                 DEFENDANTS

## MEMORANDUM OPINION AND ORDER

There are currently pending in this case the following motions:

1. The motion of plaintiffs Nicole M. Brown, Sandra Neely, Miriam M. Long, Karen Roderick and Misty Stalcup to remand and abstain;

2. The motion of defendant Cephalon to vacate or set aside entry of default and putative default judgment;

3. The motion of defendant Apothecon to set aside entry of default; and

4. Bristol-Myers' motion to strike plaintiffs' rebuttal affidavits.

Each of these motions has been fully briefed by the parties, and are addressed herein.

Plaintiffs, four of whom are Mississippi residents and one of whom is a citizen of Utah, filed this case on June 9, 2002 in the Circuit Court of Kemper County, alleging personal injury from their use of the prescription drug Stadol®. All the plaintiffs asserted claims against the non-resident defendants, Bristol-

Case 2:14-md-02592-EEF-MBN Document 3265-6 Filed 05/17/16 Page 3 of 16
Case 3:15-cv-03590-B Document 1-14 Filed 11/05/15 Page 3 of 16 PageID 296
8:13-cv-00290-LSC-TDT Doc # 1-6 Filed: 09/17/13 Page 3 of 16 - Page ID # 55

Myers, Apothecon and Cephalon, and one, Sandra Neely, one of the Mississippi plaintiffs, asserted claims against her prescribing physician, Terry French.

On August 5, 2002, defendants Bristol-Myers, Apothecon and Cephalon removed the case to this court pursuant to 28 U.S.C. § 1441 and § 1452, asserting both diversity jurisdiction under 28 U.S.C. § 1332 and bankruptcy jurisdiction under 28 U.S.C. § 1334. Defendants contend that complete diversity exists in this case because plaintiffs "have improperly and fraudulently joined together and have improperly and fraudulently joined Dr. Terry French, the one resident defendant." Finally, defendants contend that the court has removal jurisdiction on the basis that the claims of two of the plaintiffs, Karen Roderick and Sandra Neely, are the property of their bankruptcy estates.

In their motion, plaintiffs argue this case is due to be remanded on the basis that defendants' removal was untimely. They further assert that Terry French is a proper defendant, that fraudulent misjoinder is no basis for remand and that although the claims of Karen Roderick do relate to her pending Chapter 13 bankruptcy proceeding, abstention and remand are mandated, or at least warranted. The court addresses each of these arguments in turn.

Timeliness of Removal:

Defendants Bristol-Meyers, Apothecon and Cephalon filed their notice of removal on August 5, 2002. Plaintiffs maintain that the notice of removal was not filed within thirty days of June 28,

Case 2:14-md-02592-EEF-MBN Document 3265-6 Filed 05/17/16 Page 4 of 16
Case 3:15-cv-03590-B Document 1-14 Filed 11/05/15 Page 4 of 16 PageID 297
8:13-cv-00290-LSC-TDT Doc # 1-6 Filed: 09/17/13 Page 4 of 16 - Page ID # 56

2002, the date on which the first defendant was properly served with process, and that consequently, the notice of removal was untimely. They contend alternatively that even if the court were to conclude that their attempted service on Apothecon was ineffective, removal was still untimely, since the case was not removed within thirty days of their July 3, 2002 service on Cephalon. In the court's opinion, neither defendant was properly served, and therefore, the notice of removal was timely.

The general removal statute, 28 U.S.C. § 1446(b), provides as follows:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

In Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 119 S. Ct. 1322, 143 L. Ed. 2d 448 (1999), the Supreme Court, applying the "bedrock principle" that "[a]n individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process," concluded that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service." Id. at 347-48, 119 S. Ct. 1322. Following Murphy

3

Case 2:14-md-02592-EEF-MBN Document 3265-6 Filed 05/17/16 Page 5 of 16
Case 3:15-cv-03590-B Document 1-14 Filed 11/05/15 Page 5 of 16 PageID 278
8:13-cv-00290-LSC-TDT Doc # 1-6 Filed: 09/17/13 Page 5 of 16 - Page ID # 57

Brothers, numerous courts have recognized that the relevant date for gauging timeliness of removal is the date on which **proper** service was effected or, if there has been no proper service, the date on which objections to the sufficiency of process or service of process are waived.[1]

Mississippi Rule of Civil Procedure Rule 4(d)(4) requires that service upon a "domestic or foreign corporation or upon a partnership or other unincorporated association" be made by

