**EXHIBIT G**

Case 2:14-md-02592-EEF-MBN Document 3265-7 Filed 05/17/16 Page 2 of 10
Case 3:15-cv-03590-B Document 1-15 Filed 11/05/15 Page 2 of 10 PageID 291
8:13-cv-00290-LSC-TDT Doc # 1-7 Filed: 09/17/13 Page 2 of 10 - Page ID # 70

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION



ANNIE PORTER, FLORA SUMRALL,
AND ANNIE LAURIE VARNADO

PLAINTIFFS

VS.

CIVIL ACTION NO. 4:03CV12LN

MERCK & CO., INC.; G.D. SEARLE
AND CO., A SUBSIDIARY OF PHARMACIA,
INC., A FOREIGN CORPORATION;
MONSANTO COMPANY; PFIZER, INC.;
JOHN DOE #1, M.D.; JOHN DOE #2,
M.D., JOHN DOE #3, M.D., AND JOHN
DOE #4 M.D., ALL MISSISSIPPI
PHYSICIANS WHOSE TRUE NAMES AND
IDENTITIES ARE PRESENTLY UNKNOWN
OR UNCONFIRMED BUT WILL BE
SUBSTITUTED BY AMENDMENT

DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of plaintiffs Amos Porter, Flora Sumrall and Annie Laurie Varnado to remand and motion for leave to amend the complaint. Defendants G.D. Searle LLC, Pharmacia Corporation, Monsanto Company (now known as Pharmacia Corporation) and Pfizer, Inc. have responded in opposition to the motion and the court, having considered the memoranda of authorities submitted by the parties, concludes that both the motion to amend and the motion to remand should be denied.

Plaintiffs, through counsel, filed this lawsuit in the Circuit Court of Jasper County on December 31, 2002, seeking to recover damages for injuries allegedly sustained as a result of their having taken one or both of the prescription pain relief

Case 2:14-md-02592-EEF-MBN Document 3265-7 Filed 05/17/16 Page 3 of 10
Case 3:15-cv-03590-B Document 1-15 Filed 11/05/15 Page 3 of 10 PageID 292
8:13-cv-00290-LSC-TDT Doc # 1-7 Filed: 09/17/13 Page 3 of 10 - Page ID # 71

drugs Celebrex and Vioxx. Plaintiffs, all Mississippi residents, named as defendants five non-resident pharmaceutical manufacturers, and also included four "John Doe" defendants, all of whom were alleged to be "Mississippi physicians whose true names and identities are presently unknown or unconfirmed." On January 10, 2003, the manufacturer defendants, who had not yet been served with process, removed the case to this court on the basis of diversity jurisdiction. In their motion to remand, filed promptly following removal, plaintiffs contend that defendants' pre-service removal constitutes a defect in the removal procedure which necessitates remand. Plaintiffs further urge that in the event the case is not remanded on that basis, they should be allowed to amend their complaint to identify those "Mississippi physicians" who were initially identified only as "John Doe" defendants, as a consequence of which complete diversity will be lacking, and remand thus required pursuant to 28 U.S.C. § 1447(e).

There is no question but that there is now (and that there was at the time of removal) jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds the $75,000 threshold for jurisdiction under the diversity statute (a point which plaintiffs do not dispute); and although plaintiffs, themselves Mississippi residents, named John Doe defendants whom they represented were also Mississippi residents, the law is clear that "the citizenship of defendants sued under fictitious names shall be disregarded" in determining whether there is complete diversity for removal purposes. 28

2

Case 2:14-md-02592-EEF-MBN Document 3265-7 Filed 05/17/16 Page 4 of 10
Case 3:15-cv-03590-B Document 1-15 Filed 11/05/15 Page 4 of 10 PageID 293
8:13-cv-00290-LSC-TDT Doc # 1-7 Filed: 09/17/13 Page 4 of 10 - Page ID # 72

U.S.C. § 1441(a). The remaining defendants named by plaintiffs in the complaint are all citizens of states other than Mississippi, and consequently there is complete diversity of citizenship between the parties.

Moreover, while plaintiffs contend that under the Supreme Court's decision in Murphy Brothers v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 347-48, 119 S. Ct. 1322, 143 L. Ed. 2d 448 (1999), defendants could not properly remove the case until they were formally served with process and that defendants' pre-service removal was therefore defective, neither this court, nor any court identified by plaintiff or of which this court is aware, has interpreted Murphy Brothers as precluding removal by a defendant prior to formal service of process. The Court in Murphy Brothers held only that a defendant is not obligated to take action in a case until after it has been properly served with process;[1] it did not hold that a defendant must await service to take action. See Mauldin v. Blackhawk Area Credit Union, No. 01 C 50221, 2002 WL 23830, *1 (N.D. Ill. January 2002)(holding that since the defendant was not properly served with process, "the thirty-day removal technically never really began," and therefore, "[the

---

[1] In Murphy Brothers, the Supreme Court, applying the "bedrock principle" that "[a]n individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process," concluded that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service." Id. at 347-48.

