UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: XARELTO (RIVAROXABAN) | * | MDL 2592 |
| PRODUCTS  LIABILITY LITIGATION | * | |
| | * | SECTION L |
| THIS DOCUMENT RELATES TO | * | |
| ALL CASES | * | JUDGE ELDON E. FALLON |
| | * | |
| | * | MAG. JUDGE NORTH |

* * * * * * * * * * * * * * * * * * * * * * * * *

*REDACTED*
**JANSSEN DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO
ENFORCE PRETRIAL ORDER NO. 12 AND FOR ENTRY OF
A PROTECTIVE ORDER**

## I.      INTRODUCTION

Defendants Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC, and

Janssen Ortho, LLC ("Janssen Defendants") file this motion to enforce stipulated Pre-Trial Order

No. 12 ("PTO 12") in response to the Plaintiffs' Steering Committee's ("PSC") challenge to the

confidentiality designations of 157 documents[1] produced by the Janssen Defendants under PTO

12 as a "Protected Document."  The PSC already has access to all of these documents to prepare

their case for trial, yet they insist on disseminating this cherry-picked discovery material to try

this case in the media.  This motion follows the PSC's first set of challenges, in their Motion to

De-Designate filed on February 22, 2016, to disclose numerous other documents to the U.S.

Food and Drug Administration ("FDA") and to widely disseminate protected discovery materials

in yet another attempt to garner media attention before a jury is selected and trial has commenced

in this proceeding.

Under *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984), there is no First

Amendment right to disseminate discovery materials outside of the terms of a protective order

---

[1] The challenged documents are being submitted to the court under seal for in camera review.

entered pursuant to Federal Rule of Civil Procedure ("FRCP") 26(c). The policy reasons underpinning this rule are driven both by efficient conduct and management of litigation, as well as the need to protect parties from having to litigate in the media prior to the conduct of a trial on the merits under the Federal Rules of Evidence. The wisdom of the Supreme Court's rationale in *Seattle Times* was observed by this Court at the March 16, 2016 hearing on the PSC's Motion to De-Designate:



*See* 3/16/2016 Trans. at 42:14-22; 43:23-44:3 [Under Seal].

The PSC's present challenges are directed at exhibits to the depositions of 8 employees of Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC and Bayer Pharma AG who are involved in designing and implementing strategies related to marketing, sales, research and clinical development, clinical trials, clinical testing and regulatory matters for Xarelto.

All of the challenged documents at issue fall under the definition of "Protected Document" as set forth in PTO 12 and should remain protected as confidential and commercially sensitive business information pursuant to FRCP 26(c) because there is "good cause" to continue the protections. These documents include trade secrets, business and marketing plans, sales training materials, documents reflecting research and development activities, data compilations

and other confidential information pertaining to regulatory submissions and strategic decision-making.  The information contained in these documents is not generally known to the Janssen Defendants' competitors, and if disclosed to the public at large would likely be used by Janssen's competitors in the highly competitive field of pharmaceutical product sale and development to gain an advantage in the marketplace.  The anticoagulant class of medications to which Xarelto belongs is highly competitive and includes several other products.  Allowing access to these documents would result in significant business harm to Janssen's research, development and marketing functions.  As set forth in the Declaration of Angela M. Giusti, the Janssen Defendants have implemented important measures to ensure that the commercially sensitive information contained in these documents remains confidential and require that their employees and business partners enter into contracts to maintain the confidentiality of the information.  Giusti Decl., ¶¶ 4-6.

For these and the reasons set forth below, Defendants' Motion to enforce PTO 12 and continued protection of these documents should be granted.  The documents at issue fall within Rule 26(e) and constitute trade secrets and confidential information that should remain protected.

## II.    BACKGROUND

### A.    Pre-Trial Order No. 12

Pre-Trial Order No. 12 was entered with the consent of both sides in the litigation and allows parties to designate "Protected Documents" and "Protected Information" in order to "facilitate prompt discovery and the preparation for trial" without the need to litigate the confidentiality of documents before trial.  PTO 12, ¶1.  Materials that are subject to PTO 12 include documents or information that "may reveal trade secrets, manufacturing processes,

proprietary design, drug formulation, drug development, sequencing, chemical stability and characteristics, analytical methods used in manufacturing, quality control processes, CMC information exchanged with the FDA and not the subject of a patent, source and specification for drug components and raw materials, manufacturing plans, unpublished patent applications, strategic intellectual property plans, notices of invention, including but not limited to confidential intellectual property and patentable data, information, products or processes, strategic plans, marketing plans, brand plans, documents setting forth marketing and sales tactics and strategies, sales data, and documents revealing pricing or other contractual data ….”   PTO 12, ¶7.

