

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | * * | MDL 2592 |
| | * | SECTION L |
| THIS DOCUMENT RELATES TO ALL CASES | * * | JUDGE ELDON E. FALLON |
| | * * | MAG. JUDGE NORTH |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## DECLARATION OF ANGELA M. GIUSTI, Ph.D.

I, Angela M. Giusti, Ph.D., declare and state as follows:

1. I am Senior Director, Alliance Management and as such have personal knowledge of the Janssen Defendants' involvement with the prescription medication, Xarelto® in the United States. Based upon information obtained from various sources, including my personal experience in my position, the Janssen Defendants' corporate records, documents maintained by the Janssen Defendants in the regular course of business and other information obtained by me in the ordinary course of business, I have knowledge of the facts stated in this Declaration. I am competent to testify on the facts stated in this Declaration if called upon to do so.

2. My involvement with Xarelto® began in 2005. Prior to my current position in Alliance Management, I was Senior Director, Drug Development and served as the Compound Development Leader on a different compound developed by Johnson & Johnson Pharmaceutical Research & Development, LLC, which is now known as Janssen Research & Development, LLC. Given my knowledge of Xarelto and the collaboration with Bayer, my knowledge of developing compounds and my knowledge of the industry, I am familiar with the types of research and clinical development, clinical trials, clinical testing, regulatory, pharmacovigilance,

1

marketing and sales documents at issue here, how these documents are maintained, and how access to them is regulated.

3. It is my understanding that the Plaintiff's Steering Committee ("PSC") seeks to remove protection from a wide variety of documents relating to Xarelto, including documents concerning research and clinical development, clinical trials, clinical testing, regulatory matters, pharmacovigilance, adverse event reporting, strategic planning, marketing and sales issues. I offer this Declaration in support of the designations that were made under the Stipulated Protective Order as to the challenged documents.

Protection of Information

4. The Janssen Defendants have undertaken significant measures to protect proprietary, commercially sensitive and confidential information and data contained in the materials challenged by the PSC through maintaining secure computer systems, implementation of software programs and an internal system of designation. Access to the networks requires use of a login and password identification that employees are required to maintain in confidence, as well as, in certain circumstances, the use of an electronic security token. Employees are granted access to confidential and proprietary data based on their business need for such information. For example, Janssen's regulatory files for Janssen products, including Xarelto®, are maintained in a database that has permission-based access and restricts viewing and retrieval to authorized employees whose job duties demand access to such materials. Similar restrictions are in place with regard to the electronic files of preclinical and clinical study materials for Janssen products, including Xarelto®. Copies of reports of developmental, toxicological, and clinical studies, and related materials for Janssen products, including Xarelto®, are also maintained on secure

databases and file systems that have permission-based security access and reviewing and retrieval restrictions to authorized employees.

5. Janssen employees enter into contracts as a condition of their employment to maintain confidential and proprietary information. Employees are also trained in how to ensure that such information remains confidential. Vendors and consultants also sign agreements with confidentiality provisions.

6. The Janssen Defendants' offices have a high level of security, including controlled ingress and egress, electronic identification cards and badges, access cards for employees and consultants, registration and limited access of visitors, security on premises, and videotape surveillance cameras. These steps are taken in part to ensure that competitors do not have access to the Companies' offices, or to the marketing, sales, research and clinical development, clinical trials, clinical testing and regulatory or associated materials located there.

<u>Designation of Protected Documents</u>

7. I have been informed that the PSC has challenged the protection of a number of documents produced by Janssen in the Xarelto® litigation. I have reviewed a subset of these documents reflecting (a) business plans, strategic marketing plans, and sales training documents, (b) documents and communications related to nonpublic research and development activities, and (c) documents and emails regarding internal process related to the manufacture and design of products and regulatory submissions. The documents represented by each of these categories are identified on Exhibit A to this Declaration. None of these documents have been publically disclosed as produced, and all of them contain significant confidential and proprietary information and are held in strict confidence and protected from disclosure via the policies and procedures outlined in paragraphs 4-6 above.

