UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


IN RE: XARELTO (RIVAROXABAN)      *    MDL 2592 "L"
PRODUCTS LIABILITY LITIGATION     *
                                  *
                                  *    May 24, 2016
                                  *
                                  *
                                  *    Judge Eldon E. Fallon
                                  *
THIS DOCUMENT RELATES TO          *
ALL CASES                         *    Mag. Judge Michael North
                                  *
*******************************************************************

**REPORTER'S OFFICIAL TRANSCRIPT OF THE STATUS CONFERENCE
BEFORE THE HONORABLE ELDON E. FALLON,
UNITED STATES JUDGE.**

*******************************************************************


**REPORTED BY:**      Mary V. Thompson, RMR, FCRR
                      500 Poydras Street
                      Box B2-13
                      New Orleans, LA  70130
                      (504) 589-7783
                      mary_v_thompson@laed.uscourts.gov


**PROCEEDING RECORDED BY MECHANICAL STENOGRAPHY; TRANSCRIPT PRODUCED BY COMPUTER.**

**APPEARANCES:**

```
FOR THE PLAINTIFFS'
LIAISON COUNSEL:              HERMAN HERMAN & KATZ
                             BY: LEONARD A. DAVIS, ESQ.
                             820 O'KEEFE AVE.
                             NEW ORLEANS, LA  70113


                             GAINSBURGH BENJAMIN DAVID
                             MEUNIER AND WARSHAUER
                             BY: GERALD E. MEUNIER, ESQ.
                             2800 ENERGY CENTRE
                             1100 POYDRAS ST., STE. 2800
                             NEW ORLEANS, LA  70163


FOR THE DEFENDANTS'
LIAISON COUNSEL:              IRWIN FRITCHIE URQUHART &
                             MOORE
                             BY: JAMES B. IRWIN, V, ESQ.
                             TEXACO CENTER
                             400 POYDRAS ST., STE. 2700
                             NEW ORLEANS, LA  70130
```

**FINAL TRANSCRIPT**

**AGENDA ITEM INDEX**

**PAGE NO.**

Pretrial Orders....................................   5

Case Management Orders.............................   7

Bellwether Selections..............................   7

Counsel Contact Information Form...................   7

Plaintiff Fact Sheets..............................   8

Defendant Fact Sheets..............................   8

Bundling of Complaints/Answers/Responsive Pleadings.  16

Preservation Order.................................  17

Proposed Order Governing Parties' Interactions with
MDL Plaintiffs' Prescribing and Treating Physicians.  17

Discovery..........................................  18

Deposition Guidelines..............................  22

Discovery Issues To Third Parties..................  22

Federal/State Coordination.........................  23

Matters Set For Hearing Following Status Conference.  24

Next Status Conference.............................  24

**FINAL TRANSCRIPT**

**P R O C E E D I N G S**

1
2                                 (Call to order of the court.)
3          THE COURT:  Morning, ladies and gentlemen.  Be seated,
4    please.
5          Call the case.
6          THE CASE MANAGER:  MDL 2592, *In Re: Xarelto Products*
7    *Liability Litigation.*
8          THE COURT:  Counsel, make your appearance for the
9    record, please.
10         MR. MEUNIER:  Jerry Meunier, Gainsburgh, Benjamin.
11   Co-liaison for the plaintiffs.
12         MR. IRWIN:  Good morning, Your Honor.  Jim Irwin for
13   the defendants.
14         THE COURT:  We're here today for our monthly status
15   conference.  I met with counsel a moment ago to discuss the
16   agenda.  I'll take it in the order presented.
17         Before I do so, let me mention a couple of things.
18         One thing, it's been brought to my attention that
19   people are -- that litigants are receiving a telephone call from
20   some unknown source indicating that the case had been resolved,
21   or something to that effect, and they just need to send a certain
22   amount of money to get on a list or whatever.  It's a scam and
23   I'm going to alert the U.S. Attorney's office to it and we'll see
24   what happens with that.
25         But the point is that the matter is not resolved,

**FINAL TRANSCRIPT**

1   there's nothing in the mill to that effect, and the litigants

2   should not be taken in by any such scam.

