**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | : : : : : : : : : | MDL No. 2592 |
| | | SECTION L |
| | | JUDGE ELDON E. FALLON |
| : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : | : : | MAG. JUDGE NORTH |
| THIS DOCUMENT RELATES TO | : : | |
| *Marotte v. Janssen Research & Development LLC et al*, Case No. 2:15-cv-05751 (E.D.La.) | : : : : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN**
**SUPPORT OF MOTION TO AMEND COMPLAINT**

### I.   INTRODUCTION

Plaintiff, by and through her counsel, hereby submits this memorandum of law in support of Plaintiff's Motion to Amend Complaint. Specifically, Plaintiff seeks to amend the Complaint in order to name the additional defendant, Bayer B.V.[1] During the deposition of Andrea Derix, the Plaintiffs' Steering Committee (PSC) was advised that the clinical lead on the EINSTEIN studies was and continues to be Anthonie Lensing, M.D., an employee of Bayer B.V. As such, Bayer B.V. was materially and significantly involved in the design and approval of Xarelto for the treatment of deep vein thrombosis (DVT), pulmonary embolism (PE), and for the reduction of risk of recurrence of DVT and of PE and therefore is liable to Plaintiffs as a manufacturer of Xarelto.

### II.   FACTS

---

[1] Plaintiffs proposed Amended Complaint is Exhibit AA@ to Plaintiffs= Motion to Amend.

Plaintiff instituted a legal action against the manufacturer, sellers, and distributors of Xarelto (Janssen Research & Development LLC; Janssen Pharmaceuticals, Inc.; Janssen Ortho LLC; Johnson & Johnson; Bayer Healthcare Pharmaceuticals, Inc.; Bayer Pharma AG; Bayer Corporation; Bayer Healthcare LLC; Bayer Healthcare AG; and, Bayer AG, collectively ADefendants@) by filing a complaint in this Court on November 6, 2015. Plaintiff alleges that she suffered life-threatening bleeding as a result of her ingestion of Xarelto on December 1, 2014.[2]

Both the Complaint and the proposed Amended Complaint assert claims against the Defendants for strict products liability, negligence, breach of express warranty, breach of implied warranties, negligent misrepresentation, fraudulent misrepresentation, fraudulent concealment, fraud and deceit, violation of consumer protection laws, and for punitive damages.

Since the filing of the Complaint, Plaintiff has learned that Bayer B.V., through at least its employee Anthonie W. LENSING, M.D., was deeply involved in the design and performance of the Einstein clinical trial program.[3] During the deposition of Dr. Andrea Derix, the PSC learned that Dr. Lensing was, and continues to be, the clinical lead for Bayer on the EINSTEIN studies. During this same deposition the PSC learned that Dr. Lensing works for Bayer through its subsidiary in the Netherlands and that all of these entities are under the same umbrella. When the PSC sought to determine who at Bayer is most knowledgeable about the data quality of the

---

[2] Plaintiff's claims against Bayer B.V. relate back to the filing of her initial complaint for purposes of the statute of limitations since Bayer B.V. received notice of the instant proceedings through its parent entities and since Bayer B.V. knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity. *See* Fed. R. Civ. P. 15(c)(1)(i) and (ii).

[3] The EINSTEIN clinical trial program consisted of three phase 3 clinical trials including: EINSTEIN–DVT, for the treatment of deep vein thrombosis (DVT) EINSTEIN–PE, for the treatment of pulmonary embolism (PE) EINSTEIN–Extension for extended risk reduction for DVT and PE pooled analysis of the EINSTEIN–DVT and –PE trials was conducted, including key pre-specified subgroups, such as fragile patients, those with cancer, and those with previous VTE.

EINSTEIN studies, the PSC was advised that it would need to question Dr. Lensing.

As the Court is aware, the bellwether discovery pool consists of plaintiffs that allege injury for two indications: (1) the reduction of risk of ischemic stroke for patients with nonvalvular atrial fibrillation; and (2) the treatment of deep vein thrombosis (DVT), pulmonary embolism (PE), and for the reduction of risk of recurrence of DVT and of PE.  The EINSTEIN clinical trial program was critical to the design of Xarelto and the approval of the DVT/PE indication. The custodial file and testimony of Dr. Lensing are critical to the PSC's discovery pertaining to one of the two injury types in the bellwether discovery pool. However, the Defendants have refused to produce Dr. Lensing for a deposition and have refused to produce his custodial file. According to the Defendants, Dr. Lensing is not employed by a party to this litigation despite the fact that Dr. Derix indicated he was the primary clinical lead for EINSTEIN and that she considered all of these entities to be operating under the same umbrella.

In any event, it is clear that Bayer B.V. possesses important discoverable information and was materially involved in the design and approval of Xarelto through Dr. Lensing and possibly others. Further, Defendants have indicated that the only way they will produce Dr. Lensing as a witness is to name Bayer B.V. as a party. Thus, because Bayer B.V. was involved in the design of Xarelto, it can be held liable to Plaintiffs as a manufacturer of Xarelto. *See Cook v. United Container Machinery Co.*, 712 So.2d 307 (La. App. 5th Cir. 1998) (observing that if a company helps design an allegedly dangerous product it may be deemed a manufacturer under the Louisiana Products Liability Act).

