UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592<br><br>SECTION: L |
| This Document Relates To:<br>All Cases | JUDGE FALLON<br><br>MAG. JUDGE NORTH |

### PSC'S RESPONSE TO DEFENDANT BAYER'S MOTION FOR PROTECTIVE ORDER PRESERVING THE CONFIDENTIALITY OF CERTAIN DISCOVERY MATERIALS

There are exactly two arguments in Bayer's brief to which the PSC can agree. First, PTO 12 was a carefully negotiated mutual agreement and as a matter of contract law, which applies to a stipulated order, the specific provisions of PTO 12 apply to this dispute. Second, PTO 12 ¶ 8 does confer upon Bayer the ability to mark as "protected" any correspondence, email, letters, faxes, memorandum, notes, presentations, meeting minutes, etc. that identifies a German citizen. For the German documents, Bayer was granted an umbrella protective order for the *production* of these documents. Beyond these two points, the parties diverge. In particular, the umbrella protection afforded to the production of German documents was limited only to the production of those documents—not all documents. As argued in the PSC's response to Janssen's brief, the issue here is not a production issue; the issue is whether Bayer has provided good cause to support the challenged documents now that these documents have been produced and used in depositions. On this score, Bayer has come up short.

As pointed out in Bayer's brief, the Defendants know how to draft an umbrella protection—Bayer did so in PTO 12, ¶ 8 with respect to the German documents. However, the balance of the provisions in PTO 12 make clear that as to non-German documents Bayer (as well

as Janssen) has the burden of showing that those challenged documents are trade secrets. In short, as to the non-German documents PTO 12 does not confer an umbrella or blanket protection on all of the other documents. There has to be a particularized showing for each document that proves it is truly entitled to trade secret protection under Rule 26(c)(1)(G), and Bayer has failed to carry its burden of proof. Therefore, its motion should be denied.

As to the challenged German documents, the PSC offered a solution to Bayer that would allow it to comply with the German Privacy Act. What was the solution? Simply redact the names (or other identifying information) from the documents. The PSC just didn't make this up; it was the precise solution that Judge Herndon provided in the *Pradaxa* litigation when dealing with this identical issue.

In *In re Pradaxa (Dabigatran Etexilate) Products Liability Litigation* (MDL 2385), Judge Herndon was tasked with reviewing 85 documents to determine whether each document was protected under the express terms of a protective order that was nearly identical to PTO 12. Like *Xarelto*, the *Pradaxa* litigation involved German defendants and a dangerous anticoagulant medication that caused internal bleeding injuries. Judge Herndon reviewed each of the 85 challenged documents and found that the documents contained neither trade secrets nor "personal data" defined under German law. *In re Pradaxa (Dabigatran Etexilate) Products Liability Litigation*, 2014 U.S. Dist. LEXIS 10718 at *11 (S.D. Ill. Jan. 29, 2014). Judge Herndon found redactions to be a very practical and feasible solution to handle any concerns surrounding German law. *Id*. at *12 ("[T]he Court feels that a confidentiality designation with respect to these [German] employees is unnecessary. Nonetheless, out of an abundance of caution and comity, the Court will accept the proposal suggested by [the German defendants] in footnote 8 of their briefing."). During the meet and confer process Bayer's counsel said they

would consider the PSC's proposal of redactions of the German documents, but now has rejected it out of hand in its brief. *See 5/17/16 Email from Coon to Denton and Davis*, Exhibit A (filed under seal) ("Do I understand correctly that . . . the challenge will be withdrawn in respect to any document [containing 'personal data'] if an additional copy is produced to plaintiffs with 'personal data' redacted and which is not designated as Protected? If this is accurate we will investigate whether this can be done in compliance with German law.").

But Bayer's strong focus on the German documents misses a major point of the PSC's position. PTO 12 does not give Bayer authority to designate essentially every non-German document as protected. In fact, PTO 12 expressly provides otherwise: "This Protective Order ***does not confer blanket protections on all documents***, disclosures, or responses to discovery and the protection it affords extends ***only to specific information*** . . . ." PTO 12, ¶ 5. Protection is only warranted where the documents contain legitimate trade secrets. *See* PTO 12, ¶¶ 6-7. Each designation must be done in ***good faith***. *See* PTO, ¶ 6, 7. Yet, Bayer has blatantly disregarded the express terms of PTO 12 and its good faith obligation by stamping nearly every non-German document as protected.

