# EXHIBIT E

MDL No. 2592

**This Document Relates to:**

**ALL CASES**

## DECLARATION OF DR. HENNING MOELLE.

FEDERAL REPUBLIC OF GERMANY
STATE OF HESSIA
FRANKFURT AM MAIN

1.   I am a German attorney-at-law (*Rechtsanwalt*) practicing law in Frankfurt am Main (Germany) with a focus on national and trans-border litigation since 1997. I have previously rendered two declarations in the Xarelto Products Liability Litigation dealing with the legal implications of German data protection laws with regard to discovery requests made by the plaintiffs (see my Declaration dated December 7, 2015 and my Declaration dated May 20, 2016). I would like to refer to these earlier declarations for further information about my professional education and experience.

2.   The facts stated in this Declaration are based upon my personal knowledge and my professional experience. If sworn as a witness, I would be competent to testify to the matters set forth herein.

3.   I have been advised by Bayer Pharma AG (hereafter referred to as "Bayer") that plaintiffs in the Xarelto Products Liability Litigation requested that Bayer produces the personnel files of several individuals who are employed by Bayer in Germany. Bayer has provided me with a copy of the court order of May 11, 2016 by which the court has ordered that Bayer shall produce a privacy log of personnel files of two of its German employees (Dr. Kubitza and Dr. Misselwitz). Bayer has provided me with copies of privilege logs of the personnel files of Dr Kubitza and of Dr Misselwitz. Also, Bayer has provided me with copies of the documents listed in the Annex to this Declaration advising me that these documents formed part of the personnel file of Mr. Theodore Spiro, an employee of Bayer's U.S. affiliate Bayer Healthcare LLC and that Bayer Healthcare LLC produced these documents in the Xarelto Products Liability Litigation under protection of a protective court order. Bayer has instructed me to assume that the personnel files of its German employees Dr. Kubitza and Dr. Misselwitz contain documents which are of a similar nature and content as those contained in the personnel file of Mr. Spiro – an assumption which is confirmed by the privilege logs which list, among other documents, performance reviews and bonus awards. Bayer has asked me to opine whether on the basis of that assumption Bayer could lawfully transfer pertinent documents from the personnel files of its German employees Dr. Kubitza and Dr. Misselwitz to the U.S.A. for production in the US litigation.

1

4.  Based on the description of the documents given in the privilege logs of the personnel records of Dr Kubitza and Dr Misselwitz, Bayer could not transfer these documents to the U.S. and could not produce these documents to the plaintiffs in the litigation under Sections 4(1), 4b, and 28(1) BDSG without violating German data protection laws, even subject to a protective order.

5.  The documents from the personnel files of Mr. Spiro I have reviewed consist of detailed salary data and performance reviews and self-evaluations. According to the privilege logs of the personnel files of Dr Kubitza and Dr Misselwitz, the personnel records of these two employees also contain salary data and performance reviews including bonus awards as well as other documents (e.g. employment contract and amendments) which typically form part of a personnel file kept by a German employer. Such documents are full of personal data within the sense of German and EU data protection laws and therefore fall under the protection afforded by the German Data Protection Act ("BDSG").

6.  As set out in more detail in my earlier Declaration of December 7, 2015, Bayer could only lawfully transfer any "personal data" to the U.S. for production to the plaintiffs if there were "no reason to assume" that the employees (nor other employees whose personal data is contained in the documents, e.g. the authors of the performance evaluations) have an overriding interest in not having their personal data transferred and produced in the US litigation. This "balancing test" under the BDSG is a test to be performed under German laws and in consideration of the scope and weight which German laws including the German constitution attribute to the (constitutional) "right of personal self-determination" of all individuals in general (irrespective of their nationality or place of residence) and to the privacy rights of employees of German companies in relation to their personnel records in particular.

7.  While personal data contained <u>in business records</u> may generally be transferred to the U.S.A. for use in litigation under the protection of a protective court order which strictly limits any use of the personal data to the pending litigation, Bayer cannot lawfully transfer and produce sensitive personal data from <u>personnel records</u> of its German employees (sensitive personal data like those contained in the documents relating to Mr Spiro and in documents of the nature listed in the privilege logs of Dr Kubitza and Dr Misselwitz), irrespective of a protective order.

