THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO ALL ACTIONS | JUDGE ELDON E. FALLON |
| | MAG. JUDGE NORTH |

**BAYER PHARMA AG's SUPPLEMENTAL OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF PERSONNEL FILES OF GERMAN EMPLOYEES**

As directed by this Court, Bayer Pharma AG has submitted logs of the documents sought by plaintiffs from the personnel files of Drs. Dagmar Kubitza and Frank Misselwitz. To conform to the German Data Protection Act while providing the Court as much information as possible about the content of the personnel files, Bayer Pharma AG has provided the following to the Court:

1. The logs requested by this Court, as prepared by Bayer's in-house counsel (Exs. A & B);[1]

2. The declaration of Gudrun Lohkamp, the Head of Human Resources for Bayer's pharmaceutical and consumer health divisions (Ex. C). Appended to Ms. Lohkamp's declaration as exhibits are:

   a. Blank templates of most of the documents referenced in the logs (Exs. 1 through 6); and

   b. Filed under seal, the personnel files of Theodore Spiro, a U.S. Bayer employee not subject to the German Data Protection Act (Ex. 7). Ms. Lohkamp confirmed that "the documents contained in the personnel files of Drs. Misselwitz and Kubitza are similar in format and contain the same categories of information as the documents relating to Dr. Spiro . . . ." Lohkamp Decl. ¶ 7.

---

[1] All exhibits are appended to Bayer's notice of filing.

1

2701466-1

3. The Declarations of Gregor Thüsing [Ex. D], Henning Moelle [Ex. E], and Timothy Coon (Ex. F).

4. An English translation of the Data Protection Act (Ex. G).[2]

Bayer requests that the Court deny plaintiffs' motion to compel production of the personnel file documents. As shown below, the German Data Protection Act contains a specific provision extending heightened protection to employee personnel files. Bayer's human resources director confirms that personnel files are subject to very strict controls to conform to the Act. Bayer has consulted two experts in German data protection law – a jurist and professor who has provided expert testimony to German lawmakers concerning data protection law, and a lawyer who practices in the field of data protection law – and they confirm that, applying the required balancing test, Bayer Pharma AG cannot produce these personnel files without violating the German Data Protection Act.

That Bayer Pharma AG already has produced 37.1 million pages of documents – many of which contain personal data (and have been designated as confidential under PTO 12(8)) – demonstrates that the Act is not a "blocking statute." To the contrary, the function of the Act is to protect a constitutional right of German citizens and it applies to all processing of personal data – not just to discovery in U.S. litigation.

Here, Germany has a strong interest in protecting the constitutional privacy rights of its citizens in their employment personnel files, an interest that is enforced with vigor by a network of government officials responsible for investigating alleged violations of the Data Protection Act. Under principles of comity, Germany's powerful interest is not outweighed by plaintiffs'

---

[2] This translation, cited by the Court in its Order of May 16 [DE 3237] at 8, is the most recent English translation of the Act by competent data protection authorities. There have been subsequent minor modifications to the Act, but they do not affect the issues here. *See* December 7, 2015 Declaration of Henning Moelle at 2, n.1 (Exhibit E to Defendants' Memorandum in Opposition to Plaintiffs' Proposed Protocol Concerning Personnel Files [DE 1922-5]).

2

2701466-1

assertion that they need these highly-protected personnel files to test Drs. Kubitza and Misselwitz for bias, particularly when Bayer already has produced millions of pages of documents concerning these witnesses. For all these reasons, plaintiffs' motion to compel should be denied.

## ARGUMENT

### I. Production of the Personnel Files Would Violate the German Data Protection Act.

Plaintiffs have argued that, if Bayer can produce custodial documents containing personal data from ordinary business records, then Bayer Pharma AG should be able to produce documents from the personnel files of Drs. Kubitza and Misselwitz. Plaintiffs ignore that employee personnel files are afforded heightened protection under the German Data Protection Act. Section 32 of the Act is the "central regulation" governing use of employee data and it provides that employers may process such data for employment-related purposes only "where *necessary* for hiring decisions or, after hiring, for carrying out or terminating the employment contract." Thüsing Decl. [Ex. D] ¶ 13 (quoting § 32(1) BDSG) (emphasis added). The Act was amended in 2009, strengthening the protection afforded employees. Previously, employers could collect and process "useful" data; now, it must be "necessary." *Id.* ¶ 14. The employee's privacy interest in his or her personnel files is so great that one respected commentator has stated that the legal standard for transfer of personnel files should "be reduced to the indispensable." *Id.* ¶ 23 (internal quotes and citations omitted).

