UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: XARELTO (RIVAROXABAN) | * | MDL 2592 |
| PRODUCTS LIABILITY LITIGATION | * | |
| | * | SECTION L |
| THIS DOCUMENT RELATES TO | * | |
| ALL CASES | * | JUDGE ELDON E. FALLON |
| | * | |
| | * | MAG. JUDGE NORTH |

* * * * * * * * * * * * * * * * * * * * * * *

## JANSSEN DEFENDANTS' REPLY IN SUPPORT OF MOTION TO ENFORCE PRETRIAL ORDER NO. 12 AND FOR ENTRY OF A PROTECTIVE ORDER

### I.   INTRODUCTION

This Multi-District Litigation was created for the coordinated pretrial preparation of a group of personal injury actions.  It was not created as a forum for dissemination of Company documents to regulatory authorities, physicians and the general public.  Neither was it created to provide plaintiff lawyers a say in the way health agencies regulate the safety of FDA-approved medicines.

The discovery here, material to which plaintiffs and their lawyers and the competitor pharmaceutical companies would not otherwise have access, was produced at great speed and at very significant expense to the Defendants so that the plaintiffs and their lawyers could have the information they claimed they needed to prepare their cases for trial.  The PSC does not dispute that it has access to documents and information in order to pursue their claims and prepare these cases for trial, including questioning witnesses during depositions about emails and other company documents. (Doc. 3382-2)(Pl. Opp. at p. 1)("This is not a production issue; these documents have already been produced and used in deposition.").  Nowhere in its Opposition does the PSC articulate that the "protected" status of these discovery materials under Pre-Trial Order No. 12 ("PTO 12") has in any way impeded their ability to pursue this litigation.  Given

this, there can be no legitimate purpose to the plaintiffs' Opposition to the Defendants' motions in this consolidated products liability litigation, and the motion should be granted.

The suggestion that some unidentified third party physicians – who the PSC seeks to question about emails and other internal documents that they did not read or rely on in making their prescribing decisions - have been reluctant to sign Exhibit A to PTO 12 is not a reason to permit wholesale dissemination of discovery materials outside of this litigation. A remedy to address this narrow issue was suggested by counsel for Janssen on May 24, 2016 when a question was raised by the PSC, and on May 27, Janssen sent to the PSC a "mini"- streamlined confidentiality agreement specifically for any physician who did not want to sign Exhibit A. The PSC declined to discuss the proposal and took the extreme position that they would not agree to anything. Plaintiffs cannot now use this refusal to investigate a reasonable compromise as a reason to widely disseminate discovery materials.

Other than this weak attempt to justify dissemination of these materials outside of this litigation, the PSC has failed to come forward with any legitimate reason at all why documents should be made available for wide and unfettered dissemination outside of this litigation. As Defendants and this Court have explained, there are genuine interests and concerns that Janssen will suffer competitive business harm and that "the release of the documents at this time could complicate the jury selection process and would be of no material assistance to plaintiffs since they already have full access to the documents." *Grundberg v. Upjohn*, 137 F.R.D. 372, 392 (D. Utah 1991).

Rather than address the legitimate interests of Janssen and this Court, the plaintiffs argue that this Court should apply an excruciatingly narrow view of "good cause" under Federal Rule of Civil Procedure ("FRCP") 26(c)(1)(G), requiring that Janssen, in effect, prove that every word in a document contains a "trade secret." But FRCP 26(c)(1)(G) is not limited to "trade secrets" and Janssen's request for a protective order is not subject to the exacting strict scrutiny analysis

that applies to First Amendment restrictions on speech.  *See Grundberg*, 137 F.R.D. 372.  FRCP 26(c)(1)(G) covers broader categories of document and information than "trade secrets" and includes "other confidential research, development and commercial information."  The rule also vests this Court with broad authority to issue orders limiting discovery and use of discovery materials to prevent competitive business harm to the producing party and to protect a party from harassment, confusion, undue burden, expense or from having to try the case in the media.

