THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO ALL ACTIONS | JUDGE ELDON E. FALLON |
| | MAG. JUDGE NORTH |

**REPLY IN SUPPORT OF BAYER'S MOTION FOR A
PROTECTIVE ORDER PRESERVING THE CONFIDENTIALITY
OF CERTAIN DISCOVERY MATERIALS**

Contrary to plaintiffs' assertions, patient safety and scientific integrity are Bayer's top priority – Bayer has consistently and openly communicated with regulatory authorities, physicians and others through appropriate channels.  No relevant data have been withheld from regulators, and Bayer vigorously objects to plaintiffs' attempts to insert themselves into the process by which health agencies regulate the safety of FDA-approved medicines.

Moreover, nowhere in their opposition to Bayer's motion for a protective order do plaintiffs point to a single document that they claim has been improperly designated under Rule 26(c)(1)(G) or PTO 12.  Instead, plaintiffs assert that Bayer has not carried its burden of proof because (a) Bayer grouped documents and explained how release of documents in each group would cause Bayer competitive injury, rather than repeating the same arguments and evidence for each document; and (b) the declarant Bayer executives did not know what they were talking about with respect to some of the documents.  Pl. Resp. [DE 3393] at 7-9.  Plaintiffs have no legal or factual support for either argument.  As demonstrated in Bayer's opening brief and below, Bayer has made the evidentiary showing necessary to establish that Bayer will suffer

significant competitive injury if its confidential documents are dedesignated – plaintiffs have no evidence to rebut that showing.  *See* Part I.

Similarly, plaintiffs do not dispute that the German documents designated by Bayer contain personal data that is confidential under the German Data Protection Act and stipulated PTO 12(8).  Plaintiffs instead propose that Bayer be ordered to redact its documents, so that plaintiffs can share them with the public.  Pl. Resp. at 9-10.  But reprocessing the data to create redacted public copies would itself violate the German Data Protection Act.  There is no authority for imposing such a burden on a defendant.  *See* Part II.

Plaintiffs also ask the Court to interpret PTO 12 to nullify paragraph 7, which addresses documents designated as "highly protected."  Pl. Resp. at 5-6.  This issue is not presented on the pending motions for a protective order.  *See* Part III.  The Court should decline plaintiffs' request for an advisory ruling.

Plaintiffs' attempt to try this case in the media does not justify dedesignating Bayer's confidential documents.  *See In re Yasmin and YAZ (Drospirenone) Marketing, Sales Practices and Prods. Liab. Litig.*, (MDL 2100), 2011 WL 5507057, *1–2 (Nov. 10, 2011) (rejecting plaintiffs' bid to dedesignate protected documents so plaintiffs could present them to FDA Advisory Committee).  Bayer is entitled to a fair trial before an unbiased jury.  *See Pamlab, L.L.C. v. Brookston Pharma., L.L.C.*, 2010 WL 4363870, *4 (E.D. La. Oct. 22, 2010) (entering protective order to "protect[] the rights of the parties to be free from a negative media campaign that poses the potential result of trying the suit in the public before a jury of the parties' peers has the opportunity to weigh the evidence . . .").  The Court therefore should grant Bayer's motion for a protective order.

2

2703715-1

# ARGUMENT

I. **Bayer Has Carried Its Burden of Establishing that Its Documents Should Be Protected under PTO 12 and Rule 26(c)(1)(G).**

Although plaintiffs have not discussed or disputed the "Protected" or "Highly Protected" designation of a single document, they nonetheless contend that Bayer has not established good cause for protecting the documents at issue. Pl. Resp. at 7. That contention is false.

A. **Bayer Has Shown that Its Documents Contain Trade Secrets or Other Confidential Commercial Information under Rule 26(c)(1)(G).**

The party seeking a protective order must "show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998). That showing can be made through "affidavits or other evidence" demonstrating the need for protection. *Id.*

Bayer has met that standard. Bayer organized documents into groups based on the reasons that the documents should remain protected. Bayer then submitted three declarations that explained the basis for protecting each document by category. Data protection expert Henning Moelle reviewed the 71 documents that included personal data, within the meaning of the German Data Protection Act, and explained why they had been designated as protected. *See* Declaration of Henning Moelle (Ex. D to Bayer's Motion).

