# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF LOUSIANA

|  |  |  |
|---|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATIONS | ) ) ) ) ) ) ) ) ) | MDL 2592<br><br>SECTION L<br>JUDGE ELDON E. FALLON<br>MAG. JUDGE NORTH |

## NONPARTY PHARMACEUTICAL RESEARCH AND MANUFACTURERS OF AMERICA'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY

Nonparty Pharmaceutical Research and Manufacturers of America ("PhRMA") hereby opposes Plaintiffs' motion to compel. PhRMA is a public policy advocacy organization, which does not develop, market, or advertise particular drugs. Not surprisingly given its mandate, PhRMA has found no documents reflecting its involvement in any of the Xarelto-specific dealings with the Food and Drug Administration ("FDA") that Plaintiffs reference.

Plaintiffs apparently believe that PhRMA was nevertheless involved in these Xarelto-specific dealings based on documents that Defendants produced to them. Yet Plaintiffs repeatedly have refused to provide PhRMA those documents, or any further details about them, to inform its search efforts. At this point, particularly given the lack of relevance of the materials sought, PhRMA has done enough. The Court should deny Plaintiffs' motion to compel.

## BACKGROUND

PhRMA is a non-profit trade association of the country's leading research-based pharmaceutical and biotechnology companies. It currently has 31 member companies. As an organization, PhRMA advocates for public policies of interest to its membership as a whole. For

example, among the organization's goals is to encourage a free market for medicines and to promote strong intellectual property incentives.  PhRMA is not in the business of developing, manufacturing, marketing, advertising, or seeking regulatory approval for particular medicines such as Xarelto.  Plaintiffs do not argue, nor could they credibly argue, that PhRMA is somehow an alter ego or arm of Defendants.

PhRMA was skeptical when it received the subpoena that it had involvement in any Xarelto-specific initiatives, let alone dealings relevant to product liability lawsuits against other parties.  Given its public policy advocacy role, and in accordance with legal and regulatory obligations, it is not PhRMA's practice to involve itself in FDA approval or marketing of particular products.  So PhRMA asked Plaintiffs to be more specific about what they were looking for.

In response, Plaintiffs identified three categories of Xarelto-related dealings they believed PhRMA engaged in.  *See* Ex. A (email correspondence dated May 24, 2016).  Those categories included supposed discussions with FDA about Xarelto and comments on Xarelto direct-to-consumer ("DTC") advertising.  Plaintiffs apparently based the belief that PhRMA had relevant involvement with Xarelto on certain documents that Defendants produced in the litigation.  Yet Plaintiffs refused to provide to PhRMA those documents, or any details found in the documents such as who at PhRMA may have been involved.  *See id.* (email correspondence dated May 26, 2016).  They did so despite PhRMA's counsel offer to work with Plaintiffs and Defense counsel to address any protective order concerns.  *See id.* (email correspondence dated June 2, 2016).

Though it remained skeptical, PhRMA nevertheless contacted individuals within the organization who would be most likely to know about any such dealings.  *See* Ex. B (Pariser Decl.).  PhRMA also ran an electronic keyword search of its documents maintained in searchable

form.  *See id.* at ¶ 2.  But PhRMA found no evidence that it had any such involvement in the Xarelto-related communications with FDA that Plaintiffs allude to.  *See id.*  PhRMA also confirmed that it receives only summaries of comments on DTC advertising provided by member companies themselves, such that Plaintiffs could seek the underlying comments directly from parties to the case.  *See id.* at ¶ 3.

When PhRMA's counsel relayed those findings to Plaintiffs, Plaintiffs expressed surprise because (they said) the documents from Defendants' production were to the contrary.  So PhRMA's counsel again asked to see those documents.  *See* Ex. C (email correspondence dated June 28, 2016).  Plaintiffs again declined, and instead filed this motion.

Maybe Plaintiffs misunderstand what these undisclosed documents say, and they do not in fact conflict with the results of PhRMA's search.  Though doubtful, PhRMA also cannot rule out the possibility that the documents might point to a different person to speak to or new location for it to search.  But PhRMA has already done what it reasonably can in light of Plaintiffs' unwillingness to share the documents.  Indeed, it bent over backwards to try to resolve the subpoena amicably given that the documents Plaintiffs seek bear no apparent relevance to these product liability cases.  The Court accordingly should deny the motion to compel.

## ARGUMENT

Under the recently amended Federal Rules, discovery must be "relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  Though discovery rules are broad, "discovery should not be a boundless fishing expedition."  *Intralox, LLC v. Habasit Belting, Inc.*, 2004 WL 2999097, *3 (E.D. La. 2004).  In determining the appropriate scope of discovery, a nonparty is entitled to special solicitude, including "consideration regarding expense and inconvenience."  *Williams v. City of Dallas*, 178 F.R.D.

103, 109 (N.D. Tex. 1998); *see also Hahn v. Hunt*, 2016 WL 1587405 (E.D. La 2016) (citation omitted) ("[N]on-parties have greater protections from discovery and … burdens on non-parties will impact the proportionality analysis."). Further, "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(c)(1). Nonparty PhRMA having timely objected, *see* Ex. A to Pls.' Mot. to Compel, Plaintiff is entitled to the requested discovery only insofar as the Court orders. *See* Fed. R. Civ. P. 45(d)(2)(B).

## I. THE COURT SHOULD DENY PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS

The Court should decline to compel production of documents. As discussed below, PhRMA has located no evidence of the dealings Plaintiffs believe PhRMA had with FDA concerning Xarelto. Nor are any of the documents sought properly discoverable in any case.

