UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PROD. LIAB. | Case No. MDL 2593<br><br>**NON-PARTY PORTOLA PHARMACEUTICALS, INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL**<br><br>Hearing Date: August 3, 2016<br>Section L<br>Judge: Hon. Eldon E. Fallon<br>Mag. Judge: Michael B. North |

# REDACTED

## I. INTRODUCTION

Plaintiffs' Steering Committee's ("Plaintiffs") motion to compel should be denied because it fails to address, let alone meet, the requirements imposed on a party seeking discovery to establish (1) that the discovery sought is relevant to the claims or defenses in the action, and (2) that the discovery sought is proportional to the needs of the case, including that the burdens on a non-party discovery target have been minimized. Plaintiffs fail to meet their burdens and instead presume they are entitled to enforce a sweeping subpoena that calls for production of documents across approximately one-half of non-party Portola Pharmaceuticals, Inc.'s ("Portola") entire business. Plaintiffs' failure to address their obligations in their motion is a continuation of their refusal in the meet and confer process to explain why any, let alone "all," documents relating to Andexanet Alfa have any bearing on Plaintiffs' product liability claims. Andexanet Alfa is a pre-market antidote for Xarelto that is still subject to clinical analysis and marketing approval by the U.S. Food & Drug Administration ("FDA"). Plaintiffs' failure is fatal to their motion, especially where the Plaintiffs and Defendants in this case do not dispute that Xarelto was released to the market in 2011 in the absence of an antidote drug. Portola's Investigational New Drug Application ("IND") was not even submitted to the FDA until April 2012 – after Xarelto was fully developed and released to the market. On top of Plaintiffs' failure to address relevancy, their motion also fails to address proportionality or need, and makes no showing of any attempt to reduce burdens on Portola. The failures of Plaintiffs' motion also reflect their counsel's refusal to explain why documents they seek have not already been obtained from Defendants, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

Moreover, Plaintiffs' counsel's attempt to enforce its improper and burdensome subpoena threatens to disrupt the development of a drug that is intended to help the very people they claim

2.

to represent. Compliance with the subpoena as drafted would impose disproportionate burdens on non-party Portola and is entirely outside the bounds of appropriate discovery.

**II.    BACKGROUND**

    **A.    Portola Pharmaceuticals, Inc.**

Portola is a pharmaceutical company that is focused on the development and commercialization of novel therapeutics to meet patient needs in thrombosis, other hematologic disorders, and inflammation. (Declaration of Jeetinder Mahal ("Mahal Decl.") ¶ 5.) Portola is currently a small (less than 200 employees) research and development organization without any commercial products and funds its operations through collaboration agreements and capital investments through the public markets. (*Id.* ¶ 6.) Plaintiffs' subpoena seeks documents related to Portola's development of Andexanet Alfa, one of Portola's leading drug candidates which comprises approximately one-half of its business.[1] (Plaintiffs' Motion Ex. A; Mahal Decl. ¶¶ 7-8.) Portola did not submit its IND for Andexanet Alfa until April 2012, well after Xarelto was approved by the FDA on July 1, 2011. (*Id.* ¶ 11; *see, e.g.*, Dkt. 923, Exemplar Compl., ¶ 49.) Andexanet Alfa is in late stage commercial development and the results of Portola's completed Phase 2 and Phase 3 Andexanet Alfa studies are publicly available. (Mahal Decl. ¶¶ 12-13); *see also, e.g.*, The New England Journal of Medicine, *Andexanet Alfa for the Reversal of Factor Xa Inhibitor Activity*, (Dec. 17, 2015) available at:

