UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PROD. LIAB. | Case No. MDL 2593<br><br>**DECLARATION OF MARK F. LAMBERT IN SUPPORT OF NON-PARTY PORTOLA PHARMACEUTICAL, INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL**<br><br>Hearing Date: August 3, 2016<br> Section L<br>Judge: Hon. Eldon E. Fallon<br>Mag. Judge: Michael B. North |

## DECLARATION OF MARK F. LAMBERT

I, MARK F. LAMBERT, declare as follows:

1. I am a partner at Cooley LLP, counsel for Portola Pharmaceuticals, Inc. ("Portola") in the above-captioned litigation.

2. I have personal knowledge of the facts stated herein, and if called to testify, I could competently do so.

3. On May 18, my colleagues requested to meet and confer with Plaintiffs regarding the Subpoena served on Portola, in particular regarding the scope of the Subpoena and the nature of the action. We also requested, and Plaintiffs agreed, to provide a two-week extension for Portola to further investigate the scope of the subpoena and the context of the litigation and to serve its objections. Plaintiffs also agreed to take the 30(b)(6) deposition off-calendar and to meet and confer on May 31 (which was rescheduled to June 3). Attached as **Exhibit A** is a true and correct copy of an e-mail exchange reflecting this agreement.

4. The June 3, 2016 meet and confer was attended by my colleagues Shawna Benfield, Heather Dunn Navarro, and myself for Portola, and Lenny Davis and Roger Denton for Plaintiffs. During the June 3 meet and confer, we asked counsel for Plaintiffs to articulate their position on why the documents sought by the subpoena are relevant and proportional to the needs of this products liability case, explaining that Portola is entitled to an answer as to relevancy and proportionality under Fed. R. Civ. P. 26(a). Counsel for Plaintiffs refused to provide such information, claiming that they had no obligation to state their views due to the work product doctrine.

5. During the meet and confer, we also sought to understand what, if anything, counsel for Plaintiffs had done to meet their obligations under Rule 45(c) to minimize discovery

burdens on non-party Portola. We informed Plaintiffs that, as written, the subpoena seeks every single document in Portola's possession that relates, in any way, to Andexanet Alfa, and therefore was unreasonably burdensome.

6. We further explained that, in light of Portola's collaboration agreements with Defendants, any documents that could be pertinent should be available from Defendants and are more appropriately sought from Defendants, if they had not already been produced. Plaintiffs' counsel stated that they did not think they had received the collaboration agreements between Portola and the Defendants in party discovery, and insisted that Portola produce them. We expressed disbelief that this could be the case and sent the cover pages of each collaboration agreement to assist Plaintiffs' follow-up efforts.

7. We also asked counsel for Plaintiffs to confirm before the next meet and confer that they had (1) already exhausted their discovery efforts for the subject matter sought in the subpoena from Defendants and (2) that the requested documents had not been produced by Defendants. We reiterated that upon receiving an explanation for why the documents sought from Portola could be relevant, Portola would produce documents that Plaintiffs could not obtain through diligence from Defendants. We explained that Portola, as a non-party, would be appropriately producing the "last mile's worth" of documents that are necessary and proportional, and which could not be obtained through party discovery.

8. In order to assist Plaintiffs with determining whether they had properly sought Portola materials that could be relevant through party discovery, we sent Plaintiffs' counsel a list of Portola's eleven employees that principally communicate with (or have communicated with) Bayer and Janssen's employees, as well as Portola's principal points of contact at Bayer and Janssen. We also pointed out our understanding that the vast majority of Portola's contacts at

Bayer and Janssen are already custodians of Defendants in this case, meaning that the documents Plaintiffs seek regarding Xarelto (or Andexanet Alfa for use with Xarelto) should already have been (or could be) sought from and produced by the Defendants.

9. We agreed to a follow-up meet and confer on June 6.

10. Attached as **Exhibit B** is a true and correct copy of an e-mail dated June 3, 2016 reflecting this discussion.

11. Portola served its objections to the subpoena on June 6. Attached as **Exhibit C** is a true and correct copy of Non-Party Portola Pharmaceuticals, Inc.'s Objections and Responses to Plaintiff's Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action dated June 6, 2016.

