```
                       UNITED STATES DISTRICT COURT
                       EASTERN DISTRICT OF LOUISIANA


IN RE: XARELTO (RIVOROXABAN)      *     MDL 14-2592 "L"
PRODUCTS LIABILITY LITIGATION     *
                                  *
                                  *     September 14, 2016
                                  *
                                  *
THIS DOCUMENT RELATES TO          *     Judge Eldon E. Fallon
ALL CASES                         *
                                  *
                                  *     Mag. Judge Michael North

******************************************************************

         REPORTER'S OFFICIAL TRANSCRIPT OF THE TELEPHONE CONFERENCE
                   BEFORE THE HONORABLE ELDON E. FALLON,
                             UNITED STATES JUDGE.

******************************************************************
```

**APPEARANCES:**

FOR THE PLAINTIFFS:              HERMAN HERMAN & KATZ
                                 BY: LEONARD A. DAVIS,ESQ.
                                 820 O'KEEFE AVE.
                                 NEW ORLEANS, LA  70113


FOR THE DEFENDANTS:              DRINKER BIDDLE & REATH
                                 BY: SUSAN M. SHARKO, ESQ
                                     CHANDRA MILLER
                                 500 CAMPUS DR.
                                 FLORHAM PARK, NJ  07932


**OFFICIAL TRANSCRIPT**

**APPEARANCES CONTINUED:**

FOR BAYER DEFENDANTS:        KAYE SCHOLER
                             BY: ANDREW SOLOW
                             250 WEST 55TH STREET
                             NEW YORK, NY  10119


                             ECKERT SEAMANS CHERIN & MELLOTT
                             BY: TIMOTHY COONS
                             500 Grant Street
                             44th Floor
                             Pittsburgh, PA  15219



FOR PROTOLA:                 COOLEY, INC.
                             BY: MARK LAMBERT
                                 HEATHER DUNN NAVARRO
                             3175 HANOVER STREET
                             PALO ALTO, CA  94340




**REPORTED BY:**             Mary V. Thompson, RMR, FCRR
                             500 Poydras Street
                             Room B-275
                             New Orleans, LA  70130
                             (504) 589-7783
                             mary_v_thompson@laed.uscourts.gov

**OFFICIAL TRANSCRIPT**

```
                        P R O C E E D I N G S
                               (Call to order of the court.)
            THE COURT:  Good afternoon, everyone.  This is
Judge Fallon.
            Who's on the line for the plaintiffs?
            MR. DAVIS:  Hello, Judge.  It's Leonard Davis.
            MR. DENTON:  And Roger Denton, Your Honor.
            THE COURT:  Roger.
            Anyone else for the plaintiff?
            MR. LAMBERT:  Mark Lambert for Portola.
            THE COURT:  Well, how about for the plaintiffs?
            MR. DAVIS:  That's it, Judge, for the plaintiffs.
            THE COURT:  And for the defendants?  First J & J.
            MS. SHARKO:  Susan Sharko and Chanda Miller.
            THE COURT:  Okay, Susan.
            Anyone else for J & J?
            (No response.)
            THE COURT:  How about Bayer?
            MR. SOLOW:  Good afternoon, Your Honor.  Andy Solow and
Tim Coon for the Bayer defendants.
            THE COURT:  Okay, Andy.
            Anyone else for Bayer?
            (No response.)
            THE COURT:  And for Portola?
            MR. LAMBERT:  Mark Lambert and Heather Dunn Navarro.
```

