```
1                        UNITED STATES DISTRICT COURT
                         EASTERN DISTRICT OF LOUISIANA
2
    *****************************************************************
3   IN RE:  XARELTO (RIVAROXABAN)          MDL 2592 "L"
    PRODUCTS LIABILITY LITIGATION
4
                                           OCTOBER 25, 2016
5

6   THIS DOCUMENT RELATES TO               JUDGE ELDON E. FALLON
    ALL CASES
7
                                           MAG. JUDGE MICHAEL NORTH
8
    *****************************************************************
9
                       TRANSCRIPT OF STATUS CONFERENCE
10           HEARD BEFORE THE HONORABLE ELDON E. FALLON
                     UNITED STATES DISTRICT JUDGE
11

12  APPEARANCES:

13  FOR THE PLAINTIFFS'                    MR. LEONARD A. DAVIS
    LIAISON COUNSEL:                       Herman, Herman & Katz, LLC
14                                         820 O'Keefe Avenue
                                           New Orleans, LA  70113
15

16                                         MR. GERALD EDWARD MEUNIER
                                           Gainsburgh, Benjamin, David,
17                                           Meunier & Warshauer
                                           Energy Centre
18                                         1100 Poydras Street
                                           Suite 2800
19                                         New Orleans, LA  70163-2800

20
    PLAINTIFFS STATE                       MS. DAWN BARRIOS
21  LIAISON COMMITTEE                      Barrios Kingsdorf &
    CHAIR:                                   Casteix, LLP
22                                         701 Poydras Street
                                           Suite 3650
23                                         New Orleans, LA  70139

24

25
```

```
 1   PLAINTIFFS:                    MS. SINDHU S. DANIEL
                                    BARON & BUDD, P.C.
 2                                  3102 Oak Lawn Avenue
                                    Suite 1100
 3                                  Dallas, TX 75219-4281

 4

 5   FOR THE DEFENDANTS'           MR. JAMES B. IRWIN, V
     LIAISON COUNSEL:              Irwin Fritchie
 6                                     Urquhart & Moore, LLC
                                    400 Poydras Street
 7                                  Suite 2700
                                    New Orleans, LA  70130
 8

 9

10   FOR THE DEFENDANTS:            MS. CHANDA A. MILLER
                                    Drinker, Biddle & Reath, LLP
11                                  One Logan Square
                                    Suite 2000
12                                  Philadelphia, PA  19103-6996

13
     SPECIAL MASTER:                MR. JACOB WOODY
14                                  BrownGreer PLC
                                    250 Rocketts Way
15                                  Richmond, VA  23231

16

17   Official Court Reporter:       Lanie M. Smith, RPR, CRR
                                    500 Poydras Street, B-275
18                                  New Orleans, Louisiana 70130
                                    (504) 589-7782
19

20

21

22

23

24
             Proceedings recorded by mechanical stenography,
25   transcript produced via computer.
```

1                              **I N D E X**

2                                                    **PAGE NO.**

3    Pretrial Orders                                      4

4    Case Management Orders                               6

5    Bellwether Selections                               6

6    Counsel Contact Information Form                     6

7    Plaintiff Fact Sheets                               7

8    Defendant Fact Sheets                               7

9    Service of Process on Certain Bayer Defendants      5

10   Bundling of Complaints/Answers/Responsive Pleadings  13

11   Preservation Order                                  13

12   Order Governing the Parties' Interactions with      13
     MDL Plaintiffs' Prescribing and Treating Physicians

13   Discovery                                           13

14   Discovery Issued to Third Parties                   13

15   State/Federal Coordination                          14

16   Matters Set for Hearing Following Status Conference  14

17   Next Status Conference                              14

18

19

20

21

22

23

24

25

<u>**P R O C E E D I N G S**</u>

(Call to order of the court.)

THE COURT:  Good morning, ladies and gentlemen.  Call
the case, please.

THE COURTROOM MANAGER:  MDL Number 2592, *In Re:
Xarelto Products Liability Litigation.*

THE COURT:  Counsel, make your appearances for the
record, please.

MR. DAVIS:  Good morning, Your Honor.  I'm
Leonard Davis from the law firm Herman, Herman & Katz,
co-plaintiffs' liaison counsel.

MR. IRWIN:  Good morning.  I'm Jim Irwin for
defendants.

THE COURT:  All right.  We're here today for our
monthly status conference, except for people on the phone.
I'll take the motions after this conference; and we'll give
them an opportunity, if they need to, to call in.

I met with the counsel for the lead liaison and
discussed the proposed agenda.  We take it in the order
proposed.

Anything on pretrial orders?

MR. DAVIS:  Your Honor, the joint report lays out a
number of issues specifically with respect to the first section
on pretrial orders.  There's a new pretrial order in the 10
series, in 10A and 10B.  It's actually not a pretrial order

1    that's new, but there's an order that was issued by the Court

2    and we specifically reference that in section 7, which deals

3    with service of process on certain Bayer defendants.  There's

4    an order that was issued by the Court which extends the time

09:08AM  5    for service of a summons and complaint pursuant to Rule 4(m) of

6    the Federal Rules of Civil Procedure and it's now -- for the

7    benefit of those who are on the phone and who have not yet

8    checked the Court's website to see orders, it extends the time

9    to run from the issuance of the summons by the clerk of court

09:08AM 10    for the filing of the complaint; and I make that announcement

11    so that folks are aware.  My office and Jerry Meunier's office

12    have received a number of phone calls with respect to service

13    issues and I remind people that matters are posted to the

14    Court's website and that with respect to service this issue

09:09AM 15    arose as a result of problems in the clerk's office in getting

16    summons out and I make that known to folks who may be listening

17    on the call.

