UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | * * * | MDL NO. 2592 |
| | * | SECTION L |
| | * | |
| THIS DOCUMENT RELATES TO ALL CASES | * * | JUDGE ELDON E. FALLON |
| | * | MAG. JUDGE NORTH |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION REGARDING THE SUFFICIENCY OF DEFENDANTS' OBJECTIONS TO PLAINTIFFS' FIRST REQUEST FOR ADMISSIONS TO DEFENDANTS[1]

The Bayer and Janssen Defendants submit this memorandum in opposition to the PSC's motion that seeks to compel Defendants, through the discovery vehicle of requests for admissions (RFAs), to prematurely address the admissibility of over 1,600 documents, many of which will never be listed on the final exhibit list for that trial or any of the subsequent bellwether trials. Not only is this a waste of time and resources at this busy stage of this proceeding, but is also in violation of the schedule set forth in CMO 2A that was agreed upon by the parties and accepted by the Court.[2] CMO 2A establishes February 10, 2017 as the date for finalizing exhibit lists for the first trial and February 28, 2017 as the date for filing objections to

---

[1]  Plaintiffs' Motion is Rec. Doc. 4509.

[2]  CMO 2 sets forth the original dates for the exchange of exhibit lists and objections for the first bellwether trial. CMO 2A amends CMO 2; the deadline dates for exhibit lists and objections were changed to reflect a later start date. Both CMO 2 and 2A state that the exhibit lists are for the "First Bellwether Trial."

2812831-1

those lists; CMO 2 explicitly contemplates later deadlines for the exchange of similar information relevant to subsequent trials.[3] The PSC now seeks to circumvent those deadlines by attempting to compel Defendants to admit or deny that more than 1,600 deposition exhibits are:

    (1)    authentic under FRE 901(a);

    (2)    records of regularly conducted activity under FRE 803(6);

    (3)    records or statements of a public office under FRE 803(8);

    (4)    statements contained in a treatise, periodical or pamphlet under FRE 803(18); and

    (5)    statements by a person authorized to make a statement by a party under FRE 801(d)(2).

The deposition exhibit lists attached to the RFAs are vastly over-inclusive. There is no way that Plaintiffs will offer the more than 1,600 listed exhibits in the first bellwether trial. The PSC did not engage in any efforts to narrow that list prior to issuing the premature and burdensome requests. Further, the PSC asserted for the first time in its motion to compel that the Defendants' admissions on the deposition exhibits would make depositions of Defendants' experts more efficient. Even if true, the PSC did not engage in any efforts to narrow the list to any deposition exhibits relied on by Defendants' experts.

At the same time -- and paradoxically -- the lists for which PSC seek admissions are also under-inclusive. In footnote 1 to their RFAs, Plaintiffs expressly "reserve the right to submit additional requests for admissions addressed to the authenticity and admissibility of documentary evidence." In other words, after addressing the admissibility of more than 1,600 documents –

---

[3] The last paragraph of CMO 2 states, "As to the trial preparation document schedule for each of the successive bellwether trials, the Parties shall meet and confer to derive a schedule that is consistent with the schedule set out below for bellwether trials following the first bellwether trial." [Rec. Doc. 1305]. CMO 2A is Rec. Doc. 4223.

2

2812831-1

most of which will never be on a final good faith exhibit list – Defendants may have to repeat the process with a plethora of new exhibits when Plaintiffs submit their final exhibit lists on February 10, 2017 in accordance with CMO 2A.

