UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | * * * | MDL 2592 |
| | * | SECTION L |
| THIS DOCUMENT RELATES TO: ALL CASES | * * * | JUDGE ELDON E. FALLON |
| | * * | MAG. JUDGE NORTH |
| * * * * * * * * * * * * * * * * * * * * * * | * | |

**THE PLAINTIFFS' STEERING COMMITTEE'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL RESPONSES FROM PLAINTIFFS' EXPERTS**

The Plaintiffs' Steering Committee submits this response in opposition to the Janssen and Bayer Defendants' Motion to Compel Responses from Plaintiffs' Experts (Rec. Doc. 4632). Defendants' efforts to obtain discovery on the substantive opinions and contents of draft expert reports from experts who may have consulted with the Plaintiffs' in the *Pradaxa* MDL are both barred by the Federal Rules and the Orders of Judge Herndon who oversaw the entirety of that litigation. Any expert who may have performed work in the *Pradaxa* MDL would be in violation of Judge Herndon's orders if they responded to any type of substantive discovery about that work in the *Xarelto* litigation.

I. **Any work performed by an expert in the *Pradaxa* litigation at most was limited to drafts of reports and as such are protected from disclosure.**

The Federal Rules expressly prohibit discovery on draft reports "regardless of the form in which the draft is recorded." Fed.R.Civ.P. 26(b)(4)(B). This prohibition necessarily must apply to both the draft report itself and any questioning regarding the opinions contained within such a

draft report, or the prohibition from discovery would have no meaning. Under the Federal Rules, a written expert report must contain a complete statement of that expert's opinions along with the facts and data considered by the expert in forming such opinions. Fed.R.Civ.P. 26(a)(2). The opposing party may also discover any facts or data that were provided by a party's attorney to the extent they were considered in forming the opinions to be expressed or identify assumptions that the expert relied upon. Fed.R.Civ.P. 26(b)(4). Nothing in the Federal Rules provides for discovery on draft reports prepared in a different litigation regarding a different matter and which were not relied upon or considered in any way by a disclosed testifying expert in the present matter. In short, any draft report or questioning about such report or work is prohibited.,

Both the Court and the Defendants have acknowledged that the Federal Rules broadly protect draft reports. As was set out by the Court at the hearing on November 17, 2016 that "[t]he draft reports, I thought you all had agreed that that wasn't producible. Generally speaking, drafts are not producible." *See* 11/17/16 Transcript, at 11:25-12:2 (attached as Exhibit 1).[1] Defendants likewise acknowledged this, stating at the end of their brief that "Defendants recognize that 'draft' reports are not discoverable, as this Court noted." *See* Defendants' Memo, at 10.

Given that no expert reports were served during the *Pradaxa* litigation, the reports themselves are drafts and not discoverable. While Defendants genuinely may not have known before the November 17, 2016 hearing that expert reports were never produced during *Pradaxa*, the same cannot be said about their knowledge before they filed their motion to compel on

---

[1] Notably, the Defendants neglected to cite such language in their motion to compel and instead only referenced the Court's statements made after acknowledging the protection of draft reports on whether such questioning may have relevance. However, the relevance of any particular area of inquiry has no bearing on Rule 26(b)(4)(B)'s prohibition pertaining to draft expert reports.

2

November 28, 2016.  In a letter to Susan Sharko from three days earlier (November 25, 2016), Brian Barr said that "no expert reports were ever disclosed in the *Pradaxa* litigation."  *See* Exhibit 2, at 2.  He then repeated that a few sentences later, saying "draft expert reports were never disclosed.  Accordingly, all expert reports were draft reports and not discoverable by rule."  *Id.*  Lest there be any doubt, he said it a third time: "As no expert reports were produced in the *Pradaxa* MDL, all such reports are drafts."  *Id.*

Despite this clear, unequivocal language confirming that all expert reports were drafts that were never produced in *Pradaxa*, Defendants said in their brief that they "are entitled to know the facts regarding whether these reports were final and/or served."  *See* Defendants' Memo, at 10.  To clear up any doubt, Plaintiffs have attached a Declaration from Roger Denton, who was Co-Lead Counsel in *Pradaxa,* and is on the PSC in this *Xarelto* litigation.  *See* Denton Declaration, at ¶¶ 1-2 (attached as Exhibit 3).  Mr. Denton has declared that "Plaintiffs did not obtain a final draft of any expert report in the *Pradaxa* litigation; all of the reports from Plaintiffs' experts were in draft form only."  *Id.* at ¶ 3.  He also declared that "Plaintiffs did not produce any expert reports in the *Pradaxa* litigation."  *Id.* at ¶ 4.

