## Page 1

```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF LOUISIANA

****************************************************************

IN RE:  XARELTO (RIVAROXABAN)
PRODUCTS LIABILITY LITIGATION
                        CIVIL ACTION NO. 14-MD-2592 "L"
                        NEW ORLEANS, LOUISIANA
                        THURSDAY, NOVEMBER 17, 2016, 3:30 P.M.

THIS DOCUMENT RELATES TO
ALL CASES

****************************************************************

        TRANSCRIPT OF TELEPHONIC STATUS CONFERENCE PROCEEDINGS
              HEARD BEFORE THE HONORABLE ELDON E. FALLON
                     UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE PLAINTIFFS'
LIAISON COUNSEL:      HERMAN HERMAN & KATZ
                      BY:  LEONARD A. DAVIS, ESQUIRE
                      820 O'KEEFE AVENUE
                      NEW ORLEANS, LA  70113


                      GAINSBURGH BENJAMIN DAVID
                      MEUNIER AND WARSHAUER
                      BY:  GERALD E. MEUNIER, ESQUIRE
                      2800 ENERGY CENTRE
                      1100 POYDRAS STREET, SUITE 2800
                      NEW ORLEANS, LA  70163


FOR THE PLAINTIFFS:   LEVIN PAPANTONIO THOMAS MITCHELL
                      RAFFERTY & PROCTOR
                      BY:  BRIAN H. BARR, ESQUIRE
                      316 SOUTH BAYLEN STREET, SUITE 600
                      PENSACOLA, FL  32502

                      OFFICIAL TRANSCRIPT
```

## Page 2

```
APPEARANCES CONTINUED:


              LEVIN, FISHBEIN, SEDRAN & BERMAN
              BY:  FREDERICK S. LONGER, ESQUIRE
              510 WALNUT STREET, SUITE 500
              PHILADELPHIA, PA  19106


              BEASLEY ALLEN CROW METHVIN
              PORTIS & MILES
              BY:  ANTHONY BIRCHFIELD JR., ESQUIRE
              POST OFFICE BOX 4160
              MONTGOMERY, AL  36103


FOR THE DEFENDANTS:  CHAFFE MCCALL
              BY:  JOHN F. OLINDE, ESQUIRE
              1100 POYDRAS STREET
              NEW ORLEANS, LA  70163


              DRINKER BIDDLE & REATH
              BY:  SUSAN M. SHARKO, ESQUIRE
              500 CAMPUS DRIVE
              FLORHAM PARK, NJ  07932


              KAYE SCHOLER
              BY:  STEVEN GLICKSTEIN, ESQUIRE
                   ANDREW K. SOLOW, ESQUIRE
              250 WEST 55TH STREET
              NEW YORK, NY  10019


OFFICIAL COURT REPORTER:  CATHY PEPPER, CRR, RMR, CCR
              CERTIFIED REALTIME REPORTER
              REGISTERED MERIT REPORTER
              500 POYDRAS STREET, ROOM HB-275
              NEW ORLEANS, LA  70130
              (504) 589-7779
              Cathy_Pepper@laed.uscourts.gov
PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY. TRANSCRIPT
PRODUCED BY COMPUTER.
                      OFFICIAL TRANSCRIPT
```

