# EXHIBIT 1

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE) CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

SEP 2 9 2016

Sherri R. Carter, Executive Officer/Clerk
By: Judi Lara, Deputy

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

JOHNSON & JOHNSON COMPANY; MCKESSON CORPORATION;
and DOES 1-100, INCLUSIVE

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

HEIDI RORICK-EVANS, an individual and as successor-in-interest of
TERRENCE HOWARD EVANS, deceased

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is: Los Angeles County Superior Court<br>*(El nombre y dirección de la corte es):*<br>111 North Hill Street<br>Los Angeles, CA 90012 | **CASE NUMBER:**<br>*(Número del Caso):*<br>BC 6 3 5 7 1 2 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Haffner Law PC, 445 S. Figueroa Street, Suite 2325, Los Angeles, CA 90071. (213) 514-5681

| | | | |
|---|---|---|---|
| DATE: SEP 2 9 2016<br>*(Fecha)* | SHERRI R. CARTER<br>Clerk, by<br>*(Secretario)* | Judi Lara | , Deputy<br>*(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [ ] on behalf of *(specify):*

under: [ ] CCP 416.10 (corporation)    [ ] CCP 416.60 (minor)
       [ ] CCP 416.20 (defunct corporation)  [ ] CCP 416.70 (conservatee)
       [ ] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)
       [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

[SEAL]

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]
SUMMONS
Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

1  Joshua H. Haffner, SBN 188652
   (jhh@haffnerlawyers.com)
2  Levi M. Plesset, SBN 296039
   (lp@haffnerlawyers.com)
3  HAFFNER LAW PC
   445 South Figueroa Street, Suite 2325
4  Los Angeles, CA 90071
   Tel:    (213) 514-5681
5  Fax:    (213) 514-5682

6  Louis J. Cutrone, SBN 185151
   (lou@cutronelaw.com)
7  CUTRONE & ASSOCIATES
   15260 Ventura Boulevard, Suite 670
8  Sherman Oaks, CA 91403
   Tel:    (818) 344-1737
9  Fax:    (818) 921-7720

10 Attorneys for Plaintiffs

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

SEP 29 2016

Sherri R. Carter, Executive Officer/Clerk
By: Judi Lara, Deputy

11          SUPERIOR COURT OF THE STATE OF CALIFORNIA

12                   COUNTY OF LOS ANGELES

13

14 HEIDI RORICK-EVANS, an individual and as
   successor-in-interest of TERRENCE HOWARD
15 EVANS, deceased,

16                 Plaintiff,

17 v.

18 JOHNSON & JOHNSON COMPANY;
   MCKESSON CORPORATION; AND DOES 1-
19 100, inclusive,

20                 Defendants.

21

22

23

24

25

26

27

28

CASE NO. _____ BC 6 35 71 2

COMPLAINT FOR DAMAGES
   1. Strict Products Liability
   2. Negligence
   3. Express Breach of Warranty
   4. Breach of Implied Warranty
   5. Violations of Cal. Bus. & Prof. Code §
      17200
   6. Violations of Cal. Bus. & Prof. Code §
      17500
   7. Wrongful Death

JURY TRIAL DEMANDED

---

COMES NOW the Plaintiff, Heidi Rorick-Evans by and through the undersigned counsel, hereby brings this Complaint individually for damages against the Defendants, and alleges the following:

## INTRODUCTION

1. This is an action for damages relating to the Defendants' design, manufacture, sale, marketing, advertising, promotion and distribution of Xarelto®.

2. The use of Xarelto® can increase the risk of life-threatening hemorrhaging including stroke, internal bleeding, and other serious health conditions.

3. Plaintiff's husband, decedent Terrence Howard Evans ingested Xarelto® and died due to a brain hemorrhage as a result.

## PARTIES, JURISDICTION AND VENUE

4. Plaintiff Heidi Rorick Evans at all times relevant hereto, was, and currently is, a resident and citizen of the State of California. Plaintiff's husband, Terrence Howard Evans (deceased), suffered a brain hemorrhage and perished as a direct result of ingestion of the pharmaceutical product Xarelto®. Herein "Ingesting Plaintiff's Decedent."

5. Defendant JOHNSON & JOHNSON (hereinafter "J&J"), is a fictitious name adopted by Defendant JOHNSON & JOHNSON COMPANY, a New Jersey corporation which has its principal place of business at One Johnson & Johnson Plaza, New Brunswick, Middlesex County, New Jersey 08933. Defendant JOHNSON & JOHNSON was engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling Xarelto®. Johnson & Johnson does business in the California and other states by, among other things, designing, developing, testing, manufacturing, labeling, packaging, distributing, marketing, selling and/or profiting from Xarelto® in California and throughout the United States.

6. Defendant McKesson Corporation (hereinafter "McKesson") is a California Corporation with its principal place of business at One Post Street, San Francisco, California 941041. At all relevant times, McKesson was in the business of manufacturing, promoting, labeling, selling,

---

2
COMPLAINT

1  marketing, packaging, re-packaging and distributing Xarelto® used by Plaintiff.  Defendant does

2  business throughout the United States and in the State of California and regularly and continuously

3  did business within this judicial district including manufacturing, marketing, advertising, selling and

4  distributing Xarelto®.

5        7.    Defendants J&J and McKesson shall be referred to herein individually by name or jointly

6  as "Defendants."

7        8.    At all times alleged herein, Defendants shall include any and all named or un-named

8  parent companies, parent corporations, subsidiaries, affiliates, divisions, franchises, partners, joint

9  venturers, and any organizational units of any kind, their predecessors, successors, successors in

10  interest, assignees, and their officers, directors, employees, agents, representatives and any and all

11  other persons acting on their behalf.

12        9.    At all times herein mentioned, each of the Defendants was the agent, servant, partner,

13  predecessor in interest, aider and abettor, co-conspirator, and joint venturer of each of the remaining

14  Defendants thereby operating and acting with the purpose and scope of said agency, service,

15  employment, partnership, conspiracy and joint venture.

16       10.   At all times relevant and material hereto, Defendants were engaged in the business of

17  developing, designing, licensing, manufacturing, distributing, selling, marketing, and or introducing

18  into interstate commerce throughout the United States, and in California, either directly or indirectly,

19  through third-parties, subsidiaries and/or related entities, the anti-coagulant pharmaceutical Xarelto®.

20       11.   This case is one that involves both a California plaintiff and two California defendants,

21  therefore making California State court the proper jurisdiction for this litigation.

22  ## GENERAL ALLEGATIONS

23       12.   Defendants, directly or by and through their agents, apparent agents, servants or

24  employees designed, manufactured, marketed, advertised, distributed, promoted, labeled, tested and

25  sold Xarelto® as an anti-coagulant primarily used to reduce the risk of stroke and systemic embolism

1    in patients with non-valvular atrial fibrillation, to treat deep vein thrombosis ("DVT"), to treat

2    pulmonary embolisms ("PE"), and/or to reduce the risk of recurrence of DVT and or PE.

3         13.   Defendants' boxed warning did not address the increased risk for serious and fatal

4    bleeding, despite their knowledge that that Xarelto® can cause life threatening, irreversible bleeds.

5         14.   Due to the defective nature of Xarelto®, persons who were prescribed and ingested

6    Xarelto®, for even a brief period of time, including the Ingesting Plaintiff's Decedent herein, were at

7    increased risk for developing life-threatening bleeds.   Due to the flawed formulation of Xarelto®,

8    which, according to Defendants, does not require regular blood monitoring or frequent doctor

9    follow-up, raises concerns about the risk of stroke, bleeding, and blood clots if not taken properly or

10   absorbed properly, particularly in patients with poor renal function.

11        15.   Defendants concealed their knowledge that Xarelto® can cause life threatening,

12   irreversible bleeds from the Ingesting Plaintiff's Decedent, other consumers, the general public, and

13   the medical community.   Indeed, the Defendants did not properly warn of the irreversible nature of

14   Xarelto® in the "Warnings and Precautions" section of the products warning label.   The only

15   warnings provided by Defendants were as follows:

16

17   --------------------------WARNINGS AND PRECAUTIONS---------------------------
     • Risk of bleeding: XARELTO can cause serious and fatal bleeding. Promptly
18     evaluate signs and symptoms of blood loss. (5.2)
     • Pregnancy related hemorrhage: Use XARELTO with caution in pregnant
19     women due to the potential for obstetric hemorrhage and/or emergent
       delivery. Promptly evaluate signs and symptoms of blood loss. (5.7)
20   • Prosthetic heart valves: XARELTO use not recommended (5.8)

21

22        Specifically, Defendants did not adequately inform consumers and the prescribing medical

23   community about the risks of uncontrollable bleeds associated with Xarelto® usage, nor did

24   Defendants warn or otherwise advise on how to intervene and stabilize a patient should a bleed

25   occur.

