## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE ELDON E. FALLON |
| *Rorick-Evans v. Johnson & Johnson, et al.*, Case No. 2:16-cv-16699 | MAGISTRATE NORTH |

## DEFENDANT'S MEMORANDUM OF LAW IN
## OPPOSITION TO PLAINTIFF'S MOTION FOR REMAND

Defendant Johnson & Johnson ("Defendant") opposes Plaintiff Heidi Rorick-Evans Motion to Remand (Doc. 17)[1] on grounds that McKesson Corporation ("McKesson") – based on the allegations in the Complaint (Doc. 4) – has been fraudulently joined, and therefore this Court has subject matter jurisdiction over this action.

## INTRODUCTION

Plaintiff's Motion to Remand does not dispute that there is complete diversity of citizenship between California resident Plaintiff Heidi Rorick-Evans and Johnson & Johnson, a New Jersey corporation.  In an attempt to deprive Johnson & Johnson of its right of removal pursuant to 28 U.S.C. § 1332, Plaintiff's Complaint, filed on behalf of decedent Terrence Howard Evans, makes broad and inaccurate "copycat" allegations that fraudulently join McKesson, a non-exclusive wholesale distributor of pharmaceutical medicines that has its principal place of business California.[2]  As one court has observed,

> [T]he Federal courts should not sanction devices intended to prevent
> a removal to a Federal court where one has that right, and should be
> equally vigilant to protect the right to proceed in the Federal court

---

[1] Docket entries refer to Case No. 2:16-cv-16699; *see also* MDL Docket Doc. No. 4720.

[2] Plaintiff's Complaint also grossly misstates facts relevant to Johnson & Johnson, a holding company that does not manufacture, sell, distribute or label Xarelto®.  Nor is Johnson & Johnson subject to personal jurisdiction in California based on the claims alleged in the Complaint.  *See Daimler AG v. Bauman* 134 S. Ct. 746 (2014).

as to permit the state courts, in proper cases, to retain their own ju-
risdiction.

*Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 766 (11th Cir. 2010) (quoting *Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 186 (1907)); *see also In re Fluoroquinolone Prods. Liab. Litig.*, No. 15-2642, 2016 WL 4154338, at *2 (D. Minn. Aug. 5, 2016) (declining to rule on motion to remand involving McKesson until "[a]fter the initial materials are provided by Plaintiffs, which will likely either support or undermine pleadings against McKesson [when] the Court will revisit the motion.").

In the present action, based on a plain reading of the allegations in the Complaint, for many separate and independent reasons there is no possibility of recovery against McKesson, and therefore this Court has subject matter jurisdiction of this action.

First, conspicuously absent from Plaintiff's Motion is any mention of the recent decisions applying *Pliva v. Mensing*, 564 U.S. 604 (2011) and *Mutual Pharm. Co. v. Bartlett*, 133 S. Ct. 2466 (2013), to distributors that sell pharmaceutical medications approved by the U.S. Food and Drug Administration ("FDA"). Applying the law of federal preemption as articulated by the Supreme Court in *Mensing* and *Bartlett*, courts have held that entities – like McKesson – have no legal ability to "independently" change the label, design or manufacture of an FDA-approved medicine, and therefore state tort law claims – similar to those alleged here – are preempted as a matter of law. *In re Fosamax (Alendronate Sodium) Prods. Liab. Litig.* (No. II), MDL No. 2243, 2012 WL 181411 (D. N.J. Jan. 17, 2012); *Brazil v. Janssen Research and Development LLC, et al.*, No. 4:15-CV-0204, 2016 WL 3748771, -- F.Supp.3d -- (N.D. Ga. July 11, 2016); *Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig.*, 756 F.3d 917, 940 (6th Cir. 2014); *Stevens v. Cmty. Health Care, Inc.*, No. ESCV200702080, 2011 WL 6379298, at *1 (Mass Super. Ct. Oct.

5, 2011).   So too are the claims alleged by Plaintiff Rorick-Evans against McKesson in this action preempted by federal law.  Plaintiff's reliance on cases that pre-date or did not consider the merits of *Mensing* and *Bartlett*, as well as non-pharmaceutical cases, are not controlling.

Second, Plaintiff is judicially estopped – based on the allegations in the Complaint – from asserting liability as to McKesson.  The purported basis for joining McKesson in this lawsuit is limited to a single paragraph in the Complaint alleging that "McKesson was in the business of manufacturing, promoting, labeling, selling, marketing, packaging, re-packaging and distributing Xarelto used by Plaintiff."  Compl. ¶ 6.  Based on the attached Affidavit of Brett Harrop ("Harrop Aff.") (Exhibit A hereto), these allegations are plainly erroneous and improperly attempt to attribute conduct to McKesson.  Nor do these allegations state a viable claim against McKesson under California law.  McKesson does not design, manufacture, or label Xarelto®, nor does it generally sell Xarelto directly to treating physicians who prescribe Xarelto to patients.  Harrop Aff. at ¶¶ 7-8.  Rather, at all relevant times, McKesson's primary function has been to distribute pre-labeled, designed and manufactured Xarelto to pharmacies and hospitals so that they can dispense the medicine to consumers.  *Id.* at ¶¶ 7-8.  Plaintiff's Complaint concedes that Xarelto – even if distributed by McKesson in this case (which is not properly alleged) – "reached Ingesting Plaintiff [i.e. Mr. Evans] without substantial change. . ."  Compl. ¶ 31.  There are no allegations beyond these that McKesson – a distributor of an FDA-approved medicine – engaged in any culpable conduct in the "distribution" of Xarelto that would give rise to liability in this case.  Under California law, similar to a pharmacist who "is in the business of selling prescription drugs, and his role begins and ends with the sale," McKesson's role was to distribute Xarelto to pharmacies and hospitals, and unsupportable allegations that purport to attribute a greater role to McKesson cannot be the basis for relief or defeat a finding of fraudulent joinder.  *See, e.g., Murphy v. E.R.*

