# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE ELDON E. FALLON |
| Joseph J. Boudreaux, Jr., et al. v. Janssen et al. Case No. 2:14-cv-02720 | MAGISTRATE NORTH |
| Joseph Orr, Jr., et al. v. Janssen et al. Case No. 2:15-cv-03708 | |

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION *IN LIMINE* TO EXCLUDE CERTAIN OPINIONS OF LAURA M. PLUNKETT, Ph.D., UNDER FEDERAL RULE OF EVIDENCE 702

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................... 3

ARGUMENT ......................................................................................................................... 3

I.  The Court should exclude Dr. Plunkett's testimony concerning the adequacy of Xarelto's labeling. ..................................................................................................... 4

    A.  Dr. Plunkett lacks a medical doctor's expertise on the adequacy of pharmaceutical labeling. ........................................................................... 5

    B.  Dr. Plunkett lacks a regulatory agent's expertise on the adequacy of pharmaceutical labeling. ........................................................................... 8

    C.  Dr. Plunkett's labeling opinion should be excluded as unreliable because she failed to review FDA documents that contradict her opinion. ........ 10

II. The Court should exclude Dr. Plunkett's commentary on Defendants' internal corporate documents and her state of mind opinions...................................... 11

CONCLUSION .................................................................................................................. 14

Defendants Bayer HealthCare Pharmaceuticals Inc., Bayer Pharma AG, Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC, Janssen Ortho LLC, and Johnson & Johnson (collectively, "Defendants") submit this memorandum of law in support of their motion to exclude certain opinions of Laura M. Plunkett, Ph.D., under Federal Rule of Evidence 702. This motion addresses Dr. Plunkett's opinions that are outside her areas of expertise—pharmacology and toxicology—or that relate to subjects that are inappropriate for expert testimony. In particular, Dr. Plunkett is not qualified to offer an opinion regarding the adequacy of the Xarelto® labeling. And, her opinions regarding the state of mind or knowledge of Defendants and the FDA should be excluded as inappropriate expert testimony.

**INTRODUCTION**

Dr. Plunkett should not be permitted to opine on the adequacy of the FDA-approved labeling for Xarelto, as Plaintiffs intend, because such matters are outside her area of expertise. The FDA determines whether to approve pharmaceutical labeling based on whether the label's target audience of medical doctors who "make[] decisions or recommendations about the use of the product" in light of their patients' particular medical conditions will understand the risks and benefits. *See Grenier v. Med. Eng'g Corp.*, 99 F. Supp. 2d 759, 765 (W.D. La. 2000) (explaining that "inadequate warning analysis [in pharmaceutical product liability litigation] . . . must be viewed through the lens[] of the learned intermediary doctrine"). Dr. Plunkett has not drafted language for or otherwise consulted with the FDA on pharmaceutical labeling, and she is not a medical doctor. She therefore is not qualified to offer an expert opinion on the adequacy of Xarelto labeling from the perspective of the medical doctors who consider such labeling in their treatment recommendations or the FDA's in-house experts who are tasked with approving pharmaceutical labeling. Two courts have excluded Dr. Plunkett's opinions about the adequacy of pharmaceutical labeling on the ground that she was not qualified to offer them. *See Arrigale v. Merck & Co., Inc.*,

1

2844758-1

JCCP No. 4247, slip op. at 22 (Cal. Super. Ct. L.A. Co. Aug. 1, 2006) (Exh. 1); *In re Tex. Second Region Baycol Litig.*, No. 0247408, slip op. at 2 (Tex. Dist. Ct. Harris Co. Jan. 28, 2004) (Exh. 2). This Court should do the same.

In addition, Dr. Plunkett should not be permitted to testify about intent or state of mind as planned because this testimony is squarely within the province of the jury and not an appropriate subject for an expert. Based on a review of Defendants' internal files and documents, Dr. Plunkett intends to characterize the states of mind of Defendants and certain FDA employees, and to inform the jury that Defendants knew or should have known certain information. Her proposed testimony goes beyond what is necessary to assist the jury in understanding technical or scientific terms in the documents.

