# EXHIBIT N

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | ) ) ) ) | MDL No. 2592<br><br>Judge Eldon E. Fallon |

# Expert Report of Suzanne Parisian, MD

By: _Suzanne Parisian_  Date: 10/12/2016

Suzanne Parisian, MD

potential harm to sales . ROCKET II was to be performed to optimize dose and help reduce the risk of bleeding. Defendants' actions have placed United States atrial fibrillation patients at increased risk for bleeding from too high exposure to XARELTO.

**Applicable Regulations: 21 USC§ 352(a)(f)(f)(2); 21 CFR§ 314.70**

### F.  OPINION 6

FDA's drug labeling requires a manufacturer to identify any laboratory tests helpful in following the patient's response or in identifying possible adverse reactions. Defendants have not provided an adequate label with updated laboratory and risk information, Defendants proposed a Section 5 Laboratory Tests section (based on the Lovenox label) as a contingency[9] if pushed by FDA for creation of such a section. Using common laboratory studies, Defendants identified and utilized rivaroxaban's linear concentration-effect relationship for a biomarker of anticoagulant effect and reflection of plasma concentration at Cmax and Ctrough (by PT max and PT trough). According to Bayer's Dr. Mueck (2014), prolongation of the PT (using Neoplastin) was correlated with the rivaroxaban plasma concentrations in a linear relationship.[10] Defendants knew there was a relationship between XARELTO PT levels (as a measurement of anticoagulation effect) and bleeding risk, and PT could be used to identify patients at increased risk of bleeding.

**Applicable Regulations: 21 USC§ 352(a)(f)(f)(2), 21 CFR§ 1.21, 21 CFR§ 201.57**

### G.  OPINION 7

Measurement of PT (using Neoplastin Plus or another appropriately sensitive reagent) in XARELTO patients can be helpful in identifying patients at increased risk for serious adverse events based upon a patients' anticoagulant response to XARELTO. Obtaining PT allows a physician in clinical decision-making to determine if XARELTO is the appropriate drug for a patient and to decide whether the patient should continue on XARELTO therapy.

**Applicable Regulations: 21 USC§ 352(a)(f)(f)(2), 21 CFR§ 1.21, 21 CFR§ 201.57**

### H.  OPINION 8

Defendants failed as the ROCKET-AF sponsor to adequately identify a suitable point-of-care (POC) device for reliable management of warfarin and patient safety for the ROCKET trial beginning with the due diligence stage. Defendants failed to validate the acceptable performance of the ALERE/HemoSense INRatio POC device. Defendants failed as IND and clinical trial sponsor to: 1) select a safe and effective device or method for determination of warfarin management; 2) adequately monitor the performance of the POC INRatio device during ROCKET worldwide; 3) implement back-up methods

---

[9] XARELTO_JANSSEN_05911809.
[10] Mueck, et al. Clinical Pharmacokinetic and Pharmacodynamic Profile of Rivaroxaban, *Clin Pharmacokinet* (2014) 53:1-16.

11

including laboratory testing to protect patient safety; 4) investigate and report adverse events and failures of the device to the appropriate Adverse Event database; 5) adequately instruct and provide an algorithm to investigators for warfarin management. Such actions by Defendants in the role of sponsor of a worldwide pivotal clinical study, served to underestimate the true bleeding risk for AF patients on XARELTO as compared to warfarin.

**Applicable Regulations:** 21 USC§ 352(a)(f)(f)(2), 21 CFR§ 312

## I. OPINION 9

At the ROCKET TASK FORCE meeting held in September 2015, Defendants acknowledged the following: a flaw in the algorithm associated with incorrect readings with the INRatio device.; that 3400 devices used in ROCKET were included in Alere's recall in December 2014; 32% of POC values were greater than .5 units different from paired lab values; and that INRs of 3.1 to 12.2 fell below the lab measurements and had the risk for overanticoagulation and fatal bleeding.[9]

**Applicable Regulations:** 21 CFR§ 820; 21 USC 331(a)(b; 21 CFR§ 314.50

## J. OPINION 10

a. Defendants failed to fulfill their duties as United States Pharmaceutical manufacturers when they did not provide truthful, accurate and full disclsoures for ROCKET and adverse events associated by:

- Failing to adequately report, investigate, and document erroneous/discrepant INR readings occurring during ROCKET to the clinical trial database and reports for regulatory agencies, (including the FDA).

- Failing to adequately report erroneous/discrepant INR values and associated adverse events for ROCKET to the IDMC and Executive Committee.

b. Defendants failed to fulfill their duties as United States Pharmaceutical manufacturers when they did not provide truthful, accurate and full disclosure about ROCKET and associated adverse events requested of them by by FDA:

- Failing to identify and report erroneous/discrepant INR values and associated adverse events (including but not limited to the Covance Recheck Program) in response to the FDA's March 2011 Information Request.

- Failing to report discrepant INR values in response to the January 12, 2016 FDA Information Request.

---

[9] Nessel Exhibit 40

12