**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE:  XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE ELDON E. FALLON |
| Joseph J. Boudreaux, Jr., et al. v. Janssen et al. Case No. 2:14-cv-02720 | MAGISTRATE NORTH |
| Joseph Orr, Jr., et al. v. Janssen et al. Case No. 2:15-cv-03708 | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION *IN LIMINE***
**TO EXCLUDE CERTAIN OPINIONS OF DAVID A. KESSLER, MD,**
**UNDER FEDERAL RULE OF EVIDENCE 702**

**INTRODUCTION**

Plaintiffs have designated David A. Kessler, MD, a former FDA Commissioner, as a regulatory expert to offer testimony and opinions that have no reliable foundation and on topics that go beyond the role of an expert in a court of law.  Dr. Kessler purports to use his former authority to render broad, sweeping, and improper opinions in these cases similar to opinions that numerous courts have excluded.   For example, the United States District Court for the District of Massachusetts ruled:

> Dr. Kessler appears to be an expert in how FDA normally functions, so he may testify on the factors FDA generally takes into account in evaluating citizen petitions.   Beyond that, Dr. Kessler is not—and, indeed, cannot be—a legal expert.  It is for the court alone to instruct the jury on what the law is. Dr. Kessler therefore may not testify about what would have been legal or illegal in this particular case.   Similarly, although Dr.  Kessler's years of government service may let him form good guesses about why parties petitioning FDA behave as they do, his expertise only lies on the FDA side of the regulatory process. Dr. Kessler may not speculate on why Astellas or anyone else acted as they did. . . .

. . . .

Although Dr. Kessler may testify about standard practice for petition certifications, he may not offer an expert opinion on his interpretation of the relevant laws and regulations or the law of fraud more generally. . . .   Dr. Kessler does not possess the necessary expertise, and it is also inappropriate under Rule 403 because his opinions that Astellas engaged in illegal or fraudulent activity are unfairly prejudicial. . . .

Astellas's motion to exclude Dr. Kessler's narrative and personal opinion testimony about Astellas's knowledge, intent, or motives (Docket # 492) is also [granted].   Dr. Kessler does not bring any expertise to discerning Astellas's state of mind.

*In re Prograf Antitrust Litig.*, No. 1:11-MD-02242-RWZ, 2014 WL 7641156, at *2 (D. Mass. Dec. 23, 2014).[1]

Here, Dr. Kessler seeks to render numerous opinions, including but not limited to the following:

(1)     Reading FDA documents in narrative form and testifying about topics referenced in them for which he has no expertise or reliable basis upon which to render an opinion;

(2)     A recitation of the regulatory history and development of Xarelto®;

(3)     What Defendants and the FDA intended and their state of mind and motive;

(4)     Defendants' alleged violations of law and "fraud on the FDA";

(5)     His views on tort-law duties, federal law, and federalism; and

---

[1] *See also In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig.*, 176 F. Supp. 3d 483, 496–97 (E.D. Pa.), *appeal filed*, No. 16-2247 (3d Cir. May 12, 2016) ("Dr. Kessler's opinion that 'the existence of studies that do not show a statistically significant risk does not negate the statistically significant positive studies that indicate a risk,' would serve to confuse a jury, particularly given that there is no evidence that Dr. Kessler himself has reconciled the contrary studies using scientifically acceptable methodology." (footnote omitted)); *Drake v. Allergan, Inc.*, No. 2:13-CV-234, 2014 WL 5392995, at *5 (D. Vt. Oct. 23, 2014) ("Allergan seeks to prevent Dr. David A. Kessler from 1) instructing the jury on the law or offering legal conclusions, 2) from narrating the evidence or regurgitating facts, and 3) from drawing inferences about the knowledge, motives, or intent of individuals or organizations.   There does not appear to be any significant controversy that these categories of testimony are generally not proper subjects for expert testimony." (citations omitted)); *In re C.R. Bard, Inc., Pelvic Repair Sys. Prods. Liab. Litig.*, 948 F. Supp. 2d 589, 628–29 (S.D. W. Va. 2013) ("*In re C.R. Bard, Inc.*") ("Dr. Kessler may not offer expert testimony on Bard's knowledge, intent, or motives. . . .   Dr. Kessler's expert report also seeks to state legal standards, which is properly the court's role.   The court will instruct the jury on Bard's duties and obligations under state law.").

