# Exhibit 2

# FILED UNDER SEAL

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

```
 1                UNITED STATES DISTRICT COURT
 2                EASTERN DISTRICT OF LOUISIANA
 3
 4    IN RE:  XARELTO          ) MDL 2592
      (rivaroxaban) PRODUCTS   )
 5    LIABILITY LITIGATION     ) Section:  L
                               )
 6                             ) JUDGE ELDON E. FALLON
      THIS DOCUMENT RELATES    )
 7    TO ALL CASES             ) MAG. JUDGE NORTH
 8
 9
10
11
12
13
14      Videotaped deposition of WAYNE LOUIS BACKES,
15    PH.D., taken on Thursday, November 17, 2016, in
16    the office of The Lambert Firm, A.P.L.C., 701
17    Magazine Street, New Orleans, Louisiana 70130,
18    commencing at 9:07 a.m.
19
20
21
22
23
      Reported by:
24    AURORA M. PERRIEN
      CERTIFIED COURT REPORTER
25    REGISTERED PROFESSIONAL REPORTER
```

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

```
 1                A P P E A R A N C E S
 2    REPRESENTING PLAINTIFFS:
 3         SCHLICHTER, BOGARD & DENTON, L.L.P.
           BY:  ROGER DENTON, ESQ.
 4         100 South 4th Street, Suite 1200
           St. Louis, Missouri 63102
 5         314.621.6115
           Rdenton@uselaws.com
 6
           THE LAMBERT FIRM, A.P.L.C.
 7         BY:  EMILY C. JEFFCOTT, ESQ.
           701 Magazine Street
 8         New Orleans, Louisiana 70130
           504.561.1750
 9         Ejeffcott@thelambertfirm.com
10         THOMAS, MITCHELL, RAFFERTY, PROCTOR, P.A.
           BY:  NED McWILLIAMS, ESQ.
11         316 South Baylen Street, Suite 60
           Pensacola, Florida 32502
12         850.435.7000
           Nmcwilliams@levinlaw.com
13
14
15
      REPRESENTING BAYER HEALTHCARE PHARMACEUTICALS,
16    INC. AND BAYER PHARMA AG:
17         KAY SCHOLER, L.L.P.
           BY:  BERT L. SLONIM, ESQ.
18         250 West 55th Street
           New York, New York 10019-9710
19         212.836.8897
           Bert.slonim@kayescholer.com
20
           KAY SCHOLER, L.L.P.
21         BY:  PAMELA J. YATES, ESQ.
           1999 Avenue of the Stars, Suite 1600
22         Los Angeles, California 90067-6048
           310.788.1278
23         Pamela.yates@kayescholer.com
24
25
```

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

1  REPRESENTING JANSSEN PHARMACEUTICALS, INC.,
   JANSSEN RESEARCH & DEVELOPMENT, L.L.C., JANSSEN
2  ORTHO, L.L.C., and JOHNSON AND JOHNSON:
3         BARRASSO, USDIN, KUPPERMAN, FREEMAN
          & SARVER, L.L.C.
4         BY:  RICHARD E. SARVER, ESQ.
          909 Poydras Street, Suite 2400
5         New Orleans, Louisiana 70112
          504.589.9700
6         Rsarver@barrassousdin.com
7         BARRASSO, USDIN, KUPPERMAN, FREEMAN
          & SARVER, L.L.C.
8         BY:  ANDREA M. PRICE, ESQ.
          909 Poydras Street, Suite 2400
9         New Orleans, Louisiana 70112
          504.589.9700
10        Aprice@barrassousdin.com
11
12
13
   ALSO PRESENT:
14
          MELISSA BARDWELL, VIDEOGRAPHER
15
16
17
18
19
20
21
22
23
24
25

```
 1    application for a pharmaceutical company?
 2        A.   No.
 3        Q.   Have you conducted any scientific studies
 4    of Xarelto?
 5        A.   No.
 6        Q.   Have you published any scientific articles
 7    about Xarelto?
 8        A.   No.
 9        Q.   Have you given any scientific talks or
10    presentations about Xarelto?
11        A.   No.
12        Q.   And if I could expand that, have you
13    conducted any scientific studies about any
14    anticoagulant medication?
15        A.   No.
16        Q.   Have you published any scientific articles
17    about any anticoagulant medication?
18        A.   No.
19        Q.   And have you given any scientific talks or
20    presentations about any anticoagulant medication?
21        A.   No.  I haven't.
22        Q.   Apart from your work in this case,
23    Dr. Backes, have you ever written or presented
24    information or opinions about Xarelto?
25        A.   Aside from this?
```

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

 1                concentration.  Then -- so now, if you're
 2                treating it once a day, then you're going
 3                to cause -- there's going to be a 30-fold
 4                or so increase in that drug concentration.
 5     BY MR. SLONIM:
 6          Q.  So can you give us a number?  What number,
 7     what magnitude between minimum and maximum
 8     concentration for Xarelto would be acceptable, in
 9     your opinion?
10                MR. DENTON:
11                     Object to the form of the question.
12                THE WITNESS:
13                     It's -- I do not have the data to be
14                able to come up with a number.  But there
15                -- but it's clear that if you dose the
16                drug more frequently, it would decrease
17                the minimum and maximum concentrations, in
18                which case then you're more likely to be
19                in the therapeutic window.  And that's
20                just basic principles of pharmacology.
21     BY MR. SLONIM:
22          Q.  Let's -- let's talk about the calculation
23     that supports your opinion that there's a 32-fold
24     difference between the maximum and minimum
25     concentration over a day.  Let's make sure we

