# Exhibit 25

# FILED UNDER SEAL

Protected - Subject to Further Protective Review

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

- - -

| | | |
|---|---|---|
| IN RE: XARELTO | : | MDL NO. 2592 |
| (RIVAROXABAN) PRODUCTS | : | |
| LITIGATION | : | SECTION L |
| | : | |
| THIS DOCUMENT RELATES | : | JUDGE ELDON |
| TO ALL CASES | : | E. FALLON |
| | : | |
| | : | |
| | : | MAG. JUDGE |
| | : | NORTH |

- - -

December 15, 2016

- - -

- PROTECTED -

- SUBJECT TO FURTHER PROTECTIVE REVIEW -

        Videotaped deposition of DAVID A. KESSLER, M.D., taken pursuant to notice, was held at the law offices of Douglas & London, 59 Maiden Lane, New York, New York, beginning at 8:39 a.m., on the above date, before Michelle L. Gray, a Registered Professional Reporter, Certified Shorthand Reporter, Certified Realtime Reporter and Notary Public.

- - -

GOLKOW TECHNOLOGIES, INC.
877.370.3377 ph | 917.591.5672 fax
deps@golkow.com

Protected - Subject to Further Protective Review

Page 2

```
 1    APPEARANCES:
 2
 3        THE LAMBERT FIRM
          BY:  EMILY C. JEFFCOTT, ESQ.
 4        701 Magazine Street
          New Orleans, Louisiana 70130
 5        (504) 581-1750
          ejeffcott@thelambertfirm.com
 6
             - and -
 7
          SCHLICHTER, BOGARD & DENTON, LLP
 8        BY:  ROGER C. DENTON, ESQ.
          100 South Fourth Street
 9        Suite 1200
          St. Louis, Missouri 63102
10        (314) 621-6115
          rdenton@uselaws.com
11
             - and -
12
          DOUGLAS & LONDON, PC
13        BY:  LARA J. SAY, ESQ.
          59 Maiden Lane, 6th Floor
14        New York, New York 10038
          (212) 566-7500
15        lsay@douglasandlondon.com
16           - and -
17        LEVIN PAPANTONIO THOMAS
          MITCHELL RAFFERTY & PROCTOR, PA
18        BY:  NED McWILLIAMS, ESQ.
          (Via telephone)
19        316 South Baylen Street, Suite 600
          Pensacola, Florida 32502
20        (888) 435-7001
          nmcwilliams@levinlaw.com
21        Representing the Plaintiffs
22
23
24
```

Golkow Technologies, Inc. - 1.877.370.DEPS

Protected - Subject to Further Protective Review

Page 3

```
 1        APPEARANCES:  (Cont'd.)
 2
 3        TUCKER ELLIS, LLP
          BY:  MICHAEL C. ZELLERS, ESQ.
 4        515 South Flower Street, 42nd Floor
          Los Angeles, California 90071
 5        (213) 430-3301
          Michael.zellers@tuckerellis.com
 6
              - and -
 7
          BARRASSO, USDIN, KUPPERMAN, FREEMAN
 8        & SARVER, LLC
          BY:  CELESTE COCO-EWING, ESQ.
 9        909 Poydras Street, Suite 2400
          New Orleans, Louisiana 70112
10        (504) 589-9700
          Ccoco-ewing@barrassousdin.com
11
              - and -
12
          DRINKER, BIDDLE & REATH, LLP
13        BY:  SEAN KENNEDY, ESQ.
          600 Campus Drive
14        Florham Park, New Jersey 07932
          (973) 549-7000
15        sean.kennedy@dbr.com
          Representing Janssen entities
16
17
18
19
20
21
22
23
24
```

b30dc95e-c57c-465e-8288-f72c84de6554

Protected - Subject to Further Protective Review

Page 4

```
 1        APPEARANCES:  (Cont'd.)
 2
          KAYE SCHOLER, LLP
 3        BY:  JEFFREY H. HOROWITZ, ESQ.
          250 West 55th Street
 4        New York, New York 10019
          (212) 836-7740
 5        jeffrey.horowitz@kayescholer.com
 6           - and -
 7        BRADLEY ARANT BOULT CUMMINGS, LLP
          BY:  LINDSEY C. BONEY, IV, ESQ.
 8        One Federal Place
          1819 Fifth Avenue North
 9        Birmingham, Alabama 35203
          (205) 521-8303
10        Lboney@bradley.com
          Representing Bayer Pharmaceuticals
11
12
13
          VIDEOTAPE TECHNICIAN:
14           Darnell Brown
15
16
17
18
19
20
21
22
23
24
```

b30dc95e-c57c-465e-8288-f72c84de6554

Protected - Subject to Further Protective Review

Page 310

1       A.    Yes.

2       Q.    If you look at Page 9.

3       A.    Right.

4       Q.    And her testimony.

5       A.    Right.

6       Q.    Bottom paragraph.

7       A.    Right.

8       Q.    Does she state, "Importantly
9  the DOAC drugs were approved without a
10 requirement for monitoring" --

11      A.    Yes.

12      Q.    -- "so currently
13 manufacturers are developing devices to
14 assess the effect or concentration of
15 direct oral anticoagulants.  There are
16 currently no clear or approved devices
17 that measure that."
18         Do you agree with her
19 statement?

