# EXHIBIT A

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

```
            UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF LOUISIANA


 IN RE:  XARELTO            )   MDL No.:  2593
 (RIVAROXABAN) PRODUCTS     )   Section:  L
 LIABILITY LITIGATION       )   Judge Eldon E. Fallon
                            )   Mag. Judge North
                            )
                            )
                            )
 JOSEPH J. BOUDREAUX,        )   Case No.: 14-cv-2720
 JR., ET AL                 )
```

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

   Videotaped Deposition of CINDY A. LEISSINGER, M.D., taken on Thursday, December 8, 2016, in the office of The Lambert Firm, A.P.L.C., 701 Magazine Street, New Orleans, Louisiana 70130, commencing at 2:10 p.m.

Reported by:
AURORA M. PERRIEN
CERTIFIED COURT REPORTER
REGISTERED PROFESSIONAL REPORTER

```
 1                    I N D E X
                                          Page
 2
             Caption............................1
 3
             Appearances........................4
 4
             Agreement of Counsel...............6
 5
             Witness' Certificate.............235
 6
             Reporter's Certificate...........236
 7

 8
                  E X A M I N A T I O N
 9
             MS. MOORE..........................8
10
             MS. duPONT.......................205
11

12

13                     E X H I B I T S
14      Exhibit No. 1......................9
        Defendants' Notice with Subpoena Duces
15      Tecum of Oral Videotaped Deposition...
16      Exhibit No. 2.....................23
        Expert Report of Cindy A. Leissinger,
17      M.D.
18      Exhibit No. 3.....................75
        Highlights of Prescribing Information
19
        Exhibit No. 4.....................80
20      Transcript of the Testimony of Videotaped
        Deposition of Kenneth Wong, M.D.
21
        Exhibit No. 5
22      STAH Emergency Department, Lab Results
        1/7/14 - 1/7/14,
23      JBoudreaux-OStAGH-MD-000032
24

25
```

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

```
 1        Exhibit No. 6......................104
          STAH Emergency Department, Lab Results
 2        1/7/14 - 1/7/14,
          JBoudreaux-OstAGH-MD-000031
 3
          Exhibit No. 7......................107
 4        STAH Emergency Department, Lab Results
          1/7/14 - 1/7/14,
 5        JBoudreaux-OStAGH-MD-000030
 6        Exhibit No. 8
          (Labs), JBoudreaux-PPR-000019
 7
          Exhibit No. 9
 8        STAH 3rd Flr Medical Surgical Unit,
          Progress Notes, Collection Time 1/9/14,
 9        JBoudreaux-OStAGH-MD-000073 - 000074
10        Exhibit No. 10
          STAH 3rd Flr Medical Surgical Unit,
11        History & Physical,
          JBoudreaux-OStAGH-MD-000054
12
          Exhibit No. 11.....................143
13        STAH 3rd Floor Medical Surgical Unit,
          Radiology Results, 1/8/14 - 1/8/14,
14        JBoudreaux-OStAGH-MD-000117
15
16
             C E R T I F I E D   Q U E S T I O N S
17
                                           Page/Line
18
          MS. MOORE..........................46/16,
19              50/24, 59/23, 79/8, 185/16, 188/13
20        MS. duPONT........................223/25
21
22
23
24
     Reporter's Note:  Exhibit Nos. 5, 8, 9, and 10
25   were marked but not identified on the record.
```

