# EXHIBIT J

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: XARELTO | ) | MDL 2592 |
| (rivaroxaban) PRODUCTS | ) | |
| LIABILITY LITIGATION | ) | Section: L |
| | ) | |
| | ) | JUDGE ELDON E. FALLON |
| THIS DOCUMENT RELATES | ) | |
| TO ALL CASES | ) | MAG. JUDGE NORTH |

   Videotaped deposition of WAYNE LOUIS BACKES, PH.D., taken on Thursday, November 17, 2016, in the office of The Lambert Firm, A.P.L.C., 701 Magazine Street, New Orleans, Louisiana 70130, commencing at 9:07 a.m.

Reported by:
AURORA M. PERRIEN
CERTIFIED COURT REPORTER
REGISTERED PROFESSIONAL REPORTER

Page 2

I N D E X

                                          Page

Caption..............................1

Appearances..........................3

Agreement of Counsel.................5

Reporter's Certificate.............289


E X A M I N A T I O N

MR. SLONIM...........................7

MR. SARVER.........................213


E X H I B I T S

Exhibit No. 1.......................13
Defendants' Notice with Subpoena Duces
Tecum or Oral Videotaped Deposition...

Exhibit No. 2.......................17
Curriculum Vitae, Wayne L. Backes

Exhibit No. 3.......................28
Expert Report of Wayne L. Backes

Exhibit No. 4......................104
"Clinical Pharmacokinetic and
Pharmacodynamic Profile of Rivaroxaban"

Exhibit No. 5......................160
"Safety, pharmacodynamics, and
pharmacokinetics of BAY 59-7939--an
oral, direct Factor Xa inhibitor..."

Exhibit No. 6......................164
"Rivaroxaban, Population Pharmacokinetic
Analyses in Patients Treated for Acute
Deep-Vein Thrombosis and Exposure..."

Exhibit No. 7......................208
(Invoices)

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

Page 3

```
 1                A P P E A R A N C E S
 2   REPRESENTING PLAINTIFFS:
 3         SCHLICHTER, BOGARD & DENTON, L.L.P.
           BY:  ROGER DENTON, ESQ.
 4         100 South 4th Street, Suite 1200
           St. Louis, Missouri 63102
 5         314.621.6115
           Rdenton@uselaws.com
 6
           THE LAMBERT FIRM, A.P.L.C.
 7         BY:  EMILY C. JEFFCOTT, ESQ.
           701 Magazine Street
 8         New Orleans, Louisiana 70130
           504.561.1750
 9         Ejeffcott@thelambertfirm.com
10         THOMAS, MITCHELL, RAFFERTY, PROCTOR, P.A.
           BY:  NED McWILLIAMS, ESQ.
11         316 South Baylen Street, Suite 60
           Pensacola, Florida 32502
12         850.435.7000
           Nmcwilliams@levinlaw.com
13
14
15
     REPRESENTING BAYER HEALTHCARE PHARMACEUTICALS,
16   INC. AND BAYER PHARMA AG:
17         KAY SCHOLER, L.L.P.
           BY:  BERT L. SLONIM, ESQ.
18         250 West 55th Street
           New York, New York 10019-9710
19         212.836.8897
           Bert.slonim@kayescholer.com
20
           KAY SCHOLER, L.L.P.
21         BY:  PAMELA J. YATES, ESQ.
           1999 Avenue of the Stars, Suite 1600
22         Los Angeles, California 90067-6048
           310.788.1278
23         Pamela.yates@kayescholer.com
24
25
```

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

Page 4

```
 1   REPRESENTING JANSSEN PHARMACEUTICALS, INC.,
     JANSSEN RESEARCH & DEVELOPMENT, L.L.C., JANSSEN
 2   ORTHO, L.L.C., and JOHNSON AND JOHNSON:
 3           BARRASSO, USDIN, KUPPERMAN, FREEMAN
             & SARVER, L.L.C.
 4           BY:  RICHARD E. SARVER, ESQ.
             909 Poydras Street, Suite 2400
 5           New Orleans, Louisiana 70112
             504.589.9700
 6           Rsarver@barrassousdin.com
 7           BARRASSO, USDIN, KUPPERMAN, FREEMAN
             & SARVER, L.L.C.
 8           BY:  ANDREA M. PRICE, ESQ.
             909 Poydras Street, Suite 2400
 9           New Orleans, Louisiana 70112
             504.589.9700
10           Aprice@barrassousdin.com
11
12
13
     ALSO PRESENT:
14
             MELISSA BARDWELL, VIDEOGRAPHER
15
16
17
18
19
20
21
22
23
24
25
```

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

Page 5

1          S T I P U L A T I O N

2     It is stipulated by and among Counsel that

3  the videotaped deposition of WAYNE LOUIS BACKES,

4  Ph.D., is being taken under the Federal Rules of

5  Civil Procedure for all purposes permitted under

6  the law.

