UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:  XARELTO (RIVAROXABAN) *   MDL 2592
PRODUCTS LIABILITY LITIGATION *
          *    SECTION L
THIS DOCUMENT RELATES TO: *
  *ALL CASES*     *    JUDGE ELDON E. FALLON
          *
          *    MAG. JUDGE NORTH
          *

* * * * * * * * * * * * * * * * * * * * * * * *

---

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO
PRECLUDE JAMES A. REIFFEL, MD (AND ANY OTHER MEDICAL
EXPERT'S TESTIMONY) ABOUT ATTORNEY ADVERTISING AND
EARLIER CANCER DETECTION FROM ANTICOAGULANT-RELATED BLEEDS**

---

## I. <u>INTRODUCTION</u>

The Janssen Defendants, *i.e.*, Janssen Research & Development LLC, Janssen

Pharmaceuticals, Inc, Janssen Ortho LLC, and Johnson & Johnson, have proffered the expert

report of James A. Reiffel, MD, a cardiologist, whose report contains subjective and unscientific

statements and opinions about the alleged effects of attorney advertising on patients, none of which

include any of the bellwether plaintiffs.  Dr. Reiffel's personal opinions about attorney advertising

(and those of all Defendants' other witnesses) have no meaningful support in the medical literature,

and amount to nothing other than the *ipse dixit* of the witness.  As Dr. Reiffel's personal opinion

on attorney advertising fails to meet any of the pillars of *Daubert v. Merrell Dow Pharm.*, 509

U.S. 579 (1993), being unsupported by any scientific rigor, untested, and without any standards

controlling its operation or general acceptance within the relevant scientific community, it should

be precluded under Fed.R.Evid. 702.

Similarly, Dr. Reiffel has also opined that bleeding from an anticoagulant has saved lives through earlier detection of cancer.   On this score, Dr. Reiffel's expert report is barren of any support in the medical literature, and again, reflects the singular opinion of this paid consultant of Janssen.  Such a bald opinion fails to meet even the liberal standards demanded by *Daubert*.

Alternatively, such baseless opinions should also be precluded under Fed.R.Evid 403, because they carry a great risk of undue prejudice.  In any event, any testimony on these matters should be precluded.

## II.   FACTUAL BACKGROUND

Defendant Janssen's proposed expert, Dr. Reiffel, opines in his expert report that due to allegedly unfair and unbalanced advertising, patients avoid anticoagulation, and as a result, suffer from more hospitalizations and a lost quality of life:

> Although patients on a NOAC, including Xarelto, may bleed, they do so at less risk of fatality or severe chronic disability than would occur from a stroke if an at-risk AF pt avoided anticoagulation out of a fear of bleeding, which has been a consequence I and others have seen and written about in this era of misleading attorney advertising.64,65  * * * Similarly, [stroke and systemic embolism] resulting from a patient's refusal to take an anticoagulant in response to the TV [ads] they have heard would have an even greater adverse impact on hospitalization utilization, costs, and quality of life.  Thus, again, bleeding concerns have not been presented by such attorneys to the public in a fair and balanced fashion.

*See* Expert Report of James A Reiffel, M.D. Generic Report at 99-100.[1]

To support his opinion, Dr. Reiffel references in footnotes 64 and 65 of his report, an editorial he wrote for an on-line journal and a Janssen-commissioned review of MedWatch reports.  *See* Reiffel, JA. *Misleading advertising by attorneys concerning NOACs is adversely*

---

[1] Attached hereto as Exhibit "A".

2

*costly to our patients and our society.* JAFIB 2016; 8(5)[2] and Burton P, and Peacock WP. *A Medwatch review of reported events in patients who discontinued rivaroxaban (Xarelto) therapy in response to legal advertising.* Heart Rhythm Case Reports 2016; 2:248-49.[3]  Citing to one's self and one's client is suspect.  Indeed, under current Supreme Court jurisprudence industry funded studies are not reliable evidence.  *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 501 n. 17 (2008) ("Because this research was funded in part by Exxon, we decline to rely on it.").

In addition, Dr. Reiffel states in his expert report that bleeding caused by Xarelto may be beneficial because it may allow for the earlier detection of cancer:

> Interestingly and clinically important, there have been multiple reports of lives saved by bleeding as a consequence of earlier detection of a small cancer in which it was the increased bleeding consequent to an anticoagulant that brought the lesion to clinical attention.

