## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE ELDON E. FALLON |
| Joseph J. Boudreaux, Jr., et al. v. Janssen et al. Case No. 2:14-cv-02720 | MAGISTRATE NORTH |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' *DAUBERT* MOTION TO EXCLUDE CERTAIN OPINIONS OF NATHANIEL WINSTEAD, MD

Plaintiff Joseph Boudreaux seeks to offer the opinion of Nathaniel Winstead, MD, a general gastroenterologist and hepatologist, that Xarelto® can cause internal bleeding through systemic toxicity, direct topical effects of medication, and direct mucosal toxicity.   At his deposition, Dr. Winstead admitted that this opinion was simply a "hypothesis" that had not been tested, published or peer-reviewed in the literature.  Without employing any methodology based on medicine, science or literature, Dr. Winstead's opinions are the quintessential "*ipse dixit*" opinions – made all the more problematic here because Dr. Winstead has cloaked them in his alleged clinical experience with warfarin, not Xarelto.  For the reasons set forth below, this Court should exclude these opinions of Dr. Winstead.

## LEGAL STANDARD

Under *Daubert v. Merrell Dow Pharmaceuticals* and Federal Rule of Evidence 702, an expert may give opinion testimony only if (a) the expert's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (b) "the testimony is based on sufficient facts or data"; (c) "the testimony is the product of reliable principles and methods"; and (d) the expert "has applied the principles and methods reliably to the facts of the case."   Fed. R. Evid. 702; *Daubert v. Merrell Dow*

*Pharmaceuticals*, 509 U.S. 579 (1993). "*Daubert* requires admissible expert testimony to be both reliable and relevant." *Wells v. SmithKline Beecham Corp.*, 601 F.3d 375, 378 (5th Cir. 2010). The following nonexclusive list of factors may be considered in evaluating the admissibility of expert testimony: "whether [a theory or technique] can be (and has been) tested," whether it "has been subjected to peer review and publication," the "known or potential rate of error," the "existence and maintenance of standards controlling the technique's operation," as well as "general acceptance" in the relevant scientific community. *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997) (quoting *Daubert*, 509 U.S. at 593–94). The Fifth Circuit has adopted additional factors as part of its gatekeeping function, including "(1) whether the expert's opinion is based on incomplete or inaccurate dosage or duration data; (2) whether the expert has identified the specific mechanism by which the drug supposedly causes the alleged disease; (3) whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion; (4) whether the expert has adequately accounted for alternative explanations; and (5) whether the expert proposes to testify about matters growing directly out of research he or she has conducted independent of the litigation." *Plunkett v. Merck & Co. (In re Vioxx Prods. Liab. Litig.)*, 401 F. Supp. 2d 565, 573 (E.D. La. 2005) (citing *Black v. Food Lion, Inc.*, 171 F.3d 308, 313 (5th Cir. 1999); and *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 278–79 (5th Cir. 1998)).

Plaintiffs bear the burden of proving the proffered testimony's reliability and relevance. *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc); *In re Propulsid Prods. Liab. Litig.*, 261 F. Supp. 2d 603, 615 (E.D. La. 2003) (citing *Moore*, 151 F.3d at 276). *Daubert* empowers the trial court to "act as a 'gatekeeper' to exclude 'junk science' that does not meet Rule 702's reliability standards." *Hickey v. Gusman*, No. 10-CV-4410, 2011 WL 6180050, at *3 (E.D. La. Dec. 13, 2011) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147–48

(1999); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997); *Daubert*, 509 U.S. at 592–93).  To clear the reliability bar, a party's experts must employ "the same level of intellectual rigor that characterizes the practice of [the] expert[s] in the[ir] relevant field[s]."  *Kumho Tire Co.*, 526 U.S. at 152.  The opinions must be based on "scientifically valid" methodology and "grounded in the methods and procedures of science."  *Daubert*, 509 U.S. at 590, 592–93.  Expert opinions should be "connected to existing data" by something other than "the *ipse dixit* of the expert," and where "there is simply too great an analytical gap between the data and the opinion proffered," the opinion should be excluded.  *Gen. Elec. Co.*, 522 U.S. at 146 (citation omitted).

"Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it."  *Daubert*, 509 U.S. at 595.  As a result, speculative opinions and those not based on sufficient data must be excluded.  *See, e.g.*, *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996).  The court's gatekeeping role is "designed to extract evidence tainted by farce or fiction" so that an expert's "pure speculation" is excluded.  *Id.*  "[T]he existence of sufficient facts [to support the opinion] and a reliable methodology is in all instances mandatory."  *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007).  The Fifth Circuit "frown[s] on . . . conclusions bereft of statistically significant epidemiological support."  *Wells*, 601 F.3d at 380.  In particular, untested hypotheses cannot be admitted as expert opinions, as "[s]cientific methodology today is based on generating hypotheses and testing them to see if they can be falsified; indeed, this methodology is what distinguishes science from other fields of human inquiry."  *Daubert*, 509 U.S. at 593 (internal quotation marks omitted).

## ARGUMENT

Dr. Winstead's hypothetical opinion that Xarelto can cause bleeding by somehow directly injuring the vascular system has not been tested, peer-reviewed or published, and therefore is inadmissible under *Daubert*.  Plaintiff intends to use Dr. Winstead to support the argument that,

absent any other possible cause of Plaintiff's gastrointestinal bleeding, it must have been caused by Xarelto. *See generally* Winstead Report (Exh. A).  In rendering his opinions, Dr. Winstead testified as follows:

> Q.      And so just to be clear, you believe that Xarelto can initiate a bleed in the absence of any pre-existing or underlying pathology?
>
> A.      Correct.

Winstead Dep. at 41:13-16 (Ex. B).

When asked for an explanation as to how an anticoagulant could hypothetically initiate gastrointestinal bleeding absent an underlying pathology, Dr. Winstead offered three purported hypotheses: systemic toxicity, direct topical effects of medication, and direct mucosal toxicity. *Id*. at 38:18–39:8; 44:15–22.  However, he could not explain the postulated mechanisms of action.  Rather, Dr. Winstead acknowledged that they are merely untested hypotheses that he developed for the purposes of this litigation that have no scientific consensus and are not supported in medical literature. With respect to systemic toxicity, Dr. Winstead testified as follows:

> Q.  Then my next question is, but do you agree that with respect to Xarelto that is a hypothesis?
>
> MR. GOZA:  I'll object to form.
>
> A.  Yes, I guess I would.
>
> . . .
>
> Q.  Dr. Winstead, there's nowhere in any of the articles that you rely upon to form your opinions in which the authors state Xarelto can initiate a gastrointestinal bleed through systematic toxicity in the absence of pre-existing pathology?
>
> MR. GOZA:  And my objection is he's already asked and answered that and explained the specifics of that.
>
> A.  Yeah, I don't believe any of these studies actually propose mechanisms for bleeding. They're all just discussing the risks, the risk for bleeding.

4

*Id.* at 83:13–84:6; 142:24 – 143:12.

Similarly, with respect to his theory of direct topical effects, Dr. Winstead could provide no source confirming this theory, and acknowledged it is merely a hypothesis: "And I think that [direct topical effects as a potential mechanism of action] falls under the category of hypothesis, why people think things happen." *Id.* at 42:18–43:21. And with respect to direct mucosal toxicity, Dr. Winstead acknowledged: "[D]irect mucosal injury, in terms of causing ulcerations or damage to the mucosa of the GI tract, that is a theory that has not really been borne out by observation in clinical use." *Id.* at 64:2–6.

Without any valid or reliable scientific basis, Dr. Winstead proposes to testify about a hypothesis developed for this litigation that has not been confirmed through independent research or testing and has never been peer reviewed or published. Moreover, the only alleged basis for his opinions—Dr. Winstead's apparent clinical observations of alleged bleeding— involved patients using warfarin, not Xarelto. "Scientific methodology today is based on generating hypotheses and testing them to see if they can be falsified; indeed, this methodology is what distinguishes science from other fields of human inquiry." *Daubert*, 509 U.S. at 593 (internal quotation marks omitted). This Court has previously emphasized that an expert's "theories have not been . . . subjected to peer review and publication" is a factor tending to make testimony unreliable. *Propulsid*, 261 F. Supp. 2d at 617; *see also Wells*, 601 F.3d at 378, 380–81 (affirming the district court's exclusion of the plaintiff's expert because, among other reasons, the expert's theory "ha[d] not been subjected to peer review and publication"). Publication of a theory boosts reliability because the acceptance of research "for publication in a reputable scientific journal after being subjected to the usual rigors of peer review is a significant indication that it is taken seriously by other scientists" and such "[s]crutiny of the scientific community is a component of good science." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d

87462361.1

1311, 1318 (9th Cir. 1995) (internal quotation omitted).  "If nothing else, peer review and publication increase the likelihood that substantive flaws in methodology will be detected"— flaws that are unlikely to be exposed where the expert has developed an opinion for the benefit of a party in litigation.  *See id.* (internal quotation omitted).

