UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


IN RE: XARELTO (RIVAROXABAN)     *     MDL 2592 "L"
PRODUCTS LIABILITY LITIGATION    *
                                 *
                                 *     January 20, 2017
                                 *
                                 *
THIS DOCUMENT RELATES TO         *     Judge Eldon E. Fallon
ALL CASES                        *
                                 *
                                 *     Mag. Judge Michael North
*****************************************************************

     REPORTER'S OFFICIAL TRANSCRIPT OF THE STATUS CONFERENCE
          BEFORE THE HONORABLE ELDON E. FALLON,
                 UNITED STATES JUDGE.

     *****************************************************************


**APPEARANCES:**


FOR THE PLAINTIFFS'
LIAISON COUNSEL:                 HERMAN HERMAN & KATZ
                                 BY: LEONARD A. DAVIS,ESQ.
                                 820 O'KEEFE AVE.
                                 NEW ORLEANS, LA  70113


FOR THE DEFENDANTS'
LIAISON COUNSEL:                 IRWIN FRITCHIE URQUHART &
                                 MOORE
                                 BY: JAMES B. IRWIN, V, ESQ.
                                 TEXACO CENTER
                                 400 POYDRAS ST., STE. 2700
                                 NEW ORLEANS, LA  70130


FOR THE PLAINTIFFS:              BARRIOS, KINGSDORF & CASTEIX
                                 BY: DAWN M. BARRIOS
                                 701 POYDRAS ST., STE. 3650
                                 NEW ORLEANS, LA  70139


**FINAL TRANSCRIPT**

**APPEARANCES CONTINUED:**

```
                              BARON & BUDD
                              BY: SINDHU S. DANIEL
                              3102 OAK LAWN AVE,  STE. 1100
                              DALLAS, TX  75219


FOR DEFENDANTS:               DRINKER BIDDLE & REATH
                              BY: CHANDA A. MILLER
                              1 LOGAN SQUARE, STE. 2000
                              PHILADELPHIA, PA  19103




REPORTED BY:      Mary V. Thompson, RMR, FCRR
                  500 Poydras Street
                  Box B2-13
                  New Orleans, LA  70130
                  (504) 589-7783
                  mary_v_thompson@laed.uscourts.gov
```

**FINAL TRANSCRIPT**

# I N D E X

**PAGE NO.**

Pretrial Orders...................................   3

Case Management Orders............................   3

Bellwether Selections.............................   5

Counsel Contact Information Form..................   5

Plaintiff Fact Sheet..............................   5

Defendant Fact Sheet..............................   5

Service of Process on Certain Bayer Defendants....   5

Preservation Order................................   5

Order Governing the Parties' Interactions with MDL
Plaintiffs' Prescribing and Treating Physicians....   6

Discovery.........................................   6

Discovery Issued to Third Parties.................   6

State/Federal Coordination........................   7

Motions...........................................  10

Matters Set for Hearing Following the Status
Conference........................................  45

Next Status Conference............................  45

**FINAL TRANSCRIPT**

**P R O C E E D I N G S**

1
2                                    (Call to order of the court.)
3        THE COURT:  Be seated please.  Good morning, ladies and
4 gentlemen.
5        Let's call the case, please.
6        THE CASE MANAGER:  MDL 2592, *In Re: Xarelto Products*
7 *Liability Litigation.*
8        THE COURT:  Counsel, make appearances for the record,
9 please, liaison.
10       MR. DAVIS:  Morning, Your Honor.  Lenny Davis from the
11 law firm of Herman, Herman & Katz, plaintiffs' liaison counsel.
12       MR. IRWIN:  And Jim Irwin for defendants.
13       THE COURT:  We're here today for our monthly status
14 conference.  We have several motions at the end of the
15 conference.  I'll take the conference first, and then we'll begin
16 with the motions.
17       Let me hear from the parties on Item No. 1.
18       MR. DAVIS:  Yes, Your Honor.  As you know, we've
19 submitted Joint Report No. 23 and that is for today's status
20 conference.
21       With respect to the first issue, the only new pretrial
22 order since the last status conference is Pretrial Order 28-A,
23 which, in fact, was issued on the date of the last status
24 conference.
25       With respect to Item No. 2, there's a Case Management

**FINAL TRANSCRIPT**

1   Order 2-C which is new.  And the parties have submitted a

2   proposed Case Management Order to Your Honor for 2-D, which

3   addresses some scheduling issues.

4         THE COURT:  Right.  I had the opportunity to review it.

5   It seems to be in order.  It provides for the scheduling of

6   initial trials and discovery, expert discovery, and the briefing

7   schedule and trial dates and dispositive motion dates and things

8   of that sort.  I'll sign it and issue it today.

9         MR. DAVIS:  In connection with that, the parties -- and

10  I'm going to jump to the trial, since they are in there.

11        In connection with that, the parties have been working

12  based upon the agreed-upon submission with the hope that

13  Your Honor would enter that order.

14        In the Boudreaux and Orr case, we expect to be

15  filing -- when I say "we," both plaintiffs and defendants --

16  expect to be filing the appropriate *Daubert* motions which will be

17  filed today and so the Court should be expecting those.  There

18  will be some more that will be filed February 10th, I believe it

19  is.  So there are some additional, but there will be a

20  substantial number that will be filed by plaintiffs and

21  defendants today.

22        THE COURT:  Right.  As I understand it, the motions

23  will be filed and then the briefs will accompany them, and we'll

24  set them for oral argument sometime in March.  And we'll have a

25  long day on that particular day with a number of motions, both

**FINAL TRANSCRIPT**

*Daubert* and other motions.

       MR. DAVIS:  That's correct, Your Honor.

       We're also working -- when I say "we," plaintiffs and defendants are working to try to narrow some issues so the Court may very well get some stipulations presented in the near future.

       And then on the Mingo and Henry trials, we'll be addressing those down the road.

       THE COURT:  All right.

       MR. DAVIS:  Okay.  There's nothing to report on No. 3. Obviously bellwether selection's been done.

       THE COURT:  Yeah.

       MR. DAVIS:  Counsel contact information forms, the plaintiffs continue to receive those.  We appreciate the receipt of those, and just advise plaintiffs' counsel that they should check the Court's website if there's some issue when they get into the case so that they do submit the appropriate form.

       No. 5 is plaintiff fact sheets.  We have some motions that are set following the status conference.  And we've also worked with defendants to submit a proposed order to try to help the Court through those various alleged deficiencies.

       On No. 6, there's nothing new to report.

       Same thing on No. 7, there's nothing new to report.

       No. 8, the preservation order, just as we've done in the past, we've reminded folks, and in particular plaintiffs, that there is a preservation order and they should familiarize

**FINAL TRANSCRIPT**

1  themselves with it.

2         And, again, the Court posts on its website pretrial

3  orders and other orders and status conference reports that are

4  important for people to look at.

5         THE COURT:  Yeah.  That's important to re-emphasize.

6  We have a website in this case, and I post everything on the

7  website to keep everybody advised of it.  Both lawyers as well as

8  litigants have access to the website so they can go in and see

9  what's happening.  And we have a calendar there; they'll know

10  what's coming up and what has been done.  Copies of all orders,

11  copies of all transcripts, copies of whatever we've done here are

12  available to people who are not able to meet in New Orleans and

13  you should keep up with that.

