UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | * * * | MDL 2592 |
| | * | SECTION L |
| THIS DOCUMENT RELATES TO: *ALL CASES* | * * | JUDGE ELDON E. FALLON |
| | * * | MAG. JUDGE NORTH |
| | * | |

* * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO PRECLUDE EXPERT TESTIMONY FROM SCOTT BONIOL, M.D. AND WILLIAM FRANKLIN PEACOCK, IV, MD, FACEP, ABOUT THE BENEFITS OF EARLIER DETECTIONS FROM ANTICOAGULANT-RELATED BLEEDING EVENTS**

**I.    INTRODUCTION**

The Janssen Defendants[1] have proffered the expert reports of Scott Boniol, M.D., and William Franklin Peacock IV, MD, FACEP, opining that anticoagulant-related bleeding events can be beneficial, and even life-saving, through earlier detection of underlying pathologies. Their opinions fail to meet any of the pillars of *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993), as they are unsupported by any scientific rigor, tests, standards controlling their operation, or general acceptance within the relevant scientific community. Additionally, their opinions are irrelevant and carry a great risk of undue prejudice. As such, this testimony should be precluded under Rules 702, 402, and 403 of the Federal Rules of Evidence.

---

[1] This includes Janssen Research & Development, LLC; Janssen Ortho, LLC; Janssen Pharmaceuticals, Inc.; Janssen Pharmaceutica, Inc.; and Ortho-McNeil-Janssen Pharmaceuticals, Inc.

## II. FACTUAL BACKGROUND

Two of Janssen's experts state in their reports that anticoagulant-related bleeding events can be beneficial, and even life-saving, through earlier detection of underlying pathologies:

> **Expert Report of Dr. Scott Boniol (Generic), at 18:** "By their nature of making blood 'thinner and, therefore, less likely to clot, these medicines can unmask an underlying anatomical or pathological process that is in fact responsible for the bleeding. For example, if a patient has an ulcer in their stomach, this disease process disrupts the normal lining of the stomach and results in bleeding. This happens early on in the disease process and before the ulcers become significantly detrimental to patients. When taking an anticoagulant, the bleeding becomes more pronounced and more obvious to the patient. In a strange twist, this observed bleeding allows for earlier detection of the underlying problem and allows it to be addressed earlier. In the case of undiagnosed cancers causing bleeding this can be a life-saving diagnosis."[2]

> **Expert Report of Dr. William Franklin Peacock, IV, MD, FACEP (Generic), at 9**: "It is important to clarify that anticoagulants in and of themselves do not cause bleeding; rather, they cause a patient to be slower to clot and thus can, and often do, unmask an underlying pathology or source of bleeding. This unmasking can be beneficial if it leads to earlier intervention and treatment of underlying pathologies, for example cancer, than would be possible had the source of bleeding not been unmasked or identified."[3]

None of the bellwether plaintiffs had an underlying pathology that was detected and treated earlier as a result of their anticoagulant-related bleeding events.

## III. ARGUMENT

### A. Testimony about the Alleged Benefits of Earlier Detections from Anticoagulant-Related Bleeding Events Should Be Precluded Under *Daubert.*

In the well-known trilogy of cases – *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993); *General Electric Co. v. Joiner,* 522 U.S. 136 (1997); and *Kumho Tire Co. v. Carmichael,* 526 U.S.

---

[2] Attached as Exhibit 1.

[3] Attached as Exhibit 2.

137 (1999) – the United States Supreme Court elucidated the standard of admissibility of expert testimony under Federal Rule of Evidence 702.

In *Daubert*, the Court emphasized the trial judge's role as gatekeeper in determining the admissibility of relevant and reliable expert testimony. *Daubert,* 509 U.S. at 589.  The trial court must determine whether the proffered expert's testimony has "a reliable basis in the knowledge and experience of [the relevant] discipline." *Id*. at 592.  The Court explained that this standard is "flexible," and identified four specific factors that a trial court may consider in determining whether to admit expert testimony:

1. whether the theory can be or has been tested;

2. whether the theory has been subjected to peer review and publication;

3. whether the theory has high known or potential rate of error, and whether there are standards controlling its operation; and

4. whether the theory is generally accepted within the relevant scientific community.

