UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | * * * | MDL 2592 |
| THIS DOCUMENT RELATES TO: *ALL CASES* | * * * * * * | SECTION L JUDGE ELDON E. FALLON MAG. JUDGE NORTH |

* * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF
MOTION TO PRECLUDE EXPERT TESTIMONY
FROM SCOTT BONIOL, M.D. ABOUT ATTORNEY ADVERTISING**

**I.   INTRODUCTION**

The Janssen Defendants[1] have proffered the expert report of Scott Boniol, M.D., a hematologist/oncologist who has made subjective and unscientific statements about the alleged effects of attorney advertising on patients, none of whom include any of the bellwether plaintiffs. Dr. Boniol's personal opinions about attorney advertising have no meaningful support in the medical literature and amount to nothing other than the *ipse dixit* of the witness. They fail to meet any of the pillars of *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993), as they are unsupported by any scientific rigor, tests, standards controlling their operation, or general acceptance within the relevant scientific community. His opinions also are irrelevant and carry a great risk of undue prejudice. As such, they should be precluded under Rules 702, 402 and 403 of the Federal Rules of Evidence.

---

[1] This includes Janssen Research & Development, LLC; Janssen Ortho, LLC; Janssen Pharmaceuticals, Inc.; Janssen Pharmaceutica, Inc.; and Ortho-McNeil-Janssen Pharmaceuticals, Inc.

## II. FACTUAL BACKGROUND

Dr. Boniol said in his report that he is concerned because patients have prematurely stopped taking rivaroxaban without consulting with their doctors, and have died, as a result of legal advertisements:

> Interestingly, in a case report published in Heart Rhythm, May 2016, 31 patients that prematurely stopped taking rivaroxaban without consulting [their] prescribing doctor because of seeing legal ads on TV were reviewed. Two of these patients died as a result of stopping their medication (6.4%). It is concerning as a doctor to see this kind of harm occurring.[2]

To support his opinion, Dr. Boniol references a report sponsored by Janssen during the pendency of this litigation. *See id.* at 8 n.13, citing Paul Burton and W. Frank Peacock, *A Medwatch review of reported events in patients who discontinued rivaroxaban (XARELTO) therapy in response to legal advertising,* Heart Rhythm Case Reports 2016; 2:248-49.[3] This report's connection to Janssen is explicit: "Funding source: Janssen Pharmaceuticals Inc. Conflicts: Dr. Burton works for Janssen Pharmaceuticals Inc., and owns stock in Johnson and Johnson, which markets rivaroxaban in the United States. Dr. Peacock is a paid consultant for Janssen Pharmaceuticals Inc."[4]

## III. ARGUMENT

### A. Testimony about the Alleged Effects of Attorney Advertising Should Be Precluded Under *Daubert.*

In the well-known trilogy of cases – *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993); *General Electric Co. v. Joiner,* 522 U.S. 136 (1997); and *Kumho Tire Co. v. Carmichael,* 526 U.S.

---

[2] *See* Expert Report of Dr. Scott Boniol (*Orr*) ("Boniol *Orr* Report), at 8 (attached as Exhibit 1).

[3] The Medwatch Review is attached as Exhibit 2.

[4] *Id.* at 1.

2

137 (1999) – the United States Supreme Court elucidated the standard of admissibility of expert testimony under Federal Rule of Evidence 702.

In *Daubert*, the Court emphasized the trial judge's role as gatekeeper in determining the admissibility of relevant and reliable expert testimony. *Daubert,* 509 U.S. at 589. The trial court must determine whether the proffered expert's testimony has "a reliable basis in the knowledge and experience of [the relevant] discipline." *Id*. at 592. The Court explained that this standard is "flexible," and identified four specific factors that a trial court may consider in determining whether to admit expert testimony:

1. whether the theory can be or has been tested;

2. whether the theory has been subjected to peer review and publication;

3. whether the theory has high known or potential rate of error, and whether there are standards controlling its operation; and

4. whether the theory is generally accepted within the relevant scientific community.

