# EXHIBIT H

Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

---------------------------------
                                    )   MDL NO. 2692
IN RE: XARELTO (RIVAROXABAN)        )
PRODUCTS LIABILITY LITIGATION       )   SECTION "L"
                                    )
---------------------------------

This Document Relates to:
JOSEPH J. BOUDREAUX v JANSSEN
RESEARCH & DEVELOPMENT, et al
CASE NO. 2:14-CV-02720


  Videotaped deposition of KENNETH WONG, M.D.,
taken in the offices of Cardiovascular Institute
of the South, 102 Twin Oaks Drive, Raceland,
Louisiana 70394, on Monday, the 11th day of
July, 2016.


APPEARANCES:

  BEASLEY, ALLEN, CROW, METHVIN, PORTIS &
     MILES, P.C.
  (BY: ANDY D. BIRCHFIELD, JR., ESQ.)
  218 COMMERCE STREET
  POST OFFICE BOX 4160
  MONTGOMERY, ALABAMA  36104-4160

     ATTORNEYS FOR THE PLAINTIFFS


  KAYE SCHOLER, LLP
  (BY: JULIE B. du PONT, ESQ.)
  250 WEST 55TH STREET
  NEW YORK, NEW YORK  10019-9710

     ATTORNEYS FOR BAYER HEALTHCARE
     PHARMACEUTICALS AND BAYER PHARMA AG

Page 2

```
 1    APPEARANCES CONTINUED:

 2
         VENABLE, LLP
 3       (BY:  JOHN A MCCAULEY, ESQ)
         750 EAST PRATT STREET
 4       SUITE 900
         BALTIMORE, MARYLAND  21202
 5
           ATTORNEYS FOR JANSSEN PHARMACEUTICALS, INC.,
 6            JANSSEN RESEARCH & DEVELOPMENT, LLC,
           JANSSEN ORTHO, LLC AND JOHNSON and JOHNSON
 7

 8    VIDEOGRAPHER:

 9      MARK ANCALADE

10

11    REPORTED BY:

12      PAT KENNEDY QUINTINI
        CERTIFIED COURT REPORTER
13

14

15

16                    *   *   *

17                 EXAMINATION INDEX

18                                              PAGE

19

20    EXAMINATION BY MR. BIRCHFIELD: .............10

21    EXAMINATION BY MS. du PONT: ................59

22    EXAMINATION BY MR. McCAULEY: ..............149

23    EXAMINATION BY MR. BIRCHFIELD: ............174

24    EXAMINATION BY MS. du PONT: ...............183

25
```

1  EXAMINATION BY MS. du PONT:
2      Q.   When you prescribe medications, you
3  rely on the prescriber information, the medical
4  literature, your own judgment?
5      A.   Everything, yes.
6      Q.   Have you seen lawyer advertising for
7  Xarelto?
8      A.   Yes.
9      Q.   And have the lawyer ads impacted your
10 practice at all?
11     A.   No.  The impact to my practice is
12 that patients hear those advertising and it
13 takes a lot more to convince them that it's
14 safe, it's relatively safe.
15     Q.   What have some of your patients come
16 in, what are some of their concerns as a result
17 of the advertisement?
18     A.   Well, they see all this:  If you have
19 taken Xarelto before, contact us.
20     Q.   And what do you tell your patients
21 when they come in with those concerns?
22     A.   That it's misleading.  It makes it
23 sound like, you know, it's a terrible drug.  But
24 Coumadin is just as -- you know.  Everything --
25 it's an anticoagulant.  It's going to have an

1  increased risk of bleeding, but serves its
2  purpose and protects you from stroke. That's
3  what I tell them.
4      Q.  Do you counsel your patients not to
5  just stop taking their medications because they
6  are seeing these lawyer ads?
7      A.  That's the worst part. We have had
8  cases where people stroke out because they saw
9  those commercials and stop taking them. We have
10 had cases like that. And you wonder whether
11 there should be a law that goes back and says
12 you can't -- you know, it's negligent
13 advertising sometimes. You wonder if there is
14 such a thing --
15     Q.  So how many patients in your practice
16 have stopped their medications and had strokes?
17          MR. BIRCHFIELD:
18               Object to form.
19          THE WITNESS:
20               I have heard of a couple of
21      cases. We have had maybe two cases I have
22      heard so far.
23 EXAMINATION BY MS. du PONT:
24     Q.  Earlier Mr. Birchfield was asking, if
25 there was a simple blood test you could do for

