# EXHIBIT-8

```
         IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
              FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
                       CIVIL TRIAL DIVISION

         -------------------------------
         IN RE: RISPERDAL® LITIGATION   :
         March Term, 2010, No. 296      :
         _____ :
         PHILLIP PLEDGER, by BENITA      :   APRIL TERM 2012
         PLEDGER, as Guardian of his     :
         Person and Conservator of his   :
         Estate,                         :
         Plaintiffs,                     :
                                         :
              v.                         :
                                         :
         JANSSEN PHARMACEUTICALS, INC.,  :
         JOHNSON & JOHNSON COMPANY,      :
         and Janssen Pharmaceutical      :
         Research and Development,       :
         L.L.C.                          :
         Defendants                      :   NO. 01997
         -------------------------------
```

                              -   -   -
                    WEDNESDAY, JANUARY 28, 2015

                           **VOLUME III**
                         **MORNING SESSION**
                              -   -   -

                          COURTROOM 425
                            CITY HALL
                      PHILADELPHIA, PENNSYLVANIA

                              -   -   -

           B E F O R E:   THE HONORABLE RAMI I. DJERASSI, J.,
                         and a Jury
                              -   -   -


             *REPORTED BY:*
                *JUDITH ANN ROMANO, CRR*
                *CERTIFIED REALTIME REPORTER*
                *OFFICIAL COURT REPORTER*

APPEARANCES:

SHELLER, P.C.
BY:  STEVEN SHELLER, ESQUIRE
CHRISTOPHER A. GOMEZ, Esquire
E-mail:  Sasheller@sheller.com
E-mail:  Cgomez@sheller.com
1528 Walnut Street, 4th Floor
Philadelphia, PA 19102
Phone: (215) 790-7300 Fax: (215) 546-0942
Counsel for Plaintiff(s)


KLINE & SPECTER, A Professional Corporation
BY:  THOMAS R. KLINE, Esquire
KRISTEN LOERCH SIPALA, Esquire
E-mail: Tom.Kline@KlineSpecter.com
E-mail: Kristen.Loerch@KlineSpecter.com
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
Phone: (215) 772-1000 Fax: (215) 772-1359
Counsel for Plaintiff(s)


ARNOLD & ITKIN, LLP
BY:  JASON A. ITKIN, ESQUIRE
E-mail: jitkin@arnolditkin.com
6009 Memorial Drive
Houston, Texas 77007
Phone: 713-222-3800 Fax: 713-222-3850
Counsel for Plaintiff(s)


DRINKER BIDDLE & REATH, LLP
BY:  KENNETH A. MURPHY, ESQUIRE
MELISSA A. GRAFF, ESQUIRE
One Logan Square, Suite 2000
Philadelphia, Pennsylvania 19103-6996
Phone: (215)988-2700  F:(215)988-2757
E-mail: kenneth.murphy@dbr.com
E-mail: melissa.graff@dbr.com
Counsel for Defendant Janssen Pharma.,
J&J, and Janssen Research & Development

APPEARANCES: (Continued)

                    WEIL, GOTSHAL & MANGES, LLP
                    BY:  DIANE P. SULLIVAN, ESQUIRE
                    ALLISON BROWN, ESQUIRE
                    (admitted pro hac vice)
                    301 Carnegie Center, Suite 303
                    Princeton, New Jersey 08540
                    T: 609-986-1100 F: 212-310-8007
                    E-mail: diane.sullivan@weil.com
                    E-mail: allison.brown@weil.com
                    Counsel for Defendant Janssen

*(Pledger v Janssen, et al.)*

I N D E X

WITNESS                 DIRECT      CROSS      RD      RC
DAVID A. KESSLER, MD
  By Mr. Kline........101,141
  By Ms. Sullivan.............131


EXHIBITS
Court-1..........................Page 33
Court-2..........................Page 59
*Plaintiff*:
KESS 001-126......................Page 141
KESS 127-143......................Page 142

1                    *(Pledger v Janssen, et al.)*

2                    (Hearing is reconvened at 9:45 a.m.

3            with all parties present.)

4                    THE COURT:  Good morning, everybody.

5            We had a nice slow day yesterday, real slow.

6                    We are still waiting for one of the

7            jurors, so I thought that I would like to go

8            over now the evidentiary procedure -- is Dr.

9            Kessler testifying today?

10                   MR. KLINE:  Yes.

11                   THE COURT:  I would like to go over the

12           evidentiary procedure and any evidentiary

13           issues that may arise that we may address now

14           rather than delay the actual testimony.

15                   MS. SULLIVAN:  Yes, Your Honor, thank

16           you.  Actually, two issues, Your Honor.  One

17           relates to the end of the day testimony on

18           Friday.  Dr. Mathisen talked about the fact

19           when he saw the 2006 label it didn't have a

20           black box, that's why he really didn't pay

21           attention to it.  And I would ask the Court

22           for instructions on that for two reasons.

23                   One, it's clear, and I think even the

24           plaintiffs would stipulate, a manufacturer

25           cannot add a black box, only the FDA can.

1                    *(Pledger v Janssen, et al.)*

2          Also, Mr. Kline made clear at the beginning of

3          this case, black box is not part of this case.

4                    And second, Your Honor, it raises the

5          issue of the citizen's petition, where the FDA

6          concluded that a black box is not appropriate

7          here.

8                    So I would ask the Court to give the

9          jurors an instruction that they should

10         disregard Dr. Mathisen's testimony about any

11         black box, a manufacturer cannot voluntarily

12         add a black box warning.

13                   THE COURT:  I am not going to do that,

14         counsel, that's a matter of evidence.  You put

15         on the evidence through the cross examination

16         of Dr. Kessler or through your own witnesses,

17         and the issue of what should have been or what

18         should have not been on a black box will be in

19         evidence.  At that point you proved the point

20         and we can look at what kind of jury

21         instructions are necessary at that time.

22                   MS. SULLIVAN:  Fair enough, Your Honor.

23         The second relates to the exhibits we got last

24         night on Dr. Kessler.  There are two

25         categories, Judge, and one category we do not

*(Pledger v Janssen, et al.)*

1

2    have an issue with.  Dr. Kessler is a

3    regulatory expert, so the things that the FDA

4    would have seen in terms of clinical study

5    reports, documents regarding adverse events,

6    study data internally that maybe the FDA

7    didn't get, but study data, the kind of things

8    that a regulatory expert can opine on as it

9    relates to the regulations, we don't have a

10   problem with.

11          What we do have a problem with is the

12   Plaintiff using Dr. Kessler as a mouthpiece

13   for all the company E-mails, business plans,

14   other documents that have nothing to do with a

15   regulatory expert's opinions.  They have

16   company witnesses they can use to get some of

17   this in.

18          Also, there is a lot of stuff in here

19   about drafts of manuscripts of the Findling

20   article.  This doctor, the testimony is clear

21   he has never seen the Findling article, there

22   is no evidence he has ever seen the Findling

23   article.  I don't mind him showing Dr. Kessler

24   the data from the Findling article, but all

25   these E-mails about draft manuscripts that the

1              *(Pledger v Janssen, et al.)*

2         testifying prescriber never saw.  And Dr.

3         Kessler is not an expert in manuscript

4         drafting or what should be in articles, he is

5         a regulatory expert.

6              So I have no problems with the study

7         data, I do have a problem with all this

8         internal E-mail, draft manuscripts, that are

9         untethered, Your Honor, in this case, not tied

10        to the prescriber.

11             Also, Your Honor, again, the core of

12        Dr. Kessler's warning opinion is that the

13        Regulations require that any serious hazard be

14        in the Warnings section of the label, and,

15        Your Honor, again, that is a matter governed

16        by FDA, and the FDA has concluded that Dr.

17        Kessler is wrong on that issue.  And I would

18        like, if the Court is not going to exclude

19        that opinion, and we have a brief coming to

20        the Court on that issue, I would like to be

21        able to cross-examine him on the FDA's

22        conclusion that gynecomastia does not

23        constitute a serious adverse event under the

24        Regulatory definitions in this case.  I think

25        that's fair cross if he is going to come in

1          *(Pledger v Janssen, et al.)*

2     and say it, that the FDA disagrees with him.

3          THE COURT:  Well, before we have a

4     response, let me just, so we can address it to

5     what the concerns are that I have.  We have

6     ruled preliminarily that many of the documents

7     that the doctor might have relied on are

8     inadmissible to be admitted just because they

9     were relied on by the doctor.  However,

10    obviously, they are admissible for other

11    purposes if they are admissible.

12         So the procedure that I want to go

13    through now is exactly what are the documents

14    that are going to be admitted through other

15    witnesses in this case that properly can, in

16    the interest of judicial economy, be used,

17    rather than having Dr. Kessler called back if

18    necessary.

19         So I really need to straighten out

20    those evidentiary issues.  That's the first

21    thing.

22         The second thing is in order to

23    understand these evidentiary issues, I really

24    do need to understand what exactly is Dr.

25    Kessler's opinion.

1                    *(Pledger v Janssen, et al.)*

2            I have looked at the report, it's not

3    clear to me exactly what is the core opinion

4    of Dr. Kessler as relevant to the issues in

5    this case.

6            So why don't we address that first

7    issue first, and then all the other types of

8    evidentiary issues are going to be related to

9    that core opinion.

10           MR. KLINE:  I am pleased to do so, Your

11   Honor, good morning.

12           THE COURT:  Good morning.

13           MR. KLINE:  I haven't had a chance to

14   say anything, but that's my official good

15   morning.

16           Your Honor, I have, knowing the Court's

17   rulings, knowing the pretrial rulings of Judge

18   New, and knowing the restriction of this case

19   as a failure-to-warn case -- Your Honor, I can

20   explain this very directly, I believe.

21           The case is limited to a failure to

22   warn case.  By the way, nearly everything

23   Ms. Sullivan says, nearly always, is some

24   adversarial position, not kind of a neutral

25   statement.

1                    *(Pledger v Janssen, et al.)*

2              MS. SULLIVAN:  Your Honor, that's not

3         necessary.

4              THE COURT:  Counsel, we are going to be

5         in here for a long haul, it looks like.

6         Obviously, I respect both of you, I trust at

7         this point you are respecting each other.  So

8         let's not get into all of that.  We don't need

9         the personal back and forth.

10             MR. KLINE:  It wasn't personal, it was

11        a statement, it was an observation,

12        respectfully.

13             And what we have here, and what I have

14        been saying ever since I walked in the

15        courtroom is that I intend to try a very

16        simple, direct case, in the most efficient

17        possible manner.  If I am allowed to just do

18        it, put in the documents that I am going to

19        tell the Court about, put them in through Dr.

20        Kessler -- and by the way, not those marketing

21        documents, I know what you said about them --

22        but documents he reviewed.  Then I will be

23        able to put him on, I will be able to put my

24        causation expert on, I am be able to put my

25        mom on, I will be able to call their sales

1          *(Pledger v Janssen, et al.)*

2          rep, and but for some pieces here and there, I

3          will be able to rest my case.

4                    Alternatively, we have an alternative

5          which they invite, which is a free-for-all,

6          and the free-for-all is I am not allowed to

7          simply put on the direct expert, like we have

8          been doing in cases forever, with experts that

9          review documents, render opinions and are

10         cross-examined.

11                   Now in this case, she tries to put the

12         rabbit in the hat.  There is always something

13         that is just not the case.  And this is what's

14         not the case:  He is not a "regulatory

15         expert."  Yes, he is an expert in regulation,

16         yes, he is that, but for purposes of this

17         case, he is an expert in pharmaceuticals, in

18         the overall pharmaceutical industry as it

19         relates to prescription drugs.  Therefore, he

20         is here and his report says so.

21                   While his report, Your Honor, says many

22         other things which were in the case before

23         Judge New's rulings -- which, by the way, we

24         are going to take up on appeal and we will see

25         if some day we are able to litigate those

```
1                    (Pledger v Janssen, et al.)

2          issues.  But for now, in front of Your Honor,

3          what we have is a failure to warn case.

4                  He rendered an opinion in his report

5          which I am going to ask him, frankly, I plan

6          to ask him up front, like I almost always do

7          with an expert, and then get all of his

8          opinions:  Do you have an opinion with

9          reasonable certainty as to whether they failed

10         to warn.

11                 That's the case.

12                 MS. SULLIVAN:  That's an ultimate

13         opinion.  It's not proper.

14                 MR. KLINE:  See, there we go.  Your

15         Honor, we are allowed -- if I may finish, if I

16         may finish my presentation.

17                 THE COURT:  Yes.  We are in no hurry,

18         the juror is not even here yet.  We don't

19         expect a snowstorm, a false report on a

20         snowstorm any time soon, hopefully.

21                 MR. KLINE:  Next time we will have

22         20 inches and they will open the place.

23                 Of course, he can render an ultimate

24         opinion because that's the purpose of an

25         expert, to guide the jury on whether -- with
```

1              *(Pledger v Janssen, et al.)*

2         his enormous background, they don't like him

3         but that's not the issue.

4              MS. SULLIVAN:  Never met him.

5              MR. KLINE:  Well, the things you said

6         to the jury were, frankly, outrageous, and we

7         are going to cover those, because she says all

8         kinds of things which are not true.  Like

9         yesterday --

10             MS. SULLIVAN:  Your Honor, here we go,

11        the snide comments, the personal attacks.

12             MR. KLINE:  Yesterday with the doctor

13        getting "extra warnings", she said to the

14        jury, the doctor got "extra warnings."

15             THE COURT:  Let me tell how saw I see

16        the case, because honestly --

17             MR. KLINE:  May I please tell the Court

18        what I plan to do?

19             THE COURT:  Absolutely.

20             MR. KLINE:  I plan to ask Dr. Kessler,

21        either in the beginning or the end, probably

22        up front, here is the basis of his opinion:

23        Have you reviewed -- there are literally, I

24        was told last night, how many millions of

25        documents that were produced?  Three million

1              *(Pledger v Janssen, et al.)*

2       documents I was told were produced.  This

3       thing has been culled down.  He reviewed

4       thousands and thousands of documents of which

5       they include internal E-mails, they include

6       study reports, they included published medical

7       literature, they include everything.

8            There is a story that he now knows.  I

9       am going to ask him, Your Honor, I am going to

10      go through with him.  I have hopefully

11      become -- meticulously may be an

12      overstatement, but I am very prepared.  I have

13      a tabbed binder, by the way, it has 30 tabs of

14      documents, some are full and I am going to

15      refer to one page.  I plan to efficiently go

16      through the documents, many of which they

17      don't like because they are very, very unkind

18      to this company.  And I am going to ask him

19      has he reviewed the documents.  Here is what

20      he is going to tell us in a nutshell:

21           I reviewed the study reports, I

22      reviewed the internal E-mails of the company,

23      I reviewed the drafts of the key data that

24      shows that there is gynecomastia, and,

25      frankly, Your Honor is going to learn a story

1                    *(Pledger v Janssen, et al.)*

2         which is flabbergasting, now they knew that it

3         increased the risk of gynecomastia and how

4         they tried to write it out of a study, how

5         they tried to massage the language and the

6         data.  And that was negligent failure to warn,

7         because they didn't tell this doctor 20 times.

8              THE COURT:  Mr. Kline, I am going to

9         tell you, I do understand your theory of the

10        case, I am going to put it on the record, all

11        of it, I understand your theory --

12             MR. KLINE:  In terms of what I am going

13        to do, I will simply march through documents

14        upon which he relied to form his ultimate

15        opinion.

16             THE COURT:  Well, that's the question.

17        That's the question, is whether you need to

18        march through documents and what documents of

19        those are admissible.  Because the Rules of

20        Evidence, as both of you well know, is, you

21        know, one can offer an opinion based on

22        inadmissible evidence and that's okay.  So a

23        lot of it has to do with, okay, study reports,

24        E-mails, you know, what's admissible, let's go

25        over it, and we will all know ahead of time

1              *(Pledger v Janssen, et al.)*

2         what the game is.

3              Because from my point of view, if the

4         E-mails, for example, are ultimately

5         admissible, then they are going to get in

6         ultimately anyway or I will order Dr. Kessler

7         to come back.

8              So it doesn't really matter to me, it

9         really has to do with what's admissible and

10        what's not, and from that point of view, well,

11        the chips fall where they fall.  And again,

12        ultimately, because none of us are rookies

13        here, Ms. Sullivan, you went to University of

14        Pennsylvania law.  The Rules of Evidence says

15        an opinion is not objectionable just because

16        it embraces an ultimate issue.  So I don't

17        really need to hear all of this side flack.

18             MS. SULLIVAN:  Your Honor, the issue is

19        Dr. Kessler instructing the jury on the law.

20             THE COURT:  Well, I say to you that I

21        am going to determine the law, and we have got

22        the books in front of us, and I have

23        experience myself.  I just don't need that

24        kind of side flack on what the law is.  Okay?

25        And, you know, kind of bickering and

1              *(Pledger v Janssen, et al.)*

2         snippering about stuff that is well settled.

3              What's well settled is the basis of an

4         opinion for an expert can be based even if the

5         stuff is inadmissible.  However, if it's

6         admissible, it can be shown to the jury or

7         read into the record during the witness'

8         testimony.  We all know that.

9              So therefore, the issue is what

10        specific documents are objectionable because

11        they are inadmissible and should not be raised

12        or referred to by Mr. Kline in his direct

13        examination of Dr. Kessler.

14             MS. SULLIVAN:  And, Your Honor, here is

15        the issue.  Some of them are the business

16        plans that Your Honor has already ruled on.

17             THE COURT:  Let's see them.

18             MR. KLINE:  I don't plan to use the

19        business plans.

20             THE COURT:  We are already determined

21        that the business plans -- I only saw -- where

22        are those documents so the record is clear?

23        We had marked those.  They are all subject to

24        review.  So let's have those things marked

25        once and for all.

1            *(Pledger v Janssen, et al.)*

2            MS. SULLIVAN:  Your Honor, this morning

3        from the plaintiffs we got a more limited set

4        of documents and it included all of these

5        business plans.  So Mr. Kline says he is not

6        using them but he told us this morning he was.

7        So I am raising it.

8            THE COURT:  They don't need to be

9        marked, if they are going to be marked we are

10       going to follow old-school procedure with this

11       witness and if necessary we will go through

12       document by document.  I am trying to save

13       time for all of us by narrowing the objections

14       before the jury comes out.

15           MS. SULLIVAN:  I appreciate that, Your

16       Honor.  The other relates to internal company

17       E-mails, which shouldn't come in through this

18       witness, and actually, there is case law

19       specifically relating to Dr. Kessler, that he

20       shouldn't be able to give plaintiff's closing

21       argument where they just dump in every piece

22       of evidence in the case, whether he has ever

23       seen it before, he was hired by the

24       plaintiffs, whether it's proper foundation for

25       an expert.  So what they want to do is put in

1              (*Pledger v Janssen, et al.*)

2        all the company E-mails through Dr. Kessler.

3              THE COURT:  Are they admissible or not?

4        In other words, is Mr. Kline able to have

5        these things admitted as a business record or

6        as some other exception out there or through

7        direct testimony?  If they are admissible,

8        they are going to come in, Ms. Sullivan, it's

9        as simple as that.

10             MS. SULLIVAN:  Your Honor, many should

11       not be admissible.

12             THE COURT:  Let's see them.

13             MS. SULLIVAN:  So here is the issue,

14       Your Honor.  There is two issues related to

15       the Findling study.  One is the data.  No

16       problem, that should be in the case.

17             The other relates to drafts of this

18       manuscript relating to a study the prescribing

19       doctor never saw.  And I submit they can't tie

20       that to this prescriber in any way.

21             THE COURT:  That's not E-mails.

22             MS. SULLIVAN:  It's E-mails talking

23       about the manuscripts.

24             MR. KLINE:  Your Honor, that doesn't

25       have to do with this physician.

1              *(Pledger v Janssen, et al.)*

2              THE COURT:  Why don't we do it this

3      way.  Do you have specific documents that you

4      know you intend to show?

5              MR. KLINE:  Sure.

6              THE COURT:  Let's see them.  Let's go

7      through them one by one.

8              MS. SULLIVAN:  Your Honor, there should

9      be some foundation.

10             THE COURT:  We are going to see what

11     these documents are, because I think it will

12     be saving time ultimately if we don't have to

13     do these one by one in front of the jury.

14             MR. KLINE:  Your Honor, respectfully,

15     number one, you will get better context.

16     Number two, I think we can go through it in

17     ten minutes.

18             THE COURT:  Let me tell you about the

19     context.  I think I understand the theory of

20     the case and I am going to state it on the

21     record.

22             As I understand the case now after

23     opening arguments and first witness, the

24     theory of the Plaintiff's case is that there

25     was a knowledge that was known to the drug

1                    *(Pledger v Janssen, et al.)*

2           company about the proclivity to cause

3           gynecomastia that was known since 2002, or

4           sometime before the 2006 label, and that that

5           particular knowledge was not made known to

6           prescribing doctors, off-label prescribing

7           doctors, that they should have known that and

8           they should have been told, and as a result,

9           the doctors were not in a position to properly

10          counsel treating parents of patients, and as a

11          result, the treating patient was unable to

12          make an informed decision, in fact, an

13          informed consent decision.  And as a result of

14          that, there was some damage caused.

15                   Did I get it right?

16                   MR. KLINE:  Your Honor, I should go

17          home.

18                   THE COURT:  Exactly.  So I understand

19          what your theory is.  I just need to see the

20          documents ahead of time.

21                   MR. KLINE:  I have a binder of

22          documents that go right to that, and I am

23          going to hand them to the Court.  It's what I

24          am going to prepare with him, as you would

25          expect.

1              *(Pledger v Janssen, et al.)*

2                   THE COURT:  So all of these, you intend

3          to show each one of these, and for the record,

4          there are about a thousand pages here --

5                   MR. KLINE:  No, for context they are

6          there.  There are essentially 25 kind of

7          modules, if you will.  Some of those documents

8          I have one page.  I know that if I put one

9          page in there, I know what's going to happen.

10         Someone is going to say, you don't have the

11         full document.

12                  So I can go through -- I can walk you

13         through my case.  I shouldn't have to, by the

14         way.

15                  THE COURT:  Let me find out,

16         procedurally -- I mean if the way to go is to

17         have other witnesses come in to authenticate

18         these documents, if that's what you want, I

19         can admit these conditionally to that

20         particular proof.

21                  MS. SULLIVAN:  Your Honor, many of

22         them, we submit, shouldn't come in through any

23         witness, they are clearly objectionable,

24         including the business plans Your Honor

25         outlined and draft manuscripts --

1                   *(Pledger v Janssen, et al.)*

2                   MR. KLINE:  I don't have any business

3          plans.

4                   MS. SULLIVAN:  -- and these draft

5          E-mails on a study this prescriber never saw.

6          Your Honor made clear this is a limited case,

7          and they want to dump in all of this evidence

8          that has nothing to do with this doctor.  He

9          made clear he didn't see the Findling article,

10         so what do these draft manuscripts have to do

11         with this case.

12                  The data they can show, they knew the

13         data, sure.  But what they are saying about

14         draft manuscripts of the study the prescriber

15         never saw is prejudicial and has nothing to do

16         with this case.

17                  THE COURT:  Let me ask you this.  If

18         Dr. Kessler were not testifying and you wanted

19         to show circumstantially to the jury, this is

20         a strong circumstantial case of covering up

21         some information, how would you do that?

22                  MR. KLINE:  I would do one of a number

23         of things.  First of all, this is an

24         interesting case.  The CEO of the company,

25         whose name is Gorsky, who by the way was

1              *(Pledger v Janssen, et al.)*

2         involved in all the issues down in the Federal

3         courthouse about this drug, he has knowledge,

4         and he is sitting in the jurisdiction.  They

5         have a lot of people up in Spring Mill in

6         Pennsylvania, who we can bring down here.

7         They have a lady in the court who is a current

8         person.  I can take another day or two.  Get

9         me a corporate representative and I will

10        cross-examine her for two days.

11             THE COURT:  That's the point.  I think

12        it's admissible because the witnesses are

13        available.

14             MR. KLINE:  Your Honor, the other thing

15        is the development of the case involves

16        reviewing E-mails.  I will tell you right now.

17        Everything I said to the jury is correct and

18        everything is based on E-mails, including the

19        words that I used.  Of course, those E-mails

20        are direct, they are authentic business

21        documents.

22             And by the way, we examined these

23        people, and if I wanted to play a boring case

24        I could designate all of that deposition

25        testimony, we would sit here and snooze for

1              *(Pledger v Janssen, et al.)*

2        two weeks listening to it.  We would all

3        snooze around and everybody would be happier.

4              THE COURT:  I would not be.

5              MR. KLINE:  I know that.  And neither

6        would I.  And what I --

7              THE COURT:  I don't think Ms. Sullivan

8        would really be happy if we had to formally

9        authenticate each one of these documents.

10             MR. KLINE:  Just responding to

11       Ms. Sullivan, as to this Findling article,

12       it's very interesting.  We discussed it

13       previously, the Court ruled.  There is no

14       ruling that doesn't get like re-brought up ten

15       times.

16             MS. SULLIVAN:  This is a different

17       issue here, this is drafts.

18             MR. KLINE:  It's the same issue.

19             MS. SULLIVAN:  It's a different issue.

20             MR. KLINE:  Okay, it's the same issue.

21       It's such a pleasure to be here today.

22             MS. SULLIVAN:  Here he goes, with the

23       snide comments.

24             MR. KLINE:  I just said it's a pleasure

25       to be here today.  And here is the problem.

1                   *(Pledger v Janssen, et al.)*

2          They had information, and it has nothing to do

3          with whether it went to this doctor, it had to

4          do with their knowledge in the company that

5          they didn't tell this doctor.  And they don't

6          like it.

7                   THE COURT:  I understand it, I really

8          do, but as far as your concerns are, if

9          something is inadmissible ultimately it will

10         be precluded.  Give me an example of something

11         you think should not be admitted during Dr.

12         Kessler's testimony.  Give me one document.

13         Let's look at it.

14                  MS. SULLIVAN:  Sure, Your Honor.  For

15         example, and I think Your Honor has already

16         ruled on the business plans.  Dr. Kessler is

17         not a mind-reading expert, so to put all these

18         company E-mails in and have him say, I believe

19         the company is saying this, knew this, and

20         that's my opinion in this case, interpreting

21         E-mails --

22                  THE COURT:  As far as I heard so far,

23         the proffer is that he is going -- is Dr.

24         Kessler in the room, by the way?

25                  MR. KLINE:  Yes, he is.

1              *(Pledger v Janssen, et al.)*

2              THE COURT:  I am going to ask that he

3       step out at this point.

4              MS. SULLIVAN:  Your Honor, it also goes

5       to the punitive issues --

6              THE COURT:  One second, please.

7              (Dr. Kessler exits the courtroom.)

8              MS. SULLIVAN:  And, Judge, we are just

9       trying to make sure we get a fair trial here.

10      There is no punitive claim, there is no fraud

11      claim.  He is going to get up there and say,

12      they intended, they were motivated to hide,

13      whatever; it has nothing to do with the issues

14      in this case, notice and failure to warn.

15             He can say, I see this data and under

16      the Regulations I believe they had a duty to

17      warn, if Your Honor permits that legal

18      opinion.  But to say, this is what they

19      intended and were motivated to hide, about

20      draft transcripts and that the prescriber

21      never saw the article, it's prejudicial, there

22      is no punitive claim, there is no fraud claim.

23      And Dr. Kessler has been known in other cases,

24      and there is law on this, to just go hog wild

25      about corporate intent and motivation.  A

1              *(Pledger v Janssen, et al.)*

2        dangerous witness in a case where there is

3        clear there is no punitives and fraud claim.

4              We are just trying to get a fair trial

5        here, Your Honor, and have some basic

6        evidentiary rules.  He shouldn't be the E-mail

7        reading expert.

8              MR. KLINE:  Let's not start to talk

9        about what other people have done in other

10        courtrooms.

11              THE COURT:  In this age in

12        transparency, everybody's views with courts

13        and others is well-known in the general

14        literature.  It doesn't really matter.  We are

15        in a new courtroom here.  As far as I'm

16        concerned, I am interested in a fair trial.  I

17        do understand your theory of the case.  I also

18        do know that fraud and intentional conduct is

19        not in the case.

20              MR. KLINE:  Your Honor, I said in the

21        beginning in response, respectfully, to the

22        Court, and I have just repeated to a barrage

23        from my learned opponent, and the barrage has

24        been, He is going to do this, he is going to

25        do that, he is going to do the other thing.

1          *(Pledger v Janssen, et al.)*

2          Does the Court believe, knowing that I

3     have been in this courthouse for 37 years,

4     that I am going to come and I am going to

5     elicit testimony that has to do with

6     pejorative terminology about this.

7          I am going to ask him questions that

8     relate to, for the proof that I have in the

9     case, and she would like to just knock the

10    documents out.

11         THE COURT:  I understand all of that.

12    I think all she is trying to do is get me

13    alerted to any potential of that.

14         MR. KLINE:  I would like to alert the

15    Court to a potential, too.

16         THE COURT:  All right.

17         MR. KLINE:  This is the kind of thing

18    that goes on.  She is not an alertive

19    potential, that I can tell you.  Here is what

20    is going on.  She said in her opening

21    speech -- this is something I have the

22    documents for -- she said in her opening

23    speech something about Dr. Kessler that's just

24    not true, and that she can't prove.  She can't

25    previous it because under Pennsylvania law.

1          *(Pledger v Janssen, et al.)*

2          The case law says that she is allowed to

3          cross-examine him, and I have the cases to

4          give to the Court -- I have them tabbed for

5          everybody because they are kind of basic --

6          and the case law says that he can be examined

7          on the money that he has made from me and

8          from, of course, Mr. Sheller.  And she goes

9          and she says he has made "millions of dollars

10         from plaintiffs' lawyers".  That is an ad

11         hominem personal attack, the kind of which the

12         Courts say does not go to pro-bias.  What goes

13         to pro-bias is how much money the man was paid

14         by me, which by the way was a lot.

15              MS. SULLIVAN:  That's not true.

16              MR. KLINE:  But it has nothing to do

17         with how much he has been paid by Mr. Lanier

18         in the Botox cases, or in the Actos cases, or

19         anything else.

20              THE COURT:  I will referee that the

21         best I can.  Right now we are talking about,

22         we are right now talking about the

23         admissibility of documents during Dr.

24         Kessler's direct examination.  Anything that

25         you try to cross-examine him on, obviously,

1              *(Pledger v Janssen, et al.)*

2         Ms. Sullivan, you open the door and it's gone.

3         But we are not talking about -- you know, give

4         me an example of a document that you think Dr.

5         Kessler shuted not be able to read into the

6         record or say something that he relied on.

7         And mind you, I am not going to permit Dr.

8         Kessler to read thousands of pages of

9         documents into the record.

10              MS. SULLIVAN:  And so, for example,

11         Your Honor, and again this goes to the intent

12         issue, there is an E-mail from and Gahan

13         Pandina dated October 28, 2002, I can hand it

14         up to the Court, it's sort of hearsay within

15         hearsay.  The folks from Helix, this is an

16         outside consulting firm who are helping us --

17              THE COURT:  What document is that?

18         Let's take a look at it.  I want to see an

19         example of what you are talking about so that

20         I have some idea of what your argument really

21         is.

22              MS. SULLIVAN:  This is Bates

23         number 3884282 --

24              MR. KLINE:  Let us just find it,

25         please, so we can have it in front of us,

1              *(Pledger v Janssen, et al.)*

2         kindly?

3              MS. SULLIVAN:  You gave it to us this

4         morning.

5              THE COURT:  It's clear that I am not

6         going to be able to do it one on one, so I

7         want to see what these are so we will be able

8         to make quicker decisions at the time that

9         they come up.

10             MS. SULLIVAN:  Judge, there is a series

11        of E-mails like this where they are going to

12        have Dr. Kessler speculate as to what

13        Mr. Pandina and others meant when they were

14        writing that E-mail, and that is not proper

15        testimony for this expert witness.

16             THE COURT:  Let's mark this now.  Do we

17        have any exhibits that are called Court-1,

18        have you started with those yet?  This is the

19        first Court document, Court-1.

20             (Court-1 is marked for identification.)

21             THE COURT:  This appears to be a

22        document from a Gahan Pandina, who I don't

23        know who that is, sent to Olga Mittelman, and

24        I don't know who that is, and it says, Are you

25        here.  What is this document and what is it

1              *(Pledger v Janssen, et al.)*

2         relevant to, Mr. Kline?

3              MR. KLINE:  Sure.  Number one, it is

4         one of many documents that Dr. Kessler

5         reviewed, and this is a document which is

6         written October 22, 2002, it is from two of

7         the key people involved in the development of

8         the pediatric indication for the drug.

9              Gahan Pandina was a psychologist, I

10        referred to him in my opening, he was running

11        point and he said many different things in his

12        E-mail.  This is words of his that he used,

13        this was his view, his interpretation of

14        things.

15             If you notice, and of course, I want

16        this in and they want it out, the man who is

17        running point on the whole project -- look at

18        line three.  I mentioned it in my opening,

19        line three -- and by the way, Pandina has been

20        deposed, and by the way, if I had to prove

21        this I simply would play Pandina or I'd

22        subpoena him.  And they have Pandina on the

23        witness list.

24             THE COURT:  I am well aware of that.

25             MR. KLINE:  And here is what he says.

1        *(Pledger v Janssen, et al.)*

2        By the way, Dr. Kessler doesn't have to

3        comment on what it is, I have to ask him did

4        you see this document, did you take it into

5        consideration.

6                 THE COURT:  And I assume you are going

7        to publish it up there on the screen, correct?

8                 MR. KLINE:  I plan to, yes.

9                 THE COURT:  So again, this Gahan

10       Pandina is a psychiatrist or psychologist for

11       Johnson & Johnson.

12                MR. KLINE:  Working for Janssen

13       Pharmaceuticals.

14                THE COURT:  And Olga Mittelman is who?

15                MR. KLINE:  Olga Mittelman is a

16       physician, she works on the prolactin project.

17                THE COURT:  For Johnson & Johnson?

18                MR. KLINE:  Yes.

19                THE COURT:  So this is an internal

20       document of Johnson & Johnson, an E-mail

21       conversation between two members --

22                MR. KLINE:  Two of the key people.

23                THE COURT:  Let me just read it to

24       myself, one second.

25                MR. KLINE:  And right before they went

1                    *(Pledger v Janssen, et al.)*

2          to a key advisory committee meeting.  You will

3          see what I am after.  I am after the third

4          sentence.

5                    THE COURT:  I know.

6                    MR. KLINE:  This is where they said we

7          have to decide if we want to be transparent or

8          translucent.

9                    MS. SULLIVAN:  What does that have to

10         do with a regulatory opinion?  This goes to

11         punitive damages kind of issues, motive and

12         intent, mind reading.  It's not proper for

13         this expert.

14                    MR. KLINE:  By the way, this is the

15         lead-in, this is the transition in part of the

16         story.  He has reviewed documents which he

17         believes are part of his understanding of what

18         the company did and what they said.  What they

19         did and what they said is at issue here.

20         Frankly, it's going to come in front of the

21         jury.  It's efficient to do it this way.

22                    THE COURT:  I think you are right, it

23         would ultimately come before the jury,

24         however, what is the fair way of doing it.

25         This is a document that on its face would

1            *(Pledger v Janssen, et al.)*

2        invite some cross examination to explain what

3        is meant by this particular document.

4            So if this comes in as a business

5        record, it may or may not, I am not sure

6        exactly under what theory this comes in on its

7        own.

8            MR. KLINE:  It's a business record,

9        it's out of their files.  It's between two of

10       the key people.  It's what the one said he was

11       thinking.  Not what Dr. Kessler was thinking.

12           THE COURT:  I haven't reviewed the

13       question of whether confidential E-mails

14       between each other are business records in the

15       classic sense.

16           MR. KLINE:  There is no confidentially

17       here, Judge.  This is a business E-mail

18       between two business colleagues on a business

19       computer.

20           THE COURT:  I would have to review

21       that.  It hasn't been presented to me in the

22       context of a pretrial motion as to whether

23       that comes in as a simple business record.  It

24       seems to me that a statement, an out-of-court

25       statement is different at a particular

1                    *(Pledger v Janssen, et al.)*

2          occasion is not a regular business kind of

3          procedure that would normally qualify under a

4          business record.

5                    So to me, this is the kind of document,

6          if I were you, Mr. Kline, I would bring in one

7          of those witnesses to get that information in.

8                    So that is something I would not permit

9          to be published to the jury.  It's certainly a

10         basis for an opinion, and if she wants to open

11         the door and challenge the opinion, then maybe

12         this thing would come in in some way.  But

13         just to publish it and have the jury read this

14         particular document on the screen without the

15         ability to essentially cross-examine this

16         individual who made the statement or

17         something, I don't think that is fair.  I

18         don't see that as a permitted use of this kind

19         of document.  It's not really a business

20         record.

21                   MS. SULLIVAN:  Thank you, Your Honor.

22                   MR. KLINE:  I will bring in every

23         individual, Your Honor, they are all between

24         here and New Jersey.  We will have 20 more

25         it's witnesses.

1              *(Pledger v Janssen, et al.)*

2              THE COURT:  That's fine.  I don't see

3      this as a business record.  I don't want to be

4      reversed on business records ground.  This is

5      not really a business record, this is not

6      custodial.  This is a conversation between two

7      parties, an out-of-court statement, not

8      subject to cross examination with available

9      witnesses.  It's not something that I am going

10     to stick the whole case on.

11             MS. SULLIVAN:  Thank you, Your Honor.

12     And, Your Honor, there is a stack of --

13             MR. KLINE:  Is that to say, because

14     this changes the whole way, if I may get

15     some --

16             THE COURT:  I have warned you, I told

17     you ahead of time that this is not going to

18     come in I said that, I said that at pretrial,

19     with Dr. Kessler.  If I were you I would have

20     Dr. Kessler come in to clean up the mess at

21     the end rather than at the beginning.  That's

22     what I would have done, but you are the trial

23     lawyer here.

24             MR. KLINE:  Well, I thought that

25     records -- first of all, almost every one of

1            *(Pledger v Janssen, et al.)*

2        these documents was talked about in a

3        deposition -- please indulge me for a

4        moment -- and there is no doubt as to this

5        Pandina having been examined about this and

6        Ms. Mittelman having been examined.  And I can

7        represent to the Court, and maybe the way I

8        can do this is a different way, which was

9        allowed yesterday.

10            If I may, I would like to ask Dr.

11       Kessler, as I did with the other doctor -- I

12       am not here to fight with your ruling but I

13       would like to find a way that I can try my

14       case efficiently.  And what I would like to do

15       is simply ask him, Dr. Kessler, I would like

16       you to assume that the evidence will show that

17       there is a E-mail saying this -- hear me

18       out -- and then I would like to say to him --

19       by the way, that seems to me to be a fair way

20       to do it -- and I would then like to say to

21       him, Is that something you took into

22       consideration in the formulation of your

23       opinion.

24            Nothing more.  Nothing more.  Because

25       it is part of the basis of his opinion.  And

1                    *(Pledger v Janssen, et al.)*

2          so to strip it out of his opinion doesn't seem

3          to be fair when I can represent to the Court,

4          and I will represent to the Court, and my

5          colleague Mr. Gomez, who knows this case

6          better than I think anyone in the country, has

7          been working on it for years, will tell you

8          that every one of these documents, the author

9          or the recipient has been deposed.

10               It's the same thing with those business

11         plans that Your Honor said you can't put them

12         in through Kessler but I might let them in

13         through something else.

