UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: XARELTO (RIVAROXABAN) | * | MDL 2592 |
| PRODUCTS LIABILITY LITIGATION | * | |
| | * | SECTION L |
| THIS DOCUMENT RELATES TO: | * | |
| | * | JUDGE ELDON E. FALLON |
| *Joseph J. Boudreaux, Jr., et al. v. Janssen et al.* | * | |
| *Case No. 2:14-cv-02720* | * | MAG. JUDGE NORTH |
| | * | |
| *Joseph Orr, Jr., et al. v. Janssen et al.* | * | |
| *Case No. 2:15-cv-03708* | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

_____

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE CERTAIN OPINIONS OF SUZANNE PARISIAN, MD, UNDER FEDERAL RULE OF EVIDENCE 702 [REC. DOC. 5112]**
_____

# FILED UNDER SEAL

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKROUND .................................................................................................. 2

    I.      Dr. Parisian Is Well-Qualified To Opine On Regulatory Matters ..................................... 2

    II.     Dr. Parisian's Opinions Will Assist The Jury On Matters Pertaining To Xarelto ............. 6

ARGUMENT ....................................................................................................................... 8

    I.      The Legal Standard Governing Expert Testimony Favors Admissibility......................... 8

    II.     Dr. Parisian May Testify To Her Analysis Of Xarelto's Regulatory History And The
           Relevant Documents That Support Her Opinions................................................................ 8

    III.    Dr. Parisian's Use Of Corporate Documents Is Proper And She Does Not Intend To
           Testify Regarding Motive, Intent, Or State Of Mind......................................................... 13

           A.     Dr. Parisian's Use of Corporate Documents Is Proper ........................................ 13

           B.     Dr. Parisian Does Not Speculate About State of Mind, Intent or Motive............ 16

    IV.    Dr. Parisian May Testify To Breach Of The Standard Of Care Without Invading The
           Province Of The Court......................................................................................................... 18

    V.     Dr. Parisian's Opinions That Defendants Should Have Submitted, But Failed To Submit,
           Information To The FDA, Are Proper And Are Not Preempted Under *Buckman*............ 20

    VI.    Dr. Parisian Is Not Rendering Medical Causation Or Other Scientific Opinions And She
           May Appropriately Rely On Plaintiffs' Other Experts In Rendering Her Regulatory
           Opinions In This Case......................................................................................................... 21

           A.     Dr. Parisian is not Rendering Medical Opinions in this Case.............................. 21

           B.     Dr. Parisian is Qualified to Render Regulatory Opinions About the Adequacy of
                Xarelto's Labeling ............................................................................................... 22

           C.     Dr. Parisian is Qualified to Render Opinions about Defendants' Monitoring and
                Clinical Trial Practices, As Well As Defendants' Failures to Adequately Identify
                and/or Report Adverse Events ............................................................................. 23

    VII.   Dr. Parisian's Use Of Foreign Regulatory Information Is Proper .................................... 24

    VIII.  Dr. Parisian's Opinion That Information From Laboratory Tests Is Useful In Identifying
           Patients At An Increased Risk Of Bleeding From Xarelto Is Proper............................... 26

    IX.    Plaintiffs Do Not Intend To Offer Dr. Parisian To Opine On Purported Safer Alternative
           Designs To Xarelto ............................................................................................................ 28

    X.     Dr. Parisian's Opinions Should Not Be Excluded As Unfairly Prejudicial, Confusing And
           Misleading To The Jury ..................................................................................................... 28

CONCLUSION.................................................................................................................... 29

## TABLE OF AUTHORITIES

### Cases

*Baldonado v. Wyeth*,
    No. 04-c-4312, 2012 WL 1802066 (N.D. Ill., May 17, 2012).........................26

*Barnes v. Orthofix Int'l NV*,
    2:11-cv-00402-JCC, 2012 WL 1931224 (W.D. Wash., May 23, 2012).........................22

*Bartoli v. Novartis Pharma.*,
    3:13-cv-0724, 2014 WL 1515870 (M.D. Pa., Apr. 17, 2014) .....................5, 23

*Block v. Woo Young Med. Co.*,
    937 F. Supp. 2d 1028 (D. Minn. 2013).........................5

*Bryant v. Wyeth*,
    2:04-cv-01706-TSZ, 2012 WL 12845655 (W.D. Wa., Aug. 22, 2012).........................22

*Buckman v. Plaintiffs Legal Comm.*,
    531 U.S. 341 (2001).........................21

*Cantrell v. GAF Corp.*,
    999 F.2d 1007 (6th Cir.1993)") .........................26

*Chiles v. Novartis Pharm. Corp.*,
    923 F.Supp.2d 1330 (M.D. Fla. 2013).........................29

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993).........................1, 11

*Davids v. Novartis Pharms. Corp.*,
    857 F. Supp. 2d 267 (E.D. N.Y. 2012) .........................15

*DePaepe v. Gen. Motors Corp.*,
    141 F.3d 715 (7th Cir. 1998) .........................17

*Deutsch v. Novartis Pharmaceuticals Corp.*,
    768 F. Supp. 2d 420 (E.D.N.Y. 2011) .........................4, 24

*Dickenson v. Cardiac & Thoracic Surgery of E. Tenn.*,
    388 F.3d 976 (6th Cir. 2004) .........................21

*Doe v. Cutter Biological, Inc.*,
    971 F.2d 375 (9th Cir. 1992) .........................21

*Dollar v. Long Mfg. N.C., Inc.*,
    435 U.S. 996 (1978).........................28

*Dollar v. Long Mfg. N.C., Inc.*,
    561 F.2d 613 (5th Cir. 1977) .........................28

*Dopson-Troutt v. Novartis Pharm. Corp.*,
    8:06-CV-1708-T-24EAJ, 2013 WL 1344755 (M.D. Fla., Apr. 2, 2013).........................29

*Earp v. Novartis Pharm. Corp.*,
    5:11-CV-680-D, 2013 WL 4854488 (E.D. N.C., Sept. 11, 2013) .........................6

*Forman v. Novartis Pharm. Corp.*,
    794 F. Supp. 2d 382 (E.D. N.Y. 2011) .........................5, 15

*Fox v. Dannenberg,*
   906 F.2d 1253 (8th Cir. 1990) ...................................................................... 26

*Gen. Elec. Co. v. Joiner,*
   522 U.S. 136 (1997)........................................................................................ 1

*Highland Capital Management, L.P. v. Schneider,*
   379 F. Supp. 2d 461 (S.D. N.Y. 2005).......................................................... 12

*In re Actos,*
   2014 WL 120973 .................................................................................... 19, 20

*In re Baycol Prod. Liab. Litig.,*
   532 F. Supp. 2d 1029 (D. Minn. 2007).................................................... 19, 20

*In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.,*
   MDL No. 1203, 2000 WL 876900 (E.D. Pa., June 20, 2000) ................... 17, 22

*In re Ethicon Inc. Pelvic Repair Sys. Prod. Liab. Litig.,*
   MDL 2327, 2016 WL 4608165 (S.D.W. Va., Sept. 2, 2016) ........................... 5

*In re Flonase Antitrust Litig.,*
   884 F. Supp. 2d 184 (E.D. Pa. 2012) ............................................................ 13

*In re Fosamax Prod. Liab. Litig.,*
   645 F. Supp. 2d 164 (S.D. N.Y. 2009)................................................... passim

*In re Gadolinium-Based Contrast Agents Prod. Liab. Litig.,*
   No. 1:08 GD 50000, 2010 WL 1796334 (N.D. Ohio, May 4, 2010)............... 5, 15, 24, 25

*In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.,*
   MDL No. 05–1708, 2007 WL 1964337 (D. Minn., June 29, 2007) ................... 5

*In re Heparin Prods. Liab. Litig.,*
   MDL No. 1953, 2011 WL 1059660 (N.D. Ohio, March 21, 2011)..................... 5

*In re Medtronic, Inc.,*
   465 F. Supp. 2d 886 (D. Minn. 2006) ............................................................ 20

*In re Mirena IUD Products Liab. Litig.,*
   169 F.Supp.3d 396 (S.D. N.Y. 2016)...................................................... passim

*In re Nuvaring Prod. Liab. Litig.,*
   No. 4:08-MD-1964 RWS, 2013 WL 791835 (E.D. Mo., Mar. 4, 2013) .......... 5, 15, 21, 24

*In re Prempro Prods. Liab. Litig.,*
   554 F.Supp.2d 871 (E.D. Ark. 2008)............................................................. 12

*In re Prempro Prods. Liab. Litig.,*
   586 F.3d. 547 (8th Cir. 2009) ................................................................ 12, 13

*In re Rezulin Products Liab. Litig.,*
   309 F. Supp. 2d 531 (S.D. N.Y. 2004)........................................................... 12

*In re Trasylol Prods. Liab. Litig.,*
   709 F. Supp. 2d 1323 (S.D. Fla. 2010) .................................................... 12, 13

*In re Tylenol (Acetaminophen) Mktg., Sales Prac. & Prod. Liab. Litig.,*
   MDL No. 2436, 2016 WL 4538621 (E.D. Pa., Aug. 31, 2016)........................ 10

*In re Tylenol,*
   2016 WL 1569719 (E.D. Pa., April 19, 2016) .......................................... 17, 25

*In re Tylenol,*
2016 WL 4039271 ........................................................................................... 24

*In re Tylenol,*
2016 WL 4039286 (E.D. Pa., July 28, 2016)........................................................ 20

*In re Tylenol,*
MDL No. 2436, 2016 WL 807377 (E.D. Pa., Mar. 2, 2016).......................................... 10

*In re Vioxx Prod. Liab. Litig.,*
No. MDL 1657, 2006 WL 6625144, at *1 (E.D. La., July 31, 2006).............................. 21

*In re Vioxx Products Liab. Litig.,*
401 F.Supp.2d 565 (E.D. La. 2005)............................................................... passim

*In re Welding Fume Prod. Liab. Litig.,*
MDL 1535, 2005 WL 1868046 (N.D. Ohio 2005)...................................................... 10, 11

*In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Products Liab. Litig.,*
3:09-MD-02100-DRH, 2011 WL 6302287 (S.D. Ill., Dec. 16, 2011)...................... passim

*In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices and Prods. Liab. Litig.,*
No. 3:09–md–02100–DRH–PMF, 2011 WL 6733952 (S.D. Ill., Dec. 16, 2011) ............. 5

*Jenkins v. Novartis Pharm. Corp.,*
3:11-CV-342, 2013 WL 1760762 (E.D. Tenn., Apr. 24, 2013) ...................................... 15

*Jenkins v. Novartis Pharm. Corp.,*
3:11-CV-342, 2013 WL 1760762 (E.D. Tenn., Dec.13, 2012) ...................................... 15

*Johnson v. Samsung Electronics America*, Inc.,
277 F.R.D. 161 (E.D. La. 2011).................................................................... 21

*Johnson v. Wyeth LLC,*
Case No. 10–02690, 2012 WL 1204081 (D. Ariz., Apr. 11, 2012).................................. 11

*Kruszka v. Novartis Pharms. Corp.,*
28 F. Supp. 3d 920 (D. Minn. 2014)................................................................... 17

