# EXHIBIT-3



Positive
As of: February 23, 2017 2:21 PM EST

# Lea v. Wyeth LLC

United States District Court for the Eastern District of Texas, Beaumont Division

October 6, 2011, Decided; October 6, 2011, Filed

NO. 1:03-CV-001339

**Reporter**
2011 U.S. Dist. LEXIS 158668 *

JEAN LEA v. WYETH LLC; PFIZER INC; PHARMACIA & UPJOHN COMPANY LLC; and PHARMACIA CORPORATION

**Prior History:** *Lea v. Wyeth LLC, 2011 U.S. Dist. LEXIS 155500 (E.D. Tex., Sept. 16, 2011)*

## Core Terms

proffer, proffered testimony, standard of care, pharmaceutical company, admissible, parties, breached, warnings, hormone, therapy, pharmaceutical, expert testimony, manufactured, studies, drugs, second prong, regulations, Notice, motive, district court, expert report, teleconference, requirements, documents, purported, labeling, marketed, reliable, prong

**Counsel:** [*1] For Vera Boyett, Plaintiff: Matthew Edward Lundy, LEAD ATTORNEY, Lundy, Lundy, Soileau & South, LLP, Lake Charles, LA USA; Natasha Doris Hanberry, Littlepage Booth, Houston, TX USA.

For Jean Lea, Plaintiff: Matthew Edward Lundy, LEAD ATTORNEY, Lundy, Lundy, Soileau & South, LLP, Lake Charles, LA USA; Natasha Doris Hanberry, LEAD ATTORNEY, Rainey Cawthon Booth, PRO HAC VICE, Zoe B Littlepage, Littlepage Booth, Houston, TX USA; Daniel J Thornburghm Debra Renee Baggett, Nathan C Bess, PRO HAC VICE, Bryan Frederick Aylstock, Aylstock Witkin Kreis & Overholtz, Pensacola, FL USA.

For Wyeth Pharmaceuticals, Inc., Wyeth Inc, Defendants: Caryl Lyn Pruitt, LEAD ATTORNEY, PRO HAC VICE, Mitchell Williams Selig Gates & Woodyard, Little Rock, AR USA; Kenneth Joseph Ferguson, LEAD ATTORNEY, Gordon & Rees LLP, Austin, TX USA; Bryon J Benevento, Dorsey & Whitney, Salt Lake City, UT USA; Catherine B Stevens, PRO HAC VICE, Skadden Arps Slate Meagher & Flom LLP - NYNY, New York, NY USA; F Lane Heard, III, PRO HAC VICE, Williams & Connolly - Washington, Washington, DC USA; Janelle Lauren Davis, John H Martin, Thompson & Knight - Dallas, Dallas, TX USA; Laura E DeSantos, Gordon & Rees LLP, Houston, TX USA; [*2] Michele A Roberts, PRO HAC VICE, Skadden Arps Slate Meagher & Flom LLP - Washington DC, Washington, DC USA; Nathan E Hoffman, PRO HAC VICE, Winston & Strawn - Chicago, Chicago, IL USA.

For Pharmacia & Upjohn Company, Defendant: Caryl Lyn Pruitt, LEAD ATTORNEY, PRO HAC VICE, Mitchell Williams Selig Gates & Woodyard, Little Rock, AR USA; F Lane Heard, III, PRO HAC VICE, Williams & Connolly - Washington, Washington, DC USA; Gail Maxine Brownfeld, Beirne Maynard & Parsons, Houston, TX USA; George B Murr, Beirne Maynard & Parsons, LLP, Houston, TX USA; Gregory S Meece, Thompson & Knight, Houston, TX USA; Janelle Lauren Davis, John H Martin, Thompson & Knight - Dallas, Dallas, TX USA; Kenneth Joseph Ferguson, Gordon & Rees LLP, Austin, TX USA; Laura E DeSantos, Gordon & Rees LLP, Houston, TX USA.

