# EXHIBIT-5

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| IN RE: ACTOS LITIGATION | ) | Case No. 11 L 010011 |
| | ) | |
| ---------------------------------------- | ) | |
| | ) | |
| APPLICABLE TO ALL | ) | |
| COOK COUNTY CASES | ) | |
| | ) | |
| ---------------------------------------- | ) | |
| | ) | |
| DIANE WHITLATCH, individually and | ) | |
| As Special Administrator for the Estate | ) | Case No. 12 L 6087 |
| Of WILLIAM M. WHITLATCH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| TAKEDA PHARMACEUTICALS   AMERICA, | ) | |
| INC., TAKEDA PHARMACEUTICALS U.S.A., | ) | |
| INC., f/k/a TAKEDA PHARMACEUTICALS | ) | |
| NORTH AMERICA, INC.; and TAKEDA | ) | |
| PHARMACEUTICAL COMPANY LIMITED, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This matter comes on the call on Takeda Pharmaceuticals America, Inc., Takeda Pharmaceuticals U.S.A., Inc., and Takeda Pharmaceutical Company Limited's (Collectively "Takeda" or "Defendants") Motions to Exclude Expert Testimony, the matter being fully briefed and the Court having the benefit of oral argument, it is hereby ordered that Takeda's motions are granted in part and denied in part, as more fully set forth below.

## I. Background

This is a products liability action. William Whitlatch was prescribed the drug Actos as treatment for Type II Diabetes. Mr. Whitlatch developed bladder cancer. He died in late 2006. Mr. Whitlatch's widow, Diane Whitlatch ("Plaintiff"), brought the present products liability suit against Takeda. On January 10, 2014, Takeda filed the pending motions to exclude expert testimony. Takeda seeks to exclude expert testimony from (1) Dr. Thomas Rashid; (2) Dr.

Martin Oleksiewicz; (3) Dr. Edwin A. M. Gale; (4) Dr. Randall Tackett; and (5) Dr. Suzanne Parisian. Plaintiff filed responses in opposition to each motion, and Takeda filed replies in support of each motion. A hearing on the motions was held on February 11 and 13, 2014.

## II. Analysis

Expert testimony is admissible only if it "will assist the trier of fact to understand the evidence or determine a fact in issue." Ill. R. Evid. 702. A witness may be qualified as an expert by "knowledge, skill, experience, training or education." *Id.*; *Snelson v. Kamm*, 204 Ill. 2d 1, 23 (2003). The proponent of expert testimony bears the burden of establishing the expert's qualifications. *Lombardo v. Reliance Elevator Co.*, 315 Ill. App. 3d 111, 123 (1st Dist. 2000)(quoting *People v. Jordan*, 103 Ill. 2d 192, 208 (1984)).

Moreover, the proponent of expert testimony must "lay an adequate foundation establishing that the information upon which the expert bases his opinion is reliable." *Martin v. Sally*, 341 Ill. App. 3d 308, 315 (2nd Dist. 2003). "An expert opinion is only as valid as the reasons for the opinion." *Aguilera v. Mount Sinai Hospital Medical Center,* 293 Ill. App. 3d 967, 974 (1st Dist. 1997). "If the basis of an expert's opinion includes so many varying or uncertain factors that he is required to guess or surmise to reach an opinion, the expert's opinion is too speculative to be reliable." *First Midwest Trust Co. v. Rogers*, 296 Ill. App. 3d 416, 427-28 (1998). Expert testimony amounting to nothing more than conclusory opinions, speculation or guesswork is inadmissible. *Friedman v. Safe Security Services, Inc.*, 328 Ill. App. 3d 37, 46 (1st Dist. 2002); *Dyback v. Weber*, 114 Ill. 2d 232, 244—45 (1986). With these principles in hand, the Court turns to Takeda's specific objections.

### A. Dr. Thomas Rashid

Takeda's first motion to exclude is directed at Dr. Thomas Rashid. Takeda argues that Dr. Rashid, Mr. Whitlatch's treating urologist, should be precluded from testifying that Mr. Whitlatch's bladder cancer was caused by Actos. Takeda argues that Dr. Rashid has no expertise with respect to Actos which would allow him to give this opinion. Takeda points out that Dr. Rashid was unable to offer a basis for the opinion during his discovery deposition.

Plaintiff argues that Dr. Rashid will not offer general causation opinions about Actos, but rather will opine that Actos caused Mr. Whitlatch's bladder cancer. Dr. Rashid testified that, based on his differential diagnosis, he ruled out all other possible causes of Mr. Whitlatch's bladder cancer. Plaintiff argues that a differential diagnosis determination by a doctor is an

acceptable method for offering expert medical causation testimony. Plaintiff relies on *Matuszak v. Cerniak*, 346 Ill. App. 3d 766 (3rd Dist. 2004).

Plaintiff's reliance on *Matuszak* puts the cart before the horse. Dr. Rashid must possess expertise in the area of medicine he wishes to opine in order to give differential diagnosis testimony. *See Northern Trust Co. v. Upjohn Co.*, 213 Ill. App. 3d 390, 406—07 (1st Dist. 1991). In *Matuszak*, the Court ruled that a doctor's testimony about a differential diagnosis was admissible despite the fact that the doctor did not rule out every possible cause of injury. 346 Ill. App. 3d at 773. In *Matuszak*, unlike this case, the expert's qualifications to offer the differential diagnosis opinion were not in question.

