UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE ELDON E. FALLON |
| Joseph J. Boudreaux, Jr., et al. v. Janssen et al. Case No. 2:14-cv-02720 | MAGISTRATE NORTH |
| Joseph Orr, Jr., et al. v. Janssen Research & Development, LLC et al. Case No. 2:15-cv-03708 | |

### DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO PRECLUDE SPECULATIVE EXPERT TESTIMONY ABOUT POTENTIAL OUTCOMES FROM OTHER ANTICOAGULANTS

Plaintiffs' Motion misconstrues the relevant and reliable testimony of Drs. Vanessa Piazza, M.D.; Lionel A. Branch, Jr., M.D.; and James William Smith, M.D., and should be denied for numerous reasons.

Under the Louisiana Product Liability Act ("LPLA"), it is Plaintiffs' burden to prove, with reliable evidence, that there is a safer alternative design that was "capable of preventing" their alleged injuries. La Rev. Stat. Ann. § 9:2800.56. Presumably to that end, Plaintiffs have pursued a broad theory that Xarelto® is not as safe as other anticoagulant medicines, and yet they seek now to exclude, through the present motion, the highly relevant and reliable case specific opinion testimony (1) that there is no evidence that a different medicine would have prevented Joseph Boudreaux, Jr. or Sharyn Orr's alleged injuries (Drs. Piazza, Branch and Smith), and (2) that Mr. Boudreaux had underlying health conditions that predisposed him to bleeding regardless of the medicine used (Dr. Smith).

On cross-examination, Plaintiffs' own experts agreed with the defense experts[1] as to Mr. Boudreaux:

> Q. . . . My question is really very specific. Can you say to a reasonable agree of medical certainty that Mr. Boudreaux would not have bled had he been on another anticoagulant?
>
> THE WITNESS: So again, I . . . I cannot comment on whether he may or may not have bled on any other . . . [d]rug.

Leissinger Dep. 178:8-21 (Dec. 8, 2016) ("Lessinger Boudreaux Dep.") (Exh. A). So too, as to Mrs. Orr:

> Q. So you could not say to a reasonable degree of medical certainty that Mrs. Orr's hemorrhage would have been avoided or that her outcome would have been any different on Pradaxa or Eliquis rather than Xarelto, could you?
>
> A. I could not. No.

Liechty Dep. 377:9-14 (Dec. 3, 2016) (Exh. B). This testimony confirms the opinions of Drs. Piazza, Branch, and Smith that a bleeding event could not be ruled out had Mr. Boudreaux or Ms. Orr used a different medicine – opinion testimony that is highly relevant and necessary to rebut Plaintiffs' general contention (required to discharge their burden under the LPLA) that other anticoagulants would have been safer alternatives to Xarelto.

Dr. Smith's further case-specific opinion that Mr. Boudreaux had "ongoing chronic" bleeding due to the likely presence of arteriovascular malformation ("AVM") and would likely have experienced bleeding on another anticoagulant medicine is likewise relevant and reliable. These opinions are based on Dr. Smith's review of Mr. Boudreaux's test results performed by his treating physicians, as well as other findings consistent with an ongoing bleeding event. For these and the reasons set forth below, Plaintiffs' Motion should be denied.

---

[1] Plaintiffs filed a similar motion on February 10, 2017, making similar arguments, addressed to defense experts Dr. Scott Doniol, Colleen Johnson, Marc Kahn, Clement Einsworth and William Peacock. Defendants will oppose the other motions in a separate opposition to be filed under the deadlines in CMO 2D on March 6, 2017.

## ARGUMENT

I. **Defendants are entitled to rebut to Plaintiffs' contention, required to discharge their burden under the LPLA that other anticoagulant medicines are safer than Xarelto**

As already noted, under the LPLA, Plaintiffs have the burden to prove, with reliable evidence, that there is a safer alternative design that was capable of preventing their alleged injuries. La Rev. Stat. Ann. § 9:2800.56. To that end, in pursuing their claims, Plaintiffs' experts have testified that Xarelto patients are at a "significantly increased" risk of bleeding "as compared to other NOAC agents" (Liechty Rpt. at 8-9 (Exh. C); Rinder Rpt. at 5-6 (Exh. D)) and have "consistently have worse outcomes" than other NOACS and warfarin, (Cerri Rpt. at 1-2 (Exh. E)), and that other NOACs and warfarin "were associated with a lower risk" of bleeding. (Liechty Rpt. at 8-9; *see also* Rinder Rpt. at 3 ("Rivaroxaban is the least effective and least safe of all NOACs."); Leissinger Rpt. at 16 (Exh. F) ("In addition to Xarelto's inferior performance with respect to bleeding when compared to warfarin in the U.S. patients of ROCKET, there is also emerging data demonstrating potentially inferior performance when compared to other NOACs.").

