# EXHIBIT H

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

```
 1              UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF LOUISIANA
 2

 3

     IN RE:   XARELTO            )    MDL No.:  2592
 4   (RIVAROXABAN) PRODUCTS      )    Section:  L
     LIABILITY LITIGATION        )    Judge Eldon E. Fallon
 5                               )    Mag. Judge North
                                 )
 6                               )
                                 )
 7   JOSEPH BOUDREAUX            )    No. 2:14-cv-02720
                                 )
 8

 9

10       PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

11

12

13           Videotaped deposition of VANESSA M. PIAZZA,

14   M.D., taken on Tuesday, December 13, 2016, in the

15   offices of Chaffe McCall, 1100 Poydras Street, Suite

16   2300, New Orleans, Louisiana 70163, commencing at

17   9:17 a.m.

18

19

20

21

     Reported by:
22   RITA DEROUEN
     CERTIFIED COURT REPORTER
23   REGISTERED PROFESSIONAL REPORTER

24

25
```

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

1                          I N D E X

2                                                            Page

3    Caption                                                    1

4    Appearances                                             3, 4

5    Agreement of Counsel                                       5

6    Reporter's Certificate                                   200

7

8                       E X A M I N A T I O N

9    MR. HONNOLD                                                7

10

                         E X H I B I T S

11

12   Exhibit No. 1                                             37
         (Highlights of Prescribing Information
13       and Full Prescribing Information,
         Reference ID: 3353958)
14

     Exhibit No. 2                                            113
15       (Piazza Invoices)

16   Exhibit No. 3                                            116
         (Expert Report for Vanessa Piazza, M.D.,
17       Boudreaux v. Janssen, et al., Case No.
            -cv-02720, 11-14-16)
18

19

20

21

22

23

24

25

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

```
 1                  A P P E A R A N C E S
 2
     REPRESENTING JOSEPH BOUDREAUX:
 3
         GOZA & HONNOLD, LLC
 4       BY:  BRADLEY D. HONNOLD, ESQ.
         11150 Overbrook Road
 5       Suite 250
         Leawood, Kansas  66211
 6       bhonnold@gohonlaw.com
         913-451-3433
 7
 8   REPRESENTING BAYER HEALTHCARE PHARMACEUTICALS, INC.,
     AND BAYER PHARMA AG:
 9
         KAYE SCHOLER, LLP
10       BY:  JULIE P. DUPONT, ESQ.
         West 55th Street
11       New York, New York  10019-9710
         julie.dupont@kayescholer.com
12       212-836-8572
13           - AND -
14   NELSON, MULLINS, RILEY & SCARBOROUGH, LLP
         BY:  ERIC A. PAINE, ESQ.
15       1320 Main Street
         17th Floor
16       Columbia, South Carolina  29201
         eric.paine@nelsonmullins.com
17       803-255-5518
18
     REPRESENTING JANSSEN PHARMACEUTICALS, INC., JANSSEN
19   RESEARCH & DEVELOPMENT, LLC, AND JANSSEN ORTHO, LLC:
20       SCHWABE, WILLIAMSON & WYATT
         BY:  MARGARET HOFFMANN, ESQ.
21       Pacwest Center
         1211 SW 5th Avenue
22       Suite 1900
         Portland, Oregon  97204
23       mhoffmann@schwabe.com
         503-222-9981
24
             - AND -
25
```

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

```
 1                  A P P E A R A N C E S
                         (CONTINUED)
 2

 3      BARRASSO USDIN KUPPERMAN FREEMAN & SARVER, LLC
        BY:  SHAUN P. MCFALL, ESQ.
 4      909 Poydras Street
        24th Floor
 5      New Orleans, Louisiana   70112
        smcfall@barrassousdin.com
 6      504-589-9764

 7
     ALSO PRESENT:
 8
        MARK ANCALADE, CERTIFIED LEGAL VIDEOGRAPHER
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

S T I P U L A T I O N

It is stipulated by and among Counsel that the videotaped deposition of VANESSA M. PIAZZA, M.D., is being taken under the Federal Rules of Civil Procedure for all purposes permitted under the law.

The formalities of reading and signing are reserved.

The formalities of sealing, certification and filing are hereby reserved. The party responsible for services of the discovery material shall retain the original.

All objections, except those as to the form of the question and/or the responsiveness of the answers, are hereby reserved until the time of the trial of this cause.

\* \* \*

Rita DeRouen, Certified Court Reporter, Registered Professional Reporter, in and for the State of Louisiana, officiated in administering the oath to the witness.

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

