# EXHIBIT L

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

```
 1                UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF LOUISIANA
 2
 3
      IN RE:  XARELTO           )   MDL No.:  2592
 4    (RIVAROXABAN) PRODUCTS    )   Section:  L
      LIABILITY LITIGATION       )   Judge Eldon E. Fallon
 5                                )   Mag. Judge North
                                  )
 6                                )
                                  )
 7    JOSEPH ORR, JR., as         )
      lawful surviving            )   2:15-cv-03708
 8    spouse of SHARYN ORR       )
 9
10
11    PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW
12
13
14        Videotaped Deposition of LIONEL A. BRANCH, JR.,
15    M.D., taken on Friday, December 9, 2016, in the
16    office of Chaffe McCall, L.L.P., 1100 Poydras
17    Street, Suite 2300, New Orleans, Louisiana 70163,
18    commencing at 8:54 a.m.
19
20
21
22
23
      Reported by:
24    AURORA M. PERRIEN
      CERTIFIED COURT REPORTER
25    REGISTERED PROFESSIONAL REPORTER
```

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

1                       I N D E X
                                                Page
2
            Caption...............................1
3
            Appearances...........................3
4
            Agreement of Counsel..................5
5
            Witness' Certificate................154
6
            Reporter's Certificate..............155
7

8
                    E X A M I N A T I O N
9
            MR. MORRISON......................7, 148
10
            MR. PAINE...........................146
11

12

13

14                      E X H I B I T S
15      Exhibit No. 1........................51
        Invoice
16
        Exhibit No. 2........................61
17      Plaintiff's Notice with Subpoena Duces
        Tecum of Oral Videotaped Deposition of
18      Lionel Branch, MD
19      Exhibit No. 3........................62
        Report of Lionel A. Branch, Jr., M.D.
20

21

22

23

24

25

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

```
 1                A P P E A R A N C E S
 2   REPRESENTING JOSEPH ORR, JR., AS LAWFUL SURVIVING
     SPOUSE OF SHARYN ORR:
 3
          GAINSBURGH, BENJAMIN, DAVID,
 4        MEUNIER & WARSHAUER, L.L.C.
          BY:  WALTER C. MORRISON, IV, ESQ.
 5        1100 Poydras Street, Suite 2800
          New Orleans, Louisiana 70163
 6        504.528.9973
          Wmorrison@gainsben.com
 7
 8
 9   REPRESENTING BAYER HEALTHCARE PHARMACEUTICALS,
     INC., and BAYER PHARMA AG:
10
          NELSON, MULLINS, RILEY & SCARBOROUGH, L.L.P.
11        BY:  ERIC A. PAINE, ESQ.
          1320 Main Street, 17th Floor
12        Columbia, South Carolina 29201
          803.255.5518
13        Eric.paine@nelsonmullins.com
14        CHAFFE McCALL, L.L.P.
          BY:  PETER J. ROTOLO, III, ESQ.
15        1100 Poydras Street, Suite 2300
          New Orleans, Louisiana 70163-2301
16        504.585.7000
          Rotolo@chaffe.com
17
18
19
     REPRESENTING JANSSEN PHARMACEUTICALS, INC.,
20   JANSSEN RESEARCH & DEVELOPMENT, L.L.C., JANSSEN
     ORTHO, L.L.C.:
21
          IRWIN, FRITCHIE, URQUHART & MOORE, L.L.C.
22        BY:  MEERA U. SOSSAMON, ESQ.
          400 Poydras Street, Suite 2700
23        New Orleans, Louisiana 70130-3280
          504.310.2106
24        Msossamon@irwinllc.com
25
```

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

1  ALSO PRESENT:
2      MELISSA BARDWELL, VIDEOGRAPHER
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

```
 1                  S T I P U L A T I O N
 2      It is stipulated by and among Counsel that
 3  the videotaped deposition of LIONEL A. BRANCH,
 4  JR., M.D., is being taken under the Federal Rules
 5  of Civil Procedure for all purposes permitted
 6  under the law.
 7      The formalities of reading and signing are
 8  not waived.
 9      The formalities of sealing, certification
10  and filing are not hereby waived.  The party
11  responsible for services of the discovery material
12  shall retain the original.
13      All objections, except those as to the
14  form of the questions and/or the responsiveness of
15  the answers, are reserved until the time of the
16  trial of this cause.
17                  *   *   *   *   *
18          Aurora M. Perrien, Certified Court
19  Reporter, Registered Professional Reporter, in and
20  for the State of Louisiana, officiated in
21  administering the oath to the witness.
22
23
24
25
```

