## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE ELDON E. FALLON |
| Joseph J. Boudreaux, Jr., et al. v. Janssen et al. Case No. 2:14-cv-02720 | MAGISTRATE NORTH |
| Joseph Orr, Jr., et al. v. Janssen Research & Development, LLC et al. Case No. 2:15-cv-03708 | |

### DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO PRECLUDE SPECULATIVE EXPERT TESTIMONY ABOUT POTENTIAL OUTCOMES FROM OTHER ANTICOAGULANTS

This is the second of two motions[1] that Plaintiffs filed to exclude opinion testimony from defense experts that Plaintiffs' own experts agree is true – that there is no evidence that Joseph Boudreaux, Jr. or Sharyn Orr's alleged injuries would have been avoided had a different medicine been used.  Leissinger Dep. 178:8-21 (Dec. 8, 2016) (Ex. A) ("I cannot comment on whether [Mr. Booudreaux] may or may not have bled on any other . . . [d]rug."); Liechty Dep. 377:9-14 (Dec. 3, 2016) (Ex. B)(Q.  So you could not say to a reasonable degree of medical certainty that Mrs. Orr's hemorrhage would have been avoided or that her outcome would have been any different on Pradaxa or Eliquis rather than Xarelto, could you?  A.  I could not. No.").

As set forth in Defendants' Opposition (R Doc. No. 5533) to Plaintiffs' first motion, incorporated fully herein, the undisputed opinion testimony from experts on both sides unequivocally demonstrates that Plaintiffs cannot satisfy their burden under the Louisiana Product Liability Act ("LPLA") to prove that other medicines would have been safer alternatives

---

[1] Plaintiff first motion was filed on January 20, 2017 and sought to exclude the opinion testimony of Drs. Vanessa Piazza, M.D.; Lionel A. Branch, Jr., M.D.; and James William Smith, M.D.  Doc. 5121.  Defendants' filed their Opposition on February 27, 2017.  R. Doc. 5533.

for either Mr. Boudreaux or Ms. Orr.  La Rev. Stat. Ann. § 9:2800.56.  Rather, Plaintiffs seek to preclude defense experts from testifying based on their education, training and experience, as well as their extensive review of relevant studies, literature, medical records, that Mr. Boudreaux, Jr. and Ms. Orr had underlying health conditions that predisposed them to a bleeding event on any anticoagulant and that it cannot be shown that other medicines – all of which carry an increased risk of bleeding based on the relevant studies and literature – would have avoided the alleged injuries in this case.  As set forth below, the opinions of Drs. Scott Boniol, M.D.; Colleen Johnson, M.D., M.S.; Marc J. Kahn, M.D. M.B.A.; Clement Eiswirth, M.D.; William Franklin Peacock, IV, M.D., F.A.C.E.P.; and Sammy Khatib, M.D. are highly relevant, reliable and admissible.

For these and the reasons set forth below, Plaintiffs' Motion should be denied.

## ARGUMENT

### I.      Defendants' incorporate their Opposition (R Doc. No. 5533) to Plaintiffs' first motion

Plaintiffs' first motion sought to exclude the opinion testimony of Drs. Vanessa Piazza, M.D.; Lionel A. Branch, Jr., M.D.; and James William Smith, M.D. based on the same arguments asserted in the present motion.  Doc. 5121.  Although the present motion seeks to exclude the testimony of other experts whose specialties include different areas (Drs. Scott Boniol, M.D.; Colleen Johnson, M.D., M.S.; Marc J. Kahn, M.D. M.B.A.; Clement Eiswirth, M.D.; William Franklin Peacock, IV, M.D., F.A.C.E.P.; and Sammy Khatib, M.D), Plaintiffs' motion should be denied for the same reasons set forth in Defendants' Opposition (R Doc. 5533) to plaintiffs' first motion.

As set forth in Defendants' Opposition (*id.*), from the outset of this litigation, plaintiffs have pursued a general theory that Xarelto is unreasonably dangerous and is the least safe

anticoagulant medicine (*see* doc. 5121) – although not all of their experts agree.[2]   One of Plaintiffs' experts testified that Xarelto is "the best commercially available anticoagulant." Cerri Dep. 281:11-13 (Nov. 28, 2016) (Exh. C).   Dr. Cerri further testified that Novel Oral Anticoagulants ("NOACs"), such as Xarelto, have "an improved safety profile with respect to serious bleeding" over warfarin. *Id.* at 280:25-281:4.

