UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates To:<br>All Cases | MDL No. 2592<br><br>SECTION: L<br><br>JUDGE FALLON<br><br>MAG. JUDGE NORTH |

**MEMORANDUM IN SUPPORT OF
PLAINTIFFS' STEERING COMMITTEE'S MOTION TO
UNSEAL THE DISPOSITIVE AND *DAUBERT* MOTIONS AND RELATED EXHIBITS**

All parties have filed a series of motions to exclude certain opinions pursuant to Federal Rule of Evidence 702 and/or for partial summary judgment related to the upcoming bellwether trials. With each motion and corresponding brief, the parties have moved the Court for an order to file the briefing and materials supporting them under seal, solely because Defendants have marked virtually every document and deposition as "protected" under PTO 12. *See* PTO 12 at ¶25. In fact, before Plaintiffs filed their various briefs, Defendants insisted that Plaintiffs do so. While Plaintiffs objected to such a notion in communication with Defendants, given the deadlines, Plaintiffs had no choice but to do so. Plaintiffs object and oppose the filing of materials in the bellwether trials related to dispositive and *Daubert* motions that are not entitled to be sealed from public view or scrutiny. Discovery in the four bellwether trials is complete and the Court is now being asked to decide substantive issues that impact both the presentation of evidence in the bellwether trials and whether these cases will be tried to a jury. The matters to be decided by the Court in the above referenced motions must be brought into the light and subject to public review and scrutiny.

## BACKGROUND

This litigation has progressed from pretrial discovery to briefing and hearings on the parties' dispositive and *Daubert* motions. The first trial is imminent - set to begin on April 24, 2017. In January and February 2017, the parties filed under seal and shielded from public view numerous motions on substantive issues that will affect the outcome of these cases.[1] Subsequently, the parties have filed oppositions to each of these motions, again, with motions to seal.[2] On March

---

[1] *See Defendants' Motion In Limine to Exclude Certain Opinions of Laura M. Plunkett, Ph.D., Under Federal Rule of Evidence 702* [Doc. 5108], *Memorandum in Support*, and supporting exhibits (exhibits 3-4 filed under seal); *Defendants' Joint Motion for Partial Summary Judgment on the Ground That Federal Law Preempts Plaintiffs' Dosing, Monitoring, and Other Design-Related Claims* [Doc. 5109], *Memorandum in Support*, and supporting exhibits (exhibits 6, 9-19, 24-32, 34, 37-41, 44-45 filed under seal); *Defendants' Joint Motion for Partial Summary Judgment on the Ground That Federal Law Preempts Plaintiffs' Failure-to-Warn Claims* [Doc. 5110], *Memorandum in Support*, and supporting exhibits (exhibits C, E-R filed under seal); *Defendants' Motion in Limine to Exclude Certain Opinions of David A. Kessler, MD, Under Federal Rule of Evidence 702* [Doc. 5111], *Memorandum in Support*, and supporting exhibits (exhibits A-B filed under seal); *Defendants' Motion in Limine to Exclude Certain Opinions of Suzanne Parisian, MD, Under Federal Rule of Evidence 702* [Doc. 5112], *Memorandum in Support*, and supporting exhibits (exhibits A-B filed under seal); *Defendants' Daubert Motion to Exclude Expert Opinions and Testimony Regarding Unapproved Dosing and Monitoring Regimens* [Doc. 5113], *Memorandum in Support*, and supporting exhibits (filed under seal); *Defendants' Joint Daubert Motion to Exclude Opinions and Testimony Regarding the Experts' 20-Second PT Cut-Off Guideline In the Orr and Boudreaux Cases* [Doc. 5114], *Memorandum in Support*, and supporting exhibits (exhibits 1-19, 21-22 filed under seal); *Defendants' Joint Motion for Partial Summary Judgement as to Plaintiffs' Design-Defect Claims Under The Louisiana Product Liability Act* [Doc. 5115], *Memorandum in Support*, and supporting exhibits (exhibits A-H, J-U filed under seal); *Plaintiffs' Motion to Preclude James A. Reiffel, MD (and Any Other Medical Expert's Testimony) About Attorney Advertising and Earlier Cancer Detection from Anticoagulant-Related Bleeds* [Doc. 5116], *Memorandum in Support*, and supporting exhibits (exhibits A, D filed under seal); *Defendants' Joint Motion for Partial Summary Judgement Based on the Learned Intermediary Doctrine* [Doc. 5118], *Memorandum in Support*, and supporting exhibits (exhibits A-B, E-G filed under seal); *Defendants' Joint Motion for Partial Summary Judgement Based on the Learned Intermediary Doctrine* [Doc. 5119], *Memorandum in Support*, and supporting exhibits (exhibits A-B, E-J filed under seal); *Defendants' Daubert Motion to Exclude Certain Opinions of Nathaniel Winstead, MD* [Doc. 5120], *Memorandum in Support*, and supporting exhibits (exhibits A-B filed under seal); *Plaintiffs' Motion to Preclude Speculative Expert Testimony About Potential Outcomes from Other Anticoagulants* [Doc. 5121], *Memorandum in Support*, and supporting exhibits (exhibits 1-6 filed under seal); *Plaintiffs' Motion to Preclude Certain Testimony From J. Michael Gaziano, MD, MPH* [Doc. 5127], *Memorandum in Support*, and supporting exhibits (exhibits 1, 3, 4 filed under seal); *Plaintiffs' Motion to Preclude Speculative Testimony from Six Defense Experts About Potential Outcomes From Other Anticoagulants* [Doc. 5399], *Memorandum in Support*, and supporting exhibits (exhibits 1-14 filed under seal); *Plaintiffs' Motion to Preclude Expert Testimony From Scott Boniol, MD and William Franklin Peacock, IV, MD, FACEP, About the Benefits of Earlier Detections from Anticoagulant-Related Bleeding Events* [Doc. 5401], *Memorandum in Support*, and supporting exhibits (exhibits 1-2 filed under seal); *Plaintiffs' Motion to Preclude Expert Testimony From Scott Boniol, MD About Attorney Advertising* [Doc. 5404], *Memorandum in Support*, and supporting exhibits (exhibit 1 filed under seal); *Defendants' Motion In Limine to Exclude Certain Opinions of John E. Maggio, PhD, Under Federal Rules of Civil Procedure 26 & 37* [Doc. 5469] and supporting exhibits (exhibits 1-5 filed under seal); *Plaintiffs' Motion to Preclude Speculative Testimony from Seven Defense Experts About Potential Outcomes From Other Anticoagulants* [Doc. 5517], *Memorandum in Support*, and supporting exhibits (exhibits 1-12 filed under seal).

