# EXHIBIT C

Protected - Subject to Further Protective Review

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

IN RE:  XARELTO (RIVAROXABAN)
PRODUCTS LIABILITY LITIGATION          MDL No. 2592
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~        SECTION L

THIS DOCUMENT RELATES TO ALL           Judge Eldon E. Fallon
CASES                                  Mag. Judge North

- PROTECTED -

- SUBJECT TO FURTHER PROTECTIVE REVIEW -

THURSDAY, DECEMBER 8, 2016

SUZANNE PARISIAN, M.D.

            Videotaped deposition of SUZANNE PARISIAN,
M.D., held at the law offices of Burg Simpson, 2398
East Camelback Road, Suite 1010, Phoenix, Arizona,
commencing at 9:13 a.m., on the above date, before
Sommer E. Greene, a Certified Court Reporter and
Certified Realtime Reporter.

Golkow Technologies, Inc. - 1.877.370.DEPS

1              I just feel that it's safer to be away from
2    the FDA and not have any -- any evidence that there's
3    something that should not have occurred occur.
4         Q.   BY MR. MURDICA:  Have you conveyed to FDA your
5    concerns about Xarelto?
6         A.   No, and I would look at that as privileged
7    information.  Any time I'm involved in litigation, I sign
8    a confidentiality agreement.  This is privileged.  I
9    wouldn't be under the ability just to go into the FDA and
10   tell information to the FDA.
11        Q.   There's plenty of information -- plenty of your
12   opinions are not confidential.  You haven't made --
13   you're so concerned about patients and you made no
14   effort?
15             MR. WEINKOWITZ:  Objection to the form.
16        Q.   BY MR. MURDICA:  Dr. Parisian, have you made no
17   effort to inform FDA about your concerns?
18        A.   I would not because the information that I'm
19   using is confidential information that I received from
20   discovery.  It's not available information.  It's not the
21   FDA's.  So I would look at it as I'm precluded from
22   providing confidential information that I have from your
23   files to the FDA.
24             Now, if we go to court, the FDA may receive
25   these documents in terms of litigation.  That's

Protected - Subject to Further Protective Review

Page 221

1 different.  They can have them, and I know that there are
2 cases where the FDA has gotten documents that have been
3 made public.  But at this time, I look at this as all
4 confidential, that I'm discussing this with you today,
5 what I'm saying, what my opinions are are confidential.
6    Q.   All of your opinions about Xarelto are based on
7 confidential information is your testimony.  Correct?
8    A.   That's right.
9          MR. WEINKOWITZ:  Counsel, will you actually
10 stipulate that the protective order doesn't apply to her
11 report and the underlying documents?
12          MR. MURDICA:  I -- I appreciate the snark
13 and the wasting of my time.
14          MR. WEINKOWITZ:  So, no, you're not going to
15 stipulate to that?
16          MR. MURDICA:  Why -- why are you wasting our
17 time on this?  There's plenty of things she's reviewed
18 that are publicly available, and many of her opinions do
19 not involve confidential information.  So it has nothing
20 to do with the protective order.  It has to do with what
21 she's reviewing.
22          I mean, is that like -- is that your big
23 moment?  Is that what you just waited to do to waste our
24 time this afternoon?
25          MR. WEINKOWITZ:  I assume that was a no, you

1  won't stipulate to that?
2             MR. MURDICA:  Well, I'd like you to be quiet
3  and let me take the deposition.
4             MR. WEINKOWITZ:  Okay.  Go ahead.
5        Q.   BY MR. MURDICA:  Dr. Parisian, it's your
6  opinion that every concern you have about the safety of
7  Xarelto is based on confidential information.  Correct?
8        A.   Yes, sir.
9        Q.   And that you've been precluded to go tell FDA
10 about your views.  Correct?
11       A.   Right.  And there are cases where the report
12 has been made public, and they've been put on the
13 internet by the -- by the people who are the attorneys
14 and stuff.  So there are cases like that.  I don't know
15 of this being one.
16       Q.   Okay.  And it's also your view that none of
17 your opinions here are things -- are -- are views that
18 are public that are -- that have been debated regarding
19 Xarelto.  Correct?
20       A.   You know, I'm not going -- I just find it --
21 just like not going to the FDA and sitting down with
22 members of the FDA where it may be suggested that I said
23 something or that something occurred.  I find it just
24 cleaner to sit here, and this is the bulk of the
25 documents I reviewed.  Some of them are classified,

