UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: XARELTO (RIVAROXABAN) | * | MDL 2592 |
| PRODUCTS LIABILITY LITIGATION | * | |
| | * | SECTION L |
| THIS DOCUMENT RELATES TO: | * | |
| *ALL CASES* | * | JUDGE ELDON E. FALLON |
| | * | |
| | * | MAG. JUDGE NORTH |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * *

---

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF
MOTION TO PRECLUDE SPECULATIVE EXPERT TESTIMONY
ABOUT POTENTIAL OUTCOMES FROM OTHER ANTICOAGULANTS[1]**

---

## I.    Defendants' Opposition is Based on False Premises.

Bayer and Janssen's opposition to Plaintiff's motion to preclude speculative expert testimony about what may or may not have happened to Mr. Boudreaux and/or Ms. Orr if they had been using an anticoagulant other than Xarelto is based on a false premise: that another anticoagulant will be presented as the "alternative design" required to establish a design defect claim under the Louisiana Product Liability Act ("LPLA"). Defendants' repetitive efforts to misconstrue Plaintiffs' causes of action are no more factually correct in this motion than in the numerous other motions where Defendants have espoused theories of the case that are not being brought by Plaintiffs.

---

[1] Plaintiffs filed three separate motions seeking to preclude speculative expert testimony about potential outcomes from other anticoagulants, due to the various deadlines that were in place depending upon the date on which the expert depositions had been taken and/or the cases for which the opinions had been offered. This reply memorandum relates to the first of those three motions, filed on January 20, 2017, at Record Doc. 5121.

While Defendants correctly state that evidence of an "alternative design" must be presented to support a design defect claim,[2] Plaintiffs do not intend to assert that the alternative design of Xarelto was warfarin or some other New Oral Anticoagulant ("NOAC"). Rather, Plaintiffs intend to assert that the alternative design of Xarelto was the same drug (Xarelto), with the addition of: (1) an anti-Factor Xa assay that would allow a clinician to assess whether to individually tailor the Xarelto dose to appropriately balance the risk/benefit of the drug or to take patients at too high of a bleeding risk off the drug; and/or (2) a reversal agent.[3] Thus, the only basis alleged by Defendants for presenting testimony about the potential outcomes from other anticoagulants – the need to show what would have happened if the proposed alternative design of other anticoagulants had been used – has no merit and is not applicable to the bellwether cases.[4]

Defendants also claim that Plaintiffs are trying to preclude testimony "that Mr. Boudreaux had underlying health conditions that predisposed him to bleeding regardless of the medicine used (Dr. Smith)."[5] That is an overstatement of Plaintiffs' position. Plaintiffs have not sought to preclude any allegations about any underlying health conditions that may have predisposed Mr.

---

[2] *See* La. Rev. Stat. § 9:2800.56. Proof of an "alternative design" is not required by Plaintiffs' other cause of action, failure to warn/instruct under La. Rev. Stat. § 9:2800.57.

[3] For a more detailed description of the design defect claim, please see Plaintiffs' Response in Opposition to Defendants' Joint Motion for Summary Judgment as to Plaintiffs' Design-Defect Claims Under the Louisiana Product Liability Act [Record Doc. 5606].

[4] Defendants' presentation of this argument is disingenuous, at best, given that they acknowledged in their opposition that "alternative methods of treatment are not alternative designs" and "the existence of alternative products does not demonstrate the existence of a specific alternative design." *See* Defendants' Memorandum in Opposition to Plaintiffs' Motion to Preclude Speculative Expert Testimony About Potential Outcomes from Other Anticoagulants ("Def. Opp.") at 3-4. Further, Defendants conceded in their opposition that this evidence is only relevant as rebuttal evidence for a theory Plaintiffs are not bringing. *See id.* at 8 ("If Plaintiffs are permitted to pursue a theory under the LPLA based on the assertion that other anticoagulant medicines are safer alternatives, Defendants are entitled to rebut those assertions by showing that Plaintiffs cannot rule out that [Plaintiffs] would have experienced a bleeding event on a different medicine.")

[5] *See id.* at 1. Plaintiffs presume that Defendants are referencing Dr. Smith's opinion that Mr. Boudreaux was predisposed to a bleeding event due to an alleged arteriovascular malformation ("AVM"). *See id.* at 2, 6-7. While Plaintiffs dispute that opinion, they do not dispute Defendants' right to present that opinion. Plaintiffs intend to challenge that opinion through cross-examination and the testimony of other experts.

Boudreaux to bleeding because, unquestionably, opinions about other potential causes of bleeding are relevant. All that Plaintiffs seek to exclude is the latter part, with regard to what may or may not have happened if Mr. Boudreaux had been using a different anticoagulant, because such testimony would be speculative and irrelevant, as addressed in Plaintiffs' opening memorandum.

## II. Only Defendants' Experts Have Proposed Presenting Speculative Evidence About Potential Outcomes from Other Anticoagulants.

Defendants have presented excerpts of testimony from two of Plaintiffs' experts – Dr. Leissinger and Dr. Liechty – stating they could not say the bleeding events at issue would not have occurred, or the outcomes would have been different, if Mr. Boudreaux or Mrs. Orr had used a different anticoagulant.[6] These statements were made, however, solely in response to questions asked during the cross-examination portion of their depositions, as noted in Defendants' memorandum.[7] These statements were not made in their reports,[8] and will not be elicited by Plaintiffs at trial, as Plaintiffs intend to try a case about Xarelto – not some other drug that neither Plaintiff took. Dr. Leissinger and Dr. Liechty instead intend to testify about the bleeding events that actually did occur while Mr. Boudreaux and Mrs. Orr were taking Xarelto.

