# EXHIBIT 8



Übersicht | home (english) | Fotos Gallery

# KEYCODE BAYER #44

Newsletter KCB
News
Portrait
Campaigns
UN Global Compact
Links
Contact
Search our site

BAYER TO CUT MEDICAID DRUG PRICES

## GIANT MUST PAY STATES $14 MILLION

One of the world's largest drug companies said Monday that it would reduce prices on some products paid for by the government in the wake of a trailblazing Medicaid fraud settlement finalized between the drugmaker and state and federal regulators.

Bayer Corp., a U.S. subsidiary of Bayer AG of Germany, would be the second major drug company to cut prices this year amid allegations that U.S. drug companies lied to the government about the wholesale prices of certain pharmaceuticals. The settlement, signed by Bayer last week, divides a $14 million payment by Bayer among 45 states, including $114,000 to the Illinois Medicaid program. In addition, it finalizes a five-year agreement under which the drugmaker is obligated to make thorough disclosures of the prices it sets and upon which the government bases it reimbursements.

More broadly, the settlement with Bayer is expected to serve as a model for similar arrangements for up to 20 drugmakers--including five in the Chicago area--that are still under investigation in the 4-year-old state and federal pricing fraud inquiry.

The Medicaid investigation is one of several pharmaceutical pricing inquiries undertaken since the early 1990s as regulators and policymakers grappled with a central flaw in the way key government programs pay for drugs. Such programs allow drugmakers to set the price higher than what many private-sector customers would pay.

Estimates of overpayments run in excess of $1 billion annually and may be especially troubling because of increasing political pressure on Congress to greatly expand drug coverage by Medicare, the federal insurer for nearly 40 million elderly and disabled people. The Bayer settlement was announced in September but did not take effect until 22 states with the most at stake approved the deal. The last two of the states, Illinois and California, signed off on the agreement late last month.

It is not clear how much Bayer will drop its prices and on how many drugs. Also unknown is how much those cuts will save taxpayers. Medicaid officials should see the new Bayer price list by the end of the month. The savings are expected to be significant.

In its settlement, Bayer did not admit wrongdoing, but agreed to the financial settlement and a more accurate reporting of prices. "I would anticipate that [Medicaid prices] would ultimately be cheaper," said Bayer spokesman Robert Kloppenburg. "The pricing is just being implemented now."

In the financial portion of the agreement, the biggest chunks of money, $2.8 million and $2.7 million, respectively, will go to Florida and New York, which operate two of the largest Medicaid programs in the country.

The settlement with Bayer grew out of a federal suit filed by a whistleblower in Florida in the mid-1990s that was eventually joined by the U.S. Department of Human Services' Office of Inspector General, the Justice Department and a coalition of state Medicaid Fraud Control

Units. Bayer already has lowered prices for five drugs identified by investigators as having inflated prices. Those reductions are hefty: a 28 percent drop in charges for Kogenate, (a blood clotting agent) and an 86 percent cut in the cost of saline solution, which dropped from $11.14 to $1.53 per package, according to investigators.

The five Bayer drugs were on a list of 51 drugs made by more than 20 manufacturers for which investigators documented "a pattern of misrepresentation" that resulted in Medicaid overpaying for the products. Beginning in mid-2000, drugmakers agreed to provide new, substantially lower prices for those 51 drugs.

Despite the lower prices on the 51 drugs, however, not all states have cut reimbursements to providers. The State of Kentucky Medicaid program, for instance, is paying what investigators regard as inflated prices for the 51 drugs spotlighted in their probe. A Kentucky Medicaid spokesman said the agency received pressure from providers and was worried that they would stop carrying the drugs in rural areas of the state. Government investigators have argued that drugs were never intended to be a source of profit for pharmacists or doctors at Medicaid's expense. Profit is supposed to come from service charges like dispensing or injection fees.

Excerpts from an article by Andrew Zajac and Bruce Japsen, Chicago Tribune Staff Reporters
Published August 14, 2001

---

KEYCODE BAYER is published by the German group Coalition against BAYER-dangers which has been monitoring the BAYER Corporation for more than 20 years.

