UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | * * * | MDL 2592 |
| | * | SECTION L |
| THIS DOCUMENT RELATES TO: *Boudreaux v. Bayer Corp., et al.* Case No. 2:14-cv-02720 | * * * | JUDGE ELDON E. FALLON |
| | * | MAGISTRATE JUDGE NORTH |

* * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION IN LIMINE NO. 19 REGARDING FDA APPROVAL**

**I.  INTRODUCTION**

Plaintiffs have moved for an order prohibiting all witnesses and counsel from commenting on, referring to, attempting to introduce testimony or evidence, or introducing testimony or evidence, suggesting that the FDA invited drug manufactures, including Defendants, to develop anticoagulants. Such evidence is irrelevant, and any probative value would be greatly outweighed by the dangers of unfair prejudice, confusion of the issues, misleading the jury, undue delay and a waste of time.

**II.  STANDARD OF REVIEW**

Under Federal Rule of Evidence 402, only relevant evidence is admissible at trial. Evidence is relevant if it has a tendency to make a fact of consequence to the litigation more or less probable than it would be without the evidence. Fed. R. Evid. 401. However, even relevant evidence can be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

The trial court has broad discretion in assessing the probative value of evidence and determining if it is significantly outweighed by the risk of undue prejudice. *See Sprint v. Mendelsohn,* 552 U.S. 379, 384 (2008); *Verzwyvelt v. St. Paul Fire & Marine Ins. Co.,* 175 F. Supp. 2d 881, 888 (W.D. La. 2001), *citing United States v. Johnson,* 558 F.2d 744, 746 (5th Cir. 1977). A court should exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice. *United States v. Duncan,* 919 F.2d 981, 987 (5th Cir. 1990), *citing* Fed. R. Evid. 403.

**III.   ARGUMENT**

    **A.   Defendants should be precluded from offering evidence or argument suggesting that the FDA requested drug manufactures, including Defendants, to develop anticoagulants.**

The FDA's purpose is to "ensure[ ] the safety and effectiveness of all drugs, biological products (including blood, vaccines and tissues for transplantation), medical devices, and animal drugs and feed; and makes sure that cosmetics and medical and consumer products that emit radiation do no harm." *FDA Regulatory Information & Legislation*, http://www.fda.gov/RegulatoryInformation/Legislation/default.htm. The FDA's mere invitation to drug manufacturers to investigate, market and sell a drug is not to be regarded as a final stamp of approval of the drug's safety.

The Federal Food, Drug and Cosmetics Act (FDCA), which gives the FDA power to oversee the safety of, *inter alia*, pharmaceutical drugs, provides that no drug manufacturer shall introduce any new drug, unless a new drug application is **approved**. 21 U.S.C.A. § 355(a). (emphasis added). Multiple phases of clinical trials on animals and then humans for toxicity, efficacy and safety are conducted. *See The FDA's Drug Review Process: Ensuring Drugs Are Safe and Effective,* http://www.fda.gov/Drugs/ResourcesForYou/Consumers/ucm143534.htm. Once

the review is complete, the New Drug Application might be approved or rejected, at which point an FDA review team is assigned to continue to evaluate the manufacturer's research on the drug's safety and effectiveness. *Id*. The manufacturer is also tasked with drafting a label for the FDA to review. *Id*.

*If* the drug is approved, "it has remained a central premise of federal drug regulation that the manufacturer bears responsibility for the content of its label at all times." *Wyeth v. Levine*, 555 U.S. 555, 570-71 (2009). Moreover, the FDA regulations are only "minimal standards" for drug labeling and are the floor upon which states can build tort law to promote health and safety. *Id.* at 577–78. Thus, Defendants owed an independent and defined legal duty to Plaintiffs that was not diminished by the FDA's approval of their drug.

The issue in this case is not whether the FDA sought out Defendant drug manufacturers to develop an anticoagulant. It is whether Defendants acted reasonably in their testing, warning and marketing of Xarelto. Even if evidence about the FDA's inquiry and suggestion to create new anticoagulants was relevant – and it is not – its presentation would result in unfair prejudice and confusion of the issues. The jury could conclude – improperly – that the FDA's inquiry translates into an inherent approval of a drug that is unreasonably dangerous, or inappropriately marketed, or accompanied by insufficient warnings or instructions, and a manufacturer that cannot be held responsible for injuries resulting from use of the drug. Such evidence is likely to confuse the jury about the appropriate standard by which to judge Defendants' actions.

Additionally, such evidence would result in undue delay and a waste of time, because Plaintiffs would need to rebut it with evidence of historical communications between the FDA and anticoagulant drug manufacturers that are not germane to the issue of the safety and effectiveness of Xarelto.

> **B.    Defendants should be precluded from offering evidence or argument suggesting that FDA's request to develop anticoagulants establishes that the FDA determined Xarelto to be "safe and effective."**

The term "safe and effective" is a term of art under federal regulatory law. It means only that, *at the time of approval*, the FDA determined based on then-available information provided by the manufacturer that the drug met the minimum safety and efficacy standards for approval for marketing under 21 U.S.C. 355(b). The FDA's request that drug manufacturers explore new anticoagulants does not mean that the drug has met any standard for absolute safety or efficacy under all circumstances. As described above, a drug must be initially approved, and the FDA requires manufacturers to ensure the continued safety and efficacy of the drug in the face of real world experiences with the drug and the company's superior access to data concerning its safety and efficacy. Therefore, even where the FDA determined there was a need for new anticoagulants, if the drug is later found to be unreasonably dangerous, inappropriately marketed, or accompanied by insufficient warnings or instructions, Defendants can still be held liable for that product.

Allowing use of the phrase "safe and effective," because of FDA's request to develop anticoagulants, would be unduly prejudicial and would cause confusion for the jury because it could lead the jury to unreasonably conclude: (1) that the FDA had determined the drug to be safe for all purposes and for all time; or (2) that the FDA's request to develop anticoagulants is a general recognition of Xarelto's "safety and efficacy" for, development, and licensing. A jury could be misled to believe that because the FDA is an official government agency, its request that manufacturers develop new anticoagulants is a statement on implicit approval of the "safety and efficacy" of Xarelto. This simply is not the case.

## IV.  CONCLUSION

For these reasons, Plaintiffs requests that all witnesses and counsel be precluded from offering evidence, argument, inference or eliciting testimony that the FDA's request to develop anticoagulants, specifically Xarelto, absolves them of liability or establishes that Xarelto is "safe and effective."

Dated:  March 29, 2017						Respectfully submitted,


					/s/ Leonard A. Davis
					Leonard A. Davis, Esq. (Bar No. 14190)
					*HERMAN, HERMAN & KATZ, LLC*
					820 O'Keefe Avenue
					New Orleans, Louisiana  70113
					Telephone:  (504) 581-4892
					Facsimile:  (504) 561-6024
					Email:  ldavis@hhklawfirm.com

					Gerald E. Meunier (Bar No. 9471)
					*GAINSBURGH BENJAMIN DAVID MEUNIER & WARSHAUER, LLC*
					2800 Energy Centre, 1100 Poydras Street
					New Orleans, LA  70163-2800
					Telephone:  (504) 522-2304
					Facsimile: (504) 528-9973
					Email:  gmeunier@gainsben.com

					*Plaintiffs' Liaison Counsel*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 29, 2017, the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs and Defendants by operation of the court's electronic filing system and served on all other plaintiff counsel via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre- Trial Order No. 17.

                                                   */s/ Leonard A. Davis*
                                                   **LEONARD A. DAVIS**