UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: XARELTO (RIVAROXABAN)     MDL No. 2592
PRODUCTS LIABILITY LITIGATION     SECTION L

THIS DOCUMENT RELATES TO:     JUDGE ELDON E. FALLON

*Joseph J. Boudreaux, Jr., et al. v. Janssen et al.*     MAGISTRATE NORTH
Case No. 2:14-cv-02720

## DEFENDANTS' JOINT MOTION *IN LIMINE* NO. 10 TO EXCLUDE DR. CUCULICH AND DR. SMART'S TESTIMONY REGARDING DEFENDANTS' DETAIL REPRESENTATIVES

### INTRODUCTION

Defendants hereby move *in limine* to exclude the testimony of Dr. Phillip Cuculich and Dr. Frank Smart regarding their opinions about Defendants' marketing practices and their personal experiences with Defendants' detail representatives. Defendants anticipate that Plaintiffs may attempt to introduce testimony about what Dr. Smart and Dr. Cuculich allegedly were told by detail representatives, almost all of whom they have not identified, in order to suggest that Defendants engaged in deceptive marketing practices. Such testimony about what unidentified detail representatives said is hearsay and should be barred. Nor is it relevant to any issue that the jury will be asked to decide, as neither of these experts treated or made prescribing decisions for Joseph Boudreaux, Jr. And further, any remote probative value their testimony might have would be substantially outweighed by the risk of unfair prejudice and jury confusion. Accordingly, this testimony and all related evidence should be excluded under Rules 402 and 403.

**RELEVANT FACTS AND BACKGROUND**

Dr. Cuculich is a licensed physician who practices in the state of Missouri, specializes in cardiovascular disease, and treats patients with atrial fibrillation. Cuculich Rep. at 1 (Ex. A). Dr. Cuculich intends to offer opinions concerning Defendants' marketing practices. In particular, Dr. Cuculich asserts in his expert report that Defendants' detail representatives inaccurately informed him that "blood testing was not needed for safe administration of rivaroxaban" and that Xarelto® does not have a narrow therapeutic window. Cuculich Rep. at 3; *see also id.* at 9 ("There was great excitement surrounding this class of medication, because if the drug dosing and effects were indeed as predictable as it was marketed, it would address important limitations to warfarin use and inconvenience of frequent blood testing for patients. While the concept is appealing, to a skeptical practicing clinician it defied medical logic . . . ."). Dr. Cuculich further asserts that when he asked for dose-finding data to support the ROCKET AF dose, he "was told that the medication dosing was 'internally validated' but not published or publically available," and that when he requested information "for help/advice for testing anticoagulant effect, [he] was told that no approved testing was available to help [him] guide [his] decision." *Id.* at 10.

Dr. Cuculich elaborated on his opinions during his deposition, testifying that he and a detail representative "talked about getting the information that was available with regards to plasma concentrations and distributions of plasma concentrations among patients who are taking rivaroxaban," but the detail representative "told [him] that it was largely unavailable, not published, internal data." Cuculich Dep. 265:20–266:2 (Ex. B). Dr. Cuculich further testified that he requested information from the detail representative about testing Xarelto's effect with Neoplastin PT—specifically, information that was not publically available and had not yet been

published in medical literature. *Id.* at 268:22–270:20. Finally, Dr. Cuculich testified that, in response to his questions regarding reversal agents, he was given only the package insert, marketing messages concerning Xarelto's wide therapeutic index, and "peer-reviewed literature that were unsubstantiated statements," rather than the "actual data" that Dr. Cuculich admitted was not publicly available at the time. *Id.* at 278:18–279:23; 307:9–309:25. Dr. Cuculich testified that one detail representative allegedly told him that plasma concentration data was unpublished, internal data. *Id.* at 265:11-266:2; 267:5-7.

