**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE:  XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE ELDON E. FALLON |
| Joseph J. Boudreaux, Jr., et al. v. Janssen et al. Case No. 2:14-cv-02720 | MAGISTRATE NORTH |

**DEFENDANTS' JOINT MOTION *IN LIMINE* NO. 9 TO EXCLUDE EVIDENCE OF DR. CALIFF'S PROPOSAL TO PURSUE "ROCKET 2.0" UNDER FEDERAL RULES OF EVIDENCE 402 & 403**

**INTRODUCTION**

Defendants move to exclude, under Federal Rules of Evidence 402, 403, and 805, any evidence of or reference to non-party Dr. Robert Califf's out-of-court statements communicating his musings and ideas that it would be interesting to consider a clinical trial to test a dose or dosing regimen for Xarelto different than that approved by FDA.  These emails—and any other evidence or testimony based on them—are irrelevant because Plaintiffs have conceded, consistent with Louisiana law, that "the failure to test theory is not being presented by Mr. Boudreaux" (Pls.' Opp. to LPLA Design-Defect MSJ at 10 n. 30), and Plaintiffs have renounced any dosing-related claim (*see* Proposed Order on Abandoned Claims, Exh. 47 to Defs. Reply in Support of Summary Judgment on Dosing, Monitoring and Design Related Claims [Doc. 5677]).

Because Plaintiffs do not claim that Defendants should have adjusted Xarelto's dosing regimen or tested different doses, evidence regarding a proposal to conduct a clinical trial that would test different doses of Xarelto for AFib patients is not relevant.  Any perceived probative value that Plaintiffs may attach to such evidence is substantially outweighed by its potential to

unduly prejudice Defendants, confuse the issues, and cause delay. For these and the reasons set forth below, this evidence should be excluded at trial.

## BACKGROUND

Defendants anticipate that Plaintiffs may seek to introduce evidence and argument that Dr. Robert Califf communicated an idea that he thought another clinical trial (described as "ROCKET 2" or "ROCKET AF Booster") to test a different dose or dosing regimen in AFib patients. *See e.g.,* Pls.' Exh. List, Nos. 132951, 3674084, 3674214, 3674215. Dr. Califf worked as a professor of cardiology at Duke University School of Medicine and served as the Director of Duke Clinical Research Institute ("DCRI"), the organization paid to conduct the ROCKET AF trial. Years later, in January 2015, Dr. Califf was appointed as the Deputy Commissioner of FDA's Office of Medical Products and Tobacco. He served in that role until February 2016, when he was nominated and confirmed as FDA Commissioner. Dr. Califf was FDA Commissioner from February 2016 until January 2017.

## ARGUMENT

**I.  Evidence of an idea for a study suggested to Defendants, but not performed is irrelevant to Plaintiffs' design-defect and failure-to-warn claims.**

The Federal Rules of Evidence make clear that only relevant evidence is admissible. "Relevancy is the threshold determination in any decision regarding the admissibility of evidence." *Seidman v. Am. Airlines, Inc.*, 923 F.2d 1134, 1139 (5th Cir. 1991) (internal quotation omitted). Evidence is only relevant if it has a tendency to make a fact that is of consequence to the determination of an action more or less probable than without the evidence. Fed. R. Evid. 401; *McGonigal v. Gearhart Indus., Inc.*, 851 F.2d 774, 778 (5th Cir. 1988); *Kennedy v. Magnolia Marin Transp. Co.*, 189 F. Supp. 3d 610, 619 (E.D. La. May 17, 2016). Evidence lacking probative value is properly excluded as irrelevant. Fed. R. Evid. 402.

Dr. Califf's pitch to do additional testing on Xarelto—testing that ostensibly would be run by DCRI, the Institute that Dr. Califf directed, is irrelevant and in no way informs any question that the jury will be asked to decide.

