**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE ELDON E. FALLON |
| Joseph J. Boudreaux, Jr., et al. v. Janssen et al. Case No. 2:14-cv-02720 | MAGISTRATE NORTH |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* NO. 3 TO EXCLUDE EVIDENCE OF FOREIGN LABELING AND REGULATORY ACTIONS UNDER FEDERAL RULES OF EVIDENCE 402 AND 403**

Defendants Bayer HealthCare Pharmaceuticals Inc., Bayer Pharma AG, Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC, and Janssen Ortho LLC (collectively, "Defendants") submit this joint motion *in limine* to exclude evidence of foreign labeling and regulatory actions under Federal Rules of Evidence 402 and 403. By this motion, Defendants seek only to exclude evidence of foreign labeling and regulatory actions. Defendants do not seek to exclude otherwise relevant scientific information generated outside the United States, evidence of otherwise relevant conduct of Defendants' non-United States employees, or otherwise relevant non-United States documents.

**INTRODUCTION**

This product-liability case is governed by Louisiana law and involves Plaintiff Joseph Boudreaux's treatment with Xarelto® in the United States, after its approval by FDA for treatment of patients in this country. Despite the domestic focus of this lawsuit, Plaintiffs intend to submit evidence of Xarelto labeling and regulatory actions in certain foreign jurisdictions—in particular, Canada, the European Union, and New Zealand—regarding the use of prothrombin time ("PT") testing with a Neoplastin® reagent and/or anti-Factor Xa testing. *See*, *e.g.*, PX 5767696 (Canadian

Product Monograph); PX 5767841 (EU SmPC); PX 5768761 (New Zealand Data Sheet). Plaintiffs' evidence of foreign labeling and regulatory actions reflects determinations specific to Canada, the European Union, and New Zealand, based on standards and considerations unique to each of those respective countries' regulatory agencies. Because those unique foreign regulatory standards and the bases for regulatory action in each jurisdiction differ, foreign labeling and other regulatory actions do not bear—in this case—on the adequacy of Xarelto labeling or its design as approved by FDA for use in the United States.

For those reasons, foreign-regulatory evidence should be excluded as irrelevant under Rule 402. In addition, even if minimally probative on any issue, such evidence should be excluded under Rule 403 because it would be unfairly prejudicial. Allowing this sort of evidence would require Defendants to provide the specific context for the evidence, which would lead to numerous and detailed mini-trials on collateral issues, would be likely to cause jury confusion, and would waste the Court's, the jury's, and the parties' time and resources.

## BACKGROUND

### A. Foreign Labeling and Regulatory Actions Are Based on Factors Unique to Each Jurisdiction

Xarelto has been approved for use in more than 125 countries worldwide, including the United States. Each of those jurisdictions has its own regulatory agency that applies its own laws, policies, and standards in deciding which medicines to approve, for which indications, and at what dosages. Likewise, each regulatory agency independently decides what prescribing information may or must be provided to physicians and/or patients. And regulatory action is necessarily driven by factors arising from each country's unique political, social, and economic situation. In sum, each country has its own "controlling standards of behavior" for medicines or medical products that:

> reflect the unique balance struck between the benefit each market derives from the product's use and the risks associated with that use; between the community's particular need for the product and its desire to protect its citizens from what it deems unreasonable risk. . . . [E]ach community faces distinct demands, and has unique concerns that make it peculiarly suited to make this judgment.

*Doe v. Hyland Therapeutics*, 807 F. Supp. 1117, 1129 (S.D.N.Y. 1992); *see also In re Vioxx Prods. Liab. Litig.*, MDL No. 1657, 2009 WL 1636244, at *9 (E.D. La. Feb. 10, 2009) (Fallon, J.) (dismissing claims of foreign product-liability plaintiffs on forum non conveniens grounds because "trying the plaintiffs' claims in the United States would risk disrupting the judgments of foreign regulatory bodies by imposing an American jury's view of the appropriate standards of safety and labeling on companies marketing and selling drugs in the plaintiffs' respective home forums"); *Harrison v. Wyeth Labs.*, 510 F. Supp. 1, 4–5 (E.D. Pa. 1980) (dismissing claims of foreign product-liability plaintiffs on forum non conveniens grounds because "[e]ach country has its own legitimate concerns and its own unique needs which must be factored into its process of weighing the drug's merits, and which will tip the balance for it one way or the other"), *aff'd*, 676 F.2d 685 (3d Cir. 1982).

      The unique standards and considerations that apply in various countries around the world are specific to those countries and are not typically relevant to FDA's decision-making, unless specifically incorporated as such. In short, FDA makes policy judgments that are independent from those made by other worldwide regulatory agencies regarding the approval of prescription medications.

