**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**


IN RE: XARELTO (RIVAROXABAN)   MDL No. 2592
PRODUCTS LIABILITY LITIGATION

             SECTION L

THIS DOCUMENT RELATES TO:   JUDGE ELDON E. FALLON

Joseph J. Boudreaux Jr. et al. v. Janssen et al.  MAGISTRATE NORTH
Case No. 2:14-cv-02720


**MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' OMNIBUS MOTION *IN LIMINE* NO. 1**

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................ i

INTRODUCTION ............................................................................................................... 1

LEGAL STANDARD ......................................................................................................... 3

MOTIONS *IN LIMINE* ..................................................................................................... 4

    D11.    Evidence and argument concerning Defendants' actual or anticipated profits from the sale of Xarelto. ................................................................................... 4

    D12.    Evidence and argument concerning Defendants' overall sales, profitability, and market share. ............................................................................................ 6

    D13.    Evidence and argument relating to prescription medicine pricing. ...................... 8

    D14.    Evidence and argument concerning executive compensation. ............................ 10

    D15.    Evidence and argument concerning Adverse Event Reports. .............................. 11

    D16.    References to the presence, absence, or identity of a corporate representative at trial. ........................................................................................ 17

    D17.    Evidence and argument concerning the moral or ethical, as opposed to legal, duties of pharmaceutical manufacturers. ........................................................... 18

CERTIFICATE OF SERVICE ........................................................................................... 22

Defendants Bayer HealthCare Pharmaceuticals Inc. and Bayer Pharma AG (collectively, "Bayer") and Janssen Pharmaceuticals, Inc., Janssen Research and Development, LLC, and Janssen Ortho LLC (collectively, "Janssen") (together, "Defendants"), move *in limine* to preclude Plaintiffs Joseph J. Boudreaux, Jr. and Loretta Boudreaux from presenting the twelve categories of evidence described below.

## INTRODUCTION

Plaintiffs' Exhibit List includes evidence that, among other things, is not relevant (Fed. R. Evid. 402), constitutes inadmissible hearsay (Fed. R. Evid. 801–02), and should be excluded because there is a substantial likelihood that the evidence will cause undue prejudice, confuse the issues, and waste trial time on collateral matters that are not relevant to any issue that the jury will be asked to decide (Fed. R. Evid. 403).

Plaintiffs filed this action alleging that Mr. Boudreaux experienced a gastrointestinal bleed in February 2014 as a result of using Xarelto®, which was originally prescribed for him by Dr. Kenneth Wong in January 2014 to reduce the risk of stroke and other serious events associated with atrial fibrillation. At the time Mr. Boudreaux allegedly took Xarelto, he was 72 years old, had a number of other health conditions, and was taking a variety of other prescription medications, including aspirin.

Plaintiffs have stipulated that their action is governed exclusively by the Louisiana Product Liability Act ("LPLA"), and that the only two causes of action asserted are: (1) that Xarelto is unreasonably dangerous in design, pursuant to La. Rev. Stat. Ann. § 2800.56; and (2) that Xarelto is unreasonably dangerous because of an inadequate warning, pursuant to La. Rev. Stat. Ann. § 2800.57. Stipulation and Order at 1 (Doc. 5340) (Feb. 6, 2017). Plaintiffs have also stipulated that punitive damages are not available and have agreed that "any claims for recovery of punitive

1

damages and attorneys' fees are hereby dismissed with prejudice." *Id.* at 2.

Moreover, in response to Defendants' summary judgment, preemption, and *Daubert* motions, and during argument on those motions, Plaintiffs narrowed the product-liability theories that they are asserting in support of their design-defect and failure-to-warn claims under the LPLA. *First*, Plaintiffs now have limited their design-defect claim to Xarelto's lack of a reversal agent[1] and/or the lack of an anti-Factor Xa assay.[2]  *Second*, Plaintiffs have focused their failure-to-warn claim on the alleged failure to provide instructions regarding the use of the Neoplastin PT test (which they incorrectly argue can be used to measure blood plasma concentration), the failure to warn about the recall of the INRatio device that was used in the ROCKET AF clinical trial that supports the AFib indication, and the failure to include in the label before September 2015 U.S. sub-group data from the ROCKET AF trial.[3]

Accordingly, subject to the Court's ruling on Defendants' motions for summary judgment, the issues to be addressed at trial on the design-defect claim are limited to: (1) whether Xarelto was unreasonably dangerous because it was defective in design, in that it was sold without a reversal agent and/or an anti-Factor Xa assay, and (2) whether any such defect caused Mr. Boudreaux's injury.  On the failure-to-warn claim, the issues for trial are: (1) whether Xarelto was unreasonably dangerous because of inadequate warnings regarding (a) testing available to measure blood plasma concentration and what to do in response to the results of a lab test, (b) the Alere

---

[1] Plaintiffs' experts have testified that a reversal agent would not have made a different to Mr. Boudreaux's alleged injuries.  See Defendants' MIL No. 1 to Exclude Evidence or Argument Related to Reversal Agent.

[2] *See, e.g.*, Pls.' Opp. to Defs.' Joint Motion for Summary Judgment as to Pls.' Design-Defect Claims Under the Louisiana Products Liability Act (Doc. 5606) at 1, 2, 5; Oral Argument Rough Transcript at 73:1–3 (Mar. 23, 2017).

