**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**


IN RE: XARELTO (RIVAROXABAN)       MDL No. 2592
PRODUCTS LIABILITY LITIGATION

                                         SECTION L

THIS DOCUMENT RELATES TO:        JUDGE ELDON E. FALLON

Joseph J. Boudreaux Jr. et al. v. Janssen et al.    MAGISTRATE NORTH
Case No. 2:14-cv-02720


**MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' OMNIBUS MOTION *IN LIMINE* NO. 2**

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................... i

INTRODUCTION ............................................................................................................. 1

LEGAL STANDARD......................................................................................................... 3

MOTIONS *IN LIMINE* .................................................................................................... 4

    D18.   Evidence and argument concerning the defense and indemnification provisions in the Collaborative Development and License Agreement.................. 4

    D19.   Evidence and argument concerning Corporate Integrity Agreements, government investigations or settlements, and any other "bad acts" unrelated to Xarelto...................................................................................... 7

    D20.   Evidence and argument concerning Chameleon Communications or "ghostwriting" in connection with certain scientific articles. ............................... 12

    D21.   Opinions from Plaintiffs' expert witnesses that are beyond the scope of their Rule 26 expert reports. ........................................................................... 14

    D22.   Evidence and argument concerning Defendants' other litigation........................ 15

CERTIFICATE OF SERVICE ......................................................................................... 19

Defendants Bayer HealthCare Pharmaceuticals Inc. and Bayer Pharma AG (collectively, "Bayer") and Janssen Pharmaceuticals, Inc., Janssen Research and Development, LLC, and Janssen Ortho LLC (collectively, "Janssen") (together, "Defendants"), move *in limine* to preclude Plaintiffs Joseph J. Boudreaux, Jr. and Loretta Boudreaux from presenting the twelve categories of evidence described below.

## INTRODUCTION

Plaintiffs' Exhibit List includes evidence that, among other things, is not relevant (Fed. R. Evid. 402), constitutes inadmissible hearsay (Fed. R. Evid. 801–02), and should be excluded because there is a substantial likelihood that the evidence will cause undue prejudice, confuse the issues, and waste trial time on collateral matters that are not relevant to any issue that the jury will be asked to decide (Fed. R. Evid. 403).

Plaintiffs filed this action alleging that Mr. Boudreaux experienced a gastrointestinal bleed in February 2014 as a result of using Xarelto®, which was originally prescribed for him by Dr. Kenneth Wong in January 2014 to reduce the risk of stroke and other serious events associated with atrial fibrillation. At the time Mr. Boudreaux allegedly took Xarelto, he was 72 years old, had a number of other health conditions, and was taking a variety of other prescription medications, including aspirin.

Plaintiffs have stipulated that their action is governed exclusively by the Louisiana Product Liability Act ("LPLA"), and that the only two causes of action asserted are: (1) that Xarelto is unreasonably dangerous in design, pursuant to La. Rev. Stat. Ann. § 2800.56; and (2) that Xarelto is unreasonably dangerous because of an inadequate warning, pursuant to La. Rev. Stat. Ann. § 2800.57. Stipulation and Order at 1 (Doc. 5340) (Feb. 6, 2017). Plaintiffs have also stipulated that punitive damages are not available and have agreed that "any claims for recovery of punitive

1

damages and attorneys' fees are hereby dismissed with prejudice." *Id.* at 2.

Moreover, in response to Defendants' summary judgment, preemption, and *Daubert* motions, and during argument on those motions, Plaintiffs narrowed the product-liability theories that they are asserting in support of their design-defect and failure-to-warn claims under the LPLA. *First*, Plaintiffs now have limited their design-defect claim to Xarelto's lack of a reversal agent[1] and/or the lack of an anti-Factor Xa assay.[2] *Second*, Plaintiffs have focused their failure-to-warn claim on the alleged failure to provide instructions regarding the use of the Neoplastin PT test (which they incorrectly argue can be used to measure blood plasma concentration), the failure to warn about the recall of the INRatio device that was used in the ROCKET AF clinical trial that supports the AFib indication, and the failure to include in the label before September 2015 U.S. sub-group data from the ROCKET AF trial.[3]

Accordingly, subject to the Court's ruling on Defendants' motions for summary judgment, the issues to be addressed at trial on the design-defect claim are limited to: (1) whether Xarelto was unreasonably dangerous because it was defective in design, in that it was sold without a reversal agent and/or an anti-Factor Xa assay, and (2) whether any such defect caused Mr. Boudreaux's injury. On the failure-to-warn claim, the issues for trial are: (1) whether Xarelto was unreasonably dangerous because of inadequate warnings regarding (a) testing available to measure blood plasma concentration and what to do in response to the results of a lab test, (b) the Alere

---

[1] Plaintiffs' experts have testified that a reversal agent would not have made a different to Mr. Boudreaux's alleged injuries. See Defendants' MIL No. 1 to Exclude Evidence or Argument Related to Reversal Agent.

