**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE ELDON E. FALLON |
| Joseph J. Boudreaux Jr. et al. v. Janssen et al. Case No. 2:14-cv-02720 | MAGISTRATE NORTH |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION *IN LIMINE* NO. 4 REGARDING THE RECORD 4 CLINICAL TRIAL AND SEIFE 2015**

Plaintiffs should not be allowed to introduce any evidence or argument regarding the RECORD 4 clinical trial and a 2015 article by journalist Charles Seife referencing the trial. FDA did not consider the data collected in the RECORD 4 clinical trial in determining whether to approve Xarelto for the indication that was tested in the trial. Further, the RECORD clinical trials tested a different Xarelto dose, in a separate patient population, for an indication not at issue here. In addition to being irrelevant, evidence regarding RECORD 4 will unfairly prejudice Defendants, confuse the issues, and waste time. Allowing any such evidence would necessitate extensive testimony on the RECORD 4 clinical trial and the related regulatory history. The additional trial days that would have to be spent offering evidence on irrelevant and prejudicial clinical trial issues warrants exclusion under Federal Rules of Evidence 401, 402, and 403.

**INTRODUCTION**

Xarelto® is approved by FDA for multiple indications. At issue in the *Boudreaux* case is the use of Xarelto to reduce the risk of stroke in patients with atrial fibrillation (the "Afib"

indication).[1]  FDA approved Xarelto for Afib based on the ROCKET AF clinical trial that Defendants performed with the Duke Clinical Research Institute between December 2006 and May 2010.  *See* Manesh R. Patel et al., Rivaroxaban versus Warfarin in Nonvalvular Atrial Fibrillation, 365 *N. Engl. J. Med.* 883, 885 (2011) (Exh. 1) (reporting the results of ROCKET AF in the *New England Journal of Medicine*).  The clinical trial took three and a half years to complete and enrolled more than 14,000 patients in 45 countries around the world.  *Id.* at 884–85.  ROCKET AF had a randomized and double-blind design, meaning that neither the patients nor the researchers knew who was taking Xarelto.  *See id.* at 884.

ROCKET AF demonstrated that once-daily Xarelto is as effective as warfarin in preventing stroke and systemic embolism in Afib patients at a moderate-to-high risk for stroke, with no significant difference in bleeding risk.  *Id.* at 888.  FDA approved Xarelto in November 2011 based on ROCKET AF.  The approved dose is 20 mg once-per-day, with a 15 mg option for patients with reduced renal function.

The RECORD clinical trial program was not related to stroke prevention in Afib patients but rather involved the short term use of Xarelto in an entirely different patient population—patients undergoing hip or knee replacement surgery—to prevent the development of deep vein thrombosis (the "DVT prevention" indication).  FDA approved Xarelto for DVT prevention in those surgical patients based on three RECORD studies (RECORD 1, RECORD 2, and RECORD 3).  The dosing regimen is 10 mg once-per-day for up to 35 days.

In making its approval decision on DVT prevention, FDA did not consider a fourth RECORD clinical trial (RECORD 4) due to concerns about the data collected at certain clinical

---

[1] Patients with Afib, including Joseph Boudreaux, have irregular heartbeats that can cause blood to pool in a portion of the heart.  This pooling can lead to the formation of blood clots, which can travel from the heart to the brain and cause an ischemic stroke.  Xarelto reduces the risk of stroke by preventing the formation of blood clots.

trial sites. A supplemental audit requested by FDA of all four RECORD studies turned up potential problems with data from a number of RECORD 4 sites. Defendants thereafter commissioned a large project to verify the data collected at every RECORD 4 site. Defendants provided FDA with the audit findings and the results of the RECORD 4 data verification. Following analysis by FDA's Division of Scientific Investigations, FDA concluded that the data from RECORD 1, 2, and 3 were reliable and supported approval of the DVT prevention indication. Concerns about the reliability of RECORD 4, however, led FDA to exclude it from consideration. Defendants disagree with FDA's determination on RECORD 4.

Years later, a journalist named Charles Seife published an article criticizing FDA for not publicizing its findings from inspections of clinical trials involving a variety of prescription medicines. *See* Charles Seife, Research Misconduct Identified by the US Food and Drug Administration, *JAMA Intern. Med.* 2014.7774 (Feb. 9, 2015) (Exh. 2). Seife cited RECORD 4 as one of several examples of clinical trials in which data integrity issues identified by FDA were not included in related medical literature. *See id.* at E4.

