UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | * * * | MDL 2592 |
| | * | SECTION L |
| THIS DOCUMENT RELATES TO: *ALL CASES* | * * | JUDGE ELDON E. FALLON |
| | * * | MAG. JUDGE NORTH |
| | * | |

**PLAINTIFFS' REPLY MEMORANDUM
IN OPPOSITION TO DEFENDANTS' POST HEARING LETTER BRIEF ON
DEFENDANTS' JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE
GROUND THAT FEDERAL LAW PREEMPTS PLAINTIFFS' DOSING,
MONITORING, AND OTHER DESIGN-RELATED CLAIMS**

## I. INTRODUCTION

Plaintiffs' submit this response to the March 27, 2017 supplemental letter brief of the Defendants (Rec. Doc. 5904) to address the Defendants' contention that it would be *impossible* to include "monitoring" information in a branded drug manufacturer's label through the Changes Being Effected for "CBE" regulation. At oral argument, Plaintiffs identified two other manufacturers' product's labels, *i.e.*, Pradaxa and Arixtra, which labels include the very same type of testing instructions that Plaintiffs assert is absent from the Xarelto label. The Pradaxa and Arixtra labels confirm that the language the Defendants contend FDA regulations make impossible to include in the Xarelto label is permitted. Defendants' interpretation of the regulations' preclusive effect is incorrect as similar types of testing and instruction information exists in other products' labels making the impossible, possible.

## II. ARGUMENT

### A. CBE Regulations Permit the Monitoring Language Proposed by Plaintiffs outside of the Highlights Section

Defendants insist that measurement information be construed only with regard to the Highlights section. Such an interpretation misperceives and misconstrues the regulatory framework applicable to such warnings/ instructions. Under the "changes being effected" regulation, 21 C.F.R. §314.70 (c)(6)(iii), a drug manufacturer can make "[c]hanges in the labeling to reflect newly acquired information." The Defendants note that this provision excepts changes to the highlights section of the label. Specifically, Defendants' argument depends on Section 314.70 (c)(6)(iii), which allows CBEs "except for changes to the information required in 201.57(a) of this chapter (which must be made under paragraph (b)(2)(v)(C) of this section . . ." *Id.* Defendants therefore pin their monitoring argument on the demands imposed by Section 201.57(a). However, this argument ignores the next consecutive CBE provision, which permits the changes to the warning section proposed by Plaintiffs. Section 314.70 (c)(6)(iii)(A) permits changes: "[t]o add or strengthen a contraindication, warning, precaution, or adverse reaction for which the evidence of a causal association satisfies the standard for inclusion in the labeling under 201.57(c) of this chapter." Of note, this section allows changes that satisfy Section 201.57(c). Subsection 201.57(c), as opposed to §201.57(a) relied upon by the Defendants, describes changes to the "Full prescribing information" portions of the label. The Full prescribing information includes "Section 5 Warnings and precautions," which also encompasses "Monitoring: Laboratory Tests."

### B. **Plaintiffs' Proposed Instructions Have Been Similarly Employed in Other Drug Labels**

Both the Pradaxa and Arixtra labels comport with Plaintiffs' understanding of the CBE regulations, which permit more and better safety information to be included throughout the label prior to any agency approval. Defendants point to the fact that Neoplastin PT has not been specifically cleared by the FDA for use with Xarelto to bolster their argument that the FDA would not have approved updated "monitoring" language in the Xarelto label. But unapproved measurement instructions appear in other labels.

#### Pradaxa

Manufacturers of Pradaxa utilized the CBE process to amend the label, before approval by the FDA, to include information which would instruct physicians to use general coagulation tests. See Exh. 1. The FDA later approved such language. Defendants do not dispute that the Pradaxa label gives instructions regarding the use of a separate Activated Partial Thromboplastin Time or "aPTT" test to measure Pradaxa's anticoagulant effect. Because INR is "relatively insensitive to the exposure to dabigatran [Pradaxa]", the label warns that such testing is not comparable to "warfarin monitoring." Pradaxa USPI §12.2 (Def. Exb. 1). Rather than employ warfarin monitoring, the Pradaxa label proposes that an aPTT measure can inform physicians of the time patients with various degrees of renal impairment need to get to a particular level of recovery. And while the label does not provide advice "on the level of recovery of aPTT needed in any particular clinical setting," it graphically describes the recovery times to allow doctors "to estimate the time to get to a particular level of recovery." *Id*. Despite this description of a separate test to measure Pradaxa's anticoagulant effects (which parallels Plaintiffs' proposed used of PT Neoplastin to accomplish the same feat with Xarelto), Defendants now quibble whether this testing amounts to a "monitoring recommendation" applicable under 21 C.F.R.

