UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  XARELTO (RIVAROXABAN) | * | MDL 2592 |
| PRODUCTS LIABILITY LITIGATION | * | |
| | * | SECTION L |
| THIS DOCUMENT RELATES TO: | * | |
| ***Boudreaux v. Bayer Corp., et al.*** | * | JUDGE ELDON E. FALLON |
| **Case No. 2:14-cv-02720** | * | |
| | * | MAGISTRATE JUDGE NORTH |
| * * * * * * * * * * * * * * * * * * * * * * * | | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO
## DEFENDANTS' OMNIBUS MOTION IN LIMINE NO. 2

## I.      INTRODUCTION

Defendants' Omnibus Motion *In Limine* No. 2 (Record Doc. 5956) overreaches by asking this Court to exclude an abundance of evidence that is unquestionably relevant to this litigation, highly probative of Plaintiffs' claims, and not unduly prejudicial.  The evidence is admissible for a variety of reasons, including to demonstrate notice, knowledge, bias, financial motives, duties under the Louisiana Products Liability Act ("LPLA"), § 9:2800.51, *et seq.*, and breaches of those duties.  Additionally, Defendants' motion overstates what are, at most, minimal prejudicial effects that might result, which could be effectively prevented through the use of limiting instructions. Accordingly, and as discussed in further detail below, Defendants' motion should be denied.

## II.     LEGAL STANDARD

While neither the Federal Rules of Evidence nor the Federal Rules of Civil Procedure "explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials."[1]

---

[1] *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).

Per stipulation and order,[2] Plaintiffs are pursuing two claims under the LPLA: design defect and failure to warn.   To establish those claims, it must be shown by a preponderance of the evidence that "the product is unreasonably dangerous in design as provided in R.S. 9:2800.56," and/or that "the product is unreasonably dangerous because an adequate warning about the product has not been provided as provided in R.S. 9:2800.57."[3]   Both theories, while supplanting negligence as a direct cause of action, are nonetheless predicated on a negligence standard.[4]   Thus, Plaintiffs' case depends on, among other things, evidence that demonstrates that Defendants did not act reasonably to prevent foreseeable harm.[5]   Much of the evidence in the categories at issue in this motion is admissible for this purpose alone, as well as for the other reasons discussed herein.

## III.   ARGUMENT

### A.   Evidence and argument concerning the defense and indemnification provisions in the Collaborative Development and License Agreement.

Defendants seek to preclude all evidence and argument regarding the defense and indemnification provisions in the Collaborative Development and License Agreement ("CDLA").[6] It is important to note that Defendants are not seeking to preclude the entirety of the CDLA; they seek only to preclude evidence about the defense and indemnification provisions in Article XII.[7]

---

[2] *See* Stipulation and Order (Doc. No. 5340), at 1.

[3] La. Rev. Stat. Ann. § 9:2800.54(B)(2), (3); *see also Stahl v. Novartis Pharms. Corp.*, 283 F. 3d 254, 261 (5th Circ. 2002).

[4] *See* Kennedy, John, *A Primer on the Louisiana Products Liability Act*, 49 La. Law Rev 565, 588-90 (Jan. 1989) ("[T]wo of the four ways – defective design and inadequate warning – are predicated on a negligence standard… Consequently, negligence is still an integral part of Louisiana products liability law, but it now exists as a component of the LPLA cause of action rather than as an independent theory of liability").

[5] *See id.* at 589 n.125 ("Negligence in Louisiana is the creation, maintenance, or failure to guard against an unreasonable risk of foreseeable harm").

[6] *See* Memorandum in Support of Defendants' Omnibus Motion in Limine No. 2 ("Def. Mem."), at 4-7.

[7] *Id.* at 4-5.

Plaintiffs do not necessarily disagree that, in most circumstances, the defense and indemnification provisions should not be presented at trial.  It would be premature to preclude the evidence now, however, without the benefit of context at trial.  For example, if Bayer would attempt to disclaim all responsibility at trial, the defense and indemnification provisions might become relevant.  For that reason, Plaintiffs request that a ruling on this motion be deferred until trial.

Additionally, nothing about this evidence would be unfairly prejudicial or confusing. Defendants cite one potential example as an attempt to prove otherwise – an example that has Plaintiffs' counsel implying that Defendants must have suspected that lawsuits would be filed against them, because they signed agreements addressing indemnification and insurance for liabilities in lawsuits long before lawsuits were filed.  This example is far-reaching, and, quite frankly, offensive, and does nothing to support their claim of potential unfair prejudice.

