**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: XARELTO (RIVAROXABAN) | ) | MDL 2592 |
| PRODUCTS LIABILITY LITIGATION | ) | |
| | ) | SECTION L |
| | ) | |
| | ) | JUDGE ELDON E. FALLON |
| Joseph J. Boudreaux, Jr., et al. v. Janssen et al. | ) | |
| Case No. 2:14-cv-02720 | ) | MAG. JUDGE NORTH |

**DEFENDANTS' JOINT OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* NO. 26**
**REGARDING COMPENSATION OF DR. KESSLER**

Defendants hereby oppose Plaintiffs' Motion *in Limine* No. 26 Regarding Compensation of Dr. Kessler (Doc. 5946).

Plaintiffs' motion seeks to prohibit all witnesses and counsel from "commenting on, referring to, [or] introducing testimony or evidence" about (1) "the compensation arrangement of David A. Kessler, M.D. with the University of California regarding the California Health Services Compensation Plan[]" or (2) "Dr. Kessler's spending, billing and/or expenses as FDA Commissioner." Doc. 5946-1, at 1. Plaintiffs proffer Dr. Kessler as a regulatory expert and contend that his experience as FDA Commissioner is part of what makes him "'uniquely' qualified to offer opinions relating to the conduct of pharmaceutical companies."[1] Pls.' Opp. to Defs.' Mot. *in Limine* to Exclude Certain Opinions of David A. Kessler, MD, Under Federal Rule of Evidence 702 (Doc. 5522), at 1.

As courts have routinely held, Defendants are entitled to discovery on the amount and percentage of income that expert witnesses receive from expert witness fees, and to cross-examine

---

[1] Many of Dr. Kessler's proffered opinions should be excluded for the reasons outlined in Defendants' Motion in Limine to Exclude Certain Opinions of David A. Kessler, MD, Under Federal Rule of Evidence 702 (Doc. 5111).

expert witnesses on those issues for purposes of illustrating bias.  *See, e.g.*, *Butler v. Rigsby*, No. CIV.A 96-2453, 1998 WL 164857 (E.D. La. Apr. 7, 1998); *see also, e.g.*, *Collins v. Wayne Corp.*, 621 F.2d 777, 784 (5th Cir. 1980), *superseded in part on other grounds by rule as recognized in Mathis v. Exxon Corp.*, 302 F.3d 448, 459 n.16 (5th Cir. 2002) ("[W]e hold that cross-examination of an expert about fees earned in prior cases is not improper. . . . A showing of a pattern of compensation in past cases raises an inference of the possibility that the witness has slanted his testimony in those cases so he would be hired to testify in future cases.").  Indeed, this Court has required the parties to disclose information about their experts' compensation and prior expert work.  *See* PTO 23A, at 2.  Plaintiffs' motion *in limine* seeks to exclude evidence that is admissible on cross-examination to address Dr. Kessler's bias and credibility, and the Court should deny the motion.

## FACTUAL BACKGROUND

Plaintiffs' motion addresses questions that Defendants asked Dr. Kessler at his deposition—namely, (1) "about his income stream from academic resources, including his participation in the California Health Services Compensation Plan . . . as a faculty member at the University of California" and (2) about a congressional inquiry into Dr. Kessler's travel expenses during his time as FDA Commissioner.  Doc. 5946-1, at 1–2.

Some brief factual background as to Plaintiffs' first request is in order.  As Plaintiffs note, the University of California system has policies regarding "faculty members' conflict of commitment and outside activities and the disposition of income earned from outside professional activities," which impose "reporting obligations and limits on outside income."  *Id.* at 2; *see also* UC System Academic Personnel Manual §§ 025, 670, 671.[2]  For example, the University of

---

[2] *Available at* http://www.ucop.edu/academic-personnel-programs/academic-personnel-policy/.

California System's Health Sciences Compensation Plan imposes certain policies on any professor who holds a full-time university-funded appointment in a University of California School of Medicine. *See id.*

Dr. Kessler testified at his deposition about these reporting and income-sharing obligations and claimed that he is personally "████████████████████████████" by virtue of a letter from the university. Kessler Dep. at 386:15–387:10 (excerpts attached as Exh. 1; filed under seal). Dr. Kessler further testified that he would "█████████████" whether he reports his outside income to the university, but that he "██████████████" as required by the Health Services Compensation Plan because of this purported exemption. *Id.* at 389:2–24. Plaintiffs have now offered "to provide the Court" Dr. Kessler's purported exemption letter "for *in camera* inspection" (Doc. 5946-1, at 2 n.1), but Plaintiffs have never provided Defendants with a copy of the letter, despite a request made on the record at Dr. Kessler's deposition and a formal written request to the PSC.

