UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) ) ) | MDL 2592 |
| | | SECTION L |
| | | JUDGE ELDON E. FALLON |
| Joseph J. Boudreaux, Jr., et al. v. Janssen et al. Case No. 2:14-cv-02720 | | MAG. JUDGE NORTH |

**DEFENDANTS' JOINT OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* NO. 7 REGARDING HEARSAY STATEMENTS FROM MEDICAL ASSOCIATIONS**

Defendants hereby oppose Plaintiffs' Motion *in Limine* No. 7 Regarding Hearsay Statements From Medical Associations. *See* Doc. 5920.

Plaintiffs' motion to preclude all counsel and witnesses from "commenting on, referring to, or attempting to introduce testimony or evidence about . . . hearsay statements from medical associations" (Doc. 5920-1, at 1) should be denied. Many medical associations endorse the efficacy and safety of Xarelto®, and—as Plaintiffs' experts concede (*see* Defs.' Dosing & Monitoring *Daubert* Br. (Doc. 5113), at 16 & n.10)—no medical association suggests that Xarelto patients should be given a prothrombin time or other test to determine if the patient is at a heightened risk of bleeding.[1]

---

[1] In addition to the reasons expressed below, Plaintiffs' motion is overbroad because it seeks to exclude the entire universe of statements made by medical associations, rather than raising particularized concerns with any specific statement. *See, e.g.*, *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co.*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996) (denying motion in limine which "lack[ed] the necessary specificity with respect to the evidence to be excluded or the purported reason for the introduction of such evidence"); *see also, e.g.*, *Auenson v. Lewis*, No. 94-2734, 1996 WL 457258, at *1 (E.D. La. Aug. 12, 1996); *Looney Ricks Kiss Architects, Inc. v. Bryan*, No. CIV.A. 07-572, 2010 WL 5393864, at *1 (W.D. La. Dec. 22, 2010). As explained below, medical association guidelines, recommendations, and other statements will be admissible in multiple different contexts, and thus, should not be excluded wholesale.

1

Plaintiffs' position in their motion is undermined by their own experts, who have cited to medical association guidelines in their expert reports and testified that, like Mr. Boudreaux's prescribing physician, they follow these guidelines in their medical practice.  Indeed, Plaintiffs have not cited a single case where such statements were excluded.  Published recommendations, guidelines, and other statements from professional medical organizations are highly relevant and are admissible evidence (1) as learned treatises under Federal Rule of Evidence 803(18), (2) under the residual exception codified in Rule 807, (3) as the basis of expert opinions on direct and cross-examination under Rules 703 and 705, and (4) as impeachment evidence.  Plaintiffs' motion *in limine* should be denied.

## FACTUAL BACKGROUND

All the medical witnesses here—Plaintiffs' experts, Defendants' experts, and Mr. Boudreaux's prescribing physician—rely on statements from medical organizations to treat patients, like Mr. Boudreaux, who have AFib, and have cited these statements in their reports.  These guidelines and recommendations are published by reputable professional organizations.  For example—

- The American Heart Association (AHA) is "dedicated to fighting heart disease and stroke," and "fund[s] innovative research, fight[s] for stronger public health policies, and provide[s] critical tools and information to save and improve lives."  Our Mission, American Heart Association, *available at* http://www.heart.org/HEARTORG/General/About-Us---American-Heart-Association_UCM_305422_SubHomePage.jsp (Exh. 3).

- The purpose of the American College of Cardiology (ACC) is to "improve cardiovascular health through education, research, quality care and health policy."  About ACC, American College of Cardiology, *available at* http://www.acc.org/about-acc (Exh. 4).

- The mission of the Heart Rhythm Society (HRS) is to "improve the care of patients by advancing research, education and optimal health care policies and standards."  About the Heart Rhythm Society, Heart Rhythm Society, *available at* http://www.hrsonline.org/About-HRS (Exh. 5).

- The purpose of the American College of Chest Physicians (ACCP) is to "champion the prevention, diagnosis, and treatment of chest diseases through education, communication, and research." About, American College of Chest Physicians, *available at* http://www.chestnet.org/About (Exh. 6).

