UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE ELDON E. FALLON |
| Joseph J. Boudreaux, Jr., et al. v. Janssen et al. Case No. 2:14-cv-02720 | MAGISTRATE NORTH |

DEFENDANTS' JOINT OPPOSITION TO
PLAINTIFFS' MOTION *IN LIMINE* NO. 15 REGARDING FDA APPROVAL AND
IMPACT ON STATE LAW CLAIMS

INTRODUCTION

Defendants oppose Plaintiffs' Motion *in Limine* No. 15 to exclude specific evidence or argument that FDA's approval of Xarelto® as safe and effective (1) absolves Defendants of liability or (2) conclusively establishes that Xarelto is non-defective. Defendants do not intend to argue that they are absolved of liability solely because FDA approved Xarelto as safe and effective, and therefore Plaintiffs' Motion to that point should be denied as moot. To the extent that Plaintiffs' Motion seeks a broader exclusionary ruling as to the meaning of FDA's approval of Xarelto as safe and effective, this evidence and Defendants' compliance with government regulations are highly relevant to Plaintiffs' claims that Defendants were negligent and that Xarelto is unreasonably dangerous and was defectively designed and labeled. Plaintiffs have directly placed at issue the safety of Xarelto, alleging that Xarelto is unreasonably dangerous in design and labeling, and have retained experts to render opinions on what Plaintiffs perceive to be limitations on FDA's approval determination. As a matter of both settled law and fundamental fairness, Defendants must be permitted to offer evidence to defend against these claims. As jurors throughout the country do on a regular basis, the jurors here are completely

capable of considering evidence of FDA approval and, on the facts of this case, determining whether Xarelto was unreasonably dangerous and caused Mr. Boudreaux's alleged injuries.

The evidence is that FDA conducted a rigorous analysis and considered extensive clinical data, studies, and other information in arriving at its decision to approve Xarelto as safe and effective under the standards applicable to the sale of prescription medicines in the United States. The exclusion of evidence and argument about FDA's decision-making process and ultimate determination would be highly prejudicial to the defendants. For these and the reasons set forth below, Plaintiffs' Motion should be denied.

## FACTUAL BACKGROUND

Before a pharmaceutical manufacturer can "introduce or deliver for introduction into interstate commerce" any new drug, it must submit to FDA a New Drug Application ("NDA"). 21 U.S.C. § 355(a). In the NDA, the manufacturer must describe the drug's composition, provide the data establishing the drug's safety and effectiveness, and propose labeling for the drug. *See id.* § 355(b)(1). The drug-development process is "onerous and lengthy." *Mutual Pharm. Co. v. Bartlett*, 133 S. Ct. 2466, 2471 (2013). In order to obtain FDA approval of a new medicine, a manufacturer must conduct three separate testing "phases." Phase I is designed to assess the proposed drug's pharmacokinetics (*i.e.*, the way the human body affects the drug) and pharmacodynamics (*i.e.*, the way the drug affects the body) and to begin to test the range of possible doses. In Phase II, the manufacturer performs more sensitive dose-ranging studies to pinpoint the appropriate doses for particular uses of the medicine (or "indications") in particular patient populations. Finally, in Phase III, the manufacturer conducts large-scale clinical trials to confirm the safety and efficacy of those indications and doses. *See* FDA, *The Drug Development Process: Step 3: Clinical Research*, http://www.fda.gov/ForPatients/Approvals/Drugs/ucm

405622.htm.

If, after a thorough review of the manufacturer's testing data, FDA approves a new drug, its approval covers the medicine's design, composition and dosing, as well as its accompanying labeling.  *See* 21 U.S.C. § 355(b)(1); 21 C.F.R. § 314.105.

FDA exhaustively reviewed the data generated from clinical trials involving Xarelto, engaged in a robust intra-agency debate about Xarelto's safety and efficacy, and approved Xarelto for use in 2011.

## ARGUMENT

In their Motion, Plaintiffs seek to preclude Defendants: (1) "from offering evidence or argument suggesting that Defendants could not have been negligent or are absolved from liability because Xarelto was approved by the FDA" and (2) "from offering evidence or argument suggesting that FDA approval establishes that Xarelto is 'safe and effective.'"  Pls.' Mem. at 2, 4.

Defendants do not intend to argue that they are absolved from liability simply on account of FDA's approval of Xarelto; accordingly, Plaintiffs' Motion on that point should be denied as moot.  To the extent Plaintiffs' Motion goes beyond the exclusion of this limited argument, it should be denied for several reasons.

