UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | * | MDL NO. 2592 |
| | * | SECTION L |
| | * | |
| | * | JUDGE ELDON E. FALLON |
| | * | |
| | * | MAG. JUDGE NORTH |
| ************************************************ | * | |

**THIS DOCUMENT RELATES TO:**
  *ALL CASES*

## ORDER AND REASONS

Before the Court is a Motion for Partial Summary Judgment filed by Defendants Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC, Janssen Ortho LLC, Johnson & Johnson, Bayer Pharma AG, and Bayer Healthcare Pharmaceuticals Inc. (collectively, "Defendants") arguing that Plaintiffs' design defect claims fail under the Louisiana Products Liability Act ("LPLA"). (R. Doc. 5115). Plaintiffs oppose the motion. Having considered the parties' briefs and the applicable law and having heard the parties on oral argument, the Court now issues this Order and Reasons.

### I.  BACKGROUND

This matter arises from damages Plaintiffs claim to have suffered from the manufacture, sale, distribution, and/or use of the medication known as Xarelto, an anti-coagulant used for a variety of blood-thinning medical purposes. The Plaintiffs have filed suits against Defendants throughout the nation. The Plaintiffs allege that they or their family members suffered severe bleeding and other injuries due to Xarelto's allegedly defective design and inadequate warning label, among other things.

The Judicial Panel on Multidistrict Litigation determined that the Plaintiffs' claims involved common questions of fact, and that centralization under 28 U.S.C. § 1407 would serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. Therefore, on December 12, 2014, the Judicial Panel on Multidistrict Litigation consolidated the Plaintiffs' Xarelto claims into a single multidistrict proceeding ("MDL 2592"). MDL 2592 was assigned to Judge Eldon E. Fallon of the United States District Court for the Eastern District of Louisiana to coordinate discovery and other pretrial matters in the pending cases. Subsequent Xarelto cases filed in federal court have been transferred to this district court to become part of MDL 2592 as "tag along" cases. The Court has appointed committees to represent the parties, and discovery has commenced. The Court adopted a discovery plan and set bellwether trials to begin in April 2017. The first bellwether trial involves the Plaintiffs Joseph Boudreaux, a resident of Louisiana.

## II. APPLICABLE LAW

The substantive law applicable to this case is the law of Louisiana. Under this law, a product can be "unreasonably dangerous" (i) in construction or composition; (ii) in design; (iii) for failure to provide an adequate warning; and (iv) for failure to conform to an express warranty. La. Rev. Stat. § 9:2800.54 et seq. To assert a design defect claim under the LPLA, a plaintiff must establish that, at the time the product left the manufacturer's control, (1) "[t]here existed an alternative design for the product that was capable of preventing the claimant's damage" and (2) that the danger of the damage outweighed the burden on the manufacturer of adopting the alternative design." La. R.S. § 9:2800.56. *See Roman v. W. Mfg. Inc.*, 691 F.3d 686, 700-01 (5th Cir. 2012); *Jacobsen v. Wyeth, LLC*, No. 10-823, 2012 U.S. Dist. LEXIS 116887, at *6 (E.D. La. Aug.20, 2012). To prevail on a defective design claim, Plaintiff must also

demonstrate, "that the danger of the damage outweighed the burden on the manufacturer of developing the alternative design." La. R.S. § 9:2800.56.

## III. PRESENT MOTION

Defendants seek partial summary judgment, arguing that Plaintiffs' claims under state law fail because they cannot show that Xarelto's design created an unreasonable risk of harm or that a different design would have produced a different outcome. Specifically, they aver the Plaintiffs fail to meet the two prongs under the LPLA – they fail to prove an alternative design existed and they fail to show the likelihood and gravity of damage because of the design outweighs the burden of adopting an alternate design and the negative effects of that design.

Plaintiffs oppose Defendants' motion and assert that the Defendants mischaracterize Plaintiffs' design defect claims. Their claims, they aver, do not rely on other drugs or on theoretical, untested changes to Xarelto. Instead, Plaintiffs contend Xarelto is unreasonably dangerous in the absence of a particularized assay and/or a reversal agent. Furthermore, in its current form, Xarelto is unreasonably dangerous because its once-daily dosage requires a higher dose to maintain effectiveness for 24 hours, and because there is a high variability in individual plaintiffs' absorption.

