UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: XARELTO (RIVAROXABAN) | * | MDL 2592 |
| PRODUCTS LIABILITY LITIGATION | * | |
| | * | SECTION L |
| THIS DOCUMENT RELATES TO: | * | |
| ***Boudreaux v. Bayer Corp., et al.*** | * | JUDGE ELDON E. FALLON |
| **Case No. 2:14-cv-02720** | * | |
| | * | MAGISTRATE JUDGE NORTH |

* * * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO QUASH SUBPOENA
TO APPEAR AND TESTIFY AT A HEARING OR TRIAL IN A CIVIL ACTION**

## I.     INTRODUCTION

Plaintiffs oppose Defendants' Motion to Quash Subpoena (Rec. Doc. 6277) related to Dr. Gary Peters. Dr. Peters is a Janssen employee who was directly involved in the development of Xarelto for marketing in the United States, as discussed more fully below. Given the importance of the MDL's premier bellwether trial, Defendants' efforts to obstruct the proceedings are not well taken.  For the reasons set forth below, the motion should be denied.

## II.     FACTUAL BACKGROUND

Dr. Peters is a Clinical Senior Director in the Cardiovascular Department at Janssen Pharmaceuticals, L.L.C. and/or its related companies (collectively "Janssen"), and is formally trained as a medical doctor. Dr. Peters has worked on Xarelto for at least the past ten years  and  was involved in the initial analysis and selection of  the Xarelto dosing regimens for various indications (including  stroke  prevention  in  patients  with  atrial  fibrillation)  and discussions with  the  FDA  regarding same.

Dr. Peters also was involved in the conduction of ROCKET-AF, the pivotal Phase III clinical trial that serves as the basis for the largest Xarelto indication, in terms of sales. Among other important company players, Dr. Peters worked closely with Christopher Nessel, Vice President, Franchise Medical Leader for Cardiovascular at Janssen, who also played an important role in the ROCKET-AF clinical trial. Many of the exhibits marked in Dr. Nessel's deposition show that Dr. Peters had been included in a small inner-circle of decision-makers at the company. Specifically, many of those documents involved the internal assessment of issues involving the malfunction of the now-recalled, defective INRatio device used to obtain INR results during the trial ROCKET-AF trial, and the clinical assessment and implications of those unfortunate patients who suffered relevant outcome events.

Equally important to his role in managing issues that arose during the ROCKET-AF trial involving the INRatio device, Dr. Peters also was intimately involved in conversations surrounding the potential for a second ROCKET-AF trial (known as the ROCKET "booster" or "ROCKET 2"), with key players such as Dr. Nessel and Dr. Robert Califf, the former Vice Chancellor of Research at Duke University, who was the primary investigator of the ROCKET trial and was recently appointed Commissioner of the FDA. In particular, after the conclusion of the ROCKET trial, Dr. Califf expressed clear concern that the atrial fibrillation dose (20mg) was "too high," and recommended a "very simple head to head [which] could start with 2 doses of riva and morph to a comparative trial when the best dose emerges as a winner." In fact, Dr. Peters personally solicited a detailed proposal from Dr. Califf, which paved the way for ROCKET 2, which had multiple iterations, including a head-to-head trial with Eliquis, another novel oral anticoagulant, originally proposed by Dr. Peters himself.

It is clear from his discussions, both internally and with Dr. Califf, that Dr. Peters was in favor of performing the ROCKET 2 study, and felt that Dr. Califf's proposal could settle the debate of a once-daily versus twice-daily dosing regimen, which had been ongoing since the beginning of development and continued even after the approval of Xarelto, and in which Dr. Peters was intimately involved. Ultimately, however, it seems the ROCKET 2 proposal was abandoned after an inter-company discussion. As evident from even a cursory review of his emails, Dr. Peters was one of a few key players involved in the discussions leading up to the decision on whether to conduct ROCKET 2, in any of its proposed forms, and could therefore offer invaluable testimony regarding the genesis, and demise, of ROCKET 2 and its implications for Xarelto's ongoing management and development.

