**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **IN RE: XARELTO (RIVAROXABAN)** ) ) ) | **MDL NO. 2592** |
| | **SECTION: L** |
| **PRODUCTS LIABILITY LITIGATION** ) ) | |
| | **JUDGE ELDON E. FALLON** |
| ) ) | **JUDGE NORTH** |

**THIS DOCUMENT RELATES TO THE FOLLOWING CIVIL ACTION NOS.:**

| | |
|---|---|
| JAMES DODSON as POA for CHARLES DODSON v. JANSSEN RESEARCH AND DEVELOPMENT LLC f/k/a JOHNSON AND JOHNSON PHARMACEUTICALS RESEARCH AND DEVELOPMENT LLC, | 2:16-CV-16574 |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' SECOND MOTION FOR AN EXTENSION OF TIME TO SATISFY PLAINTIFF FACT SHEET DEFICIENCIES OR IN THE ALTERNATIVE FOR THE COURT TO CONDITIONALLY DISMISS THE CASE WITH FINAL DISMISSAL IN 60 DAYS IF NO FURTHER ACTION BY PLAINTIFF**

In support of Plaintiffs' Motion for Extension of Time to Satisfy Plaintiff Fact Sheet Deficiencies, Plaintiffs state the following:

1) Plaintiffs filed the Complaint in the above captioned case on November 23, 2016.

2) Plaintiffs subsequently filed the Plaintiff Fact Sheet.

3) Plaintiff has one deficiency – an unsigned verification page.

4) The injured party, Charles Dodson, is a fairly high-functioning adult. Plaintiffs' counsel previously was under the belief that Mr. Dodson needed help with most daily activities. Counsel has very recently learned that he needs little to no assistance with daily living.

5) The persons who previously assisted Charles had been his brother, James, and his

sister-in-law, S.I.L[1], who is the second wife of James. For privacy reasons, and with the exception of his brother James, who is named in the caption of the lawsuit, initials will be noted in place of names, for certain persons referenced hereafter in this memorandum. Should the Court wish to have the actual names, they will be provided to Your Honor with a respectful request to do so under seal. Following the filing of the complaint, Plaintiffs' counsel believed she continued to have an accurate address for Charles and his brother James, but was unsuccessful in attempts to reach his brother, James, who was Charles' purported Power of Attorney. Counsel also attempted to reach James' wife, sister-in-law to Charles (hereafter S.I.L), to have the Declaration page executed by either Charles or his brother, James. Certified Mail was sent, return receipt requested, after attempts at phone contact were fruitless. This was returned signed by "Charles" on January 14, 2017, but counsel thereafter received no response from Charles, James or S.I.L. All available phone numbers were again called, with each being disconnected with no further information available. A records search was done by counsel, resulting in discovery of only the same former address. Attempts were also made to find brother James or other relatives. All were unsuccessful at that time. The first private investigator was thereafter hired, who was able to find contact information for a previous wife of James, long since divorced (hereafter "Ex-wife"). Counsel contacted Ex-wife, who reluctantly gave up some information but would not reveal where Charles could be located. She was protective of him and revealed little information. She did advise that James had died in late 2016. Ex-wife did reveal that she believed S.I.L (James' wife) was in the custody of the State of Oklahoma authorities, for allegedly committing a crime against Charles. She further relayed that S.I.L had, for a short time after James' death, been a caregiver to Charles

---

[1] Plaintiffs' counsel has assigned pseudonyms to persons contacted in an effort to protect the identity. Should the Court require their identities, Plaintiffs' counsel will promptly provide them.

until she allegedly went in to the custody of the State of Oklahoma authorities. Ex-wife said she thought thereafter Charles had a breakdown and went into state care at an unknown facility. She would provide no further information at that time.

6) Armed with this new information, counsel attempted to find an obituary for James and any relevant information that may lead to S.I.L. No obituary could be found and counsel to date does not know the actual death date of James. No search information could be located to either confirm the custody status or not of S.I.L, nor could S.I.L be located at all, through a further records search. Subsequently, Ex-wife contacted counsel and advised she thought Charles was no longer institutionalized, and provided counsel with the name of a social worker for Charles. Ex-wife said she had no new phone number for Charles and did not think he had a phone.

7) Counsel's office contacted Charles's assigned social worker, SW1, of the Oklahoma Department of Human Services.

