UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE ELDON E. FALLON |
| Joseph J. Boudreaux, Jr., et al. v. Janssen et al. Case No. 2:14-cv-02720 | MAGISTRATE NORTH |

### DEFENDANTS' MOTION TO STRIKE TESTIMONY OF DR. DAVID A. KESSLER OR, IN THE ALTERNATIVE, TO GIVE A CURATIVE INSTRUCTION BASED ON PLAINTIFFS' JUDICIAL ADMISSIONS

Defendants respectfully move to strike the testimony of Dr. David A. Kessler that he "do[es]n't know" whether it was FDA, or someone else, who struck the proposed PT language from the Xarelto label prior to FDA approval, as evidenced in Defendants' Exhibit No. DX5548. On numerous occasions before trial, both in written pleadings and at oral argument before the Court, Plaintiffs have conceded that the strikethroughs are FDA's. Plaintiffs' prior concessions are judicial admissions that are "binding" and bar Plaintiffs from now disputing (through Dr. Kessler) that FDA struck Janssen's proposed PT language from the Xarelto label pre-approval. *Martinez v. Bally's La., Inc.*, 244 F.3d 474, 476–77 (5th Cir. 2001). Alternatively, the Court should instruct the jury that the parties agree the document reflects FDA's rejection of Janssen's proposed language.

### FACTUAL BACKGROUND

Throughout this litigation, the parties have been discussing Defendants' Exhibit No. DX5548, which is a redline document arising out of pre-approval correspondence between Janssen and FDA regarding Xarelto's labeling. The document reflects that Janssen proposed language that would have advised physicians that when "considered necessary," Neoplastin PT could be used to

"assess[] the pharmacodynamic effect of rivaroxaban," but that FDA later struck that language from the proposed labeling. Although the parties have debated the significance of FDA's redline, no one has *ever* disputed—and Plaintiffs have repeatedly acknowledged—that the redlines were indeed FDA's.

## I.     Plaintiffs' previous concessions

On the multiple occasions when Plaintiffs (and Dr. Kessler) discussed Defendants' Exhibit Nos. DX5547 and DX5548 in the run-up to trial, they agreed that it was FDA who struck Janssen's proposed PT labeling. Again, Plaintiffs have disputed the significance of FDA's redlines, but *never* that it was FDA that made them. Here is a sampling of Plaintiffs' pretrial concessions—

1. **Plaintiffs' Opposition to Defendants' Dosing & Monitoring Preemption MSJ (Doc. 5531)**

   a. "Defendants try to avoid their obligations to provide adequate instructions by suggesting that FDA rejected certain PT language proposed by Janssen to be in Section 12 of the label, regarding Clinical Pharmacology. ***While the FDA did strike language touching upon PT as proposed by Janssen***, such action by the FDA does not create clear evidence the FDA would have, at no point prior to the Plaintiffs' ingestion of Xarelto, struck an appropriate instruction in the Warnings section of the Xarelto label, Section 5." Pls.' Opp. to Defs.' Dosing & Monitoring Preemption MSJ (Doc. 5531), at 17 (emphasis added).

   b. "The Xarelto label is inadequate precisely because it fails to instruct physicians to test Neoplastin PT at treatment initiation to determine if a patient is at too high of a risk for bleeding on Xarelto. No such language was ever proposed by the Defendants, and thus there is no 'clear evidence' that shows the FDA would reject such language. ***The fact that during label negotiations, the FDA struck PT-related language*** from the *Clinical Pharmacology* (Section 12.2) where *it did not belong*, hardly demonstrates 'clear evidence' that the FDA would have rejected an attempt to include an instruction in the appropriate part of the label, *Warnings and Precaution* (Section 5). ***At best, it is evidence that the FDA did not want the stricken language*** in the wrong section of the label." *Id.* at 20 (emphasis added).

   c. "***Upon returning its suggested edits, the FDA stated*** in its E-mail to Defendants, 'Please accept changes you agree to and for changes you do not, keep in track changes.'" *Id.* at 21 (quoting and citing identical document to DX5547) (emphasis added).

2

  d. "Plaintiffs' regulatory expert, Dr. Parisian confirms the Defendants' ability to alter the Xarelto label in this circumstance: ***'FDA at no time, including FDA's June 13, 2011 response to proposed labeling striking language in Section 12.2***, prevented the Defendants from including in its label information regarding pertinent biomarkers ....'" *Id.* (quoting Parisian Report ¶ 432) (emphasis added).

