UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | * * * * | MDL 2592 SECTION L |
| This Document Relates To: *Joseph J. Boudreaux, Jr., et al.* *v. Janssen et al.* Case No. 2:14-cv-02720 | * * * * * * | JUDGE ELDON E. FALLON MAG. JUDGE NORTH |

* * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE TESTIMONY OF DR. DAVID A. KESSLER OR, IN THE ALTERNATIVE, TO GIVE A CURATIVE INSTRUCTION BASED ON PLAINTIFFS' JUDICIAL ADMISSIONS**

**MAY IT PLEASE THE COURT:**

The matter placed at issue by this defense motion initially arose when Plaintiffs asked the Court to give the jury a limiting instruction (see attached "Proposed Limiting Instruction," Plaintiffs' Proffer No. 1) in connection with a document [Defendants' Exhibit No. DX 5548] which counsel for Defendants intended to show to the jury as a demonstrative aid, or offer into evidence, during the cross-examination of Plaintiffs' Expert, Dr. David Kessler.  This document is a working draft of the Xarelto label purportedly was being considered in the back-and-forth exchange between the Defendant Janssen and the FDA during the application process for the approval of Xarelto in the treatment of deep-vein thrombosis (DVT) following hip or knee replacement surgery.  Notably, that process was <u>not</u> the separate application process for the

1

approval of Xarelto in the treatment of A-fib, which is the indicated use pertinent to the case of Joseph Boudreaux now being tried to the jury.

Plaintiffs contend that, even if the document has probative value, that value is far outweighed by the potential for prejudice and juror confusion; and, to address those concerns, the Court was asked to instruct the jury that the document should not be given preemptive effect, *i.e.,* it should not be taken as proof that the FDA would not have approved language for the Xarelto label which plaintiffs contend would have provided adequate warnings and instructions to the prescribing physician in this case, Dr. Wong.

There no longer can be any doubt that this preemptive effect is exactly what Defendants intend in displaying and/or offering the document.  When Defendants filed an opposition to Plaintiffs' request for the above-noted limiting instruction, they referred to the language in that instruction, namely, that the label with the strikethrough language should not be taken "as proof that the FDA either refused to approve, or would not have approved, language for the Xarelto label which the Plaintiffs claim is needed…," and then averred that the document "clearly shows this precise point…" *See* Defendants' Brief in Opposition to Plaintiffs' request for limiting instruction [Rec. Doc. 6312], at p. 1.  In other words, the very preemption defense that the Court already has found not to be cognizable as a matter of law, is being reasserted by Defendants (if only indirectly) in this bellwether jury trial.  Defendants are now on record, in opposition to Plaintiffs' proffered instruction, that they do take the position this redlined label preempts Plaintiffs from showing that the FDA could, and should, have approved Xarelto label language which Plaintiffs contend was required under the LPLA.

When the document was shown to Dr. Kessler, however, he testified that he did not know, and therefore could not say one way or the other, whether the "strikethroughs" of certain

2

language in the draft label were actually done <u>by the FDA</u>.  In fact, despite Dr. Kessler's clear testimony to this effect, Defendants' counsel proceeded to suggest in the wording of his questioning that the FDA had struck through the language, which drew an appropriate objection as well as a response from the Court.  The full length of this exchange in the trial record is worth setting forth:

