**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) ) ) | MDL 2592 |
| | | SECTION L |
| | | JUDGE ELDON E. FALLON |
| *Joseph J. Boudreaux, Jr., et al. v. Janssen et al.*, Case No. 2:14-cv-02720 | | MAG. JUDGE NORTH |

### DEFENDANTS' FIRST MOTION FOR JUDGMENT AS A MATTER OF LAW AT THE CLOSE OF PLAINTIFFS' CASE

As the Court expressly provided on the record at the end of the trial day on Friday, April 28, Defendants Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC, Bayer HealthCare Pharmaceuticals Inc., and Bayer Pharma AG (collectively, "Defendants"), pursuant to Rule 50(a), hereby move the Court, at the close of Plaintiffs' case-in-chief, for judgment as a matter of law on Plaintiffs' sole remaining cause of action—namely, that Xarelto was unreasonably dangerous because of inadequate warning or instruction, under La. Rev. Stat. Ann. § 2800.57. In this motion, Defendants highlight three grounds in particular. ***First***, the Court should grant Defendants judgment as a matter of law on the basis of the learned intermediary doctrine. There is not a legally sufficient evidentiary basis for a reasonable jury to find that any allegedly inadequate warning proximately caused Mr. Boudreaux's injuries because Dr. Wong clearly testified that a different warning in Xarelto's label would not have changed his prescribing decision for Mr. Boudreaux. ***Second***, the Court should grant Defendants judgment as a matter of law to the extent that Plaintiffs claim that Xarelto's label should have included a black-box warning or that Xarelto's label failed to warn about the lack of an "antidote" or reversal agent. Both of those alleged bases for liability have been expressly abandoned and fail, in any event, for lack of expert

testimony.  **Finally**, the Court should grant Defendants judgment as a matter of law on Plaintiffs' abandoned theories of liability for the reasons stated in Doc. 5957.

Defendants make this motion at the close of Plaintiffs' case-in-chief without waiver of their right to move for judgment as a matter of law more broadly—including but not limited to the arguments in this motion—at the close of all evidence.  *See, e.g.*, *Gonzales v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745, 750–52 (5th Cir. 1993) (holding that defendant may move for judgment as a matter of law on fewer than all issues at the close of plaintiffs' case, and then move more broadly at the close of all evidence).[1]

## LEGAL STANDARD

A motion for judgment as a matter of law should be granted if, after a party has been fully heard by the jury on an issue, "'a reasonable jury would not have a legally sufficient evidentiary basis to find for the [non-moving] party on that issue.'"  *Seibert v. Jackson County, Miss.*, 851 F.3d 430, 434 (5th Cir. 2017) (quoting Fed. R. Civ. P. 50(a)).  "[A] party has been fully heard when he rests his case."  *Echeverria v. Chevron USA Inc.*, 391 F.3d 607, 610 (5th Cir. 2004).  At that time, the court may "grant a motion or judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue."  Fed. R. Civ. P. 50(a)(1).  "A mere scintilla of evidence is insufficient to present a question for the jury."  *Rutherford v. Harris County*, 197 F.3 173, 179 (5th Cir. 1999).  Instead, "[t]here must be a conflict in substantial evidence to create a jury question."  *Id.*

## ARGUMENT

Having dismissed their design-defect claim with prejudice, Plaintiffs have only one remaining cause of action—namely, that Xarelto was unreasonably dangerous because of

---

[1] Defendants have separately moved for judgment as a matter of law on other grounds.

inadequate warning or instruction, under La. Rev. Stat. Ann. § 2800.57.  *See* Stipulation & Order (Doc. 5340); Stipulation & Order (Doc. 6298).  Plaintiffs' sole theory is that Xarelto's label should have informed healthcare providers of the alleged relationship between PT test results and bleeding risk, and instructed physicians to perform a PT test on Xarelto patients for the specific purpose of assessing their risk of bleeding.

