UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) ) ) ) | MDL 2592 |
| | | SECTION L |
| | | JUDGE ELDON E. FALLON |
| *Joseph J. Boudreaux, Jr., et al. v. Janssen et al.*, Case No. 2:14-cv-02720 | | MAG. JUDGE NORTH |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
MOTION FOR JUDGMENT AS A MATTER OF LAW
AT THE CLOSE OF THE EVIDENCE**

Defendants Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC, Bayer HealthCare Pharmaceuticals Inc., and Bayer Pharma AG (collectively, "Defendants"), pursuant to Rule 50(a), hereby file this memorandum in support of their motion for judgment as a matter of law, at the close of all the evidence, on Plaintiffs' sole remaining cause of action—namely, that Xarelto was unreasonably dangerous because of inadequate warning or instruction, under La. Rev. Stat. Ann. § 2800.57.

The Court should grant Defendants judgment as a matter of law for four reasons. ***First***, there is not a legally sufficient evidentiary basis for a reasonable jury to find that Defendants failed to use reasonable care to provide an adequate warning to Mr. Boudreaux's prescribing physician, Dr. Wong, or that any allegedly inadequate warning proximately caused Mr. Boudreaux's injuries. ***Second***, Plaintiffs have not offered the requisite expert testimony to satisfy their burden of proof. ***Third***, federal law preempts Plaintiffs' claims. ***Fourth***, to the extent that Plaintiffs' sole remaining claim is based on liability theories that Plaintiffs have abandoned, there is not a legally sufficient evidentiary basis for a reasonable jury to find for Plaintiffs, and Defendants accordingly renew their motion to dismiss with prejudice any such claim.

**LEGAL STANDARD**

A motion for judgment as a matter of law should be granted if, after a party has been fully heard by the jury on an issue, "'a reasonable jury would not have a legally sufficient evidentiary basis to find for the [non-moving] party on that issue.'" *Seibert v. Jackson County, Miss.*, 851 F.3d 430, 434 (5th Cir. 2017) (quoting Fed. R. Civ. P. 50(a)).  "[A] party has been fully heard when he rests his case." *Echeverria v. Chevron USA Inc.*, 391 F.3d 607, 610 (5th Cir. 2004).  At that time, the court may "grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue."  Fed. R. Civ. P. 50(a)(1).  "A mere scintilla of evidence is insufficient to present a question for the jury." *Rutherford v. Harris County*, 197 F.3 173, 179 (5th Cir. 1999).  Instead, "[t]here must be a conflict in substantial evidence to create a jury question." *Id*.

**ARGUMENT**

Having dismissed their design-defect claim with prejudice, Plaintiffs have only one remaining cause of action—namely, that Xarelto was unreasonably dangerous because of inadequate warning or instruction, under La. Rev. Stat. Ann. § 2800.57.  *See* Stipulation & Order (Doc. 5340); Stipulation & Order (Doc. 6298).  Plaintiffs' sole theory is that Xarelto's label should have informed healthcare providers of the alleged relationship between PT test results and bleeding risk, and instructed physicians to perform a PT test on Xarelto patients for the specific purpose of assessing their risk of bleeding.

**I.    Defendants are entitled to judgment as a matter of law because there is not a legally sufficient evidentiary basis to create a jury question on Plaintiffs' failure-to-warn claim.**

To prove a failure-to-warn claim under the LPLA in a case involving a prescription medicine, a plaintiff must prove: (1) that the defendant failed to use reasonable care (a) to provide

2

an adequate warning to the physician of a product characteristic that might cause damage that was not otherwise known to the physician, or (b) to adequately instruct the physician on how to safely use the product, and (2) that the failure to warn or instruct the physician proximately caused the plaintiff's injury.  *See* La. Rev. Stat. Ann. § 9:2800.54(A) & (D); *id.* § 9:2800.57; *see also Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 265–66 (5th Cir. 2002).  If a plaintiff fails to come forward with sufficient evidence to permit a reasonable jury to find in his favor on both of these elements, then judgment as a matter of law is appropriate.  *See* Fed. R. Civ. P. 50(a); *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 675 (5th Cir. 1999).

Here, a reasonable jury cannot find that any allegedly inadequate warning proximately caused Mr. Boudreaux's injuries.  Dr. Wong's trial testimony clearly shows that Plaintiffs' proposed warning would not have caused him to change his prescribing decision, and there is not legally sufficient evidence for a reasonable jury to conclude that a different warning would have prevented Mr. Boudreaux's injuries in any event.  Moreover, Defendants are entitled to judgment as a matter of law because there is not a legally sufficient basis for a reasonable jury to find that Defendants failed to provide an adequate warning, and Plaintiffs have no admissible expert testimony supporting their theory.

