UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE ELDON E. FALLON |
| Joseph Orr, Jr., et al. v. Janssen et al. Case No. 2:15-cv-03708 | MAGISTRATE NORTH |

DEFENDANTS' JOINT OPPOSITION TO PLAINTIFFS' MOTION
FOR LEAVE TO AMEND PLAINTIFFS' COMPLAINT

Defendants Bayer HealthCare Pharmaceuticals Inc., Bayer Pharma AG, Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC, Janssen Ortho LLC, and Johnson & Johnson (collectively, "Defendants") hereby oppose Plaintiffs' Motion for Leave to Amend Plaintiffs' Complaint (Doc. 6112).

Plaintiffs have moved for leave to amend the operative complaint in an effort, they say, to "mak[e] explicit Sharyn Orr's right to recover her 'Lost Chance of Survival' damages under Louisiana law." Doc. 6112-1, at 1. Their motion should be denied for two independent reasons. *First*, Plaintiffs' proposed amendment is futile because no Louisiana court—or, for that matter, any court at all—has extended the lost-chance doctrine to a product-liability action. *Second*, Plaintiffs' proposed amendment is untimely and prejudicial because Plaintiffs waited until well after the close of discovery and the filing of dispositive motions, and moved to amend only on the eve of trial.

ARGUMENT

Under Federal Rule of Civil Procedure 15(a), a district court "has discretion to grant or deny motions for leave to amend." *In re Vioxx Prods. Liab. Litig.*, 874 F. Supp. 2d 599, 602 (E.D. La. 2012) (Fallon, J.). The Court "properly exercises its discretion under Rule 15(a)(2) when it

denies leave to amend for a substantial reason, such as undue delay, repeated failures to cure deficiencies, undue prejudice, or futility." *U.S. ex rel. Spicer v. Westbrook*, 751 F.3d 354, 367 (5th Cir. 2014).

## I. Plaintiffs' proposed amendment is futile because lost-chance damages are not recoverable in a product-liability action under the LPLA.

The futility of Plaintiffs' proposed amendment provides an independent basis for the Court to deny leave to amend their complaint. *See Vioxx*, 874 F. Supp. 2d at 602; *see also Johnson v. Teva Pharm. USA, Inc.*, 758 F.3d 605, 611 (5th Cir. 2014) ("A district court does not abuse its discretion in denying leave to amend if amendment would be futile."). An amendment is futile if "the amended complaint would fail to state a claim upon which relief could be granted under the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Vioxx*, 874 F. Supp. 2d at 602–03 (citation and internal quotation marks omitted).

Here, extending the lost-chance doctrine to allow for damages under the LPLA is both procedurally and substantively improper: procedurally, because this Court is "not free to fashion new theories of recovery under Louisiana law," *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (citation and internal quotation marks omitted), and substantively, because no court to consider the question has extended the doctrine to cover product-liability claims.

### A. No Louisiana court has extended the "lost chance" doctrine to product-liability claims, and this Court should not do so under *Erie*.

Plaintiffs assert in conclusory fashion that amendment is necessary to "mak[e] explicit Sharyn Orr's right to recover her 'Lost Chance of Survival' damages under Louisiana law" (Doc. 6112-1, at 1), but it certainly is not "explicit" that any such right exists. Plaintiffs have stipulated that their claims are governed exclusively by the LPLA. *See* Stipulation and Order, (Doc. 5341), at 1. Nonetheless, they have not cited a single case that has applied the lost-chance doctrine to an LPLA claim. And, more broadly, the Louisiana Supreme Court has never held that the doctrine

2

applies outside the medical-malpractice context, much less to LPLA claims in particular. *See Smith v. State, Dep't of Health & Hosps.*, 676 So. 2d 543, 547 n.7 (La. 1996) ("This decision only addresses damages in a medical malpractice case and does not consider damages for loss of a chance of survival in cases against other types of tortfeasors. That decision is left for another day." (internal citations omitted)). This absence of authority alone is a sufficient basis to deny Plaintiffs' motion. Federal courts sitting in diversity are charged "to predict state law, not to create or modify it." *Looney Ricks Kiss Architects, Inc. v. State Farm Fire & Cas. Co.*, 677 F.3d 250, 256 (5th Cir. 2012); *see also Gines*, 699 F.3d at 816.

