**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **IN RE: XARELTO (RIVAROXABAN)** | * | **MDL 2592** |
| **PRODUCTS LIABILITY LITIGATION** | * | |
| | * | **SECTION L** |
| **THIS DOCUMENT RELATES TO:** | * | |
| | * | **JUDGE ELDON E. FALLON** |
| *Joseph Orr, Jr., et al. v. Janssen et al.* | * | **MAG. JUDGE NORTH** |
| *Case No. 2:15-cv-03708* | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

---

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION IN LIMINE NO. 11
TO PRECLUDE TESTIMONY AND ARGUMENT ABOUT THE PERSONAL USE OF
ANTICOAGULANTS INCLUDING XARELTO BY DEFENDANTS' EXPERTS,
EMPLOYEES AND/OR FAMILY MEMBERS OR, IN THE ALTENATIVE, IF SUCH
TESTIMONY IS ALLOWED, TO COMPEL THE PRODUCTION OF RELEVANT
MEDICAL RECORDS AND/OR MEDICAL AUTHORIZATIONS**

---

# REDACTED VERSION

## I.   **INTRODUCTION**

Plaintiffs move for an order prohibiting all witnesses and counsel from commenting on, referring to, attempting to introduce testimony or evidence about, or introducing testimony or evidence about the personal use of anticoagulants, including Xarelto, by any party's family members, employees, experts, or witnesses.

Alternatively, if the Court is inclined to allow such evidence, as it did during the *Boudreaux* trial when Dr. Gary Peters testified about his wife's use of Xarelto and Nauman Shah testified by video that his mother once took Xarelto, Plaintiffs respectfully request that the Defendants be compelled to produce the medical records and/or medical authorizations necessary to retrieve the relevant records of any witness whose anticoagulant use is made at issue.

## II.   **FACTUAL BACKGROUND**

Defendants have demonstrated their intention to introduce at trial testimony about the anticoagulant use (including Xarelto) and the associated medical treatment and condition of their employees including ███████████ and ██████████, as well as the family members of certain employees including ██████ wife,[1] Dr. Gary Peters' wife, Nauman Shah's mother[2] and ███████████ father.[3]   For example, during the *Boudreaux* trial, defense counsel raised Dr. Peter's wife's medical condition and Xarelto use, as follows:

> Q.   Okay.  So, Dr. Peters, you told us earlier that you've been married for 39 years.
>
> A.   Yes.

---

[1]Ex. A, ██████████████████ (testifying about his and his wife's use of Xarelto) (FILED UNDER SEAL).

[2]Ex. B, ████████████ (testifying about his mother's use of Xarelto) which was counter-designated by the Defendants and played by video during Plaintiff's case in chief during the *Boudreaux* trial. *Boudreaux* Tr. 4/27/17, 889:25-890:10) (FILED UNDER SEAL).

[3]Ex, C, ███████████████████ (testifying about her step-father's use of Warfarin and his INR testing) (FILED UNDER SEAL).

Q.      I'm assuming you like your wife.

A.      I didn't hear that --

Q.      I don't know that I've ever asked this question in 35 years, but do you like your   wife?

A.      Yes.  Yes, I do.

Q.       And you want nothing but good things for her?

A.      Her birthday is tomorrow, actually.

Q.      All right.  Do something good for her. So knowing that you like your wife, does your wife take Xarelto?

A.      Yes, she did.  She had her right knee replaced a couple of months ago. Her orthopedic surgeon wanted to use aspirin, and I asked him to use Xarelto.  And he agreed to that.

