# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

```
IN RE:  XARELTO           :   MDL NO. 2593
(RIVAROXABAN) PRODUCTS    :
LIABILITY LITIGATION      :   SECTION L
                          :
THIS DOCUMENT RELATES     :   JUDGE ELDON
TO ALL CASES              :   E. FALLON
                          :
                          :
                          :   MAG. JUDGE NORTH
```

February 23, 2017
PROTECTED
SUBJECT TO FURTHER PROTECTIVE REVIEW

      Videotaped Deposition of CURT DANIEL FURBERG, M.D., Ph.D., taken pursuant to notice, was held at the Winston-Salem Marriott, 425 North Cherry Street, Winston-Salem, North Carolina, beginning at 8:10 a.m., on the above date, before Karen K. Kidwell, a Registered Merit Reporter, Certified Realtime Reporter and Notary Public.

GOLKOW TECHNOLOGIES, INC.
877.370.3377 ph | 917.591.5672 fax
deps@golkow.com

Page 130

1 Ignore the Bates stamp pages for this purpose.
2 A. Okay. Yeah. There we are. So I was on
3 the pharmacy therapeutics committee from 2000 to
4 2012, and then the outpatient prescription drug, 2003
5 to 2012.
6 Q. Do you know what the formulary status of
7 Xarelto was when you were on the committee once it
8 was approved by FDA?
9 A. No.
10 Q. Do you know what it is today?
11 A. No.
12 Q. Have you expressed any of your views about
13 Xarelto in the EINSTEIN study program to anybody at
14 the formulary -- Wake Forest formulary committee?
15 A. As I said, I'm not discussing my -- my
16 involvement here and what I learned with anyone.
17 Q. Well, Doctor, you agree that patient
18 safety with respect to the use of prescription
19 drugs -- I mean, it's a very important consideration,
20 right?
21 A. Yes.
22 Q. In fact, you would agree with me it's
23 important to protect patients from taking drugs with
24 questionable benefits --
25 A. Yeah.

Page 131

1 Q. -- and considerable safety risks, right?
2 A. Yeah.
3 Q. And it's fair to say you've devoted a big
4 portion of your career to clinical trials in part
5 because of your interest in patient safety, right?
6 A. Yeah. And FDA and in science and so on,
7 yes.
8 Q. Okay. But as you sit here now, you're
9 telling me that the concerns that you've expressed
10 about Xarelto -- well, let me ask you, do you think
11 the opinions you've expressed by Xarelto with respect
12 to the EINSTEIN program have an effect on patient
13 safety?
14 A. Yes.
15 MR. GRAND: Way outside the scope of his
16 report.
17 THE WITNESS: Let me take that back.
18 MR. GRAND: Hold on. Hold on.
19 What does that have to do with anything?
20 MR. HOROWITZ: Is that objection? Form?
21 MR. GRAND: It's an objection to form. I
22 mean, are you going to ask him what his favorite
23 color is?
24 MR. HOROWITZ: I might.
25

Page 132

1 BY MR. HOROWITZ:
2 Q. Doc, what's your favorite color?
3 A. The -- could you repeat the question?
4 Q. I'll try.
5 A. Something about --
6 Q. Yeah.
7 A. -- do I believe that Xarelto has safety
8 issues?
9 Q. Yeah, Doctor. I guess my question is,
10 you've expressed specific opinions about the -- and
11 maybe I'll ask it this way, in light of your
12 counsel's objection.
13 Are you not offering any opinions in this
14 case that relate to the EINSTEIN study program and
15 the safety of patients based on FDA's approval of the
16 EINSTEIN study programs?
17 A. I've said over and over again, my views
18 are in the report. I have not talked about the
19 report with anyone outside Jeff and the lawyers. And
20 I'm obliged -- it's a confidentiality thing. After
21 this one is settled, this case, I may. I don't know.
22 I haven't -- let's see when we get there.
23 Q. Well, do you believe that your opinions
24 that you've offered in your report could have some
25 impact or effect on patient safety?

Page 133

1 A. Yes.
2 Q. But you're keeping them to yourself for
3 now, right?
4 MR. GRAND: Objection.
5 THE WITNESS: I've said I expressed my
6 views, and we'll see what comes out of the
7 hearing. I'm very, very interested in knowing
8 what the bottom line is in terms of overall
9 safety and benefit, and I -- and I have -- I
10 don't -- I don't know. I'm -- where we're going
11 to end up. I think we need a -- to learn more
12 about that.
13 MR. HOROWITZ: Why don't we take a short
14 break, and I got to get a little organized
15 again.
16 THE WITNESS: Sure.
17 MR. GRAND: Talk about breaking for lunch
18 or --
19 VIDEOGRAPHER: The time is 11:14. We're
20 going off the record.
21 (A recess transpired from 11:14 a.m. until
22 11:26 a.m.)
23 VIDEOGRAPHER: We are at a total of 2
24 hours and 48 minutes. One moment please.
25 The time is 11:26. We are on record.