# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

- - -

IN RE: XARELTO         :   MDL NO. 2592
(RIVAROXABAN) PRODUCTS :
LITIGATION             :   SECTION L
                       :
THIS DOCUMENT RELATES  :   JUDGE ELDON
TO ALL CASES           :   E. FALLON
                       :
                       :
                       :   MAG. JUDGE
                       :   NORTH


- - -


December 15, 2016


- - -


- PROTECTED -

- SUBJECT TO FURTHER PROTECTIVE REVIEW -

            Videotaped deposition of
DAVID A. KESSLER, M.D., taken pursuant to
notice, was held at the law offices of
Douglas & London, 59 Maiden Lane, New
York, New York, beginning at 8:39 a.m.,
on the above date, before Michelle L.
Gray, a Registered Professional Reporter,
Certified Shorthand Reporter,  Certified
Realtime Reporter and Notary Public.
            - - -
      GOLKOW TECHNOLOGIES, INC.
   877.370.3377 ph | 917.591.5672 fax
         deps@golkow.com

1  Q.  That's your opinion based
2  upon what you've reviewed?
3  A.  The label doesn't come --
4  the label is not in compliance with
5  applicable regulations.  So I mean -- so
6  the label is inadequate.  I mean, I
7  don't -- again, you're pushing me to give
8  a legal opinion.  And I want to stay away
9  from that.
10  Q.  The reason or reasons --
11  A.  Mr. Horowitz may want to
12  add --
13  MR. HOROWITZ:  Yes, he does.
14  MR. ZELLERS:  Mr. Horowitz
15  will have his opportunity.
16  THE WITNESS:  It's always --
17  you know.
18  BY MR. ZELLERS
19  Q.  The reason or reasons that
20  you believe Xarelto does not comply with
21  the labeling regulations is what you set
22  forth in your report, correct?
23  A.  Yes.  But you also went
24  beyond that in your question.  And

1  that -- I mean, and that goes to whether
2  the drug should be on the market.  And as
3  you know, the medical reviewers
4  recommended against that, and they were
5  overruled.
6  And so there is -- we can
7  discuss -- those reasons are independent
8  of the label reasons.
9  MR. ZELLERS:  How long have
10  we been going?
11  THE VIDEOGRAPHER:  Right now
12  close to two hours.  An hour
13  47 minutes right now.
14  MR. ZELLERS:  Do we need to
15  take a break or should we press
16  on?
17  THE WITNESS:  Please press
18  on.  Unless...
19  Actually, I would like to
20  fill up a glass.  If I can -- may
21  I do that?
22  MR. ZELLERS:  You certainly
23  may.
24  Should we take five minutes?

1  MS. JEFFCOTT:  It won't take
2  but a second.
3  BY MR. ZELLERS
4  Q.  Are you ready to continue,
5  Doctor?
6  A.  Yes.
7  Q.  In Section 4 of your report,
8  Pages 80 to 83.
9  A.  Pages?
10  Q.  Pages 80 to 83, you set
11  forth your conclusions.
12  A.  Yes.
13  Q.  The footnote states that
14  this is not meant to be an exhaustive
15  list and that the entirety of your report
16  contain your opinions.
17  A.  Yes.
18  Q.  Have you ever published
19  these opinions outside of the work you're
20  doing in this litigation matter?
21  A.  We're -- are we not under a
22  protective order?
23  Q.  We are under a protective
24  order.

1  A.  Okay.  How could -- so --
2  I'm sorry.  I'm permitted to publish my
3  opinions?
4  Q.  My question to you is, you
5  have only expressed your opinions with
6  respect to Xarelto in this litigation.
7  Is that fair?
8  A.  Well, so -- let's divide
9  these opinions up into two things.
10  There may be -- let me just
11  take a look.  So there are certain
12  opinions, for example, 198 and 199, that
13  I think you could probably find those
14  opinions in the law, the article that I
15  did, you know, that was cited -- you
16  know, I mean in certain -- just briefs,
17  and maybe the court ultimately cited a
18  footnote.
19  So those are opinions that I
20  have held and talked about publicly.
21  My understanding is that the
22  basis that my -- the discovery basis, the
23  discovery documents that I reviewed in
24  this matter are subject to a protective

1  order, so at least my understanding,
2  unless you're releasing me right now, I
3  mean, I could not, I mean, talk about
4  what I talk about in this report publicly
5  unless I misunderstand, except for those
6  general areas of law that I think are
7  applicable, for example in 198 and 199.
8      **Q.   The opinions that you**
9  **express in your report as they relate**
10 **specifically to Xarelto, those were**
11 **developed once you were retained by**
12 **plaintiffs and as you had access to the**
13 **materials which you reviewed, correct?**
14     A.   Exactly.  I looked at -- I
15 was given that record and was able to
16 review that record and make certain
17 opinions based on that record, which to
18 my understanding is confidential.
19     **Q.   Your report includes 20**
20 **schedules.  We talked briefly about**
21 **those --**
22     A.   Yeah.
23     **Q.   -- at the outset.**
24     A.   Yeah.  Yes.

1      **Q.   Footnote 1 on Page 3 of your**
2  **report states, "The schedules were**
3  **prepared by legal staff at my direction**
4  **and under my review."**
5      **When you refer to legal**
6  **staff, who were you referring to?**
7      A.   Legal counsel in this
8  matter.  I mean, if I could explain, I
9  mean what those -- those schedules are --
10 base -- basically, they should be factual
11 data and information that I would hope
12 would be noncontroversial.  And, you
13 know, it's the list of studies, for
14 example.
15     So they are -- and if
16 there's anything wrong in those
17 schedules, they are meant not to be --
18 they are meant to be, you know, complete
19 and accurate and things that hopefully --
20 you know, the labeling changes, the back
21 and forth, they are chronologies of
22 events.
23     So they are meant to be
24 totally objective, factual, without

1  opinion whatsoever.  So if there's
2  anything wrong, I stand ready to correct
3  it, and show me and I'm happy to do that.
4      **Q.   That was your purpose and**
5  **intent in creating the schedules or, more**
6  **specifically, having the legal staff**
7  **prepare the schedules?**
8      A.   Certain chronologies,
9  et cetera.  If you and I had a question,
10 you know, or the Court has a question,
11 you can't carry everything in your head,
12 so I wanted to make sure that that stuff
13 was available.
14     **Q.   Is it accurate to say that**
15 **the opinions that you were rendering in**
16 **this case are, you know, contained in**
17 **your report, you know, through Page 83,**
18 **and that at least it was not your intent**
19 **to state new or additional opinions in**
20 **the schedules?**
21     A.   That's correct.  There's
22 no -- there's no opinions.  There's
23 nothing hidden in the schedule.  We
24 don't -- I mean, that's -- I mean,

1  obviously, again, the footnote is, you --
2  you've asked me for opinions today that
3  are beyond what's in the report.  And I'm
4  giving you those.
5      But, no, the schedules are
6  perfectly just meant to be factual
7  information if we wanted to look at a set
8  of facts.
9      **Q.   If we take a look at**
10 **Schedule 8.**
11     A.   Yes.
12     **Q.   Schedule 8 are deposition**
13 **excerpts?**
14     A.   Yes.
15     **Q.   Are these deposition**
16 **excerpts that you relied on in forming**
17 **your opinions in this case?**
18     A.   So what these are -- the
19 depositions are what's relied on.  But
20 there are certain quotes in the report,
21 all right, of depositions, you and I have
22 talked about some of them.  But whenever
23 you're writing a report, you don't want
24 to just go on for pages.  So all this is,