# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | * * * | MDL 2592 |
| | * | SECTION L |
| THIS DOCUMENT RELATES TO: *Boudreaux, et al. v. Bayer Corp., et al.* Case No. 2:14-cv-02720 | * * * | JUDGE ELDON E. FALLON |
| | * | MAGISTRATE JUDGE NORTH |

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 3 TO EXCLUDE EVIDENCE OF FOREIGN LABELING AND REGULATORY ACTIONS UNDER FEDERAL RULES OF EVIDENCE 402 AND 403**

# FILED UNDER SEAL

**I.      INTRODUCTION**

In their motion *in limine* No. 3 (Rec. Doc. 5954), Defendants argue that the foreign labeling and regulatory actions that authorized Bayer to give instructions about Neoplastin PT testing and also address specific anti-Factor Xa assays, are not relevant to Plaintiffs' contentions that the Defendants should have provided instructions about Neoplastin PT testing and developed an anti-Factor Xa assay as is available in Europe and Canada. Plaintiffs strongly disagree. The mere fact that the FDA does not defer its decision-making to foreign regulatory agencies, hardly renders all evidence of foreign labeling inadmissible. This is especially the case here, considering Plaintiffs' purpose for introducing the evidence at issue.

One of Plaintiffs' core contentions is that Defendants had an obligation to instruct doctors, when prescribing Xarelto, about the need to assess their patients by using Neoplastin PT to assess high risk bleeders. Defendants specifically contemplated such language in their United States label, language which they elected to use in their Canadian label, but then withheld the proposed language from the FDA unless requested to submit it (a request which was never made). Further, the evidence confirms that Xarelto-specific anti-Factor Xa assays existed at the time of Xarelto's United States approval, were also (and are) commercially available in Europe and Canada, and had been tested and extensively relied upon by Defendants in many of the clinical studies before the FDA's approval of Xarelto. Therefore, the foreign labels implemented at the time of these events provide relevant and probative information of Defendants' knowledge of the value of providing this information to prescribers and the public, while also establishing notice, scienter, and motive on Defendants' part to avoid such instructions and design elements in the United States label.

## II.     FACTUAL BACKGROUND

For over a decade, Defendants have known that laboratory tests measuring prothrombin time ("PT") or anti-Factor Xa activity are capable of assessing a Xarelto patient's bleed risk. In clinical trials used to obtain foreign regulatory approval of Xarelto, scientists employed by Defendants found that the anticoagulation effect of Xarelto could be evaluated using PT or anti-Factor Xa testing.[1] Additional clinical studies and analysis published in peer-reviewed articles have similarly confirmed that such testing can be used to screen for Xarelto exposure.[2] As such, foreign medical associations recommend PT or anti-Factor Xa testing of patients taking Xarelto.[3] Indeed, Bayer expressly informed doctors in Canada, in the warning section of the label, about the value of testing PT to identify bleeding risk.[4]

Despite the findings and the instructions provided in that foreign label, for the United States label, Defendants purposefully avoided language concerning proposed laboratory correlation of

---

[1] Kubitza, D., et al. *Safety, pharmacodynamics and pharmacokinetics of single doses of BAY 59-7939, an oral, direct factor Xa inhibitor*. 61 Eur J Clin Pharmacol 873–880 (2005) (Exhibit 1).

[2] Lippi, G., et al. *Urgent monitoring of direct oral anticoagulants in patients with atrial fibrillation; a tentative approach based on routine laboratory tests*. DOI 10.1007 Journal of Thrombosis and Thrombolysis 11239-014-1082-5 (2014) (Exhibit 2).

[3] *See* Trevor Baglin, et al., *Effects of routine coagulation screens and assessment of anticoagulant intensity in patients taking oral dabigatran or rivaroxaban: Guidance from the British Committee for Standards in Haematology,* 159 British Journal of Haematology 427 (2012), at 429 (Exhibit 3) (British Committee for Standards in Haematology finding: "The **PT is useful as a readily available method for determining the relative degree of anticoagulation in patients taking rivaroxaban**, if a reagent with known sensitivity is used, but it cannot be used to determine the drug level.") (emphasis added); Trevor Baglin, et al., *Measuring oral direct inhibitors of thrombin and factor Xa: a recommendation from the Subcommittee on Control of Anticoagulation of the Scientific and Standardization Committee of the International Society on Thrombosis and Haemostasis*, 11 Journal of Thrombosis and Haemostasis 756 (2013), at 758 (Exhibit 4) (International Society on Thrombosis and Haemostasis finding: "When a Quick-type PT reagent with known sensitivity is used, the **PT is useful as a readily available method for determining the relative degree of anticoagulation in patients taking rivaroxaban**.") (emphasis added).

