UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE ELDON E. FALLON |
| Joseph Orr, Jr., et al. v. Janssen et al. Case No. 2:15-cv-03708 | MAGISTRATE NORTH |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF JOINT MOTION FOR AN ORDER (1) DISMISSING WITH PREJUDICE CLAIMS BASED ON ALLEGATIONS THAT PLAINTIFFS HAVE ABANDONED AND (2) BARRING SCIENTIFIC EVIDENCE BASED ON WAIVER OF *DAUBERT* ARGUMENTS**

Leading up to the *Boudreaux* trial, Plaintiffs had asserted—in their complaint (in *Boudreaux* and in this case) and through expert opinions—numerous different theories of liability. Defendants filed substantial summary judgment and *Daubert* briefs applicable to both cases, explaining why those theories failed as a matter of law. In response, Plaintiffs abandoned all but one of those theories, couched in both design-defect and failure-to-warn terms. Then, on the eve of the *Boudreaux* trial, Plaintiffs jettisoned their design theory, leaving only a single failure-to-warn claim for trial—namely, that the Xarelto® label is inadequate because its fails to instruct doctors to perform a PT test "at initiation or maybe once every year thereafter . . . to make a decision on the risk/benefit." 3/23/17 OA Tr. 109:13–18.

Now, just two weeks before trial of this case—and despite the Court's instruction at a recent scheduling conference for Plaintiffs to "sharpen up" their contentions—Defendants still do not know which of Plaintiffs' various theories will be presented at trial. Allowing Plaintiffs to proceed to trial without identifying the theories they intend to pursue prejudices Defendants in their trial preparations. That is especially so in light of Plaintiffs' representations to the Court in their briefing and argument on dispositive and *Daubert* motions in which they expressly abandoned

many of their original allegations in this litigation. In particular, as shown in the chart attached as Exhibit 1 hereto, Plaintiffs have abandoned their allegations (1) that Xarelto's labeling should have included a "black box" warning regarding bleeding risk; (2) that Defendants failed to properly test Xarelto before bringing it to market; (3) that Xarelto's once-daily dosing regimen is unreasonably dangerous; (4) that Xarelto's 15 mg or 20 mg dose is too high: (5) that Xarelto's labeling should have instructed physicians to monitor PT for the purpose of adjusting doses; (6) that Xarelto's labeling should have instructed physicians to perform routine monitoring of patients' PT; and (7) that Xarelto's labeling did not adequately warn of bleeding risk. *See* OA Tr. (Mar. 23, 2017) ("OA Tr."), at 4:25–6:9, 58:3–59:5, 95:11–97:5; *see also* Exh. 1.

Defendants previously requested—before and during the *Boudreaux* trial—that the Court enter an order dismissing Plaintiffs' causes of action with prejudice to the extent that those causes of action rely on their abandoned allegations. *See* Docs. 5957, 6227, 6345, 6346, 6376; *see also* Defs.' Dosing & Monitoring Preemption MSJ, Exh. 47 (Doc. 5677-1). The Court reserved ruling on that motion, but Defendants renew their request in this case because, without more specificity from Plaintiffs as to their legal theory, Defendants are left to guess at which of any number of liability theories that Plaintiffs may or may not pursue at trial. Consistent with due process and fundamental fairness, Defendants have a right to know the claims being levied against them and should not be subjected to trial by surprise. By this motion, Defendants seek two forms of relief:

**1.** Defendants move to dismiss Plaintiffs' causes of action to the extent they are based on abandoned allegations. *See* Defs.' Dosing & Monitoring Preemption MSJ Reply Br. (Doc. 5678) at 1–3. Because Plaintiffs have conceded that they are not seeking to impose liability on Defendants based on the abandoned allegations, the Court should, as a means of narrowing the issues for trial, dismiss with prejudice any claim to the extent it is based on these abandoned

allegations. Defendants respectfully request that, at a minimum, the Court compel Plaintiffs to specify which causes of action and theories they will pursue at the *Orr* trial, and which will be deemed abandoned.

