**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: XARELTO (RIVAROXABAN) | * | MDL 2592 |
| PRODUCTS LIABILITY LITIGATION | * | |
| | * | SECTION L |
| THIS DOCUMENT RELATES TO: | * | |
| | * | JUDGE ELDON E. FALLON |
| *Joseph Orr, Jr., et al. v. Janssen et al.* | * | MAG. JUDGE NORTH |
| *Case No. 2:15-cv-03708* | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION IN LIMINE NO. 37
TO PRECLUDE THE FALSE AND MISLEADING ARGUMENT THAT A
PROTHROMBIN TIME (PT) TEST MUST BE SPECIFICALLY APPROVED BY THE
FDA FOR USE WITH XARELTO**

## I.      INTRODUCTION

Plaintiff anticipates that Defendants, either through argument or testimony, will falsely suggest that the universal PT test, available in community hospitals around the country, has not been cleared or approved to evaluate the anticoagulation status of patients on Xarelto. Any such testimony or argument is without factual or legal basis, and therefore is false, misleading and prejudicial to Plaintiffs. Therefore, Plaintiffs move to prohibit Defendants from making such false and misleading arguments at trial.

## II.      STANDARD OF REVIEW

Under Federal Rule of Evidence 402, only relevant evidence is admissible at trial. Evidence is relevant if it tends to make a fact of consequence to the litigation more or less probable than it would be without the evidence. Fed. R. Evid. 401. However, even relevant evidence can be excluded "if its probative value is substantially outweighed by a danger of one or more of the

following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

The trial court has broad discretion in assessing the probative value of evidence and determining if it is significantly outweighed by the risk of undue prejudice. *See Sprint v. Mendelsohn*, 552 U.S. 379, 384 (2009); *Verzwyvelt v. St. Paul Fire & Marine Ins. Co.*, 175 F. Supp. 2d 881, 888 (W.D. La. 2001), *citing United States v Johnson*, 558 F. 2d 744, 746 (5th Cir. 1977). A court should exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice. *United States v. Duncan*, 919 F. 2d 981, 987 (5th Cir. 1990), *citing* Fed. R. Evid. 403.

## III.   <u>ARGUMENT</u>

The Prothrombin Time (PT) test is a routinely administered blood test that is used in clinical laboratories to measure how long it takes a patient's blood to clot. Like a radar gun that measures the speed of an object while it moves (whether a baseball, a Buick or a Maserati), PT measures blood-clotting time whether from the anticoagulant effect of a drug or an underlying disease. Just as there are different manufacturers and models of radar guns, there are different reagents on the market for PT testing. Each of these reagents are FDA approved, but once approved for marketing there is no restriction on any laboratory to limit use of the reagent to the measurement of PT limited to any specific anticoagulant. Accordingly, the current label of Xarelto recognizes: "Neoplastin® prothrombin time (PT), activated partial thromboplastin time (aPTT) and HepTest® are also prolonged dose-dependently."[1]

---

[1] *See* https://www.xarelto-us.com/shared/product/xarelto/prescribing-information.pdf?sitelink= Full+Product+Information&utm_source=google&utm_medium=cpc&utm_campaign= Branded+2016&utm_content=Misspellings&utm_term=xarelto&gclid=CJm24YqT69MCFUelNwodGvgBNw&gcls rc=ds.

Notwithstanding any argument to the contrary by Defendants, the FDA does not approve a generic lab test, like PT, to be used with one specific anticoagulant and not another. To argue or suggest otherwise would be false and would mislead the jury. For example, the Pradaxa label specifically mentions, another blood clotting test, Activated Partial Thromboplastin Time (aPTT) to assess the anticoagulant activity in patients on Pradaxa.[2] The Pradaxa label makes mention of a specific aPTT reagent (Roche) and further states that other reagents might provide different results. The Roche aPTT reagent referenced in the Pradaxa label was approved by the FDA pursuant to the 510(k) process in 1999. That approval does not limit laboratories from using another reagent to measure aPTT in Pradaxa patients; it just alerts laboratories and doctors to the possibility of different results.

