UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  XARELTO (RIVAROXABAN) | * | MDL 2592 |
| PRODUCTS LIABILITY LITIGATION | * | |
| | * | SECTION L |
| THIS DOCUMENT RELATES TO: | * | |
| *Joseph Orr, et al. v. Janssen Research, et* | * | JUDGE ELDON E. FALLON |
| *al., No. 15-03708* | * | |
| * * * * * * * * * ** * * * * * * * * * * * * | | MAGISTRATE JUDGE NORTH |

## PLAINTIFFS' PROPOSED JURY INSTRUCTIONS

Plaintiffs respectfully request that the Court give to the jury in this matter the same

"General Instructions" and the same "Burden of Proof" instructions which the Court gave the

jury on May 3, 2017 at the close of the evidence in the trial of *Boudreaux v. Bayer Corp., et al.*,

(Case No. 2:14-cv-02720), MDL 2592, as reflected in Record Document 6393, at pp. 1-11 and

13-14.

In addition, Plaintiffs request that the Court give the Plaintiffs' Proposed Jury

Instructions, Nos. 1 through 39 as set forth herein.

Dated:  May 16, 2017

| | |
|---|---|
| Respectfully submitted, | |
| | |
| */s/ Leonard A. Davis* | */s/ Gerald E. Meunier* |
| Leonard A. Davis, Esq. (Bar No. 14190) | Gerald E. Meunier (Bar No. 9471) |
| ***Herman, Herman & Katz, LLC*** | ***Gainsburgh Benjamin David Meunier*** |
| 820 O'Keefe Avenue | ***& Warshauer, LLC*** |
| New Orleans, Louisiana  70113 | 2800 Energy Centre, 1100 Poydras Street |
| Telephone:  (504) 581-4892 | New Orleans, LA  70163-2800 |
| Facsimile:  (504) 561-6024 | Telephone:  (504) 522-2304 |
| Email:  ldavis@hhklawfirm.com | Facsimile: (504) 528-9973 |
| | Email:  gmeunier@gainsben.com |
| ***Plaintiffs' Co-Liaison Counsel*** | |
| | ***Plaintiffs' Co-Liaison Counsel*** |

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 1**

The law allows two types of evidence: direct and circumstantial.  Both are to be considered by you in determining whether the Plaintiffs have met their burden of proof.

Direct evidence is testimony by a witness as to what he or she saw or heard, or physical evidence of the fact itself. Circumstantial evidence is the proof of circumstances which indicate the existence of certain other facts.  For example, if the weather in a certain area was rainy at a time close to an accident, you might conclude from this circumstance that rain made the road surface wet at the time of the accident.

The law treats both direct and circumstantial evidence as permissible; and, again, proof by either direct or circumstantial evidence, or a combination of both, may constitute a preponderance of the evidence when the evidence is taken as a whole.

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 2**

The law does not require that only certain phrases or words are appropriate for a medical or scientific opinion to be expressed.  Hence, there is no legal requirement that a medical or scientific expert express an opinion to a degree of medical or scientific "certainty."  Since any fact which an expert opinion seeks to establish must be shown to exist by a preponderance of the evidence, it is sufficient that the medical or scientific expert opinion be based on a reasonable "probability."

*Lasha v. Olin Corp.*, 625 So. 2d 1002 (La. 1993); *Estate of Sanders v. United States*, 736 F.3d 430, 437 (5th Cir. 2013); *Nagle v. Gusman,* No. 12-cv-1910, 2016 WL 560688, at *6 (E.D. La. Feb. 12, 2016) (Vance, J.); La. Prac. Civ. Trial § 7:62.

## PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 3

This is a Products Liability action brought under a law known as the Louisiana Products Liability Act or "LPLA." The LPLA provides that the manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders it unreasonably dangerous. The Plaintiffs in this case must show that (1) their damages were proximately caused by a characteristic of the product that renders it defective, i.e., unreasonably dangerous, and that (2) these damages arose from a reasonably anticipated use of the product, i.e., a use of the product that a manufacturer reasonably should expect.

