UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE ELDON E. FALLON |
| Joseph Orr, Jr., et al. v. Janssen et al. Case No. 2:15-cv-03708 | MAGISTRATE NORTH |

**DEFENDANTS' JOINT MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* NO. 11 TO PRECLUDE TESTIMONY AND ARGUMENT ABOUT THE PERSONAL USE OF ANTICOAGULANTS INCLUDING XARELTO BY DEFENDANTS' EXPERTS, EMPLOYEES AND/OR FAMILY MEMBERS OR, IN THE ALTERNATIVE, IF SUCH TESTIMONY IS ALLOWED, TO COMPEL THE PRODUCTION OF RELEVANT MEDICAL RECORDS AND/OR MEDICAL AUTHORIZATIONS**

Defendants submit this joint opposition to Plaintiffs' Motion *in Limine* No. 11 to preclude testimony about the personal use of anticoagulants, including Xarelto, by Defendants' experts, employees and/or family members, or, in the alternative, to require Defendants to produce those individuals' medical records. *See* Doc 6445. In essence, Plaintiffs seek an unfettered license to suggest, without fear of rebuttal, that Defendants—and by extension their employees—lacked sufficient concern for the well-being of patients who use Xarelto and that Defendants' experts engage in practices inconsistent with their stated opinions. There is no basis for the Court to grant Plaintiffs such a license, nor is there a basis to invade any non-party witness's privacy (or the privacy of a non-party family member), as Plaintiffs' alternative request would entail.

The Court sustained the *Boudreaux* plaintiffs' motion for essentially the same relief, "except with regards to witnesses and experts, in which case the court **RESERVES** ruling until trial, as the issue may go to credibility." Order and Reasons (Apr. 18, 2017), at 4 (Doc. 6254). Similarly in the *Vioxx* litigation, the Court ruled at trial on a case-by-case basis whether a witness's

1

use of Vioxx was admissible as to that witness's credibility. *See*, *e.g.*, Feb. 15, 2006 Trial Tr., *Plunkett v. Merck & Co., Inc.*, No. 05-cv-4046 (E.D. La.) (Exh. 1) at 2053–55 (admitting evidence of a witness's personal use of Vioxx because it was relevant to the witness's credibility); Dec. 5, 2005 Trial Tr., *Plunkett v. Merck & Co., Inc.*, No. 05-cv-4046 (E.D. La.) (Exh. 2) at 1182–86 (same); Sept. 21, 2006 Trial Tr., *Smith v. Merck & Co., Inc.*, No. 05-cv-4379-L (E.D. La.) (Exh. 3) at 2505–07 (same); *see also* Pls.' Mot. Exh. F ¶ 3(m) (deferring ruling); Pls.' Mot. Exh. G at ¶¶ 3(m), 7 (reserving ruling because "[t]o some extent it depends on context"). The Court's ruling was correct and should not be disturbed.

**I.     Evidence concerning a witness's or family member's Xarelto use may be relevant to the witnesses' credibility.**

The Court should follow its practice from *Boudreaux* and the *Vioxx* litigation, and defer ruling on the admissibility of any particular witness's personal use or family use until trial, when the Court can consider its proper context in light of the trial evidence and argument. *See also*, *e.g.*, *Reeves v. Wyeth*, No. 4:05-cv-00163, Order at 3 ¶ 6(h) [ECF No. 287] (E.D. Ark. July 26, 2006) (Exh. 4) (denying motion *in limine* to exclude evidence of personal use of hormone replacement therapy by any lawyer or witness as "more appropriately addressed at trial"). Evidence of a witness's personal use of Xarelto would be admissible to rebut Plaintiffs' anticipated claims that Defendants—and by extension their employees—knew or believed Xarelto was unsafe or hid risks or other important information from the public.

The *Boudreaux* plaintiffs argued that Defendants failed to inform doctors about a one-time, "simple safety test" that supposedly would identify patients at high risk of bleeds because Defendants prioritized their preconceived business plan over the welfare of patients using Xarelto:

> Well, what you're going to see is that Xarelto was designed around a business plan. The business plan came first. There was—there was work to be done to determine the requirements of Xarelto and how that drug could be used in the marketplace.

2

> And they needed three requirements, but the most important was the testing. And to concede that a test would be able to identify people at high risk would have been completely inconsistent with the marketing plan they came up with.

