# Exhibit 6

```
                SUPERIOR COURT OF THE STATE OF CALIFORNIA

                    FOR THE COUNTY OF LOS ANGELES

         DEPARTMENT 1           HON. VICTORIA G. CHANEY, JUDGE

                                  - - -



    COORDINATED PROCEEDING SPECIAL       )
    TITLE [RULE 1550(B)]                 )
    IN RE VIOXX CASES                    )     JCCP NO. 4247
    _____)
    APPELL VS. MERCK & CO., INC.,        )     CASE NO. BC328858
    ARRIGALE VS. MERCK & CO., INC.       )     CASE NO. 05CC03136
    _____)


                    REPORTER'S TRANSCRIPT OF PROCEEDINGS
                    _____ _____ __ _____

                      WENDESDAY, NOVEMBER 1, 2006


      APPEARANCES OF COUNSEL:
      _____ __ _____

      FOR PLAINTIFFS:    PANISH, SHEA & BOYLE, LLP
                         BY:  BRIAN PANISH, ESQUIRE

                         THE BRANDI LAW FIRM
                         BY:  THOMAS J. BRANDI, ESQUIRE
                              BRIAN MULLOY, ESQUIRE

                         GIRARDI & KEESE
                         BY:  JAMES G. O'CALLAHAN, ESQUIRE

      FOR DEFENDANTS:    SEDGWICK, DETERT, MORAN & ARNOLD
                         BY:  RALPH CAMPILLO, ESQUIRE

                         O'MELVENY & MYERS, LLP
                         BY:  RICHARD GOETZ, ESQUIRE
                              ROBERT C. WELSH, ESQUIRE
                              AMY LAURENDEAU, ATTY AT LAW
                              STEPHANIE A. SPERBER, ATTY AT LAW

                         WILLIAMS & CONNOLLY, LLP
                         BY:  STEPHEN D. RABER, ESQUIRE
                              EVA PETKO ESBER, ATTORNEY AT LAW

      FOR COURT TV       SHEPPARD, MULLIN, RICHTER & HAMPTON
      PROFESSIONALS:     BY:  GARY L. BOSTWICK, ESQUIRE


                         TIMOTHY J. McCOY, CSR NO. 4745
                              OFFICIAL REPORTER
```

Page 177

```
 1  CASE NUMBER:           JCCP 4247
 2  CASE NAME:             IN RE: THE VIOXX CASES
 3  LOS ANGELES, CA        WEDNESDAY, NOVEMBER 1, 2006
 4  DEPARTMENT 1           HON VICTORIA G CHANEY, JUDGE
 5  TIME:                  9:40 A M
 6  REPORTER:              TIMOTHY J McCOY, CSR NO 4745
 7  APPEARANCES:           (AS HERETOFORE NOTED)
 8                              * * *
 9
10        THE COURT: All right  In the Vioxx cases,
11  JCCP No 4247
12        The record should reflect that for plaintiff
13  Appell is Brian Panish; for plaintiff Rudolph Arrigale
14  is Thomas Brandi, James O'Callahan and Brian Mulloy
15        For Merck are: Richard Goetz, Eva Esber,
16  Stephen Raber, Ralph Campillo, and we also have present
17  in court Gary Bostwick, who is going to be arguing on
18  behalf of Court TV when Mr Welsh gets here for that
19        MR GOETZ: Your Honor, we also have Amy Laurendeau
20  and Stephanie Sperber here to argue other motions, depending
21  upon the Court's calendar
22        THE COURT: Okay  So you folks should have gotten
23  tentative rulings
24        All right  Looking at the tentative rulings,
25  Mr Goetz, because you have some time issues, what is
26  it that you would like to start with here?
27        MR GOETZ: Your Honor, if we could start with
28  Plaintiffs' Motion No 2, which is on the Merck employees,
```

