UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE ELDON E. FALLON |
| Joseph Orr, Jr., et al. v. Janssen et al. Case No. 2:15-cv-03708 | MAGISTRATE NORTH |

**DEFENDANTS' JOINT OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* NO. 33 "REGARDING THE FDA'S ALLEGED REJECTION OF DEFENDANTS' ATTEMPTS TO MODIFY THE XARELTO LABEL"**

Defendants hereby oppose Plaintiffs' Motion *in Limine* No. 33 "Regarding The FDA's Alleged Rejection of Defendants' Attempts to Modify the Xarelto Label." *See* Doc. 6472. The Court already ruled repeatedly in the *Boudreaux* trial that the evidence at issue is relevant and admissible, and Plaintiffs have not identified any new or different circumstances that would warrant a different result here.

In their motion, Plaintiffs repeat the same arguments that they made in *Boudreaux* and have "moved for an order prohibiting all witnesses and counsel from commenting on, referring to, attempting to introduce testimony or evidence about, or introducing testimony or evidence about, the FDA's alleged rejection of Defendants' attempts to modify the Xarelto label to include information relating to the utility of a PT test, including evidence of redlined or tracked changes to the Xarelto label and related emails." Doc. 6472-1, at 1. Plaintiffs' motion appears to be directed primarily at a document admitted during the *Boudreaux* trial as Defendants' Exhibit No. DX5548, which is a redline document arising out of pre-approval correspondence between Janssen and FDA regarding Xarelto®'s label. The document reflects that Janssen proposed language that would have advised physicians of a "relationship between PT and rivaroxaban plasma

1

concentration" and that, when "considered necessary," Neoplastin PT could be used to "assess[] the pharmacodynamic effect of rivaroxaban," but that FDA later struck that language from the proposed labeling. DX5548, at 29.

The admissibility of this document was argued exhaustively during the *Boudreaux* trial. The Court ultimately concluded that the document is clearly relevant, not unfairly prejudicial, and thus admissible, and the document's admission into evidence did not result in any "mini-trial," as Plaintiffs now assert. Because the FDA strikethrough document, and any other evidence of Defendants' interactions with FDA about the Xarelto label, is relevant and not unfairly prejudicial, Plaintiffs' Motion *in Limine* No. 33 should be denied.

## ARGUMENT

I.   **Evidence of Defendants' interactions with FDA about the Xarelto label is unquestionably relevant and is not unfairly prejudicial.**

   A.   **The evidence is unquestionably relevant under Rule 401.**

Plaintiffs' motion rests on a false premise—namely, that if (as the Court has now repeatedly held) preemption is a question of law, rather than fact, the FDA strikethrough document has no conceivable relevance to the case. As Plaintiffs say: "If Defendants and this Court continue to take the position that impossibility preemption is a matter of law which is not to be decided by the jury, it will not matter what the FDA would or would not have done in relation to any proposed changes to the labels. In that instance, the redlines would not bear on any matter of consequence to the litigation, and thus should be precluded as irrelevant." Doc. 6472-1, at 3.

As Plaintiffs grudgingly admit, however, this Court has already rejected that assertion, holding that the FDA redlines bear on Defendants' "motive and intent." *Id.* That is precisely correct. Defendants' course of conduct in formulating the Xarelto label is a central element of this case because in order to prevail on their failure-to-warn claim, Plaintiffs must prove, among other

