# Exhibit B

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KIMBERLY DEAGANO, ET AL | * CIVIL ACTION NO. |
| Plaintiffs, | * |
| | * |
| VERSUS | * SECTION: " " |
| | * |
| BP EXPLORATION & PRODUCTION, INC., | * JUDGE |
| ET AL | * |
| Defendants. | * |
| | * MAGISTRATE JUDGE |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT

**NOW INTO COURT**, through undersigned counsel, come Plaintiffs, who respectfully represent to this Honorable Court as follows:

**I.  PARTIES**

**A. PLAINTIFFS**

Plaintiffs were exposed to oil, dispersants and/or other hazardous chemicals used for or resulting from the Oil Spill.

The following individuals are Plaintiffs herein:

1) **Kimberly DeAgano** – Kim DeAgano is a person of the full age majority, citizen of the United States of America, and resident of Kenner, Louisiana. Mrs. DeAgano vacationed in Destin, Florida subsequent to the Deepwater Horizon disaster when she began to manifest symptoms including but not limited to: headaches, wrist pain, numbness of fingers, shoulder pain, kidney pain, abdominal pain, abdominal spasms, diarrhea, dizziness, loss of memory, muscle atrophy, loss of weight, tingling in feet, blurry vision, lack of circulation in feet, respiratory problems, neck pain, and

1

depression. Mrs. DeAgano's injuries are serious in nature and require continuing medical care and treatment and cannot be fully compensated under the Medical Benefits Settlement.

2) **Kim DeAgano on behalf of Dereck J. DeAgano** – Dereck DeAgano is a minor person, citizen of the United States of America, and resident of Kenner, Louisiana. Dereck DeAgano vacationed in Destin, Florida subsequent to the Deepwater Horizon disaster when he began to manifest symptoms including but not limited to: abdominal pain and headaches. Plaintiff Dereck DeAgano is he minor child of Kimberly DeAgano.

3) **Ted DeAgano, Jr**. - Ted DeAgano is a person of the full age majority, citizen of the United States of America, and resident of Kenner, Louisiana. Plaintiff Ted DeAgano is the spouse of Plaintiff Kim DeAgano and father of Plaintiff Dereck DeAgano.

4) **Keith Keaghey** – Mr. Keaghey is a person of the full age majority, a citizen of the United States of America, and resident of Houma, Louisiana. Mr. Keaghey was engaged in oil field production work subsequent to the Deepwater Horizon Disaster when he began to experience severe seizures.

## B. **DEFENDANTS**

Made defendants herein are as follows:

1) **BP Exploration & Production, Inc. (hereinafter "BP Exploration")** - a Delaware corporation with its principal place of business in Warrenville, Illinois. BP Exploration is subject to *in personam* jurisdiction of this Court because it purposefully availed itself of the laws and benefits of the state at the time of the accident giving rise to this litigation because it conducted sufficient business

2

activities in the State of Louisiana and within the Eastern District of Louisiana to confer same. Further, BP Exploration's activities in the State of Louisiana were substantial, continuous, and systematic with respect to claims which are subject to this litigation. Finally, the harmful effects of BP Exploration's negligent conduct were felt in Louisiana.

2) **BP America Production Company (hereinafter, "BP America")** - a Delaware corporation with its principal place of business in Houston, Texas. BP America is subject to *in personam* jurisdiction of this Court because it purposefully availed itself of the laws and benefits of the state at the time of the accident giving rise to this litigation because it conducted sufficient business activities in the State of Louisiana and within the Eastern District of Louisiana to confer same. Further, BP America's activities in the State of Louisiana were substantial, continuous, and systematic with respect to claims which are subject to this litigation. Finally, the harmful effects of BP America's negligent conduct were felt in Louisiana.

3) **BP p.l.c.** - a British public limited company with its corporate headquarters in London, England. BP p.l.c. is the global parent company of the worldwide business operating under the "BP" logo. BP p.l.c. operates its various business divisions, such as the "Exploration and Production" division in which BP Exploration and BP America fall. BP p.l.c.'s operations are worldwide, including in the United States. Defendants BP Exploration and BP America are wholly-owned subsidiaries of BP p.l.c. and are sufficiently controlled by BP p.l.c. so as to be BP p.l.c.'s agents in Louisiana and the U.S. more generally. BP p.l.c. is subject to *in personam* jurisdiction of this Court because it purposefully availed itself of the laws and benefits of the state

3

at the time of the accident giving rise to this litigation because it conducted sufficient business activities in the State of Louisiana and within the Eastern District of Louisiana to confer same. Further, BP p.l.c.'s activities in the State of Louisiana were substantial, continuous, and systematic with respect to the claims which are subject to this litigation. Finally, the harmful effects of BP p.l.c.'s negligent conduct were felt in Louisiana.

