UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE ELDON E. FALLON |
| Joseph Orr, Jr., et al. v. Janssen Research & Development, LLC et al.<br>Case No. 2:15-cv-03708 | MAGISTRATE NORTH |

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO QUASH SUBPOENA FOR SANJAY JALOTA TO APPEAR AND TESTIFY AT A HEARING OR TRIAL IN A CIVIL ACTION**

Plaintiffs have issued a trial subpoena to an employee of Defendants, Sanjay Jalota. The subpoena is invalid because it attempts to require the witness, who both lives and works more than 100 miles from the courthouse and outside of Louisiana, to testify by contemporaneous transmission from a different location in an effort to circumvent the Federal Rules' geographic limits on compelling live trial testimony.

Defendants recognize that the Court previously denied a similar motion to quash before the *Boudreaux* trial, over Defendants' motion to quash (Doc. 6277). (In the interest of efficiency and judicial economy, Defendants hereby incorporate here all of the earlier briefing and argument on Defendants' previous Motion To Quash Subpoena To Appeal And Testify At A Hearing Or Trial In a Civil Action (Doc. 6277), and ask that the Court consider it also to have been filed in this case.) In *Boudreaux*, the Court ruled that Janssen employee Dr. Gary Peters, who also lives and works more than 100 miles from the courthouse and outside of Louisiana, "must respond to the subpoena served upon him and proceed to the designated location within the state of Pennsylvania within 100-miles from his residence and place of work, and be available to testify [by live video feed] in accordance with Rule 43 of the Federal Rules of Civil

Procedure." Order, Doc. 6295. Plaintiffs called Dr. Peters to testify at trial via live video feed, which, as the Court knows, was fraught with technical difficulties, detailed below.

The Court's ruling on Dr. Peters notwithstanding, Defendants submit that there are even more compelling reasons to quash the subpoena served on Mr. Jalota here. Even if Rule 43 allows a means around the geographic subpoena limitations of Rule 45—and, as Defendants have explained before, it does not—Plaintiffs cannot show good cause or compelling circumstances for compelling Mr. Jalota's testimony through live video feed. Mr. Jalota was previously deposed in this litigation for more than 16 hours. Over the course of that 16-hour, two-day videotaped deposition, Plaintiffs presented Mr. Jalota with 74 different exhibits. Plaintiffs are entitled to designate certain portions of Mr. Jalota's deposition testimony to be played to the jury during trial, as they did with various Janssen employees' deposition testimony during the *Boudreaux* trial. In fact, before the *Boudreaux* trial, Plaintiffs designated more than an hour of Mr. Jalota's deposition testimony but decided not to play it for the jury.

The Court must quash the subpoena consistent with the Federal Rules of Civil Procedure.

**RELEVANT FACTS**

Plaintiffs have issued a subpoena out of the United States District Court for the Eastern District of Louisiana for trial testimony of Defendants' employee Sanjay Jalota. Subpoena to Appear & Testify at a Hr'g or Trial in a Civil Action to Sanjay Jalota ("Jalota Subpoena") (Exh. A). While the trial will take place in courtroom C468 at the United States District Court for the Eastern District of Louisiana, located at 500 Poydras Street, New Orleans, Louisiana, the subpoena commands Mr. Jalota to testify "at a mutually agreed upon location" and for the testimony to be transmitted "via videoconference." *Id.*

Mr. Jalota is Senior Director of Global Regulatory Affairs at Janssen Research & Development. Jalota Decl. ¶ 1 (Exh. B).  He neither lives, works, nor regularly transacts business in the state of Louisiana or within 100 miles of the Eastern District of Louisiana court house. *Id.* ¶¶ 3-4.  Instead, Mr. Jalota is a resident of Warren, New Jersey, and works in Raritan, New Jersey. *Id.* ¶ 5.

Plaintiffs took the videotaped deposition of Mr. Jalota in connection with this matter on March 3 and 4, 2016, in Florham Park, New Jersey.  *Id*. ¶ 6.  Mr. Jalota's deposition lasted over 16 hours and produced an 866-page transcript. *Id.*

## ARGUMENT

**I.    The Jalota Subpoena is defective because it requires him testify at a trial being held out-of-state and more than 100 miles from where he works and resides.**

Federal Rule 45(c)(1) governs the place of compliance for a trial, and states:

> A subpoena may command a person to attend a trial, . . .: (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person (i) is a party or party's officer; or (ii) is commanded to attend a trial and would not incur substantial expense.

