UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE ELDON E. FALLON |
| Joseph Orr, Jr., et al. v. Janssen et al. Case No. 2:15-cv-03708 | MAGISTRATE NORTH |

**DEFENDANTS' JOINT OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* NO. 30 TO PRECLUDE TESTIMONY AND ARGUMENT THAT PLAINTIFFS' EXPERTS HAVE NOT PUBLICIZED/PUBLISHED OR SUBMITTED THEIR OPINIONS TO THE FDA OR ANY OTHER ORGANIZATION**

Defendants hereby oppose Plaintiffs' Motion *in Limine* No. 30 "To Preclude Testimony And Argument That Plaintiffs' Experts Have Not Publicized/Published Or Submitted Their Opinions To The FDA Or Any Other Organization." *See* Doc. 6474.

Whether an expert has publicized or published his or her opinions is relevant to the reliability, weight, and credibility of that expert's opinions. *See Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1318 (9th Cir. 1995). Plaintiffs do not dispute this basic principle. Instead, they contend that their experts' opinions could not have been published or publicized without violating the protective order applicable to this case (PTO 12), because—according to Plaintiffs—*every single opinion* offered by *every single one* of their experts is based on documents and information covered by the protective order. That is demonstrably untrue. Although Defendants agree that Plaintiffs' experts cannot disclose documents and information that are covered by the protective order, Plaintiffs' experts have offered a host of opinions—including the opinion that Xarelto's label should have instructed physicians to use a PT test—that are based on publicly available data, not protected information. Plaintiffs' experts' failure even to attempt to publish

those opinions—before or after the start of this litigation—is highly relevant and is appropriate evidence for argument and cross-examination. The Court should deny Plaintiffs' motion.

## ARGUMENT

Plaintiffs cannot dispute that whether an expert has published or publicized his or her opinions—or instead simply prepared them for litigation—is relevant to the reliability, weight, and credibility of those opinions. Publication of a theory boosts reliability because the acceptance of research "for publication in a reputable scientific journal after being subjected to the usual rigors of peer review is a significant indication that it is taken seriously by other scientists" and such "[s]crutiny of the scientific community is a component of good science." *Daubert*, 43 F.3d at 1318 (internal quotation omitted). By the same token, this Court has emphasized that the fact that an expert's "theories have not been … subjected to peer review and publication" undermines the reliability of the expert's testimony. *See In re Propulsid Prods. Liab. Litig.*, 261 F. Supp. 2d 603, 617 (E.D. La. 2003); *see also Wells v. SmithKline Beecham Corp.*, 601 F.3d 375, 378–81 (5th Cir. 2010) (affirming exclusion of expert because expert's theory "ha[d] not been subjected to peer review and publication"). Even if a court determines that an unpublished expert opinion is nevertheless admissible, the expert's failure to publish that opinion is relevant to the opinion's weight and credibility. *See Fitzpatrick v. Louisville Ladder Corp.*, No. 8:99-cv-29, 2001 WL 1568389, at *4 n.3 (D. Neb. Dec. 6, 2001) (although admissible, expert's opinion "could hardly be afforded much weight," given that it was prepared for litigation, "ha[d] not been subjected to rigorous peer review," and "ha[d] not been published").

None of Plaintiffs' experts have made any attempt to publish or publicize their opinions, either before or after the start of this litigation. Plaintiffs defend this failure—and ask the Court to prohibit Defendants from even mentioning it during trial—by arguing that none of their experts

2

*could have* published or publicized their opinions.  As Plaintiffs tell it, *all* of their experts' opinions are based on protected documents or information, which means they all were prohibited by the protective order (PTO 12) from being published.  Pls.' Mot. at 2, 4.

