# EXHIBIT 4

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

```
 1               UNITED STATES DISTRICT COURT
 2               EASTERN DISTRICT OF LOUISIANA
 3
 4   IN RE:  XARELTO (RIVAROXABAN)   MDL No. 2592
     PRODUCTS LIABILITY LITIGATION
 5                                        SECTION L
 6   _____   JUDGE FALLON
 7   THIS DOCUMENT RELATES TO:     MAG. JUDGE NORTH
 8   JOSEPH ORR, JR., AS LAWFUL
     SURVIVING SPOUSE OF SHARYN ORR
 9
     Case No. 2:15-CV-03708
10
11
12     PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW
13
14                    NOVEMBER 28, 2016
15
16                         - - -
17          Videotaped deposition of GIANLUCA CERRI,
     M.D., FACEP, FAAEM, held at Perry Dampf Dispute
18   Solutions, 721 Government Street, Baton Rouge,
     Louisiana, commencing at 9:58 a.m., on the above
19   date, before Leslie B. Doyle, Certified Court
     Reporter (#93096), Registered Professional Reporter,
20   Certified Realtime Reporter.
21
22                         - - -
23              GOLKOW TECHNOLOGIES, INC.
24         877.370.3377 ph|917.591.5672 fax
25                   deps@golkow.com
```

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

```
 1   A P P E A R A N C E S:
 2
 3   COUNSEL FOR THE PLAINTIFF:
 4       EMILY C. JEFFCOTT, ESQ.
             Email:  Ejeffcott@thelambertfirm.com
 5           Phone:  (504) 581-1750
         THE LAMBERT FIRM
 6       701 MAGAZINE STREET
         NEW ORLEANS, LOUISIANA  70130
 7
 8   - AND -
 9       ROGER C. DENTON, ESQ.
             Email:  Rdenton@uselaws.com
10           Phone:  (314) 621-6115
         SCHLICHTER, BOGARD & DENTON, LLP
11       100 S. 4TH STREET, SUITE 900
         ST. LOUIS, MISSOURI  63102
12
13   COUNSEL FOR THE JANSSEN DEFENDANTS:
14       JAMES B. IRWIN, ESQ.
             Email:  Jirwin@irwinllc.com
15       MEERA U. SOSSAMON, ESQ.
             Email:  Msossamon@irwinllc.com
16           Phone:  (504) 310-2100
         IRWIN, FRITCHIE, URQUHART & MOORE, LLC
17       400 POYDRAS STREET, SUITE 2700
         NEW ORLEANS, LOUISIANA  70130
18
19   COUNSEL FOR THE BAYER DEFENDANTS:
20       JEREMY S. BARBER, ESQ.
             Jbarber@wilkinsonwalsh.com
21       KIM CHANNICK, ESQ.
             Kchannick@wilkinsonwalsh.com
22           Phone:  (202) 847-4000
         1900 M STREET, NW, SUITE 800
23       WASHINGTON, D.C.  20036
24
25   ALSO PRESENT:  MELISSA BARDWELL, VIDEOGRAPHER
```

PROTECTED – SUBJECT TO FURTHER PROTECTIVE REVIEW

```
 1   article substantiate your opinion?
 2       A.   I would have to look, read the article.
 3       Q.   The second article, Kiraly, how does that
 4   substantiate your opinion?
 5       A.   That's an author.  I would have to read
 6   the article.
 7       Q.   And what about Raja, R-A-J-A; how does
 8   that substantiate --
 9       A.   Once again, that is an author.  I would
10   have to read the article.  I'd be glad to go one by
11   one and discuss them with you.
12       Q.   Well, looking at this list, can you single
13   out any article on this list that supports any of
14   the opinions that you wrote in your expert report?
15       A.   That is my expert medical opinion, which
16   is substantiated by other independent findings by
17   these authors.
18       Q.   Let me rephrase the question.
19       A.   Uh-huh.
20       Q.   You've rendered a number of opinions in
21   your expert report, correct?
22       A.   Uh-huh.
23       Q.   Is that correct?
24       A.   Yes, sir.
25       Q.   Can you tell me specifically which
```

