UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE ELDON E. FALLON |
| Joseph Orr, Jr., et al. v. Janssen et al. Case No. 2:15-cv-03708 | MAGISTRATE NORTH |

**DEFENDANTS' JOINT OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* NO. 35 "TO ADMIT EVIDENCE OF DEFENDANTS' STATEMENTS OUTSIDE THE UNITED STATES THAT DIRECTLY CONTRADICT THEIR POSITION THAT PT NEOPLASTIN IS NOT USEFUL AND DOES NOT WORK TO DETERMINE THE ANTICOAGULANT ACTIVITY OF XARELTO"**

Defendants hereby oppose Plaintiffs' Motion *in Limine* No. 35 "To Admit Evidence Of Defendants' Statements Outside The United States That Directly Contradict Their Position That PT Neoplastin Is Not Useful And Does Not Work To Determine The Anticoagulant Activity Of Xarelto." Doc. 6480 ("Pls.' Mot.").

Plaintiffs' motion seeks reconsideration of the Court's ruling in *Boudreaux* on Defendants' motion *in limine* to exclude evidence of foreign labeling and regulatory actions (Doc. 5954). Specifically, Defendants argued that such evidence is irrelevant and unduly prejudicial because the unique foreign regulatory standards and the bases for regulatory action in each jurisdiction differ, and thus have no bearing on the adequacy of Xarelto®'s labeling or its design. *Id.* at 2. This Court held that the evidence "is likely excludable under Federal Rules of Evidence 401 and 403," but reserved ruling on the issue "because context or rebuttal use may have to be considered." Order and Reasons (Apr. 18, 2017), at 13–14 (Doc. 6254). The Court's exclusion of this evidence in the *Boudreaux* trial was correct, and there is no reason to disturb that ruling.

1

Defendants' contention has always been that Neoplastin PT testing cannot be used in the way Plaintiffs suggest—*i.e.*, to provide clinically useful results that can be used to determine whether or not a particular patient should use Xarelto. Moreover, and significantly, none of the foreign labels Plaintiffs now seek to introduce supports their theory that Neoplastin PT testing can or should be used as a safety test to identify individuals at a high risk of bleeding; in fact, the language of those labels supports Defendants' position. Accordingly, there is no reason for the Court to reconsider its ruling in *Boudreaux* that evidence of foreign labeling or regulatory decisions is inadmissible.

## ARGUMENT

**I.     Evidence of foreign labeling and regulatory actions regarding Xarelto should be excluded because it is irrelevant.**

As explained in Defendants' earlier Motion *In Limine* To Exclude Evidence Of Foreign Labeling And Regulatory Actions (Doc. 5954), such evidence is irrelevant because it does not bear on the adequacy of Xarelto's labeling or design as a matter of U.S. law and FDA's own unique regulatory standards. *See, e.g.*, *McDowell v. Eli Lilly & Co.*, 13 Civ. 3786, 2015 WL 845720, at *5 (S.D.N.Y. Feb. 26, 2015) ("The mere existence of a differently structured and written European label does not establish that the U.S. label is insufficient, misleading, or legally inadequate, nor is foreign regulatory action even appropriate as a subject of expert testimony in pharmaceutical cases."); *In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396, 488 (S.D.N.Y. 2016) ("Because this litigation is based on U.S. law, and because evidence regarding the FDA will be admitted, the actions taken by foreign regulatory agencies are not particularly probative and likely will be confusing."); *In re Viagra Prods. Liab. Litig.*, 658 F. Supp. 2d 950, 965–66 (D. Minn. 2009) ("[A]ny discussion of foreign regulatory actions is irrelevant . . . and should therefore be excluded."); *see also Jones v. Lederle Labs.*, 785 F. Supp. 1123, 1126–27 (E.D.N.Y. 1992)

(because of less stringent testing standards in Japan, testimony regarding a vaccine's use in Japan provided "no acceptable evidence" to support plaintiffs' claim that a safer vaccine existed).

That point is amply demonstrated by the fact that FDA expressly rejected proposed Neoplastin PT language that is similar to the language contained in the Canadian, European Union, and New Zealand labels. And it is further demonstrated by the fact that FDA has yet to approve or clear an anti-Factor Xa assay for use with patients in the U.S., even though such an assay is approved in other countries.

