**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE:  XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE ELDON E. FALLON |
| Joseph Orr, Jr., et al. v. Janssen et al. Case No. 2:15-cv-03708 | MAGISTRATE NORTH |

**DEFENDANTS' JOINT OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* NO. 37 "TO PRECLUDE THE FALSE AND MISLEADING ARGUMENT THAT A PROTHROMBIN TIME (PT) TEST MUST BE SPECIFICALLY APPROVED BY THE FDA FOR USE WITH XARELTO"**

Defendants hereby oppose Plaintiffs' Motion *in Limine* No. 37 "To Preclude the False and Misleading Argument That a Prothrombin Time (PT) Test Must Be Specifically Approved by the FDA for Use with Xarelto." *See* Doc. 6492.

Plaintiffs ask the Court to exclude any argument or evidence that the PT test "has not been cleared or approved to evaluate the anticoagulation status of patients on Xarelto," because such evidence is "without factual or legal basis." Pls.' Mot. at 1. Plaintiffs further (or, perhaps, instead) request that the Court preclude the parties from arguing that "a PT reagent must be specifically approved by the FDA for use with Xarelto." *Id.* at 5. Neither contention has merit. Contrary to Plaintiffs' assertion (and, in fact, as their own experts have conceded), FDA has never approved a PT test for use with Xarelto®. Furthermore, the governing regulations are clear that Defendants could not have unilaterally recommended that Xarelto be used in conjunction with the specific reagent Plaintiffs advocate here, Neoplastin PT, without advance agency approval.

The evidence is that the Neoplastin PT test that Plaintiffs allege Defendants should have instructed physicians to use does not state that it can reliably be used with a Factor Xa inhibitor such as Xarelto. Rather, the FDA-approved labeling for Neoplastin states that it is approved for

1

use with different types of anticoagulant medicines that are not at issue here.  The jury in this case will be asked to decide whether a reasonable manufacturer would have recommended in Xarelto's label that physicians use a PT test "off-label" in a manner that has not been approved by FDA and whether the labeling for Xarelto was inadequate.  Evidence and argument related to the approved uses of Neoplastin PT and FDA regulations is relevant and admissible, and the Court should therefore deny Plaintiffs' motion.

## ARGUMENT

Plaintiffs request that the Court both (1) exclude evidence that a "universal PT test . . . has not been cleared or approved to evaluate the anticoagulation status of patients on Xarelto" (Pls.' Mot. at 1), and (2) prohibit argument "that a PT reagent must be specifically approved by the FDA for use with Xarelto" (*id.* at 5).  But, as explained below, FDA has ***not*** approved any PT test for use with Xarelto, and Defendants are entitled to present evidence that they acted reasonably and that a reasonable manufacturer would not have recommended that Xarelto be used in conjunction with such a test without first gaining agency approval.  Evidence on these points—including FDA's prior rejection of proposed labeling related to PT testing as set forth in Defendants' Opposition to Plaintiffs' Motion *in Limine* No. 33—is undoubtedly relevant to the ultimate questions whether Xarelto's label is adequate and whether Plaintiffs' proposed labeling would have altered any treatment decisions.

## I.    FDA has not approved Neoplastin® or any other PT test for use with Xarelto.

Plaintiffs first assert that Defendants should not be allowed to argue that a "universal PT test . . . has not been cleared or approved to evaluate the anticoagulation status of patients on Xarelto."  *Id.* at 1.  But that is indisputably the case.  FDA has never approved any PT-monitoring assay or other similar test for use with Xarelto—a fact that Plaintiffs' experts have uniformly

acknowledged.[1]   So  too  has  FDA:  "Importantly,  the  DOAC  drugs  were  approved  without  a requirement  for  monitoring.   So  currently,  manufacturers  are  developing  devices  to  assess  the effect  or  concentration  of  direct  oral  anticoagulants.   *There  are  currently  no  cleared  or  approved devices  that  measure  that.*"   *See*  FDA:  Center  for  Devices  and  Radiological  Health,  Transcript,  *In Vitro  Diagnostic  Testing  for  Direct  Oral  Anticoagulants*,  at  9  (Oct.  26,  2015)  (Lea  Carrington, Director,  Division  of  Immunology  and  Hematology  Devices)  (emphasis  added)  (Doc.  5109-16).

