UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: XARELTO (RIVAROXABAN) | * | MDL 2592 |
| PRODUCTS LIABILITY LITIGATION | * | |
| | * | SECTION L |
| THIS DOCUMENT RELATES TO: | * | |
| *Orr v. Bayer Corp., et al.* | * | JUDGE ELDON E. FALLON |
| Case No. 2:15-cv-03708 | * | |
| | * | MAGISTRATE JUDGE NORTH |

* * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO QUASH SUBPOENA FOR SANJAY JALOTA
TO APPEAR AND TESTIFY AT A HEARING OR TRIAL IN A CIVIL ACTION**

## I. INTRODUCTION

Plaintiffs oppose Defendants' Motion to Quash Subpoena related to Sanjay Jalota (Rec. Doc. 6556), for the same reasons they opposed Defendants' Motion to Quash Subpoena related to Dr. Gary Peters (Rec. Doc. 6277), which motion was denied by court order (Rec. Doc. 6295). Mr. Jalota has been employed by Johnson & Johnson (J&J")/Janssen since April 2003, and was directly involved with due diligence activities for the development and regulatory approval of Xarelto, as discussed more fully below. Given the importance of the MDL's second bellwether trial, Defendants' efforts to obstruct the proceedings should be rejected. For the reasons set forth below, the motion should be denied.

## II. FACTUAL BACKGROUND

Mr. Jalota was the Director of Global Regulatory Affairs from May 2006 through October 2007. From there, he became the Senior Director of Cardiovascular and Metabolism TA Regulatory Affairs, and he is presently the Senior Director of Global Regulatory Affairs. According to Mr. Jalota's Curriculum Vitae (attached as Exhibit 1), he was responsible for

1

J&J's collaboration with Bayer HealthCare on rivaroxaban and due diligence activities for Cardiovascular compounds, and in that role, he:

- Achieved two of the top ten J&J company goals of successful FPI in ATLAS TIMI 46 ACS and ROCKET AF studies in the fourth quarter of 2006;

- Provided regulatory guidance to the internal J&J compound development team and the cross-company Global Development Committee;

- Prepared briefing packages and led project team leaders at regulatory authority meetings, including meetings with the FDA, Health Canada, the European Medicines Agency's Committee for Medical Products for Human Use Scientific Advice Working Party, and Japan's Pharmaceuticals and Medical Devices Agency;

- Developed regulatory strategic plans for the initial and life cycle management indications in conjunction with Bayer HealthCare; and

- Had proactive involvement in the development of the contract and cross-company processes, including pharmacovigilance and safety oversight, delegation of responsibilities, publication review, investigator initiated studies, clinical supply agreements, informed consent, and contract templates.

As such, Mr. Jalota is a witness with high levels of responsibility, influence, and decision-making authority in areas particularly relevant to the issues in this case.

### III.   ARGUMENT

#### A.   Mr. Jalota will not be required to travel out-of-state and more than 100 miles to testify at trial.

Plaintiffs' subpoena provides for Mr. Jalota's appearance at "a mutually agreed upon location," and per agreement with defense counsel, if the subpoena is not quashed, that location will be at the federal courthouse for the District of New Jersey, in Newark, New Jersey. This is within the state in which Mr. Jalota works and resides (New Jersey), within 22 miles from the city in which he resides (Warren), and within 37 miles from the city in which he works (Raritan). His

2

testimony can then be broadcast live from that federal courthouse to the courtroom in the Eastern District of Louisiana. Thus, there will be complete compliance with Fed. R. Civ. P. 45(c)(1), and the entire first section of Defendants' brief is moot.

> **B.   Rules 43(a) and 45(c)(1) empower this Court to compel Mr. Jalota to testify via live testimony broadcasted from New Jersey.**

Under Rule 45 of the Federal Rules of Civil Procedure, this Court may issue a subpoena for a witness to appear at trial either: (a) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or (b) within the state where the person resides, is employed, or regularly transacts business in person if he or she is a party or a party's officer, or if he or she is commanded to attend the trial and would not incur substantial expense in doing so. Fed. R. Civ. P. 45(c)(1). Further, Rule 43 provides:

> At trial, the witnesses' testimony must be taken in open court unless a federal statute, the Federal Rules of Evidence, **these rules**, or other rules adopted by the Supreme Court provide otherwise. **For good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location.**

Fed. R. Civ. P. 43(a) (emphasis added).

