# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592<br><br>Judge Eldon E. Fallon |

# EXPERT REPORT

## DAVID A. KESSLER, M.D.

207. A reasonable and prudent manufacturer, asked by FDA, as part of an IND application process, to provide a summary of information collected by an unblinded physician would have provided such information. Such information was important to FDA because FDA was investigating the impact of the use of a recalled POC device in the ROCKET clinical trial, which evaluated the safety and efficacy of Xarelto.

208. The sponsors did not disclose to FDA, physicians, or patients that the company was in possession of information indicating that "discrepancies of potential clinical relevance were rather frequently observed (approximately in 35% of the estimations) [in ROCKET]."[167]

209. The POC device used in the ROCKET AF trial malfunctioned, raising questions regarding the validity of the trial.

_David A. Kessler, M.D._

10/13/2016
Date

---

[167] EMA CHMP Assessment report dated 5 February 2016, p. 21.

83

# Schedule 16

# The FDA Approval of New Drugs

## A. The FDA's Standards for Approval

1. Under United States food and drug laws, a drug may not be introduced into interstate commerce unless its sponsor has shown that the drug is safe and effective for the intended conditions of use.[1]

2. The law requires that "adequate and well-controlled investigations" be used to demonstrate a drug's safety and effectiveness.[2]

3. The FDA approves a drug if there are "adequate and well-controlled" clinical trials that demonstrate a drug's safety and effectiveness for its intended conditions of use.[3]

4. The "intended conditions" for use of a drug are listed in the drug's labeling, which is reviewed and approved by the FDA.[4]

5. Indications for use that are not listed in a drug's labeling have not been approved by the FDA.[5]

## B. The FDA's Standard for Disclosure

6. The following standards are based on my experiences as the FDA Commissioner from 1990 to 1997, having written about and taught food and drug law, dealt with FDA statutes and regulations and acted as chair of compliance committees of FDA-regulated companies.

---

[1] 21 U.S.C. § 355.

[2] 21 U.S.C. § 355(d)(7).

[3] 21 U.S.C. § 355(d)(7).

[4] 21 U.S.C. §§ 355(d)(1) and (2).

[5] "The labeling is derived from the data submitted with the new drug application. It presents a full disclosure summarization of drug use information, which the supplier of the drug is required to develop from accumulated clinical experience and systemic drug trials of preclinical investigations and adequate, well-controlled clinical investigations that demonstrate the drug's safety and the effectiveness it purports or is represented to possess." (37 Fed. Reg. 16,503 (1972)).

7.  In 1979, the FDA, as part of a final rule titled "Labeling and Prescription Drug Advertising: Content and Format for Labeling for Human Prescription Drugs"[6] issued 21 C.F.R. §§ 201.57 (e) and (g) which stated, respectively[7]:

> (e) Warnings: Under this section heading, the labeling shall describe serious adverse reactions and potential safety hazards, limitations in use imposed by them, and steps that should be taken if they occur. The labeling shall be revised to include a warning as soon as there is reasonable evidence of an association of a serious hazard with a drug; a causal relationship need not have been proved.[8]

> (g) Adverse Reactions: An adverse reaction is an undesirable effect reasonably associated with the use of the drug that may occur as part of the pharmacological action of the drug or may be unpredictable in its occurrence.[9]

8.  In 2006, the FDA adopted final rules for 21 C.F.R. §§ 201.57 (c)(6) and (7) which stated:

> (c)(6) 5 Warnings and precautions. (i) General. This section must describe clinically significant adverse reactions....the labeling must be revised to include a warning about a clinically significant hazard as soon as there is reasonable evidence of a causal association with a drug; a causal relationship need not have been definitely established....
> (c)(7) 6 Adverse reactions. This section must describe the overall adverse reaction profile of the drug based on the entire safety database. For purposes of prescription drug labeling, an adverse reaction is an undesirable effect, reasonably associated with use of a drug, that may occur as part of the pharmacological action of the drug or may be unpredictable in its occurrence. This definition does not include all adverse events observed during use of a drug, only those adverse events for which there is some basis to believe there is a causal relationship between the drug and the occurrence of the adverse event.[10]

---

[6] 44 Fed. Reg. 37434 (June 26, 1979).

