UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | * * * | MDL 2592 |
| | * | SECTION L |
| THIS DOCUMENT RELATES TO: | * * | JUDGE ELDON E. FALLON |
| *Joseph Orr, Jr., et al.* *v. Janssen et al.,* Case No. 2:15-cv-03708 | * * * | MAG. JUDGE NORTH |
| * * * * * * * * * * * * * * * * * * * * * * * | | |

**PROPOSED PRE-TRIAL ORDER**

The parties hereby jointly submit this Proposed Pre-Trial Order.

1. The pre-trial conference is scheduled to be held on May 24, 2017 at 11:00 a.m.

2. Counsel attending the pre-trial conference:

    a. For the Plaintiffs: Brian Barr of Levin Papantonio, Andy Birchfield of Beasley Allen, Leonard Davis of Herman, Herman & Katz, Roger Denton of Schlichter Bogard & Denton, Brad Honnold of Goza & Honnold, LLC, Emily Jeffcott of The Lambert Firm, PLC, Gerald Meunier of Gainsburgh Benjamin, Michael Weinkowitz of Levin Sedran & Berman, and Neil Overholtz of Aylstock, Witkin, Kreis & Overholtz, PLLC.

    b. For the Defendants: Beth Wilkinson of Wilkinson Walsh & Eskovitz, David Dukes of Nelson Mullins Riley & Scarborough LLP, Andrew Solow of Arnold & Porter Kaye Scholer LLP, Kevin Newsom of Bradley Arant Boult Cummings LLP, and John Olinde of Chaffe McCall LLP for Bayer; Susan Sharko of Drinker Biddle, and Jim Irwin of Irwin Fritchie Urquhart & Moore LLC for Janssen.

3.  Description of the parties:

    The parties have stipulated and agreed that the parties remaining for trial include: Plaintiffs Joseph Orr, Jr., Joseph R. III., Kelli Orr Walker and Kim Orr DeAgano; and Defendants Bayer HealthCare Pharmaceuticals, Inc., Bayer Pharma AG, Janssen Pharmaceuticals, Inc. and Janssen Research & Development, LLC.  *See* Section 6 below regarding Stipulations.

4.  List/description of any motions pending or completed and any special issues appropriate for determination in advance of trial.

    The parties have stipulated and agreed that all motions *in limine* and all memoranda in support, in opposition and in reply that previously were filed in *Boudreaux* are considered filed in *Orr*.  The parties reserve their rights and objections as set forth in the motions *in limine* and oppositions filed in *Boudreaux*, which are specifically enumerated in the Joint Stipulation.  The parties further stipulate and agree that the Court's Order and Reasons dated April 18, 2017 [Doc. 6254] on the motions *in limine* enumerated in the Joint Stipulation shall apply to the *Orr* trial and reserve their rights to request that the Court clarify and/or reconsider its prior *in limine* rulings set forth in the Court's Order and Reasons [Doc. 6254] as may be appropriate prior to or during trial, and to submit any offers of proof as necessary for appeal.  *See* Section 6 below regarding Stipulations.

    Pending motions filed separately in the *Orr* case are as follows:

| Party filing | Motion type | Docket Number | Title |
|---|---|---|---|
| Defendants-Joint | Dispositive/Motion to Exclude | 6485 | Defendants' Joint Motion For An Order (1) Dismissing With Prejudice Claims Based On Allegations That Plaintiffs Have Abandoned And (2) Barring Scientific Evidence Based On Waiver Of *Daubert* Arguments |
| Defendants-Joint | MIL | 6482 | Defendants' Joint Motion *in Limine* to Exclude Dr. Cuong Bui's Testimony Regarding the Xarelto Label |
| Defendants-Joint | MIL | 6490 | Defendants' Joint Motion *in Limine* to Exclude Testimony From Previously Undisclosed Witnesses |
| Defendants-Joint | MIL | 6491 | Defendants' Joint Motion *in Limine* to Exclude Reference to Dr. Robert Califf as FDA Commissioner Under Federal Rules of Evidence 402 & 403 |
| Plaintiffs | MIL 11 | 6445 | Plaintiffs' Motion *in Limine* to Preclude Testimony and Argument About the Personal Use of Anticoagulants Including Xarelto by Defendants' Experts, Employees, and/or Family Members, or, in |

