# Exhibit A

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

```
IN RE:  XARELTO (RIVAROXABAN)    *
PRODUCTS LIABILITY LITIGATION    *      Docket No. 14-MD-2592
                                 *
                                 *      Section L
THIS DOCUMENT RELATES TO:        *
                                 *      New Orleans, Louisiana
Joseph Orr, et al.               *
v. Janssen Research &            *      May 30, 2017
Development, et. al.,            *
Case No. 15-CV-3708              *
                                 *
* * * * * * * * * * * * * * * *  *
```

TRANSCRIPT OF JURY TRIAL
BEFORE THE HONORABLE ELDON E. FALLON
UNITED STATES DISTRICT JUDGE
VOLUME I - AFTERNOON SESSION

Appearances:

For the Plaintiffs:          Levin Papantonio Thomas Mitchell
                               Rafferty & Proctor, P.A.
                             BY:  BRIAN H. BARR, ESQ.
                             316 South Baylen Street, Suite 600
                             Pensacola, Florida  32502

For the Plaintiffs:          Beasley Allen Crow Methvin
                               Portis & Miles, PC
                             BY:  ANDY BIRCHFIELD, ESQ.
                             Post Office Box 4160
                             Montgomery, Alabama 36103

For the Plaintiffs:          Gainsburgh Benjamin David
                               Meunier & Warshauer, LLC
                             BY:  GERALD E. MEUNIER, ESQ.
                             1100 Poydras Street, Suite 2800
                             New Orleans, Louisiana 70163

Appearances:

| | |
|---|---|
| For the Plaintiffs: | Goza & Honnold, LLC<br>BY: BRADLEY D. HONNOLD, ESQ.<br>11181 Overbrook Road, Suite 200<br>Leawood, Kansas 66211 |
| For the Plaintiffs: | The Lambert Firm<br>BY: EMILY C. JEFFCOTT, ESQ.<br>701 Magazine Street<br>New Orleans, Louisiana 70130 |
| For Bayer Healthcare Pharmaceuticals, Inc. and Bayer Pharma AG: | Wilkinson Walsh + Eskovitz, LLP<br>BY: BETH A. WILKINSON, ESQ.<br>1900 M Street NW, Suite 800<br>Washington, DC 20036 |
| For Bayer Healthcare Pharmaceuticals, Inc. and Bayer Pharma AG: | Nelson Mullins Riley & Scarborough, LLP<br>BY: DAVID E. DUKES, ESQ.<br>1320 Main Street, 17th Floor<br>Columbia, South Carolina 29201 |
| For Janssen Pharmaceuticals, Inc. and Janssen Research & Development, LLC: | Irwin Fritchie Urquhart & Moore, LLC<br>BY: JAMES B. IRWIN, ESQ.<br>400 Poydras Street, Suite 2700<br>New Orleans, Louisiana 70130 |
| Official Court Reporter: | Toni Doyle Tusa, CCR, FCRR<br>500 Poydras Street, Room B-275<br>New Orleans, Louisiana 70130<br>(504) 589-7778 |

Proceedings recorded by mechanical stenography, transcript produced by computer.

## INDEX

|  | Page |
|---|---|
| Opening Statements | |
|     Brian H. Barr, Esq. | 117 |
|     Andy Birchfield, Esq. | 140 |
|     Beth A. Wilkinson, Esq. | 144 |
| Kimberly Orr DeAgano | |
|     Direct Examination By Mr. Birchfield | 169 |
| Christopher C. Nessel (Deposition) | 200 |

tell him that there was a way to find out if Ms. Orr had taken her pill and she had too much drug in her system to operate.

You are going to hear there's a test readily available in the United States that can tell doctors whether it is safe to operate on a patient taking Xarelto, provide them enough information to make an informed decision. It's a test readily available and used all the time here in the United States. It's a test that Ms. Orr had done at Ochsner Baptist. This simple indicator test is the prothrombin time, or PT test, I was just talking to you about. It is a simple blood test that measures how long it takes for blood to clot. That's what it does.

So why will you hear that Ms. Orr's normal PT test result was so important? Why was that so important? It's important because Ms. Orr's normal PT test meant that she had not taken her pill that night. That's what you are going to hear. That's what makes this case so tragic.

Dr. Bui thought all he could do was wait because he didn't know that Ms. Orr's normal PT test meant he could immediately go back to surgery. He didn't know because Bayer and Janssen didn't tell him the truth. They told him he had to wait 24 hours from her last use of the drug and that Sharyn's normal PT test result was meaningless and he didn't need to consider it when deciding whether or not to go back to surgery.

