UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE ELDON E. FALLON |
| Joseph Orr, Jr., et al. v. Janssen et al. Case No. 2:15-cv-03708 | MAGISTRATE NORTH |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE THE ADMISSION OF CERTAIN DOCUMENTS REFLECTING COMMUNICATIONS WITH FOREIGN REGULATORS**

Defendants anticipate that Plaintiffs will offer into evidence certain documents which they contend are evidence of Defendants' statements to foreign regulators about PT testing. As this Court explained in ruling on Plaintiffs' Motion *in Limine* to admit "evidence of Defendants' statements outside the United States" regarding PT testing, this evidence is irrelevant, and should be excluded. *See* Order and Reasons (May 26, 2017), at 11–13 (Doc. 6645). The Court held that although evidence of "Defendants' comments or what they previously said" is admissible, "[w]hat is not admissible . . . is what the Defendants did or what they put on Xarelto's label in other countries in order to comply with foreign regulatory bodies or agencies. This information is irrelevant." *Id.* at 13.

Because the evidence Plaintiffs likely will offer involves "what the defendants did or what they put in Xarelto's label in other countries in order to comply with foreign regulatory bodies or agencies," it should be excluded. Specifically, Plaintiffs should be precluded from offering (1) evidence of communications with regulators that quote portions of the label in order to circumvent the Court's exclusion of foreign labels, and (2) evidence of statements by Defendants that were made "in order to comply with foreign regulatory bodies or agencies."

**ARGUMENT**

**I.    Plaintiffs should not be allowed to circumvent this Court's exclusion of foreign labels by introducing communications with foreign regulators that quote portions of the label.**

This Court correctly ruled that foreign labeling is inadmissible. As Defendants have explained in earlier briefing to the Court on this issue, such evidence is irrelevant because it does not bear on the adequacy of Xarelto's labeling or design as a matter of U.S. law and FDA's own unique regulatory standards.[1] Admission of the evidence would also be unfairly prejudicial, would confuse the issues and mislead the jury, and would waste trial time on collateral issues by leading to a series of mini-trials necessary to determine the basis of each foreign regulatory action and label history, as well as the applicable foreign regulatory standards.[2]

Plaintiffs should not now be allowed to bypass this Court's ruling by introducing portions of foreign labels by way of Defendants' communications with foreign regulators that quote parts of the label. For example, Plaintiffs have designated as an exhibit Bayer's response to a 2014

---

[1] *See, e.g.*, *McDowell v. Eli Lilly & Co.*, 13 Civ. 3786, 2015 WL 845720, at *5 (S.D.N.Y. Feb. 26, 2015) ("The mere existence of a differently structured and written European label does not establish that the U.S. label is insufficient, misleading, or legally inadequate, nor is foreign regulatory action even appropriate as a subject of expert testimony in pharmaceutical cases."); *In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396, 488 (S.D.N.Y. 2016) ("Because this litigation is based on U.S. law, and because evidence regarding the FDA will be admitted, the actions taken by foreign regulatory agencies are not particularly probative and likely will be confusing."); *In re Viagra Prods. Liab. Litig.*, 658 F. Supp. 2d 950, 965–66 (D. Minn. 2009) ("[A]ny discussion of foreign regulatory actions is irrelevant . . . and should therefore be excluded."); *see also Jones v. Lederle Labs.*, 785 F. Supp. 1123, 1126–27 (E.D.N.Y. 1992) (because of less stringent testing standards in Japan, testimony regarding a vaccine's use in Japan provided "no acceptable evidence" to support plaintiffs' claim that a safer vaccine existed).

[2] *See In re Seroquel Prods. Liab. Litig*, 601 F. Supp. 2d 1313, 1318 (M.D. Fla. 2009) (holding that even "[a]ccepting for argument's sake that such evidence [concerning foreign regulatory actions] is relevant regarding notice and scienter, the fact remains that its probative value is greatly overmatched by the jury confusion, waste of time, and unfair prejudice that would result if the Court were to allow Plaintiffs to introduce this evidence during their main case"); *In re Viagra Prods. Liab. Litig.*, 658 F. Supp. 2d at 965–66 (holding that "to the extent that foreign regulatory information is relevant, 'its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury'"); *In re Baycol Prods. Liab. Litig.*, 532 F. Supp. 2d 1029, 1054 (D. Minn. 2007) ("allowing the admission of evidence of foreign regulatory actions, in a case that is governed by domestic law, would likely cause jury confusion").

