UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: XARELTO (RIVAROXABAN) | * | MDL 2592 |
| PRODUCTS LIABILITY LITIGATION | * | |
| | * | SECTION L |
| THIS DOCUMENT RELATES TO: | * | |
| *Orr v. Bayer Corp., et al.* | * | JUDGE ELDON E. FALLON |
| Case No. 2:15-cv-03708 | * | |
| | * | MAGISTRATE JUDGE NORTH |

* * * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO DEFENDANTS'
BRIEF IN OPPOSITION TO THE ADMISSION OF CERTAIN DOCUMENTS
REFLECTING COMMUNICATIONS WITH FOREIGN REGULATORS**

Plaintiffs submit this response to Defendants' *Brief In Opposition To The Admission Of Certain Documents Reflecting Communications With Foreign Regulators Brief In Opposition To The Admission Of Certain Documents Reflecting Communications With Foreign Regulators.*[1] This Court has already ruled on *Plaintiff's Motion in Limine No. 35 to Admit Evidence of Statements Outside the United States that Directly Contradict their Position that PT Neoplastin is not Useful and Does and Does Not Work to Determine the Anticoagulant Activity of Xarelto*[2] (hereinafter "MIL 35"), as follows:

> This Court finds that anything the Defendants have said to anyone, even foreign regulatory bodies, should be admissible. What is not admissible, however, is what the Defendants did or what they put on Xarelto's label in other countries in order to comply with foreign regulatory bodies or agencies. This information is irrelevant. Accordingly, Plaintiffs' Motion is **SUSTAINED** insofar as it relates to Defendants' comments or what they previously said.[3]

---

[1] R. Doc. 6705.

[2] R. Doc. 6480.

[3] R. Doc. 6645, at 13-14.

Plaintiff has no intention to "circumvent" this Court's order. As set forth below, defense counsel has opened the proverbial door to admitting exactly the type of evidence that Defendants seek to exclude. Allowing Defendants to tell the jury the half-truth that "[o]utside this courtroom they don't say that PT is useful" will permit a falsehood that is severely prejudicial to Plaintiffs, unless such testimony is allowed to be rebutted by Plaintiffs with Defendants' own contradictory statements to foreign regulatory authorities "[o]utside this courtroom" (which constitute party admissions).

## ARGUMENT[4]

### I. PLAINTIFF HAS NO INTENTION TO CIRCUMVENT THE COURT'S ORDER

The Defendants are required in the Warnings and Precaution section of the U.S. label to:

> identify any laboratory tests **helpful** in following the patient's response or in identifying possible adverse reactions….[5]

In her opening statement, defense counsel repeatedly told the jury that PT is not helpful and that "outside of this courtroom, they don't say that PT test is useful":

- Plaintiffs have suggested to you that there is actually a test that we wouldn't put in the label. Think about what they are saying. They are saying we know about a test and we lied about it because we didn't want to save people's lives. That's what they are asking you to believe in this case.[6]

- There's not a piece of literature that says you should use the PT test to test in an emergency situation before you do surgery so that you will know whether the person has Xarelto in their system. In fact, you are going to see the opposite.[7]

- So you're going to hear that while our scientists wanted PT to be able to be a test that could do more, *we have never been able to*

---

[4]Plaintiff incorporates herein the arguments set forth in Plaintiff's MIL 35.

[5]21 CFR § 201.57 (c)(6)(iii).

[6]Exhibit Tr. at 165:15 to 165:19.

[7]Tr. at 159:5-15.

> *prove that it would be helpful*, and doctors have told us that it is not a helpful test. Independent studies that have nothing to do with us say it's not a helpful test, and we are going to show you those.[8]

- That's what I mean. You are going to hear doctors say if we looked at that test for Mrs. Orr and it said she was normal, it doesn't mean that she didn't have a lot in her system. So if we went in there and did surgery, thinking that that test said it was normal, that would be dangerous. That's why doctors don't do it, the reason we don't put it in the label. But guess what? The doctors don't always care what we say. They do read the studies. And you're going to hear these doctors that come in here, they read the studies. They talk to each other. **Outside of this courtroom they don't say that that PT test is useful.** None of them say that. They say that it could cause danger to their patients and they are certainly not going to use it unless it is helpful and proven helpful. And article after article that you are going to see in this case is going to tell you that there's no proven benefit.[9]

Bayer's November 2014 response to Health Canada's "Clarification Request"[10] contradicts the half-truth told to the jury by Defendants on the first day of trial, and constitutes a clear party admission showing Bayer's knowledge that PT *is* clinically useful to assess the anticoagulant activity of Xarelto in "infrequent situations," including the very situation at issue here where Mrs. Orr suffered an acute bleed and required urgent surgery. Specifically, in the Executive Summary, Bayer communicates to Health Canada as follows:

> The sponsor recognizes that in certain, infrequent situations (such as overdosage, **acute bleeding, urgent surgery,** suspected non-compliance, or in other unusual circumstances) assessment of the anticoagulant effect of XARELTO **may be desirable**. In these circumstances, chromogenic assays **can be utilized**. The XARELTO Product Monograph provides guidance to physicians regarding the possibility to monitor patients, as clinical indicated:
>
> "Although there is no need to monitor clinical practice, in certain infrequent situations such as overdosage, **acute bleeding, urgent surgery**, in cases of suspected noncompliance, or in other unusual

---

[8]*Id.* at 166:13-18.

[9]*Id.* at 167:3-18 (emphasis added).

