## Geiger Designation Exhibits

| Depo Exhibit No. | Plaintiffs' Exhibit No. | Document Description | Date | Objection | Plaintiff's Response to Objections |
|---|---|---|---|---|---|
| Geiger 02 | 3041252 | Xarelto Rivaroxaban BAY 59-7939 | 6/9/2008 | MIL 2 - Sustained, Relevance - Documents Not Relied Upon by Plaintiff/Prescribers, Omnibus MIL 1 - Sustained, Relevance - Market Share/Marketing Spend/Profit, MTD Abandoned Claims - Reserved, Plaintiffs' Concession - OD Dosing, Plaintiffs' Concession - Routine Monitoring, Plaintiffs' Concession - PT Testing/Dose Adjustments, Hearsay - Not a Business Record, P | Power point slide created by Ms. Geiger in the regular course of her employment about Xarelto as she admits at 42:6-15. The designated testimony is not about marketing pieces that would have been used to promote prescription of Xarelto by prescribing physicians, but instead is relevant to the overall commercial and business plan of the company to market an anti-coagulant that did not require any type of measurement or monitoring of plasma blood levels, and how that commercial plan was probative of the company's reasoning for rejecting the scientific evidence that PT could be used to measure the drug exposure levels, anticoagulant activity, and bleeding risk for patients. The testimony is relevant to motive, and credibility for why the company failed to warn about the usefulness of a PT test. Further the testimony is not regarding profits from Xarelto, or the companies' overall value, revenues, or market share. |
| Geiger 05 | 7741 | Collaborative Development and License Agreement | 10/1/2005 | [Including objections to Exhibit E to Geiger 5] Relevance - CDLA, P, MIL 2 - Sustained, Relevance - Documents Not Relied Upon by Plaintiff/Prescribers | See response to Geiger 2 above. Additionally document used to refresh the witness recollection. Additionally relevant to plaintiff's claims concerning need for measurement. Ms. Geiger is testifying about the overall commercial and business plan for the drug. Defendants' Collaborative Development Agreement (CDLA) and specifically defined the target product (Xarelto before it had a name) as blood thinner that required no monitoring before clinical trials had been completed demonstrating that the product marketing profile was more relevant than safety. |
| Geiger 14 | 3052864 | 2011 SPAF Tactical Plan | 6/7/2010 | MIL 2 - Sustained, Relevance - Documents Not Relied Upon by Plaintiff/Prescribers, Omnibus MIL 1 - Sustained, Relevance - Market Share/Marketing Spend/Profit, P, Hearsay - Not an Opposing Party Statement | See response to Geiger 1 above. The document relevant to the overall commercial and business plan of the company to market an anti-coagulant that did not require any type of measurement or monitoring of plasma blood levels. It is a business document. |
| Geiger 34 | 1426816 | Xarelto 2012 Business Plan - Driving Growth | 6/7/2010 | MIL 2 - Sustained, Relevance - Documents Not Relied Upon by Plaintiff/Prescribers, P, Omnibus MIL 1 - Sustained, Relevance - Market Share/Marketing Spend/Profit, MTD Abandoned Claims - Reserved, Plaintiffs Concession - OD Dosing, Relevance - RECORD/RECORD 4/DVT/PE, Relevance - Non-approved Indications | See response to Geiger 1 above. The document relevant to the overall commercial and business plan of the company to market an anti-coagulant that did not require any type of measurement or monitoring of plasma blood levels. It is a business document. The witness testifies that the document she was responsible for contributing parts to the business plan that was from her custodial file See 574:21-575:10. |
| Geiger 35 | 3017856 | E-mail | 9/12/2008 | Hearsay - Not a Business Record | At 587:1-578:19 the witness testifies that she received this email from her direct supervisor Nauman Shah in the course of her job working on Xarelto. |
| Geiger 36 | 5767361 | Johnson & Johnson Quarterly Reports | | Attorney compiled document with attorney writing on it, Authentication 901, Incomplete, Omnibus MIL 1 - Sustained, Relevance - Market Share/Marketing Spend/Profit, P, Relevance - Other Products | Document is a business document taken from the J&J websit which was used to refresh the witness recollection, which as the testimony reflects it did. In fact at 602:3-5 the witness concedes that the use of the document verified and refreshed what she wrote in Geiger 2 when she states "I suppose. And I guess you've proven that." |
| Geiger 37 | 3041264 | E-mail | 5/27/2008 | Omnibus MIL 1 - Sustained, Relevance - Market Share/Marketing Spend/Profit, P, Relevance - Other Products | See Plaintiff responses to Geiger-2 above. Ms Geiger testified that she received and would have read the email which was found in her custodial file. Ms. Geiger testified that she received the email found in her custodial file. She clearly has personal knowlege and refelcted in her answers. Its a party admission as the email is from the Chairmain of the Pharmaceutical group. Ms. Geiger testifeid to how critical Xarelto with no monitoring was to J&J that it was accelerated to market while at J&J that there was a needo to monitor time defendants were aware that Xarelto's anticoagulant effect could not be reversed and that there was a needo to monitor the drug by using Neoplastin PT. This is relevant to Plaintiff's failure to warn claim. |
| Geiger 38 | 3038234 | E-mail | 1/22/2010 | MIL 2 - Sustained, Relevance - Documents Not Relied Upon by Plaintiff/Prescriber, P, Hearsay - Not a Business Record | See Plaintiffs response to Geiger 2 and 37 above. This is another email which Ms.Geiger is on and admits that she received in the normal course of J&J's business (See 618:5-19). Ms. Geiger testified that she received the email found in her custodial file. She clearly has personal knowlege and refelcted in her answers. Its a party admission. Ms. Geiger testifeid as stated in the Email about how critical Xarelto was to J&J and its pipeline. Ms. Geiger's memory was properly refreeshed withthe email. |
| Geiger 39 | 3043971 | US Commercial Strategy and Marketing Plan | 7/1/2008 | MIL 2 - Sustained, Relevance - Documents Not Relied Upon by Plaintiff/Prescribers, P, Hearsay - 801/802, Relevance - Non-approved Indications | See Plaintiff response to Geiger 40 below. |
| Geiger 40 | 3043970 | E-mail | 7/29/2008 | MIL 2 - Sustained, Relevance - Documents Not Relied Upon by Plaintiff/Prescribers, P, Hearsay - 801/802, Relevance - Non-approved Indications | This is an email that Ms. Geiger received in the regular course of business from her direct supervisor Nauman Shah. She admits as much at 628:20 attaching a Xarelto commercial plan (Geiger 39). Mr. Shah provided Ms Geiger with the plan and in the email told her "... Worth reading." The plan establishes the regulatory and launch plan and how it was so important to launch Xarlto ahead of the fierce copetition that the progam was accelerated. commercial and business plan of the company to market an anti-coagulant that did not require any type of measurement or monitoring of plasma blood levels, and how that commercial plan was probative of the company's reasoning for rejecting the scientific evidence that PT could be used to measure the drug exposure levels, anticoagulant activity, and bleeding risk for patients. The testimony is relevant to motive, and credibility for why the company failed to warn about the usefulness of a PT test. Further the testimony is not regarding profits from Xarelto, or the companies' overall value, revenues, or market share. |

