UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | * * * | MDL 2592 |
| | * | SECTION L |
| THIS DOCUMENT RELATES TO: *Orr v. Bayer Corp., et al.* Case No. 2:15-cv-03708 | * * * | JUDGE ELDON E. FALLON |
| | * | MAGISTRATE JUDGE NORTH |

* * * * * * * * * * * * * * * * * * * * * * * *

## PLAINTIFFS' BENCH MEMORANDUM
## REGARDING LOSS OF CHANCE OF SURVIVAL

Plaintiffs submit this bench memorandum to support providing jury instructions (i.e., Proposed Charges Nos. 32-34), and including questions on the verdict form, relating to the recovery of damages resulting from Mrs. Orr's "loss of a chance of survival." For the Court's full consideration of the issue, Plaintiffs respectfully incorporate the PSC Memorandum in Reply to Defendants' Opposition to Plaintiffs' Motion to Amend the Complaint in this matter. *See* Rec. Doc. 6458, filed 5/11/17.[1]

**I.  BACKGROUND**

Plaintiffs' proposed jury instructions and verdict form include charges and questions relating to the "loss of a chance" damage claims being pursued in this case, claims which are a

---

[1] In denying this motion for leave to amend, the Court noted:

> "Because, as Plaintiffs admit, lost change of survival is not a separate cause of action, it does not need to be specifically pled and the complaint need not be amended to specify the recovery of damages for such loss. It should be noted that this holding does not necessarily foreclose this element of damage and should not be construed as a finding that this item of damages is not recoverable under the LPLA. The Court defers its ruling as to whether lost chance of survival is recoverable in this case."

Order and Reasons, R.D. 6486 at p. 2.

1

clear "factual fit" with the evidence presented and the theory of liability. Plaintiffs allege that Defendants had not adequately instructed learned intermediaries, such as Dr. Bui, about the usefulness of PT testing to assess the anticoagulation status of Xarelto patients when in need of urgent surgery. As a result of this failure to adequately instruct, Dr. Bui delayed surgical intervention for Mrs. Orr by up to twelve hours, because he erroneously believed it necessary to allow whatever Xarelto remained in her system to clear before it would be safe to operate. This reduced Mrs. Orr's chance of survival because, as Dr. Bui testified, "time is brain." He confirmed that earlier surgery would have increased her chance of a better outcome.

Dr. Peter Liechty, in addition to also supporting Plaintiffs' "loss of a chance" claim, opined to a reasonable degree of medical certainty that "[p]rompt surgical intervention in Mrs. Orr's case would have resulted in a 60% probability of her survival with functional neurological outcome." This testimony would support a recovery based on wrongful death; but if the jury concludes that there was a less-than-50% chance of Mrs. Orr surviving even with earlier surgical intervention, then the damages recoverable herein will be based on the alternative claim that Defendants' fault resulted in the loss of a chance of Mrs. Orr surviving.

## II.   ARGUMENT

### A.   Louisiana courts allow a recovery for a "loss of chance of survival."

"Louisiana law regards the loss of a less-than-even chance of survival as a distinct, compensable injury, separate from wrongful death." *Pelas v. Golden Rule Ins. Co.,* No. 97-cv-3779, 1999 WL 438478, at *1 (E.D. La. June 28, 1999) (Judge Lemmon), *citing Smith v. State Dep't of Health & Hosp.,* 676 So. 2d 543, 547 (La. 1996). Such damages are recoverable in tort pursuant to La. Civ. Code Art. 2315 and/or 2315.1 (recovery in survival actions), and would be allowable as "damages" within the scope of LPLA cases. *See* LSA-R.S. 9:2800.53(5).

Neither does the recovery of "loss of a chance" damages alter the Plaintiffs' burden of proof in tort, or under the LPLA specifically. "Under Louisiana law, a plaintiff must show by the customary preponderance of the evidence that the defendant's negligence resulted in the loss of some chance of survival, however minimal." *Id., citing Smith,* 676 So. 2d at 547. "The Louisiana plaintiff need not show that 'but for' the defendant's actions the victim would have been cured, only that the defendant's actions deprived the victim of *some chance* of a better outcome." *Id., citing Smith,* 676 So. 2d at 547 (emphasis in original). "It is not necessary to prove that a patient would have survived if proper treatment had been given, but only that there would have been a chance of survival. Destruction of a two percent chance of survival has been held to present a jury question as to causation." *Hastings v. Baton Rouge Gen. Hosp.,* 498 So. 2d 713, 720 (La. 1986).

