UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE ELDON E. FALLON |
| William Henry v. Janssen Research & Development, LLC, et al.; Case No. 2:15-cv-0224 | MAGISTRATE NORTH |
| Dora Mingo v. Janssen Research & Development, LLC, et al.; Case No. 2:15-cv-03367 | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
OF PARTIAL SUMMARY JUDGMENT ON PUNITIVE DAMAGES**

**INTRODUCTION**

Defendants Janssen Research & Development, LLC, Janssen Pharmaceuticals, Inc. and Janssen Ortho LLC (collectively, the "Janssen Defendants")[1] hereby bring this motion for partial summary judgment on Plaintiffs' claims for punitive damages. Under the applicable choice of law rules, this Court should apply the law of New Jersey to the punitive damage claims of Mississippi resident Plaintiff Dora Mingo and on behalf of Texas resident decedent Plaintiff James Henry.

MDL Courts apply the choice of law rules of the forum where the action was originally filed. Here, if the action was filed directly in this coordinated proceeding, Pretrial Order No. 9 dictates the choice of law rules of Plaintiffs' home state govern. Both the applicable Texas (*Henry*) and Mississippi (*Mingo*) choice of law rules follow the principal of dépeçage, recognizing that different states' laws may apply to different "issues" in the case, including the

---

[1] Johnson & Johnson, a holding company organized under the laws of New Jersey with its principal place of business in New Brunswick, New Jersey joins in this motion as a defendant named only in the *Mingo* action.

application of different state laws to issues of liability and punitive damages.  In determining what law applies to each issue, Mississippi and Texas have adopted the "most significant relationship" test set forth in *Restatement (Second) of Conflicts of Law*,[2] which requires consideration of factors such as such as parties' respective domiciles, where the conduct giving rise to punitive damage claims occurred, where the injury occurred, and the place of the relationship between the parties.  The test does not simply focus on the number of contacts but also considers the nature and extent of those contacts as relevant to the particular issues in the case.  Here, New Jersey has the "most significant relationship" to Plaintiffs' punitive damage claims, and therefore New Jersey punitive damage law should apply.

The New Jersey Product Liability Act ("NJPLA") precludes a punitive damages recovery for products approved by the U.S. Food and Drug Administration ("FDA").  The only exception to the NJPLA's punitive damage immunity is for alleged "fraud on the FDA," which numerous courts in New Jersey and elsewhere have held is preempted as a matter of law.  Accordingly, Janssen Defendants' motion for partial summary judgment on punitive damages should be granted.

## FACTUAL BACKGROUND

The claims asserted in this pharmaceutical product liability action are based on the premise that defendants provided inaccurate or incomplete information regarding the risk of bleeding in the Xarelto® labeling approved by the FDA.  Plaintiffs allege injuries arising from the use of Xarelto and seek, among other things, punitive damages for what they claim was improper corporate conduct in connection with the design, development, testing, labeling and marketing of Xarelto.  *See generally* Henry Compl.; Mingo Compl.  Specifically, Plaintiffs seek

---

[2] Mississippi courts also refer to this test as the "center of gravity" test.  *See Mitchell v. Craft*, 211 So. 2d 509, 510 (Miss. 1968).

2

to recover punitive damages "to *punish and deter future similar conduct*" (Henry Compl. at ¶ 223) or "*to deter similar conduct in the future*" (Mingo Compl., Prayer for Relief, ¶ f).

Based on the allegations in Plaintiffs' Complaints, it is clear that all of the alleged conduct related to Plaintiffs' punitive damages occurred in New Jersey. The major decisions concerning the development, testing, marketing and labeling of Xarelto occurred in New Jersey.[3] Janssen Defendants have their principal places of business in New Jersey—Janssen Pharmaceuticals, Inc. is incorporated in Pennsylvania and has its principal place of business in New Jersey, and Janssen Research & Development, LLC is a New Jersey limited liability company with its principal place of business in New Jersey. *See* Exhibit A, Declaration of Angela M. Giusti, Ph.D ("Giusti Decl.") ¶¶ 2 and 4. Janssen Defendants submitted the New Drug Application ("NDA") for Xarelto from its New Jersey offices. *Id.* at ¶ 6. Janssen Defendants received the FDA Approval Letter for Xarelto in July, 2011, in its New Jersey offices. *Id.* at ¶ 7. Decisions concerning changes to Xarelto label were also made at Janssen Defendants' offices in New Jersey. *Id.* at ¶ 8. Janssen Defendants' marketing and promotional materials originated in their New Jersey offices. *Id.* at ¶ 9. And, the FDA's communications concerning Xarelto are addressed to Janssen Pharmaceuticals, Inc.'s office in New Jersey. *Id.* at ¶ 10. Although Plaintiffs allege they used Xarelto in their home states of Texas and Mississippi, all of the events that allegedly give rise to their claim of punitive damages took place in New Jersey.

