# Exhibit 17

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE ELDON E. FALLON |
| Joseph Orr, Jr., et al. v. Janssen et al. Case No. 2:15-cv-03708 | MAGISTRATE NORTH |

### DEFENDANTS' RENEWED MOTION TO EXCLUDE CERTAIN DOSING-RELATED OPINIONS OF DR. SMART MD, FACC, FACP

Based on Plaintiffs' opening statements, Dr. Smart's expert report and his deposition, Defendants anticipate that Plaintiffs intend to call Frank W. Smart, MD, FACC, FACP, as an expert to offer testimony in this case (a) that Xarelto would be safer if dosed twice instead of once daily and/or (b) that the Xarelto dose is too high. Defendants previously moved to exclude these opinions under *Daubert*,[1] and in response, Plaintiffs expressly disclaimed the dosing-regimen opinion—representing that "no expert will offer an opinion at trial that twice daily dosing is safer and/or more effective than once daily dosing"—and never acknowledged the dosage-strength opinion. *See* Pls. Opp. to Defs.' *Daubert* Mot. (Doc. 5527), at 26. Because Plaintiffs never responded to these *Daubert* challenges, the Court never ruled on them. Plaintiffs cannot introduce these opinions now, having avoided *Daubert* scrutiny and the Court's gatekeeping function.

Defendants thus renew their motion to exclude Dr. Smart's dosing-related opinions as unreliable under Federal Rule of Evidence 702. *See* Doc. 5113. Furthermore, based on Plaintiffs'

---

[1] Defendants expressly incorporate herein Defendants' *Daubert* Motion to Exclude Expert Opinions and Testimony Regarding Unapproved Dosing and Monitoring Regimens (Doc. 5113); Defendants' Consolidated Reply In Support of Their *Daubert* Motions to Exclude Expert Opinions and Testimony Regarding (1) Unapproved Dosing and Monitoring Regimens and (2) the Experts' 20-Second PT Cut-Off Guideline in the *Orr* and *Boudreaux* Cases (Doc. 5688); and Defendants' Joint Motion for An Order (1) Dismissing with Prejudice Claims Based on Allegations That Plaintiffs Have Abandoned and (2) Barring Scientific Evidence Based on Waiver of *Daubert* Arguments (Doc. 6485).

counsel's representations in their opening statement about Plaintiffs' failure-to-warn theory in this case, Dr. Smart's dosing opinions are irrelevant and must be excluded on that additional basis.

**I.     Dr. Smart's dosing-related opinions are inadmissible because they do not satisfy *Daubert*, and Plaintiffs have never argued otherwise.**

Defendants' omnibus *Daubert* motion showed that the dosing opinions that Dr. Smart seeks to offer here are unreliable and impermissibly speculative under *Daubert*. *See* Defs.' *Daubert* Memo. (Doc. 5113-1), at 20–28. In response, Plaintiffs expressly disclaimed any twice-daily-dosing theory by representing that "*no expert* will offer an opinion at trial that twice daily dosing is safer and/or more effective than once daily dosing" (Doc. 5527, at 26–27), and failed to even acknowledge Defendants' challenge to their experts' dosage-strength opinions. Plaintiffs should be held to their representations to this Court—they said they would not offer this opinion (or otherwise failed to respond), and they should not be allowed to backtrack now, thereby avoiding *Daubert* scrutiny.

In any event, Dr. Smart's opinions are as deficient now as they were when Defendants filed their initial *Daubert* motions.

**1.**     As Defendants have explained, there are no clinical data showing that twice- rather than once-daily dosing would improve Xarelto's safety and efficacy. *See* Doc. 5113-1, at 20–24 (explaining that twice-daily dosing of Xarelto has never been tested in atrial fibrillation patients to reduce stroke risk). Any twice-daily dosing opinions lack any supporting data and thus are not scientifically valid. *See id.* In fact, Dr. Smart himself acknowledged that his opinion regarding a twice-daily-dosing regimen was improperly based on a "personal bias"[2] and thus must be excluded on that basis alone. *See Daubert II*, 43 F.3d 1311, 1319 (9th Cir. 1995) (recognizing that expert

---

[2] Smart Dep. 228:19–21 ("As a personal bias, I believe that if rivaroxaban were dosed at 10 milligrams twice a day, it might not be a bad drug.").

