UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE ELDON E. FALLON |
| Dora Mingo v. Janssen Research & Development, LLC et al. Case No. 2:15-cv-03469 | MAGISTRATE NORTH |

### DEFENDANTS' JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT BASED ON THE LEARNED-INTERMEDIARY DOCTRINE

Defendants Bayer HealthCare Pharmaceuticals Inc., Bayer Pharma AG, Janssen Pharmaceuticals, Inc., and Janssen Research & Development LLC (collectively, "Defendants") hereby move for summary judgment on Plaintiff's failure-to-warn claim, on the ground that Plaintiff lacks sufficient evidence to prove that Xarelto®'s label failed to warn or instruct Ms. Mingo's prescribing physician, Dr. Renie Jordon, regarding the safe use of Xarelto, or that any different warning or instruction would have caused Dr. Jordon to change his prescribing decision for Ms. Mingo.

### INTRODUCTION

Mississippi follows the learned-intermediary doctrine in personal-injury cases involving prescription drugs. *See Wyeth Labs., Inc. v. Fortenberry*, 530 So. 2d 688, 691 (Miss. 1988). Under that doctrine, a defendant discharges its duty to warn by warning a patient's prescribing physician of the alleged risk that gave rise to the plaintiff's alleged injuries. *See id.* at 691–92. If a different or additional warning would not have altered the physician's prescribing decision, or if the relevant warning was adequate to the prescribing physician, then the plaintiff cannot prevail on a failure-to-warn theory. The burden of proof remains unchanged when the plaintiff alleges that a drug

1

manufacturer failed to provide adequate instructions for the drug's use—the plaintiff must still show that the allegedly missing instruction would have changed the physician's prescribing decision. *See, e.g.*, *Cross v. Forest Labs.*, 102 F. Supp. 3d 896, 903 (N.D. Miss. 2015).

Plaintiff's failure-to-warn claim here is barred under Mississippi law for two reasons: (1) Xarelto's label was adequate as a matter of law because it has always prominently warned of the risk of bleeding, and (2) Dr. Renie Jordon, Ms. Mingo's prescribing physician, testified that an additional or different warning or instruction would not have changed his decision to prescribe Xarelto to Ms. Mingo.

## BACKGROUND FACTS

On January 15, 2015, Ms. Mingo underwent hip replacement surgery, followed by seven days of Lovenox injections, and then transitioned to aspirin 325mg once a day. Mingo Dep. 30:11–20 (June 20, 2016) (Exh. 5); Physician's Orders (Jan. 9, 2015) (Exh. 6), DMingo-StDomHos-MD-00032. Two weeks after receiving a hip replacement, Ms. Mingo experienced a blood clot (deep vein thrombosis or "DVT") in her leg and went to the emergency room at the Southwest Regional Medical Center in McComb, Mississippi. Pl. Fact Sheet (Sept. 22, 2015) (Exh. 1) §§ I.C, VI; Jordon Dep. 30:10–34:4, 133:2–14 (Aug. 12, 2016) (Exh. 2); Operative Report (Jan. 6, 2015) (Exh. 3), DMingo-StDomHos-MD-178-80; Radiology Report (Jan. 22, 2015) (Exh. 4), DMingo-JGholson-00059. When she presented and was admitted to Southwest Regional Medical Center on January 22, 2015, with a DVT diagnosis, Ms. Mingo's anti-coagulation was changed to 10mg of Coumadin and 89mg of Lovenox. Exh. 1 § VI.A; Medication Administration Record (Jan. 22, 2015) (Exh. 7), DMingo-SMRMC-MD-281, 299.

On January 23, 2015, Dr. Renie Jordon prescribed Xarelto for Ms. Mingo as an alternative to these other anticoagulants to treat her DVT. Jordon Dep. 32:2–34:4. Ms. Mingo was 67 years

old at the time. *See* Exh. 1 §§ I.B, I.C. Xarelto was a preferable alternative because of its cost, because it allowed Ms. Mingo to leave the hospital sooner, and because it required less routine coagulation monitoring. *Id*. at 33:4–34:4. Ms. Mingo used Xarelto for 21 days before returning to the emergency room with an ulcer in her upper gastrointestinal tract. Exh. 1 § I.C; Keith Dep. 81:2–19 (Exh. 8) (Aug. 11, 2016). Ms. Mingo attributes her gastrointestinal bleeding to Xarelto. Compl. (Doc. 1) ¶ 10, No. 2:15-cv-03367. She stopped taking Xarelto after this incident.

