# EXHIBIT 1

```
                    UNITED STATES DISTRICT COURT

                    EASTERN DISTRICT OF LOUISIANA



IN RE:  XARELTO              *
(RIVAROXABAN) PRODUCTS       *
LIABILITY LITIGATION         *
                             *
THIS DOCUMENT RELATES TO:    *   Docket No.: 14-MD-2592
                             *   Section "L"
Joseph J. Boudreaux, Jr.     *   New Orleans, Louisiana
v. Janssen Research &        *   April 24, 2017
Development, et. al.,        *
Case No.: 14-CV-2720         *
* * * * * * * * * * * * * * *

                VOLUME I - AFTERNOON SESSION
       TRANSCRIPT OF BELLWETHER JURY TRIAL PROCEEDINGS
          BEFORE THE HONORABLE ELDON E. FALLON
                UNITED STATES DISTRICT JUDGE
```

APPEARANCES:

For the Plaintiffs':
Liaison Counsel:             Levin Papantonio
                             BY:  BRIAN H. BARR, ESQ.
                             316 South Baylen Street, Suite 600
                             Pensacola, Florida   32502

                             Beasley Allen
                             BY:  ANDY BIRCHFIELD, ESQ.
                             P.O. Box 4160
                             Montgomery, Alabama 36103

                             Gainsburg Benjamin David
                               Meunier & Warshauer
                             BY:  GERALD E. MEUNIER, ESQ.
                             2800 Energy Centre
                             1100 Poydras Street
                             New Orleans, Louisiana 70163

OFFICIAL TRANSCRIPT

```
 1   APPEARANCES:

 2                                  Schlichter Bogard & Denton, LLP
                                    BY:  ROGER DENTON, ESQ.
 3                                  100 South Fourth Street
                                    St. Louis, Missouri 63102
 4

 5                                  The Lambert Firm
                                    BY:  EMILY JEFFCOTT, ESQ.
 6                                  701 Magazine Street
                                    New Orleans, Louisiana 70130
 7

 8   For the Defendant Bayer
     HealthCare Pharmaceuticals
 9   Inc. and Bayer Pharma AG:      Wilkinson Walsh & Eskovitz, LLP
                                    BY:  BETH A. WILKINSON, ESQ.
10                                  1900 M Street NW, Suite 800
                                    Washington, DC 20036
11

12                                  Nelson Mullins Riley &
                                      Scarborough, LLP
13                                  BY:  DAVID E. DUKES, ESQ.
                                    Meridian, 17th Floor
14                                  1320 Main Street
                                    Columbia, South Carolina 29201
15

16   For Janssen Pharmaceuticals,
     Inc. and Janssen Research &
17   Development, LLC:              Barrasso Usdin Kupperman Freeman &
                                      Sarver, LLC
18                                  BY:  RICHARD E. SARVER, ESQ.
                                    909 Poydras Street, 24th Floor
19                                  New Orleans, Louisiana 70112

20
     Official Court Reporter:       Jodi Simcox, RMR, FCRR
21                                  500 Poydras Street
                                    Room HB-406
22                                  New Orleans, Louisiana 70130
                                    (504) 589-7780
23

24   Proceedings recorded by mechanical stenography, transcript

25   produced by computer.
```

blood so much that you put someone at such a high bleed risk that the risk of bleeding exceeds the benefit you're getting from stroke protection. It's the trade-off that we're talking about. That's what these anticoagulants are for.

And because these defendants refused to tell doctors about a simple safety test that would identify people at high risk of bleeding, you're going to hear that the doctors who use Xarelto have to perform this balancing blindfolded. They can't -- they don't know whether or not their patient is at high risk of bleeding.

Now, the evidence in this case will be that there is a simple test that can identify those people at high risk of bleeding. It's a test called prothrombin time. We're going to refer to it a lot in the case, I would guess, as a PT test. You're going to hear a lot about PT test in this trial. And a PT test is just a short for prothrombin.

And all that test is doing is measuring the amount of time it takes for blood to clot. That's what it's designed to do. But a PT test is used by doctors in their medical practices today. They know what it is, and they've been using it to identify patients in danger zones for a long time.

