# EXHIBIT 6



DEPARTMENT OF HEALTH AND HUMAN SERVICES

Food and Drug Administration
Silver Spring  MD  20993

NDA 202439

**FILING COMMUNICATION**

Ortho McNeil Janssen
Attention: Alla Rhoge PharmD., Manager
Global Regulatory Affairs
920 U.S. Highway 202
P.O. Box 300
Raritan, NJ 08869-0602

Dear Dr. Rhoge:

Please refer to your New Drug Application (NDA) dated January 4, 2011, received January 5, 2011, submitted under section 505(b)(1) of the Federal Food, Drug, and Cosmetic Act, for XARELTO (rivaroxaban) Tablets.

We also refer to your submissions dated January 18 (two), 21, 28, and 31, February 2, 4 (two), 8, 9, 11, 15 (two), 16, 18 (four), 25, and 28, and March 1, 4, 8, and 16, 2011.

We have completed our filing review and have determined that your application is sufficiently complete to permit a substantive review.  Therefore, in accordance with 21 CFR 314.101(a), this application is considered filed 60 days after the date we received your application.  The review classification for this application is **Standard**.  Therefore, the user fee goal date is November 5, 2011.

Your NDA does not qualify for a priority review because it neither provides effective therapy where none exists nor does it provide a significant improvement to marketed products. Two other drugs, warfarin and dabigatran, are currently marketed in the USA for prevention of stroke and non-CNS systemic embolism in patients with non-valvular atrial fibrillation. The PI for dabigatran indicates it was shown in the RE-LY trial to be superior to warfarin for this indication. In the confirmatory trial for rivaroxaban, ROCKET-AF, the intent-to-treat analysis did not demonstrate superiority of rivaroxaban to warfarin.

We are reviewing your application according to the processes described in the Guidance for Review Staff and Industry: Good Review Management Principles and Practices for PDUFA Products.  Therefore, we have established internal review timelines as described in the guidance, which includes the timeframes for FDA internal milestone meetings (e.g., filing, planning, midcycle, team and wrap-up meetings).  Please be aware that the timelines described in the guidance are flexible and subject to change based on workload and other potential review issues (e.g., submission of amendments).  We will inform you of any necessary information requests or status updates following the milestone meetings or at other times, as needed, during the process.  If major deficiencies are not identified during the review, we plan to communicate proposed labeling and, if necessary, any postmarketing commitment requests by September 24, 2011.

Reference ID: 2919670

Case 2:14-md-02592-EEF-MBN   Document 6749-6   Filed 06/07/17   Page 3 of 6

NDA 202439 – 74day Filing Issues Identified Letter
Page 2

During our filing review of your application, we identified the following potential review issues:

1. ROCKET utilized an active-comparator, warfarin, whose efficacy and safety are dependent on titration of the dose to a therapeutic INR of 2.0-3.0. You report that the mean time in therapeutic range in the warfarin arm of ROCKET was 55%, far lower than that reported in other recent warfarin controlled trials in atrial fibrillation. We are concerned that the administration of warfarin in ROCKET was inadequate to be a proper comparator for evaluating the efficacy of rivaroxaban.

2. In both ROCKET and J ROCKET, the rate of stroke and non-CNS systemic emboli increased markedly in rivaroxaban-treated subjects in the period immediately following discontinuation of rivaroxaban. We are concerned that this finding suggests that cessation of rivaroxaban results in a hypercoagulable state. If so, patients who miss doses of rivaroxaban may be at increased risk for thrombotic events, reducing or eliminating its effectiveness. Additionally, it does not appear that you have adequate data to instruct health care providers in a method for safely transitioning patients from rivaroxaban to other anticoagulant therapies (e.g., warfarin and dabigatran).

3. Rivaroxaban has a short half life (5-9 hours) and when administered once-daily, has a peak-to-trough drug concentration ratio of about 10. Consequently, we are concerned that the once daily dosing regimen you propose results in marked diurnal variation of pharmacodynamic effect. We plan to assess if the safety and effectiveness of rivaroxaban could be substantially improved by administering it more frequently than once a day.

4. In ROCKET, a single dose of rivaroxaban was studied (with dose adjustment for patients with renal impairment). This dose was derived from studies conducted in the VTE indication and may not be optimal for the prevention of stroke and non-CNS systemic embolism in patients with non-valvular atrial fibrillation. To help determine the appropriate dose, we plan to review the relationship between exposure and pharmacodynamic endpoints (e.g., prothrombin time, INR, FXa, PiCT, etc) and outcome (e.g., ischemic stroke, hemorrhagic stroke, major bleeds, critical organ bleeds, etc).

5. You do not recommend routine monitoring of coagulation parameters in your proposed package insert (PI). We plan to review whether the benefit/risk of rivaroxaban could be substantially improved by routine measurement of coagulation parameters.

