# EXHIBIT 2

Protected - Subject to Further Protective Review

```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF LOUISIANA


        *****************************

   IN RE:  XARELTO                    MDL No. 2592
   (RIVAROXABAN)                      Section L
   PRODUCTS LIABILITY                 Judge Eldon Fallon
   LITIGATION                         Mag. Judge North
   THIS DOCUMENT RELATES TO:
   DORA MINGO
   Case No. 2:15-CV-03469
   *****************************


   PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW




     VIDEOTAPED DEPOSITION OF HENRY M. RINDER, MD

              Tuesday, February 7, 2016
                     8:05 a.m.


       Held At:
           Douglas & London, PC
           50 Maiden Lane
           New York, New York


   REPORTED BY:
   Maureen O'Connor Pollard, RMR
```

Protected - Subject to Further Protective Review

```
 1    APPEARANCES:

 2

 3    FOR THE PLAINTIFF:

 4        BY:   ROGER C. DENTON, ESQ.

 5              SCHLICHTER BOGARD & DENTON, LLP

 6              100 South Fourth Street, Suite 1200

 7              St. Louis, Missouri 63102

 8              314-621-6115

 9              rdenton@uselaws.com

10                  -and-

11          JOSEPH G. VANZANDT, ESQ.

12              BEASLEY ALLEN CROW METHVIN

13              PORTIS & MILES, PC

14              218 Commerce Street

15              Montgomery, Alabama 36104

16              334-269-2343

17              joseph.vanzandt@beasleyallen.com

18

19

20

21

22

23

24

25
```

Protected - Subject to Further Protective Review

```
 1   APPEARANCES (Continued):

 2

 3   FOR THE BAYER DEFENDANTS:

 4        PAMELA J. YATES, ESQ.

 5             ARNOLD & PORTER KAYE SCHOLER LLP

 6             77 South Figueroa Street, 44th Floor

 7             Los Angeles, California 90017

 8             213-243-4178

 9             pamela.yates@apks.com

10                 -and-

11        ADRIA W. CONKLIN, ESQ.

12             MITCHELL WILLIAMS

13             425 West Capitol Ave., Suite 1800

14             Little Rock, Arkansas 72201

15             501-688-8861

16             aconklin@mwlaw.com

17

18

19

20

21

22

23

24

25
```

Protected - Subject to Further Protective Review

```
 1    APPEARANCES (Continued):

 2

 3    FOR THE JANSSEN DEFENDANTS:

 4         BY:   MARGARET HOFFMANN, ESQ.

 5               SCHWABE, WILLIAMSON & WYATT

 6               1211 SW 5th Ave., Suite 1900

 7               Portland, Oregon 97204

 8               503-222-9981

 9               mhoffmann@schwabe.com

10                    -and-

11          DARYL DALY, ESQ.

12               DRINKER BIDDLE & REATH LLP

13               600 Campus Drive

14               Florham Park, New Jersey 07932

15               973-549-7106

16               daryl.daly@dbr.com

17

18

19    Videographer:  Danny Ortega

20

21

22

23

24

25
```

1    your testimony that the appropriate time to test
2    Ms. Mingo's Xarelto anticoagulant activity would
3    have been 48 hours after the initiation of
4    Xarelto?
5             MR. DENTON:  Object to the form.
6    Asked and answered.
7             Try it again.
8        A.   I think that the best way that I can
9    answer that is that under optimal conditions, a
10   measurement at 48 hours would be, well, would be
11   optimal.
12            I do not, though, as I said before,
13   have a concern that a sample measured before or
14   after that 48 hours is not also informative.
15   BY MS. HOFFMANN:
16       Q.   And when her physicians tested the
17   Xarelto anticoagulant activity for Ms. Mingo, it
18   is your recommendation that it be done with
19   Neoplastin because that is the most sensitive
20   reagent, correct?
21            MR. DENTON:  Object to the form.
22   Asked and answered.
23       A.   I don't believe that I'm saying that
24   there was a recommendation.  I'm saying that had
25   her physicians had information that the

