UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE ELDON E. FALLON |
| Dora Mingo, et al. v. Janssen Research & Development, LLC et al.<br>Case No. 2:15-cv-03469 | MAGISTRATE NORTH |
| William Henry v. Janssen Research & Development, LLC f/k/a Johnson & Johnson Pharmaceutical Research and Development, LLC, et al.<br>Case No. 2:15-cv-0224 | |

**BAYER DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
ON PLAINTIFFS' PUNITIVE-DAMAGES DEMANDS**

Defendants Bayer Pharma AG ("BPAG"), Bayer HealthCare Pharmaceuticals Inc. ("BHCP"), and the four "Non-Litigating Bayer Defendants" (collectively, the "Bayer Defendants") move for partial summary judgment on Plaintiffs' demand for punitive damages in the above-captioned cases.[1]

**INTRODUCTION**

Plaintiffs in these cases are residents of Mississippi (*Mingo*) and Texas (*Henry*). Accordingly, those states are considered the "forum states" in an MDL proceeding, and their

---

[1] As the Court knows, among the Bayer entities, only two—U.S.-based BHCP and German-based BPAG—have been actively litigating the cases. *See* PTO 10 ¶ II.E; PTO 11 ¶ 2(d), (e). The other four named Bayer defendants—the "Non-Litigating Bayer Defendants"—are Bayer AG, Bayer HealthCare AG ("BHC AG"), Bayer Corporation ("Bayer Corp."), and Bayer Healthcare, LLC ("BHC LLC"). This Court's PTO 10 relieved those entities of "any obligation to answer" in any case in the MDL in which they had not already answered and also stayed discovery against them. PTO 10 ¶ II.E, F. Accordingly, none of the Non-Litigating Bayer Defendants has answered either plaintiff's complaint or has otherwise been litigating these cases. *See id.* Indeed, Plaintiffs have previously agreed (in the first two bellwether cases) to dismiss with prejudice the Non-Litigating Bayer Defendants that are the subject of this motion. *See* Stipulation & Order (Doc. 6025); Stipulation & Order (*Boudreaux*, Doc. 19). Nonetheless, for completeness of the record and to preserve any objections should the Non-Litigating Bayer Defendants remain in these cases, this brief is filed on behalf of all of the Bayer entities named as defendants in these cases.

1

choice-of-law rules must be used to determine what substantive law governs the various issues in these cases. *In re Vioxx Prods. Liab. Litig.*, 478 F. Supp. 2d 897, 903 (E.D. La. 2007) (Fallon, J.). Both Mississippi and Texas law follow the *Restatement (Second) of Conflict of Laws*, which requires a "most-significant-relationship" test to determine which state's law will apply to each issue in a case. Because the analysis is on an issue-by-issue basis, the test can lead to different results—*i.e.*, the application of different states' laws—to various issues within the case. Although the presumption is that the substantive law of the state where the injury occurred will govern the question of *liability*, the question of *punitive damages* presents a separate choice-of-law analysis. For punitive damages, as with other issues, the Court must consider certain contacts under the most-significant-relationship test—including where the parties are domiciled, where the injury-causing conduct occurred, where the injury occurred, and where any relationship between the parties is centered—based on their relative importance in light of enumerated policy interests.

For the punitive damages analysis here, those various contacts point toward applying German or New Jersey law to Plaintiffs' claim for punitive damages against the Bayer Defendants. All of the conduct that Plaintiffs allege in these cases as the basis for punitive damages—involving the design, manufacture, advertising, and/or distribution of Xarelto—occurred (if at all) at the Bayer Defendants' principal places of business in Germany and New Jersey. Applying German or New Jersey law is consistent with decisions from other MDL courts, which regularly apply to punitive damages the law of the state where the corporate defendant is based and/or the state where the alleged misconduct occurred. *See, e.g.*, *In re Educ. Testing Serv. Praxis Principles of Learning & Teaching: Grades 7-12 Litig.*, 517 F. Supp. 2d 832 (E.D. La. 2007) (Vance, J.); *In re Testosterone Replacement Therapy Prods. Liab. Litig. Coordinated Pretrial Proceedings*, MDL No. 2545, 2017 WL 1836435 (N.D. Ill. May 8, 2017). Those decisions recognize that, because

2

the purpose of punitive damages is to punish the alleged wrongdoer and deter conduct—rather than to compensate an injured plaintiff—the state where the defendant's conduct occurred has a significant interest in addressing that conduct, whereas the state where the plaintiff resides or where the alleged injuries occurred has a comparatively minimal interest.

