# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE ELDON E. FALLON |
| Joseph Orr, Jr., et al. v. Janssen et al. Case No. 2:15-cv-03708 | MAGISTRATE NORTH |

## DEFENDANTS' BENCH MEMORANDUM IN OPPOSITION TO LOSS OF CHANCE OF SURVIVAL

Defendants Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC, Bayer HealthCare Pharmaceuticals, Inc., and Bayer Pharma AG (collectively, "Defendants") respectfully submit this bench memorandum in opposition to the inclusion of jury instructions regarding lost chance of survival as an element of damages under Louisiana law.

## INTRODUCTION

Plaintiffs have asked the Court to instruct the jury that an award of damages for a lost chance of survival is allowable in this product-liability case.  Plaintiffs have proposed several specific instructions to this end (Nos. 32–34), but the idea is sprinkled across the balance of their instructions (*e.g.*, Nos. 4, 9, 25).  *See* Pls.' Rev. and Supp. Proposed Jury Instructions (Doc. 6732).

Contrary to Plaintiffs' assertion, lost-chance damages may not be recovered in a product-liability case under the Louisiana Product Liability Act (LPLA)—and Plaintiffs' proposed instructions should not be given—for four reasons.  *First*, Plaintiffs have pursued a wrongful death cause of action, alleging that Xarelto and its labeling caused Mrs. Orr's injuries.  The lost-chance doctrine applies only to the "rendition of services" (usually medical malpractice), and there is no basis in the LPLA for extending the doctrine to the product-liability context.  In fact, courts have uniformly refused to extend the lost-chance doctrine to product-liability claims.  *Second*, the lost-

chance doctrine simply does not apply in cases where, as here, the plaintiff alleges that the defendant caused the initial injury.  *See Deykin v. Ochsner Clinic Found.*, No. 16-CA-488, --- So. 3d ---, ---, 2017 WL 1488855, at *4 & n.3 (La. Ct. App. Apr. 26, 2017) (explaining that the plaintiff's condition must be "unrelated" to the defendant's conduct).  **Third**, because no Louisiana court has ever allowed lost-chance damages under the LPLA, this Court may not "fashion [a] new theor[y] of recovery under Louisiana law."  *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012).  **Finally**, because Plaintiffs have presented no quantifiable expert testimony to prove, as they must, that Mrs. Orr had a less-than-even chance of survival, the jury cannot receive a lost-chance instruction.  *See Lorenz v. Celotex Corp.*, 896 F.2d 148, 151 (5th Cir. 1990) ("[A] district court may not instruct a jury on a legal theory on which no evidence is presented.").

The Court should refuse to give any instruction in this case that bears on, directly or indirectly, the lost-chance doctrine.

## ARGUMENT

## I.     The lost-chance doctrine does not apply to a product-liability claim under the LPLA.

The lost-chance doctrine applies only to cases involving *the rendition of services*—it has never been applied in a case governed by the LPLA.  Section 323(a) of the *Restatement (Second) of Torts* is the "conceptual foundation" for the lost-chance doctrine, and it provides that "[o]ne who undertakes . . . to *render services* to another" may be liable "for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if . . . his failure to exercise such care increases the risk of such harm."  *Restatement (Second) of Torts* § 323(a) (emphasis added); *see also Pelas v. Golden Rule Ins. Co.*, No. Civ. A. 97-3779, 1999 WL 438478 (E.D. La. June 28, 1999), at *2; *Smith v. State, Dept. of Health & Human Res. Admin.*, 676 So. 2d 543, 547 (La. 1996).

2

The manufacture and sale of a product is distinct from the provision of services.  Although no Louisiana court has ever addressed whether lost chance could apply to a product-liability case, other courts have explained that a product-liability claim "do[es] not involve the rendition of services directly to a person, and attempting to apply the theory in such a case stretches Section 323 beyond its plain meaning."  *In re Lipitor (Atorvastatin Calcium) Marketing, Sales Pracs., & Prods. Liab. Litig.*, MDL No. 2502, __ F. Supp. 3d __, 2017 WL 83509, at *12 n.12 (D.S.C. Jan. 3, 2017) (citation and internal quotation marks omitted).  Accordingly, numerous courts outside of Louisiana have refused to extend the lost-chance doctrine to product-liability claims.  *See, e.g.*, *Hill v. Novartis Pharm.*, 944 F. Supp. 2d 943 (E.D. Cal. 2013).

