UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: XARELTO (RIVAROXABAN) | * | MDL 2592 |
| PRODUCTS LIABILITY LITIGATION | * | |
| | * | SECTION L |
| THIS DOCUMENT RELATES TO: | * | |
| | * | JUDGE ELDON E. FALLON |
| *Dora Mingo v. Janssen et al.* | * | |
| Case No. 2:15-cv-03469 | * | MAG. JUDGE NORTH |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO PRECLUDE
CERTAIN TESTIMONY FROM RICHARD FRIEDMAN, MD**

**I.      INTRODUCTION**

Defendants' expert, Richard Friedman, M.D., has opined in his deposition, and only in his deposition, that: (1) Ms. Mingo would have had the same result if she had been using an anticoagulant other than Xarelto; and (2) Ms. Mingo's bleed was not caused by Xarelto. His opinion on the first matter is an untested, speculative theory that has not been subjected to peer review or publication, has no standards controlling its operation, and has not been generally accepted within the relevant scientific community. It also will have no bearing on any matter of consequence to this litigation, but instead carries a great risk of undue prejudice. Additionally, his opinions on both matters were untimely provided, as they were not disclosed in his expert report. As such, any testimony on either matter should be precluded.

**II.     FACTUAL BACKGROUND**

More specifically, Dr. Friedman testified as follows during cross-examination by counsel for the Janssen Defendants:

> Q. You were asked about your opinions with respect to Mrs. Mingo,
> and I wanted to know if there is any reason to think that Mrs. Mingo

1

would not have had a DVT if she had been on any other anticoagulant.

>MR. HONNOLD: Object to the form. Object to the form of the question.

Q. Would she have had any – is it your opinion that had she been on another anticoagulant, she would not have suffered a bleed?

>MR. HONNOLD: Same objections. Leading. Not disclosed – opinions not disclosed.

THE WITNESS: So I think you asked two different questions there. So which one do you want me to ask first?

BY MS. MOORE:
Q. Answer the first one please.

A. So I think the first one was she was – had a total hip, had anticoagulation, developed a DVT, despite being on anticoagulation. So, again, I think if she was on another oral – another agent, different anticoagulation, she probably would have developed a DVT as well.

>MR. HONNOLD: Move to strike. Nondisclosed expert opinion.

>MR. STOFFELMAYR: The whole day.

>MR. HONNOLD: Hmm?

>MR. STOFFELMAYR: Every question has been about a nondisclosed expert opinion.

>MR. HONNOLD: It's a little different on cross-examination.

>MS. MOORE: Now, Counsel, I believe that the opinion in here –

BY MS. MOORE:
Q. What is your opinion with respect to Mrs. Mingo's – what is the cause of her bleed, please?

>MR. HONNOLD: Same objection.

>THE WITNESS: So I'll answer the second part of your question. Do I think that the rivaroxaban caused her GI bleed? Is that what you're asking?
>
>BY MS. MOORE:
>Q. Yes.
>
>A. I do not believe it did, no.
>
>Q. And why is that?
>
>A. Again, rivaroxaban oral agents don't cause bleeding. They may increase the risk in patients who are predisposed. She clearly has an ulcer, which made her predisposed to have a bleed. I think if she was placed on another anticoagulant to treat her DVT, to a reasonable degree of medical certainty, she would have had a bleed just as well.
>
>Q. And I misspoke earlier when I referenced DVT; I meant the bleed.
>
>A. Okay.[1]

Dr. Friedman then steered the testimony back to these points during redirect examination by Plaintiffs' counsel, without the question being asked:

>BY MR. HONNOLD:
>Q. So can anticoagulants contribute to bleeding?
>
>A. Again –
>
>>MS. MOORE: Objection. Asked and answered.
>
>THE WITNESS: -- anticoagulants increase the risk of bleeding in patients who are predisposed.
>
>BY MR. HONNOLD:
>Q. And she was predisposed?
>
>A. Yes.
>
>Q. And being on rivaroxaban increased her risk of bleeding?

---

[1] *See* Exhibit 1, Excerpts from the Deposition of Richard Friedman, M.D. ("Friedman Dep."), at 341:6-343:11.

>A. Correct.
>
>Q. And deprived her ulcer of its ability to cut off?
>
>>MS. MOORE: Object to the form of the question.
>
>A. Again, she was on an anticoagulant. And to a reasonable degree of medical certainty, if she was on another anticoagulant, same thing would have happened. Her blood was thinned. She was on anticoagulant. Increases her risk of bleeding in a patient who was predisposed, which she was.
>
>BY MR. HONNOLD:
>Q. And you've not expressed any opinion in your report or in response to questions from counsel that if she had been taken off, if she had been taken off rivaroxaban before the bleed, you've not expressed an opinion what would happen in that situation; that's not written in your report anywhere, is it?
>
>>MS. MOORE: Object to the form of the question.
>
>THE WITNESS: No, it's not.[2]

### III. ARGUMENT

####  A. Dr. Friedman's Opinion About What May Have Happened if Ms. Mingo Had Been Using Another Anticoagulant Should be Precluded as Speculative and Irrelevant.

