UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | * * * | MDL 2592 |
| THIS DOCUMENT RELATES TO: | * * | SECTION L |
| *Dora Mingo v. Janssen et al.* *Case No. 2:15-cv-03469* | * * * | JUDGE ELDON E. FALLON MAG. JUDGE NORTH |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

# EXHIBIT 1 TO
# PLAINTIFFS' MOTION TO PRECLUDE
# CERTAIN TESTIMONY FROM RICHARD FRIEDMAN, MD

Protected - Subject to Further Protective Review

```
 1              IN THE UNITED STATES DISTRICT COURT
 2           FOR THE EASTERN DISTRICT OF LOUISIANA
 3
 4   IN RE:  XARELTO              :   MDL NO. 2592
     (RIVAROXABAN) PRODUCTS        :
 5   LIABILITY LITIGATION          :   SECTION L
                                   :
 6                                 :
     THIS DOCUMENT RELATES TO:     :   MAG. JUDGE NORTH
 7   DORA MINGO, NO. 15-03469      :
                                   :
 8
 9
10                     March 10, 2017
11                       PROTECTED
12       SUBJECT TO FURTHER PROTECTIVE REVIEW
13
14
15           Videotaped Deposition of RICHARD
16   FRIEDMAN, M.D., taken pursuant to notice, was held at
17   the Nelson Mullins Riley & Scarborough, LLP, Liberty
18   Center, Suite 600, 151 Meeting Street, Charleston,
19   South Carolina, beginning at 8:16 a.m., on the above
20   date, before Karen K. Kidwell, a Registered Merit
21   Reporter, Certified Realtime Reporter and Notary
22   Public.
23
24              GOLKOW TECHNOLOGIES, INC.
            877.370.3377 ph | 917.591.5672 fax
25                  deps@golkow.com
```

```
 1   APPEARANCES:
 2      GOZA & HONNOLD LLC
        BY:  BRADLEY D. HONNOLD, ESQ.
 3      11181 Overbrook Road, Suite 200
        Leawood, Kansas 66211
 4      913.451.3433
        bhonnold@gohonlaw.com
 5      Representing the Plaintiffs
 6
 7      BEASLEY ALLEN CROW METHVIN PORTIS & MILES, P.C.
        BY:  JOSEPH G. VANZANDT, ESQ.
 8      218 Commerce Street
        Montgomery, Alabama 36104
 9      334.269.2343
        joseph.vanzandt@beasleyallen.com
10      Representing the Plaintiffs
11
12      IRWIN, FRITCHIE, URQUHART & MOORE, LLC
        BY:  KIM E. MOORE, ESQ
13           CLAIRE A. NOONAN, ESQ.
        400 Poydras Street, Suite 2700
14      New Orleans, Louisiana  70130
        504.310.2108
15      kmoore@irwinllc.com
        cnoonan@irwinllc.com
16      Representing the Janssen Defendants
17
18      BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
        BY:  KASPAR J. STOFFELMAYR, ESQ.
19      Courthouse Place
        54 West Hubbard Street, Suite 300
20      Chicago, Illinois  60654
        312.494.4434
21      kasparstoffelmayr@bartlit-beck.com
        Representing Bayer Pharmaceuticals
22
23
24      Also Present:  Doug White, Videographer
25
```

```
 1                          I N D E X
 2   WITNESS/EXAMINATION                                  Page
 3   RICHARD FRIEDMAN, M.D.
 4     By Mr. Honnold                                      13
 5     By Ms. Moore                                       341
 6     Further by Mr. Honnold                             344
 7
 8                         E X H I B I T S
 9     Number            Description                      Page
10   Friedman 1   Expert Report of Richard J. .......75
                 Friedman, MD, FRCSS, dated
11               January 6, 2017
12   Friedman 2   1/8/2017 Invoice of Richard J. ....75
                 Friedman, MD to Claire Noon,
13               Irwin Fritchie Urquhart &
                 Moore, 1 page
14
     Friedman 3   Typewritten document titled .......85
15               Materials Considered -
                 Supplement, 1 page
16
     Friedman 4   E-mail chain, top e-mail .........103
17               1/22/2016, Friedman to Gary
                 Peters, Subject to Protective
18               Order, Bates
                 XARELTO_JANSSEN_18650881, 2
19               pages
20   Friedman 5   11/29/2012 E-mail, ..............105
                 SpeakerDirect to Bob Harrison,
21               Subject to Protective Order,
                 Bates XARELTO_BHCP_04185034
22
     Friedman 6   Allogeneic Blood Transfusions ....111
23               and Postoperative Infections
                 after Orthopaedic Surgery
24
25
```

