UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: XARELTO (RIVAROXABAN) | * | MDL 2592 |
| PRODUCTS LIABILITY LITIGATION | * | |
| | * | SECTION L |
| THIS DOCUMENT RELATES TO: | * | |
| *Orr v. Bayer Corp., et al.* | * | JUDGE ELDON E. FALLON |
| **Case No. 2:15-cv-03708** | * | |
| | * | MAGISTRATE JUDGE NORTH |

* * * * * * * * * * * * * * * * * * * * * * * *

---

**PLAINTIFFS' MEMORANDUM OF LAW IN RESPONSE TO DEFENDANTS'
SUPPLEMENTAL MOTION FOR JUDGMENT AS A MATTER OF LAW
(REGARDING PREEMPTION)**

---

## I.   INTRODUCTION

Plaintiffs submit this response in opposition to *Defendants' Further Memorandum (Regarding Preemption) in Support of their Motion for Judgment as a Matter of Law at the Close of Plaintiffs' Case.*[1] Therein, Defendants basically repeat the same arguments this Court earlier denied by Orders dated April 13, 2017[2] and May 26, 2017.[3]

*First*, they again incorrectly assert that they could not change their label to recommend use of a PT test because that would suggest an "off-label" use contrary to FDA Regulations and guidance. In doing so, they merely repeat their flawed contentions that: (1) there is no "newly acquired information" supporting any proposed instruction regarding use of PT testing; (2) "clear evidence" exists that FDA would not have permitted reference to PT testing for the Atrial Fibrillation indication based on the ROCKET study, because a proposed label in which Janssen recognized the beneficial use of PT testing for a different orthopedic indication based on a

---

[1] Rec. Doc. 6771.

[2] Rec. Doc. Nos. 6196 and 6197.

[3] Rec. Doc. 6645.

different study (RECORD) was redlined by the FDA without any challenge whatsoever; (3) a one-time PT test still constitutes "monitoring" and is therefore prohibited by FDA regulations; and(4) they could not have unilaterally changed their label to identify a helpful test despite their obligation to do so under federal regulations.  None of these contentions has improved with repetition.  They remain as unfounded now as they were when they were first presented.

For the reasons set forth below, as well as those set forth in Plaintiffs' responsive briefing on Defendants' original dispositive motion about preemption[4] and this Court's Orders of April 13, 2017, the Defendants are not entitled to judgment as a matter of law under Fed.R.Civ.P. 50(a) because there is more than a legally-sufficient evidentiary basis for a reasonable jury to find for the Plaintiff.  Defendants' motion should be denied and this case should be submitted to the jury.

II.     **ARGUMENT**

A.     **LEGAL STANDARD**

When Defendants first presented their preemption defense in a motion for summary judgment, this Court rejected their position because "[i]mpossibility pre-emption is a demanding defense." *In re Xarelto Prod. Liab. Litig.*, MDL No. 2592, 2017 WL 1395312, *3 (E.D. La. Apr. 13, 2017), *quoting, Wyeth v. Levine*, 555 U.S. 555, 573 (2009).  This "demanding defense" has a heightened standard of proof in excess of the typical preponderance of evidence standard applicable to the Plaintiffs' claims.  *Id.*  Under the law, Defendants, not the Plaintiffs, are obliged to show that it was not only probable, but "highly probable" and "reasonably certain" that the FDA would *not* have included or approved language in the Xarelto label that Plaintiffs contend was needed. *In re Fosamax (Alendronate Sodium) Prod. Liab. Litig.,* 852 F.3d 268, 285-86 (3d Cir. 2017).  Since it is not Plaintiffs' burden to prove preemption, Defendants' motion is

---

[4]Rec. Doc. Nos. 5532-2, 5966 and 6050.

procedurally infirm as it suggests that Plaintiffs were required to prove in their case-in-chief that Defendants failed to meet their burden of proof. This illogical premise suffices to reveal the fallacy of Defendants' position. Moreover, as discussed briefly below, Defendants still have yet to come forward with convincing evidence supporting their defense of preemption, even as they attempt to have the Court find as a matter of law that Plaintiffs' claims are preempted.

