UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE ELDON E. FALLON |
| Joseph Orr, Jr., et al. v. Janssen et al. Case No. 2:15-cv-03708 | MAGISTRATE NORTH |

### DEFENDANTS' BENCH BRIEF IN SUPPORT OF THEIR OBJECTION TO THE COURT'S REFUSAL TO INCLUDE A MEDICAL CAUSATION QUESTION ON THE VERDICT FORM

Defendants object to the Court's refusal to include a medical-causation question on the verdict form. Failure to include such a question would be clear error because the LPLA, which governs Plaintiffs' sole remaining claim, requires Plaintiffs to show that Xarelto is the medical cause of Mrs. Orr's hemorrhage. *See* La. Rev. Stat. § 2800.53(5); *see also, e.g.*, *Brandner v. Abbott Labs., Inc.*, No. 10-3242, 2012 WL 195540, at *4 (E.D. La. Jan. 23, 2012); *Ridgeway v. Pfizer, Inc.*, No. 09-2794, 2010 WL 1729187, at *2 (E.D. La. Apr. 27, 2010). Moreover, under the Court's application of the "lost chance" doctrine, which the Court has included on the verdict form, Louisiana law requires a finding regarding medical causation—*i.e.*, that Xarelto *did not* cause Mrs. Orr's hemorrhage and subsequent death.[1] Defendants are contemporaneously filing a Second

---

[1] To be clear, Defendants object to the application of the "loss of chance" doctrine in this case—and to the inclusion of any jury instructions or questions on the verdict form pertaining to "lost chance" or "loss of chance" damages—for the reasons explained before, including that Plaintiffs attempted to add these damages on the eve of trial despite having previously "stipulate[d] that all claims and causes of action falling outside of the exclusive theories of recovery and damages allowed by the LPLA are hereby dismissed with prejudice." Doc. 5341 ¶ 4; *see also* Defs.' Opp. To Pls.' Mot. To Amend Compl. (Doc. 6389); Defs.' Bench Memo. In Opp. To Loss Of Chance Of Survival (Doc. 6762).

1

Revised and Supplemental jury instructions and verdict form, which they request that the Court use.[2]

**1.** Plaintiffs contend that Xarelto caused Mrs. Orr's injuries and death. This much is clear from the evidence Plaintiffs presented and their opposition to Defendants' motion for judgment as a matter of law, in which Plaintiffs contended that "Xarelto at the very least played a role in Mrs. Orr's ultimate injury." Pls.' Opp. To Defs.' Mot. For Judg. As A Matter Of Law (Doc. 6782), at 3 (emphasis omitted). To be sure, as Defendants have shown, Dr. Liechty conceded that Xarelto was not the medical cause of Mrs. Orr's death but has instead opined that she would have had a 60% chance of avoiding death if Defendants had instructed Dr. Bui to perform a PT test.

**2.** In any event, however Plaintiffs plead their claim, proving specific medical causation is unquestionably a necessary element of their failure-to-warn claim under the LPLA— the only claim left in the case. *See* Doc. 5341 ¶¶ 1–2 ("stipulat[ing] that the claims and causes of action in the above-captioned matter are governed exclusively by the LPLA"). The LPLA provides a cause of action for damages "caused by a product." La. Rev. Stat. § 2800.53(5). And numerous cases likewise make clear that the LPLA "require[s] proof of medical causation"—*i.e.*, that the product caused the plaintiff's injury. *Brandner v. Abbott Labs., Inc.*, No. 10-3242, 2012 WL 195540, at *4 (E.D. La. Jan. 23, 2012); *accord, e.g.*, *Ridgeway v. Pfizer, Inc.*, No. 09-2794, 2010 WL 1729187, at *2 (E.D. La. Apr. 27, 2010) (describing medical causation as "a critical element" of an LPLA claim). For that reason alone, the Court should include a medical-causation question on the verdict form, as the Court has done in other pharmaceutical cases. *See, e.g.*, Verdict Form,

---

[2] Defendants submit their Second Revised and Supplemental Jury Instructions and Verdict Form without waiver of their objections to the Court's instructions and verdict form, particularly with regard to "lost chance" and the question whether the learned intermediary doctrine applies to a plaintiff's treating physicians, like Dr. Bui here, who never prescribed the medicine for the plaintiff.

*In re: Propulsid Prods Liab. Litig.*, MDL No. 1355, No. 00-2577 (E.D. La. 2003) (governed by Louisiana law).

  **3.**  Nothing about Plaintiffs' "lost chance of survival" theory changes the requirements of the LPLA—there is no case-law support for finding liability in an LPLA case without proof that the product caused the plaintiff's injuries.  But even if the Court accepts Plaintiffs' lost-chance theory related to Xarelto's alleged failure to warn or instruct Dr. Bui, the jury still must make a finding on medical causation, particularly where, as here, Plaintiffs' experts have testified that it is more likely than not that Dr. Bui's earlier intervention would have prevented Mrs. Orr's death.  As explained before, the LPLA does not recognize "lost chance" damages—and no previous Louisiana court has applied the lost-chance doctrine in a product-liability case—so there is no prior analogue to follow, but the Louisiana law that Plaintiffs have pressed the Court to follow (from cases involving the rendition of services, like medical malpractice) is clear that the lost-chance doctrine applies *only if* the plaintiff's underlying injury *was not caused by* the defendant's conduct. *See, e.g., Deykin v. Ochsner Clinic Found.*, No. 16-CA-488, __ So. 3d __, 2017 WL 1488855, at *4 & n.3 (La. Ct. App. Apr. 26, 2017) (concluding that "the loss of a chance of survival doctrine is relevant" only in cases where the plaintiff dies as the "result of a pre-existing condition (*i.e.*, a condition of the patient in existence at the time of the alleged malpractice of the defendant, *which condition is unrelated to any conduct of the defendant*).") (emphasis added).[3]  Here, that means that, if the Court submits lost-chance damages to the jury, in order to award those damages, the jury must find that Xarelto *did not cause Mrs. Orr's hemorrhage*.

