UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE ELDON E. FALLON |
| Joseph Orr, Jr., et al. v. Janssen et al. Case No. 2:15-cv-03708 | MAGISTRATE NORTH |

**DEFENDANTS' OBJECTIONS TO THE COURT'S
FINAL JURY INSTRUCTIONS AND VERDICT FORM**

Defendants Bayer HealthCare Pharmaceuticals Inc., Bayer Pharma AG, Janssen Pharmaceuticals, Inc., and Janssen Research & Development, LLC (collectively, "Defendants") submit the following objections to the Court's Final Jury Instructions.  (For the Court's convenience, page and line references are to the Court's June 9, 2017 final instructions.) Defendants also object to the Court's Final Verdict Form.  Defendants have submitted their Second Revised and Supplemental Jury Instructions and Verdict Form in order to preserve their objections to the Court's Final Jury Instructions and Verdict Form.

Defendants have filed their Second Revised Proposed Jury Instructions and Verdict Form without prejudice to their objections to (1) any suggestion that Defendants owed any duty to Mrs. Orr's treating physician, Dr. Cuong Bui, or (2) any suggestion that Louisiana law allows for damages for a "loss of chance of survival" in a product-liability case like this one (or that Plaintiffs are entitled to such damages in any event), particularly where Plaintiffs' experts have admitted that the product in question was not the medical cause of the injury.[1]

---

[1] Defendants previously filed a bench memorandum in opposition to Plaintiffs' proposed instructions suggesting that Defendants had a duty to warn Dr. Bui (Doc. 6765), as well as a motion in *limine* on this basis—and on the basis that Dr. Bui did not read Xarelto's label—to exclude Dr. Bui's testimony regarding the Xarelto label (Doc. 6482). Defendants have also incorporated their arguments regarding Dr. Bui in their motion for judgment as a matter of law. Doc. 6776.  Defendants continue to assert that Defendants owed no duty to warn Dr. Bui.  However, if the Court

1

**I.     Objections To Charges Included In Court's Final Jury Instructions.**

<u>Learned Intermediary—Duty to Dr. Bui (p 20, lines 5–12; *see also* references to Dr. Bui and "treating physician" or "treater" throughout instructions)</u>: Defendants object to the Court instructing the jury that it is to consider Mrs. Orr's treating physician, Dr. Bui, to be a learned intermediary under Louisiana law. Defendants' duty to warn under Louisiana law extends only to prescribing physicians. *See Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 265 (5th Cir. 2002) ("Under [the learned intermediary] doctrine, a drug manufacturer discharges its duty to consumers by reasonably informing *prescribing physicians* of the dangers of harm from a drug." (emphasis added)). Moreover, Louisiana courts have not recognized a duty to treating physicians who neither use nor prescribe a prescription drug, and *Erie* prohibits the extension of such a duty. *See Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 317–18 (5th Cir. 2002). Defendants request that the Court strike this portion of the learned intermediary instruction (p. 20, lines 5–12), as well as all references in the instructions to "treating physician," "treater," or "Dr. Bui." Defendants also object to any reference to Dr. Bui or the treating physician in the Court's Final Verdict Form. Defendants expressly incorporate their prior briefing explaining why no duty to warn was owed to Dr. Bui under Louisiana law. *See* Docs. 6482; 6765; 6776; 6770.

---

rejects those arguments, Defendants request that the Court provide the jury with the proposed verdict form submitted with their Second Revised and Supplemental Proposed Jury Instructions and Verdict Form.

