## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| IN RE: XARELTO (RIVAROXABAN) | : | **MDL NO. 2592** |
| PRODUCTS LIABILITY LITIGATION | : | |
|  | : | **SECTION: L** |
|  | : | |
|  | : | **JUDGE FALLON** |
|  | : | **MAG. JUDGE NORTH** |

.. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. :

**THIS DOCUMENT RELATES TO**
   *Orr et al. v. Janssen et al.*, 15-3708

<u>**JURY INSTRUCTIONS**</u>

MEMBERS OF THE JURY:

YOU HAVE NOW HEARD ALL THE EVIDENCE IN THIS CASE AS WELL AS THE FINAL ARGUMENT.

IT BECOMES MY DUTY, THEREFORE, TO INSTRUCT YOU ON THE RULES OF LAW THAT YOU MUST FOLLOW AND APPLY IN ARRIVING AT YOUR DECISION IN THIS CASE.

I WILL FIRST GIVE YOU SOME GENERAL INSTRUCTIONS WHICH APPLY IN ALL CASES, AND THEN I WILL GIVE YOU SOME SPECIAL INSTRUCTIONS SPECIFIC TO THIS CASE.

## I.     GENERAL INSTRUCTIONS

IN ANY JURY TRIAL, THERE ARE, IN EFFECT, TWO JUDGES. I AM ONE OF THE JUDGES; THE OTHER IS YOU, THE JURY. IT IS MY DUTY TO PRESIDE OVER THE TRIAL AND TO DETERMINE WHAT TESTIMONY AND OTHER EVIDENCE IS ADMISSIBLE UNDER THE LAW FOR YOUR

CONSIDERATION. IT IS ALSO MY DUTY AT THE END OF THE TRIAL TO INSTRUCT YOU ON THE LAW APPLICABLE TO THE CASE.

YOU, AS JURORS, ARE THE JUDGES OF THE FACTS. BUT IN DETERMINING WHAT ACTUALLY HAPPENED IN THIS CASE—THAT IS, IN REACHING YOUR DECISION AS TO THE FACTS—IT IS YOUR SWORN DUTY TO FOLLOW THE LAW I AM NOW IN THE PROCESS OF DEFINING FOR YOU AND YOU MUST FOLLOW MY INSTRUCTIONS AS A WHOLE. YOU HAVE NO RIGHT TO DISREGARD OR GIVE SPECIAL ATTENTION TO ANY ONE INSTRUCTION, OR TO QUESTION THE WISDOM OR CORRECTNESS OF ANY RULE I MAY STATE TO YOU. THAT IS, YOU MUST NOT SUBSTITUTE OR FOLLOW YOUR OWN NOTION OR OPINION AS TO WHAT THE LAW IS OR OUGHT TO BE. IT IS YOUR DUTY TO APPLY THE LAW AS I GIVE IT TO YOU, REGARDLESS OF THE CONSEQUENCES.

BY THE SAME TOKEN, IT IS ALSO YOUR DUTY TO BASE YOUR VERDICT SOLELY UPON THE TESTIMONY AND OTHER EVIDENCE IN THE CASE WITHOUT PREJUDICE OR SYMPATHY. THAT WAS THE PROMISE YOU MADE AND THE OATH YOU TOOK BEFORE BEING ACCEPTED BY THE PARTIES AS JURORS IN THIS CASE, AND THEY HAVE THE RIGHT TO EXPECT NOTHING LESS.

THIS CASE SHOULD BE CONSIDERED AND DECIDED BY YOU AS AN ACTION BETWEEN PERSONS OF EQUAL STANDING IN THE COMMUNITY, OF EQUAL WORTH, AND HOLDING THE SAME OR SIMILAR STATIONS IN LIFE. ALL PERSONS AND CORPORATIONS OR PUBLIC ENTITIES STAND EQUAL BEFORE THE LAW AND ARE TO BE DEALT WITH AS EQUALS IN THE COURT OF JUSTICE.

AS I STATED EARLIER, IT IS YOUR DUTY TO DETERMINE THE FACTS, AND IN SO DOING YOU MUST CONSIDER ONLY THE EVIDENCE I HAVE ADMITTED IN THE CASE. THE TERM "EVIDENCE" INCLUDES THE SWORN TESTIMONY OF THE WITNESSES AND THE EXHIBITS ADMITTED INTO THE RECORD.

REMEMBER THAT ANY STATEMENTS, OBJECTIONS, OR ARGUMENTS MADE BY THE LAWYERS ARE NOT EVIDENCE IN THE CASE. THE FUNCTION OF THE LAWYERS IS TO POINT OUT THOSE THINGS THAT ARE MOST SIGNIFICANT OR MOST HELPFUL TO THEIR SIDE OF THE CASE, AND IN SO DOING TO CALL YOUR ATTENTION TO CERTAIN FACTS OR INFERENCES THAT THEY ARE PARTICULARLY CONCERNED THAT YOU RECALL. IN THE FINAL ANALYSIS, HOWEVER, IT IS YOUR OWN RECOLLECTION AND INTERPRETATION

OF THE EVIDENCE THAT CONTROLS IN THIS CASE. WHAT THE LAWYERS SAY IS NOT BINDING UPON YOU.

ALSO, DURING THE COURSE OF TRIAL, I HAVE OCCASIONALLY MADE COMMENTS TO THE LAWYERS, OR ASKED A QUESTION OF A WITNESS, OR ADMONISHED A WITNESS CONCERNING THE MANNER IN WHICH HE OR SHE SHOULD RESPOND TO THE QUESTIONS OF COUNSEL. DO NOT ASSUME FROM ANYTHING I MAY HAVE SAID THAT I HAVE ANY OPINION CONCERNING ANY OF THE FACTS IN THIS CASE. IN ARRIVING AT YOUR OWN FINDINGS AS TO THE FACTS, YOU SHOULD DISREGARD ANYTHING I MAY HAVE SAID DURING THE TRIAL, EXCEPT FOR MY INSTRUCTIONS TO YOU ON THE LAW.

THE LAW OF THE UNITED STATES PERMITS THE JUDGE TO COMMENT ON EVIDENCE PRESENTED DURING A CASE. I DO NOT BELIEVE THAT I HAVE MADE ANY COMMENTS ON THE EVIDENCE IN THIS CASE. HOWEVER, IF YOU COULD POSSIBLY CONSTRUE ANY REMARKS WHICH I HAVE MADE DURING THE COURSE OF THIS TRIAL AS A COMMENT ON THE EVIDENCE, THEN I INSTRUCT YOU THAT ANY SUCH COMMENT ON MY PART IS ONLY AN EXPRESSION OF MY OPINION AS TO THE FACTS, AND YOU, THE JURY, MAY DISREGARD

SUCH COMMENT OR COMMENTS ENTIRELY SINCE YOU, AS JURORS, ARE THE SOLE JUDGES OF THE FACTS IN THIS CASE.

WHILE YOU SHOULD CONSIDER ONLY THE EVIDENCE IN THE CASE, YOU ARE PERMITTED TO DRAW SUCH REASONABLE INFERENCES FROM THE TESTIMONY AND THE EXHIBITS AS YOU FEEL ARE JUSTIFIED IN THE LIGHT OF COMMON EXPERIENCE. IN OTHER WORDS, YOU MAY MAKE DEDUCTIONS AND REACH CONCLUSIONS THAT REASON AND COMMON SENSE LEAD YOU TO DRAW FROM THE FACTS THAT HAVE BEEN ESTABLISHED BY THE TESTIMONY AND EVIDENCE IN THIS CASE.

YOU MAY CONSIDER EITHER DIRECT OR CIRCUMSTANTIAL EVIDENCE. "DIRECT EVIDENCE" IS THE TESTIMONY OF ONE WHO ASSERTS ACTUAL KNOWLEDGE OF A FACT, SUCH AS AN EYEWITNESS. "CIRCUMSTANTIAL EVIDENCE" IS PROOF OF A CHAIN OF FACTS AND CIRCUMSTANCES INDICATING A FACT TO BE PROVED. THE LAW MAKES NO DISTINCTION BETWEEN THE WEIGHT TO BE GIVEN TO EITHER DIRECT OR CIRCUMSTANTIAL EVIDENCE.

IN DECIDING THIS CASE, YOU ARE EXPECTED TO USE YOUR GOOD SENSE. GIVE THE EVIDENCE AND THE TESTIMONY OF THE WITNESSES A REASONABLE AND FAIR INTERPRETATION IN LIGHT OF

YOUR KNOWLEDGE OF THE NATURAL TENDENCIES OF HUMAN
BEINGS.

