UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: XARELTO (RIVAROXABAN) | * | MDL 2592 |
| PRODUCTS LIABILITY LITIGATION | * | |
| | * | SECTION L |
| THIS DOCUMENT RELATES TO: | * | |
| **_Boudreaux v. Bayer Corp., et al._** | * | JUDGE ELDON E. FALLON |
| **Case No. 2:14-cv-02720** | * | |
| | * | MAGISTRATE JUDGE NORTH |
| * * * * * * * * * * * * * * * * * * * * * * | | |

# EXHIBIT 1 TO
# PLAINTIFFS' MEMORANDUM IN SUPPORT OF
# RULE 59 MOTION FOR A NEW TRIAL

09:12:03

                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

    ******************************************************************

    IN RE:  XARELTO (RIVAROXABAN)
    PRODUCTS LIABILITY LITIGATION        Docket No. 14-MD-2592
                                         Section "L"
                                         New Orleans, Louisiana
    THIS DOCUMENT RELATES TO:            Thursday, April 27, 2017
    Joseph J. Boudreaux, Jr.
    v. Janssen Research &
    Development, et. al.,
    Case No. 14-CV-2720

    ******************************************************************

                    TRANSCRIPT OF TRIAL PROCEEDINGS
            HEARD BEFORE THE HONORABLE ELDON E. FALLON
                    UNITED STATES DISTRICT JUDGE
                           VOLUME IV


    APPEARANCES:

    FOR THE PLAINTIFFS'
    LIAISON COUNSEL:                     LEVIN PAPANTONIO
                                         BRIAN H. BARR, ESQ.
                                         316 Baylen Street, Suite 600
                                         Pensacola, FL 32502

                                         BEASLEY ALLEN
                                         BY:  ANDY BIRCHFIELD, ESQ.
                                         P.O. Box 4160
                                         Montgomery, AL 36103

                                         GAINSBURGH BENJAMIN DAVID
                                         MEUNIER & WARSHAUER
                                         BY:  GERALD E. MEUNIER, ESQ.
                                         2800 Energy Centre
                                         1100 Poydras Street
                                         New Orleans, LA 70163

                                         SCHLICHTER, BOGARD & DENTON
                                         BY:  ROGER C. DENTON, ESQ.
                                         100 South 4th Street
                                         Saint Louis, MO 63102

```
 1                                        LAMBERT FIRM
                                          BY:  EMILY JEFFCOTT, ESQ.
 2                                        701 Magazine Street
                                          New Orleans, Louisiana 70130
 3
 4    FOR THE DEFENDANT BAYER
      HEALTHCARE PHARMACEUTICALS
 5    INC. and BAYER PHARMA AG:           WILKINSON WALSH & ESKOVITZ, LLP
                                          BY:  BETH A. WILKINSON, ESQ.
 6                                        1900 M Street NW, Suite 800
                                          Washington, DC 20036
 7
                                          NELSON MULLINS RILEY
 8                                        & SCARBOROUGH, LLP
                                          BY:  DAVID E. DUKES, ESQ.
 9                                        Meridian, 17th Floor
                                          1320 Main Street
10                                        Columbia, SC 29201
11                                        BRADLEY ARANT BOULT CUMMINGS
                                          BY:  KEVIN C. NEWSOM, ESQ.
12                                        One Federal Place
                                          1819 5th Avenue N
13                                        Birmingham, AL 35203
14    FOR JANSSEN PHARMACEUTICALS,
15    INC. AND JANSSEN RESEARCH &
      DEVELOPMENT, LLC:                   BARRASSO USDIN KUPPERMAN FREEMAN
16                                        & SARVER, LLC
                                          BY:  RICHARD E. SARVER, ESQ.
17                                        909 Poydras Street, 24th Floor
                                          New Orleans, LA 70112
18
19
      Official Court Reporter:           Karen A. Ibos, CCR, RPR, CRR, RMR
20                                        500 Poydras Street, B-275
                                          New Orleans, Louisiana 70130
21                                        (504) 589-7776
22
         Proceedings recorded by mechanical stenography, transcript
23    produced by computer.
24
25
```

1

2                             I N D E X

3

4

5    WITNESSES FOR THE PLAINTIFF:               PAGE/LINE:

6

7

8    VIDEOTAPED DEPOSITION OF DR. THEODORE SPIRO      817/23

9

10   VIDEOTAPED DEPOSITION OF NAUMAN SHAH           874/16

11

12   VIDEOTAPED DEPOSITION OF PATRICIA TORR         895/6

13

14

15

16

17

18

19

20

21

22

23

24

25

1   would agree with that.  My own mother, you know, took it once and

2   so I would 100 percent agree with that.  But if I may finish my

3   thought for a minute, since we didn't move to the next question.

4   By modality, to be clear for the jury and everyone else, what I

5   mean is there needs to be options, whether it's a precise antidote

6   or whether it's, like, the things that people do with warfarin

7   where they apply vitamin K and it seems to help.  That's, in

8   essence, what I mean by modalities.  There need to identified some

9   modalities to control a very serious bleeding should one ever

10  occur.

11  Q. Mr. Shah, and for members of the jury, it's David Covey sitting

12  next to you for two days.  I don't think the camera was on me at

13  all.  Now it's my turn to ask you some questions.  Let's start.

14  Can you tell the jury where you were born.

15  A. Yes, I was born in the Lahore, Pakistan.

16  Q. When was that?

17  A. It was 1971.

18  Q. And when did your family move to the United States?

19  A. My family immigrated to the United States in 1980.

20  Q. And are you married?

21  A. I am married.

22  Q. Do you have children?

23  A. I do.

24  Q. How many children do you have?

25  A. I am the proud father of three daughters and two step-daughters.

1        UNITED STATES DISTRICT COURT

2         EASTERN DISTRICT OF LOUISIANA

3

4

5    IN RE:  XARELTO                *
     (RIVAROXABAN) PRODUCTS         *
6    LIABILITY LITIGATION           *

7    THIS DOCUMENT RELATES TO:      *    Docket No.: 14-MD-2592
                                    *    Section "L"
8    *Joseph J. Boudreaux, Jr.*     *    New Orleans, Louisiana
     *v. Janssen Research &*        *    April 28, 2017
9    *Development, et. al.,*        *
     Case No.: 14-CV-2720           *
10   * * * * * * * * * * * * * * * *

11        VOLUME IV – AFTERNOON SESSION
       TRANSCRIPT OF BELLWETHER JURY TRIAL PROCEEDINGS
12        BEFORE THE HONORABLE ELDON E. FALLON
            UNITED STATES DISTRICT JUDGE
13

14   <u>APPEARANCES</u>:

15
     For the Plaintiffs':
16   Liaison Counsel:              Levin Papantonio
                                   BY:  BRIAN H. BARR, ESQ.
17                                 316 South Baylen Street, Suite 600
                                   Pensacola, Florida  32502
18

