UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE ELDON E. FALLON |
| Dora Mingo v. Janssen Research & Development, LLC et al.<br>Case No. 2:15-cv-03469 | MAGISTRATE NORTH |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' JOINT MOTION (1) TO
ENFORCE STIPULATED CASE MANAGEMENT ORDER AND
(2) TO QUASH UNTIMELY DEPOSITION SUBPOENA SERVED ON
SOUTHWEST MISSISSIPPI REGIONAL MEDICAL CENTER**

Defendants Bayer HealthCare Pharmaceuticals Inc., Bayer Pharma AG, Janssen Pharmaceuticals, Inc., and Janssen Research & Development LLC (collectively, "Defendants") hereby file this memorandum in support of their motion to enforce the deadlines established in CMO 2A and to quash Plaintiffs' subpoena and Notice of Oral and Videotaped Deposition Pursuant to Fed. R. Civ. P. 30(b)(6) of Southwest Mississippi Regional Medical Center.[1]

**INTRODUCTION**

This litigation, like all other cases and MDLs, follows a sequence: first fact discovery, then expert discovery, followed by dispositive and *Daubert* motions, and finally trial. Here, the parties stipulated and the Court agreed to various Case Management Orders that established a specific process—and deadlines—for sequenced, orderly trial proceedings: first fact discovery in

---

[1] Plaintiffs have also issued a "Notice of Oral and Videotaped Deposition of Corporate Representative of the Bayer Defendants Pursuant to Fed. R. Civ. P. 30(b)(6), 30(b)(2), and 34," noticing an additional deposition on July 14, 2017. This notice is prejudicial in that it seeks additional discovery just over three weeks before trial, and it clearly contravenes the Court's CMO 2A, which set an October 3, 2016, deadline for Plaintiffs to conclude discovery of Defendants. *See* CMO 2A ¶ 3(c). Accordingly, and as explained below with respect to Plaintiffs' subpoena to Southwest Mississippi Regional Medical Center, the Court should quash Plaintiffs' 30(b)(6) deposition notice to the Bayer Defendants as untimely and prejudicial.

1

connection with the bellwether trials (to be completed by October 3, 2016); then expert discovery (to be completed by December 15, 2016); then *Daubert* and dispositive motions in the first two bellwether trials (to be filed by January 20, 2017); then the first two bellwether trials (on April 24, 2017, and May 30, 2017); then dispositive motions in *Mingo*, the third bellwether trial (to be filed by June 7, 2017); and finally, a third bellwether trial to start August 7. This deliberately-devised framework of sequenced discovery serves an important purpose. The parties rely on the fact-discovery record to prepare their experts; they then rely on the fact-discovery and expert-discovery records to file dispositive motions; and if the dispositive motions are denied, the parties then rely on the fact-discovery, expert-discovery, and dispositive-motion records to prepare for trial.

Plaintiffs here—on the eve of trial—seek to re-open fact discovery to inquire about "the type of reagent used for prothrombin time (PT) testing by the lab at Southwest Mississippi Regional Medical Center in January and February 2015." (Exh. A, at 2.) Their request is in direct contravention of the Court's established schedule, set out in CMO 2A, which required fact discovery to be completed *nearly nine months ago*. The Court should enforce its schedule and quash the deposition and document requests. The untimeliness of Plaintiffs' request, standing alone, is a sufficient basis to deny any additional discovery. *See, e.g.*, *Buisson Creative Strategies, L.L.C. v. Roberts*, No. 15-6272, 2017 WL 67527, at *2 (E.D. La. Jan. 6, 2017) (quashing subpoenas that were issued after "the deadline for taking a deposition expired"). But Plaintiffs also have not explained, as they must under Rule 16, why they could not have timely taken this deposition—which bears on topics that have long been at issue in this litigation—under the Court's schedule. *See, e.g.*, *United States ex rel. Bias v. Tangipahoa Par. Sch. Bd.*, No. 12-2202, 2014 WL 5524453, at *4 (E.D. La. Oct. 31, 2014) (Fallon, J.). There is no reasonable justification for Plaintiffs waiting until the eleventh hour to seek this additional discovery.

