UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE ELDON E. FALLON |
| Dora Mingo v. Janssen Research & Development, LLC et al. Case No. 2:15-cv-03469 | MAGISTRATE NORTH |

**BAYER'S MEMORANDUM IN SUPPORT OF MOTION (1) TO ENFORCE STIPULATED CASE MANAGEMENT ORDER AND (2) TO QUASH UNTIMELY 30(b)(6) DEPOSITION NOTICE TO BAYER DEFENDANTS**

Defendants Bayer HealthCare Pharmaceuticals Inc. and Bayer Pharma AG (collectively, "Bayer")[1] move to enforce the deadlines established in CMO 2A and to quash Plaintiffs' Notice of Oral and Videotaped Deposition Pursuant of Corporate Representative of the Bayer Defendants Pursuant to Fed. R. Civ. P. 30(b)(6), 30(b)(2), and 34 (Ex. 1) seeking broad discovery, including a deposition and document requests, related to the Canadian labeling of Xarelto.[2]

**INTRODUCTION**

Plaintiff's deposition notice and discovery demands effectively seek to unilaterally reopen generic discovery nearly nine months after the Court's October 3, 2016 deadline for discovery of Defendants. CMO 2A § A.3.c. Just like Plaintiffs' request to reopen case-specific

---

[1] The Janssen defendants additionally join this motion.
[2] Plaintiffs have also issued a "Notice of Oral and Videotaped Deposition Pursuant to Fed. R. Civ. P. 30(b)(6) of Southwest Mississippi Regional Medical Center," noticing an additional deposition on July 11, 2017. This notice is prejudicial in that it seeks additional discovery just over three weeks before trial, and it clearly contravenes the Court's CMO 2A, which set an October 3, 2016, deadline for Plaintiffs to conclude discovery. *See* CMO 2A ¶ 3(c). Accordingly, and as explained below with respect to Plaintiffs' notice of deposition to Bayer regarding Xarelto's Canadian label, the Court should quash Plaintiffs' 30(b)(6) deposition notice to Southwest Mississippi Regional Medical Center as untimely and prejudicial.

1

discovery through a third-party deposition of Southwest Mississippi Regional Medical Center (*see* SMRMC Br.[3]), this eve-of-trial discovery must also be denied as untimely as it violates both the Court's deadlines and express agreements between the parties regarding generic discovery of Defendants.

In addition to being untimely, this particular discovery also greatly prejudices Bayer. First, by merely serving this deposition notice and document requests without permission, Plaintiffs have already managed to divert Bayer's time from *Mingo* trial preparations in order to deal with this improper new discovery. This burden will only grow exponentially if Plaintiffs are granted a deposition and allowed to re-open document productions less than a month before the *Mingo* trial, as Bayer would need to prepare a 30(b)(6) witness on the myriad of topics raised, as well as undertake a new document collection and production review. Moreover, such discovery would also likely then necessitate re-opening expert discovery to opine on the results of the deposition and motion practice to deal with the results of all of that new discovery.

Finally, and perhaps most importantly, Plaintiffs' notice seeks broad discovery directed to the Canadian Xarelto label that is not at issue in the case, particularly in light of the Court's ruling in *Orr* that the labeling in Canada is subject to different rules and is therefore not itself relevant. Reopening fact discovery at this late date on a topic that is irrelevant will jeopardize the August 7 trial date in contravention of the Court's scheduling order and in prejudice to Defendants. The Court should enforce the agreed-upon discovery deadlines established by CMO 2A and quash Plaintiffs' notice of deposition of a corporate representative of Bayer.

---

[3] References to "SMRMC Br." refer to Defendants' Joint Memorandum in Support of Motion (1) to Enforce Stipulated Case Management Order and (2) to Quash Untimely Deposition Subpoena Served on Southwest Mississippi Regional Medical Center, filed contemporaneously with this motion. Because many of the arguments in the two motions to quash Plaintiffs' untimely discovery requests, Bayer incorporates the SMRMC brief by reference here.

