# Exhibit 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | * * * | MDL 2592 |
| | * | SECTION L |
| THIS DOCUMENT RELATES TO ALL CASES | * * | JUDGE ELDON E. FALLON |
| | * * | MAG. JUDGE NORTH |

* * * * * * * * * * * * * * * * * * * * * * * *

**NOTICE OF ORAL AND VIDEOTAPED DEPOSITION OF
CORPORATE REPRESENTATIVE OF THE BAYER DEFENDANTS
PURSUANT TO FED. R. CIV. P. 30(b)(6), 30(b)(2), and 34**

**TO:**  Bayer Corporation;
Bayer AG;
Bayer Healthcare AG
Bayer Healthcare LLC
Bayer HealthCare Pharmaceuticals Inc.,
Bayer Pharma AG f/k/a Bayer Schering Pharma AG
(Collectively referred to as the "Bayer Defendants")

PLEASE TAKE NOTICE that pursuant to Rules 30(b)(6), 30(b)(2), and 34 of the Federal Rules of Civil Procedure, Plaintiffs, by and through their undersigned attorneys, the Plaintiffs Steering Committee ("PSC") in the above-captioned Multidistrict Litigation, will take the deposition of the Bayer Defendants through their designated agent(s).

The deposition will commence on **July 14, 2017**, at **9:00 a.m.**, at **Herman, Herman & Katz, LLC, 820 O'Keefe Avenue, New Orleans, Louisiana  70113, or such other date, time and/or location as is agreed upon by the parties,** and continue until completed, at a mutually agreed upon location to be announced.  Said deposition will be taken before a court reporter authorized to administer oaths and will be recorded on videotape.  This deposition is being taken for the purposes of discovery, for use at trial, or for such other purposes as are permitted under the Federal Rules of Civil Procedure and local rules.  Pursuant to the rules, the Bayer Defendants are hereby directed to designate one or more officers, directors, managing agents, or other persons

who consent to testify and are most knowledgeable and competent to testify regarding the matters designated below and as to such information that is known or reasonably available to Bayer Defendants. The following shall apply to the instant deposition(s):

## **DEFINITIONS**

The following definitions apply to this Notice of Deposition and are deemed to be incorporated into each subject listed below:

1. "DOCUMENTS" and "DOCUMENTATION" as used in this Request is defined to be synonymous in meaning and equal in scope to the usage of the terms "DOCUMENTS" and "tangible things" in Fed. R. Civ. P. 34, and shall have the broadest possible meaning and interpretation ascribed to the terms "DOCUMENTS" and "tangible things" under Fed. R. Civ. P. 34, and the applicable Local Rules. A draft or non-identical copy is a separate document within the meaning of these terms. Consistent with the above definition, the term DOCUMENT shall include, without limitation, any designated documents and electronically stored information ("ESI") including any database, writings, drawings, graphs, charts, photographs, sound recordings, images and other data or data compilations – stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonable usable form, or any designated tangible things. "DOCUMENTS" shall include, without limitation, email, instant-messages, text messages, correspondence, memoranda, notes, records, committee minutes, notes or minutes of meetings or other communications of any type, including inter-and intra-office communications, optical media, including without limitation CD-ROM, CD-R, CD-RW and DVD disks, electronic mail and preliminary versions, draft or revisions of any of the foregoing. This definition includes copies of duplicates of "DOCUMENTS" contemporaneously or subsequently created which have any non-conforming notes or other markings.

2. "Communication" and/or "correspondence" shall mean and refer to any oral, written, spoken or electronic transmission of information, including but not limited to, meetings, discussions, conversations, telephone calls, memoranda, letters, emails, text messages, voice messages, instant messages, facsimile, postings, instructions, conferences, or seminars or any other exchange of information between yourselves or between you and any other person or entity.

3. "Computer" means all devices utilizing microchips to facilitate processing, analysis, or storage of data, including microcomputers (also known as personal computers), laptop computers, portable computers, notebook computers, palmtop computers (also known as personal digital assistants or PDA's), iPhones and/or Android Phones or other smart phones, iPads or other tablet devices, minicomputers and mainframe computers. "Computer system," when used in reference to any computer, includes the following

information: (a) the computer type, brand, and model, and (b) the brand and version of all software, including the operating system, private- and custom-developed applications, commercial applications, and/or shareware.

