# EXHIBIT 2

```
                    UNITED STATES DISTRICT COURT

                    EASTERN DISTRICT OF LOUISIANA


IN RE:  XARELTO (RIVAROXABAN)    *
PRODUCTS LIABILITY LITIGATION    *    Docket No. 14-MD-2592
                                 *
                                 *    Section L
THIS DOCUMENT RELATES TO:        *
                                 *    New Orleans, Louisiana
Joseph Orr, et al.               *
v. Janssen Research &            *    May 31, 2017
Development, et. al.,            *
Case No. 15-CV-3708              *
                                 *
* * * * * * * * * * * * * * * *  *


                       TRANSCRIPT OF JURY TRIAL
                 BEFORE THE HONORABLE ELDON E. FALLON
                     UNITED STATES DISTRICT JUDGE
                     VOLUME II - AFTERNOON SESSION
```

Appearances:


For the Plaintiffs:           Levin Papantonio Thomas Mitchell
                                Rafferty & Proctor, P.A.
                              BY:  BRIAN H. BARR, ESQ.
                                   NEIL E. MCWILLIAMS, JR., ESQ.
                              316 South Baylen Street, Suite 600
                              Pensacola, Florida  32502


For the Plaintiffs:           Beasley Allen Crow Methvin
                                Portis & Miles, PC
                              BY:  ANDY BIRCHFIELD, ESQ.
                              Post Office Box 4160
                              Montgomery, Alabama  36103


For the Plaintiffs:           Gainsburgh Benjamin David
                                Meunier & Warshauer, LLC
                              BY:  GERALD E. MEUNIER, ESQ.
                              1100 Poydras Street, Suite 2800
                              New Orleans, Louisiana  70163

Appearances:

| | |
|---|---|
| For the Plaintiffs: | Goza & Honnold, LLC<br>BY:  BRADLEY D. HONNOLD, ESQ.<br>11181 Overbrook Road, Suite 200<br>Leawood, Kansas 66211 |
| For the Plaintiffs: | The Lambert Firm<br>BY:  EMILY C. JEFFCOTT, ESQ.<br>701 Magazine Street<br>New Orleans, Louisiana 70130 |
| For Bayer Healthcare<br>Pharmaceuticals, Inc.<br>and Bayer Pharma AG: | Wilkinson Walsh + Eskovitz, LLP<br>BY:  BETH A. WILKINSON, ESQ.<br>1900 M Street NW, Suite 800<br>Washington, DC 20036 |
| For Bayer Healthcare<br>Pharmaceuticals, Inc.<br>and Bayer Pharma AG: | Nelson Mullins Riley &<br>  Scarborough, LLP<br>BY:  DAVID E. DUKES, ESQ.<br>1320 Main Street, 17th Floor<br>Columbia, South Carolina 29201 |
| For Janssen Pharmaceuticals,<br>Inc. and Janssen Research &<br>Development, LLC: | Irwin Fritchie Urquhart<br>  & Moore, LLC<br>BY:  JAMES B. IRWIN, ESQ.<br>400 Poydras Street, Suite 2700<br>New Orleans, Louisiana 70130 |
| Official Court Reporter: | Toni Doyle Tusa, CCR, FCRR<br>500 Poydras Street, Room B-275<br>New Orleans, Louisiana 70130<br>(504) 589-7778 |

Proceedings recorded by mechanical stenography, transcript produced by computer.

04:48

1   heard today, now hearing the evidence, defendants move to
2   strike Dr. Smart's dosing opinions.  And similarly, we also
3   would move the Court to strike Dr. Smart's black box warning
4   opinion and request a limiting instruction that it's not a
5   basis for finding liability or, in the alternative, to read to
6   the jury as a judicial admission plaintiffs' statement in the
7   briefing at Document 5650 where they agreed not to put on this
8   evidence and were not presenting this theory as a basis for
9   liability.
10            For those reasons, Your Honor, we ask that the
11  Court grant relief.
12            **THE COURT:**  Thank you very much.
13            Let me hear a response.
14            **MR. MEUNIER:**  May it please the Court.  Jerry Meunier
15  for plaintiffs.
16            We have set forth our opposition, Your Honor, to
17  this motion in Record Document 6674, which was filed today in
18  the record.  Nonetheless, I believe it's possible in just a few
19  minutes to summarize the essence of our position.
20            I begin with the statute because it is not the
21  defendants' conceptualization of the theory of our case which
22  governs.  Rather, it is the LPLA which defines what we must
23  prove in order to present a failure to warn case.
24            Under LSA-R.S. 9:2800.57, the plaintiffs in a
25  failure to warn case have a twofold burden.  First, we must

