UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE ELDON E. FALLON |
| Dora Mingo v. Janssen Research & Development, LLC et al.<br>Case No. 2:15-cv-03469 | MAGISTRATE NORTH |

**BAYER'S REPLY MEMORANDUM IN SUPPORT OF MOTION (1) TO ENFORCE STIPULATED CASE MANAGEMENT ORDER AND (2) TO QUASH UNTIMELY 30(b)(6) DEPOSITION NOTICE TO BAYER DEFENDANTS**

Defendants Bayer HealthCare Pharmaceuticals Inc. and Bayer Pharma AG (collectively, "Bayer") submit this reply memorandum in support of their motion to enforce the deadlines established in CMO 2A and to quash Plaintiffs' untimely discovery, including a deposition and document requests, related to the Canadian labeling of Xarelto.

**I.      Plaintiffs' Claim of Good Cause to Reopen Discovery Overlooks the Entire History Between the Parties**

Plaintiffs' core contention is that the Court's ruling on an evidentiary motion should allow them to reopen discovery *nine months* after the Court's deadline and only *a few weeks* before trial. But as explained in Defendants' opening brief, the sequence of litigation is critical, and the parties' trust in the order of events is what allows cases to proceed in an orderly fashion. Fact discovery is followed by expert discovery, then *Daubert* and dispositive motions, and finally trial. A ruling *in limine* placing limits on allowable evidence is not grounds to re-open discovery, as otherwise parties could never trust that discovery in any case had truly ended. Plaintiffs have cited no case law whatsoever to support this contention.

1

Plaintiffs discuss the issue of the Canadian label as though it first arose in the *Boudreaux* trial, but they omit a much longer history—Plaintiffs' interest in the Canadian label goes back over a year, and many months before the close of discovery.  That history was explained by Defendants in their opening brief, including multiple instances within the stipulated deadline when Plaintiffs chose not to pursue the discovery they seek here.  As Plaintiffs have not responded to these facts, Defendants take them to be undisputed.

For example, Plaintiffs' opposition confirms that their 30(b)(6) notice is based on a desire for further discovery into Plaintiffs' PX190 from *Orr*.  But Plaintiffs do not dispute that Defendants produced this document a year and a half ago in January 2016 or offer an explanation for why Plaintiffs did not pursue it sooner.  (*See* Bayer Br. at 4.)  Plaintiffs also do not dispute the following important facts:

- PX190, which Defendants produced in January 2016, was a response to the document that Plaintiffs introduced as Exhibit 18 in the deposition of Bayer's Juergen Weber in May 2016 (Bayer Br. at 4-5);
- Following the Weber deposition, Plaintiffs deposed various company witnesses about the Canadian label generally, but chose not to pursue either PX190 or Weber 18 with any company witness (Bayer Br. at 5-6);
- Plaintiffs had the opportunity to depose a Bayer witness familiar with Xarelto's regulatory process in Canada before the Court's discovery deadline, but chose not to pursue it (Bayer Br. at 6-7);
- Plaintiffs already took a 30(b)(6) deposition of Bayer on document retention topics, the topics for which overlap with Plaintiffs' untimely notice, where Plaintiffs could have inquired regarding Canadian document retention but failed to do so (Bayer Br. at 5 n.5);
- Plaintiffs' expert witnesses offered opinions on the Canadian label during the stipulated and ordered discovery period (Bayer Br. at 4; *e.g.*, Ex. 1, Boniol Depo Tr. at 127:4-132:10; Ex. 2, Khatib Depo Tr. at 410:25-412:7); and
- Defendants disputed the relevance of all "foreign labeling and regulatory actions," including Canadian proceedings, prior to trial, and the Court believed this evidence "likely excludable under Federal Rules of Evidence 401 and 403" (D.I. 5954; D.I. 6254 at 13-14).

In sum, Plaintiffs have long known about the *very* issues on which they seek this untimely discovery, but elected not to pursue the discovery within the stipulated and court-

ordered deadline that they now seek after it. There is no unexpected issue that justifies an abrogation of the parties' stipulation or the Court's order.

## II.     Both the New Discovery Plaintiffs Seek—and the Prejudice it Would Cause Defendants—Are Extremely Broad

### A. Plaintiffs' 30(b)(6) Notice Seeks Wide-Ranging Discovery Regarding the History of Xarelto in Canada

Plaintiffs accuse Defendants of merely "invent[ing] prejudice" that they would suffer from this 30(b)(6) notice. But the impact of Plaintiffs 30(b)(6) notice is real and significant. (*See* Bayer Br. 7-10.) Any re-opening of discovery at this late date is inherently prejudicial, as Defendants are meant to be preparing for trial rather than untimely depositions, let alone the potential expert discovery and motion practice that might follow such a deposition. Re-opening discovery for a 30(b)(6) deposition would be an even greater burden, as 30(b)(6) depositions would require that Bayer dedicate significant time, resource, and expense to locating and organizing documents, communications with potential fact witnesses, and in-depth preparation of the corporate representative(s) to ensure that they are prepared to speak on behalf of the company.

