UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: XARELTO (RIVAROXABAN) | * | MDL 2592 |
| PRODUCTS LIABILITY LITIGATION | * | |
| | * | SECTION L |
| THIS DOCUMENT RELATES TO: | * | |
|    *Orr, et al. v. Bayer Corp., et al.* | * | JUDGE ELDON E. FALLON |
|    Case No. 2:15-cv-03708 | * | |
| | * | MAGISTRATE JUDGE NORTH |
| * * * * * * * * * * * * * * * * * * * * * * | | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF
RULE 59 MOTION FOR A NEW TRIAL**

**I.   INTRODUCTION**

Plaintiffs have requested a new trial because prejudicial errors were committed during trial in the evidentiary rulings and instructions to the jury. Material evidence was excluded, and jury instructions important to Plaintiffs' case were rejected. These errors, considered either individually or cumulatively, affected Plaintiffs' substantial rights, and, accordingly, Plaintiffs are entitled to a new trial.[1]

**II.  LEGAL STANDARD**

After a jury trial, a district court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A).

---

[1] Plaintiffs believe that the Court erred in failing to instruct the jury regarding the "objective evidence" to be considered when evaluating the causation prong of the learned intermediary doctrine. Plaintiffs acknowledge, however, that this error cannot form the basis of a request for a new trial, because the jury's response to the first Jury Verdict Interrogatory precluded the jury's evaluation of the causation issue, thereby making this error "harmless." *See* Jury Verdict Interrogatories [Record Doc. 6822]. Plaintiffs do not intend to waive this issue, however, and confirm that if a new trial is granted, they again will submit their proffered "objective evidence" instructions, for the reasons outlined in Plaintiffs' Bench Memorandum in Support of the Inclusion of the "Objective" Evidence Standard in the Second (Causation) Prong of the "Learned Intermediary" Doctrine in the Jury Instructions [Record Doc. 6731], and in oral argument at the conclusion of trial. *See* Exhibit 1, *Orr* Trial Transcript, at 2303:13-2304:14, 2315:4-2316:10.

1

"Although Rule 59(a) does not list specific grounds for a new trial, the United States Court of Appeals for the Fifth Circuit has held that a new trial may be granted if 'the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course.'" *In re Vioxx Prods. Liab. Litig.*, 489 F. Supp. 2d 587, 589 (E.D. La. 2007), *citing Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985).

Consequently, Rule 59(a) governs arguments that a district court committed prejudicial error by preventing the admission of evidence, and/or by committing instructional errors. *See id.* (noting that Rule 59 governs arguments over errors in precluding testimony); *Aero Int'l v. United States Fire Ins. Co.,* 713 F.2d 1106, 1113 (5th Cir. 1983) ("A new trial is the appropriate remedy for prejudicial errors in jury instructions."). To justify a new trial, the error must not have been harmless. *See* Fed. R. Civ. P. 61.

### III.     ARGUMENT

#### A.     Plaintiffs are entitled to a new trial because relevant statements from foreign labels was precluded.

Prior to trial, Plaintiffs moved *in limine* for an order allowing for the admission of foreign labeling evidence.[2] This Court granted the motion in part, as follows: "This Court finds that anything the Defendants have said to anyone, even foreign regulatory bodies, should be admissible. What is not admissible, however, is what the Defendants did or what they put on Xarelto's label in other countries in order to comply with foreign regulatory bodies or agencies."[3]

---

[2] *See* Plaintiffs' Motion in Limine No. 35 to Admit Evidence of Defendants' Statements Outside of the United States that Directly Contradict their Position that PT Neoplastin is Not Useful and Does Not Work to Determine the Anticoagulant Activity of Xarelto [Record Doc. 6480]. This motion, and its supporting memorandum and exhibits, are incorporated herein by reference.

[3] *See* 05/26/17 Order in *Orr* [Record Doc. 6645], at 11-13.

When the issue was raised again during trial, this Court again ruled that statements from Defendants to the Canadian authorities were admissible both as prior inconsistent statements under Federal Rule of Evidence 801(d)(2), and as a witness's prior statements under Federal Rule of Evidence 613, to show Defendants' knowledge.[4] The Court, however, continued to preclude the presentation of any evidence about the actual label.[5] Strict adherence to this distinction prevented Plaintiffs from being able to present material evidence.

