## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE ELDON E. FALLON |
| Joseph J. Boudreaux, Jr., et al. v. Janssen et al. Case No. 2:14-cv-02720 | MAGISTRATE NORTH |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' RULE 59 MOTION FOR A NEW TRIAL

After an eight-day trial, on May 3, 2017, the *Boudreaux* jury unanimously determined that Defendants "provide[d] . . . adequate instructions for the safe use of Xarelto."  Doc. 6392.  That verdict, and the Court's resulting judgment, fully comported with the evidence at trial and the legal principles applicable to the case.  Plaintiffs now seek a second chance, resting their hopes for a new trial on the purported deficiency of three of the Court's evidentiary rulings, as well as the wording of one jury charge and the submission to the jury of certain demonstrative exhibits that were reviewed and approved by Plaintiffs' counsel before they were sent to the jury.  *See* Pls.' Rule 59 Mot. (Doc. 6818).  As set forth below, none of these arguments has merit—most were not adequately preserved—and Plaintiffs have not demonstrated, as they must, that "manifest injustice will result from letting the verdict stand."  *Learmonth v. Sears, Roebuck & Co.*, 631 F.3d 724, 731 (5th Cir. 2011) (internal quotation marks omitted).

1.      Plaintiffs' claim that the Court improperly excluded evidence regarding "global testing recommendations from" several foreign medical associations (Pls.' Mem. (Doc. 6818-1), at 2–7) is not preserved because Plaintiffs did not contemporaneously explain, as required by Fifth Circuit precedent, what they "intend[ed] to show by the evidence and why it should be admitted." *Wright v. Ford Motor Co.*, 508 F.3d 263, 276 (5th Cir. 2007).  The Court thus cannot consider this

claim.  But, in any event, Plaintiffs have not shown that the Court abused its considerable discretion in finding that evidence regarding standards promulgated by international medical societies would be confusing under Rule 403.  Plaintiffs also have failed to demonstrate that the Court's ruling substantially affected the outcome of the trial.  Their complaint is that they were denied the opportunity to present evidence about the purported usefulness of PT testing, but they, in fact, introduced evidence on exactly that point.  The exclusion of such cumulative evidence is harmless. *Moench v. Marquette Transp. Co. Gulf-Inland, L.L.C.*, 838 F.3d 586, 594 (5th Cir. 2016).

**2.**     Plaintiffs next assert that information from Xarelto® labels in other countries (such as New Zealand, Canada, and the European Union) "should have been admitted" (Pls.' Mem. at 7), but they failed to sufficiently preserve this challenge.  For that reason alone, Plaintiffs' request for a new trial based on the exclusion of foreign regulatory materials should be denied.  In any event, consistent with this Court's *in limine* decision and its later rulings, foreign labels would have been properly excluded as irrelevant and unduly prejudicial.  As the Court has recognized repeatedly, foreign labels and foreign regulatory action do not bear on the adequacy of Xarelto's labeling or design as a matter of U.S. law or FDA's own unique regulatory standards.

**3.**     Plaintiffs also are not entitled to a new trial based on the admission of testimony from Janssen employee Dr. Gary Peters about his wife's use of Xarelto.  *See* Pls.' Mem. at 11–17. The Court did not abuse its discretion in allowing that testimony because Plaintiffs put Dr. Peters's credibility at issue by suggesting that Defendants and their employees—including Dr. Peters— placed commercial interests ahead of patient safety.  What's more, Plaintiffs have not demonstrated that this testimony substantially affected their rights, particularly in light of the fact that they were allowed to ask Dr. Peters about the circumstances of his wife's use of Xarelto.

4.      Nor are Plaintiffs entitled to a new trial based on the Court's refusal to give their requested jury instructions.  *See* Pls.' Mem. at 17–20.  Plaintiffs failed to preserve this challenge because their general objection to the Court's refusal to give their requested instructions, without any specific elaboration, did not preserve error.  *See Pierce v. Ramsey Winch Co.*, 753 F.2d 416, 424 (5th Cir. 1985).  Nor have Plaintiffs shown that their proposed instructions were correct statements of the law, and they do not claim that the Court's instructions were inaccurate. Significantly, Plaintiffs' requested instruction sought to include a specific FDA regulation that they emphasized throughout the trial.  Thus, they cannot show that the Court's instructions impaired their ability to present their claim to the jury.

5.      Finally, the Court did not err in allowing some of the demonstrative exhibits to be submitted to the jury during deliberations.  *See* Pls.' Mem. at 20–25.  The Fifth Circuit has held that district courts may provide unadmitted exhibits to the jury so long as the court provides an appropriate instruction, which the Court gave to the jury here.  *See Big John, B.V. v. Indian Head Grain Co.*, 718 F.2d 143 (5th Cir. 1983).  And in any event, Plaintiffs consented to the submission of the demonstrative exhibits to the jury.

* * *

In light of "the sanctity of the jury's role in our system of adjudication," *Melear v. Spears*, 862 F.2d 1177, 1178 (5th Cir. 1989), this Court has recognized that "[a] motion for a new trial pursuant to Rule 59 is an extraordinary remedy that should be used sparingly," *Karim v. Finch Shipping Co.*, 111 F. Supp. 2d 783, 784 (E.D. La. 2000) (Fallon, J.).  Plaintiffs have not met that standard, and their motion for a new trial in the *Boudreaux* case should be denied.

**LEGAL STANDARD**

Although "[a] court has discretion to grant a new trial . . . where it is necessary to prevent an injustice," *In re Isbell Records, Inc.*, 774 F.3d 859, 872 (5th Cir. 2014), "[c]ourts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done." *Streber v. Hunter*, 221 F.3d 701, 736 (5th Cir. 2000) (citation and internal quotation marks omitted). Because Plaintiffs claim that the Court's evidentiary and instructional rulings entitle them to a new trial, their burden is particularly heavy— they must show "that manifest injustice will result from letting the verdict stand." *Learmonth*, 631 F.3d at 731. Plaintiffs have "the burden of showing harmful error," *Streber*, 221 F.3d at 736, and "must clearly establish either a manifest error of law or fact," *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 344 (5th Cir. 2007).

**ARGUMENT**

I.    **Plaintiffs are not entitled to a new trial based on the exclusion of evidence regarding foreign medical associations.**

During the cross-examination of Defendants' expert Dr. Colleen Johnson, Plaintiffs' counsel began to question Dr. Johnson about table 3 of a published article (the "Lippi article") that refers to certain "international and national guidelines." *Boudreaux* Trial Tr. at 1291–92. Defendants promptly objected to the relevance of international guidelines, arguing that allowing Plaintiffs to "suggest[] that there is a different standard [internationally] would be misleading and prejudicial to the jury." *Id.* at 1292–93. At a sidebar conference, Plaintiffs' counsel responded that the publication was about "the science":

> MR. DENTON: Your Honor, this isn't about labelings. This is about the various societies that Dr. Leissinger testified about, and a lot of the articles that they even cite. They cited foreign articles, too, for the science. We're talking about the science. We're not talking about labels. These are professional organizations that have looked at the literature and provided that PT is a reasonable recommendation. There is also national standards here. It's just not international.

