UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:  XARELTO (RIVAROXABAN)                   MDL No. 2592
PRODUCTS LIABILITY LITIGATION

                                                SECTION L

THIS DOCUMENT RELATES TO:                       JUDGE ELDON E. FALLON

Dora Mingo v. Janssen Research &
Development, LLC et al.                          MAGISTRATE NORTH
Case No. 2:15-cv-03469

DEFENDANTS' MOTION *IN LIMINE* REGARDING THE RECORD 4
CLINICAL TRIAL AND SEIFE 2015

Plaintiffs should not be allowed to introduce any evidence or argument regarding the RECORD 4 clinical trial and a 2015 article by journalist Charles Seife referencing that trial.  The RECORD clinical trials are irrelevant, because they tested a different Xarelto® dose for an indication not at issue in this case.  Further, FDA did not even consider the data collected in the RECORD 4 study in determining whether to approve Xarelto for the indication that was tested in that trial.

Evidence regarding RECORD 4 would also unfairly prejudice Defendants, confuse the issues, and waste time.  Allowing any such evidence would necessitate extensive testimony on the RECORD 4 clinical trial and the related regulatory history.  The additional trial days that would have to be spent offering evidence on irrelevant and prejudicial clinical trial issues warrants exclusion under Federal Rules of Evidence 401, 402, and 403.

BACKGROUND

Xarelto is approved by FDA for multiple indications.  At issue in the *Mingo* case is the use of Xarelto to treat, and then reduce the risk of recurrence, of venous thromboembolism (the "VTE treatment" indication).  Venous thromboembolism includes blood clots that form in the deep veins

of the legs (*i.e.*, deep vein thrombosis or "DVT") and clots that travel through the body to the lungs and are often fatal (*i.e.*, pulmonary embolism).  FDA approved Xarelto for VTE treatment based on the EINSTEIN DVT and PE clinical trials that were performed between February 2007 and March 2011.  *See* The EINSTEIN Investigators, Oral Rivaroxaban for Symptomatic Venous Thromboembolism, 363 *N. Engl. J. Med.* 2499, 2502–07 (2010) (Exh. 1) (reporting results of EINSTEIN DVT); The EINSTEIN-PE Investigators, Oral Rivaroxaban for the Treatment of Symptomatic Pulmonary Embolism, 366 *N. Engl. J. Med.* 14, 1287 (2012) (Exh. 2) (reporting results of EINSTEIN PE).  The EINSTEIN trials demonstrated that Xarelto is an effective and safe treatment for patients with venous blood clots.  FDA approved Xarelto for VTE treatment in November 2012 based on the EINSTEIN studies.  The approved dose is 15 mg twice-per-day for three weeks followed by 20 mg once-per-day.

The RECORD clinical trial program was not related to the *treatment* of VTE—meaning patients who already have dangerous blood clots—but rather the short-term *prevention* of blood clots for patients undergoing hip or knee replacement surgery (the "VTE prevention" indication).  Major surgery is a risk factor for developing DVT, thus necessitating short-term anticoagulation therapy as a prophylactic measure.  FDA approved Xarelto for VTE prevention in those surgical patients based on three RECORD studies (RECORD 1, RECORD 2, and RECORD 3).  The dosing regimen is 10 mg once-per-day for only up to 35 days.

In making its approval decision on VTE prevention, FDA did not consider a fourth RECORD clinical trial (RECORD 4) due to concerns about the data collected at certain clinical trial sites.  A supplemental audit requested by FDA of all four RECORD studies turned up potential problems with data from a number of RECORD 4 sites.  Defendants thereafter commissioned a large project to verify the data collected at every RECORD 4 site.  Defendants provided FDA with

the audit findings and the results of the RECORD 4 data verification.  Following analysis by FDA's Division of Scientific Investigations, FDA concluded that the data from RECORD 1, 2, and 3 were reliable and supported approval of the VTE prevention indication.  Concerns about the reliability of RECORD 4, however, led FDA to exclude it from consideration.  Defendants disagree with FDA's determination on RECORD 4.

