UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE ELDON E. FALLON |
| Dora Mingo v. Janssen Research & Development, LLC et al.<br>Case No. 2:15-cv-03469 | MAGISTRATE NORTH |

### DEFENDANTS' JOINT MOTION *IN LIMINE* TO EXCLUDE ARGUMENT OR EVIDENCE REGARDING UNAPPROVED DOSING

Defendants Bayer HealthCare Pharmaceuticals Inc., Bayer Pharma AG, Janssen Pharmaceuticals, Inc., Janssen Research & Development LLC (collectively, "Defendants") move *in limine* to preclude Plaintiff from presenting any evidence or argument that a different dose of Xarelto®—including some lower cumulative daily dose—would have been safer than the FDA-approved dose Plaintiff was prescribed to treat her deep vein thrombosis, the only FDA-approved indication at issue in this case.

It is well established that evidence that is not relevant is not admissible, and that no scientific evidence is admissible unless it passes *Daubert* scrutiny.  These cardinal principles cannot and should not be rendered impotent by the refrain that evidence will simply be "addressed" at trial as a characteristic of the product at issue.  *See, e.g.*, Pls.' Opp. to Design Preemption (Doc. 7007), at 11.  Here Plaintiffs have expressed an intent to do just that, even though they have expressly conceded that they "will not pursue a theory of liability based on dosing" (*id.* at 12), and

1

even though they say they will proffer no expert testimony about Xarelto's dose and dosing regimen (*see* Pls.' Opp. to Dosing & Monitoring *Daubert* (Doc. 7001), at 5).[1]

In light of Plaintiffs' concessions, any evidence regarding dose or dosing is irrelevant and prejudicial because it is likely to create juror confusion that Plaintiffs' claim in this case is in any way based on Xarelto's dose. Critically, in this case governed by Mississippi law, Plaintiffs cannot make the argument—which they made under Louisiana law in the *Orr* trial—that dose is a dangerous "characteristic" of the product about which they are entitled to tell the jury. The Mississippi Product Liability Act (MPLA) has no analogous provision and instead requires proof of a defect "with respect to the danger" that a plaintiff alleges caused her harm. Miss. Code Ann. § 11-1-63(c)(ii). Instead, evidence regarding dose would only confuse the jury. The Court should exclude any evidence or argument that Ms. Mingo's dose was too high, or that Defendants should have taken steps to make Xarelto available for Ms. Mingo at a lower dose, at a lower total daily, or through a different dosing regimen.

## ARGUMENT

**I.     Evidence or argument that some lower cumulative dose of Xarelto would be safer than the FDA-approved dose Plaintiff was prescribed should be excluded because it is not relevant.**

The Court should exclude any evidence or argument that some lower cumulative dose of Xarelto would be safer than the FDA-approved dose Plaintiff was prescribed because it is not relevant to Plaintiff's claims under the MPLA. *See* Fed. R. Evid. 401–02.

---

[1] In fact, Plaintiffs' expert, Dr. Rinder, expresses the opinion in his report that Ms. Mingo "could have been titrated to a lower dose." Rinder Report, at 2; *see also infra* at n.4. Moreover, Plaintiffs have said in their response to Defendants' *Daubert* motion that PT testing is needed because the dose for VTE treatment—*i.e.*, the condition for which Ms. Mingo was prescribed Xarelto—"is even higher" than the dose for patients taking Xarelto to prevent stroke incident to atrial fibrillation. *See* Pls.' Opp. to Dosing & Monitoring *Daubert* Motion (Doc. 7001), at 7; *see also* Pls.' Opp. to Design Preemption (Doc. 7007), at 11–12 (stating that Plaintiffs intend to show that Ms. Mingo's "total daily dose was higher than the doses in Boudreaux and Orr"). The Court should enter an order precluding this and all other dosing-related evidence.

