# EXHIBIT 2

Protected - Subject to Further Protective Review

```
 1              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF LOUISIANA
 2

     *****************************
 3

     IN RE:  XARELTO                    MDL No. 2592
 4   (RIVAROXABAN)                      Section L
     PRODUCTS LIABILITY                 Judge Eldon Fallon
 5   LITIGATION                         Mag. Judge North
 6   THIS DOCUMENT RELATES TO:
     DORA MINGO
 7   Case No. 2:15-CV-03469
 8   *****************************
 9
     PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW
10
11
12
13     VIDEOTAPED DEPOSITION OF HENRY M. RINDER, MD
14
15             Tuesday, February 7, 2016
16                   8:05 a.m.
17
18       Held At:
19           Douglas & London, PC
20           50 Maiden Lane
21           New York, New York
22
23
24   REPORTED BY:
25   Maureen O'Connor Pollard, RMR
```

Protected - Subject to Further Protective Review

```
 1   APPEARANCES:
 2
 3   FOR THE PLAINTIFF:
 4        BY:   ROGER C. DENTON, ESQ.
 5              SCHLICHTER BOGARD & DENTON, LLP
 6              100 South Fourth Street, Suite 1200
 7              St. Louis, Missouri 63102
 8              314-621-6115
 9              rdenton@uselaws.com
10                  -and-
11         JOSEPH G. VANZANDT, ESQ.
12              BEASLEY ALLEN CROW METHVIN
13              PORTIS & MILES, PC
14              218 Commerce Street
15              Montgomery, Alabama 36104
16              334-269-2343
17              joseph.vanzandt@beasleyallen.com
18
19
20
21
22
23
24
25
```

Protected - Subject to Further Protective Review

```
 1   APPEARANCES (Continued):

 2

 3   FOR THE BAYER DEFENDANTS:

 4        PAMELA J. YATES, ESQ.

 5             ARNOLD & PORTER KAYE SCHOLER LLP

 6             77 South Figueroa Street, 44th Floor

 7             Los Angeles, California 90017

 8             213-243-4178

 9             pamela.yates@apks.com

10                 -and-

11        ADRIA W. CONKLIN, ESQ.

12             MITCHELL WILLIAMS

13             425 West Capitol Ave., Suite 1800

14             Little Rock, Arkansas 72201

15             501-688-8861

16             aconklin@mwlaw.com

17

18

19

20

21

22

23

24

25
```

Protected - Subject to Further Protective Review

```
 1   APPEARANCES (Continued):

 2

 3   FOR THE JANSSEN DEFENDANTS:

 4        BY:  MARGARET HOFFMANN, ESQ.

 5             SCHWABE, WILLIAMSON & WYATT

 6             1211 SW 5th Ave., Suite 1900

 7             Portland, Oregon 97204

 8             503-222-9981

 9             mhoffmann@schwabe.com

10                 -and-

11        DARYL DALY, ESQ.

12             DRINKER BIDDLE & REATH LLP

13             600 Campus Drive

14             Florham Park, New Jersey 07932

15             973-549-7106

16             daryl.daly@dbr.com

17

18

19   Videographer:  Danny Ortega

20

21

22

23

24

25
```

Protected - Subject to Further Protective Review

1    prothrombin time, and especially with the
2    Neoplastin, was useful for monitoring Xarelto
3    activity and risk of bleeding, that they could
4    have utilized that information in assessing her
5    bleeding risk.
6    BY MS. HOFFMANN:
7         Q.   And then you go on to say that if they
8    had done the things you recommend and they'd
9    identified her as having an unnecessary high
10   risk of major bleeding risk, she could have been
11   titrated to a lower dose.
12             What lower dose of Xarelto would you
13   say she should have been titrated to?
14             MR. DENTON:  I object to the form.
15   The sentence continues.
16        A.   Well, just to be clear, I'm giving --
17   I'm saying that they have several options.  One
18   is that they could have considered titrating her
19   to a lower dose.
20   BY MS. HOFFMANN:
21        Q.   And that's the option I'm asking you
22   about.
23        A.   Let me finish.  Let me finish.  Let me
24   just finish.
25             Or if that was not an option, or if

