UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: XARELTO (RIVAROXABAN) | * | MDL 2592 |
| PRODUCTS LIABILITY LITIGATION | * | |
| | * | SECTION L |
| THIS DOCUMENT RELATES TO: | * | |
| *Mingo v. Janssen Research* | * | JUDGE ELDON E. FALLON |
| *& Development, LLC, et al.*; | * | |
| Case No. 2:15-cv-03367 | * | |
| | * | MAGISTRATE JUDGE NORTH |

* * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF
MOTION IN LIMINE TO PROHIBIT OBJECTIVELY FALSE TESTIMONY THAT PT
NEOPLASTIN IS NOT USEFUL, DOES NOT WORK, OR THAT HAVING SUCH A
WARNING IN THE XARELTO LABEL WOULD BE RECKLESS, INAPPROPRIATE
OR DANGEROUS**

**I.    INTRODUCTION**

After two bellwether trials, the parties have become embroiled in a heated dispute over the introduction of evidence regarding the merits of PT Neoplastin to assess Xarelto patients' level of anticoagulation. It is an objectively known and established fact that in several countries other than the United States, *e.g.,* Canada, Bayer affirmatively advises physicians that PT Neoplastin "*may be useful* to inform clinical decisions" to assess the anticoagulation effect of Xarelto.[1] Yet, during the previous trials, Defendants' counsel and witnesses have been permitted to repeatedly say otherwise. While the Defendants may have different opinions about conclusions, they are not

---

[1] *See* Xarelto Product Monograph at 10, available at https://pdf.hres.ca/dpd_pm/00032074.PDF (emphasis added). It is also worth noting that Canada, like the United States, solely imposes responsibility on the safety and adequacy of a drug or device on its manufacturer. *See e.g., Attis v. Canada (Minister of Health)*, 93 O.R. (3d) 35, ¶57 (Ct. App. Ontario Sept. 30, 2008) ("The government, like the consumer, depends on the manufacturer to ensure product safety."), available at https://www.canlii.org/en/on/onca/doc/2008/2008onca660/2008onca660.html; Food and Drugs Act (R.S.C., 1985, c. F-27), Section 8, available at http://laws-lois.justice.gc.ca/eng/acts/f-27/page-2.html#docCont.    See also

1

entitled to their own facts. Plaintiffs already have the responsibility of shouldering the preponderance of evidence standard; they should not have to abide bald-face misrepresentations of established fact from Defendants' witnesses, unless permitted to directly confront the witnesses with prior inconsistent statements in the context in which they were made. If Plaintiffs are to be denied access to the tools (exhibits) essential to vigorously cross-examine the witness, Defendants should be prohibited from introducing objectively false testimony that PT Neoplastin is not useful, does not work, or that having such a warning in the Xarelto label would be reckless, inappropriate or dangerous. Such testimony previously has been tolerated in the *Boudreaux* and *Orr* trials to Plaintiffs' significant detriment. A more equitable balance should be struck in the *Mingo* trial.

## II.  ARGUMENT

Prior to the *Orr* trial, Plaintiffs moved *in limine* for an order allowing for the admission foreign labeling evidence.[2] This Court granted the motion in part, as follows: "This Court finds that anything the Defendants have said to anyone, even foreign regulatory bodies, should be admissible. What is not admissible, however, is what the Defendants did or what they put on Xarelto's label in other countries in order to comply with foreign regulatory bodies or agencies."[3]

When the issue was raised again during the *Orr* trial, this Court again ruled that statements from Defendants to the Canadian authorities were admissible both as a prior inconsistent statement under Federal Rule of Evidence 801(d)(2), and as a witness's prior statement under Federal Rule of Evidence 613, to show Defendants' knowledge.[4] The Court, however, continued to preclude the

---

[2] *See* Plaintiffs' Motion in Limine No. 35 to Admit Evidence of Defendants' Statements Outside of the United States that Directly Contradict their Position that Neoplastin PT is Not Useful and Does Not Work to Determine the Anticoagulant Activity of Xarelto [Record Doc. 6480]. This motion, and its supporting memorandum and exhibits, are incorporated herein by reference.

[3] *See* 05/26/17 Order in *Orr* [Record Doc. 6645], at 11-13.

[4] *See, e.g.,* Excerpts of *Orr* Trial Transcript at 1220:1-1221:7 [Attached hereto as Exhibit "1"].

entitled to their own facts. Plaintiffs already have the responsibility of shouldering the preponderance of evidence standard; they should not have to abide bald-face misrepresentations of established fact from Defendants' witnesses, unless permitted to directly confront the witnesses with prior inconsistent statements in the context in which they were made. If Plaintiffs are to be denied access to the tools (exhibits) essential to vigorously cross-examine the witness, Defendants should be prohibited from introducing objectively false testimony that PT Neoplastin is not useful, does not work, or that having such a warning in the Xarelto label would be reckless, inappropriate or dangerous. Such testimony previously has been tolerated in the *Boudreaux* and *Orr* trials to Plaintiffs' significant detriment. A more equitable balance should be struck in the *Mingo* trial.

