## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

IN RE: XARELTO (RIVAROXABAN)
PRODUCTS LIABILITY LITIGATION

MDL No. 2592

THIS DOCUMENT RELATES TO:

SECTION L

**Dora Mingo, et al. v. Janssen Research &
Development, et al.
Case No. 2:15-cv-03469**

JUDGE ELDON E. FALLON

MAGISTRATE NORTH

**William Henry v. Janssen Research &
Development,
LLC f/k/a Johnson & Johnson Pharmaceutical
Research and Development, LLC, et al.
Case No. 2:15-cv-0224**

### DEFENDANTS' REPLY IN SUPPORT OF THEIR RENEWED JOINT *DAUBERT* MOTION TO EXCLUDE EXPERT OPINIONS AND TESTIMONY REGARDING UNAPPROVED DOSING AND MONITORING REGIMENS

Since the first motion period, Defendants have challenged under *Daubert* those experts who opine (1) that prothrombin ("PT") or anti-Factor Xa assays can be used to predict the risk of a bleeding event on Xarelto or to titrate dose off-label; (2) that the FDA approved once-daily dosing regimen is less safe than twice-daily dosing; and (3) that the FDA approved Xarelto doses studied and confirmed in Defendants' phase III trials are too high. Defendants' renewed *Daubert* motion (Doc. 6740) raises those same issues with respect to anticipated expert testimony in the upcoming *Mingo* and *Henry* trials.

In response, Plaintiffs again fail to defend the reliability of their experts' dosing opinions, purportedly, because they will not be presented at trial. Doc. 7001 at 5. But time and again (including in their instant opposition brief), Plaintiffs have confirmed that they intend to offer the challenged opinions as supposed support for their ultimate theories of liability. The Court thus is required to analyze the relevance and reliability of those opinions under *Daubert*. A party should

not be permitted to evade the mandatory *Daubert* scrutiny by putting a different dress on the evidence.

Defendants respectfully maintain that opinions on the safety of alternative, unapproved doses and dosing regimens, as well as the use of PT and anti-Factor Xa assays to predict risk, do not meet *Daubert*'s standards.  The Court should exclude these opinions.

## ARGUMENT

I.    **The Law Requires The Court To Determine Whether The Proposed Expert Testimony May Be Heard By The Jury.**

To fulfill its gatekeeping role, the Court at "a minimum . . . *must* create a record of its *Daubert* inquiry and articulate its basis for admitting expert testimony" after evaluating the reliability and relevance of the testimony.  *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 201 (5th Cir. 2016) (citations and quotations omitted) (emphasis added).  Plaintiffs confirm that dosing opinions that pertain to both the venous thromboembolism ("VTE") treatment (*Mingo*) and Afib (*Henry*) indications will be presented at trial to support their contention that Xarelto is unsafe without a screening test to identify high risk patients.  Doc. 7001 at 6–7.  Accordingly, and as explained below, the Court must rule on the expert opinions that Defendants challenge in their Renewed Joint *Daubert* Motion (Doc. 6740).

Plaintiffs don't dispute that their experts offer opinions on the appropriateness of the approved Xarelto doses.  Doc. 7001 at 6 (". . . some experts have criticized the dose levels and/or the once-daily dosing regimen . . .").  They write that such opinions "support their opinions with regard to the need to evaluate the risk of bleeding in the Xarelto-treated population."  *Id.* at 6–7.  In Plaintiffs' words:

> It is . . . *because* Xarelto is not taken twice-daily by non-DVT patients . . . and/or *because* the Xarelto once-daily dose potentially is too high, and/or *because* of the total daily dose experienced by DVT patients is even higher, that Xarelto needs a screening-type blood test[.]

*Id.* at 7 (emphasis in original). This means that Plaintiffs' design defect and failure to warn theories are, by their own admission, premised in part on their experts' dosing opinions.

