UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE ELDON E. FALLON |
| Dora Mingo, et al. v. Janssen Research & Development, LLC et al. Case No. 2:15-cv-03469 | MAGISTRATE NORTH |
| William Henry v. Janssen Research & Development, LLC f/k/a Johnson & Johnson Pharmaceutical Research and Development, LLC, et al. Case No. 2:15-cv-0224 | |

**BAYER DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' PUNITIVE-DAMAGES DEMANDS**

Faithful application of Mississippi and Texas choice-of-law principles requires this Court to separately assess which state, among several possibilities, has the "most significant relationship" to Plaintiffs' demand for punitive damages. Under settled choice-of-law principles, that state's law must apply irrespective of what state's law applies to the underlying liability question.

Plaintiffs advocate instead for a bright-line rule—purportedly derived from *Valley Forge Ins. Co./CNA Ins. Co. v. Strickland*, 620 So. 2d 535, 539 (Miss. 1993)—that whatever substantive law applies to the underlying tort claim, that same law must govern punitive damages. But that isn't the law: *Valley Forge* does not require application of a single state's law to every issue in a particular lawsuit. *Valley Forge* simply *does not apply* in a case like this one—where the Court has before it several possible states' laws to apply—because in *Valley Forge* there was *no conflict of law to resolve*. *See id.* (concluding that the trial court had observed a "false conflict" because the "only tortious conduct to be found in the record occurred in Mississippi"). There simply was

no contact with another state that could have led the court to apply that state's law. Here, the Court must contend with multiple states' laws that could apply to various questions in the case—the law of the place of injury/Plaintiffs' domicile (Mississippi and Texas) on the one hand, and the law of the place of the alleged misconduct/Defendants' principal places of business on the other (New Jersey and Germany).

*Valley Forge* cannot guide that analysis. Indeed, Plaintiffs' reading of *Valley Forge* would overturn longstanding Mississippi precedent, which Mississippi courts continue to apply, that the *Restatement (Second) of Conflict of Laws* analysis applies "to each question presented" in a case. *See Boardman v. United Servs. Auto. Ass'n*, 470 So. 2d 1024, 1031 (Miss. 1985) ("[T]he law of a single state does not necessarily control every issue in a given case. We must apply the [*Restatement (Second)*] test to each question presented."); *see also Shortie v. George*, No. 2015-CA-00944-COA, 2017 WL 2257582, at *5 (Miss. Ct. App. May 23, 2017) (applying South Carolina law to distribution of wrongful-death proceeds even though Mississippi substantive law applied). No Mississippi court has applied *Valley Forge* in the fashion that Plaintiffs suggest.

The Court must instead apply the most-significant-relationship test of the *Restatement (Second)*—which Mississippi and Texas courts have faithfully followed—on an issue-by-issue basis even when that leads to application of different states' laws with regard to different issues, including punitive damages. *See, e.g.*, *Eisenstadt v. Tel. Elecs. Corp.*, No. 3:06-CV-1196, 2008 WL 4386993, at *10–11 (N.D. Tex. Sept. 26, 2008) (applying Mississippi choice of law in consolidated action and finding that Mississippi law governed liability but the law of the defendants' domicile (Texas) applied to punitive damages); *see also In re Educ. Testing Serv. Praxis Principles of Learning & Teaching: Grades 7-12 Litig.*, 517 F. Supp. 2d 832, 852 (E.D. La. 2007) (Vance, J.) (applying *Restatement (Second)* principles (under Ohio law) to apply New Jersey

law to punitive damages despite law of plaintiffs' domicile governing liability).  And, as another MDL court recently held, the "state in which a defendant is domiciled"—*i.e.*, "where the conduct that allegedly caused the injury took place"—"tends to have a stronger policy interest in whether punitive damages are available than the state in which the plaintiff's injury occurred."  *In re Testosterone Replacement Therapy Prods. Liab. Litig.*, MDL No. 2545, 2017 WL 1836435, at *21–22 (N.D. Ill. May 8, 2017).

