UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE ELDON E. FALLON |
| Dora Mingo v. Janssen Research & Development, LLC et al.<br>Case No. 2:15-cv-03469 | MAGISTRATE NORTH |

### DEFENDANTS' REPLY IN SUPPORT OF THEIR JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT BASED ON THE LEARNED-INTERMEDIARY DOCTRINE

Mississippi law requires a plaintiff to prove that had the defendant provided a different warning, the plaintiff's doctor would have changed his prescribing decision. Unable to satisfy that standard, Plaintiffs invite the Court to apply Louisiana law instead. Put simply, Louisiana law is the wrong law and applying it in this case produces the wrong result. Plaintiffs' failure-to-warn claim fails as a matter of Mississippi law because there is no evidence that had Ms. Mingo's prescribing physician, Dr. Renie Jordon, known about Ms. Mingo's prothrombin time (PT) and the theory that it could be used to predict risk, he would have stopped Ms. Mingo's Xarelto prescription and prescribed her a different medicine. Nor do Plaintiffs have evidence that the absence of a warning or instruction regarding the use of the PT test in patients on Xarelto proximately caused Ms. Mingo's injury. Plaintiffs have asked the Court to take an "elastic" view of Mississippi law and allow their failure-to-warn claim to proceed, but under controlling Mississippi law, the absence of such evidence is dispositive. Defendants are due summary judgment.

1

**ARGUMENT**

I.      **Under settled Mississippi law, the doctor's prescribing decision is the dispositive fact.**

Everyone agrees that Mississippi substantive law embodied in the Mississippi Products Liability Act (MPLA) defines the elements of Plaintiffs' tort claims. *See, e.g.*, Pls.' Opp. to Punitive Damages Mot. (Doc. 7033), at 6 ("Mississippi substantive law applies to Ms. Mingo's tort claims."). Under Mississippi law, where the warning advises the healthcare provider of the risk which befell the plaintiff, as here, it is adequate as a matter of law. *See Averhart v. Ortho-McNeil Pharm., Inc.*, No. 3:09 OE 40028, 2014 WL 1224542, at *5 (N.D. Ohio Mar. 24, 2014) (applying Mississippi law). As the MDL Judge, Hon. David Katz, wrote in that case:

> Since NP Dedeaux testified she understood that Ortho Evra® created a risk of the very thing that happened to Ms. Averhart, Defendants have shown they warned the learned intermediary (through whatever means) adequately. *See* [*Wyeth Labs., Inc. v.*] *Fortenberry*, 530 So. 2d [688,] 693 [(Miss. 1988)] (finding a warning adequate as a matter of law where it warned of the potential for the condition that befell the plaintiff); *Cather v. Catheter Tech. Corp.*, 753 F. Supp. 634, 640 (S.D. Miss. 1991) ("A warning may be held adequate as a matter of law where the adverse effect that was ultimately visited upon the patient was one that the manufacturer specifically warned against."); *cf*. Miss. Code § 11-1-63(d) ("[T]he manufacturer . . . shall not be liable if the claimant . . . 'had knowledge of a condition of the product that was inconsistent with his safety.'"). Ms. Averhart points to no evidence to the contrary.

Xarelto's label repeatedly warns of the risk of bleeding—*more than 100 times*, to be precise. Unable to get around this, and to point to any Mississippi precedent to support their "failure to instruct" theory, Plaintiffs urge the Court to apply *Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254 (5th Cir. 2002) or the Court's own reasoning from the first two bellwether trials, all of which are based on Louisiana law. Specifically, Plaintiffs ask the Court to look past Dr. Jordon's prescribing decision, which is where Mississippi law directs the Court's focus, and to look instead to how an instruction regarding PT testing might have led Dr. Jordon to use the test to assess Ms. Mingo's risk of bleeding. *See* Pls.' Opp. (Doc. 7038), at 2–3. Plaintiffs have not cited a single Mississippi case in support.

