# EXHIBIT 2

Protected - Subject to Further Protective Review

```
 1              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF LOUISIANA
 2

     *****************************
 3

     IN RE:  XARELTO              MDL No. 2592
 4   (RIVAROXABAN)                Section L
     PRODUCTS LIABILITY            Judge Eldon Fallon
 5   LITIGATION                    Mag. Judge North
 6   THIS DOCUMENT RELATES TO:
     DORA MINGO
 7   Case No. 2:15-CV-03469
 8   *****************************
 9
     PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW
10
11
12
13    VIDEOTAPED DEPOSITION OF HENRY M. RINDER, MD
14
15              Tuesday, February 7, 2016
16                    8:05 a.m.
17
18       Held At:
19          Douglas & London, PC
20          50 Maiden Lane
21          New York, New York
22
23
24   REPORTED BY:
25   Maureen O'Connor Pollard, RMR
```

Protected - Subject to Further Protective Review

```
 1    APPEARANCES:

 2

 3    FOR THE PLAINTIFF:

 4         BY:   ROGER C. DENTON, ESQ.

 5               SCHLICHTER BOGARD & DENTON, LLP

 6               100 South Fourth Street, Suite 1200

 7               St. Louis, Missouri 63102

 8               314-621-6115

 9               rdenton@uselaws.com

10                    -and-

11         JOSEPH G. VANZANDT, ESQ.

12               BEASLEY ALLEN CROW METHVIN

13               PORTIS & MILES, PC

14               218 Commerce Street

15               Montgomery, Alabama 36104

16               334-269-2343

17               joseph.vanzandt@beasleyallen.com

18

19

20

21

22

23

24

25
```

```
 1   APPEARANCES (Continued):

 2

 3   FOR THE BAYER DEFENDANTS:

 4        PAMELA J. YATES, ESQ.

 5             ARNOLD & PORTER KAYE SCHOLER LLP

 6             77 South Figueroa Street, 44th Floor

 7             Los Angeles, California 90017

 8             213-243-4178

 9             pamela.yates@apks.com

10                  -and-

11        ADRIA W. CONKLIN, ESQ.

12             MITCHELL WILLIAMS

13             425 West Capitol Ave., Suite 1800

14             Little Rock, Arkansas 72201

15             501-688-8861

16             aconklin@mwlaw.com

17

18

19

20

21

22

23

24

25
```

```
 1   APPEARANCES (Continued):

 2

 3   FOR THE JANSSEN DEFENDANTS:

 4        BY:  MARGARET HOFFMANN, ESQ.

 5             SCHWABE, WILLIAMSON & WYATT

 6             1211 SW 5th Ave., Suite 1900

 7             Portland, Oregon 97204

 8             503-222-9981

 9             mhoffmann@schwabe.com

10                 -and-

11        DARYL DALY, ESQ.

12             DRINKER BIDDLE & REATH LLP

13             600 Campus Drive

14             Florham Park, New Jersey 07932

15             973-549-7106

16             daryl.daly@dbr.com

17

18

19   Videographer:  Danny Ortega

20

21

22

23

24

25
```

1       prothrombin time, and especially with the
2       Neoplastin, was useful for monitoring Xarelto
3       activity and risk of bleeding, that they could
4       have utilized that information in assessing her
5       bleeding risk.
6       BY MS. HOFFMANN:
7            Q.   And then you go on to say that if they
8       had done the things you recommend and they'd
9       identified her as having an unnecessary high
10      risk of major bleeding risk, she could have been
11      titrated to a lower dose.
12               What lower dose of Xarelto would you
13      say she should have been titrated to?
14               MR. DENTON:  I object to the form.
15      The sentence continues.
16           A.   Well, just to be clear, I'm giving --
17      I'm saying that they have several options.  One
18      is that they could have considered titrating her
19      to a lower dose.
20      BY MS. HOFFMANN:
21           Q.   And that's the option I'm asking you
22      about.
23           A.   Let me finish.  Let me finish.  Let me
24      just finish.
25               Or if that was not an option, or if

