# EXHIBIT 3

Protected - Subject to Further Protective Review

```
 1         IN THE UNITED STATES DISTRICT COURT
 2        FOR THE EASTERN DISTRICT OF LOUISIANA
 3                      - - -
 4
     IN RE:   XARELTO         :   MDL NO. 2592
 5   (RIVAROXABAN) PRODUCTS   :
     LITIGATION               :   SECTION L
 6                            :
     THIS DOCUMENT RELATES    :   JUDGE ELDON
 7   TO ALL CASES             :   E. FALLON
                              :
 8                            :
                              :   MAG. JUDGE
 9                            :   NORTH
10
                        - - -
11
                  December 14, 2016
12
                        - - -
13
                     - PROTECTED -
14
     - SUBJECT TO FURTHER PROTECTIVE REVIEW -
15
16              Videotaped deposition of
     HENRY MICHAEL RINDER, M.D., taken
17   pursuant to notice, was held at the law
     offices of Douglas & London, 59 Maiden
18   Lane, New York, New York, beginning at
     8:09 a.m., on the above date, before
19   Michelle L. Gray, a Registered
     Professional Reporter, Certified
20   Shorthand Reporter,  Certified Realtime
     Reporter and Notary Public.
21
                        - - -
22
             GOLKOW TECHNOLOGIES, INC.
23      877.370.3377 ph | 917.591.5672 fax
                 deps@golkow.com
24
```

```
 1   APPEARANCES:
 2
 3       SCHLICHTER, BOGARD & DENTON, LLP
         BY:  ROGER C. DENTON, ESQ.
 4       100 South Fourth Street
         Suite 1200
 5       St. Louis, Missouri 63102
         (314) 621-6115
 6       rdenton@uselaws.com
 7          - and -
 8       HERMAN HERMAN & KATZ
         BY: ANNE (BESS) E. DeVAUGHN, ESQ.
 9       820 O'Keefe Avenue
         New Orleans, Louisiana 70113
10       (504) 581-4892
         bdevaughn@hhklawfirm.com
11
            - and -
12
         DOUGLAS & LONDON, PC
13       BY:  LARA J. SAY, ESQ.
         59 Maiden Lane, 6th Floor
14       New York, New York 10038
         (212) 566-7500
15       lsay@douglasandlondon.com
         Representing the Plaintiffs
16
17
18
19
20
21
22
23
24
```

Protected - Subject to Further Protective Review

```
 1     APPEARANCES:  (Cont'd.)
 2
 3     WILKINSON WALSH & ESKOVITZ
       BY:  BRIAN L. STEKLOFF, ESQ.
 4     MEG LOFTUS, ESQ.
       1900 M Street, NW, Suite 800
 5     Washington, D.C. 20036
       (202) 847-4030
 6     bstekloff@wilkinsonwalsh.com
       mloftus@wilkinsonwalsh.com
 7     Representing Bayer Pharmaceuticals
 8
       BARRASSO, USDIN, KUPPERMAN, FREEMAN
 9     & SARVER, LLC
       BY:  RICHARD E. SARVER, ESQ.
10     MADISON A. SHARKO, ESQ.
       909 Poydras Street, Suite 2400
11     New Orleans, Louisiana 70112
       (504) 589-9700
12     rsarver@barrassousdin.com
       msharko@barrassousdin.com
13     Representing Janssen entities
14
15     VIDEOTAPE TECHNICIAN:
16         Henry Marte
17
18
19
20
21
22
23
24
```

Protected - Subject to Further Protective Review

1  than not -- withdraw that.
2          Are you saying a reasonable
3  physician more likely would not prescribe
4  Xarelto because there's no data in the
5  label about interpatient variability and
6  monitoring?
7          MR. DENTON:  Object to the
8     form.  It's been asked and
9     answered.
10 BY MR. STEKLOFF:
11    Q.    How did the -- can you
12 explain to me how the two clauses of this
13 sentence, the clause before the comma and
14 after the comma, relate to each other?
15          What -- why would a
16 reasonable -- I mean, I'm not -- I'm
17 really just trying to understand.  I
18 mean, that's -- that's sort of my preface
19 for why I'm asking this.
20          Why is it that you believe
21 today, with the information that is in
22 the label, a reasonable physician more
23 likely would not prescribe Xarelto?
24          MR. DENTON:  I object to the

