UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE ELDON E. FALLON |
| Dora Mingo v. Janssen Research & Development, LLC et al. Case No. 2:15-cv-03469 | MAGISTRATE NORTH |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT ON STATE-LAW GROUNDS AS TO <u>PLAINTIFFS' DESIGN-DEFECT CLAIM</u>**

Plaintiffs' proposed "feasible alternative design" that Xarelto® should have been marketed along with an adjunct product—an anti-Factor Xa assay[1]—does not satisfy the "feasible alternative design" requirement under the Mississippi Products Liability Act (MPLA).

A rivaroxaban-specific anti-Factor Xa assay—a test that is not FDA-approved for use in the U.S. and is not commercially available in this country—measures Xarelto concentration in a patient's blood. It is different than the PT test featured in Plaintiffs' warnings-based theory in that the PT test, which is non-specific, measures how quickly a patient's blood is clotting. Plaintiffs' claim that Defendants must market Xarelto with an anti-Factor Xa assay fails to satisfy the MPLA requirements for the following reasons:

1) The anti-Factor Xa assay is not a different design of an anti-coagulant such as Xarelto, but rather a separate product to be used in conjunction with Xarelto. The MPLA requires a feasible alternative design to be a re-design of the product itself.

---

[1] Although Plaintiffs' Opposition briefly mentions a "reversal agent," Plaintiffs then clarify that they are "not pursuing [a reversal agent] theory in [Ms. Mingo's] case." Pls.' Opp. (Doc. 7042), at 2–3, n.3. The Court should hold Plaintiffs to that representation, but to the extent that Plaintiffs attempt to revive their reversal-agent theory, that design-defect claim likewise fails under the MPLA for the reasons explained here and in Defendants' opening brief.

2) Defendants had no duty to design Xarelto differently before seeking FDA approval, and at the time of FDA approval, there was no rivaroxaban-specific anti-Factor Xa assay. Plaintiffs never rebut the point.

3) The anti-Factor Xa assay could not have been adopted at the time Ms. Mingo took Xarelto because the assay was not (and still is not) FDA-approved.

4) There is no evidence that the availability of an anti-Factor Xa assay would have, to a reasonable probability, prevented Ms. Mingo's injury. Plaintiffs have put forward no evidence of what an anti-Factor Xa assay would have shown about Ms. Mingo's blood, or how her prescribing physician would have responded to the results. Plaintiffs' assurances about the benefits of a rivaroxaban-specific anti-Factor Xa assay are wholly speculative.

For all of these reasons, Plaintiffs have failed to carry their burden of demonstrating that an anti-Factor Xa assay is a feasible alternative design to Xarelto under the MPLA.

**ARGUMENT**

**I.     An anti-Factor Xa assay is not an alternative anticoagulant design, and is therefore not a feasible alternative design under Mississippi law.**

Mississippi precedent interpreting the MPLA is clear: a "feasible alternative design" must be a different design *of the product itself*, not a design for an adjunct product to be used in conjunction with the product. *Elliott v. El Paso Corp.*, 181 So. 3d 263, 273 (Miss. 2015) (gas detector not a feasible alternative design for gas odorant); *Clark v. Brass Eagle, Inc.*, 866 So. 2d 456, 461 (Miss. 2004) (protective eyewear not a feasible alternative design for paintball gun). Although Plaintiffs baldly assert there is no "valid basis to analogize an anti-Factor Xa assay" to *Elliott* or *Clark*, they make no effort to distinguish those cases. Instead, they argue that the Court should follow a case that they like better, *Standard Fire Ins. Co. v. Broan Nutone, LLC*, No. 2:07CV44–KS–MTP, 2008 WL 5560882 (S.D. Miss. July 1, 2008). But an unpublished federal district court opinion does not prevail over two on-point Mississippi Supreme Court decisions, particularly where one of those controlling cases—*Elliott*—was decided seven years *after* the federal case on which Plaintiffs solely rely. "To determine state law, federal courts sitting in

diversity look to the final decisions of the state's highest court." *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003) (citing *Transcon. Gas Pipe Line Corp. v. Transp. Ins. Co.*, 953 F.2d 985, 988 (5th Cir. 1992)). *Elliott* and *Clark* provide the controlling rule here, and the Court should look no further.

In any event, *Standard Fire* is distinguishable. In that case, a ventilation fan lacked a thermal protection device, which allowed the fan to overheat and start a fire. *See* 2008 WL 5560882, at *1–2. The court accepted that a fan equipped with such a device—of which there were many examples available in the market—could be a feasible alternative design. *Id.* at *5–6. It is clear from the court's opinion that the thermal protection device was something integrated into the design of the fan itself, and was not a stand-alone adjunct product. *See id.* at *1–2. The device was a feature or component of the fan, as much as screws, vents, or fan blades are components.

