UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE ELDON E. FALLON |
| William Henry v. Janssen Research & Development, LLC, et al.; Case No. 2:15-cv-0224 | MAGISTRATE NORTH |
| Dora Mingo v. Janssen Research & Development, LLC, et al.; Case No. 2:15-cv-03367 | |

**JANSSEN DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF PARTIAL SUMMARY JUDGMENT ON PUNITIVE DAMAGES**

**INTRODUCTION**

Under proper application of the principle of depecage as adopted by Mississippi and Texas courts, New Jersey law clearly governs Dora Mingo and William Henry's claims for punitive damages because the alleged conduct giving rise to their punitive damage claims against the Janssen Defendants occurred in New Jersey. The place of the alleged injury, although afforded greater weight to claims involving compensatory tort damages, is afforded little weight in deciding the law applicable to punitive damage claims. It is the place of the alleged wrongful conduct giving rise to punitive damages that drives the choice of law analysis for punitive damages under the relevant "most significant relationship test." Here, the place with the "most significant relationship" to Plaintiffs' claims for punitive damages (as opposed to compensatory damages) against the Janssen Defendants is New Jersey, not Mississippi or Texas.

Plaintiffs rely almost exclusively on the two-decade old Mississippi Supreme Court decision in *Valley Forge Ins. Co/CAN Ins. Co. v. Strickland*, 620 So. 2d 535, 539 (Miss. 1993),

to oppose Defendants' Motion as to Plaintiff Mingo. *Valley Forge*'s limited relevance and application is readily apparent because the decision has been cited by a single court[1] since 1993. At the same time, the Mississippi Supreme Court has recognized both that (1) "the law of a single state does not necessarily control every issue in a given case," and the Court should "apply the … [most significant relationship] test to each question presented" (*Boardman v. United Servs. Auto. Ass'n*, 470 So. 2d 1024, 1031 (Miss. 1985)), and (2) the "fact that a cause of action arose in Mississippi and that Mississippians are involved does not in itself generate an interest in Mississippi that is superior to that of another state." *Zurich American Insurance Co. v. Goodwin*, 920 So.2d 427, 436 (Miss. 2006). In deciding *Valley Forge*, the Court did not engage in a separate choice of law analysis under the "most significant relationship test" because the record was devoid of any wrongful conduct giving rise to punitive damages that occurred in a different jurisdiction. 620 So. 2d 539 (trial court observed a "false conflict").

As with Mississippi choice of law rules, Texas also recognizes depecage and applies the "most significant relationship test" based on the contacts in the *Restatement (Second) Conflict of Laws* § 145 in light of the factors set forth in *Restatement (Second) of Torts* § 6 to find that the law of the state where the alleged conduct giving rise to punitive damages occurred governs punitive damage claims. Plaintiffs have not cited any applicable authority based on the record here that would support application of Texas punitive damage laws where the alleged conduct giving rise to punitive damages occurred in a different state.

Nor have Plaintiffs identified any wrongful conduct relevant to application of the "most significant relationship" test under Mississippi and Texas law that would support application of

---

[1] *See In re: Train Derailment Near Amite, Louisiana*, MDL No. 1531, 2003 WL 22384962 (E.D. La. Oct. 16, 2003) ("The law applicable to the underlying tort also governs whether punitive damages are recoverable." (*citing Valley Forge Ins. Co. v. Strickland*, 620 So. 2d 535, 538–39 (Miss. 1993)). There, the court evaluated the relevant factors in ascertaining what law applies under the "most significant relationship" test and found that the alleged conduct giving rise to punitive damages was in Louisiana.

