UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE ELDON E. FALLON |
| Dora Mingo et al. v. Janssen et al. Case No. 2:15-cv-03469 | MAGISTRATE NORTH |

**DEFENDANTS' JOINT MOTION *IN LIMINE* TO EXCLUDE DR. SMART'S TESTIMONY ALLEGING THAT XARELTO® IS "WORST IN CLASS"**

Defendants hereby move *in limine* to exclude Dr. Frank Smart's testimony opining that Xarelto® is the "worst in class."  Defendants anticipate that Dr. Smart will present testimony, as he did in the *Orr* trial, that other anticoagulant medicines are safer than Xarelto to create an improper inference that Ms. Mingo would have had a better outcome on a different medicine.  However, such "worst in class" testimony is irrelevant because Mississippi law precludes Plaintiff from asserting that alternative products are safer alternative designs, and Plaintiff has no evidence that Ms. Mingo would have had a different outcome on a different anticoagulant.

Any perceived probative value that Plaintiff attributes to Dr. Smart's testimony would be substantially outweighed by the risk of unfair prejudice and jury confusion.  Accordingly, this testimony and all related evidence should be excluded under Rules 402 and 403.

Further, as set forth in Defendants' Renewed Joint *Daubert* Motion to Exclude Expert Opinions and Testimony Regarding Unapproved Dosing and Monitoring Regimes [Dkt. 6740], Dr. Smart's opinion that Xarelto is not as safe as other anticoagulant medicines because of its dosing regimen and lack of monitoring requirement also should be excluded under *Daubert*.

**RELEVANT FACTS AND BACKGROUND**

Dr. Smart is a cardiologist specializing in the study and treatment of heart failure. *See* Smart Rep. at 1 (Exh. A). Dr. Smart has opined that Xarelto is the "worst in class" of New Oral Anticoagulants ("NOACs") with respect to both efficacy and safety. *Id.* at 4. Specifically, Dr. Smart stated, "Of all the currently available new oral anticoagulants, Rivaroxaban has the narrowest therapeutic index, which means slight variations in the dose or patient characteristics can have significant results in whether the patient is over or under anticoagulated." *Id.* at 2. Dr. Smart compared Xarelto to other NOACs, such as Dabigatran and Apixaban. *Id.* at 2-3. Dr. Smart also criticized Xarelto's once daily dose of either 15 mg or 20 mg. *Id.* at 3-4.

During the *Orr* trial, Plaintiffs elicited testimony from Dr. Smart regarding this opinion. *Orr* Trial Tr. 343:20-347:2 (Exh. B). Dr. Smart testified as follows: "There's four drugs in a class. The best one is safe from bleeding and good from stroke, apixaban. The second best ones are going to be equal on stroke, safer on bleeding, dabigatran, edoxaban. And the worst is Xarelto on rivaroxaban, which is again equal, equal." *Id.* 345:5-9. Dr. Smart further testified that he was also considering the drugs in comparison to warfarin. *Id.* 345:24-346:22.

**ARGUMENT**

**I.   Dr. Smart's testimony that Xarelto is "worst in class" is irrelevant to Plaintiff's claims**

Dr. Smart's testimony that Xarelto is "worst in class" is irrelevant to Plaintiff's claims and should be excluded. It is well-established that "[r]elevancy is the threshold determination in any decision regarding the admissibility of evidence." *Seidman v. Am. Airlines, Inc.*, 923 F.2d 1134, 1139 (5th Cir. 1991) (internal quotation omitted). Evidence is relevant if it has a tendency to make a fact that is of consequence to the determination of an action more or less probable than without the evidence. Fed. R. Evid. 401; *McGonigal v. Gearhart Indus., Inc.*, 851 F.2d 774, 778

(5th Cir. 1988); *Welch v. All Am. Check Cashing, Inc.*, No. 3:13-cv-271, 2015 WL 4066495, at *7 (S. D. Miss. July 2, 2015).

To establish relevancy under Rules 402, a court "must determine whether the expert's reasoning or methodology properly applies to the facts at issue[.]" *Buck v. Ford Motor Co.*, 810 F. Supp. 2d 815, 822 (N.D. Ohio 2011). In other words, "scientific testimony must 'fit' the facts of the case[.]" *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000); *see also Ashburn v. General Nutrition Ctrs., Inc.*, 533 F. Supp. 2d 770, 772 (N.D. Ohio 2008) (Katz, J.) ("Rule 702 requires that expert testimony assist the trier of fact, i.e., it must 'fit' the issues in the case by having a 'valid scientific connection to the pertinent inquiry.'") (citations omitted). The party proffering expert testimony must establish admissibility by a "preponderance of proof." *Pride*, 218 F.3d at 578. To fit the facts of a case, expert testimony must be relevant under the legal standards imposed by applicable substantive law. *See*, *e.g.*, *Daubert v. Merrill Dow Pharm., Inc.*, 54 F.3d 1311, 1320 (9th Cir. 1995) (determining on remand from Supreme Court that "fit" requires a court to "look to the governing substantive standard"); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1320 (11th Cir. 1999) ("Proffered expert testimony must meet the legal as well as the substantive issues of the case.").

