# Exhibit C

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE ELDON E. FALLON |
| *Joseph J. Boudreaux, Jr., et al. v. Janssen et al.* Case No. 2:14-cv-02720 | MAGISTRATE NORTH |

**DEFENDANTS' JOINT MOTION *IN LIMINE* NO. 8 TO EXCLUDE EVIDENCE AND ARGUMENT REGARDING THE SEPTEMBER 2015 XARELTO® LABEL AND/OR RELATED CORRESPONDENCE**

**INTRODUCTION**

Pursuant to Federal Rules of Evidence 401, 402, 403, and 407, Defendants hereby move *in limine* to exclude evidence and argument related to the September 2015 Xarelto® label and/or related correspondence. That label *was not* in effect at the time that Joseph Boudreaux, Jr., was prescribed Xarelto in January and February 2014, is not a label that would have changed Mr. Boudreaux's prescribing physician's decision to prescribe Xarelto to Mr. Boudreaux, and constitutes an inadmissible subsequent remedial measure under Federal Rule of Evidence 407.

Plaintiffs allege that—before September 2015—Xarelto's label failed to include certain data about U.S. participants in the 14,000-patient ROCKET AF study (the "U.S.-subgroup data"). Defendants undertook to include U.S.-subgroup data in the label in 2015 after FDA directed all manufacturers of NOACs to "harmonize" the labeling across medicines in the class. Defendants anticipate that Plaintiffs will attempt at trial to introduce the September 2015 Xarelto label—and/or related correspondence between FDA and Janssen Research & Development, LLC ("JRD")—as evidence that the label that was in effect at the time Mr. Boudreaux was prescribed Xarelto was inadequate.

The addition of U.S.-subgroup data is not relevant to this case. Mr. Boudreaux's prescribing physician, Dr. Kenneth Wong, clearly testified that subgroup information was a statistic that would not have affected his decision to prescribe Xarelto to Mr. Boudreaux. And any perceived probative value that Plaintiffs attach to the inclusion of this information in the September 2015 label is outweighed by undue prejudice to Defendants and the likelihood that such evidence will confuse the issues, mislead the jury, and waste the time of the jury, the Court, and the parties. Accordingly, the September 2015 label and related evidence and argument should be excluded.

## RELEVANT FACTS AND BACKGROUND

On November 4, 2011, FDA gave final approval for the use of Xarelto for patients with non-valvular atrial fibrillation ("AFib") to reduce the risk of stroke and systemic embolism.[1] The primary clinical study that was submitted to FDA in connection with the New Drug Application for the AFib indication was ROCKET AF, "a randomized, double-blind, event-driven, confirmatory trial of rivaroxaban vs. dose-adjusted warfarin." FDA Reanalysis, at 5. ROCKET AF involved approximately 14,000 patients from more than 1,100 study sites on six continents. *Id.* The study was designed to test whether Xarelto was "non-inferior" to—*i.e.*, at least as good as—the existing anticoagulant warfarin in reducing the risk of stroke and systemic embolism in patients with AFib. *Id.* At the conclusion of ROCKET AF, Xarelto was determined to be non-inferior to warfarin at reducing the risk of stroke and systemic embolism in patients with AFib. *Id.* at 1, 7.

---

[1] Xarelto Label, Approved November 4, 2011 (Ex. A); Center for Drug Evaluation and Research, NDA 202439–Rivaroxaban (Xarelto): Impact of use of the INRatio® device in the ROCKET AF trial, September 26, 2016, ("FDA Reanalysis") at 1, 5 (Ex. B).

