UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | * * * | MDL 2592 |
| THIS DOCUMENT RELATES TO: | * * * | SECTION L |
| *Mingo v. Janssen Research & Development, LLC, et al* | * * | JUDGE ELDON E. FALLON |
| Case No. 2:15-cv-03469 | * | MAG. JUDGE NORTH |
| * * * * * * * * * * * * * * * * * * * * * * * | | |

**PROPOSED PRE-TRIAL ORDER**

The parties hereby jointly submit this Proposed Pre-Trial Order.

1. The pre-trial conference is scheduled to be held on July 21, 2017.

2. Counsel attending the pre-trial conference:

    a. For the Plaintiffs: Brian Barr of Levin Papantonio, Andy Birchfield of Beasley Allen, Leonard Davis of Herman, Herman & Katz, Roger Denton of Schlichter Bogard & Denton, Brad Honnold of Goza & Honnold, LLC, Emily Jeffcott of The Lambert Firm, PLC, Gerald Meunier and Walter Morrison of Gainsburgh Benjamin, Fred Longer of Levin Sedran & Berman, and Neil Overholtz of Aylstock, Witkin, Kreis & Overholtz, PLLC.

    b. For the Defendants: Lyn Pruitt of Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C., Walter T. Johnson of Watkins & Eager, P.L.L.C., Steven Glickstein of Arnold & Porter Kaye Scholer, LLP, and John Olinde of Chaffe McCall, LLP for Bayer; and Richard Sarver, Barrasso, Usdin, Kupperman, Freeman & Sarver LLC and Susan M. Sharko and Rodney Hudson of Drinker Biddle for Janssen.

3. Description of the parties:

    The parties have stipulated and agreed that the parties remaining for trial include: Plaintiff Dora Mingo; and Defendants Bayer HealthCare Pharmaceuticals, Inc., Bayer Pharma AG, Janssen Pharmaceuticals, Inc. and Janssen Research & Development, LLC.  *See* Section 5 below regarding Stipulations.

4. List/description of any motions pending or completed and any special issues appropriate for determination in advance of trial.

    The parties have stipulated and agreed that all motions *in limine* and all memoranda in support, in opposition and in reply that previously were filed in *Boudreaux* and *Orr* are considered filed in *Mingo*.  The parties reserve their rights and objections as set forth in the motions *in limine* and oppositions filed in *Boudreaux* and *Orr*, which are specifically enumerated in the Joint Stipulation.  The parties further stipulate and agree that the Court's Order and Reasons dated April 18, 2017 [Doc. 6254]  and the Court's Order and Reasons dated May 26, 2017 [Doc. 6645]on the motions *in limine* enumerated in the Joint Stipulation shall apply to the *Mingo* trial and reserve their rights to request that the Court clarify and/or reconsider its prior *in limine* rulings set forth in the Court's Orders and Reasons [Docs. 6254 and 6645] as may be appropriate prior to or during trial, and to submit any offers of proof as necessary for appeal.  *See* Section 5 below regarding Stipulations.

    Pending motions filed separately in the *Mingo* case are as follows:

| Party filing | Motion type | Docket Number | Title |
|---|---|---|---|
| Defendants | MSJ-Mingo and Henry | 6739 | Defendants' Motion for Partial Summary Judgment on Punitive Damages (Janssen) |
| Defendants | MSJ-Mingo and Henry | 6758 | Bayer Defendants' Motion for Partial Summary Judgment on Plaintiffs' Punitive-Damages Demands |
| Defendants-Joint | MSJ | 6742 | Defendants' Joint Motion for Partial Summary Judgment Based on the Learned-Intermediary Doctrine |
| Defendants-Joint | MSJ | 6745 | Defendants' Joint Motion for Partial Summary Judgment on the Ground that Federal Law Preempts Plaintiffs' Design-Defect Claim |
| Defendants-Joint | MSJ | 6746 | Defendants' Joint Motion for Partial Summary Judgment on Plaintiffs' Non-MPLA Claims |
| Defendants-Joint | MSJ | 6749 | Defendants' Joint Motion for Partial Summary Judgment on the Ground that |

