1                  UNITED STATES DISTRICT COURT

2                EASTERN DISTRICT OF LOUISIANA

3    **********************************************************

4
    IN RE:  XARELTO

5    (RIVAROXABAN) PRODUCTS
    LIABILITY LITIGATION

6
                          CIVIL ACTION NO. 14-MD-2592

7                          SECTION "L"
                          NEW ORLEANS, LOUISIANA

8                          MONDAY, MAY 1, 2017

9    THIS DOCUMENT RELATES TO:
    *Joseph J. Boudreaux, Jr.*

10   *V. Janssen Research &*
    *Development, et. al.,*

11   Case No.:  14-CV-2720

12   **********************************************************

13
             VOLUME VI - AFTERNOON SESSION

14       TRANSCRIPT OF BELLWETHER JURY TRIAL PROCEEDINGS
       HEARD BEFORE THE HONORABLE ELDON E. FALLON

15           UNITED STATES DISTRICT JUDGE

16
    APPEARANCES:

17

18   FOR THE PLAINTIFFS'
    LIAISON COUNSEL:          LEVIN PAPANTONIO THOMAS MITCHELL

19                        RAFFERTY & PROCTOR
                        BY:  BRIAN H. BARR, ESQ.

20                        316 SOUTH BAYLEN STREET, SUITE 600
                        PENSACOLA, FLORIDA 32502

21

22
                        BEASLEY ALLEN CROW METHVIN

23                        PORTIS & MILES
                        BY:  ANTHONY BIRCHFIELD JR., ESQ.

24                        POST OFFICE BOX 4160
                        MONTGOMERY, ALABAMA  36103

25

                    ***OFFICIAL TRANSCRIPT***

1    APPEARANCES CONTINUED:

2

3                                    GAINSBURGH BENJAMIN DAVID
                                     MEUNIER AND WARSHAUER
4                                    BY:  GERALD E. MEUNIER, ESQ.
                                     2800 ENERGY CENTRE
5                                    1100 POYDRAS STREET, SUITE 2800
                                     NEW ORLEANS, LOUISIANA  70163

6

7                                    SCHLICHTER BOGARD & DENTON
8                                    BY:  ROGER DENTON, ESQ.
                                     100 S. 4TH STREET, SUITE 1200
9                                    ST. LOUIS, MISSOURI  63102

10

11                                   LAMBERT FIRM
                                     BY:  EMILY JEFFCOTT, ESQ.
12                                   701 MAGAZINE STREET
                                     NEW ORLEANS, LOUISIANA  70130

13

14
     FOR THE DEFENDANT BAYER
15   HEALTHCARE PHARMACEUTICALS
     INC. And BAYER PHARMA AG:  WILKINSON WALSH & ESKOVITZ, LLP
16                               BY:  BETH A. WILKINSON, ESQ.
                                 1900 M STREET NW, SUITE 800
17                               WASHINGTON, DC  20036

18

19                                   NELSON MULLINS RILEY
                                     & SCARBOROUGH, LLP
20                                   BY:  DAVID E. DUKES, ESQ.
                                     MERIDIAN, 17TH FLOOR
21                                   1320 MAIN STREET
                                     COLUMBIA, SOUTH CAROLINA  29201

22

23

24

25

                         *OFFICIAL TRANSCRIPT*

```
 1    APPEARANCES CONTINUED:

 2

 3    FOR JANSSEN PHARMACEUTICALS,
      INC. AND JANSSEN RESEARCH &
 4    DEVELOPMENT, LLC:           BARRASSO USDIN KUPPERMAN FREEMAN
                                  & SARVER, LLC
 5                                BY:  RICHARD E. SARVER, ESQ.
                                  909 POYDRAS STREET, 24TH FLOOR
 6                                NEW ORLEANS, LOUISIANA  70112

 7

 8

 9    OFFICIAL COURT REPORTER:    CATHY PEPPER, CRR, RMR, CCR
                                  CERTIFIED REALTIME REPORTER
10                                REGISTERED MERIT REPORTER
                                  500 POYDRAS STREET, ROOM HB-275
11                                NEW ORLEANS, LOUISIANA  70130
                                  (504) 589-7779
12                                Cathy_Pepper@laed.uscourts.gov

13

14    PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT
      PRODUCED BY COMPUTER.

15

16

17

18

19

20

21

22

23

24

25
```

*OFFICIAL TRANSCRIPT*

01:21:33 1   don't know what other factors come into play.

