UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE ELDON E. FALLON |
| Dora Mingo, et al. v. Janssen Research & Development, LLC et al. | MAGISTRATE NORTH |
| Case No. 2:15-cv-03469 | |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE TO PROHIBIT OBJECTIVELY FALSE TESTIMONY THAT PT NEOPLASTIN IS NOT USEFUL, DOES NOT WORK, OR THAT HAVING SUCH A WARNING IN THE XARELTO LABEL WOULD BE RECKLESS, INAPPROPRIATE OR DANGEROUS**

As demonstrated in the testimony of multiple experts and set forth in a multitude of scientific publications, there is no sound scientific basis that PT testing using Neoplastin or any other reagent can be used to predict the risk of bleeding[1], nor is it a position that Bayer has advocated to the Canadian regulators. *See* Exh. 1, at 5 ("[T]he PT cannot be used to reliably measure the anticoagulant effect of XARELTO since a normal PT may be found in patients with therapeutic XARELTO levels if measured using selected machine/reagent combinations."). In fact, Defendants' experts will testify that there could be significant risks if physicians were to rely on PT testing to make clinical decisions, opinions which are roundly supported by scientific evidence including medical literature. Although Plaintiffs and their experts now present their theory (*i.e.*, that Neoplastin PT can be used to predict bleeding risk for Xarelto users) as gospel,

---

[1] *See, e.g.*, *Boudreaux* Trial Tr. 1239:24–1243:22 (using a PT test with a new Xarelto patient could provide "misleading information" to a physician) (testimony of Colleen Johnson, M.D.); *id.* 1396:2–1397:5 (Neoplastin PT testing "would not" be helpful to identify patients at risk for serious adverse events) (testimony of Scott Boniol, M.D.); *Orr* Trial Tr. 1984:12–17 (including language in label that PT testing can be used to assess the anticoagulation effect of rivaroxaban would be "reckless") (testimony of Sammy Khatib, M.D.); *id.* 2283:3–9 (using PT testing to assess whether "levels of rivaroxaban are clinically significant" is "dangerous") (testimony of Najeeb Thomas, M.D.); *see also supra*, p. 7 (discussing articles).

1

the evidence—and a host of recent, published scientific articles—shows this is not so. Under these circumstances, it would be manifestly unfair and wrong as a matter of law to preclude Defendants from making the arguments at issue.

Apart from being a quasi-*Daubert* motion in *in limine* clothes, Plaintiffs' motion seeks to re-argue and circumvent foreign labeling issues that the Court has already decided. In response to Plaintiffs' similar motion *in limine* prior to the *Orr* trial, the Court explained that while "anything the Defendants have said to anyone, even foreign regulatory bodies, should be admissible," any evidence of "what the Defendants did or what they put on Xarelto's label in other countries in order to comply with foreign regulatory bodies or agencies" is inadmissible and irrelevant. Order & Reasons on *Orr* Mots. *in Limine*, May 26, 2017, at 11–13 (Doc. 6645). And during both the *Boudreaux* and *Orr* trials, the Court recognized that this litigation is about whether Defendants adequately warned U.S. patients, consistent with FDA regulations and requirements, and foreign regulatory standards and guidelines may be different.[2] Plaintiffs now attempt to sidestep these rulings by arguing that they should be allowed to introduce the contents of Xarelto's Canadian label while prohibiting Defendants from responding, and by misleadingly suggesting that the language represents Defendants' position on the science. They should not be allowed to do so.

Plaintiffs' motion *in limine* should be denied.

## ARGUMENT

**I.      Plaintiffs' motion is an attempt to circumvent the Court's foreign labeling ruling.**

The Court has held, with respect to foreign labeling and foreign regulatory action, that

---

[2] *See, e.g.*, *Boudreaux* Trial Tr. 1293:20–23 ("If it has anything to do with labeling, then it's not going to be admissible because we're talking about labeling in the United States and it's different standards."); *Orr* Trial Tr. 1280:9–13 ("Disregard the Canadian label. And the reason for that is that it is a different country. It has different rules, different regulations, different procedures, and different requirements.").

while "anything the Defendants have said to anyone, even foreign regulatory bodies, should be admissible," any evidence of "what the Defendants did or what they put on Xarelto's label in other countries in order to comply with foreign regulatory bodies or agencies" is inadmissible and irrelevant. Doc. 6645, at 11–13.

