UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | * * * | MDL 2592 |
| THIS DOCUMENT RELATES TO: | * * * | SECTION L |
| *Dora Mingo v. Janssen Research & Development, LLC et al.* Case No. 2:15-cv-03469 | * * * * | JUDGE ELDON E. FALLON MAGISTRATE JUDGE NORTH |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' JOINT MOTION IN *LIMINE* TO EXCLUDE DR. SMART'S TESTIMONY ALLEGING THAT XARELTO® IS "WORST IN CLASS"**

**I.      INTRODUCTION**

At the *Mingo* trial, Plaintiffs may call to the witness stand Dr. Frank Smart, a cardiologist, to provide expert testimony regarding the dangerous characteristics of Xarelto.  During the *Orr* trial, Dr. Smart expressed strong negative opinions about Xarelto's inconvenient truth -- it is the worst in class of the NOACs.  To avoid that opinion from resurfacing, the Defendants have moved *in limine* to prohibit Dr. Smart's "worst in class" opinion contending that it is irrelevant as to both Plaintiffs' defective design claim and causation, based on defendants' faulty premise that Ms. Mingo would have bled on any anticoagulant [Rec. Doc. 7071]. Dr. Smart's opinion, however, supports all of Ms. Mingo's claims, including her failure to warn claim, and is presented for the purpose of comparing risks and efficacy to other NOACs, like Pradaxa and Eliquis -- facts which have "been confirmed in numerous real-world epidemiology studies."  Defendants' Exhibit A ("Smart Report") at 4.

1

Such testimony is acceptable for the following reasons: (1) Dr. Smart's opinion is not only relevant to Plaintiffs' failure to warn claim, but admissible too; (2) Dr. Smart has raised identical opinions in the previous *Orr* trial, and elicited no objections from Defendants; and (3) Defendants' motion *in limine* is a thinly-veiled and tardy *Daubert* motion. As discussed below, this testimony is admissible.

## II. ARGUMENT

### A. Dr. Smart's Opinion is Both Relevant and Admissible.

Under Fed. R. Evid. 403, a trial court has broad discretion to assess the probative value of evidence and determine whether it is significantly outweighed by the risk of undue prejudice. *See Sprint v. Mendelsohn*, 552 U.S. 379, 384 (2008). "[A] court should exclude relevant evidence only if its probative value is substantially outweighed by danger of unfair prejudice." *United States v. Duncan*, 919 F.2d 981, 987 (5th Cir. 1990). In *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993), the Supreme Court emphasized that in the realm of expert testimony the scope of relevant testimony is extraordinarily broad. There, the Supreme Court held: "Unlike an ordinary witness <u>an expert is permitted wide latitude to offer opinions</u>, including those that are not based on firsthand knowledge or observation." *Id.* (emphasis added). Defendants' motion misrepresents the wide latitude afforded Dr. Smart's opinions and therefore improperly seeks to constrain testimony about the problems with Xarelto that are known to him.

Like other well-founded expert opinions that have been found admissible, Dr. Smart's opinions are well supported by a review of "multiple publications on new oral anticoagulants," on his "personal experience with prescribing Xarelto and other NOACs" and on a review of "internal company documents." Smart Report at 1. He states that "Xarelto is a highly variable drug with respect to liver and kidney breakdown." *Id.* at 3. He continues that "[i]t is unreasonable to assume

2

that all people [with reduced renal function] take the full 15 mg per day dose of Xarelto and not have significant exposure to increased bleeding risk." *Id*. at 4. Moreover, "both Pradaxa and Eliquis were able to achieve superiority with respect to stroke prevention," in Phase 3 clinical trials. *Id*. *See also* Defendants' Exhibit B ("Orr Transcript") at 343:1-345:9. Based on these observations, Dr. Smart is well within his right to conclude that Xarelto is the "worst in its class of new oral anticoagulants." It is clear that Dr. Smart bases his opinion on facts and data in this case and, given the wide latitude the court offers to experts, his opinion that Xarelto is comparatively worse than other NOACs is a permissible and relevant opinion.

Defendants also make a pretextual argument that Dr. Smart's opinion is irrelevant to Ms. Mingo's design defect claim under the Mississippi Product Liability Act, Miss. Code Ann. §11-1-63, but such argument is misplaced and incorrect. *See* July 21, 2017 Order & Reasons at 10 ("a reasonable jury could find that the use of an anti-Factor Xa assay is a feasible alternative design.") [Rec. Doc. 7112]. Moreover, Dr. Smart's comparison opinion has *not* been presented solely for the purpose of proving a feasible alternative design. He opines that Xarelto's dose is too high, and by comparison to other NOACs with similar clinical trials, he determined that Xarelto is the worst. Smart Report at 1, 4; Orr Transcript at 343:10-345:9. In other words, as an expert cardiologist, he provides the fact-finder with a relevant hierarchy of the various NOACs' efficacy and safety. This data is not just evidence supporting Plaintiffs' alternative design claim (regarding the need to provide an assay to allow the blood level of drug to be assessed), but also supportive of Plaintiffs' failure to instruct claim. As Dr. Smart explained: "There's four drugs in [the] class. The best one is safe from bleeding and good from stroke, apixaban. The second best ones are going to be equal on stroke, safer on bleeding, dabigatran, edoxaban. And the worst is Xarelto or rivaroxaban, which is again equal, equal." Orr Transcript at 345:5-9. Data of relativity is relevant and permissible to

show the need for adequate warnings and proper instructions on the use of the drug given the elevated risk associated with Xarelto. As this Court held in its recent Order, "Defendants' quarrel is with the witnesses' conclusions and not their methodology." July 21, 2017 Order and Reasons [Rec. Doc. 7111] at 10. Defendants may not approve of Dr. Smart's opinion, but it is well within the bounds permitted to expert witnesses.

