UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: XARELTO (RIVAROXABAN) | * | MDL 2592 |
| PRODUCTS LIABILITY LITIGATION | * | |
| | * | SECTION L |
| THIS DOCUMENT RELATES TO: | * | |
| *Mingo v. Janssen Research* | * | JUDGE ELDON E. FALLON |
| *& Dev., LLC, at al.* | * | |
| Case No. 2:15-cv-03469 | * | MAGISTRATE JUDGE NORTH |
| | * | |

* * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' JOINT MOTION *IN LIMINE* TO EXCLUDE
ARGUMENT OR EVIDENCE REGARDING UNAPPROVED DOSING**

## I. INTRODUCTION

Plaintiff submits this memorandum in opposition to Defendants' motion *in limine* to exclude argument or evidence regarding unapproved dosing [Rec. Doc. 7058]. Defendants' motion renews arguments that have been raised, and rejected, many times throughout the course of this litigation. This Court should again reject Defendants' arguments, and deny Defendants' motion.

## II. ARGUMENT

The primary argument in this motion, which has been raised time and again, is that because Plaintiff is not advocating for a different dose or dosing regimen for Xarelto, all evidence about the dose and dosing regimen for Xarelto is irrelevant.

Defendants first included this issue within a *Daubert* motion filed in *Boudreaux* and *Orr*, seeking to exclude expert testimony about dosing and monitoring regimens.[1] Plaintiffs filed an

---

[1] *See* Defendants' Joint *Daubert* Motion to Exclude Expert Opinions and Testimony Regarding Unapproved Dosing and Monitoring Regimens [Record Doc. 5113] ("Def. Motion").

1

opposition brief,[2] which is incorporated herein by reference. This Court heard arguments, which Plaintiff incorporates herein by reference,[3] and later denied Defendants' motion. In so doing, this Court explained why dosing evidence is pertinent to this litigation, even though the claims themselves are directed at what Defendants should have done differently in relation to testing and monitoring Xarelto patients:

> Dosing and monitoring … are relevant to Plaintiffs' theory that Xarelto was defectively designed and its label lacked relevant information or directions regarding its safe use. Because of Xarelto's short half-life and the variability in patients, some patients will retain more Xarelto in their system and will be subject to a greater bleeding risk. Xarelto's dosing scheme and the availability of monitoring bear on the individual risk to each plaintiff taking Xarelto. Plaintiffs contend that proper usage requires testing or monitoring to ascertain the appropriate dosage. They argue that this was known or should have been known to Defendants and the label should contain information and instructions or directions as to proper use. Plaintiffs point to various journals and studies supporting their position. Without judging the accuracy of this conclusion, the methodology supporting Plaintiffs' arguments is appropriate.[4]

Defendants raised the issue again by renewing its motion to exclude certain testimony from Dr. Smart in *Orr*.[5] Plaintiffs filed another opposition brief,[6] which is incorporated herein by reference. No ruling was entered before Dr. Smart testified, but after Dr. Smart testified, this Court heard arguments on the matter, and Plaintiff incorporates herein by reference the arguments

---

[2] *See* Plaintiffs' Response in Opposition to Defendants' *Daubert* Motion to Exclude Expert Opinions and Testimony Regarding Unapproved Dosing and Monitoring Regimens and the Experts' 20-Second Cut-Off Guideline [Record Doc. 5641].

[3] *See* Oral Argument Transcript, 03/23/17, at 108:19-122:1 (attached as Exhibit 1).

[4] *See In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*, No. 14-md-2592, slip op. (Apr. 13, 2017) [Record Doc. 6198], at 7-8.

[5] *See* Defendants' Renewed Motion to Exclude Certain Dosing-Related Opinions of Dr. Smart MD, FACC, FACP [Record Doc. 6673].

[6] *See* Plaintiffs' Response in Opposition to Defendants' Renewed Motion to Exclude Certain Dosing-Related Opinions of Dr. Smart MD, FACC, FACP [Record Doc. 6674].

presented.[7] This Court then ruled that it would not instruct the jury to disregard Dr. Smart's dosing testimony because the testimony related to the characteristics of Xarelto which were alleged to have been dangerous, and which created the duty to provide instructions about testing Xarelto patients to minimize the danger.[8]

Undeterred, Defendants raised the issue again, including it within another *Daubert* motion, seeking to exclude expert opinions about dosing and monitoring regimens in *Mingo* and *Henry*.[9] Plaintiffs filed yet another opposition brief,[10] which is incorporated herein by reference. This Court recognized that Defendants were rehashing past arguments, starting its discussion regarding this issue with the following sentence: "The Court's opinion on testimony about dosing and monitoring regimens has not shifted since *Boudreaux* and *Orr*."[11] This Court denied the motion, again, using almost the exact same language used when first denying the *Daubert* motion in *Boudreaux* and *Orr*.[12]

While that *Daubert* motion was pending, Defendants filed the instant motion *in limine*. The arguments are essentially the same as before, except Defendants are attempting to place some import on the fact that the word "characteristics" is used in the Louisiana Products Liability Act

---

[7] *See Orr* Trial Transcript at 511:16-514:5 (attached as Exhibit 2).

[8] *See* 05/31/17 Minute Order [Record Doc. 6686]; *Orr* Trial Transcript at 516:5-6; 518:4-7 (attached as Exhibit 2).

[9] *See* Defendants' Renewed Joint *Daubert* Motion to Exclude Expert Opinions and Testimony Regarding Unapproved Dosing and Monitoring Regimens [Record Doc. 6740].

[10] *See* Plaintiffs' Memorandum in Opposition to Defendants' Renewed Joint *Daubert* Motion to Exclude Expert Opinions and Testimony Regarding Unapproved Dosing and Monitoring Regimens [Record Doc. 7001].

