UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: XARELTO (RIVAROXABAN) | * | MDL 2592 |
| PRODUCTS LIABILITY LITIGATION | * | |
| | * | SECTION L |
| THIS DOCUMENT RELATES TO: | * | |
| *Mingo v. Janssen Research &* | * | JUDGE ELDON E. FALLON |
| *Development, LLC, et al.* | * | |
| **Case No. 2:15-cv-03469** | * | MAGISTRATE JUDGE NORTH |

* * * * * * * * * * * * * * * * * * * * * *

## PLAINTIFF'S PROPOSED JURY INSTRUCTIONS

Plaintiff, Dora Mingo, respectfully proposes that this Court give to the jury the following proposed "Specific Instructions," numbered 1 through 29, in addition to the instructions contained in the "General Instructions" and "Conclusion" sections of the Jury Instructions given in the *Orr* trial [Record Doc. 6815 at pp. 1-12, 39-42]. Ms. Mingo reserves the right to amend her proposed instructions in light of any future rulings of this Court and the evidence admitted in the trial of this matter.

Dated: July 28, 2017

Respectfully submitted,

*/s/ Leonard A. Davis*
Leonard A. Davis, Esq. (Bar No. 14190)
**HERMAN, HERMAN & KATZ, LLC**
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Email: ldavis@hhklawfirm.com

Gerald E. Meunier (Bar No. 9471)
**GAINSBURGH BENJAMIN DAVID MEUNIER
& WARSHAUER, LLC**
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
Email: gmeunier@gainsben.com
**Plaintiffs' Liaison Counsel**

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on July 28, 2017 the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs and Defendants by operation of the court's electronic filing system and served on all other plaintiff counsel via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre- Trial Order No. 17.

/s/ Leonard A. Davis
**LEONARD A. DAVIS**

## PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 1

As you know, this action arises out of Dora Mingo's use of Xarelto. The Janssen and Bayer Defendants manufacture Xarelto.

Plaintiff contends that Ms. Mingo suffered a serious upper gastrointestinal bleed – also known as a G.I. bleed – with severe anemia, as a result of her use of Xarelto. Ms. Mingo alleges that Xarelto was defective, or "unreasonably dangerous," for two reasons:

First, Ms. Mingo claims that Xarelto was unreasonably dangerous because Defendants failed to adequately instruct physicians, including her physician, Dr. Renie Jordon.  She points to a clinically significant variability among Xarelto users, meaning that certain Xarelto-treated patients will have a higher bleeding risk than others even though put on the same dose as others; and she alleges that standard laboratory testing is available and can be used to identify those patients who are at a higher risk for bleeding. Ms. Mingo claims that she was one of these patients, and that Defendants failed to adequately instruct Dr. Jordon regarding the need for and ability to use already-available standard laboratory testing to determine that she had a greater risk of bleeding on Xarelto, and therefore should have been given different medication for her condition. Ms. Mingo claims that her G.I. bleed would have been avoided if Defendants had adequately instructed Dr. Jordon about such standard testing, because these instructions likely would have caused Dr. Jordon to alter his treatment of Ms. Mingo by changing her medication.

Second, Ms. Mingo alleges that Xarelto was "unreasonably dangerous" in how it was designed because, despite Defendants' knowledge that certain Xarelto-treated patients will have a higher bleeding risk, those manufacturers failed to provide something called an anti-Factor Xa assay to identify those patients at a higher risk, even though it was possible for them to do so.

Ms. Mingo seeks monetary damages proximately caused by her injuries. Ms. Mingo does not need to prove both of these claims in order to recover damages. She will be entitled to recover damages if she proves one of these claims, or both of these claims, by a preponderance of the evidence.

