UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  XARELTO (RIVAROXABAN) | * | MDL 2592 |
| PRODUCTS LIABILITY LITIGATION | * | |
| | * | SECTION L |
| THIS DOCUMENT RELATES TO: | * | |
| | * | JUDGE ELDON E. FALLON |
| *Dora Mingo v. Janssen Research* | * | |
| *& Development, LLC et al.* | * | MAGISTRATE JUDGE NORTH |
| **Case No. 2:15-cv-03469** | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO QUASH SUBPOENAS**

I.      **INTRODUCTION**

Defendants have moved to quash trial subpoenas that were timely served on corporate witnesses associated with the Janssen Defendants (Rec. Doc. 7127).  Due to a severely flawed document production by the Defendants, the original schedule of the bellwether trials was pushed back to accommodate the Defendants' vendor-related problems.  The revised trial schedule which has now been in place for months was the subject of extensive negotiations and, given the embarrassment caused to them by their vendor, well-known to the Defendants. Despite this ignominy for which they alone bear responsibility, Defendants have the temerity to accuse the Plaintiffs of acting in bad faith to interfere with their employees' vacation schedules, even though it is those conflicting vacations which are now interfering with this Court's bellwether trial schedule which has always been known to both sides of the "v."  The Court's Case Management Orders were negotiated at arms-length by all parties so it disappointing that Plaintiffs are accused of nefariously waiting until "just a few weeks before trial of this action" to

1

serve their witness list, when that was the same agreed-upon date that the Defendants served their own witness list.

Defendants purposely refused to waive their *Lexecon*-venue rights to ensure that only cases in this Court's vicinage would be set for trial. Hoping to take advantage of the MDL Court's location (which is well beyond 100 miles of the Defendants' principal places of business), the Defendants challenge the Plaintiffs' efforts to secure the participation at trial of but a few corporate witnesses to appear live at the *Mingo* bellwether trial, even those who are requested to appear remotely by contemporaneous transmission.

This Court recognizes the importance of the bellwether trial process to the outcome of MDLs.[1] As an experienced jurist, the Court is equally aware of the value of live testimony over that of videotaped depositions, especially when some depositions are conducted early in the litigation prior to the emergence of positions reaching final formation.[2] For these reasons and more, it is vitally important to the bellwether process that Plaintiffs can continue employing the procedure approved by this Court in the *Boudreaux* and *Orr* trials to call witnesses and have them appear to testify remotely, if they are not made available to testify in the courthouse.

In the interest of presenting the best possible bellwether trial testimony, Plaintiff Mingo listed several corporate witnesses she wanted to appear live at her upcoming trial. These witnesses included:

---

[1] *See* Eldon E. Fallon, *Bellwether Trials in Multidistrict Litigation,* 82 TULANE. L. REV. 2323 (2008).

[2] *See In re Xarelto Prod. Liab. Litig.*, MDL No. 2592, 2017 WL 2311719, *3 (E.D. La. May 26, 2017) (Rec. Doc. 6640), *citing Ramada Worldwide, Inc. v. Bellmark Sarasota Airport*, No. 05-cv-2309, 2006 WL 1675067 (D.N.J. June 15, 2006).

- Dr. Shujian Wu -- a Medical Safety Officer at Janssen Research & Development, LLC ("JRD") who was responsible for detecting safety signals related to Xarelto;

- Mr. Nauman Shah -- a former Director and Vice-President of Marketing at Janssen responsible for the launch of Xarelto, and now the Vice-President of Sales and Marketing at Johnson & Johnson;

- Dr. Christopher Major -- the Director of Product Development at JRD whose responsibilities include diagnostic products such as an anti-Factor Xa assay;

- Ms. Susan Geiger -- Group Production Director and National Sales Director at Janssen responsible for the Afib Indication, and now Director of Marketing for Johnson & Johnson Healthcare Systems;

- Mr. Michael Moye -- Mr. Shah's successor as Director of Marketing at Janssen who oversaw the marketing and sales of Xarelto as it went from 3 to 6 indications for which he was highly compensated until his departure in March 2017; and

- Ms. Patricia Torr -- a Vice-President of Marketing and Sales and Marketing at Janssen who was responsible for sales and marketing of Xarelto until her departure in March 2017.

