UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: XARELTO (RIVAROXABAN) | * | MDL 2592 |
| PRODUCTS LIABILITY LITIGATION | * | |
| | * | SECTION L |
| THIS DOCUMENT RELATES TO: | * | |
| ***Boudreaux v. Bayer Corp., et al.*** | * | JUDGE ELDON E. FALLON |
| **Case No. 2:14-cv-02720** | * | |
| | * | MAGISTRATE JUDGE NORTH |

* * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF
RULE 59 MOTION FOR A NEW TRIAL**

## I.     INTRODUCTION

Try as they may to obfuscate the actual standards and the actual evidence at issue with selective and incomplete citations of authority, Defendants in their Opposition to Plaintiffs' Rule 59 Motion for a New Trial [Record Doc. 7048] ("Def. Opp.") cannot avoid the real prejudice that befell Mr. and Mrs. Boudreaux due to errors committed during the trial of their case. It is patently clear that objections to these errors were preserved in the record, and Plaintiffs were impacted by the preclusion of evidence regarding medical literature and foreign labels, the rejection of their proposed jury instructions, and the submission of demonstrative exhibits to the jury.  Plaintiffs stand by their opening memorandum, with the clarifications provided below.

## II.     ARGUMENT

### A.     No formal offer of proof is required to preserve error.

Defendants suggest throughout their memorandum that no issue can be preserved without a full, formal, contemporaneous offer of proof or specific elaboration at trial.[1] Many of the rules

---

[1] *See* Def. Opp. at 1, 3, 5-7, 10-12, 16-18.

and cases cited by Defendants, however, clearly state the opposite, when those rules and cases are viewed outside the context of short, cherry-picked catchphrases cited from within them.

For example, Federal Rule of Evidence 103 provides that if the substance of an objection is apparent from the context, the objecting party need not state the specific ground for the objection (for rulings admitting evidence) or present an offer of proof (for rulings excluding evidence).[2] The same rule confirms that once there is a ruling on the record, even if that ruling is entered before trial, there is no need to renew the objection or make a subsequent offer of proof.[3] This standard is repeated in the cases cited by Defendants, but Defendants omitted any references to it.

In *United States v. Ballis,* 28 F.3d 1399 (5th Cir. 1994),[4] for example, the Fifth Circuit confirmed that no formal offer of proof is required at trial, as long as the substance is otherwise known:

> At trial, [the defendant] made no formal offer of specific excluded evidence. However, neither the Rules nor this Circuit require a *formal* offer to preserve error…. Rather, Rule 103(a)(2) only requires that the proponent of the excluded evidence show in some fashion the substance of his proposed testimony, and Rule 103(b) leaves the form of offer within the discretion of the trial court.

*Id.* at 1406 (internal citation omitted) (emphasis in original). Indeed, in *Ballis*, where the trial court was deemed to have committed reversible error by excluding evidence, the objection had been preserved despite being only generally described at trial, because the substance was otherwise known through prior briefing, earlier trial testimony, and the context within which the questions were asked. *See id.* at 1406-07.

---

[2] Federal Rule of Evidence 103(a).

[3] Federal Rule of Evidence 103(b).

[4] Defendants cite this case on page 6 of its opposition, solely for the proposition that a general description of excluded evidence is insufficient to preserve error.

Similarly, in *Contogouris v. Pacific West Resources, L.L.C.,* 551 Fed. App'x 727, 732 and n.4 (5th Cir. 2013),[5] the Fifth Circuit acknowledged that issues may be preserved by means of discussions during a pretrial hearing, even if an offer of proof is not made at trial. The issue was not preserved in that case, however, because the party had stated one ground at trial and another on appeal. *Id.* at 732-34. The same acknowledgment was made in *Russell v. Plano Bank & Trust,* 130 F.3d 715, 720 and n.2 (5th Cir. 1997), although the issue was deemed not to have been preserved in that case, too, because the pretrial discussions had not been recorded by any means. Additionally, in *Pierce v. Ramsey Winch Co.,* 753 F.2d 416, 424 (5th Cir. 1985),[6] the Fifth Circuit held that objections regarding instructions had been preserved when the party's position had been made clear through previously-requested instructions and a memorandum, even though the grounds were not distinctly stated at trial.

Most of the other "preservation" cases cited by Defendants are inapposite because the objecting party did not provide any description or offer of proof at any time, either before or during the trial.[7] In another cited case, like *Contogouris,* 551 Fed. App'x at 732-34, the objecting party stated one ground at trial and another on appeal.[8]

---

[5] Defendants cite this case on page 5 of its opposition, solely for the proposition that "a party must inform[] the court of its substance by an offer of proof."

[6] Defendants cite this case on pages 3 and 17 of its opposition, solely for the proposition that a general objection, without elaboration, does not preserve error, because it does not draw the court's attention to any errors in the charge that might be corrected before deliberation.

