**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **IN RE:  XARELTO (RIVAROXABAN) PRODUCTS** | * | **MDL NO. 2592** |
| **LIABILITY LITIGATION** | * | |
| | * | **SECTION L** |
| | * | |
| | * | **JUDGE ELDON E. FALLON** |
| | * | |
| | * | **MAG. JUDGE NORTH** |
| **************************************************** | * | |

**THIS DOCUMENT RELATES TO:**
    *Mingo v. Janssen, et al.*

<u>**ORDER AND REASONS**</u>

Before the Court are various motions *in limine* filed by Plaintiff Dora Mingo, and by Defendants Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC, Janssen Ortho LLC, Johnson & Johnson, Bayer Pharma AG, and Bayer Healthcare Pharmaceuticals Inc. (collectively, "Defendants").  All of the motions, except Rec. Doc. 7078, are opposed.  Having considered the parties' briefs and the applicable law, the Court now issues this Order and Reasons.

I.    **PRESENT MOTIONS**

   A.    **Plaintiff's Motions**

      1.    <u>Motion in *Limine* to Prohibit Objectively False Testimony That PT Neoplastin Is Not Useful, Does Not Work, or That Having Such a Warning in the Xarelto Label Would Be Reckless, Inappropriate or Dangerous</u> (Rec. Doc. 7059)

Plaintiff requests exclusion of testimony that PT Neoplastin is not useful, does not work, or that having such a warning in the Xarelto label would be reckless, inappropriate or dangerous. The parties dispute the introduction of evidence regarding the merits of PT Neoplastin to assess Xarelto patients' level of anticoagulation.  Plaintiff contends that it is an objectively known and established fact that in several countries other than the United States (*e.g.*, Canada), Bayer

affirmatively advises physicians that PT Neoplastin "*may be useful* to inform clinical decisions" to assess the anticoagulation effect of Xarelto.  During the previous trials, Defendants' counsel and witnesses said otherwise.  Plaintiff argues that while the Defendants may have different opinions about conclusions, they are not entitled to their own facts.  Plaintiff avers, for example, Defendants' electrophysiology expert, Dr. Sammy Khatib, was permitted to testify on direct examination in the *Orr* trial that based on his extensive study of PT measurements, it would have been "inappropriate" and "reckless" to include the PT Neoplastin language in the label proposed by Plaintiffs' regulatory expert, Dr. Suzanne Parisian: ". . . measuring PT may be useful to inform clinical decisions in this circumstance."  Plaintiff argues that she "should not have to abide bald-face misrepresentations of established fact from Defendants' witnesses, unless permitted to directly confront the witnesses with prior inconsistent statements in the context in which they were made."  Plaintiff objects with the Court's prior holding that foreign labels "were not admissible," but "if there is a statement made by a defendant in any place prior to or inconsistent with, detrimental to the position that they're taking now, that's an 801(d)(2) and is therefore admissible."  Plaintiff contends, under FRE 801(d)(2), "without placing these statements in proper context, merely allowing Plaintiffs to use the Defendants' inconsistent statement without reference to the foreign label deprives the jury of the information necessary to connect the dots and understand the significance of the document."  Therefore, Plaintiff concludes: "If the foreign label remains inadmissible, the Defendants should be prohibited from abandoning their prior statement."

    In response, Defendants contend that Plaintiff's motion attempts to circumvent this Court's prior ruling on inadmissibility of foreign labels.  Defendants explain that the evidence Plaintiff seeks to introduce was first requested by Health Canada and is therefore inadmissible under the Court's foreign labeling ruling.  But even if those statements were admissible as party statements

of Bayer, Defendants would still be entitled to "controvert or explain" them.  *Martinez v. Bally's La., Inc.*, 244 F.3d 474, 476–77 (5th Cir. 2001) (explaining that an evidentiary admission "may be controverted or explained by the party who made it").  Further, Defendants argue that Plaintiff's motion is, in fact, a *Daubert* motion, which comes too late.  Defendants further contend that even as a *Daubert* motion, Plaintiff's request should be denied because "numerous peer-reviewed publications discuss the unreliability and danger in using PT testing to inform clinical decision-making regarding Xarelto."

The Court concludes that Plaintiff's request is a *Daubert* motion in disguise.  Plaintiff's objection goes to the expert witness' conclusion—not their methodology or qualifications.  Such testimony may be dealt with by cross-examination at trial.  Accordingly, Plaintiff's motion is **DENIED**.

