UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE ELDON E. FALLON |
| Dora Mingo v. Janssen Research & Development, LLC et al. Case No. 2:15-cv-03469 | MAGISTRATE NORTH |

### DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE DR. DAVID TAFT AS AN EXPERT WITNESS AT TRIAL

Defendants Bayer HealthCare Pharmaceuticals Inc., Bayer Pharma AG, Janssen Pharmaceuticals, Inc., and Janssen Research & Development LLC (collectively, "Defendants") oppose Plaintiffs' Motion to Strike Dr. David Taft.

Defendants have amended their "may call" witness list to include Dr. Taft in response to Plaintiffs' shifting design-defect theory, which has been very difficult to pin down. In the briefing ahead of the first two bellwether trials, Plaintiffs backed away from any design-defect theory of liability based on Xarelto®'s dose or dosing regimen, and then later, on the eve of trial, chose not to pursue their design-defect claim altogether. This case has followed a similar pattern— Defendants moved for summary judgment on the basis that any dosing-based claims were preempted by federal law and failed under the Mississippi Product Liability Act (MPLA), and moved to exclude under *Daubert* any dosing-based expert opinions. *See* Docs. 6740, 6745, 6753. In response, Plaintiffs stated that they "will not pursue a theory of liability based on dosing" (Pls.' Design Preemption Opp. (Doc. 7007), at 12), but instead contended that their *only* design-defect theory is that "Xarelto was defectively designed because of the absence of an anti-Factor Xa assay"

(Pls.' MPLA Opp. (Doc. 7042), at 6). Based on those representations, Defendants served their witness list on July 7 without listing Dr. Taft, their pharmacokinetics/pharmacodynamics expert.

But in their statement of the case in the parties' proposed pretrial order, Plaintiffs were coy—they did not clearly articulate *any* design-defect theory. *See* Doc. 7084, at 4–6. Defendants sought clarity at the pretrial conference, to confirm the underpinning for Plaintiffs' design-defect theory—and whether Plaintiffs would be pursuing the theory *at all*—but they got no response. *See Mingo* Pretrial Confr. Tr. at 13:13–21 (Ms. Pruitt) ("They've asked me about narrowing the witness list. So I'm glad to try to do that, but until I know whether they're actually going to assert a claim for design defect, I can't really do that."). The Court acknowledged Defendants' predicament with regard to the witness list: "From the defendants' perspective, you have to listen to the evidence before you can make any firm decisions. I understand that." *Id.* at 13:22–24.

On Monday, July 31, counsel for the parties held a telephone call to discuss the conduct of the trial. Defendants' counsel again inquired whether, as in the first two bellwether trials, Plaintiffs would be dropping their design-defect claim. Plaintiffs' counsel responded that they in fact intended to pursue the claim but, as at the pretrial conference, would not commit to a particular design-defect theory. Defendants' counsel responded that in light of the continued uncertainty surrounding Plaintiffs' design-defect theory, Defendants would need to amend their witness list to add Dr. Taft. Plaintiffs' counsel did not object at the time or otherwise follow-up. Defendants promptly served an amended witness list on Wednesday, August 2, which listed Dr. Taft as a "may call" witness.

Plaintiffs' position that the addition of Dr. Taft to Defendants' "may call" list violates CMO 21 ignores the reality (1) that both parties have amended their witness lists in the run-up to all three trials (indeed, in *Orr*, Plaintiffs added a witness (Kelli Orr Walker) the week before trial), (2) that

Plaintiffs will suffer no prejudice from the addition because Plaintiffs have long known of Dr. Taft's opinions since they received his report in November 2016 and deposed him a month later, and (3) that Defendants' need to disclose Dr. Taft is a situation caused by the continued fluidity of Plaintiffs' position on their design-defect claim.

To be clear, if Plaintiffs stand by the representations made in their briefing, that their design-defect claim is premised only on "the absence of an anti-Factor Xa assay"—or if Plaintiffs abandon their design-defect claim entirely—there is no need for Defendants to call Dr. Taft. But if Plaintiffs are now shifting course and intend to ask the jury to determine liability on the basis that Xarelto should have been designed with a lower dose or a different dosing regimen, then Defendants should be allowed to call Dr. Taft to defend against that newly revived claim.

Accordingly, the Court should deny Plaintiffs' Motion.

