UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE ELDON E. FALLON |
| Dora Mingo, et al. v. Janssen Research & Development, LLC et al. | MAGISTRATE NORTH |
| Case No. 2:15-cv-03469 | |

### DEFENDANTS' MOTION TO STRIKE TESTIMONY OF DR. SUZANNE PARISIAN BASED ON PLAINTIFF'S JUDICIAL ADMISSIONS

Defendants respectfully move to strike the testimony of Dr. Suzanne Parisian that she "do[es]n't know" whether it was FDA, or someone else, who struck the proposed PT language from the Xarelto label prior to FDA approval, as evidenced in Defendants' Exhibit No. DX6100. Dr. Parisian was presented with FDA's certified copy of an email from its records, from an FDA employee to Janssen dated June 13, 2011, stating "please find attached redline versions of the label . . . ." Attached to the email is a document that contains redline edits. FDA provided the email and attachment pursuant to a FOIA request, along with a sworn affidavit authenticating and confirming that the email and attachment are the "public records of the United States Food and Drug Administration." These certified copies of FDA's records are consistent with the records produced by the Janssen Defendants, and there is no reasonable basis upon which to argue that the edits in the "attached redline versions" were made by anyone other than FDA.

On numerous occasions before trial, both in written pleadings and at oral argument before the Court, Plaintiff has conceded that the strikethroughs are FDA's. Moreover, Plaintiff's regulatory experts (including Dr. Parisian) have explained in their reports and/or testified in their depositions that it was FDA that struck the language shown in the redline of Defendants' Exhibit

No. DX6100.  Plaintiffs' prior concessions are judicial admissions that are "binding" and bar Plaintiffs from now disputing (through Dr. Parisian) that FDA struck Janssen's proposed PT language from the Xarelto label pre-approval.  *Martinez v. Bally's La., Inc.*, 244 F.3d 474, 476–77 (5th Cir. 2001).

## FACTUAL BACKGROUND

Throughout this litigation, the parties have been discussing a redline document arising out of pre-approval correspondence between Janssen and FDA regarding Xarelto's labeling.  In the first two bellwether trials, the Court admitted evidence of FDA's "strikethrough" of Janssen's proposal, through a document taken from Janssen's files as maintained in the normal course of business that had been produced to Plaintiffs.  *See Boudreaux* DX5547, DX5548; *Orr* DX5221, DX5222.  Prior to this trial, FDA provided to Janssen, in response to a Freedom of Information Act ("FOIA") request, certified copies of the "strikethrough" documents, as maintained by FDA.  Defendants introduced, and the Court admitted, this FDA-provided certified copy as DX6100 in this case.

The exhibit reflects that Janssen proposed language that would have advised physicians that when "considered necessary," Neoplastin PT could be used to "assess[] the pharmacodynamic effect of rivaroxaban," but that FDA struck that language from the proposed labeling.  Although the parties have debated the significance of FDA's redline, Dr. Parisian *never* disputed and, importantly, Plaintiff repeatedly acknowledged, that the redline was indeed FDA's.

### I. Plaintiffs' previous concessions

On the multiple occasions when Plaintiff and her regulatory experts (including Dr. Parisian) discussed the "strikethrough" evidence in the run-up to trial, they agreed that it was FDA who struck Janssen's proposed PT labeling.  Again, Plaintiff has disputed the significance of

FDA's redlines, but *repeatedly acknowledged* that it was FDA that made them.  Here is a sampling of Plaintiff's pretrial concessions—

1. **Plaintiffs' Opposition to Defendants' Labeling Preemption MSJ (Doc. 7040)**

    a. "Defendants instead have suggested that they were relieved of their obligation to provide this instruction because the FDA had rejected certain PT language proposed by Janssen for Section 12 (the Clinical Pharmacology section) of the Xarelto label for the proposed orthopedic indication. *While the FDA did strike language touching upon PT in that section of the label*, this does not represent clear evidence that the FDA would have struck an appropriate instruction . . . ." Pls.' Opp. to Defs.' Labeling Preemption MSJ (Doc. 7040), at 14 (emphasis added).

