# EXHIBIT B

Protected - Subject to Further Protective Review

Page 651

1    A.    They say please.  Please accept these changes.
2    Q.    Can we --
3    A.    So it's negotiation still.
4    Q.    Can we agree -- strike that.
5          So when the FDA responds to a labeling
6    proposal and strikes out language that the manufacturer
7    had proposed, can we agree that that is at least an
8    indication that the FDA does not approve of that
9    language?
10   A.    Right.  And I would say that for the routine
11   monitoring of coagulation parameters is not required with
12   Xarelto use -- so they struck that line out, that they
13   didn't want that to be in the label.
14   Q.    Is that -- is a strike-through like -- well,
15   when the FDA responds to a labeling proposal and strikes
16   out language, is that striking out of language at least
17   an indication that the FDA will not approve a label that
18   contains the language that they struck out?
19   A.    No.  Because look at the line on the
20   international normalized ratio, INR, should not be used
21   for measuring rivaroxaban pharmacodynamic effect.  FDA
22   struck that out.  Subsequently the company said, That's
23   an important line.  FDA said, Fine, put it back in.
24         So no, this is still very much in play
25   with -- between the company and the manufacturer.  It's

Protected - Subject to Further Protective Review

Page 660

1  promptly evaluate.  So it's not in the FDA's text.
2      Q.    Okay.
3      A.    Okay.
4      Q.    Back at Exhibit 15, the FDA's response to
5  Janssen's proposed labeling going back to section 12.2.
6      A.    Yes, sir.
7      Q.    Where the FDA crossed out certain language
8  relating to PT under section 12.2.  Do you see that?
9      A.    Yes, sir.
10     Q.    Now, there's no dispute that the FDA crossed
11 that out.  Right?
12     A.    Not now.
13     Q.    Okay.
14     A.    Not now that the document production's been
15 changed.  That's correct.
16     Q.    Okay.
17           MR. WEINKOWITZ:  We hope.
18           THE WITNESS:  I hope.
19     Q.    BY MR. DERRINGER:  And you have -- you have no
20 idea why the FDA struck that language.  Correct?
21     A.    No.  It's just a fact that the FDA struck it.
22     Q.    Okay.  And the FDA would not have struck that
23 language if it didn't have a reason for striking that
24 language.  Right?
25     A.    Hopefully, yes, sir, that is correct.

Protected - Subject to Further Protective Review

Page 661

1      Q.    Okay.  But you can't say what the FDA's
2   reasoning was?
3      A.    No, sir.  It's just a fact that it's -- it's
4   crossed out.
5      Q.    Let's go to page 136, please.
6            MR. WEINKOWITZ:  Of Exhibit 3?
7            MR. DERRINGER:  Yes, Exhibit 3.
8      Q.    BY MR. DERRINGER:  Look at paragraph 385.  Tell
9   me when you're there.
10     A.    All right.  I'm there.
11     Q.    All right.  You say that in the second sentence
12  of that paragraph, "The team decided to only send their
13  proposed revisions to section 7, drug interactions, not
14  section 12, see Dr. Berkowitz's comment above, to FDA
15  because they, FDA and defendants, were mutually aligned
16  on that section."
17            Do you see that?
18     A.    Right.  And that's coming from that reference
19  of the document from Janssen.  I wouldn't know if they
20  were mutually aligned.
21     Q.    Okay.  So you're relying on what's said in that
22  document to support your statement that the FDA and the
23  defendants were mutually aligned on that section?
24     A.    Yes.
25     Q.    Okay.  What is that section?  As you write

Protected - Subject to Further Protective Review

Page 677

1    Q.   Did the FDA in June of 2011 reject, as
2  reflected through a strike-through, the proposal that the
3  sentence "routine monitoring of coagulation parameters is
4  not required with Xarelto use" be in the label?
5    A.   The FDA in section 12.2 struck --
6         MR. WEINKOWITZ:  Object to form.  Sorry.
7         THE WITNESS:  Yes, we've already --
8    Q.   BY MR. DERRINGER:  Struck that.  Right?
9    A.   Right.  The FDA -- it doesn't make any sense
10  here.
11    Q.   And did the FDA in June of 2011 also strike
12  from the label the sentence, "If assessment of the
13  pharmacodynamic effect of rivaroxaban is considered
14  necessary in individual cases, PT (measured in seconds)
15  is recommended"?  Yes or no?
16    A.   Let me see.  Let me look at the other -- that's
17  exhibit what?
18    Q.   15.
19    A.   15.  Because we're not talking -- we've got
20  to --
21    Q.   And you can say yes or no and then you can
22  say --
23         MR. WEINKOWITZ:  Let her finish the answer.
24         MR. DERRINGER:  Let me finish my
25  instruction, sir.

Golkow Technologies, Inc. - 1.877.370.DEPS

Protected - Subject to Further Protective Review

Page 681

1  oranges and trying to get them (sic) to say they're the
2  same and they're not.
3          MR. WEINKOWITZ:  Objection.
4      Q.  BY MR. DERRINGER:  In June of 2011, did the FDA
5  strike from the proposed label the sentence, "If
6  assessment of a pharmacodynamic of rivaroxaban is
7  considered unnecessary in individual cases, PT (measured
8  in seconds) is recommended"?
9      A.  Yes, sir, they did.  But that was in section
10 2 -- 12.2, which has nothing to do with this document,
11 the contingency document, which is a section 5.4 that
12 never existed.
13     Q.  And you're not going to speculate I presume --
14 well, strike that.
15     A.  I don't need to speculate.  There is no section
16 5.4.  I mean, the company didn't draft a section 5.4.
17     Q.  What question do you think you're answering
18 right now?
19     A.  It's not speculation.  I don't need to
20 speculate.  There is none.
21     Q.  You think there's a question right now?
22     A.  Yes.  I think it's -- you're asking me about
23 I'm not going to speculate.  Well, no, there is no 5.4.
24 It's a fact.
25     Q.  You thought there was a question that I was

Golkow Technologies, Inc. - 1.877.370.DEPS