UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  XARELTO (RIVAROXABAN) | * | MDL 2592 |
| PRODUCTS LIABILITY LITIGATION | * | |
| | * | SECTION L |
| | * | |
| **This Document Relates To:** | * | |
| Mingo v. Janssen Research & | * | |
| Development, LLC, et al. | * | |
| Case No. 2:15-cv-03469 | * | JUDGE ELDON E. FALLON |
| | * | |
| | * | MAG. JUDGE NORTH |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO STRIKE TESTIMONY OF SUZANNE PARISIAN
BASED ON PLAINTIFFS' JUDICIAL ADMISSIONS**

**MAY IT PLEASE THE COURT:**

**I.    INTRODUCTION**

Once again in this litigation, the Defendants have moved to strike the testimony of one of Plaintiffs' regulatory experts because they truthfully state that they are not the proper witness to lay the foundation for the redline strike-through in the proposed label that Janssen negotiated with the Food and Drug Administration ("FDA").  Defendants previously failed in their effort to strike Dr. David Kessler's testimony that he could not identify who was the author of strike throughs in the redlined document sought to be introduced during the Boudreaux trial.[1]  Now, they seek to strike Dr. Parisian's testimony regarding their Exhibit DX 6100 that "[t]here's been nothing stated by the FDA to say why any of this was deleted or what occurred . . .."[2]  Her testimony that she

---

[1] *See* Order dated May 1, 2017 (Rec.Doc. 6362).
[2] Trial Tr. 1178:25 – 1179:1-2.

1

does not know as a fact who the author of the strike through is competent and credible. The Defendants effectively agree, as their motion insists on an inference of authorship, not a proven fact.[3] As the Defendants have the sole burden to prove by "clear evidence" that it is "highly probable" and "reasonably certain" that the FDA would have prohibited them from adding language to the Xarelto label in the way the Plaintiff proposes, relying on inferences does not pass muster.[4] Neither, will the striking of Plaintiffs' experts' testimony improve their lot.

In the here and now, the Defendants had every opportunity to cross examine Dr. Parisian about a strike-through document as to which Defendants have been unable to establish the FDA authorship. They had access to Dr. Parisian's Report for cross-examination. They had access to Dr. Parisian's deposition testimony and, in fact, used that testimony at trial in an effort to impeach the witness. Not content with the testimony obtained even from the defendants' withering examination, they now overreach and request to have the testimony stricken. That should not occur.

## II. FACTUAL BACKGROUND

For purposes of this trial, the Defendants have obtained from the FDA, a third party, a certified copy of a proposed label that was transmitted by the FDA to Janssen. The document is self-authenticating, and has been admitted under Fed.R.Evid. 803(8). Nevertheless, as the document does not speak for itself, i.e., it does not identify the authors of any redlining, the Defendants have attempted to use Dr. Parisian to establish the foundation that is lacking in the document. However, Dr. Parisian is an expert witness for the plaintiffs. She did not work for Janssen or the FDA (at

---

[3] Def. Brf. at 1 ("there is no reasonable basis upon which to argue that the edits in the "attached redline versions" were made by anyone other than FDA.").
[4] *See Wyeth v. Levine*, 555 U.S. 555, 571-72 (2009); *In re Fosamax (Alendronate Sodium) Prod. Liab. Litig.*, 852 F.3d 268, 271, 286 (3d Cir. 2017).

the time DX 6100 was created). She has no personal knowledge of the authorship of the document's redlines. Prior to the trial, at Dr. Parisian's deposition she was asked questions laden with the unfounded assumption that the FDA was the author of the strikethrough language at issue. This testimony was used for impeachment, but could not lay the foundation of the document.

