# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE ELDON E. FALLON |
| Dora Mingo v. Janssen Research & Development, LLC et al. Case No. 2:15-cv-03469 | MAGISTRATE NORTH |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR JUDGMENT AS A MATTER OF LAW AT THE CLOSE OF PLAINTIFF'S CASE

Defendants Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC, Bayer HealthCare Pharmaceuticals, Inc., and Bayer Pharma AG (collectively, "Defendants"), pursuant to Rule 50(a), hereby submit this memorandum of law, at the close of Plaintiff's case-in-chief, for judgment as a matter of law on Plaintiff's two remaining causes of action—namely, that Xarelto is unreasonably dangerous because of defective design and inadequate warning or instruction, under Miss. Code Ann. § 11-1-63.  In this memorandum of law, without waiver of any of the grounds set forth in their motion filed simultaneously, Defendants highlight the following grounds in particular.[1]

1.      This is the first bellwether trial in this MDL where Plaintiff has ultimately pursued a design-defect claim based on Defendants' alleged failure to develop an adjunct product, a rivaroxaban-specific anti-Factor Xa assay, to be used with Xarelto®.  Defendants are entitled to

---

[1] Defendants have filed a separate motion and brief explaining other grounds that entitle Defendants to judgment as a matter of law on Plaintiff's claims.  Defendants make this motion at the close of Plaintiff's case-in-chief without waiver of their right to move for judgment as a matter of law more broadly—including but not limited to the arguments in this motion, as well as arguments related to Plaintiff's demand for punitive damages—at the close of all evidence. *See, e.g., Gonzales v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745, 750–52 (5th Cir. 1993) (holding that defendant may move for judgment as a matter of law on fewer than all issues at the close of plaintiffs' case, and then move more broadly at the close of all evidence).

judgment as a matter of law because Plaintiff has not adduced evidence of a *feasible* alternative design of Xarelto—*i.e.*, a design that would have "to a reasonable probability prevented the harm" while not "impairing the utility, usefulness, practicality or desirability of the product." Miss. Code Ann. § 11-1-63(f). In particular, Plaintiff's own experts have made clear that Defendants could not have practically adopted a rivaroxaban-specific anti-Factor Xa assay at the time Xarelto was brought to market in 2011. And critically, Plaintiff has not introduced any evidence that Xarelto did not function as an anticoagulant is expected to function.[2] Finally, Plaintiff's proposed alternative design is an entirely different "adjunct" product and thus cannot be a feasible alternative design under Mississippi law. Plaintiff's design-defect claim fails as a matter of law.

2.      Defendants are entitled to judgment as a matter of law on Plaintiff's failure-to-warn-or-instruct claim. Ms. Mingo testified unequivocally that she did not read the Xarelto Medication Guide and that she would not have taken Xarelto had she done so. This testimony alone forecloses her claim. Moreover, there is not a legally sufficient evidentiary basis for a reasonable jury to find that any allegedly inadequate warning or instruction proximately caused Ms. Mingo's bleeding event because Dr. Jordon was already aware of the risk of bleeding and clearly testified that a different warning or instruction in Xarelto's label would not have changed his prescribing decision for Ms. Mingo. The physician's prescribing decision is the only relevant factor under Mississippi law. And to the extent Plaintiff asserts that Xarelto's label should have instructed physicians about the availability of an anti-Factor Xa assay, such a claim is prejudicially late and should be dismissed.

---

[2] As explained in Defendant's second motion for judgment as a matter of law, filed simultaneously herewith, Plaintiff's claim fails for lack of proof that a rivaroxaban-specific anti-Factor Xa assay would have avoided Ms. Mingo's injuries.

**3.**     The Court should grant Defendants judgment as a matter of law because Plaintiff has not established that Xarelto is the medical cause of her bleeding event.  An MPLA claim involving a prescription drug requires proof that the injury would not have occurred had the drug not been administered.  Because Plaintiff has not established to a reasonable degree of medical probability that Xarelto caused her injury, there is not a legally sufficient evidentiary basis to find for Plaintiff on her MPLA claims.

**4.**     Plaintiff's MPLA claims also fail because Plaintiff cannot satisfy Mississippi's requirement of legal or proximate cause.  Mississippi law requires that the plaintiff show "'but for the defendant's [conduct], the injury would not have occurred."  *Bennett v. Highland Park Apartments, LLC*, 170 So.3d 522, 528 (Miss. Ct. App. 2014).  Here, because there is no dispute that Ms. Mingo required anticoagulation therapy, Plaintiff must prove that without the use of Xarelto, her injuries would have been avoided on a different anticoagulant medicine.

**5.**     Plaintiff's MPLA claims are preempted by federal law.

**a.**     Plaintiff's failure-to-warn-or-instruct claim is preempted because Defendants could not unilaterally alter Xarelto's FDA-approved labeling to recommend off-label uses of adjunct products or to add monitoring recommendations.  Separately, Defendants could not alter the Xarelto labeling using FDA's "Changes Being Effected" (CBE) regulation because there is no "newly acquired information" that PT was a clinically reliable test for making treatment decisions in patients using Xarelto and because there is clear evidence that FDA would have—and did—reject a PT instruction in the Xarelto label.  Finally, Plaintiff has not pointed to any "newly acquired information" that would trigger the CBE provision.

**b.** Plaintiff's "pre-approval" design-defect claim is preempted because Defendants had no duty under federal or state law to design Xarelto alongside a rivaroxaban-specific anti-Factor Xa assay before seeking FDA approval. Any post-approval design-defect claim is preempted because Defendants cannot unilaterally alter an FDA-approved drug's design.

6. Defendants are entitled to judgment as a matter of law on Plaintiff's MPLA claims because Plaintiff has not introduced expert testimony that satisfies the requirements of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). This lack of expert testimony forecloses her claims.

7. Defendants are entitled to judgment as a matter of law to the extent Plaintiff claims that Xarelto is defectively designed because it lacks a reversal agent, because she has abandoned this theory and presented no admissible evidence on liability or causation.

8. Defendants are entitled to judgment as a matter of law on Plaintiff's other abandoned theories of liability.

## LEGAL STANDARD

A motion for judgment as a matter of law should be granted if, after a party has been fully heard by the jury on an issue, "'a reasonable jury would not have a legally sufficient evidentiary basis to find for [the non-moving] party on that issue.'" *Seibert v. Jackson Cty.*, 851 F.3d 430, 434 (5th Cir. 2017) (quoting Fed. R. Civ. P. 50(a)). "[A] party has been fully heard when he rests his case." *Echeverria v. Chevron USA, Inc.*, 391 F.3d 607, 610 (5th Cir. 2004). At that time, the court may "grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 50(a)(1). "A mere scintilla of evidence is insufficient to present a question

for the jury." *Rutherford v. Harris Cty.*, 197 F.3d 173, 179 (5th Cir. 1999). Instead, "[t]here must be a conflict in substantial evidence to create a jury question." *Id.* "The decision to grant a directed verdict . . . is not a matter of discretion, but a conclusion of law based upon a finding that there is insufficient evidence to create a fact question for the jury." *Burch v. Coca-Cola Co.*, 119 F.3d 305, 313 (5th Cir. 1997) (omission in original) (citation omitted).

## ARGUMENT

Plaintiff has two remaining causes of action—namely, that Xarelto is unreasonably dangerous because of defective design and because of inadequate warning or instruction, under Miss. Code Ann. § 11-1-63. Plaintiff's design-defect claim is that Xarelto is unreasonably dangerous because it was brought to market without a corresponding adjunct product—a rivaroxaban-specific anti-Factor Xa assay—that would allow physicians to identify patients at a high risk of bleeding. *Mingo* Trial Tr. 144:1–8. Plaintiff's failure-to-warn-or-instruct claim is that Defendants failed to instruct Ms. Mingo's prescribing physician that Neoplastin PT could be used to assess whether Ms. Mingo was at an allegedly "high risk" of bleeding. *Id.* 134:6–11. Defendants are entitled to judgment as a matter of law on both of Plaintiff's remaining theories.

## I.   There is not a legally sufficient evidentiary basis for a reasonable jury to find that Xarelto is defectively designed.

