Case 2:14-md-02592-EEF-MBN Document 7375-1 Filed 08/16/17 Page 1 of 6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | * * * | MDL 2592 |
| | * | SECTION L |
| THIS DOCUMENT RELATES TO: *Mingo v. Janssen Research, et al.* Case No. 2:15-cv-03469 | * * * * | JUDGE ELDON E. FALLON |
| | * | MAGISTRATE JUDGE NORTH |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION FOR THE EXCUSAL OF A JUROR
AND FOR EXPEDITED CONSIDERATION**

**MAY IT PLEASE THE COURT:**

The instructiveness of the verdict in this bellwether trial stands as the principal justification for the vast amount of time and substantial resources which both the Court and the parties have dedicated, and continue to expend, in the proceedings. But this instructiveness, like the investment of so much judicial and litigant effort, is readily undermined by a juror's refusal or inability to discharge his fundamental duty as a juror, which is to base his decision-making about the verdict on his understanding and assessment of the totality of the evidence presented at trial. A juror who sleeps through significant portions of important and relevant testimonial evidence cannot fulfill, and cannot fairly be expected to fulfill, that obligation.

Juror No. 6 in this case, ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ has been observed by counsel for the Plaintiff, and by the Court, to be sleeping on repeated occasions during opening statements as well as the examination and cross-examination of multiple witnesses during Plaintiff's case-in-chief. His sleeping has been observed when that testimony referred to and/or explained critically important issues in the case, as well as a number of documents which have been offered into evidence. On one occasion, ▌▌▌▌▌▌▌▌ slept so soundly that as the jurors rose to leave the jury

1

Case 2:14-md-02592-EEF-MBN   Document 7375-1   Filed 08/16/17   Page 2 of 6

box for a trial recess, he had to be physically nudged by another juror to wake him up so he could exit with the rest of the jurors.

The Court, after observing first-hand the problem ▆▆▆▆▆ was having staying awake, felt obliged to make the following comments about him on the record:

### Page 1341, Lines 8 through 23:

THE COURT: Juror 6 has been sleeping. He has been sleeping through both sides. Cross-examination by defendant, he sleeps through it. Examination by the plaintiff, he sleeps through it.

We've had the marshals talk to him. My staff has talked to him. I'm just concerned about him. We would like some input from counsel. I'm doing the best I can to keep him awake on both sides.

It has nothing to do with plaintiff's case. It has nothing to do with defendants' case. I think this poor gentleman here either has some sleep problems or whatever. He just can't keep awake.

I mean, I don't know what your feelings are. I hate to – we've got eight people. I would hate to let him go, but I don't know. I'll do the best I can with him. I can't make him stand up.

### Page 1342, Lines 3 through 5:

THE COURT: I've seen it both on direct and cross. I mean, on cross-examination, critical cross-examination, I have to keep getting the marshal to hit him. I don't know.

### Page 1342, Lines 20 through 22:

THE COURT: I see him sleeping through cross. I mean, I don't know whether he'd just give up or whatever. You watch him through cross-examination, he's asleep.

### Page 1343, Lines 2 through 4:

I've been noticing him. My staff has told me several times. I have the marshal constantly waking him up. He's doing the best he can. He just goes back.

The Court then decided to summon this juror to Chambers, and, with trial counsel present, expressed concern to ▆▆▆▆▆ about his observed difficulty staying awake during

trial. Importantly, ▮▮▮ did not deny the truth of what had been observed; he simply pledged to make an effort to remain awake for the balance of these proceedings.

In what has followed, the spirit may have been willing but the flesh has proven weak in the case of ▮▮▮ Even after being singled out for the above conversation with the Court, he has been observed to be periodically nodding off during trial. But more to the point, and notwithstanding any improved attentiveness on ▮▮▮ part since the Court spoke to him, the observations already made by the Court on the record constitute a basis for the Rule 47(c) excusal of this juror. He already has missed important testimony from more than one witness called by the Plaintiff, which irreparably compromises his ability to fully engage in and contribute to jury deliberations. Indeed, any success he achieved in being more attentive after the Court spoke to him, can only serve to visit greater prejudice on the Plaintiff. If he has managed to give greater attention to evidence presented after sleeping through long portions of Plaintiff's case, this assures that he would deliberate as a juror based on "one side of the story," i.e., the Defendants' case.

