UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE ELDON E. FALLON |
| Dora Mingo v. Janssen Research & Development, LLC et al.<br>Case No. 2:15-cv-03469 | MAGISTRATE NORTH |

### DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR EXCUSAL OF A JUROR

Defendants Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC, Bayer HealthCare Pharmaceuticals, Inc., and Bayer Pharma AG (collectively, "Defendants") oppose Plaintiff's Motion for the Excusal of a Juror (Doc. 7375), filed just two days before deliberations begin in this two-week trial.

Juror No. ▮ has, at all times, expressed his willingness to serve as a juror in this case and has been observed leaning forward to read exhibits shown on the monitor, even more so, at times, than other jurors. Although an issue was raised early on during the trial concerning Juror No. ▮, the Court determined that it was not appropriate to dismiss the juror at that time but instead addressed the issue with the juror. In particular, on August 14, 2017, the Court discussed with the parties the situation that the juror had been observed "sleeping [not] only through or nodding through the plaintiff's case, but . . . also . . . during the defendants' case." Trial Tr. 1350. On Monday afternoon, August 14, 2017, while Plaintiff was still putting on her case-in-chief, the Court called the parties and Juror No. ▮ into chambers. The Court inquired of Juror No. ▮, "whether or not [he was] feeling okay." *Id.* at 1349–50. The juror responded, "yes, sir." *Id.* at 1350. The Court reminded the juror that this is a "really important case," and the juror responded, "I know it

is." *Id.* The Court then informed the juror that if he "need[ed] to stand up or if [he] want[ed] a cup of coffee or something," that the Court "would be happy to oblige." *Id.* After discussing this issue with Juror No. ▊, the Court acknowledged that "all [of the jurors] are doing a good job" and asked Juror No. ▊ if he could "keep attention a little bit." *Id.* Juror No. ▊ responded that he could, and the Court informed the parties, "I think he got the message." *Id.* The Court did not dismiss the juror but informed the parties that it would "keep an eye on it" and "[i]f there's another issue with him, we may have to take a different tack." *Id.* at 1351.

Since that in-chambers conference, counsel for Defendants have taken care to observe Juror No. ▊ during the trial day, and he has been as attentive as other jurors. It is our observation that he has been paying full attention, at times more so than other jurors. He has been drinking coffee during the proceedings and seems engaged, even during the video portions of the trial. The Court did have to get the juror's attention at one point today, but by counsel's observation, the juror was attentive at all times before and afterwards.

Plaintiff has put on fifteen witnesses, many of them cumulative. For example, Plaintiff called four Janssen marketing witnesses (Geiger (by video feed), Collier, Seifert, and Shah (by video feed)), four overlapping company scientists, all by video (Wu (by video feed), and Misselwitz, Lensing, and Spiro (all by video deposition)), and four largely overlapping experts (Plunkett, Gosselin, Parisian, and Rinder). The Court has remarked on many occasions both on and off the record that Plaintiff's presentation was making it difficult for jurors. Below are examples since the Court talked with Juror No. ▊:

**Monday, August 14, 2017**

1400:25–1401:8: THE COURT: Are you moving on to something else, then? I do think that this is a whole new thing other than the author. MR. BIRCHFIELD: Right. I have moved on from that. I'm actually back to the study that she was shown. THE COURT: Okay. I'll let that in. Let's get on to something else. Let's

try to finish this witness as quickly as possible, please.  MR. BIRCHFIELD: Yes, sir.

1484:1-5: THE COURT: At this level, at this stage the parties ought to be thinking about what they have done and what is in and not to gild the lily or take up time.  You have to constantly evaluate this.  We have had now 12 or 13 witnesses.  That ought to be considered.

**Wednesday, August 16, 2017**

1750:15–19: THE COURT: We're going to have to move on, Counsel.  We're getting repetitive at this point. I mean, you're getting into argument, as opposed to information.  MR. BIRCHFIELD: I apologize, Your Honor. I do not intend to argue.

