UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE ELDON E. FALLON |
| Dora Mingo v. Janssen Research & Development, LLC et al.<br>Case No. 2:15-cv-03469 | MAGISTRATE NORTH |

### DEFENDANTS' OBJECTIONS TO THE COURT'S
### FINAL VERDICT FORM AND JURY INSTRUCTIONS

Defendants Bayer HealthCare Pharmaceuticals, Inc., Bayer Pharma AG, Janssen Pharmaceuticals, Inc., and Janssen Research & Development, LLC (collectively, "Defendants") make the following objections to the Court's Final Verdict Form and Jury Instructions. (For the Court's convenience, page and line references are to the Court's August 17, 2017 Draft 3 instructions.) Defendants have submitted their own First Amended Proposed Jury Instructions and Amended Proposed Verdict Form (as well as Supplemental and Contingent Instructions) in order to preserve their objections to the Court's Final Jury Instructions and Verdict Form.

**I.   Objections to the Court's Final Verdict Form.**

Question 1 – Defendants object to the Court instructing the jury that, with respect to medical causation, the jury may potentially impose liability on Defendants if it finds that "Xarelto either caused or substantially contributed to Ms. Dora Mingo's G.I. bleed." (Emphasis added.) This question is inconsistent with some of the Court's charges to the jury and contrary to established Mississippi law.

Elsewhere in the charges, the Court instructs the jury that to find for Plaintiffs it must find that Xarelto was the "proximate cause" of Ms. Mingo's injury and properly defines "proximate

cause" as "THE CAUSE WITHOUT WHICH THE INJURY WOULD NOT HAVE OCCURRED." Court's Instructions, pp. 16-17, 26-27. That charge is correct and irreconcilable with Question 1 of the Verdict Form, which describes "cause" as some disjunctive alternative to "substantial contribution." Allowing the jury to choose between these terms is confusing, insomuch as the Court will have already told the jury that it must find proximate cause.

Proximate cause is exactly what Mississippi law requires, including with respect to medical causation. *Glenn v. Peoples*, 185 So. 3d 981, 986 (Miss. 2015) (summary judgment on proximate cause grounds for doctor whose patient died from bleeding following Coumadin therapy for DVT); *Sherwin-Williams Co. v. Gaines ex rel. Pollard*, 75 So. 3d 41, 47 (Miss. 2011) (rendering judgment for the defendant "because the plaintiff's experts did not present any scientific authority that an acute, asymptomatic ingestion of lead could lead to the alleged injuries, [and therefore] the plaintiff did not offer sufficient proof of causation"); *Coleman v. Danek Med. Inc.*, 43 F. Supp. 2d 637, 651 (S.D. Miss. 1999) (summary judgment for product manufacturer where plaintiff provided "no basis" for allegation that bone screw caused claimed nerve damage). The term "proximate cause" means the cause "which in natural and continuous sequence unbroken by any efficient intervening cause produces the injury, and <u>without which the result would not have occurred</u>." *Grisham v. John Q. Long V.F.W. Post, No. 4057, Inc.*, 519 So. 2d 413, 417 (Miss. 1988) (emphasis added). As a starting point—and as to any claim—Plaintiffs must prove by a preponderance of the evidence that Xarelto is the cause without which Ms. Mingo's G.I. bleed would not have occurred, not merely that Xarelto "contributed" to her bleed, substantially or otherwise.

Questions 2 & 3 – Defendants object to the use of the term "instructions," rather than "warnings or instructions." Isolating the word "instructions" deprives Defendants of a defense

supported by the evidence and the MPLA's text: that the jury must consider warnings and instructions as a whole.

