**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**

|  |  |  |
|---|---|---|
| | * | **MDL NO. 2592** |
| **IN RE:  XARELTO (RIVAROXABAN)** | * | |
| **PRODUCTS LIABILITY LITIGATION** | * | **SECTION: L** |
| | * | |
| | * | **JUDGE ELDON E. FALLON** |
| | * | **MAG. JUDGE NORTH** |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**THIS DOCUMENT RELATES TO**:
   *Mingo v. Janssen, et al.*

**JURY INSTRUCTIONS**

MEMBERS OF THE JURY:

YOU HAVE NOW HEARD ALL THE EVIDENCE IN THIS CASE AS WELL AS THE FINAL ARGUMENT.

IT BECOMES MY DUTY, THEREFORE, TO INSTRUCT YOU ON THE RULES OF LAW THAT YOU MUST FOLLOW AND APPLY IN ARRIVING AT YOUR DECISION IN THIS CASE.

I WILL FIRST GIVE YOU SOME GENERAL INSTRUCTIONS, WHICH APPLY IN ALL CASES, AND THEN I WILL GIVE YOU SOME SPECIAL INSTRUCTIONS SPECIFIC TO THIS CASE.

I.     **GENERAL INSTRUCTIONS**

IN ANY JURY TRIAL, THERE ARE, IN EFFECT, TWO JUDGES. I AM ONE OF THE JUDGES; THE OTHER IS YOU, THE JURY. IT IS MY DUTY TO PRESIDE OVER THE TRIAL AND TO DETERMINE WHAT TESTIMONY

AND OTHER EVIDENCE IS ADMISSIBLE UNDER THE LAW FOR YOUR CONSIDERATION. IT IS ALSO MY DUTY AT THE END OF THE TRIAL TO INSTRUCT YOU ON THE LAW APPLICABLE TO THE CASE.

YOU, AS JURORS, ARE THE JUDGES OF THE FACTS. BUT IN DETERMINING WHAT ACTUALLY HAPPENED IN THIS CASE—THAT IS, IN REACHING YOUR DECISION AS TO THE FACTS—IT IS YOUR SWORN DUTY TO FOLLOW THE LAW I AM NOW IN THE PROCESS OF DEFINING FOR YOU AND YOU MUST FOLLOW MY INSTRUCTIONS AS A WHOLE. YOU HAVE NO RIGHT TO DISREGARD OR GIVE SPECIAL ATTENTION TO ANY ONE INSTRUCTION, OR TO QUESTION THE WISDOM OR CORRECTNESS OF ANY RULE I MAY STATE TO YOU. THAT IS, YOU MUST NOT SUBSTITUTE OR FOLLOW YOUR OWN NOTION OR OPINION AS TO WHAT THE LAW IS OR OUGHT TO BE. IT IS YOUR DUTY TO APPLY THE LAW AS I GIVE IT TO YOU, REGARDLESS OF THE CONSEQUENCES.

BY THE SAME TOKEN, IT IS ALSO YOUR DUTY TO BASE YOUR VERDICT SOLELY UPON THE TESTIMONY AND OTHER EVIDENCE IN THE CASE WITHOUT PREJUDICE OR SYMPATHY. THAT WAS THE PROMISE YOU MADE AND THE OATH YOU TOOK BEFORE BEING

2

ACCEPTED BY THE PARTIES AS JURORS IN THIS CASE, AND THEY HAVE THE RIGHT TO EXPECT NOTHING LESS.

THIS CASE SHOULD BE CONSIDERED AND DECIDED BY YOU AS AN ACTION BETWEEN PERSONS OF EQUAL STANDING IN THE COMMUNITY, OF EQUAL WORTH, AND HOLDING THE SAME OR SIMILAR STATIONS IN LIFE. ALL PERSONS AND CORPORATIONS OR PUBLIC ENTITIES STAND EQUAL BEFORE THE LAW AND ARE TO BE DEALT WITH AS EQUALS IN THE COURT OF JUSTICE.

AS I STATED EARLIER, IT IS YOUR DUTY TO DETERMINE THE FACTS, AND IN SO DOING YOU MUST CONSIDER ONLY THE EVIDENCE I HAVE ADMITTED IN THE CASE. THE TERM "EVIDENCE" INCLUDES THE SWORN TESTIMONY OF THE WITNESSES AND THE EXHIBITS ADMITTED INTO THE RECORD.

REMEMBER THAT ANY STATEMENTS, OBJECTIONS, OR ARGUMENTS MADE BY THE LAWYERS ARE NOT EVIDENCE IN THE CASE. THE FUNCTION OF THE LAWYERS IS TO POINT OUT THOSE THINGS THAT ARE MOST SIGNIFICANT OR MOST HELPFUL TO THEIR SIDE OF THE CASE, AND IN SO DOING TO CALL YOUR ATTENTION TO CERTAIN FACTS OR INFERENCES THAT THEY ARE PARTICULARLY CONCERNED THAT YOU RECALL. IN THE FINAL ANALYSIS,

HOWEVER, IT IS YOUR OWN RECOLLECTION AND INTERPRETATION OF THE EVIDENCE THAT CONTROLS IN THIS CASE. WHAT THE LAWYERS SAY IS NOT BINDING UPON YOU.

ALSO, DURING THE COURSE OF TRIAL, I HAVE OCCASIONALLY MADE COMMENTS TO THE LAWYERS, OR ASKED A QUESTION OF A WITNESS, OR ADMONISHED A WITNESS CONCERNING THE MANNER IN WHICH HE OR SHE SHOULD RESPOND TO THE QUESTIONS OF COUNSEL. DO NOT ASSUME FROM ANYTHING I MAY HAVE SAID THAT I HAVE ANY OPINION CONCERNING ANY OF THE FACTS IN THIS CASE. IN ARRIVING AT YOUR OWN FINDINGS AS TO THE FACTS, YOU SHOULD DISREGARD ANYTHING I MAY HAVE SAID DURING THE TRIAL, EXCEPT FOR MY INSTRUCTIONS TO YOU ON THE LAW.

THE LAW OF THE UNITED STATES PERMITS THE JUDGE TO COMMENT ON EVIDENCE PRESENTED DURING A CASE. I DO NOT BELIEVE THAT I HAVE MADE ANY COMMENTS ON THE EVIDENCE IN THIS CASE. HOWEVER, IF YOU COULD POSSIBLY CONSTRUE ANY REMARKS WHICH I HAVE MADE DURING THE COURSE OF THIS TRIAL AS A COMMENT ON THE EVIDENCE, THEN I INSTRUCT YOU THAT ANY SUCH COMMENT ON MY PART IS ONLY AN EXPRESSION OF MY OPINION AS TO THE FACTS, AND YOU, THE JURY, MAY DISREGARD

4

SUCH COMMENT OR COMMENTS ENTIRELY SINCE YOU, AS JURORS,
ARE THE SOLE JUDGES OF THE FACTS IN THIS CASE.

WHILE YOU SHOULD CONSIDER ONLY THE EVIDENCE IN THE
CASE, YOU ARE PERMITTED TO DRAW SUCH REASONABLE
INFERENCES FROM THE TESTIMONY AND THE EXHIBITS AS YOU FEEL
ARE JUSTIFIED IN THE LIGHT OF COMMON EXPERIENCE. IN OTHER
WORDS, YOU MAY MAKE DEDUCTIONS AND REACH CONCLUSIONS
THAT REASON AND COMMON SENSE LEAD YOU TO DRAW FROM THE
FACTS THAT HAVE BEEN ESTABLISHED BY THE TESTIMONY AND
EVIDENCE IN THIS CASE.

