**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE:  XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE ELDON E. FALLON |
| Joseph Orr, Jr., et al. v. Janssen et al. Case No. 2:15-cv-03708 | MAGISTRATE NORTH |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'**
**RULE 59 MOTION FOR A NEW TRIAL**

After a ten-day trial, the *Orr* jury unanimously determined that Defendants "provide[d] adequate warnings and instructions for the safe use of Xarelto."  Doc. 6822.  That verdict, and the Court's resulting judgment, fully comported with the evidence at trial and the legal principles applicable to the case.  Plaintiffs now seek a second chance, claiming that two of the Court's evidentiary rulings and the wording of one jury charge entitle them to a new trial.  *See* Pls.' Rule 59 Mot. (Doc. 7047).  As set forth below, none of these arguments has merit—Plaintiffs have not shown, as they must, that "manifest injustice will result from letting the verdict stand."  *Learmonth v. Sears, Roebuck & Co.*, 631 F.3d 724, 731 (5th Cir. 2011) (internal quotation marks omitted).

1.     Plaintiffs are not entitled to a new trial based on the exclusion of the Canadian Product Monograph—*i.e.*, the Canadian label.  Plaintiffs have not shown that the Court abused its discretion in finding that foreign labeling and regulatory actions are irrelevant and unduly prejudicial because they do not bear on the adequacy of Xarelto's labeling or design as a matter of U.S. law or FDA's own unique regulatory standards.  Indeed, it would have been reversible error for the Court to hold otherwise.  And in any event, Plaintiffs have failed to demonstrate that the Court's ruling substantially affected the outcome of the trial.  Their contention is that they were denied the opportunity to cross-examine Defendants' expert witnesses about the Defendants'

"statements outside the United States" regarding PT testing, but in fact, they were able to do just that. *See, e.g.*, *Orr* Trial Tr. at 1976:1–19 (asking Defendants' expert Dr. Sammy Khatib about what "Bayer tells doctors outside of the United States") (cited *Orr* Trial Transcript pages are attached as Exhibit A). Indeed, Plaintiffs introduced evidence of and repeatedly emphasized throughout trial Defendants' "statements outside the United States" regarding PT testing. The exclusion of such cumulative evidence is harmless, and Plaintiffs suffered no prejudice. *See Moench v. Marquette Transp. Co. Gulf-Inland, L.L.C.*, 838 F.3d 586, 594 (5th Cir. 2016).

2.      Similarly, Plaintiffs are not entitled to a new trial based on the exclusion, during their examination of Janssen employee Sanjay Jalota, of a document containing Bayer's draft responses to specific requests for information from Health Canada. As with foreign labels, Defendants' efforts to comply with requests from foreign regulators were due to be excluded as irrelevant and unfairly prejudicial. Separately, the document was inadmissible during Mr. Jalota's testimony because Plaintiffs did not meet their burden of showing that the business records exception to the hearsay rule applied. Plaintiffs have failed to show how the exclusion of the document during Mr. Jalota's testimony affected their substantial rights—in fact, the Court later admitted the document into evidence in redacted form, and Plaintiffs were allowed to ask witnesses (including Mr. Jalota) about the contents of the document. The only thing Plaintiffs were not allowed to ask was *to whom* the statements were made, which was entirely irrelevant.

3.      Plaintiffs are not entitled to a new trial based on the Court's refusal to give their requested jury instructions. Plaintiffs have not shown that their proposed instructions were correct statements of the law, nor have they asserted that the Court's instructions were inaccurate. And importantly, Plaintiffs asked the Court to single out in its jury charge a specific FDA regulation, without the context of other FDA regulations. Plaintiffs emphasized that regulation throughout

the trial; thus, they cannot show that the Court's failure to instruct the jury regarding that specific regulation—to the exclusion of other regulations—impaired their ability to present their claim (or their specific argument about that regulation) to the jury.

## LEGAL STANDARD

Although "a court has discretion to grant a new trial . . . where it is necessary to prevent an injustice," *In re Isbell Records, Inc.*, 774 F.3d 859, 872 (5th Cir. 2014), "[c]ourts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done." *Streber v. Hunter*, 221 F.3d 701, 736 (5th Cir. 2000) (citation and internal quotation marks omitted). Plaintiffs have "the burden of showing harmful error," *Streber*, 221 F.3d at 736, and "must clearly establish either a manifest error of law or fact," *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 344 (5th Cir. 2007).

## ARGUMENT

## I.     Plaintiffs are not entitled to a new trial based on the exclusion of the Canadian label.

Before this trial, Plaintiffs filed a motion *in limine* "to admit evidence of Defendants' statements outside the United States that directly contradict their position that PT Neoplastin is not useful and does not work to determine the anticoagulant activity of Xarelto." Doc. 6480. The Court held that while Defendants' statements "to anyone, even foreign regulatory bodies, should be admissible," "what the Defendants did or what they put on Xarelto's label in other countries in order to comply with foreign regulatory bodies . . . is irrelevant." Order and Reasons, May 26, 2017 at 13 (Doc. 6645). The Court has repeatedly held in this litigation that foreign labels are irrelevant and likely to cause juror confusion because they are based on different regulatory regimes and standards.[1]

---

[1] *See, e.g.*, Rulings on Berkowitz Dep. Designations in *Boudreaux* (Doc. 6723), at 36 (excluding as irrelevant and confusing Plaintiffs' designation of deposition testimony from Bayer's Dr. Scott Berkowitz regarding certain portions

