# EXHIBIT 5

1          UNITED STATES DISTRICT COURT

2         SOUTHERN DISTRICT OF MISSISSIPPI

3

4

5   IN RE:  XARELTO              *
    (RIVAROXABAN) PRODUCTS       *
6   LIABILITY LITIGATION         *
                                 *
7   THIS DOCUMENT RELATES TO:    *    Docket No.: 14-MD-2592
                                 *    Section "L"
8   Dora Mingo, et al. v.        *    Jackson, Mississippi
    Janssen Research &           *    August 7, 2017
9   Development, LLC, et. al.,   *
    Case No.: 15-CV-3469         *
10  * * * * * * * * * * * * * * *

11            VOLUME I - AFTERNOON SESSION
         TRANSCRIPT OF JURY TRIAL PROCEEDINGS
12       BEFORE THE HONORABLE ELDON E. FALLON
             UNITED STATES DISTRICT JUDGE

13

14  APPEARANCES:

15

    For the Plaintiffs'
16  Liaison Counsel:             Gainsburg Benjamin David
                                   Meunier & Warshauer
17                               BY:  GERALD E. MEUNIER, ESQ.
                                 2800 Energy Centre
18                               1100 Poydras Street
                                 New Orleans, Louisiana 70163

19

20
    For the Plaintiffs:          Beasley Allen
21                               BY:  ANDY BIRCHFIELD, ESQ.
                                 P.O. Box 4160
22                               Montgomery, Alabama 36103

23

24

25

```
 1   APPEARANCES:

 2                                 Gainsburg Benjamin Davis
                                      Meunier & Warshauer
 3                                 BY:  WALTER C. MORRISON, IV, ESQ.
                                   240 Trace Colony Park Drive
 4                                 Suite 100
                                   Ridgeland, Mississippi 39157
 5

 6                                 Goza Honnold
 7                                 BY:  BRADLEY D. HONNOLD, ESQ.
                                   11181 Overbrook Road, Suite 200
 8                                 Leawood, Kansas 66211

 9                                 The Lambert Firm
10                                 BY:  EMILY JEFFCOTT, ESQ.
                                   701 Magazine Street
11                                 New Orleans, Louisiana 70130

12   For the Defendant Bayer
13   HealthCare Pharmaceuticals
     Inc. and Bayer Pharma AG:     Mitchell, Williams, Selig, Gates &
14                                    Woodyard, P.L.L.C.
                                   BY:  LYN P. PRUITT, ESQ.
15                                 425 W. Capitol Avenue, Suite 1800
                                   Little Rock, Arkansas 72201
16

17                                 Watkins & Eager, PLCC
18                                 BY:  WALTER T. JOHNSON, ESQ.
                                   400 East Capitol Street
19                                 Jackson, Mississippi 39201

20

21   For Janssen Pharmaceuticals,
     Inc. and Janssen Research &
22   Development, LLC:             Barrasso Usdin Kupperman Freeman &
                                      Sarver, LLC
23                                 BY:  RICHARD E. SARVER, ESQ.
                                   909 Poydras Street, 24th Floor
24                                 New Orleans, Louisiana 70112

25
```

1

2

3       Official Court Reporter:        Tana J. Hess, CRR, RMR
                                        500 Poydras Street
                                        Room B275
4                                       New Orleans, Louisiana 70130
                                        (504) 589-7781
5

6

7       Proceedings recorded by mechanical stenography using
        computer-aided transcription software.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

do.

We know that the FDA, even today, does not recommend using a PT test for doctors to tell them what effect Xarelto is having in a patient's blood because they know that it doesn't predict the risk of bleeding.  They know that the medicine is designed and would make your clotting time prolonged, and we told doctors about that in the label.

What we also know is that medical organizations and the literature -- what do they say about this PT test being used with Xarelto?  The American College of Chest Physicians, the American Society for Gastrointestinal Endoscopy, the American Heart Association, the American College of Cardiology, none of these organizations who treat people that take anticoagulants recommend that a PT test be used in figuring out how to treat a patient.  They don't recommend that you use it to figure out how to dose a patient.  They don't recommend that you use it to figure out whether to take a patient off of an anticoagulant.

We also know that medical literature, even as late as 2017, ladies and gentlemen, you can see here the name of that article, "The Danger of Relying on PT in Patients on DOAC Therapy," which is the same as NOAC, "A Potential Safety Patient -- Patient Safety Issue."

Clinicians must acknowledge that PT can no longer be used as a gauge of a patient's level of anticoagulation and

1     UNITED STATES DISTRICT COURT

2    SOUTHERN DISTRICT OF MISSISSIPPI

3

4

5 IN RE:  XARELTO     *
  (RIVAROXABAN) PRODUCTS  *
6 LIABILITY LITIGATION   *
             *
7 THIS DOCUMENT RELATES TO: * Docket No.: 14-MD-2592
             * Section "L"
8 *Dora Mingo, et al. v.*   * Jackson, Mississippi
 *Janssen Research &*   * August 9, 2017
9 *Development, LLC, et. al.,* *
 Case No.: 15-CV-3469   *
10 * * * * * * * * * * * * * * *

11    VOLUME III - AFTERNOON SESSION
    TRANSCRIPT OF JURY TRIAL PROCEEDINGS
12   BEFORE THE HONORABLE ELDON E. FALLON
    UNITED STATES DISTRICT JUDGE

13

14 <u>APPEARANCES</u>:

15

 For the Plaintiffs'
16 Liaison Counsel:    Gainsburg Benjamin David
            Meunier & Warshauer
17          BY:  GERALD E. MEUNIER, ESQ.
          2800 Energy Centre
18          1100 Poydras Street
          New Orleans, Louisiana 70163

19

20

 For the Plaintiffs:   Beasley Allen
21          BY:  ANDY BIRCHFIELD, ESQ.
          P.O. Box 4160
22          Montgomery, Alabama 36103

23

24

25

622

```
 1   APPEARANCES:

 2                              Gainsburg Benjamin Davis
                                  Meunier & Warshauer
 3                              BY:  WALTER C. MORRISON, IV, ESQ.
                               240 Trace Colony Park Drive
 4                             Suite 100
                               Ridgeland, Mississippi 39157
 5

 6                              Goza Honnold
 7                              BY:  BRADLEY D. HONNOLD, ESQ.
                               11181 Overbrook Road, Suite 200
 8                             Leawood, Kansas 66211

 9                              The Lambert Firm
10                             BY:  EMILY JEFFCOTT, ESQ.
                               701 Magazine Street
11                             New Orleans, Louisiana 70130

12
     For the Defendant Bayer
13   HealthCare Pharmaceuticals
     Inc. and Bayer Pharma AG:   Mitchell, Williams, Selig, Gates &
14                                 Woodyard, P.L.L.C.
                                 BY:  LYN P. PRUITT, ESQ.
15                               425 W. Capitol Avenue, Suite 1800
                                 Little Rock, Arkansas 72201
16

17                              Watkins & Eager, PLCC
18                             BY:  WALTER T. JOHNSON, ESQ.
                               400 East Capitol Street
19                             Jackson, Mississippi 39201

20

21   For Janssen Pharmaceuticals,
     Inc. and Janssen Research &
22   Development, LLC:           Barrasso Usdin Kupperman Freeman &
                                   Sarver, LLC
23                               BY:  RICHARD E. SARVER, ESQ.
                                 909 Poydras Street, 24th Floor
24                               New Orleans, Louisiana 70112

25
```

1

2

3   Official Court Reporter:        Tana J. Hess, CRR, RMR
                                    500 Poydras Street
                                    Room B275
4                                   New Orleans, Louisiana 70130
                                    (504) 589-7781
5

6

    Proceedings recorded by mechanical stenography using
7   computer-aided transcription software.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

2:17PM    1          MS. JEFFCOTT:  But she has to ask the question first.

2:17PM    2          THE COURT:  Yeah, ask the question first.

2:12PM    3          (Whereupon the following proceedings were held in

2:12PM    4          open court in the presence and hearing of the jury:)

2:12PM    5   BY MS. PRUITT:

2:12PM    6   Q.   Have you given the opinion, Doctor, that the label does

2:12PM    7   not adequately describe that the pharmacodynamics measurement

2:12PM    8   tool, prothrombin time, is linearly correlated with rivaroxaban

2:12PM    9   blood levels and can be used as a surrogate marker for drug

2:12PM   10   blood level?  Have you given that opinion?

2:12PM   11   A.   I would agree that it's in my report, yes.  I haven't

2:12PM   12   talked about that with the jury, but certainly it's in my

2:12PM   13   report.

2:12PM   14   Q.   And you know, Dr. Plunkett, don't you, that Janssen

2:13PM   15   submitted that very language in the label under the

2:13PM   16   pharmacokinetics and pharmacodynamics section, and the FDA

2:13PM   17   struck it out --

2:13PM   18          MS. JEFFCOTT:  Your Honor, objection.

2:13PM   19          THE COURT:  Sustain the objection.

2:13PM   20          And let me mention this to you, members of the

2:13PM   21   jury.  The defendant at all times has the responsibility of

2:13PM   22   producing an adequate label and to warn and instruct treaters

2:13PM   23   as to prescription drugs.  In fact, any action or inaction on

2:13PM   24   the part of the FDA, though somewhat relevant, does not

2:13PM   25   foreclose a claim against Mississippi law, against state law.

| | | |
|---|---|---|
| 2:13PM | 1 | That's the rules of that law.  Okay. |
| 2:13PM | 2 | **MS. PRUITT:**  Your Honor, may I be permitted to |
| 2:13PM | 3 | refresh her recollection with the document? |
| 2:13PM | 4 | **MS. JEFFCOTT:**  Your Honor, I object.  May we |
| 2:13PM | 5 | approach? |
| 2:13PM | 6 | **THE COURT:**  Come on up. |
| 2:13PM | 7 | (whereupon the following proceedings were held at the |
| 2:13PM | 8 | bench out of the hearing of the jury:) |
| 2:13PM | 9 | **MS. PRUITT:**  Your Honor, she said -- |
| 2:18PM | 10 | **THE COURT:**  The thing that concerns me is if counsel |
| 2:18PM | 11 | are agreeing to something, then all bets are off then.  If you |
| 2:19PM | 12 | all have agreed and then you all -- you have different views of |
| 2:19PM | 13 | it, then -- then that's -- what's good for the goose is good |
| 2:19PM | 14 | for the gander. |
| 2:19PM | 15 | **MS. PRUITT:**  Your Honor, the relevancy of the |
| 2:19PM | 16 | struck-through documents with this witness is that she's said |
| 2:19PM | 17 | the very thing that the FDA struck out.  She said she thought |
| 2:19PM | 18 | it should be in there, so I should be entitled to ask her. |
| 2:19PM | 19 | "You understand that that very thing that you mentioned in your |
| 2:19PM | 20 | report -- the very thing you mentioned in your report has been |
| 2:19PM | 21 | stricken by the FDA."  That's all I'm going to do.  I'm going |
| 2:19PM | 22 | to hand her one document. |
| 2:19PM | 23 | **MR. BIRCHFIELD:**  Your Honor, this opens up the -- a |
| 2:19PM | 24 | whole can of worms.  I mean, this was -- this was the witness |
| 2:19PM | 25 | that they -- in her deposition that they used this document on |

2:19PM
2:20PM
2:20PM
2:20PM
2:20PM
2:20PM
2:20PM
2:20PM
2:20PM
2:20PM
2:20PM
2:20PM
2:20PM
2:20PM
2:20PM
2:20PM
2:20PM
2:20PM
2:20PM
2:20PM
2:21PM
2:21PM
2:21PM
2:21PM
2:21PM

1   right after we learned that they had -- that they had given us

2   a document production that did not include the strike-throughs.

