# EXHIBIT "1"

```
 1                      UNITED STATES DISTRICT COURT
                       EASTERN DISTRICT OF LOUISIANA
 2

 3      ************************************************************

        IN RE:  XARELTO (RIVAROXABAN)
 4      PRODUCTS LIABILITY LITIGATION        Docket No. 14-MD-2592
                                             Section "L"
 5                                           New Orleans, Louisiana
        THIS DOCUMENT RELATES TO:           Monday, June 6, 2017
 6      Joseph Orr, et al
        v. Janssen Research &
 7      Development, et. al.,
        Case No. 15-CV-3708
 8

        ************************************************************
 9

10                     TRANSCRIPT OF TRIAL PROCEEDINGS
                HEARD BEFORE THE HONORABLE ELDON E. FALLON
11                     UNITED STATES DISTRICT JUDGE
                       VOLUME VI - AFTERNOON SESSION
12

13      APPEARANCES:

        FOR THE PLAINTIFFS'
14      LIAISON COUNSEL:                     LEVIN PAPANTONIO
                                             BRIAN H. BARR, ESQ.
15                                           316 Baylen Street, Suite 600
                                             Pensacola, FL 32502
16
                                             BEASLEY ALLEN
17                                           BY:  ANDY BIRCHFIELD, ESQ.
                                             P.O. Box 4160
18                                           Montgomery, AL 36103

19                                           GAINSBURGH BENJAMIN DAVID
                                             MEUNIER & WARSHAUER
20                                           BY:  GERALD E. MEUNIER, ESQ.
                                             2800 Energy Centre
21                                           1100 Poydras Street
                                             New Orleans, LA 70163
22
                                             GOZA & HONNOLD, LLC
23                                           BY:  BRADLEY D. HONNOLD, ESQ.
                                             11181 Overbrook Road, Suite 200
24                                           Leawood, Kansas 66211

25
```

```
 1                                      THE LAMBERT FIRM, PLC
                                        BY:  EMILY JEFFCOTT, ESQ.
 2                                      701 Magazine Street
                                        New Orleans, Louisiana 70130
 3

 4    FOR THE DEFENDANT BAYER
      HEALTHCARE PHARMACEUTICALS
 5    INC. and BAYER PHARMA AG:         WILKINSON WALSH & ESKOVITZ, LLP
                                        BY:  BETH A. WILKINSON, ESQ.
 6                                      1900 M Street NW, Suite 800
                                        Washington, DC 20036
 7
                                        Nelson Mullins Riley
 8                                      & Scarborough, LLP
                                        BY:  DAVID E. DUKES, ESQ.
 9                                      Meridian, 17th Floor
                                        1320 Main Street
10                                      Columbia, SC 29201

11
      FOR JANSSEN PHARMACEUTICALS,
12    INC. AND JANSSEN RESEARCH &
      DEVELOPMENT, LLC:                 IRWIN FRITCHIE URQUHART & MOORE
13                                      BY:  JAMES B. IRWIN, ESQ.
                                        400 Poydras St., Suite 2700
14                                      New Orleans, LA 70130

15

16    Official Court Reporter:         Karen A. Ibos, CCR, RPR, CRR, RMR
                                        500 Poydras Street, B-275
17                                      New Orleans, Louisiana 70130
                                        (504) 589-7776
18

19      Proceedings recorded by mechanical stenography, transcript
      produced by computer.
20

21

22

23

24

25
```

OFFICIAL TRANSCRIPT

| 17:25:21 | 1 | morning at 8:30.  Okay. |
| 17:25:47 | 2 | (WHEREUPON, THE JURY EXITED THE COURTROOM.) |
| 17:25:47 | 3 | THE COURT:  Okay.  I will see you all tomorrow at 8:15, |
| 17:25:51 | 4 | and I'll either rule at that time or whatever on that other matter |
| 17:25:55 | 5 | that we have before me. |
| 17:25:59 | 6 | MR. BARR:  We will probably have to take up the Canadian |
| 17:26:02 | 7 | issue in the morning, the Canadian label issue, that will come up |
| 17:26:05 | 8 | with Mr. Jalota. |
| 17:26:06 | 9 | THE COURT:  Okay.  I can do that now, if you want.  Are |
| 17:26:11 | 10 | you tired? |
| 17:26:12 | 11 | MR. BARR:  I am happy to do it now -- or I should say I |
| 17:26:16 | 12 | am happy to let Jerry do it now. |
| 17:26:18 | 13 | THE COURT:  I really understand the issue, I read it, I |
| 17:26:21 | 14 | heard you all before, so I am ready to do a ruling. |
| 17:26:24 | 15 | I have before me a motion, the defendant seeks to exclude |
| 17:26:28 | 16 | certain documents and statements reflecting what the doctor told or |
| 17:26:34 | 17 | communicated in some way to a foreign regulatory agency; namely, |
| 17:26:41 | 18 | the Canadian Regulatory Agency.  I assume it's something like the |
| 17:26:46 | 19 | FDA here. |
| 17:26:48 | 20 | In the opening statement, the defendant said the |
| 17:26:51 | 21 | following:  "The plaintiffs have suggested to you that there is |
| 17:26:55 | 22 | actually tests that that we wouldn't put on the label.  Think about |
| 17:27:02 | 23 | what they're saying.  They're saying that we know about a test and |
| 17:27:07 | 24 | we lied about it because we didn't want to save people's lives. |
| 17:27:12 | 25 | That's what they're asking you to believe in this case." |

17:27:17  1          In short, it seems to me the defendant suggests that

17:27:20  2     there is no such test and that the defendants know of no such test

17:27:27  3     or any test.  This is consistent, frankly, with what the

17:27:32  4     defendant's position is, that there is no test and they don't know

17:27:37  5     of any.

17:27:37  6          Yet they told the Canadian authorities the following:

17:27:42  7     "Although there is no need to monitor clinical practice in certain

17:27:49  8     in-treatment situations such as an overdose, acute bleeding, or

17:27:54  9     urgent surgery, in cases of suspected or noncompliance, I assume

17:27:59 10     not taking the drug, or in other unusual circumstances, assessment

17:28:06 11     of the anticoagulant effect of rivaroxaban may be appropriate."

17:28:12 12     "Accordingly," they say, "measuring PT may be useful to inform

17:28:19 13     clinical decisions in these circumstances."

17:28:23 14          The significant issue in the case, it seems to me, is

17:28:26 15     what the defendant knew, when they knew it, and whether or not any

17:28:34 16     prior statements that conflict with their position is admissible.

17:28:40 17          I am concerned about the fact that this is a statement

17:28:44 18     made in connection, I assume, with the approval of the label by

17:28:52 19     Canada.  Canada, like Europe, has a different process and they do

17:28:57 20     have a different process and, therefore, I had felt that it was

17:29:04 21     confusing, at best, to perhaps not even relevant under 401, but if

17:29:12 22     relevant, certainly not admissible under 403 to allow labels from

17:29:18 23     Canada to come into the litigation or labels from Europe to come

17:29:22 24     into the litigation.

17:29:25 25          But this is a statement made, and it's at least arguably

17:29:33 1   inconsistent with what the position of the defendant is.  It's
17:29:42 2   certainly an 801(d)(2) situation where it would be admissible, even
17:29:48 3   though it's a prior statement; it would also be admissible under
17:29:54 4   613 as a prior statement.
17:29:57 5          So I am going to allow it, but I will instruct the jury
17:30:03 6   that it's only relevant to what the defendant knew or when they
17:30:08 7   knew it.  Knowledge of the defendant.
17:30:13 8          Any reference to any Canadian label, I am going to tell
17:30:19 9   them to disregard.  I would hope I wouldn't have to do that because
17:30:22 10  I hope that doesn't come up from the plaintiff's standpoint.  I am
17:30:25 11  not interested in what the label is or any reference to the label.
17:30:31 12  If a reference does come into -- mentioning the label, I am going
17:30:36 13  to instruct the jury to disregard that and to only consider it
17:30:41 14  insofar as a statement is made regarding when the defendant knew
17:30:47 15  the information and what they knew.
17:30:51 16         So that's going to be my ruling.  I will allow it, but I
17:30:55 17  will -- I may have to have an instruction to the jury to that
17:30:59 18  effect.
17:31:00 19         MR. MEUNIER:  Your Honor, I understand the Court's
17:31:03 20  ruling, and there will be reference to the label, so I think that
17:31:05 21  limiting instruction you mentioned --
17:31:07 22         THE COURT:  Well, I will instruct the jury then to
17:31:09 23  disregard.  And I'll explain why.  The label reference can be
17:31:14 24  confusing, and I am going to have to surgically remove that.
17:31:20 25         I wish I didn't have to, but it's a situation where the

17:31:25  1   whole theory of the defendant's case is based on that, that there

17:31:33  2   was no test available.

17:31:36  3         Now, you can weasel word it or at least use words like

17:31:41  4   "no credible test," "no satisfactory test," but, really, that

17:31:49  5   created the situation where there is no test that does this.  The

17:31:52  6   plaintiffs say there is a test that would be helpful.  The

17:31:56  7   defendants say it's not helpful.

17:31:59  8         So the concepts -- I mean, words that put this issue, at

17:32:06  9   least, in play, I think the jury ought to hear it.  But I am going

17:32:13  10  to try to surgically remove that from the label and explain to them

17:32:17  11  why.

17:32:18  12        Thank you very much.  The court will stand in recess.

17:32:20  13        THE DEPUTY CLERK:  All rise.

17:32:22  14     (WHEREUPON, THE PROCEEDINGS WERE CONCLUDED.)

        15

        16                    * * * * * *

        17

        18              REPORTER'S CERTIFICATE

        19        I, Karen A. Ibos, CCR, Official Court Reporter, United
             States District Court, Eastern District of Louisiana, do hereby
        20   certify that the foregoing is a true and correct transcript, to the
             best of my ability and understanding, from the record of the
        21   proceedings in the above-entitled and numbered matter.

