UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: XARELTO (RIVAROXABAN) | * | MDL 2592 |
| PRODUCTS LIABILITY LITIGATION | * | |
| | * | SECTION L |
| THIS DOCUMENT RELATES TO: | * | |
| *Orr, et al. v. Bayer Corp., et al.* | * | JUDGE ELDON E. FALLON |
| **Case No. 2:15-cv-03708** | * | |
| | * | MAGISTRATE JUDGE NORTH |

* * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF
RULE 59 MOTION FOR A NEW TRIAL**

I.      **INTRODUCTION**

In their Opposition to Plaintiffs' Rule 59 Motion for a New Trial [Record Doc. 7447] ("Def. Opp."), Defendants have tried to minimize the prejudice that befell the Orr family because of errors made during the trial of their case. Plaintiffs stand by their initial memorandum, with the clarifications provided below.

II.     **ARGUMENT**

A.      **Plaintiffs are entitled to a new trial because relevant global evidence from foreign labels was precluded.**

Defendants suggested at trial that there was no test that could be used to assess the anticoagulation status of a Xarelto patient. Defendants' experts also testified at trial that the language about PT testing that had been proposed by Plaintiffs' expert was "inappropriate" and "reckless" and "dangerous," even though Defendants had used that same language in their Canadian label.[1]

---

[1] *See, e.g.,* Exhibit 1, Trial Transcript, at 1219:20-1220:13, 1892:10-1893:25, 1894:12-17, 2282:9-2283:19.

It was essential for Plaintiffs to refute these presentations with evidence from the Canadian label to show the inconsistencies in the positions taken by Defendants in "real life" versus those taken by Defendants during trial, but because of the potentially different labeling standards between countries, this Court banned all foreign labels from evidence.[2] Plaintiffs were given a sliver of hope, however, when this Court limited the scope of this ruling by allowing the admission of "anything the Defendants have said to anyone, even foreign regulatory bodies."[3] Plaintiffs' counsel relied on this ruling when preparing for trial, and made this clear during the trial:

> MR. MEUNIER: Your Honor, again just for the record, I want to revert to your ruling which is what we are relying on.[4]
>
> * * *
>
> MR. BARR: And, Your Honor, your motion *in limine* order said that what they say to regulators is admissible. Anything they say to regulators is admissible, and this is Bayer talking to a regulator. And we relied upon that. I got up in opening and I said they say these things outside of the United States based on that.[5]
>
> * * *
>
> MR. MEUNIER: The only thing, we came into the trial based on an express ruling that anything Bayer said to regulators was admissible. That's what your ruling was. We could not get into what they did to comply with regulations in the foreign scheme, but anything they said to regulators. It was an express ruling on our motion *in limine*. We relied on it. So what Bayer tells regulators goes to the heart of what they knew…. And all I was trying to get across is that we did rely on a ruling that made it relevant and admissible to talk about what Bayer said to regulators.[6]

---

[2] *See In re Xarelto (Rivaroxaban) Prods. Liab. Litig.,* MDL No. 2592, 2017 U.S. Dist. LEXIS 81056, at *18-21 (E.D. La. May 26, 2017).

[3] *Id.* at *21.

[4] Exhibit 1, Trial Transcript, at 1335:9-10.

[5] *Id.* at 1343:19-24.

[6] *Id.* at 1346:5-12, 1346:23-25.

Plaintiffs' hopes were then dashed when they were prohibited at trial from meaningfully presenting any such evidence. More specifically, in compliance with this Court's ruling, Plaintiffs were prepared to present a copy of Defendants' response to Health Canada's clarification request. This response addressed the need and ability to use PT testing to assess the anticoagulation status of patients in the same position as Mrs. Orr: patients in desperate need of urgent surgery to potentially save their lives. The fact that Defendants made these statements in an official capacity to a regulatory agency supports the conclusion that Defendants must have believed in their veracity, because most entities would not present false information in an official response to a regulatory agency. Despite that, any efforts to provide this context for the statements were shut down.[7]

All Plaintiffs were able to present on Defendants' prior inconsistent statements about the need and ability to assess anticoagulation status with PT testing was a single paragraph from that official response. Defendants contend throughout their opposition brief that presentation of this single paragraph, along with stray arguments – not evidence – in Plaintiffs' opening and closing statements, was enough.[8] This, however, was far from enough. To the contrary, that paragraph was rendered almost meaningless because all context was removed from its presentation.

