# EXHIBIT "1"

```
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF LOUISIANA
 2

 3   ************************************************************

     IN RE:  XARELTO (RIVAROXABAN)
 4   PRODUCTS LIABILITY LITIGATION        Docket No. 14-MD-2592
                                          Section "L"
 5                                        New Orleans, Louisiana
     THIS DOCUMENT RELATES TO:            Monday, June 6, 2017
 6   Joseph Orr, et al
     v. Janssen Research &
 7   Development, et. al.,
     Case No. 15-CV-3708
 8

 9   ************************************************************

10                  TRANSCRIPT OF TRIAL PROCEEDINGS
            HEARD BEFORE THE HONORABLE ELDON E. FALLON
11                   UNITED STATES DISTRICT JUDGE
                     VOLUME VI - AFTERNOON SESSION
12

13   APPEARANCES:

14   FOR THE PLAINTIFFS'
     LIAISON COUNSEL:                 LEVIN PAPANTONIO
15                                    BRIAN H. BARR, ESQ.
                                      316 Baylen Street, Suite 600
16                                    Pensacola, FL 32502

17                                    BEASLEY ALLEN
                                      BY:  ANDY BIRCHFIELD, ESQ.
18                                    P.O. Box 4160
                                      Montgomery, AL 36103

19                                    GAINSBURGH BENJAMIN DAVID
                                      MEUNIER & WARSHAUER
20                                    BY:  GERALD E. MEUNIER, ESQ.
                                      2800 Energy Centre
21                                    1100 Poydras Street
                                      New Orleans, LA 70163
22
                                      GOZA & HONNOLD, LLC
23                                    BY:  BRADLEY D. HONNOLD, ESQ.
                                      11181 Overbrook Road, Suite 200
24                                    Leawood, Kansas 66211

25
```

OFFICIAL TRANSCRIPT

```
 1                                    THE LAMBERT FIRM, PLC
                                      BY:  EMILY JEFFCOTT, ESQ.
 2                                    701 Magazine Street
                                      New Orleans, Louisiana 70130
 3

 4    FOR THE DEFENDANT BAYER
      HEALTHCARE PHARMACEUTICALS
 5    INC. and BAYER PHARMA AG:       WILKINSON WALSH & ESKOVITZ, LLP
                                      BY:  BETH A. WILKINSON, ESQ.
 6                                    1900 M Street NW, Suite 800
                                      Washington, DC 20036
 7
                                      Nelson Mullins Riley
 8                                    & Scarborough, LLP
                                      BY:  DAVID E. DUKES, ESQ.
 9                                    Meridian, 17th Floor
                                      1320 Main Street
10                                    Columbia, SC 29201

11
      FOR JANSSEN PHARMACEUTICALS,
12    INC. AND JANSSEN RESEARCH &
      DEVELOPMENT, LLC:               IRWIN FRITCHIE URQUHART & MOORE
13                                    BY:  JAMES B. IRWIN, ESQ.
                                      400 Poydras St., Suite 2700
14                                    New Orleans, LA 70130

15

16    Official Court Reporter:       Karen A. Ibos, CCR, RPR, CRR, RMR
                                      500 Poydras Street, B-275
17                                    New Orleans, Louisiana 70130
                                      (504) 589-7776
18

19      Proceedings recorded by mechanical stenography, transcript
      produced by computer.
20

21

22

23

24

25
```

OFFICIAL TRANSCRIPT

| | |
|---|---|
| 17:25:21 | 1 |
| 17:25:47 | 2 |
| 17:25:47 | 3 |
| 17:25:51 | 4 |
| 17:25:55 | 5 |
| 17:25:59 | 6 |
| 17:26:02 | 7 |
| 17:26:05 | 8 |
| 17:26:06 | 9 |
| 17:26:11 | 10 |
| 17:26:12 | 11 |
| 17:26:16 | 12 |
| 17:26:18 | 13 |
| 17:26:21 | 14 |
| 17:26:24 | 15 |
| 17:26:28 | 16 |
| 17:26:34 | 17 |
| 17:26:41 | 18 |
| 17:26:46 | 19 |
| 17:26:48 | 20 |
| 17:26:51 | 21 |
| 17:26:55 | 22 |
| 17:27:02 | 23 |
| 17:27:07 | 24 |
| 17:27:12 | 25 |

morning at 8:30.  Okay.

(WHEREUPON, THE JURY EXITED THE COURTROOM.)

THE COURT:  Okay.  I will see you all tomorrow at 8:15, and I'll either rule at that time or whatever on that other matter that we have before me.

MR. BARR:  We will probably have to take up the Canadian issue in the morning, the Canadian label issue, that will come up with Mr. Jalota.

THE COURT:  Okay.  I can do that now, if you want.  Are you tired?

MR. BARR:  I am happy to do it now -- or I should say I am happy to let Jerry do it now.

THE COURT:  I really understand the issue, I read it, I heard you all before, so I am ready to do a ruling.

I have before me a motion, the defendant seeks to exclude certain documents and statements reflecting what the doctor told or communicated in some way to a foreign regulatory agency; namely, the Canadian Regulatory Agency.  I assume it's something like the FDA here.

In the opening statement, the defendant said the following:  "The plaintiffs have suggested to you that there is actually tests that that we wouldn't put on the label.  Think about what they're saying.  They're saying that we know about a test and we lied about it because we didn't want to save people's lives. That's what they're asking you to believe in this case."

17:27:17 1          In short, it seems to me the defendant suggests that

17:27:20 2     there is no such test and that the defendants know of no such test

17:27:27 3     or any test.  This is consistent, frankly, with what the

17:27:32 4     defendant's position is, that there is no test and they don't know

17:27:37 5     of any.

17:27:37 6          Yet they told the Canadian authorities the following:

17:27:42 7     "Although there is no need to monitor clinical practice in certain

17:27:49 8     in-treatment situations such as an overdose, acute bleeding, or

17:27:54 9     urgent surgery, in cases of suspected or noncompliance, I assume

17:27:59 10    not taking the drug, or in other unusual circumstances, assessment

17:28:06 11    of the anticoagulant effect of rivaroxaban may be appropriate."

17:28:12 12    "Accordingly," they say, "measuring PT may be useful to inform

17:28:19 13    clinical decisions in these circumstances."

17:28:23 14         The significant issue in the case, it seems to me, is

17:28:26 15    what the defendant knew, when they knew it, and whether or not any

17:28:34 16    prior statements that conflict with their position is admissible.

17:28:40 17         I am concerned about the fact that this is a statement

17:28:44 18    made in connection, I assume, with the approval of the label by

17:28:52 19    Canada.  Canada, like Europe, has a different process and they do

17:28:57 20    have a different process and, therefore, I had felt that it was

17:29:04 21    confusing, at best, to perhaps not even relevant under 401, but if

17:29:12 22    relevant, certainly not admissible under 403 to allow labels from

17:29:18 23    Canada to come into the litigation or labels from Europe to come

17:29:22 24    into the litigation.

17:29:25 25         But this is a statement made, and it's at least arguably

17:29:33 1    inconsistent with what the position of the defendant is.  It's

17:29:42 2    certainly an 801(d)(2) situation where it would be admissible, even

17:29:48 3    though it's a prior statement; it would also be admissible under

17:29:54 4    613 as a prior statement.

17:29:57 5         So I am going to allow it, but I will instruct the jury

17:30:03 6    that it's only relevant to what the defendant knew or when they

17:30:08 7    knew it.  Knowledge of the defendant.

17:30:13 8         Any reference to any Canadian label, I am going to tell

17:30:19 9    them to disregard.  I would hope I wouldn't have to do that because

17:30:22 10   I hope that doesn't come up from the plaintiff's standpoint.  I am

17:30:25 11   not interested in what the label is or any reference to the label.

17:30:31 12   If a reference does come into -- mentioning the label, I am going

17:30:36 13   to instruct the jury to disregard that and to only consider it

17:30:41 14   insofar as a statement is made regarding when the defendant knew

17:30:47 15   the information and what they knew.

17:30:51 16        So that's going to be my ruling.  I will allow it, but I

17:30:55 17   will -- I may have to have an instruction to the jury to that

17:30:59 18   effect.

17:31:00 19        MR. MEUNIER:  Your Honor, I understand the Court's

17:31:03 20   ruling, and there will be reference to the label, so I think that

17:31:05 21   limiting instruction you mentioned --

17:31:07 22        THE COURT:  Well, I will instruct the jury then to

17:31:09 23   disregard.  And I'll explain why.  The label reference can be

17:31:14 24   confusing, and I am going to have to surgically remove that.

17:31:20 25        I wish I didn't have to, but it's a situation where the

17:31:25  1   whole theory of the defendant's case is based on that, that there

17:31:33  2   was no test available.

17:31:36  3          Now, you can weasel word it or at least use words like

17:31:41  4   "no credible test," "no satisfactory test," but, really, that

17:31:49  5   created the situation where there is no test that does this.  The

17:31:52  6   plaintiffs say there is a test that would be helpful.  The

17:31:56  7   defendants say it's not helpful.

17:31:59  8          So the concepts -- I mean, words that put this issue, at

17:32:06  9   least, in play, I think the jury ought to hear it.  But I am going

17:32:13 10   to try to surgically remove that from the label and explain to them

17:32:17 11   why.

17:32:18 12          Thank you very much.  The court will stand in recess.

17:32:20 13          THE DEPUTY CLERK:  All rise.

17:32:22 14      (WHEREUPON, THE PROCEEDINGS WERE CONCLUDED.)

15

16                      * * * * * *

17

18                   REPORTER'S CERTIFICATE

19          I, Karen A. Ibos, CCR, Official Court Reporter, United
         States District Court, Eastern District of Louisiana, do hereby
20       certify that the foregoing is a true and correct transcript, to the
         best of my ability and understanding, from the record of the
21       proceedings in the above-entitled and numbered matter.

