# Exhibit 25

Protected - Subject To Further Protective Review

```
 1            UNITED STATES DISTRICT COURT
 2            EASTERN DISTRICT OF LOUISIANA
 3
 4    * * * * * * * * * * * * * * * * * * * * *
                                      MDL 2592
 5                                    Section L
      IN RE: XARELTO                   JUDGE ELDON E.
 6    (Rivaroxaban) PRODUCTS           FALLON
      LIABILITY LITIGATION             MAG. JUDGE
 7                                     MICHAEL B. NORTH
 8
 9    * * * * * * * * * * * * * * * * * * * * *
10
11    PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW
12
13
              VIDEOTAPED EXPERT DEPOSITION
14
                         OF
15
              CINDY A. LEISSINGER, M.D.
16
           Taken on Tuesday, November 15, 2016
17
                Commencing at 9:09 a.m.
18
                         At
19
              THE LAMBERT LAW FIRM
20
              701 Magazine Street
21
              New Orleans, Louisiana
22
23
24
25
```

Protected - Subject To Further Protective Review

```
 1   APPEARANCES:
 2
 3   ATTORNEYS FOR PLAINTIFFS
 4
 5   LEVIN PAPANTONIO THOMAS MITCHELL
     RAFFERTY PROCTOR, P.A.
 6   316 South Baylen Street, Suite 600
     Pensacola, Florida  32502
 7   850.435.7000
     nmcwilliams@levinlaw.com
 8   BY:  NED MCWILLIAMS, ESQ.
 9
10   THE LAMBERT FIRM
     701 Magazine Street
11   New Orleans, Louisiana 70130
     504.581.1750
12   ejeffcott@thelambertfirm.com
     BY: EMILY C. JEFFCOTT, ESQ.
13
14   DOUGLAS & LONDON
     59 Maiden Lane, Sixth Floor
15   New York, New York  10038
     212.566-7500
16   lsay@douglasandlondon.com
     BY:  LARA J. SAY, ESQ.
17
18   ATTORNEYS FOR DEFENDANT BAYER
19
20   KAYE SCHOLER, LLP
     1999 Avenue of the Stars,
21   Suite 1600
     Los Angeles, California  90067-6048
22   310.788.1278
     pamela.yates@kayescholer.com
23   bert.slonim@kayescholer.com
     BY: PAMELA J. YATES, ESQ.
24       BERT L. SLONIM, ESQ.
25
```

```
 1   APPEARANCES (CONTINUED):
 2
 3   ATTORNEYS FOR DEFENDANT JANSSEN
 4
 5   VENABLE LLP
     750 East Pratt Street
 6   Suite 900
     Baltimore, Maryland 21202
 7   410.244.7655
     jmccauley@venable.com
 8   BY: JOHN A. MCCAULEY, ESQ.
 9
10   ATTORNEYS FOR DEFENDANT JANSSEN
11
12   BARRASSO USDIN KUPPERMAN FREEMAN & SARVER, L.L.C.
     909 Poydras Street
13   24th Floor
     New Orleans, Louisiana 70112
14   504.589.9733
     rsarver@barrassousdin.com
15   msharko@barrassousdin.com
     BY: RICHARD E. SARVER, ESQ.
16       MADISON A. SHARKO, ESQ.
17
18   VIDEOTAPED BY:
         MARK ANCALADE
19
20   REPORTED BY:
         Marybeth E. Muir, CCR, RPR
21       Certified Court Reporter
         In and for the State of
22       Louisiana and Registered
         Professional Reporter
23
24
25
```

1   off?
2       A.  No.  I don't make it -- it is not a
3   universal decision to take everyone off Xarelto.  I
4   have taken off patients who I deemed had particular
5   bleeding risks, because with Xarelto, there -- you
6   know, obviously no way to monitor, no way to assess
7   whether they are at high risk for bleeding, and
8   there's, perhaps just as importantly, no reversal
9   agent.
10          So I have, you know, had elderly patients
11  who were at risk of falling and had other bleeding
12  risks, who I strongly recommended that they come off
13  of Xarelto.
14      Q.  If they're on it as prescribed by their
15  cardiologist for atrial fibrillation, do you -- do
16  you recommend that they go back and talk to the
17  doctor who prescribed it, or you just tell
18  them --
19      A.  I communicate with the doctor.  Oh, yes,
20  right.  I certainly don't stop a drug that another
21  doctor has a patient on.  That would spark
22  communication.
23      Q.  It would also spark incredible risk to the
24  patient, right, because they would not be protected
25  when the patient stops the drug with no replacement?

