# Exhibit 33

Protected - Subject to Further Protective Review

```
 1              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF LOUISIANA
 2

 3
      IN RE:  XARELTO         )
 4    (RIVAROXABAN) PRODUCTS   )
      LIABILITY LITIGATION     )  MDL No.:  2592
 5                             )  Section:  L
                               )  Judge Eldon E. Fallon
 6                             )  Mag. Judge North
                               )
 7    THIS DOCUMENT RELATES    )
      TO ALL CASES             )
 8

 9

10

11    PROTECTED - SUBJECT TO FURTHER PROTECTIVE REVIEW
12                        VOLUME I
13
14        Videotaped Deposition of LAURA M. PLUNKETT,
15    Ph.D., taken on Tuesday, December 6, 2016, in the
16    office of The Lambert Firm, A.P.L.C., 701 Magazine
17    Street, New Orleans, Louisiana 70130, commencing
18    at 8:02 a.m.
19

20

21

22

23
      Reported by:
24    AURORA M. PERRIEN
      CERTIFIED COURT REPORTER
25    REGISTERED PROFESSIONAL REPORTER
```

Protected - Subject to Further Protective Review

```
 1                  A P P E A R A N C E S
 2   REPRESENTING PLAINTIFFS:
 3          SCHLICHTER, BOGARD & DENTON, L.L.P.
            BY:  ROGER DENTON, ESQ.
 4          100 South 4th Street, Suite 1200
            St. Louis, Missouri 63102
 5          314.621.6115
            Rdenton@uselaws.com
 6
            GAINSBURGH, BENJAMIN, DAVID, MEUNIER &
 7          WARSHAUER, L.L.C., at times noted
            BY:  GERALD E. MEUNIER, ESQ.
 8          1100 Poydras Street, Suite 2800
            New Orleans, Louisiana 70163-2800
 9          504.522.2304
            Gmeunier@gainsben.com
10
11
     REPRESENTING BAYER HEALTHCARE PHARMACEUTICALS,
12   INC., and BAYER PHARMA AG:
13          KAYE SCHOLER, L.L.P.
            BY:  JEFFREY H. HOROWITZ, ESQ.
14          250 West 55th Street
            New York, New York 10019-9710
15          212.836.7572
            Jeffrey.horowitz@kayescholer.com
16
            BRADLEY, ARANT, BOULT, CUMMINGS, L.L.P.
17          BY:  LINDSEY C. BONEY, IV, ESQ.
            1819 Fifth Avenue North
18          Birmingham, Alabama 35203-2119
            205.521.8914
19          Lboney@bradley.com
20
21
22
23
24
25
```

Protected - Subject to Further Protective Review

```
 1   REPRESENTING JANSSEN PHARMACEUTICALS, INC.,
     JANSSEN RESEARCH & DEVELOPMENT, L.L.C., JANSSEN
 2   ORTHO, L.L.C.:
 3          IRWIN, FRITCHIE, URQUHART & MOORE, L.L.C.
            BY:  JAMES B. IRWIN, ESQ.
 4          400 Poydras Street, Suite 2700
            New Orleans, Louisiana 70130-3280
 5          504.310.2106
            Jirwin@irwinllc.com
 6

            IRWIN, FRITCHIE, URQUHART & MOORE, L.L.C.
 7          BY:  MEERA U. SOSSAMON, ESQ.
            400 Poydras Street, Suite 2700
 8          New Orleans, Louisiana 70130-3280
            504.310.2106
 9          Msossamon@irwinllc.com
10
11   ALSO PRESENT:
12          MELISSA BARDWELL, VIDEOGRAPHER
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Protected - Subject to Further Protective Review

1  A.  -- the data.  That is true.

2  Q.  Okay.  Were any of the NOACs approved by

3  FDA with a recommendation or requirement for

4  monitoring?

5  A.  Are you asking me about the --

6  Q.  Pradaxa, Eliquis?

7  A.  -- Pradaxa, Eliquis, and Xarelto?  No.

8  They --

9  Q.  And --

10  A.  -- were not.

11  Q.  And Savaysa.  I can never pronounce that

12  word.

13  A.  Savaysa, I think or -- no.  No.

14  Q.  Yeah.

15  A.  Savaysa maybe.

16      No.  I don't believe it was either.

17  Q.  Are you familiar with the FDA approval

18  process for average -- for laboratory assays like

19  PT?

20  A.  I'm -- I'm familiar with the -- the

21  general laboratory approval process for in vitro

22  diagnostics.  I haven't gone to look and see if

23  there's guidance specific for PT tests, though.

24  Q.  And do you have any understanding whether

25  FDA has approved PT to measure the level of

Protected - Subject to Further Protective Review

1   Xarelto or the degree of anticoagulation?
2           MR. DENTON:
3               Object to the form.
4           THE WITNESS:
5               I am not aware that there is an
6           approved in vitro diagnostic specific to
7           Xarelto.  But I am aware that certainly PT
8           testing is an approved diagnostic test.
9   BY MR. HOROWITZ:
10      Q.  Are you familiar with the FDA in vitro
11  diagnostic workshop that occurred in October of
12  2015?
13      A.  I don't recall it.  That doesn't mean I --
14  if there -- if I have a document from it in my --
15  my disclosure, I don't recall.  I don't know.
16      Q.  Well, do you recall attending?
17      A.  Oh.  I did not attend.  No.  I didn't.
18      Q.  Did you participate?
19      A.  No.  I did not participate.
20      Q.  You weren't invited to present or attend?
21      A.  No.  I did not.
22      Q.  Do you know what the FDA in vitro
23  diagnostic workshop was all about?
24      A.  I'd have to go back and look.  I have seen
25  documents related to this.  I just don't know -- I

