# EXHIBIT C

```
                    UNITED STATES DISTRICT COURT

                    EASTERN DISTRICT OF LOUISIANA



IN RE:  XARELTO (RIVAROXABAN)    *
PRODUCTS LIABILITY LITIGATION    *      Docket No. 14-MD-2592
                                 *
                                 *      Section L
THIS DOCUMENT RELATES TO:        *
                                 *      New Orleans, Louisiana
Joseph Orr, et al.               *
v. Janssen Research &            *      May 30, 2017
Development, et. al.,            *
Case No. 15-CV-3708              *
                                 *
* * * * * * * * * * * * * * * *


                    TRANSCRIPT OF JURY TRIAL
              BEFORE THE HONORABLE ELDON E. FALLON
                 UNITED STATES DISTRICT JUDGE
                  VOLUME I - AFTERNOON SESSION


Appearances:


For the Plaintiffs:          Levin Papantonio Thomas Mitchell
                                Rafferty & Proctor, P.A.
                             BY:  BRIAN H. BARR, ESQ.
                             316 South Baylen Street, Suite 600
                             Pensacola, Florida  32502



For the Plaintiffs:          Beasley Allen Crow Methvin
                                Portis & Miles, PC
                             BY:  ANDY BIRCHFIELD, ESQ.
                             Post Office Box 4160
                             Montgomery, Alabama  36103



For the Plaintiffs:          Gainsburgh Benjamin David
                                Meunier & Warshauer, LLC
                             BY:  GERALD E. MEUNIER, ESQ.
                             1100 Poydras Street, Suite 2800
                             New Orleans, Louisiana  70163
```

Appearances:

| | |
|---|---|
| For the Plaintiffs: | Goza & Honnold, LLC<br>BY:  BRADLEY D. HONNOLD, ESQ.<br>11181 Overbrook Road, Suite 200<br>Leawood, Kansas 66211 |
| For the Plaintiffs: | The Lambert Firm<br>BY:  EMILY C. JEFFCOTT, ESQ.<br>701 Magazine Street<br>New Orleans, Louisiana 70130 |
| For Bayer Healthcare Pharmaceuticals, Inc. and Bayer Pharma AG: | Wilkinson Walsh + Eskovitz, LLP<br>BY:  BETH A. WILKINSON, ESQ.<br>1900 M Street NW, Suite 800<br>Washington, DC 20036 |
| For Bayer Healthcare Pharmaceuticals, Inc. and Bayer Pharma AG: | Nelson Mullins Riley & Scarborough, LLP<br>BY:  DAVID E. DUKES, ESQ.<br>1320 Main Street, 17th Floor<br>Columbia, South Carolina 29201 |
| For Janssen Pharmaceuticals, Inc. and Janssen Research & Development, LLC: | Irwin Fritchie Urquhart & Moore, LLC<br>BY:  JAMES B. IRWIN, ESQ.<br>400 Poydras Street, Suite 2700<br>New Orleans, Louisiana 70130 |
| Official Court Reporter: | Toni Doyle Tusa, CCR, FCRR<br>500 Poydras Street, Room B-275<br>New Orleans, Louisiana 70130<br>(504) 589-7778 |

Proceedings recorded by mechanical stenography, transcript produced by computer.

1  can take the best care of their patients.  The content of the
2  label, you will hear, is the sole responsibility of the drug
3  company.  And the company -- these defendants -- have a
4  responsibility to make sure that the label is accurate,
5  truthful, and contains complete information.  Let me say that
6  again.  The content of the label is the sole responsibility of
7  these companies.
8             The defendants tell doctors in the United States
9  that if you need to go to surgery, Xarelto should be stopped
10 24 hours before the procedure to reduce the risk of bleeding.
11 Wait 24 hours for Xarelto to clear the body and lose precious
12 time to save the patient.
13            Dr. Bui was aware of the information in the
14 label.  He did what the defendants instructed him to do and
15 didn't follow what he was taught to do in medical school, which
16 is operate immediately.  But Bayer and Janssen didn't provide
17 the whole truth in the U.S. label.  They didn't provide the
18 whole truth, because they told doctors like Dr. Bui that the
19 anticoagulant effect -- just a big word for saying how thin
20 somebody's blood is -- the anticoagulant effect cannot be
21 monitored with standard laboratory testing.  PT is standard
22 laboratory testing.
23            This is what U.S. doctors are told:  no
24 measurement and no test available to let doctors know how thin
25 the blood is and whether it's safe to operate.  You are going

1  to hear this is what Dr. Bui understood about Xarelto.  You are
2  also going to see that this statement is false.  It's not true.
3              The defendants know now, knew then, and have
4  known for years that PT is a simple indicator test that a
5  doctor can order to indicate whether it's safe to proceed to
6  emergency surgery, the same test that was perfectly normal for
7  Ms. Orr the night she went to the ER.
8              But doctors have to be told the truth.  They
9  have to be told the test can be used with Xarelto and not be
10 told there is no test or that the test is meaningless.
11             Now, PT isn't perfect.  You are not going to
12 hear us say it's a perfect test.  There's no such thing as a
13 perfect test in medicine.  But it doesn't need to be perfect.
14 It only needs to be helpful, to be useful to doctors making
15 clinical decisions for patients.  PT is a good, helpful test.
16             The defendants aren't honest about how to use
17 it.  A helpful test, you will hear, the defendants are legally
18 required to put it into the label.  That's because, according
19 to the law, helpful laboratory testing not only should be, it
20 must be in the warning section of the drug label.  You will see
21 that at no point have these defendants ever proposed or
22 suggested that doctors should actually use the PT test to
23 measure the thinness of the blood to conduct emergency surgery.
24 Defendants have never proposed such language in the
25 United States.

1                    In the medical literature -- you are going to
2     see a lot of medical literature in this case.  Most of you will
3     probably have doctorate degrees by the time this is all over.
4     The medical literature agrees that PT is a helpful test that
5     can be used to determine it is safe to go to surgery.  The PT
6     is a useful test, for doctors, on Xarelto.  The defendants may
7     try to argue that it's good enough that some scientists have
8     published what the defendants won't say in the label.
9                    But you are going to hear that doctors are
10    responsible for hundreds of drugs.  Each of those drugs have
11    hundreds of articles written about them.  There are hundreds of
12    articles written about Xarelto.  That's why critical safety
13    information is required to be in the label, so that doctors
14    don't have to go searching through the literature to try to
15    figure out what to do when they are dealing with an emergency.
16                   The company, you will hear, is obligated to put
17    critical safety information in the label.  You are going to see
18    that the defendants fully understood that PT was a helpful
19    laboratory test that would be useful as an indicator test to
20    let a doctor like Dr. Bui know it's safe to go to surgery.
21                   We are going to play the sworn video testimony
22    of several company employees, people who have worked on Xarelto
23    for over a decade.  Now, we wish we could bring these people to
24    you to testify live.  We wish we could do that.  But they are
25    not available to be here, and I can't force them to come.

Page 248

1                                       * * *

2                                  CERTIFICATE

3          I, Toni Doyle Tusa, CCR, FCRR, Official Court

4 Reporter for the United States District Court, Eastern District

5 of Louisiana, certify that the foregoing is a true and correct

6 transcript, to the best of my ability and understanding, from

7 the record of proceedings in the above-entitled matter.

8

9

10                                     s/ Toni Doyle Tusa
                                       Toni Doyle Tusa, CCR, FCRR
11                                     Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25