# EXHIBIT LL

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

IN RE:  XARELTO (RIVAROXABAN)
PRODUCTS LIABILITY LITIGATION        MDL No. 2592
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~       SECTION L

THIS DOCUMENT RELATES TO ALL         Judge Eldon E. Fallon
CASES                                Mag. Judge North


- PROTECTED -

- SUBJECT TO FURTHER PROTECTIVE REVIEW -


THURSDAY, DECEMBER 8, 2016


SUZANNE PARISIAN, M.D.


        Videotaped deposition of SUZANNE PARISIAN,
M.D., held at the law offices of Burg Simpson, 2398
East Camelback Road, Suite 1010, Phoenix, Arizona,
commencing at 9:13 a.m., on the above date, before
Sommer E. Greene, a Certified Court Reporter and
Certified Realtime Reporter.

Protected - Subject to Further Protective Review

Page 2

```
 1    APPEARANCES OF COUNSEL
 2
 3         For Plaintiffs:
 4
              LEVIN, FISHBEIN, SEDRAN & BERMAN
 5            MICHAEL M. WEINKOWITZ, ESQ.
              510 Walnut Street, Suite 500
 6            Philadelphia, Pennsylvania 19106
              215.592.1500
 7            Mweinkowitz@lfsblaw.com
 8
              SCHLICHTER, BOGARD & DENTON
 9            ASHLEY BRITTAIN-LANDERS, ESQ.
              100 South Fourth Street, Suite 1200
10            St. Louis, Missouri 63102
              314.621.6115
11            Abrittain@uselaws.com
12
13         For Janssen Defendants:
14            BARNES & THORNBURG, LLP
              JAMES F. MURDICA, ESQ.
15            One North Wacker Drive, Suite 4400
              Chicago, Illinois 60606
16            312.357.1313
              Jmurdica@btlaw.com
17
18            BARNES & THORNBURG LLP
              SARAH E. JOHNSTON, ESQ.
19            2029 Century Park East, Suite 300
              Los Angeles, California 90067
20            310.284.3880
              Sjohnston@btlaw.com
21
22
23
24
25
```

Golkow Technologies, Inc. - 1.877.370.DEPS

```
                                                            Page 3
 1    APPEARANCES CONTINUED
 2
 3         For Janssen Defendants:
 4
                DRINKER BIDDLE & REATH, LLP
 5              JULIE L. TERSIGNI, ESQ.
                600 Campus Drive
 6              Florham Park, NJ 07392
                973.549.7106
 7              Julie.tersigni@dbr.com
 8
           For Bayer Defendants:
 9
                BARTLIT, BECK, HERMAN, PALENCHAR
10              & SCOTT
                STEVEN E. DERRINGER, ESQ.
11              54 West Hubbard Street, Suite 300
                Chicago, Illinois 60654
12              312.494.4415
                Steven.derringer@bartlit-beck.com
13
14
           Also Present:
15
                Videographer, Cody Warren
16
17
18
19
20
21
22
23
24
25
```

1  terms of the marketing.  You can't change the intended
2  use.  You can't change the intended patient population,
3  because that would be considered as an expanse, say.
4  That would be a change in the FDA-approved use because
5  the FDA approves the intended use and the patient
6  population and the claims that can be made.  So those
7  would require prior approval by the FDA.
8            So there are certain things that do require
9  prior approval, and those are also things that are --
10 oftentimes fall under the guides of off-label use.  You
11 can't do those without having FDA approval first, and so
12 that would definitely address marketing, but you can
13 warn, and so you can do certain things.  But those are
14 usually for a marketed product that you're trying to
15 protect the public and changing -- making changes, and
16 that's why there's no delay put in in terms of FDA
17 approval for a manufacturer to protect themselves in
18 terms of marketing and to protect the public.
19    Q.    Okay.  Like I said, we're going to take this
20 one section at a time.  There are sections of the
21 label -- of a prescription drug label prescribing
22 information in the United States that require a prior
23 approval before the manufacturer can change them.
24 Correct?
25    A.    Yes.

Protected - Subject to Further Protective Review

Page 50

1    Q.    Okay.  Now, you just mentioned one section.  It
2    is also true that the highlights cannot be changed
3    without prior approval.  Correct?
4    A.    Right.
5    Q.    Okay.
6    A.    And those are -- highlights would tend to have
7    what the indications for use are, the patient population,
8    and so that actually came about in 2006.  And it's really
9    not -- it's really not been addressed, but the regulation
10   says that the highlights section should stay the same and
11   get FDA approval.
12   Q.    Okay.  And what you're referring to in 2006,
13   that's referred to as a PLR.  Right?
14   A.    Yes, physician's label.
15   Q.    And you were not at FDA at the time that the
16   PLR became effective.  Correct?
17   A.    No.  I left in 1995.
18   Q.    And the PLR changed 201.57.  Correct?
19   A.    It changed 201.57, moving 201.57 to 201.80
20   for -- pre-2006, and then it had a new 201.57.
21   Q.    And it also changed the contents of 201.57.
22   Correct?
23   A.    Well, it changed the format.  So the format had
24   changed, and so, yeah, it did.  Like warnings and
25   precautions were put together.  So there are certain

