UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE ELDON E. FALLON |
| James Henry, et al. v. Janssen et al. Case No. 2:15-cv-00224 | MAGISTRATE NORTH |

### DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT UNDER THE TEXAS PRODUCT LIABILITY ACT

Defendants are entitled to summary judgment on all of Plaintiff's claims under the Texas Product Liability Act ("TPLA").[1] Based on the undisputed material facts and the plain language of the TPLA, Plaintiff cannot prevail on his claims for alleged (1) failure to warn claims that the Xarelto label should have included (a) a different warning regarding the risk of bleeding and (b) instruct physicians to perform a Neoplastin Prothrombin Time ("PT") test, or (2) design defect claims that Xarelto should have been sold with a different dosing regimen and included an anti-Factor Xa assay. Plaintiff's claims under the TPLA fail for three reasons.

*First*, Plaintiff cannot overcome the TPLA's rebuttable presumption of non-liability that the FDA-approved labeling for Xarelto is adequate as a matter of law. Xarelto's label has always been approved by FDA, and it has always clearly and prominently warned of the risk of bleeding—the very risk that Plaintiff alleges that Mr. Henry suffered. Moreover, FDA expressly declined Janssen's proposal to add language that would have advised physicians that the relationship between PT and Xarelto concentration is "linear and closely correlated" and that PT may be used if "considered necessary." Accordingly under the TPLA, the warnings in the FDA-

---

[1] Defendants have also filed motions for summary judgment on the basis of federal preemption and on the ground that Plaintiff cannot establish proximate cause because William Henry's prescribing physician testified that even if there had been a different warning or instruction in the Xarelto label, he still would have prescribed Xarelto.

approved Xarelto label regarding the risk of bleeding and the lack of a need to routinely assess patients' coagulation status are presumed to be adequate as a matter of law. Plaintiff cannot rebut this presumption, and therefore he cannot prevail on his failure-to-warn-or-instruct claim.

***Second***, Plaintiff's design-defect claim—which alleges that Xarelto should have been sold at a different dose, with an anti-Factor Xa assay, and/or with a reversal agent—fails because Texas law does not allow a plaintiff to recover on a design-defect theory in a case involving a prescription medication.

***Third***, the TPLA provides the exclusive remedy under Texas law for a plaintiff who alleges physical injuries allegedly caused by his use of a product. As a result, Plaintiff's separately pleaded common-law claims should be dismissed as a matter of law.

For these reasons, and as set forth below, the Court should enter summary judgment for Defendants under Texas law.

## FACTUAL BACKGROUND

Plaintiff James Henry brought this action individually and on behalf of the estate of William Henry, alleging that as a result of using Xarelto, Mr. Henry experienced a bleeding event in December 2012, from which he successfully recovered. Ex. A, Fifth Amended Plaintiff Fact Sheet ("Fifth Am. PFS") I.D.1. Plaintiff asserts common-law claims for Negligence (Compl. ¶ 109 (Count 1)), Strict Products Liability (*id*. ¶ 120 (Count 2)), Breach of Express Warranty (*id*. ¶ 143 (Count 3)), Breach of Implied Warranties (*id*. ¶ 153 (Count 4), Fraudulent Misrepresentation (*id*. ¶ 164 (Count 5)), Fraudulent Concealment (*id*. ¶ 176 (Count 6)) and Fraud and Deceit (*id*. ¶ 187 (Count 7)).

Mr. Henry was diagnosed with atrial fibrillation ("AFib") in 1985. (Ex. A, Fifth Am. PFS III.A.1.b.). AFib increases the risk of developing blood clots, which could lead to a serious

thrombotic event, another stroke or heart attack. Mr. Henry was initially prescribed warfarin to reduce the risks associated with his AFib, but in April, 2012, Dr. David B. McCain switched Mr. Henry to Xarelto due to Mr. Henry's non-compliance with warfarin's monitoring requirements. (*Id.* at I.C, III.A.1.c; Ex. B, McCain Dep. 73:15-25, July 1, 2016).

