**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

**IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION**

**MDL No. 2592**

**SECTION L**

**THIS DOCUMENT RELATES TO:**

**JUDGE ELDON E. FALLON**

**MAGISTRATE NORTH**

**William Henry v. Janssen Research & Development, LLC f/k/a Johnson & Johnson Pharmaceutical Research and Development, LLC, et al.**
**Case No. 2:15-cv-00224**

**DEFENDANTS' JOINT RESPONSE TO PLAINTIFFS' MOTION TO DISMISS THE *HENRY* CASE**

The Janssen and Bayer defendants submit this joint response to Plaintiffs' motion to dismiss the *Henry* case with prejudice (Rec. Doc. 7816).

1. Defendants will not oppose the Plaintiffs' motion to dismiss with prejudice.

2. Defendants have the right to obtain costs under Fed. R. Civ. P. 54. The Fifth Circuit has ruled that when a plaintiff dismisses a case with prejudice, the defendant is the "prevailing party" and entitled to recover costs. *Schwartz v. Folloder*, 767 F.2d 125, 130-131 (5th Cir. 1985) ("Because a dismissal with prejudice is tantamount to a judgment on the merits, the defendant in this case … is clearly the prevailing party and should ordinarily be entitled to costs.") That justification for costs is particularly compelling here because the dismissal did not come at the outset of the case; instead, plaintiffs dismissed the case only after the expenditure of enormous resources following the completion of case-specific fact and expert discovery and the filing of dispositive motions. However, Defendants will not enforce their right to costs in *Henry*, just as they did not enforce their right to costs in *Boudreaux*, *Orr or Mingo.*

3. Defendants believe that the parties and the Court can learn from the *Henry* experience. It is worth recounting how *Henry* came to be selected as a bellwether case and the effort that went into preparing *Henry* so that the Court can evaluate whether, going forward, there is a better way to determine whether the plaintiff seriously intends to pursue his or her case before imposing similar burdens on the parties and the Court.

a. *Henry* was one of four bellwether cases.

b. The first three bellwether cases -- *Boudreaux*, *Orr* and *Mingo* -- were all selected by the Plaintiffs to be part of the discovery pool.

c. *Henry* was the only defense pick among the four bellwether cases.

d. All three plaintiff selections that went to trial -- *Boudreaux, Orr* and *Mingo* -- resulted in defense verdicts.

e. Plaintiffs dismissed with prejudice the only defense pick among the four bellwethers rather than obtain a disposition on the merits, and then only after expert discovery was completed and dispositive motions were filed.

f. To prepare the *Henry* case, Defendants (1) collected more than 16,000 pages of medical records (plaintiffs produced only 422 pages) , (ii) took and defended six case-specific fact depositions, (iii) retained and obtained reports from four case-specific experts, (iv) took and defended six case-specific expert depositions, (v) filed four summary judgment motions.

g. Plaintiffs never filed an opposition to the summary judgment motions and instead dismissed the case.

4. *Henry* demonstrates the unfairness of placing the burden on the Defendants of weeding out what we believe to be a very large number of plaintiffs who have no intention of

pursuing their lawsuit to a conclusion, whether because the facts or law do not support their claims, there is no viable expert theory to support their claims, or for strategic reasons. Plaintiffs have little incentive to properly investigate and evaluate their claims before filing them, and in the meantime impose very substantial burdens on Defendants and the Court before finally dismissing their lawsuits. Unfortunately, the *Henry* experience is likely to repeat itself in a large number of cases unless measures are taken to assure that the cases in this MDL have been properly investigated and evaluated by plaintiffs' counsel and the Court before they proceed to case-specific discovery and that full disclosures of medical history and facts are made at an early time.

5. At the appropriate time, as the Court engages the parties concerning the future course of the MDL, Defendants will have specific proposals for the Court to consider to minimize the recurrence of what happened in *Henry* and to cull the docket of improvidently filed cases. These proposals will involve identifying fact patterns[1] in cases like *Henry* that are likely to result either in voluntary or involuntary dismissal based on the case specific circumstances, as well as fact patterns in cases that will involve the assertion of novel theories liability not litigated by the PSC or espoused by their experts in the bellwether cases. Once these fact patterns are identified, the parties and the Court can consider whether there is a better way of proceeding that will require individual plaintiffs' counsel to more carefully evaluate whether a particular case will be pursued -- or if the case will be pursued under a novel theory, whether there should be a procedure in the MDL to test that theory -- before forcing the judiciary and Defendants to expend huge resources on that case.

[1] For example but not by way of limitation, plaintiffs who had adverse events while on Coumadin before switching to Xarelto, plaintiffs who could not tolerate the monitoring required for the use of Coumadin, etc.

6. Two of the summary judgment motions filed in *Henry* also were filed in the *Ibanez* case. Both motions involve the defense of federal preemption, one with respect to warnings claims and the other with respect to design claims (Rec. Doc. Nos. 7656 and 7660). As the Court knows, Defendants filed the preemption motions in *Ibanez* in addition to *Henry* so that if *Henry* was dismissed on state law grounds, there still would be a method for Defendants to seek interlocutory appellate review of the preemption issue under 28 U.S.C. 1292(b). In response to Plaintiffs' request for more time, the Court extended Plaintiffs' deadline to file an opposition to the pending summary judgment motions, including any application under Rule 56(d), until November 3, 2017, and also set a telephone status conference on November 14, 2017 to discuss further proceedings with respect to the pending motions. Defendants do not understand the dismissal of *Henry* to affect these court-ordered deadlines as they pertain to the *Ibanez* case.

Respectfully submitted,

DRINKER BIDDLE & REATH LLP

By: /s/ *Susan M. Sharko*
Susan M. Sharko
Drinker Biddle & Reath LLP
600 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
susan.sharko@dbr.com

Rodney M. Hudson
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
Telephone: (415) 591-7500
Rodney.hudson@dbr.com

Chanda A. Miller
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2500
Chanda.Miller@dbr.com

IRWIN FRITCHIE URQUHART & MOORE LLC

By: /s/ *James B. Irwin*
James B. Irwin
Kim E. Moore
Irwin Fritchie Urquhart & Moore LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
jirwin@irwinllc.com

*Attorneys for Janssen Defendants*

ARNOLD & PORTER KAYE SCHOLER LLP

By: /s/ *William Hoffman*
William Hoffman
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
william.hoffman@apks.com

Andrew K. Solow
Steven Glickstein
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8485
andrew.solow@apks.com
steven.glickstein@apks.com

BRADLEY ARANT BOULT CUMMINGS LLP

By: */s/ Lindsey C Boney IV*
Lindsey C Boney IV
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place, 1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8803
lboney@bradley.com

CHAFFE MCCALL L.L.P.

By: /s/ *John F. Olinde*
John F. Olinde
Chaffe McCall L.L.P.
1100 Poydras Street, Suite 2300
New Orleans, LA 70163
Telephone: (504) 585-7241
olinde@chaffe.com

*Attorneys for Bayer Defendants*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 24th day of October, 2017, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs by operation of the court's electronic filing system.

*/s/ John F. Olinde*