Patrick J. Mulligan, TX SBN 14651270
Charles G. Orr, TX SBN 00788148
**THE MULLIGAN LAW FIRM**
3710 Rawlins Street, #901
Dallas, TX  75219
Telephone: (214) 219-9779
Facsimile: (214) 520-8789

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | ) MDL No. 2592 ) ) SECTION:  L ) JUDGE FALLON ) MAG. JUDGE NORTH ) |
| THIS DOCUMENT RELATES TO: *Dorothy Ramirez, Individually and on Behalf of Maurice Ramirez v. Janssen Research & Development LLC, et al.*, No. 2:16-cv-12885 | ) ) **DECLARATION OF CHARLES G. ORR IN** ) **SUPPORT OF RESPONSE TO SHOW CAUSE** ) **ORDER REGARDING PLAINTIFFS WITH** ) **ALLEGED CORE PLAINTIFF FACT SHEET** ) **DEFICIENCIES** ) |

I, Charles G. Orr, declare as follows:

     1.     I am an attorney at law with The Mulligan Law Firm (MLF), duly licensed to

practice law in the State of Texas.  I represent Plaintiff Dorothy Ramirez, Individually and on

Behalf of the Estate of Maurice Ramirez, in the above-styled and numbered case.  I make this

Declaration in support of Plaintiff Ramirez's Response to Show Cause Order Regarding

Plaintiffs With Alleged Core Fact Sheet Deficiencies.  The matters set forth in this Declaration

are of my own personal knowledge and if called upon to do so, I could and would competently

testify thereto.

**ORR DECL ISO RESPONSE TO SHOW CAUSE ORDER**                                              **Page 1 of 2**

2.      Attached to this Declaration as Exhibit A is a true and correct copy of the realtime unedited transcript of the show cause hearing held in this MDL proceeding on June 28, 2017.  I personally highlighted the portions of the transcript that pertain to the show cause response that this Declaration supports.  I also attempted to obtain an official transcript of the proceedings but was advised that no such transcript exists as of this time.

3.      Defendants now claim that Mr. Ramirez's PFS is fatally deficient because the Rite Aid records, which were uploaded shortly after the June 28 hearing, do not contain Xarelto product ID but do contain product ID for Warfarin, a different anti-coagulant.   When the Ramirez case showed up on Defendants' October 9, 2017 motion for a show cause order [Docket # 7722-2, no. 68], I emailed Chandra Miller, the lawyer who spoke for Defendants at the June 28 show cause conference, to ask that Mr. Ramirez be removed from the show cause request, citing the June 28 transcript.  Ms. Miller's response indicated that the more recent show cause request was based on a new deficiency, specifically, that the Rite Aid records uploaded shortly after the June 28 show cause hearing show Warfarin use, not Xarelto use.  I wrote back to indicate that the Rite Aid prescription records don't show any Warfarin prescriptions being filled for Mr. Ramirez after August 2014, while his brain bleed was on February 24, 2015, six months after the last Warfarin prescription.  Defendants nonetheless refused to remove Mr. Ramirez's case from their show cause request.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Signed this 2nd day of November, 2017.

_____
Charles G. Orr

# EXHIBIT A

REALTIME UNEDITED DRAFT

1

2

3

4        *This transcript is being delivered unedited and*

5   *uncertified.  It has not been edited, proofread, or corrected.*

6   *It is a draft transcript and not certified to be true.  It may*

7   *contain computer-generated mistranslations of stenotype code or*

8   *electronic transmission errors, resulting in inaccurate or*

9   *nonsensical word combinations, or untranslated stenotype code*

10  *symbols which cannot be deciphered by nonstenotypists.*

11       *The realtime unedited transcript shall not be relied*

12  *upon for purposes of verbatim citation of the record or used*

13  *for any purpose that requires a certified transcript of a*

14  *proceeding.*

15                              * * *

16

17

18

19

20

21

22

23

24

25

REALTIME UNEDITED DRAFT

| | |
|---|---|
| 09 15 | 1 |
| 09 15 | 2 |
| 09 15 | 3 |
| 09 15 | 4 |
| 09 15 | 5 |
| 09 17 | 6 |
| 09 35 | 7 |
| 09 35 | 8 |
| 09 35 | 9 |
| 09 35 | 10 |
| 09 35 | 11 |
| 09 35 | 12 |
| 09 35 | 13 |
| 09 35 | 14 |
| 09 35 | 15 |
| 09 35 | 16 |
| 09 35 | 17 |
| 09 35 | 18 |
| 09 35 | 19 |
| 09 35 | 20 |
| 09 35 | 21 |
| 09 35 | 22 |
| 09 35 | 23 |
| 09 35 | 24 |
| 09 35 | 25 |

**<u>PROCEEDINGS</u>**

**(June 28, 2017)**

**\*\*\*\*\*\***

(COURT CALLED TO ORDER)

**THE COURT:**  Counsel, make their appearance for the record.

**MS. MILLER:**  Good morning.  Chanda Miller for defendants.

**MS. DANIEL:**  Good morning, Your Honor.  Sindhu Daniel for the plaintiffs.

**THE COURT:**  We're here for a number of rules for show caution for why the Maries should not be dismissed for failure to participate in discovery.  I'll take them in the order that you present them.

**MS. DANIEL:**  Thank you, Your Honor many the first document is document 6602.  Your Honor, there's only one case listed on that order, and it is -- on that document is Frankie Favis.  Counsel is here to dress the Court.

**MR. DAVIS:**  Good morning, Your Honor.  Leonard Davis from the law firm of Herman, Herman, Katz.  We have filed in the court record, Rec Doc 6136, which lays out a -- quite a number of efforts to communicate with claimants, and, in fact, communications that we had with claimants.  I happened to be here, so I decided that it was appropriate to address Your

UNOFFICIAL REALTIME TRANSCRIPT

REALTIME UNEDITED DRAFT

1   Honor, which I'm doing, just so the Court is aware of a number

2   of efforts and attempts to deal with the heirs of the Favis

3   claimant, and I wanted to bring that to your attention.

4        **THE COURT:**  I could see that counsel has gone above

5   and beyond both his professional as well as his ethical duties

6   in trying to reach the client in this particular case.  As I've

7   said several times, the client has the responsibility to keep

8   in touch with their lawyers.  Now, I understand problems can

9   come up, but this is not the first time that we've gone over

10  this case.

11            How many times has this case been up?

12        **MS. MILLER:**  Your Honor, this is at least the second

13  time the case has been up of the PSF has now been due for over

14  17 months.  Mr. Davis last time also outlined numerous efforts

15  that his firm has ahead no contact the heirs and get the

16  relative information for the plaintiff fact sheet.

17        **THE COURT:**  I don't know where we can go with it.  So

18  I'm going to dismiss it with prejudice.

19        **MS. MILLER:**  Thank you, Your Honor.

20        **MS. DANIEL:**  Thank you, Your Honor.  The next case is

21  document 6606, there's also only one case listed on this

22  document.  It is Fidel Zabala Estrada.  As a reminder, Your

23  Honor, this client was previously pro se, and she is

24  representing the estate of her father.  Her father may have

25  been treated in Puerto Rico, so she has just retained new

REALTIME UNEDITED DRAFT

| | | |
|---|---|---|
| 09 37 | 1 | counsel of Morgan and Morgan, and they would like enough time |
| 09 37 | 2 | until the next hearing to interview this client in person and |
| 09 37 | 3 | get additional medical records. |
| 09 37 | 4 | **THE COURT:**  Okay.  I'll grant that request and we'll |
| 09 37 | 5 | pass it at this time. |
| 09 37 | 6 | **MS. MILLER:**  Your Honor, that's fine with defendants. |
| 09 37 | 7 | I just wanted to note for the record that at this point there's |
| 09 37 | 8 | no plaintiff fact sheet at all and it's 19 months overdue. |
| 09 38 | 9 | **THE COURT:**  Tell counsel that if at the don't have |
| 09 38 | 10 | all of the material just answer what they can answer, and then |
| 09 38 | 11 | he can supplement it.  But we've got to get something from |
| 09 38 | 12 | them. |
| 09 38 | 13 | **MS. DANIEL:**  I will let them know.  Thank you, Your |
| 09 38 | 14 | Honor. |
| 09 38 | 15 | **THE COURT:**  Thank you. |
| 09 38 | 16 | **MS. DANIEL:**  The next document is 6617.  In this |
| 09 38 | 17 | there are five cases listed, Your Honor.  The first one is -- |
| 09 38 | 18 | and I won't spell anything for the district court, but I will |
| 09 38 | 19 | just state the names for the record -- Tony Ray Barton.  We'll |
| 09 38 | 20 | agree to a stipulation of the dismissal with prejudice. |
| 09 38 | 21 | Bobby Brown is a pro se client.  Mr. or |
| 09 38 | 22 | Ms. Brown, are you on the line? |
| 09 38 | 23 | **THE COURT:**  Hello, Mr. Brown? |
| 09 38 | 24 | **MS. DANIEL:**  No one's on the line, Your Honor. |
| 09 38 | 25 | **MS. MILLER:**  Your Honor, just for background on |

REALTIME UNEDITED DRAFT

09 38    1   Mr. Brown's case, it's No. 16-4628.  The complaint was filed in
09 38    2   August of 2016.  The plaintiff fact sheet was due in December
09 39    3   of 2016, and a notice was sent in December of 2016.  We did
09 39    4   send him certified mail notifying him of today's show cause
09 39    5   hearing so that he knew he needed to appear in person or on the
09 39    6   phone to address the issues.
09 39    7         **THE COURT:**  Is this the first time that this person
09 39    8   has been --
09 39    9         **MS. MILLER:**  No, Your Honor.  The motion was first
09 39   10   filed in April and it was heard this April and given an
09 39   11   extension until today.
09 39   12         **THE COURT:**  I'll dismiss it with prejudice.
09 39   13         **MS. DANIEL:**  Thank you, Your Honor.
09 39   14          The next case, Opal Thurman.  The firm filed a
09 39   15   motion to dismiss without prejudice because they did not have
09 39   16   consent from the client to dismiss with prejudice.
09 39   17         **THE COURT:**  I'm familiar with the case, and with the
09 39   18   attempts made by the law firm.  They've done everything they
09 39   19   can to try to reach the person, to communicate with the person,
09 39   20   and notwithstanding their Herculean efforts, they've gotten no
09 40   21   response.  So I'm going to dismiss it with prejudice at this
09 40   22   time.
09 40   23         **MS. DANIEL:**  The last two on the document are Leona
09 40   24   Johnson and Diane White, and they have both been cured.
09 40   25         **MS. MILLER:**  For the record, the case number for

REALTIME UNEDITED DRAFT

| | |
|---|---|
| 09 40 | 1 |
| 09 40 | 2 |
| 09 40 | 3 |
| 09 40 | 4 |
| 09 40 | 5 |
| 09 40 | 6 |
| 09 40 | 7 |
| 09 40 | 8 |
| 09 40 | 9 |
| 09 40 | 10 |
| 09 40 | 11 |
| 09 40 | 12 |
| 09 41 | 13 |
| 09 41 | 14 |
| 09 41 | 15 |
| 09 41 | 16 |
| 09 41 | 17 |
| 09 41 | 18 |
| 09 41 | 19 |
| 09 41 | 20 |
| 09 41 | 21 |
| 09 41 | 22 |
| 09 41 | 23 |
| 09 41 | 24 |
| 09 41 | 25 |

Thurman is 16-19659, and the case number for Ms. White is 16-15917.  They're both coming off of this list because they have served plaintiff fact sheets; but, for the record, I just wanted to make clear that those fact sheets are deficient.  So they'll be going through the deficiency process right now.

