UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | * * * | MDL 2592 |
| | * | SECTION L |
| THIS DOCUMENT RELATES TO: | * * | JUDGE ELDON E. FALLON |
| *Mingo v. Bayer Corp., et al.* Case No. 2:15-cv-03469 | * * * | MAGISTRATE JUDGE NORTH |

* * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFF'S REPLY MEMORANDUM
IN SUPPORT OF RULE 59 MOTION FOR A NEW TRIAL**

**I.  INTRODUCTION**

As addressed in her initial memorandum,[1] Plaintiff is entitled to a new trial so she can admit newly discovered evidence about a newly published study funded by Bayer and performed by Bayer employees and consultants. This study – approved for publication a week after this trial commenced and discovered four days later, after the evidence was closed, on the morning of closing statements – provides new, unique, and more credible support for Plaintiff's claims, and probably would have resulted in a different outcome at trial. Additionally, Plaintiff is entitled to a new trial to correct prejudicial errors made during trial with regard to the admission of prejudicial evidence about non-approval for Neoplastin PT testing and the strikethrough documents without sufficient related instructions.

---

[1] Plaintiff's Memorandum in Support of Rule 59 Motion for a New Trial [Record Doc. 7586-1] ("Plaintiff's Mem.").

1

## II.     ARGUMENT

### A.     Plaintiff is entitled to a new trial because newly discovery evidence generated by Bayer scientists regarding the use of Neoplastin PT and anti-Factor Xa assays to assess Xarelto's anticoagulant effect probably would have changed the outcome of the trial.

Defendants do not contend that Plaintiff could have learned earlier about the Kreutz article or its underlying study,[2] which was funded by Bayer and performed by six Bayer scientists and two Bayer consultants.[3] Such an argument would have carried little weight, given that the article was not released online as "accepted" until the second week of the *Mingo* trial.[4]

Defendants instead suggest that there is a blanket rule providing that "as a matter of law, a newly published article in a scientific journal cannot justify a new trial."[5] Defendants cite *Neurontin* as support, but that case from the District of Massachusetts involved only a scholarly article analyzing studies, most of which had been available during trial.[6] The *Neurontin* court concluded that the defendant in that case could have performed the same analysis of those same studies prior to trial.[7] That determination is a far cry from a wholesale prohibition against a new trial based on a newly discovered article, even if the article outlines a new study conducted by Defendants' own scientists and consultants, and provides opinions directly contradicting those presented by Defendants' experts at trial and new, unique support for the claims at issue.

---

[2] *See* Defendants' Opposition to Plaintiff's Rule 59 Motion for a New Trial ("Def. Opp.").

[3] *See* Plaintiff's Mem. at 4-5.

[4] *See id.* at 7.

[5] *See* Def. Opp. at 1.

[6] *See In re Neurontin Mktg. & Sales Practices Litig.,* 799 F. Supp. 2d 110, 114 (D. Mass. 2011).

[7] *Id.* at 115. Defendants cite two additional cases, *see* Def. Opp. at 7, but neither relate to the issue at hand. One involved the permissible scope of expert testimony. *See Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 596-97 (1993). The other involved the untimely submission of a supplemental expert report, five months after the party should have known that a supplement would be necessary. *See In re Viagra Prods. Liab. Litig.,* 658 F. Supp. 2d 936, 949 (D.C. Minn. 2009).

Defendants also attempt to characterize the new article at issue here as cumulative evidence. It is not. This is because:

1. Statements about the benefits of PT testing *made by Plaintiff's experts during trial*,[8] by their very nature, would tend to be given less credence than the same statements about the benefits of PT testing *made by Defendants' own scientists in a real-world setting, outside the context of litigation*.

2. The trial evidence involved studies performed and statements made by Defendants' scientists *years ago, and sometimes more than a decade ago*,[9] while the new evidence involves a study performed and statements made by Defendants' scientists *during the pendency of this litigation*;

3. The trial evidence involved statements by Defendants' scientists that Neoplastin PT *can be used* to assess Xarelto's anticoagulant effect, while the new evidence also involves statements by Defendants' scientists that it *may be beneficial to use* Neoplastin PT to assess Xarelto's anticoagulant effect in clinical settings.[10]

4. The trial evidence involved Defendants' scientists correlating *Neoplastin PT* with rivaroxaban concentrations, thereby supporting *only the failure to warn claim*, while the new evidence involves Defendants' scientists correlating *both Neoplastin PT and anti-Factor Xa assays* with rivaroxaban concentrations, thereby supporting *both the failure to warn and design defect claims*.[11]

---

[8] Examples of this testimony are cited at Def. Opp. at 5.

