**FILED**
02 OCT 2017 05:24 pm
Civil Administration
E. HAURIN

# EXHIBIT 8

Case ID: 150102349
Control No.: 17091055

Protected - Subject to Further Protective Review

```
 1        IN THE UNITED STATES DISTRICT COURT
 2       FOR THE EASTERN DISTRICT OF LOUISIANA
 3                       - - -
 4
     IN RE:  XARELTO           :   MDL NO. 2592
 5   (RIVAROXABAN) PRODUCTS    :
     LITIGATION                :   SECTION L
 6                             :
     THIS DOCUMENT RELATES     :   JUDGE ELDON
 7   TO ALL CASES              :   E. FALLON
                               :
 8                             :
                               :   MAG. JUDGE
 9                             :   NORTH
10
                       - - -
11
                 December 15, 2016
12
                       - - -
13
                    - PROTECTED -
14
     - SUBJECT TO FURTHER PROTECTIVE REVIEW -
15
16            Videotaped deposition of
     DAVID A. KESSLER, M.D., taken pursuant to
17   notice, was held at the law offices of
     Douglas & London, 59 Maiden Lane, New
18   York, New York, beginning at 8:39 a.m.,
     on the above date, before Michelle L.
19   Gray, a Registered Professional Reporter,
     Certified Shorthand Reporter, Certified
20   Realtime Reporter and Notary Public.
21                     - - -
22          GOLKOW TECHNOLOGIES, INC.
       877.370.3377 ph | 917.591.5672 fax
23             deps@golkow.com
24
```

```
 1   APPEARANCES:
 2
 3       THE LAMBERT FIRM
         BY:  EMILY C. JEFFCOTT, ESQ.
 4       701 Magazine Street
         New Orleans, Louisiana 70130
 5       (504) 581-1750
         ejeffcott@thelambertfirm.com
 6
            - and -
 7
         SCHLICHTER, BOGARD & DENTON, LLP
 8       BY:  ROGER C. DENTON, ESQ.
         100 South Fourth Street
 9       Suite 1200
         St. Louis, Missouri 63102
10       (314) 621-6115
         rdenton@uselaws.com
11
            - and -
12
         DOUGLAS & LONDON, PC
13       BY:  LARA J. SAY, ESQ.
         59 Maiden Lane, 6th Floor
14       New York, New York 10038
         (212) 566-7500
15       lsay@douglasandlondon.com
16          - and -
17       LEVIN PAPANTONIO THOMAS
         MITCHELL RAFFERTY & PROCTOR, PA
18       BY:  NED McWILLIAMS, ESQ.
         (Via telephone)
19       316 South Baylen Street, Suite 600
         Pensacola, Florida 32502
20       (888) 435-7001
         nmcwilliams@levinlaw.com
21       Representing the Plaintiffs
22
23
24
```

```
 1       APPEARANCES:  (Cont'd.)
 2
 3       TUCKER ELLIS, LLP
         BY:  MICHAEL C. ZELLERS, ESQ.
 4       515 South Flower Street, 42nd Floor
         Los Angeles, California 90071
 5       (213) 430-3301
         Michael.zellers@tuckerellis.com
 6
            - and -
 7
         BARRASSO, USDIN, KUPPERMAN, FREEMAN
 8       & SARVER, LLC
         BY:  CELESTE COCO-EWING, ESQ.
 9       909 Poydras Street, Suite 2400
         New Orleans, Louisiana 70112
10       (504) 589-9700
         Ccoco-ewing@barrassousdin.com
11
            - and -
12
         DRINKER, BIDDLE & REATH, LLP
13       BY:  SEAN KENNEDY, ESQ.
         600 Campus Drive
14       Florham Park, New Jersey 07932
         (973) 549-7000
15       sean.kennedy@dbr.com
         Representing Janssen entities
16
17
18
19
20
21
22
23
24
```

```
 1        APPEARANCES:  (Cont'd.)
 2
          KAYE SCHOLER, LLP
 3        BY:  JEFFREY H. HOROWITZ, ESQ.
          250 West 55th Street
 4        New York, New York 10019
          (212) 836-7740
 5        jeffrey.horowitz@kayescholer.com
 6             - and -
 7        BRADLEY ARANT BOULT CUMMINGS, LLP
          BY:  LINDSEY C. BONEY, IV, ESQ.
 8        One Federal Place
          1819 Fifth Avenue North
 9        Birmingham, Alabama 35203
          (205) 521-8303
10        Lboney@bradley.com
          Representing Bayer Pharmaceuticals
11
12
13
          VIDEOTAPE TECHNICIAN:
14           Darnell Brown
15
16
17
18
19
20
21
22
23
24
```

```
 1    data that was available in Bayer's own
 2    studies that when you look at it, both in
 3    2008 and 2010, neither of which were
 4    pointed out to FDA.
 5              And, in fact, I would say,
 6    if anything, if you read what was said,
 7    the contrary impression was given as to
 8    what kind of data is in both of these
 9    studies.
10         Q.   What did the data in the
11    June 12, 2008, Bayer document state?
12         A.   Sure.
13         Q.   And if you could identify
14    the document.  I understand that you've
15    identified it by Bate number.  But if you
16    can tell us what the document is.
17         A.   Happy to -- happy to show
18    you.  So if you could turn to -- you
19    don't have it, but maybe others can pull
20    this up.
21              I am reading -- let's see if
22    there's a Bates number.  Yeah.  So I am
23    reading off XARELTO_BPAG_27674479 and
24    that's the first page.  And the title --
```

