Attis et al. v. Her Majesty the Queen in Right of Canada
as Represented by the Minister of Health et al.; Dow Corning
Corporation., Third Party

[Indexed as: Attis v. Canada (Minister of Health)]

93 O.R. (3d) 35

Court of Appeal for Ontario,
Lang, Juriansz and MacFarland JJ.A.
September 30, 2008

Torts -- Negligence -- Duty of care -- Crown not owing
private law duty of care to persons who were implanted with
silicone gel breast implants. [page36 ]

The plaintiffs were implanted with silicone gel breast
implants. They alleged that their implants leaked or ruptured,
causing catastrophic medical consequences. They commenced a
proposed class action against Health Canada, alleging that the
Food and Drugs Act, R.S.C. 1985, c. F-27 ("FDA") imposed a duty
on Health Canada to ensure that individual members of the
Canadian public were protected from devices that might cause
them harm, that Health Canada knew or ought to have known about
the unsuitability of the breast implants, and that it was
negligent in failing to test, ban or recall the implants or
warn the plaintiffs about their hazards. On a certification
motion, the motion judge found that it was plain and obvious
that the claim disclosed no cause of action because the
underlying legislative and regulatory scheme did not support
the plaintiffs' argument that the defendant owed them a private
law duty of care. The proposed class action was dismissed, and
the defendant was awarded costs fixed at $125,000. The
plaintiffs appealed.

2008 ONCA 660 (CanLII)

Held, the appeal should be dismissed.

The motion judge did not err in finding that the defendant did not owe the plaintiffs a private law duty of care. The case did not fall within a recognized or analogous category of proximate relationship. In fact, to the extent that the claim alleged breach of a statutory duty, such a claim has already been recognized as attracting immunity. Section 19 of the FDA, which deals directly with the safety of medical devices, explicitly places the obligation for the safety of the devices on the manufacturer and distributor; no obligations are placed on the government. The regulations in force at the relevant time imposed no obligation on Health Canada to undertake safety and efficacy testing, or to engage any other compliance or enforcement mechanism. The legislative scheme signalled an intention that the government's duty is owed to the public as a whole, not to the individual consumer. The absence of an immunity clause in the legislation was not indicative of a relationship of proximity between the plaintiffs and Health Canada. Given the plain language of the legislative scheme, no intention to impose a private law duty of care could be inferred. The government does not have a proximate relationship to an individual Canadian when it makes decisions of a political, social or economic nature. However, once the government has direct communication or interaction with the individual in the operation or implementation of a policy, a duty of care may arise, particularly where the safety of the individual is at risk. In this case, there was no allegation of any representations by Health Canada that were capable of supporting a relationship of proximity. It was not pleaded that Health Canada knew, or ought to have known, that the plaintiffs -- as opposed to unknown members of the public -- were relying on it to ensure product safety. Apart from a bald pleading that the plaintiffs relied on Health Canada for the safety of the breast implants, no facts were pled to support any reliance. The statutory framework included no complaints mechanism; the plaintiffs never raised, and had no procedure for registering, a complaint with Health Canada. The motion judge correctly concluded that it was plain and obvious that the plaintiffs failed to frame a cause of action capable of establishing proximity.

2008 ONCA 660 (CanLII)

If that conclusion was wrong, then the imposition of a duty of care was negatived in any event under the second stage of the Anns v. Merton London Borough Council test by residual policy considerations reflecting the broad societal and legal implications of imposing a duty of care. The relevant policy considerations included the spectre of indeterminate liability, the chilling effect of the imposition of a duty of care in the public health context and the distinction between policy and operational conduct.

It was open to the motion judge to conclude that the proceeding was not in the public interest and did not raise issues of such a novel nature as to justify a [page37]different costs disposition. There was no error in principle in the motion judge's costs determination.

2008 ONCA 660 (CanLII)

Cases referred to

Anns v. Merton London Borough Council, [1978] A.C. 728, [1977] 2 All E.R. 492, [1977] 2 W.L.R. 1024, 75 L.G.R. 555, 141 J.P. 527 (H.L.), apld
Cooper v. Hobart, [2001] 3 S.C.R. 537, [2001] S.C.J. No. 76, 2001 SCC 79, 206 D.L.R. (4th) 193, 277 N.R. 113, [2002] 1 W.W.R. 221, J.E. 2001-2153, 160 B.C.A.C. 268, 96 B.C.L.R. (3d) 36, 8 C.C.L.T. (3d) 26, 110 A.C.W.S. (3d) 943; Edwards v. Law Society of Upper Canada, [2001] 3 S.C.R. 562, [2001] S.C.J. No. 77, 2001 SCC 80, 206 D.L.R. (4th) 211, 277 N.R. 145, J.E. 2001-2152, 153 O.A.C. 388, 34 Admin. L.R. (3d) 38, 8 C.C.L.T. (3d) 153, 13 C.P.C. (5th) 35, 110 A.C.W.S. (3d) 944; Eliopoulos (Litigation Trustee of) v. Ontario (Minister of Health and Long-Term Care) (2006), 82 O.R. (3d) 321, [2006] O.J. No. 4400, 276 D.L.R. (4th) 411, 217 O.A.C. 69, 43 C.C.L.T. (3d) 163, 35 C.P.C. (6th) 7 (C.A.); Klein v. American Medical Systems, Inc. (2006), 84 O.R. (3d) 217, [2006] O.J. No. 5181, 278 D.L.R. (4th) 722, 219 O.A.C. 49, 44 C.C.L.T. (3d) 47, 154 A.C.W.S. (3d) 376 (Div. Ct.), revg [2005] O.J. No. 4910, 37 C.C.L.T. (3d) 260, 143 A.C.W.S. (3d) 946 (S.C.J.), consd
Baric v. Tomalk, [2006] O.J. No. 890, 38 C.C.L.T. (3d) 300, 146

A.C.W.S. (3d) 387 (S.C.J.); Finney v. Barreau du Qubec,
[2004] 2 S.C.R. 17, [2004] S.C.J. No. 31, 2004 SCC 36, 240
D.L.R. (4th) 410, 321 N.R. 361, J.E. 2004-1254, [2004] R.R.A.
713, 16 Admin. L.R. (4th) 165, 24 C.C.L.T. (3d) 1, 131
A.C.W.S. (3d) 543, REJB 2004-65746; Sauer v. Canada (Attorney
General), [2007] O.J. No. 2443, 2007 ONCA 454, 225 O.A.C.
143, 31 B.L.R. (4th) 20, 49 C.C.L.T. (3d) 161, 159 A.C.W.S.
(3d) 306, affg (2006), 79 O.R. (3d) 19, [2006] O.J. No.
26, [2006] O.T.C. 13, 17 B.L.R. (4th) 319, 36 C.C.L.T. (3d)
296, 144 A.C.W.S. (3d) 1129, 147 A.C.W.S. (3d) 919 (S.C.J.)
[Leave to appeal to S.C.C. refused [2007] S.C.C.A. No.
454]; Swanson Estate v. Canada, [1991] F.C.J. No. 452, [1992]
1 F.C. 408, 80 D.L.R. (4th) 741, 124 N.R. 218, 7 C.C.L.T.
(2d) 186, 26 A.C.W.S. (3d) 1217 (C.A.), distd

