UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


IN RE:  XARELTO (RIVAROXABAN)  *
PRODUCTS LIABILITY LITIGATION  *      Docket No. 14-MD-2592
                               *
                               *      Section L
THIS DOCUMENT RELATES TO:      *
                               *      New Orleans, Louisiana
*Joseph Orr, et al.*           *
*v. Janssen Research &*        *      May 24, 2017
*Development, et. al.,*        *
Case No. 15-CV-3708            *
                               *
* * * * * * * * * * * * * * * *


TRANSCRIPT OF PRETRIAL CONFERENCE
BEFORE THE HONORABLE ELDON E. FALLON
UNITED STATES DISTRICT JUDGE


<u>Appearances:</u>


For the Plaintiffs:          Levin Papantonio Thomas Mitchell
                               Rafferty & Proctor, P.A.
                             BY:  BRIAN H. BARR, ESQ.
                             316 South Baylen Street, Suite 600
                             Pensacola, Florida  32502


For the Plaintiffs:          Beasley Allen Crow Methvin
                               Portis & Miles, PC
                             BY:  ANDY BIRCHFIELD, ESQ.
                             Post Office Box 4160
                             Montgomery, Alabama 36103


For the Plaintiffs:          Herman Herman & Katz, LLC
                             BY:  LEONARD A. DAVIS, ESQ.
                             820 O'Keefe Avenue
                             New Orleans, Louisiana 70113

Appearances:

| | |
|---|---|
| For the Plaintiffs: | Gainsburgh Benjamin David<br>  Meunier & Warshauer, LLC<br>BY:  GERALD E. MEUNIER, ESQ.<br>1100 Poydras Street, Suite 2800<br>New Orleans, Louisiana 70163 |
| For Bayer Healthcare<br>Pharmaceuticals, Inc.<br>and Bayer Pharma AG: | Wilkinson Walsh + Eskovitz, LLP<br>BY:  BETH A. WILKINSON, ESQ.<br>1900 M Street NW, Suite 800<br>Washington, DC 20036 |
| For Janssen Pharmaceuticals,<br>Inc. and Janssen Research &<br>Development, LLC: | Irwin Fritchie Urquhart<br>  & Moore, LLC<br>BY:  JAMES B. IRWIN, ESQ.<br>400 Poydras Street, Suite 2700<br>New Orleans, Louisiana 70130 |
| For Janssen Pharmaceuticals,<br>Inc. and Janssen Research &<br>Development, LLC: | Chaffe McCall, LLP<br>BY:  JOHN F. OLINDE, ESQ.<br>1100 Poydras Street, Suite 2300<br>New Orleans, Louisiana 70163 |
| Official Court Reporter: | Toni Doyle Tusa, CCR, FCRR<br>500 Poydras Street, Room B-275<br>New Orleans, Louisiana 70130<br>(504) 589-7778 |

Proceedings recorded by mechanical stenography, transcript
produced by computer.

1  <u>**PROCEEDINGS**</u>

2  **(May 24, 2017)**

3  (The following proceedings were held in chambers.)

4  **THE COURT:**  Be seated, please.  This is the pretrial

5  conference.  I have received a pretrial order from you all.  I

6  didn't see any particular thing that caught my eye, the

7  materials in it.  I have to do the motions in limine.  I just

8  got the responses, so I'm not going to be able to give you any

9  information here.

10  Do you all have the information from the

11  plaintiffs that you need?

12  **MR. IRWIN:**  I know we got the images yesterday,

13  Judge.

14  Thank you all.  We are still looking at them to

15  make sure because sometimes those images, we know, get

16  corrupted, ours do, and so we are looking at that.

17  **MR. BARR:**  I think we are flawless.

18  **MR. IRWIN:**  I knew that.

19  **THE COURT:**  In addition to the pretrial, I would like

20  to talk with you all about the jury questionnaires.  Anything

21  on the pretrial that anybody is concerned about?

