UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

```
IN RE:  XARELTO (RIVAROXABAN)  *        14-MD-2592
PRODUCTS LIABILITY LITIGATION  *
                               *        Section L
                               *
Relates to:  14-2669, 15-224   *        October 16, 2017
                               *
*  *  *  *  *  *  *  *  *  *  *  *  *  *  *
```

ORAL ARGUMENT BEFORE
THE HONORABLE ELDON E. FALLON
UNITED STATES DISTRICT JUDGE


<u>Appearances</u>:

```
For the Plaintiffs:        Gainsburgh Benjamin David Meunier
                             & Warshauer, LLC
                           BY:  GERALD E. MEUNIER, ESQ.
                           1100 Poydras Street, Suite 2800
                           New Orleans, Louisiana 70163


For the Plaintiffs:        Beasley Allen Crow Methvin
                             Portis & Miles, PC
                           BY:  ANDY D. BIRCHFELD JR., ESQ.
                           Post Office Box 4160
                           Montgomery, Alabama 36103


For the Plaintiffs:        Levin Papantonio Thomas Mitchell
                             Rafferty & Proctor, P.A.
                           BY:  BRIAN H. BARR, ESQ.
                           316 South Baylen Street, Suite 600
                           Pensacola, Florida 32502


For the Plaintiffs:        Levin Sedran & Berman
                           BY:  FREDERICK S. LONGER, ESQ.
                           510 Walnut Street, Suite 500
                           Philadelphia, Pennsylvania 19106
```

<u>Appearances</u>:

For the Plaintiffs:           Aylstock Witkin Kreis
                               & Overholtz, PLLC
                              BY:  NEIL D. OVERHOLTZ, ESQ.
                              Post Office Box 12630
                              Pensacola, Florida 32502


For the Defendants:           Chaffe McCall, LLP
                              BY:  JOHN F. OLINDE, ESQ.
                              1100 Poydras Street, Suite 2300
                              New Orleans, Louisiana 70163


For the Defendants:           Drinker Biddle & Reath, LLP
                              BY:  SUSAN M. SHARKO, ESQ.
                              600 Campus Drive
                              Florham Park, New Jersey 07932


For the Defendants:           Arnold & Porter Kaye Scholer, LLP
                              BY:  STEVEN GLICKSTEIN, ESQ.
                              250 West 55th Street
                              New York, New York 10019


For the Defendants:           Bradley Arant Boult Cummings
                              BY:  LINDSEY C. BONEY IV, ESQ.
                              1819 5th Avenue N
                              Birmingham, Alabama 35203


Official Court Reporter:      Toni Doyle Tusa, CCR, FCRR
                              500 Poydras Street, Room B-275
                              New Orleans, Louisiana 70130
                              (504) 589-7778



Proceedings recorded by mechanical stenography using
computer-aided transcription software.

<u>**PROCEEDINGS**</u>

**(October 16, 2017)**

1
2
3          **THE COURT:**  Hello.  Good morning everyone.  This is
4    Judge Fallon.
5               Who is on the line for the plaintiffs?
6          **MR. MEUNIER:**  Jerry Meunier, Judge.
7          **MR. BIRCHFIELD:**  Good morning, Your Honor.
8    Andy Birchfield.
9          **MR. BARR:**  Good morning, Your Honor.  Brian Barr.
10         **MR. LONGER:**  Fred Longer, Your Honor.  Good morning.
11         **MR. OVERHOLTZ:**  Neil Overholtz, Your Honor.
12         **THE COURT:**  Anyone else for the plaintiffs?
13              How about for the defendants?
14         **MS. SHARKO:**  Susan Sharko for Janssen.
15         **MR. GLICKSTEIN:**  Steven Glickstein.
16         **THE COURT:**  Who else?
17         **MR. OLINDE:**  John Olinde is here, Your Honor.
18         **MR. BONEY:**  Lindsey Boney here, Your Honor.
19         **THE COURT:**  Anyone else for the defendants?
20              Okay.  We are here today to discuss the motion
21    that's pending in the *Henry v. J&J, et al*., case.  This case is
22    pending in Houston, and there's a motion for summary judgment.
23    The plaintiffs have asked for more time.  The defendants feel
24    that that's not needed or that they haven't shown good cause
25    for it.

