```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
****************************************************************
IN RE:  XARELTO (RIVAROXABAN)          MDL 2592 "L"
PRODUCTS LIABILITY LITIGATION

                                       DECEMBER 12, 2017


THIS DOCUMENT RELATES TO               JUDGE ELDON E. FALLON
Cases Referenced in
Record Document 8148
                                       MAG. JUDGE MICHAEL NORTH

****************************************************************

                   TRANSCRIPT OF SHOW CAUSE HEARING
              HEARD BEFORE THE HONORABLE ELDON E. FALLON
                      UNITED STATES DISTRICT JUDGE
```

APPEARANCES:

FOR THE PLAINTIFFS:        MR. LEONARD A. DAVIS
                           Herman, Herman & Katz, LLC
                           820 O'Keefe Avenue
                           New Orleans, LA 70113

                           MR. CHRIS QUINN
                           (Via telephone)
                           The Driscoll Firm, PC
                           211 North Broadway
                           40th Floor
                           St. Louis, MO 63102


FOR THE DEFENDANTS:        MS. SUSAN M. SHARKO
                           Drinker, Biddle & Reath, LLP
                           600 Campus Drive
                           Florham Park, NJ 07932-1047


                           MR. JOHN F. OLINDE
                           Chaffe McCall
                           2300 Energy Centre
                           1100 Poydras Street
                           New Orleans, LA 70163

1  Official Court Reporter:     Lanie M. Smith, RPR, CRR
                                500 Poydras Street, B-275
2                               New Orleans, Louisiana 70130
                                (504) 589-7782
3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
         Proceedings recorded by mechanical stenography,
25  transcript produced via computer.

```
 1                    P R O C E E D I N G S
 2                   (Call to order of the court.)
 3            THE COURT:  Be seated, please.  Let's call the case.
 4            THE COURTROOM MANAGER:  MDL No. 2592, In Re: Xarelto
 5   Products Liability Litigation.
 6            THE COURT:  Who's on the phone?  This is Judge Fallon.
 7   Who is on the phone?  Anybody from Diez-Arguelles and Tejedor?
 8   That's DT law firm?
 9            (No response.)
10            THE COURT:  Anybody for the Driscoll Firm?
11            MR. QUINN:  Chris Quinn, Your Honor.  Thank you.
12            THE COURT:  All right, Chris.
13                 Anybody for Provost Umphrey?
14            (No response.)
15            THE COURT:  Anyone from Rosenberg Gluck?
16            (No response.)
17            THE COURT:  Anyone else on the line?
18            MS. MERTZ:  This is Samantha Mertz for
19   Grant & Eisenhofer.
20            THE COURT:  Would you give it to us again, please.
21            MS. MERTZ:  Yes.  Samantha Mertz, Grant & Eisenhofer.
22            THE COURT:  Which one is that, Dean?
23                 I don't have that claimant listed.  What is the
24   name of the plaintiff?
25            MS. MERTZ:  Barbara Jankowski.
```

1  Your Honor, we received an order to show cause Monday.
2  We promptly responded and let you know that we paid -- (Phone
3  interference.)
4      THE COURT REPORTER: She's cutting out.
5      THE COURT: Wait one moment. You've been cutting off.
6  Would you please repeat what you just said.
7      MS. MERTZ: Sure. We received an order to show cause
8  from the Court regarding unpaid filing fees. We promptly paid
9  that fee the same day we received the record and filed a
10 response to the Court stating as such.
11     THE COURT: Okay.
12     MS. MERTZ: We didn't receive anything else, so I
13 assumed we had to appear.
14     THE COURT: Okay. Fine. You've satisfied your
15 requirement. You don't need to stay on the line, and I
16 appreciate you doing that.
17     MS. MERTZ: All right. Thank you very much,
18 Your Honor.
19     THE COURT: You bet.
20         Let me make a couple of comments first: I
21 understand this matter grows out of the Xarelto litigation. We
22 presently have approximately 20,000 cases that are filed. Now,
23 I recognize -- I've been doing this a while -- I recognize the
24 chaos and confusion that exists initially when a case of this
25 sort begins. I also recognize that cases come to plaintiff

1 attorneys from various sources.  There's a perceived need by
2 the attorney to file, even without usual or appropriate vetting
3 of the cases.  This is done to secure the cases.  I'm aware of
4 that, that in a competitive market that that exists.
5         Also there's a perceived need by plaintiffs'
6 counsel to participate in a significant way in the litigation
7 and so they feel that by filing cases, particularly numbers,
8 they have a better opportunity to meaningfully participate in
9 the litigation.
10         It's an unfortunate circumstance because it's
11 appropriate to vet a case before it is filed so that the party
12 can determine whether or not they are interested in handling or
13 able to handle or willing to handle the case, but that's a fact
14 that has to be dealt with.  So I have to figure out a practical
15 solution to deal with this factual situation.
16         I, therefore, came up with Pretrial No. 11,
17 which, in essence, borrows from the Seamen law concept where a
18 seaman can file a case without money upfront, but can pay it at
19 a later date.  That is really the nature of the concept, to
20 allow the parties to file.
21         Also I understand and recognize that it's
22 significant at the outset for the federal court to be the focal
23 point of the litigation.  And for that reason, I allowed
24 individuals to bundle the complaints; that is to say, file a
25 number of complaints -- up to a hundred -- under one litigant

