# EXHIBIT 1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO ALL ACTIONS | JUDGE ELDON E FALLON |
| | MAG. JUDGE NORTH |

### [PROPOSED] CASE MANAGEMENT ORDER NO. 6

The Court hereby Orders as follows:

**A.     *IBANEZ* DISPOSITIVE MOTIONS**

1.     Issues relating to Defendants' Motion for Partial Summary Judgment on the Grounds that Federal Law Preempts Plaintiffs' Failure-to-Warn or Instruct Claim (Rec. Doc. 7660) and Defendants' Motion for Partial Judgment on the Ground that Federal Law Preempts Plaintiffs' Design-Defect Claim (Rec. Doc. 7653) have been addressed in a separate order.

2.     If the Court denies summary judgment on Defendants' preemption motions in the *Ibanez* case, Defendants reserve the right to move for an order to certify such orders for interlocutory appeal under 28 USC 1292(b), and Plaintiffs reserve the right to oppose such motion. If the matter remains disputed after the Court's summary judgment rulings, the Court will set a briefing schedule to resolve the dispute.

**B.     PLAINTIFFS' PROPOSED DISCOVERY OF DEFENDANTS**

1.     Plaintiffs shall serve upon Defendants a consolidated formal discovery request no later than January ___, 2018, to be served in coordination with the Plaintiffs in the PCCP, that contains all of the generic discovery that Plaintiffs seek from Defendants.

2.     The parties shall continue to meet and confer and shall advise the Court within 30 days as to the requests on which they agree and disagree.  If there are disagreements, the parties shall advise the Court which requests if any can be resolved informally by the Court and which require formal briefing.

3.     The Court expects Plaintiffs' discovery requests in the MDL to be coordinated with the Plaintiffs in the PCCP.  The parties shall promptly advise the Court if there are any issues concerning such coordination.

4.     The completion of any additional generic discovery of Defendants, as agreed upon by the parties or ordered by the Court pursuant to this CMO, will constitute the completion of generic discovery of Defendants within the MDL and the PCCP, subject to paragraph B(4)(a) below.

      a.     Plaintiffs may seek, and Defendants may oppose, more generic discovery of Defendants upon a showing that there has been a material new scientific or regulatory development relating to the safety of Xarelto and that Plaintiffs would suffer substantial prejudice if discovery was not re-opened with respect to that development.

C.     **GENERIC EXPERT TRIAL PRESERVATION DEPOSITIONS**

1.     The parties agree that each side may take trial preservation depositions of their previously disclosed generic experts, subject to the provisions of this section.

2.     The generic expert trial preservation depositions will not take place until the completion of any discovery agreed to by the parties or ordered by the Court pursuant to paragraph B above.

3.     The parties shall meet and confer and agree on a schedule for the supplementation of prior generic expert reports and reliance materials, if such supplements are desired.

Preservation depositions shall not go forward until this process is completed. If the parties cannot agree on a schedule, the Court will resolve the dispute.

4. A discovery deposition will be permitted prior to the trial preservation deposition with respect to any generic expert who supplements his or her opinions or reliance materials. The discovery deposition will be limited to examination fairly encompassed by the new opinions and reliance materials and will not be used to re-examine witnesses on opinions and reliance materials previously disclosed unless such are necessary to frame appropriate questions concerning the new opinions or reliance materials. The parties should meet and confer to determine the appropriate length of any such discovery deposition, taking into account the extent of the supplemental disclosures. The Court will resolve any disputes not resolved by agreement.

5. The expert's trial preservation testimony will be limited to the opinions expressed and the reliance materials disclosed in prior MDL reports, depositions and trial testimony unless the expert issues a supplemental report.

6. The taking of an expert's trial preservation deposition does not preclude a party from calling such expert live at trial, or from designating and calling live at trial an expert whose trial preparation deposition has not been taken, so long as the party calling such expert live at trial complies with the applicable rules concerning expert disclosure and discovery.

