# EXHIBIT 3

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN)<br>PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO ALL ACTIONS | JUDGE ELDON E. FALLON |
| | MAG. JUDGE NORTH |

## DECLARATION OF TIMOTHY S. COON

I, Timothy S. Coon, declare under penalty of perjury, that:

1. I am a member of Eckert Seamans Cherin & Mellott LLC and one of the attorneys representing the Bayer defendants in this litigation. I have been and am responsible for planning and management of Bayer's document productions in this matter and have been the Bayer lawyer primarily responsible for coordinating with the Janssen defendants' counsel in regard to such issues, including the PSC's supplemental document requests.

2. The PSC's supplemental document production requests are broad-ranging. The PSC has requested documents relating to the EINSTEIN CHOICE, PIONEER, DAPT and ATLAS studies, the regulatory file and regulatory correspondence file concerning the Xarelto regulatory submissions to Health Canada, communications with the European Medicines Agency concerning the PIONEER and EINSTEIN CHOICE studies, documents relating to the preparation and publication of Xarelto articles authored by Bayer employee Dagmar Kubitza, documents concerning any other ongoing or planned clinical studies, and various other topics. See email from Neil Overholtz attached as Exhibit A hereto. Moreover, Exhibit A only

generally reflects categories of documents that the PSC has requested. Within the categories, the PSC seeks a broad range of materials. As but one example, I have appended as Exhibit B to my declaration a copy of the PSC's document request of November 29, 2017 which is focused on just one of the clinical studies, EINSTEIN CHOICE, for which the PSC seeks additional document production. That request demands production of documents in 10 broad categories of documents, nearly all of which include the typical demand for "any and all" documents in respect to each of the categories and subjects. I understand that the PSC has expressed willingness to narrow the scope of the requests but that negotiations are ongoing. However, the key point is that the number and identity of additional or updated files to be produced is not yet known, nor is the volume of potentially responsive documents in such files known at this point.

3.      After the parties reach agreement on the identity of the particular files and materials to be produced, Bayer and Janssen must then collect the files for review. For custodial files there are several potential sources of data, including the employee's email file including any archives, documents in the employee's files on the server network, documents on the employee's company-issued computer, and hard copy files (paper or electronic media) that the employee possesses. It takes time to identify and make duplicate copies of these materials. Arrangements must be made to copy the employee's computer while it is not in use. Paper files must be physically collected then sent to a vendor to be imaged into an electronic form, like a pdf. The German Bayer Defendants must also take additional steps to comply with German Data Privacy laws during the collection phase which further adds additional time to the collection process. Depending on the number of files involved, this step will likely take from at least several weeks to more than a month.

4.  Once data is collected, it then must be processed and loaded to a database to be reviewed by attorneys. This involves staging and inventorying the materials, identifying and opening all zip files and similar document "containers", identifying and resolving any technical issues with the documents, generating hash values, and numerous other tasks. Again depending on the number of files, this task will add several more weeks, or longer.

5.  Bayer and Janssen's document review vendor will also need to reconstitute a team to review documents for the supplemental productions. Following the completion of document production in 2016, the vendor disbanded its Xarelto document review teams. Some team members were assigned to other projects of the vendor; many others left the vendor's employ. As to those still employed who previously worked on Xarelto, the vendor will need reasonable time to transition them from their current projects so as to not prejudice completion of those projects for other clients. Depending on the size of the supplemental Xarelto production – which is still to be determined – it is likely the vendor will also need to add a substantial number of new reviewers to the Xarelto project who will require significant initial training, and greater oversight and QC. This process is will take at least several weeks and likely longer.

6.  New search terms will need to be developed and negotiated in order to identify the documents that are potentially responsive to the PSC's supplemental requests. The original search term list agreed to by the parties was designed to identify <u>any</u> document concerning or relating to Xarelto, on <u>any</u> topic or subject. However, the PSC is requesting documents targeted to specific topics, so that prior search terms would be over-inclusive. Accordingly, new search

terms must be developed to identify those documents in custodial or non-custodial files that are potentially responsive to the particular topics of the supplemental requests.[1]

