# EXHIBIT 5

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO ALL ACTIONS | JUDGE ELDON E. FALLON |
| | MAG. JUDGE NORTH |

### DECLARATION OF HILLARY JOHNSON

I, Hillary Johnson, declare under penalty of perjury, that:

1) I am the General Manager of The Marker Group, Inc., medical record collection vendor retained by defendants in the Xarelto litigation.

2) Below is a general outline of the record collection process specific to the Xarelto litigation:

   A. Plaintiff Fact Sheets, Plaintiff Produced Medical Records and Authorizations are received from Plaintiffs via MDL Centrality.

   B. Plaintiff Produced Medical Records typically consist of selected documents rather than a complete set of records from key providers and are often limited to the time of event, excluding prior, post and current treatment records.
   1) In the initial 40 MDL Plaintiffs where records collection activity occurred, Plaintiffs produced 260 record sets, 161 of which were incomplete, which is 61.9% incomplete compared to Defense-collected records.
   2) In this same sample group, 73,678 pages of records were produced by plaintiffs. Defense collections from those same providers yielded a total of 138,355 pages of records, which is 87.7% more than Plaintiff productions.
   3) Comparison of produced and collected medical records is below:

| | Total | Average | Projected (5,000 Plaintiffs) |
|---|---|---|---|
| Medical Pages Produced by Plaintiffs | 73,678 | 1,991 | 9,956,486 |
| Medical Pages Collected by Defense from Same Providers | 138,355 | 3,739 | 18,696,622 |
| Deficiency in Plaintiff Productions | (71,333) | (1,928) | (9,639,595) |

63610846

|  | Total | Average | Projected (5,000 Plaintiffs) |
|---|---|---|---|
| Record Sets Produced by Plaintiffs | 260 | 7 | 35,135 |
| Deficient Record Sets | 161 | 4 | 21,757 |
| Percentage of Deficient Record Sets | 62% | 62% | 62% |
| Additional Key Provider Record Sets (not produced by plaintiffs) | 392 | 11 | 52,973 |
| Additional Key Provider Pages (not produced by plaintiffs) | 84,781 | 2,291 | 11,456,892 |

C. In order to collect medical records, properly and fully executed authorizations are required. Challenges requiring ongoing exchanges with Plaintiffs' counsel include:
   1) Information that is incomplete or missing from the authorizations produced by Plaintiffs.
   2) In some scenarios Plaintiffs' counsel will not produce blank authorizations for the vendor to direct to providers for collection. Instead, the vendor must request an authorization from Plaintiffs' counsel for every new provider identified for collection.
   3) Providers occasionally require a proprietary authorization form for release of records, unique to their facility, which requires a completely new form to be executed by Plaintiff.

D. Once requests are issued, follow-up with the provider must occur on a weekly basis to ensure timely delivery of records. On average, 6 follow-up attempts are made at varying intervals mostly dictated by the provider. Related challenges include:
   1) Providers are not required to respond before 30 days pursuant to HIPAA, and sometimes at the end of the 30 days, instead of producing records, they ask for their own special authorization form.
   2) Authorizations may have become stale prompting demand for updated authorizations.
   3) Providers claim the request was not received in 33% of initial follow-up attempts, requiring resubmission of the request.
   4) Approximately 40% of all follow-up attempts result in leaving messages and awaiting a return call to speak with a live person.
   5) Providers are non-compliant in 10% of requests, which is typically due to limited office staff and general uncooperativeness.

3) This process must be followed on each provider for each Plaintiff. Creating a compilation of records for each plaintiff is an investigative process that involves collection of records from providers not disclosed as part of Plaintiff productions. The identification of these providers occurs cyclically: as provider records are received, additional providers for

2

collection are identified, new requests are issued for those records, which can lead to identification of additional providers for collection, and so on.

4) Among Plaintiff collections that had reached 85% completion:

   A. There are, on average, 22 key providers per Plaintiff (prescribers, pharmacies, and claimed event treaters). Providers include physicians, group practices, and hospitals that require separate requests to be issued. For example, a Plaintiff may have been treated by his primary care physician who ordered a CT Scan, lab work, and refers to a hematologist. This would result in separate requests for each of those records from the providers who rendered service.

   B. There are, on average, 37 total providers per Plaintiff (inclusive of key providers described in paragraph 4(A), pre-event, current status, and providers not initially disclosed as part of the Plaintiff productions).

   C. The statistics in paragraphs 4(A) & (B) are averages. The actual number of medical providers will vary considerably among different Plaintiffs.

5) Because the many factors that influence collection times differ from Plaintiff to Plaintiff, there is great variance in the time it takes to complete medical record collections for each Plaintiff. Among Plaintiff collections that are 85%, the length of time it takes to complete collections is as follows:

| Length in Months | % of Plaintiffs Collection Completed |
|---|---|
| 2-3 Months | 34% |
| 4-5 Months | 47% |
| 6+ Months | 19% |

As required under 28 U.S. Code § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 16, 2018.

/Hillary Johnson

3