UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: XARELTO (RIVAROXABAN) | * | MDL 2592 |
| PRODUCTS LIABILITY LITIGATION | * | |
| | * | SECTION L |
| THIS DOCUMENT RELATES TO: | * | |
| ALL CASES | * | JUDGE ELDON E. FALLON |
| | * | |
| | * | MAGISTRATE JUDGE NORTH |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

---

**PSC BRIEF IN SUPPORT OF PLAINTIFFS'
PROPOSED CASE WORKUP AND REMAND PLAN**

**MAY IT PLEASE THE COURT:**

In response to the Court's Order of December 18, 2017 (Rec. Doc. 8159), the PSC respectfully submits (as Exhibit I) the Plaintiffs' Proposed Post-Bellwether Case Remand and Discovery Plan.

Both this and other MDL courts have long acknowledged that the authorized objectives of Multi-District Litigation are to serve the convenience of the parties and promote the "just and efficient" conduct of complex litigation, while at the same time preserving the principle of "substantial deference" to a plaintiff's choice of forum for trial on the merits. *See Manual for Complex Litigation* (4th Ed.), §§20.12 & 20.13, p. 19. Consistent with these objectives, the PSC plan prioritizes, and exclusively addresses, the selection, discovery and remand of trial-ready cases; and, in contrast to Defendants' proposed "CMO No. 6," it does so without at this time inviting Court-ordered processes and deadlines for further "generic" activity in the MDL. The PSC Plan also contemplates a remand that's sufficient in scope (5000 cases) to offset the prejudicial impact of delay on an aging population of claimants.

1

Prioritizing a significant remand of cases is fully justified given the current phase of these proceedings.   Several bellwether trials now have been concluded, entailing a substantial investment and expenditure of judicial and litigant time and resources.   Each of these trials informed the parties about the issues in this litigation, and each provided an important vehicle for the Court's rulings on common questions of law and evidence.   The Court also has afforded the parties ample opportunity to explore resolution.   At such a juncture, the highest priority for further MDL activity should be the selection, work-up and remand of cases certified to be ready for discovery and merits trials.   *See* Fallon, "Bellwether Trials in Multidistrict Litigation," 82 TUL. L. REV. 2323, 2339 (2008).   Whatever other activity remains to be undertaken in the MDL (preemption motion practice aimed at interlocutory appellate review, general discovery, trial preservation depositions to enhance the "trial package" for plaintiffs, a process for the further updating of claims data), is all activity which now should be informed by, and dependent upon, the ultimate advancement of individual MDL cases toward trial resolution.   After four years of intense litigation activity, this primary goal is best served by the remand of a significant number of cases.   Indeed, the PSC submits that it is precisely by implementing a timetable for case selection and remand that any additional "generic" work to be done in this MDL will be given proper context and focus.

There presently are 20,042 cases pending in the MDL and 19,587 Plaintiff Fact Sheets submitted, according to Jake Woody of Brown Greer, the Court-Appointed Claims Administrator. The PSC's proposed remand of 5,000 cases thus represents roughly 25% of the total MDL inventory, and is reasonable in scope.   Such an intentionally proportionate remand serves the fundamental MDL objective of allowing claimants to proceed to trials in their fora of choice, as opposed to remaining in a queue of thousands, and awaiting a staging of remands in smaller

numbers which would only serve to illustrate the danger of "justice delayed." *See* Fallon, "Bellwether Trials in Multidistrict Litigation," *supra*, at 2330 [referring to the strongest criticism of MDL proceedings]. Indeed, many users of Xarelto who claim injury herein are individuals with health problems and/or those who are advanced in age. Significantly postponing the trial of their cases may well be, as a practical matter, dispositive of their claims.

