UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO ALL ACTIONS | JUDGE ELDON E FALLON |
| | MAG. JUDGE NORTH |

**DEFENDANTS' JOINT RESPONSE (1) IN OPPOSITION TO PLAINTIFFS' PROPOSED WORK-UP PLAN AND (2) IN SUPPORT OF PROPOSED CMO 6**

Pursuant to the Court's December 18, 2017 order (Rec. Doc. 8159), Defendants submit this joint response in opposition to Plaintiffs' proposed work-up plan and in further support of proposed CMO 6.

**THREE IMPORTANT QUESTIONS**

Plaintiffs ask that the cases of 5,000 plaintiffs be worked up in six months and then remanded to the transferor courts.  Three questions should be asked about this plan:

(1) Is it physically possible to complete 5,000 work-ups (or anywhere near that number) in six months?  Or even a year?

(2) Wholly apart from the sheer number of cases and limited time, is the overall structure of the plan fair?

(3) Are there better alternatives?

As we demonstrate below, the answers to these questions are:

(1) No.   (2) No.   (3) Yes.

**I.      PLAINTIFFS' PLAN IS PHYSICALLY IMPOSSIBLE**

It is impossible to work up 5,000 cases in six months.  Five thousand work-ups requires

20,000 depositions:  5,000 plaintiffs, 5,000 prescribing physicians, 5,000 treating physicians, and

5,000 detail representatives.  Even accepting Plaintiffs' untenable assumption that depositions

can begin 30 days after the 5,000 cases are selected—which would leave no time to collect

medical records—completing 20,000 depositions in the remaining five months would require

over 130 depositions per day seven days a week, or over 180 depositions daily if the parties took

weekends off.  Nor would extending the time period from six months to a year do any good.

Again assuming work-ups would begin 30 days after the cases were selected, completing 20,000

work-ups in the remaining 11 months would require 60 depositions per day every day, or 84

depositions per day excluding weekends.

But of course depositions cannot begin in 30 days, because it takes far more than 30 days

to collect medical records.  As set forth in the declaration of Hilary Johnson, Exhibit 5 to

Defendants' opening brief (Rec. Doc. 8346), the time needed to collect medical records is largely

out of Defendants' control.  Even the swiftest collections take 2 - 3 months; the largest

percentage take 4 - 5 months and a significant percentage take 6 months or longer.  As a result,

to accommodate Defendants' right to collect medical records, Plaintiffs' proposed 20,000

depositions would actually have to be taken in a compressed two-month window.  That's over

300 depositions a day.  And even then, in a sizable percentage of cases, depositions of plaintiffs

and physicians would have to be taken without a full set of medical records, to Defendants' great

prejudice.

Simple math demonstrates that Plaintiffs' plan is unworkable.

II.     **PLAINTIFFS' PLAN IS STRUCTURALLY UNFAIR**

A.     **It Is Wasteful and Unjust to Order Massive Work-ups Before Appellate Review of the Preemption Defense**

Another MDL Court has held that all state law product liability claims against Eliquis—a

medicine in the same class—are preempted by federal law.  This Court has reached the opposite

conclusion with respect to Xarelto.  Self-evidently there is reasonable ground for difference of opinion.  The Fifth Circuit should be given the opportunity to address whether federal preemption bars all (or large numbers) of claims.  It is wasteful of both the parties' and the Court's resources to work up massive numbers of cases before learning from the Court of Appeals whether Plaintiffs' claims are preempted.  Nor should a huge number of cases be dumped upon the transferor courts before determining whether they are legally viable.  As a matter of justice, having now won 17 straight discovery pool cases[1]—three on defense verdicts, one on post-trial motion, one on pretrial motion, and 12 by voluntary dismissal—Defendants deserve the opportunity to test whether there is a defense to the litigation as a whole before having to litigate thousands of cases one-by-one.

> **B.      Ordering Massive Work-ups While Plaintiffs Initiate a New Round of Generic Fact Discovery—and While Plaintiffs Reserve Their Right to Change or Supplement Their Liability Theories—Is Unjust**

Generic discovery is supposed to precede case-specific discovery.  Theories of liability developed through the bellwether process are supposed to narrow the claims and defenses so that case-specific discovery of the remaining plaintiffs can focus on the theories and evidence developed in the bellwether process.

Plaintiffs here want to reverse the proper order.  They propose 20,000 case specific depositions in six months.  But the new document production Plaintiffs are demanding will take at least six months to complete,[2] and then of course Plaintiffs will want to take company witness depositions based on the new document production.  And then they will want their experts to rely on the new documents and company witness depositions.

---

[1] Yesterday, Plaintiffs in the PCCP dismissed the *Fu* case, which had been set for trial in May 2018.

