1                    UNITED STATES DISTRICT COURT

2                    EASTERN DISTRICT OF LOUISIANA

3

4

5    IN RE:  XARELTO              *
     (RIVAROXABAN) PRODUCTS       *
6    LIABILITY LITIGATION         *

7    THIS DOCUMENT RELATES TO:    *    Docket No.: 14-MD-2592
                                  *    Section "L"
8    Dora Mingo, et al. v.        *    New Orleans, Louisiana
     Janssen Research &           *    July 21, 2017
9    Development, LLC, et. al.,   *
     Case No.: 15-CV-3469         *
10   * * * * * * * * * * * * * * * *

11      TRANSCRIPT OF IN-CHAMBERS STATUS CONFERENCE PROCEEDINGS
            BEFORE THE HONORABLE ELDON E. FALLON
12                UNITED STATES DISTRICT JUDGE

13
     APPEARANCES:
14

15   For the Plaintiffs'
     Liaison Counsel:          Gainsburg Benjamin David
16                               Meunier & Warshauer
                               BY:  GERALD E. MEUNIER, ESQ.
17                             2800 Energy Centre
                               1100 Poydras Street
18                             New Orleans, Louisiana 70163

19
     For the Plaintiffs:       Beasley Allen
20                             BY:  ANDY BIRCHFIELD, ESQ.
                               P.O. Box 4160
21                             Montgomery, Alabama 36103

22

23

24

25

APPEARANCES:

For the Defendant Bayer
HealthCare Pharmaceuticals
Inc. and Bayer Pharma AG:      Mitchell, Williams, Selig, Gates &
                                 Woodyard, P.L.L.C.
                               BY:  LYN P. PRUITT, ESQ.
                               425 W. Capitol Avenue, Suite 1800
                               Little Rock, Arkansas 72201


                               Watkins & Eager, PLCC
                               BY:  WALTER T. JOHNSON, ESQ.
                               400 East Capitol Street
                               Jackson, Mississippi 39201


                               Arnold & Porter Kaye Scholer, LLP
                               BY:  STEVEN GLICKSTEIN, ESQ.
                               250 West 55th Street
                               New York, New York 10019


                               Chaffe McCall, LLP
                               BY:  JOHN F. OLINDE, ESQ.
                               1100 Poydras Street, Suite 2300
                               New Orleans, Louisiana 70163


For Janssen Pharmaceuticals,
Inc. and Janssen Research &
Development, LLC:              Barrasso Usdin Kupperman Freeman &
                                 Sarver, LLC
                               BY:  RICHARD E. SARVER, ESQ.
                               BY:  CELESTE COCO-EWING, ESQ.
                               909 Poydras Street, 24th Floor
                               New Orleans, Louisiana 70112


                               Drinker Biddle & Reath, LLP
                               BY:  SUSAN M. SHARKO, ESQ.
                               600 Campus Drive
                               Florham Park, New Jersey 07932

1   APPEARANCES:

2

3   Official Court Reporter:      Jodi Simcox, RMR, FCRR
                                  500 Poydras Street
                                  Room HB-406
4                                 New Orleans, Louisiana 70130
                                  (504) 589-7780
5

6

7   Proceedings recorded by mechanical stenography, transcript

8   produced by computer.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

### <u>PROCEEDINGS</u>

**(July 21, 2017)**

**\*\*\*\*\*\***

(WHEREUPON, the following proceedings were held in chambers.)

**THE COURT:**  Hello, everybody.  Have a seat, please. Okay.  Does everybody have a seat?  Okay.  All right.

Let's look at the proposed pretrial order first. Any issue with the documents, the exhibits, the manner in which both sides, I assume, plan on doing them?  With the exhibits, it's important for you to kind of give me some heads-up on the exhibits so that I can rule on them.  It won't take me long, but I will rule on them.

The same way with the depositions.  It's helpful to me to see the depositions that you're going to introduce into evidence, the objections, I'll rule on them, and I'll write my rulings in the margin of the deposition and give them back to you so you'll know what they are.  I'll cite whatever cases I can think of or rules that I can think of in support of it, and we'll make that a part of the record.

**MR. BIRCHFIELD:**  Judge Fallon, on our side, Neil Overholtz has been spearheading that from the previous pretrials, and he's doing the same in this trial.  He couldn't be here today because one of his law partner's dad died

01:22  1    yesterday afternoon, and then he's leaving for the Lensing
01:22  2    deposition.  But, at least from our perspective, that process
01:22  3    is working well so far in getting the depositions to you.
01:22  4                THE COURT:  Okay.  Do you all have any questions on
01:22  5    that?
01:22  6                MS. COCO-EWING:  Your Honor, the only thing -- it's
01:22  7    Celeste Coco-Ewing -- the only thing I just wanted to raise is
01:22  8    we will be submitting some depositions.  The plaintiffs are
01:22  9    submitting some depositions for rulings today.  Since we're
01:23 10    dealing with a new indication in this case, the DVT treatment
01:23 11    as opposed to AFib, you're going to be seeing some new
01:23 12    objections from defendants' side, and I just wanted to make
01:23 13    sure that you were aware that because of this different
01:23 14    treatment that you'll be seeing objections.
01:23 15                THE COURT:  Okay.  Now, I'll be gone next week.  I
01:23 16    will be in touch with my office, but I will be gone next week.
01:23 17    So get them to me the following week and I'll get them back to
01:23 18    you as quickly as I can.
01:23 19                MS. SHARKO:  Your Honor, we have submitted today
01:23 20    three depositions, Geiger, Misselwitz and Spiro.  So your
01:23 21    office should have them.
01:23 22                THE COURT:  Okay.
01:23 23                MR. BIRCHFIELD:  I know it's all set out in the
01:23 24    objections that's coming.  Our position is it's the same drug,
01:23 25    we're looking at the same safety issue, your prior rulings

01:23   1   should, for the most part, be applicable.

01:23   2           THE COURT:  Okay.  With the exhibits, the last couple

01:23   3   of trials, you've given to me 5,000 exhibits, and you've

01:23   4   introduced 30 or 40.  So I don't want to waste my time looking

01:24   5   at 5,000 exhibits if that's all you're going to use.  So let's

01:24   6   just keep that in mind.  If you may or may not use it, give it

01:24   7   to me; but if you know you're not going to use it, don't

01:24   8   exercise me on something like that.

01:24   9           MS. COCO-EWING:  Your Honor, it's Celeste Coco-Ewing

01:24   10  again.  Just so you're aware of what we've agreed to with the

01:24   11  plaintiffs on that, which is the same that we had in the

01:24   12  *Boudreaux* and the *Orr* case, 24 hours before a witness appears

01:24   13  on direct, the direct exhibits will be exchanged.  The cross

01:24   14  will be used in real time, and objections will be happening in

01:24   15  real time.

01:24   16          THE COURT:  That's fine.  Right.

01:24   17              Anything in the pretrial that you all see that's

01:24   18  problematic?

01:24   19          MS. SHARKO:  I have an issue.

01:24   20          THE COURT:  Go ahead, Susan.

01:24   21          MS. SHARKO:  We have an issue with the witness list.

01:24   22  So the plaintiffs gave us a witness list, I think, on

01:25   23  July 7th and it includes on the will call list two current

01:25   24  Janssen employees, and on the may call list, it includes ten

01:25   25  current and former Janssen employees.  So I've met and

JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

01:25 1    conferred with first with Andy and then and Brian.

01:25 2                    And on the will call list, there are two detail

01:25 3    reps.  They are in Mississippi.  Plaintiffs insisted that they

01:25 4    have two instead of one, and I have committed to produce both

01:25 5    of them.  I accepted the subpoenas for them, and we've agreed

01:25 6    on a date that they'll testify.

01:25 7                    But then when you go to the may call list where

01:25 8    there's ten more Janssen people, none of whom are in

01:25 9    Mississippi, that's a real problem with that many people.  So

01:25 10   they seem to have narrowed the list down to six.  Four are

01:25 11   current; two are former.

01:25 12                   Many of these people are on vacation, which is

01:26 13   something I warned everybody about going back to the beginning:

01:26 14   New Jersey goes on vacation in August.  We will move to quash.

01:26 15   But six people remotely is just a lot.  I mean, these people

01:26 16   all gave long depositions.  Many of them have had their video

01:26 17   shown at trial, designations have been submitted on them.

