Case 2:14-md-02592-EEF-MBN Document 8793-1 Filed 03/07/18 Page 5 of 23
Case 2:16-cv-17925-EEF-MBN Document 1-1 Filed 12/16/16 Page 5 of 19
ELECTRONICALLY FILED
11/14/2016 8:30 AM
2016-L-011117
CALENDAR: Z
PAGE 1 of 19
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
LAW DIVISION
CLERK DOROTHY BROWN

IN THE COUNTY COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| SHIRLEY A. GRIFFIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. |
| ) | |
| BAYER AG, BAYER HEALTHCARE ) | |
| PHARMACEUTICALS, INC., BAYER ) | |
| CORPORATION, BAYER HEALTHCARE, LLC, ) | |
| JANSSEN PHARMACEUTICALS, INC., ) | |
| MCNEILL-PPC, INC., MCNEIL CONSUMER ) | |
| HEALTHCARE DIVISION OF ) | |
| MCNEIL-PPC, INC., MCNEIL CONSUMER & ) | |
| SPECIALTY PHARMACEUTICALS, ) | |
| JOHNSON & JOHNSON, AND JOHNSON ) | |
| & JOHNSON SERVICES, INC. ) | |
| ) | |
| Defendants, ) | |
| ) | |
| CARDIOVASCULAR INSTITUTE AT OSF, LLC ) | |
| d/b/a Rockford Cardiovascular Associates, ) | |
| JEFFREY COOK, M.D. ) | |
| ) | |
| Respondents in Discovery. ) | |

## COMPLAINT AT LAW

NOW COMES the Plaintiff, SHIRLEY GRIFFIN, by and through her attorneys, Barney & Karamanis LLP, and in complaining of Defendants, BAYER AG, BAYER HEALTHCARE PHARMACEUTICALS, INC., BAYER CORPORATION, BAYER HEALTHCARE, LLC, JANSSEN PHARMACEUTICALS, INC., MCNEILL-PPC, INC., MCNEIL CONSUMER HEALTHCARE DIVISION OF MCNEIL-PPC, INC., MCNEIL CONSUMER & SPECIALTY PHARMACEUTICALS, JOHNSON & JOHNSON, AND JOHNSON & JOHNSON SERVICES, INC., states and allege as follows:

## FACTS COMMON TO ALL COUNTS

ELECTRONICALLY FILED
11/14/2016 8:30 AM
2016-L-011117
PAGE 2 of 19

1. At all times relevant herein, Plaintiff Shirley Griffin was a resident of the State of Illinois.

2. At all times relevant herein, Defendant BAYER AG was a German Corporation that designed, engineered, manufactured, sold, and distributed the drug Rivaroxaban, sold under the trade name Xarelto® (hereinafter "Xarelto").

3. At all times relevant herein, Defendant BAYER CORPORATION was a United States company that designed, engineered, manufactured, sold, and distributed the drug Rivaroxaban, sold under the trade name Xarelto® (hereinafter "Xarelto"), and which is related to BAYER AG.

4. At all times relevant herein, Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC., was a Delaware Corporation that designed, engineered, manufactured, sold, and distributed the drug Rivaroxaban, sold under the trade name Xarelto® (hereinafter "Xarelto"), and which is related to BAYER AG.

5. At all times relevant herein, Defendant BAYER HEALTHCARE, LLC, was a Delaware Corporation that designed, engineered, manufactured, sold, and distributed the drug Rivaroxaban, sold under the trade name Xarelto® (hereinafter "Xarelto"), and which is related to BAYER AG.

6. BAYER AG, BAYER HEALTHCARE PHARMACEUTICALS, INC., BAYER CORPORATION, BAYER HEALTHCARE, LLC are hereafter referred to collectively as "Defendant Bayer".

7. At all times relevant herein, Defendant JOHNSON & JOHNSON was a corporation that manufactured, sold, and distributed the drug Rivaroxaban, sold under the trade name Xarelto® (hereinafter "Xarelto").

2

ELECTRONICALLY FILED
11/14/2016 8:30 AM
2016-L-011117
PAGE 3 of 19

8.     At all times relevant herein, Defendant JOHNSON & JOHNSON SERVICES, INC., was a corporation that manufactured, sold, and distributed the drug Rivaroxaban, sold under the trade name Xarelto® (hereinafter "Xarelto"), which is a subsidiary of JOHNSON & JOHNSON.

