# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

KEVIN WARD,

Plaintiff,

v.

JANSSEN RESEARCH & DEVELOPMENT
LLC f/k/a JOHNSON AND JOHNSON
PHARMACEUTICAL RESEARCH AND
DEVELOPMENT LLC; JOHNSON AND
JOHNSON; JANSSEN PHARMACEUTICALS,
INC.  f/k/a JANSSEN PHARMACEUTICA INC.
f/k/a ORTHO- MCNEIL-JANSSEN
PHARMACEUTICALS, INC.;  JANSSEN
ORTHO LLC; BAYER HEALTHCARE
PHARMACEUTICALS, INC.; BAYER PHARMA
AG,  f/k/a BAYER SCHERING PHARMA AG;
BAYER  CORPORATION; BAYER
HEALTHCARE LLC; BAYER HEALTHCARE
AG; BAYER AG; and JOHN DOES 1-5,

Defendants.

MDL No. 2592
SECTION: L
JUDGE ELDON E. FALLON
MAG MICHAEL NORTH
 Civil Action No.:2:18-cv-01671

---

## FIRST AMENDED COMPLAINT AND RELIANCE UPON JURY DEMAND

---

COMES NOW the Plaintiff, KEVIN WARD, by and through the undersigned counsel, and

hereby submits this Complaint against Defendants Janssen Research & Development, LLC f/k/a

Johnson and Johnson Pharmaceutical Research And Development LLC; Johnson and Johnson;

Janssen Ortho, LLC; Janssen Pharmaceuticals, Inc. f/k/a Janssen Pharmaceuticals Inc., f/k/a

OrthoMcNeil-Janssen Pharmaceuticals, Inc.; Bayer Healthcare Pharmaceuticals, Inc.; Bayer Pharma

AG; Bayer Corporation; Bayer Healthcare, LLC; Bayer Healthcare AG; Bayer AG, and John Does

1

1-5, (hereinafter collectively "Defendants") for equitable relief, monetary restitution, and compensatory and punitive damages, arising from the injuries of Plaintiff as a result of her exposure to the pharmaceuticals product Xarelto ® and is hereby alleges as follows:

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the amount in controversy as to the Plaintiffs exceeds $75,000.00, exclusive of interest and costs, and because Defendants are incorporated or have their principal places of business in states other than the state in which the named Plaintiff resides.

2.     This Court has jurisdiction over the non-resident Defendants because they have done business in the State of Louisiana, have committed a tort in whole or in part in the State of Louisiana, and have continuing contacts with the State of Louisiana.

3.     Venue in this district for pretrial proceedings is proper because the United States Judicial Panel on Multi-District Litigation issued a Transfer Order *In Re:  Xarelto (Rivaroxaban) Products Liability Litigation* to centralize this litigation in the Easter District of Louisiana, MDL 2592.

## PARTIES

4.     Plaintiff at all times relevant hereto, was a resident and citizen of the State of Pennsylvania.

5.     Plaintiff began using Xarelto as prescribed by her physician in or about April of 2014, and continued using Xarelto through approximately August 9, 2016 when informed to stop take the drug because of injuries.

6.     On or about August 9, 2016, Plaintiff presented to the Taylor Hospital, Pennsylvania, with complaints of left-sided facial weakness, acute CVAs, recurrent DVTs, subacute lacunar infarct in the left side of the pons, and had a stroke, as a result, required extensive care and treatment. Plaintiff

2

suffered life-threatening bleeding and was caused to sustain severe and permanent personal injuries, pain, suffering and emotional distress as a direct result of his ingestion of Xarelto®.

7.     Upon information and belief, Defendant JANSSEN RESEARCH & DEVELOPMENT LLC f/k/a JOHNSON AND JOHNSON PHARMACEUTICAL RESEARCH AND DEVELOPMENT LLC (hereinafter referred to as "JANSSEN R&D") is a limited liability company organized under the laws of New Jersey, with a principal place of business at One Johnson & Johnson Plaza, New Brunswick, Middlesex County, New Jersey 08933. Defendant JANSSEN R&D's sole member is Janssen Pharmaceuticals, Inc., (Centocor, Inc. [now known as Janssen Biotech, Inc.], a Pennsylvania corporation with its principal place of business and nerve center located at 200 Great Valley Parkway, Malvern, Pennsylvania.), which is a Pennsylvania corporation with a principal place of business at 1125 Trenton-Harbourton Road, Titusville, New Jersey 08560. Accordingly, JANSSEN R&D is a citizen of Pennsylvania and New Jersey for purposes of determining diversity under 28 U.S.C. §1332. Defendant JANSSEN R&D is the holder of the approved New Drug Application ("NDA") for Xarelto as well as the supplemental NDA.

8.     As part of its business, JANSSEN R&D is involved in the research, development, sales, and marketing of pharmaceutical products including Xarelto and rivaroxaban.

9.     Upon information and belief, Defendant JANSSEN R&D has transacted and conducted business in the State of Virginia and the State of Louisiana.

10.     Upon information and belief, Defendant JANSSEN R&D has derived substantial revenue from good and products used in the State of Virginia and the State of Louisiana.

11.     Upon information and belief, Defendant, JANSSEN R&D, expected or should have expected its acts to have consequence within the United States of America and the State of Virginia and the State of Louisiana, and derived substantial revenue from interstate commerce within the United States and the State of Virginia and the State of Louisiana, more particularly.

3

12.     Upon information and belief, and at all relevant times, Defendant, JANSSEN R&D, was in the business of and did design, research, manufacture, test, advertise, promote, market, sell, and distribute the drug Xarelto for use as an oral anticoagulant, the primary purposes of which are to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, to treat DVT and PE, to reduce the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

13.     Defendant JOHNSON & JOHNSON (hereinafter "J&J"), is a fictitious name adopted by Defendant JOHNSON & JOHNSON COMPANY, a New Jersey corporation which has its principal place of business at One Johnson & Johnson Plaza, New Brunswick, Middlesex County, New Jersey 08933.  At all times relevant herein, Defendant JOHNSON & JOHNSON was engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling Xarelto®.

14.     Defendant Janssen R & D is the holder of the approved New Drug Application ("NDA") for Xarelto®, as well as the supplemental NDA. Janssen R & D, Johnson & Johnson and Centocor all transact substantial business within the state of Louisiana and throughout the United States, including the research, manufacture, sale, distribution and marketing of Xarelto®, as set forth herein.

15.     Upon information and belief, Defendant JANSSEN PHARMACEUTICALS, INC. f/k/a JANSSEN PHARMACEUTICA INC. f/k/a ORTHO-MCNEIL-JANSSEN HARMACEUTICALS, INC. (hereinafter referred to as "JANSSEN PHARM") is a Pennsylvania Corporation, having a principal place of business at 1125 Trenton-Harbourton Road, Titusville, New Jersey 08560.

16.     As part of its business, JANSSEN PHARM is involved in the research, development, sales, and marketing of pharmaceutical products including Xarelto and rivaroxaban.

17.     Upon information and belief, Defendant, JANSSEN PHARM has transacted and conducted business in the States of Virginia and Louisiana.

18.     Upon information and belief, Defendant, JANSSEN PHARM, has derived substantial revenue from goods and products used in the States of Virginia and Louisiana.

19.     Upon information and belief, Defendant, JANSSEN PHARM, expected or should have expected its acts to have consequences within the United States of America, the States of Tennessee and Louisiana, and derived substantial revenue from interstate commerce within the United States and the States of Virginia and Louisiana, more particularly.

20.     Upon information and belief, and at all relevant times, Defendant, JANSSEN PHARM, was in the business of and did design, research, manufacture, test, advertise, promote, market, sell, and distribute the drug Xarelto for use as an oral anticoagulant, the primary purposes of which are to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, to treat DVT and PE, to reduce the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

21.     Upon information and belief, Defendant JANSSEN ORTHO LLC (hereinafter referred to as "JANSSEN ORTHO") is a limited liability company organized under the laws of Delaware, having a principal place of business at Stateroad 933 Km 01, Street Statero, Gurabo, Puerto Rico 00778. Defendant JANSSEN ORTHO is a subsidiary of Johnson & Johnson. The only member of JANSSEN ORTHO LLC is OMJ PR Holdings, which is incorporated in Ireland with a principal place of business in Puerto Rico. Accordingly, JANSSEN ORTHO LLC is a citizen of Delaware, Ireland and Puerto Rico for purposes of determining diversity under 28 U.S.C. § 1332.

