UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: XARELTO (RIVAROXABAN) | * | MDL 2592 |
| PRODUCTS LIABILITY LITIGATION | * | |
| | * | SECTION L |
| THIS DOCUMENT RELATES TO: | * | |
| | * | JUDGE ELDON E. FALLON |
| | * | MAGISTRATE JUDGE NORTH |
| | * | |
| *Harriet Ibanez, at al. v. Janssen, et al.* | * | |
| **Case No. 2:14-cv-02669** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO
DEFENDANTS' JOINT MOTIONS FOR PARTIAL SUMMARY JUDGMENT
ON THE GROUND THAT FEDERAL LAW PREEMPTS
PLAINTIFFS' CLAIM PURSUANT TO ORDER & REASONS OF APRIL 24, 2018**

## I.   INTRODUCTION

Plaintiffs respectfully submit this supplemental response in opposition to Defendants' Joint Motions for Partial Summary Judgment on the Ground that Federal Law Preempts Plaintiffs' Design Defect and Failure to Warn or Instruct Claims pursuant to this Court's Order & Reasons of April 24, 2018 (the "Order & Reasons").

The Court and the parties now have arrived at the culmination of a lengthy discovery dispute over the absence of evidence to support the Defendants' motions for summary judgment, the details of which are summarized in Your Honor's April 24th Order and Reasons. Defendants have long-maintained that the Food and Drug Administration ("FDA") both issued and authored "strikethrough" sections of proposed labeling relevant to Plaintiffs' PT and U.S. Data sub-group theories of liability, and propose to construe these sections as tantamount to the Agency's preemption rejection of such language. Defendants contend that the relevant language struck in these documents thus affords them the legally-required clear evidence to meet their burden of

establishing that it was, and would have been, impossible for them to meet both their federal and state law duties in order to satisfy Plaintiffs' preempted claims of inadequate instructions or warnings in the Xarelto label.

When Plaintiffs initially responded to the Defendants' motions for summary judgment, they included a Declaration of Neil D. Overholtz to support their contention under Fed.R.Civ.P. 56(d) that essential regulatory communications between Janssen and the FDA were not produced to the PSC, particularly documents from the primary database used by Janssen to store regulatory documents related to Xarelto (the Global Regulatory Affairs Information Link ("GRAIL") database) and encrypted email communications between Janssen and FDA related to Xarelto.[1]  In response to the Plaintiffs' opposition, the parties engaged in several meet and confers which resulted in the Defendants producing, for the first time in this litigation, documents identified as "Production 76."  This production of almost 6,000 new documents from five (5) custodial files, however, still was incomplete and excluded important communications between Janssen and the FDA relating to Xarelto, most notably a June 29, 2011 email exchange between Tyree Newman, Janssen's primary contact person for NDA 22406, and the FDA's Alison Blause.  These emails represent an essential component of the interaction between the FDA and Janssen regarding the PT Strikethrough document.

Consequently, in their April 6, 2018 Supplement to Plaintiffs' Memoranda in Opposition to Defendants' Joint Motions for Partial Summary Judgment on Preemption Grounds (Rec.Doc.

---

[1] *See* November 3, 2017 Declaration of Neil D. Overholtz offered in support of Plaintiffs' Memorandum in Opposition to Defendants' Joint Motion for Partial Summary Judgment on the Ground that Federal Law Preempts Plaintiffs' Failure to Warn or Instruct Claim, Dkt. No. 7948-2, along with Plaintiffs' Memorandum in Opposition to Defendants' Joint Motion for Partial Summary Judgment on the Ground that Federal Law Preempts Plaintiffs' Design-Defect Claim, Dkt. No. 7942-9 and attached as Exhibit 2 and 14 of each brief, respectively.

9123), the PSC requested additional discovery, including answers to Requests for Admissions Nos 1 & 2("RFA"), which provided:

> 1. Admit that Janssen never requested any type of meeting with the FDA about including information in Section 12.2 of the Xarelto label regarding use of Neoplastin prothrombin time (PT) to assess the anticoagulation status of a patient, before receipt of the June 2011 Strikethrough Document.
> 2. Admit that Janssen never requested any type of meeting with the FDA about including information in Section 12.2 of the Xarelto label regarding use of Neoplastin prothrombin time (PT), to assess the anticoagulation status of a patient after receipt of the June 2011 Strikethrough Document but before approval of NDA 202439 in November 2011.[2]

