UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE ELDON E. FALLON |
| Harriet Ibanez, et al. v. Janssen Research & Development, LLC f/k/a Johnson & Johnson Pharmaceutical Research & Development, LLC, et al. Case No. 2:14-cv-02669 | MAGISTRATE NORTH |

### DEFENDANTS' REPLY IN SUPPORT OF THEIR JOINT MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)

Defendants file this reply at Judge Fallon's direction, pursuant to the May 25, 2018 chambers conference.

This Court's preemption rulings easily meet the standard for interlocutory review under § 1292(b).  Defendants' preemption motions resolve not just all of the theories in *this case*, but also all of the theories that the bellwether-trial plaintiffs have pressed and that the Philadelphia plaintiffs (whose trial lawyers are MDL PSC members) say are their key theories.  Moreover, the Fifth Circuit's guidance on preemption, a broad legal defense, would apply to theories Plaintiffs have not yet asserted.  Nor is there any serious dispute that there is substantial ground for difference of opinion on preemption—this Court has itself recognized the deep "divide" among courts on "FDA preemption" of state tort claims.  Doc. 7110, at 7.

The nature of this litigation—an MDL of thousands of cases asserting claims against a medicine that FDA has repeatedly approved as safe and effective—compels certification.  Congress enacted § 1292(b) "to give the appellate machinery . . . a considerable flexibility . . . so that within reasonable limits disadvantages of piecemeal *and final judgment* appeals might both be

1

avoided." *Martin v. Halliburton*, 618 F.3d 476, 488 (5th Cir. 2010) (quoting *Hadjipateras v. Pacifica, S.A.*, 290 F.2d 697, 703 (5th Cir. 1961) (emphasis added) (omissions in original). In other words, § 1292(b) is designed to avoid situations where "orderly administration is frustrated by the necessity of a waste of precious judicial time while the case grinds through to a final judgment as the sole medium through which to test the correctness of some isolated identifiable point of . . . law . . . upon which in a realistic way the whole case or defense will turn." *Hadjipateras*, 290 F.2d at 703; *accord* WRIGHT & MILLER § 3929. The Court should certify its preemption order for interlocutory appeal under § 1292(b).

**I.     The Court's preemption rulings will resolve a "controlling question of law."**

    **A.     The Court's preemption rulings involve a question of law that could dispose of this case and provide guidance for this MDL as a whole.**

Plaintiffs argue that any preemption ruling would not resolve a "controlling question of law" because it would "address only some, not all, of the theories of liability being presented in both *Ibanez* and the MDL at large." Pls.' Opp. at 8–9. Plaintiffs' proposed rule is flawed on several levels.[1]

*First*, Defendants' preemption motions address all liability theories that Plaintiffs have pressed up to this point in this MDL, including in the three bellwether trials. On failure to warn, Defendants' motion addresses Plaintiffs' theories about (a) Neoplastin PT testing, (b) the addition of U.S. subgroup data from the ROCKET AF clinical trial, and (c) the INRatio device recall. And for design defect, Defendants' motion addresses Plaintiffs' theories about (a) an anti-Factor Xa assay and (b) a reversal agent. Indeed, those are the very theories that Plaintiffs have pressed in

---

[1] Plaintiffs cite this Court's decision in *Seneca Resources Corp. v. Superior Diving Co.*, No. 05-250, 2006 WL 2568053 (E.D. La. Sept. 5, 2006), as holding that partial summary judgment rulings do not satisfy § 1292(b). Pls.' Opp. at 8 n.24. But in denying certification, that case did not mention—much less rely on—the fact that it involved a partial summary judgment motion. Regardless, the Fifth Circuit has accepted § 1292(b) review of partial summary judgment orders. *See, e.g.*, *Tanks v. Lockheed Martin Corp.*, 417 F.3d 456, 461–62 (5th Cir. 2005).

