**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO ALL ACTIONS | JUDGE ELDON E FALLON |
| | MAG. JUDGE NORTH |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION TO ENFORCE CMO 6 AND TO ENTER DEPOSITION
SCHEDULING ORDER PURSUANT TO STIPULATED PROTOCOL**

Defendants move to enforce the parties' stipulation embodied in CMO 6 that, with respect to deposition procedures, the "protocol for the original discovery pool cases" (PTO 26) would apply to the deposition procedures under CMO 6.  *See* Exhibit A, Case Management Order No. 6.  PTO 26 governs a variety of issues and like all orders, involved negotiation and give and take.  It served the parties reasonably well in moving discovery along in the first bellwether pool of cases.  Because the parties and the Court explicitly re-affirmed the procedure in CMO 6, it should not now be repudiated.  The point now  in dispute is which side gets to examine a prescribing or treating physician first at deposition.  In PTO 26,  the parties agreed to the following regarding the taking of depositions::  (1) all cases were listed in alphabetical order, regardless of whether they were plaintiff picks, defense picks or random picks; (2) the parties alternated who examined the prescribing physician first, with Plaintiffs examining first in the first case listed alphabetically,  Defendants examining first in the second case listed alphabetically, and so on; and (3) Defendants would examine the non-prescribing treating

1

physician first in cases where the Plaintiffs examined the prescribing physician first, and vice versa. *See* Exhibit B, Pretrial Order No. 26 (Bellwether Deposition Protocol).

In CMO 6 the parties stipulated and the Court ordered that the same protocol be used for taking depositions in Wave 1 and Wave 2 selections: "Order of examination. The plaintiff shall be allowed to examine half the doctors first and the Defendants shall be allowed to examine half the doctors first *as was the protocol for the original discovery pool cases.*" CMO 6 ¶ 5.e (emphasis added). It is undisputed—and Plaintiffs will confirm—that PTO 26 is the prior protocol referenced in CMO 6.

Plaintiffs want to renege on this agreement by deviating from the discovery pool protocol and applying a different protocol to CMO 6 cases. They propose to <u>exclude plaintiff picks</u> from the protocol specifying that the right to take the prescribing physician first at deposition should alternate between Plaintiffs and Defendants based on an alphabetical list of plaintiffs. In other words, Plaintiffs now want to the right to examine the prescribing physician first <u>in every plaintiff's case</u>. That is not what the parties agreed to. And, given the strict prohibition on the defendants from speaking with the healthcare providers ex parte, it is not fair.

The procedure embodied in PTO 26, which is incorporated into CMO 6, is a compromise. Defendants believed that they should examine first in every physician's deposition because Plaintiffs had unilateral access to the physician prior to deposition; therefore Plaintiffs had both superior knowledge of the facts and an opportunity to condition the physician's testimony before the deposition. Plaintiffs argued that they should examine first in every deposition because they had the burden of proof. The parties reached a compromise rather than submitting the issue to the Court. The compromise was that the parties would alternate which side examines first, and that the alternating procedure should apply to all cases <u>including plaintiff selections</u>.

As the Court knows, CMO 6 also involved a series of compromises in which each side retreated from its preferred positions. One important issue for Defendants was that the PTO 26 protocol for taking physician depositions in discovery pool cases would also be used in CMO 6 cases. Plaintiffs agreed to use the same protocol. In return, Defendants compromised on issues that were important to Plaintiffs.

The stipulation should be enforced. Defendants cannot negotiate a case management order, be induced to compromise on certain issues in return for Plaintiffs' compromise on others, and then have Plaintiffs walk away from their compromises. Courts have dealt with such attempts by parties to claw back what they have negotiated in case management orders, and have held that the parties' stipulations must be enforced. *See Simms v. Bayer Healthcare LLC (In re Bayer Healthcare)*, 752 F.3d 1065, 1073-74 (6th Cir. 2014) (affirming denial of "discovery requests that exceeded the scope of the case management plan that plaintiffs expressly and repeatedly agreed was appropriate to resolve their claims," because "although they gave up discovery and some of the claims in the case, they got something in return"); *Bradford v. Dana Corp.*, 249 F.3d 807, 809 (8th Cir. 2001) ("As a vehicle designed to streamline the flow of litigation through our crowded dockets, we do not take case management orders lightly, and will enforce them."); *In re Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*, 2014 U.S. Dist. LEXIS 3856, *8, 10 (S.D. Ill. 2014) (denying motion to compel that "seeks to override discovery procedures agreed to by the parties and adopted by the Court" because a party "cannot now seek to attain through a motion to compel something they gave up as part of a negotiation").

