```
                    UNITED STATES DISTRICT COURT

                    EASTERN DISTRICT OF LOUISIANA


IN RE:  XARELTO (RIVAROXABAN)   *       14-MD-2592
PRODUCTS LIABILITY LITIGATION   *
                                *       Section L
                                *
Relates to:  All Cases          *       August 6, 2018
                                *
* * * * * * * * * * * * * * * * *


              MONTHLY STATUS CONFERENCE BEFORE
                THE HONORABLE ELDON E. FALLON
                UNITED STATES DISTRICT JUDGE
```

Appearances:

| | |
|---|---|
| For the Plaintiffs: | Gainsburgh Benjamin David Meunier<br>  & Warshauer, LLC<br>BY:  GERALD E. MEUNIER, ESQ.<br>1100 Poydras Street, Suite 2800<br>New Orleans, Louisiana 70173 |
| For the Defendants: | Irwin Fritchie Urquhart<br>  & Moore, LLC<br>BY:  JAMES B. IRWIN, ESQ.<br>400 Poydras Street, Suite 2700<br>New Orleans, Louisiana 70130 |
| Also Participating: | Andy Birchfield, Esq.<br>Steven Glickstein, Esq.<br>Susan M. Sharko, Esq.<br>Jacob S. Woody, Esq. |
| Official Court Reporter: | Toni Doyle Tusa, CCR, FCRR<br>500 Poydras Street, Room B-275<br>New Orleans, Louisiana 70130<br>(504) 589-7778 |

Proceedings recorded by mechanical stenography using
computer-aided transcription software.

**PROCEEDINGS**

**(August 6, 2018)**

**THE COURT:** Be seated, please.  Good morning, ladies and gentlemen.

Call the case, Dean.

**THE DEPUTY CLERK:** MDL 2592, *In Re: Xarelto Products Liability Litigation*.

**THE COURT:** Liaison counsel make their appearance for the record.

**MR. MEUNIER:** Jerry Meunier, co-liaison counsel for plaintiffs.

**MR. IRWIN:** Jim Irwin for defendants.  Good morning, Your Honor.

**THE COURT:** We are here today for our monthly status conference.  I met with liaison lead counsel a moment ago to discuss the agenda.  We will take it in the proposed order.

**MR. MEUNIER:** Yes, Your Honor.  On the joint report in Section 2, in the discussion of case management orders, we report that for the plaintiffs' and the defendants' selection of cases in Wave 2 under CMO 6, that deadline has been extended until September 17, 2018; and that the random selection of cases for Wave 2 by the Court, that deadline is extended until October 1, 2018.  Although it's not set forth in the joint report, Your Honor has entered a joint stipulating order setting forth those new deadlines in the amendment of CMO 6,

09:02    1    and that order is Rec. Doc. 10340.
         2         **THE COURT:**  Okay.
         3         **MR. MEUNIER:**  Counsel contact information, we always
         4    just encourage plaintiffs' counsel to do what they have been
         5    doing with that and maintain currency with respect to letting
         6    Lenny Davis and I know about their contact information as soon
         7    as they appear in the case.
         8              On plaintiff and defendant fact sheets,
         9    Your Honor, I think we have a report today from Jake Woody.
        10         **THE COURT:**  Okay.
        11         **MR. WOODY:**  Good morning, Your Honor.  Jake Woody
        12    from BrownGreer.  I have an update for you on plaintiff fact
        13    sheets that we have collected through MDL Centrality.
        14              To date, we have 21,823 fact sheets submitted.
        15    That's an increase of 45 since my last report.  We certainly
        16    received more than 45 new fact sheets in that time, but we have
        17    also have been marking cases as dismissed, so the net increase
        18    was 45.  When we mark cases as dismissed in our system, we
        19    don't count them as an active case, but we do retain the
        20    information and the records in the event that they are ever
        21    needed.
        22              We have 1,349 fact sheets in progress but not
        23    yet submitted.  That gives us a total of 23,172 plaintiffs in
        24    our system, in our database.
        25              In July 2018 we received 355 fact sheets, in

```
09:04   1   June 468.  Our average for the last two years has been 466 a
        2   month, and July was the lowest that we have seen in that time.
        3   I don't know if that trend will continue, but I did note that
        4   it was lower than many months in years past.  So we will keep
        5   an eye on that and update it as necessary.
        6              THE COURT:  It looks like that's the lowest in the
        7   whole period.
        8              MR. WOODY:  It's the lowest probably since we
        9   started.  Yeah, it is the lowest we have had since the early
       10   days of this.  Although we do have ups and downs, we will see
       11   if it continues that way.
       12              I do have a new slide here that shows the
       13   details of the CMO 6 cases that were selected by the parties
       14   and randomly.  There were 600 selections, as you recall.  Of
       15   those, 146 cases have been dismissed.  That's 24 percent of the
       16   600 that were selected.  87 of the dismissed cases were
       17   defendant picks, 55 were random selections, and 4 were
       18   plaintiff selections.
       19              I think that that has sort of stabilized.  I'm
       20   sure there will be more dismissals, but I think most of the
       21   dismissals are over with.  So we will keep that in mind when we
       22   do the next round and see if there's anything we can do to pick
       23   a more useful pool or ones that won't be dismissed, although
       24   I'm sure some of it is inevitable.
       25              THE COURT:  Now, these are from the 200 selected?
```

