**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION** | **MDL No. 2592** |
| | **SECTION L** |
| **THIS DOCUMENT RELATES TO ALL CASES** | **JUDGE ELDON E. FALLON** |
| | **MAG. JUDGE NORTH** |

**PRETRIAL ORDER NO. 28B**
(Regarding Contact with Physicians in CMO 6 Discovery Pool)

Consistent with the Court's Order & Reasons, entered on March 9, 2016 [Doc. No. 2676] ("Order & Reasons") and Pretrial Order No. 28, entered on April 28, 2016 [Doc. No. 3156], and Case Management Order No. 6 [Doc No. 8717], entered on February 27, 2018, the following will govern the parties' interactions with an MDL Plaintiff's prescribing and treating physicians in the CMO 6 Discovery Pool. As used in this order, an "MDL Plaintiff's prescribing or treating physician" is a physician who has one or more patients who have filed a lawsuit (or whose representative has filed a lawsuit) pending in this MDL proceeding alleging that the patient sustained an injury caused by Xarelto. A "prescribing physician" is the physician identified in Plaintiffs' Fact Sheet as the physician who prescribed Xarelto to the plaintiff, as recorded in MDL Centrality; a "treating physician" is the physician who treated the injury alleged in Plaintiffs' Fact Sheet, as recorded in MDL Centrality.

1.    Plaintiffs' counsel may engage in ex parte communications with any MDL Plaintiff's prescribing or treating physician. With respect to any such ex parte communications,

at least 48 hours before the deposition of the Plaintiff's prescribing or treating physician,

Plaintiffs' counsel shall disclose to Defendants' counsel each of the following:

      a.    the date(s) of each such ex parte communication;

      b.    the approximate duration of each such ex parte communication;

      c.    the location of each such ex parte communication;

      d.    the participants in each such ex parte communication; and

      e.    the identity of the documents, photographs, or other materials that were

shown or provided to the treating physician by Plaintiffs' counsel in connection with each such

ex parte communication.

      2.    Defendants' counsel will not engage in ex parte communications with any MDL

Plaintiff's prescribing or treating physician, except as permitted in this CMO. Nothing herein

shall bar any employee, agent or representative of the Defendants from engaging in

communications with physicians in the ordinary course of business.

      3.    As to the 600 cases selected as part of the CMO 6 Wave 1 Discovery Process (or

that lesser number of cases now remaining in the CMO 6 Wave 1 Pool), the defendants may

contact a total of 250 MDL Plaintiffs' prescribing or treating physicians (to be divided between

the Defendants, collectively) and retain no more than 125 MDL Plaintiffs' prescribing or treating

physicians (to be divided between the Defendants, collectively). Further, as to these 250

potential contacts and 125 potential retentions, a maximum of 30 potential contacts and 20

potential retentions may be from the 200 cases selected by the Court and none from the 200

cases selected by Plaintiffs. Expert witnesses previously disclosed in the MDL or PCCP

proceeding may continue to be used by Defendants and shall not be counted toward any of the

above limits.

4.      As to the CMO 6 Wave 2 Pool MDL case work-ups, Defendants' counsel may engage in ex parte communications with MDL Plaintiffs' prescribing or treating physicians (to be divided between the Defendants, collectively) with the same numbers.

5.      When any MDL case is dismissed, including an MDL CMO 6 case:

a.      If the dismissed plaintiff's prescriber/treater has not treated any other MDL plaintiffs as of the date of dismissal, then contact with that physician is not subject to the limitations of PTO 28B.

b.      If the dismissed plaintiff's prescriber/treater has treated another MDL plaintiff, but not another CMO 6 Wave 1 or Wave 2 plaintiff, then contact with that physician counts toward the general limit in Paragraph 4 but does not count toward the sub-limits in - Paragraph 3.

c.      If the dismissed plaintiff's prescriber/treater has treated another non-dismissed CMO 6 MDL plaintiff, the sub-limits in Paragraph 3 remain applicable as to that prescriber/treater.

6.      The MDL Plaintiffs' prescribing or treating physicians are defined as those healthcare providers identified as prescribing or treating physicians in their PFS as of May 31, 2018.

7.      All ex parte communications by Defendants' counsel with an MDL Plaintiff's prescribing or treating physician must be limited to non-substantive discussions until the physician has affirmatively expressed a bona fide interest in being considered as a retained expert.

8.      If any CMO 6 case proceeds to expert discovery, at the time expert disclosures are made by Defendants, Defendants' counsel shall also disclose to Plaintiffs' counsel the name of

any testifying expert who per MDL Centrality has patients who are plaintiffs in the MDL

proceeding, and the experts themselves shall have no further affirmative disclosure obligations.

No disclosures are necessary for consulting experts until such time as an expert is identified as a

testifying expert.  Consulting experts contacted or retained by Defendants' counsel shall be

subject to all of the requirements of this Order to the same extent as testifying experts, except

that the disclosure requirements set forth in this sub-paragraph 3(c) shall not apply to consulting

experts until they are identified as testifying experts.

      9.     Defendants' counsel may communicate with a prospective physician-expert about

his or her general clinical experiences with Xarelto, provided that Defendants' counsel shall not

communicate with a physician-expert who has acted as a prescribing or treating physician about

any of his or her specific patients who have taken Xarelto.

      10.    The Defendants shall not use a physician as a consulting or testifying expert in a

case where that physician's present or former patient is a plaintiff in that case.

      11.    Defendants may rely on the disclosures in Plaintiffs' Fact Sheets as recorded in

MDL Centrality as of May 31, 2018, in determining whether a physician is an MDL Plaintiff's

prescribing or treating physician.  Subsequent disclosures in Plaintiffs' Fact Sheets as recorded in

MDL Centrality shall not impact the count toward the cap in paragraphs 3 and 4.

      12.    The numerical limit in paragraph 3 above is subject to modification by agreement

of the parties or by court order for good cause shown.  The limitation shall be subject to re-

evaluation by the Court should these restrictions be deemed unduly burdensome and prejudicial

to the Defendants' ability to obtain sufficient expert witnesses based on expert availability or

expert witness deadlines in the CMO 6 Wave 1 or Wave 2 cases.

13.     This order shall govern expert retentions only with respect to CMO 6 Wave 1 and

Wave 2 plaintiffs, and is neither binding nor precedential with respect to cases that are not

selected in Wave 1 or Wave 2 of CMO 6.  Defendants expressly preserve their position that

Pretrial Order 28 cannot continue in effect as additional cases are selected for workup, and

Plaintiffs expressly preserve their contrary position.  The parties retain their respective rights

with respect to any additional plaintiffs subsequently be selected for discovery or trial beyond

CMO 6.  All parties' prior objections to Pretrial Order 28 are expressly preserved.

NEW ORLEANS, LOUISIANA, this 7th  day of October 2016.

UNITED STATES DISTRICT JUDGE