UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


IN RE:  XARELTO (RIVAROXABAN)  *          14-MD-2592
PRODUCTS LIABILITY LITIGATION  *
                               *          Section L
                               *
Relates to:  All Cases         *          January 23, 2019
                               *
*  *  *  *  *  *  *  *  *  *  *  *  *  *  *


PROCEEDINGS HEARD BEFORE
THE HONORABLE ELDON E. FALLON
UNITED STATES DISTRICT JUDGE


<u>Appearances</u>:


For the Plaintiffs:        Gainsburgh Benjamin David Meunier
                             & Warshauer, LLC
                           BY:  GERALD E. MEUNIER, ESQ.
                           1100 Poydras Street, Suite 2800
                           New Orleans, Louisiana 70173


For the Plaintiffs:        Beasley Allen Crow Methvin
                             Portis & Miles, PC
                           BY:  ANDY BIRCHFIELD, ESQ.
                           Post Office Box 4160
                           Montgomery, Alabama 36103


For the Plaintiffs:        Baron & Budd, PC
                           BY:  SINDHU S. DANIEL, ESQ.
                           3102 Oak Lawn Avenue, Suite 1100
                           Dallas, Texas 75219


For the Defendants:        Irwin Fritchie Urquhart
                             & Moore, LLC
                           BY:  KIM E. MOORE, ESQ.
                           400 Poydras Street, Suite 2700
                           New Orleans, Louisiana 70130

<u>Appearances</u>:

For the Defendants:          Chaffe McCall, LLP
                             BY:  JOHN F. OLINDE, ESQ.
                             1100 Poydras Street, Suite 2300
                             New Orleans, Louisiana 70163


For the Defendants:          Drinker Biddle & Reath, LLP
                             BY:  SUSAN M. SHARKO, ESQ.
                             600 Campus Drive
                             Florham Park, New Jersey 07932


For the Defendants:          Drinker Biddle & Reath, LLP
                             BY:  CHANDA A. MILLER, ESQ.
                             One Logan Square, Suite 2000
                             Philadelphia, Pennsylvania 19103


Also Participating:          Michael McGartland, Esq.
                             Candice McNabb, Esq.
                             Roopal Luhana, Esq.
                             Laura Lumaghi, Esq.
                             Christopher Pinedo, Esq.
                             Christopher Quinn, Esq.


Official Court Reporter:     Toni Doyle Tusa, CCR, FCRR
                             500 Poydras Street, Room B-275
                             New Orleans, Louisiana 70130
                             (504) 589-7778


Proceedings recorded by mechanical stenography using
computer-aided transcription software.

## INDEX

Page

Monthly Status Conference                4

Motions                                 13

1                     **<u>PROCEEDINGS</u>**

2                    **(January 23, 2019)**

3       **THE COURT:**  Be seated, please.  Good morning, ladies

4 and gentlemen.

5           Let's call the case, Dean.

6       **THE DEPUTY CLERK:**  MDL No. 2592, *In re Xarelto*

7 *Products Liability Litigation.*

8       **THE COURT:**  Counsel make their appearance for the

9 record, please.

10       **MR. MEUNIER:**  Jerry Meunier, co-liaison counsel for

11 plaintiffs.

12       **MS. MOORE:**  Kim Moore, co-liaison counsel for

13 Janssen.

14       **MR. OLINDE:**  John Olinde, co-liaison counsel for the

15 Bayer defendants.

16       **THE COURT:**  We are here today for our monthly status

17 conference.  I met with lead and liaison a moment ago to

18 discuss the agenda.  We will take it in the order presented.

19         Jerry.

20       **MR. MEUNIER:**  Thank you, Your Honor.  May it please

21 the Court.  The joint report is lengthy.  Due to the fact that

22 it provides certain written notifications about PFS

23 deficiencies, that length is required in this case.

24         The first thing to discuss, though, is CMO 6,

25 just to report to the Court that there is very active discovery

09:02

1    now proceeding for the Wave 1 and Wave 2 cases.  We want to

2    assure the Court that the meet-and-confer process that you have

3    encouraged for counsel is working in that any discovery issues

4    that are arising with respect to CMO 6 cases thus far, those

5    issues are being effectively addressed and resolved by counsel

6    without need for any disputes for the Court to resolve.

7           **THE COURT:**  Why don't you mention where they are, the

8    Wave 1 cases, things of that sort.

9           **MR. MEUNIER:**  Andy, do you want to --

10          **MR. BIRCHFIELD:**  Your Honor, in regard to Wave 1,

11   starting this month several of those cases will have completed

12   their 7-month discovery period.  There are others that will be

13   staggered over the coming months, but those depositions are

14   proceeding well with the plaintiff prescribing and treating

15   doctor depositions and the detail rep depositions.

16          **THE COURT:**  Susan, anything?

17          **MS. SHARKO:**  I would agree they are moving along.  We

18   have also agreed that the detail rep deposition may be deferred

19   until the case is remanded.  That will streamline the process.

20              In Wave 1, 268 cases have been dismissed, so

21   that's 46 percent of the pool.  Really, the only issue right

22   now are 10 cases still are missing PFSs.  Mr. Birchfield has

23   been extraordinarily helpful in moving those along.  There are

24   issues that are percolating, but we have been able to resolve

25   them.

09:04

1          THE COURT:  Okay.

2          MS. SHARKO:  Wave 2 depositions are just starting up.

3  197 cases have been dismissed so far.  That's 33 percent of the

4  docket.  Then we have the similar issues that we had with

5  Wave 1.  24 cases don't have a PFS.  107 have discovery on hold

6  because of issues; two cases have subject matter jurisdiction,

7  two cases haven't been served, and the like.  Wave 2 seems to

8  be moving along faster than Wave 1 did, so things are good.