---

[1] See, e.g., Liberty Mut. Ins. Co. v. Bayer Corp., No. 02-343-GMS, 2002 WL 1467331, *2 (D. Del. 2002) (stating that "only after a plaintiff has rendered proper service is a defending party obligated to take action"); Mauldin v. Blackhawk Area Credit Union, No. 01 C 50221, 2002 WL 23830, *1 (N.D. Ill. January 2002)(holding that "the thirty-day removal technically never really began" since the defendant was not properly served with process, "meaning [the defendant's] notice of removal was timely"); Heredia v. Transp. S.A.S., Inc., 101 F. Supp. 2d 158, 160 (S.D.N.Y. 2000) ("[O]nce a defendant receives a copy of the initial pleading--in this case, the summons and complaint--the thirty-day period for filing notice of removal is triggered, provided that service of the initial pleading is proper."); Tabbert, Hahn, Earnest, Webble, P.C. v. Lanza, 94 F. Supp. 2d 1010, 1012 (S.D. Ind. 2000) (determinative issue was whether plaintiff's attempt at service was proper, for if it was, "then the thirty-day removal clock began to run at that time and the [defendants'] Notice of Removal [more than thirty days later] would be untimely . . . [but] if [the] attempts at service [were] ineffective, then the removal clock would still not have begun (because there ha[d] been no other attempts at service) and the Notice of Removal would be timely"); Big B Automotive Warehouse Distributors, Inc. v. Cooperative Computing, Inc., No. SC 00-2602, 2000 WL 1677948, *1-2 (N.D. Cal. Nov. 2000) (stating that under Murphy Bros., "it is not enough for Plaintiffs to show that Defendant . . . actually received a copy of the complaint by a particular date; Plaintiffs must demonstrate compliance with the requirements of service."); Ward v. Aetna Life Ins. Co., No. 98 Civ. 542E, 1999 U.S. Dist. LEXIS 5133,*2 (W.D.N.Y. 1999) (stating that "the Court's reasoning [in Murphy Bros.] supports the conclusion that the time for removal commences when service is completed and jurisdiction over the defendant has been obtained."); see also infra p. 9.

4

Case 2:14-md-02592-EEF-MBN Document 3265-6 Filed 05/17/16 Page 6 of 16
Case 3:15-cv-03590-B Document 1-14 Filed 11/05/15 Page 6 of 16 PageID 279
8:13-cv-00290-LSC-TDT Doc # 1-6 Filed: 09/17/13 Page 6 of 16 - Page ID # 58

"delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive process." Rule 4(c)(5), which governs service on non-resident defendants, provides for service by certified mail:

> In addition to service by any other method provided by this rule, a summons may be served on a person outside this state by sending a copy of the summons and of the complaint to the person to be served by certified mail, return receipt requested. Where the defendant is a natural person, the envelope containing the summons and complaint shall be marked by "restricted delivery." Service by this method shall be deemed complete as of the date of delivery as evidenced by the receipt or by the returned envelope marked "Refused." 4(d)(4) requires that service upon a "domestic or foreign corporation" be made by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive process."

Here, the record reflects that plaintiffs sent the summons and complaint to Apothecon via certified mail, return receipt requested, but did not address it to any particular person. Rather, though they purported to send it "restricted delivery," plaintiffs failed to designate any person to whom delivery was to be restricted and mailed it instead to "Apothecon, Inc., Route 2, Province Line Road, Princeton, New Jersey." The papers were signed for by an employee of Bristol-Myers named John Kozak; but evidence submitted by Apothecon establishes that Kozak was not an officer, managing or general agent or any other agent authorized by appointment or by law to receive process for Apothecon. In fact, the evidence establishes that on July 2, the summons and complaint were returned to the sender, via United States Postal

5

Case 2:14-md-02592-EEF-MBN Document 3265-6 Filed 05/17/16 Page 7 of 16
Case 3:15-cv-03590-B Document 1-14 Filed 11/05/15 Page 7 of 16 PageID 280
8:13-cv-00290-LSC-TDT Doc # 1-6 Filed: 09/17/13 Page 7 of 16 - Page ID # 59

Service, on July 2, 2002 and received by the sender on July 17, 2002, "because it could not be delivered as addressed."