3

Case 2:14-md-02592-EEF-MBN Document 3265-7 Filed 05/17/16 Page 5 of 10
Case 3:15-cv-03590-B Document 1-15 Filed 11/05/15 Page 5 of 10 PageID 294
8:13-cv-00290-LSC-TDT Doc # 1-7 Filed: 09/17/13 Page 5 of 10 - Page ID # 73

defendant's] notice of removal was timely"). Defendants' removal was therefore both substantively and procedurally proper.

The question then becomes whether plaintiffs should now be permitted to amend their complaint, post-removal, to include as defendants those physicians who were identified as John Doe defendants in their original complaint. For the reasons that follow, the court is of the opinion that in this case, plaintiffs' request to amend should be denied.

28 U.S.C. § 1447(e) states:

> (e) If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court.

While the statute, by its terms, refers only to post-removal efforts by plaintiffs to "join additional defendants," the Fifth Circuit has recognized that § 1447(e) applies, as well, to the identification of fictitious defendants after removal. See Doleac ex rel. Doleac v. Michalson, 264 F.3d 470, 475 (5th Cir. 2001).

In Hensgens v. Deere & Company, 833 F.2d 1179 (5th Cir. 1987), the Fifth Circuit addressed the standard applicable to where a plaintiff seeks to amend to add a non-diverse defendant following removal of an action on the basis of diversity jurisdiction. The court held that in such cases, the district court "should consider the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether plaintiff has been dilatory in asking for amendment, whether plaintiff will be significantly injured if amendment is not allowed, and any other

4

Case 2:14-md-02592-EEF-MBN Document 3265-7 Filed 05/17/16 Page 6 of 10
Case 3:15-cv-03590-B Document 1-15 Filed 11/05/15 Page 6 of 10 PageID 295
8:13-cv-00290-LSC-TDT Doc # 1-7 Filed: 09/17/13 Page 6 of 10 - Page ID # 74

factors bearing on the equities." Id. at 1182. Although this case differs somewhat from the typical § 1447(e) case in that the non-diverse defendants proposed to be identified by the amendment were fictitiously named in the original complaint, that circumstance does not render the Hensgens analysis inappropriate since "the equitable nature of the Hensgens analysis allows the court to consider not only the plaintiff's motive, but other equitable factors," as well. Lacy v. ABC Ins. Co., No. Civ. A. 95-3122, 1995 WL 688786, *2 (E.D. La. Nov. 17, 1995) (such factors might include "the strength of plaintiff's case against the non-diverse defendants and the diverse defendant's ability to anticipate the citizenship of the fictitiously named defendant(s) at the time of removal").

Turning, then, to the Hensgens factors, in the case at bar, it may be somewhat difficult to characterize as truly "dilatory" plaintiffs' request to amend since plaintiffs did indicate in their original complaint that they were desirous of suing the physicians who prescribed Vioxx and/or Celebrex to them. On the other hand, there can be no doubt that plaintiffs themselves knew - they must have known - the identity of their own prescribing physicians at the time the complaint was filed; and yet their attorneys, rather than take the time to ascertain this information from their clients, resorted to the expedient of suing the doctors as fictitious parties. Apparently, this was done in counsels' haste to get the complaint filed before Mississippi's recently enacted medical malpractice tort reform law took effect on January

5

Case 2:14-md-02592-EEF-MBN Document 3265-7 Filed 05/17/16 Page 7 of 10
Case 3:15-cv-03590-B Document 1-15 Filed 11/05/15 Page 7 of 10 PageID 296
8:13-cv-00290-LSC-TDT Doc # 1-7 Filed: 09/17/13 Page 7 of 10 - Page ID # 75

1, 2003.[2] The simple fact is, plaintiffs' counsel could easily have known and confirmed the identity of the John Doe defendants before filing this suit, and yet did not seek to learn the identity of the John Doe defendants, or any of them, until after the case was removed.[3] Given that the identity of these defendants could have been known before suit was filed, it can fairly be said that the post-removal attempt to join them as defendants is "dilatory."

That brings the court to the question of plaintiffs' purpose, or motivation, in suing, or attempting to sue, these doctors. It is perhaps true in the usual case that the fact that a plaintiff has included a defendant as a fictitious defendant in his state court pleading would tend to belie an inference that the plaintiff's motivation for seeking to amend post-removal to substitute a real party for the one previously identified only as a fictitious party is to defeat diversity jurisdiction. See Gilberg v. Stepan Co., 24 F. Supp. 2d 355, 358 (E.D. La. 1998) (fact that the plaintiff was unable to effect the substitution before the defendant removed "does not somehow convert any subsequent effort at substitution into a joinder "for the sole

---

[2] As defendants note, this new legislation, which took effect the day after plaintiffs' complaint was filed, placed significant restrictions on filing lawsuits against physicians.

[3] Perhaps they had intended to do this prior to serving the diverse defendants, working under the mistaken impression that the case would not be removable until at least one of the diverse defendants was served, and were foiled in their efforts when the diverse defendants filed their notice of removal prior to service of process.