The party seeking to challenge the designation of a “Protected Document” is required to notify the designating party who must provide a response.  If the parties cannot reach an agreement, the designating party must file and serve a motion for protective order, unless the court orders otherwise.  PTO 12, ¶13.  Pending a court determination, no document or information designated as “Protected” shall be disseminated.

### B.   News Media Surrounding Xarelto Litigation

As this Court is aware, the PSC previously moved to de-designate various documents that they claim should have been submitted to the FDA and publicly disseminated.  The PSC’s motion brought a flurry of media inquiries and resulted in the publication of articles in the *New York Times* and other media outlets mimicking the allegations of the PSC in their briefing.[2]  At the same time, the Janssen Defendants received media inquiries within minutes of the filing of the briefs that repeated verbatim alleged questions raised by the PSC.

The resulting press coverage about Xarelto that has been garnered by the PSC is not inconsequential because it has detracted from the litigation and may have significance public

---

[2] Indeed, the Janssen Defendants recently received inquiries from a reporter at the British Medical Journal whose questions appeared to be verbatim recitations of Plaintiffs’ Reply in Support their Motion to Challenge Confidentiality, which was only available in its entirety on the docket **for just over 48 hours**.

safety concerns – but for a different reason than that propounded by Plaintiffs.  Patients who discontinue anticoagulant medications without consulting their physicians may be at an increased risk of sustaining a serious adverse event such as a stroke, embolism or death.  In a recent report published in *Heart Rhythmic Case Report*, the author noted that "[b]eginning in 2014, advertising has appeared on television, radio and in print media directed toward patients who may have experienced adverse clinical evidence while on rivaroxaban."[3]  The article reported on 31 individual patients who "discontinued their anticoagulant without consulting their physician after viewing negative rivaroxaban legal advertising.*"  Id.* at 4.  Seventy-five percent of these "patients experienced a stroke or a transient neurologic event, 2 patients had persistent residual paralysis," with some incidents resulting in death.  *Id.* The author noted that "[c]ontinued partnership between drug manufacturers, physicians, regulators and patients is necessary to provide sufficient education to ensure that these important medical events do not occur." *Id.* This article reinforces that sensationalized advertisements and negative media reports to discontinue a course of treatment with an anticoagulant medication may have serious negative consequences for patients.

### C.   March 16, 2016 Hearing

The PSC previously filed a Motion to De-Designate certain documents pertaining to the ROCKET AF clinical trial on the theory that the documents should be disclosed to the FDA and more broadly to the public at large prior to trial in this proceeding.  Defendants' position was that it had already provided the FDA with information relevant to the issues raised in the PSC's motion but would nevertheless provide the FDA with the additional documents identified by the

---

[3] Burton, Paul, et. al., A Medwatch Review of Reported Events in Patients Who Discontinued Rivaroxaban (XARELTO) Therapy in Reponses to Legal Advertising, *Heart Rhythm Case Reports* (forthcoming 2016), *available at* http://www.heartrhythmcasereports.com/ article/S2214-0271(16)00014-2/pdf.

PSC.  During argument on the Motion, this Court observed that ████████████

███████████████████████████████████████████████████

██████████████████████████ *See* 5/16/2016 Trans. at 40:19-24.

The court also noted that the deposition ███████████████████████

████████████████████████████ (*id.* at 43:4-6) and

that disclosure of deposition excerpts will lead to negative consequences that may serve to delay

the litigation and force parties to litigate the case to address the media coverage.  *Id.*

### C.    Documents Challenged by the PSC

In correspondence dated April 6, 2016, the PSC challenged the confidentiality

designations of 157 documents used as exhibits during the depositions of Michael Moye,

Christopher Nessel, Sigmond Johnson, Wolfgang Mueck, Andrea Horvat-Broecker, Dagmar

Kubitza, Andrea Derix, and Sanjay Jolata.  In response to the PSC's correspondence, the Janssen

Defendants reviewed the challenged documents and responded to the PSC on May 3, 2016.  The

Janssen Defendants agreed to withdraw the designations on 29 documents and stated that the

other documents (discussed below) should continue to be subject to PTO 12 because they contain

confidential marketing, sales, research, product development and other commercially sensitive

information protected by FRCP 26(c).