8. Except pursuant to protective orders in other lawsuits, I am not aware of any person or entity that has the internal documents that Plaintiffs are requesting other than the Janssen Defendants, Bayer for purposes of development and collaboration, investigators involved in the design and implementation of studies, or the governmental authorities who regulate the industry. As these documents contain valuable data and information specific to Janssen's business affairs and are not publically available, de-designation of the documents identified in Exhibit A would be detrimental to Janssen's business practice and would undermine Janssen's property rights in their confidential commercial information.

9. **Business plans, strategic marketing plans, and sales training documents:** Plaintiffs seek to make public certain business plans, strategic marketing plans and sales training documents. Documents identified in this category are identified in Exhibit A

10. The novel oral anticoagulant (NOAC) segment of the pharmaceutical industry is very competitive. In addition to Xarelto, there are three other FDA-approved medications currently available in this class, including Pradaxa, Eliquis and Savaysa. Due to the competitive nature of the NOAC market, pharmaceutical companies invest substantial time and money developing competitive intelligence, which makes information concerning a competitor's research, product development, product testing, manufacturing, marketing, finance, and regulatory strategies of substantial commercial value.

11. I understand how important the sales and marketing work is to the Janssen Defendants generally and specifically as to Xarelto®, the competitiveness of the marketplace and the necessity of protecting such information. For example, the sales and marketing records include market research, competitive intelligence, training and strategies for detail

representatives, sales histories and projections, cost allocations and expenditures, specific demographic and market forecasts, and similar information.

12. These are the types of materials that Janssen's competitors would find valuable in marketing their own products and competing against Xarelto®. Disclosure of these documents, identified on Exhibit A would seriously injure Janssen's commercial interests and competitive position by revealing Janssen's marketing strategies to other competitors in the NOAC market.

13. **Documents and communications related to nonpublic research and development activities:** It is my understanding that the PSC also seeks to remove protection from a wide variety of documents relating to Xarelto, including documents concerning research and clinical development, clinical trials, clinical testing, and pharmacovigilance. Documents identified in this category are listed in Exhibit A. These documents contain significant confidential and proprietary information. The Janssen Defendants' internal documents, including those Plaintiffs seek, reflect significant trade secret information that a competitor cannot obtain by simply analyzing the manufactured compound or its label.

14. Over the years, the Janssen Defendants have invested a significant expenditure of time and money in developing specific testing, design and methodologies for Xarelto along with conducting research, gathering and analyzing the resulting data. These test designs, including clinical trial designs, and methodologies as well as the methods of analysis, have commercial value in this segment of the pharmaceutical industry, independent of the value of the specific results themselves. A significant challenge for any pharmaceutical company, beyond the research, development and regulatory approval of viable pharmaceuticals, is designing tests to be conducted in a research setting that will adequately simulate the complex environment of the human body, properly mirror the patient population, and demonstrate

efficacy and safety for a particular indication. Competing companies must undertake substantial testing of their own (incurring their own time and expense) just to develop the methodologies and designs that will be appropriate for use in evaluating various aspects of pharmaceuticals, materials, designs, and research outcomes.

15. Unpublished clinical and pre-clinical reports and data, audit reports, study protocols, and internal communications and meeting minutes relating to these topics are and have historically been considered confidential and proprietary across the pharmaceutical industry, held in strict confidence, and withheld from public disclosure. Indeed, competitors of the Janssen Defendants would have to incur the time and expense of conducting their own testing program to attempt to duplicate the research that the Janssen Defendants and Bayer have already performed to obtain some of the confidential and proprietary information contained in the companies' research and development documents.

16. Non-published, proprietary information concerning the underlying data from clinical studies is of substantial value to competitors because it can inform their own research and development efforts and enable them to avoid some or all of the cost of developing their own products. By making past, ongoing and future research about Xarelto publically available, competitors would be able to develop counter-strategies to downplay or offset the market effect of those studies.