3           MR. MEUNIER:  Thank you, Judge.

4           Looking at the joint report, we first list all of the

5   pretrial orders that have been ordered.  I'll identify five such

6   orders which have been ordered since the last status conference

7   with Your Honor.

8           PTO 24-A.  PTO 26.  PTOs 27, 28 and 29.

9           And if I might, Judge, I would like to take a few

10  minutes to talk about 24-A and 29.  The other new orders will be

11  discussed in the course of the joint report.

12          Counsel, particularly for plaintiffs, need to be aware

13  of these particular orders which deal with the voluntary

14  dismissal of cases, either entirely or voluntary dismissals of

15  certain claims.

16          New Pretrial Order 24-A addresses motions to

17  voluntarily dismiss a claim, a party, or an entire action

18  pursuant to Federal Rule 41(a)(2).  And under this order now, in

19  advance of filing any such voluntary dismissal motion, plaintiff

20  counsel must provide written notice to the defendant liaison lead

21  counsel at least 14 days in advance, and then certify, when

22  filing, that the motion is either opposed or agreed upon.

23          And if it is being opposed, it's important for counsel

24  to know that all of these motions, which will be heard by the

25  Court, will now be noticed for hearing only on one of the status

**FINAL TRANSCRIPT**

1   conference dates which has been scheduled by Your Honor.  So

2   they'll be bundled if they occur between conferences and heard on

3   those conference dates.

4        Also when a motion is filed to voluntarily dismiss an

5   entire action, it must be accompanied by a certification that the

6   filing fee and payment requirements of PTO 11-B, if applicable,

7   have been satisfied.

8        And importantly, these provisions apply not just to

9   prospective motions, Judge, but to pending motions of voluntary

10  dismissal which have not yet been ruled upon by the Court.  And

11  in those cases the order provides plaintiff counsel has to now

12  supplement and amend their pending motions to conform with

13  PTO 24-A.

14       And as to motions of voluntarily dismissal which may

15  have been granted, and in which, for whatever reason, a required

16  filing fee has not been paid, then the order makes it incumbent

17  on plaintiff liaison counsel to communicate with those plaintiff

18  attorneys now and see that the filing fees, which are due, are

19  paid.

20       The other new order to mention is PTO 29 which deals

21  not with motions but notices of voluntary dismissal, which are

22  permissible under Federal Rule 41(a)(1), but as the Court knows,

23  only permissible if no answer has been filed.  So in those cases

24  the new order specifies that if you're going to file a notice of

25  voluntary dismissal, you must file with it a written

**FINAL TRANSCRIPT**

1    certification that your notice is being filed within 30 days of
2    the case being docketed.

3         The reason for that is that under an earlier
4    pretrial order, the omnibus answer of the defendants is operative
5    and applicable in cases once that 30-day period for docketing
6    runs.  So the only way you can file the notice, in the absence of
7    an answer, is to certify in writing that the notice is being
8    filed within that 30-day period before which the omnibus answer
9    applies.

10        I just wanted to mention those things on the record to
11   make sure that counsel are aware of those provisions.

12        And I'll talk about the other new orders as we go
13   forward, Your Honor.

14        THE COURT:  Okay.

15        MR. MEUNIER:  There's nothing new on case management
16   orders or bellwether selections.

17        Item 4 on the joint report deals with counsel contact
18   information, and Mr. Davis and I are appreciative that we
19   continue to get those counsel contact information forms sent to
20   us as required.  That allows the case to be properly included in
21   notification protocols and MDL Centrality.  We appreciate
22   counsels' continued work with us on that.