### III. ARGUMENT

In determining whether to grant leave to amend a pleading, it is appropriate for a court to consider judicial economy and the most expeditious way to dispose of merits of a litigation.

3

*Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594 (5th Cir. 1991). ALeave to amend should be freely granted when justice requires.@ *See Financial Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006). Rule 15(a) of the Federal Rules of Civil Procedure is in accord and requires that when leave of court is sought to file an amended complaint is should be Afreely given.@ Fed.R.Civ.P. 15(a). There is a strong presumption in favor of granting leave to amend a complaint. *Id*. AA district court must possess a Asubstantial reason@ to deny a request for leave to amend.@ *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004). Indeed, when ruling on a motion to amend a complaint, the motion to amend should only be denied in very limited circumstances as the Fifth Circuit explained in *Smith v. EMC Corp.*, *supra*. Therein the Fifth Circuit explained as follows:

> As outlined by the Supreme Court, this Circuit examines five considerations to determine whether to grant a party leave to amend a complaint: 1) undue delay, 2) bad faith or dilatory motive, 3) repeated failure to cure deficiencies by previous amendments, 4) undue prejudice to the opposing party, and 5) futility of the amendment. *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). Absent any of these factors, the leave sought should be Afreely given.@ *Foman*, 371 U.S. at 182, 83 S.Ct. 227.

*EMC Corp.*, 393 F.3d at 595. Applying these factors, leave to amend is appropriate in this case.

    **A.**    **The Proposed Amendment is not the Result of Undue Delay, Bad-Faith, Dilatory Motive, and/or Repeated Failures by Plaintiff to Cure Deficiencies in Prior Amendments**

By virtue of the discovery to date, Plaintiff came to learn that Bayer B.V. and Anthonie W. Lensing, M.D. were instrumental in the Einstein clinical trial program. As noted above, this program was pivotal to the ultimate design of Xarelto for treatment of patients with PE and DVT. For this reason, Bayer B.V. may be held liable to Plaintiff as a manufacturer under the Louisiana Products Liability Act. Plaintiff acted promptly in seeking to amend the complaint

upon learning of Bayer B.V.=s and Anthonie W. Lensing, M.D.'s involvement in the design of Xarelto. Accordingly, the proposed amendment is not the result of undue delay, bad-faith or dilatory motive, and/or Plaintiff's repeated failure to cure deficiencies by previous amendments. Under these circumstances, it should be clear that Plaintiff is not seeking the amendment to delay these proceedings or to harass the Defendants.[4]

---

[4] *Compare, Wimm v. Jack Eckerd Corp.*, 3 F.3d 137 (5th Cir. 1993) (where plaintiffs sought to amend the complaint nine months after action was commenced and after defendant had filed motion for summary judgment, plaintiffs' delay in asserting additional claims, even though they were aware of underlying facts supporting claims at outset of action, supported District Court's finding of bad faith and dilatory motive, and therefore denial of motion to file second amended complaint was proper; *Little v. Liquid Air Corp.*, 952 F.2d 841 (5th Cir. 1992), *aff'd en banc*, 37 F.3d 1069(5th Cir. 1994) (where plaintiffs sought to file amendment which would have radically altered the nature of the action well over a year after it was instituted, several months after discovery had effectively terminated, and after the defendant had moved for summary judgment, and further, plaintiffs offered no evidence that the delay was excusable or the result of a mere oversight, District Court's denial of motion was not an abuse of discretion).

### B.     Defendants will Not be Prejudiced by the Amendment

Nor will the proposed amendments result in any undue prejudice to the opposing parties. There are no motions to dismiss and/or any other dispositive motions pending that will be impacted by the proposed amendment. Additionally, although a trial date is anticipated within the next twelve months, Plaintiff should be in a strong position to serve Bayer B.V. long before this deadline. Thus, Bayer B.V. will have a full opportunity to file a responsive pleading long before the case proceeds to trial. *See Terra Nova Scis., LLC v. JOA Oil & Gas Houston, LLC*, 738 F. Supp. 2d 689, 701 (S.D. Tex. 2010) (proposed amendment involving the addition of a new party defendant does not result in prejudice where it has no impact on dispositive motions and party being added as defendant is provided with opportunity to file responsive pleadings). In addition, Bayer B.V. is undoubtedly on notice of these proceedings and will most likely be represented by the same counsel representing the other Defendants in these proceedings.

Accordingly, the proposed amendment will not result in any undue prejudice to the opposing parties.

### C.     The Proposed Amendment is not Futile

Plaintiff is unable to conceive of any grounds for concluding that the proposed amendment would be futile.

### IV.     CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant her Motion to Amend the Complaint.

Respectfully submitted,

Dated: June 2, 2016

By: **HUBER, SLACK, THOMAS & MARCELLE**
   *s/ Charles M. Thomas*
   **CHARLES M. THOMAS, BAR NO. 31989**
   1100 Poydras Street, Suite 1405
   New Orleans, LA 70163
   Charlie@huberslack.com
   ATTORNEY FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 2, 2016, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs and Defendants by operation of the court's electronic filing system and served on all other plaintiff counsel via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre-Trial Order No. 17.

                                           _s/ Charles M. Thomas_
                                           CHARLES M. THOMAS