The burden to demonstrate that its documents are entitled to protection falls on Bayer. PTO 12 requires Bayer to make an individualized and particularized showing as to each challenged document that it is a "trade secret" defined by Rule 26(c)(1)(G) or that the document in fact contains personal data protected by German law that cannot be remedied by redactions. Complaining of potential negative media attention stemming from the information that the public is entitled to access does not amount to good cause, nor is it relevant to the Court's analysis. *See PSC's Resp. to Def. Janssen's Mot. for Protective Order Preserving the Confidentiality of Certain Disc. Materials* at 23-24. Bayer's improper designations violate the express terms of

PTO 12. Therefore, the PSC asks this Court to deny Bayer's motion for protective order on the 113 Bayer exhibits[1] at issue and, to the extent necessary, redact personal identifying information of the German documents.[2]

## THE CURRENT SET OF CHALLENGED DOCUMENTS

On April 6, 2016, the PSC sent a letter to Bayer and Janssen challenging 353 documents used as exhibits in the depositions of Michael Moye, Christopher Nessel, Sigmond Johnson, Wolfgang Mueck, Andrea Horvat-Broecker, Dagmar Kubitza, Andrea Derix, and Sanjay Jalota. *PSC Letter to Defs.*, Exhibit B (filed under seal). Janssen and Bayer responded on May 3, 2016. Bayer's response offered nothing but bare-bone conclusory statements that its documents contained "personal data" pursuant to German law. *Bayer Resp. Letter to PSC*, Exhibit C (filed under seal). What's more, Bayer failed entirely to articulate which document contained what type of personal data. *Id*. Bayer did remove the protected status on nine of its documents,[3] *id.*, but there still remain 113 Bayer exhibits in dispute for the Court's resolution.

## LEGAL STANDARDS

**I.   The PSC herein incorporates by reference its brief directed to Janssen.**

To save the Court time, the PSC herein incorporates by reference the *PSC's Response to Defendant Janssen's Motion for Protective Order Preserving the Confidentiality of Certain Discovery Materials*.

**II.   The PSC agrees that the provisions of PTO 12 govern the Court's analysis.**

Bayer asserts that that "[p]laintiffs agreed to the designation of documents . . . when they stipulated to the entry of PTO 12." *See Bayer's Mem. in Supp. of Mot. for a Protective Order*

---

[1] The 113 exhibits will be submitted to the Court manually.
[2] The PSC has already addressed many of Bayer's arguments in its response to Janssen's motion. The PSC will not repeat those arguments here for the sake of brevity, but incorporates its response to Janssen where appropriate.
[3] Bayer also "downgraded" certain documents from a "Highly Protected" to "Protected" status, which is of no moment.

4

*Preserving the Confidentiality of Certain Disc. Materials* at 11. The PSC agrees. The express terms of PTO will govern the parties' designations and challenge process, and therefore, only documents containing trade secrets or personal data are afforded protection.

## **ARGUMENT**

**I.    Bayer attempts to undo the language of PTO 12.**

Burried in a footnote in its brief, Bayer makes the argument that the language of PTO 12, ¶ 7 doesn't mean what it clearly says. *See Bayer's Mem. in Supp. of Mot. for a Protective Order Preserving the Confidentiality of Certain Disc. Materials* at 18, n. 9.  PTO 12, ¶ 7 provides that a party may designate as "Protected Information – Highly Protected" any document which, if potentially disclosed, could result in substantial business harm "***so long as the material is also protected under Fed. R. Civ. P. 26(c)(1)(G)***."

PTO 12, ¶ 7 expressly provides that none of the materials listed in this paragraph can be marked as "Highly Protected" unless the material is ***also*** protected under Rule 26(c)(1)(G):

> "A Supplying Party may also designate as 'PROTECTED INFORMATION – HIGHLY PROTECTED' any document or information which, if potentially disclosed to a competitor or the general public, could result in substantial business harm. Nonexclusive examples include materials that may reveal trade secrets, manufacturing processes, proprietary design, drug formulation, drug development, sequencing, chemical stability and characteristics, analytical methods used in manufacturing, quality control processes, CMC information exchanged with the FDA and not the subject of a patent, source and specifications for drug components and raw materials, manufacturing plans, unpublished patient applications, strategic intellectual property plans, notices of invention, including but not limited to confidential intellectual property and patentable data, information, products or processes, strategic plans, marketing plans, brand plans, documents setting forth marketing and sales tactics and strategies, sales data, and documents revealing pricing or other contractual data ***so long as the material is also protected under Fed. R. Civ. P. 26(c)(1)(G)***."