8.  The German courts and legislature have placed strict restrictions on the use of personnel records. While the employer can lawfully process and use the personnel records for legitimate purposes of the employment relationship (including any use, to the extent necessary, in any employment litigation brought by or against the employee), it is clear that because of the nature, quantity and sensitivity of the personal data contained in the documents there is "reason to assume" that the German employees have an overriding interest that such documents are not used in any litigation (whether before a German or a foreign court) to which they are not even a party. In addition, there is reason to assume that a German employee has an overriding interest that data from his or her personnel records are not transferred to a jurisdiction which, from the perspective of the German and EU law makers, does not afford an appropriate level of data protection rights. Consequently, these documents from the Personnel Records of Bayer's German employees Dr Kubitza and Dr Misselwitz could not be lawfully transferred and produced to the plaintiffs in the US litigation under Sections 4b and 28(1) of the German Data Protection Act.

9.  I have noted that the court order of May 11, 2016 refers to the German Data Protection Act as a *"blocking statute"* by which *"Germany [has] attempted to narrow the relatively broad scope of American discovery"*. This is not a fair description of the nature and purpose of the German Data Protection Act (BDSG). By contrast to the provision under French criminal law which was at issue in the decision of the U.S. Supreme Court in *Societé Nationale Aerospatiale*, the BDSG is not a piece of legislation which specifically serves to limit or "block" the transfer of data to the U.S.A. for the purpose of pre-trial discovery proceedings. Rather, the German legislature has passed the BDSG in accordance with the EU Data Protection Directive to regulate the processing and use of personal data in general, protecting privacy rights guaranteed by the German Constitution to all German residents. The BDSG generally applies to the processing, transfer and use of personal data in all areas of life (e.g. private, business, government) for any purpose (government use, business and commercial use, litigation and other) and applies to all personal data of all individuals. Even the German police and other government authorities as well as German federal courts are bound by the BDSG.

10. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on 6 June 2016

Dr. Henning Moelle

3

ANNEX 1

|  | **Documents reviewed**<br>(documents of more than one page are designated by their first page only) |
|---|---|
| 1 | Xarelto_BHCP_SPIRO_PERSONNEL_001_00000001 |
| 2 | Xarelto_BHCP_SPIRO_PERSONNEL_001_00000013 |
| 3 | Xarelto_BHCP_SPIRO_PERSONNEL_001_00000020 |
| 4 | Xarelto_BHCP_SPIRO_PERSONNEL_001_00000023 |
| 5 | Xarelto_BHCP_SPIRO_PERSONNEL_001_00000025 |
| 6 | Xarelto_BHCP_SPIRO_PERSONNEL_001_00000027 |
| 7 | Xarelto_BHCP_SPIRO_PERSONNEL_001_00000030 |
| 8 | Xarelto_BHCP_SPIRO_PERSONNEL_001_00000032 |
| 9 | Xarelto_BHCP_SPIRO_PERSONNEL_001_00000039 |
| 10 | Xarelto_BHCP_SPIRO_PERSONNEL_001_00000048 |
| 11 | Xarelto_BHCP_SPIRO_PERSONNEL_001_00000050 |
| 12 | Xarelto_BHCP_SPIRO_PERSONNEL_001_00000051 |
| 13 | Xarelto_BHCP_SPIRO_PERSONNEL_001_00000052 |
| 14 | Xarelto_BHCP_SPIRO_PERSONNEL_001_00000053 |
| 15 | Xarelto_BHCP_SPIRO_PERSONNEL_001_00000056 |
| 16 | Xarelto_BHCP_SPIRO_PERSONNEL_001_00000065 |
| 17 | Xarelto_BHCP_SPIRO_PERSONNEL_001_00000075 |
| 18 | Xarelto_BHCP_SPIRO_PERSONNEL_001_00000082 |
| 19 | Xarelto_BHCP_SPIRO_PERSONNEL_001_00000087 |
| 20 | Xarelto_BHCP_SPIRO_PERSONNEL_001_00000093 |
| 21 | Xarelto_BHCP_SPIRO_PERSONNEL_001_00000098 |
| 22 | Xarelto_BHCP_SPIRO_PERSONNEL_001_00000104 |
| 23 | Xarelto_BHCP_SPIRO_PERSONNEL_001_00000109 |
| 24 | Xarelto_BHCP_SPIRO_PERSONNEL_001_00000115 |