Consequently, ***personnel files are afforded greater protection*** under the German Data Protection Act than documents created or reviewed by employees in the course of doing their jobs that contain some personal data but are principally about the task at hand (referred to as "custodial files" in this litigation). *Id.* ¶ 13. *See* Moelle Decl. (Ex. E) ¶ 7. *See also* Declaration

3

2701466-1

of Tim Coon (Ex. F) ¶ 2 (discussing distinction between custodial and personnel files). An employer/data controller is required to place a very heavy thumb on the scales in favor of employee privacy when weighing the employer's interest in processing personnel files against the employee's interest in maintaining the privacy of those files. *See* Thüsing Decl. (Ex. D) ¶ 31; *see also* Moelle Decl. (Ex. E) ¶ 8.

In the context of a discovery request, that means processing of personnel files may be appropriate when the employee is a party to litigation and the litigation centers on the employment relationship, so that the connection between the party and the lawsuit is concrete. *See* Thüsing Decl. (Ex. D) ¶¶ 30, 31.[3] But when, as here, the employee is a witness, the balancing of interests weighs heavily in favor of protecting the employee's interest in the privacy of his personnel files, as Professor Thüsing explains:

> Here it is different. <u>The interest in disclosure has to override two interests: The interest of the collector to respect the aims and goals of national data protection law and the interest of the employee who is not a party to the litigation</u> - and therefore this interest has less weight than an interest of Bayer Pharma AG itself, where the employee is party to the litigation. There may be cases, where disclosure is justified by a legitimate interest of the litigation party even in the light of German data protection law, but it always has to respect overriding interests of the data subject, i.e. the employee. The lesser the nexus between the actual use of the data and the original purpose of filing, and the lesser the employee has to do with this actual use, the more sensitive the data is, the weightier have to be considered his interests.

*Id.* ¶ 31 (original emphasis).

Indeed, in a 2009 paper addressed to pretrial discovery for cross-border litigation, the Article 29 Working Party on Personal Data Protection emphasized that the privacy interests of a

---

[3] Even that may not be sufficient. In a recent medical malpractice case, the German Federal Court of Justice ruled that a patient could not compel a hospital to reveal the home address of one of its doctors (*id.* ¶ 24); that home address was the physician's protected personal data. As Professor Thüsing observes: "The private address of an employee is certainly far less sensitive than the personnel files, and the interest in suing somebody weightier than any interest in litigation, where the employee is not a party." *Id.*

4

2701466-1

non-party employee must be given heavy consideration in weighing his or her interests against an employer's interest in producing documents in response to discovery:

> "Clearly the interests of justice would be served by not unnecessarily limiting the ability of an organization to act to promote or defend a legal right. The aim of the discovery process is the preservation and production of information that is potentially relevant to the litigation. The aim is to provide each party with access to such relevant information as is necessary to support its claim or defense, with the goal of providing for fairness in the proceedings and reaching a just outcome. <u>Against these aims have to be weighed the rights and freedoms of the data subject who has no direct involvement in the litigation process and whose involvement is by virtue of the fact that his personal data is held by one of the litigating parties and is deemed relevant to the issues in hand, e.g. employees and customers</u>."

Thüsing Decl. (Ex. D) ¶ 21 (quoting the Working Group report, Thüsing's emphasis). The Working Group further explained that a foreign discovery order or statute may not override the constitutionally protected privacy interests of a German citizen:

> "<u>An obligation imposed by a foreign legal statute or regulation may not qualify as a legal obligation by virtue of which data processing in the EU would be made legitimate</u>.... Compliance with the requirements of the litigation process may be found to be necessary for the purposes of a legitimate interest pursued by the controller or by the third party to whom the data are disclosed under Article 7(f). This basis would only be acceptable where such legitimate interests are not "overridden by the interests for fundamental rights and freedoms of the data subject."

*Id.* (Thüsing's emphasis).

Here, plaintiffs seek production of self-reviews, reviews, and compensation data – documents that receive heightened privacy protection under German law. Bayer has strict controls to preserve the privacy of this particularly personal data. Lohkamp Decl. (Ex. C) ¶¶ 9-10. Professor Thüsing examined the personnel files of Dr. Spiro (which are not subject to the Data Protection Act and have been produced), and concluded that Bayer's interest in producing similar documents in the personnel files of Drs. Kubitza and Misselwitz does not outweigh the employees' privacy interests with respect to their personnel files. Thüsing Decl. (Ex. D) ¶¶ 3, 26, 35.