The court's analysis under FRCP 26(c) should weigh the competing interests of the PSC to garner media attention and intervene in the regulatory proceedings of a separate branch of government against the Defendants' interest to ensure that it does not suffer business, competitive or other harm and the court's interest in protecting the jury pool.   It is the interest of the defendants, and the court, to follow the findings established in the Supreme Court's decision in *Seattle Times v. Rhinehart*, 467 U.S. 20, 34 (1985) that litigants have no First Amendment right to publicly disseminate discovery materials outside of litigation and that sternly cautioned against unfettered, premature dissemination of materials given the substantial risk of abuse when the information is disclosed beyond the protections of the court.

Plaintiffs' characterization of Janssen's designation of pre-trial discovery material under stipulated PTO 12 as a "continued scheme of hiding critical information from regulators, physicians, patients and the public" is patently false and is a gross distortion and mischaracterization of the facts.  (Doc. 3382-2)(Pl. Opp. at p. 1).  Janssen has communicated with regulatory authorities, physicians and others through the appropriate channels and the PSC's attempts to portray Janssen as "concealing" information rings hollow - plaintiffs and regulatory authorities have access to information, and indeed Janssen agreed to provide additional information to regulatory authorities in March of this year.

Deposition transcripts were not addressed specifically in the motion for the simple reason that in their De-Designation letter which forms the basis for the motion, the PSC did not identify

deposition transcripts but only documents. And with good reason - at the hearing on the Motion to De-Designate, this court expressed concern about tainting the jury pool and commented that disseminating deposition transcripts would impose burden and expense on the parties because the parties would conduct a full examination and cross-examination out of concern that the deposition would be widely disseminated. Janssen has appropriately asserted protections over deposition transcripts challenged by the PSC, one of which was the subject of its Opposition to Plaintiffs' Motion to De-Designate and as to which the court has already ruled against de-designating. (Doc. 2642)("sound judicial policy and fundamental fairness dictate that the PSC not be permitted to selectively pick and choose the documents and deposition testimony for disclosure."). For these and the reasons set forth in the moving papers, Janssen's Motion should be granted.

## II.   ARGUMENT

**A.   Janssen Has Undertaken a Good Faith Review of Millions Documents Under PTO 12 to Only Designate Those That are "Protected"**

During the course of discovery in this litigation, Janssen has collected many millions of pages of documents that contain vast amounts of information pertaining to its business and commercial operations, strategic marketing plans, research and development activities, manufacturing and other processes that are used to develop and evaluate products and the internal workings of the company. Without question, the volume of emails and other internal communications that have been collected and produced were exchanged between hundreds of employees within Janssen who have spent substantial time and effort over many years to ensure that Janssen's products are safe and effective and that its competitors do not gain an unfair advantage in the market place. PTO 12 was not intended to undo the efforts of Janssen to operate at a competitive level in the marketplace simply because a lawsuit was filed, and PTO 12 is not a proxy to supplant the process and procedures that are in place so that information is

accurately communicated to regulators, physicians and patients as permitted by law. While PTO 12 "does not confer blanket protections on all documents, disclosures or responses to discovery," (Pl. Opp. at p. 8), the order should be enforced in a manner that promotes the just, efficient and effective conduct of the litigation given the competing interests of the parties and the need for the court to ensure a fair trial and an impartial jury. *See, e.g. Blanchard Co., Inc. v. Barrick Gold Corp.*, No. 02-3721, 2004 U.S. Dist. LEXIS 5719 (E.D. La. Apr. 2, 2004). The PSC's Opposition focuses primarily on its ability to challenge the "protected" status of documents without regard to the overall purposes of the order, including facilitating the free flow of information. Plaintiffs' suggestion that Janssen has over-designated documents as "protected" is not a fair characterization based on the documents that have been challenged. Janssen has made a good faith effort to not assert blanket protections, while at the same time ensuring that its competitive business information is not compromised simply because they have been sued and it has been able to produce large quantities of documents at a rapid pace in compliance with this Court's orders. The PSC assertion that documents may only be protected if Janssen makes a highly-detailed particularized showing for each and every document at the pre-trial phase when there is no First Amendment right to disseminate the information is not the law. *See In re Denture Cream Prods. Liab. Litig.*, 2013 WL 214672 (S.D. Fla. Jan 18, 2013 (upholding confidentiality of "categories" of documents). Courts enforcing protective orders recognize that there are broader considerations that may warrant protecting parties from having to litigate the case in the media and ensuring that there is a fair trial. As the Court observed in *In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 413 (E.D.N.Y. 2007),