Bayer executives Scott Berkowitz and Juergen Weber reviewed documents that had been designated as confidential because their publication would cause Bayer competitive injury. Their declarations broke the documents into groups and for each group of documents explained how Bayer would suffer substantial economic harm to its competitive position if that information were disclosed to its competitors. The Berkowitz and Weber declarations also specified the steps

Bayer took to keep the documents confidential.  *See* Declarations of Scott Berkowitz and Juergen Weber (Exs. H and I to Bayer's Motion).  Their evidence amply established that the information, "if disclosed, would cause substantial economic harm to the competitive position of the entity from whom the information was obtained."  *Riverkeeper v. Taylor Energy Co.*, 309 F.R.D. 381, 388 (E.D. La. 2015).

### B. Plaintiffs Have No Legal Or Factual Basis for Asserting that Bayer Failed To Carry Its Burden of Proof.

Plaintiffs do not dispute that the documents contain personal data or information that would cause Bayer competitive injury, if disclosed.  Rather, plaintiffs contend generally that Bayer did not carry its burden of proof for two reasons that do not withstand examination.

#### 1. Bayer was not required to address each document individually.

Plaintiffs first assert that Bayer failed to carry its burden because Bayer grouped like documents together and did not present its arguments on a "document-by-document" basis, instead relying on "boilerplate statements of harm."  Pl. Resp. at 7.  Nothing in PTO 12 or case law requires Bayer to offer a separate argument about why each document was designated as confidential.

Paragraph 13 of PTO 12 states that the party contesting the protected designation of documents has the burden of providing written notice that lists the challenged documents and gives "a brief explanation of the basis for contesting" their protected designation.  If the parties cannot reach an agreement, the supplying party "has the burden of making an application to the Court for an order directing that the contested document(s) or information is entitled to protection under applicable law."  *Id.*  PTO 12(13) does not require that the party seeking a protective order offer separate and repetitive arguments on a document-by-document basis.

Nor does the case law under Rule 26 require any formulaic argument discussing

4

2703715-1

documents one by one.  The party seeking a protective order must give specific reasons why harm will result if a protective order is not granted, which Bayer has done with respect to each of the documents requiring protection.  *See Beckman Indus. Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (party seeking protection must give "specific examples or articulated reasoning").

In other cases where plaintiffs have contested the confidential designations of many documents, the parties and the courts have addressed those documents in categories as Bayer did here, not one-by-one.  *See, e.g., In re Yasmin*, 2011 WL 5507057 (addressing categories of documents including nonpublic corporate product research, marketing related materials, and documents revealing intellectual property); *In re Denture Cream Prods. Liab. Litig.*, 2013 WL 214672 (S.D. Fla. Jan. 18, 2013) (upholding confidentiality of documents falling into a number of "categories," including planned or conducted studies, safety assessments, lab notebooks and handwritten notes, and internal policies and procedures).

None of the decisions that plaintiffs cite holds that a movant must make a separate argument for each and every document.  It is true that the courts in *Riverkeeper* and *Pradaxa* reviewed each of the documents at issue, and this Court has requested the documents here so that it may do the same.  But the reason the confidential designations were not upheld in *Riverkeeper* or *Pradaxa* was that the defendants failed to meet their burden of demonstrating that each of the challenged documents needed protection, not because specific (and duplicative) arguments were required as to each individual document.  *Riverkeeper,* 309 F.R.D. 381; *In re Pradaxa (Dabigatren Etexilate) Prods. Liab. Litig.*, 2014 WL 321656 (S.D. Ill. Jan. 29, 2014).

    2. **The Berkowitz and Weber declarations are not uninformed boilerplate, as plaintiffs allege.**

Plaintiffs next make two separate attacks on Bayer's declarations, both of which are meritless.  *First*, plaintiffs argue at page 8 of their brief that, although Bayer's declarants have

5

2703715-1

"substantive knowledge of Xarelto . . . the Declarations of Dr. Scott Berkowitz and Juergen Weber still fall way short of supporting Bayer's trade secret protection arguments."

As a preliminary matter, plaintiffs err in suggesting that the scope of Rule 26(c)(1)(G) is limited to trade secrets. *See, e.g.,* Pl. Resp. at 2, 3, 7, 8. Rule 26(c)(1)(G) also protects "other confidential research, development, or commercial information." Plaintiffs also argue in error that the definition of trade secrets should be based on the Louisiana Trade Secrets Act, and that marketing information, among other things, is not a "trade secret." Pl. Resp. to Janssen [DE 3382-2] at 10. However, the fact that this Court sits in Louisiana does not mean that Louisiana trade secret law applies. *See In re Yasmin and YAZ (Drospirenone) Marketing, Sales Practices and Prods. Liab. Litig.*, 2011 WL 1375011, *5 (S.D. Ill. Apr. 12, 2011) (location of MDL court does not determine applicable law). Further, the Louisiana Trade Secrets Act "was never intended to apply to discovery in civil actions." *Stork-Werkspoor Diesel V.V. v. Koek*, 534 So. 2d 983, 985 (La. Ct. App. 1988). *See also* Janssen Reply at 6-9 (discussing plaintiffs' misstatement of Rule 26(c)(1)(G) standard).