***2014 Meeting with FDA Concerning Regulation and Guidelines Governing Promotions and Specifically, Xarelto-related materials.*** PhRMA looked for documents pertaining to any meeting that occurred in 2014 with FDA which included discussion of J&J/Janssen's promotional materials for Xarelto. It found no evidence that any such meeting occurred. *See* Ex. B, ¶ 2. That result is not surprising because PhRMA's mandate is to advocate on broad policy issues on behalf of its members as a whole, not to intervene in FDA's handling of particular promotional pieces for specific drugs.

Discussions concerning the overarching legal and regulatory framework for drug companies' promotional practices are, in any case, not relevant to these product liability lawsuits. PhRMA's advocacy to the government about broad policy questions applicable to innovative medicines in general has nothing to do with whether Xarelto promotional materials included accurate information or adequate warnings. What's more, subjecting a public policy advocacy

group such as PhRMA to discovery of its protected petitioning activity would unnecessarily burden the freedom of association. *See Herbert v. Lando*, 441 U.S. 153, 179 (1979) (Powell, J., concurring) ("[W]hen a discovery demand arguably impinges on First Amendment rights a district court should measure the degree of relevance required in light of both the private needs of the parties and the public concerns implicated."); *All. of Auto. Mfrs., Inc. v. Jones*, 2013 WL 4838764, at *4 (N.D. Fla. Sept. 11, 2013) (applying associational privilege to deny discovery of trade association).

***2011 Discussions with FDA concerning its approach to risk-benefit analysis.*** Plaintiffs next point to supposed discussions with FDA concerning the Agency's approach to risk-benefit analysis at some point in 2011 prior to an FDA Advisory Committee Meeting considering approval of Xarelto. Although Plaintiffs did not raise any 2011 meeting with FDA during the meet-and-confer discussions, Ex. A (email correspondence dated May 24, 2016), in response to Plaintiffs' motion PhRMA has also searched for documents reflecting that Xarelto was the subject of discussions with FDA in 2011. It has found none. *See* Ex. B, ¶ 2.

A trade association's advocacy concerning how FDA should generally approach the evaluation of drug risks and benefits bears no relevance here in any event. The data, criteria and methods that FDA actually used to evaluate the approval of Xarelto is no doubt a matter of public record and/or discovery from the parties. Plaintiffs offer no explanation how the public policy advocacy materials they seek are relevant to these product liability cases.

***Information from PhRMA's Office of Accountability Relating to 2014-2015 Xarelto Direct to Consumer ("DTC") Advertising.*** PhRMA's Office of Accountability does issue a yearly report that summarizes comments it receives concerning DTC advertising. But the information PhRMA receives from member companies to prepare this report is summary

information such as the number or nature of comments, not the comments themselves. *See* Ex. B, ¶ 3.

Although PhRMA welcomes comments from the public about companies' compliance with the DTC advertising principles, as a matter of practice PhRMA has not regularly received comments on DTC advertising from third parties such as patients or doctors. *See id.* PhRMA accordingly does not maintain a file or collection of any such third-party comments. *See id.* The data reported in the Office of Accountability Reports is based on the summary information from member companies discussed above. *See id.*

PhRMA is at a loss to understand why Plaintiffs need such summary information concerning DTC advertising. Anything that PhRMA has would have originated with Defendants, and PhRMA's summary data would not be as complete the original source materials. To the extent that consumer comments or complaints about Xarelto DTC advertising are relevant, Plaintiffs can seek the underlying communications directly from Defendants. *See Thomas v. IEM, Inc.*, 2008 WL 695230, *2 (M.D. La. 2008) (if documents are available from a party, they should be obtained through party discovery rather than a Rule 45 subpoena).

\* \* \*

Finally, to the extent that Plaintiffs are asking the Court to compel response to the subpoena beyond the three categories Plaintiffs reference in their motion, the Court should also deny such relief. The Subpoena by its terms is vastly overbroad. It seeks in blunderbuss fashion "any and all information" relating in any way, no matter how tangentially, to every anticoagulant medication marketed over the course of more than a decade. Plaintiffs make no attempt to link this broad brush request to any relevant issue in the litigation. And given PhRMA's public policy advocacy role, there is no reason to believe that PhRMA engaged in any relevant

initiatives or projects concerning Xarelto.  PhRMA should not be required to undertake the burden and expense of additional, and likely fruitless, search efforts.

## II.     THE COURT SHOULD DENY PLAINTIFFS' REQUEST FOR A 30(b)(6) DEPOSITION

Plaintiffs' alternative request to compel a 30(b)(6) deposition should also be denied.  As discussed above, PhRMA has not been able to locate any evidence of either of the two FDA meetings which supposedly involved Xarelto, so it has no witness with knowledge to present.  Nor would the summary information about direct-to-consumer complaints described above provide a relevant or useful topic for testimony.  And Plaintiffs have furnished no basis on which to believe that any other PhRMA public policy advocacy activity covered by the notice would be pertinent to this litigation.  Holding a 30(b)(6) deposition would therefore accomplish nothing except to impose unnecessary cost and burden on a nonparty.

## CONCLUSION

For all the reasons set forth above, the Court should deny Plaintiffs' motion to compel.

Dated:  July 12, 2016

      Respectfully submitted,

      /s/ Daniel S. Pariser
      Daniel S. Pariser
      ARNOLD & PORTER LLP
      601 Massachusetts Avenue, NW
      Washington, DC 20001
      Telephone:  202.942.5000
      Facsimile:  202.942.5999

      *Attorney for PhRMA*