---

[1] Plaintiffs' motion also seeks to compel the production of documents related to Betrixaban, Portola's Factor Xa Inhibitor that is also in development. (*See* Plaintiffs' Mot. at 1, 4.) Although Plaintiffs' proposed Rule 30(b)(6) topics request certain testimony related to Betrixaban, not a single document request seeks documents related to Betrixaban. (Plaintiffs' Mot. Ex. A) In any event, Betrixaban is being developed as a direct competitor to Xarelto. (Mahal Decl. ¶ 9.) Documents related to Betrixaban that are not already publicly available are highly confidential, proprietary trade secrets. (*Id.* ¶ 10.) Requiring Portola to produce non-public documents related to the development of Betrixaban, and allowing Defendants access to such documents, would be highly prejudicial and harmful to Portola and could put Portola's intellectual property in jeopardy. (*Id.*)

3.

http://www.nejm.org/doi/full/10.1056/NEJMoa1510991 (Dec. 17, 2015). Andexanet Alfa is not commercially available. (Mahal Decl. ¶ 14.)

As part of its development efforts for Andexanet Alfa, Portola entered into two collaboration agreements with Defendants Bayer and Janssen to study the effect of Andexanet Alfa as a potential Xarelto antidote: (1) a February 2013 agreement relating to the inclusion of a cohort (or group) of subjects dosed with Xarelto in Phase 2 of the Andexanet Alfa study; and (2) a January 2014 agreement applying to a Phase 3 study that also included subjects dosed with Xarelto. (*Id.* ¶¶ 15,17 .) These collaboration agreements ███████████████████████████████████████████████████████████████████████████ (*Id.* ¶¶ 16-17.) █████████████████████████████████████████████████████████████████████████████████████ (*Id.*) Portola has complied with these ███████████ obligations, ████████████████████████████████████████. (*Id.* ¶ 16.) Further, Portola's involvement under these collaboration agreements was limited to the development of its own drug, Andexanet Alfa; Portola has never been involved in the development, manufacture, or distribution of Xarelto. (*Id.* ¶ 18.)

### B. Meet and Confers

On May 9, 2016, Plaintiffs served Portola with a subpoena for business records. (Plaintiffs' Mot. Ex. A.) On May 18, counsel for Portola requested to meet and confer with Plaintiffs regarding the scope of the subpoena and the nature of the underlying action. (Declaration of Mark F. Lambert ("Lambert Decl.") ¶ 3.) Plaintiffs agreed to provide a two-week extension for Portola to investigate the scope of the subpoena and the context of the

litigation and to serve its objections. (*Id.*) Plaintiffs also agreed to take the 30(b)(6) deposition off-calendar, and to meet and confer on June 3.² (*Id.,* ¶ 3, Ex. A.)

During the June 3 meet and confer, counsel for Portola requested that Plaintiffs articulate their position on why the documents sought by the subpoena are relevant and proportional to the needs of this products liability case. (*Id.* ¶ 4.) Counsel for Portola explained that Portola is entitled to an answer as to relevancy and proportionality under Fed. R. Civ. P. 26(a). (*Id.*) Counsel for Plaintiffs refused to provide such information, claiming that they had no obligation to state their views due to the work product doctrine. (*Id.*) In fact, to this date, counsel for Plaintiffs have never articulated any reason why the documents they seek from Portola are relevant, much less proportional to the needs of their case, notwithstanding that (1) the pleadings in the action explicitly remove any dispute that no antidote drug for Xarelto was available when Xarelto went on the market in 2011; (2) Portola's IND was not even submitted to the FDA until April 2012; and (3) Andexanet Alfa has not yet received market approval from the FDA.³ (*See, e.g.*, *Id.* ¶ 18); *see, e.g.*, Dkt. 923, Exemplar Compl. ¶ 72 ("Xarelto's significant risk of severe, and sometimes fatal, internal bleeding has no antidote to reverse its effects[.]"); *Bolton v. Janssen Research & Development LLC, et al.*, Civ. Not. 0:14cv00146 (E.D. Kentucky 2014), Dkt. No. 12, ¶ 86 ("The Janssen Defendants admit that "[a] specific antidote for rivaroxaban is not available."); (Mahal Decl. ¶¶ 11, 14.)⁴