12. On June 6, we also met and conferred again with Plaintiffs' counsel. While Plaintiffs' counsel confirmed during this call that Defendants had in fact produced the collaboration agreements, they claimed they had not had an opportunity to investigate whether Defendants had already produced other documents in Defendants' possession under the collaboration agreements pertaining to Andexanet Alfa for use with Xarelto. We inquired whether Plaintiffs had taken steps to obtain, or had obtained, such documents by questioning what the search terms were, and whether the search terms would have captured documents related to the collaboration agreements that are in possession of the Defendants. They did not tell us the search terms. We explained that their ability to locate the collaboration agreements in the Defendants' production, as well as their concealment of the search terms from us only underscored our concerns that Plaintiffs have not assessed what they already have, or could readily obtain from Defendants through diligence. We requested a list of the search terms, and questioned whether Plaintiffs could request that Defendants revise their search terms to capture

such documents (if indeed they have not been produced). Plaintiffs' counsel asserted that it was not required to do so, that it could seek these same documents from a non-party, and that in any event, the search terms could not be modified because the "train has left the station."

13. Plaintiffs' counsel went on to argue that their subpoena seeks Portola's internal communications related to Xarelto and Andexanet Alfa, documents which cannot be obtained from the Defendants. Again, when asked, Plaintiffs' counsel refused to state why they believed Portola's internal communications could be relevant, either unable or unwilling to explain how non-party documents that Defendants has never seen could have any bearing on Defendants' liability or defenses. Ultimately, Plaintiffs indicated they would be willing to search Defendants' production to determine what documents may have already been produced, and we agreed to conduct another meet and confer on June 17, which was ultimately rescheduled for July 5.

14. Following the June 6 meet and confer and leading up to the July 5 discussion, we reiterated our request for a copy of Defendants' search terms to help Portola understand whether Plaintiffs had undertaken sufficient efforts to obtain these documents through party discovery and to reduce Portola's non-party burdens. Plaintiffs refused to provide this information.

15. On July 5, we met and conferred for a third time with Plaintiffs' counsel. Plaintiffs asserted that they searched Defendants' production, and "only" found 654 emails that "have a Portola email exchange." Plaintiffs failed to explain why this purported deficiency had never been raised with Defendants. Moreover, they refused to provide any information regarding how they conducted their search or what the results meant, which we explained made it impossible for us to assess whether Plaintiffs' search accurately captured the volume of email and non-email documents Plaintiffs may already have responsive to the Portola subpoena. We again requested that counsel for Plaintiffs articulate a legal basis as to relevancy of its subpoena

requests. Plaintiffs' counsel's only response was, "when we see the documents, we might find out." Ultimately, counsel for Plaintiffs refused to make any attempts to narrow the scope of the subpoena during this call and indicated they would file a motion to compel.

16. Immediately after the meet and confer, we sent counsel for Plaintiffs and Defendants an e-mail requesting a global meet and confer to better understand what documents responsive to the subpoena had already been produced, or could be produced, from the Defendants' data sources. Attached as **Exhibit D** is a true and correct copy of this e-mail.

17. Neither Plaintiffs nor Defendants responded to this email.

18. To date, Plaintiffs have not articulated the relevancy of their subpoena, demonstrated that they have sought to reduce the burdens on non-party Portola through party discovery, or made any effort to narrow the scope of their overly broad requests.

19. Upon a determination by the Court that sanctions are warranted, Portola will submit an offer of proof of costs.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 26th day of July, 2016, in Palo Alto, California.

_____

Mark F. Lambert

134618357

- 6 -

## CERTIFICATE OF SERVICE

Pursuant to the Eastern District of Louisiana's Local Rule 5.4, I, Julie L. Correll, hereby certify that on July 26, 2016, a true and correct copy of Declaration of Mark F. Lambert in Support of Non-Party Portola Pharmaceutical, Inc.'s Opposition to Plaintiffs' Motion to Compel was filed electronically on the Court's CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct.

Dated:  July 26, 2016

*/s/ Julie L. Correll*
Julie L. Correll