1           THE COURT:  Okay, Mark.
2           We're here today -- this is the second time I'm
3  visiting this particular issue.  Just by way of background,
4  Portola Pharmaceutical is a pharmaceutical company that actually
5  focuses on the development and commercialization of therapeutics
6  to meet patients' needs in the thrombosis and the hematologic
7  disorder and inflammation areas.
8           Portola is considered a relatively small research and
9  development organization.  It's currently engaged in two aspects
10 that have some impact on Xarelto.  They are currently engaged in
11 the development of a reversal agent, we know it as an antidote,
12 that could be used to reverse the anticoagulation effects of
13 Xarelto in the event a patient experiences bleeding while taking
14 Xarelto.  And they're also involved in developing another
15 factor Xa anticoagulant that functions as an alternative design
16 to Xarelto.
17          So with regard to the first aspect of it, they have an
18 agreement with J & J and Bayer to do that work.  With regard to
19 the second aspect, they're actually in competition, I suspect,
20 with Bayer and J & J.
21          In any event, the plaintiffs in this matter, the
22 Xarelto matter, have called upon Portola to produce certain
23 information.  I looked at the request, and it seemed to me to be
24 relevant, but I was a little concerned about proportionality so I
25 directed the parties to meet and confer and see whether or not

**OFFICIAL TRANSCRIPT**

|       |    |                                                                 |
|-------|----|-----------------------------------------------------------------|
|       | 1  | they could narrow it down a little bit so that I could get a    |
|       | 2  | handle on it.  They have met and conferred, and I understand that |
|       | 3  | they have a potential proposed order but that Bayer and J & J   |
|       | 4  | have some concern about that proposed order.                    |
| 04:03:54 | 5  | And basically we have Pretrial Order No. 12 which            |
|       | 6  | provides for a protective order and classifies certain          |
|       | 7  | information and provides certain methods for dealing with that  |
|       | 8  | type of information.  And the proposed order is an amendment to |
|       | 9  | 12, and they're calling it 12-A, which is more tailored to the  |
| 04:04:24 | 10 | Portola information.                                          |
|       | 11 | I'll hear from the parties at this time.                        |
|       | 12 | MR. DAVIS:  Judge, this is Lenny on the plaintiffs'             |
|       | 13 | side.                                                           |
|       | 14 | And first off, I want to tell the Court that we all             |
| 04:04:34 | 15 | appreciate your getting on a call in rather short notice.  We |
|       | 16 | know we didn't have a discovery call this week.                 |
|       | 17 | THE COURT:  Sure.                                               |
|       | 18 | MR. DAVIS:  But I know Your Honor said that if issues           |
|       | 19 | came about, we should pick up the phone and call him.           |
| 04:04:46 | 20 | THE COURT:  Yes.                                              |
|       | 21 | MR. DAVIS:  We do appreciate it.  And all the parties           |
|       | 22 | offered up that earlier today and yesterday, so I do thank you  |
|       | 23 | with respect to that.                                           |
|       | 24 | THE COURT:  Sure.  That's fine.                                 |
| 04:04:56 | 25 | MR. DAVIS:  To add a little bit of background, which          |

1  I'm sure the Court may recall, but back in May, May 9th, the PSC
2  served a subpoena on Portola, a third-party subpoena, and we went
3  through the meet-and-confer process and were met with objections
4  from Portola.  And ultimately we had a hearing before Your Honor
5  on a motion to compel which occurred on August 4th and Your Honor
6  gave us directives.  You may recall that was done in the
7  conference room before a court reporter in what I'll call court,
8  and Your Honor issued an order on August 8th.
9            Since that time, the plaintiffs have attempted to
10 secure the documents from Portola, and we've had conversations
11 with Portola as well as J & J and Bayer on numerous occasions
12 since then.
13           After Mark identified Portola's concerns -- and
14 Your Honor really hit the nail on the head with respect to the
15 problems that Portola had with respect to competition in the
16 disclosure of information, and we're mindful of that.  And we
17 attempted to work with Portola to understand that, and Portola
18 provided a draft of an amendment or a protective order which we
19 suggested be put into a form that was more in line with what
20 Your Honor had done with other pretrial orders, meaning an
21 amendment.  And that's what Your Honor was provided.
22           Now, that has not yet been agreed to by everybody,
23 specifically Paragraph 3.  And I'll let Portola talk about their
24 concerns, but the issue that's at issue right now is Portola has
25 requested that certain of the documents to be produced be for