18         THE COURT:  Right.  But we had a problem because of the

19    influx of cases, but I'm told by the clerk's office that

09:09AM 20    they're current now and, so, we will be able to move it along

21    quite well.  We have about 14,000 cases that have been filed,

22    individual cases; but they're coming in now just regularly as

23    opposed to groups, as we've seen early on.

24         MR. DAVIS:  And, Your Honor, the order that was issued

09:09AM 25    wasn't posted in the series of a pretrial order.

1       THE COURT:  Right.

2       MR. DAVIS:  And, so, those who need access to it, it's

3  Rec Doc. Number 4217 and I may ask if that can be posted to the

4  Court's website.  That might be helpful.

09:09AM  5       THE COURT:  We'll do that.  Anything on the Case

6  Management Orders?

7       MR. DAVIS:  Yes.  The only other one that's new is

8  Pretrial Order 12B, which applied specifically to a third party

9  production by Portola; and that one is posted.

09:10AM 10       The second item on the agenda is Case Management

11  Order Numbers 2, 3, 4 and 5.  Pretrial Order 2A -- I'm sorry.

12  CMO, Case Management Order 2A was entered by the Court on

13  September 21st, 2016.  That order sets the four trials, the

14  four bellwether trials.  Specifically it gives the dates of the

09:10AM 15  first trial, which is March 13th which is in the Eastern

16  District of Louisiana, the April 24th which is another Eastern

17  District of Louisiana, the May 30th which is in Mississippi and

18  the other yet to be determined, the Texas; and it also provides

19  cutoff dates and that's in a case management order.

09:11AM 20       Your Honor, I have nothing further to report on

21  bellwether selection.

22       Counsel Contact Information Forms, we continue to

23  receive those and remind people that if they're new to

24  litigation, to please send those in.

09:11AM 25       With respect to Plaintiff and Defendant Fact

1   Sheets, there are various motions that are set after the status

2   conference on alleged deficiencies, and I know that BrownGreer

3   is present to make a report.

4         THE COURT:  Right.  Yes, let's get a report.  The fact

09:11AM   5   sheets are very important both for those in court as well as

6   those outside of court on the phone.  The information that's

7   provided is really not that difficult of information to obtain.

8   I have to enforce those.  I want to give time to do so; but if

9   I get the impression that there's no interest in supplying the

09:12AM   10   information, then I'm going to have to dismiss the case because

11   you have to show initially that you're taking the medication.

12   That's part of the fact sheets.  And some of the other aspects

13   of the fact sheets, it's really easy to fill out; and if you

14   need some help, there's opportunities to get help.  Call

09:12AM   15   liaison counsel and they'll put you in touch with someone who

16   can give you help, but we've got to get those fact sheets

17   filled out.

18         Jake, what's the report?

19         MR. WOODY:  Good morning, Your Honor.  My name is

09:12AM   20   Jake Woody from BrownGreer.  I have a brief report on Plaintiff

21   Fact Sheets.

22         So far we've received 12,599 Plaintiff Fact

23   Sheets.  We have another 1,375 in progress, which brings our

24   total to 13,974, and I think that's in line with what the

09:12AM   25   clerk's office reports on the number of cases.

1          This is our sort of submission timeline, as you

2     can see.  Up until July of this year, we received about 500

3     fact sheets a month.  In July that number jumped to 1500 and in

4     August it jumped to 3500 and that was not unexpected.  As you

09:13AM  5     recall, the bundled complaint deadline was in May, which put --

6     the Court received a large number of new complaints which, in

7     turn, leads to new fact sheets.  But as can you see, the

8     numbers returned down to normal in September; and in October we

9     received 375 so far with just a few days left in the month.

09:13AM 10          Despite that spike in submissions, our

11     demographics have remained largely stable, 51 percent male,

12     49 percent female.  As you can see from the age chart there in

13     Rows 4 and 5, 53 percent of all plaintiffs are between the age

14     of 60 and 79.

09:13AM 15          THE COURT:  How does that square with our discovery

16     pool?

17          MR. WOODY:  I'm glad you asked that.  I have that

18     information here.  This is our comparison with the discovery

19     pool.

09:14AM 20          51 percent of the MDL is male.

21          52 percent of the discovery pool is male.

22          53 percent, as I just mentioned, is between 60

23     and 79; and 77 percent of the discovery pool is that same age.

24          59 percent of the MDL allege a GI bleed.

09:14AM 25     72 percent of the discovery pool allege that injury.

1          And 52 percent of the MDL took Xarelto for the

2     reduction of risk of stroke and 72 percent of the MDL, of the

3     discovery pool, took it for that.

4          I do want to mention that the discovery pool was

09:14AM 5     weighted a bit to try to find people with these

6     characteristics.  So, that's why the numbers in the discovery

7     pool are a little bit higher than the MDL; but the

8     characteristics that were weighted are the ones that are most

9     prevalent in the MDL.  So, the cases that are eligible for

09:14AM 10    bellwether are representative of the MDL as a whole.

11          THE COURT:  Yes, I think that's one of the advantages

12     of the centrality is that it gives you an opportunity to at

13     least capture the census of the litigation in a smaller group,

14     which we call the discovery pool; and then from that discovery

09:15AM 15    pool after those cases have been discovered, then bellwether

16     cases are selected.  And when you select them from the

17     discovery pool that mirrors the census of the litigation, you

18     get a better shot, a better opportunity to at least get some

19     information for your clients and for you also with the

09:15AM 20    bellwether cases.