We note, as well, that the parties have already dealt with questions regarding authenticity in a different stipulation.  PTO No. 23 [Rec. Doc. 2283] addresses the procedure by which Defendants would object to the authenticity of any deposition exhibit that was produced from each Defendant's own files.  But the present dispute regarding the motion to compel is not about authenticity.  It is about whether Defendants should have to conduct a burdensome document-by-document admissibility analysis of more than 1,600 deposition exhibits when the majority may never be listed for trial purposes and when Plaintiffs still reserve the right to supplement their list.  The case law recognizes in similar situations, where a vast number of documents are at issue, that it is unreasonable for a party to determine the authenticity or admissibility of documents absent a stated good faith belief that such documents will all likely be used at trial. *See Hydro Engineering, Inc. v. Petter Investments, Inc.*, No. 11-0139, 2013 U.S. Dist. LEXIS 177589, at *6-7 (D. Utah Dec. 16, 2013) (unduly burdensome to require defendant to answer RFAs to lay groundwork for documents under business records exception without any reference to an intent to use the documents at trial); *JZ Buckingham Investments LLC v. The United States,* 77 Fed. Cl. 37, 2007 U.S Claims LEXIS 126, at *45, (Fed. Cl. 2007) (deferring determination of whether defendants needed to answer RFAs until closer to trial when parties know which documents will indeed be used at trial)*; In re Gulf Oil/Cities Serv. Tender Offer Litig.,* Nos. 82-5253, 87-8982, 1990 U.S. Dist. LEXIS 8649, at *2-3 (S.D.N.Y. July 16, 1990) ("[I]t would be unreasonable to require plaintiffs to expend time and effort to determine authenticity of documents not now intended to be used at trial.")

3

2812831-1

Defendants respectfully request that the Court enforce the CMO 2A procedures and timetable for submitting exhibit lists and making objections. The most appropriate and efficient time for discussing and reaching decisions regarding the admissibility of documents is when the parities intended for this to occur—after the final exhibit lists are filed. Alternatively, Defendants request that the Court require Plaintiffs to limit their RFAs to no more than 500 documents (excluding medical records) that they in good faith intend to use at in the first bellwether trial and to limit Plaintiffs' ability to supplement such list with no more than 50 new documents when the final exhibit lists are due in that case on February 10, 2017.

### A. Plaintiffs' RFAs Violate The Parties' Stipulated Schedule For Exchanging Exhibit Lists And Making Objections

Plaintiffs' motion to compel omits an important and dispositive fact: Plaintiffs' requests are in violation of a stipulated schedule approved by the Court for resolving objections to trial exhibits. As the Court knows, the PSC and the Defendants entered into extensive and painstaking negotiations concerning the proper time for accomplishing all tasks necessary to prepare for trial. Those negotiations resulted in stipulated orders entered by the Court in CMOs 2 and 2A.

The agreed upon schedule provided for an orderly progression of tasks that enabled the parties to focus their efforts on each task necessary to prepare for trial. Those tasks were organized in a logical sequence: first there would be fact discovery, followed by expert discovery, followed by dispositive motions, followed by staggered final trial preparation materials for each bellwether trial. Final trial preparation materials included such matters as witness lists, deposition designations and objections, exhibit lists and objections, jury instructions and the like.

Under CMO 2A, the stipulated date for designation of trial exhibits for the first bellwether trial is February 10, 2017. The stipulated date for objections to trial exhibits is February 28, 2017. The parties are obligated, pursuant to CMOs 2 and 2A, to meet and confer to derive a similar schedule for subsequent bellwether trials. The parties' agreement to reserve the time for objections until close to the time of each trial was an important part of the series of compromises that led to an agreement on the schedule. Moreover, there were good reasons why the parties reserved the dates for exhibit lists and objections until the month before trial:

- First, the parties recognized that an enormous amount of effort would be necessary to complete fact discovery, expert discovery and dispositive motions within very compressed deadlines. Addressing questions of admissibility of voluminous documents during the time reserved for those other tasks would unnecessarily and unfairly divert the parties' resources from completion of those tasks.