All of this is consistent with the scheduling orders from *Pradaxa,* which set the date of production for Plaintiffs' expert reports at May 20, 2014, *see* CMO 71 (attached as Exhibit 4), and then moved the date to May 21, 2014, *see* CMO 72 (attached as Exhibit 5).  Prior to that production date, on May 20, 2014, the entire litigation was stayed until further notice while mediation was scheduled.  *See* CMO 73 (attached as Exhibit 6).  A week later, on May 28, 2014, the stay was extended for the indefinite future because the parties had entered into a Master Settlement Agreement.  *See* Minute Order 515 (attached as Exhibit 7).

Since all expert reports were drafts that were never produced in *Pradaxa*, they are entitled to trial-preparation protection under Rule 26(b)(4)(B), and are not subject to discovery. This protection extends not just to the report itself but also the opinions and statements made within the draft report. Rule 26(b)(4)(B) protects draft reports "regardless of the form in which the draft is recorded." Such a broad prohibition necessarily includes the opinions and statements within the memory of the witness. Without such a broad reading of the rule, the prohibition becomes meaningless as any party could simply ask broadly worded questions designed to re-state and document the expert witness's draft opinions into a sworn transcript thereby recording the draft. Therefore, not only is the draft report itself be protected from discovery but questions pertaining to the draft are also protected.

II.     **The experts are entitled to the protections of non-testifying experts in relation to their work in *Pradaxa*.**

In addition to the protections provided to draft reports, all expert work product that emanated from the Pradaxa litigation is protected from discovery as all of the experts who performed work in that litigation must be considered non-testifying experts. As federal courts in Louisiana have long recognized, the majority rule, not only in Louisiana, but nationwide, is to consider experts as non-testifying unless and until their reports are produced. This is true even if the expert is initially designated as a testifying expert. Until the report is disclosed, the expert is non-testifying, and is entitled to the protections outlined in Federal Rule of Civil Procedure 26(b)(4)(D). *See, e.g., Decena v. Am. Int'l Cos.,* No. 11-1574, 2012 U.S. Dist. LEXIS 61303, at *5-7 (E.D. La. May 2, 2012); *Estate of Manship v. United States,* 240 F.R.D. 229, 236-37 (M.D. La. 2006); *In re Shell Oil Refinery,* 132 F.R.D. 437, 440-41 (E.D. La. 1990).

Under Rule 26(b)(4)(D), no facts or opinions may be obtained from a non-testifying expert except as provided in Rule 35(b), which deals with physical and medical examinations

4

and is inapplicable here, or upon a showing of "exceptional circumstances," which is a "heavy burden." *See Hoover v. U.S. Dept. of Interior*, 611 F.2d 1132, 1142 n.13 (5th Cir. 1980); *Shell Oil,* 132 F.R.D. at 442. Defendants in this case have not even suggested, let alone established, that exceptional circumstances exist here. Thus, the facts and opinions developed by any expert in the *Pradaxa* litigation is protected in full and not subject to discovery – whether through the production of a draft report or through questioning about the contents of such a draft report.

**III.     The information is further protected by court orders in *Pradaxa*.**

Even if the expert reports were not unproduced drafts subject to trial-preparation protection, and even if the experts were not entitled to the protections of non-testifying experts, discovery is precluded pursuant to court orders in *Pradaxa.*

In his November 17, 2016 letter to Ms. Sharko, Mr. Barr advised that the draft expert reports relied upon, referenced, quoted and/or cited information designated as protected in that case. *See* Exhibit 2, at 2. Mr. Denton has again confirmed this fact in his declaration. *See* Exhibit 3, at ¶ 5.