## Page 3

I N D E X

AGENDA ITEMS                                                    PAGE

DEFENDANTS' RESPONSE TO PSC DISCOVERY REGARDING THE
COLLABORATIVE DEVELOPMENT LICENSE AGREEMENT..........            5

THE AUTHENTICITY AND THE BUSINESS RECORDS STATUS OF
DOCUMENTS............................................            5

THE HANDLING OF CURRENT PFS DEFICIENCIES.............            6

PLAINTIFFS' RESPONSES TO DEFENDANTS' DISCOVERY
REQUESTS FOR COMMUNICATIONS CONCERNING THE ROCKET....            8

DEFENDANTS' DISCOVERY CONCERNING THE THIRD-PARTY
FINANCING OF BELLWETHER PLAINTIFFS CASES.............            9

DEFENDANTS' REQUEST FOR PRODUCTION OF DOCUMENTS IN
CONNECTION WITH THE PLAINTIFFS' EXPERT DEPOSITIONS...            9

DEPOSITION PROTOCOL ORDER............................           10

OFFICIAL TRANSCRIPT

## Page 4

```
                        P-R-O-C-E-E-D-I-N-G-S
03:15:50              THURSDAY, NOVEMBER 17, 2016
03:15:58              (IN CHAMBERS VIA TELEPHONE)
03:15:58
03:15:58
03:31:05        THE COURT:  Hello.  Good afternoon, everyone.  This is
03:31:07   Judge Fallon.  Who is on the line for the plaintiffs?
03:31:07        MR. MEUNIER:  Jerry Meunier, Your Honor.
03:31:09        THE COURT:  Jerry.
03:31:09        MR. DAVIS:  Lenny Davis.
03:31:09        THE COURT:  Lenny.
03:31:13            Anyone else?
03:31:14        MR. BARR:  Brian Barr.
03:31:14        THE COURT:  Brian.
03:31:18        MR. LONGER:  Fred Longer.
03:31:18        THE COURT:  Fred.
03:31:20            Anyone else for the plaintiffs?
03:31:23            Okay.  How about for the defendants?
03:31:29        MR. GLICKSTEIN:  Steve Glickstein.
03:31:29        THE COURT:  Hi, Steve.
03:31:32        MS. SHARKO:  Susan Sharko.
03:31:32        THE COURT:  Susan.
03:31:35        MR. SOLOW:  Andy Solow, Your Honor.
03:31:35        THE COURT:  Andy.
03:31:37        MR. OLINDE:  John Olinde.
                      OFFICIAL TRANSCRIPT
```

## 5

```
03:31:41   1          THE COURT:  John.
03:31:41   2          Is that it?
03:31:42   3          Okay.  Let's see.  Jerry, you sent me some of
03:31:49   4   topics, something about defendants' response to PSC discovery
03:31:56   5   regarding the collaborative development license agreement.  You
03:32:00   6   sent a copy to me.
03:32:03   7          MR. MEUNIER:  Yes, sir.
03:32:03   8          THE COURT:  Susan --
03:32:04   9          MR. MEUNIER:  Judge --
03:32:06  10          THE COURT:  Go ahead, Jerry.  I'm sorry.
03:32:08  11          MR. MEUNIER:  Yeah, that agenda, I think, was
03:32:10  12   circulated to all counsel, and I can, on behalf of the PSC,
03:32:15  13   tell you, Judge, that we have positive news on item one.
03:32:15  14          THE COURT:  Okay.
03:32:19  15          MR. MEUNIER:  We've had a couple of meet and confer
03:32:21  16   sessions which have been helpful, and the parties appear to be
03:32:24  17   in a position to resolve this particular discovery matter by
03:32:28  18   way of a stipulation or agreement.
03:32:31  19          It still is a work in progress, but we hope that
03:32:34  20   we will have that, you know, worked out or a further positive
03:32:39  21   report at the time of the status conference on November 29th.
03:32:42  22          THE COURT:  Okay.  How about the second item with the
03:32:44  23   authenticity and the business records status of documents?
03:32:50  24          MR. DAVIS:  This is Lenny speaking, Judge.
03:32:50  25          THE COURT:  Go ahead, Lenny.
```
*OFFICIAL TRANSCRIPT*

## 6

```
03:32:53   1          MR. DAVIS:  We have had meet and confers with both
03:32:56   2   Janssen and Bayer on this issue, and as a result, yesterday we
03:33:01   3   filed a motion regarding the sufficiency of defendants'
03:33:06   4   objections to plaintiffs' first request for admissions.
03:33:09   5          You may recall we have spoken about this a couple
03:33:12   6   times before.  It's the business record authenticity issue on
03:33:17   7   documents, and we have set that matter for hearing and status
03:33:23   8   conference.  We continue to talk on that.
03:33:26   9          THE COURT:  Okay.
03:33:29  10          MR. GLICKSTEIN:  There is the stipulated date for
03:33:32  11   defendants' opposition is the 23rd at noon.
03:33:38  12          THE COURT:  Okay, Steve.
03:33:38  13          Let's see, the other one was the handling of
03:33:41  14   current PFS deficiencies?  Anything on that one?
03:33:46  15          MR. DAVIS:  Judge, this is an issue that I think we
03:33:49  16   might have briefly spoke about.  You'll recall that the PSC has
03:33:55  17   been cooperating with the Court, as well as with defendants, to
03:33:59  18   try to weed through these efficient profile forms.
03:34:05  19          What we worked out at the end of last year was
03:34:09  20   that we would get a list from defendants at the end of the
03:34:13  21   month or by the first of the month, and then we would have the
03:34:15  22   full month to go through and try to clean it up, and then the
03:34:19  23   following month, they would file whatever motion they did.
03:34:23  24          I think the first one that was done was done in
03:34:26  25   January of the year, and then after we worked through it, we
```
*OFFICIAL TRANSCRIPT*