26        16.   Importantly, Xarelto® still does not have a "black box" warning informing patients or

27

28

prescribing doctors know that Xarelto® can cause irreversible bleeds.  In fact, the August 2013

Highlights of Prescribing Information only has a "black box" warning stating the following:

---

**WARNING: (A) PREMATURE DISCONTINUATION OF XARELTO INCREASES THE RISK OF THROMBOTIC EVENTS, and (B) SPINAL/EPIDURAL HEMATOMA**
*See full prescribing information for complete boxed warning*

**PREMATURE DISCONTINUATION OF XARELTO INCREASES THE RISK OF THROMBOTIC EVENTS**
Premature discontinuation of any anticoagulant, including XARELTO, increases the risk of thrombotic events. To reduce this risk, consider coverage with another anticoagulant if XARELTO is discontinued for a reason other than pathological bleeding or completion of a course of therapy (2.2, 2.6, 5.1, 14.1).

**SPINAL/EPIDURAL HEMATOMA**
Epidural or spinal hematomas have occurred in patients treated with XARELTO who are receiving neuraxial anesthesia or undergoing spinal puncture. These hematomas may result in long-term or permanent paralysis (5.2, 5.3, 6.2).

Monitor patients frequently for signs and symptoms of neurological impairment and if observed, treat urgently. Consider the benefits and risks before neuraxial intervention in patients who are or who need to be anticoagulated (5.3).

---

17. Even in the "Warnings and Precautions" section of the August 2013 Highlights of

Prescribing Information, the irreversible nature of the medication Xarelto® was not revealed to

patients or their prescribing doctors.  Defendants merely indicated that there was a risk for bleeding

and side-stepped the important issue of reversing the effects of Xarelto® should a bleed occur as seen

below:

---

----------------------------**WARNINGS AND PRECAUTIONS**----------------------------
* Risk of bleeding: XARELTO can cause serious and fatal bleeding. Promptly evaluate signs and symptoms of blood loss. (5.2)
* Pregnancy related hemorrhage: Use XARELTO with caution in pregnant women due to the potential for obstetric hemorrhage and/or emergent delivery. Promptly evaluate signs and symptoms of blood loss. (5.7)
* Prosthetic heart valves: XARELTO use not recommended (5.8)

---

18. The current warning is simply inadequate. The Defendants have failed and continue to

fail in their duties to warn and protect the consuming public, including the Ingesting Plaintiff's

Decedent herein.

19. Even if the warnings were sufficient, which Plaintiff strongly denies, Xarelto® still lacks

any benefit sufficient to tolerate the extreme risk posed by the ingestion of this drug. Xarelto® is quite simply dangerous and defective as formulated. The Defendants should withdraw Xarelto® from the market.

20. Defendants willfully, wantonly and with malice withheld the knowledge of increased risk of irreversible bleeds in users of Xarelto®.

21. With the knowledge of the true relationship between use of Xarelto® and irreversible bleeds, rather than taking steps to pull the drug off the market, provide strong warnings, or create an antidote, Defendants promoted and continue to promote Xarelto® as a safe and effective treatment for AFib.

22. While Defendants enjoy great financial success from their expected blockbuster drug, Xarelto®, they continue to place American citizens at risk of severe bleeds and death.

23. Consumers, including Ingesting Plaintiff's Decedent, Terrence Howard Evans, who have used Xarelto® to reduce the risk of stroke due to Afib or to reduce the risk of blood clots, have several alternative safer products available to treat the conditions and have not been adequately warned about the significant risks and lack of benefits, associated with Xarelto® therapy.

24. Defendants, through their affirmative misrepresentations and omissions, actively concealed from Ingesting Plaintiff's Decedent, Terrence Howard Evans, and his physicians, the true and significant risks associated with Xarelto® use.

25. As a result of Defendants' actions, Ingesting Plaintiff's Decedent, Terrence Howard Evans and his physicians were unaware, and could not have reasonably known or have learned through reasonable diligence, that Ingesting Plaintiff's Decedent would be exposed to the risks identified in this Complaint. The increased risks and subsequent medical damages associated with Ingesting Plaintiff's Xarelto® use were the direct and proximate result of Defendants' conduct.

///

///

## FACTUAL ALLEGATIONS

26. Ingesting Plaintiff's Decedent, Terrence Howard Evans, was prescribed and began taking Xarelto® upon direction of Ingesting Plaintiff's Decedent's physician. Subsequently, as a direct result of Ingesting Plaintiff's Decedent's ingestion of Xarelto®, Ingesting Plaintiff's Decedent suffered a brain hemorrhage as a result of ingesting Xarelto® and perished on August 7, 2015.

27. As a proximate result of Defendants' acts and omissions, Ingesting Plaintiff's Decedent died due to ingestion of Xarelto®. Plaintiff Heidi Rorick-Evans brings this action as a result of losing her husband as a result of his ingestion of Xarelto®, as an individual and as successor-in-interest of Terrence Howard Evans, deceased.

28. Ingesting Plaintiff's Decedent would not have used Xarelto® had Defendants properly disclosed the risks associated with its use.

29. **WHEREFORE**, Plaintiff prays for judgment against Defendants, jointly and severally, in an amount, which will compensate Plaintiff for her damages.

### CAUSE OF ACTION I:

### STRICT PRODUCTS LIABILITY

30. Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

31. At all times relevant and material hereto, Defendants were engaged in the business of designing, manufacturing, testing, marketing, and placing into the stream of commerce pharmaceuticals, including the Xarelto® at issue in this lawsuit, for the sale to, and use by, members of the public. The Xarelto® manufactured by Defendants reached Ingesting Plaintiff without substantial change and was ingested as directed. The Xarelto® was defective and unreasonably dangerous when it entered into the stream of commerce and when used by Ingesting Plaintiff.

32. Defendants, as manufacturers and distributers of pharmaceutical drugs, are held to the level of knowledge of an expert in the field, and further, Defendants knew or should have known

that warnings and other clinically relevant information and data which they distributed regarding the risks of irreversible bleeds and other injuries and death associated with the use of Xarelto® were inadequate.

33. Ingesting Plaintiff's Decedent did not have the same knowledge as Defendants and no adequate warning or other clinically relevant information and data was communicated to Ingesting Plaintiff's Decedent or to Ingesting Plaintiff's Decedent's treating physicians.

34. Defendants had a continuing duty to provide consumers, including Ingesting Plaintiff's Decedent and Ingesting Plaintiff's Decedent's physicians, with warnings and other clinically relevant information and data regarding the risks and dangers associated with Xarelto®, as it became or could have become available to Defendants.

35. Defendants marketed, promoted, distributed and sold an unreasonably dangerous and defective prescription drug, Xarelto®, to health care providers empowered to prescribe and dispense Xarelto® to consumers, including Ingesting Plaintiff, without adequate warnings and other clinically relevant information and data. Through both omission and affirmative misstatements, Defendants misled the medical community about the risk and benefit balance of Xarelto®, which resulted in injury to Ingesting Plaintiff.

36. Despite the fact that Defendants knew or should have known that Xarelto® caused unreasonable and dangerous side effects, they continued to promote and market Xarelto® without stating that there existed safer and more or equally effective alternative drug products and/or providing adequate clinically relevant information and data.

37. Defendants knew or should have known that consumers, Ingesting Plaintiff's Decedent specifically, would foreseeably and needlessly suffer injury or death as a result of Defendants' failures.

38. Defendants failed to provide timely and adequate warnings to physicians, pharmacies, and consumers, including Ingesting Plaintiff's Decedent and to his intermediary physicians, in the following ways:

   a. Defendants failed to include adequate warnings and/or provide adequate clinically

relevant information and data that would alert Ingesting Plaintiff's Decedent and his physicians to the dangerous risks of Xarelto® including, among other things, irreversible bleeds;

b.  Defendants failed to provide adequate post-marketing warnings and instructions after the Defendants knew or should have known of the significant risks of, among other things, irreversible bleeds;

c.  Defendants continued to aggressively promote and sell Xarelto®, even after they knew or should have known of the unreasonable risks of irreversible bleeds from this drug.

39.  Defendants had an obligation to provide Ingesting Plaintiff's Decedent and his physicians with adequate clinically relevant information and data and warnings regarding the adverse health risks associated with exposure to Xarelto®, and/or that there existed safer and more or equally effective alternative drug products.

40.  By failing to provide Ingesting Plaintiff's Decedent and his physicians with adequate clinically relevant information and data and warnings regarding the adverse health risks associated with exposure to Xarelto®, and/or that there existed safer and more or equally effective alternative drug products, Defendants breached their duty of reasonable care and safety.

41.  Defendants' actions described above were performed willfully, intentionally, and with reckless disregard of the life and safety of the Ingesting Plaintiff and the general public.