3

*Squibb & Sons, Inc.*, 40 Cal. 3d 672, 679 (1985).  As noted by the California Supreme Court, if individuals – such as pharmacists – or entities that do not manufacture, label or design prescription products in the chain of distribution were to be held liable for alleged product defect, they "might restrict availability [of important medications] by refusing to dispense drugs which pose even a potentially remote risk of harm, although such medications may be essential to the health or even the survival of patients."  *Id.* at 680-81.  For nearly three decades it has been the policy of California to preclude strict liability design defect claims and narrow strict liability failure to warn claims involving prescription medicines because "[p]ublic policy favors the development and marketing of beneficial new drugs, even though some risks, perhaps serious ones, might accompany their introduction …."  *Brown v. Superior Court*, 44 Cal.3d 1049, 1063 (1988).  Accordingly, distribution of an FDA-approved medicine "without substantial change" – as alleged by Plaintiff – cannot give rise to liability under California law.

Third, the Complaint fails to allege sufficient facts that McKesson, a non-exclusive wholesale distributor of Xarelto, either distributed Xarelto to a pharmacy where Mr. Evans purchased the product or a hospital where he used Xarelto, or that McKesson engaged in any conduct that could give rise to liability under the theories asserted in the Complaint.   Absent factual allegations sufficient to confirm that McKesson distributed Xarelto to a particular pharmacy or hospital that dispensed the Xarelto allegedly used by Mr. Evans, this Court should find McKesson has been fraudulently joined, or alternatively defer ruling on the Motion until Plaintiff can make the appropriate factual showing identifying the particular pharmacy or hospital, as well as the prescribing physician, all of which should have been investigated before naming McKesson as a defendant in this action.  *See In re Fluoroquinolone*, 2016 WL 4154338, at *2 (deferring ruling on motion to remand based on the fraudulent joinder of McKesson).  Neither

the Complaint, nor Plaintiff's Motion to Remand alleges a factual predicate sufficient – in good faith – to support a finding that McKesson distributed Xarelto used by Mr. Evans.  For these and the following reasons, Plaintiff's Motion to Remand should be denied.

## PROCEDURAL AND FACTUAL BACKGROUND

On September 29, 2016, Plaintiff Heidi Rorick-Evans filed a Complaint in Los Angeles County Superior Court against Johnson & Johnson (erroneously sued as Johnson & Johnson Company) and McKesson Corporation.  In the Complaint, Plaintiff alleges that decedent Terrence Howard Evans suffered injuries and damages arising from his use of the prescription medication Xarelto.

Plaintiff's Complaint makes blanket allegations generally against "defendants" collectively for strict products liability, negligence, breach of express warranty, breach of implied warranty, wrongful death, and violations of Business and Professions Code §§ 17200 and 17500. Compl. ¶ 7 ("Defendants J&J and McKesson shall be referred to herein individually by name or jointly as "Defendants"); *see also id.* at ¶¶ 30, 45, 53, 61, 70, 80. 92.  Plaintiff generally asserts that Xarelto was defective in that the *warning accompanying the product failed* to adequately warn of the risks of associated with using Xarelto.  *Id.* at 15 ("Defendants did not properly warn …").  Plaintiff further alleges that the defendants – including McKesson – had a duty to warn Mr. Evans of those risks, but failed to do so.  *Id.* at. ¶¶ 15, 31, 34.

On November 7, 2016, Defendant timely removed this action to the United States District Court for the Central District of California on the grounds that McKesson was fraudulently

joined and that there is complete diversity between the properly joined parties. *See* Doc. 1, Notice of Removal (citing 28 U.S.C. §§ 1332, 1441(b)).[3]  On November 17, 2016, the Judicial Panel on Multi-District Litigation ("JPML") finalized Conditional Transfer Order No. 123 ("CTO 123") and transferred this action to MDL 2592.

On November 29, 2016, Plaintiff filed the present Motion to Remand, asserting that complete diversity of citizenship is lacking because Defendant McKesson and Plaintiff Rorick-Evans are citizens of California.

As set forth in the Harrop Affidavit, McKesson Corporation is organized under the laws of Delaware and has its principal place of business in California.  Harrop Aff. at ¶ 3.  McKesson is a non-exclusive wholesale distributor of pharmaceutical products, and is one of many non-exclusive distributors of Xarelto.  *Id.*  at 5.  At all relevant times, McKesson had no role in the testing, design, manufacturing, or labeling of Xarelto, and does not generally sell Xarelto directly to treating physicians.  *Id.* at 8.  McKesson distributes Xarelto from the manufacturing facility to pharmacies and hospitals.  *Id.* at 5.  McKesson does not hold the New Drug Application ("NDA") for Xarelto under federal law, and has no legal ability to change the design, labeling or manufacturing process for Xarelto.  *See* fn. 5, *infra*.  For the reasons set forth below, based on the facts alleged in the Complaint, there is no possibility of recovery based on any of the causes of action alleged in the Complaint against McKesson.