Numerous courts have excluded similar testimony in pharmaceutical multidistrict litigation. For example, in the *Rezulin* MDL, the court rejected the use of "'expert' witnesses whose intended role [was] more to argue the client's cause from the witness stand than to bring to the fact-finder specialized knowledge or expertise that would be helpful in resolving the issues of fact presented by the lawsuit." *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 538 (S.D.N.Y. 2004) (excluding expert testimony that provided, among other things, opinions about the state of mind of companies, speculation about the effect of labeling on physicians, and the expert's personal interpretation of certain events); *accord In re Prempro Prods. Liab. Litig.*, 554 F. Supp. 2d 871 (E.D. Ark. 2008) (excluding expert testimony that discussed internal company documents), *aff'd in relevant part*, 586 F.3d 547, 571 (8th Cir. 2009); *In re Baycol Prods. Liab. Litig.*, 532 F. Supp. 2d 1029 (D. Minn. 2007) (excluding proposed expert testimony about corporate intent and purported suppression of research); *In re Diet Drugs Prods. Liab. Litig.*, No. MDL 1203, 2001 WL 454586 (E.D. Pa. Feb. 1, 2001) (excluding expert testimony consisting of

2

2844758-1

USCA5 137

speculation about the effect of labeling, and experts testifying outside of their true area of competence). This Court should exclude Dr. Plunkett's similar testimony.

## BACKGROUND

Dr. Plunkett is a Ph.D. toxicologist and pharmacologist. Plunkett Rep. at ¶ 1 (Exh. 3). She is not a medical doctor. *See* Plunkett Dep. at 23:12–17, 610:24–611:3 (Exh. 4). In recent years, she has devoted a substantial portion of her professional work to serving as an expert witness for plaintiffs' lawyers in product liability litigation—about 50% of her income comes from this work, and she has testified exclusively for plaintiffs. *Id.* at 76:7–21, 94:16–95:9. Dr. Plunkett intends to opine that the Xarelto labeling was inadequate for allegedly failing to provide certain information. *See* Plunkett Rep. at ¶ 63; Plunkett Dep. at 646:3–648:10. In addition, Dr. Plunkett intends to opine that Defendants knew or should have known certain information, and to offer opinions regarding the state of mind of FDA employees. *See* Plunkett Dep. at 12:11–13:24, 36:11–37:1, 40:2–12, 42:15–23, 308:15–20, 358:4–18.

## ARGUMENT

Federal Rule of Evidence 702 governs the admissibility of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Rule 702 requires federal courts to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). Plaintiffs bear "the burden of establishing, by a preponderance of the evidence, that '(1) [Dr. Plunkett] is qualified; (2) [her] testimony is relevant to an issue in the case; and (3) [her]

3

testimony is reliable.'" *Howard v. Offshore Liftboats, LLC*, Civ. Action No. 13-4811, 2016 WL 379592, at *1 (E.D. La. Feb. 1, 2016); *accord AMW Sports, LLC v. State Farm Fire & Cas. Co.*, Civ. Action No. 10-651-SCR, 2012 WL 39380, at *1 (M.D. La. Jan. 9, 2012) ("[T]he proponents of the expert evidence at issue have the burden of demonstrating that their expert is qualified to testify in the field that he is offered and that his opinions are both reliable and relevant."). Applying Rule 702 in light of *Daubert* and its progeny, Dr. Plunkett's opinions concerning the adequacy of Xarelto's labeling, and Defendants' and the FDA's employees' knowledge or states of mind should be excluded.