(6)   What he thinks would be helpful to prescribing physicians who have already provided testimony in these cases.

These opinions are not proper subjects for expert testimony, are barred by controlling law, invade the roles of this Court and the jury, and are inconsistent with or irrelevant to the state laws at issue.  For these and the following reasons, Defendants' Motion should be granted.

## LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence permits "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" to offer opinion testimony only if:

(a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b)   the testimony is based on sufficient facts or data;

(c)   the testimony is the product of reliable principles and methods; and

(d)   the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  Rule 702 imposes a "basic gatekeeping obligation" on the trial court to ensure that an expert witness "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147, 152 (1999); *see also Black v. Food Lion, Inc.*, 171 F.3d 308, 310–11 (5th Cir. 1999).  Admissibility is determined by whether the witness's opinion "rests on a reliable foundation," i.e., "whether the reasoning or methodology underlying the testimony is scientifically valid," and whether the opinion is "relevant to the task at hand."  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993); *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 274–75 (5th Cir. 1998).  The proponent of expert testimony must demonstrate that the testimony satisfies these requirements.  *Moore*, 151 F.3d at 276.

**ARGUMENT**

Absent the imposition of appropriate limitations, Plaintiffs will portray the testimony of Dr. Kessler to the jury as guidance that it should follow in deciding what facts to find and what law to apply.

## I.     The court should exclude many of Dr. Kessler's opinions because they lack any methodology and are unreliable.

Many of Dr. Kessler's opinions are not based on reliable principles and methodology; instead, they are simply Dr. Kessler's personal opinion on an issue (whether the issue is the legal standard that is within the province of the Court or the factual disputes that are within the province of the jury).  On this basis alone, many of Dr. Kessler's opinions should be excluded. *See, e.g.*, *Lifemark Hosps., Inc. v. Jones, Walker, Waechter, Poitevent, Carrere & Denegre, L.L.P.*, No. CIV.A. 94-1258, 1999 WL 33579253, at *3 (E.D. La. Sept. 21, 1999) (Fallon, J.) ("Seibert's experience-based knowledge in the area of real estate transactions may support a finding that his testimony on collateral mortgages is reliable. . . .  [But] [e]xcept for Seibert's ipse dixit, he has shown little to indicate that he employed intellectual rigor in arriving at his conclusions about legal standards."); *Johnson v. Big Lots Stores, Inc.*, No. CIV.A. 04-3201, 2008 WL 1930681, at *15–20 (E.D. La. Apr. 29, 2008) (excluding expert who "relie[d] on his experience with the Labor Department as the basis for his qualifications and the investigative techniques that he used" yet deviated substantially from Department of Labor approved research methods).

For example, in paragraph 33 of his report, Dr. Kessler opines that "as of August 2011, there is a relationship between [prothrombin time ("PT")] levels and the risk of bleeding." Kessler Report at 17, ¶ 33 (Exh. A).  In the preceding three paragraphs, which along with paragraph 33 constitute the entirety of his analysis on this point, Dr. Kessler quotes from the

FDA's clinical pharmacology review wherein the reviewer concluded that there is a correlation between PT and risk of bleeding and from the deposition of Troy Sarich, PhD, an employee of Janssen Pharmaceuticals, Inc., who testified that he disagreed with the FDA's analysis because, among other things, "PT is not used by clinicians [today], it's just not helpful." *Id.* at 15–16, ¶¶ 30–32. Dr. Kessler lacks any methodology because he cherry picks data (citing only isolated data points, and not literature that contradicts his opinion) and ignores contrary data from the studies to which he points.[2] Dr. Kessler's opinions should be excluded.

These purported opinions are similar to those proffered by Dr. Kessler in *In re C.R. Bard, Inc.*, 948 F. Supp. 2d at 631, and the United States District Court for the Southern District of West Virginia excluded them:

> In contrast, Dr. Kessler's opinion that Bard needed to conduct human clinical trials is an example of an opinion that is not reliable. In essence, Dr. Kessler summarized the reasons for conducting human clinical trials, identified risks of the mesh products, and concluded on these bases that Bard should have conducted clinical trials. This opinion is based on his personal opinion, rather than any reliable basis. Dr. Kessler's opinions related to Bard's promotion of its products and post-marketing activities should similarly be excluded. Accordingly, I FIND that Dr. Kessler's opinions related to human clinical trials and Bard's promotion of its products and post-marketing activities should be excluded.