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

1           make this to be a safer drug.
2    BY MR. SLONIM:
3       Q.  You don't have clinical outcome evidence
4    that twice daily dosing would improve safety or --
5    or efficacy, do you?
6           MR. DENTON:
7               Object to the form.
8           THE WITNESS:
9               I haven't done any clinical -- any of
10          the clinical studies myself.
11              But the -- based -- based on the
12          simulations that I showed, the fact that
13          the -- that the -- that the fluctuations
14          would be lower, that would -- it increases
15          the likelihood that the drug concentration
16          will remain in the therapeutic range with
17          -- with twice-a-day dosing.  Though --
18          though, you know, it's my under -- it's
19          also my understanding from this one paper
20          that I read that compliance -- that there
21          are concerns about compliance with twice
22          daily dosing.
23              So I mean, I understand -- I -- I
24          understand a lot of the positives and
25          negatives of this.  And, you know, I think

```
 1            that it's -- I think it would just be --
 2            it would be better if -- if you could
 3            monitor the drug concentrations, first
 4            off.  You're -- you're better off, and
 5            especially if you could establish what is
 6            -- what is a safe concentration.  But, you
 7            know, as far as I can see, that -- that
 8            isn't -- hasn't even been established by
 9            Bayer.
10                 And I -- I don't mean just Bayer, but,
11            you know, all the companies that were
12            involved in the development of this drug.
13            So I'm not trying to pick on anybody in
14            particular.
15                 And I forgot the rest of what I was
16            going to say.  So I'll just shut up, and
17            you can ask me the next question.
18   BY MR. SLONIM:
19       Q.  You don't have any clinical outcome data
20   to support the contention that a time-release
21   dosing regimen would improve safety or efficacy --
22       A.  Oh, no.  That was --
23       Q.  -- correct?
24       A.  I -- I put that in as a suggestion.
25   Because it -- if there was a time-release
```

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

```
 1   formulation of it, then you would not have the
 2   high peaks, and -- and then the troughs would also
 3   not be as -- be as low.  So it'd decrease your
 4   fluctuations.  It'd keep you in the therapeutic
 5   range to a greater extent.
 6        Q.  You don't intend to offer an opinion that
 7   Xarelto is defective because it was not formulated
 8   in a time-release or twice daily dosing?
 9        A.  No.
10            I think it -- but I think it could be
11   improved if -- if -- if that was possible.  And I
12   don't even know whether that would be possible.  I
13   would think that maybe it could be.  But that
14   would be -- you know, I -- I mean, I looked at a
15   lot -- I looked at a lot of this data.  And I
16   said, There are things that could be -- in my
17   opinion, there are things that could be done to
18   improve this drug and to decrease the risks.
19        Q.  In order to determine whether or not twice
20   daily dosing or a time-release formulation would
21   improve safety and/or efficacy, you would have to
22   conduct large studies in patients and perform the
23   statistical analyses and see the comparison;
24   correct?
25        A.  Yes.
```

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

1     Q. And you don't have those data; correct?

2     A. No. I'm not going to do those
3 experiments.

4     Q. And --

5     A. So, I mean -- but it's something that
6 -- it's something that could be done. And the
7 drug companies that have -- have a vested interest
8 in this, they -- they could -- they could do it if
9 they felt like it was -- it would be to their --
10 to their and their patients' benefit.

11     MR. SLONIM:
12         Why don't we take a short break.
13     MR. DENTON:
14         Lunchtime?
15     MR. SLONIM:
16         Maybe a -- maybe a lunch break. Okay.
17     THE WITNESS:
18         Okay.
19     THE VIDEOGRAPHER:
20         The time is 12:37 p.m. We are off the
21     record.
22     (Ms. Yates exits the deposition.)
23     (Recess was taken.)
24     THE VIDEOGRAPHER:
25         This begins Disk 4 of today's

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

1                C E R T I F I C A T E
2        This certification is valid only for
3    a transcript accompanied by my original signature
4    and original seal on this page.
5        I, AURORA M. PERRIEN, Registered Professional
6    Reporter, Certified Court Reporter, in and for the
7    State of Louisiana, as the officer before whom
8    this testimony was taken, do hereby certify that
9    WAYNE LOUIS BACKES, PH.D., after having been duly
10   sworn by me upon the authority of R.S. 37:2554,
11   did testify as hereinbefore set forth in the
12   foregoing 288 pages; that this testimony was
13   reported by me in the stenotype reporting method,
14   was prepared and transcribed by me or under my
15   personal direction and supervision, and is a true
16   and correct transcript to the best of my ability
17   and understanding; that the transcript has been
18   prepared in compliance with transcript format
19   guidelines required by statute or by rules of the
20   board; and that I am informed about the complete
21   arrangement, financial or otherwise, with the
22   person or entity making arrangements for
23   deposition services; that I have acted in
24   compliance with the prohibition on contractual
25   relationships, as defined by Louisiana Code of

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

```
 1   Civil Procedure Article 1434 and in rules and
 2   advisory opinions of the board; that I have no
 3   actual knowledge of any prohibited employment or
 4   contractual relationship, direct or indirect,
 5   between a court reporting firm and any party
 6   litigant in this matter nor is there any such
 7   relationship between myself and a party litigant
 8   in this matter.  I am not related to counsel or to
 9   the parties herein, nor am I otherwise interested
10   in the outcome of this matter.
11
12
13
14
15                AURORA M. PERRIEN, CCR, RPR
16
17
18
19
20
21
22
23
24
25
```