20      A.    I mean, I think that's
21 technically true.  It's what you expect a
22 device person to look at.  I mean, there
23 is the device -- Neoplastine is available
24 to measure PT.  It is approved to assess

1  bleeding risk and can monitor bleeding
2  risk.  She doesn't discuss that.
3          Q.    Do you agree that no -- I'm
4  finished with that document.
5                Do you agree that no
6  regulatory agency or professional medical
7  or scientific society recommends or
8  requires routine coagulation monitoring?
9               MS. JEFFCOTT:  Object to
10          form.
11              THE WITNESS:  Again, I don't
12          think anyone is talking -- well,
13          no one -- I don't think anyone is
14          talking about routine coagulation
15          monitoring, as that term is used
16          in the warfarin context.
17              And I don't -- I mean, I
18          have not seen anybody do that.
19          That's not the issue I think in
20          this matter.
21  BY MR. ZELLERS
22          Q.    Do you agree that FDA does
23  not currently recommend or require
24  prothrombin time testing for Xarelto?

Page 316

1          A.    I cite it in my report.
2          Q.    Okay.  So you agree that the
3     medical review states, "Monitoring
4     rivaroxaban therapy with sequential
5     prothrombin times to optimize safety
6     outcomes cannot be recommended due to the
7     lack of information regarding, one,
8     within patient variability of prothrombin
9     time measurements on this drug in the
10    setting of a short half-life and rapidly
11    changing pharmacodynamic effects over
12    each 24-hour period; and two, what action
13    to recommend to the medical provider
14    based on prothrombin time results given
15    that only a single dose was tested in
16    ROCKET."
17               Did I read it correctly?
18         A.    Yeah, you cite this.  So
19    this is -- if I'm correct, this -- this
20    actually was written on August 10.  We
21    can go back in 2011.  When you look at
22    the data.  It's cited in Paragraph 45.
23    And -- and I cite that.  And I agree
24    that, you know, while measuring a PT

1   level in a Xarelto-treated patient can be
2   helpful in identifying patients at risk
3   for serious bleeding, based on a
4   patient's response to Xarelto, it does
5   not allow a physician to titrate the dose
6   in sequential the way that warfarin is
7   used in sequential doses.
8               But it does allow a
9   physician and a patient to decide whether
10  the patient should continue on Xarelto, I
11  would argue.
12              Now, what's interesting is
13  if you look at the date of this -- and
14  I -- I want to go back and confirm
15  this -- it's the same date as the
16  clinical pharm that is written.
17              This is being put
18  together -- so my understanding is both
19  are coming out with results on this.  And
20  I would agree.  We talked earlier.  I
21  don't think you can use it to titrate or
22  do sequential PT.  But you can do to see
23  what the -- not sequential.  But you can
24  certainly determine whether you're in the

Protected - Subject to Further Protective Review

Page 318

1  fourth quartile.
2              And, again, the -- just for
3  the record, I think it's important to put
4  on page -- Paragraph 48, that on
5  November 4, 2011, that the -- that -- it
6  says the clinical -- the deputy director
7  wrote, "The clinical pharmacology and
8  clinical reviewers demonstrate that there
9  is a linear correlation between riva
10 levels and prothrombin time.  They also
11 demonstrated that there is also a
12 correlation between PT and risk of
13 bleeding.".
14             This applicant has not
15 chosen to utilize this information.
16 Infrequent monitoring" -- they use the
17 word "monitoring" -- "perhaps at
18 initiation and yearly thereafter to
19 assure appropriate dosing in drugs that
20 prevent stroke and cause bleeding may
21 improve outcomes and be acceptable to
22 patients."
23        Q.    Doctor, doctor, I have your
24 report.  I've read your report.

b30dc95e-c57c-465e-8288-f72c84de6554

Protected - Subject to Further Protective Review

Page 437

CERTIFICATE

I HEREBY CERTIFY that the witness was duly sworn by me and that the deposition is a true record of the testimony given by the witness.

It was requested before completion of the deposition that the witness, DAVID A. KESSLER, M.D., have the opportunity to read and sign the deposition transcript.

_____
MICHELLE L. GRAY,
A Registered Professional Reporter, Certified Shorthand Reporter, Certified Realtime Reporter and Notary Public
Dated: December 19, 2016

(The foregoing certification of this transcript does not apply to any reproduction of the same by any means, unless under the direct control and/or supervision of the certifying reporter.)