Golkow Technologies, Inc.                                Page 3

```
 1                  A P P E A R A N C E S
 2   REPRESENTING JOSEPH J. BOUDREAUX, JR. AND
     LORETTA BOUDREAUX:
 3
             SCHLICHTER, BOGARD & DENTON, L.L.P.
 4           BY:  ROGER DENTON, ESQ.
             100 South 4th Street, Suite 1200
 5           St. Louis, Missouri 63102
             314.621.6115
 6           Rdenton@uselaws.com
 7           BARRIOS, KINGSDORF & CASTEIX, L.L.P.
             BY:  EMMA E. KINGSDORF, ESQ.
 8           701 Poydras Street, Suite 3650
             New Orleans, Louisiana 70139-3650
 9           504.524.3300
             Ekingsdorf@bkc-law.com
10
11
12   REPRESENTING JANSSEN PHARMACEUTICALS, INC.,
     JANSSEN RESEARCH & DEVELOPMENT, L.L.C., JANSSEN
13   ORTHO, L.L.C.:
14           IRWIN, FRITCHIE, URQUHART & MOORE,
             L.L.C.
15           BY:  KIM E. MOORE, ESQ.
             400 Poydras Street, Suite 2700
16           New Orleans, Louisiana 70130-3280
             504.310.2108
17           Kmoore@irwinllc.com
18           IRWIN, FRITCHIE, URQUHART & MOORE,
             L.L.C.
19           BY:  JEANETTE F. MILLS, ESQ.
             400 Convention Street, Suite 1001
20           Baton Rouge, Louisiana 70802
             504.310.2100
21           Jmills@irwinllc.com
22           BARRASSO, USDIN, KUPPERMAN, FREEMAN &
             SARVER, L.L.C
23           BY:  ANDREA M. PRICE, ESQ.
             909 Poydras Street, 24th Floor
24           New Orleans, Louisiana 70112
             504.589.9700
25           Aprice@barrassousdin.com
```

1   REPRESENTING BAYER HEALTHCARE PHARMACEUTICALS,
    INC., and BAYER PHARMA AG:
2
            KAYE SCHOLER, L.L.P.
3           BY:  JULIE B. duPONT, ESQ.
            250 West 55th Street
4           New York, New York 10019-9710
            212.836.8572
5           Julie.dupont@kayescholer.com
6
7
    ALSO PRESENT:
8
            MELISSA BARDWELL, VIDEOGRAPHER
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

```
 1                    S T I P U L A T I O N
 2       It is stipulated by and among Counsel that
 3   the videotaped deposition of CINDY A. LEISSINGER,
 4   M.D., is being taken under the Federal Rules of
 5   Civil Procedure for all purposes permitted under
 6   the law.
 7       The formalities of reading and signing are
 8   not waived.
 9       The formalities of sealing, certification
10   and filing are not hereby waived.  The party
11   responsible for services of the discovery material
12   shall retain the original.
13       All objections, except those as to the
14   form of the questions and/or the responsiveness of
15   the answers, are reserved until the time of the
16   trial of this cause.
17                    *   *   *   *   *
18            Aurora M. Perrien, Certified Court
19   Reporter, Registered Professional Reporter, in and
20   for the State of Louisiana, officiated in
21   administering the oath to the witness.
22
23
24
25
```