7     The formalities of reading and signing are

8  waived.

9     The formalities of sealing, certification

10 and filing are hereby waived.  The party

11 responsible for services of the discovery material

12 shall retain the original.

13    All objections, except those as to the

14 form of the questions and/or the responsiveness of

15 the answers, are reserved until the time of the

16 trial of this cause.

17              *   *   *   *   *

18        Aurora M. Perrien, Certified Court

19 Reporter, Registered Professional Reporter, in and

20 for the State of Louisiana, officiated in

21 administering the oath to the witness.

22

23

24

25

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

Page 200

```
 1            seen as a possible way to be able to
 2            monitor the drug concentration and to be
 3            able to -- to avoid overdosing individuals
 4            that have low half-lives.  I'm sorry.
 5            That have long half-lives, not low
 6            half-lives.
 7   BY MR. SLONIM:
 8       Q.  Do you intend to offer the opinion that
 9   Xarelto is not safe and effective?
10            MR. DENTON:
11                Object to the form.
12            THE WITNESS:
13                I -- I don't -- I don't necessarily
14            think that it is unsafe and effective in
15            the majority of the individuals.  But I
16            think that there is a risk in some -- in a
17            certain percentage of the individuals and
18            that if -- if a monitoring method were
19            established, that it would increase the
20            safety of that drug in those individuals
21            -- in -- in all individuals.
22   BY MR. SLONIM:
23       Q.  You don't claim to have scientific proof
24   that such a monitoring method is demonstrated to
25   improve patient outcomes?  In other words, you
```

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

Page 201

1  don't have rigorous scientific evidence to that
2  effect; correct?
3              MR. DENTON:
4                  Object to the form.
5              THE WITNESS:
6                  I cannot -- I cannot believe that
7              anybody would think that not monitoring is
8              safer than monitoring.
9              MR. SLONIM:
10                 All right.  That's not my question.
11             THE WITNESS:
12                 Well, that was -- that -- that's kind
13             of my answer.
14 BY MR. SLONIM:
15    Q.   Well, your --
16             MR. DENTON:
17                 So there.
18 BY MR. SLONIM:
19    Q.   Your answer -- so -- Doctor, your answer
20 could be that the toast smelled burnt this
21 morning.  It's supposed to be responsive to my
22 question.
23             MR. DENTON:
24                 It was responsive.  So don't -- come
25             on.

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

Page 202

1  BY MR. SLONIM:
2      Q.  Dr. Backes, you don't claim to have
3  scientific evidence that demonstrates that the
4  safety and/or efficacy of Xarelto would be
5  improved by monitoring any parameter, do you?
6          MR. DENTON:
7              Object to the form.
8          THE WITNESS:
9              By any what?
10         MR. SLONIM:
11             Parameter.
12         MR. DENTON:
13             Object to the form.
14         THE WITNESS:
15             Okay.  Just repeat the question,
16         please.
17 BY MR. SLONIM:
18     Q.  You do not -- you do not have scientific
19 evidence that demonstrates that patient outcomes
20 would be improved by monitoring prothrombin time
21 or rivaroxaban concentration; correct?
22     A.  I -- I do not have -- I do not have
23 absolute proof of this.  But there is a -- there
24 is significant amounts of evidence in the
25 literature showing the correlations and -- and

Golkow Technologies, Inc - 877.370.3377

Page 203

1  suggesting that in -- in their -- usually in their
2  discussion sections, that it -- it could be used
3  to allow a greater amount of safety in that drug.
4      Q.  Do you intend to offer the opinion that
5  Xarelto should be removed from the market?
6          MR. DENTON:
7              Object to the form.
8          THE WITNESS:
9              I don't think that it should be
10         removed from the market.  I think it just
11         would be safer if it was being -- if -- if
12         there was a -- the drug concentration was
13         monitored.  I don't think that -- I don't
14         think that this is inherently a bad drug.
15         I think that -- but I do think that there
16         are some problem -- there's problems with
17         the drug related to its variability, and
18         that that -- and those -- those problems
19         could be mitigated by a monitoring process
20         that would have to be established.  And I
21         don't -- I don't believe that it's already
22         -- that it's already been established.  I
23         think that there's research out there
24         where people are going in that direction.
25         And I think that in the future it could

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

Page 204

```
 1              make this to be a safer drug.
 2     BY MR. SLONIM:
 3        Q.  You don't have clinical outcome evidence
 4     that twice daily dosing would improve safety or --
 5     or efficacy, do you?
 6              MR. DENTON:
 7                  Object to the form.
 8              THE WITNESS:
 9                  I haven't done any clinical -- any of
10              the clinical studies myself.
11                  But the -- based -- based on the
12              simulations that I showed, the fact that
13              the -- that the -- that the fluctuations
14              would be lower, that would -- it increases
15              the likelihood that the drug concentration
16              will remain in the therapeutic range with
17              -- with twice-a-day dosing.  Though --
18              though, you know, it's my under -- it's
19              also my understanding from this one paper
20              that I read that compliance -- that there
21              are concerns about compliance with twice
22              daily dosing.
23                  So I mean, I understand -- I -- I
24              understand a lot of the positives and
25              negatives of this.  And, you know, I think
```