*See* Expert Report of Reiffel at 14.[4]

However, none of the bellwether plaintiffs had a cancer that was detected as a result of bleeding caused by Xarelto.  To the contrary, the bellwether plaintiffs suffered harm – and no benefits – as a result of the bleeding caused by Xarelto.

---

[2] Attached hereto as Exhibit "B".

[3] Attached hereto as Exhibit "C".  This article expressly disclaims the obvious bias of its authors: "Funding source: Janssen Pharmaceuticals Inc.  Conflicts: Dr. Burton works for Janssen Pharmaceuticals Inc. and owns stock in Johnson and Johnson, which markets rivaroxaban in the United States. Dr. Peacock is a paid consultant for Janssen Pharmaceuticals Inc."  *Id.*

[4] Additional defense experts have provided similar opinions in their reports, but since those additional experts were deposed about those reports after December 15, 2016, their opinions will be addressed in a later motion, in compliance with the deadline for motions relating to experts deposed after December 15, 2016.

3

As a consequence, Dr. Reiffel's opinions do not "fit" the facts of the litigation as none of the bellwether plaintiffs stopped using Xarelto prior to consulting with their doctors based on attorney advertising, or were diagnosed with cancer as a result of their bleeding episode. As such, this testimony from Dr. Reiffel bears in no way on any facts pertinent to Plaintiffs or any issue of consequence to the litigation, and should be precluded as irrelevant under Fed. R. Evid. 702 and/or 403.

**III.   ARGUMENT**

**A.  Testimony about the Alleged Effects of Attorney Advertising
Should Be Precluded Under *Daubert*.**

**1.      The Law Prohibits the Presentation of Unreliable Expert Testimony.**

In the well-known trilogy of cases – *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993); *General Electric Co. v. Joiner,* 522 U.S. 136 (1997); and *Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999) – the United States Supreme Court elucidated the standard of admissibility of expert testimony under Federal Rule of Evidence 702.

In *Daubert*, the Court emphasized the trial judge's role as gatekeeper in determining the admissibility of relevant and reliable expert testimony. *Daubert,* 509 U.S. at 589. The trial court must determine whether the proffered expert's testimony has "a reliable basis in the knowledge and experience of [the relevant] discipline." *Id.* at 592. The Court explained that this standard is "flexible," and identified four specific factors that a trial court may consider in determining whether to admit expert testimony:

1.  whether the theory can be or has been tested;

2.  whether the theory has been subjected to peer review and publication;

3.  whether the theory has high known or potential rate of error, and whether there are standards controlling its operation; and

> 4. whether the theory is generally accepted within the relevant scientific community.

*Id*. at 592-94.

The *Joiner* Court added that a trial court need not accept testimony purely based on the *ipse dixit* of an expert's statement. *Joiner,* 522 U.S. at 146. In other words, an expert's testimony that something is the case does not thereby make it fact. As this Court has observed, there must not be "too great a gap" between the science and the opinion. *In re Propulsid Prods. Liab. Litig.,* 261 F. Supp. 2d 603, 616 (E.D. La. 2003) (*citing Joiner*, 522 U.S. at 146).

In *Kumho Tire*, the Court noted that the Daubert factors do not constitute an exhaustive set, and that the trial court may consider other factors depending on the nature of the evidence presented. *Kumho Tire*, 526 U.S. at 150-52. The Court also noted that an expert's credentials alone are not sufficient to allow admission of that expert's testimony. *Id*. at 153.

Finally, as this Court has properly observed:

> The party seeking to introduce the expert testimony bears the burden of demonstrating that the testimony is both relevant and reliable. The focus is not on the result or conclusion, but on the methodology.

*In re Chinese Manufactured Drywall Prods. Liab. Litig.,* MDL No. 2047, 2010 WL 8368083, at *3 (E.D. La. Feb. 17, 2007) (internal citations omitted).

The Federal Rules of Evidence have been amended to incorporate these jurisprudential principles into a district judge's determination of expert admissibility, stating that:

> A witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

5

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

*See* Fed. R. Evid. 702.