Here, Dr. Winstead has failed to point to a single published study supporting his theory that Xarelto can spontaneously cause gastrointestinal bleeding through systemic toxicity, direct topical effects of medication, and direct mucosal toxicity.  The closest he comes to providing any justification for his purported opinion is referring to his own alleged clinical observations *in warfarin patients* and even these observations have not been subject to peer review and published.  Accordingly, because Dr. Winstead has not offered any reliable testimony that Xarelto can cause spontaneous gastrointestinal bleeding without underlying pathology, his opinions should be excluded.

This sort of "trust me, I'm an expert" *ipse dixit* opinion does not meet the requirements of *Daubert*.  Dr. Winstead's purported opinions fall "more in the category of an intuitive clinical hunch than a reliable, scientific, expert opinion," and therefore should be excluded.  *Leathers v. Pfizer, Inc.*, 233 F.R.D. 687, 695 (N.D. Ga. 2006).  Absent use of the scientific method, a physician who seeks to offer speculative "testimony is based more on personal opinion than on scientific knowledge" and the opinions "are educated guesses dressed up in evening clothes."  *Siharath v. Sandoz Pharms. Corp.*, 131 F. Supp. 2d 1347, 1373 (N.D. Ga. 2001) (*quoting Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1319 (11th Cir. 1999); *Hall v. Baxter Healthcare Corp.*, 947 F. Supp. 1387, 1407 (D. Or. 1996)).  In contrast, *Daubert* "demands reliable and relevant scientific opinion based on reliable scientific methodology, as well as peer-reviewed and published literature, rather than mere 'subjective belief or unsupported speculation."  *Id.* (*quoting Allison*, 184 F.3d at 1319 n.

23).   As Dr. Winstead admits, his opinions that Xarelto can cause bleeding in the absence of underlying pathology of the vascular system are nothing more than untested hypotheses that have not been generally accepted by the scientific community, and therefore should be excluded.

## CONCLUSION

For all the foregoing reasons, the Court should grant Defendants' motion and preclude Dr. Winstead from offering the above-referenced improper opinions.


Respectfully submitted,

DRINKER BIDDLE & REATH LLP

By: */s/ Susan M. Sharko*
Susan M. Sharko
Drinker Biddle & Reath LLP
600 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
susan.sharko@dbr.com

Rodney M. Hudson
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
Telephone: (415) 591-7500
Rodney.hudson@dbr.com

Chanda A. Miller
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2500
Chanda.Miller@dbr.com

ARNOLD & PORTER KAYE SCHOLER LLP

By: */s/ William Hoffman*
William Hoffman
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
william.hoffman@apks.com

Andrew K. Solow
Steven Glickstein
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8485
andrew.solow@apks.com
steven.glickstein@apks.com


BRADLEY ARANT BOULT CUMMINGS LLP

By: */s/ Kevin C. Newsom*
Kevin C. Newsom
Lindsey C Boney IV
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place, 1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8803
knewsom@bradley.com

87462361.1

IRWIN FRITCHIE URQUHART & MOORE LLC

By: /s/ *James B. Irwin*
James B. Irwin
Kim E. Moore
Irwin Fritchie Urquhart & Moore LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
jirwin@irwinllc.com

*Attorneys for Defendants Janssen*
*Pharmaceuticals, Inc., Janssen Research &*
*Development, LLC, and Janssen Ortho LLC*

CHAFFE MCCALL L.L.P.

By: /s/ *John F. Olinde*
John F. Olinde
Chaffe McCall L.L.P.
1100 Poydras Street, Suite 2300
New Orleans, LA 70163
Telephone: (504) 585-7241
olinde@chaffe.com

*Attorneys for Bayer HealthCare*
*Pharmaceuticals Inc. and Bayer Pharma AG*

8

## <u>CERTIFICATE OF SERVICE</u>

      The undersigned hereby certifies that on January 20, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to Liaison Counsel for Plaintiffs and Defendants by operation of the court's electronic filing system and served on all other plaintiff counsel via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre-Trial Order No. 17.

*/s/ James B. Irwin*
**James B. Irwin**