14         MR. DAVIS:  With respect to Item No. 9, I mentioned

15  this earlier with respect to pretrial orders, although I didn't

16  explain what it was, but a new order was issued that basically

17  extends the interaction or communications with prescribing and

18  treating physicians.  That order is the new pretrial order and it

19  basically extends the matters through trial.

20         With respect to Item No. 10, discovery, there are

21  really no issues to report on.  The parties continue to address

22  the motion to compel and protective order that was withdrawn with

23  respect to document production, and we continue to deal with that

24  issue.

25         On No. 11, discovery issued to third parties, there's

**FINAL TRANSCRIPT**

1   nothing new to report.

2        On No. 12, Ms. Barrios is here to address state/federal

3   coordination.

4        MS. BARRIOS:  Good morning, Your Honor.  Dawn Barrios

5   for the state/federal committee.

6        I want to apologize to counsel and to the Court for

7   being tardy today, but I was trying to bring this information as

8   up to date as I possibly could.

9        THE COURT:  Sure.

10       MS. BARRIOS:  I'm providing to two charts to Your Honor

11  today.  One is the Xarelto state court stats.  And what we find,

12  if you go to the last page, is that in the state courts we've

13  gotten 38 -- a net 38 cases filed and the number of net users has

14  decreased by 47.

15       And that's what took me awhile this morning because I

16  didn't understand why that was.  I've been informed by defense

17  counsel that they've removed cases.  Both -- those came from

18  California and Missouri, that they've removed several of those

19  cases.

20       I might also note to the Court that California has

21  formed its JCCP.  Its liaison counsel, Mr. Potts, has reached out

22  to me.  He wants to cooperate with the MDL.  He wants to

23  coordinate with us, and he asked me to put him in touch with the

24  executive committee, which I have done.

25       THE COURT:  Good.

**FINAL TRANSCRIPT**

1    MS. BARRIOS:  So I'm pleased to say that that should be
2  working well.  And if you'll note, that's Judge Freeman who will
3  be heading the JCCP.
4    THE COURT:  Yeah.  And reach out to their liaison
5  counsel if you feel that he's at all interested or someone is
6  interested in being on your committee --
7    MS. BARRIOS:  Oh, that's a good idea.
8    THE COURT:  Offer it to them and I'll appoint them.
9  Just designate who they want.
10    MS. BARRIOS:  Thank you, Your Honor.
11    THE COURT:  Yeah.
12    MS. BARRIOS:  From Pennsylvania I've gotten a report
13  from Mr. Galluci and Mr. Weinkowitz that they continue to work
14  cooperatively with the MDL.
15    The plaintiffs' bellwether depositions have started.
16    And they've pushed their trial date back 37 days, if
17  you will notice, on the trial settings.
18    THE COURT:  Yeah.
19    MS. BARRIOS:  Delaware has 229 users.
20    Missouri has 219.
21    But Pennsylvania still has the --
22    THE COURT:  Most.
23    MS. BARRIOS:  -- lion share at 70 percent.
24    The second chart, Your Honor, is the trial court
25  settings.  And I apologize, and I will supplement this to

**FINAL TRANSCRIPT**

1    everybody, but I found out about a new trial court setting just
2    this morning.  You have Judge New's setting, which is
3    November 3rd.  And it does say "2017," and as Ms. Sharko pointed
4    out last time, that's an error -- typo on my part.  Again, I'll
5    make that correction.
6            And then in Dallas there's a case that's set for May 8,
7    2018.
8            And in St. Louis before the Honorable Brian Hettenbach
9    there is a case.  The plaintiff's name is Turley, and that's set
10   for January 15, 2018.
11           But I'll e-mail all these corrections over to you to
12   let you have the most up-to-date information.
13           THE COURT:  Okay.
14           MS. BARRIOS:  Thank you, Your Honor.
15           THE COURT:  Thank you very much, Dawn.
16           MR. DAVIS:  Thank you, Dawn.
17           Your Honor, I think that's it, other than matters that
18   are set for hearing.
19           THE COURT:  Okay.  Let's go into the matters that are
20   set for hearing.
21           MS. DANIEL:  Morning, Your Honor.  Sindhu Daniel for
22   the plaintiffs.
23           MS. MILLER:  Good morning, Your Honor.  Chanda Miller
24   for the defendants.  I believe there's a motion to remand that we
25   were going to have argued first.

**FINAL TRANSCRIPT**

```
 1          MR. IRWIN:  Your Honor, may I introduce Rodney Hudson
 2   to the Court.
 3          THE COURT:  Yes.
 4          MR. IRWIN:  He will be handling the motion to remand.
 5          THE COURT:  We have a motion to remand filed by --
 6   California is it?
 7          MR. IRWIN:  Yes.  I would like to introduce Rodney,
 8   Your Honor.  He comes from a good lineage.  He is Chuck Preuss's
 9   partner.
10          THE COURT:  Good.  Well, I've known Chuck a long time.
11          MR. DAVIS:  Your Honor, I assume that plaintiff's
12   counsel is on the phone, but I don't know that.
13          THE COURT:  Is plaintiff's counsel on the phone for the
14   motion to remand?
15          MR. LAMBERT:  Yes, Your Honor, that's correct.
16   Graham Lambert for the plaintiff Rorick Evans.
17          THE COURT:  Okay, Graham.  Do you want to make your
18   appearance for the record, please.  Tell us who you are and who
19   you represent.
20          MR. LAMBERT:  Yes.  Graham Lambert representing
21   plaintiff Rorick Evans.
22          THE COURT:  Okay.  All right.  You have a motion to
23   remand the case.  Do you want to set it up for me?
24          MR. LAMBERT:  Yes, Your Honor.  We filed a motion to
25   remand the case based on lack of diversity.  We filed this action
```

**FINAL TRANSCRIPT**

1 against Xarelto and McKesson, who is a California-based
2 distributor of the drug, and defendant Xarelto removed this case
3 based on diversity.

4          Our argument is that there is no diversity because the
5 principal place of business of McKesson, the properly joined
6 defendant, is in California, and plaintiff is also a citizen in
7 California.

8          THE COURT:  What's the basis of the claim against
9 McKesson?

10          MR. LAMBERT:  McKesson, as distributor, is both
11 strictly liable and liable on the theory of negligence for
12 damages to plaintiff.

13          THE COURT:  How do you know they distributed this
14 particular drug?

15          MR. LAMBERT:  (No response.)

16          THE COURT:  Hello?

17          MR. LAMBERT:  Yes, Your Honor.  I'm sorry, I'm looking
18 for that now.

19                              (A pause in the proceedings.)

20          THE COURT:  There's clear evidence that J & J and Bayer
21 designed and manufactured the drug, but I don't know about
22 McKesson.  I don't know what information you have that they
23 actually distributed the drug.  I know that they're a big
24 distributor out there and in other places.  They distribute a lot
25 of drugs, but I don't know about this one.

**FINAL TRANSCRIPT**

1    MR. LAMBERT:  Right.  So if you take a look at the

2    declarations to the motion, McKesson is a wholesale distributor

3    that is in the business of manufacturing, promoting, labeling,

4    selling, marketing, packaging, and distributing Xarelto used by

09:16:59    5    the plaintiff.