*Id*. at 592-94.

The *Joiner* Court added that a trial court need not accept testimony purely based on the *ipse dixit* of an expert's statement. *Joiner,* 522 U.S. at 146.  In other words, an expert's testimony that something is the case does not thereby make it fact.  As this Court has observed, there must not be "too great a gap" between the science and the opinion. *In re Propulsid Prods. Liab. Litig.*, 261 F. Supp. 2d 603, 616 (E.D. La. 2003) (*citing Joiner*, 522 U.S. at 146).

In *Kumho Tire*, the Court noted that the Daubert factors do not constitute an exhaustive set, and that the trial court may consider other factors depending on the nature of the evidence presented. *Kumho Tire*, 526 U.S. at 150-52.  The Court also noted that an expert's credentials alone are not sufficient to allow admission of that expert's testimony. *Id*. at 153.

Finally, as this Court has properly observed: "The party seeking to introduce the expert testimony bears the burden of demonstrating that the testimony is both relevant and reliable. The focus is not on the result or conclusion, but on the methodology." *In re Chinese Manufactured Drywall Prods. Liab. Litig.,* MDL No. 2047, 2010 WL 8368083, at *3 (E.D. La. Feb. 17, 2007) (internal citations omitted).

Federal Rule of Evidence 702 has been amended to incorporate these jurisprudential principles into a district judge's determination of expert admissibility, stating that:

> A witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> >
> > (b) the testimony is based on sufficient facts or data;
> >
> > (c) the testimony is the product of reliable principles and methods; and
> >
> > (d) the expert has reliably applied the principles and methods to the facts of the case.

As support for their opinions, both experts cite the same article by Andreas Clemens.[4] The results from that retrospective study[5] were far from conclusive. The study was designed to assess whether the higher incidence of gastrointestinal bleeding with NOACs was related to pre-existing malignancies, but the result was equivocal: "Anticoagulant-related GI bleeding *may* represent the unmasking of pre-existing malignancies leading to increased detection of GI cancer. This *may* be

---

[4] *See* Exhibit 1, at 18 n.30, citing Andreas Clemens, et al., *Anticoagulant-related gastrointestinal bleeding – could this facilitate early detection of benign or malignant gastrointestinal lesions?,* 46 Annals of Medicine 672 (2014) ("Clemens article"); Exhibit 2, at 9, citing Clemens article.

[5] Attached as Exhibit 3.

especially in the first month of treatment and *could* explain the numerically higher numbers of GI malignancies observed with NOACs."[6]  The study also noted the limitations of its observations: the retrospective nature of the study, and the possible double-counting of reported events in the database used.[7]

Neither expert's opinion is based on scientific, technical or other specialized knowledge, or on sufficient facts or data, or on reliable principles or methods.  Additionally, and most importantly, no principles or methods have been applied to the facts of this case, because none of the bellwether plaintiffs had an underlying pathology that was detected and treated as a result of their anticoagulant-related bleeding events.  As such, this testimony is unreliable, and should be precluded under Federal Rule of Evidence 702.

### B. Testimony About the Alleged Benefits of Earlier Detections from Anticoagulant-Related Bleeding Events Should Be Precluded as Irrelevant.

Only evidence that is relevant is admissible at trial.  This is a basic tenet of the law, clearly set forth in Federal Rule of Evidence 402, and is, without question, the first and foremost gatekeeper mechanism for determining what can and cannot be presented at trial.  Any evidence that is not relevant must be precluded.