*Id*. at 592-94.

The *Joiner* Court added that a trial court need not accept testimony purely based on the *ipse dixit* of an expert's statement. *Joiner,* 522 U.S. at 146. In other words, an expert's testimony that something is the case does not thereby make it fact. As this Court has observed, there must not be "too great a gap" between the science and the expert's opinion. *In re Propulsid Prods. Liab. Litig.,* 261 F. Supp. 2d 603, 616 (E.D. La. 2003) (*citing Joiner*, 522 U.S. at 146).

In *Kumho Tire*, the Court noted that the *Daubert* factors do not constitute an exhaustive set, and that the trial court may consider other factors depending on the nature of the evidence presented. *Kumho Tire*, 526 U.S. at 150-52. The Court also noted that an expert's credentials alone are not sufficient to allow admission of that expert's testimony. *Id*. at 153.

Finally, as this Court has properly observed: "The party seeking to introduce the expert testimony bears the burden of demonstrating that the testimony is both relevant and reliable. The focus is not on the result or conclusion, but on the methodology." *In re Chinese Manufactured Drywall Prods. Liab. Litig.,* MDL No. 2047, 2010 WL 8368083, at *3 (E.D. La. Feb. 17, 2007) (internal citations omitted).

Federal Rule of Evidence 702 has been amended to incorporate these jurisprudential principles into a district judge's determination of expert admissibility, stating that:

> A witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

As noted above, Dr. Boniol's opinion about the alleged effect of attorney advertising is based on an article about MedWatch reports, published during the pendency of this litigation, which was funded by Janssen Pharmaceuticals, Inc., and written by a Janssen employee and a Janssen consultant.[5] Citing to one's client is suspect. Indeed, under United States Supreme Court jurisprudence, industry-funded studies are not reliable evidence. *See Exxon Shipping Co. v. Baker,* 554 U.S. 471, 501 n.17 (2008) ("Because this research was funded in part by Exxon, we decline to rely on it.").

---

[5] *See* Exhibit 2, at 1.

Further, the Medwatch case report cited by Dr. Boniol itself discloses the "significant" limitations of the report. According to the case report:

> There are obvious numerous and significant limitations to this report. These include the limited description of clinical characteristics of the individual cases within the MedWatch submissions, such as prior medical history, clinical risk (eg, CHADS2 score), the lack of ability to follow up on an individual case basis, the potential for bias in the reporting mechanism that cannot be controlled, and an unknown denominator of the "at-risk" population. Further, it is not known how many patients abruptly ceased rivaroxaban and did not experience a clinical event, nor is it known how many patients ceased their anticoagulation and suffered an adverse event that was not reported. Finally, while the language in these forms clearly states that patients viewed legal advertising and stopped their rivaroxaban, this cannot be definitively known.[6]

Consequently, Dr. Boniol's opinion about attorney advertising should be precluded because it meets none of the requirements for the admission of expert testimony under Federal Rule of Evidence 702. It is not based on scientific, technical or other specialized knowledge, or on sufficient facts or data, or on reliable principles or methods. It is based solely on subjective beliefs and unsupported speculation in a report funded by a defendant during the pendency of related litigation. His *ipse dixit* flies in the face of *Daubert,* which was designed with an "aim … to exclude expert testimony based merely on subjective belief or unsupported speculation." *See Burst v. Shell Oil Co.,* 120 F. Supp. 3d 547, 550 (E.D. La. 2015) (citation omitted).

### B. Testimony about the Alleged Effects of Attorney Advertising Should Be Precluded as Irrelevant.

Only evidence that is relevant is admissible at trial. This is a basic tenet of the law, clearly set forth in Federal Rule of Evidence 402, and is, without question, the first and foremost gatekeeper mechanism for determining what can and cannot be presented at trial.

---

[6] *See* Exhibit 2 at 1-2.