Page 185

1           REPORTER'S CERTIFICATE
2
3       This certification is valid only for a
   transcript accompanied by my original signature
4  and original required seal on this page.
5
6       I, Pat Kennedy Quintini, Certified Court
   Reporter in and for the State of Louisiana, as
7  the officer before whom this testimony was
   taken, do hereby certify that KENNETH E. WONG,
8  M.D., after having been duly sworn by me upon
   authority of R.S. 37:2554, did testify as
9  hereinbefore set forth in the foregoing 184
   pages; that this testimony was reported by me in
10 the stenotype reporting method, was prepared and
   transcribed by me or under my personal direction
11 and supervision, and is a true and correct
   transcript to the best of my ability and
12 understanding; that the transcript has been
   prepared in compliance with transcript format
13 guidelines required by statute or by rules of
   the board, that I have acted in compliance with
14 the prohibition on contractual relationships, as
   defined by Louisiana Code of Civil Procedure
15 Article 1434 and in rules and advisory opinions
   of the board; that I am not related to counsel
16 or the parties herein, nor am I otherwise
   interested in the outcome of this matter.
17
18
19
20         _____
21         PAT KENNEDY QUINTINI
           CERTIFIED COURT REPORTER
22
23
24
25

# EXHIBIT I

```
 1                UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF LOUISIANA
 2

 3

      IN RE:  XARELTO           )   MDL No.:  2592
 4    (RIVAROXABAN) PRODUCTS     )   Section:  L
      LIABILITY LITIGATION       )   Judge Eldon E. Fallon
 5                                )   Mag. Judge North
                                  )
                                  )
 6                                )
                                  )
 7    JOSEPH ORR, JR., as         )
      lawful surviving            )   2:15-cv-03708
 8    spouse of SHARYN ORR        )

 9

10

11    PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

12

13

14       Videotaped Deposition of KIMBERLY ORR DeAGANO,

15    taken on Thursday, September 15, 2016, in the

16    office of Capitelli & Wicker, Inc., 1100 Poydras

17    Street, Suite 2950, New Orleans, Louisiana

18    70163-2950, commencing at 8:30 a.m.

19

20

21

22

23

      Reported by:
24    AURORA M. PERRIEN
      CERTIFIED COURT REPORTER
25    REGISTERED PROFESSIONAL REPORTER
```

```
 1                  A P P E A R A N C E S
 2   REPRESENTING JOSEPH ORR, JR., AS LAWFUL SURVIVING
     SPOUSE OF SHARYN ORR:
 3
            CAPITELLI & WICKER, INC.
 4          BY:  THOMAS C. WICKER, III, ESQ.
            1100 Poydras Street, Suite 2950
 5          New Orleans, Louisiana 70163-2950
            504.582.2425
 6          Tcw@capitelliandwicker.com
 7
 8   REPRESENTING BAYER HEALTHCARE PHARMACEUTICALS,
     INC., and BAYER PHARMA AG:
 9
            NELSON, MULLINS, RILEY & SCARBOROUGH, L.L.P.
10          BY:  ERIC A. PAINE, ESQ.
            1320 Main Street, 17th Floor
11          Columbia, South Carolina 29201
            803.255.5518
12          Eric.paine@nelsonmullins.com
13
14   REPRESENTING JANSSEN PHARMACEUTICALS, INC.,
     JANSSEN RESEARCH & DEVELOPMENT, L.L.C., JANSSEN
15   ORTHO, L.L.C.:
16
            IRWIN, FRITCHIE, URQUHART & MOORE, L.L.C.
17          BY:  JAMES B. IRWIN, ESQ., at times noted
            400 Poydras Street, Suite 2700
18          New Orleans, Louisiana 70130-3280
            504.310.2106
19          Jirwin@irwinllc.com
20          IRWIN, FRITCHIE, URQUHART & MOORE, L.L.C.
            BY:  MEERA U. SOSSAMON, ESQ.
21          400 Poydras Street, Suite 2700
            New Orleans, Louisiana 70130-3280
22          504.310.2106
            Msossamon@irwinllc.com
23
24
     ALSO PRESENT:
25
```

```
 1                 Object to form.
 2            THE WITNESS:
 3                 Untrue?  Not necessarily.  Possibly
 4       misleading.
 5  BY MR. PAINE:
 6       Q.   And what's your basis for believing that
 7  it's possibly misleading?
 8       A.   Because of the statistics or the cases
 9  that are coming out with issues with this drug
10  that -- when it says "rarely may lead to death," I
11  think that could be misleading and cause a patient
12  to not take it as seriously as is the potential
13  for death.
14       Q.   When you -- excuse me.
15            When you just referred to statistics and
16  issues coming out, what were you referring to?
17       A.   Seeing the commercials and knowing --
18  being aware that there are a lot of cases.  As to
19  what the numbers are, I do not know.  But there
20  are enough to -- for it to be advertised, which
21  means there's a lot of them.
22       Q.   And let me be very clear on that.  The
23  advertisements that you're referring to, are they
24  advertisements for lawsuits?
25       A.   Correct.
```