14               So we are going to be busy between now

15         and the weekend cutting up a whole bunch of

16         deposition stuff, which I wasn't planning to

17         do, but if that's the way I am told to try the

18         case, okay.

19               But I can tell Your Honor, I can

20         represent to the Court when I tell him,

21         Assuming the evidence will show that, I can

22         also tell you that the E-mails all have been

23         the subject of deposition testimony.

24               These are not a blank slate.  This case

25         is well developed, 50 depositions were taken

1               *(Pledger v Janssen, et al.)*

2          by the Sheller firm, a yeoman's job, and we

3          are here talking about documents that we know

4          what they say and what they mean.  And what

5          they would like to do is strip the heart out

6          of it to begin with.

7               As to my strategy, I am putting him on

8          and when I put him on, my word, I think I

9          would want to lead off with my expert in this

10          case and go through the documents and go

11          through them serially.

12               There is no surprise here, there is no

13          prejudice here.  They know the documents, the

14          documents have been the subject of cross

15          examination.  And to the extent Your Honor

16          doesn't want them published, I would just ask

17          him to assume so at least I can have context

18          for the basis of his opinion, because when we

19          get to the appellate courts they are going to

20          challenge the basis of his opinion, and I at

21          least need to have in the case the fact that

22          he knows --

23               THE COURT:  Your procedure sounds

24          tempting if I knew ahead of time how many and

25          which ones.  But you presented me with a

1             *(Pledger v Janssen, et al.)*

2        binder of a thousand pages.  So I am very

3        vulnerable to that and I am not going to do

4        it.

5             MR. KLINE:  I didn't have a chance to

6        explain.

7             THE COURT:  If you told me which

8        documents and you are going to prove it, you

9        are going to call Pandina, you are going to

10       call somebody and introduce the trial dep by

11       stipulation, fine.  But I am handed here a

12       binder of a thousand pages, and I am taking

13       your word for it that you are proving

14       everything in this case.  I am not going to

15       keep a score card of what you proffered.

16            So in the end I would prefer that it

17       either be done the usual way or you let me

18       know ahead of time and counsel know ahead of

19       time which documents you are going to use as a

20       hypothetical as a basis for an opinion so we

21       are all on the same page and we all know

22       what's going on.

23            MR. KLINE:  It would only be the

24       E-mails.

25            THE COURT:  How many are there?

1                    *(Pledger v Janssen, et al.)*

2                MR. KLINE:  Maybe a half a dozen.  If

3          there are a thousand pages in there, and,

4          geez, I was trying to be inclusive.  This is a

5          few hours of testimony, not a few days, at

6          least I hope.  I think we could have had a

7          quarter of it on already.  And in there she

8          has picked out a handful of E-mails.  The

9          handful of E-mails I will know how to handle.

10               THE COURT:  Why don't you show us and

11         counsel the handful of E-mails that you wish

12         to use as a hypothetical for Dr. Kessler's

13         opinion and we can go on our merry way.

14         Otherwise, you are just not going to get it

15         done by just cherry-picking, using a phrase

16         that has been used here --

17               MR. KLINE:  Red flag.

18               THE COURT:  And then we are off in the

19         dark.  I would not rely on these as business

20         records, and so therefore, they have to be

21         admitted in some way, and for that to be done

22         you need witnesses.

23               You want to put Dr. Kessler on first,

24         fine.  Give us a hypo, get his opinions and

25         bring him back.  Or get your hypos by advance

1                    (Pledger v Janssen, et al.)

2          notice to all of us and we will look at it and

3          you will get your hypo.  But you can't have it

4          in kind of a nebulous form ahead of time in a

5          trial like this with the jury waiting.

6                    MR. KLINE:  So Your Honor knows, again,

7          just so I hope I have some reliability on

8          this, I don't know of a case that I have tried

9          forever that I wasn't allowed to show an

10         E-mail to a witness --

11                   THE COURT:  Show me the ones you intend

12         to do ahead of time.  Otherwise, we will have

13         to be interrupted multiple times during the

14         testimony of this case and I don't want that

15         if it can be avoided.

16                   MR. KLINE:  I will show it to you, but

17         I will tell you right now, it's going to be

18         the same issue.  You have already ruled

19         globally that an E-mail isn't a reliable

20         business record.

21                   THE COURT:  It depends on how it's

22         going to be proven.  If you are going to show

23         me that later on you are going to prove this

24         E-mail, fine.  I don't want to have to keep a

25         scoreboard of 14 different E-mails and whether

1                    *(Pledger v Janssen, et al.)*

2          or not you have proven it and then I would be

3          subject to reversal later on because a hypo

4          didn't match up.

5                    MS. SULLIVAN:  Your Honor, just because

6          the Plaintiff showed a document to a witness

7          in a deposition doesn't make it admissible.

8                    THE COURT:  I believe so.

9                    MR. KLINE:  Every one of these E-mails

10         -- Your Honor may or may not have picked this

11         up by now, there have been a lot of names

12         thrown around.  Pandina is the point guy when

13         it comes right down to it in this project.

14                   THE COURT:  Is he going to testify in

15         this case?

16                   MR. KLINE:  He is on their witness

17         list.

18                   THE COURT:  He is on yours.  I read

19         them both.  I am really distressed that many

20         of these matters have not been resolved

21         between the parties themselves as to which

22         witnesses are actually going to be used.  I am

23         assuming, and I read a hundred names, and I

24         have said that, you know, we are prepared to

25         try this case the old-fashioned way, so all of

1                    (Pledger v Janssen, et al.)

2            them can be called.  So I am just trying to

3            narrow the issues down so we can avoid that.

4            But if not, then, Hey, I got a panel of 15 and

5            we will make it through.

6                    MR. KLINE:  Appropos of that, I have

7            said now for days, I am willing to call the

8            treating doctor, Dr. Kessler, the detail man,

9            the mom, and the sales rep and rest my case.

10                   THE COURT:  I understand, but you want

11           to do through Dr. Kessler three weeks' worth

12           of testimony.  I understand that, too.

13                   MR. KLINE:  All of which are business

14           records.

15                   THE COURT:  I can't do it that way.  If

16           you want six E-mails, show me the six E-mails

17           you are going to proffer as a hypo, we will

18           look at them, make a ruling on them and you

19           will all know ahead of time what's permitted

20           or not permitted.

21                   Other types of documents, you are going

22           to have to get them in through the witnesses

23           themselves or some other accepted way of

24           evidentiary authentication, and you will also

25           have your proof ultimately, I suppose.

```
1                    (Pledger v Janssen, et al.)

2              MR. KLINE:  So are you saying that this

3         binder I am not going to be able to work

4         through with Dr. Kessler?

5              THE COURT:  I am saying you told me you

6         got six E-mails that you want to use out of

7         that binder, let's see them and use them.

8              MR. KLINE:  What about the rest of the

9         exhibits?

10             THE COURT:  I don't know.  What are

11        they?

12             MR. KLINE:  I have been told I can't

13        put their studies in, I have been told I can't

14        put in any of the documents --

15             THE COURT:  Whose documents?  They are

16        business records.

17             MS. SULLIVAN:  I don't have a problem

18        with them.

19             MR. KLINE:  She only has a problem with

20        the stuff that she doesn't like.

21             THE COURT:  She has a problem with the

22        implicating E-mails, and I understand that.

23        Let's see them.

24             MR. KLINE:  They are really good, Your

25        Honor, you are going to like them.
```

1              *(Pledger v Janssen, et al.)*

2              MS. SULLIVAN:  They are not that good,

3        Your Honor, and they are not proper,

4        especially through this witness.  Even the --

5        here is the problem even with the

6        hypothetical, Your Honor.  It's a witness who

7        wasn't on the E-mail, he is speculating what

8        it meant, and he is giving the jury his

9        mind-reading opinion --

10             THE COURT:  No, I am -- I just want to

11       see the E-mails.  Other than that, let's see

12       what you are talking about.  As to how an

13       expert in the pharmaceutical industry, if he

14       is qualified, interprets those particular

15       documents, that's for the expert to determine.

16       But I need to see what the basis is because

17       that's what the Plaintiff wants to use to show

18       to the jury and essentially save the Court and

19       everyone else weeks of testimony.

20             MS. SULLIVAN:  Your Honor, the problem

21       is they should do it the right way.

22             MR. KLINE:  Your Honor, I am not going

23       to ask him to interpret them.  She keeps

24       saying that.  She is not right about that.

25             MS. SULLIVAN:  Of course, he is.

1                    *(Pledger v Janssen, et al.)*

2              MR. KLINE:  How do you know what I am

3        going to ask him?

4              MS. SULLIVAN:  Because he wrote an

5        opinion based on them, so of course, you will.

6              THE COURT:  Counsel, why don't you both

7        sit down.  Let's see the six E-mails that we

8        have here, and, you know, it's interesting

9        that we are bogged down on these kind of

10       elementary aspects of evidentiary law.

11             Let's just see what the E-mails are

12       because, frankly, it's for the convenience of

13       Plaintiff that we are even having this

14       discussion because otherwise I would have

15       insisted that the documents be introduced the

16       right way, through the right witnesses, and

17       then have them used and published.  But if you

18       are telling me that you want it done this way

19       and it also favors judicial economy, then

20       let's look at the E-mails you wish to use

21       right now with Dr. Kessler and see when they

22       are going to be admitted at trial and we can

23       go our merry way and have the jury come in.

24             MS. SULLIVAN:  Your Honor, I am

25       interested in judicial economy and doing

1                    *(Pledger v Janssen, et al.)*

2          anything we can to expedite the trial but not

3          at the price of a fair trial for Johnson &

4          Johnson.

5                  THE COURT:  The record is being taken

6          here, I think this Court has been very

7          indulgent up to here, extremely indulgent.

8                  MS. SULLIVAN:  Your Honor, there is

9          another class of E-mails that relate to these

10         draft manuscripts of a study --

11                 THE COURT:  Right now I am still

12         waiting for those E-mails so we can address

13         those.  And then draft manuscripts, if one of

14         you shows me an example of a draft manuscript.

15                 MS. SULLIVAN:  Your Honor, there are a

16         bunch of E-mails on the draft manuscripts.  I

17         will be happy to hand up.

18                 MR. KLINE:  Why don't we show the

19         Court what we are going to proffer rather

20         than --

21                 THE COURT:  I am waiting for the six

22         E-mails.  You want to -- the E-mails anyway

23         you want to use as a hypo, essentially.

24                 MR. KLINE:  I would like Your Honor to

25         reconsider.  They are business records, they

1                    *(Pledger v Janssen, et al.)*

2            are on a business computer, a business --

3                    MS. SULLIVAN:  They are not business

4            records.

5                    THE COURT:  You want to use those as a

6            basis of an opinion and offer it through as a

7            hypothetical or --

8                    MR. KLINE:  If I had my druthers I

9            would say, Have you reviewed this document, is

10           it part of the materials you considered in

11           reaching your opinion, sir.

12                   THE COURT:  And I would say to you that

13           particular document, the contents can be given

14           to the jury and even published if they are

15           going to be admitted the right way at some

16           future point at this trial.  I need to know

17           ahead of time when that's going to be done and

18           by whom.  And then we go.

19                   MR. KLINE:  We will also flag one of

20           the draft documents -- actually, the page.

21           For example, on one tab, it's this thick, what

22           I do is I say, Doctor, is that Draft One.

23           Yes.  Would you turn to page 26 of it.  Is the

24           key information in that document?

25                   Then I go to Draft Three.  Is the key

1              *(Pledger v Janssen, et al.)*

2         information missing.

3              THE COURT:  I appreciate how that would

4         be done, I just want to know basically what

5         they are, who they will be admitted through

6         and when in this trial.  So I can keep score.

7         Otherwise, you are going to put in a thousand

8         different documents and I will never know

9         which hypo has ever been proven and then get

10        reversed at the end of the day.

11             MS. SULLIVAN:  And, Your Honor, just

12        looking at the E-mails that Mr. Gomez was kind

13        enough to tab, first, they are not business

14        records, they are random E-mails.  They are

15        not studies, they are not data, they are not

16        books and records.

17             THE COURT:  That's why we are going

18        through this process.

19             MR. KLINE:  Respectfully, they are

20        business records.  I think there is case law

21        on it.

22             THE COURT:  They are documents that

23        were generated through the business affairs of

24        Janssen.  Whether they are evidentiary

25        business records, I have preliminarily ruled

1              (Pledger v Janssen, et al.)

2         that they are not.

3              MR. KLINE:  We might want to look at

4         the case law to see whether an E-mail is a

5         business record on a business computer.

6              THE COURT:  It can be.

7              MR. KLINE:  It has to be.

8              MS. SULLIVAN:  The second issue there

9         side comments by others -- can I speak for

10        maybe a minute?  Some of them are talking

11        about comments doctors outside the company,

12        and then it looks like the bulk of them go to

13        this core issue, E-mails about these drafts of

14        manuscripts about this Findling article that

15        the prescribing doctor never saw.

16              And so, first, prejudicial, goes to

17        motive and intent and has nothing to do with

18        this case.

19              THE COURT:  Again, I wish you would

20        cease all that motive intent part because

21        motive and intent is relevant in many

22        circumstances to prove, let's say, in a

23        receiving stolen property case, you know, that

24        he should have known that it was stolen, and

25        the motive can come in as something relevant

1              (Pledger v Janssen, et al.)

2      to what he should have known.

3              MS. SULLIVAN:  They are trying to show

4      the intent to hide data, which is the punitive

5      and fraud claim.

6              THE COURT:  It's not a matter of intent

7      to hide data.  It's a matter of should they

8      have known it and should they have divulged

9      it.

10              MS. SULLIVAN:  They have the data, they

11      can show that.  What they can't show is drafts

12      about a manuscript that the prescriber never

13      saw.

14              THE COURT:  I don't have an evidentiary

15      question in front of me on that question, but

16      I have already stated that the distinction

17      that you are trying to make between a cause of

18      action that's been dismissed for fraud is not

19      the same situation as to probative proof for

20      this failure to warn case.  They are different

21      issues.  I don't agree with you that

22      everything has to be thrown out as to whether

23      or not there was an intention to hide versus a

24      should have known.  If there is an intention

25      to hide, that implies that they knowingly --

1               *(Pledger v Janssen, et al.)*

2       they should have known that something existed.

3       One can prove the intentional act and still

4       have enough evidence to show some kind of

5       knowing act, like they should have known.

6            Just because you prove intention

7       doesn't mean that it doesn't go to a lesser

8       standard.

9            MS. SULLIVAN:  But the way, Your Honor,

10      to prove that is, Here is the data, I had

11      notice, I should have warned, it was true.

12      Not to show what they are saying internally in

13      these E-mails about a data, about a manuscript

14      that the prescriber never saw.

15           THE COURT:  I am sorry, it's academic

16      at this point without a question.  But again,

17      Ms. Sullivan, I know that you have argued this

18      before, but think of it as a receiving stolen

19      property situation.  In that particular

20      situation, if a person intends, he intended to

21      take the stuff knowing that it was stolen,

22      that's one element of proof.  Another element

23      of proof of the same crime is that he should

24      have known that it was taken.  The same

25      evidence goes for both aspects of the case.

1              *(Pledger v Janssen, et al.)*

2              So in this particular situation, if the

3      Plaintiff can show that there was an intention

4      to hide, that also goes to whether they should

5      have known.

6              MS. SULLIVAN:  Your Honor, that's not

7      an element.  Respectfully, it may be an

8      element, I defer to Your Honor on the criminal

9      standards, but it's not an element of the

10     claim here.

11             THE COURT:  But it is probative, and

12     that's the bottom line with this.  It's

13     probative.  If they knew something and decided

14     not to reveal it, it's probative to the

15     question of whether or not they failed to warn

16     in a negligence sense.

17             I rest on that.  I am not going to

18     worry about that particular issue, and I

19     suggest that you stop on that, that just

20     because the cause of action in this case for

21     fraud and all of those have been dismissed by

22     summary judgment does not mean that evidence

23     of intentional conduct is inadmissible at this

24     trial if it goes to the probative proof that

25     they should have known that a particular type

1               (Pledger v Janssen, et al.)

2        of side effect existed.

3               MR. KLINE:  She won't stop on it.

4               THE COURT:  She might not, but I will

5        clarify that once and for all and certainly in

6        a jury instruction.

7               MS. SULLIVAN:  Your Honor,

8        respectfully, I think that injects punitive

9        damages.

10              THE COURT:  You made that particular

11       argument ad nauseam, Ms. Sullivan.  And by the

12       way, the punitive action in this case is

13       something that is not relevant here.  And I

14       will make that clear, if we ever get to jury

15       instructions on damages in this case.  I hope

16       we get that far without a mistrial.

17              It's clear that this case is about pain

18       and suffering and embarrassment and

19       humiliation.  It is not about punitive

20       damages.  I will certainly make that clear.

21              MS. SULLIVAN:  And, Your Honor, so the

22       issue for them is, and for us, is all of these

23       E-mails, which is the bulk of what they want

24       to show about a draft of a manuscript that the

25       prescriber never saw, we object to it, first

1              *(Pledger v Janssen, et al.)*

2         on foundation for Dr. Kessler, on relevance,

3         and on 403 grounds.

4              THE COURT:  You have made your record.

5         Do we have the documents that we are looking

6         at?  Let's see them.

7              I am looking at, first of all, a

8         document, we are now going to mark this as

9         Court-2.

10             (Court-2 is marked for identification.)

11             THE COURT:  January 24, 2002 -- that's

12        a different document.  From Gahan Pandina to

13        various members of the --

14             MR. KLINE:  It's the E-mail below that

15        we would likely focus on.  This was prior to

16        them having a meeting with all of their

17        people -- it was actually afterwards.  It's a

18        summary.  It's a classic business record, a

19        summary of what happened at a meeting by a

20        person that was there.

21             MS. SULLIVAN:  Filled with hearsay.

22             MR. KLINE:  Of course, it's filled with

23        hearsay.  It's somebody who was at a company

24        meeting who took down everything that was

25        there and their interpretation.

*(Pledger v Janssen, et al.)*

1          *(Pledger v Janssen, et al.)*

2          THE COURT:  All things being equal, how

3     would you produce this as far as a document

4     that's admissible?  Forget Dr. Kessler.  How

5     would this come in and it will be admitted?

6          MR. KLINE:  I would say, Dr. Kessler,

7     there was --

8          THE COURT:  No, not to Dr. Kessler.  I

9     need to know how this document would come into

10    evidence in this case without Dr. Kessler.

11         MR. KLINE:  This document was the

12    subject of examination in a discovery

13    deposition by Caren Binder.  I would need to

14    have her de bene esse live in the courtroom to

15    really cross-examine her.

16         THE COURT:  So you would present it

17    through Carin Binder.  So you are on notice if

18    there is an objection based on

19    inadmissibility, Caren Binder needs to be

20    available at this trial by Court order.

21         MS. SULLIVAN:  Your Honor, they have

22    deposed her, they can play her tape.

23         THE COURT:  Play her tape then.

24         MR. KLINE:  I would want her here.

25         MS. SULLIVAN:  She doesn't work for us,

1              *(Pledger v Janssen, et al.)*

2          she is retired.

3                  MR. KLINE:  We will find her.

4                  THE COURT:  If that's the ground of

5          inadmissibility, her unavailability, it comes

6          in.

7                  MS. SULLIVAN:  Your Honor, there is a

8          right way to put this evidence in --

9                  THE COURT:  We are going over what is

10         the right way in this courtroom for this case,

11         and what I am saying to you is if the

12         objection is Carin Binder is unavailable, then

13         it comes in.  Either she is here and

14         available --

15                 MS. SULLIVAN:  She is here, Your Honor,

16         because she was deposed fully by them.

17                 THE COURT:  Fine, then her testimony is

18         available.  And the required statement comes

19         in.  It's admitted.

20                 MS. SULLIVAN:  No, Your Honor, here is

21         the issue.  Just because she was deposed on

22         this, this is filled with comments from

23         outside the company doctors.  This goes to an

24         advisory board that was filled with experts

25         from outside the company.  So it's filled with

1              (Pledger v Janssen, et al.)

2         hearsay comments by people that don't work for

3         the company.  This shouldn't come in under

4         basic hearsay.

5              THE COURT:  That's overruled.  So we

6         are clear.

7              MR. KLINE:  Now, what I would ask --

8              THE COURT:  I want to know how these

9         things come in and we can go on our merry way.

10             MR. KLINE:  It is probative of the --

11             THE COURT:  No, I just want to know how

12        you authenticate it.

13             MR. KLINE:  The way it's authenticated

14        is through Caren Binder, who was deposed on

15        this document and who was asked questions

16        about this document.

17             MS. SULLIVAN:  Your Honor, why didn't

18        they play with first and it comes in the

19        proper way, with questions from us and

20        questions from them, instead of having Dr.

21        Kessler saying here is what it says, and we

22        don't have anything from the witness to

23        counter it.

24             THE COURT:  You can call Carin Binder

25        if you wish.

*(Pledger v Janssen, et al.)*

1

2          MR. KLINE:  I am told she is in Canada.

3          THE COURT:  We had a doctor come in

4      from Boston, she can come in.  Next.

5          MR. KLINE:  But I have her deposition

6      on this.

7          THE COURT:  I am not persuaded by that,

8      lack of sabotage, there is no sabotage here.

9      Number two.

10         MR. KLINE:  I am on Tab 15, I think.

11     And I hope we tabbed them all.

12         THE COURT:  I have another one here,

13     January 6, 2003, Carin Binder.  Is that the

14     one you are talking about?

15         MR. KLINE:  I was done with that one.

16     I am on Tab 15, at the very top, and in Tab 15

17     there is a document which is forwarding the

18     abstract, the draft, and the E-mail is from

19     Pandina to Magali.  And Pandina's deposition

20     was taken and he was asked about this

21     document -- he was not asked about this

22     document.  He is under their witness list,

23     they will either have to call him or I will

24     have to subpoena him and get him in here.  But

25     he is in the venue, he is in the jurisdiction.

1              *(Pledger v Janssen, et al.)*

2              THE COURT:  Who is this?

3              MR. KLINE:  Pandina.

4              MS. SULLIVAN:  Here is the problem,

5       Your Honor, it's a draft poster for a

6       conference that the prescribing doctor here

7       never saw.  Again, it's internal E-mails that

8       aren't business records, and they want Dr.

9       Kessler to come in and say Here is what it

10      means, without putting it in through the

11      proper witness.

12             MR. KLINE:  This is ridiculously crazy

13      this morning.

14             THE COURT:  Mr. Kline, I am going to

15      ask that you allow Ms. Sullivan and yourself

16      to finish your argument and then we will hear

17      the other one.

18             MR. KLINE:  I will wait for her to be

19      done, and then I will explain to the Court

20      what I was about to explain as to why I want

21      to use this document.

22             THE COURT:  Just for the record, we are

23      looking at an E-mail from Gahan Pandina dated

24      Wednesday, February 20, 2002 at 1:50 p.m. to

25      Reyes Harde Magali and the subject was "AACAP

1              *(Pledger v Janssen, et al.)*

2         prolactin abstract".

3              Now I understand that this is a written

4         internal document among the employees of

5         Janssen Pharmaceuticals, correct?

6              MS. SULLIVAN:  And, Your Honor, it

7         sounds like we are getting back to dumping in

8         all of these internal E-mails through a

9         regulatory expert so he can tell the jury what

10        was said and what was meant here.

11             THE COURT:  We are right now,

12        Ms. Sullivan, we are culling the record.  For

13        the record, I am looking at a binder that has

14        about a thousand pages, and we are going

15        through a number of E-mails that have been

16        proffered by Mr. Kline as the only documents

17        from this binder that relate to the E-mail

18        communications that he intends to use as a

19        basis of the opinion for his expert witness

20        Dr. Kessler.

21             So that's what we are doing,

22        Ms. Sullivan, and I don't need, please, for

23        you to keep on referring to matters that are

24        really -- they are argumentative.

25             MS. SULLIVAN:  Then, Your Honor, we

1              *(Pledger v Janssen, et al.)*

2         would object because there is no foundation

3         here through this witness, he is just

4         speculating on intent, and it relates to an

5         abstract that the prescribing doctor here

6         never saw.  It's not a business record --

7                   THE COURT:  On those grounds that is

8         overruled, subject to, how is this going to be

9         admitted?

10                  MR. KLINE:  Well, I can tell the Court

11        that this is the only one of the documents

12        that I believe that we have here that there

13        was no deposition testimony about.  I can tell

14        you that.  And we would need to have Pandina.

15                  I understand that he is their

16        witness -- and by the way, I have told them

17        who my witnesses are.  Can I find out who

18        their witnesses are?

19                  MS. SULLIVAN:  Mr. Kline, you know we

20        had only 24 hours --

21                  MR. KLINE:  Wait a minute.  That would

22        help me know, if I knew Pandina was going to

23        be in this courtroom I could confidently

24        either use this document or ask a

25        hypothetical.  I am entitled to know.

1              *(Pledger v Janssen, et al.)*

2              THE COURT:  If I were you I would give

3      up a single document and have it come in after

4      the subpoena so you don't take any chances.

5              MR. KLINE:  The reason this is an

6      important document -- I will get it in with

7      someone else -- so the Court knows --

8              THE COURT:  You don't have the direct

9      admissibility and you get into ruling on a

10     hypothetical because you can't somehow get

11     this witness in somehow, she has disappeared.

12             MR. KLINE:  He is not disappearing.  He

13     is like the company man, capital M, capital A,

14     capital N.  He is the company MAN.

15             THE COURT:  I would like you to get

16     this document in in a different way at a

17     different time.

18             MR. KLINE:  He is the company man.

19     Even the folks at Janssen like that, he is the

20     company man.

21             The next thing I would like to do with

22     this document, what they did is they had

23     prolactin-related side effects, and they

24     decided that doesn't sound so good, we are

25     going to call it "symptoms associated with".

1              *(Pledger v Janssen, et al.)*

2         This is that document.

3              THE COURT:  I understand the defense

4         argument.  I am just saying for our purposes,

5         this particular document, if you don't have a

6         direct method that you can assure me at this

7         time it's inadmissible.  I am not going to let

8         you do it.

9              MR. KLINE:  I am not going to play

10        loosey goosey with that one.

11             THE COURT:  We are not going to go

12        there.

13             MR. KLINE:  In Tab 16 -- I can probably

14        speed this up -- in Tab 16 I have tabbed an

15        E-mail, and at the bottom of the page the

16        Court will see there is an E-mail from Binder

17        to a bunch of people, a business E-mail

18        stating what the key message is going to be.

19        "Key message:  Prolactin rise is transient and

20        not related to side effects hypothetically

21        attributed to prolactin EPS or efficacy

22        response."

23             Anti-science, people making up the

24        result before it.  And this doctor, Dr.

25        Kessler knows it when he sees it.  Now, this

1              *(Pledger v Janssen, et al.)*

2       document -- as would anybody, by the way,

3       including lots of people sitting in this room

4       would understand that.

5              THE COURT:  How is this going to be

6       admitted?

7              MR. KLINE:  I am going to have to play

8       the Binder testimony, or Pandina.

9              THE COURT:  As long as, you know, this

10      is going to be covered it's admissible.

11             MR. KLINE:  I will play the

12      transcripts, or I will ask for Pandina to show

13      up in this courtroom.

14             THE COURT:  As long as you have

15      something it's already in the can, so to

16      speak, I am going to admit it.

17             MS. SULLIVAN:  Just so we are clear,

18      they gave us notice that they wanted us to

19      bring Dr. Pandina to this trial, and they told

20      us before the trial that they didn't want him.

21             THE COURT:  Dr. Pandina is somebody,

22      however, I read it out, Gahan Pandina I read

23      it out, both of you had him as a potential

24      witness.  That's not an issue.

25             MS. SULLIVAN:  He has a tape they could

1                    *(Pledger v Janssen, et al.)*

2          have played.

3                    THE COURT:  Whatever.  He was submitted

4          as a potential witness by both of you.

5                    MR. KLINE:  I have the deposition

6          transcript.  No sense fighting over whether I

7          can bring him now in or not.

8                    MS. SULLIVAN:  Here is the reason it

9          shouldn't be in, I respectfully submit.  This

10         is the series of documents that go to this

11         draft manuscript.  They have E-mails about

12         drafts and drafts of this manuscript about a

13         study the prescribing doctor never saw it, it

14         has nothing to do with this case.

15                   THE COURT:  Excuse me, I am just

16         looking at these E-mails.

17                   MS. SULLIVAN:  The E-mails are about

18         the draft manuscript.

19                   THE COURT:  The E-mails are about the

20         draft manuscript, it refers to it, but the

21         contents of the draft manuscript are not

22         before me.

23                   MS. SULLIVAN:  It's attached as well,

24         Your Honor.

25                   THE COURT:  At the moment we just --

1              *(Pledger v Janssen, et al.)*

2              MS. SULLIVAN:  It talks about and

3       attaches the draft manuscript.

4              MR. KLINE:  It attaches the draft

5       manuscript.

6              THE COURT:  So what you want to do is

7       use 16 -- was that an attachment as part of

8       this E-mail?

9              MR. KLINE:  I believe it was, yes.  He

10      says, here is the attached thing and says,

11      here is what the results should be.  And by

12      the way, then the draft document comes in

13      because it shows the knowledge of the company.

14      And it's the company's document.

15             MS. SULLIVAN:  No, Your Honor, the data

16      that underlies this manuscript, I have no

17      problem with them showing the expert that,

18      this eight to 12-week data that's the

19      centerpiece of their case.  But what people

20      are saying about the draft manuscript and the

21      draft manuscript itself that the prescriber

22      never saw has nothing to do with this case and

23      it's prejudicial.

24             THE COURT:  That's overruled.  That

25      comes in, the draft manuscript that was under

1              *(Pledger v Janssen, et al.)*

2          review by Janssen comes in.

3                  MS. SULLIVAN:  But it shouldn't come in

4          through Dr. Kessler, Your Honor.

5                  THE COURT:  It comes in through Dr.

6          Kessler as long as this particular document is

7          admissible through -- who is it going to be,

8          through the deposition you have?

9                  MR. KLINE:  Pandina and Binder

10         testified about it.

11                 THE COURT:  It comes in through Dr.

12         Kessler's testimony now.

13                 MS. SULLIVAN:  So is the Court going to

14         permit Dr. Kessler to talk about what he

15         thinks was meant by these documents?

16                 THE COURT:  Absolutely.

17                 MS. SULLIVAN:  We object.

18                 THE COURT:  He is going to give an

19         opinion.

20                 MS. SULLIVAN:  He is a mind reader

21         about --

22                 THE COURT:  I don't know what you

23         mean -- he is going to give an opinion as to

24         whether or not -- what is the opinion you are

25         proffering in relation to these documents?

1          *(Pledger v Janssen, et al.)*

2          MR. KLINE:  I am going to say, Doctor,

3      you have a wealth of information including the

4      FDA Chairman for six years, and did yo?u

5      review this document.  Is this document

6      something that you considered in your opinion?

7      What -- I am going to publish the document to

8      the jury, I am going to say, Doctor, what is

9      being said there as you understood?

10          THE COURT:  I didn't ask you that, Mr.

11      Kline, what is the opinion that this document

12      is the basis of or contributing --

13          MR. KLINE:  It's one document of this

14      large number of documents.

15          THE COURT:  Right, and what is the

16      overall opinion?

17          MR. KLINE:  His overall opinion, as I

18      said in the very beginning, is that Janssen

19      Pharmaceuticals provided an inadequate warning

20      as to the risk of prolactin increase and as to

21      gynecomastia in children.

22          THE COURT:  That's it?  That's the

23      opinion?

24          MR. KLINE:  That's the ultimate

25      opinion.

1              *(Pledger v Janssen, et al.)*

2              THE COURT:  So it's admissible.

3      Certainly subject to the way this is used, but

4      if it's probative to that particular opinion

5      it's going to be admitted.

6              MS. SULLIVAN:  Your Honor, he can give

7      that opinion without using these hearsay

8      documents that are untethered to this case.

9              THE COURT:  If they are admissible,

10     they are admissible.

11             MS. SULLIVAN:  I understand the Court's

12     ruling.

13             THE COURT:  All right, thank you.  Are

14     there anymore of these?

15             MR. KLINE:  They are all in the same

16     category.

17             THE COURT:  Right now we are going one

18     by one and that's it.  If something is not

19     given to me now, it's can't be used as a hypo,

20     it can't be shown.

21             MR. KLINE:  I am going to show you.

22             THE COURT:  Next one.

23             MR. KLINE:  The next one is right under

24     Tab 20 and then I flagged it with a big

25     post-it.  This is an E-mail of Binder to a

1              *(Pledger v Janssen, et al.)*

2         group of people regarding the prolactin

3         manuscript.

4              THE COURT:  That's from Carin Binder to

5         Gahan Pandina and others.  It's also a Janssen

6         document on the subject of "latest prolactin

7         manuscript".  Is that the one you are talking

8         about?

9              MR. KLINE:  Yes.  And she was deposed

10        about this, she is the Director of Medical

11        Affairs, although she is an MBA, but that's

12        the title they gave her.

13             THE COURT:  This is the one that says

14        the revision now included a nauseating amount

15        of info on SHAP?

16             MR. KLINE:  No, she is not nauseated

17        yet, she kind of gets there.

18             THE COURT:  This one says, The revision

19        now included a nauseating amount of info on

20        SHAP, which is another name for some other

21        kind of this condition?

22             MR. KLINE:  Hold on a second.  This is

23        Tab 20th and it's the E-mail that says at the

24        very bottom of page one, Bates number 170.  It

25        says, "Secondly, the U.S. group recommended

1              *(Pledger v Janssen, et al.)*

2         that the manuscript in all cases of

3         gynecomastia specifically state whether the

4         prolactin levels were normal or elevated, as

5         well as state the new rates of gynecomastia as

6         identified by the Endos.  They feel applying

7         the Endo position of gynecomastia in boys of

8         puberty not being checked without listing all

9         gynecomastia was -- are you ready for this

10        one? -- "hiding data."  And of course, they

11        don't like that.

12             THE COURT:  For the record, we are now

13        looking at what is Tab 20.  I misstated the

14        document we were looking at, strike that.  We

15        are looking at a document from Gahan Pandina

16        dated Monday, November 18, 2002 --

17             MR. KLINE:  I am looking at the E-mail

18        underneath that.  The one that is from

19        Binder --

20             THE COURT:  Really the second one, from

21        Carin Binder, November 8, 2002, 11:14 AM, to

22        Vincente Nys, and that's 11:14 a.m.  Is that

23        the one you are talking about?

24             MR. KLINE:  Yes.  It's what we call it

25        the "hiding data."

1          *(Pledger v Janssen, et al.)*

2                THE COURT:  How is that admitted?

3                MR. KLINE:  Through the testimony of

4          Binder.  We will have to play the testimony of

5          Ms. Binder, or Pandina.  They were both

6          questioned about it by us in their discovery

7          depositions.

8                MS. SULLIVAN:  And, Your Honor, in

9          addition to the reasons that have already been

10         stated on the record related to this draft

11         manuscript that the prescriber never saw, this

12         is a hearsay statement from people outside the

13         company, the advisory board outside the

14         company.  So it's not a business record.  The

15         hiding data is a statement not from Janssen

16         but from somebody outside the company, highly

17         prejudicial --

18               THE COURT:  I understand that.  That's

19         overruled.  This goes toward the probative

20         nature of what they should have known or did

21         know and what they did with the information.

22         Next one.

23               MR. KLINE:  The next one is the

24         nauseating -- the E-mail, it's the nauseating

25         E-mail.  It's at Tab 21.  It is from Binder to

1               *(Pledger v Janssen, et al.)*

2      Pandina.  Mr. Gomez, were they both asked

3      about it when you deposed them?  Yes, they

4      were asked by one of the lawyers from the

5      Plaintiffs.

6           THE COURT:  That's the one I read

7      earlier, for the record, again, from Carin

8      Binder, dated Thursday, November 21st, 2002,

9      at 10:01 PM, to Gahan Pandina and others.

10     That's the one it has in the second sentence,

11     "The revision how includes a nauseating amount

12     of info on SHAP, specifically gynecomastia,

13     etc.  That's admitted.  If you can admit it

14     through Binder that will be admissible.

15          MS. SULLIVAN:  Your Honor, just because

16     it's admitted through a proper witness doesn't

17     mean this expert -- experts rely on data.

18     This guy is going to come in and tell the jury

19     this is what their E-mails mean, and that's

20     completely improper.

21          THE COURT:  He is going to be able to

22     testify that he based his opinion that Janssen

23     did not meet its duty to give an adequate

24     warning and he is using this as a basis for an

25     opinion.  That's admissible.  And I don't have

1                    *(Pledger v Janssen, et al.)*

2           a problem with it.  What's the next one?

3                    MR. KLINE:  For the record, footnote:

4           He also reviewed the deposition testimony of

5           these people.

6                    THE COURT:  I understand that, also.

7                    MR. KLINE:  So it's not a raw --

8                    THE COURT:  I understand that.  The

9           defense needs to make a record and they are.

10          Next one.

11                   MS. SULLIVAN:  Your Honor, one of the

12          things I would object, so if you are going to

13          permit Mr. Kline over objection to publish

14          these E-mails that he didn't write, he wasn't

15          on, he shouldn't be able to say what he thinks

16          they mean or what they mean.  I mean, you

17          know, the words are there, they will be up

18          there, but he shouldn't be able to say, And

19          what they are saying here is.  He has no idea,

20          he didn't write them.

21                   THE COURT:  That's why we have

22          cross-examination and able counsel will be

23          able to contradict what he says.  Able counsel

24          should be able to do that.  Next.

25                   MR. KLINE:  The next one is an E-mail

1           (Pledger v Janssen, et al.)

2       in Tab 22, and it is December -- it's the top

3       E-mail, December 3, 2002, and once again, it

4       is from Pandina.  I am assured by Mr. Gomez --

5       notice the way that I am looking to put him

6       into this -- that the E-mail was the subject

7       of deposition testimony and he is saying

8       that's correct.  And that E-mail is the one

9       that says, among other things, the issue of

10      prolactin and SHAP is obviously a charged one.

11              THE COURT:  So we are looking at an

12      original message from Gahan Pandina, sent on

13      Thursday, December 13, 2002, to Carin Binder

14      and others, Subject:  Latest prolactin

15      manuscript.  It says, "Dear Carin and Team,"

16      and it has the phrase, "The issue of prolactin

17      and SHAP is obviously a charged one."  Is that

18      it?

19              MR. KLINE:  Yes.

20              THE COURT:  How is this going to be

21      admitted?

22              MR. KLINE:  This, again, like all of

23      the others, was the subject of inquiry by

24      Plaintiff's counsel to both Carin Binder as

25      well as I believe Pandina, so we would pick

1            *(Pledger v Janssen, et al.)*

2        one or the other at deposition at which both

3        parties are represented.

4            THE COURT:  If it is not introduced

5        properly, the whole case can fall down on that

6        little point.

7            MR. KLINE:  When you say admitted

8        properly, I plan to play those segments of the

9        deposition where they were asked about that in

10        those depositions.

11            THE COURT:  That's fine, as long as the

12        jury gets to hear that these documents aren't

13        pulled out of thin air, that's fine with me.

14            MS. SULLIVAN:  Your Honor, this is a

15        Regulatory expert, not someone who is supposed

16        to interpreting E-mails.  This had been

17        precluded by other courts, as Dr. Kessler just

18        giving a closing argument for Plaintiffs,

19        instead of talking about data, talking about

20        intent and E-mails, and we object.

21            THE COURT:  I do understand the

22        objection.  But we are -- we have one more

23        document?