*Kumho Tire Co. v. Carmichael,*
526 U.S. 137 (1999)................................................................................... 1

*Lemons v. Novartis Pharms. Corp,*
849 F. Supp. 2d 608 (W.D. N.C. 2012) ........................................................... 5, 23

*LinkCo, Inc. v. Fujitsu Ltd.,*
Case No. 00 Civ. 7242, 2002 WL 1585551 (S.D. N.Y., July 16, 2002).......................... 12

*Linsley v. C.R. Bard, Inc. et al.,*
No. CIV.A.98-2007, 2000 WL 343358 (E.D. La., March 30, 2000)................................ 5

*Lyman v. Pfizer, Inc.,*
No. 2:09–cv–262, 2012 WL 2971550 (D. Vt., July 20, 2012) ...................................... 5

*Mahaney ex rel. estate of Kyle v. Novartis Pharm. Corp.,*
835 F.Supp.2d 299 (W.D. Ky. 2011)................................................................ 19, 20

*Media Sport & Arts s.r.l. v. Kinney Shoe Corp.,*
Case No. 95 CIV. 3901,1999 WL 946354 (S.D.N.Y., Oct.19, 1999) ............................ 12

*Monsanto Co. v. David,*
516 F.3d 1009 (5th Cir. 2008) ..................................................................... 21

iv

*Moore v. Ashland,*
  126 F.3d 679 (5th Cir. 1997) ....................................................................... 28
*Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. Smith Tank & Steel, Inc.,*
  Civil Action No. 3:11–CV–00830, 2014 WL 5794952 (M.D. La., Nov. 6, 2014).......... 21
*Reece v. Astrazeneca Pharmaceuticals, LP,*
  500 F Supp. 2d 736 (S.D. Ohio 2007) ............................................................. 5
*Reid v. Albemarle Corp.,* ....................................................................................
  207 F. Supp. 2d 499 (M.D. La. 2001)............................................................. 26
*Rowland v. Novartis Pharms. Corp.,*
  9 F. Supp. 3d 553 (W.D. Pa. 2014)........................................................... 5, 23
*Sanchez v. Boston Scientific Corp.*
  Civil Action No. 2:12–cv–05762, 2014 WL 4851989 (S.D. W.Va., Sept. 29, 2014) ...... 13
*Schedin v. Ortho-McNeil-Janssen Pharms., Inc.,*
  700 F.3d 1161 (8th Cir. 2012) .................................................................... 20
*Schedin v. Ortho-McNeil-Janssen Pharms., Inc.,*
  808 F. Supp. 2d 1125 (D. Minn. 2011)......................................................... 20
*Simon v. Wyeth Pharm., Inc.,*
  989 A.2d 356 2009 WL 5154031 (Pa. Super. 2009) ........................................... 5
*Southern Cement Co., Division of Martin–Marietta Corp. v. Sproul,*
  378 F.2d 48 (5th Cir. 1967) ...................................................................... 26
*Stambolian v. Novartis Pharm. Corp.,*
  CV 12-04378 BRO FMOX, 2013 WL 6345566 (C.D. Cal., Dec. 6, 2013) ................ 6, 23
*Taylor v. Evans,*
  Case No. 94-8425, 1997 WL 154010 (S.D. N.Y. 1997)...................................... 12
*Taylor v. Novartis Pharm. Corp.,*
  06-61337-CIV, 2013 WL 5118945 (S.D. Fla., Apr. 22, 2013)................................ 29
*United States v. Garcia,*
  625 F.2d 162 (7th Cir. 1980) ...................................................................... 10
*United States v. Moore,*
  997 F.2d 55 (5th Cir.1993) ........................................................................ 10
*United States v. Pace,*
  10 F.3d 1106, 1116 (5th Cir. 1993) .............................................................. 28
*United States v. Pless,*
  982 F.2d 1118 (7th Cir. 1992) .................................................................... 10
*United States v. Viglia,*
  549 F.2d 335 (5th Cir. 1977) ...................................................................... 21
*Walden v. City of Chicago,*
  755 F. Supp. 2d 942 (N.D. Ill. 2010) ............................................................ 10
*Waterhouse v. R.J. Reynolds Tobacco Co.,*
  162 F. App'x 231 (4th Cir. 2006) ................................................................. 10
*Waterhouse v. R.J. Reynolds Tobacco Co.,*
  368 F. Supp. 2d 432 (D. Md. 2005)............................................................... 10

*Wells v. Allergan,*
    Case No. 12-973, 2013 WL 7208221 (W.D. Okla., Feb. 4, 2013) ............................. 17, 19
*Zimmerman v. Novartis Pharmaceuticals Corporation,*
    8:08-cv-2089-RWT, ECF Doc. 180 (D. Md., Sept. 25, 2012)........................................... 15

## **Regulations**

21 CFR § 201.57 ................................................................................................................... 27, 28

## **Rules**

Fed. R. Civ. P. 26 ........................................................................................................................ 9
Fed. R. Evid. 1006 .................................................................................................................... 10
Fed. R. Evid. 403 ...................................................................................................................... 28
Fed. R. Evid. 611 ...................................................................................................................... 10
Fed. R. Evid. 702 ...................................................................................................... 11, 14, 27
Fed. R. Evid. 703 ...................................................................................................................... 21

# TABLE OF EXHIBITS

Exhibit 1    Expert Report and Curriculum Vitae of Suzann Parisian, M.D.

Exhibit 2    Expert Statement and Curriculum Vitae of Dena Hixon, MD

Exhibit 3    *Lea v. Wyeth LLC,* Case No. 1:03-cv-01339-MAC, 2011 U.S. Dist. LEXIS 158668, at *23 n.6 (E.D. Tex. Oct. 6, 2011).

Exhibit 4    Deposition of Suzanne Parisian, MD, December 8-9, 2016

Exhibit 5    *In re Actos Prod. Liab. Litig.*, No. 11 L 010011 (Cook County, Illinois, March 13, 2014)

Exhibit 6    *Beverly Meng v. Novartis Parm. Corp.* MID-L-7670-07-MT, Order (Middlesex County Superior Court, Aug. 8, 2012)

Exhibit 7    *Paugh v. I-Flow Corp.*, 32D02-0802-CT9 (Hendricks, Indiana Superior Ct. Apr. 19, 2012)

Exhibit 8    *In re Levaquin,* 08-1943 JRT, Doc. No. 2277

Exhibit 9    (Rec. No. 201659) FDA *Summary Review* for NDA 202439, Deputy Division Director Decisional Memo, at 9 (Nov. 4, 2011)

The Plaintiffs respectfully submit this response in opposition to *Defendants' Motion In Limine To Exclude Certain Opinions of Dr. Suzanne Parisian, M.D. Under Federal Rule of Evidence 702* [Rec. Doc. 5112].  In accordance with this Court's role as gatekeeper for expert testimony under *Daubert* [1] and its progeny, the Plaintiffs request that the motion be denied.[2]

## INTRODUCTION

Suzanne Parisian, M.D., who formerly served as a Medical Officer at the Food and Drug Administration ("FDA"), is Plaintiffs' expert witness who will address various issues involving regulatory requirements applicable to pharmaceutical manufacturers and drug labeling. Her primary role at trial will be to explain to the jury the responsibilities of a pharmaceutical drug manufacturer within the context of the FDA's regulatory scheme. In particular, she will explain the inner workings of the FDA regulatory system, including the responsibilities of the drug manufacturer both before and after a drug is placed on the market. Finally, Dr. Parisian will provide her opinions regarding the failure of Defendants to act as reasonable pharmaceutical manufacturers by not complying with their responsibilities pursuant to the federal regulations. The subject of pharmaceutical regulatory practice and drug labeling requirements pursuant to the Federal Food, Drug, and Cosmetic Act ("FDCA") requires highly specialized knowledge, and Dr. Parisian is one of the few individuals qualified to offer such opinions.

---

[1] *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 597 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997).

[2] The Plaintiffs incorporate herein the arguments set forth in their *Joint Response in Opposition to the Motion to Exclude Expert Opinions and Testimony Regarding Unapproved Dosing and Monitoring Regimens, and the Motion to Exclude Expert Opinions and Testimony Regarding the Experts' 20-Second PT Cut-Off Guideline in the Orr and Boudreaux Cases* (hereinafter "*Plaintiffs' Joint Response*").  The Plaintiffs incorporates herein the arguments set forth in *Plaintiffs' Opposition to Defendants' Joint Motion for Partial Summary Judgment on the Ground that Federal Law Preempts Plaintiffs' Dosing, Monitoring, And Other Design Related Claims* (hereinafter "*Plaintiffs' Preemption Response*").

Defendants seek to exclude Dr. Parisian from testifying based upon rulings from different courts addressing different reports she prepared in different litigation. Defendants attempt to conflate these prior rulings by distorting their holdings into a virtual prohibition on Dr. Parisian's testimony. As Plaintiffs and Dr. Parisian have no intention to exceed the bounds of permitted testimony of a regulatory expert, which even Defendants must concede is allowed, Defendants' motion should be denied.

## FACTUAL BACKROUND

### I.    Dr. Parisian Is Well-Qualified To Opine On Regulatory Matters.

From 1991 to 1995, Dr. Parisian served as a Commissioned Officer in the United States Public Health Service and achieved the rank of Lieutenant Commander.[3] During that time, she was primarily assigned to the Center for Devices and Radiological Health ("CDRH") at the FDA.[4]

At the same time, she was also assigned clinical responsibilities at the Armed Forces Institute of Pathology's ("AFIP") Office of the Medical Examiner for the Armed Forces[5]. During the same time frame, Dr. Parisian was an FDA Medical Officer in the Office of Health Affairs ("OHA"), a staff office within the CDRH.[6]   In OHA, she provided regulatory support to both FDA's Office of Compliance and Office of Device Evaluation.[7] Her responsibilities at OHA included health hazard and health risk assessment, Safety Alerts, physician and layperson communications, review of adverse event reports and medical literature, as well as the review of product labeling, promotions, advertising, and corporate records to ensure compliance with the

---

[3]*See* Exhibit 1, Parisian Report, para. 2.

[4]*Id.*

[5]*Id.*

[6]Exhibit 1, Parisian Report, para. 3.

[7]*Id.*

Food, Drug and Cosmetic Act ("FDCA").[8] Dr. Parisian's responsibilities further included the review of mandatory and voluntary adverse event reports submitted by health care providers, patients and others.[9] In particular, she presided over 162 health risk assessments convened to advise the FDA on public health risk issues and made recommendations to the FDA regarding the subsequent regulatory actions that should be undertaken by the FDA, healthcare providers, and manufacturers to help protect the public welfare.[10] Her assignments at OHA specifically included identification of safety issues.[11]

Subsequently, from March 1993 to December 1993, Dr. Parisian was a Medical Officer in the Office of Device Evaluation (ODE) in the Division of Reproductive, Abdominal, Ear, Nose, and Throat, and Radiology (DRAERD) of the FDA.[12] In January 1994, Dr. Parisian became one of two Chief Medical Officers in ODE.[13] Her responsibilities included pre-marketing evaluation of new product applications and clinical trials to support safety and effectiveness.[14]

Thereafter, Dr. Parisian conducted extensive research for the reference text she authored entitled *FDA Inside and Out*.[15] As part of the research for her book, Dr. Parisian closely reviewed and examined FDA processes, the history of FDA actions, the requirements for each Center of the FDA, and FDCA requirements. Further, Dr. Parisian studied and re-familiarized herself with the Act and its Amendments. She also reviewed "FDA Guidances for Industry and Reviewers," and

---

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.*, paras. 3-5.