For Pharmacia Corporation, Pharmacia & Upjohn Company, Llc, Defendants: Caryl Lyn Pruitt, LEAD ATTORNEY, PRO HAC VICE, Mitchell Williams Selig Gates & Woodyard, Little Rock, AR USA; F Lane Heard, III, PRO HAC VICE, Williams & Connolly - Washington, Washington, DC USA; Gail Maxine Brownfeld, Beirne Maynard & Parsons, Houston, TX USA; George B Murr, Beirne Maynard & Parsons, LLP, Houston, TX USA; Gregory [*3] S Meece, Thompson & Knight, Houston, TX USA; Janelle Lauren Davis, John H Martin, Thompson & Knight - Dallas, Dallas, TX USA; Kenneth Joseph Ferguson, Gordon & Rees LLP, Austin, TX USA; Laura E DeSantos, Gordon & Rees LLP, Houston, TX USA; Michael R Klatt, Gordon & Rees, LLP, Austin, TX USA.

For Nick S Pomonis, Doctor, Defendant: F Lane Heard, III, PRO HAC VICE, Williams & Connolly - Washington, Washington, DC USA.

For Wyeth Llc, Defendant: Caryl Lyn Pruitt, LEAD ATTORNEY, PRO HAC VICE, Mitchell Williams Selig

Gates & Woodyard, Little Rock, AR USA; Adrienne D Gonzalez, PRO HAC VICE, Kaye Scholer - New York, New York, NY USA; Catherine B Stevens, PRO HAC VICE, Skadden Arps Slate Meagher & Flom LLP - NYNY, New York, NY USA; F Lane Heard, III, PRO HAC VICE, Williams & Connolly - Washington, Washington, DC USA; Gregory S Meece, Thompson & Knight, Houston, TX USA; Janelle Lauren Davis, John H Martin, Thompson & Knight - Dallas, Dallas, TX USA; John H Martin, Thompson & Knight - Dallas, Dallas, TX USA; Kenneth Joseph Ferguson, LEAD ATTORNEY, Gordon & Rees LLP, Austin, TX USA; Laura E DeSantos, Gordon & Rees LLP, Houston, TX USA; Michael R Klatt, Gordon & Rees, LLP, Austin, TX USA; Michele [*4] A Roberts, PRO HAC VICE, Skadden Arps Slate Meagher & Flom LLP - Washington DC, Washington, DC USA; Nathan E Hoffman, PRO HAC VICE, Winston & Strawn - Chicago, Chicago, IL USA.

**Judges:** Zack Hawthorn, United States Magistrate Judge.

**Opinion by:** Zack Hawthorn

## Opinion

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY OF DRS. PARISIAN, BLUME, AND AUSTIN

Pending is Defendants'"Motion to Exclude the Testimony of Drs. Parisian, Blume, and Austin" (Docket No. 69). For the reasons stated below, Defendants' motion should be granted in part and denied in part. Drs. Parisian and Blume may proffer testimony on the general regulatory requirements governing pharmaceutical manufacturers. The experts may also proffer their opinions that Defendants' warnings were inadequate based on what Defendant actually knew of the science of hormone therapy at the time their products were released and marketed. The experts may proffer their opinions that Defendants' warnings were inadequate based on what Defendants could have known about the science of hormone therapy.

The experts may not proffer testimony regarding the knowledge that Defendants should have had or the actions that Defendants should have taken. [*5] Likewise, the experts may not proffer their opinions that Defendants did not act as reasonable pharmaceutical companies or that Defendants breached the standard of care. Finally, Drs. Parisian and Blume may not proffer testimony regarding Defendants' intent and motive.

### I. Background

This case stems from Plaintiff Jean Lea's ingestion of certain drugs manufactured by Defendants Wyeth LLC (Wyeth), Pfizer Inc. (Pfizer), Pharmacia & Upjohn Company LLC and Pharmacia Corporation (collectively Upjohn).[1] Between February 1996 and December 1999, Plaintiff was prescribed Premarin, Provera, and Prempro as hormone therapy to combat menopausal symptoms. Wyeth manufactured Premarin and Prempro. Upjohn manufactured Provera. In 1999, Plaintiff was diagnosed with ductal carcinoma in situ (DCIS), a type of non-invasive breast cancer. Plaintiff alleges that the above drugs promoted this cancerous growth.