Although Dr. Rashid is a board certified urologist who performs bladder and kidney cancer surgery, he is not properly qualified to give expert testimony that Actos caused Mr. Whitlatch's bladder cancer. Dr. Rashid is unqualified to offer this testimony because he does not possess any special knowledge, education, training, or experience which would enable him to opine about the relationship, if any, between Actos and bladder cancer. Furthermore, Plaintiff's argument that Dr. Rashid educated himself about Actos and its relationship to human bladder cancer is belied by testimony he gave during his discovery deposition. Dr. Rashid testified that he researched Actos and bladder cancer "out of sheer curiosity." Dr. Rashid's research consisted of conducting a Google search and reading studies the names of which he could not recall during his deposition.

In addition, Dr. Rashid admitted that he is not an expert on Actos or the relationship between Actos and bladder cancer. Dr. Rashid testified "I didn't know I was going to be grilled on Actos" and "[h]onestly I am not an expert on Actos. I stated that 100 times during this deposition." This Court agrees with Dr. Rashid's self-assessment that he is not an expert on Actos and the relationship between Actos and bladder cancer. Accordingly, Takeda's motion is granted. Dr. Rashid will not be allowed to give any opinions on the topic of Actos or the relationship between Actos and bladder cancer.

### B. Dr. Martin Oleksiewicz

Takeda's next motion to exclude is directed at Dr. Martin Oleksiewicz. Takeda does not object to Dr. Oleksiewicz's disclosed opinions regarding the carcinogenetic effect of Actos in animals. However, later in his deposition, Dr. Oleksiewicz testified to a previously undisclosed

opinion, opining that Actos causes bladder cancer in humans. Dr. Takeda objects to Dr. Oleksiewicz's human causation opinion.

It is unclear to this Court what basis Dr. Oleksiewicz has for his opinion that Actos causes bladder cancer in humans. Takeda's motion to exclude this opinion is based on the premise that Dr. Oleksiewicz is opining that, because animal studies indicate Actos causes bladder cancer in rats, Actos causes bladder cancer in humans. The court has re-reviewed Dr. Oleksiewicz's 213(f)(3) disclosure and discovery deposition and is unable to locate where Dr. Oleksiewicz states a basis for his opinion that Actos causes bladder cancer in humans. Even assuming Takeda is correct in arguing that Dr. Oleksiewicz's testimony about the effect of Actos on animals is the basis for his opinion that Actos causes bladder cancer in humans, that basis is not sufficient.

An expert's opinion is only valid to the extent the underlying reasoning is valid. *Aguilera*, 293 Ill. App. 3d at 974. Dr. Oleksiewicz's opinion that Actos causes bladder cancer in humans is based on two analytical leaps: first, that because ragaglitazar causes bladder cancer in rats, Actos causes bladder cancer in rats; and second, that because Actos causes bladder cancer in rats, it causes bladder cancer in humans. "Extrapolations from animal studies to human beings generally are not considered reliable in the absence of a credible scientific explanation of why such extrapolation is warranted." *Siharath v. Sandoz Pharms. Corp.*, 131 F. Supp. 2d 1347, 1366 (D. Ga. 2001). In order for an expert's conclusion based on an animal study to be reliable, there must be a "scientifically valid link" between the animal study and the conclusion reached. *Id.*; *see also Soldo v. Sandoz Pharms. Corp.*, 244 F. Supp. 2d 434, 546 (W.D. Pa. 2003).

In *Siharath*, the judge rejected the plaintiffs' expert's causation opinions that Parlodel causes strokes and seizures in humans despite plaintiffs' "enormous mass of evidence" including animal studies, epidemiological studies, and citation to learned treatises. *Id.* at 1370—74. In *Siharath*, the plaintiffs' experts presented the Court with three animal studies. *Id.* at 1367. The Court ruled that the studies were insufficient because they did not prove that Parlodel causes strokes and seizures in humans. *Id.* Notably for the case *sub judice*, the *Siharath* Court based its ruling in part on the fact that the experts did not know how artery resistance in a dog's hind limbs compared to artery resistance in human hind limbs. *Id.* at 1368. In two of the studies, the experts admitted the studies either did not extrapolate to humans or failed to show that the drug caused stroke. *Id.*

Here, there is no scientific evidence or analysis supporting Dr. Oleksiewicz's opinion. In *Siharath*, the Court was able to at least analyze the results of various animal studies before making a ruling. Here, by contrast, Plaintiff asks this Court to take an analytical leap of faith that Actos causes bladder cancer in humans because pioglitazone is similar to other drugs that cause bladder cancer in rodents. Dr. Oleksiewicz has not provided this Court with any scientifically valid basis for this extrapolation. He does not cite epidemiological studies, nor does he cite to any case studies or learned treatises. The opinion is classic *ipse dixit*, and must therefore be excluded. Accordingly, Takeda's motion is granted. Dr. Oleksiewicz is precluded from offering testimony that Actos causes bladder cancer in humans.