As explained in Defendants' Joint Motion for Summary Judgment as to Plaintiffs' Design-Defect Claims under the Louisiana Product Liability Act, "alternative methods of treatment are not alternative designs" because they are options already available to treating physicians and each medicine inherently has a different chemical composition, mechanism of action, and design. *Hornbeck v. Danek Med., Inc.*. No. 99-30966, 2000 WL 1028981, at * 1 (5th Cir. July 5, 2000); *see also Robertson v. AstraZeneca Pharms.*, LP, No. 15-438, 2015 WL 5823326, at *4 (E.D. La. Oct. 6, 2015) ("[T]he existence of alternate products does not demonstrate the existence of a specific alternative design."); *In re Propulsid Prods. Liab. Litig.*, No. MDL 1355, 2003 WL 367739, at *3 (Fallon J.) (holding that plaintiff had "failed to prove

3

the existence of an alternative design capable of preventing her damage" because expert testimony "show[ing] that there were alternative or different methods for treating her symptoms . . . is not sufficient to prove an alternative design" under the LPLA) (citing *Theriot v. Danek Med. Inc.*, 168 F.3d 253, 256 (5th Cir. 1999)).

Despite the limitations under the LPLA, in an effort to discharge their statutorily imposed burden, Plaintiffs have pursued a general theory – i.e., that other anticoagulant medicines are safer than Xarelto – that is clearly intended to imply that use of another medicine would have resulted in a better outcome for Mr. Boudreaux and Ms. Orr. Yet, when asked – in particular – whether another anticoagulant would have avoided the alleged injuries to Mr. Boudreaux and Ms. Orr, Plaintiffs' experts concede, as they must, that they cannot "rule out" that Mr. Boudreaux and Mrs. Orr would have experienced a bleeding event on another medicine. Leissinger Dep. 178:8-21 (Dec. 8, 2016) (Exh. F); *see also* Liechty Dep. 377:9-14 (Exh. G).

As explained below, the testimony of Drs. Branch, Piazza, and Smith – that all anticoagulants carry an increased risk of bleeding, and that it cannot be shown that Plaintiffs' injuries would have been avoided on a different medicine – is relevant and reliable.

    **A.**    **Dr. Piazza's and Dr. Branch's opinions that all anticoagulants carry a risk of bleeding and it cannot be ruled out that Mr. Boudreaux and Ms. Orr's would have experienced alleged injuries on a different medicine are relevant and admissible**

Dr. Piazza is a Board Certified Emergency Medicine Physician with over fifteen years of experience (Piazza Orr Rep. at 1 (Exh. G)) and has treated many patients who have experienced gastrointestinal ("GI"), intracranial, and other bleeding events on anticoagulant medicines. Piazza Dep. 30:6-9, 108:15-19 (Dec. 13, 2016) ("Piazza Boudreaux Dep.") (Exh. H); Piazza Dep. 16:4-19, 24:10-12 (Dec. 13, 2016) ("Piazza Orr Dep.") (Exh. I). She relied on her "background, education, training and clinical experience, as well as the peer-reviewed medical

4

literature in reaching" all of her opinions. Piazza Orr Rep. at 3; Piazza Boudreaux Rep. at 3 (Exh. J). As a result of her experience and review of literature, Dr. Piazza has concluded what is undisputed: (1) that all anticoagulants carry a risk of bleeding (Piazza Boudreaux Dep. 47:3-7, 141:18-142:2, 150:18-20, 165:21-166:2); (2) "there is no reliable evidence to suggest that use of a different NOAC would have avoided [Mrs. Orr's] ICH [Intra-cranial hemorrhage];" (3) "[t]here is no way to rule out that Mrs. Orr would have experienced the same ICH and the same outcome if she was taking a different anticoagulant, such as warfarin or another NOAC;" and (4) "[t]here is no way to rule out that Mr. Boudreaux would have experienced the same GI bleed if he was taking a different anticoagulant, such as warfarin or another NOAC." Piazza Orr Rpt. at 18; Piazza Boudreaux Rpt. at 16.