```
 1                  P R O C E E D I N G S
 2                  THE VIDEOGRAPHER:  We're now on the
 3      record.  My name is Mark Ancalade, the videographer,
 4      with Golkow Technologies.  Today's date is December
 5      the 13th, 2016 at the time indicated on the video
 6      screen, which is 9:17.  Today's deposition is being
 7      held at 1100 Poydras Street, Suite 2300, in New
 8      Orleans, Louisiana taken in the matter of In
 9      Reference:  Xarelto (rivaroxaban) Products Liability
10      Litigation, being heard before the United States
11      District Court, Eastern District of Louisiana.
12      Today's deponent is Dr. Vanessa Piazza.
13              The court reporter is Ms. Rita DeRouen.  I
14      would ask that counsel please state their names for
15      the record, which thereafter would the court reporter
16      please swear in the witness.
17              MR. HONNOLD:  Bradley Honnold of the law
18      firm Goza & Honnold for the PSC.
19              MS. DUPONT:  Julie duPont on behalf of
20      the Bayer defendants.
21              MR. MCFALL:  Shaun McFall on behalf of
22      Janssen.
23              MS. HOFFMANN:  Margaret Hoffmann on
24      behalf of Janssen.
25              VANESSA M. PIAZZA, M.D.,
```

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

```
 1   having been first duly sworn, was examined and
 2   testified as follows:
 3                        EXAMINATION
 4   BY MR. HONNOLD:
 5       Q.   Doctor, good morning.
 6       A.   Good morning.
 7       Q.   Tell me your full name, please.
 8       A.   Vanessa Maria Piazza.
 9       Q.   You understand that you've been identified as
10   an expert witness on behalf of certain parties in a
11   case relating to the prescription drug Xarelto?
12       A.   I do.
13       Q.   We're here today to take your deposition.
14   You understand that?
15       A.   I do.
16       Q.   On how many occasions have you had your
17   deposition taken before?
18       A.   Two.
19       Q.   I take it you have some memory of those and
20   kind of the process that is involved with the
21   deposition?
22       A.   I do.
23       Q.   Let me just go over basically some ground
24   rules that we'll -- I'll do my best to follow today
25   and I'll ask you to as well.  It's my job to ask you a
```

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

```
 1   correlated --
 2              MR. HONNOLD:  Move that that be stricken
 3   as non-responsive.
 4       A.   It's not correlated with bleeding.
 5   BY MR. HONNOLD:
 6       Q.   So have you ever taken care of a patient who
 7   reports a history of being on Xarelto who is bleeding
 8   in the emergency room?
 9       A.   I have.
10       Q.   And then what -- what, then, anticoagulation
11   tests, if any, have you ordered on such patients?
12       A.   Any patient that has -- that is bleeding or
13   has the potential to bleed in my emergency room, I'm
14   going to order a PT/PTT and a CBC.  So we're talking
15   about, hypothetically, a CBC and possibly a type and
16   screen.  But as far as specific coagulation tests, is
17   that what you asked me?
18       Q.   Yes.
19       A.   So a PT/PTT would be ordered because the
20   patient could be bleeding for any number of reasons,
21   not necessarily just from Xarelto.
22       Q.   What information regarding the patient's
23   Xarelto status would be gleaned from either the PT or
24   the PTT test?
25       A.   Really none.
```

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

1  begins on the bottom of page 7.

2    A.  Okay.

3    Q.  You would agree with me like Xarelto, like

4  all anticoagulants, carry with them some risk of

5  bleeding, correct?

6    A.  All anticoagulants carry some risk of

7  bleeding, yes.

8    Q.  If you turn the page then, continuing to

9  Section 5.2, if you look at the end of that first full

10  paragraph that states, The terminal elimination half-

11  life of rivaroxaban is 5 to 9 hours in healthy

12  subjects aged 20 to 45.  Do you see that?

13    A.  I do.

14    Q.  Do you agree with that statement or believe

15  it to be true and accurate?

16    A.  Yes.

17    Q.  What is your understanding or belief as to

18  the range of half-lives that might exist in patients

19  other than healthy subjects aged 20 to 45?  How can

20  half-life vary?

21        MS. DUPONT:  Objection to form.

22    A.  Ask me that again.

23  BY MR. HONNOLD:

24    Q.  Sure.  How can half-life vary in patients

25  other than in healthy subjects aged 20 to 45?

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

1   the neurosurgeon.

2       Q.   So that's the only one that you can remember
3   where PCC was given was this head bleed?

4       A.   Yes.  So that was the neurosurgeon who pushed
5   that one.  And then the other medicines you mentioned,
6   vitamin K and FFP, I wouldn't give those for Xarelto.

7       Q.   Okay.  That's my point.  Can you recall other
8   instances for patients on Xarelto who were bleeding
9   other than the head bleed where you gave fresh frozen
10  plasma or PCC in hopes of stopping or reversing the
11  bleeding?

12      A.   I have not given those to patients who have
13  bleeding on Xarelto.

14      Q.   If presented with a situation -- strike that.
15  Let me ask this.  Have you ever taken care of a
16  patient who was having active gastrointestinal
17  bleeding in the emergency room in a patient on
18  Xarelto?

19      A.   Yes.

20      Q.   And in those patients, I take it you gave
21  conservative treatment and allowed time to pass?

22              MS. DUPONT:  Objection; form.

23      A.   Blood -- fluid, blood, time, admit,
24  investigation for the cause, yes.

25  BY MR. HONNOLD:

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