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

```
 1                P R O C E E D I N G S
 2          THE VIDEOGRAPHER:
 3               We are now on the record.  The date
 4          today is December 9th, 2016.  The time is
 5          approximately 8:54 a.m.  We are in
 6          New Orleans, Louisiana for the videotaped
 7          deposition of Dr. Lionel Branch taken in
 8          reference to the Xarelto (rivaroxaban)
 9          Products Liability Litigation.  My name is
10          Melissa Bardwell, videographer here for
11          Golkow Technologies.
12               Would counsel present please introduce
13          themselves and state their affiliations
14          for the record.
15          MR. MORRISON:
16               Walter Morrison for the plaintiffs.
17          MR. PAINE:
18               Eric Paine for Bayer.
19          MS. SOSSAMON:
20               Meera Sossamon for Janssen.
21          MR. ROTOLO:
22               Peter Rotolo for Bayer.
23          THE VIDEOGRAPHER:
24               The court reporter today is
25          Aurora Perrien.  She will now swear in the
```

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

```
 1              witness.
 2                   (The court reporter swore in the witness.)
 3                      E X A M I N A T I O N
 4   BY MR. MORRISON:
 5        Q.   Good morning, Dr. Branch.
 6        A.   Good morning.
 7        Q.   My name is Walter Morrison, and I'm here
 8   on behalf of the plaintiffs in this case.
 9             Do I understand you've never given a
10   deposition before?
11        A.   No.  You don't understand that.
12        Q.   All right.
13        A.   I -- I have given a deposition.
14        Q.   Tell me how frequently or how often you
15   have done that.
16        A.   I've probably given maybe two depositions
17   in the last five years.
18        Q.   And under what circumstances were those
19   two depositions given?
20        A.   I gave one deposition in connection with a
21   patient that I had seen in Gonzales, Louisiana
22   during the time I was in private practice and I
23   saw a patient who had a history of -- of multiple
24   sclerosis -- actually had a history of Crohn's
25   disease.  And when I saw her, there was some
```

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

1  time I was in medical school and all through the
2  time I was in residency.  I couldn't possibly list
3  all of those articles or -- or bring them -- or
4  bring them with me today.  So . . .
5      Q.  Well, for instance, when you sat down and
6  you did your research on Pub -- PubMed or Medline,
7  do you recall the articles that you found?
8      A.  I found numerous articles pertaining to
9  interparenchymal hemorrhages and numerous articles
10 pertaining to intercranial [sic] -- intercerebral
11 hemorrhages, intercranial hemorrhages, numerous
12 articles pertaining to bleeding in the brain,
13 numerous articles pertaining to atrial
14 fibrillation and complications of -- of
15 anticoagulant management on patients that was
16 relevant to this case.  Many articles, I glossed
17 over, simply perused because they were basically
18 the same things that -- that we already knew and
19 then that did not have particular relevance to
20 this case.  So many, many, articles that we
21 actually looked over.
22         Some articles had particular relevance to
23 the case, and those are the ones that appear in
24 the -- in the bibliography.
25     Q.  Let's talk a little bit about your

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

1  prescribing or the use of anticoagulant
2  medications in your practice.
3      A.  Yes, sir.
4      Q.  Is it something that you do?
5      A.  Absolutely.
6      Q.  For what do you prescribe anticoagulant
7  medications?
8      A.  I prescribe anti -- as a neurologist and
9  as a stroke neurologist, I particularly prescribe
10 anticoagulant medicines to patients that I
11 discover who have atrial fibrillation.  This
12 usually occurs in -- in -- in the context of an
13 individual who arrives at the hospital with a --
14 what we call a transient ischemic attack,
15 whereupon we launch a set of investigations.  We
16 call it a stroke workup, to determine what the
17 major risk factors are and how they're playing in
18 this patient's life.
19          And one of the major risk factors we look
20 for is that of some sort of abnormal heart rhythm
21 because that could possibly produce a stroke or
22 produce an -- a transient ischemic attack.  So
23 that -- that cardiac workup generally consists of
24 a -- an EKG.  And it consists of an
25 echocardiogram.  And it consists of careful