When Plaintiffs' experts who have rendered different opinions were pressed on their theory that other medicines are safer, none could say that another medicine would have avoided Mr. Boudreaux and Ms. Orr's alleged injuries (Leissinger Dep. 178:8-21; Liechty Dep. 377:9-14), and their theory that other medicines constitute "safer alternatives" under the LPLA has been rejected by Louisiana courts.   *Hornbeck v. Danek Med., Inc.*. No. 99-30966, 2000 WL 1028981, at * 1 (5th Cir. July 5, 2000); *see also Robertson v. AstraZeneca Pharms.*, LP, No. 15-438, 2015 WL 5823326, at *4 (E.D. La. Oct. 6, 2015) ("[T]he existence of alternate products does not demonstrate the existence of a specific alternative design."); *In re Propulsid Prods. Liab. Litig.*, No. MDL 1355, 2003 WL 367739, at *3 (Fallon, J.) (holding that plaintiff had "failed to prove the existence of an alternative design capable of preventing her damage" because expert testimony "show[ing] that there were alternative or different methods for treating her symptoms . . . is not sufficient to prove an alternative design" under the LPLA) (citing *Theriot v. Danek Med. Inc*., 168 F.3d 253, 256 (5th Cir. 1999)).

As explained below, the opinions of Drs. Boniol, Johnson, Kahn, Eiswirth, Peacock, and Khatib – that all anticoagulants carry an increased risk of bleeding, that Mr. Boudreaux, Jr. and

---

[2] Plaintiffs' experts have testified that Xarelto patients are at a "significantly increased" risk of bleeding "as compared to other NOAC agents" (Liechty Rep. at 8-9 (Exh. C); Rinder Rep. at 5-6 (Exh. D)) and have "consistently have worse outcomes" than other NOACS and warfarin, (Cerri Rep. at 1-2 (Exh. E)), and that other NOACs and warfarin "were associated with a lower risk" of bleeding.  (Liechty Rep. at 8-9; *see also* Rinder Rep. at 3 ("Rivaroxaban is the least effective and least safe of all NOACs."); Leissinger Rep. at 16 (Exh. F) ("In addition to Xarelto's inferior performance with respect to bleeding when compared to warfarin in the U.S. patients of ROCKET, there is also emerging data demonstrating potentially inferior performance when compared to other NOACs.").

Ms. Orr were at increased risks of bleeding and that it cannot be shown that Plaintiffs' injuries would have been avoided on a different medicine – are highly relevant, reliable and admissible.

## II.     The opinions of Drs. Boniol, Johnson, Kahn, Eiswirth, Peacock, and Khatib relevant, reliable and admissible

Plaintiffs do not dispute the qualifications of the defense experts to render opinions about anticoagulant medicines and their risks and benefits as relate to the care and treatment of Mr. Boudreux, Jr. and Ms. Orr, and as set forth below, their opinions based on their education, training, experience, as well as review of the medical records and literature, and therefore reliable and admissible under *Daubert*.

### A.     Dr. Boniol's opinions are admissible

Dr. Boniol is a practicing Hematologist and Oncologist with over thirteen years of experience. Boniol Generic Rep. at 2 (Exh. D).  He regularly prescribes anticoagulants and has experience with patients who have experienced gastrointestinal ("GI") bleeds. Bonoil Dep. 47:8-15, 66:13-14 (Jan. 14, 2017) (Exh. I).  Dr. Bonoil formulated his opinions using the same method that he employs during his clinical practice. Boniol Boudreaux Rep. at 2 (Exh. J).  Dr. Boniol based his opinions on a thorough review of Mr. Boudreaux's medical records, as well as his "clinical experience, expertise as a hematologist, background, and training." *Id.*  Dr. Boniol opinions are undisputed: "it is well known that anticoagulation is associated with increased episodes of bleeding" and "[i]t is also impossible to say that [Mr. Boudreaux's] bleed would not have occurred on another anticoagulant." *Id.* at 13.[3]  Plaintiffs' assertion that Dr. Boniol's case specific opinions related to the risks and benefits of Xarelto for Mr. Boudreaux should be denied for the same reasons.  Dr. Bonoil's opinion is that that Mr. Boudreaux's bleeding event was well