[2] *See Plaintiffs' Response in Opposition to Defendants' Motion in Limine to Exclude Certain Opinions of John E. Maggio, PhD, Under Federal Rules of Civil Procedure 26 & 37* [Doc. 5515] and supporting exhibits (exhibit A filed

23, 2017, the Court will hear arguments and thereafter make rulings on these substantive motions – many of which affirmatively request the Court to enter judgment in favor of the Defendants or to significantly restrict the evidence of Defendants' malfeasance.

At this hearing and as part of their arguments, the parties will present evidence in the form of documents, deposition testimony and expert reports that Defendants have designated Protected Information or Highly Protected Information pursuant to PTO 12. Likewise, at the first trial (and those that follow), numerous exhibits will be internal company documents. Deposition testimony of corporate witnesses as well as expert testimony will refer to these same documents that Defendants have designated as Protected Information. The PSC submits that the rationale for allowing Defendants to make wholesale designations of its internal documents and deposition testimony to facilitate the discovery process is not applicable to the filing of materials on the

---

under seal); *Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to Preclude James A. Reiffel, MD (and Any Other Medical Expert's Testimony) About Attorney Advertising and Earlier Cancer Detection from Anticoagulant-Related Bleeds* [Doc. 5529] and supporting exhibits (exhibits C-F, H-I filed under seal); *Defendants' Opposition to Plaintiffs' Motion to Preclude Certain Testimony From J. Michael Gaziano, MD, MPH* [Doc. 5534] and supporting exhibits (filed in redacted form); *Plaintiffs' Response in Opposition to Defendants' Motion in Limine to Exclude Certain Opinions of Laura M. Plunkett, PhD, Under Federal Rule of Evidence 702* [Doc. 5569] and supporting exhibits (filed under sealed); *Plaintiffs' Response in Opposition to Defendants' Motion to Exclude Certain Opinions of Nathaniel Winstead, MD* [Doc. 5570] and supporting exhibits (filed under seal); *Plaintiffs' Response in Opposition to Defendants' Motion in Limine to Exclude Certain Opinions of David A. Kessler, MD, Under Federal Rule of Evidence 702* [Doc. 5599] and supporting exhibits (filed under seal); *Plaintiffs' Response in Opposition to Defendants' Motion in Limine to Exclude Certain Opinions of Suzanne Parisian, MD, Under Federal Rule of Evidence 702* [Doc. 5603] and supporting exhibits (filed under seal); *Plaintiffs' Response in Opposition to Defendants' Joint Motion for Partial Summary Judgement as to Plaintiffs' Design-Defect Claims Under the Louisiana Product Liability Act* [Doc. 5606] and supporting exhibits (filed under seal); *Plaintiffs' Response in Opposition to Defendants' Joint Motion for Partial Summary Judgement Based on the Learned Intermediary Doctrine* [Doc. 5608] and supporting exhibits (filed under seal); *Defendants' Memorandum in Opposition to Plaintiffs' Motion to Preclude Speculative Expert Testimony About Potential Outcomes From Other Anticoagulants* [Doc. 5626] and supporting exhibits (filed under seal); *Plaintiffs' Response in Opposition to Defendants' Joint Motion for Partial Summary Judgement Based on the Learned Intermediary Doctrine* [Doc. 5629] and supporting exhibits (filed under seal); *Plaintiffs' Response in Opposition to Defendants' Daubert Motion to Exclude Expert Opinions and Testimony Regarding Unapproved Dosing and Monitoring Regimens and to Exclude Opinions and Testimony Regarding the Experts' 20-Second PT Cut-Off Guideline in the Orr and Boudreaux Cases* [Doc. 5641] and supporting exhibits (filed under seal); *Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to Preclude Expert Testimony From Scott Boniol, MD, and William Franklin Peacock, IV, MD, FACEP, About the Benefits of Earlier Detections from Anticoagulant-Related Bleeding Events* [Doc. 5643] (filed in redacted form); *Defendants' Memorandum in Opposition to Plaintiffs' Motion to Preclude Speculative Expert Testimony About Potential Outcomes From Other Anticoagulants* [Doc. 5645] and supporting exhibits (exhibits A-X filed under seal).