Protected - Subject to Further Protective Review

Page 223

1  confidential.  Some are not.  I'm not going to sit there
2  and parse which one is which.
3            I -- I look at it as I am not given liberty
4  to go and provide this information to the FDA.  Unless
5  I'm released by some order of the Court or the attorneys
6  or told that I can talk to someone else, you know, at the
7  FDA, I'm not going to do that.
8            And that was what I got trained to do at the
9  FDA.  You don't give information about a record to
10 anybody else unless you've been given the authority to
11 provide that information.
12           It was like I was talking about the FDA's
13 precluded from talking about things that have not been
14 successful.  The same holds the way I've been trained
15 from the FDA in terms of litigation.
16    Q.   Doctor, these 16 opinions, none of them
17 reference a confidential document in the consolidated 16
18 opinions.
19    A.   Oh, those opinions are not referencing the only
20 document that went into the opinions.  I'm -- in those 16
21 opinions, I'm providing sometimes a document, but it is
22 the bulk of the 400 pages of this report that go into
23 those 16 opinions.  I've tried to synthesize what I've
24 reviewed into 16 discrete opinions that we can discuss
25 today as to what are your opinions, Dr. Parisian, as to

Protected - Subject to Further Protective Review

Page 224

1  the review of the documents?
2           And so that's a methodology I first learned
3  at the FDA.  Look at the documents, then try to put them
4  in a useable format as to what your summary of your
5  opinions are.
6      Q.   Okay.
7      A.   The opinions don't reference every document
8  that fits with the opinion, but they do reference the
9  applicable regulations that I'm thinking about, and some
10 of them have an example of what I'm talking about, but --
11     Q.   Okay.
12     A.   -- there -- this is a boiling down of all of
13 these pages into those 16 opinions.
14     Q.   You, Dr. Parisian, believe -- you're concerned
15 the Xarelto label is inadequate as -- as currently
16 stated.  Correct?
17     A.   Yes, sir.
18     Q.   Okay.  But you're not concerned enough to
19 either publish your opinions or go to the FDA with your
20 views without regard to confidential documents.  Correct?
21          MR. WEINKOWITZ:  Objection.
22          THE WITNESS:  I would be precluded from
23 doing that.  I mean, you're the company that in some ways
24 that I'm saving from doing that.  I don't -- I don't
25 really think that I could go and speak about your things

Protected - Subject to Further Protective Review

Page 225

1  to the FDA any more than I could any other company I've
2  been involved with litigation until I'm told by some
3  source that I can do that.  So I'm not going to talk
4  about what I know and the documents that support it.
5       Q.   BY MR. MURDICA:  Not talking about documents,
6  Dr. Parisian.
7       A.   Well, I am, because the documents are the basis
8  of my opinions in terms of the regulations.
9       Q.   Okay.
10      A.   So they have to be supported factually.  And so
11 I'm not going to go and discuss the facts of the case
12 with the FDA unless I'm given permission by either you or
13 someone but definitely not me to just go and talk and
14 engage with the FDA.
15      Q.   And that would be the same excuse for why you
16 haven't tried to publish your opinion in a scientific
17 journal.  Correct?
18           MR. WEINKOWITZ:  Object to the form.
19           THE WITNESS:  It's not an excuse.  It's the
20 reality as a regulatory expert.  I don't know of
21 regulatory experts involved in litigation that would take
22 confidential documents to support their opinions and
23 publish them.  I don't believe that's -- I don't think I
24 know of any regulatory expert that would do that.
25      Q.   BY MR. MURDICA:  I would agree you would

Protected - Subject to Further Protective Review

Page 226

```
 1   violate the protective order to take confidential
 2   documents --
 3        A.   Thank you.
 4        Q.   -- Dr. Parisian, but that's not what we're
 5   talking about.
 6        A.   Yes, we are.  These opinions are based on
 7   confidential documents.
 8        Q.   Okay.  All right.  Opinion number 1 on page 9.
 9   All right.  Are you there?
10        A.   Yes, sir.
11        Q.   Now, if you look at the sentence beginning
12   "Without" -- "Without providing monitoring
13   recommendations" --
14        A.   Uh-huh.
15        Q.   You see this?
16        A.   Yes, sir.
17        Q.   -- "or the ability for a physician to adjust a
18   patient's dose, certain patients were placed at increased
19   risk of major bleeding without additional benefit."
20             Do you see that sentence?
21        A.   Yes, sir.
22        Q.   You don't know which patients are the certain
23   patients that were placed at additional risk of bleeding.
24   Correct?
25        A.   Well, it -- it goes into the sentence before
```