The cited testimony does not even support Defendants' contention. Rather than agreeing with Defendants' experts that a bleeding event could not be ruled out, Dr. Leissinger testified that she "cannot comment."[9] She could not comment because testimony about whether Plaintiffs would have bled on some other unnamed anticoagulant that Plaintiffs were not taking is rank speculation. Dr. Liechty simply confirmed that he could not say, to a reasonable degree of medical certainty,

---

[6] *See id.* at 2, 4.

[7] *Id.*

[8] *See* Defendants' Exhibit F, Leissinger Report, and Defendants' Exhibit C, Liechty Report.

[9] *See* Defendants' Exhibit A, Leissinger Dep., at 178:10-21 ("I cannot comment on whether he may have bled or may not have bled on any other … drug..").

that Mrs. Orr's outcome would have been any different on some other drug she was not taking.[10] Of course he could not offer such testimony, as it is purely speculative. There is no evidence that Plaintiffs would or would not have bled on any other drug on the market that they were not taking.

Plaintiffs' experts have familiarized themselves with the evidence pertaining to Xarelto. This includes both publicly available information (which they would have pertaining to all anticoagulants) and information that has been provided to them through discovery from Defendants. This latter category of material was limited to information pertaining to Xarelto. Additional information that Defendants' experts may have had regarding other anticoagulants was not available to Plaintiffs' experts, and it was improper and unreliable to question Plaintiffs' experts about other anticoagulants for which they did not have equivalent information. This is especially true given that Plaintiffs are not alleging that Xarelto does not warn about the risk of bleeding.

The core theory of liability is that Defendants failed to instruct doctors how to safely use Xarelto and that, by conducting a simple blood test, people at a high risk of bleeding, like Plaintiffs, can be taken off Xarelto. Whether drugs with different dosing regimens and/or different monitoring requirements could have also lead to a bleed is irrelevant to these cases. The relevant inquiry is whether the specific bleed or the inability to immediately treat the specific bleed of these Plaintiffs would have occurred had Defendants properly warned their physicians – not if some unknown bleed at some unknown time on some unknown other anticoagulant would have occurred.

Defendants also cite excerpts from the reports of four of Plaintiffs' experts – Drs. Leissinger, Liechty, Rinder, and Cerri – that reference other anticoagulants, but none of those

---

[10] *See* Defendants' Exhibit B, Liechty Dep., at 377:9-14.

references are to statements about what may or may not have happened to Mr. Boudreaux or Mrs. Orr if they had used another anticoagulant. Rather, as evident from Defendants' own memorandum, the statements were limited to general discussions about the overall risks and benefits of various anticoagulants.[11] Additionally, three of those experts painstakingly cited the studies and literature upon which they relied in making those statements.[12]

## III. Defendants' Experts Remain Unqualified to Testify About Potential Outcomes from Other Anticoagulants

Plaintiffs stand by the statements in their opening memorandum regarding why Defendants' experts are unqualified to testify about what may or may not have happened to Mr. Boudreaux and/or Ms. Orr if they had been using an anticoagulant other than Xarelto.[13] It may be true that Dr. Branch prescribes anticoagulants, and it may be true that he and Dr. Piazza and Dr. Smith treat patients who take anticoagulants and/or may have experienced bleeding events. Those facts, however, are of no consequence. Those experiences do not provide them with clairvoyance to predict what may or may not have happened if a drug that was not taken had been taken.

These three experts are not epidemiologists; they are not biostatisticians; they are not hematologists. They did not log and perform analyses of statistically significant samples of patients over extended periods to assess the incidence of bleeding, or the severity of bleeding, with patients with health conditions similar to those of Mr. Boudreaux or Mrs. Orr while on each different type of anticoagulant available on the market. They also did not rely on data from anyone else who performed such analyses. All of this is undisputed. Indeed, it appears that outside of their own

---

[11] *See* Def. Opp. at 3.

[12] *See* Defendants' Exhibit F, Leissinger Report, at 16-17; Defendants' Exhibit C, Liechty Report, at 8-9; Defendants' Exhibit D, Rinder Report, at 18-19.

[13] *See* Plaintiffs' Memorandum in Support of Motion to Preclude Speculative Expert Testimony About Potential Outcomes from Other Anticoagulants [Record Doc. 5121-1], at 5-8.

general feelings about what they can remember from their own anecdotal experiences, they relied only on literature stating that all anticoagulants carry a risk of bleeding, but that is far different from literature comparing the actual rate or extent of bleeding events among various populations using various anticoagulants.

IV.   **CONCLUSION**

For these reasons, and the reasons stated in Plaintiffs' opening memorandum, Plaintiffs respectfully request that all experts, including Dr. Branch, Dr. Piazza, and Dr. Smith, be precluded from speculating about whether the outcome would have been different and/or would have been worse for Mr. Boudreaux and/or Ms. Orr if a different anticoagulant had been used.

<div style="margin-left:50%;">

Respectfully submitted,

</div>

Dated: March 10, 2017

<div style="margin-left:50%;">

*/s/ Leonard A. Davis*
Leonard A. Davis, Esq. (Bar No. 14190)
***HERMAN, HERMAN & KATZ, LLC***
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Email: ldavis@hhklawfirm.com

Gerald E. Meunier (Bar No. 9471)
***GAINSBURGH BENJAMIN DAVID MEUNIER & WARSHAUER, LLC***
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
Email: gmeunier@gainsben.com

***Plaintiffs' Liaison Counsel***

</div>

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on March 10, 2017, the foregoing memorandum was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs and Defendants by operation of the court's electronic filing system and served on all other plaintiff counsel via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre- Trial Order No. 17.

*/s/ Leonard A. Davis*
**LEONARD A. DAVIS**