CBG/Coalition against BAYER-dangers collects information about BAYER and coordinates activities against violations of human and environmental rights caused by this company. Anyone who has information on possibly illicit activities of BAYER or who wants to receive our newsletter regularly - please let us know. Anyone who needs photos or information concerning BAYER is invited to contact us:

CBG/Coalition against BAYER-dangers, Postfach 15 04 18,
40081 Duesseldorf, Germany

E-mail: CBGnetwork@aol.com
website: www.CBGnetwork.org
Fax: (+49) 211 333 940 Tel: (+49) 211 333 911

**United States Department of Justice**
*Michael J. Sullivan*
U.S. Attorney
District of Massachusetts

*United States Attorney's Office*
*John Joseph Moakley U.S. Courthouse*
*1 Courthouse Way, Suite 9200*
*Boston, MA 02210*
*Press Office: (617) 748-3139*

April 16, 2003

PRESS RELEASE

## BAYER CORPORATION AND GLAXOSMITHKLINE TO PAY $344 MILLION TO RESOLVE ALLEGATIONS OF HEALTH CARE FRAUD AGAINST STATE PROGRAMS

Boston, MA... The nation's largest-ever Medicaid fraud settlements have been reached today with two American pharmaceutical companies, BAYER CORPORATION and GLAXOSMITHKLINE. The companies have agreed to pay settlement amounts totaling more than $344 million for their fraudulent conduct in a scheme commonly referred as "lick and stick," in which they sold re-labeled products to an HMO at deeply discounted prices, and then concealed and avoided their obligation to pay millions of dollars in additional rebates to the Medicaid program.

Michael J. Sullivan, United States Attorney; Thomas Reilly, Massachusetts Attorney General; Janet Rehnquist, Inspector General of the Department of Health and Human Services, Office of Inspector General; Kenneth W. Kaiser, Special Agent in Charge of the Federal Bureau of Investigation in New England; and Mark Dragonetti, Resident Agent in Charge of the Food and Drug Administration's Office of Criminal Investigations, announced today that American pharmaceutical manufacturers BAYER CORPORATION ("Bayer") and GLAXOSMITHKLINE ("GSK"), have each agreed to settle charges in connection with their efforts to evade paying rebates to states' Medicaid programs which were based on the lowest drug prices they were offering to an HMO.

Federal law requires drug manufacturers participating in the Medicaid program to report their "best prices" to the federal government, and to pay rebates to Medicaid to ensure that the nation's insurance program for the poor receives the same favorable drug prices offered to other large purchasers of drugs. As participants in the Medicaid Drug Rebate Program, BAYER and GSK were required to report their "best prices" on drugs to the Centers for Medicare and Medicaid Services ("CMS"), formerly the Health Care Financing Administration, and to pay rebates to the states on a quarterly basis.

At the time of the offenses, Kaiser Permanente Medical Care Program ("Kaiser") was the nation's largest HMO, providing care and treatment to more than 6 million persons, and often purchased drugs directly from drug manufacturers to save on costs for its members, negotiating aggressively for lower prices. Both BAYER and GSK provided discounted prices to Kaiser for their drugs and engaged in "private labeling" for the HMO, affixing different labels to their drug products. These slightly altered labels allowed BAYER and GSK to avoid reporting to the federal government the new low prices given to Kaiser and avoid paying millions of dollars in additional drug rebates to the Medicaid program. This type of fraud scheme is known as "lick and stick" in reference to the use of a new label on the drug.

"Misconduct in the pharmaceutical industry negatively impacts state and federal treasuries, and robs our citizens and taxpayers of important and necessary resources," stated U.S. Attorney Sullivan. "This investigation was a model of cooperation and teamwork amongst and between the many interested federal and state agencies and prosecuting authorities. The result is an outstanding resolution of this matter."

Today's agreement with BAYER calls for BAYER to pay a total of $257,200,000 to resolve criminal charges and civil

liabilities in connection with the fraudulent drug pricing of its drugs, Cipro, an antibiotic, and Adalat CC, an extended release, anti-hypertensive.

The criminal portion of the global agreement calls for BAYER to plead guilty to charges that it violated the Food, Drug and Cosmetic Act by failing to notify the FDA between August and December, 1995, of its production of private label Cipro for Kaiser. BAYER has agreed to pay a criminal fine of $5,590,800, and will admit that it engaged in this conduct with the intent to defraud or mislead.

In the civil portion of its global settlement, BAYER will resolve its federal civil False Claims Act liabilities and pay the United States, 49 states, the District of Columbia, and Public Health Service entities $251,609,200 in civil damages for losses suffered by the Medicaid programs and the Public Health Service entities due to BAYER's failure to report its Kaiser private label price to the government as the true "best price" for its drugs.

Additionally, BAYER has agreed to comply with the terms of an amended corporate integrity program designed to ensure that BAYER will accurately report its best price information to the government.

In its agreement, GSK will settle its federal civil False Claims Act liabilities and pay $87,600,922 to the United States, 49 states, the District of Columbia, and Public Health Service entities as civil damages for losses suffered by the Medicaid programs and the Public Health Service entities due to GSK's conduct. GSK repackaged and privately labeled Paxil, an anti-depressant, and Flonase, a nasal spray for Kaiser at discounted prices but also failed to report these lower prices as "best prices" to the government.