Dr. Smart is a cardiologist specializing in the study and treatment of heart failure. Smart Rep. at 1 (Ex. C). Dr. Smart makes arguments in his expert report similar to those of Dr. Cuculich with respect to Defendants' alleged marketing practices, stating: "Xarelto is marketed to physicians and patients as a once daily drug, and this dosing schedule is heralded as superior to other NOACs . . . . However, Xarelto is a highly variable drug with respect to liver and kidney breakdown." *Id.* at 3; *see also id.* at 6 ("Physicians had been inadequately informed as to the overall risk of Xarelto in patients."). He further opines that "marketing by the pharmaceutical sales representatives to physicians emphasizes the once daily dosing, and ignores the fact that such a dosing schedule exposes patients to higher plasma concentrations of the drug and the unnecessary risk of over anticoagulation." *Id.* at 7. During his deposition, Dr. Smart testified that he does not discuss science with detail representatives because they are not scientists, and although he "accepts their literature," he does not rely on what they say with respect to prescribing medication. Smart Dep. at 115:13–116:11 (Ex. D). Dr. Smart was unable to identify any Xarelto detail representatives. *Id.* at 116:8-11.

Defendants anticipate that Plaintiffs will attempt to offer testimony from Dr. Cuculich or Dr. Smart at trial in an effort to establish that Defendants engaged in deceptive marketing

3

practices by providing physicians with only certain information, and that the information provided was not accurate. Additionally, Plaintiffs likely intend to use this testimony to suggest that Defendants' detail representatives are not knowledgeable about Xarelto or refused to provide data or information that would have affected Xarelto in the market. None of this testimony is relevant to the claims presented, and is substantially prejudicial. Any such evidence should therefore be excluded.

## ARGUMENT

**I.     Dr. Cuculich's and Dr. Smart's testimony related to detail representatives is irrelevant to Plaintiffs' claims.**

Any evidence related to Dr. Cuculich's or Dr. Smart's personal experiences or opinions with regard to Defendants' detail representatives is irrelevant to Plaintiffs' claims and should be excluded. It is well-established that "[r]elevancy is the threshold determination in any decision regarding the admissibility of evidence." *Seidman v. Am. Airlines, Inc.*, 923 F.2d 1134, 1139 (5th Cir. 1991) (internal quotation omitted). Evidence is relevant if it has a tendency to make a fact that is of consequence to the determination of an action more or less probable than without the evidence. Fed. R. Evid. 401; *McGonigal v. Gearhart Indus., Inc.*, 851 F.2d 774, 778 (5th Cir. 1988); *Kennedy v. Magnolia Marin Transp. Co.*, 189 F. Supp. 3d 610, 619 (E.D. La. 2016). Evidence lacking probative value is properly excluded as irrelevant. Fed. R. Evid. 402.

This case is about the information Dr. Wong received and relied upon in deciding to prescribe Xarelto to Mr. Boudreaux. It is not about information other doctors received, and it is not a referendum on Defendants' promotional practices in general. Neither Dr. Cuculich nor Dr. Smart treated Mr. Boudreaux, nor did they make the decision to prescribe Xarelto to Mr. Boudreaux. Therefore their personal experiences with detail representatives and what they might have been told by these detail representatives is not probative of any fact of consequence to

4

Plaintiffs' claims. And it is hearsay without an exception. Such opinions from retained experts, who had no involvement with the individual care and treatment of Mr. Boudreaux, are wholly irrelevant to the knowledge of Mr. Boudreaux's own prescribing physician, what information was important in making his prescription decision, and his treatment of Mr. Boudreaux. Further, there is *no* evidence that the physicians who treated Plaintiffs relied on *any* of the information that the detail representatives allegedly provided to Dr. Cuculich and Dr. Smart. Accordingly, the testimony of Drs. Cuculich and Smart is not relevant.

Plaintiffs should not be permitted to rely on the individual experiences of two of their own experts in an effort to generalize Defendants' marketing practices as deficient or improper and thereby taint the trial with irrelevant but highly prejudicial evidence. Any such evidence should be excluded.