*First*, Louisiana law does not recognize a claim for alleged failures to test.  As the Fifth Circuit has squarely held, "[t]here is no basis in the LPLA or case law for such a rule." *Theriot v. Danek Med., Inc.*, 168 F.3d 253, 256 (5th Cir. 1999); *see also*, *e.g.*, *Linsley v. C.R. Bard, Inc.*, No. Civ. A-98-2007, 2000 WL 343358, at *6 (E.D. La. Mar. 30, 2000) (granting summary judgment when plaintiff was "only left with the argument that Bard did not adequately test its product," which cannot establish a claim under the LPLA).  Plaintiffs accordingly concede that their claims are not premised on an alleged failure to test Xarelto (Pls.' Opp. to LPLA Design-Defect MSJ at 10 n. 30).

*Second*, Plaintiffs have made clear that their design-defect claims do not rely "on *theoretical, untested dosing regimens*." Pls.' Opp. to LPLA Design-Defect MSJ at 11 (emphasis added).  At the March 23, 2017 argument on Defendants' various dispositive motions, Plaintiffs confirmed that they are not pursuing a claim that the dose of Xarelto should have been different:

> THE COURT: What is the design defect you see in this drug?
>
> MR. BARR: Our design defect claim here it is. The design defect claim is that Xarelto is unreasonably dangerous in design because prior to approval defendants failed to develop and incorporate into the design of the drug a Xarelto calibrated Anti Xa assay that allows doctors to manage patient anticoagulation.

Rough OA Tr. (Mar. 23, 2017) at 21 (Ex. A).

Emails reflecting Dr. Califf's thoughts about a potential clinical trial to test alternate doses for Xarelto do not make it more or less likely that Defendants unreasonably failed to design a Xarelto-calibrated anti-factor Xa assay or adequately warn Plaintiffs' physicians about

3

the risks associated with Xarelto. Accordingly, this evidence is irrelevant and should be excluded.

## II. The contents of Dr. Califf's emails are inadmissible hearsay.

The ideas set forth in Dr. Califf's emails also constitute inadmissible hearsay. Out-of-court statements, such as those made by Dr. Califf, offered to prove the truth of the matter asserted constitute hearsay, and absent an exception are inadmissible. *Mary Kay, Inc. v. Weber*, 601 F. Supp. 2d 839, 850 (N.D. Tex. 2009) (excluding customer complaint emails as inadmissible hearsay). Rule 805 requires that all levels of hearsay must satisfy hearsay exception requirements before evidence is admissible. Fed. R. Evid. 805; s*ee Guy*, 394 F.3d at 329. Thus, for example, double hearsay issues in the context of business records must be resolved before the contents of the records can be offered for the truth of the matter. *Wilson v. Zapata Off-Shore Co.,* 939 F.2d 260, 271-72 (5th Cir. 1991); *Mary Kay, Inc*., 601 F. Supp. 2d at 850-51.

Defendants anticipate that Plaintiffs may seek to introduce Dr. Califf's e-mails about "ROCKET 2" in an attempt to prove that Defendants should have tested or sold Xarelto in a different dose. But Dr. Califf's emails do not qualify under any hearsay exception. Dr. Califf's thoughts contained in his emails are out of court statements that are not business records within the business records hearsay exception. This Court has explicitly rejected a "categorical rule that emails originating from or received by employees of a producing defendant are admissible under the business records exception." *In re Oil Spill by the Oil Rig DEEPWATER HORIZON in the Gulf of Mexico, on April 20, 2012*, MDL 2179, 2012 WL 85447, at *3 (E.D. La. Jan. 11, 2012) (*Deepwater Horizon*); *see also Rogers v. Oregon Trail Elec. Consumers Co-op., Inc.*, 2012 WL 1635127, at *10 (D. Or. May 8, 2012) ("Email is a casual form of communication that does not

4

hold the same expectation of trustworthiness as other records usually kept in the course of business.").