### B. Plaintiffs' Foreign Regulatory Evidence

Plaintiffs assert two claims that rely on foreign labeling and regulatory evidence.

#### 1. Plaintiffs' Failure-to-Instruct Claim (Neoplastin PT test)

The first claim for which Plaintiffs intend to introduce foreign-labeling evidence is that the Xarelto warnings allegedly are inadequate because they do not instruct physicians to use a Neoplastin PT test to determine whether a given patient is at a high risk of bleeding, and whether to discontinue treatment with Xarelto. Pls.' Dosing & Monitoring Preemption Opp. at 2 (Doc. 5652). In particular, Plaintiffs contend that if a Neoplastin PT test, taken at initiation of therapy or at undefined intervals thereafter, shows that a patient's PT is above a certain value, then the patient is at an elevated risk for bleeding and should be taken off Xarelto.

To be clear, *none* of the foreign Xarelto labeling on which Plaintiffs intend to rely—from Canada, the European Union, or New Zealand—states that a Neoplastin PT test should be used for that purpose. While those labels provide information regarding the correlation between PT and Xarelto plasma concentrations, *none* describes a correlation between PT and bleeding risk, much less instructs doctors to make clinical decisions based on such a test.

For example, the Canadian label states that "[t]he prothrombin time (PT) measured in seconds, is influenced by XARELTO in a dose-dependent way with a close correlation to plasma concentration if the Neoplastin® reagent is used," and for "*patients who are bleeding* . . . may be useful to assist in determining an excess of anticoagulant activity." Canadian Product Monograph at 9 (emphasis added). The European Union label provides similar information: "Prothrombin time (PT) is influenced by rivaroxaban in a dose dependent way with a close correlation to plasma

4

concentrations (r value = 0.98) if Neoplastin is used for the assay." EU SmPC § 5.1. And the New Zealand label tracks the European Union label language. *See* New Zealand Data Sheet at 19.[1]

### 2. Plaintiffs' Design-Defect Claim (anti-Factor Xa assay)

Plaintiffs also intend to introduce foreign-labeling evidence to support their claim that Xarelto's design allegedly is defective on the theory that Defendants did not develop a Xarelto-specific anti-Factor Xa assay that would allow U.S. physicians to assess coagulation. Pls.' Dosing & Monitoring Preemption Opp. at 3. Again, Plaintiffs contend that such a medical device would permit U.S. physicians to identify patients at elevated risk of bleeding and to consider discontinuing those patients' treatment. But none of the foreign labels on which Plaintiffs intend to rely provides any instruction that an anti-Factor Xa assay should be used for such a purpose.

Moreover, the parties do not dispute that an anti-Factor Xa assay must be specifically calibrated to a particular medicine. The parties also do not dispute that, after many years and attempts by a company called Diagnostica Stago to obtain FDA approval of a Xarelto-specific anti-Factor Xa assay, FDA has not yet found an assay that meets the standards required for approval in the United States. *See* Pls.' Dosing & Monitoring Preemption Opp. at 11 n.34; Gosselin Dep. at 207:5–13; Leissinger Dep. at 184:6–16; Plunkett Dep. at 408:21–409:7.

By contrast, an anti-Factor Xa assay calibrated to Xarelto has been approved by the European Medicines Agency ("EMA") and is commercially available in the European Union. *See* Defs.' Dosing & Monitoring Preemption Reply Br. at 5. Accordingly, the EMA-approved Xarelto label—used by patients and physicians in the European Union—notes that "[a]lthough treatment with rivaroxaban does not require routine monitoring of exposure, rivaroxaban levels measured

---

[1] Also, as explained in prior briefing, in the United States, FDA *expressly rejected* Janssen's proposal to add similar language to the U.S. Xarelto label. Defs.' Dosing & Monitoring Preemption Reply Br. at 13 (Doc. No. 5677).

with *a calibrated quantitative anti-factor Xa assay* may be useful in *exceptional situations* where knowledge of rivaroxaban clinical exposure may help to inform clinical decisions, e.g., overdose and emergency surgery." EU SmPC § 4.4 (emphasis added).

In Canada—where there also is a commercially available Xarelto-specific assay that has been approved by the relevant regulator, Health Canada—the Xarelto label notes that "[a]lthough there is no need to monitor anticoagulant effect of XARELTO during routine clinical practice, *in certain infrequent situations* such as overdosage, acute bleeding, urgent surgery, in cases of suspected non-compliance, or *in other unusual circumstances*, assessment of the anticoagulant effect of rivaroxaban may be appropriate," and measurements with a "Factor Xa assay *using rivaroxaban-specific calibrators and controls*, may be useful" for that purpose, but such tests "*should not be done unless XARELTO-specific calibrators and controls are available*." Canadian Product Monograph at 9–10 (emphasis added).