[3] *See, e.g.,* Pls.' Opp. to Defs.' Joint Motion for Partial Summary Judgment Based on the Learned Intermediary Doctrine (Doc. 5629) at 1; Oral Argument Rough Transcript at 119:5–10 (Mar. 23, 2017); Pls.' Opp. to Defs.' Joint Motion for Summary Judgment as to Pls.' Design-Defect Claims Under the Louisiana Product Liability Act (Doc. 5606) at 2–3.

INRatio device, and (c) U.S. sub-group data from ROCKET AF, and (2) whether any such inadequate warnings caused Mr. Boudreaux's injury.  Under the learned intermediary doctrine, the causation inquiry for the failure-to-warn claim will necessarily require a determination of whether a different label would have changed Dr. Wong's prescribing decision.

The categories of evidence described below are not relevant to those issues and/or are otherwise inadmissible, and therefore that evidence should be excluded at trial.

## LEGAL STANDARD

"Relevancy is the threshold determination in any decision regarding the admissibility of evidence." *Seidman v. Am. Airlines, Inc.*, 923 F.2d 1134, 1139 (5th Cir. 1991) (internal quotation omitted).  Evidence is relevant if it has a tendency to make a fact that is of consequence to the determination of an action more or less probable than it would be without the evidence.  Fed. R. Evid. 401; *McGonigal v. Gearhart Indus., Inc.*, 851 F.2d 774, 778 (5th Cir. 1988); *Kennedy v. Magnolia Marine Transp. Co.*, 189 F. Supp. 3d 610, 619 (E.D. La. May 17, 2016).  Evidence that lacks probative value is properly excluded as irrelevant.  Fed. R. Evid. 402.

Even if evidence is otherwise relevant and in an admissible form, a court may exclude the proffered evidence "if its probative value is substantially outweighed by the danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403; *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 672–73 (5th Cir. 1999) (excluding evidence of reports from state regulatory agency as cumulative and unduly prejudicial); *Randle v. Tregre*, 147 F. Supp. 3d 581, 598–99 (E.D. La. 2015).  Trial courts are given broad discretion to balance the probative value against the risks of unfair prejudice.  *McGonigal*, 851 F.2d at 778.

"'Unfair prejudice' within this context means an undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Cook*, 557 F.2d 1149, 1153 (5th Cir. 1977) (citing to Fed. R. Evid. 403 advisory committee's notes); *see also Saacks v. Privilege Underwriters Reciprocal Exch.*, Civ. No. 16-1149, 2017 WL 480581, at *2–3 (E.D. La. Feb. 2, 2017) (Fallon, J.).

It is well-established that a trial court should exclude evidence that has a tendency to distract the jury from its main inquiry or to confuse the issue. *See, e.g.*, *Plemer v. Parsons-Gilbane*, 713 F.2d 1127, 1139 n.11 (5th Cir. 1983) (noting that where evidence, "though of some relevance, may lead to confusing and time-consuming disputes with respect to collateral issues the trial judge may properly reject or limit it under Rule 403") (internal quotation and citation omitted).

## MOTIONS *IN LIMINE*

### D11.   Evidence and argument concerning Defendants' actual or anticipated profits from the sale of Xarelto.

***The Issue.***   Whether the Court should exclude evidence and argument concerning Defendants' actual or anticipated profits from the sale of Xarelto.

***The Evidence at Issue.***   The evidence includes testimony, as well as internal documents and communications, concerning Xarelto-related return on investment, revenue, profits, and sales. In particular, Plaintiffs have designated as exhibits various internal documents that report or predict the profits from Xarelto sales.

***Argument.***   The Court should exclude any evidence or argument concerning actual or anticipated profits from the sale of Xarelto because (1) it is not relevant to any element of Plaintiffs' claims, *see* Fed. R. Evid. 401–02, and (2) any probative value is substantially outweighed by the risk of unfair prejudice and of confusing the issues, misleading the jury, and wasting time, *see* Fed. R. Evid. 403.

4

*Relevance.*  Evidence concerning Defendants' actual or anticipated profits is irrelevant to Plaintiffs' product-liability claims, particularly given that—as noted above—Plaintiffs have stipulated that punitive damages are not available under the LPLA.  In the failure-to-warn context, numerous courts have reached this same conclusion.  *E.g.*, *Bunch v. Pacific Cycle, Inc.*, Civ. No. 4:13-cv-0036, 2015 WL 11622952, at *10 (N.D. Ga. Apr. 27, 2015) (granting a motion *in limine* and precluding the plaintiffs from introducing "evidence or argument concerning the profit margin of the [product] at trial"); *Cross v. Wyeth Pharm., Inc.*, Civ. No. 8:06-cv-429, 2011 WL 2517211, at *6 (M.D. Fla. June 23, 2011) (granting motions *in limine* to preclude the plaintiffs from presenting evidence of the defendants' profit margins and wealth); *In re Norplant Contraceptive Prods. Liab. Litig.*, No. MDL 1038, 1997 WL 80526, at *1 (E.D. Tex. Feb. 19, 1997) (granting the defendant's motion *in limine* because "evidence of profit margin . . . is not relevant to any failure to warn issue").  In addition, evidence of a defendant's intent or motive, including any "profit motive," is irrelevant to any element of a failure-to-warn claim.  *See Gray v. Hoffman-LaRoche, Inc.*, 82 F. App'x 639, 651 (10th Cir. 2003) (defendant's "alleged motive for failing to issue a stronger warning is immaterial to any element of [the plaintiff's] . . . causes of action, and is therefore inconsequential to the determination of the case").  Likewise, profit-related evidence is irrelevant to any element of a design-defect claim.  *See Bunch*, 2015 WL 11622952, at *10.