[2] *See, e.g.*, Pls.' Opp. to Defs.' Joint Motion for Summary Judgment as to Pls.' Design-Defect Claims Under the Louisiana Products Liability Act (Doc. 5606) at 1, 2, 5; Oral Argument Rough Transcript at 73:1–3 (Mar. 23, 2017).

[3] *See, e.g.,* Pls.' Opp. to Defs.' Joint Motion for Partial Summary Judgment Based on the Learned Intermediary Doctrine (Doc. 5629) at 1; Oral Argument Rough Transcript at 119:5–10 (Mar. 23, 2017); Pls.' Opp. to Defs.' Joint Motion for Summary Judgment as to Pls.' Design-Defect Claims Under the Louisiana Product Liability Act (Doc. 5606) at 2–3.

INRatio device, and (c) U.S. sub-group data from ROCKET AF, and (2) whether any such inadequate warnings caused Mr. Boudreaux's injury.  Under the learned intermediary doctrine, the causation inquiry for the failure-to-warn claim will necessarily require a determination of whether a different label would have changed Dr. Wong's prescribing decision.

The categories of evidence described below are not relevant to those issues and/or are otherwise inadmissible, and therefore that evidence should be excluded at trial.

## LEGAL STANDARD

"Relevancy is the threshold determination in any decision regarding the admissibility of evidence."  *Seidman v. Am. Airlines, Inc.*, 923 F.2d 1134, 1139 (5th Cir. 1991) (internal quotation omitted).  Evidence is relevant if it has a tendency to make a fact that is of consequence to the determination of an action more or less probable than it would be without the evidence.  Fed. R. Evid. 401; *McGonigal v. Gearhart Indus., Inc.*, 851 F.2d 774, 778 (5th Cir. 1988); *Kennedy v. Magnolia Marine Transp. Co.*, 189 F. Supp. 3d 610, 619 (E.D. La. May 17, 2016).  Evidence that lacks probative value is properly excluded as irrelevant.  Fed. R. Evid. 402.

Even if evidence is otherwise relevant and in an admissible form, a court may exclude the proffered evidence "if its probative value is substantially outweighed by the danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403; *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 672–73 (5th Cir. 1999) (excluding evidence of reports from state regulatory agency as cumulative and unduly prejudicial); *Randle v. Tregre*, 147 F. Supp. 3d 581, 598–99 (E.D. La. 2015).  Trial courts are given broad discretion to balance the probative value against the risks of unfair prejudice.  *McGonigal*, 851 F.2d at 778.

"'Unfair prejudice' within this context means an undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Cook*, 557 F.2d 1149, 1153 (5th Cir. 1977) (citing to Fed. R. Evid. 403 advisory committee's notes); *see also Saacks v. Privilege Underwriters Reciprocal Exch.*, Civ. No. 16-1149, 2017 WL 480581, at *2–3 (E.D. La. Feb. 2, 2017) (Fallon, J.).

It is well-established that a trial court should exclude evidence that has a tendency to distract the jury from its main inquiry or to confuse the issue. *See, e.g.*, *Plemer v. Parsons-Gilbane*, 713 F.2d 1127, 1139 n.11 (5th Cir. 1983) (noting that where evidence, "though of some relevance, may lead to confusing and time-consuming disputes with respect to collateral issues the trial judge may properly reject or limit it under Rule 403") (internal quotation and citation omitted).

## MOTIONS *IN LIMINE*

**D18.   Evidence and argument concerning the defense and indemnification provisions in the Collaborative Development and License Agreement.**

*The Issue.*   Whether the Court should exclude evidence and argument concerning the defense and indemnification provisions in the Collaborative Development and License Agreement.

*The Evidence at Issue.*   Plaintiffs have designated as an exhibit a copy of the Collaborative Development and License Agreement ("CDLA") dated October 1, 2005, between Bayer HealthCare AG (now Bayer Pharma AG) ("Bayer") and Ortho-McNeil Pharmaceutical, Inc. (now Janssen Pharmaceuticals Inc.) ("Janssen").   Article XII of the CDLA addresses defense, indemnification, and insurance of Xarelto product-liability claims.   Section 12.3 provides specifically for the defense of Xarelto product-liability litigation.   That section also provides that Bayer and Janssen will share equally any liability for a damages award resulting from Xarelto product-liability litigation (with exceptions not relevant here).   The CDLA does not purport to

affect the legal liability of Bayer or Janssen with respect to any plaintiff's particular claim(s) or the allocation of fault between Bayer or Janssen in the event of an adverse jury verdict.