## ARGUMENT

Despite the irrelevance of the RECORD 4 clinical trial, Plaintiffs' exhibit list and deposition designations for the *Boudreaux* trial include dozens of documents and lines of testimony that relate to the RECORD audits, the RECORD 4 data verification, FDA's exclusion of RECORD 4, and Seife's article.[2] Any such evidence or argument will result in a sideshow trial that will only serve to mislead and prejudice the jury. The RECORD 4 clinical trial has no bearing on Mr. Boudreaux's claims that are premised on his use of Xarelto to prevent stroke. RECORD 4 and

---

[2] To give just a few examples, Plaintiffs have identified as trial exhibits: documents regarding the RECORD audits and the data verification of RECORD 4; FDA's determinations regarding the reliability of clinical data in RECORD 4, following the audits and data verification; Seife's 2015 publication that cites RECORD 4; and numerous emails regarding Seife's inquiries about RECORD 4.

3

Seife's publication therefore are irrelevant under Rules 401 and 402. Additionally, under Rule 403, any marginal probative value is substantially outweighed by the unfair prejudice, confusion of issues, and time that would be wasted by presenting the evidence.

### A. The RECORD 4 Clinical Trial And Seife's 2015 Publication Are Irrelevant Under Rules 401 And 402.

The Court may admit only relevant evidence. Fed. R. Evid. 402. Relevance requires that the evidence "make the existence of any fact *that is of consequence to the determination of the action* more probable or less probable than it would be without the evidence." *Kelly v. Boeing Petroleum Servs., Inc.*, 61 F.3d 350, 357 (5th Cir. 1995) (quoting Fed. R. Evid. 401) (emphasis added). The RECORD 4 clinical trial and Seife's 2015 publication referencing the trial are not relevant and should be excluded.

Mr. Boudreaux used Xarelto for Afib. The clinical data most pertinent to his failure to warn and design defect theories was gathered in ROCKET AF, where the long term use of Xarelto was tested in Afib patients to prevent stroke.[3]

RECORD 4, the separate clinical trial that FDA did not consider in support of Xarelto for short term use (up to 35 days) using a different dose (10 mg), in a different population (patients undergoing hip or knee surgery), to prevent different injuries (DVT and pulmonary embolism), has no relevance to whether Xarelto is safe for patients like Mr. Boudreaux. *See In re Seroquel Prods. Liab. Litig.*, 06-md-1769, 2009 WL 223140, at *3 (M.D. Fla. Jan. 30, 2009) (excluding evidence about alleged risks of medication in patient populations not applicable to plaintiffs).

---

[3] Xarelto is separately approved for the *treatment* of DVT and pulmonary embolism (PE) and reduction in the risk of recurrence of DVT and PE (the "venous thromboembolism (VTE) treatment" indication). The dosing regimen is 15 mg twice-daily for the first 21 days and 20 mg once-daily thereafter. Evidence related to VTE treatment is directly relevant to the Afib indication, because the selection of the Afib dose tested in ROCKET AF was based in part on clinical data that was collected in the VTE treatment studies. The distinction here is that the RECORD clinical trials had no relationship to ROCKET AF or the Afib indication nor did FDA consider RECORD 4 in approving DVT prevention (the indication tested in RECORD 4).

4

Further, the audit and data verification of RECORD 4, and FDA's subsequent determination that the RECORD 4 data was not reliable enough to support approval of DVT prevention, are irrelevant. FDA's findings on RECORD 4 played no role in the agency's subsequent review and approval of Xarelto for Afib. Accordingly, the conduct in RECORD 4, the related regulatory history, and the trial itself are inadmissible. *See id.* at *4 (rejecting argument that misconduct by clinical investigator was relevant to "credibility and competency of [defendant's] testing and scientific research," particularly given that FDA had the controversial data at issue).

Likewise, one journalist's views on the adequacy of FDA's transparency policies have nothing to do with Mr. Boudreaux's use of Xarelto. Seife's reference to RECORD 4 does not make the article relevant simply because the clinical trial involved Xarelto. Seife cited RECORD 4 only as one example of a study investigated by FDA. His criticism is aimed at FDA for how its inspection findings are publicized, not at Defendants. Seife 2015 at E1, E8–9 (Exh. 2).

    **B.**    **Any Marginal Probative Value Of Evidence On RECORD 4 Or Seife's Article Is Outweighed By Prejudice, Confusion, And Wasted Time Under Rule 403.**

Even if the Court determined that RECORD 4 is somehow relevant, the evidence still is inadmissible under Federal Rule of Evidence 403. That rule permits exclusion of relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Allowing any evidence on the RECORD 4 clinical trial would necessarily raise FDA's alleged data integrity concerns. Those issues will confuse and mislead the jury, require extra trial days to allow both sides to offer evidence on the audits, data verification, and related proceedings, and result in unfair prejudice to Defendants.