§201.57(a), even though Plaintiffs are asserting such "monitoring" instructions are subject to the CBE provisions of 21 C.F.R. §201.57(c).

The FDA's ultimate approval of the change made to the Pradaxa label by way of CBE is particularly instructive. In this instance, the approval letter clearly demonstrates the agency's willingness to allow the inclusion of laboratory testing guidance into NOAC labeling. While the Pradaxa label involved reference to the aPTT test, the situation is analogous to Xarelto and the usefulness of the Neoplastin PT test. The critical point is that as of January 2012 the agency was accepting of providing guidance to physicians on what laboratory test is best for evaluating the anticoagulant effects of NOACs in a particular patient.

### Arixtra

Defendants' attempts to distinguish the Xarelto label from the Arixtra label are also unpersuasive. Section 5.6 of the Arixtra label instructs physicians about monitoring by means of certain laboratory tests available to measure the activity of Arixtra. The label states that Prothrombin Time (PT) and Activated Partial Thromboplastin Time (aPTT) are "relatively insensitive measures" of such activity with respect to Arixtra. Arixtra USPI § 5.6 (Def. Exb. 2). Nevertheless, the label clearly instructs physicians that in the event "unexpected changes in coagulation parameters or major bleeding occur during therapy with ARIXTRA, discontinue ARIXTRA." *Id.* The Arixtra label instructs physicians that fondaparinux is the "appropriate calibrator" to measure anti-Factor Xa activity of fondaparinux sodium. *Id.* This "monitoring" language does not appear in the Highlights section of the Arixtra label; nevertheless physicians are warned/instructed on the proper use of the drug, just as Plaintiffs stated during oral argument.

The Arixtra label is an example of this analysis taken even one step further. The Arixtra label specifically points out that two laboratory tests are not sensitive or useful for testing the

effects of the drug. The label then takes the next step and identifies the most appropriate test to be used, i.e., the anti-Factor Xa calibrator.  In sum, the Arixtra label allows direction on "what not to use," as well as "what to use."

Taken together, these labels are clear proof of the FDA's willingness to incorporate meaningful labeling information on which laboratory tests are most useful in assessing the anticoagulant effects of these agents. In light of these comparable labeling provisions with other anticoagulants, there is no basis for the defendants' claim of impossibility preemption as it relates to Xarelto and the usefulness of the Neoplastin PT.

### III.  CONCLUSION

Thus, the Defendants are correct that they are prohibited from changing the Highlights portion of the label without prior FDA approval.  The fallacy of Defendants' argument is that it overlooks that Defendants are *permitted* to make changes prior to agency approval under the CBE provision to the Full prescribing information, which addresses warnings, and "laboratory tests helpful … in identifying possible adverse reactions."  21 C.F.R. 201.57(c)(6)(iii).  This explanation of theregulatory framework is entirely consistent with the Pradaxa and Arixtra labels, and fully supportive of Plaintiffs' arguments that Defendants had the ability to fully warn and inform users by modifying their label, but chose not to do so at the expense of Plaintiffs' health and safety.

Under the current regulatory regime, Defendants are the masters of the Xarelto label at all times, and must insure that its warnings remain adequate as long as the drug is on the market. Because they failed to properly instruct physicians about necessary testing to measure PT Neoplastin, the label was inadequate under Louisiana law. Defendants' motion for partial summary judgment on the grounds of preemption (Rec. Doc. 5109), should therefore be denied.

Respectfully submitted,

Dated: March 30, 2017

*/s/ Leonard A. Davis*
Leonard A. Davis, Esq. (Bar No. 14190)
**HERMAN, HERMAN & KATZ, LLC**
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Email: ldavis@hhklawfirm.com


Gerald E. Meunier (Bar No. 9471)
**GAINSBURGH BENJAMIN DAVID MEUNIER & WARSHAUER, LLC**
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
Email: gmeunier@gainsben.com

***Plaintiffs' Liaison Counsel***

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on March 30, 2017, the foregoing memorandum was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs and Defendants by operation of the court's electronic filing system and served on all other plaintiff counsel via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre- Trial Order No. 17.

*/s/ Leonard A. Davis*
**LEONARD A. DAVIS**