**B.** **Evidence and argument concerning Corporate Integrity Agreements, government investigations or settlements, and any other "bad acts" unrelated to Xarelto.**

Defendants seek to preclude all evidence and argument concerning two Corporate Integrity Agreements ("CIAs") involving Janssen's marketing practices related to Risperdal.[8]  Again, Plaintiffs do not necessarily disagree that, in most circumstances, these two agreements should not be presented at trial.  It would be premature to preclude the evidence now, however, without the benefit of context at trial.  For example, if Defendants would attempt to argue that their corporate

---

[8] *See id.* at 8.  In this section, Defendants also refer generically to government investigations or settlements, and any other "bad acts" unrelated to Xarelto, but those materials are not otherwise addressed in any way.  *See id.* at 7-11. Plaintiffs thus request that this additional part of the motion be denied as vague and overbroad, since it is unclear what is sought to be precluded or why.  Alternatively, Plaintiffs request that the ruling on this additional part of the motion be deferred until trial, after there is an identification of what material is sought to be excluded and why, and after the import of that evidence can be placed into context.

marketing practices are above reproach, these two CIAs might become relevant.  For that reason, Plaintiffs request that a ruling on this motion be deferred until trial.

Additionally, nothing about this evidence would be unfairly prejudicial to preclude presentation under Rule 403.  Defendants claim otherwise, saying the evidence might suggest Defendants are predisposed to violating legal requirements.  That, however, ignores the fact that the evidence would be presented only if Defendants suggest the opposite, that they are not predisposed to violating, and do not violate, legal requirements.  If Defendants open the door to such evidence, any prejudice caused by the presentation of contrary evidence would not be unfair.

Defendants also claim that the evidence should be precluded under Rule 404(b), which precludes the presentation of evidence of a crime, wrong, or other act to prove a person's character to show the person acted in accordance with that character on the questioned occasion.  As support, Defendants cite this Court's order from the *Irving* bellwether case in *Vioxx,* but that order does not say the evidence was precluded on that ground; that ground was merely suggested by Defendants, along with irrelevance and unfair prejudice.[9]  Additionally, the order noted that the evidence could be presented if "it becomes an issue of cross-exam,"[10] which is consistent with Plaintiffs' potential use of this evidence at trial.

Finally, Defendants argue that presentation of the CIAs at trial would violate Rule 408, which precludes the presentation of consent orders as proof of liability on the merits.  First, as addressed above, the CIAs would not be presented as proof of liability on the merits.  Second, Defendants have cited no authority equating CIAs with consent orders for purposes of applying Rule 408.  This rule is not applicable.

---

[9] *See* Exhibit 1, *In re: Vioxx Prods. Liab. Lititg. (Irvin v. Merck & Co., Inc.),* No. 05-md-1657, slip. op. at 6-7 ¶ 16 (E.D. La. Nov. 21, 2005) (Judge Fallon).

[10] *Id.*

C. **Evidence and argument concerning Chameleon Communications or "ghostwriting" in connection with certain scientific articles.**

Defendants claim that evidence of "ghostwriting" is irrelevant and would result in time-consuming mini-trials, particularly since there is no evidence that Mr. Boudreaux's treating physician, Dr. Wong, read or relied on any ghostwritten article.[11]  This argument is overreaching, both in terms of the facts and the applicable law.

First, at present, it is unknown whether Dr. Wong relied on any ghostwritten articles, because he was never asked in his deposition to identify which scientific articles he had read and/or relied on.  Even if he had been asked, there is no list of ghostwritten articles against which the list of articles he read and/or reviewed could be cross-checked.  In fact, Defendants claim in their brief that there is no evidence that any articles were ghostwritten by Chameleon Communications,[12] even though deposition testimony confirms that Chameleon Communications was involved with drafting scientific articles for Defendants.[13]

Second, there is no need to identify each particular piece of evidence that was read and relied on by Dr. Wong.  All of it reached Dr. Wong in some form or another, either directly or indirectly, through advertising and marketing, detail representatives, colleagues, and CME presenters, the latter three of whom would have passed on information from what they had read.[14]

---

[11] *See* Def. Mem. at 12-14.

[12] *See* Def. Mem. at 12.