## ARGUMENT

**A.**     **Defendants are entitled to cross-examine Dr. Kessler on his litigation-based income and "his income stream from academic resources," including his compliance with any income-sharing and/or reporting requirements imposed by virtue of his professorship at the University of California San Francisco.**

Defendants are entitled to inquire into Dr. Kessler's litigation-based sources of income on cross-examination as evidence of bias. *See, e.g., Butler*, 1998 WL 164857, at *4 ("The courts have held that the amount of income derived from services related to testifying as an expert witness is relevant to show bias or financial interest."); *Jones v. Young*, No. 3:04CV00257 JLH, 2007 WL 2695621, at *2 (E.D. Ark. Sept. 10, 2007) (the income an expert derives from litigation-related activities is discoverable as evidence of possible bias); *see also, e.g., Collins*, 621 F.2d at 784.

Plaintiffs suggest that "questioning or testimony about [Dr. Kessler's] 'outside income'" is "irrelevant and prejudicial" because it "strays far from any evidence that may be related in any way to the safety of Xarelto," but the cases that they have cited (Doc. 5946-1, at 2 & n.2) are inapposite and instead establish Defendants' point—*i.e.*, that information about an expert witness's litigation-generated income is discoverable and relevant evidence, admissible on cross-examination to show bias. *See Behler v. Hanlon*, 199 F.R.D. 553, 557 (D. Md. 2001) (recognizing the admissibility of litigation-compensation evidence as bias impeachment evidence, the court observed, the fact that the "witness may have a 20 year history of earning significant income testifying primarily as a witness [for either defendants or plaintiffs or plaintiffs' counsel] . . . certainly fits within recognized examples of bias/prejudice impeachment"); *Campos v. MTD Prod., Inc.,* No. 2:07-0029, 2009 WL 920337, at *5 (M.D. Tenn. Apr. 1, 2009) (defendant voluntarily agreed to provide financial information reflecting the percentage of income derived from expert witness activities and any relationship with the defendant and defendant's counsel); *Reed v. Cline*, No. 1:08-CV-00473-SEB-TAB, 2010 WL 3829459, at *2 (S.D. Ind. Sept. 24, 2010) (expert voluntarily disclosed financial information related to expert consulting).

The Court should deny Plaintiffs' request to preclude Defendants from questioning Dr. Kessler about his "income stream from academic sources," as well as his participation in (and compliance with) the University of California Health Services Compensation Plan and university policies. Regardless of whether Dr. Kessler was granted special permission to retain his outside income—a statement which Defendants cannot verify without production of the purported exemption letter—Defendants are entitled to question Dr. Kessler at trial about his litigation-generated sources of income as evidence of potential bias. Defendants also are entitled to question Dr. Kessler about what percentage of his total income his expert-witness fees, as opposed to his

university salary, represents.  Moreover, to the extent that Dr. Kessler has, consistent with university policy, reported to the University of California information regarding his outside income from litigation-expert sources, those reports (or lack thereof) can be used as additional bias evidence to impeach him as a professional expert.  *See Butler*, 1998 WL 164857, at *4.  In addition, if Dr. Kessler did not report (or inaccurately reported) his litigation-based income to the university, that is precisely the type of conduct considered probative of character for truthfulness under Federal Rule of Evidence 608(b), which expressly authorizes cross-examination about specific instances of the witness's conduct.  *See United States v. Umawa Oke Imo*, 739 F.3d 226, 239 (5th Cir. 2014) (evidence of fraudulent acts are indicative of the defendant's character for truthfulness and admissible under Rule 608(b)).