The guidelines, recommendations, and statements published by these organizations address treatment protocols relevant to this case, including (but not limited to) the following:

- In 2014, AHA/ACC/HRS jointly published *Guidelines for the Management of Patients with Atrial Fibrillation: A Report of the American College of Cardiology/American Heart Association Task Force on Practice Guidelines and the Heart Rhythm Society*. *See* Exh. 8. These guidelines are cited by numerous experts—retained by both Plaintiffs and Defendants—and provide information regarding treatment of AFib patients to determine whether anticoagulation is appropriate. Mr. Boudreaux's prescribing physician, Dr. Wong, followed these guidelines in deciding to prescribe Xarelto® to Mr. Boudreaux. These guidelines give Xarelto the highest recommendation to Xarelto for patients who need an anticoagulant.

- In 2016, the European Society of Cardiology (ESC) released *Guidelines for the Management of Atrial Fibrillation* (Kirchhof, et al., 2016). These guidelines recommend NOACs (including Xarelto) as first-line treatment options and prefer NOACs over warfarin in those patients eligible for treatment with a NOAC. The guidelines include recommendations for diagnosis/timely detection, integrated management, stroke prevention, rate/rhythm control, and specific situations, and recommend using the CHA2DS2-VASc score to estimate stroke risk for patients with AFib.

## ARGUMENT

**A. Published guidelines, recommendations, and other statements of reputable medical associations are admissible under Rule 803(18) because both sides' experts and Mr. Boudreaux's prescribing physician rely on them.**

The guidelines, recommendations, and other statements in literature published or issued by medical organizations are admissible in this case under the learned treatise exception. That rule excepts from the rule against hearsay a "statement contained in a treatise, periodical, or pamphlet if: (A) the statement is called to the attention of an expert witness on cross-examination or relied on by the expert on direct examination; and (B) the publication is established as a reliable authority by the expert's admission or testimony, by another expert's testimony, or by judicial notice." Fed. R. Evid. 803(18); *see also United States v. Norman*, 415 F.3d 466, 473–74 (5th Cir. 2005). These

3

associations' statements are reliable authority. Indeed, both sides' experts have relied on them (and use them in their clinical practices), and Mr. Boudreaux's prescribing physician used them in assessing Mr. Boudreaux's medical condition and his need for anticoagulation.

Indeed, by way of example, two of Plaintiffs' experts—Dr. Phillip Cuculich and Dr. Frank Smart—cite in their expert reports or reliance lists to guidelines from the American College of Cardiology, the American Heart Association, and the Heart Rhythm Society. *See* Cuculich Report at 4, 8 (Doc. 5113, Exh. 5 (under seal)); Smart Report App'x B (Doc. 5113, Exh. 29 (under seal)). And Plaintiffs' experts testified at their depositions that they follow medical associations' guidelines in their practice. *See* Smart Dep. at 56:25–57:8 ("▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇"), 74:20–24 (excerpts attached as Exh. 1; filed under seal); Cuculich Dep. at 63:3–4, 7–21 ("▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇") (excerpts attached as Exh. 2; filed under seal).[2]

---

[2] That is enough to admit medical associations' guidelines as a reliable source of information, but even so, the guidelines would be admissible because there are other bases for establishing that those publications are reliable authority. *See* Fed. R. Evid. 803(18) (requiring that "the publication is established as a reliable authority by the expert's admission or testimony, by *another expert's testimony, or by judicial notice*" (emphasis added)); Fed. R. Evid. 803(18) advisory committee's note to 1972 proposed rules ("The rule does not require that the witness rely upon or recognize the treatise as authoritative, thus avoiding the possibility that the expert may at the outset block cross-examination by refusing to concede reliance or authoritativeness.").

Similarly, Defendants' experts' reports cite to guidelines, recommendations, and other statements from various medical organizations, including (among others) the American Heart Association, the American College of Cardiology, the Heart Rhythm Society, and the American College of Chest Physicians. *See, e.g.*, Albers Report App'x B; Fleckenstein Report at 44; Khatib Boudreaux-Specific Report at 7–8, 12–14, 18; Peacock Report at 19–23; Piazza Report App'x C; Reiffel Report at 10; Smith Report at 13–14.

What's more, Mr. Boudreaux's prescribing physician explicitly testified that he relied on a guideline promulgated by the American Heart Association, American College of Cardiology, and the Heart Rhythm Society in making his determination to prescribe an anticoagulant. *See* Wong Dep. at 84:18–23, 85:1–2 (excerpts attached as Exh. 7; filed under seal) ("███████████ ███████████ ███████████ ███████████").