*First*, evidence of FDA's approval of Xarelto as safe and effective, and Defendants' compliance with government regulations, is highly relevant to Plaintiffs' claims that Defendants were negligent and that Xarelto is unreasonably dangerous because of defects in the design and label.  In approving Xarelto, FDA considered the design and dosing of the medicine, as well as the language that appears in a package insert.  *See Wyeth v. Levine*, 555 U.S. 555, 568 (2009) ("The FDA's premarket approval of a new drug application includes the approval of the exact

3

text in the proposed label." (citing 21 U.S.C. § 355; 21 C.F.R. § 314.105(b))). When FDA approves the design and permits the particular language used in a label, FDA makes a determination that the medicine is safe and effective, and that the language in the label is not false and misleading based on the information submitted to FDA. *See Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228, 1235 (S.D. Fla. 2007) ("The information included in the labeling of a new drug reflects a determination by the FDA that the information is not 'false or misleading.'") (citing 21 C.F.R. § 314.125(b)(6))). Defendants are entitled to present evidence that FDA approved Xarelto and its labeling under the applicable federal regulations. Plaintiffs' own experts acknowledge the importance of FDA approval of a medication:



Ex. 1, Expert Report of David A. Kessler, MD, dated Oct. 13, 2016, at schedule 16 (citing 21 U.S.C. § 355). Whether or not evidence of FDA approval is dispositive in certain circumstances—an issue for the preemption-based summary judgment motions—it is undoubtedly *relevant* to the claims alleged and is the subject of opinions offered by Plaintiffs' experts on the very same issues that are the subject of the present motion.

*Second*, courts overseeing pharmaceutical cases routinely permit the introduction of evidence and argument related to FDA approval in order to assist the jury in determining whether the defendant acted reasonably and assessing the safety of a prescription medicine. *See, e.g.*, *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 191 (S.D.N.Y. 2009) (admitting testimony on FDA regulations to help jurors assess reasonableness of manufacturer's conduct); *Smith v. Wyeth-Ayerst Labs. Co.*, 278 F. Supp. 2d 684, 702 (W.D.N.C. 2003) (allowing testimony regarding regulatory standards); *see also Corrigan v. Methodist Hosp.*, 874 F. Supp. 657, 658 (E.D. Pa. 1995) (evidence regarding FDA regulatory status of pedicle screw admissible). Those decisions merely reflect the underlying rule that "a product's compliance with an applicable product safety statute or administrative regulation is properly considered in determining whether the product is defective . . . ." *Rest. (3d) of Torts: Prod. Liab.* § 4(b) (1998). Courts also generally consider evidence of compliance with federal standards admissible evidence of a defendant's reasonableness. *See id.*, reporter's notes to comment 3 ("The overwhelming majority of jurisdictions hold that compliance with product safety regulation is relevant and admissible on the question of defectiveness, but is not necessarily controlling."); *see also Rader v. Teva Parental Medicines, Inc.*, 795 F. Supp. 2d 1143, 1150 (D. Nev. 2011) ("[S]ince the claims . . . involve . . . the reasonableness of their actions . . . evidence of compliance with FDA regulations is admissible."); *Mahaney ex rel. Estate of Kyle v. Novartis Pharmaceuticals Corp.*, 835 F. Supp. 2d 299, 320-21 (W.D. Ky. 2011) (compliance with FDA requirements "both relevant and probative" of the pharmaceutical manufacturer's defenses, and noting that "other courts have used compliance with the FDA as proof of due care by a pharmaceutical company"); *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 191

(S.D.N.Y. 2009) ("Expert testimony on regulatory compliance will assist the jury in determining whether Merck acted as a reasonably prudent pharmaceutical manufacturer.").

The authority cited by Plaintiffs in their motion, *Dedrick v. Merck & Co. (In re Vioxx Products Liability Litigation)*, 05-2524, slip op. at ¶ 3.x. (E.D. La. Nov. 22, 2006), is not instructive on the admissibility of the argument and evidence at issue in this case. There, the Court excluded "[a]ny reference, comment, or inference that FDA approval of Vioxx means that Merck met its standard of care and/or fulfilled its duty to warn as a matter of law" because it determined "this is argument, not fact." Defendants do not intend to argue that FDA approval absolves Defendants from liability as a matter of law but rather that evidence of FDA approval of Xarelto as safe and effective is *relevant* to the claims and should be considered by the jury in determining liability under state law.