### A. Alternate Design

According to Defendants, Plaintiffs put forth two alternate designs, but fail to demonstrate that either design was legally viable or would have prevented Plaintiffs' harm. The first alternate design, they contend, are the other drugs currently on the market, such as warfarin, Eliquis, and Pradaxa. Separate products already available to physicians are not, however, a viable alternate design. To survive under the LPLA, it must be a redesign of the particular product at issue, not a different product with an allegedly safer design. Further, Plaintiffs' expert witnesses cannot say those drugs would have prevented Plaintiffs' injuries.

The second alternate design, Defendants argue, is that Xarelto should have been designed more like warfarin in its dosage amount and regimen, and it should have included a monitoring and a reversal agent. These ideas have not been tested and therefore do not meet the LPLA requirement of specificity and supporting data. Data is required under the LPLA to show feasibility and injury prevention. Further, Plaintiffs expert witnesses cannot say this design would have prevented Plaintiffs' injuries. They admit the different dosage, PT monitoring, and antidote may not have changed Plaintiffs' outcomes.

Plaintiffs contest Defendants' characterization of their design defect claim. Because Defendants did not address their actual claims in the motion, Plaintiffs argue they should not be granted summary judgment and should not be permitted to address Plaintiffs' actual claims in a reply memo. Out of an abundance of caution, however, Plaintiffs demonstrate how their claims survive a summary judgment motion.

Plaintiffs aver Xarelto was defective before it was approved by the FDA because an alternate design existed at that time but was not given to the FDA for approval. The specialized assay that was available and is used and included on the labels in various foreign markets would have prevented Plaintiffs' injuries. Because they did not develop the assay for the American market, they failed to avoid the risks associated with dosing and absorption variability. This assay, Plaintiffs contend, was in existence at the time of FDA approval and was used in Defendants' own studies. Further, an antidote was designed and tested though not yet commercially available in the United States. The alternate designs Plaintiffs seek are specific and actually in existence, not hypothetical, conceptual suggestions.

Further, Plaintiffs contend that under the LPLA they do not need to show the alternate design would have prevented Plaintiffs' injuries; they only need to show the design would have

4

made the damages significantly less likely. Further, the LPLA permits consideration of whether a warning would have impacted damages. Plaintiffs aver there is no doubt that including PT tests on the label would have helped minimize risk and injury. Plaintiffs provide evidence as to how the PT test or particularized assay would have helped prevent Plaintiffs injuries, and also demonstrate how the lack of a reversal agent delayed Plaintiff Orr's surgery and prevented the mitigation of damages. Their experts and Plaintiffs' treating physicians agree that an assay and antidote would have made their injuries significantly less likely.

### B. Risk-Utility Test

Defendants also contend that Plaintiffs fail to prove the risk avoided by an alternate design would outweigh the cost of switching to that design and the decrease in Xarelto's utility. They fail to offer expert testimony regarding the impact of proposed alternate designs on the availability of Xarelto and its utility, or the burdens associated with adopting a proposed alternate design. They do not address possible new risks, adverse effects of delay during redesign, manufacturing costs, or the effect on Xarelto's utility.

Plaintiffs argue the question of whether a defect was unreasonably dangerous is a question of fact for the factfinder. The same is true, they aver, for a risk-utility analysis. Defendants' conduct shows that the burden of the use of a particularized assay, namely an anti-factor Xa assay, is minimal compared to the risk of bleeding. Defendants used such an assay in their clinical trials and it is available for use and on the label in foreign jurisdictions. Further, the cost of such an assay is minimal. As to a reversal agent or antidote, Plaintiffs contend that Defendants had already tested an antidote at the time of FDA approval and found it worked. Defendants themselves noted a positive risk-benefit analysis associated with the antidote and said it would have actually been a commercial advantage because doctors would be more

5

confident in and therefore more likely to prescribe Xarelto. Accordingly, Plaintiffs contend their claims, though unaddressed by Defendants' motion, survives summary judgment.

### C. Analysis

This Court interprets Plaintiffs' theory to be based on the risks associated with Xarelto's dosing and absorption variability. Plaintiffs contend that various tests are available to assay, reveal, or detect each Patient's reaction to or processing of Xarelto so that doctors are properly informed as to whether to prescribe Xarelto as well as the proper dosage for a particular patient. In addition, Plaintiffs claim that an alternate design only needs to minimize damages, not remove them all together. This Court finds that whether a defect is unreasonably dangerous is a question of fact for the jury and inappropriate for summary judgment.

## IV. CONCLUSION

For the aforementioned reasons, **IT IS ORDERED** that Defendants' Motion for Partial Summary Judgment (R. Doc. 5115) is **DENIED**.

New Orleans, Louisiana, this 17th day of April, 2017.

_____
UNITED STATES DISTRICT JUDGE