## III.   ARGUMENT

### A.   Dr. Peters will not be required to travel out-of-state and more than 100 miles to testify at trial.

Upon consideration of Defendants' argument that the subpoena that was issued upon Dr. Peters was directed to the wrong venue, Plaintiffs will agree to accommodate the witness, and will not require him to travel beyond the district in which he resides and works. Thus, Plaintiffs will issue and serve a modified subpoena in the form attached as Exhibit 1, which will direct Dr. Peters to appear in the Eastern District of Pennsylvania (in Philadelphia, where he was deposed). This is within the state in which he works and resides (Pennsylvania), within 30 miles from the city in which he works (Spring Hill), and within 37 miles from the city in which he resides (West Chester). Dr. Peters' testimony can then be broadcast live from that federal courthouse to the courtroom in the Eastern District of Louisiana. Thus, there will be complete compliance with Fed. R. Civ. P. 45(c)(1), and the entire first section of Defendants' brief is moot.

**B.      Rules 43(a) and 45(c)(1) empower this Court to compel Dr. Peters to testify via live testimony broadcasted from Pennsylvania.**

Under Rule 45 of the Federal Rules of Civil Procedure, this Court may issue a subpoena for a witness to appear at trial either: (a) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or (b) within the state where the person resides, is employed, or regularly transacts business in person if he or she is a party or a party's officer, or if he or she is commanded to attend the trial and would not incur substantial expense in doing so. Fed. R. Civ. P. 45(c)(1). Further, Rule 43 provides:

> At trial, the witnesses' testimony must be taken in open court unless a federal statute, the Federal Rules of Evidence, **these rules**, or other rules adopted by the Supreme Court provide otherwise. **For good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location.**

Fed. R. Civ. P. 43(a) (emphasis added).

Similar to Defendants here, the defendants in *In re Actos (Pioglitazone) Prods. Liab. Litig.,* No. 12-cv-00064, 2014 WL 107153 (W.D. La. Jan. 8, 2014), argued that Rules 43 and 45 could not be read together to allow the court to order video testimony that would take place outside of the court's subpoena power, even for a party's employee. But the *Actos* court rejected this argument: "Nothing in Rule 45, itself, indicates the Rule must be read in the vacuum Defendants argue; to the contrary, Rule 45 must be read *in tandem with* Rule 43 and as a part of a harmonious whole that is the Federal Rules of Civil Procedure." *Id.* at *9. In doing so, the court explained that Rule 43 allows for an appearance in open court by live video feed under certain circumstances, and Rule 45 "provides the mechanism to secure such appearance." *Id.* at *9.

Reading these rules *in pari materia,* as a whole, it is clear that this Court can subpoena witnesses under Rule 45 to testify at trial by video transmission, regardless of the point of origin for that video transmission:

> A fair reading of the definition in Rule 43 of an appearance 'IN OPEN COURT' 'at trial,' specifically includes an appearance *via* live transmission, together with a fair reading of the scope of activities permitted to be ordered by subpoena under Rule 45 (specifically, a person may be ordered to 'attend a trial'), establishes that the two Rules embrace and address the concept of appearance at 'trial' to include contemporaneous live transmission from another location at the location of the Court. One would not argue that when using a written deposition or video deposition the witness is not appearing at trial 'by way of deposition,' at the location of the trial, notwithstanding the fact that the deposition was taken at another location. Nor would one argue Rule 45 would not allow the use of a subpoena to assure that 'appearance by deposition.' Here, contemporaneous transmission is now equally incorporated as proper trial procedure and an acceptable means of appearing at court and trial, as were written and video depositions, respectively, in the past. The subpoena power of Rule 45 of the Federal Rules of Civil Procedure is merely employed to facilitate yet another, now permitted, trial procedure and method of appearance. …
>
> The Defendants' argued interpretation of the safeguards required for use of Rule 43 would narrow the scope of the authority granted to federal courts by allowing contemporaneous transmission **only** when the absent witness agrees to appear voluntarily; that is not the limitation(s) included within Rule 43 of the Federal Rules of Civil Procedure. No such limitation appears on the face of Rule 43, nor is found within the comments addressing the Rule, and this Court will not impose such an unjustified gloss on the rule by jurisprudential fiat.

*Id.* (emphasis in original).

The purpose behind Rule 45 is to avoid an undue expense and inconvenience on a witness by requiring the witness to travel unreasonably far for a deposition, hearing, or trial. In the situation where testimony by live video feed is warranted, however, this concern is moot, since the witness is able to testify from a location at or near the witness's home or office. Accordingly, ordering live

video testimony "would ***benefit*** and ***not undermine*** the inherent goal of our system of justice." *Id.* at *6 (emphasis in original).