8) Counsel learned that Charles was in fact under the care of social services at some point in time after James' death, but that he was no longer under the care of the State of Oklahoma. Privacy rights precluded counsel from learning who may now be Charles' guardian or even to know whether in fact Charles even has a guardian. Counsel was directed to contact the Legal Department of Oklahoma Department of Human Services ("DHS Legal").

9) Multiple messages left with DHS legal went unanswered. Upon approximately a fourth call, contact was made with ATTY1, an attorney of DHS Legal. ATTY1 advised that he could not release the information except via an Oklahoma court order; a subpoena would not be enough. However, ATTY1 was willing to look up any contact for Charles and forward him or them our information to contact us. Counsel's contact information was relayed to

ATTY1 with a request to provide it to Charles and/or his "guardian", if there is one. Counsel has yet to hear from Charles or his "guardian", if he even has one.

10) Counsel then attempted to hire a private investigator located near Mr. Dodson's home. Contact to the two agencies listed online and in the area of the address for Mr. Dodson were unsuccessful, as neither is currently operating as a private investigation agency. Following several calls to a local business in that area, counsel was subsequently able to find a retired Oklahoma State Police Detective who works as a private investigator (hereafter P.I.2) in the State of Oklahoma, Oklahoma City, and who was willing to attempt to contact Charles in person at his last known address. On the evening of April 24, 2017, P.I.2 visited Charles's residence. P.I.2 informed counsel's office that he will not be able to get Mr. Charles Dodson to answer his door. He advised that Charles had barricaded himself inside his home, had placed a television set and an air conditioning unit in front of his door and left signs outside indicating that he did not want to be bothered by anyone.[2] *See attached Exhibits A (3 photographs of the door, signs and barricades at the front of the residence).* The investigator confirmed with a Neighbor to Charles, that Charles Dodson does live at that residence (again), and that he rarely comes out of the home. She stated that she saw him briefly come out a few days ago. She said he is a recluse and does not wish anyone to bother him.

11) Given the circumstances, counsel does not believe Charles would be willing to execute the signature page. Counsel requests the Court allow 60 days, until June 25, 2017, to verify that Charles no longer wants to pursue his claim. Armed with this newly discovered information regarding Mr. Dodson, counsel has sent one last set of letters to Mr. Dodson today, requesting his cooperation in his own lawsuit and advising him that the case will be dismissed

---

[2] Exhibit A, B, C.

permanently if he does not provide the documentation requested (verification page, after confirming the accuracy of the Plaintiff Fact Sheet). Alternatively, if the Court is inclined to dismiss the instant matter, counsel requests that it be conditionally dismissed without prejudice for 60 days, until June 25, 2017, at which time the case will be dismissed with prejudice if counsel is unable before that date to gain Mr. Dodson's signed verification page.

12) Plaintiffs are not requesting an extension for purposes of delay and will submit the necessary executed Declaration as soon as it is received from Plaintiff.

WHEREFORE, for the reasons set forth above, Plaintiffs respectfully move this Honorable Court for an extension of the Amended Plaintiff Fact Sheet Deficiency Deadline until June 25, 2017, or in the alternative, to conditionally dismiss the matter without prejudice until June 25, 2017, at which time it will be dismissed with prejudice if an executed verification page is not received by Defendants by that date.

Respectfully submitted,

MARC J. BERN & PARTNERS LLP

By:/s/ *Debra J. Humphrey*
Debra J. Humphrey (5050448)
60 East 42nd St., Suite 950
New York, NY 10165
(212) 702-5000
(212) 818-20164 (Fax)
dhumphrey@bernllp.com
Counsel for Plaintiffs

April 25, 2017

**CERTIFICATE OF SERVICE**

The foregoing Plaintiffs' Memorandum in Support of Motion for an Extension of Time to Satisfy Plaintiff Fact Sheet Deficiencies has been electronically filed via ECF/Pacer and thereby served upon all counsel of record this 25th day of April, 2017.

        MARC J. BERN & PARTNERS LLP

        By:*/s/ Debra J. Humphrey*
        Debra J. Humphrey (5050448)
        60 East 42nd St., Suite 950
        New York, NY 10165
        (212) 702-5000
        (212) 818-20164 (Fax)
        dhumphrey@bernllp.com
        Counsel for Plaintiffs