**2. Plaintiffs' counsel's statements at oral argument on the dispositive and Daubert motions (Mar. 23, 2017)**

  a. "I think what you will see when you lay out the chronology of what actually happened at FDA, ***at the point the FDA struck the PT language in June of 2011***, there were two different NDAs proceeding forward at the same time. … ***It was the folks in the hematology division who had concluded, as a result of their analysis of the RECORD studies, that there was not a relationship between PT and bleed risk that struck that language***." 3/23/17 OA Tr. at 22:7–17 (Mr. Barr) (emphasis added).

  b. "They have argued throughout the briefing and in oral argument today that, well, if the FDA wanted to do something, they could have done it. That may or may not be true, but that's not the standard. As *Wyeth* laid out, it is their burden to maintain the adequacy of the label, not the FDA. And what the clear evidence shows is that ***at the point they struck that language*** and at the point the different divisions' analysis of ROCKET, a different study, gave a different result, they did nothing." *Id.* at 22:23–23:6 (Mr. Barr) (emphasis added).

  c. "***What you end up with is the FDA strikes the proposed language, and they put in that the predictive value of these coagulation parameters has not been adequately studied. That was their position. So, of course, they are not going to let them put it in the label.*** If they believe that you have not adequately studied the relationship between bleeding risk and PT, they are not going to let you tell doctors about that." *Id.* at 31:16–23 (Mr. Barr) (emphasis added).

  d. "This is plaintiffs' exhibit -- I think it's 34 or 35. I'll give that to Your Honor. It should be on my slide, but it's not. This is what they called a label contingency document. It was attached to an e-mail of June 1, 2011. ***So this is around the same time that FDA is striking the PT language in the hematology label***." *Id.* at 34:11–17 (Mr. Barr) (emphasis added).

**3. *Kessler Deposition***

  a. "[Q.] So Paragraph 51 back in July of 2008, based upon the information that you have reviewed, Janssen proposed to FDA in Section 12.2 of the label language, and I won't read it all, but I'm reading, 'The relationship between prothrombin time and rivaroxaban plasma concentration is linear and

3

closely related. If assessment of the pharmacodynamics effect of rivaroxaban is considered necessary in individual cases, prothrombin time measured in seconds is recommended.' So I read that correctly, right?

A. You read that correctly.

Q. *And there's a back and forth. But essentially, the FDA struck that language; is that right?*

A. *So, yes*. Because in July 2008, okay, what we know now is that Exhibit 8 was known to -- certainly to Bayer. So -- so the company had data. That, we know, that as of July 2008. And even through January 2011, right, that -- that data was not highlighted to FDA. Furthermore, it wasn't till August 2011 when FDA figured out in a clinical pharm review that -- where FDA figured out this linear relationship. First of all, let me just clarify. There's not the use of the word "bleeding" in this language. This is not in Section 5. *FDA appropriately struck it* because they didn't realize -- no one told FDA about this. When FDA figured it out, there was -- I mean, FDA had no problem. It didn't prevent the manufacturer from doing this.

….

*FDA struck this. FDA then figured it out, as I see it, in August of 2011*." Kessler Dep. 297:4–300:6 (emphasis added).

b. "Q. Looking at Exhibit 14. As of November of 2011, after it had completed its analysis, after it was fully aware of the bleeding data and had analyzed it, the label that was approved by FDA, Exhibit 14, does not state or make any reference to, 'The predictive value of these coagulation parameters for bleeding risk or efficacy has been established.' Correct?

[objection]

Q. That's not in the label?

[objection]

THE WITNESS: *That was struck from an earlier label as part of a negotiation prior to the conclusion that we saw in August. As we know, the FDA -- and I'm a little surprised at this. But FDA did do it* …." *Id.* at 304:10–305:7 (emphasis added).

c. "A. *FDA struck the fact that it has not been adequately studied. The FDA struck* …." *Id.* at 306:10–12 (emphasis added).