> **A.  [Dr. Kessler]**.  So just be careful, Counselor. I have seen documents that have had redlined versions, right. <u>I have taken your -- in interrogatories, you've stated who's done what</u>.
> I've got to be very careful reading these. I don't want to -- <u>I wasn't there</u>. So I just don't want to be the one who's saying who did what. I mean, others can testify to that. This is like -- this is like walking into a <u>Track-changes document done by a number of people and trying to figure out who made what comments. Sometimes you can guess -- sometimes you know because of their initials</u>. You've just got to be a little careful. <u>So I just don't want to be the one representing who struck what</u>.
> **Q.** Okay.
> **A.** I leave that to others, but I have seen these documents.
> **Q.** All right.
> . . . .
> **Q.** Okay. And you saw the cover memo from FDA saying that it was including --
> **A.** <u>Redlined versions. But there's a lot of back-and-forths</u>. And, again, I just am trying to be careful. I wasn't there -- I mean, this is really "Who struck John?" right, I mean, in trying to figure those things out.
> **Q.** All right. Let's pull up DX 5548.30.2. And FDA struck "the relationship between PT and rivaroxaban plasma concentration is linear and closely related." Right?
> **MR. MEUNIER:** Your Honor, there's no evidence that the FDA --
> **THE COURT:** There's no evidence that the FDA -- that's the point that he's making. You said FDA; he disagrees with that. He doesn't know that.
> **MR. DUKES:** I got it now. I understand.
> **THE WITNESS:** Your Honor, just -- I just don't know.
> **THE COURT:** I understand.
> **THE WITNESS:** He could be right.
> **THE COURT:** You said you don't know.

3

**THE WITNESS:** Thanks.
**THE COURT:** Yeah.

4/25/2017 Trial Transcript, *Boudreaux v. Janssen, et al* (MDL 2592), 447:2-16 and 449:10-450:5 [emphasis added].

This proposed defendant exhibit was not offered into evidence during the testimony of Dr. Kessler, although it was shown to the jury as a demonstrative aid (plaintiffs' objected); and, perhaps for this reason, the Court has not seen fit (at least, at this juncture) to give the proffered, limiting instruction proposed by the Plaintiffs. From Plaintiffs' viewpoint, however, whether the document ultimately is offered into evidence or whether it remains a demonstrative aid that has been, or will be again, shown to the jury, it is critical that the jury be instructed to the effect that this draft label with strikethrough language does not, in and of itself, have a preemptive effect on Plaintiffs' LPLA claim. Before deliberation commences, it is critical to disabuse the jury of what Defendants clearly mean to establish as the import of the document, *i.e.,* preemption.

Against this backdrop, the instant motion seeks two things, both of which Plaintiffs' vigorously oppose: first, to strike the testimony of Dr. Kessler regarding the proposed defendant exhibit; and, secondly and alternatively, to give the jury a proposed "curative instruction" to the effect that "[t]he parties agree that the red strikethrough [on Defendants' Exhibit No. DX 5548] is from FDA and that FDA struck that proposed labeling."

With respect to the request to strike Dr. Kessler's testimony, Defendants seek nothing less than an evidentiary opportunity which has come and gone in this trial. They were allowed through extensive cross-examination to fully explore Dr. Kessler's knowledge and testimony regarding this issue. Nonetheless, they could refer him to no documents or material to change or impeach his testimony, and instead simply persisted in trying to have him testify to something he could not testify about based on first-hand knowledge. Dr. Kessler explained he was not part of the back-and-forth exchange regarding this draft label; and, just as importantly, the document

4

itself does not identify, by marginal comments or otherwise, which track changes were made by whom.  Dr. Kessler made it clear he could not verify who made certain track changes in a draft label.  It is for the jury to give that testimony whatever weight or credibility the jury believes it deserves.  There is no basis for striking the truthful testimony of this witness.

Moreover, for Defendants to ask that a witness' testimony be struck from the record of the trial <u>after</u> the witness has been discharged from the stand and has left the trial, would be patently unfair to Plaintiffs.  Had Plaintiffs been aware that the document would be shown to the jury without <u>any</u> testimony from Dr. Kessler on the issue of who made what changes in the track changes, then surely some additional re-direct examination may have occurred.  More might have been elicited, for example, on the nature of the back-and-forth negotiations and changes that typically occur in such matters.

Finally, what defendants are asking the Court to do would create an insurmountable evidentiary problem in this record.  As the above transcript excerpt reflects, the Court was obliged to state in the presence of the jury that Dr. Kessler's testimony during cross-examination was that he simply did not know and could not say that it was the FDA that struck certain language in this draft label.  This clarified the witness' testimony and explained why certain questioning was improper.  For the Court to now advise the jury who heard this, that the very same, clarified testimony has been struck and should be disregarded, can only serve to inject confusion among jurors, as well as create an incurable inconsistency regarding the evidence of record.  The fact that Defendants simply failed to elicit testimony from a certain witness which Defendants hoped to elicit, in no way can justify such an adverse impact on these proceedings.