**I.     There is not a legally sufficient evidentiary basis for a reasonable jury to find that any alleged failure to adequately warn or instruct Dr. Wong altered Dr. Wong's prescribing decision or otherwise proximately caused Mr. Boudreaux's injuries.**

To prove a failure-to-warn claim under the LPLA, in a case involving a prescription medicine, a plaintiff must prove: (1) that the defendant failed to use reasonable care (a) to provide an adequate warning to the physician of a product characteristic that might cause damage that was not otherwise known to the physician, or (b) to adequately instruct the physician on how to safely use the product, and (2) that the failure to warn or instruct the physician proximately caused of the plaintiff's injury.  *See* La. Rev. Stat. Ann. § 9:2800.54(A) & (D); *id.* § 9:2800.57; *see also Stahl v. Novartis Pharma. Corp.*, 283 F.3d 254, 265–66 (5th Cir. 2002).  If a plaintiff fails to come forward with sufficient evidence to permit a reasonable jury to find in his or her favor on both of these elements, then judgment as a matter of law is appropriate.  *See* Fed. R. Civ. P. 50(a); *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 675 (5th Cir. 1999).

The proximate-cause element of a failure-to-warn claim requires Plaintiffs to prove that an allegedly inadequate warning itself—in addition to the medication—proximately caused his injury.  *See Stahl*, 283 F.3d at 260–61.  In particular, "the plaintiff must show that a proper warning would have changed the decision of the treating physician, *i.e.* that but for the inadequate warning, the treating physician would not have used or prescribed the product." *Willett v. Baxter Int'l, Inc.*, 929 F.2d 1094, 1098–99 (5th Cir. 1991).  If the plaintiff fails to sustain this burden of proving causation, then his clam fails as a matter of law.  *See id.* at 1099; *see also, e.g.*, *Allgood v.*

3

*GlaxoSmithKline PLC*, No. 06-3506, 2008 WL 483574, at *4 (E.D. La. Feb. 20, 2008) (Fallon, J.) (granting summary judgment on a plaintiff's failure-to-warn claims because the prescribing physician's testimony "clearly reveal[ed] that stronger warnings concerning the risk of suicide would not have changed his decision to prescribe Paxil in this case"); *Whitener v. PLI-VA, Inc.*, No. 10-1552, 2014 WL 1276489 (E.D. La. Mar. 27, 2014) (Fallon, J.), *aff'd*, 606 F. App'x 762 (5th Cir 2015) (granting summary judgment for defendants because it was "clear … that [the doctor] relied principally on his own experience"—not any alleged off-label promotion—and "even knowing everything he knows today, he would have still prescribe [the medication] to [plaintiff]").

The Court previously denied Defendants' learned-intermediary motion for summary judgment, reasoning that the Court must "presume[] that Plaintiffs' doctors would have followed the label's instructions and administered a PT test if so instructed, and [that] Defendants fail to overcome that presumption *at this juncture*." Doc. 6232, at 5 (emphasis added). The Court added that the question whether Mr. Boudreaux's prescribing physician, Dr. Wong, "would have administered PT tests if the label so instructed . . . is factually pregnant and will be addressed by the jury at trial." *Id.* at 5–6.

Now that the jury at trial has heard Dr. Wong's testimony, there is not a legally sufficient evidentiary basis for a reasonable jury to find that any allegedly inadequate warning proximately caused Mr. Boudreaux's injuries. Dr. Wong testified, based on his review of the literature and his own clinical experience, that he was aware of the risks of Xarelto, that he knew of no "reliable test that would be useful to [him] as a physician that would help [him] understand if a particular patient is at an increased risk," and that he is not aware of "any FDA approved tests that allows [him] to test a patient who is on Xarelto to determine . . . [w]hether they're at an increased risk." 4/28/17 AM Trial Tr. 987:7–15, 992:10–15. Dr. Wong further testified that "if there's not an FDA approved test"—and the evidence shows that Plaintiffs' proposed Neoplastin PT test is not