> **A.** **There is not a legally sufficient evidentiary basis for a reasonable jury to find that any allegedly inadequate warning proximately caused Mr. Boudreaux's injuries.**

Defendants are entitled to judgment as a matter of law because there is not a legally sufficient evidentiary basis for a reasonable jury to conclude that a different warning would both have changed Dr. Wong's prescribing decision and prevented Mr. Boudreaux's alleged injury.

The proximate-cause element of a failure-to-warn claim requires Plaintiffs to prove that an allegedly inadequate warning itself—in addition to the medication—proximately caused Mr. Boudreaux's injury.  *See Stahl*, 283 F.3d at 260–61.  In particular, "the plaintiff must show that a

proper warning would have changed the decision of the treating physician, *i.e.* that but for the inadequate warning, the treating physician would not have used or prescribed the product." *Willett v. Baxter Int'l, Inc.*, 929 F.2d 1094, 1098–99 (5th Cir. 1991). If the plaintiff fails to sustain this burden of proving that a different warning would have changed his physician's prescribing decision, then his claim fails as a matter of law. *See id.* at 1099; *see also, e.g.*, *Allgood v. GlaxoSmithKline PLC*, No. 06-3506, 2008 WL 483574, at *4 (E.D. La. Feb. 20, 2008) (Fallon, J.) (granting summary judgment on a plaintiff's failure-to-warn claims because the prescribing physician's testimony "clearly reveal[ed] that stronger warnings concerning the risk of suicide would not have changed his decision to prescribe Paxil in this case"); *Whitener v. PLIVA, Inc.*, No. 10-1552, 2014 WL 1276489 (E.D. La. Mar. 27, 2014) (Fallon, J.), *aff'd*, 606 F. App'x 762 (5th Cir 2015) (granting summary judgment for defendants because it was "clear . . . that [the doctor] relied principally on his own experience"—not any alleged off-label promotion—and "even knowing everything he knows today, he would have still prescribed [the medication] to [plaintiff]").

**1.** This case begins and ends with Dr. Wong's testimony that, even had Xarelto's label contained Plaintiffs' proposed warning, he would not have changed his prescribing decision for Mr. Boudreaux. The Court previously denied Defendants' learned-intermediary motion for summary judgment, reasoning that the Court must "presume[] that Plaintiffs' doctors would have followed the label's instructions and administered a PT test if so instructed, and [that] Defendants fail to overcome that presumption *at this juncture*." Doc. 6232, at 5 (emphasis added). The Court added that the question whether Mr. Boudreaux's prescribing physician, Dr. Wong, "would have administered PT tests if the label so instructed . . . is factually pregnant and will be addressed by the jury at trial." *Id.* at 5–6.

4

Now that the jury at trial has heard Dr. Wong's testimony, there is not a legally sufficient evidentiary basis for a reasonable jury to find that any allegedly inadequate warning proximately caused Mr. Boudreaux's injuries. Dr. Wong testified, based on his review of the literature and his own clinical experience, that he was aware of the risks of Xarelto, that he knew of no "reliable test that would be useful to [him] as a physician that would help [him] understand if a particular patient is at an increased risk," and that he is not aware of "any FDA approved tests that allows [him] to test a patient who is on Xarelto to determine . . . [w]hether they're at an increased risk." 4/28/17 AM Trial Tr. 987:7–15, 992:10–15. Dr. Wong further testified that "if there's not an FDA approved test"—and the evidence shows that Plaintiffs' proposed Neoplastin PT test is not approved for use with Xarelto patients—he would not "use it with a patient." *Id.* at 987:16–18; *see also* 4/26/17 PM Trial Tr. 800:9–25 (acknowledging that Neoplastin PT test is not approved for use with Xarelto). Accordingly, Dr. Wong testified unequivocally that even if Plaintiffs' proposed warnings or instructions—about using a Neoplastin PT test off-label—had been in Xarelto's label, he "still [would] prescribe Xarelto for [Mr. Boudreaux] today." 4/28/17 AM Trial Tr. 992:16–23; *see also id.* at 979:3–9.

A reasonable jury could not find that Plaintiffs have proved proximate cause because they are shooting at the wrong standard—something more akin to "negligence in the air." Dr. Kessler's conclusory opinion that a test would have been "helpful" does not establish that Dr. Wong would have changed his prescribing decision, or had reason to change his treatment decisions. Indeed, although Dr. Wong agreed that if there was an FDA-approved test that "generally told [him] whether someone was at a higher risk" he would use that test (*id.* at 991:21–25; *see also id.* at 965:15–19, 971:18–21, 986:21–24), he also testified that he does not know of the existence of such a test and that FDA certainly has not approved one (*see id.* at 986:18–20, 987:7–15, 992:1–3). He

5

further explained that unless the test provided "clinically useful testing information," it would not change his prescribing decisions. *See id.* at 992:20–23. There is no evidence that a PT test would have provided clinically meaningful results for Mr. Boudreaux's treatment. Under these circumstances, Defendants' motion for judgment as a matter of law should be granted. To the extent that Dr. Wong's testimony that he would have complied with instructions to perform a test *if*—but only if—the test had been FDA approved and if the test would help him understand whether a patient was at risk is relevant, it goes only to the issue whether a heeding presumption has been rebutted and not to Defendants' duty to warn.