In fact, the Fifth Circuit, relying on this limiting principle of federal jurisdiction, has previously refused to "read Mississippi law as recognizing reputational harm as a basis for damages" in a fraud action. *See David v. World Marine, L.L.C.*, 647 F. App'x 461, 468 (5th Cir. 2016). The court explained that it was unaware of—and had not been directed to—any "Mississippi caselaw recognizing or discussing damages based on reputational harm." *Id.* "Given this lack of caselaw," the Fifth Circuit declined to extend Mississippi law to allow for recovery of damages where Mississippi's own state courts had not. *Id.* So too here. Plaintiffs do not identify any Louisiana authority providing for lost-chance damages in a product-liability action, and in the absence of such authority, this Court should not extend Louisiana law to do just that.

3

### B.     The lost-chance doctrine should be applied only to medical malpractice claims.

Even if this Court were to consider extending Louisiana law, the lost-chance doctrine is nonetheless inapplicable here. Under Louisiana law, a plaintiff in a medical-malpractice case may recover damages for lost chance of survival. *See Hastings v. Baton Rouge Gen. Hosp.*, 498 So. 2d 713 (La. 1986). But the Louisiana Supreme Court has not extended the doctrine outside the medical-malpractice context. *See Smith*, 676 So. 2d at 547 n.7. Even assuming that the lost-chance doctrine may apply to some non-medical malpractice tort claims generally, it plainly does not apply in a product-liability case governed by the LPLA.

#### 1.     The LPLA contemplates recovery only where a product causes an injury—not where it fails to mitigate harm.

*First*, the LPLA provides the exclusive remedies against a manufacturer for "damage[s]" allegedly caused by the manufacturer's products. La. Rev. Stat. § 9:2800.52. The LPLA defines damages compensable under the statute as "all damage *caused by* a product." *Id.* § 9:2800.53(5) (emphasis added). The LPLA therefore subjects a manufacturer to liability only if its product *causes* the injury—not if the product otherwise fails to mitigate harm. *Cf. Wiltz v. Bayer CropScience, Ltd. P'ship*, 645 F.3d 690, 699 (5th Cir. 2011) ("The LPLA imposes liability on manufacturers only for damages 'proximately caused' by an unreasonably dangerous product.").[1] The lost-chance doctrine, which allows recovery if a defendant lessens the plaintiff's chance of survival after he suffers an initial injury, is neither recognized by nor consistent with the LPLA.

#### 2.     The lost-chance doctrine applies only to the rendition of services and thus cannot be extended to product-liability claims.

---

[1] Indeed, the lost-chance doctrine "presupposes an outside injury or source of negligence not concurrent with any alleged negligence by a defendant." *Ettinger v. Triangle-Pac. Corp.*, 799 A.2d 95, 107–08 (Pa. Super. Ct. 2002); *see also Smith*, 676 So. 2d at 547 (applying loss of chance doctrine to "negligent treatment of a *pre-existing* condition" (emphasis added)); *Hastings*, 498 So. 2d at 720 ("*Once a breach of duty constituting malpractice is established*, the question of whether the malpractice contributed to the death, i.e., lessened the chance of survival, is a question of fact for the jury." (emphasis added)). The doctrine should not apply where, as here, the defendant's product is alleged to have caused the initial injury that led to the plaintiff's death.

4

*Second*, the lost chance doctrine applies only to the rendition of services, not to products. Section 323(a) of the Restatement (Second) of Torts—the "conceptual foundation" for the loss of chance doctrine, *Pelas v. Golden Rule Ins. Co.*, No. Civ. A. 97-3779, 1999 WL 438478 (E.D. La. June 28, 1999), at *2—provides that "[o]ne who undertakes . . . to *render services* to another" may be liable "for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if . . . his failure to exercise such care increases the risk of such harm." RESTATEMENT (SECOND) OF TORTS § 323(a) (emphasis added).