Q.      How has she done?

A.      She's done very well.  She actually had maybe her last therapy session this morning for rehabilitation.[4]

During Defendants' summation at the *Boudreaux* trial, counsel for the defense remarked

on this evidence:

> Plaintiffs said to you at the beginning that this was a safety test.  Again, why did he say that?  Because he wanted you to think we were terrible people.  We're actually the big pharmaceutical companies I think he called us, and we don't want to do a simple safety test.  Think about what that said.  **That all of the doctors who work on our companies who told you they were on Xarelto themselves or prescribe it for their mother, that they don't care about safety.**  They don't care.  That's what he wants you to believe.[5]

Similarly, at ██████████ deposition, defense counsel had the witness testify as follows:



---

[4]Ex. D, *Boudreaux* Tr. 4/28/17 at 1121:21-1122:14. The relevant pages cited from the *Boudreaux* trial transcript are attached as Exhibit D.

[5]*Id.* 5/3/17 at 1596:14-1597:3 (emphasis added).



Such evidence of family member's use does not go to the credibility of the party-employee witness, but instead reflects upon the interface between some non-party family member and that non-party family member's physician. Likewise, a party-employee's personal use of Xarelto is not relevant to the issues at hand, namely Ms. Orr's injuries, and has such little bearing on the witness's credibility that the prejudice of the testimony far exceeds its probative value. Such testimony does not prove that the drug is safe and not unreasonably dangerous.

---

[6]Ex. E, ████████████████ (FILED UNDER SEAL).

Should Defendants again be permitted to introduce this tenuously related evidence, as they were permitted to do so during the *Boudreaux* trial over Plaintiffs' objection, Plaintiffs should be entitled to to at least explore the veracity of, and medical facts supporting, the evidence.

III.     **ARGUMENT**

A.     **TESTIMONY ABOUT THE PERSONAL USE OF ANTICOAGULANTS (INCLUDING XARELTO) BY ANY PARTY'S EMPLOYEE OR THEIR FAMILY MEMBERS, EXPERTS, IS IRRELEVANT AND ANY PROBATIVE VALUE IS SUBSTANTIALLY OUTWEIGHED BY THE DANGER OF UNFAIR PREJUDICE, CONFUSION, AND THAT THE JURY WILL BE MISLED**

Under Federal Rule of Evidence 402, only relevant evidence is admissible at trial. Evidence is relevant if it tends to make a fact of consequence to the litigation more or less probable than it would be without the evidence. Fed. R. Evid. 401. However, even relevant evidence can be excluded "if its probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

The trial court has broad discretion in assessing the probative value of evidence and determining if it is significantly outweighed by the risk of undue prejudice. *See Sprint v. Mendelsohn,* 552 U.S. 379, 384 (2008); *Verzwyvelt v. St. Paul Fire & Marine Ins. Co.,* 175 F. Supp. 2d 881, 888 (W.D. La. 2001), *citing United States v. Johnson,* 558 F.2d 744, 746 (5th Cir. 1977). A court should exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice.  *United States v. Duncan,* 919 F.2d 981, 987 (5th Cir. 1990), *citing* Fed. R. Evid. 403.

Testimony about the personal use of Xarelto by one of the Defendants' employees, that employee's family member, or experts retained by Defendants, is wholly unrelated to whether Xarelto is a defective product, whether the warnings provided about Xarelto were adequate, or

whether Defendants acted negligently. This information will have no tendency to make a fact that is of consequence in this action more or less probable than it would be without the evidence, and it is thus irrelevant, *see* Fed. R. Evid. 401, and inadmissible. *See* Fed. R. Evid. 402; Fed.R.Evid. 803 (hearsay), and very likely in violation of these persons' rights under the Health Insurance Portability and Accountability Act of 1996 (HIPAA; Pub.L. 104–191, 110 Stat. 1936).

Moreover, to the extent this Court considers personal use relevant to the credibility of the witness, any such value would be substantially outweighed by the prejudice to Plaintiffs in not being in a position to explore or challenge personal use testimony, an exercise which, if allowed, would introduce undue delay in the trial proceedings.  Since the unchallenged assertion of personal use likely would be viewed by a jury as probative of Xarelto's safety (and not simply the witness' credibility), therefore, the relevance-prejudice balance of FRE 403 warrants the Court's serious reconsideration in allowing the jury in Orr to again hear such testimony.