[4] *See* Canadian Xarelto Product Monograph Label (Exhibit 5).

> [I]n certain infrequent situations such as overdosage, acute bleeding, urgent surgery, in cases of suspected non-compliance, or in other unusual circumstances, assessment of the anticoagulant effect of rivaroxaban may be appropriate. Accordingly, measuring PT using the Neoplastin reagent, or Factor-Xa assay using rivaroxaban-specific calibrators and controls, may be useful to inform clinical decisions in these circumstances.

3

PT measurements with bleeding risk and dosing for clear business reasons. In a working internal memorandum updated and attached to a June 1, 2011 E-mail, Defendant Janssen discussed whether to propose PT language in the *Warnings and Precautions* (Section 5.4) of the United States label. Janssen clearly assessed its competitive position, noting that Xarelto's primary competitor, Pradaxa, did not include such language in its label. The Defendant then concluded that no such language would be proposed in the warning section voluntarily, but instead would be proposed "[o]nly if the section is requested."[5] According to the same memo, language pertaining to PT measurement would only be proposed after "modifying significantly" the language that Bayer already had put into the Xarelto label in Canada.[6] Ultimately, this language was never proposed in the United States. Rather the Defendants chose to "[d]efend not having *any* laboratory monitoring statement."[7]

The jury is entitled to the full exposition of these events, and reference to the foreign label is an essential component of the information's relevance. Of further relevance is the fact that, despite Defendants' determination not to include the needed language in the United States label, the use of PT (Neoplastin) to assess the anticoagulant effect and risk of bleeding associated with Xarelto use has been recommended by the following foreign regulatory authorities:

- <u>New Zealand Medicines and Medical Devices Safety Authority</u>: "Xarelto at recommended doses prolongs the global clotting tests **prothrombin time (PT)**, activated partial thromboplastin time (aPTT), HepTest®, as well as the specific clotting test, anti-

---

[5] (Rec # 2905273, 2905274) June 1, 2011 Email of Sanjay Jaiota RE: XARELTO LWG and attached Xarelto (rivaroxaban) USPI Labeling Contingency Document (XARELTO_JANSSEN_14140830) (Exhibit 6).

[6] *Id.*; (Rec # 399453) May 3, 2011 Email of Kemal Malik Re: Xarelto – DVT and SPAF List of Questions (Day 120) – Strategy of Response (Exhibit 7). April 23, 2009 Email of Judy Kinaszczuk to Paul Burton and Mehul Desai of Janssen RE: MTG: XARELTO USPI LWG Labeling Negotiation Contingencies 24-Apr-09; Post LRC actions" and described the proposed changes for the XARELTO label: "The second thing we needed to do, was to offer more pointed guidance to the physician about correlation (or lack) of PT measurement with bleeding risks and dosing. But, **we were not to be as specific as the Canadian label**. I have a draft suggestion, but obviously need your edits on the topic as well." (Exhibit 8) (emphasis added).

[7] *See* June 1, 2011 Email of Sanjay Jaiota (Exhibit 9).

4

Factor Xa activity. **PT is influenced by Xarelto in a dose-dependent manner if Neoplastin® is used for the assay**. The 5/95 percentiles of PT (Neoplastin®) 2 to 4 hours after tablet intake (i.e. at the time of maximum effect) is described in Table 1 (see Pharmacodynamic effects). In case of excessive doses, the PT is expected to be outside of this range."[8]

- Health Canada: "The **prothrombin time (PT)**, measured in seconds, is influenced by XARELTO in a dose-dependent way with a close correlation to plasma concentration if the **Neoplastin® reagent** is used. In patients who are bleeding, **measuring the PT using the Neoplastin® reagent may be useful to assist in determining an excess of anticoagulant activity**."[9]