    **2.** Defendants move to exclude scientific expert testimony pertaining to any abandoned allegation on the ground that Plaintiffs did not respond to Defendants' *Daubert* challenges regarding those theories. *See* Defs.' Dosing & Monitoring *Daubert* Reply Br. (Doc. 5688), at 2–3. Defendants challenged a number of Plaintiffs' since-abandoned allegations as unreliable under *Daubert*—for example, that Xarelto patients should be dose-adjusted based on PT monitoring, that Xarelto should be dosed twice daily instead of once, and that the FDA-approved dose is too high. In abandoning those theories rather than pursuing them, Plaintiffs declined to defend their scientific validity (implicitly acknowledging that these theories lack scientific support), and thereby avoided *Daubert* scrutiny. Because Plaintiffs have failed to respond to Defendants' *Daubert* challenges pertaining to those allegations—and thereby failed to establish that the science underlying those theories is reliable—Plaintiffs should not be permitted to present scientific expert testimony relating to those issues, whether they characterize them as claims, background theories, or, as they did at oral argument, as "facts that support our theory." OA Tr. at 24:15–25:22.

## I. Plaintiffs' causes of action based on abandoned allegations should be dismissed with prejudice.

To recover under the Louisiana Product Liability Act ("LPLA"), Plaintiffs must prove that their damage was "proximately caused by a characteristic" of Xarelto that rendered it "unreasonably dangerous." La. Rev. Stat. Ann. § 9:2800.54. In the complaint, Plaintiffs identified many characteristics of Xarelto that they alleged rendered Xarelto unreasonably dangerous—an essential element of their claims against Defendants. Each of Plaintiffs' liability theories was the

subject of extensive fact and expert discovery—including document production, pretrial depositions, expert reports, and expert depositions. And Defendants addressed the viability of each of Plaintiffs' liability theories in their dispositive and *Daubert* motions.

In response to those motions and at oral argument, Plaintiffs represented that they are asserting only two bases for concluding that Xarelto is unreasonably dangerous. First, they contend that Xarelto is unreasonably dangerous because Defendants failed to instruct doctors to conduct a Neoplastin PT test at initiation of therapy, purportedly to identify allegedly high-risk patients. *See* OA Tr. 109:8–18. Second, Plaintiffs contend that Xarelto is unreasonably dangerous on the ground that it was defectively designed prior to FDA approval without incorporating either a Xarelto-calibrated anti-Factor Xa assay to manage patient anticoagulation or a reversal agent. *See id.* at 25:25–27:10.[1] Plaintiffs expressly abandoned each of the following seven other theories that had been alleged in their complaints for establishing that Xarelto is unreasonably dangerous:

1. **Black Box Warning**: Plaintiffs alleged that Xarelto's label should have included a "black-box warning" regarding bleeding risk. *See Orr* Compl. ¶¶ 75, 90 (No. 15-cv-03708, Doc. 1).

    **Plaintiffs' Abandonment:** "Plaintiffs do not intend to advance [a black box] argument at trial . . . ." Pls.' Opp. to Defs.' Labeling Preemption MSJ (Doc. 5650) at 2 n. 2.

2. **Failure to Test**: Plaintiffs alleged that Defendants failed to properly "test" Xarelto before bringing it to market. *Orr* Compl. ¶¶ 147, 155, 184.

    **Plaintiffs' Abandonment:** "[T]he failure to test theory is not being presented by . . . Mrs. Orr." Pls.' Opp. to Defs.' LPLA Design Defect MSJ (Doc. 5606) at 10 n. 30.

3. **Improper Dosing Regimen**:  Plaintiffs alleged that Xarelto's once-daily dosing regimen is unreasonably dangerous. *See Orr* Compl. ¶¶ 70, 85, 128,

---

[1] Defendants of course do not concede the validity of Plaintiffs' failure-to-warn or design-defect claims, which are preempted for the reasons expressed in Defendants' Dosing and Monitoring Preemption MSJ (Doc. 5109). *See also* Defs.' Labeling Preemption MSJ (Doc. 5110). Indeed, on the eve of the *Boudreaux* trial, Plaintiffs dismissed with prejudice their design-defect claim in that case, and a jury found for Defendants on the sole remaining claim for failure to warn. *See* Stipulation & Order (Doc. 5340); Stipulation & Order (Doc. 6298).

4

140, 158, 175.

**Plaintiffs' Abandonment:** "Plaintiffs are not asserting that the Defendants should unilaterally lower the approved dose of Xarelto to provide a different dosing regimen without FDA approval . . . ." Pls.' Opp. to Defs.' Dosing, Monitoring and Design Preemption MSJ (Doc. 5531) at 2; Pls.' Opp. to Defs.' Unapproved Dosing and Monitoring and 20-Second PT Cutoff Guideline *Daubert* Motion (Doc. 5641) at 11, 26–27.

4. **Improper Dosage Strength**: Plaintiffs alleged that Xarelto's 15 or 20mg cumulative dosage is too high. *See Orr* Compl. ¶¶ 128, 140, 158, 175.