The Roche aPTT, as with all aPTT reagents made by other commercial suppliers, was approved as a test to evaluate clotting function and is therefore useful as a generalized screening test for coagulation function. At the time of 510(k) clearance, the product was also noted to be appropriate to use to monitor the effectiveness of heparin therapy. However, despite being referenced in the Pradaxa label, and noted to be useful in assessing the anticoagulation status of patients on Pradaxa, the test has never been specifically approved or cleared for use related to Pradaxa measurement.[3] Instead, it is a general test of coagulation status that has been found to be particularly sensitive for Pradaxa, like the sensitivity that exists between Xarelto and various PT reagents including Neoplastin.

There is no statute or regulation that restricts the use of medical devices like laboratory tests currently on the market from being used for anticoagulation measurement or screening so

---

[2]Pradaxa label at sections 2, 10 and 12.2.

[3]Exhibit 2 is the 510k Summary for the Roche aPTT.

long as such use comports with device labeling. Here, the Neoplastin® PT reagent is FDA-approved and commercially available throughout the United States. Labeling for Neoplastin® PT explicitly states that it is intended for the "determination of the prothrombin time (PT)," explaining that "[t]he prothrombin time is a coagulation screening test" that measures various coagulation factors, including Factor X. Moreover, the Neoplastin® PT label does not limit its usage to a specific drug, but recognizes that it is merely "commonly" used for monitoring warfarin.

Xarelto has been shown to be capable of measurement by the PT test via several different commercial reagents. Indeed, Defendants themselves relied on Neoplastin PT in their studies to make reliable scientific findings about Xarelto concentrations. Only in this litigation have they chosen to deny the scientific value of the measurement. It is disingenuous and factually inaccurate for the Defendants to contend that they were prohibited from adding to their label additional warnings by way of an instruction to physicians to measure PT in their Xarelto patients using the Neoplastin PT because the test was not approved for use with Xarelto.[4] Particularly instructive is the fact that Sec. 5.2 of the Xarelto label mentions considering use of PCC products in patients bleeding because of Xarelto use. The package insert and approved labeling for prothrombin complex concentrates (commercial name "KCentra") has not been specifically approved by the FDA for such use.

Why would the Defendants include use of PCC (not specifically approved for use with Xarelto) if it was illegal to so and would misbrand their drug? The answer, it is no more illegal to include PCC than it is to include Neoplastin PT, which is also already in  Section 12.2 of the current Xarelto label.   As the Defendants like to argue, their label was approved by the FDA, even as to the so-called off-label use of Neoplastin PT or PCC.  The presence of these provisions in the

---

[4] *Wyeth v. Levine*, 555 U.S. at 568, *citing* 21 CFR §§ 314.70(c)(6)(iii)(A), (C).

current Xarelto label demonstrates the duplicity of Defendants' argument.  Defendants' arguments should be given no weight; nor should such falsehoods be permitted to be presented to the jury.

For these reasons, Plaintiff requests that all parties and witnesses be precluded from offering, or trying to offer the false and misleading argument that a PT reagent must be specifically approved by the FDA for use with Xarelto.

Dated:  May 12, 2017                                    Respectfully submitted,


*/s/ Leonard A. Davis*
Leonard A. Davis, Esq. (Bar No. 14190)
**HERMAN, HERMAN & KATZ, LLC**
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Telephone: (504) 581-4892
Facsimile: (504) 561-6024
Email:  ldavis@hhklawfirm.com

Gerald E. Meunier (Bar No. 9471)
**GAINSBURGH BENJAMIN DAVID MEUNIER
& WARSHAUER, LLC**
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA  70163-2800
Telephone: (504) 522-2304
Facsimile: (504) 528-9973
Email:  gmeunier@gainsben.com

***Plaintiffs' Liaison Counsel***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on May 12 2017, the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs and Defendants by operation of the court's electronic filing system and served on all other plaintiff counsel via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre- Trial Order No. 17.

*/s/ Leonard A. Davis*
**LEONARD A. DAVIS**