It has been stipulated and agreed upon in this case, and therefore you may consider it to be established, that both the Janssen and Bayer defendants in this case are all manufacturers of Xarelto within the meaning of the LPLA. Where there is a relationship between manufacturers, and a plaintiff is injured by a product that may be deemed "manufactured" by more than one manufacturer, these manufacturers are collectively responsible to the plaintiff.

*Adapted from Court's instruction in Boudreaux.  R.D. 6393 at pp. 14-16*; LSA-R.S. §9:2800.53(1)(a-c); LSA-R.S. §9:2800.53(7); LSA-R.S. §§9:2800.54; LSA-R.S. §9:2800.57(A); *Kampen v. American Isuzu Motors*, 157 F.3d 306, (5th Cir. 1998); *State Farm Mut. Uto. Ins. Co. v. Wrap-On Co., Inc.,* 626 So.2d 874, 876 (La. Ct. App. 1993); *Dunn v. Wal-Mart Stores, Inc.,* 679 So.2d 1034 (La. App. 1 Cir. 1966); 18 Civ. L. Treatise, Civil Jury Instructions §§11:8, 11:9 (3d ed.) (as modified); *Martin v. David*, 685 So.2d 158, (La. Ct. App. 1996).

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 4**

Plaintiff in this case alleges that Xarelto was defective, or "unreasonably dangerous;" first because of its lack of adequate warnings or instructions to Mrs. Sharyn Orr's physicians, and, second, because of a defect in Xarelto's design.  Plaintiffs may recover from the Defendant manufacturers by proving either or both of these two claims by a preponderance of the evidence.

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 5**

The Plaintiffs' first claim is that Xarelto was unreasonably dangerous because of inadequate warnings or instructions about its potential risks for patients like Mrs. Sharyn Orr.

In order to be successful, Plaintiffs must prove by a preponderance of the evidence that, at the time Xarelto was placed on the market, (1) it had a potentially damage-causing characteristic; (2) Bayer and Janssen failed to use reasonable care to provide adequate warnings and instructions to prescribing and treating physicians about this characteristic and its associated danger, and (3) the damages suffered by Mrs. Orr and her family were proximately caused by this failure to provide adequate warnings and instructions.

*Adapted from Court's instruction in Boudreaux.  R.D. 6393 at p. 17;* LSA-R.S. 9:2800.57.

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 6**

An "adequate warning" under the LPLA is defined as a "warning or instruction that would lead an ordinary reasonable user or handler of a product to contemplate the danger in using or handling the product and either to decline to use or handle the product or, if possible, to use or handle the product in such a manner as to avoid the damage for which the claim is made." The lack of adequate instructions for safe use of the product may include inadequacies in recommended assessment, testing, or screening techniques.

*Verbatim from Court's instruction in Boudreaux.  R.D. 6393, at pp. 17-18;* LSA-R.S. 9:2800.53.

7

## PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 7

To comply with its legal duty to provide adequate warnings and instructions with a prescription drug, the drug manufacturer must give due consideration to the likelihood of harm in the use of the drug by doctors and patients, and the seriousness of consequences from the failure to give clear instructions to doctors.

*Weber v. Fidelity and Casualty Co. of New York*, 250 So.2d 754 (La. 1971); Louisiana Jury Instruction, Civil, p. 199; *Chappins v. Sears*, 358 So.2d 296 (La 1978).

8

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 8**

Louisiana recognizes the "learned intermediary" doctrine, a defense which allows a drug manufacturer to fulfill its duty to warn and instruct by informing the prescribing professional of the potential risks from the drug's reasonably anticipated use in accurate, clear, and unambiguous language so the physician may intelligently decide on its use with a particular patient. However, where the Defendants are shown to have failed to adequately warn or instruct a prescribing or treating doctor about a drug, the learned intermediary doctrine does not relieve the manufacturer of legal responsibility. In other words, in that circumstance the prescribing or treating doctor cannot be said to be a "learned" intermediary because he was not adequately informed by the manufacturer.