*Boudreaux* Tr. 4/24/14 at 86:17–24; *see also id.* at 82:9–18 ("defendants went about designing Xarelto around a business plan rather than . . . good science"); *id.* at 88:20–21 ("you're going to see that the drug was designed around a business plan, not by following scientific study"); *id.* at 99:10–12 ("But these companies did not provide this information or recommend this simple test, because of their business plan"); *id.* 5/3/17 at 1562:14–16 ("The market is their [Defendants'] number one priority, not patient safety. They put their marketing needs over patient safety.").[1]

Plaintiffs pursued that theme with Defendants' witnesses at the *Boudreaux* trial.[2] If the *Orr* plaintiffs pursue the same argument, Defendants should be permitted to rebut it and support the credibility of their witnesses' testimony that Defendants did not place profits over the health and safety of Xarelto users, including by offering testimony that those witnesses or their family members use or have used Xarelto. This Court correctly so concluded over Plaintiffs' objection when it admitted Dr. Peters' testimony about his wife's treatment with Xarelto (*see* Pls.' Mot. at 2–3), because Plaintiffs had put his credibility and that of Janssen at issue:[3]

> The plaintiffs take the position that the company did something—did not do something that they should have done, and there's also a suggestion that they did it for commercial reasons. This witness has been involved with Xarelto, the development and design of Xarelto. So his credibility is significant to the whole case, it seems to me. The plaintiffs have attempted to take him on cross and to show that his credibility is a problem. That's obvious. Certainly, they take the position that the company's credibility is at issue.

---

[1] Cited pages from the *Boudreaux* transcript are attached as Exhibit 5.

[2] *See, e.g., id.* 4/27/17 at 843:13–844:15 (Dr. Theodore Spiro); *id.* at 877:4–25 (Nauman Shah); *id.* at 928:2–17 (Patricia Torr); *id.* 4/28/17 at 1071:15–19 (Dr. Gary Peters).

[3] Nauman Shah testified that his mother had used Xarelto. *See Boudreaux* Tr. 4/27/17 at 889:21–890:10. Dr. Spiro testified about his own Xarelto use. *See id.* at 865:1–8.

3

> So I weigh the advantages, disadvantages, and it seems to me that 403 analysis tips in favor of allowing it.

*Boudreaux* Tr. 4/28/17 at 1120:25–1121:11.[4]

## II. Plaintiffs are not entitled to discovery regarding medical records of witnesses or their family members.

Nor should the Court grant Plaintiffs' request that Defendants be compelled to produce the medical records of any witness or family member who used Xarelto. *See* Pls.' Mot. at 10–11. Such an invasion of the personal privacy of these non-parties would be manifestly inappropriate—the medical condition of Defendants' experts, their employees, or their employees' family members is not at issue here.

Contrary to Plaintiffs' argument (*see* Pls.' Mot. at 9–10), Defendants have no intention of offering evidence of personal use of Xarelto for the purpose of making any argument about "fact-specific liability issues being tried in Orr." The testimony of Dr. Peters, Mr. Shah, and Dr. Spiro in *Boudreaux* was admitted as relevant to their credibility—not any fact-specific liability issues. And that is the context in which Defendants referred to that testimony in argument to the *Boudreaux* jury. *See* Pls.' Mot. at 3. Permitting testimony about personal use where a witness's credibility has been challenged does not justify the wholesale invasion of that non-party witness's privacy (or the privacy of a family member) that Plaintiffs' alternative request would entail.

In any event, as in *Boudreaux*, consideration of personal-use evidence, if any, as it relates to a witness's in the *Orr* trial will not require a comparison of the witness's and Mrs. Orr's use of Xarelto and will not cause jury confusion regarding fact-specific liability issues. To establish their

---

[4] *See also* Nov. 1, 2006 Hearing Tr., *Appell v. Merck & Co., Inc.*, No. BC328858 (Cal. Super. Los Angeles Cty.) (Exh. 6) at 177–81 (denying motion to exclude evidence of personal use in state court Vioxx litigation because "I think it is relevant to the claims that are being made by plaintiffs about the corporate culture in the sales group or that Merck knew of a risk, the employees at Merck knew of the risk and hid it from the rest of us, the folks out in the—the nonworking folks, the rest of the folks in the world here.").

claims, Plaintiffs must prove that Xarelto was unreasonably dangerous—either because Defendants failed to provide adequate instructions for its use or because Xarelto was defectively designed—and that the characteristic that made Xarelto unreasonably dangerous proximately caused Mrs. Orr's injuries.  *See* La. Rev. Stat. § 9:2800.54(A).

Plaintiffs contend that Xarelto is unreasonably dangerous because Defendants failed to instruct doctors about a one-time, "simple safety test" that Plaintiffs allege would identify patients at high risk for bleeding with Xarelto use.  Plaintiffs also contend that Xarelto is unreasonably dangerous because it is marketed without two adjunct products—a reversal agent and an anti-Factor Xa assay—even though the FDA has not approved either of those products for use in the United States.  Even assuming, contrary to the evidence, that there were any merit to Plaintiffs' theories, the safety concerns underlying those theories would apply to all Xarelto users regardless of any differences in dosing, medical condition, or other characteristics of the user.  This is not a case where Plaintiffs contend that the medicine is unreasonably dangerous only for a certain class of users or only under particular circumstances.  In light of Plaintiffs' contentions, there would be no need for jurors to compare any patient's Xarelto use with Mrs. Orr's in order to determine whether Xarelto is unreasonably dangerous.