Page 178

```
 1  use of Vioxx of the high-level executives at the company.
 2        THE COURT: I think there are two plaintiff sets.
 3  One is Arrigale, I think, and the other one is --
 4        MR. GOETZ: It's Arrigale.
 5        THE COURT: All right. So the motion of plaintiff
 6  Arrigale, Motion No. 2, motion to exclude evidence that
 7  Merck employees or family members of employees took Vioxx.
 8        And the tentative was to deny this for the
 9  same reasons as was done in Grossberg, which I think it
10  goes to employee knowledge of alleged -- I don't know if
11  conspiracy is the right word, and it probably isn't, it's
12  too strong, but employee knowledge, which is relevant to
13  plaintiffs' claims that Merck knew of the risk and tried
14  to hide it or that there was a corporate culture at the
15  salesperson level of misrepresenting the risk.
16        MR. BRANDI: Your Honor, I just had a brief point.
17        Our point is is that Merck's employees are
18  testifying, Scolnick, that he used Vioxx intermittently;
19  Gilmartin, that his wife used it; Reicin, that she used it,
20  and they had no problems. It's the "they had no problems"
21  part that concerns me, and for this reason --
22        THE COURT: I agree with you. I think it's
23  important that they know that they took it, but the fact
24  that they had no problems is the part that I would like
25  to avoid because I really don't want then the flip side of
26  that with Ms. Debato coming in and saying: I took it and
27  I had problems. I mean, what's good for one is good for
28  the other.
```

Page 179

```
 1  Mr. Goetz.
 2        MR. GOETZ: That's fine, your Honor. What we just
 3  wanted to have them testify to is that they took the drug.
 4  Or their family members took the drug.
 5        MR. BRANDI: Well, Scolnick is intermittently, and
 6  that's not the case with either plaintiff here. So there's
 7  not a comparable using.
 8        We also don't know the dosages, we don't know
 9  what risk factors they had. Ms. Reicin, who we saw here
10  in trial, is a young woman, clearly not with the same risk
11  factors as an older male, and to put it in perspective of
12  someone using it who has no risk factors versus someone
13  using it who has significant risk factors, like, for example
14  Mr. Arrigale, I think it's misleading, your Honor, and under
15  352, as well as the matters that we offered, we would ask
16  it be excluded.
17        And the other point simply is I think it's
18  misleading that they get to stand up and say we took it,
19  when in fact Ms. Debato took it and had a heart attack and
20  the implication being that they took it and nothing happened
21  to them.
22        So, I understand the Court's ruling, I submit
23  on it.
24        THE COURT: Mr. Brandi, I still respectfully disagree
25  with you. I think it is relevant to the claims that are
26  being made by plaintiffs about the corporate culture in the
27  sales group or that Merck knew of a risk, the employees at
28  Merck knew of the risk and hid it from the rest of us, the
```

Page 180

```
 1  folks out in the -- the nonworking folks, the rest of the
 2  folks in the world here.
 3        However, I don't think it's appropriate that
 4  either side starts going into the fact of "I took it without
 5  any problems."
 6        However, Mr. Brandi, I'm telling you that
 7  if one of the sides starts asking about did you have any
 8  problems, the other side is going to be able to get that
 9  in, too.
10        MR. BRANDI: Okay.
11        THE COURT: But I don't really don't want to go
12  there.
13        MR. BRANDI: Thank you, your Honor.
14        THE COURT: And I have weighed it under 352, and I
15  do understand there may be some prejudices, I don't think
16  the prejudicial value aspect of the cases substantially
17  outweighs the probative value.
18        MR. GOETZ: Your Honor, just for the record, the
19  Appell plaintiffs obviously joined in that motion, so the
20  record is clear.
21        THE COURT: Okay. Thank you.
22        MR. PANISH: Your Honor, all of the motions were made
23  on behalf of both plaintiffs.
24        THE COURT: All right.
25        MR. PANISH: Just so our record is clear, we're
26  making the same arguments. There would be no waiver by
27  Appell.
28        THE COURT: All right. So Mr. Brandi, you're
```

Page 181

1  joining in on behalf of Arrigale on the Appell motions, and
2  Mr. Panish, on behalf of plaintiff Appell, you're joining
3  in the Arrigale motions.
4       Is that right, Mr. Brandi?
5       MR. BRANDI: Yes, your Honor.
6       THE COURT: Just for clarity.
7       And Mr. Panish, you understand that.
8       MR. PANISH: Yes. And we are not going to reargue
9  the same points, but we would make the same arguments
10 and there would be no claim of waiver for us.
11      THE COURT: And Mr. Goetz, you understand that;
12 right?
13      MR. GOETZ: I understand that, except that Mr. Appell
14 didn't present facts in support of certain of the motions
15 where Mr. Arrigale did, and if they didn't present any
16 facts, we're certainly not waiving our argument to point
17 that out.
18      THE COURT: All right, Mr. Goetz, you've made that
19 clear. They didn't raise facts. Mr. Appell didn't raise
20 facts in the Arrigale motions and vice versa.
21      Okay. Now, what motion would you like to cover
22 next, Mr. Goetz? And as to No. 2, motion of plaintiffs to
23 exclude evidence that Merck employees or family members of
24 employees took Vioxx, that motion is denied.
25      Next?
26      MR. GOETZ: The next motion I had, your Honor, was
27 Plaintiffs' Motion No. 5, which you also had denied.
28      THE COURT: Are we talking about to preclude argument