2

things, that Defendants "failed to use reasonable care to provide an adequate warning" to Mrs. Orr's prescribing physician. *See* La. Rev. Stat. Ann. § 9:2800.57(A). Defendants' interactions with FDA are indisputably relevant to that course of conduct, as well as the reasonableness of that conduct. In fact, although Plaintiffs repeatedly challenged the admissibility of the FDA strikethrough document during the *Boudreaux* trial, they ultimately *conceded* that the document is relevant to the issue of "what the manufacturer knew, didn't know, should have done, [or] did." *Boudreaux* Tr. at 1538:23–25; *see also id.* at 1539:18 (Plaintiffs, in objecting to the Court's final jury instructions, argued that their requested jury instruction regarding the FDA strikethrough document "doesn't deny the relevance of the document").[1] As this Court stated during the *Boudreaux* trial, "I think everybody agrees" that the FDA strikethrough document "passes the [Rule] 401" test. *Id.* at 1539:24–1540:1; *see also id.* at 1533:24–1534:3 (denying Plaintiffs' motion to strike the FDA strikethrough document from evidence and explaining that aside from the issue of whether or not FDA would have approved a different label, "there's another issue of what the intent of the defendant was, whether they had intent to try to do something"); *id.* at 1530:19–25 (recognizing that the FDA strikethrough document "may have something to do with intent of the parties" or "motive of the parties"). Thus, as this Court has recognized—and as Plaintiffs have conceded—Defendants' interactions with FDA are relevant to the reasonableness of Defendants' conduct.

Separately, FDA's approval, and its deletion of the proposed PT language, is relevant to the adequacy of the warning, even if it may not be conclusive. This Court recognized as much when instructing the jury in *Boudreaux*. *See Boudreaux* Jury Instructions (Doc. 6393), at 23 (explaining that "any action or inaction on the part of the FDA" is "relevant"); *see also, e.g.*,

---

[1] Cited pages from the *Boudreaux* trial transcript are attached as Exhibit 1.

*Newman ex rel. Newman v. McNeil Consumer Healthcare*, No. 10 C 1541, 2013 WL 4460011, at *7 (N.D. Ill. Mar. 29, 2013) (explaining that "FDA review and approval . . . may be relevant to the reasonableness of the warnings on Defendants' [drug] labels"). Moreover, jurors are entitled to hear evidence that would allow them to assess how much deference to give FDA's decisions and ultimate approval of a particular medicine. *See, e.g.*, *Winter v. Novartis Pharm. Corp.*, No. 06-4049-CV-C-MJW, 2012 WL 827305, at *4 (W.D. Mo. Mar. 8, 2012) (observing that "the adequacy of warning and labeling . . . must be viewed, in part, in the context of the FDA's role in the approval and marketing of pharmaceuticals" (internal quotation marks and citation omitted)); *Zeneca Inc. v. Eli Lilly & Co.*, No. 99-CV-1452, 1999 WL 509471, at *3 (S.D.N.Y. July 19 1999) (concluding that FDA documents regarding "what the FDA said to Eli Lilly about Evista . . . and the meaning of the language in the Evista label" was "relevant to Eli Lilly's contention concerning the FDA's interpretation of [the clinical trial data] and the meaning of the language on Evista's label"). Janssen proposed to include in Xarelto's label PT language that is substantially similar to the PT language that Plaintiffs demand here. FDA's response striking that proposal not only supports the conclusion that Xarelto's label is adequate, but also provides the jury with evidence to consider and assess how much weight to give FDA's approval of the Xarelto labeling.

The document also is relevant to show Defendants' compliance with federal law and regulations. Courts overseeing pharmaceutical cases routinely permit the introduction of evidence and argument related to FDA approval in order to assist the jury in determining whether the defendant acted reasonably and whether the prescription medicine is safe. *See, e.g.*, *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 191 (S.D.N.Y. 2009) (admitting testimony on FDA regulations to help jurors assess reasonableness of manufacturer's conduct); *Smith v. Wyeth-Ayerst Labs. Co.*, 278 F. Supp. 2d 684, 702 (W.D.N.C. 2003) (allowing testimony regarding regulatory

4

standards); *see also Corrigan v. Methodist Hosp.*, 874 F. Supp. 657, 658 (E.D. Pa. 1995) (evidence regarding FDA regulatory status of pedicle screw admissible).