4) **Transocean Ltd. ("Transocean Ltd.")** - a Swiss corporation that maintains U.S. offices in the state of Texas. Transocean Ltd. is subject to *in personam* jurisdiction of this Court because it purposefully availed itself of the laws and benefits of the state at the time of the accident giving rise to this litigation because it conducted sufficient business activities in the State of Louisiana and within the Eastern District of Louisiana to confer same. Further, Transocean Ltd.'s activities in the State of Louisiana were substantial, continuous, and systematic with respect to claims which are subject to this litigation. Finally, the harmful effects of Transocean Ltd.'s negligent conduct were felt in Louisiana.

5) **Transocean Offshore, Inc. ("Transocean Offshore")** - a Delaware corporation with its principal place of business in Houston, Texas. Transocean Offshore is subject to *in personam* jurisdiction of this Court because it purposefully availed itself of the laws and benefits of the state at the time of the accident giving rise to this litigation because it conducted sufficient business activities in the State of Louisiana and within the Eastern District of Louisiana to confer same. Further, Transocean Offshore's activities in the State of Louisiana were substantial, continuous, and systematic with respect to claims which are subject to this litigation. Finally, the harmful effects of

4

Transocean's negligent conduct were felt in Louisiana. Transocean Offshore is affiliated with Transocean Ltd. and was an owner, managing owner, owner pro hac vice, and/or operator of the Deepwater Horizon.

6) **Transocean Deepwater, Inc. ("Transocean Deepwater")** - a Delaware corporation with its principal place of business in Houston, Texas, and at all pertinent times was doing business in the State of Louisiana and within this district. Transocean Deepwater is subject to *in personam* jurisdiction of this Court because it purposefully availed itself of the laws and benefits of the state at the time of the accident giving rise to this litigation because it conducted sufficient business activities in the State of Louisiana and within the Eastern District of Louisiana to confer same. Further, Transocean Deepwater's activities in the State of Louisiana were substantial, continuous, and systematic with respect to claims which are subject to this litigation. Finally, the harmful effects of Transocean Deepwater's negligent conduct were felt in Louisiana..

7) **Transocean Holdings, LLC ("Transocean Holdings")** - a Delaware corporation with its principal place of business in Houston, Texas. Transocean Holdings is affiliated with Transocean Ltd. and is a wholly-owned subsidiary of Transocean Offshore. Transocean Holdings is subject to *in personam* jurisdiction of this Court because it purposefully availed itself of the laws and benefits of the state at the time of the accident giving rise to this litigation because it conducted sufficient business activities in the State of Louisiana and within the Eastern District of Louisiana to confer same. Further, Transocean Holdings' activities in the State of Louisiana were substantial, continuous, and systematic with respect to claims which are subject to

this litigation. Finally, the harmful effects of Transocean Holdings' negligent conduct were felt in Louisiana.

8) **Triton Asset Leasing ("Triton")** - a Swiss limited liability company with its principal place of business in Zug, Switzerland. Triton is subject to *in personam* jurisdiction of this Court because it purposefully availed itself of the laws and benefits of the state at the time of the accident giving rise to this litigation because it conducted sufficient business activities in the State of Louisiana and within the Eastern District of Louisiana to confer same. Further, Triton's activities in the State of Louisiana were substantial, continuous, and systematic with respect to claims which are subject to this litigation. Finally, the harmful effects of Triton's negligent conduct were felt in Louisiana. Triton is affiliated with Transocean Ltd. and is an owner, managing owner, owner pro hac vice, and/or operator of the Deepwater Horizon.