Federal Rule 45(d)(3)(A)(ii) states that a court "must" quash or modify a subpoena that "requires a person to comply beyond the[se] geographical limits."  Thus, the Federal Rules mandate that a court cannot compel live testimony of a party's employee at trial if that employee resides or works out-of-state and more than 100 miles from the court house. *See Williams v. Arctic Cat, Inc.*, No. 3:11-cv-445, 2014 WL 1028476, at *4 (N.D.N.Y. Mar. 13, 2014).

Mr. Jalota cannot be compelled to provide live trial testimony at the Eastern District of Louisiana courthouse in New Orleans.  He does not reside, work, or regularly transact business within 100 miles of the Eastern District of Louisiana courthouse.  Jalota Decl. ¶ 4.  Thus, he cannot be compelled to attend trial pursuant to the geographical limits of Federal Rule of Civil

3

Procedure 45(c)(1)(A).  Although Defendants do not concede that Mr. Jalota is an officer of a party or that he would not incur substantial expense if commanded to attend trial, even if that were true, he cannot be compelled to attend trial pursuant to the geographical limits of Federal Rule of Civil Procedure 45(c)(1)(B) because he does not reside, is not employed, nor regularly transacts business in Louisiana. Jalota Decl. ¶ 3.

Plaintiffs apparently concede this point because the Jalota Subpoena does not command that Mr. Jalota testify live in New Orleans, but rather that he testify via contemporaneous transmission of live testimony from a location outside of the Eastern District of Louisiana courthouse pursuant to Federal Rule of Civil Procedure 43.  However, the Jalota Subpoena remains defective.  Rule 45(c) prohibits Mr. Jalota's live appearance at trial, and its geographic limitations apply with equal force to testimony through live video feed under Rule 43(a).

**II.    Plaintiffs cannot use Rule 43 to evade the geographic limitations of Rule 45.**

Rule 43(a) states, "For good cause in compelling circumstances and with appropriate safeguards, the court may *permit* testimony in open court by contemporaneous transmission from a different location." (emphasis added).  But, as explained in the *Boudreaux* briefing (Doc. 6277-1), which Defendants incorporate here, Rule 43(a) does not allow Plaintiffs to *compel* Mr. Jalota to testify here, for two reasons.

*First*, because allowing contemporaneous transmission in this case would be solely for the purposes of evading the geographical limitations of Federal Rule of Civil Procedure 45, it should not—and cannot—be permitted, and the subpoena should be quashed.  *See id.* at 5–11.  This Court should not follow those decisions that have compelled live video testimony of distant witnesses.  *See id.* at 7–11.  *Second*, Plaintiffs have not demonstrated good cause and compelling circumstances because Mr. Jalota's unavailability was not unexpected and his 16-hour videotaped deposition is available for use at trial.  *See id.* at 11–16.

4

**A. Rule 45(c)'s geographic limitations on a trial subpoena apply to subpoenas for video testimony.**

As Defendants have explained (*see id.* at 5–6), Rule 43(a) "presupposes a witness willing or compelled to testify at trial" and does not independently extend a court's subpoena power. *See Roundtree v. Chase Bank*, No. 13–239 MJP, 2014 WL 2480259, at *2 (W.D. Wash. June 3, 2014); *see also Ping-Kuo Lin v. Horan Capital Mgmt. LLC*, No. 14 Civ. 5202, 2014 WL 3974585, at *1 (S.D.N.Y. Aug. 13, 2014) (explaining that Rule 43(a) "does not operate to extend the range or requirements of a subpoena"). Accordingly, where a witness is unwilling to testify at trial and is outside the 100-mile reach of the court's Rule 45(c) subpoena power, Rule 43(a) simply does not apply. *See Roundtree*, 2014 WL 2480259, at *2.

**1.** District courts in the Fifth Circuit have recognized that Rule 43(a) "does not expand the reach of the subpoena power outlined in Rule 45." *Lea v. Wyeth LLC*, No. 1:03-CV-1339, ECF No. 228 at *2 (E.D. Tex. Nov. 22, 2011).

**2.** MDL courts have also adopted this view regarding Federal Rule of Civil Procedure 43(a) when denying a party's request to require contemporaneous transmission of trial testimony of witnesses outside of the court's subpoena power. *See* Doc. 6277-1, at 6 (citing cases).