But Plaintiffs' sweeping assertion is simply not true.  To the contrary, at least two of their experts—Dr. Joachim H. Ix and Dr. Peter G. Liechty, who is on Plaintiffs' "will call" list—did not rely on a single protected document in formulating their opinions.  *See* Ix Rep. at 32–35 (Doc. 5527, Exh. 6); Liechty Rep. (Doc. 5524, Exh. 8).  Another, Dr. Frank W. Smart (one of Plaintiffs' "will call" experts), testified that his limited citation to protected documents was only for context and to corroborate opinions he had already formulated from non-protected sources prior to becoming an expert in the litigation.  *See* Smart Rep., Appendix B (Doc. 5532, Exh. 18); Smart Dep. at 29–33, 243–44 (Exh. 1).[1]  And at least the following opinions of Plaintiffs' experts are based on publicly-available documents and information, such as Xarelto's package insert, published data, articles, or studies, or public FDA documents:

- that the approved 20 mg daily dose for AFib patients is "too high," *see* Smart Dep. at 29–30, 36, 202, 239–40, 243–45, 263–64 (based on published article);
- that Xarelto should be dosed twice daily rather than once daily, *see id.* at 31–32, 254–55 (based on his experience; "there is no publication, no nothing else");
- that Xarelto has a narrow therapeutic window, *see id.* at 234–35 (based on published article);

---

[1] Admittedly, one of Plaintiffs' "will call" experts, Dr. Suzanne Parisian, relies on certain, cherry-picked protected documents to narrate what she claims is the history of Xarelto's development and FDA approval, and to support her opinions regarding Defendants' and FDA's knowledge, motive, intent, or state of mind.  As Defendants made clear in their Motion to Exclude Certain Opinions of Dr. Parisian (*see* Doc. 5112), Dr. Parisian's one-sided, biased recitation of Xarelto's regulatory history based only on documents produced in this case is not the appropriate subject of expert testimony, nor is her attempt to divine Defendants' and FDA's knowledge and intent.  Nevertheless, Defendants concede that to the extent any of Dr. Parisian's "expert" opinions are based principally upon protected documents, then they cannot be published.  However, Dr. Parisian also purports to offer several opinions that relate to medical issues, such as her opinion that patients face an increased risk of major bleeding because Xarelto's label does not instruct physicians to monitor Xarelto-related anticoagulation, *see* Parisian Rep. at 9, § III.A (Doc. 5521, Exh. 1), or her opinion that Xarelto is unreasonably dangerous because it is dosed once-daily rather than twice-daily, *see id.* at 14, § III.M.  Such opinions are not based on protected documents and thus could have been published or publicized without violating the protective order.

- that Xarelto is a "highly variable drug," *see id.* at 235 (based on package insert);

- that physicians should be instructed to use PT- or some other monitoring tests to measure Xarelto-related anticoagulation and to adjust patients' doses (or discontinue Xarelto) accordingly, *see* Ix Dep. at 46–53, 169, 176–77 (Exh. 2) *and* Ix Rep. at 32–35 (based on published studies, articles, and FDA documents); Cerri Rep., Appendix B (Doc. 5524, Exh. 9), Cerri Dep., Ex. 1 (Exh. 3), *and* Cerri Dep. at 15–16, 26–27 (Exh. 4) (based on published articles);

- that Xarelto is unreasonably dangerous because it does not have a reversal agent, *see* Cerri Rep., Appendix B *and* Cerri Dep. at 15–16, 26–27, Ex. 1 (based on published articles);

- that Xarelto is unreasonably dangerous in patients with creatinine clearance of less than 30 mL/min, *see* Ix. Dep. at 166, 169 (based on published studies and articles);

- that Xarelto has the highest risk of major bleeding among NOACs and is the "worst in class," *see* Leissinger Rep. at 16–17 (Doc. 5524, Exh. 11) (based on published studies and articles); Smart Dep. at 131–33, 152–53, 203, 270–71 (based on published articles);

- that Xarelto's label should have advised physicians of problems with the medical device used to measure warfarin patient's coagulation parameters in the ROCKET AF trial, *see* Smart Rep. at 6–7 (based on published articles and publicly-available FDA documents);

- that Xarelto's label should have included information regarding the bleeding rates for U.S. participants in the ROCKET AF study before September 2015, *see id.* (based on published articles and publicly-available FDA documents an);

- that Xarelto should have included a "black box" warning that Xarelto carries a risk of bleeding, *see* Smart Dep. at 197–99, 251–52 (based on his experience, publicly-available data and studies, and published articles).[2]

To put an even finer point on it, Plaintiffs' principal failure-to-warn theory is that Xarelto's label should have instructed physicians to use a PT or other test to assess patients' response to Xarelto. Plaintiffs' experts offer opinions in support of that theory based on (1) data that is in the published literature (including data from papers written by Defendants' own employees), (2) publicly available FDA documents, and (3) various post-marketing studies. *See, e.g.*, *Boudreaux*

---

[2] Plaintiffs have since abandoned many of these liability theories—and thus, by not responding to Defendants' *Daubert* motion to exclude them, have waived the ability to present expert testimony in support of them, *see* Defs.' Mot. To Dismiss and Exclude Pls.' Abandoned Theories (Doc. 6485-1), at 7–8—but these opinions highlight the sweeping nature of Plaintiffs' assertion that their experts were precluded from publishing or publicizing their opinions.