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

```
 1    article, if any, on this list, Cerri #1, supports
 2    any of the specific opinions that you have rendered
 3    in your report?
 4         A.   I'm going to say it again, and I'll be
 5    glad to go through every single article in details.
 6    The articles support my personal expert medical
 7    opinion on the subject.  Does that make sense?
 8         Q.   Yes, but it doesn't answer my question.
 9    Okay?
10         A.   Could you rephrase the question?
11         Q.   Sure.  Tell me what one of your specific
12    opinions is.
13         A.   My -- one of my opinions is that Xarelto
14    is a bad drug.  It's a bad drug because there's no
15    laboratory assay that allows me or any other medical
16    emergency physician to measure, monitor, evaluate
17    the drug and, therefore, implement life-saving
18    measures, as well as the lack of a reversal agent.
19    That is my expert medical opinion.
20         Q.   And which one of these articles supports
21    that opinion?
22         A.   I would have to read the article in-depth.
23    You gave me names of authors.  There's several
24    authors per article.  Each article adds and
25    substantiates precisely what I'm saying, and this is
```

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

1       A.    Now, remember, the list is incomplete.
2   Well, the first one -- this is just -- again, I'm
3   just reading the title.  Looking at the title, I'm
4   letting you know whether it's more likely than not
5   that there's no testing available for Xarelto.
6   Okay?
7             First one, Emergency -- excuse me --
8   Emergency department cases where novel anticoagulant
9   testing would have been useful.  Seems to me that
10  probably, given the title, the inference is that a
11  useful testing is not available.
12            The second one, Management of hemorrhage
13  complicated by novel oral anticoagulant in the
14  emergency department:  Case report from the
15  Northwestern Emergency Medicine Residency.  I'll
16  have to read the report.  You can't tell that.
17            Emergency department management of
18  patients on novel oral anticoagulants.  Once again,
19  I'd have to, at minimum, read the abstract.
20            Novel oral anticoagulants in the emergency
21  room.  I'd have to read the abstract.
22            Okay.  Coagulation assessment with new
23  generation oral anticoagulants.  Again, I'd have to
24  read the abstract, but this implies coagulation
25  assessment, and there's none for Xarelto.

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

 1             Measurement and reversal of the direct
 2   oral anticoagulants.  Again, I'd have to read the
 3   abstract, but there's no way to reverse Xarelto.
 4             Reversal of anticoagulation and management
 5   of bleeding patients on anticoagulants.  Again, I'd
 6   have to read the abstract, but there's no reversal
 7   for Xarelto or monitoring.
 8             Okay.  Bleeding with direct oral
 9   anticoagulants versus warfarin:  Clinical
10   experience.  I'd have to read the abstract, but this
11   one, for sure, would elucidate that there is no such
12   thing such as PT/INR, which can be used to monitor,
13   measure and evaluate coagulation status with
14   Xarelto.
15             Management of bleeding with non-Vitamin K
16   antagonist oral anticoagulants in the era of
17   specific reversal agents.  Again, I'd have to read
18   the abstract, but, as you know, there is no specific
19   reversal for Xarelto to date.
20             Xarelto and intracranial hemorrhage after
21   mild traumatic brain injuries:  A dangerous
22   combination.  I'd have to read the abstracts.
23             Spontaneously reported hemorrhagic adverse
24   events associated with Xarelto.  Again, I'd have to
25   read the -- the abstract.

1        R E P O R T E R ' S   C E R T I F I C A T E

2              This transcript is valid only for a

3    transcript accompanied by my original signature and

4    original required seal on this page.

5              I, Leslie B. Doyle, Certified Court

6    Reporter (LA Certificate #93096), in and for the

7    State of Louisiana, as the officer before whom this

8    testimony was taken, do hereby certify that GIANLUCA

9    CERRI, M.D., FACEP, FAAEM, after having been duly

10   sworn by me upon authority of R.S. 37:2554, did

11   testify as herein before set forth in the foregoing

12   314 pages; that this testimony was reported by me in

13   the stenotype reporting method, was prepared and

14   transcribed by me or under my personal direction and

15   supervision, and is a true and correct transcript to

16   the best of my ability and understanding; that the

17   transcript has been prepared in compliance with

18   transcript format guidelines required by statute or

19   by rules of the board, that I have acted in

20   compliance with the prohibition on contractual

21   relationships, as defined by Louisiana Code of Civil

22   Procedure Article 1434 and in rules and advisory

23   opinions of the board.

24             I further certify that I am not related to

25   counsel or to the parties herein, nor am I otherwise

PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW

1   interested in the outcome of this matter.
2           Signed this ___ day of _____, 2016.
3
4
5           _____
6           LESLIE B. DOYLE, RPR, RMR, RDR
            Certified Court Reporter
7           LA Certificate #93096
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25