In any event, the foreign labels that Plaintiffs seek to introduce do not support their theory—namely, that if a Neoplastin PT test, taken at some undefined time after initiation of therapy, shows that a patient's PT is above a certain value (which Plaintiffs also do not define), then the patient is at an elevated risk for bleeding and should be taken off Xarelto. *See* Pls.' Opp. to Defs.' Dosing & Monitoring Preemption MSJ (Doc. 5531), at 2. *None* of the foreign Xarelto labeling that Plaintiffs seek to introduce—from Canada, the European Union, or New Zealand— states that a Neoplastin PT test should be used for that purpose. Although those labels do provide information regarding the correlation between PT and Xarelto plasma concentrations, *none* describes what Plaintiffs argue here: a correlation between PT and *bleeding risk*, much less instructs doctors to make clinical decisions based on such a test. For example, the Canadian label states that "[t]he prothrombin time (PT), measured in seconds, is influenced by XARELTO in a dose-dependent way with a close correlation to plasma concentration if the Neoplastin® reagent is used," and for "patients who are bleeding . . . may be useful to assist in determining an excess of anticoagulant activity." Canadian Product Monograph (PX 5767696), at 9. The European Union label provides similar information: "Prothrombin time (PT) is influenced by rivaroxaban in a dose dependent way with a close correlation to plasma concentrations (r value = 0.98) if Neoplastin is

used for the assay." EU SmPC (PX 5767841), § 5.1. And the New Zealand label tracks the European Union label language. *See* New Zealand Data Sheet (PX 5768761), at 19.

The Court correctly excluded evidence of foreign labels and regulatory decisions during the *Boudreaux* trial, and Plaintiffs' request for reconsideration should be rejected.

In what can only be described as a desperate attempt to convince the Court to change its position, Plaintiffs have resorted to incendiary claims that Defendants' counsel somehow misled the Court and the jury during the *Boudreaux* trial. Plaintiffs' attacks are both improper and demonstrably untrue. Each of Plaintiffs' various arguments fails.

**1.** Plaintiffs first assert that the *Boudreaux* jury was deprived of "truthful" and "accurate" evidence about the usefulness of Neoplastin PT testing. Pls.' Mot. at 1. That is simply not true. Perhaps most importantly, Defendants introduced into evidence a document showing that, before Xarelto's U.S. approval, Janssen proposed labeling language regarding PT testing. Specifically, Janssen proposed that the Xarelto label inform physicians that "[t]he relationship between PT and rivaroxaban plasma concentration is linear and closely correlated," and that when "considered necessary," Neoplastin PT could be used to "assess[] the pharmacodynamic effect of rivaroxaban." DX 5548, at 29. As noted above, FDA struck this proposed language.

Moreover, Defendants' counsel acknowledged during the *Boudreaux* closing arguments that Neoplastin PT testing "was part of the ROCKET trial," and that "[t]hey found a correlation, but they found that it wouldn't predict in an individual patient." *Boudreaux* Tr. at 1590:4–8.[1] Those statements are consistent with testimony presented at trial regarding PT testing. Specifically, a defense employee called by Plaintiffs, Dr. Gary Peters, explained that the pharmacodynamics section of the label "does mention PT assay," but he also explained that

---

[1] Cited pages from the *Boudreaux* trial transcript are attached as Exhibit 1.

4

"because the data from our studies showed that it wouldn't be predictive in a meaningful way for bleeding risk, there's no statement . . . about it being able to predict bleeding risk." *Id.* at 1074:16–22.  Similarly, Defendants' expert witness, Dr. Colleen Johnson, testified about FDA's pharmacology review for Xarelto, and explained that the data showed a "correlation" between PT and bleeding. *Id.* at 1232:10–1239:16.  She further testified, however, that she believes the PT test has limited utility because it does not account for "a lot of other factors that play into whether or not you bleed."  *Id.*  Accordingly, the facts demonstrate that contrary to Plaintiffs' baseless assertions, Defendants never sought to hide "truthful" information about Neoplastin PT testing.