Despite  FDA's  statements  and  their  own  experts'  concessions,  Plaintiffs  now  assert  that "FDA  does  not  approve  a  generic  lab  test,  like  PT,  to  be  used  with  one  specific  anticoagulant  and not  another."   Pls.'  Mot.  at  3.   But  diagnostic  tests  are  often  cleared  to  assess  coagulation  response for  a  specific  drug.   For  example,  FDA  cleared  the  Xprecia  Stride  Coagulation  System  (K151964) to  provide  INR  based  on  a  prothrombin  time  response  for  the  monitoring  of  oral  anticoagulant therapy  with  warfarin.   *See*  Xprecia  Stride  Coagulation  System  Approval  Letter  and  510(k) Summary  (Exh.  1).   More  to  the  point,  the  same  is  true  of  the  specific  reagent  at  issue  here, Neoplastin.   Plaintiffs  assert  that  Neoplastin  is  "FDA-approved  and  commercially  available"  and can  be  used  as  a  coagulation  screening  test  with  Xarelto  (Pls.'  Mot.  at  3–4),  but  this  is  only  half-true:  Neoplastin  is  "FDA-approved,"  but  ***not***  for  use  with  Xarelto.   To  the  contrary,  FDA  cleared Neoplastin  as  a  Class  II  medical  device  for  use  as  a  "general  screening  procedure  .  .  .  to  monitor patients  receiving  *coumarin*  [*i.e.*,  warfarin]  therapy."[2]   21  C.F.R.  §  864.7750(a)  (emphasis  added).

---

[1] *See, e.g.*, Rinder Dep. at 247–49 (Doc. 5109, Exh. 27); Plunkett Dep. at 403–04 (Doc. 5109, Exh. 28); Leissinger Generic Dep. (Nov. 15, 2016) at 184–85 (Doc. 5109, Exh. 29); Gosselin Dep. at 305–07 (Doc. 5109, Exh. 30); Cerri Dep. at 147, 268 (Doc. 5109, Exh. 25); Bussey Dep. at 257 (Doc. 5109, Exh. 31); Ix Dep. at 316 (Doc. 5109, Exh. 32).

[2] The parties have already debated the particulars of this FDA classification regulation for Neoplastin.  At oral argument on the summary judgment motions in *Boudreaux*, one of Plaintiffs' counsel accused Defendants of misquoting the regulation: "Mr. Newsom failed to state the entire description which makes clear that [Neoplastin PT] is a general test.  Specifically the FDA states that PT is a general screening device for the detection of possible clotting factor deficiencies."  OA Tr. 164:9–12.  But, as Defendants subsequently explained—and Plaintiffs have never disputed—Plaintiffs' counsel truncated her quotation.  The regulation continues: ". . . in the extrinsic coagulation pathway, *which involves the reaction between coagulation factors III and VII, and to monitor patients receiving*

Neoplastin is not designed or approved to monitor anticoagulation attributable to Xarelto or any other Factor Xa inhibitor.  Indeed, consistent with FDA's classification regulation, Neoplastin's label makes clear that the device was designed and cleared for use in "monitoring vitamin K antagonist therapy" with "coumadin."  Neoplastin USPI § 2 (Doc. 6492-4).  Xarelto, in contrast to coumadin (warfarin), is not a vitamin K antagonist, but rather a direct Factor Xa inhibitor.  Importantly, the Neoplastin label explains in its "Limitations" section that the PT test is "insensitive" to certain "anti-Xa" levels.  *Id.* § 11.

This evidence—*i.e.*, that FDA has never approved the use of Neoplastin (or, indeed, any other PT reagent) in conjunction with Xarelto—is unquestionably relevant in this case.  To succeed on a failure-to-warn claim, Plaintiffs here must demonstrate that their proposed warning "would have changed the decision of the treating physician, *i.e.*, that but for the inadequate warning, the treating physician would not have used or prescribed the product."  *Ferguson v. Proctor & Gamble Pharm., Inc.*, 353 F. Supp. 2d 674, 679 (E.D. La. 2004).  The presence or absence of FDA approval for a proposed treatment or test to be used in a particular way is certainly relevant to this determination.