Similar to Defendants here, the defendants in *In re Actos (Pioglitazone) Prods. Liab. Litig.*, No. 12-cv-00064, 2014 WL 107153 (W.D. La. Jan. 8, 2014), argued that Rules 43 and 45 could not be read together to allow the court to order video testimony that would take place outside of the court's subpoena power, even for a party's employee. But the *Actos* court rejected this argument: "Nothing in Rule 45, itself, indicates the Rule must be read in the vacuum Defendants argue; to the contrary, Rule 45 must be read *in tandem with* Rule 43 and as a part of a harmonious whole that is the Federal Rules of Civil Procedure." *Id.* at *9. In doing so, the court explained

3

that Rule 43 allows for an appearance in open court by live video feed under certain circumstances, and Rule 45 "provides the mechanism to secure such appearance." *Id.* at *9.

Reading these rules *in pari materia,* as a whole, it is clear that this Court can subpoena witnesses under Rule 45 to testify at trial by video transmission, regardless of the point of origin for that video transmission:

> A fair reading of the definition in Rule 43 of an appearance 'IN OPEN COURT' 'at trial,' specifically includes an appearance *via* live transmission, together with a fair reading of the scope of activities permitted to be ordered by subpoena under Rule 45 (specifically, a person may be ordered to 'attend a trial'), establishes that the two Rules embrace and address the concept of appearance at 'trial' to include contemporaneous live transmission from another location at the location of the Court. One would not argue that when using a written deposition or video deposition the witness is not appearing at trial 'by way of deposition,' at the location of the trial, notwithstanding the fact that the deposition was taken at another location. Nor would one argue Rule 45 would not allow the use of a subpoena to assure that 'appearance by deposition.' Here, contemporaneous transmission is now equally incorporated as proper trial procedure and an acceptable means of appearing at court and trial, as were written and video depositions, respectively, in the past. The subpoena power of Rule 45 of the Federal Rules of Civil Procedure is merely employed to facilitate yet another, now permitted, trial procedure and method of appearance. …
>
> The Defendants' argued interpretation of the safeguards required for use of Rule 43 would narrow the scope of the authority granted to federal courts by allowing contemporaneous transmission **only** when the absent witness agrees to appear voluntarily; that is not the limitation(s) included within Rule 43 of the Federal Rules of Civil Procedure. No such limitation appears on the face of Rule 43, nor is found within the comments addressing the Rule, and this Court will not impose such an unjustified gloss on the rule by jurisprudential fiat.

*Id.* (emphasis in original).

The purpose behind Rule 45 is to avoid an undue expense and inconvenience on a witness by requiring the witness to travel unreasonably far for a deposition, hearing, or trial. In the situation

where testimony by live video feed is warranted, however, this concern is moot, since the witness is able to testify from a location at or near the witness's home or office. Accordingly, ordering live video testimony "would **benefit** and **not undermine** the inherent goal of our system of justice." *Id.* at *6 (emphasis in original).

Similar reasoning was used by the court in the *DePuy* litigation, when ordering testimony via contemporaneous transmission:

> Plaintiffs do not seek to employ Rules 43 and 45 to obtain contemporaneous transmission of live testimony *in lieu* of in-court testimony. Rather, Plaintiffs seek to compel contemporaneous transmission of live testimony where a witness under Defendants' control is unable to appear live in court. Without this contemporaneous transmission to provide live testimony, the jury would be left with less reliable deposition transcripts and video. Plaintiffs' motion serves the inherent goal of Rule 43, which is to provide the jury with a more truthful witness. *See* Fed. R. Civ. P. 43 advisory committee's note (1996 amendment) ("The very ceremony of trial and the presence of the factfinder may exert a powerful force for truthtelling.").

*In re: DePuy Orthopaedics, Inc.,* No. 3:11-md-2244, slip op. at 5 (N.D. Tex. Sept. 20, 2016) (attached as Exhibit 2).

The *Roundtree* case, on which Defendants rely, erroneously considered video transmission as moving the trial to the physical location of the person testifying. *See Roundtree v. Chase Bank USA, N.A.,* No. 13-cv-239, 2014 WL 2480259, *1-2 (W.D. Wash. June 3, 2014). Indeed, the plain language of Rule 43 treats videoconferencing as equivalent to testimony in open court at the place of trial. *See* Fed. R. Civ. P. 43(a) (permitting "testimony in open court by contemporaneous transmission from a different location").