[7] 44 Fed. Reg. 37434 (June 26, 1979) at 37465.

[8] 21 C.F.R. § 201.57(e).

[9] 21 C.F.R. § 201.57(g).

[10] 71 Fed. Reg. 3922-3997 (January 24, 2006) at 3990.

9. The FDA's regulations require that all prescription drug labeling contain:

> Adequate information for such use, including indications, effects, dosages, routes, methods, and frequency and duration of administration and any relevant warnings, hazards, contraindications, side effects, and precautions, under which practitioners licensed by law to administer the drug can use the drug safely and for the purposes for which it is intended, including all conditions for which it is advertised or represented… [21 C.F.R. § 201.100(d)(1)].

10. The FDA's regulations have the following general requirement for prescription drug labeling: "The labeling must contain a summary of the essential scientific information needed for the safe and effective use of the drug." [21 C.F.R. § 201.56(a)(1)].

11. The FDA's regulations require that a pharmaceutical drug's labeling contain a section on dosing and administration consisting of:

> A concise summary of the information required under paragraph (c)(3) of this section [dosage and administration guidelines], with any appropriate subheadings, including the recommended dosage regimen, starting dose, dose range, critical differences among population subsets, monitoring recommendations, and other clinically significant clinical pharmacologic information. [21 C.F.R. § 201.57(7)].

12. The FDA's regulations require that a manufacturer must submit as part of its New Drug Application:

> A description and analysis of any other data or information relevant to an evaluation of the safety and effectiveness of the drug product obtained or otherwise received by the applicant from any source, foreign or domestic, including information derived from clinical investigations, including controlled and uncontrolled studies of uses of the drug … [21 C.F.R.§ 314.50(c)(5)(iv)].

13. The FDA's regulations require that:

> The applicant shall, under section 505(i) of the act, update periodically its pending application with new safety information learned about the drug that may reasonably affect the statement of contraindications, warnings, precautions, and adverse reactions in the draft labeling and, if applicable, any Medication Guide required under part 208 of this chapter. These

> 'safety update reports' are required to include the same kinds of information (from clinical studies, animal studies, and other sources) and are required to be submitted in the same format as the integrated summary in paragraph (d)(5)(vi)(a) of this section. [21 C.F.R. § 314.50(d)(5)(vi)(b)].

14. The FDA has stated that:

> Updates of safety information are required under the regulations to include 'new safety information learned about the drug that may reasonably affect the statement of contraindications, warnings, precautions, and adverse reactions in the draft labeling,' in essentially the same format as the integrated summary. Because the content of the update will depend on the nature of the additional data, it will generally be useful to consult with the reviewing division before preparing the update. It is possible to provide the safety update information as a report that refers only to the new data obtained since the last update or since the original submission, but it is preferable to provide a document incorporating the new data with the data and analyses in the initial integrated summary of safety information, as well as showing the new data. If the additional data are relatively few and come principally from foreign sources or other studies that have not been incorporated into overall analyses in the initial submission, it may be sufficient to concentrate on the serious or potentially serious adverse events, or an unusually high frequency of a less serious event, providing a narrative description of these events. [FDA, Center for Drug Evaluation and Research, "Guideline for the Format and Content of the Clinical and Statistical Sections of an Application," July 1988, p.33-34].

15. Further, a prescription drug is considered "deemed to be misbranded" if "it is dangerous to health when used in the dosage or manner, or with the frequency or duration prescribed, recommended, or suggested in the labeling thereof." [21 U.S.C. § 352(j)].

16. A manufacturer "must periodically submit any new information that may affect the FDA's previous conclusions about the safety, effectiveness, or labeling of the drug."[11]

---

[11] *Wyeth v. Levine*, 555 US 555, 608 (2009), citing 21 U.S.C. § 355(k).