| Party filing | Motion type | Docket Number | Title |
|---|---|---|---|
| | | | the Alternative, If Such Testimony is Allowed, to Compel the Production of Relevant Medical Records and/or Medical Authorizations and Depositions |
| Plaintiffs | MIL 15 | 6475 | Plaintiffs' Motion *in Limine* Regarding FDA Approval |
| Plaintiffs | MIL 22 | 6476 | Plaintiffs' Motion *in Limine* Regarding Defendants' Lack of Permission to Change the Label of Xarelto Without Prior FDA Approval |
| Plaintiffs | MIL 25 | 6468 | Plaintiffs' Motion *in Limine* Regarding References to Fiction Allegedly Authored by Suzanne Parisian, MD |
| Plaintiffs | MIL 30 | 6474 | Plaintiffs' Motion *in Limine* Regarding Plaintiffs' Experts Submissions of Publications or Opinions to the FDA or Other Organizations |
| Plaintiffs | MIL 31 | 6469 | Plaintiffs' Motion *in Limine* Regarding Homeopathic Treatments and Use of Supplements |
| Plaintiffs | MIL 32 | 6471 | Plaintiffs' Motion *in Limine* Regarding Unrelated Litigation |
| Plaintiffs | MIL 33 | 6472 | Plaintiffs' Motion *in Limine* Regarding FDA's Alleged Rejection of Defendants' Attempts to Modify the Xarelto Label |
| Plaintiffs | MIL 34 | 6473 | Plaintiffs' Motion *in Limine* Regarding Character Assassination of Frank W. Smart, MD, FACC, FACP |
| Plaintiffs | MIL 35 | 6480 | Plaintiffs' Motion *in Limine* to Admit Evidence of Defendants' Statements Outside the United States That Directly Contradict Their Position that PT Neoplastin Is Not Useful and Does Not Work to Determine the Anticoagulant Activity of Xarelto |
| Plaintiffs | MIL 36 | 6477 | Plaintiffs' Motion *in Limine* to Preclude Evidence or Argument Suggesting That Plaintiff, Joseph Orr, Jr., Has Dated Since His Wife's Death |
| Plaintiffs | MIL 37 | 6492 | Plaintiffs' Motion *in Limine* to Preclude The False and Misleading Argument that Prothrombin Time (PT) Test Must Be Specifically Approved by the FDA for Use with Xarelto |

5. Stipulations:  The following Joint Stipulations have been presented to the Court by the parties and entered in this matter:

    a. Stipulation and Order of 2/7/17 (Rec. Doc. 5341) [specifying the causes of action and issues for trial];
    b. Stipulation and Order of 4/5/17 (Rec. Doc. 6025) [identifying the Defendants in the *Orr* trial];
    c. Joint Stipulation on Issues Not Requiring Motions in Limine of 5/18/17 (Rec. Doc. 6534) [specifying agreements on matters not requiring Motions in Limine]; and
    d. Joint Stipulation on Motions in Limine Filings and Rulings of 5/18/17 (Rec. Doc. 6535) [incorporating herein the parties' briefing and the Court's rulings on Motions in Limine in the *Boudreaux* case].

6. Statement of the Case:

    A. Plaintiffs' Statement:

    This is a survival and wrongful death action brought by Joseph Orr, Jr. as the surviving husband of Sharyn Orr and by Mrs. Orr's three surviving, adult children, Joseph Orr, III, Kelli Orr Walker, and Kim Orr DeAgano.