If Dr. Bui had been told the truth, he could

12:56

1    have immediately gone to surgery and saved her life.
2              Now, Xarelto is an anticoagulant.  That's just a
3    big word for a blood thinner.  We've all heard about blood
4    thinners, and that's what it is.  Xarelto is a relatively new
5    blood-thinning drug.  It's been on the market since 2011, just
6    a few years before Sharyn's death.
7              Sharyn was prescribed a blood thinner because
8    she had a common condition in the heart, a condition hundreds
9    of thousands of folks her age have:  a flutter of the heart
10   known as atrial fibrillation.  We will probably call it AFib
11   throughout most of this trial because, frankly, that's a little
12   easier to say.
13             This fluttering in the heart can lead to the
14   formation of clots in the heart.  Those clots can make their
15   way up into the brain and cause a stroke.  AFib is a well-known
16   and readily treated condition here in the United States.  The
17   risk of stroke due to AFib has been successfully managed by
18   doctors for more than 50 years by prescribing blood thinners.
19             Xarelto, like all blood thinners, is designed to
20   make it harder for the blood to clot.  By making it harder for
21   the blood to clot, Xarelto, by necessity, increases the risk of
22   somebody bleeding.  Xarelto prevents the body from doing what
23   it naturally wants to do:  to clot, to stop everyday bleeding
24   events from getting out of control.  Small, routine, internal
25   bleeding events that most of us aren't even aware of because

01:12   1  was due to the concerns that telling doctors to actually use it
        2  to measure thinness of the blood would run counter to their
        3  entire patient convenience marketing message.
        4           All the defendants had to do is tell doctors in
        5  the label that when considering urgent surgery, assessment of
        6  the thinness of the blood of Xarelto is possible.  It's
        7  possible to test and see if doctors don't have to wait 24 hours
        8  for the drug to clear.  Tell doctors that in patients who are
        9  bleeding, measuring PT may assist in determining if a person
       10  can go back to surgery and provide the information they had
       11  about the ranges of PT that could be expected so doctors could
       12  make a decision.  That's all they had to do.  All the
       13  defendants had to do was inform Ms. Orr's doctors what they
       14  knew internally:  that PT could be used and is helpful.
       15  Instead they told them no test could be used, that PT was
       16  meaningless.  That's what Dr. Bui understood.
       17           Again, the Orr family is not critical of the
       18  doctors that cared for Ms. Orr on that night.  Doctors like
       19  Dr. Bui did all they could do, did all they knew to do, did
       20  what they were told to do by these companies.  And that's the
       21  problem:  The defendants did not tell the doctors the truth.
       22  As every minute ticked by, waiting, waiting, waiting, her
       23  chances of recovery and survival evaporated.
       24           You are going to hear from Dr. Peter Liechty.
       25  Dr. Liechty is a neurosurgeon, trained at the University of

01:14  1  Alabama Birmingham, that practices out of Thibodaux, Louisiana.
2  Dr. Liechty is going to explain to you that had Dr. Bui been
3  able to immediately operate, Ms. Orr most likely would have
4  survived and had a meaningful recovery.  She would still be
5  here with her family.  Dr. Liechty will explain that based upon
6  Ms. Orr's presentation in the emergency room and his
7  experience, her chance of survival would have been about
8  60 percent had Dr. Bui been able to immediately operate.  You
9  will hear that Ms. Orr could have been saved had these
10  companies told her doctors the truth.
11           Ms. Orr lost her life in a way that was
12  completely avoidable.  She lost even the chance to survive, the
13  chance to live.  Because of the actions of these defendants
14  leading to a delay in her surgery, the chance to survive and
15  make a recovery were taken away from her, taken away from her
16  family.
17           Now, you are also going to hear in this trial
18  that Sharyn should have never been put on the drug Xarelto.
19  Sharyn was prescribed Xarelto by her treating cardiologist,
20  Dr. St. Martin.  He prescribed that to reduce her risk of
21  stroke from her AFib when he prescribed it in February of 2014.
22           At the time Ms. Orr was prescribed Xarelto,
23  there were a number of other blood thinners on the market, a
24  number of other options for her.  The first option was
25  warfarin.  Warfarin works well to reduce the risk of stroke.

\* \* \*

**CERTIFICATE**

I, Toni Doyle Tusa, CCR, FCRR, Official Court Reporter for the United States District Court, Eastern District of Louisiana, certify that the foregoing is a true and correct transcript, to the best of my ability and understanding, from the record of proceedings in the above-entitled matter.

*s/ Toni Doyle Tusa*
Toni Doyle Tusa, CCR, FCRR
Official Court Reporter