"Clarification Request" from Health Canada (HC).  *See* PX 3061443 (Exh. A), 3061444 (Exh. B).[3]
That document is inadmissible for at least two reasons.  First, it contains a number of direct quotes from the Canadian Product Monograph.  *See, e.g.,* Exh. B, at 3, 5–7, 9.  Because this Court has held that foreign labels such as the Canadian Product Monograph are inadmissible, this document should be excluded.  Second, and separately, this document was prepared to provide "answers to the questions from the Clarification Request dated 03 Oct 2014," which advised Bayer that HC had "determined that updates to your Product Monograph (PM) may be appropriate to advise prescribers" of certain information.  *Id.* at 2.  Because this document clearly was prepared "in order to comply with foreign regulatory bodies or agencies," Order and Reasons at 13, it is inadmissible.

II.     **Plaintiffs should not be allowed to introduce other statements Defendants made "in order to comply with foreign regulatory bodies or agencies."**

Aside from communications that directly quote foreign labels, Plaintiffs also should be precluded from introducing other statements Defendants made "in order to comply with foreign regulatory bodies or agencies."  Order and Reasons at 13.  Generally, in order to obtain approval to market a prescription medicine, pharmaceutical companies submit an initial proposal, and then engage in a series of communications or negotiations with the appropriate regulatory body.  To the extent that Defendants responded to foreign regulators' requests for information or label revisions regarding PT testing in the course of those discussions, that evidence should be excluded.  That is because the Defendants' submission of any such statements is something "Defendants did . . . in other countries in order to comply with foreign regulatory bodies or agencies."  *See* Order and Reasons at 13.

For example, in Canada, Xarelto is accompanied by a Product Monograph that must be approved by HC.  Bayer proposed an initial draft of the Xarelto Product Monograph in 2007 that

---

[3] The exhibits referenced in this motion will be filed under seal with the Court on Monday, June, 5, 2017.

3

did not contain any information about whether PT can be used as a means to determine anticoagulant activity. XARELTO_BPAG_02614610 (Exh. C). In response to that draft, HC issued a Therapeutic Products Directorate, which directed Bayer to delete certain paragraphs of the draft, and indicated that those paragraphs:

> should be replaced by a paragraph summarizing the blood coagulations tests used to determine the pharmacodynamics of rivaroxaban (Inhibition of Factor Xa Activity, Prothrombin Time, Activated Partial Thromboplastin Time, and HepTest.). The replacing paragraph should also include a discussion of the validity and reliability of each blood coagulation monitoring test.

XARELTO_BPAG_34470653 (Exh. D). Bayer complied with that directive by submitting a revised draft of the Product Monograph in 2008, which explained that PT "is influenced by XARELTO in a dose dependent way if Neoplastin® is used for the assay. . . . In case of excessive doses, the PT is expected to be outside of this range." *Id.*

Then in December 2011, Bayer and HC exchanged Product Monograph proposals. *See* XARELTO_BHCP_00253639 (Exh. E). HC provided comments on the Monitoring and Laboratory Tests section, asking "which test has clinically relevant use? Provide guidance to clinicians." XARELTO_BHCP_00250336 (Exh. F). Again, Bayer responded to this request for more information, *see* XARELTO_BPAG_25881294 (Exh. G), and proposed the following addition to the label: "In patients who are bleeding, measuring the PT (Neoplastin®) may be useful to assist in determining an excess of anticoagulant activity." Exh. E, XARELTO_BHCP_00253648. The comments for that section indicate that this was "[p]roposed text sent to [HC] on Dec. 16, with [HC's] revisions from [a] Dec 16 [teleconference]." *Id.*

Bayer's statements to foreign regulators described above are precisely the sort of actions Defendants took "in order to comply with foreign regulatory bodies or agencies." The information provided to HC was in response to specific questions from that agency in the course of determining whether or not the proposed Xarelto Product Monograph complied with its regulations. As with

4

foreign labeling, this evidence is irrelevant because it does not bear on the adequacy of Xarelto's label as a matter of U.S. law, and would be unfairly prejudicial, would confuse the issues, and would waste trial time.