[10]PX 3061443 (Def. Exh. A) and PX 306144 (Def Exh. B) filed under seal by Defendants.

circumstances, assessment of the anticoagulant effect of rivaroxaban may be appropriate. Accordingly, **measuring PT… may be useful** to inform clinical decisions in these **circumstances**."[11]

Bayer's communications with Health Canada contradict what the jury has been told by Defendants about the usefulness of PT, and further demonstrates that Bayer knew how to instruct prescribers in emergency situations, like Mrs. Orr's, to assess the anticoagulation effect of Xarelto using PT. It is clear that Dr. Bui, Mrs. Orr's neurosurgeon, was deprived of such an instruction. Dr. Bui testified that, because there was "no test or no reversal," Mrs. Orr's urgent surgery was delayed.[12]

Bayer's November 2014 response to Health Canada's "Clarification Request"[13] is admissible and fits squarely within this Court's ruling that "anything the Defendants have said to anyone, even foreign regulatory bodies, should be admissible."[14] Furthermore, to exclude the direct quotes from the Canadian Product Monograph would be highly prejudicial and would strip the context from the surrounding communication which this Court has ruled is admissible when it sustained Plaintiff's MIL 35. Clearly, the probative value outweighs any potential prejudice to the Defendants, and the document should be admitted.

## II. PURSUANT TO THIS COURT'S RULING, PLAINTIFFS SHOULD BE ALLOWED TO INTRODUCE DEFENDANTS' STATEMENTS MADE TO FOREIGN REGULATORY BODIES OR AGENCIES IN LIGHT OF DEFENDANTS' CONTRADICTORY STATEMENTS TO THE JURY

---

[11] Def. Exh. B, 306144 at 2 (emphasis added).

[12] Tr. at 773:21 to 773:24.

[13] PX 3061443 (Def. Exh. A) and PX 306144 (Def Exh. B) filed under seal by Defendants.

[14] R. Doc. 6645, at 14.

As stated above, this Court sustained Plaintiffs MIL 35 and ruled that "anything the Defendants have said to anyone, even foreign regulatory bodies, should be admissible."[15] The Court clarified "[w]hat is not admissible, however, is what the Defendants did or what they put on Xarelto's label in other countries in order to comply with foreign regulatory bodies or agencies."[16] Defendants' argument is nothing less than an extreme feat of logical fallacy. They argue that since all communications to foreign regulatory bodies regarding the use of PT as a means to determine anticoagulant activity were made in an effort to comply with foreign regulatory bodies, and as such, none of these statements are admissible. In other words, Defendants argue that the Court's clarification essentially nullifies its ruling in sustaining Plaintiff's MIL 35.

A party admission is a party admission whether it is made in Canada, China, or Zimbabwe. The truth knows no borders. It is simply absurd for Defendants to suggest that there is something unique or different about a foreign regulatory regime that somehow compels them to make contradictory statements about the safety and efficacy of Xarleto in one country, but not another. The so-called difference in "regulatory requirements" does not explain their statements to Canadian regulators that PT is a useful means to determine anticoagulant activity when there has been an acute bleed or in an urgent surgical situation. Defendants cannot have it both ways. Either PT is, or it is not a helpful test. Defendants' position on PT cannot be used as a shield and a sword -- where they take the position with regulators that PT is helpful, yet they take the position with the jury that PT is not helpful. Take for instance, the example of Bayer responding to Health Canada's request for more information in December 2011. It is Bayer's knowledge of the scientific data that guides what information is provided to the regulatory authority. Bayer

---

[15] R. Doc. 6645, at 13.
[16] *Id.*

decided to propose the following language: "In patients who are bleeding, measuring the PT (Neoplastin) may be useful to assist in determining an excess of anticoagulation activity."[17] It was *not* something unique about the regulatory scheme of Canada that prompted Bayer to propose this language. Clearly, Bayer was aware that "measuring the PT (Neoplastin) may be useful to assist in determining an excess of anticoagulation activity" based on its understanding of the scientific data available. It is no secret, as defense counsel's opening statement made clear, that the primary defense in this case is that *"[o]utside of this courtroom they don't say that that PT test is useful."* To exclude highly relevant and critical evidence contrary to Defendants' position would severely prejudice the Plaintiffs.

## CONCLUSION

When Defendants stand before the jury and claim that PT is not useful – they are being dishonest not only with the jury, but, by extension, to physicians in the United States, as well as doctors in other countries. Plaintiffs should not be unfairly prohibited from challenging the credibility of this false statement, and intend to do so pursuant to this Court's order on Plaintiff's MIL 35. For the reasons set forth above, this Court should admit the documents challenged in Defendants' brief.

Dated: June 5, 2017

Respectfully submitted,

*/s/ Leonard A. Davis*

Leonard A. Davis, Esq. (Bar No. 14190)
**HERMAN, HERMAN & KATZ, LLC**
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Email: ldavis@hhklawfirm.com

---

[17]Def. brief at 4 citing Def Exh. E. XARELTO_BHCP_002538648.

>*/s/ Gerald E. Meunier*
>Gerald E. Meunier (Bar No. 9471)
>***GAINSBURGH BENJAMIN DAVID MEUNIER & WARSHAUER, LLC***
>2800 Energy Centre, 1100 Poydras Street
>New Orleans, LA 70163-2800
>Phone: (504) 522-2304
>Fax: (504) 528-9973
>Email: gmeunier@gainsben.com
>
>*Plaintiffs' Liaison Counsel*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 5, 2017, the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs and Defendants by operation of the court's electronic filing system and served on all other plaintiff counsel via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre-Trial Order No. 17.

>*/s/ Gerald E. Meunier*
>**GERALD E. MEUNIER**