1

| | | | | |
|---|---|---|---|---|
| Geiger 42 | 3054065 | Xarelto 2010 Strategic Plan Brand Summary | 4/26/2010 | MIL 2 - Sustained, Relevance - Documents Not Relied Upon by Plaintiff/Prescribers, Omnibus MIL 1 - Sustained, Relevance - Market Share/Marketing Spend/Profit, P, Relevance - Non-Approved Indications | Ms. Geiger at 656:14-22 concedes she would have received this in regular course of business at Jannsen whil working on Xarelto. It is another Xarelto commercial plan. Ms. Geiger testifies based on the plan about how it was important for Xarleto to be first to market. Again the testimony is relevant to motive, and credibility for why the company failed to warn about the usefullness of a PT test. Further the testimony is not regarding profits from Xarelto, or the companies' overall value, revenues, or market share. The document similarly refeshes her recollecton abouy how the delay in launch the ORS indication due the Record trial problems delayed the Afib indicaiton when the goal of the company was to accellerate to market to be first ahead of Pradaxa which did not happen. It further establishes that Defendants were in such a rush to gain commercial superiority they filed fro priority review with the FDA but the request was rejected because there other safter altehrnatives including wafarin and pradax already on the market. |
| Geiger 43 | 3058417 | Xarelto (Rivaroxaban) Forecast Overview | 6/13/2008 | MIL 2 - Sustained, Relevance - Documents Not Relied Upon by Plaintiff/Prescribers, Omnibus MIL 1 - Sustained, Relevance - Marketing Spend, Profit, Compensation, P | Email chain with Ms. Geiger, her boss and other Jannsen colleagues discussing the impact of Pradaxa launch ahead of Xarelto. The email was exchanged in the in the regular course of her employment about Xarelto as she admits at 42:6-15. The designated testimony is not about marketing pieces that would have been used to promote prescription of Xarelto by prescribing physicians, but instead is relevant to the overall commercial and business plan of the company to market an anti-coagulant that did not require any type of measurement or monitoring of plasma blood levels, and how that commercial plan was probative of the company's reasoning for rejecting the scientific evidence that PT could be used to measure the drug exposure levels, anticoagulant activity, and bleeding risk for patients. The testimony is relevant to motive, and credibility for why the company failed to warn about the usefulness of a PT test. Further the testimony is not regarding profits from Xarelto, or the companies' overall value, revenues, or market share. |
| Geiger 58 | 3045566 | E-mail | 8/28/2009 | Omnibus MIL 1 - Sustained, Relevance - Market Share/Marketing Spend/Profit, P, Hearsay - Not a Business Record | Email chain with Ms. Geiger and her Jannsen collagues about the impact of Pradaxa lanunching firsst to market. The discussion is not about patient safety or the concern of having a delayed medicaiton to market that could help folks but rather about the fact that Bayer's stock price fell 4.1%. Party admission and business record as Ms. Geiger admits |
| Geiger 66 | 1356534 | E-mail | 2/22/2012 | MIL 2 - Sustained, Relevance - Documents Not Relied Upon by Plaintiff/Prescribers, P, MTD Abandoned Claims - Reserved, Plaintiffs' Concession - OD Dosing | Email chain that Ms. Geiger received and read in the regular course of her business that discusses commercial stategy and plans. The designated testimony is not about marketing pieces that would have been used to promote prescription of Xarelto by prescribing physicians, but instead is relevant to the overall commercial and business plan of the company to market an anti-coagulant that did not require any type of measurement or monitoring of plasma blood levels, and how that commercial plan was probative of the company's reasoning for rejecting the scientific evidence that PT could be used to measure the drug exposure levels, anticoagulant activity, and bleeding risk for patients. The testimony is relevant to motive, and credibility for why the company failed to warn about the usefulness of a PT test. Further the testimony is not regarding profits from Xarelto, or the companies' overall value, revenues, or market share. |

2