As to damages for a lost chance of survival, it is also well-settled that the jury considers the same evidence presented to a jury in a survival and wrongful death action. The fact-finder's determination of what to award for the loss of a chance of survival, in other words, is based on any and all relevant evidence, including evidence as to the surviving family's loss and any expert testimony assessing the chances of survival. *Smith,* 676 So. 2d at 549.

### B.  The Supreme Court of Louisiana has confirmed the applicability of the "loss of chance of survival" doctrine.

The Supreme Court of Louisiana has confirmed that this doctrine may be applied in the medical malpractice context, but has "left for another day" the question whether it may extend to cases not involving medical malpractice. *Smith,* 676 So. 2d 543 at 547 n.7. As such, this Court must do its best to determine whether the Supreme Court of Louisiana would allow a plaintiff to recover damages for a lost chance of survival in a case such as this, where defective pharmaceutical drug warnings that were devoid of adequate information and instruction prevented a physician from timely performing services which would have provided *some chance* of a better outcome.

3

*Id., citing Rogers v. Corrosion Prods., Inc.,* 42 F.3d 292, 295 (5th Cir. 1995) (if there are no decisions of the Supreme Court of Louisiana, a federal district court must do its best to determine what the Supreme Court of Louisiana would decide).

Important to note in this regard is the fact that the Supreme Court of Louisiana has on one occasion applied the lost chance of survival doctrine outside the strict context of a medical malpractice claim. In that case, *Weber v. State,* 635 So. 2d 188 (La. 1994), a lawsuit was filed by the survivors of a man who passed away after his employer had refused to authorize medical treatment for his occupational disease. *Id.* at 190. The employee received workers' compensation benefits for four years after he was diagnosed with an occupational disease, after which his treating physician advised that his condition would be terminal if he did not receive a heart transplant. *Id.* His employer refused to authorize the medical work-up for the transplant, so the employee submitted the matter to the Office of Workers' Compensation, which recommended the payment of all medical expenses related to the transplant. *Id.* The employer again refused, and before judicial intervention could be sought, the employee died. *Id.*

The trial court dismissed the case on grounds that relief could be sought only through the Workers' Compensation Act ("WCA"), and the appellate court affirmed, holding that the "intentional act" exception could not be expanded to include an employer's refusal to pay medical expenses. *Id.* at 190-191. The Supreme Court reversed both decisions, holding that there had been two separate incidents causing two separate injuries: (1) the occupational exposure that had caused the employee's occupational disease; and (2) the arbitrary refusal to pay for a heart transplant, which deprived the employee of a chance of survival. *Id.* at 192. The Court noted that the second incident had not occurred during the course of employment, and was only incidentally related to

4

employment, so relief could be pursued for that lost chance of survival outside the WCA. *Id.* at 192.

### C. Other courts have confirmed the applicability of the "loss of chance of survival" doctrine.

The decision of the Supreme Court of Louisiana in *Weber* formed part of the basis for Judge Lemmon of this Court to allow lost chance of survival damages to be pursued by the plaintiffs in *Pelas,* involving a death allegedly resulting from an insurer's failure to provide coverage for a bone marrow transplant. The Court made "its best 'Erie guess' and conclude[d] that if the Supreme Court of Louisiana were presented with this issue, it would not strictly limit the loss of chance of survival doctrine to medical malpractice cases." *Pelas,* 1999 WL 438478, at *3. In so doing, Judge Lemmon cited *Weber,* 635 So.2d at 192 & 192 n.4, as an example of at least one case where the Supreme Court of Louisiana had not limited application of the doctrine to medical malpractice cases. *Pelas,* 1999 WL 438478, at *1.

Judge Lemmon also cited cases from other jurisdictions to show that the loss of a chance doctrine was neither new nor limited, and had not begun as a feature of medical malpractice.[2] For example, the *Pelas* court cited to *Gardner v. Nat'l Bulk Carriers,* 310 F.3d 284, 287 (4th Cir. 1962), involving a ship's master who ultimately had been found liable by the appellate court for lost chance of survival damages based on his refusal to attempt the rescue of seaman. *Id.* at *2. Judge Lemmon observed that "[t]he fact that the duty to attempt rescue may have arisen from a

---

[2] *Pelas, supra,* at *2.