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgement as a matter of law." Fed.

---

[3] Janssen Ortho LLC is a Delaware limited liability company and has its principal place of business in Puerto Rico. Janssen Ortho LLC manufactures Xarelto that is sold in its *finished* form in the United States in Puerto Rico. Giusti Decl. ¶ 5.

R. Civ. P. 56(a). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Once the moving party has shown that there is no genuine issue of material fact, the nonmoving party must come forward with "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir.2002); *see also Anderson*, 477 U.S. at 249-50. "Partial summary judgment dismissing only certain claims is appropriate under the same standards." *Goulas v. Lagreca*, 945 F. Supp. 2d 693, 696 (E.D. La. 2013).

**ARGUMENT**

**I.     Under Texas and Mississippi Choice of Law Rules, New Jersey Law Governs Plaintiffs' Claims for Punitive Damages**

Federal courts sitting in diversity must determine the applicable state law by applying the choice of law rules of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 403 (5th Cir. 2004). "In MDL cases, the forum state is typically the state in which the action was initially filed before being transferred to the MDL court." *In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 454 (E.D. La. Nov. 22, 2006) (Fallon, J.). Mr. Henry's case was originally filed in the Northern District of Texas. Thus, Texas choice of law rules dictate which state's laws govern his claim for punitive damages. Ms. Mingo, a resident of Mississippi (*see* Mingo Comp. ¶ 10), filed her Complaint

4

directly in the Eastern District of Louisiana pursuant to PTO 9, which provides that direct-filing of a complaint in MDL No. 2952 "will have no impact on choice of law that otherwise would apply to an individual case had it been originally filed in another district and transferred to this Court pursuant to 28 U.S.C. § 1407." PTO 9, ¶ G. Because Ms. Mingo is a resident of Mississippi, PTO 9 dictates that Mississippi choice of law rules apply to determine the substantive state law governing her claim for punitive damages.

Both Texas and Mississippi have adopted the "most significant relationship" test as set forth in the *Restatement (Second) of Conflicts of Law* ("The *Restatement*"). *See Torrington Co. v. Stuzman*, 46 S.W.3d 829, 848 (Tex. 2000); *Williams v. Clark Sand Co.*, 212 So. 3d 804, 908 (¶¶ 17–18) (Miss. 2015). The *Restatement* provides that "[t]he rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties ...." *Restatement (Second) of Conflict of Laws* § 145(1) (1971); *see also, e.g.*, *Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 205 (Tex. 2000) ("[T]he *Restatement* requires the court to consider which state's law has the most significant relationship *to the particular substantive issue to be resolved*." (emphasis original)); *Boardman v. United Servs. Auto. Ass'n*, 470 So. 2d 1024, 1031 (Miss. 1985) ("[T]he law of a single state does not necessarily control every issue in a given case," and the Court should "apply the ... test to each question presented.").

As set forth in more detail below, because the purpose of punitive damages is to punish misconduct, New Jersey—the place where the alleged misconduct occurred—carries particular weight under the "most significant relationship test." *See Restatement* § 145, cmt. e ("[W]hen the primary purpose of the tort rule involved is to deter or punish conduct, the place where the conduct occurred has peculiar significance."). In contrast, the place of injury—Texas or

Mississippi— "bears little relation to the occurrence and the parties with respect to the particular issue" of punitive damages. *Id*.

### A. A True Conflict Exists Between New Jersey and Texas (Henry) as Well as Mississippi (Mingo) Law Regarding Punitive Damages

"The first step in employing the most significant relationship approach is to decide whether the laws of the various jurisdictions involved conflict." *Sortiumusa LLC v. Hunger*, No. 3:11-cv-1656-M, 2013 U.S. Dist. LEXIS 191498, at *10 (N.D. Tex. Mar. 31, 2013) (citing to *Vanderbilt Mortgage & Fin., Inc. v. Posey*, 146 S.W.3d 302, 313 (Tex. App. 2004)); *Zurich Am. Ins. v. Goodwin*, 920 So. 2d 427, 432 (¶8) (Miss. 2006) ("[A] choice of law analysis arises only when there is true conflict between the laws of two states, each having an interest in the litigation."). The laws of both Texas and Mississippi conflict significantly with New Jersey as to the availability of and limitations on punitive damages.