2

"testimony is inadmissible as a matter of law" where "[p]ersonal opinion, not science, is testifying"). Moreover, Dr. Smart's twice-daily-dosing opinion lacks an appropriate methodology and does not meet *Daubert*'s criteria because it is untested, not peer-reviewed, not generally accepted, and has no known or potential rate of error. *See* Doc. 5113-1, at 20–24; *see also In re Propulsid*, 261 F. Supp. 2d 603 (E.D. La. 2003) (recognizing "the difficulties facing the plaintiff's experts in conducting their own tests and compiling data," but nonetheless excluding causality opinions based on lack of testing and insufficient data in support); *In re Bextra & Celebrex*, 524 F. Supp. 2d 1166, 1181 (N.D. Cal. 2007) (holding that proffering party "carr[ies] the burden of proving *today based on currently available* scientifically valid evidence" that expert's theory is valid). Accordingly, Dr. Smart's testimony about the supposed superiority of twice-daily dosing must be excluded because it is completely speculative and unreliable. *See, e.g.*, *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996) (speculative opinions not based on sufficient data must be excluded); *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007) ("[A] reliable methodology is in all instances mandatory.").

**2.** Defendants have also explained that there are no clinical data to support the speculative theory offered by Plaintiffs' experts, including Dr. Smart, that Xarelto would be safer if prescribed at some unspecified lower daily dose. *See* Doc. 5531-1, at 24–28 & n.15 (explaining that Plaintiffs' experts had not identified a lower dose to reduce bleeding risk and provide the same stroke protection, citing Dr. Smart's report among others). Neither Dr. Smart nor any other Plaintiffs' expert has ever identified any such data, much less any data that an unspecified lower Xarelto dose would be effective. *See id.* Accordingly, any opinion regarding the safety of (or the need for) a lower Xarelto daily dose is nothing more than a "conceptual suggestion," which does not "rise to the level of an admissible expert opinion" because it must have—but hasn't—been

3

tested in dose-ranging studies or a full-scale clinical trial. *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 327 (5th Cir. 2004). Such an untested opinion is speculative and unreliable, and likewise must be excluded. *See supra*; *see also, e.g.*, *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 992 (5th Cir. 1997) (observing that "district court appropriately noted the lack of testing of any of the proposed alternative[ designs]"); *Brown v. Raymond Corp.*, 432 F.3d 640, 647 (6th Cir. 2005) (finding that expert's "failure to present and test an alternative design justifies the conclusion of the district court that [the expert's] testimony would not aid the trier of fact").[3]

  **3.** Plaintiffs' failure to defend these dosing opinions against Defendants' *Daubert* challenges precludes the introduction of these opinions through Dr. Smart. Despite numerous opportunities to do so, Plaintiffs have failed to establish that the science underlying these dosing opinions are reliable or based on scientific data, nor have they otherwise defended their admissibility under *Daubert*. Accordingly, Plaintiffs have waived any such arguments, and the appropriate remedy for this failure to respond is the exclusion of Dr. Smart's opinions. *See, e.g.*, *Jenkins v. Slidella LLC*, No. 05-370, 2008 WL 2649510, at *6 (E.D. La. June 27, 2008) (excluding testimony under *Daubert* when party failed to respond to arguments); *see also* Doc. 6485.

**II.**  **Dr. Smart's dosing-related opinions are irrelevant and do not "fit" this case.**

  In any event, Dr. Smart's dosing-related opinions are irrelevant and do not "fit" this case. Expert testimony is admissible under Rule 702 only if it will "help the trier of fact to understand the evidence or to determine a fact in issue." *Roman v. W. Mfg., Inc.*, 691 F.3d 686, 694 (5th Cir. 2012) (quoting Fed. R. Evid. 702(a)); *In re Vioxx Prods. Liab. Litig.*, 414 F. Supp. 2d 574 (E.D.

---

[3] *See also, e.g.*, *Kruszka v. Novartis Pharm. Corp.*, 19 F. Supp. 2d 875, 887–88 (D. Minn. 2014) (holding that expert could not testify to "the results or efficacy of different dose and duration" because he did not show the application of valid methodology with respect to testimony about "whether dosage changes impact the efficacy of the drugs at issue"); *Conklin v. Novartis Pharm. Corp.*, 2012 WL 4127295, at *10 (E.D. Tex. Sept. 18, 2012) (excluding testimony about an alternative dose because there was no data that efficacy would remain the same).