At the time he prescribed Xarelto for Ms. Mingo, Dr. Jordon understood that all anticoagulants carry a risk of major bleeding. Jordon Dep. at 34:25–35:6, 153:5–20. At the time of Ms. Mingo's prescription in January 2015, the Xarelto label described that risk as follows: "XARELTO increases the risk of bleeding and can cause serious or fatal bleeding. In deciding whether to prescribe XARELTO to patients at increased risk of bleeding, the risk of thrombotic events should be weighed against the risk of bleeding." Ex. 2 to Jordon Dep. ¶ 5.2 (Exh. 9). The accompanying Medication Guide elaborated: "XARELTO can cause bleeding which can be serious, and rarely may lead to death. This is because XARELTO is a blood thinner medicine that reduces blood clotting. While you take XARELTO you are likely to bruise more easily and it may take longer for bleeding to stop." *Id*. The Xarelto prescribing information also indicated that risk is increased for older patients, like Ms. Mingo, who also take aspirin. *Id*. ¶¶ 5.2, 8.5; Jordon Dep. 147:9–149:24. Dr. Jordon read and understood this information before prescribing Xarelto. Jordon Dep. 23:25–24:9, 171:15–173:1.

Dr. Jordon testified that before prescribing Xarelto, he explained to Ms. Mingo the risks and benefits of taking Xarelto, and that Ms. Mingo wanted to take it. *Id*. at 33:4–36:1. In Dr. Jordon's professional judgment, the risk of major bleeding did not outweigh Xarelto's benefits:

3

> Q: So at the time that you prescribed Xarelto for Ms. Mingo, you knew that serious and potential fatal bleeding was an inherent risk in that medication?
>
> A: Yes, and this was told to Ms. Mingo.
>
> Q: And that risk was outweighed by the benefit that she had received from having her blood thinned so she wouldn't develop a pulmonary embolism?
>
> A: Right.

*Id.* at 153:11–20 (objection omitted); *see also id.* at 173:2–13.

Despite being educated on Plaintiff's theory of the case and the clinical study results on which Plaintiff's counsel relies,[1] Dr. Jordon stands by his prescribing decision and his risk-benefit analysis:

> Q: And today, as we sit here, then you would have no reason to rethink or reconsider your prescription for Ms. Mingo?
>
> A: No.

*Id.* at 209:22–25.

> Q: Right. And so after everything we've discussed today, you still stand by your decision to prescribe or offer Xarelto to her to treat her blood clot in her leg?
>
> A: As I sit here today, there's nothing that we talked about that changed my view on that, no.

*Id.* at 226:24–227:4. In fact, Dr. Jordon still prescribes Xarelto to patients today and sees no reason why he should not. *Id.* at 118:20–24, 121:9–20.

---

[1] Plaintiff's counsel educated Dr. Jordon on counsel's view of: (a) the ROCKET AF study, which the Court can see from reviewing pages 36–86 of Dr. Jordon's deposition (even though ROCKET AF studied a different indication); (b) the ability to monitor Xarelto-related coagulation parameters, which the Court can see from reviewing pages 87–105 of Dr. Jordon's deposition; and (c) the related prothrombin-time ("PT") test, which the Court can see from reviewing pages 100–108 of Dr. Jordon's deposition. Plaintiff's counsel took pains to educate Dr. Jordon on what additional information they believe should have been included in Xarelto's label.

4

**LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). The moving party need not negate the elements of the opposing party's case; it is enough to show that the opposing party cannot satisfy an element of his or her claim. *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010).

A fact is material only if its resolution would affect the outcome of the action. *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009). Alleged "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is required if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to his or her case on which he or she bears the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322.