But what you will hear is doctors have to be told that that PT test has application to the drug they're using. And what doctors were told here was that PT cannot be

```
10:13:13  1   morning break, 15 minutes.  The Court will stand in recess for
10:13:16  2   15 minutes.
10:13:17  3             THE DEPUTY CLERK:  All rise.
10:13:42  4        (WHEREUPON, THE JURY EXITED THE COURTROOM.)
10:13:42  5             THE COURT:  Be seated, please.  The jury is outside of
10:13:45  6   the courtroom.  Any issues that I should focus on at this time?
10:13:52  7             MR. DUKES:  Your Honor, excuse me.  Just ask that the
10:13:54  8   witness be excused for this discussion.
10:13:56  9             THE COURT:  Okay.  Just step outside.
10:13:59 10             THE WITNESS:  Thank you.
10:14:00 11             THE COURT:  Thank you, Doctor.
10:14:03 12        (WHEREUPON, THE WITNESS EXITED THE COURTROOM.)
10:14:10 13             MR. MEUNIER:  May it please the Court, Jerry Meunier for
10:14:13 14   the plaintiffs, your Honor.
10:14:14 15             We rise to object to the anticipated showing to the jury
10:14:19 16   and/or offering to evidence of a document which will purport to be
10:14:24 17   an FDA label for Xarelto that was submitted and considered by the
10:14:31 18   FDA.  Not by the division of the FDA which was considering the use
10:14:37 19   what is indicated in this case, which is AFib, which is the
10:14:39 20   cardiorenal division, but rather something that was under review by
10:14:43 21   a different division of the FDA, the hematology division, where it
10:14:48 22   indicated use, which is not at issue; namely, DVT.  There could be
10:14:52 23   a case later in which DVT is an indicated use, which would make the
10:14:55 24   document relevant.  So we believe the document is irrelevant for
10:15:00 25   the issues that are being presented in this case.
```

OFFICIAL TRANSCRIPT

said, "The anticoagulant effect of Xarelto cannot be reliably monitored with laboratory testing" in the VTE label.

Now, on June 13th, 2011, the FDA sent Janssen a revised label for the VTE indication that removed the proposed PT language, didn't it?

**A.** So we're now jumping back, if I'm correct -- well, actually -- you actually -- this is not the application for AFib you're talking about. This is the application for DVT; right?

**Q.** Right. I just said that in my question.

**A.** Got it.

**THE COURT:** Just so the jury follows, AFib is a different disease than DVT.

**BY MR. DUKES:**

**Q.** So this is an e-mail from FDA, D 5547 is, to Janssen on June 13th, 2011, along with a redlined version of the label which is DX 5548; correct?

**A.** Yes.

**Q.** And you're familiar with these documents, aren't you?

**A.** I've -- there are a number of versions of this, I believe. So I want to be careful. I'm not sure which version this is you're showing me, but there are a number of cross-out versions that I have seen.

**Q.** Okay. So you've definitely seen the back-and-forth between Janssen and the FDA where FDA actually redlined out

|       |    |                                                                                  |
|-------|----|----------------------------------------------------------------------------------|
| 15:48 | 1  | with standard laboratory tests." Correct?                                        |
| 15:48 | 2  | **A.** I see that, yes.                                                          |
| 15:48 | 3  | **Q.** All right. Let's call up Slide 48. Add it to the                          |
| 15:48 | 4  | timeline.                                                                        |
| 15:48 | 5  | **MR. MEUNIER:** Your Honor, I now object to the                                 |
| 15:48 | 6  | timeline. That's not supported by the evidence. The FDA did                      |
| 15:48 | 7  | not strike --                                                                    |
| 15:48 | 8  | **THE COURT:** I sustain your objection.                                         |
| 15:48 | 9  | **MR. DUKES:** All right. And we'll clarify that                                 |
| 15:48 | 10 | timeline aspect there, Your Honor.                                               |
| 15:48 | 11 | **MR. MEUNIER:** In fact, Your Honor, just to note, the                          |
| 15:48 | 12 | entire heading of that PowerPoint that says "FDA rejects"                        |
| 15:48 | 13 | language, we object to that.                                                     |
| 15:48 | 14 | **THE COURT:** Okay. I sustain that objection. At                                |
| 15:48 | 15 | least I don't see any here.                                                      |
| 15:48 | 16 | **BY MR. DUKES:**                                                                |
| 15:48 | 17 | **Q.** All right. On June 16th, 2011, Janssen responds to FDA's                  |
| 15:48 | 18 | label changes; right?                                                            |
| 15:48 | 19 | Let me show you DX 5342 and DX 5344.                                             |
| 15:48 | 20 | **A.** Yes. Thank you.                                                           |
| 15:49 | 21 | **Q.** DX 5342 is a cover memo e-mail from Janssen to FDA dated                  |
| 15:49 | 22 | June 16th, 2011. And the second attachment e-mail is Janssen's                   |
| 15:49 | 23 | response to FDA's label comments.                                                |
| 15:49 | 24 | Are you familiar with these documents?                                           |
| 15:49 | 25 | **A.** This is June 16th; is that correct?                                       |