6. We do not understand why the impurity bis-oxamine-urea is specified at 0.15% when the maximum percentage in lots used for toxicology studies was 0.04% and was either not detected or present at <0.01% in the lots used for the genotoxicity assays. If you are unable to lower the specification limit for bis-oxamine-urea, then we expect you to qualify the higher level.

We are providing the above comments to give you preliminary notice of <u>potential</u> review issues. Our filing review is only a preliminary evaluation of the application and is not indicative of deficiencies that may be identified during our review. Issues may be added, deleted, expanded upon, or modified as we review the application. We do not expect a response to these review issues, and we may not review any such response during the current review cycle.

Reference ID: 2919670

NDA 202439 – 74day Filing Issues Identified Letter
Page 3

During our preliminary review of your submitted labeling, we have identified the following labeling format issues:

1. Please delete the registered trademark symbol, "®", that appears after every "XARELTO" throughout the Highlights and Full Prescribing Information (FPI). The registered trademark symbol is acceptable only once in FPI.

2. The Agency recommends use of a two-column format for the Table of Contents, and if possible, that it be limited in length to one-half page. The half-page Table of Contents should also appear on the same page as the Highlights.

3. Please ensure text, both font style and size, is consistent throughout the label. For example if you use "Arial" for Headings and "Times New Roman" for all other information, make sure all sections of the FPI are consistent. Please also ensure that no headings or section numbers are in italics (e.g., Section 6, **ADVERSE REACTIONS**).

4. In section 6.1, **Commonly-Observed Adverse Drug Reactions in Double-Blind Controlled Clinical Studies**, the standard verbatim statement, "Because clinical trials are conducted under widely varying conditions, adverse reactions rates observed in the clinical trials of a drug cannot be directly compared to rates in the clinical trials of another drug and may not reflect the rates observed in clinical practice.", should precede the presentation of adverse reactions not follow them.

5. Please include a section 6.2, **Post Marketing Experience**, to detail the adverse reactions identified from foreign spontaneous reports. In 6.2, please also include the following verbatium statement or appropriate modification, "The following adverse reactions have been identified during post-approval use of (insert drug name). Because these reactions are reported voluntarily from a population of uncertain size, it is not always possible to reliably estimate their frequency or establish a causal relationship to drug exposure."

6. Per 21 CFR 201.57, please amend Section 8.4, **Pediatric Use**, to read, "Safety and effectiveness have not been established in pediatric patients."

7. Under Section 17, **PATIENT COUNSELING INFORMATION**, please change "*See Medication Guide*" to "*See FDA-approved patient labeling (Medication Guide)*".

8. Upon review of the Medication Guide, we have the following comments:

    a. Overall word simplification is needed. Technical terms should be removed if possible and replaced. For example, "healthcare provider" should be updated to "doctor".

    b. Please refer to the approved Medication Guide for PRADAXA for appropriate terms and overall organization of a Medication Guide.

    c. The possible side effects section of the Medication Guide needs to designate/separate which effects are "serious" and those that are "common". This section should also not reiterate those events listed in the Warnings/Precautions sections of the Medication Guide.

We request that you resubmit labeling that addresses these issues by April 1, 2011. The resubmitted labeling will be used for further labeling discussions.

Please respond only to the above requests for information. While we anticipate that any response submitted in a timely manner will be reviewed during this review cycle, such review decisions will be made on a case-by-case basis at the time of receipt of the submission.

Reference ID: 2919670

**REQUIRED PEDIATRIC ASSESSMENTS**

Under the Pediatric Research Equity Act (PREA) (21 U.S.C. 355c), all applications for new active ingredients, new indications, new dosage forms, new dosing regimens, or new routes of administration are required to contain an assessment of the safety and effectiveness of the product for the claimed indication(s) in pediatric patients unless this requirement is waived, deferred, or inapplicable.

Pediatric studies conducted under the terms of section 505B of the Federal Food, Drug, and Cosmetic Act (the Act) may also qualify for pediatric exclusivity under the terms of section 505A of the Act.  If you wish to qualify for pediatric exclusivity please consult the Division of Cardiovascular and Renal Products.  Please note that satisfaction of the requirements in section 505B of the Act alone may not qualify you for pediatric exclusivity under 505A of the Act.

We acknowledge receipt of your request for a full waiver of pediatric studies for this application.  Once we have reviewed your request, we will notify you if the full waiver request is denied and a pediatric drug development plan is required.

If you have any questions, please contact:

    Alison Blaus
    Regulatory Project Manager
    (301) 796-1138

    Sincerely,

    *{See appended electronic signature page}*

    Norman Stockbridge, M.D., Ph.D.
    Director
    Division of Cardiovascular and Renal Products
    Office of Drug Evaluation I
    Center for Drug Evaluation and Research

---------------------------------------------------------------------------------------------------
**This is a representation of an electronic record that was signed electronically and this page is the manifestation of the electronic signature.**
---------------------------------------------------------------------------------------------------

/s/

----------------------------------------------------

STEPHEN M GRANT
03/17/2011

Reference ID: 2919670