Protected - Subject to Further Protective Review

1    prothrombin time, and especially with the
2    Neoplastin, was useful for monitoring Xarelto
3    activity and risk of bleeding, that they could
4    have utilized that information in assessing her
5    bleeding risk.
6    BY MS. HOFFMANN:
7        Q.   And then you go on to say that if they
8    had done the things you recommend and they'd
9    identified her as having an unnecessary high
10   risk of major bleeding risk, she could have been
11   titrated to a lower dose.
12            What lower dose of Xarelto would you
13   say she should have been titrated to?
14            MR. DENTON:  I object to the form.
15   The sentence continues.
16       A.   Well, just to be clear, I'm giving --
17   I'm saying that they have several options.  One
18   is that they could have considered titrating her
19   to a lower dose.
20   BY MS. HOFFMANN:
21       Q.   And that's the option I'm asking you
22   about.
23       A.   Let me finish.  Let me finish.  Let me
24   just finish.
25            Or if that was not an option, or if

 1    that was felt to be suboptimal, they could have
 2    discontinued Xarelto and switched her to an
 3    anticoagulant with a lesser risk of bleeding.
 4          The aspect of -- I'll go back to
 5    answer the first part of that question.  They
 6    could have considered titrating her to a lower
 7    dose.  That's within their purview.  They do not
 8    have to follow FDA guidelines.  They can choose
 9    dosing that they feel is safer for the patient
10    even though it is not necessarily following
11    specific FDA guidelines.
12          I don't know how they would do that.
13    They could try to break the pills in half, they
14    could give -- which I don't know that that's
15    possible.  They could give a cumulative dose
16    over time that was less than 30 per day, or if
17    that's not possible they could then switch, they
18    could then decide that they can't do that with
19    Xarelto and switch to a different anticoagulant.
20       Q.   You've used the disjunctive "or" in
21    setting forth these options, correct?
22       A.   That is correct, it says "or."
23       Q.   And so you're offering two options,
24    and the first option would be to titrate the
25    Xarelto to a lower dose.  That's the first

1     option you put in your report, right?

2          A.   That is correct.

3          Q.   And what you're -- but you would agree
4     with me that there is no approved or tested
5     treatment dosage of Xarelto for DVT other than
6     15 milligrams twice a day?

7               MR. DENTON:  Object to the form.

8     BY MS. HOFFMANN:

9          Q.   Is that a correct statement?

10              MR. DENTON:  Object to the form.

11         A.   As I said before, when I approach
12    this, I want to give the physicians the leeway
13    to be able to use medications in a way that they
14    feel is the most appropriate, including
15    off-label use of the anticoagulants.

16    BY MS. HOFFMANN:

17         Q.   So you agree that changing the dose of
18    Xarelto for the treatment of DVT would be an
19    off-label use by the doctor?

20              MR. DENTON:  Object to the form.

21         A.   The dosage that is in the label is 15
22    BID followed by 20 per day.  If that is not the
23    appropriate dose for this patient, I would want
24    the physician to have the ability to modify that
25    if that's, they feel, the best alternative.

Protected - Subject to Further Protective Review

```
 1    BY MS. HOFFMANN:
 2         Q.   And the other option that you're
 3    suggesting is to switch Ms. Mingo to a different
 4    anticoagulant, correct?
 5         A.   With a lesser risk of bleeding.
 6         Q.   And the two anticoagulants that you
 7    suggest are either Eliquis or Pradaxa, correct?
 8         A.   Those are the oral anticoagulants that
 9    have been most recently shown in several studies
10    to have a lesser risk of gastrointestinal
11    hemorrhage.
12         Q.   And we're going to get to that in a
13    minute.  But for the first part of this, I just
14    want to make sure that the other option that
15    you're suggesting is that Ms. Mingo could have
16    been switched to either Eliquis or Pradaxa.
17         A.   That's what it says in my report.
18         Q.   You're not suggesting any other form
19    of anticoagulation for Ms. Mingo for treatment
20    of her DVT if these other contingencies are met,
21    in other words?  These are two that you're
22    suggesting?
23              MR. DENTON:  Object to the form.
24         A.   I'm using -- in my language here I say
25    "such as."  That means that those are two
```

Protected - Subject to Further Protective Review

1    examples.  I would not rule out other
2    anticoagulant or other anticoagulant strategies
3    in the physician's ability to take care of in a
4    personalized way Ms. Mingo.
5    BY MS. HOFFMANN:
6         Q.   And in the event that the physician
7    had followed your recommendation and had opted
8    to change Ms. Mingo to Eliquis, what is your
9    recommendation as to how that physician should
10   have monitored the Eliquis?
11              MR. DENTON:  Object to the form.
12        A.   I do not -- I have not examined
13   Eliquis to the extent that I'm ready to make a
14   recommendation as to whether it needs to be
15   monitored or not and the specifics of that.
16   BY MS. HOFFMANN:
17        Q.   So in this opinion what you're saying,
18   if I understand it correctly, is if the decision
19   was made by the physician to switch Ms. Mingo
20   from Xarelto to Eliquis, you have not looked
21   sufficiently at Eliquis to determine whether or
22   not the physician should in some way monitor the
23   anticoagulant activity of Eliquis?
24              MR. DENTON:  Object to the form.
25   Asked and answered.