Just so here—either German or New Jersey law governs Plaintiffs' punitive-damages demand, and the Bayer Defendants are due summary judgment under either state's law because neither jurisdiction recognizes punitive damages in a case like this one that involves an FDA-approved prescription medication.

## LEGAL STANDARD

Summary judgment should be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is proper where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is particularly appropriate to resolve pure questions of law, where the relevant facts are not in genuine dispute. *See Int'l Ass'n of Machinists & Aerospace Workers, Dist. 776 v. Tex. Steel Co.*, 538 F.2d 1116, 1119 (5th Cir. 1976). Because this motion asks the Court to resolve only questions of law based on undisputed facts, summary judgment is appropriate here.

## ARGUMENT

I.  **The laws of Germany or New Jersey—where the Bayer Defendants maintain their principal places of business and all of the relevant alleged conduct occurred—apply to Plaintiffs' requests for punitive damages.**

   A.  **Mississippi and Texas choice-of-law rules govern these two cases, respectively, and both states follow the *Restatement (Second) Conflict of Laws*.**

   A federal court sitting in diversity generally applies the forum state's choice-of-law rules.

3

*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 403 (5th Cir. 2004). An "MDL court must apply the law of the transferor forum, that is, the law of the state in which the action was filed, including the transferor forum's choice-of-law rules." *In re Vioxx Prods. Liab. Litig.*, 478 F. Supp. 2d 897, 903 (E.D. La. 2007) (Fallon, J.). Because *Henry* was filed in the Northern District of Texas, this Court should apply Texas's choice-of-law rules to *Henry*. And because *Mingo*, by agreement of the parties (*see* PTO 9 ¶ II.G), is to be treated as though it were filed in Plaintiff's home district (*i.e.*, the Southern District of Mississippi), Mississippi's choice-of-law rules apply to *Mingo*.

Both Mississippi and Texas apply the "most-significant-relationship" test set forth in sections 6 and 145 of the *Restatement (Second) of Conflict of Laws*. *See Mitchell v. Craft*, 211 So. 2d 509, 515–16 (Miss. 1968) (replacing the place-of-injury rule with the *Restatement (Second)* test); *Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979) (same). Under this approach, where there is a conflict between two or more potentially applicable states' laws, "the law of the state with the most significant relationship to the particular substantive issue will be applied to resolve that issue." *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984) (Texas law); *see also Boardman v. United Servs. Auto. Ass'n*, 470 So. 2d 1024, 1031 (Miss. 1985) (same).

Section 145 describes the "[c]ontacts to be taken into account" in determining which state has the most significant relationship to a specific tort issue, such as punitive damages. *Restatement (Second)* § 145(2). These section 145 factors "are to be weighed in accordance with the general principles" set forth in section 6 of the *Restatement (Second)*. *Coats v. Penrod Drilling Corp.*, 785 F. Supp. 614, 618 (S.D. Miss. 1992), *aff'd*, 5 F.3d 877 (5th Cir. 1993), *opinion reinstated in part & aff'd on reh'g*, 61 F.3d 1113 (5th Cir. 1995) (en banc).

The *Restatement (Second)* instructs that "[e]ach issue" in a particular case "is to receive separate consideration if it is one which would be resolved differently under the local law rule of two or more of the potentially interested states." § 145, cmt. d; *see also, e.g.*, *Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 205 (Tex. 2000) ("[T]he *Restatement* requires the court to consider which state's law has the most significant relationship *to the particular substantive issue to be resolved*." (emphasis original)); *Boardman*, 470 So. 2d at 1031 ("[T]he law of a single state does not necessarily control every issue in a given case," and the Court should "apply the . . . test to each question presented."). Mississippi and Texas courts thus regularly apply the laws of different states to different issues in a single case. *See, e.g.*, *Hughes*, 18 S.W.3d at 205, 207 (holding that the court of appeals erred by "fail[ing] to consider which state has the most significant relationship to the issue to be resolved"); *Boardman*, 470 So. 2d at 1031 ("emphasiz[ing]" that, under Mississippi law, "the law of a single state does not necessarily control every issue in a given case").