In *Hill*, for example, the plaintiff claimed that Novartis's failure to warn of the risks inherent in the use of Zometa, an FDA-approved drug developed and manufactured by Novartis for the treatment of cancer, caused her to suffer osteonecrosis of the jaw.  *Id.* at 959.  Novartis moved to exclude any evidence "suggesting that, as a result of [Novartis's] alleged failure to provide adequate warnings, Plaintiff lost a chance to avoid [her injuries] or otherwise have a more favorable outcome with regard to her jaw problems." *Id.*  The court granted the motion, explaining that "[t]he lost chance doctrine, even when recognized, has been limited to medical malpractice cases."  *Id.*  Furthermore, the court observed that the plaintiff "provided no authority—and the Court's research reveal[ed] no authority—to suggest that the doctrine could conceivably apply in a products liability case where, as here, the plaintiff alleges that a pharmaceutical manufacturer's failure to warn of risks associated with a prescription drug caused the plaintiff to develop a condition she would not otherwise have developed had she not taken the drug."  *Id.* at 960 (internal quotation marks omitted).[1]

---

[1] *Accord Lempke v. Osmose Utils. Servs., Inc.*, No. 11-1236, 2012 WL 94497, at *4 (W.D. Pa. Jan. 11, 2012) ("Courts in Pennsylvania have invoked Section 323 in a variety of factual settings, but never in the context of a negligence-

Plaintiffs' attempts to distinguish these cases—all of which found the lost-chance doctrine inapplicable to a product claim—are unavailing. *See* Doc. 6730, at 8–9. At bottom, each of these cases reiterates the principle that the lost-chance doctrine simply does not apply in product-liability cases. Plaintiffs suggest that these cases "have no application" here because they involve "'the increased risk of harm' standard, rather than a claim for damages based on a lost chance of survival." *Id.* But, as *Pelas* itself—on which Plaintiffs rely—recognizes, that is the very foundation of section 323. *See* 1999 WL 438478, at *2 ("Section 323 says nothing about loss of chance of survival, but rather addresses the liability of one who fails to exercise reasonable care 'to render services to another which he should recognize as necessary for the protection of the other's person or things . . . if . . . his failure to exercise such care *increases the risk* of such harm . . . .'" (emphasis added)).

Because *Restatement (Second)* section 323(a) relates to the rendition of services, there is no support in the *Pelas* decision for extending the lost-chance doctrine to product-liability claims. In *Pelas*, the court denied a motion *in limine* seeking to exclude evidence relating to the plaintiff's loss-of-chance theory arising from an insurer's refusal to cover a bone marrow transplant. *Id.* Even though the court concluded that the Louisiana Supreme Court "would not strictly limit the loss of chance of survival doctrine to medical malpractice cases," that conclusion derived from the

---

based products liability case."); *Moretti v. Wyeth, Inc.*, No. 2:08-cv-00396-JCM-(GWF), 2009 WL 749532, at *3 (D. Nev. Mar. 20, 2009) (noting that "Nevada courts have explicitly rejected [the] application [of Section 323] in product liability cases"); *Cipollone v. Liggett Grp., Inc.*, 683 F. Supp. 1487, 1494 (D.N.J. 1988) (suggesting that rationale of lost chance doctrine could apply but explaining that "New Jersey courts have failed to apply the 'lost chance' rule in product liability cases"); *Lowmack v. Gen. Motors Corp.*, 967 F. Supp. 874, 881–82 (E.D. Va. 1997) (declining to apply lost chance doctrine in case arising out of defective car seat), *aff'd*, No. 97-1957, 139 F.3d 890, at *1 (4th Cir. Mar. 3, 1998) ("[T]he district court correctly determined that the Virginia courts would not relax the ordinary requirements of proximate causation outside the medical malpractice context."); *see also Grant v. Am. Nat'l Red Cross*, 745 A.2d 316, 322 (D.C. 2000) ("[Plaintiff's] claim that the Red Cross negligently supplied hepatitis-carrying blood is not easy to distinguish from a claim that any provider of supplies or equipment used in medical treatment was negligent in manufacturing or processing the supplies, thereby causing a patient injury. To apply the loss of chance theory to cases such as these would virtually collapse the limitations that our decisions have set to the reach of proximate causation.").

court's reasoning that section 323(a) applies to "*any* undertaking to render services," not just medical services. *Id.* at *2–3 (emphasis added). So, although *Pelas* (improperly) extended Louisiana law,[2] the underlying claim in that case involved the rendition of services, which forms the "conceptual foundation" of a loss-of-chance theory. *Id.* Here, there is no "rendition of services" at issue, and therefore, the lost-chance doctrine simply does not—and indeed, cannot—apply.