In Plaintiffs' Memorandum in Support of Motion to Preclude Speculative Testimony from Seven Defense Experts About Potential Outcomes from Other Anticoagulants [Record Doc. No. 5517-1],[3] Plaintiffs explained in great detail why testimony about potential outcomes on other anticoagulants is both speculative and irrelevant. All of the same arguments apply equally here to Dr. Friedman, who is not a hematologist, and instead is an orthopedic surgeon. Thus, rather than

---

[2] *Id.* at 347:14-348:25.

[3] A response to the motion has not yet been filed, and a ruling has not yet been entered, because the briefing deadlines were extended.

4

repeat the same arguments that were made in seven pages of past briefing, Plaintiffs incorporate the argument section of that brief into this brief by reference.

> **B.     Dr. Friedman's Opinions Should be Precluded as a Nondisclosed or Untimely Disclosed Expert Opinion.**

Additionally, Dr. Friedman's opinions relating to both the potential outcome on other anticoagulants and the cause of Ms. Mingo's bleed should be precluded because they were not disclosed in his expert report. All expert disclosures are due at the time and in the sequence that the court orders. *See* Fed. R. Civ. P. 26(a)(D). In this case, Defendants' case-specific expert reports were due five months ago, on January 6, 2017. *See* Case Management Order 2b [Rec. Doc. No. 4510], at ¶ 8(e). The expert report that was served on that date for Dr. Friedman contained no opinions on these two matters.[4]

"Failure to comply with the deadline for disclosure requirements results in 'mandatory and automatic' exclusion under Federal Rule of Civil Procedure 37(c)(1)." *Sheppard v. Liberty Mut. Ins. Co.,* No. 16-cv-2401, 2017 WL 467092, at *2 (E.D. La. Feb. 2, 2017) (citations omitted); *see also Hooks v. Nationwide Housing Sys., LLC*, No. 15-cv-729, 2016 WL 3667134, at *4 (E.D. La. July 11, 2016) (citations omitted). Excluded witnesses or information may not be used "to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or was harmless." *Sheppard,* 2017 WL 467092, at *2 (citations omitted); *Hooks,* 2016 WL 3667134, at *4 (citations omitted).

"In evaluating whether to exclude expert testimony, the Fifth Circuit instructs courts to consider four factors: (1) the explanation of the party for its failure to identify the witness; (2)

---

[4] *See* Exhibit 2, Expert Report of Richard J. Friedman, MD, FRCSC. *See also* Exhibit 1, Friedman Dep., at 348:15-24 (witness confirming his expert report did not express any opinion regarding what would have happened if Ms. Mingo had been taken off rivaroxaban before the bleed).

5

the importance of the excluded testimony; (3) the potential prejudice that would arise from allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Hooks,* 2016 WL 3667134, at *4, *citing Betzel v. State Farm Lloyds,* 480 F.3d 704, 707 (5th Cir. 2007) (additional citation omitted); *see also Smith v. Progressive County Mut. Ins. Co.,* No. 11-cv-872, 2012 WL 702061, at *3 (E.D. La. Mar. 1, 2012), *citing Betzel,* 480 F.3d at 707.

All four factors weigh in favor of precluding expert testimony regarding these two matters. As to the first factor, Defense counsel have provided no explanation for their failure to provide these expert disclosures for Dr. Friedman, and given that they have made disclosures on these matters for other experts, their awareness of their duty may be assumed. *See Smith,* 2012 WL 702061, at *3. As to the second factor, if this evidence is deemed admissible in terms of its substance – and it should not be so admitted, at least in terms of the potential outcomes on other anticoagulants – such evidence from this particular witness would be minimally important, given that other defense experts have disclosed similar opinions in their expert reports. *See id.* As to the third and fourth factors, the prejudice to Plaintiffs' counsel would be significant, because they would have no time to prepare to counteract such testimony, and no opportunity to cure that prejudice through a continuance, since the trial is in progress.

Since all factors weigh in favor of preclusion, Dr. Friedman should be precluded from offering any expert testimony on these two matters, for the additional and independent reason of nondisclosure in his expert report. *See, e.g., Smith,* 2012 WL 702061, at *3 (granting motion to preclude where no explanation for nondisclosure was provided, and other experts were available to testify on the same issue).

## IV. CONCLUSION

For these reasons, Plaintiffs respectfully request that Dr. Friedman also be precluded from testifying about: (1) what may or may not have happened to Ms. Mingo if she had been using an anticoagulant other than Xarelto; and (2) what caused Ms. Mingo's bleeding event.

Dated: June 7, 2017

Respectfully submitted,

*/s/ Leonard A. Davis*
Leonard A. Davis, Esq. (Bar No. 14190)
**HERMAN, HERMAN & KATZ, LLC**
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Email: ldavis@hhklawfirm.com

Gerald E. Meunier (Bar No. 9471)
**GAINSBURGH BENJAMIN DAVID MEUNIER & WARSHAUER, LLC**
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
Email: gmeunier@gainsben.com

***Plaintiffs' Liaison Counsel***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 7, 2017, the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs and Defendants by operation of the court's electronic filing system and served on all other plaintiff counsel via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre- Trial Order No. 17.

*/s/ Leonard A. Davis*
**LEONARD A. DAVIS**