Protected - Subject to Further Protective Review

```
 1                MS. MOORE:  No worries.  No worries.
 2                      EXAMINATION
 3    BY MS. MOORE:
 4         Q.   Dr. Friedman, just a few -- very few
 5    questions.
 6              You were asked about your opinions with
 7    respect to Mrs. Mingo, and I wanted to know if there
 8    is any reason to think that Mrs. Mingo would not have
 9    had a DVT if she had been on any other anticoagulant.
10                MR. HONNOLD:  Object to the form.  Object
11         to the form of the question.
12    BY MS. MOORE:
13         Q.   Would she have had any -- is it your
14    opinion that had she been on another anticoagulant,
15    she would not have suffered a bleed?
16                MR. HONNOLD:  Same objections.  Leading.
17         Not disclosed -- opinions not disclosed.
18                THE WITNESS:  So I think you asked two
19         different questions there.  So which one do you
20         want me to ask first?
21    BY MS. MOORE:
22         Q.   Answer the first one, please.
23         A.   So I think the first one was she was --
24    had a total hip, had anticoagulation, developed a
25    DVT, despite being on anticoagulation.  So, again, I
```

```
 1      think if she was on another oral -- another agent,
 2      different anticoagulation, she probably would have
 3      developed a DVT as well.
 4              MR. HONNOLD:  Move to strike.
 5          Nondisclosed expert opinion.
 6              MR. STOFFELMAYR:  The whole day.
 7              MR. HONNOLD:  Hmm?
 8              MR. STOFFELMAYR:  Every question has been
 9          about a nondisclosed expert opinion.
10              MR. HONNOLD:  It's a little different on
11          cross-examination.
12              MS. MOORE:  Now, Counsel, I believe that
13          the opinion in here --
14      BY MS. MOORE:
15          Q.   What is your opinion with respect to
16      Mrs. Mingo's -- what is the cause of her bleed,
17      please?
18              MR. HONNOLD:  Same objection.
19              THE WITNESS:  So I'll answer the second
20          part of your question.  Do I think that the
21          rivaroxaban caused her GI bleed?  Is that what
22          you're asking me?
23      BY MS. MOORE:
24          Q.   Yes.
25          A.   I do not believe it did, no.
```

1        Q.   And why is that?

2        A.   Again, rivaroxaban oral agents don't cause

3    bleeding.  They may increase the risk in patients who

4    are predisposed.  She clearly had a ulcer, which made

5    her predisposed to have a bleed.  I think if she was

6    placed on another anticoagulant to treat her DVT, to

7    a reasonable degree of medical certainty, she would

8    have had a bleed just as well.

9        Q.   And I misspoke earlier when I referenced

10   DVT; I meant the bleed.

11       A.   Okay.

12       Q.   You also were asked questions about having

13   Janssen and Bayer company officials as coauthors on

14   some of the studies that you've published.  Correct?

15       A.   Correct.

16       Q.   And would you explain for the ladies and

17   gentlemen of the jury the significance, if any, of

18   having Janssen or Bayer employees on the

19   publications?

20       A.   Again, most of them are physicians.  They

21   were involved in study design, carrying out the

22   study, analyzing the data, helping to write the

23   paper.  And it was felt appropriate that they be

24   included.

25       Q.   And one other thing:  There had been a few

Protected - Subject to Further Protective Review

```
 1                THE WITNESS:  -- with the --
 2                MS. MOORE:  I'm sorry.  I didn't mean to
 3         interrupt you.  But we have been here and been
 4         very patient, and we are out of time.  And as
 5         you know, some of us are trying to make flights.
 6         We are out of time, sir.
 7                MR. HONNOLD:  Okay.  You know, you asked
 8         questions, and I'm responding to that, and I'm
 9         trying to get him to answer the question.
10                MS. MOORE:  But you've used your entire
11         seven hours.
12                MR. HONNOLD:  Yeah.  Okay, okay.
13    BY MR. HONNOLD:
14         Q.   So can anticoagulants contribute to
15    bleeding?
16         A.   Again --
17                MS. MOORE:  Objection.  Asked and
18         answered.
19                THE WITNESS:  -- anticoagulants increase
20         the risk of bleeding in patients who are
21         predisposed.
22    BY MR. HONNOLD:
23         Q.   And she was predisposed?
24         A.   Yes.
25         Q.   And being on rivaroxaban increased her
```

Protected - Subject to Further Protective Review

```
 1     risk of bleeding?
 2          A.   Correct.
 3          Q.   And deprived her ulcer of its ability to
 4     clot off?
 5               MS. MOORE:  Object to the form of the
 6          question.
 7               THE WITNESS:  Again, she was on an
 8          anticoagulant.  And to a reasonable degree of
 9          medical certainty, if she was on another
10          anticoagulant, same thing would have happened.
11               Her blood was thinned.  She was on
12          anticoagulant.  Increases her risk of bleeding
13          in a patient who was predisposed, which she was.
14     BY MR. HONNOLD:
15          Q.   And you've not expressed any opinion in
16     your report or in response to questions from counsel
17     that if she had been taken off, if she had been taken
18     off rivaroxaban before the bleed, you've not
19     expressed any opinion what would happen in that
20     situation; that's not written in your report
21     anywhere, is it?
22               MS. MOORE:  Object to the form of the
23          question.
24               THE WITNESS:  No, it's not.
25               MR. HONNOLD:  Thank you.
```

Golkow Technologies, Inc. Page 348

Protected - Subject to Further Protective Review

```
 1                CERTIFICATE OF REPORTER
 2            I, Karen K. Kidwell, Registered Merit
      Reporter and Notary Public for the State of South
 3    Carolina at Large, do hereby certify:
               That the foregoing deposition was taken
 4    before me on the date and at the time and location
      stated on page 1 of this transcript; that the
 5    deponent was duly sworn to testify to the truth, the
      whole truth and nothing but the truth; that the
 6    testimony of the deponent and all objections made at
      the time of the examination were recorded
 7    stenographically by me and were thereafter
      transcribed; that the foregoing deposition as typed
 8    is a true, accurate and complete record of the
      testimony of the deponent and of all objections made
 9    at the time of the examination to the best of my
      ability.
10             I further certify that I am neither related
      to nor counsel for any party to the cause pending or
11    interested in the events thereof.
               Witness my hand this 12th day of March,
12    2017.
13
14
                         _____
15                       Karen K. Kidwell,
                         Registered Merit Reporter
16                       Notary Public
                         State of South Carolina at Large
17                       My Commission expires:
                         August 21, 2024
18
19
20
21
22
23
24
25
```