### B.   PLAINTIFFS' PROPOSED LABEL DOES NOT INVOLVE ANY "OFF-LABEL" USE OF PT TESTING

Defendants contend that the PT test that Plaintiffs contend should be in the label has not been specifically approved by the FDA for use with Xarelto and, therefore, Plaintiffs are proposing an "off-label" use that would be illegal. This argument was argued and briefed at length by the parties in the build-up to the first bellwether trial.  \Plaintiffs earlier disproved Defendants' arguments in their Reply Memorandum in Opposition to Defendants' Post-Hearing Letter Brief.[5]  Therein, Plaintiffs provided labels that other drug manufacturers had implemented through the Changes being Effected ("CBE") regulations for Pradaxa and Arixtra that included testing akin to PT testing.  Notably, the same "off-label" deficiency that Defendants contend is fatal to Plaintiffs' proposal in this case applies to the tests for these other drugs, but their labeling has satisfied the FDA. Thus, Defendants' contention about use of PT testing being "off-label" is specious.

As illustrated in the cases of Pradaxa and Arixtra, the FDA's approval of a Xarelto label identifying the usefulness of PT testing, would have negated the very notion of PT testing being an "off-label" use.  It stands to reason that virtually all failure-to-warn claims present alternative, hypothetical narratives, and this case is no exception.  Had Defendants obtained FDA approval of PT testing for Xarelto at the time of NDA approval, or modified their label through the CBE

---

[5]Rec. Doc. 5966.

process and later obtained FDA approval, all in satisfaction of their state-law duty to warn and instruct, they would have demonstrated the usefulness of PT testing in an adequate label. Defendants' contention about PT testing being an "off label" use is therefore made non-sensical by the very allegations to which they are responding in this litigation.

Finally, this Court's Order and Reasons of May 26, 2017[6], further confirms the impropriety of Defendants' position. Therein, this Court sustained Plaintiffs' MIL No. 37 to Preclude the False and Misleading Argument that a Prothrombin Time (PT) Test Must Be Specifically Approved by the FDA for Use with Xarelto. Order at 15-16. Is so doing, the Court recognized the Defendants' failure to justify their position through evidence:

> Whether the FDA approved Neoplastin PT or not is not the ultimate issue – the Defendants have not shown they gave the FDA sufficient information to adequately decide whether or not Neoplastin PT should be used with Xarelto.

*Id.* at 16.

Nothing has changed since this Court's ruling. Defendants have still failed to muster the evidentiary support they need to surmount their demanding burden. Thus, their off-label use contention is not simply without merit, it has been precluded by the law of the case.

### C. "NEWLY ACQUIRED INFORMATION" EXISTS TO SUPPORT THE PROPOSED INSTRUCTION REGARDING USE OF PT

Defendants contend that Plaintiffs failed to produce evidence that the FDA had not considered as of the 2011 approval of the Afib indication. New evidence can be "data, analyses or other information not previously submitted to the agency . . ." 21 C.F.R. §314.3(b). During the trial, Plaintiffs presented the redacted 2014 Canadian Label for Xarelto that is endorsed and

---

[6]Rec. Doc. 6645.

supported by Bayer.[7] This document is dated October 2014, and therein Bayer admits to the beneficial uses of PT testing that should have been in the label to help save persons like Mrs. Orr. Obviously, this one piece of evidence alone is "new evidence" that was not previously considered by the FDA in 2011, which easily would have justified a CBE change to the label by the Defendants.[8]

**D.    DEFENDANTS HAVE NOT PROVEN IT "HIGHLY PROBABLE" AND "REASONABLY CERTAIN" THAT THE FDA WOULD *NOT* HAVE INCLUDED OR APPROVED LANGUAGE IN THE XARELTO LABEL**

As *Wyeth* and its progeny have pronounced, Defendants face a demanding burden to present clear evidence that the FDA would not have approved Plaintiffs' proposed label.  Plaintiffs have presented ample evidence through the credible testimony of Dr. Parisian that the redline strike-though in the label for Xarelto's orthopedic indication was insufficient grounds to support Defendants' burden.

Separately, this Court determined that the FDA refusal alone was insufficient grounds to achieve preemption. It found that "[c]lear evidence requires more than a prior refusal to add similar language." *Xarelto*, 2017 WL 1395312 at *4.

---

[7]Tr. at 1688:12-20 (reading from exhibit - "Although there is no need to monitor clinical practice, in certain infrequent situations such as overdosage, acute bleeding, urgent surgery, in cases of suspected noncompliance, or in other unusual circumstances, assessment of the anticoagulant effect of rivaroxaban may be appropriate. Accordingly, measuring PT using the Neoplastin reagent, or Factor Xa assay using rivaroxaban-specific calibrators and controls may be useful to inform clinical decisions in these circumstances."