---

[3] *See also Smith v. State Dept. of Health & Human Res. Admin.*, 676 So. 2d 543, 547 (La. 1996) (applying loss of chance doctrine to "negligent treatment of a *pre-existing* condition") (emphasis added); *Weber v. State*, 635 So. 2d 188, 192 (La. 1994) (lost chance relevant where "a second and separate incident . . . caused a separate injury").

**4.** Moreover, this Court has previously indicated during a chambers conference that it will "revisit" the issue of lost-chance damages in the event that the jury awards such damages. But the lack of a medical-causation question on the verdict form will inhibit that inquiry. As currently drafted, there is no way to determine whether the jury found that Mrs. Orr's condition—*i.e.*, her underlying hemorrhage—was "unrelated to any conduct of" Defendants. Plaintiffs have asserted that medical causation is subsumed by Question 2 of the Court's verdict form (regarding proximate cause), but on that theory, there is no way for the Court or the parties to know how the jury answered the question—a "no" answer could mean either or both (1) that Xarelto did not cause the bleed, or (2) that a different warning would not have made a difference. Accordingly, in order to facilitate post-verdict motions or objections regarding lost-chance damages, medical causation should be set out separately on the verdict form.[4]

**5.** In addition, although the proposed lost-chance *instruction* correctly informs the jury that they cannot award lost-chance damages if medical causation is absent, neither verdict form Question 3 (on lost-chance causation) nor Question 5 (on lost-chance damages) allows the jury to stop if it responds "no" to Question 2 on that basis that although Xarelto was the medical cause of Mrs. Orr's hemorrhage, a different warning or instruction would not have changed Dr. Bui's treatment decision. Accordingly, the medical-causation instruction on lost chance is meaningless. Because it is not tethered to any verdict-form question, with regard to lost-chance damages, the jury cannot act on a finding that Xarelto caused Mrs. Orr's injury. *Nor will the Fifth Circuit be able to sort this out on appeal—a new trial will be required because no one will know*

---

[4] In other words, the Court's verdict form directs the jury to answer Question 3—which asks "[d]o you find by a preponderance of the evidence that the Defendants' failure to provide adequate warnings and instructions deprived Mrs. Sharyn Orr of a chance of survival?"—if there is a "no" answer to Question 2. But if the jury has answered "no" to Question 2, there is no way to know whether that answer was because the jury concluded that Xarelto caused the injury or not. And if the jury has found that Xarelto caused the bleed, it would be clearly improper for them to answer Question 3.

4

*what the jury found or did not find with respect to medical causation.* A separate verdict-form question on medical causation would solve that problem.

## CONCLUSION

For all of these reason, the verdict form must include a medical-causation question. Defendants request that the Court include a separate medical causation question on the verdict form, as proposed in Defendants' submission.

Respectfully submitted,

| | |
|---|---|
| IRWIN FRITCHIE URQUHART & MOORE LLC | WILKINSON WALSH + ESKOVITZ LLP |

By: /s/ *James B. Irwin*
James B. Irwin
Kim E. Moore
Irwin Fritchie Urquhart & Moore LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
jirwin@irwinllc.com

DRINKER BIDDLE & REATH LLP

By: /s/ *Susan M. Sharko*
Susan M. Sharko
Drinker Biddle & Reath LLP
600 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
susan.sharko@dbr.com

Rodney M. Hudson
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
Telephone: (415) 591-7500
Rodney.hudson@dbr.com

Chanda A. Miller
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2700
Chanda.Miller@dbr.com

*Attorneys for Defendants Janssen Pharmaceuticals, Inc. and Janssen Research & Development, LLC*

By: /s/ *Beth A. Wilkinson*
Beth A. Wilkinson
Jennifer L. Saulino
Jeremy Barber
WILKINSON WALSH + ESKOVITZ LLP
1900 M. Street NW, Suite 800
Washington, DC 20036
Telephone: (202) 847-4000
bwilkinson@wilkinsonwalsh.com
jsaulino@wilkinsonwalsh.com
jbarber@wilkinsonwalsh.com

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: */s/ David E. Dukes*
David E. Dukes
J. Mark Jones
NELSON MULLINS RILEY & SCARBOROUGH LLP
1320 Main Street, 17th Floor
Columbia, SC 29201
Telephone: (803) 799-2000
David.Dukes@nelsonmullins.com
Mark.Jones@nelsonmullins.com

ARNOLD & PORTER KAYE SCHOLER LLP

By: /s/ *Andrew K. Solow*
Andrew K. Solow
Steven Glickstein
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8485
andrew.solow@apks.com
steven.glickstein@apks.com

William Hoffman
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
william.hoffman@apks.com

6

BRADLEY ARANT BOULT CUMMINGS LLP

By: */s/ Lindsey C Boney IV*
Kevin C. Newsom
Lindsey C Boney IV
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place, 1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8803
knewsom@bradley.com
lboney@bradley.com

CHAFFE MCCALL L.L.P.
By: */s/ John F. Olinde*
John F. Olinde
CHAFFE MCCALL L.L.P.
1100 Poydras Street, Suite 2300
New Orleans, LA 70163
Telephone: (504) 585-7241
olinde@chaffe.com

*Attorneys for Bayer HealthCare Pharmaceuticals Inc. and Bayer Pharma AG*

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that on the 11th day of June, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs by operation of the court's electronic filing system.

                                              */s/     John F. Olinde*