Defendants also continue to object to the application of the "loss of chance" doctrine in this case—and to the inclusion of any jury instructions or questions on the verdict form pertaining to "lost chance" or "loss of chance" damages—for the reasons explained before, including that Plaintiffs attempted to add these damages on the eve of trial despite having previously "stipulate[d] that all claims and causes of action falling outside of the exclusive theories of recovery and damages allowed by the LPLA are hereby dismissed with prejudice." Doc. 5341 ¶ 4; *see also* Defs.' Opp. To Pls.' Mot. To Amend Compl. (Doc. 6389); Defs.' Bench Memo. In Opp. To Loss Of Chance Of Survival (Doc. 6762); Defs.' Bench Brief In Support Of Their Objection To The Court's Refusal To Include A Medical Causation Question On The Verdict Form (filed contemporaneously herewith). However, if the Court rejects those arguments, Defendants request that the Court provide the jury with the proposed verdict form submitted with their Second Revised and Supplemental Proposed Jury Instructions and Verdict Form.

2

Heeding presumption (p. 20, line 13 – p. 21, line 5): Defendants object to this instruction and request that it be stricken because the "heeding presumption" is unfairly prejudicial and likely to confuse the jury. The heeding presumption has no applicability here because Mrs. Orr's physicians provided testimony about their understanding of the Xarelto label.

Labeling and federal regulations (p. 25, line 1 – p. 26, line 10): Defendants object to this instruction because it gives insufficient attention to—and obscures—the relevance of FDA's approval of Xarelto and Defendants' compliance with regulatory standards, which (while not conclusive) bear directly on the non-defectiveness of a product, the adequacy of the product's label, and the reasonableness of Defendants' conduct. *See* 21 U.S.C. § 355; 21 C.F.R. § 314.125; *see also, e.g.*, *Crotwell v. Wal-Mart La., LLC*, No. CIV.A. 06-909-C, 2009 WL 1146612, at *7 (M.D. La. Apr. 27, 2009) (compliance with regulatory standards is "relevant for consideration"); *Dunne v. Wal-Mart Stores, Inc.*, 679 So. 2d 1034, 1037 (La. Ct. App. 1996) (same); *Newman ex rel. Newman v. McNeil Consumer Healthcare*, No. 10 C 1541, 2013 WL 4460011, at *7 (N.D. Ill. Mar. 29, 2013) (explaining that "FDA review and approval . . . may be relevant to the reasonableness of the warnings on Defendants' [drug] labels").

The charge is unfairly unbalanced in favor of Plaintiffs. The charge states in one sentence encompassing three lines that the jury can consider FDA approval, while spending four sentences covering 20 lines stating that the jury need not give FDA approval very much (if any) weight:

- The first of these four sentences tells the jury that FDA approval does not absolve the Defendants of all liability. (page 25, lines 6–10)

- The second tells the jury that FDA approval does not foreclose a claim under Louisiana law. (page 25, lines 10–12)

- The third tells the jury that FDA approval is not sufficient to conclusively establish that the Defendants have taken the steps necessary under the applicable law. (page 25, lines 12–19)

- The fourth tells the jury that FDA approval does not mean that the Defendants necessarily have apprised physicians of the risks of Xarelto. (page 25, line 19 – page 26, line 4)

It is unfairly prejudicial to Defendants to make Plaintiffs' point four times in four different ways, while making Defendants' point only once. Defendants acknowledge that each of the four sentences contain the words "though relevant" or "although relevant." But those two words are buried in much longer sentences, the thrust of which is that the jury is free to disregard FDA approval. Indeed, the meaning of "though" and "although" when used to introduce the word "relevant" is to signal that the main point of the sentence is to negate or minimize the relevance. The charge is imbalanced in giving so much attention to how the jury can disregard FDA approval and so little attention to how it can consider it.

This imbalance is made worse by the different levels of specificity in the charge. When advising the jury that they can disregard FDA approval, the Court is very specific: FDA approval does not absolve Defendants of liability; it is not necessarily sufficient under Louisiana law; it does not conclusively establish that Defendants took steps to comply with the law; and it is not sufficient if the evidence shows that the warning was deficient. By contrast, the instruction is extremely vague and non-specific as to how the jury can permissibly consider FDA approval. The Court says the jury can consider FDA approval in determining liability but never explains how. The Court says FDA approval is relevant but never explains relevant to what. For example, although FDA approval and compliance with regulations is some evidence that the warnings are sufficient under Louisiana law, the charge does not state that explicitly. Just as the jury is free to find that FDA regulations are insufficient under state law to apprise doctors of the risk, it is equally free to find that FDA regulations *are* sufficient to apprise doctors of the risk. The instructions, however, make only the first statement, and not the second related statement. This unfairly favors Plaintiffs.