IN WEIGHING THE TESTIMONY AND IN DETERMINING THE
CREDIBILITY OF ANY WITNESS, YOU MAY CONSIDER THE CONDUCT
OF THE WITNESS, HIS OR HER BEARING ON THE WITNESS STAND, HIS
OR HER PERSONAL FEELINGS AS DEMONSTRATED BY HIS OR HER
TESTIMONY AND ACTIONS, ANY INTEREST HE OR SHE MAY HAVE IN
THE OUTCOME OF THE CASE, ANY PREJUDICE OR BIAS HE OR SHE
MAY HAVE SHOWN, AND ANY PARTIALITY HE OR SHE MAY HAVE
DEMONSTRATED.

IF A WITNESS IS SHOWN TO HAVE TESTIFIED FALSELY
CONCERNING ANY MATERIAL MATTER, YOU HAVE A RIGHT TO
DISTRUST SUCH WITNESS'S TESTIMONY ON OTHER MATTERS. YOU
ALSO HAVE THE RIGHT TO DISTRUST ALL OF THAT WITNESS'S
TESTIMONY.

YOU SHOULD KEEP IN MIND, OF COURSE, THAT A SIMPLE
MISTAKE DOES NOT NECESSARILY MEAN THAT THE WITNESS WAS
NOT TELLING THE TRUTH AS HE OR SHE REMEMBERS IT BECAUSE
PEOPLE MAY FORGET SOME THINGS OR REMEMBER OTHER THINGS
INACCURATELY. SO, IF A WITNESS HAS MADE A MISSTATEMENT,

YOU NEED TO CONSIDER WHETHER THAT MISSTATEMENT WAS AN INTENTIONAL FALSEHOOD OR SIMPLY AN INNOCENT LAPSE OF MEMORY; AND THE SIGNIFICANCE OF THAT MAY DEPEND ON WHETHER IT HAS TO DO WITH AN IMPORTANT FACT OR ONLY WITH AN UNIMPORTANT DETAIL.

THE TESTIMONY OF A SINGLE WITNESS MAY BE SUFFICIENT TO PROVE ANY FACT, EVEN IF A GREATER NUMBER OF WITNESSES MAY HAVE TESTIFIED TO THE CONTRARY, IF, AFTER CONSIDERING ALL THE OTHER EVIDENCE, YOU BELIEVE THAT SINGLE WITNESS.

WHEN KNOWLEDGE OF TECHNICAL SUBJECT MATTER MAY BE HELPFUL TO THE JURY, A PERSON WHO HAS SPECIAL TRAINING OR EXPERIENCE IN THAT TECHNICAL FIELD MAY BE CALLED AS AN EXPERT WITNESS AND IS PERMITTED TO STATE HIS OR HER OPINION ON THOSE TECHNICAL MATTERS. SUCH WITNESSES HAVE TESTIFIED IN THIS CASE. YOU ARE NOT, HOWEVER, REQUIRED TO ACCEPT THAT OPINION. AS WITH ANY OTHER WITNESS, IT IS UP TO YOU TO DECIDE WHETHER TO RELY UPON IT.

IF YOU SHOULD DECIDE THAT THE OPINION OF AN EXPERT WITNESS IS NOT BASED UPON SUFFICIENT EDUCATION AND EXPERIENCE, OR IF YOU SHOULD CONCLUDE THAT THE FACTS THE

EXPERT RELIED UPON ARE INCORRECT, THAT THE REASONS GIVEN IN SUPPORT OF THE OPINION ARE NOT SOUND, OR THAT THE OPINION IS OUTWEIGHED BY OTHER EVIDENCE, THEN YOU MAY DISREGARD THE OPINION ENTIRELY.

IN DECIDING WHETHER TO ACCEPT OR RELY UPON THE OPINION OF AN EXPERT WITNESS, YOU MAY CONSIDER ANY BIAS OF THE WITNESS, INCLUDING ANY BIAS YOU MAY INFER FROM EVIDENCE THAT THE EXPERT WITNESS HAS ECONOMIC, PHILOSOPHICAL, OR ANY OTHER INTEREST IN THE OUTCOME OF THE CASE.

CERTAIN TESTIMONY HAS BEEN PRESENTED TO YOU THROUGH VIDEO DEPOSITIONS. A DEPOSITION IS THE SWORN, RECORDED ANSWERS TO QUESTIONS ASKED TO A WITNESS IN ADVANCE OF THE TRIAL. UNDER SOME CIRCUMSTANCES, IF A WITNESS CANNOT BE PRESENT TO TESTIFY FROM THE WITNESS STAND, THAT WITNESS'S TESTIMONY MAY BE PRESENTED, UNDER OATH, IN THE FORM OF A DEPOSITION. SOME TIME BEFORE THIS TRIAL, ATTORNEYS REPRESENTING THE PARTIES IN THIS CASE QUESTIONED THE WITNESS UNDER OATH. A COURT REPORTER WAS PRESENT AND RECORDED THE TESTIMONY. THE QUESTIONS AND ANSWERS WERE

PRESENTED BY VIDEO TO YOU. THIS DEPOSITION TESTIMONY IS
ENTITLED TO THE SAME CONSIDERATION, IS TO BE JUDGED BY YOU
AS TO CREDIBILITY, AND IS TO BE WEIGHED AND OTHERWISE
CONSIDERED BY YOU, INSOFAR AS IT IS POSSIBLE, IN THE SAME WAY
AS IF THE WITNESS HAD BEEN PRESENT AND HAD TESTIFIED FROM
THE WITNESS STAND IN COURT.

DURING THE COURSE OF TRIAL, YOU WILL HAVE HEARD
OBJECTIONS TO EVIDENCE. SOMETIMES THESE HAVE BEEN ARGUED
OUT OF THE HEARING OF THE JURY.

IT IS THE DUTY OF THE ATTORNEYS ON EACH SIDE OF A CASE
TO OBJECT WHEN THE OTHER SIDE OFFERS TESTIMONY OR OTHER
EVIDENCE WHICH THE ATTORNEY BELIEVES IS NOT PROPERLY
ADMISSIBLE. YOU SHOULD NOT DRAW ANY INFERENCE AGAINST OR
SHOW ANY PREJUDICE AGAINST A LAWYER OR HIS OR HER CLIENT
BECAUSE OF THE MAKING OF AN OBJECTION.

UPON ALLOWING TESTIMONY OR OTHER EVIDENCE TO BE
INTRODUCED OVER THE OBJECTIONS OF AN ATTORNEY, THE COURT
DOES NOT, UNLESS EXPRESSLY STATED, INDICATE ANY OPINION AS
TO THE WEIGHT OR EFFECT OF SUCH EVIDENCE. AS STATED BEFORE,

YOU, THE JURY, ARE THE SOLE JUDGES OF THE CREDIBILITY OF ALL

WITNESSES AND THE WEIGHT AND EFFECT OF ALL EVIDENCE.

WHEN THE COURT HAS SUSTAINED AN OBJECTION TO A

QUESTION ADDRESSED TO A WITNESS, THE JURY MUST DISREGARD

THE QUESTION ENTIRELY AND MAY DRAW NO INFERENCE FROM THE

WORDING OF IT OR SPECULATE AS TO WHAT THE WITNESS WOULD

HAVE SAID IF PERMITTED TO ANSWER THE QUESTION.

DURING THE COURSE OF TRIAL, I HAVE OCCASIONALLY ASKED

A QUESTION OF A WITNESS IN ORDER TO BRING OUT FACTS NOT

THEN FULLY COVERED IN THE TESTIMONY. DO NOT ASSUME THAT I

HOLD ANY OPINION ON THE FACTS TO WHICH MY QUESTION OR

QUESTIONS MAY HAVE RELATED. REMEMBER AT ALL TIMES, YOU,

AS JURORS, ARE THE SOLE JUDGES OF THE FACTS.

STATEMENTS AND ARGUMENTS OF THE LAWYERS ARE NOT

EVIDENCE IN THE CASE, UNLESS MADE AS AN ADMISSION OR

STIPULATION OF FACT. A "STIPULATION" IS AN AGREEMENT

BETWEEN BOTH SIDES THAT CERTAIN FACTS ARE TRUE OR THAT A

PERSON WOULD HAVE GIVEN CERTAIN TESTIMONY. WHEN THE

LAWYERS ON BOTH SIDES STIPULATE OR AGREE TO THE EXISTENCE

OF A FACT, YOU MUST, UNLESS OTHERWISE INSTRUCTED, ACCEPT

THE STIPULATION AS EVIDENCE, AND REGARD THAT FACT AS
PROVED.

FINALLY, CERTAIN MATERIALS HAVE BEEN SHOWN TO YOU
SOLELY AS AN AID TO HELP EXPLAIN THE FACTS DISCLOSED BY
EVIDENCE (TESTIMONY, RECORDS, AND OTHER DOCUMENTS) IN THE
CASE. THIS IS WHAT WE REFER TO AS "DEMONSTRATIVE EVIDENCE"
BECAUSE IT IS OFFERED MERELY TO DEMONSTRATE OR ILLUSTRATE
A POINT RATHER THAN AS ACTUAL PROOF OF THAT POINT.
DEMONSTRATIVE EVIDENCE IS NOT ADMITTED EVIDENCE OR PROOF
OF ANY FACTS. YOU SHOULD DETERMINE THE FACTS FROM THE
EVIDENCE THAT IS ADMITTED.