19                                 Beasley Allen
                                   BY:  ANDY BIRCHFIELD, ESQ.
20                                 P.O. Box 4160
                                   Montgomery, Alabama 36103
21

22                                 Gainsburg Benjamin David
                                     Meunier & Warshauer
23                                 BY:  GERALD E. MEUNIER, ESQ.
                                   2800 Energy Centre
24                                 1100 Poydras Street
                                   New Orleans, Louisiana 70163
25

OFFICIAL TRANSCRIPT

1   APPEARANCES:

2                                    Schlichter Bogard & Denton, LLP
                                     BY:  ROGER DENTON, ESQ.
3                                    100 South Fourth Street
                                     St. Louis, Missouri 63102
4

5                                    The Lambert Firm
                                     BY:  EMILY JEFFCOTT, ESQ.
6                                    701 Magazine Street
                                     New Orleans, Louisiana 70130
7

8   For the Defendant Bayer
    HealthCare Pharmaceuticals
9   Inc. and Bayer Pharma AG:        Wilkinson Walsh & Eskovitz, LLP
                                     BY:  BETH A. WILKINSON, ESQ.
10                                   1900 M Street NW, Suite 800
                                     Washington, DC 20036
11

12                                   Nelson Mullins Riley &
                                       Scarborough, LLP
13                                   BY:  DAVID E. DUKES, ESQ.
                                     Meridian, 17th Floor
14                                   1320 Main Street
                                     Columbia, South Carolina 29201
15

16  For Janssen Pharmaceuticals,
    Inc. and Janssen Research &
17  Development, LLC:                Barrasso Usdin Kupperman Freeman &
                                       Sarver, LLC
18                                   BY:  RICHARD E. SARVER, ESQ.
                                     909 Poydras Street, 24th Floor
19                                   New Orleans, Louisiana 70112

20
    Official Court Reporter:         Jodi Simcox, RMR, FCRR
21                                   500 Poydras Street
                                     Room HB-406
22                                   New Orleans, Louisiana 70130
                                     (504) 589-7780
23

24  Proceedings recorded by mechanical stenography, transcript

25  produced by computer.

OFFICIAL TRANSCRIPT

1        **I N D E X**

2                                                         Page

3
    DR. GARY PETERS
4        Direct Examination By Mr. Barr:              1069
         Cross-Examination By Mr. Sarver:             1096
5        Redirect Examination By Mr. Barr:            1123

6    RULE 50 MOTION                                   1130

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1  convene to help them with questions they have for them.  In

2  this case it was questions around the ROCKET study and if

3  rivaroxaban should be approved or not.  That was the main

4  question for the advisory committee.  It's a panel convened by

5  FDA.  They are their experts.  And the sponsor, myself and

6  others, were there to present to that FDA committee.

7  **Q.**   Did you learn what happened after the FDA heard the

8  presentations from FDA scientists, from outside scientists, and

9  had studied the ROCKET data, what did the advisory committee

10  do?

11  **A.**   The advisory committee recommended, by a vote of nine to

12  two, that rivaroxaban should be approved in the United States.

13  **Q.**   Dr. Peters, do you think that Xarelto is a safe and

14  effective medicine?

15  **A.**   Yes, I do.

16  **Q.**   Is it effective at preventing strokes?

17  **A.**   Yes, it's very effective.  As we mentioned, versus

18  warfarin, it's very effective, and we were at least equal if

19  not better.  So it's a very effective medicine for preventing

20  strokes.

21  **Q.**   And you told us about your wife early on.  You've been

22  married 39 years.  I assume you like her.

23          **MR. BARR:**  Your Honor, if this is going where I think

24  it's going, I have an objection.

25          **MR. SARVER:**  Well, it is.  Let's go up to the bench.

1          (WHEREUPON, the following proceedings were held at

2     the bench.)

3          **THE COURT:**  I assume she had --

4          **MR. SARVER:**  She took it and did fine and all that

5     stuff.

6          **MR. MEUNIER:**  Your Honor, this was the subject of a

7     motion in limine as to which you reserved a ruling, and you

8     said it would depend on credibility and other issues that may

9     arise at the trial.  There's no need to enhance this man's

10    credibility by saying that his wife took Xarelto, and I think

11    it has a prejudicial effect that outweighs the probative value

12    and so we'd ask that it not be allowed.

13         **MR. SARVER:**  This testimony has already come in

14    through another witness, Your Honor, not for Dr. Peters' wife,

15    but I believe it was a witness that was by deposition.

16         **MR. MEUNIER:**  We were not able to properly screen

17    that.  It should have been objected to.

18         **MR. SARVER:**  Okay.  I thought this was resolved.

19    That's fine.

20         **THE COURT:**  It may not have been resolved.  The issue

21    really is only significant insofar as credibility is concerned.

22    It has no relevance other than that, but it does have some

23    relevance of credibility.  This witness is testifying as the

24    company representative.

25              The plaintiffs take the position that the

OFFICIAL TRANSCRIPT

```
 1   company did something -- did not do something that they should
 2   have done, and there's also a suggestion that they did it for
 3   commercial reasons.  This witness has been involved with the
 4   Xarelto, the development and design of Xarelto.  So his
 5   credibility is significant to the whole case, it seems to me.
 6   The plaintiffs have attempted to take him on cross and to show
 7   that his credibility is a problem.  That's obvious.  Certainly,
 8   they take the position that the company's credibility is at
 9   issue.
10                    So I weigh the advantages, disadvantages, and it
11   seems to me that the 403 analysis tips in favor of allowing it.
12              MR. SARVER:  Thank you, Your Honor.
13              THE COURT:  That's my ruling.
14              MR. SARVER:  Yes, sir.
15              (WHEREUPON, the following proceedings were held in
16   open court.)
17              MR. SARVER:  We're back, Dr. Peters.  Are you ready
18   for us?
19              THE WITNESS:  Okay.
20   BY MR. SARVER:
21   Q.   Okay.  So, Dr. Peters, you told us earlier that you've
22   been married for 39 years.
23   A.   Yes.
24   Q.   I'm assuming you like your wife.
25   A.   I didn't hear that --
```

OFFICIAL TRANSCRIPT

1   **Q.**   I don't know that I've ever asked this question in 35
2   years, but do you like your wife?
3   **A.**   Yes.  Yes, I do.
4   **Q.**   And you want nothing but good things for her?
5   **A.**   Her birthday is tomorrow, actually.
6   **Q.**   All right.  Do something good for her.
7           So knowing that you like your wife, does your wife
8   take Xarelto?
9   **A.**   Yes, she did.  She had her right knee replaced a couple of
10  months ago.  Her orthopedic surgeon wanted to use aspirin, and
11  I asked him to use Xarelto.  And he agreed to that.
12  **Q.**   How has she done?
13  **A.**   She's done very well.  She actually had maybe her last
14  therapy session this morning for rehabilitation.
15  **Q.**   Great.  Dr. Peters, are you proud of your work for
16  Xarelto?
17  **A.**   Yes, I am.  I've worked in this industry a long time.
18  I've had opportunity to work on a number of medicines that have
19  made it to the market.  And being able to work on the Xarelto
20  program has been very rewarding.  I have colleagues and a
21  company that maintain the highest standards in terms of ethics
22  and science.  The ROCKET study was really a definitive study.
23  It was really a great opportunity for me to work on that, and
24  I'm really proud of that result.  And we were able to get
25  warfarin -- get rivaroxaban approved in the United States for