What's more, allowing Plaintiffs to reopen discovery at this late stage, just weeks before trial, when the parties should be preparing for trial instead of for additional depositions, prejudices Defendants and their trial preparation. *See, e.g.*, *Huey v. Super Fresh/Sav-A-Center, Inc.*, No. 07-1169, 2008 WL 2633767, at *2 (E.D. La. June 25, 2008). And additional fact discovery necessarily creates the risk that more expert discovery and motion practice will be required. *See Singletary v. Hot Energy Servs., Inc.*, No. 09-6297-SS, 2010 WL 1936222, at *2 (E.D. La. May 13, 2010) (recognizing out-of-time discovery creates prejudice because "there may not be sufficient time before the trial for the opposing party to conduct discovery prompted by the additional discovery"). For example, based on the deposition testimony, Defendants may need to obtain new or revised expert reports regarding PT reagents or take additional depositions of fact and expert witnesses. Plaintiffs' eleventh-hour discovery thus jeopardizes the August 7 trial date.

The Court should enforce the agreed-upon discovery deadlines established by CMO 2A and quash Plaintiffs' subpoena for a deposition of Southwest Mississippi Regional Medical Center.

## ARGUMENT

Although trial in this case is scheduled to begin in just over a month—and the discovery deadline for the bellwether trials established by CMO 2A passed *nearly nine months ago*— Plaintiffs have issued a discovery subpoena, noticing the deposition of Southwest Mississippi Regional Medical Center for July 11 and requesting that the hospital produce documents regarding its "lab policies and procedures" and PT testing reagents. Plaintiffs should not be allowed to reopen discovery at this late date for three main reasons. *First*, Plaintiffs' requested discovery violates the Court's scheduling order, which required all fact discovery to be completed nearly nine months ago. Plaintiffs offer no explanation for their untimely request or for their failure to take discovery in accordance with the Court's deadlines. *Second*, an additional deposition and

further fact discovery shortly before trial is prejudicial to Defendants' trial preparation and strategy. *Third*, Plaintiffs seek discovery that is, by their expert's own admission, irrelevant to their theories of liability. The Court should quash the subpoena.

## I. Plaintiffs' requested discovery is untimely.

Plaintiffs' third-party subpoena is untimely, as this Court's generic and case-specific deadlines for the parties to complete discovery have long-since expired. As courts have recognized, "[s]cheduling orders and their enforcement are regarded as essential in ensuring that cases proceed to trial in a just, efficient, and certain manner." *Honeycutt v. City of Baton Rouge*, No. 15-472-JWD-EWD, 2016 WL 3965211, at *3 (M.D. La. July 22, 2016). And the Fifth Circuit has emphasized that "failures to meet discovery deadlines" unnecessarily "increase the cost of litigation, to the detriment of the parties enmeshed in it." *Garza v. Allstate Tex. Lloyd's Co.*, 284 F. App'x 110, 113 (5th Cir. 2008) (quoting *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990)). Plaintiffs' late notice and their failure even to attempt to demonstrate good cause for an extension, as required by Rule 16, precludes their eleventh-hour discovery request.

### A. The time for completing discovery has long-since expired, and Plaintiffs should not be allowed to disregard the Court's scheduling order.

Discovery has "ultimate and necessary boundaries," *see Riverkeeper v. Taylor Energy Co., LLC*, 309 F.R.D. 381, 384–85 (E.D. La. 2015), and, accordingly, the Federal Rules require courts to enter scheduling orders governing the time to complete discovery. *See* Fed. R. Civ. P. 16(b)(1), (3)(A). "Adherence to such scheduling orders [is] critical in maintaining the integrity of judicial proceedings." *Garza*, 284 F. App'x 110, 113 (quoting *1488, Inc. v. Philsec Inv. Corp.*, 939 F.2d 1281, 1289 (5th Cir. 1991)). Because district courts "have the inherent power to enforce their scheduling orders," *Nussli US, LLC v. Nola Motorsports Host Comm., Inc.*, Nos. 15-2167 & 15-2372, 2016 WL 6520139, at *12 (E.D. La. Nov. 3, 2016), courts have "routinely held that [Rule

4

45] subpoenas served outside of the discovery period are untimely," *Fleetwood Transp. Corp. v. Packaging Corp. of Am.*, No. 1:11MC45, 2011 WL 6151479, at *2 (M.D.N.C. Dec. 12, 2011).