**ARGUMENT**

Although trial in this case is scheduled to begin in just over a month—and the discovery deadline for the bellwether trials established by CMO 2A passed *nearly nine months ago*—Plaintiffs have issued a notice of deposition under FRCP 30(b)(6), noticing the deposition of a corporate representative of the Bayer defendants for July 14. Plaintiffs should not be allowed to reopen discovery at this late date for three main reasons. *First*, Plaintiffs' requested discovery violates the Court's scheduling order, which required all fact discovery to be completed nearly nine months ago. Plaintiffs offer no explanation for their untimely request or their failure to take discovery in accordance with the Court's deadlines, while the record confirms that Plaintiffs were actually in a position to seek this discovery more than a year ago, but chose not to do so. *Second*, an additional deposition shortly before trial is prejudicial to Defendants' trial preparation and strategy. *Third*, Plaintiffs seek discovery that is irrelevant, in light of the Court's ruling in *Orr* regarding documents pertaining to the Canadian label. The Court should quash the notice of deposition.

**I.      Plaintiffs' requested discovery is untimely.**

It is undisputed that the fact discovery deadline was October 3, 2016, nine months ago. CMO 2A § A.3.c. As Defendants have already shown, the extreme lateness of Plaintiffs' deposition notice is sufficient grounds to quash it. (*See* SMRMC Br. at 4-6.) Courts routinely grant such motions to quash, as rewarding late discovery requests would otherwise distort the orderly sequence of discovery and trial, as reflected in CMO 2A, which set the October 3, 2016 deadline for completion of discovery of Defendants. This distortion is particularly acute in an MDL, where the parties must be able to rely on discovery deadlines established by the CMOs across the litigation as a whole. Allowing late discovery in any particular case challenges the

certainty that CMOs are intended to provide. Plaintiffs' choice to unilaterally serve discovery requests without seeking permission or demonstrating good cause further confirms that Plaintiffs' notice is improper and should not be rewarded.

Defendants have also established that Plaintiffs failed to demonstrate "good cause" for their untimely discovery request, which is separate and sufficient grounds to quash the deposition notice. (*See* SMRMC Br. at 6-8.) Nor can Plaintiffs even *possibly* demonstrate "good cause" here, as Plaintiffs were fully aware of the relevant issues and documents early in the case, but failed to pursue them in a timely manner, in several cases affirmatively choosing not to do so.

Plaintiffs' new deposition notice relates entirely to the Canadian label for Xarelto, which is neither a new development nor previously unknown to Plaintiffs. Defendants produced relevant correspondence related to the Canadian label that was approved by Health Canada in June 2015 and January 2016, and this issue was probed during depositions of Bayer employees, all during the stipulated and ordered discovery period. Likewise, Plaintiffs' expert witnesses have already offered opinions on the Canadian label during the stipulated and ordered discovery period. As such, there is simply no "good cause" for Plaintiffs' untimely attempt to re-open discovery at this late stage, and this discovery should not be permitted.

Plaintiffs' first two deposition topics in this 30(b)(6) deposition notice quote an entire paragraph that purportedly appeared in an October 2014 version of Xarelto's Canadian monograph:

> Although there is no need to monitor clinical practice, in certain infrequent situations such as overdosage, acute bleeding, urgent surgery, in cases of suspected noncompliance, or in other unusual circumstances, assessment of the anticoagulant effect of rivaroxaban may be appropriate. Accordingly, measuring PT using the Neoplastin reagent or Factor-Xa assay using rivaroxaban-specific calibrators and controls, may be useful to inform clinical decisions in these circumstances.

4

The Court may recognize the quoted paragraph on which Plaintiffs now seek discovery. In *Orr*, Plaintiffs introduced PX 190, correspondence between Bayer and Health Canada, in order to raise this language with their own expert, Dr. Parisian, as well as with Janssen's Sanjay Jalota.[4] (*Orr.* Tr. at 1226:7-15, 1688:2-20, 2460:21-24.) Plaintiffs' new deposition notice, then, is most accurately read as an attempt to pursue discovery on PX 190, even though Plaintiffs' topics fail to identify the document directly. Understanding that this deposition notice seeks discovery on PX 190, however, only confirms that the lateness of Plaintiffs' deposition notice is inexcusable.

On its face, PX 190 represents a November 24, 2014 submission from Bayer to Health Canada, in response to an October 3, 2014 "Clarification Request" from Health Canada to Bayer. It is undisputed that both of these correspondences were timely produced by Defendants during the stipulated and ordered discovery period. The October 3, 2014 "Clarification Request" from Health Canada had been produced to Plaintiffs as XARELTO_JANSSEN_00331087 on June 8, 2015, more than a full year prior to the Court's discovery deadline, and two years before service of Plaintiffs deposition notice. PX 190 was timely produced to Plaintiffs on January 15, 2016 as XARELTO_JANSSEN_15297604, nearly 9 months before the now-operative October 3, 2016 discovery deadline.