4. "Electronic data" or "data" means the original (native electronic format), and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. Electronic data includes, by way of example only, computer programs (whether private, commercial, or works-in-progress), programming notes or instructions, activity listings of electronic mail receipts and/or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, operating systems, source code of all types, peripheral drivers, PIF files, batch files, ASCII files, and any and all miscellaneous files and/or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists of an active file, deleted file or file fragment. Electronic data includes any and all items stored on computer memories, hard disks, floppy disks, CD-ROMs, removable media such as zip drives, usb drives, storage cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types, Cloud-based storage such as Dropbox and/or iCloud, microfiche, punched cards, punched tape, computer chips, including, but not limited to EPROM, PROM, RAM and ROM, on or in any other vehicle for digital data storage and/or transmittal. The term electronic data also includes the file, folder tabs and/or containers and labels appended to, or associated with, any physical storage device associated with each original and/or copy.

5. "Electronic media" means any magnetic or other storage media device used to record electronic data. Electronic media devices may include computer memories, hard disks, floppy disks, CDROM, removable media such as Bernoulli Boxes and their equivalent, magnetic tapes of all types, Cloud-based storage such as Dropbox and/or iCloud, microfiche, punched cards, punched tape, computer chips, including, but not limited to EPROM, PROM, RAM and ROM, or on or in any other vehicle for digital data storage and/or transmittal.

6. "Identify" or "identity" with respect to persons, means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment.

7. "Native Electronic Format" shall mean and refer the state of an electronic file as it presently exists on any and all computers, electronic media devices, networks or any other locations where data may be stored (including back-up servers, deleted folders, hidden folders, etc.), with all of the file's original metadata intact, meaning that the metadata fields have not been altered, deleted, updated or modified in any way.

8. "Network" means any hardware and/or software combination that connects two or more computers together and which allows the computers to share and/or transfer data between them. For the purposes of this definition, the connection between or among the computers need not be either physical or direct, *i.e.*, wireless networks, and sharing and/or transferring data via indirect routes utilizing modems and phone company facilities. In addition, there need not be a central file or data server nor a central network operating system in place, *i.e.*, peer-to-peer networks and networks utilizing a mainframe host to facilitate data transfer.

9. "Person" means natural person, as well as corporate and/or governmental entity.

10. "FDA" means the United States Department of Health and Human Services and any and all subordinate organizations including but not limited to the United States Food and Drug Administration and the Office of the Secretary, and any and all committees, subcommittees, advisory committees and subordinate organizations thereto, and any person, employee or agent acting as a representative thereof.

11. "Foreign Government Regulatory Authority" means any agency, committee, subcommittee or advisory committee of any government other than the United States of America, which bears responsibility or exercises authority over the manufacture, distribution, labeling, sale, and marketing of pharmaceutical products or human health in any jurisdiction, and any employee or agent acting as a representative thereof.

12. "Possession, custody or control" shall mean and refer to any documents in your possession, custody or control. A document is deemed to be in your "possession, custody or control" if is in your physical custody, or if it is in the physical custody of another person or entity and you: (a) own such document in whole or in part; (b) have a right by contract, statute or otherwise to use, inspect, examine or copy such document on any terms; (c) have an understanding, express or implied, that you may use, inspect, examine or copy such document on any terms; or (d) have, as a practical matter, been able to use, inspect, examine or copy such document when you have sought to do so. Such documents shall include, without limitation, documents that are in the custody of your attorney(s), employees, staff, representatives and agents.

13. "XARELTO" is used to refer to the blood-thinning medicine (rivaroxaban) and any predecessor or non-final derivation of the drug that later became Xarelto.

14. "Anticoagulants" means any of the class of drugs or medicines that are used to prevent clotting.

15. "Blood-thinners" means any of the class of drugs or medicines that are used to prevent clotting.

16. "NOACs" means novel oral anticoagulants.

17. Unless otherwise indicated, the "relevant period" for the information sought is January 1, 2010 to the present.

18. "Relating to," "relate to," "referring to," "refer to," "reflecting," "reflect," "concerning," or "concern" shall mean evidencing, regarding, concerning, discussing, embodying, describing, summarizing, containing, constituting, showing, mentioning, reflecting, pertaining to, dealing with, relating to, referring to in any way or manner, or in any way logically or factually, connecting with the matter described in that paragraph of these demands, including DOCUMENTS attached to or used in the preparation of or concerning the preparation of the DOCUMENTS.

19. "Or" and "and" will be used interchangeably.