04:49    1  show that a product possessed one or more characteristics
         2  which, in the words of the statute, quote, "may cause damage,"
         3  close quote, to a foreseeable user.
         4           Second, we must show that in light of those
         5  characteristics, the manufacturer failed to use reasonable care
         6  to warn about the risks or dangers posed by such
         7  characteristics.
         8           Of course, under the learned intermediary
         9  doctrine in a prescription drug case, this duty to warn, as the
        10  Court has confirmed, extends both to prescribers and to
        11  treaters of the patient, in particular those who are in a
        12  position to make different medical decisions to avoid harm if
        13  an adequate warning had been provided.
        14           Dr. Smart's opinion testimony in this trial has
        15  addressed both prongs of the statutory road map for proof of
        16  failure to warn.  He has testified that the warnings associated
        17  with the drug Xarelto are inadequate.  He has expressed further
        18  opinions that certain characteristics of Xarelto, specifically
        19  its worst-in-class status among NOACs and its once-daily
        20  20-milligram dosing regimen, are characteristics which pose the
        21  risk of harm to the plaintiffs -- or to patients.
        22           The dosing criticism of Dr. Smart, in other
        23  words, is not predicated or presented in this case to the jury
        24  in support of a stand-alone design defect theory.  Rather, it
        25  is relevant to and a predicate for his opinion that the

04:51  1  warnings given about Xarelto are not adequate in light of those
2  characteristics.
3              Your Honor, he was clear in his testimony that
4  there is support for his criticism of the dosing regimen of
5  Xarelto, both in the FDA materials and in published literature,
6  and the jury heard him refer to the charts in the Canadian
7  article which for him was the aha! moment, when he saw the
8  dosing with the drug was problematic.
9              Your Honor, in Louisiana Tort Law there is a
10  bedrock relationship between risk and duty.  We call it
11  duty/risk, but it's the same relationship.  The greater the
12  risk, the more heightened the duty.  If there is a risk with
13  certain characteristics of this drug, including its dosing
14  regimen, those risks inform the duty to warn.  Those risks need
15  to be assessed in order to inform the duty to warn and in order
16  to inform the jury about how heightened a duty to warn there
17  was.  The jury simply has to understand what the dangerous
18  characteristics of the drug are in order to get to an
19  assessment of whether there was a failure to use reasonable
20  care in the duty to warn.
21              And risk, which is what these dangerous
22  characteristics that Dr. Smart testified about, are also
23  relevant to the first cousin of duty, which is foreseeability.
24  Because if it's shown that the manufacturer knew or should have
25  known about a dosing regimen that put plaintiffs more at risk,

04:53

1  that perhaps should have been studied more thoroughly in order
2  not to put patients at risk; the foreseeability of harm from
3  that informs their duty to the learned intermediary to say more
4  than they say about this drug, to give more information about
5  this drug.
6          **THE COURT:**  What about the black box aspect of it?
7          **MR. MEUNIER:**  It was not the testimony of this
8  witness that there has to be a specific dosing reference in the
9  black box warning of the drug.  He said there has to be more
10 put in a prominent place like the black box, just like there is
11 with warfarin, that you have got to tell doctors more about the
12 risks of using the drug.
13         So we don't -- we are not presenting a case
14 where there is a design defect because of the dosing.  We are
15 presenting a failure to warn case, which is informed by, among
16 other things, the characteristics of the dosing regimen.
17         I think, as we say in our brief in opposition,
18 Judge, there was ample testimony and there's evidence in this
19 record to support and give a basis for this expert's opinion
20 about that.
21         **THE COURT:**  He says that you gave up your black box
22 idea, that you brought it out and you said you weren't going to
23 use it, and you used it.
24         **MR. MEUNIER:**  Well, I think the context of that was
25 in the nature of using dosing as a stand-alone theory of fault

04:54  1  that goes in a black box.  I think that was the context in
2  which that discussion took place.
3  There's been no secret about what Dr. Smart was
4  going to say.  It is in his report.  You heard the reference to
5  his report.  There was extensive cross-examination.  He was
6  always going to talk about the dosing issues concerning
7  Xarelto.  So there's no issue about that.
8  The issue is:  Have we surprised the defendants
9  with a warnings case which, among other things, will identify
10  the dosing problems as a dangerous characteristic?  I think we
11  have.
12  Judge, the *Daubert* Court -- it's often
13  forgotten, but it went to great lengths to say, You know, we
14  have to be careful with our gatekeeper responsibilities not to
15  confuse admissibility with weight.
16  One of the great cures of any concerns about an
17  expert's opinion is cross-examination.  There was vigorous
18  cross-examination today which will allow this jury to properly
19  assess the testimony of Dr. Smart when it comes to dosing and
20  other characteristics of the drug.
21  We respectfully submit that the motion to
22  exclude that testimony is not properly founded.  There's been
23  no surprise.  We never abandoned any discussion about dosing.
24  We never abandoned Dr. Smart's expert opinion about dosing.
25  It is in the context of the statutory twofold