As Plaintiffs' noticed topics all relate to Canada, while this litigation and the discovery that Plaintiffs' previously chose to pursue for it were primarily focused on the United States, unquestionably some of the relevant materials would not have needed to be fully collected and reviewed during discovery, and the potentially relevant fact witnesses would not have all been identified or contacted. Plaintiffs' deposition notice would thus not be "just" a burdensome and untimely deposition, but a return to the discovery drawing board. Simply put, re-opening discovery at this late stage, in the middle of preparation for trial, would require extensive time and resources from Bayer. Such an exercise would be a significant burden on Bayer, coming nine months after discovery was supposed to close and mere weeks before trial. Such

3

preparation could not likely be completed before the *Mingo* trial at all, and certainly not by the July 14, 2017 date for which Plaintiffs have noticed this deposition.

Moreover, the notice served on Bayer has much broader implications than Plaintiffs suggest. While served as a single deposition notice, Plaintiffs' broad notice effectively captures four distinct notices on topics that could require up to four different company witnesses. Plaintiffs' deposition notice includes

- Regulatory interactions with Health Canada, potentially implicating a regulatory contact to testify regarding the Canadian label "in effect as of October 2014" (Ex. 3 at Topic 1), communications made "in the course of the application" in Canada (*id.* at Topics 4-5), and "the basis" on which information was included in the Canadian label (*id.* at Topic 6);
- Clinical issues relating to Canadian submissions, potentially implicating a scientist or physician to testify regarding "medical and scientific literature that supports the statement in the Canada Healthcare label" (*id.* at Topic 3);
- Communications, if any, with Canadian physicians, potentially implicating a marketing or communications professional to testify regarding how Bayer "advised or advises physicians in Canada" (*id.* at Topic 2), communications made "to Canadian physicians through any means" (*id.* at Topics 4-5), and communications to "anyone outside of the Bayer organization" (*id.* at Topic 6); and
- Document retention in Canada, implicating an internal administrator to testify regarding existence (*id.* at Topic 7), storage (*id.* at Topic 8), retention and destruction (*id.* at Topic 9), location (*id.* at Topic 10), organization (*id.* at Topic 11), searches (*id.* at Topic 12), and completeness (*id.* at Topic 13) of multiple categories of documents and electronically stored data.

Plaintiffs, on the other hand, have pointed only vaguely to prejudice they claim they would suffer if not permitted to belatedly take new 30(b)(6) depositions. In any event, being held to the Court's discovery deadline, to which the parties expressly agreed, is not cognizable prejudice to justify re-opening discovery. Any grant of Plaintiffs' untimely discovery request would undeniably prejudice Defendants, even more so because of the breadth of Plaintiffs' request, while Plaintiffs' only "harm" is the inability to take late discovery that they previously declined to pursue.

### B. The Pending Lensing Deposition, Originally Scheduled Prior to the Fact Discovery Deadline and Expressly Contemplated in the Scheduling Orders, Is not a Justifiable Rationale for Additional Discovery

Plaintiffs strangely suggest that preparation of at least one broad 30(b)(6) deposition so soon before trial, and potentially several, must not really be prejudicial to Defendants, because the unrelated personal deposition of Dr. Anthonie Lensing will also take place. (PSC Br. at 3.) But this compares two fundamentally different situations and types of deposition. Dr. Lensing's original deposition was timely noticed before the fact discovery deadline, but postponed due to his extraordinary personal circumstances. Following that postponement, the parties entered into CMO 2B, which expressly contemplated the possibility that Dr. Lensing (and only Dr. Lensing) would be deposed after the close of discovery.

We note, as well, that part of the stipulation addressing Dr. Lensing's family situation involved Bayer's production of Dr. Lensing's superior to testify on topics about which plaintiffs desired to question Dr. Lensing. The subject matter of Dr. Lensing's deposition was therefore covered within the normal fact discovery deadline. Moreover, a personal fact witness's deposition cannot be compared to the time and work involved in preparing Bayer corporate representatives for deposition, where the witness(es) will be expected to speak on the company's behalf on a broad range of topics.