For example, Defendants' electrophysiology expert, Dr. Sammy Khatib, was permitted to testify on direct examination that based on his extensive study of PT measurements, it would have been "inappropriate" and "reckless" to include the following labeling language proposed by Plaintiffs' regulatory expert, Dr. Suzanne Parisian: "Accordingly, measuring PT may be useful to inform clinical decisions in this circumstance."[6] **This purportedly "inappropriate" and "reckless" language actually came from Bayer's own label in Canada.** Dr. Khatib, however, was able to testify – effectively unchallenged – that Bayer had not used that language with doctors outside of the United States, simply because Bayer's statements happened to be contained within a foreign label.[7]

Likewise, Defendants' neurosurgical expert, Dr., Najeeb Thomas, was allowed to testify that the same labeling language proposed by Dr. Parisian was "dangerous."[8] This testimony, like the testimony of Dr. Khatib, remained effectively unchallenged, because Plaintiffs were forbidden from presenting Dr. Thomas with **the same purportedly "dangerous" language from Bayer's**

---

[4] *See, e.g.,* Exhibit 1, at 1220:1-1221:7.

[5] *See, e.g., id.* at 1221:8-1222:11, 1274:20-1277:23, 1280:9-24

[6] *See, e.g., id.* at 1892:10-1893:25, 1894:12-17.

[7] *See e.g., id.* at 1975:20-1976:19, 1977:24-1978:2, 1979:2-6.

[8] *See id.* at 2282:9-2283:19.

**own label in Canada,** simply because the language happened to be contained within a foreign label.[9]

District courts have allowed the admission into evidence of foreign regulatory materials, while acknowledging the appropriate limits of foreign regulatory action evidence in the context of litigation in the United States. For example, in *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & PMF Prods. Liab. Litig.,* No. 3:09-md-2100, 2011 WL 6740391 (S.D. Ill. Dec. 22, 2011), Judge Herndon denied a motion *in limine* filed by Bayer to preclude foreign regulatory materials, explaining that:

> While the regulatory actions of European Medical regulators are not binding on the FDA . . . the full body of knowledge including the foreign regulatory process that came to bear on the drugs at issue and which were well within the notice and knowledge of Bayer is admissible as part of the fabric of how these drugs came to the United States market and whether all the information which should have been utilized in doing so was utilized. Such evidence is clearly probative and that value outweighs the prejudice to Bayer.

*Id.* at *2. *See also In re Levaquin Prods. Liab. Litig.,* No. 08-cv-1943, 2010 WL 145282, at *5 (D. Minn. Nov. 9, 2010) (holding foreign regulatory materials are relevant to demonstrate the drug manufacturer's notice and motive); *Mahaney v. Novartis Pharms. Corp.,* 835 F. Supp. 2d 299, 318 (W.D. Ky. 2011) (same); *Rheinfrank v. Abbott Labs., Inc.,* No. 13-cv-144, 2015 WL 5258858, at *4 (S.D. Ohio Sept. 10, 2015) (holding evidence of a foreign label is relevant to a drug manufacturer's notice and knowledge of risks); *In re Tylenol (Acetaminophen) Mktg., Sales Practices & Prods. Liab. Litig.,* 181 F. Supp. 3d 278, 307 (E.D. Pa. 2016) (agreeing that warnings on foreign labels are evidence of the defendants' notice and knowledge of potential risks related to their products).

---

[9] *See id.*

Most recently, similar evidence was permitted in *In re Testosterone Replacement Therapy Prods. Liab. Litig.*, No. 14-cv-1748, 2017 U.S. Dist. LEXIS 69402 (N.D. Ill. May 8, 2017). More specifically, the district court refused to disregard an analysis by Health Canada, rejecting AbbVie's argument that the analysis was based on "a different label, under a different regulatory regimen, in a different country." *Id.* at *1010. The court recognized that "the analysis is not being used to dispute the adequacy of AbbVie's FDA-approved labels. Plaintiffs offer the analysis to show only that the scientific community agreed that more testing was required to determine whether drugs such as AndroGel increased the risk of cardiovascular injury." *Id.*

It was error for this Court to preclude this foreign labeling evidence, and to instead leave the jury with the misimpression from two defense experts that it would have been "inappropriate" and "reckless" and "dangerous" for Defendants to provide instructions identical to those being provided by Bayer in its own Canadian label. This error deprived Plaintiffs of an important impeachment opportunity in regard to these key witnesses, and thus affected the substantial rights of Plaintiffs. For this reason alone, a new trial should be granted.