*Id.* at 1293:11–19.  The Court sustained the objection—ruling that "this would be confusing[; it's] a 403, not a 401"—and Plaintiffs' counsel stated, "I'll move on Your Honor."  *Id.* at 1294:11–14. Plaintiffs never sought to make a proffer outside the presence of the jury about the international standards contained in the Lippi article.

Plaintiffs now contend that they are entitled to a new trial because the Court prevented this line of questioning.  *See* Pls.' Memo at 2–7.  This ruling does not entitle Plaintiffs to a new trial. Plaintiffs waived their evidentiary challenge because they did not explain to the Court what they planned to show by the evidence or why the Court should admit it.  Moreover, even if Plaintiffs had preserved the challenge, they have not shown that the Court abused its discretion in excluding this line of questioning or that any error in excluding the evidence was harmful.

### A.     Plaintiffs waived their challenge to the Court's exclusion of certain questions about the Lippi article.

To preserve a challenge to the district court's exclusion of evidence, "a party must inform[] the court of its substance by an offer of proof."  *Contogouris v. Pac. W. Res., L.L.C.*, 551 F. App'x 727, 732 (5th Cir. 2013) (quoting Fed. R. Evid. 103(a)(2)).  As the Fifth Circuit has explained, "excluded evidence is sufficiently preserved for review when the trial court has been informed as to what counsel intends to show by the evidence and why it should be admitted, and th[e] court has a record upon which [it] may adequately examine the propriety and harmfulness of the ruling." *Wright v. Ford Motor Co.*, 508 F.3d 263, 276 (5th Cir. 2007).  Where a party fails to make this showing, the court "will not even consider the propriety of the decision to exclude the evidence at issue."  *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 370 (5th Cir. 2000).

Plaintiffs failed to meet their preservation burden.  Their only complaint is the Court's failure to permit testimony about the Lippi article, but the article was not offered into evidence— nor could it be since medical articles are inadmissible hearsay.  *See* Fed. R. Evid. 803(18).

Accordingly, it was incumbent upon Plaintiffs to make a specific offer of proof about the testimony they sought to elicit and to explain in their proffer how that testimony was admissible under Rules 401, 403, and the rules applicable to expert testimony.  *See Wright*, 508 F.3d at 276.  Plaintiffs simply mentioned that table 3 of the Lippi article referenced PT and "the science," but that "general description of the excluded evidence" was insufficient to "preserve error."  *United States v. Ballis*, 28 F.3d 1399, 1406 (5th Cir. 1994).

Plaintiffs' arguments on this point at trial are similar to arguments that the Fifth Circuit held insufficient to preserve error in *Merrill v. S. Methodist Univ.*, 806 F.2d 600 (5th Cir. 1986). There, the plaintiff sought to cross-examine a witness about an alleged settlement agreement; the defendant objected, and the court asked for an explanation why the evidence would be relevant. *Id.* at 609.  The plaintiff responded that the evidence "would show motive or intent" and then had "several brief interchanges" with the district court before arguing that "the question pertained to liability."  *Id.*  After further argument, the plaintiff ultimately agreed to "move on to something else" and never again returned to the settlement agreement.  *Id.* at 609–10.  The Fifth Circuit held that the plaintiff's general statements about the substance and relevance of the evidence were insufficient to preserve error and concluded that it was "clear that [plaintiff's] counsel never made or attempted to make any offer of proof."  *Id.* at 610.  That ruling applies all the more here, where Plaintiffs did not even explain what the excluded evidence would "show" or why it was relevant, and after agreeing to move on, Plaintiffs did not attempt to re-introduce the evidence that they now claim was so critical.

Plaintiffs now claim prejudice because this testimony purportedly was necessary to correct the jury's alleged "misimpression" that no medical association or peer-reviewed publication recommends the use of PT (Pls.' Mem. at 4), but Plaintiffs never made that contention at trial.  Nor

did Plaintiffs contend then, as they do now, that the Court's Rule 403 ruling was erroneous because it was based on a "false premise." *Id.* Accordingly, Plaintiffs' "Monday-morning quarterbacking" is "too late." *United States v. Morrison*, 833 F.3d 491, 505–06 (5th Cir. 2016) (citation and internal quotation marks omitted). Because Plaintiffs failed to explain "contemporaneous[ly]" what the evidence would show and why it should be admitted, their challenge is waived. *Id.*

### B. The Court's exclusion of questioning about table 3 of the Lippi article does not entitle Plaintiffs to a new trial.

But even if Plaintiffs had preserved their evidentiary challenge, the Court's exclusion of this evidence still would not entitle them to a new trial. District courts have wide discretion on evidentiary questions, and even an erroneous evidentiary ruling does not justify reversal "unless it affected substantial rights of the complaining party." *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 508 (5th Cir. 2012) (citing Fed. R. Civ. P. 61) (citation and internal quotation marks omitted). Here, the Court did not err in excluding Plaintiffs' questioning of Dr. Johnson about table 3 of the Lippi article, but that ruling did not substantially affect Plaintiffs' rights in any event.

### 1. The Court did not abuse its discretion in excluding questioning about table 3 of the Lippi article.

Plaintiffs cannot meet their burden to show that the ruling was "manifestly erroneous." *Brumfield v. Hollins*, 551 F.3d 322, 330 (5th Cir. 2008). That burden is particularly heavy in light of the fact that the Court prevented the line of questioning under Rule 403. *See, e.g.*, *United States v. Lewis*, 796 F.3d 543, 545 (5th Cir. 2015) (holding that a district court's Rule 403 ruling receives "an especially high level of deference" and may be reversed "only rarely and only when there has been a clear abuse of discretion" (citation omitted)).