Years later, a journalist named Charles Seife published an article criticizing FDA for not publicizing its findings from inspections in clinical trials involving a variety of prescription medicines.  *See* Charles Seife, Research Misconduct Identified by the U.S. Food and Drug Administration, *JAMA Intern. Med.* 2014.7774 (Feb. 9, 2015) (Doc. 5958, Exh. 2).  Seife cited RECORD 4 as one of several examples of clinical trials in which data integrity issues identified by FDA were not included in related medical literature.  *See id.* at E4.

## ARGUMENT

Despite the irrelevance of the RECORD 4 clinical trial, Plaintiffs' exhibit list for the *Mingo* trial includes dozens of documents and lines of testimony that relate to the RECORD audits, the RECORD 4 data verification, FDA's exclusion of RECORD 4, and Seife's article.[1]  In addition, Plaintiffs have included on their "will call" list Dr. Suzanne Parisian, who repeatedly criticized the RECORD 4 study in her report (*see* Parisian Rep. at 15, 110, 112, 114, 364–65 (Doc. 5112, Exh. A)) and who testified during her deposition that RECORD 4 was "really crappy" and "unreliable" (Parisian Dep. at 521:22–526:14, 527:12–528:21 (Exh. 3)).  During the *Orr* trial, Dr. Parisian repeated her criticism of the RECORD 4 study over Defendants' objection in a non-responsive

---

[1] To give just a few examples, Plaintiffs have identified as trial exhibits: documents regarding the RECORD audits and the data verification of RECORD 4; FDA's determinations regarding the reliability of clinical data in RECORD 4, following the audits and data verification; Seife's 2015 publication that cites RECORD 4; and numerous emails regarding Seife's inquiries about RECORD 4.

answer to a question about when Defendants provided the first draft label for Xarelto to FDA.  *See Orr* Trial Tr. at 1651:16–1652:1 ("Q.  So the draft label – let's get the timeline straight.  So FDA approved one indication in July of 2011, another in November of 2011, but the first draft label was provided for Xarelto in 2008, right?  A.  Right.  And I believe that was when they had the RECORD studies, 1, 2, 3, and 4.  And so that label was actually focused on the studies that were used for VTE, and then they ran into some issues with the RECORD study.").

Any evidence or argument about RECORD 4 will result in a sideshow trial that will only serve to mislead and prejudice the jury.  The RECORD 4 clinical trial has no bearing on Ms. Mingo's claims because RECORD 4 was irrelevant to FDA's consideration and approval of Xarelto for the VTE *treatment* indication—indeed, FDA did not consider it for *any* indication. RECORD 4 and Seife's publication therefore are irrelevant under Rules 401 and 402. Additionally, under Rule 403, any marginal probative value is substantially outweighed by the unfair prejudice, confusion of issues, and time that would be wasted by presenting the evidence. The Court reserved ruling on this motion *in limine* in the *Boudreaux* case, *see* Order and Reasons, (No. 14-cv-02720, Doc.6254), at 16, but the Court should grant the motion here in light of the different indication and the conduct of the first two trials.

A.    **The RECORD 4 Clinical Trial and Seife's 2015 Publication Are Irrelevant Under Rules 401 And 402.**

The RECORD 4 clinical trial and Seife's 2015 publication referencing the trial are not relevant and should be excluded.  Ms. Mingo used Xarelto to *treat* a DVT that she had already developed.  The clinical data most pertinent to her failure-to-warn and design-defect theories was gathered in the EINSTEIN trials, where the use of Xarelto to treat and prevent the recurrence of DVT and PE was tested.