2

### A. Plaintiffs have expressly renounced any claims regarding Xarelto's dose or its dosing regimen.

Plaintiffs have now made clear that they have two liability theories in this case:

- **Failure to warn:** Xarelto is unreasonably dangerous because "it is not accompanied with an instruction for physicians to test Neoplastin PT at initiation to identify patients at a high risk of bleeding." Pls.' Opp. to Labeling Preemption (Doc. 7003), at 9.

- **Design defect:** "Xarelto was defectively designed because of the absence of an anti-Factor Xa assay, which would have prevented Plaintiffs' injuries." Pls.' Opp. to MPLA MSJ (Doc. 7006), at 6.

*None* of those theories take issue with Xarelto's dose. Indeed, Plaintiffs have expressly disclaimed any claims or expert opinions that relate to Xarelto's dose:

- "[Plaintiffs] will not pursue a theory of liability based on dosing." Pls.' Opp. to Design Preemption (Doc. 7007), at 12.

- "Other theories outlined in Defendants' memorandum, related to alleged claims about missing instructions for physicians to perform warfarin-like routine monitoring with PT tests and dose adjustments . . . are *not* being asserted by Ms. Mingo." Pls.' Opp. to Labeling Preemption (Doc. 7003), at 9.

- "Defendants' remaining arguments are made in support of the exclusion of expert opinions that will not be offered," including "(1) Xarelto patients should be monitored on a routine warfarin-like basis with Neoplastin PT tests and/or anti-Factor Xa assays; (2) Xarelto patients should have their doses titrated based on such routine warfarin-like monitoring; (3) Xarelto patients should be dosed twice-daily rather than once-daily as approved by the FDA; (4) Xarelto patients should be provided unspecified doses that are lower than the FDA-approved doses." Pls.' Opp. to Dosing & Monitoring *Daubert* (Doc. 7001), at 5.

Accordingly, there can be no dispute that evidence regarding Xarelto's dose or dosing regimen are irrelevant to this case.

### B. Nothing in the Mississippi Product Liability Act allows Plaintiffs to otherwise introduce this evidence.

As the Court knows, even though Plaintiffs made similar representations in the run-up to the *Orr* trial, Plaintiffs introduced evidence at trial (including expert opinions from Dr. Frank Smart) regarding Xarelto's dose and dosing regimen. *See Orr* Trial Tr. at 317:17–21 (Dr. Smart)

3

(testifying that the "the dose is too high, and I think the result of that is an excessive amount of people bleeding").  Plaintiffs argued that dose/dosing evidence was relevant because under Louisiana law, a plaintiff in a failure-to-warn case must show (a) that a product possessed one or more "characteristics" that "may cause damage" to a foreseeable user, and (b) that "in light of those characteristics, the manufacturer failed to use reasonable care to warn about the risks or dangers *posed by such characteristics*."  *Id.* at 511:24–512:7 (emphasis added) (citing La. Rev. Stat. § 9:2800.57).  The Court rejected Defendants' arguments to the contrary and admitted the evidence in reliance on Louisiana law and the facts of the case.  *Id.* at 516:5–6 ("I can see [Plaintiffs'] argument with dosing under [La. Rev. Stat.] 2800.54 and 2800.57."); *see also id.* at 2334:19–2335:2.  The Court's ruling in *Orr* does not make dose or dosing evidence admissible in this case, which is governed by different law, has different facts, and in which Plaintiffs have different theories.

Importantly, unlike Plaintiffs' Louisiana-law arguments, nothing in the MPLA allows Plaintiffs to introduce evidence about Xarelto's dose or dosing regimen in support of their claims in this case about other alleged defects in Xarelto.  Under Mississippi law, a failure-to-warn claim requires proof that the product "was defective because it failed to contain adequate warnings or instructions."  Miss. Code Ann. § 11-1-63(a)(i)(2).  In "the case of a prescription drug," where the learned intermediary doctrine applies, the MPLA defines "adequate warnings or instructions" as follows:

> An adequate product warning or instruction is one that a reasonably prudent person in the same or similar circumstances would have provided *with respect to the danger* and that communicates sufficient information on the dangers and safe use of the product . . . taking into account the characteristics of, and the ordinary knowledge common to, a physician or other licensed professional who prescribes the drug, device or other product.