Protected - Subject to Further Protective Review

1  that was felt to be suboptimal, they could have
2  discontinued Xarelto and switched her to an
3  anticoagulant with a lesser risk of bleeding.
4           The aspect of -- I'll go back to
5  answer the first part of that question.  They
6  could have considered titrating her to a lower
7  dose.  That's within their purview.  They do not
8  have to follow FDA guidelines.  They can choose
9  dosing that they feel is safer for the patient
10 even though it is not necessarily following
11 specific FDA guidelines.
12          I don't know how they would do that.
13 They could try to break the pills in half, they
14 could give -- which I don't know that that's
15 possible.  They could give a cumulative dose
16 over time that was less than 30 per day, or if
17 that's not possible they could then switch, they
18 could then decide that they can't do that with
19 Xarelto and switch to a different anticoagulant.
20      Q.   You've used the disjunctive "or" in
21 setting forth these options, correct?
22      A.   That is correct, it says "or."
23      Q.   And so you're offering two options,
24 and the first option would be to titrate the
25 Xarelto to a lower dose.  That's the first

Protected - Subject to Further Protective Review

1    choice of treatment by Ms. Mingo's prescribing
2    doctor, Renie Jordan?
3             MR. DENTON:  Object to the form.
4    BY MS. HOFFMANN:
5        Q.   Is that correct?
6        A.   So if I'm asked, do I have a criticism
7    of Dr. Jordan, the answer is no.
8        Q.   Okay.  And you are not critical of the
9    decision to treat Ms. Mingo's DVT with an
10   anticoagulant, correct?
11       A.   Again, I do not have specific
12   criticisms of Dr. Jordan.
13       Q.   Okay.  Taking into consideration that
14   Ms. Mingo was post total hip replacement, that
15   she was somewhat inactive, that she was a
16   smoker, those would all be factors that would
17   weigh in on whether or not to anticoagulate her
18   DVT, wouldn't they?
19            MR. DENTON:  Object to the form.
20       A.   I'm sure that Dr. Jordan considered
21   all of the relevant factors in that decision to
22   begin anticoagulation in Ms. Mingo.
23   BY MS. HOFFMANN:
24       Q.   And is it fair to say that you are not
25   critical of Dr. Jordan's decision to prescribe

Protected - Subject to Further Protective Review

1    Xarelto to her at 15 milligrams twice a day for
2    the first 21 days for the treatment of that DVT?
3              MR. DENTON:  Objection.  Form, asked
4    and answered.
5         A.   As I said, I do not have any specific
6    criticisms of Dr. Jordan.
7    BY MS. HOFFMANN:
8         Q.   Okay.  Or his -- I just want to make
9    sure it's complete.  I know you don't have
10   criticisms of Dr. Jordan.  But are you also
11   saying that you do not have any criticisms of
12   the care and treatment that Dr. Jordan rendered
13   to Ms. Mingo?
14             MR. DENTON:  I only object to the
15   form.  I don't know how that's a different
16   question.
17             Go ahead.
18        A.   I'm -- my opinion with respect to not
19   having a criticism of Dr. Jordan is inclusive of
20   all of what I know of what Dr. Jordan did with
21   Ms. Mingo, and that's as best as I can say it.
22   BY MS. HOFFMANN:
23        Q.   And just to clarify, so you have no
24   criticism of Dr. Jordan's initial decision to
25   prescribe Xarelto for her DVT at 15 milligrams

Protected - Subject to Further Protective Review

```
 1      STATE OF NEW YORK )

 2      COUNTY OF ERIE    )

 3                  I, MAUREEN O'CONNOR POLLARD, RMR, CLR,

 4      and Notary Public in and for the State of New

 5      York, do certify that on the 7th day of

 6      February, 2017, at 8:05 o'clock, the person

 7      above-named was duly sworn to testify to the

 8      truth of their knowledge, and examined, and such

 9      examination reduced to typewriting under my

10      direction, and is a true record of the testimony

11      given by the witness.  I further certify that I

12      am neither attorney, related or employed by any

13      of the parties to this action, and that I am not

14      a relative or employee of any attorney employed

15      by the parties hereto, or financially interested

16      in the action.

17                  In witness whereof, I have hereunto

18      set my hand this 7th day of February, 2017.

19

20                  _____

21                  MAUREEN O. POLLARD, Notary Public

22                  My Commission Expires:  3/14/19

23                  Realtime Systems Administrator

24

25
```