## II.  ARGUMENT

Prior to the *Orr* trial, Plaintiffs moved *in limine* for an order allowing for the admission foreign labeling evidence.[2] This Court granted the motion in part, as follows: "This Court finds that anything the Defendants have said to anyone, even foreign regulatory bodies, should be admissible. What is not admissible, however, is what the Defendants did or what they put on Xarelto's label in other countries in order to comply with foreign regulatory bodies or agencies."[3]

When the issue was raised again during the *Orr* trial, this Court again ruled that statements from Defendants to the Canadian authorities were admissible both as a prior inconsistent statement under Federal Rule of Evidence 801(d)(2), and as a witness's prior statement under Federal Rule of Evidence 613, to show Defendants' knowledge.[4] The Court, however, continued to preclude the

---

[2] *See* Plaintiffs' Motion in Limine No. 35 to Admit Evidence of Defendants' Statements Outside of the United States that Directly Contradict their Position that Neoplastin PT is Not Useful and Does Not Work to Determine the Anticoagulant Activity of Xarelto [Record Doc. 6480]. This motion, and its supporting memorandum and exhibits, are incorporated herein by reference.

[3] *See* 05/26/17 Order in *Orr* [Record Doc. 6645], at 11-13.

[4] *See, e.g.,* Excerpts of *Orr* Trial Transcript at 1220:1-1221:7 [Attached hereto as Exhibit "1"].

presentation of any evidence about the actual label.[5] Strict adherence to this distinction prevented Plaintiffs from being able to present material evidence.

For example, Defendants' electrophysiology expert, Dr. Sammy Khatib, was permitted to testify on direct examination in the *Orr* trial that based on his extensive study of PT measurements, it would have been "inappropriate" and "reckless" to include the following labeling language proposed by Plaintiffs' regulatory expert, Dr. Suzanne Parisian: "Accordingly, measuring PT may be useful to inform clinical decisions in this circumstance."[6] **This purportedly "inappropriate" and "reckless" language actually came from Bayer's own label in Canada.** Dr. Khatib, however, could testify – unchallenged – that Bayer had not used that language with doctors outside of the United States, simply because Bayer's statements happened to be contained within a foreign label.[7]  Equally prejudicial to the plaintiffs, Dr. Khatib's demand to see the whole statement in context to respond to Plaintiffs' questioning could not be obliged because of the Court's restriction on introducing a foreign label.[8]

Likewise, Defendants' neurosurgical expert, Dr., Najeeb Thomas, testified in *Orr* that the same labeling language proposed by Dr. Parisian was "dangerous."[9] This testimony, like the testimony of Dr. Khatib, remained unchallenged for one reason only: Plaintiffs were precluded from presenting Dr. Thomas with **the same purportedly "dangerous" language from Bayer's**

---

[5] *See, e.g., id.* at 1221:8-1222:11, 1274:20-1277:23, 1280:9-24

[6] *See, e.g., id.* at 1892:10-1893:25, 1984:12-17.

[7] *See e.g., id.* at 1975:20-1976:19, 1977:24-1978:2, 1979:2-6.

[8] *See e.g., id.* at 1976:17-19 ("I don't have the whole document here.  I am not going to comment on what Bayer thinks or doesn't think.  I am not going to look at snippets.").

[9] *See id.* at 2282:9-2283:19.

**own label in Canada,** simply because the language happened to be contained within a foreign label.[10]

During the July 10, 2017 Hearing on the Bayer Defendants' Motion to Quash, this Court confirmed its ruling about foreign labels: "So the label itself is not admissible, not relevant, not able to be used in their particular case."[11] Plaintiffs respectfully disagree with this aspect of the Court's ruling. First, such a blanket exclusion fails to enable the proper and intended use of the evidence which is to show the Defendants' knowledge.[12] Second, the Court's broad ruling

---

[10] *See id.*

[11] *See In re Xarelto Prod. Liab. Litig.*, MDL 2592, Transcript of Telephone Status Conf. at 14 (E.D. La. July 10, 2017) [Attached hereto as Exhibit "2"].

[12] District courts routinely permit the admission into evidence of foreign regulatory materials. For example, Judge Herndon in *Yaz* denied a motion *in limine* filed by Bayer to preclude foreign regulatory materials, explaining that:

> While the regulatory actions of European Medical regulators are not binding on the FDA . . . the full body of knowledge including the foreign regulatory process that came to bear on the drugs at issue and which were well within the notice and knowledge of Bayer is admissible as part of the fabric of how these drugs came to the United States market and whether all the information which should have been utilized in doing so was utilized. Such evidence is clearly probative and that value outweighs the prejudice to Bayer.