Consistent with the above approach to proving their claims, Plaintiffs' will call witness list in *Mingo* includes Dr. Rinder and Dr. Parisian. They both opine on dosing. Dr. Rinder advocates "titrating" the approved dose of Xarelto, that is, prescribing unapproved lower Xarelto doses to patients. Rinder (Mingo) Rep. at 2 (Exh. 7 to Doc. 6740) ("Had [Mingo's] physicians known to test for Xarelto anticoagulant activity . . . with the PT (Neoplastin) at the onset of Xarelto treatment . . . she could have been . . . *titrated to a lower dose*[.]") (emphasis added). Dr. Parisian runs the gamut on dosing; her report includes opinions on dose titration, the once-daily regimen, and an alternative lower total daily dose. Parisian Rep. at 9, 14, (Exh. 1) ("Opinion 1 . . . Without . . . the ability for a physician *to adjust a patient's dose*, certain patients were placed at increased risk of major bleeding . . . Opinion 13 Defendants' failure to . . . make such a *lower dose pill* or *twice-daily dose* available for use renders Xarelto unreasonably dangerous as designed.") (emphasis added).

Dosing testimony was also presented in the *Orr* trial. Plaintiffs had their expert Dr. Smart testify to his "dosing criticisms," which Plaintiffs' counsel told the Court were "*relevant to and a predicate for* his opinion that the warnings given about Xarelto are not adequate[.]" 05/31/2017 *Orr* Trial Tr. at 512:22–513:1 (Exh. 2) (emphasis added). Counsel made clear that Plaintiffs' dosing theories still were on the table and would be offered to the jury: "[Dr. Smart] was always going to talk about the dosing issues concerning Xarelto. . . .We never abandoned any discussion about dosing. We never abandoned Dr. Smart's expert opinion about dosing." *Id.* at 515:5–24.

In sum, there can be no dispute that Plaintiffs will offer expert testimony on dosing in *Mingo* and *Henry* to bolster their ultimate design defect and failure to warn theories.

Characterizing such testimony as a warm-up event for their failure to warn theory does not moot the need for *Daubert* review. The Supreme Court explicitly instructs that "[f]aced with a proffer of expert scientific testimony . . . the trial judge must determine at the outset . . . whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 592 (1993).

Plaintiffs cannot avoid *Daubert* scrutiny simply because they will not present *as a theory of liability* an opinion that Xarelto would be safer if dosed differently. That is, any testimony that qualifies as scientific, expert testimony must satisfy *Daubert*'s reliability and relevance criteria, regardless of the purpose for which the proponent seeks to offer the testimony.

The bottom line is that Plaintiffs plan for the jury to hear expert testimony on dosing. *Daubert* and binding Fifth Circuit precedent thus require this Court to exercise its gatekeeping function and evaluate the admissibility of such testimony before it's heard by the jury. *See Carlson*, 822 F.3d at 201 (reversible error when district court "disregarded its gatekeeping function to determine the admissibility of [expert] evidence" where "no *Daubert* inquiry took place").

## II.    Plaintiffs' Dosing And Dose Titration Opinions Are Not Reliable And Therefore Inadmissible Under *Daubert*.

In the *Daubert* briefing submitted before the *Boudreaux* trial, Defendants set forth the numerous reasons that require exclusion of Plaintiffs' expert opinions regarding (1) individualized downward dose titration, (2) the safety of the approved once-daily dose, and (3) an alternative lower total daily dose. *See* Docs. 5113, 5113-1, and 5688. Those arguments demonstrated that based on the experts' own deposition testimony, the opinions are untested hypotheses and lack other indicia of reliability under *Daubert*. *See Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997) (setting forth factors that may be considered in evaluating the reliability of expert

testimony, including whether a theory has been tested, subjected to peer review and publication, has a known or potential error rate, and is generally accepted in the scientific community).[1]

Plaintiffs spend not one word of their opposition attempting to explain how their dosing opinions could possibly satisfy *Daubert*'s reliability factors.  *See* Doc. 7001.  Having declined for the third  time to respond to the merits of Defendants' arguments, the Court should also find that Plaintiffs have waived their opposition or have conceded the points set forth by Defendants.  *E.g.*, *McZeal v. J.P. Morgan Chase Bank, NA*, No. 13-6754, 2014 WL 3166715, at *8, n.23 (E.D. La. July 7, 2014) (collecting cases and explaining that "fail[ure] to address an issue in response or opposition to a pending motion" waives that issue).

For both of these independent reasons, the Court should grant Defendants' renewed *Daubert* motion on dosing and dose titration testimony offered by Plaintiffs' experts.

**III.    Plaintiffs' Theories That Neoplastin PT And Anti-Factor Xa Assays Should Be Used To Make Prescribing Decisions Remain Inadmissible Under *Daubert*.**

Certain experts also opine about the use of Neoplastin PT tests and anti-Factor Xa assays to evaluate Xarelto patients' risk of bleeding for the purpose of making prescribing decisions. Plaintiffs fail to explain how such opinions meet *Daubert*'s reliability criteria, thereby requiring exclusion.