Here, the contacts most relevant to Plaintiffs' punitive-damages demand against Bayer point to application of either New Jersey or German law because those states are the Bayer Defendants' principal places of business and, thus, where any alleged misconduct occurred. Plaintiffs have asked the Court to ignore German law and to consider Pennsylvania contacts as part of the analysis, but those arguments both fail.  As to Germany, Plaintiffs contend that Federal Rule of Civil Procedure 44.1 required earlier "notice" that Bayer would seek application of German law, but Rule 44.1 does not help Plaintiffs.  They have long been on notice that German law issues pervade this case, and the rule requires only "reasonable notice" in "a pleading or other writing," so Bayer's motion is all the notice that was required.  As for Pennsylvania, Plaintiffs simply note that one of the Bayer non-litigating defendants that has been voluntarily dismissed in the first two bellwether cases was at one time (but is no longer) based in Pennsylvania and that one of its divisions was involved in the early development of Xarelto® almost a decade before Xarelto came to market (but not since 2003).  Those contacts do not establish the "most significant relationship"—or any significant relationship—to Plaintiffs' punitive-damages demand, particularly in light of the fact that Bayer's remaining work on Xarelto since 2003 has occurred in New Jersey and Germany.

The Court should engage in the necessary *Restatement (Second)* analysis, which points to New Jersey or German law to govern punitive damages here. Because neither state allows punitive damages in cases like these, the Court should grant Bayer summary judgment on Plaintiffs' punitive-damages demand.

## ARGUMENT

**I.    *Valley Forge* and the superseded *Torrington* Texas intermediate-court-of-appeals decision do not establish bright-line rules for punitive damages in a case, like this one, where there is a conflict of laws.**

The *Restatement (Second)*, which all agree applies here, in no way compels the Court to apply the same state's law for punitive damages as for substantive liability. Quite the contrary—Section 171 requires the Court to *independently* analyze Section 145's listed contacts, and the *Restatement (Second)* acknowledges that different states' laws may apply as between compensatory damages/liability and punitive damages. *See* Opening Br. (Doc. 6758), at 5–6; *Restatement (Second)* § 171, cmt. d. Plaintiffs ignore that settled, essential principle, and instead rely on two inapplicable cases—one from Mississippi and one from Texas—that do not inform the analysis in this case.

*Mississippi.* Plaintiffs' entire position under Mississippi law rests on an isolated quote, taken out of context, from *Valley Forge Ins. Co./CNA Ins. Co. v. Strickland*, 620 So. 2d 535 (Miss. 1993). To be clear, *Valley Forge* simply does not apply here because, importantly, *there was no conflict of law for that court to resolve*. The Mississippi Supreme Court concluded that the trial court erred by conducting a choice-of-law analysis because the conflict that the trial court had "perceived . . . was a false one." *Id.* at 539. Indeed, *the entire set of facts* that could have given rise to punitive damages arose *in only one state*—Mississippi. *See id.* ("[T]he only tortious conduct to be found in the record occurred in Mississippi."). So it is hardly surprising that the court

4

concluded that the Mississippi law applicable to the underlying bad-faith tort claim was "the only law to consider in assessing punitive damages." *Id.*

Thus, *Valley Forge* does not create a bright-line rule as Plaintiffs suggest. It certainly does not overturn the longstanding Mississippi precedents that have faithfully applied the *Restatement (Second)* analysis issue-by-issue in cases (like this one) that involve an actual choice-of-law question—*i.e.*, where a court must decide which state's law to apply among two (or more) different states' laws that could apply with conflicting outcomes. *See Boardman*, 470 So. 2d at 1031. No Mississippi court has ever applied *Valley Forge* in the manner that Plaintiffs suggest.[1] And since *Valley Forge*, other courts have applied the Mississippi choice-of-law analysis separately to each issue presented—sometimes leading to application of multiple states' laws, including other states' punitive-damages law. *See, e.g.*, *Eisenstadt*, 2008 WL 4386993, at *10–11 (under Mississippi choice of law, Mississippi law governed liability but Texas law governed punitive damages); *see also, e.g.*, *Shortie*, 2017 WL 2257582, at *5 (same, applying Mississippi substantive law but South Carolina law to distribution of wrongful-death proceeds). This Court should not upend settled principles of Mississippi law by reading *Valley Forge* as broadly as Plaintiffs suggest.