The Court must apply Mississippi's learned intermediary doctrine, not Louisiana's. As Defendants explained at length in their primary brief, that doctrine requires Plaintiffs to prove that had Defendants provided a different warning or instruction, Dr. Jordon's decision *to prescribe* Xarelto would have changed. *Smith v. Johnson & Johnson, Inc.*, 483 F. App'x 909, 914 (5th Cir. 2012); *Thomas v. Hoffman-LaRoche, Inc.*, 949 F.2d 806, 812 (5th Cir. 1992); *Cross v. Forest Labs.*, 102 F. Supp. 3d 896, 903 (N.D. Miss. 2015); *Estes v. Lanx, Inc.*, No. 1:14CV052-SA-DAS, 2015 WL 9462964, at *3 (N.D. Miss. Dec. 23, 2015); *Deese v. Immunex Corp.*, No. 3:11-CV-373-DPJ-FKB, 2012 WL 463722, at *5 (S.D. Miss. Feb. 13, 2012); *Little v. Smith & Nephew, Inc.*, No. 1:15-CV-00028-GHD, 2015 WL 3651769, at *9 (N.D. Miss. June 11, 2015); *Windham v. Wyeth Labs., Inc.*, 786 F. Supp. 607, 612 (S.D. Miss. 1992).

Such proof is necessary to establish causation. If no evidence shows that Plaintiffs' proposed instruction would have prevented Dr. Jordon from prescribing Xarelto, Plaintiffs' failure-to-warn claim fails as a matter of Mississippi law.

**II.     There is no evidence that Dr. Jordon would have changed his prescribing decision if he had received a warning or instruction regarding a PT test.**

There is no evidence that Dr. Jordon would have either (a) not prescribed Xarelto to Ms. Mingo in the first instance; *or* (b) changed his prescribing decision after-the-fact—if he had received instructions regarding a PT test, administered the test, and then determined that Ms. Mingo was over-anticoagulated. The absence of such evidence is dispositive.

While Dr. Jordon answered a series of leading hypothetical questions at his deposition about what he would have "liked to have known" when he prescribed Xarelto to Ms. Mingo, there is no evidence that Dr. Jordon would have changed his prescribing decision for her, either *before or after* she began taking Xarelto, in response to an instruction regarding a PT test. In fact, the available testimony is directly to the contrary: Dr. Jordon testified that he "would still prescribe

Xarelto for Ms. Mingo . . . knowing all" that he knows today.  Jordon Dep. 231:20–232:6 (Doc. 7038, Exh. 3); *see also id*. 209:22–210:21.  Dr. Jordon knows:

- There is some research that suggests a correlation between rivaroxaban levels and PT.  *Id*. 91:8–92:12, 105:4–7.

- There is some research that suggests "the effect on PT by Xarelto can be monitored."  *Id*. 96:24–97:15, 105:8–16.

- Ms. Mingo had a PT of 23.6 one day after her first dose of Xarelto.  *Id*. 104:2–11.

Despite his awareness of these facts—*i.e.*, the facts Plaintiffs contend should have been included in Xarelto's warnings/instructions—Dr. Jordon does not think that Ms. Mingo's PT is a reason to have prescribed a different medicine.  *See id*. 209:14–25; 121:9–15.  This is, in part, because Dr. Jordon does not view Ms. Mingo's PT value as showing that she was over-anticoagulated, as Plaintiffs claim.  Rather, Ms. Mingo's 23.6 value is in the middle of the range defined in the medical literature on which Plaintiffs base this case.  *See id*. 196:6–197:9.  Consequently, even if Dr. Jordon had been aware of this value at the time it was recorded, and even had Xarelto's label contained Plaintiffs' proposed language, Dr. Jordon would have kept Ms. Mingo on Xarelto based on his understanding of the relative risks.  Dr. Jordon testified unequivocally, even after seeing Plaintiffs' best evidence and hearing Plaintiffs' best argument, that nothing would have changed his "view" about his prescribing decision at any point in Ms. Mingo's treatment.

### III. Plaintiffs' attempts to bend Mississippi law and the facts do not save the warnings-or-instructions claim.

Plaintiffs attempt two sleights of hand to get around Mississippi's learned intermediary doctrine: (1) they ask the Court to create a standalone "failure to instruct" claim that would have an analysis distinct from a "failure to warn" claim and; and (2) they purportedly rely on "objective" evidence.  Neither attempt is availing.