Protected - Subject to Further Protective Review

1    that was felt to be suboptimal, they could have
2    discontinued Xarelto and switched her to an
3    anticoagulant with a lesser risk of bleeding.
4              The aspect of -- I'll go back to
5    answer the first part of that question.  They
6    could have considered titrating her to a lower
7    dose.  That's within their purview.  They do not
8    have to follow FDA guidelines.  They can choose
9    dosing that they feel is safer for the patient
10   even though it is not necessarily following
11   specific FDA guidelines.
12              I don't know how they would do that.
13   They could try to break the pills in half, they
14   could give -- which I don't know that that's
15   possible.  They could give a cumulative dose
16   over time that was less than 30 per day, or if
17   that's not possible they could then switch, they
18   could then decide that they can't do that with
19   Xarelto and switch to a different anticoagulant.
20        Q.   You've used the disjunctive "or" in
21   setting forth these options, correct?
22        A.   That is correct, it says "or."
23        Q.   And so you're offering two options,
24   and the first option would be to titrate the
25   Xarelto to a lower dose.  That's the first

1      with Ms. Mingo, did you, in fact, think about
2      that as you were reviewing her medical records
3      and preparing to be an expert in this case?
4              MR. DENTON:  Object to the form.
5      Asked and answered.
6          A.  So I think when I'm involved in a
7      consultation on a patient, I'm going to be
8      seeing that patient, listening to them, getting
9      a feel for their personality, what they are
10     comfortable with, as well as, of course, their
11     entire medical history and their findings.  So I
12     would -- I use that as a significant part of my
13     evaluation of a patient in trying to decide, as
14     well as a discussion with the physicians and
15     their comfort levels.
16              So without that personal contact with
17     the physicians and the patient to make this a
18     personalized decision for the patient, I can't
19     do that on a record that I'm reading and that
20     I'm only being asked to evaluate what happened
21     to the patient and not to second-guess the
22     physicians.
23     BY MS. HOFFMANN:
24         Q.  So if I understand correctly, Doctor,
25     you are not offering any criticisms of the

Protected - Subject to Further Protective Review

```
 1      choice of treatment by Ms. Mingo's prescribing
 2      doctor, Renie Jordan?
 3              MR. DENTON:  Object to the form.
 4      BY MS. HOFFMANN:
 5          Q.   Is that correct?
 6          A.   So if I'm asked, do I have a criticism
 7      of Dr. Jordan, the answer is no.
 8          Q.   Okay.  And you are not critical of the
 9      decision to treat Ms. Mingo's DVT with an
10      anticoagulant, correct?
11          A.   Again, I do not have specific
12      criticisms of Dr. Jordan.
13          Q.   Okay.  Taking into consideration that
14      Ms. Mingo was post total hip replacement, that
15      she was somewhat inactive, that she was a
16      smoker, those would all be factors that would
17      weigh in on whether or not to anticoagulate her
18      DVT, wouldn't they?
19              MR. DENTON:  Object to the form.
20          A.   I'm sure that Dr. Jordan considered
21      all of the relevant factors in that decision to
22      begin anticoagulation in Ms. Mingo.
23      BY MS. HOFFMANN:
24          Q.   And is it fair to say that you are not
25      critical of Dr. Jordan's decision to prescribe
```

Protected - Subject to Further Protective Review

```
 1      STATE OF NEW YORK  )

 2      COUNTY OF ERIE     )

 3                   I, MAUREEN O'CONNOR POLLARD, RMR, CLR,

 4      and Notary Public in and for the State of New

 5      York, do certify that on the 7th day of

 6      February, 2017, at 8:05 o'clock, the person

 7      above-named was duly sworn to testify to the

 8      truth of their knowledge, and examined, and such

 9      examination reduced to typewriting under my

10      direction, and is a true record of the testimony

11      given by the witness.  I further certify that I

12      am neither attorney, related or employed by any

13      of the parties to this action, and that I am not

14      a relative or employee of any attorney employed

15      by the parties hereto, or financially interested

16      in the action.

17                   In witness whereof, I have hereunto

18      set my hand this 7th day of February, 2017.

19

20                   _____

21                   MAUREEN O. POLLARD, Notary Public

22                   My Commission Expires:  3/14/19

23                   Realtime Systems Administrator

24

25
```