Protected - Subject to Further Protective Review

1              form.  I don't think that's what
2         it says.
3              But do your best.
4    BY MR. STEKLOFF:
5         Q.   I'd like to know if that's
6    what you're saying.  I -- I -- I --
7         A.   What I'm -- what I'm trying
8    to -- what I'm trying to communicate here
9    is, the ROCKET trial has robust data that
10   indicates that monitoring Xarelto with a
11   Neoplastine PT can tell you whether a
12   patient is at a higher bleeding risk.
13             Right now we have no way of
14   knowing the patient -- we have no way of
15   knowing what the bleeding risk is for
16   individual patients.  It's just a black
17   box.
18             If we knew -- if the label
19   had information with that that included
20   the aspects of monitoring -- I'm sorry --
21   of measuring the Neoplastine PT to be
22   able to examine that data with respect to
23   the hazard ratio for bleeding risk from
24   the ROCKET trial that's in the FDA data,

Protected - Subject to Further Protective Review

1  reasonable physicians -- as I said
2  before, I think reasonable physicians
3  would utilize that data.
4           Certainly in my practice,
5  physicians are asking for that ability to
6  monitor.
7           Without the ability to
8  monitor, so not having any idea of the
9  activity of the drug, and given the fact
10 that there is significant interpatient
11 variability, at least in the trough, it's
12 a tenfold change in interpatient
13 variability -- I'm sorry -- not change,
14 but a tenfold difference in interpatient
15 variability, and given that the risk of
16 bleeding at least in the trials that
17 we've looked at, that we talked about
18 here with ROCKET in the U.S. versus
19 well-controlled warfarin, and in the
20 analyses that have been done by Lipp and
21 Schneeweiss and those others where they
22 are not showing that -- where they are
23 showing that apixaban and dabigatran are
24 relatively safer and more efficacious,

Protected - Subject to Further Protective Review

1   you have better options.  And so without
2   being able to monitor the PT and without
3   having that -- and -- and without having
4   that information in the label, such that
5   that would be an option for people to be
6   able to use, I think a reasonable
7   physician might say, I don't know where
8   this patient is in terms of their
9   activity, let me go with something that
10  is probably more effective and safe.
11           Q.   So do you believe that it's
12  unreasonable for a physician, given the
13  lack of information that you've described
14  in the label, to prescribe Xarelto today?
15                MR. DENTON:  Object to the
16           form.
17                THE WITNESS:  You know, I --
18           the fact that I'm saying a
19           reasonable physician more likely
20           than not would not prescribe
21           Xarelto, I don't -- I don't
22           believe in turning that over and
23           saying if they prescribe Xarelto
24           that that is unreasonable.  I

Protected - Subject to Further Protective Review

1           don't -- I don't think those mean
2           the same thing.
3    BY MR. STEKLOFF:
4           Q.   What you think is that,
5    based on the lack of information in the
6    label, someone who you would deem
7    reasonable would choose something other
8    than Xarelto to prescribe to their
9    patient?
10                  MR. DENTON:  Objection to
11          form.  Asked and answered.
12                  THE WITNESS:  I think
13          that -- I think that based on the
14          data, a reasonable physician more
15          likely than not would not
16          prescribe Xarelto.
17   BY MR. STEKLOFF:
18          Q.   So if a reasonable physician
19   knew everything that's in your report,
20   they would not prescribe Xarelto?
21                  MR. DENTON:  Object to the
22          form.
23                  THE WITNESS:  No, I'm not
24          making it an absolute.  I'm saying

Protected - Subject to Further Protective Review

1  that -- that a reasonable
2  physician would more likely than
3  not might make that decision to
4  not prescribe Xarelto. I'm not
5  saying never.
6      I'm saying that there could
7  be other circumstances that come
8  to play, but I'm just saying,
9  without that data, more likely
10 than not it would be reasonable
11 not to prescribe Xarelto.
12     MR. STEKLOFF: I am done.
13 Pass the witness.
14     MR. SARVER: You want to
15 wait till tomorrow, don't you,
16 Roger, for the Boudreaux specific?
17     MR. DENTON: Oh, yes. Yeah,
18 we'll do Boudreaux tomorrow.
19     MR. SARVER: Okay. That's
20 fine.
21     MR. DENTON: And I assume
22 you'll be asking questions?
23     MR. SARVER: Yes.
24     MR. STEKLOFF: Do you

Protected - Subject to Further Protective Review

```
 1
 2                    CERTIFICATE
 3
 4
 5            I HEREBY CERTIFY that the
    witness was duly sworn by me and that the
 6  deposition is a true record of the
    testimony given by the witness.
 7
              It was requested before
 8  completion of the deposition that the
    witness, HENRY MICHAEL RINDER, M.D., have
 9  the opportunity to read and sign the
    deposition transcript.
10
11
                 _____
12               MICHELLE L. GRAY,
                 A Registered Professional
13               Reporter, Certified Shorthand
                 Reporter, Certified Realtime
14               Reporter and Notary Public
                 Dated:  December 15, 2016
15
16
17            (The foregoing certification
18  of this transcript does not apply to any
19  reproduction of the same by any means,
20  unless under the direct control and/or
21  supervision of the certifying reporter.)
22
23
24
```