An anti-Factor Xa assay is not a feature of Xarelto that can be integrated into the medicine itself (like a thermal protective device integrated into a fan). It is a stand-alone product that might be used in conjunction with a medicine (as a gas detection system might be used in conjunction with natural gas, or protective eyewear might be used in conjunction with a paintball gun). Accordingly, an anti-Factor Xa assay is an adjunct product of the kind that the Mississippi Supreme Court held in *Elliott* and *Clark* did not satisfy the MPLA's feasible alternative design requirement. The MPLA simply does not allow Plaintiffs to point to a product *other than* an anticoagulant drug as a feasible alternative design *for* an anticoagulant drug.

## II. Defendants owed no duty to design Xarelto differently before seeking FDA approval, a point which Plaintiffs never challenge.

Conspicuously, Plaintiffs do not engage Defendants' argument that they owed no duty to design Xarelto differently before seeking FDA approval for Xarelto. Plaintiffs' failure to contest

3

this argument is a basis for dismissal, and a concession of the point in any event. *See Brown v. Ill. Cent. R. Co.*, 480 F. App'x 753, 754 (5th Cir. 2010); *see also Whetstone v. Jefferson Par. Pub. Sch. Bd.*, No. Civ. A 07-9704, 2012 WL 1032894, at *8 (E.D. La. Mar. 27, 2012) (Fallon, J.) (granting summary judgment where "Plaintiff did not respond to [the defendant's] arguments or defend her . . . claims"). The concession is significant—the relevant time under Mississippi law to assess a defendant's liability is "at the time the product left the control of the manufacturer." Miss. Code Ann. § 11-1-63(a). At that time, when Defendants obtained FDA approval and released Xarelto on the market, it is undisputed that no rivaroxaban-specific anti-Factor Xa assay existed. Plaintiffs have effectively conceded that Defendants had no duty to independently develop and market such a product before FDA approval.

Plaintiffs' failure to respond aside, no court applying Mississippi law has ever recognized such a "pre-approval" duty. In response to Defendants' design-defect preemption motion, Plaintiffs have suggested that the decision *Young v. Bristol-Myers Squibb Co.*, No. 416CV00108D MBJMV, 2017 WL 706320 (N.D. Miss. Feb. 22, 2017), settles this question, but *Young* held no such thing. In fact, the *Young* court acknowledged that Mississippi law may not even "recognize[] a pre-approval claim." 2017 WL 706320, at *8. The parties there "ha[d] not argued" the question, and the court "d[id] not reach the issue." *Id*. Without any Mississippi precedent articulating a pre-approval duty, this Court must "not expand state law beyond its presently existing boundaries." *Barfield v. Madison Cty., Miss.*, 212 F.3d 269, 272 (5th Cir. 2000) (quoting *Rubinstein v. Collins*, 20 F.3d 160, 172 (5th Cir. 1994) (citing *Johnson v. Sawyer*, 47 F.3d 716, 729 (5th Cir. 1995))); *see also, e.g.*, *Arkwright-Boston Mfrs. Mut. Ins. Co. v. Westinghouse Elec. Corp.*, 844 F.2d 1174, 1178 n.8 (5th Cir. 1988) (federal courts sitting in diversity are not state-law "pioneers" and

therefore must "simply apply state law as it exists" without "adopt[ing] innovative theories of recovery").[2]

### III.   A rivaroxaban-specific anti-Factor Xa assay could not have been practically adopted at the time Ms. Mingo took Xarelto.

The MPLA does not intend a collision with federal law.  Under the MPLA, a feasible alternative design must be one that "could have been practically adopted at the time of sale." *Williams v. Bennett*, 921 So. 2d 1269, 1275 (Miss. 2006).  As explained in note 2 above, FDA has considered—but not approved—a rivaroxaban-specific anti-Factor Xa assay.  Thus, the anti-Factor Xa assay could not have been practically adopted at the time Ms. Mingo used Xarelto, just as it could not be practically adopted today.

Plaintiffs' reference to the general availability of the assay in other countries misses the point and tells a misleading story.  *See* Pls.' Opp. at 6–7.  To begin with, no one disputes that general anti-Factor Xa assays that are not specific to rivaroxaban are available.  Indeed, Defendants used these assays in clinical trials for scientific purposes.  Plaintiffs' general statements about such assays—which could not be marketed for use with Xarelto in the real world—are irrelevant.  And although a rivaroxaban-specific anti-Factor Xa assay has been approved for use in Europe, it is not approved in the U.S. where Ms. Mingo lives and where all of her treatment occurred.  Because Defendants could not market an anti-Factor Xa assay alongside Xarelto without violating FDA