the punitive damage laws of Plaintiffs' home states or some other state.  Plaintiffs posit that as between Mississippi and other states – where defendants are incorporated or have offices, conduct business or may have engaged in some conduct – Mississippi has the most significant relationship because Plaintiffs were injured in Mississippi and Texas and their physicians read Xarelto's label in those states.  However, as noted by the Mississippi Supreme Court in *Zurich*, in making this argument, Plaintiff's conflate a personal jurisdiction analysis with application of the "most significant relationship test." For choice of law purposes, the relevant contacts afforded substantial weight are those that allegedly give rise to the punitive damages claim, i.e. where labeling, marketing and regulatory decisions are made.  Plaintiffs' attenuated and spurious argument that Pennsylvania has an interest in the application of its punitive damage laws because Centocor Research & Development, LLC, a non-party organized under the laws of Pennsylvania that has an ownership interest in Janssen Research & Development LLC ("JRD"), has no support in the law or facts and is contrary to *Zurich*.  A properly framed choice of law analysis focuses on both the nature and extent of contacts *relevant* to the *particular* claims – not contacts generally.  Here, the evidence is that the alleged wrongful conduct giving rise to the punitive damages claims, such the decisions regarding Xarelto's label and marketing and interactions with the U.S. Food and Drug Administration, occurred in New Jersey.

     For these and the reasons set forth in Defendants' Motion, this Court should apply New Jersey law to Plaintiff Mingo and Henry's claims for punitive damages, and find that under New Jersey law, neither Plaintiff can prevail on a punitive damages against the Janssen Defendants.

# ARGUMENT

**I.     Mississippi and Texas choice of law rules recognize depecage and require a separate analysis for underlying tort and punitive damages claims**

The principle of depecage and the "most significant relationship" test adopted by both Mississippi and Texas courts requires that tort and punitive damage claims be considered separately based on the nature and extent – both qualitatively and quantitatively – of the relevant contacts set forth in the *Restatement* that will enable the Court to determine which state has the "most significant relationship" to the particular punitive damages claims alleged.

### A.     The Mississippi Supreme Court has confirmed that it follows depecage and the "most significant relationship" test

The most recent decisions by appellate courts in Mississippi confirm that simply because "a cause of action arose in Mississippi and that Mississippians are involved does not in itself generate an interest in Mississippi that is superior to that of another state." *Zurich*, 920 So.2d at 436.  Similarly, in *Boardman*, the same court held that "the law of a single state does not necessarily control every issue in a given case," and the Court should "apply the … [most significant relationship] test to each question presented." *Boardman*, 470 So. 2d 1024, 1031 (Miss. 1985). Under a fair reading of Mississippi choice of law rules as interpreted by the Mississippi Supreme Court, this Court – when presented with facts that alleged wrongful conduct occurred in a different state – must recognize that different states' laws may apply to different "issues" in the case, including the application of different state laws to issues of liability and punitive damages.  *See id.; see also Zimmerman v. Novartis Pharms. Corp.*, 889 F. Supp. 2d 757, 761-62 (D. Md. 2012) ("The 'significant relationship' approach allows for "decepage," such that a court can apply different state laws to different issues in a single cause – i.e., liability, compensatory, and punitive damages."); *see also Talley v. Novartis Pharm. Corp.*, No. 3:08-CV-

4

361-GCM, 2011 U.S. Dist. LEXIS 70201 (W.D.N.C. June 27, 2011) ("[B]oth the comments to the *Restatement* and other cases demonstrate that 'courts have long recognized that they are not bound to decide all issues under the local law of a single state.'") (citations omitted).

Plaintiffs' reliance on *Valley Forge* to oppose Defendants' Motion here is misguided. The Court in *Valley Forge* was presented with no facts that any wrongful conduct relevant to the punitive damages claims occurred outside of Mississippi. The action arose out of subrogation claim filed by the insurer (Valley Forge) of a minor's parent against another insurer (Nationwide) of the driver of an automobile that injured the minor. The minor's parents filed a counterclaim against Valley Forge for bad faith on grounds that Valley Forge would not forego subrogation rights against proceeds that were made payable to the minor's parents by Nationwide. Without any analysis under the "most significant relationship" test based on principles of depecage, the Court held that the laws of the state where the injury occurred governed punitive damages arising out of an automobile accident that occurred in Mississippi. *Valley Forge* was not presented with facts that would have led the Court to consider and evaluate the impact of a punitive damage claim based on conduct that occurred in a different jurisdiction as alleged here.