Mississippi law requires a plaintiff to prove the existence of "a feasible design alternative that would have to a reasonable probability prevented the harm." Miss. Code. Ann. § 11-1-63(f). Under Mississippi law, another anticoagulant in Xarelto's class cannot be such a feasible design alternative. Plaintiff's theory must instead be based on a feasible and different design for Xarelto, not the use of a different medicine. A recent federal-court decision applying Mississippi law confirms that although Mississippi state courts have not addressed "the alternative design/different product distinction in the context of pharmaceuticals," based on other

Mississippi case law and the almost universal holdings of courts throughout the country, it is likely Mississippi would follow suit holding "that a party may not show a reasonable alternative design by pointing to the availability of a different drug available for the same purpose . . . ." *Young v. Bristol-Myers Squibb Co.*, No. 4:16-cv-00108-DMB-JMV, 2017 WL 706320, at *10-11 (N.D. Miss. Feb. 22, 2017) (dismissing design defect claim under Mississippi law for failure to plead a feasible alternative design where the plaintiff "point[s] to drugs which by their very nature perform a different function"). Thus, Dr. Smart's opinion as to the efficacy and safety of Xarelto compared to other anticoagulants is irrelevant to a product-liability claim under Mississippi law.

Dr. Smart's opinion that Xarelto is "worst in class" also is irrelevant to causation. None of Plaintiff's experts will opine that had Ms. Mingo been using any other anticoagulant, she would have had a different outcome. In fact, Plaintiff's experts agree that they cannot render reliable opinions on this issue, and Plaintiff has filed a separate motion seeking to preclude testimony from defense experts that there is no evidence that Ms. Mingo would have had a better outcome on a different medicine. *See* Dkt. 5517. As discussed in detail in Defendants' Memorandum in Opposition to Plaintiffs' Motion to Preclude Speculative Testimony from Seven Defense Experts About Potential Outcomes from Other Anticoagulants [Dkt. 7012], the evidence is that all anticoagulants carry an increased risk of bleeding, and that it cannot be shown that Ms. Mingo's injuries would have been avoided had she used a different anticoagulant. Dkt. 7012 at 6-13.

Ms. Mingo's own expert, Dr. Henry Rinder, agrees. Dr. Rinder testified that Ms. Mingo "requires anticoagulation" and recognized that all anticoagulants have bleeding risks. Rinder *Mingo* Dep. 120:7-18 (Feb. 7, 2017) (Exh. C). Because of this, Dr. Rinder could not give "a

4

medically valid" opinion that Ms. Mingo would have had a different outcome on a different medicine. *Id.* 120:19-21. Additionally, Dr. Rinder has previously testified that "every anticoagulant carries a risk of bleeding," and "to try to state that someone would not, as in never, have a bleed" if they take a different anticoagulant "is just impossible to know." Rinder *Boudreaux* Dep. 47:19-48:13 (Dec. 15, 2016) (Exh. D). Thus, because neither Dr. Smart nor Dr. Rinder can tie the generic opinion that Xarelto is "worst in class" to a different outcome for Ms. Mingo, Dr. Smart's "worst in class" testimony is irrelevant. No expert has been proffered to testify that had Ms. Mingo used a different anticoagulant, she would not have suffered the same injury.

## II. Any minimal probative value of Dr. Smart's opinion that Xarelto is "worst in class" is substantially outweighed by the probability that the testimony will cause undue prejudice, confuse issues, mislead the jury, and waste time

Dr. Smart's opinion testimony that Xarelto is "worst in class" also should be excluded because "any probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, and [causing] undue delay [or] wasting time." Fed. R. Evid. 403; *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 672-73 (5th Cir. 1999). Trial courts are given broad discretion in balancing the probative value against the risks of unfair prejudice. *McGonigal*, 851 F.2d at 778. "'Unfair prejudice' within this context means an undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Cook*, 557 F.2d 1149, 1154 (5th Cir. 1977) (citing Fed. R. Evid. 403 advisory committee's notes). A trial court should exclude evidence that has a tendency to distract the jury from its main inquiry or confuse the issue. *See, e.g., Plener v. Parsons-Gilbane*, 713 F.2d 1127, 1139 n.11 (5th Cir. 1983) (noting that where evidence, "though of some relevance, may lead to confusing and time-consuming disputes with respect to collateral issues

the trial judge may properly reject or limit it under Rule 403") (internal quotation and citation omitted).

Any perceived probative value of this evidence is substantially outweighed by the danger of causing undue prejudice to Defendants, and confusing or misleading the jury. Dr. Smart's testimony that Xarelto is "worst in class" is only likely to lead to the improper inference that a different medicine would have resulted in a better outcome for Ms. Mingo, based on general opinions that Xarelto is not as safe or effective as other anticoagulants. Plaintiffs have admitted that none of their experts can testify to a reasonable degree of medical certainty that Ms. Mingo's injuries would not have occurred on a different anticoagulant medication. Therefore, Dr. Smart's opinion testimony that Xarelto is "worst in class" is highly misleading and prejudicial and should be excluded under Rule 403.