In January 2014, FDA undertook a class-wide effort "to harmonize the presentation of safety and efficacy data in the labels for all recently approved non-vitamin K-dependent oral anticoagulants (NOACs)," which included Xarelto as well as Pradaxa® and Eliquis®. January 28, 2014 letter from FDA XARELTO_JANSSEN_00000344 (Ex. C); September 10, 2015 letter from FDA, XARELTO_JANSSEN_11046462 ("September 10, 2015 letter from FDA"), at 1 (Ex. D). For Xarelto, this class-wide "harmoniz[ation]" meant adding to the label additional data from ROCKET AF pertaining to various subgroups—*e.g.*, gender, weight, and others, including U.S. patients. FDA previously had considered adding certain subgroup data to the label—including for North American patients—and had decided *not* to include that data.[2] JRD engaged in a dialogue with FDA regarding the labeling over the course of the next year and a half and, on September 10, 2015, FDA approved the addition of a new chart in the label regarding bleeding risks for various subgroups of patients studied in ROCKET AF, including the U.S.-subgroup. September 10, 2015 letter from FDA, at 3.

Several of Plaintiffs' experts opine that the U.S.-subgroup information that was added to the Xarelto label in September 2015 should have been added to Xarelto's label earlier. *See, e.g.*, Expert Report of Cindy Leissinger, MD at 3 (Ex. E); Expert Report of Frank Smart, MD at 6–7 (Ex. F); Expert Report of Henry Rinder, MD at 4 (Ex. G).

But Mr. Boudreaux's prescribing physician, Dr. Wong, testified that the U.S.-subgroup data that ultimately was added to the label in September 2015 would not have changed his decision to prescribe Xarelto to Mr. Boudreaux. Wong Dep. 112:11–113:2 (Ex. H). Dr. Wong testified that the data constitutes "just a purely statistic number," *id*. 110:20–111:16, 183:19–184:7, and that it would not have changed his treatment decisions:

---

[2] *See* Defendants' Motion for Summary Judgment Based on Labeling Preemption.

> Q. If [U.S.-subgroup data] had been available to you at the time you prescribed [Xarelto] to Mr. Boudreaux, it would not have altered your discussion with Mr. Boudreaux about Xarelto?
>
> A. No.

*Id.* at 112:11–113:2

Moreover, researchers have observed that analyzing data based on subgroups, as Plaintiffs seek to do here, often creates a fallacy that does not translate into meaningful scientific information from which sound scientific conclusions can be drawn.[3]

**ARGUMENT**

**I.     The September 2015 Xarelto label is a subsequent remedial measure, and therefore is inadmissible under Rule 407.**

Based on Plaintiffs' theory of the case, the September 2015 label constitutes a subsequent remedial measure under Rule 407, and therefore is inadmissible.  Rule 407 provides that, "[w]hen, after an event, measures are taken which if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event." *See also Mills v. Beech Aircraft Corp.*, 886 F.2d 758, 763 (5th Cir. 1989) (nothing in product liability actions, Rule 407 prevents evidence of subsequent remedial measures from being used to prove that a design is defective). As noted by the Advisory Committee, "the primary justification for Rule 407 is the 'social policy of encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety.'"  *Kirkland v. Marriot Int'l, Inc.*, 416 F. Supp. 2d 480, 489 (E.D. La. 2006) (quoting Fed. R. Evid. 407, Advisory Committee's Note).  In particular, courts applying Rule 407 routinely have excluded evidence of post-injury label changes.  *See, e.g.*, *Stahl v. Novartis*

---

[3] Peter Sleight, *Debate: Subgroup analyses in clinical trials: fun to look at - but don't believe them!*, 1 Curr Control Trials Cardiovasc Med 25 (2000).

4

*Pharm. Corp.*, 283 F.3d 254, 271 n.10 (5th Cir. 2002) (noting that labels modified after plaintiff's injury were subsequent remedial measures that could not be considered in evaluating whether warning was adequate); *Guilbeau v. W.W. Henry Co.*, 85 F.3d 1149, 1171 (5th Cir. 1996) (affirming the trial court's decision to exclude product labels that post-dated plaintiff's exposure as subsequent remedial measures); *see also, e.g.*, *Werner v. Upjohn Co., Inc.*, 628 F.2d 848, 859 (4th Cir. 1980) (post-injury label change barred by Rule 407); *DeLuryea v. Winthrop Labs.*, 697 F.2d 222, 229 (8th Cir. 1983) (Rule 407 requires exclusion of evidence of subsequent remedial changes in defendant's warning literature).