| Party filing | Motion type | Docket Number | Title |
|---|---|---|---|
| | | | Federal Law Preempts Plaintiffs' Failure-to-Warn Claim |
| Defendants-Joint | MSJ | 6753 | Defendants' Joint Motion for Partial Summary Judgment on State-Law Grounds as to Plaintiffs' Design-Defect Claim |
| Defendants-Joint | *Daubert* | 6740 | Defendants' Joint Renewed Daubert Motion to Exclude Expert Opinions and Testimony Regarding Unapproved Dosing and Monitoring Regimens |
| Defendants-Joint | *Daubert* | 6820 | Defendants' Joint *Daubert* Motion to Exclude Opinions and Testimony of Plaintiffs' Case-Specific Expert Dr. Henry Rinder |
| Defendants-Joint | *Motion in Limine* | 7052 | Motion in *Limine* to Exclude Evidence of Foreign Labeling and Regulatory Actions Under Federal Rules of Evidence 402 and 403 |
| Defendants-Joint | *Motion in Limine* | 7053 | Defendants' Motion in *Limine* No. 4 Regarding the Record 4 Clinical Trial and SEIFE 2015 |
| Defendants-Joint | *Motion in Limine* | 7054 | Defendants' Joint Motion in *Limine* to Exclude Argument or Evidence Regarding the Lack of a Reversal Agent for Xarelto |
| Defendants-Joint | *Motion in Limine* | 7056 | Defendants' Joint Motion in *Limine* to Exclude Argument that Plaintiff Used "Bayer Aspirin" |
| Defendants-Joint | *Motion in Limine* | 7058 | Defendants' Joint Motion in *Limine* to Exclude Argument or Evidence Regarding Unapproved Dosing |
| Defendants-Joint | *Motion in Limine* | 7072 | Defendants' Joint Motion in *Limine* to Exclude Dr. Smart's Testimony Alleging That Xarelto is "Worst in Class." |
| Defendants-Joint | *Motion in Limine* | 7074 | Defendants' Joint Motion in *Limine* to Exclude Evidence or Argument That the Xarelto Label Should Have Included Information About INRation Device Used in ROCKET AF or the U.S. Subgroup Data from ROCKET AF |

3

| Party filing | Motion type | Docket Number | Title |
|---|---|---|---|
| Defendants-Joint | *Motion in Limine* | 7076 | Defendants' Joint Motion in *Limine* to Exclude Dora Mingo's Hearsay Testimony |
| Defendants-Joint | *Motion in Limine* | 7078 | Defendants' Joint Motion in *Limine* to Exclude Lost Wages |
| Plaintiff | *Motion in Limine* | 7059 | Motion in *Limine* to Prohibit Objectively False Testimony That PT Neoplastin Is Not Useful, Does Not Work, or That Having Such a Warning in the Xarelto Label Would Be Reckless, Inappropriate or Dangerous |
| Plaintiff | *Motion in Limine* | 7069 | Plaintiffs' Motion in *Limine* to Exclude "Strikethrough" Exhibits and Related Testimony |

5. Stipulations: The same Joint Stipulations which were presented to and entered by the Court in the *Orr* case, will be presented by the parties in this matter for consideration. These include:

    a. Joint Stipulation specifying the causes of action and issues for trial;
    b. Joint Stipulation identifying the Defendants and addressing the Verdict Form;
    c. Joint Stipulation [Rec. Doc. 7082] specifying agreements on matters not requiring Motions in *Limine*; and
    d. Joint Stipulation [Rec. Doc. 7079] incorporating herein the parties' briefing and the Court's rulings on Motions in *Limine* in the *Boudreaux* and *Orr* cases.
    e. Joint Stipulation that Motions in *Limine* regarding punitive damages are reserved until ruling on motions for summary judgment regarding punitive damages.