01:21:36 2        But what I am getting at is it does not help me

01:21:40 3   predict bleeding, nor even your outcome from those bleeds.

01:21:44 4   Q.   There is a lot of literature out there that disagrees with

01:21:48 5   you, right, Doctor?

01:21:49 6   A.   I actually don't feel there is a lot of literature out

01:21:51 7   there that disagrees with me.

01:21:52 8   Q.   Well, how about the very literature your counsel showed

01:21:56 9   you, the Eikelboom article.

01:21:59 10       This is the article that your lawyer just put in

01:22:12 11   front of you, right?

01:22:14 12   A.   Yes, it is.

01:22:14 13   Q.   It says right on here, in the ROCKET-AF trial -- that's

01:22:17 14   what we're here about -- the PT was linearly correlated with

01:22:23 15   Rivaroxaban levels.  Do you see that?

01:22:25 16   A.   I do see that.

01:22:25 17   Q.   With all agents -- talking about the various NOACs,

01:22:29 18   including Xarelto -- the plasma levels of PT predicted bleeding

01:22:34 19   risks?

01:22:34 20   A.   On an average population, it does.  In a single

01:22:37 21   individual, it does not.

01:22:38 22   Q.   Just like INR and warfarin, we have to look at the

01:22:43 23   statistics in the population.  You've got to keep your warfarin

01:22:47 24   control within two to three, right?

01:22:48 25   A.   So, unfortunately, it doesn't work that way with warfarin.

*OFFICIAL TRANSCRIPT*

01:40:11 1    Q.    How many of the Bayer lawyers have you met and Janssen
01:40:17 2    lawyers have you met?
01:40:19 3    A.    I don't know, sir.
01:40:20 4    Q.    Well, there was three or four at your first deposition,
01:40:26 5    correct?
01:40:27 6    A.    It was in November.  I don't remember how many were there.
01:40:29 7    I'm sorry.
01:40:29 8    Q.    Okay.  But it was more than one or two.
01:40:32 9    A.    Okay.
01:40:33 10   Q.    And then in your January deposition about Mr. Boudreaux,
01:40:36 11   there was more than that, right?
01:40:37 12   A.    Again, I don't remember.  I'm sorry.
01:40:40 13   Q.    Don't be sorry.  I'm just trying to get the facts.
01:40:42 14          So let's go back to your literature search.  I want
01:40:45 15   to show you an article, record 5767884.  I'll provide you a
01:40:53 16   copy.
01:41:14 17   A.    Thank you, sir.
01:41:15 18   Q.    You're welcome.
01:41:16 19          I'm interested about this article based on your last
01:41:19 20   answer.  Let's go to page 7.
01:41:20 21          Can we call that up, please?
01:41:29 22          Down here at the bottom, it's talking about *Recent*
01:41:36 23   *guidelines and recommendations for laboratory assessment of*
01:41:41 24   *DOACs*, right?  That would include Xarelto.
01:41:42 25   A.    Yes, sir.

***OFFICIAL TRANSCRIPT***

01:41:43  1  Q.   And what they report in this article:

01:41:45  2        "To provide a comprehensive picture of national and

01:41:48  3  international guidelines on...routine measurement of DOACs, we

01:41:53  4  performed a systematic search using...three mostly accessed

01:41:58  5  scientific databases, MEDLINE, Scopus, and Web of Science...."

01:42:03  6        Right?

01:42:03  7  A.   Yes, sir.

01:42:04  8  Q.   That's what you did?

01:42:05  9  A.   Yes, sir.

01:42:05  10  Q.   Something like that, right?

01:42:06  11  A.   Yeah.  I mostly used MEDLINE, which is the PubMed.