Plaintiffs now seek to sidestep this ruling by re-characterizing the contents of Xarelto's Canadian label—and isolated out-of-context statements required by foreign regulators to be included in the label—as "inconsistent statements" by Defendants. Pls.' Mot. (Doc. 7059), at 5–6. This attempt to avoid the Court's exclusion of foreign labeling evidence should be rejected. To begin, the evidence Plaintiffs seek to introduce was first requested by Health Canada and is therefore inadmissible under the Court's foreign labeling ruling. But even if those statements were admissible as party statements of Bayer, Defendants would still be entitled to "controvert or explain" them. *Martinez v. Bally's La., Inc.*, 244 F.3d 474, 476–77 (5th Cir. 2001) (explaining that an evidentiary admission "may be controverted or explained by the party who made it"). Accordingly, Fifth Circuit precedent expressly forecloses Plaintiffs' requested relief.

### A. Plaintiffs should not be allowed to introduce evidence of what Defendants did or put on Xarelto's Canadian label in order to comply with requests from Health Canada.

The Court has already explained that "what the Defendants did or what they put on Xarelto's label in other countries in order to comply with foreign regulatory bodies or agencies" and any other foreign labeling evidence, in general, is not admissible. Doc. 6645, at 13. But that is exactly the evidence Plaintiffs now seek to introduce and preclude Defendants from addressing. Plaintiffs' motion makes clear that they intend to claim that Xarelto's U.S. label should say that "measuring PT may be useful to inform clinical decisions in this circumstance." Pls.' Mot. at 3. But this statement, as Plaintiffs expressly acknowledge, "actually came from Bayer's own label in Canada." *Id.* The contents of foreign labels, as the Court has repeatedly explained, are not

3

admissible. Plaintiffs cannot circumvent the Court's prohibition on the admission of foreign labeling evidence by attempting to re-characterize statements in the labels themselves as "inconsistent statements" by Defendants.

At *Orr*, Plaintiffs pointed to the same sentence—*i.e.*, "measuring PT may be useful to inform clinical decisions in this circumstance"—in other correspondence with Canadian regulators, claiming that these were inconsistent statements. This statement, however, originated with Health Canada and is thus within the Court's exclusion of evidence regarding what Defendants did or placed on the Xarelto label at the request of foreign regulatory agencies. This distinction is critical here. In 2013, Health Canada informed Bayer that "[a]s part of a class labelling action to ensure consistency of the Product Monographs (PM) of all Novel Oral Anticoagulants (NOAC), we are requesting the XARELTO PM be updated" with certain information. Doc. 6705, Exh. H. Specifically, Health Canada requested that the label state, among other things, that:

> Although there is no need to monitor anticoagulant effect of XARELTO during routine clinical practice, in certain infrequent situations such as overdosage, acute bleeding, urgent surgery, in cases of suspected non-compliance, or in other unusual circumstances, assessment of the anticoagulant effect of rivaroxaban may be appropriate. *Accordingly, measuring PT using the Neoplastin reagent, or Factor-Xa assay using rivaroxaban-specific calibrators and controls, may be useful to inform clinical decisions in these circumstances.*

*Id.* (emphasis added). In other words, what Plaintiffs call Defendants' "inconsistent statements" are actually statements that the foreign regulator, Health Canada, required Defendants to include in the Canadian label. *See also* Bayer's Motion to Quash 30(b)(6) Deposition (Doc. 6978), at 4–7. Although this language appeared in later documents, including the November 2014 draft correspondence from Bayer that Plaintiffs marked as PX190 in *Orr*, it falls squarely within the Court's ruling that statements "put on Xarelto's label in other countries in order to comply with foreign regulatory bodies or agencies," (Doc. 6645, at 13), are irrelevant to this litigation. To cast

4

this language—which was first requested by foreign regulators—as an affirmative declaration, let alone as an "inconsistent statement," would be inconsistent with the Court's exclusion of evidence as to what Defendants did or added to the Xarelto label to comply with foreign regulators.