### B. Dr. Smart Raised Identical Opinions in The *Boudreaux* and *Orr* Trials, and It Elicited No Objections From Defendants.

In their motion *in limine*, Defendants mention that Dr. Smart has previously raised the opinion that Xarelto is the worst in its class in the *Orr* trial. For example, in *voir dire* and during direct and cross examination, Dr. Smart spoke at length about his opinion of Xarelto being the "worst in the class." *See* Orr Transcript; Additional Selected Portions of Transcript of *Orr* Trial Proceedings, at 357:1-7; 371:2-16, attached herein as Plaintiffs' Exhibit 1  And yet, while Dr. Smart has continuously raised the opinion that Xarelto is the worst in the class, at no point after he submitted his expert report or during any of the prior trial proceedings did Defendant object to this testimony. Their current effort to impose a prior restraint on Dr. Smart's testimony is equally unsupported.

### C. The Objections Defendants Have Raised Related to Dr. Smart's Dosing Testimony Are Unfounded.

Finally, Defendants' contention that Dr. Smart's testimony is an improper and inadmissible dosing opinion as set forth in their Renewed Joint *Daubert* Motion to Exclude Expert Opinions and Testimony Regarding Unapproved Dosing and Monitoring Regimes [Rec. Doc. 6740] is unfounded. Defendants' Motion *in limine* is nothing more than a thinly disguised attempt at another bite at their *Daubert* arguments. Such argument should be precluded for several reasons.

First, the time for filing *Daubert* motions came and went as of June 7, 2017 [Rec. Doc. 6600], with Defendants failing to make any argument about Dr. Smart's "worst in class" opinion. Within the Renewed Joint *Daubert* Motion, Defendants only argue that Dr. Smart's twice-daily and lower dose opinions are inadmissible. *See* Rec. Doc. 6740 at 8-9. Defendants were always well aware of Dr. Smart's "worst in class" opinion, and yet they neglected to raise it in their motion and therefore it should be deemed waived.

Second, this Court recently denied Defendants' Renewed Joint *Daubert* Motion as it related to dosing. *See* July 21, 2017 Order and Reasons at 10 ("Xarelto's dosing scheme and the availability of monitoring bear on the individual risk to each plaintiff taking Xarelto.") [Rec. Doc. 7111]. In light of this ruling, Dr. Smart's "worst in class" opinion is based on an admissible methodology.[1] Therefore, for the same reasons as presented in *Boudreaux*, *Orr* and this case, this Court should similarly deny Defendants' motion to exclude Dr. Smart's "worst in class" opinion.

## III. CONCLUSION

For the reasons set forth above, Defendants' motion should be denied.

---

[1] This reasoning is consistent with this Court's prior rulings. Defendants filed a *Daubert* Motion to Exclude Expert Opinions and Testimony Regarding Unapproved Dosing and Monitoring Regimens in the *Boudreaux* and *Orr* case. Rec. Doc. 5113. Defendants argued that, *inter alia*, Dr. Smart's opinion "speculate[s] that Xarelto would be safer if it were prescribed at some unspecified lower total daily dose." *Id.* at 24. The Court denied Defendants' motion. [Rec. Doc. 6198]. In *Orr*, Defendants filed a Renewed Motion to Exclude Certain Dosing-Related Opinions of Dr. Smart MD, FACC, FACP, [Rec. Doc 6673] arguing that Plaintiffs introduced new opinions not previously raised in Rec. Doc. 5113. This Court granted in part (black box warnings) and denied in part (dosing) Defendants' motion. Plaintiffs' Exhibit 1 at 518:4-8; Rec. Doc. 6686. Finally, in *Mingo*, this Court denied Defendants' motion for summary judgment [Rec. Doc. 6740], holding that "[d]osing and monitoring are relevant to Plaintiffs' theory that Xarelto was defectively designed and its label lacked relevant information or direction regarding its safe use." Rec. Doc. 7111 at 9. Also in *Mingo*, this Court denied Defendants' motion for partial summary judgment on the design defect claim, holding that Plaintiffs have "shown a reasonable probability that a lower dosage of Xarelto—which may have been warranted after a screening test—would have prevented [Ms. Mingo's] GI bleed." Rec. Doc. 7111 at 11.

Dated: July 28, 2017

Respectfully submitted,

*/s/ Leonard A. Davis*
Leonard A. Davis, Esq. (Bar No. 14190)
***HERMAN, HERMAN & KATZ, LLC***
820 O'Keefe Avenue
New Orleans, LA 70113
PH: (504) 581-4892
FAX: (504) 561-6024
Email: ldavis@hhklawfirm.com

Gerald E. Meunier (Bar No. 9471)
***GAINSBURGH BENJAMIN DAVID MEUNIER & WARSHAUER, LLC***
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
PH: (504) 522-2304
FAX: (504) 528-9973
Email: gmeunier@gainsben.com

***Plaintiffs' Liaison Counsel***

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 28, 2017, the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs and Defendants by operation of the court's electronic filing system and served on all other plaintiff counsel via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre- Trial Order No. 17.

>*/s/ Leonard A. Davis*
>**LEONARD A. DAVIS**