[11] *See In re Xarelto (Rivaroxaban) Prods. Liab. Litig.,* No. 14-md-2592, slip op. (July 21, 2017) [Record Doc. 7111], at 7.

[12] *Compare id.* at 9-10 *with supra* page 2 and n.4.

("LPLA"), but not in the Mississippi Product Liability Act ("MPLA").[13] This, however, is a distinction without a difference.

The core of both statutes is the existence of a danger that can be eliminated, or at least reduced, through an instruction on how to safely use the drug.[14] As much as Defendants want that "danger" to be the same bleeding risk that exists with every anticoagulant, of which every physician is aware, Defendants cannot simply state that and make it so. The "danger" actually involved in this litigation is the clinically significant variability that exists with absorption rates, and thus with bleeding risks, among patients using Xarelto, which is a consequence of the dose and dosing regimen for Xarelto. The dose and dosing regimen for Xarelto, and the consequences of the dose and dosing regimen, are inextricably intertwined with Ms. Mingo's failure to instruct claim, because they are what created the need for instructions about Neoplastin PT testing to evaluate a patient's absorption and risk of bleeding on Xarelto. Nothing in the MPLA, or in the case law, prohibits this argument.[15]

Defendants close their motion with an additional request for exclusion of any evidence about the ROCKET AF clinical trial for the atrial fibrillation indication under Rule 403, suggesting that only evidence about the studies relating to Ms. Mingo's DVT indication (EINSTEIN) should be admitted.[16] This carries forward with the same theme from a motion in *limine* filed in

---

[13] *See* Def. Motion at 4-5.

[14] *Compare* La. Rev. Stat. §§ 2800.54, 2800.57 *with* Miss. Code Ann. § 11-1-63.

[15] Defendants claim that a motion with a similar theory was ruled upon in favor of exclusion in the Pradaxa litigation, providing only a one-line ruling from the docket as support. *See* Def. Motion at 5. The actual briefs, however, show that an entirely different theory was involved, at least in terms of that motion. The briefing was focused on a duty to warn about a dose that had been rejected by the FDA, rather than the duty at issue here, which is to instruct about how to reduce the dangers posed by a dose and dosing regimen that had been approved by the FDA. The motion, opposition, and reply are attached as Exhibits 3, 4, and 5.

[16] *See* Def. Motion at 7-8.

*Boudreaux*,[17] and deemed filed again in *Orr*,[18] seeking to exclude evidence about the RECORD 4 clinical trial for the hip or knee replacement indication and a related article by Charles Seife, on grounds that the doses prescribed to Mr. Boudreaux and Mrs. Orr were based on a different study (ROCKET AF) for a different indication (atrial fibrillation). Indeed, Defendants have filed another similar motion about RECORD 4 and Seife here.[19] This Court initially reserved ruling,[20] but at trial, Defendants' objections relating to the introduction of this evidence were overruled.[21]

As to this argument, Plaintiff incorporates by reference the arguments in the opposition filed in *Boudreaux,* and in the opposition filed today in *Mingo*.[22] Essentially, evidence about studies for other indications relates to the credibility of Defendants, and can be used for impeachment purposes if Defendants tout the number of great studies performed in relation to Xarelto and the great data allegedly obtained from those studies. Additionally, in all clinical trials, regardless of indication, bleeding risk was evaluated, and bleeding risk is relevant to Ms. Mingo's claims.

---

[17] *See* Defendants' Memorandum of Law in Support of Motion *in Limine* No. 4 Regarding the RECORD 4 Clinical Trial and Seife 2015 [Record Doc. 5958-1].

[18] *See* Joint Stipulation on Motion *in Limine* Filings and Rulings [Record Doc. 6535], at ¶ I(A)(3).

[19] *See* Defendants' Motion *in Limine* No. 4 Regarding the RECORD 4 Clinical Trial and Seife 2015 [Record Doc. 7053].

[20] *See In re Xarelto (Rivaroxaban) Prods. Liab. Litig.,* No. 14-md-2592, slip op. (Apr. 18, 2017) [Record Doc. 6254], at 16.

[21] *See* Deposition Designations for Susan Geiger in *Boudreaux* [Record Doc. 6314], at 26-28; Deposition Designations for Susan Geiger in *Orr* [Record Doc. 6727], at 26-29.

[22] *See* Plaintiffs' Response in Opposition to Defendants' Motion in Limine No. 4 Regarding the RECORD 4 Clinical Trial and Seife 2015 in *Boudreaux* [Record Doc. 6228]; Plaintiffs' Response in Opposition to Defendants' Motion in Limine No. 4 Regarding the RECORD 4 Clinical Trial and Seife 2015 in *Mingo* (filed today).

## III. CONCLUSION

For these reasons, and the reasons stated in the many prior briefs and oral arguments on this issue, Defendants motion should – again – be denied.

Dated: July 28, 2017

Respectfully submitted,

*/s/ Leonard A. Davis*
Leonard A. Davis, Esq. (Bar No. 14190)
**HERMAN, HERMAN & KATZ, LLC**
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Email: ldavis@hhklawfirm.com

Gerald E. Meunier (Bar No. 9471)
**GAINSBURGH BENJAMIN DAVID MEUNIER & WARSHAUER, LLC**
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
Email: gmeunier@gainsben.com

*Plaintiffs' Liaison Counsel*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 28, 2017, the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs and Defendants by operation of the court's electronic filing system and served on all other plaintiff counsel via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre- Trial Order No. 17.

*/s/ Leonard A. Davis*
**LEONARD A. DAVIS**