Defendants deny all of these allegations. They contend that Xarelto's instructions were adequate, and that any alleged inadequacy in the instructions did not proximately cause Ms. Mingo's injuries. They contend that the label contains accurate, science-based information enabling doctors to make informed decisions about the benefits and risks of maintaining their patients on this medication. Defendants further contend that there was no sound scientific basis for the claim that Neoplastin PT testing can be used to predict the risk of bleeding in patients on Xarelto, and that Xarelto's design was not defective due to lack of an anti-Factor Xa assay.

Adapted from the Court's Jury Instructions in *Orr* [Record Doc. 6815], at 12-13; *In re Xarelto (Rivaroxaban) Prods. Liab. Litig. (Mingo),* No. 14-md-2592, slip op. (July 24, 2017) [Record Doc. No. 7114], at 6-7, 9.

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 2**

The burden of proof is on Ms. Mingo to prove every essential element of her claim by a "preponderance of the evidence."

The phrase "preponderance of the evidence" means evidence which you find to be most consistent with the truth, based upon your experience and your judgment of all of the evidence presented in the trial.  It is that evidence which you find to be most consistent with reason and probability, and that evidence which, when considered and compared with the evidence opposed to it, has more convincing force and produces in your minds the belief that what is sought to be proved is more likely true than not true.

You alone must decide whether Ms. Mingo's burden of proof is met, and it does not depend upon the number of witnesses.  Instead, it depends upon the weight that you decide to give to the witnesses' testimony and the credibility of the witnesses, as well as to the documents in evidence. A preponderance of the evidence ultimately is that evidence which has a greater persuasive and convincing power in your view.


Miss. Prac. Model Jury Instructions Civil §§ 1:27, 1:28, 1:30

## PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 3

The law applicable to this case is the law of Mississippi, and a products liability action such as this one is governed by the Mississippi Products Liability Act, or "MPLA."

The MPLA provides that the manufacturer of a product shall be liable to a claimant for damages proximately caused by one or more ways in which the product was defective, or unreasonably dangerous. One of the ways in which a drug can be defective or unreasonably dangerous is in cases where the product's manufacturer fails to include adequate instructions for using the product when the information given through these instruction is not otherwise known to and appreciated by the user of the product. In the case of a prescription drug product, that user would be the doctor prescribing the drug. Another way a product can be defective or unreasonably dangerous is by being designed in a defective manner.

In this case, Ms. Mingo alleges that Xarelto is unreasonably dangerous both because of the lack of adequate instructions to her doctor, and because of a defect in the drug's design. Therefore, in order to recover, Ms. Mingo must show that her G.I. bleed was proximately caused by either Defendants' failure to provide adequate instructions to her prescribing doctor, or by the defective design of Xarelto, or both.

It has been stipulated and agreed upon in this case, and therefore you must consider it to be established, that both the Janssen and Bayer Defendants are manufacturers of Xarelto within the meaning of the MPLA. Where there is a collaborative relationship between manufacturers, as in this case, and a plaintiff is injured by a product that may be deemed "manufactured" by more than one manufacturer, these manufacturers are collectively responsible to the plaintiff.

Adapted from the Court's Jury Instructions in *Orr* [Record Doc. 6815], at 15-16; Miss. Code Ann. § 11-1-63.

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 4**

As to Plaintiff's claim based on the lack of adequate instructions, your verdict should be in favor of Ms. Mingo if you find by a preponderance of the evidence:

1.      That when Xarelto was placed on the market, Defendants knew, or in light of reasonably available knowledge should have known, about the danger of a patient taking Xarelto if her physician does not refer to standard laboratory testing to evaluate that patient's exposure and risk of bleeding on Xarelto;

2.      That an ordinary physician prescribing Xarelto would not recognize such a danger without being given proper instructions by the manufacturer;

3.      That a reasonably prudent manufacturer in the same or similar circumstances as the Defendants would have provided such instructions, even though these Defendants did not do so; and;

4.      That the failure of Defendants to provide such instructions to Ms. Mingo's physician, Dr. Jordon, made Xarelto unreasonably dangerous in the case of Ms. Mingo and was a proximate cause of her injuries.