All of these witnesses are or were extensively involved in and responsible for the sales, marketing and/or development of Xarelto. As a consequence, they were subpoenaed to testify at the *Mingo* trial, subject to whatever conditions/modifications this Court imposed.[3]  However, they are now the subjects of the instant motion to quash.

---

[3]  Relying on the representations of Janssen's counsel at the July 21, 2017 Pretrial Conference to accept service of subpoenas on all of the witnesses, Plaintiff's attempts to serve Mr. Moye and Ms. Torr with subpoenas were called off.  Since then, Janssen's counsel takes the position that the offer to accept service for all the witnesses did not include Janssen's former officers, and that only an offer to call their

## II.    <u>FACTUAL BACKGROUND</u>

In this Multidistrict litigation, the depositions of over 100 corporate witnesses were taken.  Although the Defendants were proponents of the bellwether process, for strategic and other purposes, the Defendants have refused to cooperate in the bellwether trials by making their witnesses available at trial in this Court's vicinage.  This obstinacy on Defendants' part has frustrated the bellwether trial process and led to past motions practice over the ability of Plaintiffs to subpoena the Defendants' corporate witnesses (as opposed to local sales representatives who are unquestionably subject to the Court's subpoena power) to attend the trial, either directly or by contemporaneous transmission.[4]

Nevertheless, in compliance with the agreed-to case management schedule for the third MDL bellwether trial, on July 7, the Plaintiff's witness list named a total of 26 potential witnesses.  Of the 26 potential witnesses, only 13 were company employees. Of those 13 witnesses, four were sales representatives and only nine are corporate witnesses.  On July 20, Ms. Mingo further narrowed her witness list to 6 potential corporate witness and only two sales representatives.  At the July 21, 2017 pretrial hearing, the Janssen Defendants complained that six company witnesses were too many and urged the Court to force the plaintiff to further reduce this number.  The Defendants agreed, however, to make available at trial on August 8, 2017, the two sales representatives, Mssrs. Seifert and Collins.

---

independent counsel was extended.  As a consequence, with their consent, Plaintiffs have now served counsel for Mr. Moye and Ms. Torr with subpoenas for their clients.

[4] *See* Defendants' Motion to Quash Subpoena to Appear and Testify at a Hearing or Trial in Civil Action (Rec.Doc. 6277) and Plaintiffs' Response in Opposition thereto (Rec. Doc. 6286) (Boudreaux); and Defendants' Motion to Quash Subpoena related to Sanjay Jalota to Appear and Testify at a Hearing or Trial in a Civil Action (Rec.Doc. 6556) and Plaintiffs' Response in Opposition thereto (Rec. Doc. 6571) (Orr).  *See also* April 21, 2017 Minute Entry (Rec. Doc. 6295) (Boudreaux) and May 26, 2017 Order and Reasons (Rec. Doc. 6640) (Orr).

Thereafter, Plaintiff offered to reduce her witness list upon knowing which of the company witnesses are available to attend the trial.  Janssen refused to make any of their corporate witnesses available for the trial and continues to refuse availability of any of the six corporate witnesses.  In furtherance of reaching some accommodation, Plaintiff proposed to release three of the corporate witnesses if the following witnesses were made available to testify during the plaintiff's case during the week of Aug 7:  Mr. Michael Moye, Mr. Nauman Shah and Dr. Shujian Wu.  Again, Janssen refused this offer too. Nonetheless, if the motions to quash are denied as to those three witnesses, plaintiff will release the remaining three corporate witnesses (Ms. Torr, Ms. Geiger and Dr. Major).