[7] *See, e.g., United States v. Morrison,* 833 F.3d 491, 505-06 (5th Cir. 2016) (party forbidden from asking more questions due to time limits never stated which questions remained to be asked, thereby preventing the court from assessing whether more time was warranted); *United States v. Wen Chyn Liu,* 716 F.3d 158, 170-72 (5th Cir. 2013) (party never described which non-disclosed opinions his expert would have offered); *Seatrax, Inc. v. Sonbeck Int'l, Inc.,* 200 F.3d 359, 370 (5th Cir. 2000) (party who asked only to submit evidence of possession, and not possession by theft, did not preserve objection to error in disallowing evidence related to theft); *Merrill v. Southern Methodist Univ.,* 806 F.2d 600, 609-10 (5th Cir. 1986) (*see infra* page 6).

[8] *See Wright v. Ford Motor Co.,* 508 F.3d 263, 272 (5th Cir. 2007)

**B.** **Plaintiffs are entitled to a new trial because relevant global evidence from medical associations, outlined in a peer-reviewed publication, was precluded.**

Defendants claim, inaccurately, that Plaintiffs failed at trial to preserve their objection to precluding global evidence from medical associations. Multiple times before trial, in brief after brief, Plaintiffs cited to the relevance of global evidence from medical associations, including the *Lippi* article at issue here, in establishing Defendants' notice, scienter, and motives when they failed to provide instructions regarding Neoplastin PT testing.[9]

Defendants nonetheless claim non-preservation on the alleged ground that Plaintiffs never made the specific argument that such evidence was necessary to correct the jury's misimpression that no medical association or peer-reviewed publication recommends the use of PT.[10] This exact argument, however, was made on the record in oral argument before trial:

> MR. DENTON: International labels say this – Bayer's labels, by the way: Prothrombin time is influenced by a dose-dependent manner with Neoplastin. In cases of excessive doses, the PT is expected to be outside of the range. They say the same thing in Health Canada: Prothrombin time. Neoplastin reagent. Measuring the PT using the Neoplastin reagent may be useful. Remember that. That's what the U.S. regulatory requirement is, that this test is useful to determine the excess of anticoagulant activity. So you have got a situation where they are arguing in here completely different than what they say in their label. But it's not just them. They say there's no professional societies that support our theory of the case…. Actually, they are wrong about that, Your Honor. We put this in our response, and they didn't deal with it in the reply. They didn't deal with it today in the argument. There are societies. PT is a useful and

---

[9] *See, e.g.,* Plaintiffs' Response in Opposition to Defendants' Motion in Limine No. 3 to Preclude Evidence of Foreign Labeling and Regulatory Actions Under Federal Rules of Evidence 402 and 403 [Record Doc. 6239]; Plaintiffs' Response in Opposition to Defendants' Joint Motion for Partial Summary Judgment on the Ground that Federal Law Preempts Plaintiffs' Dosing, Monitoring, and Other Design Related Claims [Record Doc. 5652]; Plaintiffs' Response in Opposition to Defendants' Joint Motion for Partial Summary Judgment Based on the Learned Intermediary Doctrine [Record Doc. 5629]; Plaintiffs' Response in Opposition to Defendants' Joint *Daubert* Motions to Exclude Expert Opinions and Testimony Regarding Unapproved Dosing and Monitoring Regimens and the Experts' 20-Second PT Cut-Off Guideline [Record Doc. 5641].

[10] *See* Def. Opp. at 6.

> available method to determine the degree of anticoagulant effect.
> International Society on Thrombosis: PT is useful and readily
> available.[11]

When the issue was raised again at trial, Mr. Denton's line of questioning was aimed at presenting literature disagreeing with Dr. Johnson's opinion that Neoplastin PT does not help predict bleeding. Mr. Denton indicated in cross-examination that there was a lot of literature disagreeing with Dr. Johnson's opinion that Neoplastin PT does not help predict bleeding, and she disagreed.[12] Mr. Denton then showed Dr. Johnson the *Lippi* article, and began to challenge her inaccurate testimony with the Lippi article, but he was stopped by an objection that the testimony would be misleading and prejudicial because the article addressed non-U.S. standards.[13] At side-bar, Mr. Denton explained the fallacy of Defendants' objection, i.e., that articles were relevant to show how professional organizations, based on their review of the literature, had considered the PT test to be a reasonable recommendation on scientific grounds:

> MR. DENTON: Your Honor, this isn't about the labelings. This is about the various societies that Dr. Leissinger testified about, and a lot of the articles that they even cite. They cited foreign articles, too, for the science. We're talking about the science. We're not talking about labels. These are professional organizations that have looked at the literature and provided that PT is a reasonable recommendation.[14]

This Court nonetheless sustained the objection, holding that the potential involvement of different foreign regulatory standards could cause confusion under Rule 403.[15] Consequently, Mr.