> 2.  Plaintiff's Motion in *Limine* to Exclude "Strikethrough" Exhibits and Related Testimony (Rec. Doc. 7069)

Pursuant to Federal Rules of Evidence 403, 602, 801, and 901, Plaintiff objects to the introduction of Defendants' Exhibits DX 5548 and DX 5222, also referred to as the "Strikethrough" document, and move *in limine* to prevent its use, reference or introduction into evidence by Defendants in the Mingo bellwether trial.  In both *Boudreaux* and *Orr* trials, Defendants sought the admission of a redline Microsoft Word document, which is an edited version of the June 2011 draft labeling for the VTE prevention indication.  The Word document was admitted along with an email string wherein Janssen Regulatory employee, Andrea Kollath, forwards the document to her colleagues which was purportedly sent to her from FDA Regulatory Health Project Manager, Tyree Newman.  Defendants, however, did not produce the original email between Ms. Kollath and Mr. Newman, producing instead only subsequent emails forwarding the original email with an attachment.  Plaintiff argues:  "Without the original email, there exists no

way to determine whether the document forwarded by Ms. Kollath was, in fact, the same document originally sent by Mr. Newman."   Therefore, Plaintiff contends that Defendants are unable to establish grounds for the document's admissibility.  Plaintiff argues that the document is a non-business record document, containing hearsay, and hearsay within hearsay, for which no proper foundation can be laid, and for which the authenticity of the document cannot be established.

In response, Defendants contend that there is sufficient evidence to authenticate the email and attached strikethrough document – both of which constitute business and public records under the Federal Rules of Evidence.  Specifically, the Janssen employee who received the "original email" has verified the authenticity of the produced documents.  Moreover, the email and attachment produced by the Janssen Defendants is substantively identical to a certified copy of the email and attached strikethrough document provided by and authenticated by FDA pursuant to a request under the Freedom of Information Act.

The Court finds the strikethrough evidence generally admissible under FRE 803(4) and 803(8) as business records and public records, respectively.   Nonetheless, the Court will **RESERVE** its ruling on this issue until Defendants properly lay foundations at trial that the evidence comes within the Rules.

### B.     Defendants' Motions

1.     Motion in *Limine* to Exclude Evidence of Foreign Labeling and Regulatory Actions Under Federal Rules of Evidence 402 and 403 (Rec. Doc. 7052)

Defendants move to exclude evidence of foreign labeling and regulatory actions. Defendants argue that because those unique foreign regulatory standards and the bases for regulatory action in each jurisdiction differ, foreign labeling and other regulatory actions do not bear—in this case—on the adequacy of Xarelto labeling or its design as approved by FDA for use in the United States.  Defendants do not seek to exclude otherwise relevant scientific information

generated outside the United States, evidence of otherwise relevant conduct of Defendants' non-United States employees, or otherwise relevant non-United States documents. Plaintiffs oppose the motion.

The labeling process, procedures, and requirements are different in foreign countries than those in the United States.  To allow the contents of foreign labels into evidence in a case involving the adequacy of a U.S. label is irrelevant, confusing, and misleading.  This evidence is likely excludable under Federal Rules of Evidence 401 and 403, but the Court will **RESERVE** its ruling on this issue because statements made by Defendants and the context or rebuttal use may have to be considered.

> 2.     <u>Defendants' Motion in *Limine* No. 4 Regarding the Record 4 Clinical Trial and SEIFE 2015</u> (Rec. Doc. 7053)

Under FRE 401, 402, and 403, Defendants move to prevent Plaintiff from introducing any evidence or argument regarding the RECORD 4 clinical trial or a 2015 article by journalist Charles Seife referencing the trial.  They aver that the FDA did not consider the data collected in the RECORD 4 clinical trial in determining whether to approve Xarelto for the indication that was tested in the trial.  Further, the RECORD clinical trials tested a different Xarelto dose, in a separate patient population, for an indication not at issue here.  In addition to being irrelevant, evidence regarding RECORD 4 will unfairly prejudice Defendants, confuse the issues, and waste time. Allowing any such evidence would necessitate extensive testimony on the RECORD 4 clinical trial and the related regulatory history.  The additional trial days that would have to be spent offering evidence on irrelevant and prejudicial clinical trial issues warrants exclusion.

Plaintiff opposes the motion.  Plaintiff contends that this evidence is relevant for many reasons.  The evidence relates to the credibility of Defendants, and can be used for impeachment purposes if Defendants tout the number of great studies performed in relation to Xarelto and the

great data allegedly obtained from those studies.  Moreover, Plaintiff argues that the evidence is relevant and probative to the ultimate issue in this case: the adequacy of Defendants' instructions for safely using Xarelto.

The Court declines to rule on this motion at this time and will **RESERVE** its ruling for trial since the predominate issue is relevance, which is contextual and the Plaintiff's use of the evidence may be relevant or dispositive.