* * *

Dr. Taft is a pharmacokinetics/pharmacodynamics expert whose particular emphasis in this litigation is addressing Xarelto's moderate variability. It is his opinion that Xarelto is a moderate-variability medicine, with a wide therapeutic range, and that its dose and dosing regimen does not lead to significant increase in exposure as compared with other proposed doses and dosing regimens. He is uniquely qualified among Defendants' listed expert witnesses to address these issues. Defendants disclosed Dr. Taft as a generic expert witness and served his expert report on November 15, 2016. Plaintiffs deposed Dr. Taft on December 20, 2016. Thus, Plaintiffs have known of Dr. Taft's existence and the substance of his testimony for more than seven months.

When Defendants exchanged witness lists on July 7 in accordance with CMO 21, they did so (a) following two prior bellwether trials in this litigation in which Plaintiffs voluntarily dismissed their design-defect claims; (b) when Plaintiffs insisted in summary-judgment briefing that the *only* design-defect theory they were pursuing related to the absence of a Xarelto-specific

3

anti-Factor Xa assay; and (c) when Plaintiffs stated in their *Daubert* opposition that they would not offer expert testimony on Xarelto's dose or dosing regimen. *See* Pls.' *Daubert* Opp. (Doc. 7001), at 5.[1]  Defendants relied on these representations that Plaintiffs were no longer pursuing a dose-based theory as the basis for their design-defect claim.

Recent events suggest that Plaintiffs have changed direction and may now intend to base their design-defect claim on a dosing theory. *First*, at the July 21–24 deposition of Dr. Anthonie Lensing, Bayer's Global Clinical Lead for the EINSTEIN clinical trials, Plaintiffs focused heavily on Xarelto's approved dose and dosing regimen. *Second*, in a call between counsel on Monday, July 31, Plaintiffs' counsel again refused to provide clarity on what their design-defect theory will be.[2]  In response, Defendants' counsel informed Plaintiffs' counsel on that call that Defendants would add Dr. Taft to the witness list, to ensure that Defendants have the right witnesses to confront whatever design-defect theory Plaintiffs might be pursuing. Defendants promptly served an updated witness list on August 2, identifying Dr. Taft as a "may-call" witness.

## ARGUMENT

To determine whether to excuse strict compliance with a witness-disclosure deadline, the Court should consider four factors: (1) the importance of the testimony; (2) the explanation for the timing of the disclosure; (3) the potential prejudice of allowing the testimony; and (4) the availability of a continuance to cure any prejudice. *E.E.O.C. v. Gen. Dynamics Corp.*, 999 F.2d

---

[1] Aside from insisting that dosing was not at issue, Plaintiffs did not contest Defendants' arguments on why a dose-based theory does not satisfy the MPLA's requirements for a design-defect claim, why such a claim is preempted, or why their experts' dose-based opinions fail under *Daubert* in any event. As such, Plaintiffs abandoned the claim. *See Scales v. Slater*, 181 F.3d 703, 709 n. 5 (5th Cir. 1999) (noting that the plaintiff had not "contested below the FAA's arguments for dismissal of her disparate impact claim [and] thus abandoned the claim."). Defendants will oppose at trial any attempt by Plaintiffs to pursue a claim that is based on Xarelto's dose or dosing regimen, or any other claims Plaintiffs abandoned at the summary-judgment stage.

[2] Additionally, the Court's August 2, 2017 ruling regarding the admissibility of dosing evidence as "relevant" to "Plaintiff's failure to instruct claim under the MPLA" may further drive Plaintiffs' to a dosing-based design-defect claim, despite their earlier representations. Doc. 7194, at 8.

113, 115 (5th Cir. 1993); *Murphy v. Magnolia Elec. Power Ass'n*, 639 F.2d 232, 235 (5th Cir. 1981). All of these factors, individually and collectively, favor allowing Defendants to amend their witness list to add Dr. Taft.

I.  **Dr. Taft's testimony is important to confront Plaintiffs' moving-target design-defect theory.**

The first and second factors—the testimony's importance and the explanation for the timing of its disclosure—are interrelated here. An expert witness needed to support a claim or defense is clearly "important." *Betzel v. State Farm Lloyds*, 480 F.3d 704, 707 (5th Cir. 2007). Dr. Taft's testimony is important to Defendants because of his unique qualifications to testify about the relationship between Xarelto's dose and its design, and therefore to defend against any dose-based design-defect theory that Plaintiffs may try to resurrect. Defendants included Dr. Taft in their supplemental witness list once it became clear earlier this week that Plaintiffs may be pursuing a design-defect theory other than one based on the absence of a Xarelto-specific anti-Factor Xa assay. All prior indications were that Plaintiffs either would either abandon the design-defect theory entirely (as they had done in the two prior bellwether trials) or, at least, focus their design-defect theory on the anti-Factor Xa assay (as they represented in their briefing).