    b. "An accurate review of the label's history is essential. *In June 2011, the FDA removed Defendants' proposed language about PT and proposed replacing it* with the statement that '[t]he predictive value of these coagulation parameters for bleeding risk or efficacy has not been adequately studied.'" *Id.* at 14–15 (emphasis added).

    c. "Given these FDA findings, *it is apparent why the FDA would not allow Janssen to make the proposed PT statements in that label*: the FDA did not believe Defendants had gathered sufficient evidence to show a relationship between PT and the risk of bleeding." *Id.* at 15 (emphasis added).

    d. "Dr. Suzanne Parisian, an expert in FDA and regulatory practices, had concluded *that the FDA's actions were not a bar* to Defendants providing amended language." *Id.* at 17 (emphasis added).

2. *Parisian Report*

    a. "*For Section 12.2 Pharmacodynamics, the FDA made the following edits to the proposed language*: [quoting redlined Section 12.2 from DX5548]. *As set forth in the highlighting above, the FDA struck the language* …." Parisian Report ¶ 334 (emphasis added) (relevant pages attached as Exhibit __).

    b. "As set forth in paragraph 334 above, *the FDA struck the language*, 'Routine monitoring of coagulation parameters is not required with XARELTO use.' *The FDA also suggested removal of certain proposed PT commentary* and 'International Normalized Ratio (INR)' language prior to approval.  Because FDA and Sponsor negotiations were ongoing, it would be incorrect to imply that *by striking that proposed language in the context of these discussions*, that the FDA was in any way preventing the Sponsor from proposing additional or amended language regarding these

3

coagulation parameters in any relevant section of the label." *Id.* ¶ 424 (emphasis added).

3. *Parisian Deposition*

a. "Q. … So when the FDA responds to a labeling proposal and strikes out language that the manufacturer had proposed, can we agree that that is at least an indication that the FDA does not approve of that language?

A. Right. And I would say that for the routine monitoring of coagulation parameters is not required with Xarelto use -- *so they struck that line out, that they didn't want that to be in the label*." Parisian Dep. 651:5–13 (relevant excerpts attached as Exhibit __).

b. "Q. And you have – you have no idea why the FDA struck that language. Correct?

A. *No. It's just a fact that the FDA struck it.*

Q. Okay. And the FDA would not have struck that language if it didn't have a reason for striking that language. Right?

A. Hopefully, yes, sir, that is correct.

Q. Okay. But you can't say what the FDA's reasoning was?

A. *No, sir. It's just a fact that it's – it's crossed out.*" *Id.* at 660:19–661:4.

c. "Q. *Did the FDA in June of 2011 reject, as reflected through a strike-through, the proposal* that the sentence 'routine monitoring of coagulation parameters is not required with Xarelto use' be in the label?

A. *The FDA in section 12.2 struck* --

[Objection]

THE WITNESS: *Yes, we've already* –

Q. BY MR. DERRINGER: *Struck that. Right?*

A. *Right*. ..." *Id.* at 677:1–9.

d. "Q. *In June of 2011, did the FDA strike from the proposed label the sentence,* 'If assessment of a pharmacodynamic of rivaroxaban is considered unnecessary in individual cases, PT (measured in seconds) is recommended'?

A. *Yes, sir, they did.*" *Id.* at 681:4–9.

    **4.**    *Parisian Trial Testimony at* **Orr**

        a.    "Q. Right. Let's call up DX 5222.30.1. So the FDA struck the relationship between PT and rivaroxaban plasma concentration as linear and closely correlated, didn't they?

        A. ***Yes, sir.***" *Orr* Trial Tr. 1669:7–10.

## II.    Dr. Parisian's trial testimony

On Friday, in stark contrast to Plaintiff's multiple pretrial admissions that FDA was responsible for the redline strikethroughs, Dr. Parisian testified (and Plaintiff's counsel likewise suggested) that perhaps the edits were someone else's:

"Q. That was deleted, and it was deleted by the FDA; correct?

A. It's hard to know --

MR. HONNOLD: Objection, Your Honor. There's no foundation to who did what where.

THE COURT: Okay. She doesn't know.