At trial, Dr. Parisian truthfully testified to her lack of personal knowledge of the document's origins. The complete colloquy transpired as follows:

Q. "Routine monitoring of coagulation parameters" -- "Routine
monitoring of coagulation parameters is not required with
Xarelto use."
Do you see that?
A. Right. That was deleted.
Q. That was deleted, and it was deleted by the FDA; correct?
A. It's hard to know --
MR. HONNOLD: Objection, Your Honor. There's no
foundation to who did what here.
THE COURT: Okay. She doesn't know.
MS. PRUITT: Your Honor, I was just asking her.
A. It's deleted.
BY MS. PRUITT:
Q. Okay.?
A. I know that the company had proposed that statement, and
it's now deleted. So it's saying that monitoring is required
for Xarelto.
Q. Well, and you also know that this 6100 is what the FDA
sent back to Janssen; correct?
MR. HONNOLD: Your Honor, same objection. There's no
foundation as to which entity, company or FDA, did what. There
is no --
THE COURT: Yeah, this witness may not be able to
answer that. I mean, she doesn't know.
You know, if you want to show her this, but this
witness doesn't know who made it or what they did or why they
did it.
Or do you know, ma'am?
THE WITNESS: No, I don't know. There's been nothing
stated by the FDA to say why any of this was deleted or what
occurred with this. It's not consistent with any of the
documents that FDA has published on their websites. So it is
deleted. There are statements deleted, but who did it and when
and why, there is no record of that.

BY MS. PRUITT:
Q. No record that you've seen?
A. I've looked at all the types of documents I can see. I've looked at all the documents on the website. I've looked at all the documents around this issue as to who deleted what lines, and it's not a clear tracking as to who deleted it. This is not the typical way that you would know who deleted what. So there are deletions, but who deleted them and why, I don't know. And they're not -- the deletions are not consistent with anything the FDA subsequently said. In fact, it contradicts what FDA has said in other documents.

Trial Tr. at 1177:22 – 1179:16.

As this Court observed during the trial, Dr. Parisian "doesn't know" who did what in terms of redlining the document. *Id.* Nor could she. She was not personally involved. Nevertheless, the Court admitted the document:

The -- the material passes the 901 -- it's authenticated. It looks -- it looks to me what it appears to be. So I'll admit it.
But insofar as this witness's testimony regarding it, she doesn't authenticate it. The document is authenticated because it appears to be what it is, a US Food and Drug Administration certificate on it. But who did what, this witness is not able to testify to.
   I'll admit the document, though.

Trial Tr. at 1181:6 – 14.

Unsatisfied with this ruling, Defendants attempted to impeach Dr. Parisian with her prior deposition testimony. After playing the testimony over the objections of the Plaintiffs, the following colloquy again confirmed that Dr. Parisian could not speak from personal knowledge about the authorship of the redline strike-throughs:

And that's what you said on that day at that time; is that correct, Doctor?
A. Based on what I was told by the company at that time, yes, ma'am.

> THE COURT: Do you know of your own independent
> knowledge who crossed that out?
> THE WITNESS: No, sir. But the company had
> represented before that deposition that it was crossed out by
> the FDA.

Trial Tr. at 1183:16 – 1184:1.

Unable to employ Dr. Parisian to provide the foundation to the strike-throughs they themselves are unable to provide, the Defendants seek to strike Dr. Parisian's contrary testimony. This is improper.

With respect to the request to strike Dr. Parisian's testimony, Defendants seek nothing less than an evidentiary opportunity which has come and gone in this trial. They were allowed through extensive cross-examination to fully explore her knowledge and testimony regarding this issue. Nonetheless, they could refer her to any documents or material to change or impeach her testimony, and instead simply persisted in trying to have her testify to something she could not testify about based on first-hand knowledge. Dr. Parisian explained she was not part of the back-and-forth exchange regarding this draft label; and, just as importantly, the document itself does not identify, by marginal comments or otherwise, which track changes were made by whom. Dr. Parisian made it clear she could not verify who made certain track changes in a draft label. It is for the jury to give that testimony whatever weight or credibility the jury believes it deserves. There is no basis for striking the truthful testimony of this witness.

Moreover, for Defendants to ask that a witness' testimony be struck from the record of the trial <u>after</u> the witness has been discharged from the stand and has left the trial, would be patently unfair to Plaintiffs.