To prevail on her design-defect claim, Plaintiff must produce legally sufficient evidence that: "(1) the danger presented by the product's design was known or should have been known to the manufacturer [or seller] (*i.e.*, the danger was foreseeable); (2) the product failed to function as expected (as a result of a design characteristic); (3) an alternative design existed that would not impair the product's usefulness or desirability; and (4) the alternative design would have to a reasonable probability prevented the harm." *Little v. Smith & Nephew, Inc.*, No. 1:15-cv-00028-

GHD-DAS, 2015 WL 3651769, at *6 (N.D. Miss. June 11, 2015) (quoting *Phillips 66 Co. v. Lofton*, 94 So. 3d 1051, 1060 (Miss. 2012)).  Plaintiff has not done so.

> **A.   Ms. Mingo has not presented any evidence that a rivaroxaban-specific anti-Factor Xa assay would have prevented her alleged injuries.**

Mississippi law is clear "that the mere mention of a design alternative by an expert comes well-short of lending evidentiary guidance to a court."  *McSwain v. Sunrise Med., Inc.*, 689 F. Supp. 2d 835, 840 (S.D. Miss. 2010) (quoting *Williams v. Bennett*, 921 So. 2d 1269, 1275 (Miss. 2006)).  Instead, a plaintiff asserting a design-defect claim is required to prove that her proposed alternative design would have "to a reasonable probability prevented the harm" she experienced. Miss. Code Ann. § 11-1-63(f)(ii); *see also Singley v. Trinity Highway Prods., LLC*, 180 So. 3d 708, 715 (Miss. Ct. App. 2015) (the plaintiff must "provide evidence that a reasonable alternative design existed *that would have prevented the accident in question*" (emphasis added)).

Plaintiff here has not presented any evidence that—or even asked her experts whether—her proposed rivaroxaban-specific anti-Factor Xa assay would have avoided Ms. Mingo's injuries. In particular, Plaintiff has not offered any evidence that a rivaroxaban-specific anti-Factor Xa assay would have shown anything clinically relevant to Ms. Mingo; has not discussed how Ms. Mingo's physicians would have responded to the results of a hypothetical rivaroxaban-specific anti-Factor Xa assay test; or even explained how the results from a hypothetical rivaroxaban-specific anti-Factor Xa assay test would have influenced Ms. Mingo's treatment.  In fact, Dr. Rinder—Plaintiff's case-specific expert—offered *no opinions* at all about using anti-Factor Xa assay testing for Xarelto patients, much less with respect to Ms. Mingo.  Similarly, Plaintiff did not even ask Dr. Jordon, her prescribing physician, about whether he would use or how he would respond to such an assay.

Plaintiff cannot rely on the testimony of Dr. Laura Plunkett or Robert Gosselin to meet her causation burden. Both experts expressly disclaimed any opinions about Ms. Mingo—either as to testing results or clinical decisions. *See* Trial Tr. at 641:18–20, 642:1–3 (Dr. Plunkett) (testifying that she was "not a case-specific expert" and had not looked at any laboratory test results for Ms. Mingo); *id. id.* 820:9-12 (Gosselin) ("Q. Ms. Mingo is our plaintiff here. We should introduce you. This is Dora Mingo. You don't know her, and you don't have any opinions about Ms. Mingo? A. No, sir. I'm sorry. I don't know her, that's correct, and I have no opinions on Ms. Mingo.").

Plaintiff's failure to provide any evidentiary link between her proposed alternative design and her alleged injuries—*i.e.*, the failure to show how her proposed design, an adjunct rivaroxaban-specific anti-Factor Xa assay "would have prevented" her "accident," *Singley*, 180 So. 3d at 715—forecloses a design-defect claim as a matter of law.[3] *See, e.g.*, *Ainsworth v. Cargotec USA, Inc.*, No. 2:10-CV-236-KS-MTP, 2014 WL 347075, at *4 (S.D. Miss. Jan. 30, 2014) (granting summary judgment where expert did not express an opinion as to whether the alternative design would "have prevented the accident in this case"); *Clark v. Brass Eagle, Inc.*, 866 So. 2d 456, 461 (Miss. 2004) (affirming summary judgment where plaintiff "offered no proof" that a design alternative "would have prevented what happened to him").

**B.     Ms. Mingo has not presented any evidence of the burden that incorporating an anti-Factor Xa assay into Xarelto's design would entail.**

The MPLA requires a plaintiff asserting a design-defect claim to prove the existence of a "feasible alternative design," meaning a design "that would have to a reasonable probability

---

[3] *See also, e.g.*, *Berry v. E-Z Trench Mfg., Inc.*, 772 F. Supp. 2d 757, 761 n.3 (S.D. Miss. 2011) (summary judgment where there was no evidence that "the feasible alternative design offered would "have prevented the accident"); *Davis v. Ford Motor Co.*, No. Civ.A. 302CV271LN, 2006 WL 83500, at *10 n.7 (S.D. Miss. Jan. 11, 2006) (summary judgment where plaintiff "failed to establish a feasible alternative design that would not have rolled under the circumstances of the . . . accident"); *Johnson v. Davidson Ladders, Inc.*, 403 F. Supp. 2d 544, 550 (N.D. Miss. 2005) (summary judgment proper where the plaintiff "offered no evidence relative to the effectiveness of the alternative design in reducing the severity or frequency of accidents").

prevented the harm without impairing the utility, usefulness, practicality or desirability of the product to users or consumers."[4]  Miss. Code Ann. § 11-1-63(f).  In particular, the plaintiff must show "how the alternative design would have affected [the product's] utility," which requires proof of "the burden that switching to the alternative design would have entailed."  *Williams v. Bennett*, 921 So. 2d 1269, 1276–77 (Miss. 2006).  Plaintiff here has not done so.

None of Plaintiff's experts have claimed that it would have been feasible for Defendants to obtain FDA approval for a rivaroxaban-specific anti-Factor Xa assay.  In fact, the only expert testimony Plaintiff has presented confirms the onerous burden that adopting a rivaroxaban-specific anti-Factor Xa assay would have entailed.  As detailed below, Plaintiff's expert Robert Gosselin testified that FDA has required clinical studies in association with the assay which Gosselin conceded may not be possible or even "feasible to do."  Trial Tr. 865:4–9.  And several of Plaintiff's experts have testified that, even today, there is no FDA-approved rivaroxaban-specific assay.  *Id.* 870:6–8 ("There are no FDA-approved calibrators or controls in the United States.") (R. Gosselin); *id.* 1198:6–10 (testifying that "[t]here's not a cleared" anti-Factor Xa assay calibrated and controlled for Xarelto) (Dr. S. Parisian).

Plaintiff's failure to demonstrate that the "burden [of] switching to the alternative design" was feasible forecloses her design-defect claim.  *See, e.g.*, *Williams*, 921 So. 2d at 1276–77 (dismissing design-defect claim where plaintiff "failed to adduce any evidence to demonstrate . . . how the alternative design would have affected [the product's] utility"); *Elliott v. Amadas Indus., Inc.*, 796 F. Supp. 2d 796, 812 (S.D. Miss. 2011) (summary judgment appropriate where plaintiff introduced no evidence "that the alleged defect can be eliminated without substantially

---

[4] As explained in Defendants' second memorandum of law in support of their motion for judgment as a matter of law, Plaintiff cannot show that her proposed alternative design would have "prevented the harm."

compromising the [product's] usefulness or desirability"); *Glenn v. Overhead Door Corp.*, 935 So. 2d 1074, 1082 (Miss. Ct. App. 2006) (expert's failure to "give an opinion as to whether his alternative  design would impair the utility, usefulness, practicality, or desirability of the garage door opener" defeated design-defect claim); *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 327 (5th Cir. 2004) (rejecting expert's "cursor[y]" assertions that alternative design "would not impair the [product's] utility, usefulness, practicality, or desirability").

### C.    Plaintiff's expert testimony makes clear that an anti-Factor Xa assay could not have been practically adopted at the time Xarelto was first approved.

Critically and separately, Plaintiff's proposed feasible alternative design must be one that "could have been practically adopted at the time of sale."[5]  *Williams*, 921 So. 2d at 1275; *see also Grant v. Ford Motor Co.*, 89 So. 3d 655, 668 (Miss. Ct. App. 2012) (rejecting alternative seatbelt designs that were not in use when the vehicle in question was manufactured and sold).