Federal Rule of Civil Procedure 47(c) confers discretionary authority on a presiding district judge to excuse a juror in the course of a civil trial based on "good cause" for doing so; and the Advisory Committee Notes for this Rule cite "juror misconduct" as an "appropriate" example of what constitutes good cause. *See* Rule 47(c), FRCP, and Adv. Comm. Notes, 1991 Amendments. Such "misconduct," of course, need not be deliberate in order to rise to the level of good cause excusal, just as, in this instance, no ill will or bad motive need be assigned to ▮▮▮ ▮▮▮ for Rule 47(c) to apply. Rather, the "misconduct" in such a case need only be that which has a demonstrably prejudicial effect on the party or parties, and should consist of nothing

3

more and nothing less than action which compromises a juror's sworn duty to participate in rendering a verdict based on an understanding of the evidence.

Being asleep, even intermittently, during the presentation of relevant and admitted evidence cannot be reconciled with this fundamental obligation. To the contrary, a juror's utter obliviousness to evidence received due to his being asleep at the time, operates not merely as a disservice to the other jurors, but as an unavoidable impairment of the deliberative process itself. The juror who has slept is necessarily the juror who, in deliberation, will be forced to guess, or be told by other jurors, about portions of testimony presented and the exhibits discussed while he slept.

The U.S. Supreme Court has recognized both the right of a party to seek a Rule 47(c) excusal of a juror during trial, and the inherent trial management authority of a district judge to grant such a request in circumstances where good cause exists. *See Dietz v. Bouldin*, ____ U.S. ____, 136 S.Ct. 1885, 195 L.Ed.2d 161 (2016). When sufficient prejudice is shown, a juror shown to have been sleeping during trial also has been specifically recognized as responsible for the type of misconduct giving rise to a Rule 47(c) excusal. *See Jackson v. A-C Product Liability Trust*, 622 F.Supp.2d 641 (N.D. Ohio 2009), and cases cited therein.

In *Johnson v. Nicholson*, 349 Fed. Appx 604 (2d Cir. 2009), the trial judge and others observed a juror "to be inattentive and to seem at times to be asleep." *See id.* at 605. Affirming the "considerable discretion" of the judge to remove such a juror under Rule 407(c), the Second Circuit cited well-settled authority for the principle that removal of a juror is appropriate where his ability to perform his duties as a juror has been impaired, or, as here, made impossible as a practical matter. *See id.* at 605-606, and cases cited therein. Other jurisprudence likewise confirms that "[s]leeping is a form of juror misconduct because 'a juror who sleeps through

4

much of the trial testimony cannot be expected to perform his duties.'" *In re: E. I. Dupont De Nemours and Company C-8*, 2016 WL 659112, at p. 33 (S.D. Ohio 2016). As one Court of Appeals has observed:

> "There can be little doubt that a juror who sleeps through portions of a trial is unable to adequately perform his or her duties and that a court's dismissal of that juror is property within its discretion."

*Newton v. Enertech, Inc.,* 961 F.2d 220 (10th Cir. 1992).

Should the Court have concern that the excusal of ▓▓▓▓ at this point in the trial might jeopardize the preservation of a minimum of six jurors to deliberate and render a verdict under FRCP 48, this concern is readily resolved by the timing of the Court's excusal. As was done historically when "alternate" jurors served until the time of deliberation and then were excused, ▓▓▓▓ may be excused just prior to the case going to the jury. In this way, the Court can assure that his removal will not give rise to a Rule 48 issue, and will be in a position to consider options if that rule is implicated by ▓▓▓▓ excusal.

For all these reasons, Plaintiff respectfully requests the excusal of ▓▓▓▓ as a juror at the appropriate time prior to jury deliberation in this case, pursuant to FRCP 47(c).

Dated: August 16, 2017                    Respectfully submitted,

/s/ Leonard A. Davis
Leonard A. Davis, Esq. (Bar No. 14190)
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Email: ldavis@hhklawfirm.com

/s/ Gerald E. Meunier
Gerald E. Meunier (Bar No. 9471)
GAINSBURGH BENJAMIN DAVID MEUNIER
&WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street

5

New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
Email: gmeunier@gainsben.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 16th day of August, 2017 a copy of the foregoing motion was electronically served on Defendants through Defendants' Liaison Counsel, James Irwin and John Olinde, and Defendants' Lead Counsel, Susan Sharko and William Hoffman, and on Plaintiffs' Co-Lead Counsel, Andy D. Birchfield, Jr. and Brian H. Barr.

*/s/ Gerald E. Meunier*
**GERALD E. MEUNIER**