1753:17–18: THE COURT: Let's get to an end point, Counsel. MR. BIRCHFIELD: Your Honor, can I take just a moment to look and see what I can –

1813:22–1814:11: THE COURT: Andy, we have to finish this case. You're going to have until five after 12:00. That's 20 minutes. You just have to do it. You're taking it too much by inches. You can't get there by inches. Instead of having to -- I show you a document, a two-page document that's already been introduced into evidence, exhibit such and such. I call your attention to the second paragraph in it. You're not doing that. You're saying: I show you a document. What is it? Do you see that it is such and such? You have got 15 questions before you get to your question. You have to – you're on redirect. You're losing the jury and it's just taking too long. You're getting too much in the weeds. Try and make your point quickly. I don't mean to fuss. It's just that we have to move.

1822:14–24: THE COURT: Look, if that's the argument that you want to make, you can make the argument, but not with this witness. You can't ask a fact witness to -- you can't show him another witness' testimony because he's then simply giving an opinion on it.  It is what it is. If he says one thing and the other person says the other thing, you make that argument to the jury. But what he thinks about it is not -- is not relevant. I mean, what's he going to say, I agree with it or I disagree with it or he said that or he didn't say that? He doesn't know. He's a fact witness.

1950:8–10.  THE COURT: Yes, let's move on, Counsel. You've taken his deposition. You have him under cross.  MR. HONNOLD: Yes, Your Honor.

*  *  *

With the case dragging on as it has, all jurors no doubt have had some difficulty following along at all times.  Since the Court's talk with Juror No. ▌ on August 14, 2017, Defendants' counsel

3

has observed that this juror's attention appears to have been equivalent to other members of the jury.

## ARGUMENT

As courts have recognized, a "sleeping juror should be removed from the jury" only where it is "impossible for that juror to perform his or her duties or would otherwise deny the [party] a fair trial." *Idom v. Natchez-Adams Sch. Dist.*, 178 F. Supp. 3d 426, 436 (S.D. Miss. 2016) (quoting *United States v. Freitag*, 230 F.3d 1019, 1023 (7th Cir. 2000)). Even still, "a court is not invariably required to remove sleeping jurors" and may, in its discretion, choose an appropriate way "to handle a sleeping juror." *Freitag*, 230 F.3d at 1023. The reason for imposing a high standard is self-evident. In a long, protracted trial—on issues involving extremely dense scientific and medical issues—it is inevitable that some jurors will have difficulty paying close attention at all times, particularly when evidence is cumulative or the presentation lacks focus. Utmost care must be taken not to allow parties to strike jurors for strategic reasons under the guise of a "for-cause" challenge.

The Court should deny Plaintiff's motion. After all of Juror No. ▮'s work on this case, over the course of two weeks, he should be permitted to finish his duly sworn duty. By all indications—and as the Court recognized in its in-chambers meeting with the juror—Juror No. ▮ is doing his best, and since his discussion with the Court has been observed doing better and engaged in the case. Moreover, allowing Juror No. ▮ to remain on the jury furthers the interest in keeping the jury intact, particularly in light of the fact that the jury has already lost one juror for cause during the course of trial.

With closings and deliberations set to start tomorrow, the Court should make every effort to keep the jury intact and allow Juror No. ▮—who has remained on the jury for nearly two

4

weeks—to remain on the jury to discharge his sworn duty.  This is particularly true here, as the Court exercised its discretion to speak with Juror No. ▎, recognized that the juror "got the message," and the record reflects only one brief issue since that conference.  *See United States v. Evans*, 272 F.3d 1069, 1087 (8th Cir. 2001) (district court did not abuse its discretion in handling sleeping juror; "once the existence of a sleeping juror was brought to the Court's attention, the Court stated that it would watch the juror and order more recesses" and later recognized that "[h]e's been okay").

In fact, Plaintiff does not point to any actual evidence that it would be "impossible" for Juror No. ▎ to faithfully discharge his obligations as a juror.  Speculation and conjecture do not meet this burden.  *See, e.g.*, *Pelletier v. United States*, Nos. 1:06-cr-00058-JAW & 1:13-cv-00202-JAW, 2014 WL 12687734, at *15 (D. Me. June 17, 2014) ("Petitioner has cited no record evidence to support his contention that the [inattentive] juror . . . was unable to or failed to focus and fulfill her responsibilities as a juror.").  Nor has Plaintiff demonstrated that prejudice would result from Juror No. ▎'s continued service.  *See Burns v. Warren*, Civ. No. 13-1929 (RBK), 2016 WL 1117946, at *26 (D.N.J. Mar. 22, 2016) (requiring party to show "both that the juror in question ignored an essential portion of the trial and that the [party] was prejudiced by the juror's [inattentiveness]"); *United States v. McKeighan*, 685 F.3d 956, 973–74 (10th Cir. 2012) (requiring a showing of prejudice).  If anything, the Court's on-the-record statements indicate that the juror may have missed "critical" cross-examination from Defendants—which would certainly work in Plaintiff's favor.  Plaintiff's unsupported assertions to the contrary do not overcome the presumption that Juror No. ▎ is able to faithfully discharge his obligations.  *See, e.g.*, *Gaston v. McFarland*, No. Civ.A. 04-1168(KSH), 2005 WL 1828660, at *7 (D.N.J. July 29, 2005)