Part of Defendants' defense in this case is that its product label adequately communicates the risk of bleeding, including the unavailability of laboratory tests to measure bleeding risk, and that the label is therefore adequate.  It is also a part of Defendants' defense that product instructions must be viewed in their context, as statements that are accompanied by warnings.  The jury is entitled to consider that defense, and should not be deprived of it just because Plaintiffs want to look past the product "warnings" altogether and focus solely on the "instructions."  The decision to emphasize instructions in their presentation of evidence is Plaintiffs' prerogative, but a "defendant is . . . entitled to have the jury instructed on the law that supports defensive theories that are raised by the evidence."  *Pierce v. Ramsey Winch Co.*, 753 F.2d 416, 425 (5th Cir. 1985); *see also Burr v. Miss. Baptist Med. Ctr.*, 909 So. 2d 721, 726 (Miss. 2005) ("We have consistently held that the defense is entitled to jury instructions which present its theory of the case, if supported in the evidence.").  By only referring to "instructions," this Question deprives Defendants of that right.

That the Xarelto product label warns extensively about bleeding (and of the absence of a test to measure bleeding risk) is unquestionably in evidence Defendants are entitled to have the jury consider that fact.  Xarelto's warnings and instructions are communicated together in the package insert for the drug, and physicians make decisions by considering both the warnings and instructions together.  There is no just reason to permit the jury to pass on Plaintiffs' theory of the case and not Defendants' defense to the same.  The jury should be told to consider the "warnings or instructions" as a whole.

There is also no basis in Mississippi law for isolating "instructions" from "warnings. Rather than defining a "failure to instruct" claim as something separate from a "failure to warn" claim, the MPLA repeatedly refers to "warnings or instructions" as a single term.  *See* Miss. Code Ann. §§ 11-1-63(a)(i)(2), (c)(i), -(c)(ii).  In fact, the term "adequate warning or instruction" is defined in the statute just once:

> An adequate product warning or instruction is one that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that communicates sufficient information on the dangers and safe use of the [prescription drug] . . . taking into account the characteristics of, and the ordinary knowledge common to, a physician or other licensed professional who prescribes the drug . . . .

Miss. Code. Ann. § 11-1-63(c)(ii).

Hence, an adequate "warning" is, by definition, the same thing as an adequate "instruction" under the MPLA.  Further, the Mississippi Model Jury Instructions published by the Mississippi Judicial College have a single instruction titled "Failure to warn," which charges jurors to consider the adequacy of "warnings or instructions" together.  *See* MMJI § 16:4 (Nov. 2016 Update).  There cannot be distinct analyses for warnings and instructions; there can only be one analysis.

The state and federal courts applying the MPLA's learned intermediary doctrine to the prescribing decision have not been ignorant of the MPLA's history or text; indeed, those courts consist of judges steeped in Mississippi law and practice.  They have, like the Mississippi Model Jury Instructions, used the term "failure to warn" as shorthand for any claim based on product warnings *or instructions*.  And some of the courts—while applying the rule that the physician's prescribing decision is the decision that matters—have specifically rejected the idea that a "failure to instruct" requires a different analysis.  *Cross v. Forest Labs.*, 102 F. Supp. 3d 896, 903 (N.D. Miss. 2015); *Deese v. Immunex Corp.*, No. 3:11-CV-373-DPJ-FKB, 2012 WL 463722, at *5 (S.D.

4

Miss. Feb. 13, 2012); *Little v. Smith & Nephew, Inc.*, No. 1:15-CV-00028-GHD, 2015 WL 3651769, at *9 (N.D. Miss. June 11, 2015).

Defendants therefore object to the Court using the term "instructions" in Questions 2 & 3 of the Verdict Form, instead of the appropriate "warnings or instructions."

Defendants also move the Court to instruct the jury that if the jury answers "no" to Question 2, it should sign the verdict form and not proceed any further in the questions. *Swayze v. McNeil Labs.*, 807 F.2d 464, 467-68 (5th Cir. 1987).