YOU MAY CONSIDER EITHER DIRECT OR CIRCUMSTANTIAL
EVIDENCE. "DIRECT EVIDENCE" IS THE TESTIMONY OF ONE WHO
ASSERTS ACTUAL KNOWLEDGE OF A FACT, SUCH AS AN
EYEWITNESS. "CIRCUMSTANTIAL EVIDENCE" IS PROOF OF A CHAIN
OF FACTS AND CIRCUMSTANCES INDICATING A FACT TO BE PROVED.
THE LAW MAKES NO DISTINCTION BETWEEN THE WEIGHT TO BE
GIVEN TO EITHER DIRECT OR CIRCUMSTANTIAL EVIDENCE.

CERTAIN CHARTS AND SUMMARIES HAVE BEEN SHOWN TO
YOU SOLELY TO HELP EXPLAIN OR SUMMARIZE THE FACTS
DISCLOSED BY THE RECORDS AND OTHER DOCUMENTS THAT ARE IN

EVIDENCE. THESE CHARTS AND SUMMARIES ARE NOT EVIDENCE OR PROOF OF ANY FACTS. YOU SHOULD DETERMINE THE FACTS FROM THE EVIDENCE.

IN DECIDING THIS CASE, YOU ARE EXPECTED TO USE YOUR GOOD SENSE. GIVE THE EVIDENCE AND THE TESTIMONY OF THE WITNESSES A REASONABLE AND FAIR INTERPRETATION IN LIGHT OF YOUR KNOWLEDGE OF THE NATURAL TENDENCIES OF HUMAN BEINGS.

IN WEIGHING THE TESTIMONY AND IN DETERMINING THE CREDIBILITY OF ANY WITNESS, YOU MAY CONSIDER THE CONDUCT OF THE WITNESS, HIS OR HER BEARING ON THE WITNESS STAND, HIS OR HER PERSONAL FEELINGS AS DEMONSTRATED BY HIS OR HER TESTIMONY AND ACTIONS, ANY INTEREST HE OR SHE MAY HAVE IN THE OUTCOME OF THE CASE, ANY PREJUDICE OR BIAS HE OR SHE MAY HAVE SHOWN, AND ANY PARTIALITY HE OR SHE MAY HAVE DEMONSTRATED.

IF A WITNESS IS SHOWN TO HAVE TESTIFIED FALSELY CONCERNING ANY MATERIAL MATTER, YOU HAVE A RIGHT TO DISTRUST SUCH WITNESS'S TESTIMONY ON OTHER MATTERS AND YOU MAY DISTRUST ALL OF THE TESTIMONY OF THAT WITNESS.

6

YOU SHOULD KEEP IN MIND, OF COURSE, THAT A SIMPLE MISTAKE BY A WITNESS DOES NOT NECESSARILY MEAN THAT THE WITNESS WAS NOT TELLING THE TRUTH AS HE OR SHE REMEMBERS IT BECAUSE PEOPLE MAY FORGET SOME THINGS OR REMEMBER OTHER THINGS INACCURATELY. SO, IF A WITNESS HAS MADE A MISSTATEMENT, YOU NEED TO CONSIDER WHETHER THAT MISSTATEMENT WAS AN INTENTIONAL FALSEHOOD OR SIMPLY AN INNOCENT LAPSE OF MEMORY; AND THE SIGNIFICANCE OF THAT MAY DEPEND ON WHETHER IT HAS TO DO WITH AN IMPORTANT FACT OR WITH ONLY AN UNIMPORTANT DETAIL.

THE TESTIMONY OF A SINGLE WITNESS MAY BE SUFFICIENT TO PROVE ANY FACT, EVEN IF A GREATER NUMBER OF WITNESSES MAY HAVE TESTIFIED TO THE CONTRARY, IF, AFTER CONSIDERING ALL THE OTHER EVIDENCE, YOU BELIEVE THAT SINGLE WITNESS.

WHEN KNOWLEDGE OF TECHNICAL SUBJECT MATTER MAY BE HELPFUL TO THE JURY, A PERSON WHO HAS SPECIAL TRAINING OR EXPERIENCE IN THAT TECHNICAL FIELD MAY BE CALLED AS AN EXPERT WITNESS AND IS PERMITTED TO STATE HIS OR HER OPINION ON THOSE TECHNICAL MATTERS. SUCH WITNESSES HAVE TESTIFIED IN THIS CASE. YOU ARE NOT, HOWEVER, REQUIRED TO ACCEPT THAT

OPINION. AS WITH ANY OTHER WITNESS, IT IS UP TO YOU TO DECIDE
WHETHER TO RELY UPON IT.

IF YOU SHOULD DECIDE THAT THE OPINION OF AN EXPERT
WITNESS IS NOT BASED UPON SUFFICIENT EDUCATION AND
EXPERIENCE, OR IF YOU SHOULD CONCLUDE THAT THE FACTS THE
EXPERT RELIED UPON ARE INCORRECT, THAT THE REASONS GIVEN
IN SUPPORT OF THE OPINION ARE NOT SOUND, OR THAT THE OPINION
IS OUTWEIGHED BY OTHER EVIDENCE, THEN YOU MAY DISREGARD
THE OPINION ENTIRELY.

IN DECIDING WHETHER TO ACCEPT OR RELY UPON THE
OPINION OF AN EXPERT WITNESS, YOU MAY CONSIDER ANY BIAS OF
THE WITNESS, INCLUDING ANY BIAS YOU MAY INFER FROM
EVIDENCE THAT THE EXPERT WITNESS HAS ECONOMIC,
PHILOSOPHICAL, OR ANY OTHER INTEREST IN THE OUTCOME OF THE
CASE.

CERTAIN TESTIMONY HAS BEEN PRESENTED TO YOU THROUGH
VIDEO DEPOSITIONS. A DEPOSITION IS THE SWORN, RECORDED
ANSWERS TO QUESTIONS ASKED TO A WITNESS IN ADVANCE OF THE
TRIAL. UNDER SOME CIRCUMSTANCES, IF A WITNESS CANNOT BE
PRESENT TO TESTIFY FROM THE WITNESS STAND, THAT WITNESS'

TESTIMONY MAY BE PRESENTED, UNDER OATH, IN THE FORM OF A DEPOSITION. SOME TIME BEFORE THIS TRIAL, ATTORNEYS REPRESENTING THE PARTIES IN THIS CASE QUESTIONED THE WITNESS UNDER OATH. A COURT REPORTER WAS PRESENT AND RECORDED THE TESTIMONY. THE QUESTIONS AND ANSWERS WERE PRESENTED BY VIDEO TO YOU. THIS DEPOSITION TESTIMONY IS ENTITLED TO THE SAME CONSIDERATION, IS TO BE JUDGED BY YOU AS TO CREDIBILITY, AND IS TO BE WEIGHED AND OTHERWISE CONSIDERED BY YOU, INSOFAR AS IT IS POSSIBLE, IN THE SAME WAY AS IF THE WITNESS HAD BEEN PRESENT AND HAD TESTIFIED FROM THE WITNESS STAND IN COURT.

LIKEWISE, TESTIMONY PRESENTED TO YOU VIA SATELLITE FROM OTHER LOCATIONS ARE TO BE TREATED THE SAME AS IF THOSE INDIVIDUALS WERE PRESENT IN THIS COURT.

DURING THE COURSE OF TRIAL, YOU WILL HAVE HEARD OBJECTIONS TO EVIDENCE. SOMETIMES THESE HAVE BEEN ARGUED OUT OF THE HEARING OF THE JURY.

IT IS THE DUTY OF THE ATTORNEY ON EACH SIDE OF A CASE TO OBJECT WHEN THE OTHER SIDE OFFERS TESTIMONY OR OTHER EVIDENCE WHICH THE ATTORNEY BELIEVES IS NOT PROPERLY

ADMISSIBLE. YOU SHOULD NOT DRAW ANY INFERENCE AGAINST OR SHOW ANY PREJUDICE AGAINST A LAWYER OR HIS OR HER CLIENT BECAUSE OF THE MAKING OF AN OBJECTION.