At trial, the Court excluded the Canadian label and gave the jury a limiting instruction.  *See Orr* Trial Tr. at 1219:6–1222:12; *id.* at 1280:21–22 (instructing the jury that "what's on the Canadian label, that has no relevance"); *id.* at 1667:7–14 (instructing the jury that "you can disregard anything regarding a foreign label insofar as a foreign label approving it, disapproving it, changing it, doing different things, because there's different law involved with different procedures."); *id.* at 1978:7–20.  But the Court admitted PX 190, which is a Bayer draft response to an information request from Health Canada in redacted form.  *See id.* at 2305:10–2307:23; *see also id.* at 1685:22–1690:16.  Plaintiffs' regulatory expert, Dr. Suzanne Parisian, testified about PX 190 (*id.*) and presented to the jury (over Defendants' objections) a demonstrative containing proposed labeling language, some of which was taken from Xarelto's Canadian Product Monograph.  *See id.* at 1556:13–1560:24.[2]  During the presentation of Defendants' case, two of Defendants' experts, Dr. Sammy Khatib, an electrophysiologist, and Dr. Najeeb Thomas, a neurosurgeon, were asked by Defendants' counsel whether Dr. Parisian's proposed label would have been helpful to them as clinicians.  *See id.* at 1892:10–1894:2; 1984:12–1985:17; 2282:9–

---

of the Canadian label and related correspondence with the Canadian regulatory authority); *Orr* Trial Tr. at 1219:13–1222:12 (denying motion to exclude certain documents submitted to foreign regulators, but ruling that statements in foreign labels are not admissible); Transcript of Telephone Hearing on Defs.' Mot. to Quash 30(b)(6) Notice to Bayer (*Mingo*), July 10, 2017, at 14:11–16 ("[W]ith regard to the label, Canadian label, common market label, British label, to me it's irrelevant and not even admissible because the requirements in those foreign entities, foreign countries are different from our requirements here in the United States. So the label itself is not admissible, not relevant, not able to be used in this particular case.") (excerpted pages attached as Exhibit B); Order & Reasons Regarding *Mingo* Motions *in Limine* (Doc. 7194), at 5 ("The labeling process, procedures, and requirements are different in foreign countries than those in the United States.  To allow the contents of foreign labels into evidence in a case involving the adequacy of a U.S. label is irrelevant, confusing, and misleading.").

[2] Dr. Parisian's proposed label contained the following language: "In situations of urgent surgery, assessment of the anticoagulation effect of rivaroxaban is appropriate.  Accordingly, measuring PT may be useful in informing clinical decisions in this circumstance.  A normal PT value indicates that clinically significant levels of rivaroxaban are unlikely."  *Id.* at 1557:3–11.  Xarelto's Canadian label states that, "Although there is no need to monitor anticoagulation effect of XARELTO during routine clinical practice, in certain infrequent situations such as overdosage, acute bleeding, urgent surgery, in cases of suspected non-compliance, or in other unusual circumstances, assessment of the anticoagulant effect of rivaroxaban may be appropriate.  Accordingly, measuring PT using the Neoplastin reagent, or Factor-Xa assay using rivaroxaban-specific calibrators and controls, may be useful to inform clinical decisions in these circumstances."  But as explained in PX 190, "PT cannot be used to reliably measure the anticoagulation effect of Xarelto since a normal PT may be found in patients with therapeutic Xarelto levels if measured using selected machine/reagent combinations."

2283:19.  Dr. Khatib testified that Dr. Parisian's proposed labeling language would not be helpful to him because there was insufficient data "that will inform my clinical decisions."  *Id.* at 1892:10–1893:23.   Dr. Thomas testified that the language proposed by Dr. Parisian was potentially dangerous because a patient "can have a normal PT" but "still have anticoagulation of the blood and that would be dangerous in neurosurgery."  *Id.* at 2282:9–2283:19.

Plaintiffs now contend that they were "deprived . . . of an important impeachment opportunity" because they were not allowed to ask Dr. Khatib and Dr. Thomas about statements in Xarelto's Canadian Product Monograph.  Pls.' Memo at 5.  But as this and other courts have repeatedly recognized, foreign labels are irrelevant and would only have served to confuse the jury.  *See* Part I.A & nn.3–5 *infra*.  Separately, the exclusion of the Canadian label from evidence did not affect Plaintiffs' substantial rights because they were allowed to introduce evidence of Defendants' so-called "statements outside the United States" regarding PT testing and were able to cross-examine Dr. Khatib and Dr. Thomas about those statements and PT testing generally.

A.   **The Court did not abuse its discretion in excluding the Canadian label— indeed, it would have been error to admit it.**

Plaintiffs cannot meet their burden to show that the Court's exclusion of foreign labels was "manifestly erroneous."  *Brumfield v. Hollins*, 551 F.3d 322, 330 (5th Cir. 2008).  District courts "enjoy wide discretion in making the relevancy and prejudice assessments that Rules 401 and 403 require."  *United States ex rel. Colquitt v. Abbott Labs.*, 858 F.3d 365, 377 (5th Cir. 2017).  Moreover, a district court's Rule 403 ruling receives "an especially high level of deference" and may be reversed "only rarely and only when there has been a clear abuse of discretion."  *See United States v. Lewis*, 796 F.3d 543, 545 (5th Cir. 2015).  Here, the Court ruled that foreign labels were both irrelevant (Doc. 6645, at 13; *e.g.*, *Orr* Trial Tr. at 1978:7–20), and inadmissible under Rule 403 because they would lead to juror confusion (*e.g.*, *id.* at 1220:17–24).  That ruling is not an

abuse of discretion—indeed, it would have been error (and would have prejudiced Defendants) if the Court had admitted foreign regulatory evidence.

*First,* as explained in Defendants' earlier briefing on foreign labels and regulatory action,[3] foreign regulatory evidence is irrelevant because it does not bear on the adequacy of Xarelto's labeling or design as a matter of U.S. law and FDA's own unique regulatory standards.[4]   The Court's in-trial rulings excluding the Canadian label makes that clear: "It's not what's in one label or what's in another label, because the rules are different, the laws are different, the specifics are different."  *Orr* Trial Tr. at 1978:9–11; *see also id.* at 1220:17–24, 1667:7–14, 2305:24–2306:2 ("I don't feel that it's appropriate for a party, be it plaintiff or defendant, to introduce into evidence labels from a foreign country.  It has nothing to do with the case before us.").  And the point is further (and amply) demonstrated by the fact that FDA expressly rejected proposed Neoplastin PT language.  *See id.* at 1383:7–18.