3   It was all in that context.  So here again, you know, this

4   was -- this was part of -- part of the agreement that we made

5   with counsel.  We're not going into regulatory.  That's where

6   we were, and that was the agreement, and now they are turning

7   around, they are taking her into regulatory, and they're using

8   a document that is not in evidence.  They haven't established a

9   foundation for the document.

10        MR. MEUNIER:  Your Honor, we have a Motion in Limine

11   on this document, and you reserved ruling.

12        THE COURT:  On which document are we talking about?

13        MR. MEUNIER:  The strike-through label, because

14   remember, there's a whole foundational argument that we made

15   that they have not yet established the fact that it was the FDA

16   that struck through the material.  And we, in fact, have now

17   been given a different format of the same document which makes

18   us even further question the authenticity of their assertion

19   that it was the FDA that did the strike-through.  So we have a

20   Motion in Limine.  You reserved ruling and said, "I'm going to

21   have the defendants lay a proper foundation."  To show it to

22   this witness before that foundation has been laid and before

23   the document has been admitted into evidence is --

24        MR. BONEY:  So, Your Honor, since the Boudreaux and

25   Orr trials, the FDA has provided us per request the certified

| | |
|---|---|
| 2:21 PM | 1 |
| 2:21 PM | 2 |
| 2:21 PM | 3 |
| 2:21 PM | 4 |
| 2:21 PM | 5 |
| 2:21 PM | 6 |
| 2:21 PM | 7 |
| 2:21 PM | 8 |
| 2:21 PM | 9 |
| 2:21 PM | 10 |
| 2:21 PM | 11 |
| 2:21 PM | 12 |

1  copies of the official documents.  The email and the red line

2  Word document that were sent to Janssen.  That document, we

3  have the certified copies here with the red ribbons, with

4  decorations from people at FDA, the custodians of record, that

5  says this is a true and correct copy of an official record.

6  Under 902(4) Federal Rules of Procedure 44, that's a

7  self-authenticating document.  It doesn't have to have a

8  sponsoring witness.  It doesn't have to have extensive

9  foundation.  In any event, Your Honor, this witness has given

10  PT opinions, has given PK/PD opinions.  It's important to the

11  jury whether or not she knows about it, and if she doesn't know

12  about it, it goes to her credibility.

13      MS. JEFFCOTT:  Your Honor, the document itself, the

14  changes that are made are not identified as being made by the

15  FDA.  They don't resolve the foundational issues, because the

16  changes themselves have just "author" written by it.  They

17  don't say the FDA.  They don't identify who specifically made

18  the changes.

19      MR. BONEY:  We can let the jury decide that, Your

20  Honor.

21      THE COURT:  Well, let's do it this way.  Let's not at

22  this point show the FDA document, because you haven't

23  established the -- what did you say?  Whether it's

24  authenticated, but let's just ask her about it.  Does she know

25  whether or not the FDA has stricken that thing?  And you can

|           |    |                                                                              |
|-----------|----|------------------------------------------------------------------------------|
| 2:22PM    | 1  | bring it up in another -- in another area, but you have a right               |
| 2:22PM    | 2  | to impeach the witness.                                                       |
| 2:22PM    | 3  | Now, I don't know about any agreements that you                               |
| 2:22PM    | 4  | all have made.  It concerns me when some lawyer says, "We had                 |
| 2:22PM    | 5  | an agreement, and you violated the agreement," whatever that                  |
| 2:22PM    | 6  | is, but I'm not privy to that.  I just have to look at this                   |
| 2:22PM    | 7  | witness, and the witness is under cross-examination, can be                   |
| 2:23PM    | 8  | impeached.                                                                    |
| 2:23PM    | 9  | So -- but from the standpoint of utilizing a                                  |
| 2:23PM    | 10 | document that hasn't been authenticated yet, let's do it in a                 |
| 2:23PM    | 11 | different way and lay a -- put on somebody who authenticates                  |
| 2:23PM    | 12 | the document or authenticate the document in some way, but to                 |
| 2:23PM    | 13 | put on a document that hasn't been authenticated yet and hasn't               |
| 2:23PM    | 14 | been tested yet, it just gives me --                                          |
| 2:23PM    | 15 | **MR. BONEY:**  I understand, Your Honor.  Can we at                          |
| 2:23PM    | 16 | least submit it in camera and show Your Honor that under                      |
| 2:23PM    | 17 | 902(4), it's self-authenticating document that's a public                     |
| 2:23PM    | 18 | record that doesn't need to be authenticated.  It doesn't need                |
| 2:23PM    | 19 | any extrinsic foundation.                                                     |
| 2:23PM    | 20 | **MR. MEUNIER:**  Judge, it's not authenticated as who                        |
| 2:23PM    | 21 | did the strike-through.  That's the --                                        |
| 2:23PM    | 22 | **MR. BONEY:**  The document itself is authenticated.                         |
| 2:23PM    | 23 | That's -- it's a fact question that can be resolved.                          |
| 2:23PM    | 24 | **THE COURT:**  Let's do it in questioning rather than                        |
| 2:23PM    | 25 | showing her documents.                                                        |

| | | |
|---|---|---|
| 2:24PM | 1 | **THE DEPUTY CLERK:** Judge -- |
| 2:24PM | 2 | **THE COURT:** Need to take a break? |
| 2:24PM | 3 | **THE DEPUTY CLERK:** Yeah, five minutes. |
| 2:24PM | 4 | (Whereupon the following proceedings were held in |
| 2:24PM | 5 | open court in the presence and hearing of the jury:) |
| 2:19PM | 6 | **THE COURT:** Okay. We'll take a five-minute break. |
| 2:19PM | 7 | (Whereupon the jury was excused from the courtroom.) |
| 2:19PM | 8 | (Recess.) |
| 2:31PM | 9 | (Whereupon the jury entered the courtroom.) |
| 2:32PM | 10 | **THE COURT:** Okay. Be seated, please. |
| 2:32PM | 11 | Let's continue, Counsel. |
| 2:32PM | 12 | BY MS. PRUITT: |
| 2:32PM | 13 | **Q.** Dr. Plunkett, you have in your report stated on page 7 |
| 2:32PM | 14 | here that prothrombin time -- which is PT; right? |
| 2:32PM | 15 | **A.** Are you on 7 of 83, which is my 6? Or are you on -- |
| 2:32PM | 16 | **Q.** I know. It's kind of hard to decide. It says 7 in the |
| 2:33PM | 17 | one corner, 8 at the bottom. |
| 2:33PM | 18 | **A.** Okay. I'm there. |
| 2:33PM | 19 | **Q.** And the sentence that starts with "second." |
| 2:33PM | 20 | **A.** Yes. |
| 2:33PM | 21 | **Q.** About the middle of it, you give the opinion in your |
| 2:33PM | 22 | report that "PT" -- which is prothrombin time; right? |
| 2:33PM | 23 | **A.** Yeah. |
| 2:33PM | 24 | **Q.** -- "is linearly correlated with rivaroxaban" -- and that's |
| 2:33PM | 25 | Xarelto; right? |

A.   Yes.

Q.   -- "blood levels and can be used as a surrogate marker for drug blood level."

     That's the opinion you gave in your report; right?

A.   Yes.

Q.   Were you aware that that language was submitted for the label in the pharmacodynamics section to the FDA and it was stricken?

A.   That language specifically, no.

     MS. JEFFCOTT:  Objection.

BY MS. PRUITT:

Q.   You're not aware of that?

A.   Not that specifically.

     THE COURT:  I'll overrule the objection and allow it.

BY MS. PRUITT:

Q.   You're not aware as to whether it was stricken or not?

A.   The specific language that I have in my report, no, I'm not aware that that was stricken.

Q.   Are you aware that language that may not be word for word like this but says the same thing was stricken from the label?

     MS. JEFFCOTT:  Your Honor --

     THE COURT:  No, that's too broad.  I'll sustain the objection.