        22
                                    /s/ Karen A. Ibos
        23                          Karen A. Ibos, CCR, RPR, CRR, RMR
                                    Official Court Reporter

        24

        25

─────────────── OFFICIAL TRANSCRIPT ───────────────

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


IN RE:  XARELTO (RIVAROXABAN)
PRODUCTS LIABILITY LITIGATION

                              Docket No. 14-MD-2592
THIS DOCUMENT RELATES TO:     Section L
                              New Orleans, Louisiana
Joseph Orr, Jr., as Lawful    Tuesday, June 6, 2017
Surviving Spouse of
*Sharyn Orr v. Janssen, et al.*
*Case No. 2:15-cv-03708*

*********************************************************************

**TRANSCRIPT OF TRIAL PROCEEDINGS**
**HEARD BEFORE THE HONORABLE ELDON E. FALLON,**
**UNITED STATES DISTRICT JUDGE,**
**AND A JURY.**
**VOLUME V - MORNING SESSION**

*********************************************************************

**APPEARANCES:**


FOR THE PLAINTIFFS'           MR. ANTHONY BIRCHFIELD, JR.
LIAISON COUNSEL:              Beasley Allen Crow Methvin
                                 Portis & Miles
                              Post Office Box 4160
                              Montgomery, AL  36103

                              MR. BRIAN H. BARR
                              MR. NEIL E. McWILLIAMS
                              Levin Papantonio Thomas
                                 Mitchell Rafferty & Proctor
                              316 Baylen Street
                              Suite 600
                              Pensacola, FL 32502

                              MR. GERALD EDWARD MEUNIER
                              Gainsburgh, Benjamin, David,
                                 Meunier & Warshauer
                              Energy Centre
                              1100 Poydras Street
                              Suite 2800
                              New Orleans, LA  70163-2800

**OFFICIAL TRANSCRIPT**

```
                              MS. EMILY JEFFCOTT
                              The Lambert Firm, PLC
                              701 Magazine Street
                              New Orleans, LA  70130

                              MR. BRADLEY D. HONNOLD
                              Goza & Honnold, LLC
                              11181 Overbrook Road
                              Suite 200
                              Leawood, KS 66211


FOR THE DEFENDANT JANSSEN     MR. JAMES B. IRWIN, V
PHARMACEUTICALS, INC.,        Irwin Fritchie
and JANSSEN RESEARCH &           Urquhart & Moore, LLC
DEVELOPMENT, LLC:             400 Poydras Street
                              Suite 2700
                              New Orleans, LA  70130


FOR THE DEFENDANT            MR. DAVID E. DUKES
BAYER HEALTHCARE             Nelson Mullins Riley &
PHARMACEUTICALS, INC.,           Scarborough, LLP and
BAYER PHARMA AG:             Meridian, 17th Floor
                             1320 Main Street
                             Columbia, SC  29201


                             MS. BETH A. WILKINSON
                             Wilkinson Walsh + Eskovitz, LLP
                             1900 M Street NW
                             Suite 800
                             Washington, DC 20036


REPORTED BY:  Mary V. Thompson, RMR, FCRR
              United States District Court
              500 Poydras, Room B275
              New Orleans, LA  70130
```

**OFFICIAL TRANSCRIPT**

1     **A.**   I do.

2     **Q.**   And you said that you may get updates about it, but you

3  weren't directly involved, right?

4     **A.**   Correct.  We get updates.  We may be asked to provide

5  our perspectives, but the final decision is with Bayer, sir.

6     **Q.**   So you are aware of the position that Bayer takes

7  outside of the United States, right?

8     **A.**   I would have to see what you're trying to refer to,

9  sir.

10    **Q.**   Okay.  Did somebody hand you 3061443 and 3061444?

11         MR. BARR:  Your Honor, at this time plaintiffs move

12  into evidence 3061443 as Exhibit 161 and 3061444 as Exhibit 162.

13         MR. IRWIN:  Your Honor, may we approach?

14         THE COURT:  Yeah.

15                  **SIDEBAR ON THE RECORD**

16         MR. IRWIN:  Your Honor, it's the same slippery slope.

17  It is a quilt and a dialogue back and forth between the regulator

18  and the company, and it is impossible, really, to separate one

19  from the other.  They're joined at the hip.  And all this will do

20  is lead the jury to be misled about the situation that we're

21  concerned about.  It invites confusion under 403, and we would

22  ask that it not be used at all.

23         MR. BARR:  Your Honor, the exact question that they

24  were responding to was to provide a summary of all information

25  known to you relevant to this issue.

**OFFICIAL TRANSCRIPT**

1        That's what we're talking about.  We're talking about
2   what they knew and when they knew it.
3        THE COURT:  I understand that.  But you -- we've got a
4   problem that I'm trying to solve, and we can't get into what you
5   are doing with regulatory and what's regulatory's response to it.
6   It's what they knew and when they knew it.
7        Now, we've got to figure a way of dealing with that so
8   I don't have to keep telling the jury to disregard it.
9        MR. MEUNIER:  Your Honor, again just for the record, I
10  want to revert to your ruling which is what we are relying on.
11       THE COURT:  I got it.  I understand the issue.
12       MR. BARR:  And I'm not going to go into this.  This is
13  going to be the last time I cover it.
14       THE COURT:  I'm not going to admit it into evidence,
15  then.  You can use it and show him and say, Didn't Bayer say such
16  and such.
17       But if you put stuff in that there's discussion by and
18  between the regulatory agencies, there's a problem there that I'm
19  trying to avoid.  If we contaminate the evidence, any verdict is
20  going to be contaminated.  So I'm trying to deal with it so that
21  they understand -- the jury understands whether or not they knew.
22  And not -- you know, the context of it is not the significant
23  part.  What they knew and when they knew it is the significant
24  part.
25       MR. BARR:  Okay.

**OFFICIAL TRANSCRIPT**

1    THE COURT:  When you start putting it in context, it

2  becomes problematic.

3    MR. BARR:  Can we --

4    MR. IRWIN:  There's no way to avoid that respectfully,

5  Your Honor, and putting it up in front of the jury is what --

6    THE COURT:  That's what I'm saying.  Maybe the way of

7  doing it is to say look at it just like you do with the journals.

8    MR. IRWIN:  And don't flash it up on the screen.

9    MR. BARR:  But it needs to be on the screen for the

10  jury to follow.  If we don't want to admit it into evidence, I

11  can live with that.  And I'll try to ask the question in a way

12  where it is, You know Bayer said this, instead of This is what

13  they said to the Canadian regulator.

14    THE COURT:  I'm going to have to tell them to disregard

15  things, and the more the judge says "disregard," it's a problem.

16    MR. BARR:  I understand, Your Honor.  This is the last

17  time we're going into this, but it's --

18    MR. IRWIN:  Your Honor, he has -- the only way he can

19  respond to it is a response from a regulatory question coming

20  from a foreign regulator.  That's the only response he can make.

21    MR. BARR:  I don't agree with that.  He can say this is

22  what Bayer said.  This is what they said.  This is what they

23  knew.

24    I mean, they represented in opening statement that they

25  don't know any of this and that we think that they are lying

1    about it.  You can't open that door like that and accuse us of

2    that and then not say what they know.

3          MR. IRWIN:  Ask him the question, "If Bayer said this."

4    And he can read it, you direct him to it.  Don't show it to the

5    jury, and he'll answer the question, Bayer said this.

6          THE COURT:  Let's try this.

7          MR. BARR:  So this is complete, we had to listen to a

8    cross-examination yesterday where Ms. Wilkinson sat there and

9    cross-examined Dr. Liechty accusing him of doing something

10   dangerous by using PT.  This directly contradicts that it is

11   dangerous.

12         THE COURT:  I understand it.  I'm trying to keep it out

13   of context.  That's the deal.  So let's see if you can ask him

14   the question --

15         MR. BARR:  Okay.

16         THE COURT:  -- without going there.  Let's go with

17   that.

18         MR. BARR:  I'll do my best.

19         THE COURT:  Yeah.

20                 **AFTER THE SIDEBAR IN OPEN COURT**

21         THE COURT:  Members of the jury, the problem that's

22   presented is I'm trying to focus the attorneys on what the

23   company knew and when they knew it.

24         And some of the discussion -- the context is within

25   other regulatory agencies, which has nothing to do with this

**OFFICIAL TRANSCRIPT**

1   particular case.

2           Why they did it or whatever is context.  What they knew

3   and when they knew it is the whole relevance of this line of

4   questioning.

5           So let's ask the question.

6           MR. BARR:  Your Honor, may I publish this?

7           THE COURT:  Well --

8           MR. BARR:  Not admit it.

9           THE COURT:  -- let's ask the question first.

10  MR. BARR:  (CONTINUING)

11      Q.   Mr. Jalota, you have in front of you a document,

12  3061443.  Do you see that?

13      A.   -1443, I do.

14      Q.   This is an e-mail you received on November 19, 2014,

15  right?

16      A.   That is correct.  Lori is my direct report and she

17  forwarded it to me because -- as information.  But, again, I was

18  not involved in it, nor would have probably spent more time

19  looking at it also.

20          MR. IRWIN:  Your Honor, then I move to strike any

21  questions that -- this witness has said he was not involved in

22  these arrangements.

23          MR. BARR:  Your Honor, he got the e-mail.  We've

24  established it's a business record he received.

25          THE COURT:  Okay.  I understand.  He received the

**OFFICIAL TRANSCRIPT**

1  e-mail.

2           I assume you received the e-mail and I assume you read

3  the e-mail; is that correct?

4           THE WITNESS:  I would have -- Your Honor, it appears I

5  received the e-mail.  I don't recall it.  But as to any more

6  information, looking at the attachments, I don't recall even -- I

7  don't recall looking at it or -- I don't recall.  That's all I

8  can say to you, sir.

9  MR. BARR:  (CONTINUING)

10     Q.  You clearly received it, right?

11     A.  I received it as -- but not as a direct person.  This

12 is because Lori is my direct report.  So she forwarded it to me

13 as this is it.  Other than that, she didn't ask for comments.

14 She didn't ask for anything else, just this is what is happening.

15     Q.  So you received this e-mail?

16     A.  But --

17     Q.  Go ahead.

18          THE COURT:  Go ahead.  Ask the question.

19 MR. BARR:  (CONTINUING)

20     Q.  You received this e-mail in the ordinary course of

21 business, correct?

22     A.  I would have -- I would have received it as part of her

23 sending something to me.  Again, she doesn't send me everything.