---

[7] *See, e.g., id.* at 1334:11-1337:18, 1341:20-1347:2, 1685:20-1687:5, 1689:15-23, 1977:24-1978:6, 1979:2-6. While Defendants suggest that Plaintiffs should have tried again when questioning Dr. Thomas, *see* Def. Opp. at 9, this was unnecessary. Since this issue already had been presented to, and ruled upon by, this Court, Plaintiffs were not required to present any further, futile, objections or explanations. *See* Fed. R. Evid. 103(b); *United States v. Ballis,* 28 F.3d 1399, 1406-07 (5th Cir. 1994). *See also* Plaintiffs' Reply Memorandum in Support of Rule 59 Motion for a New Trial (*Boudreaux)* [Record Doc. 7177], at 1-3, which is incorporated herein by reference.

[8] *See, e.g.,* Def. Opp. at 1-2, 4-5, 8-11.

Plaintiffs' counsel, and their expert, Dr. Parisian, were limited to saying only that this statement was made by Defendants. They could present no evidence to the jury about *who* had made the statement for Defendants. They could present no evidence to the jury about *to whom* that statement had been made. Thus, Plaintiffs lost any chance of the jury determining that Defendants must have believed in the veracity of their own statements because they made their statements in an official capacity. For all the jury knew, these statements could have been made in emails between low-level employees, debating the value of PT testing. The problems associated with the piecemeal presentation of the single paragraph from this document, without any context, also are evidenced by the fact that even Defendants' own expert, Dr. Khatib, essentially said the statements were meaningless when presented to him on cross-examination because the document was incomplete: "I don't have a whole document here. I am not going to comment on what Bayer thinks or doesn't think. I'm not going to look at snippets."[9]

Defendants also claim in their opposition that this does not matter because the statements from the Canadian materials do not support Plaintiffs' theory that PT testing can assist surgeons in determining whether it is safe to proceed to surgery.[10] That, however, is only Defendants' opinion. As this Court recognized, these statements from the Canadian materials are arguably supportive of Plaintiffs' position,[11] and the jury was entitled to make that factual judgment call.

---

[9] *See* Exhibit 1, Trial Transcript, at 1976:5-19. *See also* Plaintiffs' counsel's arguments at 1689:19-23 ("And, Your Honor, for the record, plaintiffs object. We actually believe the entirety of the document should come in and not bits and pieces. So for the purposes of the record, for that reason, we think the entire document should come in."); 1977:24-1978:6 ("You obviously know what this is about. It's the Canadian label again. I think it continues to prejudice the plaintiffs that we can't show the label. It has – I mean, they keep criticizing the language from their own label, and they put up language – I don't think that's anywhere in the actual label about not being able to use PT. And, Your Honor, their own witness just asked to see the whole document.")

[10] *See* Def. Opp. at 6-7.

[11] *See* Exhibit 1, Trial Transcript, at 1220:25-1221:4.

As to Defendants' remaining arguments regarding the propriety of this Court's rulings on the admission of foreign labels and Defendants' communications to foreign regulatory agencies, Plaintiffs refer to and rely upon their initial memorandum in support of this motion.[12]

**B.      Plaintiffs are entitled to a new trial because relevant evidence from business records was precluded.**

Defendants opened their argument on this second issue with a claim of waiver, based on the following single sentence uttered by Plaintiffs' counsel during a sidebar discussion: "I'm not going to go into this."[13] Defendants' failure to place this statement into context with additional statements made by Plaintiffs' counsel and this Court is dubious at best.