22
                      /s/ Karen A. Ibos
23                   Karen A. Ibos, CCR, RPR, CRR, RMR
                     Official Court Reporter

24

25

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


IN RE:  XARELTO (RIVAROXABAN)
PRODUCTS LIABILITY LITIGATION

                                    Docket No. 14-MD-2592
THIS DOCUMENT RELATES TO:           Section L
                                    New Orleans, Louisiana
Joseph Orr, Jr., as Lawful          Tuesday, June 6, 2017
Surviving Spouse of
*Sharyn Orr v. Janssen, et al.*
*Case No. 2:15-cv-03708*

*********************************************************************

**TRANSCRIPT OF TRIAL PROCEEDINGS**
**HEARD BEFORE THE HONORABLE ELDON E. FALLON,**
**UNITED STATES DISTRICT JUDGE,**
**AND A JURY.**
**VOLUME V - MORNING SESSION**

*********************************************************************

**APPEARANCES:**


FOR THE PLAINTIFFS'          MR. ANTHONY BIRCHFIELD, JR.
LIAISON COUNSEL:             Beasley Allen Crow Methvin
                               Portis & Miles
                             Post Office Box 4160
                             Montgomery, AL  36103

                             MR. BRIAN H. BARR
                             MR. NEIL E. McWILLIAMS
                             Levin Papantonio Thomas
                               Mitchell Rafferty & Proctor
                             316 Baylen Street
                             Suite 600
                             Pensacola, FL 32502

                             MR. GERALD EDWARD MEUNIER
                             Gainsburgh, Benjamin, David,
                               Meunier & Warshauer
                             Energy Centre
                             1100 Poydras Street
                             Suite 2800
                             New Orleans, LA  70163-2800

**OFFICIAL TRANSCRIPT**

```
                                    MS. EMILY JEFFCOTT
                                    The Lambert Firm, PLC
                                    701 Magazine Street
                                    New Orleans, LA  70130

                                    MR. BRADLEY D. HONNOLD
                                    Goza & Honnold, LLC
                                    11181 Overbrook Road
                                    Suite 200
                                    Leawood, KS 66211


FOR THE DEFENDANT JANSSEN           MR. JAMES B. IRWIN, V
PHARMACEUTICALS, INC.,              Irwin Fritchie
and JANSSEN RESEARCH &                 Urquhart & Moore, LLC
DEVELOPMENT, LLC:                   400 Poydras Street
                                    Suite 2700
                                    New Orleans, LA  70130


FOR THE DEFENDANT                   MR. DAVID E. DUKES
BAYER HEALTHCARE                    Nelson Mullins Riley &
PHARMACEUTICALS, INC.,                 Scarborough, LLP and
BAYER PHARMA AG:                    Meridian, 17th Floor
                                    1320 Main Street
                                    Columbia, SC  29201

                                    MS. BETH A. WILKINSON
                                    Wilkinson Walsh + Eskovitz, LLP
                                    1900 M Street NW
                                    Suite 800
                                    Washington, DC 20036


REPORTED BY:  Mary V. Thompson, RMR, FCRR
              United States District Court
              500 Poydras, Room B275
              New Orleans, LA  70130
```

**OFFICIAL TRANSCRIPT**

1      **A.**    I do.

2      **Q.**    And you said that you may get updates about it, but you

3   weren't directly involved, right?

4      **A.**    Correct.  We get updates.  We may be asked to provide

5   our perspectives, but the final decision is with Bayer, sir.

6      **Q.**    So you are aware of the position that Bayer takes

7   outside of the United States, right?

8      **A.**    I would have to see what you're trying to refer to,

9   sir.

10     **Q.**    Okay.  Did somebody hand you 3061443 and 3061444?

11          MR. BARR:  Your Honor, at this time plaintiffs move

12   into evidence 3061443 as Exhibit 161 and 3061444 as Exhibit 162.

13          MR. IRWIN:  Your Honor, may we approach?

14          THE COURT:  Yeah.

15                      **SIDEBAR ON THE RECORD**

16          MR. IRWIN:  Your Honor, it's the same slippery slope.

17   It is a quilt and a dialogue back and forth between the regulator

18   and the company, and it is impossible, really, to separate one

19   from the other.  They're joined at the hip.  And all this will do

20   is lead the jury to be misled about the situation that we're

21   concerned about.  It invites confusion under 403, and we would

22   ask that it not be used at all.

23          MR. BARR:  Your Honor, the exact question that they

24   were responding to was to provide a summary of all information

25   known to you relevant to this issue.

**OFFICIAL TRANSCRIPT**

1        That's what we're talking about.  We're talking about
2   what they knew and when they knew it.
3        THE COURT:  I understand that.  But you -- we've got a
4   problem that I'm trying to solve, and we can't get into what you
5   are doing with regulatory and what's regulatory's response to it.
6   It's what they knew and when they knew it.
7        Now, we've got to figure a way of dealing with that so
8   I don't have to keep telling the jury to disregard it.
9        MR. MEUNIER:  Your Honor, again just for the record, I
10   want to revert to your ruling which is what we are relying on.
11        THE COURT:  I got it.  I understand the issue.
12        MR. BARR:  And I'm not going to go into this.  This is
13   going to be the last time I cover it.
14        THE COURT:  I'm not going to admit it into evidence,
15   then.  You can use it and show him and say, Didn't Bayer say such
16   and such.
17        But if you put stuff in that there's discussion by and
18   between the regulatory agencies, there's a problem there that I'm
19   trying to avoid.  If we contaminate the evidence, any verdict is
20   going to be contaminated.  So I'm trying to deal with it so that
21   they understand -- the jury understands whether or not they knew.
22   And not -- you know, the context of it is not the significant
23   part.  What they knew and when they knew it is the significant
24   part.
25        MR. BARR:  Okay.

**OFFICIAL TRANSCRIPT**

1    THE COURT:  When you start putting it in context, it

2    becomes problematic.

3    MR. BARR:  Can we --

4    MR. IRWIN:  There's no way to avoid that respectfully,

5    Your Honor, and putting it up in front of the jury is what --

6    THE COURT:  That's what I'm saying.  Maybe the way of

7    doing it is to say look at it just like you do with the journals.

8    MR. IRWIN:  And don't flash it up on the screen.

9    MR. BARR:  But it needs to be on the screen for the

10   jury to follow.  If we don't want to admit it into evidence, I

11   can live with that.  And I'll try to ask the question in a way

12   where it is, You know Bayer said this, instead of This is what

13   they said to the Canadian regulator.

14   THE COURT:  I'm going to have to tell them to disregard

15   things, and the more the judge says "disregard," it's a problem.

16   MR. BARR:  I understand, Your Honor.  This is the last

17   time we're going into this, but it's --

18   MR. IRWIN:  Your Honor, he has -- the only way he can

19   respond to it is a response from a regulatory question coming

20   from a foreign regulator.  That's the only response he can make.

21   MR. BARR:  I don't agree with that.  He can say this is

22   what Bayer said.  This is what they said.  This is what they

23   knew.

24   I mean, they represented in opening statement that they

25   don't know any of this and that we think that they are lying

**OFFICIAL TRANSCRIPT**

1    about it.  You can't open that door like that and accuse us of

2    that and then not say what they know.

3           MR. IRWIN:  Ask him the question, "If Bayer said this."

4    And he can read it, you direct him to it.  Don't show it to the

5    jury, and he'll answer the question, Bayer said this.

6           THE COURT:  Let's try this.

7           MR. BARR:  So this is complete, we had to listen to a

8    cross-examination yesterday where Ms. Wilkinson sat there and

9    cross-examined Dr. Liechty accusing him of doing something

10   dangerous by using PT.  This directly contradicts that it is

11   dangerous.

12          THE COURT:  I understand it.  I'm trying to keep it out

13   of context.  That's the deal.  So let's see if you can ask him

14   the question --

15          MR. BARR:  Okay.

16          THE COURT:  -- without going there.  Let's go with

17   that.

18          MR. BARR:  I'll do my best.

19          THE COURT:  Yeah.

20                 **AFTER THE SIDEBAR IN OPEN COURT**

21          THE COURT:  Members of the jury, the problem that's

22   presented is I'm trying to focus the attorneys on what the

23   company knew and when they knew it.

24          And some of the discussion -- the context is within

25   other regulatory agencies, which has nothing to do with this

1    particular case.

2            Why they did it or whatever is context.  What they knew

3    and when they knew it is the whole relevance of this line of

4    questioning.

5            So let's ask the question.

6            MR. BARR:  Your Honor, may I publish this?

7            THE COURT:  Well --

8            MR. BARR:  Not admit it.

9            THE COURT:  -- let's ask the question first.

10   MR. BARR:  (CONTINUING)

11       Q.   Mr. Jalota, you have in front of you a document,

12   3061443.  Do you see that?

13       A.   -1443, I do.

14       Q.   This is an e-mail you received on November 19, 2014,

15   right?

16       A.   That is correct.  Lori is my direct report and she

17   forwarded it to me because -- as information.  But, again, I was

18   not involved in it, nor would have probably spent more time

19   looking at it also.

20           MR. IRWIN:  Your Honor, then I move to strike any

21   questions that -- this witness has said he was not involved in

22   these arrangements.

23           MR. BARR:  Your Honor, he got the e-mail.  We've

24   established it's a business record he received.

25           THE COURT:  Okay.  I understand.  He received the

**OFFICIAL TRANSCRIPT**

1   e-mail.

2           I assume you received the e-mail and I assume you read

3   the e-mail; is that correct?

4           THE WITNESS:  I would have -- Your Honor, it appears I

5   received the e-mail.  I don't recall it.  But as to any more

6   information, looking at the attachments, I don't recall even -- I

7   don't recall looking at it or -- I don't recall.  That's all I

8   can say to you, sir.

9   MR. BARR:  (CONTINUING)

10      Q.   You clearly received it, right?

11      A.   I received it as -- but not as a direct person.  This

12  is because Lori is my direct report.  So she forwarded it to me

13  as this is it.  Other than that, she didn't ask for comments.

14  She didn't ask for anything else, just this is what is happening.

15      Q.   So you received this e-mail?

16      A.   But --

17      Q.   Go ahead.

18           THE COURT:  Go ahead.  Ask the question.

19  MR. BARR:  (CONTINUING)

20      Q.   You received this e-mail in the ordinary course of

21  business, correct?

22      A.   I would have -- I would have received it as part of her

23  sending something to me.  Again, she doesn't send me everything.

24  There may have been a reason for this.  I don't know, sir.

25      Q.   And she sent to you a document that Bayer wrote, right?

**OFFICIAL TRANSCRIPT**

1     **A.**   That is correct, sir.

2     **Q.**   Okay.  And so let's look at that document.

3          MR. IRWIN:  I object, Your Honor.

4          THE COURT:  Just let him look at the document.  That's

5     the question.

6          MR. BARR:  That's all I'm doing.

7          THE COURT:  Look at the document, sir.

8          THE WITNESS:  I have, sir.

9          THE COURT:  Tell him the page.

10    MR. BARR:  (CONTINUING)

11    **Q.**   What I'm looking at is Page -- let's start with Page 2

12    of the document.  Are you there?