Protected - Subject To Further Protective Review

```
 1   that the FDA had.
 2       Q.  But you agree that Xarelto and the other
 3   NOACs were approved without a requirement of
 4   therapeutic drug monitoring?
 5       A.  I do know that.
 6       Q.  And you know that currently there is no
 7   FDA-approved standardized test or device that can
 8   measure the drug level of Xarelto in a patient's
 9   blood or a surrogate blood test that can assess the
10   degree of anticoagulation with Xarelto use, correct?
11           MR. MCWILLIAMS:  Object to form.
12       A.  I know that there is no recommended
13   FDA-approved test to do that.
14       Q.  Well, there is no FDA-approved standardized
15   test to do it, right?
16       A.  Correct.
17       Q.  And you understand that the -- I'm just
18   going to call it PT test, prothrombin time.  You
19   also understand that the PT test has not been
20   approved by the FDA to measure the level of Xarelto
21   or the degree of anticoagulation, correct?
22           MR. MCWILLIAMS:  Object to form.
23       A.  Yes.  As far as I know, that's correct.
24       Q.  And there is no approved -- FDA-approved
25   assay that can measure drug level or degree of
```

1  anticoagulation for any of the NOACs, correct?

2  A. That's --- I believe that's correct.

3  Q. You agree that the FDA does not recommend or
4  require PT testing for Xarelto, correct?

5  A. Correct.

6  Q. In fact, are you aware of any drug
7  regulatory agency worldwide that recommends or
8  requires PT testing for Xarelto?

9  A. Uhmm, right. I can't speak -- I really
10 can't speak to that. As far as I know, that's
11 correct.

12 Q. You agree that there are no professional
13 medical societies that have issued medical practice
14 guidelines that recommend or require PT testing for
15 Xarelto, correct?

16 A. As far as I know. I don't -- you know, I
17 don't keep up with all the guidelines, but as far as
18 I know, I have not seen it.

19 Q. And you are a member of several
20 organizations, right?

21 A. I am.

22 Q. Do they have any guidelines that you are
23 aware of recommending or requiring PT testing for
24 Xarelto?

25 A. No, but they don't -- the societies that I

Protected - Subject To Further Protective Review

1                C E R T I F I C A T E

2

3          Certification is valid only for a transcript

4    accompanied by my original signature and

5    Original required seal on this page.

6

7          I, Marybeth E. Muir, Certified Court

8    Reporter in and for the State of Louisiana, and

9    Registered Professional Reporter, as the officer

10   before whom this testimony was taken, do hereby

11   certify that CINDY A. LEISSINGER, M.D., after

12   having been duly sworn by me upon authority of R.S.

13   37:2554, did testify as hereinbefore set forth in

14   the foregoing 353 pages; that this testimony was

15   reported by me in the stenotype reporting method,

16   was prepared and transcribed by me or under my

17   personal direction and supervision, and is a true

18   and correct transcript to the best of my ability and

19   understanding; that the transcript has been prepared

20   in compliance with transcript format guidelines

21   required by statute or by rules of the board, and

22   that I am informed about the complete arrangement,

23   financial or otherwise, with the person or entity

24   making arrangements for deposition services; that I

25   have acted in compliance with the prohibition on

1  contractual relationships, as defined by Louisiana
2  Code of Civil Procedure Article 1434 and in rules
3  and advisory opinions of the board; that I have no
4  actual knowledge of any prohibited employment or
5  contractual relationship, direct or indirect,
6  between a court reporting firm and any party
7  litigant in this matter nor is there any such
8  relationship between myself and a party litigant in
9  this matter.  I am not related to counsel or to the
10 parties herein, nor am I otherwise interested in the
11 outcome of this matter.
12
13
         This 16th day of November, 2016.
14
15
16
17
18                              _____
                                MARYBETH E. MUIR, CCR, RPR
19
20
21
22
23
24
25