```
 1              Say that -- start with your sentence
 2        again.
 3   BY MR. HOROWITZ:
 4        Q.  Do --
 5        A.  Do you have . . .
 6        Q.  Do you have any reason to disagree with
 7   Dr. Carrington from FDA who says, "There are
 8   currently no cleared or approved devices that
 9   measure the effect of concentration of direct oral
10   anticoagulants"?
11             MR. DENTON:
12                  Object to the question.
13             THE WITNESS:
14                  Are you asking me about cleared and
15             proved [sic] in the U.S., or are you
16             asking me in other countries?  I would
17             agree that in the U.S. that is -- that is
18             likely true, but I don't believe that's
19             true with other countries.
20   BY MR. HOROWITZ:
21        Q.  In the United States, there are no cleared
22   or approved devices that measure the effect or
23   concentration of direct oral anticoagulants;
24   correct?
25             MR. DENTON:
```

1           Object to the form.

2      THE WITNESS:

3           I agree you read that correctly.  And

4      I would agree that that is probably --

5      that is true as -- from my knowledge based

6      on the U.S.  But I do -- I do not believe

7      that is true at all based upon worldwide.

8  BY MR. HOROWITZ:

9      Q.  Do you know the Diagnostica Stago --

10 you're referring to the anti-Factor Xa assay;

11 right?

12     A.  Yes.

13     Q.  Do you know that they have applied -- or

14 do you know anything about their application

15 process here in the U.S.?

16     A.  This is again an area I can no longer

17 answer questions about because I've seen internal

18 documents related to this in other litigation.

19     Q.  I don't understand.

20     MR. DENTON:

21          She's seen confidential documents in

22     other litigation.  She can't answer the

23     question.  What part didn't you

24     understand?

25     MR. HOROWITZ:

```
 1                    The whole part.
 2    BY MR. HOROWITZ:
 3         Q.   Confidential documents related to -- let
 4    me just make sure I understand.
 5         A.   You're asking me about -- am I aware of
 6    things.   And I'm saying to you that I don't feel
 7    comfortable going into this area about what I'm
 8    aware of because of the fact that it crosses into
 9    the area of confidential documents that I have
10    seen.
11         Q.   In other litigation?
12         A.   In other litigation.  Exactly.
13         Q.   Well, let me show you a document in this
14    litigation.  All right.  We're going to mark as
15    Plunkett 13 a document entitled "Extract of the
16    FDA Feedback," "STA - Rivaroxaban Calibrator &
17    Control."
18              (Exhibit No. 13 was marked for
19              identification and attached hereto.)
20    BY MR. HOROWITZ:
21         Q.   Do you see that?
22         A.   I see that title.  Yes.
23         Q.   Okay.  And is it fair to say you didn't
24    review this document in preparing your opinions in
25    this case?
```

1      A.   I don't recall it.  And if it's not on my
2   list, I did not.  So I have -- but I would have to
3   compare it to tell you definitively it's not.  But
4   I don't --
5      Q.   Okay.
6      A.   -- recall it.
7      Q.   And do you have an understanding that
8   Diagnostica Stago has applied for approval of an
9   anti-Factor Xa assay in the United States?
10     A.   I don't know if the name of the company is
11  Stago.  No.  But I know that there has been an
12  application, and that's all I can say based upon
13  other information that I know based on
14  confidential documents in other litigation.
15     Q.   All right.  Well, take a look here.  It
16  says, "FDA responses to your questions are found
17  below."
18          Do you see that on the first page there,
19  very top of the first page?
20     A.   Yes.  I see that.
21     Q.   Okay.
22     A.   In bolded, your -- before Method
23  Comparison, yes.
24     Q.   Right.  And you see it says "Subject:"
25  120710, and the first thing is STA -Liquid Anti-Xa

1    Assay and then it says "STA -Rivaroxaban Control"

2    twice?  Do you see that?

3         A.   Yes.

4         Q.   If you go to the next page, which at the

5    bottom is Bates numbered -- the last three numbers

6    are 984.  Do you see that at the bottom, where it

7    says, "Labeling - Does FDA agree with the IFU

8    strategy proposed"?

9         A.   Yes.  I see that.

10         Q.   Okay.  And then you see the FDA response?

11   Do you see that there?

12         A.   I see the words "FDA Response."

13         Q.   Okay.  And then it goes on to say, "The

14   approved" -- well, let me just read the whole

15   thing.  "In sections 1.1 and 4.0 - you state 'The

16   current STA Liquid Anti-Xa Instructions for use

17   (IFU) with the heparin application will be

18   modified to add rivaroxaban application."

19              Do you see that?

20         A.   I see that.  Yes.

21         Q.   It says, "Modification to the Intended Use

22   is acceptable provided that the clinical utility

23   of measuring rivaroxaban is supported"; correct?

24              MR. DENTON:

25                   Well, again, I object --

Protected - Subject to Further Protective Review

1       THE WITNESS:
2           I agree you have --
3       MR. DENTON:
4           -- to the form.
5       THE WITNESS:
6           -- read it correctly.
7  BY MR. HOROWITZ:
8     Q.  Okay.  When I -- when I read it and say
9  that, that's what it says; right?
10    A.  You have read that correctly.  Yes.
11    Q.  Okay.  "The approved New Drug Application
12 . . . does not recommend monitoring of coagulation
13 parameters during treatment with rivaroxaban in
14 routine clinical situations."
15        Did I read that correctly so far?
16    A.  You have read that correctly so far.
17    Q.  "Therefore, you will need to provide
18 justification for in vitro diagnostic use of the
19 assay to measure rivaroxaban levels.  Evidence of
20 the necessity for monitoring rivaroxaban should be
21 clearly outlined and supported in your
22 submission."
23        Did I read that correctly?
24    A.  Yes.  You did.
25    Q.  And then if you go to the last page,

1    Page 986, it says at the top, as part of FDA's
2    feedback, "Please clarify what is the additional
3    value for measuring rivaroxaban levels when the
4    drug was approved as safe and effective without
5    testing drug levels."
6              Did I read that correctly?
7       A.   You have read that correctly.  Yes.
8       Q.   And is it fair to say that in forming your
9    opinions in this case, you didn't consider these
10   statements from FDA?
11             MR. DENTON:
12                 Object to the form.
13             THE WITNESS:
14                 I don't recall this document.
15   BY MR. HOROWITZ:
16      Q.   Okay.  And now I want to talk to you about
17   the briefing document we've been discussing off
18   and on.  We're going to pull that out of our --
19   our box.
20             MR. DENTON:
21                 How many trees did you kill?
22             MR. HOROWITZ:
23                 A lot.  I'd rather not confess that on
24             the record.  Thank you, Roger.
25   BY MR. HOROWITZ:

Protected - Subject to Further Protective Review

1                C E R T I F I C A T E
2        This certification is valid only for
3     a transcript accompanied by my original signature
4     and original seal on this page.
5        I, AURORA M. PERRIEN, Registered Professional
6     Reporter, Certified Court Reporter, in and for the
7     State of Louisiana, as the officer before whom
8     this testimony was taken, do hereby certify that
9     LAURA M. PLUNKETT, PH.D., after having been duly
10    sworn by me upon the authority of R.S. 37:2554,
11    did testify as hereinbefore set forth in the
12    foregoing 543 pages; that this testimony was
13    reported by me in the stenotype reporting method,
14    was prepared and transcribed by me or under my
15    personal direction and supervision, and is a true
16    and correct transcript to the best of my ability
17    and understanding; that the transcript has been
18    prepared in compliance with transcript format
19    guidelines required by statute or by rules of the
20    board; and that I am informed about the complete
21    arrangement, financial or otherwise, with the
22    person or entity making arrangements for
23    deposition services; that I have acted in
24    compliance with the prohibition on contractual
25    relationships, as defined by Louisiana Code of

Protected - Subject to Further Protective Review

1    Civil Procedure Article 1434 and in rules and
2    advisory opinions of the board; that I have no
3    actual knowledge of any prohibited employment or
4    contractual relationship, direct or indirect,
5    between a court reporting firm and any party
6    litigant in this matter nor is there any such
7    relationship between myself and a party litigant
8    in this matter.  I am not related to counsel or to
9    the parties herein, nor am I otherwise interested
10   in the outcome of this matter.
11
12
13
14
15                 AURORA M. PERRIEN, CCR, RPR
16
17
18
19
20
21
22
23
24
25