Protected - Subject to Further Protective Review

Page 51

1  things that are changed in terms of the labeling and
2  the format that the FDA required, not the contents
3  but the format.
4      Q.    For example, you just mentioned one section
5  that got moved.  The warnings and precautions came
6  together.  Use in special populations also moved, for
7  example?
8      A.    Correct, but it was designed by the FDA
9  to make the label more user friendly to physicians so
10 that they would be able to -- be able to find information
11 quicker and in more reliable fashion than they did with
12 the pre-2006 label, which is now described in the 201.80.
13            So it was a format change.  FDA didn't
14 change the contents.  It changed the format in terms of
15 the structure, and that's what that whole 2006 label
16 change was about.
17     Q.    Products approved after 2007 are subject to the
18 PLR.  Correct?
19     A.    Yes.  If they have an original approval.  Some
20 manufacturers actually grandfathered -- they had
21 pre-2006.  So they had taken time to move into the new
22 format.
23     Q.    The regulations allowed up to three years for a
24 manufacturer to move into the PLR format --
25     A.    Right.

Protected - Subject to Further Protective Review

Page 55

1             MR. MURDICA:  Yeah, that's fine.
2             THE VIDEOGRAPHER:  We're going off the
3    record.  The time is 10:19 a.m.
4             (A recess was held off the record.)
5             THE VIDEOGRAPHER:  We are back on the
6    record.  The time is 10:36 a.m.
7        Q.   BY MR. MURDICA:  Welcome back, Dr. Parisian.
8        A.   Thank you.
9        Q.   If you recall, before we took a break, we were
10   going through the sections of a prescription drug label
11   and whether changing them requires prior approval or not.
12       A.   Yes, sir.
13       Q.   Okay.  So what we're going to do is we're going
14   to mark as Exhibit 1 what I'm going to represent to you
15   is the current Xarelto label.  Okay?
16       A.   Okay.  Thank you.  It's warm.
17       Q.   Hot off the press.
18            (Exhibit 1 was marked for identification.)
19            MS. BRITTAIN-LANDERS:  Do you have an extra
20   copy, Counsel?
21            MR. MURDICA:  We just printed them out
22   there.
23            MS. BRITTAIN-LANDERS:  Can you give the date
24   for the record then, please?
25            MR. MURDICA:  Yes.  It says revised August

Protected - Subject to Further Protective Review

Page 56

1  2016 in the highlights section.  On the final page of the
2  exhibit, it says revised May 2016.
3      Q.   BY MR. MURDICA:  Dr. Parisian, are you ready to
4  proceed?
5      A.   Yes, sir.
6      Q.   Okay.  Dr. Parisian, does this appear to you to
7  be the current Xarelto label?
8      A.   Yes, sir.
9      Q.   What I'd like to do with you is to walk through
10 the different sections and have you just say yes,
11 requires a prior approval supplement to change, or no.
12 Okay?
13           So if you look at page 1, do you agree that
14 this is the highlights section?
15     A.   Yes, sir.
16     Q.   I believe you already testified changing this
17 requires prior approval supplement.  Correct?
18     A.   According to the regulations, yes, sir.
19     Q.   Okay.  And you're not going to disagree with
20 the regulations.  Correct, Doctor?
21     A.   No, sir.
22     Q.   Okay.
23     A.   Why would I?
24     Q.   Now, page 3, do you see where it says full
25 prescribing information?

Protected - Subject to Further Protective Review

Page 57

```
 1     A.    Yes, sir.
 2     Q.    All right.  Now, in this area, we see first a
 3   black-box warning.  Is that right?
 4     A.    Yes, sir.
 5     Q.    All right.  And we have agreement that this
 6   cannot be changed without a prior approval supplement.
 7   Correct?
 8     A.    It has -- that's correct.
 9     Q.    Okay.
10     A.    Because the company actually has to remove
11   this, and FDA said no, it has to stay in.  So it has
12   to -- FDA has to pass on this --
13     Q.    Okay.
14     A.    -- to remove it or put a new black-box warning.
15     Q.    Section number 1, which is also on page 3, you
16   see it says indications in usage, Dr. Parisian?
17     A.    Yes, sir.
18     Q.    I believe you testified earlier that to change
19   this section you also need prior approval.  Correct?
20     A.    Right, because this is what you can market the
21   drug for.
22     Q.    Okay.  Section number 2, dosage and
23   administration, another one that requires prior approval.
24   Correct?
25     A.    Yes.
```

Protected - Subject to Further Protective Review

Page 58

1   Q.   Section 3, which is on page --
2   A.   It depends, though.  It depends if the company
3   were to know that they need to -- because they're allowed
4   to improve or strengthen their warnings and their
5   instructions for use.  So it depends on what the changes
6   are that they're making, and these are the approved
7   indications that the FDA has approved, but if the company
8   knew that something was not correct, the CBE would permit
9   that, and they'd have to provide the information to the
10  FDA.  So this is a depends.  Depends what the changes
11  they're making.
12  Q.   Okay.  Section 2, dosage and administration,
13  which -- that -- what we were on just now --
14  A.   Right.
15  Q.   -- on --
16  A.   Right.
17  Q.   -- page 4 where you just gave that answer?
18  A.   Yes, sir.
19  Q.   Your testimony is that dosage and
20  administration may be changed without prior approval.  Is
21  that correct?
22  A.   The dosage probably won't.  If there's
23  instructions that the manufacturer knows to improve the
24  -- the dosing, that would be allowed under CBE, but the
25  dose itself probably wouldn't.