Xarelto is in a class of medications known as novel oral anticoagulants ("NOACs"). Xarelto was initially approved by the FDA in July, 2011. *See* Compl. ¶ 72. All NOACs, like all anticoagulants generally, are intended to prevent patients from developing deadly clots but also carry an increased risk of bleeding. Xarelto's FDA-approved labeling clearly and repeatedly warns of the risk of bleeding, mentioning the terms "bleed" or "bleeding" approximately 100 times. (*See, e.g.*, Ex. C, Nov. 2011 USPI Highlights of Prescribing Information: Warnings and Precautions (warning of "serious or fatal bleeding"); *id.* § 5.2 (Warnings and Precautions) (same); *see id.* at Medication Guide (warning that "Xarelto can cause bleeding which can be serious, and rarely may lead to death")). Dr. McCain knew and understood these risks. (*See* Ex. B, McCain Dep. 35:16-22 ("Q. . . . you understood that one of the potential side effects of Xarelto was serious and fatal bleeding, correct? A. Absolutely. Q. And that's true for all anticoagulation medications, correct? A. Yes, ma'am.")).

At the time that Dr. McCain prescribed Xarelto, Mr. Henry had a multitude of underlying health conditions, including AFib, obesity, chronic obstructive pulmonary disease, hypertension, and a history of stroke affecting his left eye, as well as tobacco and alcohol abuse. (Ex. A, Fifth Am. PFS V.H.; Ex. D, WHenry-HMC-MD-132, 133, 254-57). Mr. Henry was taking many different prescription medications to treat his various health conditions, including aspirin and Naprosyn/Naproxen, both of which also increased his risk of bleeding. (Ex. E, WHenry-

EHHNCT-1405-1407, 1438-1443, 1467, 1484-1487, 1532-1546, 1553-1557). The Xarelto label clearly warned of those increased risks:

> 5       WARNINGS AND PRECAUTIONS
>
> 5.2     Risk of Bleeding
>
> XARELTO increases the risk of bleeding and can cause serious or fatal bleeding. In deciding whether to prescribe XARELTO to patients at increased risk of bleeding, the risk of thrombotic events should be weighed against the risk of bleeding.
>
> . . .
>
> Concomitant use of other drugs affecting hemostasis increases the risk of bleeding. These include aspirin, P2Y12 platelet inhibitors, other antithrombotic agents, fibrinolytic therapy, and non-steriodal anti-inflammatory drugs (NSAIDs) [See Drug Interactions (7.3)].

(Ex. C, Nov. 2011 USPI Highlights of Prescribing Information: §5.2 Warnings and Precautions).

FDA also approved Xarelto for use in patients with AFib *without* a recommendation for PT monitoring or the proposed PT language in Section 12.2, and *with* statements in Sections 5.4 (previously in 5.3) and 8.1 stating that "[t]he anticoagulant effect of XARELTO cannot be monitored with standard laboratory testing." (*See* Ex. F; *see also* Ex. G, Correspondence from Norman Stockbridge, M.D, Ph.D., U.S. Food and Drug Administration to Janssen Pharmaceuticals, Inc. dated Nov. 4, 2011).[2]

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgement as a matter of law." Fed. R. Civ.

---

[2] Defendants' incorporate their Motion for Summary Judgment on Labeling Preemption Grounds, which explains these facts in greater detail. In short, FDA struck Janssen's proposed language in Section 12 language for the Xarelto label that would have advised physicians that the relationship between PT and Xarelto concentration is "linear and closely correlated" and that PT may be used to assess anticoagulation effect if "considered necessary." At the same time, FDA added language that the anticoagulant effect of Xarelto cannot be monitored with standard laboratory testing.

4

P. 56(a). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). The moving party need not negate the elements of the opposing party's case; it is enough to show that the opposing party cannot satisfy an element of his or her claim. *Bayle v. Allstate Ins. Co.*, 615 F.3d 350,355 (5th Cir. 2010). A fact is material only if its resolution would affect the outcome of the action. *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009). Alleged "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is required if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to his or her case on which he or she bears the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322.

## ARGUMENT

I. **Plaintiff cannot overcome the TPLA's rebuttable presumption of non-liability.**

    A. **The TPLA's presumption of non-liability applies to Plaintiff's failure-to-warn claim.**

The TPLA governs any personal-injury claim asserted under Texas law that arises out of a plaintiff's use of prescription medications. Section 82.007(a) of the TPLA states as follows:

> In a products liability action alleging that an injury was caused by a failure to provide adequate warnings or information with regard to a pharmaceutical product, there is a ***rebuttable presumption that the defendant or defendants***, including a health care provider, manufacturer, distributor, and prescriber, ***are not liable*** with respect to the allegations involving failure to provide adequate warnings or information if:
>
> (1) the warnings or information that accompanied the product in its distribution were those approved by the United States Food and Drug Administration for a product approved under the Federal Food, Drug, and Cosmetic Act (21 U.S.C.