THE COURT:  So the matter is moot then because they have participated.

MS. DANIEL:  Thank you, your Honor.  The next document is 6619.  For the first three cases, Eleanor Dixon, Jeffrey Sircy, and Vernon Rice.  The firm filed a response to those cases and they're requesting dismissal without prejudice because they have not heard from the clients and do not have permission to dismiss with prejudice.

THE COURT:  I'll overrule their motion and dismiss it with prejudice, one, two, and three, that's Dixon, Hemann and Hooks.

MS. DANIEL:  Dixon, Sircy and Rice, Your Honor.

MS. MILLER:  Sircy is case No. 16-15842; Rice is case No. 16-16021; and Dixon is case No. 16-15350.

THE COURT:  Okay.

MS. DANIEL:  The next case Terrence Hooks.  The client has not responded, and the firm does not have permission to stipulate to a dismissal, but also has no basis to oppose a dismissal with prejudice.

THE COURT:  Okay.  Dismissed with prejudice.

REALTIME UNEDITED DRAFT

| | | |
|---|---|---|
| 09 41 | 1 | **MS. DANIEL:**  Mary Joe Hemann, the last case on this |
| 09 41 | 2 | order, is cured. |
| 09 41 | 3 | **MS. MILLER:**  It's coming -- to be clear, for |
| 09 41 | 4 | Ms. Hemann -- the Case No. is 16-15208 -- the plaintiff fact |
| 09 41 | 5 | sheet has been served.  The fact sheet is deficient, so it's |
| 09 42 | 6 | being moved over to the -- |
| 09 42 | 7 | **THE COURT:**  So this matter has been mooted and, |
| 09 42 | 8 | therefore, still alive.  Okay. |
| 09 42 | 9 | **MS. DANIEL:**  The next document, Your Honor, is |
| 09 42 | 10 | Document 6610.  For Linda Albright and Anne Chadwick, despite |
| 09 42 | 11 | their best efforts and attempts, the client has not responded, |
| 09 42 | 12 | and the firm does not have permission to dismiss with |
| 09 42 | 13 | prejudice, but has no basis to oppose a dismissal with |
| 09 42 | 14 | prejudice. |
| 09 42 | 15 | **THE COURT:**  I'll dismiss it with prejudice. |
| 09 42 | 16 | **MS. MILLER:**  For the record, Your Honor, that's |
| 09 42 | 17 | 16-17731; and Anne Chadwick with case No. 16-13851. |
| 09 42 | 18 | **THE COURT:**  Okay. |
| 09 42 | 19 | **MS. DANIEL:**  The next four cases, Your Honor, Thelma |
| 09 42 | 20 | Beemen, William Mcardle, Moses Pitts and Mary Pope, these |
| 09 42 | 21 | actually, Your Honor, we discussed at the last hearing. |
| 09 43 | 22 | All four of these cases, the only deficiency is |
| 09 43 | 23 | a failure to provide documentation supporting the authority of |
| 09 43 | 24 | Xarelto user's representative to sign declaration on behalf of |
| 09 43 | 25 | the user.  During the last hearing, Your Honor, which I brought |

REALTIME UNEDITED DRAFT

09 43   1   a copy of the transcript, you did state that that was not a
09 43   2   deficiency at this juncture and is not something that would
09 43   3   require a dismissal or even warrant an order to show cause.
09 43   4   That is the only deficiency.  The defendant is asking for proof
09 43   5   of authority.
09 43   6        MS. MILLER:  I think, Your Honor, not all four of
09 43   7   these were addressed at the last hearing.  At the March hearing
09 43   8   we addressed this issue and the Court had stated at that time
09 43   9   that one of the -- as you have repeatedly stated, Your Honor,
09 43   10  that one of the important factors of the plaintiff fact sheet
09 43   11  is the signed declaration.  Because the plaintiff fact sheet
09 43   12  serves in lieu of the interrogatory.
09 43   13       Of course, interrogatories are verified; the
09 44   14  plaintiff fact sheet is verified by the declaration.  When the
09 44   15  declaration is just signed by someone who has no connection to
09 44   16  the pleadings that have been filed in the case, we have no way
09 44   17  of knowing if this declaration is valid and actually serves its
09 44   18  purpose.
09 44   19       And so the plaintiff fact sheet does ask for
09 44   20  information about whether someone is serving in a
09 44   21  representative capacity; and if they are, it asks that those
09 44   22  documents be produced so that we can confirm the validity of
09 44   23  the declaration.  And without the ability to confirm that, we
09 44   24  simply can't confirm the entirety of the plaintiff fact sheet
09 44   25  is valid.

REALTIME UNEDITED DRAFT

1  **THE COURT:**  How do we solve that problem?

2  **MS. DANIEL:**  Your Honor, the declaration itself

3  states -- I mean, these people are signing this declaration

4  stating that they have authority and they are the person who

5  has authority in this matter; and if they do not, then it's the

6  firms -- these are all people who are represented by law firms

7  and it is the attorney's duty, and they will abide by their

8  ethical duties and obligations.

9       But it was certainly not something that should

10  be brought up on an order to show cause and cases should be

11  dismissed at this juncture.  Certainly, if it's brought up for

12  trial or bellwether, we can address it, and it was in the April

13  transcript.  (CCK)

14  **THE COURT:**  It may well be something that can be

15  brought up in a summary judgment motion.

16  **MS. MILLER:**  I think one thing the defendants are

17  willing to do is pass this to the next hearing while the

18  attorneys identify and locate the appropriate documentation.

19  They don't need to be dismissed today.  We're willing to hold

20  them over.

21  **MR. DAVIS:**  Your Honor, in the negotiation of the

22  fact sheet, there was nothing that was negotiated specific for

23  that production of those documents.  But this seems more like a

24  testing of the sufficiency of the fact sheet as opposed to

25  something that ought to be brought up in a dismissal.

REALTIME UNEDITED DRAFT

09 45  1              And these are testing sufficiency of cases that

09 45  2  aren't even set for trial, and I think it would be extreme for

09 46  3  the Court --

09 46  4         THE COURT:  Yes.  I don't want to dismiss the case.

09 46  5  I just want to see how we can deal with this thing.

09 46  6         THE DEPUTY CLERK:  What exactly do you need?

09 46  7         MS. MILLER:  We need some documentation demonstrating

09 46  8  it's next of kin or a representative of the estate.  I think

09 46  9  we've seen affidavits, actual letters from the probate

09 46  10  appointing the administrator of the estate.  There are various

09 46  11  forms they can take.

09 46  12         MS. DANIEL:  Your Honor, I think that is, quite

09 46  13  frankly, medical record providers with a HIPAA obligation are

09 46  14  only requiring a death certificate and with a spouse or

09 46  15  somebody listed and sometimes a next of kin affidavit letter.

09 46  16  So asking people -- because, as Your Honor knows, some of these

09 46  17  letters of administration are $3,000 to $35,000, and that's a

09 46  18  great expense for plaintiffs firms to take.

09 47  19              Additionally, it can take up to a year to get

09 47  20  these letters, depending on which court you're in and the

09 47  21  severity of the situation and how many heirs there are.

09 47  22         THE COURT:  Let's do it this way:  I think you're

09 47  23  going to have a right to have that.  But at this stage, I don't

09 47  24  want to dismiss it for failure to do that.  But let's segregate

09 47  25  these cases and let's take another look at those particular

REALTIME UNEDITED DRAFT

09 47   1   cases because there may be more as we go on and then we'll
09 47   2   devise a method to get those in some form or fashion for you,.
09 47   3         MS. MILLER:  That sounds fine, Your Honor.  In most
09 47   4   of these cases, we have nothing, not even the documentation
09 47   5   that are given to the medical providers, even that
09 47   6   documentation would be something for us to look at.
09 47   7         THE COURT:  Yeah.  Let's get those cases together,
09 47   8   and meet and confer, and see what you have, and what you have,
09 47   9   and what you can get.  And if you need additional things, I'll
09 47  10   focus on those particular things with you.
09 47  11         MS. MILLER:  Thank you, Your Honor.
09 47  12         MS. DANIEL:  We can certainly get death certificates
09 47  13   on all of these because all of these attorneys are working
09 48  14   with -- are getting probate documents.
09 48  15             So the next case is Ruth Hodge, and that case
09 48  16   has been cured.
09 48  17         MS. MILLER:  For the record, that's 16-15732.
09 48  18         MS. DANIEL:  And the final case on this document is
09 48  19   Lionel Koon, Your Honor.  And this firm is asking for
09 48  20   additional time because they are working to open the estate in
09 48  21   order to get the additional records that are necessary.
09 48  22         THE COURT:  Okay.  I'll pass that.
09 48  23         MS. DANIEL:  The next document is Document 6611, and
09 48  24   the following cases have been cured:  Linda McConnico; Angela
09 48  25   Abbey; Regina Jones; Claud McGee; Peggy Payne Grindstaff;