[9] *See* Def. Opp. at 5, citing *Mingo* Trial Transcript at 791:25-792:8, 890:11-23, 897:14-20, 1103:2-1106:11, 1286:13-1290:9, 1603:18-1604:11 (attached to Def. Opp. at Exhibit A), all of which involve studies from Dagmar Kubitza from 2005 and 2008, and/or studies from Dr. Wolfgang Mueck from 2013 and 2014.

[10] *See* Plaintiff's Mem. at 4.

[11] *See id.*

3

5.  The trial evidence involved *no reliance* by Defendants' scientists on anything from Plaintiff's experts, while the new evidence involves *reference to and reliance upon an article published by Plaintiff's expert Robert Gosselin*.[12]

Consequently, the new scientific evidence has unique characteristics that prevent it from being merely cumulative, or useful solely to corroborate testimony or impeach witnesses. The evidence instead directly supports the use and the benefits of using not only Neoplastin PT tests, but also anti-Factor Xa assays, in a more timely manner, from what might be deemed a more credible source, with the side benefit of aiding with corroboration and impeachment, all of which probably would have changed the outcome of the trial. Thus, Defendants' arguments about the inability to support a new trial with evidence that would be cumulative or used solely for corroborative or impeachment purposes[13] are inapplicable and should be disregarded. Instead, a new trial should be granted.

**B.  Plaintiff is entitled to a new trial because Defendants disregarded this Court's *In Limine* ruling regarding a PT test being specifically approved for use with Xarelto, and Plaintiff's request for a curative instruction about this ruling was <u>not provided.</u>**

Defendants attempt to sidestep the effects of their intentional and repeated disregard of this Court's *in limine* order by claiming that the ruling prohibited only arguments about *legal requirements* for FDA approval of using Neoplastin PT testing with Xarelto, and did not prohibit *factual evidence* about whether Neoplastin PT testing has been approved for use with Xarelto.[14] Beyond the hair-splitting evasion, it is simply not true.

---

[12] *See id.*

[13] *See* Def. Opp. at 5-6, 8-11.

[14] *See* Def. Opp. at 12-15.

4

Plaintiff's motion was not limited to this effect, and, in fact, the supporting memorandum led with this statement: "Plaintiff anticipates that Defendants, either through argument or testimony, will falsely suggest that the universal PT test, available in community hospitals around the country, has not been cleared or approved to evaluate the anticoagulation status of patients on Xarelto."[15] This clearly extended to the *fact* of approval or non-approval, and not merely the *legal effect* of approval or non-approval. In this Court's assessment of the motion, this Court inherently acknowledged that this was the intent of the motion, by quoting the leading statement from Plaintiff's memorandum in its assessment of the motion.[16]

Additionally, the order was not limited to this effect. Rather, the order sustained Plaintiff's motion in its entirety, without qualification, along with this comment: "Whether the FDA approved Neoplastin PT or not is not the ultimate issue – the Defendants have not shown they gave the FDA sufficient information to adequately decide whether or not Neoplastin PT should be used with Xarelto."[17] Had the intent of the order been to prohibit only legal conclusions about FDA approval, the correct action would have been to sustain the motion in part (regarding evidence about the legal effect of approval) and deny the motion in part (regarding evidence about the fact of approval).

Likewise, had the intent of the order been to prohibit only legal conclusions, there would have been no need for any of the curative instructions that Defendants admit this Court tried to

---

[15] *See* Plaintiffs' Memorandum of Law in Support of Motion Limine No. 37 to Preclude the False and Misleading Argument that a Prothrombin Time (PT) Test Must be Specifically Approved by the FDA for Use with Xarelto [Record Doc. 6492-1], at 1. While this motion was filed and ruled upon in *Orr,* the parties stipulated to its application in *Mingo. See* Joint Stipulation on Motion *In Limine* Filings and Rulings [Record Doc. 6536], at p.8, § IV(B)(12)

[16] *See In re Xarelto (Rivaroxaban) Prods. Liab. Litig.,* MDL No. 2592 Section L, 2017 U.S. Dist. LEXIS 2311719, at *25 (E.D. La. May 26, 2017).