Protected - Subject to Further Protective Review

```
 1              Q.    Yes.  Please give --
 2              A.    The title of the document is
 3   "Integrated analysis of coagulation
 4   parameters measured in subjects actively
 5   treated with rivaroxaban based on pooled
 6   analysis of data from the studies 11354,
 7   11355, 11356, and 11357."
 8                    Those are the four ROCKET --
 9   RECORD studies.  And let me answer your
10   question specifically.
11                    Again, one footnote there.
12   We do have to be a little careful under
13   the use of RECORD, because we know that
14   the FDA had substantial concern on
15   RECORD4 on adverse reaction reporting.
16   But let's put that to the side.
17                    What I'm specifically
18   referring to is if you turn to Table
19   14.4/10.3 -- let me see if I can give you
20   a Bates number -- yeah, if you -- and
21   it's XARELTO_BPAG_27674634.  This table
22   is basically -- these are pool quartiles
23   of PT Neoplastine Day 6 trough.
24                    And what you see is that
```

Protected - Subject to Further Protective Review

 1   there are four quartiles of PT.  So the
 2   patient who's -- this is trough.  So the
 3   first quartile divides patients up
 4   between, I guess, 1 and a PT of 12.9.
 5   That's Quartile 1.
 6                And then you have Quartile
 7   2, which is a PT of greater than 12.9 but
 8   less than 13.6.
 9                Third quartile is greater
10   than 13.6 to 14.71.
11                And the fourth quartile is
12   greater than 14.7 up to 36.4.
13                And you have, just for the
14   record, in the first quartile 1,235
15   patients.  And the second quartile you
16   have 1,019.  In the third quartile you
17   have 1,042.  And in the fourth quartile
18   you have 1,077.
19                If you look across the
20   table, it goes through major bleeding, no
21   and yes.  And you can't -- you really
22   can't do any analysis on major bleeding,
23   because you have very, very small
24   numbers.  You have one major bleed in the

Protected - Subject to Further Protective Review

1  first quartile, four in the second one
2  and the third, and four in the fourth.
3  So you can't do statistics on those small
4  numbers.
5              But if you look at
6  clinically relevant bleeding, what you
7  see is in the first quartile, you have 19
8  events over 13 point -- I'm sorry -- 19
9  over 1,235 patients.  And compared to
10 Quartile 4, for clinically relevant, is
11 40 over 1,077.  So you can do the
12 statistics and the odds ratios also.
13             But clinically relevant
14 Quartile 1, 19 over 1,235.  Quartile 4,
15 the highest PTs, 40 over 1,077.
16             I get a med calc odds ratio
17 of 2.45 with a confidence interval of
18 1.42 to 4.29 for a P-value of P less than
19 .0013.  So a highly statistically
20 significant difference.  I mean, if
21 you're higher PT and odds ratio of 2.45,
22 that is statistically significant.
23        Q.    When --
24        A.    Can I -- can I just finish,

Protected - Subject to Further Protective Review

```
 1
 2                    CERTIFICATE
 3
 4
 5            I HEREBY CERTIFY that the
    witness was duly sworn by me and that the
 6  deposition is a true record of the
    testimony given by the witness.
 7
              It was requested before
 8  completion of the deposition that the
    witness, DAVID A. KESSLER, M.D., have the
 9  opportunity to read and sign the
    deposition transcript.
10
11
              _____
12            MICHELLE L. GRAY,
              A Registered Professional
13            Reporter, Certified Shorthand
              Reporter, Certified Realtime
14            Reporter and Notary Public
              Dated:  December 19, 2016
15
16
17            (The foregoing certification
18  of this transcript does not apply to any
19  reproduction of the same by any means,
20  unless under the direct control and/or
21  supervision of the certifying reporter.)
22
23
24
```