Other cases referred to

A.O. Farms Inc. v. Canada, [2000] F.C.J. No. 1771, 28 Admin.
L.R. (3d) 315, 101 A.C.W.S. (3d) 288 (T.D.); Brown v. British
Columbia (Minister of Transportation and Highways), [1994] 1
S.C.R. 420, [1994] S.C.J. No. 20, 112 D.L.R. (4th) 1, 164
N.R. 161, [1994] 4 W.W.R. 194, J.E. 94-497, 42 B.C.A.C. 1, 89
B.C.L.R. (2d) 1, 20 Admin. L.R. (2d) 1, 19 C.C.L.T. (2d) 268,
2 M.V.R. (3d) 43, 46 A.C.W.S. (3d) 797; Canada v.
Saskatchewan Wheat Pool, [1983] 1 S.C.R. 205, [1983] S.C.J.
No. 14, 143 D.L.R. (3d) 9, 45 N.R. 425, [1983] 3 W.W.R. 97,
23 C.C.L.T. 121, 18 A.C.W.S. (2d) 133; Childs v. Desormeaux,
[2006] 1 S.C.R. 643, [2006] S.C.J. No. 18, 2006 SCC 18,
266 D.L.R. (4th) 257, J.E. 2006-986, 210 O.A.C. 315, [2006]
R.R.A. 245, 39 C.C.L.T. (3d) 163, 30 M.V.R. (5th) 1, 147
A.C.W.S. (3d) 719, EYB 2006-104570; Cloud v. Canada (Attorney
General) (2004), 73 O.R. (3d) 401, [2004] O.J. No. 4924, 247
D.L.R. (4th) 667, 192 O.A.C. 239, 27 C.C.L.T. (3d) 50, [2005]
1 C.N.L.R. 8, 2 C.P.C. (6th) 199, 135 A.C.W.S. (3d) 567
(C.A.); Donahue v. Stevenson, [1932] A.C. 562, [1932] All
E.R. Rep. 1 (H.L.); Drady v. Canada (Minister of Health),
[2007] O.J. No. 2812, 2007 CanLII 27970, 159 A.C.W.S. (3d)
177 (S.C.J.); Hercules Management Ltd. v. Ernst & Young,
[1997] 2 S.C.R. 165, [1997] S.C.J. No. 51, 146 D.L.R.
(4th) 577, 211 N.R. 352, [1997] 8 W.W.R. 80, J.E. 97-1151,
115 Man. R. (2d) 241, 31 B.L.R. (2d) 147, 35 C.C.L.T. (2d)
115, 71 A.C.W.S. (3d) 169; Hill v. Hamilton-Wentworth
Regional Police Services Board, [2007] 3 S.C.R. 129, [2007]

S.C.J. No. 41, 2007 SCC 41, 285 D.L.R. (4th) 620, 368 N.R. 1,
J.E. 2007-1867, 230 O.A.C. 253, [2007] R.R.A. 817, 64 Admin.
L.R. (4th) 163, 50 C.C.L.T. (3d) 1, 50 C.R. (6th) 279, 40
M.P.L.R. (4th) 1, 160 A.C.W.S. (3d) 573, EYB 2007-124525;
[page38 ]Holland v. Saskatchewan, [2008] S.C.J. No. 43,
2008 SCC 42, EYB 2008-136658, J.E. 2008-1434, 167 A.C.W.S.
(3d) 427, 376 N.R. 316, 294 D.L.R. (4th) 193, [2008] 9
W.W.R. 193, 311 Sask. R. 197, 58 C.C.L.T. (3d) 1; Hollick v.
Toronto (City), [2001] 3 S.C.R. 158, [2001] S.C.J. No. 67,
2001 SCC 68, 205 D.L.R. (4th) 19, 277 N.R. 51, J.E.
2001-1971, 153 O.A.C. 279, 42 C.E.L.R. (N.S.) 26, 13 C.P.C.
(5th) 1, 24 M.P.L.R. (3d) 9, 108 A.C.W.S. (3d) 774; Hunt
v. Carey Canada Inc., [1990] 2 S.C.R. 959, [1990] S.C.J. No.
93, 74 D.L.R. (4th) 321, 117 N.R. 321, [1990] 6 W.W.R. 385,
J.E. 90-1436, 49 B.C.L.R. (2d) 273, 4 C.C.L.T. (2d) 1, 43
C.P.C. (2d) 105, 23 A.C.W.S. (3d) 101; Just v. British
Columbia, [1989] 2 S.C.R. 1228, [1989] S.C.J. No. 121, 64
D.L.R. (4th) 689, 103 N.R. 1, [1990] 1 W.W.R. 385, J.E.
90-18, 41 B.C.L.R. (2d) 350, 41 Admin. L.R. 161, 1 C.C.L.T.
(2d) 1, 18 M.V.R. (2d) 1, 18 A.C.W.S. (3d) 527; Kamloops
(City) v. Nielsen, [1984] 2 S.C.R. 2, [1984] S.C.J. No.
29, 10 D.L.R. (4th) 641, 54 N.R. 1, [1984] 5 W.W.R. 1, J.E.
84-603, 66 B.C.L.R. 273, 11 Admin. L.R. 1, 29 C.C.L.T. 97, 8
C.L.R. 1, 26 M.P.L.R. 81, 26 A.C.W.S. (2d) 453; Odhavji
Estate v. Woodhouse, [2003] 3 S.C.R. 263, [2003] S.C.J. No.
74, 2003 SCC 69, 233 D.L.R. (4th) 193, 312 N.R. 305, J.E.
2004-47, 180 O.A.C. 201, 11 Admin. L.R. (4th) 45, 19 C.C.L.T.
(3d) 163, 127 A.C.W.S. (3d) 178; Pearson v. Inco Ltd.
(2006), 79 O.R. (3d) 427, [2006] O.J. No. 991, 267 D.L.R.
(4th) 111, 208 O.A.C. 284, 20 C.E.L.R. (3d) 292, 25 C.P.C.
(6th) 1, 146 A.C.W.S. (3d) 600 (C.A.); Rivtow Marine Ltd.
v. Washington Iron Works, [1974] S.C.R. 1189, [1973] S.C.J.
No. 126, 40 D.L.R. (3d) 530, [1973] 6 W.W.R. 692; Street v.
Ontario Racing Commission (2008), 88 O.R. (3d) 563, [2008]
O.J. No. 37, 2008 ONCA 10, 232 O.A.C. 346, 163 A.C.W.S. (3d)
670; Swinamer v. Nova Scotia (Attorney General), [1994] 1
S.C.R. 445, [1994] S.C.J. No. 21, 112 D.L.R. (4th) 18, 163
N.R. 291, J.E. 94-498, 129 N.S.R. (2d) 321, 20 Admin. L.R.
(2d) 39, 19 C.C.L.T. (2d) 233, 2 M.V.R. (3d) 80, 46
A.C.W.S. (3d) 798; Syl Apps Secure Treatment Centre v. D.
(B.), [2007] 3 S.C.R. 83, [2007] S.C.J. No. 38, 2007 SCC

38, 284 D.L.R. (4th) 682, 365 N.R. 302, J.E. 2007-1512, 227
O.A.C. 161, 49 C.C.L.T. (3d) 1, 39 R.F.L. (6th) 245, 159
A.C.W.S. (3d) 464, EYB 2007-122390; Wellbridge Holdings Ltd.
v. Winnipeg (Greater), [1971] S.C.R. 957, [1970] S.C.J. No.
102, 22 D.L.R. (3d) 470, [1972] 3 W.W.R. 433

Statutes referred to

Class Proceedings Act, 1992, S.O. 1992, c. 6, s. 5(1)(a), (b),
 (e)

Crown Liability Act, S.C. 1952-53, c. 30

Crown Liability and Proceedings Act, R.S.C. 1985, c. C-50, s.
 3(b)(i)

Department of Health Act, S.C. 1996, c. 8, s. 4

Food and Drugs Act, S.C. 1952-53, c. 38

Food and Drugs Act, R.S.C. 1970, c. F-27, s. 2

Food and Drugs Act, R.S.C. 1985, c. F-27, ss. 18 [now s. 19],
 23(1), 29(1), 30(1), 31

Health Protection and Promotion Act, R.S.O. 1990, H.7

Law Society Act, R.S.O. 1990, c. L.8

Rules and regulations referred to

Food and Drug Regulations, C.R.C., c. 55

Food and Drug Regulations, SOR/74-133

Medical Device Regulations, SOR/75-526

Medical Devices Regulations, C.R.C., c. 871 [amended to SOR/
 82-914]

Medical Devices Regulations, S.O.R./98-282

Rules of Civil Procedure, R.R.O. 1990, Reg. 194, rule 21.01(1)
 (b)

Authorities referred to

House of Commons Debates, Vol. IV (April 21, 1953) at p. 4141
 [page39 ]


 APPEAL from the order of Winkler R.S.J., [2007] O.J. No.
1744, 46 C.P.C. (6th) 129 (S.C.J.) dismissing the proposed
class proceeding.


 Kirk M. Baert, Celeste Poltak and John Legge, for appellants.

 Paul J. Evraire and James Max Soldatich, for respondents.