22  **MR. BIRCHFIELD:**  There is one issue.  I understand

23  your ruling on the motions in limine, you are still addressing

24  that, but on the issue with Frank Smart -- and there's a motion

25  in limine pending.  This is not directly related to that.  For

10:57

1   the defendants, on their exhibit list, there's not any exhibits
2   pertaining to that issue with Frank Smart, but there is just a
3   catch-all that the defendants reserve any exhibits that may be
4   used for impeachment purposes.  I think that if there is an
5   exhibit that addresses that, then it should be disclosed.  It
6   should be on the exhibit list.
7                   He was asked about this issue in his deposition,
8   if he has ever been investigated by a human resource
9   department, and he says not to his knowledge.  It would be
10  unfair to lay in wait and use an exhibit that he may not even
11  be aware of.  So if there is an exhibit, it should be
12  disclosed, it should be on the exhibit list, is our position on
13  that.
14           **MS. WILKINSON:**  Your Honor, I'm going to be crossing
15  Dr. Smart.  I understand what he is saying.  I don't plan to go
16  into any of that.  I would be happy to say that I will go
17  back -- I'm not aware of any document.  I will go back and see
18  if there is one.  Also, I won't bring up any of those topics so
19  that you don't have to decide.  If I think I need to, I will
20  consult with Andy first, and then we will bring it to your
21  attention.  I don't see us going into that on cross.
22           **MR. BIRCHFIELD:**  Okay.  Thank you.
23           **MR. MEUNIER:**  Your Honor, generally on that same
24  issue of opening statements, once you have issued your rulings
25  on the motions in limine, to the extent there are reservations

10:58   1   or even definitive rulings, what we discussed doing is the
2   sides conferring and deciding on certain issues that should not
3   be brought out in opening given your reservation of your other
4   rulings on the motions in limine.  I'm confident we will decide
5   what's out of bounds on our own.  But if we need you, we may
6   have to call you in, just for ground rules, just to avoid
7   objections during opening statements.

8           THE COURT:  With regard to the openings and exhibits,
9   if there be any, I would like each of you all to have an
10  opportunity to see them.  If they are going to use them, take a
11  look at them first.  If you are going to use them, take a look
12  at them first.

13          Closing argument, I know, is a little bit
14  different, giving up your strategy and that sort of thing, but
15  in opening statements it's a critical thing.  I don't want to
16  give the jury something or an impression that is improper.
17  Just in weighing that, it's better for each side to look at it.
18  If you have an objection, the objection is a veto.  You don't
19  have to come to me.  If it's objectionable, don't use it.  If
20  it isn't objectionable, fine.

21          MS. WILKINSON:  That's fine.  We are going to sit
22  down on Sunday and go through all of that, Your Honor.

23          MR. MEUNIER:  The other thing, Judge, we have a
24  stipulation for you.

25          MR. OLINDE:  We have a stipulation, Judge.  Here's a

11:00 1    copy for you and Hanne as well.  I'm going to send it to Hanne

2    by Word, but this is similar to the *Boudreaux* case where the

3    only claim at issue in the LPLA is going to be the failure to

4    warn.  The other claims will be dismissed.  That's what the

5    stipulation is.  Jerry and I have conferred with it, and he is

6    agreeable to it on the plaintiffs' side.

7              THE COURT:  You all know the witnesses they are going

8    to use?

9              MS. WILKINSON:  Generally, yes.  We have been having

10   good conversations back and forth, Your Honor, to narrow the

11   list.

12             THE COURT:  Again, the day before or whatever it is,

13   alert each other, and the same thing for when the defendants go

14   on the stand.  I like them to do that.

15             I'm halfway through the depositions.  I have

16   ruled on two of them.  I will give you the rest of them

17   hopefully today.

18             MR. IRWIN:  Your Honor, did you get to see our letter

19   on Alere we sent yesterday?