09:01

1    Let me hear from the plaintiffs first.  It's
2    your motion.
3    **MR. BIRCHFIELD:**  Yes, Your Honor.  Andy Birchfield.
4    Your Honor, in regards to our motion and the
5    defendants' response, it's certainly a situation that could be
6    handled as the defendants outlined in their brief, but we don't
7    think that that is the best and most efficient approach.
8    Clearly, we would be hard-pressed to say that we
9    have discovery that must be provided before you can rule on a
10   preemption motion.  They have raised the same argument.  It's
11   been disposed of on three occasions, but this is a different
12   context.  In this circumstance they have sought a preemption in
13   a case that is outside the bellwether cases and are seeking
14   § 1292(b) certification.
15   It's our position that if the Court is going to
16   consider a § 1292(b) motion, it's going to be outside the
17   context of the four individual bellwether cases and a broader
18   application, that it should be decided on a more complete
19   record.
20   One of the things that has become clear is that
21   we don't have close to a complete record, it appears, on the
22   issue of labeling negotiations/labeling discussions with the
23   FDA.  That became clear to us in the middle of the *Mingo* trial.
24   We have been provided an email from the
25   defendants where the labeling communication from the FDA had

09:03

1   been forwarded within Janssen.  We have been provided with the

2   original email from the FDA.  As we continued to rate that

3   issue, then in the middle of the *Mingo* trial the email from the

4   FDA was provided to us.  It looked different.  It didn't have a

5   Bates number on it, so that raised the issue:  Why?  Why was

6   this not provided?

7            Based on representations from defense counsel,

8   we know that communications with the FDA are encrypted.  If

9   those were forwarded, if they were put in a special database

10  and unencrypted, then they were provided to us.  But if that

11  did not occur, then those emails were not provided to us, and

12  they were not identified on a privilege log as being email.

13           So it is our position, Your Honor, that if we

14  are going to consider preemption in a broader context than

15  these bellwethers, if there's going to be consideration of the

16  § 1292(b) motion, we believe we are clearly entitled to this

17  discovery and that we ought to get it before the preemption

18  ruling.

19           With that said, if the Court would rather

20  proceed piecemeal, litigate the issue of whether we are

21  entitled to the discovery and then, if we are, later coming

22  back and considering the preemption motion as the defendants

23  propose, then we are prepared to do that.

24        **THE COURT:**  Do you have a claim, though, Andy?

25  Suppose there is something.  Do you have a claim, or is that

09:05

1  claim simply the FDA's claim?

2          **MR. BIRCHFIELD:**  We would have a claim, Your Honor,

3  if I'm following you right.  We have a claim that we are

4  entitled to these documents or -- it's the plaintiffs' claim

5  that the defendants are seeking to preempt.  It's our position

6  that it shouldn't be for the reasons that the Court has already

7  established.

8          In addition to that, we are entitled to a record

9  of the FDA's position in the negotiations that took place that

10  could shed light, that could play into the factual issue was it

11  impossible for the defendants to strengthen their warning here

12  or not.

13          Your Honor, if I may, the response that the

14  defendants filed on Friday raises two issues of monumental

15  concern to us.  Those arise out of the footnote on the very

16  last page.

17          One issue there is that in that footnote, which

18  is now part of the open record, they take a statement -- and I

19  would say not even accurately.  They take a statement from an

20  in chambers conference that we had with the Court.  As I

21  appreciate it, the purpose of those in chambers conferences

22  that are off the record without a court reporter is to foster

23  candid and open discussion.  They have taken a statement from

24  that conference and now made it part of a public record.