1  and pay one filing fee.  But I didn't indicate that those cases
2  would never be taxed for costs.  In fact, I stated that in the
3  initial Rule 11, Pretrial Order 11.
4              I also provided that if after nine months --
5  prior to nine months, if a case was dismissed, the party did
6  not have to pay a filing fee for that particular claimant.
7  Let's say there were a hundred claims filed under one
8  individual and if those claims that were filed under that
9  individual was determined to be claims that were either not
10 interested in pursuing or claims that could not be pursued
11 appropriately, then that claim could be dismissed without any
12 payment of court costs.
13             But after that period of time, the only way the
14 claim could be dismissed is upon payment.  And that, I thought,
15 gave the individual attorneys an opportunity to not only vet
16 before they took the case, but even if for some reason they had
17 to take the case or a perceived reason they had to take the
18 case, I gave them nine months after they took the case to vet
19 the case, to collect information on the case, to collect
20 medical information and make a determination.  That was the
21 theory of the matter, and most individuals that filed have
22 abided by that rule.  However, there's four firms that did not.
23             The first firm that did not is the Diez, D-I-E-Z,
24 A-R-G-U-E-L-L-E-S and Tejedor, T-E-J-E-D-O-R.  The nine-month
25 deadline expired in 7/15/16; and these cases were not dismissed

1  until almost a year later in May of 2017, well past the
2  nine-month period.  So these cases -- there are one, two,
3  three, four, five, six cases -- let's see -- six cases whose
4  fees have not been paid.  I am interested in hearing from that
5  firm as to why the fees haven't been paid.
6              Anybody on for that firm?
7          (No response.)
8          THE COURT:  I'll issue a rule to show cause on that
9  firm why they shouldn't be held in contempt of court and fined
10 for their failing to appear today.  I'll issue the rule to show
11 cause and set it for an appropriate time -- why they shouldn't
12 be held in contempt of court and either fined or incarcerated.
13             The second firm is the Driscoll Firm.  The
14 Driscoll Firm had a large number of cases.  To their credit,
15 they have paid most of their filing fees in the cases, but a
16 number of cases still have not been paid for.  The nine-month
17 period was in 3/7/17; and the cases were dismissed after that,
18 but not too long after that.
19             Chris, what's the situation?
20         MR. QUINN:  Judge, initially let me say that I
21 appreciate and understand the Court's introductory remarks.
22 I've been doing this for more than a little while -- not so
23 much mass torts, but practice of law and I've never appeared in
24 court for these circumstances.  I take the Court's orders very
25 seriously.  But I'm here today because I believe -- I filed a

1 brief response last night that explains our position. It's a
2 position that I outlined in e-mail correspondence with a member
3 of your case management team back in September.
4 The short version is this: We -- in the cases in
5 which fees have not been paid, they fall into two categories:
6 One is two cases that (Phone interference.)
7 THE COURT: Wait, wait. You are coming in and out. If
8 you can take it a little easy and speak a little more
9 distinctly, we can pick you up.
10 MR. QUINN: I apologize, Your Honor. Is this better?
11 THE COURT: That is better.
12 MR. QUINN: Okay. So there are two cases -- and I
13 listed all these in the very brief response that I filed last
14 night -- that I believe it's uncontested that a fee is not owed
15 per the Court's pretrial order because we, in fact, filed
16 stipulations of dismissal before the nine-month deadline. I
17 think what happened in those two cases, Your Honor, is these
18 were dual-filers -- we represented them and another firm
19 represented them -- and we dismissed our cases with an order
20 that allowed the other firm's cases to proceed within nine
21 months.
22 But the fact that there were two cases floating
23 around might have caused some confusion regarding when that
24 nine-month deadline expired. I pointed out the docket numbers,
25 and those cases were both dismissed in January within the nine

1  months of filing. I think fees are obviously not owed on
2  those.
3        The second group is a somewhat larger group and
4  this is what I corresponded with chambers about back in
5  September. Again, I appreciate the Court's introductory
6  remarks and I'm conscious that everybody on all sides of this
7  litigation had a lot going on during this period, including
8  some substantial show cause orders for lack of proof that the
9  parties were working through files on that sort of thing.
10        But in these other remaining cases we sent
11  stipulations for dismissal with prejudice to defense counsel
12  back in February before the deadline passed. We followed up
13  with counsel at a later point, you know, asking if we could
14  file these and they were not filed by defense, who asked that
15  we send them to them for filing, until April after the deadline
16  has passed.
17        We noted that the situation was going on in a
18  response to the show cause orders that were going on at that
19  time. We pointed out that after some of the cases that were on
20  a show cause order for proof during that period, we had
21  forwarded stipulations for dismissal to defense counsel,
22  however they had not been filed at that point.
23        So it's my position respectfully, Your Honor,
24  that if nothing else, the spirit of the Court's order should be
25  that if we timely forwarded stipulations for dismissal to

defense counsel in February and they were not filed, through no fault of our own, until April, that at least that, again, meets the spirit of the Court's order about the nine-month deadline.