7. The parties will meet and confer to determine the time limits applicable for direct examination, cross-examination, and redirect examination with respect to each expert. Redirect will be limited to the scope of the cross examination. If the parties are unable to agree, the Court will resolve any dispute.

8.     Consistent with the order of witnesses at the trial, trial preservation depositions of Plaintiffs' experts will be completed before the trial preservation depositions of Defendants' experts are taken.

9.     The trial preservation expert depositions will be taken in Magistrate Judge North's courtroom and will be supervised by Magistrate Judge North. The Magistrate Judge will not rule on substantive evidentiary objections, which are reserved for the trial judges. Nor should substantive evidentiary objections be made. By way of example and not by way of limitation, objections that are reserved for trial and that should not be made or ruled upon by the Magistrate Judge include objections that (i) the expert is not qualified or is testifying beyond the scope of his/her expertise, (ii) the opinion is not a proper subject of expert testimony, (iii) the opinion is not relevant or is inadmissible under Rule 403, (iv) the opinion is inadmissible hearsay or improperly relies on inadmissible hearsay, (v) the opinion or methodology does not satisfy Daubert or Fed. R. Evid. 702, or (vi) the opinion lacks a proper evidentiary or legal foundation, or (vii) the opinion is speculative.

10.    The Magistrate Judge's supervision will encompass:

   a.    Enforcing the time limits set forth in this order.

   b.    Assuring professional conduct by the witness and counsel.

   c.    Ruling on objections as to the form of the question. By way of example and not by way of limitation, this includes ruling on objections that the question is leading, or is compound or confusing or vague, or misstates the expert's or another witnesses' prior testimony, or mischaracterizes a document being discussed in the testimony.

        d.      Ruling on objections as to the responsiveness of the witness. By way of example and not by way of limitation, this includes ruling on objections that the witness failed to respond to the question, or responded evasively or incompletely to the question, or is testifying without a question pending, or improperly answered beyond the scope of the question.

        e.      Ruling on objections that the proposed testimony was not timely disclosed in accordance with the Court's orders.

        f.      Ruling on objections that the redirect is beyond the scope of the cross.

        g.      Ruling on privilege objections.

11.    The Magistrate Judge may in his discretion either rule on an objection made pursuant to paragraph C(11)(c) - (f) or determine that an objection made pursuant to paragraph C(11)(c) - (f) should be deferred to the trial judge, in which case the objection to the question or answer is preserved for trial. Objections made pursuant to C(11)(a), (b) and (g) must be ruled upon before compelling an answer over objection.

12.    The Magistrate Judge's rulings on objections may be appealed to the Court. If the Court is available, it will entertain oral appeals so that a ruling can be obtained while the witness is still present. The Court may in its discretion require briefing if the Court determines *sua sponte* or at the request of a party that briefing is necessary to decide the issue.

13.    The generic expert trial preservation depositions taken pursuant to this section shall be videotaped. The procedures set forth in Pretrial Order No. 23A (Rec. Doc. 4455) will apply.

**D.    <u>FACT SHEETS</u>**

1.    As used in this Order a "fully complete PFS" is defined to mean a substantially complete and verified PFS, which must provide responses to all sections of the PFS (Sections I

through Section X), and include a verification page that is signed in hard copy, signed and dated Records Authorizations, copies of prescription and/or pharmacy records demonstrating use of Xarelto and medical records demonstrating an alleged injury.