7. The review team must review the document in its entirety to make a decision on relevance, confidentiality designation, and whether redaction of certain information is required. Every page of every document must be evaluated for content that must be redacted, such as patient or reporter identities in adverse event reports and related documents, patient identities in clinical study documents, sensitive data like passwords or social security numbers, certain highly protected personal information that must be redacted under German data privacy laws, and other items that the parties have agreed will be redacted pursuant to PTO 20. If redactions are required, a tiff image of the document must be generated and then the reviewer must create the redactions manually on the tiff image. Similarly the whole document must also be reviewed for relevancy. A portion of the documents in every custodian file is inevitably determined to be irrelevant after review. Frequently, a document "family" has both irrelevant and non-relevant documents. An example is an email with two attachments, one attachment relating to Xarelto and one relating to an entirely different product. This is because the majority of the employees whose files will be produced have functional responsibilities for many of Defendants' products and business activities, not just with respect to Xarelto. Their files contain highly sensitive and proprietary scientific and business information about products other than Xarelto which are not relevant to any issue in this litigation. Such documents include, for example, reports and plans

---

[1] Application of the original search term list would result in requiring the document review teams to manually assess every Xarelto-related document to determine if the document is responsive to the particular topics of the new document requests. This would dramatically increase the number of documents to be reviewed and greatly add to the time and cost of review for any supplemental production.

concerning new products in development, current financial and marketing information about products other than Xarelto, confidential business, strategic and marketing plans about products other than Xarelto, and similar materials that are both competitively sensitive and irrelevant to the issues in this matter.

8. The privilege review required before files can be produced is complex and involves significant volumes of documents to be analyzed. That entails a second review of a substantial portion of the documents. While many such documents are ultimately found not privileged, time spent on a second level privilege evaluation of the document, as well as further fact investigation on many potentially privileged documents, adds significantly to the overall document review time. After the privilege review, detailed privilege logs must be prepared and produced.

9. Bayer and Janssen's vendor also employs a second level QC process that includes a continual second-level review by senior personnel of samples sets of the work product of the first-level reviewers to insure proper determinations are being made on relevancy, confidential status, redaction and privilege, and an ongoing feedback loop between the senior reviewers and first-level reviewers to advise and provide further guidance on these determinations. To the extent new reviewers with no prior experience concerning Xarelto need to be added to the vendor's team, the QC process will need to be even more extensive.

10. After a file is fully reviewed, it must be prepared for production. This involves numerous steps including preparing production images, creating bates and confidentiality endorsements, creating load files and metadata files, and exporting the production set onto media for delivery to

opposing counsel, again overlaid by a final quality control process both by the e-discovery vendor and by the document review team.

11.     At present, Bayer and Janssen have no capability to determine the total quantity of documents that will need to be reviewed and produced in response to the PSC's supplemental production requests, as it is dependent on the factors described above: agreement on the identity and number of the files to be produced and the number of potentially responsive documents in each file after application of new search terms.  However, based on our experience with the initial round of document production completed in 2016,  and on the nature of plaintiffs' requests,  it would take at least six months to complete production even if the PSC limited their requests to a modest number of custodial and non-custodial files.  And of course the process would take longer if there was not a substantial narrowing.

As required under 28 U.S. Code § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 16, 2018.

_____
Timothy S. Coon

## Timothy S. Coon - PIT

**From:** Neil Overholtz <NOverholtz@awkolaw.com>
**Sent:** Thursday, December 07, 2017 3:52 PM
**To:** jennifer.lamont@dbr.com; Timothy S. Coon - PIT; Glickstein, Steven; Solow, Andrew K.; Susan Sharko
**Cc:** bhonnold@gohonlaw.com; Sam Geisler
**Subject:** Xarelto MDL Additional Discvery items

Steve, Andy, Susan, Jen and Tim:

I'm writing to follow up on the additional discovery items that have been identified by the PSC. I know that some or all have been previously discussed by Andy S. and Steve with Brian Barr and Andy Birchfield, or between myself and Susan. At this time I think it would be a good idea to schedule a call perhaps tomorrow or Monday to discuss, and also to begin the process of determining the next steps for each party related to this discovery, and whether we can reach agreement on some or all of these issues. The discovery items previously raised that the PSC is seeking are as follows:

1) Discovery related to the 2017 Kubitza article
2) Discovery related to communications with Health Canada or other foreign regulators regarding the usefulness of PT in determining the anticoagulant effect or bleed risk with Xarelto 3)     Discovery related to any studies or research, either concluded, ongoing or planned, that has not previously been disclosed related to methods to assess an individual patients exposure to, or bleed risk due to, the use of Xarelto
4) Discovery related to the discussions, both internal and external, surrounding the strike through of the proposed PT language in section 12.2 of the package insert
5) Discovery related to the draft manuscript produced as Xarelto_BHCP_11884161 (Lensing Depo. Exhibit 86) including any and all internal and external communications, drafts, final manuscripts, submissions to journals, underlying data and any analyses of such data
6) Discovery related to the secure email system identified as the source of emails to and from the FDA in the Mingo trial by counsel for Janssen [This is in process]
7) Discovery related to Lensing's email account, and emails not preserved from such account related to this litigation, as well as discovery related to Lensing's private email account, the planet.nl address, his personal laptop and its hard drive, and the existence of emails and Xarelto related data on such laptop.
8) Discovery related to the EINSTEIN CHOICE study, and the regulatory approval of the 10mg dose for VTE Recurrence prevention. [recently served]
9) Discovery related to the discussions, both internal and external, surrounding the strike through labeling that was contained in Defense trial exhibits DX5246 and DX5247
10) Discovery related to the use of Xarelto in patients on DAPT, as well as discovery related to the PIONEER study and related manuscripts.

I am available after 3 EST tomorrow, or Monday anytime.  Please let me know a good time to schedule this call.

Sincerely,
Neil


EXHIBIT A

Neil D. Overholtz, Esq.
**Aylstock, Witkin, Kreis & Overholtz, PLLC**
17 East Main Street, Suite 200

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | * * * | MDL 2592 |
| | * | SECTION L |
| THIS DOCUMENT RELATES TO ALL CASES | * * * | JUDGE ELDON E. FALLON |
| | * | MAG. JUDGE NORTH |

* * * * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS**

NOW INTO COURT, through undersigned counsel and pursuant to Rule 34 of the Federal Rules of Civil Procedure, come Plaintiffs herein, who serve this Request on Defendants Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC, Janssen Ortho LLC, Johnson & Johnson, Bayer HealthCare Pharmaceuticals Inc., Bayer Pharma AG, Bayer HealthCare LLC, and Bayer Corporation, (collectively, "Defendants").

I. **DEFINITIONS**

A. "Plaintiffs" as used in these Requests means all Plaintiffs filing claims in these proceedings.

B. The "Defendants" as used in these Requests means Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC, Janssen Ortho, LLC, Johnson and Johnson, Bayer Corporation, Bayer HealthCare AG, Bayer AG, Bayer HealthCare Pharmaceuticals, Inc., Bayer Pharma AG.

C. "And" or "or" shall be construed conjunctively or disjunctively as necessary to make the requests inclusive rather than exclusive. The use of the word "including" shall be construed to mean "without limitation."



EXHIBIT B

1

D.  Reference to the singular in any of these requests shall also include a reference to the plural, and reference to the plural shall include a reference to the singular.

E.  "Related to" or "relating to" shall mean directly or indirectly supporting, evidencing, describing, mentioning, alluding to, referring to, contradicting, comprising or concerning.

F.  All documents should be produced which are not subject to an objection and are known by, possessed or controlled by, or available to you, or your attorneys, representatives, or other agents.

G.  All documents are to be produced in their entirety, without abbreviation or redaction, including both front and back thereof, and all attachments or other matters affixed hereto.

H.  These requests shall be deemed continuing so as to require further and supplemental production by you in the event you obtain or discover additional documents between the time of responding to this subpoena and the time of any hearing or trial.

I.  Document means and includes the original and all non-identical copies or drafts of the following items: agreements; drafts; e-mails; communications; correspondence; telegrams; cables; facsimiles; memoranda; records; books; financial statements; summaries of records or notes of personal conversations or interviews; diaries; calendars; forecasts; statistical statements; accountants' work papers; graphs; charts; maps; diagrams; blue prints; tables; indexes; pictures; recordings; tapes; microfilm; charge clips;

2

accounts; analytical records; minutes or records of meetings or conferences; reports and/or summaries of investigations; opinions or reports of consultants; appraisals; reports and/or summaries of negotiations; brochures; pamphlets; circulars; trade letters; press releases; contracts; stenographic, handwritten or any other notes; projections; working papers; federal and state income tax returns; checks, front and back; check stubs or receipts; shipping documents; manifests; invoice vouchers; computer printouts and computer disks and tapes; and tape data sheets or data processing cards or disks or any other written, recorded, transcribed, punched, taped, filmed or graphic matters; however produced or reproduced.