Defendants' proposed "Case Management Order No. 6" contemplates the remand of only a relatively small number of cases, while at the same attending to matters such as the pending motion practice on preemption, ongoing discussions about an appropriate deadline for general discovery, the protocol for trial preservation depositions, and the updating of Fact Sheets for all MDL cases. However, some of these matters already have been addressed under pending orders of this Court, and others remain the subject of further discussions among counsel. More importantly, in contrast to a PSC remand plan which entails deadlines for discovery and the updating of Fact Sheets as to the cases selected for remand only, the Defendants seek to impose a general discovery cut-off for all MDL cases, which in turn postpones (because it would precede) the process of trial preservation depositions. In this approach, the parties would go forward without reference to the general discovery or trial deposition needs in actual, trial-ready cases selected for remand. The PSC submits that it is the trial-ready cases, rather than Court-ordered deadlines and processes purporting to affect all MDL cases, which now should be the "driver" of further activity in this MDL.

Defendants' proposed Order (in Section A) recognizes that the pending preemption motions filed by defendants in the *Ibanez* case already "have been addressed in a separate Order." This refers to the Court's Order of November 13, 2017, which continued the further briefing and any hearing on Defendants' two preemption motions in that case until completion of "meet and

3

confer" discussions among counsel aimed at proposing a new briefing schedule. *See* Order of 11/13/17 (Rec. Doc. 7093). Those discussions continue, and, with the implementation of a case remand plan as the PSC proposes, will be properly informed by the timetable established through that plan. The PSC does not suggest that the Court's ruling on these motions and on the expected request for an interlocutory appeal following that ruling, is dependent on, or need be deferred until after, the proposed remand of 5,000 cases. Rather, the development of any further record deemed needed for reconsideration of the preemption defense in these proceedings, should and will continue through the ongoing discussions which have followed the Court's Order of November 13, 2017.

Defendants also propose to include in their Order (in Section B) provisions which refer to a "meet and confer" process which already is occurring with respect to the PSC's general discovery request to defendants. Based on these discussions, certain documents as to certain topics are to be produced by agreement, following which there will be additional discussions between the parties in an effort to agree upon the general discovery activity considered necessary to conduct and complete in the MDL. These discussions have not yet concluded, and the PSC sees no need for Court-ordered provisions on this subject at the present time. The parties instead should be directed to report on their discussions and potential agreements at the scheduled status conference of January 30, at which point any needed order of the Court may be considered.

More problematic than the lack of necessity for including this "generic discovery" Section in defendants' Order, is the fact that Defendants appear to contemplate the setting of a completion date for all general discovery in both the MDL and the consolidated Pennsylvania state court proceedings. This would improperly impose severe restrictions not only on state court proceedings where thousands of cases are in progress under standing orders and protocols, but also on

individuals whose claims are not yet filed and/or whose actions may not yet have accrued.  Such a drastic restriction should not be countenanced.  The drug product at issue in these proceedings (Xarelto) not only continues to be sold and actively marketed and advertised for use by Defendants, but is also the subject of continuing scientific study.  Such ongoing study will generate new and important findings of evidentiary value concerning the comparative risks and benefits of Xarelto. Indeed, as bellwether trials are still being worked up and conducted in Pennsylvania state court, and as potential new claims arise in both the MDL and in state courts due to injuries from the ongoing use of the drug, critical and relevant scientific developments concerning Xarelto not only have been disclosed but are virtually certain to occur going forward.  These developments should be the subject of timely discovery to the fullest extent possible before a given claimant is obliged to try his or her case on the merits.

Defendants purport to address this issue by reserving the rights of Plaintiffs to request, and Defendants to oppose, additional general discovery based on "material" new scientific developments; but the opportunity to discover and utilize current scientific evidence at trial is too critical to be made dependent on such a premature and potentially-adversarial process.  By first developing a "trial-ready" case profile through the PSC case remand plan, the Court and parties will be better informed about the handling of this sensitive "ongoing science" issue.

Thus, in avoidance of a deadline which impairs in advance the ability of future claimants to try their cases based on then-current science, a process for the selection and remand of a significant number of MDL cases, concurrent with ongoing bellwether trials in Pennsylvania, will dictate through case-specific deadlines the appropriate timeframes for access to whatever general discovery and scientific truth is relevant in a given case for trial purposes.  In contrast, the foreclosure of any and all general discovery through an Order such as Defendants contemplate, at

a time when many cases (both in the MDL and in Pennsylvania) still are so far removed from a merits trial date, is neither necessary nor appropriate if individual merits trials are now accepted as the first priority in these proceedings.  Any and all cases prospectively to be tried on the merits through a remand plan, including newly-arising claims of injury due to the use of Xarelto which may be filed in this MDL or in state court, simply must be given safeguards whereby the most current scientific evidence can be made available and presentable to the finder of fact.