[2] *See* Declaration of Timothy S. Coon, Exhibit 3 to Defendants' opening brief (Rec. Doc. 8346).

What this means is that under Plaintiffs' plan, case-specific discovery would precede generic discovery. Defendants would have to take 5,000 thousand plaintiff depositions, 5,000 prescribing physician depositions and 5,000 treating physician depositions without being able to frame deposition questions that take the new evidence and Plaintiffs' new theories into account, and would have to defend 5,000 detail representative depositions without being able to prepare their witnesses to address the new documents and theories. The sequence is backwards and would unfairly prejudice Defendants.

**C.     Ordering Generic Expert Trial Preservation Depositions While Plaintiffs Initiate a New Round of Generic Fact Discovery Violates Fed. R. Civ. P. 26**

Plaintiffs' initiation of a new round of document production and company witness depositions raises another concern. Plaintiffs' experts will undoubtedly want to rely on the new discovery depositions at their trial preservation depositions. But Plaintiffs do not say that Defendants would be allowed to take a discovery deposition before the trial testimony on those new opinions or new reliance materials. Fed. R. Civ. P. 26(a)(2)(B)(i), 26(b)(4)(a) and 26(e)(2) require that new opinions and reliance materials be disclosed in a supplemental report, and that a discovery deposition be permitted before the expert's trial testimony. Any proposal that attempts to jump right to the trial preservation testimony—and skip the supplemental report or discovery deposition—would violate the Federal Rules.

**D.     Allowing Plaintiffs to Unilaterally Pick the Work-up Cases is Unjust**

Plaintiffs attempt to arrogate to themselves the sole right to select work-up cases because, according to them, "[c]ounsel for plaintiffs are in the best position to decide which cases are ready for specific discovery and merits trials in the fora of plaintiffs' choice." Pl. Br. (Rec. Doc. 8348) at 9. That is sophistry. Plaintiffs want to select what they perceive to be their best cases for work-up, shielding from discovery what they perceive to be the weaker cases. The weaker

cases would then linger on the docket as statistics to show how "large" the MDL is, with

Plaintiffs falsely claiming that the cases they left on the vine are just as good as the ones they

cherry-picked.

There is no reason to provide Plaintiffs with a unilateral litigation advantage.  Random

selection assures a fair cross-section of cases.  It favors neither Plaintiffs nor Defendants because

neither party can manipulate the work-up pool.

Nor does the Court have to worry about selecting unready cases.  Under proposed CMO

6, selections would be limited to plaintiffs who have filed a substantially complete Fact Sheet

demonstrating proof of use of Xarelto and proof of a claimed injury.  If these plaintiffs are

"unready" to proceed with their cases, it is not because the cases are brand new; it is because

they prefer not to have the merits of their cases exposed to the sunlight of discovery.

We also point out the obvious.  If a large percentage of individual plaintiffs are unwilling

to proceed with discovery of their cases, that is important information for the parties and the

Court to learn in evaluating how to proceed going forward.  Random selection will provide

crucial data concerning what percentage of plaintiffs are willing to litigate their cases.  Allowing

Plaintiffs to hijack the selection process—and to shield from discovery those plaintiffs unwilling

to proceed—would conceal from the Court the inflated nature of the inventory.

**E.      Allowing Insufficient Time for Defendants to Collect Medical Records Before Taking Depositions Violates Fed. R. Civ. P. 26 and Is Unjust**

A major flaw in Plaintiffs' proposed order is that it provides no time for Defendants to

collect medical records, permitting depositions of individual plaintiffs and their physicians to

start 30 days after the cases are selected for work-up.  The assumption behind this timetable is

that individual plaintiffs' counsel will already have collected pertinent medical records, and that

Defendants should unquestionably accept what is given to them as "complete."  There is no

factual basis for that assumption.  As set forth in the declarations of Hilary Johnson and Joan

Goddard, Exhibits 5 and 6 to Defendants' opening brief (Rec. Doc. 8346), the medical records

Defendants receive from individual plaintiffs' counsel are often deficient.  Counsel do not collect

records from important medical providers, the records from providers they do turn over often are

incomplete, and crucial information (bleeding episodes on other anti-coagulants, clotting events

after discontinuing Xarelto, non-compliance with monitoring while on Warfarin) is often

missing.  There is no legal basis to deprive Defendants of their right to obtain plaintiffs' medical

records through formal discovery to assure completeness of the production.  A work-up plan that

requires depositions to begin before medical records can be obtained violates the Federal Rules

and denies the Defendants a fair opportunity to contest plaintiffs' claims.

> **F.      Allowing Insufficient Time to Take Plaintiff and Physician Depositions
>          Under Penalty of Waiver Violates Fed. R. Civ. P. 26 and Is Unjust**

Plaintiffs' work-up plan contains draconian forfeiture provisions concerning the

scheduling of plaintiff and physician depositions.