01:26 18            THE COURT:  Yes.  What's the other side on that?

01:26 19            MR. BIRCHFIELD:  Well, Judge, we could narrow it if

01:26 20   we knew who would be coming or who would be available.  And so

01:26 21   of the two, one of the former employees was, we just learned

01:26 22   like last week, that he is now a former employee.  We are

01:26 23   attempting to get two of those former employees served.

01:26 24   They're being challenging to get served, but we're working on

01:27 25   that.

01:27  1            If we get them served, then there would be
01:27  2    others that we could say, we're not going to call them.  But
01:27  3    until we know who we're going to have, and, you know, we can't
01:27  4    say -- we can't exclude them.
01:27  5            MS. SHARKO:  But service isn't the issue.
01:27  6            THE COURT:  Okay.  Susan, get with Andy.  If you all
01:27  7    can't work it out, file a motion to quash, and I'll deal with
01:27  8    it.
01:27  9            MS. SHARKO:  So I have -- I mean, we're kind of past
01:27 10    that.
01:27 11            MR. BIRCHFIELD:  But service is an issue, though,
01:27 12    Susan.
01:27 13            MS. SHARKO:  On the four current employees, I have
01:27 14    agreed to accept service.  I've told them when two of them, I
01:27 15    think, are available.  The other two I haven't been able to get
01:27 16    in touch with.  On the two former employees, they've been
01:27 17    former employees since before the trial, which I told the
01:27 18    plaintiffs back then.  And I told them I've learned from their
01:27 19    current employer, both are on vacation the week of August 7th.
01:27 20            If service is the issue, I can talk to the
01:27 21    lawyer for their current employer and ask him to accept
01:28 22    service.  I think we should assume that they can all be served,
01:28 23    and then we really need to narrow it.  It's not fair to have --
01:28 24    I don't think it's fair to have any, but it's not fair to have
01:28 25    six.

01:28 1    **THE COURT:**  Yes, I agree with that.  We've got to try
01:28 2  to narrow it, Andy.  Get with Susan and discuss that.
01:28 3    **MR. BIRCHFIELD:**  So, Judge, if -- I mean, if they
01:28 4  let --
01:28 5    **THE COURT:**  Yes.  If they can assure you that those
01:28 6  are going to be present, then see what you can do.
01:28 7    **MR. BIRCHFIELD:**  That's a new development.  So I'll
01:28 8  be glad to discuss that.
01:28 9    **MS. SHARKO:**  Well, we're going to -- we're still
01:28 10  going to move to quash, but we shouldn't have to move to quash
01:28 11  for six.
01:28 12    **MR. BIRCHFIELD:**  Right.  So if you're telling me that
01:28 13  you can get service accepted for Moye and Torr, then I can
01:28 14  limit it.  We can fight that battle.  I'll be glad to limit
01:28 15  those, but I can't say I'm going to limit it to these three and
01:28 16  then not know whether I can even get them here because they're
01:29 17  avoiding service or we're not teeing up a motion to quash it.
01:29 18    **MS. SHARKO:**  Okay.  So I told Brian this morning that
01:29 19  Moye and Torr are away on vacation the week of August 7th.  I
01:29 20  don't know where they are the week of August 14th.  I will ask
01:29 21  their company's lawyer to accept service.  But then please let
01:29 22  me know today or Monday or over the weekend what the narrower
01:29 23  list is.
01:29 24    **MR. BIRCHFIELD:**  Well, the fact that they wouldn't be
01:29 25  available for our week of trial is a problem.  And so, I mean,

01:29 1  if we can get them served and we can tee up the issue about

01:29 2  whether them being on vacation is a sufficient basis to quash

01:29 3  the subpoena, then once I have an answer on that, then I can

01:29 4  exclude them.

01:29 5          That's where we are.  I mean, Judge, we're at a

01:29 6  place where we believe we need -- we need some company

01:29 7  witnesses.  We think that it is extremely challenging, and

01:29 8  we'll still have to play video depositions, but we would like

01:30 9  to reduce that if we can.  We need a company witness to be able

01:30 10 to address these issues, and we don't intend to call six, but

01:30 11 we've got to have a pool that we can draw from.

01:30 12          THE COURT:  I hear both of you all.  I understand

01:30 13 what the issue is.  He's going to need some certainty that he

01:30 14 can get his people here; if not, then he's got to keep it

01:30 15 fluid.  If you can give him some certainty as to who's going to

01:30 16 be there, let's limit it.  Six is too many.  There's no

01:30 17 question about that.

01:30 18          MS. SHARKO:  Okay.

01:30 19          MS. COCO-EWING:  Your Honor, on the treaters.  There

01:30 20 were two treaters, Dr. Keith and Dr. Jordan, who are on both

01:30 21 side's list.  We've talked to the plaintiffs.  They're going to

01:30 22 issue a trial subpoena.  We've agreed that there will only be

01:30 23 one subpoena, but that subpoena will apply for both, and that

01:30 24 they won't release the treaters until --

01:30 25          THE COURT:  That's fine.

1    **MR. BIRCHFIELD:**  They have been served.  And at

2    present, we intend to call both of them, but if we were to

3    choose not to call, we're not going to release them.  We would

4    let them know they would still be under subpoena, just so they

5    don't have to be served twice.

6        **MS. COCO-EWING:**  And if there are issues with

7    availability that you hear about, if you would let us know that

8    as well.

9        **MR. BIRCHFIELD:**  Sure.

10       **MS. PRUITT:**  I think there was a phone call made

11   yesterday that Walter was not -- told them he couldn't talk to

12   them, to talk to the people on the plaintiffs' side about

13   Dr. Keith had a question about a concern or something.  So if

14   the concern is that he can't come during that week or -- we

15   need to know what that is and know pretty quickly.

16       **MR. BIRCHFIELD:**  And as soon as we get an answer,

17   I'll let you know.

18       **THE COURT:**  Anything from the plaintiffs?  Any

19   problems?

20       **MR. MEUNIER:**  Your Honor, just to report on

21   stipulations, not a problem, but that's covered in Section 5 of

22   the report.  We've repeated the joint stipulation on matters

23   that don't need motions in limine.  It's the same as we had in

24   *Boudreaux* and *Orr*.  We've only added one topic which is off

25   limits, which is the incarceration of Jileta -- I'm sorry, the

01:31   1   incarceration of Dora Mingo's son.

01:31   2                   We have a stipulation also filed and noted that

01:32   3   keeps all of your prior MIL rulings in effect, all the briefing

01:32   4   in effect.  The parties are free to revisit with current motion

01:32   5   practice or motion practice during trial.

01:32   6                   The two that remain to be entered in the record,

01:32   7   one is the step that specifies who the trial defendants are and

01:32   8   stipulates that they'll be treated collectively on the verdict

01:32   9   form save for punitives.  I think that's been submitted.

01:32   10          MR. OLINDE:  Your Honor, it's listed on page 4 of the

01:32   11   pretrial.  Basically, we've submitted that to Your Honor.

01:32   12          THE COURT:  Yes, I've signed that.

01:32   13          MR. MEUNIER:  So that just leaves what John and I are

01:32   14   working on, which is the stipulation of the claims that are

01:32   15   being tried, and we've got the warning and the design defect

01:32   16   claim specified, and we're just working on language that

01:32   17   reserves the defendant's position on punitives.

01:32   18          MR. OLINDE:  Right.  That should be -- hopefully,

01:32   19   this afternoon I'll get it to Jason.

01:32   20          THE COURT:  That's fine.  We've had something like

01:32   21   that before.

01:32   22          MR. OLINDE:  We have.

01:32   23          MR. MEUNIER:  The one in here, Judge, that's

01:32   24   mentioned again in paragraph 5 of the PTO is E.  It talks about

01:33   25   a stipulation that motions in limine regarding punitives are

01:33  1  reserved until you rule on whether --

01:33  2          **THE COURT:**  Right.

01:33  3          **MR. MEUNIER:**  I don't know that we're going to

01:33  4  actually confect that as a formal document, but it's the

01:33  5  agreement that the parties have.

01:33  6          **MR. OLINDE:**  That was one that I sent to Jason in an

01:33  7  e-mail this past Friday, and he talked to you I think last week

01:33  8  and he said it was okay.