9.     At all times relevant herein, Defendant JANSSEN PHARMACEUTICALS, INC., was a corporation that manufactured, sold, and distributed the drug Rivaroxaban, sold under the trade name Xarelto® (hereinafter "Xarelto"), which is a subsidiary of JOHNSON & JOHNSON.

10.    At all times relevant herein, Defendant MCNEILL-PPC, INC., was a corporation that manufactured, sold, and distributed the drug Rivaroxaban, sold under the trade name Xarelto® (hereinafter "Xarelto"), which is a subsidiary of JOHNSON & JOHNSON.

11.    At all times relevant herein, Defendant MCNEIL CONSUMER HEALTHCARE DIVISION OF MCNEIL-PPC, INC., was a corporation that manufactured, sold, and distributed the drug Rivaroxaban, sold under the trade name Xarelto® (hereinafter "Xarelto"), which is a subsidiary of JOHNSON & JOHNSON.

12.    At all times relevant herein, Defendant MCNEIL CONSUMER & SPECIALTY PHARMACEUTICALS was a corporation that manufactured, sold, and distributed the drug Rivaroxaban, sold under the trade name Xarelto® (hereinafter "Xarelto"), which is a subsidiary of JOHNSON & JOHNSON.

13.    JOHNSON & JOHNSON, JANSSEN PHARMACEUTICALS, INC., MCNEILL-PPC, INC., MCNEIL CONSUMER HEALTHCARE DIVISION OF MCNEIL-PPC, INC., MCNEIL CONSUMER & SPECIALTY PHARMACEUTICALS, AND JOHNSON & JOHNSON SERVICES, INC., are hereafter collectively referred to as "Defendant J&J".

3

14. At all times relevant herein, Defendant Bayer designed, developed, manufactured, tested, marketed, promoted, distributed, and sold Xarelto. In doing so, Defendant Bayer placed the product in the stream of commerce in Illinois and throughout the United States. Defendant Bayer has received, and will continue to receive, substantial benefits and income through its activities. Defendant Bayer authorized the actions attributed to it herein through its officers, directors, and managing agents.

15. At all times relevant herein, Defendant Bayer was in the business of researching, designing, developing, licensing, compounding, testing, producing, manufacturing, assembling, processing, packaging, inspecting, labeling, warranting, marketing, promoting, advertising, distributing, selling, and/or introducing into interstate commerce, either directly or indirectly, through third parties or related entities, the prescription drug Xarelto.

16. At all times relevant herein, Defendant Bayer designed, developed, manufactured, promoted, marketed, distributed, tested, warranted, and sold Xarelto in interstate commerce and in the State of Illinois. Defendant Bayer conducted substantial business at this location in State of Illinois, advertised Xarelto in this State, received substantial compensation and profits from sales of Xarelto in this State, and made material omissions and misrepresentations and committed breaches of warranties in this State.

17. At all times relevant herein, Defendant Bayer, by and through its employees, agents, affiliates, subsidiaries, and representatives, were involved in developing, designing, testing, manufacturing, and/or marketing Xarelto.

18. Xarelto is an anticoagulation prescription medicine used to reduce the risk of stroke and blood clots in people with atrial fibrillation, which is developed, designed, manufactured, and marketed by Defendant Bayer.

ELECTRONICALLY FILED
11/14/2016 8:30 AM
2016-L-011117
PAGE 4 of 19

4

ELECTRONICALLY FILED
11/14/2016 8:30 AM
2016-L-011117
PAGE 5 of 19

19. Xarelto's intended effect is to thin the blood and prevent coagulation to avoid and/or reduce the risk of stroke, heart attack, or other blood clot related problems.

20. At all times relevant herein, Defendant J&J designed, developed, manufactured, tested, marketed, promoted, distributed, and sold Xarelto. In doing so, Defendant J&J placed the product in the stream of commerce in Illinois and throughout the United States. Defendant J&J has received, and will continue to receive, substantial benefits and income through its activities. Defendant J&J authorized the actions attributed to it herein through its officers, directors, and managing agents.