5

22.     As part of its business, JANSSEN ORTHO is involved in the research, development, sales, and marketing of pharmaceutical products including Xarelto and rivaroxaban.

23.     Upon information and belief, Defendant, JANSSEN ORTHO has transacted and conducted business in the States of Virginia and Louisiana.

24.     Upon information and belief, Defendant, JANSSEN ORTHO, has derived substantial revenue from goods and products used in the States of Virginia and Louisiana.

25.     Upon information and belief, Defendant, JANSSEN ORTHO, expected or should have expected its acts to have consequence within the United States of America and the States of Virginia and Louisiana, and derived substantial revenue from interstate commerce within the United States and the States of Virginia and Louisiana, more particularly.

26.     Upon information and belief, and at all relevant times, Defendant, JANSSEN ORTHO, was in the business of and did design, research, manufacture, test, advertise, promote, market, sell, and distribute the drug Xarelto for use as an oral anticoagulant, the primary purposes of which are to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, to treat DVT and PE, to reduce the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

27.     Upon information and belief, Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC. is, and at all relevant times was a corporation organized under the laws of the State of Delaware, with its principal place of business in the State of New Jersey.

28.     Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC. was formerly known as Berlex Laboratories, Inc., which was formerly known as Berlex, Inc. and BAYER HEALTHCARE PHARMACEUTICALS, INC. is the same corporate entity as Berlex, Inc. and Berlex Laboratories, Inc.

6

29.     As part of its business, BAYER HEALTHCARE PHARMACEUTICALS, INC. is involved in the research, development, sales, and marketing of pharmaceutical products including Xarelto and rivaroxaban.

30.     Upon information and belief, Defendant, BAYER HEALTHCARE PHARMACEUTICALS, INC., has transacted and conducted business in the States of Virginia and Louisiana.

31.     Upon information and belief, Defendant, BAYER HEALTHCARE PHARMACEUTICALS, INC., has derived substantial revenue from goods and products used in the States of Tennessee and Louisiana.

32.     Upon information and belief, Defendant, BAYER HEALTHCARE PHARMACEUTICALS, INC., expected or should have expected its acts to have consequence within the United States of America and the States of Virginia and Louisiana, and derived substantial revenue from interstate commerce within the United States and the States of Virginia and Louisiana, more particularly.

33.     Upon information and belief, and at all relevant times, Defendant, BAYER HEALTHCARE PHARMACEUTICALS, INC., was in the business of and did design, research, manufacture, test, advertise, promote, market, sell, and distribute the drug Xarelto for use as an oral anticoagulant, the primary purposes of which are to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, to treat DVT and PE, to reduce the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

34.     Upon information and belief, Defendant BAYER PHARMA AG is a pharmaceutical company domiciled in Germany.

7

35. Defendant BAYER PHARMA AG is formerly known as Bayer Schering Pharma AG and is the same corporate entity as Bayer Schering Pharma AG. Bayer Schering Pharma AG is formerly known as Schering AG and is the same corporate entity as Schering AG.

36. Upon information and belief, Schering AG was renamed Bayer Schering Pharma AG effective December 29, 2006.

37. Upon information and belief, Bayer Schering Pharma AG was renamed BAYER PHARMA AG effective July 1, 2011.

38. As part of its business, BAYER PHARMA AG is involved in the research, development, sales, and marketing of pharmaceutical products including Xarelto and rivaroxaban.

39. Upon information and belief, Defendant, BAYER PHARMA AG, has transacted and conducted business in the States of Virginia and Louisiana.

40. Upon information and belief, Defendant, BAYER PHARMA AG, has derived substantial revenue from goods and products used in the States of Virginia and Louisiana.

41. Upon information and belief, Defendant, BAYER PHARMA AG, expected or should have expected its acts to have consequence within the United States of America and the States of Virginia and Louisiana, and derived substantial revenue from interstate commerce within the United States and the States of Virginia and Louisiana, more particularly.

42. Upon information and belief, and at all relevant times, Defendant, BAYER PHARMA AG, was in the business of and did design, research, manufacture, test, advertise, promote, market, sell, and distribute the drug Xarelto for use as an oral anticoagulant, the primary purposes of which are to reduce the risk of stroke and systemic embolism in patients with nonvalvular atrial fibrillation, to treat DVT and PE, to reduce the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

8

43.     Upon information and belief, Defendant BAYER CORPORATION is an Indiana corporation with its principal place of business at 100 Bayer Road, Pittsburgh, Pennsylvania 15205.

44.     Upon information and belief, Defendant BAYER CORPORATION is the sole member of BAYER HEALTHCARE LLC, which owns 100% of Schering Berlin, Inc., which owns 100% of Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC.   As such, Defendant BAYER CORPORATION is a parent of Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC.

45.     At relevant times, Defendant BAYER CORPORATION was engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drug Xarelto.

46.     At relevant times, Defendant BAYER CORPORATION conducted regular and sustained business in the States of Virginia and Louisiana, by selling and distributing its products in the States of Virginia and Louisiana and engaged in substantial commerce and business activity in the States of Virginia and Louisiana.

47.     Upon information and belief, Defendant BAYER HEALTHCARE LLC is a limited liability company duly formed and existing under and by the virtue of the laws of the State of Delaware, with its principal place of business located in the State of New York.   BAYER HEALTHCARE LLC's sole member is Bayer Corporation, and is wholly owned by Bayer Corporation, which is an Indiana corporation with its principal place of business at 100 Bayer Road, Pittsburgh, Pennsylvania 15205. Accordingly, BAYER HEALTHCARE LLC is a citizen of Delaware, New York, Indiana and Pennsylvania for purposes of determining diversity under 28 U.S.C. § 1332.

48.     Upon information and belief, at all relevant times, Defendant BAYER HEALTHCARE LLC has transacted and conducted business in the States of Virginia and Louisiana, and derived substantial revenue from interstate commerce.

49.     Upon information and belief, at all relevant times, Defendant BAYER HEALTHCARE LLC expected or should have expected that its acts would have consequences within the United States of America, in the States of Virginia and Louisiana, and derived substantial revenue from interstate commerce.

50.     Upon information and belief, at all relevant times, Defendant BAYER HEALTHCARE LLC was in the business of and did design, research, manufacture, test, advertise, promote, market, sell, and distribute Xarelto for use as an oral anticoagulant, the primary purposes of which are to reduce the risk of stroke and systemic embolism in patients with nonvalvular atrial fibrillation, to treat DVT and PE to reduce the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

51.     Upon information and belief, Defendant BAYER HEALTHCARE AG is a company domiciled in Germany and is the parent/holding company of Defendants BAYER CORPORATION, BAYER HEALTHCARE LLC, BAYER HEALTHCARE PHARMACEUTICALS, INC, and BAYER PHARMA AG.

52.     Upon information and belief, at all relevant times, Defendant BAYER HEALTHCARE AG has transacted and conducted business in the States of Virginia and Louisiana, and derived substantial revenue from interstate commerce.

53.     Upon information and belief, at all relevant times, Defendant BAYER HEALTHCARE AG expected or should have expected that its acts would have consequences within the United States of America, and in the States of Virginia and Louisiana, and derived substantial revenue from interstate commerce.

10

54.    Upon information and belief, at all relevant times, Defendant BAYER HEALTHCARE AG exercises dominion and control over Defendants BAYER CORPORATION, BAYER HEALTHCARE LLC, BAYER HEALTHCARE PHARMACEUTICALS, INC., and BAYER PHARMA AG.

55.    Upon information and belief, Defendant BAYER AG is a German chemical and pharmaceutical company that is headquartered in Leverkusen, North Rhine-Westphalia, Germany.