The Order & Reasons of the Court dated April 24, 2018 (R.D. 9211) which resolved the parties' dispute as to this discovery, denied much of Plaintiffs' requests for additional information, but did require Defendants to respond to RFA 1 & 2, with limitations related to time, etc. Thereafter, already having been obliged to provide more documents for this preemption record than had been willingly produced before, Defendants have admitted in response to RFA 1 & 2 that they did not request any follow-up meetings with the FDA regarding the PT language at issue. These admissions confirm the absence of proof Defendants need to meet their legal burden, a point highlighted by the FDA's hardly inflexible email that accompanied the Strikethrough document and offered that Janssen, "Please accept changes you agree to and for changes you do not, keep in track changes."[3]   Defendant's willing and unconditional acceptance of this Strikethrough at the very moment the FDA made clear that further consideration of the struck language was possible, is both telling and fatal to Defendants' preemption motions.  The record is clear that Janssen simply

---

[2] The Order & Reasons modified these RFAs to allow "1) Defendants are permitted to explain their response and 2) Defendants are only required to provide an answer up to today's date, namely April 24, 2018." Order & Reasons at 5.

[3] *See* Exhibit 4 Declaration of Neil D. Overholtz in Support of Plaintiffs' Supplement to Memoranda in Opposition to Defendants' Joint motions for Partial Summary Judgment on Preemption Grounds, *infra*.

chose not to proceed with any meaningful effort to press forward with label language that arguably would have satisfied Plaintiffs' state law claims herein.

Since Defendants do not provide clear evidence in this record that would have been impossible for them to change the Xarelto label to include any of the PT instructions or U.S. sub-group warnings consistent with federal law, they cannot establish it would have been impossible to secure FDA approval of the label changes at issue. They certainly cannot do so by the clear evidence standard which the jurisprudence has made a prerequisite for preemption.

## II.   <u>REGULATORY BACKGROUND</u>

In *Wyeth,* the United States Supreme Court held that drug companies, not the FDA, bear the responsibility for drafting adequate warnings in a drug label:

> [T]hrough many amendments to the FDCA and to FDA regulations, it has remained a central premise of federal drug regulation that the manufacturer bears responsibility for the content of its label at all times. It is charged both with crafting an adequate label and with ensuring that its warnings remain adequate as long as the drug is on the market.[4]

*Wyeth* also teaches that drug manufacturers of brand-name drugs like Xarelto are permitted to make changes, under the FDA's Changes Being Effected ("CBE") regulation and related agency guidance, to "add or strengthen a contraindication, warning, precaution, or adverse reaction" or "an instruction about dosage and administration that is intended to increase the safe use of the drug product" without prior approval from the FDA.[5]  Because Defendants were able to unilaterally

---

[4] *Wyeth v. Levine,* 555 U.S. 555, 570-71 (2009). This Court has abided by *Wyeth* in rejecting Defendants' previous efforts to dismiss Plaintiffs' claims based upon preemption. *See, e.g., In re Xarelto,* 2017 U.S. Dist. LEXIS 56629, at *10-11, *citing Wyeth,* 555 U.S. at 568; *In re Xarelto*, 2017 U.S. Dist. LEXIS 56630, at *9, *citing Wyeth,* 555 U.S. at 568; *In re Xarelto*, 2017 U.S. Dist. LEXIS 114338, at *14, *citing Wyeth,* 555 U.S. at 568

[5] *Wyeth,* 555 U.S. at 568.  *See also, In re Xarelto,* 2017 U.S. Dist. LEXIS 56629, at *10-11, *citing Wyeth,* 555 U.S. at 568; *In re Xarelto*, 2017 U.S. Dist. LEXIS 56630, at *9, *citing Wyeth,* 555 U.S. at 568; *In re Xarelto*, 2017 U.S. Dist. LEXIS 114338, at *14, *citing Wyeth,* 555 U.S. at 568.

revise their label and because "[i]mpossibility preemption is a demanding defense,"[6] their preemption argument is not well-founded. Only if the Defendants can prove with clear evidence that the FDA would have taken the necessary steps to rescind a CBE labeling change to add the instruction or warning required by state law, can they meet their demanding burden.[7] Thus, the Court may not grant summary judgment to Defendants on their preemption defense unless the Court determines that Defendants have provided clear evidence that the FDA would have rejected the changes required by state law. In assessing whether Defendants have met their burden, all reasonable inferences must be drawn in favor of Plaintiffs.[8] The Court must deny summary judgment unless it determines that any reasonable factfinder must conclude that it is "highly probable" that the FDA would have rejected the instruction or warning.[9] Further, the Defendants must use admissible evidence to meet their burden.[10]