*this* case (*see* Doc. 7962, at 5–7; Doc. 7954, at 2–3), and they have identified no other theory they intend to pursue here. The fact that the Fifth Circuit's ruling could resolve this case is itself enough to satisfy § 1292(b). *See Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 23–25 (2d Cir. 1990) (holding that order denying motions to dismiss involved controlling questions, because reversal would "terminate[]" that action even if it did not affect "a wide range of pending cases").

But contrary to Plaintiffs' unsupported assertions, the Fifth Circuit's guidance would affect all the remaining cases in this litigation. For example, if the Fifth Circuit holds that adverse event reports about a risk already known and disclosed at the time of initial FDA approval—here, bleeding—do not satisfy the regulatory standard for "newly acquired information," that would foreclose numerous variations of Plaintiffs' theories in future cases. Its decision on the preemptive effect of FDA's strikethrough of PT and U.S.-subgroup data also would likely resolve the preemptive effect of another strikethrough regarding "triple therapy"—a theory the plaintiffs in Philadelphia state court ("PCCP") advanced in the second bellwether trial there (*Russell*). The Fifth Circuit's guidance on whether a manufacturer can use the CBE regulation to change the label's Highlights section to add a monitoring recommendation will shed light on whether a manufacturer can unilaterally change an approved dosing recommendation. So too for Plaintiffs' design-defect claims: a Fifth Circuit ruling that federal law preempts "pre-approval" design-defect claims would resolve *all* of Plaintiffs' design-defect claims, including that Xarelto should have been designed at a lower dose, as has been asserted in the next scheduled PCCP trial (*Cooney*). In other words, any ruling from the Fifth Circuit would have "precedential value for a large number of cases." *In re Delta Produce*, No. SA-12-MC-1164-DAE, 2013 WL 3305537, at *2 (W.D. Tex. June 28, 2013).

*Second*, Defendants' motions address not only the liability theories that the MDL plaintiffs have pressed but also those that the PCCP plaintiffs acknowledge are at the heart of this litigation

3

going forward. The PCCP PSC, which is led by a firm represented on the MDL PSC, recently told Judge New that the only cases he should set for trial in 2019 should involve the U.S.-subgroup theory because "the majority of the Pennsylvania docket" involves plaintiffs "whose prescription(s) of Xarelto pre-date the addition of the United States subgroup bleeding data" to Xarelto's label in September 2015. *See* Pls.' June 5, 2018 PCCP Filing, (Exh. A), at 3. The MDL docket is not materially different. Guidance from the Fifth Circuit will thus directly address the litigation's most prevalent theory.

*Third*, and in any event, even if the pending motions would resolve only some of Plaintiffs' legal theories, that does not preclude interlocutory review. "Review under § 1292(b) is available where decision on an issue would affect the scope of the evidence in a complex case, *even short of requiring complete dismissal*." *Garner v. Wolfinbarger*, 430 F.2d 1093, 1097 (5th Cir. 1970) (emphasis added); *see also Klinghoffer*, 921 F.2d at 24–25 (holding that "a 'controlling question of law' under section 1292(b) need not affect a wide range of pending cases").[2]

\* \* \*

Plaintiffs' opposition on this score is yet another attempt to make this litigation such a moving target that adjudication of the legal issues with any degree of finality is impossible. In fact, Plaintiffs now concede—after generic discovery, after expert reports, and after dispositive motions—that they will continue to morph their liability theories "depending on the circumstance presented by each case." Pls.' Opp. at 8. But the fact that different plaintiffs who face a preempted theory "may present other" claims (*id.*) is no reason to deny an immediate appeal that will resolve a "controlling question of law" and "materially advance the ultimate termination of the litigation"

---

[2] Because appellate review of threshold legal issues is such an important (and sometimes elusive) consideration in an MDL, Congress is currently considering legislation that would allow for immediate appeal of legal issues like this one. *See* Fairness in Class Action Litigation and Furthering Asbestos Claim Transparency Act of 2017, H.R. 985, 115th Cong., § 105 (2017), *available at* https://www.congress.gov/bill/115-congress/house-bill/985.

because it could foreclose Plaintiffs' *current* claims.  The fact that this is a litigation in search of a theory should not—and does not—insulate these legal questions from interlocutory review.