Plaintiffs may in opposition propose alternatives that differ from the "protocol for the original discovery pool cases." They may suggest that the 50-50 split could be maintained by allowing Plaintiffs to examine first in all prescribing physician depositions while Defendants go

first only in non-prescribing physician depositions. They may also suggest that Plaintiffs should examine first in all plaintiff-selected cases while Defendants examine first in all defendant-selected cases. The complete answer to these alternative proposals is that the parties stipulated to something different. Moreover, both proposals unfairly disadvantage the Defendants, for the reasons set forth in the footnote below.[1]

The bottom line question, however, is not whether in the abstract one proposal is better than the other, but which proposal enforces the parties' compromise to use "the protocol for the original discovery pool cases." Because the parties stipulated that the protocol for the discovery pool cases would apply to the CMO 6 cases, a proposal which deviates from the prior protocol cannot be adopted.

---

[1] These proposed alternatives would be unfair and unacceptable.

- It would unfairly prejudice Defendants to allow Plaintiffs to examine all <u>prescribing</u> physicians first while relegating Defendants to going first only at <u>non-prescribing</u> physician depositions. The prescribing physician's testimony is far more important than the non-prescribing physician's testimony. The prescribing physician's assessment of whether the Xarelto label fairly informed him/her of the bleeding risk—and whether a change to the label would alter his/her prescribing decision—are the key liability and causation issues in every case. The non-prescribing physician's testimony usually pertains only to damages.

- A proposal that Plaintiffs examine first in all plaintiff-selected cases also would give Plaintiffs an unfair advantage even if Defendants were allowed to go first in defendant-selected cases. First, because of dismissals and removals from the pool due to party agreement, there are now 193 Plaintiff-selected cases and 115 Defendant-selected cases (85 dismissed) which would vitiate the 50-50 split the parties agreed to. Second, and equally important, the reason for the protocol adopted in PTO 26 and CMO 6 is that each party would have a fair shot in the cases selected by the other; there would not be a pro-plaintiff procedure in plaintiff-selected cases and a pro-defendant procedure in defendant-selected cases. Plaintiffs already have an advantage in plaintiff-selected cases by virtue of having made the selection. Undoubtedly Plaintiffs already believe their self-selected cases to be their strongest. The notion that a special pro-plaintiff procedure should be adopted to one-sidedly increase Plaintiffs existing advantage in Plaintiffs' handpicked cases is not consistent with fundamental fairness or due process.

## CONCLUSION

For these reasons, defendants request that the Court enter the scheduling order attached as Exhibit C, which faithfully adheres to the prior protocol the parties agreed to in PTO 26 and CMO 6.

July 26, 2018

Respectfully submitted:

**Arnold & Porter Kaye Scholer LLP**

*/s/ Andrew Solow*
Andrew Solow
Steve Glickstein
William Hoffman
250 West 55th Street
New York, NY  10019-9710
Telephone: (212) 836-8485
sglickstein@akps.com
*Counsel for Defendants Bayer Healthcare Pharmaceuticals Inc., and Bayer Pharma AG*

**Drinker Biddle & Reath LLP**
**A Delaware Limited Liability Partnership**

*/s/ Susan M. Sharko*
Susan M. Sharko
600 Campus Drive
Florham Park, NJ  07932-1047
Telephone: (973) 549-7000
susan.sharko@dbr.com
*Counsel for Defendants Janssen Pharmaceuticals, Inc., and Janssen Research & Development, LLC*

**Irwin Fritchie Urquhart & Moore LLC**

*/s/ James B. Irwin*
James B. Irwin
Kim E. Moore
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
jirwin@irwinllc.com
*Defendants' Co-Liaison Counsel*

          **Chaffe McCall L.L.P.**

          */s/ John F. Olinde*
          John F. Olinde
          1100 Poydras Street, Suite 2300
          New Orleans, LA 70163
          Telephone: (504) 585-7241
          olinde@chaffe.com
          *Defendants' Co-Liaison Counsel*

## CERTIFICATE OF SERVICE

      I hereby certify that on July 26, 2018, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

          */s/ John F. Olinde*