09:06

1   **MR. WOODY:**  These are from the 600 that were
2   selected.
3           **THE COURT:**  600, I mean, right.
4           **MR. WOODY:**  It was 200 defendant, 200 random, and 200
5   plaintiff selections.
6           **THE COURT:**  Right.  Okay.
7           **MR. WOODY:**  Our key indicators for the MDL as a whole
8   remain unchanged.  This slide shows the plaintiffs' age
9   information.  You can see that 20 percent are between 60 and
10  69, 30 percent are between 70 and 79, and 26 are between 80 and
11  89.  That's three-quarters of the MDL right there between 60
12  and 89.  If you add in the 90-plus people, that gives you over
13  80 percent that are over the age of 60.  So it is on older
14  population, as we have mentioned before.
15          The main alleged injury is gastrointestinal
16  bleeding.  49 percent of every plaintiff in the MDL alleges
17  that that was their injury, at least one of them.  After that
18  it drops down to 21 percent, which is the "Other" category,
19  where people list a variety of injuries.  That remains
20  unchanged since my last report.
21          Finally, the indication or the reason that
22  people took Xarelto, the highest indication is reduction of
23  risk of stroke.  53 percent of all plaintiffs allege that
24  that's the reason they took Xarelto, and again that's
25  unchanged.

```
09:07   1              These indicators, because of just the sheer
        2  numbers of plaintiffs that we have, it takes a lot to change
        3  these numbers.  It would take a large number of plaintiffs
        4  answering differently for these to change at this point, so
        5  they are pretty static and pretty steady.  When we did the
        6  bellwether selections and the CMO picks, we weighted the pools
        7  to reflect these main indicators.  I think this has been a
        8  useful exercise to try to get good pools.
        9         THE COURT:  Yes.  No, that's very helpful because
       10  that's exactly how we picked them.
       11         MR. WOODY:  That's my update, Your Honor.  Thank you
       12  very much.
       13         THE COURT:  Thank you, Jake.
       14              Jerry, what's the reason for the dismissals when
       15  you have the 80 percent?
       16              Andy, do you want to speak to that?
       17         MR. BIRCHFIELD:  Judge, it runs across the gamut.
       18  One of the things that we are seeing is that there are -- I
       19  mean, there are a significant number of clients, when they are
       20  faced with going forward with deposition -- this is an elderly
       21  population.
       22         THE COURT:  Right.
       23         MR. BIRCHFIELD:  Their health is declining.  They are
       24  balancing that issue of going forward versus not.  So we are
       25  seeing a lot of the cases that are falling out for that reason.
```

```
09:08    1                  Your Honor, in fairness, there are also
         2   situations where, when the plaintiffs are looking more intently
         3   at the case, as they are getting ready for these depositions,
         4   plaintiffs are seeing some issues that were not really brought
         5   forth as they were just filed and going through the fact sheet
         6   process.  So it's across the board.
         7             THE COURT:  Okay.  Steve.
         8             MR. GLICKSTEIN:  Realistically, Your Honor, I do
         9   think some of the dismissals have to be related to the results
        10   to date.  We know that the three bellwethers here were defense
        11   verdicts.  The first two cases in Philadelphia were a JNOV and
        12   defense verdict.  Some of the folks are undoubtedly also
        13   looking at their damages and whether, in light of the results
        14   to date, it's worth pursuing a claim.
        15             THE COURT:  I see.
        16             MR. MEUNIER:  Your Honor, the next thing to mention
        17   in the joint report is in Section 7, the preservation order.
        18   It's just important to keep reminding all parties, particularly
        19   plaintiffs' counsel as their cases might be selected under
        20   CMO 6, of the preservation obligation with respect to
        21   voicemails, instant messages, etc., set forth in PTO 15B.
        22                  Your Honor, on bellwether cases tried here in
        23   the MDL, as you know, all three of those matters that were
        24   tried are consolidated on appeal in the Fifth Circuit.  There
        25   was an issue with respect to completing the record for appeal,
```

09:10   1  and because of that issue there was an agreement by the parties
       2  to suspend any further briefing or scheduling of argument,
       3  etc., until we have a complete record for purposes of that
       4  consolidated appeal.
       5            **THE COURT:**  Right.
       6            **MR. MEUNIER:**  State/federal coordination, in
       7  Section 11, Judge, we report on the trial settings.  As the
       8  Court knows, today, August 6, is actually the start date of one
       9  of the cases being tried in Pennsylvania state court in
      10  Philadelphia.  It's the *Cooney v. Janssen, et al.* case.  The
      11  court is hearing motions this morning and opening statements
      12  will take place this afternoon.
      13            The next case to be tried in Philadelphia,
      14  although it's not specifically mentioned in the joint report,
      15  is the case of *Rush v. Janssen, et al.*, and that's set for
      16  trial commencing December 3, 2018.
      17            The presiding judge in that case has not yet
      18  been identified.  The presiding judge in the *Cooney* trial,
      19  which is starting today, is Judge Teresa Sarmina.
      20            Your Honor, I think that completes the main
      21  items of the joint report.  We just have to confirm the October
      22  status conference.  The next status conference in September
      23  will be September 5.
      24            **THE COURT:**  September 5 and then the following one is
      25  October 11.