9          THE COURT:  Okay.

10          MR. BIRCHFIELD:  Your Honor, in regards to the detail

11  representatives, the CMO provides for the detail

12  representative.  If it's okay with the Court, we have told

13  plaintiffs' counsel if they choose to defer that until the case

14  is set for remand, they could do that, or they could proceed

15  with it before the end of the discovery period.

16               In working with Ms. Sharko, we have agreed to a

17  process for any issues regarding the scheduling of detail

18  representatives to be handled as we have handled issues

19  regarding the doctors.  If they cannot resolve it with the

20  defense lawyer that's assigned to that case, then they would

21  bring that to the PSC's attention.

22               Mr. Meunier is serving as the liaison, and he

23  and Ms. Sharko will try to resolve those issues.  We have put

24  that process in place to see if we can resolve it before

25  bringing it to the Court's attention and before any subpoena

09:05

1    would be issued for the detail representative.

2              **THE COURT:**  Okay.  Makes sense.

3              **MS. SHARKO:**  So all detail rep issues go to one

4    lawyer for Janssen.  Thank you.

5              **THE COURT:**  Thank you.

6              **MR. MEUNIER:**  Of course, Your Honor, the CMO 6

7    discovery activity is all triggered by the completion of fact

8    sheets.  There is motion practice, as you see in the report, to

9    address deficiencies with fact sheets.

10             We continue to implement the process under

11   PTO 31, which is to try to work out those deficiency questions

12   when we get notice of them.  On our side, we have Sindhu Daniel

13   and Lenny Davis working hard with plaintiffs' counsel, again,

14   to try to minimize motion practice and get those things

15   resolved.

16             **THE COURT:**  The fact sheets are essential for the

17   process.  It really is.  We have used fact sheets in these

18   cases in lieu of interrogatories because it just makes more

19   sense and it's quicker, but you need the cooperation of the

20   parties to get to the fact sheets.  You need the litigants to

21   answer the fact sheets.  If they don't, then we are going to

22   have to dismiss their case.  It's as simple as that.

23             **MR. MEUNIER:**  Again, looking at the CMO 6 cases, of

24   course, the deficiency of the fact sheet is important as a

25   trigger to discovery and remand.

09:07

1    We also have now a deficiency process that's

2    pretty active on non-CMO 6 cases, and I want to call attention

3    for counsel to the Court's Pretrial Order 31(a), which was

4    entered last month, which sets forth a new process of added

5    notification for the purpose of non-CMO 6 cases where the fact

6    sheet is either overdue or is deficient in some respect.

7    The first notification that counsel get about

8    those deficiencies is through the MDL Centrality notice system,

9    so I encourage all plaintiffs' counsel to stay current with

10   that system because that's the first time they will receive

11   official or formal notification of there being a deficiency or

12   an overdue situation.

13   Beyond that, Judge, what we now do on the joint

14   report, as you will see starting at different pages of the

15   joint report, is under PTO 31(a) will begin the process of

16   giving a first and, if necessary, a second notification by

17   listing in the joint report of the overdue and deficiency

18   issues.  After two such listings and two status conferences at

19   which the joint report provides those listings, those cases are

20   then subject to a request for a show cause order and hearing at

21   the next status conference.  So plaintiffs' counsel should now

22   pay close attention to the joint report listings under

23   PTO 31(a) as well as the MDL Centrality notice.

24   **THE COURT:**  The process gives everybody due process.

25   That's the whole concept.  It's actually three notices that

09:08

1    individuals get.  So if they don't heed those three notices,

2    the case is going to just be dismissed.  There's no reason not

3    to dismiss it at that point.

4          MR. MEUNIER:  I believe it was recommended by

5    Ms. Sharko in chambers -- and we will do this.  We will index

6    the joint report so it's an easier reference document.  For

7    purposes of today, counsel should know that starting at page 11

8    of the joint report, which is Rec. Doc. 12358, is the

9    first-time listing of overdue fact sheets.

10         MS. SHARKO:  Right.  There are 128.

11         MR. MEUNIER:  Starting at page 18 is the second-time

12   listing of overdue fact sheets.

13         MS. SHARKO:  There are 54.

14         MR. MEUNIER:  Starting at page 78 of the joint report

15   is the second-time listing of core deficient fact sheets.

16         MS. SHARKO:  Right.  There's 42.

17              On page 21 is the first-time listing for core

18   deficient fact sheets.

19         MR. MEUNIER:  I'm sorry.

20         MS. SHARKO:  There are 200 of those.

21         MR. MEUNIER:  Then at page 98 is the listing of cases

22   which are now subject to the show cause hearing because they

23   have been twice listed as overdue on the joint report.

24         MS. SHARKO:  Correct.  The good news is that two

25   cases can come off the list of the four.  The *Carrington* case,

09:10   1    No. 2, that's been resolved.  The *Christie* case, No. 3, we have

2    agreed to carry that because the plaintiff, who is pro se, had

3    some uploading issues.

4          MR. MEUNIER:  Then at page 99 of the joint report is

5    the notification of core deficient fact sheets which have

6    already been listed twice on joint reports and are now subject

7    to a show cause order.

8          MS. SHARKO:  There are four cases that can come off

9    that list because the issues have been resolved:  No. 8, the

10   *Harden* case; No. 14, the *Posey* case that's on page 103; No. 21,

11   on page 106, the *Valantiejus* case.

12          I'm sorry.  There are three of those.  I would

13   just note we had 24 cases.  Now we are down to 21, but 12 of

14   those cases are with the same law firm, the Driscoll law firm.

15          MR. MEUNIER:  So, Judge, those matters will have to

16   be addressed following the joint report.