In Rogers v. Hartford Life and Accident Insurance Company, 167 F.3d 933, 940 (5th Cir. 1999), the court considered the interrelationship between Rule 4(c)(5) and 4(d) with respect to service on nonresident unincorporated associations, and interpreted these rules as follows:

> We begin by examining the plain language of Rule 4(c)(5). The first sentence of the Rule states that "a summons may be served on a person outside this state by sending a copy of the summons and of the complaint to the person to be served by certified mail, return receipt requested." Miss. R. Civ. P. 4(c)(5) (emphasis added). The Rule then states that "[w]here the defendant is a natural person, the envelope containing the summons and complaint shall be marked 'restricted delivery.'" Miss R. Civ. P. 4(c)(5) (emphasis added). The Rule, therefore, distinguishes between the "person" that physically receives service, and the actual "defendant." The two terms are not synonymous.
>
> Interpreting Rule 4(c)(5) in this way is appropriate, because this interpretation makes Rule 4(c)(5) consistent with Rule 4(d). Rule 4(d), which is entitled "Summons and Complaint: Person to Be Served," specifically identifies the "person" the plaintiff must serve with process based on the type of defendant involved in the case. If the defendant is an "unincorporated association which is subject to suit under a common name," like the Plan, then the plaintiff must deliver "a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process." Miss. R. Civ. P. 4(d)(4). Thus, when the defendant is an unincorporated association the "person" referred to in Rule 4(c)(5) is not the defendant itself, but the agent authorized to receive service on the defendant's behalf.

6

Case 2:14-md-02592-EEF-MBN Document 3265-6 Filed 05/17/16 Page 8 of 16
Case 3:15-cv-03590-B Document 1-14 Filed 11/05/15 Page 8 of 16 PageID 281
8:13-cv-00290-LSC-TDT Doc # 1-6 Filed: 09/17/13 Page 8 of 16 - Page ID # 60

Rogers, 167 F.3d at 941.[2] Plaintiffs did not properly serve Apothecon.

Turning, then, to Cephalon, it appears from the record that plaintiffs did correctly address and request restricted delivery of their certified mail with the summons and complaint to John Osborn, Cephalon's general counsel and corporate secretary, all in accordance with Rule 4(c)(5). However, the Postal Service erroneously allowed the certified mail to be signed for by and delivered to John Kolb. Kolb, who is described as a mail clerk and maintenance man for Cephalon, is not an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive process on behalf of Cephalon, and he was not authorized to sign for restricted delivery letters on behalf of Osborn.

It does appear in the case of Cephalon, as contrasted with the situation with Apothecon, the certified mail did make its way to John Osborn, the person to whom it was addressed, and hence the summons and complaint were actually received by a proper person to receive process on this defendant's behalf. In the court's opinion, however, where process, though properly directed by the plaintiff in accordance with the rules governing service of process, is not delivered in accordance with the plaintiff's directions and in accordance with the rules, it cannot be said

---

[2] See also 1 Mississippi Civil Procedure § 2.12 (2001) (stating that "[i]f the plaintiff is in possession of the name and address of the officer or managing agent of a foreign corporation, service may be made by mail pursuant to Rule 4(c)(5)).

7

Case 2:14-md-02592-EEF-MBN Document 3265-6 Filed 05/17/16 Page 9 of 16
Case 3:15-cv-03590-B Document 1-14 Filed 11/05/15 Page 9 of 16 PageID 282
8:13-cv-00290-LSC-TDT Doc # 1-6 Filed: 09/17/13 Page 9 of 16 - Page ID # 61

that proper service has been effected. Simply stated, process was not "served" on a person authorized to receive service of process. See Kolikas v. Kolikas, 821 So. 2d 874, 878 (Miss. 2002) ("The rules on service of process are to be strictly construed. If they have not been complied with, the court is without jurisdiction unless the defendant appears on his own volition."). Accordingly, the court concludes Cephalon was not effectively served with process on July 3, 2002, as claimed by plaintiffs, and the thirty-day removal clock thus did not commence to run at that time.