6

Case 2:14-md-02592-EEF-MBN Document 3265-7 Filed 05/17/16 Page 8 of 10
Case 3:15-cv-03590-B Document 1-15 Filed 12/05/15 Page 8 of 10 PageID 297
8:13-cv-00290-LSC-TDT Doc # 1-7 Filed: 09/17/13 Page 8 of 10 - Page ID # 76

purpose of destroying diversity'"); <u>Davis v. American Commercial Barge Line Co.</u>, No. Civ. A. 98-537, 1998 WL 341840, at *2 (E.D. La. June 25, 1998) (substitution of real party for fictitious party named prior to removal indicates purpose of joinder is not solely to destroy diversity). Here, however, the court is persuaded that plaintiffs' motivation, not just for undertaking to now substitute these doctors as the real party defendants, but for having undertaken to sue them in the first place, was to avoid federal jurisdiction.

Plaintiffs' complaint contains eleven counts, ten of which are directed against the manufacturer defendants, and assert products liability based claims, and fraudulent and negligent misrepresentation by those defendants as to the safety and efficacy of the products at issue. A major theme of these counts - in fact, the major theme - is that the manufacturer defendants knew of the dangers posed by these drugs all along, and yet they withheld this information and intentionally marketed them, "both directly to the consuming public and indirectly to physicians through drugs sales representatives," as safe and effective, and at all times, before, during and after marketing the products, failed to provide adequate warnings or instructions of the defective nature of the products. The complaint alleges throughout that in addition to their marketing to the consuming public, the manufacturer defendants' sales representatives, who marketed the products to doctors, made fraudulent misrepresentations concerning the safety and efficacy of these

7

Case 2:14-md-02592-EEF-MBN Document 3265-7 Filed 05/17/16 Page 9 of 10
Case 3:15-cv-03590-B Document 1-15 Filed 11/05/15 Page 9 of 10 PageID 298
8:13-cv-00290-LSC-TDT Doc # 1-7 Filed: 09/17/13 Page 9 of 10 - Page ID # 77

products. As to the doctors themselves, plaintiffs' complaint contains one count charging medical negligence in which plaintiffs bluntly allege that these physicians prescribed these drugs to plaintiffs, that they "knew, or should have known, of the dangerous side effects of these medications," and that their prescribing these medications "presents a deviation from the standard of care generally exercised by physicians. . . ."

Although the court is aware of the propriety of pleading in the alternative, here, given plaintiffs' explicit, repeated and consistent charge that the manufacturer defendants concealed and misrepresented information about the subject drugs to physicians, plaintiffs' entirely conclusory allegation that the doctors "knew, or should have known, of dangerous side effects of these medications," without any indication of a factual basis for such an allegation, strongly suggests to the court that plaintiffs have sued the physicians only as a means of avoiding federal court. Cf. Louis v. Wyeth-Ayerst Pharmaceuticals, Inc., Civil Action No. 5:00CVG102LN (S.D. Miss. Sept. 25, 2000) (notwithstanding the plaintiffs' general references to knowledge possessed by "defendants," the complaints, which alleged that the manufacturers undertook to deceive everyone, including the pharmacist defendants, about the safety of their drugs, could not "reasonably and legitimately be construed as alleging any factual basis for the conclusion that any of the pharmacy defendants had any knowledge or reason to know of any of the dangers associated with the product(s) of which plaintiffs contend they were unaware");

8

Case 2:14-md-02592-EEF-MBN Document 3265-7 Filed 05/17/16 Page 10 of 10
Case 3:15-cv-03590-B Document 1-15 Filed 11/03/15 Page 10 of 10 PageID 299
8:13-cv-00290-LSC-TDT Doc # 1-7 Filed: 09/17/13 Page 10 of 10 - Page ID # 78

Brown v. Bristol-Myers Squibb Co., Civil Action No. 4:02CV301LN (S.D. Miss. Dec. 2, 2002) (same).

While the proposed amended complaint does not disclose any legitimate basis for suing these defendants, if it were to turn out that plaintiffs, in fact, do have some basis for suing them, there is nothing to prevent them from bringing a separate action against them in state court, and in the court's opinion, plaintiffs will not be prejudiced if required to proceed against the doctors separately.[4] The court herein holds only that plaintiffs may not sue them in this action.

For the foregoing reasons, it is ordered that plaintiffs' motion to remand and to amend is denied.

SO ORDERED this 17th day of June, 2003.

_____
UNITED STATES DISTRICT JUDGE

---

[4] Of course, if required to proceed separately against the doctor defendants, plaintiffs would no doubt find their claims subject to the newly enacted medical malpractice tort reform law; but their efforts to avoid that law in the manner they chose was of questionable legitimacy to begin with. Had they a genuinely cognizable claim against the doctors, they could and should have made every reasonable effort to properly name them at the outset, and could and should have pled a proper claim against them. They did neither.

9