**1.**    **Michael Moye Deposition Exhibits.**  Mr. Moye is Director of Marketing,

Cardiovascular at Janssen Pharmaceuticals, Inc.  He was deposed on February 10, 2016 and

February 11, 2016 regarding his involvement with Xarelto.  The exhibits to his deposition

challenged by the PSC consist of "Business Plans" (Ex. 4) and "Engagement Strategies" (Ex. 5),

specifically discussing Janssen's business strategy, including sales and educational outreach,

brand management, strategic decision-making, as well as strategies and decisions related to product launch (Ex. 9), documents relating to training of company employees regarding sales and marketing (Exs. 11, 12, 43, 46), and documents related to pricing or other contractual data (Exs. 21, 22, 35).  Other documents contain commercially sensitive information such as market research, market forecasts and competitive intelligence (Exs. 20, 25, 42), analyses of competitor's products (Exs. 14, 16), and sales history and projections or sales data (Exs. 40, 41). The documents also contain discussion on designing and implementing strategies related to marketing and sales (Exs. 23, 24, 39), contain future marketing and product development plans or discussion on those plans (Exs. 31, 32, 33, 34), include  discussion on other strategic marketing considerations (Exs. 17, 19, 27, 28, 44), or pertain to Janssen's business strategy regarding future product development (Exs. 26, 30).

       2.     **Christopher Nessel, M.D. Deposition Exhibits.**  Dr. Nessel is Senior Director, Clinical Leader for Cardiovascular Medicine at Janssen Research & Development, LLC.  The documents used at his deposition challenged by the PSC consist of documents reflecting strategic considerations in clinical study design (Exs. 3, 5, 7), clinical testing procedures or methods and discussing the rationale for those methods (Exs. 4, 45, 70), proprietary research and clinical development (Exs. 67, 68, 69, 72) and strategic decision-making in product development (Exs. 71, 73).  The documents also contain discussion concerning quality control issues (Exs. 2, 8, 16, 17, 20, 21, 30, 32), discussions on designing and implementing quality control processes (Exs. 18, 19, 23, 24, 25, 26, 27, 29, 31, 33, 34, 35), and confidential communications with the FDA regarding internal quality control processes (Exs. 15, 37, 38).

       3.     **Sigmond Johnson Deposition Exhibits.**  Mr. Johnson is the Program Management Leader for Xarelto® at Janssen Research & Development, LLC. The challenged

documents consist of documents reflecting proprietary research and development activities (Ex. 8), documents that facilitated discussion on Janssen's business strategy and progress (Exs. 10, 21, 36, 37, 38, 39, 40 41), and documents pertaining to Janssen's business strategy regarding future product development (Exs. 2, 3, 11, 42).  Other documents contain discussion concerning quality control issues (Exs. 12, 13, 14, 43, 44), discussions on designing and implementing quality control processes (Exs. 15, 16, 17, 18), and confidential communications with the FDA regarding internal quality control processes (Exs. 5, 6).  Several related documents contain discussions on strategic considerations in product development, research and clinical development, clinical testing procedures or analytical methods (Exs. 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34).

   4. **Sanjay Jalota Deposition Exhibits**.  Dr. Jalota is Senior Director, Global Regulatory Affairs at Janssen Research & Development LLC.  He was deposed at length on March 3, 2016 and March 4, 2016 regarding regulatory strategies and compliance issues related to Xarelto.  The exhibits to his deposition challenged by the PSC consist of "Business Plans" (Ex. 2), marketing strategies (Exs. 56, 57), documents reflecting strategic considerations in product development (Exs. 59, 61, 62, 64, 65, 66), clinical study design and clinical testing procedures or methods (Exs. 36, 37, 58), and proprietary research and clinical development (Ex. 53, 54).  The documents also contain discussion concerning quality control issues (Exs. 3, 42), discussion on designing and implementing quality control processes (Exs. 4, 5, 6, 7, 8, 10, 11, 12, 16, 20, 21, 22, 43, 44, 46, 47, 48, 49, 50, 51, 70, 73), and confidential communications with the FDA and other regulatory authorities regarding internal quality control processes (Exs. 13, 17, 18, 23, 24, 25, 26, 27, 28, 29, 32).which contain confidential information and trade secrets related to manufacturing processes and other proprietary design information.

4.      **Andrea Horvat-Broecker Deposition Exhibits.**  Dr. Horvat-Broecker is a Global Safety Leader, Department of Pharmacovigilance at Bayer Pharma AG who was deposed on February 24-27, 2016.  The one exhibit to her deposition that is challenged contains confidential information exchanged with the FDA that discusses product development, proprietary clinical study design and clinical testing methods (Ex. 20).

5.      **Wolfgang Mueck Deposition Exhibits**.  Dr. Mueck is the Head, Clinical Pharmacokinetics, Cardiovascular, at Bayer Pharma AG.  He was deposed on February 23-26, 2016 regarding certain "Protected Documents" produced by the Janssen Defendants.  The exhibits challenged by the PSC consist of confidential communications with the FDA, which contain trade secrets and proprietary commercial information (Ex. 31), as well as emails relating to product development and strategic considerations in clinical study design (Exs. 37) and draft documents reflecting research and development activities (Exs. 39, 40).