17. **Documents and emails regarding internal process related to the manufacture and design of products and regulatory submissions:** It is my understanding that the PSC also seeks to de-designate documents and emails regarding the internal process and design of products and regulatory submissions. Documents identified in this category are identified in Exhibit A.

18. The Janssen Defendants devote substantial money and time each year to the manufacture, design and regulatory submissions of its various products, including Xarelto. These documents represent confidential information, and maintaining the confidentiality of this type of proprietary information is essential to Janssen's business.

19. The U.S. pharmaceutical industry is highly regulated by the U.S. Food & Drug Administration and compliance with these regulations is required. For example, each company must comply with "Good Manufacturing Practices," including extensive record-keeping procedures. While certain limited study data are made publically available as part of the regulatory process, FDA recognizes the importance of protecting confidential strategic decisions and legitimate economic interests of sponsors. Many documents required for regulatory submission are not accessible to the public and are FOIA-exempt.

20. Janssen has an expectation that submission of such material to regulators does not waive confidentiality. The Janssen Defendants consider this information to be highly confidential in that it has had to expend its own resources to develop these internal documents and otherwise comply with federal regulations. Regulatory documents and submissions may contain trade secrets, information about ongoing (and therefor incomplete research) or confidential or HIPAA-protected data that pursuant to federal regulations is otherwise not available for public inspection.

21. Were these documents made public, they would reveal Janssen's strategic considerations regarding product development, manufacturing, and other aspects of the regulatory process that competitors could copy, which would seriously undercut Janssen's legitimate commercial interests and competitive position in the NOAC market as the owner of this information.

I, Angela M. Giusti, do hereby declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

This 20 day of May, 2016

_____
Angela M. Giusti

# EXHIBIT A

1. Documents identified as business plans, brand plans, strategic marketing plans and discussions, cost analyses, projections, vendor contracts, and sales training documents:

| Deponent | Exhibits |
|---|---|
| **Michael Moye** | 4, 5, 9, 11, 12, 14, 16, 17, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 30, 31, 32, 33, 34, 35, 39, 40, 41, 42, 43, 44, 46 |
| **Sanjay Jalota** | 2 |

2. Documents identified as documents and communications related to nonpublic research and development activities, including ongoing analysis and strategic planning:

| Deponent | Exhibits |
|---|---|
| **Christopher Nessel** | 3, 4, 5, 7, 45, 67, 68, 69, 70, 71, 72, 73 |
| **Sigmond Johnson** | 2, 3, 8, 10, 11, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 36, 37, 38, 39, 40, 41, 42 |
| **Sanjay Jalota** | 36, 37, 53, 54, 56, 57, 58, 59, 61, 62, 64, 65, 66 |
| **Wolfgang Mueck** | 37, 39, 40 |
| **Andrea Derix** | 8, 26, 27, 28, 35, 53, 55, 56 |

3. Documents identified as documents and emails regarding internal process related to the manufacture and design of products and regulatory submissions:

| Deponent | Exhibits |
|---|---|
| **Christopher Nessel** | 2, 8, 15, 16, 17, 18, 19, 20, 21, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 37, 38 |
| **Sigmond Johnson** | 5, 6, 12, 13, 14, 15, 16, 17, 18, 43, 44 |
| **Sanjay Jalota** | 3, 4, 5, 6, 7, 8, 10, 11, 12, 13, 16, 17, 18, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 32, 42, 43, 44, 46, 47, 48, 49, 40, 51, 70, 73 |
| **Dagmar Kubitza** | 8, 10, 11, 12, 51 |
| **Wolfgang Mueck** | 31 |
| **Andrea Derix** | 6, 9, 10, 13, 16, 17, 18, 19, 20, 21, 22, 24, 25 |
| **Andrea Horvat-Broecker** | 20 |

00353534