23        THE COURT:  With regard to the bellwether selection
24   areas, how is the discovery in that -- on those issues coming
25   along?  Is the plaintiff now taking depositions of the --

**FINAL TRANSCRIPT**

1    MR. MEUNIER:  Mr. Birchfield can report on that, Judge.

2    MR. BIRCHFIELD:  Your Honor, the bellwether discovery

3  process is underway.  Several of the plaintiffs have already been

4  deposed.  We have depositions set for several of the prescribers

5  and the treaters and so it's proceeding.  It's not all the

6  plaintiffs will be deposed and then the prescribers or treaters.

7  We're scheduling these as we can get them set.  But most of the

8  40 cases are in place now and either have depositions set or are

9  being set.

10    THE COURT:  Okay.  That's fine.  The reason I wanted to

11  know is because I'm talking to some of the state court judges and

12  I'd like to keep them up to speed on what's happening here.

13  Okay.

14    MR. MEUNIER:  Your Honor, on plaintiff fact sheet,

15  which is Item 5 of the joint report, I first would like to

16  mention the protocol that continues to, I think, be helpful to

17  the Court and to the parties when there is a delinquent or

18  deficient plaintiff fact sheet.  And under prior architectural

19  orders of this MDL, those cases may be subject to a dismissal

20  with prejudice.

21    We have a system in place whereby there's a contact

22  counsel on either side in this case, Ms. Deirdre Kole for the

23  defendants and in our case Ms. Sindhu Daniel for plaintiffs.  And

24  those two counsel will look at a list of the cases that are on

25  that possible dismissal track because of a problem with the PFS

**FINAL TRANSCRIPT**

1    not being filed or it being deficient.

2          That gives the counsel an opportunity, particularly on

3    our side, to communicate with plaintiff counsel and try to work

4    out those problems.  If they cannot be worked out, then it

5    appears before Your Honor on a rule to show cause for dismissal.

6    This Court has already done that once in a prior April hearing,

7    at the April 20th status conference, and then you entered, on

8    May 11th, an order that did dismiss certain of those cases.  From

9    the PSC standpoint we just want to make sure that all the due

10   process safeguards have been followed for those lawyers and

11   litigants to know what's facing them.

12         We continue to have that protocol and we continue to

13   get an opportunity with defendants to look at the list of cases

14   that are subject to possible dismissal for that reason, and I do

15   appreciate the efforts of Ms. Kole and Ms. Daniel to keep that

16   process going.

17         THE COURT:  Yeah, we have to recognize that, in these

18   cases, we try to move them as quickly as we can.  And it's like

19   moving a battleship, it's very difficult.  But one way we do it

20   is to do discovery in a different way than we do ordinarily.

21         In the ordinary case you're dealing with

22   interrogatories and things of that nature.  Here we're trying to

23   package that in the form of fact sheets so that the parties get

24   together beforehand and decide what information they need

25   immediately to deal with the case, and they do it in the form of

**FINAL TRANSCRIPT**

1   a fact sheet.  Each side fills out the fact sheet giving the

2   other side material that would ordinarily be forthcoming in sets

3   and sets and sets of interrogatories.

4           But people have to participate in it.  And that's --

5   that's where sometimes it becomes more difficult because

6   individuals have to know that I'm going to enforce the fact

7   sheets.  If they don't do it, I'll give them time.  If they're

8   doing it and trying to do it, I'll give them time.  But if

9   they're just giving up on it or don't want to deal with it or

10  don't want to be bothered, then they ought not to be in the

11  litigation.

12          So I'll give them enough time, but it comes a point, if

13  I get the feeling that they're not interested in it anymore, then

14  we'll move them out of the litigation and deal with the people

15  who are interested in proceeding.

16          And that's the reason for it.

17          MR. MEUNIER:  Your Honor, there has been an important

18  development with Pretrial Order 27, which is one of those new

19  orders entered since the last status conference, which directly

20  affects the scope and nature of the fact sheet process going

21  forward.