PTO 12, ¶ 7.

5

Yet Bayer argues that as a matter of syntax and a matter of construction this language is "surplusage." *See Bayer's Mem. in Supp. of Mot. for a Protective Order Preserving the Confidentiality of Certain Disc. Materials* at 18, n. 9. But what Bayer fails to point out (and apparently hoping that the PSC would skim over this footnote), is that the PSC negotiated this specific language into PTO12, ¶ 7 to prevent the precise abuse of wholesale designations that is now before the Court. In addition, pursuant to the agreement of all parties, the PSC added this additional language: "This Protective Order does not confer blanket protections on all documents, disclosures, or responses to discovery and the protection it affords extends only to specific information or as set forth herein." PTO 12, ¶ 5. In short, the PSC built in protections from wholesale designations anticipated by Bayer and Janssen.

Bayer is now trying to walk back these express provisions by contending they are meaningless. More incredibly, Janssen doesn't even address the language in its brief; it simply ignores it. While quoting from the Protective Order, Janssen conspicuously leaves out the language "so long as the material is ***also*** protected under Fed. R. Civ. P. 26(c)(1)(G). *See Bayer's Mem. in Supp. of Mot. for a Protective Order Preserving the Confidentiality of Certain Disc. Materials* at 3 (noting that "[t]he Order . . . creates a separate category for designation of 'PROTECTED INFORMATION – HIGHLY PROTECTED' that, if potentially disclosed to a competitor or the general public, could result in substantial business harm" but failing to address the fact that *the same sentence* in the Order includes the limiter "so long as the material is ***also*** protected under Fed. R. Civ. P. 26(c)(1)(G)."). Words and phrases have meaning, and a deal is a deal. Neither Bayer nor Janssen should be allowed to renege on the deal that was struck in the *stipulated* PTO 12.

**II. Bayer agreed to the pre-trial challenge process of PTO 12 and Bayer fails to meet its burden of demonstrating good cause for protecting each of the 113 exhibits at issue.**

Bayer makes clear that "[p]laintiffs are bound by PTO 12" when it agreed to the terms and entry of PTO 12. *See Bayer's Mem. in Supp. of Mot. for a Protective Order Preserving the Confidentiality of Certain Disc. Materials* at 11. The PSC is in agreement, but neither Bayer nor Janssen want to give the true meaning of PTO 12 any application to this dispute. Instead, Janssen wants the Court to defer the challenge process until the time of trial – when both Bayer and Janssen agreed to a pre-trial challenge process.

Bayer must also demonstrate that *each* of its documents contain trade secrets under Fed. R. Civ. P. 26(c)(1)(G) or personal data under German law, and it has failed to do so. Bayer not only fails to provide the Court with a document-by-document showing that good cause exists for protecting each document, but it fails to demonstrate to the Court any type of harm (specific or general) that would arise upon the release of Bayer's designations. Bayer simply extracts a few exhibits to inform the Court of different categories of information contained within certain documents, such as study data, meeting minutes, or marketing plans. *See Bayer's Mem. in Supp. of Mot. for a Protective Order Preserving the Confidentiality of Certain Disc. Materials* at 20 (noting that one document "is an internal slide set discussing selection of doses for VTE treatment, and contains various charts and assessments of unpublished data."), *id.* at 22 (noting that three documents contain meeting minutes), *id.* at 24 (noting that two documents are non-public documents), *id.* at 28 (noting that one document contains "an internal marketing strategy" and another document is "a proposal for an exploratory pharmacokinetic/pharmacodynamics evaluation study relating to Xarelto.").