5

2701466-1

Dr. Moelle arrived at the same conclusion after comparing the Spiro file to logs of the Kubitza and Misselwitz personnel files:

> 4. . . . Bayer could not transfer these documents to the U.S. and could not produce these documents to the plaintiffs in the litigation under Sections 4(1), 4b and 28(1) of the BDSG without violating German data protection laws, even subject to a protective order.
>
> 5. The documents from the personnel files of Mr. Spiro I have reviewed consist of detailed salary data and performance reviews and self-evaluations. According to the privilege logs of the personnel files of Dr. Kubitza and Dr. Misselwitz, the personnel records of these two employees also contain salary data and performance reviews including bonus awards as well as other documents . . . Such documents are full of personal data . . . .
>
> 7. While personal data contained in <u>business records</u> may generally be transferred to the U.S.A for use in litigation under the protection of a protective order . . . Bayer cannot lawfully transfer and produce sensitive personal data from <u>personnel records</u> of its German employees . . . irrespective of a protective order.

Moelle Decl. (Ex. E) ¶¶ 4, 5, 7 (original emphasis).

Bayer has been able to produce custodial files by relying on the protections of PTO 12(8) to balance its interests and the privacy interests of individuals whose personal data appears in the documents. But the heightened interests of Drs. Kubitza and Misselwitz in the privacy of their personnel files so markedly outweigh the interest of Bayer Pharma AG in producing those files, that Bayer cannot produce the personnel files in reliance on the balancing test (even if files were treated as confidential) without violating the German Data Protection Act.

**II.     Comity Requires This Court To Deny Plaintiffs' Motion To Compel.**

Plaintiffs would have this Court disregard the special treatment of personnel files under the German Data Protection Act and order production of these materials, based on plaintiffs' assertion that the personnel files might be relevant for purposes of impeachment. *See* Plaintiffs' Reply [DE 3173] at 4 (stating that "it is critical for the PSC to have all relevant documents available to challenge the *bona fides* of these witnesses to root out all their biases and

6

motivations); Plaintiffs' Motion to Compel [DE 2951] at 3 ("[p]roduction of select materials from the witnesses' personnel files, such as Xarelto-related performance reviews and self-reviews, and compensation, incentive and bonus information, is critical to evaluating each witness's credibility and potential bias").

But bare relevance is not the standard for ordering production of these personnel files for impeachment or any other purpose. Rather, when foreign law forbids the disclosure of information, the Court must sensitively balance the competing interests, taking into account international comity. *See Société Nationale Industrielle Aérospatiale v. United States District Court for the Southern District of Iowa*, 482 U.S. 522, 546 (1987). *See also* May 16, 20016 Order [DE 3237] at 6-8. Under that standard, plaintiffs' motion to compel must be denied.

### A. Germany's interest in protecting the privacy of the witnesses' personnel files outweighs plaintiffs' interest in compelling production of those files.

Section 442 of the Restatement (Third) of the Law of Foreign Relations requires the Court to consider the following, in weighing the competing interests:

1. The importance to the litigation of the documents;
2. The degree of specificity of the request;
3. The availability of alternate means of securing the information;
4. The extent to which noncompliance would undermine U.S. interests; and
5. The extent to which compliance would undermine German interests.

Plaintiffs' interest is entitled to little weight under this test. *First*, the disputed personnel files are not important when considered in the context of this litigation. Bayer Pharma AG already has produced more than 37 million pages of documents. Coon Decl. (Ex. F) ¶ 2. The custodial files of Drs. Kubitza and Misselwitz already have been produced. Dr. Kubitza's file was more than 1,580,000 pages; Dr. Misselwitz's file was more than 1,270,000 pages and Bayer

Pharma AG anticipates updating his custodial file in the near future. *Id.* ¶ 4. These figures more than double when one includes in the tally files from other custodians that contain documents authored by, from, to, copied to or that mention these witnesses. *Id.* ¶ 4.