> The harm faced by [defendant] is amplified by the fact that the protected documents which respondents seek to disseminate are segments of a large body of information, whose selective and out-of-context disclosure may lead to confusion in the patient community and undeserved reputational harm – "what appears damning may, in context after difficult proof, be shown to be neutral or even favorable to the defendant

*Id.*; *See also* Jack B. Weinstein, *Secrecy in Civil Trials: Some Tentative View*, 9 J.L. & Pol'y, 53, 58 (2000)("[T]he cost and time to explain a single document taken out of context by a plaintiff's lawyer creates an incentive not to prepare memoranda."). Similarly, the Second Circuit also observed that "[d]iscovery involves the use of compulsory process to facilitate orderly preparation for trial, not to educate or titillate the public" with litigation-driven interests that may mislead and confuse the issues. *Joy v. North*, 692 F.2d 880, 893 (2d. Cir. 1982).

**B.     The Interests of Janssen in This Litigation Are Substantially Similar to Those Articulated by the Supreme Court in *Seattle Times***

The PSC's Opposition does not contend that the First Amendment gives them a right to disseminate discovery materials, nor could they. That notion was expressly rejected by the Supreme Court in *Seattle Times*. Protective orders, such as PTO 12, are not traditional restraints on speech and their safeguards are important to protect the potential misuse of discovery information prior to trial on the merits. In *Seattle Times*, the Court upheld the terms of a protective order that was intended to curtail efforts of litigants to prematurely disseminate discovery materials before both sides had a full and fair opportunity to litigate the issues in a judicial forum where there are processes and rules governing the presentation of evidence. The guidepost from which this Court's analysis begins is the holding in *Seattle Times*. Although the PSC disagrees with the Supreme Court's holding, it is abundantly clear that the PSC has made no showing that it has a legitimate interest in widely disseminating information other than in an attempt to garner media attention.

C.  **The PSC Does Not Argue the Proper Standard Under FRCP 26(c)**

  1.  **FRCP 26(c) Is Not Limited to Trade Secrets and Vests This Court With Authority to Protect a Party from Business Harm, Annoyance, Oppression, Undue Burden and Expense**

Contrary to the PSC's assertion, the burden on Janssen's motion is not extraordinarily "high." Apparently, Plaintiffs arrive at this conclusion based on an overly narrow interpretation of FRCP 26(c) and the misconception that Janssen's requested relief would be subject to standards similar to that applying to First Amendment scrutiny. But the FRCP 26(c) employs a "good cause" standard, and states in pertinent part:

> The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (A) forbidding the disclosure or discovery. . .
>
> (C) prescribing a discovery method other than the one selected by the party seeking discovery. . .
>
> (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way. . .

As explained in Janssen's moving papers, contrary to the PSC's assertions, "Rule 26(c) is not limited to 'trade secrets' but includes broader confidential commercial information." (Doc. 3291-1)(Def. Mot. at p. 10)(*citing Nutratch, Inc. v. Syntech, Int';, Inc.*, 242 F.R.D. 552, 555, n. 4 (N.D. Cal. 2007). It is not true, as the PSC asserts, "documents are only afforded protection if they contain legitimate trade secrets. . . " (Doc. 3382-2)(Pl. Opp. at p. 9). No such requirement is found in FRCP 26(c) or in PTO 12. The types of documents covered by Rule 26(c)(1)(G) and PTO 12 include "other confidential research, development, [and] commercial information" such as marketing and business plans, documents reflecting strategic decision-making, research and development activities, design plans and other information if known to a competitor could potentially cause economic and other harm. (Doc. 3296-1)(Def. Mot. at p. 10) (case citations omitted). The PSC's Opposition is devoid of any discussion of the multitude of decisions cited

in Janssen's moving papers demonstrating that these categories of documents and information, including those challenged by the PSC, are protected under FRCP 26(c).