Plaintiffs' attacks on the knowledge of Bayer's executive declarants is unfounded. Dr. Berkowitz is the Vice President and Group Head of Clinical Development who has been the lead physician on Xarelto since 2006. *See* Berkowitz Decl. ¶ 1 (Ex. H to Bayer's Motion). Plaintiffs cite no evidence to support their assertion that he "has no knowledge about the commercial workings of Bayer" or the market in which Xarelto competes, Pl. Resp. at 8, and it defies logic to suggest that an executive and department head who has been working on a particular medicine for more than a decade, and within the broader field of anticoagulation and thrombosis for more than 20 years, knows nothing about the competitive nature of the anticoagulant market.

Mr. Weber is the Head of Global Regulator Affairs for Cardiovascular at Bayer Pharma

6

AG and has worked on Xarelto since 2010.  *See* Declaration of Juergen Weber ¶ 1 (Ex. I to Bayer's Motion).  Plaintiffs contend that "in his depositions he admitted to little understanding about the FDA processes" or the U.S. market.  Pl. Resp. at 8.  This grossly mischaracterizes his testimony.  In general terms,[1] plaintiffs asked Mr. Weber whether certain documents had been submitted to FDA, and he responded that he did not know because Janssen is responsible for making FDA submissions.  This does not support plaintiffs' claim that Bayer's Head of Global Regulatory Affairs does not understand U.S. pharmaceutical regulation.

*Second*, plaintiffs try to dismiss the declarations as "boilerplate statements of harm." Pl. Resp. at 7.  Plaintiffs quote, out of context, the broadest statements that they can find in the declarations and ignore that each paragraph of the declarations explains how disclosure of a specific category of documents would harm Bayer's competitive position.  For example, Dr. Berkowitz explained that if proprietary research data were disclosed to competitors, they could use that data in their own drug applications at no cost, making Bayer an "unwilling R&D arm of its competitors" in the highly-competitive anti-coagulants market.  Berkowitz Decl. ¶¶ 7–13.  Similarly, Mr. Weber explained that disclosing reports provided to regulatory authorities to competitors would "inform their own research and development, as well as their marketing efforts," and allow them to avoid the costs of doing their own research and "develop counter-strategies to downplay or offset the market effect" of Bayer's studies.  Weber Decl. ¶¶ 7–9, 12–13, 15.

Plaintiffs also assert that Bayer has "designate[d] essentially every non-German document as protected."  Pl. Resp. at 3.  This is not true.  Bayer has appropriately designated a substantial number of documents as protected – approximately 66 percent – because Xarelto competes with other blood-thinning medicines in a highly competitive market and many of its

---

[1] This deposition was taken recently and is still under review for confidentiality designation.

documents contain "trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 26(c)(1)(G). As the original developer of this medicine, Bayer's production is replete with confidential scientific research and development documents. Because pharmaceutical companies aggressively pursue "competitive intelligence" in this tight market, maintaining the confidentiality of such documents is paramount to Bayer's commercial interest, and Bayer's competitive position. Berkowitz Decl. ¶ 9. The fact that plaintiffs have sued Bayer does not provide a basis for depriving Bayer of the confidentiality of highly sensitive business information.

Bayer has provided specific evidence of competitive harm that plaintiffs have not rebutted. Plaintiffs' generalized and unsupported attacks on Bayer's declarations and declarants do not provide grounds for allowing plaintiffs to publish Bayer's confidential business information. *See Am. Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 740–41 (Fed. Cir. 1987) (assertions of harm were not conclusory where unrebutted affidavit explained that party would "sustain irreparable economic harm if the court permits information relating to [its] research and development, manufacturing methods and costs, [and] pricing policies, to be divulged to competitors" in "highly competitive" medical implant industry); *United States v. United Fruit Co.*, 410 F.2d 553, 556–57 & n.11 (5th Cir. 1969) (affirming enforcement of protective order where affidavit explained that "if competitors had information as to promotional plans contemplated by [party], they could copy the best features of those plans in advance or offset them by running promotions of their own in the same areas"); *see also In re YAZ*, (MDL 2100), 2011 WL 5507057, *4–5 (Nov. 10, 2011) (maintaining confidentiality of confidential trade secrets and other confidential commercial information based on explanations of harm similar to those in this case).