---

² Plaintiffs and Portola initially scheduled a meet and confer for May 31. This meet and confer was rescheduled.
³ Most, if not all, of Plaintiffs' claims are strict liability torts, a circumstance that casts serious questions on how nonparty documents regarding a pre-market antidote could be relevant. Plaintiffs' counsel failed and refused to articulate any element of any claim that such documents could bear on. (Lambert Decl. ¶ 4, 13, 15, 18.) Plaintiffs' motion is likewise silent on that matter and belated attempts to explain such a nexus in reply should be rejected.
⁴ In fact, Xarelto's label clearly indicates that there is no antidote. *See* Mahal Decl. ¶ 19, Ex. A ("A specific antidote for rivaroxaban is not available.").)

Counsel for Portola also sought to understand what, if anything, counsel for Plaintiffs had done to meet their obligations under Rule 45(c) to minimize discovery burdens on non-party Portola.  (Lambert Decl. ¶ 5.)  Counsel for Portola informed Plaintiffs that, as written, the subpoena seeks every single document in Portola's possession that relates, in any way, to Andexanet Alfa, and therefore was unreasonably burdensome.  (*Id.*; *see also id.* ¶ 11 Ex. C.) A (Request No. 5 ("All documents and communications relating to the research and development of Andexanet Alfa") and responses thereto; Request No. 11 ("All documents from employees of Portola . . . that relate to Andexanet Alfa or Xarelto.") and responses thereto.)  Counsel for Portola further explained that, in light of Portola's collaboration agreements with Defendants, any documents that could be pertinent should be available from Defendants and are more appropriately sought from Defendants, if not already been produced.  (*Id.* ¶ 6.)  Plaintiffs' counsel stated that they did not think they had received the collaboration agreements between Portola and the Defendants in party discovery and insisted that Portola produce them.  (*Id.*)  Counsel for Portola expressed disbelief that this could be the case and sent the cover pages of each agreement to assist Plaintiffs' follow-up efforts.  (*Id.*, ¶ 6, Ex. B.)  Counsel for Portola also asked counsel for Plaintiffs to confirm before the next meet and confer that they had (1) already exhausted their discovery efforts for the subject matter sought in the subpoena from Defendants and (2) that the requested documents had not been produced by Defendants.  (*Id.* ¶ 7.)  Counsel for Portola reiterated that upon receiving an explanation for why the documents sought from Portola could be relevant, Portola would produce documents that Plaintiffs could not obtain through diligence from Defendants.  (*Id.*)  In that respect, Portola, as a non-party, would be appropriately producing the documents that are necessary and proportional, and which could not be obtained through party discovery.  (*Id.*)

Additionally, in order to assist Plaintiffs with locating such documents in Defendants' production or with pursuing further production from Defendants, counsel for Portola provided Plaintiffs' counsel with a list of its eleven employees that principally communicate with (or have communicated with) Bayer and Janssen's employees,[5] as well as Portola's principal points of contact at Bayer and Janssen.  (*Id.*, ¶ 8, Ex. B.)  Counsel for Portola further pointed out its understanding that the vast majority of Portola's contacts with Bayer and Janssen are already custodians of Defendants in this case, further supporting Portola's position the documents Plaintiffs seek regarding Xarelto (or Andexanet Alfa for use with Xarelto) should already have been (or could be) produced by the Defendants.  (*Id.*)  Counsel for both Plaintiffs and Portola agreed to schedule a follow-up meet and confer for June 6.  (*Id.* ¶ 9.)