|   |   |
|---|---|
| 04:07:16 | 1  attorneys' eyes only so that they don't get into the hands of |
|   | 2  competitors, as I appreciate it from Mark.  And we've discussed |
|   | 3  this in great detail. |
|   | 4           What we've told Portola, their counsel, is that the |
|   | 5  documents may need to be used at some point.  And as far as the |
|   | 6  plaintiffs are concerned, for the attorneys' eyes only documents |
|   | 7  we have no problem sharing with Portola in advance what we may |
|   | 8  want to use, but we don't think it ought to be telegraphed to the |
|   | 9  other side.  And the same goes for the other side.  If the other |
| 04:07:38 | 10 side wants to use documents, they could deal with that with |
|   | 11 Portola.  And if there's an issue, then it could be brought to |
|   | 12 Your Honor. |
|   | 13          And so we don't have a disagreement with respect to a |
|   | 14 number of the documents which Portola is ready to roll out |
| 04:07:58 | 15 literally this coming week.  Those are the non-attorneys' eyes |
|   | 16 only.  I think Portola's ready to move forward with that |
|   | 17 production. |
|   | 18          The issue is what to do with the attorneys' eyes only |
|   | 19 documents. |
| 04:08:13 | 20          And as I appreciate it -- and I don't want to speak for |
|   | 21 anyone else, but as I appreciate it, Bayer in particular and -- |
|   | 22 I'm sorry, J & J in particular -- Bayer has joined in as of this |
|   | 23 morning in this issue -- has said they want to see the documents |
|   | 24 and share them internally to their personnel.  That's really a |
| 04:08:37 | 25 Portola/Bayer/Janssen issue. |

**OFFICIAL TRANSCRIPT**

1            But our goal on the plaintiffs' side is to get the
2   documents for a couple of reasons.  One, it's been months to get
3   the documents.  And I know Portola has worked with us, and I'm
4   not criticizing Portola for that delay, but we've got a discovery
5   cutoff deadline of October 14, and we've got a PSC report
6   deadline of that day.  And in order to utilize this which we've
7   been after for several months now, we've got to get the documents
8   out and flowing.
9            One of the ways we suggested to avoid the problem was
10  mark them attorneys' eyes only right now.  If we have an issue,
11  after the documents come out, then we have meet-and-confers and
12  we can get to the Court if, in fact, there are issues because at
13  this point it's an esoteric issue because nobody has seen the
14  documents.
15           So I'll turn this over to Mark and let him make his
16  issue, whatever it may be.
17           MS. SHARKO:  Judge, this is Susan.  It might be easier
18  if I go next because hopefully --
19           THE COURT:  Yes, go ahead.  I think so, Susan.
20           MS. SHARKO:  Here's the problem.  The proposal of
21  Portola and the plaintiffs is that these documents, which can be
22  marked attorneys' eyes only by Portola unilaterally -- and we
23  don't know how many there are.  First they said there weren't
24  that many.  Then they said there could be thousands.  These
25  documents can be used -- shown by the plaintiffs to their

**OFFICIAL TRANSCRIPT**

experts. But on the other hand, Janssen and Bayer cannot let anyone from their client look at the documents even though a number of our company employees will likely give expert testimony.

And it really handicaps us, especially given the short period of time left we have in discovery, to have all these documents out there that we can't get advice on, that we can't share with anyone at our company, not even the internal lawyers.

So what we suggested, as a way to short-circuit this and expedite it, is let me and Bayer's counsel look at the documents and see if there really is a problem. I suggested -- we suggested that Mr. Lambert bring them to New Orleans on Monday or he can send them to me. I won't send them further outside my law firm. And we'll look at them and see if it really is a problem that we can't share them with our company.

And if it is a problem, then I guess we'll have to impose on Your Honor to look at them *in camera*. But if it's not a problem, if they're not things we care to share, then we can move forward and I don't care if they're marked attorneys' eyes only.

But I really can't agree to attorneys' eyes only and my client's on trial. They are accused of wrongdoing and --

THE COURT: Right.