21          MR. WOODY:  Yes, sir.

22          I do want to touch briefly on PTO 27 which the

23     Court entered on April 22nd of 2016.  PTO 27 changed the fact

24     sheet obligations a bit.  It required that plaintiffs only

09:15AM 25    submit Section 1 of the Plaintiff Fact Sheet, produce proof of

1    use records and proof of injury records and also medical

2    records and pharmacy records.  It lessened the number of

3    questions and the number of documents that plaintiffs had to

4    submit.

09:15AM    5         It's been six months; so, I can give a little

6    analysis of what that's done to the fact sheet process.  Before

7    PTO 27, only 20 percent of plaintiffs were able to start and

8    submit a fact sheet within two days.  After PTO 27, that number

9    went up to 26 percent.  So people are able to start and

09:16AM   10    complete the fact sheet a little bit faster, which is

11    intuitive, because it's shorter and it's less information to

12    provide.  But it did, in fact, make it faster for people to

13    submit.

14         Before PTO 27, 49 percent of plaintiffs received

09:16AM   15    a deficiency notice from the defendant.  After PTO 27, that

16    number dropped down to 22 percent.  So, it looks like the

17    quality of the information that people were able to provide

18    improved, they received fewer deficiencies and were able to

19    move through the fact sheet process faster.

09:16AM   20         Finally before PTO 27, 56 percent of everyone who

21    got a deficiency notice got more than one.  They got a

22    deficiency notice, they amended their fact sheet and then they

23    got another deficiency notice after that.

24         After PTO 27, the percentage of people who got

09:17AM   25    multiple dropped down to 10 percent.  So, again, another

1    indication that PTO 27 made it faster to do the fact sheet and

2    also improved the quality of the answers on the fact sheets

3    themselves.

4         THE COURT:  Yes.  And I think we've learned from the

09:17AM  5    fact sheets that there is some information that is critical

6    information to at least allow someone to participate in the

7    litigation.  That's the type of information that we ought to

8    get immediately and then the other information may be a little

9    more problematic in the sense that it takes a little more time

09:17AM 10    to gather the information called for.

11              So, the fact sheets now are somewhat divided in

12    the sense that there's some opportunity to get the information

13    quickly that is critical and then give time for the information

14    that's takes a little more time to collect.

09:17AM 15         MR. WOODY:  Yes, sir.

16              Finally just some brief statistics on MDL

17    Centrality.  We have 426 firms using the system, over 1600

18    individual people.  We've been able to identify 117 duplicate

19    plaintiffs.  Just based on the Social Security number, we can

09:18AM 20    tell it's the same person represented by different firms.  We

21    notify each firm and let them work that out.  We have over

22    155,000 documents uploaded and stored in the system.  The

23    largest file is one gigabyte, which is a very large file.  I

24    mention that only because we expect large files, medical

09:18AM 25    records and that sort of thing.

1        And finally we have served 5,876 pleadings that

2    we received through the ECF system.  We send an e-mail to all

3    counsel notifying them that something new has been filed and

4    actually attach the document and store those in our system and

09:18AM  5    they're always searchable and available if anyone ever needs to

6    go look for a motion or an order.

7        THE COURT:  Good.

8        MR. WOODY:  Thank you, Your Honor.

9        THE COURT:  Thank you, Jake.  I appreciate it.

09:18AM 10        MR. DAVIS:  Your Honor, my office and Jerry's office

11    continue to get calls from individuals with respect to fact

12    sheet issues and we continue to encourage plaintiffs' counsel

13    to fill out their fact sheets and submit what they can and

14    recognize that if it's incomplete that they can always

09:19AM 15    supplement and they have an obligation under the order to

16    supplement; but we do encourage all plaintiffs' counsel to

17    timely submit that profile form.

18        THE COURT:  Yes.  And I reinforce that.  If you have

19    information, don't wait until you get the last question

09:19AM 20    answered until you submit.  If you've got some information,

21    submit it.  I'll give you an opportunity to supplement; but if

22    you don't do it at all, then that's an indication to me that

23    you're not interested in participating.  So, if you have some

24    information, give it.  I'll give you an opportunity to

09:19AM 25    supplement, but at least get that information in.

1          MR. DAVIS:  With respect to Item 8 on the status

2     report, the Court is well aware and I believe counsel should be

3     aware that the clerk's office no longer accepts bundled

4     complaints; but you still have your obligation on profile forms

09:20AM   5     and to continue the process in the litigation.

6               With respect to Number 9, there's nothing to

7     report on Preservation Order.  It's on there so that folks are

8     aware of that.  We encourage you to look at Pretrial Order 15.

9               With respect to Number 10, there's nothing to

09:20AM  10     report.

11               On Number 11 there are a number of ongoing

12     discovery items.  The parties continue to meet for biweekly

13     discovery conferences with the Court which are very helpful and

14     we'll take those issues up as needed in those conferences and

09:20AM  15     folks are welcome to look at the Joint Report if they want to

16     see what discovery is ongoing because they're laid out in the

17     report, but I don't think that there's a need for me to burden

18     the Court with each of those items.

19          THE COURT:  Just for everyone's information, I have

09:21AM  20     meetings every two weeks with liaison lead counsel to talk

21     about any discovery issues; and we resolve those discovery

22     issues at that time.

23          MR. DAVIS:  With respect to Item 12, third-party

24     discovery is ongoing.

09:21AM  25               I'll point out two items that just need to be

1    updated to the Court.  With respect to PhRMA, documents did, in

2    fact, come in and they've been provided to the defendants and,

3    so, that production is ongoing and I know Your Honor was

4    involved in PhRMA issues previously; so, you have an update on

09:21AM  5    that.