- Second, the parties recognized that the issues would narrow as the parties completed fact and expert discovery, briefed dispositive motions, and got closer to each of the four bellwether trials, so that exhibit lists could be refined to those documents genuinely needed for each trial rather than (as Plaintiffs have done in their RFAs) each and every deposition exhibit marked at 67 days of depositions, which collectively total more than 1600 documents. By requiring case-specific exhibit lists and by scheduling the deadlines the month before trial for the universe of potential exhibits that need to be addressed that will grow smaller as the parties fine-tune their case, the parties and the Court inherently acknowledged that questions of admissibility should be tailored to each individual trial.

2812831-1

Forcing Defendants to address admissibility for more than 1,600 documents at this time is inconsistent with and in violation of CMO 2 as amended by CMO 2A.  Absent extraordinary circumstances or a showing of manifest injustice, stipulations of the parties should be enforced. *See Plante v. Rosane*, No 04-0074, 2008 U.S. Dist. LEXIS 118883, at *6-7 (D.V.I. May 13, 2008) (stipulations voluntarily entered into are binding and must be given full force and effect absent manifest injustice); *Chatzicharalambus v. Petit,* 430 F. Supp. 1087, 1090 (E.D. La. 1977) (stipulations not to be set aside except to prevent manifest injustice and only under exceptional circumstances).  Plaintiffs have not attempted to make such a showing here, and the stipulations regarding the timetable for action reflected in CMO 2A should not be altered.

  **B.** **Plaintiffs' Request To Deviate From The Stipulated Schedule Is Unduly Burdensome**

Plaintiffs' motion also should be denied on the ground of undue burden and under the proportionality standard of FRCP 26.  Plaintiffs will never introduce at trial the overwhelming majority of the more than 1,600 documents for which they seek admissibility determinations.  Moreover, Plaintiffs are reserving the right to submit additional RFAs over and above the more than 1,600 already served.  Presumably, Plaintiffs expect the Defendants to go through this exercise again when Plaintiffs serve their final exhibit list on February 10, 2017.  Under the Rule 26 proportionality standard, the burden of prematurely addressing the admissibility of more than 1600 documents (when most will not be used and still more are on the way) certainly outweighs the benefit.

We note as well that the academic exercise posed by the Plaintiffs, which requires Defendants *seriatim* to admit or deny whether each document is a business record, public record, learned treatise or authorized statement by a party, will encourage the lodging of objections that might not be made closer to the time of trial when decisions can be made more strategically.  For

example, Defendants could legitimately deny that a document comes within any hearsay exception and still decide not to object to the document, perhaps because the document is being used for a non-hearsay purpose like notice, or because Defendants conclude that on balance the document is helpful even if a technical objection can be lodged, or because the document opens the door to other evidence that otherwise could not be admitted.  At this stage, months before trial and with the case still being developed, Defendants will have no choice but to lodge every permissible objection in order to preserve options.  Closer to trial, more discretion can be exercised as the case comes into focus and more particularized strategic decisions can be made.  For this reason, as well, it is better to wait until the time stipulated by the parties (closer to the time of trial) to handle objections to evidence.

The rational way to proceed is to enforce the procedure and timetable already agreed upon by the parties for exchange of FINAL exhibit lists and making objections.

### C. The Bellwether Plaintiffs Will Not Be Prejudiced By Enforcing The Stipulated Schedule

Plaintiffs will not be prejudiced by addressing admissibility issues according to the timetable specified by CMOs 2 and 2A.

First, there is inherently no prejudice in adhering to a schedule that is stipulated to; Plaintiffs had a full opportunity to evaluate the pros and cons of deferring admissibility questions until February 2017 and voluntarily agreed to that timetable.  Plaintiffs have not put forward any legitimate reason to relieve them from their stipulation.

Second, all of the approximately 1600 documents that are the subject of Plaintiffs' RFAs are deposition exhibits.  Accordingly, Plaintiffs already had a full and fair opportunity to establish the foundation for admissibility as to each such exhibit.