In *Pradaxa,* Judge Herndon issued Amended CMO 2, which listed the limited number of persons who were entitled to see Confidential Information or Highly Confidential Information. *See* Exhibit 8 at ¶¶ 10-12. Notably, neither Defendants in the *Xarelto* MDL, their counsel, nor the Plaintiffs' lawyers for work related to the *Xarelto* MDL are authorized to possess or view such protected material. As such, the Xarelto PSC is unable to even obtain or discuss such draft reports to produce to the Defendants. Amended CMO 2 unequivocally states several times that Confidential or Highly Confidential information was to be used only during the *Pradaxa* litigation:

> "Information designated as Highly Confidential Information pursuant to this Order may only be used for purposes of

> preparation, trial and appeal *of this litigation* and not for any other purpose." *Id.* at ¶ 12.
>
> "No attorney who has access to 'Highly Confidential Information' shall disclose, in writing or orally, or use in any way at any in the future outside of the present litigation, any 'Highly Confidential Information.'" *Id.* at ¶ 13.
>
> "No expert or consultant who has access to 'Highly Confidential Information' *shall disclose in writing or orally, or use in any way at any time in the future outside of the present litigation*, any 'Highly Confidential Information.'" *Id.* at ¶ 14.
>
> "By written agreement of the parties, or upon motion and Order of this Court, the terms of this Order may be modified. This Order shall continue in force until amended or superseded by express order of the Court*, and shall survive and remain in effect after the termination of this proceeding*." *Id.* at ¶ 24.

As is made clear in CMO 95 from Pradaxa, it is not just Confidential or Highly Confidential Information that is protected by Amended CMO 2 but also work product that is derivative of such material. Judge Herndon expressly found that "Paragraph 19 of CMO 2 clearly requires the destruction or return of Confidential or Highly Confidential discovery, as well as derivative work product, at the conclusion of this litigation." Thus, there can be no doubt that expert draft reports prepared during the course of the *Pradaxa* litigation that were necessarily derivative of Confidential or Highly Confidential Information are protected by Judge Herndon's orders.

Judge Herndon was particularly concerned about entities such as the Defendants in this case obtaining protected information. Bayer and Janssen are direct competitors with the manufacturer of Pradaxa. Judge Herndon's orders expressly bar disclosure of Highly Confidential Information to direct competitors. *Id.* at ¶ 13. Pursuant to Amended CMO 2, no disclosure to an attorney for a direct competitor can be made absent a court order ***from Judge Herndon***, after the issue has been briefed by both sides. *Id.* Even then, however, any permitted disclosure or use was envisioned to be in the *Pradaxa* litigation only, pursuant to the language in

6

the blocked text above, particularly from ¶ 13. *Id.* As it pertains to the PSC's experts that were also retained in Pradaxa, they are restricted from disclosing whatever opinions they may have formed in the course of that litigation in this litigation. *Id.* at ¶14 (no disclosure "in writing or orally, or use in any way at any time in the future outside of the present litigation").

The intent for limited use was later reinforced by Judge Herndon when he issued CMO 95 after the parties entered into the Master Settlement Agreement, denying access to discovery materials to a small number of lawyers claiming to represent claimants who were not part of the settlement agreement, and who had not yet filed suit. Judge Herndon noted that the Confidentiality Agreement attached to Amended CMO 2 said the materials were to be used "for purposes of *this* action" only, meaning litigants who were part of the global settlement. *See* Exhibit 9 at 7-8.

Additionally, Amended CMO 2 provided for the return or destruction of all Confidential Information and Highly Confidential Information, including summaries, notes compilations and memoranda related thereto, within forty-five days after conclusion of the litigation. *Id.* at ¶ 19. While privileged communications, attorney work product, and documents filed with the court could be maintained, they were to remain subject to the terms of Amended CMO 2. *Id.*

In furtherance of that, when conclusion of the litigation was near, CMO 95 provided for submission of the document repository, and all work product, to the Special Master, to maintain custody pending later destruction. *See* Exhibit 9 at 10. Once the litigation was concluded, Minute Order 692 ordered the return of equipment to the defendant, and the destruction of all that remained, including all of the materials that had been turned over pursuant to CMO 95. *See* Exhibit 10. The Special Master subsequently issued a report, confirming compliance. *See*

Exhibit 11. As confirmed in Mr. Denton's declaration, the PSC complied with their obligations. *See* Exhibit 3, at ¶ 6.