## 7

```
03:34:32   1   filed or we dealt with the filing that came March 16th.  The
03:34:38   2   next one, I think, was they provided their list in July,
03:34:41   3   July 1st of the year, and then September 4th they filed their
03:34:46   4   motion.
03:34:47   5          We're now are at the point where we're dealing
03:34:50   6   with a number of the bundled complaint folks.  So we got a list
03:34:59   7   of 574 cases on October 18th, and quite frankly, the issue is
03:35:08   8   are these ripe to be heard at this status conference?  We
03:35:12   9   really think working through these a little more will help
03:35:15  10   because we try to get through them as best as we can.  Sindhu
03:35:23  11   has been working on it.  We got through 300 and some odd of
03:35:27  12   them, and we're just not there.
03:35:31  13          We're happy to go forward, if that's what the
03:35:34  14   Court wants to do.  But our concern is we're going to end up
03:35:37  15   having a lot of lawyers on the phone, and we're going to spend
03:35:41  16   a tremendous amount of time dealing with issues like dual
03:35:45  17   representations and other issues, and we just think that giving
03:35:49  18   us more time to try to work through them will be efficient for
03:35:53  19   everybody.
03:35:54  20          THE COURT:  How do you see it, Susan or Steven?
03:36:02  21          MS. SHARKO:  The way we see it is there hasn't been an
03:36:05  22   agreed-upon protocol, and my office has been calling Sindhu for
03:36:08  23   the past two weeks or longer to try to get this worked out, and
03:36:13  24   I think she must be tied up with other things.  We're anxious
03:36:23  25   to separate the wheat from the chaff and get the cases that
```
*OFFICIAL TRANSCRIPT*

## 8

```
03:36:23   1   should be dismissed dismissed.
03:36:28   2          So Lenny is right.  We gave them the list of 574
03:36:30   3   on October 18.  When we filed the motions on November 3, the
03:36:38   4   list was down to 335, and new plaintiffs come off the list
03:36:42   5   every week.  We'll continue to take people off the list as they
03:36:47   6   submit PFS's, but unless people's feet are held to the fire and
03:36:54   7   there is a process, it won't happen.
03:36:56   8          So our suggestion is that we go forward with
03:36:59   9   these people in November, and we're happy to formalize the
03:37:07  10   protocols with Sindhu if the plaintiffs are willing to do that,
03:37:11  11   but we really don't want to see any further delay.
03:37:15  12          THE COURT:  Let's do this:  Lenny, get the list of the
03:37:17  13   people that still haven't responded, and I'll do a minute entry
03:37:22  14   on those particular people ordering them to show cause, maybe
03:37:32  15   not at this meeting, I'll go the next one, but get the list by
03:37:36  16   this meeting, and then I'll make the list specific to those
03:37:41  17   individuals and we'll get them focused.
03:37:50  18          MR. DAVIS:  Thank you, Your Honor.
03:37:51  19          THE COURT:  What's the next one?  The next one was,
03:37:55  20   let's see, plaintiffs' responses to defendants' discovery
03:38:02  21   requests for communications concerning the ROCKET.  Who is
03:38:08  22   that?  Who wants to speak on that?
03:38:10  23          MR. BARR:  Your Honor, this is Brian Barr.
03:38:10  24          THE COURT:  Yes, Brian.
03:38:13  25          MR. BARR:  We have reached an agreement on that where
```
*OFFICIAL TRANSCRIPT*

9

```
03:38:15  1   the defendants have granted us an extension until Wednesday to
03:38:19  2   provide them our responses, so we are putting that together and
03:38:23  3   providing those responses.
03:38:25  4           THE COURT:  Okay.  Great.
03:38:26  5           How about the next one, defendants' discovery
03:38:28  6   concerning the third-party financing of bellwether plaintiffs
03:38:32  7   cases?  Andy was going to get that together.  What's happened,
03:38:35  8   Steve?
03:38:38  9           MR. BIRCHFIELD:  I apologize.  Background noise.
03:38:42 10           Consistent with what the Court addressed last
03:38:45 11   week and the week before, we have provided responses for the
03:38:50 12   individual bellwether plaintiffs.  There are no third-party
03:38:55 13   financing agreements for those plaintiffs, so we've responded
03:38:58 14   to that effect.
03:39:00 15           We've maintained our objection consistent with
03:39:03 16   what we understood the Court to describe for us.  We maintained
03:39:08 17   our objection as it pertains to lawyer findings.
03:39:08 18           THE COURT:  Yes.
03:39:13 19           Okay.  All right.  How about the defendants'
03:39:15 20   request for production of documents, number 6, in connection
03:39:19 21   with the plaintiffs' expert depositions?  What is that about?
03:39:24 22           MS. SHARKO:  I'll speak to that.  This is Susan.
03:39:26 23           Going back to third-party's funding,
03:39:29 24   Andy Birchfield and I spoke this morning in court, and I asked
03:39:33 25   if he would give us certain information in a letter and just to
```
OFFICIAL TRANSCRIPT