42.  Plaintiff is entitled to punitive damages because Defendants' actions were reckless and without regard for the public's safety.  Defendants mislead both the medical community and the public at large, including Ingesting Plaintiff's Decedent and his physicians, by making false representations about and concealing pertinent information regarding Xarelto®.  Defendants downplayed, understated and disregarded their knowledge of the serious and permanent side effects associated with the use of Xarelto® despite possessing information that the product was unreasonably dangerous.

43.  As a direct and proximate result of the actions and inactions of the Defendants as set forth above, Ingesting Plaintiff's Decedent was exposed to Xarelto®, perished, causing Plaintiff's damages set forth herein.

44. As to **Cause of action I- Strict Products Liability**, Plaintiff reserves her right to amend this cause of action.

## CAUSE OF ACTION II:

### NEGLIGENCE

45. Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

46. Defendants owed a duty to the general public, and specifically to the Ingesting Plaintiff's Decedent, to exercise reasonable care in the design, study, development, manufacture, promotion, sale, marketing and distribution of their prescription medications, including the Xarelto® at issue in this lawsuit. Defendants failed to exercise reasonable care in the design of Xarelto® because as designed, Xarelto was capable of causing serious personal injuries such as those suffered by Ingesting Plaintiff's Decedent during foreseeable use. Defendants also failed to exercise reasonable care in the marketing of Xarelto® because they failed to warn, that as designed, Xarelto® was capable of causing serious personal injuries such as those suffered by Ingesting Plaintiff's Decedent during foreseeable use.

47. Defendants breached their duty and were negligent in, but not limited to, the following actions, misrepresentations, and omissions toward Ingesting Plaintiff's Decedent:

    a. Failing to use due care in developing, testing, designing, and manufacturing Xarelto® so as to avoid the aforementioned risks to individuals when Xarelto® was being used for treatment;

    b. Failing to accompany their product with proper or adequate warnings, or labeling regarding adverse side effects and health risks associated with the use of Xarelto® and the comparative severity and duration of such adverse effects;

    c. In disseminating information to Ingesting Plaintiff's Decedent and his physicians that was negligently and materially inaccurate, misleading, false, and unreasonably dangerous to patients such as Ingesting Plaintiff;

    d. Failing to accompany their products with proper or adequate rate of incidence or prevalence of irreversible bleeds;

e.  Failing to provide warnings or other information that accurately reflected the symptoms, scope, and severity of the side effects and health risks;

f.  Failing to conduct adequate pre-clinical and clinical testing and post- marketing surveillance to determine the safety of Xarelto®;

g.  Failing to warn Ingesting Plaintiff's Decedent, the medical and healthcare community, and consumers, that the product's risk of harm was unreasonable and that there were safer and effective alternative medications available to Ingesting Plaintiff's Decedent and other consumers;

h.  Failing to provide adequate training or information to medical care providers for appropriate use and handling of Xarelto® and patients taking Xarelto®;

i.  Failing to adequately test and/or warn about the use of Xarelto®, including, without limitations, the possible adverse side effects and health risks caused by the use of Xarelto®;

j.  Failing to design and/or manufacture a product that could be used safely due to the lack of a known reversal agent or antidote;

k.  In designing, manufacturing, and placing into the stream of commerce a product which was unreasonably dangerous for its reasonably foreseeable use, which Defendant knew or should have known could cause injury to Ingesting Plaintiff's Decedent;

l.  Failing to remove Xarelto® from the market when Defendants' knew or should have known of the likelihood of serious side effects and injury to its users;

m. Failing to adequately warn users, consumers and physicians about the severity, scope and likelihood of bleeds and related dangerous conditions to individuals taking Xarelto®; and,

n.  Representing to physicians, including but not limited to Ingesting Plaintiff's Decedent's prescribing physicians, that this drug was safe and effective for use.

48.  The Xarelto® that caused the death of Ingesting Plaintiff's Decedent was in substantially the same condition when Ingesting Plaintiff's Decedent ingested it as it was in when it left the control of Defendants. Defendants' Xarelto®'s ability to cause serious personal injuries and damages, such as those suffered by Ingesting Plaintiff's Decedent, was not due to any voluntary action or contributory

1   negligence of Ingesting Plaintiff's Decedent.  Ingesting Plaintiff's Decedent consumed the Xarelto®

2   as directed and without change in its form or substance.

3        49.  Defendants' failure to exercise reasonable care in the design, dosing information,

4   marketing, warnings, and/or manufacturing of Xarelto® was a proximate cause of Ingesting Plaintiff's

5   Decedent's death and Plaintiff's damages.

6        50.  Plaintiff seeks all damages to which she, individually and as Ingesting Plaintiff's

7   Decedent's successor in interest, may be justly entitled.

8        51.  Plaintiff's injuries and damages are severe and permanent, and will continue into the

9   future.

10       52.  As to **Cause of action II-Negligence**, Plaintiff reserves her right to amend this cause of

11  action.

12                        <u>CAUSE OF ACTION III</u>

13                    EXPRESS BREACH OF WARRANTY

14

15       53.  Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully

16  set forth herein and further alleges as follows:

17       54.  Defendants researched, developed, designed, tested, manufactured, inspected, labeled,

18  distributed, marketed, promoted, sold, and/or otherwise released into the stream of commerce

19  Xarelto®, in the course of same, directly advertised or marketed the product to the FDA, healthcare

20  professionals and consumers, including Ingesting Plaintiff's Decedent, or persons responsible for

21  consumers.

22       55.  Xarelto® materially failed to conform to those representations made by Defendants in

23  package inserts, and otherwise, concerning the properties and effects of Xarelto®, respectively

24  manufactured and/or distributed and sold by Defendants, and which Ingesting Plaintiff's Decedent

25  purchased and ingested in direct or indirect reliance upon these express representations. Such failures

26  by Defendants constituted a material breach of express warranties made, directly or indirectly, to

27

28

---

Ingesting Plaintiff's Decedent concerning Xarelto® sold to Ingesting Plaintiff's Decedent.

56.  As a direct, foreseeable, and proximate result of Defendants' breaches of express warranties, Ingesting Plaintiff's Decedent perished, after Ingesting Plaintiff's Decedent's physician, in reasonable reliance upon such express warranties, prescribed for Ingesting Plaintiff's Decedent the use of Xarelto®.  Ingesting Plaintiff's Decedent purchased and ingested Xarelto® as prescribed and instructed by Ingesting Plaintiff's Decedent's physician, leading to Ingesting Plaintiff's Decedent's death and Plaintiff's damages.

57.  Defendants' actions described above were performed willfully, intentionally, and with reckless disregard of the life and safety of the Ingesting Plaintiff and the general public.

58.  Plaintiff is entitled to punitive damages because Defendants' actions were reckless and without regard for the public's safety.  Defendants mislead both the medical community and the public at large, including Ingesting Plaintiff's Decedent and his physicians, by making false representation about and concealing pertinent information regarding Xarelto®.  Defendants downplayed, understated and disregarded its knowledge of the serious and permanent side effects associated with the use of Xarelto® despite information demonstration the product was unreasonably dangerous.

59.  Plaintiff's damages are severe and permanent, and will continue into the future.  As a result, Plaintiff seeks actual and punitive damages from the Defendants.

60.  As to **Cause of action III- Express Breach of Warranty**, Plaintiff reserves her right to amend this cause of action.

## CAUSE OF ACTION IV

## BREACH OF WARRANTY – BREACH OF IMPLIED WARRANTY

61.  Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

62.  Defendants researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and/or otherwise released into the stream of commerce

Xarelto®, in the course of same, directly advertised or marketed the product to the FDA, health care professionals and consumers, including Ingesting Plaintiff's Decedent or persons responsible for consumer.

63. Defendants impliedly warranted their Xarelto® product, which they manufactured and/or distributed and sold, and which Ingesting Plaintiff's Decedent purchased and ingested, to be of merchantable quality and fit for the common, ordinary, and intended uses for which the product was sold.

64. Defendants breached their implied warranties of the Xarelto® product sold to Ingesting Plaintiff's Decedent because this product was not fit for its common, ordinary, and intended use.

65. As a direct, foreseeable and proximate result of Defendants' breaches of implied warranties, Plaintiff suffered consequential economic and other losses, as described above, when Ingesting Plaintiff's Decedent ingested Xarelto®, in reasonable reliance upon the implied warranties, leading to Ingesting Plaintiff's Decedent's death.

66. Defendants' actions described above were performed willfully, intentionally, and with reckless disregard of the life and safety of the Ingesting Plaintiff and the general public.

67. Plaintiff is entitled to punitive damages because Defendants' actions were reckless and without regard for the public's safety. Defendants mislead both the medical community and the public at large, including Ingesting Plaintiff's Decedent and his physicians, by making false representation about and concealing pertinent information regarding Xarelto®. Defendants downplayed, understated and disregarded its knowledge of the serious and permanent side effects associated with the use of Xarelto® despite information demonstration the product was unreasonably dangerous.

68. Plaintiff's damages are severe and permanent, and will continue into the future. As a result, Plaintiff seeks actual and punitive damages from the Defendants.