## ARGUMENT

### I.   This MDL Court has discretion to defer ruling on Plaintiff's Motion to Remand

In establishing the Xarelto MDL proceeding, the JPML recognized that centralization of

---

[3] Pursuant to Federal Rule of Civil Procedure 81(c)(2)(C), Defendant Johnson & Johnson and Defendant McKesson separately answered Plaintiff's Complaint on November 14, 2016 – seven days after filing of the notice of removal.

the Xarelto cases "will serve the convenience of the parties and witnesses and ***promote the just and efficient conduct of this litigation*** [,] . . . eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel and the judiciary." *In re Xarelto (Rivaroxaban) Prods. Liab. Litig.,* 65 F. Supp. 3d 1402, 1405 (J.P.M.L. 2014) (emphasis added).  It is well-established that "MDL courts must be given greater discretion to organize, coordinate and adjudicate its proceedings" in a manner that promotes the overall nationwide litigation.  *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 496 F.3d 863, 867 (8th Cir. 2007).  In reviewing the decision of an MDL court, one circuit court of appeal has observed:

> [M]ultidistrict litigation is different because of the large number of cases that must be coordinated, its greater complexity, and the court's statutory charge to promote the just and efficient conduct of the actions. . . . As a result, the considerations that inform the exercise of discretion in multidistrict litigation may be somewhat different, and may tip the balance somewhat differently, from ordinary litigation on an ordinary docket.

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F. 3d 1217, 1222 (9th Cir. 2006).  As a member of the JPML (and former MDL judge) has recognized, MDL courts may "defer consideration of the jurisdictional challenges" pursuant to their "broad scope to manage their own dockets in light of considerations of 'economy of time and effort for itself, for counsel, and for litigants.'"  *In re Zyprexa Prods. Liab. Litig.*, 594 F.3d 113, 127 (2d Cir. 2010) (Kaplan, J., concurring) (citations omitted).   The present action is one of many – pending before this Court – that have improperly joined McKesson as a defendant based on "copycat" allegations in an attempt to defeat diversity jurisdiction.  Ruling on the present Motion, based on the record before this Court, may impact whether other motions to remand are filed and whether the actions proceed in this Court or are remanded to state court.  In *In re Fluoroquinolone Prods. Liab. Litig.*,

No. 15-2642, 2016 WL 4154338 (D. Minn. Aug. 5, 2016), the Honorable John R. Tunheim, presiding over an MDL, deferred ruling on motions to remand based on the joinder of McKesson until plaintiff could make a threshold showing that McKesson distributed the product in question. The Court observed that "if those allegations prove false, Plaintiffs would likely drop their claims against the only non-diverse defendant, and the cases would properly be heard in federal court." *Id.* at *2. In declining to rule on the motions from the outset, the Court held as follows:

> [T]he Court will defer ruling on the motion to remand at this time. After the initial materials are provided by Plaintiffs [showing that McKesson distributed the product]. . . the Court will revisit the motion. The Court makes this decision in the interests of judicial economy and in light of the purposes of MDLs – 'coordinated or consolidated pretrial proceedings' for cases 'involving one or more common questions of fact' in order to 'promote the just and efficient conduct of such actions.' 28 U.S.C. § 1407(a).

*Id.* at *2. The plaintiffs who filed the motions to remand in MDL 2642 later withdrew their motions and dismissed McKesson Corporation from their complaints.

An MDL Court also "reasonably may conclude that the court's time, especially early in the litigation, is better spent on [other] activities," for example, when "the expenditure of judicial resources on remand motions likely would be wasted," or when "new cases and new remand motions are likely to be filed throughout the pendency of the litigation." *In re Zyprexa*, 594 F.3d at 128. Defendant believes that deferring a ruling on the present Motion to allow the first trials in the MDL proceed will promote the just and efficient conduct of this nationwide litigation. If this Court is inclined to rule on the present Motion at this time, the Motion should be denied for the many reasons set forth below, and it is abundantly clear that this Court has subject matter jurisdiction over this action.

## II. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 1441 because McKesson has been fraudulently joined

It is undisputed that diversity jurisdiction exists as between California resident Plaintiff

Rorick-Evans and New Jersey corporation Johnson & Johnson.  The question for this Court to decide is whether McKesson Corporation has been fraudulently joined based on the allegations set forth in the Complaint.  *See, e.g., Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921); *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001).  The citizenship of a defendant that has been fraudulently joined may be disregarded for purposes of establishing subject matter jurisdiction.   "Fraudulent joinder" may be established by showing – based on the allegations in the Complaint – that there is no possibility of recovery against the fraudulently joined defendant.  *United Computer Sys. v. AT&T Info. Sys.,* 298 F.3d 756, 761 (9th Cir. 2002). In construing a Complaint for purposes of fraudulent joinder, facts not pled and inferences not supported by the facts are not to be construed in plaintiff's favor.  *See Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 74 (7th Cir. 1992).

As set forth below, based on the allegations in the Complaint, there is no possibility of recovery against McKesson because (1) McKesson is not the holder of the NDA for Xarelto, and therefore any claim that McKesson, as a wholesale distributor of Xarelto, should have changed the design, label or manufacture of Xarelto is preempted as a matter of law, (2) McKesson did not design, manufacture or label Xarelto, and does not generally sell Xarelto directly to treating physicians, and Plaintiff's allegations that Xarelto was distributed "without substantial change" precludes any claim for recovery against McKesson, and (3) Plaintiff has not alleged any conduct of McKesson that could give rise to liability or any factual predicate that McKesson actually distributed the Xarelto used by Mr. Evans.  Accordingly, Plaintiff's Motion to Remand should be denied.