**I.     The Court should exclude Dr. Plunkett's testimony concerning the adequacy of Xarelto's labeling.**

Dr. Plunkett intends to opine that the Xarelto labeling is inadequate due to a lack of information regarding the alleged (1) "high-level of inter-individual (inter-patient) variability" in the pharmacological effects associated with Xarelto use; (2) utility of "the pharmacodynamics measurement tool, prothrombin time, [which] is linearly correlated with rivaroxaban blood levels and can be used as a surrogate marker for drug blood level"; and (3) "predictable exposure-response relationship between prothrombin time/ and major bleeding." Plunkett Rep. at ¶ 9; *see also id.* at ¶ 63; Plunkett Dep. at 646:3–648:10. Dr. Plunkett testified that her labeling opinions "deal with either pharmacokinetics or pharmacodynamic issues related to Xarelto." Plunkett Dep. at 13:25–14:9. Putting aside, for purposes of this motion only, the relevance and reliability of Dr. Plunkett's underlying opinions regarding the pharmacological properties of Xarelto, she should not be permitted to offer opinions regarding the adequacy of Xarelto labeling because she is not qualified by "knowledge, skill, experience, training, or education" to do so. Fed. R. Evid. 702.

Dr. Plunkett's expertise in pharmacology does not qualify her to offer labeling opinions. Rule "702 prohibits an expert from testifying outside their area of expertise. Expertise in one area

4

does not equate to expertise in all related fields and for all related opinions." *Brookshire Bros. Holding, Inc. v. Total Containment, Inc.*, No. 04-1150, 2007 WL 2591303, at *2 (W.D. La. Sept. 5, 2007).[1] Dr. Plunkett lacks expertise as either a medical doctor or a regulatory agent, and thus she is neither the intended audience for the warnings on a label nor an experienced author of such labels. Her testimony therefore would not aid the jury in determining what information about medicines should be disclosed to the doctors who prescribe them.

### A. Dr. Plunkett lacks a medical doctor's expertise on the adequacy of pharmaceutical labeling.

Under Louisiana law, "[a]n inadequate warning analysis [in pharmaceutical product liability litigation] . . . must be viewed through the lens[] of the learned intermediary doctrine," under which the doctor "is the one to whom warnings are directed because it is he or she who makes decisions or recommendations about the use of the product." *Grenier v. Med. Eng'g Corp.*, 99 F. Supp. 2d 759, 765 (W.D. La. 2000); *see also Webster v. Pacesetter, Inc.*, 259 F. Supp. 2d 27, 35 (D.D.C. 2003) ("The adequacy of the warnings that accompany a medical device must be assessed from the perspective of the physician using the device."). For example, in *Calisi v. Abbott Laboratories*, No. 11-10671-DJC, 2013 WL 5441355 (D. Mass. Sept. 27, 2013), the court held that an expert pharmacologist's opinion regarding the adequacy of a medicine's labeling did not satisfy Rule 702. As the court explained, the expert lacked a "sufficient basis for understanding what information is needed by a doctor in making his or her prescribing decision" because he was "not a medical doctor and does not have 'qualifications to opine on what is clinically appropriate

---

[1] *Accord Calhoun v. Yamaha Motor Corp.*, 350 F.3d 316, 322 (3d Cir. 2003) ("An expert may be generally qualified but may lack qualifications to testify outside his area of expertise."); *In re Welding Fume Prods. Liab. Litig.*, No. 1:03-CV-17000, 2010 WL 7699456, at *21 (N.D. Ohio June 4, 2010) ("Merely because a person is an expert and can assist the jury to understand discrete issues raised by the parties does not mean he must opine about *every* important issue in the case." (emphasis by court)); *Arreola v. Epic Divers, Inc.*, Civ. Action No. 05-2788, 2006 WL 5153148, at *2 (E.D. La. Oct. 25, 2006) (limiting expert's testimony "to those areas shown to be related to his area of expertise").