As in *In re C.R. Bard, Inc.*, the Court should exclude Dr. Kessler's wholly unreliable opinions about medical issues beyond the scope of his expertise and his personal opinions. *See, e.g.*, *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, MDL No. 2047, 2015 WL 3603624, at *3 (E.D. La. June 5, 2015) (Fallon, J.) ("Mr. Inglas is qualified to give an expert

---

[2] During his deposition, Dr. Kessler provided new analyses (which Plaintiffs' counsel had prepared at his request) in support of this opinion. He opined for the first time that Defendants knew about data in their own studies that he believes show an "association" between PT values and bleeding but that these data were not sufficiently "highlighted" in filings with the FDA (although he concedes that the data itself was provided to FDA). *See, e.g.*, Kessler Dep. (excerpts attached as Exh. B) 175:13–176:9, 187:19–189:9. But again, Dr. Kessler's opinion ignores data from the very same study (regarding the risk of major bleeding and death) that run contrary to his conclusion that there is an association between PT values and bleeding risk. *See id.* at 235:15–239:18.

opinion within the scope of his experience as a building engineer. . . . However, Mr. Inglas has little or no training in statistical analysis, thus he is not qualified to testify regarding the validity or accuracy *vel non* of the statistical analysis of Plaintiff's damages"); *Plunkett v. Merck & Co. (In re Vioxx Prods. Liab. Litig.)*, 401 F. Supp. 2d 565, 587 (E.D. La. 2005) (Fallon, J.) (holding that a professor of preventive medicine and pharmacoepidemiology is qualified to testify as to whether short-term use of Vioxx increases risk of adverse cardiovascular risks and whether Vioxx accelerates atherosclerosis, but holding that the expert is not qualified to testify regarding what doctors should prescribe to patients, the specific cause of a patient's death, or the expert's disapproval of actions taken by the FDA).

## II.    Dr. Kessler's recitation of Xarelto's regulatory history and Defendants' internal documents do not qualify as expert testimony.

Plaintiffs intend to use Dr. Kessler to introduce portions of Xarelto's regulatory history, to selectively read certain cherry-picked studies and internal company documents, and to interpret them as support for Plaintiffs' proposed narrative. For example, Dr. Kessler includes a nearly 10-page section in his report titled "Chronology of FDA's Statements Including Label Negotiations Between FDA and the Xarelto Sponsors." Kessler Report § X; *see also* Kessler Report schedules 4, 5, 11. He also catalogs certain published studies of Xarelto in another lengthy and argumentative section of his report. Kessler Report § XV; *see also* Kessler Report schedules 7, 19.

It is improper to use an expert to introduce a medicine's regulatory history, to selectively share excerpts of documents, and to interpret them as support for Plaintiffs' proposed narrative of the relevant events. Similar testimony was offered in *In re Fosamax Products Liability Litigation*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009) (citations omitted) by Dr. Kessler's FDA

expert colleague, Dr. Suzanne Parisian, and the United States District Court for the Southern

District of New York excluded it:

> To the extent Merck's motion seeks to preclude Dr. Parisian from offering a narrative history of Fosamax, it is GRANTED in PART. "[A]n expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence." In detailing the factual basis for her opinions, Dr. Parisian's report presents a narrative of select regulatory events through the summary or selective quotation from internal Merck documents, regulatory filings, and the deposition testimony of Merck employees. The Court agrees with Merck that, to the extent such evidence is admissible, it should be presented to the jury directly. Dr. Parisian's commentary on any documents and exhibits in evidence will be limited to explaining the regulatory context in which they were created, defining any complex or specialized terminology, or drawing inferences that would not be apparent without the benefit of experience or specialized knowledge. She will not be permitted to merely read, selectively quote from, or "regurgitate" the evidence.