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

```
 1                    Object to the form.
 2             THE WITNESS:
 3                    I'm sorry?  Say that again.
 4   BY MS. MOORE:
 5      Q.   You would agree that in this particular
 6   case, a reversal agent would not have mattered
 7   with Mr. Boudreaux; correct?
 8             MR. DENTON:
 9                    Object to the form.
10             THE WITNESS:
11                    Oh.  I disagree with that.
12             MS. MOORE:
13                    All right.
14             THE WITNESS:
15                    I don't -- I don't know -- I certainly
16             -- I mean, the way that it was phrased, I
17             think what you asked me is:  Would I say
18             categorically that a reversal agent would
19             not have made a difference?  I would not
20             say that categorically, that it would not
21             have made a difference.
22   BY MS. MOORE:
23      Q.   Is there any evidence in the records that
24   Mr. Boudreaux continued to bleed at the hospital?
25             MR. DENTON:
```

```
 1            you know, introduced additional medical
 2            procedures, clinic visits, you know.  It
 3            -- it -- it certainly introduced many
 4            complications that he would not have had
 5            had he had a smooth course of
 6            anticoagulation.
 7                So it's likely.  Again, a -- you know,
 8            his doctor would have to be the one to
 9            tell you for sure because you're asking
10            what are the likelihood they would have
11            done one thing or another.  But it does --
12            it does, in my opinion, appear to me that
13            the fact that he bled on -- had a
14            life-threatening bleed on anticoagulation
15            led to additional alternative ways to deal
16            with his atrial fibrillation that probably
17            would not have happened had he not bled.
18   BY MS. MOORE:
19       Q.  And as you sit here today, you can't say
20   that that bleed would not have occurred on another
21   anticoagulant; correct?
22       A.  I --
23            MR. DENTON:
24                Object to the form.
25            THE WITNESS:
```

```
 1                  -- absolutely cannot say that that
 2          bleed would have occurred on another
 3          anticoagulate [sic].
 4   BY MS. MOORE:
 5       Q.  And you can't say it would not have --
 6          MR. DENTON:
 7              Object to the form.
 8          THE WITNESS:
 9              I -- I --
10   BY MS. MOORE:
11       Q.  -- is that correct?
12          MR. DENTON:
13              Slow down.
14          THE WITNESS:
15              So --
16          MR. DENTON:
17              Slow down.  Object to the form.
18          THE WITNESS:
19              So I think there is evidence -- some
20          evidence that has been published that
21          Xarelto may have a greater risk of
22          bleeding than some of the other
23          anticoagulants that we use.  And as such,
24          I absolutely -- no one can say -- no one
25          can say what might or might not happen.
```

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

```
 1              nothing.  I mean, the -- there -- but if
 2              you're asking me whether all other
 3              anticoagulants are -- carry the same risk
 4              of bleeding as Xarelto, I believe not.
 5     BY MS. MOORE:
 6         Q.   That's not --
 7         A.   But that's my opinion.
 8         Q.   Yes.  And I understand that.  My question
 9     is really very specific.
10              Can you say to a reasonable degree of
11     medical certainty that Mr. Boudreaux would not
12     have bled had he been on another anticoagulant?
13              MR. DENTON:
14                  Well, I object to the form.
15              THE WITNESS:
16                  So again, I -- I -- I cannot comment
17              on whether he may have bled or may not
18              have bled on any other --
19     BY MS. MOORE:
20         Q.   You just --
21         A.   -- drug.
22         Q.   -- can't say?
23              MR. DENTON:
24                  No.
25              THE WITNESS:
```

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

1    Q.  There's no evidence that Mr. Boudreaux was
2  overanticoagulated; correct?
3        MR. DENTON:
4           Object to the form of the question.
5        THE WITNESS:
6           We have no way of testing.  We have no
7        way to monitor.  We have no way to test.
8        We have no way to know whether he was anti
9        -- overanticoagulated or -- or precisely
10       anticoagulated or not, which is the
11       problem with Xarelto.
12 BY MS. MOORE:
13    Q.  Have you formed an opinion about why he
14 continues to be anemic two years after his GI
15 bleed and the discontinuation of anticoagulation
16 with Xarelto?
17       MR. DENTON:
18          Object to the form.
19       THE WITNESS:
20          So there are many causes for anemia.
21       And as one ages, there are a variety of --
22       of reasons why someone -- someone can
23       become more anemic.  So, you know, again,
24       I -- you know, we -- we could go over that
25       in detail and I could render an opinion.