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

Page 205

1  that it's -- I think it would just be --
2  it would be better if -- if you could
3  monitor the drug concentrations, first
4  off. You're -- you're better off, and
5  especially if you could establish what is
6  -- what is a safe concentration. But, you
7  know, as far as I can see, that -- that
8  isn't -- hasn't even been established by
9  Bayer.
10  And I -- I don't mean just Bayer, but,
11  you know, all the companies that were
12  involved in the development of this drug.
13  So I'm not trying to pick on anybody in
14  particular.
15  And I forgot the rest of what I was
16  going to say. So I'll just shut up, and
17  you can ask me the next question.
18  BY MR. SLONIM:
19  Q. You don't have any clinical outcome data
20  to support the contention that a time-release
21  dosing regimen would improve safety or efficacy --
22  A. Oh, no. That was --
23  Q. -- correct?
24  A. I -- I put that in as a suggestion.
25  Because it -- if there was a time-release

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

Page 206

1  formulation of it, then you would not have the
2  high peaks, and -- and then the troughs would also
3  not be as -- be as low.  So it'd decrease your
4  fluctuations.  It'd keep you in the therapeutic
5  range to a greater extent.
6      Q.  You don't intend to offer an opinion that
7  Xarelto is defective because it was not formulated
8  in a time-release or twice daily dosing?
9      A.  No.
10         I think it -- but I think it could be
11 improved if -- if -- if that was possible.  And I
12 don't even know whether that would be possible.  I
13 would think that maybe it could be.  But that
14 would be -- you know, I -- I mean, I looked at a
15 lot -- I looked at a lot of this data.  And I
16 said, There are things that could be -- in my
17 opinion, there are things that could be done to
18 improve this drug and to decrease the risks.
19     Q.  In order to determine whether or not twice
20 daily dosing or a time-release formulation would
21 improve safety and/or efficacy, you would have to
22 conduct large studies in patients and perform the
23 statistical analyses and see the comparison;
24 correct?
25     A.  Yes.

Golkow Technologies, Inc - 877.370.3377

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

Page 284

1    Q.  The -- yeah.  The shallower --
2    A.  Shallower decrease.  Okay.
3    Q.  -- decrease is preventing strokes.  That's
4 what it's designed to do.
5    A.  So . . .
6    Q.  And you don't want to reduce the dosage to
7 a point where you increase your risk of stroke, do
8 you?
9    A.  You don't want to increase your risk of --
10    Q.  And --
11    A.  No.
12    Q.  I think we all agree --
13    A.  Right.
14    Q.  -- that that's a bad thing?
15    A.  Correct.
16    Q.  So without a lot more data than we have,
17 how would you be able to tell a clinician, Reduce
18 the dose based on any particular prothrombin time?
19    A.  There would -- I mean, there are -- there
20 are studies that would have to be done to
21 normalize this.  This was just a suggestion of --
22    Q.  Okay.
23    A.  -- something that could -- that -- that
24 could be done to -- to indicate whether somebody
25 has a long half-life.

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

Page 289

C E R T I F I C A T E

   This certification is valid only for a transcript accompanied by my original signature and original seal on this page.

   I, AURORA M. PERRIEN, Registered Professional Reporter, Certified Court Reporter, in and for the State of Louisiana, as the officer before whom this testimony was taken, do hereby certify that WAYNE LOUIS BACKES, PH.D., after having been duly sworn by me upon the authority of R.S. 37:2554, did testify as hereinbefore set forth in the foregoing 288 pages; that this testimony was reported by me in the stenotype reporting method, was prepared and transcribed by me or under my personal direction and supervision, and is a true and correct transcript to the best of my ability and understanding; that the transcript has been prepared in compliance with transcript format guidelines required by statute or by rules of the board; and that I am informed about the complete arrangement, financial or otherwise, with the person or entity making arrangements for deposition services; that I have acted in compliance with the prohibition on contractual relationships, as defined by Louisiana Code of

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

Page 290

1  Civil Procedure Article 1434 and in rules and
2  advisory opinions of the board; that I have no
3  actual knowledge of any prohibited employment or
4  contractual relationship, direct or indirect,
5  between a court reporting firm and any party
6  litigant in this matter nor is there any such
7  relationship between myself and a party litigant
8  in this matter.  I am not related to counsel or to
9  the parties herein, nor am I otherwise interested
10 in the outcome of this matter.
11
12
13
14
15                AURORA M. PERRIEN, CCR, RPR
16
17
18
19
20
21
22
23
24
25