## 2. The Expert Testimony About Attorney Advertising Does Not Qualify as Reliable Testimony Under *Daubert.*

Dr. Reiffel's opinion on attorney advertising is based on his own editorial[5], which he admits was published *without* disclosing that he is a paid consultant for every anticoagulant manufacturer being sued, and which was based solely on conversations with his patients, none of whom actually stopped taking their anticoagulants, and on anecdotal conversations with other physicians.  *See* Deposition of James A. Reiffel, M.D. at 261-275 (Dec. 15, 2016).[6]  In fact, these anecdotal conversations were not even consistent with Dr. Reiffel's opinion that attorney advertising caused patients to stop taking their anticoagulants and suffer a stroke. *Id.* at 269 – 274.  The only patients Dr. Reiffel could reference were patients who did not stop taking their anticoagulant and did not suffer a stroke. *Id.*

His opinion is also based on an article reviewing MedWatch reports published by a Janssen employee and a Janssen consultant, through a group that had received over $280,000 in support from Janssen.  *Id.* at 279-282.  As mentioned previously, the Supreme Court in E*xxon Shipping, supra,* determined that the inherent bias in such a study makes it unreliable.

---

[5] Dr. Reiffel agreed during his deposition that his editorial was not an actual medical article but was purely a guest editorial.  *See* Deposition of James A. Reiffel, M.D. at 262.

[6] Attached hereto as Exhibit "D".

Further, the case report cited by Dr. Reiffel itself discloses the "significant" limitations of the report.  According to the case report:

> There are obvious numerous and significant limitations to this report.  These include the limited description of clinical characteristics of the individual cases within the MedWatch submissions, such as prior medical history, clinical risk (eg CHADS2 score), the lack of ability to follow up on an individual case basis, the potential for bias in the reporting mechanism that cannot be controlled, and an unknown denominator of that "at-risk" population.  Further, it is not known how many patients abruptly ceased rivaroxaban and did not experience a clinical event, nor is it known how many patients ceased their anticoagulation and suffered an adverse event that was not reported.  Finally, while the language in these forms clearly states that patients viewed legal advertising and stopped their rivaroxaban, this cannot be definitively known.

Medwatch review (Exhibit C).  In short, this case report is not reliable science.

Consequently, Dr. Rieffel's opinion should be barred because it meets none of the requirements for the admission of expert testimony under Federal Rule of Evidence 702.  It is not based on scientific, technical or other scientific knowledge, or on sufficient or data, or on reliable principles or methods.  It is based solely on subjective beliefs and unsupported speculation, Dr. Reiffel's *ipse dixit*, which flies in the face of *Daubert,* which was designed with an "aim . . . to exclude expert testimony based merely on subjective belief or unsupported speculation." *See Burst v. Shell Oil Co.,* 120 F. Supp. 3d 547, 550 (E.D. La. 2015) (citation omitted).

### 3.      Expert Testimony About Whether Anticoagulant-Related Bleeds Has Saved Lives Through Earlier Detection of Cancer Should Be Precluded Under *Daubert*.

Dr. Reiffel's statement about lives being saved by earlier cancer detections consequent to anticoagulant-related bleeding is not supported by any citations.  *See* Expert Report of Dr. Reiffel at 14.  It is simply a bald assertion, and it should be barred because it meets none of the requirements for the admission of expert testimony under Federal Rule of Evidence 702 or *Daubert* and its progeny.  It is not based on scientific, technical or other scientific knowledge, or on

sufficient facts or data, or on reliable principles or methods.  It has not been tested, or subjected to peer review, appropriate publication, or controlled studies.  It is not an opinion that has been generally accepted.

Dr. Reiffel's statement instead appears to be based on subjective beliefs and unsupported speculation, which flies in the face of *Daubert*.  As such, the testimony on this subject of Dr. Reiffel, or any other expert, should be precluded as being unreliable.

### B.  Testimony About The Alleged Effects of Attorney Advertising or the Early Detection of Cancer Should Be Precluded as Irrelevant.

#### 1.  The Law Prohibits the Presentation of Irrelevant Evidence.

Only evidence that is relevant is admissible at trial.  This is a basic tenet of the law, clearly set forth in Federal Rule of Evidence 402, and is, without question, the first and foremost gatekeeper mechanism for determining what can and cannot be presented at trial.  Any evidence that is not relevant must be precluded.

It does not matter if the evidence is presented by a lay witness or an expert witness. Irrelevant evidence does not become relevant or admissible simply because it is presented by an expert.  The United States Supreme Court made that clear in issuing its opinion in *Daubert*:

> Rule 702 further requires that the evidence or testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue.'   This condition goes primarily to relevance.   'Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.'

*Id*., 509 U.S. at 591 (*quoting* 3 Weinstein & Berger 702-18).