6    THE COURT:  What's your theory of liability against

7    McKesson?  They distributed a drug.  What part do they play in

8    that?

9    MR. LAMBERT:  Right.  Under California law, a

09:17:14    10    distributor is strictly liable, not just the manufacturer, and

11    you can -- I believe that that is *Vandermark v Ford Motor Co.*

12    THE COURT:  Okay.  All right.  Let me hear the

13    opposing --

14    MR. HUDSON:  Your Honor, just a couple of points as a

09:17:33    15    threshold matter.

16    I think there's a question of timing on this particular

17    motion, Your Honor.  First, we have an overarching concern about

18    when to hear motions to remand, and I think Your Honor has set up

19    a process in the MDL.  People are working to work-up trial pool

09:17:50    20    cases.  There are trials that are scheduled, I believe, in April

21    and months following.  And here, Your Honor, we really have a

22    motion by a plaintiff that involves McKesson.  And I'll get into

23    why McKesson doesn't belong in this case in a minute, but I think

24    there's a broad concern here, Your Honor, that motions to remand

09:18:10    25    should be heard later in the proceeding.

**FINAL TRANSCRIPT**

1          Second, Your Honor, with respect to this particular
2     motion with respect to McKesson, the plaintiffs haven't properly
3     alleged sufficient facts to identify McKesson as a distributor of
4     the product.

09:18:29
5          If we look at the complaint, Your Honor, there is an
6     allegation that McKesson distributed the product, but there is no
7     predicate fact as to what pharmacy or hospital the product was
8     purchased from or where the prescribing -- who the prescribing
9     physician is.

09:18:44
10         And, Your Honor, if we looked at what Judge Tunheim did
11    in the Levaquin litigation, he addressed this issue.  And what's
12    important, Your Honor, is, I think, to get this question right:
13    Did McKesson distribute the product in question?  And here,
14    Your Honor, there hasn't been anything alleged with any

09:19:03
15    particularity that McKesson, in fact, did distribute the product.
16    We need this threshold information to evaluate and ascertain
17    whether or not McKesson did do that.  And in the Levaquin
18    litigation, Judge Tunheim deferred ruling on motions to remand so
19    that plaintiffs could provide sufficient information so that it

09:19:24
20    could be evaluated whether McKesson distributed the product.

21         And that's important as an initial matter for several
22    reasons, Your Honor.  First, we have an instance where the case
23    has been removed.  We have the mechanism here to find out that
24    information now.  If the Court were to rule on the motion without

09:19:43
25    that evidence now, and we're sent back to state court, we have no

**FINAL TRANSCRIPT**

1   ability to get back before Your Honor, and allowing time to

2   conduct that initial information hearing will avoid that

3   prejudice to us.  And there is no prejudice to the plaintiffs in

4   staying here until that information is exchanged because the

5   California-coordinated proceeding is really in its infancy.

6   There are CMOs that are being negotiated.  There is no bellwether

7   process in place.  So the opportunity here to conduct this

8   initial discovery and to share information exists, and the

9   prejudice to the plaintiffs is small, but the prejudice to us, in

10  ruling on the motion now with incomplete information, would be

11  substantial.

12          So based on what Judge Tunheim did, we think it would

13  be appropriate for plaintiffs to make that initial showing before

14  ruling on the motion to remand, Your Honor.

15          THE COURT:  Okay.  Let me hear from plaintiffs in

16  response to that.

17          MR. LAMBERT:  (No response.)

18          THE COURT:  Hello?

19          MR. LAMBERT:  Yes, Your Honor.  I'm sorry.

20                          (A pause in the proceeding.)

21          THE COURT:  Are you still with me?

22          MR. LAMBERT:  Yes, Your Honor, I am.

23          THE COURT:  He takes the position that it's a time --

24  it's the improper time.  We've got this case ramping up for

25  discovery.  We've got a lot of discovery that's been conducted so

**FINAL TRANSCRIPT**

1    far.  We've got trial dates that are coming up.  We have motion
2    dates and things of that nature with both *Daubert* and there are
3    other motions.  And that it would be beneficial to both you as
4    well as the defendants to focus on this issue later and give you
5    an opportunity to collect more information to support your
6    position.  What's your view of that?

7         MR. LAMBERT:  Your Honor, we disagree with that.  We
8    think that it would prejudice the plaintiff to stay in this
9    court.  And, you know, I -- you know, any time lost due to the
10   motion in California would not be prejudicial, it would just
11   result in the defendant having more time.

12        THE COURT:  Okay.  I understand the issue.

13        I do think that this case is moving in the proper
14   direction.  Everybody has access to the discovery information.
15   It makes sense to me to not rule on this particular motion now;
16   to render it moot, and take it up at another time after more
17   discovery is filed in the case.  And also it will allow the
18   plaintiffs to conduct any depositions that they may have or get
19   discovery here.

20        We'll reset the motion for another time and I'll hear
21   it at that time, but I'm going to deny the motion at this time as
22   being premature.

23        Thank you very much.

24        Let's go to the next motion, please.

25        MS. DANIEL:  Your Honor, the first case -- and I'm

**FINAL TRANSCRIPT**

1   going to go in order of the schedule here.

2           Lenora Demeritte.

3           And I won't spell all of the names just so -- I think

4   the court reporter has the list.

5           I think the attorney, Andrew Kirkendall, will be on the

6   line for this case.

7           THE COURT:  Hello.  Are you with us, sir?  Andrew?

8           MR. KIRKENDALL:  Yes, Your Honor.  This is Andrew

9   Kirkendall.

10          THE COURT:  Okay.

11          MS. DANIEL:  Go ahead, Andrew.

12          MR. KIRKENDALL:  So, Your Honor, I represent

13  Karen Person [phonetic] on -- individually and on behalf of the

14  estate of Lenora Demeritte.  We had filed her case in March of

15  2016 when Lenora was still alive.  She -- when we were filling

16  out the plaintiff fact sheet, she passed away and so we found --

17  we got ahold of Ms. Person and we -- I'm sorry, who took over as

18  the plaintiff.  You signed an order in July substituting her out

19  as the plaintiff.

20          We completed the plaintiff fact sheet.  We have all the

21  core information.  We believe it's substantially complete at this

22  time.  Defendants' one complaint is that we -- what they say is

23  the PFS is not substantially complete because we don't have

24  something that says the plaintiff has the authority to be the

25  plaintiff.

**FINAL TRANSCRIPT**

1      We have not been able to get ahold of the plaintiff
2  since she signed all the documents back in September.  We have
3  submitted all the other information in this case.  We have all
4  the medical records that show group of use, that show proof of
5  injury.  We've completed every other aspect of the -- well, of
6  all the -- you know, as far as substantial completeness, we've
7  completed the other portions of the relevant plaintiff fact
8  sheet.
9      We believe that dismissing at this time would be
10 extremely harmful to plaintiff who's in the case.  And letting
11 the case extend right now is really no -- we don't think -- you
12 know, there's really nothing that cuts against the defendants.
13 The harm to the defendants is very small in this matter.  We'd
14 ask this Court to deny the motion and let the case continue at
15 this time.
16         THE COURT:  Okay.  What information do you need?
17         MS. MILLER:  Your Honor, this is her second motion for
18 extension of deadlines.  As we've discussed previously, the
19 plaintiff fact sheet is in lieu of interrogatories.  At this
20 point, we don't have a letter of representation or anything to
21 demonstrate --
22         THE COURT:  What do you need?  Do you need a letter
23 from counsel saying he does it or --
24         MS. MILLER:  Or a court appointing the representative
25 of the estate.