It does not matter if the evidence is presented by a lay witness or an expert witness. Irrelevant evidence does not become relevant or admissible simply because it is presented by an expert.  The United States Supreme Court made that clear in issuing its opinion in *Daubert*:

> Rule 702 further requires that the evidence or testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue.'  This condition goes primarily to relevance.  'Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.'

---

[6] *Id.* at 1 (emphasis added).

[7] *Id.* at 6.

*Id.*, 509 U.S. at 591 (*quoting* 3 Weinstein & Berger 702-18).

Evidence is relevant if it has a tendency to make a fact of consequence to the litigation more or less probable than it would be without the evidence. Fed. R. Evid. 401. Relevant evidence need not be conclusive of an ultimate issue, nor make one proposition appear more or less probable, but it must at least advance the inquiry. *Thompson v. City of Chicago,* 472 F.3d 444, 453 (7th Cir. 2006) (citations omitted); *Kalo v. Comm'r,* No. 97-1416, 1998 U.S. App. LEXIS 12570, at *14 (6th Cir. June 9, 1998) (citation omitted).

However, even relevant evidence can be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. A trial court has broad discretion in assessing the probative value of evidence and determining if it is significantly outweighed by the risk of undue prejudice. *See Sprint v. Mendelsohn,* 552 U.S. 379, 384 (2008); *Verzwyvelt v. St. Paul Fire & Marine Ins. Co.,* 175 F. Supp. 2d 881, 888 (W.D. La. 2001), *citing United States v. Johnson,* 558 F.2d 744, 746 (5th Cir. 1977).

Relevant evidence should be excluded if its probative value is substantially outweighed by a danger of unfair prejudice. *United States v. Duncan,* 919 F.2d 981, 987 (5th Cir. 1990), *citing* Fed. R. Evid. 403. "The less probative a piece of evidence is, and thus the less the benefit to the truth-determining function of the jury of admitting it at trial, and the more trial time the presentation of the evidence would consume and the likelier the evidence would be to confuse the jurors by distracting them from more probative evidence, the stronger the argument for exclusion." *United States v. Seals,* 419 F.3d 600, 613 (7th Cir. 2005) (citations omitted).

The praise by Dr. Boniol and Dr. Peacock of anticoagulant-related bleeding events as a beneficial source for the early detection of underlying pathologies is not admissible, not only because it's unreliable, but also because none of the bellwether plaintiffs had an underlying pathology that was detected and treated early as a result of their bleeding events. As such, their opinions bear in no way on any facts pertinent to Plaintiffs or on any issue of consequence to the litigation, and, thus, they should be precluded as irrelevant under Federal Rule of Evidence 402.

Furthermore, these statements are designed to tout the alleged "benefits" of the drug, to make its harmful effect – bleeding – seem not only harmless, but helpful. This will confuse the issues, mislead the jury, and unfairly prejudice Plaintiffs. Consequently, even if the evidence were relevant, and it is not, it should be precluded under Rule 403.

## IV.  CONCLUSION

For these reasons, Plaintiffs respectfully request that Dr. Boniol and Dr. Peacock be precluded from testifying about the alleged benefits of earlier detections from anticoagulant-related bleeding events.

Dated:  February 10, 2017

Respectfully submitted,
*/s/ Leonard A. Davis*
Leonard A. Davis, Esq. (Bar No. 14190)
**HERMAN, HERMAN & KATZ, LLC**
820 O'Keefe Avenue
New Orleans, LA  70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Email:  ldavis@hhklawfirm.com

Gerald E. Meunier (Bar No. 9471)
**GAINSBURGH BENJAMIN DAVID MEUNIER & WARSHAUER, LLC**
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA  70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
Email:  gmeunier@gainsben.com

***Plaintiffs' Liaison Counsel***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 10, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs and Defendants by operation of the court's electronic filing system and served on all other plaintiff counsel via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre- Trial Order No. 17.

*/s/ Leonard A. Davis*
**LEONARD A. DAVIS**