Any evidence that is not relevant must be precluded. It does not matter if the evidence is presented by a lay witness or an expert witness. In other words, irrelevant evidence does not become relevant or admissible simply because it is presented by an expert. Indeed, the United States Supreme Court made that clear in issuing its opinion in *Daubert*:

> Rule 702 further requires that the evidence or testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue.' This condition goes primarily to relevance. 'Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.'

*Id*., 509 U.S. at 591 (*quoting* 3 Weinstein & Berger 702-18).

Evidence is relevant if it has a tendency to make a fact of consequence to the litigation more or less probable than it would be without the evidence. Fed. R. Evid. 401. Relevant evidence need not be conclusive of an ultimate issue, nor make one proposition appear more or less probable, but it must at least advance the inquiry. *Thompson v. City of Chicago,* 472 F.3d 444, 453 (7th Cir. 2006) (citations omitted); *Kalo v. Comm'r,* No. 97-1416, 1998 U.S. App. LEXIS 12570, at *14 (6th Cir. June 9, 1998) (citation omitted).

However, even relevant evidence can be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. A trial court has broad discretion in assessing the probative value of evidence and determining if it is significantly outweighed by the risk of undue prejudice. *See Sprint v. Mendelsohn,* 552 U.S. 379, 384 (2008); *Verzwyvelt v. St. Paul Fire & Marine Ins. Co.,* 175 F. Supp. 2d 881, 888 (W.D. La. 2001), *citing United States v. Johnson,* 558 F.2d 744, 746 (5th Cir. 1977).

Relevant evidence should be excluded if its probative value is substantially outweighed by a danger of unfair prejudice. *United States v. Duncan,* 919 F.2d 981, 987 (5th Cir. 1990), *citing* Fed. R. Evid. 403. "The less probative a piece of evidence is, and thus the less the benefit to the truth-determining function of the jury of admitting it at trial, and the more trial time the presentation of the evidence would consume and the likelier the evidence would be to confuse the jurors by distracting them from more probative evidence, the stronger the argument for exclusion." *United States v. Seals,* 419 F.3d 600, 613 (7th Cir. 2005) (citations omitted).

Here, Dr. Boniol's opinions about the alleged effects of attorney advertising do not "fit" the facts of the litigation because none of the bellwether plaintiffs stopped using Xarelto prior to consulting with their doctors based on attorney advertising. These opinions bear in no way on any facts pertinent to Plaintiffs or on any issue of consequence to the litigation, and as such, they should be precluded as irrelevant under Federal Rule of Evidence 402.

Furthermore, these opinions are an attempt to portray some anonymous Plaintiff lawyers as the "bad guys," by discussing the alleged "bad" effects of attorneys exercising their constitutional right to free speech,[7] even though no one could reasonably claim that any bellwether plaintiff was so effected. This will confuse the issues to be tried, mislead the jury, and unfairly prejudice Plaintiffs. Consequently, even if the evidence were relevant, and it is not, it should be precluded under Federal Rule of Evidence 403.

---

[7] *See generally Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626 (1985) (reversing disciplinary sanction based on attorney's First Amendment right to use commercial speech to solicit clients); *In re R.M.J.,* 455 U.S. 191 (1982) (same); *In re Primus*, 436 U.S. 412 (1978) (same); *Bates v. State Bar of Ariz.* 433 U.S. 350 (1977) (same).

## IV. CONCLUSION

For these reasons, Plaintiffs respectfully request that Dr. Boniol be precluded from testifying about the alleged effects of attorney advertising.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: February 10, 2017 | */s/ Leonard A. Davis* |

Leonard A. Davis, Esq. (Bar No. 14190)
***HERMAN, HERMAN & KATZ, LLC***
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Email: ldavis@hhklawfirm.com

Gerald E. Meunier (Bar No. 9471)
***GAINSBURGH BENJAMIN DAVID MEUNIER & WARSHAUER, LLC***
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
Email: gmeunier@gainsben.com

*Plaintiffs' Liaison Counsel*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 10, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs and Defendants by operation of the court's electronic filing system and served on all other plaintiff counsel via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre- Trial Order No. 17.

*/s/ Leonard A. Davis*
**LEONARD A. DAVIS**

8