1    Q.   Are you aware of any information other
2    than lawyers' advertisements for lawsuits
3    indicating or showing that the statistics or the
4    issues coming out that you referred to are in fact
5    accurate or part -- a real problem?  And I --
6    that's probably a bad question.
7         When you said -- when you referred to the
8    statistics and the issues coming out, were you
9    referring to any source of information other than
10   the lawyer advertisements?
11   A.   I would say yes insomuch as -- obviously
12   when I pointed out the concern I had when she
13   switched to Xarelto, there was some information.
14   As to what that was, I do not recall.  So I know I
15   -- there was a concern prior to her passing and us
16   pursuing the lawsuit.
17   Q.   Can you be any more specific as to the
18   source of the statistics and issues that you
19   referred to?
20   A.   No.
21        Just that at this point there have to be
22   statistics with, you know, thousands if not more
23   of people having taken this drug and having an
24   array of issues from the drug.
25   Q.   But as far as what those statistics or

```
 1                    C E R T I F I C A T E
 2        This certification is valid only for
 3   a transcript accompanied by my original signature
 4   and original seal on this page.
 5        I, AURORA M. PERRIEN, Registered Professional
 6   Reporter, Certified Court Reporter, in and for the
 7   State of Louisiana, as the officer before whom
 8   this testimony was taken, do hereby certify that
 9   KIMBERLY ORR DeAGANO, after having been duly sworn
10   by me upon the authority of R.S. 37:2554, did
11   testify as hereinbefore set forth in the foregoing
12   257 pages; that this testimony was reported by me
13   in the stenotype reporting method, was prepared
14   and transcribed by me or under my personal
15   direction and supervision, and is a true and
16   correct transcript to the best of my ability and
17   understanding; that the transcript has been
18   prepared in compliance with transcript format
19   guidelines required by statute or by rules of the
20   board; and that I am informed about the complete
21   arrangement, financial or otherwise, with the
22   person or entity making arrangements for
23   deposition services; that I have acted in
24   compliance with the prohibition on contractual
25   relationships, as defined by Louisiana Code of
```

```
 1   Civil Procedure Article 1434 and in rules and
 2   advisory opinions of the board; that I have no
 3   actual knowledge of any prohibited employment or
 4   contractual relationship, direct or indirect,
 5   between a court reporting firm and any party
 6   litigant in this matter nor is there any such
 7   relationship between myself and a party litigant
 8   in this matter.  I am not related to counsel or to
 9   the parties herein, nor am I otherwise interested
10   in the outcome of this matter.
11
12
13
14
15                AURORA M. PERRIEN, CCR, RPR
16
17
18
19
20
21
22
23
24
25
```