24            I, of course, do reserve for the Court

25        the discretion on exactly what the commentary

1                    *(Pledger v Janssen, et al.)*

2          would be by the witness ultimately.  It may be

3          preferable for all concerned that only the

4          contents of this document be shown and read by

5          the witness and not commented on.  That may be

6          a point well taken.

7                    MR. KLINE:  There is one more, and the

8          one more is an E-mail dated --

9                    THE COURT:  What's the other one?

10                   MR. KLINE:  It's another E-mail, you

11         know, they have the study they don't like by

12         Findling.  And they talk about the author.  It

13         says, "Findling is okay, but I find he doesn't

14         stand up firmly for his convictions and tends

15         to be swayed.  On the other hand -- they are

16         saying internally -- "he will do/say whatever

17         you want him to.  Your choice, Pam."

18                   That's when they are picking the

19         author.  And that's going to be part of the

20         case because it demonstrates their negligent

21         failure to warn.

22                   THE COURT:  I will hear argument on

23         this.  It sounds to me like it's kind of a

24         backdoor expert argument about a learned

25         treatise.

1              *(Pledger v Janssen, et al.)*

2              MR. KLINE:  No, it doesn't have to do

3      with a learned treaties.  Here is what it has

4      to do with.  We believe it's a pivotal

5      document in the case, if I need to call

6      Pandina I will question him about it.  What

7      they have is a study that they published, that

8      they massaged five different drafts.  They

9      never warned what they knew about and they

10     took out and essentially hid the key finding.

11             Along the way, they needed to get the

12     blessing of the guy who they chose to be the

13     key author.  This is their conduct, their

14     view.

15             MS. SULLIVAN:  This is the bad conduct

16     case, Your Honor, this is exactly what they

17     want to do with this witness.  This is what

18     they want to do with this witness, the bad

19     conduct case.

20             MR. KLINE:  Can I have the Bates number

21     so we have a record?

22             MS. SULLIVAN:  It has nothing to do

23     with --

24             THE COURT:  Wait.  Now you are

25     talking --

1              (*Pledger v Janssen, et al.*)

2              MR. KLINE:  Hello?

3              THE COURT:  Mr. Kline, sit down for one

4         second.  Let me get this for the record.  Is

5         this the one from Pamela Rasmussen, is that

6         what we are talking about?  January 23, 2003

7         to Carin Binder?

8              MR. KLINE:  Yes.

9              THE COURT:  What is the line you want?

10             MR. KLINE:  I -- of course, I am

11        interested in a couple of things, but the

12        thing that is astounding is that the people

13        who are writing this Janssen article and

14        trying to not warn rather than warn about a

15        key finding, say that the key author is a

16        go-along.  And we question --

17             THE COURT:  I am not going -- that one,

18        Mr. Kline, sorry, but that one you need to get

19        through the author of this.  This is sort of

20        like an opinion about somebody else's opinion,

21        and I just don't want to get into that world

22        except through direct testimony.

23             MS. SULLIVAN:  And it's not relevant,

24        Your Honor.

25             THE COURT:  Its relevance also is a

1              *(Pledger v Janssen, et al.)*

2        little bit of a stretch.  So if you want it,

3        it has to come in through its author.

4              MS. SULLIVAN:  And even then, Your

5        Honor, it has no relevance to the claims in

6        this case.

7              THE COURT:  It's not coming in through

8        Dr. Kessler so we don't have to worry about it

9        right now.

10              MR. KLINE:  But the issue will be

11        before the Court again when we do the

12        deposition cuts for binder.  We will argue it

13        then.

14              THE COURT:  We will look at it then.

15        But for Dr. Kessler, that is like getting into

16        an opinion of an opinion.

17              MR. KLINE:  It's a pretty amazing

18        document, though, sir.

19              THE COURT:  It could be, I don't know.

20              MR. KLINE:  I think --

21              THE COURT:  Marianne, before we bring

22        the jury out, I need to have these documents

23        in hand.  Ask Mr. Gomez to give us those

24        documents.

25              MR. KLINE:  Those documents?

1           *(Pledger v Janssen, et al.)*

2                THE COURT:  I didn't destroy your

3           binder.  I would like to have those particular

4           documents here.

5                MR. KLINE:  That's your binder now.

6                THE COURT:  I know, but the documents

7           we are relying on as potentially admitted

8           evidence are those documents that we have just

9           gone through.  Tabs one, 15, 16, 21, 22, I

10          probably missed one.  I want to make sure that

11          I have them before we start Dr. Kessler's

12          testimony, and we are limited to that.

13          Anything beyond that is going to be

14          inadmissible now through Dr. Kessler, because

15          we have a jury waiting, it's ten after 11 and

16          I do want to get started with his testimony.

17               Mr. Gomez, tab them for me again, that

18          will be easiest.

19               MR. GOMEZ:  16, 20 --

20               THE COURT:  Wait.  15, then we have 16?

21               MR. GOMEZ:  16, 20, 21.

22               THE COURT:  There are two E-mails on

23          that.  The one we are admitting is

24          November 16, 2002 at 11:14 a.m., Prolactin

25          Manuscript.  That's the one we are talking

```
 1                  (Pledger v Janssen, et al.)

 2        about, right?

 3                  MS. SULLIVAN:  Yes, Your Honor.

 4                  MR. GOMEZ:  Is that the Carin Binder

 5        E-mail, Your Honor?

 6                  THE COURT:  Carin Binder to Vincent

 7        Nys.

 8                  MR. GOMEZ:  Your Honor, that was Tab

 9        20.

10                  THE COURT:  It says Tab 20, but there

11        are two E-mails on there, I want to make sure

12        we are talking about the same one.

13                  MR. GOMEZ:  We are, Your Honor, the

14        bottom one.

15                  THE COURT:  The bottom half, okay?

16                  MR. GOMEZ:  Okay.  Tab 21.

17                  THE COURT CRIER:  Can I have the Bates

18        number?

19                  MR. GOMEZ:  JJ RE-14088063.  Carin

20        Binder to Gahan Pandina.

21                  Tab 22, Gahan Pandina to Caren Binder,

22        December 3rd, 2002, at 2:13.

23                  THE COURT:  That is December 3rd, 2002?

24        At 2:13 p.m.

25                  MR. GOMEZ:  Do you need a Bates number?
```

1              *(Pledger v Janssen, et al.)*

2                   THE COURT:  All right, and that --

3         which is the one that includes the draft

4         manuscript?

5                   MR. GOMEZ:  That was Tab 16.

6                   THE COURT:  All right, to be clear, the

7         admission of 16 would include the draft

8         manuscript.  And these all, of course, are

9         subject to their proper introduction.  They

10        are used -- Plaintiff would be in trouble if

11        they do not admit those documents through what

12        we discussed and proffered to me.  But they

13        can be used now.

14                  The rules would be that, to be very

15        clear about this, these documents can be shown

16        to the jury or read to the jury on the screen,

17        and then questions about those documents are

18        permitted but they are subject to an

19        evidentiary consideration.  And if it calls

20        for speculation on the mindset of an

21        individual, I will sustain the objection.

22        Because I think that ultimately, you know, the

23        point is that they are the basis of an opinion

24        and the jury has the basis right in front of

25        them.

1          *(Pledger v Janssen, et al.)*

2              Any commentary about what was going on

3          in the minds of other people that is

4          speculative is subject to a potential ruling

5          adverse to Plaintiffs.

6              So keep that in mind.  If you have a

7          document that you need, I am not sure what you

8          really need.

9              MR. KLINE:  I hear you.  One point of

10         clarification, Your Honor.  I understand

11         everything.  Famous last words.

12             I want to make sure I understand,

13         please indulge me.  I have deposition

14         testimony, and the deposition testimony from

15         all of these documents is from Binder or

16         Pandina, saying that this is the document,

17         this is what I wrote, and that's what it is.

18         It's basically authentication.

19             THE COURT:  That's fine.  The main

20         evidentiary concern is that the jury

21         understands that there is a source for these

22         documents, that it came from a certain

23         location or a certain company, and that it was

24         in fact generated within the company, and that

25         was a document that was relied upon by the

```
 1                    (Pledger v Janssen, et al.)

 2           expert witness in forming his opinion.  That's

 3           all this is.

 4                    Mr. Murphy?

 5                    MR. MURPHY:  Mr. Gomez identified these

 6           various exhibits, Your Honor, and he began

 7           with Tab 15.  I just want to make sure that we

 8           are all clear that as to the document behind

 9           Tab 15, you said it's out.

10                    THE COURT:  That is out.

11                    MR. KLINE:  Just a very short comfort

12           break before we start?

13                    THE COURT:  Yes.  We will take a recess

14           now and then we will have the jury finally

15           come in.

16                    MR. KLINE:  Should I get Dr. Kessler

17           back in the room?

18                    THE COURT:  Yes.

19                    (A brief recess is taken.)

20                              - - -

21                    (The following transpired in open

22           court:)

23                    THE COURT:  Before we bring in the

24           jury, I would ask the journalists in the

25           courtroom, make yourself known to Marianne
```

1              *(Pledger v Janssen, et al.)*

2         Mari so we know you are here.  And the chief

3         rule that I am concerned about is it is

4         ordered that nobody shall make realtime

5         verbatim transcripts available to the general

6         public.

7                  MR. KLINE:  Your Honor, as to realtime,

8         the Court had --

9                  THE COURT:  I mean verbatim

10        transcripts.

11                 MR. KLINE:  Yes.  As to realtime, we

12        had a discussion and the Court ruled that they

13        could send it to their war room and that we

14        would be told the names of the people.  I have

15        the specific colloquy.  I asked Mr. Murphy and

16        I was given back an answer essentially that

17        tells me that they have all their lawyers in

18        both firms, which, by the way, are 2,000 and

19        some, and I would simply like, perfect the

20        Court's ruling, to know who has access at any

21        time to this.

22                 The answer back to me I did not think

23        satisfied the Court's instruction, which was

24        to tell both me, and I would hope the Court,

25        given all the interest in this trial, who is

1                    (*Pledger v Janssen, et al.*)

2          actually getting realtime that's not in City

3          Hall.  I think that's fair.

4                    THE COURT:  Right, well, okay --

5                    MR. KLINE:  Not to tell me that they

6          have thousands of lawyers.

7                    THE COURT:  I understand it.  As I

8          said, for the journalists, the order of this

9          Court is no one may transmit realtime verbatim

10         transcripts to the general public.

11                   Now regarding realtime verbatim

12         transcripts to members of the parties'

13         attorneys, yes, there is a point well taken.

14         It was not my intention that these documents

15         be made generally available to a large law

16         firm, because it's not within this Court's

17         control, nor probably, Mr. Murphy, your

18         control as to what an associate does with

19         realtime transcripts on his own.

20                   MR. MURPHY:  Understood.  And as I made

21         clear to Mr. Kline and Mr. Gomez, only the

22         lawyers who are working on this litigation,

23         lawyers who are working on this case, are the

24         ones who get this.  Different people are

25         called in to do different things at different

1                    *(Pledger v Janssen, et al.)*

2          times.

3                    MR. KLINE:  That's the problem.

4                    MR. MURPHY:  Well, within the team, if

5          you will.  So what Mr. Kline is asking for, is

6          a list of people who get this.

7                    MR. KLINE:  Yes.

8                    MR. MURPHY:  So someone may be looking

9          at it on a Monday, a different person may be

10         involved on Tuesday for a different issue.  So

11         if what is requested an after-the-fact record

12         of the people who got it, no problem.  But

13         what I can't do at this time is determine who

14         may be working on it next week.  But the point

15         of the matter is --

16                   THE COURT:  I don't have a problem, I

17         don't really think it's our business who

18         particularly within a law firm is working on a

19         particular case at a particular moment.  What

20         I think is important, though, is that the

21         transmission of these transcripts are in

22         someone's responsibility that is known to the

23         Court and to opposing counsel, and that it is

24         not put out as a generally available

25         transmission to your firm, let's say, all the

1              *(Pledger v Janssen, et al.)*

2        attorneys at Dechert.  I mean there are

3        hundreds of attorneys here who have nothing to

4        do with this case.

5              MR. MURPHY:  Understood, and only the

6        attorneys at Drinker, Biddle & Reath working

7        on this litigation are the ones who have

8        access to it.

9              THE COURT:  So it's not going out at

10        Drinker as a --

11              MR. MURPHY:  Absolutely not.  It's not

12        a broadcast that anyone can tune into at any

13        time.

14              THE COURT:  Do you have an objection to

15        that?

16              MR. KLINE:  Yes.  I respectfully

17        request, given all of the interest and all of

18        the issues that are involved here, that we

19        simply be told, and the Court simply know,

20        what lawyers in the Weil firm, and what

21        lawyers in the Drinker firm have access to the

22        realtime feed.

23              That is not an overreaching or

24        overburdening request.  The Court should not

25        have, in my respectful opinion, and this is a

1              *(Pledger v Janssen, et al.)*

2         matter given the change of technology that

3         probably the Rules Committee and the Supreme

4         Court will have to take up, but the defense

5         should not have phantom people who are not

6         under the control of the Court.  One last

7         point.  I raised this issue, here was the

8         answer I got back.

9              Your Honor said the other day that,

10        when we allowed this, it was asked and

11        answered.  I said, "And I want to know the

12        lawyers involved, I assume" and the Court said

13        "Yes."

14             And then what happened was, I said, Who

15        are the lawyers?  And listen if you would,

16        please, Your Honor -- this if from Mr. Murphy

17        -- "As you are aware, Drinker Biddle and Reath

18        is a national counsel.  Attorneys and

19        paralegals from various of Drinker Biddle

20        offices have worked on this litigation and

21        continue to do so.  Certain of them have been

22        involved in the instant case and may be called

23        to assist.  Thus, live feed is available to

24        them as needed."

25             Now I don't know who they are or where

1                    *(Pledger v Janssen, et al.)*

2           they are.

3                    "And the list of those called to assist

4           is not constant."  I don't know who they are,

5           neither do you, Your Honor.

6                    "This is the same true for the Weil

7           firm."

8                    By the way, I look at their website.

9           They both combined have over 2,000 lawyers.

10                   MS. SULLIVAN:  I can make it easy for

11          Weil.  Every Weil lawyer is in the courtroom.

12                   THE COURT:  We can take this up at

13          another moment.  I really want to move

14          forward.  The rules for the journalists are

15          clear.

16                   As far as -- I think that I would be

17          satisfied if at the end of the week of this

18          litigation we are given a list of names of

19          attorneys or paralegals who have shared in

20          this information so we have some

21          accountability.  Obviously, if there are

22          leaks, shall we say, we will then address that

23          in terms of some kind of sanctions or contempt

24          hearing, and that would be a separate

25          proceeding from this trial.

1              *(Pledger v Janssen, et al.)*

2              So everyone is on notice that I do

3       consider this to be an important matter.  We

4       have raised this issue among the Judges of the

5       Court of Common Pleas, we are aware of changes

6       in court reporter status come this summer.  In

7       the meantime, as far as this trial is

8       concerned, I respectfully am asking counsel to

9       have the names of the individuals who have

10      shared in these transcripts available to Mr.

11      Kline and the Court at the end of each week.

12              MR. MURPHY:  Fair enough, Your Honor.

13              MR. KLINE:  The other thing, Your

14      Honor, is I don't know if you instructed the

15      jury about publicity.  You might want to tell

16      them earlier rather than later that there may

17      be things written in the newspaper and they

18      should not read the paper.

19              THE COURT:  We will certainly tell them

20      that.

21              MS. SULLIVAN:  Your Honor, I appreciate

22      the instruction about not reading the paper.

23      I object to telling the jury there may be

24      something in the press like this is a big, big

25      case.  I know Mr. Sheller has done a lot to

```
 1                    (Pledger v Janssen, et al.)

 2              trump it up, but I would respectfully object

 3              to the Court telling the jury that this may be

 4              a case that is worthy of the newspapers.

 5                    THE COURT:  I never got involved with

 6              that.  We have we have had high profile

 7              criminal cases and --

 8                    MS. SULLIVAN:  I understand it's a

 9              standard instruction.

10                    MR. KLINE:  That's all I ask for was a

11              standard instruction.

12                    MS. SULLIVAN:  And for the Court's

13              information, we have filed and I will hand up

14              a courtesy copy, the motion to exclude Dr.

15              Kessler on the serious adverse event

16              pre-emption issue.

17                    THE COURT:  I am not going into that

18              right now.

19                    MR. KLINE:  I do not intend to ask Dr.

20              Kessler as to a serious adverse event to give

21              the Court a review.

22                    MS. SULLIVAN:  The problem with that on

23              the pre-emption front is that's the only thing

24              that gives rise to a duty to put it in the

25              Warning label.
```

1              *(Pledger v Janssen, et al.)*

2                  THE COURT:  Ultimately that's a legal

3       decision that the Court will make and I will

4       make it when the time comes.  Pursuant to this

5       motion or pursuant to a jury instruction, I

6       have, as you know, read the CFRs involved

7       here.  I do think, having not read your brief,

8       I would rather not peg myself on this, but it

9       would seem to me that any type of injury that

10      we require some kind of medical procedure in

11      order to repair would come under a severe

12      adverse impact definition.

13                  MS. SULLIVAN:  That's the point, Your

14      Honor.  This doesn't require that, it's

15      elective.

16                  THE COURT:  I believe ultimately that's

17      going to be a factual issue for the jury to

18      decide.  If we have testimony eventually in

19      this case about what can be done to repair any

20      damage that may exist, that would be, I think,

21      a factual question for the jury to decide.

22                  So I understand your point, but I am

23      letting you know ahead of time before Dr.

24      Kessler's testimony that that is likely the

25      Court's view, because I have read the CFRs on

1                    *(Pledger v Janssen, et al.)*

2            this issue.

3                    MS. SULLIVAN:  Your Honor, the point

4            with Dr. Kessler, his whole opinion goes to

5            the duty to warn based, even if he doesn't say

6            it, so you can only put in your Warning what's

7            a serious adverse event.

8                    THE COURT:  I am sure you are not

9            honing your whole defense based on this issue.

10           We wouldn't be here otherwise.  Let's have the

11           jury come in.

12                   MR. KLINE:  Your Honor, I believe I

13           handed up to the Court the couple of cases

14           that deal with what I believe is going to be

15           their attempt to cross examination on money.

16                   MS. SULLIVAN:  Your Honor --

17                   THE COURT:  Right now, we have had a

18           lot of pre-witness -- let's just rumble now

19           and see what happens as far as rulings during

20           the actual course of the testimony.  We have

21           given enough framework, I think, to guide you.

22                   (At this time the jury enters the

23           courtroom.)

24                   THE COURT:  Good morning, members of

25           the jury, we are still saying good morning.

1              *(Pledger v Janssen, et al.)*

2       All right, did everybody have a nice snow day

3       yesterday?  Whatever.  I am glad I am not a

4       meteorologist in this city.

5              But we are here now.  We have had some

6       discussion about some law involved with this

7       next witness, which I believe, hopefully, will

8       have saved us a lot of time.  So we will find

9       out.

10             So what we are going to do now is we

11      are going to begin the testimony of a new

12      witness, and we are going to go for a full

13      hour until about quarter of one and take our

14      break then.

15             So, Mr. Kline, your next witness,

16      please.

17             MR. KLINE:  Your Honor, thank you very

18      much.  The Plaintiff calls David Kessler.

19             (DAVID A. KESSLER, MD is duly sworn.)

20             MR. KLINE:  Proceed, Your Honor?  Is my

21      mic on, Judy?  Good morning, all.

22                        - - -

23        DIRECT EXAMINATION (QUALIFICATIONS)

24                        - - -

25

1                    *(Pledger v Janssen, et al.)*

2     BY MR. KLINE:

3     Q     Good morning, Dr. Kessler.

4     A     Good morning, Mr. Kline.

5     Q     Dr. Kessler, you have been marooned in

6     Philadelphia for a number of days; is that correct?

7     A     Yes.  It's been a pleasure.

8     Q     Between our three-day jury selection and our

9     delays, you are now prepared to testify, sir?

10    A     I am.

11    Q     You held a position with the Government of the

12    United States for a period of six years.  What was

13    that position, sir?

14    A     I was Commissioner of the United States Food

15    and Drug Administration.

16    Q     And which President appointed you, sir?

17    A     George Bush, the father.

18    Q     And in what year were you appointed as the

19    Commissioner of the FDA?

20    A     1990.

21    Q     And then when the Administration changed, did

22    President Clinton keep you on?

23    A     Yes.

24    Q     And did you serve as the Commissioner of the

25    FDA during the first term of President Clinton?

1                    *(Pledger v Janssen, et al.)*

2    A      Yes.

3    Q      And what were your years of service to the

4    United States Government and people as the

5    Commissioner of the FDA?

6    A      End of 1990 to the beginning of 1997.

7    Q      A period of roughly six years?

8    A      Yes.

9    Q      Six-plus years.  Sir, what is the FDA and --

10   by the way, is that a cabinet level position but not

11   confirmed by the United States Senate?

12   A      Just the opposite, it is not cabinet level but

13   it is confirmed by the United States Senate.

14   Q      I see.  And what date were you appointed,

15   approximately?  What month and year were you

16   appointed and then confirmed?

17   A      It was in the Fall of 1990.

18   Q      During your tenure at the FDA, did you have a

19   number of achievements which are important to the

20   American public as we sit here today?

21                    MS. SULLIVAN:  Objection, Your Honor,

22          as to what's important to the American public.

23                    THE COURT:  That's sustained.

24   Q      Did you have a number of achievements, sir, as

25   Commissioner of the Food and Drug Administration?

1                        *(Pledger v Janssen, et al.)*

2    A      Certainly things that I am proud of.

3    Q      What are they, sir?

4    A      1990, when I became Commissioner, there was

5    only one drug for HIV and it didn't work very well.

6    By the time I left, there were 17 drugs available.

7    It was a historic period of drug development, people

8    worked very hard, and while not a cure, none of

9    those drugs are a cure, it changed the course of

10   that disease.  So it was a historic period of drug

11   development.

12   Q      Were there other significant accomplishments

13   during your tenure as Commissioner of the FDA?

14   A      I think so, yes.

15   Q      I am sure you can't list them all but can you

16   give us some idea what happened in that period?  I

17   know it's 20-some years ago.

18   A      So pick up any packaged food, you pick up a

19   pack of M&Ms and see those nutrition facts?  How

20   much fat, how much cholesterol, how much salt?  We

21   did the nutrition facts while I was at FDA.

22              And probably one of the other most

23   significant things we did was the regulation to

24   protect children and young people from tobacco.

25   That was also one of the other big things we did.

*(Pledger v Janssen, et al.)*

1

2  Q     And what has your role been in that regard?

3  What has your role been with respect to tobacco

4  regulation, briefly?

5  A     Well, while I was at FDA, sir?

6  Q     FDA, and then afterwards?

7             MS. SULLIVAN:  And I am just going to

8         object, Your Honor, I am not sure what tobacco

9         regulation has to do with pharmaceutical

10         regulation in terms of qualifying him.

11             THE COURT:  If you can explain the

12         relevance, go ahead.

13  BY MR. KLINE:

14  Q     Can you explain the relevance, sir, to your

15  background and experience in terms of knowledge of

16  regulation of food substances and pharmaceuticals?

17  A     Well, the specific question we looked at was

18  whether nicotin was a drug under the Federal Food,

19  Drug and Cosmetic Act, and I led that investigation.

20  Q     And what did that investigation result in?

21  A     It took 15, 20 years, a major investigation

22  into the tobacco industry, a lot of court cases.

23  Ultimately, the Congress passed legislation that the

24  President signed in 2009 to give FDA the authority

25  to regulate and protect young people, children and

1                    *(Pledger v Janssen, et al.)*

2    adolescents.

3    Q      And by the way, sir, you are not here speaking

4    for the FDA?

5    A      Absolutely not.

6    Q      The opinions that you will be asked to render

7    here today, are those the opinions of David A.

8    Kessler, MD?

9    A      Exactly.

10   Q      And are you a medical doctor?

11   A      I am.

12   Q      I hear you are also a lawyer?

13   A      I never took a bar exam.  I went to med

14   school, I also went to law school.  I never sat for

15   the bar.

16   Q      So you never practiced law?

17   A      That's exactly correct.

18   Q      Let's talk about your background briefly and

19   try to get through this, but I do need some

20   underpinnings, especially as they relate to this

21   case.

22             First of all, you went to medical

23   school and you went to college.  Where did you go to

24   college?

25   A      Amherst College.

1                    *(Pledger v Janssen, et al.)*

2    Q      And that's located where?

3    A      Weston, Massachusetts.

4    Q      After you graduated from Amherst, did you

5    attend medical school directly after that?

6    A      I did.

7    Q      And by the way, you graduated from college in

8    1973?

9    A      Yes, sir.

10   Q      By the way, just for background, you grew up

11   where?

12   A      I grew up in New York.

13   Q      And you went to Amherst to college, graduated

14   in 1973.  Where did you then go to medical school?

15   A      Harvard.

16   Q      Harvard Medical School.  And how long were you

17   at Harvard, sir?  For four years?  Until 1979?

18   A      Well, it was a little more than four years

19   because I went off to law school in the middle of

20   med school.  So it took me a little longer than four

21   years.  It took me six years.

22   Q      I see.  According to your curriculum vitae,

23   which, by the way, is marked for identification

24   purposes during this trial under Tab One, Bates

25   numbers 001 through -- Kess CV 001 through 025.

1                    *(Pledger v Janssen, et al.)*

2                    You got a degree from Harvard Medical

3     School in 1979, is that correct, that was your

4     medical degree?

5     A     That's correct.

6     Q     In between you got a law degree from the

7     University of Chicago?

8     A     Yes.

9     Q     And then you went on to get from NYU in 1986,

10    it appears, some additional certification in

11    management; is that correct?

12    A     In business training, yes.  I was running a

13    hospital.

14    Q     What kind of doctor are you, sir?

15    A     I am a pediatrician.  I was trained as a

16    pediatrician.

17    Q     Are you a practicing pediatrician today?

18    A     Not really.  I have tapered off.

19    Q     Do you see patients today?

20    A     Occasionally, but it's not what I do.  I am a

21    professor of pediatrics.

22    Q     And let's explain that in a moment.  Before

23    getting to be a professor of pediatrics today, let

24    me talk about your training, education and

25    background.  The jury already has seen one medical

1              (Pledger v Janssen, et al.)

2    expert so they know kind of the drill on this.

3              After medical school what did you do in

4    your medical training?

5    A      Johns Hopkins Hospital.  I did my pediatric

6    internship and residency in Baltimore.

7    Q      I see.  Did you then become Board certified?

8    A      Yes, I did.

9    Q      So you were a Board certified pediatrician in

10   that period?

11   A      Right.  I was Board certified for some 30

12   years.  I need to take my recertification, I haven't

13   done that.  But I have been Board certified for 30

14   years.

15   Q      You have taught at a number of institutions,

16   correct?

17   A      Yes.

18   Q      And it looks like at some point you taught at

19   Columbia University?

20   A      I taught Food and Drug Regulation and Law at

21   Columbia Law School.

22   Q      And that was right before you became the

23   Commissioner of the FDA?

24   A      Exactly.

25   Q      And then after you were the Commissioner of

1          *(Pledger v Janssen, et al.)*

2     the FDA, seeing that you were the Commissioner of

3     the FDA 1990 to 1997, you then went to the Yale

4     University School of Medicine?

5     A     I did.

6     Q     What did you become there?

7     A     I was Dean there. I was also professor of

8     pediatrics, epidemiology, public health.

9     Q     So you were the Dean of the School of Medicine

10    at Yale University; is that correct?

11    A     Yes.

12    Q     Following your stint as the United States Food

13    and Drug Administration Commissioner?

14    A     Yes.

15    Q     You then, today, let's go to today -- and that

16    lasted from 1997 to 2003?

17    A     Approximately, yes.

18    Q     So to put your, kind of later career in

19    perspective, 1990 to 1997 you were Commissioner of

20    the FDA, 1997 to 2003 you were the Dean, that's the

21    chief academic officer of the Yale University school

22    of medicine?

23    A     Of the medical school, yes.

24    Q     And then you then moved to the University of

25    California; is that correct?

1        *(Pledger v Janssen, et al.)*

2    A      At San Francisco, yes.

3    Q      And since 2003, what have you been doing at

4    University of California San Francisco, sir?

5    A      Among other things, I am currently a professor

6    of pediatrics, professor of epidemiology, professor

7    of biostatistics.

8    Q      Tell the members of the jury, the field of

9    epidemiology, because we are going to hear something

10   about studies here today and I want to make sure

11   that they understand it, what you might know about

12   them?

13   A      So a physician who takes care of patients

14   takes care of one patient in front of them or a

15   family, or a number of patients every day.

16   Epidemiologists look at diseases in population, in

17   certain groups of people, and use certain methods to

18   study epidemiology which is diseases in populations.

19   Q      And when you say diseases in populations, does

20   that mean things that can arise that are studied,

21   like symptoms that result from a drug, would that be

22   included in epidemiology?

23   A      Sure.  Epidemiology looks at a lot of those

24   kinds of questions; is this drug associated with

25   this side effect, does this drug work.

1                    *(Pledger v Janssen, et al.)*

2                    So those methods to answer those

3    questions that we used at the Food and Drug

4    Administration while I was there were

5    epidemiological methods.

6    Q    Is that one of the things that qualified you

7    to be the Commissioner of the FDA?

8    A    There are a lot of things, I think, they would

9    look to.  I certainly had a wide understanding.  I

10   had written extensively in the area before I was

11   nominated by the President.

12   Q    I know you have written extensively in the

13   medical literature.  You have published articles as

14   well as books; correct?

15   A    Yes.

16   Q    In fact, you wrote a *New York Times*

17   bestseller -- my copy says this is due back in the

18   library 2-11-15 -- but it's entitled, The End Of

19   Overeating: Taking Control of the Insatiable

20   American Appetite, by David Kessler MD, correct?

21   A    Thanks for the pitch for the book, Mr. Kline,

22   I appreciate it.

23   Q    I am sure we will all run and get it.  But it

24   is available on Amazon dot com -- only kidding.

25                    But the book is one of your

1            *(Pledger v Janssen, et al.)*

2       contributions to the overall understanding of this

3       particular problem?

4       A     Well, that book dealt with the obesity

5       question and why we have such difficulty controlling

6       what we eat and the question of overeating, and it

7       was really the study of that.

8                  I have written many professional

9       articles in journals on Food and Drug regulation.

10      Q     In your curriculum vitae, and I don't plan on

11      burden us with this, also, there is a long list of

12      articles and publications that you have contributed

13      to the medical literature; is that correct?

14      A     Yes.

15      Q     And you mentioned epidemiology.  I just want

16      to hit the highlights here in qualifying you, my job

17      being here to qualify you as an expert witness and

18      ask the Court to so qualify you, that's why we are

19      doing this, as you know.

20                 I would like to ask you, you mentioned

21      that you have both taught and have advanced training

22      in biostatistics, correct?

23      A     And even a more narrow field call

24      pharmacoepidemiology, but also, I am a professor of

25      biostatistics.

*(Pledger v Janssen, et al.)*

Q     First of all, let's take the word apart.
Pharmacoepidemiology, you already told me
epidemiology being the study of human population?

A     And pharmaco being drugs, so it's the study of
drugs in populations.  So it's not just when one
person takes the drug but what happens when many
people take the drug.

Q     All right.  And you are an expert in that
field?

A     I think that would be fair, yeah.

Q     And you are also an expert in epidemiology as
well?

A     Yes.

Q     And, also, you mentioned biostatistics, and we
are going to hear here in this case about a
particular finding that was statistically
significant, so I want the jury to know your
expertise there.

A     So I understand especially biostatistics as it
relates to the study of drugs.  That's my real area
of expertise.  There may be -- there are
mathematicians that are much smarter statisticians
than I am, but I understand it as it relates to drug
studies.

1                         *(Pledger v Janssen, et al.)*

2    Q      Sir, in addition to the degrees that you have

3    been given that are what are called earned degrees,

4    degrees in which you did the course work for and

5    then got your degrees, like your medical degree from

6    Harvard, do you also hold a number of honorary

7    degrees that institutions have recognized you for

8    your service and generally for your work?

9    A      Yes.

10   Q      And for example, is one of those Drexel

11   University?

12   A      Yes.  I was honored to give the commencement

13   speech and they also gave me a doctorate.

14   Q      I think an honorary doctorate, if I am not

15   mistaken?

16   A      Yes.

17   Q      Now, I know that you are at the University of

18   California San Francisco.  You also do significant

19   consulting work, sir?

20   A      Yes.  I am on the boards of several companies,

21   for example.

22   Q      I want to talk about that.  I will get back to

23   that in a moment.  Are you also in the process of

24   writing and publishing another book?

25   A      I am, and I have a deadline on Friday.

1              *(Pledger v Janssen, et al.)*

2    Q     So while you were here in Philadelphia did you

3    spend considerable time working on that?

4    A     I have been working nonstop, actually, for

5    several years.

6    Q     What's the tentative title and who is the

7    publisher?

8    A     The publisher is Harper.  It really follows on

9    my books on tobacco and overeating and how certain

10   things make us feel sometimes that we lose control.

11   Q     What is it tentative entitled?

12   A     It's called, Capture.

13   Q     And consulting work, you told us, sir,

14   briefly, first of all, are you involved on the

15   boards of a number of companies?

16   A     I am, sir.

17   Q     Are these hedge funds or something like that?

18   A     These companies are -- I have been on the

19   company boards, one is a device company, it does

20   things to protect people on the safety of the blood

21   supply.  Another is a small start-up company that's

22   working on a prostate cancer drug for advanced

23   prostate cancer.  And I was on the board of a

24   company that did drugs primarily in the GI area, but

25   I am no longer on that board, that company was sold.

1                     (*Pledger v Janssen, et al.*)

2    Q     GI meaning gastrointestinal?

3    A     I am sorry, yes, sir.

4    Q     And have you consulted with pharmaceutical

5    companies?

6    A     Yes.

7    Q     How about a pharmaceutical company called

8    Johnson & Johnson?

9    A     Yes, I have been asked and have consulted with

10   them.

11   Q     Okay, and what issues have you consulted with

12   them on that you can recall?

13   A     I don't have an exact recollection.  I think I

14   was asked questions about obesity drugs, to the best

15   of my knowledge.

16   Q     Were you ever asked about ethics by them as

17   well?

18   A     I have a recollection that I did -- it's a

19   little vague in my head -- that I did a speech for

20   the company, for the company lawyers.  But again, my

21   recollection isn't perfect on that.

22   Q     Okay, now, the jury heard about you in both my

23   opening statement and Ms. Sullivan's.  She told the

24   jury that you are going to come in here and dump all

25   over Janssen.  Is that what you are here to do?

1          *(Pledger v Janssen, et al.)*

2     A      I am here to answer your questions and

3     Ms. Sullivan's questions and try to educate the

4     Court or explain to the Court the basis of how drug

5     regulation works.  That's my goal here.

6     Q      And it was also represented here that you

7     charge $1,000 an hour; is that correct?

8     A      That is correct.

9     Q      And, sir, do you charge $1,000 an hour whether

10    the person paying the bill is a plaintiff's lawyer

11    or whether it's a pharmaceutical company?

12    A      That's correct.

13    Q      And, sir, have you done work with

14    pharmaceutical companies in litigation where you

15    come to a court for a pharmaceutical company and

16    testify?

17    A      I have.

18    Q      We also heard it stated that -- and by the

19    way, you have been hired by a number of law firms,

20    my law firm being one of them, and another firm that

21    was introduced to the jury being Sheller, PC, to do

22    work in this litigation.  Have you done work in the

23    litigation?

24    A      I have.

25    Q      And have you reviewed -- we can tell you, I

*(Pledger v Janssen, et al.)*

1

2    know because I asked last night and I represent,

3    that there is something like three million documents

4    that were produced in Risperdal litigation involving

5    children and adolescents.  Have you reviewed

6    thousands of documents, would it be fair to say?

7    A      Those boxes are full of documents that I have

8    reviewed.  So, yes, the answer is I have reviewed

9    thousands of documents.

10   Q      Did that take many, many hours to review?

11   A      An enormous amount of hours, yes.

12   Q      And have you indeed been paid to review those?

13   A      Yes.

14   Q      At your hourly rate, by lawyers who are

15   representing children in Risperdal litigation?

16   A      Your firm, the Sheller firm, yes, I have.

17   Q      And, sir, to date, how much have you been

18   paid, approximately?

19   A      275 hours, approximately, which translates

20   into about $275,000.

21   Q      And, sir, in addition to this -- and by the

22   way, would the same thing be true if you were hired

23   by a pharmaceutical company?

24   A      I would do the same kind of thorough work that

25   I tried to do here.

1                     *(Pledger v Janssen, et al.)*

2      Q      And actually, at your rate of $1,000 an hour

3      do you turn work away?

4      A      Oh, yeah.  I mean, I get called all the time.

5      I don't go out and seek this.  I get called and --

6      Q      You are not going to raise your rate on me

7      while we are here, are you?

8      A      No, I will not.

9      Q      Now, let me say this.  You were asked

10     questions -- I want to make sure that the jury knows

11     everything I can get out about you.  We were told

12     that "every couple of weeks" -- a couple being two

13     in my universe -- "every couple of weeks" you come

14     in and you testify against some pharma company.

15     Have you and I sat down and figured out the number

16     of times that you have testified in a courtroom,

17     sir?

18     A      We did the math, yes.

19     Q      I want to go through it with you, rather than

20     have this be --

21              MS. SULLIVAN:  I am just going to

22          object.  Are you talking about just the

23          courtroom or depositions there is testimony,

24          too, Mr. Kline?

25              MR. KLINE:  Of course, we are going to

*(Pledger v Janssen, et al.)*

1

2          do both, Ms. Sullivan.

3                  MS. SULLIVAN:  Good.

4                  THE COURT:  Is this part of his

5          qualifications as an expert, Mr. Kline?

6                  MR. KLINE:  Yes, it's his professional

7          work, and I am sure Ms. Sullivan would be

8          asking about it and I want to put it out on

9          the table.

10   Q     First of all, you are in this courtroom here

11   today.  Have you been doing consulting work very

12   long?  How many years have you been doing consulting

13   work in litigation?

14   A     From about 2010.

15   Q     So that's a period of about five years, okay?

16   A     Yes.

17   Q     And it was told to the jury that you come in

18   and every case you come in you say somebody "failed

19   to warn."  Is that correct?

20                  MS. SULLIVAN:  He is misquoting the

21          opening, I said everytime he comes to court --

22                  THE COURT:  Is there an objection, Ms.

23          Sullivan?

24                  MS. SULLIVAN:  Yes, Your Honor.  He

25          should actually read it.

1                    (Pledger v Janssen, et al.)

2              THE COURT:  Objection is overruled.

3        It's up to the jury to determine or remember

4        what was said during opening argument and

5        compare it to what's actually proven in court.

6              MS. SULLIVAN:  Thank you, Your Honor.

7              MR. KLINE:  I will rephrase the

8        question:

9  Q    "Every single case he comes in, every single

10  case he comes in, Bayer failed to warn, Merck failed

11  to warn, GSK failed to warn, Pfizer failed to warn,

12  Allergen failed to warn."

13              Now I want to go through some of your

14  past cases and who they were actually for.

15              First of all, sir, in a period of

16        time --

17              MS. SULLIVAN:  I am sorry, I hate to

18        interrupt, Mr. Kline, but I thought we were

19        doing qualifications so I can voir dire on --

20              THE COURT:  If there is a an

21        objection --

22              MS. SULLIVAN:  I object.  This is not

23        qualifications.

24              MR. KLINE:  If this is not going to be

25        cross-examined on qualifications I will get

1              (Pledger v Janssen, et al.)