[12] *Id.*, para. 6.

[13] *Id.*

[14] *Id.*

[15] *Id.,* paras. 1, 16.

other FDA related documents, including statements, press releases and documents regarding FDA meetings with members of the pharmaceutical industry, reviews of FDA actions related to processes by other government agencies, and applicable CFRs related to the regulation of drugs/medical devices and the FDA's role in the pharmaceutical industry.[16] Currently, her book is available in at least 71 different libraries across the country, including the FDA's own Biosciences Library, as well as other highly regarded institutions such as the Center for Disease Control and Prevention, Harvard University, and the Massachusetts Institute of Technology.[17]

Since leaving the FDA in 1995, Dr. Parisian has been the president and founder of MD Assist, Inc., a regulatory and medical consulting firm specializing in matters involving the FDA's regulation of products.[18] In this role, Dr. Parisian has remained up-to-date in regard to FDA processes and issues.[19] On a daily basis, she reviews updates from the FDA related to actions with drugs and devices and monitors testimony by FDA officials.[20] She also remains knowledgeable about changes, and proposed changes, to the FDCA, as well as CFR revisions related to the regulation of drugs and devices.[21] Finally, she has spent many years consulting and testifying exclusively in the field of FDA regulations.

Dr. Parisian has been described by courts as a "seasoned-veteran of product liability litigation."[22] She has been qualified as an expert on FDA regulatory matters, similar to those at

---

[16]*Id.,* paras. 10-11.

[17]*Id.,* para. 16.

[18]*Id.,* para. 14.

[19]*Id.*

[20]*Id.,* para. 17.

[21]*Id.*

[22]*Deutsch v. Novartis Pharmaceuticals Corp.*, 768 F. Supp. 2d 420, 464 (E.D.N.Y. 2011).

issue in this case, including the duties of care in the marketing and warning of risks of

pharmaceutical products, in numerous federal and state courts.[23]  The same result should follow in

---

[23]Exhibit 1, Parisian Report, Appendix B.  *See, e.g.*, *In re Ethicon Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, MDL 2327, 2016 WL 4608165, at \*3 (S.D.W. Va., Sept. 2, 2016) (Dr. Parisian is qualified to testify about product warnings. Over the course of her career, Dr. Parisian helped create IFUs [Instructions for Use] and provided comments for patient brochures. During her time with the FDA and as a consultant, she has reviewed proposed labeling. She also has more than twenty-four years of experience with research and development of medical devices and pharmaceuticals); *In re Mirena IUD Products Liab. Litig.*, 169 F.Supp.3d 396 (S.D. N.Y. 2016)) ([B]ased upon Dr. Parisian's education and experience, including training in epidemiology while at the FDA, it would appear reasonable for Dr. Parisian to rely on epidemiological ... experts to support her opinions."); *Block v. Woo Young Med. Co.*, 937 F. Supp. 2d 1028, 1045-1046 (D. Minn. 2013) (in a pain pump medical device case, the court allowed Dr. Parisian to testify as to the state of the medical literature and what defendant should have been aware of); *Bartoli v. Novartis Pharma.*, 3:13-cv-0724, 2014 WL 1515870 (M.D. Pa., Apr. 17, 2014) (holding that Dr. Parisian was qualified to testify as to FDA regulatory scheme, role of the FDA and interactions with pharmaceutical companies, labeling and warnings); *In re Nuvaring Prod. Liab. Litig.*, No. 4:08-MD-1964 RWS, 2013 WL 791835, at \*3 (E.D. Mo., Mar. 4, 2013) (finding Dr. Parisian qualified to "offer testimony concerning FDA regulatory and labeling issues"); *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices and Prods. Liab. Litig.*, No. 3:09–md–02100–DRH–PMF, 2011 WL 6733952 (S.D. Ill., Dec. 16, 2011) (finding Dr. Parisian qualified to testify regarding "FDA regulatory and labeling issues."); *Lyman v. Pfizer, Inc.*, No. 2:09–cv–262, 2012 WL 2971550 (D. Vt., July 20, 2012) (Dr. Parisian "has considerable experience with the FDA, its regulatory requirements and procedures, and has been permitted to testify in numerous cases involving not only medical devices but pharmaceutical products…The Court finds that Dr. Parisian's knowledge of the FDA's regulatory requirements will assist the jury to understand the evidence pertaining to drug approval and drug labeling requirements."); *In re Heparin Prods. Liab. Litig.*, MDL No. 1953, 2011 WL 1059660 (N.D. Ohio, March 21, 2011); *Forman v. Novartis Pharm. Corp.*, 794 F. Supp. 2d 382, 384 (E.D. N.Y. 2011) (finding Dr. Parisian's testimony reliable and permitting her to give opinions as to the reasonableness of Novartis' conduct with the FDA and its regulatory compliance); *In re Gadolinium-Based Contrast Agents Prod. Liab. Litig.*, No. 1:08 GD 50000, 2010 WL 1796334, at \*15 (N.D. Ohio, May 4, 2010) ("Dr. Parisian is a regulatory expert who is qualified based on her experience as a Medical Officer at the FDA and related experience thereafter, to offer testimony about regulatory requirements relating to the development, testing, marking and post-marking surveillance of prescription drugs."); *In re Fosamax Prod. Liab. Litig.*, 645 F. Supp. 2d 164, 190 (S.D. N.Y. 2009) ("The Court finds that Dr. Parisian is qualified based upon her experience as a Medical Officer at the FDA to offer testimony about regulatory requirements relating to the development, testing, marketing, and surveillance of prescription drugs."); *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, MDL No. 05–1708, 2007 WL 1964337, \*7 (D. Minn., June 29, 2007) (permitting Dr. Parisian to testify "as to the general nature of the approval and regulatory process including compliance with FDA regulations and guidelines, the FDA's general expectations with respect to testing and marketing of new products, Guidant's actions in that respect, and her opinions as to whether Guidant's actions were reasonable and appropriate."); *Simon v. Wyeth Pharm., Inc.,* 989 A.2d 356 2009 WL 5154031 (Pa. Super. 2009)*; Reece v. Astrazeneca Pharmaceuticals*, LP, 500 F Supp. 2d 736 (S.D. Ohio 2007); *Linsley v. C.R. Bard, Inc. et al.,* No. CIV.A.98-2007, 2000 WL 343358 (E.D. La., March 30, 2000); *Lemons v. Novartis Pharms. Corp*, 849 F. Supp. 2d 608, 614 (W.D. N.C. 2012) ("Dr. Parisian's experience and expertise with the FDA and its regulatory scheme does render her fit to offer testimony on the issue of Novartis' interactions with the FDA on the subject of labeling."); *Rowland v. Novartis Pharms. Corp*., 9 F. Supp. 3d 553, 561 (W.D. Pa. 2014) (allowing Dr. Parisian to testify about the FDA's requirements for

this case.

## II.   Dr. Parisian's Opinions Will Assist The Jury On Matters Pertaining To Xarelto.

Dr. Parisian opines that Defendants violated their duties and obligations as responsible pharmaceutical companies by:

1. Continuing to sell Xarelto for SPAF[24] at 20mg/15 mg once daily ("OD") without providing adequate warnings for patients, despite an internal consensus that the 20mg/15mg dose was too high; repeated FDA recommendations to modify and/or lower the dose and without providing a recommendation to do periodic PT (Neoplastin) thereby placing certain patients at an increased risk of major bleeding without additional benefit.[25]

2. Ignoring many requests from regulators to adequately study the exposure-risk benefit of Xarelto and to study, identify and develop recommendations for therapeutic drug monitoring ("TDM") and proper dose titration to improve patient safety rather than utilizing a "one size fits all," which exposed specific populations, and patients in certain situations, to an increased risk.[26]

3. Poorly monitoring the quality, performance, oversight of international clinical trials which undermined the reliability of Xarelto and placed patients at increased risk of bleeding including:[27]

   a. Utilizing a faulty investigational INR point-of-care (POC) device in the ROCKET trial that generated lower INRs for the warfarin patients, thereby increasing the bleeding risk for warfarin patients, and contributing to the finding of non-inferiority (not superiority) for the safety of XARELTO.[28]

---

labeling and the adequacy of the product warnings and labels due to her FDA experience and expertise); *Stambolian v. Novartis Pharm. Corp.*, CV 12-04378 BRO FMOX, 2013 WL 6345566, *9 (C.D. Cal., Dec. 6, 2013) ("Dr. Parisian is an expert whose testimony may be helpful to a jury regarding the FDA drug-approval process including regulations governing the approval, advertising, and marketing of pharmaceuticals."); *Earp v. Novartis Pharm. Corp.,* 5:11-CV-680-D, 2013 WL 4854488, *23 (E.D. N.C., Sept. 11, 2013*)* ("With extensive experience in the field, Dr. Parisian is qualified to speak to the FDA's requirements and guidelines for ... marketing.").

[24]SPAF means stroke and systematic embolism prevention for patients with non-valvular atrial fibrillation.

[25]Exhibit 1, Parisian Report at 9, *citing* 21 USC § 331; 21 USC § 352; 21 CFR § 201.57; 21 CFR § 314.50.

[26]*Id.* at 10.

[27]*Id., citing* 21 USC § 331; 21 USC § 352; 21 CFR § 201.57; 21CFR § 314.80; 21 CFR § 312

[28]*Id.,* p. 9, 11, *citing* 21 CFR § 812; 21 CFR § 314.50; 21 USC § 352; 21 CFR § 312.

     b.   Poorly controlling INR control in the warfarin treatment group in ROCKET;

     c.   Using portions of its flawed RECORD to obtain NDA approval of VTE prevention in hip/knee surgeries studies and the DVT/PE prevention indication granted as a supplemental NDA based on the original VTE prevention indication; and,

     d.   Having the proposed ACS indication denied twice based on significant flaws and loss of patient data in Defendants ATLAS studies.

4.   Inadequately conducting dose-ranging studies in atrial fibrillation patients to determine the safest effective dose including a lower dose and a twice daily dosing regimen;[29]

5.   Halting a planned ROCKET-2 study of lower doses and a twice daily dose regimen in Afib patients thereby potentially optimizing the dose to help reduce the risk of bleeding, based on a concern that the study would harm sales;[30]

6.   Failing to investigate and document, and to provide truthful, accurate and full disclosure of adverse events in ROCKET including erroneous/discrepant INR readings; and information requested by the FDA including information in response to the FDA's March 2011 and January 12, 2016 Information Request including the CoVance Recheck Program;[31]

7.   Failing to include in the label that:

     a.   A PT (using Neoplastin) test can be helpful in measuring the anticoagulant effect of Xarelto and bleeding risk enabling physicians to make clinical decisions about the appropriateness of Xarelto therapy (discontinue the drug or employ additional warnings);[32]

         a.   Clinical trial data showed that Xarelto exhibits a high degree of inter-individual variability in the distribution of PK values; meaning that 10 patients may take the exact same pill – but due to

---

[29]*Id.,* p. 14, *citing* 21 USC § 331(a)(b); 21 USC § 352; 21 CFR § 314.50; 21 CFR § 201.57; 21 CFR § 314.70

[30]*Id.,* p. 10-11, 14, *citing* 21 USC § 352; 21 CFR § 314.70.