Plaintiff originally filed suit in the 260th Judicial District Court of Orange County, Texas. On October 28, 2003, Defendants removed the case to the Beaumont Division of the Eastern District of Texas. In February 2004, the Judicial Panel on Multidistrict Litigation ordered the case transferred to the Eastern District of Arkansas for coordinated and consolidated pretrial proceedings. The case remained before the transferee court until April 12, 2010, when it was conditionally remanded to the Eastern District of Texas and assigned to the Hon. Marcia A. Crone, United States District Judge. On July 1, 2011, the parties filed a series of *Daubert* motions (Docket Nos. 63, 65, 69, 70, 71, 72), which were referred to United States Magistrate Judge Zack Hawthorn on August 5, 2011 (Docket No. 103).

On September 22, 2011, a teleconference was held before the undersigned magistrate judge to clarify issues relating to the pending motion and to provide the parties with an additional opportunity to stipulate to areas of permissible testimony. The parties were unable to reach an agreement during the teleconference, so the parties were ordered [*7] to continue their discussion and provide the court with any stipulated areas of testimony by the following week. (Hr'g Tr. 17-18, Docket No. 135.) The parties were also ordered to file notices suggesting areas of additional testimony to which the parties were unable to reach an agreement. (*Id*.) On September 26, 2011, the parties filed their "Partial Stipulation" (Docket No. 133), and on September 28, 2011, the parties filed their notices regarding the suggested scope of additional testimony (Docket Nos. 136, 137).

### II. Legal Standard

---

[1] Both Wyeth and Upjohn were purchased by Pfizer. (Tr. Hr'g, 44, Docket No. 111.) On August 8, 2011, the parties filed their "Stipulation" (Docket No. 112), dismissing Pfizer with prejudice. Plaintiff's claims are still pending against Wyeth and Upjohn. For reasons of clarity and consistency, the court will [*6] refer to Defendants in the plural throughout this order.

The admission or exclusion of expert testimony is a matter within the discretion of the district court. *Kuhmo Tire Co. v. Carmichael, 526 U.S. 137, 152, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999)*; *Huss v. Gayden, 571 F.3d 442, 452 (5th Cir. 2009)*. *Rule 702 of the Federal Rules of Evidence* provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

*Fed. R. Evid. 702*; accord *Kuhmo Tire Co., 526 U.S. at 152*; *Daubert v. Merrel Dow Pharms., Inc., 509 U.S. 579, 588, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)*. The proponent [*8] of the proffered expert testimony "has the burden of establishing, by a preponderance of the evidence, that the pertinent admissibility requirements are met." *United States v. Fullwood, 342 F.3d 409, 412 (5th Cir. 2003)* (citing *Fed. R. Evid. 104(a)*).

The district court must first determine whether the proffered expert is qualified to testify because of his knowledge, skill, experience, training, or education. *United States v. Cooks, 589 F.3d 173, 179 (5th Cir. 2009)* (citing *Fed. R. Evid. 702*; *Wilson v. Woods, 163 F.3d 935, 937 (5th Cir. 1999))*. "[T]he expert must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth." *United States v. Hicks, 389 F.3d 514, 524 (5th Cir. 2004)* (quoting *United States v. Bourgeois, 950 F.2d 980, 987 (5th Cir. 1992)* (quoting *United States v. Johnson, 575 F.2d 1347, 1361 (5th Cir. 1978)))* (internal quotations omitted).

The district court must then determine whether the proffered expert's testimony is reliable. See *Kuhmo Tire Co., 526 U.S. at 152*. The court possesses considerable flexibility in assessing the reliability of expert testimony. *Id. at 141*; *Stolt Achievement, Ltd. v. Dredge B. E. Lindholm, 447 F.3d 360, 366 (5th Cir. 2006)*. The court should consider relevant factors, but is not required to analyze the *Daubert* factors in every case. *Stolt Achievement, Ltd, 447 F.3d at 366* (citing *Kuhmo Tire Co., 526 U.S. at 149*). The overarching goal "is to make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kuhmo Tire Co., 526 U.S. at 152*.