### C. Dr. Edwin A. M. Gale

Takeda's next motion is directed at Dr. Edwin A. M. Gale. Takeda requests that Dr. Gale be precluded from testifying about (1) regulatory affairs; (2) the labeling and marketing of Actos; (3) the knowledge, motivation and intent of Takeda and its employees; (4) the understanding he believes physicians in general have of the risks and benefits of Actos; and (5) Takeda's legal and moral duties to patients and physicians. Takeda also seeks to preclude Dr. Gale from opining that Metformin would have been a better drug for Mr. Whitlatch than Actos. Lastly, Takeda requests that Plaintiff refrain from referring to Actos and similar drugs as "magic shotguns."

#### 1. Motion to Exclude Testimony About Regulatory Issues

Takeda first argues that regulatory opinions offered by Dr. Gale during his discovery deposition should be excluded.

##### i. Testimony Regarding FDA Standards and Regulations

Takeda argues that Dr. Gale is not qualified to offer opinions about the Food Drug and Cosmetic Act ("FDCA"), 21 U.S.C. § 301, *et seq.*, and its regulations. Takeda claims that Dr. Gale admitted in his discovery deposition that he is not an expert on FDA regulations. Plaintiff responds that Dr. Gale is an endocrinologist "with specialized drug safety, regulatory, and practical experience." Dr. Gale served in an advisory role to the Committee on Safety Medicines at the Medicines and Healthcare Products Regulatory Agency. He also served on a Special Advisory Group on Diabetes and Endocrinology at the European Medicines Agency ("EMA"). Plaintiff further argues that Dr. Gale will not opine about FDA regulatory affairs, but rather will opine about drug safety standards based on his experience at EMA.

Dr. Gale's experience at EMA and understanding of EMA regulations do not qualify him to testify about FDA regulations. At his discovery deposition, Dr. Gale testified that he is not an expert with respect to FDA regulations and the FDA regulatory process. Here, testimony about EMA regulations, except as they apply to Takeda's notice, if any, of the dangerousness of Actos, will not be before the jury. The relevant inquiry here is Takeda's communication with the FDA. Dr. Gale does not have expertise in the relevant FDA regulatory rules and procedures that will aid the trier of fact. Accordingly, Takeda's motion is granted. Dr. Gale cannot testify about regulatory affairs in the FDA, and Plaintiff shall not introduce testimony from Dr. Gale that certain data should have been given to the FDA.

*ii. Testimony Regarding Safety Signals*

Takeda next argues that Dr. Gale should be precluded from testifying that Takeda unduly delayed responding to "safety signals" concerning Actos. Takeda argues that Dr. Gale is unqualified to offer such testimony. Takeda points out that Dr. Gale was unable to define the term "safety signal" and did not review all of the data Takeda had before it when making decisions regarding Actos. Plaintiff responds that Dr. Gale has experience in epidemiology and pharmacoepidemiology and should therefore be allowed to use his definition of "safety signal."

In *In re Gadolinium-Based Contrast Agents Prods. Liab. Litig.*, No. 1:08 GD 50000, 2010 U.S. Dist. LEXIS 122797 (N.D. Ohio June 18, 2010), the court precluded an expert from offering safety signal testimony where the expert had not reviewed all of the drug manufacturer's available information. *Id.* at *41. Here, Dr. Gale does not have sufficient foundation to give opinions that Takeda unduly delayed responding to Actos safety signals. Although Dr. Gale has training and experience working with the EMA in England, he is unfamiliar with regulatory procedures in the United States. If Dr. Gale wants to use defined FDA regulatory terms such as "safety signal," he should at a minimum be able to provide a definition of the term used by the FDA or Council for International Organization of Medical Science ("CIOMS"). Moreover, Dr. Gale did not review information relating to Takeda's handling of Actos adverse events and other information relevant to Takeda's response to Actos "safety signals." For these reasons, Dr. Gale lacks sufficient foundation to offer opinions regarding Takeda's handling of Actos "safety signals." Accordingly, Takeda's motion is granted. Dr. Gale is precluded from giving the specific opinion that Takeda had an unduly delayed response to Actos "safety signals."

*iii. Testimony Regarding Actos' Labeling and Marketing*

6

Takeda next argues that Dr. Gale should be precluded from testifying about Actos' label and marketing. Takeda claims that Dr. Gale is not qualified to give opinions on these topics. Plaintiff replies that Dr. Gale is a doctor who prescribed Actos.

A review of Dr. Gales Rule 213(f)(3) disclosure and discovery deposition reveals no basis to find that Dr. Gale is qualified to testify about Actos' label or marketing. Dr. Gale does not have any knowledge of FDA regulations, nor does he know how the FDA labeling process works. The fact that Dr. Gale prescribed Actos and reviewed an Actos label the night before his deposition does not make Dr. Gale an expert on drug labeling or marketing. Accordingly, Takeda's motion is granted.

### iv. Testimony Regarding Takeda's Knowledge, Motives or Intent

Takeda next argues that Dr. Gale should be precluded from testifying about Takeda's knowledge, intent or motives with respect to the marketing of Actos. In her reply, Plaintiff stated that these opinions were withdrawn. Accordingly, Takeda's motion is denied as moot.