Similarly, Dr. Branch, a neurologist with more than fifteen years of experience (Branch Rep. at 1-2 (Exh. K)) has treated patients using anticoagulants and has prescribed anticoagulants, including Xarelto, Pradaxa, and Eliquis and treated patients who experienced bleeding events. Branch Dep. 87:25-88:5, 92:6-9, 102:12-22 (Dec. 9, 2016) (Exh. L). Based on his review of the literature, Mrs. Orr's medical records, the Plaintiff Fact Sheets and other evidence, Dr. Branch opines that "every anticoagulant increases a patient's risk of serious internal bleeding" (Branch Rpt. at 8) and that "I agree with Mrs. Orr's doctors who stated that it is impossible to say that Mrs. Orr would have avoided her ICH or had a better outcome if she had taken a different anticoagulant." *Id.* at 17.[2]

Both Drs. Piazza and Branch are highly qualified physicians who have extensive experience with anticoagulant medicines and have rendered reliable opinions – which Plaintiffs' own experts do not dispute – that there is no evidence to rule out that Mr. Boudreaux and Orr

---

[2] It is undisputed that it was medically necessary for both Mr. Boudreaux and Mrs. Orr to use an anticoagulant medicine to reduce the risk of stroke or another thrombotic evident due to their underlying atrial fibrillation. Cerri Dep. 133:6-8 (Nov. 28, 2016) (Exh. M) (as to Mrs. Orr); Leissinger Dep. 71:24-72:5 (as to Mr. Boudreaux).

5

would have experienced a bleeding event on another medicine. Accordingly, the opinions of Drs. Piazza and Branch are clearly relevant and reliable based on Plaintiffs' theory of liability.

> **B.  Dr. Smith's opinions that Mr. Boudreaux likely would have experienced a bleeding event on another medicine are relevant and reliable**

In seeking to exclude Dr. Smith's testimony, Plaintiffs misconstrue his opinions, education, training, and experience. Dr. Smith is a gastroenterologist with more than thirty years of experience. Smith Rep. at 2 (Exh. N); Smith Dep. 30:21-22 (Dec. 14, 2016) (Exh. O) ("treats patients almost on a weekly basis that are on NOACs"). Dr. Smith's opinion that Mr. Boudreaux had a "chronic ongoing" bleed and would have had a GI bleed if he was using another anticoagulant is based on his review of medical records, including test results performed during treatment of Mr. Boudreaux. Smith Dep. 22:13-23:21, 24:25-26:15, 120:16-121:11, 125:22-126:11. Dr. Smith's opinions are based on Mr. Boudreaux's low hemoglobin levels and iron deficiency (*id.* 41:9-42:1, 44:17-21), and the fact that even after Mr. Boudreaux stopped using Xarelto, his test results remained at a level that indicated a chronic bleeding event:

> [W]hen one looks at the course of events for two years after the Xarelto has been stopped and how he's still anemic, I think with -- I think with probability he was having occult bleeding before. And I think he continued to have occult bleeding in the years to come, most likely from a arteriovascular malformation, a AVM, of the GI tract.

*Id.* at 48:9-16.

He further testified that AVM would be the most likely cause of GI bleeding of the nature and length experienced by Mr. Boudreaux. *Id.* at 48:17-25. Thus, contrary to the assertion by Plaintiffs, Dr. Smith's opinion is not based on his subjective "feelings" or unsupported speculation.

Plaintiffs' reliance on *Washington v. Armstrong World Industries, Inc.* to support exclusion of Dr. Smith's testimony is misplaced. In *Washington*, the plaintiff alleged that her

6

husband's colon cancer resulted from his exposure to asbestos. 839 F.2d 1121, 1122 (5th Cir. 1988). The defendants filed a motion for summary judgment based on testimony of three of the defendants' treating doctors who affirmatively testified that there was no evidence of asbestos fibers in any of the tissue that was examined and there was no evidence of asbestos exposure during any treatment of the plaintiff's husband. *Id.* The plaintiff submitted testimony from another doctor, who never examined her husband, and who based his findings on the possibility that had another test been done, then such a test would have found proof of exposure to asbestos. *Id.* The district court concluded this testimony was "pure speculation and unreliable" because it relied on possible tests that could have been done "rather than specific findings or evaluations of test results that were available," and excluded the testimony. *Id.*

In contrast, Dr. Smith's opinions are based on his extensive review of Mr. Boudreaux's medical history. Dr. Smith's review of the medical records, symptoms and risk profile for Mr. Boudreaux supports the opinions that Mr. Boudreaux was predisposed to a bleeding event that is likely due to AVM, and therefore he likely would have had a GI bleed on any anticoagulant. *See, e.g.,* Smith Dep. 119:8-121:11. Plaintiffs' reliance on *Sweeney v. Chertoff*, 178 F. App'x 354, 355 (5th Cir. 2006), also does not result in a different conclusion. *Sweeney* is not a products liability case, but instead is a case brought under the Privacy Act. *Id.* at 355. The opinions in *Sweeny* were not based on underlying records or evidence but on "a hypothetical counterfactual situation" not supported by the record. *Id.* at 357-58. Therefore, *Sweeney*'s holding is inapplicable to the case at hand.[3]