```
 1     Q.   Yeah.  What would be the possible reasons
 2  that a treating physician would instruct a patient
 3  like Mr. Boudreaux to stop taking Xarelto when they
 4  had a GI bleed?
 5     A.   Well, if he has a GI bleed, he shouldn't be
 6  actively taking Xarelto.  That's one of the
 7  contraindications for active pathological bleeding,
 8  you wouldn't want to be taking Xarelto at that same
 9  time.
10     Q.   Why not?
11     A.   While you're actively bleeding?  Because
12  Xarelto is an anticoagulant, and anticoagulants are
13  going to make you bleed.  Once that door is open, you
14  could bleed more briskly.
15     Q.   What do you -- what do you mean when you say,
16  Once that door is open, you will bleed more briskly?
17  What do you mean by that?
18     A.   So anticoagulants, their job is to keep you
19  from clotting or coagulating.  So what that means is
20  you're going to bleed more briskly.  The
21  anticoagulants don't in and of themselves make you
22  spontaneously bleed.  So they didn't do -- they don't
23  do anything to the mucosa or to the blood vessels to
24  actually make them rupture or leak or cause any kind
25  of damage to those surfaces; but once there is some
```

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

```
 1   damage there and bleeding starts, the anticoagulant
 2   will do its job and keep you from clotting briskly.
 3       Q.   I think you said before that one reasonable
 4   explanation for Mr. Boudreaux's elevated PT on
 5   February 3 was the anticoagulant effects of Xarelto,
 6   correct?
 7            MS. DUPONT:  Objection.
 8   BY MR. HONNOLD:
 9       Q.   That's one reasonable explanation, right?
10            MS. DUPONT:  Objection; misstates prior
11   testimony.
12       A.   So the way that I said it is there are
13   several things, and then I didn't actually mention
14   anything about Xarelto.  I think you had mentioned it
15   and then you asked if I agreed with that.  So would I
16   agree that one thing that could prolong a PT in
17   general with that statement, does Xarelto do that;
18   yes, in fact, it can possibly prolong a PT.
19   BY MR. HONNOLD:
20       Q.   And the thing about Xarelto that is
21   prolonging the PT is the anticoagulant effect of
22   Xarelto, right?
23       A.   Well, that's where it gets kind of sticky.
24   Because when you have a PT measurement, that's where I
25   mentioned that I'm not sure if that actually
```

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

```
 1                MS. DUPONT:  Objection; form.
 2       A.   I've kind of lost where you're going with
 3  this.  But to the best of my ability, my report
 4  presents his GI bleed and some reasons that he may
 5  have had a GI bleed.
 6  BY MR. HONNOLD:
 7       Q.   And he may have had a GI bleed because he was
 8  on Xarelto, right?
 9                MS. DUPONT:  Objection; form.
10       A.   Are you asking me just in general or did I
11  present that in my report?
12  BY MR. HONNOLD:
13       Q.   Let's talk in general.  It's certainly --
14  certainly possible that Xarelto caused his GI bleed,
15  correct?
16                MS. DUPONT:  Objection; form.
17       A.   And I'm going to go back to that word
18  "cause," because that's an important word.  When we
19  talk about bleeding and Xarelto or any anticoagulants,
20  they're all associated with bleeding.  That's what
21  they're supposed to do.  When you're talking about the
22  word "cause," the scientific word "cause" and effect,
23  Xarelto does not cause bleeding in that respect of the
24  word.  It does not spontaneously erode the mucosa or a
25  blood vessel.  But once the door is open by some other
```

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