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

```
 1   clinics have been established.
 2        Q.  Since 1997, you became aware of these new
 3   anticoagulant medications, including Xarelto,
 4   Pradaxa -- correct -- Eliquis?
 5        A.  And Eliquis.  Yes, sir.
 6        Q.  And I would assume that over the course of
 7   your practice you've prescribed all of those
 8   medications?
 9        A.  I have.
10        Q.  As you sit here today, do you still
11   prescribe all of those medications?
12        A.  I have patients on Pradaxa.  I have
13   patients on Xarelto.  And I -- I know patients on
14   Eliquis.  I have not prescribed Eliquis in
15   particular --
16        Q.  How do you --
17        A.  -- to my patients.
18        Q.  -- determine which of the medications
19   you're going to prescribe?
20        A.  The last -- I -- it's -- it's determined
21   -- typically a patient arriving in -- with a
22   stroke, we take care of the stroke in the
23   hospital, and we usually put them on Coumadin in
24   the hospital.  Then they'll go on Coumadin for
25   about -- usually about two weeks.  And I -- I
```

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

1   Q.  Prior to your being retained as an expert
2   in this case and receiving the payment that you've
3   received, had you ever received any payment from
4   Bayer or Janssen?
5   A.  No.
6   Q.  So as I understand it, you have been
7   prescribing anticoagulant medications in some form
8   or fashion since at least 1997?
9   A.  Yes.
10  Q.  So what's that?  Almost 20 years?
11  A.  Right.  Almost 20 years.
12  Q.  All right.  And in that time period, have
13  you had patients in your estimation that have
14  experienced bleeding complications due to the
15  anticoagulant?
16  A.  I've had patients who experienced bleeding
17  complications while on the anticoagulant and
18  patients who bleed -- experience bleeding
19  complications that -- that had bleeds that were
20  complicated by the presence of an anticoagulant.
21  I think that's the most appropriate way to express
22  that.
23          In other words, the anticoagulant in and
24  of itself did not compromise the patient's
25  vasculature.  That's an important distinction that

```
 1                    C E R T I F I C A T E

 2       This certification is valid only for

 3   a transcript accompanied by my original signature

 4   and original seal on this page.

 5       I, AURORA M. PERRIEN, Registered Professional

 6   Reporter, Certified Court Reporter, in and for the

 7   State of Louisiana, as the officer before whom

 8   this testimony was taken, do hereby certify that

 9   LIONEL A. BRANCH, JR., M.D., after having been

10   duly sworn by me upon the authority of R.S.

11   37:2554, did testify as hereinbefore set forth in

12   the foregoing 154 pages; that this testimony was

13   reported by me in the stenotype reporting method,

14   was prepared and transcribed by me or under my

15   personal direction and supervision, and is a true

16   and correct transcript to the best of my ability

17   and understanding; that the transcript has been

18   prepared in compliance with transcript format

19   guidelines required by statute or by rules of the

20   board; and that I am informed about the complete

21   arrangement, financial or otherwise, with the

22   person or entity making arrangements for

23   deposition services; that I have acted in

24   compliance with the prohibition on contractual

25   relationships, as defined by Louisiana Code of
```

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

1  Civil Procedure Article 1434 and in rules and
2  advisory opinions of the board; that I have no
3  actual knowledge of any prohibited employment or
4  contractual relationship, direct or indirect,
5  between a court reporting firm and any party
6  litigant in this matter nor is there any such
7  relationship between myself and a party litigant
8  in this matter.  I am not related to counsel or to
9  the parties herein, nor am I otherwise interested
10 in the outcome of this matter.

15            AURORA M. PERRIEN, CCR, RPR