---

[3] It is undisputed that it was medically necessary for both Mr. Boudreaux and Mrs. Orr to use an anticoagulant medicine to reduce the risk of stroke or another thrombotic evident due to their underlying atrial fibrillation.  Cerri Dep. 133:6-8 (as to Mrs. Orr); Leissinger Dep. 71:24-72:5 (as to Mr. Boudreaux).

managed based on the history of his treatment with Xarelto and that treatment with warfarin would have posed more of a risk:

> After stabilization, he was evaluated for a source of bleeding by both an upper GI tract camera, which is mouth to stomach, and later on, a couple days later after that, about three days after that, he had a colonoscopy, which looked from his anus to his cecum, so everything but his small bowels was imaged.  He did really well just by withholding Xarelto and transfusing blood.  He stabilized essentially immediately.  His hemoglobin stayed up to where it should be, indicating no clinically-significant ongoing bleeding, and he was discharged home.

Bonoil Dep. 88:3-13.  Based on this medical history, Dr. Bonoil's opinion is that "[b]eing on rivaroxaban made [Mr. Boudreaux's bleed] much easier to manage than on [warfarin], and his risk of death was [sic] from this bleed was much lower than had he been on [warfarin]."  Boniol Boudreaux Rep. at 13.  Dr. Boniol further explained that "[b]eing on rivaroxaban allowed for rapid 'reversal' by simply not taking the drug.  In contrast, bleeding on warfarin would have resulted in very difficult, tedious and dangerous measures to reverse the effects of warfarin quickly." *Id.*  Relying on published literature, Dr. Bonoil's opinion is that patients taking warfarin are more likely to have more complications than patients taking NOACs because measures needed to stop bleeding on warfarin are "fraught with many complications" that do not exist with Xarelto.  Bonoil Generic Rpt. at 13-14.  Dr. Bonoil's opinions are based on his education, training, experience and review of the relevant literature and studies and are clearly reliable and admissible.

## B.    Dr. Johnson's opinions are admissible

Dr. Johnson is board certified in Internal Medicine, Cardiology, and Cardiac Electrophysiology and is imminently qualified to render opinions about anticoagulant medicines.  Johnson Boudreaux Rep. at 1 (Exh. K).  She has over ten years of experience, and is currently the Director of Cardiac Electrophysiology at both Tulane University Medical Center and at the

Southern Louisiana Veterans Administration Medical Center. *Id*.  She both prescribes oral anticoagulants, and has treated patients who are taking oral anticoagulants and experiencing bleeding. Johnson Dep. 22:6-10, 73:4-11 (Jan. 16, 2017) (Exh. F).  She bases her opinions on her "training and expertise, scientific literature in the field," materials regarding Xarelto, and a review of Mr. Boudreaux's medical records. Johnson Boudreaux Rep. at 1.  She formed her opinions using the same method and analysis that she uses in her clinical and academic practice. *Id*.  Based on this review and analysis, Dr. Johnson opines, "There is no evidence that Mr. Boudreaux . . . would not have had a bleed if he had been prescribed a different anticoagulant." *Id*. at 9.  Plaintiffs' own experts agree that this opinion is in fact true, and Dr. Johnson is imminently qualified to render the opinion.

      **C.**      **Dr. Kahn's opinions are admissible**

      Dr. Kahn is a hematologist with almost thirty years of experience. Kahn Generic Rep. at 2 (Exh. M).  He treats patients who are on oral anticoagulants with atrial fibrillation. Kahn Dep. 67:6-9 (Jan. 13, 2017) (Exh. N).  His opinions are based on his "background, training, clinical experience, expertise as a hematologist, and understanding of the general hematological literature," as well as a review of both Mr. Boudreaux's and Mrs. Orr's medical records. Kahn Boudreaux Rep. at 2 (Exh. O); Kahn Orr Rep. at 2 (Exh. P).  Based upon his review of these materials and his experience, Dr. Kahn also states what is undisputed: (1) "all anticoagulants and anti-platelet agents are associated with an increased risk of bleeding;" (2) [t]here is no way to rule out the same GI bleed Mr. Boudreaux experience, would have happened if he was taking any other anticoagulant;" and (3) [t]here is no way [to] determine whether or not Mrs. Orr's ICH would have happened if she had been taking any other anticoagulant." Kahn Boudreaux Rep. at

9; Kahn Orr Rep. at 9.   These opinions are clearly within Dr. Kahn's expertise and are undisputed by plaintiffs' experts.