judicial record – particularly, as we approach the hearing on these substantive motions and the trials. The standard for designating material as protected under PTO 12 and the standards for sealing judicial records from public view are not one in the same.

Because Defendants have essentially marked all substantive internal documents as "Protected Information," they wrongly assert any filings, inclusive of exhibits, that reference, refer or attach such documents or deposition testimony are properly filed under seal. Defendants make the unfounded and incorrect legal assumption that judicial records filed on the public docket that reference or attach "Protected Information" material may be filed under seal by making the bare assertion that such material has been designated "Protected Information" under a protective order. Likewise, because of Defendants wholesale designations, they have forced the PSC's motions and responses in opposition to be filed under seal because those pleadings refer to what Defendants allege are protected materials, consisting of Defendants' internal documents, depositions of Defendants' employees, and various expert reports.[3]

At this stage of the litigation, documents, testimony, and expert reports used in substantive motion practice and thereafter at trial can no longer be shielded from a public presentation for two reasons. First, none of the documents, testimony, or expert reports constitute "trade secrets" that are entitled to protection under Fed. R. Civ. P. 26(c). Second, the public's right of access to court proceedings and documents is well established.[4] Moreover, the medical and scientific community,

---

[3] Prior to the filing of the first dispositive and *Daubert* motions by both parties, lead counsel for each of the respective parties conducted a teleconference to discuss the filing of materials under seal. Lead Counsel for Plaintiffs indicated at that time that the PSC would file all materials designated as protected under seal but that the PSC believed the sealing of these judicial records was not appropriate and that the PSC would move to unseal all of the filings and their exhibits to the extent that such materials are not properly sealed from public view.

[4] *See FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 412-13 (1st Cir. 1987) ("The presumption that the public has a right to see and copy judicial records attaches to those documents which properly came before the court in the course of an adjudicatory proceeding and which are relevant to the adjudication."); *Lugosch v. Pyramid Co.*, 435 F.3d 110, 119 (2d Cir. 2006) (overruled on other grounds) (holding that the common law right of public access to judicial documents—those that are filed with the court and are "relevant to the performance of the judicial function and useful in the judicial process"—is firmly rooted in our nation's history."); *Littlejohn v. BIC Corp.*, 851 F.2d 673, 677-78 (3d

as well as the FDA, and the consumers of Xarelto, have a right to be informed of the issues related to the safety of Xarelto. Further, PTO 12 on its face does not apply to this analysis, as PTO 12 provides: "[t]his Protective Order does not address the offering of Protected Information in evidence at trial or any court hearing . . . ." PTO 12 at ¶24. PTO 12 on its face is limited – it is "intended to solely facilitate prompt discovery and trial preparation". PTO 12 at ¶1.