GSK has also agreed to comply with the terms of a corporate integrity program designed to ensure that GSK will accurately reports its "best price" information to the government.

"We are experiencing a time of skyrocketing prices for prescription drugs, where state and federal budgets are stretched to the breaking point. The effect of leading corporations seeking to avoid paying millions of needed dollars to our nation's health care programs can be devastating," commented U.S. Attorney Sullivan. "So-called 'lick and stick' schemes rob the federal and state taxpayers that fund Medicaid, our system which provides drug coverage for our nation's poor. Such conduct by pharmaceutical companies is intolerable and we in law enforcement will remain focused on protecting our nation's Medicaid program."

"Companies are entitled to a fair profit, but they are not entitled to cheat the system on the backs of the state and federal Medicaid programs," stated Massachusetts Attorney General Reilly. "The Commonwealth cannot and will not pay one penny over what is fair for prescription drugs. Today's settlement and past prescription drug pricing cases that have been prosecuted demonstrate the continued commitment between the state and federal governments to safeguard Medicaid programs nationwide."

Today's settlements are also the first national resolutions to recoup losses to the Public Health Service ("PHS") program, a safety net for the nation's most vulnerable citizens. The PHS program provides certain drug pricing protections to AIDs programs, community health centers, hemophilia treatment centers, and hospitals that treat a disproportionate share of our poorest citizens. These programs all receive federal funds such as grants, and are administered primarily by state and local governments. Drug manufacturers are required to enter into a contract with the government to provide certain pricing concessions to PHS entities based in part upon the Medicaid rebates they have paid. When Medicaid rebates are underpaid, as was done by BAYER and GSK, the PHS entities are overcharged for their drugs. Today's settlements ensure that PHS programs will be repaid in full the monies that they lost.

This investigation was originally triggered by a whistleblower lawsuit filed by George Couto, a former manager at BAYER, who is now deceased. If the government is successful in resolving or litigating a whistleblower's claim, the False Claims Act entitles the whistleblower to a share of the recovery. As a result of today's settlement with Bayer, Mr.

Couto's estate will receive approximately $34 million for his contribution in bringing this information forward and assisting the government in making its case against the company.

"We want to thank Mr. Couto's family, and let them know how much we appreciate his courage in coming forward to assist law enforcement authorities in a significant fraud investigation to his personal and professional detriment," stated U.S. Attorney Sullivan. "Without the assistance of persons like Mr. Couto, it is much more difficult for law enforcement to investigate fraud and ultimately recover federal and state monies. These substantial resolutions should continue to send a very strong message to the pharmaceutical industry that we in law enforcement will aggressively pursue those who would cheat government health care programs that benefit the poor."

The investigation is continuing.

The investigation was conducted by the Federal Bureau of Investigation and the Department of Health and Human Service's Office of Inspector General with assistance from the U.S. Food and Drug Administration's Office of Criminal Investigations. The criminal and civil prosecutions were handled by Susan G. Winkler, Deputy Chief of Sullivan's Health Care Fraud Unit and Assistant U.S. Attorney George Vien also in Sullivan's Health Care Fraud Unit. The Corporate Integrity Agreements were negotiated by Senior Counsel Mary Riordan in the Office of Inspector General's General Counsel's Office. Assisting in the federal civil resolution was Department of Justice Trial Attorney Andy Mao. Assisting in the state civil resolutions were Assistant Attorney Generals David Waterbury of Washington, Chris Abruzzo of Pennsylvania, and David Lunden of Maryland.

Press Contact: Samantha Martin, (617) 748-3139

US Attorney | Mission Statement | Press Releases | Administration | Civil Division | Criminal Division
Victim/Witness | LECC | ATTF | Links | Employment | Home



# State of Wisconsin
# Department of Justice

*Attorney General Peg Lautenschlager*



| Services |
|---|
| Organization |
| AG Home Page |
| Consumer Help |
| Hotlines & Helplines |
| Employment |
| Open Meetings/ Public Records |
| Attorney General Opinions |
| Resource Links |
| Privacy Policy |
| Certified Tobacco Manufacturers |



Home | About DOJ | Search | Site Map | FAQs | Contact DOJ | News

## News

### LAUTENSCHLAGER ANNOUNCES MULTI-STATE SETTLEMENT IN GLAXOSMITHKLINE, BAYER CASE

**Wisconsin To Receive Approximately $2.4 Million From Drug Companies Accused Of Violating The Federal Medicaid Drug Rebate Statute On "Best Price" Information**

FOR IMMEDIATE RELEASE:
May 20, 2003

For More Information Contact:
Brian Rieselman 608/266-1220

Madison - Attorney General Peg Lautenschlager announced today that she has reached settlement agreements, in principle, with GlaxoSmithKline (GSK) and Bayer Corporation for violations of the federal Medicaid drug rebate statute by failing to accurately report "best price" information and their resulting failure to pay sufficient rebates to the state Medicaid programs in connection with their private labeling of certain drugs for health maintenance organizations.