II.   **Any minimal probative value of Dr. Cuculich's and Dr. Smart's testimony related to detail representatives is substantially outweighed by the probability that it will cause undue prejudice, confuse issues, mislead the jury and waste time.**

Any evidence related to Dr. Cuculich's or Dr. Smart's opinions or experience regarding detail representatives should also be excluded because any "probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, [and causing] undue delay [or] wasting of time." Fed. R. Evid. 403; *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 672–73 (5th Cir. 1999) (excluding evidence of reports from state regulatory agency as cumulative and unduly prejudicial). Trial courts are given broad discretion in balancing the probative value against the risks of unfair prejudice. *McGonigal*, 851 F.2d at 778. "'Unfair prejudice' within this context means an undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Cook*, 557 F.2d 1149, 1154 (5th Cir. 1977) (citing to Fed. R. Evid. 403 advisory committee's notes);

*see also Saacks v. Privilege Underwriters Reciprocal Exch.*, No. 16-1149, 2017 U.S. Dist. LEXIS 14531, at *15 (E.D. La. Feb. 2, 2017) (Fallon, J.).

A trial court should exclude evidence that has a tendency to distract the jury from its main inquiry or confuse the issue. *See, e.g.*, *Plemer v. Parsons-Gilbane*, 713 F.2d 1127, 1139 n.11 (5th Cir. 1983) (noting that where evidence, "though of some relevance, may lead to confusing and time-consuming disputes with respect to collateral issues the trial judge may properly reject or limit it under Rule 403") (internal quotation and citation omitted).

Any perceived probative value of this evidence is substantially outweighed by the danger of causing undue prejudice to Defendants and confusing or misleading the jury. A retained expert's experiences with detail representatives are only likely to confuse the jury and cause it to unfairly speculate—contrary to the record evidence—that Mr. Boudreaux's prescribing physician (Dr. Wong) had the same experiences as Dr. Cuculich and Dr. Smart. Further, allowing Plaintiffs to introduce evidence concerning sales communications that did not involve Dr. Wong would require Defendants to show why these communications were entirely appropriate and thus trigger multiple trials-within-a-trial on these issues. *See, e.g.*, *Plemer*, 713 F.2d at 1139 n.11; *Miller v. Pfizer Inc.*, 196 F. Supp. 2d 1095, 1122 n.92 (D. Kan. 2002) (excluding marketing materials not relied on by the prescribing physician "because they were irrelevant and unfairly prejudicial"), *aff'd*, 356 F.3d 1326 (10th Cir. 2004) (internal quotation and citation omitted).

## CONCLUSION

For the foregoing reasons, Defendants' Motion *in Limine* should be granted and any evidence regarding Dr. Cuculich or Dr. Smart's opinions or experiences with Defendants' detail representatives should be excluded.

Respectfully submitted,

DRINKER BIDDLE & REATH LLP

By: /s/ *Susan M. Sharko*
Susan M. Sharko
Drinker Biddle & Reath LLP
600 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
susan.sharko@dbr.com

Rodney M. Hudson
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
Telephone: (415) 591-7500
Rodney.hudson@dbr.com

Chanda A. Miller
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2500
Chanda.Miller@dbr.com


IRWIN FRITCHIE URQUHART & MOORE LLC

By: /s/ *James B. Irwin*
James B. Irwin
Kim E. Moore
Irwin Fritchie Urquhart & Moore LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
jirwin@irwinllc.com

*Attorneys for Defendants Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC, and Janssen Ortho LLC, and Johnson & Johnson*

ARNOLD & PORTER KAYE SCHOLER LLP

By: /s/ *William Hoffman*
William Hoffman
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
william.hoffman@apks.com

Andrew K. Solow
Steven Glickstein
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8485
andrew.solow@apks.com
steven.glickstein@apks.com

BRADLEY ARANT BOULT CUMMINGS LLP

By: */s/ Kevin C. Newsom*
Kevin C. Newsom
Lindsey C Boney IV
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place, 1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8803
knewsom@bradley.com

CHAFFE MCCALL L.L.P.

By: /s/ *John F. Olinde*
John F. Olinde
Chaffe McCall L.L.P.
1100 Poydras Street, Suite 2300
New Orleans, LA 70163
Telephone: (504) 585-7241
olinde@chaffe.com

*Attorneys for Bayer HealthCare Pharmaceuticals Inc. and Bayer Pharma AG*

7

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that on March 29, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs and Defendants by operation of the court's electronic filing system and served on all other plaintiff counsel via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre-Trial Order No. 17.

                                              */s/ James B. Irwin*
                                              **James B. Irwin**