"For the business record exception to apply to an email, the producing party must demonstrate that 'the employer imposed a business duty to make and maintain such a record.'" *Marine Power Holding, L.L.C. v. Malibu Boats, LLC, No*. 14-912, 2016 WL 4039164, at *3 (E.D. La. July 28, 2016) (quoting *Canatxx Gas Storage Ltd. v. Silverhawk Capital Partners, LLC*, No. 06-1330, 2008 WL 1999234, at *12 (S.D. Tex. May 8, 2008)). "Where 'there [is] no showing that the document was kept in the course of some regularly conducted business activity or that it was the regular practice of the business to make such reports,' the document is not a business record." *Id.* (quoting *Wilander v. McDermott Int'l, Inc.*, 887 F.2d 88, 92 (5th Cir. 1989)). Moreover, "[e]very participant in the chain producing a record must be acting in the regular course of business for the business records exception to admit all level of hearsay within an email or email string." *Deepwater Horizon*, 2012 WL 85447, at *5 (citing *U.S. v. Ismoila*, 100 F.3d 380, 392 (5th Cir. 1996)).

"If the information within an email pertains to a transaction or report of an isolated sporadic nature that is not within the scope of what the email sender or recipient regularly does to engage in business, the exception does not apply." *Id.* "[I]f the email demonstrates that it was sent casually," such as a substitute for a telephone call, then "the requisite regularity has not been demonstrated." *In re Oil Spill by the Oil Rig DEEPWATER HORIZON in the Gulf of Mexico, on April 20, 2010,* MDL 2179, 2012 WL 423862, at *2 (E.D. La. Feb. 8, 2012) (*Deepwater Horizon II*).

Dr. Califf's emails regarding his ideas about ROCKET 2 are the very sort of evidence that this Court routinely excludes on hearsay grounds, and the Court should do the same here.

**III.     In the absence of dosing-related claims, evidence regarding a third party's interest in a hypothetical trial to test alternate doses would cause unfair prejudice, jury confusion, and undue delay.**

Any perceived probative value of Dr. Califf's ideas is substantially outweighed by their potential to unduly prejudice Defendants, confuse the issues at trial, mislead the jury, and cause undue delay. *See* Fed. R. Evid. 403; *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 672-73 (5th Cir. 1999) (excluding evidence of reports from state regulatory agency as cumulative and unduly prejudicial).  Trial courts are given broad discretion in balancing the probative value of evidence against the risk of unfair prejudice.  *McGonigal*, 851 F.2d at 778.  A court may exclude otherwise relevant evidence "if its probative value is substantially outweighed by the danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; *Randle v. Tregre*, 147 F. Supp. 3d 581, 598–99 (E.D. La. 2015).

"'Unfair prejudice' within this context means an undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Cook*, 557 F.2d 1149, 1154 (5th Cir. 1977) (citing Fed. R. Evid. 403 advisory committee's notes); *see also Saacks v. Privilege Underwriters Reciprocal Exch.*, No. 16-1149, 2017 U.S. Dist. LEXIS 14531, at *15 (E.D. La. Feb. 2, 2017) (Fallon, J.).

It is well-established that a trial court should exclude evidence which has a tendency to distract the jury from its main inquiry or to confuse the issues before it.  *See, e.g., Plemer v. Parsons-Gilbane*, 713 F.2d 1127, 1139 n.11 (5th Cir. 1983) (noting where evidence, "though of some relevance, may lead to confusing and time-consuming disputes with respect to collateral issues, the trial judge may properly reject or limit it under Rule 403") (internal quotation and citation omitted).

Here, the probative value of a non-party's interest in conducting further testing of Xarelto dosing regimens is substantially outweighed by the danger of unfair prejudice to Defendants and confusion to the jury. As a practical matter, the jury is likely to afford great weight to Dr. Califf's e-mails s because of his recent role as FDA Commissioner. Indeed, one of Plaintiffs' own experts attributed undue weight to Dr. Califf's title, despite the fact that Dr. Califf was not FDA Commissioner at the time of his emails. *See* Backes Report VII. B. ("In sum, the current commissioner of the FDA and co-principal investigator of ROCKET, and someone who is aware of the shallow efficacy dose-response and steep bleeding dose-response, stated that the doses currently sold for the atrial fibrillation indication were too high . . . .").