Importantly, neither the European Union nor the Canadian label instructs physicians to use an anti-Factor Xa assay to identify patients at an elevated risk for bleeding.

**ARGUMENT**

**I. Evidence of foreign labeling and regulatory actions regarding Xarelto should be excluded.**

Evidence of foreign labeling and regulatory actions regarding Xarelto should be excluded under Rules 402 and 403. In light of the unique standards and concerns underlying foreign regulatory actions, numerous U.S. courts—in product-liability actions governed by U.S. law—have excluded evidence of foreign regulatory actions as irrelevant under Rule 402 or unduly prejudicial, confusing, and/or wasteful under Rule 403. As the court held in *McDowell v. Eli Lilly & Co.*, No. 13 Civ. 3786, 2015 WL 845720, at *5 (S.D.N.Y. Feb. 26, 2015), "[t]he mere existence of a differently structured and written European label does not establish that the U.S. label is

insufficient, misleading, or legally inadequate, nor is foreign regulatory action even appropriate as a subject of expert testimony in pharmaceutical cases." And in *In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396, 488 (S.D.N.Y. 2016), the court held that, "[b]ecause this litigation is based on U.S. law, and because evidence regarding the FDA will be admitted, the actions taken by foreign regulatory agencies are not particularly probative and likely will be confusing."

Similarly, in *In re Seroquel Prods. Liab. Litig.*, 601 F. Supp. 2d 1313, 1318 (M.D. Fla. 2010), the court held that even "[a]ccepting for argument's sake that such evidence [concerning foreign regulatory actions] is relevant regarding notice and scienter, the fact remains that its probative value is greatly overmatched by the jury confusion, waste of time, and unfair prejudice that would result if the Court were to allow Plaintiffs to introduce this evidence during their main case." As the court explained, "[t]o admit evidence about the foreign regulators' actions regarding Seroquel without providing context concerning the regulatory schemes and decision-making processes involved would strip the jury of any framework within which to evaluate the meaning of that evidence." *Id.*  But "allowing [the manufacturer] to introduce this [contextual] evidence would result in a series of 'mini-trials' regarding the grounds for the decisions and the regulatory schemes of the three foreign countries involved," which "would confuse the jury and waste everyone's time." *Id.*; *accord In re Viagra Prods. Liab. Litig.*, 658 F. Supp. 2d 950, 965–66 (D. Minn. 2009) ("any discussion of foreign regulatory actions is irrelevant and should therefore be excluded" and "to the extent that foreign regulatory information is relevant, 'its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury'" (citation omitted)); *In re Baycol Prods. Liab. Litig.*, 532 F. Supp. 2d 1029, 1054 (D. Minn. 2007) ("allowing the admission of evidence of foreign regulatory actions, in a case that is governed by domestic law, would likely cause jury confusion"); *Jones v. Lederle Labs.*, 785 F.

7

Supp. 1123, 1126–27 (E.D.N.Y. 1992) (because of less stringent testing standards in Japan, testimony regarding a vaccine's use in Japan provided "no acceptable evidence" to support plaintiff's claim that a safer vaccine existed).

### A. Evidence of foreign labeling and regulatory actions regarding Xarelto should be excluded under Rule 402 as irrelevant.

Here, as in the authorities discussed above, evidence of foreign labeling and other regulatory actions in Canada, the European Union, and New Zealand does not bear on the adequacy of Xarelto's labeling or design as a matter of U.S. law and FDA's own unique regulatory standards. That point is amply demonstrated by the fact that FDA expressly rejected proposed Neoplastin PT language that is similar to the language contained in the Canadian, European Union, and New Zealand labels. And it is further demonstrated by the fact that FDA has yet to approve an anti-Factor Xa assay for use with patients in the United States, even though EMA has approved such an assay for use with patients in the European Union.

As noted above, the foreign-labeling evidence on which Plaintiffs rely does not support their claims. Not a single one of the Canadian, the European Union, or the New Zealand label contains a specific clinical instruction of the sort that Plaintiffs demand here—namely, to instruct a doctor to use a particular device (Neoplastin PT) as a means of assessing whether a particular patient should take Xarelto. Nor does the European Union or the Canadian label support Plaintiffs' design-defect claim—neither recommends using an anti-Factor Xa assay to identify patients at an allegedly elevated risk for bleeding. Instead, those labels limit use of the assay to "exceptional situations" and—like the U.S. label—state that routine monitoring with Xarelto is not required. *See* Canadian Product Monograph at 10 ("there is no need to monitor anticoagulation effect of XARELTO during routine clinical practice"); EU SmPC § 4.4 ("treatment with rivaroxaban does

8

not require routine monitoring of exposure"); New Zealand Data Sheet at 19 ("There is no need for monitoring of coagulation parameters while using Xarelto").[2]

Accordingly, evidence of foreign labeling and foreign regulatory actions should be excluded as irrelevant under Rule 402.