Moreover, Plaintiffs have stipulated that they are not seeking punitive damages. Stipulation and Order (Doc. 5340) (Feb. 6, 2017).  Thus, while some courts have found financial condition relevant to a determination of punitive damages, others have not, *see In re Norplant*, 1997 WL 80526, at *1 (evidence of the defendant's profit margin for Norplant was too prejudicial to admit even on the issue of punitive damages).  But, here, the Court need not consider the question of whether this evidence would be relevant to punitive damages, because there are none

5

at issue in this case, so there is no usefulness to this evidence other than to inflame the jury.

*Rule 403 Balancing.*  Evidence of actual or anticipated profits from the sale of Xarelto also should be excluded under Rule 403 because (1) it would improperly suggest to the jury that its determination of liability should be affected by Defendants' profits from the sale of Xarelto; (2) it would confuse the issues before the jury, which—as explained above—have nothing to do with Xarelto's profitability; and (3) it would require a mini-trial on the economics of Xarelto sales, with Defendants having to present other evidence explaining the various factors that affect the profitability of Xarelto.  *See, e.g.*, *La Plante v. Am. Honda Motor Co.*, 27 F.3d 731, 740 (1st Cir. 1994) (holding that evidence of manufacturer's profits were inadmissible at retrial because likely prejudice outweighed any probative value); *Gray*, 82 F. App'x at 651 (affirming the trial court's exclusion of profit evidence as "more prejudicial than probative"); *In re Norplant*, 1997 WL 80526, at *1 (excluding profit evidence under Rule 403).

## D12.  Evidence and argument concerning Defendants' overall sales, profitability, and market share.

*The Issue.*  Whether the Court should exclude evidence and argument concerning Defendants' sales, profitability, and market share.

*Argument.*  Like evidence concerning profits from Xarelto, any evidence or argument regarding Defendants' sales, profitability, and market share should be excluded because (1) it is not relevant to any element of Plaintiffs' claims, *see* Fed. R. Evid. 401–02, and (2) any probative value is substantially outweighed by the risk of unfair prejudice and of confusing the issues, misleading the jury, and wasting time, *see* Fed. R. Evid. 403.

*Relevance.*  Evidence relating to Defendants' sales, profitability, and market share has no bearing on any element of either a failure-to-warn or design-defect claim.  This Court recognized as much in the *Vioxx* litigation.  *See In re Vioxx Prod. Liab. Litig.*, No. MDL 1657, 2005 WL

6

3164254, at *1 (E.D. La. Nov. 21, 2005) (Fallon, J.) (granting motion to exclude evidence relating to the assets and profitability of the defendant, subject to the right of the plaintiffs to introduce such evidence to rebut good-motive testimony from the defendant); *accord, e.g.*, *Gray v. Energy XXI GOM LLC*, Civ. No. 12-165, 2013 WL 4011990, at *6 (M.D. La. Aug. 5, 2013) ("No reference may be made to any party's financial status, including the wealth or poverty of a party, or the ability to pay a verdict.  The financial statuses and abilities of the parties are irrelevant under Federal Rule of Evidence 401."); *Fabre v. Royal Freight, LP*, Civ. No. 11-800, 2013 WL 3821478, at *4 (M.D. La. July 23, 2013) (excluding evidence regarding financial condition as irrelevant); *Okuda v. Wyeth*, Civ. No. 1:04-cv-80, 2012 WL 12337860, at *3 (D. Utah July 24, 2012) (granting a motion *in limine* "to exclude reference to and evidence of Defendant's wealth, profit margins for hormone therapy and/or alleged 'profit motive,'" because "Defendants' wealth has no relevance to this case, except to the extent Defendants might argue that they were financially unable to complete any necessary testing").  And as discussed above (*see supra* Part D11), that is particularly true here, where Plaintiffs may not recover punitive damages.

*Rule 403 Balancing.*  Evidence of Defendants' sales, profitability, and market share also should be excluded under Rule 403 because such evidence would improperly suggest that Defendants' liability somehow turns on their corporate revenues or wealth.  *See Blankenship v. Rowntree*, 219 F.2d 597, 598 (10th Cir. 1955) ("It is the general rule that . . . the admission of evidence concerning the wealth of a party litigant constitutes error. . . . [S]uch evidence tends to inject . . . a foreign, diverting, and distracting issue which may effectuate prejudicial results.") (citations omitted); *Geddes v. United Financial Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) (same); *Fabre*, 2013 WL 3821478, at *4 (excluding evidence of financial condition as unduly prejudicial).

The only purpose for attempting to introduce sales figures, profitability and market share

information would be to appeal to prejudice against large corporations (particularly large pharmaceutical corporations), to invite the jury to award damages not otherwise justified by the applicable law on the theory that Defendants can afford to pay a plaintiff, and to encourage the jury to punish Defendants.  Courts have made clear that appealing to jurors' biases to invite a verdict based on passion and prejudice rather than on relevant facts should not be allowed.  *See, e.g.*, *St. Cyr v. Flying J Inc.*, No. 3:06-cv-13-J-33TEM, 2007 WL 2696791, at *2 (M.D. Fla. Sept. 12, 2007) ("As punitive damages are not an issue in this case, this Court finds that it would be inappropriate, and unfairly prejudicial to Defendant, to allow the Plaintiffs to refer to Defendant's net worth, revenues, profits, and financial condition."); *Draper v. Airco, Inc.*, 580 F.2d 91, 95 (3d Cir. 1978) (ordering a new trial after, among other improprieties, "[c]ounsel repeatedly made reference to the wealth of the defendants in contrast to the relative poverty of the plaintiff"); *Foster v. Crawford Shipping Co., Ltd.*, 496 F.2d 788,792 (3d Cir. 1974) (noting that court does not sanction "appeals to juror prejudice by virtue of disparity of financial resources").