**Argument.**   Evidence concerning the defense and indemnification provisions in the CDLA should be excluded under Federal Rules of Evidence 401–02, 411, and 403.  Louisiana law applies a system of pure comparative fault.  La. Civ. Code art. 2324.  As a result, "[n]on-intentional tortious acts are considered joint and divisible and each joint tortfeasor is liable only for the degree of fault attributed to his actions."  *Hall v. Zeh-Noh Grain Corp.*, 769 So.2d 769, 773 (La. App. 5 Cir.), *writ denied*, 777 So.2d 1232, 1233 (La. 2000).  The jury, therefore, must determine "the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss . . . regardless of whether the person is a party to the action or a nonparty."  La. Civ. Code art. 2323.  Any given defendant is liable to a plaintiff only for that share of fault that the jury apportions to the defendant with no claim for contribution or indemnity from any other defendant or unnamed joint tortfeasor.  *See Dumas v. State ex rel. Dep't of Culture & Recreation*, 828 So. 2d 530, 538 (La. 2002).  Putting aside each defendant's legal responsibility to a given plaintiff, which is limited to its share of apportioned fault, putative defendants may contract with one another to apportion liability between or among themselves in the event of an adverse judgment.  Judgment-sharing agreements that apportion responsibility for any judgment between the defendants without purporting to extinguish any liability to the plaintiff—like the CDLA provisions here—are lawful and commonplace.  *See In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94 C 897, 1995 WL 221853, at *2, *4 (N.D. Ill. Apr.11, 1995); *California v. Infineon Techs. AG*, No. C 06-4333 PJH, 2007 WL 6197288 (N.D. Cal. Nov. 29, 2007).

*Relevance.*   Under Rules 401–02, the CDLA provisions regarding the defense of product-liability claims and indemnification are not relevant to any issue that the jury must decide,

particularly here, where the parties have agreed that there will be a single line on the verdict form for all Defendants.  Nothing in those CDLA provisions bears on any issue relating to Bayer's and/or Janssen's liability to Plaintiffs—*i.e.*, whether Xarelto was unreasonably dangerous due to an inadequate warning or a defective design, and whether any such alleged defect proximately caused Mr. Boudreaux's injuries.  *See* La. Rev. Stat. Ann. § 9:2800.54.[4]  Nor does anything in the CDLA bear on the percentage of fault that the jury might attribute to each if both Bayer and Janssen are found liable.  The indemnification provision bears only on the allocation of a potentially adverse judgment between the Defendants—not on the responsibility of each Defendant to the Plaintiff for the fault, if any, allocated to that Defendant by the jury.

*Rule 411*.  Separately, Rule 411 expressly prohibits Plaintiffs from introducing evidence related to Section 12.4 of the CDLA, which requires the parties to maintain product-liability insurance.

*Rule 403 Balancing*.  Moreover, permitting Plaintiffs to submit evidence regarding the CDLA's defense and indemnification provisions would be highly prejudicial to Defendants. Plaintiffs may attempt to argue to the jury that Defendants sought to reach agreement many years before this litigation on the terms of their collaboration, including the defense of—and indemnification and insurance against liability for—potential product-liability litigation regarding

---

[4] Even in the context of a "Mary Carter" settlement agreement between a plaintiff and one of several defendants—an agreement of which jurors would be unaware, unless it were disclosed to them—courts have held that jurors are not entitled to learn about provisions regarding the defendants' management of the litigation.  *See Thibodeaux v. Ferrellgas Inc.*, 717 So.2d 668, 673-74 (La. App. 3 Cir. 1998) (excluding evidence concerning terms of Mary Carter agreement because "the employment arrangement between the plaintiffs, [the settling defendant], and their attorneys in further prosecution of the lawsuit . . . is irrelevant to the existence of any fact including the interest or bias of [the settling defendant]" and "[t]he other provision concerning the fee arrangement and control of the litigation are also irrelevant having no value in proving the existence of any fact at issue").  The CDLA is not a Mary Carter agreement because nothing in the CDLA results in a realignment of Bayer or Janssen's interests as to Plaintiffs; each of their interests is adverse to Plaintiff.  The CDLA, therefore, is not admissible to show bias or interest.  And, as in *Thibodeaux*, the CDLA's defense and indemnification provisions are "irrelevant having no value in proving the existence of any fact in issue." *Id.*

Xarelto.  From those suggestions, Plaintiffs improperly may argue or imply—and/or the jury improperly may infer—that Defendants worried that Xarelto-related litigation would ensue because the drug is "unreasonably dangerous."  Even if, contrary to fact, evidence concerning the CDLA's defense and indemnification provisions were relevant, its probative value would be substantially outweighed by the danger of that unfair prejudice to Defendants and of confusing the issues for the jury.  *See* Fed. R. Evid. 403.