To begin, the regulatory history and activities related to RECORD 4 were complicated and spanned more than two years. Responding to FDA's concerns included presentation of the results

5

of Defendants' own audit program, a second round of audits performed by a third party, the massive RECORD 4 data verification project by a different third party, and numerous communications and meetings with FDA.  Presenting evidence of those events would require additional trial exhibits, more fact witnesses, and further expert testimony to explain data collection, auditing of clinical trial data, and the related regulatory proceedings.  Introducing RECORD 4 to the jury thus would necessitate an onerous trial within the trial on issues that are divorced from *Boudreaux*.  Allowing a lengthy three or four day "mini-trial" also would confuse RECORD with ROCKET AF.  The resulting wasted time and confusion of issues requires exclusion.  *See Landrieu Constr., Inc. v. DRC Emergency Servs., LLC*, 09-cv-3418, 2010 WL 1817768, at *5 (E.D. La. Apr. 30, 2010) (excluding evidence of defendants' past conduct because "the other instances" at issue were "substantially different and would in effect necessitate a trial within a trial which would be prejudicial and confusing"); *Kelly*, 61 F.3d at 356–57 (upholding exclusion of evidence that "would open the door to a series of separate 'mini-trials'" that would "further delay the proceedings and confuse the jury").

Beyond that, Plaintiffs may attempt to use the exclusion of RECORD 4 to impugn the entire development of Xarelto.  There is no basis in the historical record nor anywhere in the evidence for such a claim.  Any conclusion that the jury might draw from FDA's concerns about RECORD 4 would be misplaced because that clinical trial has no relation to the safety of Xarelto for patients with Afib, like Mr. Boudreaux.  *See Coursen v. A.H. Robins Co.*, 764 F.2d 1329, 1334–35 (9th Cir. 1985) (affirming district court's exclusion of "innuendos of collateral misconduct" in medical device case where evidence "did nothing except generally show defendant in a bad light") (internal quotation omitted).  As explained, the Afib indication was approved based on the separate clinical trial known as ROCKET AF that raised none of the questions that FDA had about clinical

data collected at certain RECORD 4 sites.

Any evidence regarding Seife's 2015 article or his related research likewise would result in unfair prejudice and confusion. For instance, in the article (which Plaintiffs have identified as a trial exhibit), Seife cites RECORD 4 as one example of FDA "failing to notify the medical or scientific communities about allegations of serious research misconduct." *See* Seife 2015 at E4, E8 (Exh. 2). He insinuates that FDA did not fulfill its "mission to protect the public health," because the issues that the agency identified were not included in literature that has been published on the RECORD program. *See id.* Inflammatory accusations of "scientific misconduct" in connection with a study that has nothing to do with Mr. Boudreaux's claims have no place in Court. Allowing such evidence could only mislead and prejudice the jury and waste everyone's time.[4]

## CONCLUSION

For all of the reasons stated above, the Court should grant Defendants' Motion *in limine* and exclude all evidence and argument regarding the RECORD 4 clinical trial and Seife.

---

[4] Additionally, what Mr. Seife wrote in a paper is hearsay that is not admissible under any exception to the Hearsay Rule.

Respectfully submitted,

DRINKER BIDDLE & REATH LLP

By: /s/ *Susan M. Sharko*
Susan M. Sharko
Drinker Biddle & Reath LLP
600 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
susan.sharko@dbr.com

Rodney M. Hudson
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
Telephone: (415) 591-7500
Rodney.hudson@dbr.com

Chanda A. Miller
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2500
Chanda.Miller@dbr.com

IRWIN FRITCHIE URQUHART & MOORE LLC

By: /s/ *James B. Irwin*
James B. Irwin
Kim E. Moore
Irwin Fritchie Urquhart & Moore LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
jirwin@irwinllc.com

*Attorneys for Defendants Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC, and Janssen Ortho LLC*

ARNOLD & PORTER KAYE SCHOLER LLP

By: /s/ *William Hoffman*
William Hoffman
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
william.hoffman@apks.com

Andrew K. Solow
Steven Glickstein
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8485
andrew.solow@apks.com
steven.glickstein@apks.com

BRADLEY ARANT BOULT CUMMINGS LLP

By: */s/ Kevin C. Newsom*
Kevin C. Newsom
Lindsey C Boney IV
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place, 1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8803
knewsom@bradley.com

CHAFFE MCCALL L.L.P.

By: /s/ *John F. Olinde*
John F. Olinde
Chaffe McCall L.L.P.
1100 Poydras Street, Suite 2300
New Orleans, LA 70163
Telephone: (504) 585-7241
olinde@chaffe.com

*Attorneys for Bayer HealthCare Pharmaceuticals Inc. and Bayer Pharma AG*

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that on the 29th day of March, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to Liaison Counsel for Plaintiffs by operation of the court's electronic filing system and a copy of the proposed documents to be placed under seal sent to Plaintiffs' Liaison Counsel by email transmission.

                                                                    */s/      John F. Olinde*