[13] *See, e.g.,* Exhibit 2, Deposition Testimony of Dagmar Kubitza, at 395:2-5 (confirming "Chameleon was a company that Bayer had used for medical-writing assistance on their articles"); Exhibit 3, Deposition of Theodore Spiro, at 341:4-349:20 (addressing involvement by Chameleon Communications in an article to be published in the Therapeutic Drug Monitoring Journal).

[14] For more details about the pervasive influence of marketing materials and scientific literature, whether obtained directly or indirectly, see Plaintiffs' Response in Opposition to Defendants' Motion in Limine No. 2 to Exclude Evidence and Argument Regarding Marketing, Advertising, or Promotional Materials Not Relied on by Plaintiffs' Prescribing Physician, filed today.

Third, many courts have allowed the presentation of evidence relating to ghostwriting, and in some, the courts added that it did not matter whether the plaintiff's physician had seen or relied on the ghostwritten article.[15]   The relevance of "ghostwriting" was best explained in the *Yaz* litigation, where the court denied a motion to exclude evidence about the ghostwriting of medical literature:

> Bayer states that although it hired medical consultants to help physicians and academics with medical papers there is no evidence that the physicians and academics signed their names to anything they did not believe in or that the papers were not written with full input from the physicians and academics.   Bayer suggests that people such as the President and federal judges utilize ghost writers and there is nothing wrong with the well accepted practice.
>
> This argument is not well taken.   Neither the President nor any federal judge to this judge's knowledge, to the extent speech writers or law clerks are used for drafts of speeches or orders, are trying to deceive the target audience for the purpose of influencing that audience['] interpretation of the subject matter of the content of the speech or order.   In this instance, it is just that which is occurring.   Bayer wants the target audience to believe the words are those of a particular doctor or academic for the sake of influencing that audience with the name of the supposed author.   Even though the supposed author may agree generally with the concepts and conclusions that is not the same as saying it exactly in the same tone and demeanor as the substitute writer.   It would be more honest if the consultant wrote the article and the "name" doctor or academic wrote a forward or executive summary endorsing the concepts contained therein rather than trying to make the audience believe he or she actually wrote the entire article.   In the context of this case and the issue of adequate warning, in particular, this kind of

---

[15] *See, e.g., In re Seroquel Prods. Liab. Litig.*, No. 06-md-1769, 2009 WL 223140, at *2-3 (M.D. Fla. Jan. 30, 2009) (rejecting arguments that evidence of ghostwriting was inflammatory and irrelevant unless the plaintiff had definitive proof that her actual physician saw and relied on the ghostwritten article); *Giles v. Wyeth,* 500 F. Supp. 2d 1063, 1064 (N.D. Ill. 2007) (denying motion for summary judgment on failure to warn claim in part because of evidence that the defendant had "utilized material misrepresentations to promote and market [its drug] via the practice of 'ghost writing' scientific articles for publication under the names of prominent academic 'authors'); *Tucker v. SmithKline Beecham Corp.,* 701 F. Supp. 2d 1040, 1048 (S.D. Ind. 2010) (denying challenge to expert in part because the expert had appropriately relied on the "practice of ghostwriting scientific articles, which [the expert] said has led to exaggeration of the benefits of drugs and concealment of their risks"); *Strom v. Scios, Inc.,* 676 F. Supp. 2d 884, 888-889 (N.D. Cal. 2009) (discussing evidence that defendant had used a third party to ghostwrite articles about its drug and had arranged to submit them for publication under the names of doctors selected by the defendant, in denying motion to dismiss).

evidence is particularly relevant for the fact finder to consider with
all the other evidence in the case.[16]

Fourth, and finally, Defendants' suggestion that admitting this evidence will create mini-trials on each and every ghostwritten article is fallacious.  It overestimates the purpose for which this evidence will be offered and underestimates the jury's ability to understand the evidence's strengths and limitations.

### D.   Evidence from Plaintiffs' expert witnesses that is beyond the scope of their Rule 26 expert reports.

Defendants seek to preclude evidence from experts that is beyond the scope of their Rule 26 expert reports.[17]  Again, Plaintiffs do not necessarily disagree that expert evidence that has not been properly disclosed is inadmissible at trial; however, the pertinent period is not the date on which the initial report is due.  The rules themselves allow for supplements, via report or deposition, up until the time that pretrial disclosures are due.[18]  Additionally, the rules provide that even if the supplemental evidence is not disclosed within that timeframe, the evidence still may be presented if the failure was substantially justified or is harmless, or if it would be appropriate to issue another sanction, such as an order of payment of expenses caused by the failure or a statement made to the jury.[19]

Given the number of considerations that are involved, a blanket ruling that does not consider the actual expert evidence is not possible.  This is illustrated through the example cited by Defendants, with regard to the alleged non-disclosed evidence from Dr. David Kessler.[20]  When

---

[16] *In re Yasmin & Yaz (Drospirenone) Mktg.,* No. 09-md-2100, 2011 U.S. Dist. LEXIS 147935, at *23-24 (S.D. Ill. Dec. 22, 2011).