>   **B.      Defendants are entitled, under Rule 608(b), to cross-examine Dr. Kessler about the facts surrounding the congressional inquiry into his reimbursements while FDA Commissioner.**

Plaintiffs also seek to preclude Defendants from cross-examining Dr. Kessler about what they describe as a "silly kerfuffle" that later became the subject of a congressional inquiry regarding Dr. Kessler's travel-expense reimbursements over a five-year period while he was FDA Commissioner.  Doc. 5946-1, at 3.  Similar to the evidence just described, the congressional investigation into Dr. Kessler's reimbursements could be used on cross-examination to show a pattern of inaccurate expense reporting, which is probative of his character for truthfulness.  Although the congressional inquiry occurred in 1996, Rule 608(b) does not impose any specific time limits on such evidence.  *United States v. Crinel*, No. CR 15-61, 2017 WL 1177719, at *5 (E.D. La. Mar. 30, 2017) (allowing cross-examination under Rule 608(b) by inquiring into past misconduct for fraud discussed in an interview conducted twelve years previously).  What Plaintiffs describe as a "silly kerfuffle" was considered significant enough to warrant investigation by the House Commerce Subcommittee on Oversight and Investigations.  That evidence is the

proper subject of cross-examination, particularly given the nexus between this conduct and the very role—Dr. Kessler's experience as FDA Commissioner—that Plaintiffs rely on to make Dr. Kessler, in their words, a "uniquely qualified" expert. The jury should be the arbiters of whether this information speaks to Dr. Kessler's character for truthfulness.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion *in limine* No. 26.


Respectfully submitted,


BARRASSO USDIN KUPPERMAN FREEMAN & SARVER, L.L.C.

By: /s/ *Richard E. Sarver*
Richard E. Sarver
Celeste R. Coco-Ewing
BARRASSO USDIN KUPPERMAN FREEMAN & SARVER, L.L.C.
909 Poydras Street, 24th Floor
New Orleans, Louisiana  70112
Telephone:  (504) 589-9700
rsarver@barrassousdin.com
ccoco-ewing@barrassousdin.com


DRINKER BIDDLE & REATH LLP

By: /s/ *Susan M. Sharko*
Susan M. Sharko
Drinker Biddle & Reath LLP
600 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
susan.sharko@dbr.com

Rodney M. Hudson
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
Telephone: (415) 591-7500
Rodney.hudson@dbr.com

WILKINSON WALSH + ESKOVITZ LLP

By: /s/ *Beth A. Wilkinson*
Beth A. Wilkinson
Jennifer L. Saulino
Jeremy Barber
WILKINSON WALSH + ESKOVITZ LLP
1900 M. Street NW, Suite 800
Washington, DC 20036
Telephone: (202) 847-4000
bwilkinson@wilkinsonwalsh.com
jsaulino@wilkinsonwalsh.com
jbarber@wilkinsonwalsh.com


NELSON MULLINS RILEY & SCARBOROUGH LLP

By: /s/ *David E. Dukes*
David E. Dukes
J. Mark Jones
NELSON MULLINS RILEY & SCARBOROUGH LLP
1320 Main Street, 17th Floor
Columbia, SC 29201
Telephone: (803) 799-2000
David.Dukes@nelsonmullins.com
Mark.Jones@nelsonmullins.com


ARNOLD & PORTER KAYE SCHOLER LLP

By: /s/ *Andrew K. Solow*
Andrew K. Solow

6

Chanda A. Miller
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2700
Chanda.Miller@dbr.com


IRWIN FRITCHIE URQUHART & MOORE LLC

By: /s/ *James B. Irwin*
James B. Irwin
Kim E. Moore
Irwin Fritchie Urquhart & Moore LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
jirwin@irwinllc.com


*Attorneys for Defendants Janssen*
*Pharmaceuticals, Inc., Janssen Research &*
*Development, LLC, and Janssen Ortho LLC*

Steven Glickstein
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8485
andrew.solow@apks.com
steven.glickstein@apks.com

William Hoffman
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
william.hoffman@apks.com


BRADLEY ARANT BOULT CUMMINGS LLP

By: /s/ *Kevin C. Newsom*
Kevin C. Newsom
Lindsey C Boney IV
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place, 1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8803
knewsom@bradley.com
lboney@bradley.com


CHAFFE MCCALL L.L.P.
By: /s/ *John F. Olinde*
John F. Olinde
CHAFFE MCCALL L.L.P.
1100 Poydras Street, Suite 2300
New Orleans, LA 70163
Telephone: (504) 585-7241
olinde@chaffe.com


*Attorneys for Bayer HealthCare*
*Pharmaceuticals Inc. and Bayer Pharma AG*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 12th day of April, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to Liaison Counsel for Plaintiffs by operation of the court's electronic filing system and a copy of the proposed documents to be placed under seal sent to Plaintiffs' Liaison Counsel by email transmission.

*/s/      John F. Olinde*