\* \* \*

The guidelines, recommendations, and other statements published by reputable medical organizations represent a general consensus of opinion among the medical community. Indeed, both sides' experts and Mr. Boudreaux's prescribing physician rely on such statements. Accordingly, the guidelines and statements that Plaintiffs now seek to exclude are admissible under Rule 803(18)'s learned treatise exception.

    **B.**     **Published guidelines, recommendations, and other statements of reputable medical associations are inherently trustworthy and thus admissible under Rule 807.**

These guidelines, recommendations, and other statements from medical associations also are admissible through the residual exception to the hearsay rule. *See* Fed. R. Evid. 807. The Fifth

Circuit has held that guidelines and standards "are admissible when they are prepared by organizations formed for the chief purpose of promoting safety because they are inherently trustworthy and because of the expense and difficulty involved in assembling at trial those who have compiled such codes." *Johnson v. William C. Ellis & Sons Iron Works, Inc.*, 609 F.2d 820, 822 (5th Cir. 1980) (holding that the passage of the Federal Rules of Evidence did not overturn existing Fifth Circuit precedent permitting admissibility of safety codes); *see also Alexander v. Conveyors & Dumpers, Inc.*, 731 F.2d 1221, 1229 (5th Cir. 1984) ("While safety codes have traditionally been treated as coming within the learned treatise exception provided by Rule 803(18), we have previously indicated that because they are inherently trustworthy and because of the expense and difficulty involved in assembling at trial those who have compiled such codes, they may also be admitted under the residual exception to the hearsay rule, Rule 803(24)." (internal quotation marks omitted)).[3] Materials and official statements published by such organizations are inherently trustworthy because they "generally represent not merely the opinion of one expert in a particular field but a consensus of opinion carrying the approval of a significant segment of an industry." *Frazier v. Cont'l Oil Co.*, 568 F.2d 378, 382 (5th Cir. 1978) (internal quotation marks omitted); *see also Dixon v. Int'l Harvester Co.*, 754 F.2d 573, 581–82 (5th Cir. 1985) (upholding the admissibility of guidelines published by the American National Standards Institute); *Frazier*, 568 F.2d at 382 (same, for the National Fire Protection Association Code).

The guidelines, recommendations, and other statements published or issued by medical associations—on which Plaintiffs' (and Defendants') own experts, and Mr. Boudreaux's prescribing physician, have relied—meet these requirements. Contrary to Plaintiffs' unsupported assertion

---

[3] The residual exception was previously codified at Rule 803(24), but was later recodified at Rule 807. *See* Fed. R. Evid. 807 advisory committee notes on 1997 amendments ("The contents of Rule 803(24) and Rule 804(b)(5) have been combined and transferred to a new Rule 807.").

6

that medical associations are "physician advocacy groups" (Doc. 5920-1, at 2), these organizations were formed for the purpose of promoting patient safety, furthering medical research, and improving patient care. The materials published by medical associations like the AHA and the ACC represent a "consensus of opinion carrying the approval of a significant segment of an industry." *Frazier*, 568 F.2d at 382. The ACC alone has over 47,000 members of cardiovascular professionals.[4] Similarly, the AHA's "quality improvement program," which was instituted to ensure that hospitals follow the latest evidence-based treatment protocols, has enrolled over 2,200 hospitals.[5] And the guidelines promulgated by the AHA, ACC, and HRS—on which Mr. Boudreaux's prescribing physician testified that he relied in making his prescribing decision (*see* Exh. 7)—were written by a large committee of experts and approved by the ACC's board of trustees, the AHA's science advisory and coordinating committee, and the HRS's board of trustees.[6]

Indeed, this Court (like other district courts) has acknowledged the importance of published statements by these medical associations in establishing standards of care. *See, e.g.*, *In re Propulsid Prod. Liab. Litig.*, 208 F.R.D. 133, 147 (E.D. La. 2002) (considering the fact that "[n]either the FDA[] *nor any medical organization* . . . has recommended or suggested that a program of medical monitoring or a group study of all former Propulsid users be undertaken" in ruling on class certification (emphasis added)); *Maurer v. Heyer-Schulte Corp.*, No. CIV.A. 92-3485, 2002 WL 31819160, at *3–4 (E.D. La. Dec. 13, 2002) (considering a statement from the American Medical Association and reports from the National Academy of Sciences Institute of Medicine

---

[4] *See About Membership*, American College of Cardiology, *available at* http://www.acc.org/membership/about-membership.