*Finally*, Plaintiffs' assertion that FDA approval "would result in unfair prejudice and confusion of the issues" because "[t]he jury could conclude—improperly—that FDA approval translates into a drug that is not unreasonably dangerous, or inappropriately marketed, or accompanied by insufficient warnings or instructions, and a manufacturer that cannot be held responsible for injuries resulting from use of the drug" is an attempt to create an issue where none exists. Pls.' Mem. at 3. Defendants do not intend to argue that FDA approval absolves them from liability, and the jury is completely capable of understanding FDA's role and responsibilities, and of evaluating the evidence in this case. Plaintiffs' claims here are generally an attempt to "second guess" FDA's repeated approvals of Xarelto, as well as the Agency's conclusions that the relevant label changes—including proposed changes to include instructions on use of a test "off label" to measure prothrombin time for Xarelto, and to add information regarding the recall of the INRatio device and U.S. subgroup data—were not warranted. It is

important to note that Plaintiffs' exhibit list is chock full of FDA documents discussing the safety and efficacy of the medicine throughout the approval process. To keep from the jury that, notwithstanding this robust and open discussion by the regulators, the medicine was found to be safe and effective would be to tell the jury only half the story, and to tell it in a very misleading and prejudicial way. It is Defendants—not Plaintiffs—who will be prejudiced if they are not permitted to present relevant evidence—evidence that will assuredly aid the jury—that FDA approved Xarelto as safe and effective.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion *in Limine* No. 15.

Respectfully submitted,

BARRASSO USDIN KUPPERMAN FREEMAN & SARVER, L.L.C.

By: /s/ *Richard E. Sarver*
Richard E. Sarver
Celeste R. Coco-Ewing
BARRASSO USDIN KUPPERMAN FREEMAN & SARVER, L.L.C.
909 Poydras Street, 24th Floor
New Orleans, Louisiana 70112
Telephone: (504) 589-9700
rsarver@barrassousdin.com
ccoco-ewing@barrassousdin.com

WILKINSON WALSH + ESKOVITZ LLP

By: /s/ *Beth A. Wilkinson*
Beth A. Wilkinson
Jennifer L. Saulino
Jeremy Barber
WILKINSON WALSH + ESKOVITZ LLP
1900 M. Street NW, Suite 800
Washington, DC 20036
Telephone: (202) 847-4000
bwilkinson@wilkinsonwalsh.com
jsaulino@wilkinsonwalsh.com
jbarber@wilkinsonwalsh.com

DRINKER BIDDLE & REATH LLP

By: /s/ *Susan M. Sharko*
Susan M. Sharko
Drinker Biddle & Reath LLP
600 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
susan.sharko@dbr.com

Rodney M. Hudson
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
Telephone: (415) 591-7500
Rodney.hudson@dbr.com

Chanda A. Miller
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2700
Chanda.Miller@dbr.com


IRWIN FRITCHIE URQUHART & MOORE LLC

By: /s/ *James B. Irwin*
James B. Irwin
Kim E. Moore
Irwin Fritchie Urquhart & Moore LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
jirwin@irwinllc.com


*Attorneys for Defendants Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC, and Janssen Ortho LLC*

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: */s/ David E. Dukes*
David E. Dukes
J. Mark Jones
NELSON MULLINS RILEY & SCARBOROUGH LLP
1320 Main Street, 17th Floor
Columbia, SC 29201
Telephone: (803) 799-2000
David.Dukes@nelsonmullins.com
Mark.Jones@nelsonmullins.com


ARNOLD & PORTER KAYE SCHOLER LLP

By: /s/ *Andrew K. Solow*
Andrew K. Solow
Steven Glickstein
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8485
andrew.solow@apks.com
steven.glickstein@apks.com

William Hoffman
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
william.hoffman@apks.com


BRADLEY ARANT BOULT CUMMINGS LLP

By: */s/ Kevin C. Newsom*
Kevin C. Newsom
Lindsey C Boney IV
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place, 1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8803
knewsom@bradley.com
lboney@bradley.com

Case 2:14-md-02592-EEF-MBN   Document 6189   Filed 04/12/17   Page 8 of 10

                                    CHAFFE MCCALL L.L.P.
                                    By: /s/ *John F. Olinde*
                                    John F. Olinde
                                    CHAFFE MCCALL L.L.P.
                                    1100 Poydras Street, Suite 2300
                                    New Orleans, LA 70163
                                    Telephone: (504) 585-7241
                                    olinde@chaffe.com

                                    *Attorneys for Bayer HealthCare*
                                    *Pharmaceuticals Inc. and Bayer Pharma AG*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 12, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to Liaison Counsel for Plaintiffs and Defendants by operation of the court's electronic filing system and served on all other plaintiff counsel via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre-Trial Order No. 17.

*/s/ James B. Irwin*
**James B. Irwin**