Similar reasoning was used by the court in the *DePuy* litigation, when ordering testimony via contemporaneous transmission:

> Plaintiffs do not seek to employ Rules 43 and 45 to obtain contemporaneous transmission of live testimony *in lieu* of in-court testimony. Rather, Plaintiffs seek to compel contemporaneous transmission of live testimony where a witness under Defendants' control is unable to appear live in court. Without this contemporaneous transmission to provide live testimony, the jury would be left with less reliable deposition transcripts and video. Plaintiffs' motion serves the inherent goal of Rule 43, which is to provide the jury with a more truthful witness. *See* Fed. R. Civ. P. 43 advisory committee's note (1996 amendment) ("The very ceremony of trial and the presence of the factfinder may exert a powerful force for truthtelling.").

*In re: DePuy Orthopaedics, Inc.,* No. 3:11-md-2244, slip op. at 5 (N.D. Tex. Sept. 20, 2016) (attached as Exhibit F to Defendants' Brief).

The *Roundtree* case, on which Defendants rely, erroneously considered video transmission as moving the trial to the physical location of the person testifying. *See Roundtree v. Chase Bank USA, N.A.,* No. 13-cv-239, 2014 WL 2480259, *1-2 (W.D. Wash. June 3, 2014). Indeed, the plain language of Rule 43 treats videoconferencing as equivalent to testimony in open court at the place of trial. *See* Fed. R. Civ. P. 43(a) (permitting "testimony in open court by contemporaneous transmission from a different location").

Courts have likewise considered a live video feed to be testimony at trial. *See, e.g., Lopez v. NTI, LLC*, 748 F. Supp. 2d 471, 480 (D. Md. 2010) (finding no prejudice to defendants in using videoconferencing, because "[e]ach of the witnesses will testify in open court, under oath, and will face cross-examination"); *FTC v. Swedish Match North Am., Inc.*, 197 F.R.D. 1, 2 (D.C. 2000) (finding same and noting "no practical difference between live testimony and contemporaneous

video transmission based upon [his] experience."). Thus, the use of videoconferencing allows the witness to testify at trial without running afoul of the geographical limitations for subpoenas specified in Rule 45. *See also* Fed. R. Civ. P. 45(c)(1), Advisory Committee Note to the 2013 Amendments ("When an order under Rule 43(a) authorizes testimony from a remote location, the witness can be commanded to testify from any place described in Rule 45(c)(1)."); Fed. R. Civ. P. 1 (directing that rules "be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding").

Because a plain reading of the Federal Rules of Civil Procedure enables this Court to subpoena Dr. Peters to testify via videoconference from a location within 100 miles of his home and office, this Court has the power to compel him to testify at trial.

### C. Good cause and compelling circumstances, and no associated unfair burden or prejudice, are associated with compelling Dr. Peters to testify via live <u>testimony broadcasted from Pennsylvania.</u>

Live testimony is preferable to deposition testimony for a variety of reasons. For instance, it allows juries to engage in more robust credibility assessments. *See, e.g.*, *Ramada Worldwide, Inc. v. Bellmark Sarasota Airport,* No. 05-cv-2309, 2006 WL 1675067, at *4 (D.N.J. June 15, 2006) (explaining "live testimony is recognized as especially preferable over depositions where the factfinder will be making credibility determinations"); *Iorio v. Allianz Life Ins. Co.*, No. 05-cv-633, 2009 WL 3415703, at *5 (S.D. Cal. Oct. 21, 2009) (acknowledging "inherent disparity between depositions and live testimony, especially when credibility is at issue"); Fed. R. Civ. P. 43, Advisory Committee Note to the 1996 Amendments ("The very ceremony of trial and the presence of the factfinder may exert a powerful force for truthtelling.").

Thus, "deposition testimony is only a substitute, not to be resorted to if the witness can appear in person." *Banks v. Yokemick*, 144 F. Supp. 2d 272, 288 (S.D.N.Y. 2001); *see also*

*Estate of Spear v. Comm'r*, 41 F.3d 103, 116 (3d Cir. 1994) ("[L]ive testimony is generally preferable to videotaped testimony"); *COA Network, Inc. v. J2 Global Commc'ns, Inc.*, No. 09-cv-6505, 2010 WL 2539692, at *4 (D.N.J. Jun. 17, 2010) ("Live testimony is generally preferred and parties should not unnecessarily be forced to rely on trial by deposition."); *Flores v. NJ Transit Rail Operations, Inc.*, No. 96-cv-3237, 1998 WL 1107871, at *2 (D.N.J. Nov. 2, 1998) ("Although the increasing availability and fidelity of videotaped depositions has provided a better alternative than reading a written transcription, the preference for live testimony is still endorsed by federal courts."); *Sherwood Grp., Inc. v. Rittereiser*, No. 90-cv-2414, 1990 WL 159925, at *6 (D.N.J. Oct. 17, 1990) ("[L]ive testimony is preferable to deposition testimony"); *accord Buchwald v. Renco Grp., Inc.*, No. 13-cv-7948, 2014 WL 4207113, at *2 (S.D.N.Y. Aug. 25, 2014) ("[T]he preference for live testimony" is "dictated by . . . common sense").