4

## II.     Dr. Kessler's trial testimony

Yesterday, in stark contrast to Plaintiffs' multiple pretrial admissions that FDA was responsible for the redline strikethroughs in Defendants' Exhibit No. DX5548, Dr. Kessler testified (and Plaintiffs' counsel likewise suggested) that perhaps the edits were someone else's:

> "Q. Right. And this is the redline label from FDA. And under Section 12.2, the FDA struck the language 'routine monitoring of coagulation parameters is not required with Xarelto,' didn't it?
>
> A. So, again, let's just be clear. I have no problems with you saying who struck what and redlined. But let others testify to that. I see the redline.
>
> Q. Okay. And you saw the cover memo from FDA saying that it was including --
>
> A. Redlined versions. But there's a lot of back-and-forths. And, again, I just am trying to be careful. I wasn't there -- I mean, this is really 'Who struck John?' right, I mean, in trying to figure those things out.
>
> Q. All right. Let's pull up DX 5548.30.2. And FDA struck 'the relationship between PT and rivaroxaban plasma concentration is linear and closely related.' Right?
>
> MR. MEUNIER: Your Honor, there's no evidence that the FDA --
>
> THE COURT: There's no evidence that the FDA -- that's the point that he's making. You said FDA; he disagrees with that. He doesn't know that.
>
> MR. DUKES: I got it now. I understand.
>
> THE WITNESS: Your Honor, just -- I just don't know.
>
> THE COURT: I understand.
>
> THE WITNESS: He could be right.
>
> THE COURT: You said you don't know.
>
> THE WITNESS: Thanks.
>
> THE COURT: Yeah.

4/25/17 (PM) Trial Tr. 449:3–450:5.

5

**ARGUMENT**

**I.    The Court should strike Dr. Kessler's testimony regarding the identity of the author of the strikethrough in Defendants' Exhibit No. DX5548 because Plaintiffs have made judicial admissions conceding that FDA created the strikethroughs.**

"A judicial admission is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them." *Martinez*, 244 F.3d at 476; *see also Davis v. A.G. Edwards & Sons, Inc.*, 823 F.2d 105, 108 (5th Cir. 1987) (explaining that "[f]acts that are admitted in the pleadings are no longer at issue"). Although "a judicial admission is not itself evidence, it has the effect of withdrawing a fact from contention." *Martinez*, 244 F.3d at 476.

To qualify as a judicial admission, a statement "must be (1) made in a judicial proceeding; (2) contrary to a fact essential to the theory of recovery; (3) deliberate, clear, and unequivocal; (4) such that giving it conclusive effect meets with public policy; and (5) about a fact on which judgment for the opposing party can be based." *Mitchell v. Hood*, No. 13-5875, 2015 WL 7854461, at *4 (E.D. La. Dec. 2, 2015) (Fallon, J.) (quoting *Heritage Bank v. Redcom Labs., Inc.*, 250 F.3d 319, 329 (5th Cir. 2001)). Plaintiffs' statements—in their briefs and at oral argument—conceding that FDA is the source of the redline strikethrough changes in Defendants' Exhibit No. DX4458 meet all of the factors for judicial admissions. Their statements were made in the context of this case. The concessions go to relevant facts, adverse to Plaintiffs, that are central to this case—namely, the adequacy of Xarelto's labeling. Plaintiffs' statements that FDA struck the proposed language were "deliberate, clear, and unequivocal." *Mitchell*, 2015 WL 7854461, at *4. And finally recognizing the statements as binding concessions here furthers the public interest in furthering a genuine search for truth.

Although the Court may consider all of the concessions listed above, Plaintiffs' concessions in their pretrial briefing standing alone is sufficient to establish a binding judicial admission. The Fifth Circuit has held that courts "can appropriately treat statements in briefs as

6

binding judicial admissions of fact." *City Nat'l Bank v. United States*, 907 F.2d 536, 544 (5th Cir. 1990) (declining to hold statements in appellate brief as judicial admission, in part because the appellate brief was "unlike admissions of fact in a summary judgment brief used to determine whether or not there is a genuine issue of material fact"). In fact, courts *routinely* treat statements of fact—such as Plaintiffs' repeated statements here that FDA struck the PT-related language from Xarelto's draft labeling—as judicial admissions. *See, e.g.*, *Menendez v. Wal-Mart Stores, Inc.*, 364 F. App'x 62, 67 n.6 (5th Cir. 2010) ("We treat the plaintiffs' statement in their briefing before the district court that Mr. Menendez was a citizen of Texas as a binding judicial admission."); *Collections Fine Jewelry, Inc. v. Stanley Convergent Sec. Sols.*, No. 3:11-CV-3230-N, 2013 WL 12123516, at *2 n.2 (N.D. Tex. June 4, 2013) (rejecting plaintiff's contention "that [defendant] fail[ed] to conclusively prove that the . . . contract governs the parties" and concluding that the plaintiff's "previous assertion that [defendant] assumed [the] rights and obligations is a binding judicial admission of fact"); *Mondis Tech. Ltd. v. Chimei InnoLux Corp.*, 822 F. Supp. 2d 639, 643–44 (E.D. Tex. 2011) (treating party's "admission in its response brief" regarding sales figures "as a binding judicial admission of fact" for the purpose of calculating damages); *Samson Contour Energy E & P, LLC v. Fred Bowman, Inc.*, No. 11-cv-0247, 2011 WL 6157481, at *3 (W.D. La. May 11, 2011) ("Statements in a brief or memorandum may be treated as binding judicial admissions."); *Averette v. Transocean Enters., Inc.*, No. 6:07-1557, 2010 WL 2814702, at *3 (W.D. La. July 16, 2010) (holding that party's "statements in its briefs, admitting that the stabbing basket controls malfunctioned, are judicially binding" under judicial admissions doctrine); *Stumbaugh v. Am. Commercial Lines LLC*, 2009 WL 1458037, at *2 (E.D. La. May 26, 2009) (party could not claim seaman status after asserting in summary judgment motion that he was not an employee).