Having failed to secure testimony by which they intend to give a document preemptive effect, Defendants alternatively seek to conjure needed fact evidence from so-called "judicial

5

admissions" they believe were made in Plaintiffs' briefs.  Given their burden of presenting "clear evidence" support for what is tantamount to an affirmative preemption defense, Defendants' proposal is nothing short of remarkable.[1]

Under well-established Fifth Circuit law, "[a] judicial admission is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them." *Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474, 476 (5th Cir. 2001).  Only when "made intentionally as a waiver," may a statement made by counsel during trial release "the opponent from proof of fact."  *Id.*  "Pleadings" are limited to those documents identified in Federal Rule of Civil Procedure 7, *i.e.*, a complaint; an answer to a complaint; an answer to a counterclaim designated as a counterclaim; an answer to a crossclaim; a third-party complaint; an answer to a third-party complaint; and if the court orders one, a reply to an answer.  All other filings are either "motions or other papers."  Fed.R.Civ.P. 7(b).  None of the papers filed by the Boudreauxs that the Defendants identify in their motion to strike are "pleadings" or "stipulations" subject to the mandatory judicial admission doctrine.  *Compare Patriot Rail Corp. v. Sierra R.R. Co.,* No. 2:09-cv-0009, 2015 WL 4662707, at *4 (E.D. Cal. Aug. 5, 2015) (striking trial testimony that was inconsistent with the plaintiff's complaint).

Moreover, even if "judicial admissions" were to be based solely on arguments made in briefs, as opposed to declarations in pleadings addressed to the opposing party (not the Court), the citations to briefs identified by the Defendants reflect at best "evidentiary admissions," which are "'merely a statement of assertion or concession made for some independent purpose,'

---

[1] In denying Defendants' Partial Summary Judgment Motion on Preemption, the Court has found that "[c]lear evidence requires more than a prior refusal to add similar language" to a label.  *See* Order and Reasons of 4/13/17 [Rec. Doc. 6196].

In later sustaining Plaintiffs' Motion in Limine No. 14, the Court also prohibited "testimony, evidence, and commentary" regarding the federal preemption of state law.  *See* Order and Reasons of 4/18/17 [Rec. Doc. 6254].

6

[which] may be controverted or explained by the party." *Martinez,* 244 F.3d at 476-77, *quoting McNamara v. Miller*, 269 F.2d 511, 515 (D.C. Cir. 1959).

Defendants refer to this Court's decision in the case of *Mitchell v. Hood*, 2015 WL 7854461 (EDLA 12/2/15). Indeed, the case is instructive. There, Your Honor found that a proposed "judicial admission" failed to satisfy one of the factors required for a statement to constitute a judicial admission, i.e., that the statement or fact be "deliberate, clear and unequivocal…." *See id.* at p. 4. Since the statements in that case were made for purposes related to a different context, the Court concluded that they should be deemed more appropriately as "evidentiary admissions," *i.e.,* matters appropriate for further explanation or controversion in the proceedings. *See id.*

Here, it must be remembered that Dr. Kessler testified to only being told through the Defendants' answers to interrogatories that the FDA had struck through certain language in the Xarelto draft label for DVT treatment. In other words, the information came in discovery responses from the defendants themselves. When the issue of preemption was briefed, Plaintiffs addressed the merits of preemption relying (as Dr. Kessler did) on such representations that the FDA struck through language in the label. However, since at this point the only source of the information is discovery responses by Defendants, the same result as the Court reached in *Mitchell* is proper here*, i.e.,* the assertion that the FDA struck through certain language in this label is not sufficiently "deliberate, clear and unequivocal" to qualify as a judicial admission, but is more in the nature of an evidentiary admission made during preemption briefing.