4

approved for use with Xarelto patients—he would not "use it with a patient." *Id.* at 987:16–18; *see also* 4/26/17 PM Trial Tr. 800:9–25.  And Dr. Wong testified unequivocally that even if Plaintiffs' proposed warnings or instructions about PT testing had been in Xarelto's label, he "still [would] prescribe Xarelto for [Mr. Boudreaux] today" because "different information that didn't provide clinically useful testing information" would not "change [his] prescribing decision." 4/28/17 AM Trial Tr. 992:16–23.

Under these circumstances, Defendants' motion for judgment as a matter of law should be granted.  To the extent that Dr. Wong's testimony that he would have complied with instructions to perform a test if the test had been FDA approved and if the test would help him understand whether a patient was at risk is relevant, it goes to the issue whether a heeding presumption has been rebutted and not as to Defendants' duty to warn.

**II.     There is not a legally sufficient evidentiary basis for a reasonable jury to find that Defendants failed to use reasonable care on the basis (a) that Xarelto's label does not include a black-box warning or (b) that there is no "antidote" or reversal agent for Xarelto.**

   **A.     Plaintiffs have abandoned any black-box warning claim, there is no reliable expert testimony that Xarelto's label is inadequate because it lacks a black-box warning, and such a claim is preempted in any event.**

   **1.**     Plaintiffs have previously committed to the Court that they "do not intend to advance [a black-box] argument at trial."  Pls.' Opp. to Defs.' Labeling Preemption MSJ (Doc. 5650) at 2 n.2.  Indeed, Plaintiffs declined to respond to Defendants' argument that federal law preempts such a claim because—as Plaintiffs' own regulatory expert, Dr. Suzanne Parisian concedes—a pharmaceutical company is forbidden from unilaterally adding a black-box warning to its product's label.  *See* Defs.' Labeling Preemption MSJ (Doc. 5110), at 20–21 (citing cases). And in their opening statement to the jury, Plaintiffs emphasized that this case is ***not*** about warnings in the Xarelto label about the risk of bleeding because, in their words, "all doctors know

that anticoagulants have a bleed risk." 4/24/17 PM Trial Tr. 90:18–23 (Mr. Barr) ("Now, the defendants may also try to make this case about the risk of bleeding. They're probably going to show you all the times in their label where they talk about the risk of bleeding. There will be doctors that testify that all anticoagulants have a bleed risk. I mean, all doctors know that anticoagulants have a bleed risk."). Accordingly, in light of Plaintiffs' abandonment, the Court should grant Defendants judgment as a matter of law to the extent that Plaintiffs' failure-to-warn claim is based on Xarelto's lack of a black-box warning. *See, e.g.*, *Cologne v. Shell Oil Co.*, No. 12-735, 2013 WL 5781705, at *2–3 (E.D. La. Oct. 25, 2013) (Fallon, J.); *Overpeck v. Roger's Supermarket, LLC*, No. 12-124, 2013 WL 4500469, at *4 (N.D. Miss. Aug. 21, 2013).

**2.** Moreover, any claim based on Xarelto's lack of a black-box warning fails as a matter of law because Plaintiffs have offered no expert evidence to support that claim. *See, e.g.*, *Zachary*, 884 F. Supp. 1061 (granting summary judgment on failure-to-warn claim in medical-device case for lack of expert testimony). During the cross-examination of Plaintiffs' hematology expert Dr. Cindy Leissinger, the jury heard the following exchange:

> Q. Now, you understand that, in the label for Xarelto, there are multiple warnings about the bleeding risk; right? Associated with the drug?
>
> A. The one thing that I'm most aware of with the Xarelto label is that, unlike the label for warfarin or Coumadin, which has what's called a black box warning that comes on the label . . . [n]o such warning exists to the label for Xarelto, which is very surprising to me. . . .
>
> Q. Neither does the -- excuse me. I don't mean to cut you off.
>
> A. Go ahead.
>
> Q. Do you understand that the plaintiffs in this case aren't claiming that a black box warning should be on the label?
>
> MR. DENTON: I object, Your Honor, as to what we're alleging.
>
> MS. WILKINSON: That is -- it was said it wasn't at issue, Your Honor.