    **2.**    Even setting aside Dr. Wong's testimony, there is not a legally sufficient evidentiary basis for a reasonable jury to find that, a different warning would have prevented Mr. Boudreaux's alleged injury. *See Stahl*, 283 F.3d at 266. There is no evidence that Mr. Boudreaux ever received a PT test using the Neoplastin PT test that Plaintiffs say Dr. Wong should have administered. Dr. Leissinger acknowledged that Mr. Boudreaux had an Innovin PT test taken when he presented to the hospital. *See* 4/26/17 PM Trial Tr. 805:5–9. Although Dr. Leissinger testified that Mr. Boudreaux's Innovin-measured PT was "slightly prolonged" at that time (*id.* at 734:15–19), Plaintiffs offered no testimony or evidence that this "slightly elevated" PT number is clinically significant. Dr. Leissinger speculated that "[h]ad a Neoplastin PT been used, compared to the Innovin PT that was used, it likely would have been even higher" (*id.* at 805:5–9), but Plaintiffs presented no evidence to support that speculative conclusion. Indeed, the jury heard no evidence that an Innovin PT reading can be converted to a Neoplastin PT reading, and Plaintiffs presented no evidence showing the PT level at which a patient like Mr. Boudreaux should, on their theory, be removed from Xarelto. *See, e.g.*, *id.* at 807:24–808:24 (Dr. Leissinger) (no evidence that Innovin PT is predictive of bleeding risk or Xarelto concentration levels, or that Neoplastin

PT can be used in a clinical meaningful way); 5/1/17 AM Trial Tr. at 1246:8–1247:4 (Dr. Johnson) (no way to convert Innovin PT value to Neoplastin PT value). Accordingly, there is not a legally sufficient evidentiary basis for a reasonable jury to conclude that any alleged inadequate warning proximately caused Mr. Boudreaux's injuries.

> **B.     There is not a legally sufficient evidentiary basis for a reasonable jury to find that Defendants failed to use reasonable care to provide an adequate warning of a product characteristic that might cause damage that was not otherwise known.**

Separately, the evidence is clear that Xarelto's label adequately warns of the risks, and there is no evidence that Xarelto's label "failed to warn (or inadequately warned) [Dr. Wong] of a risk associated with [Xarelto] that was not otherwise known to" Dr. Wong. *Stahl*, 283 F.3d at 265–66 (citing *Willett*, 929 F.2d at 1098).

Plaintiffs must prove that Defendants failed to use reasonable care to provide an "adequate warning," which means "a warning or instruction that would lead an ordinary reasonable user or handler of a product to contemplate the danger in using or handling the product and either to decline to use or handle the product or, if possible, to use or handle the product in such a manner as to avoid the damage for which the claim is made." La. Rev. Stat. Ann. § 9:2800.53(9). Under Louisiana law, a prescription-drug manufacturer has no duty to warn a patient directly regarding the potential risks associated with use of the medicine. *See Stahl*, 283 F.3d at 265; *Mikell v. Hoffman-LaRoche, Inc.*, 649 So. 2d 75, 80 (La. Ct. App. 1994). Instead, Louisiana courts apply the learned-intermediary doctrine, which provides that a drug manufacturer discharges its duty to consumers by reasonably informing prescribing physicians of a medicine's risk. *Id.* To satisfy this adequacy element in a pharmaceutical case, the plaintiff must prove that "[1] the defendant failed to warn (or inadequately warned) the physician [2] of a risk associated with the product that was not otherwise known to the physician." *Stahl*, 283 F.3d at 265–66.

7

Plaintiffs have not made that showing here. A reasonable jury would not have a sufficient basis to find that Defendants failed to provide Dr. Wong an adequate warning of a risk not otherwise to him for the following reasons:

**1.** Louisiana law requires Plaintiffs to prove that Defendants "failed to warn (or inadequately warned) the physician of a risk associated with the product *that was not otherwise known to the physician.*" *Stahl*, 283 F.3d at 265–66 (emphasis added). Plaintiffs have not presented a legally sufficient basis for a reasonable jury to conclude that Dr. Wong did not already know about the risks regarding Xarelto. Dr. Wong testified that, before he prescribed Xarelto, he was aware of its risks—including the risk of bleeding—and that he stays abreast of the literature regarding Xarelto. *See, e.g.*, 4/28/17 AM Trial Tr. 963:10–12, 968:8–11, 983:7–15, 985:8–18, 986:16–20, 991:5–12, 992:10–15.