The manufacture of a product is distinct from the provision of services. Accordingly, numerous courts outside of Louisiana have refused to extend the lost-chance doctrine to product-liability claims. *See, e.g.*, *Hill v. Novartis Pharm.*, 944 F. Supp. 2d 943 (E.D. Cal. 2013). In *Hill*, the plaintiff claimed that Novartis's failure to warn of the risks inherent in the use of Zometa, an FDA-approved drug developed and manufactured by Novartis for the treatment of cancer, caused her to suffer osteonecrosis of the jaw. *Id.* at 959. Novartis moved to exclude any evidence "suggesting that, as a result of [Novartis's] alleged failure to provide adequate warnings, Plaintiff lost a chance to avoid [her injuries] or otherwise have a more favorable outcome with regard to her jaw problems." *Id.* The court granted the motion, explaining that "[t]he lost chance doctrine, even when recognized, has been limited to medical malpractice cases." *Id.* Furthermore, the court observed that the plaintiff "provided no authority—and the Court's research reveal[ed] no authority—to suggest that the doctrine could conceivably apply in a products liability case where, as here, the plaintiff alleges that a pharmaceutical manufacturer's failure to warn of risks associated with a prescription drug caused the plaintiff to develop a condition she would not otherwise have developed had she not taken the drug." *Id.* at 960 (internal quotation marks omitted).[2]

---

[2] *Accord Lempke v. Osmose Utils. Servs., Inc.*, No. 11-1236, 2012 WL 94497, at *4 (W.D. Pa. Jan. 11, 2012) ("Courts in Pennsylvania have invoked Section 323 in a variety of factual settings, but never in the context of a negligence-

Because RESTATEMENT (SECOND) Section 323(a) relates to the rendition of services, the court's decision in *Pelas* does not support extending the lost-chance doctrine to product-liability claims. 1999 WL 438478, at *1. There, the court denied a motion *in limine* seeking to exclude evidence relating to the plaintiff's loss-of-chance theory arising from an insurer's refusal to cover a bone marrow transplant. *Id.* at *1. Even though the court concluded that the Louisiana Supreme Court "would not strictly limit the loss of chance of survival doctrine to medical malpractice cases," that conclusion derived from the court's reasoning that Section 323(a) applies to "*any* undertaking to render services," not just medical services. *Id.* at *2–3 (emphasis added). So, although *Pelas* (improperly) extended Louisiana law, the underlying claim involved the rendition of services, which forms the "conceptual foundation" of a loss of chance theory. *Id.* Here, by contrast, Defendants have not "rendered services." Thus, the lost-chance doctrine does not—indeed, cannot—apply.

* * *

Plaintiffs' suggestion that lost-chance damages may be recovered in this LPLA case should be rejected. As a jurisprudential matter, this Court should not allow the recovery of lost-chance damages in a context that Louisiana's own courts have not. And, in any event, such damages are not recoverable in a product-liability action under Louisiana law.

---

based products liability case."); *Moretti v. Wyeth, Inc.*, No. 2:08-cv-00396-JCM-(GWF), 2009 WL 749532, at *3 (D. Nev. Mar. 20, 2009) (noting that "Nevada courts have explicitly rejected [the] application [of Section 323] in product liability cases"); *Cipollone v. Liggett Grp., Inc.*, 683 F. Supp. 1487, 1494 (D.N.J. 1988) (suggesting that rationale of lost chance doctrine could apply but explaining that "New Jersey courts have failed to apply the 'lost chance' rule in product liability cases"); *Lowmack v. Gen. Motors Corp.*, 967 F. Supp. 874, 881–82 (E.D. Va. 1997) (declining to apply lost chance doctrine in case arising out of defective car seat), *aff'd*, No. 97-1957, 139 F.3d 890, at *1 (4th Cir. Mar. 3, 1998) ("[T]he district court correctly determined that the Virginia courts would not relax the ordinary requirements of proximate causation outside the medical malpractice context."); *see also Grant v. Am. Nat'l Red Cross*, 745 A.2d 316, 322 (D.C. 2000) ("[Plaintiff's] claim that the Red Cross negligently supplied hepatitis-carrying blood is not easy to distinguish from a claim that any provider of supplies or equipment used in medical treatment was negligent in manufacturing or processing the supplies, thereby causing a patient injury. To apply the loss of chance theory to cases such as these would virtually collapse the limitations that our decisions have set to the reach of proximate causation.").