When this Court was faced with this issue during the Vioxx litigation, the evidence either was precluded, or noted to be generally inadmissible. *See, e.g., Dedrick v. Merck & Co., Inc. (In re Vioxx),* No. 2:05-md-01657, slip op., at ¶ 5 (E.D. La. Nov. 22, 2006)[7] (excluding "any evidence, discussion, or argument that Merck employees, former employees, or family members of Merck employees took Vioxx prior to the drug's withdrawal from the market");[8] *Barnett v. Merck & Co., Inc. (In re Vioxx),* No. 3:09-cv-10012, slip op., at ¶¶ 3(m), 7 (E.D. La. Nov. 18, 2011) (deferring ruling, but noting in paragraph 7 that this evidence "generally will not be admissible since it is of

---

[7]Exhibit F.

[8]In the same order, however, the ruling was deferred on a motion to preclude "[a]ny comment, inference, or personal anecdote from any Merck witnesses or lawyer that they or their family members used Vioxx." *Id.* at ¶ 3(m).

no relevance since it depends on dosage, time taken, age, prior condition of party, risk factors, etc., which may be different [and] result in a trial w/in a trial [and] . . . confuse jury.").[9]

State courts in other *Vioxx* litigation have precluded the evidence, explaining its irrelevance and prejudicial effect:

> Merck is essentially arguing that their employees' actions spoke louder than their words because they would not have consumed the drug, or let their family, if they believed it had the cardiovascular risks the plaintiff claims it had.  The individual decision made by a person in consultation with their doctor to take a drug is a personal decision which can be made for many reasons.  People are willing to take different risks.  Some people, depending on their medical condition, may have been willing to gamble on the cardiovascular risks even if they knew of the risk.  The exploration at trial of each employee's personal decision would be prejudicial, confusing and time consuming.
>
> The court finds that evidence that Merck employees or their family members took VIOXX is substantially more prejudicial than probative and must be excluded during trial.  Such evidence does not have any probative value in answering the ultimate issues in the failure to warn aspect of the litigation.  Allowing Merck employees to testify that they or their family members took VIOXX would be highly prejudicial to plaintiffs' claims and would not demonstrate with any reliability that VIOXX was more or less safer than was being represented by Merck to the public.

*Humeston v. Merck & Co., Inc.,* No. ATL-L-2272-03, slip op. at 2-3 (N.J. Sup. Ct. Sept. 2, 2005).[10]

*See also Messerschmidt v. Merck & Co., Inc.,* No. ATL-L-5520-05 (N.J. Sup. Ct. Jan. 18, 2007);

*Doherty v. Merck & Co., Inc.,* No. ATL-L-638-05, slip op., at ¶¶ x, bb (N.J. Super. Ct. June 1, 2006);[11] *Cona v. Merck & Co., Inc.,* No. ATL-3553-05, slip op. at ¶¶ x, bb (N.J. Super. Ct. Mar. 28, 2006).

---

[9]Exhibit G.

[10]Exhibit H.

[11]Exhibit I.

Prior to the *Boudreaux* trial, this Court sustained Plaintiffs' Motion in Limine to exclude personal use evidence as to Defendants' employees or family members, but reserved a decision to the extent witness credibility became an issue. *See In re Xarelto Prod. Liab. Litig.*, MDL 2592, Order and Reasons at 4 (E.D. La. Apr. 18, 2017) (Rec.Doc. 6254). At trial, the Court then allowed such testimony, reasoning that certain witnesses' credibility had been put at issue.  However, as noted above, the fact that a party's representative or a family member of that representative, or even a Defendants' expert, may have been willing to take Xarelto, sheds no light whatsoever on the question whether Xarelto was unreasonably dangerous in the case of Mrs. Orr.  Yet, such testimony about use by others necessarily invites the jury to conclude that all safety issues Plaintiffs are raising in the Orr case were considered and deemed to be without merit,  not only by the testifying witness but by the absent family member who took the drug.  This surely is a "bridge too far," absent at least some additional information about whether the safety concerns raised by Plaintiffs were even relevant, much less taken into account by a prescriber, in the case of this other use.  Allowing the jury the opportunity to wrongfully infer product safety on the issues of such testimony is substantially prejudicial.  This evidence should therefore be excluded at trial (particularly absent a limiting instruction from the Court).