- The European Medicines Agency ("EMA") included laboratory testing information to be used by physicians within the European Union label to help with management and monitoring of patients' rivaroxaban plasma concentration when clinically indicated and with the goal to reduce bleeding risk and improve anticoagulation efficacy.[10]

It is understandable that Defendants urge the Court to characterize all such foreign labels as irrelevant and prejudicial. However, the FDA itself found the European label germane to its investigation, and requested a copy of the European label on August 7, 2008, with a European Final Summary of Product Characteristics on August 11, 2008, and Defendants Foreign Labeling Questions on November 9, 2010.[11] Thus, foreign labels will play a significant role in this litigation to establish notice and other elements of Plaintiffs' claims.

---

[8] New Zealand Data Sheet, at 7 (Exhibit 10) (emphasis added).

[9] Canadian Monograph, at 9 (Exhibit 5) (emphasis added).

[10] (Rec # 3071269) CHMP Assessment Report for the Post-Authorisation Measure LEG 036, at 13 (XARELTO_JANSSEN_15368523) (Exhibit 11); EU Product Information for Xarelto (June 2016) (http://www.ema.europa.eu/docs/en_GB/document_library/EPAR_-_Product_Information/human/000944/WC500057108.pdf).

[11] Brief Description of Significant Activities Undertaken by Applicant during the Regulatory Review Period. XARELTO_JANSSEN_06628658 (Exhibit 12).

### III. ARGUMENT

#### A. Documents and Materials Defendants Utilized in Contemplation of Drafting the United States Label are Relevant.

In support of their failure-to-warn and design defect claims, Plaintiffs will prove that Defendants used, discussed and referenced Bayer's foreign label while crafting its United States label. Defendants contemplated the helpfulness of the Neoplastin PT language and whether they should provide a "modified Canadian label," eventually deciding that they would only provide it if the FDA requested it.[12] Therefore, such evidence will be introduced for the purpose of notice and showing what Defendants already knew and possessed in prior labeling. This evidence will not be used, as Defendants improperly suggest, for the purpose of determining the FDA's policy judgments, but rather to establish the information which Defendants possessed but then did or did not bring to the FDA, information which Bayer itself had previously brought to other regulatory bodies.

For purposes such as exist herein, district courts routinely permit the admission into evidence of foreign regulatory materials. For example, Judge Herndon in *Yaz* denied a similar *in limine* motion filed by Bayer's to preclude foreign regulatory materials, explaining that:

> [w]hile the regulatory actions of European Medical regulators are not binding on the FDA . . . **the full body of knowledge including the foreign regulatory process that came to bear on the drugs at issue and which were well within the notice and knowledge of Bayer is admissible** as part of the fabric of how these drugs came to the United States market and whether all the information which should have been utilized in doing so was utilized. Such evidence is clearly probative and that value outweighs the prejudice to Bayer.

*In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & PMF Prod. Liab. Litig.*, No. 3:09-CV-10012-DRH, 2011 WL 6740391, at *2 (S.D. Ill. Dec. 22, 2011)(emphasis added).

---

[12] April 23, 2009 email from Judy Kinaszczuk to Paul Burton and Mehul Desai of Janssen RE: MTG: XARELTO USPI LWG Labeling Negotiation Contingencies 24-Apr-09; Post LRC actions (Exhibit 13).

6

Similarly in *Mahaney ex rel. Estate of Kyle v. Novartis Pharm. Corp.*, 835 F. Supp. 2d 299, 318 (W.D. Ky. 2011) and *In re Levaquin Prod. Liab. Litig.*, No. 08-1943 JRT, 2010 WL 4676973, at *5 (D. Minn. Nov. 9, 2010), the courts recognized that foreign regulatory materials are relevant to demonstrate the drug manufacturer's knowledge, notice and/or motive. *See also In re Tylenol (Acetaminophen) Mktg., Sales Practices & Products Liab. Litig.*, 181 F.Supp.3d 278, 307 (E.D. Pa. 2016)(agreeing with plaintiff that foreign labels on the defendants' products, warning of the risk of "severe or possibly fatal liver damage" before the decedent's death are evidence of the defendants' knowledge of potential risks related to their products); *Kaleta v. Abbott Laboratories, Inc.*, No. 14-cv-847-NJR-SCW, slip op. at *15 (S.D. Ill. Feb. 20, 2015) (Exhibit 14) (order denying in part motion *in limine* to exclude evidence of foreign labeling holding it relevant on issue of defendants' knowledge about drug it introduced into United States market); *Rheinfrank v. Abbott Labs., Inc.*, No. 1:13-CV-144, 2015 WL 5258858, at *4 (S.D. Ohio Sept. 10, 2015) (evidence of foreign label relevant to manufacturer's knowledge of risks of domestic drug).[13]