**Plaintiffs' Abandonment:** "Plaintiffs are not asserting that the Defendants should unilaterally lower the approved does of Xarelto to provide a different dosing regimen without FDA approval . . . ." Pls.' Opp. to Defs.' Dosing, Monitoring, and Design Preemption MSJ (Doc. 5531) at 2; Pls.' Opp. to Defs.' Unapproved Dosing and Monitoring and 20-Second PT Cutoff-Off Guideline *Daubert* Motion (Doc. 5641) at 11, 26–27.

5. **PT Monitoring for Dose Adjustment**: Plaintiffs alleged that Xarelto's label should have included instructions to physicians to monitor patients' PT for the purpose of adjusting doses. *See Orr* Compl. ¶ 168.

**Plaintiffs' Abandonment:** "Plaintiffs are not asserting that doctors should be instructed to adjust dose based upon the result of the Neoplastin PT test." Pls.' Opp. to Defs.' Dosing, Monitoring, and Design Preemption MSJ (Doc. 5531) at 1; *id.* at 2, 11; Pls.' Opp. to Defs.' Labeling Preemption MSJ (Doc. 5650) at 1; Pls.' Opp. to Defs.' Unapproved Dosing and Monitoring and 20-Second PT Cut-Off Guideline Daubert Motion (Doc. 5641) at 13, 15, 21-23; Pls.' Opp. to Defs.' LPLA Design Defect MSJ (Doc. 5606), at 2.

6. **Routine Monitoring**: Plaintiffs alleged that Xarelto's label should have instructed physicians to perform routine monitoring of patients' PT. *See Orr* Compl. ¶¶ 70, 73–74, 83, 168.

**Plaintiffs' Abandonment:** "Nor are the Plaintiffs asserting that the design of Xarelto requires warfarin-like routine coagulation monitoring and regular dosing adjustment." Pls.' Opp. to Defs.' Dosing, Monitoring and Design Preemption MSJ (Doc. 5531) at 2; Pls.' Opp. to Defs.' Unapproved Dosing and Monitoring and 20-Second PT Cut-Off Guideline *Daubert* Motion (Doc. 5641), at 21.

7. **Failure to Warn of Bleeding Risk**: Plaintiffs alleged that Xarelto's label did not adequately warn of the risk of bleeding. *See Orr* Compl. ¶ 116.

**Plaintiffs' Abandonment:** "By improperly characterizing Plaintiffs' claim as

5

a failure to warn of bleeding risk, Defendants apply the wrong legal analysis . . . ." Pls. Opp. to Defs.' *Orr* Learned Intermediary MSJ (Doc. 5608), at 9; *id.* at 1 (abandoning claim regarding "failure to warn of bleeding risk associated with Xarelto").

This Court addressed the same circumstance in *Cologne v. Shell Oil Co.*, Civil Action No. 12-735, 2013 WL 5781705 (E.D. La. Oct. 25, 2013) (Fallon, J.). In that toxic tort case, the plaintiff sued for negligence, strict liability, and fraud on the basis that he had developed cancer after being exposed to either (1) benzene-containing substances, (2) welding fumes, and/or (3) radioactive material. After discovery, it was clear that the plaintiff was alleging only that benzene-containing substances caused his injury—and had abandoned the theory that his injuries were caused by either welding fumes or radioactive material. Accordingly, the defendant moved for partial summary judgment "as to the theories involving exposure to radiation and welding fumes." *Id.* at *2–3. This Court granted the defendant's motion and entered summary judgment to the extent that the plaintiff's theories were based on those abandoned theories. *Id.*

Similarly, in *Overpeck v. Roger's Supermarket, LLC*, No. 12-124, 2013 WL 4500469 (N.D. Miss. Aug. 21, 2013), the plaintiff initially alleged that he could establish the "knowledge" component of his slip-and-fall claim by showing that the defendant had either constructive knowledge or actual knowledge. But the plaintiff's "response to the motion for summary judgment focuse[d] only on Defendant's own negligence and Defendant's actual knowledge of the condition." *Id.* at *4. Accordingly, the court "consider[ed] Plaintiff's constructive knowledge theory abandoned and grant[ed] Defendant's motion for summary judgment as to that contention." *Id.*

The upshot of cases like *Cologne* and *Overpeck* is that whatever evidence comes in during trial, a plaintiff who has abandoned certain liability theories cannot argue to the jury that he has met his burden of proof by pointing to facts in support of those abandoned theories. Just so here,

6

Plaintiffs have abandoned the seven above-listed theories asserted in their complaint as bases for attempting to prove that Xarelto is unreasonably dangerous.  Therefore, Plaintiffs cannot establish liability against Defendants based on those theories.  The Court should narrow the issues for trial and enter an order dismissing Plaintiffs' causes of action with prejudice to the extent that those causes of action rely on the abandoned allegations.  *See* Exh. 2 (Proposed Order).[2]

## II. Plaintiffs should be barred from introducing abandoned scientific expert opinions that were the subject of Defendants' *Daubert* challenge.