*Adapted from Court's instruction in Boudreaux. R.D. 6348 at p. 21.*

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 9**

Under the "learned intermediary" doctrine, Plaintiffs can prevail in their failure-to-warn-or-instruct claim, if they show by a preponderance of the evidence (1) that Defendants' warnings or instructions regarding Xarelto were inadequate, and (2) that such inadequacy affected the medical decision or decisions of the prescribing and treating physicians with regard to Mrs. Orr. In other words, you must determine if either or both these physicians, given adequate warnings or instructions, would have altered their prescribing or treating decisions, so that the course of treatment for Mrs. Orr would have changed and the damages sought by plaintiffs more likely than not would have been avoided.

*Adapted from Court's instruction in Boudreaux.  R.D. 6393, at p. 22.*

## PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 10

A mere reference to an adverse effect of a drug is not necessarily an adequate warning or instruction under the LPLA.  The label must contain language that is adequate to reasonably inform a physician about how "to use…the product in such a manner as to avoid the damage for which the claim is made."

LSA-R.S. 9:2800.53(a); *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 259 (5th Cir. 2002).

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 11**

Under the law (including federal regulations) applicable to this case, drug manufacturers have the responsibility for not only drafting the initial labeling for their product, but also for assuring that the labeling continues to reflect the current knowledge concerning the risks posed by the drug.[1]

Specific federal regulations authorize the manufacturer of a drug which has been approved by the FDA to "add or strengthen…warning, precaution, or adverse reaction" information about the drug in the drug's label, and to do so without the need for further FDA approval.[2]

---

[1] *Adapted from Court's instruction in Boudreaux.  R.D. 6348, at p. 21.*
[2] 21 CFR §314.70(c)(6)(iii).

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 12**

You are instructed that certain federal regulations applicable to this case provide that the

warnings section of a prescription drug label:

> "…must identify any laboratory tests helpful in following the patient's response or in
> identifying possible adverse reactions. If appropriate, information must be provided on
> such factors as the range of normal and abnormal values expected in the particular
> situation and the recommended frequency with which tests should be performed before,
> during, and after therapy."

21 CFR §201.57(c)(6)(iii).

## PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 13

While a manufacturer's violation of one or more FDA regulations designed to protect consumers is not conclusive evidence that a product is unreasonably dangerous, violation of such standards may be considered as evidence of the appropriate standard when determining whether the instructions provided to the treating physician were inadequate.

*Coates v. AC and S, Inc.*, 844 F. Supp. 1126 (E.D. La. 1994); *Manchack v. Willamette Industries, Inc.*, 621 So. 2d 649 (La. App. 2 Cir. 1993); *Melerine v. Avondale Shipyards, Inc.*, 659 F. 2d 706, 709 (5th Cir. 1981), *citing Marshall v. Isthmian Lines, Inc.*, 334 F. 2d 131, 134 (5th Cir. 1964).

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 14**

In your consideration of the law that a drug manufacturer's duty to warn or instruct is owed not patients but to their doctors as "learned intermediaries," you are not to consider only the Plaintiffs' prescribing physician but also her "treating physician." The manufacturer's duty to provide information about a drug extends to non-prescribing healthcare providers "who are in positions to act on such information so as to reduce or prevent injuries to patients."

Restatement (Third) of Torts: Products Liability § 6(d) (1997); *see also Stahl*, 283 F. 3d at 2567. 269-70, *citing* Restatement (Third) of Tort §§ 6(b), 6(d)(applying learned intermediary doctrine); *Georges v. Novartis Pharm Corp.*, No. CV 06-05207, 2013 WL 5217198, at *9 (C.D. Cal. Apr. 4, 2013)(finding that dentist "may be in the class of learned intermediaries 'in a position to reduce the risks of harm' to whom Defendant owed a duty to warn"); *Mahaney ex rel. Estate of Kyle v. Novartis Pharm. Corp.*, 835 F. Supp. 2d 299, 307-308 (W.D. Ky. 2011) (extending learned intermediary status to plaintiff's non-prescribing physicians noting that "[i]t is impossible to read the learned intermediary rule through [defendant's] proposed lens given the interplay between multiple physicians, numerous procedures, and countless drugs to which cancer patient are subjected."; *Stevens v. Novartis Pharm. Corp.*, 247 P. 3d 244, 260 (Mont. 2010)(describing scope of learned intermediary doctrine as applying to any healthcare professional responsible for making decisions regarding the patient's case); *McEwen v. Ortho Pharm. Corp.*, 528 P. 2d 522, 529 (Ore. 1974) ("Although the ethical drug manufacturer's duty to warn has been discussed most often with reference to the prescribing physician, the [doctrine's] reasoning applies with equal force to the treating physician…[who] may be more likely to observe the actual symptoms of the drug's untoward consequences.")