Proof of proximate causation also would not require jurors to compare any patient's Xarelto use with Mrs. Orr's.  Unlike the decisions on which Plaintiffs rely from the New Jersey state-court consolidated proceedings in the *Vioxx* litigation (*see* Pls.' Mot. Exhs. G–K), and the *YAZ* decision (*see* Pls.' Mot. at 11), this case does not involve an allegation that Defendants failed to disclose an alleged health risk.  It is undisputed, as Xarelto's label discloses, that patients using Xarelto are at

5

risk for bleeding. Thus, there is no basis for Plaintiffs to take discovery from the medical providers of witnesses and family members who used Xarelto.[5]

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion *in Limine* No. 11.

---

[5] None of the other cases on which Plaintiffs rely (*see* Pls.' Mot. at 9), address the admissibility of evidence that goes to credibility where, as here, Plaintiffs argue that Defendants prioritized profits over patient health and safety. *See Pfeiffer v. Central Intelligence Agency*, 60 F.3d 861, 865 (D.C. Cir. 1995) (in case involving claim that the CIA violated a former employee's First Amendment rights when it demanded the employee return a document he authored while in the CIA's employ and declining permission for the employee to publish it, plaintiff not permitted to introduce evidence about how other agencies treated employees who removed documents from the agency after their employ); *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1221 (5th Cir. 1995) (in case involving age discrimination in employment claim, plaintiffs not permitted to put on anecdotal evidence of other employees who claimed age discrimination), *overruled on other grounds*, *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003); *BASF Corp. v. The Old World Trading Co.*, No. 86 C 5602, 1992 WL 232078, at *4 (N.D. Ill. Sept. 8, 1992) (in case involving alleged Lanham Act violation, plaintiff not permitted to introduce anecdotal evidence that some customers reported dissatisfaction with defendant's product).

Respectfully submitted,

IRWIN FRITCHIE URQUHART & MOORE LLC

By: /s/ *James B. Irwin*
James B. Irwin
Kim E. Moore
Irwin Fritchie Urquhart & Moore LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
jirwin@irwinllc.com


DRINKER BIDDLE & REATH LLP

By: /s/ *Susan M. Sharko*
Susan M. Sharko
Drinker Biddle & Reath LLP
600 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
susan.sharko@dbr.com

Rodney M. Hudson
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
Telephone: (415) 591-7500
Rodney.hudson@dbr.com

Chanda A. Miller
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2700
Chanda.Miller@dbr.com


*Attorneys for Defendants Janssen Pharmaceuticals, Inc. and Janssen Research & Development, LLC*

WILKINSON WALSH + ESKOVITZ LLP

By: /s/ *Beth A. Wilkinson*
Beth A. Wilkinson
Jennifer L. Saulino
Jeremy Barber
WILKINSON WALSH + ESKOVITZ LLP
1900 M. Street NW, Suite 800
Washington, DC 20036
Telephone: (202) 847-4000
bwilkinson@wilkinsonwalsh.com
jsaulino@wilkinsonwalsh.com
jbarber@wilkinsonwalsh.com


NELSON MULLINS RILEY & SCARBOROUGH LLP

By: */s/ David E. Dukes*
David E. Dukes
J. Mark Jones
NELSON MULLINS RILEY & SCARBOROUGH LLP
1320 Main Street, 17th Floor
Columbia, SC 29201
Telephone: (803) 799-2000
David.Dukes@nelsonmullins.com
Mark.Jones@nelsonmullins.com


ARNOLD & PORTER KAYE SCHOLER LLP

By: /s/ *Andrew K. Solow*
Andrew K. Solow
Steven Glickstein
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8485
andrew.solow@apks.com
steven.glickstein@apks.com

William Hoffman
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000

7

william.hoffman@apks.com

BRADLEY ARANT BOULT CUMMINGS LLP

By: */s/ Kevin C. Newsom*
Kevin C. Newsom
Lindsey C Boney IV
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place, 1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8803
knewsom@bradley.com
lboney@bradley.com

CHAFFE MCCALL L.L.P.
By: /s/ *John F. Olinde*
John F. Olinde
CHAFFE MCCALL L.L.P.
1100 Poydras Street, Suite 2300
New Orleans, LA 70163
Telephone: (504) 585-7241
olinde@chaffe.com

*Attorneys for Bayer HealthCare Pharmaceuticals Inc. and Bayer Pharma AG*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 17th day of May, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs by operation of the court's electronic filing system.

<em>/s/      John F. Olinde</em>