Page 182

1  and evidence that only FDA can strengthen a prescription
2  drug warning and that Merck had no input in the warnings
3  approved by the FDA?
4       MR. GOETZ: Yes, your Honor.
5       THE COURT: All right. And who is going to argue
6  this?
7       MR. BRANDI: That's Mr. Mulloy.
8       THE COURT: That's you, Mr. Mulloy.
9       MR. MULLOY: Thank you, your Honor.
10      THE COURT: The tentative is to deny it.
11      MR. MULLOY: Your Honor, I just wanted some
12 clarification. We'll submit to the first part about the
13 FDA regulations, but there was a second part to this motion,
14 and that was to preclude Merck from arguing that it had no
15 say in the warning label, and I think Merck even in their
16 opposition stated that they would not be arguing that they
17 had no say in the warning label, that they didn't intend to
18 say that.
19      THE COURT: All right. Hold that thought,
20 Mr. Mulloy.
21      Is that still the case, Mr. Goetz?
22      MR. GOETZ: Your Honor, it depends upon what it is
23 that their motion was directed at. It's not clear. They
24 make much in their motion about the Scolnick e-mail and
25 other communications with the FDA --
26      THE COURT: The one that they are grade D, that
27 e-mail?
28      MR. GOETZ: I'm sure that that will be one that we'll

Page 183

1  see in this trial.
2       We're not arguing those don't exist, we're not
3  arguing we don't have contact with the FDA. The question
4  of who controls the FDA's decision is something that we
5  might take issue with if they try to argue that their motion
6  encompasses that.
7       So, I wasn't clear what their motion was
8  directed at. If the motion is directed at that we never
9  talked to the FDA, we have no input, then clearly that's
10 not what we're going to say here.
11      THE COURT: All right. Mr. Goetz, to break down I
12 think what you just said from Mr. Mulloy's standpoint, we
13 all know that -- at least I learned from the last trial that
14 Merck has a continuing dialogue with the FDA of some sort,
15 I mean, that was pretty clear, there's documents going back
16 and forth between the FDA and Merck, and that Merck can,
17 at the very least, comment or make suggestions about the
18 proposed labeling that the FDA is requesting or ordering.
19      You would you agree with that so far.
20      MR. GOETZ: I would agree that we have a continuing
21 dialogue, and that dialogue also touches on the labels, yes.
22      THE COURT: Okay. But the minimum warnings on the
23 labeling is up to the FDA. Is that what you're trying to
24 say?
25      MR. GOETZ: The final label is up to the FDA, that's
26 correct.
27      THE COURT: The minimum warnings on the final label
28 is up to the FDA. Is that right?

Page 184

1       MR. GOETZ: What I want to avoid is the implication
2  that we can add something to that label because it's just
3  a minimum, and that's simply not the case. The FDA
4  ultimately decides this is the label, and we don't debate
5  that the CBE procedure doesn't exist, for example, but we
6  can't add words to the label -- or relevant to the disputes
7  in this litigation.
8       THE COURT: Mr. Goetz, I'm not sure that that is
9  really the law, as I understood it, presented during the
10 last trial.
11      What I'm talking about, Mr. Goetz, is,
12 there is a basic label that is approved by the FDA, and
13 it's my understanding that there are minimum requirements
14 in that label, but that if Merck felt that those warnings
15 were not sufficient, that you could -- you being Merck, not
16 you individually, Mr. Goetz -- you could potentially add
17 at least temporary warnings on the labels, and I got that
18 impression through testimony in the last trial, Mr. Goetz.
19      Now, if I am wrong, disabuse me of that
20 understanding.
21      MR. GOETZ: Well, there's two questions that you
22 posed, your Honor. One goes to what is their motion, and
23 their motion is that Merck had no input in the FDA-approved
24 warning label. And we're not saying we had no input in
25 the FDA label. So we're talking about the motion that the
26 plaintiffs chose to bring before your Honor.
27      THE COURT: Okay.
28      MR. GOETZ: That's not an issue. If the question