Those decisions merely reflect the underlying rule that "a product's compliance with an applicable product safety statute or administrative regulation is properly considered in determining whether the product is defective . . . ." RESTATEMENT (THIRD) OF TORTS: PROD. LIAB. § 4(b) (1998); *see also Dunne v. Wal-Mart Stores, Inc.*, 679 So. 2d 1034, 1037 (La. Ct. App. 1996) (holding that the American Society for Testing and Materials' standards were "relevant factors") (citing *Dill v. State Dep't of Transp. and Dev.*, 545 So. 2d 994, 996 (La. 1989)); *Crotwell v. Wal-Mart Louisiana, LLC*, No. CIV.A. 06-909-C, 2009 WL 1146612, at *7 (M.D. La. Apr. 27, 2009) (compliance with safety regulation was "relevant for consideration"). Courts also generally consider evidence of compliance with federal standards admissible evidence of the reasonableness of a defendant's conduct. *See* RESTATEMENT (THIRD) OF TORTS: PROD. LIAB. § 4, reporter's notes to comment 3 ("The overwhelming majority of jurisdictions hold that compliance with product safety regulation is relevant and admissible on the question of defectiveness, but is not necessarily controlling."); *see also Rader v. Teva Parental Medicines, Inc.*, 795 F. Supp. 2d 1143, 1150 (D. Nev. 2011) ("[S]ince the claims . . . involve . . . the reasonableness of their actions . . . evidence of compliance with FDA regulations is admissible."); *Mahaney ex rel. Estate of Kyle v. Novartis Pharm. Corp.*, 835 F. Supp. 2d 299, 320-21 (W.D. Ky. 2011) (compliance with FDA requirements is "both relevant and probative" of the pharmaceutical manufacturer's defenses, and noting that "other courts have used compliance with the FDA as proof of due care by a pharmaceutical company"); *cf. In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d at 191 n.16 ("Expert testimony on regulatory compliance will assist the jury in determining whether Merck acted as a reasonably prudent pharmaceutical manufacturer.").

**B.     The evidence is not unduly prejudicial under Rule 403.**

Plaintiffs' contention that allowing evidence of Defendants' interactions with FDA would result in a "mini-trial"—or otherwise result in undue prejudice under Rule 403—is overstated, and is belied by their conduct during the *Boudreaux* trial.

As an initial matter, Plaintiffs' suggestion that Defendants somehow engaged in improper behavior during the *Boudreaux* closing arguments by "side-stepp[ing] the Court's guidance" on the FDA strikethrough document (Doc. 6472-1, at 3), is incorrect.  Defendants did not, as Plaintiffs suggest, direct the jury to determine "what the FDA would have done." *Id.*   Instead, Defendants (appropriately) focused on the unquestionably relevant issue of what Defendants were thinking.  Counsel explained,

> So how can you understand what our mindset was at the time?  This was 2011.  This was what we proposed in the label.  We said, "The relationship between PT and rivaroxaban plasma concentration is linear and closely correlated."  That's what they say we're hiding.

*Boudreaux* Tr. at 1608:15–19.  Counsel also explained, "So the FDA had crossed out this language.  Why does that matter?  Well, if we get that back, isn't that a way of us thinking the FDA doesn't think that this is necessary?" *Id.* at 1610:1–3.  Counsel further explained that

> [Plaintiffs] are right, the label is our responsibility.  We take that seriously.  But we certainly listen to other scientists and listen to the FDA.  When they send this back and say, you know, we don't think this belongs in the label, that's a pretty good indicator that other folks don't think it's supported.

*Id.* at 1610:4–9.  Thus, contrary to Plaintiffs' suggestion, Defendants did not improperly focus on FDA's approval, or suggest that FDA's approval was conclusive.

Plaintiffs also point to three arguments they contend that they would make if the FDA strikethrough document is admitted, and assert that those arguments would result in a "mini-trial." Doc. 6472-1, at 4.  But again, the record in *Boudreaux* demonstrates otherwise.