9) **Anadarko Petroleum Corporation Co. ("Anadarko")** - a Delaware corporation with its principal place of business in The Woodlands, Texas. Anadarko is subject to *in personam* jurisdiction of this state because the harm of its negligent conduct was felt in Louisiana. Further, Anadarko's activities in the State of Louisiana were substantial, continuous, and systematic with respect to claims which are subject to this litigation. Anadarko is an oil and gas exploration and production company. At all relevant times, Anadarko was a party to the Macondo Prospect Offshore Deepwater Operating Agreement ("Operating Agreement"), and held an ownership interest in the lease of the Macondo Prospect site in Mississippi Canyon Block 252 in the Gulf of Mexico.

10) **Anadarko E&P Onshore, LLC, formerly Anadarko E&P Company LP, ("Anadarko E&P")** - a Delaware limited partnership with its principal place of business in The Woodlands, Texas. Anadarko E&P is subject to *in personam* jurisdiction of this state because the harm of its negligent conduct was felt in Louisiana. Further, Anadarko E&P's activities in the State of Louisiana were substantial, continuous, and systematic with respect to claims which are subject to this litigation. Anadarko E&P is an oil and gas exploration and production company. At all relevant times, Anadarko E&P was a party to the Operating Agreement, and held an ownership interest in the lease of the Macondo Prospect site in the Mississippi Canyon Block 252 in the Gulf of Mexico.

11) **MOEX Offshore 2007 LLC ("MOEX Offshore")** - a Delaware corporation with its principal place of business in Houston, Texas. MOEX Offshore is subject to *in personam* jurisdiction of this state because the harm of its negligent conduct was felt in Louisiana. Further, MOEX Offshore's activities in the State of Louisiana were substantial, continuous, and systematic with respect to claims which are subject to this litigation. MOEX Offshore is a wholly-owned subsidiary of MOEX USA Corporation, which in turn is a wholly-owned subsidiary of Mitsui Oil Exploration Co., Ltd. ("MOECO"). However, MOEX Offshore is not a distinct corporate entity performing autonomous business activities, but is instead an entity wholly dominated and controlled by its ultimate parent company, MOECO, as alleged below. At all relevant times, MOEX Offshore was a party to the Operating Agreement, and held an ownership interest in the lease of the Macondo Prospect site in the Mississippi Canyon Block 252 in the Gulf of Mexico.

7

12) **MOEX USA Corporation ("MOEX USA")** is incorporated in Delaware and has its principal place of business in Houston, Texas. MOEX USA is subject to *in personam* jurisdiction of this state because the harm of its negligent conduct was felt in Louisiana. Further, MOEX USA activities in the State of Louisiana were substantial, continuous, and systematic with respect to claims which are subject to this litigation. MOEX USA is not a distinct corporate entity performing autonomous business activities, but is instead an entity created solely to serve as a holding company for other corporate entities, including MOEX Offshore, and is dominated and controlled by its parent company, MOECO, as alleged below. MOEX USA is named as a defendant herein because it is part of the corporate construct by which MOECO owns, dominates, controls, and benefits from the activities of MOEX Offshore.

13) **Mitsui Oil Exploration Co., Ltd. ("MOECO")** is incorporated in Japan and has its principal place of business in Tokyo, Japan. MOECO is subject to *in personam* jurisdiction of this state because the harm of its negligent conduct was felt in Louisiana. Further, MOECO's activities in the State of Louisiana were substantial, continuous, and systematic with respect to claims which subject to this litigation and it has purposely availed itself of the protections, benefits, and privileges of American law. Therefore, it should have reasonably anticipated being involved in this litigation in the United States. MOECO wholly owns MOEX USA, which in turn wholly owns MOEX Offshore. As alleged more fully below, MOECO is named as a defendant herein because at all relevant times it dominated and controlled the activities of MOEX Offshore and MOEX USA, such that it is the alter ego of its subsidiaries, MOEX Offshore and MOEX USA, thus requiring that the liability of

MOEX Offshore and/or MOEX USA be imputed to MOECO. Alternatively, as also alleged below, MOEX Offshore and MOEX USA acted at all relevant times as agents of MOECO, and the liability of those entities should therefore be imputed to MOECO. Moreover, because at all relevant times MOECO asserted domination and control over the business, operations and policy decisions of MOEX Offshore and MOEX USA, those U.S. companies were merely the alter egos and/or agents of MOECO. Thus, MOECO is subject to the exercise of both general and specific jurisdiction by this Court, an exercise of jurisdiction that will not offend traditional notions of fair play and substantial justice.