**B. This Court should not follow those decisions that have compelled live video testimony of distant witnesses under Rule 43(a).**

As Defendants have explained (*see id.* at 7–11), case law in MDL courts finding that Federal Rule of Civil Procedure 43(a) allows a witness to be compelled to testify via contemporaneous transmission even if they reside, work, or regularly transact business more than 100 miles from or in a different state than the courthouse where the trial will be conducted are inapposite.

5

1. This Court's decision in *In re Vioxx Products Liability Litigation*, 439 F. Supp. 2d 640 (E.D. La. 2006)—which held that a party's officer that resides, works, or regularly transacts business more than 100 miles from the court house and in a different state than the court house could be compelled to testify via contemporaneous transmission—predates the 2013 amendments to Rule 45 that clarified the range of a trial subpoena, and nothing in Rule 43(a) confers subpoena power where it otherwise did not exist.  *See* Doc. 6277-1, at 7.

2. The decisions in *In re Actos (Pioglitazone) Products Liability Litigation*, MDL No. 6:11-md-229, 2014 WL 107153 (W.D. La. Jan. 8, 2014), and *Andrews v. DePuy Orthopaedics Inc.*, No. 3:15-cv-03484-K, ECF No. 83 (N.D. Tex. Sep. 20, 2016) (attached here as Doc. 6277-7), ignore Rule 45(c)'s clear geographic limitation on a trial subpoena.  *See* Doc. 6277-1, at 8–11.

3. In *Actos*, there was a requirement in the scheduling order for "both parties to assist trial preparation by bringing as many witnesses to trial as possible, rather than relying on depositions," 2014 WL 107153, at *4, but the Court has placed no such expectations upon the parties here.  Accordingly, unlike in *Actos*, it is the expectation in this litigation that testimony of witnesses outside of the subpoena power will proceed as discussed in the Advisory Committee Notes to Federal Rule of Civil Procedure 43(a)—through deposition testimony rather than contemporaneous transmission. *See Williams*, 2014 WL 1028476 at *5 (denying request to allow contemporaneous transmission because the witnesses' testimony could be presented through depositions).  Furthermore, the *Actos* court misapplied Rules 43(a) and 45(c) by rejecting the defendants' argument that using Rule 43(a) to compel testimony via live video feed enlarged the scope of Rule 45(c)'s subpoena power, 2014 WL 107153, at *4, but that reasoning is flawed because employing a live video feed does not change the fact that the witness remains more than

6

100 miles from the site of the trial itself and thus outside Rule 45(c)'s 100-mile reach, *see Roundtree*, 2014 WL 2480259, at *2.

  **4.**  In *Andrews*, the court found that Rule 43(a) granted it the authority to compel the defendants' witnesses to testify at trial via live video feed so long as the plaintiffs demonstrated "good cause in compelling circumstances," but the court did not consider whether Rule 45(c) had any effect on whether live video testimony should or could be ordered for a witness residing or working more than 100 miles from the site of the trial. Doc. 6277-7, slip op. at 2–3. That holding not only is flatly contrary to the intent of the 2013 amendments to Rule 45—which further restricted courts' subpoena powers—but it also subverts the Rule's clear geographic limitations by expanding Rule 43(a) well beyond its traditional scope.

* * *

Because Rule 45(c), rather than Rule 43(a), establishes the permissible range of a trial subpoena, *Actos* and *Andrews*—as well as this Court's *Boudreaux* order—erroneously held that distant witnesses could be compelled to testify at trial via live video feed. In fact, one Fifth Circuit judge, Judge Jolly, has already signaled that such broad orders compelling testimony via live video feed misapply Rules 43(a) and 45(c). *See In re DePuy Orthopaedics*, No. 16-11419, ECF No. 3, at *2 (5th Cir. Sept. 27, 2016) (Jolly, J., concurring) ("Although the district court misapplied Rules 43(a) and 45(c), I concur in the denial of the petition for a writ of mandamus.") (attached here as Doc. 6277-8). This Court should not repeat that misapplication.