Trial Tr. 4/25/2017 at 257:5–262:7 (Exh. 5) (Dr. Kessler) (offering PT opinion based on company data that Dr. Mueck published in the public literature); *id.* at 262:8–267:2 (Dr. Kessler) (same, based on publicly available FDA advisory committee briefing document).  Nothing in the protective order prevented Plaintiffs' experts from sharing those opinions with the rest of the scientific community, and it certainly did not prevent Plaintiffs' experts from developing their own data from the publicly available sources.  The fact that Plaintiffs' experts have not even attempted to do so, before or after the start of this litigation—and thus have not even attempted to subject their opinions to the rigors of peer review and public scrutiny—is certainly probative of the reliability and weight of those opinions.  It is also probative of Plaintiffs' experts' credibility, that they have not shared their revelations, drawn from public sources, with the rest of the scientific community.

Plaintiffs have no basis to prevent Defendants from exploring Plaintiffs' experts' failure to publish their theories in cross examination and pointing it out to the jury in argument.  The Court should deny Plaintiffs' motion.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion *in Limine* No. 30.

Respectfully submitted,

IRWIN FRITCHIE URQUHART & MOORE LLC

By: /s/ *James B. Irwin*
James B. Irwin
Kim E. Moore
Irwin Fritchie Urquhart & Moore LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
jirwin@irwinllc.com


DRINKER BIDDLE & REATH LLP

By: /s/ *Susan M. Sharko*
Susan M. Sharko
Drinker Biddle & Reath LLP
600 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
susan.sharko@dbr.com

Rodney M. Hudson
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
Telephone: (415) 591-7500
Rodney.hudson@dbr.com

Chanda A. Miller
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2700
Chanda.Miller@dbr.com

*Attorneys for Defendants Janssen Pharmaceuticals, Inc. and Janssen Research & Development, LLC*

WILKINSON WALSH + ESKOVITZ LLP

By: /s/ *Beth A. Wilkinson*
Beth A. Wilkinson
Jennifer L. Saulino
Jeremy Barber
WILKINSON WALSH + ESKOVITZ LLP
1900 M. Street NW, Suite 800
Washington, DC 20036
Telephone: (202) 847-4000
bwilkinson@wilkinsonwalsh.com
jsaulino@wilkinsonwalsh.com
jbarber@wilkinsonwalsh.com


NELSON MULLINS RILEY & SCARBOROUGH LLP

By: */s/ David E. Dukes*
David E. Dukes
J. Mark Jones
NELSON MULLINS RILEY & SCARBOROUGH LLP
1320 Main Street, 17th Floor
Columbia, SC 29201
Telephone: (803) 799-2000
David.Dukes@nelsonmullins.com
Mark.Jones@nelsonmullins.com


ARNOLD & PORTER KAYE SCHOLER LLP

By: /s/ *Andrew K. Solow*
Andrew K. Solow
Steven Glickstein
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8485
andrew.solow@apks.com
steven.glickstein@apks.com


William Hoffman
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
william.hoffman@apks.com

6

BRADLEY ARANT BOULT CUMMINGS LLP

By: */s/ Kevin C. Newsom*
Kevin C. Newsom
Lindsey C Boney IV
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place, 1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8803
knewsom@bradley.com
lboney@bradley.com

CHAFFE MCCALL L.L.P.
By: /s/ *John F. Olinde*
John F. Olinde
CHAFFE MCCALL L.L.P.
1100 Poydras Street, Suite 2300
New Orleans, LA 70163
Telephone: (504) 585-7241
olinde@chaffe.com

*Attorneys for Bayer HealthCare Pharmaceuticals Inc. and Bayer Pharma AG*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 23rd day of May, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs by operation of the court's electronic filing system.

/s/   John F. Olinde