    **2.**    Plaintiffs also incorrectly assert that Defendants presented a "false narrative" in *Boudreaux* about the usefulness of PT testing.  Pls.' Mot. at 1.  Indeed, Plaintiffs go so far as to inappropriately accuse Defendants' counsel of "eliciting false testimony about PT Neoplastin," of "being less than honest with the jury" and "dishonest to physicians," and telling "half-truths." *Id.* at 2–3.  Plaintiffs have taken various statements out of context in order to suggest that Defendants have argued that PT testing is not useful for any purpose.  As explained above, Defendants have never asserted that PT testing is totally useless; nor would such a position make sense given that Defendants used PT testing in their own clinical trials to evaluate its scientific and medical usefulness.  Defendants' position has always been—after assessing the clinical-trial data—that PT testing is not *clinically useful* as a safety test to identify individuals who are at a higher risk of bleeding.

    Defense counsel's statements during the *Boudreaux* closing arguments were entirely consistent with that position.  Plaintiffs are correct that defense counsel argued that "outside of this courtroom, nobody thinks this test works.  They don't think it helps." *Boudreaux* Tr. at

5

1600:9–11. But Plaintiffs have misleadingly omitted the balance of counsel's argument, which explained *why* physicians and scientists do not think PT testing helps. Counsel explained,

> Dr. Johnson was our expert, looked at all the evidence and said, Xarelto is safe and effective and you do not need – or you should not use a PT test.
>
> Why? She said it doesn't predict bleeding risk in individual patients. Now, when you hear plaintiffs, they just keep saying, well, it predicts bleeding risks. Her point is, "I have to know that it's going to be predictive of a patient, of an individual patient." She said it wouldn't be helpful for her to treat patients using that and it could lead to harmful circumstances, and she wasn't the only one who said it.

*Boudreaux* Tr. at 1602:5–16. Counsel's argument is consistent with the testimony presented at trial. Plaintiffs' counsel asked Dr. Johnson whether she believed Neoplastin PT was "worthless," and she responded:

> I didn't say that either. What I said was that I do not use it as a way of either giving me an idea whether someone is at risk of bleeding, or giving any information about dosing; that if you want to draw a PT on a patient who is bleeding – as was done for Mr. Boudreaux – I would recommend that. You don't know what other factors come into play.

*Boudreaux* Tr. at 1274:19–1275:1. *See also id.* at 1410:15–17 (testimony of Dr. Steven Boniol) ("I've seen information that shows some correlation in certain instances where PT may work out, but the wealth of data clearly shows that it doesn't . . . .").

**3.** Plaintiffs next assert that foreign labels and regulatory decisions are necessary to establish Defendants' knowledge and state of mind. Plaintiffs argue that evidence of Defendants' "knowledge about PT Neoplastin testing is admissible" regarding Defendants' knowledge and state of mind. Pls.' Mot. at 6. Defendants agree. That is why Defendants have never sought to exclude otherwise relevant scientific information generated outside the United States, evidence of otherwise relevant conduct of Defendants' non-U.S. employees, or otherwise relevant non-U.S. documents. *See* Doc. 5954, at 1. That is also why Defendants introduced the FDA strikethrough document in *Boudreaux*, which shows the language Janssen proposed to FDA about PT testing.

6

Plaintiffs, however, have filed a separate motion *in limine* seeking to exclude the FDA strikethrough document on the ground that it is irrelevant and unduly prejudicial, Doc. 6472, while simultaneously arguing in the present motion that statements in foreign labels are relevant. Through these separate motions, Plaintiffs seek to present a highly misleading theory that Defendants "made a conscious choice to deprive United States patients and physicians of the instructions they needed to safely use Xarelto, even as such information was being provided to patients in Canada and elsewhere." Pls.' Mot. at 8. Such blatant cherry picking of evidence in order to incorrectly suggest that Defendants were "hiding" information from U.S. regulators and physicians should not be allowed.