## II.    Defendants could not have recommended that Xarelto be used in conjunction with Neoplastin without first obtaining FDA approval.

Plaintiffs alternatively contend that the Court should exclude any argument "that a PT reagent must be specifically approved by the FDA for use with Xarelto."  Pls.' Mot. at 5.  But as Defendants have previously explained, FDA guidance prohibits Defendants from recommending that Xarelto be used in conjunction with a medical device that has not been approved for that purpose, and the agency's regulations in turn prevent Defendants from including an instruction

---

*coumarin therapy . . . .*"  21 C.F.R. § 864.7750(a) (emphasis added); *see also* Defs.' Post-Hearing Br. (Doc. 5904), at 2.

about such an unapproved use in the drug's label.  *See* Defs.' Dosing & Monitoring Preemption Br. (Doc. 5109-1), at 23–26; Defs.' Dosing & Monitoring Reply Br. (Doc. 5677-1), at 9–12.  This evidence is clearly relevant to whether a reasonable manufacturer would have adopted Plaintiffs' proposed label change in light of governing FDA regulations and FDA's approval of Neoplastin PT for use with specific anticoagulant medicines other than Xarelto.

In support of their argument that specific approval of a test is unnecessary, Plaintiffs point to Pradaxa's label, which references a *different* blood clotting test—*i.e.*, activated partial thromboplastin time (aPTT)—and a *different* reagent—Roche aPTT.  Pls.' Mot. at 3.  Plaintiffs assert that the Roche aPTT reagent referenced in the Pradaxa label "has never been specifically approved or cleared for use related to Pradaxa measurement."  *Id.*  According to Plaintiffs, this demonstrates that a reagent need not be specifically approved for use with a drug to be included in the labeling, but Plaintiffs' comparison is unpersuasive.  As Plaintiffs acknowledge, aPTT is a "general test" of coagulation status for all but a few coagulation factors.  *See* Pls.' Exh. 2, 510(k) Summary for Roche aPTT (Doc. 6492-3), at 3 (explaining that "APTT is useful as a screening test for coagulation function, since it is sensitive to all coagulation factors except VII, platelet factor III and calcium").  In contrast, a "prothrombin time test" is designed specifically for use in detecting coagulation parameters associated with "factors III and VII"—*not* Factor Xa, which Xarelto inhibits—and to "monitor patients receiving coumarin [*i.e.*, warfarin] therapy"—*not* Xarelto.  21 C.F.R. § 864.7750(a).  In other words, FDA has cleared PT with respect to different, specific coagulation factors and with respect to a specific drug.  aPTT, by contrast, is useful as a "general screening procedure."  Thus, to the extent Pradaxa's label references aPTT (which is, in Plaintiffs' view, a general test of coagulation status), that inclusion has no bearing on whether

Defendants could have instructed physicians to use PT—a test that has been specifically cleared for *different* coagulation factors and a *different* drug.

Furthermore, Plaintiffs assert that nothing "restricts the use of medical devices like laboratory tests currently on the market from being used for anticoagulation measurement or screening so long as such use comports with device labeling."  Pls.' Mot. at 3–4.  As an initial matter, as explained above, Plaintiffs' proposed use of Neoplastin here does not "comport[] with [its] device labeling," which refers only to its use in "measur[ing], as a whole, the activity of the coagulation factors II, V, VII, X, and I" and "monitoring vitamin K antagonist therapy" through "testing normal plasmas and coumadin-treated patient plasmas."  Neoplastin USPI § 2.  But Plaintiffs miss the point.  While it is true that physicians can exercise their medical judgment to *use* prescription medicines and medical devices "off-label," a manufacturer (as explained below) cannot *recommend* an off-label use of a product.