Courts have likewise considered a live video feed to be testimony at trial. *See, e.g., Lopez v. NTI, LLC*, 748 F. Supp. 2d 471, 480 (D. Md. 2010) (finding no prejudice to defendants in using videoconferencing, because "[e]ach of the witnesses will testify in open court, under oath, and will

5

face cross-examination"); *FTC v. Swedish Match North Am., Inc.*, 197 F.R.D. 1, 2 (D.C. 2000) (finding same and noting "no practical difference between live testimony and contemporaneous video transmission based upon [his] experience."). Thus, the use of videoconferencing allows the witness to testify at trial without running afoul of the geographical limitations for subpoenas specified in Rule 45. *See also* Fed. R. Civ. P. 45(c)(1), Advisory Committee Note to the 2013 Amendments ("When an order under Rule 43(a) authorizes testimony from a remote location, the witness can be commanded to testify from any place described in Rule 45(c)(1)."); Fed. R. Civ. P. 1 (directing that rules "be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding").

Because a plain reading of the Federal Rules of Civil Procedure enables this Court to subpoena Mr. Jalota to testify via videoconference from a location within 100 miles of his home and office, this Court has the power to compel him to testify at trial, as was done with Dr. Peters in the *Boudreaux* trial

### C. Good cause and compelling circumstances, and no associated unfair burden or prejudice, are associated with compelling Mr. Jalota to testify via live testimony broadcasted from New Jersey.

Live testimony is preferable to deposition testimony for a variety of reasons. For instance, it allows juries to engage in more robust credibility assessments. *See, e.g.*, *Ramada Worldwide, Inc. v. Bellmark Sarasota Airport,* No. 05-cv-2309, 2006 WL 1675067, at *4 (D.N.J. June 15, 2006) (explaining "live testimony is recognized as especially preferable over depositions where the factfinder will be making credibility determinations"); *Iorio v. Allianz Life Ins. Co.*, No. 05-cv-633, 2009 WL 3415703, at *5 (S.D. Cal. Oct. 21, 2009) (acknowledging "inherent disparity between depositions and live testimony, especially when credibility is at issue"); Fed. R. Civ.

6

P. 43, Advisory Committee Note to the 1996 Amendments ("The very ceremony of trial and the presence of the factfinder may exert a powerful force for truthtelling.").

Thus, "deposition testimony is only a substitute, not to be resorted to if the witness can appear in person." *Banks v. Yokemick*, 144 F. Supp. 2d 272, 288 (S.D.N.Y. 2001); *see also Estate of Spear v. Comm'r*, 41 F.3d 103, 116 (3d Cir. 1994) ("[L]ive testimony is generally preferable to videotaped testimony"); *COA Network, Inc. v. J2 Global Commc'ns, Inc.*, No. 09-cv-6505, 2010 WL 2539692, at *4 (D.N.J. Jun. 17, 2010) ("Live testimony is generally preferred and parties should not unnecessarily be forced to rely on trial by deposition."); *Flores v. NJ Transit Rail Operations, Inc.*, No. 96-cv-3237, 1998 WL 1107871, at *2 (D.N.J. Nov. 2, 1998) ("Although the increasing availability and fidelity of videotaped depositions has provided a better alternative than reading a written transcription, the preference for live testimony is still endorsed by federal courts."); *Sherwood Grp., Inc. v. Rittereiser*, No. 90-cv-2414, 1990 WL 159925, at *6 (D.N.J. Oct. 17, 1990) ("[L]ive testimony is preferable to deposition testimony"); *accord Buchwald v. Renco Grp., Inc.*, No. 13-cv-7948, 2014 WL 4207113, at *2 (S.D.N.Y. Aug. 25, 2014) ("[T]he preference for live testimony" is "dictated by . . . common sense").

This alone, especially considering the importance of Mr. Jalota as a witness in this litigation, sufficiently shows "good cause and compelling circumstances." Additionally, when determining whether there is good cause and compelling circumstances, other courts have considered the following factors:

> (1) the control exerted over the witness by the defendant; (2) the complex, multi-party, multi-state nature of the litigation; (3) the apparent tactical advantage, as opposed to any real inconvenience to the witness, that the defendant is seeking by not producing the witness voluntarily; (4) the lack of any true prejudice to the defendant; and (5) the flexibility needed to manage a complex multi-district litigation.