    Plaintiffs allege that the Defendant manufacturers of Xarelto are liable for damages under the Louisiana Products Liability Act (LPLA).  They claim that Xarelto possessed one or more characteristics which made the drug unreasonably dangerous in its anticipated use by physicians.  These characteristics include the high degree of variability in how patients absorb Xarelto, the lack of a reversal agent once Xarelto is in the system, the recommended dosing of the drug, the lack of so-called "black box warning" information about the drug, and the withholding of information from doctors about simple measures to assess the amount of Xarelto in a patient's blood.

    Plaintiffs claim that Defendants failed to provide Mrs. Orr's prescribing and treating physicians with adequate warnings or instructions about these dangerous characteristics of Xarelto; and they claim that such warnings or instructions as to the safe use of the drug would have led these physicians, or reasonable physicians in their circumstances, to contemplate the drug's dangers and risks and take steps to avoid the harm suffered by Sharyn Orr and her surviving family members.

    In February 2014, Dr. Maurice St. Martin prescribed Xarelto in a 20 milligram dose for Mrs. Orr, to treat her atrial fibrillation.   Her dose was subsequently reduced to 15mg on July 25, 2014.  Given Mrs. Orr's medical profile and the above-mentioned dangerous characteristics of the drug, however, Plaintiffs contend that Mrs. Orr should not have been placed on Xarelto to treat her condition.  Plaintiffs further allege that a different course of medication treatment for Mrs. Orr more likely than not would have been followed, had Dr. St. Martin, or a reasonable physician in his circumstances, been provided by Defendants with adequate information before prescribing Xarelto for a patient such as Sharyn Orr.

    Sharyn Orr suffered a brain hemorrhage on April 24, 2015, an event which Plaintiffs allege was due to the effects of Xarelto.  She was seen that same evening in the emergency room

of Ochsner Main Campus by a neurosurgeon, Dr. Cuong Bui, who was consulted in order to address her life-threatening condition. The standard of care for a patient in Ms. Orr's condition is to immediately proceed to surgery in order to relive pressure in the brain and to minimize tissue death. Time is of the essence in such an emergent situation. But since Mrs. Orr was indicated to be on a Xarelto prescription, Dr. Bui waited twelve hours before surgically inserting ventricular drainage tubes to relieve the pressure in Mrs. Orr's skull caused by her brain hemorrhage. Mrs. Orr died despite this surgery.

Plaintiffs do not criticize Dr. Bui in any way for his treatment of, or for the delay in surgically treating, Mrs. Orr. Rather, Plaintiffs allege Defendants failed to inform Dr. Bui that a routine simple blood test, that was actually performed, has meaning to patients taking Xarelto. The test was actually ordered and done when Mrs. Orr presented in the in the emergency room that evening, and the test result revealed that she was not then anticoagulated and it was safe to proceed to surgery. It is Plaintiffs' contention that Defendants failed to provide warnings and instructions to Dr. Bui that would have advised him to refer to this test result in order to assess the actual amount of Xarelto in Mrs. Orr's system at the time she needed surgery. Plaintiffs further allege that Defendants not only failed to warn about the usefulness of a simple blood test, but affirmatively misled doctors like Dr. Bui to believe that no such test is available. Dr. Bui was under the false impression that no test to assess coagulation status on Xarelto is available. Plaintiffs claim that, with this information, Dr. Bui would have been in a position to perform surgery sooner, and that the Defendants' failure to provide information about the available measurement of Xarelto in Mrs. Orr's system to Dr. Bui, or to a reasonable surgeon and Dr. Bui's circumstances, more likely than not would have either prevented Mrs. Orr's death, or would have increased her chances of surviving.

The damages for which Plaintiffs seek recovery in this case include: Mrs. Orr's pain and suffering prior to death; medical, funeral and burial expenses; Mr. Joseph Orr, Jr.'s loss of his wife's love, affection, services and support; each adult child's loss of a mother's love and affection; and the loss of Mrs. Orr's chance of survival.

B. Defendants' Statement:

Plaintiffs Joseph Orr, Jr., Joseph Orr, III, Kelli Orr Walker and Kim Orr DeAgano are the surviving spouse and children of Sharyn Orr, who passed away on May 4, 2015 from an intracranial hemorrhage ("ICH") that occurred on April 24, 2015.