More recently, in 2013, HC informed Bayer that "[a]s part of a class labelling action to ensure consistency of the Product Monographs (PM) of all Novel Oral Anticoagulants (NOAC), we are requesting the Xarelto PM be updated" with certain information. XARELTO_JANSSEN_04288539 (Exh. H). Specifically, HC requested that the label state, among other things, that

> Although there is no need to monitor anticoagulant effect of XARELTO during routine clinical practice, in certain infrequent situations such as overdosage, acute bleeding, urgent surgery, in cases of suspected non-compliance, or in other unusual circumstances, assessment of the anticoagulant effect of rivaroxaban may be appropriate. Accordingly, measuring PT using the Neoplastin reagent, or Factor-Xa assay using rivaroxaban-specific calibrators and controls, may be useful to inform clinical decisions in these circumstances.

*Id.* As an initial matter, although Plaintiffs have designated this document as an exhibit, this proposed labeling from HC is irrelevant and should be excluded pursuant to this Court's motion *in limine* ruling. Plaintiffs have also designated as an exhibit a slideshow Bayer prepared in order to respond to HC's request. *See* XARELTO_JANSSEN_042885386 (Exh. I); XARELTO_JANSSEN_04288538 (Exh. J). As with the documents described above, this document is inadmissible because it was prepared "in order to comply with foreign regulatory bodies or agencies."

In sum, evidence showing Defendants' responses to requests for additional information or revised language from foreign regulatory bodies is inadmissible pursuant to this Court's earlier ruling on foreign labeling and regulatory actions.

## CONCLUSION

The evidence Defendants anticipate will be offered by Plaintiffs, which contains foreign labeling and Defendants' statements made in order to comply with foreign regulatory bodies or agencies, should not be admitted.

Respectfully submitted,

Respectfully submitted,
Irwin Fritchie Urquhart & Moore LLC
By: /s/ *James B. Irwin*
James B. Irwin
Kim E. Moore
Irwin Fritchie Urquhart & Moore LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
jirwin@irwinllc.com

Drinker Biddle & Reath LLP
By: /s/ *Susan M. Sharko*
Susan M. Sharko
Drinker Biddle & Reath LLP
600 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
susan.sharko@dbr.com
Rodney M. Hudson
Drinker Biddle & Reath LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
Telephone: (415) 591-7500
Rodney.hudson@dbr.com

Wilkinson Walsh + Eskovitz LLP
By: /s/ *Beth A. Wilkinson*
Beth A. Wilkinson
Jennifer L. Saulino
Jeremy Barber
Wilkinson Walsh + Eskovitz LLP
1900 M. Street NW, Suite 800
Washington, DC 20036
Telephone: (202) 847-4000
bwilkinson@wilkinsonwalsh.com
jsaulino@wilkinsonwalsh.com
jbarber@wilkinsonwalsh.com

Nelson Mullins Riley & Scarborough LLP
By: */s/ David E. Dukes*
David E. Dukes
J. Mark Jones
Nelson Mullins Riley & Scarborough LLP
1320 Main Street, 17th Floor
Columbia, SC 29201
Telephone: (803) 799-2000
David.Dukes@nelsonmullins.com
Mark.Jones@nelsonmullins.com

Chanda A. Miller
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2700
Chanda.Miller@dbr.com

*Attorneys for Defendants Janssen Pharmaceuticals, Inc. and Janssen Research & Development, LLC*

Arnold & Porter Kaye Scholer LLP
By: /s/ *Andrew K. Solow*
Andrew K. Solow
Steven Glickstein
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8485
andrew.solow@apks.com
steven.glickstein@apks.com


William Hoffman
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
william.hoffman@apks.com

Bradley Arant Boult Cummings LLP
By: */s/ Lindsey C Boney IV*
Kevin C. Newsom
Lindsey C Boney IV
Bradley Arant Boult Cummings LLP
One Federal Place, 1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8803
knewsom@bradley.com
lboney@bradley.com

Chaffe McCall L.L.P.
By: /s/ *John F. Olinde*
John F. Olinde
Chaffe McCall L.L.P.
1100 Poydras Street, Suite 2300
New Orleans, LA 70163
Telephone: (504) 585-7241
olinde@chaffe.com

*Attorneys for Bayer HealthCare Pharmaceuticals Inc. and Bayer Pharma AG*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 4th of June, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs by operation of the court's electronic filing system and a copy of the proposed documents to be placed under seal sent to Plaintiffs' Liaison Counsel by email transmission.

*/s/      James B. Irwin*