Indeed, application of this doctrine outside of the medical malpractice context has dated back to at least 1917, in the Court of Civil Appeals of Texas, in *Kansas City, Mexico & Orient Railway Co. v. Bell,* 197 S.W. 322 (Tex. Ct. App. 1917), although that case was not cited by the *Pelas* court. In that case, a shipment of hogs had been delayed, preventing exhibition of the hogs, and, thus, the possibility of obtaining prizes related to the exhibition of the hogs. *Id.* at 322. The court ruled that the plaintiffs could recover the value of the lost opportunity to compete, as long as they could establish that the defendants had been on notice at the time of contracting that those damages might result from breach of the shipment contract. *Id.* at 322-23.

long-standing principle of admiralty law is not significant," and "[t]he significant point is that, for whatever reason, the law values the protection of any chance of survival or reduction of harm." *Id.*

There were additional cases from other jurisdictions cited by the Court in *Pelas,* which allowed application of the lost chance of survival doctrine in cases not involving medical malpractice. *See, e.g., Blinzler v. Marriott Int'l,* 81 F.3d 1148, 1152 (1st Cir. 1996) (noting the availability of "loss of chance" damages under New Jersey law if the evidence shows a "substantial possibility" that the harm would have been averted had the defendant acted in a non-negligent manner, in a case involving the death of a hotel guest from a heart attack following a hotel operator's failure to promptly call an ambulance); *Weatherly v. Blue Cross Blue Shield Ins. Co.,* 513 N.W. 2d 347, 356 (Neb. Ct. App. 1994) (noting the recoverability of damages suffered as a result of "the loss of chance to receive reasonable and customary treatment for testicular cancer, which ultimately caused his death," for a bad faith claim against an insurer that had denied coverage for high doses of chemotherapy with bone marrow infusion).

While the facts in those cases are different from those in the case at hand, the essential reasoning remains the same. The alleged fault of the manufacturing defendants herein consisted of their failure to adequately instruct learned intermediaries about the usefulness of PT testing to assess the anticoagulation status of Xarelto patients in need of urgent surgical intervention. This fault is alleged to have resulted in delayed treatment, due to Dr. Bui's mistaken belief that there were no tests available to help him assess Mrs. Orr's anticoagulation status. In effect, Mrs. Orr needed to be "rescued," to the same extent that the decedents in the cases described above needed to be rescued, but the emergency rescue/response services in her case were delayed due to inadequate instructions for the safe and proper use of Xarelto.

This delay reduced Mrs. Orr's chance of survival, similar to how the delays in rescue and/or treatment in the cases described above reduced the decedents' chances of survival. Thus, the "loss of chance of survival" doctrine should apply to this case to allow for an award of damages resulting from the reduction in Mrs. Orr's chance of survival, just as the doctrine has been applied in the cases described above to allow for award of those damages.

      **D.**     **Cases from other courts that challenge the applicability of the "loss of chance of survival" doctrine are distinguishable.**

The *Pelas* court acknowledged that the Supreme Court of Oklahoma had explicitly limited application of the lost chance doctrine to medical malpractice cases in *Hardy v. Southwestern Bell Tel. Co.,* 910 P.2d 1024 (Ok. 1996). *See Pelas,* 1999 WL 438478, at *2. However, that case was readily distinguished based on an important difference between the law of Oklahoma and that of Louisiana. More specifically, Judge Lemmon noted that the "loss of chance" law in Oklahoma was much more lenient than the law in Louisiana in that "Oklahoma law affords the plaintiff a relaxed burden of proof of causation of the loss of chance" ("substantial likelihood "versus" more likely than not), which is what prompted the Court in *Hardy* to limit the doctrine to "special circumstances such as the physician-patient relationship." *See id.* at *3. In Louisiana, by contrast, the burden of proof is <u>not</u> relaxed – it remains a preponderance of the evidence – so there is no need to limit the circumstances for the doctrine's application. *Id.* at *3.

Judge Lemmon also noted that the limitation of the doctrine to medical malpractice cases in other jurisdictions was even less warranted in a case such as the one before her, where "the central dispute concerns medical treatment." *See Pelas, supra,* at p. *3.