New Jersey caps punitive damages at the greater of $350,000 or five times the compensatory damages award, N.J.S.A. § 2A:15-5.14(b), while Texas law caps punitive damages at the greater of $200,000 or two times the compensatory damages *plus* an amount equal to non-economic damages, not to exceed $750,000, Tex. Civ. Prac. & Rem. Code. Ann. § 41.008(b), and Mississippi caps punitive damages depending on the net worth of the defendant, Miss Code Ann. § 11-1-65(3)(a). Under the NJPLA, punitive damages are not available if a product was approved by the FDA, unless the "the product manufacturer knowingly withheld or misrepresented information required to be submitted under the agency's regulations, which information was material and relevant to the harm in question." N.J.S.A. § 2A:58C-5(c); *see also McDarby v. Merck & Co. Inc*., 949 A.2d 223, 276 (N.J. Super. Ct. App. Div. 2008). Texas and Mississippi have no such comparable punitive damage statute. Given the true conflict

6

between these laws, this Court must proceed with the next step of the choice of law analysis and determine which state's law applies.

> **B.     New Jersey Has The Most Significant Relationship To Plaintiffs' Claim For Punitive Damages**

Under both the Texas and Mississippi "most significant relationship test" the court must "consider[] the contacts listed in Restatement § 145 in light of the factors set forth in Restatement § 6." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Am. Eurocopter Corp.*, 692 F.3d 405, 408 (5th Cir. 2012). "Restatement Section 6 contains the general principles involved in the conflicts analysis whereas Restatement Section 145 lists the factual matters to be considered when applying the Section 6 principles to a given case." *Perez v. Lockheed Corp.* (*In re Air Disaster at Ramstein Air Base*), 81 F.3d 570, 577 (5th Cir. 1996) (citing to *Crisman v. Cooper Indus.*, 748 S.W.2d 273, 276 (Tex. App. 1988)); *Shortie v. George*, No. 2015-CA-00944-COA, 2017 Miss. App. LEXIS 299 (App. May 23, 2017). Under this test, a court considers the following factors: "(1) the place where the injury occurred, (2) the place where the conduct causing injury occurred; (3) the domicil[e], residence, nationality, place of incorporation and place of business of the parties; and (4) place where the relationship, if any, between the parties is centered." Restatement § 145(2) (1971); *see also In re ENSCO Offshore Int'l Co.*, 311 S.W.3d 921, 928 (Tex. 2010); *McDaniel v. Ritter*, 556 So. 2d 303, 310 (Miss. 1989). "These factual matters are determinative as to which state has the most significant relationship with the case." *Gauthier v. Union Pac. R.R. Co.*, 644 F. Supp. 2d 824, 839 (E.D. Tex. 2009).

The first factor—the place where the alleged injury occurred—bears little relation to the alleged wrongful conduct in question. Mr. Henry alleges the injury occurred in Texas, and Ms. Mingo alleges the injury occurred in Mississippi. *See* Henry Compl. ¶¶ 14–17; *see* Mingo

7

Compl. ¶ 10.  As here, "if the place of injury is fortuitous or bears little relation to the occurrence and parties, then this contact will not play an important role."  *50-Off Stores v. Banque Paribas (Suisse) S.A.*, No. SA-95-CA-159, 1997 U.S. Dist. LEXIS 11136, at *36–37 (W.D. Tex. May 19, 1997) (citing to Restatement § 145 cmt. e); *Zurich*, 920 So. 2d at 436 ("[T]he fact that a cause of action arose in Mississippi and that Mississippians are involved does not in itself generate an interest in Mississippi that is superior to that of another state" as to all issues in the action); *see also Cruz v. Ford Motor Co.*, 435 F. Supp. 2d 701, 705–07 (W.D. Tenn. 2006) ("Numerous courts have held that the state of the plaintiff's domicile does not have an interest in imposing its state law regarding punitive damages."); *Zimmerman v. Novartis Pharms. Corp.*, 889 F. Supp. 2d 757, 762 (D. Md. 2012) ("The place where the injury occurred, Maryland, is 'simply fortuitous' with respect to punitive damages as 'it bears little relation to the occurrence and the parties with respect to the particular issue.'") (quoting *Restatement* § 145 cmt. e).  Defendants do not dispute that the compensatory damages laws of Plaintiffs' home states have a significant relationship to providing a remedy to compensate Plaintiffs for economic and non-economic damages but none of the alleged conduct that allegedly gives rise to punitive damages occurred in either Texas or Mississippi.