4

La. 2006) (citing *Daubert v. Merrell-Dow Pharm., Inc.*, 509 U.S. 579, 593 (1993)); *see also, e.g.*, *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, MDL No. 2047, 2015 WL 3603624, at *2 (E.D. La. June 5, 2015) (recognizing that there must be "an appropriate fit between the scientific testimony and the specific facts of the case"). Dr. Smart's dosing opinions will not do that here. Dosing goes to Xarelto's design, and Plaintiffs have dismissed their design-defect claim with prejudice. *See* Pretrial Conf. Tr. (May 24, 2017), at 5–6. But these opinions also do not fit Plaintiffs' newfound failure-to-warn theory in this case. Based on Plaintiffs' counsel's opening statement, Plaintiffs' theory of the case rests on the assertion that PT should have been used as an "indicator test" to assess the coagulation status of Xarelto patients who need emergency surgery. Plaintiffs have centered their case on Defendants' alleged failure to warn Dr. Cuong Bui, the neurosurgeon who operated on Mrs. Orr's ICH, but nothing about the Xarelto dose or dosing regimen is relevant to that claim or to Dr. Bui's treatment. As Plaintiffs have conceded, when Mrs. Orr presented at the emergency room, her PT was normal and she was not anticoagulated. Thus, any opinions from Dr. Smart regarding Xarelto's dosage strength and/or dosing regimen are "not relevant, and ergo, non-helpful," and must be excluded. *Roman*, 691 F.3d at 694 (quoting *Daubert*, 509 U.S. at 591).

## CONCLUSION

For the foregoing reasons, and for the reasons more fully explained in Defendants' previous *Daubert* motion and briefing, which Defendants' expressly incorporate and renew here, and in Defendants' motion regarding Plaintiffs' abandoned theories, this Court should exclude Dr. Smart's dosing-related opinions.

Respectfully submitted,

IRWIN FRITCHIE URQUHART & MOORE LLC

By: /s/ *James B. Irwin*
James B. Irwin
Kim E. Moore
Irwin Fritchie Urquhart & Moore LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
jirwin@irwinllc.com


DRINKER BIDDLE & REATH LLP

By: /s/ *Susan M. Sharko*
Susan M. Sharko
Drinker Biddle & Reath LLP
600 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
susan.sharko@dbr.com

Rodney M. Hudson
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
Telephone: (415) 591-7500
Rodney.hudson@dbr.com

Chanda A. Miller
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2700
Chanda.Miller@dbr.com

*Attorneys for Defendants Janssen Pharmaceuticals, Inc. and Janssen Research & Development, LLC*

WILKINSON WALSH + ESKOVITZ LLP

By: /s/ *Beth A. Wilkinson*
Beth A. Wilkinson
Jennifer L. Saulino
Jeremy Barber
WILKINSON WALSH + ESKOVITZ LLP
1900 M. Street NW, Suite 800
Washington, DC 20036
Telephone: (202) 847-4000
bwilkinson@wilkinsonwalsh.com
jsaulino@wilkinsonwalsh.com
jbarber@wilkinsonwalsh.com


NELSON MULLINS RILEY & SCARBOROUGH LLP

By: /s/ *David E. Dukes*
David E. Dukes
J. Mark Jones
NELSON MULLINS RILEY & SCARBOROUGH LLP
1320 Main Street, 17th Floor
Columbia, SC 29201
Telephone: (803) 799-2000
David.Dukes@nelsonmullins.com
Mark.Jones@nelsonmullins.com


ARNOLD & PORTER KAYE SCHOLER LLP

By: /s/ *Andrew K. Solow*
Andrew K. Solow
Steven Glickstein
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8485
andrew.solow@apks.com
steven.glickstein@apks.com


William Hoffman
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
william.hoffman@apks.com

6

BRADLEY ARANT BOULT CUMMINGS LLP

By: */s/ Lindsey C Boney IV*
Kevin C. Newsom
Lindsey C Boney IV
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place, 1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8803
knewsom@bradley.com
lboney@bradley.com

CHAFFE MCCALL L.L.P.
By: */s/ John F. Olinde*
John F. Olinde
CHAFFE MCCALL L.L.P.
1100 Poydras Street, Suite 2300
New Orleans, LA 70163
Telephone: (504) 585-7241
olinde@chaffe.com

*Attorneys for Bayer HealthCare Pharmaceuticals Inc. and Bayer Pharma AG*

7

## CERTIFICATE OF SERVICE

  The undersigned hereby certifies that on the 30th day of May, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs by operation of the court's electronic filing system.

            <u>/s/  John F. Olinde    </u>