**ARGUMENT**

To prevail on a failure-to-warn claim in a prescription-drug case under Mississippi law, a plaintiff must show that "(1) the warning was inadequate; and (2) the physician would have altered

his conduct if the warning was adequate." *Cross v. Forest Labs.*, 102 F. Supp. 3d 896, 903 (N.D. Miss. 2015).  Plaintiff cannot satisfy either necessary element here.

**I.     Xarelto's warning language in January 2015 was adequate because it warned of the risk of major bleeding, and Dr. Jordon was fully aware of that risk.**

Defendants are entitled to summary judgment because Plaintiff cannot show that Xarelto's warnings were inadequate.  "An adequate product warning . . . is one that . . . communicates sufficient information on the dangers and safe use of . . . a prescription drug . . . taking into account the characteristics of, and the ordinary knowledge common to, a physician or other licensed professional who prescribes the drug."  Miss. Code. Ann. § 11-1-63(c)(ii).  "A warning may be held adequate as a matter of law where the adverse effect that was ultimately visited upon the patient was one that the manufacturer specifically warned against."[2]  *Cather v. Catheter Tech. Corp.*, 753 F. Supp. 634, 640 (S.D. Miss. 1991) (citing *Wyeth Labs.*, 530 So. 2d at 692–93). Accordingly, courts have found warnings adequate as a matter of law where the manufacturer warned of the adverse effect the plaintiff suffered.  *See, e.g.*, *In re Rezulin Prods. Liab. Litig.*, 331 F. Supp. 2d 196, 202 (S.D.N.Y. 2004) (applying Mississippi law).

Xarelto's package insert in January 2015 (the time Ms. Mingo used the medicine) prominently warned of the exact risk Ms. Mingo experienced: bleeding.  It stated, among other things, that "XARELTO increases the risk of bleeding and can cause serious or fatal bleeding. In deciding whether to prescribe XARELTO to patients at increased risk of bleeding, the risk of thrombotic events should be weighed against the risk of bleeding." Exh. 9.  The package insert mentioned "bleed" or "bleeding" more than 100 times.  The package insert further explained that

---

[2] *See, e.g.*, *Adah v. Bayer Corp.*, No. 3:12CV785-HTW-LRA, 2016 WL 5173512, at *4 (S.D. Miss. Apr. 4, 2016) (summary judgment where package insert warned that Levitra could cause loss of vision and plaintiff suffered loss of vision); *In re Rezulin Prods. Liab. Litig.*, 331 F. Supp. 2d at 202 (summary judgment where label "specifically warned of the ailments" plaintiffs allegedly suffered) (applying Mississippi law); *Coleman v. Danek Med. Inc.*, 43 F. Supp. 2d 637, 646–47 (S.D. Miss. 1999) (summary judgment where package insert identified all of the "'adverse effects' which [plaintiff] claims she suffered as a consequence of the implantation of [manufacturer's] product").

6

older persons over the age of 65 and persons taking aspirin (as Ms. Mingo was) were at an increased risk of bleeding. *Id.*

Dr. Jordon reviewed and understood the package insert for Xarelto. Jordon Dep. 23:25–24:9, 171:15–173:1. He understood that major bleeding was a risk of taking Xarelto, and he knows that such bleeding is what Ms. Mingo experienced. *Id.* at 34:25–35:6, 153:5–20, 35:7–36:1. Dr. Jordon even knew that Ms. Mingo was at an increased risk of major bleeding because of her concomitant aspirin use. *Id.* at 147:9–149:24. He prescribed Xarelto to Ms. Mingo because he determined its benefits outweighed these risks, and he stands by that decision. Dr. Jordon's testimony establishes that Xarelto's warnings communicated sufficient information for him to anticipate the harm that Ms. Mingo experienced and make an informed prescribing decision. And as courts applying Mississippi law have recognized, where the prescriber "testifie[s] that she understood that [the drug] created a risk of the very thing that happened to [the plaintiff], Defendants have shown that they warned the learned intermediary (through whatever means) adequately." *Averhart v. Ortho-McNeil-Janssen Pharm., Inc.*, No. 3:09 OE 40028, 2014 WL 1224542, at *5 (N.D. Ohio Mar. 24, 2014) (finding manufacturer's warnings adequate as a matter of law) (applying Mississippi law).