| | | |
|---|---|---|
| 15:49 | 1 | **Q.** Yes, 2011. |
| 15:49 | 2 | **A.** Yes. I've seen this June 16th document. |
| 15:49 | 3 | **MR. DUKES:** Your Honor -- |
| 15:49 | 4 | **THE WITNESS:** And let's just make sure we're keeping |
| 15:50 | 5 | track. This is not AFib; this is hip and knee; correct? |
| 15:50 | 6 | **BY MR. DUKES:** |
| 15:50 | 7 | **Q.** Correct. |
| 15:50 | 8 | **A.** Okay. So -- |
| 15:50 | 9 | **MR. DUKES:** Your Honor, I would offer Defendants' |
| 15:50 | 10 | Exhibit 5342 and 5344 into evidence. |
| 15:50 | 11 | **THE COURT:** Admitted. |
| 15:50 | 12 | **BY MR. DUKES:** |
| 15:50 | 13 | **Q.** All right. Let's call up DX 5344.2. |
| 15:50 | 14 | Now, this is the redlined label, isn't it? |
| 15:50 | 15 | **A.** That, I can agree with. |
| 15:50 | 16 | **Q.** Okay. And do you understand that this was provided by |
| 15:50 | 17 | Janssen to FDA based on the cover e-mail? |
| 15:50 | 18 | **A.** This was sent in, yes. |
| 15:50 | 19 | **Q.** Let's pull up DX 5344.36.1. |
| 15:50 | 20 | So if you go down to Section 12.2, we can see that |
| 15:50 | 21 | Janssen accepted most of the FDA's revisions of this section; |
| 15:50 | 22 | correct? |
| 15:50 | 23 | **MR. MEUNIER:** Your Honor, there's no basis for this |
| 15:51 | 24 | in evidence. He's asking the witness to establish what can't |
| 15:51 | 25 | be established through his testimony. |

15:59  1  see -- what you just took off the screen.
15:59  2          **MR. DUKES:** Yes. Can you put back up the last one.
16:00  3          **THE WITNESS:** I just want to see that last thing.
16:00  4              Thank you.
16:00  5          **THE COURT:** Would you put it back on the screen. Go
16:00  6  ahead.
16:00  7          **THE WITNESS:** Thanks for letting me see that.
16:00  8  **BY MR. DUKES:**
16:00  9  **Q.** Yes. Certainly.
16:00  10 **A.** And, again, you have here also, for those of you who want
16:00  11 to puzzle this together, it says "Sponsor response." Right?
16:00  12 So, again, you have FDA response and sponsor response. Those
16:00  13 things seem to suggest who those are. But the redline, again,
16:00  14 remains confusing.
16:00  15         I just wanted to see that sponsor response. Thanks.
16:00  16 **Q.** What we know at the end of the day is that the final
16:00  17 labeling that was approved with Xarelto was approved by the
16:00  18 FDA; right? I mean, if we jump forward and we look at what we
16:00  19 end up with, we know that was approved by FDA?
16:00  20 **A.** The application was approved and the labeling was part of
16:00  21 it, yes, as a result of this negotiation and this
16:00  22 back-and-forth.
16:00  23 **Q.** All right. Defendants' Exhibit 5353 is an e-mail from
16:01  24 Janssen to FDA dated June 28th, 2011, and it encloses a redline
16:01  25 copy of the label.

|       |    |                                                                    |
|-------|----|--------------------------------------------------------------------|
| 16:01 | 1  | Are you familiar with that?  The redline copy would |
| 16:01 | 2  | be Defendants' Exhibit 5354. |
| 16:01 | 3  | **A.**   Another redline version. |
| 16:01 | 4  | **Q.**   Right. |
| 16:01 | 5  | **A.**   Right. |
| 16:01 | 6  | **Q.**   Have you seen these before? |
| 16:01 | 7  | **A.**   What's the date of this one? |
| 16:01 | 8  | **Q.**   Let's see.  The cover e-mail is June 28, 2011. |
| 16:01 | 9  | **A.**   Okay.  Again, nothing to do with the AFib application. |
| 16:01 | 10 | This back-and-forth only has to do with DVT.  Right?  A |
| 16:01 | 11 | different application. |
| 16:01 | 12 | **Q.**   But you've -- in reviewing to prepare for the case, you've |
| 16:01 | 13 | seen both of these documents? |
| 16:01 | 14 | **A.**   I've seen the June -- I'm not sure I've seen both.  I've |
| 16:01 | 15 | seen -- I've seen the June 28th.  I think I've seen the |
| 16:01 | 16 | second -- or at least it was referenced in those |
| 16:01 | 17 | interrogatories, sir. |
| 16:02 | 18 | **MR. DUKES:**  Okay.  Your Honor, I would offer DX 5353 |
| 16:02 | 19 | and Defendants' Exhibit 5354 into evidence. |
| 16:02 | 20 | **THE COURT:**  Admitted. |
| 16:02 | 21 | **BY MR. DUKES:** |
| 16:02 | 22 | **Q.**   Let's pull up DX 5354.16.1, and we're back to Section 12.2 |
| 16:02 | 23 | of the label.  And this is what Janssen has sent back to FDA. |
| 16:02 | 24 | And Janssen added some new language in Comment A19. |
| 16:02 | 25 | Let's pull up the next slide to look at A19, |

```
 1              MR. NEWSOM:  Okay.
 2              THE COURT:  That sort of thing.
 3              MR. NEWSOM:  And without ruining the suspense, do you
 4   yet know whether you're intending to charge the jury on the
 5   clear evidence preemption issue?  Neither party proposed the
 6   instruction initially, and I think the plaintiffs have now
 7   supplemented.  We're happy to provide you with supplemental as
 8   well if you think it's going down that road.
 9              THE COURT:  I really hadn't planned on going down
10   that road.
11              MR. BARR:  And ours was only in the event the Court
12   felt it was for the jury.
13              MR. NEWSOM:  Of course.
14              THE COURT:  I think that's a question of law, not for
15   the jury.  I'm not even sure they know what preemption is.
16              MR. NEWSOM:  Nor do I for that matter.
17              MS. WILKINSON:  Your Honor, it might help the Court
18   if we tell you our schedule.
19              THE COURT:  I thought they did.
20              MS. WILKINSON:  We may finish early today, Your
21   Honor, because we only have two physicians, and the other one
22   is coming tomorrow, so --
23              THE COURT:  So we'll do the best we can.
24              MR. MEUNIER:  Your Honor, we do need the court
25   reporter back out to finish reading exhibits into the record
```