Protected - Subject to Further Protective Review

1    A.   As I've said, I have examined the data
2    with respect to Eliquis, but I do not feel yet
3    that my opinions have reached a maturity that I
4    can state here whether or not I think it should
5    be monitored.
6    BY MS. HOFFMANN:
7         Q.   In the event that you are recommending
8    to a physician that they -- let me start over
9    again.
10             So if I distill this, your opinion is
11   that with Xarelto, the physician should have
12   known to do a PT within 15 to 13 hours after the
13   last dose with Neoplastin, and if it was a
14   prolonged PT of 20 or greater, switched her to
15   Eliquis or Pradaxa, neither of which you have an
16   opinion one way or another should be monitored
17   for their anticoagulant activity?
18             MR. DENTON:  I object to the form.
19   BY MS. HOFFMANN:
20        Q.   Is that right?
21             MR. DENTON:  That might have been the
22   most incomprehensive question you've asked all
23   day.
24        A.   First of all, I'm not saying that the
25   physician should have known.  What I'm saying is

```
 1                MR. DENTON:  Object to the form.
 2         A.   Again, under this hypothetical, I
 3   would have the consultation the way we normally
 4   do with physicians regarding this, and we would
 5   have had a discussion, and we would have
 6   researched this in-depth and come to some sort
 7   of discussion with respect to that.
 8                On that hypothetical, I can't say that
 9   would be -- what would be the exact outcome of
10   that.  It would have to be a discussion that
11   would be done in real-time in this patient.
12   BY MS. HOFFMANN:
13         Q.   Well, with all due respect, Doctor,
14   I'm just following through on your hypothetical
15   which is part of your Opinion Number 4, which is
16   that had her physicians done certain things,
17   then you would recommend one of two options, one
18   of which would be to switch her to Pradaxa or
19   Eliquis.
20                Following up on that, are there any of
21   Ms. Mingo's other medications or other medical
22   conditions that you would have included in that
23   consult in deciding what dosage of Eliquis to
24   give her?
25                MR. DENTON:  Object to the form.
```

1    Asked and answered.

2         A.   Again, I'm not sure I can answer it
3    better.  I'm not making a specific
4    recommendation on which drug and/or which
5    dosage.  I'm saying she could have been
6    switched.  That, then, would have required
7    another entire consultative procedure to
8    determine -- to make that decision and choice.
9    I did not do that as part of this report.  I'm
10   simply saying that she could have been switched.
11   BY MS. HOFFMANN:
12        Q.   If the doctors had followed your
13   recommendation and switched her to Pradaxa, what
14   dosage of Pradaxa would you have recommended?
15             MR. DENTON:  Again, I object to the
16   form of the question.
17        A.   Again, I think in terms of the
18   hypothetical, I would again use that in the same
19   way with the apixaban.  I would have had that as
20   a discussion with the physicians to make that
21   determination.
22   BY MS. HOFFMANN:
23        Q.   So let me approach it from a different
24   angle, Doctor.
25             Had you been consulted in the care and

Protected - Subject to Further Protective Review

```
 1    STATE OF NEW YORK )

 2    COUNTY OF ERIE    )

 3                I, MAUREEN O'CONNOR POLLARD, RMR, CLR,

 4    and Notary Public in and for the State of New

 5    York, do certify that on the 7th day of

 6    February, 2017, at 8:05 o'clock, the person

 7    above-named was duly sworn to testify to the

 8    truth of their knowledge, and examined, and such

 9    examination reduced to typewriting under my

10    direction, and is a true record of the testimony

11    given by the witness.  I further certify that I

12    am neither attorney, related or employed by any

13    of the parties to this action, and that I am not

14    a relative or employee of any attorney employed

15    by the parties hereto, or financially interested

16    in the action.

17                In witness whereof, I have hereunto

18    set my hand this 7th day of February, 2017.

19

20                _____

21                MAUREEN O. POLLARD, Notary Public

22                My Commission Expires:  3/14/19

23                Realtime Systems Administrator

24

25
```