This principle, known as dépeçage, also applies to punitive damages. *See Restatement (Second)* § 171 cmt. d (noting that "exemplary damages" should be determined by applying section 145). Indeed, courts applying the *Restatement (Second)*—including this Court—regularly apply the laws of different states to punitive damages and liability issues. *See, e.g.*, *In re Educ. Testing Serv. Praxis Principles of Learning & Teaching: Grades 7-12 Litig.*, 517 F. Supp. 2d 832, 852 (E.D. La. 2007) (Vance, J.) (holding that New Jersey law applied to plaintiffs' punitive-damages demands even though law of plaintiffs' residence governed liability issues because "[p]unitive damages . . . are intended to fulfill different policy objectives than other tort rights and remedies"); *Restatement (Second)* § 171 Reporter's Notes to cmt. d (observing that "[t]he law governing the right to exemplary damages need not necessarily be the same as the law governing the measure of compensatory damages . . . because situations may arise where one state has the dominant interest

with respect to the issue of compensatory damages and another state has the dominant interest with respect to the issue of exemplary damages").

  **B.** **A choice-of-law analysis is necessary here because there is a "true conflict" between the laws of two or more states on the question of punitive damages in these cases.**

Here, the Court must engage in a choice-of-law analysis because there is a "true conflict between the laws of two states, each having an interest in the litigation," in terms of how those states view punitive damages. *Zurich Am. Ins. Co. v. Goodwin*, 920 So. 2d 427, 432 (Miss. 2006); *see also Duncan*, 665 S.W.2d at 419 (Texas law).[2]

On the one hand, the laws of Mississippi and Texas—*i.e.*, the states where Plaintiffs reside and where their alleged injuries occurred—each provide for punitive damages in certain circumstances. In Texas, a claimant may be entitled to punitive damages if he "proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from: (1) fraud; (2) malice; or (3) gross negligence." Tex. Civ. Prac. & Rem. Code § 41.003. Mississippi similarly allows punitive damages where there is "clear and convincing evidence" that the defendant "acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud." Miss. Code. Ann. § 11-1-65(1)(a).

By contrast, the laws of Germany and New Jersey—*i.e.*, the states where the Bayer Defendants maintain their principal places of business and the alleged conduct occurred—do not authorize punitive damages in a pharmaceutical case like this one. Under German law, punitive damages are categorically "unavailable." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 497 (2008).

---

[2] A difference between the state laws regarding the availability of punitive damages can create such a conflict. *See, e.g.*, *Black v. Toys R Us-Del., Inc.*, No. 4:08-cv-3315, 2010 WL 4702344, at *7 (S.D. Tex. Nov. 10, 2010); *Eisenstadt v. Tel. Elecs. Corp.*, No. 3:06-cv-1196-O, 2008 WL 4452999, at *2 (N.D. Tex. Sept. 30, 2008).

As for New Jersey law, punitive damages are not allowed in a pharmaceutical case where the challenged drug is FDA approved. *See* N.J. Stat. Ann. § 2A:58C-5(c); *McDarby v. Merck & Co., Inc.*, 949 A.2d 223, 271–76 (N.J. Super. Ct. 2008).

In light of this conflict of laws—between the law of Plaintiffs' home states (where the alleged injury occurred) and the law of Defendants' principal place of business (where the alleged misconduct occurred)—the Court must determine which state has "the most significant relationship" to Plaintiffs' demand for punitive damages.

### C. The law of the Bayer Defendants' principal place of business—*i.e.*, Germany or New Jersey—has the most significant relationship to the punitive-damages question.

Section 145 of the *Restatement (Second)* requires the Court to consider four factors: (1) "the domicil[e], residence, nationality, place of incorporation and place of business of the parties"; (2) "the place where the conduct causing the injury occurred"; (3) "the place where the relationship, if any, between the parties is centered"; and (4) "the place where the injury occurred." These contacts "are to be evaluated according to their relative importance with respect to the particular issue," *id.*, and "[c]ourts should evaluate these contacts for their quality, not their quantity," *Spence v. Glock, Ges.m.b.H*, 227 F.3d 308, 312 (5th Cir. 2000) (applying Texas law); *see also Duncan*, 665 S.W.2d at 421 (recognizing under Texas law that "[s]ome contacts are more important than others because they implicate state policies underlying the particular substantive issue"). Here, those factors establish that German or New Jersey law governs Plaintiffs' punitive-damages demand.