## II.    Under Louisiana law, the lost-chance doctrine does not apply where the defendant is alleged to have caused the initial injury.

But even if the lost-chance doctrine could apply to a product-liability claim, Plaintiffs cannot rely on the doctrine here. Plaintiffs here allege both that Xarelto caused Mrs. Orr's hemorrhage, resulting in her death, and that Defendants' failure to properly instruct Dr. Bui lowered Mrs. Orr's chances of survival. *See, e.g.*, 5/30/17 AM Trial Tr. 141:12–25; 6/2/17 AM Trial Tr. 797:20–22. But Louisiana law does not apply the lost-chance doctrine in such a situation—*i.e.*, where the defendant is alleged to be both the cause of the initial injury and the cause of the "lost chance." Rather, lost chance is relevant where "the tort victim had a *chance of survival at the time* of the professional negligence." *Smith*, 676 So. 2d at 547 (emphasis added). In other words, the lost-chance doctrine applies where the plaintiff has suffered an injury before the defendant's alleged conduct is ever at issue.

In fact, in those few contexts in which the Louisiana Supreme Court has recognized the lost-chance doctrine, it has been applied where the defendant's conduct is not alleged to have caused the plaintiff's initial injury. *See, e.g.*, *Smith*, 676 So. 2d at 547 (applying loss of chance doctrine to "negligent treatment of a *pre-existing* condition" (emphasis added)); *Hastings*, 498 So.

---

[2] *See Morris v. Homco Int'l, Inc.*, 853 F.2d 337, 343 (5th Cir. 1988) (criticizing a district court's expansion of Louisiana law and explaining that "the district court should have hesitated . . . to extend Louisiana law beyond the boundaries currently established in the state's own courts").

2d at 720 ("*Once a breach of duty constituting malpractice is established*, the question of whether the malpractice contributed to the death, i.e., lessened the chance of survival, is a question of fact for the jury." (emphasis added)); *Weber*, 635 So. 2d at 192 (lost chance relevant where "a second and separate incident . . . caused a separate injury").  And "based on these pronouncements from the Supreme Court," the Louisiana Court of Appeals recently reaffirmed that "the loss of a chance of survival doctrine is relevant" only in cases where the plaintiff dies as the "result of a pre-existing condition (*i.e.*, a condition of the patient in existence at the time of the alleged malpractice of the defendant, *which condition is unrelated to any conduct of the defendant*)."  *Deykin*, 2017 WL 1488855, at *4 & n.3 (emphasis added).

Because Plaintiffs allege here that Xarelto caused Plaintiffs' injury, they cannot seek damages under the lost-chance doctrine.  The doctrine simply does not apply in this situation— *i.e.*, where the product is alleged to have caused the injury that led to the plaintiff's death.

### III.    No Louisiana court has allowed a plaintiff to recover lost-chance damages in an LPLA action, and this Court should not do so under *Erie*.

Although Plaintiffs have stipulated that their claims are governed exclusively by the LPLA, (*see* Docs. 6601 & 5341), they have not cited a single case that has applied the lost-chance doctrine to an LPLA claim.  Plaintiffs' proposed jury instructions would thus require the Court to accept a damages theory that no Louisiana court has recognized—namely, that damages for a lost chance of survival are cognizable in a product-liability action.  *Erie* prohibits Plaintiffs' requested expansion of Louisiana law.

Despite the fact that no Louisiana court (or, for that matter, any court at all) has applied the lost-chance doctrine to a product-liability claim under any state's law, Plaintiffs ask the Court to "'*Erie* guess' . . . that the Louisiana Supreme Court" would be the first to "allow [lost-chance] recovery in an [product-liability] failure-to-warn case against a pharmaceutical manufacturer."