[8]Defendants seek to rebut the adverse event reports that were identified at oral argument in March and referenced in this Court's order. Based on *Utts v. Bristol-Myers Squibb Co*., MDL No. 2754, 2017 WL 1906875 (S.D.N.Y. May 8, 2017), they contend that adverse events cannot be considered newly acquired information because they are already known to the FDA. Def. Brf. at 13. This argument is non-sequitur. By definition, adverse event reports are not received until marketing occurs *after* FDA approval. Therefore, they cannot be known to FDA beforehand. More importantly, Bayer is more than familiar with adverse event reports alone being sufficient information in and of themselves to withdraw a drug from the market. *See, e.g., Pauley v. Bayer Corp*., No. 2681 EDA 2005, 2009 WL 1654592, *14 (Pa. Super. June 12, 2009) (discussing inordinate amount of adverse event reports regarding Bayer's drug, Baycol, resulting in the drug being removed from the market), *alloc. denied*, 989 A.2d 918 (Pa. 2010). The *Utts* case is poorly reasoned and wrongly decided, and Defendants' reliance on this authority is misplaced.

There is no justification for revisiting this Court's original preemption opinion.

### E.   DEFENDANTS INCORRECTLY CLAIM THAT A ONE-TIME TEST IS MONITORING

Defendants wrongly maintain – not for the first time – that Plaintiffs' proposal for a one-time test of PT is the equivalent of "monitoring" and therefore must be disclosed in the Highlights section of the label, a part of the label which cannot be altered through the CBE process. Plaintiffs previously described how the CBE regulations permit the PT language they propose outside of the Highlights section. Reply Memorandum in Opposition to Defendants' Post-Hearing Letter Brief at 2.[9]  Plaintiffs incorporate their argument herein by reference, but expressly repeat:

> Section 314.70 (c)(6)(iii)(A) permits changes: "[t]o add or strengthen a contraindication, warning, precaution, or adverse reaction for which the evidence of a causal association satisfies the standard for inclusion in the labeling under 201.57(c) of this chapter." Of note, this section allows changes that satisfy Section 201.57(c). Subsection 201.57(c), as opposed to §201.57(a) relied upon by the Defendants, describes changes to the "Full prescribing information" portions of the label. The Full prescribing information includes "Section 5 Warnings and precautions," which also encompasses "Monitoring: Laboratory Tests."

Accordingly, Defendants' arguments about limitations to the Highlights Section of the label is blind to the fact that no such limitation exists to the Warning Section (Section 5) of the label. Plaintiffs' proposal to change the Warning section is not addressed by the Defendants. More importantly, changes to the warnings section are permissible and not preempted. Defendants' arguments to the contrary are mistaken.

### F.   TESTS NEED ONLY BE HELPFUL TO BE REQUIRED IN THE LABEL

Defendants contend that helpful laboratory tests like PT are precluded because they must be "reclassified." These arguments reprise the rationale underlying Defendants' off-label use

---

[9]Rec. Doc. 5966.

arguments. As they are also based on FDA Guidances, which themselves state that they are not controlling authority, these arguments fail for the same reasons as Defendants' earlier arguments.[10]

## III.   CONCLUSION

For the reasons set forth above, the Defendants are not entitled to judgment as a matter of law under Fed.R.Civ.P. 50(a) on the issue of preemption.  Even if preemption were an issue being tried herein, there is more than a legally sufficient basis for a reasonable jury to find for the Plaintiff by rejecting a preemption defense which Defendants did not even assert at trial. Defendants' motion should be denied.

Dated: June 9, 2017

Respectfully submitted,

/s/ Leonard A. Davis
Leonard A. Davis, Esq. (Bar No. 14190)
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Email: ldavis@hhklawfirm.com

/s/ Gerald E. Meunier
Gerald E. Meunier (Bar No. 9471)
GAINSBURGH BENJAMIN DAVID MEUNIER
& WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
Email: gmeunier@gainsben.com

Plaintiffs' Liaison Counsel

---

[10] See Section II B, supra.

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 9, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to Liaison Counsel for Plaintiffs and Defendants by operation of the court's electronic filing system and served on all other plaintiff counsel via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre-Trial Order No. 17.

*/s/ Gerald E. Meunier*
**GERALD E. MEUNIER**