4

Given the lack of specificity as to how the jury may permissibly consider FDA approval, the charge is not only unbalanced, but also incorrect, incomplete, and confusingly vague. The jury is entitled to know the law on how FDA approval may be relevant. And the charge should explain the potential relevance of FDA approval with specificity equal to the charge explaining how FDA approval may *not* be conclusive.

The charge also is incorrect in the following respects:

- The word "minimum" should be stricken from the fourth sentence. FDA standards are not "minimum" standards as a matter of law and should not be described as such. While it is true that absent preemption the jury is permitted to conclude that FDA standards are minimum standards and therefore the defendant should have done more, the jury also is entitled to find that FDA standards are comprehensive, not minimum, and therefore that the Defendant was not required to do more. Using the word "minimum" to describe FDA standards essentially grants judgment as a matter of law to plaintiffs on the disputed fact issue of the weight to be accorded FDA standards.

- The words "or treating" should be stricken from the phrase "prescribing or treating physicians" for the reasons previously stated.

- The word "necessarily" should be substituted for "in and of itself" before the word "establish" in the third sentence, and before the word "sufficient" in the fifth sentence for accuracy. Without those changes, the sentences can reasonably (but impermissibly) be read as directions to the jury that FDA approval is never sufficient to absolve defendants from liability or to conclusively establish that the Defendants have taken the steps necessary to comply with the law.

Defendants have proposed in Section II below a revised version of the Court's FDA instruction that would cure the defects described above, and Defendants request that the Court give this instruction.

CBE regulation (p. 26, lines 5–10): Defendants object to the inclusion of this instruction and request that it be stricken or that Defendants' Proposed Instruction No. 13 be used instead, because the current CBE instruction is an incomplete, inaccurate, and misleading statement of the

law.  Defendants have filed a separate bench memorandum discussing this instruction, and incorporate those arguments by reference here.

Legal cause—foreseeability (p. 27, line 10 – p. 28, line 2): Defendants object to this instruction and request that it be stricken because foreseeability is not at issue in this case and the instruction could therefore confuse jurors.

Proximate cause—warnings-causation and learned intermediary (page 29, lines 1–10): Defendants object to this instruction because it misstates the warnings-causation standard by requiring Plaintiffs to prove that Mrs. Orr's physicians "would have altered" their "prescribing or treating decision or behavior."  The correct standard is "the plaintiff must show that a proper warning would have changed the decision of the treating physician, *i.e.* that but for the inadequate warning, the treating physician would not have used or prescribed the product." *Willett v. Baxter Int'l, Inc.*, 929 F.2d 1094, 1098–99 (5th Cir. 1991); *see also, e.g.*, *Allgood v. GlaxoSmithKline PLC*, No. 06-3506, 2008 WL 483574, at *4 (E.D. La. Feb. 20, 2008) (Fallon, J.) (granting summary judgment on a plaintiff's failure-to-warn claims because the prescribing physician's testimony "clearly reveal[ed] that stronger warnings concerning the risk of suicide would not have changed his decision to prescribe Paxil in this case"); *Whitener v. PLIVA, Inc.,* No. 10-1552, 2014 WL 1276489 (E.D. La. Mar. 27, 2014) (Fallon, J.), *aff'd*, 606 F. App'x 762 (5th Cir 2015).