REMEMBER, THE DEMONSTRATIVE EVIDENCE IS ONLY AS
GOOD AS THE UNDERLYING TESTIMONY, DATA, ASSUMPTIONS, AND
OPINIONS THAT SERVE AS THE BASIS FOR IT, AND THE MAXIM,
"GARBAGE IN, GARBAGE OUT," APPLIES. LIKE ALL OTHER EVIDENCE
IN THE CASE, YOU MAY ACCEPT IT OR REJECT IT IN WHOLE OR IN
PART.

ANY NOTES THAT YOU HAVE TAKEN DURING THIS TRIAL ARE
ONLY AIDS TO YOUR MEMORY. IF YOUR MEMORY DIFFERS FROM
YOUR NOTES, YOU SHOULD RELY ON YOUR MEMORY AND NOT ON

THE NOTES. THE NOTES ARE NOT EVIDENCE. IF YOU HAVE NOT

TAKEN NOTES, YOU SHOULD RELY ON YOUR INDEPENDENT

RECOLLECTION OF THE EVIDENCE AND SHOULD NOT BE UNDULY

INFLUENCED BY THE NOTES OF OTHER JURORS. NOTES ARE NOT

ENTITLED TO ANY GREATER WEIGHT THAN THE RECOLLECTION OR

IMPRESSION OF EACH JUROR ABOUT THE TESTIMONY.

## II.    SPECIFIC INSTRUCTIONS

LET ME NOW DISCUSS THE LAW SPECIFICALLY APPLICABLE TO

THIS CASE.

AS YOU KNOW, THIS ACTION ARISES OUT OF SHARYN ORR'S

USE OF XARELTO. THE JANSSEN AND BAYER DEFENDANTS

MANUFACTURE XARELTO. PLAINTIFFS CONTEND THAT MRS. ORR

SUFFERED A BRAIN HEMORRHAGE, OR BRAIN BLEED, AS A RESULT

OF HER USE OF XARELTO. PLAINTIFFS ALLEGE THAT XARELTO WAS

DEFECTIVE, OR "UNREASONABLY DANGEROUS;" BECAUSE OF THE

DEFENDANTS' FAILURE TO PROVIDE ADEQUATE WARNINGS OR

INSTRUCTIONS TO MRS. SHARYN ORR'S PHYSICIANS, DRS. ST.

MARTIN AND BUI. THEY CLAIM THAT ADEQUATE WARNINGS OR

INSTRUCTIONS WOULD HAVE CAUSED DR. ST. MARTIN NOT TO

PRESCRIBE XARELTO IN THE CASE OF MRS. ORR; AND THEY CLAIM

THAT ADEQUATE WARNINGS OR INSTRUCTIONS WOULD HAVE

CAUSED DR. BUI TO PERFORM EMERGENCY SURGERY SOONER IN THE CASE OF MRS. ORR.

MRS. ORR'S HUSBAND AND THREE CHILDREN, SEEK MONETARY DAMAGES PROXIMATELY CAUSED BY HER INJURIES AND DEATH.

THE DEFENDANTS DENY ALL OF THESE ALLEGATIONS. THEY CONTEND THAT XARELTO'S WARNINGS AND INSTRUCTIONS WERE ADEQUATE AND THAT ANY ALLEGED INADEQUACY IN THE INSTRUCTIONS DID NOT PROXIMATELY CAUSE MRS. ORR'S INJURY AND DEATH. THEY CONTEND XARELTO WAS APPROPRIATELY PRESCRIBED TO MRS. ORR BY HER DOCTOR, DR. ST. MARTIN, FOR STROKE PREVENTION, AND THAT THE BRAIN HEMORRHAGE SHE SUFFERED ON APRIL 24, 2015 DID NOT RESULT FROM HER USE OF XARELTO. FURTHER, THE DEFENDANTS CONTEND THAT THE LABEL WAS APPROVED BY THE FDA AND CONTAINS ACCURATE, SCIENCE-BASED INFORMATION ENABLING DOCTORS TO MAKE AN INFORMED DECISION ABOUT THE BENEFITS AND RISKS OF PRESCRIBING THIS MEDICATION TO THEIR PATIENTS.

THE MERE FACT THAT PLAINTIFFS MAY HAVE BEEN INJURED, STANDING ALONE, DOES NOT PERMIT YOU, THE JURY, TO DRAW ANY

INFERENCE THAT SUCH INJURIES WERE CAUSED BY THE
DEFENDANTS.

THE BURDEN OF PROOF IS ON THE PLAINTIFFS IN A CIVIL
ACTION, SUCH AS THIS ONE, TO PROVE EVERY ESSENTIAL ELEMENT
OF THEIR CLAIM BY A "PREPONDERANCE OF THE EVIDENCE." A
PREPONDERANCE OF THE EVIDENCE MEANS THAT SUCH EVIDENCE,
WHEN CONSIDERED AND COMPARED WITH THAT OPPOSED TO IT,
HAS MORE CONVINCING FORCE AND PRODUCES IN YOUR MINDS A
BELIEF THAT WHAT IS SOUGHT TO BE PROVED IS MORE LIKELY TRUE
THAN NOT TRUE. IN OTHER WORDS, TO ESTABLISH A CLAIM BY A
"PREPONDERANCE OF THE EVIDENCE" MEANS TO PROVE THAT THE
CLAIM IS MORE LIKELY SO THAN NOT SO.

IN DETERMINING WHETHER ANY FACT HAS BEEN PROVED BY A
"PREPONDERANCE OF THE EVIDENCE" IN THIS CASE, YOU MAY,
UNLESS OTHERWISE INSTRUCTED, CONSIDER THE TESTIMONY OF
ALL WITNESSES, REGARDLESS OF WHO MAY HAVE CALLED THEM,
AND ALL EXHIBITS RECEIVED IN EVIDENCE, REGARDLESS OF WHO
MAY HAVE PRODUCED THEM. IF THE PLAINTIFFS FAIL TO ESTABLISH
ANY ESSENTIAL ELEMENT OF THEIR CLAIM BY A PREPONDERANCE
OF THE EVIDENCE, YOU, THE JURY, SHOULD FIND FOR THE

DEFENDANT. THE PLAINTIFFS NEED NOT PRODUCE EVERY POSSIBLE

WITNESS, AND THEY NEED NOT PROVE THEIR CLAIM BEYOND A

REASONABLE DOUBT AS IS NECESSARY IN A CRIMINAL

PROSECUTION. BUT, SPECULATION, MERE POSSIBILITY, OR EVEN

UNSUPPORTED PROBABILITY IS NOT SUFFICIENT TO SUPPORT A

JUDGMENT IN THEIR FAVOR.

LET ME NOW DISCUSS THE LAW APPLICABLE TO THE

PLAINTIFFS' THEORY OF RECOVERY.

### A.   LPLA

THE LAW APPLICABLE TO THIS CASE IS THE LAW OF

LOUISIANA. IN LOUISIANA, A PRODUCTS LIABILITY ACTION SUCH AS

THIS ONE IS GOVERNED BY THE LOUISIANA PRODUCTS LIABILITY

ACT OR "LPLA." THE LPLA PROVIDES THAT THE MANUFACTURER OF

A PRODUCT SHALL BE LIABLE TO A CLAIMANT FOR DAMAGE

PROXIMATELY CAUSED BY ONE OR MORE CHARACTERISTICS OF THE

PRODUCT THAT RENDER IT UNREASONABLY DANGEROUS. ONE OF

THE WAYS IN WHICH A DRUG CAN BE UNREASONABLY DANGEROUS

IS BY FAILING TO INCLUDE PROPER WARNINGS OR INSTRUCTIONS

NOT OTHERWISE KNOWN TO PHYSICIANS. IN ORDER TO RECOVER,

THE PLAINTIFFS IN THIS CASE MUST SHOW THAT (1) THEIR DAMAGES

WERE PROXIMATELY CAUSED BY DEFENDANTS' FAILURE TO

PROVIDE ADEQUATE WARNINGS AND/OR INSTRUCTIONS ABOUT ONE

OR MORE CHARACTERISTICS OF THE PRODUCT THAT RENDER IT

UNREASONABLY DANGEROUS, AND THAT (2) THEIR DAMAGES

AROSE FROM A REASONABLY ANTICIPATED USE OF THE PRODUCT.

IT HAS BEEN STIPULATED AND AGREED UPON IN THIS CASE,

AND THEREFORE YOU MAY CONSIDER IT TO BE ESTABLISHED, THAT

BOTH THE JANSSEN AND BAYER DEFENDANTS IN THIS CASE ARE

MANUFACTURERS OF XARELTO WITHIN THE MEANING OF THE LPLA.