1   UNITED STATES DISTRICT COURT

2   EASTERN DISTRICT OF LOUISIANA

3

4

5   IN RE:  XARELTO                *
    (RIVAROXABAN) PRODUCTS        *
6   LIABILITY LITIGATION          *
                                  *
7   THIS DOCUMENT RELATES TO:     *   Docket No.: 14-MD-2592
                                  *   Section "L"
8   *Joseph J. Boudreaux, Jr.*      *   New Orleans, Louisiana
    *v. Janssen Research &*         *   May 1, 2017
9   *Development, et. al.,*         *
    Case No.: 14-CV-2720          *
10  * * * * * * * * * * * * * * * * *

11              DAY 6, MORNING SESSION
         TRANSCRIPT OF BELLWETHER JURY TRIAL PROCEEDINGS
12          BEFORE THE HONORABLE ELDON E. FALLON
               UNITED STATES DISTRICT JUDGE

13  <u>APPEARANCES</u>:

14

15  For the Plaintiffs':
    Liaison Counsel:          Levin Papantonio
16                            BY:  BRIAN H. BARR, ESQ.
                              316 South Baylen Street, Suite 600
17                            Pensacola, Florida  32502

18                            Herman, Herman & Katz, LLC
                              BY:  LEONARD A. DAVIS, ESQ.
19                            820 O'Keefe Avenue
                              New Orleans, LA  70113
20
                              Beasley Allen
21                            BY:  ANDY BIRCHFIELD, ESQ.
                              P.O. Box 4160
22                            Montgomery, Alabama 36103

23                            Gainsburg Benjamin David
                                Meunier & Warshauer
24                            BY:  GERALD E. MEUNIER, ESQ.
                              2800 Energy Centre
25                            1100 Poydras Street
                              New Orleans, Louisiana 70163

OFFICIAL TRANSCRIPT

```
 1   APPEARANCES:

 2                              Schlichter Bogard & Denton, LLP
                               BY:  ROGER DENTON, ESQ.
 3                             100 South Fourth Street
                               St. Louis, Missouri 63102
 4

 5                             The Lambert Firm
                               BY:  EMILY JEFFCOTT, ESQ.
 6                             701 Magazine Street
                               New Orleans, Louisiana 70130
 7

 8   For the Defendant Bayer
     HealthCare Pharmaceuticals
 9   Inc. and Bayer Pharma AG:  Wilkinson Walsh & Eskovitz, LLP
                               BY:  BETH A. WILKINSON, ESQ.
10                             1900 M Street NW, Suite 800
                               Washington, DC 20036
11

12                             Nelson Mullins Riley &
                                 Scarborough, LLP
13                             BY:  DAVID E. DUKES, ESQ.
                               Meridian, 17th Floor
14                             1320 Main Street
                               Columbia, South Carolina 29201
15

16   For Janssen Pharmaceuticals,
     Inc. and Janssen Research &
17   Development, LLC:          Barrasso Usdin Kupperman Freeman &
                                 Sarver, LLC
18                             BY:  RICHARD E. SARVER, ESQ.
                               909 Poydras Street, 24th Floor
19                             New Orleans, Louisiana 70112

20
     Official Court Reporter:   Tana J. Hess, RMR, FCRR
21                             500 Poydras Street
                               Room B275
22                             New Orleans, Louisiana 70130
                               (504) 589-7781
23

24   Proceedings recorded by mechanical stenography, transcript

25   produced by computer.
```

OFFICIAL TRANSCRIPT

1          **INDEX OF WITNESSES**

2     <u>NAME</u>                                      <u>PAGE</u>

3     Colleen Johnson, M.D.

4          Direct Examination by Ms. Wilkinson          1155

5

6

7

8

9          **INDEX OF EXHIBITS**

10                                           <u>IDENTIFIED</u>

11    Defense Exhibit Number JB18                   1209

12    Defense Exhibit Number 49                     1259

13    Defense Exhibit Number JB165                  1191

14    Defense Exhibit Number JB173                  1184

15    Defense Exhibit Number JB219                  1212

16    Defense Exhibit Number JB257                  1245

17    Defense Exhibit Number JB269                  1216

18    Defense Exhibit Number 5264                   1256

19    Defense Exhibit Number 5792                   1232

20

21

22

23

24

25

OFFICIAL TRANSCRIPT

1    A.    Yes, it's necessary.

2    Q.    Does it provide you real information that you can use to

3    make determinations about what's appropriate for a particular

4    patient?

5    A.    Yes.

6    Q.    And we'll get to this in more detail, but in contrast, is

7    the Neoplastin PT test that Doctor Leissinger and plaintiffs

8    are advocating for, is that a helpful test that would provide

9    you any meaningful or useful information as a practicing or

10   prescribing physician?

11           MR. DENTON:  Your Honor, we're getting into

12   substance, and this is leading testimony -- or leading

13   question, testimony of counsel.  I object.

14           THE COURT:  An expert can comment on other people's

15   testimony; other witnesses cannot.  But in giving an opinion,

16   an expert witness can do so.  Let's get to a point, and we'll

17   take a break now.

18           MS. WILKINSON:  Yes, Your Honor.

19           THE WITNESS:  So I do not feel that the Neoplastin PT

20   test is necessary or needed in order to start a patient safely

21   on Xarelto.

22           MS. WILKINSON:  And after the break, can you explain

23   that in more detail to the jury?

24           THE WITNESS:  I can.

25           THE COURT:  Let's take a 15-minute break.

1    now you can see that if you take out the other factors that

2    affect why people bleed, you can see that that line, not flat,

3    but is much closer to being flat than that line is, which

4    includes -- which doesn't take out all the factors, all the

5    other characteristics of why people bleed.

6    Q.   When you look at that regression, taking out all those

7    factors that you think are important, what does that tell you

8    about the utility of a PT test to predict the risk of bleeding

9    in a particular patient?

10   A.   So the way I use this, the way I think about it is it is

11   more important for me to know what someone's age is, what their

12   weight is, whether or not they're on aspirin, and whether or

13   not they're taking that medicine that protects you from ulcers

14   to know whether they're going to bleed than what their PT

15   measurement is.  Those other things actually tell me more than

16   what the PT tells me.