Plaintiffs' third-party discovery subpoena here is procedurally improper and clearly contravenes CMO 2A, which set an October 3, 2016 deadline for the parties to complete fact discovery—including "fact witness depositions necessary for the four bellwether trials." CMO 2A ¶ 7. Procedurally, Plaintiffs were required to seek relief from CMO 2A and to demonstrate good cause why the scheduling order should be modified. They have not done so, which, by itself, is sufficient reason to quash their subpoena. And importantly, the parties clearly understood that CMO 2A established strict deadlines for the completion of discovery.[2] In fact, the stipulated nature of the Case Management Order and, accordingly, the fact-discovery deadline, makes Plaintiffs' request all the more inappropriate. Plaintiffs did not offer to meet and confer about the untimely discovery, nor did they seek relief from their stipulation. Instead, they simply noticed the deposition and requested documents as if the stipulation—and the Court's CMO 2A—did not exist. This is improper. *See Lee v. Cent. Gulf Towing, L.L.C.*, No. Civ. A. 04-1497, 2004 WL 2988478, at *2 (E.D. La. Dec. 9, 2004) (enforcing stipulation regarding discovery; "The orderly and efficient conduct of discovery depends to a large extent on the cooperation of counsel, who must be able to rely upon the agreements they make. An agreement was reached in this case, and there is no confusion or uncertainty about it.").

---

[2] In fact, the parties expressly stipulated to allow certain discovery after the expiration of the discovery deadline. In CMO 2B, the parties agreed that Plaintiffs would be allowed to conduct a 30(b)(6) deposition regarding "the indication for rivaroxaban for treatment of acute venous thromboembolism . . ., the so-called 'EINSTEIN indication, and the related development activities." CMO 2B ¶ 3(c)(1)(i). The parties further acknowledged that there were continuing discussions regarding Bayer's obligations to produce Dr. Lensing for a deposition prior to the *Mingo* trial and that "[i]f new evidence is discovered during the conduct of such a deposition, Plaintiffs and Defendants shall have the right to supplement any related expert reports." *Id.* ¶ 3(c)(1)(ii). These express carve-outs—and the statement that "[a]ll provisions of . . . CMO No. 2A other than those amended shall remain unchanged an in full force and effect"— demonstrate that the parties anticipated that all other discovery would be concluded in accordance with the Court's provided schedule.

5

Because compliance with scheduling orders is critical to the efficient resolution of cases, *see Garza*, 284 F. App'x at 113, courts routinely quash discovery subpoenas that are issued after the discovery deadline. *See, e.g.*, *Buisson Creative Strategies, L.L.C. v. Roberts*, No. 15-6272, 2017 WL 67527, at *2 (E.D. La. Jan. 6, 2017) (subpoenas that were issued after "the deadline for taking a deposition expired" were "technically untimely and in violation of the Court's scheduling orders"); *200 S. Broad St., Inc. v. Allstate Ins. Co.*, Nos. 07-9237 & 07-9238, 2009 WL 1649721, at *2–3 (E.D. La. June 11, 2009) (quashing deposition subpoena issued after the discovery deadline); *Chevron U.S.A. Inc. v. Aker Maritime, Inc.*, No. 03-2027, 2007 WL 1558710, at *1–2 (E.D. La. May 30, 2007) (quashing deposition subpoena issued weeks before trial where "discovery deadline in this case [had] lapsed"); *see also Hyatt v. State Farm Ins. Co.*, No. 06-8792-SSV-SS, 2008 WL 818965, at *2 (E.D. La. Mar. 25, 2008) (quashing 30(b)(6) deposition "noticed four working days before the conclusion of discovery" as untimely).[3] Rewarding late discovery requests distorts the orderly sequence of discovery and trial, a problem made particularly acute in an MDL, where the parties must be able to rely on discovery deadlines established by CMOs across the litigation as a whole—allowing late discovery in any particular case challenges the certainty that CMOs are intended to provide.