The record is also undisputed that Plaintiffs questioned a Bayer witness on this line of Health Canada correspondence[5] during the stipulated and ordered discovery period. At the deposition of Bayer's Juergen Weber, Plaintiffs introduced Health Canada's October 3, 2014

---

[4] PX 190 was admitted over Defendants' objection, and Defendants maintain that introduction of the document risks confusing the jury by introduction of the irrelevant Canadian label. While the Court overruled Defendants' objections, the Court agreed that the Canadian label was irrelevant, that the jury should not be exposed to the Canadian label, and that a strict limiting instruction was necessary.

[5] Bayer additionally notes that the 30(b)(6) deposition topics in Plaintiffs' untimely notice also overlap with a 30(b)(6) deposition Plaintiffs previously took in this case, of Bayer representative Mark Dumbovich. Plaintiffs took the 30(b)(6) of Bayer on topics including the "backup and preservation" of data on computers and network servers. (*See* Ex. 2, Dumbovich Depo Ex. 1.) As the prior deposition topics were not limited to the United States, Plaintiffs' new topics related to "documents and/or electronically stored data" necessarily duplicate the previous deposition and would give Plaintiffs' an improper second bite at the apple.

5

request as Weber Exhibit 18, asking Mr. Weber a line of questions about its significance. (Ex. 3, Weber Tr. 194:22-201:10.) As Mr. Weber's deposition took place on May 19, 2016, PX 190 had already been produced four months prior, and could have been used with Mr. Weber by Plaintiffs as well, had they chosen to do so. Plaintiffs were also told by Mr. Weber that "if you want to ask details about what specific they submitted, you'd have to ask with my Canadian colleagues." (Ex. 3, Weber Tr. 33:1-33:4.) While Plaintiffs later used the Canadian label as a general exhibit with some deponents, they did not ask questions on this line of correspondence with Health Canada to any witness other than Mr. Weber ahead of the Court's discovery deadline. (*See, e.g.*, Ex. 4, Berkowitz Tr. 288:23-289:4.)

Furthermore, the record reflects that Plaintiffs affirmatively chose to limit their discovery regarding Canadian regulatory issues. In April 2016, over one year ago, Bayer provided Plaintiffs a list of possible document custodians from whom Bayer could produce files (Ex. 5, 4/22/16 Coon E-mail and Attachment), including Alison Maloney, an employee who had been previously identified as responsible for Canadian regulatory contacts.[6] (*See id.* at § 3; Ex. 6, 1/27/16 Coon E-mail.) In its responses to Bayer's list of possible custodians, however, Plaintiffs never requested production from Ms. Maloney, and on July 14, 2016, the parties reached agreement on a set of custodians that did not include Ms. Maloney. (Ex. 7, 7/14/16 Barr E-mail Chain.) Furthermore, the PSC expressly agreed at that time that "there will be no further requests for files or additional changes to the remaining document production schedule unless the PSC obtain an Order from the Court upon a showing of good cause, as required by CMO 21." (*See* Ex. 7, 7/14/16 Barr E-mail Chain at 1-2, 4.) Ignoring their express agreement not to seek

---

[6] Consistent with Bayer's position at trial and at all other times in this litigation, at the time that Bayer identified Ms. Maloney, Bayer also expressed its view that the Canadian regulatory process was not relevant to this litigation. (Ex. 6, 1/27/16 Coon E-mail.) Bayer raises this discovery history only to demonstrate Plaintiffs' many opportunities to seek this discovery before the Court's deadline, and failed to do so.

further document discovery without permission from the Court and a showing of good cause, Plaintiffs now seek to unilaterally reopen discovery on topics they had previously foregone.

Having had ample time and opportunity during the discovery period to seek such discovery, Plaintiffs should not be permitted to suddenly re-open discovery on the eve of trial. Plaintiffs cannot reasonably deny either that they were aware of this line of correspondence with Health Canada, or that they were able to pursue it prior to the Court's deadline but failed to do so.

Plaintiffs do not claim that there has been some new scientific development that suggests a new theory of liability that could not have been pursued earlier, or that some circumstance beyond Plaintiffs' control prevented them from seeking the intended deposition sooner. Instead, Plaintiffs simply failed to seek this deposition within the Court's deadline, which provides no basis to relieve them from the discovery deadline and allow them to take additional depositions on the eve of trial. *See United States v. St. Bernard Par.*, Nos. 12-321, 12-322, & 12-325, 2013 WL 209025, at *1 (E.D. La. Jan. 17, 2013 (holding that "a lack of diligence in seeking discovery" forecloses a showing of good cause).