20. "Bayer," "J&J" or "Defendants" refer to Defendants (both collectively and individually) as well as all of their partners, directors, officers, employees, servants, agents, attorneys, joint venturers, third-party contractors or other representatives, including all corporations and entities affiliated with Defendants, including, but not limited to Johnson & Johnson Pharmaceutical Research & Development, L.L.C., Bayer Pharmaceuticals Corporation, Bayer HealthCare AG, Ortho McNeil Pharmaceuticals, Inc., and Janssen-Cilag International N.V.

21. The terms "Bayer Defendants," "YOU," or "YOUR" shall also include all predecessor business entities, as well as any predecessor's partners, directors, officers, employees, servants, agents, attorneys, joint venturers, third-party contractors or other representatives of Bayer Corporation; Bayer AG; Bayer Healthcare AG Healthcare Pharmaceuticals Inc.; or Bayer Pharma AG.

22. Each deponent is instructed to produce at the deposition: copies of any and all DOCUMENTS reviewed or read in preparation for the deposition; copies of any and all DOCUMENTS or tangible things related to or referring to the subjects listed in this notice contained in the deponent's files, papers, or other materials; and a copy of his or her resume or Curriculum Vitae.

23. The Bayer Defendants shall designate as many responsive witnesses as necessary to testify on YOUR behalf with respect to the deposition subject matter topics listed below.

**DEPOSITION SUBJECT MATTER**

In accordance with Rule 30(b)(6) of the Federal Rules of Civil Procedure, YOU shall designate one or more officers, directors, managing agents, employees, or other sufficiently knowledgeable persons to testify concerning the following topics and as to such information that is known or reasonably available to Bayer Defendants:

1. The label or Monograph of the Foreign Government Regulatory Authority in Canada regarding Xarelto in effect as of October 2014, which states: "Although there is no need to monitor clinical practice, in certain infrequent situations such as overdosage, acute bleeding, urgent surgery, in cases of suspected noncompliance, or in other unusual circumstances, assessment of the anticoagulant effect of rivaroxaban may be appropriate. Accordingly, measuring PT using the Neoplastin reagent or Factor-Xa assay using rivaroxaban-specific calibrators and controls, may be useful to inform clinical decisions in these circumstances."

2. Whether any Bayer entity has advised or advises physicians in Canada since the Foreign Government Regulatory Authority in Canada approved Xarelto for marketing in Canada regarding the statement in the Canadian label or Monograph to the effect that: "Although there is no need to monitor clinical practice, in certain infrequent situations such as overdosage, acute bleeding, urgent surgery, in cases of suspected noncompliance, or in other unusual circumstances, assessment of the anticoagulant effect of rivaroxaban may be appropriate. Accordingly, measuring PT using the Neoplastin reagent or Factor-Xa assay using rivaroxaban-specific calibrators and controls, may be useful to inform clinical decisions in these circumstances."

3. The medical and scientific literature that supports the statement in the Canada Healthcare label quoted in Topic No. 1.

4. Any communication initiated by or on behalf of a Bayer entity to anyone outside of the Bayer organization on the subject of the use of a PT test in connection with Xarelto therapy, made either in the course of the application for the approval of Xarelto in Canada or made to Canadian physicians through any means since that approval.

5. The extent to which any communication referred to in Topic No. 4 is reflected in a label for the use of Xarelto in Canada.

6. The extent to which any communication referred to in Topic No. 5 was approved for inclusion in the Canadian label for Xarelto either solely or primarily on the basis of information provided to Canadian regulators by or on behalf of a Bayer entity, and not solely or primarily on the basis of information separately developed by or on behalf of Canadian regulators.

7. The existence of the documents and/or electronically stored data requested below pursuant to Fed.R.Civ.P. 34.

8. The systems, process and purpose for the creation, duplication and/or storage of the documents and/or electronically stored data requested below pursuant to Fed.R.Civ. P. 34.

9. Any and all document and/or electronically stored data retention/destruction policies that relate to any of the documents requested below pursuant to Fed.R.Civ.P. 34.

10. The location of the documents and/or electronically stored data requested below pursuant to Fed.R.Civ.P.34.

11. The organization, indexing and/or filing of the documents and/or electronically stored data requested below pursuant to Fed.R.Civ.P. 34.

12. The method of search for the documents and/or electronically stored data requested below pursuant to Fed.R.Civ.P. 34.