Case 2:14-md-02592-EEF-MBN   Document 7001-2   Filed 07/07/17   Page 9 of 12
516

```
04:55   1   test of dangerous characteristics to be followed by a failure
        2   to warn.  That's the context in which your jury charge can make
        3   it clear to the fact-finders that that's how dosing is
        4   relevant.
        5             THE COURT:  The dosing doesn't concern me.  I can see
        6   your argument with dosing under 2800.54 and 2800.57.
        7             The thing that gives me pause is the reference
        8   to black box.  That concerned me a little bit because I thought
        9   that was out of the case.  Then it's back into the case.  I
       10   don't know how that got there.
       11             MR. MEUNIER:  Well, Your Honor, it flowed from his
       12   discussion that there needed to be, as he put it, more in this
       13   label to highlight and bring attention to.  Now, he talked
       14   about black box in reference to warfarin as well.
       15             He said, If this drug is the same warfarin, why
       16   don't we have the same kind of highlighting and drawing
       17   attention to the problems with the drug?  That was his
       18   testimony.
       19             THE COURT:  Tell me about the black box.
       20             MR. BONEY:  Your Honor, just briefly, to put a fine
       21   point on this, we were back here in front of the Court in
       22   March -- I think it was March 23 -- arguing about the various
       23   dispositive motions, including the motion relevant here, which
       24   was the label preemption motion.
       25             One of the plaintiffs' theories that they had
```

04:57   1  advanced from the beginning of the case was about that the
        2  defendants could be held liable for failing to have a black box
        3  warning about bleeding risk.  So the defendants,
        4  understandably, made motions claiming that those claims are
        5  preempted.
        6              The law is clear, Your Honor.  In fact, one of
        7  the plaintiffs' regulatory experts even concedes in her
        8  deposition that the defendants could not unilaterally add a
        9  black box warning to the label.  So the plaintiffs, instead of
       10  responding to that argument, failed entirely to respond to the
       11  preemption argument about black box warning and instead made
       12  this representation in their response to the motion, saying
       13  that they do not intend to advance such an argument at trial
       14  and thus request that this aspect of defendants' motion, the
       15  aspect that talked about preemption of a claim regarding a
       16  black box warning, the plaintiffs said that should be denied as
       17  moot because they weren't going to bring it here.
       18              So for now a witness to come on and not only
       19  introduce facts but have expert testimony, purported expert
       20  testimony about the lack of a black box warning on Xarelto, it
       21  doesn't fit with the representation the plaintiffs have made
       22  before.
       23              Indeed, Your Honor, the defendants on this point
       24  would renew our preemption motion and submit to Your Honor that
       25  you should grant summary judgment, to the extent the plaintiffs

```
04:58   1   are saying there should be a claim for liability on the basis
        2   of a black box warning.  We would renew the motion that that
        3   claim is preempted.
        4           THE COURT:  Okay.  I understand it.  I'm not going to
        5   tell the jury -- I'm not going to tell them to disregard the
        6   material about the dosing, because I do think that has
        7   something to do with the characteristics.  But I think the
        8   black box is different.  I am going to tell them to disregard
        9   testimony regarding the black box warning.
       10               Thank you very much.
       11           MR. MEUNIER:  Your Honor, just to be clear,
       12   Dr. Smart's testimony about inadequate warning was not limited
       13   to a black box reference.
       14           THE COURT:  I understand.  I'm not going to -- I will
       15   talk only about the black box.
       16           MR. MEUNIER:  Thank you.
       17           THE COURT:  Thank you very much.
       18               Court will stand in recess.  I will see you all
       19   at 8:15 tomorrow.
       20                              * * *
       21           (The following proceedings were held outside the
       22   presence of the jury.)
       23           MR. OVERHOLTZ:  I will read them in, then we'll
       24   handle them.  The plaintiffs are going to introduce as
       25   Plaintiffs' Trial Exhibit 9 Record Number 690562, which was the
```

**CERTIFICATE**

  I, Toni Doyle Tusa, CCR, FCRR, Official Court Reporter for the United States District Court, Eastern District of Louisiana, certify that the foregoing is a true and correct transcript, to the best of my ability and understanding, from the record of proceedings in the above-entitled matter.

          *s/ Toni Doyle Tusa*
          Toni Doyle Tusa, CCR, FCRR
          Official Court Reporter