One deposition is being permitted by stipulation, in conformity with a Court order, to meet an extraordinary situation that prevented a particular item of discovery from being completed earlier. That is no basis to abrogate the parties' other discovery stipulations or treat the Court's order setting discovery deadlines as though it no longer applies.

### III. The Deposition Plaintiffs' Seek is an Irrelevant Detour

To justify the untimely 30(b)(6) notice, Plaintiffs also overstate the significance of the documents on which their deposition notice is based. Throughout their brief, Plaintiffs refer to

5

the text of the Canadian label as statements that "Bayer currently represents to doctors in Canada" (PSC Br. at 2-3) and "Bayer's prior inconsistent statements made throughout Canada" (PSC Br. at 4). This distorts the Court's distinction between statements that Defendants "have said," which may be admissible, and "what the defendants did or put into their labels in other countries in order to comply with foreign regulatory bodies or agencies," which is not admissible. (D.I. 6254 at 13-14; *see also* PSC Br. at 2.) Plaintiffs appear to treat *even the labels themselves* as statements by Bayer, which is a full reversal of the Court's ruling on the admissibility of PX190. The Court decided that it would narrowly admit "what they said, what they told other people, obviously what they knew," but not "what's in another label, because the rules are different, the laws are different, the specifics are different." (Orr Tr. 1978:7-20.) As the text of the Canadian label was specifically distinguished from any statements by Defendants that the Court might rule admissible, Plaintiffs' characterizations in opposition to this motion do not follow the Court's ruling.

The distinction between the text of the Canadian label, on one hand, and statements by Defendants, on the other, is particularly pronounced here, as Plaintiffs rely on portions of the label that were proposed by the Canadian regulators, *not* Defendants. A version of the language on which Plaintiffs base their 30(b)(6) notice (Ex. 3, Topics 1 & 2), appears to have originated from Health Canada when it requested that Defendants add it to Xarelto's Canadian label in 2013. (*See* Ex. 4, 1/31/13 Letter § 3.) While the language appeared in later documents, including the November 2014 draft[1] correspondence from Bayer that Plaintiffs marked as PX190 in *Orr*, it should be treated as falling squarely within the Court's ruling that statements put into foreign labels to comply with foreign regulatory requirements are irrelevant to this litigation. To

---

[1] While PX190 has been referred to as "correspondence" as shorthand, it should be noted that PX190 reflects a draft document being circulated internally by Defendants on November 19, 2014, and not the final document that was submitted several days later, on November 24, 2014. (Ex. 5, Parent E-mail XARELTO_JANSSEN_15297602.)

6

cast this language requested by foreign regulators as though it were an affirmative declaration, let alone an inconsistent representation, by Defendants would present the jury with an inaccurate understanding of the documents.[2] Foreign regulatory requirements should not be treated as statements by Bayer, and are just not relevant.

## CONCLUSION

As the Court has done previously, it should deny Plaintiffs' attempt to make the Canadian label the subject of the case. The Court should grant Defendants' motion to enforce the stipulated case management order and quash Plaintiffs' Notice of Oral and Videotaped Deposition of Corporate Representative of the Bayer Defendants Pursuant to Fed. R. Civ. P. 30(b)(6), 30(b)(2), and 34.

Respectfully submitted,

ARNOLD & PORTER KAYE SCHOLER LLP

By: /s/ *William Hoffman*
William Hoffman
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
william.hoffman@apks.com
Andrew K. Solow
Steven Glickstein
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8485
andrew.solow@apks.com
steven.glickstein@apks.com

---

[2] Additionally, Plaintiffs suggest that PX190 reflects "information known to [Bayer] relevant" to issues of measuring anti-coagulant effect. But PX190 contains responses on five separate questions, and the language only reflects one of the questions—it is not a characterization of the entire document. (Ex. 6 at 3.) The language that Plaintiffs introduced in *Orr*, however, was not part of the answer to that question. (*Id.*) Plaintiffs are therefore mistaken, as the language on which they seek discovery was not presented as "information known to [Bayer]."

BRADLEY ARANT BOULT CUMMINGS LLP

By: */s/ Lindsey C Boney IV*
Kevin C. Newsom
Lindsey C Boney IV
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place, 1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8803
knewsom@bradley.com


CHAFFE MCCALL L.L.P.
By: /s/ *John F. Olinde*
John F. Olinde
Chaffe McCall L.L.P.
1100 Poydras Street, Suite 2300
New Orleans, LA 70163
Telephone: (504) 585-7241
olinde@chaffe.com


*Attorneys for Bayer HealthCare Pharmaceuticals Inc. and Bayer Pharma AG*