**B.** **Plaintiffs are entitled to a new trial because relevant statements from business records were precluded.**

Janssen's Senior Director of Global Regulatory Affairs, Sanjay Jalota, confirmed unequivocally that on November 19, 2014, during the ordinary course of business, he received an email with an attached document written by Bayer from one of his direct reports, Lori Birkenberger.[10] This was sufficient to qualify the email and its attached document as business records under Federal Rule of Evidence 803(6), but this Court forbade any questions about them,

---

[10] *Id.* at 1338:11-1340:1, 2449:4-16.

because the witness said he had not read them.[11] Indeed, counsel was forbidden even from asking questions to challenge the witness's claim that he had not read the materials.[12]

When Mr. Jalota was later questioned during an offer of proof after the trial was concluded, he admitted that he might have read the email.[13] The attached draft response to Health Canada contained numerous statements from Bayer about the benefits of PT testing and the ability to run anti-Factor Xa assays.[14] Defendants sought the preclusion of these materials not only on grounds that they did not constitute business records, even though they clearly did constitute business records. Bayer also sought their preclusion on grounds that they would confuse the jury, since they involved foreign labeling, even though this Court previously had ruled on the admissibility of statements Bayer made to regulators.[15] Mr. Jalota testified that he was not aware of company statements made about the benefits of PT testing, and, since these business records were precluded, his testimony could not be effectively challenged.[16]

For the same reasons as stated above, this regulatory evidence should have been permitted, not only to challenge the testimony of Mr. Jalota, but also to further establish Bayer's knowledge of the benefits of PT testing that it was disputing at trial. This error was not harmless, and instead affected the substantial rights of Plaintiffs. For this reason alone, a new trial should be granted.

---

[11] *Id.* at 1340:2-1342:19.

[12] *Id.* at 1341:2-16.

[13] *Id.* at 2449:21-2450:7.

[14] *Id., e.g.,* 2455:25-2456:8, 2457:13-19, 2459:20-2460:2, 2460:10-2461:3, 2461:16-2463:9, 2464:4-2465:3, 2467:24-2468:17, 2469:2-2470:5.

[15] *Id.* at 1343:13-1347:2.

[16] *Id.* at 1347:7-1348:9.

### C.     Plaintiffs are entitled to a new trial because of instructional errors regarding the regulatory duty to disclose laboratory tests and the effect of violating a regulatory duty.

Plaintiffs asked this Court to provide the following two instructions to the jury:

1. Plaintiffs' Proposed Instruction No. 12: "You are instructed that certain federal regulations applicable to this case provide that the warnings section of a prescription drug label: … must identify any laboratory tests helpful in following the patient's response or in identifying possible adverse reactions. If appropriate, information must be provided on such factors as the range of normal and abnormal values expected in the particular situation and the recommended frequency with which tests should be performed before, during, and after therapy."

2. Plaintiffs' Proposed Instruction No. 13: "While a manufacturer's violation of one or more FDA regulations designed to protect consumers is not conclusive evidence that a product is unreasonably dangerous, violation of such standards may be considered as evidence of the appropriate standard when determining whether the instructions provided to the treating physician were inadequate."[17]

These instructions were intended to work in tandem. The first instruction (no. 12) would have advised the jury that, if a laboratory test might help a physician to follow a patient's response to the drug or to identify possible reactions to the drug, federal regulations mandated that the manufacturer identify any such test in the warning section of the label, providing both the range of values expected with the test and the frequency with which the test should be performed. The second instruction (no. 13) would have advised the jury that, if a regulation such as this were found to be violated, this violation could be considered in addressing the manufacturer's alleged failure to warn.

---

[17] *See* Plaintiffs' Proposed Jury Instructions [Record No. 6732], at Nos. 12 and 13. *See also* Exhibit 1 at 2316:23-2317:17.

This Court declined to provide these instructions, not because they were improper, but because its preference was instead to utilize more general language, i.e., the following instruction:[18]