As the Court has explained, this litigation is about whether Defendants adequately warned U.S. patients, consistent with FDA regulations and requirements, and foreign regulatory standards and guidelines may be different. *See, e.g.*, *Boudreaux* Trial Tr. at 1293:20–23 ("If it has anything

to do with labeling, then it's not going to be admissible because we're talking about labeling in the United States and it's different standards."). Table 3 of the Lippi article was properly excluded because the guidelines and recommendations discussed therein are based on foreign regulatory rules that do not apply in the U.S.—indeed, table 3 clearly refers to "international and national guidelines." Doc. 6818-3 (Pls.' Exh. 2), at 8. But, as Plaintiffs concede, the U.S. guideline promulgated by the American College of Chest Physicians unequivocally rejects the use of PT. *See* Pls.' Mem. at 5 n.7; *see also* Doc. 6818-3, at 9 ("[T]he American College of Chest Physicians (ACCP) . . . ruled out the use of the PT for assessing direct oral FXa inhibitors."). In fact, much of Plaintiffs' argument reflects only their continuing disagreement with Defendants as to the clinical usefulness of PT. Accordingly, the Court correctly concluded that the Lippi article's discussion of international guidelines could confuse the jury.[1]

## 2. Plaintiffs have failed to demonstrate that any evidentiary error substantially affected their rights.

In any event, evidentiary rulings are subject to harmless error analysis and reversal is justified only if the rulings affected substantial rights of the complaining party. *See Baisden*, 693 F.3d at 508. "A ruling has affected the substantial rights of the party if, when considering all of the evidence presented at trial, the ruling had a substantial effect on the outcome of the trial." *U.S. Bank Nat'l Ass'n v. Verizon Commc'ns, Inc.*, 761 F.3d 409, 430 (5th Cir. 2014).

Plaintiffs cannot demonstrate that the Court's evidentiary ruling substantially affected the outcome of the trial. Plaintiffs' complaint is that they "were denied the opportunity to present the

---

[1] Although the Court allowed similar evidence in the *Orr* trial, it does not alter the propriety of the Court's decision in *Boudreaux*. Rather, "[a]pplying Rule 403 to determine if evidence is [confusing] . . . requires a fact-intensive, context-specific inquiry." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008); *accord Howard v. Offshore Liftboats, LLC*, Nos. 13-4811, 13-6407, & 14-1188, 2016 WL 183237, at *4 & n.38 (E.D. La. Jan. 14, 2016). Plaintiffs have not demonstrated that the Court manifestly erred in concluding that this evidence was confusing in the specific context of the *Boudreaux* trial.

exact type of evidence that defense counsel said was lacking"—*i.e.*, evidence that medical associations and peer-reviewed publications recommended the use of PT.  Pls.' Memo at 3.  But Plaintiffs introduced evidence on exactly that point.  For example, Plaintiffs' expert Dr. Cindy Leissinger testified that "the International Society on Thrombosis and Haemostasis has a recommendation about using a PT to measure for levels of a drug that may be too high" and explained that "there are literally dozens and dozens, if not hundreds, of articles that deal with this."  *Boudreaux* Trial Tr. 792:2–13.  Plaintiffs also questioned Dr. Leissinger about an article written by "Bayer scientists" (the "Kubitza article") on the same point they now claim they were prevented from making.  *Id.* at 711:21–712:6.  In fact, relying on the Kubitza article, Plaintiffs introduced evidence that "starting very early on and here published in 2005 – a pretty long time ago – was that the PT using a very – a specific reagent called Neoplastin Plus – it's just one of the brands.  But that using that reagent and doing the PT, they were able to show that the PT level correlated very closely with the level of drug in the blood.  So that as the level of drug went up in the blood, so the PT test went up also."  *Id.* at 714:2–9.  Dr. Leissinger further testified that the Kubitza article demonstrated that Bayer knew "early on" that doctors "could use the PT to get an idea of how high that level of drug was or how low the level of drug was in the blood."  *Id.* at 715:5–24.

Because Plaintiffs, in fact, introduced evidence that certain publications and associations opined on the usefulness of PT testing, they cannot show that the Court's ruling excluding questioning about table 3 of the Lippi article was prejudicial.  *See, e.g.*, *Moench*, 838 F.3d 586 at 594 ("The exclusion of cumulative evidence does not affect a party's substantial rights."); *Green v. Schutt Sports Mfg. Co.*, 369 F. App'x 630, 640 (5th Cir. 2010) (any error in excluding published paper was harmless where the "expert described the paper in great detail" and "conducted and

conveyed the paper's conclusions").  Accordingly, Plaintiffs' "failure to convince the jury" that the Xarelto label contained inadequate warnings "cannot reasonably be attributed to the judge's decision to exclude [this evidence]."  *Brennan's, Inc. v. Dickie Brennan & Co.*, 376 F.3d 356, 363 (5th Cir. 2004).

## II.     Plaintiffs are not entitled to a new trial based on the exclusion of foreign labels.

Defendants filed a pre-trial motion *in limine* seeking to exclude evidence of foreign labeling and regulatory actions.  Doc. 5954.  The Court found that the evidence was "likely excludable under Federal Rules of Evidence 401 and 403," but reserved ruling "because context or rebuttal use may have to be considered."  Order and Reasons, Apr. 18, 2017, at 14 (Doc. 6254). The Court later excluded as irrelevant and confusing Plaintiffs' designation of deposition testimony from Bayer's Dr. Scott Berkowitz regarding certain portions of the Canadian label and related correspondence with the Canadian regulatory authority.  *See* Doc. 6723, at 36.  But Plaintiffs never otherwise sought to introduce any foreign labels during the course of the *Boudreaux* trial, and they never made a proffer regarding such evidence.

Plaintiffs now contend that "[i]nformation from Xarelto labels in other countries likewise should have been admitted," pointing to statements in the Xarelto product labeling in New Zealand, Canada, and the European Union, as well as a statement that Defendants allegedly made to Canadian regulatory officials.  Pls.' Mem. at 7–9.  Because Plaintiffs did not adequately preserve this challenge, their request for a new trial based on foreign labels should be denied.  In any event, evidence of foreign labeling or regulatory action would have been properly excluded as irrelevant and unduly prejudicial.

### A. Plaintiffs have not preserved this challenged because they failed to submit an offer of proof regarding foreign labels.

Having not attempted to introduce this evidence during trial, Plaintiffs cannot now complain about the jury not hearing evidence about Xarelto's non-U.S. labels. Federal Rule of Evidence 103(a) provides that "[a] party may claim error in a ruling to . . . exclude evidence only if the error affects a substantial right of the party and . . . a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context." Fed. R. Evid. 103(a). Here, there was not even an "exclusion" of the New Zealand and EU labels, as the Court never gave a definitive ruling in its pre-trial *in limine* order, and Plaintiffs never sought to introduce those labels. Moreover, although the Court excluded Plaintiffs' designation of Dr. Berkowitz's deposition testimony about the Canadian label, Plaintiffs did not submit a contemporaneous offer of proof during trial that would have put the Court on notice of the substance of the evidence they intended to introduce. *See, e.g.*, *Wright*, 508 F.3d at 276. Although Plaintiffs' motion now describes their proposed evidence, it is too late. *See, e.g.*, *United States v. Chyu Liu*, 716 F.3d 159, 171 (5th Cir. 2013) (refusing to consider affidavit filed in connection with new trial motion, which purported to describe what the excluded evidence would have been); *Morrison*, 833 F.3d at 505 ("[T]he propriety of the decision to exclude the evidence at issue" is not even considered "if no offer of proof was made at trial.").[2] Because the Court did not "definitively" rule *in limine* against the admission of foreign labels or foreign regulatory actions—but instead reserved ruling to the