4

RECORD 4, the separate clinical trial that FDA did not consider in support of Xarelto for short term use (up to 35 days) using a different dose (10 mg, once daily) for a different indication (to *prevent* DVT and pulmonary embolism), has no relevance to whether Xarelto is safe for patients like Ms. Mingo.  *See In re Seroquel Prods. Liab. Litig.*, 06-md-1769, 2009 WL 223140, at *3 (M.D. Fla. Jan. 30, 2009) (excluding evidence about alleged risks of medication in patient populations not applicable to plaintiffs).  Further, the audit and verification data of RECORD 4, and FDA's subsequent determination that the RECORD 4 data was not reliable enough to support approval of VTE prevention, are irrelevant.  FDA's findings on RECORD 4 played no role in the agency's review and approval of Xarelto for the treatment of DVT.  Accordingly, the conduct in RECORD 4, the related regulatory history, and the trial itself are inadmissible.  *See id.* at *4 (rejecting argument that misconduct by clinical investigator was relevant to "credibility and competency of [defendant's] testing and scientific research," particularly given that FDA had the controversial data at issue).

Likewise, one journalist's views on the adequacy of FDA's transparency policies have nothing to do with Ms. Mingo's use of Xarelto.  Seife's reference to RECORD 4 does not make the article relevant simply because the clinical trial involved Xarelto.  Seife cited RECORD 4 only as one example of a study investigated by FDA.  His criticism is aimed at FDA for how its inspection findings are publicized, not at Defendants.  Seife 2015 at E1, E8–9.

**B.    Any Marginal Probative Value Of Evidence On RECORD 4 Or Seife's Article Is Outweighed By Prejudice, Confusion, And Wasted Time Under Rule 403.**

Even if the Court determined that RECORD 4 is somehow relevant, the evidence still is inadmissible under Federal Rule of Evidence 403.  That rule permits exclusion of relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative

evidence." Fed. R. Evid. 403. Allowing any evidence on the RECORD 4 clinical trial would necessarily raise FDA's alleged data integrity concerns. Those issues are a sideshow that will confuse and mislead the jury, require extra trial days to allow both sides to offer evidence on the audits, data verification, and related proceedings, and result in unfair prejudice to Defendants.

To begin, the regulatory history and activities related to RECORD 4 were complicated and spanned more than two years. Responding to FDA's concerns included presentation of the results of Defendants' own audit program, a second round of audits performed by a third party, the massive RECORD 4 data verification project by a different third party, and numerous communications and meetings with FDA. Presenting evidence of those events would require additional trial exhibits, more fact witnesses, and further expert testimony to explain data collection, auditing of clinical trial data, and the related regulatory proceedings. Introducing RECORD 4 to the jury thus would necessitate an onerous trial within the trial on issues that are divorced from *Mingo*. Allowing a lengthy three or four day "mini-trial" also would confuse RECORD 4 with RECORD 1, 2, and 3. The resulting wasted time and confusion of issues requires exclusion. *See Landrieu Constr., Inc. v. DRC Emergency Servs., LLC*, 09-cv-3418, 2010 WL 1817768, at *5 (E.D. La. Apr. 30, 2010) (excluding evidence of defendants' past conduct because "the other instances" at issue were "substantially different and would in effect necessitate a trial within a trial which would be prejudicial and confusing"); *Kelly v. Boeing Petroleum Servs., Inc.*, 61 F.3d 350, 356–57 (5th Cir. 1995) (upholding exclusion of evidence that "would open the door to a series of separate 'mini-trials'" that would "further delay the proceedings and confuse the jury").

Beyond that, Plaintiffs may attempt to use the exclusion of RECORD 4 to impugn the entire development of Xarelto. There is no basis in the historical record nor anywhere in the

evidence for such a claim.  Any conclusion that the jury might draw from FDA's concerns about RECORD 4 would be misplaced because that clinical trial was not used by FDA to assess the safety of Xarelto for patients who needed treatment for an existing DVT, like Ms. Mingo.  *See Coursen v. A.H. Robins Co.*, 764 F.2d 1329, 1334–35 (9th Cir. 1985) (affirming district court's exclusion of "innuendos of collateral misconduct" in medical device case where evidence "did nothing except generally show defendant in a bad light") (internal quotation omitted).  As explained, the VTE prevention indication was approved based on the separate RECORD 1, 2, and 3 studies that raised none of the questions that FDA had about clinical data collected at certain RECORD 4 sites.