4

*Id.* § 11-1-63(c)(ii). In other words, a drug manufacturer's warning is "defective"—and thus gives rise to liability under the statute—only where it fails to adequately warn or instruct physicians "with respect to the danger" that a plaintiff alleges caused her harm. *Id.* A design-defect claim under the MPLA similarly focuses on "*the danger* that caused the damage for which recovery is sought." *Id.* § 11-1-63(f)(i).

The MPLA's language dooms Plaintiffs' attempt to introduce any evidence regarding Xarelto's dose or dosing regimen while also disclaiming any dosing-based claims. Here, Plaintiffs expressly do *not* contend that there should have been additional or different warnings about the alleged "danger" of Xarelto's dose or dosing regimen. And they do not contend that there is a different dosing design that could have ameliorated Xarelto's alleged "danger" to Ms. Mingo. The only "danger" that Plaintiffs have asserted is a higher risk of bleeding. Accordingly, there is no purpose that dosing evidence would serve in this case—it would not further either of Ms. Mingo's claims here.

The District of Massachusetts recently excluded the very sort of dosing evidence that Plaintiffs hope to introduce here, in litigation involving Pradaxa, another NOAC like Xarelto. *See Liu v. Boehringer Ingelheim Pharms., Inc.*, No. 1:14-cv-13234-WGY, ECF No. 148 (D. Mass. June 2, 2017) (Exh. 1) (electronic order granting motion in limine "to Exclude Evidence Related to the 110 Milligram Dose of Pradaxa"). There, the court ruled *in limine* that the plaintiffs—who press a theory of liability similar to Plaintiffs' theory here—could not introduce evidence related to a lower dose of Pradaxa that was not FDA-approved. This Court should do the same.

    **C.    Any dosing evidence is irrelevant to this case because none of Plaintiffs' experts criticizes the 15 mg twice-daily dosing regimen that Ms. Mingo followed.**

What's more, Plaintiffs have said in response to Defendants' renewed *Daubert* motion regarding unapproved dosing and monitoring regimens, that their experts will not offer opinions

5

that (1) "Xarelto patients should have their doses titrated based on . . . routine warfarin-like monitoring;" (2) that "Xarelto patients should be dosed twice-daily rather than once-daily as approved by the FDA;"[2] or that (3) "Xarelto patients should be provided unspecified doses that are lower than the FDA-approved doses." Doc. 7001 at 5. Plaintiffs should be held to their word— any dose evidence is irrelevant if their experts will not offer opinions about it. But to the extent Plaintiffs "intend[]" to have their experts "address dosing" in any way, Defendants are entitled to a decision on their *Daubert* motion challenging those opinions. *See* Defs.' Dosing & Monitoring *Daubert* Mot. (Doc. 6740); *see also Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 200–01 (5th Cir. 2016) (requiring courts to "conduct[] a *Daubert* inquiry or mak[e] a *Daubert* determination on the record" before allowing expert testimony). Indeed, Plaintiffs made a similar representation in *Boudreaux* and *Orr* in lieu of a substantive response to Defendants' dosing and monitoring *Daubert* motion, but then later introduced at trial expert testimony regarding dosing that had never cleared the *Daubert* hurdle, and Defendants were forced to renew their *Daubert* motion during the trial. *See Orr* Trial Tr. 506:15–511:11.

Moreover, up to this point in the litigation, Plaintiffs' experts have not taken issue with the FDA-approved 15 mg twice-daily dosing regimen that Ms. Mingo was prescribed and used. For example, Plaintiffs' hematologist, Dr. Henry Rinder, testified that he did not disagree with Ms. Mingo's physician's decision to prescribe her Xarelto at 15 mg twice daily for the first 21 days of her treatment for DVT (which is the FDA-approved dosing regimen for DVT treatment).[3] Moreover, although Dr. Rinder suggested that Ms. Mingo's physicians "could have considered

---

[2] As noted above, Ms. Mingo was prescribed 15 mg of Xarelto twice-daily for the DVT indication, so any such argument would not be applicable to this case in any event.