*In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & PMF Prods. Liab. Litig.*, No. 3:09-md-2100, 2011 WL 6740391, at *2 (S.D. Ill. Dec. 22, 2011). *See also In re Levaquin Prods. Liab. Litig.*, No. 08-cv-1943, 2010 WL 145282, at *5 (D. Minn. Nov. 9, 2010) (holding foreign regulatory materials are relevant to demonstrate the drug manufacturer's notice and motive); *Mahaney v. Novartis Pharms. Corp.*, 835 F. Supp. 2d 299, 318 (W.D. Ky. 2011) (same); *Rheinfrank v. Abbott Labs., Inc.*, No. 13-cv-144, 2015 WL 5258858, at *4 (S.D. Ohio Sept. 10, 2015) (holding evidence of a foreign label is relevant to a drug manufacturer's notice and knowledge of risks); *In re Tylenol (Acetaminophen) Mktg., Sales Practices & Prods. Liab. Litig.*, 181 F. Supp. 3d 278, 307 (E.D. Pa. 2016) (agreeing that warnings on foreign labels are evidence of the defendants' notice and knowledge of potential risks related to their products).

Most recently, similar evidence was permitted in *In re Testosterone Replacement Therapy Prods. Liab. Litig.*, No. 14-cv-1748, 2017 U.S. Dist. LEXIS 69402 (N.D. Ill. May 8, 2017). More specifically, the district court refused to disregard an analysis by Health Canada, rejecting AbbVie's argument that the analysis was based on "a different label, under a different regulatory regimen, in a different country." *Id.* at *1010. The court recognized that "the analysis is not being used to dispute the adequacy of AbbVie's FDA-approved labels. Plaintiffs offer the analysis to show only that the scientific community agreed that more testing was required to determine whether drugs such as AndroGel increased the risk of cardiovascular injury." *Id.*

effectively contravenes the critically important provisions of Fed.R.Evid. 801(d)(2). The Court, invoking these provisions, has explained that "while the labels were not admissible, if there is a statement made by a defendant in any place prior to or inconsistent with, detrimental to the position that they're taking now, that's an 801(d)(2) and is therefore admissible."[13]

Federal Rule of Evidence 801(d)(2) expressly excludes from the definition of "hearsay," prior statements made by an opposing party. On this basis, the Court has held that Bayer's prior statements to the Canada Health agency are admissible in evidence. But the Court also required plaintiffs to redact information in such a way as to take these statements out of context. Thus, Defendants' witnesses can deflect Bayer's own contradictory words by refusing to comment on "snippets" without seeing the "whole document." Not only is this patently inequitable given the admissibility of the statements themselves, but, notably, the comments to Rule 801 provide the answer: "[T]he context in which the statement was made" is relevant to the document's admissibility. *See* Fed.R.Evid. 801(d)(2) (comments to 1997 Amendment). In other words, without placing these statements in proper context, merely allowing Plaintiffs to use the Defendants' inconsistent statement without reference to the foreign label deprives the jury of the information necessary to connect the dots and understand the significance of the document.

Consequentially, Plaintiffs have been severely prejudiced. Given the severity of the prejudice, Plaintiffs present a solution: If the foreign label remains inadmissible, the Defendants should be prohibited from abandoning their prior statement. They should be wed to their words, and estopped from denying them. They should be prohibited from any assertion whether by testimony or argument by counsel that PT Neoplastin is not useful, does not work, or that having such a warning in the Xarelto label would be reckless, inappropriate or dangerous.

---

[13] Exb. 2 at 14-15.

### III. CONCLUSION

Defendants should not be permitted to misrepresent established fact. They should be prohibited from contending that PT Neoplastin is not useful, does not work, or that having such a warning in the Xarelto label would be reckless, inappropriate or dangerous. If they contend otherwise, this Court should instruct the jury that it is an established fact that the Defendants agree that PT Neoplastin may be useful to inform clinical decisions to assess the anticoagulation effect of Xarelto.

For the reasons set forth above, Plaintiffs' motion should be granted.

Dated: July 17, 2017

Respectfully submitted,

*/s/ Leonard A. Davis*
Leonard A. Davis, Esq. (Bar No. 14190)
**HERMAN, HERMAN & KATZ, LLC**
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Email: ldavis@hhklawfirm.com

Gerald E. Meunier (Bar No. 9471)
**GAINSBURGH BENJAMIN DAVID MEUNIER & WARSHAUER, LLC**
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
Email: gmeunier@gainsben.com

***Plaintiffs' Liaison Counsel***

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 17, 2017 the foregoing pleading and its supporting memorandum of law were filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs and Defendants by operation of the court's electronic filing system and served on all other plaintiff counsel via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre- Trial Order No. 17.

*/s/ Leonard A. Davis*
**LEONARD A. DAVIS**