Citing to prior briefing and oral argument, Plaintiffs contend that Neoplastin PT testing after Xarelto initiation to assess a patient's bleeding risk and make prescribing decisions is a reliable opinion under *Daubert*.  Plaintiffs say that this opinion is supported by the ROCKET AF trial and Defendants' own scientists, as well as government agencies, medical associations, and peer-reviewed publications.

---

[1] Those arguments are incorporated by reference in Defendants' renewed *Daubert* motion, Doc. 6740 at 2, and in this reply.

As explained in previous briefing, Defendants do not dispute that there is a relationship between Neoplastin PT results and serum concentration of Xarelto.  Data on PT was collected in Defendants' clinical trials, presented to FDA and other regulatory authorities, and is described in the Xarelto label.  § 12.2 Xarelto USPI (Exh. 3) ("Dose-dependent inhibition of FXa activity was observed in humans and the Neoplastin prothrombin time (PT) . . . [is] prolonged dose-dependently.").  Further, even if Plaintiffs are correct that there is a meaningful relationship between PT and bleeding risk (which Defendants dispute), Plaintiffs' experts go a great step too far under *Daubert* by jumping to the unsupported conclusion that doctors should *use* PT to determine whether anticoagulation therapy is appropriate to treat VTE or prevent stroke.

That opinion is not supported by reliable methodology and other indicia of reliability under *Daubert*.  There is no dispute that Plaintiffs' proposed *use* of PT has not been tested, peer-reviewed, or published, and is not generally accepted by regulatory authorities or medical professionals who treat patients with anticoagulants.  *See, e.g.*, Doc. 5688 at 9–11.  Further, Plaintiffs' articulation of their PT opinion is too vague to help the jury evaluate whether an instruction on PT would have made a difference in Mingo or Henry's prescribing physicians' decisions, because their experts can't offer particular clinical recommendations based on PT values.  *See id.* at 7–9.[2]

For all of these reasons, the Court should exclude the experts' opinions that Xarelto would be safer if prescribing physicians were instructed to give patients Neoplastin PT tests to determine whether Xarelto is appropriate.

---

[2] Defendants fully briefed the numerous reasons that require exclusion of Plaintiffs' PT screening test opinion in their reply brief in support of their initial *Daubert* motion.  Doc. 5688 at 5–11.  Defendants incorporate those arguments here.

Plaintiffs also contend that Xarelto is defective because it was placed on the market without an anti-Factor Xa assay.  Doc. 7001 at 3–4.  Again, Plaintiffs make no attempt to respond to Defendants' substantive arguments that using anti-Factor Xa assay results on a routine basis to make prescribing decisions, as their experts recommend, has not been tested or studied in clinical practice.  Doc. 6740 at 6–7.  They also fail to respond to Defendants' argument that without the requisite testing or data, no expert can reliably conclude that Ms. Mingo or Mr. Henry's injuries would have been avoided, had their coagulation status been evaluated with an anti-Factor Xa assay. *Id.* at 7.

Plaintiffs' sole effort to defend this opinion is by citation to arguments in their briefs in opposition to Defendants' motions for summary judgement under the LPLA  and based on federal preemption.  *See* Doc 7001 at 4, n.4 (citing Docs. 5606 & 5652).  But those summary judgment opposition briefs do not address the *Daubert* reliability criteria regarding the proffered expert opinions on the use of anti-Factor Xa assays to make prescribing decisions in clinical practice. The briefs argue only that the assay has been used in clinical trials (albeit for other purposes), can assess plasma concentration and anticoagulation activity, is available in Europe, and is described in the Canadian label.[3]  Doc. 5606 at 10, Doc. 5652 at 3, 7.  None of those facts are sufficient to meet Plaintiffs' burden under *Daubert* of demonstrating the reliability of the proposed *use* of the assay as a screening and prescribing tool. The Court therefore should exclude expert testimony that Xarelto is unsafe because it isn't accompanied by an anti-Factor Xa assay.