*Valley Forge* is distinguishable for other reasons as well. As Plaintiffs admit (*see* Pls.' Br. at 6), *Valley Forge* was a bad-faith insurance case. The underlying insurance contract arose in Louisiana, but the punitive-damages claim arose solely from Valley Forge's assertion of a subrogation claim in a Mississippi court under Mississippi law, to which the defendants filed a bad-faith counterclaim. 620 So. 2d at 537–38. Despite having sought the protections of

---

[1] A single district court decision outside of Mississippi has also taken the *Valley Forge* quote out of context, and without analysis, stated that "[t]he law applicable to the underlying tort also governs whether punitive damages are recoverable." *In re Train Derailment Near Amite, La. on Oct. 12, 2002*, No. MDL NO. 1531, 2003 WL 22384962, at *3 (E.D. La. Oct. 16, 2003). But despite quoting *Valley Forge*, the court there appears to have actually analyzed punitive damages independently of liability; it pointed to the location of the conduct that plaintiffs claimed warranted punitive damages. *See id.* at *4.

5

Mississippi subrogation law, Valley Forge argued that Louisiana law applied to the bad-faith claim. The trial court engaged in a choice-of-law analysis and found "that Valley Forge ha[d] engaged in a bad faith effort to assert in Mississippi a contention Valley Forge knows it cannot successfully assert in Louisiana, the state where the contract was made." *Id.* at 539 (emphasis omitted). On review, the Mississippi Supreme Court held that the trial court was not "require[d]" to "choose between" two states' laws for the bad-faith claim and applied Mississippi law to both liability and punitive damages simply because, as explained above, "the only tortious conduct to be found in the record" regarding bad faith "occurred in Mississippi." 620 So. 2d at 539. But contrary to Plaintiffs' suggestion, that conclusion was not based on a perceived need to apply a single state's law, or the fact that the injury had occurred in Mississippi. The court applied Mississippi law to punitive damages based solely on the fact that Valley Forge's *tortious conduct* had occurred *entirely in Mississippi*. *See id.* No choice-of-law analysis was needed on the bad-faith claim, the only claim that involved punitive damages. *See id.* ("The conflict of punitive damages law perceived by the [trial court] was a false one."). Because all the conduct at issue occurred in Mississippi, the decision did not involve a conflict—and was not a difficult one.

*Valley Forge* does not allow Plaintiffs to escape application of the *Restatement (Second)* test for the punitive-damages choice-of-law assessment here.

***Texas.*** Plaintiffs contend that Texas applies a similar bright-line rule, pointing to the Texas Court of Appeals' decision in *Torrington Co. v. Stutzman*, 36 S.W.3d 511 (Tex. Ct. App. 1999). That opinion, which has been superseded by the Texas Supreme Court's subsequent decision in the same case, referenced Section 171 in affirming the application of the same state's law for damages as the underlying tort claim. *See id.* at 520–21. But the intermediate appellate court's opinion does not suggest that the law applicable to liability *necessarily* applies to punitive

6

damages. Even if it did, the Texas Supreme Court subsequently granted review and engaged in a separate choice-of-law analysis for liability and damages. *See Torrington Co. v. Stutzman*, 46 S.W.3d 829, 849 (Tex. 2000). The Texas Supreme Court's decision shows that Texas continues to apply the *Restatement (Second)* test on an issue-by-issue basis, including with regard to punitive damages.

## II. A full choice-of-law analysis must include German law.

Plaintiffs express surprise that Bayer has invoked German law and, accordingly, ask the Court to decline to consider the German contacts on the basis of Federal Rule of Civil Procedure 44.1, but that argument is wrong on both the facts and the law.