4

### A. The Court should not create a standalone "failure to instruct" claim with its own distinct analysis.

Faced with a crush of Mississippi precedent calling for dismissal, Plaintiffs argue that Mississippi courts failed to appreciate how "elastic" Mississippi law is, and how Mississippi law can be expanded to encompass a "failure to instruct" claim that "requires a different analysis than a failure to warn claim." Doc. 7038 at 3, 8, 9. But Plaintiffs' argument asks this Court to ignore its *Erie*-imposed duty "not [to] expand state law beyond its presently existing boundaries." *Barfield v. Madison Cty.*, 212 F.3d 269, 272 (5th Cir. 2000) (quoting *Rubinstein v. Collins*, 20 F.3d 160, 172 (5th Cir. 1994) (citing *Johnson v. Sawyer*, 47 F.3d 716, 729 (5th Cir. 1995))). Like the *Cross* court, this Court must decline Plaintiffs' invitation to create a new type of claim that diverts from Mississippi law's laser-like focus on the physician's prescribing decision. *See Cross*, 102 F. Supp. 3d at 903 ("[T]his court has been unable to find, any authority that would extend the meaning of 'altering the doctor's conduct' beyond the decision to prescribe or not to prescribe.").

Plaintiffs' argument is based on a false distinction between "failure to warn" and "failure to instruct" that the MPLA simply does not support. Rather than defining a "failure to instruct" claim as something separate from a "failure to warn" claim, the MPLA repeatedly refers to "warnings or instructions" as a single term. *See* Miss. Code Ann. §§ 11-1-63(a)(i)(2), (c)(i), (c)(ii). In fact, the term "adequate warning or instruction" is defined in the statute just once:

> An adequate product warning or instruction is one that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that communicates sufficient information on the dangers and safe use of the [prescription drug] . . . taking into account the characteristics of, and the ordinary knowledge common to, a physician or other licensed professional who prescribes the drug . . . .

Miss. Code. Ann. § 11-1-63(c)(ii).

Hence, an adequate "warning" is, by definition, the same thing as an adequate "instruction" under the MPLA. Further, the Mississippi Model Jury Instructions published by the Mississippi

5

Judicial College have a single instruction titled "Failure to warn," which charges jurors to consider the adequacy of "warnings or instructions" together. *See* MMJI § 16:4 (Nov. 2016 Update) (Exh. 1). Contrary to Plaintiffs' argument, there cannot be distinct analyses for warnings and instructions; there can only be one analysis.[1] In the prescription drug context, that analysis focuses on the prescribing physician's prescribing decision.

The state and federal courts applying the MPLA's learned intermediary doctrine to the prescribing decision have not been ignorant of the MPLA's history or text; indeed, those courts consist of judges steeped in Mississippi law and practice. They have, like the Mississippi Model Jury Instructions, used the term "failure to warn" as shorthand for any claim based on product warnings *or instructions*. And some of the courts—while applying the rule that the physician's prescribing decision is the decision that matters—have specifically rejected the idea that a "failure to instruct" requires a different analysis. *See Cross*, 102 F. Supp. 3d at 903 (noting that "according to the plaintiffs, an adequate warning would have instructed how to safely use the product"); *Deese*, 2012 WL 463722, at *5 (noting that that plaintiff alleged that defendant's warnings and instructions prevented "his physician from mak[ing] an informed decision as to the relative safety and/or efficacy of . . . Enbrel therapy" (internal quotation marks omitted)); *Little*, 2015 WL 3651769, at *9 (noting that "Plaintiff alleges the screw was defective because it was not accompanied by adequate instructions").

### B. Plaintiffs' reliance on "objective" evidence does not establish causation or save their claim.

Although a plaintiff may introduce "objective evidence of how a reasonable physician would have responded to an adequate warning," the totality of evidence still must demonstrate a

---

[1] Despite the unanimity of judicial opinions on this score, the Mississippi Legislature has taken no action to amend the MPLA to create the distinction for which Plaintiff contends. Nothing indicates legislative dissatisfaction with these prevailing judicial interpretations.

"reasonable likelihood that an adequate warning would have prevented the plaintiff from receiving the drug." *Thomas*, 949 F.2d at 812.  Put another way, the evidence—no matter its form—must ultimately show that an additional warning or instruction "'would have convinced the treating physician not to prescribe the product *for the plaintiff*.'"  *Cross*, 102 F. Supp. 3d at 902 (quoting *Janssen Pharmaceutica, Inc. v. Bailey*, 878 So. 2d 31, 58 (Miss. 2004) (emphasis added)).