---

[2] In any event, even now, marketing a rivaroxaban-specific anti-Factor Xa assay today would violate FDA regulations. A company called Diagnostica Stago has formally engaged FDA to discuss approval of a rivaroxaban-specific anti-Factor Xa assay, but FDA has not yet cleared that assay or any other.  *See* Gosselin Dep. at 207:5–13 (Doc. 5677, Exh. 53) (agreeing that no "rivaroxaban specific test [has] been cleared by the FDA"); Leissinger Dep. at 184:6–16 (Doc. 5109, Exh. 29) ("I know that there is no recommended FDA-approved test" to measure Xarelto concentration or effect); Plunkett Dep. at 408:21–409:7 (Doc. 5677, Exh. 51) (agreeing that there are no FDA-cleared devices "that measure the effect or concentration of direct oral anticoagulants").  Because FDA has not approved any rivaroxaban-specific anti-Factor Xa assay—indeed, there is no FDA-approved assay for *any* novel oral anticoagulant—Defendants could not lawfully market Plaintiffs' claimed alternative design for the use that they propose.  *See* Doc. 5109, Exh. 33.  As explained in Defendants' briefs on their motion for summary judgment on the ground that federal law preempts Plaintiffs design-defect claim, Defendants cannot be made liable under state law where federal law would not allow the change that Plaintiffs demand.  *See* Defendants' Motion for Partial Summary Judgment on the Ground that Federal Law Preempts Plaintiffs' Design-Defect Claim (Doc. 6745) and related briefing, incorporated herein by reference.

regulations, the anti-Factor Xa assay cannot be "practically adopted" within the meaning of the MPLA.

### IV. Plaintiffs have no evidence that an anti-Factor Xa assay would have prevented Ms. Mingo's injury.

Contrary to Plaintiffs' arguments, an alternative design is a "feasible alternative design" only if it would have "to a reasonable probability prevented the harm" Ms. Mingo experienced. Miss. Code. Ann. § 11-1-63(f)(ii). To establish reasonable probability, Plaintiffs must present expert analysis of the "effectiveness of the alternative design in reducing the severity or frequency of accidents." *Johnson v. Davidson Ladders, Inc.*, 403 F. Supp. 2d 544, 550 (N.D. Miss. 2005). They cannot do that.

Indeed, Plaintiffs' opposition is devoid of any such analysis. It contains only a short excerpt from a European Medicines Agency publication stating that "routine monitoring [of Xarelto] may not be required" but that "*certain clinical situations exist* when monitoring and measurement of [] blood concentration as well as [] pharmacodynamics effects would be desirable." Pls.' Opp. at 8 (quoting Exh. 16) (emphasis added). That excerpt—and the European rivaroxaban-specific anti-Factor Xa assay to which it refers—does not answer the important questions in this case regarding Ms. Mingo's specific treatment. The European approval extends only to use in "exceptional situations"—because, as the regulators there have explained, "rivaroxaban does not require routine monitoring of exposure." Xarelto EU SmPC § 4.4 (Doc. 5677, Exh. 50). Plaintiffs offer no evidence that Ms. Mingo's situation is one of those "certain clinical situations" or "exceptional situations." Nor do Plaintiffs present any data connecting that assay to this case, showing that the assay would have been effective in preventing Ms. Mingo's injury, or at lessening the severity of her injury. The mere existence of an assay on another continent falls far short of the case-specific "technical analysis" required, as it sheds no light on

the critical issue—*i.e.*, would administering a rivaroxaban-specific anti-Factor Xa assay to Ms. Mingo have, to a reasonable probability, prevented her GI bleed. *Barnett v. Deere & Co.*, No. 2:15-CV-2-KS-MTP, 2016 WL 6652750, at *3 (S.D. Miss. Nov. 10, 2016).

Aside from the single excerpt from the European Medicines Agency publication, Plaintiffs merely cite the testimony of Ms. Mingo's prescribing physician, Dr. Jordon. Plaintiffs claim that Dr. Jordon would have employed an anti-Factor Xa assay if the FDA had recommended it (*see* Pls.' Opp. at 9 (citing Jordon Dep. 94:5–11)), but the cited testimony says nothing about what a hypothetical anti-Factor Xa assay would have shown about Ms. Mingo. Dr. Jordon offered no opinion about how his treatment might have changed in the face of an unknown, hypothetical anti-Factor Xa assay reading. Dr. Jordon testified only that he would "have made some kind of adjustment to her dosage or her medication if a test had shown him that Xarelto was causing Ms. Mingo's blood to become too anticoagulated." Pls.' Opp. at 10 (citing Jordon Dep. 101:9–102:1, 106:12–25). Notably, Dr. Jordon gave this testimony in the context of a discussion of the PT test—it is not testimony about an anti-Factor Xa assay at all. *See* Jordon Dep. 101:9–106:25 (Doc. 7042, Exh. 3). Further, Dr. Jordon did not believe that Ms. Mingo's PT results showed her to be too anticoagulated. *See id.* 196:6–197:9. Accordingly, although Dr. Jordon hypothetically may have made dosage or medication changes for over-anticoagulated patients, there is no evidence that he would have made such adjustments or changes for Ms. Mingo, based on the only test she underwent.