Following the Mississippi Supreme Court's decisions in *Boardman* and *Zurich*, this Court is charged with evaluating where the conduct giving rise to punitive damages occurred and deciding which state has the "most significant relationship" to the punitive damages claim. As set forth below, clearly New Jersey has the "most significant relationship" to the claims alleged here.

### B. Texas choice of law rules require application of the "most significant relationship" test on an issue-by-issue basis

As with Mississippi, Texas has adopted the "most significant relationship" test as set forth in the *Restatement (Second) of Conflicts of Law*. *See Torrington Co. v. Stuzman*, 46 S.W.3d 829, 848 (Tex. 2000). "Under this analysis, a single state's law need not govern all substantive issues; thus, each issue is considered separately, and the state law that has the most significant relationship to the issue is applied." *Sortiumusa LLC v. Hunger*, Civil Action No. 3:11-cv-1656-M, 2013 U.S. Dist. LEXIS 191498, at *10 (N.D. Tex. Mar. 31, 2013) (*citing Bain v. Honeywell Int'l, Inc.*, 257 F.Supp.2d 872, 877 (E.D. Tex. 2002); *accord Lee v. Delta Air Lines*, 797 F. Supp. 1362, 1373, n.10 (N.D. Tex. 1992) (Applying the "most significant relationship" test under Texas law and determining "that each issue should be separately evaluated to determine which state's law should apply thereto.").

### II. Under Mississippi and Texas choice of law rules, New Jersey has the most significant relationship to Plaintiffs' punitive damage claims

Plaintiffs' punitive damage claims are based on alleged conduct that occurred at the Janssen Defendants' principal place of business in New Jersey, such as the decisions regarding labeling and marketing as well as communications with the U.S. Food and Drug Administration. Although plaintiff was allegedly injured in Mississippi, the place of injury is fortuitous to the issue of *punitive damages. See Zimmerman*, 889 F. Supp. 2d at 762 ("The place where the injury occurred, Maryland, is 'simply fortuitous' with respect to punitive damages as 'it bears little relation to the occurrence and the parties with respect to the particular issue." (quoting *Restatement* § 145 cmt. e)); *Krause v. Novartis Pharm. Corps.*, 926 F. Supp. 2d 1306 (N.D. Fla. 2013) ("[I]n relation to the issue of punitive damages, the relevant misconduct occurred in New Jersey and the place where the injury occurred in 'simply fortuitous' to the failure to warn

claim."); *see also Cruz v. Ford Motor Co.*, 435 F. Supp. 2d 701, 705–07 (W.D. Tenn. 2006) ("Numerous courts have held that the state of the plaintiff's domicile does not have an interest in imposing its state law regarding punitive damages."); *Aguirre Cruz v. Ford Motor Co.*, 435 F. Supp. 2d 701,703-08 (W.D. Tenn. 2006) (collecting cases that have held that plaintiffs domicile has no interest in punitive damages and applying Michigan's bar on punitive damages under the Restatement on grounds that defendant is domiciled in Michigan and allegedly punitive conduct primarily occurred there).

In *Deutsch*, the court determined that the conduct the plaintiffs were attempting to regulate was corporate conduct that occurred in New Jersey and thus, New Jersey law governed plaintiff's claims for punitive damages. *Deutsch v. Novartis Pharms. Corp.*, 723 F. Supp. 2d 521, 524 (E.D.N.Y. 2010). Similarly, in *Talley*, the court determined under the "most significant relationship test" that New Jersey law applied to a North Carolina plaintiff's punitive damage claims. In rejecting plaintiff's argument that North Carolina law had the more significant interest, the explained:

> The Plaintiff's claim that her lawsuit has significant contacts with North Carolina is beyond dispute. The drugs at issue were sold in North Carolina, the Plaintiff was treated by doctors in North Carolina and took the drugs in North Carolina. The alleged injury unquestionably occurred in North Carolina. However, as the *Deutsch* court pointed out, "for purposes of choice of law analysis, the *relevant* contacts are those that related to the alleged conduct giving rise to their claims for punitive damages." **The record demonstrates that the corporate decisions at issue regarding labeling and packaging, occurred in New Jersey**.