### III. Dr. Smart's "worst in class" opinion is also inadmissible because it is based on his improper dosing opinion.

As set forth in Defendants' Renewed Joint *Daubert* Motion to Exclude Expert Opinions and Testimony Regarding Unapproved Dosing and Monitoring Regimes [Dkt. 6740], Dr. Smart's opinions regarding unapproved dosing is improper. Because Dr. Smart's "worst in the class" opinion is based on improper dosing opinions, that opinion also is inadmissible. *See, e.g.*, *Gibbens v. Champion Indus.*, No. 11-868, 2013 WL 1176236, at *2 (E.D. La. Mar. 20, 2013) (explaining that expert "would not be allowed to testify as to any opinion based on evidence that has been previously excluded"); *In re Viagra Prods. Liab. Litig.*, 658 F. Supp. 2d 950, 957–58 (D. Minn. 2009) (excluding expert opinion because, *inter alia*, it was "based on [a] theory that the Court previously deemed inadmissibly unreliable"); *Torres-Ocasio v. Texaco Puerto Rico, Inc.*, Civ. No. 06-1019 (PG), 2007 WL 2245731, at *5 (D.P.R. Aug. 1, 2007) (excluding expert

report that was "directly influenced by the opinions and conclusions of Plaintiff's expert witness . . . whom Plaintiff admitted does not meet *Daubert* standards").

## CONCLUSION

For the foregoing reasons, Defendants' Motion *in Limine* should be granted and any evidence regarding Dr. Smart's opinion that Xarelto is "worst in class" should be excluded.

Respectfully submitted,

BARRASSO USDIN KUPPERMAN FREEMAN & SARVER, L.L.C.

BY: /s/ *Richard E. Sarver*
Richard E. Sarver
Celeste R. Coco-Ewing
BARRASSO USDIN KUPPERMAN FREEMAN & SARVER, L.L.C.
909 Poydras Street, 24th Floor
New Orleans, Louisiana 70112
Telephone: (504) 589-9700
rsarver@barrassousdin.com
ccoco-ewing@barrassousdin.com


DRINKER BIDDLE & REATH LLP

By: /s/ *Susan M. Sharko*
Susan M. Sharko
DRINKER BIDDLE & REATH LLP
600 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
susan.sharko@dbr.com

Rodney M. Hudson
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
Telephone: (415) 591-7500
Rodney.hudson@dbr.com

MITCHELL, WILLIAMS, SELIG, GATES & WOODYARD, P.L.L.C.

By: */s/ Lyn P. Pruitt*
Lyn P. Pruitt
Adria W. Conklin
Benjamin D. Brenner
Mary Catherine Way
MITCHELL, WILLIAMS, SELIG, GATES & WOODYARD, P.L.L.C.
425 West Capitol Ave., Suite 1800
Little Rock, AR 72201
Telephone: (501) 688-8800
lpruitt@mwlaw.com
aconklin@mwlaw.com
bbrenner@mwlaw.com
mway@mwlaw.com


WATKINS & EAGER PLLC

By: */s/ Walter T. Johnson*
Walter T. Johnson
WATKINS & EAGER PLLC
The Emporium Building
400 East Capitol Street
Jackson, Mississippi 39201
Telephone: (601) 965-1846
wjohnson@watkinseager.com

Chanda A. Miller
DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2500
Chanda.Miller@dbr.com


IRWIN FRITCHIE URQUHART & MOORE LLC

By: /s/ *James B. Irwin*
James B. Irwin
Kim E. Moore
IRWIN FRITCHIE URQUHART & MOORE LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
jirwin@irwinllc.com

*Attorneys for Defendants Janssen Pharmaceuticals, Inc. and Janssen Research & Development, LLC*

ARNOLD & PORTER KAYE SCHOLER LLP

By: /s/ *William Hoffman*
William Hoffman
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
william.hoffman@apks.com

Andrew K. Solow
Steven Glickstein
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8485
andrew.solow@apks.com
steven.glickstein@apks.com


BRADLEY ARANT BOULT CUMMINGS LLP

By: */s/ Lindsey C Boney IV*
Kevin C. Newsom
Lindsey C. Boney IV
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place, 1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8803
knewsom@bradley.com


CHAFFE MCCALL L.L.P.

By: /s/ *John F. Olinde*
John F. Olinde
CHAFFE MCCALL L.L.P.
1100 Poydras Street, Suite 2300
New Orleans, LA 70163
Telephone: (504) 585-7241
olinde@chaffe.com

*Attorneys for Bayer HealthCare Pharmaceuticals Inc. and Bayer Pharma AG*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 17, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs and Defendants by operation of the court's electronic filing system and served on all other plaintiff counsel via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre-Trial Order No. 17.

*/s/ James B. Irwin*
**James B. Irwin**