Here, the September 2015 label constitutes a subsequent remedial measure and is inadmissible to show that Defendants engaged in any negligent or other culpable conduct by not adding the U.S.-subgroup data to the Xarelto label before the alleged harm to Mr. Boudreaux. As explained above, the label in effect at the time of Mr. Boudreaux's alleged injury was approved by FDA, which had previously considered and decided against the inclusion of North American subgroup information. In January 2014, FDA initiated its effort to harmonize the safety and efficacy data in the labels for all recently approved NOACs. On September 10, 2015, FDA approved the Xarelto label containing a new chart regarding bleeding risks of various patient subgroups studied in ROCKET AF, including the U.S.-subgroup. This label included additional information about bleeding risks, which only was approved *after* Mr. Boudreaux allegedly experienced a bleeding event.[4] This is exactly the type of evidence that is inadmissible pursuant to Rule 407. The exclusion of this evidence is also consistent with the Rule's underlying policy, which seeks to encourage defendants to take steps to improve safety without

---

[4] Mr. Boudreaux alleges he was injured on February 3, 2014, following his Xarelto use from January to February 2014. *Boudreaux* Compl. ¶ 14.

5

concern that such actions could later be used against them in litigation.[5] *See* Fed. R. Evid. 407, Advisory Committee's Note.

There are limited exceptions that may permit admission of a subsequent remedial measure, but none of them applies here. Those exceptions may permit admission of evidence for impeachment purposes or, if disputed, to prove "ownership, control, or the feasibility of precautionary measures." Fed. R. Evid. 407. There is no dispute regarding ownership or control over Xarelto. Feasibility also is not at issue because the 2015 label changes were adopted as a result of FDA's class-wide harmonization efforts—where FDA previously had declined to include subgroup information. Nor would the label change be admissible for impeachment purposes, as ROCKET AF is not in dispute and speaks for itself. Accordingly, because the exceptions under Rule 407 are inapplicable, the September 2015 label is inadmissible and Plaintiffs should not be permitted to introduce or rely on that label at trial.

## II. The September 2015 Xarelto label and related evidence are irrelevant to Plaintiffs' claims, and therefore are inadmissible under Rules 401-02.

The September 2015 label and related evidence also are not relevant to Plaintiffs' claims and should be excluded. It is well-established that "[r]elevancy is the threshold determination in any decision regarding the admissibility of evidence." *Seidman v. Am. Airlines, Inc.*, 923 F.2d 1134, 1139 (5th Cir. 1991) (internal quotation omitted). Evidence is relevant if it has a tendency to make a fact that is of consequence to the determination of an act more or less probable than

---

[5] The fact that FDA approached JRD about harmonizing the safety and efficacy information in the labels of all NOACs does not alter this analysis. *See Werner v. Upjohn Co., Inc.*, 628 F.2d 848, 859 (4th Cir. 1980) (rejecting plaintiff's argument that a later warning was admissible because it was required by FDA and noting: "FDA can require that a warning be changed, but that does not tell the whole story. In addition to its broad regulatory sanctions it is clear that it also relies on voluntary compliance and compromise in determining the content of warnings and advertising for prescription drugs"); *see id.* ("If subsequent warnings are admitted to prove antecedent negligence simply because FDA required or might have required the change, then drug companies may be discouraged from taking early action on their own and from participating fully in voluntary compliance procedures."). *But see Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1343 (5th Cir. 1978) (concluding that Rule 407 did not preclude use of evidence because such evidence was required by a superior authority).

6

without the evidence. Fed. R. Evid. 401; *McGonigal v. Gearhart Indus., Inc.*, 851 F.2d 774, 778 (5th Cir. 1988); *Kennedy v. Magnolia Marin Transp. Co.*, 189 F. Supp. 3d 610, 619 (E.D. La. 2016). Evidence lacking probative value is properly excluded as irrelevant. Fed. R. Evid. 402.