6. Statement of the Case:

    A. Plaintiffs' Statement:

    Plaintiff Dora Mingo alleges that the Defendant manufacturers of Xarelto are liable for damage under the Mississippi Product Liability Act (MPLA). Plaintiff claims that Xarelto possessed one or more characteristics which made Xarelto unreasonably dangerous for its anticipated use. These characteristics include Xarelto's clinically significant degree of interpatient variability in drug absorption, and the withholding of information from doctors about simple laboratory testing to assess Xarelto's concentration and anticoagulant effect in a patient's blood.

    Plaintiff claims that Defendants failed to provide adequate instructions for the safe use of Xarelto, and that adequate instructions as to the safe use of Xarelto would have

4

allowed Plaintiff's physician, or a reasonable physician in the same circumstance, to take steps to avoid the harm Ms. Mingo suffered as a result of Xarelto.

Plaintiff Dora Mingo underwent a right total hip replacement surgery on January 6, 2015. On January 22, 2015, Ms. Mingo was diagnosed with a deep vein thrombosis, or "DVT", in her right lower leg. Dr. Renie Jordon prescribed Xarelto for the treatment of Ms. Mingo's DVT. In accordance with Xarelto's product label, Dr. Jordon instructed Ms. Mingo to take Xarelto 15 mg twice-daily for 21 days, then take Xarelto 20 mg once-daily thereafter. On the morning of January 23, 2015, Ms. Mingo's prothrombin time ("PT") was within normal range at 12.5 (reference range: 12.1-15.2). That same morning, after her normal PT measurement, Ms. Mingo took her first dose of Xarelto, and she took her second dose on the evening of January 23, 2015. The next morning (January 24, 2015), a PT test performed approximately 10 hours after her Xarelto dose the night before revealed a PT of 23.6 (reference range 12.1-15.2). Ms. Mingo was discharged from the hospital on January 24, 2015, and she continued taking Xarelto 15 mg twice-daily as instructed.

On February 13, 2015, Ms. Mingo presented to the emergency room and was diagnosed with severe anemia and an acute upper gastrointestinal bleed. Upon admission, her PT was 26.2 (reference range 12.1-15.2). She was admitted to the intensive care unit, transfused with four units of packed red blood cells and two units of fresh frozen plasma, and underwent an Esophagogastroduodenoscopy ("EGD"). The EGD revealed a 6mm oozing ulcer of the fundus. The bleeding ulcer was ablated with Argon Plasma Coagulation and placement of a hemoclip for hemostasis. Ms. Mingo remained in the ICU for two more days, until February 15, 2015.

Plaintiff alleges that Defendants failed to adequately instruct Dr. Renie Jordon regarding the need to evaluate a patient's exposure to Xarelto, to assess the corresponding anticoagulant effect, and to identify patients with significantly increased risk of bleeding on Xarelto due to Xarelto's clinically significant inter-patient variability. Further, Plaintiff contends that Defendants failed to instruct physicians, including Dr. Jordon, regarding the availability and helpfulness of standard laboratory tests to perform that assessment.

Standard laboratory testing (Neoplastine PT) was performed during Ms. Mingo's treatment with Xarelto. However, Plaintiff contends that Defendants failed to instruct Dr. Jordon regarding the meaning and helpfulness of that test to patients on Xarelto. Specifically, Plaintiff contends that Defendants failed to instruct Dr. Jordon that standard laboratory testing can be used to assess a patient's exposure to Xarelto after initiation and identify patients at a significantly increased risk of bleeding. Plaintiff not only alleges that Defendants failed to instruct Dr. Jordon about the helpfulness and usefulness of standard laboratory testing for patients on Xarelto, but also contend that Defendants affirmatively misled doctors like Dr. Jordon to believe that it was neither necessary nor possible to assess a patient's exposure to Xarelto by standard laboratory testing.