01:42:08  12  Q.   Okay.  So you used MEDLINE, right?

01:42:09  13  A.   Uh-huh (affirmative response).

01:42:10  14  Q.   Let's go to the next page.  And they even tell us some key

01:42:16  15  words they used, for *guidelines*, *recommendations*, etcetera.

01:42:18  16  It's kind of like a Google search, right, only it's in medical

01:42:21  17  literature?

01:42:22  18  A.   Yes.

01:42:22  19  Q.   All right.  And then they go on to say they retrieved

01:42:30  20  *125...total number of the 135* were excluded for a lot of

01:42:35  21  different reasons, and they finally selected what they thought

01:42:39  22  was representative in Table 3, correct?

01:42:41  23  A.   Correct.

01:42:41  24  Q.   And let's go down to Table 3.  It says, *Summary of*

01:42:51  25  *national and international recommendations regarding urgent and*

***OFFICIAL TRANSCRIPT***

01:42:57 1    *routine assessment of DOACs.*  Do you see that?

01:43:01 2    A.    I do.

01:43:01 3    Q.    And, first of all, there's *Screening*, right?

01:43:01 4    A.    Uh-huh (affirmative response).

01:43:04 5    Q.    That's what we're talking about in this case, screening

01:43:06 6    out the high-risk patients, right?

01:43:08 7    A.    I would have to look at what their definition of screening

01:43:11 8    was again.

01:43:11 9    Q.    And we're talking about anti-Factor Xa drugs.  That would

01:43:17 10   include Xarelto, right?

01:43:18 11   A.    Yes, it would.

01:43:19 12   Q.    And what the national and international recommendation for

01:43:25 13   screening for Factor Xa drugs was PT.  Do you see that?

01:43:29 14   A.    Well, some are non -- some are not applicable, some are

01:43:36 15   PT.

01:43:36 16   Q.    Right.  And let's go back up to the text.  Let's go back

01:43:38 17   to the main article.  Let's go to this text, "Regarding

01:43:45 18   Factor Xa inhibitors, the PT was proposed as a reliable

01:43:50 19   screening test" --

01:43:51 20          Could you please underline *screening test*?

01:43:54 21          -- "in patients taking these drugs in six out of

01:44:00 22   seven guidelines...."

01:44:01 23          These are the international and national guidelines,

01:44:04 24   correct?  That's what this article says.

01:44:04 25   A.    Those are mostly international guidelines, so mostly

*OFFICIAL TRANSCRIPT*

01:44:13 1    guidelines outside of the United States.

01:44:13 2    Q.    So -- but my point is, did you look at this literature?

01:44:20 3    A.    Did I look at this study?  I would have to review and see

01:44:23 4    if I looked at this -- at this opinion paper.

01:44:26 5    Q.    Right.  Because I didn't see it on your list.

01:44:28 6    A.    It may not have been.  I'm happy to look at it now, if you

01:44:31 7    would like me to.

01:44:33 8    Q.    Okay.  Let's look at some of these organizations that are

01:44:35 9    in Table 3.  That's go back to Table 3.

01:44:39 10           ISTH, you know what that is, don't you?

01:44:45 11   International -- do you know what it is?

01:44:49 12   A.    The ISTH, it's another international society.

01:44:49 13   Q.    On thrombosis and haemostasis.

01:44:54 14           MS. WILKINSON:  Your Honor, I'm going to object to

01:44:55 15   relevance in discussing the international.  I thought we were

01:44:58 16   focused on the United States.  This is irrelevant.

01:45:01 17           MR. DENTON:  Why is this irrelevant?

01:45:01 18   EXAMINATION BY MR. DENTON:

01:45:04 19   Q.    Is Xarelto different in Europe than it is here?

01:45:08 20   A.    There are --

01:45:09 21           MS. WILKINSON:  Your Honor, can we go sidebar because

01:45:12 22   the answer is --

01:45:13 23           THE COURT:  Let me see both of you all.

01:45:13 24           (WHEREUPON, at this point in the proceedings, there was

01:45:28 25   a conference held at the bench.)