> **B. Even if statements first requested by Health Canada are admissible as Defendants' statements under Rule 801(d)(2), Defendants are still entitled to dispute or explain the statements.**

Even if Plaintiffs could introduce repackaged foreign labeling evidence, the Court should still reject their "proposal" that Defendants be "prohibited from abandoning their prior statement." Pls.' Mot. at 5. Plaintiffs say that the Court "should instruct the jury that it is an established fact that the Defendants agree that PT Neoplastin may be useful to inform clinical decisions to assess the anticoagulation effect of Xarelto." *Id.* at 6. But they have cited no authority for this novel proposition, and, in fact, numerous courts have rejected this very argument. *See, e.g.*, *Tolerico v. Home Depot*, 205 F.R.D. 169, 178–79 (M.D. Pa. 2002) (rejecting argument that an admission under Rule 801(d)(2) was conclusively binding and noting that the defendant had "not cited any authority for the novel proposition that an evidentiary admission under Fed. R. Evid. 801(d)(2) precludes a party from taking a contrary position").

It has long been established that a statement, even if admissible under Federal Rule of Evidence 801(d), is not "binding." *Indus. Maritime Carriers, Inc. v. Holnam, Inc.*, No. 90-3290, 1991 WL 34655, at *3 (E.D. La. Mar. 12, 1991). Rather, "other statements admissible under Rule 801(d)(2)" are considered "evidentiary admissions," *LCI Shipholdings, Inc. v. Muller Weingarten AG*, No. Civ.A. 03-1396, 2004 WL 1638108, at *3 (E.D. La. July 19, 2004) (quoting Wright & Miller, Fed. Prac. & Proc. § 7026), which can "be controverted or explained by the party who made [them]," *Martinez*, 244 F.3d at 476–77. Accordingly, even if Defendants' statements were admissible under Rule 801(d)(2), Defendants would nonetheless be "entitled to explain or even

5

retract the statement with the trier of fact to evaluate [it] in light of the retraction."[3]  *See Indus. Maritime Carriers, Inc.*, 1991 WL 34655, at *3; *see also In re McLain*, 516 F.3d 301, 308–09 (5th Cir. 2008); *Johnson v. Big Lots Stores, Inc.*, 2008 WL 6928161, at *3 (E.D. La. May 2, 2008) (explaining that "statements made by a party . . . operate as adverse evidentiary admissions that may be revised later" (citation and internal quotation marks omitted)).

What's more, the Court has already recognized that Defendants may address Plaintiffs' evidence under the rule of completeness.  After Plaintiffs introduced similar testimony in *Orr*, Defendants argued that, "under the rule for completeness," they were entitled "to show the jury another statement that's in that same document that was not shown."  *Orr* Trial Tr. 1689:15–18.  The Court agreed:

> THE COURT: Under 611(c), I'll allow the defendants to do that, which would be under cross, direct, or re-direct on that particular point, and under 106, I think the rest of the document would have a right to go in.

*Id.* 1689:24–1690:2.  Accordingly, Defendants may—consistent with the Court's ruling in *Orr*—explain to the jury what they told Health Canada: "[T]he response of the PT varies both dependent on PT reagent (which is not standardized) and coagulometer.  Thus, the PT *cannot be used to reliably measure the anticoagulant effect of XARELTO* since a normal PT may be found in patients with therapeutic XARELTO levels if measured using selected machine/reagent combinations."  (Exh. 1, at 5. (emphasis added)).

And, importantly, this evidence is not only entirely consistent with what Bayer told Health

---

[3] *Accord First Fin. Bank, N.A. v. Bauknecht*, 71 F. Supp. 3d 819, 831–32 (C.D. Ill. 2014) (party statements that are not "formal concessions in the pleadings, or stipulations by a party or its counsel" are "simply evidentiary admissions, and may thus be admissible evidence under Federal Rule of Evidence 801(d)(2)" but "can later be controverted or explained"); *Guitar Holding Co. v. El Paso Nat'l Gas Co.*, No. EP-10-CV-214-KC, 2010 WL 3338550, at *5 (W.D. Tex. Aug. 18, 2010) (holding that "admissions by a party opponent" are "admissible as evidence" but are not "conclusively binding" and "may be controverted or explained by the party that made them"); *Yee v. UBS O'Connor, LLC*, No. 07 C 7150, 2010 WL 1640192, at *25 (N.D. Ill. Apr. 22, 2010) (holding that a statement admissible under Rule 801(d)(2) "is evidentiary" and "does not bar [the party] from offering contrary evidence").