Miss. Prac. Model Jury Instr. Civil § 16:4; Miss. Code Ann. §§ 11-1-63(a) and (c).

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 5**

Under the MPLA, a manufacturer of a drug product has a duty not only to provide physicians with adequate warnings about the risks of prescribing the drug, but also a duty to provide adequate instructions concerning the drug. This can include instructions about how to use the drug in such a manner as to avoid the damage for which the claim is made. An adequate instruction is one that a reasonably prudent drug manufacturer in the same or similar circumstances would have provided with respect to the dangers associated with taking the drug. It is one which communicates sufficient information about the dangers and use of the drug, taking into account both the characteristics of the drug and the ordinary knowledge common to a physician who would be prescribing it to a patient.

*In re Xarelto (Rivaroxaban) Prods. Liab. Litig. (Mingo),* No. 14-md-2592, slip op. (July 24, 2017) [Record Doc. No. 7114], at 7-8; Miss. Code Ann. § 11-1-63 (c)(ii); *Union Carbide Corp. v. Nix,* 142 So.3d 374, 385 (Miss. 2014).

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 6**

In providing adequate instructions with a drug product, manufacturers must give due consideration to the likelihood of harm to a patient on the drug, and the seriousness of consequences in failing to give clear instructions to prescribing doctors.

Adapted from the Court's Jury Instructions in *Orr* [Record Doc. 6815], at 17-18; *see also* Miss. Code Ann. § 11-1-63(c)(i) and (ii).

## PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 7

In a case involving prescription drugs such as Xarelto, the law applies something called the "learned intermediary doctrine." This means that the Defendants who manufacture a drug like Xarelto have a duty to instruct not the patient taking the drug, but the patient's physician, who in this case is Dr. Jordon. This is because a physician is the one who must prescribe the drug, and is someone who, through specialized education and experience, is in the best position to make decisions or recommendations in regard to a specific drug for a specific patient.

At the same time, a doctor whom the law considers to be a "learned intermediary" still must have adequate information in prescribing a drug. If it is shown in this case that Defendants failed to adequately instruct Dr. Jordan about the dangers of placing his patient on Xarelto, Dr. Jordon cannot be said to be a "learned intermediary" because he would not have been completely "learned" as to those dangers. In other words, this learned intermediary doctrine is not intended to excuse a manufacturer from legal responsibility if the instructions given to a physician are not adequate.

This "learned intermediary" doctrine applies only to Ms. Mingo's claim for failure to warn or instruct. It does not apply to her design defect claim.


Miss. Code Ann. § 11-1-63(c)(ii); *Wyeth Labs., Inc. v. Fortenberry,* 530 So. 2d 688, 691-92 (Miss. 1988); *Jowers v. BOC Group, Inc.,* No. 08-cv-36, 2009 U.S. Dist. LEXIS 53126, at *43-44 (S.D. Miss. Apr. 14, 2009); *Thomas v. Hoffman-LaRoche, Inc.,* 731 F. Supp. 224, 228-29 (N.D. Miss. 1989).

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 8**

Under the learned intermediary doctrine, the plaintiff first must show that the instruction or information which the plaintiff claims should have been provided by the drug manufacturer to her doctor, was not information which the doctor had anyway, that is, it was not information which would have been known or obvious to him even without the manufacturer providing it.

Second, under the learned intermediary doctrine, the plaintiff must satisfy the burden of establishing proximate cause for her injury, by showing that there was at least some reasonable likelihood that an adequate instruction would have altered the physician's medical conduct. In other words, Ms. Mingo must show by a preponderance of the evidence that Dr. Jordon would have recommended a different course of treatment in her case, and her G.I. bleed that was diagnosed on February 13, 2015 would have been avoided, had he received adequate instructions about standard testing to assess her situation following the initial prescription of Xarelto.