Instead, Janssen informed Ms. Mingo that if the instant motion to quash is denied, only Dr. Wu could be made available on August 10, to testify via satellite because the other current employees (Dr. Major, Ms. Geiger, and Mr. Shah) intend to relax on vacation rather than obey a court's order.  Ms. Mingo is prepared to accommodate Dr. Wu's schedule by calling him on this date.  Janssen disavows any responsibility for Mr. Moye and Ms. Torr, who only recently left Janssen to work for the biopharmaceutical company, Shire, and coincidentally are both vacationing during the *Mingo* trial.  Both former employees still reside near federal courthouses in which they could appear through a live video feed.

III.   <u>**ARGUMENT**</u>

   A.   <u>**Rules 43(a) and 45(c)(1) empower this Court to compel the witnesses to testify via live testimony broadcasted from another Federal Courthouse.**</u>

This Court has twice allowed plaintiffs to utilize Rule 45 in conjunction with Rule 43 to compel witnesses to appear in open court to testify by contemporaneous transmission from a different location.  *See In re Xarelto Prod. Liab. Litig*., MDL No. 2592, 2017 WL 2311719 (E.D. La. May 26, 2017) (Orr); April 21, 2017 Minute Entry (Rec. Doc. 6295) (Boudreaux).

Under Rule 45 of the Federal Rules of Civil Procedure, this Court may issue a subpoena for a witness to appear at trial either: (a) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or (b) within the state where the person resides, is employed, or regularly transacts business in person if he or she is a party or a party's officer, or if he or she is commanded to attend the trial and would not incur substantial expense in doing so. Fed. R. Civ. P. 45(c)(1). Further, Rule 43 provides:

> At trial, the witnesses' testimony must be taken in open court unless a federal statute, the Federal Rules of Evidence, **these rules**, or other rules adopted by the Supreme Court provide otherwise. **For good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location.**

Fed. R. Civ. P. 43(a) (emphasis added).

Similar to Defendants here, the defendants in *In re Actos (Pioglitazone) Prods. Liab. Litig.,* No. 12-cv-00064, 2014 WL 107153 (W.D. La. Jan. 8, 2014), argued that Rules 43 and 45 could not be read together to allow the court to order video testimony that would take place outside of the court's subpoena power, even for a party's employee. But the *Actos* court rejected this argument: "Nothing in Rule 45, itself, indicates the Rule must be read in the vacuum Defendants argue; to the contrary, Rule 45 must be read *in tandem with* Rule 43 and as a part of a harmonious whole that is the Federal Rules of Civil Procedure." *Id.* at *9. In doing so, the court explained that Rule 43 allows for an appearance in open court by live video feed under certain circumstances, and Rule 45 "provides the mechanism to secure such appearance." *Id.* at *9.

Reading these rules *in pari materia,* as a whole, it is clear that this Court can subpoena witnesses under Rule 45 to testify at trial by video transmission, regardless of the point of origin for that video transmission:

A fair reading of the definition in Rule 43 of an appearance 'IN OPEN COURT' 'at trial,' specifically includes an appearance *via* live transmission, together with a fair reading of the scope of activities permitted to be ordered by subpoena under Rule 45 (specifically, a person may be ordered to 'attend a trial'), establishes that the two Rules embrace and address the concept of appearance at 'trial' to include contemporaneous live transmission from another location at the location of the Court. One would not argue that when using a written deposition or video deposition the witness is not appearing at trial 'by way of deposition,' at the location of the trial, notwithstanding the fact that the deposition was taken at another location. Nor would one argue Rule 45 would not allow the use of a subpoena to assure that 'appearance by deposition.' Here, contemporaneous transmission is now equally incorporated as proper trial procedure and an acceptable means of appearing at court and trial, as were written and video depositions, respectively, in the past. The subpoena power of Rule 45 of the Federal Rules of Civil Procedure is merely employed to facilitate yet another, now permitted, trial procedure and method of appearance. …

The Defendants' argued interpretation of the safeguards required for use of Rule 43 would narrow the scope of the authority granted to federal courts by allowing contemporaneous transmission **only** when the absent witness agrees to appear voluntarily; that is not the limitation(s) included within Rule 43 of the Federal Rules of Civil Procedure. No such limitation appears on the face of Rule 43, nor is found within the comments addressing the Rule, and this Court will not impose such an unjustified gloss on the rule by jurisprudential fiat.