---

[11] *See* 03/23/17 Oral Argument Transcript, at 115:8-116:4 (attached as Exhibit 1).

[12] *See* Trial Transcript at 1275:2-7 (attached as Exhibit 2).

[13] *See id.* at 1289:14-1293:10.

[14] *See id.* at 1293:11-18.

[15] *See id.* at 1293:20-1294:12.

Denton was prevented from demonstrating through the Lippi article the error in Dr. Johnson's opinion.

Contrary to what Defendants claim, this case is not like *Merrill,* 806 F.2d at 609-10,[16] where counsel presented absolutely no information about what was contained within the settlement agreement about which questions were precluded. In this case, by contrast, the content of, and purpose for presenting, the *Lippi* article was described not only in past briefs, but also by Mr. Denton during pretrial arguments, and again through the context of his questioning at trial. Each time, Plaintiffs' position was rejected, first in the pretrial ruling that this type of evidence was likely excludable under Federal Rules of Evidence 401 and 403,[17] and then again at trial when the court actually excluded it.[18] There is no requirement for repeating objections or explanations once it is clear it would be futile to do so. *See* Fed. R. Evid. 103(b); *Ballis,* 28 F.3d at 1406.

Defendants' remaining arguments regarding the propriety of this Court's ruling also are without merit. For example, Defendants attempt to place import on the fact that medical articles are inadmissible hearsay under Federal Rule of Evidence 803(18),[19] even though Plaintiffs never tried to admit, nor complained about the inability to admit, the article into evidence. Plaintiffs instead sought to follow the explicit procedures for learned treatises outlined in Rule 803(18), by reading statements from the article into the record as evidence, without admitting the article itself into evidence.

Likewise, Defendants cite to Plaintiffs' concession that the American College of Chest Physicians rejects the use of PT, as support for Defendants' argument that presenting guidelines

---

[16] *See* Def. Opp. at 6.

[17] *See* 04/18/17 Order and Reasons [Record Doc. 6254], at 13-14.

[18] *See supra* footnote 15.

[19] *See* Def. Opp. at 5.

from any non-U.S. association would cause confusion.[20] The stance by one U.S. association, however, bears in no way on the admissibility of the positions taken by other medical associations and societies. It simply shows that there are differences of opinion, and the existence of these differences of opinion, and Defendants' knowledge about these differences of opinion, go to the heart of this case, as questions for a jury to have decided.

Finally, Defendants' claim that this error had no effect because other evidence was presented through Dr. Leissinger,[21] is neither logical nor well-founded. Defendants emphasized Dr. Johnson's testimony, and it thus was critical for Plaintiffs to be able to reveal that Dr. Johnson was contradicted in published scientific literature. That similar evidence might have been introduced through Plaintiffs' own expert does not, and cannot, deprive Plaintiffs of the ability to use that same evidence to reveal the flaws in the testimony of Defendants' expert witness.

C.    **Plaintiffs are entitled to a new trial because relevant statements from foreign labels was precluded.**

Defendants claim that Plaintiffs failed to preserve this ground of error regarding statements from foreign labels, even while citing to Plaintiffs' designation of deposition testimony from Dr. Scott Berkowitz about the Canadian label, and this Court's Order sustaining Defendants' objection to that designation based on Rules 401 and 403.[22] Incredulously, Defendants complain that no offer of proof was made about this evidence, even though every word of precluded testimony was contained within the deposition designation.[23] Since this issue already was presented to, and ruled

---

[20] *See id.* at 8.

[21] *See id.* at 8-10.

[22] *See id.* at 10, *citing* 06/05/17 Order re Deposition Designations for Dr. Scott Berkowitz [Record Doc. 6723], at 36.

[23] *See id.* at 10-11; 06/05/17 Order re Deposition Designations for Dr. Scott Berkowitz [Record Doc. 6723], at 36. Additionally, the import of this testimony was addressed in detail in each memorandum cited *supra,* in footnote 9.

upon by, this Court, there were no requirements for further, futile, objections or explanations. *See* Fed. R. Evid. 103(b); *Ballis,* 28 F.3d at 1406. Likewise, based on this ruling about the deposition designations, and the above-referenced rulings about global evidence from medical associations, it was plain that the Court would not permit any additional attempts by Plaintiffs to present evidence from the European or New Zealand labels *Id.*  Defendants' challenge to the preservation of objections related to the preclusion of evidence about these other foreign labels are not well founded. As to Defendants' remaining arguments regarding the propriety of this Court's ruling, Plaintiffs refer to and rely upon their initial memorandum in support of this motion.