3.   Defendants' Joint Motion in *Limine* to Exclude Argument or Evidence Regarding the Lack of a Reversal Agent for Xarelto (Rec. Doc. 7054)

Defendants move to preclude Plaintiff from presenting any evidence or argument regarding the lack of a reversal agent (or "antidote") for Xarelto.  Citing the Mississippi Products Liability Act, Defendants argue that any evidence or argument regarding a reversal agent is irrelevant to Plaintiffs' design-defect claim, which hinges on Plaintiffs' ability to show a "feasible alternative design" that "would have to a reasonable probability prevented the harm."  Defendants contend that the testimony from Ms. Mingo's treating physician makes clear that he would not have used a reversal agent—even if one had been available—when Ms. Mingo presented to the hospital with GI bleeding.  Plaintiffs oppose the motion.

One of the Plaintiff's claims is that Xarelto is improperly or negligently designed.  The lack of an antidote and the failure to provide or inform treaters of a test to determine the peak or trough of the drug may spawn relevance.  Since relevance is contextual, the Court declines to rule on this motion at this time and will **RESERVE** its ruling for trial.

4.   Defendants' Joint Motion in *Limine* to Exclude Argument that Plaintiff Used "Bayer Aspirin" (Rec. Doc. 7056)

Defendant moves to preclude testimony on the brand of aspirin Ms. Mingo—specifically and allegedly, "Bayer Aspirin."  It is undisputed that Ms. Mingo took aspirin, and that she was

taking aspirin at the time of her bleeding event.  Defendants contend, however, that there is no evidence, in either Ms. Mingo's medical records or the deposition testimony in this case, that she used Bayer-branded Aspirin.  Plaintiff opposes the motion, arguing that Plaintiff's medical record does indeed reflect Bayer Aspirin.  Moreover, Plaintiff avers that Defendants cannot be prejudiced by such "medical terminology" or brand.

The Court disagrees.  Under FRE 401 and 402, the brand of Aspirin Ms. Mingo used has no probative value to any of her claims.  Here, where the two drugs perhaps happen to be produced by the same manufacturer, the Court finds the brand of Aspirin irrelevant to the design or label of Xarelto.  Moreover, under FRE 403, identifying Aspirin as Defendants' product may prejudice them in this trial on Xarelto.  Accordingly, Defendants' motion is **SUSTAINED**.

5.    Defendants' Joint Motion in *Limine* to Exclude Argument or Evidence Regarding Unapproved Dosing (Rec. Doc. 7058)

Defendants request, under FRE 401 and 402, exclusion of any evidence or argument that some lower cumulative dose of Xarelto would be safer than the FDA-approved dose Plaintiff was prescribed because it is not relevant to Plaintiff's claims under the MPLA.  Moreover, under FRE 403, Defendants argue that evidence or argument that some lower cumulative dose of Xarelto would be safer than the FDA-approved dose Plaintiff was prescribed should be excluded because any probative value is substantially outweighed by the danger of confusion of the issues.  Plaintiff opposes the motion.  Rec. Doc. 7143.  Plaintiff avers that the dose and dosing regimen for Xarelto, and the consequences of the dose and dosing regimen, are inextricably intertwined with Ms. Mingo's failure to instruct claim, because they are what created the need for instructions about Neoplastin PT testing to evaluate a patient's absorption and risk of bleeding on Xarelto.

The Court finds this evidence relevant and not prejudicial.  Such testimony relates to Plaintiff's failure to instruct claim under the MPLA.  Accordingly, Defendants' motion is **DENIED**.

> 6.     Defendants' Joint Motion in *Limine* to Exclude Dr. Smart's Testimony Alleging That Xarelto is "Worst in Class" (Rec. Doc. 7071)

Defendants move *in limine* to exclude Dr. Frank Smart's testimony opining that Xarelto is the "worst in class."  Defendants anticipate that Dr. Smart will present testimony that other anticoagulant medicines are safer than Xarelto to create an improper inference that Ms. Mingo would have had a better outcome on a different medicine.  However, Defendants contend such "worst in class" testimony is irrelevant because Mississippi law precludes Plaintiff from asserting that alternative products are safer alternative designs, and Plaintiff has no evidence that Ms. Mingo would have had a different outcome on a different anticoagulant.  Moreover, Defendants argue that any perceived probative value that Plaintiff attributes to Dr. Smart's testimony would be substantially outweighed by the risk of unfair prejudice and jury confusion.  Accordingly, Defendants ask this Court to exclude this testimony and all related evidence under Rules 402 and 403.

Plaintiff opposes this motion.  Rec. Doc. 7141.  Plaintiff contends that Defendants' request is a tardy *Daubert* motion.  Moreover, Plaintiff argues that Dr. Smart's comparison opinion has not been presented solely for the purpose of proving a feasible alternative design.  Instead, he opines that Xarelto's dose is too high, and by comparison to other NOACs with similar clinical trials, he determined that Xarelto is the worst.  In other words, as an expert cardiologist, he provides the fact-finder with a relevant hierarchy of the various NOACs' efficacy and safety.  Plaintiff avers that this data is not just evidence supporting Plaintiffs' alternative design claim (regarding the need

to provide an assay to allow the blood level of drug to be assessed), but also supportive of Plaintiffs' failure to instruct claim.