Plaintiffs now make a "gotcha" argument, but this is a situation of their own making, by being unwilling to commit to a design-defect theory. Now that it has become clear that Plaintiffs may in fact be intending to pursue a theory that they had previously abandoned, Defendants have determined that they may need to call Dr. Taft to protect their right to defend against such a claim. Again, if Plaintiffs are not pursuing a dosing-based theory of liability, then Defendants will not need to call Dr. Taft. But Plaintiffs' shape-shifting, moving-target approach to their own case provides a valid explanation for Defendants supplementing their own witness list to protect their right to a fair trial. *Cf. Ovella v. B & C Const. & Equip., LLC*, No. 1:10CV285-LG-RHW, 2011

WL 3665120, at *2 (S.D. Miss. Aug. 5, 2011), *report and recommendation adopted*, No. 1:10CV285 LG-RHW, 2011 WL 3665016 (S.D. Miss. Aug. 19, 2011) (excusing untimely supplemental expert reports where "new opinions were prepared in response to late additions to [the opposing party's] expert report").

II.     **Plaintiffs will not be prejudiced by the appearance of a witness they have known about for more than seven months and whose deposition they have already taken.**

The third factor—prejudice—also favors Defendants' position. (And the fourth factor is irrelevant because no continuance is needed to cure non-existent prejudice and no one has requested one.[3]) A party is not prejudiced by the appearance of a witness with whom the party is familiar and who has been deposed, particularly where the potential need for the witness is determined by a theory of liability that the allegedly aggrieved party may or may not pursue. *See Huval v. Offshore Pipelines, Inc.*, 86 F.3d 454, 458 (5th Cir. 1996) (refusing to strike witness when the opposing party "had already been apprised of [the] proposed testimony"); *Benton v. Wal-Mart Stores E., LP*, No. 3:11CV313-TSL-MTP, 2012 WL 1657134, at *2 (S.D. Miss. May 10, 2012) (refusing to strike testimony of doctor who had not been designated as a testifying expert but whose identity had been disclosed seven months earlier and who had been deposed).

That is the case here. Defendants properly designated Dr. Taft as a generic expert witness, produced his report, and Dr. Taft sat for a lengthy deposition in December 2016. Plaintiffs have been familiar with Dr. Taft's opinions for more than seven months and have known that he is one of Defendants' potential witnesses. This case is therefore distinguishable from cases in which parties are deprived of discovery and face a "surprise" witness at trial. *Cf. Geiserman v.*

---

[3] "The third factor, possibility of a continuance, is not essential to the analysis of this witness as the court has determined that there is no real prejudice if the witness is allowed." *E.E.O.C. v. Mazzanti*, No. CIV.A.207CV171-B-A, 2009 WL 927426, at *6 (N.D. Miss. Apr. 2, 2009).

6

*MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990) (finding prejudice where party would be "unable to prepare for and take the depositions of [the] proposed experts before the discovery deadline").

Although Plaintiffs' Motion references the importance of enforcing "discovery rules" and preventing "late discovery" (Doc. 7198-1 at 3), this Motion has nothing to do with discovery—discovery is closed and Dr. Taft's opinions have already been discovered. Aside from these references to "discovery," Plaintiffs' Motion is silent on *how* Plaintiffs will be prejudiced by the appearance of a witness whose report and testimony they already have. Dr. Taft will not offer any opinions that are not contained in the materials that have been in Plaintiffs' possession for months. And he will not offer opinions beyond those necessary to rebut Plaintiffs' own evidence on a particular theory of liability. There will be no surprises, and therefore no prejudice. To the extent that Plaintiffs' counsel requires more time to prepare a cross-examination outline, plenty of time remains—the earliest Dr. Taft would testify is almost two weeks away, during Defendants' case-in-chief.

Instead of showing prejudice, Plaintiffs seek compliance with CMO 21 for compliance's sake, even though Plaintiffs' shifting theories are what has required Defendants' addition of Dr. Taft. Such "total inflexibility" regarding a "scheduling order [that] can have an outcome-determinative effect" is "undesirable." *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1254 (10th Cir. 2011).