MS. PRUITT: Your Honor, I was just asking her.

A. It's deleted.

Q. Okay?

A. I know that the company had proposed that statement, and it's now deleted. So it's saying that monitoring is required for Xarelto.

Q. Well, and you also know that this 6100 is what the FDA sent back to Janssen; correct?

MR. HONNOLD: Your Honor, same objection. There's no foundation as to which entity, company or FDA, did what. There is no –

THE COURT: Yeah, this witness may not be able to answer that. I mean, she doesn't know. You know, if you want to show her this, but this witness doesn't know who made it or what they did or why they did it. Or do you know, ma'am?

THE WITNESS: No, I don't know. There's been nothing stated by the FDA to say why any of this was deleted or what occurred with this. It's not consistent with any of the documents that FDA has published on their websites. So it is deleted. There are statements deleted, but who did it and when and why, there is no record of that.

5

Trial Tr. 1178:2–1179:5.

## ARGUMENT

The Court should strike Dr. Parisian's testimony regarding the identity of the author of the strikethrough in Defendants' Exhibit No. 6100 because Plaintiff has made judicial admissions conceding that FDA created the strikethroughs.

"A judicial admission is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them." *Martinez*, 244 F.3d at 476–77; *see also Davis v. A.G. Edwards & Sons, Inc.*, 823 F.2d 105, 108 (5th Cir. 1987) (explaining that "[f]acts that are admitted in the pleadings are no longer at issue"). Although "a judicial admission is not itself evidence, it has the effect of withdrawing a fact from contention." *Martinez*, 244 F.3d at 476–77.

To qualify as a judicial admission, a statement "must be (1) made in a judicial proceeding; (2) contrary to a fact essential to the theory of recovery; (3) deliberate, clear, and unequivocal; (4) such that giving it conclusive effect meets with public policy; and (5) about a fact on which judgment for the opposing party can be based." *Mitchell v. Hood*, No. 13-5875, 2015 WL 7854461, at *4 (E.D. La. Dec. 2, 2015) (Fallon, J.) (quoting *Heritage Bank v. Redcom Labs., Inc.*, 250 F.3d 319, 329 (5th Cir. 2001)). Plaintiff's statements—in her briefs and even in her experts' reports and depositions—conceding that FDA is the source of the redline strikethrough changes in DX6100, which is FDA's certified-copy version of DX5548 (admitted in *Boudreaux*) and DX5222 (admitted in *Orr*), meet all of the factors for judicial admissions. Her statements were made in the context of this case. The concessions go to relevant facts, adverse to Plaintiff, that are central to this case—namely, the adequacy of Xarelto's labeling. Plaintiff's statements that FDA struck the proposed language were "deliberate, clear, and unequivocal." *Mitchell*, 2015 WL 7854461, at *4.

And finally recognizing the statements as binding concessions here furthers the public interest in furthering a genuine search for truth.

Although the Court may consider all of the concessions listed above, Plaintiff's concessions in the pretrial briefing standing alone is sufficient to establish a binding judicial admission. The Fifth Circuit has held that courts "can appropriately treat statements in briefs as binding judicial admissions of fact." *City Nat'l Bank v. United States*, 907 F.2d 536, 544 (5th Cir. 1990). In fact, courts *routinely* treat statements of fact—such as Plaintiff's repeated statements here that FDA struck the PT-related language from Xarelto's draft labeling—as judicial admissions, even where the party making the statement in its briefing did not prevail on the basis of that statement of fact. *See, e.g.*, *Menendez v. Wal-Mart Stores, Inc.*, 364 F. App'x 62, 67 n.6 (5th Cir. 2010) (affirming denial of the plaintiff's motion to remand; "We treat the plaintiffs' statement in their briefing before the district court that Mr. Menendez was a citizen of Texas as a binding judicial admission."); *Collections Fine Jewelry, Inc. v. Stanley Convergent Sec. Solns.*, No. 3:11-CV-3230-N, 2013 WL 12123516, at *2 n.2 (N.D. Tex. June 4, 2013) (rejecting plaintiff's contention "that [defendant] fail[ed] to conclusively prove that the . . . contract governs the parties" and concluding that the plaintiff's "previous assertion that [defendant] assumed [the] rights and obligations is a binding judicial admission of fact"); *Mondis Tech. Ltd. v. Chimei InnoLux Corp.*, 822 F. Supp. 2d 639, 643–44 (E.D. Tex. 2011) (treating party's "admission in its response brief" regarding sales figures "as a binding judicial admission of fact" for the purpose of calculating damages); *Samson Contour Energy E & P, LLC v. Fred Bowman, Inc.*, No. 11-cv-0247, 2011 WL 6157481, at *3 (W.D. La. May 11, 2011) ("Statements in a brief or memorandum may be treated as binding judicial admissions."); *Averette v. Transocean Enters., Inc.*, No. 6:07-1557, 2010 WL 2814702, at *3 (W.D. La. July 16, 2010) (holding that party's "statements in its briefs, admitting