Finally, what defendants are asking the Court to do would create an insurmountable evidentiary problem in this record. As the above transcript excerpt reflects, the Court was obliged

5

to state in the presence of the jury that Dr. Parisian's testimony during cross-examination was that she simply did not know and could not say that it was the FDA that struck certain language in this draft label. This clarified the witness' testimony and explained why certain questioning was improper. For the Court to now advise the jury who heard this, that the very same, clarified testimony has been struck and should be disregarded, can only serve to inject confusion among jurors, as well as create an incurable inconsistency regarding the evidence of record. The fact that Defendants simply failed to elicit testimony from a certain witness which Defendants hoped to elicit, in no way can justify such an adverse impact on these proceedings.

Having failed to secure testimony by which they intend to give a document preemptive effect, Defendants alternatively seek to conjure needed fact evidence from so-called "judicial admissions" they believe were made in Plaintiffs' briefs. Given their burden of presenting "clear evidence" support for what is tantamount to an affirmative preemption defense, Defendants' proposal is nothing short of remarkable.

Under well-established Fifth Circuit law, "[a] judicial admission is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them." *Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474, 476 (5th Cir. 2001). Only when "made intentionally as a waiver," may a statement made by counsel during trial release "the opponent from proof of fact." *Id.* "Pleadings" are limited to those documents identified in Federal Rule of Civil Procedure 7, *i.e.*, a complaint; an answer to a complaint; an answer to a counterclaim designated as a counterclaim; an answer to a crossclaim; a third-party complaint; an answer to a third-party complaint; and if the court orders one, a reply to an answer. All other filings are either "motions or other papers." Fed.R.Civ.P. 7(b). None of the papers filed by Ms. Mingo that the Defendants identify in their motion to strike are "pleadings" or "stipulations" subject to the

6

mandatory judicial admission doctrine. *Compare Patriot Rail Corp. v. Sierra R.R. Co.,* No. 2:09-cv-0009, 2015 WL 4662707, at *4 (E.D. Cal. Aug. 5, 2015) (striking trial testimony that was inconsistent with the plaintiff's complaint).

Moreover, even if "judicial admissions" were to be based solely on arguments made in briefs, as opposed to declarations in pleadings addressed to the opposing party (not the Court), the citations to briefs identified by the Defendants reflect at best "evidentiary admissions," which are "'merely a statement of assertion or concession made for some independent purpose,' [which] may be controverted or explained by the party." *Martinez,* 244 F.3d at 476-77, *quoting McNamara v. Miller,* 269 F.2d 511, 515 (D.C. Cir. 1959).

Defendants refer to this Court's decision in the case of *Mitchell v. Hood*, No. 13-5875, 2015 WL 7854461 (E.D. La. Dec. 2, 2015). Indeed, the case is instructive. There, Your Honor found that a proposed "judicial admission" failed to satisfy one of the factors required for a statement to constitute a judicial admission, i.e., that the statement or fact be "deliberate, clear and unequivocal…." *See id.* at *4. Since the statements in that case were made for purposes related to a different context, the Court concluded that they should be deemed more appropriately as "evidentiary admissions," *i.e.,* matters appropriate for further explanation or controversion in the proceedings. *Id.*

Here, it must be remembered that Dr. Parisian testified to only being told by the Defendants that the FDA had struck through certain language in the Xarelto draft label for DVT treatment. In other words, the information came from representations from the Defendants. When the issue of preemption was briefed, Plaintiffs addressed the merits of preemption relying (as Dr. Parisian did) on such representations that the FDA struck through language in the label. However, since at this point the only source of the information is the say-so of the Defendants, the same result as the

Court reached in *Mitchell* is proper here, *i.e.,* the assertion that the FDA struck through certain language in this label is not sufficiently "deliberate, clear and unequivocal" to qualify as a judicial admission, but is more in the nature of an evidentiary admission made during preemption briefing.