Plaintiff has not presented *any* evidence that Defendants could have adopted a rivaroxaban-specific anti-Factor Xa assay at the time Xarelto was brought to market.  In fact, Plaintiff's expert testimony makes clear that the opposite is true.  Plaintiff's expert, Robert Gosselin, testified that, even today, there is no FDA-approved Factor Xa assay, calibrators, or controls for Xarelto.  Trial Tr. 855:21–23, 861:7–11.  In fact, Gosselin testified that the company Stago Diagnostics had tried and failed to secure approval of an anti-Factor Xa assay.  *Id.* 863:19–21.  Gosselin further opined on the difficulties that the company had in meeting FDA's approval requirements:

---

[5] The Court previously recognized that Plaintiff's design-defect claim in this case is a so-called "pre-approval" claim.  *See* Order & Reasons on Defs.' Preemption MSJs (Doc. 7110), at 11 (plaintiff's "pre-market design-defect claims under the MPLA are not preempted").  To the extent Plaintiff now asserts a "post-approval" design-defect claim, such a claim is preempted by federal law—even under the Court's reasoning in *Guidry v. Janssen Pharmaceuticals, Inc.*, 206 F. Supp. 3d 1187 (E.D. La. 2016), which the Court has adopted here.  *See Guidry*, 206 F. Supp. 3d at 1206 ("[T]o the extent the plaintiff contends that the defendants should have adopted a new design for [the drug] *after* it was approved by the FDA, her defective design claim is preempted.").  Moreover, a "post-approval" design-defect claim fails under Mississippi state law, because (a) it is not a feasible alternative design; (b) it would not to a reasonable probability have prevented the harm Ms. Mingo is alleged to have suffered; (c) it could not have been practically adopted at the time of sale; and (d) there is no evidence that Xarelto failed to function as expected.

Q. So the FDA was looking for Stago to prove that the use of this assay would be safe and effective in people, right?

A. Again, I'm not sure what the goal of FDA was because the podium and the panelists of the physicians and the laboratory people thought the request was rather absurd, their requirement for getting a test approved in the United States.

*Id.* 866:5–10.

Moreover, as Gosselin testified, FDA explained that "there's a difficult process for approval of these" because the agency "wants to have not only the intended use of the assay, but they want clinical outcome studies." *Id.* 863:23–864:4, 865:20–24. These types of clinical studies, Gosselin conceded, may not be "feasible to do" because "how many patients would have to enroll" can be "cost-prohibitive." *Id.* 865:4–9. Gosselin further testified that he has used anti-Factor Xa assay testing for Xarelto "since 2013," but this is well after the time FDA approved Xarelto, and so Plaintiff cannot establish the feasibility of a rivaroxaban-specific anti-Factor Xa assay at the time of approval, as she must. *Id.* 808:22–25 ("Q. So, Mr. Gosselin, based on your experience, is it feasible to do a -- an anti-Factor Xa test to measure the levels of Xarelto, rivaroxaban?  A. Yes. We've been doing it since 2013."). And Plaintiff's expert, Dr. Parisian, repeatedly acknowledged that FDA had not cleared a rivaroxaban-specific anti-Factor Xa assay for marketing in the United States. *Id.* 1206:5–11. In short, Plaintiff's own expert testimony demonstrates that Defendants could not have practically adopted a rivaroxaban-specific anti-Factor Xa assay when they brought Xarelto to market—and, indeed, still cannot today. Her design-defect claim thus fails.

**D.    Ms. Mingo has presented no evidence that Xarelto failed to function as an anticoagulant is expected to perform.**

The MPLA "unambiguously precludes recovery against the manufacturer on the basis of design defect unless the product 'failed to function as expected.'"  *Austin v. Will-Burt Co.*, 361 F.3d 862, 872 (5th Cir. 2004); *accord Deese v. Immunex Corp.*, No. 3:11-CV-373-DPJ-FKB, 2012 WL 463722, at *2–3 (S.D. Miss. Feb. 13, 2012). Courts applying Mississippi law have recognized

that where a plaintiff's injuries do not arise from any "unusual or unexpected" behavior of the product, an MPLA design-defect claim fails. *See Ainsworth v. Moffett Eng'g, Ltd.*, 595 F. App'x 326, 328–29 (5th Cir. 2014) (summary judgment appropriate where the plaintiff's "accident did not arise from anything 'unusual or unexpected'").

Plaintiff has not introduced any evidence that Xarelto did not function as an anticoagulant is expected to function. Rather, Xarelto, by the very condition it is designed to treat, carries with it the attendant risk of bleeding—a fact that is extensively discussed in the product's FDA-approved labeling. Plaintiff and her physicians knew that taking an anticoagulant could cause a bleeding event and therefore Plaintiff "has not presented any evidence that [Xarelto] did not function as [she] expected."[6] *McSwain v. Sunrise Med., Inc.*, 689 F. Supp. 2d 835, 841 (S.D. Miss. 2010); *see also Austin*, 361 F.3d at 872 (granting summary judgment on MPLA design-defect claim; "That a truly tragic accident occurred in using the [product] does not mean that [it] failed to function as expected. The [product] did nothing unusual or unexpected.").

E. **Defendants are entitled to judgment as a matter of law because Plaintiff's proposed alternative design—a rivaroxaban-specific anti-Factor Xa assay—is an entirely separate and different "adjunct" product.**

A feasible alternative design under Mississippi law *must* be a re-design of the actual product at issue, *not* the use of other adjunct products. *See Elliott v. El Paso Corp.*, 181 So. 3d 263, 272–73 (Miss. 2015). In *Elliott*, the plaintiffs sued the manufacturer and seller of a natural gas odorant on a design-defect theory, following a house fire allegedly caused by a gas leak. *See id.* at 265–67. For their feasible alternative design, the plaintiffs did not propose a re-design of the odorant itself, but instead theorized that natural gas customers should have "gas detectors" in

---

[6] *See also, e.g.*, *Ainsworth*, 595 F. App'x at 329; *Glenn*, 935 So. 2d at 1082 (summary judgment appropriate where "the evidence showed that [defendant's] garage door opener functioned exactly as it was supposed to function—it would raise and lower the garage door only when someone activated the device"); *Clark*, 866 So. 2d at 457 (design-defect claim failed where plaintiff "offered no proof" that the product "failed to function as expected").

addition to odorized gas. *Id.* at 271–72. The Mississippi Supreme Court rejected that argument, holding that a gas detector is not "an alternative design for odorant," but rather "an additional warning system." *Id.* The Mississippi Supreme Court made clear that "[r]equiring an entirely different warning system, or requiring the affected public to use gas detectors in their homes, is not a feasible alternative design for natural-gas odorant." *Id.* at 273; *see also Clark*, 866 So. 2d at 461–62 (holding that the plaintiffs "offered no feasible design alternative" to an allegedly defective paint gun simply by claiming that the manufacturer should have provided protective goggles).

*Elliott* forecloses Plaintiff's design-defect claim here and makes clear that an adjunct product, such as a rivaroxaban-specific anti-Factor Xa assay, is not a "feasible alternative design." A rivaroxaban-specific anti-Factor Xa assay would be considered a medical device (21 C.F.R. part 809), and would be subject to a different FDA regulatory regime than prescription medicines (21 C.F.R. part 314). That such an adjunct product—likely designed, manufactured, and sold by third parties—could theoretically be marketed alongside a prescription medicine is unremarkable and has no legal significance under Mississippi law. Such an assay is "additional" to Xarelto, just as a gas detector was "additional" to gas in *Elliott*. 181 So. 3d at 272–73. The addition of a rivaroxaban-specific anti-Factor Xa assay is not an alternative design of Xarelto itself, and therefore—as a matter of law—Plaintiff's theory does not satisfy the MPLA's alternative-design requirement. *Id.*

## II. Defendants are entitled to judgment as a matter of law on Plaintiff's MPLA failure-to-warn-or-instruct claim.

Plaintiff's claim that Defendants failed to provide adequate warnings or instructions fails as a matter of law. Ms. Mingo testified clearly and unequivocally that had she read Xarelto's Medication Guide, she would not have taken the medicine. Under Mississippi law, her failure to read the warnings that Defendants provided forecloses her warnings-or-instructions claim.

Moreover, Dr. Jordon clearly testified that he would not change his prescribing decision and, accordingly, Plaintiff cannot demonstrate that any allegedly inadequate warning or instruction proximately caused her injuries.  And to the extent Plaintiff now asserts that the Xarelto label should have instructed physicians to use a rivaroxaban-specific anti-Factor Xa assay to measure the Xarelto concentration in a patient's blood, that new claim is prejudicially late and should be dismissed.