5

(explaining that "general assertions that jurors slept through parts of the critical presentation of the . . . evidence and cross examination are too vague").

## CONCLUSION

Plaintiff has not made any showing that it would be "impossible" for Juror No. ▮ to faithfully serve as a juror in this case. Evidence—not speculation—is required to make this showing, and the evidence shows that the Court resolved any issues with the juror in chambers earlier in the trial. The Court should deny Plaintiff's motion.

Respectfully submitted,

BARRASSO USDIN KUPPERMAN FREEMAN & SARVER, L.L.C.

BY: /s/ *Richard E. Sarver*
Richard E. Sarver
Celeste R. Coco-Ewing
BARRASSO USDIN KUPPERMAN FREEMAN & SARVER, L.L.C.
909 Poydras Street, 24th Floor
New Orleans, Louisiana 70112
Telephone: (504) 589-9700
rsarver@barrassousdin.com
ccoco-ewing@barrassousdin.com


DRINKER BIDDLE & REATH LLP

By: /s/ *Susan M. Sharko*
Susan M. Sharko
DRINKER BIDDLE & REATH LLP
600 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
susan.sharko@dbr.com

Rodney M. Hudson
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
Telephone: (415) 591-7500

MITCHELL, WILLIAMS, SELIG, GATES & WOODYARD, P.L.L.C.

By: /s/ *Lyn P. Pruitt*
Lyn P. Pruitt
Adria W. Conklin
Benjamin D. Brenner
Mary Catherine Way
MITCHELL, WILLIAMS, SELIG, GATES & WOODYARD, P.L.L.C.
425 West Capitol Ave., Suite 1800
Little Rock, AR 72201
Telephone: (501) 688-8800
lpruitt@mwlaw.com
aconklin@mwlaw.com
bbrenner@mwlaw.com
mway@mwlaw.com


WATKINS & EAGER PLLC

By: /s/ *Walter T. Johnson*
Walter T. Johnson
WATKINS & EAGER PLLC
The Emporium Building
400 East Capitol Street
Jackson, Mississippi 39201
Telephone: (601) 965-1846
wjohnson@watkinseager.com

6

Rodney.hudson@dbr.com

Chanda A. Miller
DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2500
Chanda.Miller@dbr.com

IRWIN FRITCHIE URQUHART & MOORE LLC

By: /s/ *James B. Irwin*
James B. Irwin
Kim E. Moore
IRWIN FRITCHIE URQUHART & MOORE LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
jirwin@irwinllc.com

*Attorneys for Defendants Janssen Pharmaceuticals, Inc. and Janssen Research & Development, LLC*

ARNOLD & PORTER KAYE SCHOLER LLP

By: /s/ *William Hoffman*
William Hoffman
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
william.hoffman@apks.com

Andrew K. Solow
Steven Glickstein
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8485
andrew.solow@apks.com
steven.glickstein@apks.com

BRADLEY ARANT BOULT CUMMINGS LLP

By: /s/ *Lindsey C Boney IV*
Lindsey C Boney IV
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place, 1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8803
lboney@bradley.com


CHAFFE MCCALL L.L.P.

By: /s/ *John F. Olinde*
John F. Olinde
CHAFFE MCCALL L.L.P.
1100 Poydras Street, Suite 2300
New Orleans, LA 70163
Telephone: (504) 585-7241
olinde@chaffe.com

*Attorneys for Bayer HealthCare Pharmaceuticals Inc. and Bayer Pharma AG*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 17th day of August, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs by operation of the court's electronic filing system and a copy of the proposed documents to be placed under seal sent to Plaintiffs' Liaison Counsel by email transmission.

*/s/      John F. Olinde*