Question 4 – Defendants object to the question's use of the phrase "at the time it [meaning Xarelto] left Defendants' control." Ordinarily, that phrase—which is taken from the MPLA—would be unobjectionable. But the Court's preemption rulings render the phrase inaccurate: the Court's rulings make clear that the only potential design claim is a claim based on the design pre-FDA-approval. Order & Reasons dated July 21, 2017 (Doc. 7110) (following *Guidry v. Janssen Pharms., Inc.*, 206 F. Supp. 3d 1187, 1206 (E.D. La. 2016), which distinguished between pre-approval design claims that the *Guidry* court held not preempted and post-approval design claims which the Guidry court held preempted). Plaintiffs reaffirmed this limit to their claim in their opening statement before the jury. Trial Tr. 141:19 – 142:11, 144:1–17. The draft charge also correctly refers to the time of approval (at p. 25). Therefore, Question 4 should ask the jury whether it finds Xarelto's design was defective "at the time it first received FDA approval."

## II.     General objections to charges to the Court's Final Jury Instructions.

"Defective or unreasonably dangerous" (p. 16, line 8; p. 16, line 10; p. 16, line 18) – Defendants object to the Court instructing the jury that Defendants shall be liable to a claimant for damages proximately caused by one or more ways in which a product was defective or unreasonably dangerous, an erroneous instruction that appears at least on the pages and lines

5

identified above but continues throughout the jury charges.  This instruction is inconsistent with the text of the MPLA and suggests a lower burden than the MPLA requires because it is framed in the disjunctive.  The MPLA requires the plaintiff to prove that the manufacturer's product is both defective <u>and</u> unreasonably dangerous.  *See* Miss. Code Ann. § 11-1-63.  Moreover, on pages 25–26, the Court has also correctly instructed the jury that, for Defendants to be liable, it must find that Xarelto was defectively designed and its design made the drug unreasonably dangerous.  These internal inconsistencies risk juror confusion.

<u>"Substantially contributed" or "Substantial factor" causation (p. 27, line 9; p. 27, lines 16–17; p. 27, line 29; p.28, line 4)</u> –  Defendants object to the Court instructing the jury that it may find Defendants liable if Xarelto "caused or substantially contributed" to Ms. Mingo's alleged injuries, or any words to that effect.  This erroneous instruction appears at least at the pages and lines identified above but continues throughout the jury charges.  An MPLA claim requires proof that the "defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought." Miss. Code. Ann. § 11-1-63(a)(iii).  Proximate cause means "that cause which in natural and continuous sequence unbroken by any efficient intervening cause produces the injury, and without which the result would not have occurred." *Grisham*, 519 So. 2d at 417.  In other words, the proximate cause test is but-for causation.  *See Berry v. E-Z Trench Mfg., Inc.*, 772 F. Supp. 2d 757, 761 (S.D. Miss. 2011) (summary judgment in MPLA case because plaintiff was "unable to prove that 'but for the defendant's negligence, the injury would not have occurred'").  Mississippi's law of "substantial factor" is applied as a "but-for" causation standard.  See MMJI § 14:4: "If the plaintiff would have been injured even if the defendant had not been negligent, the defendant's negligence is not a substantial factor and not a proximate cause."); *New Orleans & N. E. R. Co. v. Burge*, 2 So. 2d 825, 826 (Miss. 1941) ("[A]n actor's

negligent conduct is not a substantial factor in bringing about harm to another if it would have been sustained even if the actor had not been guilty of the particular negligence charged."); *Pargas of Taylorsville, Inc. v. Craft*, 249 So. 2d 403, 409 (Miss. 1971) (quoting *Burge* with approval). Just as medical causation requires a proximate cause test, so too does any causal theory linking Ms. Mingo's alleged damages to the alleged product defect.