UPON ALLOWING TESTIMONY OR OTHER EVIDENCE TO BE INTRODUCED OVER THE OBJECTIONS OF AN ATTORNEY, THE COURT DOES NOT, UNLESS EXPRESSLY STATED, INDICATE ANY OPINION AS TO THE WEIGHT OR EFFECT OF SUCH EVIDENCE. AS STATED BEFORE, YOU, THE JURY, ARE THE SOLE JUDGES OF THE CREDIBILITY OF ALL WITNESSES AND THE WEIGHT AND EFFECT OF ALL EVIDENCE.

WHEN THE COURT HAS SUSTAINED AN OBJECTION TO A QUESTION ADDRESSED TO A WITNESS, THE JURY MUST DISREGARD THE QUESTION ENTIRELY AND MAY DRAW NO INFERENCE FROM THE WORDING OF IT OR SPECULATE AS TO WHAT THE WITNESS WOULD HAVE SAID IF PERMITTED TO ANSWER THE QUESTION.

DURING THE COURSE OF TRIAL, I HAVE OCCASIONALLY ASKED A QUESTION OF A WITNESS IN ORDER TO BRING OUT FACTS NOT THEN FULLY COVERED IN THE TESTIMONY. DO NOT ASSUME THAT I HOLD ANY OPINION ON THE FACTS TO WHICH MY QUESTION OR QUESTIONS MAY HAVE RELATED. REMEMBER AT ALL TIMES, YOU, AS JURORS, ARE THE SOLE JUDGES OF THE FACTS.

STATEMENTS AND ARGUMENTS OF THE LAWYERS ARE NOT EVIDENCE IN THE CASE, UNLESS MADE AS AN ADMISSION OR STIPULATION OF FACT. A "STIPULATION" IS AN AGREEMENT BETWEEN BOTH SIDES THAT CERTAIN FACTS ARE TRUE OR THAT A PERSON WOULD HAVE GIVEN CERTAIN TESTIMONY. WHEN THE LAWYERS ON BOTH SIDES STIPULATE OR AGREE TO THE EXISTENCE OF A FACT, YOU MUST, UNLESS OTHERWISE INSTRUCTED, ACCEPT THE STIPULATION AS EVIDENCE, AND REGARD THAT FACT AS PROVED.

FINALLY, CERTAIN MATERIALS HAVE BEEN SHOWN TO YOU SOLELY AS AN AID TO HELP EXPLAIN THE FACTS DISCLOSED BY EVIDENCE (TESTIMONY, RECORDS, AND OTHER DOCUMENTS) IN THE CASE. THIS IS WHAT WE REFER TO AS "DEMONSTRATIVE EVIDENCE" BECAUSE IT IS OFFERED MERELY TO DEMONSTRATE OR ILLUSTRATE A POINT RATHER THAN AS ACTUAL PROOF OF THAT POINT. DEMONSTRATIVE EVIDENCE IS NOT ADMITTED EVIDENCE OR PROOF OF ANY FACTS. YOU SHOULD DETERMINE THE FACTS FROM THE EVIDENCE THAT IS ADMITTED.

REMEMBER, THE DEMONSTRATIVE EVIDENCE IS ONLY AS GOOD AS THE UNDERLYING TESTIMONY, DATA, ASSUMPTIONS, AND

OPINIONS THAT SERVE AS THE BASIS FOR IT, AND THE MAXIM,

"GARBAGE IN, GARBAGE OUT," APPLIES. LIKE ALL OTHER EVIDENCE

IN THE CASE, YOU MAY ACCEPT IT OR REJECT IT IN WHOLE OR IN

PART.

ANY NOTES THAT YOU HAVE TAKEN DURING THIS TRIAL ARE

ONLY AIDS TO YOUR MEMORY. IF YOUR MEMORY DIFFERS FROM

YOUR NOTES, YOU SHOULD RELY ON YOUR MEMORY AND NOT ON

THE NOTES. THE NOTES ARE NOT EVIDENCE. IF YOU HAVE NOT

TAKEN NOTES, YOU SHOULD RELY ON YOUR INDEPENDENT

RECOLLECTION OF THE EVIDENCE AND SHOULD NOT BE UNDULY

INFLUENCED BY THE NOTES OF OTHER JURORS. NOTES ARE NOT

ENTITLED TO ANY GREATER WEIGHT THAN THE RECOLLECTION OR

IMPRESSION OF EACH JUROR ABOUT THE TESTIMONY.

## II.   SPECIFIC INSTRUCTIONS

LET ME NOW DISCUSS THE LAW SPECIFICALLY APPLICABLE TO

THIS CASE.

AS YOU KNOW, THIS ACTION ARISES OUT OF MS. DORA

MINGO'S USE OF XARELTO. THE JANSSEN AND BAYER DEFENDANTS

MANUFACTURE XARELTO. MS. MINGO CONTENDS THAT SHE

SUFFERED A GASTROINTESTINAL BLEED, OR G.I. BLEED, AS A

RESULT OF HER USE OF XARELTO. SHE CLAIMS TWO SEPARATE

12

THEORIES OF LIABILITY. FIRST, THAT THE DEFENDANTS FAILED TO PROPERLY INSTRUCT HER PRESCRIBING DOCTOR, DR. JORDON, ABOUT THE SAFE USE OF XARELTO, SPECIFICALLY THE USE OF A PT TEST TO DETERMINE HER BLEED RISK. MS. MINGO CLAIMS THAT, HAD DR. JORDON BEEN PROPERLY INSTRUCTED, HE WOULD HAVE FOLLOWED THAT INSTRUCTION AND MS. MINGO'S G.I. BLEED WOULD HAVE BEEN PREVENTED. SECOND, THAT XARELTO HAD A DEFECTIVE DESIGN BECAUSE IT LACKED AN ANTI-FACTOR XA ASSAY, AND THAT THIS CAUSED HER G.I. BLEED. MS. MINGO SEEKS MONETARY DAMAGES PROXIMATELY CAUSED BY HER G.I. BLEED.

THE DEFENDANTS DENY ALL OF THESE ALLEGATIONS. THEY CONTEND THAT XARELTO'S WARNINGS OR INSTRUCTIONS WERE ADEQUATE AND THAT ANY ALLEGED INADEQUACY IN THE WARNINGS OR INSTRUCTIONS DID NOT PROXIMATELY CAUSE MS. MINGO'S INJURY. THEY CONTEND XARELTO WAS PROPERLY DESIGNED TO BE USED WITHOUT AN ANTI-FACTOR XA ASSAY, AND THAT THE USE OF THE PRODUCT WITHOUT AN ANTI-FACTOR XA ASSAY DID NOT PROXIMATELY CAUSE MS. MINGO'S INJURY. DEFENDANTS CONTEND THAT MS. MINGO'S G.I. BLEED DID NOT RESULT FROM HER USE OF XARELTO. FURTHER, THE DEFENDANTS

CONTEND THAT XARELTO'S LABEL CONTAINS ACCURATE, SCIENCE-BASED INFORMATION ENABLING DOCTORS TO MAKE INFORMED DECISIONS ABOUT THE RISKS AND BENEFITS OF PRESCRIBING THIS MEDICATION TO THEIR PATIENTS.

THE MERE FACT THAT THE PLAINTIFF MAY HAVE BEEN INJURED, STANDING ALONE, DOES NOT PERMIT YOU, THE JURY, TO DRAW ANY INFERENCE THAT SUCH INJURIES WERE CAUSED BY THE DEFENDANTS.  MOREOVER, ALTHOUGH MS. MINGO'S TWO THEORIES OF RECOVERY HAVE BEEN TRIED TOGETHER, THEY ARE SEPARATE FROM ONE ANOTHER, AND EACH PARTY IS ENTITLED TO HAVE YOU SEPARATELY CONSIDER THE TWO CLAIMS. THEREFORE, IN YOUR DELIBERATIONS, YOU SHOULD CONSIDER THE EVIDENCE AS IT RELATES TO EACH CLAIM SEPARATELY, JUST AS YOU WOULD BE DOING IF EACH CLAIM HAD BEEN TRIED TO YOU SEPARATELY.