Moreover, the Canadian Product Monograph that Plaintiffs wanted to introduce does not support their theory during the *Orr* trial—namely, that the Neoplastin PT test is an "indicator test" that can tell a surgeon whether it is safe to proceed to surgery.  *See id.* at 127:3–7 (Plaintiffs' opening statement).  Neither the Canadian label nor any other foreign label states that a Neoplastin

---

[3] *See* Defs.' MIL to Exclude Evidence of Foreign Labeling and Regulatory Actions under Federal Rules of Evidence 402 and 403 (Doc. 5954); Defs.' Opp. to Pls.' MIL "To Admit Evidence of Defendants' Statements Outside the United States that Directly Contradict their Position that PT Neoplastin is not Useful and Does not Work to Determine the Anticoagulant Activity of Xarelto" (Doc. 6560).

[4] *See, e.g.*, *McDowell v. Eli Lilly & Co.*, 13 Civ. 3786, 2015 WL 845720, at *5 (S.D.N.Y. Feb. 26, 2015) ("The mere existence of a differently structured and written European label does not establish that the U.S. label is insufficient, misleading, or legally inadequate, nor is foreign regulatory action even appropriate as a subject of expert testimony in pharmaceutical cases."); *In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396, 488 (S.D.N.Y. 2016) ("Because this litigation is based on U.S. law, and because evidence regarding the FDA will be admitted, the actions taken by foreign regulatory agencies are not particularly probative and likely will be confusing."); *In re Viagra Prods. Liab. Litig.*, 658 F. Supp. 2d 950, 965–66 (D. Minn. 2009) ("[A]ny discussion of foreign regulatory actions is irrelevant . . . and should therefore be excluded."); *see also Jones v. Lederle Labs.*, 785 F. Supp. 1123, 1126–27 (E.D.N.Y. 1992) (because of less stringent testing standards in Japan, testimony regarding a vaccine's use in Japan provided "no acceptable evidence" to support plaintiffs' claim that a safer vaccine existed).

PT test should be used for that purpose.  Although those labels do provide information regarding the correlation between PT and Xarelto plasma concentrations, *none* describes what Plaintiffs argue here: that doctors should be instructed to make clinical decisions about proceeding to surgery based solely upon such a test.  *See* Defs.' MIL No. 3 (Doc. 5954-1), at 4–5.  As such, the Canadian Product Monograph (like other foreign labels) is irrelevant to this case.

   **Second,** even if the Canadian label were relevant, it still was properly excluded under Rule 403.  Admission of the evidence—as the Court recognized—would have been unfairly prejudicial, confused the issues and misled the jury, and wasted valuable trial time creating a series of mini-trials necessary to determine the basis of Health Canada's approval and the Canadian label history, as well as the applicable regulatory standards.  *See, e.g.*, *Orr* Trial Tr. at 1220:17–24 (ruling that it "certainly not [is] admissible under 403 to allow labels from Canada to come into the litigation or labels from Europe to come into the litigation"); *id.* at 1335:17–20 ("[I]f you put stuff in that there's discussion by and between the regulatory agencies, there's a problem there that I'm trying to avoid.  If we contaminate the evidence, any verdict is going to be contaminated."); *id.* at 1978:12–20 ("We're going to get in a situation where we then have to try the Canadian label, and then we're going to be with witnesses about what the Canadian label says and why it says that.  And then we're going to go into the France label.  It's really involving the United States law.  It's the FDA's label [that is at issue in this case]. . . . We can't put in different labels.  It just doesn't – it would be impossible to deal with.  It's a different jurisdiction.").[5]

---

[5] *See also, e.g.*, *In re Seroquel Prods. Liab. Litig*, 601 F. Supp. 2d 1313, 1318 (M.D. Fla. 2009) (holding that even "[a]ccepting for argument's sake that such evidence [concerning foreign regulatory actions] is relevant regarding notice and scienter, the fact remains that its probative value is greatly overmatched by the jury confusion, waste of time, and unfair prejudice that would result if the Court were to allow Plaintiffs to introduce this evidence during their main case"); *In re Viagra Prods. Liab. Litig.*, 658 F. Supp. 2d at 965–66 (holding that "to the extent that foreign regulatory information is relevant, 'its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury"); *In re Baycol Prods. Liab. Litig.*, 532 F. Supp. 2d 1029, 1054 (D. Minn. 2007) ("allowing the admission of evidence of foreign regulatory actions, in a case that is governed by domestic law, would likely cause jury confusion").

Because Plaintiffs have not met the high burden of showing that the Court's exclusion of the Canadian label was manifestly erroneous, they are not entitled to a new trial.

> **B.      Plaintiffs have failed to demonstrate that any evidentiary error substantially affected their rights.**

In any event, evidentiary rulings are subject to harmless error analysis, and reversal is justified only if the rulings affected substantial rights of the complaining party. *See Baisden*, 693 F.3d at 508. "A ruling has affected the substantial rights of the party if, when considering all of the evidence presented at trial, the ruling had a substantial effect on the outcome of the trial." *United States Bank Nat'l Ass'n v. Verizon Commc'ns, Inc.*, 761 F.3d 409, 430 (5th Cir. 2014).

Plaintiffs cannot demonstrate that the Court's exclusion of the Canadian label substantially affected the outcome of the trial.  Indeed, in light of the fact that Plaintiffs were able to introduce a redacted draft response from Bayer to Health Canada (PX 190), even without admitting the Canadian label itself—by framing those statements as what Defendants "knew"—it is Defendants who were prejudiced by the Court's foreign regulatory rulings.  *See, e.g.*, *Orr* Trial Tr. at 1219:15– 1222:12, 1685:22–1690:16, 2305:10–2306:22; *see also id.* at 1335:17–20; *id.* at 1346:18–21 ("[W]hat they said to one regulator is not necessarily accurate with the other regulator."). Plaintiffs' contention is that without the Canadian label in evidence, they were "deprived" of an opportunity to impeach Dr. Khatib and Dr. Thomas.  Pls.' Memo at 5.  Plaintiffs appear to be asserting that they were not allowed to ask those witnesses whether Defendants made statements similar to Dr. Parisian's proposed language "outside of the United States."  *Id.* at 3, 5.