BY MS. PRUITT:

Q.   Let's move on to something else.

1            UNITED STATES DISTRICT COURT

2          SOUTHERN DISTRICT OF MISSISSIPPI

3

4

5   IN RE:  XARELTO              *
    (RIVAROXABAN) PRODUCTS       *
6   LIABILITY LITIGATION         *
                                 *
7   THIS DOCUMENT RELATES TO:    *   Docket No.: 14-MD-2592
                                 *   Section "L"
8   Dora Mingo, et al. v.        *   Jackson, Mississippi
    Janssen Research &           *   August 10, 2017
9   Development, LLC, et. al.,   *
    Case No.: 15-CV-3469         *
10  * * * * * * * * * * * * * * * *

11            VOLUME IV – MORNING SESSION
         TRANSCRIPT OF JURY TRIAL PROCEEDINGS
12       BEFORE THE HONORABLE ELDON E. FALLON
            UNITED STATES DISTRICT JUDGE

13

14  APPEARANCES:

15

    For the Plaintiffs'
16  Liaison Counsel:             Gainsburg Benjamin David
                                   Meunier & Warshauer
17                               BY:  GERALD E. MEUNIER, ESQ.
                                 2800 Energy Centre
18                               1100 Poydras Street
                                 New Orleans, Louisiana 70163

19

20

    For the Plaintiffs:          Beasley Allen
21                               BY:  ANDY BIRCHFIELD, ESQ.
                                 P.O. Box 4160
22                               Montgomery, Alabama 36103

23

24

25

              OFFICIAL REALTIME TRANSCRIPT

1  APPEARANCES:

2                          Gainsburg Benjamin Davis
                             Meunier & Warshauer
3                          BY:  WALTER C. MORRISON, IV, ESQ.
                           240 Trace Colony Park Drive
4                          Suite 100
                           Ridgeland, Mississippi 39157
5

6
                           Goza Honnold
7                          BY:  BRADLEY D. HONNOLD, ESQ.
                           11181 Overbrook Road, Suite 200
8                          Leawood, Kansas 66211

9

10                         The Lambert Firm
                           BY:  EMILY JEFFCOTT, ESQ.
11                         701 Magazine Street
                           New Orleans, Louisiana 70130
12

13
                           Levin, Fishbein, Sedran & Berman
14                         BY: FREDERICK S. LONGER, ESQ.
                           510 Walnut Street
15                         Suite 500
                           Philadelphia, Pennsylvania 19106
16

17
   For the Defendant Bayer
18 HealthCare Pharmaceuticals
   Inc. and Bayer Pharma AG:  Mitchell, Williams, Selig, Gates &
19                             Woodyard, P.L.L.C.
                           BY:  LYN P. PRUITT, ESQ.
20                         425 W. Capitol Avenue, Suite 1800
                           Little Rock, Arkansas 72201
21

22
                           Watkins & Eager, PLCC
23                         BY:  WALTER T. JOHNSON, ESQ.
                           400 East Capitol Street
24                         Jackson, Mississippi 39201

25

OFFICIAL REALTIME TRANSCRIPT

1    APPEARANCES:

2    For Janssen Pharmaceuticals,
     Inc. and Janssen Research &
3    Development, LLC:              Barrasso Usdin Kupperman Freeman &
                                       Sarver, LLC
4                                  BY:  RICHARD E. SARVER, ESQ.
                                   909 Poydras Street, 24th Floor
5                                  New Orleans, Louisiana 70112

6

7    Official Court Reporter:      Jodi Simcox, RMR, FCRR
                                   500 Poydras Street
8                                  Room HB-406
                                   New Orleans, Louisiana 70130
9                                  (504) 589-7780

10

11
     Proceedings recorded by mechanical stenography, transcript
12   produced by computer.

13

14

15

16

17

18

19

20

21

22

23

24

25

                        OFFICIAL REALTIME TRANSCRIPT

ROBERT GOSSELIN - CROSS

10:36  1    A.   Yes.

10:36  2    Q.   Fair enough.  Have you read the Neoplastine CI Plus

10:36  3    package insert?

10:36  4    A.   Yes.

10:36  5    Q.   And you know, based on reading it, that it is not approved

10:36  6    for use with Xarelto?

10:36  7    A.   I don't think the package insert says anything it approved

10:36  8    for any use.  Its intended use it's approved for is for PT

10:36  9    testing on two of their analyzers.  That's the --

10:36  10   Q.   But isn't --

10:36  11   A.   -- intended use.

10:36  12        They go on to describe potentially the use of the PT

10:36  13   in a bunch of medication, but I am not sure that's the FDA

10:37  14   approval process.  The FDA approval process is the intended

10:37  15   use.  The intended use would be the PT on those tests --

10:37  16   Q.   You know, don't you, from reading the label --

10:37  17   A.   -- on those instruments, I'm sorry.

10:37  18        MR. SARVER:  I'm sorry, Madam Court Reporter.  I

10:37  19   walked over him.  Are we okay?  All right.

10:37  20   BY MR. SARVER:

10:37  21   Q.   You know from reading the label, don't you, that there is

10:37  22   a lengthy discussion of use of Neoplastine CI with warfarin;

10:37  23   true?

10:37  24   A.   No.  What they talk about is discussion of the PT test,

10:37  25   the summary of the prothrombin time test, or PT test, and what

OFFICIAL REALTIME TRANSCRIPT

ROBERT GOSSELIN - CROSS

11:02  1   on-therapy range, and that can be quite wide, yes.

11:02  2   Q.   And because of the predictable pharmacokinetics,

11:02  3   pharmacodynamics and wide therapeutic range, routine laboratory

11:02  4   measurement of Xarelto is not required?

11:02  5   A.   In the context I described "routine" with Mr. Birchfield,

11:02  6   the answer is yes.

11:02  7   Q.   And I think we've said this.  I want to make sure:  Today,

11:02  8   as of August 11th, 10th, whatever we are, 2017, there's

11:02  9   currently no FDA-approved commercial rivaroxaban-specific

11:02  10  calibrators or controls available for use in the United States?

11:03  11  A.   True.

11:03  12  Q.   True.  All right.  Now I'd like to talk about Factor Xa

11:03  13  assay.

11:03  14  A.   Yes, sir.

11:03  15  Q.   All right.  I think you talked about that a little bit

11:03  16  with Mr. Birchfield.

11:03  17  A.   Very little.

11:03  18  Q.   Very little.  Okay.

11:03  19        Currently, there are no FDA-approved commercial

11:03  20  rivaroxaban-specific calibrators or controls available for use

11:03  21  in the United States, and that includes the Factor Xa assay?

11:03  22  A.   Well, again, I'm not sure that the FDA needs to validate a

11:03  23  particular kit for measuring anti-Xa, but, again, that's a

11:03  24  regulatory issue.  But certainly there are no FDA-approved

11:03  25  calibrators and controls.

ROBERT GOSSELIN - CROSS

| | | |
|---|---|---|
| 11:03 | 1 | **Q.**   All right.  Fair enough. |
| 11:03 | 2 | You have used a Factor Xa assay in your work at |
| 11:03 | 3 | UC Davis; correct? |
| 11:03 | 4 | **A.**   Yes, sir. |
| 11:03 | 5 | **Q.**   And you've used that because doctors at UC Davis Medical |
| 11:03 | 6 | System, they prescribe Xarelto to their patients? |
| 11:04 | 7 | **A.**   Doctors and pharmacists, yes, sir. |
| 11:04 | 8 | **Q.**   And you knew that, and you never told them not to, did |
| 11:04 | 9 | you? |
| 11:04 | 10 | **A.**   No, sir. |
| 11:04 | 11 | **Q.**   All right.  So you know that at times blood samples for |
| 11:04 | 12 | patients on rivaroxaban have come into your laboratory; true? |
| 11:04 | 13 | **A.**   Yes, sir. |
| 11:04 | 14 | **Q.**   And because you didn't have Neoplastin PT, you didn't use |
| 11:04 | 15 | Neoplastin PT even once on those samples; correct? |
| 11:04 | 16 | **A.**   Yes, sir. |
| 11:04 | 17 | **Q.**   You did use a research only -- research use only Factor Xa |
| 11:04 | 18 | assay; correct? |
| 11:04 | 19 | **A.**   No, sir. |
| 11:04 | 20 | **Q.**   You did use a research-only -- research-use-only Factor Xa |
| 11:04 | 21 | assay; correct? |
| 11:04 | 22 | **A.**   No, sir. |
| 11:04 | 23 | **Q.**   You used the Factor Xa assay? |
| 11:04 | 24 | **A.**   I used an FDA-approved Factor Xa assay. |
| 11:04 | 25 | **Q.**   But not for Xarelto.  The FDA has never approved a |

ROBERT GOSSELIN - CROSS

1  Factor Xa assay for Xarelto, as of today?
2  **A.**   Again, I'm not sure of the regulatory issues, if it needs
3  to be approved specifically for Xarelto or any anti-Xa because
4  the test does measure anti-Xa.  I'm not sure of the approval
5  process for each kind of drug.  I'm not sure of the regulatory
6  issues.
7  **Q.**   I don't want to push you beyond where you're comfortable,
8  but let me ask you this:  You're familiar with a company called
9  Stago Diagnostics; right?
10 **A.**   It's pronounced "Stago," yes, sir.  Diagnostica Stago.
11 **Q.**   It sounds like a foreign company; is that right?
12 **A.**   Their home base is in France.
13 **Q.**   Okay.  Diagnostica Stago.  Did I get it right that time?
14 **A.**   Yes, sir.
15 **Q.**   So they have tried -- that company has been trying to get
16 the FDA to approve a Factor Xa assay for use in the United
17 States; right?
18 **A.**   Yes, sir.
19 **Q.**   They have failed.  The FDA has not approved that Factor Xa
20 assay for use in this country?
21 **A.**   That is a correct statement, if I get to expand why.
22 **Q.**   Absolutely.  Tell us why.
23 **A.**   Well, the FDA at the workshop, they kind of explained why
24 there's a difficult process for approval of these, is that the
25 FDA now wants to have not only the intended use of the assay,

OFFICIAL REALTIME TRANSCRIPT

```
 1                  UNITED STATES DISTRICT COURT

 2                SOUTHERN DISTRICT OF MISSISSIPPI

 3

 4

 5   IN RE:  XARELTO            *
     (RIVAROXABAN) PRODUCTS     *
 6   LIABILITY LITIGATION       *
                                *
 7   THIS DOCUMENT RELATES TO:  *   Docket No.: 14-MD-2592
                                *   Section "L"
 8   Dora Mingo, et al. v.      *   Jackson, Mississippi
     Janssen Research &         *   August 10, 2017
 9   Development, LLC, et. al., *
     Case No.: 15-CV-3469       *
10   * * * * * * * * * * * * * * *

11              VOLUME IV - AFTERNOON SESSION
             TRANSCRIPT OF JURY TRIAL PROCEEDINGS
12          BEFORE THE HONORABLE ELDON E. FALLON
                UNITED STATES DISTRICT JUDGE
13

14   APPEARANCES:

15
     For the Plaintiffs'
16   Liaison Counsel:            Gainsburg Benjamin David
                                   Meunier & Warshauer
17                               BY:  GERALD E. MEUNIER, ESQ.
                                 2800 Energy Centre
18                               1100 Poydras Street
                                 New Orleans, Louisiana 70163
19

20
     For the Plaintiffs:         Beasley Allen
21                               BY:  ANDY BIRCHFIELD, ESQ.
                                 P.O. Box 4160
22                               Montgomery, Alabama 36103

23

24

25
```