24 There may have been a reason for this.  I don't know, sir.

25     Q.  And she sent to you a document that Bayer wrote, right?

**OFFICIAL TRANSCRIPT**

```
 1        A.   That is correct, sir.
 2        Q.   Okay.  And so let's look at that document.
 3             MR. IRWIN:  I object, Your Honor.
 4             THE COURT:  Just let him look at the document.  That's
 5   the question.
 6             MR. BARR:  That's all I'm doing.
 7             THE COURT:  Look at the document, sir.
 8             THE WITNESS:  I have, sir.
 9             THE COURT:  Tell him the page.
10   MR. BARR:  (CONTINUING)
11        Q.   What I'm looking at is Page -- let's start with Page 2
12   of the document.  Are you there?
13        A.   Yes.
14        Q.   Bayer was asked a series of questions, and they say
15   that we're providing our full response, right?
16        A.   I would add a clarification --
17             MR. IRWIN:  Your Honor, I would like to ask this
18   witness if he read -- excuse me.
19             THE COURT:  Wait just a minute.
20             MR. IRWIN:  I'd ask him to -- I would like him to ask
21   this witness if he has read this page -- if he ever read this
22   page or ever did anything with it.
23   MR. BARR:  (CONTINUING)
24        Q.   Have you read this page?
25        A.   I have not -- I've not read it.  If you would like me
```

**OFFICIAL TRANSCRIPT**

1  to read it now, I'm happy to do that, sir.

2      **Q.**   So in the course of your duties, you routinely get

3  e-mails and just ignore them and don't read them?

4              MR. IRWIN:  Object, Your Honor.  No foundation,

5  argumentative.

6              THE COURT:  I sustain the objection.  Let's move on.

7  We're going to have to move on.

8              MR. BARR:  It would be a lot easier if I could just ask

9  him the question.

10             THE COURT:  Well, no.  If he --

11             MR. BARR:  I'm sorry.

12             THE COURT:  -- hasn't even read the page, I'm not going

13  to -- let's get on to something else.

14             MR. BARR:  Your Honor, he received this e-mail.

15             THE COURT:  Yeah, he received it, but he said he didn't

16  even read it.

17             MR. BARR:  Your Honor, can we approach?

18             THE COURT:  Yeah.  Sure.

19                          **SIDEBAR ON THE RECORD**

20             THE COURT:  The problem you're having is that e-mails

21  don't get into evidence simply because they're used in the usual

22  course of business.  Otherwise, you could put e-mails in without

23  any witness.

24             If a witness got the e-mail but they didn't read it,

25  what's he going to testify to?  I don't know.  He is going to

**OFFICIAL TRANSCRIPT**

1    say, I haven't read it.

2         MR. BARR:  Your Honor, there's no question he received

3    the e-mail.  We have been -- throughout this trial -- throughout

4    this trial, if somebody receives an e-mail, there has been no

5    objection, none.  And now we're doing this solely to keep this

6    out.

7         THE COURT:  No.  The problem is that this e-mail is

8    just more than just an e-mail, it's an attachment.  And the

9    fellow gets the attachment, as I understand it.  He's not a part

10   of it.  He gets an attachment.  He says now that he hasn't even

11   read the attachment.

12        So how does it get in if he didn't read it, doesn't

13   know anything about it, and it's not a question -- and it's not

14   business records?  It's not a business record.

15        MR. BARR:  Your Honor, he said he got it in the

16   ordinary course of business.  That's what he said.

17        THE COURT:  But that doesn't make an e-mail a business

18   record.  It just -- you can't do that.  Otherwise, every e-mail

19   you wouldn't even need a witness for.

20        MR. BIRCHFIELD:  Your Honor, as opposed to admitting

21   the e-mail or the attachment, where Mr. Barr was headed was

22   reading him the statement in there and asking him if he

23   understands that that is what Bayer tells people outside the U.S.

24        Ask him -- ask him that question.  We're not asking --

25   at this point we're not asking to move the document into

```
1   evidence.
2            THE COURT:  All right.
3            MR. IRWIN:  Your Honor, they could ask any question
4   like that, but they shouldn't imply that it's in this document,
5   that has been such a subject of controversy, in front of the
6   jury.
7            And another thing about the fact that this is just an
8   attachment to an e-mail, he does not deal with Canadian labeling.
9   That's not what he does.  He deals with U.S. labeling.
10           THE COURT:  No, I understand.
11           MR. IRWIN:  All the more reason --
12           THE COURT:  That's part of it.
13           MR. BARR:  Your Honor, part of the problem here is Jim
14  can say that all he wants.  Somebody decided it was important
15  enough to send him the e-mail to tell him here's what's going on
16  in Canada.  And maybe they wanted this historical perspective,
17  who knows.  But they sent it to him.  And he says he gets his
18  e-mails and he looks at them.
19           And, Your Honor, your motion in limine order said that
20  what they say to regulators is admissible.  Anything they say to
21  regulators is admissible, and this is Bayer talking to a
22  regulator.  And we relied upon that.  I got up in opening and I
23  said they say these things outside of the United States based
24  upon that.
25           THE COURT:  But --
```

**OFFICIAL TRANSCRIPT**

```
 1          MR. IRWIN:  There is no foundation.

 2          THE COURT:  It's a play-within-a-play situation and

 3    that's what I'm trying to deal with.  And it's a complicated

 4    problem, because, as I said, there is -- both sides of it is a

 5    problem.

 6          You're right about they said things, but when you put

 7    them in context, it gets confusing to the jury.  And they say

 8    certain things in response back and forth.  It is just the

 9    problem when you are dealing with FDA and Canadian or FDA and

10    Europe.

11          Look, I think that they may have a point, but let's do

12    it that way.  But just ask him.  The point is whether they knew

13    it -- whether he knew it, whether Bayer knew it, and when they

14    knew it.

15          MR. BARR:  Okay.

16          THE COURT:  Let's ask him, you know -- that's the

17    issue.

18          MR. BARR:  Then I'll read the statement and I'll ask

19    him if he understood that.

20          MR. BIRCHFIELD:  That's where we were headed, Your

21    Honor, when Jim objected.

22          THE COURT:  Okay.

23          MR. BARR:  I'm trying to do it without mentioning

24    Canada or the label, and we're not putting it up.

25          THE COURT:  But then you are showing the document.
```

**OFFICIAL TRANSCRIPT**

1    Just ask him the question.

2             MR. BARR:  I'm not going to put it up on the screen.

3             MR. IRWIN:  Don't hold it up.  Just read it on your --

4             MR. BARR:  They can't see it.

5             MS. WILKINSON:  And don't ask him to refer to it

6    because then you're implying it's in the document.

7             MR. MEUNIER:  Oh, come on.

8             THE COURT:  "Don't you know Bayer knows this?"

9             MR. BARR:  But, Your Honor --

10            MR. MEUNIER:  He has to be referring to the document.

11            MR. BARR:  It's an unimpeachable --

12            MR. MEUNIER:  You're saying he can't refer to a

13   business record to answer that question?  We are not going to

14   admit the business record.

15            THE COURT:  The problem is that -- it's a 403 problem

16   when you put it in, in context, and I'm trying to keep it out of

17   the context.

18            MR. BARR:  Your Honor, what I'm hearing from Jim is he

19   is not making a 403 objection.

20            MR. IRWIN:  Yes, he is.

21            MR. BARR:  No, you're making an "he hasn't seen the

22   document" objection.

23            MR. IRWIN:  I mentioned 403 from the beginning.

24            THE COURT:  I understand the issue.

25            You say it's a business record; therefore, it gets in.

**OFFICIAL TRANSCRIPT**

1    I disagree with that.  I don't think it is a business record.

2           MR. MEUNIER:  No, I wasn't going to say that, Judge.  I

3    realize there's a problem and I realize we're trying to thread a

4    needle.

5           The only thing, we came into the trial based on an

6    express ruling that anything Bayer said to regulators was

7    admissible.  That's what your ruling was.

8           We could not get into what they did to comply with

9    regulations in the foreign scheme, but anything they said to

10   regulators.  It was an express ruling on our motion *in limine.*

11   We relied on it.  So what Bayer tells regulators goes to the

12   heart of what they knew.

13          THE COURT:  The problem is what they said to regulators

14   is contextual.

15          MR. MEUNIER:  I understand.

16          THE COURT:  That's the problem.

17          MR. MEUNIER:  I understand, Judge.

18          THE COURT:  Because what they said to one regulator is

19   not necessarily accurate with the other regulator.  So you've got

20   a situation where, when they say, What did you say to this

21   regulator, you're taking it out of the context of the case.

22          MR. MEUNIER:  I understand, Your Honor.

23          And all I was trying to get across is that we did rely

24   on a ruling that made it relevant and admissible to talk about

25   what Bayer said to regulators.

**OFFICIAL TRANSCRIPT**

```
 1            THE COURT:  I understand.  It's in the record.  Let's
 2  see if we can get through it.
 3                  AFTER THE SIDEBAR IN OPEN COURT
 4            THE COURT:  We have to take a break for lunch.
 5            MR. BARR:  Okay.
 6  MR. BARR:  (CONTINUING)
 7       Q.   Mr. Jalota, are you aware that Bayer has said outside
 8  of the United States that, Although there is no need to monitor
 9  clinical practice, in certain infrequent situations such as
10  overdosage, acute bleeding, urgent surgery, in cases of suspected
11  non-compliance, or in other unusual circumstances, assessment of
12  the anticoagulant effect of rivaroxaban may be appropriate.
13  Accordingly, measuring PT using the Neoplastine reagent or a
14  Factor Xa assay using riva-specific calibrators and controls may
15  be useful to inform clinical decisions in these circumstances.
16            Are you aware of that?
17       A.   I would say to you that I'm not aware of the current
18  label.  In 2008 and 2011, that text, if it was similar to what
19  was presented to the FDA, would be there.
20            I don't know whether that text you're saying is how it
21  came about if it isn't in the label.  I confess you'd have to
22  show me the label.
23            I'm not -- I can tell you this, I'm not aware -- I'm
24  aware that there are -- there may be some language, but I don't
25  know what the language is and what was agreed with the agencies
```

**OFFICIAL TRANSCRIPT**

1   outside of the U.S.

2          THE COURT:  That's not the question, sir.  The question

3   is whether or not you're aware that Bayer knew or did not know

4   what he just read.

5          THE WITNESS:  I would say -- that's difficult for me to

6   say, sir.  The information we proposed in 2008 is what was agreed

7   with both companies, so if there is some text, then Bayer would

8   be aware.  But I simply don't know what is in the labels to tell

9   you, sir.

10          MR. BARR:  Do you want to break at this point?

11          THE COURT:  Let's take a break here.  We're going to

12   have a break for -- until 1:15.  We stand in recess until then.