As is clearly evident from the record, in responding to objections to placing these business records into evidence, Plaintiffs' counsel referred to this Court's prior ruling in favor of the admission of any statements made by Defendants to anyone, including foreign regulatory agencies. This Court said it already understood the issue, and in response, Plaintiffs' counsel essentially agreed not to repeat the arguments. The discourse was as follows:

---

[12] In an attempt to overcome the cases cited in Plaintiffs' initial memorandum, Defendants cited purportedly opposing cases. *See* Def. Opp. at 6-7 n.4-5. While most of their cited cases did preclude evidence of actions taken by foreign agencies, those cases also either allowed the admission of, or failed to rule on the admissibility of, communications between the defendants and those foreign agencies to establish the defendants' knowledge. *See, e.g., In re Mirena IUD Prods. Liab. Litig.,* 169 F. Supp. 3d 396, 487-88 (S.D.N.Y. 2016) (allowing evidence of Bayer's interactions with foreign agency to establish what Bayer knew); *In re Seroquel Prods. Liab. Litig.*, 601 F. Supp. 2d 1313, 1318-19 (M.D. Fla. 2009) (noting its preclusion of evidence about actions taken by the foreign regulatory agency did not extend to evidence about statements made by the foreign regulatory agency about safety because such evidence was pertinent to the defendants' notice, knowledge, and scienter); *McDowell v. Eli Lilly & Co.,* No. 13-cv-3786, 2015 WL 845720, at *5 (S.D.N.Y. Feb. 26, 2015) (failing to address whether expert could rely on statements defendant made to foreign agency to establish knowledge); *In re Viagra Prods. Liab. Litig.*, 658 F. Supp. 2d 950, 965-66 (D. Minn. 2009) (same); *In re Baycol Prods. Litig.,* 532 F. Supp. 2d 1029, 1054 (D. Minn. 2007) (same). In another cited case, the court considered foreign evidence and simply determined it was not sufficient to establish evidence of a safer alternative design. *See Jones v. Lederle Labs.,* 785 F. Supp. 1123, 1126-27 (E.D.N.Y. 1992).

[13] *See* Def. Opp. at 15.

MR. BARR: Your Honor, the exact question that they were responding to was to provide a summary of all information known to you relevant to this issue. That's what we're talking about. We're talking about what they knew and when they knew it.

THE COURT: I understand that. But you – we've got a problem that I'm trying to solve, and we can't get into what you are doing with regulatory and what's regulatory's response to it. It's what they knew and when they knew it. Now, we've got to figure a way of dealing with that so I don't have to keep telling the jury to disregard it.

MR. MEUNIER: Your Honor, again just for the record, I want to revert to your ruling which is what we are relying on.

THE COURT: I got it. I understand the issue.

MR. BARR: And I'm not going to go into this. This is going to be the last time I cover it.[14]

This was not a waiver, by any stretch of the imagination. It was an incorporation of past arguments by reference, in recognition of apparent frustration by this Court in being faced with hearing the same arguments it had heard in the past. Indeed, Federal Rule of Evidence 103(b) explicitly provides that once there is a ruling on the record, even if that ruling is entered before trial, there is no need to renew the objection or make a subsequent offer of proof.[15] Even without this, non-waiver is clear, because Plaintiffs' counsel later continued to argue, quite vigorously, in favor of presenting the evidence.[16]

Defendants also claim that the materials were not business records, without stating exactly why they were not business records. However, Mr. Jalota admitted that his direct report had sent the email; he admitted that he had received it; and he admitted it they had been kept in the ordinary

---

[14] *See* Exhibit 1, Trial Transcript, at 1334:23-1335:13.

[15] *See also Ballis,* 28 F.3d at 1406-07. *See also* Plaintiffs' Reply Memorandum in Support of Rule 59 Motion for a New Trial (*Boudreaux)* [Record Doc. 7177], at 1-3, which is incorporated herein by reference.

[16] *See* Exhibit 1, Trial Transcript, at 1336:9-1337:18, 1341:20-1347:2.

course of business.[17] At trial, the Court determined that they were not business records solely

because Mr. Jalota said he had not read them,[18] but by its own terms, Federal Rule of Evidence

803(6) does not include any requirement for *reading* the documents at hand. The rule instead refers

only to *making* and *keeping* the records. Indeed, if reading were the standard, a party could avoid

the production of any business record simply by stating it had not been read.