13    **A.**   Yes.

14    **Q.**   Bayer was asked a series of questions, and they say

15    that we're providing our full response, right?

16    **A.**   I would add a clarification --

17         MR. IRWIN:  Your Honor, I would like to ask this

18    witness if he read -- excuse me.

19         THE COURT:  Wait just a minute.

20         MR. IRWIN:  I'd ask him to -- I would like him to ask

21    this witness if he has read this page -- if he ever read this

22    page or ever did anything with it.

23    MR. BARR:  (CONTINUING)

24    **Q.**   Have you read this page?

25    **A.**   I have not -- I've not read it.  If you would like me

**OFFICIAL TRANSCRIPT**

1    to read it now, I'm happy to do that, sir.

2        Q.    So in the course of your duties, you routinely get

3    e-mails and just ignore them and don't read them?

4            MR. IRWIN:  Object, Your Honor.  No foundation,

5    argumentative.

6            THE COURT:  I sustain the objection.  Let's move on.

7    We're going to have to move on.

8            MR. BARR:  It would be a lot easier if I could just ask

9    him the question.

10           THE COURT:  Well, no.  If he --

11           MR. BARR:  I'm sorry.

12           THE COURT:  -- hasn't even read the page, I'm not going

13   to -- let's get on to something else.

14           MR. BARR:  Your Honor, he received this e-mail.

15           THE COURT:  Yeah, he received it, but he said he didn't

16   even read it.

17           MR. BARR:  Your Honor, can we approach?

18           THE COURT:  Yeah.  Sure.

19                        SIDEBAR ON THE RECORD

20           THE COURT:  The problem you're having is that e-mails

21   don't get into evidence simply because they're used in the usual

22   course of business.  Otherwise, you could put e-mails in without

23   any witness.

24           If a witness got the e-mail but they didn't read it,

25   what's he going to testify to?  I don't know.  He is going to

**OFFICIAL TRANSCRIPT**

1    say, I haven't read it.

2         MR. BARR:  Your Honor, there's no question he received

3    the e-mail.  We have been -- throughout this trial -- throughout

4    this trial, if somebody receives an e-mail, there has been no

5    objection, none.  And now we're doing this solely to keep this

6    out.

7         THE COURT:  No.  The problem is that this e-mail is

8    just more than just an e-mail, it's an attachment.  And the

9    fellow gets the attachment, as I understand it.  He's not a part

10   of it.  He gets an attachment.  He says now that he hasn't even

11   read the attachment.

12        So how does it get in if he didn't read it, doesn't

13   know anything about it, and it's not a question -- and it's not

14   business records?  It's not a business record.

15        MR. BARR:  Your Honor, he said he got it in the

16   ordinary course of business.  That's what he said.

17        THE COURT:  But that doesn't make an e-mail a business

18   record.  It just -- you can't do that.  Otherwise, every e-mail

19   you wouldn't even need a witness for.

20        MR. BIRCHFIELD:  Your Honor, as opposed to admitting

21   the e-mail or the attachment, where Mr. Barr was headed was

22   reading him the statement in there and asking him if he

23   understands that that is what Bayer tells people outside the U.S.

24        Ask him -- ask him that question.  We're not asking --

25   at this point we're not asking to move the document into

**OFFICIAL TRANSCRIPT**

1    evidence.

2              THE COURT:  All right.

3              MR. IRWIN:  Your Honor, they could ask any question

4    like that, but they shouldn't imply that it's in this document,

5    that has been such a subject of controversy, in front of the

6    jury.

7              And another thing about the fact that this is just an

8    attachment to an e-mail, he does not deal with Canadian labeling.

9    That's not what he does.  He deals with U.S. labeling.

10             THE COURT:  No, I understand.

11             MR. IRWIN:  All the more reason --

12             THE COURT:  That's part of it.

13             MR. BARR:  Your Honor, part of the problem here is Jim

14   can say that all he wants.  Somebody decided it was important

15   enough to send him the e-mail to tell him here's what's going on

16   in Canada.  And maybe they wanted this historical perspective,

17   who knows.  But they sent it to him.  And he says he gets his

18   e-mails and he looks at them.

19             And, Your Honor, your motion *in limine* order said that

20   what they say to regulators is admissible.  Anything they say to

21   regulators is admissible, and this is Bayer talking to a

22   regulator.  And we relied upon that.  I got up in opening and I

23   said they say these things outside of the United States based

24   upon that.

25             THE COURT:  But --

**OFFICIAL TRANSCRIPT**

1          MR. IRWIN:  There is no foundation.

2          THE COURT:  It's a play-within-a-play situation and

3    that's what I'm trying to deal with.  And it's a complicated

4    problem, because, as I said, there is -- both sides of it is a

5    problem.

6          You're right about they said things, but when you put

7    them in context, it gets confusing to the jury.  And they say

8    certain things in response back and forth.  It is just the

9    problem when you are dealing with FDA and Canadian or FDA and

10   Europe.

11         Look, I think that they may have a point, but let's do

12   it that way.  But just ask him.  The point is whether they knew

13   it -- whether he knew it, whether Bayer knew it, and when they

14   knew it.

15         MR. BARR:  Okay.

16         THE COURT:  Let's ask him, you know -- that's the

17   issue.

18         MR. BARR:  Then I'll read the statement and I'll ask

19   him if he understood that.

20         MR. BIRCHFIELD:  That's where we were headed, Your

21   Honor, when Jim objected.

22         THE COURT:  Okay.

23         MR. BARR:  I'm trying to do it without mentioning

24   Canada or the label, and we're not putting it up.

25         THE COURT:  But then you are showing the document.

1    Just ask him the question.

2              MR. BARR:  I'm not going to put it up on the screen.

3              MR. IRWIN:  Don't hold it up.  Just read it on your --

4              MR. BARR:  They can't see it.

5              MS. WILKINSON:  And don't ask him to refer to it

6    because then you're implying it's in the document.

7              MR. MEUNIER:  Oh, come on.

8              THE COURT:  "Don't you know Bayer knows this?"

9              MR. BARR:  But, Your Honor --

10             MR. MEUNIER:  He has to be referring to the document.

11             MR. BARR:  It's an unimpeachable --

12             MR. MEUNIER:  You're saying he can't refer to a

13   business record to answer that question?  We are not going to

14   admit the business record.

15             THE COURT:  The problem is that -- it's a 403 problem

16   when you put it in, in context, and I'm trying to keep it out of

17   the context.

18             MR. BARR:  Your Honor, what I'm hearing from Jim is he

19   is not making a 403 objection.

20             MR. IRWIN:  Yes, he is.

21             MR. BARR:  No, you're making an "he hasn't seen the

22   document" objection.

23             MR. IRWIN:  I mentioned 403 from the beginning.

24             THE COURT:  I understand the issue.

25             You say it's a business record; therefore, it gets in.

**OFFICIAL TRANSCRIPT**

1    I disagree with that.  I don't think it is a business record.

2            MR. MEUNIER:  No, I wasn't going to say that, Judge.  I

3    realize there's a problem and I realize we're trying to thread a

4    needle.

5            The only thing, we came into the trial based on an

6    express ruling that anything Bayer said to regulators was

7    admissible.  That's what your ruling was.

8            We could not get into what they did to comply with

9    regulations in the foreign scheme, but anything they said to

10   regulators.  It was an express ruling on our motion *in limine.*

11   We relied on it.  So what Bayer tells regulators goes to the

12   heart of what they knew.

13           THE COURT:  The problem is what they said to regulators

14   is contextual.

15           MR. MEUNIER:  I understand.

16           THE COURT:  That's the problem.

17           MR. MEUNIER:  I understand, Judge.

18           THE COURT:  Because what they said to one regulator is

19   not necessarily accurate with the other regulator.  So you've got

20   a situation where, when they say, What did you say to this

21   regulator, you're taking it out of the context of the case.

22           MR. MEUNIER:  I understand, Your Honor.

23           And all I was trying to get across is that we did rely

24   on a ruling that made it relevant and admissible to talk about

25   what Bayer said to regulators.

**OFFICIAL TRANSCRIPT**

1          THE COURT:  I understand.  It's in the record.  Let's
2     see if we can get through it.

3                 **AFTER THE SIDEBAR IN OPEN COURT**

4          THE COURT:  We have to take a break for lunch.

5          MR. BARR:  Okay.

6     **MR. BARR:  (CONTINUING)**

7          **Q.**  Mr. Jalota, are you aware that Bayer has said outside
8     of the United States that, Although there is no need to monitor
9     clinical practice, in certain infrequent situations such as
10    overdosage, acute bleeding, urgent surgery, in cases of suspected
11    non-compliance, or in other unusual circumstances, assessment of
12    the anticoagulant effect of rivaroxaban may be appropriate.
13    Accordingly, measuring PT using the Neoplastine reagent or a
14    Factor Xa assay using riva-specific calibrators and controls may
15    be useful to inform clinical decisions in these circumstances.

16         Are you aware of that?

17         **A.**  I would say to you that I'm not aware of the current
18    label.  In 2008 and 2011, that text, if it was similar to what
19    was presented to the FDA, would be there.

20         I don't know whether that text you're saying is how it
21    came about if it isn't in the label.  I confess you'd have to
22    show me the label.

23         I'm not -- I can tell you this, I'm not aware -- I'm
24    aware that there are -- there may be some language, but I don't
25    know what the language is and what was agreed with the agencies

**OFFICIAL TRANSCRIPT**

1    outside of the U.S.

2            THE COURT:  That's not the question, sir.  The question

3    is whether or not you're aware that Bayer knew or did not know

4    what he just read.

5            THE WITNESS:  I would say -- that's difficult for me to

6    say, sir.  The information we proposed in 2008 is what was agreed

7    with both companies, so if there is some text, then Bayer would

8    be aware.  But I simply don't know what is in the labels to tell

9    you, sir.

10           MR. BARR:  Do you want to break at this point?

11           THE COURT:  Let's take a break here.  We're going to

12   have a break for -- until 1:15.  We stand in recess until then.

13                              (Jury out at 11:53 a.m.)

14           THE COURT:  Be seated, please.

15           Folks, I know that some of you disagree with my ruling,

16   but that's my ruling so let's move on with it.

17           MR. BARR:  Your Honor, I'm not going to bring up the

18   Canadian thing again.  We're done with that.

19           THE COURT:  Court will stand in recess until 1:15.

20                              (A recess was taken.)

21                              (End of morning session.)