> Section 301 et seq.), as amended, or Section 361, Public Health Service Act (42 U.S.C. Section 362), as amended . . .

Tex. Civ. Prac. & Rem. Code Ann. § 82.007(a) (emphasis added).

"Product liability action" as used in the TPLA means "any action against a manufacturer or seller for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product whether the actions is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories." *Id.* § 82.001(2). All of Plaintiff James Henry's claims for personal injuries fall within the definition of "product liability action" and therefore are covered by the TPLA. *Id.* § 82.007(a)(1).

The TPLA's rebuttable presumption in § 82.007(a) clearly applies to Plaintiff's failure-to-warn claim in this case. *See Centocor, Inc. v. Hamilton,* 372 S.W.3d 140, 168 (Tex. 2012) (holding that claims for strict products liability, negligence, breach of implied warranty of merchantability, misrepresentation, and consumer fraud should be dismissed on the grounds that they were based on the manufacturer's failure to warn or to disclose the drug's side effects); *see also, e.g.*, *Lashley v. Pfizer, Inc.*, 750 F.3d 470, 477–78 (5th Cir. 2014) (discussing the rebuttable presumption); *Jackson v. Wyeth LLC*, No. 2:12-cv-196, 2015 WL 363513, at * 1 (S.D. Tex. Jan. 27, 2015) (holding that the TPLA's presumption "applies, regardless of the theory of liability that Plaintiff pleads"); *McKay v. Novartis Pharm. Corp.*, 934 F.Supp.2d 898, 907 (W.D. Tex. 2013) ("Recently, courts have held that a plaintiff's failure to warn claims—although labeled as negligence, strict liability, and breach of warranty—nonetheless are subject to the statutory presumption of nonliablity found in Section 82.007 and the learned intermediary doctrine."); *Gonzalez v. Bayer Healthcare Pharm. Inc.*, 930 F.Supp.2d 808, 814 (S.D. Tex. 2013).

It is undisputed that, at all relevant times, Xarelto and its label were FDA-approved. *See* Ex. G, Correspondence from Norman Stockbridge, M.D, Ph.D., U.S. Food and Drug Administration to Janssen Pharmaceuticals, Inc. dated Nov. 4, 2011.  The FDA-approved labeling for Xarelto clearly, prominently, and repeatedly warned of the risk of bleeding—mentioning the term "bleeding" approximately 100 times. *See, e.g.*, Ex. C, Nov. 2011 USPI Highlights of Prescribing Information:  Warnings and Precautions (warning of "serious or fatal bleeding"); *id.* § 5.2 (Warnings and Precautions) (same).  The label specifically warned (1) of the "increase[d] risk of bleeding and [that the medication] can cause serious or fatal bleeding," (2) that "bleeding event rates were higher in . . . older patients," and (3) that "concomitant use of other drugs that affect hemostasis increases the risk of bleeding . . . includ[ing] aspirin . . . , and non-steroidal anti-inflammatory drugs (NSAIDs)."  Similarly, FDA also approved the Xarelto label without a monitoring requirement and FDA specifically added language to the labeling stating "[t]he anticoagulant effect of XARELTO cannot be monitored with standard laboratory testing." *See* Ex. F.

Unless Plaintiff can demonstrate that one of five enumerated statutory exceptions applies, the TPLA requires the Court to deem the Xarelto label adequate as a matter of law.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 82.007(b).  As set forth below, Plaintiff cannot demonstrate that any exception applies to overcome the TPLA's statutory presumption.

    **B.**    **The Fifth Circuit has held the TPLA's "fraud-on-the-FDA" exception preempted as a matter of law unless FDA itself has found fraud.**

The TPLA provides that the presumption of adequacy may be rebutted if "the defendant, before or after pre-market approval or licensing of the product, withheld from or misrepresented to the United States Food and Drug Administration required information that was material and relevant to the performance of the product and was causally related to the claimant's injury." *Id.*

7

§ 82.007(b)(1). The Fifth Circuit held in *Lofton v. McNeil Consumer & Specialty Pharm.*, 672 F.3d 372, 381 (5th Cir. 2012), that this stated exception is preempted as a matter of law under *Buckman v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001), and thus is inapplicable in any case "unless the FDA itself finds fraud." Accordingly, Plaintiff cannot use the TPLA's stated "fraud-on-the-FDA" exception to rebut the presumption here because *Lofton* controls and FDA has not found any fraud.