REALTIME UNEDITED DRAFT

| | | |
|---|---|---|
| 09 48 | 1 | Mallie Roberts; Kristina Stubbs, and Danny Thacker. |
| 09 48 | 2 | The next client, Vera McVay, she is a pro se |
| 09 48 | 3 | client, Your Honor, and, for the record, this pro se client did |
| 09 48 | 4 | reach out to the defendant, and then we, in fact, our office, |
| 09 49 | 5 | spoke to the client.  She is aware of her obligation to be on |
| 09 49 | 6 | the call today. |
| 09 49 | 7 | Ms. McVay, are you on the line? |
| 09 49 | 8 | We also attempted to call her back after we |
| 09 49 | 9 | spoke to her.  It's our understanding she certainly appreciated |
| 09 49 | 10 | what was said to her on the phone. |
| 09 49 | 11 | **MS. MILLER:**  Your Honor, this is a case where the |
| 09 49 | 12 | plaintiff fact sheet is overdue by five months.  It was because |
| 09 49 | 13 | of the withdrawal of counsel it had been set for the hearing. |
| 09 49 | 14 | The pro se plaintiff did not receive specific notice of the |
| 09 49 | 15 | April hearing, so we passed it until today.  She did receive |
| 09 49 | 16 | notice of today, but this is the first hearing she has had |
| 09 49 | 17 | notice of. |
| 09 49 | 18 | **THE COURT:**  What do you suggest, we pass this? |
| 09 49 | 19 | **MS. DANIEL:**  I think, Your Honor, she's aware of the |
| 09 49 | 20 | situation.  She definitely spoke to her personally, so I think |
| 09 49 | 21 | she's aware. |
| 09 49 | 22 | **THE COURT:**  Let's dismiss it. |
| 09 49 | 23 | **MS. MILLER:**  Okay. |
| 09 49 | 24 | **MS. DANIEL:**  Thank you, Your Honor. |
| 09 49 | 25 | Rita Ortiz is also a pro se client. |

REALTIME UNEDITED DRAFT

09 50   1          Ms. Ortiz, are you on the line?

09 50   2          She did not reach out to anyone.

09 50   3      **MS. MILLER:**  Your Honor, Ms. Ortiz's motion for order

09 50   4  to show cause was first filed in January of '17.  We don't have

09 50   5  medical record, authorizations.  We don't have a declaration.

09 50   6  She was given notice of the April hearing, did not appear, so

09 50   7  we passed it to today.

09 50   8      **THE COURT:**  I'll dismiss this one too.

09 50   9          In these cases, oftentimes, someone thinks

09 50   10 they're taking the medication, they're not sure, so they file a

09 50   11 claim, but when it gets down to proving that they took the

09 50   12 medication, sometimes it becomes difficult.

09 50   13     **MR. DAVIS:**  Your Honor, just so the record's clear,

09 50   14 we would object to a dismissal with prejudice.

09 50   15     **THE COURT:**  Yes, I understand, and I'll overrule the

09 50   16 objection.

09 50   17         Just for the record, the plaintiffs' committee

09 50   18 has objected to all of those that I've dismissed with

09 50   19 prejudice.  They feel that it's better to dismiss it without

09 50   20 prejudice, and they're very argumentative in that area.

09 51   21     **MS. DANIEL:**  Thank you, Your Honor.

09 51   22         On the following cases, the firms have tried to

09 51   23 remedy the case, but despite their best efforts have been

09 51   24 unable to resolve the deficiencies:  Linda Jones; Cathy Lomboy;

09 51   25 Wanda McDaniel, Renee Smith, and Tammie Thigpen.

REALTIME UNEDITED DRAFT

09 51   1          The next cases.

09 51   2          MS. MILLER:  So does that mean that they're agreeing

09 51   3   to take dismissal with prejudice?

09 51   4          MS. DANIEL:  They aren't agreeing, but I'm sure

09 51   5   that's what the Court is going to do.

09 51   6          MS. MILLER:  Would Your Honor like background

09 51   7   information on those cases?

09 51   8          THE COURT:  I'm sorry?

09 51   9          MS. MILLER:  Would you like some more background

09 51  10   information?

09 51  11          The first one is Linda Jones, 16-18774.  The

09 51  12   plaintiff fact sheet has been deficient for six months for

09 51  13   failure to provide medical records and failure to provide

09 51  14   records that demonstrate the plaintiff used Xarelto.  They have

09 51  15   been given extensions in March and in April and have not been

09 52  16   able to find that information.

09 52  17          THE COURT:  I'll dismiss with prejudice.

09 52  18          MS. MILLER:  The next case is Cathy Lomboy, 16-13715.

09 52  19   The deficiency has been on the record for seven months.  We're

09 52  20   still waiting for a declaration to demonstrate that the

09 52  21   information in the plaintiff fact sheet is valid.  In April the

09 52  22   plaintiff received a 30-day extension and still has not been

09 52  23   able to obtain that information from the client.

09 52  24          THE COURT:  Dismiss that one with prejudice.

09 52  25          MS. MILLER:  Okay.  Wanda McDaniel is Case No.

REALTIME UNEDITED DRAFT

| | | |
|---|---|---|
| 09 52 | 1 | 16-7318.  Again, we've been waiting for a declaration.  That |
| 09 52 | 2 | one, we've been waiting for nine months.  In April the |
| 09 52 | 3 | plaintiff's counsel requested and received a 30-day extension. |
| 09 52 | 4 | It's now been 60 days and they've not been able to obtain a |
| 09 53 | 5 | declaration from their client. |
| 09 53 | 6 | THE COURT:  We'll dismiss that one with prejudice. |
| 09 53 | 7 | Dismissed. |
| 09 53 | 8 | MS. MILLER:  Renee Smith, 16-10116.  We're waiting -- |
| 09 53 | 9 | we've been waiting for seven months for medical records, |
| 09 53 | 10 | records demonstrating the plaintiff used Xarelto, and a signed |
| 09 53 | 11 | declaration.  This case was originally set for March.  It was |
| 09 53 | 12 | not heard in March because of timing.  Then was heard in April |
| 09 53 | 13 | and they received a 30-day extension.  It's now been 60 days |
| 09 53 | 14 | since April.  They've been unable to obtain any of the three |
| 09 53 | 15 | required requirements. |
| 09 53 | 16 | THE COURT:  Dismiss that one with prejudice. |
| 09 53 | 17 | MS. MILLER:  And Tammie Thigpen is the last in this |
| 09 53 | 18 | group, is Case No. 16-1017.  The first deficiency notice was |
| 09 53 | 19 | sent six months ago.  We're waiting for proof that she used |
| 09 53 | 20 | Xarelto.  A 30-day extension was granted in May and in April, |
| 09 54 | 21 | and at this point, we think a dismissal with prejudice is |
| 09 54 | 22 | warranted. |
| 09 54 | 23 | THE COURT:  Dismiss that one with prejudice. |
| 09 54 | 24 | MS. DANIEL:  Thank you, Your Honor. |
| 09 54 | 25 | The next case is Constance Kokernak.  There may |

REALTIME UNEDITED DRAFT

09 54   1   be someone here from the Driscoll firm on the phone.  I think

09 54   2   this is cured.  I think that the defendant -- I saw an e-mail

09 54   3   that on June 8th the case was cured, but then yesterday I saw

09 54   4   another e-mail saying that you all did not agree saying it was

09 54   5   cured.  Shall we pass it?

09 54   6        **MS. MILLER:**  The medical records, there's a

09 54   7   discrepancy between the injuries in the medical records and the

09 54   8   injuries in the plaintiff fact sheet.  The plaintiff fact sheet

09 54   9   alleges the injury was passes out due blood loss.  The medical

09 54   10   records indicate there might have been anemia, but it doesn't

09 54   11   match up with the plaintiff fact sheet.  So we've asked the

09 54   12   firm to go back and look.  Passing it for 30 days is fine.

09 55   13        **MR. JACKSTADT:**  Good morning, Your Honor.  Eric -- we

09 55   14   have an amended -- showing a bleeding injury during taking

09 55   15   Xarelto -- original of 712.

09 55   16        **THE COURT:**  Wait.  Would you get a little closer to

09 55   17   the microphone or to the phone?

09 55   18        **MR. JACKSTADT:**  Can you hear me better now, sir?

09 55   19        We have obtained two dates of hospitalizations

09 55   20   and diagnosis of bleeding injuries that occurred after the

09 55   21   Xarelto use is documented.

09 55   22        **MS. MILLER:**  And those -- I'm sorry, I'm looking at

09 55   23   my notes here, those core changes in the plaintiff fact sheet

09 55   24   have not been verified by a signed declaration.

09 55   25        **MR. JACKSTADT:**  That is correct.  We ask for 30 days

REALTIME UNEDITED DRAFT

| | | |
|---|---|---|
| 09 55 | 1 | to get the amended declaration. |
| 09 55 | 2 | THE COURT:  I'll grant that. |
| 09 56 | 3 | MS. DANIEL:  Thank you, Your Honor. |
| 09 56 | 4 | The next case is Cynthia Orgeron.  That is a |
| 09 56 | 5 | another case where it's failure to provide authority to sign |
| 09 56 | 6 | the fact sheet for a death case.  So we would ask that, I |
| 09 56 | 7 | guess, it's the same situation that we brought up in the other |
| 09 56 | 8 | cases where the defendant is asking for something that we don't |
| 09 56 | 9 | think is necessary at this juncture. |
| 09 56 | 10 | MS. MILLER:  As we agreed, we'll meet and confer to |
| 09 56 | 11 | resolve those issues. |
| 09 56 | 12 | THE COURT:  I'll pass that one. |
| 09 56 | 13 | MS. DANIEL:  The next three cases are all with the |
| 09 56 | 14 | Mulligan firm. |
| 09 56 | 15 | Chip Orr, are you on the line to discuss |
| 09 56 | 16 | Jacqueline Anconetani, Carl Norris and Carol Sixberry? |
| 09 56 | 17 | MR. ORR:  I am. |
| 09 56 | 18 | MS. DANIEL:  Go ahead, Chip. |
| 09 56 | 19 | MR. ORR:  Good morning, Your Honor.  Charles Orr with |
| 09 56 | 20 | the Mulligan law firm.  Jacqueline Anconetani has agreed to |
| 09 56 | 21 | dismiss her case with prejudice. |
| 09 56 | 22 | THE COURT:  Okay.  Let it be dismissed then. |
| 09 56 | 23 | MR. ORR:  The other two I believe were Norris and |
| 09 57 | 24 | Sixberry.  With those claimants, Your Honor, we have attempted |
| 09 57 | 25 | to find them, and we just have not been successful.  We do not |

REALTIME UNEDITED DRAFT

1     have authority to dismiss with prejudice, but we don't have

2     grounds to oppose.