[17] *Id.* at *25-26.

provide to the jury.[18] This Court instead cut off argument by Defense counsel that their presentation of this evidence was justified, and directed Plaintiff's counsel to propose an instruction.[19] As discussed in the initial memorandum, however, Plaintiff contends that the instruction provided to the jury was not sufficiently curative, and that the combination of the testimony that was supposed to be precluded per the *in limine* order, along with the ineffectual curative instruction, affected her substantial rights and warrants a new trial.[20]

> **C. Plaintiff is entitled to a new trial because admitting the strikethrough document was highly prejudicial, and that prejudice was exacerbated by the Court's failure to properly instruct the jury of Defendants' burden to prove by "clear evidence" that the FDA never would have approved such language.**

Defendants claim that the strikethrough evidence was relevant because it spoke to the reasonableness of their actions.[21] Since all actions involving the strikethrough documents took place pre-approval, however, evidence about those actions speak only to the reasonableness of the steps Defendants did or did not take before Xarelto was approved. But this lawsuit does not solely relate to the reasonableness of the steps Defendants did or did not take before Xarelto was approved. It more relates to the reasonableness of the steps that Defendants did or did not take after Xarelto was approved, after Defendants received notice of enough Serious Adverse Event reports to trigger an important safety signal and responsive pharmacovigilance actions.

Thus, Defendants' pre-approval submission of PT-related language to the FDA bears little relation to this case unless it somehow speaks to Defendants' post-approval failure to submit PT-related language to the FDA. If its purpose is to excuse the need for Defendants to submit proposed

---

[18] *See, e.g.,* Def. Opp. at 11, 15-17.

[19] *See Mingo Trial Transcript,* at 898:12-899:3 (attached to Def. Opp. at Exhibit A).

[20] *See* Plaintiff's Mem. at 10-12.

[21] *See* Def. Opp. at 18-19.

PT-related language after Xarelto was approved and placed on the market, that analysis can take place only in the context of an argument that it would have been futile for Defendants to propose PT-related language after Xarelto was approved and placed on the market, and that futility argument comes into play only if it is to establish "clear evidence" that the FDA would not have approved PT-related language after Xarelto was approved and placed on the market. No other post-approval purpose has been suggested.

No one has ever claimed that any particular language in Plaintiff's proposed "clear evidence" instruction was inaccurate. Defendants claim only that this was a legal issue decided by the Court before trial.[22] If this claim is accurate, and "clear evidence" was a *legal issue already determined by this Court before trial*, there would have been no reason to present any of the strikethrough evidence to the jury at trial. If this claim is not accurate, and "clear evidence" was a *factual issue to be decided by the jury*, the jury should have been presented with instructions on how to assess the strikethrough evidence in the context of that factual issue.

While an instruction was provided, it was only an instruction that actions or inactions on the part of the FDA do not prevent a finding that Defendants had not appropriately advised of risks.[23] This comes nowhere close to making the jury aware that they should completely disregard any submissions of PT-related evidence that had been made by Defendants in 2011, unless they believe this clearly establishes by a preponderance of the evidence that it was not only probable, but "highly probable" and "reasonably certain" that the FDA would have prohibited any PT-related language from being added to the label years later, after new evidence about the serious and potentially life-threatening dangers associated with the use of Xarelto was gathered.

---

[22] *See* Def. Opp. at 22-23.

[23] *See* Plaintiff's Mem. at 15.

Consequently, the jury was left to decide whether, and how, to consider evidence about the submissions of PT-related language in 2011, without any true guidance. This affected Plaintiff's substantive rights, and warrants a new trial.

### D.  **Defendants were not entitled to judgment as a matter of law.**

Finally, Defendants argue, inaccurately, that any errors were harmless because Defendants should have been granted a judgment dismissing Plaintiff's claims as a matter of law.[24] This lacks merit for all of the reasons presented following the submission of Defendants' Motion for Judgment as a Matter of Law at the Close of Evidence.

### III.  **CONCLUSION**

As addressed in detail in Plaintiff's initial memorandum, and as supplemented in this memorandum, each error, on its own, and certainly when considered cumulatively, affected the substantial rights of Plaintiff. This is especially true in light of the newly-published evidence by Defendants' own scientists and consultants, which probably would have changed the outcome of the trial. Accordingly, a new trial is warranted.

Dated: November 3, 2017

Respectfully submitted,

/s/ Leonard A. Davis
Leonard A. Davis, Esq. (Bar No. 14190)
**HERMAN, HERMAN & KATZ, LLC**
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Email: ldavis@hhklawfirm.com

---

[24] *See* Def. Opp. at 25.

>Gerald E. Meunier (Bar No. 9471)
>***GAINSBURGH BENJAMIN DAVID MEUNIER & WARSHAUER, LLC***
>2800 Energy Centre, 1100 Poydras Street
>New Orleans, LA 70163-2800
>Phone: (504) 522-2304
>Fax: (504) 528-9973
>Email: gmeunier@gainsben.com
>
>*Plaintiffs' Liaison Counsel*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 3, 2017, the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs and Defendants by operation of the court's electronic filing system and served on all other plaintiff counsel via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre- Trial Order No. 17.

>*/s/ Leonard A. Davis*
>**LEONARD A. DAVIS**