2008 ONCA 660 (CanLII)

S. Wayne Morris, for third party.


The judgment of the court was delivered by

 LANG J.A.: --
I. Introduction

 [1] This appeal concerns government liability for negligence
in relation to the government's regulation of breast implants.
It arises from a certification motion under the Class
Proceedings Act, 1992, S.O. 1992, c. 6 (the "CPA"), in which
the motion judge, Winkler R.S.J., dismissed the appellants'
proposed class proceeding and awarded costs to the respondents
fixed at $125,000. He concluded that, plainly and obviously,
the claim disclosed no cause of action because the underlying
legislative and regulatory scheme did not support the
appellants' argument that the respondent owed them a private
law duty of care.

 [2] The claim alleges that the respondent, Her Majesty the
Queen in Right of Canada ("Health Canada"), breached its duty
to properly regulate medical devices, namely, silicone breast
implants. Such devices are regulated under the auspices of the
Food and Drugs Act, R.S.C. 1985, c. F-27 (the "FDA" or the
"Act") and the regulations under that Act.

 [3] For the reasons that follow, I would dismiss the appeal.
[See Note 1 below]
II. Background

 The parties

 [4] The appellants, Joyce Attis and Alexandra Tesluk, were
implanted with silicone gel Dow Corning breast implants. Ms.
Attis received one implant in 1972; it was removed in 1992. Ms.
Tesluk received two implants in 1980; they were removed in
1994. Both appellants allege that their implants leaked or
ruptured, causing them catastrophic medical consequences and
permanent disabilities. [page40 ]

2008 ONCA 660 (CanLII)

[5] Both appellants were members of a class of plaintiffs
that sued Dow Corning Corporation and other breast implant
manufacturers in an earlier and separate class proceeding. Ms.
Attis opted out of that proceeding in 1994. In 1998, the
proceeding resolved pursuant to a court-approved settlement;
however, counsel advise that Ms. Tesluk only received nominal
damages from the settlement. After the settlement, the
appellants commenced this proceeding against Health Canada on
behalf of a putative class consisting of residents of Canada
(except British Columbia) who received Dow Corning breast
implants between 1962 and 1992. This class is said to include
approximately 29,500 individuals.

The appellants' claim

[6] In their claim and reply, the appellants plead that the
FDA imposed a duty on Health Canada to ensure that individual
members of the Canadian public were protected from devices that
might cause them harm. The appellants plead that they relied
upon Health Canada to comply with that duty, which they
describe as a duty to promote and maintain the health and
safety of individual Canadians, and to ensure that all medical
devices are safe. The appellants allege that, to comply with
that duty, Canada established a comprehensive system of
regulation, which it was obliged to operate without negligence.

[7] The appellants plead that, as a result of information from
various governments and organizations warning that the implants
"may cause injury" or may cause varying degrees of harm to
implant recipients, Health Canada knew or ought to have known
about the unsuitability of the implants. This unsuitability is
alleged to include the implants' predilection to failure, [See
Note 2 below] deterioration, disintegration and leakage. In
particular, the appellants plead that the Crown's "ministers or
senior public servants" ignored warnings from "senior scientific
and medical staff" regarding the implants. The appellants
further plead gross negligence based on Health Canada's
failures, including its failures to test, ban, recall or warn
the appellants about the hazards of the implants, as well as its
failure to establish a remediation program. The appellants
describe the alleged negligence as relating to operational

2008 ONCA 660 (CanLII)

decisions made by Health Canada in the course of its operation
of the statutory scheme. The appellants also claim [page41
]that, since at least 1975, Health Canada was negligent in
applying a risk-benefit analysis in assessing medical devices.
They plead such an analysis is both ultra vires Health Canada's
legislative mandate and grossly negligent. Finally, according to
the appellants, Health Canada negligently failed to enforce the
requirements of the regulations from 1988 until 1994.

 The legislative scheme

 [8] The umbrella legislation dealing with the administration
of health in Canada is the Department of Health Act, S.C. 1996,
c. 8. Section 4(1) of that Act gives the Minister of Health
powers and duties relating to "the promotion and preservation
of the health of the people of Canada". Section 4(2)(a) gives
the Minister the authority to administer statutes and
regulations related "to the health of the people of Canada".
Section 4(2)(b) gives the Minister power relating to the
"protection of the people of Canada against risks to health
and the spreading of diseases", while s. 4(2)(d) gives the
Minister the authority to establish and control "safety
standards and safety information requirements for consumer
products".

 [9] The specific legislative scheme that addresses medical
devices is the FDA and its regulations. Initially in s. 18, [See
Note 3 below] and later in s. 19, the FDA provides that "[n]o
person shall sell any device that, when used according to
directions or under such conditions as are customary or usual,
may cause injury to the health of the purchaser or user
thereof". Part II of the FDA provides inspectors with the power
to administer the legislative scheme. Inspectors may enter
premises and examine articles (s. 23(1)) and submit a seized
article to an analyst (s. 29(1)). Section 30(1) authorizes the
Governor in Council to make regulations "for carrying the
purposes and provisions of this Act into effect". This power
includes regulating manufacturers and distributors of devices to
prevent the consumer from being "deceived or misled" about a
product (s. 30(1)(b)) and to promote "the prevention of injury
[to] the health of the purchaser or consumer" (s. 30(1)(e)).

2008 ONCA 660 (CanLII)

Finally, s. 31 provides for fines and imprisonment to enforce the legislation and its regulations.

[10] The original regulations, the Food and Drug Regulations, C.R.C., c. 55 (the "FDR") were replaced by the Medical Devices Regulations (the "MDR"), S.O.R./75-526. The regulations became progressively more detailed over time. In 1972, when Ms. Attis received her implant, the FDR, C.R.C., (1955) were in [page42]force. [See Note 4 below] Under that regime, manufacturers were neither required to provide information to Health Canada, nor to seek authorization prior to importing or selling devices in Canada. However, inspectors and analysts had the authority to obtain samples and to examine or detain devices. In 1974, the amended FDR, SOR/74-133 allowed the regulator to request evidence regarding the safety of the device for its recommended purpose and to prohibit the sale of a device pending receipt of sufficient evidence.

[11] From 1975 to 1982, the time frame when Ms. Tesluk received her implants, the relevant provisions of the FDR were replaced by the MDR, SOR/75-526. The MDR required manufacturers to furnish Health Canada with "notification" within ten days from the date of the first sale of a medical device. The notification was required to include particulars about the device, its performance characteristics and directions for use. Before selling a device, manufacturers were required to conduct tests to justify the benefits and performance characteristics claimed. In addition, Health Canada had the discretion to require manufacturers to provide safety and efficacy evidence, failing which Health Canada could prohibit the sale of the device.

[12] From 1982 to 1998, medical implant manufacturers were obliged to submit to Health Canada safety and efficacy tests, but only regarding any "new" product (C.R.C., c. 871, SOR/82-914). If satisfied with the results, Health Canada would issue a Notice of Compliance regarding the device. Devices already on the market, including existing breast implant devices, were excluded from this requirement.

[13] In 1998, the regulations were amended to provide for a

2008 ONCA 660 (CanLII)

licensing scheme, which is not relevant to the time frame under
consideration in this appeal. The licensing scheme places more
requirements on the medical devices industry: see SOR/98-282.
No version of the regulations required or authorized Health
Canada to notify users of any product warnings. [page43 ]

 The motion judge's decision

 [14] The motion judge dismissed the motion for certification
on the basis that the appellants' pleadings failed to disclose
a cause of action as required by s. 5(1)(a) of the CPA.

 [15] Usually, such a pleadings motion is decided on the basis
of the statement of claim. However, in this case, the motion
was heard after a complete exchange of pleadings. In argument,
the appellants referred not only to their amended statement of
claim, but also to their reply. No objection was taken to the
additional reference to the reply, which in any event served as
an amended claim for the purpose of strengthening the
appellants' original statement of claim. The reply also
accepted some of the pleadings in Health Canada's statement of
defence.

 [16] In his reasons, at para. 33, the motion judge quoted a
paragraph from the statement of defence that was not admitted in
the appellants' reply. Given the nature of the motion, this
reference was in error. [See Note 5 below] However, there are
two reasons why the reference does not affect the result. First,
it appears the reference simply describes the regulatory scheme
that is in any event referenced in the statement of claim and
interprets that scheme in a manner consistent with the
legislation's purpose. Thus, the reference is immaterial.
Second, the fact that neither party raised this issue on the
appeal supports the view that the extract from the statement of
defence was not considered by the parties to be controversial.