20             THE COURT:  I haven't looked at it yet, but it's

21   attached to the material.  That's one of the ones that I hadn't

22   finished yet.

23             MR. DAVIS:  We filed a response with the Court this

24   morning with that.

25             THE COURT:  Anything else on the pretrial that

anybody has?

MS. WILKINSON:   We do have one issue on a witness. Dr. St. Martin, the prescriber in this case, we are not sure where he is.   We have been talking to plaintiffs.   We don't know whether they have subpoenaed him.   If they haven't, we would like to.   We just wanted to know the status.

MR. BIRCHFIELD:   Right.   As I said last week, I talked to Jim.   I told him I wasn't sure if we had served a subpoena or not.   We have not.

MR. IRWIN:   Do you know where he is?

MR. BIRCHFIELD:   The best information that I have is that he is in Florida.

MR. IRWIN:   Do you know where in Florida?

MR. BIRCHFIELD:   Is it Orlando?   I don't know.

MS. JEFFCOTT:   He is at a condo in Florida.

MR. IRWIN:   Should I talk to you about that?

MS. JEFFCOTT:   Yes.

THE COURT:   If you know, let's try to locate the guy.

MS. JEFFCOTT:   We will talk.

THE COURT:   I was hoping we would get a better play. We had some problems with this one, so I have got to take that into consideration when we get to Mississippi.   I have the people coming over from Mississippi on Tuesday --

On Friday, Dean?   When are they coming?

THE DEPUTY CLERK:   Some of them Friday and a couple

1   more would be on Wednesday.

2          THE COURT:  This is the staff and clerk's office so

3   that we don't have any issues and that sort of thing.

4              Okay.  We are going to the jury questionnaires.

5   This is the second phase of the jury.  The last time I was a

6   little concerned that we did not have enough.  I think we

7   hopefully have had enough.  In any event, just to be safe, we

8   had another 20 or so come in and fill out the same

9   questionnaire.  I have given it to you to look over.

10             The first one I didn't see any problem with,

11   Susan Alexander.  She is 64, high school educated,

12   administrative assistant in sales.

13          MS. WILKINSON:  We agree, Your Honor.

14          MR. BIRCHFIELD:  No issue.

15          THE COURT:  The second one concerned me a bit.

16          MS. WILKINSON:  She works off 100 percent commission.

17          THE COURT:  Stephanie Chambliss.  Also some of the

18   other areas, 39, 40, and 46.

19          MR. BIRCHFIELD:  Judge, if I could on Chambliss, I

20   see that about the 100 percent commission and doesn't get paid.

21   Along the lines of what you have discussed in the prior ones,

22   this is not a contract employee.  She is a financial

23   consultant.  She is a supervisor.  She is higher level.  For

24   those hardships at work, I think she is one we should bring in.

25   I mean, it may be that it's truly hard, but being a supervisor,

11:04   1    being a higher level employee, I would rather bring her in.

2              THE COURT:  I don't have any problem with it.  From

3    the standpoint of the defendants, focus on 39.  She says, "I

4    don't trust the FDA."  That's something ought to be fleshed out

5    a bit.  40, best friend, college, died of cancer, something

6    about an insufficient doctor.  Also, 41 is a problem.  Question

7    her on that.  I will bring her in.  There's another one.  46

8    concerned me a little bit, at least from the standpoint "I

9    heard Xarelto causes internal bleeding."  That ought to be

10   pursued with her.

11             The next one, Eleanor Daveron, she has got some

12   issue.

13             MS. WILKINSON:  She has a wedding anniversary.

14             THE COURT:  "Plan to be out of state June 12 through

15   18, wedding anniversary."

16             MR. BIRCHFIELD:  Judge, that is really beyond the --

17   we should be done.  We should be done with our trial.  That

18   would be beyond the two weeks.

19             THE COURT:  June 12?  What do you think?

20             MS. WILKINSON:  I don't think we can say that because

21   if we are going to take two weeks, they have to deliberate.