25          I don't think that they accurately describe it,

09:08

1   but they say in there that our whole scheduling order was
2   premised on the expectation that the *Henry* case would likely
3   soon be dismissed on summary judgment.  From what I have
4   learned so far, that has triggered a call from the underlying
5   plaintiff counsel to the PSC.
6           So now we are in a place where we believe the
7   purpose of these in chambers off-the-record discussions has
8   been undermined.  We must be considerably more guarded in how
9   we choose our words and make it abundantly clear.  I don't
10  think we took that position, but now that these conference
11  discussions are being made part of the public record, that's a
12  problem.  That's number one.
13          The second issue that arises out of the
14  defendants' response is that they are taking the position that
15  the plaintiffs are seeking an extension for the purpose of
16  delay.  Your Honor, that couldn't be further from the truth.
17  We are not seeking a delay here.  In fact, one of the positions
18  that the defendants have taken is that -- I certainly don't
19  recall this, but they are taking the position that it was
20  stipulated with the Court that no other proceedings would take
21  place until the fourth bellwether case was disposed of.
22          It's certainly not our thinking that the parties
23  cannot walk and chew gum at the same time.  We believe that the
24  parties can take on a fourth bellwether and proceed with
25  completing the trial package and proceed with getting cases

09:10

1   ready for remand all at the same time.

2            With that said, the position that they are

3   taking -- and certainly now triggered by this footnote that has

4   engendered a call from plaintiff Henry's counsel, we will be in

5   a place to certainly have a candid discussion with the

6   plaintiff.  The actual plaintiff, Mr. Henry, died after the

7   lawsuit was filed and is now being maintained by family

8   members.  We may be in a place where those family members will

9   forego their opportunity to be heard, whether in court or

10  summary judgment, for the sake of allowing this litigation --

11  they may just dismiss the case to allow this litigation and the

12  other litigants to have an expeditious and efficient day in

13  court.

14            It is a problem, Your Honor, from our standpoint

15  when we are taking in chambers conference discussions with the

16  Court and putting those in a public record.

17        **THE COURT:**  Yes, I see that as an issue.  I think the

18  defendants have to recognize that a case of this sort, which is

19  handled by the PSC -- I know they take the position that they

20  are only dealing with the PSC.  Actually, in the real world

21  what often happens is that some of the lawyers who are

22  representing individual cases either wanted to be on the PSC

23  and didn't make it, or wish they had been on the PSC, or

24  whatever.  Sometimes there is a difficult relationship that

25  exists during the course of the litigation that can create

09:13

1   issues.  Most of the time it doesn't, but it's a delicate kind

2   of relationship that exists.  It doesn't help matters to put

3   salt in those areas.  It just inflames it and makes it more

4   difficult to handle the case efficiently.

5           I'm not saying that you intended it, but I

6   suspect that you all are not aware of that because your team is

7   generally on the same page as each other, and that doesn't

8   exist oftentimes in the plaintiffs' world in these types of

9   cases.  You have got to be more conscious of that in some of

10  the discussions that we have.

11          **MR. MEUNIER:**  I just want to add, Judge, it's a

12  little analogous to, during a bellwether trial, where an expert

13  comes off the stand and one of the opposing counsel walks over

14  and says, "Boy that was a great expert you had there.  You

15  really killed us," or whatever.  We would never put that in a

16  footnote in a brief.  There are things said between colleagues

17  as professionals that don't belong in briefs, and they can

18  create real problems, as it happened in this case.

19          I just wanted to make sure for the record -- we

20  have four motions we are addressing.  They fall under different

21  categories.  There are two case-specific motions in *Henry*:  one

22  on learned intermediary and one on the Texas statute being

23  preempted.

24          As to those *Henry* only motions, I think the main

25  problem is the one that Andy has raised about where we now

09:14

1    stand with respect to the specific case because of that

2    unfortunate comment made by defendants in the brief.

3            As to the other two motions, they are joint

4    *Ibanez/Henry* motions that are meant to be vehicles for a § 1292

5    request for a Fifth Circuit appeal on preemption.  As to those

6    two, we have made the argument -- made by Andy -- that more

7    discovery is needed that pertains to preemption.  We need to

8    complete the record, as we complete the trial packets, before

9    those matters are properly reviewed on appeal.

10           **THE COURT:**  Who is on the other side?  Susan, are you

11   going to argue that or Lindsey?