Obviously, Your Honor, if the Court disagrees with our position, we will pay these filing fees without hesitation, but we feel we have a good faith argument to make under these circumstances, Your Honor.

THE COURT: Okay. Let me hear -- anything from the defense? John, do you have any comments?

MR. OLINDE: No, Your Honor. This is the first I've heard -- at least what he's saying is that they were provided to defense counsel and then filed later. That's the first time I've heard of that.

THE COURT: Susan --

MS. SHARKO: Yes. I've never heard about this before. Usually people get these things turned around in a timely fashion. If for some reason, there wasn't a timely response, I would submit it's the plaintiff's obligation to make sure it gets done since it's their filing fee. But as I've said, this is the first time I've ever heard of this.

THE COURT: Lenny, do you know anything about this?

MR. DAVIS: Your Honor, on September 26th, after having discussions with Dean Oser in the courthouse and having received a list of various law firms that had unpaid filing fees, my office -- I, in particular as plaintiffs' co-liaison

1  counsel, sent an e-mail to various firms, including to the
2  Driscoll Firm. I advised plaintiffs' counsel that we had
3  received a list and that there were unpaid filing fees and, in
4  fact, the e-mail to the Driscoll Firm -- I provided a copy to
5  Mr. Oser and to opposing counsel present -- was sent at
6  12:12 P.M. on September the 26th.
7  　　　　　Immediately that day at 5:00 P.M., I got a reply
8  that said from the Oser [sic] firm -- Charles Quinn at that
9  firm -- they had reviewed the files and they addressed a number
10 of issues, including the issue that they've raised apparently
11 in their reply brief that defense counsel had the stipulations
12 of dismissal and that they hadn't been filed. So the issue had
13 been raised at the time that we sent out notice and I point
14 that out just so the Court is aware that the issue has been
15 addressed and the e-mail was sent to myself and to Mr. Oser.
16 　　　　　THE COURT: To the Driscoll Firm?
17 　　　　　MR. DAVIS: Yes, Your Honor.
18 　　　　　THE COURT: But Chris says that he signed the
19 dismissals and that they were forwarded, but not filed in court
20 until a month or so after the deadline. Do you know anything
21 about that?
22 　　　　　MR. DAVIS: No, Your Honor, I do not. I have not been
23 involved with it since sending my e-mail and receiving the
24 response.
25 　　　　　THE COURT: All right. Chris, let me do this. Just so

```
 1   that I'm treating everybody fairly, if you can send me whatever
 2   you have that justifies or at least satisfies that point that
 3   you have forwarded the material -- I don't know.  Did you send
 4   that already to us?  I didn't see it in the file.
 5           MR. QUINN:  Your Honor.  I apologize.  I filed the
 6   response at about 7:00 or 7:30 last night.  I attached the
 7   pertinent e-mails to that response.
 8           THE COURT:  All right.  I just got it just now, but let
 9   me take a look at it; and I'll come out with something that
10   deals with it.
11           MR. QUINN:  If I might just add something quickly,
12   Your Honor.
13           THE COURT:  Sure.  Go ahead, Chris.
14           MR. QUINN:  Just to be clear, I'm not trying to cast
15   aspersions.  This was a very busy first period for everyone,
16   and I understand that.  It's just that this was our position
17   that under these circumstances, we don't think that it's --
18           THE COURT:  Yes.  I do note that you've paid a
19   substantial amount of money on the other cases that have been
20   filed.  All right.  I'll get back with you on that -- on your
21   position after I look at the -- I just got your response, so I
22   haven't had a chance to look at it.
23               The next firm is Provost Umphrey.  Anybody from
24   Provost Umphrey on the line?
25           (No response.)
```

1           THE COURT:  There's just one case, Julie Stevens.  All
2  right.  Same.  I'll issue an order to show cause why they
3  shouldn't be held in contempt for failure to participate in
4  this conference.
5             Rosenberg Gluck.  Anybody from Rosenberg Gluck?
6        (No response.)
7           THE COURT:  I'm not batting well here.  I'll issue
8  another order to show cause why they shouldn't be held in
9  contempt.  There's only three cases on their docket.
10             Okay.  That's it then.
11             Anything else from anybody on the line?
12        (No response.)
13           THE COURT:  Anybody in the Court?
14        (No response.)
15           THE COURT:  All right, folks.  Thank you very much.
16  Court will stand in recess.
17          (WHEREUPON, the proceedings were adjourned.)
18                           * * * *
19                     REPORTER'S CERTIFICATE
20          I, Lanie M. Smith, CRR, RPR, Official Court
Reporter, United States District Court, Eastern District of
21  Louisiana, do hereby certify that the foregoing is a true and
correct transcript, to the best of my ability and
22  understanding, from the record of the proceedings in the
above-entitled and numbered matter.
23
24                              ___/s/ Lanie M. Smith_____
                                   Official Court Reporter
25