2. All plaintiffs shall provide a fully complete and up to date PFS according to the following schedule:

a. If a law firm is lead counsel for 200 or fewer plaintiffs, a a fully completed fact sheet must be served through the MDL Centrality System by April 30, 2018 on behalf of each plaintiff for which the firm is lead counsel.

b. If a law firm is lead counsel for more than 200 plaintiffs, then the fully completed fact sheet shall be provided on a rolling basis of 200 Plaintiffs per month in the order the cases were filed, commencing on April 30, 2018. Any law firm desiring to take advantage of this provision must serve a list of cases in which they are lead counsel no later than April 30, 2018. Only one law firm may be designated lead counsel for any particular plaintiff.

c. No extension of these deadlines will be granted except upon motion for good cause shown accompanied by a declaration from moving counsel detailing the steps that were taken to comply with the deadline with respect to the particular plaintiff and the reason the particular plaintiff is unable to comply within the deadline.

d. Good cause will not include a contention that counsel represents too many clients to be able to comply with the deadline. Counsel are advised to retain additional resources if existing resources are insufficient to represent all of their current clients.

e. Absent compelling circumstances such as a recent death or illness of the plaintiff, the inability of plaintiff's counsel to communicate with the plaintiff, either

because counsel no longer has current contact information or because the plaintiff will not respond to counsel's inquiries, will not constitute good cause.

3.     Defendants shall provide a DFS for plaintiffs who have timely provided a fully complete PFS as defined in paragraph D(1).  The Janssen DFS responses will be provided from data currently collected at that point in time and being held by Janssen's DFS vendor.  The data being held by Janssen's DFS vendor will be supplemented once every year through July 31, 2018.  Defendants shall each serve their responsive DFSs in waves of 200 DFSs per month, starting at the end of May 2018 and prioritizing by responding to the oldest PFSs first.

    a.     No extension of the 200 DFS per month obligation will be granted except upon motion for good cause shown accompanied by a declaration from moving counsel detailing the steps that were taken to comply with the deadline and the reason Defendants are unable to comply within the deadline.

    b.     Good cause shall not include a contention that counsel lacks the resources to comply with the deadline; counsel are advised to retain additional resources if existing resources are insufficient to comply.

    c.     A good faith dispute concerning whether a plaintiff has submitted a compliant PFS will stay the time for defendant to submit a DFS until such dispute is resolved by counsel or the Court; provided, however, that Defendants must notify the plaintiff's counsel of the particular claimed defect in the PFS.

4.     The Court will hold monthly show cause hearings to resolve disputes relating claims of PFS or DFS non-compliance.  The parties shall meet and confer and suggest a cost-efficient procedure for resolving such disputes without judicial intervention, and for having the

Court resolve disputes that cannot be resolved by agreement. Costs and/or fees may be imposed if the Court determines that a motion or opposition relating to the PFS or DFS is frivolous.

**E.     CASE WORK-UPS**

1.     A total of 260 plaintiffs shall be selected in 2018 in the MDL for work-ups (as defined in paragraph E(2) below) according to the timetable and procedures below:

  a.     Completion of the work-up of the remaining thirty-five (35) discovery pool plaintiffs may begin March 1, 2018. At the request of either party, depositions with respect to a particular plaintiff may be deferred until the collection of updated medical records which, if so requested, will be accomplished as soon as practicable. Plaintiffs will update their PFSs, including re-authorization of appropriate authorizations if expired, by March 15, 2018. Defendants will update their DFSs by March 15, 2008, with the Janssen DFS responses from data currently held by Janssen's vendor.

  b.     On or before March 15, 2018, an additional 75 plaintiffs will be randomly selected from among those MDL plaintiffs as to which there is a fully complete PFS as defined in paragraph D(1) and DFSs on or before December 31, 2017. The selected plaintiffs will update their PFS, including re-authorization of appropriate authorizations if expired, within thirty (30) days of selection, and Defendants will update their DFS within thirty (30) days after completion of the updated PFS, with the Janssen DFS responses from data currently held by Janssen's vendor. Depositions may commence once the necessary medical records have been collected. The work-up of these plaintiffs will be completed within one year of their selection.