J.  "Photograph" means a photographic image or its equivalent stored in any form.

K.  "Recording" consists of letters, words, numbers, or their equivalent recorded in any manner.

L.  "Video" means any recorded image or its or its equivalent stored in any form.

II. **DOCUMENTS TO BE PRODUCED**

1.  The entire DOCUMENT(s) or file(s) that constitute(s) any and all DOCUMENTS regarding or relating to the complete Supplemental New Drug Applications (sNDA) dated April 28, 2017, and amendments thereto, for approval of the new dosing regimen of 10 mg once daily for reduction of risk of recurrence of deep vein thrombosis (DVT) and/or pulmonary embolism (PE) in patients at continued risk for DVT and/or PE after

3

completion of initial treatment lasting at least 6 months as approved by the US Food and Drug Administration (FDA) on or about October 27, 2017 (herein referred to as "new 10 mg OD Xarelto dosing regimen").

2. The Summary Basis of Approval and Integrated Summary of Safety for the new 10 mg OD Xarelto dosing regimen as approved by the US Food and Drug Administration (FDA) on or about October 27, 2017.

3. Any and all DOCUMENTS regarding or relating to the efficacy of the new 10 mg OD Xarelto dosing regimen, including but not limited to Defendants' efficacy summary(ies) for the new the 10 mg OD Xarelto dosing regimen as approved by the U.S. Food and Drug Administration (FDA) on or about October 27, 2017.

4. Any and all DOCUMENTS regarding or relating to the safety of the new 10mg OD Xarelto dosing regimen, including but not limited to Defendants' safety summary(ies) for the new 10 mg OD Xarelto dosing regimen as approved by the US Food and Drug Administration (FDA) on or about October 27, 2017.

5. Any and all DOCUMENTS regarding or relating to the study *Reduced-Dosed Rivaroxaban in the Long-Term Prevention of Recurrent Symptomatic VTE (Venous Thromboembolism)* (Einstein Choice) as submitted to the FDA related to the new 10 mg OD Xarelto dosing regimen as approved by the US Food and Drug Administration (FDA) on or about October 27, 2017.

6. Any and all DOCUMENTS regarding labelling negotiations with the FDA related to the new 10 mg OD Xarelto dosing regimen as approved by the US Food and Drug Administration (FDA) on or about October 27, 2017.

7. Any and all DOCUMENTS regarding promotional materials developed for the new 10 mg OD Xarelto dosing regimen, including draft versions, and including any and all DOCUMENTS submitted to the Office of Prescription Drug Promotion (OPDP) regarding proposed introductory advertising and promotional labeling related to the new 10 mg OD Xarelto dosing regimen.

8. Any and all documents related to the published manuscript Weitz et al. (2017 NEJM 376(13)), which shall include: drafts, any and all communications with the listed authors, any proposed authors, journals, and medical writing companies including but not limited to Chameleon.

9. Any and all documents reflecting the basis for the decision to perform the Choice study by Defendants and their agents and consultants.

10. Any documents regarding the financial implications of reducing the dosage from 20 mg to 10 mg, the new dosage reflected in the October 27th label change.

Dated: November 29, 2017                Respectfully submitted,

/s/ Leonard A. Davis
Leonard A. Davis (Bar No. 14190)
820 O'Keefe Avenue
New Orleans, LA 70113
Telephone: (504) 581-4892
ldavis@hhklawfirm.com
*Co-Plaintiffs' Liaison Counsel*

*GAINSBURGH BENJAMIN DAVID MEUNIER*
*& WARSHAUER, LLC*

By: /s/ Gerald E. Meunier
Gerald E. Meunier (Bar No. 9471)
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Telephone: (504) 522-2304
*Co-Plaintiffs' Liaison Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on November 29, 2017 a copy of the above and foregoing Request for Production of Documents has contemporaneously with or before filing been served on all parties or their attorneys in a manner authorized by FRCP 5(b)(2), Local Rule 5.1 of the Eastern District of Louisiana and via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre-Trial Order No. 17.

/s/ Gerald E. Meunier
**Gerald E. Meunier**