Perhaps nowhere is the tension between the parties' conflicting positions on the next Order to be entered by the Court, more evident than in Section C of the Defendants' proposal.  Under the PSC's proposed Plan, discovery pertinent to a given case selected for remand will be completed within six months of that case selection, and that selection will have occurred within two months of the implementation of the Plan by Court Order.  In other words, the PSC Plan fixes an effective deadline for discovery as well as for any expert preservation depositions to be taken or usable for a remanded case (i.e., no more than eight months from the implementation of the PSC plan by Court Order).  Defendants, on the other hand, propose that no trial preservation depositions can even be scheduled "until the completion of any discovery agreed to by the parties or ordered by the Court" pursuant to further "meet and confer" efforts by the parties to agree on a general discovery cutoff date.  This enforced linkage between a yet-undecided deadline for all generic discovery and the commencement of any and/all trial expert preservation depositions, is problematic for the reason already mentioned, i.e., Xarelto remains on the market and scientific developments continue to occur even as remanded cases would approach merits trials.  But, more than this, such a significant postponement of needed trial preservation depositions also gives rise to the prospect of this MDL truly becoming a "black hole" for cases now in the queue for remands and merits trials.  To burden all such plaintiffs in these MDL proceedings with not only the forced

conclusion of generic discovery but also the postponement of trial preservation depositions even being set until after that point is reached, is patently unfair. [1]  To do so without regard to relevant discovery and trial schedules in actual cases to be tried, is both unfair and unnecessary.

Again, the alternative reflected in the PSC plan is to allow the schedule for case remand and work-up through discovery, to be the determinative factor as to when generic discovery is concluded and/or trial preservation depositions taken for purposes of that remanded case.  The specific timing for the first wave of remanded cases will, and should, dictate the deadline for expert preservation depositions (which, as noted, would be no more than eight months from the date the PSC plan is implemented by Order).   Tying the commencement of all expert preservation depositions to the closing of all generic discovery is nothing more than an invitation to unjust delay for remanded cases being worked up properly, not to mention the establishment of a process through which the MDL becomes an impediment to the needed, and arguably inevitable, trial of thousands of cases.  Absent global resolution by agreement, the expedited trials of those cases must be considered a governing objective.

It cannot be over-emphasized that the PSC is not ignoring the need for appropriate "generic activity" or "trial package" deadlines by which the Court may conclude further activity in this MDL.  On the contrary, it will be appropriate after the implementation of a case remand plan for the Court to direct the parties to meet and confer regarding generic discovery and trial preservation processes.  But the parties should do so only once informed by the prioritized activity for case remand and merits trials.

---

[1] Defendants may argue that allowing the discovery timetable in remanded cases to dictate generic discovery and trial preservation cut-offs, is to invite overlapping or duplicative activity.  Not so.  It will behoove a given plaintiff's counsel on remand to seek opportunities to include appropriate elements of the then-available PSC trial package; and Defendants will have every opportunity to preclude duplicative discovery or depositions in a given case.

In this regard, the PSC nonetheless notes that Section C(6) of defendants' proposed CMO No. 6 would prove problematic.  Under Defendants' proposal, the taking of an expert's deposition specifically for trial preservation purposes does not preclude "a party" (presumably including any party and not only the party noticing the deposition) from later choosing to call that expert live at trial.  Hence, as a practical matter, even the parties' mutual consent to preserve an expert's trial testimony by deposition, would not oblige either party to submit the deposition at trial as the testimony of the witness.  This is both unfair and impracticable.  The parties should be required <u>in advance</u> of a trial preservation deposition to stipulate that the deposition not only can, but (absent <u>mutual</u> agreement) will, be used <u>in lieu</u> of the live appearance of that witness at trial.  As to remanded cases in particular, this assures that any individual claimant in any transferee forum will be entitled to rely on the deposition itself as part of a "trial package" pertinent to that case, instead of being faced with the post-deposition possibility that a defendant may invoke witness "availability" rules of procedure to insist on a given, deposed witness appearing to testify at trial.