- With respect to physician depositions, Plaintiffs propose that individual plaintiffs' counsel agree upon a date for the deposition with the physician—without consultation with defense counsel—and if defense counsel is not able to make the date agreed upon by plaintiffs' counsel and the physician, Defendants would forfeit the right to take the deposition.

- With respect to plaintiff depositions, Plaintiffs propose that individual plaintiffs' counsel offer three dates for the depositions—again without consultation with defense counsel—and that Defendants would forfeit the right to take the deposition if he/she were unable to make one of those dates.

These provisions are unacceptable.  Defendants can agree to use their best efforts to

accept the selected dates, but it is neither practical nor fair to compel defense counsel in all cases

to accept deposition dates unilaterally selected by the other party.  Under Plaintiffs' plan there

would be thousands of depositions scheduled, with a very high chance of the same defense

counsel being required to appear at multiple depositions in multiple cities on the same date.

6

Deposition scheduling requires good faith, flexibility and professional courtesy.  There is no need for Plaintiffs' forfeiture provisions:  once the number of work-ups is determined, the parties should be able to negotiate a fair scheduling proposal.

### G.	Plaintiffs' Plan Violates Due Process

In its totality, as well as in its individual components, Plaintiffs' plan violates due process.  The plan calls for the taking of 5,000 plaintiff depositions, 5,000 prescribing physician depositions, 5,000 treating physician depositions and 5,000 detail representative depositions in six months (1) with no time for Defendants to collect or analyze individual plaintiffs' medical records, and no opportunity to take those medical records into account when taking or defending those depositions, (2) while generic discovery is being re-opened with a new round of document production and likely more company witness depositions, and no opportunity to take that new evidence into account when taking or defending those depositions, (3) while Plaintiffs' theories of liability are evolving and with no opportunity to take those evolving theories into account while taking or defending those depositions, (4) with over 180 depositions taking place simultaneously every business day, an impossible undertaking.  The plan denies Defendants the opportunity to mount a meaningful defense, and if adopted would deprive Defendants of due process.

## III.	THERE ARE BETTER ALTERNATIVES

### A.	260 Work-ups/Interlocutory Appeal

Defendants' proposed CMO 6 provides a balanced approach that is fair to both Plaintiffs and Defendants.  Defendants' proposal has four goals:

(1)	To find out the Fifth Circuit's view of the federal preemption defense, and in particular whether they agree with the approach adopted in this MDL (which rejected the

defense) or the Eliquis MDL (which sustained the defense); if the Fifth Circuit sustains the

defense, that would obviate the need for huge numbers of work-ups.[3]

      (2)      To nonetheless work up a very substantial number of individual plaintiffs'

cases—Defendants propose 260, which historically is a large number for an MDL in its fourth

year[4]—so that there will be a large number of cases ready to be remanded to transferor courts if

the Fifth Circuit rejects the preemption defense;

      (3)      To sequence the new discovery Plaintiffs seek in 2018 in a logical order that

affords Plaintiffs an opportunity to develop any new theories and evidence that the Court chooses

to allow, while also affording Defendants a fair opportunity to defend against those new theories

and evidence, so that

---

[3] Plaintiffs have asserted that a Fifth Circuit preemption decision could not be applied to all MDL plaintiffs.  Not true.  The MDL statute (28 U.S.C. § 1407) empowers the MDL Court to conduct "coordinated or consolidated pretrial proceedings."  Pretrial proceedings include disposition of pretrial motions.  MDL Courts have routinely granted pretrial dispositive motions without remanding to the transferor courts for separate decisions in every District and Circuit.  *See, e.g.*, *Cheung v. Bristol-Meyers Squibb Co*., 2017 U.S. Dist. LEXIS 169407, *2 (S.D.N.Y. Oct. 12, 2017) (Eliquis MDL Court sustained preemption defense and dismissed cases without remand because plaintiffs failed to explain "why the amended complaint should not be dismissed based on the analysis in the May 8 *Utts* opinion"); *In re Mirena IUD Prods. Liab. Litig*., 2017 U.S. App. LEXIS 20875, *2 (2d Cir. Oct. 24, 2017) (affirming dismissal following Daubert/FRE 702 exclusion for all cases, "terminating the multi-district litigation" without remand); *In re "Agent Orange" Prod. Liab. Litig*., 818 F.2d 187, 192 (2d Cir. 1987) (affirming MDL Court's dismissal based on government contractor defense); *In re Zoloft Sertaline Hydrochloride Prods. Liab. Litig*., 176 F. Supp. 3d 483, 501 (E.D. Pa. 2016) (dismissing claims in broad set of MDL cases following Daubert exclusion); *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practice and Prods. Liab. Litig.,* 226 F. Supp. 3d 557, 583-84 (D.S.C. 2017) (declining to allow plaintiffs to "avoid the writing on the wall" through remand, because "[a]n MDL transferee judge has authority to dispose of cases on the merits—for example, by ruling on motions for summary judgment").