01:33  9          **THE COURT:**  Yes.

01:33  10          **MR. MEUNIER:**  So we're in good shape.

01:33  11          **THE COURT:**  Anything else from the defendants on the

01:33  12  pretrial?

01:33  13          **MS. PRUITT:**  Judge, I just have -- you know, I'm a

01:33  14  little bit of a newcomer, but I was here for *Orr*.  I do know

01:33  15  that in *Boudreaux* and *Orr*, the claim was only for

01:33  16  failure-to-warn.  I understand from the plaintiffs that they

01:33  17  intend to also in this case to pursue a design defect claim.

01:33  18  They've asked me about narrowing the witness list.  So I'm glad

01:33  19  to try to do that, but until I know whether they're actually

01:33  20  going to assert a claim for design defect, I can't really do

01:33  21  that.

01:33  22          **THE COURT:**  Yes.  From the defendants' standpoint,

01:33  23  you have to listen to the evidence before you can make any firm

01:34  24  decisions.  I understand that.

01:34  25          All right.  Let's look at the jury material

1  then.  Okay.  We turn to the jury selection.  What I have done

2  is with the assistance of counsel, we prepared a jury

3  questionnaire.  I've had the jury questionnaire sent to the

4  Southern District of Mississippi.  They alerted some 70

5  individuals to came in to fill out the jury questionnaire.

6  They came in -- or 60-some-odd came in and filled out the jury

7  questionnaire.

8            I received it about a week ago.  I've given it

9  to the parties for both sides.  They've had an opportunity to

10  review it.  The purpose of this meeting is to determine whether

11  or not we can excuse, for cause, some of the individuals by

12  virtue of what they have filled out.  This does not exclude

13  cause challenges during the selection process of trial, but,

14  hopefully, we'll be able to excuse some of the individuals from

15  what they have said on the questionnaire and eliminate their

16  need to come to court.

17            The first person is Ann Evelyn Adams.  It seems

18  to me that I would excuse her for cause.  She's a first year

19  teacher.  Her class starts August the 7th.  That to me seems to

20  be something that we ought to excuse her for cause.

21            Any problem with that?

22        **MR. BIRCHFIELD:**  We agree.

23        **MR. SARVER:**  We agree.

24        **MS. PRUITT:**  We agree.

25        **THE COURT:**  The next one, I'm not sure.  I put a

| | | |
|---|---|---|
| 01:35 | 1 | question mark by the individuals that I'm not sure of.  This |
| 01:35 | 2 | one, I'm not sure of.  A college degree; HR with the company. |
| 01:36 | 3 | I was concerned about her answer to 65. |
| 01:36 | 4 |      MS. PRUITT:  What's her name, Judge? |
| 01:36 | 5 |      THE COURT:  Her name is Angela Anderson.  Let's see, |
| 01:36 | 6 | was it 65? |
| 01:36 | 7 |      MS. PRUITT:  Yes, 65. |
| 01:36 | 8 |      THE COURT:  Yes.  She says, "I just started a new |
| 01:36 | 9 | job."  My concern with this is that I understand that if |
| 01:36 | 10 | somebody is working as a laborer and doesn't work, doesn't get |
| 01:36 | 11 | paid.  I can't make that decision on this.  I don't know how |
| 01:36 | 12 | high up she is.  It seems to me this is somebody who needs to |
| 01:36 | 13 | be questioned.  Maybe she ought to come to court and tell us |
| 01:36 | 14 | all that.  So I would not excuse her. |
| 01:37 | 15 |      Terrence Bailey.  I don't see any problem with |
| 01:37 | 16 | this one.  He's got some college; he's married; employed by JA |
| 01:37 | 17 | King.  I didn't notice any particular question that I wanted to |
| 01:37 | 18 | focus you all on so that you can question the person at trial. |
| 01:37 | 19 | But this one, I would not excuse for cause. |
| 01:37 | 20 |      MS. PRUITT:  Agree. |
| 01:37 | 21 |      MR. BIRCHFIELD:  Agree. |
| 01:37 | 22 |      THE COURT:  Okay.  The next one is Terrence Bailey. |
| 01:37 | 23 |      MR. BIRCHFIELD:  That's the one you just did, Judge. |
| 01:37 | 24 |      THE COURT:  I'm sorry.  We did Bailey.  Beeland, |
| 01:37 | 25 | Danny Beeland.  This one, I don't see any reason for excusing |

01:37   1   for cause.  He's 64 years old, a young person.

01:37   2                MS. PRUITT:  Agree.

01:37   3                THE COURT:  The next one, Juror No. 5 is Sarah

01:38   4   Bidinger, B-I-D-I-N-G-E-R.  An attorney.  She says, "I'm in a

01:38   5   friend's wedding on the 12th."  She purchased a plane ticket,

01:38   6   providing early -- ordinarily, I wouldn't excuse a lawyer, but

01:38   7   this seems to be something that I would excuse them for cause

01:38   8   on.

01:38   9                MS. PRUITT:  We agree.

01:38  10                MR. SARVER:  We agree.

01:38  11                THE COURT:  Okay.  The next one is Harriet Bilbo.

01:38  12   Her answer to 65 concerned me a little bit.

01:38  13                MR. BIRCHFIELD:  Yeah, okay.

01:38  14                THE COURT:  I just didn't know about this one,

01:38  15   frankly.

01:39  16                MR. BIRCHFIELD:  Judge, I was thinking, she has an

01:39  17   in-law that works with -- actually with J&J.  In light of that,

01:39  18   plus the -- plus the hardship, that combined, I was thinking

01:39  19   she should be excused.

01:39  20                THE COURT:  How do you feel?

01:39  21                MS. PRUITT:  Your Honor, I think we ought to talk to

01:39  22   her.  I mean, as an in-law, we don't know her work excuse.  We

01:39  23   don't know the exact nature of it.  Not saying she won't

01:39  24   ultimately go, but --

01:39  25                THE COURT:  Okay.  Let's let her come.  So far I only

| | |
|---|---|
| 01:39 | 1 |
| 01:39 | 2 |
| 01:39 | 3 |
| 01:40 | 4 |

have two excused for cause, Adams and Bidinger.

The next one is Linda Blackmon.  It concerned me to see the answer to 59.  It was a little strange to me.

**MR. BIRCHFIELD:**  She has two doctor's appointments. I don't think the second one would be an issue, but the first one will be the first week of trial.  And she's a patient of the defendant's expert.

**THE COURT:**  Yes.  That's the thing that got to me, frankly.  I would excuse her unless I hear from you all.

**MS. PRUITT:**  We agree.

**THE COURT:**  So Linda Blackmon, she's the third one excused.

Zheniniah Burks.  65 and 66 concerned me a little bit.  65, I'm the only legal able-bodied driver, and so forth.  Has a strong bias against medical companies.

**MR. BIRCHFIELD:**  I think we should just go ahead and put him in the box, Your Honor.

**MR. SARVER:**  Maybe he could give opening statement.

**THE COURT:**  We'll excuse him, or her.

Cain is one that concerned me a little bit.  It was question 44.

**MR. BIRCHFIELD:**  An academic dean that must be at work on August the 8th, and their kids starting school.

**THE COURT:**  What do the defendants say?

**MS. PRUITT:**  We agree.

| | | |
|---|---|---|
| 01:42 | 1 | **THE COURT:**  You want to excuse her or him? |
| 01:42 | 2 | **MS. PRUITT:**  Yes. |
| 01:42 | 3 | **THE COURT:**  This one, Jon Calder, C-A-L-D-E-R, I |
| 01:42 | 4 | really didn't see anything there that would exclude this person |
| 01:42 | 5 | for cause, at least on the material that they filled out. |
| 01:42 | 6 | **MS. PRUITT:**  Agree. |
| 01:42 | 7 | **MR. BIRCHFIELD:**  We agree, Your Honor. |
| 01:42 | 8 | **THE COURT:**  All right.  The next one, Justin |
| 01:42 | 9 | Carrillo, another one, works for the federal government, an |
| 01:42 | 10 | engineer.  He's 26 years old, but I can't discriminate.  So I |
| 01:42 | 11 | wouldn't excuse that one. |
| 01:42 | 12 | This one concerned me a little bit, Teresa |
| 01:42 | 13 | Chapman.  Take a look at the 65 answer.  I can make them come |
| 01:43 | 14 | if you all feel -- |
| 01:43 | 15 | **MS. PRUITT:**  I want to talk to her.  I don't know. |
| 01:43 | 16 | **MR. BIRCHFIELD:**  Better bring her in. |
| 01:43 | 17 | **THE COURT:**  Okay.  We'll let her come. |
| 01:43 | 18 | Coats, Rossie Coats.  65 and 66 caught my eye. |
| 01:43 | 19 | **MR. BIRCHFIELD:**  The hardship was a church revival |
| 01:43 | 20 | ceremony.  He needs to get his wife there.  That may be at |
| 01:43 | 21 | night.  That may not be a conflict.  I would like to hear more, |
| 01:44 | 22 | Your Honor, before we excuse. |
| 01:44 | 23 | **THE COURT:**  All right.  This is a problem, though, |
| 01:44 | 24 | with this one.  We want somebody who can listen.  My concern is |
| 01:44 | 25 | that his wife is disabled and may have a problem. |