21. At all times relevant herein, Defendant J&J was in the business of researching, designing, developing, licensing, compounding, testing, producing, manufacturing, assembling, processing, packaging, inspecting, labeling, warranting, marketing, promoting, advertising, distributing, selling, and/or introducing into interstate commerce, either directly or indirectly, through third parties or related entities, the prescription drug Xarelto.

22. At all times relevant herein, Defendant J&J designed, developed, manufactured, promoted, marketed, distributed, tested, warranted, and sold Xarelto in interstate commerce and in the State of Illinois. Defendant J&J conducted substantial business at this location in State of Illinois, advertised Xarelto in this State, received substantial compensation and profits from sales of Xarelto in this State, and made material omissions and misrepresentations and committed breaches of warranties in this State.

23. At all times relevant herein, Defendant J&J, by and through its employees, agents, affiliates, subsidiaries, and representatives, were involved in developing, designing, testing, manufacturing, and/or marketing Xarelto.

5

ELECTRONICALLY FILED
11/14/2016 8:30 AM
2016-L-011117
PAGE 6 of 19

24. Xarelto is an anticoagulation prescription medicine used to reduce the risk of stroke and blood clots in people with atrial fibrillation, which is developed, designed, manufactured, and marketed by Defendant J&J.

25. Xarelto's intended effect is to thin the blood and prevent coagulation to avoid and/or reduce the risk of stroke, heart attack, or other blood clot related problems.

26. Xarelto has been linked to sudden and extensive internal bleeding in patients.

27. Bayer AG, Bayer Healthcare Pharmaceuticals, Inc., Bayer Corporation, Bayer Healthcare, LLC, Janssen Pharmaceuticals, Inc., McNeill-PPC, Inc., McNeil Consumer Healthcare Division of McNeil-PPC, Inc., McNeil Consumer & Specialty Pharmaceuticals, Johnson & Johnson, and Johnson & Johnson Services, Inc., are hereafter collectively referred to as the "Xarelto Defendants".

28. The Xarelto Defendants have not, on information and belief, conducted any long-term studies regarding the short and long-term effects of Xarelto on its patients. Side effects are rarely mentioned and consistently understated.

29. The Xarelto Defendants fail to relay to physicians the number of adverse event reports related to Xarelto at routine treatment doses.

30. Prior to receiving the Xarelto, Plaintiff was not bleeding internally.

31. Prior to September of 2014, Plaintiff was prescribed and was taking warfarin as a blood thinner.

32. On or about September 30, 2014, Respondent Jeffrey Cook, M.D., of Respondent Cardiovascular Institute at OSF, LLC, d/b/a Rockford Cardiovascular Associates, switched Plaintiff's blood thinning medication to Xarelto.

6

ELECTRONICALLY FILED
11/14/2016 8:30 AM
2016-L-011117
PAGE 7 of 19

33. Shortly thereafter, on or about November 13, 2014, Plaintiff presented to OSF Saint Anthony Medical Center in Rockford, Illinois complaining of abdominal pain and large volume black tarry stool since that same morning.

34. Plaintiff was admitted, evaluated, and then diagnosed with a acute gastrointestinal ("GI") bleed.

35. Plaintiff's prescription Xarelto was immediately discontinued, since it was believed that the Xarelto was the cause of the massive internal hemorrhage.

36. Plaintiff was hospitalized from November 13, 2014, to November 16, 2014, and during the course of her hospitalization was calculated to have lost approximately four pints of blood as a result of the GI bleed.

37. Subsequently, Plaintiff has had to undergo continued treatment and monitoring for this gastrointestinal bleed.

38. As a result of the Xarelto, she suffered and continues to suffer acute and prolonged physical and mental pain and suffering; and she became liable for great sums of money for medical, hospital care and treatment, as well as incurring other expenses.

## COUNT I

**(Strict Product Liability/Failure to Warn against Defendant BAYER and Defendant J&J collectively, individually and by and through their agents, servants and/or employees)**

1-38. Plaintiffs repeat and reallege Paragraphs 1 through 38 of this Complaint as and for Paragraphs 1 through 38 of this Count I as if fully set forth herein.