56.    Upon information and belief, Defendant BAYER AG is the third largest pharmaceutical company in the world.

57.    Upon information and belief, and at all relevant times Defendant BAYER AG is the parent/holding company of all other named Defendants, and at all relevant times, Defendant BAYER AG has transacted and conducted business in the States of Virginia and Louisiana, and derived substantial revenue from interstate commerce.

58.    Upon information and belief, at all relevant times, Defendant BAYER AG expected or should have expected that its acts would have consequences within the United States of America, in the States of Virginia and Louisiana, and derived substantial revenue from interstate commerce.

59.    Upon information and belief, at all relevant times, Defendant BAYER AG was in the business of and did design, research, manufacture, test, advertise, promote, market, sell, and distribute Xarelto for use as an oral anticoagulant, the primary purposes of which are to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, to treat DVT and PE, to reduce the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

60.    Upon information and belief, Defendants John Does 1-5 are corporations or other legal entities, the names and addresses of residences of which are unknown.

61.     At all times alleged herein, Defendants shall include any and all named or unnamed parent companies, parent corporations, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and any organizational units of any kind, their predecessors, successors, successors in interest, assignees, and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

62.     At all times herein mentioned, each of the Defendants was the agent, servant, partner, predecessor in interest, aider and abettor, co-conspirator, and joint venturer of each of the remaining Defendants herein.

63.     At all times herein mentioned, each of the Defendants was the agent, servant, partner, predecessor in interest, aider and abettor, co-conspirator, and joint venturer of each of the remaining Defendants thereby operating and acting with the purpose and scope of said agency, service, employment, partnership, conspiracy and joint venture.

64.     At all times relevant and material hereto, Defendants were engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and or introducing into interstate commerce throughout the United States and in the State of Louisiana, either directly or indirectly, through third-parties, subsidiaries and/or related entities, the anticoagulant Pharmaceuticals Xarelto®.

## NATURE OF THE CASE

65.     Defendants, directly or by and through their agents, apparent agents, servants or employees designed, manufactured, marketed, advertised, distributed, promoted, labeled, tested and sold Xarelto® as an anti-coagulant primarily used to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, to treat deep vein thrombosis ("DVT"), to treat pulmonary embolisms ("PE"), and/or to reduce the risk of recurrence of DVT and/or PE.

12

66.     Defendants applied for an initial NDA for Xarelto® in July of 2008.

67.     Xarelto® was approved by the Food and Drug Administration ("FDA") on July 1, 2011 to reduce the risk of blood clots, DVT, and PE following knee and hip replacement surgery. On November 4, 2011 Xarelto® was approved as an anti-coagulant primarily used to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation.  On November 2, 2012 the FDA expanded the use of Xarelto® to the treatment of patients with DVT and PE, as well as long-term treatment to prevent recurrence of the same.

68.     According to the Defendants' marketing and informational materials, referenced in the paragraphs below, and widely disseminated to the consuming public, "Xarelto® is the first and only once-a-day prescription blood thinner for patients with AFib not caused by a heart valve problem, that is proven to reduce the risk of stroke -- without routine blood monitoring."[1]

69.     As the Defendants state on their website, "XARELTO® has been proven to lower the chance of having a stroke if you have atrial fibrillation (AFib), not caused by a heart valve problem. XARELTO® is an anticoagulant, or blood-thinning medicine that works by helping to keep blood clots from forming."  The Defendants further claim that "it's been prescribed to more than seven million people around the world to help treat or reduce their risk of dangerous clots" and that it "begins working a few hours after you start taking it, and keeps working for as long as take it."[2]

70.     Defendants further declare that "XARELTO® is proven to help treat and prevent DVT and PE blood clots" and that Xarelto® "reduc[es] the risk of these dangerous clots [from] happening again."[3]

---

[1] http://www fda.gov/downloads/Drugs/GuidanceComplianceRegulatoryInformation/EnforcementActivitiesbyFDA/WarningLettersandNoticeofViolationLetterstoPharmaceuticalCompanies/UCM357833

[2] http://www xarelto-us.com/how-xarelto-works

[3] http://www xarelto-us.com/dvt-pe/treatment-of-dvt-pe

71.     Defendants claim that patients with AFib, DVT, or PE taking Xarelto® do not need regular blood monitoring and there are no known dietary restrictions.  In addition, patients with AFib only need to take Xarelto® once a day with an evening meal.[4]

72.     Defendants claim that patients with AFib are 5 times more likely than a person without Afib to suffer from a stroke and that "disability is more likely to be severe" and "the outcome is almost twice as likely to be fatal" and "the chances of having another major stroke go up."[5]

73.     Rivaroxaban is an oxazolidinone derivative optimized for inhibiting both free Factor Xa and Factor Xa bound in the prothrombinase complex.  It is a highly selective direct Factor Xa inhibitor with oral bioavailability and rapid onset of action.  Inhibition of Factor Xa interrupts the intrinsic and extrinsic pathway of the blood coagulation cascade, inhibiting both thrombin formation and development of thrombi.  Rivaroxaban does not inhibit thrombin (activated Factor II).

74.     Defendants routinely marketed Xarelto® as a "one size fits all" drug. In their fervent marketing of Xarelto, Defendants' misinformed patients and their healthcare providers as to the necessity to routinely monitor any patient requiring a blood thinning agent.  In essence, the Defendants have created a new drug, Xarelto®, that is not better than warfarin from a safety perspective, and at best, is only perhaps slightly easier to use and administer.  The idea of this apparently easier-to-use anticoagulant evidently appealed to physicians, who were subject to extreme marketing and promotion by the Defendants, but ignores patient safety.

---

[4] http://www.xarelto-us.com/dvt-pe/xarelto-difference# and http://www.xarelto-us.com/how-xarelto-is-different

[5] http://www.xarelto-us.com/knowing-your-stroke-risk

75.     The Defendants' marketing materials suggest that Xarelto® represented a therapeutic simplification and therapeutic progress because it did not require patients to undergo periodic monitoring with blood tests and because there were no dietary restrictions.

76.     Defendants' boxed warning did not address the increased risk for serious and fatal bleeding, despite the fact that the information listed on their website originating from the Rocket AF clinical trial sponsored by Defendants, states that in comparison to warfarin, patients taking Xarelto® have more gastrointestinal bleeds and need more transfusions.  In spite of this reference regarding bleeds, the information is still wholly inadequate because, this information was not conveyed in the boxed warning on the Xarelto® label.[6]

77.     According to Institute for Safe Medication Practices, QuarterWatch Report, issued on October 3, 2012, the primary reported adverse event related to Xarelto® use "was not the well-understood risk of hemorrhage.  Instead, the largest identifiable category was serious blood-clot-related injury--most frequently pulmonary embolism--the very events rivaroxaban is intended to prevent." This lack of efficacy for short term users of Xarelto® post hip and knee replacement surgery resulted in about 44% of the reported adverse effects from taking Xarelto®.

78.     FDA clinical reviewers have stated that "rivaroxaban should not be approved unless the manufacturer conducts further studies to support the efficacy and safety of rivaroxaban" and the FDA website notes that "[a]dverse event reports of thrombocytopenia and venous thromboembolic events were identified" in relationship to Xarelto®".[7]  However, this information was not portrayed in the warning section on the warning label.  The lack of efficacy of the medication for patients taking

---

[6] http://www.xareltohcp.com/reducing-stroke-risk/safety html
[7] http://www fda.gov/drugs/guidancecomplianceregulatoryinformation/surveillance/ucm204091 htm

Xarelto® post hip and knee surgery were not disclosed resulting in patients ingesting Xarelto® and physicians prescribing Xarelto® without sufficient information to make an accurate decision.

79.     Defendants fervently marketed Xarelto® using print advertisements, online marketing on their website, and video advertisements with no regard to the accuracy and repercussions of their misleading advertising in favor of increasing sales.