Following this controlling precedent, this Court has recognized that drug "[m]anufacturers remain the master of their labels even after FDA approval" and that "clear pathways" exist "through which a brand-name drug manufacturer can make changes to their label without FDA approval."[11] The Court quoted and discussed *Wyeth*'s description of the CBE regulation:

> Among other things … 'changes being effected' (CBE) regulation provides that if a manufacturer is changing a label to 'add or strengthen a contraindication, warning, precaution, or adverse

---

[6] *Wyeth,* 555 U.S. at 573; *see also In re Xarelto,* 2017 U.S. Dist. LEXIS 56629, at *7, *citing Wyeth,* 555 U.S. at 573; *In re Xarelto,* 2017 U.S. Dist. LEXIS 56630, at *7, *citing Wyeth,* 555 U.S. at 573; *In re Xarelto,* 2017 U.S. Dist. LEXIS 114338, at *12, *citing Wyeth,* 555 U.S. at 568.

[7] *Wyeth,* 555 U.S. at 571. In *Pliva, Inc. v. Mensing,* 564 U.S. 604, 635 n.8 (2011), the Supreme Court confirmed that federal law preempts a state-law duty to warn only where there is "clear evidence" that the FDA would have "rescinded" a CBE labeling change to add the warning required by state law.

[8] *See In re Fosamax Alendronate Sodium Prods. Liab. Litig.,* 852 F.3d 268, 297 (3d Cir. 2017).

[9] *Id.* at 293, 295.

[10] *Wyeth,* 555 U.S. at 571.

[11] *In re Xarelto,* 2017 U.S. Dist. LEXIS 56629, at *10; *In re Xarelto,* 2017 U.S. Dist. LEXIS 56630, at *9; *In re Xarelto,* 2017 U.S. Dist. LEXIS 114338, at *14.

reaction' or to 'add or strengthen an instruction about dosage and administration that is intended to increase the safe use of the drug product,' it may make the labeling change upon filing its supplemental application with the FDA; it need not wait for FDA approval.[12]

Extending this reasoning even further, this Court recognized that Defendants must go the extra yard to "press" their position, if resistance is encountered to prove the demanding standard that is required to establish a clear evidence preemption defense.[13] This reasoning was demonstrated in when the Court rejected similar arguments made in Defendants' summary judgment motions in *Boudreaux, Orr,* and *Mingo*:

> To prove that the FDA would reject a label update, **Defendants must press their position with the FDA**; it is not enough that the FDA believed the label change was false or misleading or that the change was not necessary. **There must be clear evidence that the FDA would rescind Defendants' change to the label.**[14]

---

[12] *In re Xarelto,* 2017 U.S. Dist. LEXIS 56629, at \*10-11, *quoting Wyeth,* 555 U.S. at 568, *citing* 21 C.F.R. §§ 314.70(c)(6)(iii)(A), (C); *In re Xarelto,* 2017 U.S. Dist. LEXIS 56630, at \*9, *quoting Wyeth,* 555 U.S. at 568, *citing* 21 C.F.R. §§ 314.70(c)(6)(iii)(A), (C); *In re Xarelto,* 2017 U.S. Dist. LEXIS 114338, at \*14, *quoting Wyeth,* 555 U.S. at 568, *citing* 21 C.F.R. §§ 314.70(c)(6)(iii)(A), (C).

[13] Because it is the manufacturer's responsibility to craft an adequate label, the manufacturer's obligation to press its position before the agency and to have that position rejected is paramount for the drug manufacturer to make out a preemption defense. This is a rarity. Indeed, there is little to no evidence that the FDA would subsequently bring an enforcement action to rescind a stronger label warning demanded by a manufacturer. *See* David A. Kessler & David C. Vladeck, *A Critical Examination of the FDA's Efforts to Preempt Failure-to-Warn Claims,* 96 GEO. L.J. 461, 479–80 (2008) ("This result may appear harsh, but in reality, there are few instances in which the company (which is trying to sell its drug) wants a stronger label than the FDA and the FDA (which is trying to safeguard public health) resists the change. The FDA does not identify such a case. And if such a case arose, the company would have an out: the FDCA gives it the authority to change its label unilaterally to add the warning addressed in the litigation, so long as the amended label is not false and misleading, and then file a Supplemental New Drug Application seeking the FDA's after-the-fact approval. Nothing in the FDA Amendments Act withdraws that authority. In such an instance, it is likely that the FDA and the company would strive to avoid an impasse over the labeling. To be sure, the FDA would have the authority to reject such a labeling change, but we are not aware of cases in which the FDA has refused any change to a label when pressed for a stronger warning by a manufacturer. And, as best as we can tell, the FDA has never brought a misbranding claim against a company in those circumstances. Ironically, if it did, the agency would be back to where it started, because the ultimate decision-maker in a misbranding action would be the jury and not the FDA."). *See also* 21 U.S.C. § 332(b); 21 U.S.C. § 334(b); 21 U.S.C. § 352.