  **B.** **Preemption is "a controlling question of law" appropriate for interlocutory appeal.**

  Although Plaintiffs argue that certification is improper because preemption is "based on both law and fact" (*id.* at 14–21), the Fifth Circuit has held just the opposite—*i.e.*, that "[w]hether federal law preempts [a plaintiff's] claims certainly falls within the ambit of 28 U.S.C. § 1292(b)." *Spong v. Fid. Nat'l Prop. & Cas. Ins. Co.*, 787 F.3d 296, 304 (5th Cir. 2015).  That holding is unsurprising—the Fifth Circuit also has recognized that "[w]hether a state statute or common law cause of action is preempted by federal law is a question of law." *Ezell v. Kan. City S. Ry. Co.*, 866 F.3d 294, 298 (5th Cir. 2017).  This Court has agreed (*see* Doc. 6254, at 5), as does the U.S. Solicitor General (*see* Doc. 9778-1, at 12), although the Third Circuit has held otherwise. *See In re Fosamax (Alendronate Sodium) Prod. Liab. Litig.*, 852 F.3d 268, 286–94 (3d Cir. 2017) (holding that clear-evidence preemption is a fact question), *pet'n for cert. pending*, No. 17-290 (U.S.).

  To be sure, Defendants' preemption motions require the Court to consider record evidence, but that in no way precludes an interlocutory appeal.  This Court has rejected the argument that "interlocutory appeals can never extend to the application of a legal standard to a set of facts" because "[a] decision applying a legal standard to a set of facts may embody sufficient 'novelty and importance' to warrant interlocutory appeal." *Harch Hyperbarics, Inc. v. Martinucci*, No. 09-7467, 2010 WL 4665923, at *3 & n.1 (E.D. La. Nov. 9, 2010) (Fallon, J.).  That is consistent with Fifth Circuit precedent.  In *Martin v. Halliburton*, 618 F.3d 476, 488 (5th Cir. 2010), the Fifth Circuit recognized that the need to consider record evidence to resolve a preemption defense does not foreclose § 1292(b) review; instead, "immunity and preemption defenses [often] satisfy the terms for certification under § 1292(b)."  The court went on to explain that district courts should

5

consider "freely certifying orders" denying "immunity and preemption defenses" once the "record has been developed adequately so that an informed decision can be made about the contours of these defenses." *Id.* So, the fact that preemption may turn on record evidence does not bring that question outside the "ambit" of § 1292(b). *Spong*, 787 F.3d at 304.

## II.     The Court's preemption rulings involve questions "as to which there is substantial ground for difference of opinion."

This Court well understands that there is "a substantial ground for difference of opinion" on the preemption issues presented here:

- Before the *Mingo* trial, the Court stated that it "is well aware of the divide among federal and state courts on the issue of FDA preemption." Doc. 7110, at 7.

- Before the *Boudreaux* and *Orr* trials, the Court noted that preemption "of claims against brand-name drug manufacturers is not as clear" as against generic manufacturers, (Doc. 6197, at 5), and later observed that "neither Congress nor the Supreme Court has spoken directly on [the] issue" of whether *Mutual Pharmaceutical Co. v. Bartlett*, 570 U.S. 472 (2013), and *PLIVA, Inc. v. Mensing*, 564 U.S. 604 (2011), apply to brand-name manufacturers. Doc. 7110, at 9.

- The Court noted that what is required to show clear evidence is "not . . . altogether clear." Doc. 6197, at 7–8; Doc. 7110, at 10.

- The Court has acknowledged that its preemption rulings were based on how it "s[aw] the law developing." *Boudreaux* Trial Tr. (Exh. B) at 1526–27.