09:11

                  Susan, do you want to report?

        **MS. SHARKO:**  Yes.  Thank you, Your Honor.

             On the CMO 6 cases, as Mr. Woody noted, 146 of the pool has been dismissed.  There are an additional 16 cases that, after conferring with the plaintiffs, both sides agreed to remove them from the pool because they presented off-label use issues or just weird fact patterns or complicated discovery issues.

             We have three plaintiffs in the pool who have not yet submitted a PFS.  That's down from 25 last month.  With Mr. Birchfield's help, we are making substantial progress.  We still have 17 cases -- and these people were on an order to show cause -- who have not submitted an updated certification or an updated PFS.  That's down from 29 for the order to show cause.

             We still have 22 plaintiffs who have died since the filing of the complaint and the documentation needed has not been submitted.  That's down one from last month.

             Last month we had eight cases with subject matter jurisdiction.  We still have four that need to be resolved.  Basically, those lawyers either need to dismiss a defendant or dismiss completely and refile in state court.  We have form stipulations of dismissal that will assist them, but they need to come forward and get that resolved.

             On service of process, last month we had six,

09:13  this month we have 27 where a key defendant has not been served. The big increase is Bayer took a second look at it. The Bayer issues seem to be moving along and people are working together.

As to the Janssen cases, there are still four cases where Janssen hasn't been served. They all belong to one law firm, the Fears law firm, and they have to serve us. It's not that hard, but those cases are on hold until that happens.

**THE COURT:** I urge all of the plaintiff lawyers to either serve or send the material in. If not, I will have to be dismissing the cases. When I dismiss them, I dismiss them with prejudice. Let's do your best to get that information in.

**MS. SHARKO:** Thank you. Duplicate filed cases for the CMO 6 Wave 1 pool, we are down to zero. Last month we had three, so that's been resolved.

Cases missing authorizations, we are now down to zero. Last month it had been one.

Looking ahead to future order to show cause and other issues, on the PFSs for the Wave 1 group, we have 61 that have significant deficiencies. We have written to the lawyers. That process is moving along, but we are at the point now where unless the deficiencies are cured, we are going to need to seek relief from the Court.

**THE COURT:** Right.

**MS. SHARKO:** Finally, on duplicate filed cases, so

09:15   1  there are by our count now 209 people in the MDL who have two,
        2  three, or more cases filed with different lawyers.  Of that
        3  209, 46 are proceeding both in the MDL and Philadelphia.  I
        4  will give Mr. Birchfield the latest list.  We have written to
        5  all these lawyers, and I think we are going to have to move to
        6  an order to show cause process because we don't want this to
        7  gum up the selection of the Wave 2 cases.
        8            **THE COURT:**  Okay.
        9            **MS. SHARKO:**  Thank you.
       10            **THE COURT:**  Anything else?
       11            **MR. MEUNIER:**  Your Honor, can I mention one other
       12  thing?
       13            **THE COURT:**  Yes.
       14            **MR. MEUNIER:**  We, as you know, are about to enter
       15  into the nuts and bolts of conducting discovery for the Wave 1
       16  cases.  You were given in chambers this morning a pretrial
       17  order that the parties have proposed which sets forth some of
       18  the details about how matters such as scheduling and the order
       19  of depositions will be worked out.
       20            I have been designated as the liaison for the
       21  plaintiffs' side and then Ms. Sharko and Ms. Dupont on the
       22  defendants' side to work things out as they come up on
       23  difficulties.  The reason I mention it is that perhaps at the
       24  September 5 conference, if both sides agree, the Court could
       25  get back to scheduling the biweekly calls with Your Honor --

```
09:16    1              THE COURT:  Sure.
         2              MR. MEUNIER:  -- just so we can expedite the handling
         3    of any things we can't work out on our side.  I think that will
         4    keep us on track.
         5              THE COURT:  That worked well.  Let me know and I will
         6    schedule them.
         7              MR. MEUNIER:  Thank you, Judge.
         8              THE COURT:  Anything else?
         9                 All right, folks.  Thank you very much.  Court
        10    will stand in recess.
        11              THE DEPUTY CLERK:  All rise.
        12              (Proceedings adjourned.)
        13                              * * *
        14                            CERTIFICATE
        15            I, Toni Doyle Tusa, CCR, FCRR, Official Court
        16    Reporter for the United States District Court, Eastern District
        17    of Louisiana, certify that the foregoing is a true and correct
        18    transcript, to the best of my ability and understanding, from
        19    the record of proceedings in the above-entitled matter.
        20
        21
        22                                  /s/ Toni Doyle Tusa
                                            Toni Doyle Tusa, CCR, FCRR
        23                                  Official Court Reporter
        24
        25
```