17          So returning to the report on other matters, we

18   wish to report that on the Fifth Circuit appeal -- it's a

19   consolidated appeal of the three bellwether trials in this MDL,

20   the two that were conducted in the Eastern District of

21   Louisiana and the one that was conducted in the Southern

22   District of Mississippi -- there was a holdup on the briefing

23   because of a problem with completing the record for appeal, but

24   that's now been resolved.

25          So this Friday, the 25th, will be the deadline

09:12

1   for what I believe is the final brief to be submitted.  It is a

2   plaintiff reply brief to the defendants' cross-appeal in those

3   cases.  The cross-appeal deals, among other things, with

4   preemption.  So that will complete the briefing in the

5   consolidated appeal of those three bellwether cases.

6                On state/federal coordination discussed in the

7   joint report in Section 11 at page 9, we have submitted to the

8   Court a written spreadsheet of the various state court actions.

9   By far the most active and populated case, of course, is the

10  one before Judge New in the Pennsylvania court.  There is a

11  trial set in that matter in the *Rush* case.  The trial will

12  begin on May 6, 2019.  Then starting in September there are

13  additional trials which have been now designated as taking

14  place, with 60 days spacing between trials.

15                Your Honor, I think other than the matters to be

16  heard after the conference, the only other issue is the

17  scheduling of the next conferences.  We have agreed that the

18  next in-person status conference will be on March 12.

19              **THE COURT:**  The following on April 11.

20              **MR. MEUNIER:**  And the following on April 11.  We have

21  also scheduled a telephone conference for the leadership and

22  the Court on February 12.  Thank you, Your Honor.

23              **THE COURT:**  Thank you.  Anything else?

24                Let's go into the motion.  Do we need a break?

25              **THE DEPUTY CLERK:**  Judge, we have one matter in

09:14

1    person.

2             THE COURT:  We have a motion on the filing fees.

3    Sindhu, do you want to take care of that?  Then we will break

4    and get the rest on the phone.

5             MS. DANIEL:  Thank you, Your Honor.  Sindhu Daniel

6    for the plaintiffs.

7                  Your Honor, Document 12164 contained 45 cases

8    where there were unpaid filing fees.  All of those have been

9    resolved, with apologies from plaintiffs' counsel on any

10   misunderstanding as to why they weren't paid, except for four

11   cases with the law firm Fears Nachawati.

12                  Is anyone on the line from that firm to explain

13   to the Court why those cases are unpaid?

14             THE DEPUTY CLERK:  It was an in-person show cause.

15             MS. DANIEL:  Is anyone in court?

16                  They are not.

17             THE COURT:  Well, if they are not in court, then they

18   are not heeding the rule to show cause.  I will hold them in

19   contempt of court.  I will issue an order holding them in

20   contempt.  I will impose a fine also.

21             MS. DANIEL:  Your Honor, I will personally reach out

22   to them.  I'm not certain what happened, but I will get

23   Majed Nachawati to pay this immediately.

24             THE COURT:  Tell him I will issue this order holding

25   them in contempt within a week if I don't hear from him.

09:15

1     **MS. DANIEL:**  You will hear from him, Your Honor.

2  Thank you.

3     **THE COURT:**  Thank you very much.  Let's take a

4  five-minute break at this time to get them on the phone.

5     **THE DEPUTY CLERK:**  All rise.

6     (Recess.)

7     **THE COURT:**  Be seated, please.

8        We have a number of motions on a rule to show

9  cause.  I will take them in the order presented by counsel.

10    **MS. DANIEL:**  Good morning, Your Honor.  Sindhu Daniel

11  for the plaintiffs.

12    **MS. MILLER:**  Good morning, Your Honor.  Chanda

13  Miller.  I will be speaking on behalf of the defendants.

14    **MS. DANIEL:**  Your Honor, this morning, for CMO 6

15  cases, there are 90 cases listed.  We will go generally in

16  order, as No. 12 in the joint agenda states, so we can stick to

17  some order for the Court.

18       The first, Document 12020, is the case of

19  *Lee Robert* that is being heard to address the deficiencies in

20  the fact sheet pursuant to CMO 6.  This case was previously

21  heard on November 19 and is being heard again today.

22  Mr. McGartland is on the line, Your Honor, to address the Court

23  in this matter.

24       Mike, did you want to go ahead now?

25    **MR. MCGARTLAND:**  Yes.  Good morning, Your Honor.

09:23

1    **THE COURT:**  Good morning.

2    **MR. MCGARTLAND:**  Per the Court's admonition on the

3  19th of November, we reached out via telephone again and left

4  voice messages for the client and his daughter, no return of

5  those voice messages.

6    We went and took the extra effort of sending out

7  Federal Express overnight letters to both the client and to the

8  daughter.  On December 11, 2018, the client's packet was

9  returned undeliverable.  The daughter received her packet, but

10  we have since that time still not heard back from the client or

11  his daughter.  With that, Your Honor, we would defer to you as

12  to how you want to proceed.

13    **THE COURT:**  Yes.  Well, you have done everything you

14  can, Mike.  In fact, you have gone above and beyond what's

15  required by ethics and professionalism.  You need to know the

16  Court appreciates that.  Notwithstanding that, the client

17  doesn't respond; the client doesn't want to proceed.  It's

18  their case.  They have a right not to proceed.  If they decide

19  not to proceed, that's fine.

20    It's obvious to me that they decided not to

21  proceed.  They won't respond to their lawyer.  Notwithstanding

22  the Herculean efforts of the lawyer in this case, I will

23  dismiss the case with prejudice.

24    **MS. DANIEL:**  Thank you, Your Honor.

25    **THE COURT:**  Thank you, Mike, for your help.

09:25

1          **MR. MCGARTLAND:**  Thank you, Your Honor.