There remains the question of when the time period for removal started to run. In this regard, the court recognizes that Cephalon filed an answer in this court on August 9, 2002, following removal, and in its answer, did not raise any objection to the sufficiency of service of process; Cephalon thereby waived any objections to the sufficiency of service. However, in the court's opinion, the thirty-day period for removal could not have begun to run on the basis of service of process on Cephalon until Cephalon actually waived its objections to the sufficiency of service. See Thomas v. Klinkhamer, No. 00 C 2654, 2000 WL 967984, *1-2 (N.D. Ill. 2000) (holding that 30-day period for removal began when defendants waived objections to sufficiency of service of process by appearing before the court without contesting service of process); Prescott v. Memorial Med. Center-Livingston, No. 9:00CV-00025, 2000 WL 532035, 3 (E.D. Tex. 2000) (observing that the Supreme Court in Murphy Brothers indicated that time limits run from the date of service of citation or from the time

8

Case 3:14-md-02592-EEF-MBN Document 3265-6 Filed 05/17/16 Page 10 of 263
Case 3:15-cv-03590-B Document 1-14 Filed 11/05/15 Page 10 of 16 PageID 283
8:13-cv-00290-LSC-TDT Doc # 1-6 Filed: 09/17/13 Page 10 of 16 - Page ID # 62

of waiver of that service). By the time that occurred in this case, Bristol-Myers had been served with process and, within thirty days of being served on July 9, Bristol-Myers, with the consent of Apothecon and Cephalon, had removed the case. The removal was thus timely.

### Fraudulent Joinder/Misjoinder

The five plaintiffs in this case have all sued Bristol-Myers, Apothecon and Cephalon (the manufacturing defendants), alleging vaguely that as a result of their having taken the prescription drug Stadol for unspecified conditions, each became addicted and suffered injury as a result of their prolonged use os Stadol. In addition to suing the manufacturers, one of the Mississippi plaintiffs, Sandra Neely, has also sued Terry French, the Mississippi doctor who prescribed Stadol for her.

In their notice of removal, defendants asserted that Dr. French had been fraudulently joined and claimed alternatively that Neely's co-plaintiffs had "fraudulently misjoined" their claims with those of Neely in order to defeat diversity jurisdiction over their claims against the diverse manufacturer defendants. Having reviewed plaintiffs' complaint, the court concludes that Dr. French has been fraudulently joined, for reasons that follow.

The first amended complaint filed by plaintiffs in the Circuit Court of Kemper County contains sixteen paragraphs of "factual allegations," followed by twelve counts, the first eleven of which are primarily products liability claims directed against the manufacturer defendants, Bristol-Myers, Apothecon and

9

Case 2:14-md-02592-EEF-MBN Document 3265-6 Filed 05/17/16 Page 11 of 16
Case 3:15-cv-03590-B Document 1-14 Filed 11/05/15 Page 11 of 16 PageID 284
8:13-cv-00290-LSC-TDT Doc # 1-6 Filed: 09/17/13 Page 11 of 16 - Page ID # 63

Cephalon. The final count encompasses Neely's putative negligence claim against Dr. French.

The "facts" set forth by plaintiff in their complaint are these: In 1992, Bristol-Myers obtained FDA approval for its nasal spray form of Stadol as an uncontrolled substance by falsely representing to the FDA and to the DEA that Stadol had few addictive qualities, and by further representing that it would be used in the same manner as prior forms of Stadol, namely, for temporary, postoperative pain relief, and not for prolonged and repetitive use. Plaintiffs allege that because the manufacturer defendants misled the FDA and DEA about the addictive nature of Stadol, it was not initially classified as a controlled substance, as a result of which it was more readily prescribed and more abundantly purchased. Plaintiffs charge that after the manufacturer defendants misled the FDA and DEA into not classifying Stadol as a controlled substance, they then began aggressively marketing Stadol, not for temporary, non-recurring pain, the use which had been identified to the FDA and DEA, but instead for chronic pain, with an emphasis on migraine headaches. They allege that "[u]pon government approval and at the urging of the corporate Defendants' marketing campaign, physicians in the State of Mississippi and elsewhere within the United States started prescribing Stadol for their patients." Plaintiffs allege that they justifiably relied on "the corporate Defendants' marketing and assurances of the safety and non-addictiveness of its product," including defendants' literature and information

10

Case 2:14-md-02592-EEF-MBN Document 3265-6 Filed 05/17/16 Page 12 of 16
Case 3:15-cv-03590-B Document 1-14 Filed 11/09/15 Page 12 of 16 PageID 285
8:13-cv-00290-LSC-TDT Doc # 1-6 Filed: 09/17/13 Page 12 of 16 - Page ID # 64

contained in the Physician's Desk Reference, which described Stadol as a very mild drug with very little chance of abuse or addiction yet which provided patients with immediate and remarkable relief.