6.      **Dagmar Kubitza Deposition Exhibits**.  Dr. Kubitza is the Head Clinical Pharmacodynamics and Clinical Pharmacology Cardiovascular and CPL for Rivaroxaban at Bayer Pharma AG.  She was deposed on February 29, 2016 and March 1, 2016 regarding documents designated by the Janssen Defendants as "Protected Documents."  These documents consist of internal emails regarding clinical study design and clinical testing (Exs. 8, 10) and communications with regulatory authorities discussing drug development, clinical testing and analytical methods used in manufacturing (Exs. 11, 12, 51).

7.      **Andrea Derix Deposition Exhibits**.  Dr. Derix is the Vice President and Head of Program Management Thrombosis at Bayer Pharma AG.  Her deposition went forward on March 1, 2016 and March 2, 2016 and included questions related to certain documents produced by the Janssen Defendants.  These documents consist of internal emails relating to clinical study design

and clinical testing (Exs. 8, 26, 35), documents reflecting proprietary research and development activities (Exs. 27, 28), and documents that facilitated discussion on Janssen's business strategy (Exs. 53, 55, 56).  The documents also contain discussion concerning quality control issues (Exs. 17, 19, 25), discussions on designing and implementing quality control processes (Exs. 9, 10, 13, 16, 18, 20, 21, 22, 24), and confidential communications with the FDA regarding internal quality control processes (Ex. 6).

For the reasons set forth below, all of these documents contain confidential and commercially sensitive information covered by PTO 12 and should remain protected under FRCP 26(c).

## III.    ARGUMENT

### A.    Standards for Motion

Federal Rule of Civil Procedure 26(c) permits a court to enter an order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way ...."  Rule 26(c) is not limited to trade secrets but includes broader confidential commercial information.  *Nutratech, Inc. v. Syntech Int'l, Inc.,* 242 F.R.D. 552, 555, n.4 (C.D. Cal. 2007).  Confidential information includes but is not limited to marketing and business plans, documents reflecting a company's strategic decision-making, research and development activities, design plans and other information that if known to a competitor could potentially cause economic or other harm to the party that produce the documents or information during the course of discovery.  *Duncan v. Stuetzle*, 76 F.3d 1480, 1488, n.11 (9th Cir. 1996); *Guardian Life Ins. Co. v. Service Corp., Int'l*, Civ. A. No. 87-1280T, 1989 U.S. Dist. LEXIS 402, * 10-13 (E.D. Pa. Jan. 17, 1989); *Star Sci., Inc. v. Carter*, 204

F.R.D. 410, 416  (S.D. Ind. 2001) (finding that "information relating to how [a party] process[es] their product, its research and development" is protected); *Containment Techs. Grp., Inc. v. Am. Soc'y of Health Sys. Pharmacists*, No. 1:07-cv-997-DFH-TAB, 2008 WL 4545310, at *1-2 (S.D. Ind. Oct. 10, 2008) (finding protected documents because party spent significant time and money pertaining to research and development).   Draft documents produced during the course of discovery also have been subject to Rule 26(c) because they may contain incomplete or inaccurate information about evolving issues that over time may reveal new or different information and could be misconstrued if made available to the public without explanation.  *See., e.g., Lamitie v. Emerson Elec. Co*., 142 A.D.2d 293, 297 (N.Y. App. Div. 1988) (citing *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 111-113 (1980) (acknowledging that there are reasons why draft documents should not be disseminated to the public, including because they may contain "incomplete or inaccurate information").  Good cause also exists where an "order protects the rights of the parties to be free from a negative media campaign that poses the potential result of trying the suit in the public before a jury of the parties' peers has the opportunity to weigh the evidence and to arrive at an appropriate and open judicial remedy."  *Pamlab, L.L.C. v. Brookstone Pharm., L.L.C.*, No. 09-7434, 2010 U.S. Dist. LEXIS 120303, at * 5 (E.D. La. Oct. 22, 2010).

In ascertaining whether good cause exists to protect certain information, courts "balance the party's interest in obtaining access against the other party's interest in keeping the information confidential."  *Id*. at 39-40.   "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required."  *Pena v. Casteel*, No. 15-0420, 2016 U.S. Dist. LEXIS 24125 (W.D. La. Feb. 26, 2016) (citing

*Seattle Times*, 467 U.S. 20); *see also Cazaubon v. MR Precious Metals, LLC*, No. 14-2241, 2015 U.S. Dist. LEXIS 107923 (E.D. La. Aug. 17, 2015).

Courts within the Fifth Circuit have recognized the important role of protective orders in mass tort litigation to promote the efficient and effective conduct of litigation. *See Blanchard & Co., Inc. v. Barrick Gold Corp.*, No. 02-3721, 2004 U.S. Dist. Lexis 5719 (E.D. La. Apr. 2, 2004) (granting motion for protective order). The Fifth Circuit has enforced the terms of protected orders restricting the disclosure of confidential information to only certain individuals and prohibiting public disclosure. *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486 (5th Cir. 2012).