22          In particular, PTO 27 modifies earlier Pretrial Orders

23  13, 13-A, 14, and 14-A, which were the series of orders that

24  specified what needed to be in a plaintiff fact sheet and what

25  the defendant fact sheet needed to do in response.


**FINAL TRANSCRIPT**

1        Under PTO 27, now the plaintiff fact sheet and

2   defendant fact sheet requirements of those PTO 13 and 14 orders

3   will remain in effect only for the 40 discovery pool plaintiffs.

4   And, likewise, will remain in effect for any cases where the

5   plaintiff fact sheet is due on or before March 30, 2016.

6        So if your fact sheet is due on or before March 30,

7   2016, even if you're not in the discovery pool, the usual

8   standard requirements of PTO 13 and 14 remain.

9        However, under PTO 27, outside of the discovery pool

10   and if your fact sheet is due after March 30, 2016, there's a new

11   day which essentially is that the plaintiff fact sheet now is

12   only required to be filled out for the core information in

13   Section 1, and the defendant fact sheet response is suspended.

14        And Order 27 provides, of course, that at the

15   appropriate time when the parties are prepared to do so, with the

16   Court's permission, we'll come back and talk about defendant fact

17   sheet obligations in those cases where it is suspended under

18   PTO 27.

19        THE COURT:  Okay.

20        MR. MEUNIER:  I think Jake Woody is here, Judge, for

21   BrownGreer to make a report now on the inventory which may

22   include numbers of fact sheets so it might be a good time for

23   Jake to do that.

24        MR. WOODY:  Good morning, Your Honor.  My name is

25   Jake Woody from BrownGreer.  I have a brief report on the

**FINAL TRANSCRIPT**

1  MDL Centrality and fact sheet process in this MDL.

2         So far we have received 5,573 plaintiff fact sheets.

3  That's an increase of 620 since our last status conference.

4         We have another 2,241 in progress, meaning they've been

5  started but haven't been submitted yet.

6         And of the 5,573, 1,723 have been amended at least

7  once.

8         That's a total of 7,817 plaintiffs in the system, which

9  is an increase of 825 since the last status conference.

10         I talked to your courtroom deputy a few moments ago

11  about the number of cases in this MDL, and that has expanded in

12  the last month or so.  And I think that right now the total is

13  about 7,000 cases.

14         We have more fact sheets in the system, which is not

15  surprising, because many of those cases are bundled and will be

16  severed.  So I think that we'll see an increase in fact sheets

17  over the next two to three months as those obligations to

18  complete a fact sheet for those new cases come due.

19         This is our monthly count.

20         For April we had 569 fact sheets submitted, which is a

21  little bit higher than our average of 500.

22         So far in May we have 357 with about a week left.

23         I do think that over the course of the summer,

24  especially in July and August, you'll see a greater increase in

25  these numbers because of those other bundled complaints that have

**FINAL TRANSCRIPT**

1    come in over the last week.

2         After that I expect it will reduce and become sort of a
3    smaller monthly total, but I do think we'll see a lot of activity
4    over the next few months in fact sheet submissions.

09:16:57    5         Defendant fact sheets.

6         We have 6,375 total submissions.

7         We've seen these numbers drop a little bit, and that's
8    because of PTO 27, which Jerry mentioned a moment ago.

9         Again, if a PFS was due after March 30th, the
09:17:13   10    plaintiffs only need to complete Section 1 and supply all the
11    normal documentation, the medical records and authorizations and
12    proof of use.  I think that will make it easier for people to
13    submit fact sheets which may in part have caused the slight
14    increase we've seen over the last month.  Because if it's easier
09:17:31   15    to submit them, more people will actually submit complete fact
16    sheets.

17         Likewise on defendant fact sheets, as Jerry mentioned,
18    the obligation to supply a defendant fact sheet that was served
19    after March 30th is suspended.  I think that's caused the
09:17:46   20    decrease in defendant fact sheets that I showed you a moment ago.
21    And I think that that number will continue to decrease unless and
22    until there's an obligation to serve defendant fact sheets for
23    the new plaintiff fact sheets.