Next, Bayer offers only boilerplate statements of harm that would arise if its designations were removed. *See id.* at 20 (stating that "[m]aking documents like this one available to Bayer's

7

competitors would cause Bayer serious competitive injury."), *id.* at 22 (stating that the documents are confidential and "if released, would unfairly benefit Bayer's competitors . . . ."), *id.* at 24 (stating that the disclosure of communications between Bayer and the FDA "would seriously undermine Bayer's legitimate commercial interests and its competitive position . . . ."), *id.* at 28 (stating that "[r]eleasing Bayer's information to the public – as plaintiffs propose – would place Bayer at a competitive disadvantage."). These conclusory statements fall significantly short of demonstrating a specific and serious injury that would arise if Bayer's designations were lifted.

While Bayer at least picked two persons with substantive knowledge about some aspects of Xarelto (unlike Janssen who picked someone with no substantive knowledge), the Declarations of Dr. Scott Berkowitz and Juergen Weber still fall way short of supporting Bayer's trade secret protection arguments. Both Declarations are full of lawyer-drafted generalized statements of competitive harm, but no particularized harm. Mr. Weber is a regulatory employee working in Germany, but in his deposition he admitted to little understanding about the FDA processes. Weber Dep. 37:3-37:10; 39:13-39:18; 87:6-87:15, May 19, 2016, Exhibit D (filed under seal). He also has little to no understanding of the United Sates market, and therefore the competitive harm that he was willing to attest to in his Declaration is limited. *See id*. On the other hand, Dr. Berkowitz is a senior scientist and medical doctor who has worked on Xarelto, but has no knowledge about the commercial workings of Bayer, yet he conjures up a conclusory statement about competitive harm in the marketplace.

Just like Janssen, Bayer cannot provide the Court with good cause and substantive proof for maintaining its current designations because the documents at issue do not contain trade secrets or personal data that cannot be redacted. *See PSC's Response to Defendant Janssen's*

*Motion for Protective Order Preserving the Confidentiality of Certain Discovery Materials*, Part III at 16-18. Therefore, the Court should find that Bayer has failed to carry its burden of proof with respect to the challenged documents.

### III. The Court should consider ordering a redaction of information to the extent it is subject to the German Federal Data Protection Act.

There is a workable solution to the barriers that the German Federal Data Protection Act may create: redactions. *See United States ex rel. Stewart v. La. Clinic*, 2002 U.S. Dist. LEXIS 24062 at *18-19 (E.D. La. Dec. 11, 2002) (permitting redaction of patient-identifying information to facilitate the discovery process); *In re Pradaxa*, 2014 U.S. Dist. LEXIS at *12 ("[T]he Court feels that a confidentiality designation with respect to these [German] employees is unnecessary. Nonetheless, out of abundance of caution and comity, the Court will accept the proposal [to provide redacted copies of the German Custodial documents] suggested by [the German Defendant] in footnote 8 in their briefing.").

Bayer pinpoints XARELTO_BPAG_02563261 as an example of a document that, if disclosed in its entirety, would violate the German privacy law. *See Bayer's Mem. in Supp. of Mot. for a Protective Order Preserving the Confidentiality of Certain Disc. Materials* at 8. Bayer states that the information in this email pertains to: (1) the names of the person who sent the email; (2) the individuals to whom it was addressed; (3) the individuals who were copied on the email; (4) their email address; (5) the fact that these persons have agreed to attend a meeting; and (6) the fact that two individuals have been assigned particular responsibilities in anticipation of the meeting.

By simply redacting the names and addresses of the individuals, all six of Bayer's concerns are cured. Not only will the public not have access to the individuals' names and addresses, but the public will have no idea who agreed to attend the meeting or which two

9

individuals were assigned to a particular responsibility. Another solution to data privacy concerns would be to secure the freely-given consent of those persons whose privacy is at issue. Presumably, Bayer can do so if it calls any German witnesses to testify at trial. In this regard, Bayer could be ordered to request the consent of such persons.

If the Court were to buy into Bayer's argument that no German document can be displayed in the public domain, that necessarily means that even during trial these documents and testimony of German witness cannot by published to the jury. Of course, German law makes no such demand. *See* Bundesdatenschutzgesetz [BDSG] [Civil Code], § 4c (1) (describing a litigation exception), translation at http://www.gesetze-im-internet.de/englisch_bdsg/federal_data_protection_act.pdf. Nor does Bayer even try to address this conundrum in its brief, but tellingly it suggests that the parties (and presumably the Court) can deal with the issue at the time of trial. *See Bayer's Mem. in Supp. of Mot. for a Protective Order Preserving the Confidentiality of Certain Disc. Materials* at 17. But PTO 12 provides that this issue should be decided now when a challenge is made—not at the time of trial. Also, punting the issue until trial leaves the PSC prejudiced in its pre-trial preparation as set forth in is response to Janssen's brief.[4] Bayer has made billions of dollars from Xarelto sold here in the United States and it should not be permitted to hide behind the German Privacy Act when litigating over the harm Xarelto has caused to tens of thousands of patients.