In contrast, plaintiffs' motion concerns only 111 pages from the personnel file of Dr. Kubitza and 400 pages from the personnel file of Dr. Misselwitz. *See* Exs. A & B. As Dr. Spiro's file demonstrates, it is extremely unlikely that the contents of a witnesses' personnel files would be of significant evidentiary value. *See* Lohkamp Decl. (Ex. C) ¶ 7 & exhibit 7. Given the scale of Bayer Pharma AG's document production generally and the number of documents already produced that pertain specifically to these witnesses, it is evident that the small number of documents in the disputed personal files are of very little importance to the litigation.

*Second,* while plaintiffs have narrowed the scope of their discovery request, the performance reviews, self-reviews, and compensation information that they seek are precisely the documents that receive heightened protection under the German Data Protection Act. *Third,* while plaintiffs do not know the exact content of the documents in the personnel files of Drs. Kubitza and Misselwitz, plaintiffs already have millions of documents concerning these witnesses, who plaintiffs know to be paid employees of Bayer Pharma AG who have invested great professional energy in Xarelto. Plaintiffs already have ample information to "evaluat[e] each witness's credibility and potential bias." Motion to Compel [DE 2951] at 3. *Fourth,* given the extremely limited evidentiary value of the personnel files, U.S. interests in the fair adjudication of this litigation will not be impaired if plaintiffs' motion to compel is denied.

*Fifth,* and in contrast, production of the files would significantly impair Germany's interest in protecting the constitutional right of its citizens to the privacy of their personnel files, a right that is codified in the German Data Protection Act. The purpose of the Act is to "protect

the individual against his/her right to privacy being impaired through the handling of his/her personal data." Thüsing Decl. (Ex. C) ¶ 10 (quoting § 1 BDSG). That right is protected under both the German Constitution (*id.* ¶ 5), and the EU Charter of Fundamental Rights, which provides:

> **Article 8 Protection of personal data**
> 1.   Everyone has the right to the protection of personal data concerning him or her.
> 2.   Such data must be processed fairly for specified purposes and on the basis of the consent of the person concerned or some other legitimate basis laid down by law. Everyone has the right of access to data which has been collected concerning him or her, and the right to have it rectified.
> 3.   Compliance with these rules shall be subject to control by an independent authority.

*See id.* ¶ 6 (quoting European Charter); *see also id.* ¶¶ 5-6 (discussing history of German privacy law).

To protect this fundamental interest in the privacy of personal data, the Act applies "in all areas of life (e.g. private, business, government) for any purpose (litigation and other) and applies to all personal data of all individuals, irrespective of their nationality or place of residence." Moelle Decl. (Ex. E) ¶ 8. *Accord* Thüsing Decl. (Ex. D) ¶ 13 ("the Directive regulates not only data processing by private citizens – in particular data processing in a commercial setting – but also data processing by state agents, for instance in the field of law enforcement or social security").[4]

Characterizing the Data Protection Act as a "blocking" statute designed to "narrow the relatively broad scope of American discovery" (May 16 Order [DE 3237] at 6) therefore

---

[4] Rather than being a blocking statute, the German Data Protection Act is more closely analogous to HIPAA, 45 C.F.R. § 146, U.S. regulatory law designed to protect certain recognized privacy interests. Germany and the EU recognize broader privacy interests than are protected under U.S. law. *See* Thüsing Decl. (Ex. B) ¶¶ 11-12.

understates the significance of the Act. Rather, "the German legislature has passed the BDSG in accordance with the EU Data Protection Directive to regulate the processing and use of personal data *in general,* protecting privacy rights guaranteed by the German Constitution to all German residents." Moelle Decl. (Ex. C) ¶ 9 (original emphasis).

The German Data Protection Act therefore is fundamentally different from the French penal statute at issue in *Société Nationale Industrielle Aérospatiale v. United States District Court for the Southern District of Iowa*, 482 U.S. 522 (1987), which had the stated objective of telling foreign courts how to conduct discovery:

> Subject to treaties or international agreements and applicable laws and regulations, it is prohibited for any party to request, seek or disclose, in writing, orally or otherwise, economic, commercial, industrial, financial or technical documents or information leading to the constitution of evidence with a view to foreign judicial or administrative proceedings or in connection therewith.

*Id.* at 526 n.6 (quoting French Penal Code Law No. 80-538, art. 1A).

Section 4c(1)(4) of the German Data Protection Act, in contrast, explicitly recognizes that "the establishment, exercise or defense of legal claims" provides a legal basis, after conducting the balancing test required by the statute, to produce custodial files, data bases and other documents reflecting the research, development, testing, government regulation, marketing and sale of Xarelto. That the statute provides heightened protection to a very small subset of documents contained in personnel files that are of peripheral relevance to the litigation does not make the Act a blocking statute in either purpose or practical effect.