Nor is it the role of the PSC to define the parameters of competitive harm for Janssen. The PSC does not argue that the information contained in these documents or the deposition testimony is generally known to others or is currently in the public domain. Nor could the PSC make such an assertion. Manufacturers of pharmaceutical medications operate in a highly competitive business environment where emails and documents containing information about marketing, processes, procedures and product assessment and evaluation are central to the ability of a manufacturer to remain competitive. (Doc. 3296-2)(Guisti Decl. at¶¶ 4-21). What may be considered marginal or non-competitive information in some industries would not necessarily be true for the pharmaceutical industry. Janssen has made an appropriate good cause showing – at the pre-trial discovery phase – that the documents and information challenged by the PSC fall within the categories of documents and information that are "confidential" and would result in competitive harm to Janssen if disseminated to its competitors.

"Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Pena v. Casteel*, No. 15-0420, 2016 U.S. Dist. LEXIS 24125 (W.D. La. Feb. 26, 2016). Even if this Court were to conclude that a portion of one or more documents would not cause competitive harm, there is still "good cause" to continue to limit the use of documents in order to protect a party from annoyance, burden and undue expense, which has been interpreted to include an order that "protects the rights of the parties to be free from a negative media campaign that poses the potential result of trying the suit in the public before a jury of the parties' peers has the opportunity to weigh the evidence and to arrive at an appropriate and open judicial remedy." *Pamlab, L.L.C. v. Brookstone Pharm., L.L.C.*, No. 09-7434, 2010 U.S. Dist. LEXIS 120303, at * 5 (E.D. La. Oct. 22, 2010). The courts generally strive to prevent abuses to discovery that would result in the dissemination of

information on a piecemeal basis to the public and through media in a manner designed to try the case in the media.  *Grunberg*, 137 F.R.D. 372.

The striking coincidence between media inquiries, the PSC's briefs and news articles in certain media outlets is highly suggestive of an effort to garner media attention in this litigation. Although the PSC now claims that "motives" are not part of this Court's analysis, what is clear is that the law requires that the PSC have a legitimate interest in the public dissemination of the information other than media attention.  *In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 413 (E.D.N.Y. 2007).  Litigating the Xarelto cases in the media based on internal emails and draft documents serves no purpose but to communicate partial information based on the PSC's litigation strategy to cross-examine a witness about cherry-picked documents.  *See., e.g., Lamitie v. Emerson Elec. Co.*, 142 A.D.2d 293, 297 (N.Y. App. Div. 1988) (citing *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 111-113 (1980) (acknowledging that there are reasons why draft documents should not be disseminated to the public, including because they may contain "incomplete or inaccurate information").  The end result is substantial prejudice to the defendants whose ability to obtain a fair trial is increasingly put at risk.

> 2. **Janssen Has Designated the Documents In Question in Good Faith Under PTO 12 and No Document-by-Document Individualized Showing Should Be Required**

An individualized, word-by-word showing for each document in question is not a requirement under FRCP 26(c) to show "good cause."  Indeed, courts have issued protective orders limiting use of documents and information to the litigation at hand for many legitimate purposes without the need for the producing party to explain why each and every word of a document falls within the definition of "confidential information" set forth in FRPC 26(c)(G).  *In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 413 (E.D.N.Y. 2007); *Grundberg v. Upjohn*, 137 F.R.D. 372, 392 (D. Utah 1991).  Although some courts have required a detailed showing in certain circumstances, Defendants submit that the Declaration of Angela Guisti provides the

relevant information sufficient to establish "good cause." *See In re Denture Cream*, 2013 WL 214672 (upholding confidentiality of "categories" of documents). PTO 12 provides examples of the types of documents that may fall within the protections of the order and FRCP 26(c), which are described more fully in the Guisti Declaration and fall into the following "protected" categories of information that is subject to protection under FRCP 26(c).[1]

- **Business and Marketing Plans and Training Materials** - *Kimberly-Clark Corp. v. Tyco Healthcare Retail Grp., Inc.*, No. 05-C-0985, 2006 U.S. Dist. LEXIS 30689, 2006 WL 6652868, at *1-2 (E.D. Wis. Apr. 6, 2006) (approving protective order that designated "currently implemented or not yet implemented marketing plans" as "Highly Confidential Information"); *PepsiCo, Inc. v. Redmond*, No. 94-6838, 1995 U.S. Dist. LEXIS 19437, at *39-40 (N.D. Ill. Jan. 26, 1995) (finding marketing materials were trade secrets), aff'd 54 F.3d 1262, 1271 (7th Cir. 1995).