2703715-1

## II. Bayer Pharma AG Should Not Be Ordered To Redact Documents Protected under the Data Protection Act and PTO 12(8) so Plaintiffs Can Publish The Documents.

Plaintiffs do not dispute that the documents designated by Bayer under PTO 12(8) contain personal data protected under the German Data Protection Act. Nor do plaintiffs dispute that they stipulated to PTO 12(8) so that Bayer Pharma AG could produce these documents without violating German law. Plaintiffs instead propose a "workable solution" to a nonexistent problem. Pl. Resp. at 9. They ask the Court to order Bayer to redact these documents to remove names and other personal data so the public may have access to the documents without offending German data privacy concerns. *Id.* at 9-10. Plaintiffs state that Bayer agreed to consider the redaction proposal and then "rejected it out of hand." Pl. Resp. at 2-3. But Bayer's response, which plaintiffs quote, stated that Bayer would "investigate whether this can be done in compliance with German law." As explained below, Dr. Moelle advised Bayer that redaction was not an option under German data protection law – a conclusion that plaintiffs do not attempt to rebut. Bayer's rejection of their proposal therefore was not "out of hand."

Plaintiffs' proposal should be rejected for three reasons. *First*, as Bayer explained in its Motion for a Protective Order and the supporting declaration of its data protection expert, redaction would violate the German Data Protection Act. Redaction would constitute a "processing" of data within the meaning of the Act, and every processing of data must be justified based on its particular facts. Moelle Decl. ¶ 37. While processing data for discovery can be permissible as long as personal data is protected by treating the documents as confidential, processing data to redact documents in order to make them public is not permissible because the data subjects' interest in controlling their data outweighs any competing interest. *See id.*

*Second*, the public does not have a right to discovery materials. As the Supreme Court

9

explained in *Seattle Times v. Rinehart,* "restraints placed on discovered information are not a restriction on a traditionally public source of information." 467 U.S. 20, 21 (1984). *See also In re YAZ,* 2011 WL 5507057, *1–2 (rejecting argument for public right of access to discovery materials). There is no basis for imposing on Bayer the burden of redacting discovery materials so that plaintiffs can publish them.

*Third,* the *Pradaxa* order cited by plaintiffs does not provide a basis for imposing a redaction duty on Bayer. *See* 2014 WL 321656. Defendants in *Pradaxa* did not assert German law as a basis to protect their documents from dedesignation and, accordingly, defendants did not submit any declaration regarding the restrictions of German law. Defendants apparently agreed to plaintiffs' redaction proposal without analysis. Here, in contrast, Bayer has obtained the opinion of an expert on German data protection law who has explained why plaintiffs' redaction proposal is not permissible under German data protection law. Plaintiffs here have not rebutted that showing.[2]

Plaintiffs posit that "another solution to data privacy concerns would be to secure the freely-given consent of the persons whose privacy is at issue." Pl. Resp. at 10. Even if plaintiffs had a right to publicize these documents – which they do not – this "solution" creates problems, rather than solves them. Even if Bayer could secure consent from all of the many people whose personal data appears in these documents, those individuals would retain the right under German law to withdraw their consent. *See* Moelle Decl. ¶ 25.

Finally, plaintiffs make a backhand challenge to Bayer's designation of documents under

---

[2] Plaintiffs' citation of XARELTO-BPAG_02563261 confirms that their objective is publicizing discovery materials. Bayer cited this document to demonstrate that the document would be useless in a deposition if redacted to eliminate "personal data." Bayer Motion at 13. Plaintiffs do not address use of the document in discovery and state only that, if the document were redacted, the public would not have access to protected information. Pl. Resp. at 9. Their response ignores that the public does not have a right to discovery materials.

PTO 12(8), arguing that "[i]f the Court were to buy into Bayer's argument that no German document can be displayed in the public domain, that necessarily means that even during trial these documents and testimony of German witness cannot be published to the jury." Pl. Resp. at 10. That, of course, is not true. The German Data Protection Act requires balancing of the interests of Bayer Pharma AG (in defending the litigation) and the data subjects (in data privacy) based on *particular uses* of the data. Use of data at trial requires a separate balancing from use of data in discovery.