Portola served its objections to the subpoena on June 6 and on the same day, met and conferred again with Plaintiffs' counsel.  (*Id.* ¶ 12, Ex. C.)  While Plaintiffs' counsel confirmed during this call that Defendants had in fact produced the collaboration agreements, they claimed they had not had an opportunity to investigate whether Defendants had already produced other documents in Defendants' possession under the collaboration agreements pertaining to Andexanet Alfa for use with Xarelto.  (*Id.* ¶ 12.)  Counsel for Portola again inquired whether Plaintiffs had taken steps to obtain, or had obtained, such documents by questioning what search terms Defendants applied, and whether the search terms would have captured documents related to the collaboration agreements in Defendants' possession.  (*Id.*)  Plaintiffs did not disclose the search terms, but nonetheless, continued to press for Portola's production of all documents called for by the subpoena.  (*Id.*)  Plaintiffs' ability to locate the collaboration agreements in the Defendants' production, as well as Plaintiffs' counsel's concealment of the search terms, only

---

[5] Portola has since identified two additional employees that regularly communicate with (or have communicated with) individuals at Bayer and Janssen as part of their collaboration efforts.

underscored Portola's concerns that Plaintiffs have not assessed what they already have, or could readily obtain, from Defendants through diligence. (*Id.*) Thus, Portola requested a list of the search terms, and questioned whether Plaintiffs could request that Defendants revise their search terms to capture such documents (if indeed they have not been produced). (*Id.*) Plaintiffs' counsel asserted that it was not required to do so, that it could seek these same documents from a non-party, and that in any event, the search terms could not be modified because the "train has left the station." (*Id.*) Plaintiffs' counsel provided no further explanation, and went on to argue, that, in any event, their subpoena seeks Portola's internal communications related to Xarelto and Andexanet Alfa, documents which cannot be obtained from the Defendants. (*Id.* ¶ 13.) Again, when asked, Plaintiffs' counsel refused to state why they believed Portola's internal communications could be relevant, either unable or unwilling to explain how non-party documents that Defendants have never seen could have any bearing on Defendants' liability or defenses. (*Id.*) Ultimately, Plaintiffs indicated they would be willing to search Defendants' production to determine what documents may have already been produced, and counsel for Portola and Plaintiffs agreed to conduct another meet and confer on June 17, which was ultimately rescheduled for July 5. (*Id.*)

Following the June 6 meet and confer and leading up to the July 5 discussion, Portola's counsel reiterated its request for a copy of Defendants' search terms to help Portola understand whether Plaintiffs had undertaken sufficient efforts to obtain these documents through party discovery and to reduce Portola's non-party burdens. (*Id.* ¶ 14, Ex. D.) Plaintiffs refused to provide Portola with this information. (*Id.*)

On July 5, Portola and Plaintiffs met and conferred for a third time. (*Id.* ¶ 15.) Plaintiffs asserted that they searched Defendants' production and "only" found 654 emails that "have a

8.

Portola email exchange." (*Id.*) Plaintiffs failed to explain why this purported deficiency had never been raised with Defendants. (*Id.*) Moreover, counsel for Plaintiffs refused to provide any information regarding how they conducted their search or what these results meant, making it impossible for Portola to assess whether Plaintiffs' search accurately captured the volume of documents Plaintiffs may already have obtained that would also be responsive to the Portola subpoena. (*Id.*) Portola's counsel again requested that counsel for Plaintiffs articulate a legal basis as to the relevancy of its subpoena requests. (*Id.*) Plaintiffs' counsel's only response was, "when we see the documents, we might find out." (*Id.*) Ultimately, counsel for Plaintiffs refused to make any attempts to narrow the scope of the subpoena and indicated they would file a motion to compel. (*Id.*)

Immediately after the meet and confer, counsel for Portola sent counsel for Plaintiffs and Defendants an e-mail requesting a global meet and confer to better understand what documents responsive to the subpoena had already been produced, or could be produced, from the Defendants' data sources. (*Id.* ¶ 16, Ex. D.) Neither Plaintiffs nor Defendants responded to this email. (*Id.* ¶ 17.) Plaintiffs' motion to compel followed. To date, Plaintiffs have not articulated the relevancy of their subpoena, demonstrated that they have sought to reduce the burdens on non-party Portola through party discovery, or made any effort to narrow the scope of their overly broad requests. (*Id.* ¶ 18.)

///

///

///

///

9.