MS. SHARKO: -- this is evidence the plaintiffs may use against them.

```
04:12:10

04:12:32

04:12:42

04:12:56

04:13:09
```

1           THE COURT:  No, I got it.
2           A way of doing it is simply to provide attorneys' eyes
3  only for both sides, meaning, Lenny, you can only look at -- your
4  people, the plaintiffs, and the defendants.  And then if you feel
5  that you need some assistance, meaning you need to send it to an
6  expert, then let's bring it to court and I'll hear from Mark and
7  I'll hear from you-all.
8           It may not be an issue.  You may look at it and you may
9  not -- an expert may not even need it.  If they do, then tell me
10 these are the ones that you need to have experts look at.
11          I think Susan is --
12          MR. LAMBERT:  This is Mark Lambert.
13          THE COURT:  Okay.  Go ahead, Mark.
14          MR. LAMBERT:  I think that that would be the best way
15 to go because it will accomplish two things.  One, it will allow
16 us to start rolling out our production and getting this done.
17          THE COURT:  Yeah.
18          MR. LAMBERT:  At least the documents will be in the
19 hands of trial counsel.  They'll be accessible to expert
20 witnesses.
21          I understand Ms. Sharko's point about believing that
22 they have employee experts, but they also said on the
23 meet-and-confers that they have external retained experts.  Those
24 people can see these documents.
25          There are a lot of documents, because, you know, even

**OFFICIAL TRANSCRIPT**

1  in our meet-and-confers, we're trying to -- we're trying to, you
2  know, deliver on our duty as a subpoenaed party. So there are a
3  lot of documents. I think the idea of a preview is impractical
4  and will just slow things down. And the preview could wind up
5  being a set of documents that the parties have various
6  disagreements on, but it won't touch the -- a number of other
7  documents that can't be effectively previewed.
8        THE COURT: So what are you saying, Mark? You're okay
9  with Susan's expert seeing it?
10       MR. LAMBERT: Yeah. If we can have Paragraphs 1 and 2
11 of the proposed order, we can put an "AEO" label on the documents
12 that are appropriately labeled as such, we can produce them, and
13 if there are disputes about the access afforded, we'll be happy
14 to deal with them.
15       MS. SHARKO: Judge, that doesn't solve the problem
16 because it's not good enough that I can go to some external
17 expert and have him or her look at it. I need to be able to
18 share them with the company.
19       So if the compromise that Your Honor proposes is no one
20 can share them, that both sides are limited just to lawyers and
21 then we come back, that's one thing. But what Mr. Lambert is
22 saying is they can go to the expert but they can't go to the
23 company, and that's just not right. I need to be able to share
24 them with the company.
25       MR. LAMBERT: Your Honor, the information that has

1  not -- that is internal to Portola and has not been provided to
2  the defendants is of competitive value to us and we stand as
3  competitors vis-a-vis the defendants.
4        And in addition to that, we have collaborations with
5  other third-party drug companies with respect to andexanet, and
6  there are a lot of documents where our internal work as a
7  scientific company involves references to both the work that
8  we're doing with andexanet related to Xarelto and also with
9  respect to other parties' drugs coming from people like --
10 entities like BMS/Pfizer and Daiichi.  And we have
11 confidentiality obligations to them, and we're trying to balance
12 those.
13        We are going to produce documents that are responsive
14 that have that third-party information in it, but that has to be
15 subject to AEO, to attorneys' eyes only.
16        And, again, we will hear a request to de-designate
17 things, a request to -- with respect to particular documents,
18 respective documents, that need to be seen when there's a basis
19 to do so.
20        But otherwise I feel like we're just going to get held
21 up in a dispute over the protective order and what labels can be
22 used, and I'm going to have to inform these other third parties
23 that the defendants are claiming a right to see their
24 confidential information, and then they're going to show up.
25        THE COURT:  Yeah.  The easiest thing to do, folks --