6          With respect to Portola, they also have made

7    productions and those documents are in the process of being

8    reviewed.  And if there are any other issues with respect to

9    third parties, we will let you know in the discovery biweekly

09:22AM 10    conference.

11          There are a few other items that are reported in

12    the Joint Report as to third parties, but there's nothing that

13    needs to be further addressed with those matters unless

14    defendants may have something that they want to add to that.

09:22AM 15          MR. IRWIN:  No.

16          MR. DAVIS:  Your Honor, with respect to the

17    state/federal coordination matter, I've been advised that in

18    Pennsylvania the bellwether picks are due on October the 31st

19    and they have categories that are both plaintiff and defendant

09:22AM 20    picks and they have ten trials that are set beginning

21    September 2017.  I also have been told that they go by *Frye* as

22    opposed to *Daubert* and that Judge New will be dealing with his

23    issues is what I've been told.

24          And I know Ms. Barrios is present to give a

09:23AM 25    report, but I was asked yesterday in our PSC meeting where we

1    had some coordination on that issue to report that.

2         MS. BARRIOS:  Thank you, Mr. Davis.

3              Good morning, Your Honor.  Dawn Barrios for the

4    federal/state committee.

5              I'm going to just tag onto things that Lenny said

6    because I got an e-mail asking me to specifically read things

7    to Your Honor; so, I always do what people ask me to do.  So,

8    I'm going to read it.

9              Judge New entered the bellwether CMO 11 last

10   week.  The bellwether plan was heavily negotiated for a month

11   by the parties.

12             The parties are in the process of picking a core

13   discovery pool of 24 cases by October 31st.  Pennsylvania would

14   like to thank PSC members Ellen Relkin and Sindhu Daniel for

15   their assistance in the bellwether case selection process.

16             The first trail in Pennsylvania is

17   September 29, 2017.  There will be two cases tried every month

18   beginning September.  Judge New was advised that the MDL trial

19   had moved its bellwether trial dates by a month.  Judge New was

20   very clear that while he was pleased the MDL was ahead of

21   Pennsylvania, he would not move his trial date now that they

22   are all set in case the MDL moves the trials again.

23             And, lastly, the defendants opposed the

24   plaintiffs' request for a coordinated generic expert schedule

25   with the MDL.  Judge New agreed with the defendants and opted

1    not to coordinate at this time.  The parties in Pennsylvania

2    are to meet and confer to propose a staggered schedule

3    including generic expert report disclosures and briefing.

4            That's the end of what I was requested to read.

09:24AM  5            Your Honor, I had given your law clerk and

6    provided to the parties the state court stats as of

7    October 24th.  Again, I'd like to thank the defense for their

8    help in providing it to me.  I would also like to thank

9    Pennsylvania's co-lead counsel because they provide

09:25AM 10    information, as does Mindy Nokes in Ellen Relkin's office.

11            The largest things that have happened is that the

12    JCCP has now been effectuated and all the cases now are before

13    Judge Kenneth Freeman.  California currently has 50 Xarelto

14    users.  And I would like to count users as opposed to cases,

09:25AM 15    because so many cases have multiple users.  That is 2 percent

16    of all the state court stats.  California will have its first

17    status conference mid-December.

18            Delaware has a large number of cases as well

19    Your Honor.  There's 195 Xarelto users in Delaware court, and

09:25AM 20    that is 11 percent of the state courts' cases.

21            In Florida a new judge has been appointed and

22    I've highlighted that on your copy and on everyone's copy,

23    Your Honor, because that would mean if you wanted to reach out

24    to that judge, that judge would be the one to reach out to.

09:26AM 25            THE COURT:  Okay.

1    MS. BARRIOS:  Missouri was a total of 153 Xarelto

2  users.  That's 9 percent of the cases outside the MDL.

3    And by far Pennsylvania has the most.  They have

4  1285 users, and that is 75 percent of all the state court

09:26AM 5  cases.

6    In total there are 1285 cases filed outside the

7  MDL, and the number of Xarelto users is 1694.

8    Thank you, Your Honor.

9    THE COURT:  Thank you very much; and again, if I can be

09:26AM 10  of any help or service to any of the judges on any of those

11  cases, I would be happy to do so.  We've got a number of forms.

12  Everything is on my website and if you need any information

13  that's not on the website, please call me and I'll make sure

14  you have it.

09:27AM 15    MR. DAVIS:  Your Honor, there are two matters that I'm

16  aware of that are set for hearing after the status conference.

17  One is the alleged deficiencies and Ms. Daniel is here to help

18  us with that.  Those are rollovers from last month.

19    THE COURT:  Right.

09:27AM 20    MR. DAVIS:  Then there's a motion to dismiss without

21  prejudice the matter of Shayne Potter, and I don't know if

22  counsel is on the line for that.

23    THE COURT:  Okay.  Well, we'll take a break at this

24  time.

09:27AM 25    Let me give you the next dates.  November the

1   29th is the next date and December 20th, both at 9:00 A.M.

2   I'll meet with liaison counsel at 8:30 as I always do.

3            Okay.  Anything else before we go into the

4   motions?

09:27AM  5        MR. DAVIS:  Thank you, Your Honor.

6        THE COURT:  I'll be back in about 5, 10 minutes.

7        THE COURTROOM MANAGER:  All rise.

8                    (Court is in recess.)

9        THE COURT:  Be seated, please.

09:41AM 10           We have a number of motions, and people are on

11   the phone.  I'll take the motions one at a time; and if anybody

12   on the phone has to speak to that motion, they can do so.

13   Otherwise, let's everybody listen.  Let's take the first

14   motion.

09:41AM 15        MS. DANIEL:  Good morning, Your Honor.  Sindhu Daniel

16   for the plaintiffs.