7

2812831-1

Third, as to authenticity, Defendants already are required by PTO No. 23 (Deposition Guidelines) paragraph 44 to make objections to the authenticity of exhibits used in a deposition within thirty days from the conclusion of the deposition as to any exhibits which were produced by that Defendant. If no objections are made, the exhibits are deemed authentic. Defendants have not challenged the authenticity of any deposition exhibits they produced, so this would appear to be a non-issue for the vast majority of documents subject to Plaintiffs' RFAs.

### D. Defendants' Objections To Plaintiffs' RFA Are Justified And Sufficient, And Therefore Should Not Be Deemed Admissions

Determining the sufficiency of a response rests within the court's discretion. *Richard v. Sedgwick Cty. Bd. Of Comm'rs*, No. 09-1278-MLB, 2013 U.S. Dist. LEXIS 96103, at *7 (D. Kan. July 10, 2013) (citing to *Harris v. Oil Reclaiming Co., Ltd.*, 190 F.R.D. 674, 679 (D. Kan. 1999). In *Jackson v. Wilson Welding Serv.*, No. 10-2843, 2011 U.S. Dist. LEXIS 124921, (E.D. La. Oct. 26, 2011), the court denied plaintiffs' motion regarding sufficiency of defendants' responses where defendants' objections were justified, and declined to award fees related to the motion because defendants' objections were "well founded." *Id.* at *12, 17; *see also Taylor v. Countrywide Home Loans*, No. 08-13258, 2009 U.S. Dist. LEXIS 55515, at *3 (E.D. Mich. June 30, 2009) (court determined defendants' objections and responses to plaintiffs' requests for admissions were appropriate and denied plaintiffs' Rule 36(a)(6) motion). Defendants' objections to Plaintiffs' RFAs on the basis of the already agreed upon schedule of CMO 2A and on the basis of proportionality under FRCP 26 are well founded objections for the reasons stated above, and in any event should not be deemed admissions against Defendants.

### CONCLUSION

There is no reason to depart from the procedures and timetable agreed to by the parties and so ordered by the Court in CMOs 2 and 2A. When Defendants receive Plaintiffs' final good

8

faith exhibit list, we will work with Plaintiffs on issues of admissibility of each document listed. The Defendants recognize that the Court expects the parties to refrain from objections that are not well-founded and will of course act professionally in that regard. The Court should therefore adhere to the stipulated procedure in CMOs 2 and 2A.

Respectfully submitted,

| | |
|---|---|
| Steven Glickstein | James B. Irwin |
| Andrew Solow | Kim E. Moore |
| KAYE SCHOLER LLP | IRWIN FRITCHIE URQUHART |
| 250 West 55th Street |    & MOORE LLC |
| New York, New York 10019-9710 | 400 Poydras Street, Suite 2700 |
| Telephone: (212) 836-8485 | New Orleans, LA 70130 |
| Facsimile: (212) 836-6485 | Telephone: (504) 310-2100 |
| sglickstein@kayescholer.com | Facsimile: (504) 310-2120 |
| *Co-Lead Defense Counsel* | jirwin@irwinllc.com |
| | *Defendants' Co-Liaison Counsel* |
| | |
| Susan M. Sharko | _/s/_ John F. Olinde_____ |
| DRINKER BIDDLE & REATH LLP | John F. Olinde |
| *A Delaware Limited Liability Partnership* | CHAFFE McCALL L.L.P. |
| 600 Campus Drive | 1100 Poydras Street, Suite 2300 |
| Florham Park, NJ 07932-1047 | New Orleans, LA 70163 |
| Telephone: (973) 549-7000 | Telephone: (504) 585-7241 |
| Facsimile: (973) 360-9831 | Facsimile: (504) 544-6084 |
| susan.sharko@dbr.com | olinde@chaffe.com |
| *Co-Lead Defense Counsel* | *Defendants' Co-Liaison Counsel* |

**CERTIFICATE OF SERVICE**

    I hereby certify that on the 23rd day of November, 2016 I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send the notification of such filing to all attorneys of record.

                                                             /s/     John F. Olinde

2812831-1