Accordingly, if any expert who may of performed work in Pradaxa provides any information – either in writing or orally – they are in violation of Judge Herndon's orders. If Bayer and Janssen seek any relief from the prohibition of those orders, that argument needs to be with Judge Herndon and notice to Boeringer Ingelhiem as that company has an interest in protecting its confidential documents from disclosure generally, and certainly from competitors specifically. As of the time of this opposition, the PSC is unaware that Defendants have taken any affirmative steps to obtain such relief. As long as Judge Herndon's orders protecting Confidential or Highly Confidential Information, including any such derivative work product remain in place, any discovery, whether by production of a draft report or questioning about the opinions and statements made in such a report, are completely barred. Any such discovery directly violates Judge Herndon's orders.

**IV.    Defendants quoted this Court in an incomplete and misleading fashion.**

Defendants have suggested that this Court deemed the expert evidence discoverable, by selecting one sentence from the November 17, 2016 hearing, where this Court said "it seems to me that it's relevant, at least in discovery, and the witness can be questioned on it." *See* Defendants' Memo, at 3.

When placed in context, however, it appears that this Court instead was suggesting that the evidence would be discoverable **if** reports that were not drafts had been produced during the *Pradaxa* litigation. This is the entire exchange:

> THE COURT: My thinking is this: The draft reports, I thought
> you all had agreed that wasn't producible. Generally speaking,
> drafts are not producible. If the report exists on Pradaxa, we're
> dealing with discovery and we're dealing with credibility, and

8

those issues, it should be produced if it exists, ***if it's not inconsistent with an outstanding order.***  I don't want to get anybody crosswise with that, but it seems to me that it's relevant, at least in discovery, and the witness can be questioned on it.  I mean, this is prior statements of a witness in certain areas, but they may not exist; so, the answer may not be available.  So let's check on that, Susan.  Get with Brian and see whether or not you can pull up those orders and see what the situation is and ask the witness whether he produced any report and where is it?

MS. SHARKO:  He's been deposed and he testified that there was a report, and I believe he testified that he has it, and I don't think he said it was a draft, and that's why we pursued that.

MR. BARR:  Your Honor, I wasn't involved in *Pradaxa* but my firm was, but I've been informed – you know, I'll check into this further – I've been informed those reports were never actually produced in the litigation; so, until they are produced they are drafts.

THE COURT:  All right.  Let's check that out and we'll put that on the agenda the next time.

## V.     <u>Plaintiffs were entitled to instruct their witnesses not to answer.</u>

Since the expert reports from *Pradaxa* were unproduced drafts subject to trial-preparation protection, and the facts and opinions held by the experts in *Pradaxa* are precluded from discovery, Plaintiffs' counsel was entitled to instruct their witnesses not to answer questions to preserve a privilege.  *See* Fed. R. Civ. P. 30(c)(2).  Likewise, since the expert analysis and draft reports were based on confidential and highly confidential information that cannot be disclosed outside of the *Pradaxa* litigation, Plaintiffs were further entitled to instruct their witnesses not to answer questions about them to enforce a court-ordered limitation.  *See Pradaxa* CMO No.2, and this Court's directive of November 17, 2016.

While the Defendants have argued the PTO 23 only allows for an instruction not to answer on the basis of privilege or that the questions sought information held not discoverable by

9

this Court, such a narrow reading of PTO 23 cannot be supported.  Certainly, the Defendants do not mean to suggest that persons in this litigation who are subject to the orders of Judge Herndon (which would include any experts that are the subject of this motion) are required to violate Judge Herndon's orders.  Defendants cannot mean that an order entered by Judge Herndon to protect Confidential or Highly Confidential information is so unenforceable that one does not have to obey the order as long as they violate it before a different tribunal.  Such a position would render meaningless any protective order from any other litigation – including the protective orders in place in the Xarelto MDL protecting the Defendants' Confidential or Highly Confidential Information.