10

```
03:39:39  1   round it out so that it's clear that we know what the answer is
03:39:44  2   as to these four plaintiffs and he agreed to do that.
03:39:47  3           I was going to check with Bayer and make sure
03:39:50  4   that was okay with Bayer and Andy.  I have checked with them
03:39:53  5   and it's okay with them.
03:39:53  6           THE COURT:  Okay.  Great.
03:39:55  7           MS. SHARKO:  So that issue is over.
03:39:55  8           THE COURT:  Okay.
03:39:58  9           MS. SHARKO:  On the deposition protocol order, the
03:40:01 10   issue is that when the defendants negotiated the protocol
03:40:07 11   order, in the order there is a list of what the experts are to
03:40:11 12   produce at depositions.  We did not intend that list to be all
03:40:14 13   encompassing for all experts but, rather, a starting point.
03:40:20 14           We've met and conferred on that, and the
03:40:23 15   plaintiff asked us to send us a list of what we believe
03:40:27 16   specific experts should have produced beyond that, as they've
03:40:32 17   objected to everything we asked for.
03:40:36 18           So, so far I've sent them what we want for one
03:40:40 19   expert, Dr. Busey.  I guess the issue is ripe for Your Honor.
03:40:48 20   Dr. Busey apparently prepared a report in the Pradaxa
03:40:54 21   litigation, which is a drug in the same novel oral
03:40:59 22   anticoagulant class, discussing Pradaxa and Warfarin.
03:41:05 23           There is a common thread, we believe, because
03:41:07 24   both medicines are compared to Warfarin, and Dr. Busey has done
03:41:10 25   extensive research in Warfarin.  Then the plaintiff's experts
```
OFFICIAL TRANSCRIPT

11

```
03:41:14  1   generally argue that Pradaxa a better drug than Xarelto; so,
03:41:21  2   we've asked for a copy of his report from the Pradaxa
03:41:24  3   litigation, and the plaintiffs have said no; so, that's what we
03:41:27  4   would like for Dr. Busey.
03:41:31  5           MR. BARR:  Your Honor, this is Brian.
03:41:33  6           I didn't know that we responded.  The answer is
03:41:35  7   really our hands are tied for multiple different reasons.
03:41:40  8           There are at least two orders in place that, from
03:41:45  9   Judge Herndon -- he was the judge in charge of the Pradaxa
03:41:50 10   MDL -- that requires any of the reports drafted never be made
03:41:54 11   public, never being produced and required them to be destroyed;
03:41:59 12   so, I'm not sure how we're supposed to produce them.
03:42:02 13           But on top of that, these reports were never
03:42:06 14   actually served in the Pradaxa litigation, so they are drafts
03:42:11 15   and not discoverable.
03:42:13 16           So, I mean, given that there is an order in place
03:42:17 17   that prohibits their production and required their destruction
03:42:20 18   and that they are drafts, I don't think it's appropriate or
03:42:25 19   possible even to produce them.
03:42:29 20           THE COURT:  Susan --
03:42:31 21           MS. SHARKO:  I haven't seen any of those orders
03:42:32 22   (speaking simultaneously).
03:42:32 23           THE COURT:  -- do you want to respond?
03:42:32 24           All right.  Let's check into that.  My thinking
03:42:35 25   is this:  The draft reports, I thought you all had agreed that
```
OFFICIAL TRANSCRIPT