69. As to **Cause of action IV- Breach of Warranty, Breach of Implied Warranty,** Plaintiff reserves her right to amend this cause of action.

## CAUSE OF ACTION V

## VIOLATIONS OF CAL. BUS. & PROF. CODE §17200

70.    Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein and further allege as follows:

71.    California Business & Professions Code§ 17200 provides that unfair competition shall mean and include "all unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising".

72.    The acts and practices described above were and are likely to mislead the general public and therefore constitute unfair business practices within the meaning of California Business & Professions Code§ 17200. The acts of untrue and misleading advertising set forth in presiding paragraphs are incorporated by reference and are, by definition, violations of California Business & Professions Code§ 17200. This conduct is set forth fully herein, and includes, but is not limited to:

a.  Representing that Xarelto® is safe, fit, and effective for human use, knowing that said representations were false, and concealing that Xarelto® products had a serious propensity to cause injuries to users;

b.  Purposely downplaying and understating the health hazards and risks associated with Xarelto®.

c.  Issuing promotional literature and commercials deceiving potential users of Xarelto® by relaying positive information, including testimonials from satisfied users, and manipulating statistics to suggest widespread acceptability, while downplaying the known adverse and serious health effects and concealing material relevant information regarding the safety and efficacy of Xarelto®.

d.  Engaging in a practice undertaking unlawful, unfair or fraudulent acts by refraining from taking any action that would provide prescribing physicians with appropriate information and protect patients who use their products, including Ingesting Plaintiff's Decedent, such as failing to engage in proper pharmacovigilance, signal detection and follow up, review of the literature, regulatory review, updating labels and timely and properly implementing label changes and conducting proper research, tests and studies to ensure the continued safety of their products, and taking appropriate action to disseminate to prescribing physicians and healthcare providers appropriate and permitted product information and labels concerning safety issues and

safe prescribing practices for their products.

73.    These practices constitute unlawful, unfair and fraudulent business acts or practices, within the meaning of California Business & Professions Code § 17200.

74.    The unlawful, unfair and fraudulent business practices of Defendants described above present a continuing threat to members of the public in that Defendants continue to engage in the conduct described therein.

75.    As a result of their conduct described above, Defendants have been and will be unjustly enriched. Specifically, Defendants have been unjustly enriched by receipt of hundreds of millions of dollars in ill-gotten gains from the sale and prescription of Defendants' Xarelto® products in California, sold in large part as a result of the acts and omissions described herein.

76.    Plaintiff, pursuant to California Business & Professions Code § 17203, seeks an order of this court compelling the Defendants to provide restitution and injunctive relief calling for Defendants, and each of them, to cease unfair business practices in the future.

77.    Defendants' actions described above were performed willfully, intentionally, and with reckless disregard of the life and safety of the Ingesting Plaintiff and the general public.

78.    Plaintiff is entitled to punitive damages because Defendants' actions were reckless and without regard for the public's safety.  Defendants mislead both the medical community and the public at large, including Ingesting Plaintiff's Decedent and his physicians, by making false representation about and concealing pertinent information regarding Xarelto®.  Defendants downplayed, understated and disregarded its knowledge of the serious and permanent side effects associated with the use of Xarelto® despite information demonstration the product was unreasonably dangerous.

79.    As to Cause of action V-Violation Of Business & Professions Code § 17200, Plaintiff reserves her right to amend this cause of action.

///

///

///

<u>**CAUSE OF ACTION VI**</u>

**VIOLATIONS OF BUS. & PROF. CODE § 17500**

80.    Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein and further allege as follows:

81.    Plaintiff brings this cause of action pursuant to California Business & Professions Code § 17500.

82.    California Business & Professions Code§ 17500 provides that it is unlawful for any person, firm, corporation or association to dispose of property or perform services, or to induce the public to enter into any obligation relating thereto, through the use of untrue or misleading statements.

83.    At all times herein alleged Defendants have committed acts of disseminating untrue and misleading statements as defined by California Business & Professions Code§ 17500 by engaging in the following acts and practices with intent to induce members of the public to purchase and use Defendants' Xarelto® product:

    a.  Representing that Xarelto® is safe, fit, and effective for human use, knowing that said representations were false, and concealing that Xarelto® products had a serious propensity to cause injuries to users;

    b.  Purposely downplaying and understating the health hazards and risks associated with Xarelto®.

    c.  Issuing promotional literature and commercials deceiving potential users of Xarelto® by relaying positive information, including testimonials from satisfied users, and manipulating statistics to suggest widespread acceptability, while downplaying the known adverse and serious health effects and concealing material relevant information regarding the safety and efficacy of Xarelto®.

    d.  Engaging in a practice undertaking unlawful, unfair or fraudulent acts by refraining from taking any action that would provide prescribing physicians with appropriate information and protect patients who use their products, including Ingesting Plaintiff, such as failing to engage in proper pharmacovigilance, signal detection and follow up, review of the literature, regulatory review, updating labels and timely and properly implementing label changes and conducting proper research, tests and studies to ensure the continued safety of their products, and taking appropriate action to

disseminate to prescribing physicians and healthcare providers appropriate and permitted product information and labels concerning safety issues and safe prescribing practices for their products.

84.   The foregoing practices constitute false and misleading advertising within the meaning of California Business & Professions Code§ 17500.

85.   The acts of untrue and misleading statements by Defendants described herein above present a continuing threat to members of the public in that the acts alleged herein are continuous and ongoing, and the public will continue to suffer the harm alleged herein.

86.   As a result of their conduct described above, Defendants have been and will be unjustly enriched. Specifically, Defendants have been unjustly enriched by receipt of hundreds of millions of dollars in ill-gotten gains from the sale and prescription of the Xarelto® in California, sold in large part as a result of the acts and omissions described herein.

87.   Pursuant to California Business & Professions Code § 17535, Plaintiff seeks an order of this court compelling the Defendants to provide restitution and injunctive relief calling for Defendants, and each of them, to cease unfair business practices in the future.

88.   Plaintiff seeks restitution of the monies collected by Defendants, and each of them, and other injunctive relief to cease such false and misleading advertising in the future.

89.   Defendants' actions described above were performed willfully, intentionally, and with reckless disregard of the life and safety of the Ingesting Plaintiff and the general public.

90.   Plaintiff is entitled to punitive damages because Defendants' actions were reckless and without regard for the public's safety. Defendants mislead both the medical community and the public at large, including Ingesting Plaintiff's Decedent and his physicians, by making false representation about and concealing pertinent information regarding Xarelto®. Defendants downplayed, understated and disregarded its knowledge of the serious and permanent side effects associated with the use of Xarelto® despite information demonstration the product was unreasonably dangerous.

91.   As to **Cause of action VI-Violation Of Business & Professions Code § 17500,** Plaintiff

1   reserves her right to amend this cause of action.

2                          CAUSE OF ACTION VII

3                            WRONGFUL DEATH

4       92.  Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully

5   set forth herein and further alleges as follows:

6       93.  Plaintiff Heidi Rorick-Evans, individually and as successor in interest of Ingesting

7   Plaintiff's Decedent Terrence Howard Evans, brings Count XI of this complaint for the wrongful death

8   of Terrence Howard Evans.

9       94.  Successor plaintiffs have the right to bring the following survival action on behalf of

10  Terrence Howard Evans under Code of Civil Procedure section 377.30, et seq.  At all times material

11  hereto, Defendants owed a duty to Ingesting Plaintiff's Decedent to protect him against reasonably

12  foreseeable harms that a prudent person would anticipate were likely to result from the Defendants'

13  acts or omissions.

14      95.  Defendants breached that duty when they acted in the negligent and/or tortious manner set

15  forth in paragraphs above.

16      96.  Defendants' negligent and tortious conduct was the direct and proximate cause of

17  Decedent Terrance Howard Evans' death on August 7, 2015.

18      97.  If death had not ensued, Decedent Terrence Howard Evans would have been entitled to

19  maintain a cause of action and recover damages against Defendants because of the above alleged

20  negligent and tortious conduct.

21      98.  As a direct, foreseeable and proximate result of Defendants' conduct, Ingesting Plaintiff's

22  Decedent Terrence Howard Evans' estate has incurred medical and funeral and burial expenses.

23      99.  As a direct, foreseeable and proximate result of the Defendants' conduct, Decedent

24  Terrence Howard Evans' estate has been deprived of prospective net accumulations and loss of

25  earnings.

26      100.  In addition, Plaintiff demands payment for all economic losses suffered by the Decedent's

27

28

                                          19
                                      COMPLAINT

1  survivors, including costs of administration and other expenses reasonably associated with the

2  Decedent's death.

3      101.  Plaintiff claims damages of Defendants under and by virtue of California's Wrongful

4  Death Statute for the pecuniary value of future services, support, society, comfort, protection, moral

5  support, and contribution of the Decedent that would have been rendered to the wrongful death

6  beneficiaries for the expected remainder of their lives.