     **A.**     **Plaintiff's claims against distributor McKesson are preempted because federal law precludes McKesson from changing the label, design or manufacture of Xarelto**

Plaintiff alleges that defendants, as "collectively" defined in the Complaint, failed to

properly design, manufacture and label Xarelto and that as a result Xarelto is unreasonably dangerous. Compl. ¶¶ 7, 31, 35. As against McKesson, these claims are preempted by federal law for the plain reason that McKesson is not the holder of the NDA and has no legal ability under federal law to change the design, manufacture or label of Xarelto. Harrop Aff.; *see also* fn. 5, *infra*.

The Supremacy Clause of the United States Constitution states "[t]his Constitution, and the laws of the United States which shall be made in pursuance hereof … shall be the supreme law of the land." U.S. Const. art. VI § 2. Accordingly, it has long been settled that state laws that conflict with federal law are "without effect." *Bartlett*, 133 S. Ct. at 2473 (*quoting Maryland v. Louisiana*, 451 U.S. 725, 746 (1981)). It is likewise settled that common-law tort claims seeking damages are a form of state "law" subject to preemption. *See, e.g., Geier v. American Honda Motor Co.*, 529 U.S. 861, 881 (2000). Where it is "impossible for a private party to comply with both state and federal requirements," state law claims are preempted. *Bartlett*, 133 S. Ct. at 2473 (internal quotations and citations omitted).

As relevant here, "state and federal law conflict"—and state law is preempted—"where it is 'impossible for a private party to comply with both state and federal requirements.'" *Mensing*, 564 U.S. at 618 (quoting *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995)). The Supreme Court has established the standard for "impossibility" preemption in pharmaceutical cases in three decisions: *Wyeth v. Levine*, 555 U.S. 555 (2009); *Mensing*, 564 U.S. 604 (2011); and *Bartlett*, 133 S. Ct. 2466 (2013).

These decisions explain that "[t]he question for 'impossibility' is whether the [defendant

drug manufacturer] could *independently* do under federal law what state law requires of it." *Mensing*, 564 U.S. at 620 (emphasis added); *see also Bartlett*, 133 S. Ct. at 2470 (quoting *Mensing*). By "independently," the Supreme Court has made clear that it means "unilaterally" and independent of federal agency action. *Mensing*, 564 U.S. at 620 (citing *Levine*, 555 U.S. at 573, for the proposition that preemption turns on whether "the defendant could 'unilaterally' do what state law required"). "[W]hen a party cannot satisfy its state duties without the Federal Government's special permission and assistance, which is dependent on the exercise of judgment by a federal agency, that party cannot independently satisfy those state duties for pre-emption purposes." *Mensing*, 564 U.S. at 623–24.

Under *Levine, Mensing,* and *Bartlett*, if a party cannot "independently" and "unilaterally" do what a plaintiff's state-law claim would require, the claim is preempted.[4]  In the case of Xarelto, federal law requires FDA approval of an NDA prior to marketing a new drug in the United States. The company that owns and controls the NDA is referred to as the applicant. *See* 21 C.F.R. §

---

[4] Since *Bartlett*, courts have overwhelmingly concluded that the *Levine-Mensing-Bartlett* "impossibility" analysis—focused on the permissibility of "independent," "unilateral" action—applies equally to both brand-name and generic products and manufacturers. *See, e.g.*, *Yates v. Ortho-McNeil-Janssen*, 808 F.3d 281 (6th Cir. 2015); *In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, 779 F.3d 34 (1st Cir. 2015); *In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig.*, 756 F.3d 917 (6th Cir. 2014); *Brazil v. Janssen Research & Development LLC*, Civ. A. No. 4:15-CV-0204, 2016 WL 3748771 (N.D. Ga. July 11, 2016); *Fleming v. Janssen Pharmaceuticals, Inc.*, No. 2:15-cv-02799, 2016 WL 3180299 (W.D. Tenn. May 6, 2016); *Barcal v. EMD Sorono, Inc.*, No. 5:14-cv-01709, 2016 WL 1086028 (N.D. Ala. Mar. 21, 2016); *Batoh v. McNeil-PPC, Inc.*, 167 F. Supp. 3d 296 (D. Conn. 2016); *Rheinfrank v. Abbott Labs., Inc.*, 137 F. Supp. 3d 1035 (S.D. Ohio 2015); *Booker v. Johnson & Johnson*, 54 F. Supp. 3d 868 (N.D. Ohio 2014); *Thompson v. Allergan USA, Inc.*, 993 F. Supp. 2d 1007 (E.D. Mo. 2014); *Amos v. Biogen Idec Inc.*, 28 F. Supp. 3d 164 (W.D.N.Y. 2014).  Indeed, as a recent Third Circuit case makes clear, the fundamental principles recognized in *Mensing* and *Bartlett* apply even outside the pharmaceutical context. *See Sikkelee v. Precision Airmotive Corp.*, 822 F.3d 680, 703–04 (3d Cir. 2016) (applying *Mensing* and *Bartlett*, in an aviation context, for the proposition that "where manufacturers are unable to simultaneously comply with both federal and state requirements, state law design defect claims are conflict preempted"). *But see Estate of Cassel v. Alza Corp.*, No. 12-CV-771-WMC, 2014 WL 856023, at *5 (W.D. Wis. Mar. 5, 2014) (holding that *Bartlett* does not apply to brand-name drugs).