5

2844758-1

in terms of treating patients,'" and pointed to no facts, "such as those acquired through his experience, as to how the label's relevant target audience would interpret the [medicine's] labels." *Id.* at *8 (internal citation omitted).[2]

Like the purported expert in *Calisi*, Dr. Plunkett has no experience that would permit her to assess the adequacy of Xarelto labeling from the perspective of a medical doctor who prescribes that medicine. She is not a medical doctor, has never treated a patient, and has never prescribed any anticoagulant:

> Q. So is it fair to say you've never treated a patient for atrial fibrillation?
>
> A. Yes. That's true.
>
> Q. You've never treated a patient who has had a stroke?
>
> A. No. I have not.
>
> Q. You've never treated a patient who has had venous thromboembolism such as DVT or PE?
>
> A. No. I have not.
>
> Q. You've never treated a patient with internal bleeding?
>
> A. No. I have not.
>
> Q. And of course you've never prescribed an anticoagulant?
>
> A. No. I have not done that.

---

[2] *Accord Upjohn Co. v. MacMurdo*, 562 So. 2d 680, 683 & n.3 (Fla. 1990) (granting judgment as a matter of law where "no medical expert testified that the package insert was insufficient to put a doctor on notice that the symptoms displayed by [plaintiff] could result from the use of Depo-Provera" and the testimony of "a pharmacologist who endeavored to testify what these terms meant to physicians" was not "considered probative on this issue" (citing *Dion v. Graduate Hosp. of the Univ. of Pa.*, 520 A.2d 876, 879 (Pa. Super. Ct. 1987)); *Gentile v. Biogen Idec, Inc.*, No. 11-3500, 2016 WL 4168942, at *8 (Mass. Super. Ct. July 28, 2016) (expert testimony on adequacy of pharmaceutical warning labels would be inadmissible because "Dr. Major is not a medical doctor, does not have the qualifications necessary to opine on matters of treating patients, and does not assert that he has the experience necessary to interpret warnings from the perspective of a prescribing physician"); *Hill v. Squibb & Sons*, 592 P.2d 1383, 1388 (Mont. 1979) (same).

> Q. And of course that means you've never prescribed Xarelto?
>
> A. That is correct.

Plunkett Dep. at 152:13–153:5; *see also id.* at 23:12–17, 610:24–611:3. As such, unlike doctors who make daily decisions about what medicines to prescribe, Dr. Plunkett has no experience balancing the risk of a stroke against the risk of bleeding when prescribing anticoagulants to patients with atrial fibrillation. *See id.* at 154:11–22.[3]

Despite this lack of experience, Dr. Plunkett nevertheless proposes to opine on how doctors would react to information she proposes be included in Xarelto labeling: "If you tell physicians that there is a—in—in the labeling, that there is an important tool of monitoring, regardless of whether you make a statement on the label, You must monitor, I believe physicians would do that." *Id.* at 350:2–7. Dr. Plunkett has no basis to opine on how doctors would react to information about Xarelto or what information might be important to them.

In light of her lack of qualifications, and consistent with the foregoing authorities, two courts have ruled that Dr. Plunkett cannot testify concerning the labeling of prescription pharmaceutical products. *See*, *e.g.*, *Arrigale*, slip op. at 22 ("Dr. Plunkett is not qualified to opine with regard to . . . the adequacy of [Merck's] warnings"); *In re Tex. Second Region Baycol Litig.*, slip op. at 2 (Dr. Plunkett is "not qualified under Texas Rules of Evidence 702 to offer opinions regarding the labeling of Baycol [or] the appropriateness or adequacy of any warnings or lack of

---

[3] Mere status as a medical doctor would not necessarily qualify Dr. Plunkett to testify about the Xarelto labeling. A medical doctor who does not treat patients with atrial fibrillation by prescribing anticoagulants also is not in a position to opine on what is important to doctors who do. In addition, even if a medical doctor satisfies the threshold requirement that she is qualified to opine on Xarelto labeling, that does not establish that her opinions are either relevant to the litigation or reliable as necessary to support admissibility.