*See also In re Prograf Antitrust Litig.*, 2014 WL 7641156, at *2 ("Astellas's motion to exclude

Dr. Kessler's narrative and personal opinion testimony about Astellas's knowledge, intent, or

motives (Docket # 492) is also [granted]."); *In re Trasylol Prods. Liab. Litig.*, 709 F. Supp. 2d

1323, 1347 (S.D. Fla. 2010) ("Dr. Parisian's Report is replete with such improper references to

Trasylol's regulatory history and Bayer's internal documents and FDA correspondence. While

Plaintiffs argued that the presentation of such facts is necessary, as they are connected to

Dr. Parisian's opinions, Dr. Parisian's major role in this litigation appears to be that of Plaintiffs'

advocate rather than expert. Her expertise is not required to present the factual narrative to the

jury. . . .").

   As in other cases where similar testimony has been offered, Dr. Kessler's regulatory

history and selective interpretation of documents related to Xarelto is not expert testimony but is

instead only in furtherance of Plaintiffs' anticipated argument to the jury. Accordingly, this

Court should exercise its gatekeeping role to exclude Dr. Kessler's narrative regulatory history testimony.

### III.    Dr. Kessler's opinions as to what either Defendants or FDA knew or intended are improper expert testimony.

Plaintiffs also call on Dr. Kessler to express his opinions with respect the knowledge, motive, intent, or state of mind of Defendants and the FDA.  Dr. Kessler candidly acknowledges that he is not able to testify about intent based on the documents he has reviewed.  *See, e.g.*, Kessler Dep. 102:7–8.

Yet, despite this acknowledgement—and the law that clearly precludes it—Dr. Kessler's report frequently opines as to his perception and understanding of Defendants' or FDA's knowledge or intent.  For example, Dr. Kessler opines that "the sponsors acknowledged that information about measuring PT could be helpful in patient care decision-making."   Kessler Report at ¶ 72; *see also id.* ¶ 177 ("Such information was important to FDA . . . ."); *id.* ¶ 195 ("The sponsors acknowledged that information about measuring PT could be helpful in patient care decision-making.").

These opinions are, by definition, inadmissible as either a recitation of an explicit acknowledgement on the part of the speaker, in which case an expert is not needed, or an implied acknowledgment that relies on the expert making an assumption regarding the speakers' knowledge based on other evidence.  Either way, an expert may not opine on subjective intent or comment on what a jury should infer from the evidence before it as to the knowledge of a corporation or its agents.  *See, e.g.*, *In re C.R. Bard, Inc.*, 948 F. Supp. 2d at 628–29 ("Bard's knowledge, intent, or motives are simply not appropriate subjects for expert testimony.  The documents and testimony should be presented directly to the jury, not through an expert.  To the extent that Dr. Kessler opines on Bard's knowledge, intent, or motives, such conclusions are

factual inferences for the jury to determine, not for an expert to opine."); *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d at 192 (precluding expert testimony as to the "knowledge, motivations, intent, state of mind, or purposes of Merck, its employees, the FDA, or FDA officials" because "Dr. Parisian conceded at the hearing that her regulatory expertise does not give her the ability to read minds.  Nevertheless, her report is replete with such conjecture.  This is not a proper subject for expert or even lay testimony" (citations omitted)); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 547 (S.D.N.Y. 2004) ("Inferences about the intent or motive of parties or others lie outside the bounds of expert testimony."); *see also Marlin v. Moddy Nat'l Bank*, 248 F. App'x 534, 541 (5th Cir. 2007) ("An expert's credentials do not place him in a better position that the [trier or fact] to draw conclusions about a defendant's state of mind.").

For the same reason that multiple courts have excluded the opinions of Dr. Kessler and other experts as to the knowledge, motivation, intent, or state of mind of Defendants or the FDA, Dr. Kessler's opinions on the same issues here are inadmissible and should be excluded.