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

1   have had a shorter hospitalization stay?
2           MR. DENTON:
3               Object to the form.
4           THE WITNESS:
5               That, I -- I really -- you know, I --
6           I couldn't say one way or the other.  I
7           mean, certainly we'd always like to catch
8           somebody earlier rather than later so they
9           don't get as anemic, as -- as at risk
10          of -- of other problems.  But yeah, I
11          mean, how long his hospitalization would
12          have been, I -- you know, I couldn't --
13          couldn't answer.
14   BY MS. duPONT:
15      Q.  You've said several times today that it's
16   your opinion that you can't monitor patients on
17   Xarelto.  Is that an accurate representation of
18   your --
19      A.  That we --
20      Q.  -- summary?
21      A.  That's -- that is an accurate
22   representation, that we cannot adequately monitor
23   patients on Xarelto.
24      Q.  So you could not have used PT to monitor
25   Mr. Boudreaux.  Fair?

```
 1            MR. DENTON:
 2                 Object to the form.
 3            THE WITNESS:
 4                 With our current knowledge and lack of
 5            validation studies, we really can't.  But
 6            there is a lot of evidence that -- that
 7            PT, particularly using certain reagents,
 8            could be adapted for use as a monitoring
 9            tool.  Now, again, that's with proper
10            study and proper validation, etcetera.
11            And we -- we don't have that.  That has
12            not been done.  That information's not
13            available to us as physicians.
14    BY MS. duPONT:
15       Q.  So in 2014, when Mr. Boudreaux was
16    prescribed Xarelto, you could not have used PT to
17    monitor him?
18            MR. DENTON:
19                 Well --
20            THE WITNESS:
21                 I --
22            MR. DENTON:
23                 -- object to --
24    BY MS. duPONT:
25       Q.  Fair?
```

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

```
 1            MR. DENTON:
 2                -- the form.
 3            THE WITNESS:
 4                I agree with that.
 5   BY MS. duPONT:
 6       Q.  You said earlier that there needs to be a
 7   disruption or some sort of injury in the GI tract
 8   in order for there to be a bleed; correct?
 9            MR. DENTON:
10                Object to --
11            THE WITNESS:
12                "Injury" might be too strong a word,
13            but a disruption of some sort, you know,
14            caused by -- and, you know, again, a GI
15            doc could probably speak to this better
16            than I can.
17                But when -- when -- when we begin to
18            lose blood, it's because there is a
19            disruption in the -- the -- the blood
20            vessel -- the -- the wall of the blood
21            vessel that allows blood to escape.  So,
22            you know, something had to disrupt it.
23            Could it be something as simple as food
24            passing through or -- or material passing
25            through the GI tract?  I mean, again, you
```

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

1         C E R T I F I C A T E

2     This certification is valid only for

3  a transcript accompanied by my original signature

4  and original seal on this page.

5     I, AURORA M. PERRIEN, Registered Professional

6  Reporter, Certified Court Reporter, in and for the

7  State of Louisiana, as the officer before whom

8  this testimony was taken, do hereby certify that

9  CINDY A. LEISSINGER, M.D., after having been duly

10  sworn by me upon the authority of R.S. 37:2554,

11  did testify as hereinbefore set forth in the

12  foregoing 235 pages; that this testimony was

13  reported by me in the stenotype reporting method,

14  was prepared and transcribed by me or under my

15  personal direction and supervision, and is a true

16  and correct transcript to the best of my ability

17  and understanding; that the transcript has been

18  prepared in compliance with transcript format

19  guidelines required by statute or by rules of the

20  board; and that I am informed about the complete

21  arrangement, financial or otherwise, with the

22  person or entity making arrangements for

23  deposition services; that I have acted in

24  compliance with the prohibition on contractual

25  relationships, as defined by Louisiana Code of

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

1   Civil Procedure Article 1434 and in rules and
2   advisory opinions of the board; that I have no
3   actual knowledge of any prohibited employment or
4   contractual relationship, direct or indirect,
5   between a court reporting firm and any party
6   litigant in this matter nor is there any such
7   relationship between myself and a party litigant
8   in this matter.  I am not related to counsel or to
9   the parties herein, nor am I otherwise interested
10  in the outcome of this matter.
11
12
13
14
15                  AURORA M. PERRIEN, CCR, RPR
16
17
18
19
20
21
22
23
24
25