Evidence is relevant if it has a tendency to make a fact of consequence to the litigation more or less probable than it would be without the evidence.  Fed. R. Evid. 401.  Relevant evidence need not be conclusive of an ultimate issue, nor make one proposition appear more or less probable, but it must at least advance the inquiry.  *Thompson v. City of Chicago,* 472 F.3d 444, 453 (7th Cir.

2006) (citations omitted); *Kalo v. Comm'r,* No. 97-1416, 1998 U.S. App. LEXIS 12570, at *14 (6th Cir. June 9, 1998) (citation omitted).

However, even relevant evidence can be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. A trial court has broad discretion in assessing the probative value of evidence and determining if it is significantly outweighed by the risk of undue prejudice. *See Sprint v. Mendelsohn,* 552 U.S. 379, 384 (2008); *Verzwyvelt v. St. Paul Fire & Marine Ins. Co.,* 175 F. Supp. 2d 881, 888 (W.D. La. 2001), *citing United States v. Johnson,* 558 F.2d 744, 746 (5th Cir. 1977).

Relevant evidence should be excluded if its probative value is substantially outweighed by a danger of unfair prejudice. *United States v. Duncan,* 919 F.2d 981, 987 (5th Cir. 1990), *citing* Fed. R. Evid. 403. "The less probative a piece of evidence is, and thus the less the benefit to the truth-determining function of the jury of admitting it at trial, and the more trial time the presentation of the evidence would consume and the likelier the evidence would be to confuse the jurors by distracting them from more probative evidence, the stronger the argument for exclusion." *United States v. Seals,* 419 F.3d 600, 613 (7th Cir. 2005) (citations omitted).

**2.    Speculation About The Effects of Attorney Advertising on Patients Who Do Not Include The Bellwether Plaintiffs Will Have No Bearing On The Matters at Issue.**

Dr. Reiffel's statements are an attempt to portray some anonymous Plaintiff lawyers as the "bad guy," by discussing the alleged "bad" effects of attorneys exercising their constitutional right

to free speech,[7] even though no one could reasonably claim that any bellwether Plaintiff was so effected.  This will confuse the issues to be tried, mislead the jury, and unfairly prejudice Plaintiffs.  Consequently, even if the evidence were relevant, and it is not, it should be precluded under Rule 403.

> **3.    Expert Testimony About Whether Anticoagulant-Related Bleeding has Saved Lives Through Earlier Detection of Cancer will Have no Bearing on the Facts Pertaining to the Bellwether Plaintiffs.**

Dr. Reiffel's praise of Xarelto-induced bleeding events as a beneficial source for the early detection of cancer is not admissible.  This statement is designed to tout the alleged "benefits" of the drug, to make its harmful effect – bleeding – seem not only harmless, but helpful.  This will confuse the issues, mislead the jury, and unfairly prejudice Plaintiffs.  Consequently, even if the evidence were relevant, and it is not, it should be precluded under Rule 403.

---

[7] *See Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471, 626 (1985) (reversing disciplinary sanction based upon commercial speech right of attorney to solicit Dalkon Shield clients).  *See generally Virginia Pharmacy Board v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748 (1976); *In re R.M.J.,* 455 U.S. 191 (1982); *In re Primus*, 436 U.S. 412 (1978); *Ohralik v. Ohio State Bar Assn.*, 436 U.S. 447 (1978); *Bates v. State Bar of Arizona*, 433 U.S. 350 (1977).

IV.     **CONCLUSION**

For these reasons, Plaintiffs respectfully request that Dr. Reiffel or any other expert be precluded from testifying about the alleged effects of attorney advertising or the early detection of cancer.

Respectfully submitted,

Dated:  January 20, 2017

*/s/ Leonard A. Davis*
Leonard A. Davis, Esq. (Bar No. 14190)
**HERMAN, HERMAN & KATZ, LLC**
820 O'Keefe Avenue
New Orleans, LA  70113
Phone:  (504) 581-4892
Fax:  (504) 561-6024
Email:  ldavis@hhklawfirm.com

Gerald E. Meunier (Bar No. 9471)
**GAINSBURGH BENJAMIN DAVID MEUNIER & WARSHAUER, LLC**
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA  70163-2800
Phone:  (504) 522-2304
Fax: (504) 528-9973
Email:  gmeunier@gainsben.com

*Plaintiffs' Liaison Counsel*