**FINAL TRANSCRIPT**

1    THE COURT: Did you get court appointed, Andrew? Have
2    you filed anything in court appointing this person?
3    MR. KIRKENDALL: Appointing this person as the
4    plaintiff or appointing this person as the representative --
5    THE COURT: As the representative?
6    MR. KIRKENDALL: -- for the estate?
7    THE COURT: Yes.
8    MR. KIRKENDALL: No, because we haven't been able to
9    get ahold of the client since she signed the plaintiff fact sheet
10   back in, I think -- she signed recently, in September or October.
11   MS. MILLER: The PFS was submitted in May so from the
12   defendants' perspective, it's been since May.
13   THE COURT: Look, this is important, Andrew, that you
14   do something. They have given -- you've given all the
15   information, as I understand, but you don't have anything from
16   the court saying that this new person is the representative of
17   the estate. You're going to have to file something in local
18   court appointing that individual. And if the person doesn't want
19   to do that, then I'm going to dismiss the case.
20   I'll give you another time to do it. Let's do it in
21   60 days. But if you don't -- if they haven't responded by then,
22   I'll take the -- I'll understand that they're not interested in
23   pursuing it any longer.
24   MR. KIRKENDALL: Thank you, Your Honor.
25   MS. DANIEL: Your Honor, when we say 60 days, could we

**FINAL TRANSCRIPT**

1  move it to the March 23rd date so we could just use that as
2  the --
3          THE COURT:  That's fine.  Let's do it on March 23rd
4  then.
5          MS. MILLER:  Thank you, Your Honor.
6          MR. KIRKENDALL:  Thank you.
7          MS. DANIEL:  Your Honor, the next case is
8  Robbie Crutcher.
9          Your Honor, this is a case -- actually Mr. Levy, I told
10 him he didn't necessarily have to be on the phone.
11         This was a motion for leave to withdraw his
12 representation.  The client passed away.  The firm sent several
13 letters and placed several calls that went unanswered.  They were
14 finally able to reach a family member, but unfortunately they do
15 not wish to proceed with the case, so at this point they have no
16 basis to oppose, given the circumstances.
17         THE COURT:  They've done everything possible to service
18 the client.  They've gone beyond the pale to do it, but the
19 client doesn't want to do it.  I'll deny the motion to withdraw,
20 and I'll grant the motion to dismiss the case.
21         MS. MILLER:  Thank you, Your Honor.
22         MS. DANIEL:  Thank you, Your Honor.
23         Getting into the largest portion here, Your Honor, as
24 Your Honor is aware, on October 18th the defendants presented a
25 list of 574 cases to the PEC where they claim that there was

**FINAL TRANSCRIPT**

1  allegedly no fact sheet served.

2  　　　The PEC has subsequently provided updates, and this

3  list has been reduced greatly.  We are now down to this 141 group

4  that we have here today.  Obviously, it took quite a lot of time

09:28:37  5  and quite a lot of effort on everybody's part.  But we have

6  reduced the list actually over 75 percent.

7  　　　THE COURT:  Great.

8  　　　MS. DANIEL:  And we're going to further reduce it.  And

9  we're going to try to move this as expeditiously as possible.

09:28:48  10  　　　THE COURT:  Okay.

11  　　　MS. DANIEL:  So right now, Your Honor, we can further

12  reduce this list as 35 additional cases have been cured by

13  submission of the fact sheet.  And I'll just read those names

14  into the record, Your Honor.

09:29:00  15  　　　Waverly Allen.

16  　　　Melissa Archer.

17  　　　Jacqueline Bryant.

18  　　　Harold Campbell.

19  　　　John Conduff.

09:29:09  20  　　　Susan Cornelius.

21  　　　Lessie Dixon.

22  　　　MS. MILLER:  With that, just for clarification for the

23  record, she's a duplicate filer.  The case that can proceed is

24  16-10040.

09:29:23  25  　　　MS. DANIEL:  Cleveland Douglas.

**FINAL TRANSCRIPT**

                    1              Larry Evans.
                    2              William Green.
                    3              Dawn James.
                    4              Sean Jones.
     09:29:31       5              Deborah Kaase.
                    6              Russell Mitchell.
                    7              Rudolfo Morin.
                    8              Sue Morris.
                    9              Charles Owens.
     09:29:40      10              Phillip Parris.
                   11              Anna Pauley.
                   12              John Peterson.
                   13              Frederick Quick.
                   14              Cheryl Robinson.
     09:29:50      15              Anna Marie Roper.
                   16              Tanzia Rounds.
                   17              Ernie Schultz.
                   18              Loren Scott.
                   19              Renee Smith.
     09:29:58      20              Thomas Smith.
                   21              Joseph Taylor.
                   22              Harold Troutman.
                   23              Helen Voltz.
                   24              Kenneth Wake.
     09:30:05      25              Mandy Willey.

**FINAL TRANSCRIPT**

1    Nancy Woods.

2    Phoebe Woodward.

3    There are also 11 cases where the parties have agreed

4    to a stipulation of dismissal with prejudice, and I'll read those

09:30:20    5    into the record.

6    Those are:

7    Brett Andre.

8    Damir Brdar.

9    Michele Flynn.

09:30:26    10    Ridgeway Gaines.

11    Gayle Matthews.

12    Margaret Pleasant.

13    Geri Ross.

14    John Smith.  And I will read this docket number, it is

09:30:39    15    2:16-9404, because there is a duplicate.

16    Robert Smith.

17    Constance Williams.

18    Tomiese Wyatt.

19    MS. MILLER:  And there are three other cases on the

09:30:51    20    list that have since been dismissed.

21    Jones Johnson.

22    Clifford Howard.

23    And Joan Nesbitt, who is also a duplicate filer.  The

24    case that was dismissed is 16-10353.

09:31:09    25    MS. DANIEL:  There are two cases that had dual

**FINAL TRANSCRIPT**

1 | representation and the firms will agree to a stipulation of
2 | dismissal that will allow the correct case to move forward.
3 | Those are:
4 | Dustin Dwyer.
5 | Donald Jolley.
6 | Robbie Crutcher was also on this list, but that is --
7 | we've already addressed that case.
8 | There are 28 cases in which counsel has done everything
9 | in their power to gather the information from the plaintiff,
10 | including gathering records from numerous facilities or in some
11 | instances hiring private investigators, but have been
12 | unsuccessful despite their diligent efforts.  These counsel have
13 | no basis to oppose the order to show cause.  I'll read those into
14 | the record, Your Honor.
15 | Rodolfo Arzate.
16 | Arelene Bowman.
17 | Harvey Brock.
18 | Geraldine Brown.
19 | Leon Brown.
20 | Torrance Bryant.
21 | Adrienne Burnett.
22 | Jack Carlson.
23 | Londell Chadwick.
24 | Ralph Ciaverella.
25 | George Colvin.