2        back to it.

3              MS. SULLIVAN:  Oh, it's going to be

4        cross-examined on.

5              THE COURT:  I need to give the leeway

6        to get everything out, and then there will be

7        cross examination on it, and that again will

8        depend on timing.  Are you ready to proffer

9        your witness as an expert?

10             MR. KLINE:  Not yet.

11             THE COURT:  Then let's get to it so we

12       can then have this back and forth.

13             MR. KLINE:  I will get to it.  I know

14       it's a big issue and I want to get it out on

15       the table because she said it in her opening,

16       and I want to get through this real quickly.

17 BY MR. KLINE:

18 Q     Sir, have you counted up in five years the

19 numbers of trials that you have been in, first of

20 all?

21 A     Yes, from 2010 through to the end of 2014, in

22 that five-year period.

23 Q     In that five-year period, how many times have

24 you testified in a courtroom prior to today?

25 A     I count seven.  You can always give me a

1                    (*Pledger v Janssen, et al.*)

2      little room, but my counting said seven.

3      Q     Seven cases in five years; is that correct?

4      A     At trial, yes.

5      Q     And by my calculation, the jury was told that

6      you were here every couple of weeks against some

7      pharma company.  That would mean you would be in the

8      courtroom once every 260 days.  Is that the math?

9                    MS. SULLIVAN:  Objection, Your Honor,

10          again, he is misstating.  I said he testifies,

11          meaning at depositions and trials, misleading.

12                   MR. KLINE:  We will get there.  I know

13          she wants to do it.

14                   THE COURT:  Excuse me.  The objection

15          is overruled.

16     BY MR. KLINE:

17     Q     Is that correct, sir?  We did this math very

18     quickly?

19     A     Yes.

20     Q     In the past five years, you have been in a

21     courtroom on trial once every 260 days, correct?

22     A     Approximately.

23     Q     I understand.  I went through the list with

24     you to save time, correct?

25     A     Yes.

1                    (*Pledger v Janssen, et al.*)

2    Q      Now, I want to just go through this quickly,

3    then I want to get back to talking about your work

4    at the FDA and qualify you.

5                    The next thing, sir, is in that

6    five-year period you did 22 depositions, correct?

7    A      22, 23, yes.

8    Q      And two of them were in the Risperdal

9    litigation?

10   A      Correct.

11   Q      Because they deposed you twice, correct?

12   A      Yes.

13   Q      A lawyer just like Ms. Sullivan asked you

14   questions, correct?

15   A      Yes.

16   Q      And if you divide 1826 days that way, you were

17   giving a deposition once every 65 days, right,

18   approximately.

19   A      Yes.

20   Q      I want the jury to have a sense of your

21   involvement.  If you do the math, sir, is it

22   something like 1 percent of your days are devoted to

23   this kind of thing?

24   A      This kind of testimony, yes.

25   Q      Either in deposition or trial if you do the

1                    *(Pledger v Janssen, et al.)*

2    math?

3    A     I think we did 1.5 percent.

4    Q     1.5 percent of your days are spent in some

5    kind of testimony, correct?

6    A     Yes.

7    Q     Now, very briefly, and then I will be

8    finished, it was told to the jury that you testified

9    that Merck failed to warn.  Did that case involved

10   an individual plaintiff like the young man I

11   represent?

12   A     No.

13   Q     Tell me who was bringing claim in that case?

14   A     There were three states.  So it was the state

15   of Louisiana --

16                MS. SULLIVAN:  Objection, Your Honor,

17        this goes beyond --

18                THE COURT:  Objection sustained.

19   Q     Sir, in the case where she said you came to

20   court and said Pfizer failed to warn.  Did that

21   involve a case on behalf of a major healthcare plan,

22   not plaintiffs?

23   A     It was the Kaiser Healthcare Plan, yes.

24   Q     And of the seven cases that you have set foot

25   in courtroom -- and then I will be done with this,

1                    *(Pledger v Janssen, et al.)*

2      because I want to get it out -- in the seven cases

3      that you set foot in the courtroom, sir, how many of

4      them have been for a plaintiff, a plaintiff, suing a

5      pharmaceutical company, an individual plaintiff

6      suing a pharmaceutical company in a courtroom like

7      you are here today?

8      A      I count three out of the seven.

9      Q      So this is the fourth time in the five years

10     you have been doing it, and the fourth time in your

11     lifetime, correct?

12     A      Yes.

13     Q      All right, and I am sorry for taking so long

14     on that.

15                    Now, the -- did I miss anything, sir?

16     I took a little too long on that stuff, but I knew

17     that it was raised in the opening statement about

18     you, I wanted you to know it and the jury to know

19     it.  Anything else?

20                    MS. SULLIVAN:  Your Honor, I object to

21          Mr. Kline sort of running commentary.  He can

22          ask questions and the witness can answer.

23                    MR. KLINE:  Anything else that you

24          have, sir?

25                    THE COURT:  That's sustained.  Just a

1                    *(Pledger v Janssen, et al.)*

2          caution on that.  Go ahead.

3                    MR. KLINE:  I got it.

4    Q     Anything, sir?

5    A      I chair for those companies I have been on the

6    board, I chair what's called, for the one company, a

7    compliance committee.  Another company I chair the

8    quality committee.  So those are dealing with the

9    conduct of those -- how those companies should,

10   because they sell drugs, they sell biologics and

11   products, so I deal with sort of the rules that

12   those companies should operate on with regard to

13   those products.

14   Q     Sir, are you familiar, as of the period 2002

15   to 2006, are you familiar first of all with

16   pharmaceutical companies', their manufacture and

17   their distribution and their marketing as well as

18   their sales, as well as the safety and as well as

19   indications in prescription pharmaceutical drugs?

20   A      The answer is yes, both from my experience at

21   FDA, and serving, you know, with these companies,

22   and other experiences.

23   Q     And I am specifically talking about the period

24   2002 to 2006, your answer to that was yes, correct?

25   A      Yes.

1                    *(Pledger v Janssen, et al.)*

2    Q     And are you also familiar with the drug

3    Risperdal, also known by it's name risperidone?

4    A     Yes.

5    Q     By the way, when the drug was approved in

6    1993 --

7                    THE COURT:  Counsel, I want to know

8            where are we starting with -- are we starting

9            with expert testimony?

10                   MR. KLINE:  Still qualifications.  It

11           will be done in about three questions.

12   Q     In 1993, sir, as far as your knowledge goes of

13   this drug, in 1993 when it was approved, what was

14   your job?

15   A     I was responsible for the FDA at that time.

16   Q     You were the Commissioner?

17   A     I was.

18   Q     And are you prepared to express opinions, sir,

19   here today which are based on your experience,

20   background, and expertise as just outlined to the

21   jury as to your knowledge as you have described?

22   A     Yes.

23                   MR. KLINE:  I have nothing further on

24           qualifications.

25                   THE COURT:  I do want to know what is

*(Pledger v Janssen, et al.)*

1          *(Pledger v Janssen, et al.)*

2          the field that you qualifying this witness in?

3                    MR. KLINE:  Yes.  I have moving to

4          qualify Dr. Kessler in the field of

5          prescription pharmaceutical medications and

6          their labeling -- I have to ask him that

7          question.

8    BY MR. KLINE:

9    Q     You are familiar with the labeling of drugs as

10   Commissioner of the FDA?

11   A     I studied it for over 30 years, yes.

12   Q     And you are also familiar in terms of both

13   warnings and precautions that a drug company would

14   give to a physician as part of the prescription drug

15   medication, are you, sir?

16   A     Very much so.

17                    MR. KLINE:  I move to qualify Dr.

18          Kessler as an expert in the field of labeling,

19          warning, precautions, as well as regulation of

20          prescription pharmaceutical medications, and

21          in fields which relate to his background and

22          experience and qualifications which I just

23          outlined, sir.

24                    MS. SULLIVAN:  What fields would those

25          be, Your Honor?

1              *(Pledger v Janssen, et al.)*

2              MR. KLINE:  Those fields would be

3       biostatistics, those fields would be

4       epidemiology, those fields would be

5       pharmacoepidemiology, those fields would be

6       regulation of prescription drug products,

7       those specifically, and as an expert in

8       warnings as they should go to physicians

9       outside of the label.

10              THE COURT:  All right, well, we will

11       get to the fields.  Are there any

12       objections -- first of all, I just want to

13       know where we stand.  Are there objections to

14       the specifics of the subject matter of the

15       fields?

16              MS. SULLIVAN:  Yes, Your Honor, may I

17       briefly voir dire?

18              THE COURT:  Why don't you go voir dire

19       and we will get to that.

20              MS. SULLIVAN:  Thank you.

21                     -  -  -

22          CROSS-EXAMINATION (Qualifications)

23                     -  -  -

24   BY MS. SULLIVAN:

25   Q    Good afternoon, everyone.  Good afternoon, Dr.

1                    (*Pledger v Janssen, et al.*)

2    Kessler, a couple of questions.  You talked about

3    how you used to work for the FDA, but you are not

4    here speaking for the FDA?

5    A       Absolutely not.

6    Q       And, in fact, Dr. Kessler, you are not

7    authorized to speak for the FDA?

8    A       No one who is an expert who doesn't work there

9    should be.

10   Q       And so your opinions, Dr. Kessler, are your

11   own and Mr. Kline's, they are not those of the FDA?

12   A       I am sorry?

13   Q       Your opinions here are your own and Mr.

14   Kline's, they are not the opinions of the FDA?

15   A       My opinions are Mr. Kline's?

16   Q       Your opinions are your own, Dr. Kessler, not

17   the FDA's?

18   A       Yes.

19   Q       And, Dr. Kessler, you haven't worked for the

20   FDA in almost 20 years?

21   A       I left as Commissioner in February of 1997,

22   yes.

23   Q       And, Dr. Kessler, you know that this case

24   involves a prescription antipsychotic, right?

25   A       Yes.

1              *(Pledger v Janssen, et al.)*

2    Q      And you are not a psychiatrist, not Board

3    certified in the area of psychiatry?

4    A      I am not, but I understand --

5    Q      Could you just answer that, and I am sure Mr.

6    Kline will go back, but could you just answer my

7    question.  You are not a psychiatrist or Board

8    certified in psychiatry?

9    A      That's correct.

10   Q      And you have never described an antipsychotic?

11   A      I have to go back and review.  Probably not.

12   Q      And you don't have any clinical experience

13   with Risperdal, in terms of patients, prescribing

14   it?

15   A      I would have to go back and review.  I have

16   taken care of a lot of patients over the years so I

17   don't want to represent, but I have no clinical

18   experience --

19   Q      None that you recall?

20   A      I am not a psychiatrist, it's not within my

21   traditional wheelhouse.

22   Q      And, doctor, you have not written or published

23   any articles on the use of antipsychotic medicines

24   like Risperdal, right?

25   A      My current book is coming close to that.  But

1                    *(Pledger v Janssen, et al.)*

2    to date, I have not.

3    Q      And you know, Dr. Kessler, that this case

4    involves the injury or condition gynecomastia?

5    A      Yes.

6    Q      You are not an endocrinologist or Board

7    certified in endocrinology, the specialty that

8    treats that condition?

9    A      I am not an endocrinologist, but pediatricians

10   treat gynecomastia, too.

11   Q      But you are not Board certified in

12   endocrinology?

13   A      Exactly.

14   Q      And you have not written any publications or

15   done any clinical research on the issue of

16   gynecomastia or prolactin?

17   A      That would be fair, yes.

18   Q      And, doctor, you actually don't currently

19   practice medicine at all, right, sir?

20   A      I am licensed in the State of California.  If

21   you collapse here in the courtroom I will come over,

22   I promise you, if you want.  Someone on a plane,

23   recently, those kind --

24   Q      But in terms of active medical practice, you

25   don't practice medicine anymore?

1

2  A    I am licensed to practice, but I don't have a

3  shingle out, I don't have an office.  But I spend a

4  lot of time on medical issues.

5  Q    And you are not here, Dr. Kessler, to tell the

6  jury whether Risperdal causes gynecomastia, you are

7  not a causation expert?

8  A    I am not a causation expert.  I am happy to

9  answer your questions that you ask me.

10  Q    And, Dr. Kessler, you know this case is about

11  Mr. Pledger?

12  A    Yes.

13  Q    You are not here to talk to the jury about

14  this patient, Mr. Pledger?

15  A    I reviewed the medical records, I have read

16  the deposition of his treating doc.  Again, I will

17  answer your questions, Ms. Sullivan.

18  Q    And, Dr. Kessler, you told us at your

19  deposition that you hadn't been provided all of the

20  medical records in this case?

21  A    I had a binder, I am sure -- I made no

22  representation that it is complete at all.

23  Q    And it's true, Dr. Kessler, that other than

24  when you issued your expert opinions in this case,

25  your report, other than Dr. Mathisen's deposition,

1              (Pledger v Janssen, et al.)

2      the Plaintiff's lawyers hadn't given you the

3      testimony of any of the other treating doctors,

4      right?

5      A      For this --

6      Q      Yes.

7      A      I think that's correct.

8      Q      And you talked a little bit, Mr. Kline and you

9      talked a little bit about clinical trial research

10     and clinical trials.  You have never been a

11     principal investigator on a clinical trial?

12     A      I have been a principal investigator at Yale

13     and UCSF clinical research center that does multiple

14     clinical trials.  So I have been a PI of the center

15     that does those clinical trials.  I am not the one

16     who carries them out, I think would be fair to say.

17     Q      Fair enough.  In other words, Dr. Kessler, you

18     personally have never done clinical trial research?

19     A      I don't think that would be -- I have not

20     carried them out, but obviously, I have reviewed

21     clinical trials, clinical trial research as relates

22     to FDA.

23     Q      But you haven't done -- in other words, and

24     just so the jury knows, when we talk about clinical

25     trials we are talking about where doctors in the

1                    *(Pledger v Janssen, et al.)*

2    pharmaceutical context review a medicine to

3    patients, sometimes hopefully controlled studies and

4    watch what happens, follows them, collect the

5    information, analyze them, you have not conducted

6    clinical trials?

7    A     You used the word "analyze them."  I have

8    certainly been on the analysis side because that's

9    what FDA does.  But usually the data is given me.

10   Is that a fair --

11   Q     Yeah.  You are not the doctor that actually

12   prescribes the medicine, treats the patients, and

13   provides the data?

14   A     Actually, you know, just going back and

15   thinking, during my training I have been involved in

16   clinical trials in prescribing the drugs.  But it's

17   not really -- I mean most of the time the data is

18   given me and then I review that data.  But sitting

19   here now, I have recollections that I participated

20   in clinical trials.

21   Q     And, Dr. Kessler, you know in this case that

22   the FDA -- well, I will reserve that, Dr. Kessler,

23   and we will get to it later.

24                    MS. SULLIVAN:  Your Honor, on Dr.

25          Kessler, I have no objection on the regulatory

1              (*Pledger v Janssen, et al.*)

2       issues.  I do have an objection of Dr. Kessler

3       going beyond his expertise in the regulatory

4       area, thank you, Your Honor.

5              MR. KLINE:  Redirect on qualifications.

6              THE COURT:  I don't know what you mean

7       by regulatory.  So far, I have the proffer for

8       Dr. Kessler as an expert in pharmaceutical

9       prescriptions and medications, labeling of

10      pharmaceuticals, their warnings, their

11      precautions and their regulations, and also an

12      expert in the field of biostatistics,

13      epidemiology and pharmaco-statistics.  Any

14      objection to though specific qualifications?

15             MS. SULLIVAN:  Your Honor, on the issue

16      so Dr. Kessler has acknowledged he has never

17      prescribed antipsychotics, so I would object

18      to warnings as interpreted by prescribing

19      doctors.

20             I don't have a problem with Dr. Kessler

21      talking about the FDA, his opinion on the

22      FDA's standards in terms of labeling, but he

23      is not a prescriber.  So as to what something

24      would mean to a prescriber, how doctors --

25             THE COURT:  I am going to permit the

1               (Pledger v Janssen, et al.)

2          qualifications as I have just read it.  The

3          question of what Dr. Kessler, if he were in

4          the position of a prescribing doctor, that, I

5          understand is not the proffer of the opinion

6          testimony in this case; is that correct?  It

7          does not go to causation.

8               MR. KLINE:  That's correct, Your Honor,

9          yes.  We do not intend to ask him --

10              THE COURT:  So therefore, he is

11          permitted to testify as an expert witness in

12          the fields of pharmaceutical prescription,

13          pharmaceutical medication, the labeling of

14          pharmaceuticals, their warnings and

15          precautions and their regulations as related

16          to the FDA, and also in the fields of

17          biostatistics, epidemiology, and

18          pharmacoepidemiology.

19              THE WITNESS:  I will take the Judge's

20          also.

21              THE COURT:  Pharmaco-statistics.  I am

22          comfortable with qualifying Dr. Kessler in

23          those fields.  I am going to tell you this.

24          This is for the jury, we are going to get into

25          about 15 minutes of the actual testimony on

1              *(Pledger v Janssen, et al.)*

2       these issues and we will adjourn for lunch, so

3       we will get started.

4              What I want to tell you about expert

5       witnesses at this point is that an expert

6       witness is qualified to give an opinion that

7       you or I as laypeople could not give based on

8       the scientific experience, their experience in

9       those fields.  All right?

10             Now, I will tell you more about an

11      expert witness' testimony during jury

12      instructions.  The thing to remember is that

13      expert witnesses are like any other witnesses

14      in the sense that you do not have to accept

15      their opinions.  You can, you cannot, it's up

16      to you, and their credibility is up to you.

17      So in other words, they are subject to the

18      same kind of credibility decision making that

19      you would make for any other witness.

20             What they are allowed to do, however,

21      is to give you an expert opinion for you to

22      consider.  All right?

23             So, Mr. Kline, you may proceed now with

24      your witness.

25             MR. KLINE:  Your Honor, thank you.

1                    (Pledger v Janssen, et al.)

2          Thank you again.

3                         -  -  -

4                    DIRECT EXAMINATION

5                         -  -  -

6    BY MR. KLINE:

7    Q     Dr. Kessler, as part of the, I believe you

8    said 274 hours that you spent on this, did a report

9    result from that, that you actually had two

10   depositions taken about.  Did you issue a report?

11   A     Yes.

12   Q     And I have marked as KESS Report 001 through

13   KESS Report 126, Bates number -- and for the Court

14   we will have all of these documents, of course -- I

15   have before me, with your CV it's a hundred and some

16   pages.  It's a 92-page report.  Is that correct,

17   sir?

18   A     Yes.

19   Q     And in that report did you review a lot of

20   materials, synthesize it, and state both your

21   findings and opinions?

22   A     Exactly.

23   Q     And are you, sir, prepared to go through some

24   of the findings and opinions that I direct you to

25   here in the courtroom?

1                    *(Pledger v Janssen, et al.)*

2      A      Yes.

3      Q      And the next thing is, and that was a report

4      that was dated -- see if I can find the date on it.

5      A       If I may give it to you, it's September 17,

6      2012.

7      Q      And that's another thing.  You were asked to

8      work on this matter and provide testimony if needed

9      way back in 2012, correct?

10     A      Yes.  It's been several years.

11     Q      And by the way, is this the first time you

12     have come into a courtroom regarding Risperdal to

13     express an opinion?

14     A      Yes.

15     Q      There was a supplemental report, which is

16     marked as KESS report 127 through KESS report 143,

17     and that supplemental report is dated -- I don't see

18     the date on it.

19     A      March 14, 2014.

20     Q      March of last year?

21     A      Yeah.

22     Q      And again, does that report contain opinions

23     that you have expressed and a discussion of

24     information which you reviewed?

25     A      Yes.

1                       *(Pledger v Janssen, et al.)*

2        Q     Dr. Kessler, I know you stated earlier that

3        you reviewed boxes and boxes of materials.  Were

4        some supplied to you in paper form, some supplied

5        electronically, I assume?

6        A     Exactly, and others I have instructed people

7        to search a computer database to look for documents.

8        Q     And truly, in a prescription drug like

9        Risperdal are there, we now know, millions of

10       documents?

11       A     There are vast, vast number of documents.

12       Q     In this case were there numerous clinical

13       trials on the drug as it pertained to children and

14       adolescents as we go forward and outline this for

15       the jury?

16       A     Yes.

17       Q     And did you review all of those trials?

18       A     Yes.  It's important, Mr. Kline, just to put a

19       footnote, when you are talking about trials, trials

20       are done for a drug for a specific use.  So, for

21       example, trials were done in children for conduct

22       disorder, or autism, or bipolar.  And I reviewed

23       those, certainly the long-term trials, the safety

24       trials for those indications, yes.

25       Q     I think in the few minutes I have left, rather

1                    (*Pledger v Janssen, et al.*)

2    than going through the label which we will do after

3    lunch, the 2002 label and the 2006 label, I will

4    just ask you this:  Was Risperdal approved for use

5    by the FDA in children with autism at any time prior

6    to October 2006?

7    A     No.  It was approved on October 6, 2006.

8    Q     October 6, 2006, was the date it was approved?

9    A     Yes.

10   Q     And prior to that date, was it an approved

11   drug for use in children and adolescents?

12   A     No, it was not.

13   Q     In the period of 2002 to 2006, did Janssen

14   Pharmaceuticals have information in their files that

15   related to the safety of this drug?

16   A     Yes.

17   Q     And did they have information in their files

18   in particular relating to both increase in prolactin

19   levels as well as gynecomastia?

20   A     Yes.

21   Q     And are you prepared after our break to

22   discuss that with the jury?

23   A     Yes.

24   Q     And we will put these documents up, but in

25   2006, did the label as approved for autism say that

1                    (Pledger v Janssen, et al.)

2     the risk of gynecomastia in children and adolescents

3     was 2.3 in 100?

4     A      2.3 percent, yes.

5     Q      2.3 percent?

6     A      Yes, exactly.

7     Q      And, sir, in terms of side effects, the way

8     they are classified by the FDA, is that -- how is

9     that categorized?

10    A      So anything that is greater than one in a

11    hundred would be classified as frequent.

12    Q      So prior to 2006 when the label was approved

13    by the FDA for the use of this drug for children and

14    autism, was it known to Janssen Pharmaceuticals that

15    the risk was 2.3 or greater during the entire period

16    of time from 2002 to 2006?

17    A      Yes, there was such data.

18    Q      Now, we will put the exact language up, but

19    the 2006 label on the drug, when it was finally

20    approved by the FDA for autism, made a statement,

21    and that statement -- we will have it up after

22    lunch -- said that this drug as it pertained to

23    raising prolactin levels was worse than the other

24    drugs, worse than the other antipsychotics?

25    A      Greater elevation, I believe.

*(Pledger v Janssen, et al.)*

Q      Greater elevation than the other

antipsychotics, and the other antipsychotics would

be, like we heard yesterday, like Abilify, correct?

A      Yes.

Q      And the period 2002 through 2006, did Janssen

Pharmaceuticals know that exact information, that

fact?

A      Yes.

Q      And in that period of time, sir, in 2002 and

2006, as to both things that Janssen Pharmaceuticals

put in their label and told people when it was

approved, did they tell physicians those two pieces

of information at any time before October of 2006?

A      I have no -- I have seen no information that

they had communicated that, no.

Q      I am going to ask you a lot of questions after

lunch, sir, you but the one I want to start with is

your overall opinion.  Do you have an opinion, sir,

with a reasonable degree of certainty, based on all

of the fields in which you are qualified by the

Court, as to whether Janssen Pharmaceuticals failed

to adequately warn of the risks of gynecomastia and

increased prolactin in children and adults in the

period from 2002 through 2006, do you have an

1                    *(Pledger v Janssen, et al.)*

2     opinion?

3                    MS. SULLIVAN:  And I am going to

4          object, Your Honor, because that's the issue

5          for the jury to decide.

6                    MR. KLINE:  We discussed this at

7          length.

8                    THE COURT:  That's overruled.  The

9          doctor is allowed to make this opinion, but I

10         am asking you to qualify.  Failure to actively

11         warn who?

12                   MR. KLINE:  Physicians.  Physicians.

13         Thank you, Your Honor.

14                   THE COURT:  With that caveat, that

15         question is permitted.

16    Q     You can answer the question.

17    A     Yes.

18    Q     And, sir, is the basis of your opinion stated

19    in the reports which I have put in front of us which

20    we will discuss after the lunch hour?

21    A     Yes.

22    Q     And are they also stated in documents which

23    you and I have discussed, so we can hopefully be

24    organized this afternoon with the jury, are they

25    contained in the documents which you are well

1                     *(Pledger v Janssen, et al.)*

2      familiar with?

3      A      Yes.

4                     MR. KLINE:  Your Honor, we are not at

5             the exact point but it would be --

6                     THE COURT:  All right, we will take a

7             recess right here, ladies and gentlemen.  We

8             are going to recess, and we want to start

9             Court again around quarter of two.  It's

10            around 12:45 now, at 1:45 we will return.

11                    Please wear the yellow badges.  As I

12            said before, please do not discuss the case

13            with yourselves or anyone else during lunch.

14            And as I will say all the time, please keep an

15            open mind, this case has a way to go and it's

16            important that you keep the case to evidence

17            that we are hearing here and not outside of

18            this courtroom.

19                    So that's our instructions right now,

20            we will see you at 1:45.

21                    (The jury exits the courtroom.)

22                    THE COURT:  All right, then we are in

23            recess until 1:45.

24                    (A luncheon recess is taken.)

25                            - - -

1                     *(Pledger v Janssen, et al.)*

2

3

4              I HEREBY CERTIFY THAT THE PROCEEDINGS

5    AND EVIDENCE ARE CONTAINED FULLY AND ACCURATELY IN

6    THE NOTES TAKEN BY ME ON THE TRIAL OF THE ABOVE

7    CAUSE, AND THAT THIS COPY IS A CORRECT TRANSCRIPT OF

8    THE SAME.

9

10                        JUDITH ANN ROMANO, RPR-CM-CRR
                          OFFICIAL COURT REPORTER
11                        COURT OF COMMON PLEAS
                          PHILADELPHIA COUNTY
12

13              THE FOREGOING CERTIFICATION OF THIS

14   TRANSCRIPT DOES NOT APPLY TO ANY REPRODUCTION OF THE

15   SAME BY ANY MEANS UNLESS UNDER THE DIRECT CONTROL

16   AND/OR DIRECTION OF THE CERTIFYING COURT REPORTER.

17

18

19

20

21

22

23

24

25

## $

**$1,000 [3]** 118/7 118/9 120/2
**$275,000 [1]** 119/20

## 0

**001 [3]** 107/25 107/25 141/12
**001-126.......................Page [1]** 4/7
**01997 [1]** 1/12
**025 [1]** 107/25
**08540 [1]** 3/5
**0942 [1]** 2/6

## 1

**1 percent [1]** 125/22
**1...........................Page [1]** 4/6
**1.5 percent [2]** 126/3 126/4
**100 [1]** 145/3
**1000 [1]** 2/12
**10:01 [1]** 78/9
**11 [1]** 86/15
**1100 [1]** 3/6
**11:14 [1]** 76/21
**11:14 a.m [2]** 76/22 86/24
**12-week [1]** 71/18
**126 [1]** 141/13
**126......................Page [1]** 4/7
**127 [1]** 142/16
**127-143.....................Page [1]** 4/8
**12:45 [1]** 148/10
**13 [1]** 80/13
**1359 [1]** 2/12
**14 [2]** 45/25 142/19
**14088063 [1]** 87/19
**141 [1]** 4/7
**142 [1]** 4/8
**143 [1]** 142/16
**143......................Page [1]** 4/8
**15 [11]** 47/4 63/10 63/16 63/16 86/9 86/20 90/7 90/9 105/21 112/18 139/25
**1525 [1]** 2/11
**1528 [1]** 2/5
**16 [10]** 68/13 68/14 71/7 86/9 86/19 86/20 86/21 86/24 88/5 88/7
**17 [2]** 104/6 142/5
**170 [1]** 75/24
**18 [1]** 76/16
**1826 [1]** 125/16
**19102 [2]** 2/6 2/12
**19103-6996 [1]** 2/22
**1973 [2]** 107/8 107/14
**1979 [2]** 107/17 108/3
**1986 [1]** 108/9
**1990 [6]** 102/20 103/6 103/17 104/4 110/3 110/19
**1993 [3]** 129/6 129/12 129/13
**1997 [6]** 103/6 110/3 110/16 110/19 110/20 132/21
**19th [1]** 2/11
**1:45 [2]** 148/20 148/23
**1:45 we [1]** 148/10
**1:50 p.m [1]** 64/24

## 2

**2,000 [2]** 91/18 96/9
**2-11-15 [1]** 112/18
**2...........................Page [1]** 4/6
**2.3 [2]** 145/3 145/15
**2.3 percent [2]** 145/4 145/5
**20 [11]** 16/7 38/24 64/24 74/24 76/13 86/19 86/21 87/9 87/10 105/21 132/20
**20 inches [1]** 13/22
**20-some [1]** 104/17
**2000 [1]** 2/22

**2002 [21]** 22/3 32/13 34/6 59/11 64/24 76/16 128/14 128/24 144/3 144/13 145/16 146/6 146/10 146/25
**2003 [5]** 63/13 84/6 110/16 110/20 111/3
**2006 [17]** 5/19 22/4 128/15 128/24 144/3 144/6 144/7 144/8 144/13 144/25 145/12 145/16 145/19 146/6 146/11 146/14 146/25
**2009 [1]** 105/24
**2010 [3]** 1/5 121/14 123/21
**2012 [3]** 1/6 142/6 142/9
**2014 [2]** 123/21 142/19
**2015 [1]** 1/15
**20th [1]** 75/23
**21 [4]** 77/25 86/9 86/21 87/16
**212-310-8007 [1]** 3/6
**215 [6]** 2/6 2/6 2/12 2/12 2/23 2/23
**21st [1]** 78/8
**22 [6]** 34/6 80/2 86/9 87/21 125/6 125/7
**23 [2]** 84/6 125/7
**24 [2]** 59/11 66/20
**25 [1]** 23/6
**26 [1]** 52/23
**260 [2]** 124/8 124/21
**2700 [1]** 2/23
**274 [1]** 141/8
**275 [1]** 119/19
**2757 [1]** 2/23
**28 [2]** 1/15 32/13
**296 [1]** 1/5
**2:13 [1]** 87/22
**2:13 p.m [1]** 87/24

## 3

**30 [4]** 15/13 109/11 109/13 130/11
**301 [1]** 3/5
**303 [1]** 3/5
**33 [1]** 4/6
**37 [1]** 30/3
**3800 [1]** 2/17
**3850 [1]** 2/17
**3884282 [1]** 32/23
**3rd [2]** 87/22 87/23

## 4

**403 [1]** 59/3
**425 [1]** 1/18
**4th [1]** 2/5

## 5

**50 [1]** 41/25
**546-0942 [1]** 2/6
**59 [1]** 4/6

## 6

**6009 [1]** 2/16
**609-986-1100 [1]** 3/6
**65 [1]** 125/17
**6996 [1]** 2/22

## 7

**713-222-3800 [1]** 2/17
**713-222-3850 [1]** 2/17
**7300 [1]** 2/6
**77007 [1]** 2/17
**772-1000 [1]** 2/12
**772-1359 [1]** 2/12
**790-7300 [1]** 2/6

## 8

**8007 [1]** 3/6

## 9

**92-page [1]** 141/16

**9**

988-2700 [1]  2/23
988-2757 [1]  2/23
9:45 a.m [1]  5/2

**A**

a.m [3]  5/2 76/22 86/24
AACAP [1]  64/25
Abilify [1]  146/4
ability [1]  38/15
able [20]  8/21 11/23 11/23 11/24 11/25 12/3
 12/25 19/20 20/4 32/5 33/6 33/7 48/3 78/21
 79/15 79/18 79/22 79/23 79/23 79/24
ABOVE [1]  149/6
Absolutely [5]  14/19 72/16 94/11 106/5 132/5
abstract [3]  63/18 65/2 66/5
academic [2]  56/15 110/21
accept [1]  140/14
accepted [1]  47/23
access [3]  91/20 94/8 94/21
accomplishments [1]  104/12
According [1]  107/22
accountability [1]  96/21
ACCURATELY [1]  149/5
achievements [2]  103/19 103/24
acknowledged [1]  138/16
act [3]  56/3 56/5 105/19
action [3]  55/18 57/20 58/12
active [1]  134/24
actively [1]  147/10
Actos [1]  31/18
ad [2]  31/10 58/11
add [2]  5/25 6/12
addition [3]  77/9 115/2 119/21
additional [1]  108/10
address [5]  5/13 9/4 10/6 51/12 96/22
adequate [1]  78/23
adequately [1]  146/23
adjourn [1]  140/2
Administration [5]  102/15 102/21 103/25
 110/13 112/4
admissibility [2]  31/23 67/9
admissible [20]  9/10 9/11 16/19 16/24 17/5
 17/9 18/6 20/3 20/7 20/11 25/12 46/7 60/4
 69/10 72/7 74/2 74/9 74/10 78/14 78/25
admission [1]  88/7
admit [4]  23/19 69/16 78/13 88/11
admitted [20]  3/4 9/8 9/14 20/5 27/11 44/21
 50/22 52/15 53/5 60/5 61/19 66/9 69/6 74/5
 77/2 78/13 78/16 80/21 81/7 86/7
admitting [1]  86/23
adolescents [5]  106/2 119/5 143/14 144/11
 145/2
adults [1]  146/24
advance [1]  44/25
advanced [2]  113/21 116/22
adversarial [1]  10/24
adverse [7]  7/5 8/23 89/5 98/15 98/20 99/12
 100/7
advisory [3]  36/2 61/24 77/13
affairs [2]  53/23 75/11
after [15]  21/22 36/3 36/3 67/3 86/15 93/11
 107/4 107/5 109/3 109/25 144/2 144/21 145/21
 146/17 147/20
after-the-fact [1]  93/11
afternoon [3]  131/25 131/25 147/24
afterwards [2]  59/17 105/6
again [21]  8/11 8/15 17/11 32/11 35/9 45/6
 54/19 56/16 64/7 78/7 80/3 80/22 85/11 86/17
 117/20 123/7 124/10 135/16 141/2 142/22
 148/9
against [2]  120/14 124/6

age [1]  29/11
agendas [1]  55/11
agree [1]  55/21
ahead [13]  16/25 22/20 39/17 42/24 43/18
 43/18 45/4 45/12 47/19 52/17 99/23 105/12
 128/2
air [1]  81/13
alert [1]  30/14
alerted [1]  30/13
alertive [1]  30/18
all [93]  5/3 7/13 7/24 8/7 10/7 11/8 12/5
 12/6 13/7 14/7 16/10 16/25 17/17 18/8 18/23
 18/25 19/4 19/13 20/2 23/2 24/7 24/23 25/2
 25/24 26/2 27/17 30/11 30/12 30/16 38/23
 39/25 41/22 43/21 43/21 45/2 46/25 47/13
 47/19 54/20 57/21 58/5 58/22 59/7 59/16 60/2
 63/11 65/8 74/13 74/15 76/2 76/8 80/22 82/3
 88/2 88/6 88/8 89/15 90/3 90/8 91/17 91/25
 93/25 94/17 94/17 98/10 101/2 101/21 104/15
 106/22 112/23 114/2 114/9 116/14 117/24
 120/4 121/10 122/15 123/20 127/13 128/15
 131/10 131/12 134/19 135/19 135/22 140/9
 140/22 141/14 143/17 146/20 148/6 148/14
 148/22
Allergen [1]  122/12
ALLISON [1]  3/4
allison.brown [1]  3/7
allow [1]  64/15
allowed [9]  11/17 12/6 13/15 31/2 40/9 45/9
 95/10 140/20 147/9
almost [3]  13/6 39/25 132/20
along [2]  83/11 84/16
already [10]  18/16 18/20 27/15 44/7 45/18
 55/16 69/15 77/9 108/25 114/3
also [35]  6/2 7/18 8/11 28/4 29/17 41/22
 47/24 50/19 52/19 57/4 75/5 79/4 79/6 84/25
 104/25 106/12 106/14 110/7 113/11 113/24
 114/12 114/15 115/6 115/13 115/18 115/23
 118/6 118/18 129/2 129/3 130/12 138/11
 139/16 139/20 147/22
alternative [1]  12/4
Alternatively [1]  12/4
although [1]  75/11
always [4]  10/23 12/12 13/6 123/25
am [129]  6/13 10/10 11/17 11/18 11/24 12/6
 13/5 15/9 15/9 15/12 15/14 15/18 16/8 16/10
 16/12 17/21 19/7 19/12 21/20 22/22 22/24
 28/2 29/16 30/4 30/4 30/7 32/7 33/5 34/24
 36/3 36/3 37/5 39/9 40/12 41/17 42/7 43/2
 43/3 43/11 43/12 43/14 46/19 46/22 47/2 47/7
 48/3 48/5 49/10 49/22 50/2 50/24 51/11 51/21
 56/15 57/17 59/7 61/11 63/2 63/7 63/10 63/16
 64/14 65/13 66/25 68/4 68/7 68/9 69/7 69/16
 70/15 73/2 73/7 73/8 74/21 76/17 76/21 80/4
 80/5 84/10 84/17 89/7 91/3 97/8 98/17 99/22
 100/8 101/3 101/3 102/10 104/2 104/15 105/7
 105/8 106/11 108/15 108/20 111/5 112/23
 113/24 114/24 115/14 115/20 115/25 116/16
 116/25 117/3 118/2 120/21 121/7 122/17
 127/13 128/23 132/12 133/4 133/5 133/20
 134/9 134/20 135/2 135/8 135/8 135/21 136/15
 138/25 139/21 139/23 146/17 147/3 147/10
amazing [1]  85/17
Amazon [1]  112/24
American [3]  103/20 103/22 112/20
Amherst [3]  106/25 107/4 107/13
among [4]  65/4 80/9 97/4 111/5
amount [4]  75/14 75/19 78/11 119/11
analysis [1]  137/8
analyze [2]  137/5 137/7
AND/OR [1]  149/16
ANN [2]  1/24 149/10
another [12]  25/8 51/9 56/22 63/12 75/20