[31]*Id.,* p. 12-13, *citing* 21 USC § 352; 21 CFR § 312; 21 CFR § 820; 21 USC § 331; 21 CFR § 314.50; 21 CFR § 314.80; 21 CFR § 314.81; 18 USC § 1001.

[32]*Id.,* p. 11. 13.

the variability – each have significantly different amounts of Xarelto circulating in their blood;[33]

    b.  The same plasma concentration information and the commercial use of anti-factor XA calibrators required in the European label including correlations between plasma concentrations, major bleeding, and efficacy;[34]

    c.  The severity and frequency of reported post-marketing bleeding risk; and,

8.  Engaging in aggressive direct-to-consumer ("DTC") marketing that was not fair and balanced and using a sales force that promoted Xarelto for unapproved clinical indications by means of publications via Defendants' Research and Development department, which were not balanced or accurate, and overstated benefits without adequately describing risks to health care providers.[35]

## ARGUMENT

## I.   The Legal Standard Governing Expert Testimony Favors Admissibility.

Rather that restate matters of record, the Plaintiffs incorporate herein the legal standard governing expert testimony from *Section III* of their Response in Opposition to Defendants' Motion *In Limine* to Exclude Certain Opinions of Laura Plunkett, Ph.D., under Federal Rule of Evidence 702, as if set forth in its entirety.

## II.   Dr. Parisian May Testify To Her Analysis Of Xarelto's Regulatory History And The Relevant Documents That Support Her Opinions.

In essence, Defendants argue that Dr. Parisian should be excluded because she provides a detailed and thorough narrative summary of Xarelto's regulatory history and certain company documents.[36] In doing so, Defendants cobble together sound bites from Dr. Parisian's deposition to argue that she really is planning on testifying about what people or entities knew or thought.

---

[33]*Id.*

[34]*Id.*

[35]*Id.,* p. 14.

[36]Def. Memo at 4.

These confected arguments through the use of selective portions of testimonial statements, completely stripped of all context, are of no moment. Dr. Parisian complies with Rule 26 in narrative form, summarizing the material, studies and other facts relied on to reach her conclusions. There is nothing improper about this expert discussing the documents she relied upon in reaching her conclusions. Indeed, Defendants' own regulatory experts, Dena Hixon, M.D. and Gregory Campbell, Ph.D., do exactly the same thing in their Reports.[37] The Defendants' arguments are without merit.

*First*, expert narrative testimony is entirely permissible where the documents and other information the expert is reviewing are complicated, voluminous, or involve scientific or technical data, and such narrative summary would assist the trier of fact in understanding the documents. Plaintiffs expect their evidence to proceed in the form of permissible questions and answers, under the Court's direction; however, an expert report is a written document that cannot possibly follow a question-and-answer format, but instead must include the facts and data that Rule 26 requires, which would then provide the substance of the trial testimony provided in the usual question-and-answer method.

*Second*, "narrative testimony" is not inherently objectionable, as the court in *Yaz* noted:

> As to defendant's argument regarding narrative testimony, the Court has broad discretion over the mode and order of examining witnesses and presenting evidence and may allow testimony in narrative form at trial if the Court finds that it would be helpful to the jury. … 'Fed. R. Evid. 611(a) provides district judges with authority to allow testimony in narrative form rather than as answers to specific questions [citations omitted], and we ourselves have said

---

[37]Defendants accuse Dr. Parisian of introducing "Xarelto's regulatory history" and "selectively reading cherry-picked company documents of the defendants to the jury and to interpret them as support for Plaintiff's proposed narrative of events." (Def. Memo at 4.) Yet, Defendants' own regulatory expert, Dr. Dena Hixon, acknowledges conducting her own selective recitation of facts: "the following is intended <u>not as a comprehensive history of all the drug</u> development activities <u>and studies</u> conducted but a broad overview of some of the most important studies relevant to the product approval." (Exhibit 2, Hixon Report, p. 13 (*emphasis added*)).

that "there is … nothing particularly unusual, or incorrect, in a procedure of letting a witness relate pertinent information in a narrative form as long as it stays within the bounds of pertinency and materiality.'"[citations omitted][38]

Indeed, the Fifth Circuit has expressly approved the use of an "expert summary witness" who is permitted both to summarize evidence for the jury and to offer an expert analysis of the facts.[39] Elsewhere, the expertise of a historian has been found useful to assist the jury in understanding the historical record.[40] In fact, numerous courts in pharmaceutical litigations have

---

[38]*In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Products Liab. Litig.,* 3:09-MD-02100-DRH, 2011 WL 6302287, *32 (S.D. Ill., Dec. 16, 2011); *see also In re Tylenol (Acetaminophen) Mktg., Sales Prac. & Prod. Liab. Litig.,* MDL No. 2436, 2016 WL 4538621, at *8 (E.D. Pa., Aug. 31, 2016) and *In re Tylenol*, MDL No. 2436, 2016 WL 807377, at *9 (E.D. Pa., Mar. 2, 2016) (a narrative may be admissible, however, if an expert's explanation of complicated facts can help a jury better understand them); *In re Fosamax,* 645 F. Supp. 2d at 190-91; Fed. R. Evid. 611*; United States v. Pless,* 982 F.2d 1118, 1123 (7th Cir. 1992) ("Fed. R. Evid. 611(a) provides district judges with authority to allow testimony in narrative form rather than as answers to specific questions . . ., and we ourselves have said that 'there is . . . nothing particularly unusual, or incorrect, in a procedure of letting a witness relate pertinent information in a narrative form as long as it stays within the bounds of pertinency and materiality' (*United States v. Garcia,* 625 F.2d 162, 169 (7th Cir. 1980))."); *In re Welding Fume Prod. Liab. Litig.,* MDL 1535, 2005 WL 1868046, *17 (N.D. Ohio 2005) ("Thus, a 'narrative' by an expert is not automatically inadmissible; it is only when, as in *In re Rezulin*, the narrative is purely 'a repetition of the factual allegations in plaintiffs' complaint,' involving 'nothing technical or scientific,' that a court might find the expert testimony unhelpful, because the expert is providing only 'simple inferences drawn from uncomplicated facts.'... In this case, the great majority of the documents and articles that Dr. Levy is reviewing and comparing are complicated, and the inferences those documents may or may not support are not at all simple. It is through the application of his expertise that Dr. Levy may allow the trier of fact to better understand what the documents do (and don't) mean, and, thus, what the defendants did (or didn't) know.") (citation omitted).

[39]*See United States v. Moore,* 997 F.2d 55 (5th Cir.1993) (IRS agent testified as expert summary witness); *see also* Fed. R. Evid. 1006 (summary evidence).

[40]*See Waterhouse v. R.J. Reynolds Tobacco Co*., 368 F. Supp. 2d 432, 436 (D. Md. 2005), *aff'd,* 162 F. App'x 231 (4th Cir. 2006) (in the tobacco litigation, defendants were allowed to offer the testimony of an historian, who relied on a wide variety of documents, synthesized the documents, and opined that between 1947 and 1969 there was widespread common knowledge among ordinary people that cigarette smoking could cause serious life-threatening diseases); *see also Walden v. City of Chicago*, 755 F. Supp. 2d 942, 948-49 (N.D. Ill. 2010) ("researcher and doctoral candidate in history," who had conducted a historical study regarding the policies and practices of the Chicago Police Department, to testify that "all the available evidence points to the existence of a historic pattern of coercive interrogations and illegal detentions that represented a de facto policy and practice of the Chicago Police Department in existence in 1952 at the time of [the plaintiff's] arrest and alleged mistreatment.").

allowed expert testimony in narrative form on complex subjects such as those that Dr. Parisian is being proffered to testify.[41]

*Third*, at its core, Defendants' argument to preclude Dr. Parisian from providing a "narrative" is based on nothing more than the familiar trial objection that "the document speaks for itself." That rule should be enforced at trial, in the context of specific documents and expert testimony, not by way of a *Daubert* motion. Questions about the scope of a narrative do not justify exclusion under *Daubert* or Rule 702. Such general objections are more properly addressed by the Court at trial.[42] Dr. Parisian will testify about those documents involving the regulatory history of Xarelto, including documents reflecting communications between Defendants and the FDA and internal company communications, in forming her regulatory opinions and she will only present these documents to the jury with analysis and explanation of her opinions.[43]

*Fourth,* the cases Defendants rely on are based directly, or indirectly, on a line of district court cases in New York that have excluded witnesses from simply constructing a narrative history

---

[41]*See, e.g, Welding Fume, supra.*

[42]*See, e.g., In re Actos (Pioglitazone) Prod. Liab. Litig.,* MDL No. 2299, 6:11–md–2299, 2014 WL 120973 at *10 (W.D. La., Jan. 10, 2014) ("The objection that testimony is 'narrative' is an objection as to form, foundation, or responsiveness, and must be presented at trial--as no question is now before the Court to which objection can be made."); *Johnson v. Wyeth LLC*, Case No. 10–02690, 2012 WL 1204081, at *3 (D. Ariz., Apr. 11, 2012) ("Objections to narrative testimony, however, are best made at trial"); *Lea v. Wyeth LLC,* Case No. 1:03-cv-01339-MAC, 2011 U.S. Dist. LEXIS 158668, at *23 n.6 (E.D. Tex., Oct. 6, 2011) (not officially reported)(Defendant's motion to exclude "narrative" testimony denied "[s]hould [the experts] become witnesses that merely read documents to the jury, as Defendants suggest, an objection should be lodged at trial that the documents speak for themselves.")(Exhibit 3).

[43]Throughout their motion, the Defendants rely on the ruling in *Mirena*. Def. Memo at 2, n.1, 5, 10 and 22. However, in *Mirena*, the court held that Defendants' motion with respect to Dr. Parisian's narrative testimony is granted "insofar as she merely repeats facts, as opposed to using documents and background to opine on the FDA, the adequacy of Mirena's label and the reasonableness of Bayer's conduct pursuant to FDA regulations*." In re Mirena,* 169 F. Supp. 3d at 478. Here Dr. Parisian will not merely repeat facts from documents, she will only use them at trial as background and support for her opinions.

of events based on a self-explanatory documentary record.[44] Those cases have reasoned that the

jury does not need an expert to provide such a narrative, and it is the job of trial counsel to provide

such a narrative. Those cases are distinguishable where, as here, the documents and evidence are

so voluminous and complex that the jury cannot reasonably be expected to understand without

expert guidance.