"The [c]ourt's role is that of a gatekeeper only, limited to determining admissibility, not credibility of the evidence." [*9] *Knox v. Ferrer*, No. 5:07-CV-6, 2008 WL 4411326, at *2 (S.D. Miss. Sept. 22, 2008) (citing *Pipitone v. Biomatrix, Inc., 288 F.3d 239, 244 (5th Cir. 2002))*. This role requires a court to make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert, 509 U.S. at 592-93*. The court should approach this task "with proper deference to the jury's role as the arbiter of disputes between conflicting opinions." *United States v. 14.38 Acres of Land, 80 F.3d 1074, 1077 (5th Cir. 1996)* (quoting *Viterbo v. Dow Chem Co., 826 F.2d 420, 422 (5th Cir. 1987))* (internal quotations omitted).

The court's assessment of admissibility is not intended to replace the adversarial system, which should highlight weak evidence. *Primrose Operating Co. v. Nat'l Am. Ins. Co., 382 F.3d 546, 562 (5th Cir. 2004)*. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert, 509 U.S. at 596*. "The *Daubert* analysis should not supplant trial on the merits." *Mathis v. Exxon Corp., 302 F.3d 448, 461 (5th Cir. 2002)* (citing *Pipitone, 288 F.3d at 250*).

Finally, the court must determine that the proffered expert testimony is relevant. See *Fed. R. Evid. 702* (stating that expert testimony is admissible only if it "will assist the trier of fact to understand the evidence or to determine a fact in issue."). Evidence is relevant if it "[has] any tendency to make the existence of [*10] any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Fed. R. Evid. 401*.

### III. Analysis

A. Proffered Testimony Regarding Defendants' Alleged Failure to Warn

*1. The parties' arguments*

Suzanne Parisian, M.D. and Cheryl Blume, Ph.D. are Plaintiff's labeling and liability experts.[2] At the teleconference held on September 22, 2011, the parties explained that the pending motion is primarily related to the experts' proffered

---

[2] Defendants' motion is moot to the extent that it seeks to exclude the testimony of Donald F. Austin, M.D., M.P.H. because Dr. Austin will not proffer an opinion on "a reasonable company's conduct." In the present case, Dr. Austin is only a general causation expert. (Pl.'s Resp. Defs.' Mot. Exclude 6.)

testimony on Defendants' alleged failure to warn.[3] (Hr'g Tr. 7, 10, Docket No. 135.) Plaintiff suggests that there are two prongs to this proffered testimony: (1) Defendants' warnings were inadequate based upon what Defendants actually knew of the science of hormone therapy at the time their drugs were released and marketed; and (2) Defendants' warnings were inadequate based on what Defendant could have known about the science of hormone therapy if they had done "adequate" testing. (Id. at 7.) Under the second prong, Drs. Parisian and Blume proffer their opinions regarding the knowledge that Defendants should have had and the actions that Defendants should have taken. Moreover, the experts opine that Defendants breached [*11] the standard of care by failing to act as reasonable pharmaceutical companies.

Defendants' motion focuses on the second prong of the proffered testimony. (Id. at 9-10.) During the teleconference, Defendants stated that they were unopposed to proffered testimony under the first prong. Defendants reaffirmed this position in their notice regarding proposed additional testimony (Notice 7-8, Docket No. 137), but they also indicated that they were opposed to any testimony suggesting that Defendants could have or should have known additional information about hormone therapy (Id.). The court construes [*12] this caveat as a mere reassertion of Defendants' challenge to the second prong of the proffered testimony. Accordingly, the court finds that the first prong is unopposed.

Defendants seek to exclude the second prong of the proffered testimony—what a reasonable pharmaceutical company would have done or what Defendants should have done or known—on the grounds that the experts' opinions lack a reliable underlying methodology. Defendants assert that the opinions are unreliable because there was no objective standard requiring Defendants to continue to test their drugs. For this reason, Defendants suggest that the experts' proffered testimony is nothing more than their personal views on what a reasonable pharmaceutical should have done. Dr. Parisian testified in her deposition that every pharmaceutical company decides the extent to which it tests its drugs based on its subjective judgment, not an industry standard. (Defs. Mot. Exclude, Ex. 13 571:15-572:10, Docket No. 69.) Likewise, Dr. Blume testified in her deposition that "there is no set standard. Every company has to do what is appropriate for their product." (Id. at Ex. 14 225:9-225:12.)