### v. Testimony Regarding What Other Physicians Thought About Actos

Takeda next argues that Dr. Gale should be precluded from offering testimony setting forth whether unnamed doctors would have been adequately apprised of the risks associated with Actos based on its label. Further, Takeda argues that Dr. Gale should be precluded from testifying as to his belief why patients dropped out of the Erdmann study. The Erdmann study was a follow-up study to the PROactive study. Plaintiff responds that Dr. Gale's unique perspective on the risks and benefits of Actos, gained as a prescribing physician and also through his interactions and discussions with other doctors, allows him to give the challenged testimony.

Dr. Gale will be precluded from testifying about how he thinks other physicians perceived Actos. This testimony is pure speculation, which is improper and inadmissible. *Dyback*, 114 Ill. 2d at 244—45. For the same reason, Dr. Gale may not testify about why he thinks patients dropped out of the Erdmann study. These opinions are pure speculation. Accordingly, Takeda's motion is granted.

### vi. Testimony Regarding Takeda's 'Duty' as a Pharmaceutical Manufacturer

Takeda next argues that Dr. Gale should be precluded from offering testimony about Takeda's "duty" as a pharmaceutical manufacture. Plaintiff does not object. Accordingly, Takeda's motion is granted.

### 2. Testimony Regarding Whether Mr. Whitlatch Should Have Taken Metformin

7

Takeda next argues that Dr. Gale should be precluded from testifying that Metformin would have been a better diabetes treatment for Mr. Whitlatch. Takeda argues that Dr. Gale lacks foundation to offer this testimony because he did not review Mr. Whitlatch's medical records. Plaintiff responds that Dr. Gale was adequately informed about Mr. Whitlatch's medical history because Plaintiff's counsel gave Dr. Gale a summary of Mr. Whitlatch's medical history.

At the time of oral argument, Plaintiff did not have the summary. It has since been provided to the Court. The summary includes three pages of typed notes that were prepared by Plaintiff's counsel. No medical records were attached to the exhibit given to Dr. Gale.

In forming an expert opinion, an expert may rely on materials "reasonably relied upon by experts in the particular field…." Ill. R. Evid. 703. Here, Plaintiff has not, and obviously cannot, convince the Court that doctors reasonably rely on notes prepared by attorneys when deciding whether to prescribe a certain medication to a patient. Therefore, because Dr. Gale did not review Mr. Whitlatch's medical records, Dr. Gale lacks adequate foundation to opine whether Metformin would have been an appropriate substitute diabetes treatment. Accordingly, Takeda's motion is granted.

### 3. Testimony Referring to Actos and Similar Drugs as "Magic Shotguns"

Takeda next argues that Dr. Gale should be precluded from characterizing Actos as a "magic shotgun." Takeda argues that this characterization violates Rule 403. Plaintiff replies that witnesses are entitled to draw analogies.

During his discovery deposition, Dr. Gale attempted to clarify the difference between "standard" diabetes treatments on one hand and Actos and its class of drugs on the other. Dr. Gale explained that standard treatments inhibit a specific interaction, while Actos and similar drugs "promote and provoke" a chain reaction. Dr. Gale analogized standard drugs to bullets and Actos and similar drugs as "magic shotguns."

Rule 403 prohibits the introduction of otherwise relevant evidence when, *inter alia*, the evidence's probative value is substantially outweighed by the risk of undue prejudice, confusion of issues, or misleading the jury. Ill. R. Evid. 403. Here, Dr. Gale will be precluded from using the "magic shotgun" analogy because it poses a substantial risk of undue prejudice and that it will confuse the jury on an important scientific aspect of this case. First, both standard diabetes medications and Actos are compared to firearms. That dilutes the strength of the analogy. Second, the analogy may create in the minds of the jurors a mental association between Actos

8

and shotguns. Because the dangerousness of Actos is directly at issue in this trial, testimony which risks causing the jury to associate Actos with something as dangerous as a shotgun presents a very real possibility of prejudice. Moreover, because Dr. Gale will still be permitted to explain the difference between standard diabetes treatments and Actos, albeit without the magic shotgun analogy, the probative value of this testimony does not outweigh the substantial risks of undue prejudice and jury confusion. Accordingly, Takeda's motion is granted.

### D. Dr. Randall Tackett

Takeda's next motion is directed at Dr. Randall Tackett. Specifically, Takeda requests this Court bar Dr. Tackett from testifying (1) that Actos caused Mr. Whitlatch's bladder cancer; (2) that Takeda marketed Actos based on its PPAR Alpha activity; and (3) that Takeda did not fulfill its obligations and responsibilities to provide an adequate label for Actos.

#### 1. Testimony that Actos Caused Mr. Whitlatch's Bladder Cancer

Takeda first argues that Dr. Tackett should be precluded from opining that Mr. Whitlatch's bladder cancer was caused by Actos. Plaintiff does not object. Accordingly, Takeda's motion is granted.