---

[3] Similarly, Plaintiffs' reliance on *United States v. Settle*, 267 F. App'x 395 (5th Cir. 2008), is a without merit. *Settle* was a criminal action, and the defendant sought to present evidence of third-party guilt. It was in that context that the Fifth Circuit stated that the criminal defendant had to "demonstrate[] a nexus between the third party and the crime charged." *Id.* at 398.

7

## II. The opinions of Defendants' experts are highly relevant and exclusion would result in substantial prejudice

Particularly in light of the LPLA's plain terms, which charges Plaintiffs with the burden of proving a safer alternative that was capable of preventing their alleged injuries, the opinions of Drs. Piazza, Branch, and Smith are highly probative, and any perceived prejudice is minimal. Accordingly, Plaintiffs' request to exclude these opinions under Rule 403 should be denied. If Plaintiffs are permitted to pursue a theory under the LPLA based on the assertion that other anticoagulant medicines are safer alternatives, Defendants are entitled to rebut those assertions by showing that Plaintiffs cannot rule out that Mr. Boudreaux and Mrs. Orr would have experienced a bleeding event on a different medicine. The exclusion of evidence under Rule 403 is limited to circumstances where the probative value of the evidence is outweighed by the undue prejudice. The fact that Plaintiffs cannot rule out a bleeding event on another medicine and that there are alternative explanations for Mr. Boudreaux and Ms. Orr's bleeding events are highly relevant to the issues in these cases. Any potential prejudice perceived by Plaintiffs does not outweigh the probative value of this highly relevant evidence.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion should be denied.

Respectfully submitted,

DRINKER BIDDLE & REATH LLP

By: /s/ *Susan M. Sharko*
Susan M. Sharko
Drinker Biddle & Reath LLP
600 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
susan.sharko@dbr.com

ARNOLD & PORTER KAYE SCHOLER LLP

By: /s/ *William Hoffman*
William Hoffman
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
william.hoffman@apks.com

Rodney M. Hudson  
DRINKER BIDDLE & REATH LLP  
50 Fremont Street, 20th Floor  
San Francisco, CA 94105-2235  
Telephone: (415) 591-7500  
Rodney.hudson@dbr.com  

Chanda A. Miller  
Drinker Biddle & Reath LLP  
One Logan Square, Suite 2000  
Philadelphia, PA 19103-6996  
Telephone: (215) 988-2500  
Chanda.Miller@dbr.com  

IRWIN FRITCHIE URQUHART & MOORE LLC  

By: /s/ *James B. Irwin*  
James B. Irwin  
Kim E. Moore  
Irwin Fritchie Urquhart & Moore LLC  
400 Poydras Street, Suite 2700  
New Orleans, LA 70130  
Telephone: (504) 310-2100  
jirwin@irwinllc.com  

*Attorneys for Defendants Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC, and Janssen Ortho LLC, and Johnson & Johnson*

Andrew K. Solow  
Steven Glickstein  
ARNOLD & PORTER KAYE SCHOLER LLP  
250 West 55th Street  
New York, New York 10019-9710  
Telephone: (212) 836-8485  
andrew.solow@apks.com  
steven.glickstein@apks.com  

BRADLEY ARANT BOULT CUMMINGS LLP  

By: /s/ *Kevin C. Newsom*  
Kevin C. Newsom  
Lindsey C Boney IV  
BRADLEY ARANT BOULT CUMMINGS LLP  
One Federal Place, 1819 Fifth Avenue North  
Birmingham, AL 35203-2119  
Telephone: (205) 521-8803  
knewsom@bradley.com  

CHAFFE MCCALL L.L.P.  

By: /s/ *John F. Olinde*  
John F. Olinde  
Chaffe McCall L.L.P.  
1100 Poydras Street, Suite 2300  
New Orleans, LA 70163  
Telephone: (504) 585-7241  
olinde@chaffe.com  

*Attorneys for Bayer HealthCare Pharmaceuticals Inc. and Bayer Pharma AG*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 27, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs and Defendants by operation of the court's electronic filing system and served on all other plaintiff counsel via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre-Trial Order No. 17.

/s/ James B. Irwin
**James B. Irwin**