```
 1   mechanism, you will bleed because of an anticoagulant
 2   effect.
 3   BY MR. HONNOLD:
 4        Q.   Including Xarelto?
 5        A.   Including Xarelto.
 6        Q.   Before the GI bleed that he had on -- or that
 7   was diagnosed on February 3, 2014 and before he
 8   started Xarelto, did Mr. Boudreaux have any history of
 9   GI bleeding?
10        A.   He doesn't have anything documented.
11        Q.   In all the medical records that you looked
12   at, is there any reference to a prior history of GI
13   bleeding in anything that you've looked at in this
14   case?
15        A.   There is nothing documented as far as a
16   history or diagnosis of a GI bleed in the past.
17        Q.   And for how long before Mr. Boudreaux was
18   prescribed Xarelto had he been on aspirin?
19        A.   A while.  Give me a second to think and I
20   might be able to give you an amount of time in years.
21   I would say several years.  I'd have to refer to the
22   medical record to see exactly.
23        Q.   And during that several years of aspirin use,
24   is there any suggestion or reference or testimony that
25   Mr. Boudreaux had any issue with bleeding while only
```

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

```
 1      Q.   How many units of blood did he receive?
 2      A.   He got two originally, and then just before
 3   discharge they decided to give him two more.
 4      Q.   Do you refer to anywhere -- anywhere in your
 5   report or in your materials considered list the
 6   HASBLED score?
 7      A.   Do I refer to that?
 8      Q.   Yes, anywhere in your report.
 9      A.   Let's see.  Because I do make a reference to
10   his risk of bleeding, but I don't know if I
11   specifically said HASBLED.  I don't think I used the
12   word "HASBLED."  But I did make mention of the fact
13   that his risk of bleeding versus his risk of
14   thrombosis, the pros and cons were considered.
15      Q.   What page?
16      A.   I was looking for it on page 15.  I remember
17   that thought process, so I might need a second to find
18   where I put it.  I guess I made reference to it right
19   here.
20      Q.   What page?
21      A.   On page 15, All anticoagulants are associated
22   with a risk of bleeding, and the risk of bleeding was
23   weighed against the risk of stroke in Mr. Boudreaux's
24   case by his prescriber, Dr. Wong.  So Mr. Boudreaux
25   was at moderate risk of bleeding due to his NSAID use
```

1  and age.  So his risk of bleeding was incorporated to
2  my thought process when I wrote that paragraph.
3       Q.   Did you specifically take the HASBLED
4  calculator or HASBLED paper and specifically apply it
5  to Mr. Boudreaux?
6       A.   That's -- that's not something as far as
7  calculating that I regularly do in the ER.  But I did
8  look at his HASBLED score when I wrote this and
9  sitting down, removed from the case, considered pros
10 and cons of bleeding, yes.
11      Q.   Did you list the HASBLED calculator or paper
12 that came up with the HASBLED calculator anywhere in
13 your materials considered list?
14      A.   It's somewhere in there, yes, because I used
15 it.
16      Q.   How many points did he have on the HASBLED
17 score?
18      A.   I'm going to need a second to look at that.
19 His risk of bleeding was less than his risk of
20 thrombosis.  His risk of thrombosis was in the range
21 of between 4 and 5 percent, and his risk of bleeding
22 was less than that.  I want to say his risk of
23 bleeding was in the range of 3 percent or so for his
24 HASBLED.
25      Q.   So how many points did you give him?

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

```
 1                    C E R T I F I C A T E
 2
 3           This certification is valid only for a
 4   transcript accompanied by my original signature and
 5   original seal on this page.
 6           I, RITA A. DEROUEN, Registered Professional
 7   Reporter, Certified Court Reporter, in and for the
 8   State of Louisiana, as the officer before whom this
 9   testimony was taken, do hereby certify that VANESSA M.
10   PIAZZA, M.D., after having been duly sworn by me upon
11   the authority of R.S. 37:2554, did testify as
12   hereinbefore set forth in the foregoing 198 pages;
13   that this testimony was reported by me in the
14   stenotype reporting method, was prepared and
15   transcribed by me or under my personal direction and
16   supervision, and is a true and correct transcript to
17   the best of my ability and understanding; that the
18   transcript has been prepared in compliance with
19   transcript format guidelines required by statute or by
20   rules of the board; and that I am informed about the
21   complete arrangement, financial or otherwise, with the
22   person or entity making arrangements for deposition
23   services; that I have acted in compliance with the
24   prohibition on contractual relationships, as defined
25   by Louisiana Code of Civil Procedure Article 1434 and
```

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

```
 1   in rules and advisory opinions of the board; that I
 2   have no actual knowledge of any prohibited employment
 3   or contractual relationship, direct or indirect,
 4   between a court reporting firm and any party litigant
 5   in this matter nor is there any such relationship
 6   between myself and a party litigant in this matter.  I
 7   am not related to counsel or to the parties herein,
 8   nor am I otherwise interested in the outcome of this
 9   matter.
10
11
12                    _____
13                         RITA A. DEROUEN, CCR, RPR
14
15
16
17
18
19
20
21
22
23
24
25
```