Plaintiffs' motion to exclude Dr. Kahn's opinions about the risks and benefits of Xarelto and warfarin in relation to intracranial hemorrhage likewise should be denied.   Dr. Kahn opinion is that "studies in the medical literature have found that the risk of ICH [Intracranial Hemorrhage] with rivaroxaban is lower tha[n] the risk of ICH with warfarin."   Kahn Orr Rpt. at 10.   Plaintiffs assert that a head-to-head study is necessary to make direct comparisons – yet Plaintiffs do not dispute that ROCKET AF compared Xarelto to warfarin.   Khan Dep. at 78:25-79:12.   In his report, Dr. Kahn provides further support of his opinions including Patel 2011 and Coleman 2016. Kahn Orr Rep. at 10.   The assertion that Dr. Kahn's opinions have no reliable basis is clearly not supported by the record.

### D.   Dr. Eiswirth's opinions are admissible

Dr. Eiswirth is a cardiologist with over thirty years of experience. Eiswirth Orr Rep. at 2 (Exh. Q).   In his practice, he treats patients on anticoagulant medications who are at an increased risk of bleeding. Eiswirth Dep. 104:19-22 (Dec. 16, 2016) (Exh. R).   His opinions in this matter are based upon his "training, expertise, and the scientific literature in [his] field," as well as Mrs. Orr's medical records and other depositions taken in this case. Eiswirth Orr Rep. at 2.   Dr. Eiswirth "used the same method of review and analysis that [he] use[s] in [his] clinical and academic medical practice."   *Id.*   Based upon this review and analysis, Dr. Eiswirth opines: (1) "Regardless of the anticoagulant agent used, one must accept an increased risk of bleeding to lessen the risk of a severely disabling or fatal embolic stroke;" and (2) "There is no reason to believe that Mrs. Orr would not have had her intracerebral hemorrhage or that the ultimate outcome would have changed if warfarin or a different NOAC was used instead of Xarelto . . . ."

*Id.* at 6, 7.  Based on his education, training and experience, Dr. Eiswirth is clearly qualified to render this opinion, and they are both relevant and reliable.

### E.     Dr. Peacock's opinions are admissible

Dr. Peacock is a board certified emergency room physician with over thirty years of experience. Peacock Generic Rep. at 2 (Exh. M).  He routinely assesses cranial bleed events, including patients who have presented with an ICH, such as Mrs. Orr. Peacock Orr Rep. at 6 (Exh. N).  Dr. Peacock's opinions are based upon his "experience and training [and] the scientific literature," as well as a review of Mrs. Orr's records. *Id.* at 7.  He used the same method that he uses in his practice to form these opinions. *Id.*  Using this method, Dr. Peacock opines, "[n]obody can say this event would not have occurred had Mrs. Orr been on a different anticoagulant." *Id.* at 6.  Citing the published literature in the Lancet, Dr. Peacock opines, "[w]e know that people do worse on warfarin with a reversal agent than a DOAC without a reversal agent." Peacock Orr Rep. at 6.  Dr. Peacock further opines, "[s]ome data suggest that the prognosis for an ICH in a patient on anticoagulant is better with any DOAC than warfarin," citing a published study from the American Academy of Neurology. *Id.* at 6-7.  Plaintiffs' assertions that these opinions are not supported by studies are literature is simply inaccurate and not supported by the record.  Accordingly, Plaintiffs' motion to exclude the opinions of Dr. Peacock should be denied.