Therefore, the PSC requests that this Court unseal all briefing and supporting exhibits that the parties have filed under seal in this case related to Rule 702 challenges or motions for summary judgment as, regardless of the terms of any protective order, these materials are not entitled to be sealed under the law. In light of the close of discovery and imminent trial, the reasons for maintaining confidentiality are no longer justified.

## LEGAL STANDARDS

"Courts have recognized that the public has a common law right to inspect and copy judicial records." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978). The Fifth Circuit also recognizes that the public's right of access attaches to documents filed with the court and instructs that the "district court's discretion to seal the record of judicial proceedings is to be exercised charily." *SEC v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993), *citing Federal*

---

Cir. 1988) ("[T]he public's common law right of access to judicial proceedings and records [] is beyond dispute."); *Rushford v. New York Magazine*, 846 F.2d 249, 253 (4th Cir. 1988) ("We believe that the more rigorous First Amendment standard [for right of public access to judicial documents] should also apply to documents filed in connection with a summary judgment motion in a civil case."); *SEC v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993) ("Courts have recognized that the public has a common law right to inspect and copy judicial records); *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1178-79 (6th Cir. 1983) (holding the right of public access applies to civil trials because "resolution of private disputes frequently involves issues and remedies affecting third parties or the general public" and "[t]he community catharsis, which can only occur if the public can watch and participate, is . . . necessary in civil cases."); *Grove Fresh Distribs. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994) (asserting "the First Amendment presumes that there is a right of access to proceedings and documents which have historically been open to the public and where the disclosure of which would serve a significant role in the functioning of the process in question."); *Kamakana. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) ("Historically, courts have recognized a general right to inspect and copy public records and documents, including judicial records and documents."); *Wilson v. Am. Motors Corp.*, 759 F.2d 1568, 1570 (11th Cir. 1985) (noting that "simply showing that . . . information would harm the company's reputation is not sufficient to overcome the strong common law presumption in favor of public access.").

*Savings & Loans Ins. Corp. v. Blain*, 808 F.2d 395, 399 (5th Cir. 1987). *See also, Lilheberg Enterprises Int'l, LLC v. Vista Hosp. of Baton Rouge, Inc.*, No. 04-2780, 2005 WL 1309158, at *1 (E.D. La. May 19, 2005) (Vance, J.); *Martin v. Lafon Nursing Facility of Holy Family, Inc.*, No. 06-5108, 2007 WL 2900498, at *1 (E.D. La. Oct. 3, 2007)(Africk, J.)(highlighting that the court should "sparingly" exercise its discretion to seal a record). Certainly, the wholesale filing of *Daubert* and dispositive motions under seal, without even a bare showing that any such materials are entitled to protection under the law, is inconsistent with such an instruction. The decision to seal a record "must be made in light of the **strong presumption** that all trial proceedings should be subject to scrutiny by the public." *United States v. Holy Land Found.*, 624 F.3d 685, 690 (5th Cir. 2010) (emphasis added).

The public's right of access applies regardless of who supports or opposes keeping a record under seal. *See Holy Land Found.*, 624 F.3d. at 690. As was stated by the Fifth Circuit:

> The principle of public access to judicial records furthers not only the interests of the public at large, but also the integrity of the judicial system itself. The right to public access 'serves to promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of its fairness (citations omitted).

*Id*. at 690, *citing Van Weyenberghe*, 990 F.2d at 849-850; *Littlejohn v. BIC Corp.*, 851 F.2d 673, 682 (3d. Cir. 1988).

The right of public access is particularly applicable to the dispositive and *Daubert* motions presently pending before the Court. Through the Court's decisions on these motions, the very right to a trial as well as the presentation of the evidence in any such trial will be decided. No decision is more important as to whether a defendant should be granted summary judgment, thereby precluding the need for trial, and such a decision cannot be made behind a veil of protection from public review. "Public confidence in the judicial system cannot long be maintained where

important judicial decisions are made behind closed doors and then announced in conclusive terms to the public, with the record supporting the court's decision sealed from public view." *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 230 (5th Cir. 2008).

Various Judges in the Eastern District of Louisiana acknowledge that the "court is a public forum [and its] record is presumptively a public record, open to view by all . . . ." *See Cruz v. City of Hammond*, No. 09-6304, 2015 WL 1525758, at *1 (E.D. La. Apr. 2, 2015)(Wilkinson, Mag. J.); *Lilheberg*, 2005 WL 1309158, at *1 (noting that there is a presumption of openness to judicial process, records, and proceedings). As such, "requests to seal the court's record are not lightly granted or considered." *Id*. Any doubt to seal a court record "must be construed in favor of disclosure." *Id*. at *4, *citing Marcus v. St. Tammany Par. Sch. Bd.*, No. 95-3140, 1997 WL 313418, at *5 (E.D. La. June 9, 1997) (Clement, J.).