These settlements together-- which are expected to include 49 states and the District of Columbia-- with two major drug manufacturers, represent the largest national Medicaid fraud settlements ever.

Wisconsin's projected share in the settlement with GlaxoSmithKline is $563,115.08. Wisconsin's projected share in the settlement with Bayer is $1,822,132.22. (Details follow in the summaries below). The pay-out date has yet to be announced.

"These historic multi-state agreements will generate substantial recovery sums for Wisconsin," Lautenschlager said. "Our citizens have the right to expect fair pricing on drugs purchased through our Medicaid program - and we also expect that drug companies that don't play fair will be penalized. This agreement holds both GlaxoSmithKline and Bayer accountable for their misdeeds, and for their future actions."

Medicaid is the federal/state health care insurance program that provides health care coverage for the economically disadvantaged. The National Association of Medicaid Fraud Control Units represents the 48 federally certified Medicaid Fraud Control Units that investigate and prosecute

Medicaid provider fraud.

The federal Medicaid drug rebate statute is designed to return money to the Medicaid program in the form of rebates from drug manufacturers. Under the statute, in order to have the pharmaceuticals eligible for Medicaid payment, all pharmaceutical manufacturers must provide "best price" information to the Centers for Medicare and Medicaid Services (CMS, formerly HCFA).

"Best price" is the lowest price that a manufacturer offers its products for sale to commercial purchasers. CMS uses this "best price" information to calculate rebates payable to state Medicaid programs under the statute.

Both Bayer and GlaxoSmithKline sold products to HMOs at deeply discounted prices, and then concealed and avoided their obligation to pay additional rebates to the Medicaid programs. This was accomplished by re-labeling or re-packaging these drugs under the HMO's private label. This fraud scheme is referred to as "lick and stick."

## GlaxoSmithKline

The U.S. Attorney's Office for the District of Massachusetts conducted an investigation into alleged improprieties relating to the reported "best price" for Flonase, a nasal spray, and Paxil, an anti-depressant. Flonase was manufactured and sold by Glaxo Wellcome and Paxil was manufactured and sold by SmithKline Beecham. These two companies merged and became GlaxoSmithKline in December 2001.

Through a private labeling agreement with Kaiser Permanente, an HMO in California, Glaxo Wellcome manufactured, packaged and shipped Flonase to Kaiser, but substituted the Kaiser unique identifying number for the Glaxo Wellcome unique identifying number on the label.

The purpose of the private labeling arrangement was to provide Kaiser additional price discounts on Flonase without having to report the discounted price as Glaxo Wellcome's "best price," thereby avoiding the obligation to pay additional rebates to Medicaid under the Medicaid rebate program.

Similarly, SmithKline began private labeling Paxil for Kaiser. Paxil was manufactured, packaged and shipped by SmithKline to Kaiser, but SmithKline substituted Kaiser's unique identifying number for SmithKline's unique identifying number on the label. SmithKline provided Kaiser additional price discounts on Paxil without reporting the newly discounted price to the Medicaid rebate program, thereby avoiding payment of additional rebates.

In addition to the civil settlement, amounting to $87,600,922 in damages

and penalties to the federal government and the states, GSK will enter into a Corporate Integrity Agreement (CIA) with the U.S. Department of Health and Human Services, Office of Inspector General. At the insistence of the National Association of Medicaid Fraud Control Units, GSK will be required to certify its "best price" methodology. This will add a new responsibility for the manufacturer and will enhance future state enforcement.

## Bayer Corporation

A qui tam complaint was filed in federal district court in Boston in February 2000 and the U.S. Attorney's Office conducted an investigation into alleged improprieties relating to the reported "best price" for two of Bayer's drugs, Cipro, an antibiotic and Adalat CC, an anti-hypertensive.

Bayer agreed to privately label Cipro and Adalat CC for Kaiser and to sell these drugs to Kaiser at a discounted price. Bayer has agreed to pay $242,126,570 in damages and penalties to the federal and state governments for knowingly misreporting its "best price" to HCFA and underpaying its Medicaid rebates for Cipro and Adalat CC that was privately labeled for Kaiser and PacifiCare from its determination of "best price."