Moreover, discussion of Dr. Califf's emails would substantially increase the likelihood that the jury would (i) conflate Plaintiffs' claims with a failure-to-test theory, (ii) incorporate a dosing element to Plaintiffs' design-defect claim, and (iii) speculate about the outcome of such a proposed theoretical clinical trial and the effect it might have had on Mr. Boudreaux's alleged injuries. The evidence at issue would serve no purpose other than to paint Defendants as bad actors for failing to test and develop alternate doses, which Plaintiffs themselves concede are not claims asserted here.

Allowing Plaintiffs to introduce evidence regarding Dr. Califf's proposed ROCKET 2 testing also would significantly delay trial. If Plaintiffs were to introduce this evidence, Defendants would then need to provide detailed context to explain the scientific, regulatory, and other reasons behind their decision not to undertake an additional clinical trial to test a different dose or dosing regimen. This Court should exercise its broad discretion and gate-keeping function to prevent such mini-trials over irrelevant matters.

## CONCLUSION

For the foregoing reasons, the Court should exclude evidence of, and testimony regarding, Dr. Califf's informal e-mails about a hypothetical clinical trial dubbed "ROCKET 2."

Respectfully submitted,

| | |
|---|---|
| DRINKER BIDDLE & REATH LLP | ARNOLD & PORTER KAYE SCHOLER LLP |
| By: /s/ *Susan M. Sharko* <br> Susan M. Sharko <br> DRINKER BIDDLE & REATH LLP <br> 600 Campus Drive <br> Florham Park, NJ 07932-1047 <br> Telephone: (973) 549-7000 <br> susan.sharko@dbr.com | By: /s/ *William Hoffman* <br> William Hoffman <br> ARNOLD & PORTER KAYE SCHOLER LLP <br> 601 Massachusetts Ave., NW <br> Washington, D.C. 20001 <br> Telephone: (202) 942-5000 <br> william.hoffman@apks.com |
| Rodney M. Hudson <br> DRINKER BIDDLE & REATH LLP <br> 50 Fremont Street, 20th Floor <br> San Francisco, CA 94105-2235 <br> Telephone: (415) 591-7500 <br> Rodney.hudson@dbr.com | Andrew K. Solow <br> Steven Glickstein <br> ARNOLD & PORTER KAYE SCHOLER LLP <br> 250 West 55th Street <br> New York, New York 10019-9710 <br> Telephone: (212) 836-8485 <br> andrew.solow@apks.com <br> steven.glickstein@apks.com |
| Chanda A. Miller <br> DRINKER BIDDLE & REATH LLP <br> One Logan Square, Suite 2000 <br> Philadelphia, PA 19103-6996 <br> Telephone: (215) 988-2500 <br> Chanda.Miller@dbr.com | |

| | |
|---|---|
| IRWIN FRITCHIE URQUHART & MOORE LLC | BRADLEY ARANT BOULT CUMMINGS LLP |
| By: /s/ *James B. Irwin* <br> James B. Irwin <br> Kim E. Moore <br> IRWIN FRITCHIE URQUHART & MOORE LLC <br> 400 Poydras Street, Suite 2700 <br> New Orleans, LA 70130 <br> Telephone: (504) 310-2100 <br> jirwin@irwinllc.com | By: /s/ *Kevin C. Newsom* <br> Kevin C. Newsom <br> Lindsey C Boney IV <br> BRADLEY ARANT BOULT CUMMINGS LLP <br> One Federal Place, 1819 Fifth Avenue North <br> Birmingham, AL 35203-2119 <br> Telephone: (205) 521-8803 <br> knewsom@bradley.com |
| *Attorneys for Defendants Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC, and Janssen Ortho LLC* | CHAFFE MCCALL L.L.P. <br><br> By: /s/ *John F. Olinde* <br> John F. Olinde <br> CHAFFE MCCALL L.L.P. <br> 1100 Poydras Street, Suite 2300 <br> New Orleans, LA 70163 <br> Telephone: (504) 585-7241 <br> olinde@chaffe.com <br><br> *Attorneys for Bayer HealthCare Pharmaceuticals Inc. and Bayer Pharma AG* |

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on March 29, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs and Defendants by operation of the court's electronic filing system and served on all other plaintiff counsel via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre-Trial Order No. 17.

*/s/ James B. Irwin*
**James B. Irwin**