> **B.     Evidence of foreign labeling and regulatory actions regarding Xarelto should be excluded under Rule 403 because its probative value, if any, is substantially outweighed by the risk of unfair prejudice, jury confusion, and wasted trial time.**

Even if evidence concerning foreign regulatory actions were relevant (and it is not), it should nevertheless be excluded under Rule 403. Admission of the evidence would be unfairly prejudicial, would confuse the issues and mislead the jury, and would waste trial time on collateral issues by leading to a series of mini-trials necessary to determine the basis of each foreign regulatory action and label history, as well as the applicable foreign regulatory standards.

For example, it does not follow—as a jury might improperly infer from Plaintiffs' evidence—that each regulatory agency would disclose laboratory testing on a product's label, even assuming the testing was equally available in each jurisdiction. And it does not follow, as a jury might improperly infer, that the disclosures on foreign labeling regarding a Neoplastin PT test should be mirrored on FDA-approved labeling for use with patients in the United States. Inviting the jury to draw that inference would be unduly prejudicial to Defendants, risk jury confusion, and waste trial time.

Similarly, as explained above, Diagnostica Stago has tried to gain FDA approval for an anti-Factor Xa assay in the United States and has thus far been unsuccessful, so there is no

---

[2] By this motion, Defendants do not seek to exclude information in their possession merely because that information was supplied to a foreign regulatory agency. For that reason, Plaintiffs cannot argue that evidence of foreign labeling or other regulatory action by foreign regulatory agencies is necessary to show that Defendants supposedly were on notice of any particular information.

9

commercially available anti-Factor Xa assay for use with patients in the United States. Thus, there is no basis for Defendants or FDA to recommend its use for any purpose to doctors in the United States. There are approved anti-Factor Xa assays on the market in Canada and the European Union. Thus, the labeling in those countries provides information to doctors about use of those assays. Allowing Plaintiffs to introduce evidence concerning foreign labeling and regulatory actions regarding the use of an anti-Factor Xa assay when the assay has not been approved by FDA, and is not commercially available in the United States, would be unduly prejudicial to Defendants, confuse the jury, and waste trial time.

Indeed, the possibility of juror confusion is not just theoretical—it is likely. In an effort to support their anti-Factor Xa theory with language from the Canadian label, Plaintiffs have conflated the experimental *Factor Xa inhibition* biomarker assay that Defendants used as a research tool in their clinical trials to assess the *amount of Factor Xa* in subjects' blood, with the *anti-Factor Xa* assay that has since been developed by third parties to assess *rivaroxaban levels* in patients' blood. *See, e.g.*, Pls.' LPLA Opp. at 6 & n.14 (Doc. 5606). There is no reason to allow that confusion to affect the jury.

## CONCLUSION

For the foregoing reasons, the Court should exclude evidence of foreign labeling and regulatory actions.

Respectfully submitted,

DRINKER BIDDLE & REATH LLP

By: /s/ *Susan M. Sharko*
Susan M. Sharko
Drinker Biddle & Reath LLP
600 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
susan.sharko@dbr.com

Rodney M. Hudson
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
Telephone: (415) 591-7500
Rodney.hudson@dbr.com

Chanda A. Miller
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2500
Chanda.Miller@dbr.com


IRWIN FRITCHIE URQUHART & MOORE LLC

By: /s/ *James B. Irwin*
James B. Irwin
Kim E. Moore
Irwin Fritchie Urquhart & Moore LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
jirwin@irwinllc.com


*Attorneys for Defendants Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC, and Janssen Ortho LLC*

ARNOLD & PORTER KAYE SCHOLER LLP

By: /s/ *William Hoffman*
William Hoffman
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
william.hoffman@apks.com

Andrew K. Solow
Steven Glickstein
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8485
andrew.solow@apks.com
steven.glickstein@apks.com


BRADLEY ARANT BOULT CUMMINGS LLP

By: /s/ *Kevin C. Newsom*
Kevin C. Newsom
Lindsey C Boney IV
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place, 1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8803
knewsom@bradley.com


CHAFFE MCCALL L.L.P.

By: /s/ *John F. Olinde*
John F. Olinde
Chaffe McCall L.L.P.
1100 Poydras Street, Suite 2300
New Orleans, LA 70163
Telephone: (504) 585-7241
olinde@chaffe.com


*Attorneys for Bayer HealthCare Pharmaceuticals Inc. and Bayer Pharma AG*

**CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that on the 29th day of March, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs by operation of the court's electronic filing system and a copy of the proposed documents to be placed under seal sent to Plaintiffs' Liaison Counsel by email transmission.

                              */s/      John F. Olinde*