Moreover, the introduction of such evidence would require a mini-trial with Defendants explaining the various elements of their financial positions and the costs of developing and marketing Xarelto (and other drugs), including the risk of regulatory disapproval and even the risk of unfounded litigation.

### D13.   Evidence and argument relating to prescription medicine pricing.

*The Issue.*  Whether the Court should exclude evidence and argument concerning the price of Xarelto, how Defendants priced Xarelto, the price of other prescription medicines generally, and how pharmaceutical companies price medicines generally.  This motion also seeks to exclude any reference to phrases related to those concepts, such as "big pharma," "drug costs are too high," and "cost of medication crisis."

*The Evidence at Issue.*  Defendants anticipate that Plaintiffs may present evidence or argument suggesting that pharmaceutical companies generally, or Defendants specifically, have made prescription medicines too expensive for consumers.

*Argument.*  Such evidence should be excluded because (1) it is not relevant to any element of Plaintiffs' claims, *see* Fed. R. 401–02; and (2) any probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury, *see* Fed. R. Evid. 403.

*Relevance.*  Evidence concerning medicine pricing would not make any material fact more or less probable and thus is not admissible at trial.  The price of Xarelto or any other medicine has nothing to do with whether Xarelto was unreasonably dangerous in design, whether the warnings for Xarelto were adequate, whether Dr. Wong would have changed his prescription if different warnings had been given, or whether Xarelto caused Mr. Boudreaux's alleged injuries.

*Rule 403 Balancing.*  In any event, evidence concerning medicine pricing and phrases such as "big pharma," "drug costs are too high," and "cost of medication crisis," should be excluded under Rule 403 because any marginal probative value would be substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, and wasting time.  The only purpose that evidence or argument concerning medicine pricing would serve would be to shock or anger jurors and encourage them to decide this case on an improper basis.  The jury will not be asked to pass judgment on whether medicine prices are too high, too low, or just right— and so Plaintiffs should not be allowed to suggest that the price of Xarelto or any other prescription medicine has any bearing on the issues that the jury will be asked to decide.  Moreover, if Plaintiffs are allowed to present evidence or argument on this issue, then Defendants would have to rebut such evidence or argument in a mini-trial by explaining all the economic and market factors that

affect the price of medicine generally, and the price of Xarelto specifically.

**D14.    Evidence and argument concerning executive compensation.**

*The Issue.*    Whether the Court should exclude evidence and argument concerning Defendants' executives' compensation.

*The Evidence at Issue.*    The evidence includes documents from personnel files showing the amount of compensation for various employees.

*Argument.*    Evidence related to Defendants' executives' compensation should be excluded because (1) it is not relevant to any element of Plaintiffs' claims, *see* Fed. R. Evid. 401–02, and (2) any probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, and wasting time, *see* Fed. R. Evid. 403.

*Relevance.*    As this Court held in the *Vioxx* litigation, evidence related to the compensation of Defendants' executives has no bearing on any material issue in this case. *See In re Vioxx Prod. Liab. Litig.*, 2005 WL 3164254, at *1 (granting motion to exclude evidence relating to the compensation and financial decisions of the defendant's employees, subject to the right of the plaintiffs to introduce such evidence to rebut good-motive testimony from the defendant).  And, in this case, the Court has already noted that compensation questions aimed at embarrassing witnesses are both "disturbing" and inappropriate.  Hearing Transcript at 17:13–24 (Doc. 2281).

*Rule 403 Balancing.*    Evidence or argument concerning executive compensation also should be excluded under Rule 403 because permitting Plaintiffs to adduce evidence of executive compensation risks invoking any negative emotion that a juror may harbor against large corporations or their executives.  Such evidence proffered with the intent to inflame a juror's prejudices in this manner is plainly improper, particularly where the effect is to divert the juror's attention to collateral matters.  *See, e.g., Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co.*

10

*Americas*, No. 04 CIV 10014, 2009 WL 3111766, at *6 (S.D.N.Y. Sept. 28, 2009)  (even if evidence of executive compensation were relevant, "any limited probative value of this information is outweighed by its potential to bias the jury under Rule 403").

**D15.    Evidence and argument concerning Adverse Event Reports.**

*The Issue.*  Whether the Court should exclude evidence and argument concerning Adverse Event Reports ("AERs") as evidence of causation or notice, particularly in light of the aggressive and pervasive attorney advertising that has artificially inflated and impacted AERs for Xarelto as explained by Paul Burton and William Peacock in *Heart Rhythm Case Reports* 2016; 2:248–49.[4] Federal regulations require pharmaceutical manufacturers to submit AERs—sometimes referred to as "case reports"—to the Food and Drug Administration ("FDA").  *See* 21 C.F.R. § 314.80. But, as a regulatory matter, these AERs are simply anecdotal reports of a correlation or *association* between the use of a drug and some adverse event, "*whether or not considered drug related*"— *i.e.*, regardless whether the drug caused the event.  *Id*. § 314.80(a) (emphasis added).