**D19.  Evidence and argument concerning Corporate Integrity Agreements, government investigations or settlements, and any other "bad acts" unrelated to Xarelto.**

*The Issue.*  Whether the Court should exclude evidence and argument concerning Corporate Integrity Agreements ("CIAs"), government investigations or settlements by any of the Defendants, and any other alleged "bad acts" that are not related to Xarelto.

*The Evidence at Issue.*  A corporate integrity agreement is an agreement that the Office of the Inspector General of the U.S. Department of Health & Human Services may ask a healthcare provider to enter into "as part of the settlement of federal health care program investigations arising under a variety of civil false claims statutes."  Corporate Integrity Agreements, U.S. Dept. of Health & Human Servs., https://oig.hhs.gov/compliance/corporate-integrity-agreements/.  The healthcare providers "agree to the obligations, and in exchange, [the federal government] agrees not to seek their exclusion from participation in Medicare, Medicaid, or other Federal health care programs."  *Id.*

Defendants anticipate that Plaintiffs may attempt to portray Defendants as bad actors and make this trial a referendum on Defendants' nationwide sales and marketing by introducing, among other things, evidence of CIAs that the Defendants have reached with the federal government, evidence of government investigations or settlements about other products, or other evidence of "bad acts" unrelated to Xarelto.  There are no CIAs, federal government investigations,

or federal settlements with respect to Xarelto.  Evidence of any such agreements for other products, as well as evidence of "bad acts" unrelated to Xarelto, should be excluded from evidence because they are irrelevant to Plaintiffs' claims, and because such evidence would be inflammatory and unduly prejudicial to Defendants.

Bayer entities have previously entered into two CIAs.  In January 2001, Bayer Corporation entered into a CIA as part of a settlement of claims arising from Bayer's pricing of pharmaceutical and other healthcare products.  That CIA was amended in 2003 as part of another settlement.  The CIA, as amended, covered drug-price reporting and other business activities, and it established requirements for certain compliance activities, such as employee training.  It did not involve any activities relating to Xarelto.  That CIA expired in 2009.  In November 2008, Bayer HealthCare LLC entered into a CIA as part of a settlement of anti-kickback and False Claims Act claims concerning the promotional activities of its Diabetes Care Division.  The CIA covered promotional and other business activities, and it established requirements for certain compliance activities, such as employee training.  It did not involve any activities relating to Xarelto.  That CIA expired in 2013.

Plaintiffs' Exhibit List identifies three news reports regarding (1) a CIA entered into by Janssen regarding marketing practices related to a different medicine, Risperdal, and (2) Janssen's appeal of a court order issued in another case by a South Carolina court involving Risperdal.  *See* Pl. Ex. Nos. 5767455–57.  Neither the CIA nor the other litigation involving Risperdal is relevant to this action involving the use of Xarelto.  The CIAs identified by Plaintiffs arose out of settlements having nothing to do with Xarelto, and some of them have expired, in any event. However, Plaintiffs' counsel have questioned witnesses in this case about CIAs, apparently in an effort to suggest that Defendants have a propensity to violate the law, that Xarelto promotional

practices or training programs violated the CIAs, and/or that company employees were unaware of the CIAs.

*Argument.*   Evidence of CIAs, investigations or settlements in other litigation, and other "bad acts" unrelated to Xarelto should be excluded because (1) they are not relevant to any element of Plaintiffs' claims, *see* Fed. R. Evid. 401–02; (2) any probative value is substantially outweighed by the risk of unfair prejudice and of confusing the issues, misleading the jury, and wasting time, *see* Fed. R. Evid. 403; (3) evidence regarding CIAs, settlements, or investigations related to products other than Xarelto is not admissible to prove Defendants' character or propensity to engage in misconduct, *see* Fed. R. Evid. 404(b); and (4) CIAs entered into as part of settlements with the federal government cannot be used to prove or disprove the validity of any disputed claim or to impeach Defendants' witnesses, *see* Fed. R. Evid. 408.