[17] *See* Def. Mem. at 14-15.

[18] *See* Fed. R. Civ. P. 26(a)(2)(E); Fed. R. Civ. P. 26(e)(2).

[19] *See* Fed. R. Civ. P. 37(c)(1).

[20] *See* Def. Mem. at 14 n.6.

reading a few more lines beyond those which are cited by Defendants, it is clear that no evidence was omitted from his disclosures. Dr. Kessler agreed that he had not provided a statistical analysis until he arrived for his deposition, but added: "That is exactly correct, and that is exactly appropriate for me to do. It is – it is absolutely consistent with what's in my report. I am certainly allowed to continue to be able to look at documents and be able to answer your questions."[21] For that reason, Plaintiffs request that a ruling on this motion be deferred until trial.

> ### E.   Evidence and argument concerning Defendants' other litigation.

Defendants seek to exclude evidence and argument related to other lawsuits. Plaintiffs oppose this motion only to the extent that, should Defendants open the door to such argument by introducing evidence that creates a misimpression for the jury that can only be corrected by advising the jury of other lawsuits, Plaintiffs must be permitted to correct the misimpression by introducing appropriate evidence of other lawsuits. Additionally, should Defendants seek to impeach Plaintiffs' experts on the total amount of money earned or hours worked on the Xarelto litigation, it must be made clear to the jury on behalf of how many cases that work was performed. Likewise, should Defendants open the door to such evidence by claiming or implying that no other lawsuits or few other lawsuits exist, Plaintiffs should be able to utilize this evidence. Other, similar uses may be appropriate. Since the context of presenting the evidence is essential for evaluating the appropriateness of its admission, Plaintiffs request that a ruling on this motion be deferred until trial. This position is consistent with the prior ruling of this Court in *Vioxx*.[22]

---

[21] *See* Exhibit 4, Deposition of David Kessler, at 359:24-360:17.

[22] *See* Exhibit 5, *In re: Vioxx Prods. Liab. Litig. (Dedrick v. Merck & Co., Inc.),* No. 05-cv-2524, slip op. at ¶ 1(a) (deferring ruling on motion in limine to preclude references to Merck's defense of other Vioxx-related lawsuits or to the number of times Merck witnesses have testified previously, noting the evidence is "likely inadmissible unless witness is being impeached with prior testimony or if issue is made of Plaintiff's experts testifying in other cases.").

Defendants also raise concerns about hearsay, by none of the uses that can be anticipated for this type of evidence involve establishing the truth of the matters asserted, so the hearsay doctrine is not implicated.[23]  The concerns Defendants raise about *unfair* prejudice or confusion likewise are unwarranted, since the evidence will be presented only if Defendants open the door. There is nothing unfair about a party being faced with evidence to clarify or correct evidence presented by that party.

### III.   <u>CONCLUSION</u>

For the reasons set forth above, Defendants' motion should be denied.

Dated:  April 12, 2017

Respectfully submitted,

*/s/ Leonard A. Davis*
Leonard A. Davis, Esq. (Bar No. 14190)
***HERMAN, HERMAN & KATZ, LLC***
820 O'Keefe Avenue
New Orleans, LA  70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Email: ldavis@hhklawfirm.com

Gerald E. Meunier (Bar No. 9471)
***GAINSBURGH BENJAMIN DAVID MEUNIER & WARSHAUER, LLC***
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA  70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
Email: gmeunier@gainsben.com

***Plaintiffs' Liaison Counsel***

---

[23] *See* Fed. R. Evid. 801(c)(2).

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 12, 2017, the foregoing pleading and its supporting memorandum of law were filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs and Defendants by operation of the court's electronic filing system and served on all other plaintiff counsel via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre- Trial Order No. 17.

*/s/ Leonard A. Davis*
**LEONARD A. DAVIS**