[5] *See* AMERICAN HEART ASSOCIATION ANNUAL REPORT: 2015-2016, IMPROVING TREATMENT SYSTEMS, at 20, *available at* http://www heart.org/idc/groups/heart-public/@wcm/@cmc/documents/downloadable/ ucm_490853.pdf.

[6] *See, e.g.*, Craig T. January, *et al.*, *2014 AHA/ACC/HRS guideline for the management of patients with atrial fibrillation: executive summary: a report of the American College of Cardiology/American Heart Association Task Force on Practice Guidelines and the Heart Rhythm Society*, J. Am. Coll. Cardiol. 64:2246, 2247–50 (2014) (Exh. 8) (describing the purpose of the guidelines and how the guidelines were determined).

7

Committee on the Safety of Silicone Breast Implants and the International Agency for Research on Cancer in holding that the defendants had met their burden on summary judgment).

Accordingly, these guidelines, recommendations, and statements released by reputable medical associations are admissible under Rule 807's residual exception to the hearsay rule and under Fifth Circuit precedent.

> **C.  Published guidelines, recommendations, and other statements of reputable medical associations may be disclosed to the jury under Rules 703 and 705.**

Guidelines, recommendations, and other statements or literature released by medical associations may also properly be referenced as part of expert testimony in this case.  Under Rule 703, "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted," and the facts and data may be disclosed to the jury "if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect."  Similarly, Rule 705 provides that an "expert may be required to disclose those facts or data on cross-examination."  Because experts for both sides cite to and rely on guidelines or other statements published by medical organizations, these statements may be disclosed to the jury in connection with their opinions.

As discussed above, several experts for Plaintiffs rely on guidelines published by medical associations, and these experts have testified that they follow such guidelines in their clinical practices.  *See* Part A.  Likewise, numerous expert witnesses for Defendants also rely on guidelines and other statements from various medical organizations, including (among others) the American Heart Association, the American College of Cardiology, the Heart Rhythm Society, and the American College of Chest Physicians.  *See id.*  These statements and guidelines are admissible in their own right under Rules 803(18) and 807.  But even if the Court were to determine that they are

otherwise inadmissible, those guidelines, recommendations, or other statements may still be disclosed to the jury as part of an expert's testimony regarding what he or she has relied on "if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703. The medical associations' guidelines and statements under consideration here surely meet that standard. *Cf. Johnson v. Big Lots Stores, Inc.*, Nos. 04-3201, 05-6627, 2008 WL 1930681, at *5 (E.D. La. Apr. 29, 2008) (holding that the probative value of survey data underlying an expert's opinion outweighed any possible prejudicial effect under Rule 703). And, with regard to Plaintiffs' experts, it would be entirely appropriate to elicit the facts or data underlying their opinions—*i.e.*, the guidelines from medical organizations—on cross-examination. *See* Fed. R. Evid. 705.

### D. Published guidelines, recommendations, and other statements of reputable medical associations may be used for impeachment purposes.

Additionally, Defendants' counsel should be able to refer to and question Plaintiffs' expert witnesses about guidelines, recommendations, or other statements issued by medical organizations of which they are members, or to which they cite in their expert reports, in order to impeach their credibility. Numerous medical organizations publish statements that are contrary to the positions taken by Plaintiffs and their experts. For example, many medical associations endorse the efficacy and safety of Xarelto®. *See, e.g.*, 2014 AHA/ACC/HRS guideline for the management of patients with atrial fibrillation at 2251 (giving the highest recommendation to Xarelto for patients who need an anticoagulant) (Exh. 8). By the same token, Plaintiffs' experts concede that no medical association suggests that Xarelto patients should be given a prothrombin time or other test to determine if the patient is at a heightened risk of bleeding. *See* Defs.' Dosing & Monitoring *Daubert* Br. (Doc. 5113), at 16 & n.10 (citing various Plaintiffs' experts' deposition testimony). Defendants are entitled to question expert witnesses about whether they are aware of statements issued by

9

medical associations of which they are members, or to which they have cited in their expert reports, that are contrary to the opinions they are offering in this case. Defendants should also be allowed to question these witnesses about whether they have sought to "correct" the statements issued by these organizations that—if untrue—could put patients at risk. Plaintiffs' experts' failure to do so calls into question the sincerity of their testimony and opinions. At the very least, for impeachment purposes, guidelines, recommendations, and other statements issued by reputable medical association are admissible.