This alone, especially considering the importance of Dr. Peters as a witness in this litigation, sufficiently shows "good cause and compelling circumstances." Additionally, when determining whether there is good cause and compelling circumstances, other courts have considered the following factors:

> (1) the control exerted over the witness by the defendant; (2) the complex, multi-party, multi-state nature of the litigation; (3) the apparent tactical advantage, as opposed to any real inconvenience to the witness, that the defendant is seeking by not producing the witness voluntarily; (4) the lack of any true prejudice to the defendant; and (5) the flexibility needed to manage a complex multi-district litigation.

*In re Vioxx Prods. Liab. Litig.*, 439 F. Supp. 2d 640, 643 (E.D. La. 2006). Here, all of these factors weigh in favor of allowing live testimony by video of Dr. Peters.

In regards to the first factor, Dr. Peters continues to be employed by the Janssen Defendants, and thus Janssen may exert significant control over him.

As to the second factor, the Xarelto MDL continues to be a complex litigation involving thousands of plaintiffs from across the country. In particular, the *Boudreaux* bellwether case will influence the claims of plaintiffs in future bellwether cases, and inform thousands of other Xarelto cases. Further, the corporate deposition at issue was comprised of massive amounts of testimony. While designations from the transcript have been made, any videotaped deposition testimony would require splicing together testimony from different examiners, creating more work for the lawyers and the Court on the eve of trial, and disserving the jury in its presentation.

As for Defendants' argument that permitting live video testimony could provide technological disruptions, that argument is unavailing. Certainly, the editing and playing of spliced deposition testimony would also introduce potential technological disruptions, as well as require this Court to spend time ruling on more deposition designations and objections. Since live testimony is always better than taped testimony, the fact that the outcome of this trial will bear on many more cases beyond the bounds of this consolidated trial continues to weigh in favor of allowing Dr. Peters to testify live via video.

For the third and fourth factors, Defendants' opposition is a purely tactical decision, as there can be no real claim of undue prejudice. Courts have been allowing live testimony via video for decades, and this technology is easier to use now, more than ever. While the parties may choose to send counsel to the witnesses, while also having counsel in the courtroom, any related expenses should be considered a normal trial expense, and will be minimal compared to the overall cost of this litigation. This is especially true considering that statewide litigation for Xarelto, which has been coordinated to some degree with this MDL, also is pending in Philadelphia. As such, counsel located in Philadelphia likely would be available to assist in this part of the litigation from Philadelphia.

Finally, with respect to the fifth factor, live video transmission will promote comprehensiveness and coherency, especially when the alternative is spliced, edited, and recompiled clips of depositions. This is particularly important here, where the deposition was taken exactly one year ago, on April 20, 2016. This was long before discovery was completed, and long before any experts submitted reports or sat for depositions, so Dr. Peters was not, and could not have been, deposed on all material matters.

In *Actos*, the court noted that assumptions about the witnesses' unavailability were not even necessary, because there were "ample other reasons" to justify granting the plaintiffs' request. *Actos*, 2014 WL 107153, at *7 n.18. The court noted that the plaintiffs could not command the witnesses' appearance in open court in any way other than by video transmission. *Id*. at *7. Further, the fact that the case was a complex, multi-party, multi-state litigation that required flexible management weighed heavily in favor of granting the plaintiffs' motion, as they did in *Vioxx* and *Washington Public*. *Id*. at *8. "Even more persuasive" was the fact that live video would allow the jury to "see" the witness, while avoiding the shortcomings of deposition video recorded prior to developments leading up to and during the trial. *Id*. Similarly, all of these factors are present here.