Plaintiffs' multiple judicial admissions that FDA was indeed the source of the strikethrough portions of Defendants' Exhibit No. DX5548 have the "effect of withdrawing [that] fact from contention" and should be deemed binding on Plaintiffs in this litigation. *Martinez*, 244 F.3d at 476. The most appropriate remedy is to strike Dr. Kessler's contrary testimony. *See, e.g.*, *Patriot Rail Corp. v. Sierra R.R. Co.*, No. 2:09–cv–0009–TLN–AC, 2015 WL 4662707, at *4–5 (E.D. Cal. Aug. 5, 2015). In *Patriot Rail*, the court explained that the party's judicial admissions had "conclusively established" certain facts in the litigation. *Id.* at *5. The witness's testimony, the court observed, "directly contradicted … these admissions." *Id.* Accordingly, the court held the party "accountable to its binding judicial admission and struck [the witness's] contradictory testimony." *Id.*[1]

**II. Alternatively, rather striking Dr. Kessler's testimony, the Court should instruct the jury that the parties agree that it was FDA that redlined the proposed language in Defendants' Exhibit No. DX5548 to remove any ambiguity or confusion.**

Alternatively, to prevent juror confusion, the Court should instruct the jury that the parties agree that FDA struck Janssen's proposed PT language, as evidenced in Defendants' Exhibit No. DX5548. Defendants propose the following proposed curative instruction for this purpose:

> Yesterday you heard testimony regarding Defendants Exhibit No. DX5548. Dr. Kessler testified on cross-examination that he did not know the source of the language that is shown in red and stricken. The parties agree that the red strikethrough is from FDA and that FDA struck that proposed labeling.

---

[1] *Patriot Rail* states a common-sense remedy that is consistent with Fifth Circuit precedent. *See Martinez* , 244 F.3d at 477 (holding that the district court did not err in refusing to consider the plaintiffs' evidence introduced to contradict an earlier judicial admission and explaining that the district court "properly precluded [the plaintiff's affidavit] from consideration as evidence of physical injury" because a party "may not explain or controvert a judicial admission"); *see also, e.g.*, *Armour v. Knowles*, 512 F.3d 147, 154 nn.13 & 14 (5th Cir. 2007) (explaining that party's "affidavit contrary to the binding admissions may not be permitted to rebut the admissions at trial"); *Giddens v. Cmty. Educ. Ctrs., Inc.*, 540 F. App'x 381, 390 n.3 (5th Cir. 2013) ("A party therefore may not rebut a judicial admission made in its pleadings with new evidence or testimony.") (citing *Davis v. A.G. Edwards & Sons, Inc.,* 823 F.2d 105, 107–08 (5th Cir.1987)); *Collier v. Roberts*, No. 13-425-SDD-EWD, 2016 WL 3448607, at *5 n.42 (M.D. La. June 17, 2016) ("The Fifth Circuit has explained that a party cannot rebut a judicial admission made in its pleadings with new evidence or testimony.") (citations omitted); *Halprin v. Fed. Deposit Ins. Corp.*, No. 5:13-CV-1042-RP, 2016 WL 5718021, at *8 (W.D. Tex. Sept. 30, 2016) ("Parties may not rebut a judicial admission made in their pleadings with new evidence or testimony.").