Finally, it again is critical that the trial record not be disregarded in consideration of this motion. After the draft label in question had been addressed with Dr. Kessler, the Court advised the jury: "it's really up to you to determine the value of the language." 4/25/17 Trial Transcript,

7

at 455:8-11.  Defendants still have every opportunity to establish through competent evidence what they seek to establish concerning this label document; and, given the preemptive effect they contemplate, it is important that their proof be based on competent evidence, not supposition or conjured "admissions."

For the reasons set forth above, and in open court, Defendants' motion should be denied.

Dated: April 28, 2017

Respectfully submitted,

*/s/ Leonard A. Davis*

---

Leonard A. Davis, Esq. (Bar No. 14190)
**HERMAN, HERMAN & KATZ, LLC**
820 O'Keefe Avenue
New Orleans, LA  70113
PH:  (504) 581-4892
FAX:  (504) 561-6024
Email:  ldavis@hhklawfirm.com


Gerald E. Meunier (Bar No. 9471)
**GAINSBURGH BENJAMIN DAVID MEUNIER
& WARSHAUER, LLC**
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA  70163-2800
PH:  (504) 522-2304
FAX: (504) 528-9973
Email:gmeunier@gainsben.com

*Plaintiffs' Liaison Counsel*

## PLAINTIFFS' STEERING COMMITTEE

Andy D. Birchfield, Jr. (Co-Lead Counsel)
234 Commerce Street
Post Office Box 4160
Montgomery, Alabama 36103-4160
Phone: (334) 269-2343
Fax: (334) 954-7555
Email: Andy.Birchfield@BeasleyAllen.com

Brian H. Barr (Co-Lead Counsel)
316 Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7045
Fax: (850) 436-6044
Email: bbarr@levinlaw.com

Russell T. Abney
2100 RiverEdge Parkway,
Suite 720
Atlanta, Georgia 30328
Email: rabney@lawyerworks.com

Dr. Mark Alan Hoffman
1650 Market Street, Suite 3450
Philadelphia, PA 19103
Phone: (215) 574-2000
Fax: (215) 574-3080
Email: mhoffman@rossfellercasey.com

Michael Goetz
201 N. Franklin St., 7th Floor
Tampa, FL 33602
Phone: (813) 221-6581
Fax: (813) 222-4737
Email: MGoetz@ForThePeople.com

Neil D. Overholtz
17 E. Main Street , Suite 200
Pensacola, Florida 32501
Phone: (850) 916-7450
Fax: (850) 916-7449
Email: noverholtz@awkolaw.com

Bradley D. Honnold
11150 Overbrook Rd., Ste. 200
Leawood, KS 66211
Phone: (913) 266-2300
Fax: (913) 266-2366
Email: bhonnold@bflawfirm.com

Frederick Longer
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215-592-4663
Email: flonger@lfsblaw.com

Jeffrey S.  Grand
Seeger Weiss
77 Water Street
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
Email: jgrand@seegerweiss.com

Roger C. Denton
100 S. 4th Street
St. Louis, MO 63102
Phone: (314) 621-6115
Email: rdenton@uselaws.com

Dianne M. Nast
1101 Market Street, Suite 2801
Philadelphia, Pennsylvania 19107
Phone: (215) 923-9300
Email: dnast@nastlaw.com

Ellen Relkin
700 Broadway
New York, New York 10003
Phone: (212) 558-5500
Fax: (212) 344-5461
Email: Erelkin@weitzlux.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2017 a copy of the above and foregoing Plaintiffs' Response in Opposition to Defendants' Motion to Strike Testimony of Dr. David A. Kessler or, In the Alternative, to Give a Curative Instruction Based on Plaintiffs' Judicial Admissions has contemporaneously with or before filing been served on all parties or their attorneys in a manner authorized by FRCP 5(b)(2), Local Rule 5.1 of the Eastern District of Louisiana and via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre-Trial Order No. 17.

          */s/ Leonard A. Davis*

          **Leonard A. Davis**