MR. DENTON: Can we approach? It's a warnings case.

4/26/14 PM Trial Tr. 762:17–763:16. At sidebar, Plaintiffs made the argument that this "is an inadequate warning and instructions case, and [we] think the jury can take into account whatever facts are relevant to it. [We] don't think it's proper to try to limit with an expert witness what the plaintiffs' arguments are." *Id.* at 763:20–24 (Mr. Meunier). The Court overruled the objection and stated "I didn't hear anything about a black box warning; I heard warning and instructions." *Id.* at 764:3–24.

That evidence, standing alone, is legally insufficient for a reasonable jury to conclude that Defendants failed to use reasonable care by failing to include a black-box warning in Xarelto's label. As Plaintiffs readily conceded, Dr. Leissinger is "certainly not a regulatory expert." *Id.* at 785:8–10 (Mr. Denton). Plaintiffs' regulatory, Dr. David Kessler, did not provide any opinions or testimony on Xarelto's lack of a black-box warning. Accordingly, there is not a legally sufficient evidentiary basis for a reasonable jury to conclude that Defendants failed to use reasonable care on the basis that Xarelto's label lacks a black-box warning. *See, e.g.*, *Zachary v. Dow Corning Corp.*, 884 F. Supp. 1061, 1065 (M.D. La. 1995) (plaintiffs' failure-to-warn claim against manufacturer of medical device failed as a matter of law where plaintiff did not present any expert testimony in support of the claim).

**3.** Finally, any claim that is premised on Xarelto's lack of a black-box warning is preempted in any event because the governing regulations prohibit manufacturers from adding black-box warnings without FDA's prior approval. Defendants previously moved for summary judgment on this basis—noting as well that one of Plaintiffs' regulatory experts has expressly and correctly conceded, a pharmaceutical company is forbidden from unilaterally adding a black-box warning to its product's label (*see* Doc. 5110, at 20–21 (quoting Plaintiffs' regulatory expert Dr.

Suzanne Parisian))—but Plaintiffs failed to respond, instead stating that they did "not intend to advance [a black-box] argument at trial." Doc. 5650, at 2 n.2.

As explained in Defendants' earlier labeling preemption motion, the governing FDA regulations permit a manufacturer to add a black-box warning to its product's label *only* if specifically required to do so by FDA. In particular, the regulations state that "[s]pecial problems, particularly those that may lead to death or serious injury, may be required by the Food and Drug Administration to be placed in a prominently displayed box" and that "[i]f a boxed warning is required, its location will be specified by the Food and Drug Administration." 21 C.F.R. § 201.80(e); *see also* 21 C.F.R. § 201.57(c)(1); 44 Fed. Reg. 37434, 37448 (June 26, 1979); 51 Fed. Reg. 43900, 43902 (Dec. 5, 1986). Accordingly, any such claim is preempted because federal law forbade Defendants from "independently" adding a black-box warning to Xarelto's label without prior FDA approval, and because FDA did not require the risk of bleeding to be included in the black-box warning, any claim arising out of their failure to do so is preempted. *See Mutual Pharm. Co. v. Bartlett*, 133 S. Ct. 2466, 2470 (2013); *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 620 (2011); *see also, e.g.*, *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 817 F. Supp. 2d 535, 553 n.97 (E.D. Pa. 2011) (rejecting a claim that the manufacturer should have added a boxed warning because "a boxed warning can be added only with prior FDA approval"); *cf. Ackerman v. Wyeth Pharms.*, 526 F.3d 203, 211 n.12 (5th Cir. 2008).