**2.** Moreover, as Dr. Wong testified, Xarelto's label adequately warned of the risks and provided information consistent with the data. *See, e.g.*, 4/28/17 AM Trial Tr. 991:2–4. Under Fifth Circuit precedent, when, as here, "a particular adverse effect is clearly and unambiguously mentioned in a warning label and the prescribing physician unequivocally states that he or she was adequately informed of that risk by the warning, the manufacturer has satisfied its duty to warn under the learned intermediary doctrine." *Stahl*, 283 F.3d at 268. In that circumstance, the doctor's testimony that the labeling clearly informed him of the "specific ailment suffered by the plaintiff" is sufficient to render the label "adequate as a matter of law." *Id*. at 267; *see also Jackson v. Johnson & Johnson*, No. 10-cv-1113, 2012 WL 2428262, at *3–4 (W.D. La. June 25, 2012) (label that "warned of serious and occasionally fatal reactions of a kind at issue in [the] case" was adequate as a matter of law" (emphasis omitted)); *McCarthy v. Danek Medical, Inc.*, 65 F. Supp. 2d 410, 413 (E.D. La. 1999) (granting summary judgment on plaintiff's failure to warn claim

8

where "there is no factual dispute that the risk associated with the [medical device] were known by [the physician] and were disclosed to plaintiff, who acknowledged same on the informed consent form").

**3.** Finally, Defendants are entitled to judgment as a matter of law because Plaintiffs' experts' opinions regarding the adequacy of Xarelto's labeling should have been excluded under *Daubert*. Plaintiffs' only regulatory expert is Dr. David Kessler. *See* 4/26/17 Trial Tr. 785:8–10 (Mr. Denton) (objecting during cross-examination of Dr. Leissinger about labeling question and conceding that she is "certainly not a regulatory expert"). Dr. Kessler offered conclusory *ipse dixit* opinions directed at the alleged inadequacy of Xarelto's label, but he was only able to opine that it would be "helpful" for Xarelto's label to instruct physicians to monitor blood coagulation levels with a Neoplastin PT test. 4/25/17 AM Trial Tr. 286:12–287:1. Dr. Kessler's opinion that Xarelto's warning could have been "better" to make its use "safer" by providing information about a "helpful" laboratory test does not satisfy Plaintiffs' burden of proof under Louisiana law, which requires Plaintiffs to prove that "the defendant failed to warn the physician of a risk associated with the use of the product." *Willett*, 929 F.2d at 1098–99.

Moreover, Dr. Kessler's opinion that this laboratory test would have provided "helpful" information to physicians was not based on any underlying literature or data to a reasonable degree of medical or scientific certainty required by *Daubert* and should have been excluded. *See* Doc. 6319. Indeed, Dr. Kessler offered no opinion testimony that the "off label" use of a Neoplastin PT test with Xarelto provides clinically significant information upon which to make treatment decisions in patients using Xarelto. The question whether PT can identify patients at a higher risk of bleeding generally or specifically with respect with Xarelto is one that can only be determined through expert testimony based on reliable scientific and medical evidence, and none of Plaintiffs'

9

expert testimony meets *Daubert*'s requirements.[1]  Without appropriate expert testimony, Plaintiffs' claim regarding the alleged inadequacy of Xarelto's label fails. *See Zachary v. Dow Corning Corp.*, 884 F. Supp. 1061, 1065 (M.D. La. 1995) (plaintiffs' failure-to-warn claim against manufacturer of medical device failed as a matter of law where plaintiff did not present any expert testimony in support of the claim).

      **C.**      **To the extent that Plaintiffs' failure-to-warn claim is based on Dr. Kessler's and Dr. Leissinger's dosing and monitoring opinions, Defendants are entitled to judgment as a matter of law because those opinions should have been excluded.**

The opinions of Plaintiffs' expert witnesses, Dr. Kessler and Dr. Cindy Leissinger, (a) that Xarelto patients should be switched to unapproved new doses based on PT or other monitoring results, (b) that Xarelto would be safer if dosed twice daily rather than the FDA-approved once-daily dose, and (c) that the FDA-approved total daily dose of Xarelto is too high should have been excluded for the reasons previously identified by Defendants—including that those theories fail under *Daubert*, that Plaintiffs have abandoned those theories, and that Plaintiffs have waived their opposition to Defendants' *Daubert* motion to exclude those theories. Accordingly, there is not a legally sufficient evidentiary basis for a reasonable jury to find for Plaintiffs on the issue whether Defendants failed to adequately warn or instruct.[2]

---

[1] Defendants incorporate by reference their arguments in support of their *Daubert* Motion to Exclude Expert Opinions and Testimony Regarding Unapproved Dosing and Monitoring Regimens (Docs. 5113, 5114, 5688), their Motion For An Order (1) Dismissing With Prejudice Claims Based on Allegations that Plaintiffs Have Abandoned and (2) Barring Scientific Evidence Based on Waiver of *Daubert* Arguments (Docs. 5957, 6227), and all other arguments to exclude those opinions or related testimony that Defendants have made in these proceedings—whether orally (as reflected in the transcript) or in writing.