## II.     Plaintiffs' proposed amendment is both untimely and prejudicial.

Moreover, undue delay and prejudice provide substantial reason to deny Plaintiffs' proposed amendment here.  As the Fifth Circuit has recognized, delay is undue where it "prejudice[s] the nonmoving party or impose[s] unwarranted burdens on the court."  *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 427 (5th Cir. 2004).  In determining whether a motion is timely, the court considers "the 'procedural posture' of the case to determine whether the delay actually prejudices the nonmovant."  *LaRocca v. LaRocca*, No. 13-4748, 2013 WL 6440334, at *3 (E.D. La. Dec. 9, 2013) (citing *Mayeaux*, 376 F.3d at 426–27).  And though "Rule 15(a) does not impose a time limit for permissive amendment," there still "come[s] a point at which a plaintiff's delay [may be] procedurally fatal."  *Liberty Mut. Ins. Co. v. Gunderson*, No. 2:04-cv-02405, 2014 WL 2109901, at *2 (W.D. La. May 19, 2014).

The "procedural posture" of this case is far past the time for amended pleadings.  The parties have already completed all fact and expert discovery[3]; Defendants have filed numerous dispositive motions[4]; and trial is scheduled to start in less than two months.[5]  Each of these factors weighs against allowing Plaintiffs to amend the complaint.  And although Plaintiffs contend that Defendants "are already in possession of the expert reports that support Plaintiffs' Lost Chance of Survival allegations" (Doc. 6112-1, at 2), Plaintiffs' failure to assert this theory sooner has improperly deprived Defendants of the chance to most effectively defend against these allegations.

---

[3] *See Wade v. Cycle Mart, L.P.*, No. A-14-CV-00427-ML, 2015 WL 4404876, at *3 (W.D. Tex. July 17, 2015) ("The Fifth Circuit has also recognized that granting leave to amend to assert new legal theories after the close of discovery may unduly prejudice the opposing party where there was no opportunity or reason to explore the factual basis of the late-plead theory during the discovery period.").

[4] Courts "more carefully scrutinize a party's attempt to raise new theories of recovery by amendment when the opposing party has filed a motion for summary judgment."  *Parish v. Frazier*, 195 F.3d 761, 764 (5th Cir. 1999).

[5] *See In re Int'l Marine, LLC*, No. 07-6424, 2009 WL 498372, at *2 (E.D. La. Feb. 26, 2009) (Fallon, J.) (finding prejudice in "eve of trial" amendment because "Defendants . . . have no doubt arranged their affairs and prepared their defenses according to the allegations and causes of action contained in the Plaintiff's complaint"); *Alford v. Pool Co.*, No. Civ.A. 99-2473, 2000 WL 777913, at *1 (E.D. La. June 16, 2000) (denying motion to amend complaint in light of "looming trial date").

For example, had Plaintiffs raised this theory during discovery, Defendants could have (a) retained different or additional experts to challenge these assertions; (b) questioned Plaintiffs' experts differently at their depositions in order to press them on their underlying opinions; (c) questioned the treating physicians differently at their depositions; and (d) filed different *Daubert* briefs, as any testimony about Orr's loss of chance of survival currently on the record is speculative at best. *See Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 348 (5th Cir. 2008) (considering prejudice under Rule 16 and explaining that the defendant "would have been prejudiced if it had been forced to defend against a new claim and basis for recovery so late in the litigation"); *Mayeaux*, 376 F.3d at 427 (noting the impropriety of "late tendered amendments [that] involve new theories of recovery and impose additional discovery requirements").

Furthermore, Plaintiffs' proposed amendment would drastically alter what must be proven to award damages at trial, and thus affects the trial's course and scope. Until now, Plaintiffs' theory, consistent with the LPLA, has been that Xarelto caused Sharyn Orr's death. *See* Complaint, No. 2:15-cv-03708, (Doc. 1), at ¶ 105 ("As a direct result of being prescribed Xarelto® for this period of time, Sharyn Orr suffered significant injuries, including a hemorrhagic stroke and ultimately her death."). Although Plaintiffs assert that their contention that Xarelto lessened Orr's chances for survival only "conform[s] their pleadings to the facts," it is, in fact, an entirely new theory. Under Louisiana law, "[t]he issues in loss of a chance of survival cases are whether the tort victim lost any chance of survival because of the defendant's negligence and the value of that loss." *Smith v. State, Dep't of Health & Hosps.*, 676 So. 2d 543, 546 (La. 1996). In effect, Plaintiffs now say that they need not show, as they alleged in the complaint, that Xarelto *caused* Sharyn Orr's death, but may instead prove that it lowered her chances for survival. Putting aside its lack of merit and its failure as a matter of Louisiana law, this newly-proposed basis for recovery