Moreover, it is well-settled that a witness' credibility may be attacked in a manner prescribed by the Federal Rules of Evidence.  *See Fed. R. Evid.* 608. Merely calling a company witness like Dr. Peters or Nauman Shah to the stand and questioning them about the safety of a drug should not be seen as sufficient to place their credibility under attack, especially if their mere appearance as a witness adverse to plaintiffs can be used to invite prejudicial, unchallenged promotion of a product as safe.  Again, any probative value the "personal use" testimony of such a witness may have for credibility purposes, is far outweighed by the prejudice resulting when the

jury is invited (as they were in the closing argument of Defendants' counsel in *Boudreaux*) to construe such use as indicative of the Defendants' emphasis on safety.

If Plaintiffs are prevented from exploring possible key differences between the personal use of the drug without incident as to one patient, and the personal use causing fatal harm in the case of Mrs. Orr, the prejudicial impact on Plaintiffs' case is not only significant, but incurable.

To allow the admission of this testimony would be comparable to having allowed a Merck executive to testify that Vioxx was not unreasonably dangerous because they or a family took the drug for pain relief.  The testimony that a defendant company official took a drug, or that his or her family member took the drug, has no bearing on whether the drug was safe to take for the Plaintiff whose case is being tried. Unexamined, personal choices to take a prescription drug, despite the risks posed, should not be seen as probative unless the medical circumstances of that personal use are comparable to the circumstances of use at issue in the trial.  The relevance of testimony by anecdotal witnesses with different illnesses, and with different prescribing physicians faced with different prescribing decisions, is much too attenuated to have any meaningful value to a jury being asked to address the actual Xarelto use at issue.  Because of the lack of any demonstrated link to the factual circumstances of the case on trial, such testimony is nothing more than evidence of "sporadic and isolated occurrences" that are irrelevant to the trial proceedings. *See Mooney v. Aramco Services Co.,* 54 F.3d 1207, 1221 (5th Cir. 1995), reversed on other grounds, *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305 (5th Cir. 2004); *See also Pfeiffer v. C.I.A.,* 60 F.3d 861, 865 (.D.C. Cir. 1995) ("Suffice it to say that anecdotal evidence about what other former employees of other government agencies have done is irrelevant to Pfeiffer's case"). For example, in *BASF Corp. v. Old World Trading Co., Inc.,* No. 86 C 5602, 1992 WL 232078 (N.D. Ill. Sept. 8, 1992), the plaintiff attempted to call as witnesses certain individuals who were

dissatisfied with the defendant's product. The court disallowed this evidence, partially on the basis

of Rule 403, finding that "anecdotal evidence, unless accompanied by testimony that such evidence

was statistically significant, was irrelevant and would consume too much time." *Id.* at *4.

In sum, any prospective testimony from individuals aligned with Defendants that they have

such confidence in Xarelto that they would take it themselves or would give it to their family

members, cannot be deemed relevant to the fact-specific liability issues being tried in Orr, absent

sufficient medical and other information to make the usage in each case comparable.  Neither is

the probative value of personal Xarelto use to bolster a witness' credibility, sufficient to outweigh

the prejudicial impact of a jury taking the evidence to mean the drug must be safe on the basis of

such personal use.  The potential for prejudice is made even greater when a closing argument by

Defendants' counsel invites the jury to consider the sincerity of the company's "personal users,"

as proof that the company takes drug safety seriously.