In this case, the evidence of foreign labeling and foreign regulatory actions that Plaintiffs intend to introduce at trial will prove that the Defendants knew how to instruct prescribers about Neoplastin PT testing to identify at-risk patients. Plaintiffs' objective in introducing the Canadian Monograph label is to show Defendants' knowledge of, and prior instructions regarding, PT measurements and bleeding risks. This evidence tends to establish that Defendants not only knew that such an assessment of anticoagulation may be appropriate, but that they also made a conscious

---

[13] Because of the coordination of litigation between this Court and the Philadelphia Court of Common Pleas in the Xarelto litigation, Plaintiffs note that similar *in limine* motions regarding foreign regulatory labels and materials have been denied in pharmaceutical cases in that court. *See, e.g., Robinson v. Wolters Kluwer Health, I*nc., July Term 2011, No. 00778 (Phila. Ct. Com. Pl. Apr. 20, 2015) (denied motion to exclude evidence of foreign labels and regulatory actions and directed counsel to object at trial) (Exhibit 15); *Galdi v. Bayer Corp.,* No. 004892 July Term 2002 (Phila. Ct. Com. Pl. Mar. 12, 2004) (Exhibit 16)(denied motion to exclude foreign governmental and investigative evidence to extent it is used for purposes of notice and first presented at sidebar).

choice to deprive United States patients and physicians of the instructions they needed to safely use Xarelto, even as such information was being provided to patients in Canada and elsewhere. This evidence is relevant and admissible to establish Defendants' knowledge, state of mind and conscious disregard of an adequate label, all of which are directly related to Plaintiffs' claims.

Defendants' case law is easily distinguishable from the facts of any of the bellwether trials. The courts in *Doe v. Hyland Therapeutics*, 807 F. Supp. 117 (S.D.N.Y. 1992), *In re Vioxx Prods. Liab. Litig.*, MDL No. 1657, 2009 WL 1636244 (E.D. La. Feb. 10, 2009) and *Harrison v. Wyeth Labs.*, 510 F. Supp. 1 (E.D. Pa. 1980), were all confronted with foreign plaintiffs bringing suit in American courts seeking to enforce foreign claims based on foreign labels. At issue in each case was *forum non conveniens*. In each case, the court recognized that trying the cases in the United States disrupts the judgment of the foreign regulatory bodies by imposing an American standard to safety and labeling. But here, Plaintiffs are not suggesting that this Court supplant the FDA's standards with any foreign regulatory standard. Rather, Plaintiffs' failure to warn and instruct claim makes it relevant for the jury to consider language actually included by Bayer in a foreign label for Xarelto, at a time when Defendants contemplated using it in drafting their United States label but ultimately chose not to propose it when the FDA was prepared to consider it. Plaintiffs seek to introduce the foreign labels to show that Defendants could use, and had used, the language regarding testing for high-risk bleeders which Plaintiffs contend should have been in the United States label for Xarelto. The purpose is not erect a foreign regulatory standard of fault, but to establish a "double standard" on Defendants' part that goes directly to the adequacy of certain label language.

In support of their motion, Defendants also cite to *In re Viagra Prods. Liab. Litig.*, 658 F. Supp. 2d 950 (D. Minn. 2009), which rejected the plaintiff's expert in domestic regulatory matters

from testifying to a vague and unfounded opinion that "the collective worldwide experience" provided the drug manufacturer with notice of the hazards. *Id*. at 965. The court determined that such evidence was irrelevant, but made note to hold that its ruling was solely related to the **current** case. *Id*. at 965-66.