Defendants' opening *Daubert* brief showed that three opinions offered by various experts retained by Plaintiffs were unreliable and impermissibly speculative and thus inadmissible under *Daubert*: (1) that Xarelto patients should be switched to unapproved new doses based on PT or other monitoring results; (2) that Xarelto would be safer if dosed twice daily rather than the FDA-approved once-daily dose; and (3) that the FDA-approved total daily dose of Xarelto is too high.  *See* Defs.' Dosing & Monitoring *Daubert* Br. (Doc. 5113).  In response, Plaintiffs expressly disclaimed the first two opinions and neglected to acknowledge the third:

> **1. PT To Dose Adjust and Monitor**:  Plaintiffs alleged—and their experts contended—that PT could be used for dose adjustment in Xarelto patients or as a means to monitor patients throughout the duration of treatment.  *See* Defs.' Dosing & Monitoring *Daubert* Motion (Doc. 5113-1), at 2–3, 7 n.4 (describing and citing Plaintiffs' experts' opinions); *see also* Defs.' Dosing & Monitoring *Daubert* Reply Br. (Doc. 5688), at 3 n.3 (same).
>
> **Plaintiffs' Abandonment**:  "Plaintiffs are not asserting that doctors should be instructed to adjust dose based upon the result of the Neoplastin PT test." Pls.' Opp. to Defs.' Dosing, Monitoring, and Design Preemption MSJ (Doc. 5531) at 1; *id.* at 2, 11; Pls.' Opp. to Defs.' Labeling Preemption MSJ (Doc. 5650) at 1; Pls.' Opp. to Defs.' Unapproved Dosing and Monitoring and 20-Second PT Cut-Off Guideline Daubert Motion (Doc. 5641) at 13, 15, 21-23; Pls.' Opp. to Defs.' LPLA Design Defect MSJ (Doc. 5606), at 2.

---

[2] Defendants have reattached as Exhibit 2 hereto the Proposed Order on Abandoned Claims that Defendants previously filed (Doc. 5677-1), Exhibit 47.  Defendants also have attached as Exhibit 1 a chart that details each abandoned claim, where the claim was alleged or argued, and where in Plaintiffs' briefing they abandoned the claim.

7

   2.    **Twice-Daily Dosing**: Plaintiffs alleged—and their experts contended—that Xarelto would be safer if dosed twice (instead of once) daily. *See* Defs.' Dosing & Monitoring *Daubert* Motion (Doc. 5113-1), at 3–4, 21 n.14 (describing and citing Plaintiffs' experts' opinions); *see also* Defs.' Dosing & Monitoring *Daubert* Reply Br. (Doc. 5688), at 3 n.3 (same).

   **Plaintiffs' Abandonment**: "Plaintiffs are not asserting that the Defendants should unilaterally lower the approved dose of Xarelto to provide a different dosing regimen without FDA approval . . . ." Pls.' Opp. to Defs.' Dosing, Monitoring and Design Preemption MSJ (Doc. 5531) at 2; Pls.' Opp. to Defs.' Unapproved Dosing and Monitoring and 20-Second PT Cutoff Guideline *Daubert* Motion (Doc. 5641) at 11, 26–27.

   3.    **Too High Total Daily Dose**: Plaintiffs alleged—and their experts contended—that Xarelto's FDA-approved dose is too high. *See* Defs.' Dosing & Monitoring *Daubert* (Doc. 5113-1), at 4, 24 n.15 (describing and citing Plaintiffs' experts' opinions); *see also* Defs.' Dosing & Monitoring *Daubert* Reply Br. (Doc. 5688), at 3 n.3 (same).

   **Plaintiffs' Abandonment**: Plaintiffs failed to defend in their *Daubert* opposition their experts' opinions regarding the appropriate Xarelto dose. *See generally* Doc. 5641.