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 15**

The premise underlying a failure-to-warn-or-instruct claim in the learned intermediary context is that the manufacturer has failed to adequately warn a doctor having authority to make decisions in the care and treatment of a patient.  The treating physician's knowledge about a prescription drug being used is thus the focus of inquiry when such a failure to warn or instruct claim is made.


*Stahl v. Novartis Pharm. Corp.*, 283 F. 3d 254, 268 (5th Cir. 2002).

## PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 16

The obligation to the consumer is fulfilled when the prescribing or treating physician is informed of any potential side effects or risks from the drug's use so that they may intelligently decide on its use and advise the patient.

*McCarthy v. Danek Med., Inc.*, 65 F. Supp. 2d 410, 413 (E.D. La. 1999), *citing Mikell v. Hoffman-Laroche, Inc.*, 649 So. 2d 75, 80 (La. App. 1 Cir. 1994).

## PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 17

An inadequate warning claim under the LPLA can appropriately be based on alleged

inadequacies in a recommended medical monitoring or testing regime. This is because the LPLA

defines an "adequate warning" to encompass "instructions about the use of a drug, as well as

warnings.

*Stahl v. Novartis Pharmaceuticals Corp., 283 F. 3d 254, 269 (5th Cir. 2002), citing* LSA-R.S.
9:2800.53(9) (West 1997) (defining an "adequate warning" as a "warning or instruction that
would lead an ordinary reasonable user or handler of a product to contemplate the danger in
using or handling the product and either to decline to use or handle the product or, if possible, to
use or handle the product in such a manner as to avoid the damage for which the claim is
made"); *see also* Restatement (Third) of Torts: Products Liability §6(b) (1997) (noting that a
prescription drug or medical device is defective if it "is not reasonably safe due to
inadequate *instructions* or warnings") (emphasis added).

18

## PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 18

[I]n order to prevail on an inadequate instruction claim for a prescription drug, a plaintiff must demonstrate that the instructions provided did not enable the treating physician to "use or handle the [drug] ... in such a manner as to avoid the damage for which the claim is made."

*Stahl v. Novartis Pharm. Corp.*, 283 F. 3d 254, 271 (5th Cir. 2002), *quoting* LSA-R.S. 9:2800.53(9)(West 1997).

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO.  19**

A prescription drug warning or instruction is inadequate if the manufacturer fails to give a reasonably prudent prescriber or treater warnings of or instructions about a danger or risk either known or knowable to the manufacturer.

*Adapted from Court's instruction in Boudreaux.  R.D. 6393, at p. 19.*

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 20**

Under the law, a manufacturer of a product has a continuing duty to provide adequate instructions for the safe use of the product.  If, after the product has been produced, the manufacturer acquires knowledge of a means to make the product safer to use, or if the manufacturer would have acquired such knowledge had it acted as a reasonably prudent manufacturer, it may be liable for damage caused by its subsequent failure to provide adequate instructions to anticipated users of the product.

LSA-R.S. 9:2800.57(c); 21 CFR §314.70(c)(6)(iii).

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 21**

A manufacturer has a duty to warn or instruct not only about what it actually knew concerning the risks of its product, but also what it reasonably should have known in light of the available scientific and technical knowledge existing at the time the product was produced.

LSA-R.S. 9:2800.57; *Bunge Corp. v. GATX Corp.,* 557 So.2d 1376, 1384 (La. 1990).