6

1. Plaintiffs first assert that they may introduce "evidence addressing the uncertainty surrounding the actual source of the redlines." *Id.* But Plaintiffs' current "uncertainty" is feigned. Plaintiffs' suggestion that they might now attempt to question the source of the redline document is contrary to the position they've taken throughout this litigation. For example, although Plaintiffs did dispute the significance of the FDA's strikethrough in the run-up to trial, they never challenged the fact that it was FDA that actually made the redlines. Indeed, Plaintiffs made numerous binding judicial admissions that FDA was the source of the redline document. *See* Defs' Mot. To Strike Testimony Of Dr. David A. Kessler Or, In the Alternative, To Give A Curative Instruction Based On Plaintiffs' Judicial Admissions (Doc. 6318) (collecting Plaintiffs' prior admissions that it was FDA that struck the PT language); *see also Boudreaux* Tr. at 1529:18–23 (Plaintiffs, in arguing a Rule 50 motion, referred to the "fact of an FDA strikethrough"). What's more, in the *Boudreaux* trial, although Plaintiffs initially sought to cast doubt (during Dr. Kessler's testimony) about the source of the strikethrough document, Plaintiffs' own witness, Dr. Gary Peters ended up testifying—without objection or contradiction—that that the redline was sent to Janssen by FDA. *Boudreaux* Tr. at 1101:16–1104:7. As such, it is unclear what "evidence addressing the uncertainty surrounding the actual source of the redlines" Plaintiffs would attempt to present, or how this would result in a "mini-trial."[2]

2. Plaintiffs next assert that they would present evidence that the "redlines were made solely in the context of submitting Xarelto's orthopedic indication . . . and not in the context of submitting Xarelto's atrial fibrillation ('a-fib') indication." Doc. 6472-1, at 4. But that fact was brought out in the *Boudreaux* case through Dr. Peters, and no "mini-trial" resulted. *See Boudreaux*

---

[2] Of course, there would have been no need for additional evidence had Dr. Kessler not changed his sworn deposition testimony about the document. *See* Doc. 6318, at 3–4 (quoting Dr. Kessler's repeated deposition testimony that "FDA struck this" language, that "FDA did do it").

7

Tr. at 1102:9–11 (testifying that the subject line of the email containing the strikethrough document noted that it was for the "orthopedic surgery" "U.S. package insert"); *id.* at 1107:7–15 (explaining that there were two new drug applications—one for orthopedic surgery and one for atrial fibrillation); *see also id.* 1623:11–1624:3 (Plaintiffs, in their rebuttal closing argument, pointed out that Janssen proposed the PT language "in June," even though "August is when they have analyzed the ROCKET data, and they know, and the FDA knows that there is a correlation").

    **3.**    Plaintiffs finally contend that they "also could present evidence showing the FDA later determined that there was, indeed, a connection between PT levels and coagulable states." Doc. 6472-1, at 4. But again, that assertion was brought out in *Boudreaux* through the testimony of Dr. Peters and Dr. David Kessler, and again, no "mini-trial" resulted. *See Boudreaux* Tr. at 1124:19–1125:15 (Plaintiffs' counsel, referring to FDA strikethrough document, asked Dr. Peters, "So this is two months before the FDA found a relationship between PT and bleed risk; correct?"); *id.* at 473:21–474:9 (Dr. Kessler testified that FDA did not "figure out" a correlation between PT and bleeding until a month after approving the label); *id.* at 445:12–13 (Dr. Kessler testified, "[I]t's not until later that FDA figures it out"); *id.* at 428:12–16 (Dr. Kessler testified, "It wasn't until late 2011 that FDA figured out the correlation between PT and bleeding risk").

**II.**    **Preemption is a question of law, not a question of fact, and in any event, no special "procedures" or "safeguards" are needed with respect to the FDA strikethrough document.**

The Court's determination that preemption is a question of law does not affect the admissibility of FDA's actions or inactions, or its correspondence with Janssen, which are all clearly relevant both to the reasonableness of Defendants' conduct and to the adequacy of the label. As this Court repeatedly concluded in *Boudreaux*—first in ruling on motions *in limine* and then again in connection with the jury charges—preemption is a question of law. *See* Order and Reasons (Apr. 18, 2017), at 5 (Doc. 6254) (holding that preemption is "a question of law that is

8

not appropriate for consideration by the finder of fact"); *Boudreaux* Tr. at 1147:14–15 (stating that preemption is "a question of law, not for the jury" when asked by Defendants' counsel whether the Court intended to charge the jury on preemption). Plaintiffs nonetheless argue that "[i]t is conceivable that this Court may reconsider its position in the next trial," and assert that "[i]f that were to occur, procedures and safeguards would need to be put into place." Doc. 6472-1, at 4–5.