14) **Mitsui & Co., Ltd. ("Mitsui")** is incorporated in Japan with its domicile in Tokyo, Japan. Mitsui is a majority owner of MOECO and is a publicly traded company. Mitsui is subject to *in personam* jurisdiction of this state because the harm of its negligent conduct was felt in Louisiana. Further, Mitsui's activities in the State of Louisiana were substantial, continuous, and systematic with respect to claims which are subject to this litigation and it has purposely availed itself of the protections, benefits, and privileges of American law. MOECO is listed in Mitsui's consolidated financial statements and filings with the U.S. Securities and Exchange Commission as a "major" subsidiary of Mitsui. BP, Transocean, Moex, Anadarko, and Halliburton are collectively referred to herein as the "Drilling Defendants," as they were all involved in the drilling, cementing, and other temporary well abandonment activities of the Deepwater Horizon, and thus their actions caused and/or contributed to the Spill. Drilling Defendants are liable jointly, severally, and in solido under various principles of maritime and/or applicable State and/or Federal tort law.

15) **Halliburton Energy Services, Inc. ("Halliburton")** is a Delaware corporation with two headquarters, one in Houston, Texas. Halliburton is subject to *in personam* jurisdiction of this Court because it purposefully availed itself of the laws and benefits of the state at the time of the accident giving rise to this litigation because it conducted sufficient business activities in the State of Louisiana and within the Eastern District of Louisiana to confer same. Further, Halliburton's activities in the State of Louisiana were substantial, continuous, and systematic with respect to claims which are subject to this litigation. Finally, the harmful effects of Halliburton's negligent conduct were felt in Louisiana. Halliburton is one of the world's largest providers of products and services to the energy industry, with a special expertise in oil well cementing. Aboard the Deepwater Horizon, Halliburton was responsible for cementing the well and overseeing the final well-capping procedure.

16) **Cameron International Corporation f/k/a Cooper Cameron Corporation ("Cameron")** is a Delaware Corporation with its principal place of business in Houston, Texas. Cameron's is subject to *in personam* jurisdiction of this Court because it purposefully availed itself of the laws and benefits of the state at the time of the accident giving rise to this litigation because it conducted sufficient business activities in the State of Louisiana and within the Eastern District of Louisiana to confer same. Further, Cameron's activities in the State of Louisiana were substantial, continuous, and systematic with respect to claims which are subject to this litigation. Finally, the harmful effects of Cameron's negligent conduct were felt in Louisiana. Cameron is a global provider of pressure control, processing, flow control, and compression systems as well as project management and aftermarket services for the

oil and gas and process industries. Cameron manufactured and/or supplied the Deepwater Horizon's blowout preventer valve that failed to activate at the time of the explosion.

## II.  JURISDICTION AND VENUE

### 1.

All claims raised herein are brought pursuant to 28 U.S.C. §1333 and rule 9(h).

### 2.

This Court also has jurisdiction over this action pursuant to The Admiralty Extension Act, 46 U.S.C. § 30101, which extends the admiralty and maritime jurisdiction of the United States to cases of injury or damage, to person or property, caused by a vessel on navigable waters, even though the injury or damage is done or consummated on land.

### 3.

This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

### 4.

The claims presented herein are admiralty or maritime claims within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, and Claimants hereby designate this case as an admiralty or maritime case as provided in Rule 9(h).

### 5.

Jurisdiction is proper to pursuant to 43 U.S.C.A. § 1333 ("Outer Continental Shelf Lands Act").

### 6.

Venue is appropriate in this Eastern District of Louisiana under 28 U.S.C. § 1391, because the events or omissions giving rise to the claims asserted herein occurred in the Eastern District of Louisiana.

**7.**

Plaintiffs' causes of action arise out of wrongful conduct committed by BP p.l.c., directly or indirectly by its agents that caused injury or damage felt in Louisiana by an offense or quasi offense committed through an act or omission outside of Louisiana, and BP, p.l.c. These acts or omissions took place both before the blowout resulting in the Oil Spill and after the blowout in attempting to contain the Oil Spill.

**8.**

In addition, this Court also has personal jurisdiction over BP p.l.c. under agency and alter ego principles, because BP p.l.c.'s agents, BP America and BP Exploration, have substantial contacts in the state of Louisiana. BP America and BP Exploration are both wholly-owned subsidiaries of BP p.l.c.