  **C.**  **In any event, Plaintiffs cannot demonstrate that good cause and compelling circumstances justify receiving Mr. Jalota's testimony through live video feed.**

The Advisory Committee Notes accompanying the 1996 amendment to Rule 43(a) state that "[t]he most persuasive showings of good cause and compelling circumstances are likely to arise when a witness is unable to attend trial for unexpected reasons, such as accident or illness,

7

but remains able to testify from a different place." They continue on, that "[o]rdinarily depositions, including video depositions, provide a superior means of securing the testimony of a witness who is beyond the reach of a trial subpoena, or of resolving difficulties in scheduling a trial that can be attended by all witnesses." Those considerations counsel against compelling Mr. Jalota to testify by live video here.

   1.   Mr. Jalota's absence was not unexpected, and "[a] party who could reasonably foresee the circumstances offered to justify transmission of testimony will have special difficulty in showing good cause and the compelling nature of their circumstances." *Id.* Plaintiffs have known from the early stages of this litigation that Mr. Jalota would be outside the reach of this Court's Rule 45 trial subpoena power and might not appear at trial. This fact alone creates a strong presumption against the use of remote testimony because Rule 43(a) envisions the presence of unforeseen circumstances. *See* Doc. 6277-1, at 12 (citing cases showing that the majority of courts to address this issue have found that Rule 43(a)'s good cause and compelling circumstances requirements are unmet in this circumstance).

   2.   Plaintiffs took a 16-hour videotaped deposition of Mr. Jalota and can introduce his testimony through deposition designations, as they did with other witnesses during the *Boudreaux* trial. *See* Fed. R. Civ. P. 43 Advisory Committee Notes to 1996 Amendments (preferring depositions over the use of live video testimony, explaining that "depositions, including video depositions, provide a superior means of securing the testimony" of an unavailable witness). Indeed, Plaintiffs initially designated one than an hour of Mr. Jalota's deposition testimony before the *Boudreaux* trial, but ultimately chose not to play the tape for the jury. Accordingly, Plaintiffs cannot demonstrate that good cause justifies receiving his testimony through live video feed. *See* Doc. 6277-1, at 13 (citing cases).

**3.** Because "the overriding purpose" of the Rules Enabling Act—and thus the Federal Rules—is "to provide for a *uniform* system of practice and procedure in federal courts," *Affholder, Inc. v. S. Rock, Inc.*, 746 F.2d 305, 310 (5th Cir. 1984) (emphasis added), the fact that this is an MDL bellwether trial does not justify a departure from the Advisory Committee's guidance that video testimony should be the exception, not the rule. *See* Doc. 6277-1, at 13–14 (citing cases).

\* \* \*

Thus, because Mr. Jalota's videotaped deposition testimony is available—indeed, Plaintiffs have already made designations and depositions are preferred to live video under the Rule 43 advisory committee notes—Plaintiffs cannot show the required good cause and compelling circumstances.

**D.  Requiring Mr. Jalota to testify remotely is burdensome and prejudicial.**

As demonstrated above, Mr. Jalota is outside the range of a trial subpoena, and Plaintiffs have not demonstrated good cause and compelling circumstances to compel live video testimony. Either of those facts provides a sufficient basis to reject Plaintiffs' proposal for video testimony. But in any event, compelling Mr. Jalota to testify via live video feed is improper here for an additional reason: it would serve only to prejudice Defendants and to create unnecessary burdens and additional expense. *See* Doc. 6277-1, at 14–16.

**1.** Requiring Mr. Jalota to testify via live video feed prejudices Defendants' trial preparation and strategy because defense counsel would be forced to divide between New Jersey and New Orleans during trial in order to adequately prepare and defend Mr. Jalota for examination.

**2.** Mr. Jalota himself would be unduly burdened because he would again be forced to spend time away from his regular job duties to testify, even though he has already given a 16-

9

hour deposition. There is no need to create additional burden and expense for the witness and defense counsel to provide testimony that has already been secured through the "superior means" of a deposition. Fed. R. Civ. P. 43(a) Advisory Committee Notes to 1996 Amendments.

      **3.** Testimony by live video feed also is problematic because information technology issues could arise, particularly due to the need to arrange for and effectively manage the transmission of testimony. *See* Doc. 6277-1, at 15–16 (citing cases about potential technical difficulties).