**4.** Plaintiffs finally argue that they were prejudiced because they could not cross-examine Dr. Johnson with an article they contend is "about the numerous international medical societies that in fact recommend PT in their medical guidelines as a reliable screening test in patients taking an anti-Factor Xa inhibitor." Pls.' Mot. at 2. The Lippi article to which Plaintiffs refer was properly excluded because the guidelines and recommendations discussed therein are based on foreign regulatory rules that do not apply in the U.S. and have no relevance here. Specifically, Table 3, on which Plaintiffs rely in their motion, clearly refers to "national and international guidelines." *See* Doc. 6480-4, at 8. The pertinent U.S. guideline, promulgated by the American College of Chest Physicians, unequivocally rejects the use of PT. *Id.* at 9 ("Interestingly, the American College of Chest Physicians (ACCP) and an Australian consensus document ruled out the use of the PT for assessing direct oral FXa inhibitors."). That guideline specifies, "Neither the PT (expressed either in seconds or as a ratio) nor the aPTT should be used to monitor the anticoagulant effect of rivaroxaban." ACCP Guidelines (Exh. 2), at 31. Accordingly, any guidelines and recommendations discussed in the Lippi article that are based on

different standards and regulatory rules are irrelevant to whether the Xarelto label was adequate as a matter of U.S. law.

* * *

In sum, foreign labeling evidence is irrelevant to this case and should be excluded at trial, as the Court held in the context of the *Boudreaux* trial.

## II.   Evidence of foreign labeling and regulatory actions regarding Xarelto should be excluded because it is unduly prejudicial.

Even if evidence concerning foreign regulatory actions was relevant (and it is not), it should nonetheless be excluded under Rule 403. Admission of the evidence would be unfairly prejudicial, would confuse the issues and mislead the jury, and would waste trial time on collateral issues by leading to a series of mini-trials necessary to determine the basis of each foreign regulatory action and label history, as well as the applicable foreign regulatory standards. *See In re Seroquel Prods. Liab. Litig*, 601 F. Supp. 2d 1313, 1318 (M.D. Fla. 2009) (holding that even "[a]ccepting for argument's sake that such evidence [concerning foreign regulatory actions] is relevant regarding notice and scienter, the fact remains that its probative value is greatly overmatched by the jury confusion, waste of time, and unfair prejudice that would result if the Court were to allow Plaintiffs to introduce this evidence during their main case"); *In re Viagra Prods. Liab. Litig.*, 658 F. Supp. 2d at 965–66 (holding that "to the extent that foreign regulatory information is relevant, 'its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury"); *In re Baycol Prods. Liab. Litig.*, 532 F. Supp. 2d 1029, 1054 (D. Minn. 2007) ("allowing the admission of evidence of foreign regulatory actions, in a case that is governed by domestic law, would likely cause jury confusion").

For example, it does not follow—as a jury might improperly infer from Plaintiffs' evidence—that each regulatory agency would disclose laboratory testing on a product's label, even

assuming the testing was equally available in each jurisdiction. And it does not follow, as a jury might improperly infer, that the disclosures on foreign labeling regarding a Neoplastin PT test should be mirrored on FDA-approved labeling for use with patients in the United States. Inviting the jury to draw that inference would be unduly prejudicial to Defendants, risk jury confusion, and waste trial time.

Similarly, as explained above, Diagnostica Stago has tried to gain FDA approval for an anti-Factor Xa assay in the United States and has thus far been unsuccessful, so there is no commercially available Xarelto-specific anti-Factor Xa assay for use with patients in the United States. Thus, there is no basis for Defendants or FDA to recommend its use for any purpose to American doctors. There are health-authority approved anti-Factor Xa assays on the market in Canada and the European Union. Thus, the labeling in those countries provides information to doctors about use of those assays. Allowing Plaintiffs to introduce evidence concerning foreign labeling and regulatory actions regarding the use of an anti-Factor Xa assay when the assay has not been approved by FDA, and is not commercially available in the United States, would be unduly prejudicial to Defendants, confuse the jury, and waste trial time.