Because neither Neoplastin nor any other PT-monitoring assay has been approved by FDA for use in conjunction with Xarelto, under federal law any recommendation for such use would require advance FDA approval.  For starters, if Neoplastin's manufacturer were to "repurpose" the device for use with Xarelto—in addition to warfarin—it would need FDA approval.  *See* 21 C.F.R. § 807.81(a)(3)(ii) (requiring new approval for any new "intended use" of FDA-cleared device); *id.* § 814.39(a) (same, for approval of a supplement for a new indication for previously approved device); *see also* Guidance for Industry and Food and Drug Administration Staff: In Vitro Companion Diagnostic Devices ("IVD Guidance"), at 10 (Aug. 6, 2014) (Exh. 2) ("If an IVD diagnostic device is already legally marketed and the IVD diagnostic device manufacturer intends to market its device for a new use as an IVD companion diagnostic device for a novel therapeutic product, FDA would likely consider the new use of the IVD diagnostic device with the novel

therapeutic product as a new use for the device that would require an additional premarket submission.").

So too, any recommendation that Xarelto be used in conjunction with Neoplastin would require FDA to approve amendments to *both* products' labels and goes directly to the issue of what a reasonable manufacturer would have done under the circumstances.   Plaintiffs incorrectly contend that it is "factually inaccurate" for Defendants to argue "that they were prohibited from adding to their label additional warnings by way of an instruction to physicians to measure PT in their Xarelto patients using the Neoplastin PT because the test was not approved for use with Xarelto."  Pls.' Mot. at 4.  FDA's IVD Guidance demonstrates that ***any*** change to Xarelto's label to add a PT-monitoring recommendation based on Neoplastin would require advance FDA authorization.[3]  In particular: "When an IVD companion diagnostic device has been approved or cleared for use with one therapeutic product"—as, for instance, Neoplastin has been for warfarin—"and evidence becomes available that use of the same device is essential for the safe and effective use of a different therapeutic product"—as Plaintiffs claim here for Xarelto—"the IVD companion diagnostic device labeling should be expanded through approval or clearance of a new premarket submission (PMA or 510(k) as appropriate) or PMA supplement . . . to include the new therapeutic product."  IVD Guidance at 12.  And as FDA further clarified, the "[l]abeling of the therapeutic

---

[3] Plaintiffs rely on Section 12.2 of the Xarelto label—which states generally that "Neoplastin® prothrombin time (PT), activated partial thromboplastin time (aPTT), and HepTest® are also prolonged dose-dependently"—to suggest that Defendants could have added a monitoring recommendation about Neoplastin.  *See* Pls.' Mot. at 2, 4.  Plaintiffs are incorrect.  That information—like the reference in section 5.2 to PCC, to which Plaintiffs point (*see id.* at 4–5)— is simply general scientific data and is not, as Plaintiffs seek here with regard to PT testing, a clinical recommendation. Furthermore, Neoplastin is not cleared for measuring Factor Xa-based anticoagulation.  *See* Pls.' Exh. 4, Neoplastin Label (Doc. 6492-4), at 2 (explaining that the test "measures, as a whole, the activity of the coagulation factors II, V, VII, X, and I").

product should also be amended through submission of a supplement." *Id.* Defendants would thus need FDA approval to make this change.[4]

This result is confirmed by a review of FDA's general labeling regulations. Under FDA regulations, a pharmaceutical manufacturer cannot change any aspect of the "Highlights" section of a medicine's FDA-approved label without first obtaining agency approval. Rather, the FDA regulation governing "[c]hanges to an approved application" provides that "[a]ny change to the information required by § 201.57(a)"—*i.e.*, information required to be included in the Highlights section—constitutes a "major change" that "require[s a] supplement submission and approval prior to distribution of the product." 21 C.F.R. § 314.70(b)(2)(v)(C).[5] Critically, section 201.57(a) provides that, *inter alia*, "monitoring recommendations" must be included in the Highlights section of product labeling. *Id.* § 201.57(a)(7). Plaintiffs' claim that Xarelto's label should instruct doctors to use Neoplastin to assess patients' rivaroxaban-related coagulation parameters would require the addition of a "monitoring recommendation" to the label.[6] Such an addition requires specific FDA approval. Defendants are entitled to present this evidence as relevant to what a reasonable manufacturer would have done and to demonstrate their compliance with federal regulations.