7

*In re Vioxx Prods. Liab. Litig.*, 439 F. Supp. 2d 640, 643 (E.D. La. 2006). Here, all of these factors weigh in favor of allowing live testimony by video of Mr. Jalota, as they did with Dr. Peters in *Boudreaux*.

In regards to the first factor, as with Dr. Peters, Mr. Jalota continues to be employed by the Janssen Defendants, and thus Janssen may exert significant control over him.

As to the second factor, the Xarelto MDL continues to be a complex litigation involving thousands of plaintiffs from across the country. In particular, the *Orr* bellwether case will influence the claims of plaintiffs in future bellwether cases, and inform thousands of other Xarelto cases. Further, the corporate deposition at issue was comprised of massive amounts of testimony. While designations from the transcript have been made, any videotaped deposition testimony would require splicing together testimony from different examiners, creating more work for the lawyers and the Court on the eve of trial, and disserving the jury in its presentation.

As for Defendants' argument that permitting live video testimony could provide technological disruptions, that argument is unavailing. Certainly, the editing and playing of spliced deposition testimony would also introduce potential technological disruptions, as well as require this Court to spend time ruling on more deposition designations and objections. Since live testimony is always better than taped testimony, the fact that the outcome of this trial will bear on many more cases beyond the bounds of this consolidated trial continues to weigh in favor of allowing Mr. Jalota to testify live via video.

Defendants have exaggerated the impact and significance of a handful of small "technical issues" from Dr. Peters's trial testimony in *Boudreaux* to argue that the transmission of testimony from Mr. Jalota would be challenging. Each "issue" was minimal – an attorney not facing the witness (with which Dr. Peters did not indicate he had a problem), a need to look at hard copies

of documents rather than documents on the screen (which the witness did many times on his own), and a need to repeat a few questions (which is not unusual during any examination).  These are certainly not sufficient to justify resort to spliced deposition testimony instead of live testimony.  Indeed, many would be replicated even with live testimony. Witnesses often prefer to look at a document in their hands rather than a document on a screen, as Dr. Peters did repeatedly during his testimony, even when the documents on the screen were unquestionably clear, and questions or testimony sometimes need to be repeated for a myriad of reasons, such as soft voices, an attorney and witness talking over each other, or background noises.  Dr. Peters's testimony was efficient, and its transmission resulted in no real issues that were not quickly resolved.

    For the third and fourth factors, Defendants' opposition is a purely tactical decision, as there can be no real claim of undue prejudice. Courts have been allowing live testimony via video for decades, and this technology is easier to use now, more than ever. While the parties may choose to send counsel to the witnesses, while also having counsel in the courtroom, any related expenses should be considered a normal trial expense, and will be minimal compared to the overall cost of this litigation. This is especially true considering that the proffered location is within 37 miles of a principal place of business for Janssen, in Raritan, New Jersey.

    Finally, with respect to the fifth factor, live video transmission will promote comprehensiveness and coherency, especially when the alternative is spliced, edited, and recompiled clips of depositions. This is particularly important here, where the deposition was taken over one year ago, in March 2016.  This was long before discovery was completed, and long before any experts submitted reports or sat for depositions, so Mr. Jalota was not, and could not have been, deposed on all material matters.

In *Actos*, the court noted that assumptions about the witnesses' unavailability were not even necessary, because there were "ample other reasons" to justify granting the plaintiffs' request. *Actos*, 2014 WL 107153, at *7 n.18. The court noted that the plaintiffs could not command the witnesses' appearance in open court in any way other than by video transmission. *Id*. at *7. Further, the fact that the case was a complex, multi-party, multi-state litigation that required flexible management weighed heavily in favor of granting the plaintiffs' motion, as they did in *Vioxx* and *Washington Public*. *Id*. at *8. "Even more persuasive" was the fact that live video would allow the jury to "see" the witness, while avoiding the shortcomings of deposition video recorded prior to developments leading up to and during the trial. *Id*. Similarly, all of these factors are present here.