Defendants Bayer HealthCare Pharmaceuticals, Inc., Bayer Pharma AG, Janssen Pharmaceuticals, Inc. and Janssen Research & Development, LLC deny Plaintiffs' allegations that Defendants are liable for damages under the Louisiana Products Liability Act ("LPLA"). Defendants contend that Xarelto's warnings to Mrs. Orr's prescribing physician were adequate and that any alleged inadequacy in the warning did not cause Mrs. Orr's injury.

Xarelto is a life-saving medication that was appropriately prescribed to Mrs. Orr by her doctor, Dr. Maurice Edward St. Martin, for stroke prevention, and the evidence demonstrates that the ICH she suffered on April 24, 2015 did not result from her use of Xarelto. Xarelto is in a class of medications known as novel oral anticoagulants

5

("NOACs") and was approved by the United States Food and Drug Administration ("FDA") for stroke prevention in patients with atrial fibrillation, like Mrs. Orr. The FDA-approved label contains accurate, science-based information enabling doctors to make an informed decision about the benefits and risks of prescribing this medication to their patients.

Under Louisiana law, Defendants' duty to warn is satisfied when the prescribing physician is informed of any potential side effects or risks of the drug's use so that he may intelligently decide on its use and advise the patient. Where the prescribing physician has adequate information to make an informed prescribing decision, the defendants cannot be liable. It is undisputed that Mrs. Orr needed to be on an anticoagulant medication due to her high risk for ischemic stroke. She suffered from a number of serious diseases in addition to atrial fibrillation, including congestive heart failure, decades of poorly controlled chronic hypertension, poorly controlled diabetes and chronic kidney disease and in the months leading up to her death was on numerous prescriptions medications and homeopathic treatments and supplements. Mrs. Orr's prescribing physician, Dr. St. Martin, confirmed that he reviewed Xarelto's label and that it properly warned him of all relevant risks associated with the medicine, including the risk of "serious or fatal bleeding" and the fact that a specific reversal agent for rivaroxaban is not available.

In July 2014, Dr. St. Martin prescribed Mrs. Orr a 15 mg dose of Xarelto, which was the appropriate and approved dose, as described in Xarelto's label, for a patient with Mrs. Orr's kidney function. Dr. St. Martin testified unequivocally that he reviewed Xarelto's label and that it properly warned him of all relevant risks associated with the medicine. He also testified unequivocally that an additional or different warning regarding the risks associated with use of Xarelto would not have changed his decision to prescribe Xarelto to treat Mrs. Orr's atrial fibrillation.

Plaintiffs cannot prove by a preponderance of the evidence that Xarelto was the medical cause-in-fact of Mrs. Orr's hemorrhage. Despite taking five different blood pressure medications at the same time, Mrs. Orr had poorly controlled chronic hypertension, which is the leading cause of ICH. The same ICH could have occurred with any anticoagulant or no anticoagulant, and in light of Mrs. Orr's chronic hypertension and other health-related risk factors, Plaintiffs cannot prove that, but for Xarelto use, Mrs. Orr would not have experienced the bleed. Indeed, Plaintiffs concede that it is unknown if Mrs. Orr even took Xarelto on the day of her bleed, and that, even if she did, she had most probably expelled the medicine during a vomiting episode.

Plaintiffs also cannot prove that earlier surgical intervention would have affected the outcome in Mrs. Orr's case. Mrs. Orr did not arrive at a facility with neurosurgical capabilities until nearly seven hours after her symptoms began, and by the time the treating neurosurgeon, Dr. Cuong Bui, evaluated her, Mrs. Orr's hemorrhage had already caused massive damage and had already stopped bleeding. Even with immediate surgical treatment, there is a very low likelihood of any recovery from an ICH like the one Mrs. Orr suffered, with or without anticoagulant use.