Comparable reasoning applies with regard to some of the other non-Louisiana cases cited in prior briefing by Defendants. For example, in *Cipollone v. Liggett Group, Inc.,* 683 F. Supp. 1487 (D.N.J. 1988), decided under New Jersey law, the court noted that the lost chance doctrine

7

had been expanded to include the failure to rescue, but predicted that further expansion would not be permitted in design defect cases "to the extent that the doctrine eases the burden of establishing proximate cause." *Id.* at 1494-95. *See also Lowmack v. General Motors Corp.,* 967 F. Supp. 874, 881 (E.D. Va. 1997) (citing application of the "relaxed standard" under Virginia state law). Again, in Louisiana's adoption of the doctrine, no such relaxation occurs. The "preponderance of the evidence" standard applies to require proof that the fault <u>more likely than not</u> resulted in a diminished chance of survival.

In *Hill v. Novartis Pharms. Corp.,* 944 F. Supp. 2d 943 (E.D. Ca. 2013), the court also cited the relaxed causation standard associated with "loss of chance" claims under California law to justify the need to limit its applicability. *Id.* at 959-60. In that case, it also was noted that the plaintiff had not alleged a lost opportunity for a more beneficial treatment; she instead had alleged the development of a new condition (osteonecrosis of the jaw) that otherwise would not have developed if she had not been taking the drug at issue (Zometa). *Id.* at 960. Likewise, in *Grant v. American Nat'l Red Cross,* 745 A.2d 316 (D.D.C. 2000), the plaintiff alleged a new injury (the detection of hepatitis C due to the provision of tainted blood), and the court, applying the law of the District of Columbia, noted that its decision might have been different if the plaintiff's facts had involved the negligent treatment of an already-existing potentially fatal condition. *Id.* at 322.

Other cases cited in prior briefing by Defendants have no application to the situation at hand. *See, e.g., Moretti v. Wyeth, Inc.,* No. 08-cv-00396, 2009 WL 749532, at *3 (D. Nev. Mar. 20, 2009) (case involved attempts to hold brand manufacturers liable for harm suffered as a result of use of generic manufacturers' products); *Lempke v. Osmose Utilities Servs., Inc.,* No. 11-cv-

1236, 2012 WL 94497, at *4 (W.D. Pa. Jan. 11, 2012) (case involved the "increased risk of harm" standard, rather than a claim for damages based on a lost chance of survival);[3]

### III. ALLOWING THE "LOSS OF A CHANCE" CLAIM HEREIN WOULD BE CONSISTENT WITH THE RATIONALE OF THIS THEORY OF RECOVERY

The concept of "loss of a chance" damages may be seen as no more and no less than a variation on the established legal doctrine that a Plaintiff's preexisting vulnerability to a harmful outcome must be accounted for in damage cases. The "loss of a chance" theory, in other words, takes such pre-existing vulnerability into account, in order to valuate the precise interest harmed or destroyed by the tortious conduct. *See King,* Causation, Valuation, and Chance in Personal Injury Torts Involving Preexisting Conditions and Future Consequences. 90 Yale L.J. 1353, 1354 (1981). This concept closely fits the factual evidence and expert testimony of this case. If the jury declines to conclude that Mrs. Sharyn Orr's death itself was proximately caused by Defendants' fault, the jury then can and should weigh the evidence that Mrs. Orr at least lost a chance of survival due to Defendants' fault. In doing so, the precise interest lost will be valuated, by accounting for Mrs. Orr's already-vulnerable condition when medical services were compromised due to Defendants' alleged fault.

The jurisprudential rationale (citing the Restatement of Torts) that "loss of a chance" recovery traditionally is allowed in cases predicated on the failure to provide services, also supports the application of the doctrine in an LPLA drug product liability addressed to the

---

[3] Incidentally, the case noted that the "increased risk of harm" standard, which also is implicated by the Restatement (Second) of Torts § 323, had been extended beyond medical malpractice cases to cases involving a homeowner's failure to obtain medical help for a guest, and a personal care home's failure to take action for ten days after a resident left the facility without medication or signing out. *See id., citing Filter v. McCabe,* 733 A.2d 1274, 1278 (Pa. Super. 1999), and *Feeney v. Disston Manor Personal Care Home, Inc.,* 849 A.2d 500, 595-96 (Pa. Super. 2004).

adequacy of warnings to learned intermediaries. In these cases, needed medical <u>services</u> are impaired or prevented precisely because of the Defendants' fault (failure to warn).