The second factor—the place where the conduct causing the alleged injury occurred—is directly relevant to Plaintiffs' punitive damage claims.  "[W]hen the primary purpose of the tort rule involved is to deter or punish conduct, the place where the conduct occurred has peculiar significance."  *Restatement* § 145, cmt. e.  Plaintiffs' claims for punitive damages are based on Janssen Defendants' alleged conduct related to the labeling, marketing and design of Xarelto, as well as regulatory decisions, in New Jersey.  *See* Henry Compl. ¶ 140; Mingo Compl. ¶ 102.  The major decisions concerning the development, clinical testing, marketing and labeling of

Xarelto occurred in New Jersey. Janssen Defendants submitted the New Drug Application ("NDA") for Xarelto from its New Jersey offices. Giusti Decl., ¶ 6. Janssen Defendants received the FDA Approval Letter for Xarelto in July, 2011, in its New Jersey offices. *Id.* at ¶ 7. Decisions concerning changes to Xarelto label were also made at Janssen Defendants' offices in New Jersey. *Id.* at ¶ 8. Janssen Defendants' marketing and promotional materials originated in their New Jersey offices. *Id.* at ¶ 9. And, FDA's communications concerning Xarelto are addressed to Janssen Pharmaceuticals, Inc.'s office in New Jersey. *Id.* at ¶ 10. Plaintiffs seek punitive damages in connection with Janssen Defendants' alleged conduct—all of which occurred within the state of New Jersey. Here, New Jersey has a more significant relationship to the occurrence of the events in question than other jurisdictions. Thus, this factor weighs in favor of finding New Jersey has the most significant interest to the punitive damages issue.

As for the third factor—the residence of the parties—New Jersey also should be given particular weight because the claims arise out of conduct in New Jersey. Mr. Henry is a Texas resident, Ms. Mingo is a Mississippi resident, and Janssen Defendants have their principal places of business in New Jersey—Janssen Pharmaceuticals, Inc. is incorporated in Pennsylvania and has its principal place of business in New Jersey, and Janssen Research & Development, LLC is a New Jersey limited liability company with its principal place of business in New Jersey. Giusti Decl. ¶ 2 and 4. Because the purpose of punitive damages is to punish and deter future conduct, courts generally grant more weight to the place of business of defendants. *See e.g., Sico N. Am., Inc. v. Willis*, No. 14-08-00158-CV, 2009 WL 3365856, at *3–6 (Tex. Ct. App. Sept. 10, 2009) (holding that Minnesota had the most significant relationship to products liability claims, despite plaintiff's injury and residency in Texas, because Minnesota, where the defendant was incorporated and headquartered, was the place where the allegedly defective product "was

9

designed, manufactured, and introduced into the stream of commerce"); *see also Jones v. Winnebago Indus.*, 460 F. Supp. 2d 953, 970 (N.D. Iowa 2006) ("[I]n a products liability case, the place where the design, manufacture, and marketing conduct relating to the allegedly defective product occurred is of relatively greater weight than 'the place of injury' …."); *In re Educ. Testing Serv. Praxis Principles of Learning & Teaching: Grades 7-12 Litig.*, 517 F. Supp. 2d 832, 852 (E.D. La. 2007) (Vance, J.) ("[I]n the case of punitive damages, the contacts of the state in which the allegedly wrongful conduct occurred and the state of the defendant's place of business take on a more prominent role."); *Cruz*, 435 F. Supp.2d at 706 ("Defendants' principal place of business and the place where the alleged misconduct occurred has the most significant relationship to the issue of punitive damages."); *In re Testosterone Replacement Therapy Prods. Liab. Litig. Coordinated Pretrial Proceedings*, MDL No. 2545, 2017 WL 1836435, at *22 (N.D. Ill. May 8, 2017). This factor also weighs in favor of finding New Jersey has the most significant interest.