Accordingly, Xarelto's warnings were adequate as a matter of law. *See Adah*, 2016 WL 5173512, at *4; *Averhart*, 2014 WL 1224542, at *5; *Miller v. Ortho-McNeil Pharm., Inc.*, No. 3:11 OE 40008, 2013 WL 5939774, at *4 (N.D. Ohio Nov. 5, 2013) (concluding that warnings were adequate as a matter of law where label "specifically warned" of the adverse side effect plaintiff experienced and physicians were "aware of the warnings") (applying Mississippi law).

7

## II. Plaintiff cannot prove that Dr. Jordon would have made a different prescribing decision if given a different or additional warning or instruction.

As the Fifth Circuit has recognized, in a prescription-drug failure-to-warn case under Mississippi law, the plaintiff must prove that an adequate warning would have caused the prescribing physician to change his prescribing decision. *See Thomas v. Hoffman-LaRoche, Inc.*, 949 F.2d 806, 812 (5th Cir. 1992) (plaintiff must prove that a different warning would have convinced physician "not to prescribe the product for the plaintiff" (citing *Wyeth Labs.*, 530 So. 2d at 691)).[3] Plaintiff here cannot demonstrate, as she must, that a different or additional warning "would have convinced [Dr. Jordon] not to prescribe [Xarelto]." *See Cross*, 102 F. Supp. 3d at 903 (holding that the altered "conduct" must be the "decision to prescribe" the drug in question).

A different or additional warning or instruction would not have altered Dr. Jordon's decision to prescribe Xarelto for Ms. Mingo. Dr. Jordon understood the risk of major bleeding at the time he prescribed Xarelto to Ms. Mingo. Jordon Dep. 34:25–35:6. In his professional judgment, the benefit of taking Xarelto outweighed the risk of bleeding. *Id*. at 153:11–20, 173:2–13. Dr. Jordon stands by his prescribing decision for Ms. Mingo, despite having now heard Plaintiff's theory of the case and seen the clinical study data on which Plaintiff relies in support of her claim. *Id.* at 118:20–24, 121:9–20, 209:22–25, 226:24–227:4. Indeed, Dr. Jordon continues to prescribe Xarelto to other patients today. *Id*. Therefore, Plaintiff cannot make the necessary showing that Dr. Jordon would have made a different prescribing decision if he had received a different or additional warning.

---

[3] *See, e.g.*, *Smith v. Johnson & Johnson, Inc.*, 483 F. App'x 909, 914 (5th Cir. 2012) (affirming summary judgment where doctor prescribed Mersilene mesh knowing that it might erode and tear); *Estes v. Lanx, Inc.*, No. 1:14CV052-SA-DAS, 2015 WL 9462964, at *3 (N.D. Miss. Dec. 23, 2015) (summary judgment where doctor testified he was aware of the risks in using the medical device and still used the device); *Little v. Smith & Nephew, Inc.*, No. 1:15-CV-00028-GHD, 2015 WL 3651769, at *9 (N.D. Miss. June 11, 2015) (dismissal where the plaintiff failed "to allege that the physician would not have used the screw if he had received an adequate warning"); *Windham v. Wyeth Labs., Inc.*, 786 F. Supp. 607, 612 (S.D. Miss. 1992) (summary judgment where doctor testified that he would have still prescribed the drug even if given the additional information the plaintiff theorized was necessary).

Plaintiff may attempt to salvage her claim by pointing to Dr. Jordon's testimony that he would have offered a "more detailed" explanation of Xarelto's risks and benefits. *Id.* at 210:3–14. However, because Dr. Jordon still sees no reason to "rethink or reconsider" his decision to prescribe Xarelto (*see id*. at 209:22–25, 210:15–21), Plaintiff still cannot make the necessary showing that Dr. Jordon would have made a different prescribing decision. In any event, that caveat to Dr. Jordon's testimony is immaterial to the causation inquiry. The relevant question under Mississippi law is not whether a different or additional warning would have altered *some* conduct—such as whether to emphasize particular points when conferring with a patient or whether to monitor a particular patient differently. Instead, the question is whether a different or additional warning or instruction would have caused the prescribing physician *to change his prescribing decision*. As the Fifth Circuit explained in *Thomas*, Mississippi's learned-intermediary doctrine requires the plaintiff to "establish that an adequate warning would have convinced the treating physician *not to prescribe* the product for the plaintiff." 949 F.2d at 812 (emphasis added); *see also Miller*, 2013 WL 5939774, at *4 (explaining that plaintiff "must show that a different warning would have prevented the treating physician from administering the drug").