08:17:20  1  plaintiffs' motion.
08:17:23  2          MR. NEWSOM:  If I may, Your Honor, just briefly for the
08:17:31  3  record.  If you're finished.
08:17:31  4          MR. LONGER:  I'm done on that.  I have one more.
08:17:32  5          MR. NEWSOM:  Just, Your Honor, for the record, to be
08:17:32  6  clear, the preemption-based Rule 50 motion is improper for
08:17:37  7  another reason.
08:17:37  8              I think, at this point, as Your Honor has
08:17:39  9  reiterated time and time again, preemption is a question of law
08:17:44 10  for the Court, as we have briefed in summary judgment and on
08:17:47 11  our JML motion.  To even entertain a motion at this stage of
08:17:53 12  the case that there are insufficient facts to demonstrate
08:17:55 13  preemption would be changing the rules after the game has
08:17:59 14  begun.
08:17:59 15          THE COURT:  Right.  Yes.
08:17:59 16          MR. NEWSOM:  So we object even to the entertainment of
08:18:04 17  the motion, let alone granting of the motion.
08:18:04 18          THE COURT:  Okay.
08:18:04 19          MR. NEWSOM:  Thank you, Your Honor.
08:18:04 20          THE COURT:  I agree with that.
08:18:05 21          MR. NEWSOM:  Yes, sir.  Thank you.
08:18:05 22          THE COURT:  Let's go to the --
08:18:05 23          MR. LONGER:  Your Honor --
08:18:05 24          THE COURT:  Yes.
08:18:09 25          MR. LONGER:  -- if I may, Fred Longer again.

*OFFICIAL TRANSCRIPT*

```
02:42:17   1              THE JURORS:  Yes.
02:42:18   2              THE COURT:  Does anybody wish the jury to be polled?
02:42:21   3              MR. BIRCHFIELD:  No, Your Honor.
02:42:22   4              MS. WILKINSON:  No, Your Honor.
02:42:23   5              THE COURT:  Okay.  Thank you very much.  We'll make the
02:42:24   6   verdict a part of the record in the case and discharge the jury
02:42:29   7   with the Court's thanks.
02:42:31   8              All rise, please, as the jury leaves.
02:42:34   9              (WHEREUPON, at 2:42 p.m., the jury panel leaves the
02:42:57  10   courtroom.)
02:42:57  11              THE COURT:  As I mentioned, I'll make the verdict a
02:43:00  12   part of the record.  I thank everybody.
02:43:02  13              Court will stand in recess.  Thank you very much.
          14              (WHEREUPON, at 2:43 p.m., the proceedings were
          15   concluded.)
          16                            *   *   *
          17
          18                       REPORTER'S CERTIFICATE
          19       I, Cathy Pepper, Certified Realtime Reporter, Registered
              Merit Reporter, Certified Court Reporter in and for the State
          20  of Louisiana, Official Court Reporter for the United States
              District Court, Eastern District of Louisiana, do hereby
          21  certify that the foregoing is a true and correct transcript to
              the best of my ability and understanding from the record of the
          22  proceedings in the above-entitled and numbered matter.
          23                            s/Cathy Pepper
                                        Cathy Pepper, CRR, RMR, CCR
          24                            Official Court Reporter
                                        United States District Court
          25                            Cathy_Pepper@laed.uscourts.gov
```

***OFFICIAL TRANSCRIPT***