A number of MDL courts, applying these very same rules, have recognized that the defendant's location and the location of the alleged punitive-damages-inducing conduct are of primary importance in a punitive-damages choice-of-law analysis. For example, in the *Education Testing Services* MDL, Judge Vance dealt with a similar issue. There, Pennsylvania and Ohio

7

residents sued a company that maintained its principal place of business in New Jersey. *See In re Educ. Testing Serv.*, 517 F. Supp. at 852. Although Judge Vance concluded that Pennsylvania and Ohio law governed *liability* issues, the court held that New Jersey law governed any entitlement to *punitive damages* because that state had "the most significant connection to the issue of punitive damages." *Id.* As the court explained, because "[p]unitive damages . . . are intended to fulfill different policy objectives than other tort rights and remedies," "the contacts of the state in which the allegedly wrongful conduct occurred and the state of the defendant's place of business take on a more prominent role." *Id.*

The *Testosterone Replacement Therapy* MDL court recently reached a similar result, also applying the *Restatement (Second)*. *See In re Testosterone Replacement Therapy Prods. Liab. Litig.*, MDL No. 2545, 2017 WL 1836435, at *21–22 (N.D. Ill. May 8, 2017). There, the court acknowledged the forum state's "strong presumption that the law of the state where the injury occurred governs in a personal injury case." *Id.* But the court also recognized that, because "[p]unitive damages serve a public goal of punishing the defendant for its wrongdoing and protecting the public from future misconduct," the law of the defendant's principal place of business must apply to the punitive-damages demand. As the court recognized, the "state in which a defendant is domiciled . . . tends to have a stronger policy interest in whether punitive damages are available than the state in which the plaintiff's injury occurred." *Id.*[3]

Those MDL courts' analysis as to choice of law for determining a plaintiff's entitlement to

---

[3] *E.g.*, *In re Cessna 208 Series Aircraft Prods. Liab. Litig.*, MDL No. 1721, 2009 WL 274509, at *4–5 (D. Kan. Feb. 5, 2009) (concluding that Kansas punitive-damages law applied because Kansas was the state of defendant's incorporation and principal place of business and the "place where the alleged injury-causing conduct occurred" and these were "the most important contacts to consider"); *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 66–68 (D.N.J. 2009) (concluding that New Jersey law applied because the misrepresentations were made in New Jersey, where corporate representatives "planned and implemented" the relevant actions).

8

punitive damages is consistent with the *Restatement (Second)*, Texas and Mississippi case law, and the policies underlying punitive damages. Significantly, unlike compensatory damages, "the primary purpose of punitive damages is to punish the wrongdoer and deter similar misconduct in the future by the defendant and others." Miss. Code § 11-1-65; *see also Fairfield Ins. Co. v. Stephens Martin Painting, LP*, 246 S.W.3d 653, 666 (Tex. 2008) (noting that "[f]or over 150 years, this Court has held that exemplary damage awards serve to punish the wrongdoer and set a public example to prevent the repetition of the act"). And the *Restatement (Second)* makes clear that "when the primary purpose of the tort rule involved is to deter or punish misconduct, the place where the conduct occurred has peculiar significance" and "may be the state of dominant interest and thus that of most significant relationship." § 145(2) cmt. c; *Ternium Int'l USA Corp. v. Consol. Sys., Inc.*, No. 3:08-cv-0816-G, 2009 WL 804119, at *5 (N.D. Tex. March 25, 2009) (applying this instruction).[4]

In contrast, the state "where the injury occurred" is less important where the issue relates to damages, particularly punitive damages. Second Restatement § 145(2); *id.* § 171 cmt. b. As the Texas Supreme Court explained in *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 849 (Tex. 2000), "contacts such as the site of the injury . . . are less important" to the choice-of-law analysis for damages.[5] This is particularly true with regard to punitive damages—because punitive-

---

[4] *See, e.g.*, *Dale v. Ala Acquisitions I, Inc.*, 434 F. Supp. 2d 423, 435–36 (S.D. Miss. 2006) (noting that the defendant's domiciliary state has an "undeniable" interest in having its rules of law applied to the issue of which parties are responsible for payment of damages, particularly where the alleged misconduct also occurred in that state); *Sico N. Am., Inc. v. Willis*, No. 14-08-00158-CV, 2009 WL 3365856, at *3–6 (Tex. Ct. App. Sept. 10, 2009) (holding that Minnesota had the most significant relationship to products-liability claims, despite plaintiff's injury and residency in Texas, because Minnesota, where the defendant was incorporated and headquartered, was the place where the allegedly defective product "was designed, manufactured, and introduced into the stream of commerce").