Doc. 6730, at 10.  This Court's duty under *Erie*, Plaintiffs say, is to "do its best to determine whether the Supreme Court of Louisiana would allow" lost-chance recovery here.  *Id.* at 3. Plaintiffs' assertion is incorrect.  Although a "federal court . . . determine[s] as best it can, what the highest court of the state would decide," *Barfield v. Madison Cty.*, 212 F.3d 269, 271–72 (5th Cir. 2000), the Fifth Circuit has explained that an *Erie* guess may  "not expand state law beyond its presently existing boundaries," *id.* (citation omitted).  Plaintiffs' request would do just that.  The Louisiana Supreme Court has most commonly applied the lost-chance doctrine to medical malpractice claims, and most importantly, has never applied the doctrine to an LPLA claim.  This absence of authority alone is a sufficient basis to deny Plaintiffs' proposed instruction.

As the Fifth Circuit has explained, federal courts sitting in diversity are not state-law "pioneers" and therefore must "simply apply state law as it exists" without "adopt[ing] innovative theories of recovery."  *See Arkwright-Boston Mfrs. Mut. Ins. Co. v. Westinghouse Elec. Corp.*, 844 F.2d 1174, 1178 n.8 (5th Cir. 1988); *see also Looney Ricks Kiss Architects, Inc. v. State Farm Fire & Cas. Co.*, 677 F.3d 250, 256 (5th Cir. 2012) (explaining that federal courts sitting in diversity are charged "to predict state law, not to create or modify it").  Plaintiffs insist that the Louisiana Supreme Court has simply "left for another day"—rather than foreclosed—the decision whether lost-chance damages are recoverable in the product-liability context (*see* Doc. 6730, at 3), but that does not make such damages recoverable in an LPLA action.  In fact, the Fifth Circuit recently reaffirmed this rule, explaining that a federal court cannot allow a theory "to go forward on the ground that [the state's] highest civil court has not rejected [the] specific claim" because it "would run afoul of [the Fifth Circuit's] longstanding rule against front-running the state courts by adopting innovative theories of state law."  *Hux v. S. Methodist Univ.*, 819 F.3d 776, 783 (5th Cir.

2016).  Accordingly, a federal court may neither impose new state-law duties nor permit recovery on unrecognized state-law theories.

Importantly, the Fifth Circuit has previously relied on these limiting principles of federal jurisdiction to refuse to extend state law to recover damages in a new context.  *See David v. World Marine, L.L.C.*, 647 F. App'x 461, 468 (5th Cir. 2016).  In *World Marine*, the Fifth Circuit refused to "read Mississippi law as recognizing reputational harm as a basis for damages" in a fraud action. The court explained that it was unaware of—and had not been directed to—any "Mississippi caselaw recognizing or discussing damages based on reputational harm."  *Id.*  "Given this lack of caselaw," the Fifth Circuit declined to extend Mississippi law to allow for recovery of damages where Mississippi's own state courts had not.[3]  *Erie*'s restrictions on a federal court's ability to expand state law thus apply equally to a request for damages in a previously-unrecognized context.

So too here.  Plaintiffs do not identify any Louisiana authority providing for lost-chance damages in a product-liability action, and, under *World Marine*, *Erie*'s restriction on a federal court's ability to recognize a new category of state-law damages forecloses Plaintiffs' request. This Court should not extend Louisiana law.

Nor can Plaintiffs rely on the general LPLA provisions to avoid this required *Erie* outcome. The LPLA allows a plaintiff to seek "survival and wrongful death damages for which Civil Code Articles 2315, 2315.1 and 2315.2 allow recovery."  La. Rev. Stat. § 9:2800.53(5).  Article 2315.1 provides that a plaintiff in a survival action has the "right to recover all damages for injury to [the