Substantial factor test (p. 28, lines 3–17):  Defendants object to this instruction, which seems to have been adapted from the charge in the *Vioxx* cases, none of which involved the law of Louisiana (but rather Florida, Kentucky, South Carolina, Tennessee, and Utah law). Louisiana law does not provide for a substantial-factor instruction in a case like this.  Under Louisiana law, the substantial-factor test replaces the "but for" test only "[w]here an injury is caused by two sufficient . . . defects." *See Brown v. Parker-Hannifin Corp.*, 919 F.2d 308, 311 & n.10 (5th Cir. 1990); *In*

*re Manguano*, 961 F.2d 53 (5th Cir. 1992) (trial court improperly instructed jury on "but for" cause in asbestos case, because "a 'but for' definition of causation is inappropriate in a concurrent cause case"). Because substantial factor is a replacement for the but-for test in cases where there are two *independently sufficient* causes—which is not the case here—it is inappropriate in this case.

<u>Lost chance of survival (p. 34, line 3 – p. 35, line 10; *see also* p. 18, line 16):</u> Defendants object to this instruction and request that it be stricken because lost chance of survival is not recoverable in an action under the Louisiana Product Liability Act. Defendants expressly reassert and incorporate here their earlier briefing on lost chance of survival. *See* Defs.' Bench Memo. In Opp. to Lost Chance of Survival (Doc. 6762); Defs. Mot. For Judgment as a Matter of Law at Close of Pls.' Case (Doc. 6770); Defs. Mot. For Judgment as a Matter of Law at Close of Evidence (Doc. 6776); Defs.' Opp. to Pls.' Mot. To Amend (Doc. 6389). For the Court's convenience, Defendants summarize the reasons an award of "lost-chance" damages is not allowable here.

***First***, Plaintiffs previously "stipulate[d] that all claims and causes of action falling outside of the exclusive theories of recovery and damages allowed by the LPLA are hereby dismissed with prejudice." Stipulation and Order (Doc. 5341), at 2. Lost-chance damages are not within the scope of allowable damages under the LPLA, and an instruction regarding lost-chance damages is thus inappropriate. *See* La. Rev. Stat. Ann. § 2800.53(5) (LPLA provides a cause of action for damages "caused by a product").

***Second***, the lost-chance theory is irreconcilably inconsistent with the LPLA. The LPLA provides that a manufacturer may be liable on a failure-to-warn theory if "the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic." La. Rev. Stat. Ann. § 9:2800.57(A). The Act further defines damage as "all damage caused by a product." *Id.* § 9:2800.53(5). Nothing about Plaintiffs'

7

"lost chance of survival" theory changes the requirements of the LPLA, and there is no case-law support for finding liability in an LPLA case without proof that the product caused the plaintiff's injuries. That is particularly true here, in light of the concessions by Plaintiffs' expert, Dr. Liechty.

Third, even if this Court applied the lost-chance doctrine recognized in medical malpractice cases, Plaintiff would be required to prove that the initial injury (*i.e.*, the hemorrhage) is "unrelated to" the defendant's conduct. *See Deykin v. Ochsner Clinic Found.*, No. 16-CA-488, 2017 WL 1488855, at *4 & n.3 (La. Ct. App. Apr. 26, 2017). A lost-chance theory thus cannot be pursued under the LPLA: the LPLA requires that the product cause the injury, but the lost-chance doctrine requires that the initial injury (*i.e.*, the hemorrhage) be unrelated to the product. In other words, Plaintiffs must allege that Xarelto caused Mrs. Orr's injury for their claim to fall under the LPLA, but that required link between the product and the injury forecloses the lost-chance doctrine.

***Third***, no Louisiana court has ever applied the lost-chance doctrine to an LPLA claim. This absence of authority is fatal to Plaintiffs' request for damages. As the Fifth Circuit has recognized, a federal court may not "adopt [an] innovative theor[y] of recovery under Louisiana law," *Giles v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2009), or "expand state law beyond its presently existing boundaries," *Barfield v. Madison Cty.*, 212 F.3d 269, 272 (5th Cir. 2000). *Erie* prohibits this radical expansion of Louisiana law.