WHERE THERE IS A RELATIONSHIP BETWEEN MANUFACTURERS, AND

A PLAINTIFF IS INJURED BY A PRODUCT THAT MAY BE DEEMED

"MANUFACTURED" BY MORE THAN ONE MANUFACTURER, THESE

MANUFACTURERS ARE COLLECTIVELY RESPONSIBLE TO THE

PLAINTIFF. XARELTO IS THE BRAND NAME OF RIVAROXABAN.

XARELTO IS A PRESCRIPTION DRUG. THAT IS TO SAY, A MEDICAL

PROVIDER OR DOCTOR MUST PRESCRIBE THE DRUG.

A "REASONABLY ANTICIPATED USE" OF A PRODUCT MEANS A

USE OR HANDLING OF A PRODUCT THAT THE MANUFACTURER

SHOULD REASONABLY EXPECT, IN THIS CASE BY A PRESCRIBING OR

TREATING PHYSICIAN.

### B.     FAILURE TO WARN AND INSTRUCT

I WILL NOW DISCUSS WITH YOU THE LAW GOVERNING THE

PLAINTIFFS' CLAIM FOR FAILURE TO WARN AND/OR INSTRUCT.

IN ORDER TO DECIDE THE PLAINTIFFS' FAILURE-TO-WARN-

AND/OR-INSTRUCT CLAIM, YOU MUST DETERMINE WHETHER THE

PLAINTIFFS HAVE PROVEN BY A PREPONDERANCE OF THE EVIDENCE

THAT THE DEFENDANTS FAILED TO ADEQUATELY WARN AND/OR

PROPERLY INSTRUCT MRS. ORR'S PRESCRIBING AND TREATING

PHYSICIANS, DRS. ST. MARTIN AND BUI, ABOUT THE PROPER USE OF

XARELTO AND, IF SO, WHETHER THE DEFENDANTS' FAILURE TO

WARN OR INSTRUCT WAS A PROXIMATE CAUSE OF THE PLAINTIFFS'

INJURIES.

PRESCRIPTION DRUGS OFTEN CAUSE UNWANTED SIDE EFFECTS

DESPITE THE FACT THAT THEY HAVE BEEN CAREFULLY DESIGNED

AND PROPERLY MANUFACTURED. THE LAW DEEMS SUCH PRODUCTS

"UNAVOIDABLY UNSAFE," BUT THEY ARE NOT DEFECTIVE, NOR

UNREASONABLY DANGEROUS, IF THEY INCLUDE ADEQUATE

INSTRUCTIONS FOR THE SAFE USE OF THE DRUG.  IN PROVIDING

SUCH ADEQUATE INSTRUCTIONS, MANUFACTURERS MUST GIVE DUE

CONSIDERATION TO THE LIKELIHOOD OF HARM IN THE USE OF THE

DRUG, AND THE SERIOUSNESS OF CONSEQUENCES IN FAILING TO
GIVE CLEAR INSTRUCTIONS TO DOCTORS.

PLAINTIFFS CLAIM THAT XARELTO IS UNREASONABLY
DANGEROUS BECAUSE OF INADEQUATE WARNINGS OR
INSTRUCTIONS ABOUT ITS POTENTIAL RISKS AND THE
AVAILABILITY AND SIGNIFICANCE OF A PT TEST IN EMERGENCY
CIRCUMSTANCES TO MINIMIZE THESE RISKS.

IN ORDER TO BE SUCCESSFUL, PLAINTIFFS MUST PROVE BY A
PREPONDERANCE OF THE EVIDENCE THAT: (1) THE PRODUCT HAD A
POTENTIALLY DAMAGE-CAUSING CHARACTERISTIC OR
CHARACTERISTICS; (2) THE DEFENDANTS FAILED TO USE
REASONABLE CARE TO PROVIDE AN ADEQUATE WARNING OR
INSTRUCTION THAT WAS NOT OTHERWISE KNOWN TO THE
PRESCRIBING OR TREATING PHYSICIAN ABOUT SUCH
CHARACTERISTIC OR CHARACTERISTICS, THEIR ASSOCIATED
DANGER, AND HOW TO MINIMIZE OR AVOID THE ASSOCIATED RISK;
AND (3) THE INJURY WHICH MRS. ORR SUFFERED WAS PROXIMATELY
CAUSED BY THE INADEQUATE WARNING OR INSTRUCTION.

AN "ADEQUATE WARNING" UNDER THE LPLA IS DEFINED AS A
"WARNING OR INSTRUCTION THAT WOULD LEAD AN ORDINARY

REASONABLE USER OR HANDLER OF A PRODUCT [SUCH AS A PRESCRIBING OR TREATING PHYSICIAN] TO CONTEMPLATE THE DANGER IN USING OR HANDLING THE PRODUCT AND EITHER TO DECLINE TO USE OR HANDLE THE PRODUCT OR, IF POSSIBLE, TO USE OR HANDLE THE PRODUCT IN SUCH A MANNER AS TO AVOID THE DAMAGE FOR WHICH THE CLAIM IS MADE." THE LACK OF ADEQUATE INSTRUCTIONS FOR SAFE USE OF THE PRODUCT MAY INCLUDE INADEQUACIES IN RECOMMENDED ASSESSMENT, TESTING, OR SCREENING TECHNIQUES.

UNDER THE APPLICABLE LAW, A PRESCRIPTION DRUG MANUFACTURER ONLY HAS A DUTY TO WARN AND INSTRUCT A "LEARNED INTERMEDIARY," SUCH AS THE PRESCRIBING OR TREATING PHYSICIAN, OF THE POTENTIAL RISKS OR DANGERS INHERENT IN A PRODUCT. IT DOES NOT HAVE A DUTY TO WARN OR INSTRUCT THE CONSUMER DIRECTLY. THIS IS BECAUSE PHYSICIANS ARE GENERALLY IN A SUPERIOR POSITION TO EVALUATE THE WARNING AND INSTRUCTION AND TO IMPART SUCH WARNING AND INSTRUCTION TO THE PATIENT, AND CAN PROVIDE AN INDEPENDENT MEDICAL DECISION AS TO WHETHER USE OF THE DRUG IS APPROPRIATE FOR A PARTICULAR PATIENT. ALTHOUGH A

PRESCRIPTION DRUG MANUFACTURER'S DUTY TO WARN OF AND INSTRUCT ABOUT THE POTENTIAL RISKS OF ITS PRODUCT IS DIRECTED ONLY TO THE PHYSICIAN, THE MANUFACTURER IS DIRECTLY LIABLE TO THE PATIENT FOR BREACH OF SUCH DUTY.

IN YOUR CONSIDERATION OF "LEARNED INTERMEDIARIES," YOU ARE TO CONSIDER NOT ONLY THE PLAINTIFFS' PRESCRIBING PHYSICIAN, DR. ST. MARTIN, BUT ALSO HER TREATING PHYSICIAN, DR. BUI. THE MANUFACTURER'S DUTY TO PROVIDE INFORMATION ABOUT A DRUG EXTENDS TO NON-PRESCRIBING HEALTHCARE PROVIDERS SUCH AS DR. BUI BECAUSE THEY "ARE IN POSITIONS TO ACT ON SUCH INFORMATION SO AS TO REDUCE OR PREVENT INJURIES TO PATIENTS."

WHEN A PRESCRIPTION DRUG MANUFACTURER PROVIDES A WARNING OR INSTRUCTION, IT MAY REASONABLY ASSUME THAT IT WILL BE READ OR KNOWN AND HEEDED BY THE PRESCRIBER OR TREATER. IF A MANUFACTURER WERE TO PROVIDE AN ADEQUATE WARNING OR INSTRUCTION FOR THE SAFE USE OF A PRESCRIPTION DRUG, THE LAW ALLOWS FOR WHAT'S CALLED A "HEEDING PRESUMPTION." THIS MEANS YOU MAY ASSUME THAT A PRESCRIBING OR TREATING PHYSICIAN WOULD HAVE READ AND

FOLLOWED (OR "HEEDED") SUCH A WARNING OR INSTRUCTION HAD IT BEEN PROVIDED. THAT PRESUMPTION, HOWEVER, MAY BE OVERCOME BY EVIDENCE THAT A DIFFERENT WARNING OR INSTRUCTION WOULD NOT HAVE MADE A DIFFERENCE. IN OTHER WORDS, IT WOULD HAVE BEEN FUTILE UNDER THE CIRCUMSTANCES.