17   Q.   Were these graphs available to Doctor Leissinger in the

18   materials --

19   A.   Yes.

20   Q.   -- the FDA materials?

21   A.   (Nodding.)

22   Q.   All right.  I'm going to ask you some specific questions

23   based on this information and Doctor Leissinger's testimony.

24          You saw that she said, based on this information, the

25   Neoplastin PT test should be in the Xarelto label; correct?

1  A.   Yes.

2  Q.   Do you agree or disagree with that?

3  A.   I disagree with that.

4  Q.   She said that it could provide useful or helpful

5  information to doctors for individual patients.

6            Do you agree or disagree with that?

7  A.   I don't agree with that.

8  Q.   All right.  In your opinion, did Doctor Leissinger provide

9  any specific information that you, as a prescribing physician,

10 would need to make the test helpful for your treatment of an

11 individual patient?

12 A.   No.  I -- I do not use this test in order to dose any form

13 of anticoagulant other than Coumadin.

14 Q.   Have you seen any information in Doctor Leissinger's

15 report or her testimony that suggests how you would actually

16 use this with a particular patient?

17 A.   No.

18 Q.   Did she give you any cutoff levels for example?

19 A.   No.

20 Q.   So tell the jury what you mean.  I mean, if someone came

21 in and they had a PT score of 12 and another one had a 20, did

22 Doctor Leissinger tell you which one of those patients you

23 should take off Xarelto?

24 A.   No.

25 Q.   Do you have any idea what -- if there's any significance

1    and Savaysa blocks in the formation of a clot.  So it's saying

2    that the activity of that protein is influenced by the drug, as

3    you would think that's how the drug works.

4    Q.   Doctor, in your expert opinion, does the Xarelto label

5    accurately reflect what is known about the Neoplastin PT test?

6    A.   Yes.

7    Q.   In your opinion, would it be appropriate to include a

8    recommendation to doctors to use a PT thrombo-- excuse me -- a

9    Neoplastin PT test to try to determine the risk for a

10   particular patient?

11   A.   No, it should not be used.

12   Q.   Now, did you take a look at Doctor Leissinger's testimony

13   where she said the 13.6 PT test used with Innovin was useful

14   information for Mr. Boudreaux and his treatment?

15   A.   I did see that.

16   Q.   Did you see Doctor Wong's testimony where he said he did

17   not believe it was useful?

18   A.   I did see that.

19   Q.   Who do you agree with?

20   A.   I agree with Doctor Wong.

21   Q.   All right.  Did you go back and take a look at some of the

22   ROCKET data to see if the calculation Doctor Leissinger told

23   the jury about, how you could -- I don't even know what you

24   call it -- look back and determine the concentration, did you

25   try to see if that could be done even if you believed the PT

1263

1    that -- disregard any comment about TV.  That's not an issue

2    here.  Okay?

3    **BY MS. WILKINSON:**

4    Q.   Doctor Johnson, that's okay.  We just want to talk about

5    you and your patients.  Okay?

6             So is there a concern if patients go off their

7    medication like Xarelto or another anticoagulant?

8    A.   Yes.

9    Q.   What is the concern?

10   A.   So in -- in the past, and I -- I like to use patient

11   examples, because it makes it very real to me.  I've had

12   patients that have gone off their anticoagulant and then

13   suffered a disabling stroke.

14   Q.   Now, would you want to know, as a prescribing physician,

15   if there was a test that you could do with a Xarelto patient

16   that would show you whether that person, that particular

17   person, was at a higher risk of bleeding?

18   A.   Yes.

19   Q.   You've read all these materials.  You've read all this --

20   you've heard all this testimony or read all this testimony.

21             Do you believe, in your expert opinion, that the

22   Neoplastin PT test that plaintiffs have described for the jury

23   is an appropriate and useful test for physicians to prescribe

24   Xarelto for AFib?

25   A.   I do not feel like the Neoplastin PT test is useful for

1    physicians prescribing Xarelto.

2    **Q.**   Do you use it in your own practice?

3    **A.**   I do not.

4    **Q.**   Did you see where Doctor Leissinger used it in her own

5    practice?

6    **A.**   She did not say so, no.

7    **Q.**   And from all the testimony that you read, is there

8    anything that has caused you to change your opinion that the

9    Neoplastin PT test is not a helpful test for prescribers who

10   are treating patients with AFib?

11   **A.**   So say that one more time.

12   **Q.**   Is there anything that you've heard or read, came out

13   through the plaintiffs' case or their experts, that causes you

14   to change your opinion about the PT test?

15   **A.**   No, there has not been.

16   **Q.**   Finally, then, in your opinion, should the Neoplastin PT

17   test be included in the Xarelto label?

18   **A.**   Not beyond what is already stated in the label.

19           **MS. WILKINSON:**  Thank you very much, Doctor.

20           **THE COURT:**  Okay.  Let's stop here.  We'll come back

21   at 1:15.  Court will stand in recess until then.

22           **THE CASE MANAGER:**  All rise.

23           (Whereupon the jury was excused from the courtroom.)

24                        **(Lunch Recess.)**

25

1    UNITED STATES DISTRICT COURT

2    EASTERN DISTRICT OF LOUISIANA

3
     ****************************************************************
4
     IN RE:  XARELTO
5    (RIVAROXABAN) PRODUCTS
     LIABILITY LITIGATION
6
                                   CIVIL ACTION NO. 14-MD-2592
7                                  SECTION "L"
                                   NEW ORLEANS, LOUISIANA
8                                  MONDAY, MAY 1, 2017

9    THIS DOCUMENT RELATES TO:
     *Joseph J. Boudreaux, Jr.*
10   *V. Janssen Research &*
     *Development, et. al.,*
11   Case No.:  14-CV-2720

12   ****************************************************************

13
                   VOLUME VI - AFTERNOON SESSION
14        TRANSCRIPT OF BELLWETHER JURY TRIAL PROCEEDINGS
            HEARD BEFORE THE HONORABLE ELDON E. FALLON
15                 UNITED STATES DISTRICT JUDGE

16
     APPEARANCES:
17

18   FOR THE PLAINTIFFS'
     LIAISON COUNSEL:          LEVIN PAPANTONIO THOMAS MITCHELL
19                             RAFFERTY & PROCTOR
                               BY:  BRIAN H. BARR, ESQ.
20                             316 SOUTH BAYLEN STREET, SUITE 600
                               PENSACOLA, FLORIDA 32502
21

22
                               BEASLEY ALLEN CROW METHVIN
23                             PORTIS & MILES
                               BY:  ANTHONY BIRCHFIELD JR., ESQ.
24                             POST OFFICE BOX 4160
                               MONTGOMERY, ALABAMA  36103
25

                   *OFFICIAL TRANSCRIPT*

1    APPEARANCES CONTINUED:

2

3                                    GAINSBURGH BENJAMIN DAVID
                                     MEUNIER AND WARSHAUER
4                                    BY:  GERALD E. MEUNIER, ESQ.
                                     2800 ENERGY CENTRE
5                                    1100 POYDRAS STREET, SUITE 2800
                                     NEW ORLEANS, LOUISIANA  70163
6