So too here. The parties were required to complete fact discovery nearly nine months ago, and trial is scheduled to begin in just a few weeks. It is no answer for Plaintiffs to say that their requested discovery is "important" and supposedly will be narrow in scope. As the court held in rejecting an identical argument in *Aker Maritime*, "[w]hile the matters that would be the subject of yet another deposition in this case may be important, ample opportunity to inquire into them has

---

[3] *Accord Joseph P. Carroll Ltd. v. Baker*, No. 09 Civ. 3174(SHS), 2012 WL 1232957, at *2 (S.D.N.Y. Apr. 12, 2012) ("It is black letter law that parties may not issue subpoenas pursuant to [Rule] 45 as a means to engage in discovery after the discovery deadline has passed." (citation and internal quotation marks omitted)).

6

already occurred, so that the explanation for the need to extend the discovery deadline is unpersuasive [and] no prejudice results by not extending the deadline." 2007 WL 1558710, at *2. Allowing Plaintiffs to reopen discovery at this late date—particularly where they had ample opportunity previously and have provided no explanation or justification for their delay—"would render the Court's scheduling order meaningless." *Briley v. Aquarius Boat Corp.*, No. 05-5711, 2007 WL 4532240, at *1 (E.D. La. Feb. 22, 2007).

### B. Plaintiffs have not even attempted to show good cause under Rule 16.

As this Court has recognized, under Federal Rule of Civil Procedure 16, "a movant *must* show good cause to modify the court's scheduling order after a deadline established in the scheduling order has expired." *Morales v. Bayou Concessions Salvage, Inc.*, No. Civ.A. 03-657, 2004 WL 1354468, at *1 (E.D. La. June 14, 2004) (Fallon, J.) (emphasis added); *see also United States ex rel. Bias v. Tangipahoa Par. Sch. Bd.*, 816 F.3d 315, 328 (5th Cir. 2016) ("Rule 16(b)(4) limits modifications to a scheduling order to situations where good cause is shown."). This good-cause requirement "applies to discovery deadlines established by the court." *Melancon v. Cargill Inc.*, No. 16-2977, 2017 WL 1927727, at *1 (E.D. La. May 10, 2017).

Plaintiffs here have not even attempted to show that there is good cause to extend the Court's discovery deadlines and allow discovery from an additional fact witness. Their failure to seek leave of court and demonstrate good cause before issuing a subpoena to Southwest Mississippi Regional Medical Center requires that the subpoena be quashed. *See, e.g.*, *Hamilton v. Ochsner Health Sys., Inc.*, No. 12-1398, 2012 WL 6725609, at *3 (E.D. La. Dec. 27, 2012) ("[S]ubpoenas are a form of discovery and subject to all of the strictures governing discovery, including the deadlines set in the [scheduling order. T]he subpoena in this case should not have been issued without permission from the court extending the discovery deadline." (citation

7

omitted)); *Jackson v. Wilson Welding Serv., Inc.*, No. 10-2843, 2012 WL 14265, at *2 (E.D. La. Jan. 4, 2012) (granting motion to quash where party "did not timely apply for an extension of the discovery deadline or attempt to demonstrate good cause"); *Ponson v. Bellsouth Telecomms., Inc.*, No. 09-0149, 2010 WL 1552802, at *3 (E.D. La. Apr. 16, 2010) (quashing discovery subpoenas for "failure to offer a good cause explanation" as required under Rule 16).