II. **Allowing Plaintiffs to reopen discovery on the eve of trial would prejudice Defendants.**

The Court also should enforce the existing case management order and quash Plaintiffs' deposition notice because an additional deposition scheduled mere weeks before trial is prejudicial. *See In re Pool Prods. Distribution Market Antitrust Litig.*, MDL No. 2328, 2014 WL 1154334, at *5 (E.D. La. Mar. 21, 2014) (recognizing that a party "incur[s] significant costs, in terms of both time and expense, if [it] must prepare for and conduct a deposition" after the close of fact discovery).

7

The Court has made clear (most recently at the June 26th status conference, several days before Plaintiffs served their untimely notice of deposition) that the *Mingo* trial will start on August 7. Plaintiffs' requested deposition—noticed for July 14—would take place less than a month before trial. Such an eleventh-hour request necessarily "prejudice[s] . . . a party's trial preparation and strategy." *Huey v. Super Fresh/Sav-A-Center, Inc.*, No. 07-1169, 2008 WL 2633767, at *2 (E.D. La. June 25, 2008). *Huey* is an apt analogy—there, the court quashed a deposition subpoena issued mere weeks before trial, finding that unfair prejudice would result "if th[is] deposition[ is] required at this late date, when trial preparation—not further depositions—should be underway." *Id.* Just so here, although there is *even greater* prejudice in this case because Plaintiffs' late deposition notice could potentially lead to the need for even broader discovery related to and in response to the deposition.

Furthermore, a 30(b)(6) deposition of Bayer would be particularly prejudicial, as it would require not only defending a deposition, but also extensive time and expense on Bayer's part to prepare a witness on behalf of the company on the broad topics that Plaintiffs have identified. Plaintiffs' notice of deposition includes several categories of documents on which they seek discovery, including "[e]ach and every scientific or prescription drug standard, guideline or requirement promulgated by Canadian regulators which either controlled or influenced the content of any Bayer communications and/or Xarelto label language" related to the deposition topics, as well as "[a]ll documents responsive" to those topics. (Ex. 1 at 6-7.) Such a request would require Bayer to perform detailed technical research regarding complex Health Canada standards, which have no bearing on this litigation, and then provide the fruits of that research to Plaintiffs. Plaintiffs effectively seek to have Bayer formulate Plaintiffs' own trial arguments, which improperly puts burdens on Bayer that Plaintiffs should be bearing themselves.

Plaintiffs' notice also includes document requests, including discovery on how Bayer "has advised or advises physicians in Canada," and "[a]ny communications initiated by or on behalf of a Bayer entity to anyone outside the Bayer organization on the subject of the use of a PT test in connection with Xarelto therapy."  Given the potential breadth of these discovery requests, it is simply not possible to prepare such discovery either by Plaintiffs' demanded date of deposition or the start of trial in *Mingo*.  Such discovery would take significant time and resources, potentially involving document collection and review, following by identification of and contact with large numbers of third parties, including former employees of Bayer.  Such a large and costly re-opening and expansion of discovery cannot possibly be completed by either Plaintiffs' deadline for this deposition or the Courts' start date for *Mingo*.  That these burdens would themselves distract Bayer from *Mingo* trial preparations merely compounds this prejudice.

The deposition that Plaintiffs seek could also potentially lead to the need for revised case-specific and generic expert opinions[7] and, based on the deposition testimony, potentially additional discovery and motion practice.  This simply cannot be done in time for trial, and the resultant prejudice is incurable.  *Cf. Perez v. City of New Orleans*, 173 F. Supp. 3d 337, 347 (E.D. La. 2016) (finding prejudice where Plaintiffs' late-disclosed discovery could require additional depositions just three weeks before trial); *see also Providence Piers, LLC v. SMM New England, Inc.*, No. 12-532 S, 2014 U.S. Dist. LEXIS 157125 at *10-11 (D.R.I. Nov. 6, 2014) (failure to comply with discovery deadlines not harmless when later deposition "could reveal information that necessitates a response from [Defendants'] rebuttal experts, which will inevitably cause delay now that expert discovery has closed").