13. The completeness of the documents and/or electronically stored data produced pursuant to Fed.R.Civ.P. 34.

## SCHEDULE OF DOCUMENTS

1. Each and every scientific or prescription drug standard, guideline or requirement promulgated by Canadian regulators which either controlled or influenced the content of any Bayer communications and/or Xarelto label language referred to in Topic Nos. 4,5 or 6, and, if so, how so.

2. All correspondence to and from the Canada Health regulatory body regarding any and all Xarelto monographs.

3. Each version of the Xarelto monograph since initial approval by Canada Health.

4. All documents responsive to the above Topics which are produced pursuant to this Notice.

**PLEASE TAKE NOTICE** that this document request is deemed continuing. Should you in the future discover any information relating to any of the above matters of inquiry, you are required to notify Plaintiffs' counsel of this new or additional information by way of supplemental discovery responses, pursuant to Fed.R.Civ.P. 26 (e).

DATE:  June 27, 2017                                   Respectfully submitted,

/s/ Leonard A. Davis
Leonard A. Davis, Esq. (Bar No. 14190)
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue
New Orleans, LA 70113
PH: (504) 581-4892
FAX: (504) 561-6024
Email: ldavis@hhklawfirm.com

Gerald E. Meunier (Bar No. 9471)
GAINSBURGH    BENJAMIN    DAVID
MEUNIER &WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
PH: (504) 522-2304
FAX: (504) 528-9973
Email: gmeunier@gainsben.com

*Plaintiffs' Liaison Counsel*

8

## PLAINTIFFS' STEERING COMMITTEE

Andy D. Birchfield, Jr. (Co-Lead Counsel)
234 Commerce Street
Post Office Box 4160
Montgomery, Alabama 36103-4160
Phone: (334) 269-2343
Fax: (334) 954-7555
Email: Andy.Birchfield@BeasleyAllen.com

Brian H. Barr (Co-Lead Counsel)
316 Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7045
Fax: (850) 436-6044
Email: bbarr@levinlaw.com

Russell T. Abney
2100 RiverEdge Parkway,
Suite 720
Atlanta, Georgia 30328
Email: rabney@lawyerworks.com

Dr. Mark Alan Hoffman
1650 Market Street, Suite 3450
Philadelphia, PA 19103
Phone: (215) 574-2000
Fax: (215) 574-3080
Email: mhoffman@rossfellercasey.com

Michael Goetz
201 N. Franklin St., 7th Floor
Tampa, FL 33602
Phone: (813) 221-6581
Fax: (813) 222-4737
Email: MGoetz@ForThePeople.com

Neil D. Overholtz
17 E. Main Street, Suite 200
Pensacola, Florida 32501
Phone: (850) 916-7450
Fax: (850) 916-7449
Email: noverholtz@awkolaw.com

Bradley D. Honnold
11150 Overbrook Rd., Ste. 200
Leawood, KS 66211
Phone: (913) 266-2300
Fax: (913) 266-2366
Email: bhonnold@bflawfirm.com

Frederick S. Longer
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215-592-4663
Email: flonger@lfsblaw.com

Jeffrey S. Grand
550 Broad Street, Suite 920
Newark, NJ 07102
Phone: (973) 639-9100
Fax: (973) 639-9393
Email: jgrand@seegerweiss.com

Roger C. Denton
100 S. 4th Street
St. Louis, MO 63102
Phone: (314) 621-6115
Email: rdenton@uselaws.com

Dianne M. Nast
1101 Market Street, Suite 2801
Philadelphia, Pennsylvania 19107
Phone: (215) 923-9300
Email: dnast@nastlaw.com

Ellen Relkin
700 Broadway
New York, New York 10003
Phone: (212) 558-5500
Fax: (212) 344-5461
Email: Erelkin@weitzlux.com

## **CERTIFICATE OF SERVICE**

     The undersigned hereby certifies that on June 27, 2017, the foregoing Notice of Oral and Videotaped Deposition of Corporate Representative of the Bayer Defendants Pursuant to Fed.R.Civ.P. 30(b)(6), 30(b)(6)(2) and 34 was served Defendants' Liaison Counsel via email, as well as on all other plaintiff counsel via MDL Centrality, which will send notice in accordance with the procedures established in MDL 2592 pursuant to Pre- Trial Order No. 17.

                                       */s/ Leonard A. Davis*
                                         **LEONARD A. DAVIS**