> AS I PREVIOUSLY MENTIONED, XARELTO IS A BRAND-NAME DRUG. THE FDA APPROVED BOTH XARELTO AND ITS LABEL. YOU MAY CONSIDER THIS FACT IN WEIGHING THE EVIDENCE IN THIS CASE IN DETERMINING THE LIABILITY OF THE DEFENDANTS.
>
> HOWEVER, FDA APPROVAL, ALTHOUGH RELEVANT, DOES NOT IN AND OF ITSELF ABSOLVE THE DEFENDANTS OF ALL LIABILITY, NOR DOES IT ESTABLISH THAT THE WARNINGS OR INSTRUCTIONS PROVIDED WITH THE DRUG WERE ADEQUATE UNDER THE STANDARDS OF LOUISIANA LAW. IN FACT, ANY ACTION OR INACTION ON THE PART OF THE FDA, THOUGH RELEVANT, DOES NOT FORECLOSE A CLAIM UNDER LOUISIANA LAW. THEREFORE, EVEN IF THE DEFENDANTS HAVE MET ALL THE APPROPRIATE MINIMUM STANDARDS FOR FDA APPROVAL AND GOVERNMENTAL REGULATIONS AND REQUIREMENTS TO OBTAIN FDA APPROVAL, THIS COMPLIANCE AND APPROVAL, THOUGH RELEVANT, IS NOT SUFFICIENT TO CONCLUSIVELY ESTABLISH THAT THE DEFENDANTS HAVE TAKEN THE STEPS NECESSARY UNDER THE LAW WHICH APPLIES IN THIS CASE. MORE SPECIFICALLY, **IF YOU FIND THAT THE DEFENDANTS FAILED TO APPRISE TREATING PHYSICIANS OF APPROPRIATE TESTING TO ADDRESS RISKS THAT THEY KNEW OR SHOULD HAVE KNOWN PRIOR TO FDA APPROVAL OR BECAME KNOWN OR SHOULD HAVE BECOME KNOWN AFTER THE FDA APPROVAL XARELTO'S LABEL, THEN FDA APPROVAL OF THE DRUG IS NOT CONCLUSIVE.**[19]

---

[18] *See* Exhibit 1 at 2317:18-22. ("I think taken as a whole, the jury charges are accurate and they express what the Plaintiff has indicated. I don't think that zeroing in on something is even helpful to the jury or helpful to the parties. So that's the reason I deny it.")

[19] Jury Instructions [Record No. 6815], at 25-26 (emphasis added). *See also* Exhibit 1 at 2431:19-2432:15 (providing instructions consistent with the instructions outlined on pages 25-26 of Record No. 6815).

Plaintiffs submit that this general instruction was not sufficient to encompass the key information set forth in Plaintiffs' Proposed Instructions Nos. 12 and 13. The above-highlighted language in the charge given by the Court, in fact, invited jury consideration of whether Defendants had failed to advise Plaintiffs' physicians of "appropriate testing to address risks," but provided no guidance with regard to what constituted "appropriate testing to address risks." The jury needed Plaintiffs' Proposed Instruction No. 12 to define that phrase in the way it related to the case being tried. Without Instruction No. 12, for example, the jury could have concluded that Defendants only had to apprise physicians of FDA-approved tests, and, similarly, might have reasoned that because the FDA had not specifically approved a PT test to screen Xarelto users, no test had to be disclosed in the label. Plaintiffs' Proposed Instruction No. 12 would have served to eliminate any such misunderstanding. Additionally, this Court's instructions were not sufficiently clear with regard to what import the jury could attach to any failure to comply with federal regulations. In the end, the jurors were not told that they could affirmatively use evidence of this federal regulatory violation in determining whether the instructions to treating physicians were inadequate in this case.

Plaintiffs further submit that there was no justification to refuse to include the two requested instructions, comprised of a total of only three sentences, on the grounds that they were misstatements of the law or confusing in any way. On the contrary, the most likely effect would have been to clear up potential confusion. Instead, by not being instructed that the violation of a specific federal regulation would be relevant in evaluating the adequacy of the manufacturer's warnings in this case, jurors were not allowed to give full consideration to Plaintiffs' key contention. Unfair prejudice is unavoidable in a situation such as this, when a party is required to meet an unclear burden of proof. For this reason alone, a new trial should be granted.

## IV. CONCLUSION

Each error listed above, on its own but certainly when considered cumulatively, impaired the substantial rights of Plaintiffs in this trial, and given the significant and unfair prejudice which resulted, Plaintiffs are entitled to a new trial.

Dated: July 13, 2017

Respectfully submitted,

*/s/ Leonard A. Davis*
Leonard A. Davis, Esq. (Bar No. 14190)
**HERMAN, HERMAN & KATZ, LLC**
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Email: ldavis@hhklawfirm.com

Gerald E. Meunier (Bar No. 9471)
**GAINSBURGH BENJAMIN DAVID MEUNIER & WARSHAUER, LLC**
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
Email: gmeunier@gainsben.com

*Plaintiffs' Liaison Counsel*