---

[2] Plaintiffs also assert that in *Orr*, this Court allowed the introduction of a statement Defendants allegedly made to Health Canada regarding the use of PT testing. *See* Pls.' Mem. at 9. Defendants continue to object to the admission of that evidence, but Plaintiffs' argument should not be considered because they never sought to introduce this statement during the *Boudreaux* trial. Furthermore, this statement to Canadian officials involved the use of PT testing "in certain infrequent situations such as overdosage, acute bleeding, urgent surgery, in cases of suspected non-compliance, or in other unusual circumstances." *Id.* The statement did not involve the use of PT testing as a routine "safety test" as Plaintiffs proposed in *Boudreaux*. *See Boudreaux* Trial Tr. at 85:5–10 (Plaintiffs' opening statement). Accordingly, that statement would have been properly excluded as irrelevant and unfairly prejudicial had Plaintiffs attempted to introduce it.

time of trial when the Court could consider "context or rebuttal use"—Plaintiffs were required to "make an offer of proof" of the specific evidence they wanted admitted at trial, and to explain the context or rebuttal use, in order to preserve a claim of error under Rule 103.

**B.    Evidence of foreign labels or foreign regulatory action would have been properly excluded in any event.**

Even if Plaintiffs had attempted to introduce this evidence, it would have been irrelevant and unfairly prejudicial. ***First,*** as explained in Defendants' Motion *In Limine* To Exclude Evidence Of Foreign Labeling And Regulatory Actions (Doc. 5954) and the Court's ruling on the deposition designations, foreign regulatory evidence is irrelevant because it does not bear on the adequacy of Xarelto's labeling or design as a matter of U.S. law and FDA's own unique regulatory standards.[3]   That point is amply demonstrated by the fact that FDA expressly rejected proposed Neoplastin PT language that is similar to the language contained in the Canadian, European Union, and New Zealand labels. *See Boudreaux* Trial Tr. at 1102:19–1104:19.

Moreover, the foreign labels that Plaintiffs now claim they wanted to introduce do not support their theory during the *Boudreaux* trial—namely, that if a Neoplastin PT test, taken at some undefined time after initiation of therapy, shows that a patient's PT is above a certain value, then the patient is at an elevated risk for bleeding and should be taken off Xarelto. *See* Pls.' Opp. to Defs.' Dosing & Monitoring Preemption MSJ (Doc. 5531), at 2. *None* of those foreign labels states that a Neoplastin PT test should be used for that purpose. Although those labels do provide

---

[3] *See, e.g.*, *McDowell v. Eli Lilly & Co.*, 13 Civ. 3786, 2015 WL 845720, at *5 (S.D.N.Y. Feb. 26, 2015) ("The mere existence of a differently structured and written European label does not establish that the U.S. label is insufficient, misleading, or legally inadequate, nor is foreign regulatory action even appropriate as a subject of expert testimony in pharmaceutical cases."); *In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396, 488 (S.D.N.Y. 2016) ("Because this litigation is based on U.S. law, and because evidence regarding the FDA will be admitted, the actions taken by foreign regulatory agencies are not particularly probative and likely will be confusing."); *In re Viagra Prods. Liab. Litig.*, 658 F. Supp. 2d 950, 965–66 (D. Minn. 2009) ("[A]ny discussion of foreign regulatory actions is irrelevant . . . and should therefore be excluded."); *see also Jones v. Lederle Labs.*, 785 F. Supp. 1123, 1126–27 (E.D.N.Y. 1992) (because of less stringent testing standards in Japan, testimony regarding a vaccine's use in Japan provided "no acceptable evidence" to support plaintiffs' claim that a safer vaccine existed).

information regarding the correlation between PT and Xarelto plasma concentrations, *none* describes what Plaintiffs argue here: a correlation between PT and *bleeding risk*, much less instructs doctors to make clinical decisions based on such a test. *See* Defs.' MIL No. 3 (Doc. 5954-1), at 4–5.  In fact, the labels state the contrary:  **"**Although various clotting parameter tests (PT, aPTT, Heptest®) are affected by the mode of action of XARELTO, none of these clotting tests have been demonstrated to reliably assess the anticoagulant activity of rivaroxaban following XARELTO administration under usual conditions."

**Second,** even if evidence concerning foreign labels or foreign regulatory action were relevant, it would still have been properly excluded under Rule 403, as the Court held in connection with the Berkowitz deposition designations.  Admission of the evidence would have been unfairly prejudicial, would have confused the issues and misled the jury, and would have wasted valuable trial time leading to a series of mini-trials necessary to determine the basis of each foreign regulatory action and label history, as well as the applicable foreign regulatory standards. *See In re Seroquel Prods. Liab. Litig*, 601 F. Supp. 2d 1313, 1318 (M.D. Fla. 2009) (holding that even "[a]ccepting for argument's sake that such evidence [concerning foreign regulatory actions] is relevant regarding notice and scienter, the fact remains that its probative value is greatly overmatched by the jury confusion, waste of time, and unfair prejudice that would result if the Court were to allow Plaintiffs to introduce this evidence during their main case"); *In re Viagra Prods. Liab. Litig.*, 658 F. Supp. 2d at 965–66 (holding that "to the extent that foreign regulatory information is relevant, 'its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury"); *In re Baycol Prods. Litig.*, 532 F. Supp. 2d 1029, 1054 (D. Minn. 2007) ("allowing the admission of evidence of foreign regulatory actions, in a case that is governed by domestic law, would likely cause jury confusion").

Accordingly, even though Plaintiffs waived this challenge, foreign labeling would have been properly excluded in any event.

## III. Plaintiffs are not entitled to a new trial based on Dr. Peters's testimony about his wife's Xarelto use.

Plaintiffs moved *in limine* pre-trial to prohibit testimony regarding the personal use of Xarelto "by any party's family members, employees, experts, or witnesses." Doc. 5924-1, at 1. The Court sustained the motion "except with regards to witnesses and experts, in which case the court RESERVES ruling until trial, *as the issue may go to credibility*." Order and Reasons (Apr. 18, 2017), at 4 (Doc. 6254) (emphasis added).