Any evidence regarding Seife's 2015 article or his related research likewise would result in unfair prejudice and confusion.  For instance, in the article (which Plaintiffs have identified as a trial exhibit), Seife cites RECORD 4 as one example of FDA "failing to notify the medical or scientific communities about allegations of serious research misconduct."  *See* Seife 2015 at E4, E8.  He insinuates that FDA did not fulfill its "mission to protect the public health," because the issues that the agency identified were not included in literature that has been published on the RECORD program.  *See id.*  Inflammatory accusations of "scientific misconduct" in connection with a study that has nothing to do with Ms. Mingo's claims have no place in court.  Allowing such evidence could only mislead and prejudice the jury and waste everyone's time.[2]

## CONCLUSION

For all of the reasons stated above, the Court should grant Defendants' Motion *in limine* and exclude all evidence and argument regarding the RECORD 4 clinical trial and Seife.

---

[2] Additionally, what Mr. Seife wrote in a paper is hearsay that is not admissible under any exception to the Hearsay Rule.

Respectfully submitted,

BARRASSO USDIN KUPPERMAN FREEMAN &
SARVER, L.L.C.

BY: /s/ Richard E. Sarver
Richard E. Sarver
Celeste R. Coco-Ewing
BARRASSO USDIN KUPPERMAN FREEMAN &
SARVER, L.L.C.
909 Poydras Street, 24th Floor
New Orleans, Louisiana  70112
Telephone:  (504) 589-9700
rsarver@barrassousdin.com
ccoco-ewing@barrassousdin.com

DRINKER BIDDLE & REATH LLP

By: /s/ Susan M. Sharko
Susan M. Sharko
DRINKER BIDDLE & REATH LLP
600 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
susan.sharko@dbr.com

Rodney M. Hudson
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
Telephone: (415) 591-7500
Rodney.hudson@dbr.com

Chanda A. Miller
DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2500
Chanda.Miller@dbr.com

IRWIN FRITCHIE URQUHART & MOORE LLC

By: /s/ James B. Irwin

MITCHELL, WILLIAMS, SELIG,
GATES & WOODYARD, P.L.L.C.

By: /s/ Lyn P. Pruitt
Lyn P. Pruitt
Adria W. Conklin
Benjamin D. Brenner
Mary Catherine Way
MITCHELL, WILLIAMS, SELIG,
GATES & WOODYARD, P.L.L.C.
425 West Capitol Ave., Suite 1800
Little Rock, AR  72201
Telephone: (501) 688-8800
lpruitt@mwlaw.com
aconklin@mwlaw.com
bbrenner@mwlaw.com
mway@mwlaw.com

WATKINS & EAGER PLLC

By: /s/ Walter T. Johnson
Walter T. Johnson
WATKINS & EAGER PLLC
The Emporium Building
400 East Capitol Street
Jackson, Mississippi 39201
Telephone: (601) 965-1846
wjohnson@watkinseager.com

ARNOLD & PORTER KAYE SCHOLER LLP

By: /s/ William Hoffman
William Hoffman
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
william.hoffman@apks.com

Andrew K. Solow
Steven Glickstein

8

James B. Irwin
Kim E. Moore
IRWIN FRITCHIE URQUHART & MOORE LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
jirwin@irwinllc.com

*Attorneys for Defendants Janssen*
*Pharmaceuticals, Inc. and Janssen Research*
*& Development, LLC*

ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8485
andrew.solow@apks.com
steven.glickstein@apks.com


BRADLEY ARANT BOULT CUMMINGS LLP

By: */s/ Lindsey C Boney IV*
Kevin C. Newsom
Lindsey C. Boney IV
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place, 1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8803
knewsom@bradley.com



CHAFFE MCCALL L.L.P.

By: */s/ John F. Olinde*
John F. Olinde
CHAFFE MCCALL L.L.P.
1100 Poydras Street, Suite 2300
New Orleans, LA 70163
Telephone: (504) 585-7241
olinde@chaffe.com

*Attorneys for Bayer HealthCare*
*Pharmaceuticals Inc. and Bayer Pharma AG*


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 17th day of July, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to Liaison Counsel for Plaintiffs by operation of the court's electronic filing system.


*/s/      John F. Olinde*

9