[3] *See* Rinder Dep. 115:24–116:6 (Exh. 2) ("Q. . . . you are not critical of Dr. Jordon's decision to prescribe Xarelto to [Ms. Mingo] at 15 milligrams twice a day for the first 21 days for the treatment of DVT? . . . A. As I said, I do not have any specific criticisms of Dr. Jordon.").

titrating her to a lower dose," he does not offer the opinion that they should have done so, nor could he recommend a particular alternative dose (much less an FDA-approved dose) that should have been prescribed.[4]

Without scientific testimony about dosing evidence, any evidence or argument that some lower cumulative dose of Xarelto would be safer than the FDA-approved dose should be excluded as irrelevant to this case. Accordingly, the Court should preclude any attempt by Plaintiffs to introduce—as they say they will try to do—dosing evidence, including evidence or opinions that Ms. Mingo's "total daily dose was higher than the doses in *Boudreaux* and *Orr*" and "creat[ed] an even greater need for a test to determine whether she had too much Xarelto in her system, which correlates with a higher bleeding risk." Pls.' Opp. to Design Preemption (Doc. 7007), at 11–12.

## II. Evidence or argument that some lower cumulative dose of Xarelto would be safer than the FDA-approved dose Plaintiff was prescribed should be excluded because any probative value is substantially outweighed by the danger of confusion of the issues.

The first two bellwether trials involved patients' use of Xarelto for stroke prevention incident to their atrial fibrillation (AFib). FDA approved the AFib indication based on the ROCKET AF data. Here, however, Ms. Mingo was prescribed Xarelto for a different purpose— to treat her existing deep vein thrombosis. That indication—treatment of deep vein thrombosis/pulmonary embolism—was supported by different clinical trials known as the EINSTEIN studies. The approved doses that FDA approved for these indications (and that were tested in the clinical trials) differ because, among other things, the medical condition to be treated is different. Because this case does not involve the ROCKET AF clinical trial or a patient with

---

[4] *Id.* at 96:12–97:12 ("Q. . . . What lower dose of Xarelto would you say [Ms. Mingo] should have been titrated to? . . . A. . . . They could have considered titrating her to a lower dose. That's within their purview. They do not have to follow FDA guidelines. They can choose dosing that they feel is safer for the patient even though it is not necessarily following specific FDA guidelines. I don't know how they would do that.").

7

AFib, Plaintiffs should not be permitted to introduce evidence about the dose tested in ROCKET AF, the propriety of the AFib dose/dosing regimen, or other related dosing issues.[5]

Permitting Plaintiffs to introduce such evidence regarding Xarelto's dose for different indications would serve only to confuse the jury and create an unnecessary sideshow. *See, e.g.*, *Plemer v. Parsons-Gilbane*, 713 F.2d 1127, 1139 n.11 (5th Cir. 1983) (noting that where evidence, "though of some relevance, may lead to confusing and time-consuming disputes with respect to collateral issues the trial judge may properly reject or limit it under Rule 403" (internal quotation marks and citation omitted)). Admitting evidence or permitting argument suggesting that the cumulative dose of Xarelto is too high also would unnecessarily lengthen the trial by requiring Defendants to explain the regulatory context of the FDA's approval of the 15 mg twice-daily dose that Plaintiff was prescribed, as well as the context of the ROCKET AF trial and the dosing regimen for AFib patients.

## CONCLUSION

For the reasons stated above, the Court should exclude any evidence or argument related to unapproved dose regimens or the dose/dosing regimens for other indications.