---

[3] The information contained in the Canadian label does not support Plaintiffs' proposed use of the assay. With respect to the use of Factor Xa assays, it states that "there is no need to monitor anticoagulation effect of Xarelto during routine clinical practice," but that the assay "using rivaroxaban-specific calibrators and controls, may be useful to inform clinical decisions" in certain "infrequent situations such as overdose, acute bleeding, urgent surgery, in cases of suspected non-compliance, or in other unusual circumstances." Canadian Monograph at 10 (Exh. 4).

Finally, there is no merit to Plaintiffs' contention that Defendants have failed to apply *Daubert* to the testimony of individual experts regarding an anti-Factor Xa assay.  Defendants identified the experts and their opinions that are at issue.  Doc. 6740 at 5–6, n.6 (setting forth the particular anti-Factor Xa opinions at issue with pincites to each expert report).

## CONCLUSION

For all of the reasons stated above and those set forth in Defendants' opening brief and the previous briefing incorporated by reference, pursuant to Federal Rule of Evidence 702 and *Daubert*, the Court should exclude any expert testimony and opinions regarding: (1) the monitoring of Xarelto patients or the use of PT tests or anti-Factor Xa assays with Xarelto patients to predict risk; (2) the alleged improved safety of Xarelto with twice-daily dosing; and (3) the alleged improved safety of Xarelto with an unapproved, alternative dose.

Respectfully submitted,

BARRASSO USDIN KUPPERMAN FREEMAN &
SARVER, L.L.C.

BY: /s/ Richard E. Sarver
Richard E. Sarver
Celeste R. Coco-Ewing
BARRASSO USDIN KUPPERMAN FREEMAN &
SARVER, L.L.C.
909 Poydras Street, 24th Floor
New Orleans, Louisiana  70112
Telephone:  (504) 589-9700
rsarver@barrassousdin.com
ccoco-ewing@barrassousdin.com


DRINKER BIDDLE & REATH LLP

By: /s/ Susan M. Sharko
Susan M. Sharko
DRINKER BIDDLE & REATH LLP
600 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
susan.sharko@dbr.com

Rodney M. Hudson
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
Telephone: (415) 591-7500
Rodney.hudson@dbr.com

Chanda A. Miller
DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2500
Chanda.Miller@dbr.com

MITCHELL, WILLIAMS, SELIG,
GATES & WOODYARD, P.L.L.C.

By: /s/ Lyn P. Pruitt
Lyn P. Pruitt
Adria W. Conklin
Benjamin D. Brenner
Mary Catherine Way
MITCHELL, WILLIAMS, SELIG,
GATES & WOODYARD, P.L.L.C.
425 West Capitol Ave., Suite 1800
Little Rock, AR  72201
Telephone: (501) 688-8800
lpruitt@mwlaw.com
aconklin@mwlaw.com
bbrenner@mwlaw.com
mway@mwlaw.com


WATKINS & EAGER PLLC

By: /s/ Walter T. Johnson
Walter T. Johnson
WATKINS & EAGER PLLC
The Emporium Building
400 East Capitol Street
Jackson, Mississippi 39201
Telephone: (601) 965-1846
wjohnson@watkinseager.com

ARNOLD & PORTER KAYE SCHOLER LLP

By: /s/ William Hoffman
William Hoffman
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
william.hoffman@apks.com

IRWIN FRITCHIE URQUHART & MOORE LLC

By: /s/ James B. Irwin
James B. Irwin
Kim E. Moore
IRWIN FRITCHIE URQUHART & MOORE LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
jirwin@irwinllc.com

*Attorneys for Defendants Janssen
Pharmaceuticals, Inc. and Janssen Research
& Development, LLC*

Andrew K. Solow
Steven Glickstein
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8485
andrew.solow@apks.com
steven.glickstein@apks.com


BRADLEY ARANT BOULT CUMMINGS LLP

By: /s/ Lindsey C Boney IV
Kevin C. Newsom
Lindsey C. Boney IV
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place, 1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8803
knewsom@bradley.com


CHAFFE MCCALL L.L.P.

By: /s/ John F. Olinde
John F. Olinde
CHAFFE MCCALL L.L.P.
1100 Poydras Street, Suite 2300
New Orleans, LA 70163
Telephone: (504) 585-7241
olinde@chaffe.com

*Attorneys for Bayer HealthCare
Pharmaceuticals Inc. and Bayer Pharma AG*


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 17th day of July, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to Liaison Counsel for Plaintiffs by operation of the court's electronic filing system.


/s/ John F. Olinde


10