On the facts, Plaintiffs have long been on notice that German-law issues undergird this litigation. They named German entities as defendants, deposed German-based company witnesses, and engaged in months-long litigation over whether German privacy laws protected from production those German-based deponents' personnel files. *See generally* Doc. 3688. Rule 44.1 exists to prevent "unfair surprise." Fed. R. Civ. P. 44.1 Advisory Comm. Notes. Plaintiffs have no colorable argument that they have been "unfair[ly] surprised" by Bayer's invocation of German law as to punitive damages, and they have not asserted any prejudice.

But even on the law, Rule 44.1 does not require an earlier or different notice that German law may apply to some issues in the case. Plaintiffs appear to believe that foreign law must be asserted either in the answer or in some "separate notice" (Pls.' Br. at 19), but Rule 44.1 (and the committee note) requires only that notice be given in "a pleading or other writing" at a "reasonable" time. Indeed, because a "foreign law issue [sometimes] will not become evident until later in the lawsuit," the notice requirement may be satisfied by raising the issue in writing at "the stage of the case to which the issue of foreign law might apply." Rule 44.1 Advisory Comm. Notes; *see also APL Co. Pte. Ltd. v. UK Aerosols Ltd.*, 582 F.3d 947, 955–56 (9th Cir. 2009)

(notice was timely when raised at the time it became relevant, after summary judgment). Additionally, Bayer has provided sufficient evidence of German law. Rule 44.1 allows "the court [to] consider any relevant material or source" in determining foreign law. Bayer cited a U.S. Supreme Court decision (*Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008)), a Sixth Circuit decision from just last year (*Hefferan v. Ethicon Endo-Surgery, Inc.*, 828 F.3d 488 (6th Cir. 2016)), and a thorough review of German law as to punitive damages. Plaintiffs have tried to discount these decisions on the ground that *Exxon* was decided nine years ago and that *Hefferan*'s statement regarding German law is "dictum." Pls.' Br. at 19–24 n.34. But notably, Plaintiffs do not argue that any of those sources are actually incorrect, and although Plaintiffs apparently would prefer reference to a German statute or regulation, Rule 44.1 does not require it. Plaintiffs cite to a single article that recounts a European Court of Justice decision allowing punitive damages in *copyright cases under Polish law*, and in which the author speculates that the decision *might be extended* to German copyright law, but that article has no application here and hardly suggests that "Germany may accept punitive damages" in a case like this one. Pls.' Br. at 19–20, n.34.

**III.   The *Restatement (Second)* test establishes that New Jersey or German law governs the issue of punitive damages in both *Mingo* and *Henry*.**

Plaintiffs have focused their *Restatement (Second)* arguments on where they were prescribed Xarelto and experienced their bleeding events. But those are not the critical contacts for a punitive-damages choice-of-law analysis. Instead, the focus must be where the alleged misconduct occurred—here, Defendants' principal places of business. For Bayer, those contacts point toward application of New Jersey or German law.

**A.   There is no presumption in favor of place of injury in a punitive-damages choice-of-law analysis—the place of the alleged misconduct (*i.e.*, the location of a defendant's principal place of business) is the most important factor.**

Plaintiffs' choice-of-law analysis rests largely on their assertion that "the place of injury

should be given prominent weight in tort cases" (Pls.' Br. at 9), but that is not so with respect to punitive damages, and Plaintiffs' cases do not suggest otherwise. *See id.* at 9–10 & n.11–12 (citing only one punitive damages case and even that case, *In re NuvaRing Prods. Liab. Litig.*, 957 F. Supp. 2d 1110 (E.D. Mo. 2013), proves the point that "[t]he state in which the misconduct occurs is the contact that bears the most significance to the issue of punitive damages").