In *Windham v. Wyeth Labs., Inc.*, 786 F. Supp. 607, 613 (S.D. Miss. 1992), the court granted summary judgment because the plaintiffs "failed to show that a more thorough or more explicit warning about the possibility of adverse reactions such as extrapyramidal symptoms would have altered [the physician's] decision to prescribe Phenergan to [the patient]."  Importantly, the court further reasoned that "[e]ven if it were unreasonable for [the physician] to prescribe Phenergan to [the patient] under the circumstances, that question relates to [the physician's] potential liability, not to [the drug manufacturer's liability]."  *Id*.  While objective evidence may have its place, it does not overcome a prescribing physician's unequivocal testimony that he would not change his prescribing decision in the face of a different warning or instruction.

In fact, this Court has already recognized that objective evidence cannot be used to overcome the testimony of the prescribing physician.  At the *Orr* trial, Plaintiffs claimed that, under the Fifth Circuit's decision in *Thomas*—which applied Mississippi law—objective evidence could be used to establish causation.  The Court disagreed, explaining that "the cases, when you look at them closely, they indicate to me in any event that the—that that standard of objective evidence is—is alive and well, but it's alive and well in a fact pattern where there is no treater or there is a treater who is—has forgotten or is absent or has not even expressed an opinion."  *Orr* Trial Tr. 2316:11–16; *id.* at 2304:15–2305:7 (concluding that objective evidence can be considered "when a treater is not available, [or] when the treater doesn't know" and refusing to give objective

7

evidence instruction because "in this case we have a treater; the treater's testified"). The Court should likewise reject "objective evidence" here in light of Dr. Jordon's testimony.[2]

But even if some overarching standard of objective reasonableness could, theoretically, defeat Dr. Jordon's unequivocal testimony, Plaintiffs do not cite to such a standard. Plaintiffs rely on the written report of their expert witness, Dr. Henry Rinder, to establish what an objectively reasonable physician would do. But Dr. Rinder's report does not purport to establish a standard of objective reasonableness, nor does it predict how all reasonable doctors would respond to a particular warning or instruction in all cases. Instead, the report merely identifies what Dr. Jordon "*could have*" done differently. Doc. 7038, Exh. 27 at 2, 6. Similarly, in his deposition Dr. Rinder testified that Dr. Jordon had "several options" that he "could have considered" in treating Ms. Mingo, but Dr. Rinder offered no criticisms of Dr. Jordon's clinical judgment regarding Ms. Mingo's anticoagulant treatment. Rinder Dep. (Feb. 7, 2017) (Exh. 2) 96:7–97:19; 114:24–115:12. In his generic deposition testimony, Dr. Rinder refused to set forth an overarching rule for what a "reasonable physician" has to do in all circumstances. Rinder Dep. (Dec. 14, 2016) (Exh. 3) 430:20–435:11. And Dr. Rinder has never predicted what Dr. Jordon would have done differently if faced with different warnings and instructions. Because Plaintiffs cannot prove that an adequate warning would have convinced Dr. Jordon not to prescribe Xarelto to Ms. Mingo, Defendants are entitled to judgment as a matter of law.

Dr. Jordon and thousands of other doctors have prescribed, and continue to prescribe,

---

[2] To hold otherwise would require courts "to take the rather curious action of ignoring what the treating physician says he would have done given a certain factual setting for no other reason than the fact that he is not an 'objective' physician, *i.e.*, any physician other than the actual physician who diagnosed, treated, and prescribed medication to the patient." *Woulfe v. Eli Lilly & Co.*, 965 F. Supp. 1478, 1484 (E.D. Okla. 1997). This standard, the *Woulfe* court explained, would improperly disregard what "the actual treating physician would have done." *Id.*; *see also Stafford v. Wyeth*, 411 F. Supp. 2d 1318, 1322 (W.D. Okla. 2006) ("plaintiff's argument regarding what a reasonable physician would do" was irrelevant where actual prescriber testified that he would have still prescribed the drug).

8

Xarelto without administering a PT test, consistent with the FDA-approved instructions for the product. Dr. Rinder may disagree, but his opinion is not, in his own view, an overarching standard of objective reasonableness, and does not demonstrate a reasonable likelihood that a different warning or instruction would have prevented Dr. Jordon from prescribing Xarelto for Ms. Mingo. Therefore, Plaintiffs' supposedly "objective" evidence fails to establish causation, just as her admittedly subjective evidence also fails.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Motion.