Ultimately, Plaintiffs can only speculate about what a rivaroxaban-specific anti-Factor Xa assay might have shown and what Ms. Mingo's physician would have done about it. They have no evidence on these points, nor any scientific data about how such an assay has affected outcomes for a broader patient population. Plaintiffs have thus failed to show that a rivaroxaban-specific

7

anti-Factor Xa assay would have "to a reasonable probability prevented the harm" that Ms. Mingo experienced. Miss. Code. Ann. § 11-1-63(f)(ii).

## CONCLUSION

The Court should grant the Defendants' Motion and dismiss Plaintiffs' design-defect claim.

Respectfully submitted,

| | |
|---|---|
| BARRASSO USDIN KUPPERMAN FREEMAN & SARVER, L.L.C. | MITCHELL, WILLIAMS, SELIG, GATES & WOODYARD, P.L.L.C. |
| BY: /s/ *Richard E. Sarver* <br> Richard E. Sarver <br> Celeste R. Coco-Ewing <br> BARRASSO USDIN KUPPERMAN FREEMAN & SARVER, L.L.C. <br> 909 Poydras Street, 24th Floor <br> New Orleans, Louisiana 70112 <br> Telephone: (504) 589-9700 <br> rsarver@barrassousdin.com <br> ccoco-ewing@barrassousdin.com | By: /s/ *Lyn P. Pruitt* <br> Lyn P. Pruitt <br> Adria W. Conklin <br> Benjamin D. Brenner <br> Mary Catherine Way <br> MITCHELL, WILLIAMS, SELIG, GATES & WOODYARD, P.L.L.C. <br> 425 West Capitol Ave., Suite 1800 <br> Little Rock, AR 72201 <br> Telephone: (501) 688-8800 <br> lpruitt@mwlaw.com <br> aconklin@mwlaw.com <br> bbrenner@mwlaw.com <br> mway@mwlaw.com |
| DRINKER BIDDLE & REATH LLP | WATKINS & EAGER PLLC |
| By: /s/ *Susan M. Sharko* <br> Susan M. Sharko <br> DRINKER BIDDLE & REATH LLP <br> 600 Campus Drive <br> Florham Park, NJ 07932-1047 <br> Telephone: (973) 549-7000 <br> susan.sharko@dbr.com | By: /s/ *Walter T. Johnson* <br> Walter T. Johnson <br> WATKINS & EAGER PLLC <br> The Emporium Building <br> 400 East Capitol Street <br> Jackson, Mississippi 39201 <br> Telephone: (601) 965-1846 <br> wjohnson@watkinseager.com |
| Rodney M. Hudson <br> DRINKER BIDDLE & REATH LLP <br> 50 Fremont Street, 20th Floor <br> San Francisco, CA 94105-2235 <br> Telephone: (415) 591-7500 <br> Rodney.hudson@dbr.com | ARNOLD & PORTER KAYE SCHOLER LLP |
| Chanda A. Miller <br> DRINKER BIDDLE & REATH LLP <br> One Logan Square, Suite 2000 | By: /s/ *William Hoffman* <br> William Hoffman <br> ARNOLD & PORTER KAYE SCHOLER LLP |

Philadelphia, PA 19103-6996
Telephone: (215) 988-2500
Chanda.Miller@dbr.com

IRWIN FRITCHIE URQUHART & MOORE LLC

By: /s/ *James B. Irwin*
James B. Irwin
Kim E. Moore
IRWIN FRITCHIE URQUHART & MOORE LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
jirwin@irwinllc.com

*Attorneys for Defendants Janssen Pharmaceuticals, Inc. and Janssen Research & Development, LLC*

601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
william.hoffman@apks.com

Andrew K. Solow
Steven Glickstein
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8485
andrew.solow@apks.com
steven.glickstein@apks.com


BRADLEY ARANT BOULT CUMMINGS LLP

By: */s/ Lindsey C Boney IV*
Kevin C. Newsom
Lindsey C Boney IV
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place, 1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8803
knewsom@bradley.com


CHAFFE MCCALL L.L.P.

By: /s/ *John F. Olinde*
John F. Olinde
CHAFFE MCCALL L.L.P.
1100 Poydras Street, Suite 2300
New Orleans, LA 70163
Telephone: (504) 585-7241
olinde@chaffe.com

*Attorneys for Bayer HealthCare Pharmaceuticals Inc. and Bayer Pharma AG*

9

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 17th day of July, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs by operation of the court's electronic filing system.

　　　　　　　　　　　　　　　　　　*/s/     John F. Olinde*