*Id.* (emphasis added). The court concluded that "New Jersey holds the most significant interest related to punitive damages in this case" and thus concluded that New Jersey law would apply to the North Carolina plaintiff's claim for punitive damages. *Id.*

Other district courts have followed this same analysis. In *Krause*, the court determined

7

that although "the plaintiff's injuries occurred in Florida, the alleged misconduct to be punished by a punitive damage award—that is, the defendant's decisions as to the labeling, packaging, and warning of the Aredia and Zometa drugs—occurred in New Jersey." 926 F. Supp. 2d 1311–12. In holding that New Jersey law governed plaintiffs' claims for punitive damages, the court reasoned:

> New Jersey has a strong policy interest in governing its corporate citizens uniformly in accordance with its articulated policy on punitive damages. Additionally, although both parties have a justified expectation to apply their respective state's law, applying Florida law to compensatory damages and New Jersey law to punitive damages in the instant case meets the justified expectations of both and helps ensure judicial certainty, predictability, and uniformity of results in tort law. Therefore, the court finds that the state with the dominant interest and most significant relationship to the issue of punitive damages in this case is New Jersey.

*Id.* at 1312 (citations omitted). The court observed that this approach "is consistent with the commentary of the Restatement, which instructs, 'when the primary purpose of the tort rule involved is to deter or punish misconduct, the place where the conduct occurred has peculiar significance.'" *Id.* at 1312 (quoting *Restatement (Second) Conflict of Laws § 145, cmt. e.*); *see also Sico N. Am., Inc. v. Willis*, No. 14-08-00158-CV, 2009 WL 3365856, at *3–6 (Tex. Ct. App. Sept. 10, 2009) (holding that Minnesota had the most significant relationship to products liability claims, despite plaintiff's injury and residency in Texas, because Minnesota, where the defendant was incorporated and headquartered, was the place where the allegedly defective product "was designed, manufactured, and introduced into the stream of commerce"); *see also Jones v. Winnebago Indus.*, 460 F. Supp. 2d 953, 970 (N.D. Iowa 2006) ("[I]n a products liability case, the place where the design, manufacture, and marketing conduct relating to the allegedly defective product occurred is of relatively greater weight than 'the place of injury' …."); *In re*

8

*Educ. Testing Serv. Praxis Principles of Learning & Teaching: Grades 7-12 Litig.*, 517 F. Supp. 2d 832, 852 (E.D. La. 2007) (Vance, J.) ("[I]n the case of punitive damages, the contacts of the state in which the allegedly wrongful conduct occurred and the state of the defendant's place of business take on a more prominent role."); *Cruz*, 435 F. Supp.2d at 706 ("Defendants' principal place of business and the place where the alleged misconduct occurred has the most significant relationship to the issue of punitive damages."); *In re Testosterone Replacement Therapy Prods. Liab. Litig. Coordinated Pretrial Proceedings*, MDL No. 2545, 2017 WL 1836435, at *22 (N.D. Ill. May 8, 2017).

Plaintiffs incorrectly cite to this Court's holding in *In re Vioxx Products Liability Litigation*, 239 F.R.D. 450 (E.D. La. 2006) for the proposition that "for tort claims occurring in Texas, Texas substantive law governs." Pls.' Opp'n at 9–10. In *In re Vioxx*, this Court engaged in a choice of law analysis for the purposes of "determin[ing] which state's or states' substantive law" would govern a class action prior to determining whether a nationwide class action could be certified under Federal Rule of Civil Procedure 23. *Id.* at 454. Although the Court determined that the "substantive law of each plaintiff's home jurisdiction must be applied to his or her respective claims," the Court was referring to the applicable law for plaintiffs' underlying tort claims, not punitive damages. *Id.* at 458. Specifically, the Court clarified:

> In the present case, the issue before the Court is not whether a specific aspect of a state's law, such as the learned intermediary doctrine or punitive damages, should be applied, but whether the entire scope of one state's products liability law, and all aspects arising thereunder, should be applied to the class. Thus, this situation requires the Court to consider the purpose of products liability laws in general, rather than just the purpose behind a specific state law.