Under the Louisiana Product Liability Act ("LPLA"), Plaintiffs must prove that Xarelto was defectively designed or was accompanied by inadequate warnings when Mr. Boudreaux was prescribed the medicine, and that an alleged defect caused harm to Mr. Boudreaux. *Stahl*, 283 F.3d at 261; *Slaid v. Evergreen Indem. Ltd.*, 745 So.2d 793, 798 (La. App. 2 Cir. 1999). Dr. Wong testified that the U.S.-subgroup data would not have affected his treatment decision, and that the inclusion of this information was just a statistic that had no particular significance to his treatment of patients. As a result, FDA's decision in 2015 to add subgroup data to the Xarelto label simply is not relevant to Plaintiffs' claims. Here, FDA revisited its original determination in 2011—*i.e.*, not to include subgroup information—and decided to include the information in 2015. As explained by the Fourth Circuit in *Werner*, where FDA previously approved the label and then subsequently changed its position, the subsequent labeling changes are irrelevant and should be inadmissible:

> [W]hen a third party has required the change the relevance of the evidence is one more step removed from the central issue in the case, the adequacy of the warning at the time the product was marketed. When a third party makes a subsequent change the inference is removed not only in time but in who made the change. This is especially true in the case at bar since the FDA itself approved the 1974 warning at the time it was first used. Thus, it would appear that any separate relevance of the FDA's actions with regard to the 1975 warning is overridden by the fact that the FDA approved the 1974 warning as well.

628 F.2d at 859.

Here, during the approval process, Defendants submitted all data from ROCKET AF, including data related to bleeding rates in the trial's U.S.-subgroup. At the time of approval, FDA considered including in the product labeling various subgroup data from ROCKET AF—

7

including North American subgroup data—and decided not to include the data in the Xarelto label. Thus, Plaintiffs should be precluded from offering evidence of the September 2015 label as proof of an alleged inadequate warning at the time of Mr. Boudreaux's treatment in 2014.

**III.    Under Rule 403, any probative value of the September 2015 Xarelto label and related evidence is substantially outweighed by the probability that it will cause undue prejudice, confuse the issues, mislead the jury, and waste time.**

Evidence of the September 2015 label and related correspondence also should be excluded because any probative value that Plaintiffs may attach to this evidence is substantially outweighed by its potential for undue prejudice, confusion of the issues, misleading the jury, and undue delay.  Fed. R. Evid. 403; *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 672–73 (5th Cir. 1999); *Mills*, 886 F.2d at 763 ("The introduction of evidence about subsequent changes in the product or its design threatens to confuse the jury by diverting its attention from whether the product was defective at the relevant time to what was done later."); *Grenada Steel Indus., Inc. v. Alabama Oxygen Co.*, 695 F.2d 883, 889 (5th Cir. 1983) (concluding the district court's exclusion of evidence of subsequent remedial measures was proper as it "lacked sufficient probative value and injected the dangers of confusion and misleading the jury"); *Randle v. Tregre*, 147 F. Supp. 3d 581, 598–99 (E.D. La. 2015).

Trial courts are given broad discretion in balancing the probative value of proffered evidence against the risks of unfair prejudice.  *McGonigal*, 851 F.2d at 778.  "'Unfair prejudice' . . . means an undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one."  *United States v. Cook*, 557 F.2d 1149, 1154 (5th Cir. 1977) (citing to Fed. R. Evid. 403, Advisory Committee's Notes); *see also Saacks v. Privilege Underwriters Reciprocal Exch.*, No. 16–1149, 2017 U.S. Dist. LEXIS 14531, at *15 (E.D. La. Feb. 2, 2017) (Fallon, J.).

8

A trial court should exclude evidence that has a tendency to distract the jury from its main inquiry or to confuse the issues. *See, e.g.*, *Plemer v. Parsons-Gilbane*, 713 F.2d 1127, 1139 n.11 (5th Cir. 1983) (noting that where evidence, "though of some relevance, may lead to confusing and time-consuming disputes with respect to collateral issues the trial judge may properly reject or limit it under Rule 403") (internal quotation and citation omitted). Moreover, the Fifth Circuit has recognized that limiting instructions may not "defuse such improper influence" of unduly prejudicial evidence. *See Shipp v. Gen. Motors C*orp., 750 F.2d 418, 427 (5th Cir. 1985); *see also Hopper v. Waterman S.S. Corp.,* Civ. Action No. 83-0924 Section "K" (5), 1991 U.S. Dist. LEXIS 17991 (E.D. La. Dec. 6, 1991) (granting a motion in limine to exclude evidence under 403 and 407, because the prejudice that would result from "the potential for use of this evidence by a jury for [other] purposes . . . —even with a limiting instruction—is great.").