5

Dr. Jordon, relying on Xarelto's product label and other information disseminated by Defendants, was under the false impression that there was no test to assess Xarelto concentration and/or Xarelto's anticoagulant effect on a patient's blood. Plaintiff contends that Dr. Jordon, or a reasonable physician under the same circumstances, would have followed instructions to conduct laboratory testing to measure Xarelto's effect on Ms. Mingo's blood. Had Defendants adequately instructed Dr. Jordon on the use of standard laboratory testing to assess Xarelto exposure and bleed risk, Ms. Mingo's elevated PT measurements would have altered Dr. Jordon's treatment of Ms. Mingo, in that he would have changed her dosage or discontinued Xarelto after just one day on the drug. Thus, adequate instructions would have more likely than not allowed Dr. Jordon to alter his treatment of Ms. Mingo in a manner to avoid Ms. Mingo's injuries.

Plaintiff seeks compensatory damages for medical expenses, pain and suffering, and emotional distress. Additionally, Plaintiff seeks punitive damages against Defendants because of Defendants' willful, wanton, and reckless disregard for the safety of patients taking Xarelto.

B. Defendants' Statement:

Xarelto is in a class of medications known as novel oral anticoagulants ("NOACs") and was approved by the United States Food and Drug Administration ("FDA") for various indications, including the use for which Ms. Mingo used Xarelto – the treatment of venous thromboembolism and pulmonary embolism. The FDA-approved label contains accurate, science-based information enabling doctors to make informed decisions about the benefits and risks of prescribing this medication to their patients.

Defendants Bayer HealthCare Pharmaceuticals, Inc., Bayer Pharma AG, Janssen Pharmaceuticals, Inc. and Janssen Research & Development, LLC deny Plaintiff's allegations that Defendants are liable for damages under the Mississippi Products Liability Act. Defendants contend that Xarelto's warnings to Ms. Mingo's prescribing physician, Dr. Renie Jordon, were adequate and that any alleged inadequacy in the warning did not cause Ms. Mingo's injury. Defendants further contend that Xarelto's design was not defectively designed due to lack of an anti-Factor Xa assay, and that there is no sound scientific basis for the claim that prothrombin time testing can be used to predict the risk of bleeding in patients on Xarelto.

On January 6, 2015, Plaintiff Dora Mingo underwent total hip replacement surgery. Following that surgery, she was anti-coagulated with Lovenox followed by aspirin to prevent a deep vein thrombosis. Five days after completing the prescribed 10 days of Lovenox and while on a 325mg dose of aspirin, on January 22, 2015, Ms. Mingo was diagnosed with a deep vein thrombosis. She was treated with a loading dose of Coumadin and Lovenox, and then on January 23, 2015, Dr. Jordon prescribed Xarelto to treat the blood clot she had. He gave Ms. Mingo a 15

milligram dose of Xarelto twice daily for three weeks followed by 20 milligrams once daily. Dr. Jordon testified unequivocally that Xarelto's label properly warned him of all relevant risks associated with the medication; that he was aware of these risks at the time he prescribed the medical to Ms. Mingo; and that he told Ms. Mingo about these risks.

On February 13, 2015, Plaintiff Dora Mingo was diagnosed with an oozing gastric ulcer caused by her long-term use of aspirin.

The evidence demonstrates that the GI bleed Ms. Mingo was hospitalized for on February 13, 2015, did not result from her use of Xarelto, but rather from an oozing gastric ulcer.

Under Mississippi law, Defendants' duty to warn is satisfied when the prescribing physician is informed of any potential side effects or risks of the drug's use so that he or she may intelligently decide on its use and advise the patient. Where the prescribing physician has adequate information to make an informed prescribing decision, the Defendants cannot be liable. Here the label warned clearly of the precise adverse event that Ms. Mingo had – bleeding. As such under Mississippi law, the label is adequate as a matter of law.