*OFFICIAL TRANSCRIPT*

01:45:28 1          MS. WILKINSON:  Your Honor, we have not had -- you had

01:45:34 2     ruled generally that the international labels and foreign

01:45:36 3     labels were not admissible subject to some change in the

01:45:38 4     evidence.

01:45:39 5          The problem with introducing international

01:45:42 6     standards is, internationally some countries, their regulatory

01:45:46 7     agents have approved of anti-FXa assays that tend to -- those

01:45:52 8     are not approved here in the United States.  So suggesting that

01:45:54 9     there is a different standard and there is approval would be

01:45:59 10    misleading and prejudicial to the jury.

01:46:01 11         MR. DENTON:  Your Honor, this isn't about labelings.

01:46:04 12    This is about the various societies that Dr. Leissinger

01:46:08 13    testified about, and a lot of the articles that they even cite.

01:46:12 14    They cited foreign articles, too, for the science.  We're

01:46:16 15    talking about the science.  We're not talking about labels.

01:46:18 16         These are professional organizations that have

01:46:23 17    looked at the literature and provided that PT is a reasonable

01:46:27 18    recommendation.  There is also national standards here.  It's

01:46:30 19    just not international.

01:46:34 20         THE COURT:  If it has anything to do with labeling,

01:46:36 21    then it's not going to be admissible because we're talking

01:46:39 22    about labeling in the United States and it's different

01:46:43 23    standards.

01:46:43 24         Now, I don't know, this is the first time I'm

01:46:45 25    seeing this article, but if that is what we're talking about,

*OFFICIAL TRANSCRIPT*

01:46:49 1  let's go to something else.

01:46:49 2       MS. WILKINSON:  Your Honor, it does call out on the

01:46:53 3  same page, page 8 of the document, all these international

01:46:56 4  societies, so they would have different standards.

01:46:58 5       As you can see, it talks about, for example, the

01:47:02 6  Australian Society of Thrombosis and Hemostasis, the British

01:47:07 7  Committee, the Italian Committee for Standardization of

01:47:10 8  Hematological and Laboratory Methods.  All those standards

01:47:13 9  would relate to what the regulatory rules are, and that's why

01:47:16 10  it would be confusing and misleading.

01:47:18 11       THE COURT:  I think this would be confusing.  It's a

01:47:20 12  403, not a 401.

01:47:22 13       MR. DENTON:  I'll move on, Your Honor.

01:47:25 14       THE COURT:  Let's move on to something else.

01:47:25 15       (WHEREUPON, at this point in the proceedings, the bench

01:47:38 16  conference concluded.)

01:47:38 17  EXAMINATION BY MR. DENTON:

01:47:50 18  Q.    Doctor, I forgot to ask, how much are you charging here

01:47:58 19  today for you testimony?

01:48:00 20  A.    I charge about a thousand dollars an hour to be here

01:48:02 21  because I'm missing work.

01:48:04 22  Q.    Okay.  In the materials you reviewed, as I understand it,

01:48:19 23  you have looked at no internal company documents from the drug

01:48:24 24  companies?

01:48:24 25  A.    No, I did not.

*OFFICIAL TRANSCRIPT*

1                       REPORTER'S CERTIFICATE

2

3          I, Cathy Pepper, Certified Realtime Reporter, Registered

4     Merit Reporter, Certified Court Reporter in and for the State

5     of Louisiana, Official Court Reporter for the United States

6     District Court, Eastern District of Louisiana, do hereby

7     certify that the foregoing is a true and correct transcript to

8     the best of my ability and understanding from the record of the

9     proceedings in the above-entitled and numbered matter.