6

Canada but also with a wide range of recent scientific literature post-dating Bayer's purportedly inconsistent statement. For example, recent published studies have—

- indicated that "none of the general tests of coagulation accurately quantifies the anticoagulant effects of the NOACs" and explain that the use of PT testing to clinically assess whether "to lower[] the dosage, switch[] to an alternative NOAC, or us[e] warfarin therapy . . . is of unproven benefit and may result in net harm." Eikelboom, et al., *Laboratory Monitoring of Non-Vitamin K Antagonist Oral Anticoagulant Use in Patients with Atrial Fibrillation: A Review* (2017) (Exh. 2, at 3–4);

- stated that "[c]linicians must acknowledge that the APTT and PT can no longer be used as a general gauge of a patient's level of anti-coagulation and hence bleeding risk." Adcock & Gosselin, *The danger of relying on the APTT and PT in patients on DOAC therapy, a potential patient safety issue* (2017) (Exh. 3, at 3);

- concluded that "the use of PT or APTT in clinical practice to evaluate DOAC anticoagulant activity could cause dangerous misinterpretations." Testa, et al., *Poor comparability of coagulation screening test with specific measurement in patients receiving direct oral anticoagulants: results from a multicenter/multiplatform study* (2016) (Exh. 4, at 6); and

- recognized that "[g]lobal coagulation tests, such PT and aPTT, are not useful at all and can lead to misinterpretation that could have clinical implications if the result is not fully understood." Douxfils, et al., *Non-VKA Oral Anticoagulants: Accurate Measurement of Plasma Drug Concentrations* (2015) (Exh. 5, at 10).

In fact, **Plaintiffs' own expert, expected to be called to testify in the *Mingo* case,** Dr. Gosselin, co-authored the study that concluded that "PT can no longer be used as a general gauge of a patient's level of anticoagulation and hence bleeding risk" (Exh. 3, at 3). So, Plaintiffs' own expert published this year the very same information that Plaintiffs now seek to prohibit Defendants from explaining to the jury. All of this evidence is relevant to Plaintiffs' claim that Defendants failed to adequately instruct Ms. Mingo's physician about the safe use of Xarelto. Scientific evidence should not be excluded simply because it does not support Plaintiffs' theory.

II. **Plaintiffs' motion is really a *Daubert* Motion, which comes too late and without a legitimate basis.**

Plaintiffs contend that Defendants should not be allowed to argue—and their experts

7

should not be allowed to testify—that PT testing is not useful. Pls.' Mot. at 3–4. But the law is clear that challenges to scientific evidence should be made through a *Daubert* motion. *See In re Chinese Manufactured Drywall Prods. Liab. Litig.*, MDL No. 2047, 2010 WL 8368083, at *3 (E.D. La. Feb. 17, 2010) ("The trial court is the gatekeeper of scientific evidence." (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993))). Plaintiffs have not filed one, and with good reason—numerous peer-reviewed publications discuss the unreliability and danger in using PT testing to inform clinical decision-making regarding Xarelto. Accordingly, a *Daubert* motion seeking to exclude scientific evidence that PT testing is not useful would properly have been denied. *See, e.g.*, *Wagoner v. Exxon Mobil Corp.*, 813 F. Supp. 2d 771, 802–03 (E.D. La. 2011) (Fallon, J.) (explaining that "the basic minimum is that there must be some scientific validation of the theory advanced by the expert"). The fact that this Court denied the Defendants' *Daubert* motion as to the Plaintiffs' theory does not *ipso facto* mean that the Defendants' position on the same issue could not pass *Daubert* scrutiny.

### III. This Court has repeatedly held that evidence of foreign labeling and regulatory actions regarding Xarelto is not admissible.