Miss Code Ann. § 11-1-63(e); *In re Xarelto (Rivaroxaban) Prods. Liab. Litig. (Mingo),* No. 14-md-2592, slip op. (July 24, 2017) [Record Doc. No. 7114], at 8-9; *Wyeth Labs., Inc. v. Fortenberry,* 530 So. 2d 688, 691 (Miss. 1988).

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 9**

It is relevant for you to consider the testimony of Dr. Jordon himself to determine whether he would have done anything differently had he received the instructions which Plaintiff says should have been provided by the manufacturer.  Your decision about whether a different course of treatment likely would have occurred in Ms. Mingo's case, therefore, may be based on Dr. Jordon's testimony in that regard.

In addition, Ms. Mingo may prove that the Defendants' failure to provide adequate instructions in this case caused her injuries through evidence that a reasonable physician (and not just Dr. Jordon) would have changed the course of her treatment in response to adequate instructions about Xarelto.

*Bennett v. Madakasira,* 821 So. 2d 794, 808 (Miss. 2002); *Thomas v. Hoffman-LaRoche, Inc.*, 949 F.2d 806, 812 (5th Cir. 1992).

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 10**

The duty of a manufacturer to warn or instruct is a continuing duty. This means that if the manufacturer learns new information about how its drug may cause injury to patients after the drug is already on the market, the manufacturer at that point is legally obliged to use reasonable care to provide adequate instructions to doctors concerning this newly-discovered information. Under both Mississippi law and the federal drug regulations applicable to this case, drug manufacturers at all times bear responsibility for the content of a drug's label.  Drug manufacturers therefore are responsible not only for drafting the initial label for their product when it goes on the market, but also for assuring that the label continues to reflect current and up-to-date information concerning dangers or  risks to patients for whom the drug may be prescribed.

Adapted from the Court's Jury Instructions in *Orr* [Record Doc. 6815], at 23; *Wyeth v. Levine,* 555 U.S. 555, 570-71 (2009); 21 C.F.R. § 314.70(c)(6)(iii).

## PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 11

Drug manufacturers are considered the masters of their labels even after FDA approval; and they therefore have the ability to strengthen or improve a drug's label for safety reasons even after a drug has been FDA-approved.

Because of this, there are processes through which brand-name drug manufacturers can make changes to their label without first seeking FDA approval to do so.  A specific federal regulation entitled "Changes Being Effected" (CBE) provides that if a manufacturer seeks to change a label to "add or strengthen a contraindication, warning, precaution or adverse reaction" or to "add an instruction about dosage and administration that is intended to increase the safe use of the drug product," that manufacturer is authorized to make such a labeling change upon filing a supplemental application with the FDA.  The manufacturer need not wait for an FDA approval before making such a label change.

In this case, it is relevant for you to consider that Defendants would have been permitted to update their Xarelto label pursuant to the federal CBE regulation, based on information received by them that such a label change would improve patient safety in the use of Xarelto.

*In re Xarelto (Rivaroxaban) Prods. Liab. Litig. (Mingo),* No. 14-md-2592, slip op. (July 21, 2017) [Record Doc. No. 7110], at 10, *citing Wyeth v. Levine,* 555 U.S. 555, 568 (2009) (citing 21 C.F.R. §§ 314.70(c)(6)(iii)(A), (C)).

## PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 12

You have heard testimony and a document is in evidence concerning certain language proposed by Defendants which was not included in the Xarelto label approved by the FDA. You may give this evidence and this document whatever weight or significance you believe is deserved, including none at all, as is true with all other testimony or documents in evidence in this case.

I further instruct you, however, that evidence seeking to establish that the FDA struck certain language from a proposed Xarelto label does not on its own establish that the FDA would not ever have approved such language, or that the FDA would not ever have approved the type of instructions about Xarelto which Ms. Mingo claims were needed.  To establish that the FDA never would have approved such instructions in the Xarelto label, Defendants have the burden under the law to present "clear evidence" this is so.