*Id.* (emphasis in original).

The purpose behind Rule 45 is to avoid an undue expense and inconvenience on a witness by requiring the witness to travel unreasonably far for a deposition, hearing, or trial. In the situation where testimony by live video feed is warranted, however, this concern is moot, since the witness is able to testify from a location at or near the witness's home or office. Accordingly, ordering live video testimony "would ***benefit*** and ***not undermine*** the inherent goal of our system of justice." *Id.* at *6 (emphasis in original).

7

Similar reasoning was used by the court in the *DePuy* litigation, when ordering testimony via contemporaneous transmission:

> Plaintiffs do not seek to employ Rules 43 and 45 to obtain contemporaneous transmission of live testimony *in lieu* of in-court testimony. Rather, Plaintiffs seek to compel contemporaneous transmission of live testimony where a witness under Defendants' control is unable to appear live in court. Without this contemporaneous transmission to provide live testimony, the jury would be left with less reliable deposition transcripts and video. Plaintiffs' motion serves the inherent goal of Rule 43, which is to provide the jury with a more truthful witness. *See* Fed. R. Civ. P. 43 advisory committee's note (1996 amendment) ("The very ceremony of trial and the presence of the factfinder may exert a powerful force for truthtelling.").

*In re: DePuy Orthopaedics, Inc.,* No. 3:11-md-2244, slip op. at 5 (N.D. Tex. Sept. 20, 2016).

The *Roundtree* case, on which Defendants rely, erroneously considered video transmission as moving the trial to the physical location of the person testifying. *See Roundtree v. Chase Bank USA, N.A.,* No. 13-cv-239, 2014 WL 2480259, *1-2 (W.D. Wash. June 3, 2014). Indeed, the plain language of Rule 43 treats videoconferencing as equivalent to testimony in open court at the place of trial. *See* Fed. R. Civ. P. 43(a) (permitting "testimony in open court by contemporaneous transmission from a different location").

Courts have likewise considered a live video feed to be testimony at trial. *See*, *e.g.*, *Lopez v. NTI, LLC*, 748 F. Supp. 471, 480 (D. Md. 2010) (finding no prejudice to defendants in using videoconferencing, because "[e]ach of the witnesses will testify in open court, under oath, and will face cross-examination"); *FTC v. Swedish Match North Am., Inc.*, 197 F.R.D. 1, 2 (D.C. 2000) (finding same and noting "no practical difference between live testimony and contemporaneous video transmission based upon [his] experience."). Thus, the use of videoconferencing allows the witness to testify at trial without running afoul of the geographical limitations for subpoenas specified in Rule 45. *See also* Fed. R. Civ. P. 45(c)(1), Advisory Committee Note to the 2013

Amendments ("When an order under Rule 43(a) authorizes testimony from a remote location, the witness can be commanded to testify from any place described in Rule 45(c)(1)."); Fed. R. Civ. P. 1 (directing that rules "be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding").

Because a plain reading of the Federal Rules of Civil Procedure enables this Court to subpoena all of the witnesses at issue to testify via videoconference from a location within 100 miles of their home or office, this Court has the power to compel them to testify at trial.  As the Court explained in its May 26, 2017 Order and Reasons:

> After taking into consideration the different factors contemplated in this Motion, this Court nevertheless finds it appropriate to deny the Motion to Quash for the same reasons Defendants' Motion to Quash was denied on the record in the Boudreaux trial. While this Court recognizes the significant amount of time Mr. Jalota spent being deposed for this case, that deposition was taken over a year ago. At that time, Plaintiffs' theories of the case were based on design defect and included additional claims that Plaintiffs no longer assert in the instant case. After a year of discovery, dozens of depositions, and multiple motions, Plaintiffs have narrowed their theory and have entered stipulations saying the same. This Court has read Mr. Jalota's deposition and finds that much of his deposition is irrelevant to Plaintiffs' present, more narrowed theory of the case.
>
> This trial is the second bellwether case, following the Boudreaux case that completed in this Court several weeks ago. One of the purposes of bellwether cases is to inform the parties on the future course of this entire litigation. Mr. Jalota is a company executive who was at one time in charge of interfacing with the FDA with regards to Xarelto. This factor as well as the objective of bellwether trials tilts the balance, albeit slight, in favor of allowing live deposition of Mr. Jalota in this case. While the Court recognizes that Mr. Jalota's testimony will not be truly live, but over video feed, this method is still preferable to a year-old video deposition that is, en masse, unrelated to the present case.

*Xarelto*, 2017 WL 2311719 at *4.

Nothing has changed since the earlier bellwether trials to alter this Court's reasoning.

**B.      Good cause and compelling circumstances, and no associated unfair burden or prejudice, are associated with compelling the witness to testify via live <u>testimony broadcasted from a remote Federal Courthouse.</u>**

Live testimony is preferable to deposition testimony for a variety of reasons. For instance, it allows juries to engage in more robust credibility assessments. *Id. See also Ramada Worldwide,* 2006 WL 1675067 at *4 (explaining "live testimony is recognized as especially preferable over depositions where the factfinder will be making credibility determinations"); *Iorio v. Allianz Life Ins. Co.*, No. 05-cv-633, 2009 WL 3415703, at *5 (S.D. Cal. Oct. 21, 2009) (acknowledging "inherent disparity between depositions and live testimony, especially when credibility is at issue"); Fed. R. Civ. P. 43, Advisory Committee Note to the 1996 Amendments ("The very ceremony of trial and the presence of the factfinder may exert a powerful force for truthtelling.").

Thus, "deposition testimony is only a substitute, not to be resorted to if the witness can appear in person." *Banks v. Yokemick*, 144 F. Supp. 2d 272, 288 (S.D.N.Y. 2001); *see also Estate of Spear v. Comm'r*, 41 F.3d 103, 116 (3d Cir. 1994) ("[L]ive testimony is generally preferable to videotaped testimony"); *COA Network, Inc. v. J2 Global Commc'ns, Inc.*, No. 09-cv-6505, 2010 WL 2539692, at *4 (D.N.J. Jun. 17, 2010) ("Live testimony is generally preferred and parties should not unnecessarily be forced to rely on trial by deposition."); *Flores v. NJ Transit Rail Operations, Inc.*, No. 96-cv-3237, 1998 WL 1107871, at *2 (D.N.J. Nov. 2, 1998) ("Although the increasing availability and fidelity of videotaped depositions has provided a better alternative than reading a written transcription, the preference for live testimony is still endorsed by federal courts."); *Sherwood Grp., Inc. v. Rittereiser*, No. 90-cv-2414, 1990 WL

159925, at *6 (D.N.J. Oct. 17, 1990) ("[L]ive testimony is preferable to deposition testimony");

*accord Buchwald v. Renco Grp., Inc.*, No. 13-cv-7948, 2014 WL 4207113, at *2 (S.D.N.Y. Aug.

25, 2014) ("[T]he preference for live testimony" is "dictated by . . . common sense").

This alone, especially considering the importance of each witness in this litigation,

sufficiently shows "good cause and compelling circumstances." Additionally, when determining

whether there is good cause and compelling circumstances, other courts have considered the

following factors:

> (1) the control exerted over the witness by the defendant; (2) the
> complex, multi-party, multi-state nature of the litigation; (3) the
> apparent tactical advantage, as opposed to any real inconvenience to
> the witness, that the defendant is seeking by not producing the
> witness voluntarily; (4) the lack of any true prejudice to the
> defendant; and (5) the flexibility needed to manage a complex multi-
> district litigation.