### D.   Plaintiffs are entitled to a new trial because irrelevant and unduly prejudicial evidence about the personal use of Xarelto was admitted.

Contrary to what Defendants argue, Plaintiffs' ability to question Dr. Peters about the Xarelto dose his wife took, in comparison to the dose taken by Mr. Boudreaux, did nothing to counteract the extreme prejudice resulting both from the improper admission of this evidence, and the permitted references to this evidence in the defense summation.[24]

### E.   Plaintiffs are entitled to a new trial because of instructional errors.

Defendants claim, inaccurately, that Plaintiffs failed to preserve the lack of instructions regarding the federal regulation imposing a duty on drug manufacturers to identify all laboratory tests helpful in following a patient's response or in identifying possible adverse reactions, and regarding the ability to consider a violation of a federal regulation as evidence of a failure to warn. Jury instructions were discussed in chambers, at least once, and at least two drafts of the instructions were exchanged with the court and counsel.

---

[24] *See* Def. Opp. at 14-16.

Defendants' claim that the proposed instructions are incorrect statements of the law is without merit. Plaintiffs provided supporting citations from the federal regulations and case law in their initial submission,[25] and referenced those citations again at the conclusion of trial when renewing their request for the instructions.[26] Contrary to what Defendants suggest, the law does not require instructions on every regulation in order to provide an instruction on a single, specific, applicable regulation.[27] Likewise, Plaintiffs did not seek to hold Defendants liable for violation of a federal regulation, which claim would have been preempted (as they suggest),[28] but instead sought, correctly, as supported by cited case law, to have such violation be considered as evidence supporting – but not establishing – the existence of a state law violation.

Finally, the fact that Plaintiffs' expert, Dr. Kessler, commented on the regulation[29] does not diminish the need for the Court to instruct the jury about the regulation, particularly given the fact that the Court admonished the jury that the Court (and, impliedly, not witnesses) would provide instructions on the rules of law that had to be followed.[30]

## F.     Plaintiffs are entitled to a new trial because demonstrative materials were sent to the jury room.

Contrary to what Defendants claim, at no time did Plaintiffs expressly warrant that it was appropriate to submit the demonstrative exhibits to the jury.[31] Rather, as stated in Plaintiffs' opening memorandum, Plaintiffs certified in writing only that they had reviewed "all of the

---

[25] *See* Plaintiffs' Proposed Jury Instructions [Record Doc. 6348], at 25-26.

[26] *See* Trial Transcript at 1536:18-1537:12.

[27] *See* Def. Opp. at 19.

[28] *See id.* at 19.

[29] *See id.* at 21.

[30] *See* Trial Transcript at 1630:16-19, 1631:2-15.

[31] *See* Def. Opp. at 23-24.

exhibits in the possession of the Court," and that "these comprise all of the exhibits admitted into evidence by the Court during the course of the trial."[32] This signed Certificate of Trial Exhibits said nothing about demonstrative materials which had not been admitted into evidence; and the demonstrative exhibits at issue were not admitted into evidence. Defendants knew this. The fact that their improper tactic was undetected does not diminish the resulting prejudice to Plaintiffs.

G.     **Defendants were not entitled to judgment as a matter of law.**

Finally, Defendants claim, inaccurately, that any errors were harmless because Defendants should have been granted a judgment dismissing Plaintiffs' claims as a matter of law.[33] This argument lacks relevance for present purposes, and, in any event, lacks merit for the reasons described by the Court following the presentation of Defendants' Motion for Judgment as a Matter of Law.[34]

III.     **CONCLUSION**

As addressed in detail in Plaintiffs' opening memorandum, and as supplemented in this memorandum, each error, on its own, and certainly when considered cumulatively, affected the substantial rights of Plaintiffs. As a result of the significant and unfair prejudice caused by each error, and the cumulative effect of all errors, Plaintiffs are entitled to a new trial.

Respectfully submitted,

Dated: July 25, 2017

*/s/ Leonard A. Davis*
Leonard A. Davis, Esq. (Bar No. 14190)
**HERMAN, HERMAN & KATZ, LLC**
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Email: ldavis@hhklawfirm.com

---

[32] *See* Certification of Trial Exhibits [Record Doc. 6391].

[33] *See* Def. Opp. at 25.

[34] *See* Trial Transcript at 1526:5-1527:18.

Gerald E. Meunier (Bar No. 9471)
*GAINSBURGH BENJAMIN DAVID MEUNIER*
*& WARSHAUER, LLC*
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
Email: gmeunier@gainsben.com

*Plaintiffs' Liaison Counsel*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 25, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs and Defendants by operation of the court's electronic filing system and served on all other plaintiff counsel via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre- Trial Order No. 17.

*/s/ Leonard A. Davis*
**LEONARD A. DAVIS**