The Court finds Dr. Smart's opinions supported by a review of publications on new oral anticoagulants, on his personal experience with prescribing Xarelto and other NOACs and on a review of "internal company documents." Defendants' chief dispute is with Dr. Smart's conclusion. Defendants may cross-examine Dr. Smart on these issues at trial in an attempt to establish the frailty of the basis of his conclusions, but excluding them at this time is inappropriate. Accordingly, Defendants' motion is **DENIED**.

> 7. <u>Defendants' Joint Motion in *Limine* to Exclude Evidence or Argument That the Xarelto Label Should Have Included Information About INRation Device Used in ROCKET AF or the U.S. Subgroup Data from ROCKET AF</u> (Rec. Doc. 7073)

Defendants move to exclude any and all evidence and argument that the Defendants should have included, or failed to include, information in the Xarelto label (1) about the impact of the use of the INRatio device in ROCKET AF, the clinical study supporting the stroke prevention in atrial fibrillation ("AFib") indication, or (2) regarding the U.S. subgroup data from ROCKET AF that was added to Xarelto's label in September, 2015. Defendants further renew their prior motions *in limine* filed in *Boudreaux* and *Orr* regarding evidence (1) that Defendants "defrauded the FDA," (2) that Defendants should have included information in the Xarelto label about the recall of the INRatio device used in the clinical trial ROCKET AF or reported the recall earlier, or (3) that is inconsistent with FDA's extensive and comprehensive review of the impact of the recall on ROCKET AF, issued in September 2016 and entitled "Impact of use of the INRatio device in ROCKET AF." Plaintiff opposes the motion.

The Court declines to rule on this motion at this time and will **RESERVE** its ruling for trial.

8.  <u>Defendants' Joint Motion in *Limine* to Exclude Dora Mingo's Hearsay Testimony</u> (Rec. Doc. 7075)

Defendants move *in limine*, pursuant to Federal Rule of Evidence 802 and 403, to exclude Plaintiff Dora Mingo's testimony that while she was in the hospital, she overheard an unidentified doctor state in passing: "Who in the hell put her on Xarelto?"  *See* Rec. Doc 7075, Exh. A, Deposition of Dora Mingo ("Mingo Dep.") at 31:10-17, 153:20-154:9.  Defendants argue that such testimony, along with other testimony by Ms. Mingo about what another physician allegedly said, is purely hearsay, purportedly offered to portray Xarelto as a medicine that should not be prescribed.  Moreover, Defendants contend that this testimony would unfairly prejudice them.

Plaintiff opposes the motion.  Plaintiff argues that the testimony is admissible under several exceptions to the hearsay rule, as a present sense impression under Rule 803(1), or an excited utterance under Rule 803(2).  Finally, Plaintiff contend that the potential prejudice of this evidence is overstated by Defendants and outweighed by the probative value of the evidence to Plaintiff's case.

The Court finds this testimony as clear hearsay, and no exceptions apply.  Accordingly, Defendants' motion is **SUSTAINED**.

9.  <u>Defendants' Joint Motion in *Limine* to Exclude Lost Wages</u> (Rec. Doc. 7077)

Defendants bring this motion *in limine* to exclude all evidence and arguments that relate to any prospective wages allegedly lost by Plaintiff Dora Mingo as a result of any injuries she attributes to Xarelto.  Plaintiff states that she is not pursuing a claim for lost wages at trial.  Rec. Doc. 7145.  As such, Defendants' motion *in limine* is **DENIED AS MOOT**.

## II.     CONCLUSION

Based on the foregoing reasons, accordingly,

**IT IS ORDERED** that the following motions *in limine* are **SUSTAINED**:  Rec. Docs. 7056 and 7075.

**IT IS FURTHER ORDERED** that the Court will **RESERVE** its rulings for the following motions *in limine*:  Rec. Docs. 7069; 7052; 7053; 7054; and 7073.

**IT IS FURTHER ORDERED** that the following motions *in limine* are **DENIED**:  Rec Docs. 7059; 7058; and 7071.

**IT IS FURTHER ORDERED** that the motion for leave to file under seal Exhibits A, C, and D (Rec. Doc. 7072) is **GRANTED.**

**IT IS FURTHER ORDERED** that Rec. Doc. 7077 is **DENIED AS MOOT**.


New Orleans, Louisiana, this 1st day of August, 2017.


**ELDON E. FALLON**
United States District Judge