## CONCLUSION

Plaintiffs can put this dispute to rest by simply picking a design-defect theory and disclosing it, as they are obligated to do. If Plaintiffs are pursuing the anti-Factor Xa assay theory alone in support of their design-defect claim, then Defendants can withdraw Dr. Taft. But if Plaintiffs intend to prove that Xarelto was defectively designed because of its approved dose or

7

dosing regimen, then Defendants are entitled to confront that theory with Dr. Taft's testimony.

The Court should deny Plaintiffs' Motion.

Respectfully submitted,

| | |
|---|---|
| BARRASSO USDIN KUPPERMAN FREEMAN & SARVER, L.L.C. | MITCHELL, WILLIAMS, SELIG, GATES & WOODYARD, P.L.L.C. |
| BY: /s/ *Richard E. Sarver* | By: */s/ Lyn P. Pruitt* |
| Richard E. Sarver | Lyn P. Pruitt |
| Celeste R. Coco-Ewing | Adria W. Conklin |
| BARRASSO USDIN KUPPERMAN FREEMAN & SARVER, L.L.C. | Benjamin D. Brenner |
| 909 Poydras Street, 24th Floor | Mary Catherine Way |
| New Orleans, Louisiana 70112 | MITCHELL, WILLIAMS, SELIG, GATES & WOODYARD, P.L.L.C. |
| Telephone: (504) 589-9700 | 425 West Capitol Ave., Suite 1800 |
| rsarver@barrassousdin.com | Little Rock, AR 72201 |
| ccoco-ewing@barrassousdin.com | Telephone: (501) 688-8800 |
| | lpruitt@mwlaw.com |
| | aconklin@mwlaw.com |
| DRINKER BIDDLE & REATH LLP | bbrenner@mwlaw.com |
| | mway@mwlaw.com |
| By: /s/ *Susan M. Sharko* | |
| Susan M. Sharko | |
| DRINKER BIDDLE & REATH LLP | WATKINS & EAGER PLLC |
| 600 Campus Drive | |
| Florham Park, NJ 07932-1047 | By: */s/ Walter T. Johnson* |
| Telephone: (973) 549-7000 | Walter T. Johnson |
| susan.sharko@dbr.com | WATKINS & EAGER PLLC |
| | The Emporium Building |
| Rodney M. Hudson | 400 East Capitol Street |
| DRINKER BIDDLE & REATH LLP | Jackson, Mississippi 39201 |
| 50 Fremont Street, 20th Floor | Telephone: (601) 965-1846 |
| San Francisco, CA 94105-2235 | wjohnson@watkinseager.com |
| Telephone: (415) 591-7500 | |
| Rodney.hudson@dbr.com | ARNOLD & PORTER KAYE SCHOLER LLP |
| Chanda A. Miller | By: /s/ *William Hoffman* |
| DRINKER BIDDLE & REATH LLP | William Hoffman |
| One Logan Square, Suite 2000 | ARNOLD & PORTER KAYE SCHOLER LLP |
| Philadelphia, PA 19103-6996 | 601 Massachusetts Ave., NW |
| Telephone: (215) 988-2500 | Washington, D.C. 20001 |
| Chanda.Miller@dbr.com | Telephone: (202) 942-5000 |
| | william.hoffman@apks.com |

IRWIN FRITCHIE URQUHART & MOORE LLC

By: /s/ *James B. Irwin*
James B. Irwin
Kim E. Moore
IRWIN FRITCHIE URQUHART & MOORE LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
jirwin@irwinllc.com

*Attorneys for Defendants Janssen Pharmaceuticals, Inc. and Janssen Research & Development, LLC*

Andrew K. Solow
Steven Glickstein
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8485
andrew.solow@apks.com
steven.glickstein@apks.com

BRADLEY ARANT BOULT CUMMINGS LLP

By: */s/ Lindsey C Boney IV*
Lindsey C Boney IV
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place, 1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8914
lboney@bradley.com

CHAFFE MCCALL L.L.P.

By: /s/ *John F. Olinde*
John F. Olinde
CHAFFE MCCALL L.L.P.
1100 Poydras Street, Suite 2300
New Orleans, LA 70163
Telephone: (504) 585-7241
olinde@chaffe.com

*Attorneys for Bayer HealthCare Pharmaceuticals Inc. and Bayer Pharma AG*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 4th day of August, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs by operation of the court's electronic filing system.

*/s/     John F. Olinde*