7

that the stabbing basket controls malfunctioned, are judicially binding" under judicial admissions doctrine); *Stumbaugh v. Am. Commercial Lines LLC*, No. 08-1669, 2009 WL 1458037, at *2 (E.D. La. May 26, 2009) (party could not claim seaman status after asserting in summary judgment motion that he was not an employee).

Plaintiff's multiple judicial admissions that FDA was indeed the source of the strikethrough language have the "effect of withdrawing [that] fact from contention" and should be deemed binding on Plaintiff in this litigation. *Martinez*, 244 F.3d at 476–77. The most appropriate remedy is to strike Dr. Parisian's contrary testimony. *See, e.g.*, *Patriot Rail Corp. v. Sierra R. Co.*, No. 2:09–cv–0009–TLN–AC, 2015 WL 4662707, at *4–5 (E.D. Cal. Aug. 5, 2015). In *Patriot Rail*, the court explained that the party's judicial admissions had "conclusively established" certain facts in the litigation. *Id.* at *5. The witness's testimony, the court observed, "directly contradicted … these admissions." *Id.* Accordingly, the court held the party "accountable to its binding judicial admission and struck [the witness's] contradictory testimony." *Id.*[1]

## CONCLUSION

For the reasons explained above, the Court should hold that Plaintiff's numerous concessions that FDA struck Janssen's proposed PT language are judicial admissions and that that fact is no longer at issue. Accordingly, the Court should strike Dr. Parisian's contrary testimony.

---

[1] *Patriot Rail* states a common-sense remedy that is consistent with Fifth Circuit precedent. *See Martinez* , 244 F.3d at 477 (holding that the district court did not err in refusing to consider the plaintiffs' evidence introduced to contradict an earlier judicial admission and explaining that the district court "properly precluded [the plaintiff's affidavit] from consideration as evidence of physical injury" because a party "may not explain or controvert a judicial admission"); *see also, e.g.*, *Armour v. Knowles*, 512 F.3d 147, 154 nn.13 & 14 (5th Cir. 2007) (explaining that party's "affidavit contrary to the binding admissions may not be permitted to rebut the admissions at trial"); *Giddens v. Cmty. Educ. Ctrs., Inc.*, 540 F. App'x 381, 390 n.3 (5th Cir. 2013) ("A party therefore may not rebut a judicial admission made in its pleadings with new evidence or testimony.") (citing *Davis v. A.G. Edwards & Sons, Inc.,* 823 F.2d 105, 107–08 (5th Cir.1987)); *Collier v. Roberts*, No. 13-425-SDD-EWD, 2016 WL 3448607, at *5 n.42 (M.D. La. June 17, 2016) ("The Fifth Circuit has explained that a party cannot rebut a judicial admission made in its pleadings with new evidence or testimony.") (citations omitted); *Halprin v. Fed. Deposit Ins. Corp.*, No. 5:13-CV-1042-RP, 2016 WL 5718021, at *8 (W.D. Tex. Sept. 30, 2016) ("Parties may not rebut a judicial admission made in their pleadings with new evidence or testimony.").