Finally, it again is critical that the trial record not be disregarded in consideration of this motion. After the draft label in question had been addressed with Dr. Parisian, the Court advised the jury: "members of the jury, I admitted a document because it appears to be what it says it is. And there is some strikeouts, but it doesn't appear who did it or why they did it. This witness may have testified before as to certain things, but she doesn't know who did it or who -- or why they did it. She's not an FDA person. So it is what it is, but –" Trial Tr. at 1185:24 – 1186:5. Defendants still have every opportunity to establish through competent evidence what they seek to establish concerning this label document; and, given the preemptive effect they contemplate, it is important that their proof be based on competent evidence, not supposition or conjured "admissions."

For the reasons set forth above, Defendants' motion should be denied.

Dated: August 15, 2017

Respectfully submitted,

*/s/ Leonard A. Davis*
_____
Leonard A. Davis, Esq. (Bar No. 14190)
**HERMAN, HERMAN & KATZ, LLC**
820 O'Keefe Avenue
New Orleans, LA  70113
PH:  (504) 581-4892
FAX:  (504) 561-6024
Email:  ldavis@hhklawfirm.com

Gerald E. Meunier (Bar No. 9471)
***GAINSBURGH BENJAMIN DAVID MEUNIER
& WARSHAUER, LLC***
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA  70163-2800
PH:  (504) 522-2304
FAX: (504) 528-9973
Email:gmeunier@gainsben.com

***Plaintiffs' Liaison Counsel***

9

## PLAINTIFFS' STEERING COMMITTEE

Andy D. Birchfield, Jr. (Co-Lead Counsel)
234 Commerce Street
Post Office Box 4160
Montgomery, Alabama 36103-4160
Phone: (334) 269-2343
Fax: (334) 954-7555
Email: Andy.Birchfield@BeasleyAllen.com

Brian H. Barr (Co-Lead Counsel)
316 Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7045
Fax: (850) 436-6044
Email: bbarr@levinlaw.com

Russell T. Abney
2100 RiverEdge Parkway,
Suite 720
Atlanta, Georgia 30328
Email: rabney@lawyerworks.com

Dr. Mark Alan Hoffman
1650 Market Street, Suite 3450
Philadelphia, PA 19103
Phone: (215) 574-2000
Fax: (215) 574-3080
Email: mhoffman@rossfellercasey.com

Michael Goetz
201 N. Franklin St., 7th Floor
Tampa, FL 33602
Phone: (813) 221-6581
Fax: (813) 222-4737
Email: MGoetz@ForThePeople.com

Neil D. Overholtz
17 E. Main Street, Suite 200
Pensacola, Florida 32501
Phone: (850) 916-7450
Fax: (850) 916-7449
Email: noverholtz@awkolaw.com

Bradley D. Honnold
11150 Overbrook Rd., Ste. 200
Leawood, KS 66211
Phone: (913) 266-2300
Fax: (913) 266-2366
Email: bhonnold@bflawfirm.com

Frederick Longer
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215-592-4663
Email: flonger@lfsblaw.com

Jeffrey S. Grand
Seeger Weiss
77 Water Street
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
Email: jgrand@seegerweiss.com

Roger C. Denton
100 S. 4th Street
St. Louis, MO 63102
Phone: (314) 621-6115
Email: rdenton@uselaws.com

Dianne M. Nast
1101 Market Street, Suite 2801
Philadelphia, Pennsylvania 19107
Phone: (215) 923-9300
Email: dnast@nastlaw.com

Ellen Relkin
700 Broadway
New York, New York 10003
Phone: (212) 558-5500
Fax: (212) 344-5461
Email: Erelkin@weitzlux.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 15, 2017 a copy of the above and foregoing Plaintiffs' Response in Opposition to Defendants' Motion to Strike Testimony of Suzanne Parisian Based on Plaintiffs' Judicial Admissions has contemporaneously with or before filing been served on all parties or their attorneys in a manner authorized by FRCP 5(b)(2), Local Rule 5.1 of the Eastern District of Louisiana and via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre-Trial Order No. 17.

*/s/ Leonard A. Davis*
**Leonard A. Davis**