> **A.    There is not a legally sufficient evidentiary basis for a reasonable jury to find that any allegedly inadequate warning proximately caused Ms. Mingo's injuries.**

To prevail on a claim that a manufacturer provided inadequate warnings or instructions under Mississippi law, a plaintiff must prove that she "read and relied upon the defective warning." *Mine Safety Appliance Co. v. Holmes*, 171 So. 3d 442, 452 (Miss. 2015).  In other words, the plaintiff must demonstrate "a causal link between [her] injuries and the product's allegedly . . . having an inadequate warning."  *Dependable Abrasives, Inc. v. Pierce*, 156 So. 3d 891, 896 (Miss. 2015) (quoting *3M Co. v. Johnson*, 895 So. 2d 151, 166 (Miss. 2005)).  If the alleged failure to warn or instruct is not "the proximate cause of the injuries suffered[,] it is irrelevant." *Id.* (quoting *3M*, 895 So. 2d at 166).

Here, not only did Ms. Mingo testify that she never read the warnings in the Xarelto Medication Guide, she further explained that, had she done so, she would have never taken the medication[7]:

---

[7] This testimony precludes Ms. Mingo from suggesting that an adequate warning would have been heeded.  *See Estate of Hunter v. Gen. Motors Corp.*, 729 So. 2d 1264, 1277 (Miss. 1999) (plaintiffs were not entitled to a failure-to-warn instruction where they "did not put on any proof" that they "would have heeded the [proposed] warning").  In any event, Mississippi has not recognized a heeding presumption and would not do so here.  *See Harris v. Int'l Truck & Engine Corp.*, 912 So. 2d 1101, 1108–09 (Miss. Ct. App. 2005) ("The fact that our supreme court has ruled on cases where a heeding presumption could easily have been applied to aid the plaintiff in a products liability case and declined to do so indicates to us that the Mississippi Supreme Court has no intention or desire to adopt or create a heeding presumption as a part of our jurisprudence with respect to product liability cases.").

Q. Well, this is the document you gave sworn testimony about having received, and I'm going to just read some of it at the top and you read it with me.  It says right off the top: "Read this medication guide before you start taking Xarelto and each time you get a refill."  Is that what it says?

A. Yes, sir.

. . .

Q. I want to go back to one thing, Ms. Mingo, and a rather important thing.  On this medication guide, do you remember telling me that had you read that label or read this medication guide -- do you remember me showing that you that, the one you got from the pharmacy?

A. Yes, sir.

Q. Do you remember saying that if you had read that, you would have never, ever taken Xarelto?

A. Yes, sir.

Q. You would not have taken the medication?

A. No.

Trial Tr. 1549:12–19, 1567:9–23.

Plaintiff's theory of the case is that had the label instructed her physician regarding PT, and if a PT test had shown a high PT, that Dr. Jordon would have recommended that Ms. Mingo stop taking Xarelto.  But, based on Ms. Mingo's unequivocal testimony that had she read the Medication Guide, she would not have taken Xarelto—which would have necessarily avoided her alleged injuries—the Court (and the jury) never needs to get to that question.  The Medication Guide provided the relevant portions of the label that Ms. Mingo says were adequate to prevent her alleged injuries—*i.e.*, she never would have taken Xarelto.  That testimony makes it impossible for Plaintiff to prove proximate cause and forecloses her warnings-or-instructions claim.  *See Holmes*, 171 So. 3d at 452; *McSwain*, 689 F. Supp. 2d at 844 (plaintiff "cannot prove that the manual's inadequate warnings proximately caused his injury because [he] voluntarily made the

decision to not read the manual," even though "the cover of the manual clearly stated that the [plaintiff] should read the entire manual before use").[8]

Although the learned intermediary doctrine applies in this case, Plaintiff cannot rely on that doctrine as a basis to avoid her failure of proof on causation. *See In re Prempro Prods. Liab. Litig.*, 514 F.3d 825, 830 (8th Cir. 2008). In *Prempro*, the Eighth Circuit held that while the learned intermediary doctrine "provides that adequate warning to a patient's physician can suffice to defeat a patient's failure to warn claim," it "does not preclude informing a patient directly." *Id.* Rather, "[t]he goal is to assure *either* the patient *or* the patient's physician, as a proxy for the patient, is aware of the dangers." *Id.* (emphasis added). Here, Defendants provided warnings that Ms. Mingo herself has admitted were sufficient to avoid her injuries had she read them. Any alleged failure to instruct Ms. Mingo's physicians is not the proximate cause of her alleged injuries.

**B.** **There is not a legally sufficient evidentiary basis for a reasonable jury to find that any alleged failure to adequately warn or instruct Dr. Jordon altered Dr. Jordon's prescribing decision or otherwise proximately caused Ms. Mingo's injuries.**

To prove a failure-to-warn-or-instruct claim under the MPLA in a case involving a prescription medicine, a plaintiff must show that "(1) the warning was inadequate; and (2) the physician would have altered his conduct if the warning was adequate." *Cross v. Forest Labs.*, 102 F. Supp. 3d 896, 903 (N.D. Miss. 2015). If a plaintiff fails to come forward with sufficient evidence to permit a reasonable jury to find in his or her favor on both of these elements, then

---

[8] *See also, e.g., Wallace v. Ford Motor Co.*, No. 3:11-CV-567-CWR-FKB, 2013 WL 3288435, at *4 (S.D. Miss. June 28, 2013) (where plaintiff "never read the owner's manual," an altered warning "could not possibly have given him additional information that he would have acted upon to avoid his injuries"); *Previto v. Ryobi N. Am.*, 766 F. Supp. 2d 759, 768–69 (S.D. Miss. 2010) (the plaintiff "did not read the . . . warnings," and thus "ha[d] not established that the failure to include [different] warning on the [product] proximately caused his injury"); *Palmer v. Volkswagen of Am.*, 904 So. 2d 1077, 1084 (Miss. 2005) ("[t]he presence or absence of anything in an unread owner's manual simply cannot proximately cause a plaintiff's damages"); *Wolf v. Stanley Works*, 757 So. 2d 316, 322–23 (Miss. Ct. App. 2000) (where the plaintiffs "testified that they did not read the existing warning," "there was no evidence that the desired warning would have had any causative impact").

judgment as a matter of law is appropriate. *See* Fed. R. Civ. P. 50(a); *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 675 (5th Cir. 1999).

The proximate-cause element of an MPLA failure-to-warn-or-instruct claim requires the plaintiff to prove that an allegedly inadequate warning or instruction itself—in addition to the medication—proximately caused her injury. *Estate of Moffett v. SmithKline Beecham Corp.*, No. 1:03 CV 532 WJG JMR, 2005 WL 1595664, at *2, 4 (S.D. Miss. June 9, 2005). In particular, under Mississippi's learned intermediary doctrine, "the plaintiff must establish that an adequate warning would have convinced the treating physician not to prescribe the product for the plaintiff." *Thomas v. Hoffman-LaRoche, Inc.*, 949 F.2d 806, 812 (5th Cir. 1992) (plaintiff must prove that a different warning would have convinced the physician "not to prescribe the product for the plaintiff"). If the plaintiff fails to sustain this burden of proving causation, then his claim fails as a matter of law. *See id.* at 818.

Dr. Jordon has made clear that Plaintiff's alleged instruction—*i.e.*, an instruction to physicians to measure Neoplastin PT at the onset of therapy—would have been irrelevant to his prescribing decision. As Dr. Jordon clearly testified:

> Q. Just so I'm clear , Doctor, PT isn't something that would have helped you make a decision with respect to prescribing Xarelto to Ms. Mingo, would it?
>
> A. No.
>
> Q. Doctor, as you sit here today, would you still prescribe Xarelto to a patient that presented with a DVT in the lower leg?
>
> A. Yes.
>
> Q. Do you still prescribe it today?
>
> A. Yes.

Trial Tr. 1441:2–11. This testimony forecloses Plaintiff's failure-to-warn-or-instruct claim. In fact, this is the very sort of testimony found insufficient to sustain a failure-to-warn claim in *Cross*. 102 F. Supp. 3d at 904–05. There, the prescribing physician was asked whether the presence of

additional information would "have affected your decision to prescribe [the drug]" and testified "I wouldn't think so." *See Cross*, 102 F. Supp. 3d at 905. The prescribing physician further explained that he continued to prescribe the drug at issue to his patients. *Id.* Accordingly, the *Cross* court found that the plaintiff could not demonstrate warnings causation. *See id.* So too here. Dr. Jordon has made clear that PT would not have helped him make a prescribing decision with respect to Xarelto and confirmed that he continues to prescribe Xarelto today. Trial Tr. 1441:2–11. Plaintiff's warnings-or-instructions claim fails as a matter of law. *Cross*, 102 F. Supp. 3d at 905.