<u>"Instructions" instead of "warnings or instructions"</u> – Defendants object to the Court instructing the jury regarding "instructions" rather than "warnings or instructions" and request that every instance of "instructions" be replaced with "warnings or instructions." The Court uses the term "instructions," standing alone, in many places throughout the charges. As explained above in addressing the Verdict Form, the MPLA provides that a product is defective if "it failed to contain adequate warnings or instructions," and the statute thus makes clear that the warnings or instructions provided are relevant to liability. *See* Miss. Code Ann. § 11-1-63(c). Furthermore, Defendants contest liability on the grounds that they have provided adequate warnings and instructions regarding the safe use of Xarelto. Accordingly, in determining whether Defendants are liable, the jury is entitled to consider the warnings and instructions that Defendants have provided. Defendants are entitled to have any instruction that is supported by the evidence and is consistent with Defendants' defenses in this case. *Pierce*, 753 F.2d at 425; *Burr*, 909 So. 2d at 726.

In the alternative, if the Court insists on charging the jury on a theory of inadequate "instructions" rather than examining the adequacy of "warnings or instructions," Defendants move the Court to, at least, include the following statement at p. 18, line 5:

> In considering whether Defendants adequately instructed Ms. Mingo's prescribing physician, Dr. Jordon, about the safe use of Xarelto, you may consider any warnings provided in the label and whether any additional instructions were required.

7

The inclusion of this clarifying instruction will at least come closer to apprising the jury of Defendants' theory of the case.

### III. Specific objections to charges to the Court's Final Instructions.

P. 17 (lines 12-13) – Defendants object to the Court describing Defendants as "collectively responsible to the plaintiff," which implies that Defendants' liability to Plaintiff is already conclusively established. The Court should instruct the jury that Defendants are "collectively responsible for the product's labeling and design" instead.

P. 18 (lines 6-11) – Defendants object merely to the placement, but not the existence, of the instruction that prescription drugs are not defective if they include instructions for safe use. That instruction pertains to the design of prescription drug products, and the instruction therefore belongs with other instructions related to product design. To the same end, line 9 of the instruction should state that prescription drugs are not "unreasonably dangerous in design" when accompanied by adequate warnings, rather than just not "unreasonably dangerous." *See* Restatement (Second) of Torts § 402A, cmt. k.; *Swayze*, 807 F.2d at 467-68. Defendants move the Court to change this verbiage and to transfer the instruction to page 26, line 14.

P. 21, (line 9) – Defendants object that the instruction is incomplete without the final sentence of Defendants' Request 21: "If Dr. Jordon was already aware of the risk, then you must find the Defendants not liable for failure to warn or instruct." This additional statement is necessary for the jury to understand another fact that would relieve Defendants of any liability for Plaintiffs' warnings or instructions claim. *Tillery v. United States*, 411 F.2d 644, 648 (5th Cir. 1969) (jury instructions should not omit considerations necessary for a fair verdict).

P. 23 (lines 2-5) – Defendants object to the words "and federal drug regulations" on page 23, line 3 of the proposed instructions, and propose that the sentence read "Under Mississippi

applicable to this case, drug manufacturers at all times bear responsibility for the content of the drug's label." While defendants recognize that *Wyeth v. Levine*, 555 U.S. 555, 570–71 (2009) states that manufacturers bear responsibility for the drug label, the context for that isolated statement was consideration of a pure legal issue for the court—i.e. federal preemption under the Supremacy Clause of the Constitution; it was never intended as a balanced jury charge. The Court cannot fairly instruct the jury on this little snippet from *Wyeth* without fully instructing the jury about what the FDA does do with respect to the label. Other language in *Wyeth* confirms that "The FDA's premarket approval of a new drug application includes approval of the exact text in the proposed label" (*Id*. at 568); that approval constitutes a finding that the "proposed label is not 'false or misleading is not false or misleading in any particular'" (*Id*. at 607) (from the dissent but quoting verbatim the statute, 21 U.S.C. 355(d)); that the manufacturer lacks the capacity to change the label absent "newly acquired information" (*Id* at. 568); and that "FDA retains authority to reject labeling changes." (*Id*. at 571). It is not possible to fairly summarize the regulatory balance and interplay between manufacturer and FDA in one sentence that is written to emphasize a particular point relevant to preemption and not to provide a fair representation of FDA's role for jury purposes. For these reasons, the Court should strike the language referenced above.