THE BURDEN OF PROOF IS ON THE PLAINTIFF IN A CIVIL ACTION, SUCH AS THIS ONE, TO PROVE EVERY ESSENTIAL ELEMENT OF HER CLAIM BY A "PREPONDERANCE OF THE EVIDENCE." A PREPONDERANCE OF THE EVIDENCE MEANS SUCH EVIDENCE AS, WHEN CONSIDERED AND COMPARED WITH THAT OPPOSED TO IT, HAS MORE CONVINCING FORCE AND PRODUCES IN YOUR MINDS A

BELIEF THAT WHAT IS SOUGHT TO BE PROVED IS MORE LIKELY TRUE
THAN NOT TRUE. IN OTHER WORDS, TO ESTABLISH A CLAIM BY A
"PREPONDERANCE OF THE EVIDENCE" MEANS TO PROVE THAT THE
CLAIM IS MORE LIKELY SO THAN NOT SO.

IN DETERMINING WHETHER ANY FACT HAS BEEN PROVED BY A
"PREPONDERANCE OF THE EVIDENCE" IN THIS CASE, YOU MAY,
UNLESS OTHERWISE INSTRUCTED, CONSIDER THE TESTIMONY OF
ALL WITNESSES, REGARDLESS OF WHO MAY HAVE CALLED THEM,
AND ALL EXHIBITS RECEIVED IN EVIDENCE, REGARDLESS OF WHO
MAY HAVE PRODUCED THEM. IF THE PLAINTIFF FAILS TO ESTABLISH
ANY ESSENTIAL ELEMENT OF HER CLAIM BY A PREPONDERANCE OF
THE EVIDENCE, YOU, THE JURY, SHOULD FIND FOR THE
DEFENDANTS. THE PLAINTIFF NEED NOT PRODUCE EVERY POSSIBLE
WITNESS, AND THEY NEED NOT PROVE HER CLAIM BEYOND A
REASONABLE DOUBT, AS IS NECESSARY IN A CRIMINAL
PROSECUTION. BUT SPECULATION OR MERE POSSIBILITY AND EVEN
UNSUPPORTED PROBABILITY IS NOT SUFFICIENT TO SUPPORT A
JUDGMENT IN HER FAVOR.

LET ME NOW DISCUSS THE LAW APPLICABLE TO THE
PLAINTIFF'S THEORY OF RECOVERY.

## A.   MISSISSIPPI PRODUCTS LIABILITY ACT

THE LAW APPLICABLE TO THIS CASE IS THE LAW OF

MISSISSIPPI. IN MISSISSIPPI, A PRODUCTS LIABILITY ACTION SUCH AS

THIS ONE IS GOVERNED BY THE MISSISSIPPI PRODUCTS LIABILITY

ACT OR "MPLA."

THE MPLA PROVIDES THAT THE MANUFACTURER OF A

PRODUCT SHALL BE LIABLE TO A CLAIMANT FOR DAMAGES

PROXIMATELY CAUSED BY ONE OR MORE WAYS IN WHICH THE

PRODUCT WAS DEFECTIVE, OR UNREASONABLY DANGEROUS. ONE

OF THE WAYS IN WHICH A DRUG CAN BE DEFECTIVE OR

UNREASONABLY DANGEROUS IS IN CASES WHERE THE PRODUCT'S

MANUFACTURER FAILS TO INCLUDE ADEQUATE INSTRUCTIONS FOR

USING THE PRODUCT WHEN THE INFORMATION GIVEN THROUGH

THESE INSTRUCTIONS IS NOT OTHERWISE KNOWN TO AND

APPRECIATED BY THE USER OF THE PRODUCT. IN THE CASE OF A

PRESCRIPTION DRUG PRODUCT, THAT USER WOULD BE THE DOCTOR

PRESCRIBING THE DRUG. ANOTHER WAY A PRODUCT CAN BE

DEFECTIVE OR UNREASONABLY DANGEROUS IS BY BEING DESIGNED

IN A DEFECTIVE MANNER.

IN ORDER TO RECOVER, THE PLAINTIFF IN THIS CASE MUST

SHOW THAT HER DAMAGES WERE PROXIMATELY CAUSED EITHER

BY (1) DEFENDANTS' FAILURE TO PROVIDE ADEQUATE INSTRUCTIONS ABOUT A CHARACTERISTIC OF THE PRODUCT THAT RENDERS IT UNREASONABLY DANGEROUS OR (2) THAT A DESIGN DEFECT RENDERS IT UNREASONABLY DANGEROUS.

IT HAS BEEN STIPULATED AND AGREED UPON IN THIS CASE, AND THEREFORE YOU MAY CONSIDER IT TO BE ESTABLISHED, THAT BOTH THE JANSSEN AND BAYER DEFENDANTS IN THIS CASE ARE MANUFACTURERS OF XARELTO WITHIN THE MEANING OF THE MPLA. WHERE THERE IS A RELATIONSHIP BETWEEN MANUFACTURERS, AND A PLAINTIFF IS INJURED BY A PRODUCT THAT MAY BE DEEMED "MANUFACTURED" BY MORE THAN ONE MANUFACTURER, THESE MANUFACTURERS ARE COLLECTIVELY RESPONSIBLE TO THE PLAINTIFF. XARELTO IS THE BRAND NAME OF RIVAROXABAN. XARELTO IS A PRESCRIPTION DRUG. THAT IS TO SAY, A MEDICAL PROVIDER OR DOCTOR MUST PRESCRIBE THE DRUG.

### B. FAILURE TO INSTRUCT

I WILL NOW DISCUSS WITH YOU THE LAW GOVERNING THE PLAINTIFF'S CLAIM FOR FAILURE TO INSTRUCT.

IN ORDER TO DECIDE THE PLAINTIFF'S FAILURE-TO-INSTRUCT CLAIM, YOU MUST DETERMINE WHETHER THE PLAINTIFF HAS PROVEN BY A PREPONDERANCE OF THE EVIDENCE THAT THE

17

DEFENDANTS FAILED TO ADEQUATELY INSTRUCT MS. MINGO'S TREATING PHYSICIAN, DR. JORDON, ABOUT THE PROPER USE OF XARELTO AND, IF SO, WHETHER THE DEFENDANTS' FAILURE TO INSTRUCT WAS A PROXIMATE CAUSE OF THE PLAINTIFF'S G.I. BLEED.

PRESCRIPTION DRUGS OFTEN CAUSE UNWANTED SIDE EFFECTS DESPITE THE FACT THAT THEY HAVE BEEN CAREFULLY DESIGNED AND PROPERLY MANUFACTURED. HOWEVER, THEY ARE NOT DEFECTIVE UNDER THE LAW, NOR UNREASONABLY DANGEROUS, IF THEY INCLUDE ADEQUATE INSTRUCTIONS FOR THE SAFE USE OF THE DRUG.

THE PLAINTIFF CLAIMS THAT XARELTO WAS UNREASONABLY DANGEROUS BECAUSE OF INADEQUATE INSTRUCTIONS ABOUT ITS POTENTIAL RISKS WHEN TAKEN ON THE RECOMMENDED DOSING SCHEDULE WITHOUT AN ASSESSMENT OF THE PATIENT'S "PT" TIME.

IN ORDER TO BE SUCCESSFUL ON PLAINTIFF'S FAILURE TO INSTRUCT CLAIM, PLAINTIFF MUST PROVE BY A PREPONDERANCE OF THE EVIDENCE THAT AT THE TIME XARELTO WAS PRESCRIBED TO MS. MINGO:

(1) THE DEFENDANTS KNEW, OR REASONABLY SHOULD HAVE KNOWN THAT, XARELTO HAD A DANGEROUS CHARACTERISTIC;

(2) THE DEFENDANTS FAILED TO ADEQUATELY INSTRUCT MS. MINGO'S PRESCRIBING PHYSICIAN, DR. JORDON, ABOUT USING A PT TEST TO DETECT, EVALUATE, AND AVOID THIS DANGEROUS CHARACTERISTIC;

(3) THE ABSENCE OF ADEQUATE INSTRUCTIONS MADE XARELTO UNREASONABLY DANGEROUS; AND

(4) THE INJURY MS. MINGO SUFFERED—HER G.I. BLEED—WAS PROXIMATELY CAUSED BY THE ALLEGEDLY INADEQUATE INSTRUCTIONS.