But Plaintiffs asked these questions on numerous occasions.  During cross-examination, Plaintiffs asked Dr. Khatib about Bayer's alleged knowledge of the utility of PT testing.  *See Orr* Trial Tr. 1944:10–12, 1947:5–1949:2.  Plaintiffs' counsel also asked Dr. Khatib the following questions regarding Dr. Parisian's proposed label:

Q.  Are you aware, as you sit here and testify today, that Bayer tells doctors outside of the United States this exact language?

A.  No.

Q.  So you have no knowledge of that.  Let me show you what the company says. You see right here that this is Bayer telling doctors that "Although there is no need to monitor in clinical practice, in certain infrequent situations such as overdosage, acute bleeding, urgent surgery, in cases of suspected noncompliance, or in other unusual circumstances, assessment of the anticoagulant effect of rivaroxaban may be appropriate.  Accordingly, measuring PT using the Neoplastin reagent or Factor Xa, may be useful to inform clinical decisions in these circumstances."  Did you know that?

A.  I see that.

Q.  According to this sentence, Bayer disagrees with you, don't they?

A.  I'm – you're giving me one – I don't have a whole document here.  I am not going to comment on what Bayer thinks or doesn't think.  I am not going to look at snippets.

*Id.* at 1976:1–19.  That testimony flatly refutes Plaintiffs' contention that Dr. Khatib's testimony was "effectively unchallenged" based on statements made to "doctors outside the United States." Pls.' Memo at 3.

And although Plaintiffs now say they wished to cross-examine Dr. Thomas regarding Bayer's statements outside the United States (*see id.*), they never attempted to do so during trial, as they did with Dr. Khatib.  Absent an offer of proof, they cannot complain about it now.  *See Merrill v. S. Methodist Univ.*, 806 F.2d 600 (5th Cir. 1986) (plaintiff who sought to cross-examine a witness about a document failed to preserve error because plaintiff "never made or attempt to make any offer of proof").  Dr. Thomas testified that Dr. Parisian's proposed label would be "dangerous" because it was his understanding that "a patient with a normal PT, you can still have anticoagulation of the blood and that would be dangerous in neurosurgery."  *Orr* Trial Tr. 2282:9– 2283:22.  Plaintiffs made no effort to cross-examine Dr. Thomas with any document in which Defendants made an allegedly contradictory statement outside the United States.  Instead,

9

Plaintiffs conducted a short, narrow cross-examination of Dr. Thomas focused on Mrs. Orr's anticoagulation status and Dr. Bui's treatment.

Plaintiffs' assertion that Dr. Khatib and Dr. Thomas left the jury with the "misimpression" that Dr. Parisian's proposed PT language would have been inappropriate and could have led to dangerous misinterpretations (Pls.' Memo at 5), ignores the fundamental dispute in this case. Plaintiffs claimed that PT is a helpful test that should be used to decide whether or not to perform emergency surgery. Defendants were entitled to—and did—present evidence to the contrary, including the testimony of Dr. Khatib and Dr. Thomas. That the jury did not accept Plaintiffs' argument is not grounds for a new trial. In short, because Plaintiffs' "failure to convince the jury" that the Xarelto label contained inadequate warnings "cannot reasonably be attributed to the judge's decision to exclude" the Canadian label, that decision is not grounds for a new trial. *See Brennan's, Inc. v. Dickie Brennan & Co.*, 376 F.3d 356, 363 (5th Cir. 2004).

Even with the exclusion of the Canadian label, Plaintiffs were given substantial leeway to introduce Defendants' "statements outside the United States" regarding PT testing. In addition to the admission of PX 190, Dr. Parisian's testimony, and Plaintiffs' questioning of Dr. Khatib about "statements outside the United States," Plaintiffs called as part of their case-in-chief Sanjay Jalota, Janssen's Senior Director of Global Regulatory Affairs. After questioning Mr. Jalota extensively about Xarelto's U.S. label, Plaintiffs asked Mr. Jalota:

> [A]re you aware that Bayer has said outside of the United States that, although there is no need to monitor in clinical practice, in certain infrequent situations such as overdosage, acute bleeding, urgent surgery, in cases of suspected non-compliance, or in other unusual circumstances, assessment of the anticoagulant effect of rivaroxaban may be appropriate. Accordingly, measuring PT using the Neoplastin reagent or a Factor Xa assay using riva-specific calibrators and controls may be useful to inform clinical decisions in these circumstances. Are you aware of that?

*Orr* Trial Tr. at 1347:7–16; *see also id.* at 1347:17–1348:9.  In fact, this evidence of "what Bayer says outside of the United States" was a central feature of Plaintiffs' case, as demonstrated by the opening lines of Plaintiffs' closing argument:

> Mr. Barr:  May it please the Court, counsel, ladies and gentlemen of the jury.  This is what Bayer says outside of the United States.  They say that PT is a useful test in the face of urgent surgery; that it can inform clinical decisions.  This language right here that you see on the screen is what this whole case is about.  Are doctors in the United States entitled to this same information?  That's what you have to decide.

*Id.* at 2338:1–8.

                                        *  *  *

In sum, Plaintiffs were able to introduce the very type of evidence they now claim was not allowed: information about what Defendants have said regarding PT testing "outside the United States."  Accordingly, the admission of foreign labels would have been cumulative, in addition to being irrelevant and likely to confuse the jury.  Plaintiffs therefore cannot show prejudice.  *See, e.g.*, *Moech v. Marquette Transp. Co. Gulf-Inland, L.L.C.*, 838 F.3d 586, 594 (5th Cir. 2016) ("The exclusion of cumulative evidence does not affect a party's substantial rights.").

## II.    Plaintiffs are not entitled to a new trial based on the exclusion, during Plaintiffs' examination of a Janssen witness, of a document containing Bayer's draft response to a clarification request from Health Canada.