**OFFICIAL TRANSCRIPT**

```
1   APPEARANCES:

2                                  Gainsburg Benjamin Davis
                                      Meunier & Warshauer
3                                  BY:   WALTER C. MORRISON, IV, ESQ.
                                   240 Trace Colony Park Drive
4                                  Suite 100
                                   Ridgeland, Mississippi 39157
5

6
                                   Goza Honnold
7                                  BY:   BRADLEY D. HONNOLD, ESQ.
                                   11181 Overbrook Road, Suite 200
8                                  Leawood, Kansas 66211

9
                                   The Lambert Firm
10                                 BY:   EMILY JEFFCOTT, ESQ.
                                   701 Magazine Street
11                                 New Orleans, Louisiana 70130

12
    For the Defendant Bayer
13  HealthCare Pharmaceuticals
    Inc. and Bayer Pharma AG:      Mitchell, Williams, Selig, Gates &
14                                    Woodyard, P.L.L.C.
                                   BY:   LYN P. PRUITT, ESQ.
15                                 425 W. Capitol Avenue, Suite 1800
                                   Little Rock, Arkansas 72201
16

17
                                   Watkins & Eager, PLCC
18                                 BY:   WALTER T. JOHNSON, ESQ.
                                   400 East Capitol Street
19                                 Jackson, Mississippi 39201

20

21  For Janssen Pharmaceuticals,
    Inc. and Janssen Research &
22  Development, LLC:              Barrasso Usdin Kupperman Freeman &
                                      Sarver, LLC
23                                 BY:   RICHARD E. SARVER, ESQ.
                                   909 Poydras Street, 24th Floor
24                                 New Orleans, Louisiana 70112

25
```

**OFFICIAL TRANSCRIPT**

1

2

3    Official Court Reporter:        Tana J. Hess, CRR, RMR
                                      500 Poydras Street
                                      Room B275
4                                     New Orleans, Louisiana 70130
                                      (504) 589-7781
5

6
     Proceedings recorded by mechanical stenography using
7    computer-aided transcription software.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1:34PM  1    excused, sir.

1:34PM  2                        (Witness excused.)

1:35PM  3              THE COURT:  Call your next witness.  Thank you.

1:35PM  4              MR. BIRCHFIELD:  Your Honor, Mr. Honnold will be

1:35PM  5    taking the next witness.  This will be by satellite.  There's

1:35PM  6    one issue that we need to discuss.

1:35PM  7              THE COURT:  Okay.

1:35PM  8              (Whereupon the following proceedings were held at the

1:35PM  9              bench out of the hearing of the jury:)

1:40PM  10             THE COURT:  This is Dr. Wu?

1:40PM  11             MR. SARVER:  This is Dr. Wu.

1:40PM  12             MR. BIRCHFIELD:  Your Honor, in the -- the Court

1:40PM  13   sustained our Motion in Limine about the FDA-approved

1:40PM  14   Neoplastin.  We have raised that issue in -- it was part of the

1:40PM  15   Boudreaux trial.  We briefed that issue in the Orr trial, and

1:40PM  16   you granted it.  It's a Motion in Limine that was sustained in

1:40PM  17   this case, and Mr. Sarver went specifically there in regards to

1:40PM  18   the FDA-approved Neoplastin, and so we would ask the Court

1:40PM  19   to -- to give an instruction to the jury regarding the lack of

1:41PM  20   necessity of the FDA approval for Neoplastin PT.  I mean,

1:41PM  21   this -- this is --

1:41PM  22             MR. SARVER:  We absolutely did.  We did because he

1:41PM  23   opened the door wide open, walked through it with a Mack truck.

1:41PM  24             THE COURT:  No.  I will at the appropriate time; just

1:41PM  25   say it.

**OFFICIAL TRANSCRIPT**

| | | |
|---|---|---|
| 1:41PM | 1 | **MR. SARVER:** Yes, sir. Thank you. |
| 1:41PM | 2 | **THE COURT:** Andy, why don't you all just request I |
| 1:41PM | 3 | give an instruction? |
| 1:41PM | 4 | **MR. SARVER:** Yes. |
| 1:37PM | 5 | (Whereupon the following proceedings were held in |
| 1:37PM | 6 | open court in the presence and hearing of the jury:) |
| 1:39PM | 7 | **THE COURT:** All right. Let's take a five-minute |
| 1:39PM | 8 | break, and we'll come back. |
| 1:39PM | 9 | **THE DEPUTY CLERK:** All rise. |
| 1:39PM | 10 | (Whereupon the jury was excused from the courtroom.) |
| 1:46PM | 11 | (Recess.) |
| 1:46PM | 12 | (Whereupon the jury entered the courtroom.) |
| 1:46PM | 13 | **THE COURT:** Be seated, please. |
| 1:46PM | 14 | Call your next witness. |
| 1:46PM | 15 | **MR. BIRCHFIELD:** Your Honor, the next witness is |
| 1:46PM | 16 | Dr. Wu, and Mr. Honnold will be examining him. |
| 1:46PM | 17 | Before -- before the witness is sworn in, we |
| 1:46PM | 18 | would ask the Court to give an instruction regarding the |
| 1:47PM | 19 | Neoplastin PT and the FDA approval. |
| 1:47PM | 20 | **THE COURT:** Well, with regard to -- |
| 1:47PM | 21 | **MR. SARVER:** Your Honor, we object to the language |
| 1:47PM | 22 | that is proposed by the plaintiffs. |
| 1:47PM | 23 | **THE COURT:** I don't know what language they proposed. |
| 1:47PM | 24 | **MR. SARVER:** Okay. Thanks, Judge. Sorry. |
| 1:47PM | 25 | **THE COURT:** With regard to -- we've heard the FDA |

**OFFICIAL TRANSCRIPT**

1:47PM  1    approval with regard to labels, and you should know that the

1:47PM  2    defendant at all times has the responsibility of providing an

1:47PM  3    adequate label to warn and instruct treaters on prescription

1:47PM  4    drugs.  In fact, any action, or actually inaction, on the part

1:47PM  5    of the FDA, though relevant, does not foreclose a claim under

1:47PM  6    Mississippi law.  In other words, it's relevant, but not

1:47PM  7    dispositive.

1:47PM  8                    Let's proceed.

1:47PM  9             **MR. HONNOLD:**  As Mr. Birchfield said, plaintiffs at

1:48PM  10   this time call Dr. Shujian Wu.

1:48PM  11                    Dr. Wu, good afternoon.

1:48PM  12            **THE DEPUTY CLERK:**  I need to swear him in.

1:48PM  13            **THE COURT:**  First --

1:48PM  14            **THE DEPUTY CLERK:**  Would you raise your right hand,

1:48PM  15   Dr. Wu?

1:48PM  16                    **(Witness sworn.)**

9:10AM  17            **THE DEPUTY CLERK:**  Please state and spell your name

9:10AM  18   for the record.

1:48PM  19            **THE WITNESS:**  My name is Shujian Wu.

1:48PM  20            **THE DEPUTY CLERK:**  Could you ask him to spell it,

1:48PM  21   Brad?

1:48PM  22                    **SHUJIAN WU, M.D., Ph.D.,**

1:48PM  23   a witness called on behalf of the Plaintiff, being first duly

1:48PM  24   sworn, was examined and testified as follows:

       25                    **DIRECT EXAMINATION**

**OFFICIAL TRANSCRIPT**

1    UNITED STATES DISTRICT COURT

2    SOUTHERN DISTRICT OF MISSISSIPPI

3

4

5    IN RE:  XARELTO              *
     (RIVAROXABAN) PRODUCTS       *
6    LIABILITY LITIGATION         *
                                  *
7    THIS DOCUMENT RELATES TO:    *   Docket No.: 14-MD-2592
                                  *   Section "L"
8    *Dora Mingo, et al. v.*      *   Jackson, Mississippi
     *Janssen Research &*         *   August 11, 2017
9    *Development, LLC, et. al.,*  *
     Case No.: 15-CV-3469         *
10   * * * * * * * * * * * * * * * *

11              VOLUME V - AFTERNOON SESSION
            TRANSCRIPT OF JURY TRIAL PROCEEDINGS
12         BEFORE THE HONORABLE ELDON E. FALLON
               UNITED STATES DISTRICT JUDGE
13

14   APPEARANCES:

15
     For the Plaintiffs'
16   Liaison Counsel:            Gainsburg Benjamin David
                                   Meunier & Warshauer
17                               BY:  GERALD E. MEUNIER, ESQ.
                                 2800 Energy Centre
18                               1100 Poydras Street
                                 New Orleans, Louisiana 70163
19

20
     For the Plaintiffs:        Beasley Allen
21                              BY:  ANDY BIRCHFIELD, ESQ.
                                P.O. Box 4160
22                              Montgomery, Alabama 36103

23

24

25

                        *OFFICIAL TRANSCRIPT*

```
1  APPEARANCES:

2                          Gainsburg Benjamin Davis
                             Meunier & Warshauer
3                          BY:  WALTER C. MORRISON, IV, ESQ.
                           240 Trace Colony Park Drive
4                          Suite 100
                           Ridgeland, Mississippi 39157
5

6                          Goza Honnold
7                          BY:  BRADLEY D. HONNOLD, ESQ.
                           11181 Overbrook Road, Suite 200
8                          Leawood, Kansas 66211

9                          The Lambert Firm
10                         BY:  EMILY JEFFCOTT, ESQ.
                           701 Magazine Street
11                         New Orleans, Louisiana 70130

12
    For the Defendant Bayer
13  HealthCare Pharmaceuticals
    Inc. and Bayer Pharma AG:  Mitchell, Williams, Selig, Gates &
14                               Woodyard, P.L.L.C.
                           BY:  LYN P. PRUITT, ESQ.
15                         425 W. Capitol Avenue, Suite 1800
                           Little Rock, Arkansas 72201
16

17                         Watkins & Eager, PLCC
18                         BY:  WALTER T. JOHNSON, ESQ.
                           400 East Capitol Street
19                         Jackson, Mississippi 39201

20

21  For Janssen Pharmaceuticals,
    Inc. and Janssen Research &
22  Development, LLC:          Barrasso Usdin Kupperman Freeman &
                                 Sarver, LLC
23                         BY:  RICHARD E. SARVER, ESQ.
                           909 Poydras Street, 24th Floor
24                         New Orleans, Louisiana 70112

25
```

*OFFICIAL TRANSCRIPT*

1

2

3   Official Court Reporter:        Tana J. Hess, CRR, RMR
                                    500 Poydras Street
                                    Room B275
4                                   New Orleans, Louisiana 70130
                                    (504) 589-7781
5