13                                (Jury out at 11:53 a.m.)

14          THE COURT:  Be seated, please.

15          Folks, I know that some of you disagree with my ruling,

16   but that's my ruling so let's move on with it.

17          MR. BARR:  Your Honor, I'm not going to bring up the

18   Canadian thing again.  We're done with that.

19          THE COURT:  Court will stand in recess until 1:15.

20                                (A recess was taken.)

21                                (End of morning session.)

22

23                          *  *  *  *

24

25

**OFFICIAL TRANSCRIPT**

```
 1                         CERTIFICATE

 2

 3        I hereby certify this 6th day of June, 2017, that the

 4   foregoing is, to the best of my ability and understanding, a true

 5   and correct transcript of the proceedings in the above-entitled

 6   matter.

 7

 8                                  /s/ Mary V. Thompson

 9                                 Official Court Reporter

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**OFFICIAL TRANSCRIPT**

```
 1                   UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF LOUISIANA
 2
       ******************************************************************
 3
       IN RE:  XARELTO (RIVAROXABAN)
 4     PRODUCTS LIABILITY LITIGATION          Docket No. 14-MD-2592
                                              Section "L"
 5                                            New Orleans, Louisiana
       THIS DOCUMENT RELATES TO:              Wednesday, June 7, 2017
 6     Joseph Orr, et al
       v. Janssen Research &
 7     Development, et. al.,
       Case No. 15-CV-3708
 8
       ******************************************************************
 9
                      TRANSCRIPT OF TRIAL PROCEEDINGS
10         HEARD BEFORE THE HONORABLE ELDON E. FALLON
                     UNITED STATES DISTRICT JUDGE
11                 VOLUME VIII - AFTERNOON SESSION

12
       APPEARANCES:
13
       FOR THE PLAINTIFFS'
14     LIAISON COUNSEL:                LEVIN PAPANTONIO
                                       BRIAN H. BARR, ESQ.
15                                     316 Baylen Street, Suite 600
                                       Pensacola, FL 32502
16
                                       BEASLEY ALLEN
17                                     BY:  ANDY BIRCHFIELD, ESQ.
                                       P.O. Box 4160
18                                     Montgomery, AL 36103

19                                     GAINSBURGH BENJAMIN DAVID
                                       MEUNIER & WARSHAUER
20                                     BY:  GERALD E. MEUNIER, ESQ.
                                       2800 Energy Centre
21                                     1100 Poydras Street
                                       New Orleans, LA 70163
22
                                       GOZA & HONNOLD, LLC
23                                     BY:  BRADLEY D. HONNOLD, ESQ.
                                       11181 Overbrook Road, Suite 200
24                                     Leawood, Kansas 66211

25
```

```
 1                                  THE LAMBERT FIRM, PLC
                                    BY:  EMILY JEFFCOTT, ESQ.
 2                                  701 Magazine Street
                                    New Orleans, Louisiana 70130
 3

 4    FOR THE DEFENDANT BAYER
      HEALTHCARE PHARMACEUTICALS
 5    INC. and BAYER PHARMA AG:     WILKINSON WALSH & ESKOVITZ, LLP
                                    BY:  BETH A. WILKINSON, ESQ.
 6                                  1900 M Street NW, Suite 800
                                    Washington, DC 20036
 7
                                    Nelson Mullins Riley
 8                                  & Scarborough, LLP
                                    BY:  DAVID E. DUKES, ESQ.
 9                                  Meridian, 17th Floor
                                    1320 Main Street
10                                  Columbia, SC 29201

11
      FOR JANSSEN PHARMACEUTICALS,
12    INC. AND JANSSEN RESEARCH &
      DEVELOPMENT, LLC:             IRWIN FRITCHIE URQUHART & MOORE
13                                  BY:  JAMES B. IRWIN, ESQ.
                                    400 Poydras St., Suite 2700
14                                  New Orleans, LA 70130

15

16    Official Court Reporter:     Karen A. Ibos, CCR, RPR, CRR, RMR
                                    500 Poydras Street, B-275
17                                  New Orleans, Louisiana 70130
                                    (504) 589-7776
18

19      Proceedings recorded by mechanical stenography, transcript
      produced by computer.
20

21

22

23

24

25
```

14:35:43  1    I think you ultimately said it, it's 25 people, right --

14:35:46  2    A.  Right.

14:35:46  3    Q.  -- at the FDA that touched the application?

14:35:50  4    A.  Right.  You get credit at the FDA if you have been involved in

14:35:54  5    so many NDAs and supplements.  So they want to get their names

14:35:58  6    listed as credit for their workload.

14:36:00  7    Q.  How many people at Bayer and Janssen worked on the application

14:36:06  8    over a period of ten years before the drug -- before the

14:36:09  9    application was even submitted to the FDA?

14:36:11 10    A.  Hundreds.  Hundreds.  It would be their R&D development.  It

14:36:16 11    would be their animal studies people.  It would be their

14:36:18 12    clinical trial -- there's hundreds of people.

14:36:19 13    Q.  Now, can we get back up on the screen the labelling information

14:36:30 14    that Dr. Parisian believes should be in the United States label.

14:36:44 15            Dr. Parisian, you recall that this is the information you

14:36:46 16    believe should be in the United States' label about the ability to

14:36:50 17    use PT to determine whether it's safe to proceed to surgery.  Do

14:36:55 18    you recall that?

14:36:55 19    A.  Yes.

14:36:56 20    Q.  Have you -- are you aware of statements made by Bayer that they

14:37:07 21    continue to make today that support the language you have provided

14:37:12 22    in your label?

14:37:13 23    A.  Yes.

14:37:14 24        MR. DUKES:  Your Honor, objection.  May we approach?

14:37:25 25      (WHEREUPON, THE FOLLOWING BENCH CONFERENCE WAS HELD:)

14:37:31   1           MR. DUKES:  Your Honor, this particular document is a
14:37:35   2   document that's redacted, but basically relates to foreign
14:37:39   3   labelling.  And I would object to it, Rules 401, 403, as it relates
14:37:45   4   to foreign labelling.  I would also object to this as being
14:37:48   5   improper scope of redirect because we're basically looking at a
14:37:52   6   proposed warning which we objected on direct, but that was covered
14:37:57   7   on direct.
14:37:57   8           MR. BARR:  Your Honor, they talked about PT, called it
14:38:01   9   dangerous, and we've already had this discussion, and we would
14:38:04  10   stand by what we previously argued in chambers.
14:38:07  11           THE COURT:  I understand the issue, and I feel that has
14:38:15  12   been covered on cross and it's appropriate redirect.  And I'm going
14:38:20  13   to deal with the foreign labelling if it comes up.  I'll tell the
14:38:24  14   jury the same way.  It's a question of what they knew and when they
14:38:28  15   knew it.
14:38:28  16           And if they sent it to anybody, that's significant; not
14:38:33  17   why they sent it or what the other person did about it.  It's only
14:38:39  18   relevant as to what they knew and when they knew it.  And one way
14:38:43  19   of doing that is to find out what they said and that's it.
14:38:50  20           I understand it's a problem that foreign labelling, but
14:38:54  21   I've done my best to instruct the jury every time it's come up to
14:38:57  22   disregard the foreign labelling.  I'm more interested in what they
14:39:02  23   knew and when they knew it, and I am confident in looking at them
14:39:05  24   and listening that they understand what I am saying.  I've said it
14:39:09  25   enough times to them.  So if it comes up, I'll say the same thing.

```
14:39:13   1          MR. BARR:  Your Honor, for purposes of the record, we've
14:39:15   2   redacted any mention of the reference to foreign label to Canada,
14:39:19   3   and we've instructed the witness not to raise those issues in her
14:39:23   4   answer.
14:39:24   5          THE COURT:  Okay.  We'll see what happens.  Thank you.
14:39:38   6      (OPEN COURT.)
14:39:38   7          THE COURT:  I hope we're getting to an end of redirect
14:39:40   8   soon?
14:39:53   9          MR. BARR:  Your Honor, give me one second.  I'm sorry,
14:40:26  10   your Honor, just give me one brief second here.  I am trying to...
14:40:44  11          THE COURT:  I said I hope you're getting to the end.
14:40:47  12          MR. BARR:  Yes.  This is it, your Honor.
14:40:49  13   BY MR. BARR:
14:40:49  14   Q.  Let me restate that.  Are you aware of statements made by
14:40:52  15   Bayer -- a statement Bayer continues to make today -- that supports
14:40:56  16   the language in the label you're offering and what you say needs to
14:41:01  17   be in the label?
14:41:02  18   A.  Yes.
14:41:02  19   Q.  Have you reviewed or relied upon such statements in coming to
14:41:06  20   your opinions?
14:41:07  21   A.  Yes.
14:41:07  22   Q.  Dr. Parisian, is this the statement by Bayer, this document on
14:41:21  23   the screen, the document you have reviewed or relied upon in coming
14:41:25  24   to your conclusions that Bayer supports the statements you've
14:41:30  25   offered in your label?
```

14:41:31 1   A.  Yes.

14:41:32 2   Q.  Could you please read for the jury the statement made by Bayer?

14:41:37 3   A.  "Although there is no need to monitor clinical practice, in

14:41:43 4   concern" --

14:41:44 5   Q.  Wait.  Start with the first paragraph.

14:41:47 6   A.  "The sponsor"?

14:41:48 7   Q.  Yes, ma'am.

14:41:49 8   A.  "The sponsor recognizes that in certain infrequent situations

14:41:54 9   (such as overdosage, acute bleeding, urgent surgery, suspected

14:41:59 10  noncompliance, or in other unusual circumstances) assessment of the

14:42:07 11  anticoagulant effect of Xarelto may be desirable.  In these

14:42:12 12  circumstances, chromogenic assays can be utilized.

14:42:16 13      Although there is no need to monitor clinical practice,

14:42:22 14  in certain infrequent situations such as overdosage, acute

14:42:28 15  bleeding, urgent surgery, in cases of suspected noncompliance, or

14:42:33 16  in other unusual circumstances, assessment of the anticoagulant

14:42:38 17  effect of rivaroxaban may be appropriate.  Accordingly, measuring

14:42:44 18  PT using the Neoplastin reagent, or Factor Xa assay using

14:42:50 19  rivaroxaban-specific calibrators and controls may be useful to

14:42:55 20  inform clinical decisions in these circumstances."

14:42:59 21  Q.  When did Bayer make this statement?

14:43:01 22  A.  Well, years before, but this one is in 2014.

14:43:06 23  Q.  Is this -- does this statement contradict the position Bayer

14:43:11 24  has taken in this courtroom?

14:43:13 25  A.  Yes.

14:43:14  1    Q.  Is this statement anywhere in the U.S. label or available to

14:43:19  2    doctors in the United States?

14:43:20  3    A.  No.

14:43:22  4              MR. BARR:  No more questions, your Honor.

14:43:24  5              THE COURT:  Thank you.  You're excused, ma'am.

14:43:24  6              THE WITNESS:  Thank you, your Honor.

14:43:26  7              THE COURT:  Let's take a ten-minute break here and

14:43:29  8    we'll go with the other witness.

14:43:32  9              THE DEPUTY CLERK:  All rise.

14:43:32  10      (WHEREUPON, THE JURY EXITED THE COURTROOM AND A RECESS WAS

15:10:32  11       TAKEN.)

15:10:32  12      (OPEN COURT.)

15:10:34  13      (WHEREUPON, THE JURY ENTERED THE COURTROOM.)

15:10:34  14              THE COURT:  Be seated, please.  We have a matter.

15:10:39  15              MR. DUKES:  Thank you, your Honor.  With regard to the

15:10:41  16    last document that Dr. Parisian was testifying about, under the

15:10:44  17    rule for completeness, I would like to show the jury another

15:10:47  18    statement that's in that same document that was not shown.

15:10:51  19              MR. BARR:  And, your Honor, for the record, plaintiffs

15:10:54  20    object.  We actually believe the entirety of the document should

15:10:57  21    come in and not bits and pieces.  So for the purposes of the

15:11:01  22    record, for that reason, we think the entire document should come

15:11:04  23    in.

15:11:05  24              THE COURT:  Thank you.  Under 611(c), I'll allow the

15:11:09  25    defendants to do that, which would be under cross, direct, or