As to Defendants' remaining arguments regarding the exclusion of these business records,

Plaintiffs refer to and rely upon their initial memorandum in support of this motion.

### C.      Plaintiffs are entitled to a new trial because of instructional errors.

Defendants also claim that the proposed instructions are incorrect statements of the law,

but there is no merit to this claim. Plaintiffs provided supporting citations from federal regulations

and case law in their initial and revised supplemental submissions,[19] and referred to those citations

again at the conclusion of trial when renewing their request for the instructions.[20] Contrary to what

Defendants suggest,[21] the law does not require instructions on every regulation in order to provide

an instruction on a single, specific, applicable regulation.

Likewise, contrary to what Defendants suggest,[22] Plaintiffs did not seek to hold Defendants

liable for violation of a federal regulation, which claim would have been preempted (as correctly

noted by Defendants). Plaintiffs instead sought to have such violation be considered as evidence

---

[17] *See id.* at 1338:14-17, 1339:10-13; 1339:20-24.

[18] *See id.* at 1342:7-19.

[19] *See* Plaintiffs' Proposed Jury Instructions [Record Doc. 6511], at Nos. 12-13; Plaintiffs' Revised and Supplemental Proposed Jury Instructions [Record Doc. 6732], at Nos. 12-13.

[20] *See* Exhibit 1, Trial Transcript, at 2316:23-2317:17.

[21] *See* Def. Opp. at 18.

[22] *See id.* at 18-20.

supporting – but not establishing – the existence of a state law violation, and cited case law on this point.

Finally, contrary to what Defendants suggest,[23] the fact that Plaintiffs' expert, Dr. Parisian, commented on the regulation does not diminish the need for the Court to instruct the jury about the regulation. This is particularly true here, where the Court admonished the jury that the Court (and, impliedly, not witnesses) would provide instructions on the rules of law that had to be followed.[24]

As to Defendants' remaining arguments regarding the propriety of this Court's ruling on this issue, Plaintiffs refer to and rely upon their initial memorandum in support of this motion.

### D.      **Defendants were not entitled to judgment as a matter of law.**

Finally, Defendants claim, inaccurately, that any errors were harmless because Defendants should have been granted a judgment dismissing Plaintiffs' claims as a matter of law.[25] This argument lacks relevance for present purposes, and, in any event, lacks merit for the reasons described by the Court following the presentation of Defendants' Motion for Judgment as a Matter of Law.[26]

### III.     **CONCLUSION**

As addressed in detail in Plaintiffs' initial memorandum, and as supplemented in this memorandum, each error, on its own, and certainly when considered cumulatively, affected the substantial rights of Plaintiffs. As a result of the significant and unfair prejudice caused by each error, and the cumulative effect of all errors, Plaintiffs are entitled to a new trial.

---

[23] *See id.* at 21.

[24] *See* Exhibit 1, Trial Transcript, at 2414:18-2415:5.

[25] *See* Def. Opp. at 22.

[26] *See* Exhibit 1, Trial Transcript, at 2301:3-2302:11.

Dated: September 15, 2017

Respectfully submitted,

*/s/ Leonard A. Davis*
Leonard A. Davis, Esq. (Bar No. 14190)
**HERMAN, HERMAN & KATZ, LLC**
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Email: ldavis@hhklawfirm.com

Gerald E. Meunier (Bar No. 9471)
**GAINSBURGH BENJAMIN DAVID MEUNIER & WARSHAUER, LLC**
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
Email: gmeunier@gainsben.com

*Plaintiffs' Liaison Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2017 a copy of the above and foregoing has contemporaneously with or before filing been served on all parties or their attorneys in a manner authorized by FRCP 5(b)(2), Local Rule 5.1 of the Eastern District of Louisiana and via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre-Trial Order No. 17.

*/s/ Leonard A. Davis*
**Leonard A. Davis**

9