22

23                      *  *  *  *

24

25

**OFFICIAL TRANSCRIPT**

1

2

3

## CERTIFICATE

I hereby certify this 6th day of June, 2017, that the foregoing is, to the best of my ability and understanding, a true and correct transcript of the proceedings in the above-entitled matter.

/s/ Mary V. Thompson
_____
Official Court Reporter

**OFFICIAL TRANSCRIPT**

```
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF LOUISIANA
 2
       ******************************************************************
 3
       IN RE:  XARELTO (RIVAROXABAN)
 4     PRODUCTS LIABILITY LITIGATION        Docket No. 14-MD-2592
                                            Section "L"
 5                                          New Orleans, Louisiana
       THIS DOCUMENT RELATES TO:            Wednesday, June 7, 2017
 6     Joseph Orr, et al
       v. Janssen Research &
 7     Development, et. al.,
       Case No. 15-CV-3708
 8
       ******************************************************************
 9
                      TRANSCRIPT OF TRIAL PROCEEDINGS
10          HEARD BEFORE THE HONORABLE ELDON E. FALLON
                     UNITED STATES DISTRICT JUDGE
11                   VOLUME VIII - AFTERNOON SESSION

12
       APPEARANCES:
13
       FOR THE PLAINTIFFS'
14     LIAISON COUNSEL:                LEVIN PAPANTONIO
                                       BRIAN H. BARR, ESQ.
15                                     316 Baylen Street, Suite 600
                                       Pensacola, FL 32502
16
                                       BEASLEY ALLEN
17                                     BY:  ANDY BIRCHFIELD, ESQ.
                                       P.O. Box 4160
18                                     Montgomery, AL 36103

19                                     GAINSBURGH BENJAMIN DAVID
                                       MEUNIER & WARSHAUER
20                                     BY:  GERALD E. MEUNIER, ESQ.
                                       2800 Energy Centre
21                                     1100 Poydras Street
                                       New Orleans, LA 70163
22
                                       GOZA & HONNOLD, LLC
23                                     BY:  BRADLEY D. HONNOLD, ESQ.
                                       11181 Overbrook Road, Suite 200
24                                     Leawood, Kansas 66211

25
```

OFFICIAL TRANSCRIPT

```
 1                                     THE LAMBERT FIRM, PLC
                                       BY:  EMILY JEFFCOTT, ESQ.
 2                                     701 Magazine Street
                                       New Orleans, Louisiana 70130
 3

 4     FOR THE DEFENDANT BAYER
       HEALTHCARE PHARMACEUTICALS
 5     INC. and BAYER PHARMA AG:       WILKINSON WALSH & ESKOVITZ, LLP
                                       BY:  BETH A. WILKINSON, ESQ.
 6                                     1900 M Street NW, Suite 800
                                       Washington, DC 20036
 7
                                       Nelson Mullins Riley
 8                                     & Scarborough, LLP
                                       BY:  DAVID E. DUKES, ESQ.
 9                                     Meridian, 17th Floor
                                       1320 Main Street
10                                     Columbia, SC 29201

11
       FOR JANSSEN PHARMACEUTICALS,
12     INC. AND JANSSEN RESEARCH &
       DEVELOPMENT, LLC:               IRWIN FRITCHIE URQUHART & MOORE
13                                     BY:  JAMES B. IRWIN, ESQ.
                                       400 Poydras St., Suite 2700
14                                     New Orleans, LA 70130

15

16     Official Court Reporter:       Karen A. Ibos, CCR, RPR, CRR, RMR
                                       500 Poydras Street, B-275
17                                     New Orleans, Louisiana 70130
                                       (504) 589-7776
18

19        Proceedings recorded by mechanical stenography, transcript
       produced by computer.
20

21

22

23

24

25
```

OFFICIAL TRANSCRIPT

14:35:43  1    I think you ultimately said it, it's 25 people, right --

14:35:46  2    A.  Right.

14:35:46  3    Q.  -- at the FDA that touched the application?

14:35:50  4    A.  Right.  You get credit at the FDA if you have been involved in

14:35:54  5    so many NDAs and supplements.  So they want to get their names

14:35:58  6    listed as credit for their workload.

14:36:00  7    Q.  How many people at Bayer and Janssen worked on the application

14:36:06  8    over a period of ten years before the drug -- before the

14:36:09  9    application was even submitted to the FDA?

14:36:11 10    A.  Hundreds.  Hundreds.  It would be their R&D development.  It

14:36:16 11    would be their animal studies people.  It would be their

14:36:18 12    clinical trial -- there's hundreds of people.

14:36:19 13    Q.  Now, can we get back up on the screen the labelling information

14:36:30 14    that Dr. Parisian believes should be in the United States label.

14:36:44 15             Dr. Parisian, you recall that this is the information you

14:36:46 16    believe should be in the United States' label about the ability to

14:36:50 17    use PT to determine whether it's safe to proceed to surgery.  Do

14:36:55 18    you recall that?

14:36:55 19    A.  Yes.

14:36:56 20    Q.  Have you -- are you aware of statements made by Bayer that they

14:37:07 21    continue to make today that support the language you have provided

14:37:12 22    in your label?

14:37:13 23    A.  Yes.

14:37:14 24             MR. DUKES:  Your Honor, objection.  May we approach?

14:37:25 25        (WHEREUPON, THE FOLLOWING BENCH CONFERENCE WAS HELD:)

14:37:31  1              MR. DUKES:  Your Honor, this particular document is a

14:37:35  2    document that's redacted, but basically relates to foreign

14:37:39  3    labelling.  And I would object to it, Rules 401, 403, as it relates

14:37:45  4    to foreign labelling.  I would also object to this as being

14:37:48  5    improper scope of redirect because we're basically looking at a

14:37:52  6    proposed warning which we objected on direct, but that was covered

14:37:57  7    on direct.

14:37:57  8              MR. BARR:  Your Honor, they talked about PT, called it

14:38:01  9    dangerous, and we've already had this discussion, and we would

14:38:04 10    stand by what we previously argued in chambers.

14:38:07 11              THE COURT:  I understand the issue, and I feel that has

14:38:15 12    been covered on cross and it's appropriate redirect.  And I'm going

14:38:20 13    to deal with the foreign labelling if it comes up.  I'll tell the

14:38:24 14    jury the same way.  It's a question of what they knew and when they

14:38:28 15    knew it.

14:38:28 16              And if they sent it to anybody, that's significant; not

14:38:33 17    why they sent it or what the other person did about it.  It's only

14:38:39 18    relevant as to what they knew and when they knew it.  And one way

14:38:43 19    of doing that is to find out what they said and that's it.

14:38:50 20              I understand it's a problem that foreign labelling, but

14:38:54 21    I've done my best to instruct the jury every time it's come up to

14:38:57 22    disregard the foreign labelling.  I'm more interested in what they

14:39:02 23    knew and when they knew it, and I am confident in looking at them

14:39:05 24    and listening that they understand what I am saying.  I've said it

14:39:09 25    enough times to them.  So if it comes up, I'll say the same thing.

14:39:13    1          MR. BARR:  Your Honor, for purposes of the record, we've

14:39:15    2    redacted any mention of the reference to foreign label to Canada,

14:39:19    3    and we've instructed the witness not to raise those issues in her

14:39:23    4    answer.

14:39:24    5          THE COURT:  Okay.  We'll see what happens.  Thank you.

14:39:38    6      (OPEN COURT.)

14:39:38    7          THE COURT:  I hope we're getting to an end of redirect

14:39:40    8    soon?

14:39:53    9          MR. BARR:  Your Honor, give me one second.  I'm sorry,

14:40:26   10    your Honor, just give me one brief second here.  I am trying to...

14:40:44   11          THE COURT:  I said I hope you're getting to the end.

14:40:47   12          MR. BARR:  Yes.  This is it, your Honor.

14:40:49   13    BY MR. BARR:

14:40:49   14    Q.  Let me restate that.  Are you aware of statements made by

14:40:52   15    Bayer -- a statement Bayer continues to make today -- that supports

14:40:56   16    the language in the label you're offering and what you say needs to

14:41:01   17    be in the label?

14:41:02   18    A.  Yes.

14:41:02   19    Q.  Have you reviewed or relied upon such statements in coming to

14:41:06   20    your opinions?

14:41:07   21    A.  Yes.

14:41:07   22    Q.  Dr. Parisian, is this the statement by Bayer, this document on

14:41:21   23    the screen, the document you have reviewed or relied upon in coming

14:41:25   24    to your conclusions that Bayer supports the statements you've

14:41:30   25    offered in your label?

14:41:31  1    A.   Yes.

14:41:32  2    Q.   Could you please read for the jury the statement made by Bayer?

14:41:37  3    A.   "Although there is no need to monitor clinical practice, in

14:41:43  4    concern" --

14:41:44  5    Q.   Wait.  Start with the first paragraph.

14:41:47  6    A.   "The sponsor"?

14:41:48  7    Q.   Yes, ma'am.

14:41:49  8    A.   "The sponsor recognizes that in certain infrequent situations

14:41:54  9    (such as overdosage, acute bleeding, urgent surgery, suspected

14:41:59 10    noncompliance, or in other unusual circumstances) assessment of the

14:42:07 11    anticoagulant effect of Xarelto may be desirable.  In these

14:42:12 12    circumstances, chromogenic assays can be utilized.

14:42:16 13         Although there is no need to monitor clinical practice,

14:42:22 14    in certain infrequent situations such as overdosage, acute

14:42:28 15    bleeding, urgent surgery, in cases of suspected noncompliance, or

14:42:33 16    in other unusual circumstances, assessment of the anticoagulant

14:42:38 17    effect of rivaroxaban may be appropriate.  Accordingly, measuring

14:42:44 18    PT using the Neoplastin reagent, or Factor Xa assay using

14:42:50 19    rivaroxaban-specific calibrators and controls may be useful to

14:42:55 20    inform clinical decisions in these circumstances."

14:42:59 21    Q.   When did Bayer make this statement?

14:43:01 22    A.   Well, years before, but this one is in 2014.

14:43:06 23    Q.   Is this -- does this statement contradict the position Bayer

14:43:11 24    has taken in this courtroom?

14:43:13 25    A.   Yes.