In holding that federal law preempts the TPLA's "fraud-on-the-FDA" exception, the Fifth Circuit explained that "[in *Buckman*] [t]he Supreme Court was concerned that "disclosures to the FDA, although deemed appropriate by the Administration, will later be judged insufficient in state court," *Lofton*, 672 F.3d at 380 (citing *Buckman*, 531 U.S. at 351), and that state-law attempts to enforce federal law requirements intrude upon the federal government's role in regulating prescription medicines:

> When the FDA has not found fraud, two sorts of interference arise from these claims. First, Section 82.007(b)(1) allows the state court to interject varying views on what disclosures are sufficient. The resulting uncertainty compels manufacturers to flood the FDA with information to ensure that they retain the § 82.007(a)(1) presumption of non-liability. FDA in turn loses control over its ability, based on scientific expertise, to prescribe – and intelligently limit – the scope of disclosures necessary for its work. Second, the statutory requirement of proving fraud-on-the-FDA may directly invade the agency's processes when close questions of "withholding" or "misrepresentation" arise. These dangers are inherent in *Buckman*'s concern to preserve the agency's discretion to police the conduct of regulated entities.

*Id.* at 380. The Fifth Circuit further explained that the "fraud-on-the-FDA" exception in the TPLA clearly runs afoul of *Buckman* because

> [t]he term "required information" [in the statute] refers to federal requirements under the FDCA; what is "material" and "relevant" must be deemed by FDA itself, not by state court juries. This language inevitably relies on FDCA disclosure requirements. Thus, this exception is "premised principally . . . on a drug maker's failure to comply with federal disclosure requirements.

8

*Id.* The court concluded that "the threat of imposing state liability on a drug manufacturer for defrauding the FDA intrudes on the competency of the FDA and its relationship with regulated entities." *Id.* at 379. As a result, the Fifth Circuit held that the exception is preempted as a matter of law.

This Court is bound by the *Lofton* decision and FDA has found no fraud with regard to Xarelto, so Plaintiffs cannot seek refuge in the TPLA's (partially preempted) "fraud-on-the-FDA" exception.[3]

### C. The TPLA's other exceptions do not apply.

Nor can Plaintiff demonstrate that any of the TPLA's other four enumerated exceptions apply to this case. Those exceptions do not apply for straightforward reasons:

- Xarelto was not "sold or prescribed in the United States by the defendant after the effective date of an order of the United States Food and Drug Administration to remove the product from the market or to withdraw its approval of the product." Tex. Civ. Prac. & Rem. Code § 82.007(b)(2).

- Defendants did not "recommend[], promote[], or advertise[]" Xarelto "for an indication not approved by the United States Food and Drug Administration." *Id.* § 82.007(b)(3)(A).

- Defendants are not health care providers that "(A) . . . prescribed the pharmaceutical product for an indication not approved by the United States Food and Drug Administration; (B) the product was used as prescribed; and (C) the claimant's injury was causally related to the prescribed use of the product." *Id.* § 82.007(b)(4).

- Defendants did not "engage[] in conduct that would constitute a violation of 18 U.S.C. Section 201 [relating to bribery of public officials] and that conduct caused the warnings or instructions approved for the product by the United States Food and Drug Administration to be inadequate," *id.* § 82.007(b)(5).

\* \* \*

Accordingly, none of the TPLA's stated exceptions to the presumption of non-liability apply in this case, and Plaintiff cannot overcome that presumption that the Xarelto label is

---

[3] The Court need not reach the preemption issue here because there is no evidence of fraud that is causally related to the injury and would have changed FDA's approval decision.

9

adequate as a matter of Texas law. The Court should grant Defendants summary judgment on Plaintiff's failure-to-warn claim.

### II. Plaintiff cannot prevail on his design-defect claim because Texas law precludes any claim for design defect in a case involving a prescription medicine.

Plaintiff's design-defect claim also fails under Texas law because the TPLA does not allow for such a claim in cases involving prescription medications. The section of the TPLA that governs design-defect claims specifically excludes "a drug or device, as those terms are defined by the federal Food, Drug, and Cosmetic Act (21 U.S.C. Section 21)." Tex. Civ. Prac. & Rem. Code § 82.005(d)(2). Not only are pharmaceutical design-defect claims excluded from the TPLA's general design-defect section, but there is no other provision that expressly authorizes claims for alleged design defect of prescription medicines.