3        THE COURT:  I know that you all have tried many

4     times, and you've exerted yourself to do that, spent money to

5     do it.  Notwithstanding your efforts, they have failed to get

6     in contact with you, so I'll dismiss them with prejudice.

7        MS. DANIEL:  Thank you, Your Honor.

8        MS. MILLER:  Thank you, Your Honor.

9        MS. DANIEL:  The next document, 6623.  The following

10    19 cases have been cured:  Thomas Adams; Don Blackmon; Arthur

11    Burroughs; Mary Conley; Ronald Cuahonte; Henry Darna; Linda

12    Dickey; Marilyn Edwards; Emma January; Ira Johnson; Silas

13    McDowell; John Meer; Antonia Norris; Robert Odle; Annmarie

14    Pascoe; Betty Sanders; Shanna Smith; Helen Suddreth; Anisia

15    Whiting.

16          The next two cases --

17        MS. MILLER:  I'm sorry, if I could just go to Thomas

18    Adams.  Defendants don't have information that that case has

19    been cured, 16-1668.  So we would like 30 days to review the

20    case to determine whether it has, in fact, been cured, and that

21    case is 16-1668.

22        THE COURT:  We'll pass those two for 30 days, but

23    with regard to the other ones --

24        MS. MILLER:  The second case is Mary Conley, 16-9425.

25        THE COURT:  The other cases were mooted, and it's

REALTIME UNEDITED DRAFT

| | | |
|---|---|---|
| 09 58 | 1 | been taken care of. |
| 09 59 | 2 | MS. MILLER:  Thank you, Your Honor. |
| 09 59 | 3 | MS. DANIEL:  Thank you, Your Honor. |
| 09 59 | 4 | The next two cases have already been dismissed |
| 09 59 | 5 | with the prejudice:  Roy Anderson and Frederick Hoover. |
| 09 59 | 6 | On the following cases, the firms have tried to |
| 09 59 | 7 | remedy the cases, but despite their best efforts, have been |
| 09 59 | 8 | unable to resolve the deficiencies:  Laura Banks; Charles |
| 09 59 | 9 | Debord; Barbara Jankowski; Gloria McSwain; Carol Shoff; Lillian |
| 09 59 | 10 | Mae Wiles. |
| 09 59 | 11 | MS. MILLER:  Would Your Honor like information on |
| 09 59 | 12 | those cases? |
| 09 59 | 13 | The first case is Laura Banks, Case No. 15-3812. |
| 09 59 | 14 | The deficiency has been outstanding for 18 months now.  One of |
| 09 59 | 15 | the last things we're waiting for is a signed declaration and |
| 09 59 | 16 | the finishing of the information of the first section of the |
| 09 59 | 17 | plaintiff fact sheet. |
| 09 59 | 18 | THE COURT:  Dismissed with prejudice. |
| 09 59 | 19 | MS. MILLER:  The next case, Charles Debord, Case |
| 09 59 | 20 | No. 16-13510.  That deficiency has been outstanding for seven |
| 10 00 | 21 | months.  We are waiting for three things:  First is medical |
| 10 00 | 22 | records demonstrating injury; second is some type of record |
| 10 00 | 23 | demonstrating plaintiff used Xarelto; and the third is a signed |
| 10 00 | 24 | declaration.  This case was heard in March and given an |
| 10 00 | 25 | extension; heard in April and given an extension.  It has been |

REALTIME UNEDITED DRAFT

| | | |
|---|---|---|
| 10 00 | 1 | seven months since they first received notice of deficiency. |
| 10 00 | 2 | THE COURT:  Dismissed with prejudice. |
| 10 00 | 3 | MS. MILLER:  Thank you, Your Honor. |
| 10 00 | 4 | The next case, Barbara Jankowski is Case |
| 10 00 | 5 | No. 16-2099.  The deficiency has been outstanding for seven |
| 10 00 | 6 | months.  We are currently waiting for a declaration from the |
| 10 00 | 7 | plaintiff.  Plaintiffs' counsel received an extension in March |
| 10 00 | 8 | and in April, and is unable to obtain it. |
| 10 00 | 9 | THE COURT:  Dismissed with prejudice. |
| 10 01 | 10 | MS. MERTZ:  This is Samantha Mertz on behalf of |
| 10 01 | 11 | Barbara Jankowski.  I just wanted, for the record, to state |
| 10 01 | 12 | that we've been trying to contact this client since October of |
| 10 01 | 13 | 2016.  She's been unresponsive.  All known phone numbers and |
| 10 01 | 14 | e-mails are disconnected.  We sent a process server to her last |
| 10 01 | 15 | known address and she's no longer there. |
| 10 01 | 16 | THE COURT:  I recognize that, the good work that your |
| 10 01 | 17 | firm has been doing to try to reach her.  You spent money on |
| 10 01 | 18 | it.  It's just not appropriate for a client to hire a lawyer |
| 10 01 | 19 | and then just disappear.  If they want to participate, they |
| 10 01 | 20 | have to participate actively in the case, and they can't give |
| 10 01 | 21 | the lawyer that trouble and that problem. |
| 10 01 | 22 | So you've done a good job in trying to reach |
| 10 01 | 23 | them.  Notwithstanding your efforts, you've been unable to |
| 10 01 | 24 | reach them, so I take that as an indication that the party |
| 10 01 | 25 | doesn't wish to proceed with the case, and I'll grant their |

REALTIME UNEDITED DRAFT

| | |
|---|---|
| 10 01 | 1 |
| 10 02 | 2 |
| 10 02 | 3 |
| 10 02 | 4 |
| 10 02 | 5 |
| 10 02 | 6 |
| 10 02 | 7 |
| 10 02 | 8 |
| 10 02 | 9 |
| 10 02 | 10 |
| 10 02 | 11 |
| 10 02 | 12 |
| 10 02 | 13 |
| 10 02 | 14 |
| 10 02 | 15 |
| 10 02 | 16 |
| 10 03 | 17 |
| 10 03 | 18 |
| 10 03 | 19 |
| 10 03 | 20 |
| 10 03 | 21 |
| 10 03 | 22 |
| 10 03 | 23 |
| 10 03 | 24 |
| 10 03 | 25 |

1    wish and dismiss it with prejudice.

2            MS. MERTZ:  Thank you, Your Honor.

3            THE COURT:  Thank you.

4            MS. MILLER:  Your Honor, the next plaintiff is Gloria

5    McSwain, Case No. 16-13736.  Here the deficiencies have been

6    outstanding for seven months.  We are waiting for proof that

7    the plaintiff used Xarelto, records demonstrating an injury to

8    the plaintiff, and a signed declaration.  Counsel requested and

9    received an initial extension until February 3rd to provide

10   that information.  And then in April, the Court granted another

11   extension of time until May 3rd to provide that information,

12   and the counsel has been unable to get that from their client

13   despite multiple efforts.

14            THE COURT:  Dismiss that one with prejudice.

15            MS. MILLER:  The next one on the case is Carol Shoff,

16   Case No. 16-14437.  Here the deficiency has been outstanding

17   for seven months.  We are waiting for records demonstrating

18   that the plaintiff used Xarelto, records demonstrating that the

19   plaintiff was injured, and a signed declaration.  The first

20   deficiency notice was sent in November of 2016.  So it's been

21   seven months.

22            In March the court received 30 days extension.

23   It was not heard at the April conference, but separate from the

24   conference, counsel reached out to Your Honor and asked for

25   another extension, which was granted, and they had until

REALTIME UNEDITED DRAFT

| | |
|---|---|
| 10 03   1 | May 3rd to provide that information.  It looks like they've |
| 10 03   2 | made multiple attempts but haven't been able to get that from |
| 10 03   3 | their client. |
| 10 03   4 | **THE COURT:**  Okay.  Dismissed with prejudice. |
| 10 03   5 | **MS. MILLER:**  The last one in group is Lillian Mae |
| 10 03   6 | Wiles, Case No. 16-14489.  This is another one where the |
| 10 03   7 | deficiency has been outstanding for seven months.  Counsel has |
| 10 03   8 | already received two extensions.  The information we're waiting |
| 10 04   9 | for is information demonstrating that the plaintiff used |
| 10 04  10 | Xarelto, medical records demonstrating that the plaintiff was |
| 10 04  11 | injured, and a signed declaration.  We understand that despite |
| 10 04  12 | multiple attempts, the client has not provided that information |
| 10 04  13 | to her counsel. |
| 10 04  14 | **THE COURT:**  Dismissed with prejudice. |
| 10 04  15 | **MS. DANIEL:**  Your Honor, the next case is Anthony |
| 10 04  16 | Albergo.  This is a Driscoll firm case.  I don't know if the |
| 10 04  17 | defendant responded.  I saw the e-mail stating that the |
| 10 04  18 | defendant would respond shortly.  I think that was yesterday. |
| 10 04  19 | **MS. MILLER:**  No.  My understanding is that they |
| 10 04  20 | uploaded an amended plaintiff fact sheet yesterday.  There's |
| 10 04  21 | been a discrepancy between the injury alleged and the plaintiff |
| 10 04  22 | fact sheet and the injury that we've seen in the medical |
| 10 04  23 | records.  So they were attempting to cure that.  My |
| 10 04  24 | understanding is that they're still trying and we are still |
| 10 04  25 | waiting for a declaration on the amendments to the fact sheet. |