 [17] In the balance of his reasons, the motion judge
considered the analytical framework that evolved from the House
of Lords' decision in Anns v. Merton London Borough Council,
[1978] A.C. 728, [1977] 2 All E.R. 492 (H.L.) including the
Supreme Court of Canada's clarification of that framework in

2008 ONCA 660 (CanLII)

the regulatory negligence context in Cooper v. Hobart, [2001] 3
S.C.R. 537, [2001] S.C.J. No. 76; and Edwards v. Law Society of
Upper Canada, [2001] 3 S.C.R. 562, [2001] S.C.J. No. 77. In
particular, the motion judge noted, at para. 26, the Edwards
requirement that "[f]actors giving rise to proximity must be
grounded in the governing statute when there is one, as in the
present case" (Edwards, at para. 9). The motion judge then
determined, at para. 27, that "[n]o analogous duty of care of
the nature alleged in this case had been recognized
previously". He further concluded, at para. 28, that, while the
statutory and regulatory scheme under the FDA imposes duties on
manufacturers and importers of medical devices, it was plain
and obvious that "no such obligations are attributed to the
[page44 ]government so as to create a private law duty of
care", as opposed to a duty of care to the public as a whole.

[18] The motion judge gave two reasons for concluding the
appellants failed to establish a private law duty of care on
the part of Health Canada. First, he interpreted s. 19 of the
FDA as imposing a duty of care on the seller, rather than on
the government. Second, he rejected the appellants' argument
that Health Canada's alleged negligence arose from
"operational", as opposed to "policy", decisions. The motion
judge distinguished the cases of Finney v. Barreau du Qubec,
[2004] 2 S.C.R. 17, [2004] S.C.J. No. 31; Swanson Estate v.
Canada, [1991] F.C.J. No. 452, 80 D.L.R. (4th) 741 (C.A.); and
Baric v. Tomalk, [2006] O.J. No. 890, 38 C.C.L.T. (3d) 300
(S.C.J.), which were relied upon by the appellants. He noted
that those cases challenged specific regulatory conduct dealing
with individual and corporate breaches of regulations. The
motion judge distinguished Finney and Swanson on the basis that
specific complaints were made to the regulator in those cases.
That was not the situation in this case.

[19] The motion judge also distinguished Baric on the basis
that the regulatory inspectors in that case took no action
regarding the company's known numerous and specific regulatory
breaches. He concluded that the essence of the appellants'
claim against the government was different and that it was
properly characterized as a failure to comply with a "duty to
prohibit" the devices, a duty he found to be akin to a "duty to

2008 ONCA 660 (CanLII)

govern". Since a failure to govern or prohibit "is a manifest
policy decision", the motion judge concluded that Health Canada
was immune from civil liability (para. 42).

[20] The motion judge observed that two recent Ontario
appellate decisions, Klein v. American Medical Systems, Inc.
(2006), 84 O.R. (3d) 217, [2006] O.J. No. 5181 (Div. Ct.);
and Eliopoulos (Litigation Trustee of v. Ontario (Minister of
Health and Long-Term Care) (2006), 82 O.R. (3d) 321, [2006]
O.J. No. 4400 (C.A.), "uphold the right of the government to
govern in the general public interest without being subject to
the threat of suit" (para. 45).

[21] In the result, the motion judge concluded that the
appellants failed to establish a private law duty of care.
III. Issues

[22] The appellants argue that the motion judge erred in
striking their action for failure to disclose a cause of action
and in awarding costs against them in the amount of $125,000.
The respondents' cross-appeal concerns other aspects of the
certification motion. [page45 ]
IV. Standard of Review

[23] In Cloud v. Canada (Attorney General) (2004), 73 O.R.
(3d) 401, [2004] O.J. No. 4924 (C.A.), this court affirmed
that the test under s. 5(1)(a) of the CPA is the same as the
test employed in a rule 21.01(1)(b) [of the Rules of Civil
Procedure, R.R.O. 1990, Reg. 194] motion. Accordingly, the
parties agree that the respondent was required to demonstrate
that it was plain and obvious that the action "cannot possibly
succeed". Under this test, the motion judge was required to
accept the factual pleadings as proven and to read the claim
generously. In addition, the test requires that a claim not be
dismissed simply because it asserts a novel cause of action:
see Hollick v. Toronto (City), [2001] 3 S.C.R. 158, [2001]
S.C.J. No. 67, at para. 25; and Hunt v. Carey Canada Inc.,
[1990] 2 S.C.R. 959, [1990] S.C.J. No. 93, at p. 980 S.C.R.
The parties agree that, on appeal, correctness is the
applicable standard of review.
V. Analysis

2008 ONCA 660 (CanLII)

Anns analysis
      (a) Applicable legal principles

[24] The parameters of government liability for regulatory
negligence continue to evolve. We have moved from a system of
complete Crown immunity to one where a government may be held
liable in tort. In 1953, Canada enacted the Crown Liability
Act, S.C. 1952-53, c. 30, which is now the Crown Liability and
Proceedings Act, R.S.C. 1985, c. C-50. Section 3(b)(i) of that
Act provides that "[t]he Crown is liable for the damages for
which, if it were a person, it would be liable . . . in respect
of a tort committed by a servant of the Crown".

[25] As is the case with tort liability generally, Crown
liability requires the plaintiff to establish the foundational
component of a duty of care. In 1977, the seminal decision of
the House of Lords in Anns advanced a two-stage test for
determining the presence of such a duty. The test was refined
by the Supreme Court of Canada in Kamloops (City) v. Nielsen,
[1984] 2 S.C.R. 2, [1984] S.C.J. No. 29, and later in Cooper
and Edwards.

[26] In examining whether a duty of care is present, a court
must first inquire whether the harm that occurred was the
reasonably foreseeable consequence of the defendant's conduct.
If foreseeability is established, the question becomes whether
the parties were in a relationship of proximity to support a
duty of care. If a court finds both foreseeability and
proximity, it must then inquire at the second stage of the
analysis whether any residual policy considerations negative
the imposition of a duty of [page46 ]care. Thus, the Anns
analysis affirms the "neighbour" principle, familiar from
Donoghue v. Stevenson, [1932] A.C. 562, [1932] All E.R. Rep. 1
(H.L.), in the first stage. At the second stage, it
recognizes that broader policy considerations may render the
imposition of liability unreasonable.

[27] This does not mean, however, that policy considerations
are restricted to the second stage of the analysis. Policy
considerations can apply at both stages of the analysis,

although they differ in nature. In Syl Apps Secure Treatment
Centre v. D. (B.), [2007] 3 S.C.R. 83, [2007] S.C.J. No. 38, at
para. 32, Abella J. explained that policy considerations at the
first stage include factors relating to the relationship
between the parties, while policy considerations at the second
stage address larger issues outside the parties' relationship.
Further, in Hill v. Hamilton-Wentworth Regional Police Services
Board, [2007] 3 S.C.R. 129, [2007] S.C.J. No. 41, McLachlin
C.J., writing for the majority, acknowledged, at para. 31, that
"there may be overlap between stage one and stage two
[policy] considerations" and that "[t]he important thing is
that in deciding whether a duty of care lies, all relevant
concerns should be considered".

[28] The different stages of the analysis invoke different
burdens of proof. The plaintiff bears the burden of
establishing a prima facie duty of care by showing
foreseeability and proximity at the first stage. The defendant
then has the burden of demonstrating the countervailing policy
considerations at the second stage: see Childs v. Desormeaux,
[2006] 1 S.C.R. 643, [2006] S.C.J. No. 18, at para. 13.

[29] In the context of regulatory negligence, two leading
decisions of the Supreme Court of Canada considered the
parameters of a regulator's duty of care to the consumer in
relation to a product or service. Cooper involved a proposed
class action against the regulator of mortgage brokers. The
representative investor, one of 3,000 investors, alleged that
the registrar of the regulatory body ought to have suspended a
particular mortgage broker's licence as soon as the registrar
became aware of the broker's statutory violations. The
registrar's failure to take prompt action, argued the investor,
caused investors to incur losses for which they sought
compensation. The Supreme Court of Canada concluded that the
registrar owed no duty of care because the registrar did not
have a proximate relationship with the investors regarding
their particular investments. The regulator's duty was not to
these individuals, but to the public as a whole. That duty was
owed to ensure the efficient operation of the mortgage
marketplace.