22   That would be the following Monday.  I don't think we could cut

23   it that close.

24             MR. BIRCHFIELD:  She's out of town for a -- I mean,

25   it's not like a prepaid vacation.  Does she have some wiggle

1   room on a day or two?  I think we ought to at least bring her

2   in and hear from her.

3        MS. WILKINSON:  She is a doctor.  It's her wedding

4   anniversary for a week.  Bringing in someone who is telling you

5   that in advance --

6        MR. BIRCHFIELD:  Having a doctor that is better

7   equipped to understand these issues -- I just have some

8   hesitation about just excusing her for cause just based on a

9   trip out of state that will very likely be beyond the trial

10  date.

11       THE COURT:  Let's do this.  I'm very concerned about

12  her, though, and I'm likely going to excuse her.  I will bring

13  her in just to flesh it out.  This is one I'm concerned about.

14            Hunter Ely.

15       MS. WILKINSON:  He has some issues, Your Honor, but

16  I'm not sure that they are at this point -- he says he works

17  with medical school quite a bit.  He sits on a clinical

18  compliance committee.

19       MR. BIRCHFIELD:  He says he notes that and wants the

20  parties to be aware of that.  He does not think it will affect

21  his impartiality.  I don't have strong feelings either way on

22  him.

23       MS. WILKINSON:  He works with Dr. Kahn at Tulane.  My

24  guess is he is going to come in and get off, but --

25       THE COURT:  Get him in?  Okay.

11:07  1      **MS. WILKINSON:**  -- it can't hurt to bring him in.

2      **THE COURT:**  All right.  Mark Homburg, 42.  He has a

3  GED.  Unemployed.  16 concerned me.

4      **MS. WILKINSON:**  I think he is employed, Your Honor.

5  He is a general manager, and he says it will be hard to be away

6  from his job all day.  That's all he says.

7      **MR. BIRCHFIELD:**  He oversees the day-to-day

8  operations, so he would be higher level.  It's hard to be away

9  from his work for that long.  He asked if the trial would be

10  all day.

11      **MS. WILKINSON:**  I mean, if we are not going to get

12  rid of Stephanie Chambliss --

13      **THE COURT:**  Let's bring him in.

14          The next one, Louis Lascola, he is unemployed.

15  I was concerned about page 16, blood clot, mother.  I don't

16  know whether that's excluding for the person, but at least you

17  ought to know about that.  What's your view?  Anything?  Do you

18  want to bring him in?

19      **MS. WILKINSON:**  I didn't see any hardship there,

20  Your Honor.

21      **THE COURT:**  Okay.  Let's bring him in.

22      **MR. BIRCHFIELD:**  He didn't claim a hardship.

23      **THE COURT:**  Karen Lay.

24      **MS. WILKINSON:**  She does claim a hardship for a

25  vacation planned for June 2.

11:09    1          **MR. BIRCHFIELD:**  I agree.  She should be excused,

2    Your Honor.

3          **THE COURT:**  Are you okay with that?

4          **MS. WILKINSON:**  Yes, sir.

5          **THE COURT:**  Let's excuse her, then.

6                Pierce.  I didn't see anything on Pierce, but I

7    did notice something on page 16.

8          **MR. BIRCHFIELD:**  He said it would only be a problem

9    if the jury was sequestered.

10          **THE COURT:**  Look at 16, though, when he says

11    gastrointestinal bleeding, father, ulcers.

12          **MS. WILKINSON:**  Taking a blood thinner.

13          **THE COURT:**  Just question him on that.

14                Pitts.

15          **MS. WILKINSON:**  She asked for a hardship, Your Honor,

16    because she is retiring and her replacement that she is

17    supposed to train is coming in on May 30.  She said she has

18    back and knee problems which will affect her service.  I think

19    we should excuse her.

20          **MR. BIRCHFIELD:**  I agree with that.

21          **THE COURT:**  We will excuse her, then.