12           **MS. SHARKO:**  Yes.  I will argue the discovery portion

13   of this because it seems to be directed to Janssen.

14           As to this footnote, I didn't read it the way

15   the plaintiffs do.  I understand what they are saying.  I'm

16   sorry that they view it that way.  That was not the intent.

17           As for the discovery piece of it, the parties

18   negotiated discovery extensively, as the Court knows.  The

19   plaintiffs participated in the search terms.  They selected the

20   custodial files.  They agreed on the limits of the number of

21   documents that would be produced.  I really think discovery is

22   complete and has been full.

23           In terms of this regulatory issue, remember that

24   the plaintiffs subpoenaed the FDA files.  The custodians they

25   selected were, frankly, the people I would have picked if I

09:16

1    were looking for information about the strike-through.  Those

2    files were produced.  Those people were deposed.  The database

3    where the regulatory documents were kept was produced.

4              Frankly, I think the encryption issue is a red

5    herring.  To give the Court some background, when the FDA

6    communicates with a company, the communications are encrypted.

7    The person to whom the email is addressed gets an encryption

8    code.  That person is the only person who can open it.

9              What generally happens, as explained to the

10   plaintiffs, is that the person opens it; they forward it.  So

11   the email that was at issue in the *Mingo* trial was opened,

12   forwarded, and the forwarded copy was produced.  There would

13   have been no purpose in producing the encrypted copy because no

14   one would have been able to open it unless they were sitting at

15   the computer of Mr. Jalota in Raritan, New Jersey.  So, as I

16   understand it, Mr. Jalota was asked to sit at his computer and

17   print out the document, and he did, and it was forwarded.

18   That's why it looks different and didn't have a Bates number.

19             I have asked the plaintiffs what other discovery

20   they really believe they need, and then in the motion papers we

21   put the need for an affidavit.  I don't think there is a need

22   for further discovery.  We cite three cases.  We have had

23   endless dispositive motions, and we are trying to negotiate a

24   remand plan.

25             If there is to be further discovery, it needs to

09:18

1  be specifically set out in the affidavits that the federal

2  rules provide.  It can't be:  "Well, we would like to go back

3  in the database" or "We would like to have more custodians."

4  Those are monumental undertakings.  Discovery here is done.  We

5  have dismissed the document review team.  We should move on.

6      **THE COURT:**  Any response to that issue?  Let's take

7  them one issue at a time.  Any response from the plaintiffs on

8  that issue?

9          The defendant takes the position, in the first

10  place, you haven't expressed which discovery you need.  And if

11  you're talking about discovery from the encrypted message, you

12  have already gotten that; there's nothing else to give to you.

13      **MR. BARR:**  Your Honor, this is Brian.  I will try to

14  address a couple of those points.

15          On the encryption issue, we found out for the

16  first time last week, in a conversation with Ms. Sharko, that

17  there were potentially emails that were not produced to us.

18  That's what she said.  It wasn't that we received everything.

19  She indicated to us that there were emails in that encrypted

20  database that we did not receive.  For whatever reason, someone

21  didn't forward it on or didn't put it into the regulatory file,

22  and they didn't give us those.  We didn't know that those

23  existed until last week because they didn't log them anywhere.

24          So I can't begin to describe how big, small,

25  minor, major an issue it is, but it's obviously a big concern.

09:20

1   Their primary defense in this case has been that the FDA struck

2   that language.  Now you are telling us that there's information

3   potentially on that that you didn't give us.  So I don't think

4   there is a representation that they have given us all of that.

5   Maybe they know, maybe they don't know, but that was what was

6   indicated to us last week.

7               As far as discovery being done, what we

8   negotiated in the -- I guess it's CMO 1 or CMO 2.  I don't

9   remember which one now, but it applied specifically to the

10  bellwether cases.  That's what it applied to.  We are now

11  looking beyond that.  We are looking beyond the trial package.

12              We can't pretend that we are dealing with a

13  situation with a drug not still being studied, not still being

14  marketed.  They make that point all the time, that it's a

15  living, breathing drug.