    (i)     If the scope of additional generic discovery of Defendants has not been resolved prior to the time for determining the additional number of workups to be conducted, Defendants may seek and Plaintiffs oppose extending the time

for making that decision until the scope of Defendants' generic discovery obligations is clear.

c. On or before September 15, 2018, an additional 150 plaintiffs will be randomly selected from among those MDL plaintiffs as to which there is a fully complete PFS as defined in paragraph D(1) and DFSs on or about July 31, 2018. The selected plaintiffs will update their PFS, including re-authorization of appropriate authorizations if expired, within thirty (30) days of selection, and Defendants will update their DFS within thirty (30) days after completion of the updated PFS with the Janssen DFS responses from data currently held by Janssen's vendor. Depositions may commence once the necessary medical records have been collected. The work-up of these plaintiffs will be completed within one year of their selection.

d. The parties shall meet and confer regarding further PFS and DFS updates should these "work-up" cases described in Section E of this Order be scheduled for trial, including but not limited to a DFS amendment using data collected no later than one month prior to the DFS amendment.

e. A Case Management Conference will be held no later than November 2018 to determine the future course of MDL proceedings. The Court will solicit the parties' respective views concerning, among other things, the appropriateness of remanding cases to transferor courts versus conducting additional work-ups within the MDL, the number of remands and/or additional work-ups that might be appropriate, and the appropriateness of conducting additional trials within the MDL versus in the transferor courts.

2.  As used in this section, a "work-up" is defined as the completion of a full PFS and DFS, the collection of the plaintiff's medical records and production of other documents required to be produced by plaintiff (including the provision of updated authorizations if existing authorizations have expired), and the taking of the depositions of the plaintiff(s), one prescribing physician, one treating physician, and one detail representative who called upon the prescribing physician before the prescription at issue.

3.  The theory of liability litigated in the MDL bellwether trials has been the alleged failure to incorporate a warning, instruction or design regarding PT or anti-Factor Xa assay.

    a.  If plaintiff in a "Work Up Group" intends to assert a different claim against Defendants, within sixty (60) days of a plaintiff being selected for work-up, that plaintiff must file a statement in MDL Centrality specifying the factual basis for the theory of liability and causation. Defendants may file, and plaintiff may oppose, a motion to stay discovery until plaintiff provides an expert declaration on general and/or specific causation with respect to such claim. The Court will resolve any dispute.

    b.  If a "Work Up Group" plaintiff intends to pursue a claim based against Defendants for failure to incorporate a warning, instruction or design regarding PT or anti-Factor Xa assay, plaintiff shall provide records of all PT and/or anti-Factor Xa test results pertaining to the plaintiff during the period between two (2) months before the first prescription and three (3) days after the onset of the claimed injury. If there are no such results or if results are in the normal reference range for the laboratory conducting the test, Defendants may file, and plaintiff may oppose, a motion to stay discovery until plaintiff provides an expert declaration on specific causation with respect to such claim. The Court will resolve any dispute.

c. If a "Work Up Group" plaintiff intends to pursue a claim for physical injury other than a bleeding episode while on Xarelto®, that must be set forth in the PFS in response to Question I.D. If so Defendants may file, and plaintiff may oppose, a motion to stay discovery until the plaintiff provides an expert declaration on general and specific causation. The Court will resolve any dispute.

4. The following procedures shall apply to the scheduling of case work-up depositions:

a. **Plaintiff or Personal Representative Depositions.** Within thirty (30) days after Defendants advise Plaintiffs' that medical record collection is complete as to the designated Plaintiff, Plaintiff counsel shall provide defense counsel with three (3) alternative dates within the discovery period for the Plaintiff's/Plaintiffs' deposition. Plaintiff's counsel must provide Defendants with no less than 30 days' notice prior to the earliest proposed deposition date; the proposed dates shall not include weekends, holidays or the day preceding or following a holiday. Defense counsel shall use their best efforts to accept one of the three alternative dates provided by Plaintiff counsel.