As to Section D of Defendants' proposed Order, dealing with Fact Sheets, there already is in place in the MDL a negotiated process for plaintiffs to update their Fact Sheets, limited to "core" information called for in that form.  *See* Pretrial Order No. 27 (Rec. Doc. 3132).  This protocol should suffice in reference to the MDL's global inventory and serves to protect the currency and integrity of MDL claims data.  There also is by Court Order a protocol for Defendant Fact Sheets. *See* PTO Nos. 14 (Rec. Doc. 896) and 14A (Rec. Doc. 1221).  What the PSC plan calls for is an additional process for the amending or updating of plaintiff fact sheets only <u>for those cases selected for remand</u>, as well as a corresponding obligation by the defendants <u>in those selected cases</u> to either update the DFS or certify that it is complete.

In Section E of their proposed Order, when Defendants finally do address the important question of remanded cases, they propose that the selection of cases for remand be limited to a total of only 260 cases (roughly 1.3% of the current MDL inventory), the first 35 of which would be drawn from the "discovery pool" cases previously identified for bellwether trial purposes, and the remaining 225 of which would be identified through a two-staged, "random" selection process. For several reasons, this approach is utterly inconsistent with the PSC's view of what should be a priority in this MDL going forward.

First, "random" selection ought have no place in the remand of cases for trial.  Counsel for plaintiffs are in the best position to decide which cases are ready for specific discovery and merits trials in the fora of plaintiffs' choice.  A random selection process, whatever its justification for bellwether trials in the MDL, is neither sensible nor efficient in the context of remand.  The objective of remand is to avoid undue delay in the trials of cases deemed ready for trial.  The selection of such cases has nothing to do with whether the case is deemed "instructive" or representative of the MDL inventory.  Hence, the selection of cases for remand properly should be guided by the unique knowledge and information in the possession of the attorneys and firms who represent these claimants.

Second, severely limiting the number of cases to be remanded and leaving almost 99% of the relevant case inventory subject to ongoing "generic" activity, undermines the principle that the advancement of claims to resolution now ought be the priority in this MDL.  Common issues have been addressed and ruled upon, extensive bellwether trial activity has been concluded, and bellwether trials are still taking place parallel Pennsylvania state court proceedings, even as thousands of aging individuals with health problems still await their day in Court in the federal fora where their cases ultimately must be tried.  The PSC proposal to remand 5,000 cases and have

all discovery activity in those cases completed within eight months, is fair and reasonable; and it should not be tied to or dependent upon deadlines uninformed by what those actual cases need for discovery and a proper trial workup.  The remand of a significant number of cases at this juncture will, in the final analysis, be supportive of the fundamental purposes of this MDL.

Finally, the PSC proposal of a substantial case remand process at this time, is supported by MDL precedent.  MDL judges routinely have ordered the remand of a substantial number of cases in the consolidated inventory, once bellwether trials have been concluded and the disposition of individual cases on the merits is in order.  *See e.g., In re Orthopedic Bone Screw Prod. Liab. Litig.*, No. MDL 1014, 1998 WL 118060 (E.D. Pa. Jan. 12, 1998).

Respectfully submitted,

Dated: January 16, 2018

*/s/ Leonard A. Davis*
Leonard A. Davis, Esq. (Bar No. 14190)
**HERMAN, HERMAN & KATZ, LLC**
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Email: ldavis@hhklawfirm.com

Gerald E. Meunier (Bar No. 9471)
**GAINSBURGH BENJAMIN DAVID MEUNIER & WARSHAUER, LLC**
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
Email: gmeunier@gainsben.com

***Plaintiffs' Liaison Counsel***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 16, 2018 a copy of the above and foregoing has contemporaneously with or before filing been served on all parties or their attorneys in a manner authorized by FRCP 5(b)(2), Local Rule 5.1 of the Eastern District of Louisiana and via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre-Trial Order No. 17.

*/s/ Gerald E. Meunier*_____
**Gerald E. Meunier**