[4] *See* Declaration of Alan E. Rothman, Exhibit 4 to Defendants' opening brief (Rec. Doc. 8346).

        (a)      for generic discovery, the order would be first document production, then company witness depositions, then expert supplementation and discovery depositions on the supplements, and then expert trial preservation depositions, and

        (b)      for case-specific discovery (work-ups), the order would be first supplements to Plaintiff Fact Sheets and Defendant Fact Sheets, then medical record collection, then reasonable specification of the claims being pursued, and then case-specific depositions.

    (4)    To provide realistic rather than impossible deadlines for accomplishing these tasks consistent with the record evidence of how long it will take Defendants to undertake another document production and to collect medical records.

Defendants' plan is flexible.  This is a proposal only for 2018:  proposed CMO 6 explicitly contemplates a conference in November 2018 where the Court will decide how many work-ups are appropriate for 2019, at which time both sides are free to urge the Court to order a higher, lower or the same number of work-ups as in 2018 based on the then-existing litigation status and real world-experience with the first round of work-ups.

## B.     More Efficient Procedure for Hearings on PFS Defaults

As the Court knows, attempting to obtain dismissals from individual plaintiffs who do not submit Fact Sheets—or whose Fact Sheets do not contain proof that they used Xarelto or that they had a bleeding episode while using Xarelto—has been like undergoing a root canal.  The current procedure is cumbersome, slow and needlessly expensive.  It places the burden of eliminating these obviously meritless claims on Defendants and the Court when the burden to investigate the claims in the first place should be on individual plaintiffs' counsel.

There should be a more efficient way of weeding out plaintiffs who have never taken Xarelto, or who never had a bleeding episode while on the medication, or who simply don't want

to pursue a claim. Due process is of course required, but absent extenuating circumstances it should suffice in most cases to provide a single extension of time to cure a fundamental deficiency—especially when one considers that proof of use and proof of injury should be information that counsel has before filing a case. The Court should ask the parties to meet and confer and attempt to devise a more streamlined procedure for dismissing baseless cases.

### C.    Other Potentially Dispositive Motions

There are dispositive issues other than federal preemption that potentially pertain to large categories of cases. For example, the Court's statute of limitations decision in *Louviere*, which was not appealed, affects a large number of cases. Some states with large numbers of claimants provide a conclusive defense to product liability claims based on FDA approval.[5] This issue would have been litigated in *Henry*, except the plaintiff dismissed the case before dispositive motions were heard. It makes sense for the parties and the Court to identify other dispositive issues that might affect a significant numbers of cases, and then to discuss whether (and if so, how) to tee any of those up for resolution by the Court.

### CONCLUSION

For the reasons stated above, Defendants request that the Court reject Plaintiffs' proposed case work-up plan and instead enter Defendants' proposed CMO 6.

---

[5]  *See* Tex. Civ. Prac. & Rem. Code § 82.007(a); Mich. Comp. Laws Ann. § 600.2946(5).

January 25, 2018

Respectfully submitted:

**Arnold & Porter Kaye Scholer LLP**

*/s/ Andrew Solow*
Andrew Solow
Steve Glickstein
William Hoffman
250 West 55th Street
New York, NY  10019-9710
Telephone: (212) 836-8485
sglickstein@akps.com
*Counsel for Defendants Bayer Healthcare*
*Pharmaceuticals Inc., and Bayer Pharma AG*

**Drinker Biddle & Reath LLP**
**A Delaware Limited Liability Partnership**

*/s/ Susan M. Sharko*
Susan M. Sharko
600 Campus Drive
Florham Park, NJ  07932-1047
Telephone: (973) 549-7000
susan.sharko@dbr.com
*Counsel for Defendants Janssen*
*Pharmaceuticals, Inc., Janssen Research &*
*Development, LLC, and Janssen Ortho LLC*

**Irwin Fritchie Urquhart & Moore LLC**

*/s/ James B. Irwin*
James B. Irwin
Kim E. Moore
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
jirwin@irwinllc.com
*Defendants' Co-Liaison Counsel*

**Chaffe McCall L.L.P.**

*/s/ John F. Olinde*
John F. Olinde
1100 Poydras Street, Suite 2300
New Orleans, LA 70163
Telephone: (504) 585-7241
olinde@chaffe.com
*Defendants' Co-Liaison Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on January 25, 2018, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

*/s/ John F. Olinde*