01:44 1      **MS. PRUITT:**  The other thing we learned was that they
01:44 2  live an hour and 45 minutes away.  So even if it is a revival
01:44 3  that starts at 6:00 p.m., it's going to be a hardship, tight
01:44 4  for them to get to and from and so forth.
01:44 5      **THE COURT:**  All right.  Let's put a big question mark
01:44 6  on this one.  When they come I'll be receptive to that if
01:44 7  that's the situation.  I don't want to excuse them for cause at
01:44 8  this point.
01:44 9          The next one is Kix Cosby.  Kix Cosby.  The
01:45 10 answer to 65 was something I wanted you all to focus on.  I
01:45 11 can't read it too well, but as I read it, there's something
01:45 12 about has to pick up children and can't do it.  How do you all
01:45 13 feel about that?
01:45 14     **MS. PRUITT:**  We would excuse her for cause because --
01:45 15     **MR. BIRCHFIELD:**  I would like to know more.  I would
01:45 16 want to bring her in.
01:45 17     **THE COURT:**  All right.  We'll bring her in.
01:45 18     **MS. PRUITT:**  My issue, Judge, is that she says she's
01:45 19 a nanny, and I assume that they're not going to pay her if
01:45 20 she's not working.
01:45 21     **THE COURT:**  Yeah.  Put a big question mark on that
01:45 22 one because if that's the case, I'll excuse her, but I won't
01:45 23 for cause at this point.
01:45 24          Thomas Cranfield.  I didn't see anything in that
01:45 25 one.  His employer is Entergy.  He's got a GED.

01:46  1               Any problem with that?

01:46  2        **MR. BIRCHFIELD:**  No, Your Honor.

01:46  3        **MS. PRUITT:**  No.

01:46  4        **THE COURT:**  All right.  The next one is Creel, Randy

01:46  5  Creel.  He's a vice president.  I don't see any problem there.

01:46  6  We'll not excuse that one.

01:46  7            Carrie Daniels is another one that I don't see

01:46  8  excusing.  She said something at 47 that concerned me a little

01:46  9  bit that I wanted you all to focus on when we get her.  Let's

01:46  10  look at her a little bit closer when she comes and make sure

01:46  11  there's --

01:46  12        **MR. JOHNSON:**  Also No. 59.  Her response to 59.

01:46  13  She's a patient of our expert.

01:47  14        **MS. PRUITT:**  She's a patient of Dr. Reeves-Darby.

01:47  15  But, Judge, I'd like for you to take a look at question 35

01:47  16  where she says she has very strong opinions about the

01:47  17  adequacies of the warnings that accompany prescription meds.

01:47  18  And when you couple that with she has strong opinions already,

01:47  19  she says in 35:  "Drug companies should be more forthcoming

01:47  20  about the warnings.  In my opinion, drug companies are not

01:47  21  adequate enough with their efforts."

01:47  22            And you add that to the fact that she's

01:47  23  self-employed, and she'll have a loss of income, and she says

01:47  24  she's a patient of Dr. Vonda Reeves-Darby, I think all of that

01:47  25  together would qualify her to be excused for cause.

01:47  1      **MR. BIRCHFIELD:**  We would want to hear from her, Your

01:47  2  Honor.

01:47  3      **THE COURT:**  Yes, I'll excuse her for cause.

01:48  4      **MR. JOHNSON:**  The next one is interesting, Judge.

01:48  5      **THE COURT:**  He was a U.S. Attorney.  I don't know

01:48  6  this one.  I don't know if any of you all do.  He apparently

01:48  7  was the U.S. Attorney for the Southern District of Mississippi.

01:48  8      **MR. JOHNSON:**  Your Honor, he's also a personal --

01:48  9  he's a personal friend of mine.  We've worked with him

01:48  10 extensively before he became the U.S. Attorney.

01:48  11      **THE COURT:**  Okay.  I'll excuse him for cause.

01:48  12      **MR. MEUNIER:**  He says he knows you professionally,

01:48  13 but you know him personally.

01:48  14      **MR. GLICKSTEIN:**  Walter thinks he's buddies with

01:48  15 everybody.

01:48  16      **MR. JOHNSON:**  Maybe I'm the friend.  Right.

01:48  17      **THE COURT:**  Okay.  The next one is Denson.  Take a

01:48  18 look at 65 on that one.  We can have him come in.

01:48  19      **MR. MEUNIER:**  They're not old enough to judge.

01:48  20      **THE COURT:**  They're 22 years old.

01:49  21      **MR. MEUNIER:**  Old enough to vote, but not judge.

01:49  22      **MS. PRUITT:**  Is he going?

01:49  23      **THE COURT:**  No, I'm going to keep him.  Let him come

01:49  24 to court and see how the process goes.  He'll learn something.

01:49  25      **MR. MEUNIER:**  That will age him.

| | | |
|---|---|---|
| 01:49 | 1 | **MR. SARVER:**  Real quickly. |
| 01:49 | 2 | **THE COURT:**  Eason.  I didn't see anything on Aisha |
| 01:49 | 3 | Eason.  Anybody? |
| 01:49 | 4 | **MR. BIRCHFIELD:**  No, Your Honor. |
| 01:49 | 5 | **MS. PRUITT:**  No, we didn't. |
| 01:49 | 6 | **THE COURT:**  The next one concerned me a little bit. |
| 01:49 | 7 | He takes Xarelto.  I was trying to stay away from people who |
| 01:49 | 8 | either had problems with Xarelto or have taken Xarelto or a |
| 01:49 | 9 | family member has taken Xarelto.  I don't think it's good.  So |
| 01:49 | 10 | I'll excuse him for cause.  That's Randy Eure, E-U-R-E. |
| 01:50 | 11 | The next one was William Featherston, |
| 01:50 | 12 | F-E-A-T-H-E-R-S-T-O-N.  He's an attorney, a sole practitioner. |
| 01:50 | 13 | He knows some of the attorneys.  I didn't know what that was. |
| 01:50 | 14 | **MS. PRUITT:**  And he said he's consulted with the |
| 01:50 | 15 | Beasley Allen firm, and litigated with members of the Watkins & |
| 01:50 | 16 | Eager firm. |
| 01:50 | 17 | Walter, you need to expound on that. |
| 01:50 | 18 | **THE COURT:**  Both sides of it, huh?  He says, "I have |
| 01:50 | 19 | legal matters."  You know, we may excuse him, but I hate just |
| 01:50 | 20 | to have a lawyer not come to court when he says he'll be too |
| 01:50 | 21 | busy, so I'm not going to excuse him. |
| 01:50 | 22 | **MS. PRUITT:**  I get that.  I just wanted you to know |
| 01:50 | 23 | that he has been on the other side of our cases. |
| 01:50 | 24 | **MR. JOHNSON:**  For many years.  We'll talk with him. |
| 01:50 | 25 | **THE COURT:**  We'll probably excuse him, but let's let |

01:50  1    him come to court.

01:51  2              David Freshour.  44 concerned me a little bit,

01:51  3    and brain bleeding, son; hip replacement, father-in-law.  65

01:51  4    was also an issue:  "Chronic illness, I assist her care.  Some

01:51  5    days more than others."  I don't know.  You want him to come in

01:51  6    or do you want to excuse him?

01:51  7              MR. BIRCHFIELD:  I'd rather bring him in, Your Honor.