39. Bayer and J&J wholly failed to warn Plaintiff and others that Xarelto can cause severe and pervasive bleeding that can lead to injury and/or death. Because of this failure-to-warn defect, Xarelto was unreasonably dangerous to an ordinary person, like Plaintiff, who used Xarelto in a manner in which was intended by Bayer and J&J or which Bayer and J&J could

7

have reasonably foreseen. The risks of the Xarelto were known by Bayer and J&J or were reasonably scientifically knowable at the time Xarelto injured Plaintiff.

40. An ordinary user of Xarelto would not foresee the risk of severe systemic reaction in light of Bayer and J&J's intentional minimization of the risks of Xarelto.

41. The lack of sufficient warnings was a substantial factor in causing Plaintiff's injuries and damages. If Bayer and J&J had informed Plaintiff of the known risks of Xarelto, she would have refused to use Xarelto.

42. As a direct and proximate result of the defects in Xarelto and the conduct of Bayer and J&J, Plaintiff suffered acute and prolonged physical and mental pain and suffering; and that she became liable for great sums of money for medical, hospital care and treatment, as well as incurring other expenses.

WHEREFORE, Plaintiff, SHIRLEY GRIFFIN, by and through her attorney, Barney & Karamanis LLP, prays for judgment against Defendants BAYER AG, BAYER HEALTHCARE PHARMACEUTICALS, INC., BAYER CORPORATION, BAYER HEALTHCARE, LLC, JANSSEN PHARMACEUTICALS, INC., MCNEILL-PPC, INC., MCNEIL CONSUMER HEALTHCARE DIVISION OF MCNEIL-PPC, INC., MCNEIL CONSUMER & SPECIALTY PHARMACEUTICALS, JOHNSON & JOHNSON, AND JOHNSON & JOHNSON SERVICES, INC. individually and by and through their agents, servants and/or employees, and each of them, in an amount in excess of Fifty Thousand and No/100 Dollars ($50,000.00), and for such other and further relief in favor of Plaintiff as this Court deems just and fair.

## COUNT II

**(Strict Product Liability/Manufacturing Defect against Defendant BAYER and Defendant J&J collectively, individually and by and through their agents, servants and/or employees)**

ELECTRONICALLY FILED
11/14/2016 8:30 AM
2016-L-011117
PAGE 8 of 19

8

1-42. Plaintiff repeats and realleges Paragraphs 1 through 42 of Count I as and for Paragraphs 1 through 42 of this Count II as if fully set forth herein.

43. Defendants Bayer and J&J are the manufacturers, distributors, and suppliers of Xarelto. The product reached Plaintiff without a substantial change in its condition upon leaving the Defendants.

44. The Xarelto given to Plaintiff contained a defect in its manufacture. This defect in Xarelto existed at the time Xarelto left the possession and control of Defendants Bayer and J&J.

45. The defect in Xarelto caused it to fail during the time of use. This failure caused Plaintiff to suffer injuries and damages detailed herein, namely a massive gastrointestinal bleed.

46. Xarelto was used by Plaintiff in a manner foreseeable to Defendants Bayer and J&J.

47. As a direct and proximate result of the defects in Xarelto and the conduct of Defendants Bayer and J&J, Plaintiff suffered acute and prolonged physical and mental pain and suffering; and that she became liable for great sums of money for medical, hospital care and treatment, as well as incurring other expenses.

WHEREFORE, Plaintiff, SHIRLEY GRIFFIN, by and through her attorney, Barney & Karamanis LLP, prays for judgment against Defendants BAYER AG, BAYER HEALTHCARE PHARMACEUTICALS, INC., BAYER CORPORATION, BAYER HEALTHCARE, LLC, JANSSEN PHARMACEUTICALS, INC., MCNEILL-PPC, INC., MCNEIL CONSUMER HEALTHCARE DIVISION OF MCNEIL-PPC, INC., MCNEIL CONSUMER & SPECIALTY PHARMACEUTICALS, JOHNSON & JOHNSON, AND JOHNSON & JOHNSON SERVICES, INC. individually and by and through their agents, servants and/or employees, and

ELECTRONICALLY FILED
11/14/2016 8:30 AM
2016-L-011117
PAGE 9 of 19

9

each of them, in an amount in excess of Fifty Thousand and No/100 Dollars ($50,000.00), and for such other and further relief in favor of Plaintiff as this Court deems just and fair.