80.     In the January/February 2013 issue of *WebMD* magazine, Defendants placed a print advertisement that resulted in the Office of Prescription Drug Promotion (OPDP) of the U.S. Food and Drug Administration (FDA) sending a letter stating that their print advertisement was "false or misleading because it minimizes the risks associated with Xarelto® and makes a misleading claim." Furthermore, the advertisement states "And there are no dosage adjustments" in conflict with the product labeling approved by the FDA.[8]

81.     As a result of Defendants' intense marketing, "[a]bout 130,000 U.S. prescriptions were written for Xarelto® in the first three months of 2012" resulting in large profits as Xarelto® costs approximately $3,000 a year versus $200 for generic warfarin.[9]

82.     As a result of Defendant's extreme marketing tactics, within the United Kingdom, Defendants also made 219 million Euros in sales from Xarelto®, more than three times as much as during the same period last year.[10]

---

[8] http://www fda.gov/downloads/Drugs/GuidanceComplianceRegulatoryInformation/EnforcementActivitiesbyFDA/WarningLettersandNoticeofViolationLetterstoPharmaceuticalCompanies/UCM357833, June 6, 2013 FDA Warning Letter

[9] http://www huffingtonpost.com/2012/06/14/pradaxa-xarelto-blood-thinner-doctors-heart n 1595971 html

[10] Frank Siebelt, Hans Seidenstuecker, and Christoph Steitz. "Reports of side-effects from Bayer's Xarelto grow: Spiegel" http://www reuters.com/article/2013/09/08/us-bayer-xarelto-idUSBRE9870AH20130908

83.     Due to the defective nature of Xarelto®, persons who were prescribed and ingested Xarelto®, for even a brief period of time, including the Plaintiff herein, was at an increased risk for developing life-threatening bleeds.

84.     Due to the flawed formulation of Xarelto®, which according to Defendants does not require regular blood monitoring or frequent doctor follow-up, raises concerns about the risk of stroke, bleeding, and blood clots if not taken properly or absorbed properly, particularly in patients with poor renal function.  In addition, "[p]rominent U.S. [cardiologists and health care professionals] stress that neither new drug [Xarelto] has a known antidote for a bleeding emergency, as warfarin does."[11]

85.     Defendants' Xarelto® led to 968 suspected undesirable side-effects including 72 cases of death in Germany in just the first eight months of 2013.[12]

86.     In addition, The Institute for Safe Medication Practices reported that:

*"A clinical trial with 14,000 patients had shown that rivaroxaban was no worse than warfarin. [40] But reviewers noted that warfarin had not been optimally used. If rivaroxaban were really inferior to optimally used warfarin--but this was not proven, only suspected--its use could lead to increased death and injury. [41]  Reviewers also questioned the convenient once-a-day dosing scheme, saying blood level studies had shown peaks and troughs that could be eliminated by twice-a-day dosing.  . . . As with other anticoagulants, the rate of clinically relevant bleeding in clinical studies was high--15% per year of treatment."[13]*

87.     Even more significantly, in the first quarter of 2012, The Institute for Safe Medication Practices "identified 356 reports of serious, disabling, or fatal injury in which rivaroxaban was the primary suspect drug.  The report more than doubled from the previous quarter total of 128 cases."[14] However, when the findings were discussed with Defendants, "the company told us that it had

---

[11] http://www.huffingtonpost.com/2012/06/14/pradaxa-xarelto-blood-thinner-doctors-heart_n_1595971.html

[12] Frank Siebelt, Hans Seidenstuecker, and Christoph Steitz.  "Reports of side-effects from Bayer's Xarelto grow:  Spiegel"  http://www.reuters.com/article/2013/09/08/us-bayer-xarelto-idUSBRE9870AH20130908

[13] Institute for Safe Medication Practices, QuarterWatch Report, October 3, 2012

[14] *Id.*

reviewed the same data and saw no signal of a safety issue that needed to be addressed."[15]  Defendants placed more value into ensuring that their profits would continue instead of working on minimizing the serious, disabling, or fatal injuries that were occurring due to the drug they were marketing and promoting.

88.    Defendants concealed their knowledge that Xarelto® can cause life threatening, irreversible bleeds from the Plaintiff, other consumers, the general public, and the medical community.

89.    The Defendants did not adequately warn of the irreversible nature of Xarelto®. Specifically, Defendants did not adequately inform consumers and the prescribing medical community about the risks of uncontrollable bleeds associated with Xarelto® usage, nor did Defendants warn or otherwise advise on how to intervene and stabilize a patient should a bleed occur.

90.    Moreover, Defendants failed to adequately warn about the lack of an antidote to reverse uncontrolled bleeding caused by Xarelto®.   Defendants merely indicated that there was a risk for bleeding and side-stepped the important issue of reversing the effects of Xarelto® should a bleed occur.   Other safer alternatives to Xarelto® have an antidote that can reverse uncontrolled bleeding.

91.    Importantly, Xarelto® still does not have a "black box" warning informing patients or prescribing doctors that Xarelto® can cause irreversible bleeds.  In fact, a label change as recent as March 2014 still fails to contain a "black box" warning regarding irreversible bleeds.[16]

---

[15] *Id.*
[16] http://www.accessdata.fda.gov/drugsatfda docs/label/2014/022406s009lbl.pdf

92.     Aside from the warning labels, Defendants did not issue a Dear Doctor letter that sufficiently outlined the dangers of administering Xarelto® to a patient.  In the September 2013 letter to healthcare professionals, Defendants do not mention the lack of an antidote in Xarelto® should serious and fatal bleeding occur while a patient was taking Xarelto®.

93.     The current warning is simply inadequate. The Defendants have failed and continue to fail in their duties to warn and protect the consuming public, including the Plaintiff.

94.     In addition to damages for the Defendants' inadequate warnings, Xarelto® also lacks any benefit sufficient to tolerate the extreme risk posed by the ingestion of this drug.

95.     Xarelto® is unreasonably dangerous and defective as formulated putting consumers, including Plaintiff, at an unreasonable risk of suffering needless injuries and death.

96.     Defendants willfully, wantonly and with malice withheld the knowledge of increased risk of irreversible bleeds in users of Xarelto® to prevent any chances of their product's registrations being delayed or rejected by FDA.

97.     As the manufacturers and distributors of Xarelto®, Defendants knew or should have known that Xarelto® use was associated with irreversible bleeds.

98.     With the knowledge of the true relationship between use of Xarelto® and irreversible bleeds, rather than taking steps to pull the drug off the market, provide strong warnings, or create an antidote, Defendants promoted and continue to promote Xarelto® as a safe and effective treatment for AFib.

99.     According to the World Preview report, Defendants' "Xarelto® ... is estimated to be the 19th-best-selling drug in the world by 2018" and "Worldwide sales of Xarelto® are expected to jump from $596 million in 2012 to $3.7 billion in 2018."[17]

---

[17] http://www.drugwatch.com/2013/07/23/blood-thinner-growth-more-risk/

100.    While Defendants enjoy great financial success from their expected blockbuster drug, Xarelto®, they continue to place American citizens at risk of severe bleeds and death.

101.    Consumers, including Plaintiff, who have used Xarelto® to reduce the risk of stroke due to Afib or to reduce the risk of blood clots, particularly DVT and PE, following knee or hip replacement surgery, have several alternative safer products available to treat the conditions and have not been adequately warned about the significant risks and lack of benefits associated with Xarelto® therapy.

102.    Defendants, through their affirmative misrepresentations and omissions, actively concealed from Plaintiff and Plaintiff's physicians the true and significant risks associated with Xarelto® use.

103.    As a result of Defendants' actions, Plaintiff and Plaintiff's physicians were unaware, and could not have reasonably known or have learned through reasonable diligence, that Plaintiff would be exposed to the risks identified in this Complaint.

104.    The increased risks and subsequent medical damages associated with Plaintiff's Xarelto® use were the direct and proximate result of Defendants' conduct.

**FACTUAL ALLEGATIONS**

105.    On or about August 9, 2016, Plaintiff presented to the Taylor Hospital, Pennsylvania, with complaints of left-sided facial weakness, acute CVAs, recurrent DVTs, subacute lacunar infarct in the left side of the pons, and had a stroke, as a result, required extensive care and treatment. Plaintiff suffered life-threatening bleeding and was caused to sustain severe and permanent personal injuries, pain, suffering and emotional distress as a direct result of his ingestion of Xarelto®.

106.    As a direct result of being prescribed Xarelto® for this period of time, Plaintiff suffered significant injuries, such as those described above.