[14] *In re Xarelto,* 2017 U.S. Dist. LEXIS 56630, at \*4 (emphasis added).

. . .

> **Clear evidence requires more than a prior refusal to add similar language. … Courts have found that the FDA and defendants are required to give more than 'passing attention' to the issue** – there must be evidence the FDA intended to or would *prohibit* a defendant from strengthening [a] warning.[15]

This same reasoning should be employed again and the same result should apply as well to reject Defendants' current motions for summary judgment.

To further explicate Plaintiffs' position, we present the Declaration of Neil D. Overholtz in Support of Plaintiff's' Supplement to Memoranda in Opposition to Defendants' Joint Motions for Partial Summary Judgment on Preemption Grounds (attached hereto as Exhibit "1"[filed under seal]). This Declaration, which is incorporated by reference, sets out at length the Defendants' inability to present evidence to support their demanding burden of proving impossibility preemption.  The following merely highlights the flaws in Defendants' motions.

## III. DEFENDANTS' EVIDENCE DOES NOT SUPPORT IMPOSSIBILITY PREEMPTION

### A. Defendants failed to present "clear evidence" that the FDA would have rejected an instruction about Neoplastin PT testing.

Defendants have presented no evidence to show that any instruction to conduct Neoplastin PT testing to identify Xarelto users with atrial fibrillation at a high risk of bleeding was ever proffered to the FDA for inclusion in the Xarelto label. Because Defendants never tendered such an instruction to the FDA, there is no evidence – let alone clear evidence – that the FDA would have rejected its inclusion.

---

[15] *In re Xarelto,* 2017 U.S. Dist. LEXIS 56629, at *11-12, *citing Wyeth,* 555 U.S. at 572 (emphasis added and in original); *In re Xarelto,* 2017 U.S. Dist. LEXIS 56630, at *11-12, *citing Wyeth,* 555 U.S. at 572 (emphasis added and in original); *In re Xarelto,* 2017 U.S. Dist. LEXIS 114338, at *16-17, *citing Wyeth,* 555 U.S. at 572 (emphasis added and in original).

Following Defendants' November 3, 2017 requests, and after meeting and conferring on several occasions, Defendant Janssen produced certain documents saved to the IND/NDA file from GRAIL, the primary database Defendant Janssen used to store regulatory communications and files related to Xarelto, and Production 76, which purportedly included "encrypted email messages received from or sent to the FDA relating to Xarelto from Lori Birkenberger, Sanjay Jalota, Andrea Kollath, Purve Patel, and Alla Rhoge." Defendants also produced documents that contained updates to the IND/NDA production, as Production 77. Overholtz Decl. ¶9. Plaintiffs thoroughly reviewed the GRAIL database and Production 76 to determine whether gaps existed. As described in the April 6, 2018 Declaration, Plaintiffs' investigation revealed that the production contained significant gaps, including a lack of emails sent or received by either Marcus Cato, the FDA's Regulatory Health Project Manager for the Hematology Division, or Tyree Newman, the FDA's Regulatory Health Project Manager for the Hematology and Oncology divisions responsible for the initial orthopedic indication labeling. The PSC also identified several missing communications from the FDA. *Id.,* ¶10.

After much legal wrangling, the Defendants were ordered to produce additional discovery. Defendants subsequently provided responses to Plaintiffs' Requests for Admission and made Productions 77 and 78, which consisted of a supplement to the IND/NDA documents and the LRC and LWG SharePoint documents. *Id.,* ¶15.

Plaintiff's' extensive review and detailed investigation into Defendants' productions have revealed that Defendants have not produced any evidence that would support their Motion for Summary Judgment. Nothing in any of Defendants' productions, since filing their Motion for Summary Judgment, supports Defendants' argument of "impossibility"—that it was impossible to

change the Xarelto label to add proper instructions regarding the use of prothrombin testing ("PT"). *Id.,* ¶17.