That is enough for § 1292(b). This Court's own pronouncements show that "FDA preemption" meets that test. All of Plaintiffs' attempts to suggest otherwise are wrong.

### A.     There is substantial ground for difference of opinion because federal and state courts outside this litigation have diverged in their application of preemption.

Plaintiffs assert that there is no difference of opinion on preemption because this Court and the Xarelto PCCP court both denied Defendants' preemption motions. *See* Pls.' Opp. at 13. The relevant focus is not so narrow, with different courts reaching different conclusions on identical facts. Instead, a question presents "substantial ground for difference of opinion" if "reasonable jurists can . . . debate" the issue, *Castellanos-Contreras v. Holder*, 622 F.3d 393, 399 (5th Cir.

6

2010) (en banc), and other courts have applied preemption to prescription medicine manufacturers differently. For example, although this Court has held that federal law does not preempt pre-approval design-defect claims (*see* Docs. 6196, 7110), other courts have disagreed.[3] Relatedly, this Court found it unclear whether the Supreme Court's decisions in *Bartlett* and *Mensing* even apply to brand-name pharmaceutical companies (*see* Doc. 6196, at 5), yet other courts have held that "*Levine*, *Mensing*, and *Bartlett* . . . together stat[e] the same test for impossibility preemption." *Yates v. Ortho-McNeil-Janssen*, 808 F.3d 281, 296–97 (6th Cir. 2015).[4] And although this Court has held that a manufacturer can show clear evidence only if it presses its position with FDA (*see* Docs. 6196, 6197, 7110), other courts have held differently. *See, e.g.*, *Cerveny v. Aventis, Inc.*, 855 F.3d 1091, 1103, 1105 (10th Cir. 2017).[5] Indeed, Plaintiffs concede that a substantial ground for difference of opinion exists as to whether federal law preempts their design-defect claim. *See* Pls.' Opp. at 20 (conceding that some "federal . . . courts have found that pre-approval design-defect claims are preempted, while others have not").

Plaintiffs similarly oversimplify when they suggest that certification is improper because all agree that *Levine* is "the highest governing case authority on preemption in the context of claims against the manufacturers of brand-name drugs" (Pls.' Opp. at 12–13), but that is not the standard. Instead, § 1292(b) is satisfied if there is a "divergent *application* of a legal standard," so long as "courts have substantially differed in applying" it. *Harch Hyperbarics*, 2010 WL 4665923, at *3 (emphasis added). *Levine* may be the standard, but as this Court has recognized, federal and state courts have clearly divided on its application. *See* Doc. 7110, at 7.

---

[3] *See* Doc. 9778-1, at 15–16.

[4] *See id.* at 14–15.

[5] *See id.* at 12–13.

7

Defendants' position is the same as this Court's view, as explained in *In re Chinese Manufactured Drywall Products Liability Litigation*, MDL No. 2047, 2012 WL 4928869, at *6–7 (E.D. La. Oct. 6, 2012). There, this Court considered whether it could properly exercise specific personal jurisdiction over several foreign defendants under the stream-of-commerce doctrine. 894 F. Supp. 2d 819, 842–48 (E.D. La. 2012). The Court applied Fifth Circuit law, which had "unequivocally declared its adherence" to a "less stringent 'stream-of-commerce' approach." *Id.* at 849. The defendants then moved to certify that order for interlocutory appeal. 2012 WL 4928869, at *6–7. In resisting certification, the plaintiffs argued that "the Court's interpretation of the relevant precedents was correct and that no substantial ground for difference of opinion exists on the question of the standard of law in the Fifth Circuit to be applied to the exercise of personal jurisdiction over a foreign defendant." *Id.* at *6. This Court disagreed and certified the question, finding that the defendants' underlying "position [was] not insubstantial," notwithstanding that the Court had "considered and addressed" its arguments. *Id.* So too here. This case is no different.