2          **MS. DANIEL:**  The next is Document 12025.  There were

3    66 cases listed on this document, Your Honor, for order to show

4    cause regarding plaintiffs who have allegedly failed to serve a

5    fully complete, updated plaintiff fact sheet pursuant to CMO 6.

6              The first case, *Raymond Rogers*, is being removed

7    from Wave 2 with consent of the defendant.

8          **MS. MILLER:**  That's correct, Your Honor.

9          **MS. DANIEL:**  The next 26 cases are cured.  They are*:*

10             *Janice Anderson*, *Michael Blankenship*, *Cindy*

11   *Cain*, *William Carl*, *Roger Colvin*, *Darrell Condry*, *Louis Csoka*,

12   *Charles Dennis*, *Joann Deunger*, *Arthur Edwardson*, *Birder Hunt*,

13   *William Martin*, *Sara Mongan*, *Glenn Newsom*, *Jimmie Ross*, *Randall*

14   *Roush*, *Joline Rutkowski*, *David Schwartz*, *Annie Seward*, *Loretta*

15   *Shepherd*, *Robert Sladick*, *Billy Lou Sturgill*, *James Watson*,

16   *Kimberly West*, *Rosemary Wilkinson*, and *Sally Wilson*.

17         **THE COURT:**  Those cases are cured, and we can remove

18   them from the list.  Is that it?

19         **MS. DANIEL:**  Yes, your Honor.

20         **MS. MILLER:**  Your Honor, we are just conferring on

21   one more potential cure.

22         **THE COURT:**  Okay.

23         **MS. MILLER:**  Sorry.  The one additional case that's

24   cured is *Robert George*.

25         **MS. DANIEL:**  Your Honor, the next 13 cases, counsel

09:26   1   has either already dismissed the case with prejudice or has

2   agreed to a stipulation of dismissal with prejudice.  They are*:*

3   *Raymond Blakely*, *Doris Coleman*, *Judith Deustch*,

4   *Harry Griggs*, *Junior Haller*, *Philip Hasselquist*, *Douglas Koch*,

5   *Georgie Martin*, *Annette Powell*, *Aurora Saldivar*, *Ola Virga*,

6   *Sonja Walcott*, and *Patty Wilson*.

7   I think Susan Sharko stated *Annette Powell*,

8   during the regular CMC, that that case is resolved.  The client

9   has now agreed to a dismissal, so it will be dismissed.

10   **MS. MILLER:**  There are four additional cases

11   defendants learned last night on that list that will be

12   dismissed.  That's *Billie Mills*, *Bettie Ferguson*, *Fannie*

13   *Watkins*, and *Jimmy Martin*.

14   **THE COURT:**  Let those cases be dismissed.

15   **MS. DANIEL:**  Thank you, Your Honor.

16   For the next 22 cases, Your Honor, although the

17   firms have been diligent and made all best efforts to cure the

18   deficiencies, through no fault of their own the following cases

19   have been unable to be remedied.  There may be some overlap

20   with what Chanda just said here.  They are:

21   *Cecelia Baird*, *Bernardo Diaz-Maldonado*, Anthony

22   *Dichiaro*, *Bettie Ferguson*, *Mattie Hall*, *Renee Hampshire*,

23   *John Hatten*, *Jerry Hunt*, *Lacy Johnson*, *Kathleen Marie Kaylor*,

24   *William Lyons*, *Grace Mallette*, *Cynthia Messina*, *David Michael*,

25   *Billie Mills*, *Mira Moshchinsky*, *William Parkins*, *Paul Rose*,

1   *Richard Strand*, *Virginia Wanat*, *Fannie Watkins*, *John Wilson*,

2   and *Ronald Wright*.

3           Your Honor, on the next three cases, they would

4   like to be heard by the Court.  The first one will be

5   *Jimmy Martin*.  The law firm is Kirkendall Dwyer.

6           Is anyone on the phone with this law firm for

7   Jimmy Martin?

8           **MS. MCNABB:**  Candice McNabb representing the

9   plaintiff.

10          We have been in contact with them.  We have been

11  sending letters.  Initially, he wanted the case dismissed.

12  Then as of two days ago, they decided that they did not want

13  their case dismissed but wanted to find another attorney, so we

14  were going to ask for an extension.

15          **THE COURT:**  What's the reason?  They want a new

16  attorney, is that it?

17          **MS. MCNABB:**  That's it, yes.  They wanted to just

18  dismiss for weeks, and then all of a sudden not dismiss but

19  just wanted another law firm.

20          **MS. MILLER:**  Your Honor, this is a defense pick.  The

21  case has been pending since 2016, and then it was a defense

22  pick into the pool last September.  The plaintiff fact sheet

23  was due in October.  We were told on January 22 -- so yesterday

24  we thought the case was going to be dismissed.  We are now

25  months overdue for a plaintiff fact sheet.  The case is set for

09:29   1   dismissal today.

2          **MS. DANIEL:**  Your Honor, if we could give them

3   10 days to find additional counsel; and, if not, the case will

4   likely be dismissed because they would have to make a motion to

5   withdraw as counsel.

6          **THE COURT:**  I will do that.  I'm going to dismiss the

7   case in 10 days if I don't hear from anybody.

8          **MS. MCNABB:**  Okay.  Thank you.

9          **MS. DANIEL:**  Thank you, Your Honor.

10         **MS. MILLER:**  Thank you, Your Honor.

11         **MS. DANIEL:**  The next case is *Carol Anglin Beckford*,

12   Your Honor.  This is a Simmons Hanly Conroy case.  Counsel

13   filed a motion to withdraw September 25, 2018.  Plaintiff has

14   discharged counsel and fails to communicate.  That was stated

15   in the response.  They wanted the Court to grant the motion to

16   withdraw and allow the client to proceed pro se or allow her to

17   find additional counsel.

18              Is anyone on the line who would like to state

19   anything more?