No facts are set forth in the complaint with respect to Dr. French, other than that he undertook to diagnose and treat Sandra Neely's "specific medical condition," and that he "failed to disclose to her the specific risks associated with the use of Stadol, to fully monitor and evaluate her progress and to do all things otherwise necessary and proper for her treatment." She charges that Dr. French therefore failed to obtain her informed consent to the use of Stadol, the lack of which proximately caused her injuries and damages.

The premise of Neely's negligence claim against Dr. French is that he was fully knowledgeable about the challenged propensities of Stadol. However, plaintiffs consistently and repeatedly allege throughout the complaint that in the manufacturing defendants' aggressive marketing of Stadol, they failed to disclose all possible side effects associated with the use of Stadol, including, in particular, addiction, and specifically misrepresented the safety and effectiveness of Stadol. Thus, in terms of Dr. French's potential liability, Neely's allegation that he "did not fully disclose to her the specific risks associated with Stadol" is essentially meaningless, since there is no allegation or hint of an allegation in the complaint that Dr. French knew or should or could have known of the information that

11

Case 3:14-md-02592-EEF-MBN   Document 2655-6   Filed 05/17/16   Page 13 of 16
Case 3:15-cv-03590-B   Document 1-14   Filed 11/05/15   Page 13 of 16   PageID 286
8:13-cv-00290-LSC-TDT   Doc # 1-6   Filed: 09/17/13   Page 13 of 16 - Page ID # 65

plaintiffs pointedly allege was withheld by the manufacturer defendants.[3] The court thus concludes that based on the allegations of her complaint, Neely has no reasonable possibility of recovery against Dr. French and that he should be dismissed as fraudulently joined.[4] See Hart v. Bayer Corp., 199 F.3d 239, 246 (5th Cir. 2000) ("'To prove their allegation of fraudulent joinder [removing parties] must demonstrate that there is no possibility

---

[3] Neely does allege that Dr. French had a duty to "be fully informed . . . of the dangers and risks inherent in the use of Stadol," but there is nothing in indicate how Dr. French was to have become "fully informed" of this information that plaintiffs contend the manufacturer defendants failed to disclose. That is, plaintiffs allege that the information disseminated by the manufacturer defendants, including that contained in the package inserts and in the Physician's Desk Reference, did not contain information about the risks of which plaintiffs complain, and they do not allege that Dr. French did or could have obtained the subject information. Cf. Thompson v. Carter, 518 So. 2d 609, 620 (Miss. 1987) (observing that at the point a physician diagnoses his patient and undertakes treatment with medication, "he may consult a Physician's Desk Reference, drug inserts, or a pharmacologist to determine the best drug to be given to this patient for this ailment").

[4] In a similar case decided by this court before the Mississippi Supreme Court finally laid to rest the question of applicability of the learned intermediary doctrine in the case of pharmacists, see Moore v. Memorial Hosp. of Gulfport, 825 So. 2d 658, 664 (Miss. 2002) (extending learned intermediary doctrine to pharmacists), this court found fraudulent joinder of resident pharmacist defendants who had dispensed the allegedly unsafe drugs to the plaintiffs. Lois v. Wyeth-Ayerst Pharmaceuticals, Inc., Civ. Action No. 5:00CV102LN (Sept. 25, 2000). The court concluded that plaintiffs' conclusory allegation that the pharmacist defendants "knew or should have known" that the subject drugs were unsafe did not suffice to render them potentially liable since the plaintiffs' complaint, "the major theme of which is the manufacturers' intentional concealment of the true risks of the drug(s), coupled with dissemination through various media of false and misleading information of the safety of the drug(s) at issue, belie[d] any suggestion of knowledge, or reason to know by these resident defendants." Id. slip op. at 5.

12

Case 2:14-md-02592-EEF-MBN Document 3265-6 Filed 05/17/16 Page 14 of 16
Case 3:15-cv-03590-B Document 1-14 Filed 11/05/15 Page 14 of 16 PageID 287
8:13-cv-00290-LSC-TDT Doc # 1-6 Filed: 09/17/13 Page 14 of 16 - Page ID # 66

that [plaintiff] would be able to establish a cause of action against them in state court.'") (citations omitted); Griggs v. State Farm Lloyds, 181 F.3d 694 (5th Cir. 1999) (affirming dismissal of resident, nondiverse defendant as fraudulently joined).[5]

Bankruptcy Jurisdiction

In view of the court's conclusion that it has diversity jurisdiction, the court finds it unnecessary to determine whether