This Court entered a stipulated Pre-Trial Order No. 12 in recognition that the efficient conduct of the Xarelto litigation would be promoted and maximized if parties are able to review and designate documents as a "Protected Document" or "Protected Information" during the course of discovery, rather than spending substantial time and effort arguing over whether a significant number of documents are confidential. Janssen has undertaken a good faith effort as part of its review process to ensure that only certain documents are designated as "protected" under the terms of PTO 12. As set forth in more detail below, each of the documents challenged by the PSC contains confidential information, and there is good cause to continue the protections of Pre-Trial Order No. 12.

## B. There Is No First Amendment Right to Disseminate Materials Produced During Pre-Trial Discovery

This Court's consideration of the PSC's numerous challenges should begin with the premise articulated by the Supreme Court decision in *Seattle Times* confirming that there is no legally protected First Amendment right to disseminate documents produced during the course of

discovery.  The rationale behind the Court's decision underscored the fundamental problems and policy concerns associated with public dissemination of discovery material before trial or dispositive motion practice.  Those concerns stem from trying cases in the media and forcing the party who produced the document to respond to media inquiries before it has had an opportunity to cross-examine witnesses at trial in a forum where there are rules governing the use of information and that permits each side to provide counterpoints.  The Court recognized the tension between liberal discovery and public dissemination of information as follows:

> As in all civil litigation, petitioners gained the information they wish to disseminate only by virtue of the trial court's discovery processes. As the Rules authorizing discovery were adopted by the state legislature, the processes thereunder are a matter of legislative grace. A litigant has no First Amendment right of access to information made available only for purposes of trying his suit.
>
> \*          \*          \*          \*          \*
>
> Liberal discovery is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes.  . . . The Rules do not distinguish between public and private information. . . .  There is an opportunity, therefore, for litigants to obtain-incidentally or purposefully-information that not only is irrelevant but if publicly released could be damaging to reputation and privacy. The government clearly has a substantial interest in preventing this sort of abuse of its processes.

*Seattle Times*, 467 U.S. at 32-35.

In upholding restrictions on the public dissemination of discovery materials, the Court confirmed that a litigant does not have "an unrestrained right to disseminate information that has been obtained through pretrial discovery" and "pretrial depositions and interrogatories are not components of a civil trial."  *Id.* at 31.  "Such proceedings are conducted in private. . ."  *Id.* at 33.  As a result, "restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information."  *Id.* at 33.  "[A]n order prohibiting

dissemination of discovered information before trial is not the kind of classic prior restraint that requires exacting First Amendment scrutiny." *Id.* at 33.

Since *Seattle Times*, courts have consistently held that, upon issuance of a valid protective order under FRCP 26(c), a litigant has no right to disseminate protected information obtained through pre-trial discovery. *See, e.g., Reyes v. Freeberry*, 141 Fed. Appx. 49, 51 (3d Cir. 2005) ("When a civil litigant obtains discovery pursuant to a valid protective order, the litigant has no First Amendment right to disclose the information"); *U.S. v. Microsoft Corp.*, 165 F.3d 952, 959-60 (D.C. Cir. 1999) ("[T]he good cause standard of Rule 26(c) comports with the first amendment not fortuitously but precisely because it takes into account all relevant interests, including those protected by the first amendment."); *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1119 (3d Cir. 1986) ("*Seattle Times* prohibits a court considering a protective order from concerning itself with first amendment considerations"); *In re Denture Cream Prods. Liab. Litig.*, No. 09-2051-MD-ALTONAGA/SIMONTON, 2013 U.S. Dist. LEXIS 8114 (S.D. Fla. Jan. 18, 2013) ("[T]he common-law right of access to judicial proceedings does not apply to discovery materials, 'as these materials are neither public documents nor judicial records.'"); *In re: Yasmin & Yaz (Drospirenone) Mktg., Sales Practices and Prods. Liab. Litig.,* No. 3:09-md-02100-DRH-PMF, 2011 U.S. Dist. LEXIS 130610 (S.D. Ill. Nov. 10, 2011) (*citing Seattle Times*, 467 U.S. 20) ("Litigants do not have an unfettered First Amendment right to disseminate documents obtained through the discovery process.").[4]