24         This is our comparison of the discovery pool to our MDL
09:18:05   25    as a whole (indicating), and it's by and large remaining the same

**FINAL TRANSCRIPT**

1    as it has in past months.  We've seen a slight decrease in some

2    of the categories in the MDL.  Notably the age in the MDL as

3    between 60 and 79 has decreased slightly as well as the main

4    injury, which is an alleged GI bleed.

5         I do think that this analysis will probably be more

6    useful once we have processed and received all the fact sheets

7    for the new cases in July and August, because these numbers are

8    slightly in flux right now as we receive all these new fact

9    sheets, but I will continue to monitor and report on to the

10   Court.

11        Finally, just our -- sort of statistics.

12        We have 363 firms in the system.

13        1,380 users.

14        We've identified 41 plaintiffs who are -- have been --

15   we have fact sheets filed by different law firms for the same

16   Social Security number.  We have received some information from

17   these firms to switch representation.  And we have a process in

18   place to make sure that all firms are aware of these requests,

19   and we'll continue to monitor the duplicate plaintiffs and clean

20   these up as best we can.

21        We have 89,214 documents in the system, which is an

22   increase of about 10,000 since the last status conference.  And I

23   expect that that number will continue to expand exponentially as

24   new fact sheets and new plaintiffs are registered.

25        Finally we have just under 4,000 pleadings served

**FINAL TRANSCRIPT**

1  through MDL Centrality.  Again, that number continues to increase

2  steadily.  We receive the ECF notifications from the court,

3  convert that into an e-mail with the pdf of the document

4  attached, and send that to all registered plaintiff users.

5       We also send a summary at the end of the day.  And if

6  you would like to control which e-mails you receive, we have a

7  spot on our home page to do it.  If you just want to receive the

8  end-of-the-day summary, you can do it there.  You can also e-mail

9  us at mdlcentrality@browngreer.com and we'll take care of it for

10  you.

11       THE COURT:  How's the pleading section of the program

12  going?  Is that working?

13       MR. WOODY:  Yes, it's going very well.  It's an

14  automated system.  Nobody has to really do anything.  In the past

15  you would have to upload -- you would have to file with ECF, and

16  then upload it somewhere else.  But because we're able to get

17  these ECF notifications and basically import data, including the

18  actual document, from those without any human hand touching

19  anything, it's been a good system.  And I think it's made it

20  easier for everyone to keep abreast of filings and orders in the

21  MDL.

22       Thank you, Your Honor.

23       THE COURT:  Thank you, Jake.

24       MR. MEUNIER:  Your Honor, as you know there are really

25  two dimensions of service provided by BrownGreer with this

**FINAL TRANSCRIPT**

1   program.  MDL Centrality is having its maiden voyage in this MDL,

2   as Your Honor encouraged us to try it, and one is the assembly of

3   all the data that we see reported on, which is helpful to the

4   parties and the Court; but the other I'll mention is that we've

5   recently been made aware of a pretty significant dollar savings

6   that has been enjoyed on the side of the service, dealing with

7   the service of process and the service of pleadings.  So I do

8   think MDL Centrality has been a success for more than one reason

9   in this case.

10          THE COURT:  Yeah, from my standpoint it's helpful to me

11  because I'm looking at the census of the litigation, and it's --

12  you can see it developing one way or the other.  And so you try

13  to keep the bellwether program or the bellwether selection

14  consistent with the census of the litigation, and I think we're

15  doing that in this particular case.  So I think it's really

16  helpful that way, too.

17          Okay.

18          MR. MEUNIER:  The next section of the report deals with

19  the bundling of complaints, and we want to mention that under

20  PTO 11-F, the Court declared that as of May 20th of this year,

21  2016, no bundled or joint complaints, as defined in PTO 11, will

22  be accepted for filing in the clerk's office.