## CONCLUSION

For the foregoing reasons, the Court should evaluate each of 113 challenged Bayer documents on an individual basis to determine if Bayer has met its burden of demonstrating good cause for the continued protection pursuant to the terms of PTO 12. There are no trade secrets

---

[4] *See PSC's Resp. to Def. Janssen's Mot. for Protective Order Preserving the Confidentiality of Certain Disc. Materials*, Part IV.

entitled to protection in the U.S. documents and redactions can be made to the German documents. Bayer has not carried its burden of proof and its motion should be denied.

Dated:  June 6, 2016

Respectfully submitted,

/s/ Leonard A. Davis
_____
Leonard A. Davis, Esq. (Bar No. 14190)
**HERMAN, HERMAN & KATZ, LLC**
820 O'Keefe Avenue
New Orleans, LA  70113
PH:  (504) 581-4892
FAX:  (504) 561-6024
Email:  ldavis@hhklawfirm.com

Gerald E. Meunier (Bar No. 9471)
**GAINSBURGH BENJAMIN DAVID MEUNIER & WARSHAUER, LLC**
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA  70163-2800
PH:  (504) 522-2304
FAX: (504) 528-9973
Email:  gmeunier@gainsben.com


*Plaintiffs' Liaison Counsel*

## PLAINTIFFS' STEERING COMMITTEE

Andy D. Birchfield, Jr. (Co-Lead Counsel)
234 Commerce Street
Post Office Box 4160
Montgomery, Alabama 36103-4160
Phone: (334) 269-2343
Fax: (334) 954-7555
Email: Andy.Birchfield@BeasleyAllen.com

Brian H. Barr (Co-Lead Counsel)
316 Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7045
Fax: (850) 436-6044
Email: bbarr@levinlaw.com

Russell T. Abney
2100 RiverEdge Parkway,
Suite 720
Atlanta, Georgia 30328
Email: rabney@lawyerworks.com

Dr. Mark Alan Hoffman
1650 Market Street, Suite 3450
Philadelphia, PA 19103
Phone: (215) 574-2000
Fax: (215) 574-3080
Email: mhoffman@rossfellercasey.com

Michael Goetz
201 N. Franklin St., 7th Floor
Tampa, FL 33602
Phone: (813) 221-6581
Fax: (813) 222-4737
Email: MGoetz@ForThePeople.com

Neil D. Overholtz
17 E. Main Street , Suite 200
Pensacola, Florida 32501
Phone: (850) 916-7450
Fax: (850) 916-7449
Email: noverholtz@awkolaw.com

Bradley D. Honnold
11150 Overbrook Rd., Ste. 200
Leawood, KS 66211
Phone: (913) 266-2300
Fax: (913) 266-2366
Email: bhonnold@bflawfirm.com

Frederick Longer
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215-592-4663
Email: flonger@lfsblaw.com

Jeffrey S. Grand
77 Water Street
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
Email: jgrand@seegerweiss.com

Roger C. Denton
100 S. 4th Street
St. Louis, MO 63102
Phone: (314) 621-6115
Email: rdenton@uselaws.com

Dianne M. Nast
1101 Market Street, Suite 2801
Philadelphia, Pennsylvania 19107
Phone: (215) 923-9300
Email: dnast@nastlaw.com

Ellen Relkin
700 Broadway
New York, New York 10003
Phone: (212) 558-5500
Fax: (212) 344-5461
Email: Erelkin@weitzlux.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on June 6, 2016 a copy of the above and foregoing PSC's Response to Defendant Bayer's Motion for Protective Order Preserving the Confidentiality of Certain Discovery Materials has contemporaneously with or before filing been served on all parties or their attorneys in a manner authorized by FRCP 5(b)(2), Local Rule 5.1 of the Eastern District of Louisiana and via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre-Trial Order No. 17.

                          */s/ Leonard A. Davis*

                          **Leonard A. Davis**