As demonstrated by Bayer Pharma AG's production of tens of millions of pages of documents, the Data Protection Act generally does not pose an obstacle to production of employee custodial files, provided that the personal data in those custodial files is protected. Production of the disputed personnel files, however, could not be justified under the Act's

10

balancing test and would override privacy interests that are fundamental to German law. This strong interest far outweighs plaintiffs' asserted interests in production of the files.

### B. Germany actively enforces the Data Protection Act.

The strength of Germany's interest in the privacy of its citizens is further reflected in Germany's vigorous enforcement of the Data Protection Act. As Professor Thüsing explains in his declaration, Germany has an *elected* national commissioner for data privacy, *see* Ex. D ¶ 38, and every German state has its own commissioner with a staff whose job is investigating purported violations of the Data Protection Act and enforcing its provisions, *id.* ¶ 37. A disclosure of personal data that violates the Act would "pu[t] Bayer Pharma AG in the risk of sanctions as e.g. administrative fines up to € 300,000 for every single breach of the BDSG (sec. 43, 44 BDSG) and claims for damages (sec. 7 BDSG)." *Id.* ¶ 36.

In addition, "single advisors or board members who are concerned with the unlawful processing of data can be criminally convicted." *Id.* The trend has been to more rigorous enforcement of the Act. *Id.* ¶ 39. Professor Thüsing provides examples in his declaration (*see id.*), which demonstrate that seven-figure fines have been imposed under the Act and that corporate officers have been threatened with prison.

Moreover, because data privacy is a fundamental right in Germany, a company's violation of the Act has adverse consequences beyond the penalties that may be imposed by the law. Violation of privacy interests damages relationships with employees. *See* Lohkamp Decl. (Ex. A) ¶ 10. The criminal investigation that follows a purported violation of the Act can be fatal to the professional reputation of corporate officials. For instance, the chairman of Deutsch Bahn resigned after criminal investigations were started into alleged data protection violations by that company. Thüsing Decl. (Ex. D) ¶ 40.

Given these precedents, if Bayer Pharma AG were to produce the personnel files in violation of the Data Protection Act, the company and its employees would face a genuine risk of civil or criminal investigation by German authorities, with the possibility of substantial fines, jail time, and damage to the business interests of Bayer Pharma AG and careers of its employees.

* * *

In sum, the balancing of interests required under Section 442 of the Restatement compels the conclusion that plaintiffs' motion to compel should be denied. Germany's Data Protection Act codifies privacy interests that are recognized as fundamental and constitutional rights and that are protected as a general matter, not just when a discovery demand is made in U.S. litigation. Government institutions rigorously enforce these privacy rights, against employers and in other contexts.

An order from a U.S. court compelling a German company to produce personnel files in violation of the Data Protection Act would undermine Germany's interest in protecting the privacy rights of its citizens. Plaintiffs have demonstrated no strong countervailing interest; the evidentiary value of the personnel files sought by plaintiffs is *de minimus* at best.

Where, as here, "the outcome of litigation does not rise or fall on the present discovery order," U.S. courts are reluctant to override foreign law. Therefore, as a matter of comity, the Court should deny plaintiffs' motion to compel.

## CONCLUSION

For the reasons set forth above, the Court should deny plaintiffs' motion to compel production of the personnel files of Dr. Dagmar Kubitza and Dr. Frank Misselwitz.

## CERTIFICATION

As required by Federal Rule of Civil Procedure 26(c)(1), counsel for Defendants certify that they have conferred with opposing counsel in a good-faith effort to resolve these matters without Court action.

Dated: June 6, 2016

Respectfully submitted,

**KAYE SCHOLER LLP**

By: /s/ *Steven Glickstein*
Steven Glickstein
William Hoffman
Andrew Solow
KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8485
Facsimile: (212) 836-6485
sglickstein@kayescholer.com

*Co-Lead Defense Counsel*

**CHAFFE MCCALL L.L.P.**

By: /s/ *John F. Olinde*
John F. Olinde
CHAFFE McCALL L.L.P.
1100 Poydras Street
Suite 2300
New Orleans, LA 70163
Telephone: (504) 585-7241
Facsimile: (504) 544-6084
olinde@chaffe.com

*Defendants' Co-Liaison Counsel*

2701466-1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 6, 2016, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system.

/s/    *John F. Olinde*