- **Research and Development** - *Duncan v. Stuetzle*, 76 F.3d 1480, 1488, n.11 (9th Cir. 1996); *Guardian Life Ins. Co. v. Service Corp., Int'l*, Civ. A. No. 87-1280T, 1989 U.S. Dist. LEXIS 402, * 10-13 (E.D. Pa. Jan. 17, 1989); *Star Sci., Inc. v. Carter*, 204 F.R.D. 410, 416 (S.D. Ind. 2001) (finding that "information relating to how [a party] process[es] their product, its research and development" is protected); *Containment Techs. Grp., Inc. v. Am. Soc'y of Health Sys. Pharmacists*, No. 1:07-cv-997-DFH-TAB, 2008 WL 4545310, at *1-2 (S.D. Ind. Oct. 10, 2008) (finding protected documents because party spent significant time and money pertaining to research and development).

- **Internal Processes Related to the Manufacture and Design of Products and Regulatory Submissions** - *Star Sci, Inc.*, 204 F.R.D. at 416 (finding that "information relating to how [a party] process[es] their product, its research and development" is protected); *Containment*

---

[1] Plaintiffs also raise additional documents in their Opposition. Those pre-trial discovery materials also should not be publicly disseminated. See Exhs. E, F (confidential communications with regulatory authorities regarding internal processes); Exhs. G, I, K and L (discussion of quality control ); Ex. H and J (product development, study design and related considerations).

00356513                                        10

*Techs Grp., Inc.*, 2008 WL 4545310, at *1-2(finding protected documents because party spent significant time and money pertaining to research and development); *See* 21 C.F.R. § 20.61 (submissions to the FDA are confidential and exempt from public disclosure if they include "valuable data or information which is used in one's business and is of a type customarily held in strict confidence or regarded as privileged and not disclosed to any member of the public").

The personal attack on Dr. Giusti is misguided and the PSC's request to re-depose Dr. Guisti regarding the "protected" status of these documents should be rejected out of hand. The purpose of Dr. Giusti's deposition was to discuss corporate **structure,** and identify who reported to whom and who worked in what areas of the company, notwithstanding the stacks of organizational charts produced by Janssen. The deposition excerpts cited in the PSC's brief prove nothing, as most of the testimony refers to Dr. Guisti identifying specific individuals in a subset of departments within Janssen who may have information about topics that were raised at the deposition.

The PSC has not argued that any of the documents in question are in the public domain or are publicly available, and they have failed to assert any legitimate interest in widely disseminating this confidential information. Dissemination to garner media attention is not a legitimate interest. Accordingly, the PSC should not be permitted to widely disseminate these cherry-picked documents and the deposition testimony relating to them. This Court's oversight of the exchange of pretrial discovery information is very important to ensure that the interests of all parties are protected.

### III.   CONCLUSION

For the foregoing reasons, Janssen's Motion to Enforce PTO 12 and for Protective Order should be granted.

Respectfully submitted,

DRINKER BIDDLE & REATH LLP

By: /s/ *Susan M. Sharko*
    Susan M. Sharko
    DRINKER BIDDLE & REATH LLP
    600 Campus Drive
    Florham Park, NJ 07932-1047
    Telephone: (973) 549-7000
    Facsimile: (973) 360-9831
    susan.sharko@dbr.com

IRWIN FRITCHIE URQUHART & MOORE LLC

By: /s/ *James B. Irwin*
    James B. Irwin
    Kim E. Moore
    IRWIN FRITCHIE URQUHART
    & MOORE LLC
    400 Poydras Street
    Suite 2700
    New Orleans, LA 70130
    Telephone: (504) 310-2100
    Facsimile: (504) 310-2120
    jirwin@irwinllc.com

*Attorneys for Defendants Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC, and Janssen Ortho LLC*

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that on June 8, 2016, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to Liaison Counsel for Plaintiffs and Defendants by operation of the court's electronic filing system and served on all other plaintiff counsel via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre-Trial Order No. 17.

                                                      */s/ James B. Irwin*
                                                      **James B. Irwin**