These are issues that the parties will address with the Court in due course, when they know what exhibits and deposition excerpts they will designate for trial. The issue now is plaintiffs' attempt to publicize documents. Given that the object of German data protection law is protecting the right of individuals to control the use of their personal data, the rights of those individuals unquestionably outweigh any purported interest in plaintiffs' attempt to try the case in the media. Henning Decl. ¶¶ 32-36.

**III.    Plaintiffs Seeks an Advisory Opinion on an Issue Not Presented by Bayer's Motion.**

Inexplicably, plaintiffs opened their brief with an argument not presented on Bayer's Motion for a Protective Order. They contend that Bayer is "trying to walk back" from stipulated provisions of PTO 12 because – even though PTO 12 distinguished between "protected" and "highly protected" documents – the same standard applies to both groups of documents. Pl. Resp. at 6.

This issue is not properly before the Court because ***Bayer based its argument on Rule 26(c)(1)(G) – the standard that plaintiffs contend applies***. *See* Bayer's Motion at 18. Bayer concluded that all of the challenged documents were protected under Rule 26 and therefore did not argue for application of any other standard to documents that Bayer had

11

2703715-1

designated as "highly protected." *See id.* at 18 n.9.  Therefore, there is no reason for this Court to address plaintiffs' argument.

For the record, Bayer disagrees with plaintiffs' attempt to write paragraph 7 out of the protective order.  When the parties negotiated PTO 12, they stipulated to a distinction between "protected" and "highly protected" documents.  *Compare* PTO 12(6) *with* PTO 12(7).  The scope of PTO 12(6) protection is identical to Rule 26(c)(1)(G).  PTO 12(7) then lists examples of particular types of documents that may be "highly protected."  The last item in the list is "documents revealing pricing or other contractual data so long as the material is also protected under Fed. R. Civ. P. 26(c)(1)(G)."  Plaintiffs' theory is that the proviso that modifies "documents revealing pricing or other contractual data" applies to the entire paragraph, despite being included in only a single clause of a long list.

If plaintiffs were right, then there would be no reason to have a paragraph 7 addressed to "highly protected" documents, because the standard that applies to paragraph 7 would be no different than the standard for paragraph 6 – which is Rule 26(c)(1)(G).[3]  Plaintiffs' interpretation violates the principal that "[a] contract should be interpreted so as to avoid neutralizing or ignoring a provision or treating it as surplusage."  *Hawthorne Land Co. v. Equilon Pipeline Co., LLC*, 309 F.3d 888, 893 (5th Cir. 2002).

Plaintiffs' remaining arguments are off point.  Plaintiffs assert that they bargained for the proviso to avoid wholesale designations of documents as confidential, Pl. Resp. at 6 (citing PTO 12(5)), but this does not address the standard that applies to a document that has been designated.  Plaintiffs also claim that "a deal is a deal" (*id.*) but the scope of the deal must be decided based on the actual language of the order and principles of construction.

---

[3] That is why plaintiffs assert that Bayer's redesignation of some documents from "highly protected" to "protected" is "of no moment."  Pl. Resp. at 4 n.2.  The redesignation would be "of no moment" only if paragraph 7 were a nullity.

**CONCLUSION**

For all of the reasons set forth above, the Court should grant Bayer's motion for a protective order.

Dated: June 8, 2016                                  Respectfully submitted,

                                                               KAYE SCHOLER LLP

                                                               By: /s/ *Steven Glickstein*
                                                               Steven Glickstein
                                                               William Hoffman
                                                               Andrew Solow
                                                               KAYE SCHOLER LLP
                                                               250 West 55th Street
                                                               New York, New York 10019-9710
                                                               Telephone: (212) 836-8485
                                                               Facsimile: (212) 836-6485
                                                               sglickstein@kayescholer.com

                                                               *Co-Lead Defense Counsel*


                                                               CHAFFE MCCALL L.L.P.

                                                               By: /s/ *John F. Olinde*
                                                               John F. Olinde
                                                               CHAFFE McCALL L.L.P.
                                                               1100 Poydras Street
                                                               Suite 2300
                                                               New Orleans, LA 70163
                                                               Telephone: (504) 585-7241
                                                               Facsimile: (504) 544-6084
                                                               olinde@chaffe.com

                                                               *Defendants' Co-Liaison Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on June 8, 2016, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

/s/     John F. Olinde

2703715-1