### III. PLAINTIFFS FAIL TO ARGUE, LET ALONE SHOW, THAT THE SUBPOENA MEETS THE RELEVANCY, PROPORTIONALITY, AND BURDEN REDUCTION REQUIREMENTS OF THE FEDERAL RULES

The Federal Rules of Civil Procedure apply reasonable limits on discovery and affirmatively protect non-parties from undue burdens.[6] Under the recently revised Federal Rules the scope of discovery is limited to:

> [A]ny nonprivileged matter that is **relevant** to any party's claim or defense **and proportional** to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden and expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1) (emphasis added); *see also See Noble Roman's Inc. v. Hattenhauer Distrib. Co.*, No. 1:14-cv-01734-WTL-DML, 2016 U.S. Dist. LEXIS 38428, at **9-10 (S.D. Ind. Mar. 24, 2016) (explaining that "[e]ach time the language and/or structure of the 'Discovery Scope and Limits' section of the rule was changed, it was to rein in popular notions that anything relevant should be produced and to emphasize the judge's role in controlling discovery"). The limits and breadth of discovery expressed in Rule 26 are applicable to non-party discovery under Rule 45 (*id.* at *10), subject to the explicit requirement that "[a] party or attorney responsible for issuing and serving a subpoena must [also] take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P.

---

[6] As a preliminary matter, the Federal Rules required Plaintiffs to file their motion to compel in "the court for the district where compliance is required." Fed. R. Civ. P. 45(d)(B)(i). Portola's principal place of business is in the Northern District of California and the Subpoena seeks compliance in that judicial district. (*See* Mahal Decl. ¶ 3.) Rule 45(d)(B)(i) applies to multi-district litigation cases. *See, e.g., In re Uranium Antitrust Litig.*, 503 F. Supp. 33, 35 (N.D. Ill. 1980) (28 U.S.C. § 1407 (b) only allows a multi-district litigation judge to "go to other districts to hear and decide motions to compel discovery from non-parties," but does not authorize the MDL court to "reach out, assert jurisdiction, and compel the non-party disputants to the out-of-district controversy to appear initially in [that] district.") Plaintiff's failure to comply with these filing requirements is an independent reason to deny the motion, and has further burdened Portola.

45(c)(1); *see also Hahn v. Hunt*, No. 15-2867 Section "G" (2), 2016 U.S. Dist. LEXIS 52885, at *4 (E.D. La. Apr. 20, 2016) (non-parties enjoy greater protections from discovery). Significantly, "burdens on non-parties will impact the proportionality analysis" because the calculus is altered by the "[t]he most crucial factor . . . that [the producing party] is a non-party." *Id.* at *5.

Furthermore, the burden is on the party seeking discovery to show that the requirements of Rules 26(a) and 45(c) have been met. *See Noble Roman's Inc.*, 2016 U.S. Dist. LEXIS 38428, at *5 (the party seeking discovery bears the burden of demonstrating both relevancy and proportionality). Counsel for Plaintiffs, however, have failed at every turn to address, let alone meet, their burdens to demonstrate that the subpoena complies with the Federal Rules.[7]

And, instead of attempting to carry their burdens, Plaintiffs falsely assert that Portola has refused to produce responsive documents under any circumstances. (Plaintiffs Mot. at 2.) Plaintiffs could not be more wrong. (*Compare* Plaintiffs' Mot. at 2 *with* Lambert Decl. ¶ 7.) Rather, counsel for Portola requested, as it is permitted to do under the Federal Rules, that counsel for Plaintiffs first fulfill their obligations to establish the relevancy, proportionality and burden reduction that is required by Federal Rules of Civil Procedure 26 and 45. (Lambert Decl. ¶¶ 4-5.) Plaintiffs' counsel has refused to meet any of its burdens and has instead insisted on compliance with the grossly overbroad subpoena as written. (*Id.* ¶ 18.)