**OFFICIAL TRANSCRIPT**

04:16:30

04:16:46

04:17:11

04:17:27

04:17:42

1  Susan, you and Lenny have some commonality in that you want to
2  get the material as quickly as you can.  You want to take a look
3  at it.  It seems to me that we ought to do that.  And just have
4  you look at it and Lenny -- well, attorneys' eyes only.
5           And then if there's something that you feel you need
6  some information on, whatever it is, I'll get on it immediately
7  and I'll hear from you and hear from Mark and I'll hear from
8  Lenny and we'll deal with it.
9           I mean, that's the way of doing it because we're going
10 in blind.  We don't know what the material is.  You know, it may
11 be e-mails that nobody needs anybody to look at other than you.
12          MS. SHARKO:  Okay.  So then the documents just go to
13 me, Lenny, and Bayer's counsel, and nobody else.  And if we want
14 to use any of them further, to our clients or to experts, then,
15 if we can't resolve that with Mr. Lambert, we come to the Court?
16          THE COURT:  Yeah.  That's a way of doing it.
17          MR. DAVIS:  Obviously you're going to have people in
18 your office looking at them just like I'm going to have Roger
19 looking at them.  That's the obvious --
20          THE COURT:  Sure.  The attorneys are going to look at
21 them.
22          And both of you -- I mean, we've got people in this
23 lawsuit from the defendants as well as from the plaintiffs that
24 we're not -- you know, I mean, this is not your first rodeo in
25 this type of situation.  And you'll know whether or not you need

**OFFICIAL TRANSCRIPT**

```
04:17:59




04:18:17






04:18:39






04:18:53





04:19:07
```

1  some help or interpretation or information that the document
2  doesn't give you.
3       You know, some of the documents are not going to be of
4  concern to anybody but you.  I think we have to take it a step at
5  a time to see what we're talking about because I don't -- I don't
6  think anybody knows what we're talking about other than maybe --
7  you know, maybe Portola because neither one of y'all have seen
8  the documents.
9       So, Mark, I don't know how detailed you have studied
10 the documents, either, but it seems to me that it's fair to you
11 to have only the attorneys look at them.  And then if they say,
12 "Well, here are some that I need some help on," you say, "Now,
13 wait a minute.  I'm going to object to that."  And then I'll look
14 at them and I'll deal with it.  I'll listen to everybody and deal
15 with it in a way that we can handle it.  That's the way of doing
16 it.
17       MR. LAMBERT:  Yes, Your Honor.
18       THE COURT:  All right.  Lenny, get with Mark and Susan
19 and draft the order in that way, and then let's get the documents
20 circulated as quickly as possible, and we'll go to the next step
21 if need be.
22       MR. DAVIS:  Your Honor, Mark assured us earlier today
23 in a meet-and-confer that he's ready to start rolling the
24 documents out promptly.
25       THE COURT:  Yeah.

```
04:19:13

04:19:29

04:19:41
```

 1          MR. DAVIS:  So I think he's aware that the sooner the
 2  better --
 3          THE COURT:  Yeah.
 4          MR. DAVIS:  -- for us.
 5          THE COURT:  Yeah.  Well, I said the last time I
 6  appreciate Mark's cooperation.  We couldn't do it without him.
 7          So we'll work out something, Mark, that you're
 8  comfortable with in the same way --
 9          MR. LAMBERT:  I'm optimistic.
10          THE COURT:  All right.  Lenny, get with Mark and Susan
11  and give me that as quickly as you can.
12          MR. DAVIS:  We will try to turn it around to you as
13  promptly as possible.  Hopefully no later than tomorrow.
14          THE COURT:  Yeah, okay.  All right.  Thanks, folks.
15  Take care.
16          MR. DAVIS:  Thank you.
17          MS. SHARKO:  Thank you.
18          THE COURT:  You bet.
19                  (Telephone conference adjourned.)
20                            **CERTIFICATE**
21
22       I hereby certify this 15th day of September, 2016, that
    the foregoing is, to the best of my ability and understanding, a
    true and correct transcript of the proceedings in the
23  above-entitled matter.
24                                */s/ Mary V. Thompson*
                            _____
25                                Official Court Reporter

**OFFICIAL TRANSCRIPT**