17        MS. MILLER:  Good morning, Your Honor.  Chanda Miller

18   for the Janssen defendants.

19        MS. DANIEL:  Your Honor, there were 14 cases that were

09:41AM 20   discussed at the order to show cause hearing held on

21   September 20th; and it was decided that they would be continued

22   until today.  There are attorneys on the phone who are aware of

23   the circumstances, and they would like to address their cases

24   specifically.

09:42AM 25           Three of those cases have fallen off of this

1      list, Your Honor.  Leslie Jones, Tamisha Verner and

2      Ericka Williams are no longer on this list.

3              There are six cases where plaintiffs are

4      represented by counsel; so, there are three firms representing

09:42AM  5   those six cases and I believe they should be all on the line.

6              If we want to take the first case, which is

7      Robin Arnoth, I know Mr. Pinedo is on the line representing

8      those plaintiffs.

9              MR. PINEDO:  Yes, Your Honor.  Chris Pinedo on behalf

09:42AM 10   of the plaintiffs.

11             THE COURT:  Okay.

12             MR. PINEDO:  We had originally filed this lawsuit and

13     were retained by Gerard Arnoth, the husband of Robin Arnoth,

14     deceased; and we started going down the road to get the probate

09:42AM 15   proceedings, whereupon we found out a fact our client did not

16     tell us and that was that he and Ms. Arnoth were divorced.  So,

17     he no longer has standing to appear in a representative

18     capacity for the estate.  We have made multiple calls to the

19     heirs to find somebody responsible to be able to represent the

09:43AM 20   estate.  We have talked to at least one heir who does not have

21     mental capacity and, therefore, we would request that this case

22     be dismissed without prejudice and plaintiffs would agree that

23     if it was re-filed, that it be re-filed in the MDL.

24             THE COURT:  What's your input there?

09:43AM 25             MS. MILLER:  Your Honor, we wouldn't agree with that.

1    The complaint was filed in December of 2015.  So, at this point

2    they've had since December 2015.  We sent them overdue notices

3    beginning in January.  They received five; so, they've had

4    ample opportunity to try to work this out.

09:43AM  5    THE COURT:  What I will do is let me pass this one

6    again for 30 days, give you another opportunity to tell them to

7    do something or the case is going to be dismissed.  Blame it on

8    me because it is my fault, if there is any fault.  It's a

9    question of getting the material.  I want to give you enough

09:44AM 10    time.  I don't want to dismiss any case in which a person is

11    interested in proceeding.  But there are individuals -- and we

12    all have to recognize that -- who initially want to be in a

13    litigation, but they change their mind halfway through or

14    partway through and they don't want to deal with it anymore.

09:44AM 15    They get on with their lives, and I have to respect that too.

16    But if you want to be in the litigation, you've got to follow

17    the rules of the litigation.  We need the material that's

18    called for; and if you can't get it all, get what you can and

19    send it to the Court.  I'll understand that.  But if you don't

09:44AM 20    do anything, that's an indication that you're not interested in

21    participating.  So, let's tell them that; and I'll give you

22    another 30 days to emphasize to them that the case is going to

23    be dismissed.

24    What's the next one?

09:45AM 25    MR. PINEDO:  Yes, Your Honor.  I have told them unless

1    a representative comes forward, it will be dismissed.  We will

2    reach out again.  I will represent to the Court we have made

3    multiple, multiple attempts; but I will reach out one more

4    time.  We have not been able to have anybody step up to the

09:45AM   5    plate who is qualified to take out an administration.  But we

6    will attempt again, Your Honor.

7        THE COURT:  All right.  Next time detail all of the

8    things that you've done so that's in the record.  I know you're

9    doing your best, and it's not any reflection on you.  You're

09:45AM   10   doing your very best to get your client to cooperate; so, be

11   prepared to detail into the record all of the material, all

12   that you've done, all the information you have regarding how

13   you've tried to contact them and so forth.

14        Okay.  Thank you --

09:45AM   15       MR. PINEDO:  Your Honor --

16       THE COURT:  -- very much.

17       MR. PINEDO:  (Inaudible) as opposed to verbal, because

18   it might take --

19       THE COURT:  No, verbal is fine.  No, you can do it

09:46AM   20   verbally.

21       MR. PINEDO:  Thank you, Your Honor.

22       THE COURT:  Yes.  Okay.

23       MS. DANIEL:  Chris, if you want to go into the next

24   case, it's Barbara Dunlap.

09:46AM   25       MR. PINEDO:  On the Barbara Dunlap case, we have made

1    multiple attempts to the client to get the information.  She

2    did not respond and then finally we sent her a form to sign

3    asking for permission to dismiss the case without prejudice.

4    She signed that form, sent it back to us and that's why we're

09:46AM  5    asking this Court to have the case dismissed without prejudice,

6    because the client has consented to it and we would ask that --

7    we are willing to agree to any condition that if she does

8    re-file, it will be within the MDL.

9         MS. MILLER:  This is another case, Your Honor, that was

09:46AM 10    filed in December of 2015.  We've sent them four notices since

11    that time notifying them that the PFS was deficient and overdue

12    and would not agree to a dismissal without prejudice or --

13         THE COURT:  Chris, let me do the same thing.  I'll give

14    you another 30 days to tell the lady that it's going to be

09:47AM 15    dismissed with prejudice and then just be prepared orally to

16    tell me what you've done and how you've done it and what

17    response, if any, you've gotten.  We'll pass it for 30 days to

18    give you another opportunity.

19         MR. PINEDO:  Yes, Your Honor.  I will contact this

09:47AM 20    client again.