All of the experts subject to the present motion are subject to the orders of Judge Herndon in the *Pradaxa* litigation.  Therefore, all discovery related to the statements and opinions developed in the drafting of any of their expert disclosures is prohibited without first obtaining relief from Judge Herndon.  However, Plaintiffs agree that Defendants are allowed to conduct discovery into pure credibility/bias information to determine whether an expert was retained in the *Pradaxa* litigation and the amount of compensation any such expert may have been paid.  In that light, Plaintiffs will provide Defendants with written discovery disclosing such information for Dr. Bussey and Dr. Gertsman

## VI. <u>Conclusion</u>

For the foregoing reasons, Plaintiffs respectfully request an order denying Defendants' motion to compel testimony from experts.

Dated: December 7, 2016

Respectfully submitted,

*/s/ Leonard A. Davis*
Leonard A. Davis, Esq. (Bar No. 14190)
**HERMAN, HERMAN & KATZ, LLC**
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Email: ldavis@hhklawfirm.com

Gerald E. Meunier (Bar No. 9471)
**GAINSBURGH BENJAMIN DAVID MEUNIER & WARSHAUER, LLC**
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
Email: gmeunier@gainsben.com

*Plaintiffs' Liaison Counsel*

**PLAINTIFFS' STEERING COMMITTEE**

| | |
|---|---|
| Andy D. Birchfield, Jr. (Co-Lead Counsel)<br>234 Commerce Street<br>Post Office Box 4160<br>Montgomery, Alabama 36103-4160<br>Phone: (334) 269-2343<br>Fax: (334) 954-7555<br>Email: Andy.Birchfield@BeasleyAllen.com | Bradley D. Honnold<br>11150 Overbrook Rd., Ste. 200<br>Leawood, KS 66211<br>Phone: (913) 266-2300<br>Fax: (913) 266-2366<br>Email: bhonnold@bflawfirm.com |
| Brian H. Barr (Co-Lead Counsel)<br>316 Baylen Street, Suite 600<br>Pensacola, FL 32502<br>Phone: (850) 435-7045<br>Fax: (850) 436-6044<br>Email: bbarr@levinlaw.com | Frederick S. Longer<br>510 Walnut Street, Suite 500<br>Philadelphia, PA 19106<br>Phone: (215) 592-1500<br>Fax: (215-592-4663<br>Email: flonger@lfsblaw.com |
| Russell T. Abney<br>2100 RiverEdge Parkway,<br>Suite 720<br>Atlanta, Georgia 30328<br>Email: rabney@lawyerworks.com | Jeffrey S. Grand<br>550 Broad Street, Suite 920<br>Newark, NJ 07102<br>Phone: (973) 639-9100<br>Fax: (973) 639-9393<br>Email: jgrand@seegerweiss.com |
| Dr. Mark Alan Hoffman<br>1650 Market Street, Suite 3450<br>Philadelphia, PA 19103<br>Phone: (215) 574-2000<br>Fax: (215) 574-3080<br>Email: mhoffman@rossfellercasey.com | Roger C. Denton<br>100 S. 4th Street<br>St. Louis, MO 63102<br>Phone: (314) 621-6115<br>Email: rdenton@uselaws.com |
| Michael Goetz<br>201 N. Franklin St., 7th Floor<br>Tampa, FL 33602<br>Phone: (813) 221-6581<br>Fax: (813) 222-4737<br>Email: MGoetz@ForThePeople.com | Dianne M. Nast<br>1101 Market Street, Suite 2801<br>Philadelphia, Pennsylvania 19107<br>Phone: (215) 923-9300<br>Email: dnast@nastlaw.com |
| Neil D. Overholtz<br>17 E. Main Street , Suite 200<br>Pensacola, Florida 32501<br>Phone: (850) 916-7450<br>Fax: (850) 916-7449<br>Email: noverholtz@awkolaw.com | Ellen Relkin<br>700 Broadway<br>New York, New York 10003<br>Phone: (212) 558-5500<br>Fax: (212) 344-5461<br>Email: Erelkin@weitzlux.com |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on December 7, 2016, the foregoing pleading and its supporting memorandum of law were filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs and Defendants by operation of the court's electronic filing system and served on all other plaintiff counsel via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre- Trial Order No. 17.

*/s/ Leonard A. Davis*
**LEONARD A. DAVIS**