12

```
03:42:43  1   that wasn't producible.  Generally speaking, drafts are not
03:42:47  2   producible.
03:42:51  3           If the report exists on Pradaxa, we're dealing
03:42:56  4   with discovery and we're dealing with credibility, and those
03:42:59  5   issues, it should be produced if it exists, if it's not
03:43:06  6   inconsistent with an outstanding order.
03:43:09  7           I don't want to get anybody crosswise with that,
03:43:12  8   but it seems to me that it's relevant, at least in discovery,
03:43:17  9   and the witness can be questioned on it.  I mean, this is prior
03:43:22 10   statements of a witness in certain areas, but they may not
03:43:26 11   exist; so, the answer may not be available.
03:43:32 12           So let's check on that, Susan.  Get with Brian
03:43:36 13   and see whether or not you can pull up those orders and see
03:43:41 14   what the situation is and ask the witness whether he produced
03:43:44 15   any report and where is it?
03:43:48 16           MS. SHARKO:  He's been deposed and he testified that
03:43:51 17   there was a report, and I believe he testified that he has it,
03:43:55 18   and I don't think he said it was a draft, and that's why we
03:44:00 19   pursued that.
03:44:01 20           MR. BARR:  Your Honor, I wasn't involved in Pradaxa but
03:44:05 21   my firm was, but I've been informed -- you know, I'll check
03:44:09 22   into this further -- I've been informed those reports were
03:44:13 23   never actually produced in the litigation; so, until they are
03:44:17 24   produced they are drafts.
03:44:20 25           THE COURT:  All right.  Let's check that out and we'll
```
OFFICIAL TRANSCRIPT

13

```
03:44:21   1   put that on the agenda the next time.
03:44:26   2              Okay.  Anything else that, Susan, you have
03:44:31   3   anything?  David?  Anybody?
03:44:35   4              Go ahead, Lenny.
03:44:36   5         MR. DAVIS:  Judge, this is Lenny.  We have our status
03:44:40   6   conference, I believe it's the 29th, is it?
03:44:43   7         THE COURT:  Yes.
03:44:45   8         MR. DAVIS:  The 29th and we've got Thanksgiving in
03:44:47   9   here.  We're trying to get the joint report out to Your Honor
03:44:51  10   before Thanksgiving.  We're hopeful but I can't guarantee it.
03:44:56  11         THE COURT:  When is that, by the way?
03:45:01  12         MR. MEUNIER:  Thanksgiving is next Thursday, Judge.
03:45:04  13         THE COURT:  Okay.  That's right, it's on Thursday.
03:45:06  14         MR. MEUNIER:  We may be able to get it in by Wednesday,
03:45:09  15   the 23rd, but if we can't, we may need to slide until Monday,
03:45:13  16   the 28th.
03:45:14  17         THE COURT:  That will be all right.
03:45:14  18         MR. DAVIS:  Okay.
03:45:15  19         THE COURT:  Okay.  All right.  Anything else?
03:45:18  20              Steve, do you have anything?
03:45:20  21         MR. GLICKSTEIN:  Nothing else, Your Honor.
03:45:21  22         THE COURT:  Susan?
03:45:23  23         MS. SHARKO:  No, sir.  Thank you.
03:45:24  24         THE COURT:  Brian, anything?
03:45:26  25         MR. BARR:  That's it, Your Honor.  Thank you.
```

**OFFICIAL TRANSCRIPT**

14

```
03:45:27   1         THE COURT:  Lenny?  Jerry?
03:45:29   2         MR. DAVIS:  I'm good.  Thank you.
03:45:30   3         MR. MEUNIER:  We're good, Judge.  Thank you for your
03:45:33   4   help.
03:45:34   5         THE COURT:  Have a good Thanksgiving, everybody.
03:45:38   6   Bye-bye now.
           7              (WHEREUPON, at 3:45 p.m., the proceedings were
           8   concluded.)
           9                            * * *
          10
          11              REPORTER'S CERTIFICATE
          12       I, Cathy Pepper, Certified Realtime Reporter, Registered
              Merit Reporter, Certified Court Reporter in and for the State
          13  of Louisiana, Official Court Reporter for the United States
              District Court, Eastern District of Louisiana, do hereby
          14  certify that the foregoing is a true and correct transcript to
              the best of my ability and understanding from the record of the
          15  proceedings in the above-entitled and numbered matter.
          16
                              s/Cathy Pepper
          17                  Cathy Pepper, CRR, RMR, CCR
                              Certified Realtime Reporter
          18                  Registered Merit Reporter
                              Official Court Reporter
          19                  United States District Court
                              Cathy_Pepper@laed.uscourts.gov
          20
          21
          22
          23
          24
          25
```

**OFFICIAL TRANSCRIPT**