7      102. Defendants' actions described above were performed willfully, intentionally, and with

8  reckless disregard of the life and safety of the Ingesting Plaintiff and the general public.

9      103.  Plaintiff is entitled to punitive damages because Defendants' actions were reckless and

10  without regard for the public's safety.  Defendants mislead both the medical community and the public

11  at large, including Ingesting Plaintiff's Decedent and his physicians, by making false representation

12  about and concealing pertinent information regarding Xarelto®.  Defendants downplayed, understated

13  and disregarded its knowledge of the serious and permanent side effects associated with the use of

14  Xarelto® despite information demonstration the product was unreasonably dangerous.

15      104.  As to **Cause of action VII- Wrongful Death,** Plaintiff reserves her right to amend this

16  cause of action.

17                          <u>**PRAYER FOR RELIEF**</u>

18  **WHEREFORE,** Plaintiff prays for relief against defendants as follows:

19      1.  For judgment for damages sufficient to compensate Plaintiff for damages, including but not

20  limited to, past, present, and future economic benefits and the monetary loss equivalent of loss of comfort,

21  society, protection, love, companionship, comfort, care, assistance, affection, and moral support, as a

22  result of the loss of her husband, Decedent Terrence Howard Evans.

23      2.  For judgment for damages sufficient to compensate Plaintiff for damages, including but not

24  limited to, the losses and damages that Decedent Terrence Howard Evans suffered prior to his untimely

25  death.

26      3.  Any and all damages allowed under the law and laws or other statues and laws that apply and

27

28

for loss of consortium;

    4.  For an order of this court compelling the Defendants to provide restitution and injunctive relief calling for Defendants, and each of them, to cease unfair business practices in the future;

    5.  For punitive damages, in an amount to be awarded as provided by law;

    6.  For reasonable costs, including attorney's fees as permitted by law; and

    7.  For all other just and proper relief.

Dated: September 29, 2016

                   **HAFFNER LAW PC**

                   By: _____
                   Josh Haffner (SBN 188652)
                   Levi Plesset (SBN 296039)
                   Attorneys for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiffs respectfully request a jury trial of all issues presented in this Complaint.

Dated: September 29, 2016

RESPECTFULLY SUBMITTED,

**HAFFNER LAW PC**

By: _____
Josh Haffner (SBN 188652)
Levi Plesset (SBN 296039)
Attorneys for Plaintiff

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Joshua H. Haffner 188652; Levi Plesset, 296039<br>Haffner Law PC<br>445 S. Figueroa Street, Suite 2325<br>Los Angeles, CA 90071<br>TELEPHONE NO.: 213-514-5681   FAX NO.: 213-514-5682<br>ATTORNEY FOR *(Name)*: jhh@haffnerlawyers.com; lp@haffnerlawyers.com | CONFORMED COPY<br>ORIGINAL FILED<br>Superior Court of California<br>County of Los Angeles<br><br>SEP 29 2016<br><br>Sherri R. Carter, Executive Officer/Clerk<br>By: Judi Lara, Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Los Angeles
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA
BRANCH NAME: Central District

CASE NAME:
Heidi Rorick-Evans vs Johnson & Johnson Company

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: BC 6 3 5 7 1 2 |
|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter   ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☑ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. ☑ monetary   b. ☑ nonmonetary; declaratory or injunctive relief   c. ☑ punitive
4. Number of causes of action *(specify)*: 12
5. This case ☐ is ☑ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: September 21, 2016
Levi Plesset
_____
(TYPE OR PRINT NAME)                                                 (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
  Damage/Wrongful Death
Uninsured Motorist (46) *(if the
  case involves an uninsured
  motorist claim subject to
  arbitration, check this item
  instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
    Wrongful Death
Product Liability *(not asbestos or
  toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice–
    Physicians & Surgeons
  Other Professional Health Care
    Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip
    and fall)
  Intentional Bodily Injury/PD/WD
    (e.g., assault, vandalism)
  Intentional Infliction of
    Emotional Distress
  Negligent Infliction of
    Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
  Practice (07)
Civil Rights (e.g., discrimination,
  false arrest) *(not civil
  harassment)* (08)
Defamation (e.g., slander, libel)
  (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
    *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease
    Contract *(not unlawful detainer
    or wrongful eviction)*
  Contract/Warranty Breach–Seller
    Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/
    Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections
    Case
Insurance Coverage *(not provisionally
  complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
  Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent
    domain, landlord/tenant, or
    foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
  drugs, check this item; otherwise,
  report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
    Case Matter
  Writ–Other Limited Court Case
    Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor
    Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
  *(arising from provisionally complex
  case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of
    County)
  Confession of Judgment *(non-
    domestic relations)*
  Sister State Judgment
  Administrative Agency Award
    *(not unpaid taxes)*
  Petition/Certification of Entry of
    Judgment on Unpaid Taxes
  Other Enforcement of Judgment
    Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
  above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-
    harassment)*
  Mechanics Lien
  Other Commercial Complaint
    Case *(non-tort/non-complex)*
  Other Civil Complaint
    *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
  Governance (21)
Other Petition *(not specified
  above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
    Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late
    Claim
  Other Civil Petition

| SHORT TITLE: Heidi Rorick-Evans, et al. vs Johnson & Johnson | CASE NUMBER   BC 6 35 7 1 2 |
| --- | --- |

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

| This form is required pursuant to Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court. |
| --- |

**Item I.** Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☑ YES   CLASS ACTION? ☐ YES   LIMITED CASE? ☐ YES   TIME ESTIMATED FOR TRIAL 10 ☐ HOURS/ ☑ DAYS

**Item II.** Indicate the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column A, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column B below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.0.

| Applicable Reasons for Choosing Courthouse Location (see Column C below) |
| --- |

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV.  Sign the declaration.

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
| --- | --- | --- | --- |
| Auto Tort | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death -- Uninsured Motorist | 1., 2., 4. |
| Other Personal Injury/ Property Damage/ Wrongful Death Tort | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 2. |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1., 4. |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1., 4. |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1., 4. |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 4. |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1., 3. |
| | | ☑ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1., 4. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

Local Rule 2.0

Page 1 of 4

| SHORT TITLE: Heidi Rorick-Evans, et al. vs Johnson & Johnson | CASE NUMBER |
| --- | --- |

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
| --- | --- | --- | --- |
| Non-Personal Injury/ Property Damage/ Wrongful Death Tort | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1., 2., 3. |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1., 2., 3. |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2.,3. |
| Employment | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1., 2., 3. |
| | | ☐ A6109  Labor Commissioner Appeals | 10. |
| Contract | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2., 5. |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 2., 5., 6. |
| | | ☐ A6012  Other Promissory Note/Collections Case | 2., 5. |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1., 2., 3., 5. |
| | | ☐ A6031  Tortious Interference | 1., 2., 3., 5. |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| Real Property | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation        Number of parcels_____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2., 6. |
| | | ☐ A6032  Quiet Title | 2., 6. |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| Unlawful Detainer | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |

| SHORT TITLE: Heidi Rorick-Evans, et al. vs Johnson & Johnson | CASE NUMBER |
| --- | --- |

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
| --- | --- | --- | --- |
| Judicial Review | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151  Writ – Administrative Mandamus<br>☐ A6152  Writ – Mandamus on Limited Court Case Matter<br>☐ A6153  Writ – Other Limited Court Case Review | 2., 8.<br>2.<br>2. |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| Provisionally Complex Litigation | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| Enforcement of Judgment | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment<br>☐ A6160  Abstract of Judgment<br>☐ A6107  Confession of Judgment (non-domestic relations)<br>☐ A6140  Administrative Agency Award (not unpaid taxes)<br>☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax<br>☐ A6112  Other Enforcement of Judgment Case | 2., 9.<br>2., 6.<br>2., 9.<br>2., 8.<br>2., 8.<br>2., 8., 9. |
| Miscellaneous Civil Complaints | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only<br>☐ A6040  Injunctive Relief Only (not domestic/harassment)<br>☐ A6011  Other Commercial Complaint Case (non-tort/non-complex)<br>☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8.<br>2., 8.<br>1., 2., 8.<br>1., 2., 8. |
| Miscellaneous Civil Petitions | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment<br>☐ A6123  Workplace Harassment<br>☐ A6124  Elder/Dependent Adult Abuse Case<br>☐ A6190  Election Contest<br>☐ A6110  Petition for Change of Name<br>☐ A6170  Petition for Relief from Late Claim Law<br>☐ A6100  Other Civil Petition | 2., 3., 9.<br>2., 3., 9.<br>2., 3., 9.<br>2.<br>2., 7.<br>2., 3., 4., 8.<br>2., 9. |

| SHORT TITLE: Heidi Rorick-Evans, et al. vs Johnson & Johnson | CASE NUMBER |
|---|---|

Item III. Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3** on Page 1, as the proper reason for filing in the court location you selected.

| REASON: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case. | ADDRESS: 6230 Morella Avenue |
|---|---|
| ☐1. ☑2. ☐3. ☑4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | |

| CITY: North Hollywood | STATE: CA | ZIP CODE: 91606 |
|---|---|---|

Item IV. *Declaration of Assignment*: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the ___Stanley Mosk___ courthouse in the ___Central___ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.0, subds. (b), (c) and (d)].