314.3(b) (defining "application" and "applicant"); *see also id.* § 314.50 (describing NDA contents). Following the FDA's approval of a new drug, including its design and labeling, any proposed changes to alter the FDA approved design, manufacture, or labeling must be submitted to the FDA in the form of a "supplement" to the NDA. *See id.* § 314.70(a)(1)(i).[5] Critical to the preemption analysis here is *who* can submit a supplement to an approved drug application. Federal law provides a clear answer: only "the applicant must notify FDA about the change in a supplement." *Id.* In the case of Xarelto®, only Janssen Pharmaceuticals, Inc. – an entity not named in Plaintiff's Complaint – is the NDA applicant. McKesson Corporation does not hold the NDA, and thus cannot be considered the NDA holder or exercise the powers of the NDA holder.[6] Under federal law, McKesson does not have authority to initiate a design, manufacturing or label change for Xarelto. Because McKesson could not "independently do under federal law what state law requires of it," the state law claims brought against it are preempted.

In applying *Mensing* to a non-NDA holder distributor of pharmaceutical medicines – like McKesson here – the MDL Court in *In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*, 2012 WL 181411, at \*3–\*4 (D.N.J. Jan. 17, 2012), held as follows:

> Watson [the distributor] has no power to change Fosamax labeling. That power lies with the applicant who filed the New Drug Application (NDA) seeking approval to market Fosamax. *See* 21 U.S.C.

---

[5] *See also* FDA Guidance for Industry: Changes to an Approved NDA or ANDA (April 2004), *available at* http://www.fda.gov/downloads/drugs/guidancecomplianceregaultory information/guidances/ucm077097.pdf (last visited January 9, 2017).

[6] The FDA's online database shows only Janssen Pharmaceuticals, Inc. holds the NDA. *See* https://www.accessdata.fda.gov/scripts/cder/ob/docs/temptn.cfm (last visited January 9, 2017). Johnson & Johnson requests that the Court take judicial notice of this database. Courts routinely take notice of public documents on government websites when ruling on motions at the pleading stage. *See, e.g., Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (FDA documents and transcripts granting premarket approval for medical device); *Guidry v. Janssen Pharms., Inc.*, 2016 WL 633673, at \*4, n. 9 (E.D. La. Feb. 17, 2016) (Prescribing Information for Invokana); *Wilson v. Amneal Pharms., L.L.C.*, 2013 WL 6909930, at \*4 – \*7 (D. Idaho Dec. 31, 2013) (FDA approval letters and drug labels).

355(b); 21 C.F.R. 314.70 (describing the Changes Being Effected or "CBE" regulation, which requires that "*the applicant* must notify FDA about each change in each condition established in an approved application.") (emphasis added).  In this case, Merck is the NDA applicant with the corresponding authority to change labeling.  Additionally, if FDA had 'become aware of new safety information' in connection with Fosamax use that 'it believe[d] should be included in the labeling,' FDA must notify the holder of the NDA to initiate the changes.  21 U.S.C. 355(o)(4)(A).  Neither of these procedures involves a distributor.

As a result of the scheme set forth by the FDCA, Watson has no authority to initiate a labeling change of Fosamax.  This authority lies with the FDA and/or with Merck.  Even taking the allegations. . . as true, a contractual relationship between Watson [the distributor] and Merck cannot change the fact that Watson is not the NDA holder.  Consequently, Watson has no power to unilaterally change Fosamax labeling.  Because Watson could not 'independently do under federal law what state law requires of it,' the state law claims brought against it are preempted.  *Mensing*, 131 S. Ct. at 2579.

Applying this same rule, the Sixth Circuit in *Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*, 756 F.3d at 940, held that failure-to-warn claims against a non-NDA holder were preempted.  In *Davocet*, Eli Lilly & Co. ("Lilly") had held the NDA for a brand-name drug, sold the NDA to another company, and continued manufacturing the drug for a generic company.  The Sixth Circuit held that failure-to-warn claims against Lilly involving use of the drug after Lilly sold its NDA were preempted, reasoning that "[a]fter the divestiture [of the NDA], Lilly had no more power to change the label than did" genetic manufacturers. *See also Stevens v. Cmty. Health Care, Inc.*, 2011 WL 6379298, at *1 ("As a distributor, … DAVA had no ability to change labeling or warnings and thus … cannot be subject to liability in connection with a state law claim premised on a 'failure to warn.'").

Similarly, the court in *Brazil*, 2016 WL 3748771, at *11, recently held as follows, "[w]hen a company does not have the NDA, it has 'no more power to change the label' of a drug than a generic manufacturer." (citations omitted).

The decisions in *Fosamax*, *Davocet* and *Brazil* are directly on point. Claims against distributors, such as McKesson, that do not hold the NDA and have no ability to change the label, design or manufacture of Xarelto under federal law, are preempted as a matter of federal law. Accordingly, because the claims are preempted and there is no possibility of recovery against McKesson, this Court should find that McKesson has been fraudulently joined.

**B.      Plaintiff is judicially estopped from alleging a claim against McKesson and there is no possibility of recovery based on the facts alleged in the Complaint**

Plaintiff's Complaint is bereft with "copycat" allegations – inserting McKesson as a defendant – seeking to recover for alleged strict liability, negligence, breach of express and implied warranties, alleged violations of California consumer protection statutes and wrongful death. The Complaint ambiguously conflates allegations against "all defendants" (Compl. ¶ 7) and does not provide the requisite details to ascertain what allegations apply to particular defendants. By comingling allegations and claims, Plaintiff takes the position in her Motion to remand that all allegations apply to McKesson. But this cannot be so. As set forth in the Harrop Affidavit, the allegations – as applied to McKesson – are plainly erroneous, nor do they give rise to a viable cause of action against a distributor of pharmaceutical medicines.