7

warnings in Baycol's label").[4] This Court also should exclude Dr. Plunkett's opinions regarding the adequacy of the Xarelto labeling.[5]

### B. Dr. Plunkett lacks a regulatory agent's expertise on the adequacy of pharmaceutical labeling.

Dr. Plunkett also has no experience that would permit her to assess the adequacy of Xarelto labeling from the perspective of a regulatory agent who approves pharmaceutical labeling and makes decisions regarding what information should be disclosed to medical doctors.

The FDA approves final pharmaceutical labeling after consultation with the manufacturer. *See* Plunkett Dep. at 683:19–684:9. "'[T]he FDA's determination of what labeling best reflects current scientific information regarding the risks and benefits of [medicines] involves a high degree of expert scientific analysis.'" *Henley v. Food & Drug Admin.*, 77 F.3d 616, 620 (2d Cir. 1996) (citation omitted). "The FDA possesses the requisite know-how to conduct such analyses, by sifting through the scientific evidence to determine the most accurate and up-to-date information regarding a particular drug, and how those data affect human usage." *Id.* at 621.

---

[4] Some courts have admitted Dr. Plunkett's testimony regarding labeling. *See, e.g.*, *In re Seroquel Prods. Liab. Litig.*, No. 6:06-md-1769, 2009 WL 3806436, at *9–10 (M.D. Fla. Jul. 20, 2009). Those cases are distinguishable. In *Seroquel*, Dr. Plunkett expressly disclaimed any "testimony concerning how physicians understood the drug label and made risk-benefit determinations." *Id.* at *10. Her testimony was admitted to "help the jury understand 'why Seroquel's chemical structure made [the manufacturer's] placement of information about diabetes[-]related side effects in its label inappropriate.'" *Id.* In other words, Dr. Plunkett did not propose to testify in that case that certain information should have been included in the labeling, but rather to explain based on her pharmacological expertise why certain information was inappropriately placed in the labeling. Other courts have admitted Dr. Plunkett's labeling opinions related to over-the-counter pharmaceutical products. *See In re Tylenol (Acetaminophen) Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 2:13-md-02436, 2016 WL 4039329, at *8 (E.D. Pa. Jul. 28, 2016); *Newman v. McNeil Consumer Healthcare*, No. 10 C 1541, 2013 WL 9936293, at *4–5 (N.D. Ill. Mar. 29, 2013).

[5] Dr. Plunkett testified that she discussed anticoagulants with a doctor ██████████████████████████████████████. During that conversation, Dr. Plunkett claims to have "made a judgment about what [she] believe[d] [the doctor's] knowledge was, for example, or lack of knowledge about the pharmacology of the drugs." Plunkett Dep. at 155:7–11. Dr. Plunkett testified that she did not rely on that conversation for purposes of forming her opinions in this litigation. *See id.* at 155:1–14. It would not have been permissible for Dr. Plunkett to rely on that conversation in support of her opinions (even if she had purported to do that) because she accepted her counsel's direction not to testify about details of the conversation on the ground that such testimony would compromise her mother-in-law's privacy. *See id.* at 47:8–53:7. For that reason, the Court should exclude any reference by Dr. Plunkett to her conversation with her mother-in-law's doctor.

8

2844758-1

Courts therefore consider a proposed expert's experience with this regulatory process in deciding whether an expert is qualified to opine on the adequacy of labeling of a medicine. *See, e.g.*, *Wehling v. Sandoz Pharm. Corp.*, 162 F.3d 1158, 1998 WL 546097, at *4 (4th Cir. Aug. 20, 1998) (pharmacist and toxicologist was not qualified to testify about adequacy of drug warnings because "he has never been involved with the drafting, regulation, or approval of product labeling for any prescription medication, and he has no training in this area," and "his experience as a pharmacist, reading prescription labels and dispensing drugs, does not qualify him to testify about the adequacy of drug warnings"); *accord In re Vioxx Prods. Liab. Litig.*, 401 F. Supp. 2d 565, 587 (E.D. La. 2005) (finding that "Rule 702 bar[red]" a pharmacoepidemiologic expert from testifying regarding his opinion of the FDA's actions because he was "not an expert in FDA regulatory matters").