## IV.    Dr. Kessler's conclusions and opinions about Defendants' alleged violations of law are improper.

Dr. Kessler has not been at the FDA in nearly 20 years.   Kessler Report ¶ 3. Nevertheless, he repeatedly offers improper legal conclusions about the requirements of the Federal Food, Drug, and Cosmetic Act and related regulations, and even state law at times, and whether Defendants' conduct complied with federal regulatory law.  The following are just a handful of such comments from his report:

- "A drug company has a responsibility, independent of what the FDA directs it to do, to alert physicians and patients to risks that were unknown to or poorly understood by the FDA, but that were known to the company.  This duty predates by decades the advent of federal regulation of drugs."   Kessler Report ¶ 76 (citing *Thomas v. Winchester*, 6 N.Y. 397 (1852));

- "The FDA's regulation of a drug cannot anticipate and protect against all safety risks to individual consumers. Even the most thorough regulation of a product may fail to identify potential problems presented by the product," *id.* ¶ 77;

- "[I]n my opinion, nothing in the Act, or in the FDA's implementing regulations, relieves a manufacturer of its duty to act prudently in light of the company's internal knowledge about a product and its potential risks," *id.* ¶ 78;

- "It was my opinion while Commissioner of the FDA, and remains to this day, that the two systems of state consumer protection (including potential product liability) and federal food and drug regulation should and do operate in a complementary but independent manner," *id.* ¶ 79;

- "As the Supreme Court has recently ruled, generally, state law imposes responsibilities on pharmaceutical companies to create products that are "reasonably safe," a duty that can be satisfied by the "presence and efficacy of a warning to avoid an unreasonable risk of harm from hidden dangers or from foreseeable uses," *id.* ¶ 80 (citing numerous cases);

- "Once a drug is approved, the FDA's regulations make clear that a drug company has a duty to warn and modify labeling without delay when hazards emerge with one of its drugs," *id.* ¶ 84;

- "Drug companies have an obligation to revise a label 'to include a warning about a clinically significant hazard as soon as there is reasonable evidence of a causal association with a drug; a causal relationship need not have not been definitely established,'" *id.* ¶ 85;

- "Manufacturers have significant resources that are or should be committed to overseeing the safety of the drugs they market," *id.* ¶ 86;

- "In addition to the requirement to 'identify any laboratory tests helpful in following the patient's response or in identifying possible adverse reactions,' according to the Act, all manufacturers need to provide physicians with 'adequate directions for use,'" *id.* ¶ 97;

- "In my opinion, the sponsors failed to meet their duty of a reasonably prudent drug manufacturer . . .," *id.* ¶ 176; and

- "In my opinion, a reasonable and prudent manufacturer, asked by FDA, as part of an IND application process, to provide a summary of information collected by an unblinded physician would have provided such information," *id.* ¶ 177.

In *In re C.R. Bard, Inc.*, the court ruled that Dr. Kessler could not offer such opinions.

The court explained that:

Dr. Kessler's expert report seeks to draw various legal conclusions, which is properly the jury's role.  For example, Section IX is entitled "Bard *failed to adequately disclose* adverse risks associated with their products," and subsection D states that "Bard *failed to warn on its label* . . . ."  Section XVI is entitled "Bard's Avaulta products *were 'not reasonably safe*.'"  Such statements draw legal conclusions from facts.  The questions of whether Bard's Avaulta products were not reasonably safe, for example, or whether Bard failed to warn, are questions for the jury, not for Dr. Kessler.

. . . "The best way to determine whether opinion testimony contains legal conclusions, 'is to determine whether the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular.'"  Thus, Dr. Kessler may not offer an expert opinion that, for example, Bard's Avaulta products were "not reasonably safe" or that Bard "failed to warn." . . .

Dr. Kessler's expert report also seeks to state legal standards, which is properly the court's role.  The court will instruct the jury on Bard's duties and obligations under state law.  Similarly, to the extent that the court finds it relevant, the interplay between FDA regulations and state tort liability is also the type of instruction that the jury will receive from the court.  Accordingly, I **FIND** that Dr. Kessler may not offer expert opinions that state legal standards.