**FINAL TRANSCRIPT**

1          Patrick Connors.

2          Martha Daniels.

3          David Devault.

4          Earlette Douresseau.

5          Tracy Freedline.

6          Curtis Kilby.

7          Sonja Logan.

8          Tammy Manley.

9          Mary McBee.

10         Gerry McElroy.

11         Frank Metzgar.

12         Roy Owens.

13         Jonathan Prechtl.

14         Johnnie Rouse.

15         Linda Starkey.

16         Chelsea Stotts.

17         Mary Timmons.

18         THE COURT:  It --

19         MS. MILLER:  Your Honor -- oh, I'm sorry.

20         THE COURT:  I was just going to say, therefore it seems

21   appropriate to dismiss those cases.

22         MS. MILLER:  Yes, Your Honor, with prejudice.

23         THE COURT:  I'll dismiss those cases with prejudice,

24   and prepare for me an order to reflect that.

25         MS. MILLER:  Thank you, Your Honor.

**FINAL TRANSCRIPT**

1    MS. DANIEL:  Additionally there are six *pro se* clients

2  and -- there are six, I think, total, and there are three in

3  which I think the defendants were not aware that the plaintiff

4  was now *pro se*.

09:33:16    5    So on three of those, Your Honor, Richard Bauer,

6  Angela Hardy, and David Young, the *pro se* plaintiffs have been

7  made aware.  They have been given notice.

8    Are any of you on the line?

9    (No response.)

09:33:33   10    THE COURT:  Hello?  Are any of the *pro se* people on the

11  line that we just mentioned?

12    Do you want to read them out again.

13    MS. DANIEL:  Yes.

14    Richard Bauer.

09:33:43   15    Angela Hardy.

16    David Young.

17    (No response.)

18    THE COURT:  Hearing none, I assume that they don't wish

19  to go forward with their case so I'll oblige them and dismiss it

09:33:57   20  with prejudice.

21    MS. MILLER:  Thank you, Your Honor.

22    MS. DANIEL:  There are three cases, Your Honor, in

23  which the defendant, we don't believe, understood that the

24  plaintiffs were *pro se* so they were not -- don't have notice.  So

09:34:05   25  we'd like to ask for 30 days on their behalf.

**FINAL TRANSCRIPT**

1        Those cases are:

2        Teresa Betancourt.

3        Fidel Estrada.

4        Arsenio Farinas.

5        MS. MILLER:  Yes, Your Honor, those three counsel had

6    withdrawn and the *pro se* plaintiffs did not receive notice of

7    today's hearing.

8        THE COURT:  Okay.  I'll pass it, then, for 30 days and

9    we'll give them an opportunity to respond.

10       MS. MILLER:  Thank you.

11       MS. DANIEL:  In four cases the firm filed motions to

12   withdraw as counsel, and I don't believe another firm has come

13   forward to substitute in as counsel.  That firm is

14   Diez-Arguelles & Tejedor.

15       Those cases are:

16       Bernardo Maldonado.

17       Tatiana Martinez-Hernandez.

18       Aurea Morale.

19       Jose Zouain.

20       Is anyone on the call for this firm?

21       (No response.)

22       MS. DANIEL:  Your Honor, if they're not on the call, we

23   would request continuing until the next hearing, February 10th.

24   If no substitution of counsel is done, Your Honor could make his

25   ruling at that time.

**FINAL TRANSCRIPT**

1    THE COURT:  Okay, I'll grant that.  I'll give them an
2  opportunity to respond.  But if they don't, this will be their
3  last opportunity.
4    MS. MILLER:  Yes, Your Honor.  In each of those cases,
5  the plaintiff's fact sheet is now more than a year overdue.
6    THE COURT:  Yes.  That's too long.
7    MS. DANIEL:  On Randall Shrout, Your Honor, the file --
8  they filed a response to the order to show cause, because this is
9  a situation where the Xarelto user passed away and then the widow
10  took over, but she has not submitted the information.
11    The firm, unfortunately, does not have express
12  permission from the client to dismiss the case, but they are
13  asking -- in their submission they did ask for a dismissal
14  without prejudice.  This firm is aware of Your Honor's ruling on
15  dismissals without prejudice, but wanted to make the facts clear
16  in their submission.
17    THE COURT:  Yeah.  I think the firm has done everything
18  possible.  Even though they recognize that it may be dismissed,
19  they take the extra step to ask that it be dismissed without
20  prejudice.  I'll deny that.  I'll dismiss it with prejudice.
21    MS. DANIEL:  The next one is Harold House.  Your Honor,
22  they also filed a response to the order to show cause and they
23  have done everything they can to locate the client, but have been
24  unsuccessful.  They also asked for a dismissal without prejudice.
25    THE COURT:  Yeah.  Clients have a responsibility to

**FINAL TRANSCRIPT**

1   cooperate with their lawyer.  They can't hire a lawyer and then

2   just forget about the lawyer.  They have to keep in touch with

3   the lawyer.  I've given them every opportunity to both keep in

4   touch with their lawyer as well as keep in touch with the

09:36:34   5   litigation.

6       I do a website for this particular litigation and

7   invite everybody to keep in touch with it, both lawyers and

8   litigants.  If a litigant doesn't want to proceed, I understand

9   that.  They have a right to go on with their life, and they're

09:36:50   10   not stuck with the litigation.

11       So they haven't done it and I assume that they don't

12   wish to pursue the matter.  I'll dismiss it with prejudice.

13       MS. DANIEL:  The next case is Cindy Haggerty.

14   Your Honor, this firm filed a motion to dismiss without prejudice

09:37:05   15   actually on October 27, 2016, and then they recently contacted

16   the clerk to check the status and were informed that the court

17   had issued a deficiency.  And they just simply were unaware of

18   the deficiency so they filed a new motion to dismiss without

19   prejudice yesterday.

09:37:21   20       In this case the plaintiff died and they have not been

21   able to locate any heirs at this time.  So this firm, they asked

22   for a dismissal without prejudice or an additional 30 days to

23   find heirs, Your Honor.

24       MS. MILLER:  Your Honor, this was a case that was filed

09:37:36   25   in November of 2015.  The PFS was due more than a year ago, and

**FINAL TRANSCRIPT**

1    they've been on notice, you know, since May of 2016 that they

2    needed to submit a fact sheet.  We think that's more than enough

3    opportunity.

4         THE COURT:  Well, I think you're right, but also I

09:37:50

5    think that in a death situation people respond differently.  And

6    sometimes -- these days and times are a little different than

7    back in the day when everybody lived around in the same

8    neighborhood and you knew everything about everybody.  Now people

9    live all over the world.

09:38:07

10        So if they've asked for 30 days, I'll give it to them.

11   But this is going to be the last one.  They have to do something

12   more.  Otherwise I'll dismiss the case with prejudice.

13        MS. DANIEL:  Thank you, Your Honor.

14        There are 29 cases for which we would like to request

09:38:22

15   an additional 30 days -- well, actually until the next case

16   management conference, which is February 10th, which is around

17   20 days, to submit the fact sheet.  There are numerous reasons on

18   all of these 29 cases, including they need additional time or

19   they're locating additional records.  We don't see any reason

09:38:40

20   that the defendant would be prejudiced by any of these

21   extensions.