**A**

**another... [7]** 82/10 96/13 115/24 116/21 118/20 128/7 142/7
**answer [14]** 91/16 91/22 95/8 112/2 118/2 119/8 127/22 128/20 128/24 133/5 133/6 135/9 135/17 147/16
**answered [1]** 95/11
**Anti [1]** 68/23
**Anti-science [1]** 68/23
**antipsychotic [3]** 132/24 133/10 133/23
**antipsychotics [4]** 138/17 145/24 146/3 146/3
**any [30]** 5/12 6/10 8/13 13/20 20/20 23/22 24/2 30/13 33/17 48/14 67/4 89/2 91/20 94/12 99/9 99/19 104/18 131/11 133/12 133/23 134/14 134/15 136/3 138/13 140/13 140/19 144/5 146/14 149/14 149/15
**anybody [1]** 69/2
**anymore [2]** 74/14 134/25
**anyone [3]** 41/6 94/12 148/13
**anything [11]** 10/14 31/19 31/24 51/2 62/22 86/13 127/15 127/19 127/23 128/4 145/10
**anyway [2]** 17/6 51/22
**apart [1]** 114/2
**appeal [1]** 12/24
**APPEARANCES [2]** 2/2 3/2
**appears [2]** 33/21 108/10
**appellate [1]** 42/19
**Appetite [1]** 112/20
**APPLY [1]** 149/14
**applying [1]** 76/6
**appointed [4]** 102/16 102/18 103/14 103/16
**appreciate [4]** 19/15 53/3 97/21 112/22
**Appropos [1]** 47/6
**appropriate [1]** 6/6
**approved [10]** 129/5 129/13 144/4 144/7 144/8 144/10 144/25 145/12 145/20 146/13
**approximately [6]** 103/15 110/17 119/18 119/19 124/22 125/18
**APRIL [1]** 1/6
**are [303]**
**area [5]** 112/10 114/21 116/24 133/3 138/4
**aren't [2]** 64/8 81/12
**argue [1]** 85/12
**argued [1]** 56/17
**argument [9]** 19/21 32/20 58/11 64/16 68/4 81/18 82/22 82/24 122/4
**argumentative [1]** 65/24
**arguments [1]** 21/23
**arise [2]** 5/13 111/20
**ARNOLD [1]** 2/15
**arnolditkin.com [1]** 2/16
**around [4]** 26/3 46/12 148/9 148/10
**article [9]** 7/20 7/21 7/23 7/24 24/9 26/11 28/21 54/14 84/13
**articles [5]** 8/4 112/13 113/9 113/12 133/23
**asking [4]** 93/5 97/8 121/8 147/10
**aspects [2]** 50/10 56/25
**assist [2]** 95/23 96/3
**associate [1]** 92/18
**associated [2]** 67/25 111/24
**assume [5]** 35/6 40/16 42/17 95/12 143/5
**assuming [2]** 41/21 46/23
**assure [1]** 68/6
**assured [1]** 80/4
**astounding [1]** 84/12
**attached [2]** 70/23 71/10
**attaches [2]** 71/3 71/4
**attachment [1]** 71/7
**attack [1]** 31/11
**attacks [1]** 14/11
**attempt [1]** 100/15
**attend [1]** 107/5
**attention [1]** 5/21
**attorney [4]** 22/23 64/18
**96/19**
**attributed [1]** 68/21
**authentic [1]** 25/20
**authenticate [3]** 23/17 26/9 62/12
**authenticated [1]** 62/13
**authentication [2]** 47/24 89/18
**author [7]** 41/8 82/12 82/19 83/13 84/15 84/19 85/3
**authority [1]** 105/24
**authorized [1]** 132/7
**autism [5]** 143/22 144/5 144/25 145/14 145/20
**available [12]** 25/13 39/8 60/20 61/14 61/18 91/5 92/15 93/24 95/23 97/10 104/6 112/24
**avoid [1]** 47/3
**avoided [1]** 45/15
**aware [3]** 34/4 95/17 97/5
**away [1]** 120/3

**B**

**back [19]** 9/17 11/9 17/7 44/25 65/7 90/17 91/16 91/22 95/8 112/17 115/22 123/2 123/12 125/3 133/6 133/11 133/15 137/14 142/9
**backdoor [1]** 82/24
**background [7]** 14/2 105/15 106/18 107/10 108/25 129/20 130/21
**bad [2]** 83/15 83/18
**badges [1]** 148/11
**Baltimore [1]** 109/6
**bar [2]** 106/13 106/15
**barrage [2]** 29/22 29/23
**based [11]** 16/21 18/4 25/18 50/5 60/18 78/22 100/5 100/9 129/19 140/7 146/20
**basic [3]** 29/5 31/5 62/4
**basically [2]** 53/4 89/18
**basis [16]** 14/22 18/3 38/10 40/25 42/18 42/20 43/20 49/16 52/6 65/19 73/12 78/24 88/23 88/24 118/4 147/18
**Bates [7]** 32/24 75/24 83/20 87/17 87/25 107/24 141/13
**Bayer [1]** 122/10
**be [156]**
**became [2]** 104/4 109/22
**because [47]** 9/8 13/24 14/7 14/16 15/17 16/7 16/19 17/3 17/12 17/15 18/10 21/11 25/12 30/25 31/5 39/13 40/24 42/18 46/3 46/5 49/16 50/4 50/12 50/14 54/20 56/6 57/20 61/16 61/21 66/2 67/10 71/13 78/15 82/20 86/14 88/22 92/16 99/25 107/19 111/9 119/2 123/15 125/11 127/2 128/10 137/8 147/4
**become [3]** 15/11 109/7 110/6
**been [58]** 6/17 6/18 11/14 12/8 15/3 22/8 28/23 29/24 30/3 31/17 34/19 37/21 40/5 40/6 41/7 41/9 41/22 42/14 44/16 46/11 46/20 48/12 48/13 51/6 53/9 55/18 57/21 65/15 77/9 81/16 95/21 102/5 102/7 105/2 105/3 109/13 111/3 115/3 116/4 116/18 117/9 118/19 119/12 119/17 121/11 121/12 123/19 124/20 127/4 127/10 128/5 135/19 136/10 136/12 136/14 137/8 137/15 142/10
**before [23]** 9/3 12/22 19/14 19/23 22/4 35/25 36/23 56/18 68/24 69/20 70/22 85/11 85/21 86/11 90/12 90/23 99/23 108/22 109/22 112/10 141/15 146/14 148/12
**beginning [6]** 6/2 14/21 29/21 39/21 73/18 103/6
**behalf [1]** 126/21
**behind [1]** 90/8
**being [10]** 51/5 60/2 73/9 76/8 113/17 114/4 114/5 118/20 118/21 120/12
**believe [15]** 10/20 27/18 28/16 30/2 46/8 66/12 71/9 80/25 83/4 99/16 100/12 100/14

**B**

believe... **[3]**  101/7 141/7 145/25
believes **[1]**  36/17
below **[1]**  59/14
bene **[1]**  60/14
BENITA **[1]**  1/6
best **[2]**  31/21 117/14
bestseller **[1]**  112/17
better **[2]**  21/15 41/6
between **[11]**  35/21 37/9 37/14 37/18 38/23
  39/6 41/14 46/21 55/17 102/8 108/6
beyond **[3]**  86/13 126/17 138/3
bias **[2]**  31/12 31/13
bickering **[1]**  17/25
BIDDLE **[4]**  2/20 94/6 95/17 95/19
big **[5]**  74/24 97/24 97/24 104/25 123/14
bill **[1]**  118/10
binder **[39]**  15/13 22/21 43/2 43/12 48/3 48/7
  60/13 60/17 60/19 61/12 62/14 62/24 63/13
  65/13 65/17 68/16 69/8 72/9 74/25 75/4 76/19
  76/21 77/4 77/5 77/25 78/8 78/14 80/4 80/24
  84/7 85/12 86/3 86/5 87/4 87/6 87/20 87/21
  89/15 135/21
biologics **[1]**  128/10
biostatistics **[8]**  111/7 113/22 113/25 114/15
  114/20 131/3 138/12 139/17
bipolar **[1]**  143/22
bit **[3]**  85/2 136/8 136/9
black **[7]**  5/20 5/25 6/3 6/6 6/11 6/12 6/18
blank **[1]**  41/24
blessing **[1]**  83/12
blood **[1]**  116/20
board **[13]**  61/24 77/13 109/7 109/9 109/11
  109/13 116/23 116/25 128/6 133/2 133/7 134/6
  134/11
boards **[3]**  115/20 116/15 116/19
bogged **[1]**  50/9
book **[5]**  112/21 112/25 113/4 115/24 133/25
books **[4]**  17/22 53/16 112/14 116/9
boring **[1]**  25/23
Boston **[1]**  63/4
both **[22]**  11/6 16/20 46/19 50/6 56/25 69/23
  70/4 77/5 78/2 80/24 81/2 91/18 91/24 96/9
  113/21 117/22 121/2 128/20 130/12 141/20
  144/18 146/11
Botox **[1]**  31/18
bottom **[5]**  57/12 68/15 75/24 87/14 87/15
box **[7]**  5/20 5/25 6/3 6/6 6/11 6/12 6/18
boxes **[3]**  119/7 143/3 143/3
boys **[1]**  76/7
break **[3]**  90/12 101/14 144/21
brief **[3]**  8/19 90/19 99/7
briefly **[5]**  105/4 106/18 116/14 126/7 131/17
bring **[8]**  25/6 38/6 38/22 44/25 69/19 70/7
  85/21 90/23
bringing **[1]**  126/13
broadcast **[1]**  94/12
brought **[1]**  26/14
BROWN **[1]**  3/4
bulk **[2]**  54/12 58/23
bunch **[3]**  41/15 51/16 68/17
burden **[1]**  113/11
Bush **[1]**  102/17
business **[45]**  7/13 18/15 18/19 18/21 19/5
  20/5 23/24 24/2 25/20 27/16 37/4 37/8 37/14
  37/17 37/18 37/18 37/23 38/2 38/4 38/19 39/3
  39/4 39/5 41/10 44/19 45/20 47/13 48/16
  51/25 52/2 52/2 52/3 53/13 53/20 53/23 53/25
  54/5 54/5 59/18 64/8 66/6 68/17 77/14 93/17
  108/12
busy **[1]**  41/14

**C**

cabinet **[2]**  103/10 103/12
calculation **[1]**  124/5
California **[4]**  110/25 111/4 115/18 134/20
call **[10]**  11/25 43/9 43/10 47/7 62/24 63/23
  67/25 76/24 83/5 113/23
called **[12]**  9/17 33/17 47/2 92/25 95/22 96/3
  115/3 116/12 117/7 120/4 120/5 128/6
calls **[2]**  88/19 101/18
came **[2]**  89/22 126/19
can **[87]**  5/25 6/20 7/8 7/16 9/4 9/15 10/19
  13/23 16/21 18/4 18/6 21/16 23/12 23/12
  23/19 24/12 25/6 25/8 28/15 30/19 31/6 31/21
  32/13 32/25 40/6 40/8 40/13 41/3 41/19 41/19
  41/21 42/17 44/13 45/15 47/2 47/3 50/22 51/2
  51/12 52/13 53/6 54/6 54/9 54/25 55/11 56/3
  57/3 60/22 62/9 62/24 63/4 65/9 66/10 66/13
  66/17 68/6 68/13 69/15 70/7 74/6 78/13 81/5
  83/20 87/17 88/13 88/15 94/12 96/10 96/12
  99/19 100/6 104/15 105/11 105/14 111/20
  117/12 118/25 120/11 122/19 123/12 123/25
  127/21 127/22 140/15 142/4 147/16 147/23
can't **[14]**  20/19 30/24 30/24 41/11 45/3 47/15
  48/12 48/13 55/11 67/10 74/19 74/20 93/13
  104/15
Canada **[1]**  63/2
cancer **[2]**  116/22 116/23
cannot **[3]**  5/25 6/11 140/15
capital **[3]**  67/13 67/13 67/14
Capture **[1]**  116/12
card **[1]**  43/15
care **[3]**  111/13 111/14 133/16
career **[1]**  110/18
Caren **[4]**  60/13 60/19 62/14 87/21
Carin **[14]**  60/17 61/12 62/24 63/13 75/4 76/21
  78/7 80/13 80/15 80/24 84/7 87/4 87/6 87/19
Carnegie **[1]**  3/5
carried **[1]**  136/20
carries **[1]**  136/16
case **[105]**  6/3 6/3 8/9 8/24 9/15 10/5 10/18
  10/19 10/21 10/22 11/16 12/3 12/11 12/13
  12/14 12/17 12/22 13/3 13/11 14/16 16/10
  19/18 19/22 20/16 21/20 21/2 21/24 23/13
  24/6 24/11 24/16 24/20 24/24 25/15 25/23
  27/20 28/14 29/2 29/17 29/19 30/9 31/2 31/6
  39/10 40/14 41/5 41/18 41/24 42/10 42/21
  43/14 45/8 45/14 46/15 46/25 47/9 53/20 54/4
  54/18 54/23 55/20 56/25 57/20 58/12 58/15
  58/17 60/10 61/10 70/14 71/19 71/22 74/8
  81/5 82/20 83/5 83/16 83/19 85/6 92/23 93/19
  94/4 95/22 97/25 98/4 99/19 106/21 114/16
  121/18 122/9 122/10 126/9 126/13 126/19
  126/21 132/23 134/3 135/10 135/20 135/24
  137/21 139/6 143/12 148/12 148/15 148/16
cases **[13]**  12/8 28/23 31/3 31/18 31/18 76/2
  98/7 100/13 105/22 122/14 124/3 126/24 127/2
categories **[1]**  6/25
categorized **[1]**  145/9
category **[2]**  6/25 74/16
causation **[4]**  11/24 135/7 135/8 139/7
cause **[4]**  22/2 55/17 57/20 149/7
caused **[1]**  22/14
causes **[1]**  135/6
caution **[1]**  128/2
caveat **[1]**  147/14
cease **[1]**  54/20
center **[3]**  3/5 136/13 136/14
centerpiece **[1]**  71/19
CEO **[1]**  24/24
certain **[6]**  89/22 89/23 95/21 111/17 111/17
  116/9
certainly **[9]**  38/9 58/5 58/20 74/3 97/19

certainly... [4]  104/2 112/9 137/8 143/23
certainty [2]  13/9 146/20
certification [2]  108/10 149/13
certified [9]  1/24 109/7 109/9 109/11 109/13
  133/3 133/8 134/7 134/11
CERTIFY [1]  149/4
CERTIFYING [1]  149/16
CFRs [2]  99/6 99/25
Cgomez [1]  2/5
chair [3]  128/5 128/6 128/7
Chairman [1]  73/4
challenge [2]  38/11 42/20
chance [2]  10/13 43/5
chances [1]  67/4
change [1]  95/2
changed [2]  102/21 104/9
changes [2]  39/14 97/5
charge [2]  118/7 118/9
charged [2]  80/10 80/17
checked [1]  76/8
cherry [1]  44/15
cherry-picking [1]  44/15
Chicago [1]  108/7
chief [2]  91/2 110/21
children [12]  73/21 104/24 105/25 119/5
  119/15 143/13 143/21 144/5 144/11 145/2
  145/13 146/24
chips [1]  17/11
choice [1]  82/17
cholesterol [1]  104/20
chose [1]  83/12
CHRISTOPHER [1]  2/4
circumstances [1]  54/22
circumstantial [1]  24/20
circumstantially [1]  24/19
citizen's [1]  6/5
city [3]  1/18 92/2 101/4
CIVIL [1]  1/3
claim [8]  28/10 28/11 28/22 28/22 29/3 55/5
  57/10 126/13
claims [1]  85/5
clarification [1]  89/10
clarify [1]  58/5
class [1]  51/9
classic [2]  37/15 59/18
classified [2]  145/8 145/11
clean [1]  39/20
clear [19]  5/23 6/2 7/20 10/3 18/22 24/6 24/9
  29/3 33/5 58/14 58/17 58/20 62/6 69/17 88/6
  88/15 90/8 92/21 96/15
clearly [1]  23/23
clinical [18]  7/4 133/12 133/17 134/15 136/9
  136/10 136/11 136/13 136/14 136/15 136/18
  136/21 136/21 136/24 137/6 137/16 137/20
  143/12
Clinton [2]  102/22 102/25
close [1]  133/25
closing [2]  19/20 81/18
CM [1]  149/10
collapse [1]  134/21
colleague [1]  41/5
colleagues [1]  37/18
collect [1]  137/4
college [5]  106/23 106/24 106/25 107/7 107/13
colloquy [1]  91/15
Columbia [2]  109/19 109/21
com [1]  112/24
combined [1]  96/9
come [37]  8/25 17/7 19/17 20/8 23/17 23/22
  30/4 33/9 36/20 36/23 38/12 39/18 39/20
  50/23 54/25 60/5 60/9 62/3 62/9 63/3 63/4

64/9 67/3 72/3 78/18 85/3 90/15 97/6 99/11
99/11 100/7 100/21 101/9 113/1 113/16 118/18
134/21 142/12
comes [18]  19/14 37/4 37/6 37/23 46/13 61/5
  61/13 61/18 62/18 71/12 71/25 72/2 72/5
  72/11 99/4 121/21 122/9 122/10
comfort [1]  90/11
comfortable [1]  78/20
coming [3]  8/19 85/7 133/25
commencement [1]  115/12
comment [1]  35/3
commentary [3]  81/25 89/2 127/21
commented [1]  82/5
comments [6]  14/11 26/23 54/9 54/11 61/22
  62/2
Commissioner [16]  102/14 102/19 102/24 103/5
  103/25 104/4 104/13 109/23 109/25 110/2
  110/13 110/19 112/7 129/16 130/10 132/21
committee [4]  36/2 95/3 128/7 128/8
COMMON [3]  1/2 97/5 149/11
communicated [1]  146/16
communications [1]  65/18
companies [9]  115/20 116/15 116/18 117/5
  118/14 128/5 128/9 128/12 128/21
companies' [1]  128/16
company [46]  1/10 7/13 7/16 15/18 15/22 19/16
  20/2 22/2 24/24 27/4 27/18 27/19 36/18 54/11
  59/23 61/23 61/25 62/3 67/13 67/14 67/18
  67/20 71/13 77/13 77/14 77/16 89/23 89/24
  116/19 116/19 116/21 116/24 116/25 117/7
  117/20 117/20 118/11 118/15 119/23 120/14
  124/7 127/5 127/6 128/6 128/7 130/13
company's [1]  71/14
compare [1]  122/5
complete [1]  135/22
completely [1]  78/20
compliance [1]  128/7
computer [4]  37/19 52/2 54/5 143/7
concern [1]  89/20
concerned [4]  29/16 82/3 91/3 97/8
concerns [2]  9/5 27/8
concluded [2]  6/6 8/16
conclusion [1]  8/22
condition [3]  75/21 134/4 134/8
conditionally [1]  23/19
conduct [7]  29/18 57/23 83/13 83/15 83/19
  128/9 143/21
conducted [1]  137/5
conference [1]  64/6
confidential [1]  37/13
confidentially [1]  37/16
confidently [1]  66/23
confirmed [3]  103/11 103/13 103/16
Congress [1]  105/23
consent [1]  22/13
Conservator [1]  1/7
consider [2]  97/3 140/22
considerable [1]  116/3
consideration [3]  35/5 40/22 88/19
considered [2]  52/10 73/6
constant [1]  96/4
constitute [1]  8/23
consulted [3]  117/4 117/9 117/11
consulting [5]  32/16 115/19 116/13 121/11
  121/12
contain [1]  142/22
contained [2]  147/25 149/5
contempt [1]  96/23
contents [3]  52/13 70/21 82/4
context [6]  21/15 21/19 23/5 37/22 42/17
  137/2
continue [1]  95/21
Continued [1]  3/2

## C

**contradict [1]**   79/23
**contributed [1]**   113/12
**contributing [1]**   73/12
**contributions [1]**   113/2
**control [6]**   92/17 92/18 95/6 112/19 116/10
  149/15
**controlled [1]**   137/3
**controlling [1]**   113/5
**convenience [1]**   50/12
**conversation [2]**   35/21 39/6
**convictions [1]**   82/14
**copy [3]**   98/14 112/17 149/7
**core [4]**   8/11 10/3 10/9 54/13
**corporate [2]**   25/9 28/25
**Corporation [1]**   2/9
**correct [39]**   25/17 35/7 65/5 80/8 102/6
  106/17 108/3 108/5 108/11 109/16 110/10
  110/25 112/14 112/20 113/13 113/22 118/7
  118/8 118/12 121/19 124/3 124/17 124/21
  124/24 125/6 125/10 125/11 125/14 126/5
  127/11 128/24 133/9 136/7 139/6 139/8 141/16
  142/9 146/4 149/7
**Cosmetic [1]**   105/19
**could [9]**   25/24 44/6 66/23 69/25 85/19 91/13
  133/5 133/6 140/7
**counsel [18]**   2/7 2/13 2/18 2/24 3/7 6/14 11/4
  22/10 43/18 44/11 50/6 79/22 79/23 80/24
  93/23 95/18 97/8 129/7
**count [2]**   123/25 127/8
**counted [1]**   123/18
**counter [1]**   62/23
**counting [1]**   124/2
**country [1]**   41/6
**COUNTY [2]**   1/2 149/11
**couple [7]**   84/11 100/13 120/12 120/12 120/13
  124/6 132/2
**course [16]**   13/23 25/19 31/8 34/15 49/25 50/5
  59/22 76/10 81/24 84/10 88/8 100/20 104/9
  115/4 120/25 141/14
**court [74]**   1/2 1/25 4/6 4/6 5/21 6/8 8/18
  8/20 11/19 14/17 22/23 25/7 26/13 29/22 30/2
  30/15 31/4 32/14 33/17 33/19 33/19 33/20
  37/24 39/7 40/7 41/3 41/4 41/20 49/18 51/6
  51/19 59/9 59/10 59/11 60/20 64/19 66/10
  67/7 68/16 72/13 81/24 85/11 90/22 91/8
  91/12 91/24 92/9 93/23 94/19 94/24 95/4 95/6
  95/12 97/5 97/6 97/11 98/3 98/21 99/3 100/13
  105/22 113/18 118/4 118/4 118/15 121/21
  122/5 126/20 141/13 146/22 148/9 149/10
  149/11 149/16
**Court what [1]**   51/19
**Court's [7]**   10/16 74/11 91/20 91/23 92/16
  98/12 99/25
**Court-1 [3]**   33/17 33/19 33/20
**Court-1..........................Page [1]**   4/6
**Court-2 [2]**   59/9 59/10
**Court-2..........................Page [1]**   4/6
**courtesy [1]**   98/14
**courthouse [2]**   25/3 30/3
**courtroom [25]**   1/18 11/15 28/7 29/15 60/14
  61/10 66/23 69/13 90/25 96/11 100/23 120/16
  120/23 121/10 123/24 124/8 124/21 126/25
  127/3 127/6 134/21 141/25 142/12 148/18
  148/21
**courtrooms [1]**   29/10
**courts [4]**   29/12 31/12 42/19 81/17
**cover [1]**   14/7
**covered [1]**   69/10
**covering [1]**   24/20
**crazy [1]**   64/12
**credibility [2]**   140/16 140/18
**crime [1]**   56/23
**criminal [1]**   55/13
**cross [19]**   4/3 6/15 8/21 8/25 12/10 25/10
  31/3 31/25 37/2 38/15 39/8 42/14 60/15 79/22
  100/15 122/25 123/4 123/7 131/22
**cross-examination [2]**   79/22 131/22
**cross-examine [6]**   8/21 25/10 31/3 31/25 38/15
  60/15
**cross-examined [3]**   12/10 122/25 123/4
**CRR [2]**   1/24 149/10
**culled [1]**   15/3
**culling [1]**   65/12
**cure [2]**   104/8 104/9
**current [2]**   25/7 133/25
**currently [2]**   111/5 134/18
**curriculum [2]**   107/22 113/10
**custodial [1]**   39/6
**cuts [1]**   85/12
**cutting [1]**   41/15
**CV [2]**   107/25 141/15

## D

**damage [2]**   22/14 99/20
**damages [4]**   36/11 58/9 58/15 58/20
**dangerous [1]**   29/2
**dark [1]**   44/19
**data [28]**   7/6 7/7 7/24 8/7 15/23 16/6 20/15
  24/12 24/13 28/15 53/15 55/4 55/7 55/10
  56/10 56/13 71/15 71/18 76/10 76/25 77/15
  78/17 81/19 137/9 137/13 137/17 137/18
  145/17
**database [1]**   143/7
**date [7]**   103/14 119/17 134/2 142/4 142/18
  144/8 144/10
**dated [7]**   32/13 64/23 76/16 78/8 82/8 142/4
  142/17
**DAVID [5]**   4/3 101/18 101/19 106/7 112/20
**day [9]**   5/5 5/17 12/25 25/8 53/10 95/9 101/2
  102/8 111/15
**days [10]**   25/10 44/5 47/7 102/6 124/8 124/21
  125/16 125/17 125/22 126/4
**dbr.com [2]**   2/23 2/24
**de [1]**   60/14
**deadline [1]**   115/25
**deal [2]**   100/14 128/11
**dealing [1]**   128/8
**dealt [1]**   113/4
**Dean [3]**   110/7 110/9 110/20
**Dear [1]**   80/15
**December [5]**   80/2 80/3 80/13 87/22 87/23
**December 3 [1]**   80/3
**December 3rd [2]**   87/22 87/23
**Dechert [1]**   94/2
**decide [4]**   36/7 99/18 99/21 147/5
**decided [2]**   57/13 67/24
**decision [4]**   22/12 22/13 99/3 140/18
**decisions [1]**   33/8
**Defendant [2]**   2/24 3/7
**Defendants [1]**   1/12
**defense [4]**   68/3 79/6 95/4 100/9
**defer [1]**   57/8
**definition [1]**   99/12
**definitions [1]**   8/24
**degree [5]**   108/2 108/4 108/6 115/5 146/20
**degrees [5]**   115/2 115/3 115/4 115/5 115/7
**delay [1]**   5/14
**delays [1]**   102/9
**demonstrates [1]**   82/20
**dep [1]**   43/10
**depend [1]**   123/8
**depends [1]**   45/21
**deposed [9]**   34/20 41/9 60/22 61/16 61/21
  62/14 75/9 78/3 125/11

**deposition [23]** 25/24 40/3 41/16 41/23 46/7
60/13 63/5 63/19 66/13 70/5 72/8 79/4 80/7
81/2 81/9 85/12 89/13 89/14 125/17 125/25
135/16 135/19 135/25
**depositions [7]** 41/25 77/7 81/10 120/23
124/11 125/6 141/10
**described [2]** 129/21 133/10
**designate [1]** 25/24
**destroy [1]** 86/2
**detail [1]** 47/8
**determine [4]** 17/21 49/15 93/13 122/3
**determined [1]** 18/20
**developed [1]** 41/25
**development [6]** 1/11 2/25 25/15 34/7 104/7
104/11
**device [1]** 116/19
**devoted [1]** 125/22
**DIANE [1]** 3/3
**diane.sullivan [1]** 3/6
**did [53]** 22/15 35/3 35/4 36/18 36/19 40/11
67/22 73/4 77/20 77/21 78/23 91/22 101/2
102/21 102/24 103/18 103/24 104/21 104/23
104/25 105/20 106/23 107/4 107/6 107/14
109/3 109/5 109/7 109/8 110/5 110/6 115/4
116/2 116/24 117/18 117/19 119/10 120/18
124/17 125/6 126/3 126/9 126/20 127/15 141/8
141/10 141/19 143/17 144/13 144/17 144/25
146/6 146/13
**didn't [15]** 5/19 5/20 7/7 16/7 24/9 27/5 43/5
46/4 62/17 69/20 73/10 79/14 79/20 86/2
104/5
**different [17]** 26/16 26/19 34/11 37/25 40/8
45/25 53/8 55/20 59/12 67/16 67/17 83/8
92/24 92/25 92/25 93/9 93/10
**difficulty [1]** 113/5
**dire [3]** 122/19 131/17 131/18
**direct [14]** 4/3 11/16 12/7 18/12 20/7 25/20
31/24 67/8 68/6 84/22 101/23 141/4 141/24
149/15
**DIRECTION [1]** 149/16
**directly [2]** 10/20 107/5
**Director [1]** 75/10
**disagrees [1]** 9/2
**disappeared [1]** 67/11
**disappearing [1]** 67/12
**discovery [2]** 60/12 77/6
**discretion [1]** 81/25
**discuss [3]** 144/22 147/20 148/12
**discussed [4]** 26/12 88/12 147/6 147/23
**discussion [4]** 50/14 91/12 101/6 142/23
**disease [1]** 104/10
**diseases [3]** 111/16 111/18 111/19
**dismissed [2]** 55/18 57/21
**disorder [1]** 143/22
**disregard [1]** 6/10
**distinction [1]** 55/16
**distressed [1]** 46/19
**distribution [1]** 128/17
**DISTRICT [1]** 1/2
**divide [1]** 125/16
**DIVISION [1]** 1/3
**divulged [1]** 55/8
**DJERASSI [1]** 1/21
**do [110]** 6/13 6/25 7/11 7/14 8/7 9/24 10/10
11/17 13/6 13/8 14/18 16/9 16/13 16/23 17/9
19/25 20/25 21/2 21/3 21/13 24/8 24/10 24/10
24/15 24/21 24/22 27/2 27/4 27/8 28/13 29/17
29/18 29/24 29/25 29/25 30/5 30/12 31/16
33/6 33/16 36/10 36/21 40/8 40/14 40/20
41/17 42/5 43/3 45/12 47/11 47/15 49/21 50/2
52/22 54/17 59/5 67/21 68/8 70/14 71/6 71/22

79/24 81/21 81/24 82/16 83/2 83/4 83/17
84/11 85/5 85/21 86/6 88/10 88/16 90/25
93/13 94/4 94/14 95/21 96/5 97/2 98/19 99/7
101/10 105/9 106/19 108/19 108/20 109/3
115/6 115/18 117/25 118/9 118/21 119/24
119/25 120/3 121/2 124/13 125/21 125/25
129/25 138/2 139/9 140/14 140/20 144/2
146/19 146/25 148/12
**do/say [1]** 82/16
**doc [1]** 135/16
**doctor [28]** 7/20 9/7 9/9 14/12 14/14 16/7
20/19 24/8 27/3 27/5 40/11 47/8 52/22 54/15
63/3 64/6 66/5 68/24 70/13 73/2 73/8 106/10
108/14 133/22 134/18 137/11 139/4 147/9
**doctorate [2]** 115/13 115/14
**doctors [9]** 22/6 22/7 22/9 54/11 61/23 136/3
136/25 138/19 138/24
**document [60]** 19/12 19/12 23/11 27/12 32/4
32/17 33/19 33/22 33/25 34/5 35/4 35/20
36/25 37/3 38/5 38/14 38/19 46/6 52/9 52/13
52/24 59/8 59/12 60/3 60/9 60/11 62/15 62/16
63/17 63/21 63/22 64/21 65/4 66/24 67/3 67/6
67/16 67/22 68/2 68/5 69/2 71/12 71/14 72/6
73/5 73/5 73/7 73/11 73/13 75/6 76/14 76/15
81/23 82/4 83/5 85/18 89/7 89/16 89/25 90/8
**documents [82]** 7/5 7/14 9/6 9/13 11/18 11/21
11/22 12/9 14/25 15/2 15/4 15/14 15/16 15/19
16/13 16/18 16/18 18/10 18/22 19/4 21/3
21/11 22/20 22/22 23/7 23/18 25/21 26/9
30/10 30/22 31/23 32/9 34/4 36/16 40/2 41/8
42/3 42/10 42/13 42/14 43/8 43/19 47/21
48/14 48/15 49/15 50/15 52/20 53/8 53/22
59/5 65/16 66/11 70/10 72/15 72/25 73/14
74/8 81/12 85/22 85/24 85/25 86/4 86/6 86/8
88/11 88/15 88/17 89/15 89/22 92/14 119/3
119/6 119/7 119/9 141/14 143/7 143/10 143/11
144/24 147/22 147/25
**does [15]** 8/22 30/2 31/12 36/9 57/22 92/18
111/19 111/25 116/19 136/13 136/15 137/9
139/7 142/22 149/14
**doesn't [19]** 17/8 20/24 26/14 29/14 35/2 41/2
42/16 46/7 48/20 56/7 56/7 60/25 67/24 78/16
82/13 83/2 99/14 100/5 132/8
**doing [10]** 12/8 36/24 50/25 65/21 111/3
113/19 121/11 121/12 122/19 127/10
**dollars [1]** 31/9
**don't [65]** 7/9 7/23 10/6 11/8 13/18 14/2
15/17 17/16 17/23 18/18 19/8 21/2 21/12
23/10 24/2 26/7 27/5 33/22 33/24 38/17 38/18
39/2 39/3 44/10 45/8 45/14 45/24 48/10 48/17
50/6 51/18 55/14 55/21 62/2 62/22 65/22 67/4
67/8 68/5 72/22 76/11 78/25 82/11 84/21 85/8
85/19 93/16 93/17 95/25 96/4 97/14 113/10
117/13 120/5 131/18 133/12 133/17 134/18
134/25 135/2 135/3 136/19 138/6 138/20
142/17
**done [22]** 29/9 39/22 43/17 44/15 44/21 50/18
52/17 53/4 63/15 64/19 97/25 99/19 109/13
118/13 118/22 126/25 129/11 134/15 136/18
136/23 143/20 143/21
**door [2]** 32/2 38/11
**dot [1]** 112/24
**doubt [1]** 40/4
**down [11]** 15/3 25/2 25/6 46/13 47/3 50/7 50/9
59/24 81/5 84/3 120/15
**dozen [1]** 44/2
**Dr [98]** 5/8 5/18 6/10 6/16 6/24 7/2 7/12
7/23 8/2 8/12 8/16 9/17 9/24 10/4 11/19
14/20 17/6 17/19 18/13 19/19 20/2 24/18
27/11 27/16 27/23 28/7 28/23 30/23 31/23
32/4 32/7 33/12 34/4 35/2 37/11 39/19 39/20
40/10 40/15 44/12 44/23 47/8 47/11 48/4
50/21 59/2 60/4 60/6 60/8 60/10 62/20 64/8

## D

**Dr... [46]** 65/20 68/24 69/19 69/21 72/4 72/5
72/11 72/14 81/17 85/8 85/15 86/11 86/14
90/16 98/14 98/19 99/23 100/4 102/3 102/5
130/4 130/17 131/25 132/6 132/10 132/16
132/19 132/23 134/3 135/5 135/10 135/18
135/23 135/25 136/17 137/17 137/22 137/24
138/2 138/8 138/16 138/20 139/3 139/22 141/7
143/2
**draft [30]** 7/25 8/8 23/25 24/4 24/10 24/14
28/20 51/10 51/13 51/14 51/16 52/20 52/22
52/25 58/24 63/18 64/5 70/11 70/18 70/20
70/21 71/3 71/4 71/12 71/20 71/21 71/25
77/10 88/3 88/7
**drafting [1]** 8/4
**drafts [9]** 7/19 15/23 20/17 26/17 54/13 55/11
70/12 70/12 83/8
**Drexel [1]** 115/10
**drill [1]** 109/2
**DRINKER [6]** 2/20 94/6 94/10 94/21 95/17 95/19
**Drinker as [1]** 94/10
**Drive [1]** 2/16
**drug [36]** 21/25 25/3 34/8 102/15 103/25 104/5
104/7 104/10 105/18 105/19 109/20 110/13
111/21 111/24 111/25 112/3 113/9 114/7 114/8
114/24 116/22 118/4 129/2 129/5 129/13
130/13 130/14 131/6 143/8 143/13 143/20
144/11 144/15 145/13 145/19 145/22
**drugs [13]** 12/19 104/6 104/9 114/5 114/6
114/21 116/24 117/14 128/10 128/19 130/9
137/16 145/24
**druthers [1]** 52/8
**due [1]** 112/17
**duly [1]** 101/19
**dump [3]** 19/21 24/7 117/24
**dumping [1]** 65/7
**during [14]** 18/7 27/11 31/23 45/13 100/19
102/25 103/18 104/13 107/24 122/4 137/15
140/11 145/15 148/13
**duty [4]** 28/16 78/23 98/24 100/5

## E

**E-mail [42]** 2/4 2/5 2/10 2/11 2/16 2/23 2/24
3/6 3/7 8/8 29/6 32/12 33/14 34/12 35/20
37/17 40/17 45/10 45/19 45/24 49/7 54/4
59/14 63/18 64/23 65/17 68/15 68/16 68/17
71/8 74/25 75/23 76/17 77/24 77/25 79/25
80/3 80/6 80/8 82/8 82/10 87/5
**E-mails [56]** 7/13 7/25 15/5 15/22 16/24 17/4
19/17 20/2 20/21 20/22 24/5 25/16 25/18
25/19 27/18 27/21 33/11 37/13 41/22 43/24
44/8 44/9 44/11 45/25 46/9 47/16 47/16 48/6
48/22 49/11 50/7 50/11 50/20 51/9 51/12
51/16 51/22 51/22 53/12 53/14 54/13 56/13
58/23 64/7 65/8 65/15 70/11 70/16 70/17
70/19 78/19 79/14 81/16 81/20 86/22 87/11
**each [5]** 11/7 23/3 26/9 37/14 97/11
**earlier [3]** 78/7 97/16 143/2
**earned [1]** 115/3
**easiest [1]** 86/18
**easy [1]** 96/10
**eat [1]** 113/6
**economy [3]** 9/16 50/19 50/25
**educate [1]** 118/3
**education [1]** 108/24
**effect [2]** 58/2 111/25
**effects [3]** 67/23 68/20 145/7
**efficacy [1]** 68/21
**efficient [2]** 11/16 36/21
**efficiently [2]** 15/15 40/14
**eight [1]** 71/18
**either [6]** 14/21 43/17 61/13 63/23 66/24

125/25
**electronically [1]** 143/5
**element [5]** 56/22 56/22 57/7 57/8 57/9
**elementary [1]** 50/10
**elevated [1]** 76/4
**elevation [2]** 145/25 146/2
**elicit [1]** 30/5
**else [7]** 31/19 41/13 49/19 67/7 127/19 127/23
148/13
**else's [1]** 84/20
**embarrassment [1]** 58/18
**embraces [1]** 17/16
**employees [1]** 65/4
**emption [2]** 98/16 98/23
**end [10]** 5/17 14/21 39/21 43/16 53/10 96/17
97/11 103/6 112/18 123/21
**Endo [1]** 76/7
**endocrinologist [2]** 134/6 134/9
**endocrinology [2]** 134/7 134/12
**Endos [1]** 76/6
**enormous [2]** 14/2 119/11
**enough [6]** 6/22 53/13 56/4 97/12 100/21
136/17
**enters [1]** 100/22
**entire [1]** 145/15
**entitled [3]** 66/25 112/18 116/11
**epidemiological [1]** 112/5
**Epidemiologists [1]** 111/16
**epidemiology [12]** 110/8 111/6 111/9 111/18
111/22 111/23 113/15 114/4 114/12 131/4
138/13 139/17
**EPS [1]** 68/21
**equal [1]** 60/2
**especially [3]** 49/4 106/20 114/20
**ESQUIRE [9]** 2/3 2/4 2/9 2/10 2/15 2/21 2/21
3/3 3/4
**esse [1]** 60/14
**essentially [6]** 23/6 38/15 49/18 51/23 83/10
91/16
**Estate [1]** 1/7
**etc [1]** 78/13
**ethics [1]** 117/16
**even [11]** 5/23 13/18 18/4 49/4 49/5 50/13
52/14 67/19 85/4 100/5 113/23
**event [4]** 8/23 98/15 98/20 100/7
**events [1]** 7/5
**eventually [1]** 99/18
**ever [6]** 7/22 11/14 19/22 53/9 58/14 117/16
**every [16]** 19/21 38/22 39/25 41/8 46/9 96/11
111/15 120/12 120/13 121/18 122/9 122/9
124/6 124/8 124/21 125/17
**everybody [4]** 5/4 26/3 31/5 101/2
**everybody's [1]** 29/12
**everyone [3]** 49/19 97/2 131/25
**everything [10]** 10/22 15/7 25/17 25/18 43/14
55/22 59/24 89/11 120/11 123/6
**everytime [1]** 121/21
**evidence [19]** 6/14 6/15 6/19 7/22 16/20 16/22
17/14 19/22 24/7 40/16 41/21 56/4 56/25
57/22 60/10 61/8 86/8 148/16 149/5
**evidentiary [13]** 5/8 5/12 5/12 9/20 9/23 10/8
29/6 47/24 50/10 53/24 55/14 88/19 89/20
**exact [4]** 117/13 145/18 146/7 148/5
**exactly [14]** 9/13 9/24 10/3 22/18 37/6 81/25
83/16 106/9 106/17 109/24 134/13 141/22
143/6 145/6
**exam [1]** 106/13
**examination [13]** 6/15 18/13 31/24 37/2 39/8
42/15 60/12 79/22 100/15 101/23 123/7 131/22
141/4
**examine [6]** 8/21 25/10 31/3 31/25 38/15 60/15
**examined [7]** 12/10 25/22 31/6 40/5 40/6