For example, throughout their brief, Defendants heavily rely on the ruling in *Trasylol*[45]

addressing another of Bayer's drugs, where the court excluded Dr. Parisian. However, *Trasylol* is

simply inconsistent with *Moore* and other compelling authority, *supra*, which permits the use of

summary expert witnesses. In addition, *Trasylol* is distinguishable on its facts. There, the court

concluded that Dr. Parisian was excluded because she was unable to support her opinions

because she failed to reference particular FDA statutes or regulations.[46] To the contrary, in this

case Dr. Parisian's Report and testimony are meticulously supported by, and specifically reference,

each of the applicable regulations.[47]

Furthermore, the *Trasylol* court's reliance on *Prempro*[48] reflects a misapprehension of Dr.

Parisian's role in that case. In fact, Dr. Parisian had been permitted to provide FDA regulatory

---

[44]*In re Fosamax*, *supra*; *Highland Capital Management, L.P. v. Schneider*, 379 F. Supp. 2d 461, 469 (S.D. N.Y. 2005); *In re Rezulin Products Liab. Litig*., 309 F. Supp. 2d 531, 546 (S.D. N.Y. 2004); *Taylor v. Evans*, Case No. 94-8425, 1997 WL 154010, at *2 (S.D. N.Y. 1997); *LinkCo, Inc. v. Fujitsu Ltd*., Case No. 00 Civ. 7242, 2002 WL 1585551, at *1-*2 (S.D. N.Y., July 16, 2002); *Media Sport & Arts s.r.l. v. Kinney Shoe Corp.,* Case No. 95 CIV. 3901,1999 WL 946354, at *3 (S.D.N.Y., Oct.19, 1999).

[45]*In re Trasylol Prods. Liab. Litig.,* 709 F. Supp. 2d 1323, 1324-7 (S.D. Fla. 2010).

[46]*Id.*

[47]*See* notes 25-31 *supra.*

[48]*In re Prempro Prods. Liab. Litig*., 554 F.Supp.2d 871, 880, 886 (E.D. Ark. 2008). The Defendants subsequently appealed to the Eighth Circuit, which affirmed the jury verdict and compensatory damages, vacating only the punitive damages portion of the verdict *In re Prempro Prods. Liab. Litig*., 586 F.3d. 547, 559 (8th Cir. 2009). Defendants neglect mentioning that the motion to strike the regulatory experts opinions in that case was denied and the compensatory damages verdict was upheld. In fact, the Court of Appeals

testimony during the compensatory phase of the trial.[49] Finally, in *Trasylol,* the court was concerned that Dr. Parisian's opinion would discuss the "intent" of the company, which that court considered impermissible.[50]

As set forth below in *Section* III(C)(2), Dr. Parisian is not being proffered to provide any unsupported opinions regarding the intent of the Defendants. Rather, she is being proffered to explain the FDA's regulatory system to the jury and explain the ways in which Defendants failed to comply with those regulations, as numerous courts have allowed her to do.

## III.  Dr. Parisian's Use Of Corporate Documents Is Proper And She Does Not Intend To Testify Regarding Motive, Intent, Or State Of Mind.

### A.   Dr. Parisian's Use of Corporate Documents Is Proper.

Dr. Parisian will offer testimony regarding the standard of care of a pharmaceutical company in Defendants' position with respect to the study, design, labeling/warnings, marketing, and approval of Xarelto, and that Defendants' breached that standard of care based upon her understanding derived from the documents she reviewed. Dr. Parisian necessarily had to review Defendants' internal documents to complete her analysis of whether Defendants breached their duties to investigate and to warn, and whether the Xarelto label was defective.[51] Courts regularly allow experts to discuss documents that form the basis of their opinions.[52]

---

repeatedly refers to Dr. Parisian's testimony and opinions regarding the inadequacy of the manufacturer's warnings throughout its factual statement. *Id.* at 558; 561-562.

[49]*Id.*

[50]*Trasylol,* 709 F.Supp.2d at 1346.

[51]Dr. Parisian explained during her deposition that while at the FDA she did review internal company e-mails and boxes of internal company documents seized by federal marshals during mandatory device recalls. Exhibit 4, Parisian dep. at 214:24-215:14.

[52]*See, e.g., Sanchez v. Boston Scientific Corp.* Civil Action No. 2:12-cv-05762, 2014 WL 4851989, at *4 (S.D. W.Va., Sept. 29, 2014) (noting that "an expert may testify about his or her review of internal documents solely for the purpose of explaining the basis for his or her opinions*); In re Flonase Antitrust Litig.*, 884 F. Supp. 2d 184, 192-93 (E.D. Pa. 2012) (permitting expert to use internal documents to opine

To avoid this result, Defendants assert that Dr. Parisian did not conduct a comprehensive review of relevant documents, claiming that she "selectively cherry-picked company documents."[53] Defendants' assertion is wholly without merit.  As evident from both her report and testimony, Dr. Parisian carefully conducted an extensive review of publications, internal documents, product labels, clinical studies, depositions, exhibits and more before forming her opinions.[54] Dr. Parisian's analysis of the documents and testimony is consistent with the intellectually rigorous methodology she employed while at the FDA determining and assessing regulatory compliance. While working at the FDA, she reviewed similar documents as those she reviewed in the present case, including company documents, to recommend the appropriate actions to the Office of Compliance. Her reviews were carried out in both the pre- and post-market context.[55]

Employing the same liberal standard that animates Rule 702, numerous other courts have held that Dr. Parisian utilizes a reliable methodology in the formation of her opinions by reviewing

---

on information that was available to manufacturer regarding FDA practice and policy as to approval of drug application); *In re Fosamax*, 645 F. Supp. 2d at 192 (permitting expert to comment on documents and exhibits in the context of "explaining the regulatory context in which they were created, defining any complex or specialized terminology, or drawing inferences that would not be apparent without the benefit of experience or specialized knowledge").

[53]Def. Memo at 4.

[54]*See* Exhibit 1, Parisian Report, Appendix C ("Materials Relied On, Reviewed, and/or Considered").

[55]Exhibit 1, Parisian Report, paras. 3, 17-19; Exhibit 4, Parisian dep. at 153:15-153:17; 190:8-190:15 ("…I looked at using the methodology I always would at the FDA, which is to look at the reviews, particularly the medical officer's reviews and the statistical review, the pharmacokinetic reviews.  In terms of in if you were a medical officer coming into this issue, you would look at the medical reviews…."); 410:23-410:24 ("My answer was that the methodology I use was acquired at the FDA"); 415:24 to 415:25 ("My step one is the same step one that I would use at the FDA"). Dr. Parisian also explained during her deposition that while at the FDA she did review internal company e-mails and boxes of internal company documents seized by federal marshals during mandatory device recalls. Exhibit 4, Parisian dep at. 214:24 to 215:14.

the same general types of documents she would have reviewed while at the FDA.[56] For example,

in *Yaz,* the court concluded that Dr. Parisian's methodology was reliable:

> Second, the Court must determine whether Dr. Parisian's reasoning or methodology is reliable. In her report, Dr. Parisian stated the following:
>
>> Based on the work I have done, using the methodology I was first trained to use at FDA for clinical review and health risk assessment, as well as my scientific and medical education, professional training, and experience, I have reached the following opinions regarding the actions of the defendants. The documents reviewed are the same general types of documents I would have reviewed at the FDA, including the medical literature, adverse events reports, complaints, marketing application documents, manufacturing documents, clinical trials, preclinical data, and communications with the FDA. I have also reviewed corporate documents that have been obtained through discovery and deposition.
>
> Based upon this explanation, as well as Dr. Parisian's knowledge and experience, the Court finds that Dr. Parisian's reasoning or methodology is reliable. Dr. Parisian's opinions are based on more than *a subjective belief or unsupported speculation*; they are based on the same methodology she utilized while at the FDA. This type of experience makes Dr. Parisian's methodology reliable. *See In re*

---

[56]*In re Nuvaring*, 2013 WL 791835 at *6 ("Dr. Parisian applied the methodology gained from her experience with FDA regulation and reviewed the same materials that were reviewed by the FDA medical officers."); *Forman*, 794 F. Supp. 2d at 382 ("Dr. Parisian's methodology is reliable" and "[she] is permitted to render opinions on the reasonableness of Novartis' conduct in its interactions with the FDA and compliance with FDA regulations, including Novartis' interactions with FDA with respect to labels and warnings, and FDA regulations and interactions with companies regarding clinical trials."); *Fosamax*, 645 F. Supp. 2d at 191 (finding "that Dr. Parisian has followed an appropriate methodology. An expert is permitted to draw a conclusion from a set of observations based on extensive and specialized experience. Here, Dr. Parisian has drawn conclusions about Merck's conduct based on her review of pertinent portions of the regulatory filings for Fosamax and Merck's internal company documents. This is the methodology she applied as a Medical Officer, and Merck's regulatory experts have followed the same methodology to prepare their reports."); *Davids v. Novartis Pharms. Corp*., 857 F. Supp. 2d 267 (E.D. N.Y. 2012) ("Dr. Parisian's methodology is reliable and that there is no risk of prejudice to NPC by permitting her testimony."); *Jenkins v. Novartis Pharm. Corp.,* 3:11-CV-342, 2013 WL 1760762, at *1 (E.D. Tenn., Apr. 24, 2013) at *18 (E.D. Tenn., Dec.13, 2012) ("the Court finds that Dr. Parisian's FDA/FDCA-related testimony is relevant and reliable so as to satisfy the *Daubert* standard"); *Zimmerman v. Novartis Pharmaceuticals Corporation*, 8:08-cv-2089-RWT, ECF Doc. 180 (D. Md., Sept. 25, 2012) (admitting Dr. Parisian's testimony and finding her methodology reliable); *Gadolinium, supra.* (finding Dr. Parisian highly qualified and further finding that she utilized reliable methodology); *see also In re Vioxx Products Liab. Litig.,* 401 F.Supp.2d 565, 578 (E.D. La. 2005) (allowing the testimony of Merck's regulatory expert based on similar expertise and methodology).

*Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d at 190 ("The Court further finds that Dr. Parisian has followed an appropriate methodology.").[57]

It is telling that Defendants make no effort to distinguish the numerous decisions from other courts finding Dr. Parisian's methodology to be reliable. Presumably, they cannot because Dr. Parisian's methodology reflects more than just a subjective belief. Indeed, her methodology is of the same type employed by other regulatory experts, including Defendants' own regulatory experts in this case, Gregory Campbell, Ph.D. and Dena Hixon, M.D.

**B.**     **Dr. Parisian Does Not Speculate About State of Mind, Intent or Motive.**

Defendants fear that Dr. Parisian's opinion testimony will venture into the Defendants' employees' knowledge, motives, and intent.[58] However, that is not the purpose or goal of Dr. Parisian, or the Plaintiffs. Simply because Dr. Parisian answered defense counsels' questions posed to her during a lengthy, two-day deposition (regardless of subject, relevance or admissibility at trial) is hardly a means to justify a blanket exclusion of Dr. Parisian's testimony, especially when the witness testified repeatedly that she has no intention to speak to the extraneous matters raised by defense counsel during the deposition.[59]

In *Actos*, the court rejected a similar challenge to Dr. Parisian. The court distinguished between what Dr. Parisian "believes [Defendant] or the FDA thought or knew" and "documentary exhibits which on their face establish [Defendant] or the FDA's knowledge or intent and upon

---

[57]*In re Yasmin & Yaz,* 2011 WL 6302287 at *32.