Defendants rely on the MDL court's opinion in [*13] In re Prempro Prods. Liab. Litig. (Ingram v. Wyeth, Inc.) to support their argument.[4] In that case, the court held that the proffered testimony of Drs. Parisian and Blume was not expert in nature because "Plaintiff is unable to point to the existence of a reasonable standard of care or a custom and practice established by either industry or governmental standards regarding Defendants' duty to test." *In re Prempro Prods. Liab. Litig. (Ingram v. Wyeth), No.4:03CV01507, 2010 U.S. Dist. LEXIS 142558, 2010 WL 5663003, at *2 (E.D. Ark Sept. 16, 2010)*. "Because Plaintiff cannot show some independent objective validation, [Drs. Parisian and Blume] should not be permitted to testify as experts; they simply would be providing their subjective beliefs about what could have been done." *2010 U.S. Dist. LEXIS 142558, [WL] at *3*. Accordingly, the court excluded the experts' proffered testimony on "what tests would have been appropriate" but admitted the experts' proffered testimony "about the types of studies available, their costs, and their trustworthiness." *2010 U.S. Dist. LEXIS 142558, [WL] at *3*.

Plaintiff argues that her experts rely on several written, objective standards to support their opinions, such as Defendants' own safety standards, FDA regulations and guidances, and the Pharmaceutical Research and Manufacturers of America Code (PhRMA Code). Plaintiff further argues that, under both Texas law and the Federal Rules of Evidence, her experts' opinions need not be based on objective standards if the experts sufficiently relate their experience to the facts of the case. Finally, Plaintiff asserts that the MDL order cited by Defendants was based on Arkansas law, which does not recognize industry standards as evidence supporting a negligence claim. In particular, the MDL court excluded the PhRMA Code because the plaintiff could not establish its admissibility under Arkansas law. [*15] See *2010 U.S. Dist. LEXIS 142558, [WL] at *2*.[5]

---

[3] The experts also proffer testimony regarding the general regulatory requirements governing pharmaceutical companies and testimony regarding Defendants' intent and motive. Defendants seek to exclude both areas of proffered testimony. The court addresses these additional areas of proffered testimony in its analysis below.

[4] The court notes that Defendants' motion states "[t]he MDL court considered this very question in *In re Prempro Prods. Liab. Litig. (Wilson v. Wyeth)*." (Defs.' Mot. Exclude 5, Docket No. 69) (citing *In re Prempro Prods. Liab. Litig. (Wilson v. Wyeth), No.3:05-CV000078-WRW, 2010 U.S. Dist. LEXIS 146455 (E.D. Ark. Sept. 16, 2010.)*) [*14] The order cited by Defendants is not available online. However, the Wilson order is identical to the one entered by Magistrate Judge Volpe in Ingram v. Wyeth, which is available online. See *In re Prempro Prods. Liab. Litig. (Ingram v. Wyeth), No.4:03CV01507, 2010 U.S. Dist. LEXIS 142558, 2010 WL 5663003, at *2 (E.D. Ark Sept. 16, 2010)*. (See Defs.' Mot. Exclude, Ex. 5, Docket No. 69.) Accordingly, the court will cite to *Ingram* rather than to *Wilson*.

[5] Plaintiff has repeatedly asserted that the MDL court permits testimony 5 as to what Defendants *could* have done, but has

Defendants reply that the MDL court's order was based on the Federal Rules of Evidence rather than state law. Additionally, Defendants admit that an expert may be qualified to proffer an opinion based on their experience alone, but argue that Plaintiff's experts have not sufficiently [*16] related their experiences to their conclusions, opinions, and the facts of the case. Finally, Defendants assert that the written materials relied on by Plaintiff's experts do not establish the standard of care proffered by the experts.