#### 2. Testimony that Takeda Marketed Actos Based on Its PPAR Alpha Activity

Takeda next argues that Dr. Tackett should be precluded from testifying about how Takeda marketed Actos because this opinion will not assist the trier of fact. Takeda also objects to allowing Dr. Tackett to read from internal Takeda documents in court. Plaintiff responds that Dr. Tackett is a Professor and Director of Clinical Research Trials Program, Regulatory Affairs Graduate Program, at the University of Georgia College of Pharmacy. Plaintiff further argues that Dr. Tackett's opinion that Takeda marketed Actos as a PPAR Alpha will assist the trier of fact because the subject matter is not within the general knowledge of a juror.

The manner in which a drug manufacturer markets a drug is not within the knowledge of a juror. Similarly, the significance of PPAR activity to a drug's functionality is also not within the knowledge of a juror. Therefore, expert testimony about the marketing of Actos based on its PPAR activity would assist the trier of fact and is thus admissible. Accordingly, Takeda's motion to preclude Dr. Tackett from opining about how Takeda marketed Actos based on its PPAR activity is denied.

As to Takeda's objection to Dr. Tackett reading from documents, once a document is in evidence, the document may be published in any manner allowed by the Court. This includes

displaying the document electronically or reading from it.  If a document is not in evidence, an expert may testify to its contents for the limited purpose of explaining the basis of his or her opinion if the document is of the type reasonably relied on by experts in the field. Ill. R. Evid. 703; *Wilson v. Clark*, 84 Ill. 2d 186, 193—94 (1981). Before testimony proffered pursuant to *Wilson v. Clark* is presented to the jury, the Court, upon request, will instruct the jury with Illinois Pattern Instruction 2.04. The instruction will inform the jury how to assess *Wilson v. Clark* material. *See* IPI 2.04. Inasmuch as *Wilson v. Clark* material is not admitted into evidence, such material may not be published or displayed to the jury. Based on the foregoing, Takeda's motion to preclude Dr. Tackett from testifying that Takeda marketed Actos based on its PPAR activity is denied.

### 3. Testimony Regarding Takeda's Obligations as a Drug Manufacturer

Takeda next argues that Dr. Tackett should be precluded from testifying that Takeda met its obligations to provide an adequate label for Actos. Takeda claims that such testimony amounts to a legal conclusion, which is inadmissible. Plaintiff denies that this testimony is a legal conclusion.

A review of Dr. Tackett's discovery deposition does not support Takeda's claim that Dr. Tackett is giving legal conclusions. Dr. Tackett is giving expert opinion from a pharmacological perspective as to what should be required on the Actos label. Experts may offer opinions embracing ultimate issues. *Zavala v. Powermatic, Inc.*, 167 Ill. 2d 542, 545 (1995). The jurors will be instructed that they may accept or reject expert testimony. *See* IPI 3.08.  Accordingly Takeda's motion is denied.

### E. Dr. Suzanne Parisian

Takeda's last motion is directed at Dr. Suzanne Parisian.

### 1. Motion to Exclude Dr. Parisian's Testimony in Its Entirety

Takeda first argues that Dr. Parisian's testimony should be excluded in its entirety because she is not qualified to give regulatory opinions. Takeda submits that Dr. Parisian is a "professional witness" who "takes a collection of facts, imputes motive and knowledge, and draws unsupported conclusions unrelated to any regulatory expertise." Plaintiff responds by arguing that Dr. Parisian is qualified to testify as a regulatory, pharmacovigilance, marketing, labeling, diabetes, and PPAR expert based on her vast experience.

Dr. Parisian is sufficiently qualified to withstand Takeda's general challenge to her testimony. Dr. Parisian has three degrees, including a Medical Doctorate she received from the University of South Florida in 1978. Dr. Parisian's work experience includes regulatory work. Dr. Parisian was a commissioned officer in the United States Health Services at the FDA. Dr. Parisian was at the FDA for four years. While at the FDA, her primary duties included reviewing FDA premarket applications, post-market clinical trial design, and identifying staff and office issues. Dr. Parisian worked primarily with medical devices while at the FDA. Dr. Parisian testified in her discovery deposition that she was "the FDA's alternative medicine person" and accordingly was "versed in drugs, devices, and biologics" and on at least one occasion, investigated a drug safety issue in conjunction with her work in the Office of Device Evaluation. Furthermore, Dr. Parisian testified that the regulations governing advertising and promotion of drugs and medical devices were the same. In addition, Dr. Parisian testified that she supported the Office of Health Affairs by assisting the compliance office with clinical evaluations of product labeling.

Although Dr. Parisian's regulatory experience at the FDA is with medical devices, she does have some hands-on familiarity with the FDA's approval and regulation of drugs. Thus, Dr. Parisian is qualified to testify as an FDA regulatory expert. Accordingly, Takeda's motion to exclude Dr. Parisian's testimony in its entirety is denied.

### i. Testimony Regarding Takeda and the FDA's Knowledge, Motives, and State of Mind

Takeda argues that Dr. Parisian should be barred from offering testimony regarding the FDA and Takeda's knowledge, intent, or thoughts. Takeda argues it is improper for experts to opine on matters of knowledge, intent, or motivation. In response, Plaintiff seemingly reargues the threshold issue of Dr. Parisian's qualifications as a regulatory expert.