### F.     Dr. Khatib's opinions are admissible

Dr. Khatib is a cardiologist with almost twenty years of experience, and is currently the Vice Chairman, Department of Cardiology, Section Head, Electrophysiology, and Program Director, Clinical Cardiac Electrophysiology Fellowship at the John Ochsner Heart and Vascular Institute. Khatib Boudreaux Rep. at 2 (Exh. U).   He has experience prescribing oral

anticoagulants and treating patients on these medicines. Khatib Orr Dep. 41:8-18 (Jan. 21, 2017) (Exh. V).  Dr. Khatib has treated a large volume of patients, and a majority of his practice is treating patients with atrial fibrillation. Khatib Boudreaux Rep. at 3.  His opinions are "based on a large amount of personal experience, as well as continued review of the data and studies that have been published." *Id.* In addition, he reviewed the medical records of both Mr. Boudreaux and Mrs. Orr. *Id.*; Khatib Orr Rep. at 3 (Exh. W).  Plaintiffs' assert that absent a double-blind, placebo controlled clinical trial comparing different products Dr. Khatib cannot testify about the comparative risks and benefits of different products.  Not true.  Plaintiff's argument is based on a mischaracterization of Dr. Kahtib's testimony.  Dr. Kahtib testified that there are limitations on certain data but that he had reviewed relevant data, studies and literature in arriving at his opinions.   Khatib Boudreaux Dep. at 83:8-85:22 (Ex. X).  When asked about head-to-head data, Dr. Khatib testified:

> Q. Okay. And in terms of data comparing outcomes in patients on rivaroxaban versus warfarin, that's limited to ROCKET?
>
> A. I think there's also the real world, the registry data that has been shown, has been published. And there's multiple, not one specific.

*Id.* at 43:17-23.  In arriving at his opinions, Dr. Khatib used the same method of review and analysis as he uses in his clinical and academic practices. Khatib Orr Rep. at 3.  Using this analysis, Dr. Khatib opines, as to Mr. Boudreaux, "[i]n all likelihood, the short term and long term clinical outcome would not have been different if another direct oral anticoagulant or warfarin was utilized." Khatib Boudreaux Rep. at 14.  When asked about his review of studies that support this opinion, Dr. Khatib testified:

> Q. Okay. So just so I'm sure then, did you specifically undertake a search for your work on the Boudreaux case to at least try to identify the literature that exists out there that reports on different incidence -- incidence rates or occurrence rates of

different types of bleeding between different forms of anticoagulation, including warfarin, including rivaroxaban, including apixaban and dabigatran?

THE WITNESS:
Did I look at -- I'm not -- so I – I looked at registries that compared those different cohorts. And I looked at the --the data that's there from the randomized studies.

Khatib Boudreaux Dep. at 63:1-17.

Similarly, Dr. Khatib opines, "[i]t is not likely that [Mrs. Orr] would have had a different outcome if she had been on a different anticoagulant." Khatib Orr Rep. at 15.  When asked about this opinion, Dr. Khatib testified  "the data doesn't support one way -- doesn't support that it would have gone better with warfarin."  Khatib Dep. at 69:14-70:12.  He further testified that data from "ROCKET and the -- the real-world registry data. I -- I think if you look at all -- all-comers, I think that's what it showed."  *Id.* at 72:9-14.  As a result, plaintiffs' assertion that Dr. Kahtib did not rely on proper studies has no merit, and his opinions are admissible.

Drs. Boniol, Johnson, Khan, Eisworth, Peacock, and Khatib are highly qualified physicians who have extensive experience with anticoagulant medicines and have rendered reliable opinions – which Plaintiffs' own experts do not dispute – that there is no evidence to rule out that Mr. Boudreaux and Orr would have experienced a bleeding event on another medicine. Thus, contrary to the assertion by Plaintiffs, Defendants' experts' opinion are not based on his subjective "feelings" or unsupported speculation.

## III.    Plaintiffs' case law is inapposite

Plaintiffs' reliance on *Washington v. Armstrong World Industries, Inc.* to support exclusion of the defense experts' testimony is misplaced.  In *Washington*, the plaintiff alleged that her husband's colon cancer resulted from his exposure to asbestos. 839 F.2d 1121, 1122 (5th Cir. 1988).  The defendants filed a motion for summary judgment based on testimony of three of the defendants' treating doctors who affirmatively testified that there was no evidence of

asbestos fibers in any of the tissue that was examined and there was no evidence of asbestos exposure during any treatment of the plaintiff's husband. *Id.* The plaintiff submitted testimony from another doctor, who never examined her husband, and who based his findings on the possibility that had another test been done, then such a test would have found proof of exposure to asbestos. *Id.* The district court concluded this testimony was "pure speculation and unreliable" because it relied on possible tests that could have been done "rather than specific findings or evaluations of test results that were available," and excluded the testimony. *Id.*