This district court has also held that the right of access to court proceedings and documents filed with the court is fundamental "where the disclosure of which would serve a significant role in the functioning of the process in question." *Cruz*, 2015 WL 1525758, at *1. Specifically, "[p]ublic access serves to enhance the transparency and trustworthiness of the judicial process, to curb judicial abuses, and to allow the public to understand the judicial system better." *Id*.; *see also Bahwell v. Stanley-Bostitch, Inc.*, No. 00-0541, 2002 WL 1298777, at *1 (E.D. La. June 10, 2002) (Vance, J.) (noting that public access to judicial records offers the public a "more complete understanding of the judicial system, including a better perception of fairness."). This district court has emphasized that "sealing items in the court's public records must be avoided where it protects no legitimate privacy interest that would overcome the public's right to be informed." *Altier v. Worley Catastrophe Response, LLC*, 2011 U.S. Dist. LEXIS 115497 at *5 (E.D. La. Oct. 5, 2011) (Attached as Exhibit A).

The party seeking "to overcome the presumption of access bears the burden in showing that the interest in secrecy outweighs the presumption" that judicial proceedings and records shall be accessible to the public.[5] *Pamlab, L.L.C. v. Brookstone Pharm., L.L.C.*, No. 09-7434, 2010 WL 4363870 * 1 (E.D. La. Oct. 22, 2010) (Knowles, Mag. J.), *citing Leucadia, Inc. v. Applied Extrusion Techs.*, Inc., 998 F.2d 157, 165 (3d Cir. 1993). This burden is to be met in the filing of the motion to seal and cannot be met solely by relying upon the terms of a protective order as the standard for sealing court records, like motions and orders for summary judgment; the standard for sealing judicial records is much more stringent than the standard for protecting discovery material. *See Powers v. Duff & Phelps, L.L.C.*, No. 1:13–CV–768, 2015 WL 1758079, *7 (W.D. Tex. April 17, 2015) ("decision to designate documents as confidential does not mandate that the Court seal the record. The standard for sealing court documents is more stringent than standard for protecting discovery materials under a protective order."), *citing Udoewa v. Plus4 Credit Union*, 754 F.Supp.2d 850, 882 (S.D. Tex. 2010); *In re Terra Int'l Inc.*, 134 F.3d 302, 306 (5th Cir. 1998). No party has made such a showing.

## ARGUMENT

The policies articulated by the United States Supreme Court, the Fifth Circuit and various Judges in the Eastern District of Louisiana are directly applicable to the instant matter. Defendants have filed under seal and hidden from public view numerous substantive motions and supporting documentation that potentially could materially impact the bellwether trials scheduled to begin in April – including whether such trials occur as Defendants have moved for summary judgment in their favor. Such sealing measures violate the bedrock principles of transparency and judicial

---

[5] To be clear, the Plaintiffs do not have the burden of proving that the motions and exhibits subject to this motion should be placed under seal. That burden is solely the burden of Defendants as Plaintiffs do not believe it is appropriate to seal any of these records from public view or that the materials designated as "protected" are protected materials under the law.

openness that this Court strives to meet. Defendants' broad sealing tactics also affects the efficient resolution of the litigation as it hinders the parties' use of documents at hearings on dispositive issues and at the impending trials.

In *Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.*, No. 2:15-CV-1202-WCB, 2017 WL 434207, at *1 (E.D. Tex. Feb. 1, 2017) (Bryson, J.), the defendant drug manufacturer sought to file under seal two exhibits attached to its dispositive motions and motions to strike expert testimony. The exhibits consisted of an expert report, as well as an excerpt of the expert's deposition testimony. *Id*. Defendant claimed that these exhibits contained "highly confidential information related to [defendant's] revenues and highly confidential information related to . . . license agreements." *Id*. Likewise, plaintiff also sought to file under seal two exhibits consisting of excerpts from two expert reports, arguing "the reports contain the parties' confidential information." *Id*.

Relying on Fifth Circuit precedent and expressing the policies followed by the Eastern District of Louisiana, the court denied both parties' motions to seal the judicial record. *Id*. at *2. The Court found that neither the expert report nor the extensive excerpt of that report consisted entirely of confidential information worthy of being sealed by defendants. *Id*. Additionally, "the Court sees nothing about the license agreements and very few references to specific financial information in the excerpt of [an expert's] deposition" to allow the parties to seal the documents at issue.[6] *Id*. The court emphasized that "[w]here the materials relate to dispositive issues in the case, the interest in disclosure is at its greatest."[7] *Id*.