Additional proceedings are expected in connection with the Food, Drug and Cosmetics Act in federal district court in Boston. The government is expected to recommend that Bayer pay a fine of $5,590,800.

An addendum with new obligations will be added to Bayer's current Corporate Integrity Agreement (CIA) with the U.S. Department of Health and Human Services, Office of Inspector General. At the insistence of the National Association of Medicaid Fraud Control Units, the CIA will require Bayer to certify its "best price" methodology. This new responsibility will enhance future state enforcement.

These settlements and prosecution of the Bayer Corporation are the result of investigations conducted by the U.S. Attorney's Office for the District of Massachusetts. That office requested the assistance of NAMFCU to negotiate on behalf of the state Medicaid programs.

The state negotiating team for both cases was lead by the Directors of the Maryland, Pennsylvania and Washington State MFCUs. For further information please contact Barbara Zelner, Counsel, NAMFCU (202) 326-6020 or the Office of Attorney General Peg Lautenschlager at the phone number listed above.

This page created by the Department of Justice. All text, images or associated items are property of the State of Wisconsin, and may only be reproduced with the consent of The Department of Justice. For privacy concerns please read the Privacy Policy.

**THE STATE OF VERMONT**

## OFFICE OF THE ATTORNEY GENERAL



home | Office Organization Information | How do I... | Issues | News

Homepage >>

### Drug Maker Bayer Pays $252 Million for Bilking Medicaid

Contact: Linda A. Purdy, Assistant Attorney General, (802) 241-4440

**January 13, 2004** - Attorney General William H. Sorrell announced today that Vermont has received its portion of the $251,609,200 paid by drug manufacturer Bayer Corporation to settle civil allegations that it bilked Medicaid programs in 49 states and the District of Columbia by concealing pricing information for the antibiotic Cipro and the anti-hypertensive Adalat CC. The total share of the settlement for Vermont's Medicaid program, representing the losses to the program and an amount for penalties, was $735,576.72, of which the State of Vermont received $306,899.82 and the federal government received the remainder.

Medicaid is a program jointly funded by the federal and state governments to provide assistance to the medically needy. Among other services, Medicaid pays for prescription drugs. A complicated pricing mechanism seeks to ensure that each state Medicaid program pays reasonably low prices for pharmaceuticals. As part of this mechanism, drug manufacturers who wish to have Medicaid pay for their products are required by federal law to agree to provide "best price" information to the Centers for Medicare and Medicaid Services ("CMS"), the federal agency that oversees Medicare and Medicaid. The "best price" is the lowest price that a manufacturer offers its products for sale to commercial purchasers. This information is used by CMS to calculate a rebate which the manufacturer must pay back to each state Medicaid program that has purchased its drugs. The rebate is intended to reimburse the states for at least part of the difference between the "best price" and any higher price that a state may have paid for a drug.

Bayer sold Cipro and Adalat CC to Kaiser Permanente, a California HMO, at deeply discounted prices. If these prices had been reported to CMS, they would have resulted in lower "best price" calculations and greater rebates for state Medicaid programs, but Bayer did not report them. Bayer avoided the price reporting requirements through a private agreement with Kaiser under which Bayer manufactured, packaged and shipped the products to Kaiser for a discounted price, but labeled them as if they were Kaiser's products rather than Bayer's. Kaiser acquired the drugs cheaply and Bayer avoided reporting the discounted prices as its own "best price." With regard to Cipro, the conduct continued from 1995 into 2000. The Adalat CC scam continued from 1997 into 2000.

Bayer's misconduct was revealed as a result of a "qui tam" complaint filed in federal district court in Boston on February 23, 2000. The resulting investigation by the U.S. Attorney's Office led to Bayer pleading guilty to a charge of violating the Food, Drug and Cosmetics Act in United States District Court in Boston. Bayer was sentenced on May 8, 2003, to a criminal fine of $5,590,800. Concurrently, Bayer also reached agreements with the states to resolve their civil and administrative claims. These agreements reserved the states' option to proceed with criminal prosecutions in the future if the evidence warrants. As part of the settlement, Bayer entered into a Corporate Integrity Agreement with the federal Office of Inspector General, including a requirement that Bayer must certify its best price methodology and have an independent review organization certify that the manner in which they calculate Medicaid rebates is being conducted appropriately.

| Issues  How Do I...  News  Office Organization | 109 State Street, Montpelier VT 05609-1001 |
| Home  Job Openings  Contacting Us  Disclaimer | Phone: (802) 828-3171 Fax: (802) 828-5341 |

Website consulting provided by The National Association of Attorneys General.