According to FDA regulations, AERs do not demonstrate "that the drug caused or contributed to an adverse effect." 21 C.F.R. § 314.80(l).  To the contrary, FDA has explained that the information in AERs "has not been scientifically or otherwise verified," and that "there is no certainty that the suspected drug caused the reaction," as the "event . . . may have occurred by chance at the same time the suspected drug was taken."  FDA, AER System, Office of Pharmacoepidemiology and Statistical Science, *Brief Description with Caveats of System* at 4 (July 18, 2005).  Defendants anticipate that Plaintiffs may attempt to present evidence about AERs to establish causation—*i.e.*, that Xarelto caused Mr. Boudreaux's bleed because, based on an

---

[4] The reports that this motion addresses may also be called "Adverse Experience Reports," "Drug Experience Reports," "Adverse Drug Experience Reports," "Adverse Drug Event Reports," "Adverse Reaction Reports," or simply "Case Reports."

incorrect understanding of AERs, Xarelto supposedly <u>caused</u> other bleeds—or to show that the AERs somehow gave Defendants notice of an increased risk that should have led to a change in Xarelto's labeling.

*The Evidence at Issue.* The evidence includes AERs reported through so-called "QuarterWatch" reports from a third-party entity called the Institute for Safe Medication Practices, internal documents regarding these reports, and testimony from company witnesses and Plaintiffs' experts.

*Argument.* Evidence concerning AERs is not admissible because (1) it is not relevant to any element of Plaintiffs' claims, Fed. R. Evid. 401–02, (2) it is inadmissible hearsay, *see* Fed. R. Evid. 801–02, and (3) any probative value is substantially outweighed by the danger of unfair prejudice and of confusing the issues, misleading the jury, and wasting time, *see* Fed. R. Evid. 403. Moreover, the evidence, based on the published literature and a review of AERs as reported through FDA's MedWatch, is that adverse event reports have been driven by aggressive and pervasive attorney advertisements, and have artificially increased and impacted the number of reports. *See* Burton, P. and Peacock, W.P., *Heart Rhythm Case Reports* 2016; 2:248-49 (observing that patients who "were prescribed rivaroxaban and subsequently discontinued their anticoagulant without consulting their physician after viewing negative rivaroxaban legal advertising" experienced "serious medical events"); Defs.' Opp. to Pls.' Mot. to Preclude James A. Reiffel, MD (And Any Other Medical Expert's Testimony) About Attorney Advertising (Doc. 5529).

*Relevance.* AERs are not relevant or admissible to show medical causation.[5] As explained above, FDA regulations make clear that AERs do no demonstrate that a drug caused or contributed to any adverse effect. *See supra* at 11–12. FDA has further explained that compilations of AERs

---

[5] Nor could AERs be relevant for any other conceivable purpose.

"cannot be used to calculate incidence or estimates of drug risk" because—based on AER data—"[t]rue incidence rates cannot be determined" and "[c]omparisons of drugs cannot be made." *Brief Description with Caveats of System* at 4.

Given these limitations, courts have recognized that AERs contain "[u]ncontrolled anecdotal information," and thus are "one of the *least reliable* sources to justify opinions about both general and individual causation." *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1250 (11th Cir. 2005) (emphasis added) (holding that trial court erred in admitting expert testimony based on AERs to establish general causation because "such anecdotal reports do not prove causation").[6] There are a legion of cases rejecting the view that AER-based testimony can be used to demonstrate medical causation or as a basis for expert testimony. *See*, *e.g.*, *In re Carter-Wallace, Inc., Sec. Litig.*, 220 F.3d 36, 41 (2d Cir. 2000) ("[T]he receipt of an adverse report does not in and of itself show a causal relationship between [the drug] and the illness mentioned in the report").[7]

---

[6] *Accord, e.g.*, *N.J. Carpenters Pension & Annuity Funds v. Biogen IDEC Inc.*, 537 F.3d 35, 53 (1st Cir. 2008) ("[T]he receipt of an adverse report does not in and of itself show a causal relationship between [a drug] and the illness mentioned in the report."); *In re Mirena IUD Prods. Liab. Litig.*, 202 F. Supp. 3d 304, 325 (S.D.N.Y. 2016) ("Case reports are not reliable evidence of causation . . . ."); *In re Accutane Prods. Liab.*, 511 F. Supp. 2d 1288, 1298 (M.D. Fla. 2007) (Case reports "are unreliable as proof [of] causation because, in general, the events were not observed in such a way as to rule out coincidence or other potential causes."); *Hall v. Baxter Healthcare Corp.*, 947 F. Supp. 1387, 1411 (D. Or. 1996) ("[C]ase reports and case studies are universally regarded as an insufficient scientific basis for a conclusion regarding causation because case reports lack controls.").