*Relevance.*   Defendants have not entered into any corporate integrity agreements with respect to Xarelto, and there are no government investigations or settlements that relate to Xarelto. Defendants' conduct regarding other products, including entry into CIAs to settle claims arising from pricing or promotion of products other than Xarelto, is not relevant to any material issue in this case, and courts have routinely excluded such "other product" evidence.   *See*, *e.g.*, *In re Seroquel Prods. Liab. Litig.*, Civ. No. 6:06-md-1769, 2009 WL 223140, at *7 (M.D. Fla. Jan. 30, 2009) (excluding evidence that AstraZeneca had entered into a CIA relating to a different product and concluding that "a party's agreement as to a particular standard of care for a completely different medication, used to treat a completely different condition [] is irrelevant to Plaintiffs' claims in this case"); *see Rheinfrank v. Abbott Labs., Inc.*, Civ. No. 1:13-cv-144, 2015 WL 5258858, at *4 (S.D. Ohio Sept. 10, 2015) (excluding evidence of a settlement and CIA in a different case because such evidence "ha[d] no relevance in this case"); *In re Depakote*, Civ. No.

14-CV-847, 2015 WL 4775937, at *2 (S.D. Ill. Feb. 20, 2015) (excluding evidence of a prescription drug manufacturer's civil settlement and CIA because the evidence had "no relevance in this case").

*Rule 403 Balancing.* Evidence or argument concerning CIAs, settlements or investigations, and any other "bad acts" unrelated to Xarelto also should be excluded under Rule 403 because discussion of the agreements, some of which have expired, and none of which relate to Xarelto, would unfairly prejudice Defendants—by suggesting that they are somehow predisposed to violate legal requirements. *See Rheinfrank*, 2015 WL 5258858, at *4 (concluding that the probative value of evidence of a settlement and CIA was "outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, and wasting time"). As this Court has recognized, that evidence would require mini-trials to provide the appropriate context for the jury. *See Landrieu Constr., Inc. v. DRC Emergency Servs., LLC*, Civ. No. 09-3418, 2010 WL 1817768, at *5 (E.D. La. Apr. 30, 2010) (Fallon, J.) (granting a motion *in limine* excluding evidence of prior acts because "the other instances are substantially different and would in effect necessitate a trial within a trial which would be prejudicial and confusing"); *Kelly v. Boeing Petroleum Servs., Inc.*, 61 F.3d 350, 356 (5th Cir. 1995) (upholding exclusion of evidence requiring "mini-trials" of "other acts" because it "would amount to needless waste of judicial resources"); *Coursen v. A.H. Robins, Co.*, 764 F.2d 1329, 1334–35 (9th Cir. 1985) (affirming exclusion of "innuendos of collateral misconduct" by a medical device manufacturer as unduly prejudicial and confusing under Rule 403); *In re Seroquel Prods. Liab. Litig.*, 2009 WL 223140, at *7 (evidence of a party's agreement as to a particular standard of care for a completely different medication, used to treat a completely different condition wastes time, will confuse the jury, and is more prejudicial than probative); *In re Depakote*, 2015 WL 4775937, at *2 (noting that even if

evidence of a CIA "had minimal probative value, any probative value is outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, and/or wasting time").

*Rule 404(b).* Evidence relating to CIAs, settlements or investigations, or other "bad acts" unrelated to Xarelto is not admissible to prove Defendants' character or propensity to engage in purported misconduct. Under Rule 404(b)(1), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." In the *Vioxx* litigation, this Court ruled that evidence regarding alleged misconduct related to products other than Vioxx was inadmissible under Rule 404(b). *In re Vioxx Prods. Liab. Litig.*, 2005 WL 3164254, at *1 (E.D. La. Nov. 21, 2005) (Fallon, J.) (excluding, under Rule 404(b), evidence of alleged misconduct unrelated to Vioxx). In other words, Plaintiffs may not rely on the CIAs to argue that Defendants were more likely to engage in misconduct with respect to Xarelto, just because they settled claims of other purported misconduct in other cases involving different products.

*Rule 408.* Plaintiffs also cannot introduce evidence about the CIAs, settlements, or investigations to prove liability because the CIAs were conditions precedent to settlements between Defendants and the federal government. Under Federal Rule of Evidence 408, "[c]onsent orders may not be introduced or offered as proof of liability on the merits." *Coastal Outdoor Adver. Group, LLC v. Township of East Hanover, N.J.*, 630 F. Supp. 2d 446, 457-58 (D.N.J. 2009); *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1981) ("[A] consent judgment between a federal agency and a private corporation which is not the result of an actual adjudication of any of the issues. . . cannot be used as evidence in subsequent litigation between that corporation and another party.").