### E. Plaintiffs are incorrect that published guidelines, recommendations, and other statements of reputable medical associations should be excluded under Rule 403.

There is one final point. Plaintiffs contend that the probative value of these statements is outweighed by their "unfairly prejudicial effect and the substantial risk of juror confusion" under Rule 403 (Doc. 5920-1, at 2), but that bald assertion lacks any evidentiary support. Plaintiffs' contention is belied by the fact that (1) experts from both sides cite them in their reports and follow their guidelines in their practice, (2) Mr. Boudreaux's prescribing physician relied on their guidelines and recommendations in making his prescribing decision here, and (3) courts (including this Court) have long recognized that these medical associations are reputable organizations that establish the standard of care in the medical community. Jurors will not be misled regarding the weight due statements or guidelines issued by medical organizations. Accordingly, the Court should not exclude any such guidelines or statements under Rule 403.

## CONCLUSION

For these reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion *in Limine* No. 7.

Respectfully submitted,

BARRASSO USDIN KUPPERMAN FREEMAN & SARVER, L.L.C.

By: /s/ *Richard E. Sarver*
Richard E. Sarver
Celeste R. Coco-Ewing
BARRASSO USDIN KUPPERMAN FREEMAN & SARVER, L.L.C.
909 Poydras Street, 24th Floor
New Orleans, Louisiana 70112
Telephone: (504) 589-9700
rsarver@barrassousdin.com
ccoco-ewing@barrassousdin.com

DRINKER BIDDLE & REATH LLP

By: /s/ *Susan M. Sharko*
Susan M. Sharko
Drinker Biddle & Reath LLP
600 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
susan.sharko@dbr.com

Rodney M. Hudson
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
Telephone: (415) 591-7500
Rodney.hudson@dbr.com

Chanda A. Miller
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2700
Chanda.Miller@dbr.com

IRWIN FRITCHIE URQUHART & MOORE LLC

By: /s/ *James B. Irwin*
James B. Irwin
Kim E. Moore
Irwin Fritchie Urquhart & Moore LLC
400 Poydras Street, Suite 2700

WILKINSON WALSH + ESKOVITZ LLP

By: /s/ *Beth A. Wilkinson*
Beth A. Wilkinson
Jennifer L. Saulino
Jeremy Barber
WILKINSON WALSH + ESKOVITZ LLP
1900 M. Street NW, Suite 800
Washington, DC 20036
Telephone: (202) 847-4000
bwilkinson@wilkinsonwalsh.com
jsaulino@wilkinsonwalsh.com
jbarber@wilkinsonwalsh.com

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: */s/ David E. Dukes*
David E. Dukes
J. Mark Jones
NELSON MULLINS RILEY & SCARBOROUGH LLP
1320 Main Street, 17th Floor
Columbia, SC 29201
Telephone: (803) 799-2000
David.Dukes@nelsonmullins.com
Mark.Jones@nelsonmullins.com

ARNOLD & PORTER KAYE SCHOLER LLP

By: /s/ *Andrew K. Solow*
Andrew K. Solow
Steven Glickstein
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8485
andrew.solow@apks.com
steven.glickstein@apks.com

William Hoffman
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
william.hoffman@apks.com

11

New Orleans, LA 70130
Telephone: (504) 310-2100
jirwin@irwinllc.com

*Attorneys for Defendants Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC, and Janssen Ortho LLC*

BRADLEY ARANT BOULT CUMMINGS LLP

By: */s/ Kevin C. Newsom*
Kevin C. Newsom
Lindsey C Boney IV
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place, 1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8803
knewsom@bradley.com
lboney@bradley.com


CHAFFE MCCALL L.L.P.
By: /s/ *John F. Olinde*
John F. Olinde
CHAFFE MCCALL L.L.P.
1100 Poydras Street, Suite 2300
New Orleans, LA 70163
Telephone: (504) 585-7241
olinde@chaffe.com


*Attorneys for Bayer HealthCare Pharmaceuticals Inc. and Bayer Pharma AG*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 12th day of April, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs by operation of the court's electronic filing system and a copy of the proposed documents to be placed under seal sent to Plaintiffs' Liaison Counsel by email transmission.

/s/     John F. Olinde