### D.   Defendants' cases are not compelling.

Many of the cases cited by Defendants are inapposite. For example, in some of the cited cases, remote testimony via contemporaneous transmission was never offered as an option. *See, e.g., Twyman v. S&M Auto Brokers,* No. 16-cv-4182, 2016 WL 6082357, at *5 (N.D. Ill. Oct. 18, 2016); *E.E.O.C. v. JetStream Ground Servs., Inc.,* No. 13-cv-02340, 2016 WL 1178668, at *3 n.5 (D. Colo. Mar. 28, 2016); *Ishee v. Fed. Nat'l Mortg. Assoc.,* No. 13-cv-234, 2014 WL 12638499, at *2 (S.D. Miss. Nov. 13, 2014). *See also Prideaux v. Tyson Foods, Inc.,* 387 Fed. App'x 474, 479 (5th Cir. 2010) (offered contemporaneous option was telephone) *Matovski v. Matovski,* No. 06-cv-4259, 2007 WL 1575253, at *2-3 (S.D.N.Y. May 31, 2007) (same).

In many other cases cited by Defendants, testimony via contemporaneous transmission was criticized or deemed unacceptable due to its inferiority to *live testimony*. The rulings did not address whether a witness who had been previously deposed could be compelled to testify a second time via contemporaneous transmission. In fact, the opposite situation existed in some of those cases, in that the moving party was criticized for not previously obtaining deposition testimony from a witness who was allegedly unavailable to testify live. *See, e.g., Eller v. Trans Union, LLC,* 739 F.3d 467, 477-79 (10th Cir. 2013); *United States v. Thompson,* 599 F.3d 595, 600 n.4 (7th Cir. 2010); *Humbert v. O'Malley,* 303 F.R.D. 461, 466 n.24 (D. Md. 2014); *Niemeyer v. Ford Motor Co.,* No. 09-cv-2091, 2012 WL 5199145, at *3 (D. Nev. Oct. 18, 2012); *Rodriguez v. SGLC, Inc.,* No. 08-cv-01971, 2012 WL 3704922, at *2-3 (E.D. Cal. Aug. 24, 2012); *Thomas v. O'Brien,* No. 08-cv-0318, 2011 WL 5452012, at *4 n.8 (N.D.N.Y. Nov. 8, 2011); *Sille v. Parball Corp.,* No. 07-cv-00901, 2011 WL 2680560, at *1-2 (D. Nev. July 8, 2011); *Gulino v. Bd. of Educ.,* No. 96-cv-8414, 2003 WL 1191349, at *1 (S.D.N.Y. Mar. 13, 2003).

Other cited cases suggested that the rulings might have been different if MDL cases had been involved. *See, e.g., Aranda v. Caribbean Cruise Line, Inc.,* No. 12-cv-4069, slip op. at 2 (N.D. Ill. Aug. 30, 2016) (attached as Exhibit E to Defendants' Brief); *Williams v. Arctic Cat, Inc.,* No. 11-cv-445, 2014 WL 1028476, at *5 (N.D.N.Y. Mar. 13, 2014). While Defendants claim that such a result violates the Rules Enabling Clause, that is inaccurate. No one is arguing for different rules in different cases. Rather, the application of the law to the facts results in a different outcome, depending in part on whether MDL cases are involved, which by no means violates the Rules Enabling Clause.

Finally, reasonable case-specific explanations for rejecting testimony via contemporaneous transmission was given in other cited cases. For example, in *Passmore v.*

*Barrett,* No. 13-cv-290, 2016 WL 1253541 (N.D. Ind. Mar. 31, 2016), the court relied in part on the fact that to allow such testimony would require the witness to sit for an extended period, which contra-indicated the recommendation of his doctor, and was unnecessary given his past deposition testimony. *See id.* at *3. Another cited case, *Ping-Kuo Lin v. Horan Capital Mgmt., LLC*, No. 14-cv-5202, 2014 WL 3974585 (S.D.N.Y. Aug. 13, 2014), did not involve the testimony of a party's employee, but instead involved the testimony of a *non-party* at an arbitration hearing. *Id*. at *1-2.

## IV.   CONCLUSION

For the reasons set forth above, Defendants' motion should be denied.

Respectfully submitted,

Dated: April 20, 2017

*/s/ Leonard A. Davis*
Leonard A. Davis, Esq. (Bar No. 14190)
**HERMAN, HERMAN & KATZ, LLC**
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Email: ldavis@hhklawfirm.com

Gerald E. Meunier (Bar No. 9471)
**GAINSBURGH BENJAMIN DAVID MEUNIER & WARSHAUER, LLC**
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
Email: gmeunier@gainsben.com

***Plaintiffs' Liaison Counsel***

12

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on April 20, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs and Defendants by operation of the court's electronic filing system and served on all other plaintiff counsel via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre- Trial Order No. 17.

*/s/ Leonard A. Davis*
**LEONARD A. DAVIS**