Dr. Kessler's testimony introduced ambiguity on this fact where there previously had been clarity, and—despite Plaintiffs' previous concessions and the intrinsic evidence within the document that amply demonstrates the fact that FDA rejected Janssen's proposed PT language—there is a substantial risk of juror confusion that the strikethroughs were FDA's. Indeed, the Court twice addressed the jury during the course of Dr. Kessler's testimony on this point:

> THE COURT: Members of the jury, do you understand that? We have this, but we don't know who did it. So counsel's saying one thing, and the witness can't answer one way or the other because he didn't see it. Okay.
>
> ….
>
> THE COURT: Yes. Members of the jury, it's really up to you to determine the value of this language. You're the jury. You've heard everything. It's up to you to decide the significance of this language.

4/25/17 (PM) Trial Tr. 451:2–5, 455:8–11. In light of Dr. Kessler's testimony and the Court's comments to the jury, there is a significant likelihood that the jury is confused that, as the document shows and as Plaintiffs have repeatedly conceded in their briefing, the strikethroughs in Defendants' Exhibit No. DX5548 are FDA's. To remedy that confusion, the court should issue a curative instruction.

## CONCLUSION

For the reasons explained above, the Court should hold that Plaintiffs' numerous concessions that FDA struck Janssen's proposed PT language are judicial admissions and that that fact is no longer at issue. Accordingly, the Court should strike Dr. Kessler's contrary testimony or, in the alternative, instruct the jury that FDA is the source of the strikethrough.

Respectfully submitted,

BARRASSO USDIN KUPPERMAN FREEMAN & SARVER, L.L.C.

By: /s/ *Richard E. Sarver*
Richard E. Sarver
Celeste R. Coco-Ewing
BARRASSO USDIN KUPPERMAN FREEMAN & SARVER, L.L.C.
909 Poydras Street, 24th Floor
New Orleans, Louisiana 70112
Telephone: (504) 589-9700
rsarver@barrassousdin.com
ccoco-ewing@barrassousdin.com


DRINKER BIDDLE & REATH LLP

By: /s/ *Susan M. Sharko*
Susan M. Sharko
Drinker Biddle & Reath LLP
600 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
susan.sharko@dbr.com

Rodney M. Hudson
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
Telephone: (415) 591-7500
Rodney.hudson@dbr.com

Chanda A. Miller
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2700
Chanda.Miller@dbr.com


IRWIN FRITCHIE URQUHART & MOORE LLC

By: /s/ *James B. Irwin*
James B. Irwin
Kim E. Moore
Irwin Fritchie Urquhart & Moore LLC
400 Poydras Street, Suite 2700

WILKINSON WALSH + ESKOVITZ LLP

By: /s/ *Beth A. Wilkinson*
Beth A. Wilkinson
Jennifer L. Saulino
Jeremy Barber
WILKINSON WALSH + ESKOVITZ LLP
1900 M. Street NW, Suite 800
Washington, DC 20036
Telephone: (202) 847-4000
bwilkinson@wilkinsonwalsh.com
jsaulino@wilkinsonwalsh.com
jbarber@wilkinsonwalsh.com


NELSON MULLINS RILEY & SCARBOROUGH LLP

By: /s/ *David E. Dukes*
David E. Dukes
J. Mark Jones
NELSON MULLINS RILEY & SCARBOROUGH LLP
1320 Main Street, 17th Floor
Columbia, SC 29201
Telephone: (803) 799-2000
David.Dukes@nelsonmullins.com
Mark.Jones@nelsonmullins.com


ARNOLD & PORTER KAYE SCHOLER LLP

By: /s/ *Andrew K. Solow*
Andrew K. Solow
Steven Glickstein
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8485
andrew.solow@apks.com
steven.glickstein@apks.com

William Hoffman
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
william.hoffman@apks.com

New Orleans, LA 70130
Telephone: (504) 310-2100
jirwin@irwinllc.com

*Attorneys for Defendants Janssen Pharmaceuticals, Inc. and Janssen Research & Development, LLC*

BRADLEY ARANT BOULT CUMMINGS LLP

By: */s/ Kevin C. Newsom*
Kevin C. Newsom
Lindsey C Boney IV
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place, 1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8803
knewsom@bradley.com
lboney@bradley.com


CHAFFE MCCALL L.L.P.
By: */s/ John F. Olinde*
John F. Olinde
CHAFFE MCCALL L.L.P.
1100 Poydras Street, Suite 2300
New Orleans, LA 70163
Telephone: (504) 585-7241
olinde@chaffe.com


*Attorneys for Bayer HealthCare Pharmaceuticals Inc. and Bayer Pharma AG*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 26th of April, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs by operation of the court's electronic filing system.

               /s/     John F. Olinde