**B.     Plaintiffs have abandoned any claim regarding Xarelto's lack of a reversal agent, and there is no reliable expert testimony regarding a reversal agent.**

Plaintiffs played for the jury the videotaped deposition of Janssen's employee, Nauman Shah. The portion of Mr. Shah's deposition that was played for the jury included testimony regarding Xarelto's lack of an antidote or reversal agent. *See* 4/27/17 Trial Tr. 879–890. Defendants objected in their deposition designations to those portions of Mr. Shah's testimony,

but the Court overruled those objections. Plaintiffs have no reversal-agent-based claim—and the jury should not be entitled to reach a verdict on the basis of Xarelto's lack of a reversal agent—for two reasons.

**1.** Plaintiffs previously asserted a claim based on Xarelto's lack of an antidote or reversal agent, but the claim was one for design defect. *See* Pls.' Opp. to Defs.' LPLA MSJ (Doc. 5524), at 1 ("Plaintiffs' design defect claims . . . posit that the absence of . . . a reversal agent rendered Xarelto unreasonably dangerous under the LPLA."). Plaintiffs have since dismissed their design-defect claim with prejudice. *See* Stipulation & Order (Doc. 6298). Accordingly, in light of that with-prejudice dismissal, the Court should grant Defendants judgment as a matter of law to the extent that Plaintiffs' claim is based in any way on Xarelto's lack of an antidote or reversal agent. *See, e.g.*, *Cologne*, 2013 WL 5781705, at *2–3; *Overpeck*, 2013 WL 4500469, at *4.

**2.** Plaintiffs have not presented any expert testimony regarding Xarelto's lack of a reversal agent or how a reversal agent would have mattered in the case of Mr. Boudreaux. Accordingly, there is no legally sufficient evidentiary basis on which a jury could find for Plaintiffs on a reversal-agent-based claim. *See Zachary*, 884 F. Supp. at 1065.

**III. There is not a legally sufficient evidentiary basis for a reasonable jury to find for Plaintiffs on the basis of any of their abandoned theories of liability, on which Defendants renew their motion to dismiss with prejudice.**

Defendants previously moved the Court for an order (1) dismissing with prejudice claims based on allegations that Plaintiffs have abandoned and (2) barring scientific evidence based on waiver of *Daubert* arguments. *See* Doc. 5957; *see also* Defs.' Reply Br. (Doc. 6227). The Court reserved ruling on that motion until trial. *See* Order & Reasons (Doc. 6254). Defendants hereby

9

renew their motion and ask that the Court dismiss with prejudice any of Plaintiffs' claims that are based on theories of liability that Plaintiffs have since abandoned:[2]

- That Defendants failed to properly "test" Xarelto before bringing it to market;

- That Xarelto's label should have instructed physicians to perform routine monitoring of patients' PT;

- That Xarelto's label did not adequately warn of the risk of bleeding;

- That Xarelto's label should have included before September 2015 a chart quantifying bleeding rates specifically among U.S. participants in the 14,000-patient ROCKET AF clinical trial, the clinical trial that supported FDA's approval of Xarelto's atrial-fibrillation indication;

- That Xarelto's label should have included language advising of alleged problems with the INRatio device used to measure warfarin patients' coagulation parameters in ROCKET AF;

- That Xarelto's once-daily-dosing regimen is unreasonably dangerous;

- That Xarelto's 15 or 20 mg cumulative dose is too high; and

- That Xarelto's label should have included instructions to physicians to monitor patients' PT for the purpose of adjusting doses.

WHEREFORE, for the reasons stated above, Defendants ask this Court to grant its Motion For Judgement As A Matter Of Law, and for such other relief as the Court deems just and equitable.