[2] Defendants incorporate by reference their arguments in support of their *Daubert* Motion to Exclude Expert Opinions and Testimony Regarding Unapproved Dosing and Monitoring Regimens (Docs. 5113, 5114, 5688), their Motion For An Order (1) Dismissing With Prejudice Claims Based on Allegations that Plaintiffs Have Abandoned and (2) Barring Scientific Evidence Based on Waiver of *Daubert* Arguments (Docs. 5957, 6227), and all other arguments to exclude those opinions or related testimony that Defendants have made in these proceedings—whether orally (as reflected in the transcript) or in writing.

## II. Defendants are entitled to judgment as a matter of law because Plaintiffs have not proffered the required expert testimony to satisfy their burden of proof.

Defendants are entitled to judgment as a matter of law because Plaintiffs have not offered any reliable testimony that Mr. Boudreaux was susceptible to bleeding based on any use of a hypothetical Neoplastin PT test. Dr. Leissinger testified that Mr. Boudreaux had a slightly elevated PT when he presented to the hospital, using an Innovin PT test (not Neoplastin, Plaintiffs' proposed test). 4/26/2017 PM Transcript at 734:15–19 ("Q. Okay. So let's look at the prothrombin time. Do you see that? A. I do. Q. And the value is 13.6? A. It is slightly prolonged. Q. And the reference -- and how do you know that is prolonged, slightly prolonged? A. It's outside of the reference range. So 12.5 being the upper limit, and it's 13.6."). Plaintiffs offered no testimony that this slightly elevated range is clinically significant for any patient using Xarelto. Rather, Dr. Leissinger testified that because Mr. Boudreaux skipped a dose of Xarelto a day earlier, she believes that had Mr. Boudreaux's PT been tested in closer proximity to his use of Xarelto, his PT would have been higher. *See id.* at 737:25–738:4 ("So if we -- you know, if we backtrack and think about what his levels may have been at that 12-hour point, it would be four times higher -- at least four times higher than what it was now, I believe that he would have had high levels of Xarelto in his blood at that point.").

Dr. Leissinger's opinion that Mr. Boudreaux's prothrombin time—based on a test not approved by FDA for use with Xarelto and not even the test that Plaintiffs say that Xarelto's label should have instructed physicians to use—"may have been" higher is pure speculation and cannot be the basis of any finding of liability in this case. Testimony that a test "may have been higher" had one been performed at some different point in time, using a different test, is not sufficient to satisfy Plaintiffs' burden of proof for expert testimony that it is more likely than not that the level would have been higher.

11

### III. Defendants are entitled to judgment as a matter of law because federal law preempts Plaintiffs' failure-to-warn claim.

Defendants are entitled to judgment as a matter of law because federal law preempts Plaintiffs' failure-to-warn claim.  *See, e.g.*, *Mutual Pharm. Co. v. Bartlett*, 133 S. Ct. 2466 (2013); *PLIVA, Inc. v. Mensing*, 564 U.S. 604 (2011); *Wyeth v. Levine*, 555 U.S. 555 (2009); 21 C.F.R. § 201.57(a); 21 C.F.R. § 314.70; 21 C.F.R. § 807.81; 21 C.F.R. § 814.39; 21 C.F.R. § 864.7750(a); *see also, e.g.*, Guidance for Industry and Food and Drug Administration Staff: In Vitro Companion Diagnostic Devices (Aug. 6, 2014).  In particular, federal law preempts Plaintiffs' failure-to-warn claim as a matter of law (1) because Defendants could not "independently" or "unilaterally" alter Xarelto's label in the way that Plaintiffs' claim requires—including to add a recommendation to use the Neoplastin PT test "off-label"[3]—and (2) because "clear evidence" demonstrates that FDA would have rejected—and in fact did reject—a proposal very similar to Plaintiffs' proposed warning here.[4]  Defendants incorporate by reference their arguments in support of their Motion for Partial Summary Judgment on the Ground that Federal Law Preempts Plaintiffs' Dosing, Monitoring, and Other Design-Related Claims (Docs. 5109, 5678, 5904, 5988), their Motion for Partial Summary Judgment ono the Ground that Federal Law Preempts Plaintiffs' Failure-To-Warn Claims (Docs. 5110, 5689), and all other related arguments that Defendants have made in these proceedings—whether orally (as reflected in the transcript) or in writing.

---

[3] Plaintiffs' claim that the FDA-approved Xarelto label should have instructed physicians to monitor coagulation parameters of Xarelto with Neoplastin is considered "off label" use under federal law.  As the court in *Gavin v. Medtronic*, 2013 U.S. Dist. LEXIS 101216, at *55 (E.D. La. 2013) observed, "the very concept of 'off label' use and promotion is derived exclusively from the regulatory system imposed" by the Food Drug and Cosmetic Act.  *See also Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2004).