8

comes too late. *See Home Depot U.S.A., Inc. v. Nat'l Fire Ins. Co.*, 2007 WL 2592353, at *2 (N.D. Tex. Sept. 10, 2007) ("[A] change may be deemed prejudicial 'if the amendment substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation.'" (citation omitted)); *Gruber v. Entergy Corp.*, 1997 WL 149966, at *5 (E.D. La. Mar. 24, 1997) ("[T]he last-minute amendment would have prejudiced defendants since it would drastically change the scope of the case close to trial, when discovery was nearing completion.").

Allowing Plaintiffs to assert a new theory of recoverable damages—with trial approaching, with dispositive motions filed, and with discovery completed—would prejudice Defendants. *See Dueling v. Devon Energy Corp.*, 623 F. App'x 127, 130 (5th Cir. 2015) ("This Court and other courts have found prejudice, for instance, if the amendment is asserted after the close of discovery; after dispositive motions have been filed, briefed, or decided; or on the eve of or in the middle of trial."). Plaintiffs' untimely amendment should be denied under Rule 15(a).

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for leave to amend.

Respectfully submitted,

BARRASSO USDIN KUPPERMAN FREEMAN & SARVER, L.L.C.

By: /s/ *Richard E. Sarver*
Richard E. Sarver
Celeste R. Coco-Ewing
BARRASSO USDIN KUPPERMAN FREEMAN & SARVER, L.L.C.
909 Poydras Street, 24th Floor
New Orleans, Louisiana 70112
Telephone: (504) 589-9700
rsarver@barrassousdin.com
ccoco-ewing@barrassousdin.com

WILKINSON WALSH + ESKOVITZ LLP

By: /s/ *Beth A. Wilkinson*
Beth A. Wilkinson
Jennifer L. Saulino
Jeremy Barber
WILKINSON WALSH + ESKOVITZ LLP
1900 M. Street NW, Suite 800
Washington, DC 20036
Telephone: (202) 847-4000
bwilkinson@wilkinsonwalsh.com
jsaulino@wilkinsonwalsh.com
jbarber@wilkinsonwalsh.com

DRINKER BIDDLE & REATH LLP

By: /s/ *Susan M. Sharko*
Susan M. Sharko
Drinker Biddle & Reath LLP
600 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
susan.sharko@dbr.com

Rodney M. Hudson
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
Telephone: (415) 591-7500
Rodney.hudson@dbr.com

Chanda A. Miller
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2700
Chanda.Miller@dbr.com


IRWIN FRITCHIE URQUHART & MOORE LLC

By: /s/ *James B. Irwin*
James B. Irwin
Kim E. Moore
Irwin Fritchie Urquhart & Moore LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
jirwin@irwinllc.com


*Attorneys for Defendants Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC, Janssen Ortho LLC, and Johnson & Johnson*

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: */s/ David E. Dukes*
David E. Dukes
J. Mark Jones
NELSON MULLINS RILEY & SCARBOROUGH LLP
1320 Main Street, 17th Floor
Columbia, SC 29201
Telephone: (803) 799-2000
David.Dukes@nelsonmullins.com
Mark.Jones@nelsonmullins.com


ARNOLD & PORTER KAYE SCHOLER LLP

By: /s/ *Andrew K. Solow*
Andrew K. Solow
Steven Glickstein
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8485
andrew.solow@apks.com
steven.glickstein@apks.com

William Hoffman
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
william.hoffman@apks.com


BRADLEY ARANT BOULT CUMMINGS LLP

By: */s/ Kevin C. Newsom*
Kevin C. Newsom
Lindsey C Boney IV
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place, 1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8803
knewsom@bradley.com
lboney@bradley.com


CHAFFE MCCALL L.L.P.

        By: /s/ *John F. Olinde*
        John F. Olinde
        CHAFFE MCCALL L.L.P.
        1100 Poydras Street, Suite 2300
        New Orleans, LA 70163
        Telephone: (504) 585-7241
        olinde@chaffe.com

*Attorneys for Bayer HealthCare Pharmaceuticals Inc. and Bayer Pharma AG*

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that on the 3rd of May, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs by operation of the court's electronic filing system.

                                        */s/     John F. Olinde*