**B.      ALTERNATIVLEY, IF THE COURT PERMITS PERSONAL USE EVIDENCE, PLAINTIFFS REQUEST THAT THE DEFENDANTS BE COMPELLED TO PRODUCE THE MEDICAL RECORDS AND/OR MEDICAL AUTHORIZATIONS SO PLAINTIFFS CAN RETRIEVE THE RELEVANT RECORDS OF ANY WITNESS WHOSE ANTICOAGULANT <u>USE IS REFERENCED</u>**

Plaintiffs have no way to verify or test the veracity of this testimony or to understand the

medical context around these employees' and family member's use of anticoagulants. For instance,

did any of them have an adverse event including a bleeding event while on the drug? Were any of

them on a different anticoagulant before or after using Xarelto?  If so, why were they switched?

If they were on warfarin, was it well-controlled?  What did they discuss with their prescribing

physicians? Did ▮▮▮▮▮ or ▮▮▮▮▮▮▮ ask their prescribing physicians to obtain a PT

Neoplastin test?  What dose or Xarelto was Mr. Shah's mother on and for what condition?  Why

was Mr. Shah's mother on Xarelto only "once?" What was Mr. Shah's mother told, if anything,

about the risks and whether those risks could be minimized by a PT Neoplastin test? These and

other relevant questions can only be answered through discovery, including access to the related

medical records.

Therefore, if the Court is inclined to allow such evidence to be introduced, Plaintiffs

request that the Defendants be compelled to immediately produce the medical records, and/or

medical authorizations to allow access to the relevant records, for any witness whose anticoagulant

use Defendants' intend to make part of the evidence in the *Orr* trial.  Without this discovery, the

Plaintiffs are prejudiced and effectively blindsided through the introduction of non-party evidence.

*In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Relevant Products Liab. Litig.,* 3:09-

MD-02100-DRH, 2011 WL 2650948, at \*2 (S.D. Ill. June 29, 2011) ("Plaintiffs may proceed with

seeking discovery of the relevant medical histories of each current or former employee that has

testified regarding personal use of the subject drugs or any witness that Bayer intends to offer at

trial for that purpose").

IV.    **CONCLUSION**

For these reasons, Plaintiffs request that all parties and witnesses be precluded from offering, or trying to offer, any comments, references, testimony or evidence regarding the personal use of anticoagulants including Xarelto by any party's family members, employees, experts, or witnesses, or, alternatively, that the Court order discovery be compelled to have Defendants produce the medical records and/or medical authorizations to allow discovery of the relevant records of any witness whose anticoagulant use is referenced.

Dated:  May 10, 2017                                          Respectfully submitted,


                                                            */s/ Leonard A. Davis*
                                                            Leonard A. Davis, Esq. (Bar No. 14190)
                                                            **HERMAN, HERMAN & KATZ, LLC**
                                                            820 O'Keefe Avenue
                                                            New Orleans, Louisiana  70113
                                                            Telephone: (504) 581-4892
                                                            Facsimile: (504) 561-6024
                                                            Email:  ldavis@hhklawfirm.com

                                                            Gerald E. Meunier (Bar No. 9471)
                                                            **GAINSBURGH BENJAMIN DAVID MEUNIER
                                                            & WARSHAUER, LLC**
                                                            2800 Energy Centre, 1100 Poydras Street
                                                            New Orleans, LA  70163-2800
                                                            Telephone: (504) 522-2304
                                                            Facsimile: (504) 528-9973
                                                            Email:  gmeunier@gainsben.com

                                                            *Plaintiffs' Liaison Counsel*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 10, 2017, the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs and Defendants by operation of the court's electronic filing system and served on all other plaintiff counsel via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre- Trial Order No. 17.

*/s/ Leonard A. Davis*
**LEONARD A. DAVIS**