Additionally, in *In re Seroquel Prod. Liab. Litig.*, 601 F. Supp. 2d 1313 (M.D. Fla. 2009), the district court affirmed its magistrate's ruling that the plaintiffs may not present evidence of foreign regulatory actions, but it also clarified the scope of the magistrate's ruling. In particular, the court noted that the plaintiffs were not necessarily precluded from introducing at trial "information" regarding foreign regulatory communications because it addressed notice, knowledge and scienter. Plaintiffs were only precluded from introducing the foreign regulators' "*decisions*." *Id*. at 1318-19.

In *In re Baycol Prod. Liab. Litig.*, 532 F. Supp. 2d 1029 (D. Minn. 2007), the court excluded the foreign regulatory actions, but those plaintiffs planned to introduce those labels to show the drug manufacturers' notice of dangerous side effects.

Here, in contrast, Plaintiffs will produce the foreign material as evidence of Defendants' knowledge and motive related to labeling in the United States and protecting negative impacts on the United States market. *See In re Levaquin Prod. Liab. Litig.*, No. 08-1943 JRT, 2010 WL 4676973, at *4 (D. Minn. Nov. 9, 2010) (distinguishing plaintiffs' purpose for introducing foreign materials from *Baycol* by finding it speaks to defendants' motive). Unlike the above cases, Plaintiffs do not seek to introduce such evidence to compare the foreign regulatory actions to that of the FDA, but instead to show what Defendants knew and what they could have, but did not, include in their label, and their motives for doing what they did.

9

Moreover, Defendants have elsewhere argued that "no government or medical association has concluded that monitoring should be used in the normal course of Xarelto therapy,"[14] and that "Plaintiffs' monitoring opinions have not been accepted in the scientific community,"[15] and "have not been subject to peer review and publication."[16] Although Plaintiffs dispute the notion that the onetime use of a PT Neoplastin test constitutes monitoring, in rebuttal, Plaintiffs plan to introduce the New Zealand and Canadian labels discussing the use of Neoplastin PT to controvert these contentions. In fact, Bayer even admits Neoplastin PT is "useful to assist in determining an excess of anticoagulant activity" in its Canadian label.

Plaintiffs' also plan to rebut Defendants' defense against Plaintiffs' design defect claim that the anti-Factor Xa assay is "hypothetical conceptual suggestions,"[17] by presenting evidence that Bayer's Canadian Monograph for Xarelto suggests using anti-Factor Xa assays. Plaintiffs' proposed alternative designs are "reasonably specific" and not based on mere speculation. Anti-Factor Xa assays exist and proof of which is in the foreign labels, specifically the Canadian Monograph label states that in certain circumstances, it may be desirable to assess the anticoagulant effect of rivaroxaban.[18] The Monograph suggests that using anti-Factor Xa assays, with rivaroxaban-specific calibrators and controls, may be useful to inform clinical decisions in these circumstances.

---

[14] Rec. Doc. 5113 at 9.

[15] Rec. Doc. 5113 at 16.

[16] Rec. Doc. 5113 at 17.

[17] Rec. Doc 5115 at 16.

[18] *See* Canadian Monograph Label, at 11. (Exhibit "4").

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion should be denied.

Dated:  April 12, 2017

Respectfully submitted,

*/s/ Leonard A. Davis*
Leonard A. Davis, Esq. (Bar No. 14190)
**HERMAN, HERMAN & KATZ, LLC**
820 O'Keefe Avenue
New Orleans, LA  70113
PH:  (504) 581-4892
FAX:  (504) 561-6024
Email:  ldavis@hhklawfirm.com

Gerald E. Meunier (Bar No. 9471)
**GAINSBURGH BENJAMIN DAVID MEUNIER & WARSHAUER, LLC**
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA  70163-2800
PH:  (504) 522-2304
FAX: (504) 528-9973
Email:  gmeunier@gainsben.com

*Plaintiffs' Liaison Counsel*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 12, 2017, the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs and Defendants by operation of the court's electronic filing system and served on all other plaintiff counsel via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre- Trial Order No. 17.

*/s/ Leonard A. Davis*
**LEONARD A. DAVIS**