*See also, e.g.*, Pls.' *Daubert* Opp. (Doc. No. 5641), at 11, 26.[3]

Critically, in response to Defendants' *Daubert* challenges, Plaintiffs did not even *attempt* to argue that the scientific theories that their experts advanced on these issues were admissible. Accordingly, as Defendants explained in their *Daubert* reply brief, the Court should exclude all scientific expert testimony concerning them. Defs.' Reply Br. (Doc. No. 5688) at 2–3 & n.2; *see also*, *e.g.*, *Jenkins v. Slidella LLC*, No. 05-370, 2008 WL 2649510, at *6 (E.D. La. June 27, 2008) (excluding testimony under *Daubert* when party failed to respond to arguments).

---

[3] In their *Daubert* opposition brief, Plaintiffs narrowed their monitoring-related opinions to an opinion that "a physician can reliably evaluate a Xarelto-treated patient's risk of bleeding with Neoplastin PT (approximately 14 hours after the last dose of Xarelto) and thereby decide, along with the patient, whether to accept that risk." Pls.' Br. (Doc. 5641) at 11. With respect to dosing, Plaintiffs "represent[ed] that no expert will offer an opinion at trial that once-daily dosing is safer and/or more effective than twice-daily dosing." *Id.* at 26.

8

**CONCLUSION**

For the foregoing reasons, the Court should enter an order (1) dismissing any of Plaintiffs' causes of action that are based on their abandoned allegations, and (2) excluding scientific expert testimony regarding any abandoned allegations.

Respectfully submitted,

BARRASSO USDIN KUPPERMAN FREEMAN & SARVER, L.L.C.

By: /s/ *Richard E. Sarver*
Richard E. Sarver
Celeste R. Coco-Ewing
BARRASSO USDIN KUPPERMAN FREEMAN & SARVER, L.L.C.
909 Poydras Street, 24th Floor
New Orleans, Louisiana 70112
Telephone: (504) 589-9700
rsarver@barrassousdin.com
ccoco-ewing@barrassousdin.com

DRINKER BIDDLE & REATH LLP

By: /s/ *Susan M. Sharko*
Susan M. Sharko
Drinker Biddle & Reath LLP
600 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
susan.sharko@dbr.com

Rodney M. Hudson
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
Telephone: (415) 591-7500
Rodney.hudson@dbr.com

Chanda A. Miller
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996

WILKINSON WALSH + ESKOVITZ LLP

By: /s/ *Beth A. Wilkinson*
Beth A. Wilkinson
Jennifer L. Saulino
Jeremy Barber
WILKINSON WALSH + ESKOVITZ LLP
1900 M. Street NW, Suite 800
Washington, DC 20036
Telephone: (202) 847-4000
bwilkinson@wilkinsonwalsh.com
jsaulino@wilkinsonwalsh.com
jbarber@wilkinsonwalsh.com

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: */s/ David E. Dukes*
David E. Dukes
J. Mark Jones
NELSON MULLINS RILEY & SCARBOROUGH LLP
1320 Main Street, 17th Floor
Columbia, SC 29201
Telephone: (803) 799-2000
David.Dukes@nelsonmullins.com
Mark.Jones@nelsonmullins.com

ARNOLD & PORTER KAYE SCHOLER LLP

By: /s/ *Andrew K. Solow*
Andrew K. Solow
Steven Glickstein
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street

Telephone: (215) 988-2700
Chanda.Miller@dbr.com


IRWIN FRITCHIE URQUHART & MOORE LLC

By: /s/ *James B. Irwin*
James B. Irwin
Kim E. Moore
Irwin Fritchie Urquhart & Moore LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
jirwin@irwinllc.com


*Attorneys for Defendants Janssen Pharmaceuticals, Inc. and Janssen Research & Development, LLC*

New York, New York 10019-9710
Telephone: (212) 836-8485
andrew.solow@apks.com
steven.glickstein@apks.com

William Hoffman
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
william.hoffman@apks.com

BRADLEY ARANT BOULT CUMMINGS LLP

By: */s/ Kevin C. Newsom*
Kevin C. Newsom
Lindsey C Boney IV
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place, 1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8803
knewsom@bradley.com
lboney@bradley.com



CHAFFE MCCALL L.L.P.

By: /s/ *John F. Olinde*
John F. Olinde
CHAFFE MCCALL L.L.P.
1100 Poydras Street, Suite 2300
New Orleans, LA 70163
Telephone: (504) 585-7241
olinde@chaffe.com


*Attorneys for Bayer HealthCare Pharmaceuticals Inc. and Bayer Pharma AG*

## CERTIFICATE OF SERVICE

  The undersigned hereby certifies that on the 12th day of May, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to Liaison Counsel for Plaintiffs by operation of the court's electronic filing system.

                */s/  John F. Olinde*