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 22**

The manufacturer may communicate a warning or instruction to physicians either through a label or package insert for a drug, or through other communications or literature known to be available to physicians.  In the determining the scope of a manufacturer's duty to warn of dangers and provide instructions associated with the use of its product, the manufacturer is held to the knowledge and skill of an expert in its field.  The manufacturer must keep up with scientific knowledge, discoveries, and advances and is presumed to know what could be learned by doing so.  This duty is continuing.  If the manufacturer learns of a characteristic or danger associated with its drug product which may cause harm to patients after the drug is on the market, the manufacturer has a continuing duty to use reasonable care to provide adequate warning or instructions to prescribing and treating doctors, in order to advise them of such later-discovered matters.

*Adapted from Instruction in Boudreaux.  R.D. 6393 at pp. 20-21.*

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO.  23**

A manufacturer's "Dear Doctor" letter sent to all physicians in an area can be considered relevant to the manufacturer's duty to warn of or instruct about the risks of a prescription drug.

*Mikell v. Hoffman-Laroche, Inc.*, 649 So. 2d 75 (La. App. 1 Cir. 12/22/94)

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 24**

If a manufacturer were to provide an adequate warning or instruction for the safe use of a prescription drug, the law allows for what's called a "heeding presumption."  This means you may assume that a prescribing or treating physician would have read and followed (or "heeded") such a warning or instruction had it been provided.


*Adapted from Court's instruction in Boudreaux.  R.D. 6393 at p. 19; Wagoner v. Exxon Mobile Corp.*, 813 F.Supp. 2d 771, 797 (E.D. La. 2013); *Bloxom v. Bloxom,* 512 So.2d 839, 850 (La. 1987); *see also Perez v. Wyeth Labs, Inc.*, 734 A.2d 1245 (N.J. 1999).

**PLAINTIFFS' PROPOSED JURY INSTRUCTIONS NO.  25**

In addition to considering testimony of what an actual prescribing or treating physician may have done differently had adequate warnings or instructions for the safe use of a drug been provided, you also may consider "evidence of how a reasonable physician would have responded to an adequate warning" or instruction.


*Allgood v. GlaxoSmithKline, PLC*, No. 06-4506, 2008 WL 483574, at *6 n. 6 (E.D. La. Feb. 20, 2008); *Thomas v. Hofman-LaRoche, Inc.,* 949 F. 2d 806, 812 (5th Cir. 1992).

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 26**

FDA approval of a drug, although relevant, does not in and of itself absolve drug manufacturers of all legal responsibility.  Neither does FDA approval of a drug's label, establish that the warnings or instructions provided with the drug where adequate under the standards of Louisiana law.  In fact, no action, or inaction on the part of the FDA can foreclose a claim under Louisiana law.  FDA approval of a drug means that the defendants have met all of the appropriate, minimum safety standards for such approval.

But such approval, though relevant, cannot be considered by you jurors as sufficient to establish that the Defendants have taken the steps necessary under the law which applies in this case.  More specifically, if you find that the Defendants failed to apprise prescribing and treating physicians of ways to address certain risks which the Defendants knew, or should have known about, prior to FDA approval, or which became known or should have become known after the FDA approved Xarelto's label, then FDA approval of the drug does not absolve the Defendants of liability under the LPLA.  Likewise, if you find that Xarelto was defective in design, FDA approval, though relevant, does not absolve Defendants of liability under the LPLA.

*Adapted from Court's instruction in Boudreaux.  R.D. 6393, at pp. 22-23.*

### PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 27

You have heard testimony and a document is in evidence concerning certain language proposed by the Defendants which was not included in the Xarelto label approved by the FDA. You may give this evidence and this document whatever weight or significance you believe is deserved, including none at all, as is true with all other testimony or documents in evidence in this case.  I further instruct you, however, that you are not to consider this testimony or this document as proof that the FDA either refused to approve, or would not have approved, language for the Xarelto label which the Plaintiffs claim was needed to properly instruct Mr. Orr's prescribing doctor about the dangers or safe use of Xarelto.

*Wyeth v. Levine,* 555 U.S. 555 (2009); Standard Jury Instructions on Weighing of Evidence.

## PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 28

In order to show that the FDA prevented them from including in the Xarelto label certain instructions which the Plaintiffs claim should have been included under the LPLA, the Defendants were required to present "clear evidence" that the FDA would not have approved the label instructions which the Plaintiffs claim were necessary and appropriate in this case.

This "clear evidence" burden of proof is greater than the "preponderance of the evidence" burden of proof.  To establish that the FDA would not have included or approved language in the Xarelto label which Plaintiffs contend was needed, the Defendants must show that it was not only probable, but "highly probable" and "reasonably certain" that the FDA would not have done so.

U.S.C.A. Const. Art. 6, cl. 2.; *Maryland v. Louisiana,* 451 U.S. 725, 746 (1981); *Altria Group v. Good,* 555 U.S. 70 (2008); *Wyeth v. Levine,* 555 U.S. 555 (2009); *IN re Fosamax (Alemdronate Sodium) Prod. Liab. Litig.,* 852 F.3d 268 (3rd Cir. 2017).

## PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 29

In addition to their failure to warn and instruct claim, Plaintiffs also claim that Xarelto was unreasonably dangerous in its design.  In order to be successful as to this claim under the LPLA, Plaintiffs must prove by a preponderance of the evidence that:

(1) there was an alternative design for Xarelto that was capable of either preventing Mrs. Orr's death or improving her chances of survival; and (2) the likelihood that Xarelto's actual design would cause such harm and the gravity of that harm, outweighed both the burden on the defendant of adopting the alternative design and any adverse effect which the alternative design would have on the usefulness of Xarelto.

If you find that the Defendants have used reasonable care to provide an adequate warning and instruction to physicians using Xarelto, then you must consider the effect of that warning and instruction in deciding the likelihood that Xarelto as designed would cause Mrs. Orr's death or diminish her chances of survival.  When I use the term adequate warning or instruction, I mean warning or instruction that would lead an ordinary physician to think about the danger in using Xarelto, and then either to not use it or, if possible, to use it in such a manner as to avoid harm to the patient.

LSA-R.S. 9:2800.56; Fifth Circuit Pattern Jury Instructions (Civil Cases) (2014) §1.1; 3.1 (as modified).

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 30**

The "learned intermediary" doctrine which I have discussed, applies only to the Plaintiffs' failure to warn or instruct claim, and not to their design defect claim.

## PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 31

Plaintiffs must show that an alternative, safer design could have been provided because it existed at the time Defendants sold Xarelto.

"Existed" does not mean that the proposed design or instruction must have been in actual use when the manufacturer distributed his product.  Nor does it mean that that proposed design or instruction must have been feasible, i.e., could have been employed even if it was not, at that time.  But "existed" does mean that the proposed design or instruction must have at least been conceived at the time the product left its manufacturer's control.

The lack of FDA approval of an alternative design or instruction for Xarelto has no bearing on whether a safer alternative existed at the time Xarelto was approved.  It is sufficient for Plaintiffs to show that an alternative design and instruction had been conceived at the time Xarelto was placed on the market.

LSA-R.S. 9:2800.56(1); *Hunt v. McNeil Consumer Healthcare,* 297 F.R.D. 268, 273-74 (E.D. La. 2014); *Moyer v. Siemens Vai Servs., LLC,* No. 11-cv-3185, 2013 WL 3293668, at *9 (E.D. La, June 28, 2013); *Johnson v. Transwood, Inc.,* No. 14-cv-102, 2016 WL 589875, at *5 (M.D. La., Feb. 11, 2016); *In re Tylenol (Acetaminophen) Marketing Sales Prac. and Prod. Liab. Litig.,* MDL No. 2436, 2015 WL 7075949, *19 n. 145 (E.D. Pa. Nov. 13, 2015).

## PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 32

In order for Plaintiffs to recover damages based on their claims, they must establish by a preponderance of the evidence that the inadequate warnings or instruction provided by Defendants to Mrs. Orr's prescribing and treating physicians, and/or the defective design of Xarelto, should be considered a "proximate cause" or causes of the damages Plaintiffs seek to recover.