It is unclear what "procedures and safeguards" Plaintiffs would have the Court implement.[3] Plaintiffs appear to be asserting that if this Court intends to shift course and now treat preemption as a question of fact for the jury, then both parties will need an opportunity to present evidence on that issue to the jury. But Plaintiffs have not even affirmatively argued that preemption should be treated as a question of fact. Nor, significantly, have Plaintiffs asked the Court at this time to reconsider its *in limine* ruling in *Boudreaux*—**which the parties have stipulated applies equally to this case**—that preemption is "a question of law that is not appropriate for consideration by the finder of fact." Order and Reasons (Apr. 18, 2017), at 5 (Doc. 6254); Joint Stipulation on Motions *In Limine* Filings And Rulings (Doc. 6535). Accordingly, Plaintiffs' request for special "procedures or safeguards" should be denied as moot, because neither party has requested that the Court reconsider its earlier ruling that preemption is a question of law. And in any event, evidence regarding FDA's review and approval of Xarelto's design and label is no different in kind than any other evidence in the case, and should be treated as such.

---

[3] Though Plaintiffs have "moved for an order outlining procedural requirements and safeguards in the event such evidence is permitted to be presented in support of the affirmative defense of impossibility preemption," Doc. 6472-1, at 1, they have not submitted any proposed order with their motion.

9

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion *in Limine* No. 33.

Respectfully submitted,

IRWIN FRITCHIE URQUHART & MOORE LLC

By: /s/ *James B. Irwin*
James B. Irwin
Kim E. Moore
Irwin Fritchie Urquhart & Moore LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
jirwin@irwinllc.com


DRINKER BIDDLE & REATH LLP

By: /s/ *Susan M. Sharko*
Susan M. Sharko
Drinker Biddle & Reath LLP
600 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
susan.sharko@dbr.com

Rodney M. Hudson
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
Telephone: (415) 591-7500
Rodney.hudson@dbr.com

Chanda A. Miller
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2700
Chanda.Miller@dbr.com


*Attorneys for Defendants Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC, and Janssen Ortho LLC*

WILKINSON WALSH + ESKOVITZ LLP

By: /s/ *Beth A. Wilkinson*
Beth A. Wilkinson
Jennifer L. Saulino
Jeremy Barber
WILKINSON WALSH + ESKOVITZ LLP
1900 M. Street NW, Suite 800
Washington, DC 20036
Telephone: (202) 847-4000
bwilkinson@wilkinsonwalsh.com
jsaulino@wilkinsonwalsh.com
jbarber@wilkinsonwalsh.com


NELSON MULLINS RILEY & SCARBOROUGH LLP

By: */s/ David E. Dukes*
David E. Dukes
J. Mark Jones
NELSON MULLINS RILEY & SCARBOROUGH LLP
1320 Main Street, 17th Floor
Columbia, SC 29201
Telephone: (803) 799-2000
David.Dukes@nelsonmullins.com
Mark.Jones@nelsonmullins.com


ARNOLD & PORTER KAYE SCHOLER LLP

By: /s/ *Andrew K. Solow*
Andrew K. Solow
Steven Glickstein
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8485
andrew.solow@apks.com
steven.glickstein@apks.com

William Hoffman
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
william.hoffman@apks.com

11

BRADLEY ARANT BOULT CUMMINGS LLP

By: */s/ Kevin C. Newsom*
Kevin C. Newsom
Lindsey C Boney IV
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place, 1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8803
knewsom@bradley.com
lboney@bradley.com


CHAFFE MCCALL L.L.P.
By: */s/ John F. Olinde*
John F. Olinde
CHAFFE MCCALL L.L.P.
1100 Poydras Street, Suite 2300
New Orleans, LA 70163
Telephone: (504) 585-7241
olinde@chaffe.com


*Attorneys for Bayer HealthCare Pharmaceuticals Inc. and Bayer Pharma AG*

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that on the 22nd day of May, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs by operation of the court's electronic filing system.

      */s/     John F. Olinde*