**9.**

Moreover, BP p.l.c. undertook the duty for pay and/or gratuitously to clean up the Oil Spill and as a result is liable for its acts and omissions in the attempt to clean-up the Oil Spill.

**10.**

BP Exploration, BP America, and BP p.l.c. are generally referred to collectively as "BP." As lease operator of the Macondo prospect site, BP was responsible for assessing the geology of the prospect site, engineering the well design, obtaining regulatory approvals for well operations, and retaining and overseeing the contractors working on the various aspects of the well and the drilling operations.

## III.    FACTUAL ALLEGATIONS

Plaintiffs adopt all allegations and/or causes of actions set forth in the Master Complaint, pleadings, and short for joinder filed within MDL No. 2179 in the Federal Eastern District of Louisiana.

### A.    The Deepwater Horizon Catastrophe

#### 11.

On April 20, 2010, a well blowout caused explosions on the Deepwater Horizon, an oil vessel in the Gulf of Mexico, igniting a raging fire on the vessel. After burning for two days, the vessel sank to the ocean floor.

#### 12.

As the Deepwater Horizon tipped into the sea, the long riser pipe connecting the vessel to the wellhead on the seafloor bent and broke, leaving the pipe leaking oil out of its now-open end, as well as through two breaks along its length. An emergency valve, installed on the wellhead for just such a disaster, failed to seal the wellhead as it should have, causing the blown-out well to spew oil into the Gulf waters (the "Oil Spill").

#### 13.

Each day during the course of the Oil Spill, tens of thousands of barrels of crude oil gushed from the wellhead and broken riser, bubbling up to the surface and flattening out into a widening slick of oil, as well as spreading out in vast subsurface plumes. On the surface, covered tens of thousands of square miles, and spreading with the wind and currents towards the Gulf States' coastlines, where oil made landfall on white sand beaches, marshes, and estuaries. Under water, immense plumes of oil and dispersant chemicals swirled through the entire water column.

#### 14.

BP's response to its self-created disaster included the use of chemical dispersants that were intended to break down the oil into finely dispersed droplets. Dispersants generally contain a solvent, a surfactant and other additives that break up the surface tension of an oil slick or sheen to make the oil more soluble in water.

### 15.

Chemical dispersants were sprayed onto the ocean surface from fly-over aircraft dispensing the chemicals from cargo holds, sprayed onto the ocean surface from fountain-type jets on the decks of boats, sprayed from smaller vessels onto the surface of the water, injected immediately below the surface of the water from vessels, injected deep below the surface of the ocean, and sprayed by hand.

**B.    Plaintiffs' Exposure to the Harmful Chemicals.**

### 16.

Subsequent to the Deepwater Horizon disaster, Plaintiffs Kimberly DeAgano and Dereck DeAgano were vacationing in Destin, Florida when they swam in the Gulf of Mexico.

### 17.

Plaintiffs were exposed to oil, dispersants, and oil/dispersant mixtures by inhalation, ingestion, dermal exposure, and through contact with her eyes.

### 18.

Upon information and belief, Mr. Keaghey was in the vicinity of aerial spraying while working on a platform located on the Outer Continental Shelf ("OCS") and was not warned of aerial dispersant missions and came into contact by inhalation and dermal exposure with dispersants and oil/dispersant mixtures, oil and/or other harmful chemicals.

### 19.

Exposure to chemicals in crude oil and chemical dispersants can cause a wide range of health problems. Crude oil has many highly toxic chemical ingredients that can damage every system in the body and many of the same organs including but not limited to: respiratory system, nervous system (including the brain), liver, reproductive/urogenital system, kidneys, endocrine system, circulatory system, gastrointestinal system, immune system, sensory systems, musculoskeletal system, hematopoietic system (blood forming), skin and integumentary system and disruption of normal metabolism.

**20.**

Damage to these systems can cause a wide range of diseases and conditions. Some of these diseases and conditions may be immediately evident, and others can appear months or years later. Many of the chemicals in crude oil and the dispersants target the same organs in the human body, and this increases the risk and may also increase the severity of harm. Plaintiffs have already experienced many of the symptoms associated with exposure to dispersants, oil, and/or oil/chemical mixtures as mentioned above.