      **4.** Indeed, Dr. Peters's testimony during the *Boudreaux* trial highlights the challenges of live video testimony and the strong potential for technical glitches:

- The logistics were such that the witness could not see counsel face-to-face, but counsel instead had to turn their backs to the witness.[1]

- There were technical issues with the witness seeing and reviewing documents on his video screen, as directed by counsel—*i.e.*, the documents were blurry or the screen would go blank.[2]

---

[1] *See Boudreaux* Tr. at 1069:22–1070:2 ("Q. As I told you previously -- now, we've never met before this afternoon, but as I told you previously and just so the jury understands, I have to stand here with my back to Dr. Peters. It's no disrespect to him. It's just the way the logistics are set up. And so I don't intend to be disrespectful by that. You understand that, don't you?"); *see also id.* at 1096:18–20 ("Q. Good afternoon, Dr. Peters. Can you hear me? A. We need just a minute to switch people handing me documents, I think.").

[2] *See id.* at 1072:4–9 ("Q. Okay. Do you have that exhibit in front of you, Dr. Peters? A. I don't. I do now. Just handed to me. Q. Okay. Can you also see it on the screen? A. Yes, I can. It's a little blurry on the screen. It will be easier to look at the hard copy."); *id.* at 1076:18–21 ("Q. Okay. You see that this is an e-mail from you sent to Scott Berkowitz, Peter D. DiBattiste, and Sanjay Jalota. Do you see that? A. The slide went blank here, but I have the hard copy."); *id.* at 1087:21–25 ("Q. Now, Dr. Pan also sent you this internal logistic regression. Do you remember seeing that in his e-mail? A. I don't have anything on the screen. Are we referring to the previous exhibit?"); *id.* at 1089:2–9 ("Q. Do you have that, Dr. Peters? A. I have the document from -- yes. I have one from Alla Rhoge, and this one on the screen says Liping Zhang. So I don't think I have the same document that you have on the screen. Q. No. They should have handed you 3671042. Do you have that in front of you now, sir? A. I do."); *id.* at 1102:5–8 ("Q. Do you see the subject line? Could you read it for us? A. The screen went blank, but I can read it off the hard copy. Q. Go off the hard copy."); *id.* at 1102:25–1103:1 ("Q. Do you see that, Dr. Peters? A. Yes, I see that. Yes, that's up on screen now. Yes."); *id.* at 1105:20–1106:2 ("Q. All

- There were audio issues, with the witness hearing echoes or loud background noises that drowned out all or part of counsel's questions, or the witness's microphone not projecting into the courtroom loud enough.[3]

- Counsel and the witness at times interrupted each other because of the time lapse in the video and not knowing when the other was done talking.[4]

The Court need not risk these technical complications in an effort to obtain Mr. Jalota's live video testimony because live video feed does not "allow the jury to assess [his] testimony any better than [does] watching his video deposition." *Passmore v. Barrett*, No. 2:13-CV-290, 2016 WL 1253541, at *3 (N.D. Ind. Mar. 31, 2016).

\* \* \*

The benefits of live video testimony, limited as they are, do not outweigh these practical concerns. Mr. Jalota has already provided 16 hours of video deposition testimony in this case, and the Rules Advisory Committee has expressed a clear preference for previously secured

---

right. A. I don't know if you need to know the screen is blank again, but I do have the hard copy. Q. It's actually blank here too. THE WITNESS: I don't know what the jury is seeing, if they're seeing the documents. MR. SARVER: I think they're seeing it now.").

[3] *See id.* at 1070:20–21: ("A. I couldn't quite hear the first part of that question. It is a bit echoey."); *id.* at 1075:4–5 ("A. It's a little bit -- I missed the first part of the question. Sorry."); *id.* at 1078:5–10 ("A. Yes. I think you said antidote? Q. Yes. A. Again, the wording. It echoes a bit."); *id.* at 1078:21–25 ("Q. Okay. You really faded out there, so I think everybody in the courtroom is leaning in, trying to hear what you were saying. Just try to speak into the microphone a little clearer. A. Okay."); *id.*at 1099:8–9 ("Q. For how long have you been studying anticoagulants? A. I couldn't quite hear that one. Sorry."); *id.* at 1105:10–11 ("Q. And what is Defendants' Exhibit 5352? A. I missed that a little bit. Could you say that again?"); *id.* at 1121:24–25 ("Q. I'm assuming you like your wife. A. I didn't hear that --"); *id.* at 1123:11–14 ("Q. Dr. Peters, do you have any idea how many people have filed lawsuits in this courtroom? A. There's a little noise getting rearranged to the side, so I couldn't quite hear that question. Sorry."); *id.* at 1125:5–7 ("Q. So this is two months before the FDA found a relationship between PT and bleed risk; correct? A. Say that again?").