Indeed, the possibility of juror confusion is not just theoretical—it is likely. In an effort to support their anti-Factor Xa theory with language from the Canadian label, Plaintiffs have conflated the experimental *Factor Xa inhibition* biomarker assay that Defendants used as a research tool in their clinical trials to assess the *amount of Factor Xa* in subjects' blood, with the *anti-Factor Xa* assay that has since been developed by third parties outside the U.S. to assess *rivaroxaban levels* in patients' blood. *See, e.g.*, Pls.' LPLA Opp. at 6 & n.14 (Doc. 5524); *see also* Defs.' Dosing & Monitoring Preemption Reply at 4 n.12 (Doc. 5677). These are two different

9

assays with different results and purposes, and the biomarker assay is not what Plaintiffs want. There is no reason to allow that confusion to affect the jury.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion *in Limine* No. 35.

Respectfully submitted,

| | |
|---|---|
| IRWIN FRITCHIE URQUHART & MOORE LLC | WILKINSON WALSH + ESKOVITZ LLP |
| By: /s/ *James B. Irwin* <br> James B. Irwin <br> Kim E. Moore <br> Irwin Fritchie Urquhart & Moore LLC <br> 400 Poydras Street, Suite 2700 <br> New Orleans, LA 70130 <br> Telephone: (504) 310-2100 <br> jirwin@irwinllc.com | By: /s/ *Beth A. Wilkinson* <br> Beth A. Wilkinson <br> Jennifer L. Saulino <br> Jeremy Barber <br> WILKINSON WALSH + ESKOVITZ LLP <br> 1900 M. Street NW, Suite 800 <br> Washington, DC 20036 <br> Telephone: (202) 847-4000 <br> bwilkinson@wilkinsonwalsh.com <br> jsaulino@wilkinsonwalsh.com <br> jbarber@wilkinsonwalsh.com |


---

Respectfully submitted,

IRWIN FRITCHIE URQUHART & MOORE LLC

By: /s/ *James B. Irwin*
James B. Irwin
Kim E. Moore
Irwin Fritchie Urquhart & Moore LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
jirwin@irwinllc.com

DRINKER BIDDLE & REATH LLP

By: /s/ *Susan M. Sharko*
Susan M. Sharko
Drinker Biddle & Reath LLP
600 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
susan.sharko@dbr.com

Rodney M. Hudson
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
Telephone: (415) 591-7500
Rodney.hudson@dbr.com

Chanda A. Miller
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2700
Chanda.Miller@dbr.com

*Attorneys for Defendants Janssen Pharmaceuticals, Inc. and Janssen Research & Development, LLC*

WILKINSON WALSH + ESKOVITZ LLP

By: /s/ *Beth A. Wilkinson*
Beth A. Wilkinson
Jennifer L. Saulino
Jeremy Barber
WILKINSON WALSH + ESKOVITZ LLP
1900 M. Street NW, Suite 800
Washington, DC 20036
Telephone: (202) 847-4000
bwilkinson@wilkinsonwalsh.com
jsaulino@wilkinsonwalsh.com
jbarber@wilkinsonwalsh.com

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: /s/ *David E. Dukes*
David E. Dukes
J. Mark Jones
NELSON MULLINS RILEY & SCARBOROUGH LLP
1320 Main Street, 17th Floor
Columbia, SC 29201
Telephone: (803) 799-2000
David.Dukes@nelsonmullins.com
Mark.Jones@nelsonmullins.com

ARNOLD & PORTER KAYE SCHOLER LLP

By: /s/ *Andrew K. Solow*
Andrew K. Solow
Steven Glickstein
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8485
andrew.solow@apks.com
steven.glickstein@apks.com

William Hoffman
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
william.hoffman@apks.com

BRADLEY ARANT BOULT CUMMINGS LLP

By: */s/ Kevin C. Newsom*
Kevin C. Newsom
Lindsey C Boney IV
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place, 1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8803
knewsom@bradley.com
lboney@bradley.com


CHAFFE MCCALL L.L.P.
By: */s/ John F. Olinde*
John F. Olinde
CHAFFE MCCALL L.L.P.
1100 Poydras Street, Suite 2300
New Orleans, LA 70163
Telephone: (504) 585-7241
olinde@chaffe.com


*Attorneys for Bayer HealthCare Pharmaceuticals Inc. and Bayer Pharma AG*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 23rd day of May, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs by operation of the court's electronic filing system.

*/s/      John F. Olinde*