---

[4] The IVD Guidance further demonstrates that Plaintiffs' reliance on the reference to prothrombin complex concentrates ("KCentra") in the Xarelto label is misplaced. *See* Pls.' Mot. at 4–5. In contrast to Neoplastin, KCentra is not regulated by FDA as an *in vitro* diagnostic and is thus not subject to FDA's IVD Guidance. The statement in the Xarelto label that physicians may "consider" PCC—again, a product not subject to FDA's IVD Guidance—does not undercut FDA's guidance prohibiting a unilateral change with respect to a regulated IVD such as Neoplastin.

[5] *See also* Parisian Dep. (Doc. 5109 Exh. 19), at 50, 56 (acknowledging that the "Highlights" section of Xarelto's label "cannot be changed without prior [FDA] approval"); Defs.' Dosing & Monitoring Preemption MSJ (Doc. 5109-1), at 22 n.7; Defs.' Post-Argument Ltr. Br. (Doc. 5904), at 5.

[6] Plaintiffs have previously acknowledged that their proposed instruction that Neoplastin PT be used to assess coagulation in Xarelto patients is a "monitoring recommendation." *See* Pls.' Reply Memo. In Opp. to Defs.' Post-Hearing Letter Br. (Doc. 5966), at 3–4 (acknowledging that Plaintiffs' proposed use of Neoplastin to measure anticoagulant effects in Xarelto patients should be considered a "monitoring instruction" within the meaning of the Highlights regulation).

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs'

Motion *in Limine* No. 37.

Respectfully submitted,

IRWIN FRITCHIE URQUHART & MOORE LLC

By: /s/ *James B. Irwin*
James B. Irwin
Kim E. Moore
Irwin Fritchie Urquhart & Moore LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
jirwin@irwinllc.com

DRINKER BIDDLE & REATH LLP

By: /s/ *Susan M. Sharko*
Susan M. Sharko
Drinker Biddle & Reath LLP
600 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
susan.sharko@dbr.com

Rodney M. Hudson
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
Telephone: (415) 591-7500
Rodney.hudson@dbr.com

Chanda A. Miller
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2700
Chanda.Miller@dbr.com

*Attorneys for Defendants Janssen*
*Pharmaceuticals, Inc. and Janssen Research*
*& Development, LLC*

WILKINSON WALSH + ESKOVITZ LLP

By: /s/ *Beth A. Wilkinson*
Beth A. Wilkinson
Jennifer L. Saulino
Jeremy Barber
WILKINSON WALSH + ESKOVITZ LLP
1900 M. Street NW, Suite 800
Washington, DC 20036
Telephone: (202) 847-4000
bwilkinson@wilkinsonwalsh.com
jsaulino@wilkinsonwalsh.com
jbarber@wilkinsonwalsh.com

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: /s/ *David E. Dukes*
David E. Dukes
J. Mark Jones
NELSON MULLINS RILEY & SCARBOROUGH LLP
1320 Main Street, 17th Floor
Columbia, SC 29201
Telephone: (803) 799-2000
David.Dukes@nelsonmullins.com
Mark.Jones@nelsonmullins.com

ARNOLD & PORTER KAYE SCHOLER LLP

By: /s/ *Andrew K. Solow*
Andrew K. Solow
Steven Glickstein
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8485
andrew.solow@apks.com
steven.glickstein@apks.com

William Hoffman
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
william.hoffman@apks.com

BRADLEY ARANT BOULT CUMMINGS LLP

By: */s/ Kevin C. Newsom*
Kevin C. Newsom
Lindsey C Boney IV
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place, 1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8803
knewsom@bradley.com
lboney@bradley.com


CHAFFE MCCALL L.L.P.
By: */s/ John F. Olinde*
John F. Olinde
CHAFFE MCCALL L.L.P.
1100 Poydras Street, Suite 2300
New Orleans, LA 70163
Telephone: (504) 585-7241
olinde@chaffe.com


*Attorneys for Bayer HealthCare*
*Pharmaceuticals Inc. and Bayer Pharma AG*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 23rd day of May, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to Liaison Counsel for Plaintiffs by operation of the court's electronic filing system.

*/s/      John F. Olinde*