### D. **Defendants' cases are not compelling.**

Many of the cases cited by Defendants (in its current memorandum and in its past memorandum that was incorporated by reference) are inapposite. For example, in some of the cited cases, remote testimony via contemporaneous transmission was never offered as an option. *See, e.g., Twyman v. S&M Auto Brokers,* No. 16-cv-4182, 2016 WL 6082357, at *5 (N.D. Ill. Oct. 18, 2016); *E.E.O.C. v. JetStream Ground Servs., Inc.,* No. 13-cv-02340, 2016 WL 1178668, at *3 n.5 (D. Colo. Mar. 28, 2016); *Ishee v. Fed. Nat'l Mortg. Assoc.,* No. 13-cv-234, 2014 WL 12638499, at *2 (S.D. Miss. Nov. 13, 2014). *See also Prideaux v. Tyson Foods, Inc.,* 387 Fed. App'x 474, 479 (5th Cir. 2010) (offered contemporaneous option was telephone) *Matovski v. Matovski,* No. 06-cv-4259, 2007 WL 1575253, at *2-3 (S.D.N.Y. May 31, 2007) (same).

In many other cases cited by Defendants, testimony via contemporaneous transmission was criticized or deemed unacceptable due to its inferiority to *live testimony*. The rulings did not address whether a witness who had been previously deposed could be compelled to testify a second time via contemporaneous transmission. In fact, the opposite situation existed in some of

those cases, in that the moving party was criticized for not previously obtaining deposition testimony from a witness who was allegedly unavailable to testify live. *See, e.g., Eller v. Trans Union, LLC,* 739 F.3d 467, 477-79 (10th Cir. 2013); *United States v. Thompson,* 599 F.3d 595, 600 n.4 (7th Cir. 2010); *Humbert v. O'Malley,* 303 F.R.D. 461, 466 n.24 (D. Md. 2014); *Niemeyer v. Ford Motor Co.,* No. 09-cv-2091, 2012 WL 5199145, at *3 (D. Nev. Oct. 18, 2012); *Rodriguez v. SGLC, Inc.,* No. 08-cv-01971, 2012 WL 3704922, at *2-3 (E.D. Cal. Aug. 24, 2012); *Thomas v. O'Brien,* No. 08-cv-0318, 2011 WL 5452012, at *4 n.8 (N.D.N.Y. Nov. 8, 2011); *Sille v. Parball Corp.,* No. 07-cv-00901, 2011 WL 2680560, at *1-2 (D. Nev. July 8, 2011); *Gulino v. Bd. of Educ.,* No. 96-cv-8414, 2003 WL 1191349, at *1 (S.D.N.Y. Mar. 13, 2003).

Other cited cases suggested that the rulings might have been different if MDL cases had been involved. *See, e.g., Aranda v. Caribbean Cruise Line, Inc.,* No. 12-cv-4069, slip op. at 2 (N.D. Ill. Aug. 30, 2016) (attached as Exhibit E to Defendants' Brief); *Williams v. Arctic Cat, Inc.,* No. 11-cv-445, 2014 WL 1028476, at *5 (N.D.N.Y. Mar. 13, 2014). While Defendants claim that such a result violates the Rules Enabling Clause, that is inaccurate. No one is arguing for different rules in different cases. Rather, the application of the law to the facts results in a different outcome, depending in part on whether MDL cases are involved, which by no means violates the Rules Enabling Clause.

Finally, reasonable case-specific explanations for rejecting testimony via contemporaneous transmission was given in other cited cases. For example, in *Passmore v. Barrett,* No. 13-cv-290, 2016 WL 1253541 (N.D. Ind. Mar. 31, 2016), the court relied in part on the fact that to allow such testimony would require the witness to sit for an extended period, which contra-indicated the recommendation of his doctor, and was unnecessary given his past deposition testimony. *See id.* at *3. Another cited case, *Ping-Kuo Lin v. Horan Capital Mgmt., LLC*, No.

14-cv-5202, 2014 WL 3974585 (S.D.N.Y. Aug. 13, 2014), did not involve the testimony of a party's employee, but instead involved the testimony of a *non-party* at an arbitration hearing. *Id.* at *1-2.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion should be denied.

Dated: May 23, 2017

Respectfully submitted,

*/s/ Leonard A. Davis*
Leonard A. Davis, Esq. (Bar No. 14190)
**HERMAN, HERMAN & KATZ, LLC**
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Email: ldavis@hhklawfirm.com

Gerald E. Meunier (Bar No. 9471)
**GAINSBURGH BENJAMIN DAVID MEUNIER & WARSHAUER, LLC**
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
Email: gmeunier@gainsben.com

***Plaintiffs' Liaison Counsel***

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on May 23, 2017 the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs and Defendants by operation of the court's electronic filing system and served on all other plaintiff counsel via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre- Trial Order No. 17.

                                               */s/ Leonard A. Davis*
                                               **LEONARD A. DAVIS**