Plaintiffs separately contend that Defendants are liable under the LPLA for allegedly failing to provide adequate warnings and instructions to Dr. Bui, the neurosurgeon who treated Mrs. Orr at Ochsner, for the safe treatment of a patient taking Xarelto. Defendants satisfied their duty to warn under Louisiana law by providing adequate information to Dr. Maurice Edward St. Martin, the physician who prescribed Xarelto to Mrs. Orr. Further, even if Defendants had an additional duty to provide warnings and instructions to every physician who might encounter a patient taking Xarelto, a result unsupported by law, any warnings or instructions that might have been available to Dr. Bui would not have changed the outcome in this case, for the simple reason that Dr. Bui acknowledged that he did not read the Xarelto label. Where the physician did not read the label, Plaintiffs cannot establish causation, regardless of what information Plaintiffs claim the label should have included.

Defendants deny that there was a test available to Dr. Bui to assess Mrs. Orr's coagulation status. Because FDA has not approved or cleared a rivaroxaban-calibrated anti-factor Xa assay, such a test is not commercially available in the United States for physicians to use in a clinical setting. In addition, Mrs. Orr's normal PT test result cannot be read in the manner Plaintiffs suggest, and advising doctors to rely on a "normal" PT score in deciding to proceed with surgery could be dangerous.

Defendants also deny that earlier surgery would have changed the outcome in this case. The severity of Mrs. Orr's hemorrhage was graded as an ICH score of 3 and she presented with a Glasgow Coma Scale score of 6T when she arrived at Ochsner Main Campus, both prognostic indicators that are overwhelmingly predictive of death. Her bleed was so large and in such an inaccessible area of her brain, and she had suffered so much damage by the time she was evaluated for neurosurgical intervention, that she was unlikely to recover to any degree regardless of whether Dr. Bui had operated sooner.

Plaintiffs have stipulated they are not seeking punitive damages in this case. Defendants deny liability for any damages allegedly suffered by Plaintiffs. Defendants further contend that Plaintiffs cannot circumvent their burden of proving causation under the LPLA by purporting to seek loss of chance of survival as a separate measure of damages. No Louisiana court has ever applied loss of chance of survival as a measure of damages in a product-liability case, and nothing in the LPLA allows product-liability plaintiffs to recover damages on such a theory.

7. A list and description of the exhibits that each party intends to introduce at the trial.

   a. Pursuant to CMO 2E, the parties exchanged Exhibit Lists on May 9, 2017, and supplements to their Exhibit Lists on May 16, 2017. Defendants exchanged images of the stamped exhibits on May 11, 2017 and May 16, 2017. Plaintiffs previously exchanged images of the stamped exhibits for the *Boudreaux* trial as well as images of the unstamped versions of any new exhibit for the *Orr* trial. Plaintiffs have served today, May 23, 2017, a large electronic file that they represent contains stamped versions of all *Orr* exhibits. Defendants are working to confirm the production.

    b. The parties may in good faith supplement the Exhibit List with additional documents as necessary and shall provide any supplement list of exhibits to the opposing party as soon as the party can reasonably provide.

    c. Each party shall submit to the Court, prior to the start of the trial, a hard copy of their respective Exhibit Lists. Further, the parties will provide at trial a hard copy of each trial exhibit marked with appropriate trial exhibit identification numbers.

    d. The parties recognize that they have listed more exhibits on their Exhibit Lists than they are likely to use at trial and, therefore, have agreed to the following protocol to govern how to raise exhibit objections before and during trial of the *Orr* case.

    e. <u>Protocol for Resolving Exhibit Objections During Trial</u>: The parties shall disclose exhibits to be used on direct examination by 8:30 a.m. on the day preceding the use of those exhibits. After exchange of exhibits, the parties will meet and confer in an attempt to resolve any objections to the use of such exhibits on direct examination. Any exhibits with outstanding objections will be brought to the Court's attention at the start of the day the following morning (i.e., the day the exhibits are to be used). The disclosures under this protocol are subject to good faith supplementation by the parties if necessary. Objections to exhibits used on cross examination will be raised contemporaneously.