Finally, as already discussed, the case law applying the "loss of a chance" recovery doctrine in failure-to-rescue cases, also provides conceptual support for its application here. As reflected in the Yale Law Journal article cited *supra*, what is being valuated by the "loss of a chance" theory is the loss or destruction of chances for a better outcome when this loss grows out of the plaintiff's preexisting vulnerability; and Mrs. Orr surely had a preexisting, vulnerable position on arrival at the Ochsner (main) hospital on the evening of 4/24/15. She was then in need of a "rescue" effectively indistinguishable from the situation of a drowning person; and the failure of her surgeon to throw her a lifeline sooner, to give her a better chance of <u>not</u> drowning, grew directly out of the result of Defendants' fault in this matter (failure to warn).

## IV. <u>CONCLUSION</u>

For these reasons, the Court should instruct the jury regarding the ability to recover damages for Mrs. Orr's "loss of chance of survival," and should include related questions on the verdict form. In doing so, Your Honor's "Erie guess" need only be that the Louisiana Supreme Court would allow such a claim for recovery in an LPLA failure-to-warn case against a pharmaceutical manufacturer, where the "learned intermediary" services allegedly are impaired or prevented by the Defendants' failure to warn.

Dated: June 6, 2017

Respectfully submitted,

*/s/ Leonard A. Davis*
Leonard A. Davis, Esq. (Bar No. 14190)
**HERMAN, HERMAN & KATZ, LLC**
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Email: ldavis@hhklawfirm.com

10

                */s/ Gerald E. Meunier*
                Gerald E. Meunier (Bar No. 9471)
                ***GAINSBURGH BENJAMIN DAVID MEUNIER & WARSHAUER, LLC***
                2800 Energy Centre, 1100 Poydras Street
                New Orleans, LA 70163-2800
                Phone: (504) 522-2304
                Fax: (504) 528-9973
                Email: gmeunier@gainsben.com

                ***Plaintiffs' Liaison Counsel***

## **PLAINTIFFS' STEERING COMMITTEE**

Andy D. Birchfield, Jr. (Co-Lead Counsel)
234 Commerce Street
Post Office Box 4160
Montgomery, Alabama 36103-4160
Phone: (334) 269-2343
Fax: (334) 954-7555
Email: Andy.Birchfield@BeasleyAllen.com

Brian H. Barr (Co-Lead Counsel)
316 Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7045
Fax: (850) 436-6044
Email: bbarr@levinlaw.com

Russell T. Abney
2100 RiverEdge Parkway,
Suite 720
Atlanta, Georgia 30328
Email: rabney@lawyerworks.com

Dr. Mark Alan Hoffman
1650 Market Street, Suite 3450
Philadelphia, PA 19103
Phone: (215) 574-2000
Fax: (215) 574-3080
Email: mhoffman@rossfellercasey.com

Michael Goetz
201 N. Franklin St., 7th Floor
Tampa, FL 33602
Phone: (813) 221-6581
Fax: (813) 222-4737
Email: MGoetz@ForThePeople.com

Neil D. Overholtz
17 E. Main Street , Suite 200
Pensacola, Florida 32501
Phone: (850) 916-7450

Bradley D. Honnold
11150 Overbrook Rd., Ste. 250
Leawood, KS 66211
Phone: (913) 451-3433
Email: bhonnold@gohonlaw.com

Frederick Longer
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215-592-4663
Email: flonger@lfsblaw.com

Jeffrey S. Grand
77 Water Street
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
Email: jgrand@seegerweiss.com

Roger C. Denton
100 S. 4th Street
St. Louis, MO 63102
Phone: (314) 621-6115
Email: rdenton@uselaws.com

Dianne M. Nast
1101 Market Street, Suite 2801
Philadelphia, Pennsylvania 19107
Phone: (215) 923-9300
Email: dnast@nastlaw.com

Ellen Relkin
700 Broadway
New York, New York 10003
Phone: (212) 558-5500

Fax: (850) 916-7449  
Email: noverholtz@awkolaw.com

Fax: (212) 344-5461  
Email: Erelkin@weitzlux.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2017 a copy of the above and foregoing Plaintiffs' Bench Memorandum Regarding Loss of Chance of Survival, has contemporaneously with or before filing been served on all parties or their attorneys in a manner authorized by FRCP 5(b)(2), Local Rule 5.1 of the Eastern District of Louisiana and via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre-Trial Order No. 17.

*/s/ Gerald E. Meunier*  
**Gerald E. Meunier**