Finally, the fourth factor considers the place where the relationship between the parties is centered. Janssen Defendants never had any direct contact with Mr. Henry in Texas or Ms. Mingo in Mississippi. Even if a relationship could be found, the relationship between the parties is likely centered in New Jersey because Janssen Defendants' corporate activities underlie Plaintiffs' claims for punitive damages. These factors demonstrate that New Jersey has more qualitative and quantitative contacts with the issue of punitive damages and "are determinative as to which state has the most significant relationship with the case." *Gauthier*, 644 F. Supp. 2d at 839.

C. *Restatement of Torts (Second)* § 6 Support The Application of New Jersey Law to the Plaintiffs' Claims For Punitive Damages

The "most significant relationship" test does not merely focus on the number of contacts with a particular state, but also the nature of those contacts in light of the *Restatement of Torts (Second)* § 6 principles: (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied. *Restatement* §6.

These principles support a finding that New Jersey law governs the issue of punitive damages. Because the alleged conduct underlying Plaintiffs' punitive damages claims occurred in New Jersey, the needs of the interstate and international systems would be best served by applying New Jersey punitive damages laws. "New Jersey has made a policy decision on how to impose punitive damages, and has an interest in its citizens being governed by those provisions." *Talley v. Novartis Pharms. Corp.*, No. 3:08-CV-361-GCM, 2011 U.S. Dist. LEXIS 70201, at *12 (W.D.N.C. June 27, 2011). In establishing their principal places of business in New Jersey, Janssen Defendants have a justified expectation of being subject to New Jersey law for punitive damages. Unlike compensatory damages, which are intended to make a plaintiff whole for their underlying torts claims, Plaintiffs have no justified expectation in punitive damages. The basic policy underlying punitive damages is to punish and deter wrongful conduct. The alleged conduct at issue occurred in New Jersey and thus, the interests of the tort are promoted through consistent application of New Jersey law. Similarly, certainty, predictability and uniformity of result are furthered if New Jersey law governs claims of punitive damages against its citizens,

particularly corporate citizens who have deliberately subjected themselves to New Jersey law by establishing their principal places of business there. Lastly, the ease in the determination and application of the law to be applied is satisfied here because, as set forth below, New Jersey law precludes punitive damages recoveries for products approved by the FDA.

In light of the purpose behind punitive damages and in consideration of the factors in *Restatement* §§ 145 and 6, New Jersey has the most significant relationship to the issue of punitive damages and, therefore, New Jersey law governs the issue of punitive damages.

### II. Pursuant to New Jersey Law, Plaintiffs' Claims For Punitive Damages Are Barred As A Matter Of Law

Summary judgment on Plaintiffs' claims for punitive damages is appropriate because the New Jersey Product Liability Act ("NJPLA") provides that manufacturers of pharmaceutical products are immune from punitive damages awards where their product has been approved by the FDA, and the one exception to this statute for alleged "fraud on the FDA" is preempted as a matter of law as set forth in more detail below.

The NJPLA provides, in pertinent part, that:

> Punitive damages shall not be awarded if a drug or device or food or food additive which caused the claimant's harm was subject to premarket approval or licensure by the federal Food and Drug Administration under the "Federal Food, Drug, and Cosmetic Act," 52 Stat. 1040, 21 U.S.C. § 301 et seq. and was approved or licensed; or is generally recognized as safe and effective pursuant to conditions established by the federal Food and Drug Administration and applicable regulations, including packaging and labeling regulations. However, where the product manufacturer knowingly withheld or misrepresented information required to be submitted under the agency's regulations, which information was material and relevant to the harm in question, punitive damages may be awarded.

N.J. Stat. Ann. §2A:58C-5c.