The recent *Cross* decision, which is directly applicable here, illustrates the relevant inquiry under Mississippi law. 102 F. Supp. 3d at 903. There, the plaintiffs alleged that the manufacturer of Lexapro "failed to include an adequate warning about the increase in suicidality at the beginning of treatment [with Lexapro] and the need to monitor the patient during the first few months of drug therapy." *Id.* The plaintiffs argued that the learned-intermediary doctrine did not require them to show that the prescribing doctor would have made a different prescribing decision because they alleged a "preventable risk"—*i.e.*, that "an adequate warning would have instructed [physicians]

9

how to safely use the product." *Id.* The court rejected the plaintiffs' argument, concluding that it was "bound by" the Fifth Circuit's "explicit[] holding [in *Thomas*] that 'in a prescription drug failure to warn case, the plaintiff must establish that an adequate warning would have convinced the treating physician not to prescribe the produce for the plaintiff.'" *Id.* (citation omitted). Because the plaintiffs could not show that the proposed instruction "would have changed [the physician's] decision to prescribe Lexapro, as required by the learned intermediary doctrine," the court entered summary judgment for the defendant. *Id.* at 905.

In this respect, Mississippi law differs from this Court's interpretation of Louisiana law in the *Boudreaux* and *Orr* cases. *See* Order and Reasons (Doc. 6232), No. 2:14-md-02592 (Apr. 17, 2017). There, the Court held that the learned-intermediary doctrine did not bar the plaintiffs' claims under Louisiana law because an instruction to administer a PT test may "have changed the doctors' actions and avoided or lessened Plaintiffs' injuries." *Id.* at 5–6. Mississippi law requires a different inquiry. Under Mississippi law, the Court must focus only on the drug label's effect on the physician's *prescribing decision*—not on any other decision, action, or communication that the physician may have made. *See Thomas*, 949 F.2d at 812. In fact, the *Cross* court expressly noted that it could find no Mississippi "authority that would extend the meaning of 'altering the doctor's conduct' beyond the decision to prescribe or not to prescribe and into the realm of what instructions the doctor gives the patient when prescribing the drug." 102 F. Supp. 3d at 903 (declining "to make an *Erie* prediction that the Mississippi Supreme Court would extend failure-to-warn jurisprudence").[4]

---

[4] Mississippi is not alone in this respect; other states have adopted the same rule under the learned-intermediary doctrine. *See, e.g.*, *Hanson v. Boston Sci. Corp.*, No. 2:13-CV-10653, 2016 WL 1448868, at *5 (S.D.W. Va. Apr. 12, 2016) (summary judgment where plaintiff showed that doctor's "risk/benefit analysis would have been impacted" by a different warning but would not "have altered her decision to prescribe the product") (applying Wisconsin law); *Carnes v. Eli Lilly & Co.*, No. CA 0:13-591-CMC, 2013 WL 6622915, at *5 (D.S.C. Dec. 16, 2013) (summary judgment where plaintiff introduced evidence that a different warning would have influenced the doctor's "process of

Whether Dr. Jordon would have considered administering a PT test in the face of an additional warning is similarly immaterial under Mississippi law. If Dr. Jordon still would prescribe Xarelto for Ms. Mingo today—as he testified that he would—that is the end of the inquiry and the death-knell for Plaintiff's failure-to-warn claim. A different or additional warning or instruction—even one consistent with Plaintiff's theory of the case—would not alter Dr. Jordon's prescribing decision. Dr. Jordon's unequivocal testimony is that he would still prescribe Xarelto today. A theory that the relevant warning prevented a physician from making an "informed decision as to the relative safety" of a prescription drug, but that stops short of demonstrating that a different warning "would have kept [the] physician from prescribing" the drug, is not viable under Mississippi law. *Deese v. Immunex Corp.*, No. 3:11-CV-373-DPJ-FKB, 2012 WL 463722, at *5 (S.D. Miss. Feb. 13, 2012) (citing *Janssen Pharm., Inc. v. Bailey*, 878 So. 2d 31, 58 (Miss. 2004)).