[5] Both Mississippi and Texas have both abandoned the *lex loci delicti* place-of-injury rule in favor of the "most-significant-relationship" test. *See Mitchell*, 211 So. 2d at 515–16 (replacing the place-of-injury rule with the *Restatement (Second)* test); *Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979) (same). These courts adopted this test "to avoid reaching the same result as would a state bound by conflict of laws rules which require applying the substantive law of the place where of the injury occurred." *Nailen v. Ford Motor Co.*, 690 F. Supp. 552, 557 (S.D.

damages considerations are directed toward an assessment of appropriate punishment and deterrence, and not toward compensating the plaintiff, "[n]umerous courts have held that the state of the plaintiff's domicile does not have an interest in imposing its state law regarding punitive damages." *Aguirre Cruz v. Ford Motor Co.*, 435 F. Supp. 2d 701, 705–07 (W.D. Tenn. 2006) (collecting cases).

\* \* \*

Thus, for the punitive-damages issue here, the most important contacts are the Bayer Defendants' domicile and the jurisdiction where the alleged tortious conduct occurred, and the place of injury is relatively unimportant. Applying these contacts here establishes that German or New Jersey law applies to Plaintiffs' punitive-damages demand.

### 1. *The Bayer Defendants' principal places of business are in Germany or New Jersey.*

The *Restatement (Second)* directs that "a corporation's principal place of business is a more important contact than the place of incorporation." *Id.* § 145 cmt. e. Here, the principal place of business for each of the Bayer Defendants is either Germany or New Jersey.[6] *See* Declarations of Keith R. Abrams ("Abrams Decl.") ¶ 3 (attached as Exhibit 1 (Mingo) and Exhibit 2 (Henry)). Germany is the principal place of business for BPAG (as well as Bayer AG and BHC AG). *Id.*

---

Miss. 1988); *see also BDO Seidman, LLP v. Bracewell & Patterson, LLP*, No. 05-02-00636-CV, 2003 WL 124829, at \*5 (Tex. Ct. App. 2003) ("A blanket rule applying the . . . law from the state where the injury occurred would obviously be simplest to apply. However, this result is contrary to the Texas Supreme Court's holdings . . . that *lex loci delicti* no longer controls the choice-of-law analysis."). Although Mississippi law generally favors the law of the place of injury, that presumption applies only when there is not a more significant relationship with another state to a particular issue. *See Allison v. ITE Imperial Corp.*, 928 F.2d 137, 141–42 & n.4 (5th Cir. 1991) (citing *Mitchell*, 211 So. 2d at 515–16). The presumption yields where, as here, the place of injury "bears little relation to the parties" and the particular issue at hand. *McDaniel v. Ritter*, 556 So. 2d 303, 310, 317 (Miss. 1989). Moreover, in Texas, "[p]lace of injury now is just one of multiple factors to be considered." *Sico N. Am.*, 2009 WL 3365856, at \*3–6.

[6] Only BPAG and BHCP have been litigating these cases and, indeed—as Plaintiffs stipulated in the first two bellwether cases (*see* Doc. 6025; *see also Boudreaux*, Doc. 19)—are the proper Bayer entities in this litigation. *See supra* n.1.

10

¶ 3(a)–(c). New Jersey is the principal place of business for BHCP (as well as Bayer Corp.[7] and BHC LLC). *Id.* ¶ 3(d).[8] Thus, the most important contact points to the application of German or New Jersey punitive-damages law.

Germany and New Jersey have strong interests in determining the level of punishment and deterrence to be imposed on businesses that "operate in [those states] to design, make, and distribute products." *Sico N. Am.*, 2009 WL 3365856, at *3–6 (applying Texas choice of law). Such states have an "undeniable interest . . . in assuring that [their] domiciliaries perform their duties and obligations." *Dale*, 434 Supp. 2d at 435 (applying Mississippi choice of law). "To find otherwise would be to gut the very concept of corporate accountability [and] would encourage rampant subterfuge and confusion" in an attempt to avoid punitive damages. *In re Air Crash Disaster Near Chi., Ill. on May 25, 1979*, 644 F.2d 594, 613 (7th Cir. 1981). On the other hand, these states also have interests in "(1) the financial stability of the businesses that conduct their affairs within its borders, and (2) the overall economic well-being of [their] citizenry," which may cause them to make policy decisions disallowing punitive damages. *In re Disaster at Detroit Metro. Airport on Aug. 16, 1987*, 750 F. Supp. 793, 805 (E.D. Mich. 1989); *see also Aguirre Cruz*, 435 F. Supp. 2d at 705 (recognizing the interest of the "principal place of business and location of much of the alleged misconduct . . . in shielding its resident defendants from excessive liability").