---

[3] Notably, the Fifth Circuit declined to extend the lost-chance doctrine in circumstances similar to this case.  *See Phillips ex rel. Phillips v. Monroe Cty., Miss.*, 311 F.3d 369 (5th Cir. 2002).  In *Phillips*, the plaintiff brought a § 1983 claim against the defendants, arguing that the defendants' failure to provide the necessary medical care resulted in her son's death from testicular cancer.  *Id.* at 369.  The plaintiff in *Phillips*, similar to Plaintiffs here, asserted that she "need only prove the defendants' actions increased the Decedent's risk of death" and did not have to prove that their actions caused the death.  *Id.* at 375.  The court quickly rejected this argument, explaining that the lost-chance doctrine is "often applied in medical malpractice contexts."  *Id.*  In fact, the court found that the plaintiff's "supporting cases," which "relate[d] to medical malpractice suits" were simply "not relevant."  *Id.*

deceased] person, his property or otherwise."  Reading these provisions together, Plaintiffs insist, shows that lost-chance damages are recoverable in an LPLA action.  They are not.  The survival action is simply "special legislation providing for the survival of a right of action in favor of named classes of survivors."  *Watkins v. Exxon Mobil Corp.*, 117 So. 3d 548, 552 (La. Ct. App. 2013) (quoting *Levy v. State Through Charity Hosp. of La. at New Orleans Bd. of Adm'rs*, 216 So. 2d 818, 819 (La. 1968)).  And although a plaintiff may recover "damages for injury to [the deceased] person," this ability to recover damages does not exist in the abstract.  Rather, the statute allows "designated beneficiaries . . . to recover the damages that a person suffered *and would have been entitled to recover* from the tortfeasor, if the person had lived."  *In re Brewer*, 934 So. 2d 823, 826 (La. Ct. App. 2006).  No Louisiana law supports the conclusion that a plaintiff is "entitled to recover" damages for an allegedly lost chance of survival in an LPLA action.

Because Plaintiffs improperly request that the Court expand Louisiana law beyond its presently existing boundaries, their proposed instruction should not be given.

**IV.    Even if lost-chance damages could be recovered in this case, Plaintiffs have not presented sufficient evidence to warrant an instruction on lost-chance damages.**

Even if the lost-chance doctrine could apply to this LPLA case, Plaintiffs have not introduced legally sufficient evidence to warrant instructing the jury on lost-chance damages because they have provided no quantifiable expert testimony that Mrs. Orr's chances of survival were less than even.

Under Louisiana law, lost-chance damages are recoverable only if the plaintiff had "a less-than-even chance [of survival], at the time of the defendant's alleged malpractice."  *Deykin*, 2017 WL 1488855, at *4; *see also, e.g.*, *Smith*, 676 So. 2d at 548 ("[T]he loss of a less-than-even chance of survival is a distinct injury compensable as general damages . . . .");  *Hebert v. Parker*, 796 So. 2d 19, 25 (La. Ct. App. 2001) (recognizing claim for "a loss of a chance of survival in cases where

there is a *loss of a less than even chance of survival* because of the alleged negligent treatment of a pre-existing condition" (emphasis added)).  Furthermore, a lost-chance claim fails if "[t]he jury [is] given no quantitative assessment . . . . as to [the plaintiff's] chance of survival if [the standard of care had not been breached] as soon as the condition was discovered."  *See Arant v. St. Francis Med. Ctr., Inc.*, 605 So. 2d 622, 629 (La. Ct. App. 1992).

Plaintiffs here have not provided any "quantitative assessment" that Mrs. Orr's chances of survival were less than 50%, and they have thus failed to present legally sufficient evidence to support a jury award of lost-chance damages.  Rather, their theory is that Mrs. Orr had a greater-than-even chance of survival when she presented to Ochsner Hospital, *see Alphonse v. Acadian Ambulance Servs., Inc.*, 844 So. 2d 294, 303 (La. Ct. App. 2002) (considering "chance of survival at the time of the alleged malpractice"), and they have provided no expert testimony to the contrary. Because Plaintiffs have not presented legally sufficient evidence that Mrs. Orr had a less-than-even chance of survival when she arrived at Ochsner Hospital, lost-chance damages cannot be submitted to the jury.  *See Smith*, 676 So.2d at 549 (suggesting that jury must be allowed to consider "expert medical testimony regarding the percentage chances of survival"); *Smith v. State through Dept. of Health & Human Res. Admin.*, 523 So. 2d 815, 821 (La. 1988) (plaintiff's expert "did not assess in any detail what the quantitative chances of survival would have been"); *see also, e.g.*, *Goudia v. Mann*, 98 So. 3d 364, 374 (La. Ct. App. 2012) (expert "did not assess what the quantitative chances of survival would have been had any of these measures been taken"); *Snia v. United Med. Ctr. of New Orleans*, 637 So. 2d 1290, 1294 (La. Ct. App. 1994) (plaintiff could not show lost chance where, *inter alia*, expert "did not assess in any detail what the quantitative chances of survival would have been"); *Arant*, 605 So. 2d at 629 (same).