***Fourth***, no court has ever applied the lost-chance doctrine to a product-liability claim. And with good reason—the doctrine applies only to the rendition of services, not to products. Courts have therefore uniformly refused to extend the doctrine to the product-liability context. *See, e.g.*, *In re Lipitor (Atorvastatin Calcium) Marketing, Sales Pracs., & Prods. Liab. Litig.*, MDL No. 2502, __ F. Supp. 3d __, 2017 WL 83509, at *12 n.12 (D.S.C. Jan. 3, 2017); *Hill v. Novartis Pharm.*, 944 F. Supp. 2d 943, 959–60 (E.D. Cal. 2013).

*Fifth*, the lost-chance doctrine does not apply where the defendant is alleged to have caused the plaintiff's initial injury. Plaintiffs allege that Xarelto caused Mrs. Orr's bleeding event, and the lost-chance doctrine thus cannot apply. *Deykin*, 2017 WL 1488855, at *4; *Smith v. State, Dept. of Health & Human Res. Admin.*, 676 So. 2d 543, 547 (La. 1996).

*Sixth*, even if the lost-chance doctrine could apply to a product-liability claim, Plaintiffs have not introduced legally sufficient evidence to allow the jury to award such damages here. Plaintiffs have not provided any quantitative assessment that Mrs. Orr had a less-than-even chance of survival at the time she arrived at Ochsner Main. *See Smith*, 676 So. 2d at 547 (recovery is for a "less-than-even chance of survival"); *Goudia v. Mann*, 98 So. 3d 364, 374 (La. Ct. App. 2012) (expert "did not assess what the quantitative chances of survival would have been had any of these measures been taken"). Accordingly, a lost-chance instruction is inappropriate. *See Roberts v. Wal-Mart Stores, Inc.*, 7 F.3d 1256, 1258 (5th Cir. 1993) (explaining that "[a] district court may not instruct a jury on a legal theory in support of which no evidence is presented").

*Seventh*, Defendants were prejudiced by Plaintiffs' untimely assertion of this theory of damages.

Without waiver of their assertion that lost-chance damages are not recoverable in this action, Defendants assert that the Court's instruction, as drafted, is misleading and likely to confuse the jury. Defendants have summited a proposed lost-chance instruction in their Second Revised and Supplemental Jury Instructions and Verdict Form, and request that the Court give that instruction if it continues to reject Defendants' argument that lost-chance damages are not recoverable.

## II. Objections To Court's Refusal To Give Instructions Proposed By Defendants.

<u>Proximate Cause—Warning (Defendants' Request No. 21)</u>: Defendants object to the Court's refusal to give the Defendants' proposed instruction regarding the proximate cause standard in a pharmaceutical failure-to-warn action, which states as follows:

> To recover for failure to warn, Plaintiffs must prove by a preponderance of the evidence that an inadequate warning itself—in addition to the medication—was the proximate cause of Mrs. Orr's alleged injury. When I say "proximate cause," I mean that Plaintiffs must prove by a preponderance of the evidence that, if a different warning had accompanied Xarelto, then Dr. St. Martin would have changed his prescribing decision and Mrs. Orr would not have suffered her alleged injury. If the doctor was already aware of the risk, then you must find the Defendants not liable for failure to warn.