IT IS A PHYSICIAN'S DUTY TO REMAIN ABREAST OF A DRUG'S CHARACTERISTICS AND TO TAKE INTO ACCOUNT THE INFORMATION CONTAINED IN A PRESCRIPTION DRUG'S LABEL. THE DRUG MANUFACTURER MAY REASONABLY ASSUME THAT THE PRESCRIBER OR TREATER WILL APPLY THE SAME KNOWLEDGE, PROFESSIONAL EXPERTISE, AND GOOD JUDGMENT THAT A REASONABLE PHYSICIAN WOULD APPLY IN USING THE PRODUCT. PROVIDING AN ADEQUATE WARNING OR ADEQUATE INSTRUCTIONS TO THE PRESCRIBING OR TREATING DOCTOR RELIEVES THE MANUFACTURER OF ITS DUTY TO WARN THE PATIENT REGARDLESS OF HOW OR IF THE PRESCRIBER OR TREATER WARNS THE PATIENT.

A WARNING OR INSTRUCTION IS INADEQUATE IF THE MANUFACTURER FAILS TO GIVE THE PRESCRIBER OR TREATER WARNING OF OR INSTRUCTIONS ABOUT A PARTICULAR RISK THAT WAS KNOWN OR KNOWABLE TO THE MANUFACTURER IN LIGHT OF

THE GENERALLY-RECOGNIZED AND PREVAILING BEST SCIENTIFIC AND MEDICAL KNOWLEDGE AVAILABLE AT THE TIME OF MANUFACTURE AND DISTRIBUTION. THE DRUG MANUFACTURER HAS A DUTY TO TAKE REASONABLE PRECAUTIONS TO PROVIDE AN ADEQUATE WARNING OR INSTRUCTION IN ITS LABEL THAT WOULD PLACE A PRESCRIBER OR TREATER ON GUARD AGAINST THE HARMFUL CONSEQUENCES THAT MIGHT RESULT FROM USE OF THE PRODUCT. THE LABEL MUST CONTAIN LANGUAGE THAT IS ADEQUATE TO REASONABLY INFORM THE PRESCRIBING OR TREATING PHYSICIAN ABOUT HOW TO USE THE PRODUCT IN SUCH A MANNER AS TO AVOID THE DAMAGE FOR WHICH THE CLAIM IS MADE.

THE MANUFACTURER MAY COMMUNICATE A WARNING OR INSTRUCTION THROUGH A LABEL OR PACKAGE INSERT, OR OTHER COMMUNICATIONS OR LITERATURE. IN DETERMINING THE SCOPE OF A MANUFACTURER'S DUTY TO WARN OF DANGERS AND PROVIDE INSTRUCTIONS ASSOCIATED WITH THE USE OF ITS PRODUCT, THE MANUFACTURER IS HELD TO THE KNOWLEDGE AND SKILL OF AN EXPERT IN ITS FIELD. THE MANUFACTURER MUST KEEP UP WITH SCIENTIFIC KNOWLEDGE, DISCOVERIES, AND ADVANCES AND IS

PRESUMED TO KNOW WHAT COULD BE LEARNED BY DOING SO. THIS

DUTY IS CONTINUING. IF THE MANUFACTURER LEARNS OF A

CHARACTERISTIC OR DANGER THAT MAY CAUSE INJURY AFTER ITS

PRODUCT IS ON THE MARKET, THE MANUFACTURER HAS A

CONTINUING DUTY TO USE REASONABLE CARE TO PROVIDE

ADEQUATE WARNING OR INSTRUCTIONS TO PRESCRIBERS AND

TREATERS CONCERNING SUCH LATER-DISCOVERED MATTERS. THAT

IS TO SAY, UNDER THE LAW (INCLUDING FEDERAL REGULATIONS)

APPLICABLE TO THIS CASE, DRUG MANUFACTURERS ARE

RESPONSIBLE TO DRAFT THE INITIAL LABEL FOR THEIR PRODUCT,

AND TO ASSURE THAT THE LABEL CONTINUES TO REFLECT THE

CURRENT KNOWLEDGE CONCERNING THE RISKS POSED BY THE

DRUG.

WHERE THE DEFENDANTS ARE SHOWN TO HAVE FAILED TO

ADEQUATELY WARN OR INSTRUCT A PRESCRIBING OR TREATING

DOCTOR ABOUT A DRUG, THE LEARNED INTERMEDIARY DOCTRINE

DOES NOT RELIEVE THE MANUFACTURER OF LEGAL

RESPONSIBILITY. IN OTHER WORDS, IN THAT CIRCUMSTANCE THE

PRESCRIBING OR TREATING DOCTOR CANNOT BE SAID TO BE A

"LEARNED" INTERMEDIARY BECAUSE HE OR SHE WAS NOT FULLY INFORMED BY THE DEFENDANTS.

IN ORDER TO PROVE THEIR FAILURE-TO-WARN-OR-INSTRUCT CLAIM, THE PLAINTIFFS MUST NOT ONLY PROVE THAT DEFENDANTS' WARNINGS OR INSTRUCTIONS REGARDING XARELTO WERE INADEQUATE, BUT ALSO THAT SUCH INADEQUACY AFFECTED THE DECISION OR DECISIONS OF THE PRESCRIBING OR TREATING PHYSICIANS WITH REGARDS TO XARELTO. IN OTHER WORDS, YOU MUST DETERMINE IF DRS. ST. MARTIN OR BUI WOULD HAVE ALTERED THEIR PRESCRIBING OR TREATING DECISION OR BEHAVIOR AND MRS. ORR WOULD NOT HAVE SUFFERED HER BLEED OR DEATH, HAD THE DOCTORS BEEN PROVIDED WITH FULL AND ADEQUATE INSTRUCTIONS ABOUT THE CHARACTERISTICS OF THE DRUG AND THE UTILITY OF THE PT TEST.

IF THE GREATER WEIGHT OF THE EVIDENCE DOES NOT SUPPORT THE PLAINTIFFS' CLAIM, YOUR VERDICT SHOULD BE FOR THE DEFENDANTS. IF THE GREATER WEIGHT OF THE EVIDENCE, HOWEVER, DOES SUPPORT THE PLAINTIFFS' CLAIM, THEN YOUR VERDICT SHOULD BE FOR THE PLAINTIFFS.

## C.    LABELING AND FEDERAL REGULATIONS

AS I PREVIOUSLY MENTIONED, XARELTO IS A BRAND-NAME
DRUG. THE FDA APPROVED BOTH XARELTO AND ITS LABEL. YOU
MAY CONSIDER THIS FACT IN WEIGHING THE EVIDENCE IN THIS
CASE IN DETERMINING THE LIABILITY OF THE DEFENDANTS.

HOWEVER, FDA APPROVAL, ALTHOUGH RELEVANT, DOES NOT
IN AND OF ITSELF ABSOLVE THE DEFENDANTS OF ALL LIABILITY,
NOR DOES IT ESTABLISH THAT THE WARNINGS OR INSTRUCTIONS
PROVIDED WITH THE DRUG WERE ADEQUATE UNDER THE
STANDARDS OF LOUISIANA LAW. IN FACT, ANY ACTION OR
INACTION ON THE PART OF THE FDA, THOUGH RELEVANT, DOES NOT
FORECLOSE A CLAIM UNDER LOUISIANA LAW. THEREFORE, EVEN IF
THE DEFENDANTS HAVE MET ALL THE APPROPRIATE MINIMUM
STANDARDS FOR FDA APPROVAL AND GOVERNMENTAL
REGULATIONS AND REQUIREMENTS TO OBTAIN FDA APPROVAL,
THIS COMPLIANCE AND APPROVAL, THOUGH RELEVANT, IS NOT
SUFFICIENT TO CONCLUSIVELY ESTABLISH THAT THE DEFENDANTS
HAVE TAKEN THE STEPS NECESSARY UNDER THE LAW APPLICABLE
TO THIS CASE. MORE SPECIFICALLY, IF YOU FIND THAT THE
DEFENDANTS FAILED TO APPRISE PRESCRIBING OR TREATING
PHYSICIANS OF APPROPRIATE TESTING TO ADDRESS RISKS THAT

THEY KNEW OR SHOULD HAVE KNOWN PRIOR TO FDA APPROVAL OR

BECAME KNOWN OR SHOULD HAVE BECOME KNOWN AFTER THE

FDA APPROVED XARELTO'S LABEL, THEN FDA APPROVAL OF THE

DRUG, THOUGH RELEVANT, IS NOT CONCLUSIVE.

SPECIFIC FEDERAL REGULATIONS AUTHORIZE THE

MANUFACTURER OF A DRUG WHICH HAS BEEN APPROVED BY THE

FDA TO "ADD OR STRENGTHEN…WARNING, PRECAUTION, OR

ADVERSE REACTION" INFORMATION ABOUT THE DRUG IN THE

DRUG'S LABEL, AND TO DO SO WITHOUT THE NEED FOR PRIOR FDA

APPROVAL. THE FDA, HOWEVER, RETAINS THE POWER TO REMOVE

SUCH LANGUAGE.

### D.   CAUSATION

IN ORDER FOR PLAINTIFFS TO PREVAIL ON THEIR CLAIMS, THEY

MUST ESTABLISH THAT THE INADEQUATE INSTRUCTION OR

WARNING, WAS THE "PROXIMATE CAUSE" OF SHARYN ORR'S

ALLEGED INJURIES.