7
                                     SCHLICHTER BOGARD & DENTON
8                                    BY:  ROGER DENTON, ESQ.
                                     100 S. 4TH STREET, SUITE 1200
9                                    ST. LOUIS, MISSOURI  63102

10

11                                   LAMBERT FIRM
                                     BY:  EMILY JEFFCOTT, ESQ.
12                                   701 MAGAZINE STREET
                                     NEW ORLEANS, LOUISIANA  70130
13

14
     FOR THE DEFENDANT BAYER
15   HEALTHCARE PHARMACEUTICALS
     INC. And BAYER PHARMA AG:   WILKINSON WALSH & ESKOVITZ, LLP
16                                   BY:  BETH A. WILKINSON, ESQ.
                                     1900 M STREET NW, SUITE 800
17                                   WASHINGTON, DC  20036

18

19                                   NELSON MULLINS RILEY
                                     & SCARBOROUGH, LLP
20                                   BY:  DAVID E. DUKES, ESQ.
                                     MERIDIAN, 17TH FLOOR
21                                   1320 MAIN STREET
                                     COLUMBIA, SOUTH CAROLINA  29201
22

23

24

25

*OFFICIAL TRANSCRIPT*

1    APPEARANCES CONTINUED:

2

3    FOR JANSSEN PHARMACEUTICALS,
     INC. AND JANSSEN RESEARCH &
4    DEVELOPMENT, LLC:            BARRASSO USDIN KUPPERMAN FREEMAN
                                  & SARVER, LLC
5                                 BY:  RICHARD E. SARVER, ESQ.
                                  909 POYDRAS STREET, 24TH FLOOR
6                                 NEW ORLEANS, LOUISIANA  70112

7

8

9    OFFICIAL COURT REPORTER:     CATHY PEPPER, CRR, RMR, CCR
                                  CERTIFIED REALTIME REPORTER
10                                REGISTERED MERIT REPORTER
                                  500 POYDRAS STREET, ROOM HB-275
11                                NEW ORLEANS, LOUISIANA  70130
                                  (504) 589-7779
12                                Cathy_Pepper@laed.uscourts.gov

13

     PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.   TRANSCRIPT
14   PRODUCED BY COMPUTER.

15

16

17

18

19

20

21

22

23

24

25

                          *OFFICIAL TRANSCRIPT*

1

## I N D E X

2

3                                                        <u>PAGE</u>

4

5   **COLLEEN JOHNSON, M.D.**.................................1270

6   CROSS-EXAMINATION BY MR. DENTON......................1270

7   REDIRECT EXAMINATION BY MS. WILKINSON................1330

8   **STEVEN SCOTT BONIOL, M.D.**............................1338

9   DIRECT EXAMINATION BY MR. SARVER.....................1338

10  CROSS-EXAMINATION BY MR. BARR........................1401

11  REDIRECT EXAMINATION  BY MR. SARVER..................1456

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*OFFICIAL TRANSCRIPT*

01:44:13  1   guidelines outside of the United States.

01:44:13  2   Q.    So -- but my point is, did you look at this literature?

01:44:20  3   A.    Did I look at this study?  I would have to review and see

01:44:23  4   if I looked at this -- at this opinion paper.

01:44:26  5   Q.    Right.  Because I didn't see it on your list.

01:44:28  6   A.    It may not have been.  I'm happy to look at it now, if you

01:44:31  7   would like me to.

01:44:33  8   Q.    Okay.  Let's look at some of these organizations that are

01:44:35  9   in Table 3.  That's go back to Table 3.

01:44:39 10          ISTH, you know what that is, don't you?

01:44:45 11   International -- do you know what it is?

01:44:49 12   A.    The ISTH, it's another international society.

01:44:49 13   Q.    On thrombosis and haemostasis.

01:44:54 14          MS. WILKINSON:  Your Honor, I'm going to object to

01:44:55 15   relevance in discussing the international.  I thought we were

01:44:58 16   focused on the United States.  This is irrelevant.

01:45:01 17          MR. DENTON:  Why is this irrelevant?

01:45:01 18   EXAMINATION BY MR. DENTON:

01:45:04 19   Q.    Is Xarelto different in Europe than it is here?

01:45:08 20   A.    There are --

01:45:09 21          MS. WILKINSON:  Your Honor, can we go sidebar because

01:45:12 22   the answer is --

01:45:13 23          THE COURT:  Let me see both of you all.

01:45:13 24          (WHEREUPON, at this point in the proceedings, there was

01:45:28 25   a conference held at the bench.)

*OFFICIAL TRANSCRIPT*

01:45:28  1    MS. WILKINSON:  Your Honor, we have not had -- you had
01:45:34  2  ruled generally that the international labels and foreign
01:45:36  3  labels were not admissible subject to some change in the
01:45:38  4  evidence.
01:45:39  5    The problem with introducing international
01:45:42  6  standards is, internationally some countries, their regulatory
01:45:46  7  agents have approved of anti-FXa assays that tend to -- those
01:45:52  8  are not approved here in the United States.  So suggesting that
01:45:54  9  there is a different standard and there is approval would be
01:45:59 10  misleading and prejudicial to the jury.
01:46:01 11    MR. DENTON:  Your Honor, this isn't about labelings.
01:46:04 12  This is about the various societies that Dr. Leissinger
01:46:08 13  testified about, and a lot of the articles that they even cite.
01:46:12 14  They cited foreign articles, too, for the science.  We're
01:46:16 15  talking about the science.  We're not talking about labels.
01:46:18 16    These are professional organizations that have
01:46:23 17  looked at the literature and provided that PT is a reasonable
01:46:27 18  recommendation.  There is also national standards here.  It's
01:46:30 19  just not international.
01:46:34 20    THE COURT:  If it has anything to do with labeling,
01:46:36 21  then it's not going to be admissible because we're talking
01:46:39 22  about labeling in the United States and it's different
01:46:43 23  standards.
01:46:43 24    Now, I don't know, this is the first time I'm
01:46:45 25  seeing this article, but if that is what we're talking about,

*OFFICIAL TRANSCRIPT*

01:46:49  1   let's go to something else.

01:46:49  2        MS. WILKINSON:  Your Honor, it does call out on the

01:46:53  3   same page, page 8 of the document, all these international

01:46:56  4   societies, so they would have different standards.

01:46:58  5             As you can see, it talks about, for example, the

01:47:02  6   Australian Society of Thrombosis and Hemostasis, the British

01:47:07  7   Committee, the Italian Committee for Standardization of

01:47:10  8   Hematological and Laboratory Methods.  All those standards

01:47:13  9   would relate to what the regulatory rules are, and that's why

01:47:16 10   it would be confusing and misleading.

01:47:18 11        THE COURT:  I think this would be confusing.  It's a

01:47:20 12   403, not a 401.