And, in any event, Plaintiffs cannot show good cause for their request. There is no reason that the proposed discovery of Southwest Mississippi Regional Medical Center could not have been conducted according to the stipulated schedule. The proposed subject matter of the deposition—the hospital's use of "PT testing" and the particular reagent used—is certainly not a new topic. In fact, Plaintiffs asked about this very topic in the depositions of Ms. Mingo's gastroenterologist and prescribing physician that they took on August 11 and August 12, 2016, respectively, well before the discovery deadline passed on October 3, 2016. *See* Jordon Dep. 192:24–193:2 ("Q. Do you know what reagent – what assay is used in your office or what reagent? A. No. You will have to ask the hospital."); Keith Dep. 228:7–25 ("Q. Very briefly, Doctor. If you still have Exhibit 15 in front of you, the lab results from Ms. Mingo's hospitalization. And if you'd turn to the last page of that. Doctor, prothrombin time is measure of the degree of anticoagulation a particular patient has, correct? A. It's pertaining to that Vitamin K dependent clotting factors, 2, 7, 9 and 10. Q. Well, you don't know what assay was used for this PT test do you? A. Not certainly, no. Q. Could have very well been Neoplastin, correct? A. I don't know that that would be the case. Q. Irregardless -- A. I'd have to check. They are the ones who regulate that stuff.").

Plaintiffs do not claim that there has been some new scientific development which suggests a new theory of liability that could not have been pursued earlier, or that some circumstance

beyond Plaintiffs' control prevented them from taking the intended deposition and requesting documents sooner.  Instead, Plaintiffs simply chose not to obtain discovery from Southwest Mississippi Regional Medical Center within the Court's deadline.  That voluntary choice, which they now apparently think better of, provides no basis to relieve them from the discovery deadline to allow them to take additional depositions on the eve of trial.  *See United States v. St. Bernard Par.*, Nos. 12-321, 12-322, & 12-325, 2013 WL 209025, at *1 (E.D. La. Jan. 17, 2013) (holding that "a lack of diligence in seeking discovery" forecloses a showing of good cause).

**II.     Allowing Plaintiffs to reopen discovery on the eve of trial would prejudice Defendants.**

The Court also should quash Plaintiffs' deposition notice because additional discovery scheduled mere weeks before trial is prejudicial.  *See In re Pool Prods. Distribution Market Antitrust Litig.*, MDL No. 2328, 2014 WL 1154334, at *5 (E.D. La. Mar. 21, 2014) (recognizing that a party "incur[s] significant costs, in terms of both time and expense, if [it] must prepare for and conduct a deposition" after the close of fact discovery).

The Court has made clear that the *Mingo* trial will start on August 7.  Plaintiffs' requested deposition—noticed for July 11—would take place less than a month before trial.  Such an eleventh-hour request necessarily "prejudice[s] . . . a party's trial preparation and strategy." *Huey v. Super Fresh/Sav-A-Center, Inc.*, No. 07-1169, 2008 WL 2633767, at *2 (E.D. La. June 25, 2008). *Huey* is an apt analogy—there, the court quashed a deposition subpoena issued mere weeks before trial, finding that unfair prejudice would result "if th[is] deposition[ is] required at this late date, when trial preparation—not further depositions—should be underway." *Id.*  Just so here, although there is *even greater* prejudice in this case because Plaintiffs' late deposition notice could potentially lead to the need for revised case-specific expert opinions and, based on the deposition testimony, potentially additional discovery of fact and expert witnesses and the filing of new dispositive or *Daubert* motions.  This simply cannot be done in time for trial, and the resultant

prejudice is incurable. *Cf. Perez v. City of New Orleans*, 173 F. Supp. 3d 337, 347 (E.D. La. 2016) (finding prejudice where Plaintiffs' late-disclosed discovery could require additional depositions just three weeks before trial).

Moreover, based on this deposition, trial witnesses could be asked about topics that were not raised at their own depositions and could unfairly subject Defendants to trial by ambush. This is particularly true here, where Plaintiffs are able to speak with Ms. Mingo's doctors *ex parte* but Defendants are not. As this Court has recognized, "allowing the Plaintiffs to ambush the Defendant" with additional witnesses or unexpected testimony on the eve of trial "is totally inconsistent with the purpose of the discovery rules." *Campo v. State Farm Fire & Cas. Co.*, No. 06-2611, 2007 WL 2710817, at *2 (E.D. La. Sept. 12, 2007) (Fallon, J.).