---

[7] Notably, CMO 2B reflects this likelihood related to other post-deadline discovery.  Section 3.c.1.ii recognized that, if a fact deposition was permitted to take place after the close of discovery, "new evidence [may be] discovered during the conduct of such a deposition," at which point "Plaintiffs and Defendants shall have the right to supplement any related experts."  The logic behind CMO 2B would apply equally here.

Moreover, based on this deposition, trial witnesses could be asked about topics that were not raised at their own depositions and could unfairly subject Defendants to trial by ambush. This is particularly true here, where Plaintiffs are able to speak with Ms. Mingo's doctors *ex parte* but Defendants are not. As this Court has recognized, "allowing the Plaintiffs to ambush the Defendant" with additional witnesses or unexpected testimony on the eve of trial "is totally inconsistent with the purpose of the discovery rules." *Campo v. State Farm Fire & Cas. Co.*, No. 06-2611, 2007 WL 2710817, at *2 (E.D. La. Sept. 12, 2007) (Fallon, J.).

### III. Plaintiffs' deposition notice seeks information that the Court has already expressly held to be irrelevant.

Even if Plaintiffs had sought this discovery in a timely manner, if Plaintiffs had an excuse for why it was being sought so soon before trial, or if it were not so prejudicial to Defendants, it would still be fatally irrelevant to any issue in this litigation.

When Plaintiffs introduced PX 190 at trial in *Orr*, the Court was very careful and clear to circumscribe the document's relevance. The Court has explained that the potential, narrow significance of PX 190 related only to "what the defendant knew, when they knew it." (*Orr* Tr. 1220:14-16.) The Court, on the other hand, was "not interested in what the label is or any reference to the label," and told Plaintiffs beforehand that it would instruct the jury to disregard the Canadian label for any other purposes beyond that narrow issue. (*Orr* Tr. 1221:8-15.) As the Court recognized, the Canadian label is not itself relevant, "because the rules are different, the laws are different, the specifics are different." (*Orr* Tr. 1977-11.)

Despite that narrow use permitted by the Court, Plaintiffs now seek broad new discovery into the Canadian label and PX 190. Topics on which Plaintiffs demand a deposition include "medical and scientific literature that supports the statement" from PX 190, and the extent to which Bayer communications were ultimately "reflected in a label for the use of Xarelto in

10

Canada."  All of this runs contrary to the Court's instruction that "why they sent it and what the other person did about" Bayer communications was simply not relevant, and certainly not the basis for admission of PX 190 in *Orr*.  Rather than trying to tailor its untimely discovery to the narrow allowances in *Orr*, Plaintiffs attempt to use the *Orr* ruling as a springboard for discovery that the Court has made clear it considers irrelevant, providing one more sufficient basis to quash the notice of deposition.  *See, e.g.*, *Armstrong v. Rite Aid*, No. 10-1647, 2011 WL 2838829, at *3 (E.D. La. July 14, 2011) (concluding that "defendant would be prejudiced by allowing additional discovery into irrelevant matters").

## CONCLUSION

The additional discovery that Plaintiffs seek is untimely, prejudicial, and, ultimately, irrelevant.  The Court should enforce the stipulated case management order and quash Plaintiffs' Notice of Oral and Videotaped Deposition of Corporate Representative of the Bayer Defendants Pursuant to Fed. R. Civ. P. 30(b)(6), 30(b)(2), and 34.

Respectfully submitted,

        ARNOLD & PORTER KAYE SCHOLER LLP

        By: /s/ *William Hoffman*
        William Hoffman
        ARNOLD & PORTER KAYE SCHOLER LLP
        601 Massachusetts Ave., NW
        Washington, D.C. 20001
        Telephone: (202) 942-5000
        william.hoffman@apks.com
        Andrew K. Solow
        Steven Glickstein
        ARNOLD & PORTER KAYE SCHOLER LLP
        250 West 55th Street
        New York, New York 10019-9710
        Telephone: (212) 836-8485
        andrew.solow@apks.com
        steven.glickstein@apks.com

BRADLEY ARANT BOULT CUMMINGS LLP

By: */s/ Lindsey C Boney IV*
Kevin C. Newsom
Lindsey C Boney IV
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place, 1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8803
knewsom@bradley.com


CHAFFE MCCALL L.L.P.
By: /s/ *John F. Olinde*
John F. Olinde
Chaffe McCall L.L.P.
1100 Poydras Street, Suite 2300
New Orleans, LA 70163
Telephone: (504) 585-7241
olinde@chaffe.com


*Attorneys for Bayer HealthCare Pharmaceuticals Inc. and Bayer Pharma AG*