At trial, Plaintiffs called as part of their case-in-chief Dr. Gary Peters, Janssen's medical leader for the Xarelto development program. Plaintiffs challenged Dr. Peters's credibility during their direct examination, first by establishing that Dr. Peters was "heavily involved in the clinical development of" Xarelto for the atrial fibrillation indication (*Boudreaux* Trial Tr. at 1070:11–24), and then asking, "prior to the approval of Xarelto . . . from a commercial strategy standpoint, Janssen did not want to encourage the use of any measurement with Xarelto; correct?" *Id.* at 1071:15–18. Plaintiffs then showed Dr. Peters an internal company email for the purpose of attempting to establish "that Janssen did not want to encourage measurements when it came to Xarelto." *Id.* at 1071:20–1074:5. That line of questioning makes clear that Plaintiffs were attempting to undercut Dr. Peters's credibility by suggesting that the development team placed "commercial strategy" over patient safety.[4]

---

[4] Plaintiffs pressed this theme throughout the *Boudreaux* trial—starting with their opening statement—that Defendants failed to inform doctors about a one-time, "simple safety test" that supposedly would identify patients at high risk of bleeds because Defendants prioritized their preconceived business plan over the welfare of patients using Xarelto. *See, e.g.*, *Boudreaux* Trial Tr. at 86:17–24 ("Well, what you're going to see is that Xarelto was designed around a business plan. The business plan came first. There was—there was work to be done to determine the requirements of Xarelto and how that drug could be used in the marketplace. And they needed three requirements, but the most important was the testing. And to concede that a test would be able to identify people at high risk would have been completely inconsistent with the marketing plan they came up with."); *see also id.* at 82:9–18 ("defendants went about

Under questioning from Defendants' counsel, Dr. Peters testified that his wife began taking Xarelto after a knee replacement surgery because he had "asked [her doctor] to use Xarelto." *Id.* at 1122:7–11. (Similar testimony had already been introduced through the video depositions of Bayer employee Dr. Theodore Spiro, who testified about his personal use of Xarelto, and Janssen employee Nauman Shah, who testified that his mother had used Xarelto. *See id.* at 865:1–8, 889:21–890:10.) Plaintiffs objected, but the Court ruled that testimony regarding Dr. Peters's wife's use of Xarelto was relevant to Dr. Peters's credibility:

> The Plaintiffs take the position that the company . . . did not do something that they should have done, and there's also a suggestion that they did it for commercial reasons. This witness has been involved with the Xarelto, the development and design of Xarelto. So his credibility is significant to the whole case, it seems to me. The Plaintiffs have attempted . . . to show that his credibility is a problem. That's obvious. Certainly, they take the position that the company's credibility is at issue.

*Id.* at 1120:25–1121:9. On redirect, Plaintiffs were able to establish that Dr. Peters's wife "was on the drug for post knee and hip surgery," which has a "low[er] dose of Xarelto" than the dose "that Mr. Boudreaux was on." *Id.* at 1124:8–16.

There was no abuse of discretion in admission of this evidence. As noted above, district courts "enjoy wide discretion in making the relevancy and prejudice assessments that Rules 401 and 403 require," *United States ex rel. Colquitt v. Abbott Labs.*, 858 F.3d 365, 377 (5th Cir. 2017), and the Court did not abuse its discretion in allowing the testimony in light of Plaintiffs' theory of the case and their questioning that put Dr. Peters's credibility at issue. *See also Lewis*, 796 F.3d at 545 (a court's Rule 403 ruling receives "an especially high level of deference" and may be reversed "only rarely and only when there has been a clear abuse of discretion"). Moreover, the

---

designing Xarelto around a business plan rather than . . . good science"); *id.* at 88:20–21 ("you're going to see that the drug was designed around a business plan, not by following scientific study"); *id.* at 99:10–12 ("But these companies did not provide this information or recommend this simple test, because of their business plan"); *id.* at 1562:14–16 ("The market is [Defendants'] number one priority, not patient safety. They put their marketing needs over patient safety.").

admission of this evidence did not affect Plaintiffs' substantial rights because they were able to ask Dr. Peters on redirect about the circumstances of his wife's use of Xarelto.

Nor have Plaintiffs shown that the testimony "had a substantial effect on the outcome of the trial." *See U.S. Bank Nat'l Ass'n*, 761 F.3d at 430.  Plaintiffs were allowed to establish that Dr. Peters's wife took the "10-milligram dose" of Xarelto after her knee surgery, "not the 20-milligram dose that Mr. Boudreaux was on."  Trial Tr. at 1124:8–17.  In fact, Plaintiffs point out that before the *Orr* trial, the Court ruled that "[i]f one of Defendants' witnesses intends to discuss or refer to a family member's use of Xarelto, he or she must first produce" that family member's medical records.  Order and Reasons, May 26, 2017, at 3 (Doc. 6645).  Although that later ruling (which is of questionable merit) has no applicability to this case, its rationale—that "there ought to be some testing of the specific circumstances of *that* person" (*id.*)—was satisfied here because Plaintiffs were able to question Dr. Peters about the differences between his wife's circumstances and Mr. Boudreaux's.

**IV.     Plaintiffs are not entitled to a new trial based on the Court's jury instructions.**

Plaintiffs next contend that they are entitled to a new trial because the Court refused to give their proposed instructions regarding FDA regulations.  *See* Pls.' Mem. at 17–20.  That argument fails because Plaintiffs failed to adequately preserve this challenge and cannot demonstrate reversible error.

**A.     Plaintiffs have not preserved their challenge to the Court's refusal to give Proposed Instructions Nos. 19 and 20.**

Plaintiffs have not preserved their challenges to the Court's refusal to give their proposed instructions Nos. 19 and 20 because their objections were insufficiently specific:

> We also respectfully object to the failure to include plaintiffs' proposed jury charge number 19, again citing to the CFR provision that instructive information regarding, quote, "any laboratory tests helpful," close quote, in addressing, quote, "possible adverse reactions must" — and it is mandatory — "be provided in the

warning section of the prescription drug label."  In fact, this is a regulation which the jury was shown during Dr. Kessler's testimony.

Finally, we object to the failure to include plaintiffs' proposed jury charge Number 20, which, pursuant to the authorities cited in our instruction, provides that a manufacturer's violation of one or more relevant federal regulations may be considered as relevant in determining whether adequate instructions have been provided by the manufacturer to prescribing physicians.

*Boudreaux* Trial Tr. at 1536:18–1537:8.

Under Rule 51, "[a] party may assign as error . . . a failure to give an instruction, if that party properly requested it and—unless the court rejected the request in a definitive ruling on the record—also properly objected."  Fed. R. Civ. P. 51(d)(1)(B).  The Fifth Circuit has recognized that a party does not satisfy that requirement "by merely submitting to the court a proposed jury instruction that differs from the instruction ultimately given to the jury." *Russell v. Plano Bank & Tr.*, 130 F.3d 715, 719 (5th Cir. 1997).  Instead, the party must give an objection that is "sufficiently specific to bring into focus the precise nature of the alleged error"—that is, "[t]he grounds must be stated with sufficient clarity so that the trial court may follow and understand them if well taken." *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 294 (5th Cir. 2007).  Although Plaintiffs nominally objected to the Court's refusal to give their proposed instruction numbers 19 and 20, "[s]imply submitting instructions to the court and objecting, without explanation, to the court's failure to give those instructions will not preserve error . . . because it is unlikely to draw the court's attention to any errors in the charge that might be corrected before deliberations." *Pierce*, 753 F.2d at 424.