Respectfully submitted,

| | |
|---|---|
| BARRASSO USDIN KUPPERMAN FREEMAN & SARVER, L.L.C. | MITCHELL, WILLIAMS, SELIG, GATES & WOODYARD, P.L.L.C. |
| BY: /s/ *Richard E. Sarver*<br>Richard E. Sarver<br>Celeste R. Coco-Ewing | By: */s/ Lyn P. Pruitt*<br>Lyn P. Pruitt<br>Adria W. Conklin<br>Benjamin D. Brenner |

---

[5] *See, e.g.*, *Orr* Trial Tr. at 212:6–12 (Christopher Nessel deposition designations) (eliciting testimony about "whether or not you recall Dr. Califf expressing the view that the dose – Xarelto dose [for AFib] patients of 15 to 20 [mg] was too high"); *id.* at 214:5–219:16 (testimony regarding Dr. Califf "ROCKET II" emails); *id.* at 317:15–318:2 (Dr. Smart) (offering expert opinions that the AFib dose "is too high" and should be dosed twice daily instead of once); *id.* at 875:9–876:25 (Kenneth Todd Moore deposition designations) (eliciting testimony about alleged "failure to test" a different dose or dosing regimen in ROCKET AF); *id.* at 900:9–903:10 (eliciting testimony about emails regarding twice-daily dosing regimen for AFib patients).

BARRASSO USDIN KUPPERMAN FREEMAN & SARVER, L.L.C.
909 Poydras Street, 24th Floor
New Orleans, Louisiana 70112
Telephone: (504) 589-9700
rsarver@barrassousdin.com
ccoco-ewing@barrassousdin.com


DRINKER BIDDLE & REATH LLP

By: /s/ *Susan M. Sharko*
Susan M. Sharko
DRINKER BIDDLE & REATH LLP
600 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
susan.sharko@dbr.com

Rodney M. Hudson
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
Telephone: (415) 591-7500
Rodney.hudson@dbr.com

Chanda A. Miller
DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2500
Chanda.Miller@dbr.com


IRWIN FRITCHIE URQUHART & MOORE LLC

By: /s/ *James B. Irwin*
James B. Irwin
Kim E. Moore
IRWIN FRITCHIE URQUHART & MOORE LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
jirwin@irwinllc.com

*Attorneys for Defendants Janssen Pharmaceuticals, Inc. and Janssen Research*

Mary Catherine Way
MITCHELL, WILLIAMS, SELIG, GATES & WOODYARD, P.L.L.C.
425 West Capitol Ave., Suite 1800
Little Rock, AR 72201
Telephone: (501) 688-8800
lpruitt@mwlaw.com
aconklin@mwlaw.com
bbrenner@mwlaw.com
mway@mwlaw.com


WATKINS & EAGER PLLC

By: */s/ Walter T. Johnson*
Walter T. Johnson
WATKINS & EAGER PLLC
The Emporium Building
400 East Capitol Street
Jackson, Mississippi 39201
Telephone: (601) 965-1846
wjohnson@watkinseager.com


ARNOLD & PORTER KAYE SCHOLER LLP

By: /s/ *William Hoffman*
William Hoffman
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
william.hoffman@apks.com

Andrew K. Solow
Steven Glickstein
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8485
andrew.solow@apks.com
steven.glickstein@apks.com


BRADLEY ARANT BOULT CUMMINGS LLP

By: */s/ Lindsey C Boney IV*

9

| | |
|---|---|
| *& Development, LLC* | Kevin C. Newsom<br>Lindsey C Boney IV<br>BRADLEY ARANT BOULT CUMMINGS LLP<br>One Federal Place, 1819 Fifth Avenue North<br>Birmingham, AL 35203-2119<br>Telephone: (205) 521-8803<br>knewsom@bradley.com |

CHAFFE MCCALL L.L.P.

By: /s/ *John F. Olinde*
John F. Olinde
CHAFFE MCCALL L.L.P.
1100 Poydras Street, Suite 2300
New Orleans, LA 70163
Telephone: (504) 585-7241
olinde@chaffe.com

*Attorneys for Bayer HealthCare Pharmaceuticals Inc. and Bayer Pharma AG*

**CERTIFICATE OF SERVICE**

  The undersigned hereby certifies that on the 17th day of July, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs by operation of the court's electronic filing system.

              /s/  John F. Olinde