To be sure, *Restatement (Second)* Section 146 contains a rebuttable presumption in favor of applying the law of the place of injury *for liability* in personal-injury cases, but that presumption does not apply to damages issues, which are governed by Section 171. The placement of these sections within the *Restatement (Second)* make the distinction clear—Section 146 is one of several guidelines for "particular torts" (§§ 146–155), whereas Section 171 is part of a collection of "important issues" (§§ 156–174) applicable to all torts. Thus, Section 171 governs choice-of-law for damages in all tort actions. Moreover, unlike other sections of the *Restatement (Second)* that expressly state that "the applicable law will usually be the local law of the state where the injury occurred,"[2] Section 171 includes no such presumption. But even if a presumption applied, it is rebuttable and must yield where "some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties." *Restatement (Second)* § 146; *see, e.g.*, *Zurich Am. Ins. Co. v. Goodwin*, 920 So.2d 427, 436 (Miss. 2006) ("[T]he fact that a cause of action arose in Mississippi and that Mississippians are involved does not in itself generate an interest in Mississippi that is superior to that of another state." (citing cases)); *Gutierrez v. Collins*, 583 S.W.2d 312 (Tex. 1979) (adopting *Restatement (Second)* in a personal-injury case and applying another state's law); *see also Gann v. Fruehauf Corp.*, 52 F.3d 1320, 1324–25 (5th Cir. 1995) (noting that under Mississippi choice-of-law, "the place of injury is not the sole

---

[2] *See, e.g.*, *Restatement (Second)* §§ 156, 157, 158, 159, 160, 162, 164, 165, 166, 169, 172.

9

determinative factor").

As explained in the opening brief (at 7–10), the place of injury is far less important in a punitive-damages assessment as compared with the place of the alleged misconduct (*i.e.*, the defendant's principal place of business). Plaintiffs failed to address all but one of the decisions, including—most tellingly—the recent decision in the *Testosterone Replacement* MDL, where the court found that, due to the goals served by punitive damages, the presumption in favor of the place of injury does not apply. *See* 2017 WL 1836435, at *21–22. Plaintiffs' attempt to distinguish Judge Vance's decision in *In re Educational Testing Services* does not undermine its persuasive value. There, the court was applying Ohio's choice-of-law analysis, but Ohio, like Mississippi and Texas, has adopted the *Restatement (Second)*. *See* 517 F. Supp. 2d at 852. Without referencing the underlying contractual right, Judge Vance pointed to the policy objectives of punitive damages to explain why the location of the alleged misconduct (*i.e.*, the defendant's principal place of business) was most important. *See id.* at 852. Judge Vance's reasoning in *Educational Testing Services* is persuasive and applicable here.

### B. New Jersey and Germany have the most significant relationship to Plaintiffs' punitive-damages demand against Bayer.

#### 1. The alleged misconduct occurred in New Jersey and/or Germany, where the Bayer Defendants are based.

Plaintiffs do not dispute that the Bayer Defendants are based in New Jersey and Germany, but try to make that a "neutral" factor on the view that a plaintiff's and defendant's home states are due equal weight in a punitive-damages choice-of-law analysis. Pls.' Br. at 18. Not so. Under the *Restatement (Second)*, "[s]ome contacts are more important than others because they implicate state policies underlying the particular substantive issue." *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984). And for punitive damages, the defendant's domicile has "a stronger

10

policy interest in whether punitive damages are available than the state in which the plaintiff's injury occurred." *In re Testosterone Replacement Therapy*, 2017 WL 1836435, at *21–22.

Bayer demonstrated that any alleged injury-causing conduct would have occurred, if at all, at those New Jersey and German headquarters, where any decisions concerning Xarelto were made. *See* Opening Br. at 11–12 & Exhs. 1 & 2 at ¶¶ 5–7. Plaintiffs do not dispute this. Instead, they allege that injury-causing conduct also occurred, or could have also occurred, in Pennsylvania, Texas, Indiana, Delaware, and Puerto Rico. *See* Pls.' Br. at 13, 16. Plaintiffs have not provided competent evidence that any such alleged conduct occurred anywhere other than New Jersey or Germany, and their assertion that this factor is "factually pregnant" and precludes summary judgment is simply unsupported.