Respectfully submitted,

| | |
|---|---|
| BARRASSO USDIN KUPPERMAN FREEMAN & SARVER, L.L.C. | MITCHELL, WILLIAMS, SELIG, GATES & WOODYARD, P.L.L.C. |
| BY: /s/ *Richard E. Sarver* <br> Richard E. Sarver <br> Celeste R. Coco-Ewing <br> BARRASSO USDIN KUPPERMAN FREEMAN & SARVER, L.L.C. <br> 909 Poydras Street, 24th Floor <br> New Orleans, Louisiana 70112 <br> Telephone: (504) 589-9700 <br> rsarver@barrassousdin.com <br> ccoco-ewing@barrassousdin.com | By: */s/ Lyn P. Pruitt* <br> Lyn P. Pruitt <br> Adria W. Conklin <br> Benjamin D. Brenner <br> Mary Catherine Way <br> MITCHELL, WILLIAMS, SELIG, GATES & WOODYARD, P.L.L.C. <br> 425 West Capitol Ave., Suite 1800 <br> Little Rock, AR 72201 <br> Telephone: (501) 688-8800 <br> lpruitt@mwlaw.com <br> aconklin@mwlaw.com |
| DRINKER BIDDLE & REATH LLP | bbrenner@mwlaw.com <br> mway@mwlaw.com |
| By: /s/ *Susan M. Sharko* <br> Susan M. Sharko <br> DRINKER BIDDLE & REATH LLP <br> 600 Campus Drive <br> Florham Park, NJ 07932-1047 <br> Telephone: (973) 549-7000 <br> susan.sharko@dbr.com | WATKINS & EAGER PLLC <br><br> By: */s/ Walter T. Johnson* <br> Walter T. Johnson <br> WATKINS & EAGER PLLC <br> The Emporium Building |
| Rodney M. Hudson <br> DRINKER BIDDLE & REATH LLP <br> 50 Fremont Street, 20th Floor | 400 East Capitol Street <br> Jackson, Mississippi 39201 <br> Telephone: (601) 965-1846 |

San Francisco, CA 94105-2235  
Telephone: (415) 591-7500  
Rodney.hudson@dbr.com  

Chanda A. Miller  
DRINKER BIDDLE & REATH LLP  
One Logan Square, Suite 2000  
Philadelphia, PA 19103-6996  
Telephone: (215) 988-2500  
Chanda.Miller@dbr.com  

IRWIN FRITCHIE URQUHART & MOORE LLC  

By: /s/ *James B. Irwin*  
James B. Irwin  
Kim E. Moore  
IRWIN FRITCHIE URQUHART & MOORE LLC  
400 Poydras Street, Suite 2700  
New Orleans, LA 70130  
Telephone: (504) 310-2100  
jirwin@irwinllc.com  

*Attorneys for Defendants Janssen Pharmaceuticals, Inc. and Janssen Research & Development, LLC*

wjohnson@watkinseager.com  

ARNOLD & PORTER KAYE SCHOLER LLP  

By: /s/ *William Hoffman*  
William Hoffman  
ARNOLD & PORTER KAYE SCHOLER LLP  
601 Massachusetts Ave., NW  
Washington, D.C. 20001  
Telephone: (202) 942-5000  
william.hoffman@apks.com  

Andrew K. Solow  
Steven Glickstein  
ARNOLD & PORTER KAYE SCHOLER LLP  
250 West 55th Street  
New York, New York 10019-9710  
Telephone: (212) 836-8485  
andrew.solow@apks.com  
steven.glickstein@apks.com  

BRADLEY ARANT BOULT CUMMINGS LLP  

By: /s/ *Lindsey C Boney IV*  
Kevin C. Newsom  
Lindsey C Boney IV  
BRADLEY ARANT BOULT CUMMINGS LLP  
One Federal Place, 1819 Fifth Avenue North  
Birmingham, AL 35203-2119  
Telephone: (205) 521-8803  
knewsom@bradley.com  


CHAFFE MCCALL L.L.P.  

By: /s/ *John F. Olinde*  
John F. Olinde  
CHAFFE MCCALL L.L.P.  
1100 Poydras Street, Suite 2300  
New Orleans, LA 70163  
Telephone: (504) 585-7241  
olinde@chaffe.com  

*Attorneys for Bayer HealthCare Pharmaceuticals Inc. and Bayer Pharma AG*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 17th day of July, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs by operation of the court's electronic filing system.

　　　　　　　　　　　　　　　　*/s/     John F. Olinde*