*Id.* at 455. Plaintiffs' reliance on *McKay v. Novartis Pharmaceutical Corp.*, 751 F.3d 694 (5th Cir. 2014) is similarly misplaced. The court in *McKay* did not address choice of law regarding

9

the issue of punitive damages, and there is no discussion whatsoever regarding plaintiff's claim for punitive damages. The court in *McKay* determined that Texas law applied to plaintiff's underlying tort claims—an issue Defendants do not dispute. The issue before the Court, however, is which state has the most significant interest in the issue of punitive damages, not the applicable law for Plaintiffs' underlying tort claims

The principles set forth in *Restatement of Torts (Second)* § 6 also support a finding that New Jersey law governs the issue of punitive damages. Because the alleged conduct underlying Plaintiffs' punitive damages claims occurred in New Jersey, the needs of the interstate and international systems would be best served by applying New Jersey punitive damages laws. "New Jersey has made a policy decision on how to impose punitive damages, and has an interest in its citizens being governed by those provisions." *Talley v. Novartis Pharms. Corp.*, 2011 U.S. Dist. LEXIS 70201, at *12. In establishing their principal places of business in New Jersey, Janssen Defendants have a justified expectation of being subject to New Jersey law for punitive damages. Unlike compensatory damages, which are intended to make a plaintiff whole for their underlying torts claims, Plaintiffs have no justified expectation in punitive damages. The basic policy underlying punitive damages is to punish and deter wrongful conduct. The alleged conduct at issue occurred in New Jersey and thus, the interests of the tort are promoted through consistent application of New Jersey law. Similarly, certainty, predictability and uniformity of result are furthered if New Jersey law governs claims of punitive damages against its citizens, particularly corporate citizens who have deliberately subjected themselves to New Jersey law by establishing their principal places of business there. Lastly, the ease in the determination and application of the law to be applied is satisfied here because, as set forth below, New Jersey law precludes punitive damages recoveries for products approved by the FDA.

In light of the purpose behind punitive damages and in consideration of the factors in *Restatement* §§ 145 and 6, New Jersey has the most significant relationship to the issue of punitive damages and, therefore, New Jersey law governs the issue of punitive damages. Under New Jersey law, Plaintiffs' claims for punitive damages are precluded as a matter of law. Accordingly, Janssen Defendants' motion for partial summary judgment on punitive damages should be granted.

### III. Plaintiffs erroneously conflate personal jurisdiction with a proper choice of law analysis

Plaintiffs erroneously argue that because the defendants are organized under the laws of different states and have offices in different locations outside of New Jersey, Mississippi – as opposed to the various other competing state laws – has the most significant relationship to their punitive damages claim. But Plaintiffs' arguments conflate a personal jurisdiction analysis with a "most significant relationship" choice of law analysis. The Mississippi Supreme Court cautioned that confusing these two concepts does not comport with Mississippi's choice of law rules. In reversing the decision of a lower court, the Mississippi Supreme Court held in *Zurich*:

> [T]he circuit court's analysis substituted one typical of personal jurisdiction. We have previously cautioned against this error. Choice of law analysis is entirely different from that of minimum contacts. Choice of law does not depend upon minimization of contacts, but rather upon maximization of contacts. Even though a defendant may have availed itself of Mississippi so that personal jurisdiction is proper, it does not necessitate the application of Mississippi law.

*Zurich*, 920 So.2d 427, 436 (Miss. 2006).

As in *Zurich*, Plaintiff's analysis here conflates contacts relevant to personal jurisdiction with a proper choice of law analysis that considers the nature and extent of the relevant contacts both quantitatively and qualitatively. The error in Plaintiffs' argument is exacerbated by their citation to *Bristol-Myers Squibb v. Superior Court*, 137 S. Ct. 1773 (2017), for the proposition

11

that "Defendants should equally be subject to the laws of those states" where they have "intentionally placed their drug into the stream of commerce." Pls.' Opp'n at 4. But whether a defendant is subject to personal jurisdiction is different from a choice of law analysis.