Admission of the September 2015 label would unfairly prejudice Defendants. *First*, the label likely would confuse the jury and invite speculation that Defendants could have previously added the U.S.-subgroup data to the Xarelto label—even though FDA specifically had considered language regarding the safety and efficacy of Xarelto as reflected in subgroup data from ROCKET AF and decided *not* to include subgroup data in the original, approved label. *Second*, evidence regarding the addition of the U.S.-subgroup data to the 2015 label likely would mislead the jury by improperly suggesting that FDA determined that the Xarelto label at the time of the alleged harm to Mr. Boudreaux was inadequate, notwithstanding the fact that FDA's decision to include subgroup data in the September 2015 label did not speak to any purported inadequacy in the label. Rather, FDA decided to include this data in the September 2015 label as part of its class-wide effort to harmonize safety and efficacy data for all NOACs. *Third*, such

9

evidence likely would lead the jury to assume that the label changes effected in September 2015 constitute an admission by Defendants that, before those changes, the label was inadequate. In addition, introducing the 2015 label into evidence also would result in a waste of time and jury and judicial resources because Defendants would be required to present contextual evidence related to the September 2015 label and FDA's harmonization effort, which would further complicate the issues to be resolved at trial. Accordingly, the September 2015 label and related evidence should be excluded.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the September 2015 Xarelto label and related evidence be excluded, and that Plaintiffs be precluded from referencing, discussing, or arguing such evidence at trial.

Respectfully submitted,

DRINKER BIDDLE & REATH LLP

By: /s/ *Susan M. Sharko*
Susan M. Sharko
Drinker Biddle & Reath LLP
600 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
susan.sharko@dbr.com

Rodney M. Hudson
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
Telephone: (415) 591-7500
Rodney.hudson@dbr.com

Chanda A. Miller
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2500
Chanda.Miller@dbr.com

ARNOLD & PORTER KAYE SCHOLER LLP

By: /s/ *William Hoffman*
William Hoffman
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
william.hoffman@apks.com

Andrew K. Solow
Steven Glickstein
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8485
andrew.solow@apks.com
steven.glickstein@apks.com

| | |
|---|---|
| IRWIN FRITCHIE URQUHART & MOORE LLC | BRADLEY ARANT BOULT CUMMINGS LLP |
| By: /s/ *James B. Irwin* | By: */s/ Kevin C. Newsom* |
| James B. Irwin | Kevin C. Newsom |
| Kim E. Moore | Lindsey C Boney IV |
| Irwin Fritchie Urquhart & Moore LLC | BRADLEY ARANT BOULT CUMMINGS LLP |
| 400 Poydras Street, Suite 2700 | One Federal Place, 1819 Fifth Avenue North |
| New Orleans, LA 70130 | Birmingham, AL 35203-2119 |
| Telephone: (504) 310-2100 | Telephone: (205) 521-8803 |
| jirwin@irwinllc.com | knewsom@bradley.com |

*Attorneys for Defendants Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC, and Janssen Ortho LLC, and Johnson & Johnson*

CHAFFE MCCALL L.L.P.

By: /s/ *John F. Olinde*
John F. Olinde
Chaffe McCall L.L.P.
1100 Poydras Street, Suite 2300
New Orleans, LA 70163
Telephone: (504) 585-7241
olinde@chaffe.com

*Attorneys for Bayer HealthCare Pharmaceuticals Inc. and Bayer Pharma AG*

**CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that on March 29, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs and Defendants by operation of the court's electronic filing system and served on all other plaintiff counsel via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre-Trial Order No. 17.

    */s/ James B. Irwin*
    **James B. Irwin**