Defendants further dispute that Xarelto was designed in a defective manner because it was not marketed with an anti-Factor Xa assay. An anti-Factor Xa assay measures Xarelto concentration in a patient's blood. No Xarelto-specific anti-Factor Xa assay is approved by the FDA in the U.S. for use with Xarelto, and no such assay is commercially available in this country for that purpose. It is a separate product rather than a feasible alternative design, and at the time FDA approved Xarelto, the assay was not (and still is not) FDA-approved.

It is undisputed that Ms. Mingo needed to be on an anticoagulant medication due to her development of blood clots in her leg following hip-replacement surgery to prevent a pulmonary embolism. Ms. Mingo's prescribing physician, Dr. Jordon, has testified that Xarelto's label properly warned of all relevant risks associated with the medication, including the risk of "serious or fatal bleeding".

Plaintiff cannot prove by a preponderance of the evidence that Xarelto was the medical cause-in-fact of Ms. Mingo's GI bleed. It is undisputed that Ms. Mingo was diagnosed with an oozing peptic ulcer that was the source of her GI bleed. Further, Ms. Mingo was taking aspirin at the time of the GI bleed, which can cause the development of a peptic ulcer and GI bleeding on its own. Ms. Mingo's treating physician, Dr. Keith, testified that aspirin use likely caused Ms. Mingo's ulcer. Further, Ms. Mingo's age, underlying medical condition, and smoking history put her at an increased her risk of a GI bleed. Both parties' experts agree that the same GI bleed could have occurred with any anticoagulant or no anticoagulant, and in light of that fact and Ms. Mingo's aspirin use, peptic ulcer, and other health-related

7

risk factors, Plaintiff cannot prove that, but for Ms. Mingo's Xarelto use, she would have not experienced the bleed.

Defendants deny that there was a test available to Dr. Jordon to assess Ms. Mingo's coagulation status or bleeding risk.  Because the FDA has not approved or cleared a rivaroxaban-calibrated anti-factor Xa assay, such a test is not commercially available in the United States for physicians to use in a clinical setting.  In addition, no PT test is FDA approved for use with Xarelto, and a PT test cannot provide clinically significant information regarding Xarelto patients' bleeding risk.

Plaintiff is seeking punitive damages in this case.  Plaintiff's punitive-damages demand is governed by the law of either New Jersey or Germany, and thus Plaintiff is not entitled to punitive damages because neither state allows punitive damages in a case such as this one.  Defendants deny liability for any damages allegedly suffered by Plaintiff, including any punitive damages, which Plaintiff cannot prove as a matter of law in any event.

7. A list and description of the exhibits that each party intends to introduce at the trial.

   a. Pursuant to CMO 2I, the parties exchanged Exhibit Lists on July 10, 2017, and supplements to their Exhibit Lists are due on July 21, 2017.  The parties exchanged exhibit images on July 14, 2017.   The parties intend on submitting images of exhibits to the Court on August 3, 2017.

   b. The parties may in good faith supplement the Exhibit List with additional documents as necessary and shall provide any supplement list of exhibits to the opposing party as soon as the party can reasonably provide.  Further, Plaintiffs shall be entitled to supplement the Exhibit List after the deposition of Dr. Anthonie Lensing taking place in Amsterdam on July 24th with documents relevant to the testimony in that deposition.

   c. Each party shall submit to the Court, prior to the start of the trial, a hard copy of their respective Exhibit Lists.  Further, the parties will provide at trial a hard copy of each trial exhibit marked with appropriate trial exhibit identification numbers.

   d. The parties recognize that they have listed more exhibits on their Exhibit Lists than they are likely to use at trial and, therefore, have agreed to the following protocol to govern how to raise exhibit objections before and during trial of the *Mingo* case.

   e. <u>Protocol for Resolving Exhibit Objections During Trial</u>:  The parties shall disclose exhibits to be used on direct examination by 8:30 a.m. on the day preceding the use of those exhibits.  After exchange of exhibits, the parties will meet and confer in an attempt to resolve any objections to the use of such exhibits on direct examination.  Any exhibits with outstanding objections will be brought to the Court's attention at the start of the day the following morning (i.e., the day the exhibits are to be used).  The disclosures under this protocol are subject to good faith supplementation by

      the parties if necessary. Objections to exhibits used on cross examination will be raised contemporaneously.