10

11

12                          _s/Cathy Pepper_____

13                          Cathy Pepper, CRR, RMR, CCR
                            Certified Realtime Reporter
14                          Registered Merit Reporter
                            Official Court Reporter
15                          United States District Court
                            Cathy_Pepper@laed.uscourts.gov
16

17

18

19

20

21

22

23

24

25

                         *OFFICIAL TRANSCRIPT*

1    UNITED STATES DISTRICT COURT

2    EASTERN DISTRICT OF LOUISIANA

3    ********************************************************

4    IN RE:  XARELTO
5    (RIVAROXABAN) PRODUCTS
     LIABILITY LITIGATION
6
                              CIVIL ACTION NO. 14-MD-2592
7                             SECTION "L"
                              NEW ORLEANS, LOUISIANA
07:41:16  8                   WEDNESDAY, MAY 3, 2017

9    THIS DOCUMENT RELATES TO:
     *Joseph J. Boudreaux, Jr.*
10   *V. Janssen Research &*
     *Development, et. al.,*
11   Case No.:  14-CV-2720

12   ********************************************************

13
              VOLUME VIII - MORNING AND AFTERNOON SESSION
14        TRANSCRIPT OF BELLWETHER JURY TRIAL PROCEEDINGS
           HEARD BEFORE THE HONORABLE ELDON E. FALLON
15                 UNITED STATES DISTRICT JUDGE

16
     APPEARANCES:
17

18   FOR THE PLAINTIFFS'
     LIAISON COUNSEL:            LEVIN PAPANTONIO THOMAS MITCHELL
19                               RAFFERTY & PROCTOR
                                 BY:  BRIAN H. BARR, ESQ.
20                               316 SOUTH BAYLEN STREET, SUITE 600
                                 PENSACOLA, FLORIDA 32502
21

22
                                 BEASLEY ALLEN CROW METHVIN
23                               PORTIS & MILES
                                 BY:  ANTHONY BIRCHFIELD JR., ESQ.
24                               POST OFFICE BOX 4160
                                 MONTGOMERY, ALABAMA  36103
25

                       ***OFFICIAL TRANSCRIPT***

1    APPEARANCES CONTINUED:

2

3                                    GAINSBURGH BENJAMIN DAVID
                                     MEUNIER AND WARSHAUER
4                                    BY:  GERALD E. MEUNIER, ESQ.
                                     2800 ENERGY CENTRE
5                                    1100 POYDRAS STREET, SUITE 2800
                                     NEW ORLEANS, LOUISIANA  70163
6

7

8                                    SCHLICHTER BOGARD & DENTON
                                     BY:  ROGER DENTON, ESQ.
9                                    100 S. 4TH STREET, SUITE 1200
                                     ST. LOUIS, MISSOURI  63102

10

11                                   LAMBERT FIRM
                                     BY:  EMILY JEFFCOTT, ESQ.
12                                   701 MAGAZINE STREET
                                     NEW ORLEANS, LOUISIANA  70130
13

14
     FOR THE DEFENDANT BAYER
15   HEALTHCARE PHARMACEUTICALS
     INC. And BAYER PHARMA AG:   WILKINSON WALSH & ESKOVITZ, LLP
16                                   BY:  BETH A. WILKINSON, ESQ.
                                     1900 M STREET NW, SUITE 800
17                                   WASHINGTON, DC  20036

18

19                                   NELSON MULLINS RILEY
                                     & SCARBOROUGH, LLP
20                                   BY:  DAVID E. DUKES, ESQ.
                                     MERIDIAN, 17TH FLOOR
21                                   1320 MAIN STREET
                                     COLUMBIA, SOUTH CAROLINA  29201
22

23
                                     BRADLEY ARANT BOULT CUMMINGS
24                                   BY:  KEVIN C. NEWSOM, ESQ.
                                     ONE FEDERAL PLACE
25                                   1819 5TH AVENUE N
                                     BIRMINGHAM, ALABAMA  35203

                        *OFFICIAL TRANSCRIPT*

1    APPEARANCES CONTINUED:

2

3    FOR JANSSEN PHARMACEUTICALS,
     INC. AND JANSSEN RESEARCH &
4    DEVELOPMENT, LLC:          BARRASSO USDIN KUPPERMAN FREEMAN
                                & SARVER, LLC
5                               BY:  RICHARD E. SARVER, ESQ.
                                909 POYDRAS STREET, 24TH FLOOR
6                               NEW ORLEANS, LOUISIANA  70112