Plaintiffs' motion is, in fact, nothing more than another attempt to convince the Court to reconsider its rulings that foreign labeling evidence is irrelevant. Pls.' Mot. at 4–6. But as Defendants have explained[4]—and as this Court has repeatedly recognized[5]—foreign regulatory

---

[4] Defs.' Mot. *in Limine* to Exclude Evidence of Foreign Labeling and Regulatory Actions (Doc. 5954); Defs.' Opp. to Pls.' Mot. *in Limine* "To Admit Evidence Of Defendants' Statements Outside The United States That Directly Contradict Their Position That PT Neoplastin Is Not Useful And Does Not Work To Determine The Anticoagulant Activity Of Xarelto (Doc. 6560); Defs.' Mot. to Exclude Admission of Certain Documents Reflecting Communications with Foreign Regulators (Doc. 6705); Defs.' Joint Mot. (1) to Enforce Stipulated Case Management Order and (2) to Quash Untimely 30(b)(6) Deposition Notice to Bayer Defendants (Doc. 6978); Bayer's Reply Mem. in Support of Mot. (1) to Enforce Stipulated Case Management Order and (2) to Quash Untimely 30(b)(6) Deposition Notice to Bayer Defendants (Doc. 7014).

[5] Doc. 6254 (holding that foreign labeling is "likely excludable"); Doc. 6723, at 36 (excluding foreign regulatory evidence as irrelevant and confusing); Doc. 6645, at 11–13 (excluding foreign labeling and regulatory evidence as "irrelevant"); *Boudreaux* Trial Tr. 1293:20–23 (explaining that "anything to do with [foreign] labeling" is "not going to be admissible because we're talking about labeling in the United States and it's different standards"); *Orr* Trial

and foreign labeling evidence does not bear on the adequacy of Xarelto's labeling or design as a matter of U.S. law and FDA's own unique regulatory standards.[6] That point is amply demonstrated by the fact that FDA expressly rejected proposed Neoplastin PT language that is similar to the language contained in the Canadian, European Union, and New Zealand labels. *See Boudreaux* Trial Tr. at 1102:19–1104:19.

## CONCLUSION

There is no reason for the Court to disturb its consistent rulings that foreign labeling and foreign regulatory evidence is irrelevant to this case. Plaintiffs' motion *in limine* should be denied.

---

1280:10–13 ("Disregard the Canadian label. And the reason for that is that it is a different country. It has different rules, different regulations, different procedures, and different requirements."); *id.* 1280:21–22 ("So from the standpoint of what's on the Canadian label, that has no relevance."); *id.* 1667:8–12 ("The reference to foreign labels are not -- you can disregard anything regarding a foreign label insofar as a foreign label approving it, disapproving it, changing it, doing different things, because there's different law involved with different procedures."); *id.* 2305:24–2306:2 ("I don't feel that it's appropriate for a party, be it plaintiff or defendant, to introduce into evidence labels from a foreign country. It has nothing to do with the case before us."); Transcript of Telephone Hearing on Defs.' Mot. to Quash 30(b)(6) Notice to Bayer (*Mingo*), July 10, 2017, at 14:11–16.

[6] *See, e.g.*, *McDowell v. Eli Lilly & Co.*, 13 Civ. 3786, 2015 WL 845720, at *5 (S.D.N.Y. Feb. 26, 2015) ("The mere existence of a differently structured and written European label does not establish that the U.S. label is insufficient, misleading, or legally inadequate, nor is foreign regulatory action even appropriate as a subject of expert testimony in pharmaceutical cases."); *In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396, 488 (S.D.N.Y. 2016) ("Because this litigation is based on U.S. law, and because evidence regarding the FDA will be admitted, the actions taken by foreign regulatory agencies are not particularly probative and likely will be confusing."); *In re Viagra Prods. Liab. Litig.*, 658 F. Supp. 2d 950, 965–66 (D. Minn. 2009) ("[A]ny discussion of foreign regulatory actions is irrelevant . . . and should therefore be excluded."); *see also Jones v. Lederle Labs.*, 785 F. Supp. 1123, 1126–27 (E.D.N.Y. 1992) (because of less stringent testing standards in Japan, testimony regarding a vaccine's use in Japan provided "no acceptable evidence" to support plaintiffs' claim that a safer vaccine existed).