This burden of proof requires more than a showing of what was likely to occur if the FDA had been presented with the instructions for doctors which Plaintiff claims should have been in the Xarelto label.  Instead, the "clear evidence" burden of proof imposed on the Defendants is a demanding standard, one that is greater than the "preponderance of the evidence" burden of proof which applies to the claims brought by Ms. Mingo. To meet a "clear evidence" burden of proof, Defendants must show that it was not only probable, but "highly probable" and "reasonably certain" that the FDA ultimately would have prohibited them from adding language to the Xarelto label in the way the Plaintiff proposes.

*In re Xarelto (Rivaroxaban) Prods. Liab. Litig. (Mingo v. Janssen),* No. 14-md-2592, slip op. (July 21, 2017) [Record Doc. No. 7110], at 11, *citing Wyeth v. Levine,* 555 U.S. 555, 571-72 (2009); *In re Fosamax (Alendronate Sodium) Prods. Liab. Litig.,* 852 F.3d 268, 271, 286 (3d Cir. 2017).

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 13**

The fact that Xarelto was approved by the FDA, although relevant, does not on its own establish that the instructions ultimately provided by the manufacturer in the Xarelto label were adequate under Mississippi law; and neither does FDA approval mean that Xarelto cannot be found under Mississippi law to be defective in design.  FDA approval of Xarelto simply means that the Defendants satisfied certain minimum standards for FDA approval, which is not sufficient to establish that Defendants have satisfied their obligations under the MPLA.  Compliance with federal regulatory standards alone is not sufficient to decide whether a prescription drug is defective or unreasonably dangerous for those patients who take the drug.

Adapted from the Court's Jury Instructions in *Orr* [Record Doc. 6815], at 25; *Union Carbide Corp. v. Nix,* 142 So.3d 374, 387 (Miss. 2014) ("Given the internal Union Carbide documents acknowledging that the OSHA warning was inadequate, a reasonable jury could certainly reach the conclusion that compliance with OSHA did not automatically render Union Carbide's warning adequate.").

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 14**

You have heard reference to certain federal regulations in this case, regulations which address prescription drugs such as Xarelto.  The Defendants' noncompliance with or violation of a federal regulation may be considered as relevant evidence of fault in this case, but it may not, on its own, establish fault.  However, Ms. Mingo may establish fault in this case if she has proven not only that Defendants violated a federal regulation, but also that she was among those citizens sought to be protected by that federal regulation, that her injuries were a type sought to be avoided by that federal regulation, and that the Defendants' violation of the federal regulation was a proximate cause of her injuries.

*Harris v. MVT Servs., Inc.,* No. 6-cv-251, 2007 WL 2609780, at *1 (S.D. Miss. Sept. 5, 2007), *citing Gallagher Bassett Servs., Inc. v. Jeffcoat,* 887 So. 2d 777, 787 (Miss. 2004).

## PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 15

You are instructed that a federal regulation applicable to this case provides that the

Warnings and Precautions section of a prescription drug label:

> … must identify any laboratory tests helpful in following the
> patient's response or in identifying possible adverse reactions. If
> appropriate, information must be provided on such factors as the
> range of normal and abnormal values expected in the particular
> situation and the recommended frequency with which tests should
> be performed before, during, and after therapy.

If you find that Defendants violated this regulation, you may consider this evidence of

Defendants' fault, but it may not, on its own, establish fault. However, if you find that Defendants

violated the regulation, that Ms. Mingo was among those citizens sought to be protected by the

regulation, that her injuries were of a type sought to be avoided by the regulation, and that the

Defendants' violation proximately caused her injuries, then you may find on this basis that

Defendants are liable to Ms. Mingo with respect to her failure to instruct claim.