*In re Vioxx Prods. Liab. Litig.*, 439 F. Supp. 2d 640, 643 (E.D. La. 2006). Here, all of these factors

weigh in favor of allowing live testimony by video of the witnesses, as they did with Dr. Peters in

*Boudreaux* and Mr. Jalota in *Orr.*

In regards to the first factor, as with Dr. Peters and Mr. Jalota, all but Mr. Moyes and Ms.

Torr continue to be employed by the Janssen Defendants, and thus Janssen may exert significant

control over them. As to Mr. Moyes and Ms. Torr, upon information and belief they have entered

into separation agreements which still allows Janssen to maintain certain levels of control over them.

As to the second factor, the Xarelto MDL continues to be a complex litigation involving

thousands of plaintiffs from across the country. In particular, the *Mingo* bellwether case will

influence the claims of DVT plaintiffs in future bellwether cases, and inform thousands of other

Xarelto cases. Further, the corporate depositions at issue were comprised of massive amounts of

testimony. While designations from the transcripts have been made, any videotaped deposition

testimony would require splicing together testimony from different examiners, creating more work for the lawyers and the Court on the eve of trial, and disserving the jury in its presentation.

As for Defendants' argument that permitting live video testimony could provide technological disruptions, that argument is unavailing. Certainly, the editing and playing of spliced deposition testimony would also introduce potential technological disruptions, as well as require this Court to spend time ruling on more deposition designations and objections. Since live testimony is always better than taped testimony, the fact that the outcome of this trial will bear on many more cases beyond the bounds of this consolidated trial continues to weigh in favor of allowing Plaintiffs to call witnesses to testify live via video.

For the third and fourth factors, Defendants' opposition is a purely tactical decision, as there can be no real claim of undue prejudice. Courts have been allowing live testimony via video for decades, and this technology is easier to use now, more than ever. While the parties may choose to send counsel to the witnesses, while also having counsel in the courtroom, any related expenses should be considered a normal trial expense, and will be minimal compared to the overall cost of this litigation. This is especially true considering that the proffered locations are all well within the geographic limits of the Court's subpoena powers.  The Defendants, and presumably their corporate representatives and employees involved with Xarelto, have known about the *Mingo* trial date now for some time; and, on balance, preserving and protecting the parties' constitutional rights to a fairly-presented jury trial surely outweighs the preservation of certain witnesses' malleable vacation schedules.  *See Farber v. Crestwood Midstream Partners L.P.,* No. 16-20742, 2017 WL 3014427, *6 (5th Cir. July 17, 2017) (describing the excuse of "a long-planned European vacation" to avoid a court deadline as "lame").

Finally, with respect to the fifth factor, live video transmission will promote comprehensiveness and coherency, especially when the alternative is spliced, edited, and recompiled clips of depositions. This is particularly important here, where the depositions were taken long ago. This was long before discovery was completed, and long before any experts submitted reports or sat for depositions, long before the DVT claims were promoted for trial purposes, so the witnesses were not, and could not have been, deposed on all material

## IV.    CONCLUSION

For the reasons set forth above, Defendants' motion should be denied.

Dated:  July 29, 2017

Respectfully submitted,

/s/ Leonard A. Davis
Leonard A. Davis, Esq. (Bar No. 14190)
**HERMAN, HERMAN & KATZ, LLC**
820 O'Keefe Avenue
New Orleans, LA  70113
PH:  (504) 581-4892
FAX:  (504) 561-6024
Email:  ldavis@hhklawfirm.com

/s/ Gerald E. Meunier
Gerald E. Meunier (Bar No. 9471)
**GAINSBURGH BENJAMIN DAVID MEUNIER**
**& WARSHAUER, LLC**
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA  70163-2800
PH:  (504) 522-2304
FAX: (504) 528-9973
Email:  gmeunier@gainsben.com

**Plaintiffs' Liaison Counsel**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on July 29, 2017, the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs and Defendants by operation of the court's electronic filing system and served on all other plaintiff counsel via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre- Trial Order No. 17.

<em>/s/ Gerald E. Meunier</em><br>
<strong>GERALD E. MEUNIER</strong>