Respectfully submitted,

| | |
|---|---|
| BARRASSO USDIN KUPPERMAN FREEMAN & SARVER, L.L.C. | MITCHELL, WILLIAMS, SELIG, GATES & WOODYARD, P.L.L.C. |
| BY: /s/ *Richard E. Sarver*<br>Richard E. Sarver<br>Celeste R. Coco-Ewing<br>BARRASSO USDIN KUPPERMAN FREEMAN & SARVER, L.L.C.<br>909 Poydras Street, 24th Floor<br>New Orleans, Louisiana 70112<br>Telephone: (504) 589-9700<br>rsarver@barrassousdin.com<br>ccoco-ewing@barrassousdin.com | By: */s/ Lyn P. Pruitt*<br>Lyn P. Pruitt<br>Adria W. Conklin<br>Benjamin D. Brenner<br>Mary Catherine Way<br>MITCHELL, WILLIAMS, SELIG, GATES & WOODYARD, P.L.L.C.<br>425 West Capitol Ave., Suite 1800<br>Little Rock, AR 72201<br>Telephone: (501) 688-8800<br>lpruitt@mwlaw.com<br>aconklin@mwlaw.com<br>bbrenner@mwlaw.com<br>mway@mwlaw.com |
| DRINKER BIDDLE & REATH LLP | |
| By: /s/ *Susan M. Sharko*<br>Susan M. Sharko<br>DRINKER BIDDLE & REATH LLP<br>600 Campus Drive<br>Florham Park, NJ 07932-1047<br>Telephone: (973) 549-7000<br>susan.sharko@dbr.com | WATKINS & EAGER PLLC<br><br>By: */s/ Walter T. Johnson*<br>Walter T. Johnson<br>WATKINS & EAGER PLLC<br>The Emporium Building<br>400 East Capitol Street<br>Jackson, Mississippi 39201<br>Telephone: (601) 965-1846<br>wjohnson@watkinseager.com |
| Rodney M. Hudson<br>DRINKER BIDDLE & REATH LLP<br>50 Fremont Street, 20th Floor<br>San Francisco, CA 94105-2235<br>Telephone: (415) 591-7500<br>Rodney.hudson@dbr.com | |
| | ARNOLD & PORTER KAYE SCHOLER LLP |
| Chanda A. Miller<br>DRINKER BIDDLE & REATH LLP<br>One Logan Square, Suite 2000<br>Philadelphia, PA 19103-6996<br>Telephone: (215) 988-2500<br>Chanda.Miller@dbr.com | By: /s/ *William Hoffman*<br>William Hoffman<br>ARNOLD & PORTER KAYE SCHOLER LLP<br>601 Massachusetts Ave., NW<br>Washington, D.C. 20001<br>Telephone: (202) 942-5000<br>william.hoffman@apks.com |
| IRWIN FRITCHIE URQUHART & MOORE LLC<br><br>By: /s/ *James B. Irwin*<br>James B. Irwin | Andrew K. Solow<br>Steven Glickstein<br>ARNOLD & PORTER KAYE SCHOLER LLP<br>250 West 55th Street |

9

Kim E. Moore
IRWIN FRITCHIE URQUHART & MOORE LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
jirwin@irwinllc.com

*Attorneys for Defendants Janssen Pharmaceuticals, Inc. and Janssen Research & Development, LLC*

New York, New York 10019-9710
Telephone: (212) 836-8485
andrew.solow@apks.com
steven.glickstein@apks.com

BRADLEY ARANT BOULT CUMMINGS LLP

By: */s/ Lindsey C Boney IV*
Lindsey C Boney IV
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place, 1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8803
lboney@bradley.com

CHAFFE MCCALL L.L.P.

By: /s/ *John F. Olinde*
John F. Olinde
CHAFFE MCCALL L.L.P.
1100 Poydras Street, Suite 2300
New Orleans, LA 70163
Telephone: (504) 585-7241
olinde@chaffe.com

*Attorneys for Bayer HealthCare Pharmaceuticals Inc. and Bayer Pharma AG*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 14th day of August, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs by operation of the court's electronic filing system and a copy of the proposed documents to be placed under seal sent to Plaintiffs' Liaison Counsel by email transmission.

                                               */s/     John F. Olinde*