It is no answer for Plaintiff to assert that she has provided "objective evidence" of how a supposedly reasonable physician would react to her proposed warning. In *Thomas*, the Fifth Circuit explained that, under Mississippi law, "a plaintiff may introduce either objective evidence of how a reasonable physician would have responded to an adequate warning, or subjective evidence of how the treating physician would have responded." 949 F.2d at 812. But the court then immediately clarified that, "to create a jury question, the evidence introduced must be of sufficient weight to establish, by the preponderance of the evidence, *at least some reasonable likelihood that an adequate warning would have prevented the plaintiff from receiving the drug.*" *Id.* (emphasis added). In other words, under *Thomas*, the causation inquiry focuses ultimately on the decision of the treating physician and requires the plaintiff to show that her treatment would have changed with a different warning. *Id.* at 817 (failure of causation where the record evidence "eliminate[d] any reasonable possibility that [different warnings] would have changed the decision of Dr. Myers [the specific prescribing physician] to prescribe the [drug]"). Plaintiff's so-called objective evidence is irrelevant here, because it does not—and cannot—rebut Dr. Jordon's clear testimony that he would not have changed his prescribing decision. *See id.*

Accordingly, there is not a legally sufficient evidentiary basis for a reasonable jury to find that any allegedly inadequate warning or instruction proximately caused Ms. Mingo's injuries, and judgment in Defendants' favor is appropriate. *See Cook v. Livingston Par. Deputy Denny Perkins*, No. 12-258-SCR, 2014 WL 11515610, at *1 (M.D. La. Jan. 6, 2014) ("If the plaintiff fails to introduce admissible evidence to establish every element of his claims, the court may enter a judgment for the defendants, as provided by Rule 50(a).").

### C.     Defendants are entitled to judgment as a matter of law on Plaintiff's apparent claim—newly raised during trial—that the Xarelto label failed to adequately instruct physicians to use an anti-Factor Xa assay.

It is unclear whether Plaintiff intends to submit to the jury a claim that the Xarelto label is inadequate because it fails to provide instructions or other information about an unapproved rivaroxaban-specific anti-Factor Xa assay.   Plaintiff has never asserted such a claim in this litigation, but in light of Dr. Parisian's suggestions to this end and Plaintiff's vague proposed verdict interrogatory on this question, Defendants are compelled to explain that even if Plaintiff is attempting to pursue such a claim, such a claim comes too late and otherwise fails because there is absolutely no evidence to support causation.

### 1.     Any failure-to-warn-or-instruct claim based on anti-Factor Xa assay testing is prejudicially late and should be dismissed.

Plaintiff represented before trial that "the crux" of her failure-to-warn claims is that Xarelto "is not accompanied with an instruction for physicians to test Neoplastin PT at initiation to identify patients at a high risk of bleeding." Pls.' Opp. to Defs.' Labeling Preemption MSJ (Doc. 7040), at 9.  But, as has happened often in this litigation, Plaintiff's claim appears to have morphed.  Plaintiff now seemingly alleges that the Xarelto label should have instructed physicians to use  rivaroxaban-specific anti-Factor Xa assay to assess the Xarelto concentration in a patient's blood.  *See, e.g.*, Trial Tr. 1218:3–7.  Plaintiff never made such a claim before trial—not in her complaint, not in

her experts' reports, not in the briefing, and not in the proposed pre-trial order.  This new theory of recovery, raised for the first time at trial, is untimely.[9]

Plaintiff cannot assert a new failure-to-warn theory for the first time at trial, particularly in light of her representations at summary judgment.  A theory of liability is "waived when it [is] not raised in opposition to a motion for summary judgment."[10]  *Savers Fed. Sav. & Loan Ass'n v. Reetz*, 888 F.2d 1497, 1501 (5th Cir. 1989).  For example, in *Hargrave v. Fibreboard Corp.*, the Fifth Circuit held that the district court appropriately granted judgment in the defendant's favor where the plaintiff, in opposing summary judgment, "completely failed even to refer to its alternative theories of recovery."  710 F.2d 1154, 1164 (5th Cir. 1983).  That principle forecloses Plaintiff's new claim here.  Plaintiff made clear in her summary judgment briefing that her failure-to-warn-or-instruct claim was based on the alleged lack of instructions regarding Neoplastin PT and should be held to that representation.

And more fundamentally, due process and Fifth Circuit precedent recognize that "basic fairness entitles a defendant to notice, before trial, of . . . the nature of the claims being asserted against it."  *Jones v. Wells Fargo Bank, N.A.*, 858 F.3d 927, 933–34 (5th Cir. 2017).  In *Jones*, the Fifth Circuit found that it was "improper" for a court to award damages based on a "new theory of liability" raised near the end of trial.  *Id.*  As the court explained, the defendant "was never on

---

[9] In any event, Plaintiff's new anti-Factor Xa assay-based claim fails is preempted by federal law and fails under state law for the same reasons as her Neoplastin PT-based warnings claim.  And as explained in Defendants' second memorandum of law in support of their motion for judgment as a matter of law filed simultaneously herewith, the claim also fails for lack of proof of causation.  Furthermore, Plaintiff's expert Dr. Suzanne Parisian testified that because an anti-Factor Xa assay is "not a cleared device," Defendants "cannot make any specific claims about a therapeutic index."  Trial Tr. 1198:12–19.  Because Plaintiff's own expert conceded that Defendants cannot actually *instruct* physicians how to use an anti-Factor Xa assay test, her so-called "failure to instruct" claim necessarily fails.

[10] *Accord Jenkins v. Island View Casino*, No. 1:13CV352-LG-JCG, 2014 WL 5774133, at *10 (S.D. Miss. Nov. 6, 2014) (party who "fail[s] to address [a] claim on summary judgment . . . has abandoned it"); *Butron v. Centerpoint Energy*, No. 4:10-CV-0369, 2011 WL 2162238, at *7 n.1 (S.D. Tex. May 31, 2011) (theory "not reference[d] . . . in [plaintiff's] opposition to [defendant's] motion for summary judgment" is abandoned).

notice that the issue was being litigated, so it could not construct an appropriate defense." *Id.*; *see also, e.g.*, *Smith v. EMC Corp.*, 393 F.3d 590, 597 (5th Cir. 2004) (defendant "would be prejudiced by having to defend against a new theory of liability first introduced at the close of trial"); *Monz v. Rocky Point Fire Dist.*, 853 F. Supp. 2d 277, 285 (E.D.N.Y. 2012) (allowing plaintiff to assert "a new theory of recovery at trial would seriously prejudice" the defendant who "had no opportunity to . . . develop a defensive strategy"). So too here. Defendants have prepared this case with the understanding that Plaintiff's failure-to-warn claim focused on alleged inadequacies in the label regarding Neoplastin PT. Defendants should not be forced to defend a new theory asserted for the first time at trial. *Jones*, 858 F.3d at 934.

Moreover, in the proposed pretrial order, Plaintiff echoed that her failure-to-warn-or-instruct theory was premised on Neoplastin PT. *See* Proposed Pre-Trial Order (Doc. 7084), at 5 ("Standard laboratory testing (Neoplastine PT) was performed during Ms. Mingo's treatment with Xarelto. However, Plaintiff contends that Defendants failed to instruct Dr. Jordon regarding the meaning and helpfulness of that test to patients on Xarelto."). "Each party has an affirmative duty to allege at the pretrial conference all factual and legal bases upon which the party wishes to litigate the case." *Trinity Carton Co. v. Falstaff Brewing Corp.*, 767 F.2d 184, 192 n.13 (5th Cir. 1985). "The pretrial order controls the course of the trial," *id.*, and should be construed "narrowly because a 'failure to adhere to such a rule would bring back the days of trial by ambush and discourage timely preparation by the parties for trial,'" *Riquelme Valdes v. Leisure Res. Grp., Inc.*, 810 F.2d 1345, 1357 (5th Cir. 1987) (quoting *Swift v. State Farm Mut. Auto. Ins. Co.*, 796 F.2d 120, 123 (5th Cir. 1986)). Plaintiff did not raise an anti-Factor Xa-based warnings-or-instructions claim in the pretrial order and cannot do so now. *See Trinity Carton Co.*, 767 F.2d at 192 n.13 (the court "need not consider" matters not contained in the pretrial order absent exceptional circumstances).