Alternatively, the Court should add the Defendants' Proposed Supplemental and Contingent Jury instructions (Doc. 7338), incorporated herein, that provide fair balance to the one-sided description of the FDA-manufacturer relationship. In addition, at the end of Request D, Defendants propose the following language: "The FDA must reject proposed labeling if it is 'false or misleading in any particular.'" 21 U.S.C § 355(d).

P. 28 (lines 1-17) – Defendants object because this instruction is, at best, incomplete if unaccompanied by a preexisting condition instruction, such as Defendants' Request No. 17.

Defendants move the Court to give that instruction instead.  If the Court insists on giving the instruction at p. 28, lines 1-17, the Court should replace the disjunctive "caused by, or substantially contributed to, or made worse as a result of" with "proximately caused by."  As explained elsewhere in Defendants' objections, proximate cause is the controlling standard under Mississippi law.

Labeling and federal regulations (p. 24, line 12 – p.25, line 8) –   Defendants object to this instruction because it gives insufficient attention to—and obscures—the relevance of FDA's approval of Xarelto and Defendants' compliance with regulatory standards, which (while not necessarily conclusive) bear directly on the non-defectiveness of a product, the adequacy of the product's label and design, and the reasonableness of Defendants' conduct.  *See* 21 U.S.C. § 355; 21 C.F.R. § 314.125; *Union Carbide Corp. v. Nix*, 142 So. 3d 374, 387 (Miss. 2014) ("Compliance with [regulatory] standards is evidence of the reasonableness of [Defendants'] actions, but is not dispositive.").

The charge is unfairly unbalanced in favor of Plaintiffs.  The charge states in one sentence encompassing three lines that the jury can consider FDA approval, while spending three sentences covering thirteen lines stating that the jury need not give FDA approval very much (if any) weight:

- The first of these three sentences tells the jury that FDA approval does not absolve of the Defendants of all liability.

- The second tells the jury that FDA approval does not foreclose a claim under Mississippi law.

- The third tells the jury that FDA approval does not mean that the Defendants necessarily have apprised physicians of the risk of Xarelto.

It is unfairly prejudicial to Defendants to make Plaintiffs' point three times in three different ways, while making Defendants' point only once. Defendants acknowledge that two of the three sentences contain the words "through relevant" or "although relevant," but those two words are buried in much longer sentences, the thrust of which is that the jury is free to disregard FDA approval. Indeed, the meaning of "though" and "although" when used to introduce the word "relevant" is to signal that the main point of the sentence is to negate or minimize the relevance. The charge is imbalanced in giving so much attention to how the jury can disregard FDA approval and so little attention to how it can consider it.

This imbalance is made worse by the different levels of specificity in the charge. When advising the jury that they can disregard FDA approval, the Court is very specific: FDA approval does not absolve Defendants of liability; it is not necessarily sufficient under Mississippi law; and it is not sufficient if the evidence shows that the warning was deficient. By contrast, the instruction is extremely vague and non-specific as to how the jury can permissibly consider FDA approval. The Court says the jury can consider FDA approval in determining liability but never explains how. The Court says FDA approval is relevant but never explains relevant to what. For example, although the Mississippi Supreme Court has held that compliance with regulations is some evidence that the Defendants' conduct is "reasonable" under Mississippi law, the charge does not state that explicitly. *See Union Carbide Corp.*, 142 So. 3d at 387. Just as the jury is free to find that FDA regulations are insufficient under state law to apprise doctors of the risk, it is equally free to find that FDA regulations are sufficient to apprise doctors of the risk. The instructions, however, make only the first statement and not the second statement. This unfairly favors the Plaintiffs.