UNDER THE MPLA, A MANUFACTURER OF A DRUG PRODUCT HAS A DUTY TO PROVIDE PHYSICIANS WITH ADEQUATE INSTRUCTIONS CONCERNING THE SAFE USE OF THE DRUG. AN ADEQUATE INSTRUCTION IS ONE THAT A REASONABLY PRUDENT DRUG MANUFACTURER IN THE SAME OR SIMILAR CIRCUMSTANCES WOULD HAVE PROVIDED WITH RESPECT TO THE DANGERS ASSOCIATED WITH TAKING THE DRUG. IT IS ONE WHICH COMMUNICATES SUFFICIENT INFORMATION ABOUT THE DANGERS AND SAFE USE OF THE DRUG, TAKING INTO ACCOUNT BOTH THE CHARACTERISTICS OF THE DRUG AND THE ORDINARY KNOWLEDGE

COMMON TO A PHYSICIAN WHO WOULD BE PRESCRIBING IT TO A
PATIENT.

UNDER THE APPLICABLE LAW, A PRESCRIPTION DRUG
MANUFACTURER ONLY HAS A DUTY TO INSTRUCT A "LEARNED
INTERMEDIARY," SUCH AS THE PRESCRIBING PHYSICIAN, ABOUT THE
SAFE USE OF THE DRUG. IT DOES NOT HAVE A DUTY TO INSTRUCT
THE CONSUMER DIRECTLY. THIS IS BECAUSE A PHYSICIAN IS THE
ONE WHO MUST PRESCRIBE THE DRUG, AND IS SOMEONE WHO,
THROUGH SPECIALIZED EDUCATION AND EXPERIENCE, IS IN THE
BEST POSITION TO MAKE DECISIONS OR RECOMMENDATIONS IN
REGARD TO A SPECIFIC DRUG FOR A SPECIFIC PATIENT. ALTHOUGH A
PRESCRIPTION DRUG MANUFACTURER'S DUTY TO INSTRUCT ABOUT
THE POTENTIAL RISKS AND SAFE USE OF ITS PRODUCT IS DIRECTED
ONLY TO THE REASONABLY PRUDENT PRESCRIBER AND NOT TO THE
CONSUMER, THE MANUFACTURER IS DIRECTLY LIABLE TO THE
PATIENT FOR BREACH OF SUCH DUTY.

WHEN A PRESCRIPTION DRUG MANUFACTURER PROVIDES AN
INSTRUCTION ABOUT THE SAFE USE OF ITS DRUG, IT MAY
REASONABLY ASSUME THAT IT WILL BE READ AND HEEDED BY THE
PRESCRIBER. IT IS A PHYSICIAN'S DUTY TO REMAIN ABREAST OF

DRUG'S CHARACTERISTICS AND TO TAKE INTO ACCOUNT THE
INFORMATION CONTAINED IN A PRESCRIPTION DRUG'S LABEL. THE
DRUG MANUFACTURER MAY REASONABLY ASSUME THAT THE
PRESCRIBER WILL APPLY THE SAME KNOWLEDGE, PROFESSIONAL
EXPERTISE, AND GOOD JUDGMENT THAT A REASONABLE PHYSICIAN
WOULD APPLY IN USING THE PRODUCT. PROVIDING ADEQUATE
INSTRUCTIONS TO THE PRESCRIBING DOCTOR RELIEVES THE
MANUFACTURER OF ITS DUTY TO THE PATIENT.

AN INSTRUCTION IS INADEQUATE IF THE MANUFACTURER
FAILS TO GIVE A REASONABLY PRUDENT PRESCRIBER
INSTRUCTIONS ABOUT HOW TO DETECT, EVALUATE, AND AVOID A
DANGEROUS CHARACTERISTIC THAT WAS KNOWN OR KNOWABLE
TO THE MANUFACTURER IN LIGHT OF THE GENERALLY-RECOGNIZED
AND PREVAILING BEST SCIENTIFIC AND MEDICAL KNOWLEDGE
AVAILABLE AT THE TIME OF MANUFACTURE AND DISTRIBUTION.
THE DRUG MANUFACTURER HAS A DUTY TO TAKE REASONABLE
PRECAUTIONS TO PROVIDE AN ADEQUATE INSTRUCTION IN ITS
LABEL THAT WOULD INFORM A PRESCRIBER HOW TO DETECT AND
AVOID DANGEROUS CHARACTERISTICS THAT MIGHT RESULT FROM
USE OF THE PRODUCT.

THE MANUFACTURER MAY COMMUNICATE INSTRUCTIONS
THROUGH A LABEL OR PACKAGE INSERT, OR OTHER
COMMUNICATIONS OR LITERATURE. IN DETERMINING THE SCOPE OF
A MANUFACTURER'S DUTY TO PROVIDE INSTRUCTIONS ASSOCIATED
WITH THE USE OF ITS PRODUCT, THE MANUFACTURER IS HELD TO
THE KNOWLEDGE AND SKILL OF AN EXPERT IN ITS FIELD. THE
MANUFACTURER MUST KEEP UP WITH SCIENTIFIC KNOWLEDGE,
DISCOVERIES, AND ADVANCES AND IS PRESUMED TO KNOW WHAT
COULD BE LEARNED BY DOING SO. THIS DUTY IS CONTINUING. IF
THE MANUFACTURER LEARNS OF A CHARACTERISTIC OR DANGER
THAT MAY CAUSE INJURY AFTER ITS PRODUCT IS ON THE MARKET,
THE MANUFACTURER HAS A CONTINUING DUTY TO USE
REASONABLE CARE TO PROVIDE ADEQUATE INSTRUCTIONS TO
PRESCRIBERS OF ITS PRODUCT CONCERNING SUCH LATER-
DISCOVERED MATTERS. THAT IS TO SAY, UNDER THE LAW
(INCLUDING FEDERAL REGULATIONS) APPLICABLE TO THIS CASE,
DRUG MANUFACTURERS HAVE THE RESPONSIBILITY FOR DRAFTING
THE LABEL FOR THEIR PRODUCT, AND FOR ASSURING THAT THE
LABELING CONTINUES TO REFLECT THE CURRENT KNOWLEDGE
CONCERNING THE RISKS POSED BY THE DRUG.  UNDER BOTH

22

MISSISSIPPI LAW AND FEDERAL DRUG REGULATIONS APPLICABLE TO THIS CASE, DRUG MANUFACTURERS AT ALL TIMES BEAR RESPONSIBILITY FOR THE CONTENT OF THE DRUG'S LABEL.

WHERE THE DEFENDANTS ARE SHOWN TO HAVE FAILED TO ADEQUATELY INSTRUCT A PRESCRIBING DOCTOR ABOUT A DRUG, THE LEARNED INTERMEDIARY DOCTRINE DOES NOT RELIEVE THE MANUFACTURER OF LEGAL RESPONSIBILITY. IN OTHER WORDS, IN THAT CIRCUMSTANCE, THE PRESCRIBING DOCTOR CANNOT BE SAID TO BE A "LEARNED" INTERMEDIARY BECAUSE HE WAS NOT ADEQUATELY INFORMED BY THE DEFENDANTS.