In their second argument, Plaintiffs again take issue with the Court's decision to exclude foreign regulatory evidence.  As noted above, during their case-in-chief, Plaintiffs called Sanjay Jalota, Janssen's Senior Director of Global Regulatory Affairs.  Plaintiffs asked Mr. Jalota whether he was "aware that outside of the United States, Bayer admits that PT can be used by doctors to determine if it's safe to proceed to surgery."  *Orr* Trial Tr. at 1330:21–23.  Mr. Jalota responded that he "was not involved in any of that discussion."  *Id.* at 1330:24–1331:2; *see also id.* at 1333:22–1334:5.  Plaintiffs then sought to introduce two documents into evidence.  *See id.* at 1334:10–12.  The first (Pls.' No. 3061443) was an email to Mr. Jalota from Janssen employee,

Lori Birkenberger, one of his direct reports.  The second (Pls.' No. 3061444) was a document attached to the email.  The document was dated November 2014 and contained Bayer's draft response to a request from Health Canada.  Defendants objected, arguing that admission of the email and its attachment would "invite[] confusion under 403" because it is "a dialogue back and forth between the regulator and the company, and it is impossible, really, to separate one from the other."  *Id.* at 1334:16–22.

During a sidebar, the Court ruled that the clarification request response itself would not be allowed into evidence, but that Plaintiffs could use the document to ask the witness about "what [Defendants] knew and when they knew it."  *Id.* at 1335:17–24.  The Court explained that its ruling sought to strike a balance between avoiding discussion of Defendants' efforts to comply with foreign regulators' requests (which was irrelevant), and allowing evidence of Defendants' knowledge (which, in the Court's view, was relevant).  *Id.* at 1335:3–24.  Plaintiffs responded that they could "live with" the Court's decision not to allow Bayer's draft response into evidence, and that they would "try to ask the question in a way where it is, you know Bayer said this, instead of this is what they said to the Canadian regulator."  *Id.* at 1336:9–13.  After the sidebar, the Court instructed the jury as follows:

> Members of the jury, the problem that's presented is I'm trying to focus the attorneys on what the company knew and when they knew it.
>
> And some of the discussion – the context is within other regulatory agencies, which has nothing to do with this particular case.
>
> Why they did it or whatever is context.  What they knew and when they knew it is the whole relevance of this line of questioning.
>
> So let's ask the question.

*Id.* at 1337:21–1338:5.  Plaintiffs' counsel then presented the email and its attachment to Mr. Jalota, who testified again that he "was not involved in" communications with Health Canada and

may not have looked at the email.  *Id.* at 1338:11–19.  Defendants then objected to Plaintiffs' line of questioning because the witness "said he was not involved in these arrangements."  *Id.* at 1338:20–22.   The Court asked Mr. Jalota whether he had received and read the email.  *Id.* at 1338:25–1339:3.  Mr. Jalota testified that "it appears [he] received the email," but that he didn't "recall it," and did not recall looking at any attachment to it.  *Id.* at 1339:4–8.  Under questioning from Plaintiffs' counsel, Mr. Jalota reaffirmed that he had not read the document attached to the email.  *Id.* at 1340:24–1341:1.

At that point, Defendants objected to Plaintiffs' questioning of Mr. Jalota about a document he hadn't read, and the Court sustained the objection.  *Id.* at 1341:4–7.  Plaintiffs responded, "Your honor, he received this email."  *Id.* at 1341:14.  At a sidebar, the Court explained that "emails don't get into evidence simply because they're used in the usual course of business.  Otherwise, you could put emails in without any witness."  *Id.* at 1341:20–23.  The Court further explained that "[t]he problem is that this email is . . . more than just an email, it's an attachment," and that the attachment could not come in as a business record if the witness did not recall having read it.  *Id.* at 1342:7–14.  However, the Court eventually allowed Plaintiffs to question Mr. Jalota about the attachment, explaining:

> It's a play-within-a-play situation and that's what I'm trying to deal with.  And it's a complicated problem, because, as I said, there is -- both sides of it is a problem.
>
> You're right about they said things, but when you put them in context, it gets confusing to the jury.  And they say certain things in response back and forth.  It is just the problem when you are dealing with FDA and Canadian or FDA and Europe.
>
> Look, I think that [Defendants] may have a point, but let's do it that way.  But just ask him.  They point is whether they knew it – whether Bayer knew it, and when they knew it.

*Id.* at 1344:2–14.  Accordingly, Plaintiffs asked Mr. Jalota about the document:

> Q.  Mr. Jalota, are you aware that Bayer has said outside of the United States that, although there is no need to monitor clinical practice, in certain infrequent

13

> situations such as overdosage, acute bleeding, urgent surgery, in cases of suspected non-compliance, or in other unusual circumstances, assessment of the anticoagulant effect of rivaroxaban may be appropriate.  Accordingly, measuring PT using the Neoplastin reagent or a Factor Xa assay using riva-specific calibrators and controls may be useful to inform clinical decisions in these circumstances.
>
> Are you aware of that?

*Id.* at 1347:7–16.  Mr. Jalota testified that he is "not aware of the current label," and that "there may be some language, but I don't know what the language is and what was agreed with the agencies outside of the U.S."  *Id.* at 1347:17–1348:1.  Mr. Jalota also testified that it is "difficult for [him] to say" "whether or not [he was] aware that Bayer knew or did not know" about that language because he "simply [doesn't] know what is in the labels."  *Id.* at 1348:2–9.  Plaintiffs later submitted a proffer in which they asked Mr. Jalota about the clarification request response, and he testified that he was not familiar with the document, that he could not recall having read it, and that he was not involved in discussions with Health Canada.  *Id.* at 2449:17–2450:14; 2451:2–10; 2453:11–23; 2456:9–17.  But, importantly, during the course of trial—and as explained in Part I above—the Court later admitted the document into evidence (over Defendants' objection) in redacted form.  *See id.* at 2305:10–2307:23 (admitting Pls.' No. 3061444 into evidence as PX 190).

\* \* \*

The Court's ruling was not error.  Plaintiffs waived their challenge to the admissibility of the document during Mr. Jalota's testimony, but the evidence was correctly excluded because Plaintiffs did not meet their burden of showing that the business records exception applied to the email and its attachment.  Furthermore, Plaintiffs have not shown that the exclusion of this evidence during Mr. Jalota's testimony affected their substantial rights because the document

ultimately came into evidence in redacted form and Plaintiffs were able to ask Mr. Jalota (and other witnesses) about its contents.