6
    Proceedings recorded by mechanical stenography using
7   computer-aided transcription software.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1178

| | | |
|---|---|---|
| 1:46PM | 1 | **A.**   Right.   That was deleted. |
| 1:46PM | 2 | **Q.**   That was deleted, and it was deleted by the FDA; correct? |
| 1:46PM | 3 | **A.**   It's hard to know -- |
| 1:46PM | 4 |     **MR. HONNOLD:**  Objection, Your Honor.  There's no |
| 1:46PM | 5 | foundation to who did what here. |
| 1:46PM | 6 |     **THE COURT:**  Okay.  She doesn't know. |
| 1:47PM | 7 |     **MS. PRUITT:**  Your Honor, I was just asking her. |
| 1:47PM | 8 | **A.**   It's deleted. |
| 1:47PM | 9 | **BY MS. PRUITT:** |
| 1:47PM | 10 | **Q.**   Okay.? |
| 1:47PM | 11 | **A.**   I know that the company had proposed that statement, and |
| 1:47PM | 12 | it's now deleted.  So it's saying that monitoring is required |
| 1:47PM | 13 | for Xarelto. |
| 1:47PM | 14 | **Q.**   Well, and you also know that this 6100 is what the FDA |
| 1:47PM | 15 | sent back to Janssen; correct? |
| 1:47PM | 16 |     **MR. HONNOLD:**  Your Honor, same objection.  There's no |
| 1:47PM | 17 | foundation as to which entity, company or FDA, did what.  There |
| 1:47PM | 18 | is no -- |
| 1:47PM | 19 |     **THE COURT:**  Yeah, this witness may not be able to |
| 1:47PM | 20 | answer that.  I mean, she doesn't know. |
| 1:47PM | 21 |     You know, if you want to show her this, but this |
| 1:47PM | 22 | witness doesn't know who made it or what they did or why they |
| 1:47PM | 23 | did it. |
| 1:47PM | 24 |     Or do you know, ma'am? |
| 1:47PM | 25 |     **THE WITNESS:**  No, I don't know.  There's been nothing |

1:47PM  1   stated by the FDA to say why any of this was deleted or what

1:47PM  2   occurred with this.  It's not consistent with any of the

1:47PM  3   documents that FDA has published on their websites.  So it is

1:47PM  4   deleted.  There are statements deleted, but who did it and when

1:47PM  5   and why, there is no record of that.

1:48PM  6   BY MS. PRUITT:

1:48PM  7   Q.   No record that you've seen?

1:48PM  8   A.   I've looked at all the types of documents I can see.  I've

1:48PM  9   looked at all the documents on the website.  I've looked at all

1:48PM  10  the documents around this issue as to who deleted what lines,

1:48PM  11  and it's not a clear tracking as to who deleted it.

1:48PM  12          This is not the typical way that you would know who

1:48PM  13  deleted what.  So there are deletions, but who deleted them and

1:48PM  14  why, I don't know.  And they're not -- the deletions are not

1:48PM  15  consistent with anything the FDA subsequently said.  In fact,

1:48PM  16  it contradicts what FDA has said in other documents.

1:48PM  17  Q.   Will you turn to page 3 of that document, please, ma'am?

1:48PM  18  A.   Yes, ma'am.

1:48PM  19  Q.   Keep your finger there, because I'm going to go back.

1:48PM  20  A.   Right.

1:48PM  21  Q.   Page 3 is an email from Tyree Newman.

1:48PM  22          Tyree Newman is the regulatory project manager for

1:48PM  23  the Food and Drug Administration; right?

1:48PM  24  A.   Right.

1:48PM  25  Q.   And it says, "Good morning, Andrea.  Please see the

*OFFICIAL TRANSCRIPT*

1:48PM 1   attached redlined version of the label regarding NDA 22-406 for

1:48PM 2   your review and comments.  Please accept changes you agree to.

1:49PM 3   For changes you do not, keep in track changes."

1:49PM 4         Did I read that correctly?

1:49PM 5   A.   Right.  But this document doesn't make it clear when

1:49PM 6   things got deleted and who.  Typically, the document will look

1:49PM 7   different and you will have who deleted what and why, but this

1:49PM 8   document is not the type that you can actually know when the --

1:49PM 9   there are deletions, and I'm sure that Tyree Newman is from the

1:49PM 10  FDA.  But when they were made, you can't be sure from this

1:49PM 11  document.

1:49PM 12        **MS. PRUITT:**  Let's go back to page 12, Joshu, and

1:49PM 13  pull up that second deleted section please, the second long

1:49PM 14  deleted box.

1:49PM 15        **THE WITNESS:**  Uh-huh.

1:49PM 16  **BY MS. PRUITT:**

1:49PM 17  Q.   "The relationship between PT and rivaroxaban plasma

1:49PM 18  concentration is linear and closely correlated."

1:49PM 19        That was deleted; correct?

1:49PM 20  A.   By someone, yes, ma'am.

1:49PM 21  Q.   "If assessment of the pharmacodynamic effect of

1:49PM 22  rivaroxaban is considered necessary in individual cases, PT

1:49PM 23  measured in seconds is recommended."

1:50PM 24        That was deleted; isn't that correct?

1:50PM 25  A.   By someone, yes, ma'am.

| | | |
|---|---|---|
| 1:50PM | 1 | **MS. PRUITT:**  Your Honor, if we would move in Defense |
| 1:50PM | 2 | Exhibit 6100. |
| 1:50PM | 3 | **A.**   But then -- |
| 1:50PM | 4 | **THE COURT:**  Wait, wait.  Please give us a moment. |
| 1:50PM | 5 | Let me deal with this first. |
| 1:50PM | 6 | The -- the material passes the 901 -- it's |
| 1:50PM | 7 | authenticated.  It looks -- it looks to me what it appears to |
| 1:50PM | 8 | be.  So I'll admit it. |
| 1:50PM | 9 | But insofar as this witness's testimony |
| 1:50PM | 10 | regarding it, she doesn't authenticate it.  The document is |
| 1:50PM | 11 | authenticated because it appears to be what it is, a US Food |
| 1:50PM | 12 | and Drug Administration certificate on it.  But who did what, |
| 1:50PM | 13 | this witness is not able to testify to. |
| 1:50PM | 14 | I'll admit the document, though. |
| 1:50PM | 15 | **MS. PRUITT:**  Thank you, Your Honor. |
| 1:50PM | 16 | **THE COURT:**  Uh-huh. |
| 1:50PM | 17 | BY MS. PRUITT: |
| 1:50PM | 18 | **Q.**   Now, you have given depositions in this case prior; is |
| 1:51PM | 19 | that correct? |
| 1:51PM | 20 | **A.**   Yes, ma'am. |
| 1:51PM | 21 | **Q.**   And were you asked about that language in Section 12.2 |
| 1:51PM | 22 | being stricken?  Were you asked? |
| 1:51PM | 23 | **A.**   Yes, I'm aware that it was stricken. |
| 1:51PM | 24 | **Q.**   Okay.  And are you aware -- do you also remember that you |
| 1:51PM | 25 | admitted that the FDA is the one that crossed it out? |

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF MISSISSIPPI


IN RE:  XARELTO (RIVAROXABAN)  *
PRODUCTS LIABILITY LITIGATION  *        Docket No. 14-MD-2592
                               *
                               *        Section L
THIS DOCUMENT RELATES TO:      *
                               *        Jackson, Mississippi
*Dora Mingo, et al.*           *
*v. Janssen Research &*         *        August 16, 2017
*Development, LLC, et. al.,*    *
Case No. 15-CV-3469            *
                               *
*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *


                    VOLUME VIII - AFTERNOON SESSION
                    TRANSCRIPT OF JURY TRIAL BEFORE
                    THE HONORABLE ELDON E. FALLON
                    UNITED STATES DISTRICT JUDGE


<u>Appearances</u>:


For the Plaintiffs:          Beasley Allen Crow Methvin
                               Portis & Miles, PC
                             BY:  ANDY BIRCHFIELD, ESQ.
                             Post Office Box 4160
                             Montgomery, Alabama 36103


For the Plaintiffs:          Gainsburgh Benjamin David
                               Meunier & Warshauer, LLC
                             BY:  GERALD E. MEUNIER, ESQ.
                             1100 Poydras Street, Suite 2800
                             New Orleans, Louisiana 70163


For the Plaintiffs:          Gainsburgh Benjamin David
                               Meunier & Warshauer, LLC
                             BY:  WALTER C. MORRISON IV, ESQ.
                             240 Trace Colony Park Drive
                             Suite 100
                             Ridgeland, Mississippi 39157

Appearances:

| | |
|---|---|
| For the Plaintiffs: | Goza & Honnold, LLC<br>BY:   BRADLEY D. HONNOLD, ESQ.<br>11181 Overbrook Road, Suite 200<br>Leawood, Kansas 66211 |
| For the Plaintiffs: | The Lambert Firm, PLC<br>BY:   EMILY C. JEFFCOTT, ESQ.<br>701 Magazine Street<br>New Orleans, Louisiana 70130 |
| For the Plaintiffs: | Levin Sedran & Berman<br>BY:   FRED S. LONGER, ESQ.<br>510 Walnut Street, Suite 500<br>Philadelphia, Pennsylvania 19106 |
| For Bayer Healthcare<br>Pharmaceuticals, Inc.<br>and Bayer Pharma AG: | Mitchell Williams Selig Gates<br>  & Woodyard, PLLC<br>BY:   LYN P. PRUITT, ESQ.<br>425 W. Capitol Avenue<br>Suite 1800<br>Little Rock, Arkansas 72201 |
| For Bayer Healthcare<br>Pharmaceuticals, Inc.<br>and Bayer Pharma AG: | Watkins & Eager, PLLC<br>BY:   WALTER T. JOHNSON, ESQ.<br>400 East Capitol Street<br>Jackson, Mississippi 39201 |
| For Bayer Healthcare<br>Pharmaceuticals, Inc.<br>and Bayer Pharma AG: | Bradley Arant Boult Cummings<br>BY:   LINDSEY C. BONEY IV, ESQ.<br>1819 5th Avenue N<br>Birmingham, Alabama 35203 |
| For Janssen Pharmaceuticals,<br>Inc. and Janssen Research<br>& Development, LLC: | Barrasso Usdin Kupperman Freeman<br>  & Sarver, LLC<br>BY:   RICHARD E. SARVER, ESQ.<br>909 Poydras Street, Suite 2400<br>New Orleans, Louisiana 70112 |

Official Court Reporter:          Toni Doyle Tusa, CCR, FCRR
                                  500 Poydras Street, Room B-275
                                  New Orleans, Louisiana 70130
                                  (504) 589-7778


Proceedings recorded by mechanical stenography, transcript
produced by computer.