```
 1
 2                          *  *  *  *  *  *
 3
 4                      REPORTER'S CERTIFICATE
 5
 6          I, Karen A. Ibos, CCR, Official Court Reporter, United
 7    States District Court, Eastern District of Louisiana, do hereby
 8    certify that the foregoing is a true and correct transcript, to the
 9    best of my ability and understanding, from the record of the
10    proceedings in the above-entitled and numbered matter.
11
12
13                          /s/ Karen A. Ibos
14                          Karen A. Ibos, CCR, RPR, CRR, RMR
15                          Official Court Reporter
16
17
18
19
20
21
22
23
24
25
```

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


IN RE:  XARELTO (RIVAROXABAN)
PRODUCTS LIABILITY LITIGATION

                                        Docket No. 14-MD-2592
THIS DOCUMENT RELATES TO:               Section L
                                        New Orleans, Louisiana
Joseph Orr, Jr., as Lawful              Thursday, June 8, 2017
Surviving Spouse of
*Sharyn Orr v. Janssen, et al.*
*Case No. 2:15-cv-03708*

*********************************************************************

                 TRANSCRIPT OF TRIAL PROCEEDINGS
      HEARD BEFORE THE HONORABLE ELDON E. FALLON,
              UNITED STATES DISTRICT JUDGE,
                       AND A JURY.
               VOLUME VIII - MORNING SESSION

*********************************************************************

APPEARANCES:


FOR THE PLAINTIFFS'              MR. ANTHONY BIRCHFIELD, JR.
LIAISON COUNSEL:                 Beasley Allen Crow Methvin
                                   Portis & Miles
                                 Post Office Box 4160
                                 Montgomery, AL  36103

                                 MR. BRIAN H. BARR
                                 MR. NEIL E. McWILLIAMS
                                 Levin Papantonio Thomas
                                   Mitchell Rafferty & Proctor
                                 316 Baylen Street
                                 Suite 600
                                 Pensacola, FL 32502

                                 MR. GERALD EDWARD MEUNIER
                                 Gainsburgh, Benjamin, David,
                                   Meunier & Warshauer
                                 Energy Centre
                                 1100 Poydras Street
                                 Suite 2800
                                 New Orleans, LA  70163-2800

**OFFICIAL TRANSCRIPT**

```
                                    MS. EMILY JEFFCOTT
                                    The Lambert Firm, PLC
                                    701 Magazine Street
                                    New Orleans, LA  70130

                                    MR. BRADLEY D. HONNOLD
                                    Goza & Honnold, LLC
                                    11181 Overbrook Road
                                    Suite 200
                                    Leawood, KS 66211

FOR THE DEFENDANT JANSSEN           MR. JAMES B. IRWIN, V
PHARMACEUTICALS, INC.,              Irwin Fritchie
and JANSSEN RESEARCH &                 Urquhart & Moore, LLC
DEVELOPMENT, LLC:                   400 Poydras Street
                                    Suite 2700
                                    New Orleans, LA  70130

FOR THE DEFENDANT                   MR. DAVID E. DUKES
BAYER HEALTHCARE                    Nelson Mullins Riley &
PHARMACEUTICALS, INC.,                 Scarborough, LLP and
BAYER PHARMA AG:                    Meridian, 17th Floor
                                    1320 Main Street
                                    Columbia, SC  29201

                                    MS. BETH A. WILKINSON
                                    Wilkinson Walsh + Eskovitz, LLP
                                    1900 M Street NW
                                    Suite 800
                                    Washington, DC 20036


REPORTED BY:  Mary V. Thompson, RMR, FCRR
              United States District Court
              500 Poydras, Room B275
              New Orleans, LA  70130
```

**OFFICIAL TRANSCRIPT**

1    patients.  That was seen in ROCKET.

2            And so I think -- I'm not comfortable with utilizing

3    PT.  Believe me, if it was effective, I would -- and reliable and

4    something that I could use, I would use it.  I would want it.  I

5    want to help -- we're here for our patients.

6            And this is -- so if this were something that I thought

7    was comfortable, I'm not going to withhold that.  I would want

8    that.  But the PT test is not a reliable test.  It doesn't -- it

9    can't be applied in a clinical context in a meaningful manner.

10       Q.   Let's take a look at the proposed label change that

11   Dr. Parisian presented yesterday and get your opinion on that.

12   This is what Dr. Parisian said should be in a label -- the

13   Xarelto label to help clinicians to treat patients that are

14   prescribed Xarelto.

15           MR. BARR:  Objection, Your Honor.  Dr. Parisian talked

16   about what should be in the label from a regulatory perspective,

17   what is required according to the regulations.

18           THE COURT:  Well, I thought it was a little broader

19   than that.  The question is different than what -- I'll allow the

20   question.

21           THE WITNESS:  I'll give my opinion, not a regulatory...

22   MS. WILKINSON:   (CONTINUING)

23       Q.   Yeah.  We're not talking about regulatory.

24           We want to know from your point of view, as a clinician

25   and an expert who prescribes this drug, would this language be

1  useful or helpful to you with your patients?

2      A.   So I'm specifically --

3      Q.   Just first answer that question.

4           Would it be helpful?

5      A.   No.  Sorry.

6      Q.   Now let's go through it and you tell us why this would

7  not be helpful.

8      A.   The one that troubles me the most is that middle thing:

9  Accordingly, measuring PT may be useful to inform clinical

10  decisions in this circumstance.

11          I have no data to tell me how that will inform my

12  clinical decisions.  There is no studies that have looked at PT

13  and said, Okay, if someone comes in and they're bleeding and they

14  have a normal PT, you can take them to surgery and they do well.

15          That has not been studied.

16          You have to look at a situation and test it out in

17  people, and there's no data that actually looks at changing dose

18  based on PT, or withholding surgery based on PT, and that having

19  a net clinical benefit.

20          And that's why I think it's inappropriate to imply that

21  there is -- it's useful in informing clinical decisions, because

22  I don't think it can help me.  If it would help me, I would use

23  it.

24          My study of this is not scant.  I have looked at this

25  extensively, and I do not feel it is of value.  Not only that,

**OFFICIAL TRANSCRIPT**

1  but in the field of EP, in the Heart Rhythm society itself,
2  people are not using PT.
3      Q.   Do you believe that is because people don't know about
4  it because somebody has hidden this information or because they
5  don't believe it's useful?
6      A.   So when we do our journal clubs and we go over articles
7  and studies, these are the things that kind of come up when we
8  discuss this.
9          So I don't -- I think that it was appreciated.  And,
10 again, we looked at it and our impression was that that was not
11 the case.
12     Q.   And do you agree or disagree that a normal PT value
13 indicates that clinically significant levels of rivaroxaban are
14 unlikely?
15     A.   I think that there is -- so I can't explain why
16 10 percent of patients go from a normal PT to a high PT with
17 absolutely no change in their dosing.  So I can't --
18     Q.   Does that mean you don't agree?
19     A.   I don't agree.  Sorry.  Yes.
20     Q.   And tell us -- we've heard about a false negative in
21 testing.  Are you familiar with that?
22     A.   Yes.
23     Q.   Have you seen that in PT where someone could have
24 either -- a normal level and still have an anticoagulation effect
25 in their blood?

**OFFICIAL TRANSCRIPT**

1    We'll stand in recess.  Thank you.

2                              (Jury out at 11:27 a.m.)

3                              (End of morning session.)

4

5              *  *  *  *

6              **CERTIFICATE**

7

8    **I hereby certify this 8th day of June, 2017, that the**

9    **foregoing is, to the best of my ability and understanding, a true**

10   **and correct transcript of the proceedings in the above-entitled**

11   **matter.**

12

13                              */s/ Mary V. Thompson*

14   _____
                                 **Official Court Reporter**

15

16

17

18

19

20

21

22

23

24

25

**OFFICIAL TRANSCRIPT**

<pre>
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF LOUISIANA
 2
       ********************************************************************
 3
       IN RE:  XARELTO (RIVAROXABAN)
 4     PRODUCTS LIABILITY LITIGATION        Docket No. 14-MD-2592
                                            Section "L"
 5                                          New Orleans, Louisiana
       THIS DOCUMENT RELATES TO:           Thursday, June 8, 2017
 6     Joseph Orr, et al
       v. Janssen Research &
 7     Development, et. al.,
       Case No. 15-CV-3708
 8
       ********************************************************************
 9
                       TRANSCRIPT OF TRIAL PROCEEDINGS
10          HEARD BEFORE THE HONORABLE ELDON E. FALLON
                     UNITED STATES DISTRICT JUDGE
11                   VOLUME IX - AFTERNOON SESSION

12
       APPEARANCES:
13
       FOR THE PLAINTIFFS'
14     LIAISON COUNSEL:                LEVIN PAPANTONIO
                                       BRIAN H. BARR, ESQ.
15                                     316 Baylen Street, Suite 600
                                       Pensacola, FL 32502
16
                                       BEASLEY ALLEN
17                                     BY:  ANDY BIRCHFIELD, ESQ.
                                       P.O. Box 4160
18                                     Montgomery, AL 36103

19                                     GAINSBURGH BENJAMIN DAVID
                                       MEUNIER & WARSHAUER
20                                     BY:  GERALD E. MEUNIER, ESQ.
                                       2800 Energy Centre
21                                     1100 Poydras Street
                                       New Orleans, LA 70163
22
                                       GOZA & HONNOLD, LLC
23                                     BY:  BRADLEY D. HONNOLD, ESQ.
                                       11181 Overbrook Road, Suite 200
24                                     Leawood, Kansas 66211

25
</pre>