14:43:14  1   Q.  Is this statement anywhere in the U.S. label or available to
14:43:19  2   doctors in the United States?
14:43:20  3   A.  No.
14:43:22  4           MR. BARR:  No more questions, your Honor.
14:43:24  5           THE COURT:  Thank you.  You're excused, ma'am.
14:43:24  6           THE WITNESS:  Thank you, your Honor.
14:43:26  7           THE COURT:  Let's take a ten-minute break here and
14:43:29  8   we'll go with the other witness.
14:43:32  9           THE DEPUTY CLERK:  All rise.
14:43:32 10      (WHEREUPON, THE JURY EXITED THE COURTROOM AND A RECESS WAS
15:10:32 11       TAKEN.)
15:10:32 12      (OPEN COURT.)
15:10:34 13      (WHEREUPON, THE JURY ENTERED THE COURTROOM.)
15:10:34 14           THE COURT:  Be seated, please.  We have a matter.
15:10:39 15           MR. DUKES:  Thank you, your Honor.  With regard to the
15:10:41 16   last document that Dr. Parisian was testifying about, under the
15:10:44 17   rule for completeness, I would like to show the jury another
15:10:47 18   statement that's in that same document that was not shown.
15:10:51 19           MR. BARR:  And, your Honor, for the record, plaintiffs
15:10:54 20   object.  We actually believe the entirety of the document should
15:10:57 21   come in and not bits and pieces.  So for the purposes of the
15:11:01 22   record, for that reason, we think the entire document should come
15:11:04 23   in.
15:11:05 24           THE COURT:  Thank you.  Under 611(c), I'll allow the
15:11:09 25   defendants to do that, which would be under cross, direct, or

1

2                            *  *  *  *  *  *

3

4                        REPORTER'S CERTIFICATE

5

6          I, Karen A. Ibos, CCR, Official Court Reporter, United

7    States District Court, Eastern District of Louisiana, do hereby

8    certify that the foregoing is a true and correct transcript, to the

9    best of my ability and understanding, from the record of the

10   proceedings in the above-entitled and numbered matter.

11

12

13                        ___/s/ Karen A. Ibos___

14                        Karen A. Ibos, CCR, RPR, CRR, RMR

15                        Official Court Reporter

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


IN RE:  XARELTO (RIVAROXABAN)
PRODUCTS LIABILITY LITIGATION

                                    Docket No. 14-MD-2592
THIS DOCUMENT RELATES TO:           Section L
                                    New Orleans, Louisiana
Joseph Orr, Jr., as Lawful          Thursday, June 8, 2017
Surviving Spouse of
*Sharyn Orr v. Janssen, et al.*
*Case No. 2:15-cv-03708*

**************************************************************

               **TRANSCRIPT OF TRIAL PROCEEDINGS**
       **HEARD BEFORE THE HONORABLE ELDON E. FALLON,**
              **UNITED STATES DISTRICT JUDGE,**
                       **AND A JURY.**
              **VOLUME VIII - MORNING SESSION**

**************************************************************

**APPEARANCES:**


FOR THE PLAINTIFFS'            MR. ANTHONY BIRCHFIELD, JR.
LIAISON COUNSEL:               Beasley Allen Crow Methvin
                                  Portis & Miles
                               Post Office Box 4160
                               Montgomery, AL  36103

                               MR. BRIAN H. BARR
                               MR. NEIL E. McWILLIAMS
                               Levin Papantonio Thomas
                                 Mitchell Rafferty & Proctor
                               316 Baylen Street
                               Suite 600
                               Pensacola, FL 32502

                               MR. GERALD EDWARD MEUNIER
                               Gainsburgh, Benjamin, David,
                                  Meunier & Warshauer
                               Energy Centre
                               1100 Poydras Street
                               Suite 2800
                               New Orleans, LA  70163-2800

**OFFICIAL TRANSCRIPT**

```
                                  MS. EMILY JEFFCOTT
                                  The Lambert Firm, PLC
                                  701 Magazine Street
                                  New Orleans, LA  70130

                                  MR. BRADLEY D. HONNOLD
                                  Goza & Honnold, LLC
                                  11181 Overbrook Road
                                  Suite 200
                                  Leawood, KS 66211


FOR THE DEFENDANT JANSSEN         MR. JAMES B. IRWIN, V
PHARMACEUTICALS, INC.,            Irwin Fritchie
and JANSSEN RESEARCH &               Urquhart & Moore, LLC
DEVELOPMENT, LLC:                 400 Poydras Street
                                  Suite 2700
                                  New Orleans, LA  70130


FOR THE DEFENDANT                 MR. DAVID E. DUKES
BAYER HEALTHCARE                  Nelson Mullins Riley &
PHARMACEUTICALS, INC.,               Scarborough, LLP and
BAYER PHARMA AG:                  Meridian, 17th Floor
                                  1320 Main Street
                                  Columbia, SC  29201


                                  MS. BETH A. WILKINSON
                                  Wilkinson Walsh + Eskovitz, LLP
                                  1900 M Street NW
                                  Suite 800
                                  Washington, DC 20036


REPORTED BY:  Mary V. Thompson, RMR, FCRR
              United States District Court
              500 Poydras, Room B275
              New Orleans, LA  70130
```

**OFFICIAL TRANSCRIPT**

1  patients.  That was seen in ROCKET.

2       And so I think -- I'm not comfortable with utilizing

3  PT.  Believe me, if it was effective, I would -- and reliable and

4  something that I could use, I would use it.  I would want it.  I

5  want to help -- we're here for our patients.

6       And this is -- so if this were something that I thought

7  was comfortable, I'm not going to withhold that.  I would want

8  that.  But the PT test is not a reliable test.  It doesn't -- it

9  can't be applied in a clinical context in a meaningful manner.

10      Q.   Let's take a look at the proposed label change that

11  Dr. Parisian presented yesterday and get your opinion on that.

12  This is what Dr. Parisian said should be in a label -- the

13  Xarelto label to help clinicians to treat patients that are

14  prescribed Xarelto.

15           MR. BARR:  Objection, Your Honor.  Dr. Parisian talked

16  about what should be in the label from a regulatory perspective,

17  what is required according to the regulations.

18           THE COURT:  Well, I thought it was a little broader

19  than that.  The question is different than what -- I'll allow the

20  question.

21           THE WITNESS:  I'll give my opinion, not a regulatory...

22  MS. WILKINSON:  (CONTINUING)

23      Q.   Yeah.  We're not talking about regulatory.

24           We want to know from your point of view, as a clinician

25  and an expert who prescribes this drug, would this language be

**OFFICIAL TRANSCRIPT**

1   useful or helpful to you with your patients?

2        A.   So I'm specifically --

3        Q.   Just first answer that question.

4             Would it be helpful?

5        A.   No.  Sorry.

6        Q.   Now let's go through it and you tell us why this would

7   not be helpful.

8        A.   The one that troubles me the most is that middle thing:

9   Accordingly, measuring PT may be useful to inform clinical

10  decisions in this circumstance.

11            I have no data to tell me how that will inform my

12  clinical decisions.  There is no studies that have looked at PT

13  and said, Okay, if someone comes in and they're bleeding and they

14  have a normal PT, you can take them to surgery and they do well.

15            That has not been studied.

16            You have to look at a situation and test it out in

17  people, and there's no data that actually looks at changing dose

18  based on PT, or withholding surgery based on PT, and that having

19  a net clinical benefit.

20            And that's why I think it's inappropriate to imply that

21  there is -- it's useful in informing clinical decisions, because

22  I don't think it can help me.  If it would help me, I would use

23  it.

24            My study of this is not scant.  I have looked at this

25  extensively, and I do not feel it is of value.  Not only that,

 1   but in the field of EP, in the Heart Rhythm society itself,

 2   people are not using PT.

 3       Q.   Do you believe that is because people don't know about

 4   it because somebody has hidden this information or because they

 5   don't believe it's useful?

 6       A.   So when we do our journal clubs and we go over articles

 7   and studies, these are the things that kind of come up when we

 8   discuss this.

 9            So I don't -- I think that it was appreciated.  And,

10   again, we looked at it and our impression was that that was not

11   the case.

12       Q.   And do you agree or disagree that a normal PT value

13   indicates that clinically significant levels of rivaroxaban are

14   unlikely?

15       A.   I think that there is -- so I can't explain why

16   10 percent of patients go from a normal PT to a high PT with

17   absolutely no change in their dosing.  So I can't --

18       Q.   Does that mean you don't agree?

19       A.   I don't agree.  Sorry.  Yes.

20       Q.   And tell us -- we've heard about a false negative in

21   testing.  Are you familiar with that?

22       A.   Yes.

23       Q.   Have you seen that in PT where someone could have

24   either -- a normal level and still have an anticoagulation effect

25   in their blood?

**OFFICIAL TRANSCRIPT**

1    We'll stand in recess.  Thank you.

2                        (Jury out at 11:27 a.m.)

3                        (End of morning session.)

4

5                 *  *  *  *

6                 **CERTIFICATE**

7

8    I hereby certify this 8th day of June, 2017, that the

9  foregoing is, to the best of my ability and understanding, a true

10  and correct transcript of the proceedings in the above-entitled

11  matter.

12

13                        */s/ Mary V. Thompson*

14  _____
                         Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25