Moreover, Texas courts have adopted comment k to 402A the *Restatement of Torts (Second)*, which provides that a prescription medicine (*i.e.*, an unavoidably unsafe product) that is "properly prepared, and accompanied by proper directions and warning, is not defective, nor is it unreasonably dangerous" as a matter of law. *See Hackett v. G.D. Searle & Co.*, 246 F. Supp. 2d 591, 595 (W.D. Tex. 2002) ("The Court thus holds that under Texas law and comment k of the Restatement, Defendants can only be held strictly liable if the drug was not . . . accompanied by proper warnings."); *Holland v. Hoffman-LaRoche, Inc.*, No. 3:06-CV-1298-BD, 2007 WL 4042757, at *3 (N.D. Tex. Nov. 15, 2007) (same); *Reyes v. Wyeth Labs.*, 498 F.2d 1264, 1274 (5th Cir. 1974) ("[A]n unavoidably unsafe product is neither defective nor unreasonably dangerous if . . . accompanied by proper directions and warning"). Texas courts apply comment k to product-liability claims and have applied it to prescription drug claims. *See, e.g., Reyes*, 498 F.2d at 1273–75 (holding polio vaccine, a prescription drug, to be an unavoidably unsafe product).

As the Court in *Hackett* explained,

> To allow plaintiffs to sue for defective design of prescription drugs would provide a disincentive to companies to develop new drugs and would allow juries to second-guess the FDA's approval of the drugs for marketing. The Court thus holds that under Texas law and comment k of the Restatement, Defendants can only be held strictly liable if the drug was not properly prepared or marketed or accompanied by proper warnings.

*Id.* at 595 (citing *Restatement (Second) of Torts* § 402A cmt. k (1965)); *Reyes,* 498 F.2d at 1274–75).[4]

Because the TPLA does not recognize a design-defect claim in cases involving prescription medicines and because Texas has adopted comment k to section 402A of the *Restatement (Second)*, Plaintiff's design-defect claim fails as a matter of law.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment should be granted.

| | |
|---|---|
| DRINKER BIDDLE & REATH LLP | ARNOLD & PORTER KAYE SCHOLER LLP |
| By: /s/ *Susan M. Sharko* <br> Susan M. Sharko <br> Drinker Biddle & Reath LLP <br> 600 Campus Drive <br> Florham Park, NJ 07932-1047 <br> Telephone: (973) 549-7000 <br> susan.sharko@dbr.com | By: /s/ *William Hoffman* <br> William Hoffman <br> ARNOLD & PORTER KAYE SCHOLER LLP <br> 601 Massachusetts Ave., NW <br> Washington, D.C. 20001 <br> Telephone: (202) 942-5000 <br> william.hoffman@apks.com |

Rodney M. Hudson
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
Telephone: (415) 591-7500
Rodney.hudson@dbr.com

---

[4] Moreover, and in any event, even if this Court were to recognize such a claim, the Texas Supreme Court has held that a plaintiff cannot prove a design defect by claiming that the defendant should have sold an entirely different product. *See Brockett v. Wyeth*, 287 S.W. 3d. 760 (Tex. Ct. App. 2009), (citing *Caterpillar v. Shears*, 911 S.W.2d 379, 384–85 (Tex. 1993)).

Chanda A. Miller
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2500
Chanda.Miller@dbr.com


IRWIN FRITCHIE URQUHART & MOORE LLC

By: /s/ *James B. Irwin*
James B. Irwin
Kim E. Moore
Irwin Fritchie Urquhart & Moore LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
jirwin@irwinllc.com

*Attorneys for Janssen Defendants*

Andrew K. Solow
Steven Glickstein
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8485
andrew.solow@apks.com
steven.glickstein@apks.com


BRADLEY ARANT BOULT CUMMINGS LLP

By: */s/ Lindsey C Boney IV*
Lindsey C Boney IV
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place, 1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8803
lboney@bradley.com

CHAFFE MCCALL L.L.P.
By: /s/ *John F. Olinde*
John F. Olinde
Chaffe McCall L.L.P.
1100 Poydras Street, Suite 2300
New Orleans, LA 70163
Telephone: (504) 585-7241
olinde@chaffe.com

*Attorneys for Bayer Defendants*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 21st of September, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs by operation of the court's electronic filing system and a copy of the proposed documents to be placed under seal sent to Plaintiffs' Liaison Counsel by email transmission.

/s/ *James B. Irwin*