REALTIME UNEDITED DRAFT

| | | |
|---|---|---|
| 10 04 | 1 | **THE COURT:**  Let's pass that one. |
| 10 04 | 2 | **MS. DANIEL:**  Eric, is there anything you want to |
| 10 05 | 3 | state for the record on that case? |
| 10 05 | 4 | **MR. JACKSTADT:**  Yes.  Eric Jackstadt with the |
| 10 05 | 5 | Driscoll firm.  Your Honor, this is a situation where |
| 10 05 | 6 | Mr. Albergo was taking Xarelto through November and December of |
| 10 05 | 7 | 2015.  During that time, he experienced hematuria, but he did |
| 10 05 | 8 | not see a physician for it while he was taking the Xarelto. |
| 10 05 | 9 | We have amended a FFS is filed to reflect that |
| 10 05 | 10 | when he saw doctors in 2016 for the hematuria that continues, |
| 10 05 | 11 | he told them about heavier hematuria while he was taking |
| 10 05 | 12 | Xarelto.  So we have proof of injury and diagnosis in the |
| 10 05 | 13 | history of doctors checking him in 2016, and that's where the |
| 10 05 | 14 | discrepancy came up.  Because we had put in the dates that the |
| 10 05 | 15 | histories were taken rather than when he was experiencing |
| 10 06 | 16 | hematuria while on XRT. |
| 10 06 | 17 | So we have changed the date of diagnoses to when |
| 10 06 | 18 | he reported in the histories to the doctors in 2016 that he had |
| 10 06 | 19 | had the hematuria while taking Xarelto. |
| 10 06 | 20 | **THE COURT:**  Okay.  That's sufficient at least to get |
| 10 06 | 21 | him past this.  I think you have a point, but I think it has to |
| 10 06 | 22 | be brought into another area.  I mean, you can dismiss it later |
| 10 06 | 23 | on perhaps in summary judgment or something of that sort.  But |
| 10 06 | 24 | at least he's put in enough information so you know where he's |
| 10 06 | 25 | coming from. |

REALTIME UNEDITED DRAFT

10 06  1        **MS. MILLER:**  Your Honor, at this point, we're not
10 06  2  disputing proof of injury.  But the law firm has amended the
10 06  3  fact sheet to change the date of injury by a full year, but
10 06  4  it's not sufficient until it's accompanied by a signed
10 06  5  declaration by the client.  So we're willing to pass it for 30
10 07  6  days.
10 07  7          **THE COURT:**  Eric, do you have authority to sign that
10 07  8  and send in the amendment?
10 07  9          **MR. JACKSTADT:**  Your Honor, we'd ask for 30 days to
10 07  10  get the new dec sheet in.
10 07  11          **THE COURT:**  Let's get him to sign that and then send
10 07  12  it in.  I'll pass it for 30 days.
10 07  13          **MS. DANIEL:**  Thank you, Your Honor.
10 07  14          **MR. JACKSTADT:**  Thank you, Your Honor.
10 07  15          **MS. DANIEL:**  The next case is Johnnie Reynolds.  If
10 07  16  you remember, he's not here today, but he waited two hours for
10 07  17  the last hearing.  He came and discussed -- this is a case
10 07  18  where the doctor is not providing the records of proof of
10 07  19  Xarelto use.  They have tried multiple different times to get
10 07  20  this doctor to concede that Xarelto use, any records, in fact,
10 07  21  they have not been able to get.
10 07  22        But there is anticoagulant listed in the
10 07  23  records, and there's no dispute as to whether there is an
10 07  24  injury.  I think at some point, Your Honor -- is anyone on the
10 07  25  line for Johnnie Reynolds?  Did you want to say something more?

REALTIME UNEDITED DRAFT

1    **MS. MILLER:**  Your Honor, this is a case where counsel
2   has been working very diligently and has been in contact with
3   Ms. Daniel and my firm trying to resolve the deficiencies.  I
4   think at this point we're satisfied for these purposes.  For
5   the deficiency purposes, we understand that they've given us
6   proof of use and proof of user.  We're just waiting for them to
7   get a signed declaration for the most recent amended plaintiff
8   fact sheet.  So we'll pass for 30 days until they get that
9   declaration.
10           **MS. DANIEL:**  Thank you.
11               The next case is Thabet Warrad.  The Mulligan
12   firm, again, would like to address the Court.  Chip?
13           **MR. ORR:**  Your Honor, Charles Orr with the Mulligan
14   law firm.  We recently learned that he has moved to Israel.  We
15   have reached out to him by the only access we have to him,
16   which is by e-mail, and we have not received a response.  Under
17   the circumstances, we would ask for another 30 days, but we
18   don't have any other basis to oppose.
19           **THE COURT:**  I'll do that.  I'll give you another 30
20   days, Chip, to get in touch with him.  But send him something
21   so that he knows that his case is going to be dismissed.
22           **MS. MILLER:**  Your Honor, for the record, this is now
23   the third hearing that that case has been listed.  So we would
24   like to bring it to a resolution quickly.
25           **MS. DANIEL:**  Thank you, Your Honor.

REALTIME UNEDITED DRAFT

| | | |
|---|---|---|
| 10 09 | 1 | The next five are with one law firm, Kelley and |
| 10 09 | 2 | Ferraro.  They are requesting extensions on the following cases |
| 10 09 | 3 | because all are awaiting medical records, and if you look at |
| 10 09 | 4 | the MDL centrality record, you can see that these plaintiffs |
| 10 09 | 5 | are trying.  This is not a situation where they are not |
| 10 09 | 6 | responding at all. |
| 10 09 | 7 | They are:  George Bohlken; Dorothy Davis; Wilma |
| 10 09 | 8 | Klineline; Cuevas Shelton, and Rosemary White.  They are all |
| 10 09 | 9 | awaiting medical records.  One, Rosemary White, there is a |
| 10 09 | 10 | probate attorney who is opening the estate.  They expect to |
| 10 09 | 11 | have those letters of administration by the end of June and |
| 10 10 | 12 | then they'll be able to order records.  So all of these five, |
| 10 10 | 13 | they're requesting additional time. |
| 10 10 | 14 | MS. MILLER:  Your Honor, for the record, these all |
| 10 10 | 15 | are seven months overdue at this point.  The case -- this is |
| 10 10 | 16 | now the third hearing where the cases have been listed, and |
| 10 10 | 17 | this is the first time we're hearing this.  We would like to |
| 10 10 | 18 | bring this to resolution, soon. |
| 10 10 | 19 | MS. DANIEL:  Your Honor, I think they're all trying. |
| 10 10 | 20 | I think this show cause situation is not a situation where Your |
| 10 10 | 21 | Honor has stated -- |
| 10 10 | 22 | THE COURT:  I'll pass it, and let's take a look at it |
| 10 10 | 23 | next time, but we're getting close now to dismissing this. |
| 10 10 | 24 | MS. DANIEL:  Absolutely, Your Honor. |
| 10 10 | 25 | The last case on this document is Bruce Arndt, |

UNOFFICIAL REALTIME TRANSCRIPT

REALTIME UNEDITED DRAFT

| | | |
|---|---|---|
| 10 10 | 1 | A-R-N-D-T.  Your Honor, actually I reviewed this case myself, |
| 10 10 | 2 | and I'd like the defendant to take another look.  There is |
| 10 10 | 3 | dispute as to what is in the records, but there is no dispute |
| 10 10 | 4 | as to what's stated in the fact sheet.  There is a Coumadin or |
| 10 10 | 5 | warfarin listed at the time of admission for the injury, Your |
| 10 10 | 6 | Honor, but the client did have a 90-day Xarelto prescription |
| 10 11 | 7 | that would have overlapped with this time period. |
| 10 11 | 8 | As Your Honor knows, the plaintiff is alleging |
| 10 11 | 9 | that you go to a hospital and somebody says, "Oh, you're owe a |
| 10 11 | 10 | blood thinner," and sometimes people put words in their mouth, |
| 10 11 | 11 | and that also is reflected in the medical record.  Quite |
| 10 11 | 12 | frankly, our plaintiff is saying -- it's not our case, |
| 10 11 | 13 | obviously, but the plaintiff is saying that they're on Xarelto. |
| 10 11 | 14 | They have a 90-day prescription that would have gone into this |
| 10 11 | 15 | time frame. |
| 10 11 | 16 | So we would ask that the defendant review this |
| 10 11 | 17 | again for fact sheet purposes because this is not a trial -- |
| 10 11 | 18 | maybe in a trial situation this will be a different discussion, |
| 10 11 | 19 | but for an order to show cause hearing, we don't think this is |
| 10 11 | 20 | something that should be dismissed with prejudice. |
| 10 11 | 21 | **MS. MILLER:**  Your Honor, the records reflect that |
| 10 11 | 22 | case is being brought for failure to demonstrate an injury.  We |
| 10 11 | 23 | don't have records that demonstrate an injury at this point, so |
| 10 11 | 24 | that's what we're waiting for.  If you look at the order, the |
| 10 11 | 25 | original issues were failure to provide a declaration and |

REALTIME UNEDITED DRAFT

1    failure to provide records of use.  They provided the
2    declaration.  We're still waiting for proof of injury.
3         **THE COURT:**  What was he in the hospital for?
4         **MS. DANIEL:**  He was in the hospital for -- and this,
5    Your Honor, I actually have the e-mail from the defendant
6    within the last two days that said -- I even show what the
7    injury is here.  It is -- it was bookmarked.  It's the same
8    injury that was listed on the fact sheet, the abdominal pain.
9    You know, whether it's valid or not is a different reason, but
10   they did cite the same reasons on the fact sheet.
11         So the only -- the only valid deficiency was the
12   lack of a declaration, which they did upload on April 19th,
13   2017.  So I think it is within the last two days that you all
14   then also said to me, "No, this is still deficient because
15   there is Coumadin listed in the records."  Now, defendant said
16   Coumadin is noted on admission, but that is not listed in the
17   deficiency.
18         If this is the deficiency, the defendant needs
19   to issue another deficiency notice.  (CCK)
20         **THE COURT:**  Take a look at it again.  Let's pass this
21   one.  Take a look at it and see.  Unless the person is in the
22   hospital and visiting somebody, it seems to me he's there for
23   some reason.
24         **MS. MILLER:**  That's correct, Your Honor.  We'll take
25   a look at it.