[30] In the companion case of Edwards, the Supreme Court also concluded that the regulator, the Law Society of Upper Canada, [page47 ]owed no private law duty of care because the parties' relationship was not proximate. In Edwards, the plaintiffs deposited funds into a lawyer's trust account; however, they did so not as legal clients, but rather as investors. Thus, the deposits were unrelated to the lawyer's professional practice. In those circumstances, there was no proximate relationship between the Law Society and the investors. The investors, the court said, at para. 18, were only "participants in a third person business promotion". Accordingly, the Law Society could owe them no duty of care under the Law Society Act, R.S.O. 1990, c. L.8.

[31] In litigation against the government, the Supreme Court of Canada specifically instructed in Cooper, at para. 43, that "the factors giving rise to proximity, if they exist, must arise from the statute" because, apart from the statute, the alleged wrongdoer is "in no different position than the ordinary man or woman on the street". However, other decisions, including Finney, also hold that the question of proximity is informed by considerations relevant to the relationship between the plaintiffs and the government, including considerations arising from the specifics of their actual interaction. I will discuss this issue further below.

[32] Cooper and Edwards also instructed that whether a government decision is operational or policy-oriented is a consideration that belongs at the second stage of the Anns analysis. Cooper explained, at para. 38, that this is because government immunity for policy decisions is not based on the parties' relationship, but "is better viewed as an immunity imposed because of considerations outside the relationship for policy reasons -- more precisely, because it is inappropriate for courts to second-guess elected legislators on policy matters". Thus, the operational/policy distinction, which was once considered the starting point for the analysis of government liability in negligence, now belongs at the second stage.

[33] The distinction between government operational decisions

2008 ONCA 660 (CanLII)

and policy decisions was considered by the Supreme Court of
Canada in Wellbridge Holdings Ltd. v. Winnipeg (Greater),
[1971] S.C.R. 957, [1970] S.C.J. No. 102. That case
concerned a zoning by-law relied upon by a builder in deciding
to develop an apartment building. When the by-law was
subsequently declared invalid, the builder sued the
municipality in negligence for damages for passing a by-law
that was invalid. His action was ultimately dismissed. Laskin
J. concluded that, since the passage of the by-law was an
exercise of policy or legislative authority undertaken for the
benefit of the general public, the decision to pass the by-law
could not support a private law duty of care to the individual.
In arriving at this conclusion, Laskin J. emphasized [page48
]that the result would have been different had the
challenged conduct been operational in nature.

 [34] Eighteen years after Wellbridge, the Supreme Court of
Canada re-examined the distinction between policy and
operational decisions in Just v. British Columbia, [1989] 2
S.C.R. 1228, [1989] S.C.J. No. 121. The issue in that case was
whether the province was liable in tort for negligence where a
rock fell onto a highway, which the province was responsible
for maintaining, and caused injury to the plaintiffs. Cory J.,
for the majority, concluded that the government owed a duty of
care to the plaintiffs because the road maintenance at issue
involved operational decisions, rather than planning or policy
decisions. At p. 1245 S.C.R., he noted that, generally,
"decisions concerning budgetary allotments for departments
or government agencies will be classified as policy decisions".
Such decisions are immune from liability, he explained at p.
1239 S.C.R., because of the difficulties inherent in governing
and the basic premise that "the Crown . . . must be free to
govern". In Brown v. British Columbia (Minister of
Transportation and Highways), [1994] 1 S.C.R. 420, [1994]
S.C.J. No. 20, at p. 441 S.C.R., Cory J., again writing for the
majority, elaborated. He described policy decisions as ones
usually "dictated by financial, economic, social and political
factors or constraints", while operational decisions perform or
carry out the policy "on the basis of administrative direction,
expert or professional opinion, technical standards or general
standards of reasonableness": see also Swinamer v. Nova Scotia

2008 ONCA 660 (CanLII)

(Attorney General), [1994] 1 S.C.R. 445, [1994] S.C.J. No. 21, at p. 465 S.C.R.

[35] Thus, a determination of whether a pleading puts forward a tenable cause of action requires consideration of foreseeability and proximity at the first stage, including policy considerations relevant to the relationship between the parties, and consideration of residual policy considerations of a broader nature at the second stage, including the question of whether the nature of the government's decision (policy or operational) supports immunity from a duty of care.

[36] However, the Supreme Court of Canada has also instructed that, if a particular relationship has already been recognized as falling into a category of duty of care, it is unnecessary to undertake a proximity analysis. As the Supreme Court stated, at para. 36 of Cooper, "When a case falls within one of these situations [where proximity has been recognized] or an analogous one and reasonable foreseeability is established, a prima facie duty of care may be posited": see also Odhavji Estate v. Woodhouse, [2003] 3 S.C.R. 263, [2003] S.C.J. No. 74. [page49 ]

[37] I take it from this that an allegation of a duty of care also does not require an Anns analysis if the relationship at issue has been recognized as one that attracts immunity from liability. Accordingly, as a preliminary manner, I turn to the issue of whether this case falls into a recognized category of proximity or of immunity.

> (b) Does a pre-existing category of regulatory negligence give rise to a duty of care in this case?

[38] Whether a particular case falls within a recognized category is not always straightforward. Cooper, at para. 36, lists recognized categories of care. Certain categories seem to fit the circumstances of this case, at least when viewed broadly. For example, this case presents allegations of governmental operational negligence, physical harm to the plaintiffs and a breach of a duty to warn. These relationships are listed in Cooper as recognized categories. On the other

2008 ONCA 660 (CanLII)

hand, a category of government immunity from liability for a breach of a statutory duty was also recognized in Holland v. Saskatchewan, [2008] S.C.J. No. 43, 2008 SCC 42 and Canada v. Saskatchewan Wheat Pool, [1983] 1 S.C.R. 205, [1983] S.C.J. No. 14.

[39] Whether this case fits within or is analogous to a recognized category depends upon the characterization of the allegations and the applicability of the authorities relied upon by the appellants.

[40] In this case, the appellants argue that the government undertook to implement a program of regulation and it did so negligently. The appellants also argue that they relied on the government to protect them from any hazards posed by the medical devices that the government regulated. This type of regulatory negligence, they argue, is a recognized category of tort liability.

[41] The allegations include pleadings that Health Canada was negligent in failing to: issue a ban or warning about the devices; seize, monitor or test the devices; remediate the consequences of the failed devices; and enforce the regulations against the manufacturers and distributors. The pleadings also allege that Health Canada was negligent in applying a risk-benefit analysis to the implants. In summary, the claim alleges that Health Canada failed to take action in the face of a known risk and, in doing so, acted contrary to its duty to protect consumers.

[42] In support of their argument that regulatory negligence falls into a recognized category of liability, the appellants rely on cases where a government regulator was found to owe a private law duty of care, particularly the cases of Swanson, Finney and Baric. In my [page50 ]view, the relationships in these cases are distinguishable from the relationship in this case. As such, I am not persuaded that this case falls within a recognized or analogous category of proximate relationship.

[43] I begin with Swanson, which the appellants argue established a recognized category of a duty of care imposed on

2008 ONCA 660 (CanLII)

government regulators, particularly in relation to matters of
public safety. In Swanson, the airline regulator learned
through investigation and employee complaints that a particular
air carrier was engaged in unsafe practices. The regulator, who
took some action based on the complaints, nevertheless
permitted the air carrier to continue to fly. A crash followed.
In concluding that the regulator was liable for the resulting
damages, Linden J.A., writing for the Federal Court of Appeal,
observed that the regulator's challenged decisions were
operational in nature. Not only did the decisions not involve
any balancing of either political or economic obligations, but
the regulator's own operation manuals required the regulator to
take action. Accordingly, the finding of a duty in Swanson was
based on the policy/operational distinction.

[44] Importantly, Swanson pre-dates the Cooper and Edwards
decisions that changed the analysis, both by emphasizing the
importance of proximity at the first stage and by directing
that the operational/policy distinction is properly considered
at the second stage of the analysis. Swanson was decided on the
basis of the policy/operational distinction without a
preliminary consideration of the question of proximity. Cooper
and Edwards make it clear that a finding of proximity is a
required element of a duty of care. Operational negligence, in
the absence of a proximate relationship, is not sufficient to
give rise to a duty of care. As such, Swanson does not assist
the appellants' argument.