22                Roberson, 65.

23          **MS. WILKINSON:**  She is traveling 90 miles a day,

24    missing work, and doesn't feel safe in the city.

25          **THE COURT:**  This is one that I think if we pick her,

11:10  1   it would be a problem.

2            MS. WILKINSON:  Yes.

3            MR. BIRCHFIELD:  I'm good with excusing her.

4            THE COURT:  Let's excuse Roberson.

5                Smith, a notary, you usually see that in France.

6   Only in Louisiana can somebody say they have a full-time job as

7   a notary.

8            MS. WILKINSON:  She says she is a contract worker and

9   serving up to three weeks, she will make zero income.

10            MR. BIRCHFIELD:  I think she should be excused,

11   Your Honor.

12            THE COURT:  Are you okay with that?

13            MS. WILKINSON:  Yes, sir.

14            THE COURT:  Sziber, high school, maintenance repair,

15   65.

16            MS. WILKINSON:  She should be excused.  She is taking

17   care of her mother with dementia.

18            MR. BIRCHFIELD:  I think it's a he.

19            MS. WILKINSON:  He.  I'm sorry.  You are right.

20            MR. BIRCHFIELD:  I agree.

21            THE COURT:  That one is excused, then.

22                Vladimir Thomas.

23            MS. WILKINSON:  He despises attorneys.

24            MR. BIRCHFIELD:  He despises attorneys and he is

25   going to law school.  I don't see any reason to not bring him

11:11  1    in.

2              MS. WILKINSON:  You want to bring him in?

3              THE COURT:  Bring him in?

4              MR. BIRCHFIELD:  Yes.  I think we have to see this

5    guy.

6              THE COURT:  Richard Vail, college, attorney.

7              MR. IRWIN:  Judge, you know Rick Vail.

8              THE COURT:  Do you want him in or out?

9              MR. IRWIN:  I think he probably should be out.

10             MR. MEUNIER:  I would agree.

11             THE COURT:  Everybody okay with excluding him?

12             MR. BIRCHFIELD:  Yes, Your Honor.

13             THE COURT:  Let's exclude Rick Vail.

14                  Waltzer, I'm going to excuse him.

15             MR. IRWIN:  You know Miriam, right, Judge?

16             MS. WILKINSON:  Yes.

17             THE COURT:  Miriam and Bruce and everybody.

18             MS. WILKINSON:  He also said he couldn't sit in

19    judgment of others.

20             THE COURT:  Right.

21             MR. IRWIN:  That was not a problem for Miriam.

22             THE COURT:  Okay.  The ones I have excused are

23    Eleanor Daveron --

24             MR. BIRCHFIELD:  Judge, I thought you agreed to bring

25    her in.

11:13   1          **MS. WILKINSON:**  You said you were likely --

2          **THE COURT:**  That's right.  You're right.  We will

3     bring her in.  I'm likely.

4                Karen Lay is excused.  Janet Pitts is excused.

5     Brenda Roberson is excused.  Renee Smith is excused.  Michael

6     Sziber is excused.  Richard Vail is excused.  Noah Waltzer is

7     excused.  The others are not excused.

8          **MS. WILKINSON:**  Your Honor, could we go back to

9     Stephanie Chambliss?

10          **THE COURT:**  Yes.

11          **MS. WILKINSON:**  She says, "I can't afford to miss

12     three weeks of work, 100 percent commission, no salary."  Even

13     though she is a supervisor, that doesn't mean she has enough

14     money to be out of work for three weeks.  She is really very

15     similar to the other person that was excused that said they

16     can't afford it.  I just think it's a waste of time to question

17     a juror who is saying she has a financial hardship.

18          **MR. BIRCHFIELD:**  We have drawn a line of distinction

19     between those who are truly working paycheck to paycheck.  She

20     is a financial consultant.  She is an accountant.  She is a

21     supervisor.  I don't think that that rises to that level

22     without further questioning.  That's the line that we have

23     drawn in prior excusing of jurors, is it a day-to-day worker or

24     is it a higher level supervisory person that the Court has

25     shared reservations in letting them go without further

11:14 1   questioning.