16              This PT issue and the issues with the comparison

17  between Xarelto to Pradaxa and Eliquis, that all is continuing

18  to be studied.  As we saw in the *Mingo* trial, they hand us a

19  new study the day of closing argument.  It's a publication from

20  one of their people suggesting that PT could be useful.

21              So they are continuing to study these issues,

22  and I don't think we can just play this game of "Well, we have

23  this cut-off and so we are not required to produce anything to

24  you."  This is a continuing litigation.  There's 20,000 cases

25  that have to be disposed of, and we need to get an update as to

09:21

1    what's going on, particularly when you find out that there's

2    stuff that was obligated to be produced to you that they did

3    not produce.

4              So that's where we are.  We know they are

5    continuing to study it.  We have asked them to provide us names

6    of people that were involved so we can try to narrow our

7    request.  Right now we have sent them a list of I think it's

8    seven items that we think we need updates on.  We are trying to

9    figure out the best way to craft that, and that's where we are.

10             I guess I'm a little surprised to hear

11   Ms. Sharko say that she thinks she has given us everything when

12   that's not the representation that was made to us last week.

13        **MS. SHARKO:**  Well, I have to say that I am very

14   surprised at what Mr. Barr says because, number one, we tried

15   to have candid discussions with the plaintiffs about their

16   requests for a topping off of discovery in connection with the

17   § 1292 motion, in connection with putting together a joint plan

18   for workup of cases.  Now those discussions -- which were

19   supposed to be confidential so they could be candid -- are

20   being thrown about on the record.  That's my first point.  I

21   think that's inappropriate.  My second point is Mr. Barr

22   misstates, intentionally or unintentionally, what I said in

23   those discussions, and now we are mixing up a whole bunch of

24   issues.

25             In terms of encryption of documents, everybody

09:23

1    knew from the very beginning of this litigation and discovery

2    that their documents were encrypted, and there are provisions

3    in the protocol that the parties negotiated that provide how to

4    deal with encrypted documents, how hard you have to try, what

5    you need to do, etc.  Those are multipage documents.  I can't

6    quote them chapter and verse, but they are there.  So there's

7    no surprise that there are encrypted documents out there.

8    There's no surprise that not all the encrypted documents were

9    produced because why would you produce something that you

10   cannot open.

11          Now, as to that we continued to study the

12   medicine, of course we do, and we continue to make regulatory

13   filings.  We continue to update the NDA.  We continue to update

14   the IND.  Those topics were discussed with the plaintiff.  That

15   was discussed as part of this so-called candid discussion about

16   topping off discovery.  We encouraged each other to be more

17   specific about what we wanted and why we wanted it so we could

18   come up with a joint plan.  We were in the middle of that when

19   this motion was filed.

20          So I'm not, quite frankly, sure where to go from

21   here.  If the parties are to abandon their discussions -- which

22   I don't think would be a good idea because I think usually our

23   track record shows we reach agreement on most things, if not

24   everything, eventually.  If the parties are to abandon those

25   discussions in order to derail the preemption motion, I submit

09:25

1  that we have to turn to the rules, and they need to give us a

2  specific list of what they want.

3          In the discussions we had, I threw out a couple

4  ideas.  They were rejected, and we still don't know what it is

5  they want.  If Your Honor were to order today that they are

6  entitled to discovery on this issue, I have no idea what it is

7  that they want.  I submit their request should be denied.

8          **MR. GLICKSTEIN:**  Your Honor --

9          **THE COURT:**  We have really two motions.  One is with

10  the *Henry* case.  The other is with preemption as an issue in

11  all of the cases.

12          Steve, I'm sorry.  You wanted to say something?

13  Go ahead.

14          **MR. GLICKSTEIN:**  Yes.  Let me just address the

15  procedural aspects of this.  I think I can suggest a way to go

16  forward that would allow you to make a decision in a more

17  concrete context.

18          There are four motions in the *Henry* case.  One

19  is on preemption on design defect, one is preemption on

20  warnings, one is on the Texas product liability act, and one is

21  the standard learned intermediary motion under Texas law.