b. **Physician Depositions.** After the deposition of the Plaintiff or personal representative, Defendants shall have the opportunity to depose the prescribing physician and one treating physician for each Plaintiff. The parties shall meet and confer to identify the relevant physicians, and if there are any disputes, such will be resolved by the Court. Plaintiffs' counsel and Defense counsel also shall agree upon three potential dates, not less than 30 days into the future, which are acceptable to both counsel for each physician's deposition. Plaintiff's counsel shall work in good faith with the Plaintiff's physician(s) to select a date from among the three proposed dates and location convenient

11

to the physician. If the physician is not available on any of the three proposed dates, Plaintiff's counsel shall notify Defense counsel and both counsel shall jointly contact the physician's office to obtain a mutually acceptable deposition date.

      c.    **Detail Representative Depositions**. Plaintiff counsel shall select the detail representative who called upon the plaintiff's prescribing physician before the prescription at issue to be deposed from the information provided in the Defendant Fact Sheets for each selected case. If the selected detail representative is still employed by the Defendant, upon selection of the detail representative to be deposed, Defense counsel shall offer three (3) alternative dates within the discovery period for the detail representative deposition. Defendants must provide Plaintiff counsel with no less than 30 days' notice prior to the earliest proposed deposition date; the proposed dates shall not include weekends, holidays or the day preceding or following a holiday. Plaintiff counsel shall use their best efforts to accept one of the three alternative dates provided by Defense counsel. If the selected detail representative is not still employed by the Defendant, the Plaintiff may select a different detail representative to depose or alternatively seek to subpoena the selected detail representative in which case the return date shall be coordinated with Defense Counsel.

5. The specification of case-specific fact discovery constituting a work-up is without prejudice to the parties' right to seek or oppose additional case-specific fact discovery either in this Court or in the transferor court. The parties anticipate that most requests for additional case-specific fact discovery will be addressed in the transferor courts; however, additional case-specific fact discovery may be taken in this Court by agreement of the parties or by order of the Court for good cause shown.

NEW ORLEANS, LOUISIANA this _____ day of _____, 2018.

_____
**HONORABLE ELDON E. FALLON
UNITED STATES DISTRICT JUDGE**

Respectfully submitted:

**Herman, Herman & Katz, LLC**

*/s/ Leonard A. Davis*
Leonard A. Davis (Bar No. 14190)
820 O'Keefe Avenue
New Orleans, LA  70113
Telephone:  (504) 581-4892
ldavis@hhklawfirm.com
*Co-Plaintiffs' Liaison Counsel*

**Gainsburgh Benjamin David Meunier & Warshauer, LLC**

*/s/ Gerald E. Meunier*
Gerald E. Meunier (Bar No. 9471)
gmeunier@gainsben.com
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA  70163-2800
Telephone:  (504) 522-2304
*Co-Plaintiffs' Liaison Counsel*

**Arnold & Porter Kaye Scholer LLP**

*/s/ Andrew Solow*
Andrew Solow
Steve Glickstein
William Hoffman
250 West 55th Street
New York, NY  10019-9710
Telephone: (212) 836-8485
sglickstein@akps.com
*Counsel for Defendants Bayer Healthcare Pharmaceuticals Inc., and Bayer Pharma AG*

**Drinker Biddle & Reath LLP
A Delaware Limited Liability Partnership**

*/s/ Susan M. Sharko*
Susan M. Sharko
600 Campus Drive
Florham Park, NJ  07932-1047
Telephone: (973) 549-7000
susan.sharko@dbr.com
*Counsel for Defendants Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC, and Janssen Ortho LLC*

**Irwin Fritchie Urquhart & Moore LLC**

*/s/ James B. Irwin*
James B. Irwin
Kim E. Moore
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
jirwin@irwinllc.com
*Defendants' Co-Liaison Counsel*

                **Chaffe McCall L.L.P.**

                <u>*/s/ John F. Olinde*</u>
                John F. Olinde
                1100 Poydras Street, Suite 2300
                New Orleans, LA 70163
                Telephone: (504) 585-7241
                olinde@chaffe.com
                *Defendants' Co-Liaison Counsel*

90629826.1