01:51  8    We've seen these hardships when they -- he says:  "Some days

01:51  9    more than others."  We'd just like to know a little bit more

01:51  10   about what the situation is before we can cut him loose.

01:51  11             THE COURT:  Okay.  Let's let him come in then.

01:51  12             Coretta Grant.  It concerned me a bit with 65.

01:52  13   It would be in the middle of a school term.  She takes care

01:52  14   of -- she's in school with some sort of disabled kids, I think.

01:52  15             MS. PRUITT:  She says she has to start over if she

01:52  16   misses her school term.  So we would agree for cause.

01:52  17             THE COURT:  I'll excuse her for cause.  Coretta

01:52  18   Grant, excused for cause.

01:52  19             Susan Greer.  I was a little concerned about a

01:52  20   couple of them here, 64, and 65, and 66.  I'm also concerned a

01:52  21   bit about 38 and 47.

01:52  22             MS. PRUITT:  Yeah, Judge.  We have serious concern

01:52  23   about her because she expresses an opinion that she would

01:52  24   always side with someone who took Xarelto because she doesn't

01:52  25   think it's a safe drug.  So she's definitely got a

JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

01:53   1  preconceived --

01:53   2          **MR. BIRCHFIELD:**  She knows the truth.

01:53   3          **THE COURT:**  I'll excuse Susan Greer for cause.

01:53   4              The next one is Gary Guynes.  I didn't see

01:53   5  anything on that.  His wife is a nurse.  He works for Entergy.

01:53   6  He's a power plant operator, some college.

01:53   7          **MS. PRUITT:**  We agree, there's nothing.

01:53   8          **THE COURT:**  Okay.  We'll pass that one.

01:53   9              The next one is Albert Hays.  I'm concerned

01:53  10  about him.  He has an AFib, blood clot.  He also has DVT.  He's

01:53  11  on Xarelto.

01:53  12          **MS. PRUITT:**  I missed that.

01:53  13          **MR. MEUNIER:**  Oh, he was prescribed Xarelto.  Yeah.

01:53  14  Question 46.

01:53  15          **MR. SARVER:**  I missed that one.

01:53  16          **THE COURT:**  Yeah, and 65.  So I was going to excuse

01:53  17  him for cause.

01:53  18          **MS. PRUITT:**  Yeah, I think that's right.

01:53  19          **THE COURT:**  Excuse that one for cause, Albert Hays

01:54  20  for cause.

01:54  21              This one I wasn't sure of, Kenneth Hilderbrand.

01:54  22  I'm concerned a little bit about 65, 66, and 64.  Do you all

01:54  23  have any input on this one?

01:54  24          **MS. PRUITT:**  Judge, look at 36.  We were concerned

01:54  25  about 36.  He says drug companies are out to make money before

01:54  1  doing thorough testing.  36, he says he's been in touch with

01:54  2  quote, reps, for potential hernia mesh lawsuit, and J&J is

01:54  3  involved in the mesh litigation.  And he also talks about the

01:54  4  fact that he has eyesight issues.  So we think his biases might

01:54  5  make him...

01:54  6        THE COURT:  I'll excuse Kenneth Hilderbrand.

01:54  7        MR. BIRCHFIELD:  Judge, on that point, there's a

01:54  8  difference in the hernia mesh and the transvaginal mesh.  I

01:55  9  don't know that he has anything against J&J.  The hardship here

01:55  10  is -- I mean, it's really weak.  I just think we ought to hear

01:55  11  more from him before we excuse him.  In fact, he states --

01:55  12        THE COURT:  He has, "Daily pain in my stomach that I

01:55  13  believe is caused by the mesh."

01:55  14        MR. MEUNIER:  Who's the manufacturer on that hernia

01:55  15  mesh?

01:55  16        MS. PRUITT:  It's probably --

01:55  17        MR. GLICKSTEIN:  Are you looking for a case?

01:55  18        MS. SHARKO:  The J&J company does have a hernia mesh

01:55  19  product.  The J&J company does have a vaginal mesh product.

01:55  20        THE COURT:  I'm going to excuse him.  Kenneth

01:55  21  Hilderbrand will be excused for cause.

01:55  22              Toni Hilson.  I didn't see anything wrong with

01:56  23  Toni Hilson.  Anyone?

01:56  24        MS. PRUITT:  No.

01:56  25        THE COURT:  The next one is Mark Howell.  I didn't

01:56  1  see anything wrong with Mark Howell.

01:56  2          MS. PRUITT:  Agree.

01:56  3          THE COURT:  Isaac.  I wasn't sure about Brian Isaac,

01:56  4  No. 65, look at that.

01:56  5          MS. PRUITT:  Your Honor, I thought, when I looked at

01:56  6  it, that he needed to be asked about this work issue.

01:56  7          THE COURT:  Yes.

01:56  8          MS. PRUITT:  Just questioned about it because it's

01:56  9  hard to know.

01:56  10          THE COURT:  Is that okay with you, Andy?

01:56  11          MR. BIRCHFIELD:  Yes, Your Honor.

01:56  12          THE COURT:  Okay.  Let's let him come.

01:56  13          Nicole Jackson.  I didn't see anything wrong

01:56  14  with her at all.

01:56  15          MS. PRUITT:  Agree.

01:56  16          THE COURT:  Stanley Johnson, the same thing.

01:56  17          MS. PRUITT:  Agree.

01:57  18          THE COURT:  Lorraine Johnson concerned me a little

01:57  19  bit.  Her husband has AFib.  47, takes blood thinners.  Also

01:57  20  65 --

01:57  21          MS. PRUITT:  Agree.

01:57  22          THE COURT:  -- I teach kids with special needs.

01:57  23          MR. BIRCHFIELD:  Right.

01:57  24          THE COURT:  I'll excuse her.

01:57  25          Christy Jones.  She took warfarin, has a blood

01:57  1   clot.  Took warfarin.  44, 46 and 65, there's some issue.  Any

01:58  2   suggestion on that one?

01:58  3           MR. BIRCHFIELD:  Judge, I would be inclined to let

01:58  4   her go.  When you combine the experience with the blood

01:58  5   thinners plus the hardship of caring for her mother and

01:58  6   father-in-law in separate households, we'll probably have a

01:58  7   hard time keeping her interest.

01:58  8           THE COURT:  I'll excuse her for cause.

01:58  9           MS. PRUITT:  That's Christy Jones, Judge?

01:58  10          THE COURT:  Yes.

01:58  11              The next one, Kirksey.  I didn't see anything

01:58  12  with him.

01:58  13          MS. PRUITT:  Your Honor, I saw a hardship,

01:58  14  self-employed.

01:58  15          THE COURT:  65?

01:58  16          MS. PRUITT:  Yes.  Self-employed, owns two time

01:58  17  consuming businesses.

01:58  18          THE COURT:  Yes.  I just didn't know what that was,

01:58  19  frankly.  I had a question mark there.  I just didn't know.

01:58  20          MS. PRUITT:  I think this guy was a barber or some

01:58  21  kind of hairdresser.  He cuts people's hair.

01:58  22          MR. BIRCHFIELD:  Well, he's one I think we need more

01:59  23  information on.  I mean, he says that he has two time consuming

01:59  24  businesses.  He also says he's employed full-time as a

01:59  25  correctional officer.  So I think his work needs some clear

|  |  |
|---|---|
| 01:59 | 1 |

<table>
<tr><td>01:59</td><td>1</td><td>answers on that.</td></tr>
</table>

answers on that.

01:59   1   answers on that.

01:59   2           THE COURT:  Let's get him in and we'll talk with him.

01:59   3           Joyce Lawson.  She's a receptionist at a

01:59   4   doctor's office, but she didn't know any of the doctors and

01:59   5   doesn't know anything about the medicine, so I didn't see

01:59   6   anything there.

01:59   7           MR. MEUNIER:  We agree, Your Honor.

01:59   8           MS. PRUITT:  Agree.

01:59   9           THE COURT:  Lee, Christopher, I wasn't sure about

01:59   10   that one, 65.

01:59   11           MR. BIRCHFIELD:  Judge, I think this one is a

01:59   12   significant hardship.

01:59   13           THE COURT:  Three children.

01:59   14           MR. BIRCHFIELD:  He's a cardiac nurse.  His wife is

02:00   15   out of the country, and they start school the first week of our

02:00   16   trial, and he's got to take care of the three small kids.