## COUNT III

**(Strict Product Liability/Design Defect against Defendant BAYER and Defendant J&J collectively, individually and by and through their agents, servants and/or employees)**

1-47. Plaintiff repeats and realleges Paragraphs 1 through 47 of Count II as and for Paragraphs 1 through 47 of this Count III as if fully set forth herein.

48. Defendants Bayer and J&J are the designers, creators, engineers and suppliers of Xarelto.

49. The Xarelto given to Plaintiff contained a defect in its design and engineering, which causes massive internal bleeding. This defect in Xarelto existed at the time Xarelto left the possession and control of Defendants Bayer and J&J.

50. The defect in Xarelto caused it to fail during the time of use. This failure caused Plaintiff to suffer injuries and damages detailed herein, namely a massive gastrointestinal bleed.

51. Xarelto was used by Plaintiff in a manner foreseeable to Defendants Bayer and J&J.

52. As a direct and proximate result of the defects in Xarelto and the conduct of Defendants Bayer and J&J, Plaintiff suffered acute and prolonged physical and mental pain and suffering; and that she became liable for great sums of money for medical, hospital care and treatment, as well as incurring other expenses.

WHEREFORE, Plaintiff, SHIRLEY GRIFFIN, by and through her attorney, Barney & Karamanis LLP, prays for judgment against Defendants BAYER AG, BAYER HEALTHCARE PHARMACEUTICALS, INC., BAYER CORPORATION, BAYER HEALTHCARE, LLC,

ELECTRONICALLY FILED
11/14/2016 8:30 AM
2016-L-011117
PAGE 10 of 19

10

JANSSEN PHARMACEUTICALS, INC., MCNEILL-PPC, INC., MCNEIL CONSUMER HEALTHCARE DIVISION OF MCNEIL-PPC, INC., MCNEIL CONSUMER & SPECIALTY PHARMACEUTICALS, JOHNSON & JOHNSON, AND JOHNSON & JOHNSON SERVICES, INC. individually and by and through their agents, servants and/or employees, and each of them, in an amount in excess of Fifty Thousand and No/100 Dollars ($50,000.00), and for such other and further relief in favor of Plaintiff as this Court deems just and fair.

## COUNT IV

### (Negligence against Defendant BAYER and Defendant J&J collectively, individually and by and through their agents, servants and/or employees)

ELECTRONICALLY FILED
11/14/2016 8:30 AM
2016-L-011117
PAGE 11 of 19

1-52. Plaintiff repeats and realleges Paragraphs 1 through 52 of Count III as and for Paragraphs 1 through 52 of this Count IV as if fully set forth herein.

53. Defendants Bayer and J&J were negligent in designing and marketing Xarelto and such negligence was a proximate cause of injuries and damages to Plaintiff. Bayer and J&J, through their agents, employees, and/or servants, designed, manufactured, produced, inspected, tested, maintained, sold and/or made Xarelto available to Plaintiff. The negligence on the part of Defendants Bayer and J&J included, but was not limited to: marketing and making available Xarelto to Plaintiff, even though it was dangerous, defective, and deficient drug: and failing to provide Plaintiff with sufficient information as to the product's known dangers and risks, including severe system effects.

54. Defendants Bayer and J&J were negligent in designing Xarelto, and such negligence was a proximate cause of injuries and damages to Plaintiff. Bayer and J&J, through their agents, employees and/or servants, designed, manufactured, produced, inspected, tested, maintained, sold and/or made available Xarelto to the Plaintiff.

11

ELECTRONICALLY FILED
11/14/2016 8:30 AM
2016-L-011117
PAGE 12 of 19

55. As a consequence of Bayer and J&J's negligence, careless conduct, and failure to exercise ordinary and reasonable care and caution, Plaintiff suffered acute and prolonged physical and mental pain and suffering; and that she became liable for great sums of money for medical, hospital care and treatment, as well as incurring other expenses.