20

107.    As a proximate result of Defendants' acts and omissions, Plaintiff suffered the injuries described hereinabove due to Plaintiff's ingestion of Xarelto®. Plaintiff accordingly seeks damages associated with these injuries.

108.    Plaintiff would not have used Xarelto® had Defendants properly disclosed the risks associated with its use, as safer alternatives without the aforesaid risks were available.

## EQUITABLE TOLLING OF APPLICABLE STATUTES OF LIMITATION

109.    Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

110.    The running of any statute of limitations has been tolled by reason of Defendants' fraudulent concealment. Defendants, through failing to disclose, for three years, the truth about the safety and efficacy of Xarelto®, to Plaintiff's physicians and/or Plaintiff, and misrepresenting Xarelto® as safe and efficacious for its intended use, actively concealed from said individuals the true risks associated with the use of Xarelto® drug products.

111.    Plaintiff had no knowledge that Defendants were engaged in the wrongdoing alleged herein. Because of the fraudulent acts of concealment of wrongdoing by the Defendants, the Plaintiff could not have reasonably discovered the wrongdoing at any time prior to the commencement of this action.

112.    Plaintiff, nor Plaintiff's physicians, could have possibly determined the nature, extent and identity of related health risks associated with Xarelto®. Plaintiff and Plaintiff's physicians reasonably relied on Defendants to disseminate truthful and accurate safety and efficacy information about its drug and warn of the side effects complained of herein.

113.    Furthermore, Defendants are estopped from relying on any statute of limitations because of their fraudulent concealment of the defective nature of Xarelto®. Defendants were under a duty to disclose the true character, quality, and nature of Xarelto® because this was nonpublic

21

information over which the Defendants have, and continue to have, exclusive control, and because Defendants knew this information was not available to the Plaintiff or her physicians.  In addition, the Defendants are estopped from relying on any statute of limitations because of their concealment of these facts.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

**COUNT I**
**STRICT PRODUCTS LIABILITY- FAILURE TO WARN**

Comes now Plaintiff and for Count I of this Complaint alleges:

114.    Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

115.    Plaintiff, brings Count I of this complaint for the injuries suffered as a result of ingesting Xarelto®.

116.    Defendants owed a duty of reasonable care to adequately warn of the risks associated with the use of Xarelto® to Plaintiff and the general public.

117.    Defendants knew or reasonably should have known that the warnings provided  to users of Xarelto® regarding the risks associated with its use were incorrect and misleading in at least the following material respects:

a.  Xarelto® was unaccompanied by proper warnings regarding all possible side effects associated with its use and the comparative severity, incidence, and duration of such adverse effects; and

b.  Xarelto® was defective due to inadequate post-marketing warnings or  instructions, because Defendants failed to provide adequate warnings to users or  consumers and continued aggressively to promote Xarelto®, even after it knew or should have known of the risks of injury from this drug; and

    c.   Xarelto® was unaccompanied by proper warnings regarding irreversible bleeding caused by Xarelto® and Defendants continued to aggressively promote Xarelto®, even after it knew of should have known of the risk of irreversible bleeding from this drug; and

    d.   Defendants failed to warn that there were other drugs available that did not have the same risks as Xarelto®.

118.    By failing to warn Plaintiff and Plaintiff's physicians of the adverse health risks associated with Xarelto®, Defendants breached their duty to Plaintiff of reasonable care and safety.

119.    Defendants, as manufacturers and distributers of Pharmaceuticals drugs, are held to the level of knowledge of an expert in the field; and further, Defendants knew or should have known that warnings and other clinically relevant information and data which they distributed regarding the risks of irreversible bleeds and other injuries and death associated with the use of Xarelto® were inadequate.

120.    Plaintiff did not have the same knowledge as Defendants and no adequate warning or other clinically relevant information and data was communicated to Plaintiff or to Plaintiff's treating physicians.

121.    Defendants had a continuing duty to provide consumers, including Plaintiff and Plaintiff's physicians, with warnings and other clinically relevant information and data regarding the risks and dangers associated with Xarelto®, as it became or could have become available to Defendants.

122.    Defendants marketed, promoted, distributed and sold an unreasonably dangerous and defective prescription drug, Xarelto®, to health care providers empowered to prescribe and dispense Xarelto® to consumers, including Plaintiff, without adequate warnings and other clinically relevant information and data.  Through both omission and affirmative misstatements, Defendants misled the

medical community about the risk and benefit balance of Xarelto®, which resulted in injury to Plaintiff.

123.    Despite the fact that Defendants knew or should have known that Xarelto® caused unreasonable and dangerous side effects, they continued to promote and market Xarelto® without stating that there existed safer and more or equally effective alternative drug products and/or providing adequate clinically relevant information and data.

124.    Defendants knew or should have known that consumers, including Plaintiff specifically, would foreseeably and needlessly suffer injury and/or death as a result of Defendants' failures.

125.    Defendants failed to provide timely and adequate warnings to physicians, pharmacies, and consumers, including Plaintiff, and to Plaintiff's intermediary physicians, in the following ways:

   a.    Defendants failed to include adequate warnings and/or provide adequate clinically relevant information and data that would alert Plaintiff and Plaintiff's physicians to the dangerous risks of Xarelto® including, among other things, irreversible bleeds;

   b.    Defendants failed to provide adequate post-marketing warnings and instructions after the Defendants knew or should have known of the significant risks of, among other things, irreversible bleeds;

   c.    Defendants continued to aggressively promote and sell Xarelto®, even after they knew or should have known of the unreasonable risks of irreversible bleeds from this drug.

126.    Defendants had an obligation to provide Plaintiff and Plaintiff's physicians with adequate clinically relevant information and data and warnings regarding the adverse health risks associated with exposure to Xarelto®, and/or that there existed safer and more or equally effective alternative drug products.

127.    By failing to provide Plaintiff and Plaintiff's physicians with adequate clinically relevant information and data and warnings regarding the adverse health risks associated with

exposure to Xarelto®, and/or that there existed safer and more or equally effective alternative drug products, Defendants breached their duty of reasonable care and safety.

128.    Defendants' actions described above were performed willfully, intentionally, and with reckless disregard of the life and safety of the Plaintiff and the general public.

129.    Defendants' failure to exercise reasonable care in the design, dosing information, marketing, warnings, and/or manufacturing of Xarelto® was a proximate cause of Plaintiff's injuries and damages.

130.    Plaintiff seeks all damages to which they may be justly entitled.

131.    As a direct and proximate result of the actions and inactions of the Defendants as set forth above, Plaintiff was exposed to Xarelto® and suffered the injuries and damages set forth hereinabove.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT II
## STRICT PRODUCTS LIABILITY – DESIGN DEFECT

Comes now Plaintiff and for Count II of this Complaint alleges:

132.    Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

133.    At all times material to this lawsuit, Defendants were engaged in the business of designing, manufacturing, testing, marketing, distributing and selling Xarelto® for the sale to, and use by, members of the public.

25

134.   The Xarelto® manufactured by Defendants reached Plaintiff without substantial change and was ingested as directed.  The Xarelto® was defective and unreasonably dangerous when it entered into the stream of commerce and when used by Plaintiff.

135.   Defendants sold the Xarelto® which was ingested by Plaintiff.

136.   Defendants owed a duty to the general public, and specifically to the Plaintiff, to exercise reasonable care in the design, study, development, manufacture, promotion; sale, marketing and distribution of their prescription medications, including the Xarelto® at issue in this lawsuit. Defendants failed to exercise reasonable care in the design of Xarelto® because as designed, Xarelto was capable of causing serious personal injuries such as those suffered by Plaintiff during foreseeable use.  Defendants also failed to exercise reasonable care in the marketing of Xarelto® because they failed to warn, that as designed, Xarelto® was capable of causing serious personal injuries such as those suffered by Plaintiff during foreseeable use.

137.   Xarelto® was defective due to inadequate post-marketing warnings and instruction because Defendants knew or should have known of the risk and danger of serious bodily harm and or death from the use of Xarelto®, but failed to provide an adequate warning to patients and prescribing physicians of the product, knowing the product could cause serious injury and/or death.