Instead, Defendant Janssen's productions indicate that after Janssen received the June "strikethrough" documents, it took zero action to communicate with the FDA regarding whether those instructions and warnings should be included on the label.  *Id.,* ¶18.  There is no evidence that Defendants had, or requested, a meeting with the FDA after the June strikethrough.  *Id.,* ¶19. There is no evidence that Defendants had any joint meetings to discuss or consider the strikethrough changes. *Id.,* ¶21.  The evidence obtained from the PSC's exhaustive review of Defendants productions indicates no effort on the part of Defendants to strengthen or add warnings or instructions to the label.  On the contrary, the PSC's review of documents from the GRAIL database confirms that the FDA had in fact given an open invitation to Janssen to make changes, which Janssen declined.  *Id.,* ¶22.

In particular, the transmission of draft labels between the FDA and Defendant Janssen reflected a joint effort on behalf of both the FDA and the Defendants to reach a consensus on the appropriate language.   In the email transmitting the June 3, 2011 redline, Tyree Newman from the FDA explicitly invited Andrea Kollath from Janssen to identify any changes that Janssen disagreed with—including the stricken language at issue—but Janssen declined.  *Id.*, ¶23.

> Good morning Andrea, please see the attached redlined version of the label regarding NDA 22406 for your review and comments. ==Please accept changes you agree to and for changes you do not, keep in track changes.==

Because the FDA invited the possibility of further negotiation over the Strikethrough document, the Defendants' preemption argument is unfounded.  Any further contention to suggest that they pressed back by seeking to include information in Section 12 of the label, rather than the

warning section (Section 5), is demonstrably false.  *Id.,* ¶¶24-28 (Defendants questioned whether they should accept the strikethrough language in Section 12 or alter it to only address INR, not PT).  In the end, the PSC's investigation revealed that, in fact, Defendants did not want *any* PT or monitoring language in the label at all.  *Id.,* ¶29. There is a plethora of evidence which confirms that the Defendants always wanted to avoid any language in their label associated with monitoring, so that the unverified Strikethrough by the FDA gave them cover to camouflage their real intent, which was never to include the PT instruction in the first instance.  *Id.,* ¶¶30 − 34 (citing April 30, 2006 Mueck email ("avoid any kind of analogies to warfarin!"); June 15, 2010 Nauman Shah email ("we do not want to encourage use of any measurements for rivaroxaban[.]"); Todd Moore June 14, 2011 email ("Not too worried about this one . . . After all we take the position that we do not intend to monitor this drug").

**B. Defendants failed to present "clear evidence" that the FDA would have rejected a warning about the U.S. subgroup data from ROCKET AF.**

There is no clear evidence that the FDA would have rejected the inclusion of U.S. data in the Xarelto label. To the contrary, there is evidence that the FDA might have approved inclusion of the data from the start.

Plaintiff's' extensive review and detailed investigation into Defendants' productions have revealed that Defendants have not produced any evidence that would support their Motion for Summary Judgment.  Nothing in any of Defendants' productions, since filing their Motion for Summary Judgment, supports Defendants' argument of "impossibility"—that it was impossible to change the Xarelto label to include accurate data demonstrating the increased risk of bleeding compared to Warfarin in U.S. atrial fibrillation ("A-Fib") patients in the ROCKET trial.  *Id.,* ¶17. Specifically, there is no evidence that Defendants had, or requested, a meeting with the FDA after the October strikethrough.  *Id.,* ¶20.

Accordingly, Defendants' productions to date do not contain sufficient material to support Defendants' argument that federal law preempts Plaintiffs' failure to warn or instruct and design defect claims. *Id.,* ¶36.

## IV.   CONCLUSION

Defendants have failed to meet their burden in seeking dismissal of Plaintiffs' failure to warn and design defect claims based on preemption.  For all the above reasons, and those set forth in Plaintiffs' prior submissions on the subject, Defendants' motions should be denied in their entirety.

Dated: May 23, 2018

Respectfully submitted,

*/s/ Leonard A. Davis*
Leonard A. Davis, Esq. (Bar No. 14190)
*HERMAN, HERMAN & KATZ, LLC*
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Email: ldavis@hhklawfirm.com

Gerald E. Meunier (Bar No. 9471)
*GAINSBURGH BENJAMIN DAVID MEUNIER & WARSHAUER, LLC*
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
Email: gmeunier@gainsben.com

*Plaintiffs' Liaison Counsel*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on May 23, 2018, the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs and Defendants by operation of the court's electronic filing system and served on all other plaintiff counsel via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre- Trial Order No. 17.

*/s/ Leonard A. Davis*
**LEONARD A. DAVIS**