**B.     There is substantial ground for difference of opinion as to whether adverse event reports about risks disclosed to FDA are newly acquired information.**

Plaintiffs strive mightily to show that there is no ground for disagreement about whether adverse event reports qualify as newly acquired information. *See id.* at 14–21. But Plaintiffs do not dispute that such reports are purely anecdotal or that FDA and the Supreme Court have both cautioned against placing undue reliance on them. *See* Doc. 9778-1, at 9–11. And the decisions in *Utts v. Bristol-Myers Squibb Co.* did not have "more to do with drug-specific information . . . than with legal principle." Pls.' Opp. at 16–18. In *Utts*, the plaintiffs alleged that the label for Eliquis (a NOAC, like Xarelto) should have advised doctors to monitor patients purportedly to determine their bleeding risk. *Utts II*, 251 F. Supp. 3d 644, 663 (S.D.N.Y. 2017). This monitoring theory, which is akin to Plaintiffs' PT theory here, was preempted because plaintiffs had identified

8

no newly acquired information post-approval. *See id.* at 663–72. That is precisely the question here. The *Utts* court also considered whether adverse event reports about bleeding are newly acquired information and concluded differently. It reasoned that FDA regulations prohibit a CBE label change based on reports that do not "show[] a greater severity or frequency of bleeding events or deaths than previously disclosed in [previous] submissions to the FDA." *Id.* at 665–66. The court also rejected as insufficient under the regulations the plaintiffs' contention that "[b]efore and after marketing Eliquis, Defendants became aware of many reports of serious hemorrhaging in users of its drugs, both as reported to the FDA and to it directly." *Utts I*, 226 F. Supp. 3d 166, 185 (S.D.N.Y. 2016). As the court explained, as a legal matter, even the most serious adverse events are not "newly acquired information" unless they "reveal[] risks of a 'different type' or 'greater severity or frequency' than the information revealed to the FDA at the time of approval." *Id.* In short, the *Utts* court reached a different preemption result than the Court here, not because the "facts" were different, but because it answered the relevant legal questions differently.

### C. There is substantial ground for difference of opinion about the application of *Levine*'s clear-evidence standard.

There is substantial ground for difference of opinion about what constitutes clear evidence and how that standard applies. For example, courts disagree on what a manufacturer must do and what level of FDA action satisfies *Levine*'s clear-evidence standard. This Court held that a manufacturer must "press [its] position" with FDA before preemption bars a failure-to-warn claim. Doc. 6197, at 2–3. But other courts have reached the opposite conclusion. The Tenth Circuit, for example, held that FDA's rejection of a *third-party citizen's petition*—not a manufacturer's labeling proposal—was not just "clear evidence," but a "smoking gun" sufficient to preempt the plaintiffs' claims. *See Cerveny*, 855 F.3d at 1105; *see also* Doc. 9778-1, at 12–13. And the Solicitor

9

General recently urged the Supreme Court to grant certiorari in a pharmaceutical preemption case, arguing that the Third Circuit had misapplied the "clear evidence" standard.[6]

### D. There is substantial ground for difference of opinion as to whether a manufacturer can use the CBE regulation to change the Highlights section of labeling.

There is substantial ground for difference of opinion as to whether federal law preempts Plaintiffs' PT claim under the regulations governing changes to the Highlights section of a medicine's label and recommendations for off-label uses because "[v]ery few United States Courts, including in this circuit," have addressed them. *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, MDL No. 2047, Doc. 20890, at 12 (E.D. La. Aug. 4, 2017); Doc. 9778-1, at 13 n.7.[7]

### III. The Court's preemption rulings will "materially advance the ultimate termination of the litigation."

Finally, as Defendants explained, certification will materially advance the termination of this litigation because it could "eliminate the need for trial, eliminate complex issues, [and] streamline issues to simplify discovery." *In re Stewart*, No. 09-3232, 2009 WL 2461675, at *2 (E.D. La. Aug. 7, 2009). That is especially true here. Three bellwether trials have resulted in unanimous defense verdicts, and the Fifth Circuit should provide needed guidance as to whether federal preemption can dispose of many or all of the claims in this MDL without having to try thousands of cases. That is the very purpose of § 1292(b). *See Hadjipateras*, 290 F.2d at 703.