20              So, Your Honor, the client has discharged them

21   anyway and fails to communicate.  The client is aware of the

22   hearing.  Your Honor, I think they would like you to do what

23   you need to do.

24         **THE COURT:**  I'm going to dismiss the case with

25   prejudice.

09:31

1          **MS. MILLER:**  Thank you, Your Honor.

2          **MS. DANIEL:**  Thank you, Your Honor.

3                The next case is *Daniel Barney*, Chaffin Luhana.

4     Counsel filed a response and stated that the client is now

5     deceased.  I think someone from their law firm is on the line.

6                Roopal, are you on the line?

7          **MS. LUHANA:**  I am.

8                Good morning, Your Honor.  Roopal Luhana for the

9     plaintiff, Daniel Barney.

10         **THE COURT:**  All right.  What's the problem?

11         **MS. LUHANA:**  As our motion to withdraw details, our

12    client, Daniel Barney, died a couple years after we filed his

13    *Xarelto* case.  We learned of this in January 2018.  We located

14    his next of kin.  We have made all reasonable efforts to

15    contact him, but we have been unable to get him to commit to

16    take action.  We have done all we can here.  We request that

17    the Court allow us to withdraw and give the next of kin about

18    120 days to appear and comply with discovery.

19         **MS. MILLER:**  Your Honor, the case was filed in 2015.

20    It sounds to us like the plaintiff passed away in 2017.  I

21    understand that current counsel has been communicating and that

22    the family is aware of the deadlines.  This was a random

23    selection into Wave 2, so the PFS was due in early November.

24    At this point discovery is stalled without the PFS.

25         **THE COURT:**  I think current counsel has done

09:32

1    everything they possibly can do in the situation.  They have

2    satisfied not only ethics and professionalism, but they have

3    gone above and beyond the call of duty.  They have done

4    everything they possibly can.  Notwithstanding their efforts,

5    the next of kin has not done anything.  I'm going to dismiss

6    the case with prejudice.

7                    Thank you very much for your help.

8            **MS. DANIEL:**  Thank you, Your Honor.

9            **MS. MILLER:**  Thank you, Your Honor.

10           **MS. DANIEL:**  The next 23 cases, Your Honor, were

11   individual documents that were filed for individual cases,

12   Documents 12026, 12028, 12029, 12294, 12297, 12298, and I will

13   read them by name.  *Fred Haney*, *David Alejandro*, *Edith Daniel*,

14   *Mary Fay Harkins*, *Leonard Snoddy*, and *Howard Owens* are all

15   cured.

16                   The next four cases, Your Honor, they have

17   already been dismissed or will stipulate to a dismissal.  They

18   are *James Billiot*, *Linda Lynch*, *Brad Osborn on Behalf of the*

19   *Estate of Donald Osborn*, and *Patricia Williams on Behalf of the*

20   *Estate of Charles Williams*.

21                   The next cases, Your Honor, through no fault of

22   their own and per counsel's filed responses, counsel has done

23   everything in their power to cure these fact sheets but have

24   been unable to remedy and unable to cure pursuant to CMO 6.

25   They have no basis to oppose the motions.  They are *Jimmy*

09:33

1    *Strickland*, *Jerry Cooney*, *Raymond Mitchell*, *Gregory Clowers*,

2    *Lonzo Brown*, and *Roy Johannessen*.

3         **THE COURT:**  We will dismiss those with prejudice.

4         **MS. MILLER:**  Yes, Your Honor.  We appreciate their

5    cooperation in working with us.

6         **MS. DANIEL:**  Thank you, Your Honor.

7         The next case is *Reuben Cox*, Your Honor.  I

8    think last month Laura Lumaghi was on the line, but we couldn't

9    hear her in the court.  She is here, Your Honor, to discuss her

10   case.

11        **MS. LUMAGHI:**  Good morning, Your Honor.  Yes, there

12   was something wrong with my phone because I could hear you; but

13   when I went to unmute it, no one could hear me.

14        Mr. Cox is a Wave 1 defense pick.  When we

15   called to let him know, we found out he had had a massive

16   stroke.  We have had some issues, you know, deciding because he

17   was on hospice, but we have gone ahead and gotten an attorney

18   in Suffolk County, Virginia, who has filed a petition for

19   guardianship.  It's set for hearing next Tuesday, so we are

20   just requesting 60 days.  Hopefully we will have that order --

21        **THE COURT:**  I'll give you that.  Let's pass it for

22   60 days.

23        **MS. MILLER:**  It could be passed to the March hearing,

24   if that would be fine.  If we could ask for an update on the

25   30th as to what happened, I think --

 1          **MS. LUMAGHI:**  January?

 2          **MS. MILLER:**  January 30, if you could update us as to

 3   what happened at the hearing on the 29th, and then we could set

 4   the case for --

 5          **THE COURT:**  Sure.  We will pass it until March.

 6          **MS. MILLER:**  Thank you, Your Honor.

 7          **MS. LUHANA:**  Thank you.

 8          **MS. DANIEL:**  Thank you, Your Honor.

 9          The next case is *Piper Legrand*, Document 12190.

10          Chris Pinedo, are you on the line?

11          **MR. PINEDO:**  Yes.  Chris Pinedo here for the

12   plaintiff, Your Honor.

13          **THE COURT:**  Hello, Chris.

14          **MS. DANIEL:**  Go ahead, Chris.

15          **MR. PINEDO:**  The aspect of this particular case is

16   that the plaintiff, Piper Legrand, had passed away, and this

17   was heard by the Court in November.  I had told the Court that

18   we were searching for probate counsel to get the daughter,

19   Vickie McDonald, named as representative of the estate.

20          That did happen.  Orders were issued on

21   December 18, and we have uploaded those to MDL Centrality, as

22   well as on January 11 we filed a motion to substitute Vickie

23   McDonald, the daughter of Piper Legrand, as the plaintiff in a

24   representative capacity.  That was done.  We have also uploaded

25   authorizations, HIPAA and Medicare, and an updated fact sheet

09:36

1    verified by Vickie McDonald as representative of the estate.