---

[5] Having concluded that Neely has failed to allege a cognizable claim against Dr. French, the court need not address whether her claims have been fraudulently misjoined with the claims of her co-plaintiffs, though it could well be that this case does present an instance of fraudulent misjoinder sufficient to warrant relief. In this vein, the court recognizes that the Fifth Circuit recently approved the concept of fraudulent misjoinder of plaintiffs in In re Benjamin Moore & Co., 309 F.3d 296 (5th Cir. 2002). There, although the court denied the multiple defendants' petition for writ of mandamus in the wake of the district court's order granting remand, the court suggested that the case might be one of fraudulent misjoinder and observed that the district court should have considered the defendants' arguments on that point. See id. (stating, "[T]he point cannot be ignored, since it goes to the court's jurisdiction and to the defendants' rights to establish federal jurisdiction following removal," and describing this as "a feature critical to jurisdictional analysis"). Though the complaint in the case at bar is entirely lacking in factual allegations as to the individual plaintiffs' circumstances, it does not appear from the complaint that the plaintiffs have anything in common other than having taken Stadol. The court questions whether this is a sufficient tie to bind the claims of these plaintiffs. Cf. In re Rezulin Prods. Liability Litigation, 168 F. Sup. 2d 136 (S.D.N.Y. 2001) (severing claims of five plaintiffs with claims against their nondiverse physicians from those other six plaintiffs who asserted no such claims in order to preserve the defendants' right to removal in the remaining actions," and observing that the costs and efficiency benefits to joined plaintiffs "simply do not carry the same weight when balanced against the defendant's right to removal."). But this court need not decide the issue.

13

Case 2:14-md-02592-EEF-MBN Document 3265-6 Filed 05/17/16 Page 15 of 16
Case 3:15-cv-03590-B Document 1-14 Filed 11/05/15 Page 15 of 16 PageID 288
8:13-cv-00290-LSC-TDT Doc # 1-6 Filed: 09/17/13 Page 15 of 16 - Page ID # 67

it might also properly have and exercise jurisdiction based on the bankruptcy filing of two of the plaintiffs.[6]

### Apothecon's Motion to Set Aside Default and Cephalon's Motion to Set Aside Entry of Default and Putative Default Judgment:

Prior to removal, plaintiffs obtained a clerk's entry of default as to Apothecon and an entry of default and default judgment as to Cephalon. These defendants have moved for relief from entry of default and default judgment on the basis that they were not properly served with process. This court, which has now determined that it has subject matter jurisdiction, has concluded that service of process was not effective as to either of these defendants. It thus follows that the entries of default and of the default judgment are void, having been entered without jurisdiction over those parties.[7] See McCain v. Dauzat, 791 So. 2d 839, 842 (Miss. 2001) (stating, "A court must have jurisdiction, [sic] proper service of process, in order to enter a default judgment against a party. Otherwise, the default judgment is void. If a default judgment is void, the trial court has no discretion and must set the judgment aside."). Defendants' motions will be granted.

---

[6] Bristol-Meyers has moved to strike exhibits submitted by plaintiffs with their rebuttal on the motion to remand and abstain. Those affidavits are devoted to the issue of bankruptcy jurisdiction, and since the court has concluded that this issue need not be addressed, the motion to strike is now moot and will be denied as such.

[7] "The proper procedure respecting the opening vel non of a removed default judgment is to file a motion to set aside . . . in federal court . . . ." Pennsylvania Nat'l Bank & Trust v. American Home Assurance Co., 87 F.R.D. 152, 154 (E.D. Pa. 1980).

14

Case 2:14-md-02592-EEF-MBN Document 3265-6 Filed 05/17/16 Page 16 of 16
Case 3:15-cv-03590-B Document 1-14 Filed 11/05/15 Page 16 of 16 PageID 289
8:13-cv-00290-LSC-TDT Doc # 1-6 Filed: 09/17/13 Page 16 of 16 - Page ID # 68

### Conclusion

Based on the foregoing, it is ordered that plaintiffs' motion to remand is denied and defendant Terry French is dismissed as fraudulently joined; Apothecon's motion to set aside entry of default is granted; Cephalon's motion to set aside entry of default and putative default judgment is granted; and Bristol-Meyer's motion to strike is denied as moot.

SO ORDERED this 30th day of November, 2002.

_____
UNITED STATES DISTRICT JUDGE

15