---

[4] Courts have similarly rejected First Amendment challenges to protective orders where a party demonstrates "good cause" to limit dissemination of materials obtained through discovery.  *See In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 423 (E.D.N.Y. 2007) (protective order restricting dissemination of confidential materials produced during discovery did not violate parties' First Amendment rights); *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 355 (11th Cir. 1987) (First Amendment did not entitle publisher and journalist to access confidential materials produced in discovery where protective order was issued upon showing good cause); *Pamlab, L.L.C., v. Brookstone Pharm., L.L.C.*, No. 09-7434, 2010 WL 4363879, at *4 (E.D. La. Oct. 22, 2010) (rejecting plaintiff's request to remove confidential designation from defendant's discovery responses in reliance on *Seattle Times*); *Philips v. General Motors Corp.*, 307 F.3d 1206 (9th Cir. 2002)  (Discovery materials submitted to a court in connection with a

The courts generally strive to prevent abuses of discovery that would result in the dissemination of information on a piecemeal basis to the public and through the media in a manner designed to try the case in the media..  *See also Securities & Exchange Comm. v. TheStreet.com*, 273 F.3d 222, 229 (2d Cir. 2001) ("Without an ability to restrict public dissemination of certain discovery materials that are never introduced at trial, litigants would be subject to needless 'annoyance, embarrassment, oppression, or undue burden or expense.'"); *Public Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 780 (1st Cir. 1988) ("[T]he public has no right to demand access to discovery materials which are solely in the hands of private party litigants."); *United States v. Amodeo*, 71 F.3d 1044, 1048-49 (2d Cir. 1995) ("Unlimited access to every item turned up in the course of litigation would be unthinkable.  Reputations would be impaired, personal relationships ruined, and businesses destroyed on the basis of misleading or downright false information."); *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 355 (11th Cir. 1987) ("Although information exchanged in pretrial discovery would often generate considerable public interest if publicly disseminated, private litigants have protectable privacy interests in confidential information disclosed through discovery.").

In *Grundberg v. Upjohn Co.,* 137 F.R.D. 372 (D. Utah 1991), the plaintiffs in a products liability case sought to remove defendant's confidentiality designations.  The defendant argued that the declassification of the protected documents could trigger increased publicity about the product, "false signals" about adverse reactions, and an unfair trial.  *Id.*  The Court held:

> Upjohn did demonstrate that the release of the documents at this time could complicate the jury selection process and **would be of no material assistance to plaintiffs since they already have full access to the documents**.  In response, plaintiffs have failed to

"nondispositive motion, the usual presumption of the public's right of access is rebutted…" ); *Kamakana v. City and Cty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006).

> demonstrate undue prejudice if the protective order were to remain
> in force until the trial begins.

*Id.* at 392 (emphasis added).

Similarly, in *In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 413 (E.D.N.Y. 2007), the

Court emphasized that there is a presumption of non-access which attaches to documents

exchanged in discovery.   The Court also addressed the consequences that stem from public

dissemination of confidential documents.  *Id.* at 424-25.   Disclosure of confidential and

proprietary material poses a significant risk of harm.  *Id.*   "Both Lilly's competitors' and

detractors' use of the materials has the potential to inflict severe commercial harm on the

company." *Id.* at 425.  The Court further explained:

> The harm faced by Lilly is amplified by the fact that the protected
> documents which respondents seek to disseminate are segments of
> a large body of information, whose selective and out-of-context
> disclosure may lead to confusion in the patient community and
> undeserved reputational harm-"what appears damning may, in
> context after difficult proof, be shown to be neutral or even
> favorable to the defendant."

*Id.; see also* Jack B. Weinstein, *Secrecy in Civil Trials: Some Tentative Views*, 9 J.L. & Pol'y 53,

58 (2000) ("[T]he cost and time to explain a single document taken out of context by a plaintiff's

lawyer creates an incentive not to prepare memoranda.").

Indeed, plaintiffs in this case simply seek to cherry-pick documents and take them out of

the context, subjecting defendants to competitive and reputational harm.   When private

documents exchanged in discovery are "publicly" presented, they should be offered with a

proper foundation, cross-examination, and in accordance with the Rules of Evidence.   Courts

have routinely emphasized the import of this process.  As the Second Circuit succinctly stated,

"[d]iscovery involves the use of compulsory process to facilitate orderly preparation for trial, not

to educate or titillate the public."  *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982).

At the same time, Plaintiffs are not limited in the use of the documents, in any way, concerning the pursuit of their litigation.  Plaintiffs have been given the full and fair access intended by the rules of discovery, enabling them to develop their case, and have made no showing of prejudice.

As set forth below, the continued protection of these documents is necessary in order to comply with and effectuate the purposes of discovery and the procedures for trial. At present, the PSC's desire to publish documents is outweighed by the private discovery interests of the litigants.  The First Amendment right to disseminate discovery is not triggered until a dispositive motion or trial, at a time when there is a fair opportunity for both sides to put the evidence into context and to argue the merits under the Federal Rules of Evidence.  Sound judicial policy and fundamental fairness dictate that the PSC not be permitted to selectively pick and choose the documents and deposition testimony for disclosure to the FDA or otherwise.  Nor should Janssen have to defend this case in the media by responding to the PSC's attempts to misconstrue the testimony and emails.