23          And plaintiff counsel should know that we continue to

24  have posted on the Court's website a joint complaint.  It is

25  obviously now no longer serviceable as a model for a bundled

**FINAL TRANSCRIPT**

complaint, which are no longer permitted in the MDL.  However --
and neither is it to serve as a master complaint because, as the
Court knows, there has been no master complaint in the
traditional sense of the word used in this MDL.

But the content of that joint complaint is there on the
Court's website.  It can serve as a template to plaintiff counsel
who will now be filing cases in the more traditional mode outside
of a bundle mechanism.

Section 8 of the report deals with preservation orders.
We simply remind plaintiff counsel that under PTO 15-B, there was
an option to either refrain from or preserve things like
voicemails, instant messages, and text messaging that might deal
with Xarelto, the use of Xarelto, or injuries alleged to have
resulted from Xarelto.

So that option specifically stated that as of
September 17th, 2015, one would either refrain from using those
mechanisms for those communications or preserve.  And to the
extent there was continued use of voicemail, text messaging,
et cetera, plaintiffs and plaintiff counsel should be aware of
the preservation obligations of PTO 15-B.

Under the next section of the report, Your Honor, we
address the parties' interactions with prescribing and treating
physicians.  And one of the new orders entered by the Court since
the last status conference is PTO 28 which sets forth the
protocol for plaintiffs and plaintiff counsel making contact with

**FINAL TRANSCRIPT**

1   physicians.  And I encourage counsel new to the case to read the

2   provisions of PTO 28 to be educated about the standard for that

3   and the requirements for that.

4          In Section 10 of the report, we discuss various

09:24:32   5   discovery developments.  We continue to have biweekly telephone

6   conferences with the Court to raise and discuss with you, outside

7   of formal motion practice, if necessary, discovery disputes or

8   concerns or need for clarification.  I think both sides would

9   agree those biweekly conferences continue to be very helpful to

09:24:57  10   the Court -- to the parties, rather.  And the next will be with

11   you on June 2nd to the extent we have issues to raise.

12          THE COURT:  Yeah, that's -- we try to do that because,

13   as I say, we're trying to move the case along and we can't get

14   tangled up in the weeds.  And if it goes through the magistrate

09:25:17  15   and then there has to be a written order and then I have to

16   review it and I have to write an order, it just takes up so much

17   time and it doesn't work.  But if something needs to be briefed,

18   if something needs to be argued personally, I'm sensitive to

19   that.  The parties let me know and we do it that way.

09:25:38  20          MR. MEUNIER:  And I think that that need for balance

21   between that process and the need to protect and preserve issues

22   is illustrated in the next item in this section of the report

23   dealing with confidentiality of documents.

24          Under PTO 12, as the Court knows, there is a process

09:25:56  25   set forth whereby if the plaintiffs' side believes there are

**FINAL TRANSCRIPT**

1  certain materials which should not be continued to be marked

2  confidential, we send a letter to the defendants' side about

3  that.  And there is a meet-and-confer process then allowed for

4  under PTO 12, and the defendants may, in that process,

5  de-designate certain documents.  And then as to those documents

6  which remain in dispute on confidentiality grounds, we have

7  motion practice.

8         And so on May 20th, the -- following that same process

9  that started with a letter that we had written on April 6th, on

10  May 20th the defendants did file a motion for protective order as

11  to documents which -- as to which there is a dispute on

12  confidentiality.

13        And we've shared with the Court how again the process

14  is important, but also time and practical needs are important.

15  And we need to continue to work with defendants and with

16  Your Honor on how to best expedite this process on

17  confidentiality.  And so we appreciate that the Court has given

18  us an expedited track now on this May 20 motion.  As I appreciate

19  it, that will now be heard by the Court in the afternoon of

20  June 10.  And the plaintiffs' opposition brief will be due by

21  noon on June 6th, and the defendants' reply by June 8th also at

22  noon, I believe.