### A. Plaintiffs fail to show that their subpoena seeks information relevant to the litigation.

Counsel for Plaintiffs failed even to attempt an explanation of relevancy. Plaintiffs' counsel first attempted to skirt that obligation by claiming that its views on relevancy are protected "work product," and then punted on the relevancy issue, stating that "when we see the

---

[7] Any attempts by the Plaintiffs to make a showing of relevancy and proportionality in its Reply brief or at the hearing come too late and should be disregarded.

11.

documents, we might find out [if they are relevant]." (*Id.* ¶¶ 4, 15.) Plaintiffs have it backwards. *See, e.g.*, *Gilead Scis., Inc. v. Merck & Co, Inc.*, No. 5:13-cv-04057-BLF, 2016 U.S. Dist. LEXIS 5616 at *4 (N.D. Cal. Jan. 13, 2016) (Grewal, J.) ("No longer is it good enough to hope that information sought might lead to the discovery of admissible evidence.") No one is expected to produce discovery that lacks a nexus to the disputes of the case. *Id.* at *4. In fact, Rule 26(b) "has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition," especially where third parties are concerned. *See, e.g.*, *Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1163 (10th Cir. 2010); *Intralox, LLC v. Habasit Belting, Inc.*, No. Civ.A. 04-840, 2004 WL 2999097, at *3 (E.D. La. Dec. 23, 2004) ("discovery should not be a boundless fishing expedition"). Plaintiffs have not—and cannot—establish why documents related to the human clinical development of an antidote that did not begin until <u>after</u> Xarelto went on the market bears on any claim or defense in this lawsuit. (*See* Lambert Decl. ¶¶ 13, 15, 18; Mahal Decl. ¶ 11.) Plaintiffs' failure to establish, at a minimum, that the discovery it seeks is relevant, is fatal to its motion.

   **B. Neither have Plaintiffs demonstrated that their subpoena as drafted is proportional to the needs of the case.**

  And even if Plaintiffs had bothered to articulate a coherent statement of relevancy (which they cannot), a theory of relevancy alone falls short. Rule 26 makes clear that Plaintiffs are not entitled to discovery unless it is both relevant <u>and</u> proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Again, Plaintiffs have not attempted to meet their burden of establishing proportionality. *See Hahn*, 2016 U.S. Dist. LEXIS 52885, at *5. Crucially, "burdens on non-parties will impact the proportionality analysis" because the calculus is altered by the "[t]he most crucial factor . . . that [the producing party] is a non-party." *Id.*

  Here, Plaintiffs' subpoena is vastly over broad on its face. Plaintiffs seek every piece of

company documentation (*i.e.*, "[a]ll documents") related to Andexanet Alfa—approximately half of Portola's business and documents. (Mahal Decl. ¶ 8.) What is more, Plaintiffs' motion seeks to expand its already overbroad subpoena by requesting documents related to Betrixaban, even though none of Plaintiffs' document requests call for documents related to that drug. (Plaintiffs' Mot. at 1, 4, Ex. A.) Requiring a non-party to empty its files in this manner would impose an unjustifiable burden that is not proportional to the needs of the case. What is more, much of what is sought in the subpoena is available from the Defendants, and may have been produced, or could be produced, by Defendants. (Lambert Decl. ¶¶ 6, 8.) Plaintiffs' refusal to make a good faith effort to determine if they already have these documents, and their argument that they have no obligation to do so, is unwarranted. *See, e.g. Thomas v. IEM, Inc.*, No. 06-886-B-M$_2$, 2008 WL 695230, at *2 (M.D. La. Mar. 12, 2008) (if documents are available from a party, they should be obtained through party discovery rather than a Rule 45 subpoena). Plaintiffs cannot shift the burden of producing documents to a non-party simply because it is inconvenient to determine whether such documents have been (or can be) produced by Defendants.