21         THE COURT:  All right.  Thank you, Chris.

22         MS. DANIEL:  Chris, your last case is Louise Sells.

23         MR. PINEDO:  Louise Sells.  We have reached out to him

24    multiple times.  He says he has sent back the information, and

09:47AM 25    we haven't got it.  We've sent it to him again.  We even sent

1   him, since he had not responded to us, a form asking him to

2   give us permission to dismiss his lawsuit.  This is the son,

3   because Louise Sells has passed away and, so, we had sent

4   information to Cory Sells, who had retained us.  And then we

09:48AM   5   also sent him a disclosure asking for permission to dismiss the

6   lawsuit, and he did not send that back.  I'll represent to the

7   Court that we have attempted to call him somewhere between 10

8   and 15 times; and we have written letters to him probably 7 to

9   10 times.  And when we get him on the phone, he says, "I will

09:48AM   10   send it" or "I have sent it," we don't get it and then we turn

11   around and call him again.

12          But the crucial fact for the Court to know is

13   that we sent him a waiver giving us permission to dismiss the

14   lawsuit and he did not sign that either; so, I'm not in a

09:48AM   15   position to agree to dismissal with prejudice for this

16   particular client because I have not gotten that back from him.

17   I would request that the Court dismiss it without prejudice and

18   that if it is re-filed, that it be re-filed within the MDL.

19          THE COURT:  Well, the response is going to be the same,

09:48AM   20   I'm afraid; so, I'll give you one last time to contact that

21   lawyer -- or that client and then be prepared to tell me all of

22   the things that you've done and the fact that they haven't

23   responded and then I will dismiss it.

24          MS. DANIEL:  The next case, Your Honor, is

09:49AM   25   Isabella Copes and Ryan Bradley from the Bradley Law Firm, I

1    believe, is on the line.

2         MR. BRADLEY:  Good morning, Your Honor.  I do have

3    Isabella Copes and also Roberta Usher, which is line item 12;

4    and they both kind of suffered the same kind of analysis here.

09:49AM  5    Both are cases we got hired right before we chalked up the

6    statute of limitations and did everything we could to

7    investigate the case and thought we had a good-faith basis to

8    file the case based upon the client's representation that a

9    hemorrhagic stroke had occurred.  We ordered medical records

09:49AM 10    immediately.  Unfortunately, you know, we couldn't get the

11    records within time.  So, it was better to be safe than sorry.

12    We filed in anticipation that the medical records would flesh

13    out that, yes, there was a hemorrhagic stroke.  It turns out

14    that there was not a hemorrhagic stroke in both of these cases;

09:50AM 15    so, it does not fit the pattern of the form complaint in this

16    case for the MDL.

17         So, we are seeking to dismiss both of these cases

18    without prejudice and we've notified both clients here that the

19    Court may dismiss with prejudice, but we would ask for it to be

09:50AM 20    dismissed without so they could proceed if they wished in a

21    different forum on a different type of claim.

22         THE COURT:  All right.

23         MS. MILLER:  Your Honor, the Copes case was filed in

24    November of 2015, and they've been on notice for -- the first

09:50AM 25    notice was sent in May of 2016.  They have had more than enough

1    time.  It's the same with Roberta Usher's case.  The complaint

2    was filed on January 2016, received the first notice of

3    deficiency in May of this year; so, in both cases they've had

4    plenty of time to provide proof of injury.

09:51AM 5         THE COURT:  I think you've done all you can for the

6    client; but this case, they have been aware that it's going to

7    be dismissed with prejudice.  There's an opportunity for them

8    to have responded; they didn't, other than the way that you

9    said it.  It seems that this case ought not to be in this

09:51AM 10   proceeding; so, I'll dismiss it with prejudice.

11        MS. MILLER:  Thank you, Your Honor.

12        MS. DANIEL:  For Gloria Robinson, Your Honor, is

13   anybody on from Kennedy Hodges.

14        MR. GREEN:  Yes.  This is Donald Green representing

09:51AM 15   Gloria Robinson.

16             So, Your Honor, we have a pending amended motion

17   to withdraw as counsel; and I think it's also subject to the

18   show cause order as well.  We were asking that the motion to

19   withdraw as counsel be addressed first before any action is

09:51AM 20   taken to dismiss the case.

21        THE COURT:  Donald, this is what I'm going to do.  I'm

22   not going to dismiss the case at this point.  I'll give you

23   another 30 days to get to the client and tell them that I'm

24   serious about it.  If they have any information at all, they

09:52AM 25   can give it to you; and you submit that.  If they don't do

1   anything at all, then I'm going to interpret that as their

2   indication that they don't want to proceed in this case; and

3   I'll just dismiss it with prejudice.

4              Advise them of that and if you can't get their

09:52AM  5   cooperation, then next 30 days, the next time we have a

6   conference, be prepared to tell me all that you've done and

7   whatever their response is; and I'll have to take that into

8   consideration.

9        MR. GREEN:  Your Honor, we have been able to -- we did

09:52AM 10   reach her back on October 12th.  We had tried multiple times to

11   call her, sent letters, all of that, of course.  And we finally

12   did talk to her, and she was very abrupt on the phone.  I mean,

13   this goes back to the motion to withdraw as counsel.  She has

14   been very uncooperative.  We've left a lot of messages.  We've

09:53AM 15   actually talked to her on the phone, and she's hung up on us

16   before.  That's why we're intending to withdraw as counsel.

17   Now, do you want to address that pending motion?

18        THE COURT:  Well, what I'm telling you is that if you

19   want to withdraw from counsel, let's have another counsel

09:53AM 20   substitute for you so that I don't -- so that I'm not dealing

21   with someone pro se.  They hired you originally.  They must

22   have wanted a lawyer.  If they want another lawyer, let's get

23   another lawyer involved in it.