Dated: ___September 22, 2016___

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/11).

5. Payment in full of the filing fee, unless fees have been waived.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's Stamp<br>CONFORMED COPY<br>ORIGINAL FILED<br>Superior Court of California<br>County of Los Angeles |
|---|---|
| COURT ADDRESS:<br>111 North Hill Street, Los Angeles, CA 90012 | SEP 29 2016 |
| PLAINTIFF:<br>Heidi Rorick-Evans, et al. | Sherri R. Carter, Executive Officer/Clerk<br>By: Judi Lara, Deputy |
| DEFENDANT:<br>Johnson & Johnson Company, et al. | |
| CIVIL DEPOSIT | CASE NUMBER:<br>BC 6 35 71 2 |

CLERK: PREPARE A FORM FOR EACH DEPOSITOR PAYING SEPARATELY

PLEASE REPORT TO THE CLERK'S OFFICE/CASHIER:
☐ Room 102, Central Civil    ☐ Clerk's Office , Room_____    ☐ Department Number_____

| | | Distribution Codes | | Amt Due | | | Distribution Codes | Amt Due |
|---|---|---|---|---|---|---|---|---|
| ☐ | 251 | DAILY JURY FEES<br>Dates:_____<br># of day(s)_____x$_____ | | | ☐ | 74 | DEPOSIT IN TRUST | |
| ☒ | 72 | JURY FEES  No date set<br>Trial Date:_____<br>(Initial Deposit) $ 150.00 | | $150.00 | ☐ | 101 | FIRST PAPERS-<br>GENERAL JURISDICTION | |
| ☐ | 252 | REPORTERS FEES<br>Dates:_____<br># of 1/ 2 day(s)_____x$_____<br>Full Day_____ | | | ☐ | 101 | FIRST PAPERS-LIMITED OVER $10,000 | |
| | | | | | ☐ | 141 | With declaration Limited to $10,000<br>(per B&P 6322.1(a)) | |
| | | | | | ☐ | 130 | Limited to $10,000 | |
| ☐ | 721 | SANCTIONS ORDERED ON<br>Date:_____ | | | ☐ | 211 | RECLASSIFICATION FEE | |
| ☐ | 213 | MOTIONS/APPLICATION TO CONT. HEARING | | | ☐ | 150 | COMPLEX LITIGATION TRIAL/PLAINTIFF | |
| | 200 | MOTIONS/APPLICATION TO CONT.TRIAL | | | ☐ | 151 | COMPLEX LITIGATION TRIAL/DEFENDANT | |
| | | Other:_____ | | | | | | |

To be paid via: ☐ Cash   ☒ Check   ☐ Certified Check/Money Order   ☐ Credit Card

☐ On or Before_____   ☒ Forthwith

Payment will be made by ☒ Plaintiff_Heidis Rorick-Evans_   ☐ Defendant_____

DATE _____   JOHN A. CLARKE, Executive Officer/Clerk

BY: Wi _____

Deputy Clerk

| TO BE COMPLETED BY DEPOSITOR | CASHIER'S VALIDATION |
|---|---|
| Depositor's Name: Haffner Law PC | |

☐ Plaintiff in Pro Per    ☐ Defendant in Pro Per

☒ Counsel for    ☒ Plaintiff   Heidi Rorick-Evans, et al.
Name of Party

☐ Defendant _____
Name of Party

Address of depositor   445 S. Figueroa Street, Suite 2325
Street

Los Angeles, CA 90071
City/State/Zip

CIV 083 03-04 (Rev. 05/06)
LASC Approved

CIVIL DEPOSIT
Distribution: Original - Case File   Copy-Customer

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## NOTICE OF CASE ASSIGNMENT - UNLIMITED CIVIL PERSONAL INJURY CASE

Case Number _____

### THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

BC 6 3 5 7 1 2

Your case is assigned for all purposes to the judicial officer indicated below (Local Rule 3.3(c)).

| ASSIGNED JUDGE | DEPT | ROOM | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|
| Hon. Patricia Nieto | 91 | 632 | | | |
| Hon. Michelle Williams Court | 92 | 633 | | | |
| Hon. Randolph Hammock | 93 | 631 | | | |
| Hon. Benny C. Osorio | 97 | 630 | | | |
| Hon. Holly J. Fujie | 98 | 635 | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record on SEP 2 9 2016   SHERRI R. CARTER, Executive Officer/Clerk

By _____, Deputy Clerk

LACIV PI 190 (Rev06/16)
LASC Approved 05-06

## NOTICE OF CASE ASSIGNMENT

## UNLIMITED CIVIL CASE

FILED
LOS ANGELES SUPERIOR COURT

FEB 2 5 2016

SHERRI R. CARTER, EXECUTIVE OFFICER/ CLERK
C. Casarez
BY C. CASAREZ, DEPUTY

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF LOS ANGELES

In re Personal Injury Cases Assigned to the )   Case No.:    BC 6 3 5 7 1 2
Personal Injury Courts;                      )
(CENTRAL DISTRICT)                           )   SIXTH AMENDED GENERAL
                                             )   ORDER RE PERSONAL INJURY
                                             )   COURT ("PI Court")  PROCEDURES,
                                             )   CENTRAL DISTRICT
                                             )   (Effective as of February 22, 2016)

**DEPARTMENT:**     91      92      93      97      98

**FINAL STATUS CONFERENCE ("FSC"):**

- **Date:** _____ at 10:00 a.m.

**TRIAL:**

- **Date:** _____ at 8:30 a.m.

**OSC re DISMISSAL (Code Civ. Proc., § 583,210):**

- **Date:** _____ at 8:30 a.m.

TO EACH PARTY AND TO THE ATTORNEY OF RECORD FOR EACH PARTY:

Pursuant to the California Code of Civil Procedure ("C.C.P."), the California

Rules of Court, and the Los Angeles County Court Rules ("Local Rules"), the Los

Angeles Superior Court ("LASC" or "Court") HEREBY AMENDS AND SUPERSEDES

THE September 18, 2015 AMENDED GENERAL ORDER AND GENERALLY

1

ORDERS AS FOLLOWS IN THIS AND ALL OTHER GENERAL JURISDICTION PERSONAL INJURY ACTIONS:

Effective March 18, 2013, the Court responded to systemic budget reductions by centralizing the management of more than 18,000 general jurisdiction personal injury cases in the Stanley Mosk Courthouse. LASC initially opened three Personal Injury Courts ("PI Courts" - Departments 91, 92 and 93), on January 6, 2014, a fourth (Department 97), and on September 28, 2015 a fifth (Department 98) to adjudicate all pretrial matters for these cases. It also established a Master Calendar Court (Department One), to manage the assignment of trials to dedicated Trial Courts located countywide. Prior Amended General Orders laid out the basic procedures for the PI Courts' management of pretrial matters. The parties will find additional information about the PI Courts on the court's website, *www.lacourt.org.*

1.    To ensure proper assignment to a PI Court, Plaintiff(s) must carefully fill out the Civil Case Cover Sheet Addendum (form LACIV 109). The Court defines "personal injury" as:

> "an unlimited civil case described on the Civil Case Cover Sheet Addendum and Statement of Location (LACIV 109) as Motor Vehicle-Personal Injury/Property Damage/Wrongful Death; Personal Injury/Property Damage/Wrongful Death-Uninsured Motorist; Product Liability (other than asbestos or toxic/environmental); Medical Malpractice-Physicians & Surgeons; Other Professional Health Care Malpractice; Premises Liability; Intentional Bodily Injury/Property Damage/Wrongful Death; or Other Personal Injury/Property Damage/Wrongful Death. An action for intentional infliction of emotional distress, defamation, civil rights/discrimination, or malpractice (other than medical malpractice), is not included in this definition. An action for injury to real property is not included in this definition." Local Rule 2.3(a)(1)(A).

2

The Court will assign a case to the PI Courts if plaintiff(s) check any of the following boxes in the Civil Case Cover Sheet Addendum:

☐ A7100 Motor Vehicle – Personal Injury/Property Damage/Wrongful Death

☐ A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist

☐ A7260 Product Liability (not asbestos or toxic/environmental)

☐ A7210 Medical Malpractice – Physicians & Surgeons

☐ A7240 Medical Malpractice – Other Professional Health Care Malpractice

☐ A7250 Premises Liability (e.g., slip and fall)

☐ A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism etc.)

☐ A7220 Other Personal Injury/Property Damage/Wrongful Death

The Court will not assign cases to the PI Courts if plaintiff(s) check any boxes elsewhere in the Civil Case Cover Sheet Addendum (any boxes on pages two and three of that form).