**1.      The allegation that Xarelto was "without substantial change" constitutes a judicial admission that precludes recovery against McKesson**

Plaintiff's Complaint alleges that "all defendants" are liable for the failure to properly manufacture, design and label Xarelto. Compl. ¶ 31 (defendants are liable for "designing, manufacturing, testing, marketing and placing into the stream of commerce" Xarelto "for sale to, and use by, members of the public."). But as set forth in the Harrop Affidavit, McKesson *does not* manufacture, design or label Xarelto, nor does it generally sell Xarelto to prescribing or treating

physicians.  Harrop Aff. at ¶¶ 5-8.   At all relevant times, McKesson's primary role has been to distribute already manufactured and pre-labeled Xarelto to its customer pharmacies and hospitals that dispense Xarelto to patients.  *See id*.  As set forth below, based on the allegations in the Complaint, there is no possibility of recovery against McKesson.

The Complaint alleges that Xarelto was defectively designed, labeled and manufactured and that it otherwise "reached Ingesting Plaintiff [i.e. Mr. Evans] without substantial change and was ingested as directed" in the FDA-approved labeling.  Compl. ¶ 31; *see also id.* ("Xarelto was defective and unreasonably dangerous when it entered into the stream of commerce. . .").  Plaintiff does not allege that any negligent or other conduct of McKesson in the "distribution" of pre-labeled and manufactured Xarelto was the cause of Mr. Evans' alleged injuries.  As a result, plaintiff is judicially estopped from asserting that McKesson is liable for distributing an FDA-approved medicine "without substantial change."  *Id.;* s*ee Lyons v. American Tobacco Co.*, No. 96-0881-BH-S, 1997 U.S. Dist. LEXIS 18365, at *18 – 19 (S.D. Ala. 1997) (there is "no better admission of fraudulent joinder of [resident defendants]" than the failure of the plaintiff "to set forth any specific factual allegations" against them).[7]  Accordingly, there is no possibility of re-covery against McKesson based on the facts as alleged.  *See, e.g., Service by Medallion, Inc. v. Clorox Co.*, 44 Cal. App. 4th 1807, 1818 (1996) ("in order to recover for fraud, as in any other tort, the plaintiff must plead and prove the 'detriment proximately caused' by the defendant's tortious conduct.") (citing Cal. Civ. Code § 3333).

---

[7] "Normally, factual assertions in pleadings and pretrial orders are considered to be judicial admissions conclusively binding on the party who made them."  *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir. 1983) (citations omitted); *see also Carcamo-Lopez v. Doe*, 865 F. Supp. 2d 736, 752 (W.D. Tex. 2011) ("[A]n allegation in the Complaint constitutes a judicial admission, and is binding upon Plaintiff for the rest of the case."); *accord Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988)("A statement in a complaint, answer or pretrial order is a judicial admission …."); *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand*, 322 F.3d 147, 167 (2d Cir. 2003) ("the allegations in the Second Amended Complaint are 'judicial admissions' by which [the plaintiff] was bound throughout the course of the proceeding.'") (citation omitted).

Second, California law does not support recovery against McKesson based on the facts as alleged. As set forth above, distributor liability cannot attach to the sale of a prescription medicine transported and distributed in the form manufactured, sold and labeled by the holder of the NDA (in this case Janssen Pharmaceuticals, Inc.). Unlike non-pharmaceutical products, the California Supreme Court has noted that there is "an important distinction between prescription drugs and other products" that are commonly used, such as automobiles and other consumer household products, because the benefits of prescription medications include saving lives and improving the health of individuals. *Brown*, 44 Cal.3d at1063. California has declined – as a matter of law – to recognize a claim for strict liability design defect against the manufacturer itself because California's "[p]ublic policy favors the development and marketing of beneficial

new drugs, even though some risks, perhaps serious ones, might accompany their introduction…." *Id.* In declining to adopt a strict liability design defect, the court in *Brown* observed:

> If drug manufacturers were subject to strict liability, they might be reluctant to undertake research programs to develop some pharmaceuticals that would prove beneficial or to distribute others that are available to be marketed, because of the fear of large adverse monetary judgments.

*Id.* at 1063.

In furtherance of California's public policy to encourage the sale of beneficial medicines, California courts held – even prior to *Brown* – that pharmacists, who are intermediate distributors that interact directly with patients but are not involved in the manufacture or labeling of a prescription medication, are not to be held liable for alleged product defects of prescription medicines. *Murphy v. E.R. Squibb & Sons, Inc.*, 40 Cal. 3d 672 (1985). In declining to recognize such a claim, the court in *Murphy* noted that "[t]he pharmacist is in the business of selling pre-

scription drugs, and his role begins and ends with the sale." *Id*. at 679.[8]  In explaining the reasons why liability should not attach to pharmacists, the court stated that if individuals or entities that do not manufacture, label or design prescription products are held liable, they "might restrict availability [of important medications] by refusing to dispense drugs which pose even a potentially remote risk of harm, although such medications may be essential to the health or even the survival of patients." *Id.* at 680–81.

Likewise – when faced with the question of McKesson's purported liability – some courts have held that there is no viable cause of action for failure to warn or otherwise against intermediate distributors of pharmaceutical medications under California law.  *Skinner v. Warner-Lambert Co*., No. CV 03-1643-R(RZX), 2003 WL 25598915 (C.D.  Cal. Apr. 28, 2003). The court in *Skinner* held "there is no possibility that the plaintiffs could prove a cause of action against McKesson, an entity which distributed [the] FDA-approved medication to pharmacists in California." *Id*. at *1; *see also Leeson v. Merck & Co*., No. S-05-2240 WBS PAN, 2006 WL 3230047, at *3 (E.D. Cal. Jan. 27, 2006) ("Yet only a handful of judges have found that California law does not clearly exempt distributors from strict liability for failure to warn.").