Dr. Plunkett has no relevant expertise in regulatory affairs or pharmaceutical labeling outside of litigation. The FDA has never asked her to give opinions on labeling issues, and she has never been otherwise employed by or consulted by the FDA:

> Q. Have you ever been employed by the FDA?
>
> A. Not as an employee. No.
>
> Q. Have you ever been asked by the FDA to give opinions on labeling issues?
>
> A. Not by the FDA. No.
>
> Q. Have you ever been hired by the FDA as a consultant?
>
> A. No.
>
> Q. Have you ever been asked by the FDA to review individual adverse event reports?
>
> A. No.
>
> Q. Have you ever been asked by the FDA to review any sort of case reports?
>
> A. No.

9

2844758-1

> Q. Have you ever been asked by the FDA to give any opinions on labeling?
>
> A. No.

Plunkett Dep. at 54:14–55:5. Nor has Dr. Plunkett ever consulted with the FDA on any prescription label, participated on any FDA committee, or testified before any FDA advisory committee. *See id.* at 56:6–16. Although Dr. Plunkett testified that she has consulted in "general terms" with pharmaceutical companies "to look at science issues related to labeling," it is clear that her experience did not involve the approval of pharmaceutical labeling. *Id.* at 56:22–57:8.

### C. Dr. Plunkett's labeling opinion should be excluded as unreliable because she failed to review FDA documents that contradict her opinion.

Dr. Plunkett not only is unqualified to offer labeling opinions, her opinion regarding the Xarelto labeling also is unreliable. She was unaware of FDA action that plainly is relevant to her labeling opinion. In particular, Dr. Plunkett was unaware that the FDA *rejected* the same language that she contends should have been included in the Xarelto labeling. That is, the FDA rejected Janssen's proposed labeling that would have informed doctors that "'[t]he relationship between PT and rivaroxaban plasma concentration is linear and closely correlated.'" *Id.* at 689:17–690:9 (quoting Janssen's proposed labeling). Dr. Plunkett nevertheless thinks that "there should be a concept of that [information rejected by the FDA] within the label," and offers the lack of that information as a basis for her opinion that the Xarelto labeling is inadequate. *Id.* at 690:11–691:12. In that regard, her description of what supposedly is lacking in the Xarelto labeling tracks almost precisely the language that Janssen proposed and the FDA rejected: "the label does not adequately describe that the pharmacodynamics measurement tool, prothrombin time, is linearly correlated with rivaroxaban blood levels . . . ." Plunkett Rep. at ¶ 9. Dr. Plunkett's failure to review basic materials, including correspondence with the FDA regarding Xarelto labeling, is another basis to exclude her labeling opinion.

**II.    The Court should exclude Dr. Plunkett's commentary on Defendants' internal corporate documents and her state of mind opinions.**

In the guise of offering expert testimony, Dr. Plunkett proposes to provide subjective testimony about certain of Defendants' internal documents that Plaintiffs' counsel provided to her. Such testimony does not assist the jury in understanding technical or scientific terms, but instead invades the province of the jury, and should be excluded.

Although Dr. Plunkett concedes that she "do[es]n't think [she] can tell you what the company's state of mind was," she nevertheless claims she can "tell you what they knew if [she] ha[s] a document that shows you it's their data." Plunkett Dep. at 358:4–18. For example, in her report, Dr. Plunkett states that "Janssen should have been aware that measuring PT in patients administered Xarelto is a reliable method for identifying those patients at greatest risk of experiencing bleeding." Plunkett Rep. at ¶¶ 53, 57. Notwithstanding her disclaimer about offering inferences regarding state of mind, Dr. Plunkett also proposes to testify regarding what was pertinent to FDA employees' thinking when they reviewed the Xarelto NDA. *See, e.g.*, Plunkett Report at ¶ 50 ("A review of documents shows that there were significant concerns among FDA staff about the safety and effectiveness of Xarelto."); Plunkett Dep. at 308:15–20 ("The reason I cited [an FDA document] is I thought this slide deck and this—this discussion, which was right around the time that the drug was approved, was pertinent to the thinking of the FDA at the time that this drug application was being reviewed.").