948 F. Supp. 2d at 629 (citations omitted).  Other courts have excluded similar opinions from other witnesses.  *See, e.g.*, *Georges v. Novartis Pharm. Corp.*, No. CV 06-5207 SJO (VBKx), 2012 WL 9064768, at *9 (C.D. Cal. Nov. 2, 2012) ("Dr. Parisian is not permitted to offer legal conclusions on any topic, including whether Defendant was in regulatory compliance with the FDA."); *In re Baycol Prods. Litig.*, 532 F. Supp. 2d 1029, 1054 (D. Minn. 2007) ("The Court finds that while Dr. Kapit may be allowed to testify as to the standard of care for pharmaceutical companies, he may not infuse his personal views as to whether Bayer acted ethically, irresponsibly or recklessly.  Further, his expert testimony to the extent that he speculates as to Bayer's motive, intent or state of mind, or speculates as to motives of the FDA or what other drug companies would do is excluded."); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d at

543 ("[T]he witnesses' opinions regarding ethical standards for reporting or analyzing clinical trial data or conducting clinical trials articulate nothing save for the principle that research sponsors should be honest." (footnote omitted)); *Steele v. DePuy Orthopaedics, Inc.*, 295 F. Supp. 2d 439, 446 (D.N.J. 2003) ("[W]hether the FDA's approval of a PMA supplement imposes requirements on a particular device is a question of law to be determined by the Court, not a question of fact for the jury."); *Skibniewski v. Am. Home Prods.*, No. 99-0842-CV-W-FJG, 2004 WL 5628157, at *13 (W.D. Mo. Apr. 1, 2004) (excluding evidence alleging that defendant was misleading or deceptive in dealings with FDA and/or committed violations of the Federal Food, Drug and Cosmetic Act or FDA regulations).

Dr. Kessler improperly attempts to explain the law and to identify alleged violations of the law, which is improper.  Accordingly, Dr. Kessler's testimony as to legal standards and conclusions should be excluded.

## V.   Dr. Kessler's opinions as to whether Defendants withheld information from FDA or misled FDA also are improper.

Dr. Kessler also opines that Defendants misled the FDA or violated FDA regulations by allegedly withholding information from the agency, i.e., "fraud-on-the-FDA."  These include the following:

- "In my opinion, the sponsors failed to meet their duty of a reasonably prudent drug manufacturer by:  a. Failing to report discrepant INR values, and associated adverse events, in response to the March 14, 2011 and January 12, 2016 FDA Information Requests. b. Failing to inform FDA about the Covance recheck program in response to the March 14, 2011 and January 12, 2016 Information Requests," Kessler Report ¶ 176;

- "In my opinion, a reasonable and prudent manufacturer, asked by FDA, as part of an IND application process, to provide a summary of information collected by an unblended physician *would have provided such information*," *id.* ¶ 177 (emphasis added);

- "In my opinion, the sponsors did not disclose to FDA, physicians, or patients that the company was in possession of information indicating that 'discrepancies of potential

clinical relevance were rather frequently observed (approximately in 35% of the estimations) [in ROCKET],'" *id.* ¶ 178; and

- "The sponsors failed to meet their duty of reasonably prudent drug manufacturers by: a. Failing to report discrepant INR values, and associated adverse events, in response to the January 12, 2016 FDA Information Request. b. Failing to inform FDA about the Covance recheck program in response to the January 12, 2016 Information Request," *id.* ¶ 206.

It is improper for an expert to opine that a defendant acted illegally or misrepresented the facts. *See Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 350–51 (2001) ("State-law fraud-on-the-FDA claims inevitably conflict with the FDA's responsibility to police fraud consistently with applicants to fear that their disclosures to the FDA, although deemed appropriate by the Administration, will later be judged insufficient in state court."). Even if those issues were relevant, the party asserting those matters would be required to present the relevant facts through competent evidence and then argue to a jury that is properly instructed on the law by the Court that the actions were misleading or inconsistent with the relevant law. *See, e.g.*, *In re C.R. Bard, Inc.*, 948 F. Supp. 2d at 629 ("Dr. Kessler's expert report also seeks to state legal standards, which is properly the court's role. The court will instruct the jury on Bard's duties and obligations under state law.").

Any opinion that Defendants allegedly committed fraud on the FDA or violated the law is both irrelevant and not properly the subject of expert testimony. Accordingly, Dr. Kessler's opinions in this regard should be excluded. *C.f., e.g.*, *Lofton v. McNeil Consumer & Specialty Pharm.*, 672 F.3d 372, 379–80 (5th Cir. 2012) (holding that federal law preempted a plaintiff's claim because the Texas statute at issue required the plaintiff "to prove fraud-on-the-FDA to recovery for failure to warn").