22        I will read those cases into the record.

23        Ronald Baker.

24        Allen Brandon.

09:38:49

25        Michael Chesner.

**FINAL TRANSCRIPT**

| | | |
|---|---|---|
| | 1 | Helen Cleghorn. |
| | 2 | Angela DiMichele. |
| | 3 | Frank Fallon. |
| | 4 | Charles Hall. |
| 09:38:59 | 5 | William Hartman. |
| | 6 | Ronald Hedtcke. |
| | 7 | David King. |
| | 8 | Janelle Matran. |
| | 9 | Marissa Mello. |
| 09:39:07 | 10 | Paul Mitala. |
| | 11 | Philip Morison. |
| | 12 | Thomas Neis. |
| | 13 | Gabriel Paloma. |
| | 14 | Dwight Phelps. |
| 09:39:17 | 15 | Glenda Phillips. |
| | 16 | Violet Robertson. |
| | 17 | Hattie Robinson. |
| | 18 | Kyesha Rodgers. |
| | 19 | Dionicio Rodriguez. |
| 09:39:26 | 20 | Samuel Rose. |
| | 21 | Jennifer Russell. |
| | 22 | John Smith.  I will read this docket.  2:16-10976. |
| | 23 | Edgardo Trinidad. |
| | 24 | Terry Vest. |
| 09:39:39 | 25 | Virginia Way. |

**FINAL TRANSCRIPT**

1        Cathleen Williams.

2        MS. MILLER:  Your Honor, looking at that list, this is
3   the first time defendants are aware that they wanted an
4   additional 30 days.  In every single one of those cases, the
5   complaints were filed in May of 2016.  The plaintiff fact sheets
6   were due in August of 2016.  Overdue letters were sent to counsel
7   in August of 2016.  They have now had five months to submit the
8   fact sheets.  We think that's more than enough time.  We don't
9   have any evidence that in any of those cases the plaintiff has
10  any interest in proceeding with the case.

11       THE COURT:  Yeah.  I've heard it.  It's not my
12  intention to just dismiss cases willy-nilly.  I try to give
13  everybody an opportunity to respond.  We take great precautions
14  in notifying individuals.  We take everything we can to tell them
15  that the case is going to be dismissed with prejudice.

16       If this is the first time that we've done this with
17  this group, then the question is whether or not I do it in
18  20 days or now.  I'll give them another 20 days, but we're going
19  to have to move on these cases.  I think the defendants' are
20  right, they're long overdue.  And if you file a lawsuit, you have
21  a responsibility to participate in the lawsuit.  It's not
22  something that you file and forget about.  It's important that
23  the parties participate and that the attorneys who represent
24  these parties participate.  And if they don't, I'll dismiss the
25  cases with prejudice.

**FINAL TRANSCRIPT**

1          MS. DANIEL:  Thank you, Your Honor.

2          THE COURT:  I'll pass these for 20 days until the next

3  status conference.

4          MS. DANIEL:  Thank you.

5          There are 10 cases for which we would like to request

6  an additional 60 days, Your Honor, and all of these cases are for

7  clients who are deceased or awaiting medical records.  As

8  Your Honor is aware, it is very difficult to either locate heirs

9  or get the letters of administration in these cases.

10  Additionally, medical records have become increasingly difficult

11  and take longer to get.

12          Those are:

13          James Ashcraft.

14          Jefferson Chambers.

15          Frankie Favis.

16          Basya Ferdman.

17          Jesse Flood.

18          George Foley.

19          Leonard Huffman.

20          Bernice Huls.

21          Kevin Lavergne.

22          Mark Moeller.

23          THE COURT:  Okay.

24          MS. MILLER:  Again, Your Honor, despite the multiple

25  meet-and-confers, this is the first time defendants are hearing

**FINAL TRANSCRIPT**

1  of the request for additional time to submit the plaintiff fact
2  sheet.  In some of these cases the PFS is more than a year
3  overdue.  In other cases, you know, the Xarelto user passed away
4  before the complaint was filed so they were on notice of those
5  issues before even initiating the lawsuit.  In none of those
6  instances do we think circumstances warrant additional time.
7        THE COURT:  Okay.  I'll give you an opportunity to look
8  at them a little bit further, and I'll pass them for 60 days.
9        MS. DANIEL:  Thank you, Your Honor.
10        Patricia Hamelin, the firm filed a response in this
11  matter actually requesting 90 days.  The client is deceased.  And
12  after finding the correct heir, they are now getting the records
13  and getting the appropriate letters of administration.  This is
14  their request in their filing, Your Honor.
15        THE COURT:  So 60 days -- 90 days is too far.  Do it in
16  60 days.  I'll pass it for 60 days.
17        MS. DANIEL:  The case next is Joann Burley.  This firm
18  filed a response to the order to show cause and asked for
19  additional time to provide medical records.  On December 6th,
20  Your Honor, the Court ordered that the deadline to provide the
21  medical records in connection with the plaintiff's fact sheet is
22  now January 31, 2017, so we do not think this case should be on
23  the order to show cause this month, Your Honor.  They are
24  awaiting records and the Court has signed an order stating that
25  they have additional time.  And while they have not submitted the

**FINAL TRANSCRIPT**

1  fact sheet yet, we think it's appropriate that they be allowed
2  the additional time that was given to them by the Court so that
3  they can complete and submit a fully completed fact sheet.

4       MS. MILLER:  Your Honor, the complaint was filed in May
5  of 2016.  The plaintiff fact sheet was due in August of 2016.
6  They received notice ten days later that they were late.  They
7  did get an extension to receive records, but, as Your Honor has
8  previously indicated, it's really important that the plaintiff
9  provide the information that they're able to.  We see no basis
10 why they couldn't have provided at least a partial plaintiff fact
11 sheet.  They've had, at this point, five months since the
12 deadline to do so.

13      THE COURT:  Yeah, they've got -- I understand if they
14 can't supply information for the entire fact sheet, but if they
15 can supply some information they have to do so.  They have now
16 gotten the records or they've made movement in getting the
17 records.  I'll continue this one.  But if they don't do anything
18 on the fact sheet by the next time, I'm going to dismiss the
19 case.

20      MS. DANIEL:  Thank you, Your Honor.

21      Walter Huelster.  This firm filed a response to the
22 order to show cause.  The plaintiff passed away and they are
23 looking for an heir.  The firm has requested in its response --
24 and they've detailed in their response how they've attempted to
25 locate additional heirs.  And they've also requested and filed a

**FINAL TRANSCRIPT**

1   motion to dismiss without prejudice.

2           THE COURT:  I'm not going to dismiss it without

3   prejudice.  We've got to finish this case.  I will do this,

4   though:  In view of the fact that a death is involved in the

5   case, I'll give them another 30 days.  But if they don't find an

6   heir by then, I'm going to dismiss it with prejudice.

7           MS. DANIELS:  We are down to the last six cases,

8   Your Honor.  I don't have an update, Your Honor, so I think that

9   counsel would like to address the Court themselves.