## E

examined... [2]  122/25 123/4
example [11]  17/4 27/10 27/15 32/4 32/10
  32/19 51/14 52/21 115/10 115/21 143/21
except [1]  84/22
exception [1]  20/6
exclude [2]  8/18 98/14
Excuse [2]  70/15 124/14
exhibits [5]  4/5 6/23 33/17 48/9 90/6
exist [1]  99/20
existed [2]  56/2 58/2
exits [2]  28/7 148/21
expect [2]  13/19 22/25
expedite [1]  51/2
experience [9]  17/23 105/15 128/20 129/19
  130/22 133/12 133/18 140/8 140/8
experiences [1]  128/22
expert [48]  7/3 7/8 8/3 8/5 11/24 12/7 12/15
  12/15 12/17 13/7 13/25 18/4 19/25 27/17 29/7
  33/15 36/13 42/9 49/13 49/15 65/9 65/19
  71/17 78/17 81/15 82/24 90/2 109/2 113/17
  114/9 114/12 121/5 123/9 129/9 130/18 131/7
  132/8 135/7 135/8 135/24 138/8 138/12 139/11
  140/4 140/5 140/11 140/13 140/21
expert's [1]  7/15
expertise [4]  114/19 114/22 129/20 138/3
experts [3]  12/8 61/24 78/17
explain [9]  10/20 37/2 43/6 64/19 64/20
  105/11 105/14 108/22 118/4
express [2]  129/18 142/13
expressed [1]  142/23
extensively [2]  112/10 112/12
extent [1]  42/15
extra [2]  14/13 14/14
extremely [1]  51/7

## F

face [1]  36/25
fact [8]  5/18 22/12 42/21 89/24 93/11 112/16
  132/6 146/8
facts [2]  104/19 104/21
factual [2]  99/17 99/21
failed [11]  13/9 57/15 121/18 122/10 122/10
  122/11 122/11 122/12 126/9 126/20 146/22
failure [8]  10/19 10/21 13/3 16/6 28/14 55/20
  82/21 147/10
failure-to-warn [1]  10/19
fair [18]  6/22 8/25 28/9 29/4 29/16 36/24
  38/17 40/19 41/3 51/3 92/3 97/12 114/11
  119/6 134/17 136/16 136/17 137/10
fall [4]  17/11 17/11 81/5 103/17
false [1]  13/19
familiar [6]  128/14 128/15 129/2 130/9 130/12
  148/2
family [1]  111/15
Famous [1]  89/11
far [11]  27/8 27/22 27/22 29/15 58/16 60/3
  96/16 97/7 100/19 129/12 138/7
fashioned [1]  46/25
fat [1]  104/20
father [1]  102/17
favors [1]  50/19
Fax [3]  2/6 2/12 2/17
FDA [43]  5/25 6/5 7/3 7/6 8/16 8/16 9/2 73/4
  102/19 102/25 103/5 103/19 104/13 104/13
  104/21 105/5 105/6 105/24 106/4 109/23 110/2
  110/3 110/20 112/7 125/4 128/21 129/15
  130/10 132/3 132/4 132/7 132/11 132/14
  132/20 136/22 137/9 137/22 138/21 139/16
  144/5 145/8 145/13 145/20
FDA's [3]  8/21 132/17 138/22
February [2]  64/24 132/21

February 20 [1]  64/24
feed [2]  94/22 95/23
feel [2]  76/6 116/10
few [3]  44/5 44/5 143/25
field [7]  111/8 113/23 114/10 130/2 130/4
  130/18 138/12
fields [13]  130/21 130/24 131/2 131/3 131/4
  131/5 131/11 131/15 131/12 139/16 139/23
  140/9 146/21
fight [1]  40/12
fighting [1]  70/6
figured [1]  120/15
filed [1]  98/13
files [3]  37/9 144/14 144/17
filled [5]  59/21 59/22 61/22 61/24 61/25
finally [2]  90/14 145/19
find [8]  23/15 32/24 40/13 61/3 66/17 82/13
  101/8 142/4
finding [1]  83/10 84/15 114/17
findings [2]  141/21 141/24
Findling [10]  7/19 7/21 7/22 7/24 20/15 24/9
  26/11 54/14 82/12 82/13
fine [8]  39/2 43/11 44/24 45/24 61/17 81/11
  81/13 89/19
finish [1]  13/15 13/16 64/16
finished [1]  126/8
firm [12]  32/16 42/2 92/16 93/18 93/25 94/20
  94/21 96/7 118/20 118/20 119/16 119/16
firmly [1]  82/14
firms [1]  91/18 118/19
first [24]  1/2 9/20 10/6 10/7 21/23 24/23
  33/19 39/25 44/23 53/13 54/16 58/25 59/7
  62/18 102/25 106/22 114/2 116/14 121/10
  122/15 123/19 128/15 131/12 142/21
five [9]  83/8 121/15 123/18 123/22 123/23
  124/3 124/20 125/6 127/9
five-year [3]  123/22 123/23 125/6
flabbergasting [1]  16/2
flack [2]  17/17 17/24
flag [2]  44/17 52/19
flagged [1]  74/24
Floor [2]  2/5 2/11
focus [1]  59/15
folks [2]  32/15 67/19
follow [1]  19/10
following [2]  90/21 110/12
follows [2]  116/8 137/4
food [9]  102/14 103/25 104/18 105/16 105/18
  109/20 110/12 112/3 113/9
foot [2]  126/24 127/3
footnote [2]  79/3 143/19
FOREGOING [1]  149/13
forever [2]  12/8 45/9
Forget [1]  60/4
form [3]  16/14 45/4 143/4
formally [1]  26/8
forming [1]  90/2
formulation [1]  40/22
forth [2]  11/9 123/12
forward [2]  96/14 143/14
forwarding [1]  63/17
foundation [4]  19/24 21/9 59/2 66/2
four [3]  107/17 107/18 107/20
fourth [2]  127/9 127/10
framework [1]  100/21
Francisco [3]  111/2 111/4 115/18
frankly [5]  13/5 14/6 15/25 36/20 50/12
fraud [7]  28/10 28/22 29/3 29/18 55/5 55/18
  57/21
free [2]  12/5 12/6
free-for-all [2]  12/5 12/6
frequent [1]  145/11

# F

**Friday [2]** 5/18 115/25
**front [12]** 1/3 12/3 13/6 14/22 17/22 21/13 32/25 36/20 55/15 88/24 98/23 111/14 147/19
**full [4]** 15/14 23/11 101/12 119/7
**fully [2]** 61/16 149/5
**funds [1]** 116/17
**further [1]** 129/23
**future [1]** 52/16

# G

**Gahan [13]** 32/12 33/22 34/9 35/9 59/12 64/23 69/22 75/5 76/15 78/9 80/12 87/20 87/21
**game [1]** 17/2
**gastrointestinal [1]** 117/2
**gave [4]** 33/3 69/18 75/12 115/13
**geez [1]** 44/4
**general [3]** 29/13 91/5 92/10
**generally [3]** 92/15 93/24 115/8
**generated [2]** 53/23 89/24
**gentlemen [1]** 148/7
**George [1]** 102/17
**get [58]** 7/7 7/16 11/8 13/7 17/5 21/15 22/15 25/8 26/14 28/9 28/11 29/4 30/12 38/7 39/14 42/19 44/14 44/24 44/25 45/3 47/22 53/9 58/14 58/16 63/24 67/6 67/9 67/10 67/15 83/11 84/4 84/18 84/21 86/16 90/16 92/24 93/6 106/19 108/9 112/23 115/22 120/4 120/5 120/11 122/25 123/6 123/11 123/13 123/14 123/16 124/12 125/3 127/2 131/11 131/19 137/23 139/24 140/3
**gets [2]** 75/17 81/12
**getting [5]** 14/13 65/7 85/15 92/2 108/23
**GI [2]** 116/24 117/2
**give [24]** 6/8 19/20 27/10 27/12 31/4 32/3 44/24 67/2 72/18 72/23 74/6 78/23 85/23 98/20 104/16 105/24 115/12 123/5 123/25 130/14 140/6 140/7 140/21 142/5
**given [12]** 52/13 74/19 91/16 91/25 94/17 95/2 96/18 100/21 115/3 136/2 137/9 137/18
**gives [1]** 98/24
**giving [3]** 49/8 81/18 125/17
**glad [1]** 101/3
**globally [1]** 45/19
**go [48]** 5/7 5/11 9/12 13/14 14/10 15/10 15/15 16/24 19/11 21/6 21/16 22/16 22/22 23/12 23/16 28/24 31/12 42/10 42/10 44/13 50/23 52/18 52/25 54/12 56/7 62/9 68/11 70/10 84/16 101/12 105/12 106/23 107/14 110/15 120/5 120/19 122/13 125/2 128/2 131/8 131/18 133/6 133/11 133/15 139/7 141/23 143/14 148/15
**go-along [1]** 84/16
**goal [1]** 118/5
**goes [16]** 26/22 28/4 30/18 31/8 31/12 32/11 36/10 54/16 56/25 57/4 57/24 61/23 77/19 100/4 126/17 129/12
**going [134]** 6/13 8/18 8/25 9/14 10/8 11/4 11/18 12/24 13/5 14/7 15/9 15/9 15/14 15/18 15/20 15/25 16/8 16/10 16/12 17/5 17/21 19/9 19/10 20/8 21/10 21/20 22/23 22/24 23/9 23/10 27/23 28/2 28/11 29/24 29/24 29/25 30/4 30/4 30/7 30/20 32/7 33/6 33/11 35/6 36/20 39/9 39/17 41/14 42/19 43/3 43/8 43/9 43/9 43/14 43/19 43/22 44/14 45/17 45/22 45/22 45/23 46/14 46/22 47/17 47/21 48/3 48/25 49/22 50/3 50/22 51/19 52/15 52/17 53/7 53/17 57/17 59/8 61/9 64/14 65/14 66/8 66/22 67/25 68/7 68/9 68/11 68/18 69/5 69/7 69/10 69/16 72/7 72/13 72/18 72/23 73/2 73/7 73/8 74/5 74/17 74/21 78/18 78/21 79/12 80/20 82/19 84/17 86/13 89/2 94/9 98/17

**goosey [1]** 68/10
**Gorsky [1]** 24/25
**got [13]** 6/23 14/14 17/21 19/3 47/4 48/6 93/12 95/8 98/5 108/2 108/6 115/5 128/3
**GOTSHAL [1]** 3/3
**governed [1]** 8/15
**Government [2]** 102/11 103/4
**graduated [3]** 107/14 107/7 107/13
**GRAFF [1]** 2/21
**greater [4]** 145/10 145/15 145/25 146/2
**grew [2]** 107/10 107/12
**ground [2]** 39/4 61/4
**grounds [2]** 59/3 66/7
**group [2]** 75/2 75/25
**groups [1]** 111/17
**GSK [1]** 122/11
**Guardian [1]** 1/6
**guide [2]** 13/25 100/21
**guy [3]** 46/12 78/18 83/12
**gynecomastia [17]** 8/22 15/24 16/3 22/3 73/21 76/3 76/5 76/7 76/9 78/12 134/4 134/10 134/16 135/6 144/19 145/2 146/23

# H

**hac [1]** 3/4
**had [26]** 5/5 10/13 18/23 26/8 27/2 27/3 28/16 34/20 44/6 52/8 56/10 63/3 66/20 67/22 69/23 81/16 91/8 91/12 98/6 100/17 101/5 112/9 112/10 135/21 141/9 146/16
**hadn't [2]** 135/19 136/2
**half [2]** 44/2 87/15
**HALL [2]** 1/18 92/3
**hand [6]** 22/3 32/13 51/17 82/15 85/23 98/13
**handed [2]** 43/11 100/13
**handful [3]** 44/8 44/9 44/11
**handle [1]** 44/9
**happen [1]** 23/9
**happened [3]** 59/19 95/14 104/16
**happens [3]** 100/19 114/7 137/4
**happier [1]** 26/3
**happy [3]** 26/8 51/17 135/8
**hard [1]** 104/8
**Harde [1]** 64/25
**Harper [1]** 116/8
**Harvard [5]** 107/15 107/16 107/17 108/2 115/6
**hasn't [1]** 37/21
**hat [1]** 12/12
**hate [1]** 122/17
**haul [1]** 11/5
**have [297]**
**haven't [5]** 10/13 37/12 109/12 132/19 136/23
**having [7]** 9/17 40/5 40/6 50/13 59/16 62/20 99/7
**hazard [1]** 8/13
**head [1]** 117/19
**health [1]** 110/8
**healthcare [2]** 126/21 126/23
**hear [9]** 17/17 40/17 64/16 81/12 82/22 89/9 106/12 111/9 114/16
**heard [4]** 27/22 117/22 118/18 146/4
**hearing [3]** 5/2 96/24 148/17
**hearsay [8]** 32/14 32/15 59/21 59/23 62/2 62/4 74/7 77/12

99/17 100/14 101/10 101/11 101/12 105/7
122/24 123/3 137/14 138/3 138/25 139/23
139/24 144/2 146/17 147/3 148/8
**GOMEZ [9]** 2/4 41/5 53/12 78/2 80/4 85/23 86/17 90/5 92/21
**gone [2]** 32/2 86/9
**good [15]** 5/4 10/11 10/12 10/14 48/24 49/2 67/24 100/24 100/25 101/21 102/3 102/4 121/3 131/25 131/25

## H

**heart [1]**  42/5
**hedge [1]**  116/17
**held [1]**  102/11
**Helix [1]**  32/15
**Hello [1]**  84/2
**help [1]**  66/22
**helping [1]**  32/16
**her [16]**  25/10 30/20 30/22 60/14 60/15 60/22
  60/22 60/23 60/24 61/3 61/5 61/17 63/5 64/18
  75/12 123/15
**here [100]**  6/7 7/18 11/5 11/13 12/2 12/20
  13/18 14/10 14/22 15/19 17/13 18/14 20/13
  23/4 25/6 25/25 26/17 26/21 26/22 26/25
  26/25 28/9 29/5 29/15 30/19 33/25 34/25
  36/19 37/17 38/24 39/23 40/12 42/3 42/12
  42/13 43/11 44/16 49/5 50/8 51/6 51/7 56/10
  57/10 58/13 60/24 61/13 61/15 61/20 62/21
  63/8 63/12 63/24 64/4 64/6 64/9 65/10 66/3
  66/5 66/12 70/8 71/10 71/11 79/19 83/3 86/4
  91/2 94/3 94/18 95/7 99/7 100/10 101/5
  103/20 106/3 106/7 111/10 113/16 113/17
  114/16 116/2 117/24 117/25 118/2 118/5 118/6
  119/25 120/7 121/10 124/6 127/7 129/19 132/4
  132/13 134/21 135/5 135/13 137/19 141/25
  148/7 148/17
**HEREBY [1]**  149/4
**Hey [1]**  47/4
**hid [1]**  83/10
**hide [7]**  28/12 28/19 55/4 55/7 55/23 55/25
  57/4
**hiding [3]**  76/10 76/25 77/15
**high [1]**  98/6
**highlights [1]**  113/16
**highly [1]**  77/16
**him [41]**  7/23 8/21 9/2 11/23 13/5 13/6 14/2
  14/4 15/9 15/10 15/18 22/24 27/18 30/7 31/3
  31/25 34/10 34/22 35/3 40/15 40/18 40/21
  41/20 42/7 42/8 42/17 44/25 49/23 50/3 63/23
  63/24 63/24 69/20 69/23 70/7 80/5 82/17 83/6
  105/10 130/6 139/9
**hired [3]**  19/23 118/19 119/22
**his [35]**  1/6 1/7 12/20 12/21 13/4 13/7 14/2
  14/22 16/14 18/12 34/11 34/12 34/13 34/13
  36/17 40/25 41/2 42/18 42/20 44/24 49/8
  65/19 73/17 78/22 82/14 86/16 90/2 92/19
  100/4 121/4 121/6 130/21 135/16 138/3 138/21
**historic [2]**  104/7 104/10
**hit [1]**  113/16
**HIV [1]**  104/5
**hog [1]**  28/24
**hold [2]**  75/22 115/6
**home [1]**  22/17
**hominem [1]**  31/11
**honestly [1]**  14/16
**honing [1]**  100/9
**HONORABLE [1]**  1/21
**honorary [2]**  115/6 115/14
**honored [1]**  115/12
**hope [5]**  44/6 45/7 58/15 63/11 91/24
**hopefully [5]**  13/20 15/10 101/7 137/3 147/23
**Hopkins [1]**  109/5
**hospital [2]**  108/13 109/5
**hour [5]**  101/13 118/7 118/9 120/2 147/20
**hourly [1]**  119/14
**hours [6]**  44/5 66/20 119/10 119/11 119/19
  141/8
**Houston [1]**  2/17
**how [39]**  14/15 14/24 16/3 16/4 24/21 31/13
  31/17 42/24 43/25 44/9 45/21 49/12 50/2 53/3
  60/2 60/4 60/9 62/8 62/11 66/8 69/5 77/2
  78/11 80/20 104/19 104/20 104/20 107/16
116/9 117/7 118/4 119/17 121/12 123/23 127/3
132/24 135/24 137/2 145/3
**however [5]**  9/9 18/5 36/24 69/22 140/20
**human [1]**  114/4
**humiliation [1]**  58/19
**hundred [3]**  46/23 141/15 145/11
**hundreds [1]**  94/3
**hurry [1]**  13/17
**hypo [7]**  44/24 45/3 46/3 47/17 51/23 53/9
  74/19
**hypos [1]**  44/25
**hypothetical [6]**  43/20 44/12 49/6 52/7 66/25
  67/10
**hypothetically [1]**  68/20

## I

**I'd [1]**  34/21
**I'm [1]**  29/15
**idea [3]**  32/20 79/19 104/16
**identification [3]**  33/20 59/10 107/23
**identified [2]**  76/6 90/5
**III [1]**  1/16
**impact [1]**  99/12
**implicating [1]**  48/22
**implies [1]**  55/25
**important [7]**  67/6 93/20 97/3 103/19 103/22
  143/18 148/16
**improper [1]**  78/20
**inadequate [1]**  73/19
**inadmissibility [2]**  60/19 61/5
**inadmissible [8]**  9/8 16/22 18/5 18/11 27/9
  57/23 68/7 86/14
**INC [1]**  1/10
**inches [1]**  13/22
**include [4]**  15/5 15/5 15/7 88/7
**included [5]**  15/6 19/4 75/14 75/19 111/22
**includes [2]**  78/11 88/3
**including [4]**  23/24 25/18 69/3 73/3
**inclusive [1]**  44/4
**increase [2]**  73/20 144/18
**increased [2]**  16/3 146/24
**indeed [1]**  119/12
**indication [1]**  34/8
**indications [2]**  128/19 143/24
**individual [5]**  38/16 38/23 88/21 126/10 127/5
**individuals [1]**  97/9
**indulge [2]**  40/3 89/13
**indulgent [2]**  51/7 51/7
**industry [3]**  12/18 49/13 105/22
**info [3]**  75/15 75/19 78/12
**information [16]**  24/21 27/2 38/7 52/24 53/2
  73/3 77/21 96/20 98/13 137/5 142/24 144/14
  144/17 146/7 146/14 146/15
**informed [2]**  22/12 22/13
**injects [1]**  58/8
**injury [2]**  99/9 134/4
**inquiry [1]**  80/23
**Insatiable [1]**  112/19
**insisted [1]**  50/15
**instant [1]**  95/22
**instead [2]**  62/20 81/19
**institutions [2]**  128/19 115/7
**instructed [2]**  97/14 143/6
**instructing [1]**  17/19
**instruction [7]**  6/9 58/6 91/23 97/22 98/9
  98/11 99/5
**instructions [5]**  5/22 6/21 58/15 140/12
  148/15
**intend [6]**  11/15 21/4 23/2 45/11 98/19 139/9
**intended [3]**  28/12 28/19 56/20
**intends [2]**  56/20 65/18
**intent [10]**  28/25 32/11 36/12 54/17 54/20
  54/21 55/4 55/6 66/4 81/20

**I**

**intention [5]**  55/23 55/24 56/6 57/3 92/14
**intentional [1]**  29/18 56/3 57/23
**interest [3]**  9/16 91/25 94/17
**interested [3]**  29/16 50/25 84/11
**interesting [3]**  24/24 26/12 50/8
**internal [8]**  8/8 15/5 15/22 19/16 35/19 64/7
  65/4 65/8
**internally [3]**  7/6 56/12 82/16
**internship [1]**  109/6
**interpret [1]**  49/23
**interpretation [2]**  34/13 59/25
**interpreted [1]**  138/18
**interpreting [2]**  27/20 81/16
**interprets [1]**  49/14
**interrupt [1]**  122/18
**interrupted [1]**  45/13
**introduce [1]**  43/10
**introduced [3]**  50/15 81/4 118/21
**introduction [1]**  88/9
**investigation [3]**  105/19 105/20 105/21
**investigator [2]**  136/11 136/12
**invite [2]**  12/5 37/2
**involve [1]**  126/21
**involved [12]**  25/2 34/7 93/10 94/18 95/12
  95/22 98/5 99/6 101/6 116/14 126/9 137/15
**involvement [1]**  125/21
**involves [3]**  25/15 132/24 134/4
**involving [1]**  119/4
**is [456]**
**isn't [2]**  45/19 117/21
**issue [40]**  6/5 6/17 7/2 8/17 8/20 10/7 14/3
  17/16 17/18 18/9 18/15 20/13 26/17 26/18
  26/19 26/20 32/12 36/19 45/18 54/8 54/13
  57/18 58/22 61/21 69/24 80/9 80/16 85/10
  93/10 95/7 97/4 98/16 99/17 100/2 100/9
  123/14 134/15 138/15 141/10 147/4
**issued [1]**  135/24
**issues [19]**  5/13 5/16 9/20 9/23 10/4 10/8
  13/2 20/14 25/2 28/5 28/13 36/11 47/3 55/21
  94/18 117/11 135/4 138/2 140/2
**it [283]**
**it's [115]**  5/23 10/2 13/13 18/5 19/24 20/8
  20/22 22/23 25/12 26/12 26/18 26/19 26/20
  26/21 26/24 28/21 32/2 32/14 33/5 36/12
  36/20 36/21 37/8 37/9 37/9 37/10 38/9 38/19
  38/25 39/9 41/10 45/17 45/21 49/6 50/8 50/12
  52/21 55/6 55/7 56/15 57/9 57/12 57/14 58/17
  59/14 59/17 59/18 59/22 59/23 61/19 61/25
  62/13 64/5 64/7 66/6 68/7 69/10 69/15 70/23
  71/14 71/23 73/13 74/2 74/4 74/5 74/19 75/5
  75/23 76/24 77/14 77/24 77/25 78/16 79/7
  80/2 82/10 82/23 83/4 84/23 85/7 85/17 86/15
  89/18 90/9 92/16 93/17 94/9 94/11 98/8 99/14
  102/7 104/17 108/20 112/18 114/5 114/6
  116/12 117/18 118/11 121/6 122/3 123/2
  123/14 129/3 133/20 135/23 137/16 140/15
  141/15 141/16 142/5 142/10 143/18 148/9
  148/15
**ITKIN [2]**  2/15 2/15
**its [5]**  36/25 37/6 78/23 84/25 85/3
**itself [1]**  71/21

**J**

**JANSSEN [21]**  1/10 1/11 2/24 2/25 3/7 35/12
  53/24 65/5 67/19 72/2 73/18 75/5 77/15 78/22
  84/13 117/25 144/13 145/14 146/6 146/11
  146/22
**JANUARY [4]**  1/15 59/11 63/13 84/6
**January 23 [1]**  84/6
**January 24 [1]**  59/11
**January 6 [1]**  63/13

**JASON [1]**  2/15
**jitkin [1]**  2/16
**JJ [1]**  87/19
**job [3]**  42/2 113/16 129/14
**Johns [1]**  109/5
**JOHNSON [12]**  1/10 1/10 35/11 35/11 35/17
  35/17 35/20 35/20 51/3 51/4 117/8 117/8
**journalists [3]**  90/24 92/8 96/14
**journals [1]**  113/9
**Judge [6]**  6/25 10/12 12/23 28/8 33/10 37/17
**Judge's [1]**  139/19
**Judges [1]**  97/4
**judgment [1]**  57/22
**judicial [4]**  1/2 9/16 50/19 50/25
**JUDITH [2]**  1/24 149/10
**Judy [1]**  101/21
**jurisdiction [2]**  25/4 63/25
**juror [1]**  13/18
**jurors [2]**  5/7 6/9
**jury [68]**  1/21 6/20 13/25 14/6 14/14 17/19
  18/6 19/14 21/13 24/19 25/17 36/21 36/23
  38/9 38/13 45/5 49/8 49/18 50/23 52/14 58/6
  58/14 65/9 73/8 78/18 81/12 85/22 86/15
  88/16 88/16 88/24 89/20 90/14 90/24 97/15
  97/23 98/3 99/5 99/17 99/21 100/11 100/22
  100/25 102/8 108/25 111/8 114/18 117/22
  117/24 118/21 120/10 121/17 122/3 124/5
  125/20 126/8 127/18 129/21 135/6 135/13
  136/24 139/24 140/11 143/15 144/22 147/5
  147/24 148/21
**just [66]**  9/4 9/8 11/17 12/13 17/15 17/23
  19/21 22/19 26/10 26/24 28/8 28/24 29/4
  29/22 30/9 30/23 32/24 35/23 38/13 42/16
  44/14 44/15 45/7 46/5 47/2 49/10 50/11 53/4
  53/11 56/6 57/19 61/21 62/11 64/22 66/3 68/4
  69/17 70/15 70/25 78/15 81/17 84/21 86/8
  90/7 90/11 100/18 103/12 105/7 107/10 113/15
  114/6 120/21 120/22 125/2 125/13 127/25
  129/20 130/22 131/12 133/5 133/6 136/24
  137/14 139/2 143/18 144/4

**K**

**Kaiser [1]**  126/23
**keep [8]**  43/15 45/24 53/6 65/23 89/6 102/22
  148/14 148/16
**keeps [1]**  49/23
**KENNETH [1]**  2/21
**kenneth.murphy [1]**  2/23
**KESS [7]**  4/7 4/8 107/25 141/12 141/13 142/16
  142/16
**KESSLER [91]**  4/3 5/9 6/16 6/24 7/2 7/12 7/23
  8/3 8/17 9/17 10/4 11/20 14/20 17/6 17/19
  18/13 19/19 20/2 24/18 27/16 27/24 28/7
  28/23 30/23 32/5 32/8 33/12 34/4 35/2 37/11
  39/19 39/20 40/11 40/15 41/12 44/23 47/8
  47/11 48/4 50/21 59/2 60/4 60/6 60/8 60/10
  62/21 64/9 65/20 68/25 72/4 72/6 72/14 81/17
  85/8 85/15 86/14 90/16 98/15 98/20 100/4
  101/18 101/19 102/3 102/5 106/8 112/20 130/4
  130/18 132/2 132/6 132/10 132/16 132/19
  133/23 134/3 135/5 135/10 135/18 135/23
  136/17 137/21 137/22 137/25 138/2 138/8
  138/16 138/20 139/3 139/22 141/7 143/2
**Kessler's [8]**  8/12 9/25 27/12 31/24 44/12
  72/12 86/11 99/24
**key [13]**  15/23 34/7 35/22 36/2 37/10 52/24
  52/25 68/18 68/19 83/10 83/13 84/15 84/15
**kidding [1]**  112/24
**kind [31]**  6/20 7/7 10/24 17/24 17/25 23/6
  30/17 31/5 31/11 36/11 38/2 38/5 38/18 45/4
  50/9 53/12 56/4 75/17 75/21 82/23 96/23
  99/10 108/14 109/2 110/18 119/24 125/23

# K

**kind...** [4]   125/24 126/5 134/23 140/18
**kindly** [1]   33/2
**kinds** [2]   14/8 111/24
**KLINE** [31]   2/9 2/9 6/2 16/8 18/12 19/5 20/4
  34/2 38/6 64/14 65/16 66/19 73/11 79/13
  80/19 84/3 84/18 92/21 93/5 97/11 101/15
  102/4 112/21 120/24 121/5 122/18 127/21
  133/6 136/8 140/23 143/18
**Kline's** [3]   132/11 132/14 132/15
**Kline........101,141** [1]   4/4
**KlineSpecter.com** [2]   2/10 2/11
**knew** [8]   16/2 24/12 27/19 42/24 57/13 66/22
  83/9 127/16
**knock** [1]   30/9
**know** [82]   11/21 16/20 16/21 16/24 16/25 17/25
  18/8 21/4 23/8 23/9 26/5 29/18 32/3 33/23
  33/24 36/5 42/3 42/13 43/18 43/18 43/21 44/9
  45/8 46/24 47/19 48/10 50/2 50/8 52/16 53/4
  53/8 54/23 56/17 60/9 62/8 62/11 66/19 66/22
  66/25 69/9 72/22 77/21 79/17 82/11 85/19
  86/6 88/22 91/2 91/20 94/19 95/11 95/25 96/4
  97/14 97/25 99/6 99/23 104/17 109/2 111/11
  112/12 113/19 114/18 115/17 119/2 123/13
  124/12 127/18 127/18 128/21 129/7 129/25
  131/13 132/23 134/3 135/10 137/14 137/21
  138/6 143/2 143/9 146/7
**knowing** [6]   10/16 10/17 10/18 30/2 56/5 56/21
**knowingly** [1]   55/25
**knowledge** [9]   21/25 22/5 25/3 27/4 71/13
  105/15 117/15 129/12 129/21
**known** [20]   21/25 22/3 22/5 22/7 28/23 29/13
  54/24 55/2 55/8 55/24 56/2 56/5 56/24 57/5
  57/25 77/20 90/25 93/22 129/3 145/14
**knows** [8]   15/8 41/5 42/22 45/6 67/7 68/25
  120/10 136/24
**KRISTEN** [1]   2/10
**Kristen.Loerch** [1]   2/11

# L

**L.L.C** [1]   1/12
**label** [13]   5/19 8/14 22/4 22/6 98/25 131/9
  144/2 144/3 144/3 144/25 145/12 145/19
  146/12
**labeling** [6]   130/6 130/9 130/18 138/9 138/22
  139/13
**lack** [1]   63/8
**ladies** [1]   148/7
**lady** [1]   25/7
**language** [2]   16/5 145/18
**Lanier** [1]   31/17
**large** [2]   73/14 92/15
**last** [6]   6/23 14/24 89/11 95/6 119/2 142/20
**lasted** [1]   110/16
**later** [5]   45/23 46/3 97/16 110/18 137/23
**latest** [2]   75/6 80/14
**law** [23]   17/14 17/19 17/21 17/24 19/18 28/24
  30/25 31/2 31/10 50/10 53/20 54/4 92/15 93/18
  101/6 106/14 106/16 107/19 108/6 109/20
  109/21 118/19 118/20
**lawyer** [5]   39/23 96/11 106/12 118/10 125/13
**lawyers** [14]   31/10 78/4 91/17 92/6 92/22
  92/23 94/20 94/21 95/12 95/15 96/9 117/20
  119/14 136/2
**laypeople** [1]   140/7
**lead** [2]   36/15 42/9
**lead-in** [1]   36/15
**leaks** [1]   96/22
**learn** [1]   15/25
**learned** [3]   29/23 82/24 83/3
**least** [3]   42/17 42/21 44/6
**led** [1]   105/19

**leeway** [1]   123/5
**legal** [2]   28/17 99/2
**legislation** [1]   105/23
**length** [1]   147/7
**lesser** [1]   56/7
**let** [13]   9/4 14/15 21/18 23/15 24/17 32/2
  35/23 41/12 43/17 68/7 84/4 108/23 120/9
**let's** [27]   11/8 16/24 18/17 18/24 20/12 21/6
  21/6 27/13 29/8 32/18 33/16 48/7 48/23 49/11
  50/7 50/11 50/20 54/22 59/6 93/25 100/10
  100/18 106/18 108/22 110/15 114/2 123/11
**letting** [1]   99/23
**level** [2]   103/10 103/12
**levels** [3]   76/4 144/19 145/23
**library** [1]   112/18
**licensed** [2]   134/20 135/2
**lifetime** [1]   127/11
**like** [57]   5/7 5/11 8/18 8/20 11/5 12/7 13/6
  14/2 14/8 15/17 26/14 27/6 30/9 30/14 33/11
  40/10 40/13 40/14 40/15 40/18 40/20 42/5
  45/5 48/20 48/25 51/24 54/12 56/5 65/7 67/13
  67/15 67/19 67/21 76/11 80/22 82/11 82/23
  84/20 85/15 86/3 91/19 97/24 109/18 111/21
  113/20 115/5 116/17 119/3 125/13 125/22
  126/10 127/6 133/24 140/13 143/8 146/4 146/4
**likely** [2]   59/15 99/24
**limited** [4]   10/21 19/3 24/6 86/12
**line** [4]   34/18 34/19 57/12 84/9
**list** [9]   34/23 46/17 63/22 93/6 96/3 96/18
  104/15 113/11 124/23
**listen** [1]   95/15
**listening** [1]   26/2
**listing** [1]   76/8
**literally** [1]   14/23
**literature** [4]   15/7 29/14 112/13 113/13
**litigate** [1]   12/25
**litigation** [12]   1/4 92/22 94/7 95/20 96/18
  118/14 118/22 118/23 119/4 119/15 121/13
  125/9
**little** [9]   81/6 85/2 107/18 107/20 117/19
  124/2 127/16 136/8 136/9
**live** [2]   60/14 95/23
**LLP** [3]   2/15 2/20 3/3
**located** [1]   107/2
**location** [1]   89/23
**Locust** [1]   2/11
**LOERCH** [1]   2/10
**Logan** [1]   2/22
**long** [11]   11/5 69/9 69/14 72/6 81/11 107/16
  113/11 121/12 127/13 127/16 143/23
**long-term** [1]   143/23
**longer** [2]   107/20 116/25
**look** [13]   6/20 27/13 32/18 34/17 45/2 47/18
  50/20 54/3 85/14 96/8 111/16 112/9 143/7
**looked** [2]   10/2 105/17
**looking** [13]   53/12 59/5 59/7 64/23 65/13
  70/16 76/13 76/14 76/15 76/17 80/5 80/11
  93/8
**looks** [4]   11/5 54/12 109/18 111/23
**loosey** [1]   68/10
**lose** [1]   116/10
**lot** [15]   7/18 16/23 25/5 31/14 46/11 97/25
  100/18 101/8 105/22 111/23 112/8 133/16
  135/4 141/19 146/17
**lots** [1]   69/3
**Louisiana** [1]   126/15
**lunch** [6]   140/2 144/3 145/22 146/18 147/20
  148/13
**luncheon** [1]   148/24

# M

**made** [13]   6/2 22/5 24/6 24/9 31/7 31/9 38/16

**M**

**made... [6]** 58/10 59/4 92/15 92/20 135/21 145/20

**Magali [2]** 63/19 64/25

**mail [42]** 2/4 2/5 2/10 2/11 2/16 2/23 2/24 3/6 3/7 8/8 29/6 32/12 33/14 34/12 35/20 37/17 40/17 45/10 45/19 45/24 49/7 54/4 59/14 63/18 64/23 65/17 68/15 68/16 68/17 71/8 74/25 75/23 76/17 77/24 77/25 79/25 80/3 80/6 80/8 82/8 82/10 87/5

**mails [56]** 7/13 7/25 15/5 15/22 16/24 17/4 19/17 20/2 20/21 20/22 24/5 25/16 25/18 25/19 27/18 27/21 33/11 37/13 41/22 43/24 44/8 44/9 44/11 45/25 46/9 47/16 47/16 48/6 48/22 49/11 50/7 50/11 50/20 51/9 51/12 51/16 51/22 51/22 53/12 53/14 54/13 56/13 58/23 64/7 65/8 65/15 70/11 70/16 70/17 70/19 78/19 79/14 81/16 81/20 86/22 87/11

**main [1]** 89/19

**major [2]** 105/21 126/21

**make [24]** 22/12 28/9 33/8 46/7 47/5 47/18 55/17 58/14 58/20 79/9 86/10 87/11 89/12 90/7 90/25 91/4 96/10 99/3 99/4 111/10 116/10 120/10 140/19 147/9

**making [2]** 68/23 140/18

**man [8]** 31/13 34/16 47/8 67/13 67/14 67/18 67/20 126/10

**management [1]** 108/11

**MANGES [1]** 3/3

**manner [1]** 11/17

**manufacture [1]** 128/16

**manufacturer [2]** 5/24 6/11

**manuscript [25]** 8/3 20/18 51/14 55/12 56/13 58/24 70/11 70/12 70/18 70/20 70/21 71/3 71/5 71/16 71/20 71/21 71/25 75/3 75/7 76/2 77/11 80/15 86/25 88/4 88/8

**manuscripts [11]** 7/19 7/25 8/8 20/23 23/25 24/10 24/14 51/10 51/13 51/16 54/14

**many [19]** 9/6 12/21 14/24 15/16 20/10 23/21 34/4 34/11 42/24 43/25 46/19 54/21 113/8 114/7 119/10 119/10 121/12 123/23 127/3

**march [5]** 1/5 16/13 16/18 142/19 142/20

**March 14 [1]** 142/19

**Mari [1]** 91/2

**Marianne [2]** 85/21 90/25

**mark [2]** 33/16 59/8

**marked [9]** 18/23 18/24 19/9 19/9 33/20 59/10 107/23 141/12 142/16

**marketing [2]** 11/20 128/17

**marooned [1]** 102/5

**Massachusetts [1]** 107/3

**massage [1]** 16/5

**massaged [1]** 83/8

**match [1]** 46/4

**materials [3]** 52/10 141/20 143/3

**math [5]** 120/18 124/8 124/17 125/21 126/2

**mathematicians [1]** 114/23

**Mathisen [1]** 5/18

**Mathisen's [2]** 6/10 135/25

**matter [11]** 6/14 8/15 17/8 29/14 55/6 55/7 93/15 95/2 97/3 131/14 142/8

**matters [2]** 46/20 65/23

**may [28]** 5/13 5/13 13/15 13/16 14/17 15/11 37/5 37/5 39/14 40/10 46/10 46/10 57/7 82/2 82/5 92/9 93/8 93/9 93/14 95/22 97/16 97/23 98/3 99/20 114/22 131/16 140/23 142/5

**maybe [5]** 7/6 38/11 40/7 44/2 54/10

**MBA [1]** 75/11

**MD [4]** 4/3 101/19 106/8 112/20

**me [62]** 9/4 10/3 14/15 17/8 21/18 23/15 24/17 25/9 27/10 27/12 30/12 31/7 31/14 32/4 35/23 37/21 37/24 38/5 40/3 40/17 40/19

42/25 43/7 43/17 45/11 45/23 47/16 48/5 50/3 51/3 51/6 51/17 52/2 52/14 56/3 57/22 74/19 81/13 82/23 84/4 86/17 88/12 89/13 91/17 91/22 91/24 92/5 99/9 107/20 107/21 108/24 114/3 115/13 120/6 120/9 123/25 124/14 126/13 135/9 137/9 137/18 141/15 149/6