[58]Def. Memo at 7-8.

[59]In paragraph 20 of her Report, Dr. Parisian states that she does not intend to offer opinions "about 'state of mind' or 'intent' of either of the Defendants regarding the actions for development, approval and commercialization of XARELTO in the United States." Exhibit 1, Parisian Report, para. 20 at 7.

which Dr. Parisian relied in forming her opinion."[60] Likewise, in *Vioxx*, this Court permitted the Plaintiff's regulatory expert to testify about the significance of certain documents and how these documents fit into the FDA's regulatory scheme.[61] This Court noted that state of mind objections similar to those raised by the Defendants here were best decided at trial.[62]

Here Dr. Parisian will not be "guessing" as to what Defendants or the FDA thought or knew. To the contrary, she relies on *documents* to explain what knowledge was available to Defendants and their employees at the time and what information they *should have known* as a manufacturer of a New Oral Anticoagulant, like Xarelto, to meet the standard of care.[63]

---

[60] *In re Actos Prod. Liab. Litig.*, No. 11 L 010011, *11-12 (Cook County, Illinois, March 13, 2014) (Exhibit 5).

[61] *In re Vioxx Prod. Liab. Litig.,* MDL 1657, 401 F. Supp.2d 565, 594-95 (E.D. La. 2005).

[62] *Id.* at 595 (reserving ruling on state of mind issue should Merck raise objection at trial).

[63] *See also In re Tylenol,* 2016 WL 1569719, at *11 n. 29 (E.D. Pa., April 19, 2016) ("This does not mean, however, that the plaintiff's experts cannot offer evidence that could allow a jury to infer what the defendants' corporate state of mind would be. This is entirely appropriate); *Wells v. Allergan,* Case No. 12-973, 2013 WL 7208221, at *2 (W.D. Okla., Feb. 4, 2013) ("However, although Dr. Kessler cannot testify as to intent, Dr. Kessler can testify about facts from which the jury can infer intent); *DePaepe v. Gen. Motors Corp.,* 141 F.3d 715, 720 (7th Cir. 1998) (Expert "could give an opinion as an engineer that reducing the padding saved a particular amount of money; he might testify as an engineer that GM's explanation for the decision was not sound (from which the jury *might infer* that money was the real reason ...") (emphasis added). Additionally, experts are permitted to opine on what defendant pharmaceutical companies, such as the Defendants, actually did, rather than thought. *Kruszka v. Novartis Pharms. Corp.,* 28 F. Supp. 3d 920, 931-32 (D. Minn. 2014) ("[T]estimony that opinions on what the FDA or Novartis actually did, rather than thought, are properly within the scope of admissible testimony."); *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.,* MDL No. 1203, 2000 WL 876900, at *9 (E.D. Pa., June 20, 2000) ("[i]f the witnesses' bases for the opinions concerning improper intent come from other evidence such as letters, admissions … or other admissible evidence, that is what the jury should hear and the question of [] intent would flow from such evidence to be determined by the jury.") (emphasis in original).

**IV.      Dr. Parisian May Testify To Breach Of The Standard Of Care Without Invading The Province Of The Court .**

Defendants argue that Dr. Parisian may not testify to certain opinions that they characterize as improper "legal conclusions," including the requirements of the Federal, Food, Drug and Cosmetic Act and related regulations, the relationship between state and federal standards applicable to pharmaceutical manufacturers, and breach of those standards.[64] Dr. Parisian is not going to give legal conclusions or legal opinions.[65] On the contrary, her opinions are based on her knowledge of the intricacies and implementation of FDA regulations, her experience with the regulation of pharmaceutical drugs, her consulting with pharmaceutical drug companies, and her review of many documents in this case.

Defendants' argument is premised on Dr. Parisian's methodology and how she came to render the opinions that Defendants disagree with in regard to their conduct in violation of FDA regulations. It is clear that Dr. Parisian used the same methodology while working at the FDA. Moreover, Defendants' own regulatory experts, Gregory Campbell, Ph.D. and Dena Hixon, M.D., utilize the same methodology in rendering their opinions. Experts in pharmaceutical cases are permitted to testify that a Defendant acted reasonably or unreasonably and/or violated or did not

---

[64]Def. Memo at 11.

[65]Dr. Parisian explained her role as follows:

> The best I can give is what I was trained to give at the FDA, and that's what I give in terms of regulatory advice to manufacturers.  I'm not a lawyer.  I never said I am, but I was trained in terms of how to review documents for the FDA to make a determination to provide to attorneys who would then take that information and run with it.

> So I have a role in terms of applying the regulations, in terms of what the regulations require and then providing that as advice to members of FDA.

Exhibit 4, Parisian dep. at 201:12-201:25.

violate the standard of care, and such testimony does not invade the province of the judge or jury.[66]

In essence, Dr. Parisian and the Defendants' own regulatory experts use the same methodology,

relying on the same regulations and documents. They simply interpret them differently and reach

opposite conclusions. That is not a methodological basis for excluding expert testimony under

*Daubert,* as this Court recognized in *Vioxx.*[67]

Lastly, Defendants confuse Dr. Parisian's opinions, which touch on legal issues relevant to

federal regulation of the pharmaceutical industry, with testimony attempting to instruct the jury on

the ultimate issues of law or direct the jury how to decide these issues. This argument is meritless

and numerous courts have appropriately permitted regulatory experts, including Dr. Parisian, to

state expressly that a Defendant did not meet its duty to warn.[68] Thus, Defendants' argument that

---

[66]*See, e.g., Mahaney ex rel. estate of Kyle v. Novartis Pharm. Corp.,* 835 F.Supp.2d 299, 321 (W.D. Ky. 2011*)* ("[T]he Court believes Parisian's testimony will shed light on the internal workings of an agency about which lay persons possess little knowledge and familiarity.").

[67]*See In re Vioxx,* 401 F.Supp.2d at 565 ("In essence, both the Plaintiff and Merck rely on the same material. They simply interpret it differently and reach contrary conclusions. The Court's role as gate-keeper is to scrutinize the methodology, not the conclusions. Accordingly, Merck's motion is denied").

[68]*In re Fosamax,* 645 F. Supp. 2d at 191, n.16 (rejecting drug manufacturer challenge that Dr. Parisian's would improperly opine on the applicable law noting that cross-examination and competing testimony from the manufacturer's own regulatory experts would ensure that the jury properly weighed the proposed testimony); *In re Mirena,* 169 F.Supp.3d at 478 (allowing Dr. Parisian to testify on "the role, process, and function of FDA and the responsibilities of pharmaceutical drug sponsors"); *see also In re Yasmin & Yaz,* 2011 WL 6302287, at *10-*12   (rejecting a similar argument explaining that a regulatory expert, Dr. Kessler, proposed testimony, did not impermissibly offer legal conclusions or usurp the court's role to instruct the jury and were "permissible because of the complex nature of the process and procedures and the jury needs assistance understanding it); *Wells v. Allergan,* 2013 WL 7208221, at *1; *In re Actos,* 2014 WL 120973, at *11 (rejecting a similar argument and allowing a regulatory expert to testify noting that Defendants are free "to vigorous cross-examination and Defendants are free to present contrary evidence and interpretation."); *In re Baycol Prod. Liab. Litig.*, 532 F. Supp. 2d 1029, 1053 (D. Minn. 2007) (to the extent expert testimony is offered only to show that the FDA was misled, or that information was intentionally concealed from the FDA, the testimony must be excluded, but such testimony may be admissible to support a claim that the medical community, treating physicians or patients were misled by defendant's failure to submit information to the FDA).

Dr. Parisian's opinions are impermissible legal opinions is unavailing and should be rejected.[69]

**V.     Dr. Parisian's Opinions That Defendants Should Have Submitted, But Failed To Submit, Information To The FDA, Are Proper And Are Not Preempted Under _Buckman._**

Defendants' argument that Dr. Parisian's testimony that Defendants violated federal regulations by withholding information from the FDA is preempted by _Buckman v. Plaintiffs Legal Committee_ is without merit.[70] Numerous courts, including this Court in _Vioxx,_ have expressly rejected this argument and ruled that evidence of a manufacturer's failure to disclose information to the FDA or manipulation of the FDA regulatory process are relevant to Plaintiffs' claims of failure to warn or design defect claims.[71] For a complete discussion regarding the illegitimacy of Defendants' position, the Plaintiffs incorporate by reference herein, as if restated in full, _Section III (F) of their Memorandum of Law in Response to Defendants' Motion In Limine to Exclude Certain Opinions of David A. Kessler, MD, Under Federal Rule of Evidence 702._ The admissibility

---

[69]Defendants' reliance on _C.R. Bard_ is misplaced as it overlooks that part of the opinion which allowed relevant testimony. Def. Memo at 11. While the decision initially states that opinions drawing a legal conclusion by applying law to the facts are generally inadmissible in the Fourth Circuit, the Court goes on to state that the regulatory expert _would be permitted_ to offer expert testimony related to the FDA framework and process. _See also_ Section III(E), p. 21-22, of Plaintiffs' _Memorandum of Law in Response to Defendants Motion In Limine to Exclude Certain Opinions of David A. Kessler, MD, Under Federal Rule of Evidence 702, which is incorporated herein as if restated in full._

[70]_Buckman v. Plaintiffs Legal Comm._, 531 U.S. 341 (2001).

[71]_In re Vioxx,_ 401 F. Supp.2d at 587 ("The Court points out, however, that _Buckman Co. v. Plaintiffs' Legal Committee,_ 531 U.S. 341, 121 S.Ct. 1012, 148 L.Ed.2d 854 (2001), would not bar a qualified expert from testifying as to their opinion on whether the FDA correctly balanced the benefits and risks of a drug from a regulatory standpoint. In _Buckman,_ the Supreme Court found that state law fraud-on-the-FDA claims were preempted by federal law. This holding is completely inapplicable to the issue at hand."); _In re Actos,_ 2014 WL 120973 at *6; _In re Tylenol,_ 2016 WL 4039286, at *11 (E.D. Pa., July 28, 2016); _In re Yasmin & Yaz,._ 2011 WL 6302287, at *13; _Schedin v. Ortho-McNeil-Janssen Pharms., Inc.,_ 808 F. Supp. 2d 1125, 1144 (D. Minn. 2011), _aff'd in part and rev'd in part on other grounds,_ 700 F.3d 1161 (8th Cir. 2012); _In re Baycol,_ 532 F. Supp. 2d at 1053; _In re Medtronic, Inc.,_ 465 F. Supp. 2d 886, 900 (D. Minn. 2006); _Mahaney_ 835 F. Supp.2d at 318 (" '[P]laintiffs may use evidence-if they are able to produce it-of [a pharmaceutical company's] effort to manipulate the [FDA] regulatory process in order to prove their negligence and strict liability claims' ") (quoting _In re Medtronic, Inc., Implantable Defibrillators Litig.,_ 465 F. Supp. 2d 886, 900 (D. Minn. 2006).

of Dr. Parisian's testimony regarding the Defendants' regulatory reporting failures is not barred

by *Buckman.*

### VI.    Dr. Parisian Is Not Rendering Medical Causation Or Other Scientific Opinions And She May Appropriately Rely On Plaintiffs' Other Experts In Rendering Her Regulatory Opinions In This Case.