*2. Analysis*

The court, having considered the reports of Drs. Parisian and Blume, finds that the experts' opinions on what a reasonable pharmaceutical company would have done or what Defendants should have done are unsupported by sufficient analysis to be admissible. See *Fed. R. Evid. 702*; *Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997)* (holding that a court may exclude expert testimony when there is "too great an analytical gap between the data and the opinion proffered"); see also *Hines v. Wyeth, No. 2:04-0690, 2011 U.S. Dist. LEXIS 74011, 2011 WL 2680842, at *5-7 (S.D. W.Va. July 8, 2011)* (excluding Dr. Parisian's opinion on Defendants' failure to test because she failed to apply her expertise to the facts in her proffered testimony). In Dr. Parisian's expert report, she establishes a proffered standard of care for the promotion of pharmaceutical drugs. (Defs.' Mot. Exclude, Ex. 2 000016, Docket No. 69.) Dr. Parisian then proffers nine opinions describing the manner in which Defendants breached the purported standard of care. (Id. at 000016-37.) These opinions are supported by limited discussion. (See id.) [*17] The opinions reference appendices attached to her expert report, but the appendices do not discuss any grounds for her proffered opinions. (See id. at 000037-276.) Rather, the appendices focus on FDA practices relating to new drug applications and Defendants' internal documents. (See id. at 000037-276, Docket No. 69.) Accordingly, Dr. Parisian's expert report fails to provide a sufficient analytical basis for her proffered opinions. See *Fed. R. Evid. 702*; *Joiner, 522 U.S. at 146*.

Dr. Blume's expert report is similarly flawed. She opines that a reasonable pharmaceutical company would have assessed the breast cancer and cardiovascular risks associated with hormone therapy and provided those assessments in the product labeling, but does not identify any grounds for the conclusion that such conduct was necessary. (Id. at Ex. 3 0000298-314.) For example, the expert report contains sections entitled "Safety and Regulatory Overview" and "Regulatory Process for Labeling, Labeling Changes, and the Dissemination of New Safety Information," but no specific regulation is identified or analyzed in either section. (See id. at 000279-89.) In those sections, the expert's discussion of the purportedly relevant regulations is general and conclusory. (See id.)

For these reasons, the court finds [*18] that the lack of analysis in the opinions of Drs. Parisian and Blume precludes the experts from proffering the following testimony: (1) an opinion on what a reasonable pharmaceutical company would have done; (2) an opinion regarding what Defendants should have done or known; and (3) an opinion that Defendants breached the purported standard of care. See *Fed. R. Evid. 702*; *Joiner, 522 U.S. at 146*; see also *In re Trasylol Prods. Liab. Litig., No. 08-MD-1928, 2010 U.S. Dist. LEXIS 142228, 2010 WL 1489793, at *8-10 (S.D. Fl. Feb. 24, 2010)* (excluding the proffered testimony on the need for further investigation into the safety of Trasylol because the testimony was based on the experts'"own subjective believes and personal views and [did] not rest on knowledge as required by *Rule 702*.").

Additionally, the court finds that the proffered testimony on the reasonableness of Defendants' conduct is inadmissible because the testimony is irrelevant. See *Fed. R. Evid. 401*, *702*. The testimony will not assist the jury, which is quite capable of determining—by itself and without the assistance of expert testimony—what Defendants should have done or known and whether Defendants breached the standard of care. See, e.g., *In re Rezulin Prods. Liab. Litig., 309 F.Supp.2d 531, 549-50 (S.D.N.Y. 2004)* (excluding proffered testimony relating to a purported industry standard based on ethical obligations); see also *Alza Corp. v. Thompson, No. 13-07-00090-CV, 2010 Tex. App. LEXIS 2347, 2010 WL 1254610, at *28 (Tex. App.—Corpus Christi April 1, 2010)* [*19] ("[t]he determination regarding whether [the defendant] breached the standard of care applicable to a reasonable pharmaceutical company does not entail specialized knowledge or skill unique to a scientific discipline and beyond the knowledge and experience of the average jury."). The court will instruct the jury as to the proper standard of care. See, e.g.,Comm'n on

---

excluded testimony as to what Defendants *should* have done. (See, e.g., Notice 6-7, Docket No. 137.) However, the court notes that the MDL court opinion that purportedly supports Plaintiff's position, in fact, explicitly rejects Plaintiff's position. See *Ingram, 2010 U.S. Dist. LEXIS 142558, 2010 WL 5663003, at *2*. The opinion provides that the experts "*cannot be qualified as experts* simply to testify what they believe Defendants could have done versus what they should have done." *2010 U.S. Dist. LEXIS 142558, [WL] at *3* (emphasis added). The MDL court then granted Defendants' motion to exclude. Id. If the MDL court clarified this language in a subsequent order or opinion, Plaintiff should have provided such authority because the opinion, standing alone, and the supplemental authority provided by Plaintiff fail to demonstrate to this court that Plaintiff's position is supported by the MDL court.