Juries resolve questions of intent. *People v. Cisewski*, 118 Ill. 2d 163, 174 (1987). For this reason, courts have held that it is improper for expert testimony to offer opinions about an individual's' state of mind or intent. *See In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 547 (S.D. N.Y. 2004). Dr. Parisian was precluded from offering testimony regarding the state of mind of the FDA and a drug manufacturer in *In re Fosamax* for precisely this reason. 645 F. Supp. 2d 164, 192 (S.D. N.Y. 2009).

Takeda's motion is granted in part. Dr. Parisian may not testify about what she believes Takeda or the FDA thought or knew. Dr. Parisian may testify about any documentary exhibits

which on their face establish Takeda or the FDA's knowledge or intent and upon which Dr. Parisian relied in forming her opinion, so long as a proper foundation is laid.

### ii. Testimony Regarding FDA Violations

Takeda next argues that Dr. Parisian should be precluded from offering conclusory positions and legal conclusions regarding Takeda's compliance with the FDCA and regulations. Takeda argues that expert testimony regarding legal conclusions is generally inadmissible and that various portions of Dr. Parisian's deposition testimony are nothing more than conclusory opinion and legal conclusions. Plaintiff responds Dr. Parisian is "informing the jury of FDA regulations and standards of care and offering her expert opinion on whether defendants were in compliance."

It is difficult for the Court to discern what Dr. Parisian will testify about because Plaintiff's expert disclosures are deficient. "For each controlled expert witness, the party must identify: (i) the subject matter on which the witness will testify; (ii) the conclusions and opinions of the witness and the bases therefor; (iii) the qualifications of the witness; and (iv) any reports prepared by the witness about the case." Ill. Sup. Ct. R. 213(f)(3).

Here, Plaintiff's response to Takeda's Rule 213 Interrogatory does not list Dr. Parisian's opinions and basis for her opinions. Given the confusing nature of Dr. Parisian's testimony, in order to forestall any delay during trial such confusion may cause, the Court requires Plaintiff's counsel to submit a proper 213(f)(3) disclosure for Dr. Parisian listing the opinions she will offer at trial and her basis for each opinion. The submission may be generated based upon only previously filed documents or completed discovery depositions. Upon submission, if Takeda has any specific objections, the Court will rule prior to trial.

Expert testimony as to legal conclusions will not be allowed. "Expert testimony as to legal conclusions that will determine the outcome of the case is inadmissible." *Todd W. Musburger, Ltd. V. Meier*, 394 Ill. App. 3d 781, 800 (1st Dist. 2009)(quoting *Good Shepard Manor Foundation, Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003)). Dr. Parisian will be precluded from offering legal conclusions. Accordingly, Takeda's motion is granted in part and denied in part, subject to renewal after Plaintiff has submitted a supplemented 213(f) disclosure.

### iii. Testimony Regarding Personal or Moral Opinions

Takeda next argues Dr. Parisian should be precluded from offering personal or moral opinions. Plaintiff does not object. Accordingly, Takeda's motion is granted.

2. Motion to Preclude on the Basis that Certain Testimony Exceeds Dr. Parisian's Qualifications

Takeda next argues that Dr. Parisian is unqualified to offer specific opinions. Takeda argues that Dr. Parisian's qualifications are not specific to the topics upon which she will offer testimony. The specific topics upon which Takeda claims Dr. Parisian is unqualified to testify are: (1) the PPAR alpha/gamma affinity of Actos; (2) the treatment of diabetes; (3) the adequacy of Takeda's pharmacovigilance activities; (4) Takeda's marketing, promotion, and labeling of Actos; and (5) the relevance of foreign regulatory events.

*i. Actos PPAR Alpha/Gamma Affinity*

Takeda asserts that Dr. Parisian is unqualified to offer testimony about the PPAR affinity of Actos. Plaintiff does not argue that Dr. Parisian is an expert with regard to the PPAR affinity of Actos but nonetheless claims she can discuss the PPAR affinity of Actos.

The party offering the expert has the burden of establishing the expert's scientific, technical, or other specialized knowledge. *Lombardo*, 315 Ill. App. 3d at 123. Here, Plaintiff does not offer any facts or evidence tending to show that Dr. Parisian is qualified by reason of knowledge, experience, skill, or education, to testify about the PPAR affinity of Actos. In fact, during her discovery deposition, Dr. Parisian testified "I'm not the person who's the PPAR expert" and "I don't believe I would be the person who would expound on the medical literature on PPARs." The Court accepts Dr. Parisian's assessment of her expert qualifications. Accordingly, Takeda's motion is granted.

*ii. Diabetes Treatment*

Takeda next argues that Dr. Parisian should be precluded from testifying about the treatment of diabetes. Plaintiff does not object. Accordingly, Takeda's motion is granted.

*iii. Takeda's Pharmacovigilance Activities*

Takeda next argues that Dr. Parisian is not qualified to testify about pharmacovigilance or the quality of Takeda's pharmacovigilance department. Takeda claims that because Dr. Parisian never worked in the FDA's pharmacovigilance department, or the pharmacovigilance department of any drug manufacturer, she lacks the experiential expertise to opine on pharmacovigilance. Takeda also claims that Dr. Parisian has no basis to opine about Takeda's lack of safety regulations because she failed to support her opinion with any statute, guideline, or document.