In contrast, the defense experts' opinions are based on their extensive review of Mr. Boudreaux's and Mrs. Orr's medical history, as well as relevant medical literature and their experience. Plaintiffs' reliance on *Sweeney v. Chertoff*, 178 F. App'x 354, 355 (5th Cir. 2006), also does not result in a different conclusion. *Sweeney* is not a products liability case, but instead is a case brought under the Privacy Act. *Id.* at 355. The opinions in *Sweeny* were not based on underlying records or evidence but on "a hypothetical counterfactual situation" not supported by the record. *Id.* at 357-58. Therefore, *Sweeney*'s holding is inapplicable to the case at hand.[4]

## III.   The opinions of Defendants' experts are highly relevant and exclusion would result in substantial prejudice.

Particularly in light of the LPLA's plain terms, which charges Plaintiffs with the burden of proving a safer alternative that was capable of preventing their alleged injuries, the opinions of Drs. Boniol, Johnson, Kahn, Eiswirth, Peacock, and Khatib are highly probative, and any perceived prejudice is minimal. Accordingly, Plaintiffs' request to exclude these opinions under Rule 403 should be denied. If Plaintiffs are permitted to pursue a theory under the LPLA based on the assertion that other anticoagulant medicines are safer alternatives, Defendants are entitled

---

[4] Similarly, Plaintiffs' reliance on *United States v. Settle*, 267 F. App'x 395 (5th Cir. 2008), is a without merit. *Settle* was a criminal action, and the defendant sought to present evidence of third-party guilt. It was in that context that the Fifth Circuit stated that the criminal defendant had to "demonstrate[] a nexus between the third party and the crime charged." *Id.* at 398.

to rebut those assertions by showing that Plaintiffs cannot rule out that Mr. Boudreaux and Mrs.

Orr would have experienced a bleeding event on a different medicine.  The exclusion of evidence

under Rule 403 is limited to circumstances where the probative value of the evidence is

outweighed by the undue prejudice.  The fact that Plaintiffs cannot rule out a bleeding event on

another medicine and that there are alternative explanations for Mr. Boudreaux and Ms. Orr's

bleeding events and that they were predisposed to bleeding are highly relevant to the issues in

these cases.  Any potential prejudice perceived by Plaintiffs does not outweigh the probative

value of this highly relevant evidence.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion should be denied.


Respectfully submitted,

DRINKER BIDDLE & REATH LLP

By: /s/ Susan M. Sharko
Susan M. Sharko
Drinker Biddle & Reath LLP
600 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
susan.sharko@dbr.com

Rodney M. Hudson
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
Telephone: (415) 591-7500
Rodney.hudson@dbr.com

Chanda A. Miller
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2500
Chanda.Miller@dbr.com

ARNOLD & PORTER KAYE SCHOLER LLP

By: /s/ William Hoffman
William Hoffman
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
william.hoffman@apks.com

Andrew K. Solow
Steven Glickstein
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8485
andrew.solow@apks.com
steven.glickstein@apks.com

IRWIN FRITCHIE URQUHART & MOORE LLC

By: /s/ *James B. Irwin*
James B. Irwin
Kim E. Moore
Irwin Fritchie Urquhart & Moore LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
jirwin@irwinllc.com

*Attorneys for Defendants Janssen
Pharmaceuticals, Inc., Janssen Research &
Development, LLC, and Janssen Ortho LLC,
and Johnson & Johnson*

BRADLEY ARANT BOULT CUMMINGS LLP

By: /s/ *Kevin C. Newsom*
Kevin C. Newsom
Lindsey C Boney IV
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place, 1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8803
knewsom@bradley.com

CHAFFE MCCALL L.L.P.

By: /s/ *John F. Olinde*
John F. Olinde
Chaffe McCall L.L.P.
1100 Poydras Street, Suite 2300
New Orleans, LA 70163
Telephone: (504) 585-7241
olinde@chaffe.com

*Attorneys for Bayer HealthCare
Pharmaceuticals Inc. and Bayer Pharma AG*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on March 6, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to Liaison Counsel for Plaintiffs and Defendants by operation of the court's electronic filing system and served on all other plaintiff counsel via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre-Trial Order No. 17.

*/s/ James B. Irwin*
**James B. Irwin**