---

[6] The Court stated that to the extent the materials at issue qualify for sealed filing as protected financial or license agreement information, the parties must make a compelling showing of a particularized need to either seal or redact from the public version the alleged confidential material. *Id*.

[7] On the contrary, the "materials filed in connection with discovery disputes *unrelated to the merits of the case* have been identified as the kinds of court materials for which there is not a compelling need for public disclosure . . . ." *Id*. (emphasis added). Additionally, "materials such as discovery that is exchanged between the parties and *not made part of a court filing* are . . . not subject to the public interest in open judicial proceedings." *Id*. (emphasis added).

Here, the exhibits attached to the subject motions mirror those that were found to be not confidential in *Uropep GbR*. For example, like the defendants in *Uropep GbR*, Defendants here filed under seal thirteen exhibits attached to a *Daubert* motion and eight exhibits attached to a dispositive motion, *all* consisting of full expert reports. *See* Exhibits 1-13 attached to *Defendants' Joint Daubert Motion to Exclude Opinions and Testimony Regarding the Experts' 20-Second PT Cut-Off Guideline In the Orr and Boudreaux Cases* [Doc. 5114] and Exhibits G, H, O, Q-U attached to *Defendants' Joint Motion for Partial Summary Judgement as to Plaintiffs' Design-Defect Claims Under The Louisiana Product Liability Act* [Doc. 5115]. Additionally, like the defendants in *Uropep GbR*, Defendants here filed under seal six exhibits attached to the same *Daubert* motion and twelve exhibits attached to the same dispositive motion, which *all* contain excerpts of expert deposition testimony. *See* Exhibits 14-16, 19, 21, 22 attached to *Defendants' Joint Daubert Motion to Exclude Opinions and Testimony Regarding the Experts' 20-Second PT Cut-Off Guideline In the Orr and Boudreaux Cases* [Doc. 5114] and Exhibits A-F, J-N, P attached to *Defendants' Joint Motion for Partial Summary Judgement as to Plaintiffs' Design-Defect Claims Under The Louisiana Product Liability Act* [Doc. 5115]. These documents that Defendants have placed under seal are the very material that the Court in *Uropep GbR* held did not warrant sealing. The documents do not contain sensitive financial information.[8] Indeed, these documents have been inappropriately labeled as confidential and will hinder the efficient use of these materials both at the Court's March 23, 2017 hearing on the parties' *Daubert* and other dispositive motions and at the trial presentations that begins on April 24, 2017.

---

[8] Likewise, Exhibits 17 and 18 attached to *Defendants' Joint Daubert Motion to Exclude Opinions and Testimony Regarding the Experts' 20-Second PT Cut-Off Guideline In the Orr and Boudreaux Cases* [Doc. 5114] also do not contain financial information worthy of protection. Rather, Exhibits 17 and 18 offer lab results of plaintiffs and any sensitive information can be treated with redactions.

Similarly, the Court in *Cruz* denied motions to seal two exhibits attached to defendant's substantive motions. *Cruz*, 2015 WL 1525758, at *1. The exhibits included a prior settlement agreement and an excerpt from deposition testimony of a witness. *Id*. at *2. The Court held that defendant failed to meet its burden in demonstrating that its interest in privacy outweighed "the important public interest that all trial court proceedings should be subject to scrutiny." *Id*. at *3. The materials that the defendant sought to seal related to a matter of public concern, and the Court found that "sealing the record protects no legitimate privacy interest that would overcome the public's right to be informed." *Id*.

Here, the justifications for maintaining confidentiality cannot be sustained. Xarelto has caused and continues to cause thousands of traumatic injuries—even fatalities. Yet, Xarelto is still on the market and is being vigorously advertised by Defendants. Hundreds of thousands of individuals ingest Xarelto on a daily basis. Thus, the controversy surrounding this medication is a great matter of public concern, especially to the medical community that continues to receive only the information provided to them by the Defendants. Any justification that Defendants will suffer a financial injury or harm to its corporate reputation is a baseless attempt to keep relevant information shielded from public view. The documents that Defendants have filed under seal do not disclose any proprietary or trade-secret information as required by Rule 26(c). *See Pamlab, L.L.C. v. Brookstone Pharms., L.L.C.,* 2010 WL 4363870 (unsealing as non-confidential information relating to defendant's manufacturing and labeling procedures); *see e.g.* Exhibits C, E-J attached to *Defendants' Joint Motion for Partial Summary Judgment on the Ground That Federal Law Preempts Plaintiffs' Failure-to-Warn Claims* [Doc. 5110] (referencing information relating to Defendants' drug approval and labeling processes).