[7] *Accord, e.g.*, *Goldstein v. Centocor, Inc.*, 310 F. App'x 331, 332 (11th Cir. 2009) (affirming exclusion of expert general causation testimony based on "case reports submitted by doctors who observed possible reactions to [a prescription drug] but made without medical controls or scientific assessment"); *Gibson v. Sanofi-Aventis U.S., LLC*, Civ. No. 3:07-CV-192, 2009 WL 3490454, at *7 (W.D. Ky. Oct. 27, 2009) (rejecting as inadmissible expert opinion based on review of case reports); *Leathers v. Pfizer, Inc.*, 233 F.R.D. 687, 694 (N.D. Ga. 2006) (AERs "do not establish causation"); *Cloud v. Pfizer Inc.*, 198 F. Supp. 2d 1118, 1133 (D. Ariz. 2001) (AERs "are merely compilations of occurrences, and have been rejected as reliable scientific evidence supporting an expert opinion"); *Brumbaugh v. Sandoz Pharm. Corp.*, 77 F. Supp. 2d 1153, 1156 (D. Mont. 1999) (AERs lack "scientific analysis with the safeguards of a controlled experiment," and are merely "compilations of reported phenomena"); *Haggerty v. Upjohn Co.*, 950 F. Supp. 1160, 1164 (S.D. Fla. 1996), *aff'd*, 158 F.3d 588 (11th Cir. 1998) (AERs "contain raw information that has not been scientifically or otherwise verified as to cause and effect" and therefore cannot serve as a basis for expert testimony (citation omitted)); *Thomas v. Hoffman-La Roche, Inc.*, 731 F. Supp. 224, 227-28 (N.D. Miss. 1989) (rejecting expert testimony based in part on AERs), *aff'd*, 949 F.2d 806 (5th Cir. 1992); *Reynolds v. Warthan*, 896 S.W.2d 823, 828 (Tex. Ct. App. 1995) (rejecting AER evidence because it failed to "establish a causal link" between the drug and alleged injuries but instead "created a suspicion without any medical proof," and adding that "any

13

Moreover, even if AERs could be used to establish causation—and they cannot—Plaintiffs would still be required to establish that the incidents reported in the AERs involved facts substantially similar to those at issue here. *See In re Oil Spill by Oil Rig DEEPWATER HORIZON in Gulf of Mexico, on Apr. 20, 2010*, No. MDL 2179, 2012 WL 413860, at *3 (E.D. La. Feb. 9, 2012) (excluding evidence of other incidents where the plaintiffs failed to demonstrate any substantial similarity between the prior incidents and the incident at issue); *In re Viagra Prods. Liab. Litig.*, 658 F. Supp. 2d 950, 964 (D. Minn. 2009) (expert's references to AERs for conditions other than that of the plaintiff were "irrelevant"). Plaintiffs cannot make that showing because, as FDA has explained, AERs are anecdotal and unverified. Accordingly, Plaintiffs cannot show that the circumstances surrounding a given unverified report are similar to the circumstances of Mr. Boudreaux's medical treatment and his medical history.

Separately, AERs showing a correlation or association between the use of Xarelto and the adverse event of bleeding are not relevant to Plaintiffs' failure-to-warn theory. Plaintiffs have conceded that they are "not alleging [that] Defendants failed to warn about the risk of bleeding due to Xarelto." Pls.' Opp. To Defs.' *Boudreaux* Learned Intermediary MSJ (Doc. 5629), at 1; *accord* Pls.' Opp. To Defs.' *Orr* Learned Intermediary MSJ (Doc. 5608), at 1 (abandoning claim regarding "failure to warn of bleeding risk associated with Xarelto"). Instead, Plaintiffs seem interested in manufacturing an argument that AERs about bleeding events should have led Defendants to add ROCKET AF U.S. sub-group data to Xarelto's labeling before the data was actually added in September 2015. *See* Oral Argument Rough Transcript at 66:19–69:3 (Mar. 23, 2017). Plaintiffs' argument is a non-sequitur—the AERs to which Plaintiffs point in no way connect to or support their theory that the Xarelto label earlier should have included the sub-group

---

probative value attributable to the documents was outweighed by the danger of undue prejudice").

data, and FDA's request for a classwide labeling change to add certain sub-group data to all NOAC labels in September 2015 had nothing to do with AERs.

*Hearsay.*   Separately, AERs are inadmissible for the truth of their content because they contain inherently unreliable hearsay.  *See* Fed. R. Evid. 801–02; *see Goldstein v. Centocor, Inc.*, 310 F. App'x 331, 332 n.1 (11th Cir. 2009) (case reports submitted by doctors who observed possible reactions to a drug "are hearsay and do not fall within any of the exceptions to the hearsay rule"); *Appleby v. Glaxo Wellcome, Inc.*, Civ. No. 04-0062, 2005 WL 3440440, at *3 (D.N.J. Dec. 13, 2005) (AERs are hearsay and do not fall within the public-records exception in Fed. R. Evid. 803(8)); *Skibniewski v. American Home Prods. Corp.*, Civ. No. 99-0842, 2004 WL 5628157, at *9 (W.D. Mo. Apr. 1, 2004) (granting a motion *in limine* to exclude AER evidence as hearsay).[8] In addition, AER reports may contain layers of hearsay, such as a statement by a patient describing symptoms to a third party (*e.g.*, a doctor), as well as statements by third parties to the manufacturer incorporating or summarizing the patient's statement.  As such, AERs often may contain hearsay-within-hearsay, thereby requiring Plaintiffs to show that an exception applies to each level of hearsay in any given report—which they cannot do here, given how remote the events underlying each AER are from the facts of this case.  *See* Fed. R. Evid. 805 (requiring each level of hearsay to come within some exception to the hearsay rule).