11

**D20.   Evidence and argument concerning Chameleon Communications or "ghostwriting" in connection with certain scientific articles.**

*The Issue.*   Whether the Court should exclude evidence and argument concerning the involvement of Chameleon Communications, a third-party professional writing firm, in the preparation of certain scientific articles sponsored or authored by Defendants' employees.

*The Evidence at Issue.*   Plaintiffs have designated several documents referring to Chameleon, and made references to Chameleon and "ghostwriting" during the depositions of some of Defendants' witnesses—apparently attempting to impugn the reliability of those articles.

*Argument.*   Any evidence or argument concerning Chameleon Communications or ghostwriting is inadmissible because (1) such evidence is not relevant to any element of Plaintiffs' claims, *see* Fed. R. Evid. 401–02; and (2) any probative value is substantially outweighed by the danger of unfair prejudice and of confusing the issues, misleading the jury, and wasting time, *see* Fed. R. Evid. 403.  At a minimum, the Court should prohibit Plaintiffs from using the pejorative term "ghostwriting."

*Relevance.*   At the outset, the deposition testimony makes clear that none of the articles at issue in this cases was, in fact, "ghostwritten" by Chameleon Communications.[5]  Even if there were some evidence that any relevant article had been drafted or substantively edited by Chameleon Communications, there still is no evidence that Mr. Boudreaux's prescribing physician, Dr. Wong, ever read or relied upon any allegedly "ghostwritten" article.  As a result, Chameleon Communications' participation as a professional writing firm in the production of any article is irrelevant to any material fact in this lawsuit.  *See Okuda v. Wyeth*, 2012 WL 12337860, at *1 (granting a motion *in limine* to exclude evidence of articles purportedly "ghostwritten" by

---

[5] *See, e.g.* Deposition of Frank Misselwitz at 190:6–15 (Nov. 9, 2016); Deposition of Dagmar Kubitza at 392:10–393:18; 489:9–17 (Mar. 1, 2016).

professional writers acting on the manufacturer's behalf, where the plaintiff "ha[d] not produced sufficient evidence that she or her prescribing physicians relied on any ghostwritten article in taking or prescribing the . . . drugs at issue or that the information in the articles [was] false"); *Cross v. Wyeth Pharm., Inc.*, 2011 WL 2517211, at *4 (M.D. Fla. June 23, 2011) (excluding evidence of "ghostwriting" as irrelevant); *Skibniewski v. American Home Prods. Corp.*, 2004 WL 5628157, at *1 (excluding evidence of "ghostwriting" absent evidence of reliance).

   *Rule 403 Balancing.*   In any event, any evidence or argument concerning "ghostwriting" should be excluded under Rule 403 because the purpose of presenting such evidence would be to suggest to the jury that Defendants had somehow tainted the relevant scientific literature simply by using a professional medical writing firm to assist scientists in preparing and editing journal articles—a common practice in the industry.  If Plaintiffs were allowed to present such evidence, Defendants would have to rebut the evidence in a mini-trial by showing (1) that it is common practice in medical research to use professional writing firms, such as Chameleon Communications, to assist scientists with the drafting and editing of articles for publication, (2) that the substance of an article is always approved by the scientist who authors it, and (3) that the substance of any article Dr. Wong might have read was scientifically correct and not misleading. Allowing Plaintiffs to raise the "ghostwriting" issue would prompt mini-trials on the use of professional writing firms generally and on the validity of each article at issue in this case.  *See*, *e.g.*, *Okuda v. Wyeth*, 2012 WL 12337860, at *1 (granting a motion *in limine* to exclude evidence of articles purportedly "ghostwritten" by professional writers acting on the manufacturer's behalf and explaining that the term "ghostwritten" was a "pejorative" word that "would distract the jury and needlessly consume time"); *Lewis v. Wyeth*, Nos. 4:03-cv-1507 & 4:06-cv-1383 (E.D. Ark. Nov. 29, 2012) (Doc. 191 at 5) (granting a motion *in limine* to bar references to "ghostwriting");

*Curtis v. Wyeth*, Nos. 4:03-cv-1507 & 3:05-cv-74 (E.D. Ark. Jan. 19, 2011) (Doc. 148 at 1) (same).

At a minimum, the Court should prohibit Plaintiffs from using the terms "ghostwriting" or "ghostwritten." As other courts have recognized, "ghostwritten" is "a pejorative name" that "would distract the jury and needlessly consume time." *Okuda*, 2012 WL 12337860, at *1.