Respectfully submitted,

| | |
|---|---|
| BARRASSO USDIN KUPPERMAN FREEMAN & SARVER, L.L.C. | WILKINSON WALSH + ESKOVITZ LLP |
| By: /s/ *Richard E. Sarver* | By: /s/ *Beth A. Wilkinson* |
| Richard E. Sarver | Beth A. Wilkinson |
| Celeste R. Coco-Ewing | Jennifer L. Saulino |
| | Jeremy Barber |

---

[2] Defendants incorporate by reference their arguments in support of their Motion For An Order (1) Dismissing With Prejudice Claims Based on Allegations that Plaintiffs Have Abandoned and (2) Barring Scientific Evidence Based on Waiver of *Daubert* Arguments (Docs. 5957, 6227), and all other related arguments that Defendants have made in these proceedings—whether orally (as reflected in the transcript) or in writing.

BARRASSO USDIN KUPPERMAN FREEMAN & SARVER, L.L.C.
909 Poydras Street, 24th Floor
New Orleans, Louisiana 70112
Telephone: (504) 589-9700
rsarver@barrassousdin.com
ccoco-ewing@barrassousdin.com


DRINKER BIDDLE & REATH LLP

By: /s/ *Susan M. Sharko*
Susan M. Sharko
Drinker Biddle & Reath LLP
600 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
susan.sharko@dbr.com

Rodney M. Hudson
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
Telephone: (415) 591-7500
Rodney.hudson@dbr.com

Chanda A. Miller
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2700
Chanda.Miller@dbr.com


IRWIN FRITCHIE URQUHART & MOORE LLC

By: /s/ *James B. Irwin*
James B. Irwin
Kim E. Moore
Irwin Fritchie Urquhart & Moore LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
jirwin@irwinllc.com


*Attorneys for Defendants Janssen Pharmaceuticals, Inc. and Janssen Research*

WILKINSON WALSH + ESKOVITZ LLP
1900 M. Street NW, Suite 800
Washington, DC 20036
Telephone: (202) 847-4000
bwilkinson@wilkinsonwalsh.com
jsaulino@wilkinsonwalsh.com
jbarber@wilkinsonwalsh.com


NELSON MULLINS RILEY & SCARBOROUGH LLP

By: */s/ David E. Dukes*
David E. Dukes
J. Mark Jones
NELSON MULLINS RILEY & SCARBOROUGH LLP
1320 Main Street, 17th Floor
Columbia, SC 29201
Telephone: (803) 799-2000
David.Dukes@nelsonmullins.com
Mark.Jones@nelsonmullins.com


ARNOLD & PORTER KAYE SCHOLER LLP

By: /s/ *Andrew K. Solow*
Andrew K. Solow
Steven Glickstein
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8485
andrew.solow@apks.com
steven.glickstein@apks.com

William Hoffman
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
william.hoffman@apks.com


BRADLEY ARANT BOULT CUMMINGS LLP

By: */s/ Kevin C. Newsom*
Kevin C. Newsom
Lindsey C Boney IV
BRADLEY ARANT BOULT CUMMINGS LLP

*& Development, LLC*                One Federal Place, 1819 Fifth Avenue North
                                                                                    Birmingham, AL 35203-2119
                                                                                    Telephone: (205) 521-8803
                                                                                    knewsom@bradley.com
                                                                                    lboney@bradley.com


                                                                                    CHAFFE MCCALL L.L.P.
                                                                                    By: /s/ *John F. Olinde*
                                                                                    John F. Olinde
                                                                                    CHAFFE MCCALL L.L.P.
                                                                                    1100 Poydras Street, Suite 2300
                                                                                    New Orleans, LA 70163
                                                                                    Telephone: (504) 585-7241
                                                                                    olinde@chaffe.com


                                                                                   *Attorneys for Bayer HealthCare*
                                                                                   *Pharmaceuticals Inc. and Bayer Pharma AG*

**CERTIFICATE OF SERVICE**

       The undersigned hereby certifies that on the 29th of April, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs by operation of the court's electronic filing system.

                                                 */s/      John F. Olinde*