[4] There has been much discussion with the Court about whether "clear evidence" presents a question of law or fact, but the Court has ultimately ruled—consistent with hornbook Fifth Circuit law and the great weight of authority—that this question is a legal question that will not go to the jury.  *See* 5/1/17 AM Trial Tr. 1147:3–16.

**IV.    There is not a legally sufficient evidentiary basis for a reasonable jury to find for Plaintiffs on the basis of any of their abandoned theories of liability, on which Defendants renew their motion to dismiss with prejudice.**

**A.    Plaintiffs have abandoned any black-box warning claim, there is no reliable expert testimony that Xarelto's label is inadequate because it lacks a black-box warning, and such a claim is preempted in any event.**

1.    Plaintiffs have previously committed to the Court that they "do not intend to advance [a black-box] argument at trial."  Pls.' Opp. to Defs.' Labeling Preemption MSJ (Doc. 5650) at 2 n.2.  Indeed, Plaintiffs declined to respond to Defendants' argument that federal law preempts such a claim because—as Plaintiffs' own regulatory expert, Dr. Suzanne Parisian concedes—a pharmaceutical company is forbidden from unilaterally adding a black-box warning to its product's label.  *See* Defs.' Labeling Preemption MSJ (Doc. 5110-1), at 20–21 (citing cases).  And in their opening statement to the jury, Plaintiffs emphasized that this case is ***not*** about warnings in the Xarelto label about the risk of bleeding because, in their words, "all doctors know that anticoagulants have a bleed risk."  4/24/17 PM Trial Tr. 90:18–23 (Mr. Barr) ("Now, the defendants may also try to make this case about the risk of bleeding.  They're probably going to show you all the times in their label where they talk about the risk of bleeding.  There will be doctors that testify that all anticoagulants have a bleed risk.  I mean, all doctors know that anticoagulants have a bleed risk.").  Accordingly, in light of Plaintiffs' abandonment, the Court should grant Defendants judgment as a matter of law to the extent that Plaintiffs' failure-to-warn claim is based on Xarelto's lack of a black-box warning.  *See, e.g.*, *Cologne v. Shell Oil Co.*, No. 12-735, 2013 WL 5781705, at *2–3 (E.D. La. Oct. 25, 2013) (Fallon, J.); *Overpeck v. Roger's Supermarket, LLC*, No. 12-124, 2013 WL 4500469, at *4 (N.D. Miss. Aug. 21, 2013).

2.    Moreover, any claim based on Xarelto's lack of a black-box warning fails as a matter of law because Plaintiffs have offered no expert evidence to support that claim.  *See, e.g.*, *Zachary*, 884 F. Supp. 1061 (granting summary judgment on failure-to-warn claim in medical-

13

device case for lack of expert testimony). During the cross-examination of Plaintiffs' hematology expert Dr. Cindy Leissinger, the jury heard the following exchange:

> Q. Now, you understand that, in the label for Xarelto, there are multiple warnings about the bleeding risk; right? Associated with the drug?
>
> A. The one thing that I'm most aware of with the Xarelto label is that, unlike the label for warfarin or Coumadin, which has what's called a black box warning that comes on the label . . . [n]o such warning exists to the label for Xarelto, which is very surprising to me. . . .
>
> Q. Neither does the -- excuse me. I don't mean to cut you off.
>
> A. Go ahead.
>
> Q. Do you understand that the plaintiffs in this case aren't claiming that a black box warning should be on the label?
>
> MR. DENTON: I object, Your Honor, as to what we're alleging.
>
> MS. WILKINSON: That is -- it was said it wasn't at issue, Your Honor.
>
> MR. DENTON: Can we approach? It's a warnings case.

4/26/14 PM Trial Tr. 762:17–763:16. At sidebar, Plaintiffs made the argument that this "is an inadequate warning and instructions case, and [we] think the jury can take into account whatever facts are relevant to it. [We] don't think it's proper to try to limit with an expert witness what the plaintiffs' arguments are." *Id.* at 763:20–24 (Mr. Meunier). The Court overruled the objection and stated "I didn't hear anything about a black box warning; I heard warning and instructions." *Id.* at 764:3–24.

That evidence, standing alone, is legally insufficient for a reasonable jury to conclude that Defendants failed to use reasonable care by failing to include a black-box warning in Xarelto's label. As Plaintiffs readily conceded, Dr. Leissinger is "certainly not a regulatory expert." *Id.* at 785:8–10 (Mr. Denton). Moreover, Plaintiffs' sole regulatory expert, Dr. David Kessler, did not provide any opinions or testimony on Xarelto's lack of a black-box warning. Accordingly, there

is not a legally sufficient evidentiary basis for a reasonable jury to conclude that Defendants failed to use reasonable care on the basis that Xarelto's label lacks a black-box warning. *See, e.g.*, *Zachary*, 884 F. Supp. at 1065 (plaintiffs' failure-to-warn claim against manufacturer of medical device failed as a matter of law where plaintiff did not present any expert testimony in support of the claim).