Proximate cause means the efficient or direct cause of something.  It is a cause producing a natural chain of events, which, in the end, brings about the harm alleged by Plaintiffs.  In other words, proximate cause is a cause without which the harm would not have occurred.

Proximate cause requires proof of what the law calls both causation-in-fact and legal cause.  Causation-in-fact is proved by establishing that a Plaintiffs' harm would not have occurred "but for" the defendants' fault.  Legal cause is proved by establishing foreseeability, i.e., it must be reasonably foreseeable that some harm to another would result as a natural and probable consequence of the complained of fault.  I use the phrase "reasonably foreseeable" to mean foreseeable to a reasonable person.  It is not necessary for the Plaintiffs to demonstrate that the actual Defendants could foresee that particular harm would occur.  It is sufficient that a reasonable Defendant should have foreseen that its actions would probably cause harm to someone.  Again, the Plaintiffs prove legal cause by establishing that the harm they suffered occurred as a natural and probable consequence of the Defendants' actions or inactions.

You also are instructed that by "proximate cause," the law does not mean the sole cause of something.  The Defendants conduct can be a proximate cause if it was at least one of the direct, concurring causes of the alleged harm.  But, the Plaintiffs do have to show that the

conduct of the Defendants, even if it was one cause among many, was a substantial contributing factor in bringing about the harm suffered by Plaintiffs.  In other words, it is not necessary for the Plaintiffs to negate all other contributing factors or causes of the harm, provided they show, in this case, that the Defendants' failure to provide adequate warnings and instructions for the safe use of Xarelto, and/or the defective design of Xarelto, substantially contributed to Plaintiffs' damages.

Since there are two theories of LPLA fault in this case, I need to remind you of the "learned intermediary" doctrine and how this affects the Plaintiffs' proof of causation:  "Proof of proximate cause" in regard to Plaintiffs' inadequate warnings and instruction claim,  means that Plaintiffs must prove by a preponderance of the evidence that, if adequate warnings and instruction had been provided by Defendants to Mrs. Orr's prescribing and treating physicians, certain medical decisions in the treatment of Mrs. Orr would have changed and Plaintiffs' damages would have been avoided.

Proof of "proximate cause" in regard to Plaintiffs defective design claim, means that Plaintiffs must prove by a preponderance of the evidence that the defective design of the drug was directly a cause or substantial contributing factor in regard to the damages alleged by Plaintiffs.  This is because the learned intermediary doctrine does not apply to Plaintiffs' defective design claim.

*Adapted from Court's instruction in Boudreaux.  R.D. 6393, at pp. 23-26.*

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 33**

The purpose of compensatory damages is to make the Plaintiffs whole – that is, to compensate the Plaintiffs for the damages they suffered.  The damages you award must be fair compensation for the Plaintiffs' Damages, no more and no less.  Compensatory damages are not meant as punishment of the Defendants and cannot be imposed or increased to penalize the Defendants.

If you decide to award compensatory damages, you should be guided by dispassionate common sense.  That is to say, you should not be affected by sympathy, compassion, prejudice, or bias.

Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork.  The law does not require that the Plaintiffs prove the amount of their losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.  Therefore, you must use sound discretion in fixing an award of damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence.

*Adapted from Court's instruction in Boudreaux.  R.D. 6393, at pp. 28-29.*

## PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 34

If you find that Defendants' legal fault was a proximate cause of Mrs. Sharyn Orr's death, Plaintiffs are entitled to recover, and you make consider, the following elements of damages to the extent established by a preponderance of the evidence:

1) Mrs. Orr's pain, suffering and anguish prior to her death;

2) the hospital bills for treating Mrs. Orr prior to her death;

3) Joseph Orr, Jr.'s loss of his wife's financial support, material services, love, affection and society;

4) Kelli Orr Walker's loss of her mother's love, affection and society; and

5) Kim Orr DeAgano's loss of her mother's love, affection and society.