**21.**

As such, actual, compensatory and punitive damages should be awarded to Plaintiffs for the injuries they have sustained as a result of Defendants' knowledge, conduct, acts and omissions as set forth herein.

**C.    The Willful and Wanton Conduct of the Defendants**

**22.**

Defendants, by their conscious and/or deliberate unreasonable acts and/or omissions complained of herein, and/or as the evidence may show, displayed gross negligence, reckless indifference, willfulness and/or wantonness with regard to the safety of the Plaintiffs.

**23.**

Defendants recklessly, willfully and/or wantonly failed to ensure that adequate safeguards, protocols, procedures and resources would be readily available to prevent and/or mitigate the effects an uncontrolled oil spill into the waters of the Gulf of Mexico and to prevent injury to the Plaintiffs.

**24.**

BP recklessly, willfully and/or wantonly failed to use reasonably safe dispersant chemicals or other chemicals in their attempts to respond to the Oil Spill, and thereby exacerbated the pollution of the Gulf of Mexico and injury to Plaintiffs.

**25.**

Defendants were aware of the risks that Plaintiffs would face but ignored worker safety concerns, even in the face of OSHA warnings and notification by the Department of Health and Human Services that workers were complaining of illnesses after being exposed to oil and dispersants.

**D.      Defendants' Knowledge of the Risks**

**26.**

At all times relevant to this litigation, Defendants knew or should have known that:

a) Crude oil contains chemicals hazardous to human health;

b) Chemical dispersants contain chemicals hazardous to human health;

c) Plaintiffs should have been adequately and timely warned of the harmful effects of crude oil and chemical dispersants, and the hazardous substances which they contain, which are being released into the environment; and,

16

d) Plaintiffs should have been equipped with proper protective gear, properly trained for avoiding exposure to the chemicals, and provided with material safety data sheets relevant to the chemicals used for recovery.

## IV.   DAMAGES AND OTHER RELIEF REQUESTED

### 27.

As a result of Defendants' acts or omissions, Plaintiffs Kim DeAgano and Keith Keaghey have suffered the following physical injury damages:

a) Past, present, and future pain and suffering due to exposure to chemicals in crude oil that have caused adverse health effects;

b) Past, present, and future pain and suffering due to exposure to chemicals in dispersants that have caused adverse health effects;

c) Past, present, and future pain and suffering due to exposure to chemicals in crude oil/dispersant mixtures that have caused adverse health effects;

d) Past, present, and future pain and suffering due to exposure to chemicals in oil and dispersant mixtures that have caused adverse health effects;

e) Past, present, and future medical, hospital, and pharmaceutical expenses;

f) Past, present, and future mental anguish and emotional trauma;

g) Past, present, and future loss of enjoyment of life;

h) Past and present loss wages;

i) Past and future loss of earning capacity;

j) Other damages itemized at the trial of this matter.

**28.**

As a result of Defendants' acts or omissions, Plaintiff Dereck DeAgano has suffered the following damages:

k) Past, present, and future pain and suffering due to exposure to chemicals in crude oil that have caused adverse health effects;

l) Past, present, and future pain and suffering due to exposure to chemicals in dispersants that have caused adverse health effects;

m) Past, present, and future pain and suffering due to exposure to chemicals in crude oil/dispersant mixtures that have caused adverse health effects;

n) Past, present, and future pain and suffering due to exposure to chemicals in oil and dispersant mixtures that have caused adverse health effects;

o) Past, present, and future medical, hospital, and pharmaceutical expenses;

p) Past, present, and future mental anguish and emotional trauma;

q) Past, present, and future loss of enjoyment of life;

r) Loss of consortium;

s) Other damages itemized at the trial of this matter.

**29.**

As a result of Defendants' acts or omissions, Plaintiff Ted DeAgano, Jr. has suffered the following damages:

a) Loss of consortium;

b) Loss of wages;

c) Other damages itemized at the trial of this matter.

**30.**

Plaintiffs also demand injunctive and equitable relief and further, that Defendants be ordered to provide medical monitoring for Plaintiffs.

## V.  CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

*Negligence*

#### 31.

Plaintiffs re-allege each and every allegation set forth in all preceding paragraphs as if fully restated here.