[4] *See id.* at 1088:23 ("THE WITNESS: Did I miss a question or not?"); *id.* at 1118:3–8 ("Q. Did the ROCKET study – I'm sorry. Did I cut you off, Dr. Peters? A. No. I was just going to say, one of the major -- we were looking -- we would have been happy with equal efficacy and equal safety given the problems with warfarin we had mentioned earlier. …").

deposition testimony.  *See* Fed. R. Civ. P. 43(a) Advisory Committee Notes to 1996 Amendments; *see also In re Urethane Antitrust Litig.*, 2016 WL 723014, at *2 (no compelling circumstances where depositions are available).  There is thus no reason to risk complications at trial or to create additional expense and burden by ordering testimony via live video feed here.

## CONCLUSION

The Court must quash the Jalota Subpoena.  To the extent that the Court compels Mr. Jalota to testify via videoconference, Defendants request that the Court adopt the safeguards that were implemented by this Court in the *Boudreaux* trial—including that the transmission take place from a federal courthouse, that the party calling the witness shall provide the court reporter with the documents it will discuss during direct examination at least two days prior to the examination, and that all costs shall be borne by the party calling the witness. *See also Andrews*, 2014 WL 107153, at *11–14 (implementing similar procedures).

For the foregoing reasons, the Court should grant Defendants' Motion to Quash Subpoena for Sanjay Jalota to Appear and Testify at a Hearing or Trial in a Civil Action.

Respectfully submitted,

IRWIN FRITCHIE URQUHART & MOORE LLC

By: /s/ *James B. Irwin*
James B. Irwin
Kim E. Moore
Irwin Fritchie Urquhart & Moore LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
jirwin@irwinllc.com

DRINKER BIDDLE & REATH LLP

By: /s/ *Susan M. Sharko*
Susan M. Sharko
Drinker Biddle & Reath LLP
600 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
susan.sharko@dbr.com

Rodney M. Hudson
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
Telephone: (415) 591-7500
Rodney.hudson@dbr.com

Chanda A. Miller
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2700
Chanda.Miller@dbr.com

*Attorneys for Defendants Janssen Pharmaceuticals, Inc. and Janssen Research & Development, LLC*

WILKINSON WALSH + ESKOVITZ LLP

By: /s/ *Beth A. Wilkinson*
Beth A. Wilkinson
Jennifer L. Saulino
Jeremy Barber
WILKINSON WALSH + ESKOVITZ LLP
1900 M. Street NW, Suite 800
Washington, DC 20036
Telephone: (202) 847-4000
bwilkinson@wilkinsonwalsh.com
jsaulino@wilkinsonwalsh.com
jbarber@wilkinsonwalsh.com

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: */s/ David E. Dukes*
David E. Dukes
J. Mark Jones
NELSON MULLINS RILEY & SCARBOROUGH LLP
1320 Main Street, 17th Floor
Columbia, SC 29201
Telephone: (803) 799-2000
David.Dukes@nelsonmullins.com
Mark.Jones@nelsonmullins.com

ARNOLD & PORTER KAYE SCHOLER LLP

By: /s/ *Andrew K. Solow*
Andrew K. Solow
Steven Glickstein
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8485
andrew.solow@apks.com
steven.glickstein@apks.com

William Hoffman
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
william.hoffman@apks.com


BRADLEY ARANT BOULT CUMMINGS LLP

By: */s/ Kevin C. Newsom*
Kevin C. Newsom
Lindsey C Boney IV
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place, 1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8803
knewsom@bradley.com
lboney@bradley.com


CHAFFE MCCALL L.L.P.
By: */s/ John F. Olinde*
John F. Olinde
CHAFFE MCCALL L.L.P.
1100 Poydras Street, Suite 2300
New Orleans, LA 70163
Telephone: (504) 585-7241
olinde@chaffe.com


*Attorneys for Bayer HealthCare Pharmaceuticals Inc. and Bayer Pharma AG*

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that on May 22, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to Liaison Counsel for Plaintiffs and Defendants by operation of the court's electronic filing system and served on all other plaintiff counsel via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre-Trial Order No. 17.

                              */s/ James B. Irwin*
                              **James B. Irwin**