8. Deposition testimony that each party intends to offer into evidence at trial.

    a. Pursuant to CMO 2E, the parties exchanged names of witnesses for whom they may designate deposition testimony during trial, but who were not previously designated in the *Boudreaux* trial on May 8, 2017.

    b. <u>Protocol for Resolving Objections to Deposition Designations Prior to Trial</u>: The parties, having received the benefit of the Court's previous ruling in the *Boudreaux* matter, and recognizing the scope and breadth of the designation process, agreed to a pre-trial protocol for the exchange of designated deposition testimony before trial, beginning the week of May 8. Under said protocol, each party could serve on the other party deposition designations of up to 4 witnesses per week, with priority given to deposition testimony for witnesses not designated in *Boudreaux*. The parties agreed to exchange responses and counter-responses on a pre-determined schedule, so that a final designation, with all objections and responses, and exhibits with objections and responses, could be provided to the Court. The parties have finalized for the Court's review three (3) new designations for the following witnesses: Horvat-Broeker, Glombitza and Schwabe-Nessel. The parties continue to work together in an effort to finalize any additional designations as expeditiously as possible.

    c. <u>Protocol for Resolving Objections to Deposition Designations During Trial</u>: The parties have agreed to a similar protocol for trial, whereby any designations must be served on the opposing party at least 4 days prior to the day the deposition testimony is intended to be played or read to the jury, with responses and counter-responses due so that a final designation, with all objections and responses, and exhibits with objections and responses could be provided to the Court at least two days prior to its intended use at trial.

    d. The party proposing the designations will be responsible for cutting the video consistent with the parties' agreement and the Court's rulings. The opposing party will be entitled to review the cut video in its entirety before it is played in Court.

    e. This protocol would apply to depositions read or played into the record independently and would not apply to clips of depositions used during closing or the examination of a witness. In opening statements, parties shall not play clips of video depositions, but may reference deposition testimony in accordance with the directives of the Court.

    f. The parties have also agreed to read a short statement before each video deposition is played to identify for the jury the person who will be testifying.

9. Witness lists:

    a. Pursuant to CMO 2E, the parties exchanged Witness Lists on May 5, 2017.

    b. The parties have agreed that each party will provide at least 24 hours' notice of witnesses to be called and stamped exhibits to be used on direct examination (i.e., 8:30 a.m. Monday disclosure of witnesses and documents to be used on direct examination on Tuesday).

    c. Undersigned counsel for all parties certify that they have exchanged expert reports in accordance with the Federal Rules of Civil Procedure and prior court orders. Undersigned counsel for all parties further certify they understand that experts whose reports have not been furnished to opposing counsel shall not be permitted to testify, nor shall experts be permitted to testify to opinions not included in the reports timely furnished.

10. This case is set to be heard before a jury.

    a. Pursuant to CMO 2E, the parties submitted a jury questionnaire on April 26, 2017. The parties received responses to the questionnaires by prospective jurors on May 11, 2017. The parties met with the Court on May 17, 2017, and the Court struck 24 potential jurors for hardship or cause. Further, the Court has advised that responses to questionnaires from additional prospective jurors will be provided to the parties on May 23, 2017. The parties have agreed to review the responses to the questionnaires completed by additional prospective jurors to see whether

agreement can be reached on strikes for cause. The parties will meet with the Court on May ____, 2017 to review the additional questionnaires and to make preliminary challenges for cause.

    b. The case will be heard by nine jurors. There will be no alternates. All jurors will deliberate, and if any jurors need to be excused, there will be a minimum of six jurors remaining to deliberate.

    c. The Court will question prospective jurors first, and each party will have the opportunity to conduct voir dire.

    d. The parties submitted proposed jury instructions on May 16, 2017, defendants submitted a proposed Verdict Form on May 16, 2017, and the parties reserve the right to provide supplements and amendments during the trial. The plaintiffs will be submitting a Proposed Verdict Form.

    e. Per the Court's request, the parties may jointly submit an agreed-upon, proposed statement of the case, to be read to the jury at the outset of the trial. The Court will only read this statement to the jury if the parties reach agreement on the content.