The New Jersey Supreme Court has explained that the "Legislature carefully balanced the

need to protect individuals against the need to protect an industry with a significant relationship to our economy and public health." *Rowe v. Hoffman-La Roche, Inc.*, 189 N.J. 615, 626 (2007). Although there is a statutory exception to New Jersey's bar on punitive damages based on a claim of fraud on the FDA, the Appellate Division of the Superior Court of New Jersey and multiple other courts have held that this exception is preempted by federal law based on the U.S. Supreme Court's decision in *Buckman Co. v. Plaintiffs' Legal Committee* 531 U.S. 341, 347–48 (2001); *Baker v. APP Pharm., LLC*, No. 09-05725, 2010 WL 4941454, at *4 (D.N.J. Nov. 30, 2010) ("While the PLA does provides [*sic*] an exception to this rule 'where the product manufacturer knowingly withheld or misrepresented information required to be submitted under the agency's regulations, which information was material and relevant to the harm in question …,' [N.J. Stat. Ann.] 2A:58C-5c, the New Jersey Appellate Division has subsequently held that the exception is preempted by federal law. … It is undisputed that heparin is an FDA-approved drug product; thus, the Court finds that all claims for punitive damages stated in the first amended complaint are dismissed." (citing *McDarby*, 949 A.2d at 276)); *Cornett v. Johnson & Johnson*, 998 A.2d 543, 566–67 (N.J. Super. Ct. 2010) (internal citations omitted), *aff'd in part and modified in part on other grounds*, 48 A. 3d 1041 (N.J. 2012); *see also Nelson v. Biogen Idee Inc. (In re Nelson)*, No. 12-7317, 2013 U.S. Dist. LEXIS 57920, at *9 (D.N.J. Apr. 17, 2013); *Irby v. Novartis Pharms. Corp.*, 2011 N.J. Super. Unpub. LEXIS 3188, at *9–10 (Law Div. Nov. 18, 2011).

New Jersey's exception to its punitive damages statute would require a jury to find that a manufacturer knowingly misrepresented or withheld information that was required to be disclosed to the FDA and that the information was material and relevant to the FDA's decision regarding the product. This exception would require a jury to second-guess the FDA's exercise

13

of its statutory authority by determining whether a manufacture has complied with federal statutes and regulations and to speculate whether the alleged violation of its disclosure obligations were material to the FDA's findings.

The preemption analysis for the New Jersey punitive damages law is governed by the U.S. Supreme Court's decision in *Buckman*. 531 U.S. 341, 347–48 (holding that "fraud-on-the-FDA" claims are preempted by federal law). Applying *Buckman* to the New Jersey punitive damages statute, the New Jersey Appellate Division in *McDarby* held that the exception to the punitive damages bar to the NJPLA is preempted by the Federal Food, Drug and Cosmetic Act ("FDCA"). 949 A.2d at 273. Although there are arguably "differences between the fraud-on-the-FDA claims asserted in *Buckman* and [a] punitive damages claim premised on the withholding of information" from the FDA, the *McDarby* court concluded that the exception to the punitive damages bar "impinge[s] upon federal statute and regulation to the same extent" as the claim in *Buckman* because claims involve "the single focus upon fraud on the FDA." *Id.* at 275–76.

Similarly in *Cornett*, the New Jersey Appellate Division held that the NJPLA's fraud on the FDA exception was preempted. 998 A.2d at 566–67. The Court in *Cornett* had the opportunity to reconsider whether the exception to the punitive damages bar is preempted by federal law but again adopted the reasoning in *McDarby*. The Court held as follows:

> Instead of making punitive damages an aspect of a common-law claim for compensatory damages (or of the statutory replacement for such a claim), the Legislature enacted a separate statute that was 'narrowly drawn' with 'the single focus upon fraud on the FDA' as unlawful conduct that the State had an interest in punishing. Buckman accordingly precludes all claims that the FDA would have responded differently to an application if the manufacturer had fully and accurately provided all the information that federal law required. That is the nature of the punitive damages claim here, and consequently such a claim is preempted.

14

*Id.* at 566–67; *see also Irby*, 2011 N.J. Super Unpub. LEXIS 3188, at *20 ("*McDarby* was decided in 2009 and is binding on this court. Unless and until the legislature enacts legislation overturning *McDabry*, this court is bound by the case law.").