Ms. Mingo testified that she relies on doctors to prescribe appropriate medications and does not make those kinds of decisions for herself. Mingo Dep. 124:22–125:15. She relied entirely on Dr. Jordon's prescribing judgment. *Id.* at 138:12–139:6, 144:7–11. That judgment was, and is, that Xarelto is an appropriate medicine to prescribe to patients in Ms. Mingo's condition. Plaintiff cannot demonstrate causation, and her failure-to-warn claim thus fails as a matter of law. *See, e.g.*, *Cross*, 102 F. Supp. 3d at 903–06; *Miller*, 2013 WL 5939774, at *4 (summary judgment appropriate where there was "no . . . evidence that a different warning would have changed either [prescriber's] decision[] to prescribe [the drug]").

---

prescribing a drug" and "convey[ing] the risk to the patient," but no evidence that a different warning "would have altered [the] prescribing decision").

**CONCLUSION**

For the foregoing reasons, the Court should dismiss Plaintiff's failure-to-warn claim.

Respectfully submitted,

| | |
|---|---|
| DRINKER BIDDLE & REATH LLP | ARNOLD & PORTER KAYE SCHOLER LLP |
| By: /s/ *Susan M. Sharko* | By: /s/ *William Hoffman* |
| Susan M. Sharko | William Hoffman |
| Drinker Biddle & Reath LLP | ARNOLD & PORTER KAYE SCHOLER LLP |
| 600 Campus Drive | 601 Massachusetts Ave., NW |
| Florham Park, NJ 07932-1047 | Washington, D.C. 20001 |
| Telephone: (973) 549-7000 | Telephone: (202) 942-5000 |
| susan.sharko@dbr.com | william.hoffman@apks.com |
| | |
| Rodney M. Hudson | Andrew K. Solow |
| DRINKER BIDDLE & REATH LLP | Steven Glickstein |
| 50 Fremont Street, 20th Floor | ARNOLD & PORTER KAYE SCHOLER LLP |
| San Francisco, CA 94105-2235 | 250 West 55th Street |
| Telephone: (415) 591-7500 | New York, New York 10019-9710 |
| Rodney.hudson@dbr.com | Telephone: (212) 836-8485 |
| | andrew.solow@apks.com |
| Chanda A. Miller | steven.glickstein@apks.com |
| Drinker Biddle & Reath LLP | |
| One Logan Square, Suite 2000 | |
| Philadelphia, PA 19103-6996 | BRADLEY ARANT BOULT CUMMINGS LLP |
| Telephone: (215) 988-2500 | |
| Chanda.Miller@dbr.com | By: /s/ *Kevin C. Newsom* |
| | Kevin C. Newsom |
| | Lindsey C Boney IV |
| IRWIN FRITCHIE URQUHART & MOORE LLC | BRADLEY ARANT BOULT CUMMINGS LLP |
| | One Federal Place, 1819 Fifth Avenue North |
| By: /s/ *James B. Irwin* | Birmingham, AL 35203-2119 |
| James B. Irwin | Telephone: (205) 521-8803 |
| Kim E. Moore | knewsom@bradley.com |
| Irwin Fritchie Urquhart & Moore LLC | |
| 400 Poydras Street, Suite 2700 | |
| New Orleans, LA 70130 | CHAFFE MCCALL L.L.P. |
| Telephone: (504) 310-2100 | By: /s/ *John F. Olinde* |
| jirwin@irwinllc.com | John F. Olinde |
| | Chaffe McCall L.L.P. |
| | 1100 Poydras Street, Suite 2300 |
| | New Orleans, LA 70163 |

*Attorneys for Defendants Janssen Pharmaceuticals, Inc. and Janssen Research & Development, LLC*

Telephone: (504) 585-7241
olinde@chaffe.com

*Attorneys for Bayer HealthCare Pharmaceuticals Inc. and Bayer Pharma AG*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 7th of June, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs by operation of the court's electronic filing system.

*/s/      John F. Olinde*