### 2. *Any alleged tortious conduct occurred in Germany and New Jersey.*

Similarly, any alleged tortious conduct occurred in Germany and/or New Jersey because, in a product-liability action, "the place where the conduct causing the injury occurred" generally

---

[7] Prior to January 1, 2017, Bayer Corp's principal place of business was located in Pennsylvania. Abrams Decl. ¶ 3(d). In any event, Bayer Corp. has been a non-operating holding company since January 1, 2003. *Id.*

[8] Bayer AG, BPAG, and BHC AG are German companies. Abrams Decl. ¶ 3(a)–(c). Bayer Corp. is incorporated in Indiana, BHCP is incorporated in Delaware, and BHC LLC is organized in Delaware. *Id.* ¶ 3(d).

11

is the place where the allegedly defective product was designed, marketed, or manufactured. *See, e.g.*, *Spence*, 227 F.3d at 312 (concluding that for a design-defect claim, "the conduct causing the injury occurred in Austria, where the gun was designed and its parts manufactured, [rather] than in Georgia, where the guns were merely assembled"); *Black*, 2010 WL 4702344, at *11 (finding that "the primary location of the injury-causing conduct" under Texas law was South Africa, where the "product was designed, manufactured, and packaged"). As the Southern District of Texas recognized in *Black*, when a plaintiff seeks "punitive damages against [the defendant] for failing to make its product safer despite having knowledge of the dangers," "the conduct causing [the] injury for purposes of punitive damages can be properly situated" at the location of the company's headquarters, where "all of [the defendant's] business decisions happened." 2010 WL 4702344, at *11.

Janssen submitted and owns the New Drug Applications for Xarelto and is the sole entity charged with regulatory responsibility and authority for Xarelto's design and labeling in the U.S. As a result of certain licensing agreements, to which BPAG and/or BHCP are parties, none of the Bayer Defendants currently sells or markets Xarelto in the U.S. Abrams Decl. ¶ 5. BPAG and BHCP did participate in the development, research, and testing of Xarelto (*id.* ¶ 9), but all of BPAG and BHCP's relevant business decisions occurred in Germany or New Jersey, at the companies' respective headquarters. *See id.* BPAG also manufactures Xarelto's active ingredient, rivaroxaban, in Germany. *See id.* ¶ 6.

\* \* \*

Thus, according to the two most important *Restatement (Second)* section 145 contacts for punitive-damages purposes—the Bayer Defendants' principal places of business and the place of the alleged conduct—German or New Jersey law applies to Plaintiffs' punitive-damages demands.

### 3. *The relationships between the Bayer Defendants and Plaintiffs are centered in Germany or New Jersey.*

The relationships, if any, between the Bayer Defendants and Plaintiffs are centered in Germany or New Jersey because in analyzing choice of law for punitive damages in a product-liability case, the relevant "relationship between the parties is centered where the product was designed and manufactured." *Black*, 2010 WL 4702344, at *15.

### 4. *The Plaintiffs were injured in Mississippi and Texas, but this factor is relatively unimportant in punitive-damages choice of law.*

Although Plaintiffs' injuries occurred in Mississippi and Texas, respectively, as already explained, this contact is relatively unimportant to a punitive-damages analysis under the *Restatement (Second)*. Moreover, although Plaintiffs (and in *Henry*, Plaintiff's decedent) live in Mississippi and Texas, Plaintiffs have no compelling legal interest in the issue of punitive damages in particular, and this contact is unimportant to the conflict-of-laws analysis for punitive damages. *See* Miss. Code § 11-1-65 (establishing that the focus is on the defendant's conduct, not the compensation of the plaintiff, in awarding of punitive damages); *Fairfield Ins.*, 246 S.W.3d at 666 (same under Texas law). Plaintiffs' home states have a legitimate interest in "assuring that the plaintiffs are adequately compensated for their injuries," but that interest is "fully served by applying the law of the plaintiffs' domiciles as to issues involving the measure of compensatory damages," making the plaintiffs whole. *Air Crash Disaster Near Chi.*, 644 F.2d at 613. Thus, Mississippi and Texas do not have an "interest in imposing punitive damages on the defendants." *Id.*

### 5. *The policy considerations under Section 6 confirm that German or New Jersey law governs the punitive-damages issue.*

The section 145 contacts overwhelmingly point towards application of German or New Jersey law, but section 6's policy considerations also confirm that either German or New Jersey

13

law must govern Plaintiffs' punitive-damages demands. In a tort case, the most important policy factors are (1) "the needs of the interstate and international systems"; (2) "the relevant policies of the forum"; (3) "the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue"; and (4) "ease in the determination and application of the law to be applied." *Restatement (Second)* § 6; *see also id.* § 145 cmt. b (other policy factors are "relative[ly] insignifican[t]" in a tort case); *Doctor v. Pardue*, 186 S.W.3d 4, 9 (Tex. Ct. App. 2005).