Because "[t]he jury should be instructed on a legal theory only if the evidence adduced at trial is sufficient to justify such an instruction," *Foster v. Ford Motor Co.*, 621 F.2d 715, 717 (5th Cir. 1980), a lost-chance instruction is improper.[4]

## CONCLUSION

For the foregoing reasons, Defendants object to Plaintiffs' proposed instruction regarding lost chance of survival and respectfully request that the proposed instruction not be given.


Respectfully submitted,

IRWIN FRITCHIE URQUHART & MOORE LLC

By: /s/ *James B. Irwin*
James B. Irwin
Kim E. Moore
Irwin Fritchie Urquhart & Moore LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
jirwin@irwinllc.com


DRINKER BIDDLE & REATH LLP

By: /s/ *Susan M. Sharko*
Susan M. Sharko
Drinker Biddle & Reath LLP
600 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
susan.sharko@dbr.com

Rodney M. Hudson
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
Telephone: (415) 591-7500
Rodney.hudson@dbr.com

WILKINSON WALSH + ESKOVITZ LLP

By: /s/ *Beth A. Wilkinson*
Beth A. Wilkinson
Jennifer L. Saulino
Jeremy Barber
WILKINSON WALSH + ESKOVITZ LLP
1900 M. Street NW, Suite 800
Washington, DC 20036
Telephone: (202) 847-4000
bwilkinson@wilkinsonwalsh.com
jsaulino@wilkinsonwalsh.com
jbarber@wilkinsonwalsh.com


NELSON MULLINS RILEY & SCARBOROUGH LLP

By: /s/ *David E. Dukes*
David E. Dukes
J. Mark Jones
NELSON MULLINS RILEY & SCARBOROUGH LLP
1320 Main Street, 17th Floor
Columbia, SC 29201
Telephone: (803) 799-2000
David.Dukes@nelsonmullins.com
Mark.Jones@nelsonmullins.com


ARNOLD & PORTER KAYE SCHOLER LLP

---

[4] *See also, e.g.*, *Roberts v. Wal-Mart Stores, Inc.*, 7 F.3d 1256, 1258 (5th Cir. 1993) (explaining that "[a] district court may not instruct a jury on a legal theory in support of which no evidence is presented"); *Brown v. Miss. Dept. of Health*, No. 3:11–cv–00146–CWR–FKB, 2012 WL 5381352, at *3 (S.D. Miss. Oct. 31, 2012) ("A jury instruction should be given only if the record contains legally sufficient evidence that supports the instruction." (citing *Hufman v. Union Pac. R. Co.*, 675 F.3d 412, 417 (5th Cir. 2012))).

Chanda A. Miller
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2700
Chanda.Miller@dbr.com

*Attorneys for Defendants Janssen
Pharmaceuticals, Inc. and Janssen Research
& Development, LLC*

By: */s/ Andrew K. Solow*
Andrew K. Solow
Steven Glickstein
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8485
andrew.solow@apks.com
steven.glickstein@apks.com

William Hoffman
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
william.hoffman@apks.com

BRADLEY ARANT BOULT CUMMINGS LLP

By: */s/ Lindsey C Boney IV*
Kevin C. Newsom
Lindsey C Boney IV
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place, 1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8803
knewsom@bradley.com
lboney@bradley.com

CHAFFE MCCALL L.L.P.
By: */s/ John F. Olinde*
John F. Olinde
CHAFFE MCCALL L.L.P.
1100 Poydras Street, Suite 2300
New Orleans, LA 70163
Telephone: (504) 585-7241
olinde@chaffe.com

*Attorneys for Bayer HealthCare
Pharmaceuticals Inc. and Bayer Pharma AG*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 7th day of June, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to Liaison Counsel for Plaintiffs by operation of the court's electronic filing system.

*/s/      John F. Olinde*