Defendants respectfully submit that this proposed instruction accurately states Louisiana law, whereas the learned intermediary instructions in the Court's final jury instructions on pages 24 (lines 8–11) and 29 (lines 5–10)—referring vaguely to "prescribing or treating decision or behavior"—do not. *See, e.g., Willett v. Baxter Int'l, Inc.*, 929 F.2d 1094, 1098–99 (5th Cir. 1991) ("[T]he plaintiff must show that a proper warning would have changed the decision of the treating physician, i.e. that but for the inadequate warning, the treating physician would not have used or prescribed the product."); *Allgood v. GlaxoSmithKline PLC*, No. 06-3506, 2008 WL 483574, at *4 (E.D. La. Feb. 20, 2008) (Fallon, J.) (granting summary judgment on a plaintiff's failure-to-warn claims because the prescribing physician's testimony "clearly reveal[ed] that stronger warnings concerning the risk of suicide would not have changed his decision to prescribe Paxil in this case"); *Whitener v. PLIVA, Inc.,* No. 10-1552, 2014 WL 1276489 (E.D. La. Mar. 27, 2014) (Fallon, J.), *aff'd*, 606 F. App'x 762 (5th Cir 2015) (granting summary judgment for defendants because it was "clear … that [the doctor] relied principally on his own experience"—not any alleged off-label promotion—and "even knowing everything he knows today, he would have still prescribed [the medication] to [plaintiff]").

10

FDA Approval (Defendants' Request No. 12): Defendants object to the Court's refusal to give the following instruction regarding FDA approval, which states as follows:

> The FDA approved both Xarelto and its label. You may consider this fact in weighing the evidence in this case in determining the liability of the Defendants. In particular, you may consider Defendants' compliance with FDA regulations as some evidence that Xarelto's label provided an adequate warning.
>
> However, FDA approval, although relevant, does not necessarily absolve the Defendants of all liability, nor does it necessarily establish that the warnings or instructions provided with the drug were adequate under the standards of Louisiana law. In fact, any action or inaction on the part of the FDA, though relevant, does not foreclose a claim under Louisiana law, therefore, even if the Defendants have met all the appropriate standards for FDA approval and governmental regulations and requirements to obtain FDA approval, this compliance and approval, though relevant, is not necessarily sufficient to conclusively establish that the Defendants have taken the steps necessary under the law applicable to this case. More specifically, if you find that the Defendants failed to apprise the prescribing physician[2] of appropriate testing to address risks that they knew or should have known prior to FDA approval or became known or should have become known after the FDA approved Xarelto's label, then FDA approval of the drug, though relevant, is not conclusive.
>
> On the other hand, if the evidence shows that the FDA's regulations and its review and approval of Xarelto and its label was sufficient to adequately apprise physicians of appropriate testing to address risks that the Defendants knew or should have known after FDA approved Xarelto's label, then you may take Defendant's compliance with FDA regulations into account when considering whether Defendants satisfied their duty to warn under Louisiana law.
>
> It is for you, the jury, to decide, based on the evidence presented in this case, how much weight to give the fact that FDA approved Xarelto and its label, in determining whether Defendants satisfied their duty to warn under Louisiana law.

Defendants respectfully submit that this proposed instruction provides an accurate and balanced explanation of the significance of FDA approval, whereas the Court's charge on labeling and federal regulations (p. 25, line 1 – p. 26, line 10) does not, as explained above. *See* 21 U.S.C. § 355; 21 C.F.R. § 314.125; *see also, e.g.*, *Crotwell v. Wal-Mart La., LLC*, No. CIV.A. 06-909-C,

---

[2] Defendants have previously objected to any instruction suggesting that Defendants owed a duty to the treating physician, Dr. Bui. Without waiving that objection, Defendants request that the phrase "the prescribing physician" be replaced with "the prescribing or treating physician" if the Court intends to instruct the jury that a duty was owed to Dr. Bui.

11

2009 WL 1146612, at *7 (M.D. La. Apr. 27, 2009) (compliance with regulatory standards is "relevant for consideration"); *Dunne v. Wal-Mart Stores, Inc.*, 679 So. 2d 1034, 1037 (La. Ct. App. 1996) (same); *Newman ex rel. Newman v. McNeil Consumer Healthcare*, No. 10 C 1541, 2013 WL 4460011, at *7 (N.D. Ill. Mar. 29, 2013) (explaining that "FDA review and approval . . . may be relevant to the reasonableness of the warnings on Defendants' [drug] labels").