PROXIMATE CAUSE MEANS THE EFFICIENT OR DIRECT CAUSE.

THE LAW DEFINES PROXIMATE CAUSE AS SOMETHING THAT

PRODUCES A NATURAL CHAIN OF EVENTS WHICH, IN THE END,

BRINGS ABOUT THE INJURY. IN OTHER WORDS, PROXIMATE CAUSE IS

THE CAUSE WITHOUT WHICH THE INJURY WOULD NOT HAVE

OCCURRED. PROXIMATE CAUSE REQUIRES PROOF OF BOTH

CAUSATION-IN-FACT AND LEGAL CAUSE.

CAUSATION-IN-FACT IS PROVED BY ESTABLISHING THAT A

PLAINTIFF'S INJURY WOULD NOT HAVE OCCURRED "BUT FOR" THE

DEFENDANTS' ACTIONS. IN ORDER TO PROVE CAUSE-IN-FACT IN THIS

CASE, THE PLAINTIFFS MUST SHOW TO A REASONABLE DEGREE OF

MEDICAL PROBABILITY BOTH THAT XARELTO CAUSED MRS. ORR'S

BLEED AND THAT THE FAILURE TO INSTRUCT DRS. ST. MARTIN

AND/OR BUI WAS THE CAUSE OF MRS. ORR'S INJURY.

LEGAL CAUSE IS PROVED BY ESTABLISHING FORESEEABILITY.

THE TEST OF FORESEEABILITY IS WHETHER SOME INJURY TO

ANOTHER IS THE NATURAL AND PROBABLE CONSEQUENCE OF THE

COMPLAINED OF CONDUCT. THE LAW REQUIRES ONLY REASONABLE

FORESIGHT. IT IS NOT NECESSARY FOR THE PLAINTIFFS TO

DEMONSTRATE THAT THE DEFENDANT SHOULD HAVE FORESEEN

THE PARTICULAR EVENT WHICH OCCURRED, BUT MERELY THAT THE

DEFENDANT SHOULD HAVE FORESEEN THAT ITS ACTIONS WOULD

PROBABLY CAUSE INJURY TO SOMEONE. THE PLAINTIFFS PROVE

LEGAL CAUSE BY ESTABLISHING THAT THE INJURY IN QUESTION

OCCURRED AS A NATURAL AND PROBABLE CONSEQUENCE OF THE

DEFENDANTS' ACTIONS OR INACTIONS.

PROXIMATE CAUSE DOES NOT MEAN THE SOLE CAUSE. THE

DEFENDANTS' CONDUCT CAN BE A PROXIMATE CAUSE IF IT WAS AT

LEAST ONE OF THE DIRECT, CONCURRING CAUSES OF THE ALLEGED

INJURY. HOWEVER, PLAINTIFFS MUST SHOW THAT DEFENDANTS'

CONDUCT WAS A SUBSTANTIAL CONTRIBUTING FACTOR IN

BRINGING ABOUT THE RESULT. IN OTHER WORDS, IT IS NOT

NECESSARY FOR PLAINTIFFS TO NEGATE ALL OTHER CONTRIBUTING

FACTORS OR CAUSES OF MRS. ORR'S INJURIES, PROVIDED THEY

SHOW THAT DEFENDANTS' FAILURE TO PROVIDE ADEQUATE

INSTRUCTIONS IN THE XARELTO LABEL SUBSTANTIALLY

CONTRIBUTED TO HER INJURIES. WHERE TWO OR MORE POSSIBLE

CAUSES FOR AN INJURY ARE IDENTIFIED, PLAINTIFFS MUST

ESTABLISH WITH REASONABLE PROBABILITY THAT MRS. ORR'S

INJURY RESULTED FROM A CAUSE FOR WHICH DEFENDANTS WOULD

BE LIABLE. MOREOVER, PLAINTIFFS MUST PROFFER A COMPETENT

MEDICAL EXPERT TO TESTIFY TO A REASONABLE DEGREE OF

MEDICAL PROBABILITY THAT XARELTO WAS A PROXIMATE CAUSE

OF MRS. ORR'S INJURIES.

TO RECOVER FOR THE FAILURE-TO-WARN-OR-INSTRUCT CLAIM,
PLAINTIFFS MUST PROVE BY A PREPONDERANCE OF THE EVIDENCE
THAT AN INADEQUATE INSTRUCTION ITSELF—IN ADDITION TO THE
MEDICATION—WAS THE PROXIMATE CAUSE OF MRS. ORR'S INJURY.
IN OTHER WORDS, PLAINTIFFS MUST PROVE BY A PREPONDERANCE
OF THE EVIDENCE THAT, IF AN ADEQUATE WARNING OR
INSTRUCTION HAD ACCOMPANIED XARELTO, THEN DRS. ST. MARTIN
OR BUI WOULD HAVE ALTERED THEIR PRESCRIBING OR TREATING
DECISION OR BEHAVIOR AND MRS. ORR WOULD NOT HAVE
SUFFERED HER INJURY AND DEATH.

### E.   DAMAGES

NOW LET ME SPEAK WITH YOU ABOUT DAMAGES. "DAMAGES"
IS THE TERM USED TO INDICATE IN DOLLARS AND CENTS WHAT, IF
ANY, MONETARY LOSSES THE PLAINTIFFS HAVE SUSTAINED.

IF YOU FIND THAT PLAINTIFFS HAVE PROVEN THEIR CLAIM
AGAINST DEFENDANTS BY A PREPONDERANCE OF THE EVIDENCE,
YOU MUST THEN DETERMINE THE AMOUNT OF DAMAGES, IF ANY, TO
WHICH THEY ARE ENTITLED. YOU SHOULD NOT INTERPRET THE
FACT THAT I AM GIVING YOU INSTRUCTIONS ABOUT PLAINTIFFS'
DAMAGES AS AN INDICATION IN ANY WAY THAT I BELIEVE THAT
PLAINTIFFS SHOULD, OR SHOULD NOT, WIN THIS CASE. IT IS YOUR

TASK FIRST TO DECIDE WHETHER PLAINTIFFS SUFFERED DAMAGES AS A RESULT OF DEFENDANTS' FAULT. I AM INSTRUCTING YOU ON DAMAGES ONLY SO THAT YOU WILL HAVE GUIDANCE IN THE EVENT YOU DECIDE THAT PLAINTIFFS PROVED THAT THEY SUSTAINED DAMAGES AS A RESULT OF THE FAULT OF DEFENDANTS AND THAT THEY ARE ENTITLED TO RECOVER MONEY FROM DEFENDANTS. PLAINTIFFS MUST PROVE THEIR DAMAGES WITH REASONABLE CERTAINTY AND CANNOT BE AWARDED ON THE BASIS OF SPECULATION AND CONJECTURE.

IF YOU FIND THAT DEFENDANTS ARE LIABLE TO PLAINTIFFS, THEN YOU MUST DETERMINE AN AMOUNT THAT IS FAIR COMPENSATION FOR PLAINTIFFS' DAMAGES. THESE DAMAGES ARE CALLED COMPENSATORY DAMAGES. THE PURPOSE OF COMPENSATORY DAMAGES IS TO MAKE PLAINTIFFS WHOLE–THAT IS, TO COMPENSATE PLAINTIFFS FOR THE DAMAGES THEY SUFFERED. UNDER THE APPLICABLE LAW, YOU MAY NOT AWARD VINDICTIVE, PUNITIVE, OR EXEMPLARY DAMAGES IN THIS CASE; ONLY COMPENSATORY DAMAGES MAY BE AWARDED.

YOU MAY AWARD COMPENSATORY DAMAGES ONLY FOR INJURIES THAT PLAINTIFFS PROVE WERE CAUSED BY DEFENDANTS' WRONGFUL CONDUCT.

THE DAMAGES YOU AWARD MUST BE FAIR COMPENSATION FOR PLAINTIFFS' DAMAGES, NO MORE AND NO LESS. COMPENSATORY DAMAGES ARE NOT ALLOWED AS PUNISHMENT AND CANNOT BE IMPOSED OR INCREASED TO PENALIZE DEFENDANTS. YOU SHOULD NOT AWARD COMPENSATORY DAMAGES FOR SPECULATIVE INJURIES, BUT ONLY FOR THOSE INJURIES PLAINTIFFS ACTUALLY SUSTAINED.

IF YOU DECIDE TO AWARD COMPENSATORY DAMAGES, YOU SHOULD BE GUIDED BY DISPASSIONATE COMMON SENSE. THAT IS TO SAY, YOU SHOULD NOT BE AFFECTED BY SYMPATHY, COMPASSION, PREJUDICE, OR BIAS. COMPUTING DAMAGES MAY BE DIFFICULT, BUT YOU MUST NOT LET THAT DIFFICULTY LEAD YOU TO ENGAGE IN ARBITRARY GUESSWORK. ON THE OTHER HAND, THE LAW DOES NOT REQUIRE PLAINTIFFS TO PROVE THE AMOUNT OF THEIR LOSSES WITH MATHEMATICAL PRECISION, BUT ONLY WITH AS MUCH DEFINITENESS AND ACCURACY AS THE CIRCUMSTANCES PERMIT.