01:47:22 13        MR. DENTON:  I'll move on, Your Honor.

01:47:25 14        THE COURT:  Let's move on to something else.

01:47:25 15        (WHEREUPON, at this point in the proceedings, the bench

01:47:38 16   conference concluded.)

01:47:38 17   EXAMINATION BY MR. DENTON:

01:47:50 18   Q.   Doctor, I forgot to ask, how much are you charging here

01:47:58 19   today for you testimony?

01:48:00 20   A.   I charge about a thousand dollars an hour to be here

01:48:02 21   because I'm missing work.

01:48:04 22   Q.   Okay.  In the materials you reviewed, as I understand it,

01:48:19 23   you have looked at no internal company documents from the drug

01:48:24 24   companies?

01:48:24 25   A.   No, I did not.

*OFFICIAL TRANSCRIPT*

```
 1                    UNITED STATES DISTRICT COURT

 2                    EASTERN DISTRICT OF LOUISIANA

 3
        ****************************************************************
 4
        IN RE:  XARELTO
 5      (RIVAROXABAN) PRODUCTS
        LIABILITY LITIGATION
 6
                                      CIVIL ACTION NO. 14-MD-2592
 7                                    SECTION "L"
                                      NEW ORLEANS, LOUISIANA
 8                                    WEDNESDAY, MAY 3, 2017

 9      THIS DOCUMENT RELATES TO:
        Joseph J. Boudreaux, Jr.
10      V. Janssen Research &
        Development, et. al.,
11      Case No.:  14-CV-2720

12      ****************************************************************

13
                     VOLUME VIII - MORNING AND AFTERNOON SESSION
14           TRANSCRIPT OF BELLWETHER JURY TRIAL PROCEEDINGS
               HEARD BEFORE THE HONORABLE ELDON E. FALLON
15                    UNITED STATES DISTRICT JUDGE

16
        APPEARANCES:
17

18      FOR THE PLAINTIFFS'
        LIAISON COUNSEL:          LEVIN PAPANTONIO THOMAS MITCHELL
19                                RAFFERTY & PROCTOR
                                  BY:  BRIAN H. BARR, ESQ.
20                                316 SOUTH BAYLEN STREET, SUITE 600
                                  PENSACOLA, FLORIDA 32502
21

22                                BEASLEY ALLEN CROW METHVIN
23                                PORTIS & MILES
                                  BY:  ANTHONY BIRCHFIELD JR., ESQ.
24                                POST OFFICE BOX 4160
                                  MONTGOMERY, ALABAMA  36103
25
```

07:41:16

**OFFICIAL TRANSCRIPT**

1    APPEARANCES CONTINUED:

2

3                                      GAINSBURGH BENJAMIN DAVID
                                       MEUNIER AND WARSHAUER
4                                      BY:  GERALD E. MEUNIER, ESQ.
                                       2800 ENERGY CENTRE
5                                      1100 POYDRAS STREET, SUITE 2800
                                       NEW ORLEANS, LOUISIANA  70163
6

7
                                       SCHLICHTER BOGARD & DENTON
8                                      BY:  ROGER DENTON, ESQ.
                                       100 S. 4TH STREET, SUITE 1200
9                                      ST. LOUIS, MISSOURI  63102

10

11                                     LAMBERT FIRM
                                       BY:  EMILY JEFFCOTT, ESQ.
12                                     701 MAGAZINE STREET
                                       NEW ORLEANS, LOUISIANA  70130
13

14
     FOR THE DEFENDANT BAYER
15   HEALTHCARE PHARMACEUTICALS
     INC. And BAYER PHARMA AG:    WILKINSON WALSH & ESKOVITZ, LLP
16                                     BY:  BETH A. WILKINSON, ESQ.
                                       1900 M STREET NW, SUITE 800
17                                     WASHINGTON, DC  20036

18

19                                     NELSON MULLINS RILEY
                                       & SCARBOROUGH, LLP
20                                     BY:  DAVID E. DUKES, ESQ.
                                       MERIDIAN, 17TH FLOOR
21                                     1320 MAIN STREET
                                       COLUMBIA, SOUTH CAROLINA  29201
22

23
                                       BRADLEY ARANT BOULT CUMMINGS
24                                     BY:  KEVIN C. NEWSOM, ESQ.
                                       ONE FEDERAL PLACE
25                                     1819 5TH AVENUE N
                                       BIRMINGHAM, ALABAMA  35203

                    *OFFICIAL TRANSCRIPT*

1    APPEARANCES CONTINUED:

2

3    FOR JANSSEN PHARMACEUTICALS,
     INC. AND JANSSEN RESEARCH &
4    DEVELOPMENT, LLC:          BARRASSO USDIN KUPPERMAN FREEMAN
                                & SARVER, LLC
5                               BY:  RICHARD E. SARVER, ESQ.
                                909 POYDRAS STREET, 24TH FLOOR
6                               NEW ORLEANS, LOUISIANA  70112

7

8    OFFICIAL COURT REPORTER:   CATHY PEPPER, CRR, RMR, CCR
                                CERTIFIED REALTIME REPORTER
9                               REGISTERED MERIT REPORTER
                                500 POYDRAS STREET, ROOM HB-275
10                              NEW ORLEANS, LOUISIANA  70130
                                (504) 589-7779
11                              Cathy_Pepper@laed.uscourts.gov

12

13   PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT
     PRODUCED BY COMPUTER.

14

15

16

17

18

19

20

21

22

23

24

25

*OFFICIAL TRANSCRIPT*

1

                          **I N D E X**

2

3                                                              PAGE

4

5    PLAINTIFFS' CLOSING ARGUMENTS BY MR. BARR............1552

6    DEFENDANTS' CLOSING ARGUMENTS BY MS. WILKINSON.......1583

7    PLAINTIFFS' REBUTTAL CLOSING ARGUMENTS BY

8    MR. BIRCHFIELD......................................1618

9    JURY INSTRUCTIONS BY THE COURT......................1630

10   JURY DELIBERATES...................................1657

11   LUNCHEON RECESS....................................1658

12   VERDICT............................................1659

13

14

15

16

17

18

19

20

21

22

23

24

25

                     *OFFICIAL TRANSCRIPT*

08:24:07  1   citation to a provision in the LPLA itself.  We believe it's

08:24:11  2   relevant law under the evidence presented in this case.

08:24:14  3        THE COURT:  With regard to that, let me just speak on

08:24:17  4   it.  I've touched on that.  I think the jury charge that I've

08:24:22  5   given is sufficient to cover those aspects of the case.  I'll

08:24:27  6   deny the motion.

08:24:28  7        MR. MEUNIER:  Thank you, Judge.