## III. Plaintiffs' deposition notice seeks information that their expert has conceded is not important to his opinions.

In any event, Plaintiffs' deposition notice requests discovery that their expert, Dr. Henry Rinder, has said is not important to his opinions. Plaintiffs seek testimony regarding "[t]he type of reagent used for prothrombin time (PT) testing by the lab at Southwest Mississippi Regional Medical Center in January and February 2015" (Exh. A, at 2), but Dr. Rinder opines that the type of PT reagent that is used doesn't matter to him.[4] Plaintiffs should not be allowed to take a deposition or otherwise obtain additional discovery—outside the discovery deadline and on the eve of trial—to inquire into matters that their expert contends are unimportant. *See, e.g.*,

---

[4] *See, e.g.*, Rinder Dep. 65:17–66:20 ("Q. And you don't know what reagent was used in administering that PT test, do you? A. I do not know the specific thromboplastin reagent that was used for the prothrombin time. . . . [M]y report does not refer to the specific thromboplastin reagent. But the fact that the pro time is so significantly prolonged, frankly it doesn't really matter which reagent was used."); *id.* at 68:2–13 ("A. I did not do that for the reason that I stated before, which is because that is irrelevant based on the fact that the prothrombin time is so prolonged. Even if it was the most insensitive reagents, that information is not germane."); *id.* at 88:13–19 ("The fact that the PT is so significantly prolonged in her, in Ms. Mingo, even without knowing what the thromboplastin reagent is, that's a significant prolongation. If they had the Neoplastin reagent they could have completely identified that and related that to the data that's out in the literature.").

*Armstrong v. Rite Aid*, No. 10-1647, 2011 WL 2838829, at *3 (E.D. La. July 14, 2011) (concluding that "defendant would be prejudiced by allowing additional discovery into irrelevant matters").

## CONCLUSION

The additional discovery that Plaintiffs seek is untimely, prejudicial, and, ultimately (in the view of Plaintiffs' expert) irrelevant. The Court should quash Plaintiffs' subpoena and Notice of Oral and Videotaped Deposition Pursuant to Fed. R. Civ. P. 30(b)(6) of Southwest Mississippi Regional Medical Center.

Respectfully submitted,

DRINKER BIDDLE & REATH LLP

By: /s/ *Susan M. Sharko*
Susan M. Sharko
DRINKER BIDDLE & REATH LLP
600 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
susan.sharko@dbr.com

Rodney M. Hudson
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
Telephone: (415) 591-7500
Rodney.hudson@dbr.com

Chanda A. Miller
DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2500
Chanda.Miller@dbr.com


BARRASSO USDIN KUPPERMAN FREEMAN & SARVER, L.L.C.

BY: /s/ *Richard E. Sarver*
Richard E. Sarver
Celeste R. Coco-Ewing
BARRASSO USDIN KUPPERMAN FREEMAN & SARVER, L.L.C.
909 Poydras Street, 24th Floor
New Orleans, Louisiana  70112
Telephone:  (504) 589-9700
rsarver@barrassousdin.com
ccoco-ewing@barrassousdin.com

*Attorneys for Defendants Janssen Pharmaceuticals, Inc. and Janssen Research & Development, LLC*

ARNOLD & PORTER KAYE SCHOLER LLP

By: /s/ *Andrew K. Solow*
Andrew K. Solow
Steven Glickstein
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8485
andrew.solow@apks.com
steven.glickstein@apks.com

William Hoffman
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
william.hoffman@apks.com


BRADLEY ARANT BOULT CUMMINGS LLP

By: */s/ Lindsey C Boney IV*
Kevin C. Newsom
Lindsey C. Boney IV
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place, 1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8803
knewsom@bradley.com


CHAFFE MCCALL L.L.P.
By: /s/ *John F. Olinde*
John F. Olinde
Chaffe McCall L.L.P.
1100 Poydras Street, Suite 2300
New Orleans, LA 70163
Telephone: (504) 585-7241
olinde@chaffe.com

*Attorneys for Bayer HealthCare Pharmaceuticals Inc. and Bayer Pharma AG*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 5th day of July, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs by operation of the court's electronic filing system.

*/s/      John F. Olinde*