Accordingly, Plaintiffs' perfunctory objection did not sufficiently preserve the objection that they now seek to raise, and the plain error standard applies.[5]  *See* Fed. R. Civ. P. 51; *see also*

---

[5] This rigorous standard requires Plaintiffs to "show that (1) there was error; (2) the error was clear and obvious; (3) the error affected their substantial rights; and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings," *Sec. & Exch. Comm'n v. Life Partners Holdings, Inc.*, 854 F.3d 765, 783 (5th Cir. 2017).

*West v. Perry*, No. 2:07CV200, 2009 WL 2225569, at *8 n.10 (E.D. Tex. July 23, 2009) (finding

that plaintiff failed to preserve error regarding requested jury instruction where she failed to "state

any grounds for her request" at trial (citing *Positive Black Talk Inc. v. Cash Money Records, Inc.*,

394 F.3d 357, 368 (5th Cir. 2004), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*,

559 U.S. 154 (2010))).

### B.   Plaintiffs have not demonstrated reversible error.

But even if Plaintiffs had properly objected, they have not shown "[a]s a threshold matter"

that their "proposed instruction correctly states the law." *F.D.I.C. v. Henderson*, 61 F.3d 421, 425

(5th Cir. 1995). Even if the proposed instruction is correct, the question is "whether the charge as

given was accurate or misleading," because "[a] judgment will be reversed only when the charge

as a whole leaves [the court] with a substantial and ineradicable doubt whether the jury has been

properly guided in its deliberations." *Id.* (citation and internal quotation marks omitted). Finally,

Plaintiffs cannot show that the Court's refusal to include the instruction affected the outcome of

the case. *Id.*; *accord Janvey v. Dillon Gage, Inc. of Dallas*, 856 F.3d 377, 388 (5th Cir. 2017).

### 1.   Plaintiffs have not shown, "as a threshold matter," that their requested instructions are correct statements of the law.

Plaintiffs' No. 19 purported to quote a portion of a federal regulation regarding the

inclusion of laboratory tests in a medicine's label. Plaintiffs contend that "[w]ithout Instruction

No. 19, the jury could have concluded that Defendants only had to apprise treating physicians of

FDA-approved tests." Pls.' Mem. at 19. The Court correctly refused to give this instruction.

Numerous FDA regulations apply to prescription medicines like Xarelto, regulating everything

from initial investigational new drug applications, to clinical trials, to the approval of the medicine

---

But it is "difficult" for a party to demonstrate reversible plain error in jury instructions because review is "exceedingly deferential to the trial court." *Tompkins v. Cyr*, 202 F.3d 770, 784 (5th Cir. 2000). Plaintiffs cannot show plain error here because, as explained below, they cannot meet even the standard applicable had they properly objected.

and its labeling.  Quoting for the jury a single, specific FDA regulation—to the exclusion of others—would have given the jury a misimpression as to the relevant standard.  Moreover, Plaintiffs' sole claim here was for failure to warn under the Louisiana Products Liability Act, not for violation of any federal regulations.  As such, the Court correctly concluded that the regulation quoted in Plaintiffs' No. 19 was a "specific item[] of evidence," not the governing law, and it was not appropriate for the jury charge to "focus on specific items of evidence."  *Boudreaux* Trial Tr. at 1537:13–23.

Similarly, Plaintiffs assert that the Court erred in refusing to give their proposed No. 20 (*see* Pls.' Mem. at 17–18),[6] but, again, Plaintiffs' claim was not—indeed, as a matter of law it could not be—a claim for alleged violations of federal regulations.  *See Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 350–51 (2001); *Lofton v. McNeil Consumer & Specialty Pharm.*, 672 F.3d 372, 379–380 (5th Cir. 2012) (holding that federal law preempts state-law claims asserting damages for alleged violations of FDA regulations).  The Court rejected this instruction in favor of its final charge, which "deal[t] with the fact that the FDA approval may be relevant, but it's not, in itself, dispositive of liability . . . and it's not conclusive."  *Boudreaux* Trial Tr. at 1537:13–23.  In so doing, the Court also overruled Defendants' objections that the charge "unfairly minimizes the significance of FDA approval" and "gives insufficient attention to and obscures the relevance of the FDA's approval of Xarelto and Defendants' compliance with regulatory standards."  *Id.* at 1545:20–1546:3; Doc. 6377, at 2.  Having convinced the Court not to instruct the jury on the positive inference of FDA compliance, Plaintiffs are in no position to complain that the Court did not give a more specific instruction regarding non-compliance.

---

[6] Plaintiffs' No. 20 stated as follows: "While a manufacturer's violation of one or more FDA regulations designed to protect consumers is not conclusive evidence that a product is unreasonably dangerous, violation of such standards may be considered as evidence of the appropriate standard when determining whether the instructions provided to the treating physician were inadequate."

**2.     In any event, Plaintiffs do not claim that the Court's instruction was inaccurate or misleading.**

Plaintiffs do not now assert that any of the Court's instructions were *incorrect*. Instead, they simply claim that the Court's instruction was "too general to assist the jury" because "all the jury was told was that if Defendants failed to apprise treating physicians of 'appropriate testing to address risks,' FDA approval of the drug would not conclusively establish compliance with the laws applicable to this case." Pls.' Mem. at 19. But, again, it was not error for the Court to decline to quote to the jury with a single FDA regulation (among many) in favor of a general FDA instruction. In any event, Plaintiffs have made no effort to show, as they must, that the charge "confuse[d] or mis[led] the jury." *Sommers Drug Stores Co. Employee Profit Sharing Tr. v. Corrigan*, 883 F.2d 345, 350 (5th Cir. 1989) (explaining that instructions need only be "comprehensive, balanced, fundamentally accurate, and not likely to confuse or mislead the jury"). Indeed, if anything, the Court's FDA instruction was unfairly unbalanced *in favor of Plaintiffs*— the charge stated in one sentence (encompassing three lines) that the jury can consider FDA approval, while stating in four sentences (covering 20 lines) that the jury need not give FDA approval very much, if any, weight. *See Boudreaux* Trial Tr. 1646:18–1647:17.[7]

**3.     Plaintiffs have not demonstrated that the Court's refusal to give their requested instruction affected the outcome of the case.**