*Pennsylvania.* Plaintiffs provide no evidence of any alleged injury-causing conduct that occurred in Pennsylvania. They note only that Bayer Corp.—a non-litigating-defendant that was voluntarily dismissed as a defendant before the first two bellwether trials—was based in Pennsylvania when its pharmaceutical division began early development of Xarelto. *See* Pls.' Br. at 15–16.[3] But Bayer Corp. was not involved in the "research and testing of Xarelto" and transferred its pharmaceuticals business to the predecessor of BHCP in January 2003 and has since then been a non-operating holding company (now based in New Jersey). *See* Doc. 6758, Exh. 1 & 2 ¶¶ 3(d), 5, 10(a). Plaintiffs' other alleged "connection" to Pennsylvania is that Janssen and Bayer "agreed that the post-approval pharmacovigilance of Xarelto" would occur there. Pls.' Br. at 16. That is a significant leap from the record documents. Plaintiffs do not assert that any such pharmacovigilance activities *actually* occurred in Pennsylvania. Instead, they cite only to a list of

---

[3] Plaintiffs do not explain why the Court should consider the conduct of a non-litigating defendant, especially a non-operating holding company whose pharmaceutical divisions were transferred in 2003. Doc. 6758, Exhs. 1 & 2 at ¶ 5.

11

Janssen contacts, one of which has a Pennsylvania address (*see* Pls.' Br. Ex. 6, at -902), but that does not establish that pharmacovigilance would have occurred (much less did occur) in Pennsylvania. The referenced agreement itself acknowledges that Bayer would be responsible for pharmacovigilance in Europe, the Bayer contacts listed are all located in Germany, and the primary Janssen address is in New Jersey.

*Texas.* To suggest that the alleged misconduct occurred in Texas, Plaintiffs largely rely on contacts that are unrelated to punitive damages. *See* Pls.' Br. at 13. They repeatedly point to the place of injury, for example, but that is a separate, less important factor. *See, e.g.*, *Sloss v. Gen. Motors Corp.*, No. Civ.A.3:00CV1036, 2001 WL 1081303, at *4 (N.D. Tex. Sept. 12, 2001).

Plaintiffs also state that "Mr. Henry's physician received warnings about Xarelto in Texas, and was detailed by the Defendants' sales force in Texas" (Pls.' Br. at 13), but Plaintiffs' prescribing physicians both testified that they do not rely on detail representatives to make their prescribing decisions. *See* Jordon (*Mingo*) Dep. (Exh. 1) at 221:17–223:10 ("[A]t the end of the day, the drug that is prescribed, it's [my] decision."); McCain (*Henry*) Dep. (Exh. 2) at 33:6–34:10 ("I make [the prescribing] decision based on my knowledge of the medical literature."). And Dr. Jordon could not recall the names of representatives or any specific meetings. *See* Jordon Dep. at 19:17–21:10. All of that evidence points *away from* punitive damages. Plaintiffs also make the incredible leap that, because Bayer acknowledged that BHCP at one time promoted Xarelto to a limited number of hospitals and community-based cardiovascular physicians during a brief period, there is "room for the reasonable inference that such efforts took place in Texas (or Mississippi)." Pls.' Br. at 15–16. That is not an inference—it is speculation unsupported by any evidence. And in any event, Plaintiffs' assertion supports only the notion that Bayer marketed Xarelto in

Mississippi and Texas generally, not specifically to Plaintiffs' physicians in these particular cases.[4]

***Indiana, Delaware, and Puerto Rico.*** Plaintiffs do not explain what conduct Bayer would have undertaken in these states of incorporation (the sole relevant contacts) or how Bayer is connected to Puerto Rico. Place of incorporation is less important than principal place of business. *See Restatement (Second)* § 145 cmt. e.

### 2. The relationship between Bayer and Plaintiffs, if any, is centered in New Jersey or Germany.

In a product-liability case, the relationship between the parties for a punitive-damages choice-of-law assessment is centered on where the product was designed and manufactured. *See Black v. Toys R Us—Del., Inc.*, Civ. Action No. 4:08-cv-3315, 2010 WL 4702344, at *15 (S.D. Tex. Nov. 10, 2010) (citing *Perry v. Aggregate Plant Prods. Co.*, 786 S.W.2d 21, 25 (Tex. Ct. App. 1990)). Here, that would be Germany or New Jersey. Plaintiffs say that the relationship centers on where the medication was prescribed and ingested (*see* Pls.' Br. at 17 & n.32), but they have not cited any Texas or Mississippi cases. Most of their cases instead apply Pennsylvania's "flexible" choice-of-law test, which is not a straightforward application of the *Restatement (Second)*. Their remaining case, *In re Nuvaring Litig.*, No. BER-L-3081-09, slip op. at 12–13 (N.J. Super., Law Div. May 3, 2013), is an outlier. *See* Part III.C.4 *infra*. In any event, given the limited relationship between the parties, this factor is entitled to little weight.