As stated in Defendants' moving papers, in applying the "most significant relationship" test, courts have held that "a corporation's principal place of business is a more important contact that the place of incorporation." *Restatement (Second) of Conflicts of Laws* § 145. *Meng*, 2009 N.J. Super. Unpub. LEXIS 3249, at *7 ("As between a corporation's principal place of business and place of incorporation, decisional law places more weight on a corporation's place of business in applying choice of law reasoning."). Here, Plaintiffs argue that because Centocor Research & Development, LLC, a non-party, is organized under the laws of Pennsylvania and has an ownership interest in Janssen Research & Development, which has its principal place of business in New Jersey and has communicated with the FDA from its offices in New Jersey, the punitive damages laws of Pennsylvania might apply. This is precisely the type of spurious and attenuated argument – based on remote and unrelated state contacts – rejected by the Mississippi Supreme Court in *Zurich*. Plaintiffs overlook the *relevant* choice of law analysis focusing on the conduct giving rise to their claims for punitive damages. *See Stromenger v. Novartis Pharm. Corp.,* 941 F. Supp. 2d 1288, 1297 ("Although here Plaintiff's injury occurred in Oregon, punitive damages are not intended to compensate one for an injury but rather to deter and to punish bad conduct."); *Wilson v. Chevron*, No 83 Civ. 762, 1986 WL 14925, at *3 (S.D. N.Y. Dec. 17, 1986) (stating that punitive damages "are not meant to compensate the plaintiff, but rather are designed to punish the defendant."); *see also Hughes Wood Prods., Inc. v. Wagner*, 18 S.W. 3d 202, 205 (Tex. 2000) ("[T]he *Restatement* requires the court to consider which state's law has the most significant relationship *to the particular substantive issue to be resolved*.").

Nor have Plaintiffs offered any evidence that any of the relevant conduct giving rise to punitive damages occurred in Pennsylvania, Mississippi or elsewhere. Plaintiffs' assertion that the Collaboration Agreement provided for certain pharmacovigilance activities to occur in Pennsylvania has no support in the record, and in any event ignores that the decisions regarding labeling, marketing and regulatory communications occurred in New Jersey. Both the relevant facts and weight of authority favor the application of New Jersey law to Plaintiffs' claims for punitive damages.

**III.    Plaintiffs ignore the majority view in New Jersey that the law of the State where the alleged conduct giving rise to punitive damages governs under the "most significant relationship test"**

The majority view in New Jersey is that New Jersey's punitive damages law governs nonresident plaintiffs' punitive damage claims when the alleged conduct giving rise to punitive damages occurred in New Jersey. *See, e.g.*, *Irby v. Novartis Pharms. Corp.*, No. MID-L-1815-08, 2011 N.J. Super. Unpub. LEXIS 3188 (N.J. Law Div. Nov. 18, 2011); *Lyles v. McNeil-PPC*, No. ATL-L-8655-11 (Law Div. Aug. 28, 2014); *Dery v. Johnson & Johnson*, No. MID-L-5743-07 (N.J. Law. Div. Dec 8, 2010); *Meng v. Novartis Pharms. Corp.*, No. L-7670-07, 2009 N.J. Super. Unpub. LEXIS 3249 (N.J. Law Div. Nov. 23, 2009).