8. Deposition testimony that each party intends to offer into evidence at trial.

   a. The parties have agreed upon protocols for resolving objections to deposition designations prior to trial and during trial.

   b. <u>Protocol for Resolving Objections to Deposition Designations Prior to Trial</u>: The parties have agreed to a pre-trial protocol for the exchange of designated deposition testimony before trial, beginning on July 3, 2017. Under said protocol, each party could serve on the other party deposition designations of up to five (5) witnesses per week and no more than three (3) witnesses per day. The parties agreed to exchange responses and counter-responses on a pre-determined schedule, so that a final designation, with all objections and responses, and exhibits with objections and responses, could be provided to the Court. The parties continue to work together in an effort to finalize any additional designations as expeditiously as possible. The protocol covers both designations served prior to the start of trial, and during trial.

   c. <u>Protocol for Resolving Objections to Deposition Designations During Trial</u>: The parties have agreed to a similar protocol for trial, whereby any designations must be served on the opposing party at least 4 days prior to the day the deposition testimony is intended to be played or read to the jury, with responses and counter-responses due so that a final designation, with all objections and responses, and exhibits with objections and responses could be provided to the Court at least two days prior to its intended use at trial.

   d. The party proposing the designations will be responsible for cutting the video consistent with the parties' agreement and the Court's rulings. The opposing party will be entitled to review the cut video in its entirety before it is played in Court.

   e. This protocol would apply to depositions read or played into the record independently and would not apply to clips of depositions used during closing or the examination of a witness. In opening statements, parties shall not play clips of video depositions, but may reference deposition testimony in accordance with the directives of the Court.

   f. The parties have also agreed to read a short and agreed upon statement before each video deposition is played to identify for the jury the person who will be testifying.

9. Witness lists:

   a. Pursuant to CMO 2I, the parties exchanged Witness Lists on July 7, 2017.

    b. The parties have agreed that each party will provide at least 24 hours' notice of witnesses to be called and stamped exhibits to be used on direct examination (i.e., 8:30 a.m. Monday disclosure of witnesses and documents to be used on direct examination on Tuesday), except that disclosures of witnesses and documents to be used on direct examination on Monday shall be made by 8:30 am on Saturday.

    c. Undersigned counsel for all parties certify that they have exchanged expert reports in accordance with the Federal Rules of Civil Procedure and prior court orders. Undersigned counsel for all parties further certify they understand that experts whose reports have not been furnished to opposing counsel shall not be permitted to testify, nor shall experts be permitted to testify to opinions not included in the reports timely furnished.

10. This case is set to be heard before a jury.

    a. Pursuant to CMO 2I, the parties submitted a jury questionnaire on June 27 2017. The parties received responses to the questionnaires by prospective jurors on July 14, 2017. The parties will meet with the Court on July 21, 2017, where it is expected that the Court may strike potential jurors for hardship or cause.

    b. The case will be heard by nine jurors. There will be no alternates. All jurors will deliberate, and if any jurors need to be excused, there will be a minimum of six jurors remaining to deliberate.

    c. The Court will question prospective jurors first, and each party will have the opportunity to conduct voir dire.

    d. The parties will be submitting proposed jury instructions on July 28, 2017. Jury Instructions and the Verdict Form will be addressed further as the *Mingo* trial progresses.

    e. Per the Court's request, the parties may jointly submit an agreed-upon, proposed statement of the case, to be read to the jury at the outset of the trial. The Court will only read this statement to the jury if the parties reach agreement on the content.

11. The issue of liability will not be tried separately from that of quantum.

12. Trial shall begin on August 7, 2017 at 8:30 a.m. The parties estimate the trial will require approximately two to three weeks.