7

8    OFFICIAL COURT REPORTER:   CATHY PEPPER, CRR, RMR, CCR
                                CERTIFIED REALTIME REPORTER
9                               REGISTERED MERIT REPORTER
                                500 POYDRAS STREET, ROOM HB-275
10                              NEW ORLEANS, LOUISIANA  70130
                                (504) 589-7779
11                              Cathy_Pepper@laed.uscourts.gov

12

13   PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT
     PRODUCED BY COMPUTER.

14

15

16

17

18

19

20

21

22

23

24

25

*OFFICIAL TRANSCRIPT*

08:08:55  1    more fully and, I'm sure, more artfully stated in the written
08:08:59  2    motion filed on the docket today, we respectfully move
08:09:02  3    Your Honor for judgment as a matter of law pursuant to Rule
08:09:07  4    50(a) of the Federal Rules of Civil Procedure.
08:09:08  5         THE COURT:  I've heard the argument.  I don't need any
08:09:11  6    response.
08:09:11  7              With regard to the federal preemption, I agree
08:09:17  8    with the *Guidry* case and also the *Law Review* articles and
08:09:22  9    discussions subsequent to *Levigne*.
08:09:25 10              The courts conclude that *Levigne* concluded that
08:09:29 11    the drug label may be inadequate under state tort law, even if
08:09:34 12    it has been approved by the FDA.
08:09:36 13              As the court, in *Guidry*, says, this is strong
08:09:40 14    evidence that the FDA is not the end-all, be-all of it.
08:09:44 15              As I see the law developing, there is a
08:09:46 16    difference between the brand name drugs and the other drugs.
08:09:49 17    The other drugs have to put on their label what the brand name
08:09:56 18    has; and, if they don't, then they are violating federal law.
08:10:02 19    But the brand name drugs, the manufacturer has a continuing
08:10:08 20    duty.  They are the captain of the label.  They have a
08:10:14 21    continuing duty to keep it up and put on the label the things
08:10:19 22    that they know, particularly if it's going to be helpful.
08:10:22 23              If it's going to be helpful, they don't even need
08:10:25 24    to run it past the FDA.  They can put it on the label even
08:10:29 25    without that.

                              *OFFICIAL TRANSCRIPT*

08:10:31 1            So federal preemption I don't think is applicable
08:10:37 2   here.  This is a brand name drug, and I don't think federal
08:10:44 3   preemption plays a part.  So I'll deny that aspect of the
08:10:46 4   motion.
08:10:46 5            With regard to the other, I think there is enough
08:10:49 6   evidence that it creates a fact question.  What the defendants
08:10:52 7   knew, what they told the FDA, or what they should have told the
08:10:56 8   FDA, what would have happened had they told the FDA are all
08:11:03 9   questions of fact.
08:11:03 10           With regard to the witness, Dr. Wong, Dr. Wong
08:11:06 11  testified in several areas.  One area may be supportive of the
08:11:12 12  defendants' position, but another area he said he would have
08:11:16 13  followed the label.  What's on the label, he's aware of.  Had
08:11:25 14  he been advised of a test, he would have followed the label.
08:11:27 15  Now, whether the jury believes him or not, that's a question
08:11:29 16  for the jury, and not for the Court.
08:11:31 17           So, for all of those reasons, questions of
08:11:34 18  preemption, questions of fact, I'll deny the motion.
08:11:34 19           Let me hear anything else.
08:11:34 20       MR. NEWSOM:  Thank you, Your Honor.
08:11:42 21           If I may just provide a courtesy copy to your law
08:11:47 22  clerk of the motion that's been filed this morning.
08:11:47 23       THE COURT:  Yes, please do.
08:11:53 24       MR. LONGER:  Good morning, Your Honor.  Now, you get to
08:11:56 25  hear it from the plaintiffs' side.  Fred Longer, on behalf of

*OFFICIAL TRANSCRIPT*

08:24:07  1    citation to a provision in the LPLA itself.  We believe it's

08:24:11  2    relevant law under the evidence presented in this case.