Respectfully submitted,

| | |
|---|---|
| BARRASSO USDIN KUPPERMAN FREEMAN & SARVER, L.L.C. | MITCHELL, WILLIAMS, SELIG, GATES & WOODYARD, P.L.L.C. |

BY: /s/ *Richard E. Sarver*　　　　　　　By: */s/ Lyn P. Pruitt*
Richard E. Sarver　　　　　　　　　　　Lyn P. Pruitt
Celeste R. Coco-Ewing　　　　　　　　　Adria W. Conklin
BARRASSO USDIN KUPPERMAN FREEMAN &　　Benjamin D. Brenner
SARVER, L.L.C.　　　　　　　　　　　　Mary Catherine Way
909 Poydras Street, 24th Floor　　　　MITCHELL, WILLIAMS, SELIG,
New Orleans, Louisiana  70112　　　　　GATES & WOODYARD, P.L.L.C.
Telephone:  (504) 589-9700　　　　　　　425 West Capitol Ave., Suite 1800
rsarver@barrassousdin.com　　　　　　　Little Rock, AR  72201
ccoco-ewing@barrassousdin.com　　　　　Telephone: (501) 688-8800
　　　　　　　　　　　　　　　　　　　lpruitt@mwlaw.com
　　　　　　　　　　　　　　　　　　　aconklin@mwlaw.com
DRINKER BIDDLE & REATH LLP　　　　　　　bbrenner@mwlaw.com
　　　　　　　　　　　　　　　　　　　mway@mwlaw.com
By: /s/ *Susan M. Sharko*
Susan M. Sharko
DRINKER BIDDLE & REATH LLP　　　　　　　WATKINS & EAGER PLLC
600 Campus Drive
Florham Park, NJ 07932-1047　　　　　　By: */s/ Walter T. Johnson*
Telephone: (973) 549-7000　　　　　　　Walter T. Johnson
susan.sharko@dbr.com　　　　　　　　　　WATKINS & EAGER PLLC
　　　　　　　　　　　　　　　　　　　The Emporium Building
Rodney M. Hudson　　　　　　　　　　　　400 East Capitol Street
DRINKER BIDDLE & REATH LLP　　　　　　　Jackson, Mississippi 39201
50 Fremont Street, 20th Floor　　　　　Telephone: (601) 965-1846
San Francisco, CA 94105-2235　　　　　 wjohnson@watkinseager.com
Telephone: (415) 591-7500
Rodney.hudson@dbr.com　　　　　　　　　 ARNOLD & PORTER KAYE SCHOLER LLP

Chanda A. Miller　　　　　　　　　　　　By: /s/ *William Hoffman*
DRINKER BIDDLE & REATH LLP　　　　　　　William Hoffman
One Logan Square, Suite 2000　　　　　 ARNOLD & PORTER KAYE SCHOLER LLP
Philadelphia, PA 19103-6996　　　　　　 601 Massachusetts Ave., NW
Telephone: (215) 988-2500　　　　　　　 Washington, D.C. 20001
Chanda.Miller@dbr.com　　　　　　　　　 Telephone: (202) 942-5000
　　　　　　　　　　　　　　　　　　　william.hoffman@apks.com

IRWIN FRITCHIE URQUHART & MOORE LLC　　Andrew K. Solow
　　　　　　　　　　　　　　　　　　　Steven Glickstein
By: /s/ *James B. Irwin*　　　　　　　　ARNOLD & PORTER KAYE SCHOLER LLP
James B. Irwin　　　　　　　　　　　　　250 West 55th Street

10

Kim E. Moore
IRWIN FRITCHIE URQUHART & MOORE LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
jirwin@irwinllc.com

*Attorneys for Defendants Janssen Pharmaceuticals, Inc. and Janssen Research & Development, LLC*

New York, New York 10019-9710
Telephone: (212) 836-8485
andrew.solow@apks.com
steven.glickstein@apks.com

BRADLEY ARANT BOULT CUMMINGS LLP

By: */s/ Lindsey C Boney IV*
Kevin C. Newsom
Lindsey C Boney IV
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place, 1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8803
knewsom@bradley.com


CHAFFE MCCALL L.L.P.

By: /s/ *John F. Olinde*
John F. Olinde
CHAFFE MCCALL L.L.P.
1100 Poydras Street, Suite 2300
New Orleans, LA 70163
Telephone: (504) 585-7241
olinde@chaffe.com

*Attorneys for Bayer HealthCare Pharmaceuticals Inc. and Bayer Pharma AG*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 28th day of July, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs by operation of the court's electronic filing system.

/s/     *John F. Olinde*