21 C.F.R. § 201.57(c)(6)(iii); *Harris v. MVT Servs., Inc.,* No. 6-cv-251, 2007 WL 2609780, at *1
(S.D. Miss. Sept. 5, 2007), *citing Gallagher Bassett Servs., Inc. v. Jeffcoat,* 887 So. 2d 777, 787
(Miss. 2004).

## PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 16

I will now discuss with you the law governing Ms. Mingo's design defect claim. As to this claim, your verdict should be for Ms. Mingo if you find by a preponderance of the evidence in this case:

1.      That the harm for which Ms. Mingo seeks to recover damages is not due to a built-in characteristic of Xarelto which could only be eliminated by substantially compromising the usefulness of the drug as recognized by physicians with knowledge common to the medical community;

2.      That, at the time Xarelto was placed on the market, Defendants knew, or in light of reasonably available knowledge should have known, about the danger posed by Xarelto because the drug was not designed with an anti-Factor Xa assay to evaluate a patient's exposure and risk of bleeding on Xarelto;

3.      That Xarelto, as designed, failed to function safely and effectively as expected in the case of Ms. Mingo;

4.      That it was feasible for Defendants to design Xarelto with an anti-Factor Xa assay to evaluate a patient's exposure and risk of bleeding on Xarelto, and, to a reasonable probability, such an alternative design would have prevented the G.I. bleed suffered by Ms. Mingo without impairing the practical usefulness or desirability of Xarelto for patients; and

5.      That the failure to design Xarelto with an anti-Factor Xa assay made Xarelto unreasonably dangerous in the case of Ms. Mingo, and was a proximate cause of her injuries.

Miss. Prac. Model Jury Instr. Civil § 16:2; Miss. Code Ann. §§ 11-1-63(a)(i)(3), (b) and (f).

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 17**

In considering both Ms. Mingo's failure to instruct claim and her design defect claim, you are to determine what Defendants knew or should have known with regard to Xarelto instructions or Xarelto design, by holding Defendants to the knowledge and skill of an expert on Xarelto. Moreover, a prescription drug manufacturer is required by law to keep abreast of research, adverse reaction reports, and other scientific literature pertaining to a drug it has placed on the market.

*Jackson v. Johns-Manville Sales Corp.,* 750 F.2d 1314, 1318 (5th Cir. 1985); *Hermes v. Pfizer, Inc.,* 848 F.2d 66, 68 (5th Cir. 1988).

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 18**

In order to be a proximate cause of Ms. Mingo's G.I. Bleed, any fault you find on the part of Defendants must have been a cause or substantial factor in producing Ms. Mingo's injury.  If you conclude Ms. Mingo would have suffered her G.I. bleed even without any fault as alleged on the part of Defendants, then Defendants' fault cannot be considered a proximate cause of Plaintiff's harm.  But, on the other hand, it is not necessary for Defendants' fault to have been the sole cause of Ms. Mingo's G.I. bleed.  If Defendants' fault played a substantial, contributing role in causing Ms. Mingo's G.I. bleed, Defendants can be considered liable for Plaintiff's G.I. bleed and associated damages even if other causes may have contributed to the G.I. bleed.

Miss. Prac. Model Jury Instr. Civil §§ 14:4, 14:5; *Grand T.W.R. Co. v. Lindsey,* 433 U.S. 42, 47 (1914); *Gila Valley v. Lyon,* 203 U.S. 465, 473 (1906); *Entrican v. Ming,* 962 So. 2d 28, 32 (Miss. 2007); *Cumberland Tel. v. Woodham,* 54 So. 890, 891 (Miss. 1910); *Travelers Cas. & Sur. Co. of Am. V. Ernst & Young, LLP,* 542 F.3d 475, 486 (5th Cir. 2008).