    **2.**    **To the extent Plaintiff asserts that the Xarelto label should have instructed physicians to use a rivaroxaban-specific anti-Factor Xa assay, that claim fails for lack of proof of causation.**

Under Mississippi's learned intermediary doctrine, "the plaintiff must establish that an adequate warning would have convinced the treating physician not to prescribe the product for the plaintiff." *Thomas*, 949 F.2d at 812 (plaintiff must prove that a different warning would have convinced the physician "not to prescribe the product for the plaintiff"). Plaintiff has not introduced any evidence that a warning or instruction about a rivaroxaban-specific anti-Factor Xa assay would have altered Dr. Jordon's prescribing decision or, in fact, any of his other conduct. In fact, Plaintiff did not even ask Dr. Jordon how he would respond to such an instruction. Accordingly, Plaintiff cannot demonstrate warnings causation as a matter of law. *See, e.g.*, *Little*, 2015 WL 3651769, at *9 (dismissal appropriate where the plaintiff failed "to allege that the physician would not have used the screw if he had received an adequate warning").

* * *

Accordingly, the Court should grant Defendants judgment as a matter of law on Plaintiff's newly-raised anti-Factor Xa assay-based warnings-or-instructions claim.

## III.    Plaintiff cannot establish that Xarelto caused her injuries.

In any event, Plaintiff cannot establish that Xarelto is the cause of her injuries. To prevail on any MPLA claim, "it is incumbent upon the plaintiff . . . to show that the defendant's product was the cause of the plaintiff's injuries." *Gardley-Starks v. Pfizer, Inc.*, 917 F. Supp. 2d 597, 602 (N.D. Miss. 2013) (quoting *Moore ex rel. Moore v. Miss. Valley Gas Co.*, 863 So. 2d 43, 46 (Miss. 2003)). Because Plaintiff cannot demonstrate—as she must—that Xarelto caused her GI hemorrhage, Defendants are entitled to judgment as a matter of law on both of her MPLA claims.

The MPLA requires the plaintiff to "demonstrate a causal link" between her use of the product and her injury. *Moffett*, 2005 WL 1595664, at *2. This means that the plaintiff in a prescription drug case must "demonstrate that the injury would not have occurred had the drug not been administered." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citing *Bennett v. Madakasira*, 821 So. 2d 794, 807 (Miss. 2002)); *accord Entrican v. Ming*, 962 So. 2d 28, 32 (Miss. 2007) ("Proximate cause has been defined as 'cause which in natural and continuous sequence unbroken by any efficient intervening cause produces the injury and without which the result would not have occurred.'" (citation omitted)). In other words, "to prevail on any of her [MPLA] claims," Ms. Mingo must show that Xarelto, "more likely than not, was *the* cause of [her injury]." *Moffett*, 2005 WL 1595664, at *2 (emphasis added); *accord Rowan v. Kia Motors Am., Inc.*, 16 So. 3d 62, 66 (Miss. Ct. App. 2012) (plaintiff must show that "it is more likely than not" that the defendant's conduct caused the injury).

Plaintiff has not introduced legally sufficient evidence for a jury to find that Xarelto, "more likely than not," caused her injury. *Moffett*, 2005 WL 1595664, at *2. Plaintiff's expert Dr. Henry Rinder testified only that he believed Xarelto was a "significant contributing factor" to Ms. Mingo's GI bleed.[11] Trial Tr. 1333:4–5. But this testimony does not satisfy Plaintiff's burden under Mississippi law. Rather, Plaintiff must show that the product "*more likely than not* was the cause" of the injury. *Moffett*, 2005 WL 1595664, at *2. Dr. Rinder's speculative testimony does not establish—and does not even purport to establish—that there was a greater-than-even chance that Xarelto was the cause of Ms. Mingo's bleed. *See Entrican*, 962 So. 2d at 32 (plaintiff must

---

[11] As Defendants have pointed out, Dr. Rinder's opinions should have been excluded as unreliable. *See* Docs. 6820, 7065. Even in his trial testimony, Dr. Rinder simply discounted aspects of Ms. Mingo's medical records that did not fit his opinions. *See, e.g.*, Trial Tr. 1326:19–24 ("A. Well, there is no objective evidence to [a tarry stool]. I think it's just a mistake. We see mistakes in the medical record all the time. Nobody is perfect. Maybe they misheard her. Maybe Ms. Mingo was confused. She's sick. She's coming in with acute anemia. Maybe she was a little confused, but there is no objective evidence of dark stools prior to this.").

prove that defendant's conduct "produce[d] the injury" and that "the result would not have occurred" absent that conduct); *see also, e.g.*, *Beck v. Koppers, Inc.*, Nos. 3:03 CV 60 PD & 3:04 CV 160 P D, 2006 WL 270260, at *5 (N.D. Miss. Feb. 2, 2006) (explaining that "the plaintiff must prove to the jury that it was more likely than not (i.e., a 51% or more chance)" that the product caused injury to meet burden of specific causation).

Plaintiff thus cannot rely on Dr. Rinder's testimony to show medical causation. Although "the burden of proof at trial" is squarely on the plaintiff to prove causation, *Jackson v. Bayer Corp.*, No. 2:06cv101KS-MTP, 2007 WL 2580379, at *4 (S.D. Miss. Sept. 4, 2007), Plaintiff has not introduced any expert testimony that Xarelto, "more likely than not, was the cause of [her injury]," *Moffett*, 2005 WL 1595664, at *2. And without expert proof of medical causation, Plaintiff's MPLA claims—whatever theory she asserts—fail as a matter of law. *See Brown*, 654 F.3d at 358 ("Mississippi law requires expert medical testimony where causation is an issue in a complicated case . . . ."); *Jackson*, 2007 WL 2580379, at *4 (recognizing that "where causation is an issue in a complicated case," a plaintiff must present expert testimony).

Because there is not a legally sufficient evidentiary basis for a jury to find causation, Defendants are entitled to judgment as a matter of law. *Moffett*, 2005 WL 1595664, at *4 (granting summary judgment where plaintiff "failed to offer sufficient evidence to permit a reasonable jury to find that [the drug] more likely than not caused [the injury]").

## IV. Defendants are entitled to judgment as a matter of law because Plaintiff cannot prove that, but for her use of Xarelto, her injuries would have been avoided.

Plaintiff's MPLA claims also fail because Plaintiff cannot satisfy the requirements of legal or proximate causation with proof that her injuries would have been avoided on a different medication. Mississippi law requires that a plaintiff show that "'but for the defendant's [conduct], the injury would not have occurred." *Bennett v. Highland Park Apartments, LLC*, 170 So. 3d 522,

528 (Miss. Ct. App. 2014).  Here, because it is undisputed that Ms. Mingo was required to use an anticoagulant medicine to treat the blood clots in her legs, she must prove that her injuries would have been avoided without the use of Xarelto.  Here, there is no evidence that another anticoagulant—a medicine that was medically necessary for Ms. Mingo—would have both dissolved her blood clots and avoided her GI bleed.  *Cf. Arinder v. Danek Med., Inc.*, No. 1:95-CV-326-B-D, 1999 WL 1129647, at *4 (N.D. Miss. June 21, 1999) (proof that "the d*efective . . . condition of the product*" caused the injury "is an essential element of a product liability claim" (emphasis added)).  As a result, Defendants are entitled to judgment as a matter of law.

**V.    Defendants are entitled to judgment as a matter of law on Plaintiff's MPLA claims because those claims are preempted.**

Plaintiff's MPLA claims—whatever theory she asserts—are preempted by federal law under the Supreme Court's *Levine-Mensing-Bartlett* preemption trilogy.  *See Wyeth v. Levine*, 555 U.S. 555 (2009); *PLIVA, Inc. v. Mensing*, 564 U.S. 604 (2011); *Mut. Pharm. Co. v. Bartlett*, 133 S. Ct. 2466 (2013).

**A.    Plaintiff's failure-to-warn claim is preempted by federal law.**

Plaintiff's failure-to-warn claim that Defendants should have added an instruction regarding Neoplastin PT to the Xarelto label is preempted because there is "clear evidence" that FDA would have rejected—and, in fact, did reject—Plaintiff's proposed Neoplastin PT-related instruction.  Moreover, Plaintiff's Neoplastin PT-related warning claim, and Plaintiff's late-asserted theory that the Xarelto label should have instructed physicians about the use or availability of an anti-Factor Xa assay, are both preempted for the following additional reasons:

1.    Defendants could not independently change Xarelto's label as Plaintiff proposes:

a.    Defendants could not instruct doctors to conduct Neoplastin PT testing because Defendants could not recommend an off-label use of Neoplastin—which was

24

designed (and cleared by FDA) explicitly for use with warfarin, not Xarelto, and must receive a separate "safety and efficacy" clearance for use with companion therapeutic products. 21 C.F.R. § 807.81; 21 C.F.R. § 814.39; 21 C.F.R § 864.7750(a); *see also, e.g.*, Guidance for Industry and Food and Drug Administration Staff: In Vitro Companion Diagnostic Devices (Aug. 6, 2014).