Given the lack of specificity as to how the jury may permissibly consider FDA approval, the charge is not only unbalanced, but incorrect, incomplete, and confusingly vague. The jury is entitled to know the law on how FDA approval may be relevant, and the charge should explain the potential relevance of FDA approval with specificity equal to the charge explaining how FDA approval may not be conclusive.

Defendants have proposed in Section IV below a revised version of the Court's FDA instruction that would cure the defects described above, and Defendants request that the Court give that instruction.

<u>Proximate cause—warnings-causation and learned intermediary</u> (pp. 23-24, lines 16-19, lines 1-4) – Defendants object to this instruction because it misstates the warnings-causation standard by requiring Plaintiffs to merely prove that a claimed inadequate warning "affected the decision or decisions" of Dr. Jordon, or that a different warning would have "altered his prescribing behavior" or caused him to "recommend[] a different course of treatment in her case."

The correct standard is that Plaintiffs must prove by a preponderance of evidence "that an adequate warning would have convinced the [prescribing] physician not to prescribe the product." *Janssen Pharmaceutica, Inc. v. Bailey*, 878 So. 2d 31, 58 (Miss. 2004) (internal marks omitted) (quoting *Thomas v. Hoffman-LaRoche, Inc.*, 949 F.2d 806, 811 (5th Cir. 1992); *see also Smith v. Johnson & Johnson, Inc.*, 483 F. App'x 909, 914–15 (5th Cir. 2012) (applying Mississippi law) (affirming summary judgment where the plaintiffs had "not raised an issue of material fact as to whether a more detailed warning would have prevented Dr. Barksdale from using Mersilene mesh"); *Thomas*, 949 F.2d at 812 (applying Mississippi law) (holding that "in a prescription drug failure to warn case, the plaintiff must establish that an adequate warning would have convinced the treating physician not to prescribe the product for the plaintiff"); *Cross v. Forest Labs.*, 102 F.

Supp. 3d 896, 905 (N.D. Miss. 2015) (granting summary judgment where the plaintiffs failed to create "a genuine issue of material fact as to whether an adequate warning would have altered Dr. Eccles–James' decision to prescribe Lexapro, as required by the learned intermediary doctrine"); *Estes v. Lanx, Inc.*, No. 1:14CV052-SA-DAS, 2015 WL 9462964, at *3 (N.D. Miss. Dec. 23, 2015) (granting summary judgment where "Plaintiff . . . failed to put forth evidence that the treating physician would not have used this product had he known of the alleged lack of FDA clearance for the device or components of the product"); *Deese v. Immunex Corp.*, No. 3:11-CV-373-DPJ-FKB, 2012 WL 463722, at *5 (S.D. Miss. Feb. 13, 2012) (holding that plaintiff's claim was not "sufficiently pleaded" because the plaintiff "falls short of alleging that an adequate warning would have kept his physician from prescribing Enbrel"); *Little v. Smith & Nephew, Inc.*, No. 1:15-CV-00028-GHD, 2015 WL 3651769, at *9 (N.D. Miss. June 11, 2015) (granting motion to dismiss where the plaintiff "fail[ed] to allege that the physician would not have used the screw if he had received an adequate warning"). The Court should instruct the jury on the correct warnings-causation standard, which looks to the prescribing decision rather than other physician "behavior" or other aspects of the "course of treatment."

**IV.     Objections to Court's refusal to give instructions proposed by Defendants.**

Defendants have, in several of the objections above, guided the Court to Defendants' requests or proposed language that would satisfy Defendants' objections. Defendants further draw the Court's attention to the following specific instructions and ask that the instruction be given:

<u>Proximate Cause – Warning (Defendants' Request No. 21)</u> – Defendants object to the Court's refusal to give the Defendants' proposed instruction regarding the proximate cause standard in a pharmaceutical failure-to-warn action, which states as follows:

> To recover for failure to warn, the Plaintiff must prove by a preponderance of the evidence that an inadequate warning itself—in addition to the

13

>medication—was the proximate cause of her injury. When I say "proximate cause," I mean that the Plaintiff must prove by a preponderance of the evidence that, if a different warning had accompanied Xarelto, then Dr. Jordon would have changed his decision to prescribe Xarelto and Ms. Mingo would not have suffered her injury. If Dr. Jordon was already aware of the risk, then you must find the Defendants not liable for failure to warn.