IN ORDER TO PROVE HER FAILURE-TO-INSTRUCT CLAIM, THE PLAINTIFF MUST NOT ONLY PROVE THAT DEFENDANTS' INSTRUCTIONS REGARDING XARELTO WERE INADEQUATE, BUT ALSO THAT SUCH INADEQUACY AFFECTED THE DECISION OR DECISIONS OF THE PRESCRIBING PHYSICIAN WITH REGARDS TO XARELTO. IN OTHER WORDS, YOU MUST DETERMINE IF DR. JORDON WOULD HAVE ALTERED HIS PRESCRIBING BEHAVIOR AND MS. MINGO WOULD NOT HAVE SUFFERED HER G.I. BLEED HAD THE DOCTOR BEEN PROVIDED WITH ADEQUATE INSTRUCTIONS. THUS, MS. MINGO MUST SHOW BY A PREPONDERANCE OF THE EVIDENCE

THAT DR. JORDON WOULD HAVE RECOMMENDED A DIFFERENT COURSE OF TREATMENT IN HER CASE, AND HER G.I. BLEED THAT WAS DIAGNOSED ON FEBRUARY 13, 2015 WOULD HAVE BEEN AVOIDED, HAD DR. JORDON RECEIVED ADEQUATE INSTRUCTIONS.

IF THE GREATER WEIGHT OF THE EVIDENCE DOES NOT SUPPORT THE PLAINTIFF'S CLAIM, YOUR VERDICT SHOULD BE FOR THE DEFENDANTS. IF THE GREATER WEIGHT OF THE EVIDENCE, HOWEVER, DOES SUPPORT THE PLAINTIFF'S CLAIM, THEN YOUR VERDICT SHOULD BE FOR THE PLAINTIFF.

### C.    LABELING AND FEDERAL REGULATIONS

AS I PREVIOUSLY MENTIONED, XARELTO IS A BRAND-NAME DRUG. THE FDA APPROVED BOTH XARELTO AND ITS LABEL. YOU MAY CONSIDER THIS FACT IN WEIGHING THE EVIDENCE IN THIS CASE IN DETERMINING THE LIABILITY OF THE DEFENDANTS. HOWEVER, FDA APPROVAL, ALTHOUGH RELEVANT, DOES NOT IN AND OF ITSELF ABSOLVE THE DEFENDANTS OF ALL LIABILITY, NOR DOES IT ESTABLISH THAT INSTRUCTIONS PROVIDED WITH THE DRUG WERE ADEQUATE UNDER THE STANDARDS OF MISSISSIPPI LAW. IN FACT, ANY ACTION OR INACTION ON THE PART OF THE FDA, THOUGH RELEVANT TO YOUR CONSIDERATION OF LIABILITY, DOES NOT FORECLOSE A CLAIM UNDER MISSISSIPPI LAW. MORE SPECIFICALLY,

IF YOU FIND THAT THE DEFENDANTS FAILED TO APPRISE

PRESCRIBING PHYSICIANS OF APPROPRIATE TESTING TO ADDRESS

RISKS THAT THEY KNEW OR SHOULD HAVE KNOWN PRIOR TO FDA

APPROVAL OR BECAME KNOWN OR SHOULD HAVE BECOME KNOWN

AFTER THE FDA APPROVED XARELTO'S LABEL, THEN FDA APPROVAL

OF THE DRUG IS NOT CONCLUSIVE.

### D.   DESIGN DEFECT CLAIM

I WILL NOW DISCUSS THE LAW SPECIFICALLY GOVERNING THE

PLAINTIFF'S CLAIM THAT XARELTO WAS DEFECTIVELY DESIGNED.

AS PREVIOUSLY MENTIONED, MS. MINGO CLAIMS THAT XARELTO

WAS DEFECTIVELY DESIGNED BECAUSE IT LACKED AN ANTI-FACTOR

XA ASSAY, AND THAT THIS CAUSED HER G.I. BLEED. IN ORDER TO

SUCCEED ON SUCH A CLAIM, THE PLAINTIFF MUST PROVE BY A

PREPONDERANCE OF THE EVIDENCE THAT AT THE TIME OF FDA'S

FIRST APPROVAL OF XARELTO ON JULY 1, 2011, THAT (1) XARELTO

WAS DEFECTIVELY DESIGNED; (2) XARELTO'S DESIGN MADE THE

DRUG UNREASONABLY DANGEROUS; (3) THE DEFENDANTS KNEW,

OR REASONABLY SHOULD HAVE KNOWN, OF XARELTO'S

DANGEROUS CONDITION; (4) XARELTO FAILED TO FUNCTION AS

EXPECTED; (5) THERE WAS A FEASIBLE ALTERNATIVE DESIGN TO

XARELTO THAT WOULD HAVE PREVENTED THE PLAINTIFF'S HARM

WITHOUT IMPAIRING THE UTILITY, USEFULNESS, PRACTICALITY, OR

DESIRABILITY OF XARELTO; AND (6) THE DEFECTIVE DESIGN

PROXIMATELY CAUSED THE PLAINTIFF'S INJURY.

IN CONSIDERING MS. MINGO'S DESIGN DEFECT CLAIM, YOU

ARE TO DETERMINE WHAT DEFENDANTS KNEW OR SHOULD HAVE

KNOWN WITH REGARD TO XARELTO'S DESIGN, BY HOLDING

DEFENDANTS TO THE KNOWLEDGE AND SKILL OF AN EXPERT ON

XARELTO.  MOREOVER, A PRESCRIPTION DRUG MANUFACTURER IS

REQUIRED BY LAW TO KEEP ABREAST OF RESEARCH, PATIENT

REACTION REPORTS, AND OTHER SCIENTIFIC LITERATURE

PERTAINING TO A DRUG IT HAS PLACED ON THE MARKET.

### E.   CAUSATION

IN ORDER FOR PLAINTIFF TO PREVAIL ON EITHER CLAIM, SHE

MUST ESTABLISH THAT THE INADEQUATE INSTRUCTION OR THE

DESIGN DEFECT, IF ANY, WAS THE "PROXIMATE CAUSE" OF MS.

MINGO'S G.I. BLEED.

PROXIMATE CAUSE MEANS THE EFFICIENT CAUSE OR DIRECT

CAUSE. THE LAW DEFINES PROXIMATE CAUSE AS SOMETHING THAT

PRODUCES A NATURAL CHAIN OF EVENTS, WHICH, IN THE END,

26

BRINGS ABOUT THE INJURY. IN OTHER WORDS, PROXIMATE CAUSE IS
THE CAUSE WITHOUT WHICH THE INJURY WOULD NOT HAVE
OCCURRED.

IN ORDER TO BE A PROXIMATE CAUSE OF MS. MINGO'S G.I.
BLEED, ANY FAULT YOU FIND ON THE PART OF DEFENDANTS MUST
HAVE BEEN A CAUSE OR SUBSTANTIAL FACTOR IN PRODUCING MS.
MINGO'S INJURY. IF YOU CONCLUDE MS. MINGO WOULD HAVE
SUFFERED HER G.I. BLEED EVEN WITHOUT ANY FAULT AS ALLEGED
ON THE PART OF DEFENDANTS, THEN DEFENDANTS' FAULT CANNOT
BE CONSIDERED A PROXIMATE CAUSE OF PLAINTIFF'S HARM. BUT,
ON THE OTHER HAND, IT IS NOT NECESSARY FOR DEFENDANTS'
FAULT TO HAVE BEEN THE SOLE CAUSE OF MS. MINGO'S G.I. BLEED.
IF DEFENDANTS' FAULT PLAYED A SUBSTANTIAL, CONTRIBUTING
ROLE IN CAUSING MS. MINGO'S G.I. BLEED, DEFENDANTS CAN BE
CONSIDERED LIABLE FOR PLAINTIFF'S G.I. BLEED AND ASSOCIATED
DAMAGES EVEN IF OTHER CAUSES MAY HAVE CONTRIBUTED TO THE
G.I. BLEED.