### A.   Plaintiffs waived their challenge to the Court's exclusion of the document during Mr. Jalota's testimony.

Plaintiffs have waived any challenge to the Court's exclusion of this document during Mr. Jalota's testimony.  At a sidebar, Plaintiffs' counsel said about the document, "I'm not going to go into this."  *Orr* Trial Tr. at 1335:12–13.  The Court responded, "I'm not going to admit it into evidence, then."  *Id.* at 1335:14–15.  Plaintiffs' counsel then stated that the document "needs to be on the screen for the jury to follow," but that, "[i]f we don't want to admit it into evidence, I can live with that.  And I'll try to ask the question in a way where it is, you know Bayer said this, instead of this is what they said to the Canadian regulator."  *Id.* at 1336:9–13.  Plaintiffs' counsel later stated that "at this point, we're not asking to move the document into evidence."  *Id.* at 1342:24–1343:1.  Plaintiffs cannot now complain that the Court refused to admit a document that they represented to the Court they wouldn't try to admit into evidence.

### B.   The Court did not abuse its discretion in ruling that the document was not admissible as a business record in light of Mr. Jalota's testimony.

For the reasons set out in Section I.A above, the Court was correct that foreign regulatory evidence is irrelevant and prejudicial, and it prejudiced *Defendants* to admit PX 190 at all.  But the Bayer draft response to Health Canada also was correctly excluded during Mr. Jalota's testimony because Plaintiffs did not meet their burden of establishing that the business records exception to the hearsay rule applied.  *See United States v. Fernandez-Roque*, 703 F.2d 808, 812 (5th Cir. 1983) (proponent of evidence bears burden of establishing its admissibility once challenged).  Although Mr. Jalota testified that he received the email, "there is no categorical rule that emails originating from or received by employees of a producing defendant are admissible under the business records exception."  *In re Oil Spill by the Oil Rig Deepwater Horizon in the*

*Gulf of Mexico, on April 20, 2010*, MDL No. 2179, 2012 WL 85447, at *3 (E.D. La. Jan. 11, 2012). Instead, "[i]n order for the contents of an email to be admissible as a business record, the proponent of the evidence must establish five things." *Marine Power Holding, L.L.C. v. Malibu Boats, L.L.C.*, No. 14-912, 2016 WL 4218217, at *6 (E.D. La. Aug. 8, 2016). The proponent must show: (1) that the email was sent or received at or near the time of the event recorded in the email; (2) that the email was sent by someone with knowledge of the event documented in the email; (3) that the email was sent in the course of a regular business activity; (4) that the producing defendant's regular practice was to send or receive emails that record the type of event documented in the email; and (5) a custodian or qualified witness must attest that these conditions have been fulfilled. *Id.* (citing Fed. R. Evid. 806(6)(D)). Plaintiffs did not attempt to establish any of those elements during trial. Moreover, although Mr. Jalota agreed during the proffer that he may have received the email and attachment even though he did not recall receiving or reading them, he also testified that he was not involved in discussions with regulatory authorities or about regulatory issues outside the United States. *See Orr* Trial Tr. at 1333:22–1334:9, 2449:17–2450:14, 2451:2–10. Accordingly, the Court correctly excluded the document during Mr. Jalota's testimony.

### C.   Plaintiffs have failed to demonstrate that any evidentiary error substantially affected their rights.

Separately, Plaintiffs cannot demonstrate that the Court's evidentiary ruling substantially affected the outcome of the trial. As explained above, a redacted version of the document was later admitted into evidence as PX 190. And Plaintiffs were able to ask witnesses—including Mr. Jalota—about Defendants' "statements outside the United States" regarding PT testing, as reflected in the document. The only thing Plaintiffs were prohibited from doing was asking *to whom* the statements were made, which was entirely irrelevant. Plaintiffs have not even attempted

to explain how it prejudiced them that they could not establish that these statements were made to Health Canada.

The trial testimony and Plaintiffs' proffer show that Plaintiffs in fact were not prejudiced—Mr. Jalota's answers made clear that he was not familiar with either the response to Health Canada's clarification request or with statements to foreign regulators more generally. *Orr* Trial Tr. at 2449:17–2450:14 (confirming that he did not recall reading the email or being asked to review the attached draft response to Health Canada's clarification request); *id.* at 2451:2–10 (reaffirming that he did not recall being asked to review the response because at the time of the email, he "was not actively involved" with Xarelto); *id.* at 2453:12–15 ("Q. . . . Do you have recollection of reviewing this draft response to Health Canada back in November of 2014?  A.  No, I do not."); *id.* at 2453:19–21 ("[U]nless Miss Birkenberger asked to me look at something specifically, I would have not – I would have not reviewed it.  I receive so many things."); *id.* at 2456:16–17 ("I don't know what negotiations took place at Health Canada.").  Accordingly, admission of the draft response to Health Canada during Mr. Jalota's testimony would have added nothing, or at most, would have been cumulative, because Mr. Jalota merely would have confirmed what he already stated: that he did not recall having read the document and had no knowledge of any specific communications with Health Canada.  *See Moench*, 838 F.3d at 594 ("The exclusion of cumulative evidence does not affect a party's substantial rights.").

**III.   Plaintiffs are not entitled to a new trial based on the Court's jury instructions.**

Plaintiffs next contend that they are entitled to a new trial because the Court refused to give their proposed instructions regarding FDA regulations.  *See* Pls.' Mem. at 7–9.  That argument fails because Plaintiffs cannot demonstrate prejudicial error.[6]

---

[6] Plaintiffs also failed to preserve this challenge because their general objection to the Court's refusal to give their requested instructions, without any specific elaboration, did not preserve error.  *See Orr* Trial Tr. at 2316:23–2317:17.