01:45

1    going to be talking to them about today.

2    **A.**    So the biggest thing that we will cover, hopefully in not

3    too much time, is talk about the fact that Ms. Mingo had a

4    blood clot or a DVT of her leg and what that means.

5          And the fact that she needed a blood thinner for that

6    blood clot, we can talk about why that's important.  We'll talk

7    about the one that was chosen for her was Xarelto and that it

8    worked for her.

9          We will show you some places in the medical record

10    where it worked for her because the thing we are trying to do

11    when we are treating that blood clot is prevent a clot going to

12    the lungs or to the heart, becoming deadly, preventing it from

13    becoming bigger in the leg, or preventing some other

14    complications that could happen in the leg after a DVT.

15          And really talk about the fact that PT is not a

16    useful test for monitoring Xarelto.  It's useful -- PT/INR is

17    useful when you measure Coumadin or are using Coumadin -- we

18    can talk about that -- but it's not useful when you are

19    treating patients with Xarelto.  It's not indicated, it's not

20    recommended or required by the FDA or any of our guiding

21    authorities that talk about and publish information for

22    treating patients with blood thinners.

23          And the fact she unfortunately had a GI bleed, so

24    bleeding from an ulcer, and the fact that Xarelto did not cause

25    that ulcer.  She had some other risk factors for it -- but that

DEMONDES HAYNES - DIRECT

03:13   1   ulcer?

2   A.   11 minutes from start to stop time is what it said.

3   Q.   Do you recall the size of the ulcer that Dr. Keith

4   expressed or --

5   A.   I would have to look at it, but I'm almost certain it was

6   6 millimeters.

7   Q.   6 millimeters.  Thank you.

8        Now, I want to wrap up with a few questions.  Is

9   there a correlation between PT -- plasma correlation [sic] and

10  PT?

11  A.   Generally there's a correlation with concentration and PT,

12  but there's not a correlation with the PT test and bleeding of

13  patients.

14  Q.   Describe why you say there's not a correlation between the

15  PT test and bleeding in patients.

16  A.   Specifically from the EINSTEIN-DVT study, they looked at

17  that.  They looked at the PT levels at various times.  Probably

18  one of the more important ones or most important is the peak

19  level when it says two to four hours after dosing the drug.

20  They look to see if there's a correlation of patients bleeding

21  by different quartiles.  There was no correlation, meaning the

22  higher the PT, the worst bleeding.  That was not shown in any

23  of the EINSTEIN data when looking at the correct patient set.

24  Q.   If you as a physician relied on the PT value in a patient

25  taking Xarelto, what could happen?

03:14

1  **A.**   That could be dangerous.  If I look at a PT value and say

2  that it's low and that I can take this patient to surgery, and

3  we know there's data that shows a normal PT or a PT within the

4  normal range, still have drug on board, then they could bleed.

5          If you make the assumption that the PT was too high

6  and you decreased their dose, they could really be at an

7  increased risk of having these life-threatening blood clots we

8  talk about, which is the whole reason we are treating them in

9  the first place.

10 **Q.**   Did Ms. Mingo, in your opinion, have an active clot that

11 put her at risk of a life-threatening pulmonary embolism?

12 **A.**   Yes, she did.

13 **Q.**   Was she also at risk of the clot growing and getting

14 worse?

15 **A.**   Yes, she was.

16 **Q.**   Did she need to be treated with an anticoagulant

17 medication?

18 **A.**   Definitely, yes.

19 **Q.**   Would you prescribe Xarelto for a patient like Ms. Mingo

20 if she presented to you today?

21 **A.**   I would indeed.

22 **Q.**   In your opinion, Doctor, would the same thing have

23 happened with her oozing ulcer if she had been prescribed or

24 taken any other anticoagulant?

25 **A.**   Yes, it would.  Any blood thinner, she would have had the

08:15:59

1                   UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
2

3      ****************************************************************

4      IN RE: XARELTO (RIVAROXABAN)
       PRODUCTS LIABILITY LITIGATION
5
                              CIVIL ACTION NO. 14-MD-2592 "L"
6                             JACKSON, MISSISSIPPI
                              THURSDAY, AUGUST 17, 2017, 8:30 A.M.
7

8      THIS DOCUMENT RELATES TO:

9      DOCKET NO. 14-MD-2592
       *DORA MINGO, ET AL. V.*
10     *JANSSEN RESEARCH & DEVELOPMENT,*
       *LLC, ET. AL.,*
11     CASE NO. 15-CV-3469

12     ****************************************************************

13
                        **DAY IX  MORNING SESSION**
14               TRANSCRIPT OF JURY TRIAL PROCEEDINGS
               HEARD BEFORE THE HONORABLE ELDON E. FALLON
15                  UNITED STATES DISTRICT JUDGE

16

17     APPEARANCES:

18
       FOR THE PLAINTIFFS'
19     LIAISON COUNSEL:          GAINSBURGH BENJAMIN DAVID
                                 MEUNIER & WARSHAUER
20                               BY:  GERALD E. MEUNIER, ESQ.
                                 2800 ENERGY CENTRE
21                               1100 POYDRAS STREET
                                 NEW ORLEANS, LOUISIANA  70163
22

23
       FOR THE PLAINTIFFS:       BEASLEY ALLEN
24                               BY:  ANDY BIRCHFIELD, ESQ.
                                 P.O. BOX 4160
25                               MONTGOMERY, ALABAMA  36103

                        ***OFFICIAL TRANSCRIPT***

1    APPEARANCES CONTINUED:

2

3                                    GAINSBURGH BENJAMIN DAVIS
                                     MEUNIER & WARSHAUER
4                                    BY:  WALTER C. MORRISON, IV, ESQ.
                                     240 TRACE COLONY PARK DRIVE
5                                    SUITE 100
                                     RIDGELAND, MISSISSIPPI  39157

6

7

                                     GOZA HONNOLD
8                                    BY:  BRADLEY D. HONNOLD, ESQ.
                                     11181 OVERBROOK ROAD, SUITE 200
9                                    LEAWOOD, KANSAS  66211

10

11                                   THE LAMBERT FIRM
                                     BY:  EMILY JEFFCOTT, ESQ.
12                                   701 MAGAZINE STREET
                                     NEW ORLEANS, LOUISIANA  70130

13

14

                                     LEVIN FISHBEIN SEDRAN & BERMAN
15                                   BY:  FREDERICK S. LONGER, ESQ.
                                     510 WALNUT STREET
16                                   SUITE 500
                                     PHILADELPHIA, PENNSYLVANIA  19106

17

18

     FOR THE DEFENDANT BAYER
19   HEALTHCARE PHARMACEUTICALS
     INC. AND BAYER PHARMA AG:  MITCHELL WILLIAMS SELIG GATES &
20                               WOODYARD, P.L.L.C.
                                 BY:  LYN P. PRUITT, ESQ.
21                               425 W. CAPITOL AVENUE, SUITE 1800
                                 LITTLE ROCK, ARKANSAS  72201

22

23

                                     WATKINS & EAGER, PLCC
24                                   BY:  WALTER T. JOHNSON, ESQ.
                                     400 EAST CAPITOL STREET
25                                   JACKSON, MISSISSIPPI  39201

*OFFICIAL TRANSCRIPT*

1  APPEARANCES CONTINUED:

2

3                              BRADLEY ARANT BOULT CUMMINGS, LLP
                               BY:  LINDSEY C. BONEY, IV, ESQ.
4                              ONE FEDERAL PLACE
                               1819 FIFTH AVENUE NORTH
5                              BIRMINGHAM, ALABAMA  35203

6

7  FOR JANSSEN PHARMACEUTICALS,
   INC. AND JANSSEN RESEARCH &
8  DEVELOPMENT, LLC:            BARRASSO USDIN KUPPERMAN FREEMAN &
                                SARVER, LLC
9                              BY:  RICHARD E. SARVER, ESQ.
                               909 POYDRAS STREET, 24TH FLOOR
10                             NEW ORLEANS, LOUISIANA  70112

11

12 OFFICIAL COURT REPORTER:     CATHY PEPPER, CRR, RMR, CCR
                                CERTIFIED REALTIME REPORTER
13                              REGISTERED MERIT REPORTER
                                500 POYDRAS STREET, ROOM B-275
14                              NEW ORLEANS, LA  70130
                                (504) 589-7779
15                              Cathy_Pepper@laed.uscourts.gov

16

17 PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT
   PRODUCED BY COMPUTER-AIDED TRANSCRIPTION.

18

19

20

21

22

23

24

25

                         *OFFICIAL TRANSCRIPT*

09:35:45  1    A.    No.

09:35:46  2    Q.    Do your patients do well without that monitoring?

09:35:51  3    A.    Yes.

09:35:51  4    Q.    Do you monitor your patients on Lovenox with the PT?

09:35:56  5    A.    No.

09:35:57  6    Q.    Do they do well?

09:35:58  7    A.    Yes.  And that's been true for 20 years, this idea of not

09:36:02  8    having to monitor certain drugs.

09:36:04  9    Q.    And in terms of the overall -- you prescribe a lot of

09:36:07 10    drugs?

09:36:07 11    A.    Yes.

09:36:08 12    Q.    What percentage of drugs, in your experience, actually

09:36:12 13    require monitoring?

09:36:13 14    A.    Very few drugs require checking levels to adjust for

09:36:19 15    therapy.

09:36:19 16    Q.    Would using the PT test with the Neoplastin reagent be

09:36:26 17    helpful to you as a practicing clinician for your patients on

09:36:31 18    Xarelto?

09:36:32 19    A.    Again, that test is not helpful for treating patients on

09:36:37 20    DOACs because of what I described.  You cannot use that number

09:36:41 21    to make any assumptions about bleeding.  You can't use that

09:36:44 22    number to determine exactly what anticoagulant effect is

09:36:48 23    happening in the body; therefore, you can't use that number to

09:36:51 24    adjust doses.

09:36:53 25                And if you adjust downwards because of concern over a

*OFFICIAL TRANSCRIPT*

09:36:57  1   number that doesn't mean anything, you're putting people at

09:37:00  2   risk for extension of their blood clot, pulmonary embolism,

09:37:05  3   stroke.

09:37:05  4   Q.   Could relying upon the PT test for patients using Xarelto

09:37:11  5   actually harm patients?