```
 1                                     THE LAMBERT FIRM, PLC
                                       BY:  EMILY JEFFCOTT, ESQ.
 2                                     701 Magazine Street
                                       New Orleans, Louisiana 70130
 3

 4       FOR THE DEFENDANT BAYER
         HEALTHCARE PHARMACEUTICALS
 5       INC. and BAYER PHARMA AG:     WILKINSON WALSH & ESKOVITZ, LLP
                                       BY:  BETH A. WILKINSON, ESQ.
 6                                     1900 M Street NW, Suite 800
                                       Washington, DC 20036
 7
                                       Nelson Mullins Riley
 8                                     & Scarborough, LLP
                                       BY:  DAVID E. DUKES, ESQ.
 9                                     Meridian, 17th Floor
                                       1320 Main Street
10                                     Columbia, SC 29201

11
         FOR JANSSEN PHARMACEUTICALS,
12       INC. AND JANSSEN RESEARCH &
         DEVELOPMENT, LLC:             IRWIN FRITCHIE URQUHART & MOORE
13                                     BY:  JAMES B. IRWIN, ESQ.
                                       400 Poydras St., Suite 2700
14                                     New Orleans, LA 70130

15

16       Official Court Reporter:     Karen A. Ibos, CCR, RPR, CRR, RMR
                                       500 Poydras Street, B-275
17                                     New Orleans, Louisiana 70130
                                       (504) 589-7776
18

19         Proceedings recorded by mechanical stenography, transcript
         produced by computer.
20

21

22

23

24

25
```

14:38:07  1   Q.  Are you aware, as you sit here and testify today, that Bayer

14:38:11  2   tells doctors outside of the United States this exact language?

14:38:17  3   A.  No.

14:38:19  4   Q.  So you have no knowledge of that.

14:38:44  5         Let me show you what the company says.  You see right

14:38:51  6   here that this is Bayer telling doctors that "Although there is no

14:38:57  7   need to monitor in clinical practice, in certain infrequent

14:39:01  8   situations such as overdosage, acute bleeding, urgent surgery, in

14:39:07  9   cases of suspected noncompliance, or in other unusual

14:39:11 10   circumstances, assessment of the anticoagulant effect of

14:39:13 11   rivaroxaban may be appropriate.  Accordingly, measuring PT using

14:39:17 12   the Neoplastin reagent or Factor Xa, may be useful to inform

14:39:25 13   clinical decisions in these circumstances."  Did you know that?

14:39:29 14   A.  I see that.

14:39:30 15   Q.  According to that sentence, Bayer disagrees with you, don't

14:39:34 16   they?

14:39:34 17   A.  I'm -- you're giving me one -- I don't have a whole document

14:39:39 18   here.  I am not going to comment on what Bayer thinks or doesn't

14:39:42 19   think.  I am not going to look at snippets.

14:39:44 20         MR. BARR:  That's all.

14:39:45 21         THE COURT:  All right.  Any redirect?

14:39:47 22         MS. WILKINSON:  Yes, your Honor.

14:39:59 23                   REDIRECT EXAMINATION

14:39:59 24   BY MS. WILKINSON:

14:39:59 25   Q.  Doctor, if you can speak up and lean into the microphone so we

14:40:03 1    can all hear you.

14:40:04 2    A.  Sorry.

14:40:04 3    Q.  You were just shown a statement, and yesterday the rest of the

14:40:07 4    statement was shown to the jury.  Do you see the bottom, the green

14:40:10 5    part that was left out?  Do you see that?

14:40:12 6    A.  Yes.

14:40:12 7    Q.  So what does that say?  Can you read it out loud, please?

14:40:15 8    A.  "However, the response of the PT varies both dependent on PT

14:40:19 9    reagent (which is not standardized) and coagulometer.  Thus, the PT

14:40:25 10   cannot be used to reliably measure the anticoagulant effect of

14:40:29 11   Xarelto since a normal PT may be found in patients with therapeutic

14:40:32 12   Xarelto levels if measured using selected machine/reagent

14:40:36 13   combinations."

14:40:37 14   Q.  And do you agree with that?

14:40:38 15   A.  That's the limitation that I find with the medication.

14:40:40 16   Q.  And when you read that together, does that suggest that PT is

14:40:44 17   useful in a clinical situation where a patient on Xarelto is in an

14:40:51 18   emergency such as surgery?

14:40:52 19   A.  Not in any way that I feel comfortable using.

14:40:55 20        MR. BARR:  Your Honor, I don't want to interrupt, but can

14:40:57 21   we approach real quick?

14:41:07 22        THE COURT:  Yes.

14:41:13 23     (WHEREUPON, THE FOLLOWING BENCH CONFERENCE WAS HELD:)

14:41:13 24        MR. BARR:  You obviously know what this is about.  It's

14:41:16 25   the Canadian label again.  I think it continues to prejudice the

plaintiffs that we can't show the label. It has -- I mean, they keep criticizing the language from their own label, and they put up language -- I don't think that's anywhere in the actual label about not being able to use the PT.

MR. BIRCHFIELD: And, your Honor, their own witness just asked to see the whole document. That's --

THE COURT: I understand. The way I see it, and I've said it several times, the issue is really what the defendant knew and when they knew it. It's not what's in one label or what's in another label, because the rules are different, the laws are different, the specifics are different.

We're going to get in a situation where we then have to try the Canadian label, and then we're going to be with witnesses about what the Canadian label says and why it says that. And then we're going to go into the France label. It's really involving the United States label. It's the FDA's label.

And I'll let you get in what they said, what they told other people, obviously what they knew. But that's where it's got to stop. We can't put in different labels. It just doesn't -- it would be impossible to deal with. It's a different jurisdiction.

MS. WILKINSON: Your Honor, just for the record, the statement they put up was from a submission to a regulator, and all you allowed us to do yesterday was show the complete statement. It wasn't -- this particular statement where they took the document out was not the label. It was in answer to a regulatory request in

14:43:03  1  Canada.

14:43:04  2           MR. BARR:  Your Honor, for completeness, this language

14:43:06  3  right here that's quoted is directly out of the label, and they

14:43:09  4  just put a witness up to criticize their own label.  I mean -- and

14:43:14  5  then they put up language that's not -- I mean, it just puts us in

14:43:18  6  an impossible situation.

14:43:20  7           THE COURT:  I understand.  I understand your position.

14:43:25  8           MR. BIRCHFIELD:  Yes, sir.

14:43:26  9           THE COURT:  Thank you.

14:43:46  10      (OPEN COURT.)

14:43:46  11  BY MS. WILKINSON:

14:43:47  12  Q.  All right, Doctor.  One of the questions we have is these

14:43:51  13  different terms that you know and you were being asked about

14:43:54  14  whether we're clear.  So up here we show it says, "PT cannot be

14:43:59  15  used to reliably measure the anticoagulant effect."  All right?

14:44:03  16  A.  Where are you?

14:44:03  17  Q.  I want you to --

14:44:07  18  A.  You're on the second --

14:44:09  19  Q.  "Anticoagulant Effect."  Do you see that?

14:44:12  20  A.  Yes, I do.

14:44:12  21  Q.  These are very different terms from the concentrate, right?

14:44:16  22  The concentrations?

14:44:16  23  A.  Yes.  So --

14:44:18  24  Q.  Let's slow down and see if we can explain this to the jury,

14:44:21  25  okay?

1        (WHEREUPON, THE PROCEEDINGS WERE CONCLUDED FOR THE DAY.)

2

3                        *  *  *  *  *  *

4

5                      REPORTER'S CERTIFICATE

6

7        I, Karen A. Ibos, CCR, Official Court Reporter, United

8   States District Court, Eastern District of Louisiana, do hereby

9   certify that the foregoing is a true and correct transcript, to the

10  best of my ability and understanding, from the record of the

11  proceedings in the above-entitled and numbered matter.

12

13

14                    /s/ Karen A. Ibos

15             Karen A. Ibos, CCR, RPR, CRR, RMR

16             Official Court Reporter

17

18

19

20

21

22

23

24

25

```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF LOUISIANA
 2
      ****************************************************************
 3
      IN RE:  XARELTO (RIVAROXABAN)
 4    PRODUCTS LIABILITY LITIGATION      Docket No. 14-MD-2592
                                         Section "L"
 5                                       New Orleans, Louisiana
      THIS DOCUMENT RELATES TO:          Friday, June 9, 2017
 6    Joseph Orr, et al
      v. Janssen Research &
 7    Development, et. al.,
      Case No. 15-CV-3708
 8
      ****************************************************************
 9
                      TRANSCRIPT OF TRIAL PROCEEDINGS
10          HEARD BEFORE THE HONORABLE ELDON E. FALLON
                      UNITED STATES DISTRICT JUDGE
11                    VOLUME IX - AFTERNOON SESSION

12
      APPEARANCES:
13
      FOR THE PLAINTIFFS'
14    LIAISON COUNSEL:               LEVIN PAPANTONIO
                                     BRIAN H. BARR, ESQ.
15                                   316 Baylen Street, Suite 600
                                     Pensacola, FL 32502
16
                                     BEASLEY ALLEN
17                                   BY:  ANDY BIRCHFIELD, ESQ.
                                     P.O. Box 4160
18                                   Montgomery, AL 36103