**OFFICIAL TRANSCRIPT**

```
1                      UNITED STATES DISTRICT COURT
                       EASTERN DISTRICT OF LOUISIANA
2

3      ********************************************************************

       IN RE:  XARELTO (RIVAROXABAN)
4      PRODUCTS LIABILITY LITIGATION        Docket No. 14-MD-2592
                                            Section "L"
5                                           New Orleans, Louisiana
       THIS DOCUMENT RELATES TO:            Thursday, June 8, 2017
6      Joseph Orr, et al
       v. Janssen Research &
7      Development, et. al.,
       Case No. 15-CV-3708
8

9      ********************************************************************

10                      TRANSCRIPT OF TRIAL PROCEEDINGS
             HEARD BEFORE THE HONORABLE ELDON E. FALLON
11                      UNITED STATES DISTRICT JUDGE
                        VOLUME IX - AFTERNOON SESSION
12

13     APPEARANCES:

14     FOR THE PLAINTIFFS'
       LIAISON COUNSEL:             LEVIN PAPANTONIO
15                                  BRIAN H. BARR, ESQ.
                                    316 Baylen Street, Suite 600
16                                  Pensacola, FL 32502

17                                  BEASLEY ALLEN
                                    BY:  ANDY BIRCHFIELD, ESQ.
18                                  P.O. Box 4160
                                    Montgomery, AL 36103
19
                                    GAINSBURGH BENJAMIN DAVID
20                                  MEUNIER & WARSHAUER
                                    BY:  GERALD E. MEUNIER, ESQ.
21                                  2800 Energy Centre
                                    1100 Poydras Street
22                                  New Orleans, LA 70163

23                                  GOZA & HONNOLD, LLC
                                    BY:  BRADLEY D. HONNOLD, ESQ.
24                                  11181 Overbrook Road, Suite 200
                                    Leawood, Kansas 66211
25
```

```
 1                                    THE LAMBERT FIRM, PLC
                                      BY:  EMILY JEFFCOTT, ESQ.
 2                                    701 Magazine Street
                                      New Orleans, Louisiana 70130
 3

 4    FOR THE DEFENDANT BAYER
      HEALTHCARE PHARMACEUTICALS
 5    INC. and BAYER PHARMA AG:       WILKINSON WALSH & ESKOVITZ, LLP
                                      BY:  BETH A. WILKINSON, ESQ.
 6                                    1900 M Street NW, Suite 800
                                      Washington, DC 20036
 7
                                      Nelson Mullins Riley
 8                                    & Scarborough, LLP
                                      BY:  DAVID E. DUKES, ESQ.
 9                                    Meridian, 17th Floor
                                      1320 Main Street
10                                    Columbia, SC 29201

11
      FOR JANSSEN PHARMACEUTICALS,
12    INC. AND JANSSEN RESEARCH &
      DEVELOPMENT, LLC:               IRWIN FRITCHIE URQUHART & MOORE
13                                    BY:  JAMES B. IRWIN, ESQ.
                                      400 Poydras St., Suite 2700
14                                    New Orleans, LA 70130

15

16    Official Court Reporter:       Karen A. Ibos, CCR, RPR, CRR, RMR
                                      500 Poydras Street, B-275
17                                    New Orleans, Louisiana 70130
                                      (504) 589-7776
18

19       Proceedings recorded by mechanical stenography, transcript
      produced by computer.
20

21

22

23

24

25
```

14:38:07  1    Q.  Are you aware, as you sit here and testify today, that Bayer

14:38:11  2    tells doctors outside of the United States this exact language?

14:38:17  3    A.  No.

14:38:19  4    Q.  So you have no knowledge of that.

14:38:44  5         Let me show you what the company says.  You see right

14:38:51  6    here that this is Bayer telling doctors that "Although there is no

14:38:57  7    need to monitor in clinical practice, in certain infrequent

14:39:01  8    situations such as overdosage, acute bleeding, urgent surgery, in

14:39:07  9    cases of suspected noncompliance, or in other unusual

14:39:11 10    circumstances, assessment of the anticoagulant effect of

14:39:13 11    rivaroxaban may be appropriate.  Accordingly, measuring PT using

14:39:17 12    the Neoplastin reagent or Factor Xa, may be useful to inform

14:39:25 13    clinical decisions in these circumstances."  Did you know that?

14:39:29 14    A.  I see that.

14:39:30 15    Q.  According to that sentence, Bayer disagrees with you, don't

14:39:34 16    they?

14:39:34 17    A.  I'm -- you're giving me one -- I don't have a whole document

14:39:39 18    here.  I am not going to comment on what Bayer thinks or doesn't

14:39:42 19    think.  I am not going to look at snippets.

14:39:44 20         MR. BARR:  That's all.

14:39:45 21         THE COURT:  All right.  Any redirect?

14:39:47 22         MS. WILKINSON:  Yes, your Honor.

14:39:59 23                    REDIRECT EXAMINATION

14:39:59 24    BY MS. WILKINSON:

14:39:59 25    Q.  Doctor, if you can speak up and lean into the microphone so we

14:40:03  1    can all hear you.

14:40:04  2    A.  Sorry.

14:40:04  3    Q.  You were just shown a statement, and yesterday the rest of the

14:40:07  4    statement was shown to the jury.  Do you see the bottom, the green

14:40:10  5    part that was left out?  Do you see that?

14:40:12  6    A.  Yes.

14:40:12  7    Q.  So what does that say?  Can you read it out loud, please?

14:40:15  8    A.  "However, the response of the PT varies both dependent on PT

14:40:19  9    reagent (which is not standardized) and coagulometer.  Thus, the PT

14:40:25 10    cannot be used to reliably measure the anticoagulant effect of

14:40:29 11    Xarelto since a normal PT may be found in patients with therapeutic

14:40:32 12    Xarelto levels if measured using selected machine/reagent

14:40:36 13    combinations."

14:40:37 14    Q.  And do you agree with that?

14:40:38 15    A.  That's the limitation that I find with the medication.

14:40:40 16    Q.  And when you read that together, does that suggest that PT is

14:40:44 17    useful in a clinical situation where a patient on Xarelto is in an

14:40:51 18    emergency such as surgery?

14:40:52 19    A.  Not in any way that I feel comfortable using.

14:40:55 20         MR. BARR:  Your Honor, I don't want to interrupt, but can

14:40:57 21    we approach real quick?

14:41:07 22         THE COURT:  Yes.

14:41:13 23      (WHEREUPON, THE FOLLOWING BENCH CONFERENCE WAS HELD:)

14:41:13 24         MR. BARR:  You obviously know what this is about.  It's

14:41:16 25    the Canadian label again.  I think it continues to prejudice the

14:41:20  1    plaintiffs that we can't show the label.  It has -- I mean, they

14:41:26  2    keep criticizing the language from their own label, and they put up

14:41:31  3    language -- I don't think that's anywhere in the actual label about

14:41:35  4    not being able to use the PT.

14:41:39  5         MR. BIRCHFIELD:  And, your Honor, their own witness just

14:41:42  6    asked to see the whole document.  That's --

14:41:46  7         THE COURT:  I understand.  The way I see it, and I've

14:41:49  8    said it several times, the issue is really what the defendant knew

14:41:56  9    and when they knew it.  It's not what's in one label or what's in

14:42:02  10   another label, because the rules are different, the laws are

14:42:06  11   different, the specifics are different.

14:42:08  12        We're going to get in a situation where we then have to

14:42:11  13   try the Canadian label, and then we're going to be with witnesses

14:42:16  14   about what the Canadian label says and why it says that.  And then

14:42:19  15   we're going to go into the France label.  It's really involving the

14:42:24  16   United States label.  It's the FDA's label.

14:42:27  17        And I'll let you get in what they said, what they told

14:42:31  18   other people, obviously what they knew.  But that's where it's got

14:42:37  19   to stop.  We can't put in different labels.  It just doesn't -- it

14:42:43  20   would be impossible to deal with.  It's a different jurisdiction.

14:42:47  21        MS. WILKINSON:  Your Honor, just for the record, the

14:42:49  22   statement they put up was from a submission to a regulator, and all

14:42:53  23   you allowed us to do yesterday was show the complete statement.  It

14:42:56  24   wasn't -- this particular statement where they took the document

14:42:59  25   out was not the label.  It was in answer to a regulatory request in

14:43:03  1    Canada.

14:43:04  2         MR. BARR:  Your Honor, for completeness, this language

14:43:06  3    right here that's quoted is directly out of the label, and they

14:43:09  4    just put a witness up to criticize their own label.  I mean -- and

14:43:14  5    then they put up language that's not -- I mean, it just puts us in

14:43:18  6    an impossible situation.

14:43:20  7         THE COURT:  I understand.  I understand your position.

14:43:25  8         MR. BIRCHFIELD:  Yes, sir.

14:43:26  9         THE COURT:  Thank you.

14:43:46 10      (OPEN COURT.)

14:43:46 11    BY MS. WILKINSON:

14:43:47 12    Q.  All right, Doctor.  One of the questions we have is these

14:43:51 13    different terms that you know and you were being asked about

14:43:54 14    whether we're clear.  So up here we show it says, "PT cannot be

14:43:59 15    used to reliably measure the anticoagulant effect."  All right?

14:44:03 16    A.  Where are you?

14:44:03 17    Q.  I want you to --

14:44:07 18    A.  You're on the second --

14:44:09 19    Q.  "Anticoagulant Effect."  Do you see that?

14:44:12 20    A.  Yes, I do.

14:44:12 21    Q.  These are very different terms from the concentrate, right?

14:44:16 22    The concentrations?

14:44:16 23    A.  Yes.  So --

14:44:18 24    Q.  Let's slow down and see if we can explain this to the jury,

14:44:21 25    okay?

1      (WHEREUPON, THE PROCEEDINGS WERE CONCLUDED FOR THE DAY.)

2

3                        *  *  *  *  *  *

4

5                      REPORTER'S CERTIFICATE

6

7        I, Karen A. Ibos, CCR, Official Court Reporter, United

8    States District Court, Eastern District of Louisiana, do hereby

9    certify that the foregoing is a true and correct transcript, to the

10   best of my ability and understanding, from the record of the

11   proceedings in the above-entitled and numbered matter.

12

13

14                    /s/ Karen A. Ibos

15               Karen A. Ibos, CCR, RPR, CRR, RMR

16               Official Court Reporter

17

18

19

20

21

22

23

24

25

```
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF LOUISIANA
 2
        ********************************************************************
 3
        IN RE:  XARELTO (RIVAROXABAN)
 4      PRODUCTS LIABILITY LITIGATION         Docket No. 14-MD-2592
                                              Section "L"
 5                                            New Orleans, Louisiana
        THIS DOCUMENT RELATES TO:            Friday, June 9, 2017
 6      Joseph Orr, et al
        v. Janssen Research &
 7      Development, et. al.,
        Case No. 15-CV-3708
 8
        ********************************************************************
 9
                       TRANSCRIPT OF TRIAL PROCEEDINGS
10          HEARD BEFORE THE HONORABLE ELDON E. FALLON
                     UNITED STATES DISTRICT JUDGE
11                 VOLUME IX - AFTERNOON SESSION

12
        APPEARANCES:
13
        FOR THE PLAINTIFFS'
14      LIAISON COUNSEL:                     LEVIN PAPANTONIO
                                             BRIAN H. BARR, ESQ.
15                                           316 Baylen Street, Suite 600
                                             Pensacola, FL 32502
16
                                             BEASLEY ALLEN
17                                           BY:  ANDY BIRCHFIELD, ESQ.
                                             P.O. Box 4160
18                                           Montgomery, AL 36103

19                                           GAINSBURGH BENJAMIN DAVID
                                             MEUNIER & WARSHAUER
20                                           BY:  GERALD E. MEUNIER, ESQ.
                                             2800 Energy Centre
21                                           1100 Poydras Street
                                             New Orleans, LA 70163
22
                                             GOZA & HONNOLD, LLC
23                                           BY:  BRADLEY D. HONNOLD, ESQ.
                                             11181 Overbrook Road, Suite 200
24                                           Leawood, Kansas 66211

25
```

```
 1                                      THE LAMBERT FIRM, PLC
                                        BY:  EMILY JEFFCOTT, ESQ.
 2                                      701 Magazine Street
                                        New Orleans, Louisiana 70130
 3
 4    FOR THE DEFENDANT BAYER
      HEALTHCARE PHARMACEUTICALS
 5    INC. and BAYER PHARMA AG:         WILKINSON WALSH & ESKOVITZ, LLP
                                        BY:  BETH A. WILKINSON, ESQ.
 6                                      1900 M Street NW, Suite 800
                                        Washington, DC 20036
 7
                                        Nelson Mullins Riley
 8                                      & Scarborough, LLP
                                        BY:  DAVID E. DUKES, ESQ.
 9                                      Meridian, 17th Floor
                                        1320 Main Street
10                                      Columbia, SC 29201

11
      FOR JANSSEN PHARMACEUTICALS,
12    INC. AND JANSSEN RESEARCH &
      DEVELOPMENT, LLC:                 IRWIN FRITCHIE URQUHART & MOORE
13                                      BY:  JAMES B. IRWIN, ESQ.
                                        400 Poydras St., Suite 2700
14                                      New Orleans, LA 70130

15
16    Official Court Reporter:         Karen A. Ibos, CCR, RPR, CRR, RMR
                                        500 Poydras Street, B-275
17                                      New Orleans, Louisiana 70130
                                        (504) 589-7776
18
19      Proceedings recorded by mechanical stenography, transcript
      produced by computer.
20
21
22
23
24
25
```