REALTIME UNEDITED DRAFT

| | | |
|---|---|---|
| 10 13 | 1 | **MS. DANIEL:**  The next document is 6624.  The |
| 10 13 | 2 | following eleven cases are cured:  Gervasio Donatelli; Sandra |
| 10 13 | 3 | Dunn; Larry Gibson; Herbert Gomez; Jewel Kelly; Janet Knaflich; |
| 10 13 | 4 | Kent Kriedeman; Tommy Ladd; Doris McBrayer; Marlene Tabor, and |
| 10 13 | 5 | Gary Waddell. |
| 10 13 | 6 | **MS. MILLER:**  Your Honor, very quickly.  On Tommy |
| 10 13 | 7 | Ladd, we don't have information that has been cured.  This was |
| 10 13 | 8 | an instance where the counsel yesterday amended the PFS but did |
| 10 14 | 9 | not provide a declaration.  So we're willing to pass it for 30 |
| 10 14 | 10 | days until they provide the last piece of outstanding |
| 10 14 | 11 | information. |
| 10 14 | 12 | **MR. JACKSTADT:**  Your Honor, we'll have a new dec page |
| 10 14 | 13 | within 30 days. |
| 10 14 | 14 | **THE COURT:**  Let's pass that one for 30 days. |
| 10 14 | 15 | What's the name of the counsel? |
| 10 14 | 16 | **MR. JACKSTADT:**  Eric Jackstadt with the Driscoll |
| 10 14 | 17 | firm. |
| 10 14 | 18 | **MS. DANIEL:**  Your Honor, on the following case, the |
| 10 14 | 19 | firm has tried to remedy the case and, despite their best |
| 10 14 | 20 | efforts, they've been unable to resolve the deficiency, and |
| 10 14 | 21 | that is Duane Thompson. |
| 10 14 | 22 | **MS. MILLER:**  Your Honor, on Mr. Thompson, that is |
| 10 14 | 23 | Case No. 16-9981.  The first deficiency notices were sent eight |
| 10 14 | 24 | months ago.  It was brought because the medical records didn't |
| 10 14 | 25 | demonstrate any injury.  We understand that plaintiff's counsel |

REALTIME UNEDITED DRAFT

| | | |
|---|---|---|
| 10 15 | 1 | was talking about a possible dismissal.  I don't know, Eric, if |
| 10 15 | 2 | that's your position today? |
| 10 15 | 3 | MR. JACKSTADT:  Your Honor, at this time we don't |
| 10 15 | 4 | have any grounds to oppose the motion. |
| 10 15 | 5 | THE COURT:  Okay.  Dismiss it with prejudice. |
| 10 15 | 6 | Thank you. |
| 10 15 | 7 | MR. JACKSTADT:  Thank you. |
| 10 15 | 8 | MS. DANIEL:  Thank you, Your Honor. |
| 10 15 | 9 | The next five cases, counsel would like to |
| 10 15 | 10 | address the Court, Your Honor.  The first four are with the |
| 10 15 | 11 | Mulligan firm, again, Chip Orr.  They are:  Kimberly Bowes; |
| 10 15 | 12 | Devan Haben, Charles Grant, and Maurice Ramirez. |
| 10 15 | 13 | Chip, if you would like to go ahead. |
| 10 15 | 14 | MR. ORR:  Your Honor, I would like to take up Grant |
| 10 15 | 15 | and Ramirez. |
| 10 15 | 16 | THE COURT:  Ramirez? |
| 10 15 | 17 | MR. ORR:  On Grant and Ramirez.  These are the cases |
| 10 15 | 18 | where the alleged deficiency is failure to provide product ID. |
| 10 15 | 19 | What's missing, Your Honor, is pharmacy ID, but we have |
| 10 15 | 20 | provided ID in the medical records, and we filed a response to |
| 10 15 | 21 | the original show cause request.  We filed that on January 20, |
| 10 16 | 22 | 2017.  It's Document 5107.  On pages 3 and 4 of that document, |
| 10 16 | 23 | we list the places in each record with document IDs for the |
| 10 16 | 24 | record where there's product ID in the medical records. |
| 10 16 | 25 | Under these circumstances, we submit there's no |

UNOFFICIAL REALTIME TRANSCRIPT

REALTIME UNEDITED DRAFT

| | | |
|---|---|---|
| 10 16 | 1 | deficiency at all. |
| 10 16 | 2 | MS. MILLER:  Your Honor, what they're pointing to is |
| 10 16 | 3 | records of self report.  Our understanding was that because the |
| 10 16 | 4 | plaintiff fact sheet said the prescription was filled at |
| 10 16 | 5 | Boynton Beach Health Care Center Florida that they will be |
| 10 16 | 6 | attempting to obtain prescription records.  That's the actual |
| 10 16 | 7 | pharmacy where the prescription was filled.  That's what we |
| 10 16 | 8 | were waiting for more information on. |
| 10 16 | 9 | THE COURT:  It seems to me that that passes at least |
| 10 16 | 10 | the requirement of you get past dismissal.  But I do think |
| 10 17 | 11 | counsel has a right to request by way of interrogatories or |
| 10 17 | 12 | just production in lieu of interrogatories, which is this fact |
| 10 17 | 13 | sheet, the material that you indicated, a particular pharmacy |
| 10 17 | 14 | that your client used.  Let's contact that pharmacy and get |
| 10 17 | 15 | whatever records they have.  If there are none, then that's the |
| 10 17 | 16 | issue that will be visited again during trial or during |
| 10 17 | 17 | discovery or something because it goes to correct data. |
| 10 17 | 18 | MS. MILLER:  We understand the Court's position on |
| 10 17 | 19 | that.  We would just like a resolution on whether at this point |
| 10 17 | 20 | they've attempted to obtain the records from the pharmacy or if |
| 10 17 | 21 | they've been told the records don't exist. |
| 10 17 | 22 | THE COURT:  Let's see what you can do, Chip, to get |
| 10 17 | 23 | the records from the pharmacy. |
| 10 17 | 24 | MR. ORR:  Your Honor, we have attempted to get |
| 10 17 | 25 | records from the pharmacy.  These are both deceased claimants, |

REALTIME UNEDITED DRAFT

10 17  1   so we're relying on claimant representatives in both cases, the

10 18  2   surviving spouse, to get the records.  We have done that, and

10 18  3   we haven't found any product ID from any pharmacy records.  But

10 18  4   under the circumstances, we think we have met the threshold

10 18  5   getting past any --

10 18  6           THE COURT:  Yes, I think you have.  But you're going

10 18  7   to be seriously in trouble with credibility if they don't have

10 18  8   any pharmacy and they say one thing in the record but they

10 18  9   can't prove it.  But I think you've passed this part.  I won't

10 18  10  dismiss the case.

10 18  11          MR. ORR:  Understood.  Thank you, Your Honor.

10 18  12          Circling back to the other two, Kimberly Bowes

10 18  13  and Devan Haben.

10 18  14          MS. MILLER:  Sorry to interrupt.

10 18  15          MR. ORR:  We recently spoke with Devan Haben and he's

10 18  16  moved I think a dozen times in the last year.  He's not in good

10 19  17  financial shape, so he's pretty nomadic.  We found a good

10 19  18  address for him and a good phone number, and he has promised to

10 19  19  provide us the declaration.  I've been in touch with my office

10 19  20  this morning so see if he's provided it.  We haven't received

10 19  21  it yet, but we expect it any day, today, frankly.

10 19  22          With Kimberly Bowes, we found her husband and

10 19  23  spoke to him, and he assured us that she would sign any

10 19  24  paperwork that we sent and needed signed and back to us.

10 19  25          For both of these, we would ask for another 30

REALTIME UNEDITED DRAFT

10 19  1  days.  If we can't deliver in 30 days, we understand.  The

10 19  2  Court's been very patient with us.

10 19  3          MS. MILLER:  Your Honor, if I could give some

10 19  4  background.  The plaintiff's counsel received the list of these

10 19  5  deficiencies in December.  The motions were filed in January.

10 19  6  In both cases, plaintiff's counsel were given extensions in

10 19  7  March and in April to find this information.

10 19  8              For the Bowes case, we've been waiting 15 months

10 20  9  for the deficiencies to be cured; and in the Haben case, we've

10 20  10 been waiting eight months.  They've already received two

10 20  11 extensions in both of them.  But at this point, if they don't

10 20  12 have the information, it's unlikely they're going to be able to

10 20  13 obtain it.

10 20  14         THE COURT:  Okay.  Know this, I'll pass it for 30

10 20  15 days, but if you don't have the material in 30 days, it's going

10 20  16 to be dismissed.

10 20  17         MR. ORR:  I appreciate that, Your Honor.  Thank you.

10 20  18         MS. MILLER:  If we could clarify one thing for the

10 20  19 record.  I know we were talking earlier about the Grant case.

10 20  20 I believe you were also talking about the Ramirez case.  Is

10 20  21 that correct?

10 20  22         MR. ORR:  Yes.

10 20  23         MS. MILLER:  So for the record, this is 16-12885.

10 20  24 And have you been able to obtain pharmacy records from Rite

10 20  25 Aid?

UNOFFICIAL REALTIME TRANSCRIPT

REALTIME UNEDITED DRAFT

10 20  1        **MR. ORR:**  We have obtained records and we need to

10 20  2  upload those to the portal.  They don't have any product ID.

10 20  3        **MS. MILLER:**  So we think the Ramirez case should be

10 20  4  treated differently from the Grant case, and the Ramirez, we

10 21  5  should have 30 days to look at that.

10 21  6        **THE COURT:**  Well, let's upload them and we'll see

10 21  7  what happens.  It may well be in that case if there's any

10 21  8  indication in the hospital records or in the doctor's records

10 21  9  that he was on Xarelto, that's one thing.  But if there's no

10 21 10  indication and there's no indication in the pharmacy records,

10 21 11  then it seems to me that there's no product identification that

10 21 12  the plaintiff can offer, either hospital records, doctor's

10 21 13  records, pharmacy records, anything is sufficient, but nothing

10 21 14  is not sufficient.

10 21 15        **MR. ORR:**  May I respond to that?  Document ID 2 of

10 21 16  6795 at page 6 is records from Desert Regional Medical Center

10 21 17  in Palm Springs, California, and I'm looking at that record

10 21 18  right now.  It says, "Patient was on Xarelto and he had a

10 22 19  subdural hematoma.  After discussion with pharmacy, it

10 22 20  determined there was no definitive reversal for Xarelto."  It

10 22 21  goes on to describe a course of treatment that was predicated

10 22 22  for the patient being on Xarelto.  So Ramirez is identically

10 22 23  postured to Grant, and the pharmacy records we obtained doesn't

10 22 24  change the analysis.