[45] In Finney, the Supreme Court imposed a duty of care on
the Barreau du Qubec where the Barreau, the regulator of
members of the legal profession, failed to act in good faith.
The Barreau failed to take action against a lawyer in the face
of repeated complaints by the plaintiff to the regulator about
the lawyer's misconduct. In light of the lawyer's prior poor
disciplinary record, the court observed that the Barreau's
failure to follow up on the plaintiff's complaints was
particularly egregious. While Finney was decided under the
civil law system, and in the context of a legislative immunity
provision, the Supreme Court observed, at para. 46, that the
result would have been the same on the basis of the Edwards and
Cooper common-law analysis because "[t]he decisions made by the

2008 ONCA 660 (CanLII)

Barreau . . . were made in a relationship of proximity with a
clearly identified complainant, where the harm was
foreseeable". This interaction in Finney satisfied the [page51
]proximity test since it occurred within the regulated
professional relationship and there had been direct, close and
repeated contact between the complainant and the regulator. As
I will discuss below, no comparable direct interaction occurred
between the appellants and Health Canada, which makes this
relationship quite different from the one in Finney.

[46] Finally, the appellants rely heavily on Baric for the
principle that regulatory negligence is a recognized category.
In Baric, the plaintiff alleged negligence on the part of the
plaintiff's doctors in relation to the implantation of a
temporomandibular joint device in the plaintiff's jaw. In a
third-party claim brought by the defendant doctors against
Health Canada, the defendants pled that Health Canada
negligently permitted the manufacturer to repeatedly breach the
FDR. They also alleged operational negligence, including Health
Canada's improper listing of the device as compliant, its
failure to follow up on known ongoing sales of the unregulated
device, its participation in an ineffective recall and its
delay in enforcing the regulations. In the face of these
operational allegations, the motion judge dismissed a motion to
strike the third-party claim, holding that a trial was
necessary to determine whether there was a cause of action. In
my view, Baric presents a different factual matrix than the one
advanced in this case. Moreover, I am of the opinion that the
Baric motion judge would not have reached the same result today
in light of the intervening case law.

[47] In arriving at her decision, the Baric motion judge
relied on the motion judge's decision in Klein v. American
Medical Systems, Inc., [2005] O.J. No. 4910, 37 C.C.L.T. (3d)
260 (S.C.J.), which refused to dismiss a claim for regulatory
negligence against Health Canada relating to the implantation of
a medical device. [See Note 6 below] At para. 77, the Baric
motion judge accepted the reasoning of the Klein motion judge at
para. 47 of that decision that, "having created a detailed plan
to protect against such devices causing physical harm to users",
it was not plain and obvious that Health Canada did not have a

2008 ONCA 660 (CanLII)

private law duty of care in implementing that plan. Accordingly, the Baric motion judge dismissed the motion to strike, observing, at para. 86, that "[o]nce a government chooses to occupy a regulatory field, it must do so without negligence". The Baric decision was not appealed. Klein was appealed. In Klein, Chapnik J., for the Divisional Court, struck the claim. She observed, at para. 25, that "[t]here can be no private law duty of care where the purpose of the legislative [page52] scheme is to facilitate a public authority to act in its discretion in the public interest". Thus, in my view, the Divisional Court in Klein effectively overruled Baric to the extent that it could be read as having recognized a category of government liability for discretionary regulatory negligence in the context of the medical device regulatory regime. In addition, the Baric decision preceded the decision of this court in Eliopoulos, a decision I will discuss later in these reasons.

[48] In addition to these three decisions, counsel provided written submissions on the Supreme Court of Canada's decision in Holland, which was released after oral argument on the appeal. Counsel also provided further submission after the Supreme Court of Canada refused leave to appeal in Sauer v. Canada (Attorney General), [2007] O.J. No. 2443, 225 O.A.C. 143 (C.A.), leave to appeal to S.C.C. refused [2007] S.C.C.A. No. 454. In my view, neither case assists the appellants.

[49] Sauer concerned a proposed class action by cattle farmers relating to Canada's regulation of cattle feed to prevent mad cow disease. This court upheld the motion judge's conclusion that it was not plain and obvious that the plaintiff's allegation of a duty of care could not succeed. [See Note 7 below] The motion judge's reasons regarding the action against Canada, as opposed to the action against the manufacturer, were contained at para. 91, where he stated that whether the government's actions concerned policy or operational decisions required a more complete evidentiary record. The question of proximity was advanced on appeal. On that issue, this court found a sufficient pleading of proximity, at para. 62, on the basis of the many express "public representations by Canada that it regulates the content of cattle feed to protect commercial cattle farmers among others" (emphasis added). Accordingly, the

2008 ONCA 660 (CanLII)

result in Sauer depended on the allegation of specific representations by the government that it was acting in the interests of the plaintiffs. On this basis, Sauer is distinguishable because the appellants in this case do not plead any specific representations by Health Canada that it was acting to protect the particular interests of the consumers of breast implants.

[50] In Holland, the appellants, a group of game farmers, brought a claim against the federal government regarding a federal program that required each farmer to sign a broadly worded release in order to maintain his or her herd certification status. On judicial review, the releases were declared invalid; nonetheless, the [page53 ]government did not restore the farmers' certification status. The game farmers sued, seeking a remedy for their financial losses and pleading, among other causes of action, the tort of negligence. Their claim was struck and they appealed to the Supreme Court. McLachlin C.J.C., writing for the court, characterized the major focus of the claim as one for breach of statutory duty because the allegations concerned the government's failure to act within the authorizing acts and regulations. The Supreme Court ruled that this aspect of the claim disclosed no cause of action in tort, and that the proper remedy was judicial review. Even if proximity were established, wrote the Chief Justice, residual policy considerations militated against recognizing such a cause of action. At para. 9, McLachlin C.J.C. reaffirmed the principle in Saskatchewan Wheat Pool that there is no recognized category of a duty of care for breach of statutory duty. In contrast, the court held that the government's alleged breach of the order given on judicial review merited an evidentiary hearing, since it pleaded a recognized cause of action of negligent failure to implement a judicial decree.

[51] Accordingly, I would reject the appellants' claim that courts have previously recognized a duty of care arising from relationships of proximity analogous to the appellants' relationship with Health Canada. Indeed, in my view, to the extent the claim alleges breach of a statutory duty, such a claim has already been recognized as attracting immunity. Nonetheless, for completeness, I will undertake the Anns

2008 ONCA 660 (CanLII)

inquiry to determine whether a novel duty of care should be recognized in the circumstances of this case.

> (c) Have the appellants satisfied stage one of the analysis?

[52] The first stage of the Anns test engages both foreseeability and proximity. It was reasonably foreseeable that unsafe breast implants could cause harm to consumers. Thus, the sole issue is whether the appellants' pleadings establish a relationship of proximity.

> (i) Does the statutory scheme support a relationship of proximity?

[53] A relationship of proximity was described by the Supreme Court of Canada in Hercules Management Ltd. v. Ernst & Young, [1997] 2 S.C.R. 165, [1997] S.C.J. No. 51, at para. 24, as one "of such a nature that the defendant may be said to be under an obligation to be mindful of the plaintiff's legitimate interests in conducting his or her affairs". In Cooper, at para. 34, McLachlin C.J.C. and Major J. stated that determining [page54 ]the closeness of a relationship may involve "looking at expectations, representations, reliance, and the property or other interests involved". These factors help inform whether "it is just and fair having regard to that relationship to impose a duty of care in law upon the defendant": see also Syl Apps, at para. 26.

[54] However, since Cooper held that a relationship of proximity between a plaintiff and a government must be found in the governing statute, I begin with the legislative framework. As I have already noted, the umbrella statute of the Department of Health Act, at s. 4, provides that the Minister's obligations are to the people of Canada for the promotion of their health and the prevention of risk generally. Thus, under this statute, the Minister's duty is to the people of Canada as a whole, not to individual residents.