2              THE COURT:  I'll bring her in.  I'll focus on that.

3   That is 33 and that could be an issue.  I would like to know

4   whether she's married, something about her to make --

5              MS. WILKINSON:  She is single, I believe.  Thank you,

6   Your Honor.

7              THE COURT:  Anything else from our standpoint?

8              MR. IRWIN:  Can we talk about the motion to quash on

9   Mr. Jalota?

10              THE COURT:  Yes.  Let's talk a little bit about that.

11   As I understand, the defendants take the position it's a little

12   different this time because his deposition was rather extensive

13   and that's an issue.  The plaintiffs take the position that

14   it's been over a year and a lot of water has come over the dam

15   since then.  What else do I need to know?

16              MR. IRWIN:  I always like to cite the judge, so I

17   went back and looked at your factors.  One of the factors was:

18   Who is he?  He is a senior director from global regulatory

19   affairs -- and I think these dates are very important to one of

20   your other factors -- from 2005 to 2012.  He was responsible

21   for Xarelto.  He moved off of Xarelto and was only involved

22   with Xarelto in an administrative capacity, like taking care of

23   people's expense reports.

24              The deposition was taken on March 3 and March 4,

25   2016.  What's happened since then is that, as I said, he has

11:16   1    since 2012 been in an administrative capacity.

2                    You mentioned expense and costs.  I don't think

3    that's an issue here, but I do think an important thing is

4    time.  We have a lot of expense and a lot of costs and very

5    little time, and we are spending a lot of time on this right

6    now that I think we could save on.

7                    Is there another witness who could do the job?

8    That was another factor, and I will get to that in a minute.

9                    Here are some numbers, Judge.  He was deposed

10   for two days.  It totaled up to be 16 hours of video deposition

11   testimony, 866 pages, 74 exhibits.  My friends across the table

12   have so far designated 14 company depositions for video

13   playback.  That totals -- because I said to David this morning,

14   "I have nothing else to do," I added up the time.  That totals,

15   of deposition testimony that's been designated by them and by

16   us in response, 29 hours and 32 minutes of deposition

17   testimony, which would be four trial days.  They did designate

18   Jalota's testimony in *Boudreaux*, but they only designated one

19   hour.  Of course, they did not use it.

20                   I think other considerations are this, Judge.

21   We know we had some issues with the technology in the

22   Philadelphia courthouse.  We are going to try to make those

23   better, but we are going to be at a different courthouse this

24   time.  We are going to be in a courthouse in Newark, I think,

25   so we are going to have to work through that to see if the

11:18   1   technology is going to be any better.  We know no matter what
2   the video feed technology is, it will never be as good as that
3   video deposition because we are going to be cycling I don't
4   know how many megabytes over the internet.  So it will never be
5   as good as that video deposition will be for that jury.
6            I think this is the bottom line.  To me the
7   bottom line is he was on this project from 2005 for 2012.  He
8   was deposed in March of 2016.  What is he going to be able to
9   say between March of 2016 and June of 2017?  How is he going to
10  be able to add to his testimony, considering the fact that he
11  hasn't worked on the project since then?
12           So I do think that's very different from
13  Mr. Peters in the *Boudreaux* case.  We have 16 hours of
14  videotape that we can work with, which I think would tell the
15  entire story that they need to tell.
16       **THE COURT:**  What's the other side of it?
17       **MR. BARR:**  Your Honor, I took Mr. Jalota's
18  deposition.  I guess I didn't realize it was 16 hours.  I guess
19  I had a lot of good questions.
20           The reality is live testimony is always
21  preferred to deposition testimony.  As much as Mr. Irwin wants
22  to talk about the video testimony, the deposition video is
23  always going to be better than live video testimony, my
24  experience -- and I think the experience of just about
25  everybody in this room -- is the interaction with the witness

11:19
1    live is always more interesting and more compelling for a jury

2    to watch.