22          In addition, with respect to the two preemption

23  motions, we moved in *Ibanez* in addition to *Henry*.  We didn't

24  make it an all cases motion, but it was in *Ibanez*, which is one

25  of the 36.  It's not the 36 in the discovery pool.

09:27

1            As you recall, we did discuss this before.  The
2   reason we had done that is that there was a possibility that
3   *Henry* would be disposed of on other state law grounds, and we
4   wanted to have a vehicle in which we could seek § 1292(b)
5   certification in the event that that issue would not be ripe in
6   *Henry*.  This is all part of the discussion that led to the
7   briefing schedule that we agreed to.
8            There is a rule in the Federal Rules of Civil
9   Procedure that addresses how you ought to proceed when a party
10  contends that it's premature to rule on summary judgment
11  because there are more facts to be discovered, and that's
12  Rule 56(d) of the Rules of Civil Procedure.  What that requires
13  is the rule says there needs to be a declaration or affidavit.
14  I think the Fifth Circuit says -- it doesn't technically have
15  to be an affidavit or declaration, but it has to meet the
16  specificity requirements of the rule -- is that in your
17  opposition to summary judgment, you set out why it is that you
18  don't think that you would have a fair opportunity to respond
19  to the motion.
20           We are not contending that the plaintiffs should
21  be deprived of their attempt to make that showing.  I think
22  what we said in our briefs is that their conclusory sentence in
23  their brief that says they would like to have more discovery
24  doesn't meet the standard of Rule 56(d) and that the right way
25  to do this, since we stipulated to a briefing schedule, is to

09:29

1   put their contention about why it is they think Your Honor

2   ought not to rule on a properly supported pleading that

3   satisfies the standards of Rule 56(d).

4          If they do that, then we can respond to it in

5   the concrete rather than in the abstract, and then Your Honor

6   will have an actual case in controversy before yourself instead

7   of hypotheticals where everybody is talking about what might or

8   might not be.  I think that is the gravamen of our response.

9          There's a lot that Andy and Jerry and Brian have

10  said that's not in the motion that's before you.  We have

11  responded to it verbally, but this is an issue that Your Honor

12  deserves to have a couple of pieces of paper in front of him to

13  see with specificity what it is the plaintiffs are saying they

14  need.  We can respond with equal specificity as to why they

15  already have it, or it's not needed, or it's waived, or

16  whatever.  Then Your Honor can make your decision.

17         We know for sure that they have sufficient

18  information to put in a substantive response because they won

19  the issue three times already, but I do appreciate the

20  contention that this is maybe a vehicle for § 1292(b).  They

21  believe that the record needs to be supplemented in some way.

22  It ought to be supporting according to 56(d).  They can do that

23  within the briefing schedule, and the Court can then decide

24  whether they have made their record or not.  If the Court feels

25  there is some discovery to be done, the Court can specify

09:31

1    exactly what that discovery is and put some frames around it
2    instead of just saying, "Well, discovery isn't complete."
3             I will take issue with one thing that Brian said
4    and that is what the original agreement was with respect to
5    discovery in general.  I think Brian is correct that the CMOs
6    stated that this is the discovery for the four bellwether
7    cases, but the parties agreed to disagree with respect to what
8    discovery, if any, came after the four bellwether cases.
9             I will not say that the plaintiffs waived their
10   right to ask for more discovery after the four bellwethers.
11   They certainly did not.  I doubt that the plaintiffs will say
12   that the defendants waived their right to oppose more discovery
13   after the four bellwethers.  We did not.
14            I think, if I'm hearing the controversy, it's
15   not over whether supplemental updated discovery is necessary on
16   the preemption motion.  The plaintiffs have raised a concern
17   about whether they got the discovery they asked for in the
18   first instance.  Susan is saying, since this is discovery of
19   Janssen, that she believes they have.  The only way to resolve
20   that issue is on the record.
21            **THE COURT:**  Andy, what's your view?
22            **MR. BIRCHFIELD:**  Your Honor, that's fine.  We will
23   file our Rule 56(d) affidavit.  We think that this could
24   prolong matters in regards to the preemption or jeopardize the
25   decision being made on an inadequate record, but we will do

1    that.