02:00   17           THE COURT:  Okay.  I'll excuse him.

02:00   18           MS. PRUITT:  We'd like to hang on to him, Judge, but

02:00   19   I have to agree.  It sounds like a hardship.

02:00   20           THE COURT:  Excuse Lee, Christopher.

02:00   21           Veronica Lee.  I didn't see anything on that

02:00   22   one.

02:00   23           MS. PRUITT:  Agree.

02:00   24           THE COURT:  Colbert Lehr.  I was concerned.  He's a

02:00   25   student, University of Mississippi, but they start on

| | |
|---|---|
| 02:00 | 1 |
| 02:00 | 2 |
| 02:00 | 3 |
| 02:00 | 4 |
| 02:00 | 5 |
| 02:00 | 6 |
| 02:01 | 7 |

1  August the 18th.  I assumed you all would be finished by then.

2          MS. PRUITT:  Hopefully.  I hope we will.

3          MR. BIRCHFIELD:  My best -- I mean, I think that we

4  will -- we'll be in a place to -- I think we'll probably rest

5  on Monday the 14th.  So I would think -- based on prior trials,

6  we're probably closing on Thursday or Friday, which would be

7  the 18th.  But, I mean, you know, it's just close, Your Honor.

8          THE COURT:  Yeah.

9          MR. BIRCHFIELD:  And I'm okay bringing him in.  But,

10  you know, we've done this with others that --

11          THE COURT:  Let's excuse him.  He's 21 years old.

12  He's a student.  I would hate for him to miss his first day of

13  school.  So I'll excuse Colbert Lehr.

14          The next one is Felicia Lyles.  I just didn't

15  know.  This one there's something about -- I notice that they

16  live in Jackson.  She says something about bringing kids to

17  school.  But she lives in Jackson, and, you know, if we start

18  at 8:30 and she has to bring the kids to school earlier, she

19  might be able to make it.  I don't know.

20          MR. BIRCHFIELD:  I think we should bring her in.

21          THE COURT:  Question her on whether she picks them up

22  or not because that's an issue.

23          MS. PRUITT:  Yeah, at 3:00 in the afternoon.

24          THE COURT:  So let's look at that a little closer.

25  Somebody question her on that.  I won't excuse her for cause.

02:02  1          The next one is Martin, Mary Elizabeth.  I
02:02  2    wanted you all to focus on 65.  An administrative associate --
02:02  3          MS. PRUITT:  Judge, her hardship doesn't seem any
02:02  4    worse than the -- we got to talk to her.
02:02  5          THE COURT:  Yeah.  Let's let her come in.  It seems
02:03  6    like she's got a pretty solid job, too.
02:03  7          Michael Massie.  He had a stroke, 44; took blood
02:03  8    thinners, 47.  He's got a problem, 65.
02:03  9          MS. PRUITT:  He doesn't get paid.
02:03  10          MR. BIRCHFIELD:  He says Bayer's a good company.  So
02:03  11   I think we need to bring him in and question him, Judge.
02:03  12          THE COURT:  Okay.  Let's excuse him for cause,
02:03  13   Michael Massie.
02:03  14          Sonya McCormick, I didn't see anything on that
02:03  15   one.
02:03  16          MS. PRUITT:  Agree.
02:03  17          THE COURT:  Okay.  Mitchell, Latoya Mitchell.  I
02:04  18   wasn't sure about that.  I'm not quite sure.  65 caught my eye,
02:04  19   something.
02:04  20          MS. PRUITT:  She has to take the kids to school.
02:04  21          THE COURT:  Take the children to and from school.
02:04  22          MS. PRUITT:  She lives in Newton, Judge.  We looked
02:04  23   it up, it's an hour drive, and she's got to put her kids in
02:04  24   school.
02:04  25          THE COURT:  That's why -- if it was around Jackson,

```
02:04    1    it's one thing.  When they do -- you know, if it's somebody
02:04    2    watching them, I'll watch.  So let's excuse Latoya Mitchell.
02:04    3              Take a look at Tisha Nickens.  Her mother takes
02:04    4    warfarin, 65 and 66.  How do you all feel about that one?
02:04    5              MS. PRUITT:  She's having to take care of her
02:04    6    disabled mom, and she cannot have others sit with her, she
02:05    7    says.
02:05    8              MR. JOHNSON:  And she has difficulty being impartial.
02:05    9              MS. PRUITT:  Yeah, 66.
02:05   10              THE COURT:  She feels sorry for victims.  You'll like
02:05   11    her.
02:05   12              MR. BIRCHFIELD:  Yeah.
02:05   13              MR. MEUNIER:  Everybody ought to feel sorry for the
02:05   14    victims.
02:05   15              THE COURT:  I'll excuse her.  She has to take care of
02:05   16    her mom.  That's Tisha Nickens.
02:05   17              Glenda Olive.  She had a blood clot, 64 and 65.
02:05   18              MR. BIRCHFIELD:  She wasn't on any of these drugs, it
02:05   19    doesn't appear, for that.
02:05   20              THE COURT:  Right.
02:05   21              MS. PRUITT:  Judge, hardship, she says she sits with
02:05   22    her 91-year-old father daily.  She can't sit in judgment.  She
02:05   23    says, "Medicines are a money game.  We are all guinea pigs.
02:05   24    Pharma companies are all about money and those products and the
02:06   25    FDA are killing us."
```

| | | |
|---|---|---|
| 02:06 | 1 | **MR. BIRCHFIELD:**  Judge, we've got a lot of these in |
| 02:06 | 2 | here that are saying great things about the companies.  So we |
| 02:06 | 3 | shouldn't be all one-sided.  I think we ought to get her in. |
| 02:06 | 4 | **THE COURT:**  I'll let her come in and tell us. |
| 02:06 | 5 | **MR. SARVER:**  Well, Judge, we wouldn't want her saying |
| 02:06 | 6 | all those things and polluting the rest of the jury. |
| 02:06 | 7 | **THE COURT:**  Right.  We're not going to have her do |
| 02:06 | 8 | that. |
| 02:06 | 9 | **MS. SHARKO:**  Judge, I'm sorry to interrupt.  May I be |
| 02:06 | 10 | excused so I can catch a plane? |
| 02:06 | 11 | **THE COURT:**  Sure.  Yes. |
| 02:06 | 12 | **MS. SHARKO:**  Thank you very much. |
| 02:06 | 13 | **THE COURT:**  What's the next one?  Bettie Parker is |
| 02:06 | 14 | the next one.  I didn't see anything wrong on that with Bettie |
| 02:06 | 15 | Parker.  Anybody? |
| 02:06 | 16 | **MR. BIRCHFIELD:**  We agree, Your Honor. |
| 02:06 | 17 | **THE COURT:**  Okay.  The next one, Robyn Payment.  I |
| 02:07 | 18 | was concerned a little bit about 65.  She has a son with a GI |
| 02:07 | 19 | bleed.  And 65, "I start a new job August 1st." |
| 02:07 | 20 | **MR. BIRCHFIELD:**  We agree. |
| 02:07 | 21 | **MS. PRUITT:**  I agree. |
| 02:07 | 22 | **THE COURT:**  We'll excuse her for cause then.  That's |
| 02:07 | 23 | Robyn Payment. |
| 02:07 | 24 | **MR. MEUNIER:**  Too bad.  What a great name for a |
| 02:07 | 25 | juror. |

| | |
|---|---|
| 02:07 | 1 |
| 02:07 | 2 |
| 02:07 | 3 |
| 02:08 | 4 |

THE COURT:  Both sides.

         Okay.  Mary Claire Pipper.  I think I'm going to
have her come in and talk about it.  She said the fall semester
may be starting, may be a problem.  I don't know.  We'll just
question her on that a little bit more specifically.

         The next one is Jeremy Pittman.  He mentioned
something in 65.  We'll question him a little bit.  I'm going
to have him come in.  "I am the sole provider" -- what is it?

         MS. PRUITT:  Of the family.

         THE COURT:  -- "of the family."

         MR. BIRCHFIELD:  He's a lead engineer for some
upcoming projects and he said it would cause delay.

         THE COURT:  What would you like to do with him?

         MS. PRUITT:  I would like to talk to him, Judge.  If
he's a lead engineer, he's got people working for him.