WHEREFORE, Plaintiff, SHIRLEY GRIFFIN, by and through her attorney, Barney & Karamanis LLP, prays for judgment against Defendants BAYER AG, BAYER HEALTHCARE PHARMACEUTICALS, INC., BAYER CORPORATION, BAYER HEALTHCARE, LLC, JANSSEN PHARMACEUTICALS, INC., MCNEILL-PPC, INC., MCNEIL CONSUMER HEALTHCARE DIVISION OF MCNEIL-PPC, INC., MCNEIL CONSUMER & SPECIALTY PHARMACEUTICALS, JOHNSON & JOHNSON, AND JOHNSON & JOHNSON SERVICES, INC. individually and by and through their agents, servants and/or employees, and each of them, in an amount in excess of Fifty Thousand and No/100 Dollars ($50,000.00), and for such other and further relief in favor of Plaintiff as this Court deems just and fair.

## COUNT V

**(Breach of Implied Warranty against Defendant BAYER and Defendant J&J collectively, individually and by and through their agents, servants and/or employees)**

1-55. Plaintiff repeats and realleges Paragraphs 1 through 55 of Count IV as and for Paragraphs 1 through 55 of this Count V as if fully set forth herein.

56. Prior to the time that Xarelto was used by Plaintiff, Defendants Bayer and J&J, through their agents, employees, subsidiaries, representatives and affiliates, impliedly warranted to Plaintiff and her health care providers that Xarelto was of a merchantable quality and safe and fit for the use for which it was intended.

57. Plaintiff and her health care providers were, and remain, unskilled, in the research, design, and manufacture of Xarelto and reasonably relied entirely on the skill,

12

judgment, and implied warranty of Defendants Bayer and J&J in using the aforementioned Xarelto.

58. Defendants Bayer and J&J knew or had reason to know that Plaintiff and her health care providers relied upon the skill and judgment of the Defendants as leaders in the pharmaceutical industry to create, market, test, and sell a suitable and safe product.

59. Xarelto was neither safe for its intended use nor of merchantable quality, as warranted by Defendants Bayer and J&J, in that Xarelto had dangerous propensities when put to its intended use and would cause severe injuries to the user.

60. The Xarelto was defective prior to its administration to Plaintiff and before it left the control of Defendants Bayer and J&J.

61. At the time it was manufactured and at all subsequent times, Xarelto was not as warranted, but was unfit for the particular purpose for which it was intended in that it was defective, causing Plaintiff to suffer damages and consequential damages.

62. As a result of the Xarelto, Plaintiff experienced severe and debilitating side effects including but not limited to severe internal bleeding.

63. Had Plaintiff been aware of these extreme side effects, Plaintiff would not have allowed her healthcare providers to administer the Xarelto.

64. As a result of Bayer and J&J's breach of implied warranty of fitness for a particular purpose and the resulting damages dangers associated with the use of Xarelto, Plaintiff suffered the injuries and damages set forth above.

WHEREFORE, Plaintiff, SHIRLEY GRIFFIN, by and through her attorney, Barney & Karamanis LLP, prays for judgment against Defendants BAYER AG, BAYER HEALTHCARE PHARMACEUTICALS, INC., BAYER CORPORATION, BAYER HEALTHCARE, LLC,

ELECTRONICALLY FILED
11/14/2016 8:30 AM
2016-L-011117
PAGE 13 of 19

13

JANSSEN PHARMACEUTICALS, INC., MCNEILL-PPC, INC., MCNEIL CONSUMER HEALTHCARE DIVISION OF MCNEIL-PPC, INC., MCNEIL CONSUMER & SPECIALTY PHARMACEUTICALS, JOHNSON & JOHNSON, AND JOHNSON & JOHNSON SERVICES, INC. individually and by and through their agents, servants and/or employees, and each of them, in an amount in excess of Fifty Thousand and No/100 Dollars ($50,000.00), and for such other and further relief in favor of Plaintiff as this Court deems just and fair.

### COUNT VI

**(Breach of Express Warranty against Defendant BAYER and Defendant J&J collectively, individually and by and through their agents, servants and/or employees)**

1-64. Plaintiff repeats and realleges Paragraphs 1 through 64 of Count V as and for Paragraphs 1 through 64 of this Count VI as if fully set forth herein.