138.   The Xarelto® ingested by Plaintiff was defective and, because of its  defects, was unreasonably dangerous to persons who might reasonably be expected to require its use.  In addition, this drug was dangerous to the extent beyond that which could reasonably be contemplated by Plaintiff.  Any benefit of Xarelto® was far outweighed by the serious and undisclosed risks of its use, and other drugs performed the same function without the increased risks of Xarelto®.

139.   The Xarelto® ingested by Plaintiff was defective at the time it was distributed by the Defendants or left their control.

140.   Plaintiff was a person who would reasonably be expected to use Xarelto®.

141.    Defendants' failure to exercise reasonable care in the design, dosing information, marketing, warnings, and/or manufacturing of Xarelto® was a proximate cause of Plaintiff's injuries and damages.

142.    Plaintiff seeks all damages to which they may be justly entitled.

143.    As a direct and proximate result of the actions and inactions of the Defendants as set forth above, Plaintiff was exposed to Xarelto® and suffered the injuries and damages set forth hereinabove.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT III
## NEGLIGENCE

Comes now Plaintiff and for Count III of this Complaint alleges:

144.    Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

145.    At all times relevant and material hereto, Defendants owed a duty to Plaintiff of reasonable care and safety.

146.    Defendants owed a duty to the general public, and specifically to the Plaintiff, to not introduce a drug into the market, or continue a previous tender of a drug, including the Xarelto® at issue in this lawsuit, that was unreasonably dangerous for any person to use it and was capable of causing serious personal injuries such as those suffered by Plaintiff during foreseeable use.

147.    Defendants' duties included, but were not limited to, carefully and properly designing, testing, manufacturing, licensing, packaging, promoting, advertising, selling, and/or distributing Xarelto® into the stream of commerce, and providing warnings with regard to this drug.

27

148.    Defendants breached their duty of care and were negligent by, but not limited to, the following actions, misrepresentations, and omissions toward Plaintiff:

a.    Failing to exercise reasonable and ordinary care in that the drug Xarelto® was so unreasonably dangerous and defective in design that it never should have been on the market or taken by anyone;

b.    Failing to exercise reasonable and ordinary care in the design, research, development, manufacture, sale, testing and or distribution of the drug Xarelto®.

c.    Tendering into the market a drug which Defendants knew or should have known was so dangerous that it shouldn't have been taken by anyone.

d.    Violating its duty of care in design by tendering into the market a drug which it knew or should have known should not have been taken by anyone.

e.    Violating its duty of care in design in marketing by tendering into the market a drug which it knew or should have known should not have been taken by anyone.

f.    Violating its duty of care in design by placing an unsuitable product into the market for public consumption.

g.    Failing to use ordinary care in designing, testing, and manufacturing Xarelto® so as to avoid the high risk to users of unreasonable, dangerous side effects, some of which are fatal;

h.    Failing to accompany Xarelto® with adequate warnings that would alert doctors, consumers, and other users to the potential adverse side effects associated with the use of this drug and the nature, severity and duration of such adverse effects;

i.    Failing to conduct adequate pre-clinical testing and post-marketing surveillance to determine the safety and side effects of Xarelto®;

j.    Defendants were otherwise careless or negligent.

149.    The Xarelto® that injured Plaintiff was in substantially the same condition when Plaintiff ingested it as it was in when it left the control of Defendants.

150.    Xarelto®'s ability to cause serious personal injuries and damages such as those suffered by Plaintiff was not due to any voluntary action or contributory negligence of Plaintiff. Plaintiff consumed the Xarelto® as directed and without change in its form or substance.

28

151.    Although Defendants knew or should have known that Xarelto® caused unreasonably dangerous side effects which many users would be unable to remedy by any means, Defendants continued to market this drug to doctors when there were safer and less expensive alternatives available.

152.    In addition, Defendants had a legal duty to comply with the U.S. Food, Drug and Cosmetic Act, U.S. Code § 21 USC §301, et seq., and. regulations promulgated there under.

153.    Defendants negligently and carelessly violated the laws and regulations of the United States including, but not limited to the following: 21 CFR §330.10(a)(4)(v) (Labeling); 21 CFR § 369.10 (Labeling); 21 CFR §§ 201.56 and 201.57 (d), (e) and (f) (Labeling); 21 CFR 1.21 (a) (Labeling); 21 CFR 600.80 (Post-marketing Reporting of Adverse Experiences); 21 CFR §314. 50 (Post Marketing Reports of Adverse Drug Experiences), as well as regulations relating to the promotion of drugs for unlabeled uses. The violations of those and other statutes and regulations constitute negligence per se.

154.    Defendants owed a duty to the general public, and specifically to the Plaintiff, to exercise reasonable care in the design, study, development, manufacture, promotion; sale, marketing and distribution of their prescription medications, including the Xarelto® at issue in this lawsuit. Defendants failed to exercise reasonable care in the design of Xarelto® because as designed, Xarelto was capable of causing serious personal injuries such as those suffered by Plaintiff during foreseeable use.

155.    Defendants also failed to exercise reasonable care in the marketing of Xarelto® because they failed to warn, that as designed, Xarelto® was capable of causing serious personal injuries such as those suffered by Plaintiff during foreseeable use.

156.    Defendants breached their duty and were negligent in, but not limited to, the following actions, misrepresentations, and omissions toward Plaintiff:

29

a.  Failing to use due care in developing, testing, designing, and manufacturing Xarelto® so as to avoid the aforementioned risks to individuals when Xarelto® was being used for treatment;

b.  Failing to accompany their product with proper or adequate warnings, or labeling regarding adverse side effects and health risks associated with the use of Xarelto® and the comparative severity and duration of such adverse effects;

c.  In disseminating information to Plaintiff and Plaintiff's physicians that was negligently and materially inaccurate, misleading, false, and unreasonably dangerous to patients such as Plaintiff;

d.  Failing to accompany their products with proper or adequate rate of incidence or prevalence of irreversible bleeds;

e.  Failing to provide warnings or other information that accurately reflected the symptoms, scope, and severity of the side effects and health risks;

f.  Failing to conduct adequate pre-clinical and clinical testing and post- marketing surveillance to determine the safety of Xarelto®;

g.  Failing to warn Plaintiff, the medical and healthcare community, and consumers that the product's risk of harm was unreasonable and that there  were safer and effective alternative medications available to Plaintiff and other consumers;

h.  Failing to provide adequate training or information to medical care providers for appropriate use and handling of Xarelto® and patients taking Xarelto®;

i.  Failing to adequately test and/or warn about the use of Xarelto®, including, without limitations, the possible adverse side effects and health risks caused by the use of Xarelto®;

j.  Failing to design and/or manufacture a product that could be used safely due to the lack of a known reversal agent or antidote;

k.  In designing, manufacturing, and placing into the stream of commerce a product which was unreasonably dangerous for its reasonably foreseeable use, which Defendant knew or should have known could cause injury to Plaintiff;

l.  Failing to remove Xarelto® from the market when Defendants' knew or should have known of the likelihood of serious side effects and injury to its users;

m.  Failing to adequately warn users, consumers and physicians about the severity, scope and likelihood of bleeds and related dangerous conditions to individuals taking Xarelto®; and

n.  Representing to physicians, including but not limited to Plaintiff's prescribing physicians, that this drug was safe and effective for use.

30

157.    The Xarelto® that injured Plaintiff was in substantially the same condition when Plaintiff ingested it as it was in when it left the control of Defendants.

158.    Defendants' Xarelto®'s ability to cause serious personal injuries and damages, such as those suffered by Plaintiff, was not due to any voluntary action or contributory negligence of Plaintiff.  Plaintiff consumed the Xarelto® as directed and without change in its form or substance.

159.    Defendants' failure to exercise reasonable care in the design, dosing information, marketing, warnings, and/or manufacturing of Xarelto® was a proximate cause of Plaintiff's injuries and damages.

160.    Plaintiff seeks all damages to which they may be justly entitled.

161.    The Plaintiff's injuries and damages are severe and permanent, and will continue into the future. As a result, the Plaintiff seeks actual and punitive damages from the Defendants.