### CONCLUSION

Accordingly, if the Court denies Defendants' pending motions for summary judgment, the Court should certify its order for an immediate interlocutory appeal under 28 U.S.C. § 1292(b).

---

[6] Br. for U.S. as Amicus Curiae, *Merck Sharp & Dohme Corp. v. Albrecht*, No. 17-290 (U.S., filed May 23, 2018), *available at*, https://www.supremecourt.gov/DocketPDF/17/17-290/48645/20180530133707477_000000001.pdf.

[7] As noted, Plaintiffs concede that there is a substantial ground for difference of opinion exists as to whether federal law preempts their design-defect claim.

10

Respectfully submitted,

| | |
|---|---|
| DRINKER BIDDLE & REATH LLP | ARNOLD & PORTER LLP |
| | |
| By: /s/ *Susan M. Sharko* | By: /s/ *William Hoffman* |
| Susan M. Sharko | William Hoffman |
| DRINKER BIDDLE & REATH LLP | ARNOLD & PORTER LLP |
| 600 Campus Drive | 601 Massachusetts Ave., NW |
| Florham Park, NJ 07932-1047 | Washington, D.C. 20001 |
| Telephone: (973) 549-7000 | Telephone: (202) 942-5000 |
| susan.sharko@dbr.com | william.hoffman@arnoldporter.com |
| | |
| Rodney M. Hudson | Andrew K. Solow |
| DRINKER BIDDLE & REATH LLP | Steven Glickstein |
| 50 Fremont Street, 20th Floor | ARNOLD & PORTER LLP |
| San Francisco, CA 94105-2235 | 250 West 55th Street |
| Telephone: (415) 591-7500 | New York, New York 10019-9710 |
| Rodney.hudson@dbr.com | Telephone: (212) 836-8485 |
| | andrew.solow@arnoldporter.com |
| Chanda A. Miller | steven.glickstein@arnoldporter.com |
| DRINKER BIDDLE & REATH LLP | |
| One Logan Square, Suite 2000 | BRADLEY ARANT BOULT CUMMINGS LLP |
| Philadelphia, PA 19103-6996 | |
| Telephone: (215) 988-2500 | By: */s/ Lindsey C Boney IV* |
| Chanda.Miller@dbr.com | Lindsey C Boney IV |
| | BRADLEY ARANT BOULT CUMMINGS LLP |
| | One Federal Place, 1819 Fifth Avenue North |
| | Birmingham, AL 35203-2119 |
| IRWIN FRITCHIE URQUHART & MOORE LLC | Telephone: (205) 521-8914 |
| | lboney@bradley.com |
| By: /s/ *James B. Irwin* | |
| James B. Irwin | CHAFFE MCCALL L.L.P. |
| Kim E. Moore | |
| IRWIN FRITCHIE URQUHART & MOORE LLC | By: /s/ *John F. Olinde* |
| 400 Poydras Street, Suite 2700 | John F. Olinde |
| New Orleans, LA 70130 | CHAFFE MCCALL L.L.P. |
| Telephone: (504) 310-2100 | 1100 Poydras Street, Suite 2300 |
| jirwin@irwinllc.com | New Orleans, LA 70163 |
| | Telephone: (504) 585-7241 |
| *Attorneys for Defendants Janssen Pharmaceuticals, Inc. and Janssen Research & Development, LLC* | olinde@chaffe.com |
| | *Attorneys for Bayer HealthCare Pharmaceuticals Inc. and Bayer Pharma AG* |

11

**CERTIFICATE OF SERVICE**

  The undersigned hereby certifies that on the 21st day of June, 2018, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs by operation of the court's electronic filing system.

            */s/ John F. Olinde*