2    So it's my position that we have taken care of the deficiencies

3    referenced by defendant.

4         **MS. MILLER:**  Your Honor, if I could just speak to

5    that matter.

6         **THE COURT:**  Yes.  Sure.

7         **MS. MILLER:**  We did see that a motion to substitute

8    was filed on January 11.  It was filed as a consent motion that

9    defendants had consented to.  We, unfortunately, weren't given

10   notice and didn't have the opportunity to actually evaluate

11   whether we were going to be consenting before it was filed as a

12   consent motion.  We have subsequently reviewed it and do

13   consent.

14        In terms of the PFS and the HIPAA

15   authorizations, the authorizations were uploaded very late last

16   night.  We haven't had the opportunity to evaluate all of them.

17   There were 12 providers that we were not able to order records

18   from because of the outstanding authorizations.  We do want the

19   opportunity to look and make sure that all of those were cured

20   before we agree that the case can proceed.  I would suggest

21   maybe 10 days to report in to the Court and work with counsel

22   to obtain any additional authorizations that weren't submitted

23   last night.

24        **THE COURT:**  In any event, I will pass this one,

25   Chris.  I'm not going to dismiss it.  Get with counsel and see

09:37  1    if there's any problem.  If there is, then I will talk about it
2    at the next meeting.  We will pass this to the next meeting and
3    see what the situation is.
4                    MS. MILLER:  Thank you.
5                    MS. DANIEL:  Thank you, Your Honor.
6                    MR. PINEDO:  Yes, Your Honor.  Could I just have
7    identification of the specific counsel I need to confirm that
8    with?
9                    THE COURT:  Yes.
10                    MS. MILLER:  Chris, this is Chanda Miller.  You can
11    confer with me.
12                    MR. PINEDO:  Thank you, Chanda.
13                    MS. DANIEL:  Your Honor, the next two cases,
14    *Shemeca Rhinehart* and *Peggy Gorman*, *Surviving Sibling of*
15    *Richard Brent*, they received a further deficiency on January 22
16    from MDL Centrality, so they have not had an opportunity to
17    submit an uploaded amended declaration.  We would request
18    10 days to let them upload the additional declaration.
19                    MS. MILLER:  Your Honor, what had happened there was
20    we filed the motion.  In response to the motion, they submitted
21    a PFS that cured only part of the deficiencies.  Yesterday they
22    submitted a PFS that cured the rest.  We have agreed to 10 days
23    to get a new declaration verifying the PFS submitted yesterday.
24                    THE COURT:  That's fine.  Let's do it that way.
25                    MS. MILLER:  It's a very similar situation with the

09:38

1   *Brent* case.

2           **MS. DANIEL:**  Right.  Just for Your Honor's

3   understanding, these motions were actually filed much later.  I

4   think they were only filed about 15 days ago.  They are trying

5   to cure those.

6           **THE COURT:**  Okay.

7           **MS. DANIEL:**  For *Doris Wallace*, Chris Quinn, are you

8   on the line to discuss this case?

9           **MR. QUINN:**  I am, Your Honor.  We actually have three

10  of these that we still want to talk to the Court about today,

11  Your Honor.  All three of those were cases that, as Ms. Daniel

12  mentioned, these motions for order to show cause were only

13  filed about two weeks ago.  This is the first time that these

14  cases have been up.

15          *Doris Wallace* is a case in which the claim

16  appears to be viable based upon the documentation that we

17  submitted several years ago.  Ms. Wallace had passed away.

18  After ascertaining that, we late last year and early this year

19  submitted the death certificate, next of kin medical record

20  authorization forms, a probate affidavit, and other documents

21  that we were hopeful would allow defense to obtain medical

22  records.  The bottom line is since this motion was filed two

23  weeks ago, we have been unable to communicate with the client's

24  family ascertaining the status of any estate and figure out

25  what they are willing to do.

09:40

1    We believe we have cured the issues with the
2    PFS, but we have not had the opportunity to communicate with
3    the family and figure out where estate plans are, what's going
4    on, should we need to file some sort of motion to substitute
5    parties or something along these lines.
6    The bottom line is I think the PFS issues are
7    resolved.  We have done what we have to produce next of kin
8    affidavits and authorizations signed by the widower to allow
9    defendants to attempt to obtain medical records, but we are not
10   in a position to file any kind of motion for leave to
11   substitute parties at this point.
12   **MS. MILLER:**  Your Honor, if I could just clarify the
13   timeline a little bit.
14   **THE COURT:**  Okay.  Sure.
15   **MS. MILLER:**  Ms. Wallace passed away on September 3,
16   2015.  Then eight months after her passing, a complaint was
17   filed naming her as the plaintiff.  Then three years later, in
18   the fall of 2018 -- so three years after her passing -- is when
19   the case was selected for workup.  It's a plaintiff selection
20   into the Wave 2 pool.
21   In terms of notice, they have been on notice of
22   the death for three years.  The issues that were raised in the
23   motion were raised earlier, including in a letter sent on
24   November 18.
25   At this point in time, there's no plaintiff who

 1   is proceeding with the case.  We don't have all of the answers

 2   in the plaintiff fact sheet.  We understand that the deadlines

 3   will all be tolled, but we would like, given the long passage

 4   of time, some resolution by March.

 5           THE COURT:  Yes.  I will pass it till March.  If it's

 6   not resolved by then, I'm going to have to dismiss it.  This

 7   has been going on too long.  It seems like the case was filed

 8   after the person became deceased.