**C.**     **The Documents and Deposition Testimony Should Be Limited to Use by Counsel and the Parties to this Litigation**

This Court entered PTO 12 to limit use of "Protected Documents" to the parties and counsel to this litigation.  Pursuant to PTO 12, the PSC already has access to the documents and information in question that they now claim should be shared more broadly with the public at large and the Janssen Defendants' competitors.  FRCP 20(c)(1)(F) expressly permits an order requiring that "trade secret or other confidential research, development, or commercial information not to be revealed or be revealed only in a specified way. . ."  A "trade secret" is generally defined as "information, including a formula, pattern, compilation, program, device, method, technique or process, that: (a) derives independent economic value, actual or potential,

from not being generally known. . . [and] (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." La. R.S. § 51:1431(4)(a) and (b).   A party need only take "reasonable measures to maintain relative, not absolute, secrecy" to constitute a trade secret. *Reingold v. Swiftships, Inc.*, 126 F.3d 645, 650 (5th Cir. 1997).  Even if a document or information does not technically fall within the definition of a trade secret, Rule 26(c) is broader and covers other types of confidential commercial information. *Duncan,* 76 F.3d at 1487; *Guardian Life Ins. Co.*, 1989 U.S. Dist. LEXIS 402, * 10-13; *Star Sci, Inc*., 204 F.R.D. at 416.

As set forth in the declaration of Angela M. Giusti, the Janssen Defendants have in place procedures and processes to ensure that information pertaining to its business operations, research and development activities, marketing strategies and plans remain confidential in the highly competitive area of pharmaceutical medications.  Giusti Decl., ¶¶ 4-6.  Employees of Janssen are required to be trained on maintaining the confidentiality of commercially sensitive business information.  *Id.* at ¶ 5.  For the reasons set forth below, all of the documents challenged by the PSC should remain protected under PTO 12.[5]

### 1.     Business Plans, Strategic Marketing Plans, and Sales Training Documents Are Confidential and Protected

Courts have found that marketing materials are confidential commercial information and are properly subject to protection under Rule 26(c). *Kimberly-Clark Corp. v. Tyco Healthcare Retail Grp., Inc*., No. 05-C-0985, 2006 U.S. Dist. LEXIS 30689, 2006 WL 6652868, at *1-2 (E.D. Wis. Apr. 6, 2006) (approving protective order that designated "currently implemented or not yet implemented marketing plans" as "Highly Confidential Information"); *PepsiCo, Inc. v. Redmond*, No. 94-6838, 1995 U.S. Dist. LEXIS 19437, at *39-40 (N.D. Ill. Jan. 26, 1995) (finding marketing materials were trade secrets), aff'd 54 F.3d 1262, 1271 (7th Cir. 1995).

---

[5] The documents in question may fall within more than one of the protected categories of documents in PTO 12.

In the case of the PSC's challenges, many of the documents consist of marketing materials that would be considered a trade secret under state law and the Restatement of Torts § 757.  Five documents (Moye, Exs. 21, 22, 35, 40, 41) discuss sales and pricing data that if known would cause economic harm.  Another 29 documents (Moye, Exs. 4, 5, 9, 11-12, 14, 16, 17, 19, 20, 23-28, 30-34, 39, 42-44, 46; Jalota, Exs. 2, 56, 57) discuss "processes" or "compilations" relating to the marketing function that contain highly sensitive commercial information that is of value to the Janssen Defendants because the documents identify key individuals within Janssen and relate to the sale of Janssen's products and its marketing strategies.  Many of these marketing materials reflect business strategies and decision-marking that if known would give the Janssen Defendants' competitors an advantage in the marketplace.  *See* Giusti Decl., ¶ 12.  If these documents were made public, Janssen's competitors would use this information to gain an unfair economic advantage not only with respect to medications in the same class as Xarelto but also more broadly to understand the inter-workings of Janssen and its strategies regarding customer engagement and education.  *Id.* at ¶ 21.  Janssen has undertaken significant measures to protect the confidential information and data contained in these materials through maintaining secure computer systems, implementation of software programs and an internal system of designation, as well as training employees and entering into contracts to ensure that information remains confidential.  Giusti Decl., ¶¶ 4-6.