23        And maybe we'll learn, Judge, in that process with you,

24  and particularly with your ruling, how to better expedite this

25  going forward.  But it is a concern, we've raised it with the

**FINAL TRANSCRIPT**

1 defendants, and we'll continue to talk about it.

2     THE COURT:  Yeah, the -- the reason for the

3 confidentiality is just a practical one.  The defendants have to

4 be encouraged to turn over thousands and thousands of documents.

5 The logistics have to be short-circuited.  And so they have to

6 have some comfort in the fact that the documents are going to be

7 treated confidentially as opposed to simply distributed on the

8 Internet.

9     If that is their concern, then they're going to have

10 scrutinize every single document and it will take time and effort

11 because we're dealing with millions of documents here.  So I'm

12 sensitive to that so we put things under a confidentiality order.

13     But as the case develops, there are certain documents

14 that may not need to be under that order.  And the parties have

15 to meet and confer and see whether there's any interest in

16 excluding those documents.

17     And sometimes depositions are going to be taken and

18 those documents are going to be used in depositions, and in the

19 confidentiality world, the person who is testifying or reviewing

20 those documents also is asked to treat them as confidential.

21     And that presents some problems, particularly with

22 treaters and other individuals, and so they resist that.  And so

23 we have to then look at each deposition to see which documents

24 are going to be used and how to best give that witness comfort in

25 using the documents and talking about the documents and at the

**FINAL TRANSCRIPT**

1   same time treating them with some care and respect.  And that

2   takes a little effort, but that's a way of doing it.

3          So both sides have some interest in dealing with these

4   issues.

09:29:44   5          MR. MEUNIER:  Your Honor, I'm advised by Mr. Irwin that

6   I misspoke on the defendant's reply brief which is due June 8th.

7   It's due at 5:00 p.m., not at noon.

8          THE COURT:  Okay.

9          MR. MEUNIER:  In the same discovery section of the

09:30:00   10  report, Your Honor, we also mention your recent ruling on the

11  issue of the German Privacy Act and the German employee and

12  personnel files.  Oral argument on the PSC's motion that those

13  files be produced was heard by the Court May 10, and on May 16

14  the Court issued an order and reasons which is mentioned in the

09:30:22   15  joint report.  And as a result of that, Defendant Bayer will be

16  producing a privacy log as directed by you in your ruling.  And

17  we understand that privacy log is due by June 6, 2016.

18         THE COURT:  Right.  You don't see "privacy logs" in the

19  Federal Rules of Civil Procedure.  We've just invented that one

09:30:48   20  but it does the same concept.  So it's an opportunity for me to

21  understand what documents we're talking about.  It's really not a

22  privilege log, because that's -- we're not there yet, so we had

23  to call it something so I called it a privacy log.

24         MR. MEUNIER:  Your Honor, the final thing to mention on

09:31:14   25  discovery pertains to one of the new orders, the last one I

**FINAL TRANSCRIPT**

1   mentioned new since the last conference, and that is PTO 26,

2   which sets forth a negotiated protocol for the order and

3   scheduling of depositions to be taken with respect to the

4   40 discovery pool plaintiffs.

5           We also mention here that contention interrogatories

6   regarding the 40 discovery pool plaintiffs have been propounded

7   to the defendants, and we did that starting on April 26, 2016.

8   Again, a signal that we are now getting into crunch time on the

9   merits discovery of those 40 cases.  And as Andy reported,

10  depositions are being taken all with a view toward hopefully

11  serving up instructive and useful information based on that

12  sample of cases.

13          Nothing new to report, Judge, on deposition guidelines.

14          The next section of the report deals with discovery to

15  third parties.

16          I think we're pretty much status quo with respect to

17  the FDA and DCRI references in the report.