Furthermore, to the extent that Plaintiffs' subpoena and motion seeks documents related to Portola's ongoing Andexanet Alfa clinical trials, the production of such documents presents additional unjustified burdens. Because trials are still in process, and may continue even after initial approval from the FDA, prematurely sharing data related to the ongoing trials could result in a significant change with respect to FDA approval. (Mahal Decl. ¶ 13.) As such, the disclosure of documents related to the ongoing Andexanet Alfa study could cause significant material harm to Portola's ability to obtain or maintain FDA approval. (*Id.*) Thus, the subpoena threatens the development of a drug designed to benefit the very patients that Plaintiffs' counsel purports to represent.

In short, Plaintiffs' request for every document related to Andexanet Alfa - a pre-market drug which is not at issue in this case - is not only irrelevant, but is grossly disproportionate to the needs of the case. Accordingly, Plaintiffs' motion should be denied. *See e.g., Roberts v. Clark Cty. Sch. Dist.*, 312 F.R.D. 594, 608 (D. Nev. 2016) (denying motion to compel under amended Rule 26 because defendant's request for plaintiff's social media, education, and tax records were "grossly out of proportion" to the needs of the case).[8]

### IV. PLAINTIFFS' FAILURE TO MINIMIZE NON-PARTY PORTOLA'S BURDENS IS SANCTIONABLE

Rule 45 makes clear that where a party seeking discovery fails to take "reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena [t]he court . . . **must** enforce this duty **and** impose an appropriate sanction . . . on a party or attorney who fails to comply." Fed. R. Civ. P. 45(d)(1) (emphasis added). Such sanctions are appropriate here. Plaintiffs' subpoena is vastly overbroad, seeking approximately one-half of Portola's company documents. (Mahal Decl. ¶ 8.) Plaintiffs have refuse to take any steps to minimize Portola's burden in responding to the discovery by narrowing the scope of the subpoena, and through their motion they seek even more documents than called for by the subpoena. As such, the Court should impose an appropriate sanction, including the costs Portola incurred in responding to Plaintiffs' baseless motion.[9] Alternatively, to the extent the Court is inclined to order Portola to produce any documents or provide any testimony in response to the subpoena, Plaintiffs should

---

[8] Plaintiffs ask the Court, in the alternative, to compel a 30(b)(6) deposition. (Plaintiffs' Mot. at 4.) This request should also be denied. Plaintiffs' topics for testimony are even more overbroad than their document requests. And, as discussed above, Plaintiffs have failed to establish the relevance and proportionality of their request for Portola's testimony. Holding a Rule 30(b)(6) deposition would accomplish nothing except to impose unnecessary cost and burden on a non-party. Finally, the purported "notice" of deposition was unaccompanied by a deposition subpoena.

[9] Upon a determination by the Court that sanctions are warranted, Portola will submit an offer of proof of costs. (Lambert Decl. ¶ 19.)

bear the cost of such production and deposition.

V. CONCLUSION

For the reasons set forth above, the Court should deny Plaintiffs' motion to compel in its entirety.

Dated: July 26, 2016

           COOLEY LLP

           By:   */s/ Benjamin H. Kleine*
              Benjamin Kleine (257225)

*Attorneys for Non-Party*
*Portola Pharmaceuticals, Inc.*

COOLEY LLP
MARK LAMBERT (197410)
(mlambert@cooley.com)
BENJAMIN H. KLEINE (257225)
(bkleine@cooley.com)
HEATHER DUNN NAVARRO (238158)
(hdnavarro@cooley.com)
SHAWNA BENFIELD (290511)
(sbenfield@cooley.com)
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone: (650) 843-5000
Facsimile: (650) 849-7400

## CERTIFICATE OF SERVICE

Pursuant to the Eastern District of Louisiana's Local Rule 5.4, I, Julie L. Correll, hereby certify that on July 26, 2016, a true and correct copy of the Redacted Version of Non-Party Portola Pharmaceuticals, Inc.'s Opposition to Plaintiffs' Motion to Compel was filed electronically on the Court's CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct.

Dated: July 26, 2016

*/s/ Julie L. Correll*
Julie L. Correll

134732150 v1