24              But if they're not going to participate, then I

09:53AM 25   don't want to be in a position of having somebody -- you're

1    representing her now.  I'd like you to tell her that if she

2    wants another lawyer or if she wants to speak to the Court, she

3    can do so; but I can't have somebody not even respond to their

4    own lawyer and still be in the case.  That's not fair to her;

09:54AM   5    it's not fair to the Court; it's not fair to anyone, including

6    the defendant.  So, I'd like to give her an opportunity.

7              I don't like to dismiss these cases with

8    prejudice before I give them enough opportunity to respond.  If

9    they want another lawyer, let them get another lawyer.  If they

09:54AM  10    have some information, let them give the information that they

11    have and we'll take it piecemeal; but if they don't want to

12    participate at all, if they don't respond to their own lawyer,

13    but they don't want to get another lawyer, but they don't want

14    to respond to the Court's -- to give the information to their

09:54AM  15    own lawyer, then I have to interpret that as somebody who is no

16    longer interested in proceeding with the case.

17              MR. GREEN:  That's understandable, Your Honor.  We have

18    mentioned to her before -- we have requested in voicemail

19    messages and in letters that she -- that we've announced our

09:55AM  20    intention to withdraw and we have advised her to find other

21    counsel and, of course, we haven't received a response on that

22    either.  But we'll continue to try.  We will continue to try to

23    get ahold of her and let her know what's going on and hopefully

24    we can get a response from her one way or the other.

09:55AM  25              THE COURT:  All right.  Thank you, Donald.

1          MR. GREEN:  Thank you.

2          MS. DANIEL:  Your Honor, the remaining five cases are

3     all pro se.  I will read them off.  If anyone is on the phone

4     after I am done reading the list, you can speak to the Judge.

09:55AM  5               Arin Cunningham, Clifford Howard, John Lynn,

6     Wayne Muldrow and Lukesha Terrell.

7                    Are any of you on the call?

8          MR. MULDROW:  Wayne Muldrow.

9          THE COURT:  Okay.  Why don't you tell us about it, sir.

09:55AM 10         MR. MULDROW:  The last time we spoke, you gave me some

11    extra time to try to find some evidence; but I spoke with, like

12    I told you, some people in town here, my lawyer.  My doctor has

13    retired since the Xarelto was issued.  He has dementia, so I

14    heard, and a lot of his records were destroyed in several

09:56AM 15    floods that we've had here; so, there's nothing I can do, sir.

16    I don't -- I can't have any proof or anything on anything.  I

17    don't know what to do.

18         THE COURT:  Could you get an affidavit or something

19    from him saying that he prescribed it, that he gave it to you

09:56AM 20    or prescribed it for you?

21         MR. MULDROW:  Well, I was trying; but they said since

22    he has dementia, he's not capable of doing that now.  If I

23    could have gotten to him before that, he could have done it,

24    they said; but he's not allowed.  He's not going to sign

09:56AM 25    anything now because he has been diagnosed with dementia.

1        THE COURT:  I see.

2        MR. MULDROW:  Yes, sir.

3        THE COURT:  Yes.  Well, you're not going to be able to

4    prove it.  If you stay in the case, you're going to be

5    dismissed eventually because you're not going to be able to

6    prove that you've even taken the drug or that it was even

7    prescribed for you.

8        MR. MULDROW:  Yes, sir.  Yeah, I understand.  I

9    understand.  I was just following through because I did get

10   something in the mail to be on the conference call this

11   morning.  I was following through so you can do whatever you

12   need to do for me.

13       THE COURT:  Thank you very much for all of your help.

14   I'm going to have to dismiss your case with prejudice, but

15   you've done a good job in trying and you need to know that.

16       MR. MULDROW:  Yes, sir.  All right.  Thank you.

17       MS. DANIEL:  Thank you, Your Honor.  The list is

18   complete.

19       THE COURT:  Anything else?  Any other cases?

20       MS. DANIEL:  No, that's it, Your Honor.

21       THE COURT:  What's the other case?

22       MR. DAVIS:  Your Honor, I think that's it on the cases

23   that we've been handling.  I want to thank defendants and

24   Sindhu for all their efforts in minimizing the Court's

25   involvement in these matters, and I think it's been helpful as

1    we've gone through this.

2              THE COURT:  Right.  Prepare an order for me to sign

3    dismissing the cases with prejudice so that we --

4              MS. MILLER:  Yes, we will, Your Honor.

09:57AM    5              MR. RUSSELL:  Your Honor?

6              THE COURT:  Go ahead.

7              MR. RUSSELL:  My name is Bill Russell, and I'm with the

8    firm of Sommerman, McCaffity.  I was told that we had three

9    cases that were pending on here too.

09:58AM   10              THE COURT:  Hold on a moment.

11              MS. DANIEL:  You don't have any cases on this order

12    today.

13              MR. RUSSELL:  Okay.  Borlandelli, Cho and Thorpe?

14              THE COURT:  Sindhu, do you know what he's saying?

09:58AM   15              MS. DANIEL:  No, we can't hear him.

16              MS. MILLER:  Can you repeat the names again, please?

17              MR. RUSSELL:  Yes.  One was Shelley Borlandelli and --

18              MS. DANIEL:  No.  No.  Your cases are not on this list.

19    You can call my office, Sindhu Daniel at Baron & Budd; and I'll

09:58AM   20    be happy to discuss it with you.

21              MR. RUSSELL:  All right.

22              MS. QUINLIVAN:  Your Honor, this is Meghan Quinlivan on

23    behalf of Shayne Potter.  I believe our motion to dismiss is

24    also pending for today.