The Court sets the above dates in this action in the PI Court circled above (Department 91, 92, 93, 97, or 98) at the Stanley Mosk Courthouse, 111 North Hill Street, Los Angeles, CA 90012. Cal. Rules of Court, Rules 3.714(b)(3), 3.729.

**FILING OF DOCUMENTS**

2.     Parties may file documents in person at the filing window, via US Mail, or *as of March 1, 2106*, through e-Delivery, which is available online at www.lacourt.org (link on homepage). Please note that filings are no longer accepted via facsimile and must be filed either in person

3

Central District
2/22/2106

or via e-Delivery. Claims involving an attorney-client fee dispute, documents in which the filing party is a minor, legally incompetent person, or person for whom a conservator has been appointed, Requests to Waive Court Fees (FW-001) and Requests for Accommodations by Persons with Disabilities (MC-410), may not be filed via e-Delivery.

**SERVICE OF SUMMONS AND COMPLAINT**

3.      Plaintiff(s) shall serve the summons and complaint in this action upon defendant(s) as soon as possible but no later than <u>three years</u> from the date when the complaint is filed. C. C. P. § 583.210, subd. (a).  On the OSC re Dismissal date noted above, the PI Court will dismiss **the action and/or** all unserved parties unless the plaintiff(s) show cause why the action or the unserved parties should not be dismissed. C.C.P. §§ 583.250; 581, subd. (b)(4).

4.      The Court sets the above trial and FSC dates on condition that plaintiff(s) effectuate service on defendant(s) of the summons and complaint within six months of filing the complaint.

5.      The PI Court will dismiss the case without prejudice pursuant to C.C.P. § 581 when no party appears for trial.

**STIPULATIONS TO CONTINUE TRIAL**

6.      Provided that all parties agree (and there is no violation of the "five-year rule," C.C.P. § 583.310), the parties may advance or continue any trial date in the PI Courts without showing good cause or articulating any reason or justification for the change.  To continue or advance a trial date, the parties (or their counsel of record) should jointly execute and file (in Room 102 of the Stanley Mosk Courthouse; fee required) a Stipulation to Continue Trial,

FSC and Related Motion/Discovery Dates (form LACIV CTRL-242, available on the court's website, Personal Injury Court link). The PI Courts schedule FSCs for 10:00 a.m., eight (8) court days before the trial date. Parties seeking to continue the trial and FSC dates shall file the Stipulation at least eight court days before the FSC date. Parties seeking to advance the trial and FSC dates shall file the Stipulation at least eight court days before the proposed advanced FSC date. Code Civ. Proc., § 595.2; Govt. Code § 70617, subd. (c)(2). In selecting a new trial date, parties should avoid setting on any Monday, or the Tuesday following a court holiday. Parties may submit a maximum of two stipulations to continue trial, the first for a maximum of four months, the second for a maximum of two months. A third request to continue trial will only be granted upon a showing of good cause, by ex parte application or noticed motion. This rule is retroactive so that any previously granted stipulation to continue trial will count toward the maximum number of allowed continuances.

**NO CASE MANAGEMENT CONFERENCES**

7.      The PI Courts do not conduct Case Management Conferences. The parties need not file a Case Management Statement.

**LAW AND MOTION**

**ANY DOCUMENTS WITH DECLARATIONS AND/OR EXHIBITS MUST BE TABBED. CRC §3.1110(f)**

**ALL DEPOSITION EXCERPTS REFERENCED IN BRIEFS MUST BE MARKED ON THE TRANSCRIPTS ATTACHED AS EXHIBITS.   CRC §3.1116(c)**

*If your filing is not tabbed or depositions are not marked, do not file without the tabs or marked depositions unless today is the last day for filing. If so, you must file a tabbed/marked copy with the clerk in the department where your motion will be heard within 2 court days.*

Central District
2/22/2106

**Chambers Copies Required**

8.      In addition to filing original motion papers in Room 102 of the Stanley Mosk Courthouse, the parties must deliver, directly to the PI Court courtrooms, an extra copy (marked "Chambers Copy") of reply briefs and all other motion papers filed less than seven (7) court days before a hearing calendared in the PI Courts.  The PI Courts also strongly encourage the parties filing and opposing lengthy motions, such as motions for summary judgment/adjudication, to submit one or more three-ring binders organizing the Chambers Copies behind tabs.

**Reservation of Hearing Date**

9.      Parties are directed to reserve hearing dates for motions in the PI Courts using the Court Reservation System (CRS) available online at _www.lacourt.org_ (link on homepage).  After reserving a motion hearing date, the reservation requestor must submit the papers for filing with the reservation receipt (CRS) number printed on the face page of the document under the caption and attach the reservation receipt as the last page.  Parties or counsel who are unable to utilize the online CRS may reserve a motion hearing date by calling the PI Court courtroom, Monday through Friday, between 3:00 p.m. and 4:00 p.m.

**Withdrawal of Motion**

10.      California Rules of Court, Rule 3.1304(b) requires a moving party to notify the court immediately if a matter will not be heard on the scheduled date. In keeping with that rule, the PI Courts urge parties who amend pleadings in response to demurrers to file amended pleadings before the date when opposition to the demurrer is due so that the PI Courts do not

1    needlessly prepare tentative rulings on demurrers.

2

3    **Discovery Motions**

4    11.    The purpose of an Informal Discovery Conference ("IDC") is to assist the parties to

5    resolve and/or narrow the scope of discovery disputes.   Lead trial counsel on each side, or

6    another attorney with full authority to make binding agreements, must attend in person.  The

7    PI judges have found that, in nearly every case, the parties amicably resolve disputes with the

8

9    assistance of the Court.

10   12.    Parties **must** participate in an IDC **before** a Motion to Compel Further Responses to

11   Discovery will be heard, unless, the moving party submits evidence, by way of declaration,

12   that the opposing party has failed or refused to participate in an IDC.   Scheduling or

13   participating in an IDC does not extend any deadlines imposed by the Code of Civil Procedure

14   for noticing and filing discovery motions.  Ideally, the parties should participate in an IDC

15   before a motion is filed because the IDC may avoid the necessity of a motion or reduce its

16   scope.  Because of that possibility, attorneys are encouraged to stipulate to extend the 45 (or

17

18   60) day deadline for filing a motion to compel further discovery responses in order to allow

19   time to participate in an IDC.  If parties do not stipulate to extend the deadlines, the moving

20   party may file the motion to avoid it being deemed untimely.   However, the IDC must take

21   place before the motion is heard so it is suggested that the moving party reserve a date for the

22   motion hearing that is at least 60 days after the date when the IDC reservation is made. Motions

23   to Compel Further Discovery Responses are heard at 10:00 a.m.  If the IDC is not productive,

24   the moving party may advance the hearing on a Motion to Compel Further Discovery

25

26

27

Responses on any available hearing date that complies with the notice requirements of the Code of Civil Procedure.

13.     Parties are directed to reserve IDC dates in the PI Courts using CRS available online at www.lacourt.org (link on homepage).  Parties are to meet and confer regarding the available dates in CRS prior to accessing the system.  After reserving the IDC date, the reservation requestor must file in the appropriate department and serve an Informal Discovery Conference Form for Personal Injury Courts, from LACIV 239 (revised 12/14 or later), at least 15 court days prior to the conference and attach the CRS reservation receipt as the last page.  The opposing party may file and serve a responsive IDC Form, briefly setting forth that party's response, at least 10 court days prior to the IDC.

14.     Time permitting; the PI Hub judges may be available to participate in IDCs to try to resolve other types of discovery disputes.

**Ex Parte Applications**

15.     Under the California Rules of Court, courts may only grant *ex parte* relief upon a showing, by admissible evidence, that the moving party will suffer "irreparable harm," "immediate danger," or where the moving party identifies "a statutory basis for granting relief ex parte." Cal. Rules of Court, Rule 3.1202(c).  The PI Courts have no capacity to hear multiple *ex parte* applications or to shorten time to add hearings to their fully booked motion calendars.  The PI Courts do not regard the Court's unavailability for timely motion hearings as an "immediate danger" or threat of "irreparable harm" justifying *ex parte* relief.  Instead of seeking *ex parte* relief, counsel should reserve the earliest available motion hearing date, and stipulate with all parties to continue the trial to a date thereafter using the Stipulation to Continue Trial, FSC and Related Motion/Discovery Dates (form LACIV CTRL-242, available

Central District
2/22/2106

on the court's website, PI Court Tab). Counsel should also check the Court Reservation System from time to time because earlier hearing dates may become available as cases settle or counsel otherwise take hearings off calendar.