Although other courts – cited by Plaintiff – have reached a different conclusion and have held, based on the facts of the pertinent case, that there could potentially be recovery against

---

[8] The same public policy reasons for not imposing liability on a pharmacist as articulated in *Murphy* apply to distributors of FDA-approved medicines.  In addition, since *Murphy*, the California Supreme Court decided *Brown*, holding that strict liability design defect claims were precluded as a matter of law – even against the manufacturer of the product itself.  Where a plaintiff's claims are predicated on an alleged inadequate warning –subject to change only by the NDA holder – California courts have treated failure-to-warn claims and negligence claims against manufacturers as functionally the same, because "in each cause of action" alleged, "plaintiff's theory was that defendant knew [of the relevant risk] … but failed to provide plaintiff with an adequate warning."  *Johnson v. Am. Standard, Inc.*, 43 Cal.4th 56, 62 (2008).  Under California law, the failure to warn claims alleged in the complaint against the holder of the NDA do not translate into distributor liability under principles of negligence or purported strict liability for distribution of a prescription medicine approved by the FDA, particularly in light of the allegations that the product was ingested "without substantial change" from the time of manufacture, and the distributor could not change the design, label or manufacture of the product under federal law.

McKesson, none of those cases involved a judicial admission by plaintiff that an FDA-approved medicine distributed by McKesson reached the plaintiff "without substantial change" and none of the cases cited in the Motion addressed the merits of federal law preemption as articulated by the Supreme Court in *Mensing* and *Bartlett*.[9]   The record before this Court is that McKesson did not manufacture, label or design Xarelto, and that the FDA-approved Xarelto was distributed "without substantial change" – all of which warrant a conclusion that there is no possibility of recovery against McKesson.

## 2. Facially erroneous allegations against defendants collectively support of finding of fraudulent joinder

Where a plaintiff has comingled generic allegations against various defendants, as here, without linking specific conduct of each defendant in the causal chain, a finding of fraudulent joinder is appropriate.  *Badon v. R J R Nabisco Inc.,* 224 F.3d 382, 391-93 (5th Cir. 2000) (affirming finding of fraudulent joinder where plaintiff's claims simply referred to "defendants" collectively and where plaintiffs failed to allege any "particular or specific activity" on the part of each of the in-state defendants); *Staples v. Merck & Co., Inc.*, 270 F. Supp. 2d 833, 844 (N.D.

---

[9] Plaintiff does not cite to any California state court decision that has found liability of a distributor of a prescription medicine similar to the facts alleged here.  Plaintiff Rorick-Evans has alleged that Mr. Evans ingested the medicine "without substantial change" from when it was manufactured, and has not properly alleged conduct of McKesson. Plaintiff cites to *Carlin v. Superior Court*, 13 Cal.4th 1104 (1996), for the proposition that a distributor of a medicine can be held liable, but *Carlin* did not involve a distributor at all, and although it used the term distributor at times interchangeably with manufacturer, the defendant was the manufacturer and holder of the NDA, Upjohn Company. *Id.* at 1117-1118.  Nor did the court consider the factors that have traditionally been applied to distributor liability in the context of non-pharmaceutical cases.  Those decisions, involving products not regulated by the FDA and subject to different strict liability standards, have largely focused on the degree to which the defendant had control over and has been involved in the marketing enterprise, which is not present and has not been alleged here.  *Bay Summit Cmty. Assn. v. Shell Oil Co.*, 51 Cal.App.4th 762, 769-771, 776-77 (1996) (a defendant contributed "substantial marketing assistance," developed materials for "sales representatives," attended "sales meetings, had a "marketing guide" and "injected itself into the overall marketing enterprise" that "was integral to the business enterprise such that the defendant's conduct was a necessary factor in bringing the product to the initial consumer market" and "defendant had control over, or a substantial ability to influence, the manufacturing or distribution process."  As the court noted, "the imposition of strict liability . . . is not limitless" and "courts have been mindful that the strict liability doctrine derives from judicially perceived public policy justifications are not applicable even if the defendant could be technically viewed as a 'link in the chain' in getting the product to the consumer market.").

Tex. 2003) (allegation that "*Defendants* committed actual fraud" insufficient to warrant remand); *Banger v. Magnolia Nursing Home, L.P.*, 234 F. Supp. 2d 633, 638 (S.D. Miss. 2002) ("conclusory and generic allegations of wrongdoing on the part of all the Defendants … are not sufficient to show that [non-diverse defendant] was not fraudulently joined"); *In re Rezulin Prods. Liab. Litig*, 168 F. Supp. 2d 136, 140 & n.10 (S.D.N.Y. 2001) (remand should be denied where "plaintiffs make no specific allegations against [the non-diverse defendant] at all, instead [they] attribut[e] wrongdoing to the collective 'defendants'"); *In re Rezulin Prods. Liab. Litig,* 133 F. Supp. 2d 272, 291 (S.D.N.Y. 2001) (finding fraudulent joinder where plaintiffs "lump" non-diverse and diverse defendants together "and attribute the acts alleged … to the 'defendants' generally"); *Salisbury v. Purdue Pharma, L.P.*, 166 F. Supp. 2d 546, 550 (E.D. Ky. 2001) (denying remand where the complaint "commonly employs the generic term 'defendants'"); *see also, Sherman v. Stryker*, No. SACV 09-224, 2009 U.S. Dist. LEXIS 34105, at *6 (C.D. Cal. Mar. 30, 2009) (quoting *Lancaster Cmty Hop. v. Antelope Valley Hosp. Dist.,* 940 F.2d 397, 405 (9th Cir. 1991)) (in a products liability action, dismissing negligent and fraudulent misrepresentation claims where plaintiff "does not differentiate these claims as to [one defendant] and the other defendants" and fails to "specifically allege 'the role of each defendant in each scheme'").