Dr. Plunkett's proposed testimony plainly is inadmissible. Dr. Plunkett may attempt to explain how certain of Defendants' internal documents supposedly support her pharmacological opinions, or to explain the meanings of technical, pharmacological terms in those documents to lay jurors who would not otherwise understand them. But she is not entitled to offer any additional commentary on those documents or to argue inferences from those documents within the common

11

Case 2:14-md-02592-EEF-MBN Document 5108-9 SEALED Filed 01/20/17 Page 14 of 17

understanding of jurors. Put simply, jurors do not need Dr. Plunkett to tell them that Defendants knew certain information, or that FDA employees were concerned about certain issues, based on her reading of plainly-worded documents.

Experts cannot testify about matters that require no "scientific, technical, or other specialized knowledge." Fed. R. Evid. 702. The "word 'knowledge' connotes more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590. Expert testimony is properly excluded "if all the primary facts can be accurately and intelligibly described to the jury, and if they, as men of common understanding, are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training, experience, or observation in respect of the subject under investigation." *Salem v. U.S. Lines Co.*, 370 U.S. 31, 35 (1962) (citation omitted). In particular, "the trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument." *In re Air Crash Disaster at New Orleans, La.*, 795 F.2d 1230, 1233 (5th Cir. 1986). Experts also should not "undertake[] to tell the jury what result to reach . . . [or] attempt[] to substitute the expert's judgment for the jury's." *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994); *see also In re FEMA Formaldehyde Prods. Liab. Litig.*, MDL No. 07-1873, 2009 WL 2169224, at *3 (E.D. La. Jul. 15, 2009) (excluding expert testimony "within the common understanding of the average juror").

Applying those principles, courts consistently have excluded under Rule 702 testimony consisting of commentary on internal corporate documents because it does not bear on any scientific, technical, or other specialized knowledge, and jurors are fully capable of reading and drawing inferences or conclusions from documents without expert assistance. *See, e.g.*, *In re Prempro Prods. Liab. Litig.*, 554 F. Supp. 2d 871, 886 (E.D. Ark. 2008) (excluding expert's

impressions of pharmaceutical manufacturer's internal documents shown to her by plaintiff's counsel, which "did not provide . . . expertise" and "did not 'give the jury the tools they need to look at those documents'") (internal citation omitted); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004) (excluding expert's "glosses" on a pharmaceutical manufacturer's internal corporate documents because they represented the expert's "simple inferences drawn from uncomplicated facts that serve only to buttress plaintiffs' theory of the case" and "do[] no more than counsel for plaintiff will do in argument, *i.e.*, propound a particular interpretation of [defendant]'s conduct"). Because such "testimony—or reading—invade[s] areas that require[] no expert assistance, it [i]s inappropriate 'expert' testimony." *In re Prempro*, 554 F. Supp. 2d at 887.

Courts also consistently have held "state of mind" testimony inadmissible under Rule 702. *See, e.g.*, *In re C.R. Bard, Inc.*, 948 F. Supp. 2d 589, 611 (S.D. W. Va. 2013) ("Bard's knowledge, state of mind, . . . or other matters related to corporate conduct and ethics are not appropriate subjects of expert testimony because opinions on these matters will not assist the jury."); *In re Trasylol Prods. Liab. Litig.*, No. 08-MD-01928, 2010 WL 4052141, at *8 (S.D. Fla. May 12, 2010) (holding that expert opinions concerning "knowledge, intent, and state of mind . . . are inadmissible under Rule 702 and *Daubert* because they have no basis in any relevant body of knowledge or expertise and lie outside the bounds of proper expert testimony"); *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009) (holding that expert testimony as to "the knowledge, motivations, intent, state of mind, or purposes of Merck, its employees, the FDA, or FDA officials . . . is not a proper subject for expert or even lay testimony"); *Rezulin*, 309 F. Supp. 2d at 547 ("Inferences about the intent or motive of parties or others lie outside the bounds of expert testimony."); *In re Diet Drugs Prods. Liab. Litig.*, No. MDL 1203, 2000 WL 876900, at *9