**VI.    The Court should exclude Dr. Kessler's opinions as to what information would be helpful to prescribers.**

Dr. Kessler also seeks to express his beliefs as to what information would be "useful" to physicians when treating their patients with Xarelto.  For example, Dr. Kessler opines that "information about laboratory tests that could be helpful in identifying patients at increased risk of bleeding from Xarelto use would be useful information for physicians in clinical decision-making."  Kessler Report ¶ 94.  He cites the deposition testimony of four physicians who treated bellwether plaintiffs in this MDL, which does not require expert testimony to interpret.  *Id.* ¶¶ 90–93.

This opinion is improper.  First, it is not helpful to the jury, which is a requirement of expert testimony.  *See* F.R.E. 702(a) (stating that expert testimony is admissible if, among other things, "the expert's scientific, technical, or other specialized knowledge *will help the trier of fact to understand the evidence or to determine a fact in issue*" (emphasis added)); *see also Peters v. Five Star Marine Serv.*, 898 F.2d 448, 449 (5th Cir. 1990); *Plunkett (In re Vioxx Prods. Liab. Litig.)*, 401 F. Supp. 2d at 587 (Fallon, J.).  Second, it invades the jury's role as factfinder because the jury—unlike Dr. Kessler—may not credit the prescribing physicians' testimony. The jury can determine the credibility of these physicians without Dr. Kessler's imprimatur.  *See, e.g.*, *Alexie v. Apex Tool Grp, LLC*, No. 12-2212, 2014 WL 5603386 at * 2 (E.D. La. Nov. 3, 2014) (Fallon, J.) ("The use of expert testimony is only proper if it will assist the trier of fact. Under Rule 702, expert testimony should be excluded if the court finds that the trier of fact 'could adeptly assess [the] situation using only their common experience and knowledge.'" (quoting *Peters*, 898 F.2d at 449–50)).  Third, Dr. Kessler has never prescribed Xarelto and therefore is not qualified to say what information is important to prescribers.  Kessler Dep. 113:15–114:16.

Thus, Dr. Kessler's testimony as to what is helpful to prescribers should be excluded.

## CONCLUSION

For all the foregoing reasons, the Court should grant Defendants' motion and preclude Dr. Kessler from offering the above-referenced improper opinions.

Respectfully submitted,

DRINKER BIDDLE & REATH LLP

By: /s/ Susan M. Sharko
Susan M. Sharko
DRINKER BIDDLE & REATH LLP
600 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
susan.sharko@dbr.com

Rodney M. Hudson
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
Telephone: (415) 591-7500
rodney.hudson@dbr.com

Chanda A. Miller
DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2500
chanda.miller@dbr.com

ARNOLD & PORTER KAYE SCHOLER LLP

By: /s/ William Hoffman
William Hoffman
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
william.hoffman@apks.com

Andrew K. Solow
Steven Glickstein
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8485
andrew.solow@apks.com
steven.glickstein@apks.com

BRADLEY ARANT BOULT CUMMINGS LLP

By: /s/ Kevin C. Newsom
Kevin C. Newsom
Lindsey C Boney IV
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place, 1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8803
knewsom@bradley.com

IRWIN FRITCHIE URQUHART & MOORE LLC

By: /s/ *James B. Irwin*
James B. Irwin
Kim E. Moore
IRWIN FRITCHIE URQUHART & MOORE LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
jirwin@irwinllc.com


*Attorneys for Defendants Janssen*
*Pharmaceuticals, Inc., Janssen Research &*
*Development, LLC, and Janssen Ortho LLC,*
*and Johnson & Johnson*

CHAFFE MCCALL L.L.P.

By: /s/ *John F. Olinde*
John F. Olinde
CHAFFE MCCALL L.L.P.
1100 Poydras Street, Suite 2300
New Orleans, LA 70163
Telephone: (504) 585-7241
olinde@chaffe.com


*Attorneys for Bayer HealthCare*
*Pharmaceuticals Inc. and Bayer Pharma AG*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on January 20, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to Liaison Counsel for Plaintiffs and Defendants by operation of the court's electronic filing system and served on all other plaintiff counsel via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre-Trial Order No. 17.

*/s/ James B. Irwin*
**James B. Irwin**