10          The first case is Ernest Gray.  Is there anyone on the

11  line for Hodes, Milman, Liebeck?

12          (No response.)

13          THE COURT:  Hello.  Anyone?

14          (No response.)

15          THE COURT:  Anyone for Mr. Gray?

16          (No response.)

17          THE COURT:  Hearing no one, what's your position?

18          MS. MILLER:  Well, Your Honor, the complaint in this

19  case was filed in March of 2016.  The plaintiff fact sheet was

20  due in June.  They received notice in July that it was overdue.

21  No one's on the phone.  We think it should be dismissed with

22  prejudice.

23          THE COURT:  All right, I'll dismiss it with prejudice.

24          What's the next one?

25          MS. DANIEL:  Your Honor, obviously we would ask that it

**FINAL TRANSCRIPT**

1   not be dismissed with prejudice.

2            THE COURT:  Yeah.  Okay.  I understand.  I'll dismiss

3   it with prejudice.  Deny the motion.

4            MS. DANIEL:  Thank you, Your Honor.

5            Patricia Hadley is the next case.  Is there anyone from

6   Girardi Keese on the phone?

7            (No response.)

8            THE COURT:  Anyone for Ms. Hadley?

9            (No response.)

10           THE COURT:  Anyone -- Tom Girardi?  Is anyone on the

11  line?

12           (No response.)

13           THE COURT:  Okay.  I'll dismiss it with prejudice.

14           MS. DANIEL:  Obviously, Your Honor, we would ask that

15  it be dismissed without prejudice.

16           THE COURT:  I understand.  I'll deny the motion and

17  dismiss it with prejudice.

18           MS. DANIEL:  George Irby is the next case.  That's also

19  Hodes Milman Liebeck -- the next two cases actually.

20           George Irby or Rhonda Martin?

21           THE COURT:  Anyone for either of those individuals?

22           (No response.)

23           THE COURT:  What's the background of this?

24           MS. MILLER:  For Mr. Irby the complaint was filed in

25  March of 2016.  The PFS was due on June 2nd of 2016.  The overdue

**FINAL TRANSCRIPT**

1  notice was sent in July.  To date we've had no communications

2  indicating that the plaintiff wishes to proceed.

3          THE COURT:  Anyone on the line for that individual?

4          (No response.)

09:47:08  5          THE COURT:  I'll dismiss it with prejudice.  I'll deny

6  the motion of the plaintiffs' committee to dismiss it without

7  prejudice, and I'll dismiss it with prejudice.

8          MS. MILLER:  The next one was Rhonda Martin.  That

9  complaint was filed in March of 2016.  It's the same dates.  The

09:47:21  10  PFS was due in June of 2016.  The notice was sent in July.  And

11  there's been no communication indicating the plaintiff wishes to

12  proceed with the litigation.

13          THE COURT:  Anyone for Ms. Martin?

14          (No response.)

09:47:33  15          MS. DANIEL:  The next case would be Julie --

16          THE COURT:  I'll dismiss that one with prejudice.  I'll

17  deny the motion of the plaintiffs' committee for without

18  prejudice and grant the motion to dismiss with prejudice.

19          MS. DANIEL:  Thank you, Your Honor.

09:47:45  20          The next case is Julie Stevens.  This is the Provost

21  Humphrey Law Firm.  Is anyone on the phone for this case?

22          (No response.)

23          MS. DANIEL:  They've actually done quite a bit of work

24  on this case, Your Honor.  I've been e-mailing with them quite a

09:48:02  25  bit.  They were granted additional time previously --

**FINAL TRANSCRIPT**

1    THE COURT:  All right.

2    MS. DANIEL:  -- and they haven't been able to --

3    THE COURT:  If they have made some progress in the

4  case, I'll pass it for 30 days and give them an opportunity to

5  get more information.

6    MS. DANIEL:  And the final case is Bryan Worrell.

7  Again it's Hodes Milman Liebeck, if anyone is on the line.

8    (No response.)

9    THE COURT:  What's the background of that one?

10    MS. MILLER:  That complaint was filed in March of 2016.

11  The plaintiff fact sheet was due in June of 2016.  The overdue

12  notice was sent in July.  There's been no indication that the

13  plaintiff wishes to proceed with the litigation.

14    THE COURT:  Anyone on the line for that individual?

15    (No response.)

16    THE COURT:  All right.  Hearing none, I'll dismiss it

17  with prejudice.  I'll deny the motion of plaintiffs' committee

18  without prejudice and grant the motion to dismiss with prejudice.

19    Is that it?

20    MS. MILLER:  Two more, Your Honor.

21    MS. DANIEL:  Two more on this.

22    Robin Arnoth.  Counsel is on the line for this case,

23  Your Honor, to discuss it.  This is -- these were previous

24  holdovers from the December 20th hearing.

25    THE COURT:  Who's on the line for that one?

**FINAL TRANSCRIPT**

1          MR. MUNOZ:  Yes, Your Honor.  Good Morning.  Jose Luis
2     Munoz for plaintiff Robin Arnoth.

3          THE COURT:  Okay, Jose.  What's the situation?

4          MR. MUNOZ:  Well, Your Honor, as to our current claim,
5     at the present time, we have no basis to oppose dismissal on this
6     one.

7          THE COURT:  All right.

8          MS. MILLER:  Your Honor, this is the fourth conference
9     the plaintiff has been in front of the Court.

10          THE COURT:  Yes.  I know you have done everything
11     possible.  Your firm has just been outstanding trying to protect
12     the individual.  You've done everything to reach out.  They just
13     don't wish to pursue the matter.  I'll grant the motion to
14     dismiss with prejudice.

15          MR. MUNOZ:  Thank you, Your Honor.

16          THE COURT:  Thank you.

17          MS. DANIEL:  The last case, Your Honor, is
18     Abbie Nappier.  They also are on the line I believe.

19          MR. GREEN:  Yes, Your Honor.  This is Donald Green with
20     Kennedy Hodges for plaintiff Abbie Nappier.

21          THE COURT:  Okay.  What's your position, Don?

22          MR. GREEN:  Well, we were waiting for additional
23     medical records that we ordered that the client had reported to
24     us as a location where he was treated around the time of the
25     incident, and we did receive those records and review those

**FINAL TRANSCRIPT**

1  records.  They did not contain the sample log that we were hoping
2  it would contain.

3       However, we did go back and look at the previous
4  records we do have.  In the medical records themselves, it shows
5  that Xarelto 20 milligram was an active medication about a month
6  and a half to two months prior to the date of incident.  This
7  medication listing also has the MDC code, and it suggests that it
8  possibly was a sample from this particular provider.  We don't
9  know if it was a 30-day supply or a 90-day supply.  We're not
10  sure.

11       MS. MILLER:  Your Honor, in this instance their records
12  from prior to the injury are contradictory.  One says that
13  Xarelto was active, one says that Xarelto was inactive.

14       But from the defendants' perspective, what's more
15  telling is the record from the hospitalization for the alleged
16  injuries say that the plaintiff was on Coumadin at that time.

17       THE COURT:  Well, you know, that's an issue of fact,
18  though, and that's a substantive issue.

19       If they're cooperating and if they're doing what they
20  can do to try to do it -- Donald, I'll pass this for 30 days.  If
21  you have any other information, give it.  If not, then we'll --
22  it's going to be a question of summary judgment on this issue.