**mean [18]** 23/16 42/4 56/7 57/22 72/23 78/17 78/19 79/16 79/16 79/16 91/9 94/2 111/20 120/4 124/7 137/17 138/6 138/24

**meaning [2]** 117/2 124/11

**means [2]** 64/10 149/15

**meant [5]** 33/13 37/3 49/8 65/10 72/15

**meantime [1]** 97/7

**med [2]** 106/13 107/20

**medical [21]** 15/6 75/10 99/10 106/10 106/22 107/5 107/14 107/16 108/2 108/4 108/25 109/3 109/4 110/23 112/13 113/13 115/5 134/24 135/4 135/15 135/20

**medication [2]** 130/15 139/13

**medications [3]** 130/5 130/20 138/9

**medicine [7]** 110/4 110/9 110/22 134/19 134/25 137/2 137/12

**medicines [1]** 133/23

**meet [1]** 78/23

**meeting [4]** 36/2 59/16 59/19 59/24

**MELISSA [1]** 2/21

**melissa.graff [1]** 2/24

**members [5]** 35/21 59/13 92/12 100/24 111/8

**Memorial [1]** 2/16

**mentioned [4]** 34/18 113/15 113/20 114/15

**Merck [2]** 122/10 126/9

**merry [3]** 44/13 50/23 62/9

**mess [1]** 39/20

**message [3]** 68/18 68/19 80/12

**met [1]** 14/4

**meteorologist [1]** 101/4

**method [1]** 68/6

**methods [3]** 111/17 112/2 112/5

**meticulously [1]** 15/11

**mic [1]** 101/21

**middle [1]** 107/19

**might [6]** 9/7 41/12 54/3 58/4 97/15 111/11

**Mill [1]** 25/5

**million [1]** 14/25 119/3

**millions [3]** 14/24 31/9 143/9

**mind [8]** 7/23 27/17 32/7 36/12 49/9 72/20 89/6 148/15

**mind-reading [2]** 27/17 49/9

**minds [1]** 89/3

**mindset [1]** 88/20

**minute [2]** 54/10 66/21

**minutes [3]** 21/17 139/25 143/25

**misleading [1]** 124/11

**misquoting [1]** 121/20

**miss [1]** 127/15

**missed [1]** 86/10

**missing [1]** 53/2

**misstated [1]** 76/13

**misstating [1]** 124/10

**mistaken [1]** 115/15

**mistrial [1]** 58/16

**Mittelman [4]** 33/23 35/14 35/15 40/6

**modules [1]** 23/7

**mom [2]** 11/25 47/9

**moment [6]** 40/4 70/25 93/19 96/13 108/22 115/23

**Monday [2]** 76/16 93/9

**money [3]** 31/7 31/13 100/15

**month [1]** 103/15

**more [10]** 19/3 38/24 40/24 40/24 81/22 82/7 82/8 107/18 113/23 140/10

**morning [14]** 1/16 5/4 10/11 10/12 10/15 19/2

## M

**morning... [8]**  19/6 33/4 64/13 100/24 100/25
  101/21 102/3 102/4
**most [3]**  11/16 104/22 137/17
**motion [3]**  37/22 98/14 99/5
**motivated [2]**  28/12 28/19
**motivation [1]**  28/25
**motive [5]**  36/11 54/17 54/20 54/21 54/25
**mouthpiece [1]**  7/12
**move [2]**  96/13 130/17
**moved [1]**  110/24
**moving [1]**  130/3
**Mr [34]**  4/4 6/2 16/8 18/12 19/5 20/4 34/2
  38/6 64/14 65/16 66/19 73/10 79/13 80/19
  84/3 84/18 92/21 93/5 95/16 97/10 101/15
  102/4 112/21 120/24 121/5 122/18 127/21
  132/11 132/13 132/15 133/5 136/8 140/23
  143/18
**Mr. [17]**  31/8 31/17 33/13 41/5 53/12 78/2
  80/4 85/23 86/17 90/4 90/5 91/15 92/17 92/21
  97/25 135/11 135/14
**Mr. Gomez [8]**  41/5 53/12 78/2 80/4 85/23
  86/17 90/5 92/21
**Mr. Lanier [1]**  31/17
**Mr. Murphy [3]**  90/4 91/15 92/17
**Mr. Pandina [1]**  33/13
**Mr. Pledger [2]**  135/11 135/14
**Mr. Sheller [2]**  31/8 97/25
**Ms [7]**  4/4 40/6 98/22 104/19 121/3 121/22
  131/24
**Ms. [18]**  10/23 17/13 20/8 26/7 26/11 32/2
  56/17 58/11 64/15 65/12 65/22 77/5 117/23
  118/3 121/2 121/7 125/13 135/17
**Ms. Binder [1]**  77/5
**Ms. Sullivan [15]**  10/23 17/13 20/8 26/7 26/11
  32/2 56/17 58/11 64/15 65/12 65/22 121/2
  121/7 125/13 135/17
**Ms. Sullivan's [2]**  117/23 118/3
**much [9]**  31/13 31/17 101/18 104/20 104/20
  104/20 114/23 119/17 130/16
**multiple [2]**  45/13 136/13
**MURPHY [5]**  2/21 90/4 91/15 92/17 95/16
**my [43]**  10/14 11/23 11/24 12/3 13/16 17/3
  23/13 27/20 29/23 34/10 34/18 40/13 41/4
  42/7 42/8 42/9 47/9 52/8 66/17 92/14 94/25
  101/20 109/5 109/12 112/17 113/16 114/21
  116/9 117/15 117/19 117/20 117/22 118/5
  118/20 120/13 124/2 124/5 128/20 132/15
  133/6 133/20 133/25 137/15
**myself [3]**  17/23 35/24 99/8

## N

**name [3]**  24/25 75/20 129/3
**names [5]**  46/11 46/23 91/14 96/18 97/9
**narrow [2]**  47/3 113/23
**narrowing [1]**  19/13
**national [1]**  95/18
**nature [1]**  77/20
**nauseam [1]**  58/11
**nauseated [1]**  75/16
**nauseating [5]**  75/14 75/19 77/24 77/24 78/11
**nauseating -- the [1]**  77/24
**nearly [2]**  10/22 10/23
**nebulous [1]**  45/4
**necessary [4]**  6/21 9/18 11/3 19/11
**need [25]**  9/19 9/24 11/8 16/17 17/17 17/23
  19/8 22/19 42/21 44/22 49/16 52/16 60/9
  60/13 65/22 66/14 83/5 84/18 85/22 87/25
  89/7 89/8 106/19 109/12 123/5
**needed [3]**  83/11 95/24 142/8
**needs [2]**  60/19 75/9
**negligence [1]**  57/16

**negligent [2]**  16/6 82/20
**neutral [1]**  10/24
**never [26]**  7/21 8/2 14/4 20/19 24/5 24/15
  28/21 53/8 54/15 55/12 56/14 58/25 64/7 66/6
  70/13 71/22 77/11 83/9 98/5 106/13 106/14
  106/16 133/10 136/10 136/18 138/16
**new [8]**  3/5 10/18 29/15 38/24 76/5 101/11
  107/12 112/16
**New's [1]**  12/23
**newspaper [1]**  97/17
**newspapers [1]**  98/4
**next [16]**  13/21 63/4 67/21 74/22 74/23 77/22
  77/23 79/2 79/10 79/24 79/25 93/14 101/7
  101/15 125/5 142/3
**nice [2]**  5/5 101/2
**nicotin [1]**  105/18
**night [3]**  6/24 14/24 119/2
**no [45]**  1/5 1/12 7/22 8/6 13/17 20/15 23/5
  26/13 28/10 28/10 28/22 28/22 29/3 37/16
  40/4 42/12 42/12 49/10 60/8 61/20 62/11 63/8
  66/2 66/13 70/6 71/15 71/16 75/16 79/19 83/2
  85/5 92/9 93/12 116/25 120/8 126/12 132/8
  133/17 135/21 137/25 144/7 144/12 146/15
  146/15 146/16
**nobody [1]**  91/4
**nominated [1]**  112/11
**none [3]**  17/12 104/8 133/19
**nonstop [1]**  116/4
**normal [1]**  76/4
**normally [1]**  38/3
**not [201]**
**NOTES [1]**  149/6
**nothing [14]**  7/14 24/8 24/15 27/2 28/13 31/16
  40/24 40/24 54/17 70/14 71/22 83/22 94/3
  129/23
**notice [8]**  28/14 34/15 45/2 56/11 60/17 69/18
  80/5 97/2
**November [4]**  76/16 76/21 78/8 86/24
**November 16 [1]**  86/24
**November 18 [1]**  76/16
**November 21st [1]**  78/8
**now [58]**  5/8 5/13 9/13 12/11 13/2 15/8 16/2
  21/22 25/16 31/21 31/22 33/16 41/14 45/17
  46/11 47/7 50/21 51/11 59/8 62/7 65/3 65/11
  68/25 70/7 72/12 74/17 74/19 75/14 75/19
  76/12 83/24 85/9 86/5 86/14 88/13 90/14
  92/11 95/25 98/18 100/17 100/18 101/5 101/10
  102/9 115/17 117/22 120/9 122/13 125/2 126/7
  127/15 137/19 140/10 140/23 143/9 145/18
  148/10 148/19
**number [23]**  21/15 21/16 24/22 32/23 34/3 63/9
  65/15 73/14 75/24 83/20 87/18 87/25 102/6
  103/19 103/24 109/15 111/15 115/6 116/15
  118/19 120/15 141/13 143/11
**number 3884282 [1]**  32/23
**numbers [2]**  107/25 123/19
**numerous [1]**  143/12
**nutrition [2]**  104/19 104/21
**nutshell [1]**  15/20
**Nys [2]**  76/22 87/7
**NYU [1]**  108/9

## O

**obesity [2]**  113/4 117/14
**object [13]**  58/25 66/2 72/17 79/12 81/20
  97/23 98/2 105/8 120/22 122/22 127/20 138/17
  147/4
**objection [17]**  60/18 61/12 79/13 81/22 88/21
  94/14 103/21 121/22 122/2 122/21 124/9
  124/14 126/16 126/18 132/3 138/2 138/14
**objectionable [3]**  17/15 18/10 23/23
**objections [3]**  19/13 131/12 131/13

## O

**observation [1]** 11/11
**obviously [7]** 9/10 11/6 31/25 80/10 80/17 96/21 136/20
**occasion [1]** 38/2
**Occasionally [1]** 108/20
**October [6]** 32/13 34/6 144/6 144/7 144/8 146/14
**October 2006 [1]** 144/6
**October 22 [1]** 34/6
**October 28 [1]** 32/13
**October 6 [2]** 144/7 144/8
**off [5]** 22/6 42/9 44/18 107/19 108/18
**off-label [1]** 22/6
**offer [2]** 16/21 52/6
**office [1]** 135/3
**officer [1]** 110/21
**offices [1]** 95/20
**official [3]** 1/25 10/14 149/10
**Oh [2]** 120/4 123/3
**old [2]** 19/10 46/25
**old-fashioned [1]** 46/25
**old-school [1]** 19/10
**Olga [3]** 33/23 35/14 35/15
**once [6]** 18/25 58/5 80/3 124/8 124/21 125/17
**one [104]** 2/22 5/6 5/16 5/23 6/25 15/15 16/21 20/15 21/7 21/7 21/13 21/13 21/15 23/3 23/8 23/8 24/22 26/9 27/12 28/6 33/6 33/6 34/3 34/4 35/24 37/10 38/6 39/25 41/8 46/9 51/13 52/19 52/21 52/22 56/3 56/22 63/12 63/14 63/15 64/17 66/11 68/10 73/13 74/17 74/18 74/22 74/23 75/7 75/13 75/18 75/24 76/10 76/18 76/20 76/23 77/22 77/23 78/4 78/6 78/10 79/2 79/10 79/11 79/25 80/8 80/10 80/17 81/2 81/22 82/7 82/8 82/9 84/3 84/5 84/17 84/18 86/9 86/10 86/23 86/25 87/12 87/14 88/3 89/9 92/9 95/6 101/13 104/5 104/22 104/25 107/24 108/25 111/14 112/6 112/25 114/6 115/10 116/19 118/20 128/6 132/8 136/15 145/10 146/18
**ones [4]** 42/25 45/11 92/24 94/7
**only [14]** 5/25 18/21 42/23 48/19 65/16 66/11 66/20 82/3 92/21 94/5 98/23 100/6 104/5 112/24
**open [5]** 13/22 32/2 38/10 90/21 148/15
**opening [10]** 21/23 30/20 30/22 34/10 34/18 117/23 121/21 122/4 123/15 127/17
**operate [1]** 128/12
**opine [1]** 7/8
**opinion [62]** 8/12 8/19 9/25 10/3 10/9 13/4 13/8 13/13 13/24 14/22 16/15 16/21 17/15 18/4 27/20 28/18 36/10 38/10 38/11 40/23 40/25 41/2 42/18 42/20 43/20 44/13 49/9 50/5 52/6 52/11 65/19 72/19 72/23 72/24 73/6 73/11 73/16 73/17 73/23 73/25 74/4 74/7 78/22 78/25 84/20 84/20 85/16 85/16 88/23 90/2 94/25 100/4 138/21 139/5 140/6 140/21 142/13 146/19 146/19 147/2 147/9 147/18
**opinions [17]** 7/15 12/9 13/8 44/24 106/6 106/7 129/18 132/10 132/13 132/14 132/15 132/16 135/24 140/15 141/21 141/24 142/22
**opponent [1]** 29/23
**opposing [1]** 93/23
**opposite [1]** 103/12
**order [5]** 9/22 17/6 60/20 92/8 99/11
**ordered [1]** 91/4
**organized [1]** 147/24
**original [1]** 80/12
**other [48]** 7/14 9/10 9/14 10/7 11/7 12/22 19/16 20/4 20/6 20/17 23/17 25/14 28/23 29/9 29/9 29/25 37/14 40/11 47/21 47/23 49/11 64/17 75/20 80/9 81/2 81/17 82/9 82/15 89/3

95/9 97/13 104/12 104/22 104/25 111/5 128/22 130/17 136/15 137/13 137/13 137/13 137/13 140/17 140/19 145/23 145/24 146/2 146/3
**others [8]** 29/13 33/13 54/9 75/5 78/9 80/14 80/23 143/6
**otherwise [5]** 44/14 45/12 50/14 53/7 100/10
**out [39]** 9/19 16/4 19/14 20/6 23/15 28/3 30/10 34/16 37/9 37/24 39/7 40/18 41/2 42/5 44/8 48/6 55/22 66/17 69/22 69/23 81/13 83/10 85/22 90/9 90/10 93/24 94/9 101/9 120/5 120/11 120/15 121/8 123/6 123/25 127/2 127/8 135/3 136/16 136/20
**out-of-court [2]** 37/24 39/7
**outline [1]** 143/14
**outlined [3]** 23/25 129/20 130/23
**outrageous [1]** 14/6
**outside [9]** 32/16 54/11 61/23 61/25 77/12 77/13 77/16 131/9 148/17
**over [11]** 5/8 5/11 16/25 61/9 70/6 79/13 96/9 117/25 130/11 133/16 134/21
**overall [5]** 12/18 73/16 73/17 113/2 146/19
**overburdening [1]** 94/24
**overeating [3]** 112/19 113/6 116/9
**overreaching [1]** 94/23
**overruled [7]** 62/5 66/8 71/24 77/19 122/2 124/15 147/8
**overstatement [1]** 15/12
**own [6]** 6/16 37/7 92/19 132/11 132/13 132/16

## P

**P.C [1]** 2/3
**p.m [2]** 64/24 87/24
**PA [2]** 2/6 2/12
**pack [1]** 104/19
**packaged [1]** 104/18
**page [9]** 15/15 23/8 23/9 43/21 52/20 52/23 68/15 75/24 141/16
**pages [7]** 23/4 32/8 43/2 43/12 44/3 65/14 141/16
**paid [4]** 31/13 31/17 119/12 119/18
**pain [1]** 58/17
**Pam [1]** 82/17
**Pamela [1]** 84/5
**Pandina [35]** 32/13 33/13 33/22 34/9 34/19 34/21 34/22 35/10 40/5 43/9 46/12 59/12 63/19 64/3 64/23 66/14 66/22 69/8 69/12 69/19 69/21 69/22 72/9 75/5 76/15 77/5 78/2 78/9 80/4 80/12 80/25 83/6 87/20 87/21 89/16
**Pandina or [1]** 34/12
**Pandina's [1]** 63/19
**panel [1]** 47/4
**paper [3]** 97/18 97/22 143/4
**paralegals [2]** 95/19 96/19
**parents [1]** 22/10
**part [11]** 6/3 36/15 36/17 40/25 52/10 54/20 71/7 82/19 121/4 130/14 141/7
**participated [1]** 137/19
**particular [21]** 22/5 23/20 37/3 37/25 38/14 49/14 52/13 56/19 57/2 57/18 57/25 58/10 68/5 72/6 74/4 86/3 93/19 93/19 113/3 114/17 144/18
**particularly [1]** 93/18
**parties [4]** 5/3 39/7 46/21 81/3
**parties' [1]** 92/12
**passed [1]** 105/23
**past [2]** 122/14 124/20
**patient [3]** 22/11 111/14 135/14
**patients [8]** 22/10 108/19 111/13 111/15 133/13 133/16 137/3 137/12
**pay [1]** 5/20
**paying [1]** 118/10
**PC [1]** 118/21
**pediatric [2]** 34/8 109/5

**pediatrician [4]**  108/15 108/16 108/17 109/9
**pediatricians [1]**  134/9
**pediatrics [4]**  108/21 108/23 110/8 111/6
**peg [1]**  99/8
**pejorative [1]**  30/6
**PENNSYLVANIA [6]**  1/2 1/19 2/22 17/14 25/6 30/25
**people [31]**  25/5 25/23 29/9 34/7 35/22 37/10 59/17 62/2 68/17 68/23 69/3 71/19 75/2 77/12 79/5 84/12 89/3 91/14 92/24 93/6 93/12 95/5 103/4 104/7 104/24 105/25 111/17 114/8 116/20 143/6 146/12
**percent [5]**  125/22 126/3 126/4 145/4 145/5
**perfect [2]**  91/19 117/21
**period [18]**  102/12 103/7 104/7 104/10 104/16 109/10 121/15 122/15 123/22 123/23 125/6 128/14 128/23 144/13 145/15 146/6 146/10 146/25
**permit [5]**  32/7 38/8 72/14 79/13 138/25
**permits [1]**  28/17
**permitted [6]**  38/18 47/19 47/20 88/18 139/11 147/15
**person [7]**  1/7 25/8 56/20 59/20 93/9 114/7 118/10
**personal [4]**  11/9 11/10 14/11 31/11
**personally [1]**  136/18
**perspective [1]**  110/19
**persuaded [1]**  63/7
**pertained [2]**  143/13 145/22
**petition [1]**  6/5
**Pfizer [2]**  122/11 126/20
**phantom [1]**  95/5
**pharma [3]**  2/24 120/14 124/7
**pharmaceutical [20]**  1/11 12/18 49/13 105/9 117/4 117/7 118/11 118/14 118/15 119/23 127/5 127/6 128/16 128/19 130/5 130/20 137/2 138/8 139/12 139/13
**pharmaceuticals [13]**  1/10 12/17 35/13 65/5 73/19 105/16 138/10 139/14 144/14 145/14 146/7 146/11 146/22
**pharmaco [3]**  114/5 138/13 139/21
**pharmaco-statistics [2]**  138/13 139/21
**pharmacoepidemiology [4]**  113/24 114/3 131/5 139/18
**PHILADELPHIA [8]**  1/2 1/19 2/6 2/12 2/22 102/6 116/2 149/11
**PHILLIP [1]**  1/6
**Phone [4]**  2/6 2/12 2/17 2/23
**phrase [2]**  44/15 80/16
**physician [4]**  20/25 35/16 111/13 130/14
**physicians [4]**  131/8 146/13 147/12 147/12
**PI [1]**  136/14
**pick [3]**  80/25 104/18 104/18
**picked [2]**  44/8 46/10
**picking [2]**  44/15 82/18
**piece [1]**  19/21
**pieces [2]**  12/2 146/13
**pitch [1]**  112/21
**pivotal [1]**  83/4
**place [1]**  13/22
**plaintiff [15]**  2/7 2/13 2/18 4/7 7/12 46/6 49/17 50/13 57/3 88/10 101/18 126/10 127/4 127/4 127/5
**plaintiff's [5]**  19/20 21/24 80/24 118/10 136/2
**plaintiffs [8]**  1/8 5/24 19/3 19/24 78/5 81/18 89/5 126/22
**plaintiffs' [1]**  31/10
**plan [10]**  13/5 14/18 14/20 15/15 18/18 35/8 81/8 113/10 126/21 126/23
**plane [1]**  134/22

**planning [1]**  41/16
**plans [8]**  9/9 17/18 18/8 20/9 23/24 24/3 27/16 41/11
**play [10]**  25/23 34/21 60/22 60/23 62/18 68/9 69/7 69/11 77/4 81/8
**played [1]**  70/2
**PLEAS [3]**  1/2 97/5 149/11
**please [11]**  14/17 28/6 32/25 40/3 65/22 89/13 95/16 101/16 148/11 148/12 148/14
**pleased [1]**  10/10
**pleasure [3]**  26/21 26/24 102/7
**PLEDGER [4]**  1/6 1/6 135/11 135/14
**plus [1]**  103/9
**PM [1]**  78/9
**point [25]**  6/19 6/19 11/7 17/3 17/10 25/11 28/3 34/11 34/17 46/12 52/16 56/16 81/6 82/6 88/23 89/9 92/13 93/14 95/7 99/13 99/22 100/3 109/18 140/5 148/5
**population [2]**  111/16 114/4
**populations [3]**  111/18 111/19 114/6
**position [7]**  10/24 22/9 76/7 102/11 102/13 103/10 139/4
**possible [1]**  11/17
**post [1]**  74/25
**post-it [1]**  74/25
**poster [1]**  64/5
**potential [6]**  30/13 30/15 30/19 69/23 70/4 89/4
**potentially [1]**  86/7
**practice [4]**  134/19 134/24 134/25 135/2
**practiced [1]**  106/16
**practicing [1]**  108/17
**pre [3]**  98/16 98/23 100/18
**pre-emption [2]**  98/16 98/23
**pre-witness [1]**  100/18
**precautions [4]**  130/13 130/19 138/11 139/15
**precluded [2]**  27/10 81/17
**prefer [1]**  43/16
**preferable [1]**  82/3
**prejudice [1]**  42/13
**prejudicial [5]**  24/15 28/21 54/16 71/23 77/17
**preliminarily [2]**  9/6 53/25
**prepare [1]**  22/24
**prepared [6]**  15/12 46/24 102/9 129/18 141/23 144/21
**prescribed [1]**  138/17
**prescriber [13]**  8/2 8/10 20/20 24/5 24/14 28/20 55/12 56/14 58/25 71/21 77/11 138/23 138/24
**prescribes [1]**  137/12
**prescribing [11]**  20/18 22/6 22/6 54/15 64/6 66/5 70/13 133/13 137/16 138/18 139/4
**prescription [9]**  12/19 128/19 130/5 130/14 130/20 131/6 132/24 139/12 143/8
**prescriptions [1]**  138/9
**present [2]**  5/3 60/16
**presentation [1]**  13/16
**presented [2]**  37/21 42/25
**President [5]**  102/16 102/22 102/25 105/24 112/11
**press [1]**  97/24
**pretrial [3]**  10/17 37/22 39/18
**pretty [1]**  85/17
**previous [1]**  30/25
**previously [1]**  26/13
**price [1]**  51/3
**primarily [1]**  116/24
**Princeton [1]**  3/5
**principal [2]**  136/11 136/12
**prior [5]**  59/15 123/24 144/5 144/10 145/12
**pro [3]**  3/4 31/12 31/13
**pro-bias [1]**  31/12 31/13
**probably [7]**  14/21 68/13 86/10 92/17 95/3

## P

**probably... [2]**  104/22 133/11
**probative [8]**  55/19 57/11 57/13 57/14 57/24 62/10 74/4 77/19
**probative of [1]**  62/10
**problem [19]**  7/10 7/11 8/7 20/16 26/25 48/17 48/19 48/21 49/5 49/20 64/4 71/17 79/2 93/3 93/12 93/16 98/22 113/3 138/20
**problems [1]**  8/6
**procedurally [1]**  23/16
**procedure [7]**  5/8 5/12 9/12 19/10 38/3 42/23 99/10
**proceed [2]**  101/20 140/23
**proceeding [1]**  96/25
**PROCEEDINGS [1]**  149/4
**process [2]**  53/18 115/23
**proclivity [1]**  22/2
**produce [1]**  60/3
**produced [3]**  14/25 15/2 119/4
**products [3]**  128/11 128/13 131/6
**professional [3]**  2/9 113/8 121/6
**professor [7]**  108/21 108/23 110/7 111/5 111/6 111/6 113/24
**proffer [6]**  27/23 47/17 51/19 123/8 138/7 139/5
**proffered [3]**  43/15 65/16 88/12
**proffering [1]**  72/25
**profile [1]**  98/6
**project [3]**  34/17 35/16 46/13
**prolactin [17]**  35/16 65/2 67/23 68/19 68/21 73/20 75/2 75/6 76/4 80/10 80/14 80/16 86/24 134/16 144/18 145/23 146/24
**prolactin-related [1]**  67/23
**promise [1]**  134/22
**proof [7]**  23/20 30/8 47/25 55/19 56/22 56/23 57/24
**proper [9]**  13/13 19/24 33/14 36/12 49/3 62/19 64/11 78/16 88/9
**properly [4]**  9/15 22/9 81/5 81/8
**property [2]**  54/23 56/19
**prostate [2]**  116/22 116/23
**protect [3]**  104/24 105/25 116/20
**proud [1]**  104/2
**prove [8]**  30/24 34/20 43/8 45/23 54/22 56/3 56/6 56/10
**proved [1]**  6/19
**proven [4]**  45/22 46/2 53/9 122/5
**provide [1]**  142/8
**provided [2]**  73/19 135/19
**provides [1]**  137/13
**proving [1]**  43/13
**psychiatrist [4]**  35/10 133/2 133/7 133/20
**psychiatry [2]**  133/3 133/8
**psychologist [2]**  34/9 35/10
**puberty [1]**  76/8
**public [5]**  91/6 92/10 103/20 103/22 110/8
**publications [2]**  113/12 134/14
**publicity [1]**  97/15
**publish [4]**  35/7 38/13 73/7 79/13
**published [8]**  15/6 38/9 42/16 50/17 52/14 83/7 112/13 133/22
**publisher [2]**  116/7 116/8
**publishing [1]**  115/24
**pulled [1]**  81/13
**punitive [8]**  28/5 28/10 28/22 36/11 55/4 58/8 58/12 58/19
**punitives [1]**  29/3
**purpose [1]**  13/24
**purposes [4]**  9/11 12/16 68/4 107/24
**pursuant [2]**  99/4 99/5
**put [30]**  6/14 11/18 11/19 11/23 11/23 11/24 12/7 12/11 16/10 19/25 23/8 27/17 41/11 42/8 44/23 48/13 48/14 53/7 61/8 80/5 93/24 98/24 138/12 139/22 140/13 143/24 146/4 146/8 146/12 147/19
**putting [2]**  42/7 64/10

## Q

**qualifications [12]**  101/23 121/5 122/19 122/23 122/25 129/10 129/24 130/22 131/22 138/5 138/14 139/2
**qualifications I [1]**  122/25
**qualified [4]**  49/14 112/6 140/6 146/21
**qualify [7]**  38/3 113/17 113/18 125/4 130/4 130/17 147/10
**qualifying [4]**  105/10 113/16 130/2 139/22
**quality [1]**  128/8
**quarter [3]**  44/7 101/13 148/9
**question [19]**  16/16 16/17 37/13 55/15 55/15 56/16 57/15 83/6 84/16 99/21 105/17 113/5 113/6 122/8 130/7 133/7 139/3 147/15 147/16
**questioned [1]**  77/6
**questions [18]**  30/7 62/15 62/19 62/20 88/17 111/24 112/3 117/14 118/2 118/3 120/10 125/14 127/22 129/11 132/2 135/9 135/17 146/17
**quicker [1]**  33/8
**quickly [3]**  123/16 124/18 125/2

## R

**rabbit [1]**  12/12
**raise [1]**  120/6
**raised [4]**  18/11 95/7 97/4 127/17
**raises [1]**  6/4
**raising [2]**  19/7 145/23
**RAMI [1]**  1/21
**random [1]**  53/14
**Rasmussen [1]**  84/5
**rate [3]**  119/14 120/2 120/6
**rates [1]**  76/5
**rather [9]**  5/14 9/17 39/21 51/19 84/14 97/16 99/8 120/19 143/25
**raw [1]**  79/7
**RC [1]**  4/3
**RD [1]**  4/3
**re [3]**  1/4 26/14 87/19
**RE-14088063 [1]**  87/19
**re-brought [1]**  26/14
**reaching [1]**  52/11
**read [19]**  18/7 32/5 32/8 35/23 38/13 46/18 46/23 69/22 69/22 78/6 82/4 88/16 97/18 99/6 99/7 99/25 121/25 135/15 139/2
**reader [1]**  72/20
**reading [5]**  27/17 29/7 36/12 49/9 97/22
**ready [2]**  76/9 123/8
**real [3]**  5/5 114/21 123/16
**really [24]**  5/20 9/19 9/23 17/8 17/9 17/17 26/8 27/7 29/14 32/20 38/19 39/5 46/19 48/24 60/15 65/24 76/20 89/8 93/17 96/13 108/18 113/7 116/8 137/17
**realtime [9]**  1/24 91/4 91/7 91/11 92/2 92/9 92/11 92/19 94/22
**reason [2]**  67/5 70/8
**reasonable [2]**  13/9 146/20
**reasons [2]**  5/22 77/9
**REATH [3]**  2/20 94/6 95/17
**recall [2]**  117/12 133/19
**receiving [2]**  54/23 56/18
**recently [1]**  134/23
**recertification [1]**  109/12
**recess [6]**  90/13 90/19 148/1 148/8 148/23 148/24
**recipient [1]**  41/9
**recognized [1]**  115/7
**recollection [3]**  117/13 117/18 117/21

**R**

recollections [1]  137/19
recommended [1]  75/25
reconsider [1]  51/25
reconvened [1]  5/2
record [33]  16/10 18/7 18/22 20/5 21/21 23/3
 32/6 32/9 37/5 37/8 37/23 38/4 38/20 39/3
 39/5 45/20 51/5 54/5 59/4 59/18 64/22 65/12
 65/13 66/6 76/12 77/10 77/14 78/7 79/3 79/9
 83/21 84/4 93/11
records [15]  37/14 39/4 39/25 44/20 47/14
 48/16 51/25 52/4 53/14 53/16 53/20 53/25
 64/8 135/15 135/20
Red [1]  44/17
Redirect [1]  138/5
refer [1]  15/15
referee [1]  31/20
referred [2]  18/12 34/10
referring [1]  65/23
refers [1]  70/20
regard [2]  105/2 128/12
regarding [4]  7/5 75/2 92/11 142/12
regular [1]  38/2
regulate [1]  105/25
regulation [11]  12/15 104/23 105/4 105/9
 105/10 105/16 109/20 113/9 118/5 130/19
 131/6
regulations [5]  7/9 8/13 28/16 138/11 139/15
regulatory [12]  7/3 7/8 7/15 8/5 8/24 12/14
 36/10 65/9 81/15 137/25 138/3 138/7
relate [5]  30/8 51/9 65/17 106/20 130/21
related [7]  10/8 20/14 67/23 68/20 77/10
 139/15 144/15
relates [10]  5/17 6/23 7/9 12/19 19/16 20/17
 66/4 114/21 114/24 136/21
relating [3]  19/19 20/18 144/18
relation [1]  72/25
relevance [5]  59/2 84/25 85/5 105/12 105/14
relevant [6]  10/4 34/2 54/21 54/25 58/13
 84/23
reliability [1]  45/7
reliable [1]  45/19
relied [5]  9/7 9/9 16/14 32/6 89/25
rely [2]  44/19 78/17
relying [1]  86/7
remember [2]  122/3 140/12
render [3]  12/9 13/23 106/6
rendered [1]  13/4
rep [2]  12/2 47/9
repair [2]  99/11 99/19
repeated [1]  29/22
rephrase [1]  122/7
report [18]  10/2 12/20 12/21 13/4 13/19
 135/25 141/8 141/10 141/12 141/13 141/16
 141/19 142/3 142/15 142/16 142/16 142/17
 142/22
REPORTED [1]  1/23
reporter [5]  1/24 1/25 97/6 149/10 149/16
reports [5]  7/5 15/6 15/21 16/23 147/19
represent [7]  40/7 41/3 41/4 41/20 119/2
 126/11 133/17
representation [1]  135/22
representative [1]  25/9
represented [2]  81/3 118/6
representing [1]  119/15
REPRODUCTION [1]  149/14
request [2]  94/17 94/24
requested [1]  93/11
require [3]  8/13 99/10 99/14
required [1]  61/18
research [7]  1/11 2/25 134/15 136/9 136/13
 136/18 136/21

reserve [2]  81/24 137/22
resolved [1]  46/20
respect [2]  11/6 105/3
respectful [1]  94/25
respectfully [10]  11/12 21/14 29/21 53/19
 57/7 58/8 70/9 94/16 97/8 98/2
respecting [1]  11/7
responding [1]  26/10
response [3]  9/4 29/21 68/22
responsibility [1]  93/22
responsible [1]  129/15
rest [4]  12/3 47/9 48/8 57/17
restriction [1]  10/18
result [7]  22/8 22/11 22/13 68/24 105/20
 111/21 141/9
results [2]  71/11
retired [1]  61/2
return [1]  148/10
reveal [1]  57/14
reversal [1]  46/3
reversed [2]  39/4 53/10
review [14]  12/9 18/24 37/20 72/2 73/5 98/21
 119/10 119/12 133/11 133/15 137/2 137/18
 141/19 143/17
reviewed [21]  11/22 14/23 15/3 15/19 15/21
 15/22 15/23 34/5 36/16 37/12 52/9 79/4
 118/25 119/5 119/8 119/8 135/15 136/20
 142/24 143/3 143/22
reviewing [1]  25/16
revision [3]  75/14 75/18 78/11
Reyes [1]  64/25
ridiculously [1]  64/12
right [49]  22/15 22/22 25/16 30/16 31/21
 31/22 35/25 36/22 45/17 46/13 49/21 49/24
 50/16 50/16 50/21 51/11 52/15 61/8 61/10
 65/11 73/15 74/13 74/17 74/23 85/9 87/2 88/2
 88/6 88/24 92/4 98/18 100/17 101/2 109/11
 109/22 114/9 125/17 127/13 131/10 132/24
 133/24 134/19 136/4 140/9 140/22 148/6 148/7
 148/19 148/22
rise [2]  68/19 98/24
risk [4]  16/3 73/20 145/2 145/15
risks [1]  146/23
RISPERDAL [11]  1/4 119/4 119/15 125/8 129/3
 133/13 133/24 135/6 142/12 143/9 144/4
risperidone [1]  129/3
role [2]  105/2 105/3
ROMANO [2]  1/24 149/10
rookies [1]  17/12
room [5]  27/24 69/3 90/17 91/13 124/2
roughly [1]  103/7
RPR [1]  149/10
RPR-CM-CRR [1]  149/10
rule [1]  91/3
ruled [7]  9/6 18/16 26/13 27/16 45/18 53/25
 91/12
rules [7]  16/19 17/14 29/6 88/14 95/3 96/14
 128/11
ruling [7]  26/14 40/12 47/18 67/9 74/12 89/4
 91/20
rulings [4]  10/17 10/17 12/23 100/19
rumble [1]  100/18
run [1]  112/23
running [4]  34/10 34/17 108/12 127/21

**S**

sabotage [2]  63/8 63/8
safety [4]  116/20 128/18 143/23 144/15
said [37]  11/21 14/5 14/13 25/17 26/24 29/20
 30/20 30/22 34/11 36/6 36/18 36/19 37/10
 39/18 39/18 41/11 46/24 47/7 65/10 73/9
 73/18 90/9 92/8 95/9 95/11 95/12 95/14

**said... [10]** 121/21 122/4 123/15 124/2 124/10
 126/19 126/20 141/8 145/22 148/12
**sales [3]** 11/25 47/9 128/18
**salt [1]** 104/20
**same [16]** 26/18 26/20 41/10 43/21 45/18 55/19
 56/23 56/24 74/15 87/12 96/6 119/22 119/24
 140/18 149/8 149/15
**San [3]** 111/2 111/4 115/18
**sanctions [1]** 96/23
**Sasheller [1]** 2/4
**sat [2]** 106/14 120/15
**satisfied [2]** 91/23 96/17
**save [3]** 19/12 49/18 124/24
**saved [1]** 101/8
**saving [1]** 21/12
**saw [17]** 5/19 8/2 14/15 18/21 20/19 24/5
 24/15 28/21 54/15 55/13 56/14 58/25 64/7
 66/6 70/13 71/22 77/11
**say [37]** 9/2 10/14 17/20 23/10 27/18 28/11
 28/15 28/18 31/12 32/6 39/13 40/18 40/20
 42/4 52/9 52/12 52/22 54/22 60/6 64/9 73/2
 73/8 79/15 79/18 81/7 82/16 84/15 93/25
 96/22 100/5 111/19 119/6 120/9 121/18 136/16
 144/25 148/14
**saying [17]** 11/14 24/13 27/19 40/17 48/2 48/5
 49/24 56/12 61/11 62/21 68/4 71/20 79/19
 80/7 82/16 89/16 100/25
**says [24]** 10/23 12/20 12/21 14/7 17/14 19/5
 31/2 31/6 31/9 33/24 34/25 62/21 71/10 71/10
 75/13 75/18 75/23 75/25 79/23 80/9 80/15
 82/13 87/10 112/17
**school [16]** 19/10 106/14 106/14 106/23 107/5
 107/14 107/16 107/19 107/20 108/3 109/3
 109/21 110/4 110/9 110/21 110/23
**science [1]** 68/23
**scientific [1]** 140/8
**score [2]** 43/15 53/6
**scoreboard [1]** 45/25
**screen [3]** 35/7 38/14 88/16
**search [1]** 143/7
**second [10]** 6/4 6/23 9/22 28/6 35/24 54/8
 75/22 76/20 78/10 84/4
**Secondly [1]** 75/25
**section [1]** 8/14
**see [36]** 12/24 13/14 14/15 18/17 20/12 21/6
 21/10 22/19 24/9 28/15 32/18 33/7 35/4 36/3
 38/18 39/2 48/7 48/23 49/11 49/11 49/16 50/7
 50/11 50/21 54/4 59/6 68/16 100/19 103/14
 104/19 107/22 108/19 109/7 142/4 142/17
 148/20
**seeing [1]** 110/2
**seek [1]** 120/5
**seem [2]** 41/2 99/9
**seems [2]** 37/24 40/19
**seen [6]** 7/4 7/21 7/22 19/23 108/25 146/15
**sees [1]** 68/25
**segments [1]** 81/8
**selection [1]** 102/8
**sell [2]** 128/10 128/10
**Senate [2]** 103/11 103/13
**send [1]** 91/13
**sense [5]** 37/15 57/16 70/6 125/20 140/14
**sent [2]** 33/23 80/12
**sentence [2]** 36/4 78/10
**separate [1]** 96/24
**September [1]** 142/5
**September 17 [1]** 142/5
**serially [1]** 42/11
**series [2]** 33/10 70/10
**serious [5]** 8/13 8/23 98/15 98/20 100/7
**serve [1]** 102/24