#### A.    Dr. Parisian is not Rendering Medical Opinions in this Case.

Under Fed. R. Evid. 703, an expert may rely on the opinion of another expert if the other

expert's opinion is admissible.[72] Dr. Parisian is not offering medical causation or other scientific

opinions in this case.[73] Dr. Parisian appropriately relies on the expertise of other experts, like Dr.

Laura Plunkett, Dr. Henry Bussey, Dr. Bud Gerstman and Dr. Henry Rinder,[74]in applying FDA

regulations to assess the reasonableness of Defendants' conduct.[75] Indeed, Dr. Parisian was

forthcoming in her deposition that her role as an expert in this litigation was limited to regulatory

---

[72]Rule 703; *Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. Smith Tank & Steel, Inc.,* Civil Action No. 3:11–CV–00830, 2014 WL 5794952, at *4 (M.D. La., Nov. 6, 2014) (*citing* Fed. R. Evid. 703); *Johnson v. Samsung Electronics America*, Inc., 277 F.R.D. 161, 164 (E.D. La. 2011) (permitting expert to rely on conclusions from forensic); *Monsanto Co. v. David*, 516 F.3d 1009, 1015–1016 (5th Cir. 2008) (finding that expert could rely upon a report prepared by someone else); *In re Vioxx Prod. Liab. Litig.*, No. MDL 1657, 2006 WL 6625144, at *1 (E.D. La., July 31, 2006).

[73]Def. Memo at 15-19.

[74]Exhibit 1, Parisian Report, para. 468.

[75]*See In re Nuvaring.,* 2013 WL 791835, at *3 (Dr. Parisian was found to be "qualified within the field of epidemiology and to analyze conclusions of other scientific experts and rely upon them when forming her own opinions," since Medical Officers in the FDA were often "required to analyze and rely upon specialized reports of experts in various scientific fields); *see also, In re Yasmin & Yaz*, 2011 WL 6302287 at *20 ("based upon Dr. Parisian's education and experience, including training in epidemiology while at the FDA, it would appear reasonable for Dr. Parisian to rely on epidemiological, hematological, and pharmacokinetic experts to support her opinions); *See, e.g., Doe v. Cutter Biological, Inc.,* 971 F.2d 375, 385 (9th Cir. 1992) ('The fact that the experts were not licensed hematologists does not mean that they were testifying beyond their area of expertise. Ordinarily, courts impose no requirement that an expert be a specialist in a given field, although there may be a requirement that he or she be of a certain profession, such as a doctor.'); *Dickenson v. Cardiac & Thoracic Surgery of E. Tenn.,* 388 F.3d 976, 978-79 (6th Cir. 2004); *United States v. Viglia,* 549 F.2d 335, 336 (5th Cir. 1977) (holding that a pediatrician who had degrees in medicine and pharmacology but no experience in treating patients in obesity had sufficient knowledge, training, and education to testify regarding drug's effect on obese persons))."

opinions and she would not be relying on her own assessment of diagnosis or causation.[76]

   **B.     Dr. Parisian is Qualified to Render Regulatory Opinions About the Adequacy of Xarelto's Labeling.**

   Dr. Parisian is qualified to testify as to the adequacy of Defendants' labeling notwithstanding Defendants' argument to the contrary.[77] Based on her education, training, and experience, she has been admitted by numerous courts to testify as to the labeling and marketing practices of a manufacturer.[78]

   In *Diet Drugs*,[79] the court held that expert witnesses may testify for the same purpose as Dr. Parisian will be asked to testify in the present case:

> [Plaintiffs' experts] are fully qualified to opine on the medical facts and science regarding the risks and benefits of the diet drugs in question and to compare that knowledge with what was provided in the text of labeling and warnings on the diet drugs in question. In other words, [plaintiffs' experts] are qualified to render an opinion as to the labels' completeness, accuracy, and – it follows from that – the extent to which any inaccuracies or omissions could either deprive a reader or mislead a reader of what the risks and benefits of the diet drugs in issue are or were at the time the labeling was published.

---

[76]Exhibit 4, Parisian dep. at 26:8-26:17.

[77]Def. Memo at 15-17.

[78]Dr. Parisian has been permitted to testify as to "regulatory causation" in other failure to warn pharmaceutical cases. Much like in this case, in *Beverly Meng v. Novartis Parm. Corp.* MID-L-7670-07-MT, Order (Middlesex County Superior Court, Aug. 8, 2012) attached as Exhibit 6; Defendants moved to preclude Dr. Parisian from offering any causation opinions. However, the court denied Defendants motion to preclude Dr. Parisian from offering testimony regarding regulatory causation and allowed Dr. Parisian to "testify on causation limited to FDA regulatory compliance." *Id.*  Additionally, Dr. Parisian has been qualified as an expert in labeling by many courts. Recent opinions include: *In re Mirena,* 169 F.Supp.3d 396 (S.D.N.Y. 2016).) at *209 (S.D.N.Y. Mar. 8, 2016); *Bryant v. Wyeth,* 2:04-cv-01706-TSZ, 2012 WL 12845655, *7-8 (W.D. Wa., Aug. 22, 2012) (Dr. Parisian permitted to opine based on her review of the existing scientific literature that a hormone replacement therapy drug label was inaccurate); ge, skill, experience, training, and education qualify her to offer testimony concerning FDA regulatory and labeling issues. Dr. Parisian's FDA and pharmaceutical consulting experience, as well as the knowledge gained through researching and authoring her book on FDA regulations, provide her with specialized knowledge that will assist the jury in this case."); *Barnes v. Orthofix Int'l NV,* 2:11-cv-00402-JCC, 2012 WL 1931224, * 5 (W.D. Wash., May 23, 2012).

[79]*In re Diet Drugs*, 2000 WL 876900, at * 11.

This exact issue with regard to Dr. Parisian's labeling opinions has arisen numerous times in the *Zometa* litigation. One court noted that all but one *Zometa* case has "uniformly allowed Dr. Parisian to testify about the FDA's requirements for labeling and the adequacy of Zometa warnings and labels due to her experience and expertise with the FDA."[80] Similarly, in *Paugh v. I-Flow Corp*, Dr. Parisian was allowed to testify regarding "the numerous opportunities I-Flow had to advise surgeons about the risk of chondrolysis, but that [Defendants] failed to do so."[81] Given Dr. Parisian's extensive regulatory experience and qualifications, she should be allowed to testify about the medical facts and science regarding the risks and benefits of Xarelto, and to compare that knowledge with what was provided within the Xarelto label.[82]

### C.   Dr. Parisian is Qualified to Render Opinions about Defendants' Monitoring and Clinical Trial Practices, As Well As Defendants' Failures to Adequately Identify and/or Report Adverse Events.

Defendants argue that Dr. Parisian may not render an opinion that under FDA regulations Defendants failed to investigate and document, and to provide truthful, accurate and full disclosure of adverse events in ROCKET including erroneous/discrepant INR readings, as well as information requested by the FDA, including in response to the FDA's March 2011 and January

---

[80]*Rowland*, 9 F. Supp. 3d at 562 ("With the exception of one case, Zometa courts have uniformly allowed Dr. Parisian to testify about the FDA's requirements for labeling and the adequacy of Zometa warnings and labels due to her experience and expertise with the FDA."); *see also Stambolian,* 2013 WL 6345566 at *29 ("With extensive experience in the field, Dr. Parisian is qualified to speak to the FDA's requirements and guidelines for labeling…); *Bartoli, supra* (holding that Dr. Parisian was qualified to testify as to labeling and warnings); *Lemons*, 849 F. Supp. 2d at 615 (finding that Dr. Parisian's testimony as to labeling is "reasoned, based on the context of the warnings, the content of the warnings, and on the consideration of alternative language."); *cf. Jones v. Novartis Pharm. Co*., *supra*.

[81]*Paugh v. I-Flow Corp*., 32D02-0802-CT9 (Hendricks, Indiana Superior Ct., Apr. 19, 2012) at *6 attached as Exhibit 7.

[82]*See also In re Mirena,* 169 F. Supp. 3d at 396 ("Contrary to Defendant's assertion, Dr. Parisian does not fail to use any methodology; her methodology is her training and experience in applying applicable regulations to medical devices.").

12, 2016 Information Request including the CoVance Recheck Program.[83] The Court should reject this challenge because Dr. Parisian is qualified to testify regarding Defendants' monitoring and safety practices in clinical trials.

In fact, Courts have allowed regulatory experts, including Dr. Parisian, to opine about a drug company's failures to comply with the regulatory requirements related to running and monitoring clinical trials, and identifying and reporting adverse events.[84] This Court should thus reject the Defendants' meritless challenge to Dr. Parisian's regulatory opinions.

## VII.   Dr. Parisian's Use Of Foreign Regulatory Information Is Proper.

Dr. Parisian is not offering any regulatory opinions regarding foreign regulatory agencies, their statutory requirements, or whether Defendants violated those requirements. As she testified at her deposition, she is not opining as a regulatory expert on foreign regulatory matters, but only refers to foreign regulatory events and materials to the extent such is relevant to the issue of *notice*; that is to say: *what Defendants knew about Xarelto*.[85] As stated in her Report:

> The United States regulatory discussion must also touch upon various interactions between Defendants and the European Union's European Medicines Agency (EMA) for XARELTO as it relates to sales in the United States. *The EMA is*

---

[83]Def. Memo at 17 citing Opinion 10 (Parisian Report at 12).

[84]*In re Mirena*, 169 F.Supp.3d at 481 ("Dr. Parisian may opine on the reasonableness of Bayer's conduct in monitoring and evaluating adverse events associated with Mirena based upon her experience at the FDA, how companies typically react to post-marketing adverse events, and relevant FDA regulations."); *Deutsch v. Novartis Pharm. Corp.*, 768 F.Supp.2d 420, 464 (E.D. N.Y. 2011) (denying Defendants motion to preclude Dr. Parisian from testifying about the monitoring and safety of the clinical trials and finding her qualified to render opinions with regard to Defendants failures in this regard); and surveillance of prescription drugs); *In re Fosamax.*, 645 F.Supp.2d at 190 ("The Court finds that Dr. Parisian is qualified based upon her experience as a Medical Officer at the FDA to offer testimony about regulatory requirements relating to the development, testing, marketing, and surveillance of prescription drugs.")(emphasis added)*; In re Yasmin & Yaz,* 2011 WL 6302287, at *16 (same); *see In re Tylenol*, 2016 WL 4039271, at *8; *In re Nuvaring Products Liab. Litig.,* 2013 WL 791835 (E.D. Mo., Mar. 4, 2013); *In re Gadolinium*, 2010 WL 1796334, at *60.

[85]Exhibit 4, Parisian dep. at 747:6-747:8 ("It's only notice as to what information was available and what was being discussed); 747:23 to 747:25 ("It was only for notice of information that was available to both companies at different times.