Pattern Jury Charges, State Bar of Tex., *Texas Pattern Jury Charges: Malpractice* PJC 71.7 (2010) ("Negligence in Products Cases").

Even if the proffered testimony that "Defendants breached the standard of care" were relevant, it would still be inadmissible because the statement constitutes a legal conclusion and instructs the jury on what result to reach. See *Fed. R. Evid. 704* advisory committee note; *Owen v. Kerr-McGee Corp., 698 F.2d 236, 240 (5th Cir. 1983)*. Furthermore, allowing Plaintiff's experts to render their opinions that Defendants breached the standard of care, would only invite an endless stream of testimony by Defendants' experts that the standard of care was *not* breached. This process would waste the resources of the litigants, jurors, and court. See *Fed. R. Evid. 403*. Accordingly, Drs. Parisian and Blume may not proffer testimony on what a reasonable pharmaceutical company would have done, [*20] what Defendants should have done or known, and whether Defendants breached the purported standard of care.

Defendants argue that the court should also exclude any testimony regarding what Defendants "could have done" or "could have known" because the distinction between "could" and "should" is illusory. Defendants assert that the use of the word could implies a meaning of the word should. The court disagrees with Defendants and finds that the experts' proffered testimony on what Defendants could have done or known is admissible. The experts are qualified to proffer such opinions given their extensive backgrounds in pharmaceutical marketing and regulation. (See Defs.' Mot. Exclude Ex. 2 00005-06; Ex. 3 000278-79, Docket No. 69.) Dr. Parisian was a former medical officer at the FDA. (Defs.' Mot. Exclude, Ex. 2 00005-06, Docket No. 69.) Dr. Blume held several executive positions in various pharmaceutical companies over a period of twenty years. (Id. at Ex. 3 000278.)

Moreover, the proffered could-have testimony will assist the jury, which is unlikely to understand "the complex regulatory framework that informs the standard of care in the pharmaceutical industry." *Hines, 2011 U.S. Dist. LEXIS 74011, 2011 WL 2730908, at *3* (quoting *In re Fosamax Prods. Liab. Litig., 645 F.Supp.2d 164, 191 (S.D.N.Y. 2009))*. The jury is [*21] also unlikely to have knowledge of the types of studies that were available when Defendants' hormone therapy was released and marketed. In the event that such testimony implies that Defendants should have taken a different course of action or breached the standard of care, then Defendants will have an opportunity to convince the jury otherwise during cross-examination or through the direct examination of their own experts.

*3. Summary of admissible testimony*

The court acknowledges the practical difficulty that may result by distinguishing admissible testimony from inadmissible testimony on the basis of this "could-should" distinction. Courts throughout the country have struggled in their attempts to establish the line that separates the admissible testimony of Drs. Parisian and Blume from that which is inadmissible. See, e.g., *Kaufman v. Pfizer Pharm., Inc., No. 1:02-CV-22692, 2011 U.S. Dist. LEXIS 158213, [WL] at *10-20 (S.D. Fla. Aug. 4, 2011)* (Supplemental Authority, Ex. 2, Docket No. 131); *Hines, 2011 U.S. Dist. LEXIS 74011, 2011 WL 2680842, at *5-7*, clarified in *No. 2:04-0690, 2011 U.S. Dist. LEXIS 76280, 2011 WL 2730908*; *Torkie-Tork v. Wyeth, No.1:04cv945, 2010 U.S. Dist. LEXIS 121804, [WL] at *1-7 (E.D. Va. Nov. 17, 2010)* (Notice, Ex. 14, Docket No. 137). For this very reason, the court suggested during the teleconference held on September 22, 2011, [*22] that the parties stipulate to areas of admissible testimony. Having failed to reach such an agreement, the court has no choice but to issue an inartfully parsed order that offers the district court some assistance but may not conclusively resolve the pending controversy for purposes of trial.