13

Plaintiff argues Dr. Parisian is qualified based on her education, training, and experience working at the FDA. Plaintiff cites to numerous court orders in which similar testimony was admitted. For its part, Takeda cites to numerous court orders in which similar expert pharmacovigilance testimony was precluded.

At a minimum, for a witness to give expert pharmacovigilance opinions, the witness must be familiar with a drug company's safety procedures and understand a drug company's reporting obligations with respect to the relevant regulatory agency—here, the FDA. Given Dr. Parisian's experience at the FDA and her review of Takeda's internal procedures as discussed in her discovery deposition, Dr. Parisian is qualified to give expert opinions about Takeda's pharmacovigilance activities.

However, it is again unclear what those specific opinions will be. Accordingly, Plaintiff's counsel shall furnish to the Court an Illinois Supreme Court Rule 213(f)(3) disclosure listing Dr. Parisian's pharmacovigilance opinions and her basis for each opinion. Again, the submission may be based only on previously disclosed documents and discovery depositions. Accordingly, Takeda's motion is denied, subject to renewal after Plaintiff has submitted a supplemented 213(f) disclosure.

### iv. Takeda's Marketing and Labeling of Actos

Takeda next argues that Dr. Parisian should be precluded from offering opinions regarding Takeda's marketing and labeling of Actos. Based on Dr. Parisian's discovery deposition testimony cited above, Takeda's motion is denied. Dr. Parisian may offer expert testimony about Actos' label. Dr. Parisian may also testify about the marketing of Actos. However, such opinions and the basis for them must be set forth prior to trial in a proper 213(f) disclosure, and the opinions must have some basis separate from Dr. Parisian's personal preferences for how drugs should be labeled and marketed.

### v. Foreign Regulatory Matters

Takeda next argues that Dr. Parisian should be precluded from offering testimony about foreign regulatory events. Takeda argues that testimony about regulatory actions by the EMA taken with respect to Takeda and Actos would be unduly prejudicial and is irrelevant. Plaintiff argues Dr. Parisian will merely rely on communications between Takeda and EMA for the purpose of showing that Takeda had notice as early as 1999 that Actos causes bladder cancer.

14

Admitting evidence of foreign regulatory actions taken with respect to Takeda's European affiliates presents numerous problems. Evidence of foreign regulatory events presents the risk of undue prejudice. *See Cooper v. Takeda Pharmaceuticals, Inc., et al.*, No. JCCP 4696, at \*17 (Ca. Super. Ct. February 11, 2014); *In re Seroquel Prods. Liab. Litig.*, 601 F. Supp. 2d 1313, 1318 (M.D. Fla. 2009). As the Court in *Seroquel* explained, admitting evidence regarding foreign regulatory actions without taking time to provide context for each decision risks making the jury "more inclined to abdicate its responsibilities and defer to the negative decisions" of the foreign regulator. *Id.* In order to provide the necessary context for the jury to evaluate the foreign regulatory evidence, the Court would need to conduct a mini-trial "with respect to the reasons for why foreign regulatory agencies may have taken action against Takeda with regard to the manufacture and marketing of Actos." *Cooper*, No. JCCP 4696 at \* 17. Such a mini-trial would "confuse the jury and waste everyone's time." *Seroquel*, 601 F. Supp. 2d at 1318.

Evidence is inadmissible when its "probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Ill. R. Evid. 403. Accordingly, evidence of foreign regulatory action, when offered to show that Takeda was or was not in compliance with applicable federal or Illinois law, will not be allowed. However, Plaintiff is not precluded from offering such evidence for the purpose of showing that Takeda knew of or had notice of the carcinogenicity of Actos during the time relevant to this action.

### 3. Motion to Exclude Testimony that Takeda Withheld Information from the FDA

Lastly, Takeda argues that Dr. Parisian should be precluded from offering testimony that Takeda withheld information related to Actos and bladder cancer from the FDA because such testimony is "contrary to law." Takeda begins by arguing "a purported expert cannot offer testimony that is contrary to law." Takeda relies on *Rogers v. Envirodyne Industries, Inc.*, 214 Ill. App. 3d 1025 (1st Dist. 1991) for that proposition. Dr. Parisian's testimony is contrary to law, Takeda argues, because evidence that Takeda withheld information from the FDA is preempted under *Buckman v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001). In response, Plaintiff argues that she has not brought a fraud-on-the-FDA claim, and therefore *Buckman* does not apply. In addition, Plaintiff argues that Dr. Parisian's testimony is relevant to the issue of whether Takeda breached a duty of care to Plaintiff.

15

In *Buckman*, the plaintiffs brought a "fraud-on-the-FDA" claim alleging that the defendant's concealment of information from the FDA during the approval process of an orthopedic device was the but-for cause of injury. *Id.* at 341. The Supreme Court held that the claim was preempted. The Court began by ruling the usual presumption against preemption did not apply because "[p]olicing fraud against federal agencies is hardly a field which the States have traditionally occupied." *Id.* at 347 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). The Court noted that the FDCA empowers the FDA to police fraud and that the FDA deploys its enforcement powers to "achieve a somewhat delicate balance of statutory objectives." *Id.* at 348. Forcing FDA applicants to comply with the FDCA's rules and regulations "in the shadow of 50 states' tort regimes" would place burdens on applicants neither foreseen nor intended by Congress. *Id.* As such, the claim conflicted with the FDCA and was preempted. *Id.* at 350.