The public's right of access to information that will underpin the Court's judicial decisions and inform the public on matters of public health and safety *strongly* outweighs any interest in keeping this matter behind closed doors. None of Defendants' court filings should be kept under seal and confidential at the expense of the public interest. Likewise, the PSC's responses to the substantive motions and *Daubert* motions should also be unsealed. Moreover, maintaining these documents under seal will disrupt the efficient hearing on dispositive motions, as well as at the time of trial, unless the Court intends to seal the courtroom; such a notion would be inconsistent with the Fifth Circuit jurisprudence of open judicial proceedings. Because the common law right of access to judicial records is implicated here, this Court should follow the precedent established by the United States Supreme Court, the Fifth Circuit, and the Eastern District of Louisiana in unsealing Defendants' motions and supporting documentation, as well as the PSC's responses.

All of the motions seeking to maintain the dispositive and *Daubert* motions under seal rely upon one principal argument – that the protective order protects such documents.[9] This bare assertion is not sufficient to overcome the strong presumption of public access. Again, the standard for sealing a record is more stringent than that for protecting discovery material. *See Powers v. Duff & Phelps, L.L.C.*, 2015 WL 1758079 at * 7-8. Defendants have offered no compelling reason to maintain these motions and their accompanying exhibits behind a veil of secrecy. Plaintiffs submit this is primarily because no such basis exists.

---

[9] The motions for leave to file each of the motions and oppositions subject to this motion also did not comply with Local Rule 5.6, which requires any such motion to seal to be accompanied by a non-confidential supporting memorandum that sets out: (1) a non-confidential description of what is to be sealed; (2) a statement as to why sealing is necessary; (3) reference to governing case law; and (4) a statement of the period of time the party seeks to have the matter maintained under seal and how that matter is to be handled upon sealing. No such memoranda accompanied any of the motions to seal. PTO 12 cannot overwrite the Local Rules on filing under seal. *See* Local Rule 5.6(G) (allowing parties to negotiate stipulations like PTO 12 that provide access to materials *not* filed with the court). Materials that are filed with the Court must comply with Local Rule 5.6.

Two exhibits cited multiple times in Plaintiffs' opposition best highlight the baselessness of any suggestion these materials are the types of trade secret materials to be protected under the law and hidden from public view. The first is a medical information letter in Plaintiffs' opposition to one of the Defendants' Joint Motions for Partial Summary Judgment based on preemption. *See Exhibit 25 to Doc. 5531-2, Plaintiffs' Response in Opposition to Defendants' Joint Motion for Partial Summary Judgment on the Ground that Federal Law Preempts Plaintiffs' Dosing, Monitoring, and Other Design Related Claims [Rec. Doc. 5109].* This letter was sent to doctors ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[10] This was not information provided in the labeling for Xarelto but was still disseminated outside of the company if expressly requested. Defendants designated this document – disseminated to a limited public outside of the company – as protected. Such a document cannot be protected under the law and should not be hidden from the public.

The second exhibit is an internal label contingency document that set out the areas in which Defendants were willing to negotiate with the FDA on the language of the label at the time of Xarelto's approval. *See Exhibit 35 to Doc. 5531-2, Plaintiffs' Response in Opposition to Defendants' Joint Motion for Partial Summary Judgment on the Ground that Federal Law Preempts Plaintiffs' Dosing, Monitoring, and Other Design Related Claims [Rec. Doc. 5109].* The document expressly acknowledged ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[10] There is no evidence to suggest that any of the doctors for the bellwether plaintiffs received or requested such a letter.

███   While this document may very well be embarrassing and is certainly information Defendants do not want doctors in the United States to see, it is not protected under the law. It is neither a trade secret nor the type of information that would provide one of the Defendants' competitors a competitive advantage. It is, however, critical safety information that has been hidden from the public and the FDA.

The conduct of the Defendants in discovery shows that not even the Defendants themselves believe the materials cited in expert reports are entitled to actual protection. Throughout expert discovery, Defendants have attempted to "game" the infrastructure in place and gain some type of perceived advantage in the "battle of the experts." Defendants have done this by impugning the motives, credibility and reliability of Plaintiffs' experts by questioning why they have not publicly provided their opinions that Xarelto is an unreasonably dangerous drug that is needlessly injuring consumers in the United States to their peers or tried to publish such opinions in the medical literature to warn their colleagues. Defendants bluster with such fury because they know that Plaintiffs' experts, despite their desire to warn others about the dangers of Xarelto, cannot do so because they are subject to the protective order of this Court.