*Rule 403 Balancing.*   AER-related evidence also should be excluded under Rule 403 because it could "create[] a suspicion" of liability—simply because a patient using Xarelto happened to experience some adverse event while using Xarelto—"without any medical proof"

---

[8] *Accord, e.g.*, *Saari v. Merck & Co.*, 961 F. Supp. 387, 398 (N.D.N.Y. 1997) (explaining that an AER "was simply a report of what plaintiff told [the doctor] . . . and by making that report [the doctor] was neither confirming nor denying that there is any relationship between [the] symptoms and the vaccine"); *Cosgrove v. Merrell Dow Pharms., Inc.*, 788 P.2d 1293, 1298 (Idaho 1989) ("observations and information" in event reports "are clearly hearsay"); *Muilenberg v. Upjohn Co.*, 320 N.W.2d 358, 364–65 (Mich. Ct. App. 1982) (holding that event reports were hearsay, and that no hearsay exception applied).

that Xarelto actually caused the event.  *Reynolds*, 896 S.W.2d at 828; *see also In re Baycol Prods. Litig.*, 532 F. Supp. 2d 1029, 1041 (D. Minn. 2007) (noting "the limitations inherent in AER data"). In addition, AER-related evidence would confuse the issues for trial.  The jury's attention would be diverted away from the relevant facts concerning Mr. Boudreaux's medical conditions and treatment, and instead made to focus on the unrelated (and untested) assertions in AERs.

Evidence related to AERs would cause undue delay and waste time due to the need to educate the jury about the anecdotal nature of AERs and FDA's caution that AERs are scientifically unreliable.  Defendants would be compelled to contest the relevance of each AER, introducing contrary evidence regarding each report in order to negate the risk of the jury's inferring causation.  These potentially numerous trials-within-the-trial could substantially extend the length of the trial.  *See, e.g., Ellis v. Int'l Playtex, Inc.*, 745 F.2d 292, 305 (4th Cir. 1984) (affirming the district court's exclusion of evidence of consumer complaints, explaining that "[h]ad the complaints been admitted, it was likely that the trial would have been unduly prolonged while [the defendant] challenged the substance of each complaint and sought to identify the precise type of [product] that each complainant used").  Furthermore, the published literature based on the same MedWatch reports submitted to FDA and referenced in QuarterWatch specifically notes that individuals stopped using Xarelto because of attorney advertisements and experienced adverse events that were later reported to FDA.  *See* Defs.' Opp. to Pls.' Mot. to Preclude James A. Reiffel, MD (And Any Other Medical Expert's Testimony) About Attorney Advertising (Doc. 5529).  The jury should not be limited to hearing only Plaintiffs' side of the story, without the benefit of knowing that certain of these events were due to patients stopping their medicine due to attorney advertisements.  AER evidence should be excluded.

**D16.     References to the presence, absence, or identity of a corporate representative at trial.**

     ***The Issue.***  Whether the Court should exclude any reference to the presence or absence of corporate representatives—or the absence of high-level executives as the corporate representatives—at trial.

     ***Argument.***  Any such reference to the presence, absence, or identity of any corporate representative would be inappropriate because (1) it is not relevant to any element of Plaintiffs' claims, *see* Fed. R. Evid. 401–02, and (2) any probative value is substantially outweighed by the danger of unfair prejudice, and of confusing the issues, misleading the jury, and wasting time, *see* Fed. R. Evid. 403.

     *Relevance.*  As a general rule, "[t]here is no requirement that a party or a corporate representative be present at trial." *Ray v. Ford Motor Co.*, Civ. No. 3:07-cv-175, 2011 WL 6183099, at *6 (M.D. Ala. Dec. 13, 2011).  More importantly, "the presence or absence of the Defendant's corporate representative will not make the existence of any fact necessary to the Plaintiffs' claims any more or less probable."  *Id.* (granting a motion *in limine* to exclude any reference to the presence or absence of the defendant's corporate representative).  Stated otherwise, "[t]he presence, absence, or identity of Defendants' corporate representatives is wholly irrelevant" to Plaintiffs' claims, and no reference to Defendants' corporate representatives would assist the jury in evaluating any of the evidence.  *Riley v. Ford Motor Co.*, Civ. No. 2:09-cv-148, 2011 WL 3273592, at *3 (S.D. Miss. July 29, 2011) (granting a motion *in limine* to exclude any reference to the defendant's corporate representatives).

     *Rule 403 Balancing.*  Moreover, any such reference also should be excluded under Rule 403 because such references would suggest that the jury should base its decision on an inference that Defendants do not take Plaintiffs' claims sufficiently seriously, which is not only false, but

also has nothing to do with Mr. Boudreaux's condition or treatment, or Defendants' conduct.  And if Plaintiffs' counsel were to mention the presence, absence, or identity of the corporate representative during trial, a mini-trial would result—Defendants would have to spend time explaining to the jury why a corporate representative is not present, why the representative who is present is an appropriate representative for this case, or otherwise why the identity of the corporate representative does not support any adverse inference concerning any material fact.  *See Ray*, 2011 WL 6183099, at *6 ("To the extent that there could be any probative value, that would be substantially outweighed by the danger of unfair prejudice and jury confusion, under Rule 403.").  Further, Plaintiffs have listed on their "Will Call" witness list any corporate representative of the Defendants who attends trial.  Allowing Plaintiffs to call any corporate representative to the stand to testify as a price for attending trial, and then, if the Defendants decide not to have a representative, to allow the Plaintiffs to comment on that, would be grossly unfair.

### D17.   Evidence and argument concerning the moral or ethical, as opposed to legal, duties of pharmaceutical manufacturers.

*The Issue.*   Whether the Court should exclude evidence and argument concerning the moral or ethical, as opposed to the legal, duties of pharmaceutical manufacturers.