### D21. Opinions from Plaintiffs' expert witnesses that are beyond the scope of their Rule 26 expert reports.

***The Issue.*** Whether the Court should preclude Plaintiffs' expert witnesses from presenting opinions that are beyond the scope of their Rule 26 expert reports.

***The Evidence at Issue.*** During depositions, some of Plaintiffs' experts strayed beyond the scope of their Rule 26 reports and offered additional, undisclosed opinions.[6] Defendants anticipate that Plaintiffs may attempt to elicit, or Plaintiffs' experts may attempt to offer, opinions that were not described in those expert reports.

***Argument.*** Fed. R. Civ. P. 26(a)(2)(B)(i) requires a retained expert to provide a written report that contains "a complete statement of all opinions the witness will express and the basis and reasons for them." This rule makes good sense. "The purpose of requiring disclosure of expert reports is to notify opposing parties of the scope and content of the expert's proposed testimony." *Williams v. American Strategic Ins. Corp.*, Civ. No. 13-5411, 2014 WL 1246846, at *3 (E.D. La. Mar. 25, 2014) (quotations omitted). Under Fed. R. Civ. P. 37(c)(1), if a party fails to provide information required in a Rule 26 expert report, "the party is not allowed to use that information . . . at a trial, unless the failure was substantially justified or is harmless."

Plaintiffs have not offered any justification for their experts' testifying, in their depositions, beyond the scope of the opinions disclosed in their Rule 26 reports, and there could be no

---

[6] *See, e.g.*, Kessler Dep. at 359:24–360:11.

justification for any such testimony at trial.  Because Defendants would be prejudiced by the revelations of new opinions during trial, without any opportunity to test those opinions or take discovery on the purported bases for those opinions, the Court should exclude any opinion that was not described in the expert's Rule 26 report.  *See Sobrino-Barrera v. Anderson Shipping Co.*, 495 F. App'x 430, 432–33 (5th Cir. 2012) (per curiam) (district court did not abuse its discretion in excluding an expert affidavit that presented new, previously undisclosed opinions); *Williams*, 2014 WL 1246846, at *2 (striking an expert's supplemental report and any evidence obtained pursuant to testing after the original report was disclosed); *Pena v. Hawes*, Civ. No. 12-0622, 2014 WL 11512593, at *2 (D.N.M. Apr. 30, 2014) (granting a motion *in limine* to exclude expert opinion testimony beyond the opinions disclosed in the expert report).

**D22.  Evidence and argument concerning Defendants' other litigation.**

*The Issue.*  Whether the Court should preclude evidence and argument about other lawsuits involving Defendants, including but not limited to, lawsuits involving Xarelto and lawsuits involving other medicines that were developed, marketed, manufactured, or sold by Defendants.

*The Evidence at Issue.*  The evidence includes other lawsuits, including the claims brought by several thousand plaintiffs in this proceeding, which are based on incomplete, inaccurate and untrustworthy, litigation-driven allegations, which often contain multiple levels of hearsay, and which need not be supported with evidence.

*Argument.*  Argument or evidence concerning other lawsuits should be excluded because (1) it is not relevant to any element of Plaintiffs' claims, Fed. R. Evid. 401–02, (2) it constitutes inadmissible hearsay, Fed. R. Evid. 802, and (3) any perceived probative value is substantially outweighed by significant undue prejudice, confusion of the issues, and undue consumption of time, Fed. R. Evid. 403.

*Relevance*.   Pleadings or allegations from other lawsuits do not establish or disprove any fact relevant to this matter but instead invite the jury to draw speculative or conjectural inferences. Plaintiffs' alleged injuries as a result of Xarelto use are unique and depend on a multitude of individual facts, including Mr. Boudreaux's prior medical history, risk factors, pre-existing conditions, and his physician's prescription decision, among other factors.   Other lawsuits that consist of mere allegations of unrelated events under circumstances that are entirely different from the circumstances of this case do not have "any tendency to make a fact more or less probable than it would be without the evidence" and should be excluded as irrelevant. Fed. R. Evid. 401(a); *see, e.g.*, *Jorden v. Dolphin Towing, LLC*, No. Civ.A. 03-222, 2004 WL 602777, at *5 (E.D. La. Mar. 23, 2004) ("Evidence of other personal injury claims has no relevance to any issue in this lawsuit."); *Barnes v. Koppers, Inc.*, No. 3:03CV60-P-D, 2006 WL 940279, at *2–3 (S.D. Miss. Apr. 11, 2006) (concluding in a toxic tort case that "evidence of other lawsuits, claims, and injuries is irrelevant to this case and therefore inadmissible"); *see also, e.g.*, *Huss v. Gayden*, 571 F.3d 442, 458 (5th Cir. 2009) (holding that "anecdotes detailing individual patients' experiences when taking the drug, such as chest pain, fall short of providing scientifically reliable evidence applicable to all other patients").