**3.** Finally, any claim that is premised on Xarelto's lack of a black-box warning is preempted in any event because the governing regulations prohibit manufacturers from adding black-box warnings without FDA's prior approval. Defendants previously moved for summary judgment on this basis—noting as well that one of Plaintiffs' regulatory experts has expressly and correctly conceded, a pharmaceutical company is forbidden from unilaterally adding a black-box warning to its product's label (*see* Doc. 5110, at 20–21 (quoting Plaintiffs' regulatory expert Dr. Suzanne Parisian))—but Plaintiffs failed to respond, instead stating that they did "not intend to advance [a black-box] argument at trial." Doc. 5650, at 2 n.2.

As explained in Defendants' earlier labeling preemption motion, the governing FDA regulations permit a manufacturer to add a black-box warning to its product's label *only* if specifically required to do so by FDA. In particular, the regulations state that "[s]pecial problems, particularly those that may lead to death or serious injury, may be required by the Food and Drug Administration to be placed in a prominently displayed box" and that "[i]f a boxed warning is required, its location will be specified by the Food and Drug Administration." 21 C.F.R. § 201.80(e); *see also* 21 C.F.R. § 201.57(c)(1); 44 Fed. Reg. 37434, 37448 (June 26, 1979); 51 Fed. Reg. 43900, 43902 (Dec. 5, 1986). Accordingly, any such claim is preempted because federal law forbade Defendants from "independently" adding a black-box warning to Xarelto's label without prior FDA approval, and because FDA did not require the risk of bleeding to be included

in the black-box warning, any claim arising out of their failure to do so is preempted. *See Bartlett*, 133 S. Ct. at 2470; *Mensing*, 564 U.S. at 620; *see also, e.g.*, *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 817 F. Supp. 2d 535, 553 n.97 (E.D. Pa. 2011) (rejecting a claim that the manufacturer should have added a boxed warning because "a boxed warning can be added only with prior FDA approval"); *cf. Ackerman v. Wyeth Pharms.*, 526 F.3d 203, 211 n.12 (5th Cir. 2008).

### B. Plaintiffs have abandoned any claim regarding Xarelto's lack of a reversal agent, and there is no reliable expert testimony regarding a reversal agent.

Plaintiffs played for the jury the videotaped deposition of Janssen's employee, Nauman Shah. The portion of Mr. Shah's deposition that was played for the jury included testimony regarding Xarelto's lack of an antidote or reversal agent. *See* 4/27/17 Trial Tr. 879–890. Defendants objected in their deposition designations to those portions of Mr. Shah's testimony, but the Court overruled those objections. Plaintiffs have no reversal-agent-based claim—and the jury should not be permitted to reach a verdict on the basis of Xarelto's lack of a reversal agent— for two reasons:

**1.** Plaintiffs previously asserted a claim based on Xarelto's lack of an antidote or reversal agent, but the claim was one for design defect. *See* Pls.' Opp. to Defs.' LPLA MSJ (Doc. 5524), at 1 ("Plaintiffs' design defect claims . . . posit that the absence of . . . a reversal agent rendered Xarelto unreasonably dangerous under the LPLA."). Plaintiffs have since dismissed their design-defect claim with prejudice. *See* Stipulation & Order (Doc. 6298). Accordingly, in light of that with-prejudice dismissal, the Court should grant Defendants judgment as a matter of law to the extent that Plaintiffs' claim is based in any way on Xarelto's lack of an antidote or reversal agent. *See, e.g.*, *Cologne*, 2013 WL 5781705, at *2–3; *Overpeck*, 2013 WL 4500469, at *4.

**2.** Plaintiffs have not presented any expert testimony regarding Xarelto's lack of a reversal agent or how a reversal agent would have mattered in the case of Mr. Boudreaux. Accordingly, there is no legally sufficient evidentiary basis on which a jury could find for Plaintiffs on a reversal-agent-based claim. *See Zachary*, 884 F. Supp. at 1065.