*Hill v. Shelter Mut. Ins. Co.*, 2005-1783 (La. 7/10/06), 935 So. 2d 691, 695; *In re Brewer,* 2005-0666 (La. App. 1 Cir. 5/5/06), 934 So. 2d 823, 826; *Johns v. U.S.*, 1998 WL 151282, at *13 (E.D. La. 1998); *Haynes v. Calcasieu Med. Transp., Inc.,* 702 So.2d 1024, 1035 (La. Ct. App. 1997); *Mistich v. Volkswagen of Germany, Inc. .,* 698 So.2d 47, 51 (1997), *writ denied* by 703 So.2d 623 (La.1997); *Odom v. State,* 688 So.2d 1082, 1093 (La. Ct. App. 1996); *Gibson v. State,* 674 So.2d 996 (La. Ct. App. 1996); *Watkins v. Bethley*, 27, 554 (La. App. 2 Cir. 11/1/95), 662 So. 2d 839, 840.

## PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 35

In seeking the recovery of damages for the loss of a chance of survival, Plaintiffs need only prove that the Defendants' fault resulted in Mrs. Sharyn Orr's loss of a chance to survive. This loss of a chance of survival must be established by a preponderance of the evidence.[1]

Therefore, in seeking recovery for the loss of a chance of Mrs. Orr surviving, Plaintiffs are not required to prove that different or earlier treatment by Dr. Bui actually would have saved her life. It is only necessary for Plaintiffs to show, by a preponderance of the evidence, that there was a chance her life could have been saved, and that this chance of her surviving was lost due to the Defendants' fault.[2]

---

[1] *Straughan v. Ahmed,* 618 So.2d 1225, 1228 (La. App. 5 Cir. 1993); *Smith v. State of Louisiana, Department of Health and Hospitals,* 676 So.2d 543 (La. 1996); *Turner v. Stassi,* 759 So.2d 299 (La. App. 2000); *Martin v. East Jefferson Gen. Hosp.,* 582 So.2d 1272, 1278 (La. 1991).

[2] *Smith v. State of La., Dept. of Health and Hospitals,* 676 So.2d 543 (La. 1996); *Hastings v. Baton Rouge Gen. Hospitals,* 676 So.2d 543 (La. 1996); *Levron v. State*, 673 So.2d 279, 288 (La. App.) *writ denied,* 679 So.2d 1387 (1996); *Savelle v. Heilbraunn,* 552 So.2d 52, 59 (La. App. 3 Cir. 1989).

## PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 36

If the Plaintiffs prove that it is more likely than not that Mrs. Orr was deprived of a chance of surviving due to the fault of Defendants, then it is your job as jurors to evaluate in money damages that lost chance.  Under our law; a "loss in any degree is compensable in damages," if proven to result from legal fault.

*Smith v. State of La., Dept. of Health and Hospital,* 676 So.2d 542 (La. 1996); *Levron v. State,* 673 So.2d 279, 288, *Levron v. State,* 673 So.2d 279, 288 (La. App.) *writ denied* 679 So.2d 1387 (1996).

## PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 37

Plaintiffs' claim for "loss of a chance" damages is legally distinct from their claim for damages due to Mrs. Orr's death, even though the same evidence is considered relevant in regard to both claims.[1]

In their claim for damages due to the loss of a chance of Mrs. Orr's survival, Plaintiffs must prove by a preponderance of the evidence that inadequate warnings and instructions for the use of Xarelto, and/or a defective design of Xarelto, caused or substantially contributed to the loss of a chance that Mrs. Orr might survive. If Plaintiffs prevail in proving this, you and you alone must determine in money damages the value of this loss of a chance for the Orr family, based on the evidence you have heard. In doing so, you are allowed to consider not only the evidence concerning Mrs. Orr's chances of survival, but also the evidence as to the loss of support, love and affection experienced by her surviving family members.[2]

---

[1] *Banks v. Children's Hosp.*, Case No. 2013-1481 (La. App. 4 Cir. 12/17/14); 156 So.3d 1263, 1274 (2014). *See also Matranga v. Parish Anesthesia of Jefferson, LLC,* Case No. 14-448 (La. App. 5 Cir. 5/14/15); 170 So.3d 1077 (2015).
[2] *Id.* (citing *Smith v. State, Dept. of Health & Hospitals, supra*, 676 So.2d at 549.