#### 32.

Plaintiffs contend that the combined conduct of the Defendants' is the cause-in-fact liable for their injuries and resulting damages were the cause-in-fact and proximate cause of the Defendants' breach of their duties of due care in the following non-exclusive respects:

a) Failing to warn the Plaintiffs of the harmful effects of crude oil, chemical dispersants and any mixture thereof, and the hazardous, carcinogenic substances that they contain.

b) Failing to abide by the provisions of the National Contingency Plan relating to the use of aerial chemical dispersants in the proximity in shallow waters;

c) Failing to coordinate and conduct aerial spraying sorties in a manner so as to eliminate the risk of Plaintiffs being exposed to aerial chemical dispersants; and,

d) Failing to otherwise exercise reasonable care in the operation, maintenance, handling, design, implementation and execution of the relief and recovery measures to avoid harm to Plaintiffs.

#### 33.

19

Defendants' breach of their duties posed an unreasonable risk of harm to Plaintiffs.

**34.**

At all times relevant to this litigation, Defendants knew or should have known that:

(a) Crude oil contains chemicals hazardous to human health;

(b) Chemical dispersants contain chemicals hazardous to human health;

(c) Plaintiffs should have been adequately and timely warned of the harmful effects of crude oil and chemical dispersants, and the hazardous substances which they contain, which are being released into the environment; and

(d) Defendants' failure to otherwise exercise reasonable care in the operation, maintenance, handling, design, implementation and execution of the relief and recovery measures would result in harm to Plaintiffs.

**35.**

Therefore, the danger and risk of harm to Plaintiffs was reasonably foreseeable to the Defendants.

**36.**

Further, at all times pertinent hereto, Defendants had direct control of their employees. As such, they are vicariously liable for the delictual actions of their employees.

**SECOND CLAIM FOR RELIEF**

***Gross Negligence***

**37.**

Plaintiffs re-allege each and every allegation set forth in all preceding paragraphs as if fully restated here.

**38.**

Defendants had a heightened duty of due care to Plaintiffs because of the great danger associated with exposure to oil, dispersants, and/or other hazardous chemicals and breached their duty with reckless, willful, and wanton disregard of Plaintiffs' injuries which were reasonably foreseeable.

39.

As a cause-in-fact and proximate cause of Defendants' wanton or reckless acts, Plaintiffs have suffered physical injuries. Defendants' gross negligence, as described herein, entitles Plaintiffs to punitive damages. The amount of punitive damages recoverable by Plaintiffs is not lawfully limited to the amount of their compensatory damages, but rather should be multiplier of same sufficient to both punish Defendants and deter similar wrongdoing in the future.

**THIRD CLAIM FOR RELIEF**

*Negligence Per Se*

40.

Plaintiffs re-allege each and every allegation set forth in all preceding paragraphs as if fully restated here.

41.

Defendants' conduct with regard to the manufacture, maintenance and/or operation of drilling operations and oil vessels such as the Deepwater Horizon, the release of hazardous and toxic chemicals into the environment, and the application of dispersants and other hazardous chemicals is governed by numerous state and federal laws and permits issued under the authority of these laws. These laws and permits create statutory and regulatory standards that are intended to protect and benefit Plaintiffs, including, but not limited to, those set forth in Section 311 of the

Clean Water Act, 40 C.F.R. § 300 App. E, 30 C.F.R. Part 254 and the Oil Pollution Act, 33 U.S.C. § 2717(b) (the "OPA").

### 42.

One or more of Defendants violated these statutory and/or regulatory standards.

### 43.

Defendants' violations of these statutory and/or regulatory standards constitute negligence per se under Louisiana law.

### 44.

As a cause-in-fact and proximate cause of Defendants' violation of statutory and/or regulatory standards, the Plaintiffs have suffered physical injuries.

## FOURTH CLAIM FOR RELIEF

*Battery*

### 45.

Plaintiffs re-allege each and every allegation set forth in all preceding paragraphs as if fully restated here.

### 46.

Defendants intentionally sprayed, and/or directed spraying, chemical dispersants in the immediate vicinity of Plaintiff Keaghey.

### 47.

Defendants' spraying of chemical dispersants in the immediate vicinity of Plaintiff Keaghey without warning or safety equipment has caused Plaintiff Keaghey to be exposed to harmful chemicals and resulted the aforementioned symtomology.