11. The issue of liability will not be tried separately from that of quantum.

12. Trial shall begin on May 30, 2017 at 8:30 a.m. The parties estimate the trial will require approximately two to three weeks.

13. This pre-trial order has been formulated after conference at which counsel for the respective parties have met and conferred. Reasonable opportunity has been afforded counsel for corrections, or additions, prior to signing. Hereafter, this order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of the court to prevent manifest injustice.

Respectfully Submitted,

| | |
|---|---|
| /s/ Leonard A. Davis | /s/ Gerald E. Meunier |
| Leonard A. Davis (Bar No. 14190) | Gerald E. Meunier (Bar No. 9471) |
| ldavis@hhklawfirm.com | gmeunier@gainsben.com |
| HERMAN, HERMAN & KATZ, LLC | GAINSBURGH BENJAMIN DAVID MEUNIER |
| 820 O'Keefe Avenue | & WARSHAUER, LLC |
| New Orleans, LA 70113 | 2800 Energy Centre, 1100 Poydras Street |
| PH: (504) 581-4892 | New Orleans, LA 70163-2800 |
| FAX: (504) 561-6024 | PH: (504) 522-2304 |
| **Co-Plaintiffs' Liaison Counsel** | FAX: (504) 528-9973 |
| | **Co-Plaintiffs' Liaison Counsel** |

IRWIN FRITCHIE URQUHART & MOORE LLC

By: /s/ *James B. Irwin*
James B. Irwin
Kim E. Moore
IRWIN FRITCHIE URQUHART & MOORE LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
jirwin@irwinllc.com

DRINKER BIDDLE & REATH LLP

By: /s/ *Susan M. Sharko*
Susan M. Sharko
DRINKER BIDDLE & REATH LLP
600 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
susan.sharko@dbr.com

Rodney M. Hudson
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
Telephone: (415) 591-7500
Rodney.hudson@dbr.com

Chanda A. Miller
DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2700
Chanda.Miller@dbr.com

**Attorneys for Defendants Janssen Pharmaceuticals, Inc. and Janssen Research & Development, LLC**

WILKINSON WALSH + ESKOVITZ LLP

By: /s/ *Beth A. Wilkinson*
Beth A. Wilkinson
Jennifer L. Saulino
Jeremy Barber
WILKINSON WALSH + ESKOVITZ LLP
1900 M. Street NW, Suite 800
Washington, DC 20036
Telephone: (202) 847-4000
bwilkinson@wilkinsonwalsh.com
jsaulino@wilkinsonwalsh.com
jbarber@wilkinsonwalsh.com

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: /s/ *David E. Dukes*
David E. Dukes
J. Mark Jones
NELSON MULLINS RILEY & SCARBOROUGH LLP
1320 Main Street, 17th Floor
Columbia, SC 29201
Telephone: (803) 799-2000
David.Dukes@nelsonmullins.com
Mark.Jones@nelsonmullins.com

ARNOLD & PORTER KAYE SCHOLER LLP

By: /s/ *Andrew K. Solow*
Andrew K. Solow
Steven Glickstein
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8485
andrew.solow@apks.com
steven.glickstein@apks.com

William Hoffman
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
william.hoffman@apks.com

BRADLEY ARANT BOULT CUMMINGS LLP

By: */s/ Kevin C. Newsom*
Kevin C. Newsom
Lindsey C Boney IV
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place, 1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8803
knewsom@bradley.com
lboney@bradley.com

CHAFFE MCCALL L.L.P.
By: */s/ John F. Olinde*
John F. Olinde
CHAFFE MCCALL L.L.P.
1100 Poydras Street, Suite 2300
New Orleans, LA 70163
Telephone: (504) 585-7241
olinde@chaffe.com

**Attorneys for Bayer HealthCare Pharmaceuticals Inc. and Bayer Pharma AG**