The reasoning of the *McDarby* and *Cornett* courts has consistently been followed by federal district courts in New Jersey and other jurisdictions applying New Jersey law. *See Nelson*, 2013 U.S. Dist. LEXIS 57920, at *9; *Baker*, 2010 WL 4941454, at *4, *11–12; *Guenther v. Novartis Pharm. Corp.*, No. 08-cv-456, 2013 U.S. Dist. LEXIS 43518, at * 10–11 (M.D. Fla. Mar. 26, 2013); *Stromenger v. Novartis Pharm. Corp.*, 941 F. Supp. 2d 1288, 1301 (D. Or. 2013) ("[T]he Court concludes the weight of authority in New Jersey courts and in courts interpreting New Jersey law holds *McDarby* is still good law and that plaintiffs, therefore, cannot bring claims for punitive damages. . . ."); *Zimmerman*, 889 F. Supp. 2d at 772 (holding that the plaintiffs' claim for punitive damages under New Jersey law is substantively identical to the claims presented in *Buckman* because "they present the same conflict with the FDA's regulatory scheme and enforcement prerogatives."); *Bessemer v. Novartis Pharms. Corp.*, 2010 N.J. Super. Unpub. LEXIS 3170 (Law Div. Oct. 22, 2010).

Although Plaintiff may attempt to argue that the fraud on the FDA exception is a parallel state law claim, numerous courts in New Jersey and elsewhere have repeatedly rejected this argument:

> Regardless of how the plaintiff styles a state claim, if it is a claim that could not be articulated but for the existence of a federal requirement that was allegedly violated, it is functionally equivalent to a claim that is grounded solely in the federal violation, and is therefore impliedly preempted.

*Cornett*, 998 A.2d at 560 (citations omitted). Other courts have followed this same rationale:

> Here, because the alleged corporate conduct took place in New Jersey, New Jersey law governs Plaintiff's proposed claim for punitive damages.
>
> Under New Jersey law, because the FDA approved Aredia, Plaintiff cannot recover punitive damages unless the "fraud-on-the-FDA' exception set forth in N.J. Stat. Ann. § 2A:58C-5c applies, *i.e.*, "the product manufacturer knowingly withheld or misrepresented information required to be submitted under the agency's regulations, which information was material and relevant to the harm in question."
>
> Even if Plaintiff had sufficient evidence in support of such a claim, the problem is that New Jersey courts have held that this "fraud-on-the-FDA" exception is impliedly preempted by the Federal Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 *et seq.*, thereby foreclosing claims for punitive damages in product liability cases.

*Matthews v. Novartis Pharm. Corp.*, 953 F. Supp. 2d 811, 815–16 (S.D. Ohio 2013) (citations omitted); *see also Skala v. Johnson & Johnson*, Docket No. MID-L-6820-06, slip op. at 6 ("Although framed as state tort law claims, Plaintiff's claims in this case are still subject to the NJPLA's requirement of a threshold showing of fraud-on-the-FDA, and thus fall within the category of claims preempted by the FDCA according to *McDarby*."), attached hereto as Exhibit B.

Under New Jersey law, Plaintiffs' claims for punitive damages are precluded as a matter of law. Accordingly, Janssen Defendants' motion for partial summary judgment on punitive damages should be granted.

**CONCLUSION**

For the foregoing reasons, this Court should grant Janssen Defendants' motion for partial summary judgment of Plaintiffs' claims for punitive damages.

        Respectfully submitted,

        DRINKER BIDDLE & REATH LLP

        By: /s/ *Susan M. Sharko*
        Susan M. Sharko
        Drinker Biddle & Reath LLP
        600 Campus Drive
        Florham Park, NJ 07932-1047
        Telephone: (973) 549-7000
        susan.sharko@dbr.com

        Rodney M. Hudson
        DRINKER BIDDLE & REATH LLP
        50 Fremont Street, 20th Floor
        San Francisco, CA 94105-2235
        Telephone: (415) 591-7500
        Rodney.hudson@dbr.com

        Chanda A. Miller
        Drinker Biddle & Reath LLP
        One Logan Square, Suite 2000
        Philadelphia, PA 19103-6996
        Telephone: (215) 988-2700
        Chanda.Miller@dbr.com

        IRWIN FRITCHIE URQUHART & MOORE LLC

        By: /s/ *James B. Irwin*
        James B. Irwin
        Kim E. Moore
        Irwin Fritchie Urquhart & Moore LLC
        400 Poydras Street, Suite 2700
        New Orleans, LA 70130
        Telephone: (504) 310-2100
        jirwin@irwinllc.com

        *Attorneys for Defendants Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC, Janssen Ortho LLC and Johnson & Johnson*

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that on June 7, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to Liaison Counsel for Plaintiffs and Defendants by operation of the court's electronic filing system and served on all other plaintiff counsel via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre-Trial Order No. 17.

                                  */s/ James B. Irwin*
                                  **James B. Irwin**