Germany's or New Jersey's interest in applying its punitive-damages law outweighs any minimal interest that Mississippi or Texas respectively may have. Through its Punitive Damages Act, the New Jersey legislature has made a conscious decision "to limit the liability of manufacturers so as to balance the interests of the public and the individual with a view towards economic reality." *Zara v. Marquess & Nell, Inc.*, 675 A.2d 620, 627 (N.J. 1996). And both Germany and New Jersey have elected to commit punishment and deterrence to bodies outside of the civil courts—Germany to its criminal justice courts and New Jersey to the FDA. *See* Volker Behr, *Punitive Damages in American and German Law—Tendencies Toward Approximation of Apparently Irreconcilable Concepts*, 78 Chi.-Kent L. Rev. 105, 106 (2003) (under German law, "punishment is restricted to criminal law sanctions"); *Perez v. Wyeth Labs. Inc.*, 734 A.2d 1245, 1259 (N.J. 1999) ("For all practical purposes, . . . compliance with FDA standards should be virtually dispositive.").

Particularly here, with respect to punitive damages, any interest that Mississippi or Texas may have is significantly weakened because none of the Bayer Defendants is domiciled in Mississippi or Texas, and none of the conduct to which punitive damages would be directed occurred in Mississippi or Texas. And, as discussed above, punitive damages are a matter of public

concern, not a private right specific to a particular plaintiff. Accordingly, the fact that Plaintiffs are domiciled in Mississippi and Texas does not materially strengthen those states' interests in the punitive-damages issue.

With respect to the "ease in the determination and application of the law to be applied," Second Restatement § 6(2), German and New Jersey punitive-damages laws are both clear and easily administrable, *see infra* Part II. Likewise, the remaining three policy considerations, which generally have less importance with respect to tort issues, *see* Second Restatement § 145 cmt. b, are, at a minimum, neutral.

Accordingly, the Second Restatement section 6 policy considerations likewise demonstrate that German or New Jersey law governs the punitive-damages issue here.

II.  **The Bayer Defendants are due summary judgment on Plaintiffs' punitive-damages demand because, as a matter of law, punitive damages are unavailable under German law and New Jersey law in a case like this one.**

The Court should grant the Bayer Defendants summary judgment on Plaintiffs' punitive-damages demand because under either German law or New Jersey law—the Court need not decide which—punitive damages are unavailable as a matter of law.

*Germany.* The United States Supreme Court and other federal courts have recognized that German law is crystal clear on this point: "Noncompensatory damages are not part of the civil-code tradition and thus unavailable in such countries as . . . Germany . . . ." *Exxon Shipping*, 554 U.S. at 497; *accord, e.g.*, *Hefferan v. Ethicon Endo-Surgery, Inc.*, 828 F.3d 488, 495 (6th Cir. 2016) (recognizing that German law "lacks . . . punitive damages").

*New Jersey.* New Jersey is likewise clear. The New Jersey Product Liability Act expressly provides that punitive damages "shall not be awarded if a drug . . . which caused the claimant's harm was subject to premarket approval or licensure by the Federal Food and Drug Administration . . . and was approved or licensed." N.J. Stat. Ann. § 2A:58C-5(c). Here, Xarelto is an FDA-

15

approved prescription drug. Consequently, under New Jersey law, punitive damages "shall not be awarded." *Id.* Although, on its face, the New Jersey Product Liability Act includes an exception for a manufacturer that knowingly withheld or misrepresented material, relevant information required to be submitted under the agency's regulations, *id.*, New Jersey courts have held that federal law preempts that exception. *See McDarby*, 949 A.2d at 271–76 (holding that application of the statutory exception would "impinge upon" federal law and the preemption principles set forth in *Buckman*). New Jersey courts have consistently reaffirmed *McDarby*'s preemption holding, even after the U.S. Supreme Court's subsequent decision in *Wyeth v. Levine*, 555 U.S. 555 (2009).[9] As a result, New Jersey law bars the award of punitive damages in this case, and there is no statutory exception available to Plaintiffs.