Abandoned Theories (Defendants' Request No. 22): Defendants object to the Court's refusal to give Defendants' proposed instruction regarding Plaintiffs' abandoned theories, which states as follows:

> You have heard testimony from some of Plaintiffs' witnesses regarding Xarelto's dose, dosing regimen, and lack of a reversal agent. You may not consider any testimony about Xarelto's dose or dosing regimen as evidence of a defect in the product, nor may you consider the fact that there is no reversal agent for Xarelto as a defect in the product.

This proposed instruction should be given to cure any juror confusion resulting from the presentation of evidence regarding dosing, dose regimen, or reversal agents, which are relevant to Plaintiffs' now-dismissed design-defect claim. *See* Stipulation & Order (Doc. 6601) (dismissing with prejudice any design-defect claim); Pls.' Opp. to Defs.' Dosing, Monitoring and Design Preemption MSJ (Doc. 5531) at 2 (Plaintiffs expressly stated that they were "not asserting that the Defendants should unilaterally lower the approved dose of Xarelto to provide a different dosing regimen without FDA approval"); Pls.' Opp. to Defs.' LPLA MSJ (Doc. 5524), at 1 ("Plaintiffs' design defect claims . . . posit that the absence of . . . a reversal agent rendered Xarelto unreasonably dangerous under the LPLA."). Furthermore, this instruction is necessary to cure the prejudice to Defendants resulting from Plaintiffs being allowed to present evidence regarding theories that they have expressly abandoned.

Respectfully submitted,

IRWIN FRITCHIE URQUHART & MOORE LLC

By: /s/ *James B. Irwin*
James B. Irwin
Kim E. Moore
Irwin Fritchie Urquhart & Moore LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
jirwin@irwinllc.com

DRINKER BIDDLE & REATH LLP

By: /s/ *Susan M. Sharko*
Susan M. Sharko
Drinker Biddle & Reath LLP
600 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
susan.sharko@dbr.com

Rodney M. Hudson
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
Telephone: (415) 591-7500
Rodney.hudson@dbr.com

Chanda A. Miller
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2700
Chanda.Miller@dbr.com

*Attorneys for Defendants Janssen Pharmaceuticals, Inc. and Janssen Research & Development, LLC*

WILKINSON WALSH + ESKOVITZ LLP

By: /s/ *Beth A. Wilkinson*
Beth A. Wilkinson
Jennifer L. Saulino
Jeremy Barber
WILKINSON WALSH + ESKOVITZ LLP
1900 M. Street NW, Suite 800
Washington, DC 20036
Telephone: (202) 847-4000
bwilkinson@wilkinsonwalsh.com
jsaulino@wilkinsonwalsh.com
jbarber@wilkinsonwalsh.com

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: */s/ David E. Dukes*
David E. Dukes
J. Mark Jones
NELSON MULLINS RILEY & SCARBOROUGH LLP
1320 Main Street, 17th Floor
Columbia, SC 29201
Telephone: (803) 799-2000
David.Dukes@nelsonmullins.com
Mark.Jones@nelsonmullins.com

ARNOLD & PORTER KAYE SCHOLER LLP

By: /s/ *Andrew K. Solow*
Andrew K. Solow
Steven Glickstein
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8485
andrew.solow@apks.com
steven.glickstein@apks.com

William Hoffman
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
william.hoffman@apks.com

BRADLEY ARANT BOULT CUMMINGS LLP

By: */s/ Lindsey C Boney IV*

13

Kevin C. Newsom
Lindsey C Boney IV
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place, 1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8803
knewsom@bradley.com
lboney@bradley.com

CHAFFE MCCALL L.L.P.
By: /s/ *John F. Olinde*
John F. Olinde
CHAFFE MCCALL L.L.P.
1100 Poydras Street, Suite 2300
New Orleans, LA 70163
Telephone: (504) 585-7241
olinde@chaffe.com

*Attorneys for Bayer HealthCare Pharmaceuticals Inc. and Bayer Pharma AG*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 11th of June, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs by operation of the court's electronic filing system.

/s/      John F. Olinde