YOU MUST USE SOUND DISCRETION IN FIXING AN AWARD OF DAMAGES, DRAWING REASONABLE INFERENCES WHERE YOU FIND THEM APPROPRIATE FROM THE FACTS AND CIRCUMSTANCES IN EVIDENCE.

YOU SHOULD CONSIDER THE FOLLOWING ELEMENTS OF DAMAGES TO THE EXTENT YOU FIND THAT PLAINTIFFS HAVE ESTABLISHED THEM:

1) MRS. ORR'S PAIN, SUFFERING AND ANGUISH PRIOR TO HER DEATH;

2) THE MEDICAL BILLS FOR TREATING MRS. ORR PRIOR TO HER DEATH, HER FUNERAL EXPENSES, AND HER BURIAL EXPENSES;

3) JOSEPH ORR, JR.'S LOSS OF HIS WIFE'S FINANCIAL SUPPORT, MATERIAL SERVICES, LOVE, AFFECTION AND SOCIETY;

4) KELLI ORR WALKER'S LOSS OF HER MOTHER'S LOVE, AFFECTION AND SOCIETY;

5) KIM ORR DEAGANO'S LOSS OF HER MOTHER'S LOVE, AFFECTION AND SOCIETY;

6) JOSEPH ORR, III'S LOSS OF HIS MOTHER'S LOVE, AFFECTION, AND SOCIETY; AND

7) THE LOSS OF MRS. ORR'S CHANCE OF SURVIVAL.

SOME OF THESE DAMAGES, SUCH AS MENTAL OR PHYSICAL PAIN AND SUFFERING, ARE INTANGIBLE THINGS ABOUT WHICH NO EVIDENCE OF VALUE IS REQUIRED. IN AWARDING THESE DAMAGES, YOU ARE NOT DETERMINING VALUE, BUT YOU SHOULD AWARD AN AMOUNT THAT WILL FAIRLY COMPENSATE PLAINTIFFS FOR THEIR INJURIES. THERE IS NO EXACT STANDARD FOR FIXING THE COMPENSATION TO BE AWARDED FOR THESE ELEMENTS OF DAMAGE. ANY AWARD THAT YOU MAKE MUST BE FAIR IN LIGHT OF THE EVIDENCE.

**SURVIVAL ACTION**: IN AN ACTION SUCH AS THIS ONE, LOUISIANA LAW PERMITS THESE PLAINTIFFS AS THE SURVIVING BENEFICIARIES OF THE DECEASED TO PRESENT EVIDENCE OF CERTAIN LOSSES THAT MAY HAVE BEEN SUFFERED BY THE DECEASED PRIOR TO DEATH AND FOR WHICH YOU MAY AWARD DAMAGES. THESE DAMAGES MAY INCLUDE CONSCIOUS PAIN AND SUFFERING BY THE DECEASED PRIOR TO DEATH, AS WELL AS ANY MEDICAL AND FUNERAL EXPENSES WHICH MAY HAVE BEEN INCURRED. PLAINTIFFS HAVE THE BURDEN OF DEMONSTRATING THAT THE DECEDENT WAS ALIVE AND CONSCIOUS AFTER HER

INJURY, AT LEAST FOR A BRIEF INTERVAL FOLLOWING THE INCIDENT.

**WRONGFUL DEATH**: IN AN ACTION SUCH AS THIS ONE, LOUISIANA LAW PERMITS THESE PLAINTIFFS AS THE SURVIVING BENEFICIARIES OF THE DECEASED TO PRESENT EVIDENCE OF THE LOSS WHICH THEY HAVE SUFFERED AS A RESULT OF THE DEATH AND FOR WHICH YOU MAY AWARD DAMAGES TO THEM. IN ADDITION TO LOSS OF FUTURE ECONOMIC SUPPORT, THESE DAMAGES MAY INCLUDE LOSS OF THE LOVE, AFFECTION AND COMPANIONSHIP OF THE DECEDENT, AND THE GRIEF AND ANGUISH OF THE BENEFICIARY IN QUESTION. IF YOU DECIDE TO AWARD SUCH DAMAGES, YOU SHOULD SPECIFY AS TO EACH BENEFICIARY INDIVIDUALLY A SINGLE SUM FOR THE LOSS OF LOVE, AFFECTION AND COMPANIONSHIP OF THE DECEDENT, AND THE GRIEF AND ANGUISH OF THAT SURVIVOR. THE AWARDS NEED NOT BE THE SAME FOR EACH BENEFICIARY.

**MENTAL ANGUISH:** THE LAW RECOGNIZES THAT PLAINTIFFS MAY SUFFER MENTAL DISTRESS AND ANGUISH AS A RESULT OF AN INCIDENT IN ADDITION TO PHYSICAL PAIN AND SUFFERING. YOU ARE PERMITTED TO CONSIDER SUCH CONSEQUENCES AS A PART OF

THE GENERAL DAMAGES WHICH YOU MAY AWARD. BY "MENTAL DISTRESS AND ANGUISH," I MEAN SUBSTANTIAL WORRY OR CONCERN, GRIEF AND THE LIKE.

**LOSS OF CONSORTIUM:** "LOSS OF CONSORTIUM" IS THE TERM WHICH THE LAW USES TO DESCRIBE THE LOSS OF LOVE, COMPANIONSHIP, COMFORT, AND SERVICES WHICH A FAMILY MEMBER MIGHT HAVE PROVIDED IF SHE HAD NOT BEEN INJURED. YOU MAY CONSIDER THE FOLLOWING FACTORS IN MAKING THIS DETERMINATION: LOSS OF LOVE AND AFFECTION, LOSS OF COMPANIONSHIP AND MORAL SUPPORT, DECREASED SEXUAL RELATIONS, PLAINTIFF'S DECREASED ABILITY TO PERFORM HOUSEHOLD SERVICES, AND DECREASED AID AND ASSISTANCE IN THE FAMILY UNIT.

IN THE EVENT YOU FIND THAT THE PLAINTIFF IS ENTITLED TO RECEIVE AN AWARD FOR MENTAL AND/OR PHYSICAL PAIN AND SUFFERING, I INSTRUCT YOU THAT SUCH AN AWARD IS NOT SUBJECT TO INCOME TAX; NEITHER THE STATE NOR FEDERAL GOVERNMENT WILL TAX IT. THEREFORE, YOU SHOULD DETERMINE THE AMOUNT THAT PLAINTIFFS ARE ENTITLED TO RECEIVE WITHOUT CONSIDERING THE EFFECT OF TAXES UPON IT.

**FUTURE WAGE LOSS OR LOSS OF EARNING CAPACITY**:

THE AMOUNT OF DAMAGES FOR LOSS OF FUTURE WAGES OR

DIMINISHED EARNING CAPACITY CANNOT BE CALCULATED WITH

MATHEMATICAL CERTAINTY. BY ITS NATURE, THESE DAMAGES

DEAL WITH THE FUTURE AND NO ONE CAN BE CERTAIN OF WHAT

THE FUTURE WILL BRING. HOWEVER, THEY MUST BE BASED ON

EVIDENCE AND NOT MERE SPECULATION. DIMINISHED EARNING

CAPACITY REFLECTS THE INJURED PARTY'S ABILITY TO EARN

MONEY IN THE FUTURE, RATHER THAN WHAT SHE ACTUALLY

EARNED IN THE PAST. IN DETERMINING SUCH AN AWARD, YOU MAY

CONSIDER MRS. ORR'S PHYSICAL CONDITION BEFORE AND AFTER

THIS INCIDENT, HER WORK RECORD, HER EARNINGS IN PRIOR YEARS,

THE LIKELIHOOD THAT SHE WOULD HAVE EARNED SIMILAR

AMOUNTS IN THE REMAINDER OF HER WORK LIFE, AMOUNTS THAT

SHE WOULD HAVE SPENT ON HERSELF, AND SIMILAR FACTORS.