08:24:29  8             In the section of Your Honor's charge dealing

08:24:32  9   with FDA approval and federal regulatory standards -- this

08:24:36 10   begins at page 22 and through page 23 of your charge -- we

08:24:40 11   respectfully object to the failure to include the plaintiffs'

08:24:43 12   proposed jury instruction 18, which is supported both by the by

08:24:50 13   *Wyeth* and by the Code of Federal Regulations, which is imposing

08:24:53 14   a duty on the manufacturer both for the initial drafting of the

08:24:56 15   label and for assuring that labeling continues after the

08:25:00 16   initial draft to reflect current knowledge regarding the risks

08:25:05 17   of a product.

08:25:05 18             We also respectfully object to the failure to

08:25:08 19   include plaintiffs' proposed jury charge number 19, again

08:25:12 20   citing to the CFR provision that instructive information

08:25:16 21   regarding, quote, "any laboratory tests helpful," close quote,

08:25:21 22   in addressing, quote, "possible adverse reactions must" -- and

08:25:28 23   it is mandatory -- "be provided in the warning section of the

08:25:32 24   prescription drug label."

08:25:33 25             In fact, this is a regulation which the jury was

*OFFICIAL TRANSCRIPT*

08:25:40  1    shown during Dr. Kessler's testimony.

08:25:43  2         Finally, we object to the failure to include

08:25:46  3    plaintiffs' proposed jury charge Number 20, which, pursuant to

08:25:48  4    the authorities cited in our instruction, provides that a

08:25:52  5    manufacturer's violation of one or more relevant federal

08:25:55  6    regulations may be considered as relevant in determining

08:25:58  7    whether adequate instructions have been provided by the

08:26:01  8    manufacturer to prescribing physicians.

08:26:03  9         So, Your Honor, in your section dealing generally

08:26:06 10    with the FDA and federal regulations, we have cited to our jury

08:26:11 11    charges 18, 19, and 20, and we respectfully object to those not

08:26:17 12    being included in that section of your charge.

08:26:19 13         THE COURT:  I've taken that up.  22 and 23 of the

08:26:23 14    charge deal with the fact that the FDA approval may be

08:26:28 15    relevant, but it's not, in itself, dispositive of liability.

08:26:34 16         I also take up the fact that whether the FDA did

08:26:36 17    or did not do anything, that that's not sufficient and it's not

08:26:50 18    conclusive.

08:26:52 19         With regard to dealing with specific items of

08:26:55 20    evidence that should be in, I don't think the jury charge

08:26:59 21    should focus on specific items of evidence.  I chose not to do

08:27:03 22    that, but instead speak the law generally and let the jury

08:27:07 23    decide on it.  So I'll deny that motion.

08:27:09 24         MR. MEUNIER:  Your Honor, in this same section of the

08:27:12 25    Court's charge on the FDA and federal regulations, again,

*OFFICIAL TRANSCRIPT*

10:20:47  1    particular circumstances, because of what he had experienced

10:20:50  2    personally with his family, he certainly thought avoiding

10:20:59  3    stroke was a much more important thing than a risk of a bleed.

10:21:02  4              That doesn't mean that this wasn't a bad thing

10:21:05  5    that happened to Mr. Boudreaux.  We said that to you at the

10:21:07  6    beginning, right?  We said, bad things happen to good folks,

10:21:10  7    and that we weren't going to challenge any of that.  And did

10:21:13  8    you see us, did we cross-examine the Boudreauxs?  No.  Did we

10:21:17  9    say one thing about their damages?  No.  And we're not going to

10:21:22 10    today.  We have no issue with Mr. and Mrs. Boudreaux.  The

10:21:23 11    issue is about the science and what should be in the label, and

10:21:27 12    what is supported by the folks who actually know and understand

10:21:31 13    how this drug works.

10:21:33 14              Plaintiffs said to you at the beginning that this

10:21:37 15    was a safety test.  Again, why did he say that?  Because he

10:21:41 16    wanted you to think we were terrible people.  We're actually

10:21:43 17    the big pharmaceutical companies I think he called us, and we

10:21:50 18    don't want to do a simple safety test.  Think about what that

10:21:54 19    said.  That all of the doctors who work on our companies who

10:21:57 20    told you they were on Xarelto themselves or prescribe it for

10:22:00 21    their mother, that they don't care about safety.  They don't

10:22:03 22    care.  That's what he wants you to believe.  That we actually

10:22:06 23    have something hidden in documents, which still, I don't know

10:22:09 24    what documents he's saying there is something hidden in there.

10:22:13 25    But he's saying there is something hidden in there.  And all of

*OFFICIAL TRANSCRIPT*

10:26:21 1    treat patients every day in this town.  I go to all these

10:26:25 2    hospitals.  See all kinds of patients.  And I think this test

10:26:28 3    is useless and not helpful.

10:26:30 4          The FDA, there is no evidence that the FDA thinks

10:26:34 5    this is a test that should be in the label.  Medical

10:26:37 6    associations, you didn't hear them cite a single medical

10:26:42 7    association that says this test should be used, or a

10:26:45 8    peer-reviewed publication that says this test should be used.

10:26:49 9          Now, why is that?  Because in the outside --

10:26:51 10   outside of this courtroom, nobody thinks this test works.  They

10:26:56 11   don't think it helps.  They want you to second-guess all the

10:27:02 12   scientists out there, all the doctors you've heard, all the

10:27:06 13   medical associations, all the medical literature, and they want

10:27:08 14   you to believe that they're the only ones that understand this

10:27:12 15   test and they're the only ones that want it in the label

10:27:17 16   because nobody else understands what the company does.

10:27:24 17         Well, Dr. Johnson certainly understands.  And she

10:27:30 18   was -- as Dr. Kessler even said, talk to a cardiologist if you

10:27:33 19   want to talk about AFib, because he knew he wasn't.  Well, you

10:27:36 20   did.  You heard from Dr. Johnson.

10:27:38 21         And there is a lot of things that were said, and

10:27:40 22   I will take one moment to address one.  I heard counsel say

10:27:43 23   that Dr. Johnson seemed like a very nice doctor.  She cares

10:27:47 24   about her patients.  But she wants specific evidence for

10:27:53 25   specific patients, and he said -- I wrote it down -- "That's

*OFFICIAL TRANSCRIPT*

entities stand equal before the law and are to be dealt with as equals in a court of justice.

As I stated earlier, it is your duty to determine the facts, and in so doing, you must consider only the evidence I have admitted in the case.  Now, the term "evidence" includes the sworn testimony of the witnesses and the exhibits admitted into the record.

Remember that any statements, objections or arguments made by the lawyers are not evidence in the case. The function of the lawyer is to point out those things that the lawyer feels are most significant and most helpful to their side of the case, and, in so doing, to call your attention to certain facts or inferences that they are particularly concerned that you recall.  But, in the final analysis, it is your own recollection and interpretation of the evidence that controls.  What the lawyers have said is not binding upon you.