Finally, Plaintiffs must show that the Court's refusal to give their requested instruction "seriously impaired [their] ability to present a given claim." *Janvey*, 856 F.3d at 388. They cannot do so. Plaintiffs contend that without their proposed instruction, "the jury could have concluded that Defendants only had to apprise treating physicians of FDA-approved tests." Pls.' Memo at 19. But the Court's instructions went to great lengths to explain that FDA's approval, "although

---

[7] Defendants objected to the Court's FDA charge on this basis and submitted that their proposed instruction No. 16 would have been more accurate and balanced. *See, e.g.*, Doc. 6377, at 1–2, 4–5.

relevant," did not "foreclose a claim under Louisiana law," was not "conclusive," and did not "absolve the Defendants of all liability." Doc. 6393, at 22–23. As such, nothing in the Court's instructions can be read to suggest that FDA approval of either the label itself or any adjunct laboratory tests would be conclusive, and Plaintiffs emphasized throughout trial the laboratory-tests regulation that they attempted to include in their Proposed No. 19. Plaintiffs printed that regulation on a board to show to the jury during their opening arguments, their regulatory expert, Dr. Kessler, extensively discussed the regulation, and the regulation was the first topic that Plaintiffs discussed in their closing argument. *See Boudreaux* Trial Tr. at 99:13–23, 229:11–231:11, 239:6–241:1, 279:5–287:18, 1553:2–1554:12.

Accordingly, Plaintiffs cannot show that the Court's refusal to give their requested instruction "seriously impaired [their] ability to present [their] claim." *Schilling v. La. Dept. of Transp. & Dev.*, 662 F. App'x 243, 245–47 (5th Cir. 2016) (holding that plaintiff could not show reversible error in refusal to give requested instruction where "[s]he raised th[e] argument in her opening statement," provided testimony, and included it as a "principal theme[] at closing."

## V.     Plaintiffs are not entitled to a new trial based on some of the demonstratives being sent to the jury room.

Finally, Plaintiffs contend that they are entitled to a new trial because a "binder of demonstrative materials from the direct examination of Defendants' expert, Dr. Colleen Johnson (the "Johnson demonstratives") that were not admitted into evidence were sent to the jury room. Pls.' Mem. at 20–25. That argument fails. The Fifth Circuit has held that demonstrative materials may be submitted to the jury room—even over a party's objection—so long as the court provides cautionary instructions, as the Court gave to the jury in the *Boudreaux* trial. Moreover, both parties consented to the submission of the Johnson demonstratives to the jury.

1.     **The Court did not err in allowing demonstrative materials to be sent to the jury room.**

Plaintiffs rely on the Seventh Circuit's decision in *Baugh ex rel. Baugh v. Cuprum S.A. de C.V.*, 730 F.3d 701 (7th Cir. 2013), in support of their argument that the submission of these demonstratives to the jury "directly circumvented . . . the requirements under the law." Pls.' Mem. at 23.  That is incorrect.  Whatever the Seventh Circuit may have held in *Baugh* about submitting demonstratives to the jury, the Fifth Circuit has directly addressed this question and expressly held that, with a proper instruction, non-admitted demonstrative materials may be provided to the jury. *See Big John, B.V. v. Indian Head Grain Co.*, 718 F.2d 143 (5th Cir. 1983); *accord United States v. Winn*, 948 F.2d 145, 158–59 (5th Cir. 1991).[8]

In *Big John*—which Plaintiffs have not cited—the Fifth Circuit rejected an argument similar to the one Plaintiffs raise here.  There, the court considered whether it was prejudicial error to allow a damages calculation chart, which "was not introduced into evidence," to be submitted to the jury room during deliberations.  718 F.2d at 148–49.  The Fifth Circuit held that it was not, explaining that "[t]he submission of materials 'whether or not admitted in evidence, to the jury during deliberations, accompanied by careful cautionary instructions as to their use and limited significance, is within the discretion accorded the district court in order that it may guide and assist the jury in understanding the factual controversy.'"  *Id.* (quoting *Downen*, 496 F.2d at 321).

So too here.  As in *Big John*, the Court exercised its discretion to allow the parties to submit demonstrative materials to the jury during deliberations:

> [THE COURT:] And with regard to the demonstrative exhibits, there have been a lot of demonstrative exhibits, at least shown to the jury.  You know and I know that under the rules of evidence, the medical articles -- what is it? 803(18) -- can be discussed with the jury but not given to the jury.  So even though that was

---

[8] In fact, in *Baugh*, the Seventh Circuit *expressly acknowledged* that it was departing from the holdings of the Fifth and Tenth Circuits. 730 F.3d at 709–10 (citing *United States v. Downen*, 496 F.2d 314 (10th Cir. 1974), and *Big John, B.V. v. Indian Head Grain Co.*, 718 F.2d 143 (5th Cir. 1983)).

> demonstrative, it doesn't mean that they come in.  But there might be some demonstrative exhibits that do come in to the jury for demonstrative purposes.  If so, then make sure they're into evidence and make sure that they're numbered properly as demonstrative.  As you know from my charge, if that's the case, then I tell them about a demonstrative exhibit and make sure that they understand the difference.

*Boudreaux* Trial Tr. at 1512:7–20.  And, as Plaintiffs acknowledge, the Court then instructed the jury about the limited role of demonstratives:

> [THE COURT:] Finally, certain materials have been shown to you solely as an aid to help explain the facts disclosed by evidence, testimony, records and other documents in this case.  We sometimes refer to it as "demonstrative evidence" because it is offered merely to demonstrate or illustrate a point, rather than an actual proof of that point.  Demonstrative evidence is not admitted evidence or proof of any fact.  You should determine the facts from the evidence that is admitted.
>
> Remember, demonstrative evidence is only as good as the underlying testimony, data, assumptions, and opinions that serve the basis for it, and the maxim, "garbage in, garbage out," applies.  Like all other evidence in this case, you may accept it or reject it in whole or in part.

*Id.* at 1637:23–1638:10.

In light of the Court's cautionary instructions, Plaintiffs cannot demonstrate prejudicial error.  *See Big John*, 718 F.2d at 148–49; *see also Intrastate Gas Gathering Co. v. Dow Chem. Co.*, No. 99-20603, 248 F.3d 1140, 2001 WL 85920, at *2 (5th Cir. Jan. 26, 2001) (unpublished) (holding that district court did not err in sending demonstratives to jury room where court instructed that demonstratives "are not additional evidence" and are "like arguments, they're just an illustration, and they're certainly not additional evidence of whatever they represent").

### 2.    Both parties consented to the demonstrative materials being sent to the jury.

In any event, Plaintiffs' argument fails for the additional reason that they never objected to the submission of these demonstrative materials to the jury—and, indeed, expressly warranted that what was provided to the jury was appropriate.