### C. The Section 6 policy factors also point in favor of applying New Jersey or German law.

Plaintiffs spend limited time on the Section 6 policy factors, but as Bayer has explained

---

[4] In a footnote, Plaintiffs assert that the inference is especially reasonable because BHCP paid personal property taxes to tax jurisdictions in Mississippi for inventory. Pls.' Br. at 16, n.29. Plaintiffs do not explain why the location of inventory in Mississippi leads to the inference that the Bayer Defendants were marketing Xarelto to the physicians at issue here. Further, contrary to Plaintiffs' claim that "no such similar tax information [wa]s provided regarding Texas," *id.*, the separate declaration provided for *Henry* states that "BHCP did not pay any property taxes to tax jurisdictions in Texas" during the relevant time period. Doc. 6758, Exh. 2 at ¶ 10(c).

(Opening Br. at 13–15), those factors favor applying New Jersey or German law.

  **1.** Plaintiffs ask the Court to decline to apply New Jersey law because it protects "Big Pharma profit" and to instead apply Texas law because it better protects "an individual's access to justice" (Pls.' Br. at 12), but the Court cannot cast aside valid policy determinations. *See Restatement (Second)* § 6 cmt. d, § 145 cmt. c. In any event, New Jersey law is not so one sided. The statute at issue did not abolish strict products liability. *See Zaza v. Marquess & Nell, Inc.*, 675 A.2d 620, 627 (N.J. 1996). Instead, the legislature simply elected to exempt manufacturers from punitive damages when their products are FDA approved "to ensure that manufacturers are not made guarantors against remotely possible, but not scientifically-verifiable, side-effects of prescription drugs, a result that could have a 'significant anti-utilitarian effect.'" *Perez v. Wyeth Labs. Inc.*, 734 A.2d 1245, 1259 (N.J. 1999).

  **2.** Plaintiffs also suggest that foreign law should never apply "in a personal injury lawsuit here in the United States" (Pls.' Br. at 16), but that runs contrary to the *Restatement (Second)*'s instruction that foreign law is entitled to respect, § 6, cmt. d, and to decisions where Texas courts, in particular, have applied foreign law where, like here, the foreign country's interests are strong. *See* Opening Br. at 17.

  **3.** Plaintiffs' invocation of personal-jurisdiction jurisprudence in an effort to promote Mississippi's and Texas's interests is unavailing. *See* Pls.' Br. at 4. Personal jurisdiction decisions do not inform a choice-of-law analysis—personal jurisdiction requires only "minimum contacts" to subject the defendant to litigation in the state, whereas choice-of-law "looks to where the contacts are maximized." *McDaniel v. Ritter*, 556 So.2d 303, 310 (Miss. 1989) (internal quotation marks omitted); *see also, e.g.*, *Zurich Am. Ins.*, 920 So. 2d at 432 ("Choice of law analysis is entirely different from that of minimum contacts.").

**4.** Plaintiffs finally suggest that a New Jersey court would not apply its own punitive damages law to these out-of-state plaintiffs (*see* Pls.' Br. at 4), but that is simply incorrect, as Judge Vance's decision in *Educational Testing Services* decisively shows. *See* 517 F. Supp. 2d at 852 (applying New Jersey punitive-damages law in cases brought by non-New Jersey plaintiffs).[5] Plaintiffs' two citations are distinguishable. One of them, *Yocham*, did not involve punitive damages. The other, *In re Nuvaring Litig.*, No. BER-L-3081-09, slip op. at 12–13 (N.J. Super., Law Div. May 3, 2013), is a minority position within New Jersey. Numerous other New Jersey courts have applied New Jersey punitive-damages law in cases with out-of-state plaintiffs. *See, e.g.*, *Irby v. Novartis Pharms. Corp.*, Nos. MID-L-1815-08, 278, 2011 WL 5835414, at *8 (N.J. Super. Ct. Nov. 18, 2011); *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 66–68 (D.N.J. 2009); *Meng v. Novartis Pharms. Corp.*, Nos. L-7670-07MT, L-6027-08MT, 278, 2009 WL 4623715, at *6 (N.J. Super. Ct. Nov. 23, 2009).