Moreover, numerous district courts applying the same "most significant relationship" test followed by Mississippi and Texas courts have held that New Jersey has the most significant relationship with the plaintiffs' claims even though the plaintiffs were prescribed and allegedly injured in their home states. *See, e.g.*, *Stromenger,* 941 F. Supp. 2d 1288; *Zimmerman,* 889 F. Supp. 2d 757 (D. Md. 2012); *Krause v. Novartis Pharm. Corps.*, 926 F. Supp. 2d 1306 (N.D. Fla. 2013); *Dopson-Troutt v. Novartis Pharm. Corp.*, No. 8:06-CV-1708-T-24-EAJ, 2013 U.S. Dist. LEXIS 102135 (M.D. Fla. July 22, 2013); *Chiles v. Novartis Pharm. Corp.*, 923 F. Supp. 2d

13

1330 (M.D. Fla. 2013); *Williams v. Novartis Pharm. Corp.*, 15 F. Supp. 3d 761 (S.D. Ohio 2014); *Talley v. Novartis Pharm. Corp.*, No. 3:08-CV-361-GCM, 2011 U.S. Dist. LEXIS 70201 (W.D.N.C. June 27, 2011); *Kirchman v. Novartis Pharm. Corp.*, No. 8:06-cv-1787-T-24-TBM, 2014 U.S. Dist. LEXIS 81526 (M.D. Fla. June 16, 2014).

Plaintiffs' reliance on *Yocham v. Novartis Corp.*, 736 F. Supp.2d 875 (D.N.J. 2010) also is misplaced. The Court there did not engage in any choice of law analysis on the question of punitive damages. In fact, the Y*ocham* court did not address the issue of punitive damages at all. Similarly, the ruling in *In re Nuvaring Litig.*, No. BER-L-3081-09, Slip op. at 12-13 (N.J. Super., Law Div. May 3, 2013) is at odds with the majority of New Jersey courts as outlined above.

**IV.     New Jersey Law Precludes Plaintiffs' Claims for Punitive Damages**

Defendants are entitled to partial summary judgment of Plaintiffs' punitive damage claims under New Jersey law. "New Jersey has made a policy decision to preclude punitive damages in cases involving FDA-approved drugs." *Dopson-Troutt*, 2013 U.S. Dist. LEXIS 10213, at *11. It is undisputed that Xarelto is an FDA-approved medication and the only statutory exception to New Jersey's bar on punitive damages is based on alleged "fraud on the FDA," which under New Jersey precedent is preempted as a matter of law under *Buckman Co. v. Plaintiffs' Legal Committee* 531 U.S. 341, 347–48 (2001). *See McDarby v. Merck & Co. Inc.*, 949 A.2d 223, 276 (N.J. Super. Ct. App. Div. 2008). Plaintiffs concede this in their papers. As set forth in their moving papers, Janssen Defendants' motion for partial summary judgment on punitive damages should be granted.

## **CONCLUSION**

For the foregoing reasons, this Court should grant Janssen Defendants' motion for partial summary judgment of Plaintiffs' claims for punitive damages.

Respectfully submitted,

BARRASSO USDIN KUPPERMAN FREEMAN
& SARVER, L.L.C.

BY: /s/ *Richard E. Sarver*
Richard E. Sarver
Celeste R. Coco-Ewing
909 Poydras Street, 24th Floor
New Orleans, Louisiana 70112
Telephone: (504) 589-9700
rsarver@barrassousdin.com
ccoco-ewing@barrassousdin.com


DRINKER BIDDLE & REATH LLP

By: /s/ *Susan M. Sharko*
Susan M. Sharko
Drinker Biddle & Reath LLP
600 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
susan.sharko@dbr.com


Rodney M. Hudson
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
Telephone: (415) 591-7500
Rodney.hudson@dbr.com

Chanda A. Miller
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2700
Chanda.Miller@dbr.com

I%RWIN% F%RITCHIE% U%RQUHART% & M%OORE% LLC

By: /s/ *James B. Irwin*
James B. Irwin
Kim E. Moore
Irwin Fritchie Urquhart & Moore LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
jirwin@irwinllc.com

*Attorneys for Defendants Janssen*
*Pharmaceuticals, Inc. and Janssen Research*
*& Development, LLC*

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that on July 17, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to Liaison Counsel for Plaintiffs and Defendants by operation of the court's electronic filing system and served on all other plaintiff counsel via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre-Trial Order No. 17.

                                              */s/ James B. Irwin*
                                              **James B. Irwin**