13. This pre-trial order has been formulated after conference at which counsel for the respective parties have met and conferred. Reasonable opportunity has been afforded counsel for corrections, or additions, prior to signing. Hereafter, this order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of the court to prevent manifest injustice.

Respectfully Submitted,

/s/ Leonard A. Davis
Leonard A. Davis (Bar No. 14190)
ldavis@hhklawfirm.com
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue
New Orleans, LA  70113
PH:  (504) 581-4892
FAX: (504) 561-6024
**Co-Plaintiffs' Liaison Counsel**

/s/ Gerald E. Meunier
Gerald E. Meunier (Bar No. 9471)
gmeunier@gainsben.com
GAINSBURGH BENJAMIN DAVID MEUNIER
& WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA  70163-2800
PH:  (504) 522-2304
FAX: (504) 528-9973
**Co-Plaintiffs' Liaison Counsel**

BARRASSO USDIN KUPPERMAN FREEMAN &
SARVER, L.L.C.

BY: /s/ *Richard E. Sarver*
Richard E. Sarver
Celeste R. Coco-Ewing
BARRASSO USDIN KUPPERMAN FREEMAN &
SARVER, L.L.C.
909 Poydras Street, 24th Floor
New Orleans, Louisiana  70112
Telephone:  (504) 589-9700
rsarver@barrassousdin.com
ccoco-ewing@barrassousdin.com

MITCHELL, WILLIAMS, SELIG, GATES &
WOODYARD, P.L.L.C

By: /s/ *Lyn P. Pruitt*
Adria W. Conklin
Benjamin D. Brenner
Mary Catherine Way
MITCHELL, WILLIAMS, SELIG, GATES &
WOODYARD, P.L.L.C
425 West Capitol Ave., Suite 1800
Little Rock, AR 72201
Telephone: (501) 688-8800
lpruitt@mwlaw.com
aconklin@mwlaw.com
bbrenner@mwlaw.com
mway@mwlaw.com

DRINKER BIDDLE & REATH LLP

By: /s/ *Susan M. Sharko*
Susan M. Sharko
DRINKER BIDDLE & REATH LLP
600 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
susan.sharko@dbr.com

Rodney M. Hudson
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
Telephone: (415) 591-7500
Rodney.hudson@dbr.com

Chanda A. Miller
DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2700
Chanda.Miller@dbr.com

IRWIN FRITCHIE URQUHART & MOORE LLC

By: /s/ *James B. Irwin*
James B. Irwin
Kim E. Moore
IRWIN FRITCHIE URQUHART & MOORE LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
jirwin@irwinllc.com

**Attorneys for Defendants Janssen Pharmaceuticals, Inc. and Janssen Research & Development, LLC**

WATKINS & EAGER PLLC

By: */s/ Walter T. Johnson*
Walter Johnson
WATKINS & EAGER PLLC
The Emporium Building
400 East Capitol Street
Jackson, Mississippi 39201
Telephone:  (601) 965-1846
wjohnson@watkinseager.com

ARNOLD & PORTER KAYE SCHOLER LLP

By: /s/ *Andrew K. Solow*
Andrew K. Solow
Steven Glickstein
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8485
andrew.solow@apks.com
steven.glickstein@apks.com

William Hoffman
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
william.hoffman@apks.com

BRADLEY ARANT BOULT CUMMINGS LLP

By: */s/ Kevin C. Newsom*
Kevin C. Newsom
Lindsey C Boney IV
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place, 1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8803
knewsom@bradley.com
lboney@bradley.com

        CHAFFE MCCALL L.L.P.
        By: /s/ *John F. Olinde*
        John F. Olinde
        CHAFFE MCCALL L.L.P.
        1100 Poydras Street, Suite 2300
        New Orleans, LA 70163
        Telephone: (504) 585-7241
        olinde@chaffe.com

        **Attorneys for Bayer HealthCare**
        **Pharmaceuticals Inc. and Bayer Pharma AG**