08:24:14  3        THE COURT:  With regard to that, let me just speak on

08:24:17  4    it.  I've touched on that.  I think the jury charge that I've

08:24:22  5    given is sufficient to cover those aspects of the case.  I'll

08:24:27  6    deny the motion.

08:24:28  7        MR. MEUNIER:  Thank you, Judge.

08:24:29  8            In the section of Your Honor's charge dealing

08:24:32  9    with FDA approval and federal regulatory standards -- this

08:24:36 10    begins at page 22 and through page 23 of your charge -- we

08:24:40 11    respectfully object to the failure to include the plaintiffs'

08:24:43 12    proposed jury instruction 18, which is supported both by the by

08:24:50 13    *Wyeth* and by the Code of Federal Regulations, which is imposing

08:24:53 14    a duty on the manufacturer both for the initial drafting of the

08:24:56 15    label and for assuring that labeling continues after the

08:25:00 16    initial draft to reflect current knowledge regarding the risks

08:25:05 17    of a product.

08:25:05 18            We also respectfully object to the failure to

08:25:08 19    include plaintiffs' proposed jury charge number 19, again

08:25:12 20    citing to the CFR provision that instructive information

08:25:16 21    regarding, quote, "any laboratory tests helpful," close quote,

08:25:21 22    in addressing, quote, "possible adverse reactions must" -- and

08:25:28 23    it is mandatory -- "be provided in the warning section of the

08:25:32 24    prescription drug label."

08:25:33 25            In fact, this is a regulation which the jury was

*OFFICIAL TRANSCRIPT*

08:25:40  1    shown during Dr. Kessler's testimony.

08:25:43  2             Finally, we object to the failure to include

08:25:46  3    plaintiffs' proposed jury charge Number 20, which, pursuant to

08:25:48  4    the authorities cited in our instruction, provides that a

08:25:52  5    manufacturer's violation of one or more relevant federal

08:25:55  6    regulations may be considered as relevant in determining

08:25:58  7    whether adequate instructions have been provided by the

08:26:01  8    manufacturer to prescribing physicians.

08:26:03  9             So, Your Honor, in your section dealing generally

08:26:06 10    with the FDA and federal regulations, we have cited to our jury

08:26:11 11    charges 18, 19, and 20, and we respectfully object to those not

08:26:17 12    being included in that section of your charge.

08:26:19 13         THE COURT:  I've taken that up.  22 and 23 of the

08:26:23 14    charge deal with the fact that the FDA approval may be

08:26:28 15    relevant, but it's not, in itself, dispositive of liability.

08:26:34 16             I also take up the fact that whether the FDA did

08:26:36 17    or did not do anything, that that's not sufficient and it's not

08:26:50 18    conclusive.

08:26:52 19             With regard to dealing with specific items of

08:26:55 20    evidence that should be in, I don't think the jury charge

08:26:59 21    should focus on specific items of evidence.  I chose not to do

08:27:03 22    that, but instead speak the law generally and let the jury

08:27:07 23    decide on it.  So I'll deny that motion.

08:27:09 24         MR. MEUNIER:  Your Honor, in this same section of the

08:27:12 25    Court's charge on the FDA and federal regulations, again,

*OFFICIAL TRANSCRIPT*

11:14:24  1    attention.

11:14:24  2            THE COURT:  Members of the Jury, we'll take a 10-minute

11:14:28  3    break, and I'll come back and talk to you about the law.

11:14:31  4                Court will stand in recess.

11:14:32  5            THE DEPUTY CLERK:  All rise.

11:14:33  6            (WHEREUPON, at 11:14 a.m., the jury panel leaves the

11:27:25  7    courtroom, and then a brief recess was taken.)

11:27:25  8            THE DEPUTY CLERK:  All rise.

11:27:38  9            (WHEREUPON, at 11:27 a.m., the jury panel enters the

11:27:54 10    courtroom.)

11:27:54 11            THE COURT:  Be seated, please.