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 19**

You are instructed that Defendants can only be held liable to Ms. Mingo for those injuries and that harm which may be viewed as reasonably anticipated as a consequence of Defendants' fault.  This means that the G.I. bleed suffered by Ms. Mingo must be seen as resulting from a chain of a natural and unbroken sequence set in motion by the fault of Defendants.   There is no requirement that Ms. Mingo's particular injury, her G.I. bleed itself, or the extent of her harm from that G.I. bleed, had to have been actually predicated or actually anticipated by these Defendants. Rather, Ms. Mingo's G.I. bleed must be considered by you to have been an occurrence within the range of reasonable possibilities flowing from Defendants' fault.  If so, that fault is a proximate cause of the Plaintiff's harm.


Miss. Prac. Model Jury Instr. Civil §§ 14:2, 14:3.

### PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 20

In this case, Ms. Mingo does not allege that her gastrointestinal ulcer was itself caused by Xarelto, but rather that the significant bleeding of this ulcer was either caused by, or substantially contributed to or made worse as a result of, her use of Xarelto. Defendants, if found at fault, are liable for all harm proximately caused to Ms. Mingo as a result of their fault, even if a preexisting physical condition (in this case, Ms. Mingo's ulcer) meant that the medical outcome in her case was worse than it would otherwise have been.  Under the law, a wrongdoer must take the victim as it finds her.  Therefore, if you find by a preponderance of the evidence that Ms. Mingo's preexisting condition was aggravated or worsened due to Defendants' fault, Ms. Mingo still is entitled to a verdict which will reasonably and fairly compensate her for the aggravation of that preexisting condition. Indeed, even if you cannot distinguish between injuries associated with the preexisting condition itself and injuries due to an aggravation of that condition, Defendants, if found to be at fault, are legally responsible for the ultimate harm for which Ms. Mingo seeks damages.

*Harkins v. Paschall,* 348 So. 2d 1019, 1022-23 (Miss. 1977); *Koger v. Adcock,* 25 So. 3d 1105, 1110 (Miss. Ct. App. 2010).

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 21**

As I instructed you earlier, the defendant manufacturers in this case are collectively responsible to Ms. Mingo. Therefore, if you enter a verdict for Ms. Mingo, you must determine the amount of your verdict and return it against all Defendants. You cannot return a verdict against one defendant for a certain amount and another verdict against another defendant for a different amount.

Miss. Prac. Model Jury Instr. Civil § 10:10.

## PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 22

You are instructed that if you enter a verdict for Ms. Mingo, then Ms. Mingo is entitled to a verdict in an amount which will fully, fairly and reasonably compensate her for her losses. Such damages are called compensatory damages, and are awarded for the purpose of making the plaintiff whole again.  In other words, the amount of damages you award should be judged by you as sufficient to place Dora Mingo in the condition she was in prior to her G.I. bleed, insofar as a money verdict can accomplish that purpose.

Miss. Prac. Model Jury Instr. Civil § 10:12.

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 23**

You are instructed that "damages" is the word the law uses to express in terms of dollars and cents the amount needed to compensate for a plaintiff's harm.  Such damages must be established with reasonable probability, both in terms of the type of damages and what caused them. At the same time, a plaintiff does not lose her right to recover damages simply because she is unable to prove with certainty the value of her injury in precise, mathematical terms.  It is for you, the jury, to estimate an amount of damages necessary to fully and fairly compensate for the harm done to Ms. Mingo, should you find the Defendants liable.  The final assessment of the money damages, in other words, is entrusted to your sound discretion, based your consideration and assessment of the evidence in the case.

Miss. Prac. Model Jury Instr. Civil § 10:1.

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 24**

"Noneconomic damages" refer to those general damages which will compensate for a Plaintiff's pain, suffering, mental anguish, worry, emotional distress, inconvenience, and the loss (even temporary loss) of the enjoyment of daily life activities. If you find by a preponderance of the evidence that Ms. Mingo has sustained any of these damages as a result of Defendants' fault, she is entitled to a verdict in an amount which will fully, fairly and reasonably compensate her for these elements of harm and loss.