      **b.**     Similarly, Defendants could not recommend in Xarelto's label a clinical instruction regarding a rivaroxaban-specific anti-Factor Xa assay that has never been cleared for use in the United States. *See id.* Plaintiff's expert Dr. Parisian confirmed that FDA regulations prohibit a manufacturer from doing so. Trial Tr. 1198:11–19 ("Q. Did you say there's not a cleared [anti-Factor Xa assay?] A. Yeah, I said that this morning. There wasn't a cleared one. . . . And so it's not a cleared device, but -- you cannot make any specific claims about a therapeutic index, but you can let doctors know it's available."). Further, Plaintiff's expert Gosselin testified that there are "certainly" "no FDA-approved [commercial rivaroxaban-specific] calibrators and controls" in the United States. *Id.* 861:19–25. Defendants need FDA approval to make Plaintiff's proposed recommendation.

      **2.**     Plaintiff's proposal that Neoplastin PT-based (or anti-Factor Xa assay-based) instructions be added to the label would be a "monitoring" recommendation that cannot be added to the Xarelto label without prior FDA approval, pursuant to FDA regulations and guidances. 21 C.F.R. § 201.57(a); *see also, e.g.*, *Bartlett*, 133 S. Ct. at 2470; *Mensing*, 564 U.S. at 620.

      **3.**     Plaintiff has not pointed to any "newly acquired information" that would justify a change to the Xarelto labeling under the CBE regulation. 21 C.F.R. § 314.70(c)(6)(iii); *id.* § 314.3(b); *see also, e.g.*, *In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*, 779 F.3d 34 (1st

Cir. 2015); *Utts v. Bristol-Myers Squibb Co.*, No. 16cv5668(DLC), 2017 WL 1906875, at *11–19 (S.D.N.Y. May, 8, 2017).

> **B.      Plaintiff's design-defect claim is preempted by federal law.**

Plaintiff's "pre-approval" design-defect claim is preempted by federal law.  Plaintiff's claim—*i.e.*, that Defendants should have designed Xarelto differently *before* seeking FDA approval—is premised on the very sort of "stop-selling" rationale that the Supreme Court's preemption precedents reject.  *Bartlett*, 133 S. Ct. at 2477–78.  Defendants are entitled to judgment as a matter of law.  *See Yates v. Ortho-McNeil-Janssen Pharms., Inc.*, 808 F.3d 281, 298–300 (6th Cir. 2015); *Utts v. Bristol-Myers Squibb Co.*, 226 F. Supp. 3d 166, 185–86 (S.D.N.Y. 2016).  To the extent Plaintiff now asserts a "post-approval" design-defect claim—*i.e.*, a claim that Defendants should have redesigned Xarelto after it was brought to market to incorporate a rivaroxaban-specific anti-Factor Xa assay—that claim too is preempted.  Defendants could not have independently altered Xarelto's design after it obtained FDA approval.  *See Bartlett*, 133 S. Ct. at 2471.

## VI.      Defendants are entitled to judgment as a matter of law on Plaintiff's MPLA claims because Plaintiff has not introduced expert testimony that meets the *Daubert* standard.

Plaintiff has not demonstrated that her experts' opinions are reliable under *Daubert*. Rather, those opinions should have been excluded for the reasons previously identified by Defendants—including that those theories fail under *Daubert*, that Plaintiff has abandoned those theories, and that Plaintiff has waived her opposition to Defendants' renewed *Daubert* motion to exclude those theories.[12]  Accordingly, there is not a legally sufficient evidentiary basis for a

---

[12] Defendants incorporate by reference their arguments in support of their Renewed *Daubert* Motion to Exclude Expert Opinions and Testimony Regarding Unapproved Dosing and Monitoring Regimens (Docs. 6740, 7060), their Motion For An Order (1) Dismissing With Prejudice Claims Based on Allegations that Plaintiffs Have Abandoned and (2) Barring Scientific Evidence Based on Waiver of *Daubert* Arguments (Doc. 6485), *see* Doc. 7079 (incorporating

reasonable jury to find for Plaintiff on the issue whether Defendants failed to adequately warn or instruct.

A.     **The opinions of Plaintiff's experts that Neoplastin PT may be used to make clinical decisions regarding Xarelto should have been excluded.**

The testimony of Dr. Plunkett, Mr. Gosselin, Dr. Parisian, and Dr. Rinder that monitoring or assessing Xarelto anticoagulant effect through Neoplastin PT testing to assess whether patients should continue to take Xarelto should have been excluded. As Defendants previously explained in their renewed omnibus *Daubert* motion, Plaintiff's experts repeatedly conceded that PT tests cannot be reliably used to measure Xarelto concentration or activity. *See* Docs. 6740, 5113. More fundamentally, Plaintiff's experts' monitoring opinions (a) are untested and lack any supporting data, (b) have not been accepted in the scientific community, and (c) have not been subject to peer review and publication. *See id.* Furthermore, none of Plaintiff's experts has ever expressed data or methodology to support that PT can be used to detect the presence of the drug to thereby make clinical decisions. To the extent Plaintiff asserts that PT should be used to assess bleeding risk to inform physicians' prescribing decisions, they have offered no evidence in support of this theory. Because Plaintiff failed to introduce reliable expert testimony in support of her failure-to-warn claim, Defendants are due judgment as a matter of law. *See, e.g.*, *Lundy v. Conoco Inc.*, No. 3:05cv477-WHB-JCS, 2006 WL 3300397, at *3 (S.D. Miss. Nov. 10, 2006) (dismissing MPLA failure-to-warn claim for failure to present admissible expert testimony).

B.     **The opinions of Plaintiff's experts that an anti-Factor Xa assay may be used to make clinical decisions regarding Xarelto should have been excluded.**

The testimony of Dr. Plunkett and Mr. Gosselin (Plaintiff's only experts who offered these opinions at trial) that Xarelto's design should have incorporated a rivaroxaban-specific anti-Factor

---

Defendants' motion), and all other arguments to exclude those opinions or related testimony that Defendants have made in these proceedings—whether orally (as reflected in the transcript) or in writing.

Xa assay to monitor or assess Xarelto concentration to assist physicians in making clinical decisions is inadmissible under *Daubert*.  The opinions that an anti-Factor Xa assay should be used with Xarelto to make clinical decisions is speculative and unreliable; has never been tested in clinical practice; and does not assist the trier of fact because Plaintiff's experts cannot reliably conclude—without proper testing—that the assay would have avoided Ms. Mingo's injuries. Because Plaintiff failed to introduce reliable expert testimony in support of her design-defect claim, Defendants are due judgment as a matter of law.  *See, e.g.*, *Harris v. Stryker Spine*, 39 F. Supp. 3d 846, 850 (S.D. Miss. 2014).

### C.    Plaintiff has abandoned any claim regarding Xarelto's dosing regimen or cumulative dosage.

**1.**    Plaintiff expressly stated that she would "not pursue a theory of liability based on dosing."  Pls.' Opp. to Defs.' *Mingo* Design Defect MSJ (Doc. 7007), at 12.  Nonetheless, the Court admitted dosing evidence over Defendants' objection.  Even so, in light of Plaintiff's prior representations, the Court should grant Defendants judgment as a matter of law to the extent that Plaintiff's claim is based in any way on Xarelto's cumulative daily dose or dosing regimen.  *See, e.g.*, *Cologne v. Shell Oil Co.*, No. 12-735, 2013 WL 5781705, at *2–3 (E.D. La. Oct. 25, 2013) (Fallon, J.); *Overpeck v. Roger's Supermarket, LLC*, No. 1:12-CV-124-SA-DAS, 2013 WL 4500469, at *4 (N.D. Miss. Aug. 21, 2013).