This instruction accurately states Mississippi law, whereas the Court's learned intermediary instructions do not. *See* objections to learned intermediary instructions, *supra*.

FDA Approval (Defendants' Request No. 12) – Defendants object to the Court's refusal to give the Defendants' proposed instruction regarding FDA approval, which states as follows:

>The FDA approved the design and dose of Xarelto and its label. You may consider this fact in weighing the evidence in this case in determining the liability of the Defendants. In particular, you may consider Defendants' compliance with FDA regulations as some evidence that Xarelto's label provided an adequate warning and that Xarelto's design was not defective.
>However, FDA approval, although relevant, does not necessarily absolve the Defendants of all liability; it does not necessarily establish that the warnings or instructions provided with the drug were adequate under Mississippi law, or that the drug's design was non-defective. Any action or inaction on the part of the FDA, though relevant, does not foreclose a claim under Mississippi law. More specifically, you may give weight to FDA's review and approval of the design and dosage of Xarelto and its label. You may consider that evidence, but under the law it is not conclusive; that is for you to decide. Even if the Defendants have met all the appropriate standards for FDA approval and governmental regulations and requirements to obtain FDA approval, this compliance and approval, though relevant, is not necessarily sufficient to conclusively establish that the Defendants have taken the steps necessary under the law applicable to this case. If you find that Xarelto should have been designed differently or that the Defendants failed to apprise the prescribing physician of appropriate testing to address risks that Defendants knew or should have known prior to FDA approval of Xarelto or became known after the FDA approved Xarelto's label, then FDA approval of the drug, though relevant, is not conclusive.

This proposed instruction provides an accurate and balanced explanation of the significance of FDA approval, whereas the Court's charge on labeling and federal regulations does not. *See* Objections to Labeling and federal regulations, *supra*.

14

Definition of Adequate Warning (Defendants' Request No. 20) – Defendants object to the Court's refusal to add the following additional language to the Court's definition of an adequate warning (at p. 20, line 3):

> An adequate warning or instruction does not have to be perfect, only reasonable under the circumstances. You should consider whether Xarelto's warnings or instructions were reasonable, not whether they were the best possible warnings or instructions. A warning or instruction is adequate if it warns of the risk that Plaintiff alleges claims gives rise to his or her injury.

This instruction is supported by Mississippi law, and accords with the evidence and Defendants' theories. *Janssen Pharmaceutica, Inc. v. Bailey*, 878 So. 2d 31, 55 (Miss. 2004) ("An adequate warning is one reasonable under the circumstances."); *Cather v. Catheter Tech. Corp.*, 753 F. Supp. 634, 640 (S.D. Miss. 1991) ("A warning may be held adequate as a matter of law where the adverse effect that was ultimately visited upon the patient was one that the manufacturer specifically warned against."). There is no valid reason to withhold the instruction.

Substantial proof of mental anguish (Defendants' Request No. 28) – Defendants object to the Court's refusal to give Defendants' instruction on the standard necessary to recover mental anguish damages:

> The law recognizes that a plaintiff may suffer mental anguish as a result of an incident, in addition to physical pain and suffering. You may consider mental anguish, if any, as part of the damages, if any, you award.
> However, to recover such damages the Plaintiff must have presented substantial proof of demonstrable harm. Substantial proof means something more than just testimony that the Plaintiff has worried, has been depressed, or has experienced loss of sleep.