IN THIS CASE, MS. MINGO DOES NOT ALLEGE THAT HER
GASTROINTESTINAL ULCER WAS ITSELF CAUSED BY XARELTO, BUT
RATHER THAT THE SIGNIFICANT BLEEDING OF THIS ULCER WAS

EITHER PROXIMATELY CAUSED BY, OR SUBSTANTIALLY

CONTRIBUTED TO OR MADE WORSE AS A RESULT OF, HER USE OF

XARELTO. DEFENDANTS, IF FOUND AT FAULT, ARE LIABLE FOR ALL

HARM PROXIMATELY CAUSED TO MS. MINGO AS A RESULT OF THEIR

FAULT, EVEN IF A PREEXISTING PHYSICAL CONDITION (IN THIS CASE,

MS. MINGO'S ULCER) MEANT THAT THE MEDICAL OUTCOME IN HER

CASE WAS WORSE THAN IT WOULD OTHERWISE HAVE BEEN.  UNDER

THE LAW, A WRONGDOER MUST TAKE THE VICTIM AS IT FINDS HER.

THEREFORE, IF YOU FIND BY A PREPONDERANCE OF THE EVIDENCE

THAT MS. MINGO'S PREXISTING CONDITION WAS AGGRAVATED OR

WORSENED DUE TO DEFENDANTS' FAULT, MS. MINGO STILL IS

ENTITLED TO A VERDICT, WHICH WILL REASONABLY AND FAIRLY

COMPENSATE HER FOR THE AGGRAVATION OF THAT PREEXISTING

CONDITION.

TO RECOVER FOR THE FAILURE-TO-INSTRUCT CLAIM,

PLAINTIFF MUST PROVE BY A PREPONDERANCE OF THE EVIDENCE

THAT AN INADEQUATE INSTRUCTION ITSELF—IN ADDITION TO THE

MEDICATION—WAS THE PROXIMATE CAUSE OF MS. MINGO'S

ALLEGED G.I. BLEED. WHEN I SAY "PROXIMATE CAUSE," I MEAN

THAT PLAINTIFF MUST PROVE BY A PREPONDERANCE OF THE

EVIDENCE THAT, IF AN ADEQUATE INSTRUCTION HAD
ACCOMPANIED XARELTO, THEN DR. JORDON WOULD HAVE ALTERED
HIS PRESCRIBING BEHAVIOR AND MS. MINGO WOULD NOT HAVE
SUFFERED HER G.I. BLEED.

TO RECOVER FOR DESIGN DEFECT, THE PLAINTIFF MUST PROVE
BY A PREPONDERANCE OF THE EVIDENCE THAT XARELTO'S DESIGN
WAS THE PROXIMATE CAUSE OF HER INJURY. WHEN I SAY
"PROXIMATE CAUSE," I MEAN THAT THE PLAINTIFF MUST PROVE
THAT IF XARELTO HAD BEEN DESIGNED DIFFERENTLY, MS. MINGO
WOULD NOT HAVE SUFFERED HER G.I. BLEED.

## F.   DAMAGES

NOW LET ME SPEAK WITH YOU ABOUT DAMAGES. "DAMAGES"
IS THE TERM USED TO INDICATE IN DOLLARS AND CENTS WHAT, IF
ANY, MONETARY LOSSES THE PLAINTIFF HAS SUSTAINED.

IF YOU FIND THAT PLAINTIFF HAS PROVEN HER CLAIM
AGAINST THE DEFENDANTS BY A PREPONDERANCE OF THE
EVIDENCE, YOU MUST THEN DETERMINE THE AMOUNT OF
DAMAGES, IF ANY, TO WHICH SHE IS ENTITLED. YOU SHOULD NOT
INTERPRET THE FACT THAT I AM GIVING YOU INSTRUCTIONS ABOUT
PLAINTIFF'S DAMAGES AS AN INDICATION IN ANY WAY THAT I

BELIEVE THAT PLAINTIFF SHOULD, OR SHOULD NOT, WIN THIS CASE. IT IS YOUR TASK FIRST TO DECIDE WHETHER THE PLAINTIFF SUFFERED DAMAGES AS A RESULT OF THE FAULT OF THE DEFENDANTS. I AM INSTRUCTING YOU ON DAMAGES ONLY SO THAT YOU WILL HAVE GUIDANCE IN THE EVENT YOU DECIDE THAT PLAINTIFF PROVED THAT SHE SUSTAINED DAMAGES AS A RESULT OF THE FAULT OF THE DEFENDANTS AND THAT SHE IS ENTITLED TO RECOVER MONEY FROM THE DEFENDANTS. PLAINTIFF MUST PROVE HER DAMAGES WITH REASONABLE CERTAINTY AND CANNOT BE AWARDED ON THE BASIS OF SPECULATION AND CONJECTURE.

IF YOU FIND THAT THE DEFENDANTS ARE LIABLE TO THE PLAINTIFF, THEN YOU MUST DETERMINE AN AMOUNT THAT IS FAIR COMPENSATION FOR THE PLAINTIFF'S DAMAGES. THESE DAMAGES ARE CALLED COMPENSATORY DAMAGES. THE PURPOSE OF COMPENSATORY DAMAGES IS TO MAKE THE PLAINTIFF WHOLE – THAT IS, TO COMPENSATE THE PLAINTIFF FOR THE DAMAGES SHE SUFFERED.

YOU MAY AWARD COMPENSATORY DAMAGES ONLY FOR INJURIES THAT THE PLAINTIFF PROVES WERE CAUSED BY DEFENDANTS' WRONGFUL CONDUCT.

THE DAMAGES YOU AWARD MUST BE FAIR COMPENSATION FOR THE PLAINTIFF'S DAMAGES, NO MORE AND NO LESS. COMPENSATORY DAMAGES ARE NOT ALLOWED AS PUNISHMENT AND CANNOT BE IMPOSED OR INCREASED TO PENALIZE THE DEFENDANTS. YOU SHOULD NOT AWARD COMPENSATORY DAMAGES FOR SPECULATIVE INJURIES, BUT ONLY FOR THOSE INJURIES, WHICH THE PLAINTIFF ACTUALLY SUSTAINED.

IF YOU DECIDE TO AWARD COMPENSATORY DAMAGES, YOU SHOULD BE GUIDED BY DISPASSIONATE COMMON SENSE. THAT IS TO SAY, YOU SHOULD NOT BE AFFECTED BY SYMPATHY, COMPASSION, PREJUDICE, OR BIAS. COMPUTING DAMAGES MAY BE DIFFICULT, BUT YOU MUST NOT LET THAT DIFFICULTY LEAD YOU TO ENGAGE IN ARBITRARY GUESSWORK. ON THE OTHER HAND, THE LAW DOES NOT REQUIRE THAT THE PLAINTIFF PROVES THE AMOUNT OF HER LOSSES WITH MATHEMATICAL PRECISION, BUT ONLY WITH AS MUCH DEFINITENESS AND ACCURACY AS THE CIRCUMSTANCES PERMIT.

YOU MUST USE SOUND DISCRETION IN FIXING AN AWARD OF DAMAGES, DRAWING REASONABLE INFERENCES WHERE YOU FIND THEM APPROPRIATE FROM THE FACTS AND CIRCUMSTANCES IN EVIDENCE.

YOU SHOULD CONSIDER THE FOLLOWING ELEMENTS OF DAMAGES TO THE EXTENT YOU FIND THAT PLAINTIFF HAS ESTABLISHED THEM:

(1) MS. MINGO'S PAST PHYSICAL PAIN AND SUFFERING AND RESULTING MENTAL ANGUISH AND LOSS OF ENJOYMENT OF LIFE; AND

(2) MS. MINGO'S REASONABLE AND NECESSARY MEDICAL EXPENSES ALREADY INCURRED, WHICH THE PARTIES HAVE STIPULATED TO BE **$28,758.21**.