Plaintiffs have not shown "[a]s a threshold matter" that their "proposed instruction correctly states the law." *F.D.I.C. v. Henderson*, 61 F.3d 421, 425 (5th Cir. 1995). Even if the proposed instruction is correct, the question is "whether the charge as given was accurate or misleading," because "[a] judgment will be reversed only when the charge as a whole leaves [the court] with a substantial and ineradicable doubt whether the jury has been properly guided in its deliberations." *Id.* (citation and internal quotation marks omitted). Finally, Plaintiffs cannot show that the Court's refusal to include the instruction affected the outcome of the case. *Id.*; *accord Janvey v. Dillon Gage, Inc. of Dallas*, 856 F.3d 377, 388 (5th Cir. 2017).

### A.   Plaintiffs have not shown, "as a threshold matter," that their requested instructions are correct statements of the law.

Plaintiffs' proposed instruction No. 12 purported to quote a portion of a federal regulation regarding the inclusion of laboratory tests in a medicine's label. Plaintiffs contend that "[w]ithout Instruction No. 12, for example, the jury could have concluded that Defendants only had to apprise treating physicians of FDA-approved tests." Pls.' Mem. at 9. The Court correctly refused to give this instruction. Numerous FDA regulations apply to prescription medicines like Xarelto, regulating everything from initial investigational new drug applications, to clinical trials, to the approval of the medicine and its labeling. Quoting for the jury a single, specific FDA regulation— to the exclusion of all other FDA regulations—would have given the jury a misimpression as to the relevant standard. Moreover, Plaintiffs' sole claim here was for failure to warn under the

---

The Fifth Circuit has recognized that a party does not satisfy that requirement "by merely submitting a proposed jury instruction that the district court rejected." *Russell v. Plano Bank & Tr.*, 130 F.3d 715, 719 (5th Cir. 1997). Instead, the party must give an objection that is "sufficiently specific to bring into focus the precise nature of the alleged error"—that is, "[t]he grounds must be stated with sufficient clarity so that the trial court may follow and understand them if well taken." *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 294 (5th Cir. 2007); *see also West v. Perry*, No. 2:07CV200, 2009 WL 2225569, at *8 n.10 (E.D. Tex. July 23, 2009) (finding that plaintiff failed to preserve error regarding requested jury instruction where she failed to "state any grounds for her request" at trial (citing *Positive Black Talk Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 368 (5th Cir. 2004), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010))).

Louisiana Products Liability Act, not for violation of any federal regulations.  The regulation quoted in Plaintiffs' No. 12 was a specific item of evidence, not the governing law, and it was not appropriate for the jury charge to focus on specific items of evidence.  *Orr* Trial Tr. at 2317:18–22 (court concluded that "taken as a whole, the jury charges are accurate and they express what the Plaintiff has indicated.  I don't think that zeroing in on something is even helpful to the jury or helpful to the parties."); *see also Boudreaux* Trial Tr. at 1537:13–23 (concluding that the regulation quoted in Plaintiffs' No. 12 was a "specific item[] of evidence," not the governing law, and it was not appropriate for the jury charge to "focus on specific items of evidence") (excerpted pages attached as Exhibit C).

Similarly, Plaintiffs assert that the Court erred in refusing to give their proposed No. 13 (*see* Pls.' Mem. at 7–9),[7] but, again, Plaintiffs' claim was not—indeed, as a matter of law it could not be—a claim for alleged violations of federal regulations.  *See Buckman Co. v. Pls.' Legal Comm.*, 531 U.S. 341, 350–51 (2001); *Lofton v. McNeil Consumer & Specialty Pharm.*, 672 F.3d 372, 379–380 (5th Cir. 2012) (holding that federal law preempts state-law claims asserting damages for alleged violations of FDA regulations).  The Court rejected this instruction in favor of its final charge, which "advised that the actions of FDA are not dispositive."  *Orr* Trial Tr. at 2319:10–11.  In so doing, the Court also overruled Defendants' objections that the charge "gives insufficient attention to and obscures the relevance of the FDA's approval of Xarelto and Defendants' compliance with regulatory standards" and "is unfairly balanced in Plaintiffs' favor." *Id.* at 2329:12–2330:8; Doc. 6799, at 3–5.  Having convinced the Court not to instruct the jury in

---

[7] Plaintiffs' No. 13 stated as follows: "While a manufacturer's violation of one or more FDA regulations designed to protect consumers is not conclusive evidence that a product is unreasonably dangerous, violation of such standards may be considered as evidence of the appropriate standard when determining whether the instructions provided to the treating physician were inadequate."

detail on the positive inference of FDA compliance, Plaintiffs are in no position to complain that the Court did not give a more specific instruction regarding non-compliance.

### B.   In any event, Plaintiffs do not claim that the Court's instruction was inaccurate or misleading.

Plaintiffs do not now assert that any of the Court's instructions were *incorrect*.  Instead, they simply claim that the Court's instruction was too general to assist the jury because it "invited jury consideration of whether Defendants had failed to advise Plaintiffs' physicians of 'appropriate testing to address risks,' but provided no guidance with regard to what constituted 'appropriate testing to address risks.'"  Pls.' Memo at 9.  But, again, it was not error for the Court to decline to quote to the jury with a single FDA regulation (among many) in favor of a general FDA instruction. In any event, Plaintiffs have made no effort to show, as they must, that the charge "confuse[d] or mis[led] the jury."  *Sommers Drug Stores Co. Employee Profit Sharing Tr. v. Corrigan*, 883 F.2d 345, 350 (5th Cir. 1989) (explaining that instructions need only be "comprehensive, balanced, fundamentally accurate, and not likely to confuse or mislead the jury").  Indeed, if anything, the Court's FDA instruction was unfairly unbalanced *in favor of Plaintiffs*—the charge stated in one sentence (encompassing three lines) that the jury can consider FDA approval, while stating in four sentences (covering 20 lines) that the jury need not give FDA approval very much, if any, weight. *See* Doc. 6815 at 25–26.[8]

### C.   Plaintiffs have not demonstrated that the Court's refusal to give their requested instruction affected the outcome of the case.

Finally, Plaintiffs must show that the Court's refusal to give their requested instruction "seriously impaired [their] ability to present a given claim."  *Janvey*, 856 F.3d at 388.  They cannot do so.  Plaintiffs contend that without their proposed instructions, "the jury could have concluded

---

[8] Defendants objected to the Court's FDA charge on this basis and submitted that their proposed instruction No. 16 would have been more accurate and balanced.  *See, e.g.*, Doc. 6799, at 3–5, 11–12.

that Defendants only had to apprise treating physicians of FDA-approved tests."  Pls.' Memo at 9.