09:37:13  6   A.   Yes.

09:37:13  7   Q.   Has there ever been any clinical studies to determine

09:37:20  8   whether or not that reliance would work?

09:37:23  9   A.   No.   Because the clinical trials tested a dose that was

09:37:27 10   found to be very effective and safe.   There has not been

09:37:32 11   studies to change that dose.

09:37:33 12   Q.   Have you, in your practice, reviewed the package insert,

09:37:39 13   the label for Xarelto?

09:37:40 14   A.   Yes.

09:37:40 15   Q.   Does it tell you what you need to know as a practicing

09:37:43 16   physician in treating your patients?

09:37:45 17   A.   Yes, it does.

09:37:47 18   Q.   And have your patients on Xarelto done well?

09:37:49 19   A.   Yes.

09:37:50 20   Q.   Have your patients on the other NOACs done well?

09:37:53 21   A.   Yes.

09:37:53 22   Q.   And have you monitored any of them with PT?

09:37:57 23   A.   No.

09:37:57 24   Q.   I would like to talk for just a minute --

09:38:02 25        MR. SARVER:   Your Honor, may I proceed for a little bit

*OFFICIAL TRANSCRIPT*

10:18:03 1   Q.   Are you familiar with the Factor Xa assay as it pertains

10:18:09 2   to measuring Xarelto?

10:18:10 3   A.   Yes.  I know that there is a literature on that.

10:18:14 4   Q.   Do you agree that the Factor A (verbatim) assay is a

10:18:21 5   reliable way to measure the plasma concentration of Xarelto?

10:18:26 6   A.   The Factor Xa assay may be a reliable way, but it has to

10:18:32 7   be specifically calibrated for Xarelto.  I'm sure there are

10:18:35 8   some labs that can use it in a similar way to the way the

10:18:43 9   Neoplastin PT is used.

10:18:44 10   Q.   So let's take this one step at a time.  Is the Factor Xa

10:18:50 11   assay, if it's calibrated specifically for Xarelto, is it a

10:18:54 12   reliable way to measure the plasma concentration of Xarelto?

10:18:58 13   A.   There are some investigators who have demonstrated that or

10:19:03 14   expressed that opinion.

10:19:03 15   Q.   But, Dr. Herrin, you -- you're an expert in this case on

10:19:08 16   the issue of measuring.  So is it your opinion, is it your

10:19:13 17   opinion that the Factor Xa assay is a reliable way to measure

10:19:18 18   the plasma concentration of Xarelto?

10:19:22 19   A.   I don't have an opinion because I don't use that test.

10:19:25 20   Q.   So Factor Xa may be reliable?

10:19:45 21   A.   For measuring plasma concentration.  I've certainly seen

10:19:46 22   some researchers say that.

10:19:48 23   Q.   For measuring plasma concentration.  I'm abbreviating

10:19:54 24   plasma concentration PC.

10:19:56 25         But, again, it's your position that the Factor Xa

*OFFICIAL TRANSCRIPT*

10:20:00  1   assay would be meaningless for Xarelto because there is no

10:20:03  2   correlation between plasma concentration and bleeding risk in

10:20:08  3   your opinion?

10:20:08  4   A.    That's not been well demonstrated, at least as measured by

10:20:14  5   the PT.

10:20:14  6   Q.    I'm sorry?

10:20:16  7   A.    That's not been well demonstrated, at least as measured by

10:20:16  8   the PT, the PT correlation.  There's not as much work that's

10:20:21  9   been done on Factor Xa in plasma concentration and bleeding

10:20:26 10   levels.

10:20:26 11   Q.    But the PT does correlate with the plasma concentration,

10:20:34 12   right?

10:20:35 13   A.    To some degree, yes.

10:20:37 14   Q.    The Factor Xa specifically measures the plasma

10:20:41 15   concentration of Xarelto, right?

10:20:44 16   A.    The Factor Xa level, what it's measuring is the amount of

10:20:48 17   activity against Factor Xa, which is that one piece that I

10:20:53 18   demonstrated on that drawing.

10:20:55 19        Then there are scientists who say -- who have tried

10:21:00 20   to demonstrate a correlation between that specific level of

10:21:03 21   activity against Factor Xa and what plasma concentrations would

10:21:08 22   be.

10:21:08 23   Q.    Dr. Herrin, I think you stated that there is -- that there

10:21:19 24   is no literature that provides a 20 second cutoff in Xarelto

10:21:28 25   patients; is that right?

*OFFICIAL TRANSCRIPT*

11:26:15  1              Rephrase the question.

11:26:17  2              THE WITNESS:  Can I answer his question?

11:26:18  3              THE COURT:  Well, you can answer the question, but, I

11:26:20  4      mean, you're telling us other things.  He's asking you one

11:26:23  5      thing, and you're answering --

11:26:25  6              THE WITNESS:  I'm sorry, I thought I was answering it.

11:26:27  7      I thought I was.

11:26:28  8      EXAMINATION BY MR. BIRCHFIELD:

11:26:29  9      Q.    Dr. Herrin, aspirin use is not contraindicated in the

11:26:31 10      Xarelto label, is it, sir?

11:26:33 11      A.    No, and it shouldn't be.  It should just be warned about,

11:26:38 12      which it is.

11:26:38 13      Q.    If the company determined that aspirin should not be used

11:26:42 14      with Xarelto, they could put that in the contraindications

11:26:47 15      section, couldn't they, sir?

11:26:48 16      A.    If there were an absolute determination, surely.

11:26:51 17      Q.    You're aware that the patient population that takes

11:26:55 18      Xarelto across all of these indications are a -- there is a

11:27:02 19      high prevalence of aspirin use among that patient population,

11:27:05 20      right?

11:27:06 21      A.    Yes, and even more so in AFib.

11:27:12 22              THE COURT:  Anything further?

11:27:14 23              MR. BIRCHFIELD:  Just two more questions, Your Honor.

11:27:14 24      EXAMINATION BY MR. BIRCHFIELD:

11:27:17 25      Q.    One of the opinions that you offered is that "PT does not

**OFFICIAL TRANSCRIPT**

11:27:19 1   provide a reliable measure whatsoever of the amount of exposure

11:27:25 2   to Xarelto in any given patient or at any given point in time

11:27:30 3   during his/her anticoagulation therapy," right?

11:27:32 4   A.    Yes.

11:27:32 5   Q.    Dr. Herrin, did you consider that you were retained to be

11:27:39 6   an expert because you're taking positions that the company or

11:27:43 7   its scientists cannot take?

11:27:45 8   A.    I did not consider that.  That's why I looked at the

11:27:47 9   records first.

11:27:48 10        MR. BIRCHFIELD:  Thank you, Your Honor.

11:27:50 11        THE COURT:  Any redirect?

11:27:50 12        MR. SARVER:  Yes, Your Honor.

11:27:55 13            We will finish up before lunch.

11:27:55 14                REDIRECT EXAMINATION

11:27:55 15   BY MR. SARVER:

11:28:00 16   Q.    Dr. Herrin, I'm going to start with the last question that

11:28:03 17   Mr. Birchfield asked you.  When you were asked to become an

11:28:07 18   expert to tell the jury what the science is, what was the first

11:28:11 19   thing you asked to do?

11:28:13 20   A.    If I could review the lab records, and then the medical

11:28:16 21   records.

11:28:17 22   Q.    When you reviewed the records, did you tell whoever asked

11:28:21 23   you to get involved that you were going to form your

11:28:24 24   independent opinion, and whatever it was, it was?

11:28:28 25   A.    Yes.  I've done that that way every time.  As my old

**OFFICIAL TRANSCRIPT**

```
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF LOUISIANA
 2

 3     ****************************************************************

 4     IN RE: XARELTO (RIVAROXABAN)
       PRODUCTS LIABILITY LITIGATION
 5
                               CIVIL ACTION NO. 14-MD-2592 "L"
 6                             JACKSON, MISSISSIPPI
08:15:59                       FRIDAY, AUGUST 18, 2017, 8:30 A.M.
 7

 8     THIS DOCUMENT RELATES TO:

 9     DOCKET NO. 14-MD-2592
       DORA MINGO, ET AL. V.
10     JANSSEN RESEARCH & DEVELOPMENT,
       LLC, ET. AL.,
11     CASE NO. 15-CV-3469

12     ****************************************************************

13
                   DAY X  MORNING AND AFTERNOON SESSIONS
14             TRANSCRIPT OF JURY TRIAL PROCEEDINGS
             HEARD BEFORE THE HONORABLE ELDON E. FALLON
15                 UNITED STATES DISTRICT JUDGE

16

17     APPEARANCES:

18
       FOR THE PLAINTIFFS'
19     LIAISON COUNSEL:              GAINSBURGH BENJAMIN DAVID
                                     MEUNIER & WARSHAUER
20                                   BY:  GERALD E. MEUNIER, ESQ.
                                     2800 ENERGY CENTRE
21                                   1100 POYDRAS STREET
                                     NEW ORLEANS, LOUISIANA  70163
22

23
       FOR THE PLAINTIFFS:          BEASLEY ALLEN
24                                   BY:  ANDY BIRCHFIELD, ESQ.
                                     P.O. BOX 4160
25                                   MONTGOMERY, ALABAMA  36103
```

**OFFICIAL TRANSCRIPT**

1    APPEARANCES CONTINUED:

2

3                              GAINSBURGH BENJAMIN DAVIS
                             MEUNIER & WARSHAUER
4                              BY:  WALTER C. MORRISON, IV, ESQ.
                             240 TRACE COLONY PARK DRIVE
5                              SUITE 100
                             RIDGELAND, MISSISSIPPI  39157
6

7

8                              GOZA HONNOLD
                             BY:  BRADLEY D. HONNOLD, ESQ.
9                              11181 OVERBROOK ROAD, SUITE 200
                             LEAWOOD, KANSAS  66211
10

11                             THE LAMBERT FIRM
                             BY:  EMILY JEFFCOTT, ESQ.
12                             701 MAGAZINE STREET
                             NEW ORLEANS, LOUISIANA  70130
13

14

15                             LEVIN FISHBEIN SEDRAN & BERMAN
                             BY:  FREDERICK S. LONGER, ESQ.
16                             510 WALNUT STREET
                             SUITE 500
17                             PHILADELPHIA, PENNSYLVANIA  19106