19                                   GAINSBURGH BENJAMIN DAVID
                                     MEUNIER & WARSHAUER
20                                   BY:  GERALD E. MEUNIER, ESQ.
                                     2800 Energy Centre
21                                   1100 Poydras Street
                                     New Orleans, LA 70163
22
                                     GOZA & HONNOLD, LLC
23                                   BY:  BRADLEY D. HONNOLD, ESQ.
                                     11181 Overbrook Road, Suite 200
24                                   Leawood, Kansas 66211

25
```

```
 1                                      THE LAMBERT FIRM, PLC
                                        BY:  EMILY JEFFCOTT, ESQ.
 2                                      701 Magazine Street
                                        New Orleans, Louisiana 70130
 3

 4      FOR THE DEFENDANT BAYER
        HEALTHCARE PHARMACEUTICALS
 5      INC. and BAYER PHARMA AG:       WILKINSON WALSH & ESKOVITZ, LLP
                                        BY:  BETH A. WILKINSON, ESQ.
 6                                      1900 M Street NW, Suite 800
                                        Washington, DC 20036
 7
                                        Nelson Mullins Riley
 8                                      & Scarborough, LLP
                                        BY:  DAVID E. DUKES, ESQ.
 9                                      Meridian, 17th Floor
                                        1320 Main Street
10                                      Columbia, SC 29201

11
        FOR JANSSEN PHARMACEUTICALS,
12      INC. AND JANSSEN RESEARCH &
        DEVELOPMENT, LLC:               IRWIN FRITCHIE URQUHART & MOORE
13                                      BY:  JAMES B. IRWIN, ESQ.
                                        400 Poydras St., Suite 2700
14                                      New Orleans, LA 70130

15

16      Official Court Reporter:       Karen A. Ibos, CCR, RPR, CRR, RMR
                                        500 Poydras Street, B-275
17                                      New Orleans, Louisiana 70130
                                        (504) 589-7776
18

19        Proceedings recorded by mechanical stenography, transcript
        produced by computer.
20

21

22

23

24

25
```

13:23:02  1   question, that:  Insofar as Mrs. Orr's condition is concerned, you

13:23:05  2   can't say that her event or its outcome would have been any

13:23:08  3   different had she been on warfarin; is that correct?

13:23:11  4          And his answer was:  "I can't say from an outcome

13:23:14  5   perspective, no."

13:23:15  6          I want you to assume that.  And if that was the question,

13:23:19  7   if that was the answer, would you agree or disagree with that?

13:23:22  8   A.  I agree.

13:23:23  9   Q.  Doctor, a suggested warning label has been proposed by

13:23:41 10   plaintiffs.  I would like to ask you to look at this warning --

13:23:44 11   suggested warning label and ask you, from a neurosurgeon

13:23:48 12   standpoint, would this warning label be of any help to you.

13:23:51 13          MR. IRWIN:  If we could have the ELMO, please.  And --

13:24:00 14          MR. HONNOLD:  Could we just note an objection that we

13:24:03 15   made previously for the record?

13:24:04 16          THE COURT:  Right.

13:24:19 17          THE WITNESS:  (WITNESS REVIEWS DOCUMENT.)  Okay.

13:24:28 18   BY MR. IRWIN:

13:24:29 19   Q.  My question is, would this proposed label, proposed by the

13:24:34 20   plaintiff -- plaintiff lawyers be of help to you as a neurosurgeon?

13:24:41 21   A.  So for me as a neurosurgeon, when I treat patients, hemostasis,

13:24:46 22   which is stopping of blood, whether it be -- bleeding, rather --

13:24:50 23   stop it in an elective surgery, emergency surgery, brain surgery,

13:24:54 24   spine surgery is of the utmost importance because we operate in

13:24:59 25   small compartments that are confined.  And so because we operate in

13:25:03  1   small compartments that are confined, bleeding can cause

13:25:06  2   significant issues.

13:25:07  3            My understanding, if I read this, if I was a

13:25:12  4   practitioner, I would think, okay, a normal PT value indicates that

13:25:15  5   maybe levels of rivaroxaban are clinically significant unlikely and

13:25:21  6   it's okay to operate.  But you can have a normal PT and you can

13:25:24  7   have levels of rivaroxaban in your system that are still causing

13:25:27  8   the blood to be thinner and anticoagulated and which would be

13:25:31  9   dangerous.

13:25:31  10           MR. HONNOLD:  Your Honor, this is exactly what we had

13:25:33  11  discussed when we brought the objection up.

13:25:36  12           MR. IRWIN:  Your Honor, he deals with this all the time.

13:25:39  13           THE COURT:  I'll let him go into it.  Overrule the

13:25:43  14  objection.

13:25:45  15  BY MR. IRWIN:

13:25:45  16  Q.  Please continue, Doctor.

13:25:46  17  A.  My understanding, that a patient with a normal PT, you can

13:25:50  18  still have anticoagulation of the blood and that would be dangerous

13:25:53  19  in neurosurgery.

13:26:17  20           THE COURT:  Anything further?

13:26:18  21           MR. IRWIN:  Just about, your Honor.  I am just trying to

13:26:20  22  move through it.

13:26:31  23  BY MR. IRWIN:

13:26:31  24  Q.  Back to the screen, please.  Doctor, these are my last

13:26:46  25  questions.

13:53:04  1          THE COURT:  Good.  I'll also allow you all to write, if

13:53:07  2  you need to.

13:53:08  3          The issue in the case, as I see it, is if either or both

13:53:13  4  of the doctors were adequately, properly, fully informed of the

13:53:18  5  availability of a PT test, as being useful to a plaintiff in

13:53:27  6  emergency situations, available to inform the doctors as to the

13:53:32  7  proper treatment of a party in emergency situations, if they had

13:53:39  8  been advised or informed, would they have acted differently.

13:53:44  9          I listened closely to the doctors, and I must say that in

13:53:49 10  the examination by the plaintiff there was -- either or both of the

13:53:54 11  doctors answered questions that were favorable to the plaintiff.

13:53:57 12          I also listened to the defendants, and I believe that the

13:54:00 13  doctors, either or both of them, also answered questions that were

13:54:04 14  favorable to the defendant.

13:54:07 15          It's a question of the credibility at that point.  If

13:54:11 16  they answer one way for the plaintiffs, one way for the defendants,

13:54:14 17  it raises some question of credibility, and credibility really is

13:54:17 18  the question for the jury.

13:54:19 19          So for that reason, I'll deny it.

13:54:23 20          With regard to the question of the learned intermediary.

13:54:27 21  The statute itself talks about not -- of course, it's couched in

13:54:34 22  such a way that it's not just for drugs, it's for products in

13:54:39 23  general.  The question is posed that's -- that -- it seems to me,

13:54:51 24  that it's important for both the prescriber and the user.

13:54:57 25          Back in the day when old Doc Smith was around, he was the

OFFICIAL TRANSCRIPT

13:55:04  1    prescriber and the user.  He did all of the work or she did all of

13:55:07  2    the work.  And times have changed now.

13:55:11  3            You have one doctor examines you in the emergency room;

13:55:15  4    he sends you to another doctor or a surgeon or whatever.  And it

13:55:20  5    seems to me that if one doctor knows something and the other doctor

13:55:25  6    doesn't know it, it's got -- they've got to be informed.  It makes

13:55:31  7    no sense to me if you only have to advise the prescribing doctor,

13:55:36  8    and you have no responsibility to advise the treating doctor,

13:55:44  9    particularly when they're different.  It seems inconsistent with

13:55:49 10    the statute, inconsistent with the cases that I read.

13:55:53 11            And so for that reason also I'll deny it.

13:55:56 12            MR. IRWIN:  Your Honor, can I make one more comment

13:55:59 13    procedurally?

13:56:00 14            THE COURT:  Sure.  Of course.

13:56:00 15            MR. IRWIN:  Your Honor, very kindly mentioned this, I

13:56:02 16    think, on the record yesterday.  But we want to make sure that it

13:56:05 17    is clear that we have properly moved at the end of the case at the

13:56:10 18    time that was proper to make this motion.

13:56:11 19            THE COURT:  Right.

13:56:14 20            MR. IRWIN:  And that we renew it now --

13:56:14 21            THE COURT:  Right.

13:56:16 22            MR. IRWIN:  -- as a matter of record, and we do want

13:56:18 23    permission to file the proper papers today at the close of

13:56:21 24    evidence.

13:56:21 25            THE COURT:  That's my understanding.  And I understood

OFFICIAL TRANSCRIPT

14:03:25  1          THE COURT:  Yes.  Give me about ten minutes.

14:03:27  2          And just on a personal note, I appreciate all of the work

14:03:29  3   that you all have done in the case.  These cases are very difficult

14:03:33  4   because of the numbers of people, I have 17,000 of them, so forth.

14:03:37  5   They sell me I have 860 lawyers in the case.  So it makes it

14:03:42  6   complicated.

14:03:42  7          But the reason that these cases can be handled is because

14:03:46  8   of the quality of the lawyers who handle these cases.  And it's no

14:03:51  9   surprise to me that we have the best of the best on both sides, and

14:03:55 10   not only are they proficient, but they're very professional in the

14:04:00 11   case.  And that means a lot to me, and I need to tell you how much

14:04:03 12   I appreciate it.

14:04:05 13          MR. BARR:  Thank you, your Honor.

14:04:06 14          THE COURT:  The Court will stand in recess.

14:04:08 15          THE DEPUTY CLERK:  All rise.

14:04:09 16      (WHEREUPON, THE PROCEEDINGS WERE CONCLUDED FOR THE DAY.)

        17

        18                        *  *  *  *  *  *

        19

        20                    REPORTER'S CERTIFICATE

        21

        22          I, Karen A. Ibos, CCR, Official Court Reporter, United
              States District Court, Eastern District of Louisiana, do hereby
              certify that the foregoing is a true and correct transcript, to the
        23    best of my ability and understanding, from the record of the
              proceedings in the above-entitled and numbered matter.

        24
                              /s/ Karen A. Ibos
        25                    Karen A. Ibos, CCR, RPR, CRR, RMR
                              Official Court Reporter

                         OFFICIAL TRANSCRIPT

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


IN RE:  XARELTO (RIVAROXABAN)  *
PRODUCTS LIABILITY LITIGATION  *      Docket No. 14-MD-2592
                               *
                               *      Section L
THIS DOCUMENT RELATES TO:      *
                               *      New Orleans, Louisiana
*Joseph Orr, et al.*           *
*v. Janssen Research &*        *      June 12, 2017
*Development, et. al.,*        *
Case No. 15-CV-3708            *
                               *
* * * * * * * * * * * * * * * *

                    TRANSCRIPT OF JURY TRIAL
             BEFORE THE HONORABLE ELDON E. FALLON
                 UNITED STATES DISTRICT JUDGE
                          VOLUME X
                       JUNE 12, 2017

<u>Appearances:</u>


For the Plaintiffs:        Levin Papantonio Thomas Mitchell
                             Rafferty & Proctor, P.A.
                           BY:  BRIAN H. BARR, ESQ.
                           316 South Baylen Street, Suite 600
                           Pensacola, Florida  32502


For the Plaintiffs:        Beasley Allen Crow Methvin
                             Portis & Miles, PC
                           BY:  ANDY BIRCHFIELD, ESQ.
                           Post Office Box 4160
                           Montgomery, Alabama 36103


For the Plaintiffs:        Gainsburgh Benjamin David
                             Meunier & Warshauer, LLC
                           BY:  GERALD E. MEUNIER, ESQ.
                           1100 Poydras Street, Suite 2800
                           New Orleans, Louisiana 70163