13:23:02  1    question, that:  Insofar as Mrs. Orr's condition is concerned, you

13:23:05  2    can't say that her event or its outcome would have been any

13:23:08  3    different had she been on warfarin; is that correct?

13:23:11  4         And his answer was:  "I can't say from an outcome

13:23:14  5    perspective, no."

13:23:15  6         I want you to assume that.  And if that was the question,

13:23:19  7    if that was the answer, would you agree or disagree with that?

13:23:22  8    A.  I agree.

13:23:23  9    Q.  Doctor, a suggested warning label has been proposed by

13:23:41 10    plaintiffs.  I would like to ask you to look at this warning --

13:23:44 11    suggested warning label and ask you, from a neurosurgeon

13:23:48 12    standpoint, would this warning label be of any help to you.

13:23:51 13         MR. IRWIN:  If we could have the ELMO, please.  And --

13:24:00 14         MR. HONNOLD:  Could we just note an objection that we

13:24:03 15    made previously for the record?

13:24:04 16         THE COURT:  Right.

13:24:19 17         THE WITNESS:  (WITNESS REVIEWS DOCUMENT.)  Okay.

13:24:28 18    BY MR. IRWIN:

13:24:29 19    Q.  My question is, would this proposed label, proposed by the

13:24:34 20    plaintiff -- plaintiff lawyers be of help to you as a neurosurgeon?

13:24:41 21    A.  So for me as a neurosurgeon, when I treat patients, hemostasis,

13:24:46 22    which is stopping of blood, whether it be -- bleeding, rather --

13:24:50 23    stop it in an elective surgery, emergency surgery, brain surgery,

13:24:54 24    spine surgery is of the utmost importance because we operate in

13:24:59 25    small compartments that are confined.  And so because we operate in

13:25:03  1   small compartments that are confined, bleeding can cause

13:25:06  2   significant issues.

13:25:07  3            My understanding, if I read this, if I was a

13:25:12  4   practitioner, I would think, okay, a normal PT value indicates that

13:25:15  5   maybe levels of rivaroxaban are clinically significant unlikely and

13:25:21  6   it's okay to operate.  But you can have a normal PT and you can

13:25:24  7   have levels of rivaroxaban in your system that are still causing

13:25:27  8   the blood to be thinner and anticoagulated and which would be

13:25:31  9   dangerous.

13:25:31  10            MR. HONNOLD:  Your Honor, this is exactly what we had

13:25:33  11  discussed when we brought the objection up.

13:25:36  12            MR. IRWIN:  Your Honor, he deals with this all the time.

13:25:39  13            THE COURT:  I'll let him go into it.  Overrule the

13:25:43  14  objection.

13:25:45  15  BY MR. IRWIN:

13:25:45  16  Q.  Please continue, Doctor.

13:25:46  17  A.  My understanding, that a patient with a normal PT, you can

13:25:50  18  still have anticoagulation of the blood and that would be dangerous

13:25:53  19  in neurosurgery.

13:26:17  20            THE COURT:  Anything further?

13:26:18  21            MR. IRWIN:  Just about, your Honor.  I am just trying to

13:26:20  22  move through it.

13:26:31  23  BY MR. IRWIN:

13:26:31  24  Q.  Back to the screen, please.  Doctor, these are my last

13:26:46  25  questions.

13:53:04   1          THE COURT:  Good.  I'll also allow you all to write, if
13:53:07   2   you need to.
13:53:08   3          The issue in the case, as I see it, is if either or both
13:53:13   4   of the doctors were adequately, properly, fully informed of the
13:53:18   5   availability of a PT test, as being useful to a plaintiff in
13:53:27   6   emergency situations, available to inform the doctors as to the
13:53:32   7   proper treatment of a party in emergency situations, if they had
13:53:39   8   been advised or informed, would they have acted differently.
13:53:44   9          I listened closely to the doctors, and I must say that in
13:53:49  10   the examination by the plaintiff there was -- either or both of the
13:53:54  11   doctors answered questions that were favorable to the plaintiff.
13:53:57  12          I also listened to the defendants, and I believe that the
13:54:00  13   doctors, either or both of them, also answered questions that were
13:54:04  14   favorable to the defendant.
13:54:07  15          It's a question of the credibility at that point.  If
13:54:11  16   they answer one way for the plaintiffs, one way for the defendants,
13:54:14  17   it raises some question of credibility, and credibility really is
13:54:17  18   the question for the jury.
13:54:19  19          So for that reason, I'll deny it.
13:54:23  20          With regard to the question of the learned intermediary.
13:54:27  21   The statute itself talks about not -- of course, it's couched in
13:54:34  22   such a way that it's not just for drugs, it's for products in
13:54:39  23   general.  The question is posed that's -- that -- it seems to me,
13:54:51  24   that it's important for both the prescriber and the user.
13:54:57  25          Back in the day when old Doc Smith was around, he was the

13:55:04  1   prescriber and the user.  He did all of the work or she did all of

13:55:07  2   the work.  And times have changed now.

13:55:11  3         You have one doctor examines you in the emergency room;

13:55:15  4   he sends you to another doctor or a surgeon or whatever.  And it

13:55:20  5   seems to me that if one doctor knows something and the other doctor

13:55:25  6   doesn't know it, it's got -- they've got to be informed.  It makes

13:55:31  7   no sense to me if you only have to advise the prescribing doctor,

13:55:36  8   and you have no responsibility to advise the treating doctor,

13:55:44  9   particularly when they're different.  It seems inconsistent with

13:55:49 10   the statute, inconsistent with the cases that I read.

13:55:53 11         And so for that reason also I'll deny it.

13:55:56 12         MR. IRWIN:  Your Honor, can I make one more comment

13:55:59 13   procedurally?

13:56:00 14         THE COURT:  Sure.  Of course.

13:56:00 15         MR. IRWIN:  Your Honor, very kindly mentioned this, I

13:56:02 16   think, on the record yesterday.  But we want to make sure that it

13:56:05 17   is clear that we have properly moved at the end of the case at the

13:56:10 18   time that was proper to make this motion.

13:56:11 19         THE COURT:  Right.

13:56:14 20         MR. IRWIN:  And that we renew it now --

13:56:14 21         THE COURT:  Right.

13:56:16 22         MR. IRWIN:  -- as a matter of record, and we do want

13:56:18 23   permission to file the proper papers today at the close of

13:56:21 24   evidence.

13:56:21 25         THE COURT:  That's my understanding.  And I understood

14:03:25 1          THE COURT:  Yes.  Give me about ten minutes.

14:03:27 2          And just on a personal note, I appreciate all of the work

14:03:29 3   that you all have done in the case.  These cases are very difficult

14:03:33 4   because of the numbers of people, I have 17,000 of them, so forth.

14:03:37 5   They sell me I have 860 lawyers in the case.  So it makes it

14:03:42 6   complicated.

14:03:42 7          But the reason that these cases can be handled is because

14:03:46 8   of the quality of the lawyers who handle these cases.  And it's no

14:03:51 9   surprise to me that we have the best of the best on both sides, and

14:03:55 10  not only are they proficient, but they're very professional in the

14:04:00 11  case.  And that means a lot to me, and I need to tell you how much

14:04:03 12  I appreciate it.

14:04:05 13         MR. BARR:  Thank you, your Honor.

14:04:06 14         THE COURT:  The Court will stand in recess.

14:04:08 15         THE DEPUTY CLERK:  All rise.

14:04:09 16       (WHEREUPON, THE PROCEEDINGS WERE CONCLUDED FOR THE DAY.)

17

18                        *  *  *  *  *  *

19

20                     REPORTER'S CERTIFICATE

21

22          I, Karen A. Ibos, CCR, Official Court Reporter, United
     States District Court, Eastern District of Louisiana, do hereby
     certify that the foregoing is a true and correct transcript, to the
23   best of my ability and understanding, from the record of the
     proceedings in the above-entitled and numbered matter.