10 22 25        **MS. MILLER:**  We'll take a look at the report he

UNOFFICIAL REALTIME TRANSCRIPT

REALTIME UNEDITED DRAFT

| | | |
|---|---|---|
| 10 22 | 1 | referenced, Your Honor. |
| 10 22 | 2 | THE COURT:  Okay.  I won't dismiss this one. |
| 10 22 | 3 | MS. DANIEL:  Thank you, Your Honor. |
| 10 22 | 4 | The last case on this document is Shanda Maye. |
| 10 22 | 5 | Rosenberg & Gluck law firm would like to address the Court. |
| 10 22 | 6 | Is anyone on the line?  Okay. |
| 10 22 | 7 | THE COURT:  For Shanda Maye. |
| 10 22 | 8 | MS. DANIEL:  Yes.  They are not on the line, Your |
| 10 22 | 9 | Honor.  But they have made numerous attempts to contact this |
| 10 23 | 10 | client, Your Honor, and I think they just wanted to state that |
| 10 23 | 11 | on the record.  But if they're not on the line, I'll state that |
| 10 23 | 12 | on their behalf.  They've made numerous attempts to reach out |
| 10 23 | 13 | to this client but have not been able to get any response. |
| 10 23 | 14 | THE COURT:  Notwithstanding hte efforts of counsel, |
| 10 23 | 15 | the client hasn't responded, and I'll dismiss it with |
| 10 23 | 16 | prejudice. |
| 10 23 | 17 | MS. DANIEL:  Thank you, Your Honor. |
| 10 23 | 18 | The next are the motions to dismiss without |
| 10 23 | 19 | prejudice, and there are a few of those.  Document 5257, Your |
| 10 23 | 20 | Honor.  This is Elaine Dixon.  This was previously addressed |
| 10 23 | 21 | today on another document, on Document 6619.  So this has |
| 10 23 | 22 | already been dismissed, Your Honor. |
| 10 23 | 23 | MR. LANE:  Your Honor, hello?  Hello? |
| 10 23 | 24 | THE COURT:  Yes. |
| 10 23 | 25 | MR. LANE:  Yes, this is Joe Lane with the Cochran |

REALTIME UNEDITED DRAFT

10 23  1   firm, and I was here to address this case.  As I understood it
10 23  2   earlier on the Document 6619, the Court dismissed that case.
10 24  3   We had filed a motion to dismiss without prejudice in January.
10 24  4   This was a case that was originally filed October 6th of 2016.
10 24  5   Unfortunately, our client on September 28th, approximately a
10 24  6   week before, when we tried to get the PFS completed, of course,
10 24  7   we could not get her to verify.  That was the basis for filing
10 24  8   the motion to dismiss without prejudice.
10 24  9            We did submit the PFS, but it's unverified.  Our
10 24  10  communications with defense counsel requested that we be
10 24  11  allowed to dismiss it without prejudice so that we could refile
10 24  12  under -- because our position is the void from the beginning.
10 24  13           To avoid any confusion in the record, we wanted
10 24  14  to dismiss that case without prejudice and then refile under a
10 24  15  personal representative.  We have filed the survival action,
10 25  16  but it's our fear that because the record now reflects that
10 25  17  this case -- original case was dismissed with prejudice that
10 25  18  that will impact revival action.
10 25  19           So I was not able to get in earlier on
10 25  20  Document 6619, but I would like the Court to reconsider that.
10 25  21           THE COURT:  Okay.  I understand.  What he's saying,
10 25  22  he filed a suit originally for the client, but at the time he
10 25  23  filed the suit, the client had died a month or so before he
10 25  24  could file the suit.
10 25  25           MR. LANE:  Your Honor, that's a week.

UNOFFICIAL REALTIME TRANSCRIPT

REALTIME UNEDITED DRAFT

| | | |
|---|---|---|
| 10 25 | 1 | **THE COURT:**  Or shortly before.  So then he's now |
| 10 25 | 2 | filed a suit for the survivors, but he's concerned if the first |
| 10 25 | 3 | one is dismissed with prejudice that the second one may not |
| 10 25 | 4 | be -- may not be a valid suit because it has already been |
| 10 26 | 5 | dismissed. |
| 10 26 | 6 | **MS. MILLER:**  Understood, Your Honor.  We have a |
| 10 26 | 7 | stipulation that addresses the dual filers.  We can get that |
| 10 26 | 8 | out to counsel. |
| 10 26 | 9 | **MS. DANIEL:**  If you call me -- I'm Sindhu Daniel.  If |
| 10 26 | 10 | you could reach out to me, we'll walk you through the process |
| 10 26 | 11 | of amending this complaint also. |
| 10 26 | 12 | **THE COURT:**  We'll handle that so it's not dismissed |
| 10 26 | 13 | without prejudice, that you're protected on it.  Contact |
| 10 26 | 14 | Ms. Daniel. |
| 10 26 | 15 | **MS. DANIEL:**  Thank you, Your Honor. |
| 10 26 | 16 | Document 6349 is Lisa Fultz's motion to dismiss |
| 10 26 | 17 | without prejudice.  The firm has agreed to a stipulation of |
| 10 26 | 18 | dismissal with prejudice.  So this matter has been resolved. |
| 10 26 | 19 | **THE COURT:**  Okay. |
| 10 26 | 20 | **MS. DANIEL:**  Document 6416, Joanne Fahy's motion to |
| 10 26 | 21 | dismiss without prejudice.  This firm has also agreed to a |
| 10 26 | 22 | stipulation of dismissal with prejudice.  So this matter has |
| 10 26 | 23 | also been resolved. |
| 10 26 | 24 | Document 6420, Judy Goff' motion to dismiss |
| 10 26 | 25 | without prejudice.  The firm would like to address the Court. |

REALTIME UNEDITED DRAFT

| | |
|---|---|
| 10 27 | 1 |
| 10 27 | 2 |
| 10 27 | 3 |
| 10 27 | 4 |
| 10 27 | 5 |
| 10 27 | 6 |
| 10 27 | 7 |
| 10 27 | 8 |
| 10 27 | 9 |
| 10 27 | 10 |
| 10 27 | 11 |
| 10 27 | 12 |
| 10 27 | 13 |
| 10 27 | 14 |
| 10 27 | 15 |
| 10 27 | 16 |
| 10 27 | 17 |
| 10 27 | 18 |
| 10 27 | 19 |
| 10 28 | 20 |
| 10 28 | 21 |
| 10 28 | 22 |
| 10 28 | 23 |
| 10 28 | 24 |
| 10 28 | 25 |

1  Is anyone from the Fernelius Simon firm on the
2 line?
3  MR. PERDUE:  Yes, Your Honor.  Ryan Perdue with
4 Fernelius Simon.  We filed a motion to dismiss without
5 prejudice because, despite our best efforts, we were unable to
6 secure the client's permission to file with prejudice.
7  THE COURT:  Okay.  All right.  I understand that you
8 all have been trying your best to get the materials.  But
9 notwithstanding you efforts, I'm going to have to dismiss it
10 with prejudice.  Thank you very much.
11  MR. PERDUE:  Yes, Your Honor.
12  MS. DANIEL:  On document 6580, Harry Sherman's motion
13 to dismiss without prejudice.  The firm has agreed to a
14 stipulation of dismissal with prejudice.  So this has been
15 resolved.
16  THE COURT:  Let it be dismissed.
17  MS. DANIEL:  Document 6710 is Earl Smith's motion to
18 dismiss without prejudice.  Again, the firm has agreed to a
19 stipulation of dismissal with prejudice.  So this matter has
20 been resolved.
21  THE COURT:  Let it be dismissed.
22  MS. DANIEL:  Your Honor, we're on the final document,
23 Document 6748, and this list is pursuant to PTO 31.  We have
24 been working with the defendant on this list, and this is the
25 first time these cases will appear on the order to show cause

UNOFFICIAL REALTIME TRANSCRIPT

REALTIME UNEDITED DRAFT

1   in front of you.  So these are deficiencies on the fact sheets,

2   so it's a little bit more lengthy obviously.

3          The next eleven cases have been cured.  Again,

4   Document 6748.  They are:  Geraldine Basmajian; Steven

5   Davidson; Joann Furnish; Charles Humpal; Brenda Kalman; Amy

6   Karr; Marcus Stanley; Leora Thompson; Chester Vanness; Roger

7   Watkins, and Patricia Williams.

8          MS. MILLER:  Your Honor, just going back to Steven

9   Davidson, is that one that you just listed.  The defendants'

10  records don't show that the deficiencies have been cured.

11  We're still waiting for, it looks like, medical records and a

12  declaration.

13          THE COURT:  So what, is that removed from the

14  dismissal?

15          MS. MILLER:  No.  We'll pass that for 30 days, but we

16  wouldn't remove it from the list.

17          MS. DANIEL:  I think something has been uploaded.

18  Perhaps the defendant just needs to review.

19          For the next eleven cases, the firm has tried to

20  remedy the cases, but despite their best efforts, they've been

21  unable to resolve the deficiencies.  They are:  Susie Mae

22  Cornelius Graves.  That's one name.

23          MS. MILLER:  How would Your Honor like us to proceed?

24  Would you like background information --

25          THE COURT:  Is this the first time that I'm visiting

UNOFFICIAL REALTIME TRANSCRIPT

REALTIME UNEDITED DRAFT

1   these cases?

2          MS. DANIEL:  This is the first time.  But, Your

3   Honor, these firms are aware that this was happening.  I don't

4   put them on the list without express permission from the

5   plaintiff's firm.

6          THE COURT:  Is it time to dismiss these cases if they

7   haven't answered?

8          MS. DANIEL:  I think the firms understand that they

9   have done everything they can on these cases.