[55] The Minister of National Health and Welfare emphasized Health Canada's duty to the public as whole in 1953, when he first introduced the FDA. He also noted that the legislation depended upon the co-operation of the industry:

2008 ONCA 660 (CanLII)

The purpose of the bill of course is to protect the Canadian
people in matters of health . . . The administration of the
measure depends upon the co-operation that the officials of
the department are able to enjoy with industry . . . The bill
is concerned with the prohibition of things that are
injurious to health and that are unfit for use, and with the
prevention of deception in the manufacture and sale of goods
consumed by the public.

See the House of Commons Debates, Vol. IV (April 21, 1953) at
p. 4141 (Hon. Paul Martin).

[56] Importantly, s. 19 of the FDA, which deals directly with
the safety of medical devices, explicitly places the obligation
for the safety of the devices on the manufacturer and
distributor when it says "no person shall sell" any unsafe
device. As the motion judge concluded, no obligations are
placed on the government.

[57] The regulations in force during the time frame defined
by the appellants simply particularized and provided mechanisms
to enforce compliance with the legislation's objective. A
reading of the legislative history of the regulations discloses
that there was no obligation on Health Canada to undertake
safety and efficacy testing, or to engage any other compliance
or enforcement mechanism. The regulations simply authorized
Health Canada to enforce the various aspects of the compliance
requirements if it chose to do so. Thus, Health Canada was akin
to an overseer or watchdog, able to employ discretionary, but
not mandatory, enforcement of the legislative scheme. Having
the means to enforce compliance does not translate into an
obligation to do so: see Street v. Ontario Racing Commission,
(2008), 88 O.R. (3d) 563, [2008] O.J. No. 37 (C.A.), at
para. 18. Like the FDA, the regulations mandate that the
medical devices industry is responsible for [page55 ]product
safety, a responsibility that has become increasingly rigorous
over time. The government, like the consumer, depends on the
manufacturer to ensure product safety.

[58] The regulations in this case did not require proof of
safety before the sale of a device. In cases of safety concerns

brought to the Minister's attention, Health Canada had the discretion, not the obligation, to request specific testing. As well, the statutory scheme did not provide a complaints process that may have suggested a legislative intent to import a private law duty of care. Neither did the scheme provide for a compensation fund similar to those maintained by some professional regulatory bodies, a provision that also may have suggested an intention to assume responsibility for consumer welfare.

[59] Since an examination of the legislative scheme reveals that no duty is placed on Health Canada, and all obligations are on the industry, I conclude that the statute signals an intention that the government's duty is owed to the public as a whole, not to the individual consumer.

[60] I find support for this conclusion from two other decisions, both of which also considered circumstances that involved public safety regulation. Eliopoulos involved a claim against Ontario's Minister of Health for breach of an alleged private law duty of care to an individual plaintiff to control the spread of the West Nile Virus. Sharpe J.A., writing for this court, concluded that it was plain and obvious that there was no such duty because the Minister's powers under the Health Protection and Promotion Act, R.S.O. 1990, c. H.7 were discretionary and the Minister's duties were owed to the public at large, not to the individual. Hence, there was no proximate relationship.

[61] Similarly, in Klein, Chapnik J., writing for the Divisional Court, concluded, at para. 33:

  Finally, we agree with the submission of the appellant that it is impossible for Health Canada to regulate on behalf of individuals directly. Health Canada is not the manufacturer of the device, nor a physician, hospital or supplier. The manufacturer is responsible for the manufacturing process and labeling for each particular device, as well as the conditions for its intended use . . . Health Canada is only one player in the complex regulatory and delivery scheme governing medical devices in Canada. It has no direct role in

2008 ONCA 660 (CanLII)

the commercial transaction or the medical decision-making
that leads to individual use. The duties of care toward the
patient or consumer are qualitatively different from any
public duty owed by Health Canada as the government
regulator.

[62] Finally, I am not persuaded that the absence of an
immunity clause in the legislation is indicative of a
relationship of proximity between the appellants and Health
Canada. Given the plain language of the legislative scheme, no
intention to impose a private law duty of care can be inferred.
[page56 ]

            (ii) Did Health Canada's interaction with the
                 appellants create a relationship of proximity?

[63] I turn to consider the appellants' further argument that
a relationship of proximity can be established by operational
conduct outside the statutory framework based on the
interaction between the parties.

[64] A discussion of the ways that plaintiffs interact with
government can overlap with stage-two policy considerations
because operational decisions are more likely to involve
interaction than policy decisions. However, at the first stage
the discussion focuses on the parties' expectations,
representations and reliance, which informs the degree of
closeness that is essential for a proximate relationship.

[65] When the government interacts with an individual in the
context of an ordinary accident, the relationship is obviously
both close and direct. In contrast, when government decides
what laws to enact or how to allocate limited resources for the
general good, it has neither a close nor direct relationship
with the individual. The job of the government is to govern
and, in the course of doing so, to make broad-based policy
decisions for the benefit of the public collectively, even if
those decisions may not have positive implications for all
individuals. It would severely curtail the government's ability
to govern if it were found to have the necessary direct and
close relationship to an individual member of the public to
support a claim in tort for bad government policy decisions. It

2008 ONCA 660 (CanLII)

is accepted that, if the government fails to make good decisions in these areas, the public will demonstrate its displeasure at election time. Thus, the law is clear that the government does not have a proximate relationship to an individual Canadian when it makes decisions of a political, social or economic nature: see A.O. Farms Inc. v. Canada, [2000] F.C.J. No. 1771, 28 Admin. L.R. (3d) 315 (T.D.).

[66] However, once the government has direct communication or interaction with the individual in the operation or implementation of a policy, a duty of care may arise, particularly where the safety of the individual is at risk. If, for example, a government decides to issue a warning about a specific danger, in this case medical devices, or to make representations about the safety of a product, the government may be liable for the manner in which it issues that warning, or the content of those representations, especially where the government disseminates the warning or representation knowing that the individual consumer will rely on its contents and the individual does so. [page57 ]

[67] For example, Goudge J.A. found that a proximate relationship was pleaded in Sauer on the basis of specific public representations made by Canada that it was acting to protect the interests of the commercial cattle farmers. The Supreme Court in Finney also found a duty of care where a clearly identifiable complainant directly interacted with the Barreau in the context of its professional complaints process. Accordingly, a duty of care can be assumed and evidenced by the interaction between the parties, depending on the closeness of the relationship.

[68] In my view, there is no allegation of such representations by Health Canada in this case that are capable of supporting a relationship of proximity. Accepting the pleading that Health Canada knew the implants were dangerous for all consumers, knowledge alone is insufficient to found a private law duty of care. In this case, it is not pleaded that Health Canada knew, or ought to have known, that the appellants -- as opposed to unknown members of the general public -- were relying on it to ensure product safety: see Rivtow Marine Ltd.

2008 ONCA 660 (CanLII)

v. Washington Iron Works, [1974] S.C.R. 1189, [1973] S.C.J. No.
126, at pp. 1196-97 S.C.R. In other words, a relationship of
proximity is still necessary to support a duty of care.

[69] Apart from a bald pleading that the appellants relied on
Health Canada for the safety of the breast implants, no facts
are pled to support any reliance. Moreover, there is no
suggestion of any direct reliance. Even if the appellants could
be said to have placed general reliance on Health Canada based
on its role as regulator, that reliance was not evidenced by
any pleaded communication and was not pled to be within the
reasonable expectations of the parties. Health Canada provided
no direct service to the appellants and had no contact with
them. This lack of a relationship is evident from the fact that
Health Canada did not keep, and was not mandated to keep, any
record of individuals who received implants. It had no
mechanism to notify such individuals about product defects or
recalls. Those responsibilities were placed on the
manufacturer. Moreover, the fact that Health Canada's only
method of notification to the public would be by public notice
supports the conclusion that the duty was public, rather than
private, in nature. In addition, as I have observed, the
statutory framework included no complaints mechanism such as
those often provided for professional regulatory bodies. Thus,
the appellants never raised and had no procedure for
registering a complaint with Health Canada.

[70] In this case, the legislation put the duty on the
medical device industry to ensure the safety of its products,
to track product complaints, to recall dangerous products and
to warn [page58 ]consumers. Moreover, there was no interaction
with Health Canada that could have led the appellants to
believe Health Canada had assumed a private law duty of care
for product safety. Nothing in the relationship between the
parties would lead an individual to assume a government product
guarantee. Rather, the appellants' expectations and reliance
would have been on their medical advisors, the hospital, the
manufacturer and the distributor of the device. I would
conclude that the pleaded facts in this case do not support a
finding of proximity through interaction.