3                   They watch the videos, and we have to play them

4    because we don't have a choice because they don't bring

5    witnesses.  If we want to play corporate people, we don't have

6    any choice but to play the videos, but the live testimony is

7    always preferred.  It's always better.

8                   As the person who examined Dr. Peters, I didn't

9    recognize any technological glitches.  There were no more

10   glitches in that examination than there are in any examination.

11   Witnesses always ask you to repeat questions.  "I didn't hear

12   that quite right."  There was nothing wrong with that.

13                  While I didn't prefer having him stare at the

14   back of my head -- I wouldn't want to do that either -- I

15   didn't notice that that was a problem.  We talk about he was

16   deposed in 2016.  He worked on Xarelto from 2005 to 2012.  I

17   think that underplays a little bit the role Mr. Jalota had.  He

18   was the primary person interacting with the FDA for that period

19   of time.  He was the regulatory affairs person on Xarelto.

20                  In the *Boudreaux* trial, as you know, the

21   interactions with the FDA became very important.  His testimony

22   live is very important to our case, particularly with all the

23   stuff he is on in that seven-year period he worked there.  Even

24   though he got deposed for 16 hours, you can't possibly cover

25   all of the material during that seven years that he would have

11:21  1   been involved in.  Our view in the case in 2016 is much

2   different than our view of it today.

3           I think him coming live -- and if you go look at

4   any of the deposition designations, his answers to a lot of

5   questions are "I don't know" and "I don't remember."  A jury

6   seeing that live or seeing if maybe his memory comes back to

7   him when he is testifying live, I think that's important.  I

8   think that provides good cause under Rule 43 to compel him to

9   come.

10           Judge, with respect to the logistics, I spoke to

11   Linda Golkow specifically about your concerns on the camera and

12   the angle.  She has assured me that that can be addressed.  I

13   have also asked her about that courthouse.  She told me she has

14   familiarity with it.  She is available, if need be.

15           **MR. IRWIN:**  Your Honor, when he was asked questions,

16   he was shown at his deposition documents from like 2014 and

17   2015, after he had cycled off.  Yes, he said, "Well, no, I

18   don't remember that.  I was not involved in that."  We are not

19   going to capture any new information now from this witness that

20   we put all of ourselves through between what happened in March

21   of 2016 and June of 2017.  We are going to capture nothing new.

22   That is the difference between this issue here today and the

23   issue that was before Your Honor in the Peters matter in

24   *Boudreaux*.

25           **MR. BARR:**  Your Honor, we just have a fundamental

11:22  1  disagreement that we are not going to capture anything new.  I

2  don't believe he was asked the first question about the use of

3  PT in the emergency room, the use of PT for urgent care,

4  discussions with the FDA on that.  I don't believe he was asked

5  any questions on that, and those would be a lot of the

6  questions he is asked in this courtroom.

7       **THE COURT:**  Do I have his deposition?

8       **MR. IRWIN:**  I can get you all 866 pages, Judge.

9       **THE COURT:**  Why don't you do that.  I understand the

10  issue.  I would look at it more closely.  Give me the

11  deposition and I will look at it.

12       Anything else we need?

13       **MS. WILKINSON:**  I have one thing, Your Honor, but it

14  could be off the record, if that's okay.

15       (Proceedings adjourned.)

16                    * * *

17                  <u>**CERTIFICATE**</u>

18       I, Toni Doyle Tusa, CCR, FCRR, Official Court
Reporter for the United States District Court, Eastern District

19  of Louisiana, certify that the foregoing is a true and correct
transcript, to the best of my ability and understanding, from

20  the record of proceedings in the above-entitled matter.

21

22

                    <u>*s/ Toni Doyle Tusa*</u>
23                  Toni Doyle Tusa, CCR, FCRR
                    Official Court Reporter

24

25