2              In regards to the *Henry* specific motions, I am

3    going to do my best to have that conversation with plaintiff

4    counsel today.  If there is a decision not to go forward, then

5    we will certainly make the filings and let Steve and Susan know

6    as promptly as we can.

7              **THE COURT:**  How much time will you need, Andy, to put

8    in the record what you need?

9              **MR. BIRCHFIELD:**  Currently our briefing is due on

10   Friday, Your Honor.

11             **THE COURT:**  We can move that.  We will move that.  I

12   don't have any problem doing that.

13             I want to get to the briefing.  I want to look

14   at the preemption.  The *Henry* case is the one that I think you

15   ought to focus on immediately.  With the other, I think because

16   of the significance of it to the litigation as a whole, I want

17   everybody to have an opportunity to do what they need to do,

18   but we have got to put some meat on those bones.

19             I think Steve is right.  We are talking now

20   about various things.  You are saying one thing.  Susan is

21   saying another thing.  I don't have anything at all before me

22   other than that you need more discovery and Susan feels you got

23   all the discovery.  You have got to be more specific.  When you

24   are more specific, hopefully you all can resolve some of the

25   issues, and then I can deal with the others, but there's no

09:35

1    specificity here.  Also, I think it's more confusing because we

2    are mixing *Henry* with everything else.

3             **MR. BIRCHFIELD:**  Your Honor, we want to proceed

4    expeditiously.  If we could have a two-week extension, then I

5    think that would be sufficient for us to file our affidavit and

6    statement seeking the discovery with greater specificity.

7             **THE COURT:**  Okay.  Let's do it that way, then.  We

8    will take the two weeks.  I'll move things back accordingly.

9                  Let's see.  When is it?  November 3.

10                 We ought to have a conference Monday or Tuesday,

11   November 6 or 7, a hearing.  What's good for you all?

12            **MS. SHARKO:**  Either is okay.

13            **THE COURT:**  Andy, how about you?

14            **MR. BIRCHFIELD:**  November 6 is fine, Your Honor.

15            **MR. GLICKSTEIN:**  Are we talking about for our next

16   case management order conference or --

17            **THE COURT:**  No, just the hearing.  We will move this

18   hearing back to then.

19            **MR. GLICKSTEIN:**  Oh, okay.

20            **MR. MEUNIER:**  Judge, when you say "hearing," do you

21   mean like another telephone conference like this one --

22            **THE COURT:**  Yes.  Right.

23            **MR. MEUNIER:**  -- to review the status of where we

24   are?

25            **THE COURT:**  Yes.

09:37

1          **MR. MEUNIER:**  So we would file our affidavit in need

2   of discovery by November 3, and the Court would have a

3   telephone conference to discuss where we are on November 5 or

4   6?

5          **THE COURT:**  November 6 or 7.

6          **MR. GLICKSTEIN:**  That doesn't really give the defense

7   much opportunity to digest a response.

8          **THE COURT:**  What's good for you, Steve?

9          **MR. GLICKSTEIN:**  Well, I think the burden is going to

10  fall on Susan.

11         **THE COURT:**  Sometime later that week or the following

12  week?  What is it, Susan?

13         **MS. SHARKO:**  Why don't we say the week of

14  November 13.  That gives me a week to meet and confer with the

15  plaintiff.

16         **THE COURT:**  Let's do it, then, November 14.

17         **MS. SHARKO:**  Actually from now till November -- oh, I

18  see.  November 3.  Okay.  November 14.

19         **THE COURT:**  1:30 telephone conference.  Thank you

20  very much.

21                              * * *

22

23

24

25

1          **<u>CERTIFICATE</u>**

2          I, Toni Doyle Tusa, CCR, FCRR, Official Court

3  Reporter for the United States District Court, Eastern District

4  of Louisiana, certify that the foregoing is a true and correct

5  transcript, to the best of my ability and understanding, from

6  the record of proceedings in the above-entitled matter.

7

8

9                              *s/ Toni Doyle Tusa*
                               Toni Doyle Tusa, CCR, FCRR
10                             Official Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25