         THE COURT:  Okay.  Mary Lou Powell.  She works as a
paralegal.  Uncomfortable driving in heavy traffic.

         MR. BIRCHFIELD:  Jackson may be heavy traffic
compared to Morton, I'm just not sure.

         THE COURT:  Let's let her come in and see.

         I didn't see anything with Riggs.

         Chrissy Rivers.  I didn't see anything with that
one either.  Taylor Power Systems, GED, service coordinator.

         MR. BIRCHFIELD:  Agree.  I didn't see anything.

         THE COURT:  Russell Robins, retired, college

02:09  1   educated.  65, I didn't see anything there.

02:09  2               MS. PRUITT:  Agree.

02:09  3               THE COURT:  Margaret Root.  One thing here, her

02:10  4   brother had a DVT on warfarin, two friends work at defendant's

02:10  5   firm.  What do you want to do with that one?

02:10  6               MS. PRUITT:  I would like to ask her, Judge.

02:10  7               MR. BIRCHFIELD:  She's invited to come in.  She says

02:10  8   she has a private issue that prevents her from serving as a

02:10  9   juror.  That's her answer on question 64.  We want to get her

02:10 10   in and ask her privately.

02:10 11               THE COURT:  Okay.  We'll get her in.

02:10 12               MS. PRUITT:  Maybe she's just taking Lasix and she

02:10 13   doesn't want to say anything about it.

02:10 14               THE COURT:  Jennifer Sasser.  53 caught my eye a

02:10 15   little bit:  "I know someone who works there through

02:11 16   professional societies."

02:11 17               MR. MEUNIER:  55, she works in association with

02:11 18   Janssen.  58, she works with someone who has a contract with

02:11 19   Bayer.

02:11 20               THE COURT:  Let's excuse her then for cause.  That's

02:11 21   Jennifer Sasser, S-A-S-S-E-R.

02:11 22               Anthony Scoggins.  I was concerned.  He works as

02:11 23   a driver, a delivery driver.  He says he doesn't get paid if he

02:11 24   doesn't work, 65.

02:11 25               MR. BIRCHFIELD:  And his wife is -- she's on chemo.

02:11  1    And he takes her to chemo.

02:11  2              MS. PRUITT:  Does he say he doesn't get paid?

02:11  3              MR. BIRCHFIELD:  I think with the --

02:11  4              THE COURT:  I'll excuse him, Anthony Scoggins.

02:12  5              I didn't see anything on Destin Stewart.  He

02:12  6    works for HR.  He's a therapist for a rehabilitation company.

02:12  7              MR. BIRCHFIELD:  I think he has a hardship -- we

02:12  8    certainly could ask him more about it -- a doctor appointment

02:12  9    on August 14th, the second Monday of trial.

02:12  10             THE COURT:  Okay.  Let's let him come in.  Focus him

02:12  11   on that, Andy.

02:12  12             MR. BIRCHFIELD:  Yes, sir.

02:12  13             THE COURT:  Ronald Stewart.  I was worried about 18.

02:12  14   No. 18, it was a strange issue.  44, he had a GI bleed.  65 and

02:12  15   66 is also an issue.

02:12  16             MR. BIRCHFIELD:  Caring for wife with Parkinson's.

02:13  17   Not pleased with court.

02:13  18             MS. PRUITT:  Your Honor, I would like to talk to him.

02:13  19   I would think that anything he said was particularly -- that he

02:13  20   really has a hardship of any kind nor specific opinions about

02:13  21   any of these people or his GI bleed.  So I would like to see if

02:13  22   I could talk to him.

02:13  23             MR. BIRCHFIELD:  He says he's caring for his wife

02:13  24   with Parkinson's and would have trouble with his job as well.

02:13  25   He's got some pretty strong views.  When the strong views go

| | | |
|---|---|---|
| 02:13 | 1 | the other way, we've been letting them go.  I would excuse him. |
| 02:13 | 2 | THE COURT:  Okay.  I'll excuse him, Ronald Lee |
| 02:13 | 3 | Stewart. |
| 02:13 | 4 | Lawrence Sutton.  I didn't see anything with |
| 02:13 | 5 | him. |
| 02:13 | 6 | MR. BIRCHFIELD:  I agree, Your Honor. |
| 02:13 | 7 | THE COURT:  Virginia Tew.  The same, I didn't see |
| 02:14 | 8 | anything with her. |
| 02:14 | 9 | Steven Tucker, I didn't see anything with him |
| 02:14 | 10 | either. |
| 02:14 | 11 | MS. PRUITT:  Agree. |
| 02:14 | 12 | THE COURT:  This one was Johnny Whitsett.  I see a |
| 02:14 | 13 | problem with 46, 66 and 65. |
| 02:14 | 14 | MS. PRUITT:  Yeah.  He says he can't be fair and |
| 02:14 | 15 | impartial. |
| 02:14 | 16 | THE COURT:  He was part of a case against a drug |
| 02:14 | 17 | manufacturer that gave him bladder cancer.  "I don't like drug |
| 02:14 | 18 | companies."  So I was going to excuse him for cause. |
| 02:14 | 19 | MS. PRUITT:  Agree. |
| 02:14 | 20 | THE COURT:  Lisa Wilbanks, excuse for cause -- oh, |
| 02:14 | 21 | I'm sorry, no.  That was Johnny Whitsett, W-H-I-T-S-E-T-T. |
| 02:14 | 22 | Lisa Wilbanks.  Check 47.  She seems to give |
| 02:15 | 23 | Xarelto to residents/patients where she works. |
| 02:15 | 24 | MR. BIRCHFIELD:  She has family members in the |
| 02:15 | 25 | pharmaceutical industry, family members on blood thinners. |

```
02:15   1   She's a charge nurse in a nursing home.  And she has hardships
02:15   2   and said she doesn't have a personal vehicle and only has a
02:15   3   vehicle for work.
02:15   4           THE COURT:  I'll excuse her.  I'm concerned if she
02:15   5   gives things to --
02:15   6           MR. BIRCHFIELD:  Right.  That last -- all that was
02:15   7   true except for the last part about the drive.  I was looking
02:15   8   at the next one.
02:15   9           THE COURT:  John Wilkerson.  So I'm going to excuse
02:15  10   Lisa Wilbanks for cause.
02:15  11               John Wilkerson.
02:15  12           MR. BIRCHFIELD:  The only thing I saw on him, Your
02:15  13   Honor, was the hardship, 65, where he says he does not have a
02:15  14   personal vehicle.  He works for a public utility company and
02:16  15   the work vehicle is all he has.
02:16  16           MS. PRUITT:  The company ought to let him use his
02:16  17   vehicle, shouldn't they?
02:16  18           THE COURT:  Do you want to let him come in and tell
02:16  19   us about it?
02:16  20           MS. PRUITT:  Yes.
02:16  21           THE COURT:  All right.  Okay.  This one, Anthony
02:16  22   Williams, concerned me a little bit on 65.
02:16  23           MS. PRUITT:  Yeah, he's the one.  Anthony Williams is
02:16  24   the one that cuts people's hair and he can't get paid.
02:16  25           MR. SARVER:  Something about transporting his brother
```

1    to cancer treatment.

2              MS. PRUITT:  Yeah.  He's also the only guy to take

3    his brother.

4              THE COURT:  This is a barber.  Okay.  I'll excuse him

5    for cause, Anthony Williams.

6              Kristen Williams.  I was a little concerned

7    about 65 there.  Take a look at that.

8              MR. BIRCHFIELD:  She's a college professor, will be

9    teaching.

10             THE COURT:  August 21st.  We should be through by

11   then.

12             MR. BIRCHFIELD:  Her father is a pharmaceutical rep

13   and marketing director.  I think all that combined --

14             MS. PRUITT:  You might want her, Andy.  She's an art

15   teacher at Millsaps.

16             MR. MEUNIER:  If she's a daddy's girl, we're in

17   trouble.

18             THE COURT:  I'll excuse Kristen Williams for cause.

19             Abby Yates, look at 65 and 66.

20             MR. MEUNIER:  She's partial to the health care field,

21   66.

22             THE COURT:  She seems to have a hardship.

23             MR. BIRCHFIELD:  I think she should be excused, Your

24   Honor.

25             THE COURT:  All right.  Excused.

1    **MS. PRUITT:** I'd like to keep her, Judge, but I know

2    you're not going to do that.