65. Bayer and J&J expressly warranted to the public and Plaintiff through her health care providers that Xarelto was safe, effective, fit, and proper for its intended use through its advertising and marketing. Bayer and J&J did so through statements that it made orally and in publications, through package inserts, promotional and other written, oral, and electronically disseminated statements and materials provided to the medical trade journals and to mass-market publications.

66. Defendants Bayer and J&J breached those express warranties when it failed appropriately test and provide accurate warnings for the dangers of Xarelto. Defendants further breached those warranties since Xarelto caused Plaintiff's severe and debilitating symptoms, which were downplayed and/or not readily apparent on the Xarelto website.

67. As a result of Bayer and J&J's breaches of warranty, Plaintiff suffered the injuries and damages set forth above.

WHEREFORE, Plaintiff, SHIRLEY GRIFFIN, by and through her attorney, Barney &

ELECTRONICALLY FILED
11/14/2016 8:30 AM
2016-L-011117
PAGE 14 of 19

14

ELECTRONICALLY FILED
11/14/2016 8:30 AM
2016-L-011117
PAGE 15 of 19

Karamanis LLP, prays for judgment against Defendants BAYER AG, BAYER HEALTHCARE PHARMACEUTICALS, INC., BAYER CORPORATION, BAYER HEALTHCARE, LLC, JANSSEN PHARMACEUTICALS, INC., MCNEILL-PPC, INC., MCNEIL CONSUMER HEALTHCARE DIVISION OF MCNEIL-PPC, INC., MCNEIL CONSUMER & SPECIALTY PHARMACEUTICALS, JOHNSON & JOHNSON, AND JOHNSON & JOHNSON SERVICES, INC. individually and by and through their agents, servants and/or employees, and each of them, in an amount in excess of Fifty Thousand and No/100 Dollars ($50,000.00), and for such other and further relief in favor of Plaintiff as this Court deems just and fair.

## COUNT VII

**(Negligent Misrepresentation against Defendant BAYER and Defendant J&J collectively, individually and by and through their agents, servants and/or employees)**

1-67. Plaintiff repeats and realleges Paragraphs 1 through 67 of Count VI as and for Paragraphs 1 through 67 of this Count VII as if fully set forth herein.

68. Defendant, from the time that Xarelto was first tested, studied, researched, first manufactured, marketed and distributed, and up to the present, made false representations, as previously set forth herein, to Plaintiff, her health care providers, and the general public, including but not limited to the misrepresentation that Xarelto was safe, fit, and effective for human consumption.

69. At all times relevant herein, Defendants Bayer and J&J conducted sales and marketing campaigns to promote the sale of Xarelto, and carelessly and negligently failed to ascertain the truth about Xarelto when informing Plaintiff, her health care providers, and the general public as to the health risks and consequences of the use of Xarelto. Defendants made the following misrepresentations without any reasonable ground for believing them to be true:

    a. Representing to Plaintiff, her health care providers, and the general public that Xarelto was safe, fit, and effective for human consumption, knowing that said

15

representations were false, and concealing from each user, their health care providers, and the general public that Xarelto had a serious propensity to cause injuries to users;

b. Engaging in an advertising program and media campaign designed to create the image, impression and belief by consumers and physicians that the use of Xarelto was safe for a variety of therapeutic and cosmetic uses and concealing its poisonous properties, even though the Defendants knew these representations to be false, and even though the Defendants had no reasonable grounds to believe Xarelto was safe for the general public;

c. Purposely downplaying and understating the health hazards and risks associated with Xarelto;

d. Issuing promotional literature and commercials and conducting mass-media and news promotional interviews deceiving potential users of Xarelto by relaying positive information, including manipulating and/or omitting statistics to suggest widespread acceptability and safety, while downplaying the known adverse and serious health effects and concealing material relevant information regarding the safety of Xarelto; and

70. These representations were made directly by Defendants, by sales representatives and other authorized agents of said Defendants, and in publications, mass-media outlets, and other written materials directed to health care providers, patients, and the general public, with the intention of inducing reliance and the prescription, purchase, and use of Xarelto.

71. The representations made by Defendants Bayer and J&J were in fact false, in that Xarelto is not safe, fit, and effective for human consumption, the use of Xarelto is hazardous to health, and Xarelto has significant propensity to cause serious injuries to users, including but not limited to the injuries suffered by Plaintiff as described above. The foregoing misrepresentations by Defendants were made with the intention of inducing reliance and the prescription, purchase, and use of Xarelto.

72. In reliance on the misrepresentations by Defendants Bayer and J&J, Plaintiff was induced to use Xarelto, and her health care providers were induced to prescribe it. If each of them had known of the true facts and the facts concealed by Defendants Bayer and J&J, Plaintiff

16

would not have used Xarelto and her health care providers would not have prescribed it. Their reliance upon Defendants' negligent misrepresentations was justified because misrepresentations were made and conducted by individuals and entities that were in a position to know the true facts.

73. Defendants Bayer and J&J had a duty to Plaintiff to provide her and her healthcare providers with accurate and complete information, including, but not limited to, a truthful and complete lists of side effects.

74. Defendants Bayer and J&J breached that duty when they failed to provide accurate information as to the dangers and effects of Xarelto on patients, such as Plaintiff.

75. As a result of the foregoing negligent misrepresentations by Defendant, Plaintiff suffered injuries and damages as described above.

WHEREFORE, Plaintiff, SHIRLEY GRIFFIN, by and through her attorney, Barney & Karamanis LLP, prays for judgment against Defendants BAYER AG, BAYER HEALTHCARE PHARMACEUTICALS, INC., BAYER CORPORATION, BAYER HEALTHCARE, LLC, JANSSEN PHARMACEUTICALS, INC., MCNEILL-PPC, INC., MCNEIL CONSUMER HEALTHCARE DIVISION OF MCNEIL-PPC, INC., MCNEIL CONSUMER & SPECIALTY PHARMACEUTICALS, JOHNSON & JOHNSON, AND JOHNSON & JOHNSON SERVICES, INC. individually and by and through their agents, servants and/or employees, and each of them, in an amount in excess of Fifty Thousand and No/100 Dollars ($50,000.00), and for such other and further relief in favor of Plaintiff as this Court deems just and fair.

ELECTRONICALLY FILED
11/14/2016 8:30 AM
2016-L-011117
PAGE 17 of 19

17

## COUNT VIII

### (RESPONDENTS IN DISCOVERY – Jeffrey Cook, M.D., and Respondent Cardiovascular Institute at OSF, LLC, d/b/a Rockford Cardiovascular Associates)

1-75.   Plaintiffs repeat and reallege Paragraphs 1 through 75 of Count VII as and for Paragraphs 1 through 75 of this Count VIII as if fully set forth herein.

76.   Pursuant to Illinois Statute 735 Section 5/2-402, a plaintiff may designate as respondents in discovery in his or her pleading those individuals or other entities, other than the named defendants, believed by the plaintiff to have information essential to the determination of who should properly be named as additional defendants in the action.

77.   Plaintiff has attempted to discern the involvement of individuals or entities who may have participated in the care and treatment of Plaintiff which gives rise to this Complaint, but such attempts have yielded unclear information for which additional information is necessary.

78.   On information and belief, Respondent in Discovery, Jeffrey Cook, M.D., and Respondent Cardiovascular Institute at OSF, LLC, d/b/a Rockford Cardiovascular Associates, has information regarding the care and treatment of Plaintiff in so far as it has intimate knowledge of the drug at issue and the condition of Plaintiff in the instant cause of action.

79.   Once the involvement of Respondents, who contributed to Plaintiff's care and treatment, can be reviewed, Plaintiff will be able to proceed with her Complaint.

<div style="text-align:right">
Respectfully Submitted

**SHIRLEY GRIFFIN**

By: _____
One of her Attorneys
</div>

James A. Karamanis

ELECTRONICALLY FILED
11/14/2016 8:30 AM
2016-L-011117
PAGE 18 of 19

18

Barney & Karamanis, LLP
Two Prudential Plaza
180 N. Stetson, Suite 3050
Chicago, Illinois 60601
Tel.: 312/553-5300
Attorney No. 48525

ELECTRONICALLY FILED
11/14/2016 8:30 AM
2016-L-011117
PAGE 19 of 19