162.    As a direct and proximate result of the actions and inactions of the Defendants as set forth above, Plaintiff was exposed to Xarelto® and suffered the injuries and damages set forth hereinabove.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## **COUNT IV**
## **NEGLIGENCE- FAILURE TO WARN**

Comes now Plaintiff and for Count IV of this Complaint alleges:

163.    Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

164.     Defendants owed a duty to warn of any dangerous defects or side effects; a duty to assure their product did not cause users unreasonable and dangerous risks, reactions, and side effects; and a duty to provide adequate post market surveillance and warnings as it learned of Xarelto®'s substantial dangers.

165.     Xarelto® was defective due to inadequate post-marketing warnings and instruction because Defendants knew or should have known of the risk and danger of serious bodily harm and or death from the use of Xarelto®, but failed to provide an adequate warning to patients and prescribing physicians of the product, knowing the product could cause serious injury and/or death.

166.     Plaintiff was prescribed and used Xarelto® for its intended purpose.

167.     Plaintiff could not have known about the dangers and hazards presented by Xarelto®.

168.     The warnings that were given by the Defendants were not accurate, clear, complete, and/or were ambiguous.

169.     The warnings, or lack thereof, that were given by the Defendants failed to properly warn prescribing physicians of the risk of irreversible bleeding and other serious injuries and side effects, and failed to instruct prescribing physicians to test and monitor for the presence of the injuries for which Plaintiff and others had been placed at risk.

170.     The warnings that were given by the Defendants failed to properly warn Plaintiff and prescribing physicians of the prevalence of irreversible bleeds.

171.     The Plaintiff, individually and through his prescribing physicians, reasonably relied upon the skill, superior knowledge, and judgment of the Defendants.

172.     The Defendants had a continuing duty to warn the Plaintiff and prescribing physicians of the dangers associated with Xarelto®.  Had Plaintiff received adequate warnings regarding the risks of Xarelto®, he would not have used Xarelto®.

173.    Defendants breached their duty of reasonable care to Plaintiff in the following material respects:

    a.    Xarelto® was unaccompanied by proper warnings regarding all possible side effects associated with its use and the comparative severity, incidence, and duration of such adverse effects; and

    b.    Xarelto® was defective due to inadequate post-marketing warnings or instructions, because Defendants failed to provide adequate warnings to users or consumers and continued aggressively to promote Xarelto®, even after Defendants knew or should have known of the risks of injury from this drug; and

    c.    Xarelto® was unaccompanied by proper warnings regarding irreversible bleeding caused by Xarelto® and Defendants continued to aggressively promote Xarelto®, even after Defendants knew or should have known of the risk of irreversible bleeding from this drug; and

    d.    Defendants failed to warn that there were other drugs available that did not have the same risks as Xarelto®.

174.    Defendants knew or should have known that Xarelto® caused unreasonably dangerous risks and side effects of which the general public would not be aware.  Defendants nevertheless advertised, marketed, and promoted their product knowing there were safer products on the market.

175.    Defendants knew that Xarelto® was defective and unreasonably dangerous when it left the possession of the Defendants in that it contained warnings insufficient to alert patients and prescribing physicians of the dangerous risks and reactions associated with Xarelto®, including but not limited to the prevalence of irreversible bleeding, and other serious injuries and side effects despite the Defendant's knowledge of the increased risk of these injuries over other anticoagulation therapies available.

176.    Defendants' failure to exercise reasonable care in the design, dosing information, marketing, warnings, and/or manufacturing of Xarelto® was a proximate cause of Plaintiff's injuries and damages.

177.    Plaintiff seeks all damages to which they may be justly entitled.

178.     As a direct and proximate result of the actions and inactions of the Defendants as set forth above, Plaintiff was exposed to Xarelto® and suffered the injuries and damages set forth hereinabove.

179.     For the above reasons, the Defendants are strictly liable to Plaintiff without regard to proof of negligence or gross negligence.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

**COUNT V**
**NEGLIGENCE- NEGLIGENT DESIGN**

Comes now Plaintiff and for Count V of this Complaint alleges:

180.     Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

181.     Defendants designed, produced, manufactured and injected into the stream of commerce, in the regular course of its business, the pharmaceuticals drug Xarelto®, which Defendants knew would be used by Plaintiff and others.

182.     At the time Xarelto® was manufactured and sold to Plaintiff by Defendants, it was defective in design and unreasonably dangerous, subjecting users to risks of blood clots and irreversible bleeding which exceeded the benefits of the products, and for which other safer products were available.

183.     Alternatively, when Xarelto® was manufactured and sold to Plaintiff by Defendants, the product was defective in design and formulation, making use of the product more dangerous than other drugs for its intended use.

184.    The Xarelto® sold to Plaintiff reached him without substantial change.  Plaintiff was unaware of the dangerousness of the product until after its use.  Plaintiff ingested the Xarelto® without making any changes or alterations.

185.    In designing and testing Xarelto®, the Defendants failed to exercise the ordinary care that a careful and prudent drug manufacturer would exercise in the same or similar circumstances.

186.    As a direct and proximate result of the negligent design of Xarelto®, Plaintiff has been damaged.

187.    Defendants' conduct was done with conscious disregard for the safety of users of Xarelto®, including Plaintiff, justifying an award of punitive damages.

188.    Plaintiff seeks all damages to which they may be justly entitled.

189.    As a direct and proximate result of the actions and inactions of the Defendants as set forth above, Plaintiff was exposed to Xarelto® and suffered the injuries and damages set forth hereinabove.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

### COUNT VI
### Negligent Misrepresentation

Comes now Plaintiff and for Count VI of this Complaint alleges:

190.    Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

191.    Defendants knew, or should have known, that there were dangerous side effects resulting from the use of Xarelto®.

192.    Defendants knew or reasonably should have known that consumers such as Plaintiff would not have known about the increased risk of irreversible bleeds, among other things, associated with Xarelto®.

193.    Defendants, armed with the knowledge stated in the preceding paragraphs, proceeded with the design, production, manufacture, promotion, advertising, and sale of Xarelto® without adequate warning of the side effects and dangerous risks to the consuming public, including Plaintiff.

194.    Defendants negligently represented to Plaintiff the safety and effectiveness of Xarelto® and concealed material information, including adverse information regarding the safety and effectiveness of Xarelto®. The misrepresentations and/or material omissions made by or perpetuated by Defendants are as follows:

   a    Defendants failed to conduct sufficient testing which, if properly performed, would have shown that Xarelto® had serious side effects, and warn users of those risks; and/or

   b    Include adequate warnings with Xarelto® that would alert users to the potential risks and serious side effects of Xarelto®, as well as the limited benefits and the approved uses; and/or

   c    Warn Plaintiff that use of Xarelto® carried a risk of death or permanent injury from irreversible bleeding, and other serious side effects; and/or

   d    Advise the FDA, the health care industry, and the public about the adverse reports it had received regarding Xarelto®.

195.    Defendants made the misrepresentations and omissions with the intent that Plaintiff and the consuming public rely upon such information or the absence of such information in selection of Xarelto®.

196.    Plaintiff justifiably relied on and/or was induced by the misrepresentations and/or active concealment by Defendants and relied upon the absence of safety information, which Defendants suppressed, concealed, or failed to disclose, all to his detriment.

36

197.     As a direct and proximate result of the dangerous and defective condition of Xarelto®, Plaintiff was injured, and incurred economic damages in the form of medical and funeral expenses.

198.     Plaintiff is entitled to recover from Defendants for all damages caused by the defective product including, but not limited to, damages for pain, suffering, loss of the capacity to enjoy life, and lost past and future income and occurred expense.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT VII
## BREACH OF WARRANTY- BREACH OF EXPRESS WARRANTY

199.     Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

200.     Defendants researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold and/or otherwise released into the stream of commerce Xarelto®, in the course of same, directly advertised or marketed the product to the FDA, healthcare professionals and consumers, including Plaintiff, or persons responsible for consumer.

201.     Xarelto® materially failed to conform to those representations made by Defendants in package inserts, and otherwise, concerning the properties and effects of Xarelto®, respectively manufactured and/or distributed and sold by Defendants, and which Plaintiff purchased and ingested in direct or indirect reliance upon these express representations.   Such failures by Defendants constituted a material breach of express warranties made, directly or indirectly, to Plaintiff concerning Xarelto® sold to Plaintiff.

202.     Defendants breached these express warranties in that Xarelto® was unsafe in light of the risk of life-threatening side effects associated with its use, including irreversible bleeds 203. Plaintiff relied to his detriment on Defendants' express warranties.

204.     As a direct, foreseeable, and proximate result of Defendants' breaches of express warranties, Plaintiff suffered grievous bodily injury and consequent economic and other loss, as described above, when Plaintiff's physician, in reasonable reliance upon such express warranties, prescribed for Plaintiff the use of Xarelto®.  Plaintiff purchased and ingested Xarelto® as prescribed and instructed by Plaintiff's physician, leading to Plaintiff's injuries.

205.     As a direct and proximate result of Defendants' breach of express warranties, Plaintiff was exposed to Xarelto®, and Plaintiff suffered and continues to suffer from the injuries and damages as set forth in this Complaint.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT VIII
## BREACH OF WARRANTY- BREACH OF IMPLIED WARRANTY

206.     Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

207.     Defendants researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold and/or otherwise released into the stream of commerce Xarelto®, in the course of same, directly advertised or marketed the product to the FDA, healthcare professionals and consumers, including Plaintiff, or persons responsible for consumer.

208.   Defendants impliedly warranted their Xarelto®, which they manufactured and/or distributed and sold, and which Plaintiff purchased and ingested, to be of merchantable quality and fit for the common, ordinary, and intended uses for which the product was sold.

209.   Defendants breached their implied warranties of Xarelto® sold to Plaintiff because this product was not fit for its common, ordinary, and intended use.

210.   As a direct, foreseeable and proximate result of Defendants' breaches of implied warranties, Plaintiff suffered grievous bodily injury and consequential economic and other losses, as described above, when Plaintiff ingested Xarelto®, in reasonable reliance upon the implied warranties, leading to Plaintiff's injuries.

211.   The Plaintiff's injuries and damages are severe and permanent, and will continue into the future. As a result, the Plaintiff seeks actual and punitive damages from the Defendants.

212.   As a direct and proximate result of the actions and inactions of the Defendants as set forth above, Plaintiff was exposed to Xarelto® and suffered the injuries and damages set forth hereinabove.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT IX
## FRAUD

213.   Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

214.   Defendants, having undertaken the manufacturing, marketing, dispensing, distribution and promotion of Xarelto® described herein, owed a duty to provide accurate and complete information regarding these products.

215.     The Defendants knew or should have known, that Xarelto® was unreasonably dangerous and defective, and caused serious, at times fatal, irreversible bleeds.

216.     Despite their knowledge, the Defendants omitted material facts in the disclosures they made to the public, the medical community and to consumers, including the Plaintiff and prescribing physicians, concerning the use and safety of Xarelto®.

217.     The Defendants made untrue, deceptive, and/or misleading representations of material facts, and omitted and/or concealed material facts from the public, including the Plaintiff and prescribing physicians, concerning the use and safety of Xarelto®.

218.     The Defendants' practices relating to their promotion of Xarelto® created and/or reinforced a false impression as to its safety.

219.     The Defendants' practice of promoting Xarelto® placed and continues to place all consumers of Xarelto® at risk for serious injury resulting from its potentially lethal side effects.

220.     The Defendants' statements and omissions were made with the intent that the Plaintiff and his prescribing physician, would rely on them.

221.     The Plaintiff purchased and used Xarelto® for personal, family or household purposes and suffered ascertainable losses of money as a result of the Defendants' use or employment of the methods, acts, or practices.

222.     As a direct and proximate result of the Defendants' acts of fraud, the Plaintiff suffered irreparable injuries.

223.     Plaintiff endured substantial pain and suffering. As a result, the Plaintiff incurred significant expenses for medical care and will continue to be economically and emotionally harmed in the future.

224.     As a direct and proximate result of the actions and inactions of the Defendants as set forth above, Plaintiff was exposed to Xarelto® and suffered the injuries and damages set forth hereinabove.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT X:
## VIOLATION OF CONSUMER PROTECTION LAWS

225.     Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

226.     Plaintiff purchased and used Xarelto® for personal use and thereby suffered ascertainable losses as a result of Defendants' actions in violation of the Pennsylvania and Louisiana consumer protection laws.

227.     Unfair methods of competition or deceptive acts or practices that were proscribed by law, including the following:

a.     Representing that goods or services have characteristics, ingredients, uses benefits or quantities that they do not have;

b.     Advertising goods or services with the intent not to sell them as advertised; and

c.     Engaging in fraudulent or deceptive conduct that creates a likelihood of confusion or misunderstanding.

228.     Defendants violated consumer protection laws through their use of false and misleading misrepresentations or omissions of material fact relating to the safety of Xarelto®.

229.     Defendants uniformly communicated the purported benefits of Xarelto® while failing to disclose the serious and dangerous side-effects related to the use of Xarelto® and of the true state of Xarelto® regulatory status, its safety, its efficacy, and its usefulness. Defendants made these

representations to physicians, the medical community at large, and to patients and consumers such as Plaintiff in the marketing and advertising campaign described herein.

230.     Defendants' conduct in connection with Xarelto® was also impermissible and illegal in that it created a likelihood of confusion and misunderstanding, because Defendants misleadingly, falsely and or deceptively misrepresented and omitted numerous material facts regarding, among other things, the utility, benefits, costs, safety, efficacy and advantages of Xarelto®.

231.     As a result of these violations of consumer protection laws, Plaintiff incurred and will incur; serious physical injury, pain, suffering, loss of income, loss of opportunity, loss of family and social relationships, and medical, hospital and surgical expenses and other expense related to the diagnosis and treatment thereof, for which Defendants are liable.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT XI:
## PUNITIVE DAMAGES

232.     Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

233.     Plaintiff is entitled to punitive damages because Defendants' actions were reckless and without regard for the public's safety.  Defendants mislead both the medical community and the public at large, including Plaintiff and Plaintiff's physicians, by making false representation about and concealing pertinent information regarding Xarelto®.  Defendants downplayed, understated and disregarded its knowledge of the serious and permanent side effects associated with the use of Xarelto® despite information demonstrating the product was unreasonably dangerous.

234.    As a proximate result of Defendants' acts and omissions, Plaintiff suffered internal bleeding/hemorrhaging, all resulting from Plaintiff's ingestion of Xarelto®.

235.    Defendants' actions were performed willfully, intentionally, and with reckless disregard for the rights of Plaintiff and the public.

236.    Defendants continued to promote the safety of Xarelto®, while providing to consumers no warnings or insufficient warnings about the risk of irreversible bleeding associated with it, even after Defendants knew of that risk.

237.    Defendants' conduct was committed with knowing, conscious and deliberate disregard for the rights and safety of consumers, including the Plaintiff, thereby entitling the Plaintiffs to punitive damages in an amount appropriate to punish the Defendants and deter them from similar conduct in the future.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff demands judgment for damages against Defendant for all damages allowable by law against Defendants together with interest, costs and attorney's fees, including but not limited to those damages provided pursuant to applicable law, set forth below, and requests a trial by jury of all issues so triable, to wit:

a)    For judgment for damages sufficient to compensate for damages, including but not limited to past, present, and future economic expenditures in connection with the injuries sustained by Plaintiff as a result of ingesting Defendants' Xarelto®;

b)    Medical expenses due to the Plaintiff's injury may be recovered;

e)    Any and all loss of earnings of the Plaintiff;

43

f)      Punitive damages in an amount to be awarded as provided by law; and

i)      For all other just and proper relief.

## RELIANCE UPON DEMAND FOR JURY TRIAL

The Plaintiff hereby upon its previously filed demand for a trial by jury on all Counts and as to all issues.


Dated: April 2, 2018                          /s/ Kenneth A. Stern
                                             Kenneth A. Stern, P30722
                                             STERN LAW, PLLC
                                             Attorney for Plaintiff
                                             41850 West 11 Mile Road
                                             Novi, Michigan 48372-1857
                                             (248) 347-7315
                                             ken@sternlawonline.com