 9           MS. MILLER:  Yes.

10           MR. QUINN:  I understand, Your Honor.  Obviously, we

11   didn't learn until subsequently of some of these facts, and

12   when we sorted this stuff out -- we have done, again,

13   everything we can to try to make sure that they are in a

14   position to get medical records and that sort of thing as we

15   try to sort this out.

16           THE COURT:  All right.  I will pass it until the next

17   conference.  If it's not resolved, we are going to have to

18   dismiss the case, Chris.

19           MR. QUINN:  I understand.

20           MS. DANIEL:  Chris, did you want to discuss

21   *Dorothy Lamar* and *Jacqueline Matthews* as well?  They are the

22   last two cases.

23           MR. QUINN:  If counsel and the Court want to take

24   those up right now, I would be happy to.

25           THE COURT:  Sure.  Yes, let's do that.

09:42

1     **MS. MILLER:** That's fine.

2     **MR. QUINN:** So *Dorothy Lamar*, Your Honor, this again

3 appears to be -- to be clear, some of the cases that were

4 dismissed today without counsel appearing to object were our

5 files. When we exhaust all efforts to try to resolve these

6 things, obviously we don't continue to try to burden the Court

7 and counsel with discussing these.

8     This case, again, this is one of these the

9 motion was filed about 15 days ago. The claim appears

10 meritorious based upon the medical documentation that was

11 submitted. Unfortunately, since this case was selected, we

12 have been completely unable to contact Ms. Lamar by phone,

13 mail, or any other means. Because the case appears viable and

14 because we simply have been unable to contact this client, we

15 would ask that the Court give us a little bit additional time

16 to attempt to do so.

17     **THE COURT:** How do you see it, Chanda?

18     **MS. MILLER:** Well, Your Honor, this was a defense

19 pick into the CMO 6 Wave 2 pool. The plaintiff fact sheet was

20 due on October 17. We have received a partially completed fact

21 sheet, which I understand was completed by counsel, not the

22 plaintiff herself. At this point they have had three to four

23 months. If she is not responsive, it sounds to me like they

24 have done everything they can. They can't find her and are not

25 able to find someone who wants to proceed with the case, so it

09:43 1    should be dismissed.

2              **THE COURT:**  Do you want to respond, Chris?

3              **MR. QUINN:**  Again, Judge, we try to pick our battles.

4    This is a case in which only relatively recently have we had

5    issues trying to communicate.  Again, the claim appears viable.

6    We haven't been able to find any kind of obituary or something

7    like that that suggests that Ms. Lamar has passed, which

8    unfortunately happens with some of these cases.

9              We have been trying by phone and letter,

10   particularly in the last two weeks since this motion has been

11   filed, to communicate with this client.  We just haven't been

12   able to.  Under those circumstances because the Court -- and I

13   understand the reasons, but because the Court dismisses these

14   cases with prejudice, I feel obligated to ask the Court for

15   additional time.

16             Those cases that came up on the docket in

17   December -- and we were granted additional time, of course --

18   we didn't appear to oppose dismissal this time when we were

19   unable to reach those clients, but that's not quite the

20   situation with this case.  Under these circumstances, I just

21   think it's fair to ask the Court for a bit more time to try to

22   locate a person who appears to have a viable case.

23             **MS. MILLER:**  Your Honor, if I could just clarify the

24   timeline.  CMO 6 was entered last year setting the deadlines.

25   The PFS was due on October 17.  We sent counsel a notice on

09:45   1   October 18 of the issues.  This isn't a matter of only having

2   two weeks.  I understand the Court is going to do what the

3   Court wants to do, but I just want to clarify the timeline

4   here.

5               **THE COURT:**  What's the other case, Chris?

6               **MR. QUINN:**  The last case is *Jacqueline Matthews*,

7   Your Honor.  For the record, suffice it to say we have not been

8   just trying to contact these clients for the last two weeks.  I

9   want to make sure the Court understands that.

10                   *Jacqueline* Matthews, this was a case that we

11   learned late last year that the address we had on this file for

12   this client was no longer accurate and she had relocated.

13   Since we learned that, we have been attempting to get the PFS

14   materials back in.  I do not have authority to stipulate to

15   dismiss this case.

16                   We have tried multiple times to get the

17   materials back.  There was a phone call with the client in

18   December in which we learned that for some reason materials

19   hadn't been received.  We understand that as of Friday, the

20   18th, the materials were supposed to have been overnighted back

21   to us.  We have not received those yet.

22                   Under the circumstances, with my understanding

23   that materials have been recently mailed to us and that the

24   client had relocated and we were unable to reach her until late

25   last year, this is another case in which we would ask the Court

09:46

1   for additional time to try to sort this out.  We understand, of

2   course, that if we get additional time and aren't able to sort

3   this out that the Court will rule the way the Court will rule,

4   but under these circumstances we would ask for a bit more time.

5           **THE COURT:**  In the last two cases that you talked to

6   me about, I will pass it to the next time.  If it's not given

7   by that time, I'm going to dismiss the case with prejudice,

8   both of them.

9           **MR. QUINN:**  I understand, Your Honor.

10          **MS. DANIEL:**  Thank you, Your Honor.

11          **MS. MILLER:**  Thank you, Your Honor.

12          **MS. DANIEL:**  Now we go, Your Honor, to the non-CMO 6

13  cases, and there were 28 cases listed on Document 12286.

14          Your Honor, the first case is *Jennifer Christie*.

15  She is a pro se plaintiff, Your Honor, that Susan Sharko

16  mentioned.  We will carry that, with defendants' consent, to

17  the next hearing.  We are trying to help her upload this into

18  MDL Centrality, if she chooses, but obviously there are other

19  documents she will have to upload as well.  We will pass that.

20          The next three cases, Your Honor, are cured.

21  The are Terrance Carrington, *Darryl Posey*, and *Jeannine*

22  *Valantiejus*.

23          The next case, *Nellie Harden*, Your Honor, the

24  defendant agreed to an extension on that matter.

25          **MS. MILLER:**  On the *Harden* matter, counsel explained

09:47

1    that the records that were outstanding were unfortunately lost

2    in the Federal Express system.  We understand they are on their

3    way a second time and agree to carry that one.

4         MS. DANIEL:  The next case, Your Honor, was already

5    dismissed.  It's *Glenn Cooper*.

6              For the next 19 cases, Your Honor, although the

7    firms have been diligent and made all best efforts to cure the

8    deficiencies, through no fault of their own the following cases

9    have been unable to be remedied.  They are:

10             *Mary Brennan*, *Robert Collins*, *Victor Deeb*,

11   *Virginia Durden*, *Leon Freeman*, *Forough Gadim*, *Timothy Helton*,

12   *Stephen Holland*, *Andrew Lewis*, *Nancy Mitchell*, *Kristi Moreno*,

13   *Jamie Royal*, *Willie Sherman*, *Richard Tavernia*, *Robert Taxacher*,

14   *Louis Thompson*, *Anthony Turner*, *Wilneisha Walton*, and *Georgine*

15   *Williams*.

16             The last three cases, Your Honor --

17        THE COURT:  Let those others be dismissed.

18        MS. DANIEL:  Oh, I'm sorry.  Thank you, Your Honor.

19             The last three cases, Your Honor, counsel would

20   like to address the Court.  They are *Loretha Bohannan* and

21   *Dorothy Reese*.  They are with the same firm.

22             Is anyone on for the Stern law firm?

23        MS. MILLER:  Your Honor, this is a case where the PFS

24   was due in August.  The motions were filed in the case in

25   October.  Because of the hybrid switching from the old process

09:49

1    to this process, this case was heard at the November hearing

2    and given an extension.

3              **THE COURT:**  Is that the *Bohannan* case?

4              **MS. DANIEL:**  Yes.

5              **MS. MILLER:**  Yes, that's the *Bohannan*.

6              **MS. DANIEL:**  Yes, *Loretha Bohannan* and *Dorothy Reese*,

7    Your Honor.  In *Loretha Bohannan*, I emailed this firm and have

8    been in constant contact with them.  They have actually placed

9    an ad in the newspaper to locate this client that I have

10   actually seen.  They sent it to me.  On *Dorothy Reese*, they are

11   getting letters of administration on this matter.

12             Your Honor, we would ask that they be given some

13   additional time to try to figure this out just because this is

14   the first time.  This is a new process.  Everybody is getting

15   used to it.  So we would ask for this time that they be allowed

16   to pass to at least the next hearing.  For letters of

17   administration, I know it is always difficult.

18             **MS. MILLER:**  If we could take these one at a time,

19   Your Honor.  The *Bohannan* case, it sounds like they have really

20   gone above and beyond.

21             **THE COURT:**  Yes.

22             **MS. MILLER:**  This isn't actually the first time the

23   *Bohannan* case has been up.  It was before the Court in a

24   hearing in November.  It sounds like they have done all they

25   can, and the plaintiff is not responding.

09:50

1    **THE COURT:**  I think that's right.  *Bohannan* I will

2    dismiss with prejudice.  We will pass the *Reese* case.

3    **MS. MILLER:**  For *Reese*, too, so the record is clear,

4    we have no records showing that the plaintiff -- in addition to

5    letters of administration, we have no records showing that

6    Dorothy Reese took Xarelto and no records showing that there

7    was any alleged bleeding event or injury associated with any

8    use of the medication.

9    **THE COURT:**  I will pass the *Reese* case.  If that's

10   not clarified by next time, we will dismiss that with

11   prejudice.

12   **MS. DANIEL:**  Your Honor, the last case is

13   *Dennis Walguarnery*.

14          Is anyone on for the law office of Christopher

15   Johnston?  Is anyone on the line?

16   **MS. MILLER:**  Your Honor, like the other two cases,

17   this is one where the plaintiff fact sheet was due in 2018.

18   This one was actually due July of 2018.  The motion was filed

19   in October.  Because of the conversion from the old process to

20   this process, this case was, in fact, heard in November at the

21   November show cause hearing.  Your Honor agreed to give them an

22   extension of time.  It was then listed in December and now is

23   set today again for hearing.  Given the passage of time and the

24   fact that the plaintiff hasn't submitted the information, I

25   think it should be dismissed with prejudice.

09:51

1          **MS. DANIEL:**  Your Honor, it's your decision.

2    Obviously, we have nothing further to add.

3          **THE COURT:**  We will dismiss it with prejudice.

4          **MS. DANIEL:**  Thank you, Your Honor.

5          **MS. MILLER:**  Thank you.

6          **THE COURT:**  Is that it?

7          **MS. DANIEL:**  That's it.  We will see you in March.

8          **MS. MILLER:**  Thank you, Your Honor.

9          **THE COURT:**  See you next time.

10          **MR. MEUNIER:**  Thank you, Judge.

11          **THE COURT:**  Thanks.

12          (Proceedings adjourned.)

13                          * * *

14                    <u>**CERTIFICATE**</u>

15          I, Toni Doyle Tusa, CCR, FCRR, Official Court

16    Reporter for the United States District Court, Eastern District

17    of Louisiana, certify that the foregoing is a true and correct

18    transcript, to the best of my ability and understanding, from

19    the record of proceedings in the above-entitled matter.

20

21

22                          <u>*/s/ Toni Doyle Tusa*</u>
                          Toni Doyle Tusa, CCR, FCRR
23                          Official Court Reporter

24

25