2.     **Documents and Communications Related to Nonpublic Research and Development Activities Are Protected**

Similarly, another 60 of the documents (Nessel, Exs. 3-5, 7, 45, 67-73; Johnson, Exs. 2, 3, 8, 10, 11, 21-34, 36-42; Jalota, Exs. 36, 37, 53, 54, 58, 59, 61, 62, 64-66; Mueck, Exs. 37, 39, 40; Derix, Exs. 8, 26-28, 35, 53, 55, 56) that the PSC seeks to de-designate reflect nonpublic research, product development and clinical design information related to Xarelto.  These

documents should be maintained as confidential trade secrets and commercially sensitive information because they include technical and non-technical information related to research of Xarelto, as well as data and/or compilation of data related to Xarelto. If the information contained in these documents is made public, the highly competitive nature of the pharmaceutical industry would allow Janssen's competitors to use the information to gain a competitive advantage in the anti-coagulant market. *Duncan*, 76 F.3d at 1487, n.11; *Guardian Life Ins. Co.,* 1989 U.S. Dist. LEXIS 402, * 10-13 ; *Star Sci, Inc*., 204 F.R.D. at 416 (finding that "information relating to how [a party] process[es] their product, its research and development" is protected); *Containment Techs Grp., Inc.,* 2008 WL 4545310, at *1-2 (finding protected documents because party spent significant time and money pertaining to research and development).

Information concerning competitor's studies is of substantial value to other manufacturers of similar products because it can inform their own research and development, as well as their marketing efforts, and allow them to avoid some or all of the cost of developing their own materials. *Ibid.* Janssen has implemented extensive measures to protect confidential data and information contained in research through technical and contractual measures. Giusti Decl., ¶¶ 4-6. Janssen employees are required to sign an agreement to maintain the confidentiality of business data and information. *Id.* at ¶ 5. Janssen also has a system in place to protect both electronic and paper records to ensure that they remain confidential. *Id.* at ¶¶ 4, 6. This information is stope with restrictions in place that limit access to only authorized employees and individuals.

These commercially sensitive documents would constitute trade secrets under both Louisiana law and Restatement of Torts and also constitute confidential information under FRCP

26(c).  These documents have not been published and have not been disseminated outside of Janssen's business operations, and should continue to be protected during the discovery phase of this litigation.

      **3.**      **Documents and Emails Regarding Internal Processes Related to the Manufacture and Design of Products and Regulatory Submissions Are Protected**

Many of the documents challenged by the PSC also relate to internal discussions concerning quality control processes (Nessel, Exs. 2, 8, 15-21, 23-35, 37, 38; Johnson, Exs. 5, 6, 12-18, 43, 44; Jalota Exs. 3-8, 10-13, 16-18, 20-29, 32, 42-44, 46-51, 70, 73; Kubitza, Exs. 8, 10, Derix, Exs. 6, 9, 10, 13, 16-22, 24, 25), as well as discussions with regulatory authorities, including the FDA, related to internal processes followed for product development and quality control and other confidential information (Mueck Ex. 31, Kubitza, Exs. 11-12, 51; Horvat-Broecker, Ex. 20).   These materials are the type of compilations and descriptions of internal processes that constitute trade secrets and commercially sensitive information subject to protection under FRCP 26(c) and federal regulations.  *Star Sci, Inc*., 204 F.R.D. at 416 (finding that "information relating to how [a party] process[es] their product, its research and development" is protected); *Containment Techs Grp., Inc.*, 2008 WL 4545310, at *1-2(finding protected documents because party spent significant time and money pertaining to research and development); *See* 21 C.F.R. § 20.61 (submissions to the FDA are confidential and exempt from public disclosure if they include "valuable data or information which is used in one's business and is of a type customarily held in strict confidence or regarded as privileged and not disclosed to any member of the public").  The Janssen Defendants have implemented measures to ensure that their trade secrets and other confidential information are not publicly disseminated and

strictly guard as confidential the information contained in these documents that would give its competitors an advantage in the marketplace.

## III.

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Enforce PTO 12 and for continued protection of documents pursuant to FRCP 26(c) should be granted.

Respectfully submitted,

DRINKER BIDDLE & REATH LLP

By: */s/ Susan M. Sharko*
    Susan M. Sharko
    DRINKER BIDDLE & REATH LLP
    600 Campus Drive
    Florham Park, NJ 07932-1047
    Telephone: (973) 549-7000
    Facsimile:  (973) 360-9831
    susan.sharko@dbr.com

IRWIN FRITCHIE URQUHART & MOORE LLC

By: */s/ James B. Irwin*
    James B. Irwin
    Kim E. Moore
    IRWIN FRITCHIE URQUHART
    & MOORE LLC
    400 Poydras Street
    Suite 2700
    New Orleans, LA 70130
    Telephone: (504) 310-2100
    Facsimile:  (504) 310-2120
    jirwin@irwinllc.com

*Attorneys for Defendants Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC, and Janssen Ortho LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 20, 2016, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to Liaison Counsel for Plaintiffs and Defendants by operation of the court's electronic filing system and served on all other plaintiff counsel via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre-Trial Order No. 17.

*/s/ James B. Irwin*
**James B. Irwin**