18          We did have a subpoena issued to Alere San Diego, Inc.,

19  and we've had some meet-and-confer with that entity and we're

20  awaiting the production of materials under subpoena.

21          We've also been in contact with another group, PhMRA,

22  Pharmaceutical Research and Manufacturer of America, to which we

23  issued a subpoena.  Again, meet-and-confer discussions have been

24  held, and we're answering certain questions that that entity has

25  raised about the nature of the materials sought under subpoena.

**FINAL TRANSCRIPT**

1        The other two third-party subpoenas mentioned in the

2  report, one dealing with Portola Pharmaceuticals, Inc. and the

3  other Diagnostica Stago, Inc., those were subpoenaed

4  deposition -- or notices of depositions set for June 20.  Just

5  for the record, that date has now been, by agreement, suspended

6  and meet-and-confer discussions are continuing with those

7  entities.  Going forward we hope to work out any issues we have

8  with respect to those subpoenas.

9        On state/federal coordination, Ms. Barrios is not here

10  and my co-liaison, Lenny Davis, has the unenviable task of

11  standing in for Ms. Barrios.

12        MR. DAVIS:  Good morning, Your Honor.  Lenny Davis,

13  co-liaison counsel.

14        I've been asked by Dawn Barrios, Mike Weinkowitz, and

15  Dan Galluci to present their report to the Court.  I've already

16  provided to the Court, and defendants have it, the statistics as

17  of May 20, 2016.  If there are any questions regarding those

18  reports, I'm happy to answer them.

19        But in brief, there are 93 new cases filed since the

20  last status conference with 101 plaintiffs or Xarelto users that

21  are identified.  We expect that that may change over the next

22  coming months.

23        California still has a consolidated action.  We now

24  understand that that will be in Los Angeles and a judge has not

25  yet been selected.  The prior order that was issued indicated

**FINAL TRANSCRIPT**

1   San Francisco, but we do know now that it is Los Angeles.

2           With respect to Pennsylvania, we understand that the

3   Court will be issuing Case Management Order No. 10, which will

4   have an amended complaint and short-form complaint, which will

09:34:51  5   also include stroke cases.  And that judge, as I understand it,

6   provided previous issues on that.  That's Judge New.  And I also

7   understand that there's a status conference in that court this

8   Thursday.

9           The only other jurisdiction that has an increase in

09:35:12  10  cases is Delaware, which we've discussed at previous conferences,

11  and that judge is Judge Wharton, and his contact information is

12  indicated in the chart.

13          THE COURT:  Right.  I talked with Judge Wharton and met

14  with him and hopefully we'll be able to work together on the

09:35:29  15  matter.

16          MR. DAVIS:  Thank you, Your Honor.

17          THE COURT:  Thank you very much.

18          Do we have a motion filed that -- after this

19  conference?

09:35:40  20          MR. MEUNIER:  A motion to remand will be heard after

21  the conference.

22          THE COURT:  Right.

23          MR. MEUNIER:  Our next status conference with you is

24  June 24th at 9:00 a.m.  And I think the Court has also set a

09:35:50  25  July --

**FINAL TRANSCRIPT**

1      THE COURT:  The subsequent one is July 22nd at 9:30.

2  July 22, 2016, 9:30.  I'll meet with the liaison and leads at

3  9:00 July 22nd.

4      MR. MEUNIER:  Thank you, Judge.

5      THE COURT:  Okay.  We'll take a ten-minute break and

6  I'll come back and hear the motion.

7      Court stands in recess.

8          (Proceedings recessed.)

9

10          *  *  *  *

11          **CERTIFICATE**

12

13      **I hereby certify this 27th day of May, 2016, that the**

14  **foregoing is, to the best of my ability and understanding, a true**

15  **and correct transcript of the proceedings in the above-entitled**

16  **matter.**

17

18                    */s/ Mary V. Thompson*

19          _____
                    **Official Court Reporter**

20

21

22

23

24

25

**FINAL TRANSCRIPT**