09:58AM   25              MR. DAVIS:  On the prior matter, I believe they're on

1    the motion to withdraw as counsel list; and if they would call

2    my office -- this is Leonard Davis, plaintiffs' liaison

3    counsel.  If you would call my office, I'll address that.

4          My appreciation is that the Court intends on

09:59AM  5    addressing the motions to withdraw as counsel at the next

6    status conference.

7          MR. RUSSELL:  Okay.

8          MS. HEACOX:  Your Honor, this is Catherine Heacox from

9    Lanier Law Firm.  Just like the other gentleman, I have two

09:59AM  10   cases that I thought we were going to discuss today and that

11   was Smith and Payne.  Ruby Smith and Bonita Payne.

12         MS. MILLER:  Those were subject to a separate order

13   where they had until October 20th to submit a PFS or be

14   dismissed, and we did receive a PFS for Ruby Smith.  So, that

09:59AM  15   would be removed.

16         We did not receive a PFS for Bonita Payne.

17         MS. HEACOX:  Right.  So, what's going to happen with

18   Bonita Payne?

19         THE COURT:  We've passed that until October -- what is

09:59AM  20   it?

21         MS. MILLER:  Back in September you had given them 30

22   extra days and that was passed until today.

23         THE COURT:  What about that one?  What about the

24   information on that one, Catherine?

10:00AM  25         MS. HEACOX:  The client is a lot like some of the

1   others that were described here in that we sent multiple,

2   multiple letters.  We've called multiple times.  I personally

3   talked to the -- the last time we spoke or that I spoke to the

4   Court about this, the daughter had agreed to try to help and

5   then I spoke to her on the phone and she said, you know, "Now

6   is not a good time."

7            So, we set up another time and then she wasn't

8   there; so, we sent a letter to ask them to agree to dismiss.

9   They wouldn't sign it.  I do believe we've uploaded some

10  information at this point, but the client will not sign the

11  papers; so, I --

12       THE COURT:  Do you want another chance to do that,

13  Catherine?  Do you want me to pass it for another 30 days?  I

14  don't want to dismiss these cases if the individuals have a

15  reason or if they're upset about somebody passing or something

16  of that sort.  I want to give them time; but they have to

17  understand that if they are in the litigation, they have to

18  participate in the litigation.  They can't just join it and

19  then say, "Call me when the case is over."  I mean, they have

20  to actively participate.  It's not fair to you.  It's not fair

21  to the defendants or the Court, for that matter.

22       MS. HEACOX:  I agree with you a hundred percent.  And

23  if you're willing to give me another 30 days, I'll pull out all

24  the stops and see whether that makes a difference.

25       THE COURT:  Okay.  I'll do that.

1        MS. HEACOX: Thank you.

2        THE COURT: Let's pass it for 30 days. Thank you,

3  Catherine.

4             Anything else?

10:01AM 5        MS. MILLER: Nothing else, Your Honor.

6        MR. DAVIS: Shayne Potter is the other matter that's

7  set for hearing. There's a motion on that, a motion to dismiss

8  without prejudice.

9        MS. MILLER: Is counsel on the phone?

10:01AM 10        MS. QUINLIVAN: Yes. Good morning. This is

11  Meghan Quinlivan on behalf of the plaintiffs in the Potter

12  matter.

13        THE COURT: Okay.

14        MS. QUINLIVAN: We filed our motion to dismiss this

10:02AM 15  case without prejudice. There is no dispute that dismissal is

16  appropriate. The question is just whether it's with or without

17  prejudice. Our firm filed the complaint on Mr. Potter's behalf

18  on December 31st of last year; and a few days later on

19  January 4th, we learned that Mr. Potter had passed away several

10:02AM 20  days before the complaint was filed. He passed away on

21  December 19th. After we learned that, we attempted to

22  communicate with family members to notify them of the potential

23  claim; but we have not been retained to pursue a claim on

24  behalf of any potential beneficiaries; so, our request is to

10:02AM 25  dismiss the case without prejudice simply to preserve the

1    status quo with respect to the rights of any of those potential

2    plaintiffs whom we do not represent.

3              THE COURT:  I understand the issue.  What I'd like to

4    do with this one, I'll pass this for 60 days because it seems

10:03AM  5    that 30 days may be too soon because of the death in the

6    family.  But you have to advise the people that they have to

7    either hire you or hire another lawyer and proceed with the

8    case.  If they don't do that within 60 days, I'm going to

9    interpret that as an indication that they just do not want to

10:03AM  10   proceed with the case and I'll have to act accordingly and I'll

11   be dismissing it with prejudice.  So, I'll give you an

12   opportunity to talk to them.  Tell them that in 60 days I'll

13   need to hear from them or you, one way or the other.

14             MS. QUINLIVAN:  Okay.  Understood.  Thank you,

10:03AM  15   Your Honor.

16             THE COURT:  Thank you very much.

17                  Anything else?

18                  Okay.  All right, folks.  I'll see you-all next

19   time.

10:03AM  20             THE COURTROOM MANAGER:  All rise.

21             (WHEREUPON, the proceedings were adjourned.)

22

23

24

25                           *  *  *  *

1                    REPORTER'S CERTIFICATE

2           I, Lanie M. Smith, CRR, RPR, Official Court
Reporter, United States District Court, Eastern District of
3  Louisiana, do hereby certify that the foregoing is a true and
correct transcript, to the best of my ability and
4  understanding, from the record of the proceedings in the
above-entitled and numbered matter.

5

6                              /s/ Lanie M. Smith
                           Official Court Reporter
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25