**REQUEST FOR TRANSFER TO INDEPENDENT CALENDAR DEPARTMENT**

16.    Parties seeking to transfer a case from a PI Court to an Independent Calendar ("I/C") Court shall file (in Room 102 of the Stanley Mosk Courthouse) and serve the Court's "Motion to Transfer Complicated Personal Injury Case to Independent Calendar Court" (form LACIV 238, available on the Court's website under the PI Courts link). The PI Courts will transfer a matter to an I/C Court if the case is not a "Personal Injury" case as defined in the General Order re General Jurisdiction PI Cases, or if it is "complicated." In determining whether a personal injury case is "complicated" the PI Courts will consider, among other things, the number of pretrial hearings or the complexity of issues presented.

17.    Parties opposing a motion to transfer have five court days to file (in Room 102) an Opposition (using the same LACIV 238 Motion to Transfer form).

18.    The PI Courts will not conduct a hearing on any Motion to Transfer to I/C Court. Although the parties may stipulate to transfer a case to an Independent Calendar Department, the PI Courts will make an independent determination whether to transfer the case or not.

**GENERAL ORDER – FINAL STATUS CONFERENCE**

19.    Parties shall comply with the requirements of the PI Courts' "Amended General Order – Final Status Conference," which shall be served with the summons and complaint.

**JURY FEES**

20.    Parties must pay jury fees no later than 365 calendar days after the filing of the initial complaint. (Code Civ. Proc., § 631, subds. (b) and (c))

Central District
2/22/2106

JURY TRIALS

21.     The PI Courts do not conduct jury trials.  On the trial date, a PI Court will transfer the case to the Master Calendar Court in Department One in the Stanley Mosk Courthouse. Department One assigns cases out for trial to dedicated Trial Courts.

SANCTIONS

21.     The Court has discretion to impose sanctions for any violation of this general order. (C.C.P. §§ 128.7, 187 and Gov. Code, § 68608, subd. (b))

Dated: _2/25/16_

Kevin C. Brazile
Supervising Judge, Civil
Los Angeles Superior Court

Central District
2/22/2106

FILED
LOS ANGELES SUPERIOR COURT

JUN 1 0 2016

SHERRI R. CARTER, EXECUTIVE OFFICER/ CLERK

BY C. CASAREZ, DEPUTY

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES - CENTRAL DISTRICT

| | |
|---|---|
| In re Personal Injury Cases Assigned To the Personal Injury Courts (Departments 91, 92, 93, 97 and 98) | ) FOURTH AMENDED GENERAL ORDER - <br> ) FINAL STATUS CONFERENCE, <br> ) PERSONAL INJURY ("PI") COURTS <br> ) (Effective as of June 10, 2016) <br> ) <br> ) <br> ) |

The dates for Trial and Final Status Conference ("FSC") having been set in this matter, the Court **HEREBY AMENDS AND SUPERSEDES ITS January 26, 2015, AMENDED GENERAL ORDER- FINAL STATUS CONFERENCE AND GENERALLY ORDERS AS FOLLOWS IN THIS AND ALL OTHER GENERAL JURISDICTION PERSONAL INJURY ACTIONS:**

## 1. PURPOSE OF THE FSC

The purpose of the FSC is to verify that the parties counsel are completely ready to proceed with trial continuously and efficiently, from day to day, until verdict. The PI Courts will verify at the FSC that all parties counsel have (1) prepared the Exhibit binders and Trial Document binders and (2) met and conferred in an effort to stipulate to ultimate facts, legal issues, motions *in limine,* and the authentication and admissibility of exhibits.

1

## 2. TRIAL DOCUMENTS TO BE FILED

At least five calendar days prior to the Final Status Conference, the parties counsel shall serve and file (in Room 102 of the Stanley Mosk Courthouse) the following Trial Readiness Documents:

### A. TRIAL BRIEFS (OPTIONAL)

Each party counsel may file, but is not required to file, a trial brief succinctly identifying:

(1) the claims and defenses subject to litigation;

(2) the major legal issues (with supporting points and authorities);

(3) the relief claimed and calculation of damages sought; and

(4) any other information that may assist the court at trial.

### B. MOTIONS *IN LIMINE*

Before filing motions *in limine,* the parties counsel shall comply with the statutory notice provisions of Code of Civil Procedure ("C.C.P.") Section 1005 and the requirements of Los Angeles County Court Rule ("Local Rule") 3.57(a). The caption of each motion *in limine* shall concisely identify the evidence that the moving party seeks to preclude. Parties filing more than one motion *in limine* shall number them consecutively. Parties filing opposition and reply papers shall identify the corresponding motion number in the caption of their papers.

### C. JOINT STATEMENT TO BE READ TO THE JURY

For jury trials, the parties/counsel shall work together to prepare and file a joint written statement of the case for the court to read to the jury. Local Rule 3.25(i)(4).

2

### D.   JOINT WITNESS LIST

The parties/counsel shall work together to prepare and file a joint list of all witnesses that each party intends to call (excluding impeachment and rebuttal witnesses).  Local Rule 3.25(i)(5). The joint witness list shall identify each witness by name, specify which witnesses are experts, and estimate the length of the direct, cross examination re-direct examination (if any) of each witness.  The parties/counsel shall identify and all potential witness scheduling issues and special requirements.  Any party/counsel who seeks to elicit testimony from a witness not identified on the witness list must first make a showing of good cause.

### E.   LIST OF PROPOSED JURY INSTRUCTIONS
### (JOINT AND CONTESTED)

The parties/counsel shall jointly prepare and file a list of proposed jury instructions, organized in numerical order, specifying the instructions upon which all sides agree and the contested instructions, if any. The Joint List of Jury Instructions must include a space by each instruction for the judge to indicate whether the instruction was given.

### F.   JURY INSTRUCTIONS
### (JOINT AND CONTESTED).

The parties/counsel shall prepare a complete set of full-text proposed jury instructions, editing all proposed California Civil Jury Instructions for Judges and Attorneys ("CACI") instructions to insert party names and eliminate blanks and irrelevant material. The parties shall prepare special instructions in a format ready for submission to the jury with the instruction number, title and text only (i.e., there should be no boxes or other indication on the printed instruction itself as to the requesting party.)

3

1

2       **G.    JOINT VERDICT FORM(S)**

3  The parties counsel shall prepare and jointly file a proposed general verdict form or special

4  verdict form (with interrogatories) acceptable to all sides.  If the parties counsel cannot agree

5  on a joint verdict form, each party must separately file a proposed verdict form.  Local Rule

6  3.25(i)(7) and (8).

7       **H.    JOINT EXHIBIT LIST**

8  The parties counsel shall prepare and file a joint exhibit list organized with columns

9  identifying each exhibit and specifying each party's evidentiary objections, if any, to

10  admission of each exhibit.  To comply with Local Rules 3.52(i)(5) and 3.53, the parties shall

11  meet and confer in an effort to resolve objections to the admissibility of each exhibit.

12

13

14       **3.  EVIDENTIARY EXHIBITS**

15  The parties counsel shall jointly prepare (and be ready to temporarily lodge for inspection at

16  the FSC), three sets of tabbed, internally paginated and properly-marked exhibits, organized

17  numerically in three-ring binders (a set for the Court, the Judicial Assistant and the witnesses).

18  The parties counsel shall mark all non-documentary exhibits and insert a simple written

19  description of the exhibit behind the corresponding numerical tab in the exhibit binder. If the

20  parties have a joint signed exhibit list and electronic copies of their respective exhibits, then

21  the parties will not be required to produce exhibit binders at the Final Status Conference

22  (FSC).  However, the exhibit binders may be required by the assigned trial judge when the

23  trial commences.  In the absence of either a joint signed exhibit list or electronic copies,

24  exhibit binders will be required by all parties at the Final Status Conference.

25

26

27

#### 4.  TRIAL BINDERS REQUIRED IN THE PI COURTS

The parties/counsel shall jointly prepare (and be ready to temporarily lodge for inspection at the FSC) the Trial Documents, tabbed and organized into three-ring binders as follows:

Tab A: Trial Briefs

Tab B:  Motions *in limine*

Tab C:  Joint Statement to Be Read to the Jury

Tab D: Joint Witness List

Tab E:  Joint List of Jury Instructions (identifying the agreed upon and contested instructions)

Tab F:  Joint and Contested Jury Instructions

Tab G: Joint and/or Contested Verdict Forms

The parties shall organize motions *in limine* (tabbed in numerical order) behind tab B with the opposition papers and reply papers for each motion placed directly behind the moving papers.  The parties shall organize proposed jury instructions behind tab F, with the agreed upon instructions first in order followed by the contested instructions (including special instructions) submitted by each side.

5

5.   FAILURE TO COMPLY WITH FSC OBLIGATIONS

The court has discretion to require any party counsel who fails or refuses to comply with this General Order to Show Cause why the court should not impose monetary, evidentiary and/or issue sanctions (including the entry of a default or the striking of an answer).

Dated this 10th day of June, 2016

Kevin C. Brazile
Supervising Judge, Civil
Los Angeles Superior Court

6