Plaintiff's sole allegations specific to McKesson are contained in Paragraph 6, and as set forth above, those allegations erroneously attempt to attribute conduct to McKesson that cannot fairly be attributed to a distributor.   General and conclusory allegations as to defendants collectively in order to defeat removal are not proper.  *See Salisbury*, 166 F. Supp. 2d at 550 ("plaintiffs' complaint commonly employs the generic term 'defendants,' [but] the context and nature of the individual allegations make clear that only the drug companies are targeted.").  The failure to plead claims specifically as to a non-diverse party is sufficient to find fraudulent joinder.  *Id*.

Plaintiff's improper pleading demonstrates no possibility of recovery because (1) Plaintiff does not identify a single statement made by McKesson that was allegedly fraudulent or deceptive, (2) Plaintiff fails to allege any fact that was concealed that McKesson had a duty to disclose as a mere distributor of a product, and (3) Plaintiff has not alleged any connection between conduct of McKesson and Plaintiff's alleged injuries from Xarelto that could satisfy the cause-in-fact elements of these claims, including claims for fraud which must be pled with particularity under Federal Rule of Civil Procedure 9(b).  *See, e.g., Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003) ("It is well-established in the Ninth Circuit that both claims for fraud and negligent misrepresentation must meet 9(b)'s particularity requirements.") (citation omitted).

### C.    Plaintiff has failed to allege a factual predicate that McKesson distributed Xarelto used by Mr. Evans

Plaintiff has not alleged any factual predicate that properly identifies a pharmacy, hospital or prescribing physician that would provide a basis for recovery against McKesson as the distributor of the particular product used by Mr. Evans.   *See In re Fluoroquinolone Prods. Liab. Litig*, 2016 WL 4154338, at *2 (deferring ruling until plaintiff provided relevant information). *Aronis v. Merck & Co.*, Inc., Civ. S-05-0486 WBS DAD, 2005 U.S. Dist. LEXIS 41531, *3–4 (E.D. Cal. May 3, 2005) ("allegation that McKesson is a major distributor of [pharmaceutical medication], even though taken as true at this stage, is not enough to support a claim against McKesson."); *See In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 291 (S.D.N.Y. 2001) ("*Rezulin II*") (denying motion to remand where plaintiffs named a non-diverse defendant and alleged that a distributor defendant was "in the business of distributing and selling the pharma-

ceutical" on grounds that plaintiffs did not allege that the defendant "actually sold" the pharma-ceutical product to the plaintiffs).

Plaintiff makes a general allegation that McKesson distributed the Xarelto used by Mr. Evans.  But this generic "copycat" allegation has no factual predicate from which a reasonable inference could be drawn demonstrating in good faith the truth of the allegations, such as the pharmacy where plaintiff purchased the medicine, or the hospital that dispensed Xarelto or the prescribing physician who prescribed Xarelto for use by Mr. Evans.  Absent these factual predi-cates, there can be no reasonably inference that McKesson distributed the product in question. As a result, this Court should find that McKesson has been fraudulently joined, or alternatively defer ruling on the present Motion until Plaintiff can make an appropriate showing that the Xarelto used by Mr. Evans was distributed by McKesson.

## **CONCLUSION**

For the foregoing reasons, this Court should deny Plaintiff's Motion to Remand or defer ruling until Plaintiff can demonstrate that McKesson distributed the product in question.

Respectfully submitted,

DRINKER BIDDLE & REATH LLP

By: /s/ Susan M. Sharko
    Susan M. Sharko
    DRINKER BIDDLE & REATH LLP
    600 Campus Drive
    Florham Park, NJ 07932-1047
    Telephone: (973) 549-7000
    Facsimile:  (973) 360-9831
    susan.sharko@dbr.com

    Rodney M. Hudson
    DRINKER BIDDLE & REATH LLP
    50 Fremont Street, 20th Floor
    San Francisco, CA 94105-2235
    Telephone: (415) 591-7500
    Facsimile: (415) 571-7510
    Rodney.hudson@dbr.com

    Chanda A. Miller
    DRINKER BIDDLE & REATH LLP
    One Logan Square, Suite 2000
    Philadelphia, PA 19103-6996
    Telephone: (215) 988-2500
    Facsimile: (215)988-2757
    Chanda.Miller@dbr.com

IRWIN FRITCHIE URQUHART & MOORE LLC

By: /s/ James B. Irwin
    James B. Irwin
    Kim E. Moore
    IRWIN FRITCHIE URQUHART & MOORE
    LLC
    400 Poydras Street
    Suite 2700
    New Orleans, LA 70130
    Telephone: (504) 310-2100
    Facsimile:  (504) 310-2120
    jirwin@irwinllc.com

*Attorneys for Defendant Johnson & Johnson*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on January 10, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to Liaison Counsel for Plaintiffs and Defendants by operation of the court's electronic filing system and served on all other plaintiff counsel via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre-Trial Order No. 17.

*/s/ James B. Irwin*
**James B. Irwin**