13

(E.D. Pa. June 20, 2000) ("The question of intent is a classic jury question and not one for experts . . . .").

As the *Rezulin* MDL court explained, such opinions "have no basis in any relevant body of knowledge or expertise" and result in plaintiffs' experts "improperly . . . assum[ing] the role of advocates for the plaintiffs' case . . . ." *Rezulin*, 309 F. Supp. 2d at 546. The "testimony is improper also because it describes 'lay matters which a jury is capable of understanding and deciding without the expert's help.'" *Id.* (citation omitted); *accord In re Baycol Prods. Liab. Litig.*, 495 F. Supp. 2d 977, 1001 (D. Minn. 2007) (excluding expert testimony "to the extent that he speculates as to [the company-defendant]'s motive, intent, or state of mind"); *In re Diet Drugs Prods. Liab. Litig.*, No. MDL 1203, 2001 WL 454856, at *2 (E.D. Pa. Feb. 1, 2001) (same).

Consistent with the foregoing authorities, the Court should exclude Dr. Plunkett's testimony consisting of her commentary on Defendants' and the FDA's internal documents.

## CONCLUSION

For the foregoing reasons, the Court should exclude the opinions of Dr. Plunkett outside her area of expertise.

Respectfully submitted,

| DRINKER BIDDLE & REATH LLP | ARNOLD & PORTER KAYE SCHOLER LLP |
|---|---|
| By: /s/ *Susan M. Sharko* | By: /s/ *William Hoffman* |
| Susan M. Sharko | William Hoffman |
| Drinker Biddle & Reath LLP | ARNOLD & PORTER KAYE SCHOLER LLP |
| 600 Campus Drive | 601 Massachusetts Ave., NW |
| Florham Park, NJ 07932-1047 | Washington, D.C. 20001 |
| Telephone: (973) 549-7000 | Telephone: (202) 942-5000 |
| susan.sharko@dbr.com | william.hoffman@apks.com |

14

Rodney M. Hudson
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
Telephone: (415) 591-7500
Rodney.hudson@dbr.com

Chanda A. Miller
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2500
Chanda.Miller@dbr.com

IRWIN FRITCHIE URQUHART & MOORE LLC

By: /s/ *James B. Irwin*
James B. Irwin
Kim E. Moore
Irwin Fritchie Urquhart & Moore LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
jirwin@irwinllc.com

*Attorneys for Defendants Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC, and Janssen Ortho LLC, and Johnson & Johnson*

Andrew K. Solow
Steven Glickstein
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8485
andrew.solow@apks.com
steven.glickstein@apks.com

BRADLEY ARANT BOULT CUMMINGS LLP

By: /s/ *Kevin C. Newsom*
Kevin C. Newsom
Lindsey C Boney IV
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place, 1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8803
knewsom@bradley.com

CHAFFE MCCALL L.L.P.

By: /s/ *John F. Olinde*
John F. Olinde
Chaffe McCall L.L.P.
1100 Poydras Street, Suite 2300
New Orleans, LA 70163
Telephone: (504) 585-7241
olinde@chaffe.com

*Attorneys for Bayer HealthCare Pharmaceuticals Inc. and Bayer Pharma AG*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 20th day of January, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs by operation of the court's electronic filing system and a copy of the proposed documents to be placed under seal sent to Plaintiffs' Liaison Counsel by email transmission.

/s/      John F. Olinde

15

2844758-1