23       MR. GREEN:  Your Honor, I just want to add, the defense
24  counsel is correct in that Xarelto does show to be inactive and
25  active in the same record, but it looks like they started it in

**FINAL TRANSCRIPT**

1  July of 2014 and then stopped it and then restarted it in
2  September of 2014.  The "active" is the more recent record that
3  we have, and that was about a month and a half or two months
4  prior to the incident.
5          Also, from my understanding, where it does say -- where
6  it was reported as Coumadin, that was reported by the plaintiff
7  himself because I don't think he was 100 percent sure on what
8  medication he was on at the time of that visit.  So that
9  wasn't -- you know, it wasn't confirmed that he used Coumadin,
10  that's what he reported, from my understanding.
11          THE COURT:  All right.  Have you given them the
12  information on the fact sheet yet?
13          MS. MILLER:  Yes, Your Honor.  The fact sheet says he
14  filled his Xarelto prescription at CVS.
15          THE COURT:  So what do you need?  You need the medical?
16          MS. MILLER:  The CVS records from where they are saying
17  he got it filled from would be --
18          THE COURT:  Yeah, let's send the records in as quickly
19  as you can.  And if I need to revisit this, I'll do it in
20  30 days.  I'll pass it for that period of time.
21          MS. MILLER:  Thank you, Your Honor.
22          THE COURT:  Whether or not the case is viable will have
23  to be looked at, but that's a different issue at this point.
24          MS. DANIEL:  Right, Your Honor.  And I think that we
25  would need some further explanation on it because it certainly is

**FINAL TRANSCRIPT**

1    not an issue for the fact sheet we find at this time.  The proof

2    of Xarelto is what was indicated in the order.

3            THE COURT:  Yeah.

4            MS. DANIEL:  So, Your Honor, next month we have a

5    total, actually, of 655 cases.  It appears 522 of those cases

6    would be poor deficiency issues so those will be a completely

7    different type of hearing because obviously it's a lot of this

8    stuff.  And 352 of those cases, actually, the defendant is

9    alleging there's some medical record deficiency on, so it will be

10   a lot of those types of additional arguments.

11           And 133 of that 655 are for fact sheet -- alleged fact

12   sheet not being served, and that would move rather quickly we

13   think, but the other 522 will certainly take some time.

14           THE COURT:  Okay.  Well, I appreciate the work that

15   both of you have given to the case.  We couldn't have done it

16   without you.  And this is the type of situation, housekeeping,

17   that we have to periodically do.  You have to clean the house

18   every once in a while, and that's what we're doing at this time.

19           I think it's good for the litigants.  I think it's good

20   for the people who are remaining in the case as well as the

21   people who have gotten out of the case.  There's no sense in

22   spending money, time, and energy if you haven't taken the drug or

23   you're not interested in cooperating with the litigation.

24           But it takes time and I'm aware of the work that both

25   of you all have done, and I appreciate all of your efforts.


**FINAL TRANSCRIPT**

1            Before we leave today, Jake, do you have any report on
2     the status of the case?
3            MS. MILLER:  Thank you, Your Honor.
4            MS. DANIEL:  Thank you, Your Honor.
5            THE COURT:  Thank you both.
6            MR. WOODY:  Just very briefly, Your Honor.
7            I can report that we have over 14,000 fact sheets
8     submitted so far, and that the pace of submission has kept pace
9     with the previous year.  We're getting about 563 a month.
10           I looked at the comparison between the bellwether pool
11    and the MDL as a whole, and the percentages have not changed,
12    despite all those new submissions.  So all the attributes of the
13    new people match the pool as a whole.
14           So there's nothing else to report.
15           THE COURT:  Okay.  That's fine.
16           Just on the broad picture, it looks like that in these
17    types of cases, it's -- if you have about 10,000 cases, it's
18    indicative of the type of litigation that you're dealing with.
19    And in beginning to do the centrality and to try to grab groups
20    and then do a discovery pool, you need a number of cases before
21    you can do that.  Some of my colleagues are just starting the
22    litigation and they're finding it difficult to make a group
23    designation with a couple hundred cases.  I think it takes a
24    little bit longer and a larger amount than that.
25           And my clerk's office tells me we have about

**FINAL TRANSCRIPT**

1    17,000-plus cases, but we're seeing, after 10,000, the type of
2    litigation.  The discovery pool has been keeping up pretty well
3    with the type of litigation so that we don't have to make any
4    course changes in it.
5              MR. WOODY:  Yes, Your Honor, that's correct.  Every
6    month that I've done this analysis for the last year or so it's
7    been really unchanged, so I think the demographics are pretty
8    much set.
9              THE COURT:  Yeah.  Okay.
10             MR. WOODY:  Thank you, Your Honor.
11             THE COURT:  All right.  Jim?
12             MR. IRWIN:  Thank you, Judge.
13             Could we raise another housekeeping matter about the
14   pending motions that are going to be filed?
15             THE COURT:  Sure.
16             MR. IRWIN:  I think John and Lenny can speak to that.
17             MR. OLINDE:  Your Honor, it's strictly an issue about
18   the -- we have some of the *Daubert* and dispositive motions today
19   that will be filed under seal.  We're trying to think of a way
20   perhaps to not burden the Court with a motion to file under seal
21   for each particular motion that's going to be filed, but maybe
22   that's the way we have to do it to alert the clerk.
23             But I just wanted to let the Court know that we will be
24   doing that.  We will have those motions to file under seal.
25             THE COURT:  Okay.  I'll ask Dean to get with the Clerk

**FINAL TRANSCRIPT**

1   and see whether or not we can come up with some kind of easier

2   way of doing it just as a blanket matter so that you don't have

3   to keep doing that.

4           MR. DAVIS:  I don't know that the entirety of the

5   motion is under seal, and that's why I mentioned to John that it

6   may be appropriate just to do an individual motion per -- I mean

7   an individual motion under seal per motion --

8           THE COURT:  Okay.  But think about it.  Let's work

9   with -- Dean will come up with something, I'm sure.

10          MR. DAVIS:  We'll talk to Dean.

11          MR. OLINDE:  Appreciate it, Your Honor.

12          THE COURT:  All right.  Thank you very much.

13          The next meetings, when are they?

14          THE LAW CLERK:  The next one is February 10th.

15          THE CASE MANAGER:  February 10th.

16          THE COURT:  February 10th is the next one.

17          And the following one is?

18          THE LAW CLERK:  March 23rd.

19          THE COURT:  The March 23rd is a big one.  We've got a

20  lot of motions March 23rd so it looks like it will be a whole

21  day.

22          THE CASE MANAGER:  The start time is 9:00.

23          THE COURT:  Starting time is 9:00.

24          Okay.  Thank you very much.  Court will stand in

25  recess.

**FINAL TRANSCRIPT**

(Proceedings adjourned.)

* * * *

CERTIFICATE

I hereby certify this 30th day of January, 2017, that the foregoing is, to the best of my ability and understanding, a true and correct transcript of the proceedings in the above-entitled matter.


/s/ Mary V. Thompson
_____
Official Court Reporter


**FINAL TRANSCRIPT**