**service [2]** 103/3 115/8
**SESSION [1]** 1/16
**set [3]** 19/3 126/24 127/3
**settled [2]** 18/2 18/3
**seven [6]** 123/25 124/2 124/3 126/24 127/2
 127/8
**several [2]** 115/20 116/5 142/10
**severe [1]** 99/11
**shall [2]** 91/4 96/22
**SHAP [5]** 75/15 75/20 78/12 80/10 80/17
**shared [2]** 96/19 97/10
**SHELLER [7]** 2/3 2/3 31/8 42/2 97/25 118/21
 119/16
**sheller.com [2]** 2/4 2/5
**shingle [1]** 135/3
**short [1]** 90/11
**should [36]** 6/9 6/17 6/18 8/4 18/11 20/10
 20/16 21/8 22/7 22/8 22/16 27/11 49/21 54/24
 55/2 55/7 55/8 55/24 56/2 56/5 56/11 56/23
 57/4 57/25 71/11 77/20 79/24 90/16 94/24
 95/5 97/18 121/25 128/9 128/12 131/8 132/9
**shouldn't [10]** 19/17 19/20 23/13 23/22 29/6
 62/3 70/9 72/3 79/15 79/18
**show [23]** 21/4 23/3 24/12 24/19 40/16 41/21
 44/10 45/9 45/11 45/16 45/22 47/16 49/17
 51/18 55/3 55/11 55/11 56/4 56/12 57/3 58/24
 69/12 74/21
**showed [1]** 46/6
**showing [2]** 7/23 71/17
**shown [4]** 18/6 74/20 82/4 88/15
**shows [3]** 15/24 51/14 71/13
**shuted [1]** 32/5
**side [9]** 17/17 17/24 54/9 58/2 67/23 68/20
 111/25 137/8 145/7
**signed [1]** 105/24
**significant [4]** 104/12 104/23 114/18 115/18
**simple [3]** 11/16 20/9 37/23
**simply [7]** 12/7 16/13 34/21 40/15 91/19 94/19
 94/19
**since [3]** 11/14 22/3 111/3
**single [3]** 67/3 122/9 122/9
**SIPALA [1]** 2/10
**sir [48]** 52/11 85/18 102/9 102/13 102/16
 103/9 103/24 104/3 105/5 105/14 106/3 107/9
 107/17 108/14 111/4 115/2 115/19 116/13
 116/16 117/3 118/9 118/13 119/17 119/21
 120/17 122/15 123/18 124/17 125/5 125/21
 126/19 127/3 127/15 127/24 128/4 128/14
 129/12 129/18 130/15 130/23 134/19 141/17
 141/23 145/7 146/10 146/18 146/19 147/18
**sit [4]** 25/25 50/7 84/3 103/20
**sitting [3]** 25/4 69/3 137/18
**situation [4]** 55/19 56/19 56/20 57/2
**six [10]** 47/16 47/16 48/6 50/7 51/21 73/4
 102/12 103/7 103/9 107/21
**Six-plus [1]** 103/9
**slate [1]** 41/24
**slow [2]** 5/5 5/5
**small [1]** 116/21
**smarter [1]** 114/23
**snide [2]** 14/11 26/23
**snippering [1]** 18/2
**snooze [2]** 25/25 26/3
**snow [1]** 101/2
**snowstorm [2]** 13/19 13/20
**sold [1]** 116/25
**some [43]** 7/16 10/23 12/2 12/25 15/14 18/15
 20/6 21/9 22/14 23/7 24/21 29/5 32/20 37/2
 38/12 39/15 44/21 45/7 47/23 52/15 54/10
 56/4 75/20 91/19 96/20 96/23 99/10 101/5
 101/6 104/16 104/17 106/19 108/10 109/11
 109/18 120/14 122/13 124/6 126/4 141/15

**S**

some... **[3]**  141/23 143/4 143/4
somebody **[6]**  43/10 59/23 69/21 77/16 84/20
 121/18
somehow **[2]**  67/10 67/11
someone **[5]**  23/10 67/7 81/15 93/8 134/22
someone's **[1]**  93/22
something **[24]**  12/12 27/9 27/10 30/21 30/23
 32/6 38/8 38/17 39/9 40/21 41/13 54/25 56/2
 57/13 58/13 69/15 73/6 74/18 97/24 111/9
 116/17 119/3 125/22 138/23
sometime **[1]**  22/4
sometimes **[2]**  116/10 137/3
soon **[1]**  13/20
sorry **[6]**  56/15 84/18 117/3 122/17 127/13
 132/12
sort **[4]**  32/14 84/19 127/21 128/11
sound **[1]**  67/24
sounds **[3]**  42/23 65/7 82/23
source **[1]**  89/21
speak **[3]**  54/9 69/16 132/7
speaking **[2]**  106/3 132/4
specialty **[1]**  134/7
specific **[6]**  18/10 21/3 91/15 105/17 138/14
 143/20
specifically **[5]**  19/19 76/3 78/12 128/23
 131/7
specifics **[1]**  131/14
SPECTER **[1]**  2/9
speculate **[1]**  33/12
speculating **[2]**  49/7 66/4
speculation **[1]**  88/20
speculative **[1]**  89/4
speech **[4]**  30/21 30/23 115/13 117/19
speed **[1]**  68/14
spend **[2]**  116/3 135/3
spent **[2]**  126/4 141/8
Spring **[1]**  25/5
Square **[1]**  2/22
stack **[1]**  39/12
stand **[2]**  82/14 131/13
standard **[3]**  56/8 98/9 98/11
standards **[2]**  57/9 138/22
start **[6]**  29/8 86/11 90/12 116/21 146/18
 148/8
start-up **[1]**  116/21
started **[3]**  33/18 86/16 140/3
starting **[2]**  129/8 129/8
state **[6]**  21/20 76/3 76/5 126/14 134/20
 141/20
stated **[6]**  55/16 77/10 118/18 143/2 147/18
 147/22
statement **[13]**  10/25 11/11 37/24 37/25 38/16
 39/7 61/18 77/12 77/15 117/23 127/17 145/20
 145/21
states **[7]**  102/12 102/14 103/4 103/11 103/13
 110/12 126/14
stating **[1]**  68/18
statistically **[1]**  114/17
statisticians **[1]**  114/23
statistics **[2]**  138/13 139/21
status **[1]**  97/6
step **[1]**  28/3
STEVEN **[1]**  2/3
stick **[1]**  39/10
still **[5]**  5/6 51/11 56/3 100/25 129/10
stint **[1]**  110/12
stipulate **[1]**  5/24
stipulation **[1]**  43/11
stolen **[4]**  54/23 54/24 56/18 56/21
stop **[2]**  57/19 58/3
story **[3]**  15/8 15/25 36/16

straighten **[1]**  9/19
Street **[2]**  2/5 2/11
stretch **[1]**  85/2
strike **[1]**  76/14
strip **[2]**  41/2 42/5
strong **[1]**  24/20
studied **[2]**  111/20 130/11
studies **[5]**  48/13 53/15 111/10 114/25 137/3
study **[21]**  7/4 7/6 7/7 8/8 11/6 15/21 16/4
 16/23 20/15 20/18 24/5 24/14 51/10 70/13
 82/11 83/7 111/18 113/7 114/4 114/5 114/21
stuff **[7]**  7/18 18/2 18/5 41/16 48/20 56/21
 127/16
subject **[18]**  18/23 39/8 41/23 42/14 46/3
 60/12 64/25 66/8 74/3 75/6 80/6 80/14 80/23
 88/9 88/18 89/4 131/14 140/17
submit **[3]**  20/19 23/22 70/9
submitted **[1]**  70/3
subpoena **[3]**  34/22 63/24 67/4
substances **[1]**  105/16
such **[3]**  26/21 113/5 145/17
suffering **[1]**  58/18
suggest **[1]**  57/19
suing **[2]**  127/4 127/6
Suite **[2]**  2/22 3/5
SULLIVAN **[20]**  3/3 10/23 17/13 20/8 26/7 26/11
 32/2 56/17 58/11 64/15 65/12 65/22 98/22
 121/2 121/3 121/7 121/23 125/13 131/24
 135/17
Sullivan's **[2]**  117/23 118/3
Sullivan..............131 **[1]**  4/4
summary **[3]**  57/22 59/18 59/19
summer **[1]**  97/6
supplemental **[2]**  142/15 142/17
supplied **[2]**  143/4 143/4
supply **[1]**  116/21
suppose **[1]**  47/25
supposed **[1]**  81/15
Supreme **[1]**  95/3
sure **[21]**  21/5 24/13 27/14 28/9 34/3 37/5
 86/10 87/11 89/7 89/12 90/7 100/8 104/15
 105/8 111/10 111/23 112/23 120/10 121/7
 133/5 135/21
surprise **[1]**  42/12
sustain **[1]**  88/21
sustained **[3]**  103/23 126/18 127/25
swayed **[1]**  82/15
sworn **[1]**  101/19
symptoms **[2]**  67/25 111/21
synthesize **[1]**  141/20

**T**

tab **[21]**  52/21 53/13 63/10 63/16 63/16 68/13
 68/14 74/24 75/23 76/13 77/25 80/2 86/17
 87/8 87/10 87/16 87/21 88/5 90/7 90/9 107/24
tabbed **[4]**  15/13 31/4 63/11 68/14
table **[2]**  121/9 123/15
tabs **[2]**  15/13 86/9
take **[16]**  12/24 25/8 32/18 35/4 56/21 67/4
 90/13 95/4 96/12 101/13 109/12 114/2 114/8
 119/10 139/19 148/6
taken **[11]**  41/25 51/5 56/24 63/20 82/6 90/19
 92/13 133/16 141/10 148/24 149/6
takes **[3]**  111/13 111/14 114/7
taking **[3]**  43/12 112/19 127/13
talk **[8]**  29/8 72/14 82/12 106/18 108/24
 115/22 135/13 136/24
talked **[5]**  5/18 40/2 132/2 136/8 136/9
talking **[23]**  20/22 31/21 31/22 32/3 32/19
 42/3 49/12 54/10 63/14 75/7 76/23 81/19
 81/19 83/25 84/6 86/25 87/12 120/22 125/3
 128/23 136/25 138/21 143/19

**talks [1]**  71/2
**tape [3]**  60/22 60/23 69/25
**tapered [1]**  108/18
**taught [4]**  109/15 109/18 109/20 113/21
**team [2]**  80/15 93/4
**technology [1]**  95/2
**tell [31]**  11/19 14/15 14/17 15/20 16/7 16/9
  21/18 25/16 27/5 30/19 41/7 41/19 41/20
  41/22 45/17 65/9 66/10 66/13 78/18 91/24
  92/5 97/15 97/19 111/8 118/25 126/13 135/5
  139/23 140/4 140/10 146/13
**telling [3]**  50/18 97/23 98/3
**tells [1]**  91/17
**tempting [1]**  42/24
**ten [3]**  21/17 26/14 86/15
**tends [1]**  82/14
**tentative [2]**  116/6 116/11
**tenure [2]**  103/18 104/13
**term [4]**  1/5 1/6 102/25 143/23
**terminology [1]**  30/6
**terms [10]**  7/4 16/12 96/23 105/10 105/15
  130/12 133/13 134/24 138/22 145/7
**testified [4]**  72/10 120/16 123/24 126/8
**testifies [1]**  124/10
**testify [6]**  46/14 78/22 102/9 118/16 120/14
  139/11
**testifying [3]**  5/9 8/2 24/18
**testimony [41]**  5/14 5/17 6/10 7/20 18/8 20/7
  25/25 27/12 30/5 33/15 41/23 44/5 45/14
  47/12 49/19 61/17 66/13 69/8 72/12 77/3 77/4
  79/4 80/7 84/22 86/12 86/16 89/14 89/14
  99/18 99/24 100/20 101/11 120/23 125/24
  126/5 129/9 136/3 139/6 139/25 140/11 142/8
**Texas [1]**  2/17
**than [19]**  5/14 9/17 39/21 41/6 49/11 51/20
  84/14 97/16 107/18 107/20 114/24 120/19
  135/23 135/25 144/2 145/10 145/23 145/24
  146/2
**thank [11]**  5/15 38/21 39/11 74/13 101/17
  122/6 131/20 138/4 140/25 141/2 147/13
**Thanks [1]**  112/21
**that [542]**
**that's [90]**  5/20 6/14 8/25 9/20 10/14 11/2
  13/11 13/12 13/24 14/3 16/16 16/17 16/22
  20/21 23/18 25/11 27/20 30/23 31/15 39/2
  39/21 41/17 49/15 49/17 52/17 53/17 55/18
  56/22 57/6 57/12 59/11 60/4 61/4 62/5 65/21
  69/24 71/18 71/24 73/22 73/22 73/24 74/18
  75/4 75/11 76/22 77/18 78/6 78/10 78/13
  78/19 78/25 79/21 80/8 81/11 81/13 82/18
  82/19 86/5 86/25 89/17 89/19 90/2 92/2 92/3
  93/3 98/10 98/23 99/2 99/13 99/16 103/23
  106/17 107/2 108/5 110/20 113/18 114/21
  116/21 118/5 118/12 121/15 127/25 133/9
  136/7 137/8 139/8 142/7 147/4 147/8 148/19
**their [37]**  11/25 27/4 37/9 46/16 48/13 59/16
  59/25 63/22 66/15 66/18 71/19 77/6 78/19
  82/20 83/13 83/13 88/9 91/13 91/17 96/8
  100/15 128/16 128/17 128/17 128/18 130/6
  138/10 138/10 138/11 139/8 139/14 139/15 140/8
  140/15 140/16 144/14 144/17 146/12
**them [61]**  11/19 11/21 18/15 18/17 19/6 20/12
  21/6 21/7 22/23 23/22 31/4 41/11 41/12 42/11
  42/16 46/19 47/2 47/18 47/18 47/22 48/7 48/7
  48/18 48/23 48/25 49/23 50/5 50/17 54/10
  54/12 58/22 59/6 59/16 61/16 62/20 63/11
  66/16 71/17 78/3 79/20 86/11 86/17 88/25
  95/21 95/24 97/16 97/19 104/15 111/12 111/14
  117/10 117/12 117/16 118/20 125/8 127/4
  136/16 136/20 137/4 137/5 137/7
**themselves [2]**  46/21 47/23

**then [54]**  10/7 11/22 13/7 17/5 38/11 40/18
  40/19 41/10 41/20 42/21 43/14 45/10 52/3
  52/18 52/25 53/9 54/12 60/23 61/12 61/17
  64/16 64/19 65/25 71/12 74/24 85/4 85/13
  85/14 86/20 88/17 90/14 95/14 96/22 101/14
  102/21 103/16 105/6 107/14 108/9 109/7
  109/25 110/3 110/15 110/24 110/24 115/5
  123/6 123/11 123/12 125/3 126/7 126/25
  137/18 148/22
**theory [7]**  16/9 16/11 21/19 21/24 22/19 29/17
  37/6
**there [101]**  6/24 7/18 7/21 12/2 12/12 13/14
  14/23 15/8 15/24 19/18 20/6 20/14 21/8 21/24
  22/14 23/4 23/6 23/6 23/9 26/13 28/10 28/10
  28/11 28/21 28/22 28/24 29/2 29/3 32/12
  33/10 35/7 37/16 39/12 40/4 40/17 42/12
  42/12 43/25 44/3 44/3 44/7 46/11 51/8 51/15
  53/20 54/8 55/23 55/24 57/3 59/20 59/25 60/7
  60/18 61/7 63/8 63/17 66/2 66/12 68/12 68/16
  73/9 74/14 75/17 79/17 79/18 82/7 86/22
  87/10 87/11 89/21 92/13 94/2 96/21 97/16
  97/23 104/4 104/6 104/12 110/6 110/7 112/4
  112/8 113/11 114/19 114/22 114/22 119/3
  120/23 121/22 122/20 123/6 124/12 126/14
  131/11 131/13 132/8 142/15 143/9 143/11
  142/12 145/17
**therefore [4]**  12/19 18/9 44/20 139/10
**these [52]**  7/25 9/23 19/4 20/5 21/11 21/13
  23/2 23/3 23/18 23/19 24/4 24/10 25/22 26/9
  27/17 33/7 40/2 41/8 41/24 44/19 46/9 46/20
  50/9 51/9 54/13 56/13 58/22 62/8 65/8 70/16
  72/15 72/25 74/7 74/14 79/5 79/14 81/12
  85/22 88/8 88/15 89/15 89/21 90/5 92/14
  93/21 97/10 116/17 116/18 128/21 140/2
  141/14 144/24
**thick [1]**  52/21
**thin [1]**  81/13
**thing [19]**  9/21 9/22 15/3 25/14 29/25 30/17
  38/12 41/10 67/21 71/10 84/12 97/13 98/23
  119/22 125/5 125/23 140/12 142/3 142/7
**things [27]**  7/3 7/7 12/22 14/5 14/8 18/24
  20/5 24/23 34/11 34/14 60/2 62/9 79/12 80/9
  84/11 92/25 97/17 104/2 104/23 104/25 111/5
  111/20 112/6 112/8 116/10 116/20 146/11
**think [41]**  5/23 8/24 21/11 21/16 21/19 25/11
  26/7 27/11 27/15 30/12 32/4 36/22 38/17 41/6
  42/8 44/6 51/6 53/20 56/18 58/8 63/10 85/20
  88/22 91/22 92/3 93/17 93/20 96/16 99/7
  99/20 100/21 104/14 112/8 114/11 115/14
  117/13 126/3 136/7 136/16 136/19 143/25
**thinking [3]**  37/11 37/11 137/15
**thinks [2]**  72/15 79/15
**third [1]**  36/3
**this [330]**
**THOMAS [1]**  2/9
**thorough [1]**  119/24
**those [58]**  9/20 11/20 12/25 14/7 16/19 18/22
  18/23 18/24 23/7 25/19 33/18 38/7 41/10
  49/14 51/12 51/13 52/5 57/21 66/7 81/8 81/10
  85/23 85/25 86/3 86/8 88/17 96/3 104/9
  104/19 106/7 111/23 112/2 112/2 115/10 119/7
  119/12 128/5 128/8 128/9 128/9 128/12 128/13
  130/24 131/2 131/3 131/4 131/5 131/7 132/11
  134/23 136/15 139/23 140/9 143/17 143/23
  143/24 146/13
**though [3]**  85/18 93/20 138/14
**thought [3]**  5/7 39/24 122/18
**thousand [6]**  23/4 43/2 43/12 44/3 53/7 65/14
**thousands [6]**  15/4 15/4 32/8 92/6 119/6 119/9
**three [10]**  14/25 34/18 34/19 47/11 52/25
  102/8 119/3 126/14 127/8 129/11
**three million [2]**  14/25 119/3
**three-day [1]**  102/8

**T**

**through [68]**   6/15 6/16 9/13 9/14 11/19 15/10
15/16 16/13 16/18 19/11 19/17 20/2 20/6 21/7
21/16 23/12 23/13 23/22 41/12 41/13 42/10
42/11 47/5 47/11 47/22 48/4 49/4 50/16 52/6
53/5 53/18 53/23 60/17 62/14 64/10 65/8
65/15 66/3 72/4 72/5 72/7 72/8 72/11 77/3
78/14 78/16 84/19 84/22 85/3 85/7 86/9 86/14
88/11 106/19 107/25 107/25 120/19 122/13
123/16 123/21 124/23 125/2 141/12 141/23
142/16 144/2 146/6 146/25
**thrown [2]**   46/12 55/22
**Thursday [2]**   78/8 80/13
**Thus [1]**   95/23
**tie [1]**   20/19
**tied [1]**   8/9
**time [41]**   6/21 13/20 13/21 16/25 19/13 21/12
22/20 33/8 39/17 42/24 43/18 43/19 45/4
45/12 47/19 52/17 67/17 68/7 91/21 93/13
94/13 99/4 99/23 100/22 101/8 104/6 116/3
120/4 122/16 124/24 127/9 127/10 129/15
135/4 137/17 142/11 144/5 145/16 146/10
146/14 148/14
**times [7]**   16/7 26/15 45/13 93/2 112/16 120/16
123/23
**timing [1]**   123/8
**title [2]**   75/12 116/6
**tobacco [5]**   104/24 105/3 105/8 105/22 116/9
**today [15]**   5/9 26/21 26/25 103/20 106/7
108/17 108/19 108/23 110/15 110/15 111/10
121/11 123/24 127/7 129/19
**told [24]**   14/24 15/2 19/6 22/8 39/16 41/17
43/7 48/5 48/12 48/13 63/2 66/16 69/19 91/14
94/19 114/3 116/13 117/23 120/11 121/17
124/5 126/8 135/18 146/12
**Tom.Kline [1]**   2/10
**too [5]**   30/15 47/12 120/24 127/16 134/10
**took [8]**   40/21 59/24 83/10 105/21 106/13
107/20 107/21 127/16
**top [2]**   63/16 80/2
**toward [1]**   77/19
**traditional [1]**   133/21
**trained [1]**   108/15
**training [5]**   108/12 108/24 109/4 113/21
137/15
**transcript [3]**   70/6 149/7 149/14
**transcripts [9]**   28/20 69/12 91/5 91/10 92/10
92/12 92/19 93/21 97/10
**transient [1]**   68/19
**transition [1]**   36/15
**translates [1]**   119/19
**translucent [1]**   36/8
**transmission [2]**   93/21 93/25
**transmit [1]**   92/9
**transparency [1]**   29/12
**transparent [1]**   36/7
**transpired [1]**   90/21
**treat [1]**   134/10
**treaties [1]**   83/3
**treating [5]**   22/10 22/11 47/8 135/16 136/3
**treatise [1]**   82/25
**treats [2]**   134/8 137/12
**trial [28]**   1/3 28/9 29/4 29/16 39/22 43/10
45/5 50/22 51/2 51/3 52/16 53/6 57/24 60/20
69/19 69/20 91/25 96/25 97/7 107/24 124/4
124/21 125/25 136/9 136/11 136/18 136/21
149/6
**trials [17]**   123/19 124/11 136/10 136/14
136/15 136/21 136/25 137/6 137/16 137/20
143/13 143/17 143/19 143/19 143/21 143/23
143/24
**tried [4]**   16/4 16/5 45/8 119/25

**tries [1]**   12/11
**true [7]**   14/8 30/24 31/15 56/11 96/6 119/22
135/23
**truly [1]**   143/8
**trump [1]**   98/2
**trust [1]**   11/6
**try [7]**   11/15 31/25 40/13 41/17 46/25 106/19
118/3
**trying [9]**   19/12 28/9 29/4 30/12 44/4 47/2
55/3 55/17 84/14
**Tuesday [1]**   93/10
**tune [1]**   94/12
**turn [2]**   52/23 120/3
**twice [1]**   125/11
**two [22]**   5/16 5/22 6/24 20/14 21/16 25/8
25/10 26/2 34/6 35/21 35/22 37/9 37/18 39/6
63/9 86/22 87/11 120/12 125/8 141/9 146/13
148/9
**type [2]**   57/25 99/9
**types [2]**   10/7 47/21

**U**

**U.S [1]**   75/25
**UCSF [1]**   136/13
**ultimate [5]**   13/12 13/23 16/14 17/16 73/24
**ultimately [12]**   17/4 17/6 17/12 21/12 27/9
36/23 47/25 82/2 88/22 99/2 99/16 105/23
**unable [1]**   22/11
**unavailability [1]**   61/5
**unavailable [1]**   61/12
**under [14]**   8/23 28/15 30/25 37/6 38/3 62/3
63/22 71/25 74/23 95/6 99/11 105/18 107/24
149/15
**underlies [1]**   71/16
**underneath [1]**   76/18
**underpinnings [1]**   106/20
**understand [33]**   9/23 9/24 16/9 16/11 21/19
21/22 22/18 27/7 29/17 30/11 47/10 47/12
48/22 65/3 65/15 68/3 69/4 74/11 77/18 79/6
79/8 81/21 89/10 89/12 92/7 98/8 99/22
111/11 114/20 114/24 124/23 133/4 139/5
**understanding [3]**   36/17 112/9 113/2
**understands [1]**   89/21
**understood [3]**   73/9 92/20 94/5
**United [6]**   102/12 102/14 103/4 103/11 103/13
110/12
**universe [1]**   120/13
**University [10]**   17/13 108/7 109/19 110/4
110/10 110/21 110/24 111/4 115/11 115/17
**unkind [1]**   15/17
**UNLESS [1]**   149/15
**untethered [2]**   8/9 74/8
**until [3]**   101/13 107/17 148/23
**up [39]**   12/24 13/6 14/22 24/20 25/5 26/14
28/11 32/14 33/9 35/7 39/20 41/15 46/4 46/11
51/7 51/17 67/3 68/14 68/23 69/13 79/17
82/14 95/4 96/12 98/2 98/13 100/13 104/18
104/18 107/10 107/12 116/21 122/3 123/18
140/15 140/16 144/24 145/18 145/21
**upon [2]**   16/14 89/25
**use [21]**   7/16 18/18 38/18 43/19 44/12 48/6
48/7 49/17 50/20 51/23 52/5 64/21 65/18
66/24 71/7 111/17 133/23 143/20 144/4 144/11
145/13
**used [13]**   9/16 25/19 34/12 44/16 46/22 50/17
74/3 74/19 88/10 88/13 112/3 132/3 137/7
**using [5]**   7/12 19/6 44/15 74/7 78/24
**usual [1]**   43/17
**usually [1]**   137/9

**V**

**vague [1]**   117/19

## V

**various [3]**   59/13 90/6 95/19
**vast [2]**   143/11 143/11
**venue [1]**   63/25
**verbatim [4]**   91/5 91/9 92/9 92/11
**versus [1]**   55/23
**very [20]**   10/20 11/15 15/12 15/17 15/17 26/12
43/2 51/6 63/16 73/18 75/24 88/14 90/11
101/17 104/5 104/8 121/11 124/17 126/7
130/16
**vice [1]**   3/4
**view [5]**   17/3 17/10 34/13 83/14 99/25
**views [1]**   29/12
**Vincent [1]**   87/6
**Vincente [1]**   76/22
**vitae [2]**   107/22 113/10
**voir [3]**   122/19 131/17 131/18
**VOLUME [1]**   1/16
**voluntarily [1]**   6/11
**vulnerable [1]**   43/3

## W

**wait [4]**   64/18 66/21 83/24 86/20
**waiting [5]**   5/6 45/5 51/12 51/21 86/15
**walk [1]**   23/12
**walked [1]**   11/14
**Walnut [1]**   2/5
**want [69]**   9/12 19/25 23/18 24/7 32/18 33/7
34/15 34/16 36/7 39/3 42/9 42/16 44/23 45/14
45/24 47/10 47/16 48/6 49/10 50/18 51/22
51/23 52/5 53/4 54/3 58/23 60/24 62/8 62/11
64/8 64/20 69/20 71/6 82/17 83/17 83/18 84/9
84/21 85/2 86/10 86/16 87/11 89/12 90/7
95/11 96/13 97/15 111/10 113/15 114/18
115/22 120/10 120/19 121/8 122/13 123/14
123/16 125/2 125/3 125/20 127/2 129/7 129/25
131/12 133/17 134/22 140/4 146/18 148/8
**wanted [4]**   24/18 25/23 69/18 127/18
**wants [3]**   38/10 49/17 124/13
**war [1]**   91/13
**warn [23]**   10/19 10/22 13/3 13/10 16/6 28/14
28/17 55/20 57/15 82/21 84/14 84/14 100/5
121/19 122/10 122/11 122/11 122/11 122/12
126/9 126/20 146/23 147/11
**warned [3]**   39/16 56/11 83/9
**warning [7]**   6/12 8/12 73/19 78/24 98/25 100/6
130/19
**warnings [8]**   8/14 14/13 14/14 130/13 131/8
138/10 138/18 139/14
**was [136]**   11/10 11/11 14/24 15/2 16/6 19/6
19/23 21/25 21/25 22/3 22/5 22/11 22/14
24/25 31/13 31/14 34/9 34/10 34/13 37/10
37/11 40/2 40/8 44/4 53/12 54/24 55/23 56/11
56/21 56/24 57/3 59/15 59/17 59/20 59/23
59/24 60/7 60/11 61/16 61/21 61/24 62/14
62/15 63/15 63/20 63/20 63/21 64/20 64/25
65/10 65/10 66/13 66/22 70/3 71/7 71/9 71/25
72/15 75/9 76/9 80/6 80/23 87/8 88/5 89/2
89/23 89/25 89/25 91/16 91/23 92/14 95/7
95/10 95/14 98/10 102/12 102/14 103/17 104/4
104/7 104/10 104/21 104/23 104/25 105/5
105/17 105/18 107/18 108/3 108/12 108/15
109/11 109/22 110/7 110/7 112/4 112/10 113/7
114/17 115/12 116/23 116/25 117/14 118/6
118/21 121/17 122/4 124/5 126/8 126/13
126/14 126/23 127/17 128/24 129/5 129/13
129/13 129/15 129/17 142/3 142/4 142/15
144/4 144/7 144/8 144/8 144/10 144/12 145/3
145/12 145/14 145/15 145/17 145/19 145/23
146/12
**wasn't [5]**   11/10 41/16 45/9 49/7 79/14
**watch [1]**   137/4

**way [66]**   10/22 11/20 12/23 15/13 20/20 21/3
34/20 35/2 36/14 36/21 36/24 38/12 39/14
40/7 40/8 40/13 40/19 40/19 41/17 43/17
44/13 44/21 46/25 47/15 47/23 49/21 50/16
50/18 50/23 52/15 56/9 58/12 61/8 61/10 62/9
62/13 62/19 66/16 67/16 69/2 71/12 74/3 80/5
83/11 91/18 96/8 103/10 106/3 107/7 107/10
107/23 118/19 119/22 125/16 129/5 142/9
142/11 145/7 148/15
**wealth [1]**   73/3
**wear [1]**   148/11
**website [1]**   96/8
**WEDNESDAY [2]**   1/15 64/24
**week [4]**   71/18 93/14 96/17 97/11
**weekend [1]**   41/15
**weeks [3]**   26/2 49/19 120/12 120/13 124/6
**weeks' [1]**   47/11
**WEIL [5]**   3/3 94/20 96/6 96/11 96/11
**weil.com [2]**   3/6 3/7
**well [36]**   9/3 14/5 16/16 16/20 17/10 17/20
18/2 18/3 29/13 34/24 39/24 41/25 66/10
70/23 76/5 80/25 82/6 92/4 92/13 93/4 104/5
105/5 105/17 107/18 112/14 113/4 114/13
117/17 128/17 128/18 128/18 130/19 131/10
137/22 144/19 147/25
**well-known [1]**   29/13
**went [12]**   17/13 27/3 35/25 106/13 106/14
106/22 106/23 107/13 107/19 108/9 110/3
124/23
**were [53]**   9/9 12/22 14/6 14/25 15/2 22/9
24/18 28/12 28/19 33/13 38/6 39/19 41/25
53/23 67/2 76/4 76/14 77/5 78/2 78/4 81/9
102/18 103/3 103/14 103/15 104/6 104/12
107/16 109/9 109/25 110/2 110/9 110/19
110/20 112/4 116/2 117/16 119/4 119/22 120/9
120/11 122/14 122/18 124/6 125/8 125/16
126/14 129/16 139/3 142/7 143/3 143/12
143/21
**Weston [1]**   107/3
**what [164]**
**what's [15]**   12/13 16/24 17/9 17/10 18/3 23/9
43/22 47/19 79/2 82/9 100/6 103/22 116/6
122/5 128/6
**whatever [4]**   28/13 70/3 82/16 101/3
**wheelhouse [1]**   133/21
**when [30]**   5/19 33/13 41/3 41/20 42/8 42/18
46/12 50/21 52/17 53/6 68/25 78/3 81/7 82/18
85/11 95/10 99/4 102/21 104/4 111/19 114/6
114/7 129/5 129/13 135/24 136/24 143/19
145/12 145/19 146/12
**where [18]**   6/5 17/11 18/21 19/21 29/2 33/11
36/6 81/9 95/25 106/23 107/2 107/11 107/14
118/14 126/19 129/8 131/13 136/25
**whether [22]**   13/9 13/25 16/17 19/22 19/24
27/3 37/13 37/22 45/25 53/24 54/4 55/22 57/4
57/15 70/6 72/24 76/3 105/18 118/9 118/11
135/6 146/22
**which [49]**   12/5 12/5 12/22 12/23 13/5 14/8
15/4 15/16 16/2 16/14 17/17 31/11 31/14 34/5
36/16 40/8 41/16 42/25 43/7 43/19 46/21
47/13 53/9 55/4 58/23 63/17 75/20 81/2 88/3
91/18 91/23 101/7 102/16 103/19 107/23
111/18 115/4 119/19 129/19 130/21 130/22
142/15 142/24 144/2 146/21 147/19 147/19
147/22 147/25
**while [7]**   12/21 104/8 104/21 105/5 112/4
116/2 120/7
**who [50]**   24/25 25/6 25/7 32/16 33/22 33/23
33/24 34/16 35/14 38/16 41/5 49/6 53/5 59/23
59/24 62/14 62/15 64/2 66/17 66/17 72/7
81/15 83/12 84/13 91/20 91/25 92/22 92/23
92/24 93/6 93/12 93/13 93/17 94/3 94/7 95/5

**W**

who... **[14]**  95/14 95/25 96/4 96/19 97/9
111/13 116/6 119/14 122/14 126/13 132/8
132/8 136/16 147/11

whole **[7]**  34/17 39/10 39/14 41/15 81/5 100/4
100/9

whom **[1]**  52/18

whose **[2]**  24/25 48/15

why **[13]**  5/20 10/6 21/2 44/10 50/6 51/18
53/17 62/17 64/20 79/21 113/5 113/18 131/18

wide **[1]**  112/9

wild **[1]**  28/24

will **[114]**  6/18 11/22 11/23 11/25 12/3 12/24
13/21 13/22 16/13 16/25 17/6 19/11 21/11
21/15 23/7 25/9 25/16 27/9 31/20 33/7 36/2
38/22 38/24 40/16 41/4 41/7 41/21 44/9 45/2
45/3 45/12 45/16 45/17 47/5 47/17 47/19
47/24 50/5 51/17 52/19 53/5 53/8 58/4 58/14
58/20 60/5 61/3 63/23 63/23 64/16 64/18
64/19 67/6 68/16 69/11 69/12 77/4 78/14
79/17 79/22 82/16 82/22 83/6 85/10 85/12
85/14 86/18 88/21 90/13 90/14 93/5 95/4
96/22 97/19 98/13 99/3 99/3 101/7 101/8
106/6 112/23 115/22 120/8 122/7 122/25 123/6
123/7 123/13 124/12 126/7 126/25 130/11
131/10 131/19 133/6 134/21 135/16 137/22
137/23 139/19 140/2 140/3 140/10 141/14
144/2 144/3 144/24 145/18 145/21 147/20
148/6 148/10 148/14 148/20

willing **[1]**  47/7

wish **[4]**  44/11 50/20 54/19 62/25

within **[6]**  32/14 89/24 92/16 93/4 93/18
133/20

without **[7]**  38/14 56/16 58/16 60/10 64/10
74/7 76/8

witness **[40]**  4/3 19/11 19/18 21/23 23/23 29/2
33/15 34/23 45/10 46/6 46/16 49/4 49/6 62/22
63/22 64/11 65/19 66/3 66/16 67/11 69/24
70/4 78/16 82/2 82/5 83/17 83/18 90/2 100/18
101/7 101/12 101/15 113/17 123/9 127/22
130/2 139/11 140/6 140/19 140/24

witness' **[2]**  18/7 140/11

witnesses **[17]**  6/16 7/16 9/15 23/17 25/12
38/7 38/25 39/9 44/22 46/22 47/22 50/16
66/17 66/18 140/5 140/13 140/13

won't **[1]**  58/3

word **[4]**  42/8 43/13 114/2 137/7

words **[8]**  20/4 25/19 34/12 79/17 89/11 136/17
136/23 140/17

work **[21]**  48/3 60/25 62/2 104/5 111/25 115/4
115/8 115/19 116/13 118/13 118/22 118/22
119/24 120/3 121/7 121/11 121/13 125/3 132/3
132/8 142/8

worked **[3]**  95/20 104/8 132/19

working **[10]**  35/12 41/7 92/22 92/23 93/14
93/18 94/6 116/3 116/4 116/22

works **[2]**  35/16 118/5

world **[1]**  84/21

worry **[2]**  57/18 85/8

worse **[2]**  145/23 145/24

worth **[1]**  47/11

worthy **[1]**  98/4

would **[111]**  5/7 5/11 5/21 5/24 6/8 7/4 8/17
8/20 22/24 24/21 24/22 25/25 26/2 26/3 26/4
26/6 26/8 30/9 30/14 34/21 36/23 36/25 37/20
38/3 38/6 38/8 38/12 39/19 39/22 40/10 40/13
40/14 40/15 40/18 40/20 42/5 42/9 42/16
43/16 43/23 44/19 46/2 50/14 51/24 52/9
52/12 52/23 53/3 54/19 59/15 60/3 60/5 60/6
60/9 60/13 60/16 60/24 62/7 66/2 66/14 66/21
67/2 67/15 67/21 69/2 69/4 79/12 80/25 82/2
86/3 88/7 88/10 88/14 90/24 91/14 91/19

91/24 95/15 96/16 96/24 98/2 99/8 99/9 99/11
119/22 119/24 121/7 124/7 124/7 130/13
130/24 131/2 131/3 131/4 131/5 133/15 134/17
136/16 136/19 138/17 138/24 140/19 145/11
146/3 148/5

wouldn't **[1]**  100/10

write **[3]**  16/4 79/14 79/20

writing **[3]**  33/14 84/13 115/24

written **[8]**  34/6 65/3 97/17 112/10 112/12
113/8 133/22 134/14

wrong **[1]**  8/17

wrote **[3]**  50/4 89/17 112/16

**Y**

Yale **[4]**  110/3 110/10 110/21 136/12

yeah **[4]**  114/11 120/4 137/11 142/21

year **[6]**  102/18 103/15 123/22 123/23 125/6
142/20

years **[26]**  30/3 41/7 73/4 102/12 103/3 103/7
103/9 104/17 105/21 107/17 107/18 107/21
107/21 109/12 109/14 116/5 121/12 121/15
123/18 124/3 124/20 127/9 130/11 132/20
133/16 142/10

yellow **[1]**  148/11

yeoman's **[1]**  42/2

yes **[105]**  5/10 5/15 12/15 12/16 13/17 27/25
35/8 35/18 52/23 71/9 75/9 76/24 78/3 80/19
84/8 87/3 90/13 90/18 91/11 92/13 93/7 94/16
95/13 102/7 102/23 103/2 103/8 104/14 107/9
108/8 108/12 109/8 109/17 110/11 110/14
110/17 110/23 111/2 112/15 113/14 114/14
115/9 115/12 115/16 115/20 117/3 117/6 117/9
119/8 119/11 119/13 119/16 120/18 121/6
121/16 121/24 123/21 124/4 124/19 124/25
125/7 125/12 125/15 125/19 125/24 126/6
126/23 127/12 128/20 128/24 128/25 129/4
129/22 130/3 130/11 131/16 132/18 132/22
132/25 134/5 134/17 135/12 136/6 139/9
141/11 141/18 142/2 142/10 142/14 142/25
143/16 143/18 143/24 144/9 144/16 144/20
144/25 145/6 145/17 146/5 146/9 147/17
147/21 148/3

yesterday **[6]**  5/5 14/9 14/12 40/9 101/3 146/4

yet **[4]**  13/18 33/18 75/17 123/10

yo **[1]**  73/4

York **[2]**  107/12 112/16

you **[441]**

young **[3]**  104/24 105/25 126/10

yours **[1]**  46/18

yourself **[2]**  64/15 90/25

yourselves **[1]**  148/13