> *included to again provide corporate actions and notice to Defendants, and also to contrast Defendants' actions with different regulatory bodies in terms of FDA, again as related to United States physicians and the safety of their patients.*[86]

In other recent litigations, the Bayer defendants tried to prevent Dr. Parisian from testifying about the notice provided to them from foreign regulatory matters, and lost:

> Defendants further suggest that Dr. Parisian cannot testify about foreign regulatory matters because this testimony is beyond the scope of her expertise and is irrelevant. Plaintiff disputes this, arguing that Dr. Parisian may testify about foreign regulatory events because these events — which do not require Dr. Parisian to be an expert in foreign regulatory matters—are highly relevant to show what Bayer knew and what it could have, and should have done in the United States. The Court agrees with plaintiffs.

> Dr. Parisian can give opinions within her area of expertise about what she has reviewed in this case, including facts, i.e., foreign regulatory matters that have occurred, that are relevant to her opinions. *See Daubert*, 509 U.S. at 592 ("[A]n expert is permitted wide latitude to offer opinions, including those that are not based on first-hand knowledge or observation.")."[A]ny questions or problems concerning the expert's testimony may be thoroughly explored during cross-examination of the witness." *Gonzalez*, 933 F.2d at 429. Further, the Court finds that these opinions will not confuse the jury as the testimony at issue is more probative of the issues at bar and helpful, than it is prejudicial.[87]

Contrary to Defendants' argument, foreign labeling has been ruled admissible and Dr. Parisian may rely upon it for her testimony.[88]

---

[86]Exhibit 1, Parisian Report, para. 24 (*emphasis added*).

[87]*In re Yasmin & YAZ*, 2011 WL 6302287, at *21; *cf. In re Mirena* 169 F.Supp.3d at 396; *see also In re Tylenol,* 2016 WL 1569719, at *19 (noting it's possible for the plaintiff to offer evidence that foreign regulatory agencies raised concerns about acetaminophen dosing years before the decedent's death, to show notice and/or knowledge. A jury instruction can be given to ensure that jurors understand the limited nature of this evidence); *In re Gadolinium*, 2010 WL 1796334, at *17; *In re Levaquin,* 08-1943 JRT, Doc. No. 2277 at 14-15, 22, attached hereto as Exhibit 8.

[88]Additionally, Defendants clearly intend to misrepresent to this Court (as they have done in their Dosing and Monitoring motion) that "no **government agency** or medical association has concluded that monitoring should be used in the normal course of Xarelto therapy." (emphasis added). Dr. Parisian should not be precluded from explaining that Defendants' statements are unsupported as the use of PT (Neoplastin) to monitor the anticoagulant effect and risk of bleeding associated with Xarelto use has been recommended by various foreign organizations including the New Zealand Medicines and Medical Devices Safety

25

**VIII.  Dr. Parisian's Opinion That Information From Laboratory Tests Is Useful In Identifying Patients At An Increased Risk Of Bleeding From Xarelto Is Proper.**

Defendants argue that Dr. Parisian, a physician who previously prescribed anticoagulants to patients and used PT testing, is not qualified to render an opinion about what information would be helpful to prescribing physicians and patients relating to anticoagulants.[89] The Court should reject this meritless argument for the following reasons.

*First,* as a physician who previously prescribed anticoagulants to patients, Dr. Parisian is qualified to opine regarding what information would be useful to physicians when making their prescribing decisions, and especially as such issues relate to labeling from a regulatory perspective based on her immense experience at the FDA. During her deposition, Dr. Parisian testified that she has done PT tests in the past as a physician, and in her role as an expert she has been focused on the regulatory issues regarding what the company knew about their use of a PT test and the information, or lack thereof, in the label regarding the relationship between PT and bleeding risk.[90] It is well-settled that an expert may rely on their experience in offering expert opinions.[91]

---

Authority Health Canada, the British Committee for Standards in Haematology, and the "International Society on Thrombosis and Haemostasis. *See* the *Plaintiffs' Joint Response* and Exhibits attached thereto.

[89]*Id.* at 260:15-260:20.

[90]Exhibit 4, Parisian dep. at 24:19-23, 109:5-13.

[91]*In re Vioxx*, 401 F. Supp 2d at *580 (Expert witnesses are allowed to base their opinions on personal experiences provided that their opinions are confirmed by scientifically reliable data. *Cantrell v. GAF Corp.,* 999 F.2d 1007, 1014 (6th Cir.1993)"); *Southern Cement Co., Division of Martin–Marietta Corp. v. Sproul,* 378 F.2d 48, 49 (5th Cir. 1967) (noting that the fact that an expert's experience may not dovetail the issues presented in the case goes to weight, not admissibility)(quoting *Santana Marine Service, Inc. v. McHale,* 346 F.2d 147, 148 (5th Cir. 1965); *Reid v. Albemarle Corp.,* 207 F. Supp. 2d 499, 505 (M.D. La. 2001) (although an proposed expert may lack academic credentials to qualify as an expert, "it is possible that he may have gained enough expertise in practical work to be so qualified."); *Fox v. Dannenberg,* 906 F.2d 1253, 1256 (8th Cir. 1990) ("[A]n individual can qualify as an expert where he [or she] possesses sufficient knowledge gained from practical experience, even though he [or she] may lack academic qualifications in the particular field of expertise."); *Baldonado v. Wyeth,* No. 04-c-4312, 2012 WL 1802066, at *8 (N.D. Ill., May 17, 2012) (rejecting *Daubert* challenge to the reliability of the expert's opinion on the

*Second,* not only are Dr. Parisian's opinions based on her experience, but also her extensive review of clinical trial data demonstrating that there is variability in drug plasma concentration levels in patients taking Xarelto;[92]a relationship between Xarelto plasma concentration and levels of PT;[93]and a relationship between PT levels and the risk of bleeding.[94] This same opinion was expressed by the FDA, as discussed in the *FDA Summary Review* memorandum for the atrial fibrillation indication:

> The clinical pharmacology and clinical reviewers demonstrated that there is a linear correlation between rivaroxaban levels and prothrombin time (PT). They also demonstrated that there is also a correlation between PT and risk of bleeding. ***This applicant has not chosen to utilize this information*…**[I]nfrequent monitoring (perhaps at initiation and yearly thereafter) to assure appropriate dosing of drugs that prevent stroke and caused bleeding may improve outcomes and be acceptable to patients.[95]

*Third,* unlike Dr. Parisian, an average juror is not in a position to "adeptly assess" the regulatory requirements under 21 CFR §§ 201.57(f)(3) and (c)(6)(iii), which require manufacturers to: "identify any laboratory tests helpful in following the patient's response or in identifying possible adverse reactions." Dr. Parisian is well-qualified to do so and can explain from a regulatory standpoint that the Defendants failed to properly and adequately communicate about these important scientific findings to the medical community.

Thus, contrary to the Defendants' argument, such testimony is helpful to the jury under Rule 702(a) and at best is fodder for rigorous cross-examination at trial.

---

applicable standard of care, reasoning that the expert "may reliably draw on his vast experience in this area, and his expert knowledge of federal and industry regulations, to opine on the standard of care ).

[92]Exhibit 1, Parisian Report, at Section III.B.

[93]*Id.*, at Section III.F.

[94]*Id.,* at Section III.G.H.

[95]FDA *Summary Review* for NDA 202439, Deputy Division Director Decisional Memo, at 9 (Nov. 4, 2011) (emphasis added) attached as Exhibit 9.

**IX.     Plaintiffs Do Not Intend To Offer Dr. Parisian To Opine On Purported Safer Alternative Designs To Xarelto.**

Dr. Parisian is not going to testify that any alternative design of the chemical compound was safer than Xarelto (rivaroxaban). As stated above, however, Dr. Parisian will opine that Xarelto's label was inadequate because it failed to state, among other things, that PT (using Neoplastin) can be helpful in measuring the anticoagulant effect of Xarelto and bleeding risk under 21 CFR § 201.57. Any criticism of this testimony is the proper subject of cross-examination.

**X.     Dr. Parisian's Opinions Should Not Be Excluded As Unfairly Prejudicial, Confusing And Misleading To The Jury.**

Dr. Parisian's testimony should not be excluded under Rule 403.  Defendants' argument is vague, premature, and simply wrong. "[T]he application of Rule 403 must be cautious and sparing. Its major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect."[96]

Defendants rely on *Moore v. Ashland Chemical*[97] to argue that Dr.  Parisian's opinions should be excluded under Rule 403. However, *Moore* dictates the exact opposite result. In *Moore*, the Fifth Circuit ruled that trial court clearly abused its discretion in excluding the testimony the expert under Rule 403 explaining that:

> 'Unfair prejudice,' as used in Rule 403 does not exist simply because the evidence is adverse to the opposing party. Virtually all evidence is prejudicial or it is not material. There must be a danger of "unfair" prejudice in order for the discretion to exclude to arise....

---

[96]*United States v. Pace*, 10 F.3d 1106, 1116 (5th Cir. 1993); s*ee also Dollar v. Long Mfg. N.C., Inc.,* 561 F.2d 613, 618 (5th Cir. 1977), *cert. denied,* 435 U.S. 996 (1978).

[97]*Moore v. Ashland,* 126 F.3d 679, 692 (5th Cir. 1997).

Dr. Parisian's testimony simply does not meet the test under Rule 403. Thus, Defendants

motion should be denied.[98]

## CONCLUSION

For all the foregoing reasons, Defendants' motion to exclude the testimony of Dr. Parisian

should be denied.

Respectfully submitted,

Dated: February 27, 2017

*/s/ Leonard A. Davis*
Leonard A. Davis, Esq. (Bar No. 14190)
**HERMAN, HERMAN & KATZ, LLC**
820 O'Keefe Avenue
New Orleans, LA  70113
PH: (504) 581-4892
FAX: (504) 561-6024
Email:  ldavis@hhklawfirm.com

Gerald E. Meunier (Bar No. 9471)
**GAINSBURGH BENJAMIN DAVID MEUNIER & WARSHAUER, LLC**
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA  70163-2800
PH:  (504) 522-2304
FAX: (504) 528-9973
Email:  gmeunier@gainsben.com

***Plaintiffs' Liaison Counsel***

---

[98]*See Chiles v. Novartis Pharm. Corp.,* 923 F.Supp.2d 1330, 1333 (M.D. Fla. 2013) (rejecting a Rule 403 argument against Dr. Parisian as "vague and premature."); *Taylor v. Novartis Pharm. Corp.*, 06-61337-CIV, 2013 WL 5118945, at *10 (S.D. Fla., Apr. 22, 2013) (similar objection proffered against Dr. Parisian reserved until trial); *Dopson-Troutt v. Novartis Pharm. Corp.,* 8:06-CV-1708-T-24EAJ, 2013 WL 1344755, at *4 (M.D. Fla., Apr. 2, 2013) (Any other concerns Novartis has in regard to "irrelevant, unfairly prejudicial and confusing testimony" (category "k") can be addressed at trial or cured by way of cross-examination).

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on February 27, 2017, the foregoing pleading and its supporting memorandum of law were filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs and Defendants by operation of the court's electronic filing system and served on all other plaintiff counsel via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre- Trial Order No. 17.

/s/ Leonard A. Davis
**LEONARD A. DAVIS**