In addition to the stipulated areas of admissible testimony (Docket No. 133), the court offers the following guidance. Drs. Parisian and Blume may proffer their opinions regarding the unopposed first prong of their testimony—Defendants' warnings were inadequate based upon what Defendants actually knew of the science of hormone therapy at the time their drugs were released and marketed. Likewise, the experts may proffer their opinions regarding the second prong of their testimony to the extent that the experts are able to limit their testimony to the information Defendants could have known and the actions Defendants could have taken. For example, Drs. Parisian and Blume may testify about the studies that were available and the results that those studies produced. The experts may also proffer opinions about whether those studies were feasible. Drs. Parisian and Blume may *not* proffer opinions about [*23] whether Defendants should have conducted such studies. Similarly, the experts may *not* proffer opinions about whether Defendants' warnings were inadequate because such studies were not conducted.

Finally, Plaintiff's experts may proffer testimony regarding the general regulatory requirements governing pharmaceutical manufacturers. Drs. Parisian and Blume may proffer opinions on the manner in which a drug company evaluates safety signals of a risk problem, the protocol for prescription drug labeling, the regulations governing pharmaceutical manufacturers, and Defendants' compliance with the statutory regulations.[6] The experts may also employ such testimony to

---

[6] Should Drs. Parisian and Blume become witnesses that merely read documents to the jury, as Defendants suggest, an objection should be

explain the regulatory context of a document or exhibit in evidence.[7]

B. Proffered Testimony Relating to Defendants' [*24] Intent and Motive

Both Drs. Parisian and Blume proffer opinions on Defendants' intent and motive based on their reading of Defendants' internal documents. Neither expert is qualified to offer their opinions on these matters. See *Fed R. Evid. 702*; *Cooks, 589 F.3d at 179*; *Hines, 2011 U.S. Dist. LEXIS 74011, 2011 WL 2680842, at \*7*. Dr. Parisian was a former medical officer at the FDA. (Defs.' Mot. Exclude, Ex. 2 00005-06, Docket No. 69.) Dr. Blume held several executive positions in various pharmaceutical companies over a period of twenty years. (Id. at Ex. 3 000278.) The experts' backgrounds do not provide them with knowledge of Defendants' state of mind or intent. See *Fed R. Evid. 702*; *Cooks, 589 F.3d at 179*; *Hines, 2011 U.S. Dist. LEXIS 74011, 2011 WL 2680842, at \*7*. Accordingly, Defendants' motion is granted to the extent that it seeks to exclude the experts' opinions on Defendants' intent and motive.

**IV. Conclusion**

For the reasons stated above, Defendants'"Motion to Exclude the Testimony of Drs. Parisian, Blume, and Austin" (Docket No. 69) is **GRANTED** in part and **DENIED** in part. Drs. Parisian and Blume may proffer their opinions regarding the first prong of their failure to warn testimony. The experts may proffer their opinions on what Defendants could have known or done with respect to the second prong of the proffered testimony. Additionally, the experts may proffer opinions [*25] regarding the general regulatory practices governing pharmaceutical companies. Finally, the experts may proffer testimony in accordance with the parties'"Partial Stipulation" (Docket No. 133).

The experts may not proffer testimony about what a reasonable pharmaceutical company would have done or what Defendants should have known or done. Furthermore, the experts may not proffer their opinions that Defendants breached the purported standard of care. Lastly, Drs. Parisian and Blume may not proffer opinions about Defendants' intent or motive.

SIGNED this 6th day of October, 2011.

/s/ Zack Hawthorn

Zack Hawthorn

United States Magistrate Judge

**End of Document**

---

lodged at trial that the documents speak for themselves.

[7] The experts may not use these documents to proffer opinions about information that Defendants should have known or actions that Defendants should have taken. In other words, such testimony is still subject to the could-should limitation.