In the present case, Takeda conceded at the hearing on its motion for summary judgment that Plaintiff has not brought a fraud-on-the-FDA claim. That fact, however, is not dispositive because *Buckman* nonetheless informs the admissibility analysis. In *Bouchard v. American Home products Corp.* 213 F. Supp. 2d 802 (W.D. Oh. 2002), the Court explained that evidence will be excluded under *Buckman* when it is relevant only to a fraud-on-the-FDA claim. *Id.* at 812. Evidence the FDA was misled or defrauded may be admissible if it is relevant to a non-preempted claim. *Id.* The issue, therefore, is whether Dr. Parisian's testimony regarding Takeda's disclosures—and non-disclosures—to the FDA are relevant for a purpose other than proving a fraud-on-the-FDA claim.

As stated above, in Illinois evidence is relevant when it has any tendency to make a fact at issue in the case more or less likely. Ill. R. Evid. 401. All relevant evidence is admissible. Ill. R. Evid. 402. This Court finds two bases for finding Dr. Parisian's testimony relevant. First, the testimony is relevant to Plaintiff's negligence claim. Second, the testimony is relevant to Takeda's argument that it complied with the FDCA and regulations.

First, the Court agrees with Plaintiff that the testimony is relevant to whether Takeda breached its duties: (1) to not market a defective and unreasonably dangerous product; (2) to not conceal factual matters needed by consumers and the medical community to make informed decisions about the safety of Actos; and (3) to provide an adequate warning about the risks of Actos. Although Takeda's liability cannot be premised on a failure to disclose information to the

FDA, evidence that it concealed information from the FDA, the only entity which could legally penalize it for such fraud, is probative of whether Takeda withheld information from other parties to whom it owed a duty of care.

Other courts have deemed similar evidence relevant on a similar basis. In *Globetti v. Sandoz Pharmaceuticals Corp.*, No. CV98-TMP-2649-S, 2001 U.S. Dist. LEXIS 2391 (S.D. Al. Mar. 5, 2001), the plaintiff brought claims for misrepresentation, suppression, negligence, and inadequate warning. *Id.* at *3. The Court denied the pharmaceutical defendant's motion in limine to bar evidence that it concealed information from the FDA, holding that "such evidence may be relevant to showing the defendant's knowledge relating to the adequacy of the warning or the truth of information represented to or concealed from plaintiff or her physician." *Id.* at *8. Similarly, in *Kittleson v. Sandoz Pharmaceuticals Corp.*, No. No. 98-2277 JMR/FLN, 2001 U.S. Dist. LEXIS 25990 (D. Minn. Sept. 20, 2001), a federal magistrate recommended that defendant's motion for summary judgment on plaintiff's fraud and failure to warn claims be denied. Although plaintiff's claims relied on the defendant's concealment of information from the FDA, the magistrate ruled that *Buckman* did not apply because the duties which the alleged fraud pertained to all arose under state law. *Id.* at *6, 11.

Second, the Court finds that this evidence is relevant to rebut evidence and argument by Takeda that it was not negligent because it complied with the FDCA and regulations. In *George v. Ford Motor Company*, No. 03 Civ. 7643, 2007 U.S. Dist. LEXIS 61453 (S.D. N.Y. Aug. 17, 2007), plaintiff brought suit against an automobile manufacturer, alleging that his car had a sudden acceleration problem. *Id.* at *18. The defendant sought to exclude evidence that it withheld information from federal agencies, and plaintiff sought to exclude studies conducted by federal agencies. Both motions were denied. As to the concealment of information, the Court held that such evidence was "relevant to the probative value of the government reports." *Id.* at *21. So here, evidence that Takeda withheld information from the FDA may be relevant to the probative value of evidence and argument Takeda will present regarding its compliance with the FDCA.

Furthermore, fairness requires that such evidence be admitted. As stated above, Dr. Parisian's testimony may be relevant to refute evidence and argument by Takeda that it was not negligent. No party to this litigation will be permitted to present a theory of the case while simultaneously precluding the opposing side from presenting rebuttal argument and evidence. As

Judge Freeman explained in *Cooper*, "It would not be fair to permit Takeda to introduce evidence it complied with all FDA regulations in the approval of Actos, but for Plaintiffs to be precluded from showing that Takeda did *not* comply with FDA regulations …." No. JCCP 4696 at 24; *see also George*, 2007 U.S. Dist. LEXIS 61453 at *21—22 ("[d]efendant may not insist simultaneously upon the admission of federal reports and studies, and upon the exclusion of evidence, if such exists, that the defendant prejudiced the outcome of such studies by withholding information critical to their success."). Accordingly, Takeda's motion is denied.

### III. Conclusion

For the foregoing reasons, Takeda's Motions to Exclude Expert Testimony are granted in part and denied in part.

ENTERED:

ENTERED
JUDGE DEBORAH MARY DOOLING-1591
MAR 13 2014
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

Deborah Mary Dooling
Circuit Court Judge
Law Division