For example, counsel for Bayer repeatedly badgered Plaintiffs' expert, Dr. Curt Furberg, about whether he expressed the views contained in his report to his colleagues at Wake Forest. ("Q. Have you expressed any of your views about Xarelto in the EINSTEIN study program to anybody at the formulary – Wake Forest formulary committee?"). Dr. Furberg answered by informing counsel that he had not done so specifically because this material was confidential. ("I've said over and over again, my views are in the report. I have not talked about the report with anyone outside [Plaintiffs' counsel] and the lawyers. And I'm obliged - - it's a confidentiality

thing.")  Despite this answer, Dr. Furberg continued to be interrogated about complying with a court order.  *See* Deposition of Curt Furberg M.D., at 130:12 – 133:12 (Attached as Exhibit B).

Perhaps if this were an isolated incident, one could conclude that counsel for Bayer was unaware of the terms of the protective order.  However, Plaintiffs' experts have been consistently questioned on such matters despite the fact that Plaintiffs' counsel continue to object on the grounds that our experts cannot make such disclosures pursuant to the orders of the Court.  *See, e.g.,* Deposition of Suzanne Parisian, M.D., at 220:4 – 226:7 (Attached as Exhibit C); Deposition of Laura Plunkett, Ph.D. at  163:12 – 166:18; 369:9-370:14 (Attached as Exhibit D; Deposition of David Kessler, M.D. at 128:18 – 130:18; 356:1 – 357:16 (Attached as Exhibit E); Deposition of Frank Smart, M.D. at 259:2 – 261:4 (Attached as Exhibit F); Deposition of Henry Rinder, M.D. at 29:8 – 30:15; 47:18- 57:10 (Attached as Exhibit G).  This discovery conduct alone should cause the Court to realize that Defendants are abusing PTO 12 to their litigation advantage which cannot be allowed – not only during discovery - but certainly not going forward at the time of trial.

Defendants cannot meet the high burden of overcoming the presumption of public access with respect to the *Daubert* and dispositive motions (as well as the responses thereto).  These motions and their exhibits should be unsealed so that the public can access important and substantive rulings. Defendants' wholesale designation of every internal substantive document as "protected" under PTO 12 for discovery purposes, does not satisfy the Fifth Circuit standard for sealing judicial records - in fact, to date Defendants (who carry the burden on each and every document so sealed), have done nothing to support their motions to seal other than paying lip service to PTO 12. Defendants' motions come up woefully short in overcoming the heavy burden of the presumption of an open public record.

Not only does the law require these proceedings to be conducted in the public, there are additional practical reasons for the Court to decide *now*, prior to trial, whether Defendants will continue to be allowed to hide behind a veil of secrecy. While none of the documents attached to the dispositive motions are entitled to be sealed under Rule 26 and Fifth Circuit precedent, Defendants maintain that these documents, as well as virtually every document they have produced in discovery should remain "protected" – many of which will end up being used at pre-trial hearings and at the trials themselves. Virtually every company witness, expert and/or physician will refer and use documents that have been marked by defendants as "protected" during his or her testimony. Both the parties and the Court need to be aware prior to trial whether the courtroom will be required to be cleared every time a document marked protected will be discussed in open court. Plaintiffs submit that such a requirement will necessitate a trial that takes place outside of the public view given that the vast majority of exhibits and testimony that Plaintiffs will present and offer into evidence have been inappropriately designated by Defendants as "protected".

## **CONCLUSION**

For the foregoing reasons, the PSC respectfully requests that the Court unseal and re-designate as non-confidential (no longer "protected" under PTO 12) all judicial records, including Defendants' Joint Motions for Partial Summary Judgement and *Daubert* Motion, as well as their memorandums in support and attached exhibits and further unseal the PSC's responses and the attached exhibits to these motions.

Respectfully submitted,

Dated: March 7, 2017

*/s/ Leonard A. Davis*
Leonard A. Davis, Esq. (Bar No. 14190)
**HERMAN, HERMAN & KATZ, LLC**
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Email: ldavis@hhklawfirm.com

Gerald E. Meunier (Bar No. 9471)
**GAINSBURGH BENJAMIN DAVID MEUNIER & WARSHAUER, LLC**
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
Email: gmeunier@gainsben.com

*Plaintiffs' Liaison Counsel*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 7, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs and Defendants by operation of the court's electronic filing system and served on all other plaintiff counsel via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre- Trial Order No. 17.

*/s/ Leonard A. Davis*
**LEONARD A. DAVIS**