*The Evidence at Issue.*   Some of Plaintiffs' experts have offered improper personal opinions regarding moral or ethical duties with respect to designing, manufacturing, marketing, and selling prescription drugs, and whether Defendants complied with those supposed duties.  *See, e.g.,* Kessler Report ¶¶ 86, 78; Parisian Report at 16, § III.P; *id.* at 12, § III.J.a. & b.

*Argument.*   Such evidence is inadmissible because (1) it is not relevant to any element of Plaintiffs' claims, *see* Fed. R. Evid. 401–02, and (2) any probative value is substantially outweighed by the danger of unfair prejudice and of confusing issues, misleading the jury, and wasting time, *see* Fed. R. Evid. 403.

18

*Relevance.*  This case must be decided by the rule of law, not subjective notions of morality or business ethics.  Evidence concerning the moral or ethical duties of drug manufacturers would not make any material fact in this case more or less probable, and therefore is irrelevant and inadmissible. *See In re Yasmin & Yaz (Drospirenone) Mktg., Sales Pracs. & PMF Prods. Liab. Litig.*, MDL No. 2100, 2011 WL 6740391, at *12 (S.D. Ill. Dec. 22, 2011) (plaintiff could not ask defense witnesses whether they believed the defendant had acted "morally or with decency or in an ethical manner"); *Riley v. Ford Motor Co.*, 2011 WL 3273592, at *6 (granting a motion *in limine* "as it pertains to evidence or argument concerning Defendants' moral or ethical obligations"); *In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d 531, 543–45 (S.D.N.Y. 2004) (excluding expert testimony on ethics because it was an irrelevant and unreliable personal opinion); *In re Baycol Prods. Liab. Litig.*, 532 F. Supp. 2d 1029, 1053–54 (D. Minn. 2007) (holding that an expert could testify regarding the standard of care for pharmaceutical companies, but excluding the expert's personal views as to whether the defendant acted ethically, irresponsibly, or recklessly).[9]

*Rule 403 Balancing.*  Such evidence also should be excluded under Rule 403.  *See In re Diet Drugs Prods. Liab. Litig.*, No. MDL 1203, 2001 WL 454586, at *9 (E.D. Pa. Feb. 1, 2001) (excluding the opinions of a medical ethics expert because those opinions were only marginally relevant to the defendant pharmaceutical companies' conduct in manufacturing and marketing

_____

[9] *See In re Welding Fume Prods. Liab. Litig.*, No. 1:03-cv-17000, 2010 WL 7699456, at *24–*25 (N.D. Ohio June 4, 2010) (excluding expert testimony that the defendants acted unethically because "the ethical standards [identified by the witness] [were] different from the legal standards" that applied in the case; "the critical question for [the] jury [was] whether the defendant corporations did what the law *required* them to do, not whether, from a societal perspective, they did what an 'ethical corporation' *should have* done"); *Brown v. Ill. Centr. R.R. Co.*, 705 F.3d 531, 536 (5th Cir. 2013) ("[The Fifth Circuit has] long held that 'without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible.'"); *In re Prempro Prods. Liab. Litig.*, No. MDL 4:03-CV-1507, 2010 WL 5576305, at *2 (E.D. Ark. June 29, 2010) (excluding Dr. Parisian's testimony that "could only be a subjective opinion on what [she] believe[s] Defendants *could have done* rather than what industry or governmental standards *require* them to do") (emphasis in original).

drugs).   The purpose of Plaintiffs' expert testimony in this regard would be simply to cast Defendants as "bad" companies—according to some unspecified, personal standard, and not the governing legal standards.   If Plaintiffs are allowed to present such evidence, then Defendants would have to respond and demonstrate—in a mini-trial—that their conduct was not only legally permissible, but also within the bounds of business ethics.

Respectfully submitted,

DRINKER BIDDLE & REATH LLP

By: /s/ Susan M. Sharko
Susan M. Sharko
Drinker Biddle & Reath LLP
600 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
susan.sharko@dbr.com

Rodney M. Hudson
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
Telephone: (415) 591-7500
Rodney.hudson@dbr.com

Chanda A. Miller
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2500
Chanda.Miller@dbr.com

IRWIN FRITCHIE URQUHART & MOORE LLC

By: /s/ James B. Irwin
James B. Irwin
Kim E. Moore
Irwin Fritchie Urquhart & Moore LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
jirwin@irwinllc.com

*Attorneys for Defendants Janssen
Pharmaceuticals, Inc., Janssen Research &
Development, LLC, and Janssen Ortho LLC*

ARNOLD & PORTER KAYE SCHOLER LLP

By: /s/ William Hoffman
William Hoffman
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
william.hoffman@apks.com

Andrew K. Solow
Steven Glickstein
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8485
andrew.solow@apks.com
steven.glickstein@apks.com

BRADLEY ARANT BOULT CUMMINGS LLP

By: /s/ Kevin C. Newsom
Kevin C. Newsom
Lindsey C Boney IV
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place, 1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8803
knewsom@bradley.com

CHAFFE MCCALL L.L.P.

By: /s/ John F. Olinde
John F. Olinde
Chaffe McCall L.L.P.
1100 Poydras Street, Suite 2300
New Orleans, LA 70163
Telephone: (504) 585-7241
olinde@chaffe.com

*Attorneys for Bayer HealthCare
Pharmaceuticals Inc. and Bayer Pharma AG*

21

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 29th day of March, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to Liaison Counsel for Plaintiffs by operation of the court's electronic filing system and a copy of the proposed documents to be placed under seal sent to Plaintiffs' Liaison Counsel by email transmission.

*/s/      John F. Olinde*