*Hearsay*.   Separately, pleadings from other lawsuits are inadmissible for the truth of their content because they contain inherently unreliable hearsay.   *See* Fed. R. Evid. 801–02; *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 329 (5th Cir. 2004) (affirming exclusion of expert testimony regarding survey results); *Mary Kay, Inc. v. Weber*, 601 F. Supp. 2d 839, 850 (N.D. Tex. 2009) (excluding customer complaint emails as inadmissible hearsay).   In addition, pleadings from other lawsuits may contain hearsay-within-hearsay, thereby requiring Plaintiffs to show that an exception applies to each level of hearsay in any given pleading—which they cannot do here, as

pleadings from other lawsuits consist of inherently unreliable allegations.  *See* Fed. R. Evid. 805; *see Guy*, 394 F.3d at 329; *Wilson v. Zapata Off-Shore Co.*, 939 F.2d 260, 271–72 (5th Cir. 1991); *Mary Kay, Inc.*, 601 F. Supp. 2d at 850–51.

*Rule 403 Balancing*.   There is no probative value to the allegations in other lawsuits, and any perceived probative value of unsubstantiated allegations contained in complaints is substantially outweighed by the danger of unfair prejudice and confusion to the jury.  *See Compaq Comput. Corp. v. Ergonome Inc*., 387 F.3d 403, 408–09 (5th Cir. 2004) (concluding that district court did not abuse its discretion by excluding evidence of past lawsuits against defendant because any probative value "was outweighed by its prejudicial and inflammatory nature and by its tendency to confuse the jury with tangential litigation"); *Yellow Bayou Plantation, Inc. v. Shell Chem., Inc.*, 491 F.2d 1239, 1242–43 (5th Cir. 1974) (affirming district court's exclusion of a list of prior lawsuits against defendant because evidence was "of such faint probative value and high potential for unfair prejudice"); *Novartis Pharm. Corp. v. Teva Pharm. USA, Inc.*, No. 05-CV-1887, 2009 WL 3754170, at *9 (D.N.J. Nov. 5, 2009) (granting plaintiffs' motion to preclude evidence of prior and/or collateral litigation because it would result in unfair prejudice, confusion and undue delay); *Comardelle v. Sears, Roebuck & Co.*, Civ.A. No. 95-1371, 1996 WL 673971, *3 (E.D. La. Nov. 20, 1996) (excluding evidence of other claims because "the probative value of these other accidents is substantially outweighed by the danger of unfair prejudice to Defendants").

Respectfully submitted,

DRINKER BIDDLE & REATH LLP

By: /s/ Susan M. Sharko
Susan M. Sharko
Drinker Biddle & Reath LLP
600 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
susan.sharko@dbr.com

Rodney M. Hudson
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
Telephone: (415) 591-7500
Rodney.hudson@dbr.com

Chanda A. Miller
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2500
Chanda.Miller@dbr.com


IRWIN FRITCHIE URQUHART & MOORE LLC

By: /s/ James B. Irwin
James B. Irwin
Kim E. Moore
Irwin Fritchie Urquhart & Moore LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
jirwin@irwinllc.com


*Attorneys for Defendants Janssen
Pharmaceuticals, Inc., Janssen Research &
Development, LLC, and Janssen Ortho LLC*

ARNOLD & PORTER KAYE SCHOLER LLP

By: /s/ William Hoffman
William Hoffman
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
william.hoffman@apks.com

Andrew K. Solow
Steven Glickstein
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8485
andrew.solow@apks.com
steven.glickstein@apks.com


BRADLEY ARANT BOULT CUMMINGS LLP

By: /s/ Kevin C. Newsom
Kevin C. Newsom
Lindsey C Boney IV
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place, 1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8803
knewsom@bradley.com


CHAFFE MCCALL L.L.P.

By: /s/ John F. Olinde
John F. Olinde
Chaffe McCall L.L.P.
1100 Poydras Street, Suite 2300
New Orleans, LA 70163
Telephone: (504) 585-7241
olinde@chaffe.com


*Attorneys for Bayer HealthCare
Pharmaceuticals Inc. and Bayer Pharma AG*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 29th day of March, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to Liaison Counsel for Plaintiffs by operation of the court's electronic filing system and a copy of the proposed documents to be placed under seal sent to Plaintiffs' Liaison Counsel by email transmission.

*/s/      John F. Olinde*