**C.  Plaintiffs have abandoned other liability theories, for which they have not presented expert evidence at trial.**

Defendants previously moved the Court for an order (1) dismissing with prejudice claims based on allegations that Plaintiffs have abandoned and (2) barring scientific evidence based on waiver of *Daubert* arguments. *See* Doc. 5957; *see also* Defs.' Reply Br. (Doc. 6227). The Court reserved ruling on that motion until trial. *See* Order & Reasons (Doc. 6254). Defendants hereby renew their motion and ask that the Court dismiss with prejudice any of Plaintiffs' claims that are based on theories of liability that Plaintiffs have since abandoned:[5]

- That Defendants failed to properly "test" Xarelto before bringing it to market;

- That Xarelto's label should have instructed physicians to perform routine monitoring of patients' PT;

- That Xarelto's label did not adequately warn of the risk of bleeding;

- That Xarelto's label should have included before September 2015 a chart quantifying bleeding rates specifically among U.S. participants in the 14,000-patient ROCKET AF clinical trial, the clinical trial that supported FDA's approval of Xarelto's atrial-fibrillation indication;

- That Xarelto's label should have included language advising of alleged problems with the INRatio device used to measure warfarin patients' coagulation parameters in ROCKET AF;

- That Xarelto's once-daily-dosing regimen is unreasonably dangerous;

---

[5] Defendants incorporate by reference their arguments in support of their Motion For An Order (1) Dismissing With Prejudice Claims Based on Allegations that Plaintiffs Have Abandoned and (2) Barring Scientific Evidence Based on Waiver of *Daubert* Arguments (Docs. 5957, 6227), and all other related arguments that Defendants have made in these proceedings—whether orally (as reflected in the transcript) or in writing.

- That Xarelto's 15 or 20 mg cumulative dose is too high; and

- That Xarelto's label should have included instructions to physicians to monitor patients' PT for the purpose of adjusting doses.

WHEREFORE, for the reasons stated above, Defendants ask this Court to grant its Motion For Judgment As A Matter Of Law, and for such other relief as the Court deems just and equitable.

Respectfully submitted,

BARRASSO USDIN KUPPERMAN FREEMAN & SARVER, L.L.C.

By: /s/ *Richard E. Sarver*
Richard E. Sarver
Celeste R. Coco-Ewing
BARRASSO USDIN KUPPERMAN FREEMAN & SARVER, L.L.C.
909 Poydras Street, 24th Floor
New Orleans, Louisiana 70112
Telephone: (504) 589-9700
rsarver@barrassousdin.com
ccoco-ewing@barrassousdin.com


DRINKER BIDDLE & REATH LLP

By: /s/ *Susan M. Sharko*
Susan M. Sharko
Drinker Biddle & Reath LLP
600 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
susan.sharko@dbr.com

Rodney M. Hudson
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
Telephone: (415) 591-7500
Rodney.hudson@dbr.com

Chanda A. Miller
Drinker Biddle & Reath LLP

WILKINSON WALSH + ESKOVITZ LLP

By: /s/ *Beth A. Wilkinson*
Beth A. Wilkinson
Jennifer L. Saulino
Jeremy Barber
WILKINSON WALSH + ESKOVITZ LLP
1900 M. Street NW, Suite 800
Washington, DC 20036
Telephone: (202) 847-4000
bwilkinson@wilkinsonwalsh.com
jsaulino@wilkinsonwalsh.com
jbarber@wilkinsonwalsh.com


NELSON MULLINS RILEY & SCARBOROUGH LLP

By: /s/ *David E. Dukes*
David E. Dukes
J. Mark Jones
NELSON MULLINS RILEY & SCARBOROUGH LLP
1320 Main Street, 17th Floor
Columbia, SC 29201
Telephone: (803) 799-2000
David.Dukes@nelsonmullins.com
Mark.Jones@nelsonmullins.com


ARNOLD & PORTER KAYE SCHOLER LLP

By: /s/ *Andrew K. Solow*
Andrew K. Solow
Steven Glickstein
ARNOLD & PORTER KAYE SCHOLER LLP

18

One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2700
Chanda.Miller@dbr.com

IRWIN FRITCHIE URQUHART & MOORE LLC

By: /s/ *James B. Irwin*
James B. Irwin
Kim E. Moore
Irwin Fritchie Urquhart & Moore LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
jirwin@irwinllc.com

*Attorneys for Defendants Janssen Pharmaceuticals, Inc. and Janssen Research & Development, LLC*

250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8485
andrew.solow@apks.com
steven.glickstein@apks.com

William Hoffman
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
william.hoffman@apks.com

BRADLEY ARANT BOULT CUMMINGS LLP

By: */s/ Kevin C. Newsom*
Kevin C. Newsom
Lindsey C Boney IV
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place, 1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8803
knewsom@bradley.com
lboney@bradley.com

CHAFFE MCCALL L.L.P.
By: /s/ *John F. Olinde*
John F. Olinde
CHAFFE MCCALL L.L.P.
1100 Poydras Street, Suite 2300
New Orleans, LA 70163
Telephone: (504) 585-7241
olinde@chaffe.com

*Attorneys for Bayer HealthCare Pharmaceuticals Inc. and Bayer Pharma AG*

## CERTIFICATE OF SERVICE

  The undersigned hereby certifies that on the 3rd of May, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to Liaison Counsel for Plaintiffs by operation of the court's electronic filing system.

            */s/  John F. Olinde*