### 48.

Plaintiff Keaghey is entitled to judgment finding the Defendants liable to the Plaintiff for damages suffered as a result of subjecting Plaintiff Keaghey to harmful, offensive contact upon his body.

## FIFTH CLAIM FOR RELIEF

### *Louisiana Medical Monitoring Claim*

### 49.

Plaintiffs re-allege each and every allegation set forth in all preceding paragraphs as if fully restated here.

### 50.

As a direct and/or proximate result of Defendant's negligent conduct Plaintiffs have been exposed to greater than normal levels of oil, dispersants, and/or other hazardous chemicals used for or resulting from the Oil Spill which has created a significantly increased risk of contracting a serious latent disease.

### 51.

Plaintiffs have required medical treatment as a result of injuries caused by exposure to oil and/or chemical dispersants and other hazardous chemicals used to combat or resulting from the Oil Spill and have not reached maximum medical improvement.

### 52.

Monitoring procedures exist that make the early detection of any latent disease possible that are different from those normally recommended in the absence of the exposure. Because the Plaintiffs will suffer irreparable harm if the Court does not implement the medical monitoring relief prayed for herein and if Defendants are not ordered to create, fund, and support a medical monitoring program, the Plaintiffs will suffer additional harm.

53.

Plaintiffs demand injunctive relief and equitable relief, in the form of Defendants being ordered to provide continued medical monitoring for Plaintiffs.

## SIXTH CLAIM FOR RELIEF

*Punitive Damages*

54.

Plaintiffs re-allege each and every allegation set forth in all preceding paragraphs as if fully restated here.

55.

Defendants engaged in conduct so reckless, willful, wanton and in such utter and flagrant disregard for the safety and health of the public and the environment in their activities leading up to and/or during the blowout, explosions, fire, spill, and clean-up efforts as alleged herein, that an award of punitive damages against them at the highest possible level is warranted and necessary to impose effective and optimal punishment and deterrence. Plaintiffs, society, and the environment cannot afford and should never be exposed to the risks of another disaster of this magnitude.

56.

Defendants recklessly, willfully and/or wantonly failed to ensure that Plaintiffs would be adequately protected from exposure to harmful chemicals in oil, chemical dispersants, and other harmful chemicals resulting from the Oil Spill.

57.

24

Defendants willfully and/or wantonly failed to ensure that that adequate safeguards, protocols, procedures and resources would be readily available to prevent and/or mitigate the effects of an uncontrolled oil spill into the waters of the Gulf of Mexico and the corresponding clean up response measures involving the use of chemical dispersants.

### 58.

BP recklessly, willfully and/or wantonly failed to utilize reasonably safe dispersant chemicals in its haphazard attempts to respond to the Oil Spill, and thereby exacerbated the harm to Plaintiffs.

### 59.

Defendants' conduct was at the highest level of reprehensibility, warranting and necessitating the imposition of punitive damages at the highest level, because Defendants' conduct was motivated by financial gain; because it injured and endangered human health and safety; because it caused devastating damage and loss to the livelihoods, businesses, and properties of Plaintiffs; because it was not isolated or accidental, but part of a culture and ongoing pattern of conduct that consistently and repeatedly ignored risks to others in favor of financial advantage to Defendants; and because it has accordingly caused societal harm, moral outrage and condemnation, and the need to punish Defendants and deter further repetition by Defendants or others.

### 60.

Accordingly, Plaintiffs are entitled to an award of punitive damages according general maritime law in an amount to be determined at trial.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs demand judgment against Defendants jointly and severally as follows:

1) Compensatory damages in amounts to be determined at trial;

2) Punitive damages;

3) Damages for medical screening and monitoring;

4) The implementation of a medical screening and monitoring program to be funded by the Defendants;

5) Pre-judgment and post-judgment interest at the maximum rate allowable by law;

6) Attorneys' fees and costs of litigation;

7) Injunction to require medical screening and monitoring;

8) Any other and further relief available under all applicable state and federal laws; and

9) Any other and further relief the Court deems just and proper.

Respectfully submitted,

/s/ Frank J. D'Amico, Jr.
**FRANK J. D'AMICO, JR. APLC**
Frank J. D'Amico, Jr. (#17519)
622 Baronne Street
New Orleans, LA 70113
Phone: 504.525.7272
Fax: 504-525-9522