\* \* \*

It is no answer that the applicable states' laws should be ignored because they do not recognize punitive damages. Although Mississippi and Texas take a different approach to punishment and deterrence, New Jersey's and Germany's alternate choices are equally deserving of respect. *See Restatement (Second)* § 6 cmt. d; *Boardman*, 470 So. 2d at 1038 (Mississippi law); *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 680 (Tex. 1990). Indeed, the *Restatement (Second)* has clearly instructed that "[a] rule which exempts the actor from liability for harmful conduct is entitled to the same consideration in the choice-of-law process as is a rule which imposes liability." *Restatement (Second)* § 145 cmt. c.

Accordingly, Mississippi and Texas courts do not hesitate to apply another state's law

---

[9] *See, e.g.*, *Baker v. APP Pharm., LLC*, No. 09-05725, 2010 WL 4941454, at \*4 (D.N.J. Nov. 30, 2010) (dismissing punitive-damages claim because the drug was an FDA-approved product and the statutory exception "is preempted by federal law" under *McDarby*); *Cornett v. Johnson & Johnson*, 998 A.2d 543, 566–67 (N.J. Super. Ct. 2010) (same), *aff'd in part and modified in part on other grounds*, 48 A.3d 1041 (N.J. 2012); *Irby v. Novartis Pharm. Corp.*, 2011 N.J. Super. Unpub. LEXIS 3188, at \*9–10 (N.J. Super. Ct. Nov. 18, 2011) (recognizing that statutory exception is preempted under *McDarby*).

16

"even if it means that [their citizens] receive less compensation for their injuries." *Zurich Am. Ins.*, 920 So. 2d at 437 (Mississippi law); *see also Gutierrez*, 583 S.W.2d at 321–22 (under Texas law, concluding that even though Mexican law limits damages and therefore "ha[s] the effect of substantially reducing a plaintiff's recovery compared to that which he might expect to receive in a United States court," "these differences by no means render the laws of Mexico violative of public policy"). Indeed, under the most-significant-relationship test, Mississippi and Texas courts routinely apply a foreign state's punitive-damages laws, including in cases where those laws limit damages. *See Figueroa v. Williams*, Civ. Action No. V-05-56, 2010 WL 5387599, at *7–8 (S.D. Tex. Dec. 17, 2010) (recognizing that Mexico and Honduras had created a "deliberate and well reasoned" damages regime, which was used "as a means to make plaintiffs whole, not to provide economic windfall," and that those countries therefore "do have an interest in applying their laws" that do not allow punitive damages); *Lee v. Delta Air Lines, Inc.*, 797 F. Supp. 1362, 1369–70 (N.D. Tex. 1992) (recognizing that, under Texas law, Florida had a legitimate interest in limiting punitive damages where enforcement of the law was "not contrary to good morals or natural justice," applying the law "would not in a significant way dilute the goal of deterrence," and the "Florida legislature could not have made its policy any plainer"). Thus, under Mississippi and Texas law, the fact that applying German or New Jersey substantive law will defeat Plaintiffs' punitive damages demand should not affect the Court's analysis.

## CONCLUSION

For the reasons stated above, the Court should enter summary judgment in the Bayer Defendants' favor on Plaintiffs' demands for punitive damages.

Respectfully submitted,

ARNOLD & PORTER KAYE SCHOLER LLP

By: /s/ *William Hoffman*
William Hoffman
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
william.hoffman@apks.com

Andrew K. Solow
Steven Glickstein
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8485
andrew.solow@apks.com
steven.glickstein@apks.com

BRADLEY ARANT BOULT CUMMINGS LLP

By: */s/ Kevin C. Newsom*
Kevin C. Newsom
Lindsey C Boney IV
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place, 1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8803
knewsom@bradley.com
lboney@bradley.com


CHAFFE MCCALL L.L.P.

By: /s/ *John F. Olinde*
John F. Olinde
CHAFFE MCCALL LLP
1100 Poydras Street, Suite 2300
New Orleans, LA 70163
Telephone: (504) 585-7241
olinde@chaffe.com

*Attorneys for Bayer Defendants*

## CERTIFICATE OF SERVICE

       The undersigned hereby certifies that on the 7th of June, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs by operation of the court's electronic filing system.

                                                          */s/     John F. Olinde*