SINCE, IF YOU MAKE SUCH AN AWARD, PLAINTIFFS WOULD BE

RECEIVING TODAY SUMS OF MONEY THAT OTHERWISE THEY WOULD

ONLY RECEIVE OVER A NUMBER OF YEARS IN THE FUTURE, YOU

MUST REDUCE IT TO PRESENT VALUE BY CONSIDERING THE

INTEREST THAT THE PLAINTIFF COULD EARN ON THE AMOUNT OF

THE AWARD IF HE MADE A RELATIVELY RISK-FREE INVESTMENT. THE REASON WHY YOU MUST MAKE THIS REDUCTION IS BECAUSE AN AWARD OF AN AMOUNT REPRESENTING FUTURE LOSS OF EARNINGS OR EARNING CAPACITY IS MORE VALUABLE TO THE PLAINTIFF IF THEY RECEIVED IT TODAY THAN IF THEY RECEIVE IT IN THE FUTURE. IT IS MORE VALUABLE BECAUSE THE PLAINTIFF CAN EARN INTEREST ON IT FOR THE PERIOD OF TIME BETWEEN THE DATE OF THE AWARD AND THE DATE ON WHICH SHE WOULD INCUR THE FUTURE EXPENSE. IF YOU MAKE SUCH AN AWARD, YOU SHOULD LIST THIS "REDUCED" FIGURE AS YOUR AWARD FOR FUTURE WAGE LOSS.

**MEDICAL EXPENSES:** PLAINTIFFS MAY RECOVER PAST EXPENSES IF THEY ESTABLISHES THAT THEY INCURRED PAST MEDICAL EXPENSES IN GOOD FAITH AS A RESULT OF MRS. ORR'S INJURY.

**LOSS CHANCE OF SURVIVAL**: IF YOU FIND BY A PREPONDERANCE OF THE EVIDENCE THAT SHARYN ORR'S DEATH WAS NOT PROXIMATELY CAUSED BY DEFENDANTS' FAILURE TO WARN OR INSTRUCT, THEN YOU MAY CONSIDER PLAINTIFFS' CLAIMS FOR DAMAGES BASED UPON WHAT THE LAW CALLS THE "LOSS OF A

CHANCE OF SURVIVAL." UNDER LOUISIANA LAW, THIS MEANS THE

LOSS OF A LESS-THAN-EVEN CHANCE OF SURVIVAL. IN THEIR CLAIM

FOR DAMAGES DUE TO THE LOSS OF A CHANCE OF MRS. ORR'S

SURVIVAL, PLAINTIFFS MUST PROVE BY A PREPONDERANCE OF THE

EVIDENCE THAT INADEQUATE WARNINGS AND INSTRUCTIONS FOR

THE USE OF XARELTO CAUSED OR SUBSTANTIALLY CONTRIBUTED

TO THE LOSS OF A CHANCE THAT MRS. ORR MIGHT SURVIVE.

THEREFORE, IN SEEKING RECOVERY FOR THE LOSS OF A CHANCE OF

SURVIVAL, PLAINTIFFS ARE NOT REQUIRED TO PROVE THAT

DIFFERENT OR EARLIER TREATMENT BY DR. BUI ACTUALLY WOULD

HAVE SAVED HER LIFE. IT IS ONLY NECESSARY FOR PLAINTIFFS TO

SHOW, BY A PREPONDERANCE OF THE EVIDENCE THAT, AT THE TIME

MRS. ORR ARRIVED IN THE E.R. OF OSCHNER MAIN, THERE WAS A

LESS THAN EVEN CHANCE HER LIFE COULD HAVE BEEN SAVED, AND

THAT THIS CHANCE OF HER SURVIVING WAS LOST DUE TO THE

DEFENDANTS' FAILURE TO WARN OR INSTRUCT. IF PLAINTIFFS

PREVAIL IN PROVING THIS, YOU MUST DETERMINE THE MONETARY

VALUE OF THIS LOSS OF A CHANCE FOR THE ORR FAMILY, BASED ON

THE EVIDENCE YOU HAVE HEARD. IN DOING SO, YOU ARE ALLOWED

TO CONSIDER NOT ONLY THE EVIDENCE CONCERNING MRS. ORR'S

CHANCES OF SURVIVAL, BUT ALSO THE EVIDENCE AS TO THE LOSS

OF SUPPORT, LOVE AND AFFECTION EXPERIENCED BY HER

SURVIVING FAMILY MEMBERS.

AGAIN, THE MERE FACT THAT I HAVE GIVEN YOU

INSTRUCTIONS ON THE LAW OF DAMAGES DOES NOT IN ANY WAY

SUGGEST THAT I BELIEVE THAT ANY DAMAGES ARE DUE IN THIS

CASE. PLAINTIFFS MUST PROVE THEIR DAMAGES WITH REASONABLE

CERTAINTY AND CANNOT BE AWARDED DAMAGES ON THE BASIS OF

SPECULATION. WHETHER OR NOT PLAINTIFFS ARE ENTITLED TO

RECOVER AND WHETHER OR NOT THEY HAVE PROVEN THAT ANY

DAMAGES ARE DUE IS FOR YOU TO DECIDE.

## III.   CONCLUSION

IT IS YOUR SWORN DUTY AS JURORS TO DISCUSS THE CASE

WITH ONE ANOTHER IN AN EFFORT TO REACH A UNANIMOUS

AGREEMENT, IF YOU CAN DO SO. EACH OF YOU MUST DECIDE THE

CASE FOR YOURSELF, BUT ONLY AFTER FULL CONSIDERATION OF

THE EVIDENCE WITH THE OTHER MEMBERS OF THE JURY. WHILE

YOU ARE DISCUSSING THE CASE, DO NOT HESITATE TO RE-EXAMINE

YOUR OWN OPINIONS AND CHANGE YOUR MIND IF YOU BECOME

CONVINCED THAT YOU ARE WRONG. DO NOT, HOWEVER, GIVE UP

YOUR HONEST BELIEFS SOLELY BECAUSE THE OTHERS THINK DIFFERENTLY OR MERELY TO FINISH THE CASE.

REMEMBER THAT IN A VERY REAL WAY YOU ARE THE JUDGES—JUDGES OF THE FACTS. YOUR ONLY INTEREST IS TO SEEK THE TRUTH FROM THE EVIDENCE IN THE CASE.

I HAVE PREPARED A SPECIAL VERDICT FORM FOR YOUR CONVENIENCE AND TO AID YOU IN REACHING A UNANIMOUS DECISION. YOU WILL TAKE THE FORM WITH YOU TO THE JURY ROOM. THE VERDICT MUST REPRESENT THE CONSIDERED JUDGMENT OF EACH JUROR.

YOU WILL NOTE THAT THE FORM CONTAINS SEVERAL INTERROGATORIES OR QUESTIONS. THE ANSWER TO EACH QUESTION MUST BE THE UNANIMOUS ANSWER OF THE JURY. IN THE SPACE PROVIDED BELOW EACH QUESTION, YOU WILL FIND DIRECTIONS WHICH INSTRUCT YOU EITHER TO ANSWER THE NEXT QUESTION, TO ANSWER SOME OTHER QUESTION, OR TO STOP AND RETURN TO THE COURTROOM WITH YOUR VERDICT. YOU MUST CAREFULLY FOLLOW THESE DIRECTIONS AS YOU COMPLETE THE FORM.

**[READ THE VERDICT FORM.]**

WHEN YOU RETIRE TO THE JURY ROOM TO DELIBERATE ON YOUR VERDICT, YOU MAY TAKE THIS CHARGE WITH YOU AS WELL AS EXHIBITS WHICH I HAVE ADMITTED INTO EVIDENCE. FIRST, SELECT YOUR FOREPERSON AND THEN CONDUCT YOUR DELIBERATIONS. IF YOU RECESS DURING YOUR DELIBERATIONS, FOLLOW ALL OF THE INSTRUCTIONS THAT THE COURT HAS GIVEN ABOUT YOUR CONDUCT DURING THE TRIAL. AFTER YOU HAVE REACHED YOUR UNANIMOUS VERDICT, YOUR FOREPERSON IS TO FILL IN ON THE FORM YOUR ANSWERS TO THE QUESTIONS. DO NOT REVEAL YOUR ANSWERS UNTIL SUCH TIME AS YOU ARE DISCHARGED, UNLESS OTHERWISE DIRECTED BY ME. YOU MUST NEVER DISCLOSE TO ANYONE, NOT EVEN TO ME, ANY NUMERICAL DIVISION ON ANY QUESTION.

IF YOU WANT TO COMMUNICATE WITH ME AT ANY TIME, PLEASE GIVE A SIGNED WRITTEN MESSAGE OR QUESTION TO THE MARSHAL, WHO WILL BRING IT TO ME. I WILL THEN RESPOND AS PROMPTLY AS POSSIBLE, EITHER IN WRITING OR BY HAVING YOU BROUGHT INTO THE COURTROOM SO THAT I CAN ADDRESS YOU ORALLY. I WILL ALWAYS FIRST DISCLOSE TO THE ATTORNEYS YOUR QUESTION AND MY RESPONSE BEFORE I ANSWER YOUR QUESTION.

AFTER YOU HAVE REACHED A VERDICT, YOU ARE NOT REQUIRED TO TALK WITH ANYONE ABOUT THE CASE UNLESS I ORDER OTHERWISE. YOU MAY NOW RETIRE TO THE JURY ROOM TO CONDUCT YOUR DELIBERATIONS.