Also, during the course of the trial, I have occasionally made comments to the lawyers or asked a question of a witness or admonished a witness concerning the manner in which he or she should respond to the question of counsel.  Do not assume from anything that I may have said that I have any opinion concerning any of the facts in this particular case. In arriving at your own findings of the facts, you can disregard and should disregard anything I may have said during the trial, except for my instructions on the law.

*OFFICIAL TRANSCRIPT*

11:38:49  1    times now, you, the jury, are indeed the sole judges of the

11:38:54  2    credibility of each witness and the weight and effect of all

11:38:57  3    evidence.

11:39:00  4              When the Court has sustained an objection to the

11:39:03  5    question addressed to a witness, the jury must disregard the

11:39:05  6    question entirely and may draw no inference from the wording of

11:39:08  7    it or speculate as to what the witness would have said if

11:39:14  8    permitted to answer the question.

11:39:15  9              During the course of the trial, I have

11:39:18  10   occasionally asked a question of a witness in order to bring

11:39:20  11   out facts not fully covered by the testimony.  Again, do not

11:39:24  12   assume that I hold any opinion as to the facts to which my

11:39:29  13   question or questions may have been related.  I again tell you

11:39:32  14   that you are the sole judges of the facts of this case.

11:39:35  15             Statements and arguments of lawyers are not

11:39:39  16   evidence in the case, unless made as an admission or a

11:39:43  17   stipulation of fact.  A stipulation is an agreement between

11:39:49  18   both sides that certain facts are true and that a person would

11:39:54  19   have given certain testimony.  When the lawyers on both sides

11:39:58  20   stipulate or agree to the existence of a fact, you must, unless

11:40:05  21   otherwise instructed, accept the stipulation as evidence, and

11:40:08  22   regard that fact as proved.

11:40:12  23             Finally, certain materials have been shown to you

11:40:15  24   solely as an aid to help explain the facts disclosed by

11:40:20  25   evidence, testimony, records and other documents in this case.

*OFFICIAL TRANSCRIPT*

11:40:30  1    We sometimes refer to it as "demonstrative evidence" because it

11:40:33  2    is offered merely to demonstrate or illustrate a point, rather

11:40:38  3    than an actual proof of that pointe.  Demonstrative evidence is

11:40:43  4    not admitted evidence or proof of any fact.  You should

11:40:48  5    determine the facts from the evidence that is admitted.

11:40:52  6            Remember, demonstrative evidence is only as good

11:40:55  7    as the underlying testimony, data, assumptions, and opinions

11:41:00  8    that serve as the basis for it, and the maxim, "garbage in,

11:41:07  9    garbage out," applies.  Like all other evidence in this case,

11:41:10 10    you may accept it or reject it in whole or in part.

11:41:14 11            Now, any notes you may have taken at this trial

11:41:18 12    are only aids to your memory.  If your memory differs from your

11:41:23 13    notes, you should rely upon your memory and not the notes.

11:41:27 14    Notes are not evidence.  If you have not taken notes, you

11:41:31 15    should rely on your independent recollection of the evidence,

11:41:35 16    and should not be unduly influenced by the notes of other

11:41:39 17    jurors.  Notes are not entitled to any greater weight than the

11:41:43 18    recollection or impression of each juror about the testimony.

11:41:47 19            Now, let me give you some specific instructions

11:41:51 20    about this case.  As you know, this action arises out of

11:41:57 21    Joseph Boudreaux's use of Xarelto.  The Janssen and Bayer

11:42:02 22    defendants manufacture Xarelto.  Mr. Boudreaux contends that he

11:42:07 23    suffered a gastrointestinal bleed, or a GI bleed, as a result

11:42:13 24    of his use of Xarelto.  He claims that defendants failed to

11:42:18 25    properly instruct his prescribing doctor, Dr. Kenneth Wong,

**OFFICIAL TRANSCRIPT**

11:55:13 1   circumstance, the prescribing doctor cannot be said to be a

11:55:23 2   learned intermediary because he was not adequately informed by

11:55:25 3   the defendants.

11:55:28 4          In order to prove their failure to warn or

11:55:31 5   instruct claim, the plaintiffs must not only prove that the

11:55:35 6   defendants' warnings or instructions regarding Xarelto were

11:55:41 7   inadequate, but also that such inadequacy affected the decision

11:55:46 8   or decisions of the prescribing physician with regard to

11:55:52 9   Xarelto.  In other words, you must determine if Dr. Wong would

11:55:57 10  have altered his prescribing behavior and Mr. Boudreaux would

11:56:02 11  not have suffered his injury had the doctor been provided with

11:56:07 12  adequate instructions.

11:56:08 13         If the greater weight of the evidence does not

11:56:11 14  support the plaintiffs' claim, your verdict should be for the

11:56:15 15  defendants.  If the greater weight of the evidence, however,

11:56:20 16  does support the plaintiffs' claim, then your verdict should be

11:56:24 17  for the plaintiffs.

11:56:26 18         Let me say something about labeling and federal

11:56:31 19  regulations.

11:56:31 20         As I previously mentioned, Xarelto is a brand

11:56:35 21  name drug.  The FDA approved both Xarelto and its label.  You

11:56:43 22  may consider this fact in weighing the evidence in this case in

11:56:48 23  determining the liability of the defendants.

11:56:50 24         However, FDA approval, although relevant, does

11:56:58 25  not in and of itself absolve the defendants of all liability,

**OFFICIAL TRANSCRIPT**

11:57:03 1    nor does it establish that the warnings or instructions

11:57:07 2    provided with the drug were adequate under the standards of

11:57:11 3    Louisiana law.

11:57:12 4           Any action or inaction on the part of the FDA,

11:57:19 5    though relevant, does not foreclose a claim under Louisiana

11:57:23 6    law.  Therefore, even if the defendants have met all of the

11:57:27 7    appropriate minimum standards for FDA approval and governmental

11:57:33 8    regulations and requirements to obtain FDA approval, this

11:57:40 9    compliance and approval, though relevant, is not sufficient to

11:57:43 10   conclusively establish that the defendants have taken the steps

11:57:47 11   necessary under the law which applies in this case.

11:57:50 12          More specifically, if you find that the

11:57:54 13   defendants failed to apprise treating physicians of appropriate

11:57:58 14   testing to address risks that they knew or should have known

11:58:03 15   prior to the FDA approval or became known or should have become

11:58:08 16   known after the FDA approved Xarelto's label, then FDA approval

11:58:12 17   of the drug is not conclusive.

11:58:15 18          Causation.  In order for the plaintiffs to

11:58:19 19   prevail in their claim, they must establish that the inadequate

11:58:24 20   instructions or warnings was the proximate cause of

11:58:29 21   Joseph Boudreaux's alleged injuries.

11:58:32 22          Proximate cause means the efficient cause or

11:58:35 23   direct cause.  The law defines proximate cause as something

11:58:40 24   that produces a natural chain of events, which, in the end,

11:58:46 25   brings about an injury.  In other words, proximate cause is a

*OFFICIAL TRANSCRIPT*