Before the jury was instructed and discharged, the parties extensively discussed which

demonstratives both sides would include in the jury's materials. Plaintiffs sought to include—and ultimately did include—a demonstrative summary of Mr. Boudreaux's medical records. *See* Doc. 6411 (PXT 11, at 1). Defendants made clear that they intended to send the Johnson demonstratives to the jury during deliberations. *See* May 2, 2017, 2:17 PM Email from J. Barber to N. Overholtz (attached as Exh. 1) ("Attached are the Johnson slides that we currently want to send back to the jury. These will be incorporated into the index of defense exhibits we will send shortly."). Defendants even provided Plaintiffs with a PDF file containing each of the 12 Johnson demonstratives that Defendants intended to submit. *See id.* Plaintiffs never indicated that they had any objection to these materials. The index that Defendants ultimately provided to Plaintiffs clearly indicated that the Johnson demonstratives would be submitted to the jury. *See* May 2, 2017, 9:23 PM Email from J. Barber to N. Overholtz (attached as Exh. 2). Notably, Plaintiffs certified, after review, that the trial exhibits "be[ing] sent to the jury for use in their deliberations" were correct. Doc. 6391. The joint index—including a listing of the 12 demonstratives from the examination of Dr. Johnson—was filed with the Court. *See* Doc. 6411. Plaintiffs have not shown error in the submission of the Johnson demonstratives to the jury.

* * *

Plaintiffs also cursorily assert that the Court's alleged errors, "when considered cumulatively," warrant a new trial. Pls.' Mem. at 25. But Plaintiffs have not shown that any of the Court's rulings were erroneous, much less "that manifest injustice will result from letting the verdict stand." *Learmonth*, 631 F.3d at 731. Their failure to "establish[] *any* error" means that "there is nothing to cumulate." *United States v. McIntosh*, 280 F.3d 479, 484 (5th Cir. 2002); *see also, e.g.*, *In re Wheeler*, 612 F. App'x 763, 770 (5th Cir. 2015) (plaintiff failed to "show[] that any of the errors he alleges are actual errors"). Nor have Plaintiffs explained how any alleged error

"so fatally infect[ed] the trial that they violated [the trial's] fundamental fairness." *Stewart v. Int'l Ass'n of Machinists & Aerospace Workers*, 643 F. App'x 454, 458 (5th Cir. 2016).  Accordingly, this is not the "rar[e]" situation, *United States v. Villarreal*, 324 F.3d 319, 328 (5th Cir. 2003), that meets the "high threshold for a finding of cumulative error," *Wheeler*, 612 F. App'x at 770.

## VI.   Plaintiffs are not entitled to a new trial because Defendants were entitled to judgment as a matter of law.

Finally, even if there had been error in the conduct of the trial, the Court should deny Plaintiffs' motion for a new trial because any error would have been harmless because Defendants were entitled to judgment as a matter of law, as stated in their Motion For Judgment As A Matter Of Law At The Close Of The Evidence (Doc. 6376).

## CONCLUSION

The jury here, following an eight-day trial, unanimously found that Defendants adequately instructed physicians as to the safe use of Xarelto.  As the Fifth Circuit has observed, courts "are not to tamper lightly with the considered judgment of those drawn together at one point in time to render a judgment that is representative of the good common sense of the American people." *E.E.O.C. v. Boh Bros. Constr. Co., L.L.C.*, 731 F.3d 444, 452 (5th Cir. 2013) (en banc) (citation omitted).  Plaintiffs have not met their burden to show that "that manifest injustice will result from letting the verdict stand." *Learmonth*, 631 F.3d at 731.  The Court should deny Plaintiffs' motion for a new trial.


Respectfully submitted,

BARRASSO USDIN KUPPERMAN FREEMAN & SARVER, L.L.C.

By: /s/ *Richard E. Sarver*
Richard E. Sarver
Celeste R. Coco-Ewing

WILKINSON WALSH + ESKOVITZ LLP

By: /s/ *Beth A. Wilkinson*
Beth A. Wilkinson
Jennifer L. Saulino
Jeremy Barber
WILKINSON WALSH + ESKOVITZ LLP

BARRASSO USDIN KUPPERMAN FREEMAN &
SARVER, L.L.C.
909 Poydras Street, 24th Floor
New Orleans, Louisiana  70112
Telephone:  (504) 589-9700
rsarver@barrassousdin.com
ccoco-ewing@barrassousdin.com


DRINKER BIDDLE & REATH LLP

By: /s/ Susan M. Sharko
Susan M. Sharko
Drinker Biddle & Reath LLP
600 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
susan.sharko@dbr.com

Rodney M. Hudson
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
Telephone: (415) 591-7500
Rodney.hudson@dbr.com

Chanda A. Miller
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2700
Chanda.Miller@dbr.com


IRWIN FRITCHIE URQUHART & MOORE LLC

By: /s/ James B. Irwin
James B. Irwin
Kim E. Moore
Irwin Fritchie Urquhart & Moore LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
jirwin@irwinllc.com


*Attorneys for Defendants Janssen
Pharmaceuticals, Inc. and Janssen Research*

1900 M. Street NW, Suite 800
Washington, DC 20036
Telephone: (202) 847-4000
bwilkinson@wilkinsonwalsh.com
jsaulino@wilkinsonwalsh.com
jbarber@wilkinsonwalsh.com


NELSON MULLINS RILEY & SCARBOROUGH LLP

By: /s/ David E. Dukes
David E. Dukes
J. Mark Jones
NELSON MULLINS RILEY & SCARBOROUGH LLP
1320 Main Street, 17th Floor
Columbia, SC 29201
Telephone: (803) 799-2000
David.Dukes@nelsonmullins.com
Mark.Jones@nelsonmullins.com


ARNOLD & PORTER KAYE SCHOLER LLP

By: /s/ William Hoffman
William Hoffman
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
william.hoffman@apks.com

Andrew K. Solow
Steven Glickstein
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8485
andrew.solow@apks.com
steven.glickstein@apks.com


BRADLEY ARANT BOULT CUMMINGS LLP

By: /s/ Lindsey C Boney IV
Kevin C. Newsom
Lindsey C Boney IV
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place, 1819 Fifth Avenue North

*& Development, LLC*

Birmingham, AL 35203-2119
Telephone: (205) 521-8803
knewsom@bradley.com
lboney@bradley.com


CHAFFE MCCALL L.L.P.
By: /s/ *John F. Olinde*
John F. Olinde
CHAFFE MCCALL L.L.P.
1100 Poydras Street, Suite 2300
New Orleans, LA 70163
Telephone: (504) 585-7241
olinde@chaffe.com


*Attorneys for Bayer HealthCare*
*Pharmaceuticals Inc. and Bayer Pharma AG*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 13th day of July, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to Liaison Counsel for Plaintiffs by operation of the court's electronic filing system.

*/s/     John F. Olinde*