\* \* \*

The *Restatement (Second)* most-significant-relationship test points to application of New Jersey or German law to Plaintiffs' punitive-damages demand against Bayer in this case.

## CONCLUSION

For these reasons, the Court should grant Bayer's motion and apply New Jersey or German law to the punitive-damages demands against Bayer in the *Mingo* and *Henry* cases. Because punitive damages are unavailable under either state's law, the Court also should grant Bayer summary judgment on Plaintiffs' punitive-damages demand.

---

[5] *See also, e.g.*, *Zimmerman v. Novartis Pharm. Corp.*, 889 F. Supp. 2d 757 (D. Md. 2012) (holding under *Restatement (Second)* analysis that New Jersey punitive-damages law applied in pharmaceutical case brought by Maryland citizen); *Talley v. Novartis Pharm. Corp.*, No. 08-cv-361, 2011 WL 2559974 (W.D.N.C. June 28, 2011) (same, applying New Jersey punitive-damages law in pharmaceutical case brought by North Carolina citizen because "the corporate decisions at issue regarding labeling and packaging occurred in New Jersey").

Respectfully submitted,

MITCHELL, WILLIAMS, SELIG, GATES & WOODYARD, P.L.L.C.

By: */s/ Lyn P. Pruitt*
Lyn P. Pruitt
Adria W. Conklin
Benjamin D. Brenner
Mary Catherine Way
MITCHELL, WILLIAMS, SELIG, GATES & WOODYARD, P.L.L.C.
425 West Capitol Ave., Suite 1800
Little Rock, AR  72201
Telephone: (501) 688-8800
lpruitt@mwlaw.com
aconklin@mwlaw.com
bbrenner@mwlaw.com
mway@mwlaw.com


WATKINS & EAGER PLLC

By: */s/ Walter T. Johnson*
Walter T. Johnson
WATKINS & EAGER PLLC
The Emporium Building
400 East Capitol Street
Jackson, Mississippi 39201
Telephone: (601) 965-1846
wjohnson@watkinseager.com

ARNOLD & PORTER KAYE SCHOLER LLP

By: */s/ William Hoffman*
William Hoffman
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
william.hoffman@apks.com

Andrew K. Solow
Steven Glickstein

        ARNOLD & PORTER KAYE SCHOLER LLP
        250 West 55th Street
        New York, New York 10019-9710
        Telephone: (212) 836-8485
        andrew.solow@apks.com
        steven.glickstein@apks.com


        BRADLEY ARANT BOULT CUMMINGS LLP

        By: */s/ Lindsey C Boney IV*
        Kevin C. Newsom
        Lindsey C Boney IV
        BRADLEY ARANT BOULT CUMMINGS LLP
        One Federal Place, 1819 Fifth Avenue North
        Birmingham, AL 35203-2119
        Telephone: (205) 521-8803
        knewsom@bradley.com


        CHAFFE MCCALL L.L.P.

        By: */s/ John F. Olinde*
        John F. Olinde
        CHAFFE MCCALL L.L.P.
        1100 Poydras Street, Suite 2300
        New Orleans, LA 70163
        Telephone: (504) 585-7241
        olinde@chaffe.com

        *Attorneys for Bayer HealthCare*
        *Pharmaceuticals Inc. and Bayer Pharma AG*

**CERTIFICATE OF SERVICE**

  The undersigned hereby certifies that on the 17th day of July, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs by operation of the court's electronic filing system.

                */s/  John F. Olinde*