11:27:58 12                            JURY INSTRUCTIONS

11:27:58 13    BY THE COURT:

11:27:57 14            Members of the Jury:

11:27:59 15            You have now heard all of the evidence in the

11:28:01 16    case, as well as the final argument of both sides.  It becomes

11:28:06 17    my duty, therefore, at this time, to instruct you on the rules

11:28:09 18    of law that you must follow and apply in arriving at your

11:28:13 19    decision.

11:28:14 20            I will first give you the general instructions

11:28:17 21    which apply in most every case, and then I will give you some

11:28:21 22    special instructions which are specific to this case.

11:28:24 23            As I mentioned at the outset, in any jury trial,

11:28:30 24    there are, indeed, two judges.  I am one of the judges, and the

11:28:35 25    other is you, the jury.  It is my duty to preside over the

                            *OFFICIAL TRANSCRIPT*

11:28:39 1   trial and to determine what testimony and other evidence is

11:28:42 2   admissible under the law for your consideration.  It is also my

11:28:48 3   duty, at the end of the trial, to instruct you on the law

11:28:50 4   applicable to the case.

11:28:52 5              You, as jurors, however, are the judges of the

11:28:56 6   facts; but, in determining what actually happened in this case,

11:29:00 7   that is, in reaching your decision as to the facts, it is your

11:29:04 8   sworn duty to follow the law as I am now in the process of

11:29:09 9   defining for you, and you must follow my instructions as a

11:29:12 10  whole.  You have no right to disregard or give special

11:29:16 11  attention to any one question or instruction or to question the

11:29:22 12  wisdom or correctness of a rule I may state to you, that is,

11:29:27 13  you must not substitute or follow your own notion or opinion as

11:29:30 14  to what the law is or ought to be.  It is your duty to apply

11:29:37 15  the law as I give it to you, regardless of the consequences.

11:29:39 16             By the same token, it is also your duty to base

11:29:43 17  your verdict solely on the testimony and other evidence in the

11:29:46 18  case, without prejudice and without sympathy.  That was the

11:29:50 19  promise that you made and the oath you took before being

11:29:54 20  accepted by the parties as jurors in this case, and they and

11:29:58 21  the Court have a right to expect nothing less from you.

11:30:03 22             Now, this case should be considered and decided

11:30:05 23  by you as an action between persons of equal standing in the

11:30:09 24  community, of equal worth, and holding the same or similar

11:30:13 25  stations in life.  All persons, all corporations or public

*OFFICIAL TRANSCRIPT*

02:42:17  1        THE JURORS:  Yes.

02:42:18  2        THE COURT:  Does anybody wish the jury to be polled?

02:42:21  3        MR. BIRCHFIELD:  No, Your Honor.

02:42:22  4        MS. WILKINSON:  No, Your Honor.

02:42:23  5        THE COURT:  Okay.  Thank you very much.  We'll make the

02:42:24  6  verdict a part of the record in the case and discharge the jury

02:42:29  7  with the Court's thanks.

02:42:31  8            All rise, please, as the jury leaves.

02:42:34  9        (WHEREUPON, at 2:42 p.m., the jury panel leaves the

02:42:57 10  courtroom.)

02:42:57 11        THE COURT:  As I mentioned, I'll make the verdict a

02:43:00 12  part of the record.  I thank everybody.

02:43:02 13            Court will stand in recess.  Thank you very much.

        14        (WHEREUPON, at 2:43 p.m., the proceedings were

        15  concluded.)

        16                          *    *    *

        17

        18                     REPORTER'S CERTIFICATE

        19        I, Cathy Pepper, Certified Realtime Reporter, Registered
            Merit Reporter, Certified Court Reporter in and for the State
        20  of Louisiana, Official Court Reporter for the United States
            District Court, Eastern District of Louisiana, do hereby
        21  certify that the foregoing is a true and correct transcript to
            the best of my ability and understanding from the record of the
            proceedings in the above-entitled and numbered matter.

        22

        23                     _s/Cathy Pepper_
                               Cathy Pepper, CRR, RMR, CCR
        24                     Official Court Reporter
                               United States District Court
        25                     Cathy_Pepper@laed.uscourts.gov

                          *OFFICIAL  TRANSCRIPT*