Miss. Prac. Model Jury Instr. Civil § 10:2.

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 25**

"Actual economic damages" refer to objectively verifiable damages, that is, damages which can be mathematically specified in amount based on the evidence.  These are damages which arise from medical expenses and care, and any other such verifiable monetary losses.

You are instructed that if you find by a preponderance of the evidence that Ms. Mingo has sustained such "actual economic damages" due to Defendants' fault, she is entitled to an award for such damages which will fairly and reasonably compensate her for the losses she sustained.

Miss. Prac. Model Jury Instr. Civil § 10:3.

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 26**

Evidence that medical, hospital, and doctor bills have been incurred and paid because of Ms. Mingo's injury, may be considered sufficient to establish that such bills were both necessary and reasonable in amount.

Miss. Code Ann. § 41-9-119.

## PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 27

You are instructed that just and fair compensation is a decision to be made by the jury. Your discretion as to the measure of damages is wide, but it is not unlimited in the sense that you may not act arbitrarily. Exercise your discretion as to the amount of damages reasonably, intelligently, and in harmony with the evidence of the case and the Court's instructions. The damages for personal injuries cannot be assessed by any fixed rule. You are the sole judges as to the measure of damages in this case.

Should your verdict be for Ms. Mingo in this case, you may consider the following factors to determine the amount of damages to award, if they are shown by a preponderance of the evidence:

1.  The type of injuries to Ms. Mingo, if any, and their duration;

2.  Ms. Mingo's past, present, or future physical pain and suffering, any resulting mental anguish, worry, emotional distress, inconvenience and any temporary or permanent loss of the enjoyment of life's ordinary activities; and

3.  Reasonable and necessary medical expenses.


Miss. Prac. Model Jury Instr. Civil § 10:.5.

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 28**
*[To be given in the event punitive damages are to be considered.]*

Now that you have determined that Ms. Mingo is entitled to recover compensatory damages, you must consider whether she also is entitled to recover punitive damages in this case.

You are instructed that punitive damages are additional damages awarded for the social value in bringing wrongful parties to account for their actions and to discourage others from acting in a similar manner. Such damages are not awarded as a matter of right, and are not based on the idea of benefitting an injured party, but are instead founded on the premise of punishing the wrongdoer and preventing similar wrongdoing in the future.  In other words, the purpose of punitive damages is both to punish the wrongdoer and to deter that wrongdoer from repeating such wrongful acts. In addition, such damages are designed to serve as a warning to others, and to prevent others from committing such wrongful acts.

Punitive damages may be awarded in this case if you determine by clear and convincing evidence that Defendants acted with actual malice or gross negligence evidencing a willful, wanton, or reckless disregard for the safety of others.  Such damages also may be awarded if you determine Defendants have committed actual fraud. Clear and convincing evidence such as that which is required to assess punitive damages is proof which produces in your mind a firm belief or conviction that Defendants committed the kind of wrongdoing which must be established for punitive damages to be imposed.  The evidence must be so clear, direct, weighty, and convincing that it enables you as the jury to come to a clear conviction, without hesitancy, that Defendants committed the precise wrongdoing which you feel gives rise to a punitive damages award.


Miss. Prac. Model Jury Instr. Civil §§ 1:31, 10:13, 10:14.

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 29**
***[To be given in the event punitive damages are to be considered].***

In assessing the amount of punitive damages, if any, which are appropriate in this case, you may consider:

1. The financial condition and net worth of Defendants;

2. The nature and reprehensibility of Defendants' wrongdoing, including the impact of the wrongdoing on Ms. Mingo;

3. Defendants' awareness of the amount of harm being caused by its wrongdoing, and Defendants' motivation in acting so as to cause such harm;

4. The duration of Defendants' misconduct and whether Defendants attempted to conceal it; and

5. Any other relevant factor shown by the evidence.

Miss. Prac. Model Jury Instr. Civil § 10:14.