**2.**    Defendants previously moved to exclude the dosing-related opinions of Plaintiff's experts as inadmissible under Federal Rule of Evidence 702 and *Daubert*.[13]   Plaintiff did not

---

[13] Defendants incorporate by reference their arguments in support of their *Daubert* Motion to Exclude Expert Opinions and Testimony Regarding Unapproved Dosing and Monitoring Regimens (Docs. 5113, 5114, 5688), their Motion For An Order (1) Dismissing With Prejudice Claims Based on Allegations that Plaintiffs Have Abandoned and (2) Barring Scientific Evidence Based on Waiver of *Daubert* Arguments (Doc. 6485), and Defendants' Renewed Motion to Exclude Certain Dosing-Related Opinions of Dr. Smart MD, FACC, FACP (Doc. 6673), and all other arguments to exclude those opinions or related testimony that Defendants have made in these proceedings—whether orally (as reflected in the transcript) or in writing.

respond and so their response is waived.  *See* Docs. 7079, 6485.  In any event, as explained before, Plaintiff's experts' opinions are speculative, lack sufficient data, are not based on a reliable methodology, and should have been excluded.  Accordingly, Plaintiff has not introduced admissible expert testimony regarding Xarelto's once-daily dosing regimen and cumulative daily dose.  Defendants are due judgment as a matter of law to the extent Plaintiff's claim is based in any way on Xarelto's cumulative daily dose or dosing regimen.

**VII.   There is not a legally sufficient evidentiary basis for a reasonable jury to find that Xarelto is defectively designed on the ground that there is no "antidote" or reversal agent for Xarelto.**

Plaintiff introduced testimony about the lack of a reversal agent for Xarelto.  *See, e.g.*, Trial Tr. 251:15–24, 331:4–12.  Plaintiff has no reversal-agent-based claim—and the jury should not be entitled to reach a verdict on the basis of Xarelto's lack of a reversal agent—for two reasons.

1.      Plaintiff has abandoned any design-defect claim based on Xarelto's lack of an antidote or reversal agent.  *See* Pls.' Opp. to Defs.' MPLA MSJ (Doc. 7042), at 3 n.3 ("Ms. Mingo is not pursuing [the reversal agent] theory in her case.").  Accordingly, in light of that express abandonment, and because Plaintiff has introduced no admissible evidence in support of this claim, the Court should grant Defendants judgment as a matter of law to the extent that Plaintiff's claim is based in any way on Xarelto's lack of an antidote or reversal agent.  *See, e.g.*, *Cologne*, 2013 WL 5781705, at *2–3; *Overpeck*, 2013 WL 4500469, at *4.

2.      The lack of a reversal agent for Xarelto is irrelevant to Plaintiff's failure-to-warn-or-instruct claim.  The Xarelto label has always advised that "[a] specific antidote for rivaroxaban is not available."  USPI § 5.2.  Furthermore, Plaintiff's sole warning-or-instruction claim is that Xarelto's label should have instructed physicians to use a PT test that would have allowed them to determine the anticoagulant effect of Xarelto, which allegedly would have informed a decision about whether to continue treatment.  The lack of a reversal agent is not relevant to Plaintiff's

purported "failure-to-instruct" theory regarding PT. Accordingly, there is no legally sufficient evidentiary basis on which a jury could find for Plaintiff on a reversal-agent-based claim.

**VIII. There is not a legally sufficient evidentiary basis for a reasonable jury to find for Plaintiff on the basis of any of her other abandoned theories of liability, on which Defendants renew their motion to dismiss any such claims with prejudice.**

Defendants previously moved the Court for an order (1) dismissing with prejudice claims based on allegations that Plaintiff has abandoned and (2) barring scientific evidence based on waiver of *Daubert* arguments. *See* Docs. 7079, 6485. Defendants hereby renew their motion and ask that the Court dismiss with prejudice any of Plaintiff's claims that are based on theories of liability that Plaintiff has since abandoned:[14]

- That Defendants failed to properly "test" Xarelto before bringing it to market;

- That Xarelto's label should have instructed physicians to perform routine monitoring of patients' PT;

- That Xarelto's label should have included instructions to physicians to monitor patients' PT for the purpose of adjusting doses.

- That Xarelto's label did not adequately warn of the risk of bleeding;

- That Xarelto's label should have included before September 2015 a chart quantifying bleeding rates specifically among U.S. participants in the 14,000-patient ROCKET AF clinical trial, the clinical trial that supported FDA's approval of Xarelto's atrial-fibrillation indication;

- That Xarelto's label should have included language advising of alleged problems with the INRatio device used to measure warfarin patients' coagulation parameters in ROCKET AF;

Defendants are due judgment on any claims based on these abandoned theories. *See, e.g.*, *Cologne*, 2013 WL 5781705, at *2–3; *Overpeck*, 2013 WL 4500469, at *4.

---

[14] Defendants incorporate by reference their arguments in support of their Motion For An Order (1) Dismissing With Prejudice Claims Based on Allegations that Plaintiffs Have Abandoned and (2) Barring Scientific Evidence Based on Waiver of *Daubert* Arguments (Docs. 5957, 6227, 7079), and all other related arguments that Defendants have made in these proceedings—whether orally (as reflected in the transcript) or in writing.

## CONCLUSION

For the foregoing reasons, and for the reasons stated in Defendants' accompanying motion, Defendants respectfully request that the Court grant them judgment as a matter of law.


Respectfully submitted,


BARRASSO USDIN KUPPERMAN FREEMAN & SARVER, L.L.C.

BY: /s/ Richard E. Sarver
Richard E. Sarver
Celeste R. Coco-Ewing
BARRASSO USDIN KUPPERMAN FREEMAN & SARVER, L.L.C.
909 Poydras Street, 24th Floor
New Orleans, Louisiana 70112
Telephone: (504) 589-9700
rsarver@barrassousdin.com
ccoco-ewing@barrassousdin.com


DRINKER BIDDLE & REATH LLP

By: /s/ Susan M. Sharko
Susan M. Sharko
DRINKER BIDDLE & REATH LLP
600 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
susan.sharko@dbr.com

Rodney M. Hudson
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
Telephone: (415) 591-7500
Rodney.hudson@dbr.com

Chanda A. Miller
DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996

MITCHELL, WILLIAMS, SELIG, GATES & WOODYARD, P.L.L.C.

By: /s/ Lyn P. Pruitt
Lyn P. Pruitt
Adria W. Conklin
Benjamin D. Brenner
Mary Catherine Way
MITCHELL, WILLIAMS, SELIG, GATES & WOODYARD, P.L.L.C.
425 West Capitol Ave., Suite 1800
Little Rock, AR 72201
Telephone: (501) 688-8800
lpruitt@mwlaw.com
aconklin@mwlaw.com
bbrenner@mwlaw.com
mway@mwlaw.com


WATKINS & EAGER PLLC

By: /s/ Walter T. Johnson
Walter T. Johnson
WATKINS & EAGER PLLC
The Emporium Building
400 East Capitol Street
Jackson, Mississippi 39201
Telephone: (601) 965-1846
wjohnson@watkinseager.com


ARNOLD & PORTER KAYE SCHOLER LLP

By: /s/ William Hoffman
William Hoffman
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW

Telephone: (215) 988-2500
Chanda.Miller@dbr.com


IRWIN FRITCHIE URQUHART & MOORE LLC

By: /s/ *James B. Irwin*
James B. Irwin
Kim E. Moore
IRWIN FRITCHIE URQUHART & MOORE LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
jirwin@irwinllc.com


*Attorneys for Defendants Janssen
Pharmaceuticals, Inc. and Janssen Research
& Development, LLC*

Washington, D.C. 20001
Telephone: (202) 942-5000
william.hoffman@apks.com

Andrew K. Solow
Steven Glickstein
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8485
andrew.solow@apks.com
steven.glickstein@apks.com


BRADLEY ARANT BOULT CUMMINGS LLP

By: /s/ *Lindsey C Boney IV*
Lindsey C Boney IV
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place, 1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8803
lboney@bradley.com


CHAFFE MCCALL L.L.P.

By: /s/ *John F. Olinde*
John F. Olinde
CHAFFE MCCALL L.L.P.
1100 Poydras Street, Suite 2300
New Orleans, LA 70163
Telephone: (504) 585-7241
olinde@chaffe.com


*Attorneys for Bayer HealthCare
Pharmaceuticals Inc. and Bayer Pharma AG*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 16th day of August, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to Liaison Counsel for Plaintiffs by operation of the court's electronic filing system and a copy of the proposed documents to be placed under seal sent to Plaintiffs' Liaison Counsel by email transmission.

/s/      John F. Olinde