This instruction is supported by Mississippi law and relevant to this case. *See Adams v. U.S. Homecrafters, Inc.*, 744 So. 2d 736, 744 (Miss. 1999); *Morrison v. Means*, 680 So. 2d 803, 807 (Miss. 1996); *Evans v. Miss. Dep't of Human Servs.*, 36 So. 3d 463, 476 (Miss. Ct. App. 2010).

15

Respectfully submitted,

BARRASSO USDIN KUPPERMAN FREEMAN & SARVER, L.L.C.

BY: /s/ *Richard E. Sarver*
Richard E. Sarver
Celeste R. Coco-Ewing
BARRASSO USDIN KUPPERMAN FREEMAN & SARVER, L.L.C.
909 Poydras Street, 24th Floor
New Orleans, Louisiana 70112
Telephone: (504) 589-9700
rsarver@barrassousdin.com
ccoco-ewing@barrassousdin.com


DRINKER BIDDLE & REATH LLP

By: /s/ *Susan M. Sharko*
Susan M. Sharko
DRINKER BIDDLE & REATH LLP
600 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
susan.sharko@dbr.com

Rodney M. Hudson
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
Telephone: (415) 591-7500
Rodney.hudson@dbr.com

Chanda A. Miller
DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2500
Chanda.Miller@dbr.com


IRWIN FRITCHIE URQUHART & MOORE LLC

By: /s/ *James B. Irwin*
James B. Irwin

MITCHELL, WILLIAMS, SELIG, GATES & WOODYARD, P.L.L.C.

By: /s/ *Lyn P. Pruitt*
Lyn P. Pruitt
Adria W. Conklin
Benjamin D. Brenner
Mary Catherine Way
MITCHELL, WILLIAMS, SELIG, GATES & WOODYARD, P.L.L.C.
425 West Capitol Ave., Suite 1800
Little Rock, AR 72201
Telephone: (501) 688-8800
lpruitt@mwlaw.com
aconklin@mwlaw.com
bbrenner@mwlaw.com
mway@mwlaw.com


WATKINS & EAGER PLLC

By: /s/ *Walter T. Johnson*
Walter T. Johnson
WATKINS & EAGER PLLC
The Emporium Building
400 East Capitol Street
Jackson, Mississippi 39201
Telephone: (601) 965-1846
wjohnson@watkinseager.com

ARNOLD & PORTER KAYE SCHOLER LLP

By: /s/ *William Hoffman*
William Hoffman
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
william.hoffman@apks.com

Andrew K. Solow
Steven Glickstein
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street

16

| | |
|---|---|
| Kim E. Moore<br>IRWIN FRITCHIE URQUHART & MOORE LLC<br>400 Poydras Street, Suite 2700<br>New Orleans, LA 70130<br>Telephone: (504) 310-2100<br>jirwin@irwinllc.com<br><br>*Attorneys for Defendants Janssen Pharmaceuticals, Inc. and Janssen Research & Development, LLC* | New York, New York 10019-9710<br>Telephone: (212) 836-8485<br>andrew.solow@apks.com<br>steven.glickstein@apks.com<br><br>BRADLEY ARANT BOULT CUMMINGS LLP<br><br>By: */s/ Lindsey C Boney IV*<br>Lindsey C Boney IV<br>BRADLEY ARANT BOULT CUMMINGS LLP<br>One Federal Place, 1819 Fifth Avenue North<br>Birmingham, AL 35203-2119<br>Telephone: (205) 521-8803<br>lboney@bradley.com<br><br><br>CHAFFE MCCALL L.L.P.<br><br>By: */s/ John F. Olinde*<br>John F. Olinde<br>CHAFFE MCCALL L.L.P.<br>1100 Poydras Street, Suite 2300<br>New Orleans, LA 70163<br>Telephone: (504) 585-7241<br>olinde@chaffe.com<br><br>*Attorneys for Bayer HealthCare Pharmaceuticals Inc. and Bayer Pharma AG* |

**CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that on the 18th day of August, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs by operation of the court's electronic filing system.

                              */s/     John F. Olinde*