SOME OF THESE DAMAGES, SUCH AS MENTAL OR PHYSICAL PAIN AND SUFFERING, ARE INTANGIBLE THINGS ABOUT WHICH NO EVIDENCE OF VALUE IS REQUIRED. IN AWARDING THESE DAMAGES, YOU ARE NOT DETERMINING VALUE, BUT YOU SHOULD AWARD AN AMOUNT THAT WILL FAIRLY COMPENSATE THE PLAINTIFF FOR HER INJURIES. THERE IS NO EXACT STANDARD FOR FIXING THE COMPENSATION TO BE AWARDED FOR THESE ELEMENTS OF DAMAGE. ANY AWARD THAT YOU MAKE MUST BE FAIR IN LIGHT OF THE EVIDENCE.

**PAST PHYSICAL PAIN AND SUFFERING AND MENTAL ANGUISH:** YOU MAY AWARD DAMAGES FOR ANY BODILY INJURY

SUSTAINED AS A RESULT OF XARELTO AND ANY PAIN, SUFFERING, DISABILITY, INCONVENIENCE AND/OR LOSS OF CAPACITY FOR ENJOYMENT OF LIFE, MENTAL ANGUISH, WORRY AND EMOTIONAL DISTRESS THAT THE PLAINTIFF EXPERIENCED AS A RESULT OF HER G.I. BLEED. NO EVIDENCE OF THE VALUE OF INTANGIBLE THINGS, SUCH AS MENTAL OR PHYSICAL PAIN AND SUFFERING, NEED BE INTRODUCED. YOU ARE NOT TRYING TO DETERMINE VALUE, BUT AN AMOUNT THAT WILL FAIRLY COMPENSATE THE PLAINTIFF FOR THE DAMAGES SHE SUFFERED. THERE IS NO EXACT STANDARD FOR FIXING THE COMPENSATION TO BE AWARDED FOR THESE ELEMENTS OF DAMAGE. ANY AWARD THAT YOU MAKE SHOULD BE FAIR IN THE LIGHT OF THE EVIDENCE.

AS PREVIOUSLY MENTIONED, UNDER OUR LAWS, THE DEFENDANTS TAKE THE VICTIM AS THEY FIND HER. THE AGE AND PRE-EXISTING HEALTH OF A PLAINTIFF PRIOR TO HER INJURY SHOULD NOT RESULT IN A DISCOUNT IN THE AMOUNT OF THE COMPENSATION SHE RECEIVES FOR AN INJURY.

IN THE EVENT YOU FIND THAT THE PLAINTIFF IS ENTITLED TO RECEIVE AN AWARD FOR MENTAL AND/OR PHYSICAL PAIN AND SUFFERING, I INSTRUCT YOU THAT SUCH AN AWARD IS NOT SUBJECT

TO INCOME TAX; NEITHER THE STATE NOR FEDERAL GOVERNMENT WILL TAX IT. THEREFORE, YOU SHOULD DETERMINE THE AMOUNT THAT THE PLAINTIFF IS ENTITLED TO RECEIVE WITHOUT CONSIDERING THE EFFECT OF TAXES UPON IT.

AGAIN, THE MERE FACT THAT I HAVE GIVEN YOU INSTRUCTIONS ON THE LAW OF DAMAGES DOES NOT IN ANY WAY SUGGEST THAT I BELIEVE THAT ANY DAMAGES ARE DUE IN THIS CASE. PLAINTIFF MUST PROVE HER DAMAGES WITH REASONABLE CERTAINTY AND CANNOT BE AWARDED DAMAGES ON THE BASIS OF SPECULATION. WHETHER OR NOT PLAINTIFF IS ENTITLED TO RECOVER AND WHETHER OR NOT SHE HAS PROVEN THAT ANY DAMAGES ARE DUE IS FOR YOU TO DECIDE.

**CONCLUSION**

IT IS YOUR SWORN DUTY AS JURORS TO DISCUSS THE CASE WITH ONE ANOTHER IN AN EFFORT TO REACH A UNANIMOUS AGREEMENT, IF YOU CAN DO SO. EACH OF YOU MUST DECIDE THE CASE FOR YOURSELF, BUT ONLY AFTER FULL CONSIDERATION OF THE EVIDENCE WITH THE OTHER MEMBERS OF THE JURY. WHILE YOU ARE DISCUSSING THE CASE, DO NOT HESITATE TO RE-EXAMINE YOUR OWN OPINIONS AND CHANGE YOUR MIND IF YOU BECOME CONVINCED THAT YOU ARE WRONG. DO NOT, HOWEVER, GIVE UP

YOUR HONEST BELIEFS SOLELY BECAUSE THE OTHERS THINK DIFFERENTLY OR MERELY TO FINISH THE CASE.

REMEMBER THAT IN A VERY REAL WAY YOU ARE THE JUDGES—JUDGES OF THE FACTS. YOUR ONLY INTEREST IS TO SEEK THE TRUTH FROM THE EVIDENCE IN THE CASE.

I HAVE PREPARED A SPECIAL VERDICT FORM FOR YOUR CONVENIENCE AND TO AID YOU IN REACHING A UNANIMOUS DECISION. YOU WILL TAKE THE FORM WITH YOU TO THE JURY ROOM. THE VERDICT MUST REPRESENT THE CONSIDERED JUDGMENT OF EACH JUROR.

YOU WILL NOTE THAT THE FORM CONTAINS SEVERAL INTERROGATORIES OR QUESTIONS. THE ANSWER TO EACH QUESTION MUST BE THE UNANIMOUS ANSWER OF THE JURY. IN THE SPACE PROVIDED BELOW EACH QUESTION, YOU WILL FIND DIRECTIONS WHICH INSTRUCT YOU EITHER TO ANSWER THE NEXT QUESTION, TO ANSWER SOME OTHER QUESTION, OR TO STOP AND RETURN TO THE COURTROOM WITH YOUR VERDICT. YOU MUST CAREFULLY FOLLOW THESE DIRECTIONS AS YOU COMPLETE THE FORM.

**[READ THE VERDICT FORM.]**

WHEN YOU RETIRE TO THE JURY ROOM TO DELIBERATE ON YOUR VERDICT, YOU MAY TAKE THIS CHARGE WITH YOU AS WELL AS EXHIBITS WHICH I HAVE ADMITTED INTO EVIDENCE. FIRST, SELECT YOUR FOREPERSON AND THEN CONDUCT YOUR DELIBERATIONS. IF YOU RECESS DURING YOUR DELIBERATIONS, FOLLOW ALL OF THE INSTRUCTIONS THAT THE COURT HAS GIVEN ABOUT YOUR CONDUCT DURING THE TRIAL. AFTER YOU HAVE REACHED YOUR UNANIMOUS VERDICT, YOUR FOREPERSON IS TO FILL IN ON THE FORM YOUR ANSWERS TO THE QUESTIONS. DO NOT REVEAL YOUR ANSWERS UNTIL SUCH TIME AS YOU ARE DISCHARGED, UNLESS OTHERWISE DIRECTED BY ME. YOU MUST NEVER DISCLOSE TO ANYONE, NOT EVEN TO ME, ANY NUMERICAL DIVISION ON ANY QUESTION.

IF YOU WANT TO COMMUNICATE WITH ME AT ANY TIME, PLEASE GIVE A SIGNED WRITTEN MESSAGE OR QUESTION TO THE MARSHAL, WHO WILL BRING IT TO ME. I WILL THEN RESPOND AS PROMPTLY AS POSSIBLE, EITHER IN WRITING OR BY HAVING YOU BROUGHT INTO THE COURTROOM SO THAT I CAN ADDRESS YOU ORALLY. I WILL ALWAYS FIRST DISCLOSE TO THE ATTORNEYS YOUR QUESTION AND MY RESPONSE BEFORE I ANSWER YOUR QUESTION.

AFTER YOU HAVE REACHED A VERDICT, YOU ARE NOT REQUIRED TO TALK WITH ANYONE ABOUT THE CASE UNLESS I ORDER OTHERWISE. YOU MAY NOW RETIRE TO THE JURY ROOM TO CONDUCT YOUR DELIBERATIONS.