But the Court's instructions went to great lengths to explain that FDA's approval, "although relevant," did not "foreclose a claim under Louisiana law," was not "conclusive," and did not "absolve the Defendants of all liability."  Doc. 6815, at 25–26.  As such, nothing in the Court's instructions can be read to suggest that FDA approval of either the label itself or any adjunct laboratory tests would be conclusive, and Plaintiffs emphasized throughout trial the laboratory-tests regulation that they attempted to include in their Proposed No. 12.  Plaintiffs referred to that regulation during their opening arguments; their regulatory expert, Dr. Parisian, extensively discussed the regulation; and the regulation was discussed in their closing argument.  *See Orr* Trial Tr. at 127:17–20; 1540:11–1542:9; 1546:9–1556:16; 1562:7–15; 1563:19–1564:8; 2349:4–18.

Accordingly, Plaintiffs cannot show that the Court's refusal to give their requested instruction "seriously impaired [their] ability to present [their] claim."  *Schilling v. La. Dept. of Transp. & Dev.*, 662 F. App'x 243, 246–47 (5th Cir. 2016) (holding that plaintiff could not show reversible error in refusal to give requested instruction where "[s]he raised th[e] argument in her opening statement," provided testimony, and included it as a "principal theme[] at closing.").

## IV.    Plaintiffs are not entitled to a new trial on the basis of "cumulative error."

Plaintiffs also cursorily assert that the Court's alleged errors, "when considered cumulatively," warrant a new trial.  Pls.' Memo at 10.  But Plaintiffs have not shown that any of the Court's rulings were erroneous.  Their failure to "establish[] *any* error" means that "there is nothing to cumulate."  *United States v. McIntosh*, 280 F.3d 479, 484 (5th Cir. 2002); *see also, e.g.*, *In re Wheeler*, 612 F. App'x 763, 770 (5th Cir. 2015) (plaintiff failed to "show[] that any of the errors he alleges are actual errors").  Nor have Plaintiffs explained how any alleged error "so fatally infect[ed] the trial that they violated the trial's fundamental fairness."  *Stewart v. Int'l Ass'n of*

*Machinists & Aerospace Workers*, 643 F. App'x 454, 458 (5th Cir. 2016).  Accordingly, this is not the "rar[e]" situation, *United States v. Villarreal*, 324 F.3d 319, 328 (5th Cir. 2003), that meets the "high threshold for a finding of cumulative error," *Wheeler*, 612 F. App'x at 770.

**V.  Plaintiffs are not entitled to a new trial because Defendants were entitled to judgment as a matter of law.**

Finally, even if there had been error in the conduct of the trial, the Court still should deny Plaintiffs' motion for a new trial.  Any error would have been harmless in light of the fact that Defendants were entitled to judgment as a matter of law, for the reasons stated in Defendants' Motion For Judgment As A Matter Of Law At The Close Of The Evidence (Doc. 6776).

## CONCLUSION

The jury here, following a ten-day trial, unanimously found that Defendants adequately instructed physicians as to the safe use of Xarelto.  Plaintiffs have not shown "that manifest injustice will result from letting the verdict stand." *Learmonth*, 631 F.3d at 731.  The Court should deny Plaintiffs' motion for a new trial.

Respectfully submitted,

IRWIN FRITCHIE URQUHART & MOORE LLC

By: /s/ *James B. Irwin*
James B. Irwin
Kim E. Moore
Irwin Fritchie Urquhart & Moore LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
jirwin@irwinllc.com

DRINKER BIDDLE & REATH LLP

By: /s/ *Susan M. Sharko*

WILKINSON WALSH + ESKOVITZ LLP

By: /s/ *Beth A. Wilkinson*
Beth A. Wilkinson
Jennifer L. Saulino
Jeremy Barber
WILKINSON WALSH + ESKOVITZ LLP
1900 M. Street NW, Suite 800
Washington, DC 20036
Telephone: (202) 847-4000
bwilkinson@wilkinsonwalsh.com
jsaulino@wilkinsonwalsh.com
jbarber@wilkinsonwalsh.com

NELSON MULLINS RILEY & SCARBOROUGH LLP

Susan M. Sharko
Drinker Biddle & Reath LLP
600 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
susan.sharko@dbr.com

Rodney M. Hudson
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
Telephone: (415) 591-7500
Rodney.hudson@dbr.com

Chanda A. Miller
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2700
Chanda.Miller@dbr.com

*Attorneys for Defendants Janssen
Pharmaceuticals, Inc. and Janssen Research
& Development, LLC*

By: */s/ David E. Dukes*
David E. Dukes
J. Mark Jones
NELSON MULLINS RILEY & SCARBOROUGH LLP
1320 Main Street, 17th Floor
Columbia, SC 29201
Telephone: (803) 799-2000
David.Dukes@nelsonmullins.com
Mark.Jones@nelsonmullins.com

ARNOLD & PORTER KAYE SCHOLER LLP

By: */s/ Andrew K. Solow*
Andrew K. Solow
Steven Glickstein
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8485
andrew.solow@apks.com
steven.glickstein@apks.com

William Hoffman
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
william.hoffman@apks.com

BRADLEY ARANT BOULT CUMMINGS LLP

By: */s/ Lindsey C Boney IV*
Lindsey C Boney IV
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place, 1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8914
lboney@bradley.com

CHAFFE MCCALL L.L.P.
By: */s/ John F. Olinde*
John F. Olinde
CHAFFE MCCALL L.L.P.
1100 Poydras Street, Suite 2300
New Orleans, LA 70163
Telephone: (504) 585-7241
olinde@chaffe.com

*Attorneys for Bayer HealthCare*
*Pharmaceuticals Inc. and Bayer Pharma AG*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 28th day of August, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to Liaison Counsel for Plaintiffs by operation of the court's electronic filing system.

*/s/     John F. Olinde*