18

19   FOR THE DEFENDANT BAYER
     HEALTHCARE PHARMACEUTICALS
20   INC. AND BAYER PHARMA AG:   MITCHELL WILLIAMS SELIG GATES &
                             WOODYARD, P.L.L.C.
21                             BY:  LYN P. PRUITT, ESQ.
                             425 W. CAPITOL AVENUE, SUITE 1800
22                             LITTLE ROCK, ARKANSAS  72201

23

24                             WATKINS & EAGER, PLCC
                             BY:  WALTER T. JOHNSON, ESQ.
25                             400 EAST CAPITOL STREET
                             JACKSON, MISSISSIPPI  39201

                       *OFFICIAL TRANSCRIPT*

```
 1   APPEARANCES CONTINUED:

 2

 3                              BRADLEY ARANT BOULT CUMMINGS, LLP
                               BY:  LINDSEY C. BONEY, IV, ESQ.
 4                             ONE FEDERAL PLACE
                               1819 FIFTH AVENUE NORTH
 5                             BIRMINGHAM, ALABAMA  35203

 6

 7   FOR JANSSEN PHARMACEUTICALS,
     INC. AND JANSSEN RESEARCH &
 8   DEVELOPMENT, LLC:          BARRASSO USDIN KUPPERMAN FREEMAN &
                                SARVER, LLC
 9                             BY:  RICHARD E. SARVER, ESQ.
                               909 POYDRAS STREET, 24TH FLOOR
10                             NEW ORLEANS, LOUISIANA  70112

11

12   OFFICIAL COURT REPORTER:   CATHY PEPPER, CRR, RMR, CCR
                                CERTIFIED REALTIME REPORTER
13                             REGISTERED MERIT REPORTER
                               500 POYDRAS STREET, ROOM B-275
14                             NEW ORLEANS, LA  70130
                               (504) 589-7779
15                             Cathy_Pepper@laed.uscourts.gov

16

17   PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT
     PRODUCED BY COMPUTER-AIDED TRANSCRIPTION.

18

19

20

21

22

23

24

25
```

*OFFICIAL TRANSCRIPT*

08:55:06 1    so deep in the weeds with words.

08:55:08 2            THE COURT:  We all are, including the Court.

08:55:11 3            MR. MEUNIER:  Judge, on page 24 of the Court's charge,

08:55:17 4    we had suggested that you make it clear in saying that FDA

08:55:23 5    approval is not dispositive as to the lack of instructions

08:55:27 6    claim, that, likewise, FDA approval is not dispositive as to

08:55:29 7    the design defect claim.

08:55:32 8            THE COURT:  I said it's not dispositive.  I think that,

08:55:36 9    taken as whole, this is an accurate statement of the law.

08:55:39 10   Therefore, I deny the motion.

08:55:41 11           MR. MEUNIER:  Your Honor, at page 25 of your charge,

08:55:44 12   you had removed from a prior draft the following language which

08:55:49 13   was given by the Court in prior bellwether trials in this

08:55:54 14   litigation, and we believe it's critically important to have

08:55:57 15   included it here in the final, which is -- and I'll quote from

08:56:01 16   page 25 of the Court's previous jury charge draft in this

08:56:05 17   matter -- "Therefore, even if the Defendants have met all the

08:56:08 18   appropriate minimum standards for FDA approval and governmental

08:56:14 19   regulations and requirements to obtain FDA approval, this

08:56:19 20   compliance and approval, though relevant, is not sufficient to

08:56:21 21   conclusively establish that the Defendants have taken the steps

08:56:25 22   necessary under the law which applies in this case."

08:56:28 23           THE COURT:  I think I've expressed the law accurately

08:56:30 24   and thoroughly and in a balanced format, so I don't think it's

08:56:36 25   necessary.  I deny the motion.

                             *OFFICIAL TRANSCRIPT*

08:56:38  1           MR. MEUNIER:  I'd just say for the record that the

08:56:42  2   language "minimum standards for FDA approval" was set forth in

08:56:47  3   Plaintiff's proposed Jury Charge Number 13, pursuant to the

08:56:51  4   authorities cited.

08:56:52  5           Your Honor, we respectfully object, again at

08:56:55  6   page 25, to the Court's failure to include Plaintiff's proposed

08:57:00  7   Jury Charge Number 11, which has to do with the ability of

08:57:05  8   manufacturers to make safety improvement changes in labels

08:57:09  9   without prior FDA approval, citing your earlier decision in

08:57:15 10   this case, as well as the *Wyeth* decision.  We respectfully

08:57:21 11   object to that not being included in the jury charges.

08:57:25 12           THE COURT:  I think that's a fact that the jury has to

08:57:28 13   consider, but not from a legal standpoint.  I think my charge

08:57:33 14   accurately discusses the law applicable.

08:57:36 15           MR. MEUNIER:  We also object, Your Honor, to your

08:57:37 16   failure to include Plaintiff's proposed Jury Charge Number 12,

08:57:42 17   which deals with the so-called strikethrough label.

08:57:45 18           Your Honor, this proposed instruction, that we

08:57:48 19   have submitted more than once in this litigation, we think is

08:57:54 20   critically important because it disabuses the jury of any

08:57:58 21   concept or notion that any action the FDA took, not in

08:58:04 22   ultimately approving Xarelto, but, in the process of approval,

08:58:09 23   striking through certain language, whether they did it or not,

08:58:13 24   whether that's established or not, we think it's critically

08:58:16 25   important to disabuse the jury of the notion that that action

                          ***OFFICIAL TRANSCRIPT***

08:58:20  1    by the FDA is in any way preemptive.

08:58:23  2         Under the case law, it is not.  It is not

08:58:25  3    preemptive because the Defendants would have to show it's

08:58:29  4    impossible for the FDA to have ever included the language that

08:58:32  5    the Plaintiffs feel should have been in the label.

08:58:35  6         We've heard specific reference to the

08:58:38  7    strikethrough.  I think it has a prejudicial effect for the

08:58:41  8    jury not to understand that the strikethrough activity by the

08:58:44  9    FDA cannot be, could not be in a legal sense preemptive.  It

08:58:50 10    may be relevant, but it is not preemptive.  We think it has the

08:58:55 11    effect -- potential effect of implied preemption, which is

08:59:00 12    inappropriate.

08:59:00 13         THE COURT:  I put this sentence in:  "In fact, any

08:59:03 14    action or inaction on the part of the FDA, though relevant to

08:59:06 15    your consideration of liability, does not foreclose a claim

08:59:11 16    under Mississippi law.  More specifically, if you find that the

08:59:14 17    Defendant failed to apprise prescribing physicians of

08:59:18 18    appropriate testing to address risks that they knew or should

08:59:23 19    have known prior to FDA's approval, or became known or should

08:59:27 20    have become known after FDA approval of the Xarelto label, then

08:59:31 21    FDA approval is not conclusive."

08:59:33 22         I think that accurately and fully expresses the

08:59:35 23    law.  So I'll deny the motion.

08:59:37 24         MR. MEUNIER:  Your Honor, with respectfully object to

08:59:38 25    the Court's failure to give Plaintiff's proposed Jury Charge

*OFFICIAL TRANSCRIPT*

10:15:27  1    would have prevented the plaintiff's harm, a feasible

10:15:27  2    alternative design that would have prevented the plaintiff's

10:15:42  3    harm.  And we've already discussed this.  That's why the last

10:15:45  4    bullet point is on this slide.

10:15:48  5             Any other anticoagulant that would have been

10:15:52  6    prescribed to treat this blood clot would have resulted in the

10:15:57  7    very same thing.  It would not have prevented harm to her.  And

10:16:03  8    in order to meet their burden of proof, they have to show there

10:16:09  9    is a feasible alternative design that would have prevented the

10:16:13 10    plaintiff's harm.

10:16:14 11             Question 5:  Do you find by a preponderance of

10:16:19 12    the evidence that Xarelto's defective design either proximately

10:16:23 13    caused or substantially contributed to Ms. Dora Mingo's

10:16:28 14    GI bleed?

10:16:29 15             What is the evidence that helps you answer

10:16:30 16    Question 5?  We believe the evidence that helps you answer

10:16:33 17    Question 5 is as follows:

10:16:36 18             We know the anti-Factor Xa is not an option.

10:16:41 19    It's not FDA approved for Xarelto.  There are no Xarelto

10:16:47 20    specific calibrators or controls.  And we know anti-Factor Xa

10:16:56 21    assay has been approved for research purposes only.

10:16:59 22             And you heard me and saw me put up on the Elmo

10:17:03 23    that picture of the Biophen Factor Xa assay, and I showed it to

10:17:12 24    Dr. Parisian and I asked her about it, because up in a small

10:17:15 25    corner, in the left-hand corner, it said:  "For research

**OFFICIAL TRANSCRIPT**

10:49:42 1          Dr. Haynes told you that all this stuff you're

10:49:44 2   hearing about the ROCKET data, what you need to be focused on

10:49:47 3   is the EINSTEIN data, which is the condition that Mrs. Mingo

10:49:51 4   had, because otherwise you are comparing apples and oranges.

10:49:56 5   Dr. Herrin also talked about that yesterday.  Dr. Haynes, as I

10:49:58 6   just said, to rely on PT is asking doctors -- he said, it's

10:50:01 7   asking doctors to put their patients at risk.

10:50:03 8          Dr. Herrin said the PT is not useful at the

10:50:07 9   patient's bedside.  He said, "You are asking me to make

10:50:11 10  decisions based on meaningless numbers that could hurt my

10:50:16 11  patients."  And he said using a PT cutoff like Dr. Rinder's

10:50:23 12  theory -- or Dr. Rinder suggested would be bad medicine.

10:50:28 13         And the reason, ladies and gentlemen, is because

10:50:33 14  Xarelto concentration of plasma levels in someone's blood does

10:50:37 15  not tell a doctor who is going to bleed and who is not going to

10:50:42 16  bleed.  And that's why these doctors came in and said that the

10:50:47 17  data doesn't support that it tells them -- that it can tell

10:50:50 18  them who is going to bleed and who is not going to bleed.

10:50:53 19         Now, I'm going to go through this Question 3 real

10:50:58 20  quickly on the PT values for Mrs. Mingo.  You remember the

10:51:02 21  first PT?  She had Coumadin, another anticoagulant, that we

10:51:05 22  know from the Coumadin label is still effective in her

10:51:09 23  bloodstream when she took her first Xarelto.  So for them to

10:51:14 24  suggest that this PT value, even if you believe it's related,

10:51:17 25  is somehow related to Xarelto doesn't make any sense, because

**OFFICIAL TRANSCRIPT**