```
 1   Appearances:

 2
     For the Plaintiffs:                Goza & Honnold, LLC
 3                                       BY:  BRADLEY D. HONNOLD, ESQ.
                                         11181 Overbrook Road, Suite 200
 4                                       Leawood, Kansas 66211

 5
     For the Plaintiffs:                The Lambert Firm, PLC
 6                                       BY:  EMILY C. JEFFCOTT, ESQ.
                                         701 Magazine Street
 7                                       New Orleans, Louisiana 70130

 8
     For Bayer Healthcare               Wilkinson Walsh + Eskovitz, LLP
 9   Pharmaceuticals, Inc.              BY:  BETH A. WILKINSON, ESQ.
     and Bayer Pharma AG:               1900 M Street NW, Suite 800
10                                       Washington, DC 20036

11
     For Bayer Healthcare               Nelson Mullins Riley &
12   Pharmaceuticals, Inc.              Scarborough, LLP
     and Bayer Pharma AG:               BY:  DAVID E. DUKES, ESQ.
13                                       1320 Main Street, 17th Floor
                                         Columbia, South Carolina 29201
14

15   For Janssen Pharmaceuticals,       Irwin Fritchie Urquhart
     Inc. and Janssen Research &        & Moore, LLC
16   Development, LLC:                   BY:  JAMES B. IRWIN, ESQ.
                                         400 Poydras Street, Suite 2700
17                                       New Orleans, Louisiana 70130

18                                       Bradley
                                         BY:  LINDSEY C. BONEY, IV
19                                       One Federal Place
                                         1819 5th Ave. N
20                                       Birmingham, AL  35203

21

22   Official Court Reporter:           Tana J. Hess, CCR, FCRR, RMR
                                         500 Poydras Street, Room B-275
23                                       New Orleans, Louisiana 70130
                                         504.589.7781
24

25   Proceedings recorded by mechanical stenography using
     computer-aided transcription software.
```

8:06AM   1    knew that, I would sit down with the clients and -- the patient

8:06AM   2    and maybe come to a different decision.  We think it's

8:06AM   3    precisely when the subjective testimony on the causation prong

8:06AM   4    is equivocal, it's precisely in those cases that the jury

8:06AM   5    should also hear what a reasonable physician would have done

8:06AM   6    and be able to decide causation on that basis.

8:06AM   7                And so for the reasons we've previously argued,

8:06AM   8    Your Honor, we object to the Court's not having given

8:06AM   9    Plaintiffs' proposed charges 9 and 25 on the objective evidence

8:06AM   10   standard.

8:06AM   11               THE COURT:  You know, I think that the cases, when

8:06AM   12   you look at them closely, they indicate to me in any event that

8:06AM   13   the -- that that standard of objective evidence is -- is alive

8:06AM   14   and well, but it's alive and well in a fact pattern where there

8:06AM   15   is no treater or there is a treater who is -- has forgotten or

8:07AM   16   is absent or has not even expressed an opinion.

8:07AM   17               Here the treaters have expressed an opinion,

8:07AM   18   although frankly, their opinion seems to coincide with both

8:07AM   19   parties.  So I -- I understand Plaintiffs' position, but I

8:07AM   20   think that that introduces a credibility quotient, and it's

8:07AM   21   just up to the jury to decide on credibility.  So that's the

8:07AM   22   reason I deny the motion.

8:07AM   23               MR. MEUNIER:  Your Honor, our next objection again

8:07AM   24   can be discussed in reference to two of our proposed charges,

8:07AM   25   proposed charge Number 12 and proposed charge Number 3.  These

8:07AM   1   deal with federal regulations.

8:07AM   2           Proposed charge Number 12 instructs the jury

8:07AM   3   that the regulations set forth in 21 CFR Section

8:07AM   4   201.57(c)(6)(iii) sets forth a mandatory requirement that

8:07AM   5   helpful liability -- helpful laboratory tests be disclosed in a

8:08AM   6   warnings label for a prescription drug.  This regulation was in

8:08AM   7   fact shown to the jury, and it's clearly relevant to the case.

8:08AM   8   And we believe the Court should instruct the jury that the

8:08AM   9   referenced regulation specifically is relevant to the failure

8:08AM  10   to warn case made -- offered by Plaintiffs.

8:08AM  11           And then in jury charge Number 13, Judge, we

8:08AM  12   asked the Court to instruct the jury that the violation of such

8:08AM  13   regulatory standards may be considered as evidence of the

8:08AM  14   appropriate standard for determining whether instructions were

8:08AM  15   adequate, and we cite case law for that.

8:08AM  16           So we respectfully object to the failure to give

8:08AM  17   charges 12 and 13 proposed by Plaintiffs.

8:08AM  18       THE COURT:  I think taken as a whole, the jury

8:08AM  19   charges are accurate and they express what the Plaintiff has

8:08AM  20   indicated.  I don't think that zeroing in on something is even

8:08AM  21   helpful to the jury or helpful to the parties.  So that's the

8:08AM  22   reason I deny it.

8:09AM  23       MR. MEUNIER:  Our final objection, Judge, again, can

8:09AM  24   be referenced with two of the proposed charges, Numbers 27 and

8:09AM  25   28.  This deals with the strike-through label that the

| | |
|---|---|
| 11:29AM | 1 |
| 11:30AM | 2 |
| 11:30AM | 3 |
| 11:30AM | 4 |
| 11:30AM | 5 |
| 11:30AM | 6 |
| 11:30AM | 7 |
| 11:30AM | 8 |
| 11:30AM | 9 |
| 11:30AM | 10 |
| 11:30AM | 11 |
| 11:30AM | 12 |
| 11:30AM | 13 |
| 11:30AM | 14 |
| 11:30AM | 15 |
| 11:31AM | 16 |
| 11:31AM | 17 |
| 11:31AM | 18 |
| 11:31AM | 19 |
| 11:31AM | 20 |
| 11:31AM | 21 |
| 11:31AM | 22 |
| 11:31AM | 23 |
| 11:31AM | 24 |
| 11:31AM | 25 |

the opportunity to discuss the law with you.  We are going to close the courtroom, so anybody who wishes to leave should leave now.

**(Pause.)**

THE COURT:  All right.  Be seated, please.

Members of the jury, you have now heard all the evidence in this case as well as the final argument.  It becomes my duty to instruct you on the rules of law which you must apply in arriving at your decision.

I will first give you some general instructions which apply in all cases, and then I will give you some special instructions specific to this case.

First the general instructions.  As I mentioned on several occasions, in any jury trial there are in effect two judges.  I'm one of the judges.  The other is you, the jury.

It is my duty to preside over the trial and to determine what testimony and other evidence is admissible under the law for your consideration.  It is also my duty at the end of the trial to instruct you on the law applicable to the case.

You as jurors, however, are judges of the facts, but in determining what actually happened in this case, it is -- in reaching your decision as to the facts, it is your sworn duty to follow the law as I am now in the process of defining for you, and you must follow my instructions as a whole.  You have no right to disregard or give special

OFFICIAL TRANSCRIPT

attention to any one instruction or to question the wisdom or correctness of any rule that I may state to you.  That is, you must not substitute or follow your own notion or opinion as to what the law is or ought to be.  It is your duty to apply the law as I give it to you, regardless of the consequences.

By the same token, it is also your duty to base your verdict solely on the testimony and other evidence in the case without prejudice or sympathy.  That was a promise you made and the oath you took before being accepted by the parties and the Court as jurors, and they have a right to expect nothing less from you.

The case should be considered and decided by you as an action between persons of equal standing in the community, of equal worth and holding the same or similar stations in life.  All persons, all corporations, all entities stand equal before the law and are to be dealt with as equals in a court of justice.

As I stated earlier, it is your duty to determine the facts, and in so doing, you must concern yourself only with the evidence I have admitted in the case.  The term "evidence" includes the sworn testimony of the witnesses and the exhibits admitted into evidence into the record.

Remember that any statements or objections or arguments made by the lawyers are not evidence in the case. The function of the lawyer is to point out those things that

3:42PM  1        And this was signed by the jury foreperson on

3:42PM  2   June 12th, 2017.  Members of the jury, is that your verdict?

3:42PM  3        (All jurors indicating in the affirmative.)

3:42PM  4        **THE COURT:**  Does anybody wish the jury to be polled?

3:42PM  5        **MR. BIRCHFIELD:**  No, Your Honor.

3:42PM  6        **MS. WILKINSON:**  No, Your Honor.

3:42PM  7        **THE COURT:**  Okay.  Then jury, we'll make this a part

3:42PM  8   of the record, and the jury is discharged with the thanks of

3:42PM  9   the Court.

3:42PM  10       **THE CASE MANAGER:**  All rise.

3:42PM  11       (Whereupon the jury was excused from the courtroom.)

3:43PM  12       **THE COURT:**  Okay.  Court will stand in recess.

13

14

15

16                          **CERTIFICATE**

17        I, Tana J. Hess, CCR, FCRR, Official Court Reporter for the

18   United States District Court, Eastern District of Louisiana, certify

19   that the foregoing is a true and correct transcript, to the best of

20   my ability and understanding, from the record of proceedings in the

21   above-entitled matter.

22

23

24

25                    Tana J. Hess, CCR, FCRR, RMR
                       Official Court Reporter


                      OFFICIAL TRANSCRIPT