24

                        /s/ Karen A. Ibos
25                 _____
                   Karen A. Ibos, CCR, RPR, CRR, RMR
                   Official Court Reporter

OFFICIAL TRANSCRIPT

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


IN RE:  XARELTO (RIVAROXABAN) *
PRODUCTS LIABILITY LITIGATION *        Docket No. 14-MD-2592
                              *
                              *        Section L
THIS DOCUMENT RELATES TO:     *
                              *        New Orleans, Louisiana
*Joseph Orr, et al.*          *
*v. Janssen Research &*       *        June 12, 2017
*Development, et. al.,*       *
Case No. 15-CV-3708           *
                              *
* * * * * * * * * * * * * * * *

TRANSCRIPT OF JURY TRIAL
BEFORE THE HONORABLE ELDON E. FALLON
UNITED STATES DISTRICT JUDGE
VOLUME X
JUNE 12, 2017

Appearances:


For the Plaintiffs:        Levin Papantonio Thomas Mitchell
                             Rafferty & Proctor, P.A.
                           BY:  BRIAN H. BARR, ESQ.
                           316 South Baylen Street, Suite 600
                           Pensacola, Florida  32502


For the Plaintiffs:        Beasley Allen Crow Methvin
                             Portis & Miles, PC
                           BY:  ANDY BIRCHFIELD, ESQ.
                           Post Office Box 4160
                           Montgomery, Alabama 36103


For the Plaintiffs:        Gainsburgh Benjamin David
                             Meunier & Warshauer, LLC
                           BY:  GERALD E. MEUNIER, ESQ.
                           1100 Poydras Street, Suite 2800
                           New Orleans, Louisiana 70163

```
 1   Appearances:

 2
     For the Plaintiffs:              Goza & Honnold, LLC
 3                                    BY:  BRADLEY D. HONNOLD, ESQ.
                                      11181 Overbrook Road, Suite 200
 4                                    Leawood, Kansas 66211

 5
     For the Plaintiffs:              The Lambert Firm, PLC
 6                                    BY:  EMILY C. JEFFCOTT, ESQ.
                                      701 Magazine Street
 7                                    New Orleans, Louisiana 70130

 8
     For Bayer Healthcare             Wilkinson Walsh + Eskovitz, LLP
 9   Pharmaceuticals, Inc.           BY:  BETH A. WILKINSON, ESQ.
     and Bayer Pharma AG:            1900 M Street NW, Suite 800
10                                    Washington, DC 20036

11
     For Bayer Healthcare             Nelson Mullins Riley &
12   Pharmaceuticals, Inc.           Scarborough, LLP
     and Bayer Pharma AG:            BY:  DAVID E. DUKES, ESQ.
13                                    1320 Main Street, 17th Floor
                                      Columbia, South Carolina 29201
14

15   For Janssen Pharmaceuticals,    Irwin Fritchie Urquhart
     Inc. and Janssen Research &      & Moore, LLC
16   Development, LLC:               BY:  JAMES B. IRWIN, ESQ.
                                      400 Poydras Street, Suite 2700
17                                    New Orleans, Louisiana 70130

18                                    Bradley
                                      BY:  LINDSEY C. BONEY, IV
19                                    One Federal Place
                                      1819 5th Ave. N
20                                    Birmingham, AL  35203

21

22   Official Court Reporter:         Tana J. Hess, CCR, FCRR, RMR
                                      500 Poydras Street, Room B-275
23                                    New Orleans, Louisiana 70130
                                      504.589.7781
24

25   Proceedings recorded by mechanical stenography using
     computer-aided transcription software.
```

OFFICIAL TRANSCRIPT

8:06AM  1  knew that, I would sit down with the clients and -- the patient
8:06AM  2  and maybe come to a different decision.  We think it's
8:06AM  3  precisely when the subjective testimony on the causation prong
8:06AM  4  is equivocal, it's precisely in those cases that the jury
8:06AM  5  should also hear what a reasonable physician would have done
8:06AM  6  and be able to decide causation on that basis.
8:06AM  7          And so for the reasons we've previously argued,
8:06AM  8  Your Honor, we object to the Court's not having given
8:06AM  9  Plaintiffs' proposed charges 9 and 25 on the objective evidence
8:06AM 10  standard.
8:06AM 11          THE COURT:  You know, I think that the cases, when
8:06AM 12  you look at them closely, they indicate to me in any event that
8:06AM 13  the -- that that standard of objective evidence is -- is alive
8:06AM 14  and well, but it's alive and well in a fact pattern where there
8:06AM 15  is no treater or there is a treater who is -- has forgotten or
8:07AM 16  is absent or has not even expressed an opinion.
8:07AM 17          Here the treaters have expressed an opinion,
8:07AM 18  although frankly, their opinion seems to coincide with both
8:07AM 19  parties.  So I -- I understand Plaintiffs' position, but I
8:07AM 20  think that that introduces a credibility quotient, and it's
8:07AM 21  just up to the jury to decide on credibility.  So that's the
8:07AM 22  reason I deny the motion.
8:07AM 23          MR. MEUNIER:  Your Honor, our next objection again
8:07AM 24  can be discussed in reference to two of our proposed charges,
8:07AM 25  proposed charge Number 12 and proposed charge Number 3.  These

8:07AM 1   deal with federal regulations.

8:07AM 2           Proposed charge Number 12 instructs the jury

8:07AM 3   that the regulations set forth in 21 CFR Section

8:07AM 4   201.57(c)(6)(iii) sets forth a mandatory requirement that

8:07AM 5   helpful liability -- helpful laboratory tests be disclosed in a

8:08AM 6   warnings label for a prescription drug.  This regulation was in

8:08AM 7   fact shown to the jury, and it's clearly relevant to the case.

8:08AM 8   And we believe the Court should instruct the jury that the

8:08AM 9   referenced regulation specifically is relevant to the failure

8:08AM 10  to warn case made -- offered by Plaintiffs.

8:08AM 11          And then in jury charge Number 13, Judge, we

8:08AM 12  asked the Court to instruct the jury that the violation of such

8:08AM 13  regulatory standards may be considered as evidence of the

8:08AM 14  appropriate standard for determining whether instructions were

8:08AM 15  adequate, and we cite case law for that.

8:08AM 16          So we respectfully object to the failure to give

8:08AM 17  charges 12 and 13 proposed by Plaintiffs.

8:08AM 18      THE COURT:  I think taken as a whole, the jury

8:08AM 19  charges are accurate and they express what the Plaintiff has

8:08AM 20  indicated.  I don't think that zeroing in on something is even

8:08AM 21  helpful to the jury or helpful to the parties.  So that's the

8:08AM 22  reason I deny it.

8:09AM 23      MR. MEUNIER:  Our final objection, Judge, again, can

8:09AM 24  be referenced with two of the proposed charges, Numbers 27 and

8:09AM 25  28.  This deals with the strike-through label that the

| | |
|---|---|
| 11:29AM | 1 |
| 11:30AM | 2 |
| 11:30AM | 3 |
| 11:30AM | 4 |
| 11:30AM | 5 |
| 11:30AM | 6 |
| 11:30AM | 7 |
| 11:30AM | 8 |
| 11:30AM | 9 |
| 11:30AM | 10 |
| 11:30AM | 11 |
| 11:30AM | 12 |
| 11:30AM | 13 |
| 11:30AM | 14 |
| 11:30AM | 15 |
| 11:31AM | 16 |
| 11:31AM | 17 |
| 11:31AM | 18 |
| 11:31AM | 19 |
| 11:31AM | 20 |
| 11:31AM | 21 |
| 11:31AM | 22 |
| 11:31AM | 23 |
| 11:31AM | 24 |
| 11:31AM | 25 |

1  the opportunity to discuss the law with you.  We are going to
2  close the courtroom, so anybody who wishes to leave should
3  leave now.
4                          **(Pause.)**
5          THE COURT:  All right.  Be seated, please.
6              Members of the jury, you have now heard all the
7  evidence in this case as well as the final argument.  It
8  becomes my duty to instruct you on the rules of law which you
9  must apply in arriving at your decision.
10             I will first give you some general instructions
11 which apply in all cases, and then I will give you some special
12 instructions specific to this case.
13             First the general instructions.  As I mentioned
14 on several occasions, in any jury trial there are in effect two
15 judges.  I'm one of the judges.  The other is you, the jury.
16             It is my duty to preside over the trial and to
17 determine what testimony and other evidence is admissible under
18 the law for your consideration.  It is also my duty at the end
19 of the trial to instruct you on the law applicable to the case.
20             You as jurors, however, are judges of the facts,
21 but in determining what actually happened in this case, it
22 is -- in reaching your decision as to the facts, it is your
23 sworn duty to follow the law as I am now in the process of
24 defining for you, and you must follow my instructions as a
25 whole.  You have no right to disregard or give special

11:31AM   1   attention to any one instruction or to question the wisdom or
11:31AM   2   correctness of any rule that I may state to you.  That is, you
11:31AM   3   must not substitute or follow your own notion or opinion as to
11:31AM   4   what the law is or ought to be.  It is your duty to apply the
11:31AM   5   law as I give it to you, regardless of the consequences.
11:32AM   6           By the same token, it is also your duty to base
11:32AM   7   your verdict solely on the testimony and other evidence in the
11:32AM   8   case without prejudice or sympathy.  That was a promise you
11:32AM   9   made and the oath you took before being accepted by the parties
11:32AM   10  and the Court as jurors, and they have a right to expect
11:32AM   11  nothing less from you.
11:32AM   12          The case should be considered and decided by you
11:32AM   13  as an action between persons of equal standing in the
11:32AM   14  community, of equal worth and holding the same or similar
11:32AM   15  stations in life.  All persons, all corporations, all entities
11:32AM   16  stand equal before the law and are to be dealt with as equals
11:32AM   17  in a court of justice.
11:32AM   18          As I stated earlier, it is your duty to
11:32AM   19  determine the facts, and in so doing, you must concern yourself
11:32AM   20  only with the evidence I have admitted in the case.  The term
11:32AM   21  "evidence" includes the sworn testimony of the witnesses and
11:33AM   22  the exhibits admitted into evidence into the record.
11:33AM   23          Remember that any statements or objections or
11:33AM   24  arguments made by the lawyers are not evidence in the case.
11:33AM   25  The function of the lawyer is to point out those things that

3:42PM   1          And this was signed by the jury foreperson on

3:42PM   2   June 12th, 2017.  Members of the jury, is that your verdict?

3:42PM   3          (All jurors indicating in the affirmative.)

3:42PM   4          **THE COURT:**  Does anybody wish the jury to be polled?

3:42PM   5          **MR. BIRCHFIELD:**  No, Your Honor.

3:42PM   6          **MS. WILKINSON:**  No, Your Honor.

3:42PM   7          **THE COURT:**  Okay.  Then jury, we'll make this a part

3:42PM   8   of the record, and the jury is discharged with the thanks of

3:42PM   9   the Court.

3:42PM  10          **THE CASE MANAGER:**  All rise.

3:42PM  11          (Whereupon the jury was excused from the courtroom.)

3:43PM  12          **THE COURT:**  Okay.  Court will stand in recess.

13

14

15

16                          **CERTIFICATE**

17          I, Tana J. Hess, CCR, FCRR, Official Court Reporter for the

18   United States District Court, Eastern District of Louisiana, certify

19   that the foregoing is a true and correct transcript, to the best of

20   my ability and understanding, from the record of proceedings in the

21   above-entitled matter.

22

23

24   _____
     Tana J. Hess, CCR, FCRR, RMR
25   Official Court Reporter


                          OFFICIAL TRANSCRIPT