10         MS. MILLER:  If Your Honor prefers, I can give you

11  the deficiency history for the record.  (CCK)

12         MS. DANIEL:  Do you want to do them one by one, Your

13  Honor?

14         THE COURT:  Is there any way of shortening it?

15         MS. DANIEL:  Is there any way of shortening it,

16  Chanda?

17         MS. MILLER:  Your Honor, we can abbreviate it.

18         MS. DANIEL:  I'll read them into the record, Your

19  Honor.

20             The first one is Susie Mae Cornelius Graves, one

21  name.

22         MS. MILLER:  For that, Your Honor, it's records

23  declaration and proof of use that are missing.

24         MS. DANIEL:  Walter Davis.

25         MS. MILLER:  Records of injury and proof of use that

REALTIME UNEDITED DRAFT

| | | |
|---|---|---|
| 10 30 | 1 | are missing. |
| 10 30 | 2 | MS. DANIEL:  Charles Dodson. |
| 10 30 | 3 | MS. MILLER:  For that one, it's a declaration from |
| 10 30 | 4 | the client that's missing. |
| 10 30 | 5 | MS. DANIEL:  Ruben Donajkowski. |
| 10 31 | 6 | MS. MILLER:  Proof of use of Xarelto, proof of |
| 10 31 | 7 | injury, and a declaration. |
| 10 31 | 8 | MS. DANIEL:  Cleveland Douglas. |
| 10 31 | 9 | MS. MILLER:  We're missing proof the plaintiff used |
| 10 31 | 10 | Xarelto and was injured. |
| 10 31 | 11 | MS. DANIEL:  Sherrail Jackson. |
| 10 31 | 12 | MS. MILLER:  Your Honor, for that one, there's no |
| 10 31 | 13 | proof that the plaintiff used Xarelto. |
| 10 31 | 14 | MS. DANIEL:  Willie Marable. |
| 10 31 | 15 | MS. MILLER:  The plaintiff used Xarelto and was |
| 10 31 | 16 | injured, and we're miss a declaration. |
| 10 31 | 17 | MS. DANIEL:  Alma McGowen. |
| 10 31 | 18 | MS. MILLER:  We're missing information that the |
| 10 31 | 19 | plaintiff used Xarelto. |
| 10 31 | 20 | MS. DANIEL:  Peggy Paige. |
| 10 31 | 21 | MS. MILLER:  For that one, we're missing information |
| 10 31 | 22 | that the plaintiff used Xarelto and was injured. |
| 10 31 | 23 | MS. DANIEL:  Elsie Pedroza. |
| 10 31 | 24 | MS. MILLER:  We're missing information that the |
| 10 31 | 25 | plaintiff used Xarelto, was injured, and we're missing a |

REALTIME UNEDITED DRAFT

| | | |
|---|---|---|
| 10 31 | 1 | declaration. |
| 10 31 | 2 | MS. DANIEL:  Mary Rudisil. |
| 10 31 | 3 | MS. MILLER:  We're missing information that the |
| 10 31 | 4 | plaintiff used Xarelto. |
| 10 31 | 5 | MS. DANIEL:  Kenneth Wake. |
| 10 31 | 6 | MS. MILLER:  And for Mr. Wake, defendants do not have |
| 10 31 | 7 | information that the plaintiff used Xarelto, the plaintiff was |
| 10 32 | 8 | injured, and we do not have a declaration. |
| 10 32 | 9 | MS. DANIEL:  Your Honor, for the next 19 cases -- |
| 10 32 | 10 | THE COURT:  Dismiss those with prejudice. |
| 10 32 | 11 | MS. DANIEL:  Thank you, Your Honor. |
| 10 32 | 12 | For the next 19 cases, as we stated, this is the |
| 10 32 | 13 | first time they are on an order to show cause, and they are all |
| 10 32 | 14 | requesting extensions.  I can go through, quickly, on why each |
| 10 32 | 15 | one is requesting an extension if you would like, Your Honor, |
| 10 32 | 16 | but mostly it's needing additional records.  They're awaiting |
| 10 32 | 17 | injury records, estates were opened as early as June 6th. |
| 10 32 | 18 | They're missing a declaration page, and need to correct the |
| 10 32 | 19 | name of a doctor. |
| 10 32 | 20 | So there are minor issues that can be corrected, |
| 10 32 | 21 | and we think that there's no -- certainly no prejudice to the |
| 10 32 | 22 | defendant in granting them an extension.  I could read those |
| 10 32 | 23 | into the record. |
| 10 32 | 24 | THE COURT:  I'll pass these for 30 days.  I don't |
| 10 32 | 25 | want to dismiss them immediately. |

UNOFFICIAL REALTIME TRANSCRIPT

REALTIME UNEDITED DRAFT

| | | |
|---|---|---|
| 10 32 | 1 | **MS. DANIEL:**  George Amelung, Charles Campbell, |
| 10 33 | 2 | Williams Care, Roger Desmarais, Octavio Fernandez, Jerry |
| 10 33 | 3 | Glidewell, Johnny Gray, Clifford Stone, Rudolfo Morin, David |
| 10 33 | 4 | Hills, Bobbie Joe Jenkins, Rebecca Lawson, Keisha Pickett, |
| 10 33 | 5 | Donny Rivers, William Sandidge, Joyce Sheridan, Dugas |
| 10 33 | 6 | Shirlene -- I'm sorry, Shirlene Dugas, John Peterson, and |
| 10 33 | 7 | Orlando Winters. |
| 10 33 | 8 | The next case -- |
| 10 33 | 9 | **THE COURT:**  Pass those for 30 days. |
| 10 33 | 10 | **MS. DANIEL:**  Thank you, Your Honor. |
| 10 33 | 11 | **MS. MILLER:**  All those cases, Your Honor, quickly |
| 10 33 | 12 | looking through, we're missing some very basic and core |
| 10 33 | 13 | information, such as proof of use and proof of injury, so we do |
| 10 34 | 14 | request that they get that within the 30 days.  And for all of |
| 10 34 | 15 | these, the deficiencies have been outstanding for months now. |
| 10 34 | 16 | **THE COURT:**  Okay. |
| 10 34 | 17 | **MS. DANIEL:**  We're down to the end, Your Honor.  The |
| 10 34 | 18 | firm has filed a response to the order to show cause, and the |
| 10 34 | 19 | firm is requesting a dismissal without prejudice because, |
| 10 34 | 20 | despite their best efforts, they have not heard from the client |
| 10 34 | 21 | and do not have permission to dismiss with prejudice, that is, |
| 10 34 | 22 | Joseph Rivera. |
| 10 34 | 23 | **THE COURT:**  That's it? |
| 10 34 | 24 | **MS. MILLER:**  For Mr. Rivera, we're still waiting for |
| 10 34 | 25 | a declaration.  We've been waiting six months now.  The PFS was |

UNOFFICIAL REALTIME TRANSCRIPT

REALTIME UNEDITED DRAFT

| | |
|---|---|
| 10 34 | 1 |
| 10 34 | 2 |

1  actually filed in November, so they've had that information for
2  eight months.
3         THE COURT:  Dismiss it with prejudice.
4         MS. DANIEL:  Thank you, Your Honor.
5             The last three, all of these have executed a
6  stipulation of dismissal with prejudice or they have have
7  agreed to it.  They are:  John Beaver, Michael Fischer and
8  Harold Troutman.  (CCK)
9         THE COURT:  Okay.  Let those be dismissed with
10  prejudice.
11         MS. DANIEL:  That's it, Your Honor.
12         MS. MILLER:  Your Honor, we would like to talk about
13  setting the next hearing date.  Should we work with Dean on
14  something for July?
15         MS. DANIEL:  Your Honor, we would also ask that
16  instead of doing this every month, we would, again, to try to
17  push this until the end of August since there is a hearing
18  starting as well.
19         THE COURT:  We've got -- our next trial is when?
20         THE DEPUTY CLERK:  August 7th through the 18th.
21         THE COURT:  When's our next meeting, John, in August;
22  do you know?
23         MR. OLINDE:  I believe there's a meeting in August,
24  but there's -- August 7th is in Jackson, so it probably needs
25  to be sometime --

UNOFFICIAL REALTIME TRANSCRIPT

REALTIME UNEDITED DRAFT

| | | |
|---|---|---|
| 10 35 | 1 | **THE COURT:**  Sometime after that. |
| 10 35 | 2 | **MR. OLINDE:**  -- either after that or before in July. |
| 10 35 | 3 | **MS. SHARKO:**  We're all here on July 21st. |
| 10 35 | 4 | **THE DEPUTY CLERK:**  We have motions on the 21st, and |
| 10 35 | 5 | we have a juror questionnaire conference on the 21st.  I don't |
| 10 35 | 6 | know the time frame. |
| 10 35 | 7 | **THE COURT:**  We've got the juror questionnaire |
| 10 35 | 8 | conference on the 21st. |
| 10 36 | 9 | **MS. MILLER:**  Maybe something the following week. |
| 10 36 | 10 | **THE COURT:**  I'm out. |
| 10 36 | 11 | **MS. SHARKO:**  How about the afternoon of the 20th? |
| 10 36 | 12 | **THE DEPUTY CLERK:**  We have criminal matters on the |
| 10 36 | 13 | 20th. |
| 10 36 | 14 | **MS. DANIEL:**  Again, that would be one month. |
| 10 36 | 15 | **MR. OLINDE:**  I think the motion day starts at 11:00. |
| 10 36 | 16 | Unless you wanted to start this at 9:00 or something before |
| 10 36 | 17 | that?  If you want to take this up before that and the motions |
| 10 36 | 18 | start at eleven. |
| 10 36 | 19 | **THE DEPUTY CLERK:**  Basically, it's two and a half |
| 10 36 | 20 | weeks from now. |
| 10 36 | 21 | **THE COURT:**  That's a little soon.  So we have to do |
| 10 36 | 22 | it sometime -- |
| 10 36 | 23 | **MS. DANIEL:**  So we'll work with Dean, Your Honor, to |
| 10 36 | 24 | find a date. |
| 10 36 | 25 | **THE COURT:**  Yes.  Okay. |

REALTIME UNEDITED DRAFT

10 37    1                    **(OFF THE RECORD)**

10 39    2            (WHEREUPON, the proceedings were concluded.)

         3

         4

         5

         6

         7

         8

         9

        10

        11

        12

        13

        14

        15

        16

        17

        18

        19

        20

        21

        22

        23

        24

        25

UNOFFICIAL REALTIME TRANSCRIPT