2008 ONCA 660 (CanLII)

[71] Finally, in this case, Health Canada's 2007 Web site was referenced in the appellants' factum. However, the appellants did not refer to the Web site in their pleadings or allege reliance on that Web site. Nor could they since the relationship is assessed at the earlier time of the alleged tortious conduct. Accordingly, the Web site interaction is irrelevant to this case.

        (iii) Conclusion on proximity

[72] This is not a case where Health Canada is alleged to have provided a direct misrepresentation or performance assurance to the individual consumers regarding the present and long-term safety of the medical device. Rather, this is a case where Health Canada acted within its mandate in exercising its discretion regarding the enforcement of its regulatory regime. It had no interaction with the appellants in the course of that role. In those circumstances, in my view, the motion judge correctly concluded that it was plain and obvious that the appellants failed to frame a cause of action capable of establishing proximity. I observe that there was no suggestion that further amendments to the claim could correct the deficiency.

        (d) Have the appellants satisfied stage two of the analysis?

[73] If I am wrong about the absence of a proximate relationship, I would find that the imposition of a duty of care is negatived in any event under the second stage of the Anns test by residual policy considerations reflecting the broad societal and legal implications of imposing a duty of care: see Cooper, at para. 37 and Holland, at para. 10. The relevant policy considerations include the spectre of indeterminate liability, the chilling effect of the imposition of a duty of care in the public health context and the distinction between policy and operational conduct.

[74] I turn first to consider the spectre of indeterminate liability. Indeterminate liability, in my view, is the most relevant policy consideration because the imposition of a duty of care in this case may result in the government becoming the virtual insurer of [page59 ]medical devices. The appellants

argue that indeterminate liability is not a concern because the
number of affected consumers in this proceeding is relatively
contained. However, Health Canada's responsibilities extend far
beyond the regulation of the specific devices at issue in this
case to the regulation of thousands of other devices. In
addition, potential liability could extend from medical devices
to other products regulated under the FDA, such as food, drugs
and cosmetics, as well as to many other regulatory regimes. It
follows that the imposition of liability on the public purse
would place an indeterminate strain on available resources.
Accordingly, in my view, the prospect of indeterminate
liability weighs against the imposition of liability in this
case.

[75] A second, residual policy consideration is the potential
chilling effect on public health if Health Canada is held to
owe a private law duty of care to the individual consumer. In
making decisions about whether medical devices should be
available in Canada, Health Canada must weigh the need of some
individuals to obtain relief from suffering (and sometimes
death), despite the risks of a particular device, with the
desire of others to avoid all risk, no matter the consequences.
In doing so, Health Canada is obliged to consider the needs of
the public at large in determining whether a device meets the
minimum requirements for sale and/or distribution in Canada.
Health Canada argues that the imposition of liability would
distract it from its predominant mandate of establishing public
health priorities. If liability is imposed, it argues, Health
Canada may be inclined to limit the number of devices available
for the consuming public in order to ensure the absolute safety
of all potential individual consumers and protect itself from
liability. Such a result could frustrate access to medical
treatment for those who choose to assume the risk of a
particular medical treatment. In addition, the imposition of
liability could also discourage medical advances and innovative
technologies, which often come with risks and without
guarantees regarding their long-term consequences. This result
would be contrary to public health principles and detrimental
to the collective public interest. This argument is persuasive;
however, in my view, it is weakened by the absence of
information at this stage of the proceeding about any balancing

2008 ONCA 660 (CanLII)

of public health interests that was undertaken by the
government in the pleaded circumstances of this case.

[76] Finally, I turn to the distinction between government
policy and the execution or operation of that policy. It is
often difficult to distinguish between the two. That is so in
this case. The impugned conduct could possibly be characterized
as either policy or operational conduct. At this early stage of
the proceeding, [page60 ]when the only allegations are those
contained in the statement of claim, it is unclear which is the
more accurate characterization. However, in my view, it is
unnecessary to make a final determination on this issue to
reach a conclusion regarding the second stage policy
considerations.

[77] Particularly, in light of the spectre of indeterminate
liability, in my view, the second-stage policy considerations
negative the imposition of government liability.

[78] I conclude by observing that, if regulatory bodies are
held liable in negligence, and are required to pay the
complainant's damages, this could lead to decreased vigilance
by the regulated entity, in this case the manufacturer,
importer and distributor of the product. Diminished deterrence
for a regulated industry is to be avoided particularly when it
is the industry, and not the regulator, that holds critical
knowledge regarding product safety. Yet, as governments
increase their regulatory functions, they may increasingly be
seen as providing a service to members of the public upon which
individuals may reasonably rely. This will particularly be the
case if individuals are given governmental assurance, through
Web sites, representations or otherwise, about matters such as
the safety of products. In those circumstances, providing the
government with immunity for regulatory negligence may be seen
to act as a disincentive for responsible regulation of industry
compliance. While the circumstances of this case do not
directly raise these considerations, absent clear legislative
guidance from Parliament, it may be necessary to address them
in the appropriate case.

The costs appeal

2008 ONCA 660 (CanLII)

[79] The appellants appeal the costs disposition of $125,000, arguing that the award was excessive in the circumstances, including the divided success below, the novelty of the claim and the claim's public interest nature. They also argue that the costs consequences should reflect the timing of the motion to strike. On this point, I would accept the submission of counsel for the respondents that the inclusion of the motion to strike in the certification motion was made at the direction of the class proceedings judge. Regarding quantum, while by no means determinative, I observe that the costs award, while high, was made in the context of a costs claim by the respondents for $1,074,448.20.

[80] In making his costs disposition, the motion judge was alive to and properly applied the relevant principles set out by Rosenberg J.A., for this court, in Pearson v. Inco Ltd. (2006), 79 O.R. (3d) 427, [2006] O.J. No. 991 (C.A.), at para. 13. In my view, it was [page61 ]open to the motion judge to conclude that the proceeding was not in the public interest and did not raise issues of such a novel nature as to justify a different costs disposition. Since the appellants have failed to persuade me of any error in principle in the motion judge's costs determination, I would not interfere with his exercise of discretion. I would dismiss the appellants' costs appeal.
VI. Conclusion

[81] For these reasons, I would dismiss the appeal. Since the appellants have advanced no basis upon which they could save their claim, and their reply has already served as an amended statement of claim, I agree with the motion judge that there is no purpose in granting leave to amend. Finally, given the result, it is unnecessary to consider the cross-appeal regarding s. 5(1)(b) through (e) of the CPA.
VII. Costs

[82] The respondents are entitled to their costs of the appeal, which I would fix at $40,000, inclusive of disbursements and Goods and Services Tax.

Appeal dismissed.

Notes

----------------

Note 1: This appeal was heard immediately after a similar
appeal of Drady v. Canada (Minister of Health), [2007] O.J. No.
2812, 2007 CanLII 27970 (S.C.). The reasons in both appeals are
being released together.

Note 2: The appellants plead that by the 1980s, Dow Corning's
breast implants were failing 5 to 32 per cent of the time and
that the high failure-rate was well known because, between 1970
and 1985, Dow Corning implemented a policy of providing free
replacements for recipients.

Note 3: The FDA, S.C. 1952-53, c. 38.

Note 4: Prior to an amendment in 1969, the definition of
"device" in the FDA, S.C. 1952-53, c. 38 was restricted to those
items "for use in the diagnosis, treatment, mitigation or
prevention of a disease, disorder, abnormal physical state, or
the symptoms thereof, in man or animal". Accordingly, the Act
regulated only breast implants for reconstruction, and not
breast implants for augmentation. In the FDA, R.S.C. 1970, c.
F-27, the definition of "device" was broadened to include those
items used for "restoring, correcting or modifying a body
function or the body structure of man or animal", thereby
including breast implants for augmentation in the regulatory
scheme.

Note 5: That referance no doubt occurred because other live
issues on the certification motion made it entirely appropriate
to reference all the pleadings.

Note 6: I note that the Klein decision was based on the more
recent medical device licensing scheme provided for in the
current regulations.

Note 7: The motion judge's reasons were reported at (2006), 79
O.R. (3d) 19, [2006] O.J. No. 26 (S.C.J.).

- - - - - - - - - - - - - - -

2008 ONCA 660 (CanLII)