3         **THE COURT:** Okay.  Let's excuse her.

4              Let me go over it.  The first one excused for

5    cause is Ann Evelyn Adams, excused for cause.  The next one

6    Sarah Bidinger, B-I-D-I-N-G-E-R, excused for cause.  Linda

7    Blackmon, B-L-A-C-K-M-O-N, excused for cause.  Zheniniah Burks,

8    B-U-R-K-S, excused for cause.  Shakira Cain, excused for cause.

9              Carrie Daniels, excused for cause.  Gregory

10   Davis, excused for cause.  Randy Eure, excused for cause.

11   Coretta Grant, excused for cause.  Susan Greer, excused for

12   cause.  Albert Hays, excused for cause.  Kenneth Hilderbrand,

13   H-I-L-D-E-R-B-R-A-N-D, excused for cause.

14              Lauren Johnson, excused for cause.  Christy

15   Jones, excused for cause.  Christopher Lee, excused for cause.

16   Colbert Lehr, excused for cause.  Michael Massie, excused for

17   cause.  Sonya McCormick, excused for cause -- no, I'm sorry,

18   not that one.  Latoya Mitchell, excused for cause.

19              Tisha Nickens, excused for cause.  Robyn

20   Payment, excused for cause.  Jennifer Sasser, S-A-S-S-E-R,

21   excused for cause.  Anthony Scoggins, S-C-O-G-G-I-N-S, excused

22   for cause.  Ronald Stewart, excused for cause.  Johnny

23   Whitsett, excused for cause.  Lisa Wilbanks, excused for cause.

24   Anthony Williams, excused for cause.  Kristen Williams, excused

25   for cause.  Abby Yates, Y-A-T-E-S, excused for cause.

02:21   1               How many do we have, Dean?

02:21   2          MR. MEUNIER:  That's 28 out of 69 excused, Judge.

02:21   3   You've got 41 left.

02:21   4          THE DEPUTY CLERK:  That's what I have.

02:21   5          THE COURT:  And we need 15.

02:21   6          MR. MEUNIER:  We need 15.

02:21   7          THE COURT:  We should have it.

02:21   8               Okay.  One thing I wanted to mention to you all,

02:21   9   we've got some issues with piping the sound into one of the war

02:21  10   rooms, the plaintiffs.  So the issue really is whether we ought

02:21  11   to pipe it into only the defendants or nobody's.  What's your

02:21  12   view?

02:21  13          MR. MEUNIER:  Is that a rhetorical question?

02:21  14          MR. BIRCHFIELD:  Well, I think it ought to be even,

02:21  15   Judge.

02:21  16          MR. MEUNIER:  Or we can be allowed to come into their

02:21  17   war room and --

02:22  18          THE COURT:  The issue --

02:22  19          MR. BIRCHFIELD:  There's no workaround?

02:22  20          THE COURT:  -- that's a problem to some extent is

02:22  21   that it seems that the people who are participating for the

02:22  22   plaintiffs were generally all in the courtroom, and I don't

02:22  23   know about that with the defendants.  They seem to have a lot

02:22  24   more backup, which might mean that they need it a little bit

02:22  25   more than the plaintiffs.

02:22  1             That's the only thing that I think that I'm

02:22  2  concerned about.

02:22  3           **MR. BIRCHFIELD:**  Okay.

02:22  4           **MS. PRUITT:**  Did you all use any terminals in another

02:22  5  room?

02:22  6           **MR. BIRCHFIELD:**  Yes.  I know we had the feed in

02:22  7  there.  I don't know.

02:22  8           **THE DEPUTY CLERK:**  It can't be fixed.  It's multiple

02:22  9  things that they can't -- it was explained to me that they

02:22  10  can't do.  So not as simple as running a cable.

02:22  11           **MR. BIRCHFIELD:**  Okay.

02:22  12           **THE COURT:**  Well, give it some thought.  But I'll

02:23  13  keep the defendants for now and we'll see how it goes.

02:23  14           **MR. BIRCHFIELD:**  Okay.

02:23  15           **THE COURT:**  I want you all to have enough space to

02:23  16  relax, but also we've got to think about efficiencies and

02:23  17  everything else.

02:23  18           **MR. BIRCHFIELD:**  Yes.  Maybe we can work out some

02:23  19  type of agreement, you know.  We got some witnesses we need so

02:23  20  that would be some cooperation.

02:23  21           **MS. PRUITT:**  Susan's already left.

02:23  22           **MR. BIRCHFIELD:**  Judge, I just assumed, and I want to

02:23  23  make sure that we're clear, are we operating on the same time

02:23  24  frame that we did the last trial?  I think you had 45 minutes

02:23  25  in opening.

| | |
|---|---|
| 02:23 | 1 |
| 02:23 | 2 |
| 02:23 | 3 |
| 02:23 | 4 |
| 02:23 | 5 |

           **THE COURT:**  What I try to do is I like to meet with
you all a half an hour before we start trial.  Most of the time
we start trial at 8:30.  I would like to meet with you all at
8:00 and see what the issues are, whether or not there's any
issues and get a feel for what's going to happen that day.

           We can go until 5:00 or 5:30, something like
that.  They'll tell me where the jurors live and how long it
takes them to get back and forth, and that may have some input.
If everybody is in the Jackson area, that's one thing; if
they're going all over the place, it's going to be a little
more difficult to keep them there for 6:00 or 6:30.

           **MR. MEUNIER:**  Judge, you'll follow the same on giving
us the list of the order of the jurors?  We'll get it the
morning of voir dire?

           **THE COURT:**  Yes.

           **MR. MEUNIER:**  Your Honor, there's one other thing
about the courthouse that I was told that there's a rule in
that building that you can't bring laptops or smart phones into
the building.  Since both sides are going to have work areas
with staff, et cetera, I understand that rule can be waived if
you request it.  I'm subject to being corrected by Walter.

           **THE COURT:**  Do you know anything about that?

           **MR. JOHNSON:**  I do.  For the most part, they allow
lawyers to walk in with theirs.

           **MR. MEUNIER:**  But not nonprofessionals.

1    **MR. JOHNSON:**  Not nonprofessionals.  But if the judge

2  requests it, I'm sure they'll allow it.

3    **MR. MEUNIER:**  Could we ask you to do that, Your

4  Honor, for both sides so that nonprofessional folks can bring

5  their --

6    **THE COURT:**  Associated with the lawyers, yes.  Are

7  you all okay with that?

8    **MS. PRUITT:**  Yes.

9    **MR. OLINDE:**  Your Honor, this is another matter.

10  It's a housekeeping matter.

11    **THE COURT:**  Yes.

12    **MR. OLINDE:**  You had set an oral argument on the new

13  trial motions for September 13th.  I know Susan is gone, but

14  she had asked that we have another date because on the 13th of

15  September, she's apparently -- her mentor is being sworn in as

16  a judge, so she can't make it.  So she provided some other

17  dates.  If we could just set it for another date.

18    **THE COURT:**  Get with the plaintiffs and get a date.

19  That's fine.  We can do that.  Okay.

20    **MR. GLICKSTEIN:**  We could probably also combine that

21  with case management.

22    **THE COURT:**  All right.  I'll be away for a week, but

23  I'll be back on Monday the following week.  If you need me, get

24  to me.  I'll be available after next week.  I'm going to try to

25  get the matters out you gave to me without oral argument.  I've

1  already started on those.  I should be able to get those out

2  today.  The ones that I heard oral argument on, I may be able

3  to get them out to you Monday so that you know where I am on

4  it.

5           MR. MEUNIER:  Thank you, Judge.

6           THE COURT:  Okay.  All right, folks.  Thanks for your

7  help.

8           (WHEREUPON, the proceedings were concluded.)

9                          *****

10                        **CERTIFICATE**

11           I, Jodi Simcox, RMR, FCRR, Official Court Reporter

12  for the United States District Court, Eastern District of

13  Louisiana, do hereby certify that the foregoing is a true and

14  correct transcript, to the best of my ability and

15  understanding, from the record of the proceedings in the

16  above-entitled and numbered matter.

17

18

19                    *s/Jodi Simcox, RMR, FCRR*
                      Jodi Simcox, RMR, FCRR
20                    Official Court Reporter

21

22

23

24

25

JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA