**EXHIBIT 4**

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| FLORENCE R. FURCHAK, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No. 1:15-cv-00778-RGA |
| | ) |
| JANSSEN RESEARCH & DEVELOPMENT, | )   JURY TRIAL DEMANDED |
| LLC F/K/A JOHNSON AND JOHNSON | ) |
| PHARMACEUTICAL RESEARCH AND | ) |
| DEVELOPMENT, LLC, JANSSEN | ) |
| PHARMACEUTICALS, INC. | ) |
| F/K/A JANSSEN PHARMACEUTICA INC. | ) |
| F/K/A ORTHO-MCNEIL-JANSSEN | ) |
| PHARMACEUTICALS, INC., | ) |
| JANSSEN ORTHO, LLC, | ) |
| JOHNSON & JOHNSON, | ) |
| JOHNSON & JOHNSON COMPANY, | ) |
| BAYER HEALTHCARE | ) |
| PHARMACEUTICALS, INC., | ) |
| BAYER CORPORATION, | ) |
| BAYER HEALTHCARE LLC, | ) |
| BAYER PHARMA AG, | ) |
| BAYER HEALTHCARE AG, BAYER AG, | ) |
| AND DOES, INC. | ) |
| | ) |
|     Defendants. | ) |

## ANSWER AND ADDITIONAL DEFENSES OF DEFENDANT BAYER HEALTHCARE PHARMACEUTICALS INC. TO PLAINTIFF'S COMPLAINT

Defendant Bayer HealthCare Pharmaceuticals Inc. ("BHCP") serves its Answer and Additional Defenses to Plaintiff's Complaint (the "Complaint") and states as follows:

ANSWER TO
COMMON ALLEGATIONS

1.      BHCP lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 1, and therefore the allegations in paragraph 1 are denied.

1

2.      The allegations in paragraph 2 are not directed to BHCP, and therefore no response is required.

3.      The allegations in paragraph 3 are not directed to BHCP, and therefore no response is required.

4.      The allegations in paragraph 4 are not directed to BHCP, and therefore no response is required.

5.      The allegations in paragraph 5 are not directed to BHCP, and therefore no response is required.

6.      The allegations in paragraph 6 are not directed to BHCP, and therefore no response is required.

7.      The allegations in paragraph 7 are not directed to BHCP, and therefore no response is required.

8.      The allegations in paragraph 8 are not directed to BHCP, and therefore no response is required.

9.      BHCP admits that BHCP is a Delaware corporation with its principal place of business in New Jersey. BHCP admits that BHCP's registered agent for service of process in the state of Delaware is Corporation Service Company. BHCP admits that BHCP had some involvement in certain aspects of the research and development of Xarelto®. BHCP further admits that BHCP had limited involvement in promoting Xarelto® to a certain limited number of United States healthcare professionals, and denies that BHCP otherwise marketed or promoted Xarelto®. BHCP denies that BHCP sold Xarelto®. BHCP denies the allegations in paragraph 9 to the extent not specifically admitted.

10. BHCP admits that BHCP had some involvement in certain aspects of the research and testing of Xarelto®. BHCP further admits that BHCP had limited involvement in promoting Xarelto® to a certain limited number of United States healthcare professionals, and denies that BHCP otherwise marketed or promoted Xarelto®. BHCP denies that BHCP designed, manufactured, advertised, sold or distributed Xarelto®. BHCP admits that Xarelto® is a factor Xa inhibitor indicated to reduce the risk of stroke and systemic embolism in patients with nonvalvular atrial fibrillation; for the treatment of deep vein thrombosis ("DVT"), pulmonary embolism ("PE"), and for the reduction in the risk of recurrence of DVT and of PE; and for the prophylaxis of DVT, which may lead to PE in patients undergoing knee or hip replacement surgery. BHCP denies the allegations in paragraph 10 to the extent not specifically admitted.

11. The allegations contained in paragraph 11 are not directed at BHCP, and therefore do not require a response of BHCP. To the extent a response is deemed required, BHCP admits that Bayer Pharma AG is a German company with its principal place of business in Germany. BHCP admits that Bayer Pharma AG is a pharmaceutical company. BHCP admits that Bayer Pharma AG was formerly known as Bayer Schering Pharma AG, which was formerly known as Schering AG, and that Bayer Pharma AG is the same corporate entity as Bayer Schering Pharma AG and Schering AG. BHCP admits that Schering AG was renamed Bayer Schering Pharma AG effective December 29, 2006. BHCP admits that Bayer Schering Pharma AG was renamed Bayer Pharma AG effective July 1, 2011. BHCP admits that Bayer Pharma AG participated in the research and development of Xarelto®. BHCP denies that Bayer Pharma AG sold or marketed Xarelto® in the United States. BHCP denies the allegations in paragraph 11 to the extent not specifically admitted.

12.     The allegations contained in paragraph 12 are not directed at BHCP, and therefore do not require a response of BHCP.  To the extent a response is deemed required, BHCP admits that Bayer Pharma AG participated in the design, research and testing of Xarelto®.  BHCP denies that Bayer Pharma AG advertised, promoted, marketed, sold or distributed Xarelto® in the United States.  BHCP admits that Bayer Pharma AG manufactured the active pharmaceutical ingredient in Xarelto®, but denies that Bayer Pharma AG manufactured finished product of Xarelto®, which was distributed in the United States.  BHCP admits that Xarelto® is a factor Xa inhibitor indicated in the United States to reduce the risk of stroke and systemic embolism in patients with nonvalvular atrial fibrillation; for the treatment of DVT, PE, and for the reduction in the risk of recurrence of DVT and of PE; and for the prophylaxis of DVT, which may lead to PE in patients undergoing knee or hip replacement surgery.  BHCP denies the allegations in paragraph 12 to the extent not specifically admitted.

13.     The allegations contained in paragraph 13 are not directed at BHCP, and therefore do not require a response of BHCP.  To the extent a response is deemed required, BHCP admits that Bayer Corporation is an Indiana corporation with its principal place of business at 100 Bayer Road, Pittsburgh, Pennsylvania 15205.  BHCP admits that Bayer Corporation's registered agent for service of process in the state of Delaware is Corporation Service Company.  BHCP denies the allegations in paragraph 13 to the extent not specifically admitted.

14.     The allegations contained in paragraph 14 are not directed at BHCP, and therefore do not require a response of BHCP.  To the extent a response is deemed required, BHCP admits that all of the issued and outstanding shares of common stock of BHCP are owned by Schering Berlin Inc., that Schering Berlin Inc. is wholly owned by Bayer HealthCare Holdings LLC and

4

Case 2:14-md-02592-EEF-MBN Document 13480-6 Filed 02/05/19 Page 6 of 113

that the sole member of Bayer HealthCare Holdings LLC is Bayer Corporation. BHCP denies the allegations in paragraph 14 to the extent not specifically admitted.

15. The allegations contained in paragraph 15 are not directed at BHCP, and therefore do not require a response of BHCP. To the extent a response is deemed required, BHCP states that since January 1, 2003, Bayer Corporation has been a holding company that does not conduct operations. BHCP further states that before January 1, 2003, Bayer Corporation conducted operations through divisions. BHCP denies that Bayer Corporation researched, developed, designed, licensed, manufactured, distributed, sold or marketed Xarelto®, except that BHCP admits that a former division of Bayer Corporation, as it was configured before January 1, 2003, participated in the early development of Xarelto®. For a further response, BHCP states that relevant documentation regarding work relating to Xarelto® of such former division is now held by BHCP. BHCP denies the allegations in paragraph 15 to the extent not specifically admitted.

16. The allegations contained in paragraph 16 are not directed at BHCP, and therefore do not require a response of BHCP. To the extent a response is deemed required, BHCP admits that Bayer HealthCare LLC is a limited liability company formed in Delaware and that Bayer HealthCare LLC's principal place of business is in New Jersey. BHCP admits that Bayer HealthCare LLC's registered agent for service of process in the state of Delaware is Corporation Service Company. BHCP denies the allegations in paragraph 16 to the extent not specifically admitted.

17. The allegations contained in paragraph 17 are not directed at BHCP, and therefore do not require a response of BHCP. To the extent a response is deemed required, BHCP denies that Bayer HealthCare LLC designed, researched, manufactured, tested, advertised, promoted, marketed, sold or distributed Xarelto®, and denies the remaining allegations in paragraph 17.

Case 1:15-cv-00278-RGA   Document 15   Filed 10/22/15   Page 7 of 113 PageID #: 238

18.     The allegations contained in paragraph 18 are not directed at BHCP, and therefore do not require a response of BHCP.  To the extent a response is deemed required, BHCP admits that Bayer HealthCare AG has its principal place of business in Germany.  BHCP denies the allegations in paragraph 18 to the extent not specifically admitted.

19.     The allegations contained in paragraph 19 are not directed at BHCP, and therefore do not require a response of BHCP.  To the extent a response is deemed required, BHCP denies the allegations in paragraph 19.

20.     The allegations contained in paragraph 20 are not directed at BHCP, and therefore do not require a response of BHCP.  To the extent a response is deemed required, BHCP admits that Bayer AG is a German company with its headquarters in Leverkusen, North Rhine-Westphalia, Germany.  BHCP admits that Bayer AG is a holding company and that the business areas conducted by its various direct and indirect subsidiaries include material science, crop science and healthcare, including pharmaceuticals.  BHCP denies the allegations in paragraph 20 to the extent not specifically admitted.

21.     BHCP admits that Janssen Research & Development, LLC, formerly known as Johnson and Johnson Pharmaceutical Research and Development, LLC, submitted NDA numbers 022406 and 202439 for Xarelto® to the United States Food and Drug Administration (the "FDA").   BHCP denies the allegations in paragraph 21 to the extent not specifically admitted.

22.     BHCP admits that Janssen Research & Development, LLC, formerly known as Johnson and Johnson Pharmaceutical Research and Development, LLC, submitted NDA numbers 022406 and 202439 for Xarelto® to the FDA.  BHCP denies the allegations in paragraph 22 to the extent not specifically admitted.

23.      BHCP admits that the Complaint contains allegations referring to BHCP and other entities collectively as "Defendants" or otherwise, but BHCP is not answering the Complaint on behalf of any entity other than BHCP, and is not answering allegations that are directed to any entity other than BHCP.  BHCP accordingly denies the allegations in paragraph 23.

24.      The allegations in paragraph 24 are directed to Defendants collectively.  BHCP is not answering the allegations in paragraph 24 on behalf of any entity other than BHCP.  Because of the vagueness and ambiguity of the allegations in paragraph 24, BHCP lacks knowledge or information sufficient to form a belief as to the truth of those allegations, and therefore those allegations are denied.

25.      The allegations in paragraph 25 are directed to Defendants collectively.  BHCP is not answering the allegations in paragraph 25 on behalf of any entity other than BHCP.  BHCP denies the allegations in paragraph 25.

26.      The allegations in paragraph 26 are directed to Defendants collectively.  BHCP is not answering the allegations in paragraph 26 on behalf of any entity other than BHCP.  BHCP admits that BHCP had some involvement in certain aspects of the development of Xarelto®. BHCP admits that BHCP had limited involvement in promoting Xarelto® to a certain limited number of United States healthcare professionals, and denies that BHCP otherwise marketed or promoted Xarelto®.  BHCP denies that BHCP designed, licensed, manufactured, distributed or sold Xarelto®.  BHCP denies the allegations in paragraph 26 to the extent not specifically admitted.

27.      The allegations in paragraph 27 are directed to Defendants collectively.  BHCP is not answering the allegations in paragraph 27 on behalf of any entity other than BHCP.  BHCP

admits that BHCP had limited involvement in promoting Xarelto® to a certain limited number of United States healthcare professionals, and denies that BHCP otherwise marketed or promoted Xarelto®. BHCP denies that BHCP designed, manufactured, sold or distributed Xarelto®. BHCP lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiff ingested and used Xarelto®, and that Plaintiff suffered the injuries or losses alleged, and therefore those allegations are denied. BHCP denies that any of Plaintiff's alleged injuries or losses were a result of the use of Xarelto®. BHCP denies the allegations in paragraph 27 to the extent not specifically admitted.

28. The allegations in paragraph 28 are directed to Defendants collectively. BHCP is not answering the allegations in paragraph 28 on behalf of any entity other than BHCP. BHCP admits that BHCP had some involvement in certain aspects of the research and testing of Xarelto®. BHCP admits that BHCP had limited involvement in promoting Xarelto® to a certain limited number of United States healthcare professionals, and denies that BHCP otherwise marketed or promoted Xarelto®. BHCP denies that BHCP designed, manufactured, advertised, sold or distributed Xarelto®. BHCP admits that Xarelto® is a factor Xa inhibitor indicated to reduce the risk of stroke and systemic embolism in patients with nonvalvular atrial fibrillation; for the treatment of DVT, PE, and for the reduction in the risk of recurrence of DVT and of PE; and for the prophylaxis of DVT, which may lead to PE in patients undergoing knee or hip replacement surgery. BHCP denies the allegations in paragraph 28 to the extent not specifically admitted.

29. BHCP admits that on July 1, 2011, Xarelto® was approved by the United States Food and Drug Administration (the "FDA") for the prophylaxis of DVT which may lead to PE in patients undergoing knee or hip replacement surgery. BHCP admits that Xarelto® belongs to a

class of medications sometimes referred to as new oral anticoagulants. BHCP denies the allegations in paragraph 29 to the extent not specifically admitted.

30.     BHCP lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 30 regarding products other than Xarelto®, and therefore those allegations are denied. BHCP admits that BHCP had limited involvement in promoting Xarelto® to a certain limited number of United States healthcare professionals. BHCP admits that BHCP promoted Xarelto® consistent with the FDA-approved labeling. BHCP denies that BHCP otherwise marketed or promoted Xarelto®. Because Plaintiff's allegations regarding the safety and efficacy of warfarin (also known as Coumadin®) are vague and ambiguous, BHCP lacks knowledge or information sufficient to form a belief as to the truth of those allegations, and therefore those allegations are denied. BHCP denies the allegations in paragraph 30 to the extent not specifically admitted.

31.     BHCP admits that Xarelto® is an oral anticoagulant and a factor Xa inhibitor available by prescription. BHCP further admits that Xarelto® is available in the following dosage: 20 mg tablets, 15 mg tablets, and 10 mg tablets. BHCP denies the allegations in paragraph 31 to the extent not specifically admitted.

32.     The allegations in paragraph 32 are directed to Defendants collectively. BHCP is not answering the allegations in paragraph 32 on behalf of any entity other than BHCP. BHCP admits that on July 1, 2011, Xarelto® was approved by the FDA for the prophylaxis of DVT which may lead to PE in patients undergoing knee or hip replacement surgery. BHCP denies the allegations in paragraph 32 to the extent not specifically admitted.

33.     BHCP admits that the Regulation of Coagulation in Orthopedic Surgery to Prevent Deep Venous Thrombosis and Pulmonary Embolism clinical trials (the "RECORD"

clinical trials) were conducted and involved evaluating the use of Xarelto® for the prevention of venous thromboembolism in patients undergoing total knee replacement or total hip replacement. The results of the RECORD clinical trials, in their entirety, speak for themselves. The New England Journal of Medicine and Lancet articles referenced in paragraph 33, in their entirety, speak for themselves. BHCP denies the allegations in paragraph 33 to the extent not specifically admitted.

34.     The allegations in paragraph 34 are directed to Defendants collectively. BHCP is not answering the allegations in paragraph 34 on behalf of any entity other than BHCP. BHCP admits that parts of the RECORD 1, 2 and 4 clinical trials were conducted in the United States. BHCP denies the allegations in paragraph 34 to the extent not specifically admitted.

35.     BHCP denies the allegations in paragraph 35.

36.     The allegations in paragraph 36 are directed to Defendants collectively. BHCP is not answering the allegations in paragraph 36 on behalf of any entity other than BHCP. BHCP admits that on November 4, 2011, Xarelto® was approved by the FDA to reduce the risk of stroke and systemic embolism in patients with nonvalvular atrial fibrillation. BHCP admits that the Rivaroxaban Once Daily Oral Direct Factor Xa Inhibition Compared with Vitamin K Antagonism for Prevention of Stroke and Embolism Trial in Atrial Fibrillation clinical trial (the "ROCKET AF" clinical trial) was conducted and involved evaluating the use of Xarelto® to reduce the risk of stroke and systemic embolism in patients with nonvalvular atrial fibrillation. The results of the ROCKET AF clinical trial, in their entirety, speak for themselves. BHCP denies the allegations in paragraph 36 to the extent not specifically admitted.

37.     BHCP admits that the ROCKET AF clinical trial involved evaluating the use of Xarelto® to reduce the risk of stroke and systemic embolism in patients with nonvalvular atrial

fibrillation. The results of the ROCKET AF clinical trial, in their entirety, speak for themselves. The New England Journal of Medicine article referenced in paragraph 37, in its entirety, speaks for itself. BHCP denies the allegations in paragraph 37 to the extent not specifically admitted.

38. The allegations in paragraph 38 are directed to Defendants collectively. BHCP is not answering the allegations in paragraph 38 on behalf of any entity other than BHCP. BHCP admits that the ROCKET AF clinical trial compared the safety and efficacy of once-daily oral Xarelto® with adjusted-dose oral warfarin for the prevention of stroke and systemic embolism in patients with nonvalvular atrial fibrillation. BHCP denies Plaintiff's characterization of the ROCKET AF clinical trial. BHCP denies the allegations in paragraph 38 to the extent not specifically admitted.

39. BHCP denies the allegations in paragraph 39.

40. BHCP denies the allegations in paragraph 40. BHCP affirmatively states that Plaintiff has excerpted and referenced a selected portion of an FDA Draft Briefing Document for the September 8, 2011 Meeting of the FDA's Cardiovascular and Renal Drugs Advisory Committee. The FDA Draft Briefing Document, in its entirety, speaks for itself.

41. Plaintiff attempts to excerpt a letter from Public Citizen, which is in writing and in its entirety speaks for itself. BHCP denies Plaintiff's characterization of the document and otherwise denies the allegations in paragraph 41.

42. BHCP denies the allegations in paragraph 42. BHCP affirmatively states that Plaintiff has excerpted and referenced a selected portion of an FDA Draft Briefing Document for the September 8, 2011 Meeting of the FDA's Cardiovascular and Renal Drugs Advisory Committee. The FDA Draft Briefing Document, in its entirety, speaks for itself.

43.     Plaintiff has excerpted and referenced a selected portion of the transcript of the September 8, 2011 Meeting of the FDA's Cardiovascular and Renal Drugs Advisory Committee. The transcript of the September 8, 2011 Meeting, in its entirety, speaks for itself.  BHCP denies the remaining allegations in paragraph 43.

44.     The allegations in paragraph 44 are directed to Defendants collectively.  BHCP is not answering the allegations in paragraph 44 on behalf of any entity other than BHCP.  BHCP denies the allegations in paragraph 44.  BHCP denies Plaintiff's characterization of the FDA's Summary Review, which in its entirety speaks for itself.

45.     BHCP admits that there were study sites for the ROCKET AF clinical trial in foreign countries and in the United States.  BHCP denies the allegations in paragraph 45 to the extent not specifically admitted.

46.     The allegations in paragraph 46 are directed to Defendants collectively.  BHCP is not answering the allegations in paragraph 46 on behalf of any entity other than BHCP.  BHCP admits that clinical trials involving Xarelto® have been and continue to be conducted in the United States.  Because of the vagueness and ambiguity of the remaining allegations in paragraph 46, BHCP lacks knowledge or information sufficient to form a belief as to the truth of those allegations, and therefore those allegations are denied.

47.     BHCP admits that on November 2, 2012, Xarelto® was approved by the FDA for the treatment of DVT, PE, and for the reduction in the risk of recurrence of DVT and of PE, and that the Xarelto® labeling as of November 2012 reflected information regarding the indication for the treatment of DVT, PE, and for the reduction in the risk of recurrence of DVT and PE. BHCP denies the allegations in paragraph 47 to the extent not specifically admitted.

48.     BHCP admits that the clinical trial EINSTEIN-DVT was a comparative study conducted and that involved evaluating the use of Xarelto® for the prevention of deep vein thrombosis in patients with confirmed acute symptomatic deep vein thrombosis without symptomatic pulmonary embolism.  BHCP admits that the clinical trial EINSTEIN-PE was a comparative study conducted and that involved evaluating the use of Xarelto® for the prevention of pulmonary embolism in patients with confirmed acute symptomatic pulmonary embolism with or without symptomatic deep vein thrombosis.  BHCP admits that the clinical trial EINSTEIN-Extension was a comparative study conducted and that involved evaluating the use of Xarelto® for the long term prevention of recurrent symptomatic venous thromboembolism in patients with confirmed symptomatic deep vein thrombosis or pulmonary embolism and who had received prior treatment with Xarelto® or a vitamin K antagonist before clinical trial enrollment.  The results of the EINSTEIN-DVT, EINSTEIN-PE, and EINSTEIN-Extension clinical trials, in their entirety, speak for themselves.  The New England Journal of Medicine articles referenced in paragraph 48, in their entirety, speak for themselves.  Plaintiff has cited an article entitled *Oral rivaroxaban after symptomatic venous thromboembolism: the continued treatment study*, from the Expert Review of Cardiovascular Therapy.  BHCP lacks knowledge or information sufficient to form a belief as to the truth of the accuracy of Plaintiff's characterization of that article, and therefore Plaintiff's characterization is denied.  BHCP denies the allegations in paragraph 48 to the extent not specifically admitted.

49.     The allegations in paragraph 49 are directed to Defendants collectively.  BHCP is not answering the allegations in paragraph 49 on behalf of any entity other than BHCP.  BHCP admits that BHCP promoted Xarelto® as safe for the indications approved by the FDA, when prescribed to patients by physicians in accordance with the labeling and prescribing information

13

approved by the FDA.  For a further response, BHCP states that appropriate warnings regarding the risks associated with the use of Xarelto® were provided.  BHCP denies Plaintiff's characterization of the promotional materials for Xarelto®.  BHCP denies the allegations in paragraph 49 to the extent not specifically admitted.

50.     The allegations in paragraph 50 are directed to Defendants collectively.  BHCP is not answering the allegations in paragraph 50 on behalf of any entity other than BHCP.  BHCP admits that BHCP promoted Xarelto® consistent with the FDA-approved labeling.  BHCP denies Plaintiff's characterization of the marketing of Xarelto®.  Because Plaintiff's allegations regarding the safety and efficacy of warfarin (also known as Coumadin®) are vague and ambiguous, BHCP lacks knowledge or information sufficient to form a belief as to the truth of those allegations, and therefore those allegations are denied.  BHCP denies the allegations in paragraph 50 to the extent not specifically admitted.

51.     The allegations in paragraph 51 are directed to Defendants collectively.  BHCP is not answering the allegations in paragraph 51 on behalf of any entity other than BHCP.  At all times, BHCP's limited involvement in the promotion of Xarelto® to a certain limited number of United States healthcare professionals was in accordance with the FDA-approved labeling. BHCP denies that BHCP otherwise marketed or promoted Xarelto®.  BHCP denies the allegations in paragraph 51 to the extent not specifically admitted.

52.     BHCP denies the allegations in paragraph 52.

53.     BHCP admits that Plaintiff has quoted selected excerpts from the October 3, 2012, issue of QuarterWatch published by the Institute for Safe Medication Practices, regarding statements purportedly made by FDA reviewers regarding Xarelto®.  The October 3, 2012, issue of QuarterWatch published by the Institute for Safe Medication Practices, in its entirety, speaks

for itself, and BHCP is not admitting the accuracy of any information or assertions in the QuarterWatch publication. For a further response, the statements made by FDA reviewers regarding Xarelto®, in their entirety, speak for themselves. BHCP lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the location of the headquarters of the Institute for Safe Medication Practices, and therefore those allegations are denied. BHCP denies the allegations in paragraph 53 to the extent not specifically admitted.

54. The allegations in paragraph 54 are directed to Defendants collectively. BHCP is not answering the allegations in paragraph 54 on behalf of any entity other than BHCP. BHCP denies the allegations in paragraph 54.

55. BHCP admits that Xarelto® is also known as rivaroxaban and that a specific antidote for rivaroxaban is not available. BHCP admits that the original Xarelto® label stated in the Overdosage section that a specific antidote of rivaroxaban is not available. BHCP further states that the labeling for Xarelto® provided appropriate warnings regarding the risks associated with the use of Xarelto®. BHCP denies the allegations in paragraph 55 to the extent not specifically admitted.

56. BHCP denies the allegations in paragraph 56.

57. BHCP lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 57, and therefore those allegations are denied. For a further response, the submission of a MedWatch form to the FDA does not constitute an admission or assertion that the use of Xarelto® caused or contributed to the event that is the subject of the MedWatch form. BHCP further responds that all anticoagulants approved for use in the United States are associated with reports of adverse events, and that the labeling for Xarelto® provided appropriate warnings regarding the risks associated with the use of Xarelto®.

58.     BHCP lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 58, and therefore those allegations are denied. For a further response, the submission of a MedWatch form to the FDA does not constitute an admission or assertion that the use of Xarelto® caused or contributed to the event that is the subject of the MedWatch form. BHCP further responds that all anticoagulants approved for use in the United States are associated with reports of adverse events, and that the labeling for Xarelto® provided appropriate warnings regarding the risks associated with the use of Xarelto®.

59.     Plaintiff fails to identify the specific publication that Plaintiff purportedly quotes from in paragraph 59. BHCP denies the allegations in paragraph 59.

60.     BHCP lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 60, and therefore those allegations are denied. For a further response, the submission of a MedWatch form to the FDA does not constitute an admission or assertion that the use of Xarelto® caused or contributed to the event that is the subject of the MedWatch form. BHCP further responds that all anticoagulants approved for use in the United States are associated with reports of adverse events, and that the labeling for Xarelto® provided appropriate warnings regarding the risks associated with the use of Xarelto®.

61.     BHCP lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 61, and therefore those allegations are denied.

62.     The allegations in paragraph 62 are directed to Defendants collectively. BHCP is not answering the allegations in paragraph 62 on behalf of any entity other than BHCP. BHCP denies the allegations in paragraph 62.

63.     The allegations in paragraph 63 are directed to Defendants collectively. BHCP is not answering the allegations in paragraph 63 on behalf of any entity other than BHCP. BHCP

denies the allegations in paragraph 63, including all subparts. For a further response, BHCP states that the labeling for Xarelto® provided appropriate warnings regarding the risks associated with the use of Xarelto®.

64. The allegations in paragraph 64 are directed to Defendants collectively. BHCP is not answering the allegations in paragraph 64 on behalf of any entity other than BHCP. BHCP admits that BHCP had limited involvement in promoting Xarelto® to a certain limited number of United States healthcare professionals, and denies that BHCP otherwise marketed or promoted Xarelto®. BHCP denies that BHCP labeled Xarelto®. For a further response, BHCP states that the original Xarelto® label was issued in July 2011 and has been supplemented at various times since then. The Xarelto® labels, in their entirety, speak for themselves. BHCP denies the allegations in paragraph 64 to the extent not specifically admitted. BHCP further responds that the labeling for Xarelto® provided appropriate warnings regarding the risks associated with the use of Xarelto®.

65. The allegations in paragraph 65 are directed to Defendants collectively. BHCP is not answering the allegations in paragraph 65 on behalf of any entity other than BHCP. BHCP denies the allegations in paragraph 65.

66. BHCP lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 66, and therefore those allegations are denied.

67. The allegations in paragraph 67 are directed to Defendants collectively. BHCP is not answering the allegations in paragraph 67 on behalf of any entity other than BHCP. BHCP denies the allegations in the first sentence in paragraph 67. BHCP lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence in paragraph 67, and therefore the allegations in the second sentence in paragraph 67 are denied.

68.     The allegations in paragraph 68 are directed to Defendants collectively.  BHCP is not answering the allegations in paragraph 68 on behalf of any entity other than BHCP.  BHCP denies the allegations in paragraph 68.

69.     The allegations in paragraph 69 are directed to Defendants collectively.  BHCP is not answering the allegations in paragraph 69 on behalf of any entity other than BHCP.  BHCP admits that BHCP had limited involvement in promoting Xarelto® to a certain limited number of United States healthcare professionals, and denies that BHCP otherwise marketed or promoted Xarelto®.  BHCP denies the allegations in the first sentence in paragraph 69 to the extent not specifically admitted.  BHCP denies the allegations in the second sentence in paragraph 69.  BHCP lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the third sentence in paragraph 69, and therefore the allegations in the third sentence in paragraph 69 are denied.

70.     The allegations in paragraph 70 are directed to Defendants collectively.  BHCP is not answering the allegations in paragraph 70 on behalf of any entity other than BHCP.  BHCP lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 70, and therefore those allegations are denied.

71.     The allegations in paragraph 71 are directed to Defendants collectively.  BHCP is not answering the allegations in paragraph 71 on behalf of any entity other than BHCP.  BHCP denies the allegations in paragraph 71.

72.     The allegations in paragraph 72 are directed to Defendants collectively.  BHCP is not answering the allegations in paragraph 72 on behalf of any entity other than BHCP.  BHCP denies the allegations in paragraph 72.

73.     The allegations in paragraph 73 are directed to Defendants collectively.  BHCP is
not answering the allegations in paragraph 73 on behalf of any entity other than BHCP.  BHCP
denies that the FDA Office of Prescription Drug Promotion ("OPDP") sent an untitled letter to
BHCP regarding a print advertisement for Xarelto®.  For a further response, BHCP states, on
information and belief, that the OPDP sent an untitled letter to Johnson & Johnson International,
Inc. on or about June 6, 2013.  BHCP denies the allegations in paragraph 73 regarding the
contents of the letter from the OPDP regarding a print advertisement for Xarelto® to the extent
that they are inconsistent with the language of the letter or omit portions of the letter.  The
referenced OPDP letter, in its entirety, speaks for itself.  BHCP denies the remaining allegations
in paragraph 73.

74.     BHCP lacks knowledge or information sufficient to form a belief as to the truth of
the allegation in paragraph 74 regarding Plaintiff's awareness, and therefore those allegations are
denied.  BHCP denies the remaining allegations in paragraph 74.

75.     The allegations in paragraph 75 are directed to Defendants collectively.  BHCP is
not answering the allegations in paragraph 75 on behalf of any entity other than BHCP.  BHCP
admits that BHCP had limited involvement in promoting Xarelto® to a certain limited number of
United States healthcare professionals.  BHCP admits that BHCP promoted Xarelto® as safe and
effective for the indications approved by the FDA, when prescribed to patients by physicians in
accordance with the labeling and prescribing information approved by the FDA.  BHCP denies
that BHCP otherwise marketed or promoted Xarelto®.  For a further response, BHCP states that
appropriate warnings regarding the risks associated with the use of Xarelto® were provided.
BHCP lacks knowledge or information sufficient to form a belief as to the truth of the allegations
in paragraph 75 regarding any materials or information received by Plaintiff's prescribing

physician, and therefore those allegations are denied.  BHCP denies the allegations in paragraph 75 to the extent not specifically admitted.

76.      The allegations in paragraph 76 are directed to Defendants collectively.  BHCP is not answering the allegations in paragraph 76 on behalf of any entity other than BHCP.  BHCP admits that BHCP had limited involvement in promoting Xarelto® to a certain limited number of United States healthcare professionals.  BHCP admits that BHCP promoted Xarelto® as safe for the indications approved by the FDA, when prescribed to patients by physicians in accordance with the labeling and prescribing information approved by the FDA.  BHCP denies that BHCP otherwise marketed or promoted Xarelto®.   For a further response, BHCP states that appropriate warnings regarding the risks associated with the use of Xarelto® were provided.  BHCP denies the allegations in paragraph 76 to the extent not specifically admitted.

77.      The allegations in paragraph 77 are directed to Defendants collectively.  BHCP is not answering the allegations in paragraph 77 on behalf of any entity other than BHCP.  BHCP denies the allegations in paragraph 77.  For a further response, BHCP states that the Medication Guide for Xarelto®, in its entirety, speaks for itself.   BHCP further states that appropriate warnings were provided regarding the risks associated with the use of Xarelto®.

78.      The allegations in paragraph 78 are directed to Defendants collectively.  BHCP is not answering the allegations in paragraph 78 on behalf of any entity other than BHCP.  BHCP denies the allegations in paragraph 78.

79.      The allegations in paragraph 79 are directed to Defendants collectively.  BHCP is not answering the allegations in paragraph 79 on behalf of any entity other than BHCP.  BHCP lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 79, and therefore those allegations are denied.

Case 2:14-md-02592-EEF-MBN Document 12480-6 Filed 02/05/19 Page 22 of 113

80.	The allegations in paragraph 80 are directed to Defendants collectively.  BHCP is not answering the allegations in paragraph 80 on behalf of any entity other than BHCP.  BHCP denies the allegations in paragraph 80.

81.	The allegations in paragraph 81 are directed to Defendants collectively.  BHCP is not answering the allegations in paragraph 81 on behalf of any entity other than BHCP.  BHCP denies the allegations in paragraph 81.

82.	The allegations in paragraph 82 are directed to Defendants collectively.  BHCP is not answering the allegations in paragraph 82 on behalf of any entity other than BHCP.  BHCP denies the allegations in paragraph 82.

83.	The allegations in paragraph 83 are directed to Defendants collectively.  BHCP is not answering the allegations in paragraph 83 on behalf of any entity other than BHCP.  BHCP denies the allegations in paragraph 83.

84.	The allegations in paragraph 84 are directed to Defendants collectively.  BHCP is not answering the allegations in paragraph 84 on behalf of any entity other than BHCP.  BHCP denies the allegations in paragraph 84.

85.	The allegations in paragraph 85 are directed to Defendants collectively.  BHCP is not answering the allegations in paragraph 85 on behalf of any entity other than BHCP.  BHCP denies the allegations in paragraph 85.

86.	 The allegations in paragraph 86 are directed to Defendants collectively.  BHCP is not answering the allegations in paragraph 86 on behalf of any entity other than BHCP.  BHCP denies the allegations in paragraph 86.

87.     The allegations in paragraph 87 are directed to Defendants collectively.  BHCP is

not answering the allegations in paragraph 87 on behalf of any entity other than BHCP.  BHCP

denies the allegations in paragraph 87.

ANSWER TO
FACTUAL ALLEGATIONS

88.     BHCP denies that any of Plaintiff's alleged injuries were a result of the ingestion

of Xarelto®.  BHCP lacks knowledge or information sufficient to form a belief as to the truth of

the remaining allegations in paragraph 88, and therefore the remaining allegations in paragraph

88 are denied.

89.     BHCP denies the allegations in paragraph 89.

90.     The allegations in paragraph 90 are directed to Defendants collectively.  BHCP is

not answering the allegations in paragraph 90 on behalf of any entity other than BHCP.  BHCP

denies the allegations in paragraph 90.

91.     The allegations in paragraph 91 are directed to Defendants collectively.  BHCP is

not answering the allegations in paragraph 91 on behalf of any entity other than BHCP.  BHCP

denies the allegations in paragraph 91.  For a further response, BHCP states that appropriate

warnings regarding the risks associated with the use of Xarelto® were provided.

ANSWER TO
COUNT I: STRICT LIABILITY

92.     BHCP incorporates by reference its responses to all paragraphs of the Complaint

as if fully set forth herein.

93.     The allegations in paragraph 93 are directed to Defendants collectively.  BHCP is

not answering the allegations in paragraph 93 on behalf of any entity other than BHCP.  BHCP

admits that BHCP had some involvement in certain aspects of the research and testing of

22

Xarelto®. BHCP further admits that BHCP had limited involvement in promoting Xarelto® to a certain limited number of United States healthcare professionals, and denies that BHCP otherwise marketed or promoted Xarelto®. BHCP denies that BHCP designed or manufactured Xarelto®. BHCP denies the allegations in paragraph 93 to the extent not specifically admitted.

94.    The allegations in paragraph 94 state conclusions of law to which no response is required. To the extent that a response is required, the allegations in paragraph 94 are directed to Defendants collectively. BHCP is not answering the allegations in paragraph 94 on behalf of any entity other than BHCP. BHCP denies that BHCP manufactured or distributed Xarelto®, and denies the remaining allegations in paragraph 94.

95.    The allegations in paragraph 95 are directed to Defendants collectively. BHCP is not answering the allegations in paragraph 95 on behalf of any entity other than BHCP. BHCP denies the allegations in paragraph 95.

96.    The allegations in paragraph 96 are directed to Defendants collectively. BHCP is not answering the allegations in paragraph 96 on behalf of any entity other than BHCP. BHCP denies the allegations in paragraph 96.

97.    The allegations in paragraph 97 are directed to Defendants collectively. BHCP is not answering the allegations in paragraph 97 on behalf of any entity other than BHCP. BHCP denies the allegations in paragraph 97.

98.    The allegations in paragraph 98 are directed to Defendants collectively. BHCP is not answering the allegations in paragraph 98 on behalf of any entity other than BHCP. BHCP denies the allegations in paragraph 98.

Case 2:14-md-02592-EEF-MBN Document 1248026 Filed 02/05/19 Page 25 of 113

99.     The allegations in paragraph 99 are directed to Defendants collectively.  BHCP is not answering the allegations in paragraph 99 on behalf of any entity other than BHCP.  BHCP denies the allegations in paragraph 99.

100.     The allegations in paragraph 100 are directed to Defendants collectively.  BHCP is not answering the allegations in paragraph 100 on behalf of any entity other than BHCP.  BHCP denies the allegations in paragraph 100, including all subparts.

101.     The allegations in paragraph 101 are directed to Defendants collectively.  BHCP is not answering the allegations in paragraph 101 on behalf of any entity other than BHCP.  BHCP denies the allegations in paragraph 101.

102.     The allegations in paragraph 102 are directed to Defendants collectively.  BHCP is not answering the allegations in paragraph 102 on behalf of any entity other than BHCP.  BHCP denies the allegations in paragraph 102.

103.     The allegations in paragraph 103 are directed to Defendants collectively.  BHCP is not answering the allegations in paragraph 103 on behalf of any entity other than BHCP.  BHCP denies the allegations in paragraph 103.

104.     The allegations in paragraph 104 are directed to Defendants collectively.  BHCP is not answering the allegations in paragraph 104 on behalf of any entity other than BHCP.  BHCP denies the allegations in paragraph 104.

**ANSWER TO**
**COUNT II: STRICT LIABILITY – DESIGN DEFECT,**
**MARKETING DEFECT AND MANUFACTURING DEFECT**

105.     BHCP incorporates by reference its responses to all paragraphs of the Complaint as if fully set forth herein.

106.    The allegations in paragraph 106 are directed to Defendants collectively.  BHCP is not answering the allegations in paragraph 106 on behalf of any entity other than BHCP. BHCP denies the allegations in paragraph 106.

107.    The allegations in paragraph 107 are directed to Defendants collectively.  BHCP is not answering the allegations in paragraph 107 on behalf of any entity other than BHCP. BHCP admits that BHCP had some involvement in certain aspects of the research and testing of Xarelto®.  BHCP further admits that BHCP had limited involvement in promoting Xarelto® to a certain limited number of United States healthcare professionals, and denies that BHCP otherwise marketed or promoted Xarelto®.  BHCP denies that BHCP manufactured, distributed, packaged, labeled, designed, or sold Xarelto®.  BHCP denies the allegations in paragraph 107 to the extent not specifically admitted.

108.    The allegations in paragraph 108 state conclusions of law to which no response is required.  To the extent that a response is required, the allegations in paragraph 108 are directed to Defendants collectively.  BHCP is not answering the allegations in paragraph 108 on behalf of any entity other than BHCP.  BHCP denies that BHCP manufactured Xarelto®, and denies the remaining allegations in paragraph 108.

109.    The allegations in paragraph 109 are directed to Defendants collectively.  BHCP is not answering the allegations in paragraph 109 on behalf of any entity other than BHCP. BHCP denies the allegations in paragraph 109, including all subparts.

110.    The allegations in paragraph 110 are directed to Defendants collectively.  BHCP is not answering the allegations in paragraph 110 on behalf of any entity other than BHCP. BHCP denies the allegations in paragraph 110.

111.    The allegations in paragraph 111 are directed to Defendants collectively.  BHCP is not answering the allegations in paragraph 111 on behalf of any entity other than BHCP. BHCP admits that it expected Xarelto® to reach patients, who were prescribed Xarelto® by physicians in accordance with FDA-approved labeling, without substantial change from the condition in which Xarelto® was sold.  BHCP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 111, and therefore those allegations are denied.

112.    The allegations in paragraph 112 are directed to Defendants collectively.  BHCP is not answering the allegations in paragraph 112 on behalf of any entity other than BHCP. BHCP admits that it expected Xarelto® to reach patients, who were prescribed Xarelto® by physicians in accordance with FDA-approved labeling, without substantial change from the condition in which Xarelto® was sold.  BHCP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 112, and therefore those allegations are denied.

113.    The allegations in paragraph 113 are directed to Defendants collectively.  BHCP is not answering the allegations in paragraph 113 on behalf of any entity other than BHCP. BHCP denies the allegations in paragraph 113.

114.    The allegations in paragraph 114 are directed to Defendants collectively.  BHCP is not answering the allegations in paragraph 114 on behalf of any entity other than BHCP. BHCP denies the allegations in paragraph 114.

115.    The allegations in paragraph 115 are directed to Defendants collectively.  BHCP is not answering the allegations in paragraph 115 on behalf of any entity other than BHCP. BHCP admits that Xarelto® has not been withdrawn from the market, but denies that BHCP had

any obligation to withdraw Xarelto® from the market and denies the remaining allegations in paragraph 115.

116.    The allegations in paragraph 116 are directed to Defendants collectively.  BHCP is not answering the allegations in paragraph 116 on behalf of any entity other than BHCP. BHCP denies the allegations in paragraph 116.

117.    The allegations in paragraph 117 are directed to Defendants collectively.  BHCP is not answering the allegations in paragraph 117 on behalf of any entity other than BHCP. BHCP denies the allegations in paragraph 117.

118.    The allegations in paragraph 118 are directed to Defendants collectively.  BHCP is not answering the allegations in paragraph 118 on behalf of any entity other than BHCP. BHCP denies the allegations in paragraph 118.

119.    The allegations in paragraph 119 are directed to Defendants collectively.  BHCP is not answering the allegations in paragraph 119 on behalf of any entity other than BHCP. BHCP denies the allegations in paragraph 119.

ANSWER TO
COUNT III: NEGLIGENCE

120.    BHCP incorporates by reference its responses to all paragraphs of the Complaint as if fully set forth herein.

121.    The allegations in paragraph 121 state conclusions of law to which no response is required.  To the extent that a response is required, the allegations in paragraph 121 are directed to Defendants collectively.  BHCP is not answering the allegations in paragraph 121 on behalf of any entity other than BHCP.  BHCP denies that BHCP violated any applicable duty relating to Xarelto®, including any duty with respect to the design, study, development, manufacture,

promotion, sale, marketing or distribution of Xarelto®. BHCP denies the remaining allegations in paragraph 121.

122. The allegations in paragraph 122 are directed to Defendants collectively. BHCP is not answering the allegations in paragraph 122 on behalf of any entity other than BHCP. BHCP denies the allegations in paragraph 122, including all subparts.

123. The allegations in paragraph 123 are directed to Defendants collectively. BHCP is not answering the allegations in paragraph 123 on behalf of any entity other than BHCP. BHCP denies the allegations in the first and second sentences in paragraph 123. BHCP lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the last sentence in paragraph 123, and therefore the allegations in the last sentence in paragraph 123 are denied.

124. The allegations in paragraph 124 are directed to Defendants collectively. BHCP is not answering the allegations in paragraph 124 on behalf of any entity other than BHCP. BHCP denies the allegations in paragraph 124.

125. Paragraph 125 contains no allegations to which a response is required. To the extent that a response is required, BHCP denies that Plaintiff is entitled to any damages.

<u>ANSWER TO</u>
<u>COUNT IV: BREACH OF WARRANTY –</u>
<u>BREACH OF EXPRESS WARRANTY</u>

126. BHCP incorporates by reference its responses to all paragraphs of the Complaint as if fully set forth herein.

127. The allegations in paragraph 127 are directed to Defendants collectively. BHCP is not answering the allegations in paragraph 127 on behalf of any entity other than BHCP. BHCP admits that BHCP had some involvement in certain aspects of the research, development

and testing of Xarelto®. BHCP further admits that BHCP had limited involvement in promoting Xarelto® to a certain limited number of United States healthcare professionals, and denies that BHCP otherwise marketed or promoted Xarelto®. BHCP denies that BHCP designed, manufactured, inspected, labeled, distributed, sold or advertised Xarelto®. BHCP denies the allegations in paragraph 127 to the extent not specifically admitted.

128. The allegations in paragraph 128 are directed to Defendants collectively. BHCP is not answering the allegations in paragraph 128 on behalf of any entity other than BHCP. BHCP denies the allegations in paragraph 128.

129. The allegations in paragraph 129 are directed to Defendants collectively. BHCP is not answering the allegations in paragraph 129 on behalf of any entity other than BHCP. BHCP denies the allegations in paragraph 129.

ANSWER TO
COUNT V: BREACH OF WARRANTY –
BREACH OF IMPLIED WARRANTY

130. BHCP incorporates by reference its responses to all paragraphs of the Complaint as if fully set forth herein.

131. The allegations in paragraph 131 are directed to Defendants collectively. BHCP is not answering the allegations in paragraph 131 on behalf of any entity other than BHCP. BHCP admits that BHCP had some involvement in certain aspects of the research, development and testing of Xarelto®. BHCP further admits that BHCP had limited involvement in promoting Xarelto® to a certain limited number of United States healthcare professionals, and denies that BHCP otherwise marketed or promoted Xarelto®. BHCP denies that BHCP designed, manufactured, inspected, labeled, distributed, sold or advertised Xarelto®. BHCP denies the allegations in paragraph 131 to the extent not specifically admitted.

132.    The allegations in paragraph 132 are directed to Defendants collectively.  BHCP is not answering the allegations in paragraph 132 on behalf of any entity other than BHCP.  BHCP denies the allegations in paragraph 132.

133.    The allegations in paragraph 133 are directed to Defendants collectively.  BHCP is not answering the allegations in paragraph 133 on behalf of any entity other than BHCP.  BHCP denies the allegations in paragraph 133.

134.    The allegations in paragraph 134 are directed to Defendants collectively.  BHCP is not answering the allegations in paragraph 134 on behalf of any entity other than BHCP.  BHCP denies the allegations in paragraph 134.

BHCP denies the allegations contained in the unnumbered paragraph following paragraph 134, and denies any wrongdoing whatsoever.  BHCP denies that it is liable to Plaintiff, either for damages, and/or any other relief or costs or attorneys' fees or interest in any amount whatsoever.

BHCP requests that Plaintiff's Complaint be dismissed with prejudice, that judgment be entered in favor of BHCP and against Plaintiff, and that BHCP be awarded the costs of this action, together with such other and further relief as may be appropriate.

All allegations of the Complaint not expressly admitted are denied.

## ADDITIONAL DEFENSES

Discovery and investigation may reveal that one or more of the following additional defenses should be available to BHCP in this matter.  BHCP accordingly asserts these separate and additional defenses.  Upon completion of discovery, if the facts warrant, BHCP may withdraw any of these additional defenses as may be appropriate.  By setting forth these additional defenses, BHCP does not assume the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to Plaintiff.  Moreover, nothing stated

herein is intended or shall be construed as an acknowledgment that any particular issue or subject necessarily is relevant to Plaintiff's allegations. BHCP further reserves the right to amend its Answer and Additional Defenses, and to assert additional defenses and other claims, as this matter proceeds.

Further answering, and by way of additional defenses, BHCP states as follows:

1.      Plaintiff's Complaint, and each and every count contained therein, fails to state a cause of action or claim upon which relief can be granted.

2.      Some or all of Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitations and/or statutes of repose.

3.      Plaintiff's claims are barred, in whole or in part, by laches, waiver, and/or estoppel.

4.      Plaintiff's claims are barred, in whole or in part, by Plaintiff's failure to mitigate Plaintiff's alleged damages.

5.      The acts and omissions of Plaintiff caused and/or contributed to the alleged damages, thereby barring or reducing the amount of recovery under the doctrines of contributory negligence and/or comparative negligence. Plaintiff's recovery, if any, therefore is barred or should be apportioned in accordance with applicable law.

6.      The alleged injuries sustained by Plaintiff, if any, were caused, in whole or in part, by pre-existing physical, medical, and/or physiological conditions, for which BHCP has no legal responsibility.

7.      If Plaintiff suffered injuries as alleged in the Complaint, which is expressly denied, such injuries arose from, and were caused by, risks, hazards, and dangers knowingly

assumed by Plaintiff. Plaintiff's recovery accordingly is barred or should be reduced by Plaintiff's assumption of the risk.

8.   If the injuries claimed by Plaintiff were related to the use of Xarelto®, which is expressly denied, any such injuries were the result of an idiosyncratic or allergic reaction to Xarelto®.

9.   The injuries and damages claimed by Plaintiff, if any, resulted from an intervening or superseding cause and/or causes, and any act or omission on the part of BHCP was not the proximate and/or competent producing cause of such alleged injuries and damages.

10.   The injuries and damages claimed by Plaintiff, if any, are barred or must be reduced, because those damages arose from the acts or omissions of persons or entities other than BHCP, for whom BHCP has no legal responsibility.

11.   If Plaintiff sustained the injuries or incurred the expenses as alleged, which is expressly denied, said injuries or expenses were caused by the unforeseeable alteration, improper handling, or other unforeseeable misuse, or use inconsistent with the labeling of the prescription drug Xarelto®. Plaintiff's recovery is accordingly barred.

12.   The alleged injuries and damages, if any, were the result of unavoidable circumstances that could not have been prevented by any person, including BHCP.

13.   Plaintiff's claims are barred, because the benefits of Xarelto® outweigh the risks, if any, that might be associated with the product.

14.   The claims in the Complaint are barred in whole or in part by the learned intermediary doctrine.

15.   Plaintiff's Complaint fails to state a claim to the extent BHCP did not manufacture or distribute the product allegedly used by Plaintiff.

16.     BHCP owed no legal duty to Plaintiff because BHCP did not manufacture or distribute Xarelto®.

17.     Plaintiff's Complaint fails to state a claim upon which relief can be granted in that the methods, standards, and techniques utilized with respect to the design, manufacture, marketing, promotion, and sale of Xarelto®, including, but not limited to, adequate warnings and instructions with respect to the product's use included in the product's package insert and other literature, conformed to the applicable state of the art.  Xarelto®, including its labeling approved by the FDA, complied with the state of scientific and medical knowledge available at the time. Plaintiff's recovery accordingly is barred.

18.     Plaintiff's claims are barred, because Xarelto® was neither defective nor unreasonably dangerous in its design, manufacture, marketing, or promotion and was reasonably safe and reasonably fit for its intended uses, thereby barring Plaintiff's recovery.

19.     The warnings and instructions accompanying Xarelto® at the time of the occurrence or injuries alleged by Plaintiff were legally adequate warnings and instructions.

20.     Plaintiff's claims are barred as a matter of law pursuant to relevant provisions of the Restatement (Third) of Torts, including, but not limited to, the Restatement (Third) of Torts: Product Liability, § 6, comment f, and the Restatement (Second) of Torts, including, but not limited to, § 402A, comment k.

21.     BHCP gives notice that to the extent that the sophisticated purchaser doctrine is applicable to any of the allegations in the Complaint, BHCP intends to rely upon same in defense of this action.

22.     The prescription drug Xarelto® complied with the applicable product safety regulations promulgated by the FDA.  Compliance with such regulations demonstrates that due

care was exercised with respect to the design, manufacture, testing, marketing, promotion, and sale of this prescription drug, and that it was neither defective nor unreasonably dangerous. Plaintiff's recovery is accordingly barred.

23.    Any claims by Plaintiff relating to alleged communications with regulatory agencies of the United States government are barred in whole or in part by operation of applicable law, including First and Fourteenth Amendment rights to petition the government.

24.    Plaintiff's claims are barred, in whole or in part, because the commercial speech relating to Xarelto® is protected under the First Amendment of the United States Constitution and the applicable state constitution.

25.    Plaintiff's claims regarding warnings and labeling are barred in whole or in part by the doctrine of primary jurisdiction, in that the FDA is charged under law with determining the content of warnings and labeling for prescription drugs.

26.    Plaintiff's claims are preempted, in whole or in part, by federal law pursuant to the Supremacy Clause of the United States Constitution by reason of the federal regulation of prescription drug manufacturing, testing, marketing, promotion, and labeling.

27.    To the extent that Plaintiff's claims are based on alleged misrepresentations made to the FDA, such claims are barred pursuant to *Buckman Co. v. Plaintiffs' Legal Comm.,* 531 U.S. 341 (2001).

28.    Plaintiff cannot state a claim upon which relief may be granted with regard to warnings and labeling for prescription drugs, because the remedy sought by Plaintiff is subject to the exclusive regulation of the FDA.

29.     This Court should abstain from adjudicating Plaintiff's claims relating to warnings and labeling in deference to the interpretation of regulations relating to prescription drug labeling by the FDA.

30.     Plaintiff did not detrimentally rely on any labeling, warnings or information concerning Xarelto®.

31.     BHCP did not misrepresent or conceal any fact material to Plaintiff's treatment with Xarelto®.

32.     Plaintiff's prescribing physicians did not rely on any alleged misrepresentations or concealment by BHCP in treating Plaintiff.

33.     Applicable law does not recognize a post-sale duty to warn in the present circumstances.  Accordingly, to the extent that Plaintiff seeks recovery for any alleged breach of a post-sale duty to warn, the Complaint fails to state a claim upon which relief may be granted for inadequate post-sale marketing or post-sale duty to warn.

34.     Each item of economic loss alleged in the Complaint may have been or may be replaced or indemnified in whole or in part by collateral sources, and therefore is not recoverable in this action.

35.     To the extent that Plaintiff's Complaint seeks recovery for benefits entitled to be received or actually received from any other source for injuries alleged in the Complaint, such benefits are not recoverable in this action under applicable law.

36.     To the extent that Plaintiff's claims have been settled or Plaintiff will in the future settle with any person or entity with respect to the injuries asserted in the Complaint, the liability of BHCP, if any, should be reduced accordingly.

37.     Plaintiff's claims may be barred, in whole or in part, due to res judicata, collateral estoppel, or by release of claims.

38.     Plaintiff's Complaint may fail to join indispensable parties necessary for the just adjudication of this matter.

39.     Plaintiff's Complaint fails to state a claim upon which relief can be granted for several or joint and several liability.

40.     Plaintiff's Complaint fails to state a claim upon which relief can be granted as to costs, attorneys' fees, pre-judgment interest, or post-judgment interest.

41.     The Court lacks personal jurisdiction over BHCP with respect to Plaintiff's claims.

42.     Venue is improper.

43.     BHCP was insufficiently served with process.

44.     This Court is not the proper forum, and is an inconvenient forum, for the just adjudication of Plaintiff's claims.

45.     Plaintiff's claims for breach of warranty are barred, because Plaintiff failed to give timely notice of any alleged breach of warranty.

46.     BHCP did not sell or distribute Xarelto® to Plaintiff, and Plaintiff did not receive or rely upon any representations or warranties as alleged in the Complaint.  Plaintiff's claims for breach of warranty, express or implied, are barred by lack of privity between Plaintiff and BHCP.

47.     Plaintiff's claims for breach of warranty, express or implied, are barred by the applicable state's Uniform Commercial Code or other applicable law.

48. Plaintiff's Complaint fails to state a claim upon which relief can be granted for punitive or exemplary damages.

49. No act or omission of BHCP caused or contributed to Plaintiff's alleged injuries. Further, the Complaint fails to allege conduct by BHCP upon which an award of punitive or exemplary damages can be based. No act or omission of BHCP was outrageous, willful, unconscionable, oppressive, fraudulent, wanton, malicious, reckless, intentional, or with actual malice, with reckless disregard for the safety of Plaintiff or with conscious disregard and indifference to the rights, safety and welfare of Plaintiff. Accordingly, Plaintiff's Complaint fails to state a claim upon which relief can be granted for punitive or exemplary damages.

50. BHCP denies any conduct for which punitive or exemplary damages could or should be awarded and denies that sufficient evidence has been or can be produced to support or sustain the imposition of punitive damages pursuant to the applicable standard(s) of proof.

51. Permitting recovery of punitive or exemplary damages in this case would be unconstitutionally vague and/or overbroad and would violate BHCP's constitutional rights as secured by the Fifth and Seventh Amendments to the United States Constitution, would violate its rights to due process and equal protection under the Fourteenth Amendment of the United States Constitution and the prohibition against excessive fines in the United States Constitution, and would contravene other provisions of the United States Constitution and any applicable state constitution.

52. Plaintiff cannot recover punitive or exemplary damages against BHCP, because such an award, which is penal in nature, would violate BHCP's constitutional rights under the United States Constitution and any applicable state constitution, unless BHCP is afforded the same procedural safeguards as are criminal defendants, including, but not limited to, the right to

avoid self-incrimination, the right to forego production and disclosure of incriminating documents, and the right to the requirement of a level of proof beyond a reasonable doubt.

53.     Any imposition of punitive or exemplary damages in this case would contravene the Commerce Clause of the United States Constitution, in that such an award would constitute, if imposed, an undue and unreasonable burden on interstate commerce.

54.     Any award of punitive or exemplary damages is barred to the extent that it is inconsistent with the standards and limitations set forth in *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996), *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003), *Philip Morris USA v. Williams*, 549 U.S. 346 (2007), and *Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008).

55.     With respect to Plaintiff's demand for punitive or exemplary damages, BHCP specifically reserves the right to assert any and all standards or limitations regarding the determination and enforceability of punitive or exemplary damages awards under any state law that may be applicable to Plaintiff's claims, including, but not limited to, New Jersey law, including the provisions of the Punitive Damages Act, N.J.S.A. 2A:15-5.9 et seq., and/or any other applicable state law.  BHCP reserves the right to seek bifurcation of Plaintiff's punitive damages claims pursuant to any applicable law, including, but not limited to, N.J.S.A. 2A:15-5.13.

56.     BHCP asserts all available defenses under the Michigan Product Liability Act, MCL 600.2945 to 600.2949a, or any other applicable law.

57.     Plaintiff's damages, if any, must be reduced to the extent that they exceed the statutory amounts allowed pursuant to MCL 600.2946a.

58.     Plaintiff's claims are barred by MCL 600.2946(5), because Xarelto® was approved for safety and efficacy by the FDA.  Xarelto® and its labeling were in compliance with the FDA's approval.

59.     Plaintiff's damages, if any, must be reduced pursuant to MCL 600.2956 and 600.2959.

60.     BHCP will show upon trial of this action, and hereby gives notice pursuant to MCL 600.2957, that the negligence of persons or entities, currently not parties to this litigation, is the sole proximate cause, or at least a contributing cause, of the alleged damages and/or injuries complained of by Plaintiff and that notice as required pursuant to the applicable court rule will be given with respect to the fault of such non-parties, identifying same to the extent possible.

61.     Plaintiff's strict liability claims fail to state a product liability claim under Michigan law.

62.     Plaintiff is not entitled to punitive or exemplary damages under Michigan law.

63.     Plaintiff's alleged injuries were proximately caused by circumstances, events, or persons over whom BHCP had no authority or control and for which BHCP is not answerable in damages to Plaintiff.

64.     Plaintiff's recovery, if any, must be reduced pursuant to 10 Del. Code § 8132.

65.     Plaintiff, or Plaintiff's physicians, were aware or should have been aware of any potential hazards reported to be associated with the use of Xarelto®, and appreciated or should have appreciated these potential hazards based, in part, on the directions, information, and warnings provided in the product labeling and on the information generally available in the

medical and scientific literature. Therefore, there was no duty to warn of any alleged danger or defect.

66. Plaintiff is barred from recovering any damages to the extent that there was no practical or technically feasible alternative design or formulation that would have prevented the harm alleged by Plaintiff without substantially impairing the usefulness or intended purpose of Xarelto®.

67. Plaintiff's failure to give notice of the alleged breach in the form and time required by 6 Del. Code § 2-607(3) and other UCC provisions bars Plaintiff from remedy.

68. BHCP adopts and incorporates by reference all defenses pled by other defendants except to the extent that they are inconsistent with BHCP's defenses pled in this Answer.

69. BHCP expressly reserves the right to amend this Answer to assert additional defenses or to make additional claims for relief that become available or apparent during the course of investigation, preparation, or discovery.

**WHEREFORE**, BHCP requests that Plaintiff's Complaint be dismissed with prejudice, that judgment be entered in favor of BHCP and against Plaintiff, and that BHCP be awarded the costs of this action, together with such other and further relief as may be appropriate.

## <u>JURY DEMAND</u>

BHCP hereby demands a trial by jury on all issues so triable.

Dated:  October 22, 2015

DRINKER BIDDLE & REATH LLP

By: */s/ Ryan T. Costa*
    Todd C. Schiltz (ID No. 3253)
    Ryan Costa (ID No. 5325)
    222 Delaware Ave. Ste. 1410
    Wilmington, DE 19801-1621
    Telephone: (302) 620-4209
    todd.schiltz@dbr.com
    ryan.costa@dbr.com

    *Attorneys for Defendant,*
    *Bayer HealthCare Pharmaceuticals Inc.*

82975312.1

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| FLORENCE R. FURCHAK | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 1:15-cv-00778-RGA |
| | ) | **Jury Trial Demanded** |
| JANSSEN RESEARCH & DEVELOPMENT, | ) | |
| LLC, f/k/a/ JOHNSON AND JOHNSON | ) | |
| PHARMACEUTICAL RESEARCH AND | ) | |
| DEVELOPMENT, LLC; JANSSEN | ) | |
| PHARMACEUTICALS, INC., f/k/a JANSSEN | ) | |
| PHARMACEUTICA, INC., f/k/a ORTHO-McNEIL | ) | |
| -JANSSEN PHARMACEUTICALS, INC.; | ) | |
| JANSSEN ORTHO, LLC; JOHNSON & | ) | |
| JOHNSON; JOHNSON & JOHNSON COMPANY; | ) | |
| BAYER HEALTHCARE PHARMACEUTICALS, | ) | |
| INC.; BAYER CORPORATION, BAYER | ) | |
| HEALTHCARE LLC; BAYER PHARMA AG; | ) | |
| BAYER HEALTHCARE AG; BAYER AG; AND | ) | |
| DOES, INC. | ) | |
| | ) | |
| | ) | |
| Defendants. | | |

## ANSWER OF DEFENDANTS JANSSEN PHARMACEUTICALS, INC., JANSSEN RESEARCH & DEVELOPMENT, LLC, JANSSEN ORTHO LLC, AND JOHNSON & JOHNSON TO PLAINTIFF'S COMPLAINT AND AFFIRMATIVE DEFENSES

Defendants Janssen Pharmaceuticals, Inc. ("JPI"), Janssen Research & Development, LLC ("JRD") Janssen Ortho LLC ("Janssen Ortho") (collectively, the "Janssen Defendants") and Johnson & Johnson, which is also named incorrectly as Johnson & Johnson Company ("J&J") hereby submit this Answer to Plaintiff's complaint.

The Janssen Defendants and J&J deny each and every allegation, statement, matter and thing contained in Plaintiff's Complaint except as is hereinafter expressly admitted.

1.      The Janssen Defendants and J&J are without knowledge or information sufficient to form a belief as to the allegations contained in paragraph 1 of Plaintiff's Complaint and therefore deny those allegations.

2.      The Janssen Defendants admit that JRD is a limited liability company existing under the laws of New Jersey.  The Janssen Defendants admit that JRD is involved with research and development for Xarelto®.  The Janssen Defendants admit that JRD submitted the new drug applications ("NDAs") and supplemental new drug applications ("sNDAs") for Xarelto® to the FDA.  The Janssen Defendants and J&J deny all remaining allegations in paragraph 2 of Plaintiff's Complaint.

3.      The Janssen Defendants admit that JRD did research, development and testing on Xarelto® and that the FDA-approved indications for Xarelto® speak for themselves.  The Janssen Defendants and J&J deny all remaining allegations in paragraph 3 of Plaintiff's Complaint.

4.      The Janssen Defendants admit that JPI is a Pennsylvania corporation with its principal place of business located in Titusville, New Jersey.  The Janssen Defendants further admit that Xarelto® is a product of JPI in the United States.  The Janssen Defendants and J&J deny the remaining allegations in paragraph 4 of Plaintiff's Complaint.

5.      The Janssen Defendants admit that Xarelto® is the product of JPI in the United States and that the FDA-approved indications for Xarelto® speak for themselves.  The Janssen Defendants and J&J deny the remaining allegations in paragraph 5 of Plaintiff's Complaint.

6.      The Janssen Defendants admit that Janssen Ortho is a Delaware limited liability company with its principal place of business in Puerto Rico and that Janssen Ortho manufactures

finished product of Xarelto®. The Janssen Defendants and J&J deny the remaining allegations in paragraph 6 of Plaintiff's Complaint.

7. The Janssen Defendants admit that Janssen Ortho manufactures finished product of Xarelto® and that the FDA-approved indications for Xarelto® speak for themselves. The Janssen Defendants and J&J deny the remaining allegations in paragraph 7 of Plaintiff's Complaint.

8. J&J admits that Johnson & Johnson is a New Jersey corporation with its principal place of business in New Brunswick, New Jersey. The Janssen Defendants admit that Xarelto® is the product of JPI in the United States. The Janssen Defendants and J&J deny the remaining allegations of paragraph 8 of Plaintiff's Complaint and specifically deny that J&J is involved in the research, development, sales or marketing of Xarelto®.

9. The allegations of paragraph 9 of Plaintiff's Complaint are not directed to the Janssen Defendants or J&J; accordingly, no response is necessary.

10. The allegations of paragraph 10 of Plaintiff's Complaint are not directed to the Janssen Defendants or J&J; accordingly, no response is necessary.

11. The allegations of paragraph 11 of Plaintiff's Complaint are not directed to the Janssen Defendants or J&J; accordingly, no response is necessary.

12. The allegations of paragraph 12 of Plaintiff's Complaint are not directed to the Janssen Defendants or J&J; accordingly, no response is necessary.

13. The allegations of paragraph 13 of Plaintiff's Complaint are not directed to the Janssen Defendants or J&J; accordingly, no response is necessary.

14. The allegations of paragraph 14 of Plaintiff's Complaint are not directed to the Janssen Defendants or J&J; accordingly, no response is necessary.

15.     The allegations of paragraph 15 of Plaintiff's Complaint are not directed to the Janssen Defendants or J&J; accordingly, no response is necessary.

16.     The allegations of paragraph 16 of Plaintiff's Complaint are not directed to the Janssen Defendants or J&J; accordingly, no response is necessary.

17.     The allegations of paragraph 17 of Plaintiff's Complaint are not directed to the Janssen Defendants or J&J; accordingly, no response is necessary.

18.     The allegations of paragraph 18 of Plaintiff's Complaint are not directed to the Janssen Defendants or J&J; accordingly, no response is necessary.

19.     The allegations of paragraph 19 of Plaintiff's Complaint are not directed to the Janssen Defendants or J&J; accordingly, no response is necessary.

20.     The allegations of paragraph 20 of Plaintiff's Complaint are not directed to the Janssen Defendants or J&J; accordingly, no response is necessary.

21.     The Janssen Defendants admit that JRD submitted the new drug applications ("NDAs") for Xarelto® to the FDA.  The remaining allegations of paragraphs 21 of Plaintiff's Complaint are not directed to Janssen Defendants or J&J; accordingly, no response is necessary.

22.     The Janssen Defendants admit that JRD submitted the new drug applications ("NDAs") for Xarelto® to the FDA.  The remaining allegations of paragraphs 22 of Plaintiff's Complaint are not directed to Janssen Defendants or J&J; accordingly, no response is necessary.

23.     Paragraph 23 of Plaintiff's Complaint contains no factual allegations that require a response.

24.     The Janssen Defendants and J&J deny the allegations in paragraph 24 of Plaintiff's Complaint.

25.     The Janssen Defendants and J&J deny the allegations in paragraph 25 of Plaintiff's Complaint.

26.     The Janssen Defendants admit that Xarelto® is the product of JPI in the United States.  The Janssen Defendants admit that JRD did research, development and testing on Xarelto®.  The Janssen Defendants admit that Janssen Ortho manufactured finished product. The Janssen Defendants and J&J deny the remaining allegations in paragraph 26 of Plaintiff's Complaint.

27.     The Janssen Defendants admit that Xarelto® is the product of JPI in the United States.  The Janssen Defendants admit that JRD did research, development and testing on Xarelto®.  The Janssen Defendants admit that Janssen Ortho manufactured finished product. The Janssen Defendants admit that Plaintiffs have initiated this action in connection with Plaintiff's alleged experience with Xarelto®.  The Janssen Defendants are without knowledge or information sufficient to form a belief as to Plaintiff's alleged use of Xarelto® or as to Plaintiff's alleged injuries or losses.  The Janssen Defendants and J&J deny the remaining allegations in paragraph 27 of Plaintiff's Complaint and further deny that Xarelto® caused any injuries to Plaintiff.

28.     The Janssen Defendants admit that Xarelto® is the product of JPI in the United States.  The Janssen Defendants admit that JRD did research, development and testing on Xarelto®.  The Janssen Defendants admit that Janssen Ortho manufactured finished product. The Janssen Defendants also admit that the FDA-approved indications for Xarelto® are set forth in the package insert.  The Janssen Defendants and J&J deny the remaining allegations in paragraph 28 of Plaintiff's Complaint.

29.     The Janssen Defendants admit that Xarelto® was first approved by the FDA on July 1, 2011, for the prophylaxis of deep vein thrombosis (DVT) which may lead to pulmonary embolism (PE) in patients undergoing knee or hip replacement surgery.  The Janssen Defendants admit that Xarelto® is sometimes referred to as a new oral anticoagulant ("NOAC").   The Janssen Defendants and J&J deny the remaining allegations in paragraph 29 of Plaintiff's Complaint.

30.     Because Plaintiff's allegations regarding the safety and efficacy of warfarin (also known as Coumadin®) are vague and ambiguous, after reasonable investigation, the Janssen Defendants lack knowledge or information sufficient to form a belief as to the truth of those allegations and therefore deny them.   The Janssen Defendants and J&J deny the remaining allegations in paragraph 30 of Plaintiff's Complaint.

31.     The Janssen Defendants admit that Xarelto® is an oral anticoagulant and a selective inhibitor of Factor Xa.  The Janssen Defendants further admit that Xarelto® is available in 10mg, 15mg, and 20mg tablets by prescription.  The Janssen Defendants and J&J deny the remaining allegations in paragraph 31 of Plaintiff's Complaint.

32.     The Janssen Defendants admit that the FDA first approved Xarelto® on July 1, 2011 for the prophylaxis of deep vein thrombosis (DVT) which may lead to pulmonary embolism (PE) in patients undergoing knee or hip replacement surgery.

33.     The Janssen Defendants admit that Xarelto® was studied in the RECORD clinical trials.   The Janssen Defendants state that the publications in the New England Journal of Medicine and Lancet cited in paragraph 33 of Plaintiff's Complaint speak for themselves.  The Janssen Defendants and J&J deny the remaining allegations in paragraph 33 of Plaintiff's Complaint.

6

34.     The Janssen Defendants admit that parts of the RECORD 1, 2 and 4 clinical trials were conducted in the United States.   The Janssen Defendants and J&J deny the remaining allegations in paragraph 34 of Plaintiff's Complaint.

35.     The Janssen Defendants and J&J deny the allegations in paragraph 35 of Plaintiff's Complaint.

36.     The Janssen Defendants admit that on November 4, 2011, the FDA approved Xarelto® to reduce the risk of stroke and systemic embolism in patients with nonvalvular atrial fibrillation.   The Janssen Defendants admit that Xarelto® was studied in the ROCKET AF clinical trial.   The Janssen Defendants and J&J deny the remaining allegations in paragraph 36 of Plaintiff's Complaint.

37.     The Janssen Defendants state that the results of the ROCKET AF clinical trial speak for themselves and that the publication in the New England Journal of Medicine cited in paragraph 37 of Plaintiff's Complaint speaks for itself.   The Janssen Defendants and J&J deny the remaining allegations in paragraph 37 of Plaintiff's Complaint.

38.     The Janssen Defendants state that the ROCKET AF trial was designed to compare once-daily oral rivaroxaban with dose-adjusted warfarin for the prevention of stroke and systemic embolism in patients with nonvalvular atrial fibrillation.   The Janssen Defendants and J&J deny the remaining allegations in paragraph 38 of Plaintiff's Complaint.

39.     The Janssen Defendants and J&J deny the allegations in paragraph 39 of Plaintiff's Complaint.

40.     The Janssen Defendants state that the FDA Draft Briefing Document cited in paragraph 40 of Plaintiff's Complaint speaks for itself.   The Janssen Defendants and J&J deny the remaining allegations in paragraph 40 of Plaintiff's Complaint.

41.     The Janssen Defendants state that correspondence from Public Citizen speaks for itself.  The Janssen Defendants and J&J deny the remaining allegations in paragraph 41 of Plaintiff's Complaint.

42.     The Janssen Defendants state that the FDA Draft Briefing Document cited in paragraph 42 of Plaintiff's Complaint speaks for itself.  The Janssen Defendants and J&J deny the remaining allegations in paragraph 42 of Plaintiff's Complaint.

43.     The Janssen Defendants state that the FDA Advisory Meeting Transcript cited in paragraph 43 of Plaintiff's Complaint speaks for itself.  The Janssen Defendants and J&J deny the remaining allegations in paragraph 43 of Plaintiff's Complaint.

44.     The Janssen Defendants state that the FDA's Summary Review speaks for itself. The Janssen Defendants and J&J deny the allegations in paragraph 44 of Plaintiff's Complaint.

45.     The Janssen Defendants admit that parts of the ROCKET AF clinical trial were conducted in the United States and that facilities in Philadelphia and other cities in Pennsylvania were among over 1,170 participating sites.  The Janssen Defendants and J&J deny the remaining allegations in paragraph 45 of Plaintiff's Complaint.

46.     The Janssen Defendants admit that clinical trials involving Xarelto have been and continue to be conducted in Pennsylvania, including in Philadelphia.  Because the remaining allegations in paragraph 46 of Plaintiff's Complaint are vague and ambiguous, the Janssen Defendants and J&J deny them.

47.     The Janssen Defendants admit that, on November 2, 2012, the FDA approved Xarelto® for the treatment of deep vein thrombosis (DVT), pulmonary embolism (PE), and for the reduction in the risk of recurrence of DVT and of PE.

48.     The Janssen Defendants admit that Xarelto® was studied in the EINSTEIN DVT, EINSTEIN PE and EINSTEIN Extension clinical trials.  The Janssen Defendants state that the publications in the New England Journal of Medicine and Expert Review of Cardiovascular Therapy cited in paragraph 48 of Plaintiff's Complaint speak for themselves.  The Janssen Defendants and J&J deny the remaining allegations in paragraph 48 of Plaintiff's Complaint.

49.     The Janssen Defendants state that promotional materials and the website for Xarelto® speak for themselves.  The Janssen Defendants and J&J deny the remaining allegations in paragraph 49 of Plaintiff's Complaint.

50.     The Janssen Defendants state that marketing materials for Xarelto® speak for themselves.  The Janssen Defendants and J&J deny the remaining allegations in paragraph 50 of Plaintiff's Complaint.

51.     The Janssen Defendants state that marketing materials for Xarelto® speak for themselves.  The Janssen Defendants and J&J deny the remaining allegations in paragraph 51 of Plaintiff's Complaint.

52.     The Janssen Defendants and J&J deny the allegations in paragraph 52 of Plaintiff's Complaint.

53.     The Janssen Defendants state that publications issued by the Institute for Safe Medication Practices speak for themselves.  The Janssen Defendants and J&J deny the remaining allegations in paragraph 53 of Plaintiff's Complaint.

54.     The Janssen Defendants and J&J deny the allegations in paragraph 54 of Plaintiff's Complaint.

55.     The Janssen Defendants admit that "[a] specific antidote for rivaroxaban is not available."  The Janssen Defendants further state that Xarelto®'s package inserts speak for

9

themselves. The Janssen Defendants and J&J deny the remaining allegations in paragraph 55 of Plaintiff's Complaint.

56.     The Janssen Defendants and J&J deny the allegations in paragraph 56 of Plaintiff's Complaint.

57.     The Janssen Defendants state that Medwatch reports filed with the FDA speak for themselves. The Janssen Defendants and J&J deny the remaining allegations in paragraph 57 of Plaintiff's Complaint.

58.     The Janssen Defendants state that Medwatch reports filed with the FDA speak for themselves. The Janssen Defendants and J&J deny the remaining allegations in paragraph 58 of Plaintiff's Complaint.

59.     The Janssen Defendants state that the ISMP materials speak for themselves. The Janssen Defendants and J&J deny the remaining allegations in paragraph 59 of Plaintiff's Complaint.

60.     The Janssen Defendants state that Medwatch reports filed with the FDA speak for themselves. The Janssen Defendants and J&J deny the remaining allegations in paragraph 60 of Plaintiff's Complaint.

61.     The Janssen Defendants state that reports received by German regulators speak for themselves. The Janssen Defendants and J&J deny the remaining allegations in paragraph 61 of Plaintiff's Complaint.

62.     The Janssen Defendants and J&J deny the allegations in paragraph 62 of Plaintiff's Complaint.

63.     The Janssen Defendants and J&J deny the allegations in paragraph 63 of Plaintiff's Complaint, including the allegations in subparagraphs (a)-(r) of Plaintiff's Complaint.

64.     The Janssen Defendants admit that the package insert for Xarelto® has changed since the medication was first approved for use in the United States by the FDA in July 2011. The Janssen Defendants and J&J deny the remaining allegations in paragraph 64 of Plaintiff's Complaint.

65.     The Janssen Defendants and J&J deny the allegations in paragraph 65 of Plaintiff's Complaint.

66.     The Janssen Defendants and J&J lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 66 of Plaintiff's Complaint and therefore deny those allegations.

67.     The Janssen Defendants and J&J deny the allegations in paragraph 67 of Plaintiff's Complaint as phrased and as incompletely and inaccurately presented.

68.     The Janssen Defendants and J&J deny the allegations in paragraph 68 of Plaintiff's Complaint.

69.     The Janssen Defendants state that Xarelto®'s website speaks for itself.  The Janssen Defendants and J&J deny the remaining allegations in paragraph 69 of Plaintiff's Complaint.

70.     The Janssen Defendants and J&J lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 70 of Plaintiff's Complaint and therefore deny those allegations.

71.     The Janssen Defendants state that advertising materials for Xarelto® speak for themselves.  The Janssen Defendants and J&J deny the remaining allegations in paragraph 71 of Plaintiff's Complaint.

72.     The Janssen Defendants and J&J deny the allegations in paragraph 72 of Plaintiff's Complaint.

73.     The Janssen Defendants state that the correspondence from the Office of Prescription Drug Promotion speaks for itself.  The Janssen Defendants and J&J deny the remaining allegations in paragraph 73 of Plaintiff's Complaint.

74.     The Janssen Defendants and J&J lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 74 of Plaintiff's Complaint and therefore deny those allegations.

75.     The Janssen Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 75 of Plaintiff's Complaint with regard to what information unidentified prescribing physicians for Plaintiff received and therefore deny those allegations.  The Janssen Defendants and J&J deny the remaining allegations in paragraph 75 of Plaintiff's Complaint.

76.     The Janssen Defendants and J&J deny the allegations in paragraph 76 of Plaintiff's Complaint.

77.     The Janssen Defendants state that the Xarelto® Medication Guide speaks for itself.  The Janssen Defendants and J&J deny the remaining allegations in paragraph 77 of Plaintiff's Complaint.

78.     The Janssen Defendants and J&J deny the allegations in paragraph 78 of Plaintiff's Complaint.

79.     The Janssen Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 79 of Plaintiff's Complaint with regard to what information unidentified prescribing physicians for Plaintiff relied upon and whether or not

Plaintiff ingested Xarelto® and therefore deny those allegations. The Janssen Defendants and J&J deny the remaining allegations in paragraph 79 of Plaintiff's Complaint.

80.     The Janssen Defendants and J&J deny the allegations in paragraph 80 of Plaintiff's Complaint.

81.     The Janssen Defendants and J&J deny the allegations in paragraph 81 of Plaintiff's Complaint.

82.     The Janssen Defendants and J&J deny the allegations in paragraph 82 of Plaintiff's Complaint.

83.     The Janssen Defendants and J&J deny the allegations in paragraph 83 of Plaintiff's Complaint.

84.     The Janssen Defendants and J&J deny the allegations in paragraph 84 of Plaintiff's Complaint.

85.     The Janssen Defendants and J&J deny the allegations in paragraph 85 of Plaintiff's Complaint.

86.     The Janssen Defendants and J&J deny the allegations in paragraph 86 of Plaintiff's Complaint.

87.     The Janssen Defendants and J&J deny the allegations in paragraph 87 of Plaintiff's Complaint.

88.     The Janssen Defendants and J&J lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 88 of Plaintiff's Complaint and therefore deny those allegations. The Janssen Defendants and J&J further deny that Xarelto® caused any injury to Plaintiff.

89.     The Janssen Defendants and J&J deny the allegations in paragraph 89 of Plaintiff's Complaint.

90.     The Janssen Defendants and J&J deny the allegations in paragraph 90 of Plaintiff's Complaint.

91.     The Janssen Defendants and J&J deny the allegations in paragraph 91 of Plaintiff's Complaint.

## COUNT I

92.     In response to the allegations in paragraph 92 of Plaintiff's Complaint, the Janssen Defendants and J&J restate and incorporate by reference their Answer to each and every paragraph of Plaintiff's Complaint.

93.     The Janssen Defendants admit that Xarelto® is the product of JPI in the United States.  The Janssen Defendants admit that JRD did research, development and testing on Xarelto®.  The Janssen Defendants admit that Janssen Ortho manufactured finished product. The Janssen Defendants and J&J deny the remaining allegations in paragraph 93 of Plaintiff's Complaint.

94.     In response to paragraph 94 of Plaintiff's Complaint, the Janssen Defendants and J&J state that the allegations contained therein call for a legal conclusion to which no response is necessary.  Responding further, the Janssen Defendants and J&J deny the remaining allegations contained in paragraph 94 of Plaintiff's Complaint.

95.     The Janssen Defendants and J&J lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 95 of Plaintiff's Complaint with regard to what information was communicated to Plaintiff and therefore deny those

allegations. The Janssen Defendants and J&J deny the remaining allegations contained in paragraph 95 of Plaintiff's Complaint.

96. In response to paragraph 96 of Plaintiff's Complaint, the Janssen Defendants and J&J state that the allegations contained therein call for a legal conclusion to which no response is necessary, but responding further, the Janssen Defendants and J&J deny those averments to the extent they seek to impose obligations on the Janssen Defendants and J&J beyond those required by law.

97. The Janssen Defendants and J&J deny the allegations in paragraph 97 of Plaintiff's Complaint.

98. The Janssen Defendants and J&J deny the allegations in paragraph 98 of Plaintiff's Complaint.

99. The Janssen Defendants and J&J deny the allegations in paragraph 99 of Plaintiff's Complaint.

100. The Janssen Defendants and J&J deny the allegations in paragraph 100 of Plaintiff's Complaint, including the allegations in subparagraphs (a)-(c) of Plaintiff's Complaint.

101. In response to paragraph 101 of Plaintiff's Complaint, the Janssen Defendants and J&J state that the allegations contained therein call for a legal conclusion to which no response is necessary, but responding further, the Janssen Defendants and J&J deny those averments to the extent they seek to impose obligations on the Janssen Defendants and J&J beyond those required by law.

102. The Janssen Defendants and J&J deny the allegations in paragraph 102 of Plaintiff's Complaint.

103.    The Janssen Defendants and J&J deny the allegations in paragraph 103 of Plaintiff's Complaint.

104.    The Janssen Defendants and J&J deny the allegations in paragraph 104 of Plaintiff's Complaint.

## COUNT II

105.    In response to the allegations in paragraph 105 of Plaintiff's Complaint, the Janssen Defendants and J&J restate and incorporate by reference their Answer to each and every paragraph of Plaintiff's Complaint.

106.    The Janssen Defendants and J&J deny the allegations in paragraph 106 of Plaintiff's Complaint.

107.    The Janssen Defendants admit that Xarelto® is a product of JPI in the United States.   The Janssen Defendants admit that JRD did research, development and testing on Xarelto®.   The Janssen Defendants admit that Janssen Ortho manufactured finished product. The Janssen Defendants and J&J deny the remaining allegations in paragraph 107 of Plaintiff's Complaint.

108.    In response to paragraph 108 of Plaintiff's Complaint, the Janssen Defendants and J&J state that the allegations contained therein call for a legal conclusion to which no response is necessary, but responding further, the Janssen Defendants and J&J deny those allegations to the extent they seek to impose obligations on the Janssen Defendants and J&J beyond those required by law.

109.    The Janssen Defendants and J&J deny the allegations in paragraph 109 of Plaintiff's Complaint, including the allegations in subparagraphs (a)-(g) of Plaintiff's Complaint.

110.    The Janssen Defendants and J&J deny the allegations in paragraph 110 of Plaintiff's Complaint.

111.    The Janssen Defendants admit that Xarelto® was expected to reach patients without substantial change from the condition in which Xarelto® was sold or distributed.  The Janssen Defendants lack knowledge or information sufficient to form a belief with regard to whether or not Xarelto® did in fact reach Plaintiff in that condition and therefore deny those allegations.  The Janssen Defendants and J&J deny the remaining allegations in paragraph 111 of Plaintiff's Complaint.

112.    The Janssen Defendants lack knowledge or information sufficient to form a belief with regard to the condition that Xarelto® reached Plaintiff and therefore deny those allegations. The Janssen Defendants and J&J deny the remaining allegations in paragraph 112 of Plaintiff's Complaint.

113.    The Janssen Defendants and J&J deny the allegations in paragraph 113 of Plaintiff's Complaint.

114.    The Janssen Defendants and J&J lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 114 of Plaintiff's Complaint and therefore deny those allegations.

115.    The Janssen Defendants and J&J deny the allegations in paragraph 115 of Plaintiff's Complaint.

116.    The Janssen Defendants and J&J deny the allegations in paragraph 116 of Plaintiff's Complaint.

117.    The Janssen Defendants and J&J deny the allegations in paragraph 117 of Plaintiff's Complaint.

118.    The Janssen Defendants and J&J deny the allegations in paragraph 118 of Plaintiff's Complaint.

119.    The Janssen Defendants and J&J deny the allegations in paragraph 119 of Plaintiff's Complaint.

## COUNT III

120.    In response to the allegations in paragraph 120 of Plaintiff's Complaint, the Janssen Defendants and J&J restate and incorporate by reference their Answer to each and every paragraph of Plaintiff's Complaint.

121.    In response to paragraph 121 of Plaintiff's Complaint, the Janssen Defendants and J&J state that the allegations contained therein call for a legal conclusion to which no response is necessary.  Responding further, the Janssen Defendants and J&J deny the remaining allegations contained in paragraph 121 of Plaintiff's Complaint.

122.    The Janssen Defendants and J&J deny the allegations in paragraph 122 of Plaintiff's Complaint, including the allegations in subparagraphs (a)-(n) of Plaintiff's Complaint.

123.    The Janssen Defendants and J&J lack knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiff ingested  Xarelto® as contained in Paragraph 123 of Plaintiff's Complaint and therefore deny those allegations.  The Janssen Defendants and J&J deny the remaining allegations in paragraph 123 of Plaintiff's Complaint.

124.    The Janssen Defendants and J&J deny the allegations in paragraph 124 of Plaintiff's Complaint.

125.    The Janssen Defendants and J&J admit that Plaintiff seeks damages for the alleged injuries in this action.  The Janssen Defendants and J&J deny that Xarelto® caused any injury Plaintiff.

## COUNT IV

126. In response to the allegations in paragraph 126 of Plaintiff's Complaint, the Janssen Defendants and J&J restate and incorporate by reference their Answer to each and every paragraph of Plaintiff's Complaint.

127. The Janssen Defendants admit that Xarelto® is a product of JPI in the United States. The Janssen Defendants admit that JRD did research, development and testing on Xarelto®. The Janssen Defendants admit that Janssen Ortho manufactured finished product. The Janssen Defendants and J&J deny the remaining allegations in paragraph 127 of Plaintiff's Complaint.

128. The Janssen Defendants and J&J deny the allegations in paragraph 128 of Plaintiff's Complaint.

129. The Janssen Defendants and J&J deny the allegations in paragraph 129 of Plaintiff's Complaint.

## COUNT V

130. In response to the allegations in paragraph 130 of Plaintiff's Complaint, the Janssen Defendants and J&J restate and incorporate by reference their Answer to each and every paragraph of Plaintiff's Complaint.

131. The Janssen Defendants admit that Xarelto® is a product of JPI in the United States. The Janssen Defendants admit that JRD did research, development and testing on Xarelto®. The Janssen Defendants admit that Janssen Ortho manufactured finished product. The Janssen Defendants and J&J deny the remaining allegations in paragraph 131 of Plaintiff's Complaint.

132.    In response to paragraph 132 of Plaintiff's Complaint, the Janssen Defendants and J&J state that the allegations contained therein call for a legal conclusion to which no response is necessary; responding further, the Janssen Defendants and J&J deny those allegations to the extent they seek to impose obligations on the Janssen Defendants and J&J beyond those required by law.

133.    The Janssen Defendants and J&J deny the allegations in paragraph 133 of Plaintiff's Complaint.

134.    The Janssen Defendants and J&J deny the allegations in paragraph 134 of Plaintiff's Complaint.

**WHEREFORE**, the Janssen Defendants and J&J deny that Plaintiffs are entitled to relief of any kind.

**WHEREFORE,** the Janssen Defendants and J&J demand judgment in their favor dismissing the Complaint with prejudice and for such other and further relief as the Court may deem just and proper.

## AFFIRMATIVE DEFENSES

The Janssen Defendants and J&J reserve the right to rely upon any of the following or additional defenses to claims asserted by Plaintiffs to the extent that such defenses are supported by information developed through discovery or evidence at trial. By asserting the following affirmative defenses, the Janssen Defendants and J&J do not allege or admit that they have the burden of proof or the burden of persuasion with respect to any of these matters. Moreover, nothing stated herein is intended or shall be construed as an acknowledgment that any particular issue or subject necessarily is relevant to Plaintiff's allegations. The Janssen Defendants and J&J assert all available affirmative defenses, including:

## FIRST AFFIRMATIVE DEFENSE

Plaintiff's Complaint fails, in whole or in part, to state a cause of action upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

Some or all of Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitations and/or statutes of repose.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by laches, waiver and/or estoppel.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrines of informed consent and release.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's alleged damages, if any, are barred in whole or in part by Plaintiff's failures to mitigate such damages.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's alleged injuries attributable to the use of the products at issue in this case, if any, were not caused by the medication at issue, but instead were caused by intervening and superseding causes or circumstances.

## SEVENTH AFFIRMATIVE DEFENSE

This Court is an improper venue for the trial of this action.

## EIGHTH AFFIRMATIVE DEFENSE

This Court is not the proper forum for the trial of this action and is an inconvenient forum for the just adjudication of Plaintiff's claims

## NINTH AFFIRMATIVE DEFENSE

Plaintiff knowingly and voluntarily assumed any and all risks as to matters alleged in the Complaint, and such assumption of the risk bars in whole or in part the damages plaintiff seeks to recover herein.

## TENTH AFFIRMATIVE DEFENSE

The acts and omissions of Plaintiff caused and/or contributed to the alleged damages, thereby barring or reducing the amount of recovery under the doctrines of contributory negligence and/or comparative negligence. Plaintiff's recovery, if any, therefore is barred or should be apportioned in accordance with applicable law.

## ELEVENTH AFFIRMATIVE DEFENSE

The claims of Plaintiff should be dismissed, reduced, offset, or barred in accordance with the principles of comparative negligence, equitable indemnity and comparative contribution.

## TWELFTH AFFIRMATIVE DEFENSE

Upon information and belief, if the injuries referred to in the Plaintiff's Complaints were caused by the prescription medicine alleged to be at issue here, which is denied, the injuries are the results of pre-existing and/or related medical conditions and/or idiosyncratic reactions to the medicine.

## THIRTEENTH AFFIRMATIVE DEFENSE

If Plaintiffs sustained injuries or incurred expenses as alleged, which is expressly denied, said injuries or expenses were caused by the unforeseeable alteration, unintended or improper handling or other unforeseeable misuse, or use inconsistent with the labeling of the prescription drug Xarelto®. Plaintiff's recovery is accordingly barred.

## FOURTEENTH AFFIRMATIVE DEFENSE

The alleged injuries and/or damages of Plaintiff, if any, were the result of unavoidable circumstances that could not have been prevented by anyone.

## FIFTEENTH AFFIRMATIVE DEFENSE

The injuries and damages claimed by Plaintiff, if any, were caused in whole or in part by the acts or omissions of persons over whom the Janssen Defendants and J&J have no control or right of control.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because the benefits of Xarelto® outweigh the risks, if any, that might be associated with the product.

## SEVENTEENTH AFFIRMATIVE DEFENSE

At all relevant times the product was in compliance with all applicable statutes and regulations, including those of the Food and Drug Administration. Compliance with such regulations demonstrates that due care was exercised with respect to the design, manufacture, testing, marketing, promotion and sale of this prescription drug, and that it was neither defective nor unreasonably dangerous. Plaintiff's recovery is accordingly barred.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are preempted, in whole or in part, by federal law pursuant to the Supremacy Clause of the United States Constitution by reason of the federal regulation of prescription drug manufacturing, testing, marketing, promotion and labeling.

## NINETEENTH AFFIRMATIVE DEFENSE

To the extent Plaintiff's claims are based on alleged misrepresentations or omissions made to the FDA, such claims are barred pursuant to *Buckman Co. v. Plaintiffs' Legal Comm.*,

531 U.S. 341 (2001).

### TWENTIETH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred as a matter of law pursuant to relevant provisions of the Restatement (Third) of Torts and the Restatement (Second) of Torts, including, but not limited to, § 402A, comment k.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

The Janssen Defendants and J&J rely upon all rights, defenses, and presumptions accorded to them under the terms and provisions of the Restatement (Second) of Torts: Products Liability § 402A and comments thereto (including, but not limited to, comment k) and/or the Restatement (Third) of Torts: Products Liability §§ 2, 4, and 6 and comments thereto, and other applicable law.

### TWENTY-SECOND AFFIRMATIVE DEFENSE

The warnings and instructions accompanying Xarelto® at the time of the occurrence or injuries alleged by Plaintiff were legally adequate warnings and instructions.

### TWENTY-THIRD AFFIRMATIVE DEFENSE

The methods, standards, and techniques utilized with respect to the design, manufacture, marketing, promotion and sale of Xarelto®, including but not limited to adequate warnings and instructions with respect to the product's use included in the product's package insert and other literature, conformed to the applicable state of the art. Xarelto®, including its labeling approved by the FDA, complied with the state of scientific and medical knowledge available at the time. Plaintiff's recovery accordingly is barred.

### TWENTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because Xarelto® was neither defective nor unreasonably dangerous in its design, manufacture, marketing or promotion and was reasonably safe and reasonably fit for its intended uses, thereby barring Plaintiff's recovery.

### TWENTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by the learned intermediary doctrine.

### TWENTY-SIXTH AFFIRMATIVE DEFENSE

This Court lacks personal jurisdiction over Johnson & Johnson, which is not a proper party defendant to this action, as it did not manufacture, market, distribute, or sell Xarelto®.

### TWENTY-SEVENTH AFFIRMATIVE DEFENSE

The Janssen Defendants and J&J assert that their conduct did not cause, proximately cause, solely cause, or solely proximately cause the injuries and/or damages alleged by Plaintiff.

### TWENTY-EIGHTH AFFIRMATIVE DEFENSE

The Janssen Defendants and J&J did not make to Plaintiff nor did they breach any express or implied warranties and/or breach any warranties created by law.

### TWENTY-NINTH AFFIRMATIVE DEFENSE

The Janssen Defendants and J&J deny that Plaintiff relied on any warranties alleged in the Complaint.

### THIRTIETH AFFIRMATIVE DEFENSE

To the extent that Plaintiff relied on any theory of breach of warranty, such claims are barred by applicable law, and for lack of privity with the Defendants and/or for failure of Plaintiff, or Plaintiff's representatives, to give timely notice to the Janssen Defendants or J&J of any alleged breach of warranty. The Janssen Defendants and J&J further specifically plead as to

any breach of warranty claim all affirmative defenses under the Uniform Commercial Code existing and which may arise in the future.

### THIRTY-FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part because the commercial speech relating to Xarelto® was not false or misleading and is protected under the First Amendment to the United States Constitution and the applicable state constitutions.

### THIRTY-SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims regarding warnings and labeling are barred in whole or in part by the doctrine of primary jurisdiction, in that the FDA is charged under law with determining the content of warnings and labeling for prescription drugs.

### THIRTY-THIRD AFFIRMATIVE DEFENSE

Plaintiff's damages, if any, are barred or limited by the payments received from collateral sources.

### THIRTY-FOURTH AFFIRMATIVE DEFENSE

To the extent that Plaintiff's claims have been settled or Plaintiff will in the future settle with any person or entity with respect to the injuries alleged in the Complaint, any liability of the Janssen Defendants and J&J, which is expressly denied, should be reduced accordingly.

### THIRTY-FIFTH AFFIRMATIVE DEFENSE

If Plaintiff has filed bankruptcy during the relevant time period of the events alleged in the Complaint or files for bankruptcy at some point in the future, the claims of Plaintiff may be "property of the bankruptcy estate" which should be prosecuted by the bankruptcy trustee rather than Plaintiff, or, if not disclosed by Plaintiff on the schedules and/or statement of financial affairs, may be barred by the doctrine of judicial estoppel.

## THIRTY-SIXTH AFFIRMATIVE DEFENSE

Applicable law does not recognize a post-sale duty to warn in the present circumstances. Accordingly, the Complaint fails to state a claim upon which relief may be granted for inadequate post-sale marketing or post-sale duty to warn.

## THIRTY-SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims, with the exception of Plaintiff's claims for punitive damages are governed by the law of the home state of Plaintiff.

## THIRTY-EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or part based on the law of the home states of Plaintiff and of any other state whose law is deemed to apply pursuant to principles of choice of law.

## THIRTY-NINTH AFFIRMATIVE DEFENSE

Any claim for punitive damages against the Janssen Defendants and J&J is governed by the law of the State of New Jersey.

## FORTIETH AFFIRMATIVE DEFENSE

The Janssen Defendants and J&J are entitled to the protections and limitations afforded under the New Jersey Punitive Damages Act, N.J.S.A. §§ 2A:15-5.9, *et seq.* and the New Jersey Product Liability Act, N.J.S.A. §§ 2A:58C-1, *et seq.*

## FORTY-FIRST AFFIRMATIVE DEFENSE

Any award of punitive damages in this action would violate the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and other applicable state and federal law, including *State Farm Mut. Auto. Ins. Co. v. Campbell, et al.,* 538 U.S. 408

(2003), *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996), *Philip Morris USA v. Williams*, 549 U.S. 346 (2007), and *Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008).

**FORTY-SECOND AFFIRMATIVE DEFENSE**

Any claim for punitive or exemplary damages against the Janssen Defendants and J&J is unconstitutional in that the standards for granting and asserting punitive or exemplary damages do not prohibit other plaintiff from seeking and recovering such damages against the Janssen Defendants and J&J for the same allegations of defect in the same products, and as such constitute multiple punishments for the same alleged conduct resulting in deprivation of the Janssen Defendants' and J&J's property without due process of law and will result in unjustified windfalls for Plaintiff and Plaintiff's counsel, in violation of the Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States and similar protections afforded by the New Jersey state constitution and that of any other state whose law is deemed to apply in this case.

**FORTY-THIRD AFFIRMATIVE DEFENSE**

Any claim for punitive or exemplary damages against the Janssen Defendants and J&J is unconstitutional in that recovery of punitive or exemplary damages in this case would violate the constitutional rights of the Janssen Defendants and J&J to due process and equal protection under the Fourteenth Amendment to the Constitution of the United States and similar protections afforded by the New Jersey state constitution and any other state whose law is deemed to apply in this case, and that any law of the state of New Jersey, whether enacted by that state's legislature or founded upon a decision or decisions of the courts, or that of any other state whose law is deemed to apply in this case, that would permit recovery of punitive or exemplary damages, is unconstitutional under these provisions.

## FORTY-FOURTH AFFIRMATIVE DEFENSE

Any claim for punitive damages against the Janssen Defendants and J&J cannot be maintained because an award of punitive damages under current New Jersey law, and any other state's law deemed to apply to this action, would be void for vagueness, both facially and as applied. Among other deficiencies, there is an absence of adequate notice of what conduct is subject to punishment; an absence of adequate notice of what punishment may be imposed; an absence of a predetermined limit, such as a maximum multiple of compensatory damages or a maximum amount, on the amount of punitive damages that a jury may impose; a risk that punitive damages will be imposed retrospectively based on conduct that was not deemed punishable at the time the conduct occurred; and it would permit and encourage arbitrary and discriminatory enforcement, all in violation of the due process clause of the Eighth and Fourteenth Amendments to the United States Constitution, the due process provisions of the New Jersey state constitution, and the common law and public policies of the state of New Jersey, and similar protections afforded by any other state whose law is deemed to apply in this case.

## FORTY-FIFTH AFFIRMATIVE DEFENSE

To the extent that the laws of New Jersey and any other state whose law is deemed to apply in this case, permit punishment to be measured by the net worth or financial status of the Janssen Defendants and J&J and imposes greater punishment on defendants with larger net worth, such an award would be unconstitutional because it permits arbitrary, capricious, and fundamentally unfair punishments, allows bias and prejudice to infect verdicts imposing punishment, allows punishment to be imposed based on lawful profits and conduct of the Janssen Defendants and J&J in other states, and allows dissimilar treatment of similarly situated defendants, in violation of the due process and equal protection provisions of the Fourteenth

Amendment to the United States Constitution, the Commerce Clause of the United States Constitution, the state laws and constitutional provisions of New Jersey, and similar protections afforded by any other state whose law is deemed to apply in this case.

## FORTY-SIXTH AFFIRMATIVE DEFENSE

The Janssen Defendants and J&J hereby give notice that they intend to rely upon any other affirmative defenses pled by any other defendant and not pled by themselves in this action to the extent they do not conflict with the Janssen Defendants and J&J's own affirmative defenses. The Janssen Defendants and J&J reserve their right to amend their Answer to assert any additional defenses and matters in avoidance that may be disclosed during the course of additional investigation and discovery.

## DEMAND FOR JUDGMENT

**WHEREFORE**, Defendants Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC, Janssen Ortho LLC and Johnson & Johnson respectfully request that the Court enter judgment in their favor on all claims, and against all other parties together with cost and fees and any other such legal and equitable relief as the Court may deem just and appropriate.

## JURY DEMAND

Defendants Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC, Janssen Ortho, LLC, and Johnson & Johnson request a trial by jury on all issues so triable.

Dated:  October 22, 2015            DRINKER BIDDLE & REATH LLP

By: */s/ Ryan T. Costa*
    Todd C. Schiltz (ID No. 3253)
    Ryan Costa (ID No. 5325)
    222 Delaware Ave. Ste. 1410
    Wilmington, DE 19801-1621
    Telephone: (302) 620-4209
    todd.schiltz@dbr.com
    ryan.costa@dbr.com

    *Attorneys for Defendants*
    *Janssen Pharmaceuticals, Inc.,*
    *Janssen Research & Development, LLC,*
    *Janssen Ortho LLC, and Johnson & Johnson*

82977240.1

31

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| FLORENCE R. FURCHAK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Case No. 1:15-cv-00778-RGA |
| | ) |
| JANSSEN RESEARCH & DEVELOPMENT, | )  JURY TRIAL DEMANDED |
| LLC F/K/A JOHNSON AND JOHNSON | ) |
| PHARMACEUTICAL RESEARCH AND | ) |
| DEVELOPMENT, LLC, JANSSEN | ) |
| PHARMACEUTICALS, INC. | ) |
| F/K/A JANSSEN PHARMACEUTICA INC. | ) |
| F/K/A ORTHO-MCNEIL-JANSSEN | ) |
| PHARMACEUTICALS, INC., | ) |
| JANSSEN ORTHO, LLC, | ) |
| JOHNSON & JOHNSON, | ) |
| JOHNSON & JOHNSON COMPANY, | ) |
| BAYER HEALTHCARE | ) |
| PHARMACEUTICALS, INC., | ) |
| BAYER CORPORATION, | ) |
| BAYER HEALTHCARE LLC, | ) |
| BAYER PHARMA AG, | ) |
| BAYER HEALTHCARE AG, BAYER AG, | ) |
| AND DOES, INC. | ) |
| | ) |
| Defendants. | ) |

## ANSWER AND ADDITIONAL DEFENSES OF DEFENDANT
## BAYER HEALTHCARE LLC TO PLAINTIFF'S COMPLAINT

Defendant Bayer HealthCare LLC serves its Answer and Additional Defenses to

Plaintiff's Complaint (the "Complaint") and states as follows:

ANSWER TO
COMMON ALLEGATIONS

1.      Bayer HealthCare LLC lacks knowledge or information sufficient to form a belief

as to the truth of the allegations in paragraph 1, and therefore the allegations in paragraph 1 are

denied.

1

2.      The allegations in paragraph 2 are not directed to Bayer HealthCare LLC, and therefore no response is required.

3.      The allegations in paragraph 3 are not directed to Bayer HealthCare LLC, and therefore no response is required.

4.      The allegations in paragraph 4 are not directed to Bayer HealthCare LLC, and therefore no response is required.

5.      The allegations in paragraph 5 are not directed to Bayer HealthCare LLC, and therefore no response is required.

6.      The allegations in paragraph 6 are not directed to Bayer HealthCare LLC, and therefore no response is required.

7.      The allegations in paragraph 7 are not directed to Bayer HealthCare LLC, and therefore no response is required.

8.      The allegations in paragraph 8 are not directed to Bayer HealthCare LLC, and therefore no response is required.

9.      The allegations contained in paragraph 9 are not directed at Bayer HealthCare LLC, and therefore do not require a response of Bayer HealthCare LLC.  To the extent a response is deemed required, Bayer HealthCare LLC admits that Bayer HealthCare Pharmaceuticals Inc. is a Delaware corporation with its principal place of business in New Jersey.  Bayer HealthCare LLC admits that Bayer HealthCare Pharmaceuticals Inc.'s registered agent for service of process in the state of Delaware is Corporation Service Company.  Bayer HealthCare LLC admits that Bayer HealthCare Pharmaceuticals Inc. had some involvement in certain aspects of the research and development of Xarelto®.  Bayer HealthCare LLC further admits that Bayer HealthCare Pharmaceuticals Inc. had limited involvement in promoting

Xarelto® to a certain limited number of United States healthcare professionals, and denies that Bayer HealthCare Pharmaceuticals Inc. otherwise marketed or promoted Xarelto®. Bayer HealthCare LLC denies that Bayer HealthCare Pharmaceuticals Inc. sold Xarelto®. Bayer HealthCare LLC denies the allegations in paragraph 9 to the extent not specifically admitted.

10.    The allegations contained in paragraph 10 are not directed at Bayer HealthCare LLC, and therefore do not require a response of Bayer HealthCare LLC. To the extent a response is deemed required, Bayer HealthCare LLC admits that Bayer HealthCare Pharmaceuticals Inc. had some involvement in certain aspects of the research and testing of Xarelto®. Bayer HealthCare LLC further admits that Bayer HealthCare Pharmaceuticals Inc. had limited involvement in promoting Xarelto® to a certain limited number of United States healthcare professionals, and denies that Bayer HealthCare Pharmaceuticals Inc. otherwise marketed or promoted Xarelto®. Bayer HealthCare LLC denies that Bayer HealthCare Pharmaceuticals Inc. designed, manufactured, advertised, sold or distributed Xarelto®. Bayer HealthCare LLC admits that Xarelto® is a factor Xa inhibitor indicated to reduce the risk of stroke and systemic embolism in patients with nonvalvular atrial fibrillation; for the treatment of deep vein thrombosis ("DVT"), pulmonary embolism ("PE"), and for the reduction in the risk of recurrence of DVT and of PE; and for the prophylaxis of DVT, which may lead to PE in patients undergoing knee or hip replacement surgery. Bayer HealthCare LLC denies the allegations in paragraph 10 to the extent not specifically admitted.

11.    The allegations contained in paragraph 11 are not directed at Bayer HealthCare LLC, and therefore do not require a response of Bayer HealthCare LLC. To the extent a response is deemed required, Bayer HealthCare LLC admits that Bayer Pharma AG is a German company with its principal place of business in Germany. Bayer HealthCare LLC admits that

Bayer Pharma AG is a pharmaceutical company.  Bayer HealthCare LLC admits that Bayer Pharma AG was formerly known as Bayer Schering Pharma AG, which was formerly known as Schering AG, and that Bayer Pharma AG is the same corporate entity as Bayer Schering Pharma AG and Schering AG.  Bayer HealthCare LLC admits that Schering AG was renamed Bayer Schering Pharma AG effective December 29, 2006.  Bayer HealthCare LLC admits that Bayer Schering Pharma AG was renamed Bayer Pharma AG effective July 1, 2011. Bayer HealthCare LLC admits that Bayer Pharma AG participated in the research and development of Xarelto®.  Bayer HealthCare LLC denies that Bayer Pharma AG sold or marketed Xarelto® in the United States.  Bayer HealthCare LLC denies the allegations in paragraph 11 to the extent not specifically admitted.

12.     The allegations contained in paragraph 12 are not directed at Bayer HealthCare LLC, and therefore do not require a response of Bayer HealthCare LLC.  To the extent a response is deemed required, Bayer HealthCare LLC admits that Bayer Pharma AG participated in the design, research and testing of Xarelto®.  Bayer HealthCare LLC denies that Bayer Pharma AG advertised, promoted, marketed, sold or distributed Xarelto® in the United States. Bayer HealthCare LLC admits that Bayer Pharma AG manufactured the active pharmaceutical ingredient in Xarelto®, but denies that Bayer Pharma AG manufactured finished product of Xarelto®, which was distributed in the United States.  Bayer HealthCare LLC admits that Xarelto® is a factor Xa inhibitor indicated in the United States to reduce the risk of stroke and systemic embolism in patients with nonvalvular atrial fibrillation; for the treatment of DVT, PE, and for the reduction in the risk of recurrence of DVT and of PE; and for the prophylaxis of DVT, which may lead to PE in patients undergoing knee or hip replacement surgery.  Bayer HealthCare LLC denies the allegations in paragraph 12 to the extent not specifically admitted.

4

13.     The allegations contained in paragraph 13 are not directed at Bayer HealthCare LLC, and therefore do not require a response of Bayer HealthCare LLC.  To the extent a response is deemed required, Bayer HealthCare LLC admits that Bayer Corporation is an Indiana corporation with its principal place of business at 100 Bayer Road, Pittsburgh, Pennsylvania 15205.  Bayer HealthCare LLC admits that Bayer Corporation's registered agent for service of process in the state of Delaware is Corporation Service Company.  Bayer HealthCare LLC denies the allegations in paragraph 13 to the extent not specifically admitted.

14.     The allegations contained in paragraph 14 are not directed at Bayer HealthCare LLC, and therefore do not require a response of Bayer HealthCare LLC.  To the extent a response is deemed required, Bayer HealthCare LLC admits that all of the issued and outstanding shares of common stock of Bayer HealthCare Pharmaceuticals Inc. are owned by Schering Berlin Inc., that Schering Berlin Inc. is wholly owned by Bayer HealthCare Holdings LLC and that the sole member of Bayer HealthCare Holdings LLC is Bayer Corporation.  Bayer HealthCare LLC denies the allegations in paragraph 14 to the extent not specifically admitted.

15.     The allegations contained in paragraph 15 are not directed at Bayer HealthCare LLC, and therefore do not require a response of Bayer HealthCare LLC.  To the extent a response is deemed required, Bayer HealthCare LLC states that since January 1, 2003, Bayer Corporation has been a holding company that does not conduct operations.  Bayer HealthCare LLC further states that before January 1, 2003, Bayer Corporation conducted operations through divisions.  Bayer HealthCare LLC denies that Bayer Corporation researched, developed, designed, licensed, manufactured, distributed, sold or marketed Xarelto®, except that Bayer HealthCare LLC admits that a former division of Bayer Corporation, as it was configured before January 1, 2003, participated in the early development of Xarelto®.  For a further response,

Bayer HealthCare LLC states that relevant documentation regarding work relating to Xarelto®
of such former division is now held by Bayer HealthCare Pharmaceuticals Inc. Bayer
HealthCare LLC denies the allegations in paragraph 15 to the extent not specifically admitted.

16. Bayer HealthCare LLC admits that Bayer HealthCare LLC is a limited liability
company formed in Delaware and that Bayer HealthCare LLC's principal place of business is in
New Jersey. Bayer HealthCare LLC admits that Bayer HealthCare LLC's registered agent for
service of process in the state of Delaware is Corporation Service Company. Bayer HealthCare
LLC denies the allegations in paragraph 16 to the extent not specifically admitted.

17. Bayer HealthCare LLC denies that Bayer HealthCare LLC designed, researched,
manufactured, tested, advertised, promoted, marketed, sold or distributed Xarelto®, and denies
the remaining allegations in paragraph 17.

18. The allegations contained in paragraph 18 are not directed at Bayer HealthCare
LLC, and therefore do not require a response of Bayer HealthCare LLC. To the extent a
response is deemed required, Bayer HealthCare LLC admits that Bayer HealthCare AG has its
principal place of business in Germany. Bayer HealthCare LLC denies the allegations in
paragraph 18 to the extent not specifically admitted.

19. The allegations contained in paragraph 19 are not directed at Bayer HealthCare
LLC, and therefore do not require a response of Bayer HealthCare LLC. To the extent a
response is deemed required, Bayer HealthCare LLC denies the allegations in paragraph 19.

20. The allegations contained in paragraph 20 are not directed at Bayer HealthCare
LLC, and therefore do not require a response of Bayer HealthCare LLC. To the extent a
response is deemed required, Bayer HealthCare LLC admits that Bayer AG is a German
company with its headquarters in Leverkusen, North Rhine-Westphalia, Germany. Bayer

HealthCare LLC admits that Bayer AG is a holding company and that the business areas conducted by its various direct and indirect subsidiaries include material science, crop science and healthcare, including pharmaceuticals.  Bayer HealthCare LLC denies the allegations in paragraph 20 to the extent not specifically admitted.

21.     Bayer HealthCare LLC admits that Janssen Research & Development, LLC, formerly known as Johnson and Johnson Pharmaceutical Research and Development, LLC, submitted NDA numbers 022406 and 202439 for Xarelto® to the United States Food and Drug Administration (the "FDA").  Bayer HealthCare LLC denies the allegations in paragraph 21 to the extent not specifically admitted.

22.     Bayer HealthCare LLC admits that Janssen Research & Development, LLC, formerly known as Johnson and Johnson Pharmaceutical Research and Development, LLC, submitted NDA numbers 022406 and 202439 for Xarelto® to the FDA.  Bayer HealthCare LLC denies the allegations in paragraph 22 to the extent not specifically admitted.

23.     Bayer HealthCare LLC admits that the Complaint contains allegations referring to Bayer HealthCare LLC and other entities collectively as "Defendants" or otherwise, but Bayer HealthCare LLC is not answering the Complaint on behalf of any entity other than Bayer HealthCare LLC, and is not answering allegations that are directed to any entity other than Bayer HealthCare LLC.  Bayer HealthCare LLC accordingly denies the allegations in paragraph 23.

24.     The allegations in paragraph 24 are directed to Defendants collectively.  Bayer HealthCare LLC is not answering the allegations in paragraph 24 on behalf of any entity other than Bayer HealthCare LLC.  Because of the vagueness and ambiguity of the allegations in paragraph 24, Bayer HealthCare LLC lacks knowledge or information sufficient to form a belief as to the truth of those allegations, and therefore those allegations are denied.

25.     The allegations in paragraph 25 are directed to Defendants collectively.  Bayer HealthCare LLC is not answering the allegations in paragraph 25 on behalf of any entity other than Bayer HealthCare LLC.  Bayer HealthCare LLC denies the allegations in paragraph 25.

26.     The allegations in paragraph 26 are directed to Defendants collectively.  Bayer HealthCare LLC is not answering the allegations in paragraph 26 on behalf of any entity other than Bayer HealthCare LLC.  Bayer HealthCare LLC denies the allegations in paragraph 26.

27.     The allegations in paragraph 27 are directed to Defendants collectively.  Bayer HealthCare LLC is not answering the allegations in paragraph 27 on behalf of any entity other than Bayer HealthCare LLC.  Bayer HealthCare LLC denies that Bayer HealthCare LLC designed, manufactured, marketed, sold or distributed Xarelto®.  Bayer HealthCare LLC lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiff ingested and used Xarelto®, and that Plaintiff suffered the injuries or losses alleged, and therefore those allegations are denied.  Bayer HealthCare LLC denies that any of Plaintiff's alleged injuries or losses were a result of the use of Xarelto®, and denies the remaining allegations in paragraph 27.

28.     The allegations in paragraph 28 are directed to Defendants collectively.  Bayer HealthCare LLC is not answering the allegations in paragraph 28 on behalf of any entity other than Bayer HealthCare LLC.  Bayer HealthCare LLC denies the allegations in paragraph 28.

29.     Bayer HealthCare LLC admits that on July 1, 2011, Xarelto® was approved by the United States Food and Drug Administration (the "FDA") for the prophylaxis of DVT which may lead to PE in patients undergoing knee or hip replacement surgery.  Bayer HealthCare LLC admits that Xarelto® belongs to a class of medications sometimes referred to as new oral

anticoagulants.  Bayer HealthCare LLC denies the allegations in paragraph 29 to the extent not specifically admitted.

30.     Bayer HealthCare LLC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 30 regarding products other than Xarelto®, and therefore those allegations are denied.  Bayer HealthCare LLC denies that Bayer HealthCare LLC marketed Xarelto®.  Because Plaintiff's allegations regarding the safety and efficacy of warfarin (also known as Coumadin®) are vague and ambiguous, Bayer HealthCare LLC lacks knowledge or information sufficient to form a belief as to the truth of those allegations, and therefore those allegations are denied.  Bayer HealthCare LLC denies the remaining allegations in paragraph 30.

31.     Bayer HealthCare LLC admits that Xarelto® is an oral anticoagulant and a factor Xa inhibitor available by prescription.  Bayer HealthCare LLC further admits that Xarelto® is available in the following dosage: 20 mg tablets, 15 mg tablets, and 10 mg tablets.  Bayer HealthCare LLC denies the allegations in paragraph 31 to the extent not specifically admitted.

32.     The allegations in paragraph 32 are directed to Defendants collectively.  Bayer HealthCare LLC is not answering the allegations in paragraph 32 on behalf of any entity other than Bayer HealthCare LLC.  Bayer HealthCare LLC admits that on July 1, 2011, Xarelto® was approved by the FDA for the prophylaxis of DVT which may lead to PE in patients undergoing knee or hip replacement surgery.  Bayer HealthCare LLC denies the allegations in paragraph 32 to the extent not specifically admitted.

33.     Bayer HealthCare LLC admits, on information and belief, that the Regulation of Coagulation in Orthopedic Surgery to Prevent Deep Venous Thrombosis and Pulmonary Embolism clinical trials (the "RECORD" clinical trials) were conducted and involved evaluating

the use of Xarelto® for the prevention of venous thromboembolism in patients undergoing total knee replacement or total hip replacement. The results of the RECORD clinical trials, in their entirety, speak for themselves. The New England Journal of Medicine and Lancet articles referenced in paragraph 33, in their entirety, speak for themselves. Bayer HealthCare LLC denies the allegations in paragraph 33 to the extent not specifically admitted.

34. The allegations in paragraph 34 are directed to Defendants collectively. Bayer HealthCare LLC is not answering the allegations in paragraph 34 on behalf of any entity other than Bayer HealthCare LLC. Bayer HealthCare LLC denies the allegations in paragraph 34.

35. Bayer HealthCare LLC denies the allegations in paragraph 35.

36. The allegations in paragraph 36 are directed to Defendants collectively. Bayer HealthCare LLC is not answering the allegations in paragraph 36 on behalf of any entity other than Bayer HealthCare LLC. Bayer HealthCare LLC admits that on November 4, 2011, Xarelto® was approved by the FDA to reduce the risk of stroke and systemic embolism in patients with nonvalvular atrial fibrillation. Bayer HealthCare LLC admits, on information and belief, that the Rivaroxaban Once Daily Oral Direct Factor Xa Inhibition Compared with Vitamin K Antagonism for Prevention of Stroke and Embolism Trial in Atrial Fibrillation clinical trial (the "ROCKET AF" clinical trial) was conducted and involved evaluating the use of Xarelto® to reduce the risk of stroke and systemic embolism in patients with nonvalvular atrial fibrillation. The results of the ROCKET AF clinical trial, in their entirety, speak for themselves. Bayer HealthCare LLC denies the allegations in paragraph 36 to the extent not specifically admitted.

37. Bayer HealthCare LLC admits, on information and belief, that the ROCKET AF clinical trial involved evaluating the use of Xarelto® to reduce the risk of stroke and systemic

embolism in patients with nonvalvular atrial fibrillation.  The results of the ROCKET AF clinical trial, in their entirety, speak for themselves.  The New England Journal of Medicine article referenced in paragraph 37, in its entirety, speaks for itself.  Bayer HealthCare LLC denies the allegations in paragraph 37 to the extent not specifically admitted.

38.     The allegations in paragraph 38 are directed to Defendants collectively.  Bayer HealthCare LLC is not answering the allegations in paragraph 38 on behalf of any entity other than Bayer HealthCare LLC.  Bayer HealthCare LLC admits, on information and belief, that the ROCKET AF clinical trial compared the safety and efficacy of once-daily oral Xarelto® with adjusted-dose oral warfarin for the prevention of stroke and systemic embolism in patients with nonvalvular atrial fibrillation.  Bayer HealthCare LLC denies Plaintiff's characterization of the ROCKET AF clinical trial.  Bayer HealthCare LLC denies the allegations in paragraph 38 to the extent not specifically admitted.

39.     Bayer HealthCare LLC denies the allegations in paragraph 39.

40.     Bayer HealthCare LLC denies the allegations in paragraph 40.  Bayer HealthCare LLC affirmatively states that Plaintiff has excerpted and referenced a selected portion of an FDA Draft Briefing Document for the September 8, 2011 Meeting of the FDA's Cardiovascular and Renal Drugs Advisory Committee.  The FDA Draft Briefing Document, in its entirety, speaks for itself.

41.     Plaintiff attempts to excerpt a letter from Public Citizen, which is in writing and in its entirety speaks for itself.  Bayer HealthCare LLC denies Plaintiff's characterization of the document and otherwise denies the allegations in paragraph 41.

42.     Bayer HealthCare LLC denies the allegations in paragraph 42.  Bayer HealthCare LLC affirmatively states that Plaintiff has excerpted and referenced a selected portion of an FDA

Draft Briefing Document for the September 8, 2011 Meeting of the FDA's Cardiovascular and Renal Drugs Advisory Committee. The FDA Draft Briefing Document, in its entirety, speaks for itself.

43. Plaintiff has excerpted and referenced a selected portion of the transcript of the September 8, 2011 Meeting of the FDA's Cardiovascular and Renal Drugs Advisory Committee. The transcript of the September 8, 2011 Meeting, in its entirety, speaks for itself. Bayer HealthCare LLC denies the remaining allegations in paragraph 43.

44. The allegations in paragraph 44 are directed to Defendants collectively. Bayer HealthCare LLC is not answering the allegations in paragraph 44 on behalf of any entity other than Bayer HealthCare LLC. Bayer HealthCare LLC denies the allegations in paragraph 44. Bayer HealthCare LLC denies Plaintiff's characterization of the FDA's Summary Review, which in its entirety speaks for itself.

45. Bayer HealthCare LLC admits, on information and belief, that there were study sites for the ROCKET AF clinical trial in foreign countries and in the United States. Bayer HealthCare LLC denies the allegations in paragraph 45 to the extent not specifically admitted.

46. The allegations in paragraph 46 are directed to Defendants collectively. Bayer HealthCare LLC is not answering the allegations in paragraph 46 on behalf of any entity other than Bayer HealthCare LLC. Bayer HealthCare LLC denies the allegations in paragraph 46.

47. Bayer HealthCare LLC denies that Bayer HealthCare LLC labeled Xarelto®. Bayer HealthCare LLC admits that on November 2, 2012, Xarelto® was approved by the FDA for the treatment of DVT, PE, and for the reduction in the risk of recurrence of DVT and of PE, and that the Xarelto® labeling as of November 2012 reflected information regarding the indication for the treatment of DVT, PE, and for the reduction in the risk of recurrence of DVT

and PE. Bayer HealthCare LLC denies the allegations in paragraph 47 to the extent not specifically admitted.

48.     Bayer HealthCare LLC admits, on information and belief, that the clinical trial EINSTEIN-DVT was a comparative study conducted and that involved evaluating the use of Xarelto® for the prevention of deep vein thrombosis in patients with confirmed acute symptomatic deep vein thrombosis without symptomatic pulmonary embolism. Bayer HealthCare LLC admits, on information and belief, that the clinical trial EINSTEIN-PE was a comparative study conducted and that involved evaluating the use of Xarelto® for the prevention of pulmonary embolism in patients with confirmed acute symptomatic pulmonary embolism with or without symptomatic deep vein thrombosis. Bayer HealthCare LLC admits, on information and belief, that the clinical trial EINSTEIN-Extension was a comparative study conducted and that involved evaluating the use of Xarelto® for the long term prevention of recurrent symptomatic venous thromboembolism in patients with confirmed symptomatic deep vein thrombosis or pulmonary embolism and who had received prior treatment with Xarelto® or a vitamin K antagonist before clinical trial enrollment. The results of the EINSTEIN-DVT, EINSTEIN-PE, and EINSTEIN-Extension clinical trials, in their entirety, speak for themselves. The New England Journal of Medicine articles referenced in paragraph 48, in their entirety, speak for themselves. Plaintiff has cited an article entitled *Oral rivaroxaban after symptomatic venous thromboembolism: the continued treatment study*, from the Expert Review of Cardiovascular Therapy. Bayer HealthCare LLC lacks knowledge or information sufficient to form a belief as to the truth of the accuracy of Plaintiff's characterization of that article, and therefore Plaintiff's characterization is denied. Bayer HealthCare LLC denies the allegations in paragraph 48 to the extent not specifically admitted.

49.     The allegations in paragraph 49 are directed to Defendants collectively. Bayer HealthCare LLC is not answering the allegations in paragraph 49 on behalf of any entity other than Bayer HealthCare LLC. Bayer HealthCare LLC denies that Bayer HealthCare LLC promoted Xarelto®, and denies the remaining allegations in paragraph 49.

50.     The allegations in paragraph 50 are directed to Defendants collectively. Bayer HealthCare LLC is not answering the allegations in paragraph 50 on behalf of any entity other than Bayer HealthCare LLC. Bayer HealthCare LLC denies that Bayer HealthCare LLC marketed Xarelto®. Because Plaintiff's allegations regarding the safety and efficacy of warfarin (also known as Coumadin®) are vague and ambiguous, Bayer HealthCare LLC lacks knowledge or information sufficient to form a belief as to the truth of those allegations, and therefore those allegations are denied. Bayer HealthCare LLC denies the remaining allegations in paragraph 50.

51.     The allegations in paragraph 51 are directed to Defendants collectively. Bayer HealthCare LLC is not answering the allegations in paragraph 51 on behalf of any entity other than Bayer HealthCare LLC. Bayer HealthCare LLC denies that Bayer HealthCare LLC marketed or promoted Xarelto®, and denies the remaining allegations in paragraph 51.

52.     Bayer HealthCare LLC denies the allegations in paragraph 52.

53.     Bayer HealthCare LLC admits that Plaintiff has quoted selected excerpts from the October 3, 2012, issue of QuarterWatch published by the Institute for Safe Medication Practices, regarding statements purportedly made by FDA reviewers regarding Xarelto®. The October 3, 2012, issue of QuarterWatch published by the Institute for Safe Medication Practices, in its entirety, speaks for itself, and Bayer HealthCare LLC is not admitting the accuracy of any information or assertions in the QuarterWatch publication. For a further response, the statements made by FDA reviewers regarding Xarelto®, in their entirety, speak for themselves. Bayer

14

HealthCare LLC lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the location of the headquarters of the Institute for Safe Medication Practices, and therefore those allegations are denied. Bayer HealthCare LLC denies the allegations in paragraph 53 to the extent not specifically admitted.

54. The allegations in paragraph 54 are directed to Defendants collectively. Bayer HealthCare LLC is not answering the allegations in paragraph 54 on behalf of any entity other than Bayer HealthCare LLC. Bayer HealthCare LLC denies the allegations in paragraph 54.

55. Bayer HealthCare LLC admits, on information and belief, that Xarelto® is also known as rivaroxaban and that a specific antidote for rivaroxaban is not available. Bayer HealthCare LLC admits that the original Xarelto® label stated in the Overdosage section that a specific antidote of rivaroxaban is not available. Bayer HealthCare LLC further states that the labeling for Xarelto® provided appropriate warnings regarding the risks associated with the use of Xarelto®. Bayer HealthCare LLC denies the allegations in paragraph 55 to the extent not specifically admitted.

56. Bayer HealthCare LLC denies the allegations in paragraph 56.

57. Bayer HealthCare LLC lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 57, and therefore those allegations are denied. For a further response, the submission of a MedWatch form to the FDA does not constitute an admission or assertion that the use of Xarelto® caused or contributed to the event that is the subject of the MedWatch form. Bayer HealthCare LLC further responds that all anticoagulants approved for use in the United States are associated with reports of adverse events, and that the labeling for Xarelto® provided appropriate warnings regarding the risks associated with the use of Xarelto®.

58.     Bayer HealthCare LLC lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 58, and therefore those allegations are denied.  For a further response, the submission of a MedWatch form to the FDA does not constitute an admission or assertion that the use of Xarelto® caused or contributed to the event that is the subject of the MedWatch form.  Bayer HealthCare LLC further responds that all anticoagulants approved for use in the United States are associated with reports of adverse events, and that the labeling for Xarelto® provided appropriate warnings regarding the risks associated with the use of Xarelto®.

59.     Plaintiff fails to identify the specific publication that Plaintiff purportedly quotes from in paragraph 59.  Bayer HealthCare LLC denies the allegations in paragraph 59.

60.     Bayer HealthCare LLC lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 60, and therefore those allegations are denied.  For a further response, the submission of a MedWatch form to the FDA does not constitute an admission or assertion that the use of Xarelto® caused or contributed to the event that is the subject of the MedWatch form.  Bayer HealthCare LLC further responds that all anticoagulants approved for use in the United States are associated with reports of adverse events, and that the labeling for Xarelto® provided appropriate warnings regarding the risks associated with the use of Xarelto®.

61.     Bayer HealthCare LLC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 61, and therefore those allegations are denied.

62.     The allegations in paragraph 62 are directed to Defendants collectively.  Bayer HealthCare LLC is not answering the allegations in paragraph 62 on behalf of any entity other than Bayer HealthCare LLC.  Bayer HealthCare LLC denies the allegations in paragraph 62.

63.      The allegations in paragraph 63 are directed to Defendants collectively.  Bayer HealthCare LLC is not answering the allegations in paragraph 63 on behalf of any entity other than Bayer HealthCare LLC.  Bayer HealthCare LLC denies the allegations in paragraph 63, including all subparts.  For a further response, Bayer HealthCare LLC states that the labeling for Xarelto® provided appropriate warnings regarding the risks associated with the use of Xarelto®.

64.      The allegations in paragraph 64 are directed to Defendants collectively.  Bayer HealthCare LLC is not answering the allegations in paragraph 64 on behalf of any entity other than Bayer HealthCare LLC.  Bayer HealthCare LLC denies that Bayer HealthCare LLC marketed or labeled Xarelto®.  For a further response, Bayer HealthCare LLC states that the original Xarelto® label was issued in July 2011 and has been supplemented at various times since then.  The Xarelto® labels, in their entirety, speak for themselves.  Bayer HealthCare LLC denies the remaining allegations in paragraph 64.  Bayer HealthCare LLC further responds that the labeling for Xarelto® provided appropriate warnings regarding the risks associated with the use of Xarelto®.

65.      The allegations in paragraph 65 are directed to Defendants collectively.  Bayer HealthCare LLC is not answering the allegations in paragraph 65 on behalf of any entity other than Bayer HealthCare LLC.  Bayer HealthCare LLC denies that Bayer HealthCare LLC marketed or advertised Xarelto®, and denies the remaining allegations in paragraph 65.

66.      Bayer HealthCare LLC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 66, and therefore those allegations are denied.

67.      The allegations in paragraph 67 are directed to Defendants collectively.  Bayer HealthCare LLC is not answering the allegations in paragraph 67 on behalf of any entity other than Bayer HealthCare LLC.  Bayer HealthCare LLC denies that Bayer HealthCare LLC

promoted or advertised Xarelto®, and denies the remaining allegations in the first sentence in paragraph 67. Bayer HealthCare LLC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence in paragraph 67, and therefore the allegations in the second sentence in paragraph 67 are denied.

68. The allegations in paragraph 68 are directed to Defendants collectively. Bayer HealthCare LLC is not answering the allegations in paragraph 68 on behalf of any entity other than Bayer HealthCare LLC. Bayer HealthCare LLC denies that Bayer HealthCare LLC marketed Xarelto®, and denies the remaining allegations in paragraph 68.

69. The allegations in paragraph 69 are directed to Defendants collectively. Bayer HealthCare LLC is not answering the allegations in paragraph 69 on behalf of any entity other than Bayer HealthCare LLC. Bayer HealthCare LLC denies that Bayer HealthCare LLC marketed Xarelto®, and denies the remaining allegations in the first sentence in paragraph 69. Bayer HealthCare LLC denies the allegations in the second sentence in paragraph 69. Bayer HealthCare LLC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the third sentence in paragraph 69, and therefore the allegations in the third sentence in paragraph 69 are denied.

70. The allegations in paragraph 70 are directed to Defendants collectively. Bayer HealthCare LLC is not answering the allegations in paragraph 70 on behalf of any entity other than Bayer HealthCare LLC. Bayer HealthCare LLC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 70, and therefore those allegations are denied.

71. The allegations in paragraph 71 are directed to Defendants collectively. Bayer HealthCare LLC is not answering the allegations in paragraph 71 on behalf of any entity other

Case 2:14-md-02592-EEF-MBN   Document 1480-26   Filed 02/05/19   Page 92 of 113

than Bayer HealthCare LLC.   Bayer HealthCare LLC denies that Bayer HealthCare LLC marketed Xarelto®, and denies the remaining allegations in paragraph 71.

72.     The allegations in paragraph 72 are directed to Defendants collectively.  Bayer HealthCare LLC is not answering the allegations in paragraph 72 on behalf of any entity other than Bayer HealthCare LLC.  Bayer HealthCare LLC denies the allegations in paragraph 72.

73.     The allegations in paragraph 73 are directed to Defendants collectively.  Bayer HealthCare LLC is not answering the allegations in paragraph 73 on behalf of any entity other than Bayer HealthCare LLC.  Bayer HealthCare LLC denies that the FDA Office of Prescription Drug Promotion ("OPDP") sent an untitled letter to Bayer HealthCare LLC regarding a print advertisement for Xarelto®.   For a further response, Bayer HealthCare LLC states, on information and belief, that the OPDP sent an untitled letter to Johnson & Johnson International, Inc. on or about June 6, 2013.  Bayer HealthCare LLC denies the allegations in paragraph 73 regarding the contents of the letter from the OPDP regarding a print advertisement for Xarelto® to the extent that they are inconsistent with the language of the letter or omit portions of the letter.  The referenced OPDP letter, in its entirety, speaks for itself.   Bayer HealthCare LLC denies the remaining allegations in paragraph 73.

74.     Bayer HealthCare LLC lacks knowledge or information sufficient to form a belief as to the truth of the allegation in paragraph 74 regarding Plaintiff's awareness, and therefore those allegations are denied.   Bayer HealthCare LLC denies the remaining allegations in paragraph 74.

75.     The allegations in paragraph 75 are directed to Defendants collectively.  Bayer HealthCare LLC is not answering the allegations in paragraph 75 on behalf of any entity other

than Bayer HealthCare LLC. Bayer HealthCare LLC denies that Bayer HealthCare LLC marketed or promoted Xarelto®, and denies the remaining allegations in paragraph 75.

76. The allegations in paragraph 76 are directed to Defendants collectively. Bayer HealthCare LLC is not answering the allegations in paragraph 76 on behalf of any entity other than Bayer HealthCare LLC. Bayer HealthCare LLC denies the allegations in paragraph 76.

77. The allegations in paragraph 77 are directed to Defendants collectively. Bayer HealthCare LLC is not answering the allegations in paragraph 77 on behalf of any entity other than Bayer HealthCare LLC. Bayer HealthCare LLC denies the allegations in paragraph 77. For a further response, Bayer HealthCare LLC states that the Medication Guide for Xarelto®, in its entirety, speaks for itself. Bayer HealthCare LLC further states that appropriate warnings were provided regarding the risks associated with the use of Xarelto®.

78. The allegations in paragraph 78 are directed to Defendants collectively. Bayer HealthCare LLC is not answering the allegations in paragraph 78 on behalf of any entity other than Bayer HealthCare LLC. Bayer HealthCare LLC denies the allegations in paragraph 78.

79. The allegations in paragraph 79 are directed to Defendants collectively. Bayer HealthCare LLC is not answering the allegations in paragraph 79 on behalf of any entity other than Bayer HealthCare LLC. Bayer HealthCare LLC lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiff's medical providers prescribed and Plaintiff ingested Xarelto®, and therefore those allegations are denied. Bayer HealthCare LLC denies the remaining allegations in paragraph 79.

80. The allegations in paragraph 80 are directed to Defendants collectively. Bayer HealthCare LLC is not answering the allegations in paragraph 80 on behalf of any entity other than Bayer HealthCare LLC. Bayer HealthCare LLC denies the allegations in paragraph 80.

81.     The allegations in paragraph 81 are directed to Defendants collectively.  Bayer HealthCare LLC is not answering the allegations in paragraph 81 on behalf of any entity other than Bayer HealthCare LLC.  Bayer HealthCare LLC denies the allegations in paragraph 81.

82.     The allegations in paragraph 82 are directed to Defendants collectively.  Bayer HealthCare LLC is not answering the allegations in paragraph 82 on behalf of any entity other than Bayer HealthCare LLC.  Bayer HealthCare LLC denies the allegations in paragraph 82.

83.     The allegations in paragraph 83 are directed to Defendants collectively.  Bayer HealthCare LLC is not answering the allegations in paragraph 83 on behalf of any entity other than Bayer HealthCare LLC.  Bayer HealthCare LLC denies the allegations in paragraph 83.

84.     The allegations in paragraph 84 are directed to Defendants collectively.  Bayer HealthCare LLC is not answering the allegations in paragraph 84 on behalf of any entity other than Bayer HealthCare LLC.  Bayer HealthCare LLC denies the allegations in paragraph 84.

85.     The allegations in paragraph 85 are directed to Defendants collectively.  Bayer HealthCare LLC is not answering the allegations in paragraph 85 on behalf of any entity other than Bayer HealthCare LLC.  Bayer HealthCare LLC denies the allegations in paragraph 85.

86.      The allegations in paragraph 86 are directed to Defendants collectively.  Bayer HealthCare LLC is not answering the allegations in paragraph 86 on behalf of any entity other than Bayer HealthCare LLC.  Bayer HealthCare LLC denies the allegations in paragraph 86.

87.     The allegations in paragraph 87 are directed to Defendants collectively.  Bayer HealthCare LLC is not answering the allegations in paragraph 87 on behalf of any entity other than Bayer HealthCare LLC.  Bayer HealthCare LLC denies the allegations in paragraph 87.

## ANSWER TO
## FACTUAL ALLEGATIONS

88.     Bayer HealthCare LLC denies that any of Plaintiff's alleged injuries were a result of the ingestion of Xarelto®.  Bayer HealthCare LLC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 88, and therefore the remaining allegations in paragraph 88 are denied.

89.     Bayer HealthCare LLC denies the allegations in paragraph 89.

90.     The allegations in paragraph 90 are directed to Defendants collectively.  Bayer HealthCare LLC is not answering the allegations in paragraph 90 on behalf of any entity other than Bayer HealthCare LLC.  Bayer HealthCare LLC denies the allegations in paragraph 90.

91.     The allegations in paragraph 91 are directed to Defendants collectively.  Bayer HealthCare LLC is not answering the allegations in paragraph 91 on behalf of any entity other than Bayer HealthCare LLC.  Bayer HealthCare LLC denies the allegations in paragraph 91.  For a further response, Bayer HealthCare LLC states that appropriate warnings regarding the risks associated with the use of Xarelto® were provided.

## ANSWER TO
## COUNT I: STRICT LIABILITY

92.     Bayer HealthCare LLC incorporates by reference its responses to all paragraphs of the Complaint as if fully set forth herein.

93.     The allegations in paragraph 93 are directed to Defendants collectively.  Bayer HealthCare LLC is not answering the allegations in paragraph 93 on behalf of any entity other than Bayer HealthCare LLC.  Bayer HealthCare LLC denies the allegations in paragraph 93.

94.     The allegations in paragraph 94 state conclusions of law to which no response is required.  To the extent that a response is required, the allegations in paragraph 94 are directed to Defendants collectively.  Bayer HealthCare LLC is not answering the allegations in paragraph 94

on behalf of any entity other than Bayer HealthCare LLC. Bayer HealthCare LLC denies that Bayer HealthCare LLC manufactured or distributed Xarelto®, and denies the remaining allegations in paragraph 94.

95.    The allegations in paragraph 95 are directed to Defendants collectively. Bayer HealthCare LLC is not answering the allegations in paragraph 95 on behalf of any entity other than Bayer HealthCare LLC. Bayer HealthCare LLC denies the allegations in paragraph 95.

96.    The allegations in paragraph 96 are directed to Defendants collectively. Bayer HealthCare LLC is not answering the allegations in paragraph 96 on behalf of any entity other than Bayer HealthCare LLC. Bayer HealthCare LLC denies the allegations in paragraph 96.

97.    The allegations in paragraph 97 are directed to Defendants collectively. Bayer HealthCare LLC is not answering the allegations in paragraph 97 on behalf of any entity other than Bayer HealthCare LLC. Bayer HealthCare LLC denies the allegations in paragraph 97.

98.    The allegations in paragraph 98 are directed to Defendants collectively. Bayer HealthCare LLC is not answering the allegations in paragraph 98 on behalf of any entity other than Bayer HealthCare LLC. Bayer HealthCare LLC denies the allegations in paragraph 98.

99.    The allegations in paragraph 99 are directed to Defendants collectively. Bayer HealthCare LLC is not answering the allegations in paragraph 99 on behalf of any entity other than Bayer HealthCare LLC. Bayer HealthCare LLC denies the allegations in paragraph 99.

100.    The allegations in paragraph 100 are directed to Defendants collectively. Bayer HealthCare LLC is not answering the allegations in paragraph 100 on behalf of any entity other than Bayer HealthCare LLC. Bayer HealthCare LLC denies the allegations in paragraph 100, including all subparts.

101.    The allegations in paragraph 101 are directed to Defendants collectively.  Bayer HealthCare LLC is not answering the allegations in paragraph 101 on behalf of any entity other than Bayer HealthCare LLC.  Bayer HealthCare LLC denies the allegations in paragraph 101.

102.    The allegations in paragraph 102 are directed to Defendants collectively.  Bayer HealthCare LLC is not answering the allegations in paragraph 102 on behalf of any entity other than Bayer HealthCare LLC.  Bayer HealthCare LLC denies the allegations in paragraph 102.

103.    The allegations in paragraph 103 are directed to Defendants collectively.  Bayer HealthCare LLC is not answering the allegations in paragraph 103 on behalf of any entity other than Bayer HealthCare LLC.  Bayer HealthCare LLC denies the allegations in paragraph 103.

104.    The allegations in paragraph 104 are directed to Defendants collectively.  Bayer HealthCare LLC is not answering the allegations in paragraph 104 on behalf of any entity other than Bayer HealthCare LLC.  Bayer HealthCare LLC denies the allegations in paragraph 104.

<u>ANSWER TO<br>COUNT II: STRICT LIABILITY – DESIGN DEFECT,<br>MARKETING DEFECT AND MANUFACTURING DEFECT</u>

105.    Bayer HealthCare LLC incorporates by reference its responses to all paragraphs of the Complaint as if fully set forth herein.

106.    The allegations in paragraph 106 are directed to Defendants collectively.  Bayer HealthCare LLC is not answering the allegations in paragraph 106 on behalf of any entity other than Bayer HealthCare LLC.  Bayer HealthCare LLC denies the allegations in paragraph 106.

107.    The allegations in paragraph 107 are directed to Defendants collectively.  Bayer HealthCare LLC is not answering the allegations in paragraph 107 on behalf of any entity other than Bayer HealthCare LLC.  Bayer HealthCare LLC denies the allegations in paragraph 107.

108.    The allegations in paragraph 108 state conclusions of law to which no response is required.  To the extent that a response is required, the allegations in paragraph 108 are directed to Defendants collectively.  Bayer HealthCare LLC is not answering the allegations in paragraph 108 on behalf of any entity other than Bayer HealthCare LLC.  Bayer HealthCare LLC denies that Bayer HealthCare LLC manufactured Xarelto®, and denies the remaining allegations in paragraph 108.

109.    The allegations in paragraph 109 are directed to Defendants collectively.  Bayer HealthCare LLC is not answering the allegations in paragraph 109 on behalf of any entity other than Bayer HealthCare LLC.  Bayer HealthCare LLC denies the allegations in paragraph 109, including all subparts.

110.    The allegations in paragraph 110 are directed to Defendants collectively.  Bayer HealthCare LLC is not answering the allegations in paragraph 110 on behalf of any entity other than Bayer HealthCare LLC.  Bayer HealthCare LLC denies the allegations in paragraph 110.

111.    The allegations in paragraph 111 are directed to Defendants collectively.  Bayer HealthCare LLC is not answering the allegations in paragraph 111 on behalf of any entity other than Bayer HealthCare LLC.  Bayer HealthCare LLC admits that it expected Xarelto® to reach patients, who were prescribed Xarelto® by physicians in accordance with FDA-approved labeling, without substantial change from the condition in which Xarelto® was sold.  Bayer HealthCare LLC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 111, and therefore those allegations are denied.

112.    The allegations in paragraph 112 are directed to Defendants collectively.  Bayer HealthCare LLC is not answering the allegations in paragraph 112 on behalf of any entity other than Bayer HealthCare LLC.  Bayer HealthCare LLC admits that it expected Xarelto® to reach

patients, who were prescribed Xarelto® by physicians in accordance with FDA-approved labeling, without substantial change from the condition in which Xarelto® was sold. Bayer HealthCare LLC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 112, and therefore those allegations are denied.

113.    The allegations in paragraph 113 are directed to Defendants collectively. Bayer HealthCare LLC is not answering the allegations in paragraph 113 on behalf of any entity other than Bayer HealthCare LLC. Bayer HealthCare LLC denies the allegations in paragraph 113.

114.    The allegations in paragraph 114 are directed to Defendants collectively. Bayer HealthCare LLC is not answering the allegations in paragraph 114 on behalf of any entity other than Bayer HealthCare LLC. Bayer HealthCare LLC denies the allegations in paragraph 114.

115.    The allegations in paragraph 115 are directed to Defendants collectively. Bayer HealthCare LLC is not answering the allegations in paragraph 115 on behalf of any entity other than Bayer HealthCare LLC. Bayer HealthCare LLC admits that Xarelto® has not been withdrawn from the market, but denies that Bayer HealthCare LLC had any obligation to withdraw Xarelto® from the market and denies the remaining allegations in paragraph 115.

116.    The allegations in paragraph 116 are directed to Defendants collectively. Bayer HealthCare LLC is not answering the allegations in paragraph 116 on behalf of any entity other than Bayer HealthCare LLC. Bayer HealthCare LLC denies the allegations in paragraph 116.

117.    The allegations in paragraph 117 are directed to Defendants collectively. Bayer HealthCare LLC is not answering the allegations in paragraph 117 on behalf of any entity other than Bayer HealthCare LLC. Bayer HealthCare LLC denies the allegations in paragraph 117.

118.    The allegations in paragraph 118 are directed to Defendants collectively.  Bayer HealthCare LLC is not answering the allegations in paragraph 118 on behalf of any entity other than Bayer HealthCare LLC.  Bayer HealthCare LLC denies the allegations in paragraph 118.

119.    The allegations in paragraph 119 are directed to Defendants collectively.  Bayer HealthCare LLC is not answering the allegations in paragraph 119 on behalf of any entity other than Bayer HealthCare LLC.  Bayer HealthCare LLC denies the allegations in paragraph 119.

<u>ANSWER TO</u>
<u>COUNT III: NEGLIGENCE</u>

120.    Bayer HealthCare LLC incorporates by reference its responses to all paragraphs of the Complaint as if fully set forth herein.

121.    The allegations in paragraph 121 state conclusions of law to which no response is required.  To the extent that a response is required, the allegations in paragraph 121 are directed to Defendants collectively.  Bayer HealthCare LLC is not answering the allegations in paragraph 121 on behalf of any entity other than Bayer HealthCare LLC.  Bayer HealthCare LLC denies that Bayer HealthCare LLC violated any applicable duty relating to Xarelto®, including any duty with respect to the design, study, development, manufacture, promotion, sale, marketing or distribution of Xarelto®.  Bayer HealthCare LLC denies the remaining allegations in paragraph 121.

122.    The allegations in paragraph 122 are directed to Defendants collectively.  Bayer HealthCare LLC is not answering the allegations in paragraph 122 on behalf of any entity other than Bayer HealthCare LLC.  Bayer HealthCare LLC denies the allegations in paragraph 122, including all subparts.

123.    The allegations in paragraph 123 are directed to Defendants collectively.  Bayer HealthCare LLC is not answering the allegations in paragraph 123 on behalf of any entity other

than Bayer HealthCare LLC. Bayer HealthCare LLC denies the allegations in the first and second sentences in paragraph 123. Bayer HealthCare LLC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the last sentence in paragraph 123, and therefore the allegations in the last sentence in paragraph 123 are denied.

124.    The allegations in paragraph 124 are directed to Defendants collectively. Bayer HealthCare LLC is not answering the allegations in paragraph 124 on behalf of any entity other than Bayer HealthCare LLC. Bayer HealthCare LLC denies the allegations in paragraph 124.

125.    Paragraph 125 contains no allegations to which a response is required. To the extent that a response is required, Bayer HealthCare LLC denies that Plaintiff is entitled to any damages.

ANSWER TO
COUNT IV: BREACH OF WARRANTY –
BREACH OF EXPRESS WARRANTY

126.    Bayer HealthCare LLC incorporates by reference its responses to all paragraphs of the Complaint as if fully set forth herein.

127.    The allegations in paragraph 127 are directed to Defendants collectively. Bayer HealthCare LLC is not answering the allegations in paragraph 127 on behalf of any entity other than Bayer HealthCare LLC. Bayer HealthCare LLC denies the allegations in paragraph 127.

128.    The allegations in paragraph 128 are directed to Defendants collectively. Bayer HealthCare LLC is not answering the allegations in paragraph 128 on behalf of any entity other than Bayer HealthCare LLC. Bayer HealthCare LLC denies the allegations in paragraph 128.

129.    The allegations in paragraph 129 are directed to Defendants collectively. Bayer HealthCare LLC is not answering the allegations in paragraph 129 on behalf of any entity other than Bayer HealthCare LLC. Bayer HealthCare LLC denies the allegations in paragraph 129.

## ANSWER TO
## COUNT V: BREACH OF WARRANTY –
## BREACH OF IMPLIED WARRANTY

130.    Bayer HealthCare LLC incorporates by reference its responses to all paragraphs of the Complaint as if fully set forth herein.

131.    The allegations in paragraph 131 are directed to Defendants collectively.  Bayer HealthCare LLC is not answering the allegations in paragraph 131 on behalf of any entity other than Bayer HealthCare LLC.  Bayer HealthCare LLC denies the allegations in paragraph 131.

132.    The allegations in paragraph 132 are directed to Defendants collectively.  Bayer HealthCare LLC is not answering the allegations in paragraph 132 on behalf of any entity other than Bayer HealthCare LLC.  Bayer HealthCare LLC denies the allegations in paragraph 132.

133.    The allegations in paragraph 133 are directed to Defendants collectively.  Bayer HealthCare LLC is not answering the allegations in paragraph 133 on behalf of any entity other than Bayer HealthCare LLC.  Bayer HealthCare LLC denies the allegations in paragraph 133.

134.    The allegations in paragraph 134 are directed to Defendants collectively.  Bayer HealthCare LLC is not answering the allegations in paragraph 134 on behalf of any entity other than Bayer HealthCare LLC.  Bayer HealthCare LLC denies the allegations in paragraph 134.

Bayer HealthCare LLC denies the allegations contained in the unnumbered paragraph following paragraph 134, and denies any wrongdoing whatsoever.  Bayer HealthCare LLC denies that it is liable to Plaintiff, either for damages, and/or any other relief or costs or attorneys' fees or interest in any amount whatsoever.

Bayer HealthCare LLC requests that Plaintiff's Complaint be dismissed with prejudice, that judgment be entered in favor of Bayer HealthCare LLC and against Plaintiff, and that Bayer

HealthCare LLC be awarded the costs of this action, together with such other and further relief as may be appropriate.

All allegations of the Complaint not expressly admitted are denied.

## ADDITIONAL DEFENSES

Discovery and investigation may reveal that one or more of the following additional defenses should be available to Bayer HealthCare LLC in this matter.  Bayer HealthCare LLC accordingly asserts these separate and additional defenses.  Upon completion of discovery, if the facts warrant, Bayer HealthCare LLC may withdraw any of these additional defenses as may be appropriate.  By setting forth these additional defenses, Bayer HealthCare LLC does not assume the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to Plaintiff.  Moreover, nothing stated herein is intended or shall be construed as an acknowledgment that any particular issue or subject necessarily is relevant to Plaintiff's allegations.  Bayer HealthCare LLC further reserves the right to amend its Answer and Additional Defenses, and to assert additional defenses and other claims, as this matter proceeds.

Further answering, and by way of additional defenses, Bayer HealthCare LLC states as follows:

1.      Plaintiff's Complaint, and each and every count contained therein, fails to state a cause of action or claim upon which relief can be granted.

2.      Some or all of Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitations and/or statutes of repose.

3.      Plaintiff's claims are barred, in whole or in part, by laches, waiver, and/or estoppel.

4.      Plaintiff's claims are barred, in whole or in part, by Plaintiff's failure to mitigate Plaintiff's alleged damages.

5.      The acts and omissions of Plaintiff caused and/or contributed to the alleged damages, thereby barring or reducing the amount of recovery under the doctrines of contributory negligence and/or comparative negligence.  Plaintiff's recovery, if any, therefore is barred or should be apportioned in accordance with applicable law.

6.      The alleged injuries sustained by Plaintiff, if any, were caused, in whole or in part, by pre-existing physical, medical, and/or physiological conditions, for which Bayer HealthCare LLC has no legal responsibility.

7.      If Plaintiff suffered injuries as alleged in the Complaint, which is expressly denied, such injuries arose from, and were caused by, risks, hazards, and dangers knowingly assumed by Plaintiff.  Plaintiff's recovery accordingly is barred or should be reduced by Plaintiff's assumption of the risk.

8.      If the injuries claimed by Plaintiff were related to the use of Xarelto®, which is expressly denied, any such injuries were the result of an idiosyncratic or allergic reaction to Xarelto®.

9.      The injuries and damages claimed by Plaintiff, if any, resulted from an intervening or superseding cause and/or causes, and any act or omission on the part of Bayer HealthCare LLC was not the proximate and/or competent producing cause of such alleged injuries and damages.

10.     The injuries and damages claimed by Plaintiff, if any, are barred or must be reduced, because those damages arose from the acts or omissions of persons or entities other than Bayer HealthCare LLC, for whom Bayer HealthCare LLC has no legal responsibility.

11.     If Plaintiff sustained the injuries or incurred the expenses as alleged, which is expressly denied, said injuries or expenses were caused by the unforeseeable alteration, improper handling, or other unforeseeable misuse, or use inconsistent with the labeling of the prescription drug Xarelto®.  Plaintiff's recovery is accordingly barred.

12.     The alleged injuries and damages, if any, were the result of unavoidable circumstances that could not have been prevented by any person, including Bayer HealthCare LLC.

13.     Plaintiff's claims are barred, because the benefits of Xarelto® outweigh the risks, if any, that might be associated with the product.

14.     The claims in the Complaint are barred in whole or in part by the learned intermediary doctrine.

15.     Plaintiff's Complaint fails to state a claim to the extent Bayer HealthCare LLC did not manufacture or distribute the product allegedly used by Plaintiff.

16.     Bayer HealthCare LLC owed no legal duty to Plaintiff because Bayer HealthCare LLC did not manufacture or distribute Xarelto®.

17.     Plaintiff's Complaint fails to state a claim upon which relief can be granted in that the methods, standards, and techniques utilized with respect to the design, manufacture, marketing, promotion, and sale of Xarelto®, including, but not limited to, adequate warnings and instructions with respect to the product's use included in the product's package insert and other literature, conformed to the applicable state of the art.  Xarelto®, including its labeling approved by the FDA, complied with the state of scientific and medical knowledge available at the time. Plaintiff's recovery accordingly is barred.

18.     Plaintiff's claims are barred, because Xarelto® was neither defective nor unreasonably dangerous in its design, manufacture, marketing, or promotion and was reasonably safe and reasonably fit for its intended uses, thereby barring Plaintiff's recovery.

19.     The warnings and instructions accompanying Xarelto® at the time of the occurrence or injuries alleged by Plaintiff were legally adequate warnings and instructions.

20.     Plaintiff's claims are barred as a matter of law pursuant to relevant provisions of the Restatement (Third) of Torts, including, but not limited to, the Restatement (Third) of Torts: Product Liability, § 6, comment f, and the Restatement (Second) of Torts, including, but not limited to, § 402A, comment k.

21.     Bayer HealthCare LLC gives notice that to the extent that the sophisticated purchaser doctrine is applicable to any of the allegations in the Complaint, Bayer HealthCare LLC intends to rely upon same in defense of this action.

22.     The prescription drug Xarelto® complied with the applicable product safety regulations promulgated by the FDA.  Compliance with such regulations demonstrates that due care was exercised with respect to the design, manufacture, testing, marketing, promotion, and sale of this prescription drug, and that it was neither defective nor unreasonably dangerous. Plaintiff's recovery is accordingly barred.

23.     Any claims by Plaintiff relating to alleged communications with regulatory agencies of the United States government are barred in whole or in part by operation of applicable law, including First and Fourteenth Amendment rights to petition the government.

24.     Plaintiff's claims are barred, in whole or in part, because the commercial speech relating to Xarelto® is protected under the First Amendment of the United States Constitution and the applicable state constitution.

25. Plaintiff's claims regarding warnings and labeling are barred in whole or in part by the doctrine of primary jurisdiction, in that the FDA is charged under law with determining the content of warnings and labeling for prescription drugs.

26. Plaintiff's claims are preempted, in whole or in part, by federal law pursuant to the Supremacy Clause of the United States Constitution by reason of the federal regulation of prescription drug manufacturing, testing, marketing, promotion, and labeling.

27. To the extent that Plaintiff's claims are based on alleged misrepresentations made to the FDA, such claims are barred pursuant to *Buckman Co. v. Plaintiffs' Legal Comm.,* 531 U.S. 341 (2001).

28. Plaintiff cannot state a claim upon which relief may be granted with regard to warnings and labeling for prescription drugs, because the remedy sought by Plaintiff is subject to the exclusive regulation of the FDA.

29. This Court should abstain from adjudicating Plaintiff's claims relating to warnings and labeling in deference to the interpretation of regulations relating to prescription drug labeling by the FDA.

30. Plaintiff did not detrimentally rely on any labeling, warnings or information concerning Xarelto®.

31. Bayer HealthCare LLC did not make any representations of fact material to Plaintiff's treatment with Xarelto®.

32. Plaintiff's prescribing physicians did not rely on any representations by Bayer HealthCare LLC in treating Plaintiff.

33. Applicable law does not recognize a post-sale duty to warn in the present circumstances. Accordingly, to the extent that Plaintiff seeks recovery for any alleged breach of

a post-sale duty to warn, the Complaint fails to state a claim upon which relief may be granted for inadequate post-sale marketing or post-sale duty to warn.

34. Each item of economic loss alleged in the Complaint may have been or may be replaced or indemnified in whole or in part by collateral sources, and therefore is not recoverable in this action.

35. To the extent that Plaintiff's Complaint seeks recovery for benefits entitled to be received or actually received from any other source for injuries alleged in the Complaint, such benefits are not recoverable in this action under applicable law.

36. To the extent that Plaintiff's claims have been settled or Plaintiff will in the future settle with any person or entity with respect to the injuries asserted in the Complaint, the liability of Bayer HealthCare LLC, if any, should be reduced accordingly.

37. Plaintiff's claims may be barred, in whole or in part, due to res judicata, collateral estoppel, or by release of claims.

38. Plaintiff's Complaint may fail to join indispensable parties necessary for the just adjudication of this matter.

39. Plaintiff's Complaint fails to state a claim upon which relief can be granted for several or joint and several liability.

40. Plaintiff's Complaint fails to state a claim upon which relief can be granted as to costs, attorneys' fees, pre-judgment interest, or post-judgment interest.

41. The Court lacks personal jurisdiction over Bayer HealthCare LLC with respect to Plaintiff's claims.

42. Venue is improper.

43. Bayer HealthCare LLC was insufficiently served with process.

44.     This Court is not the proper forum, and is an inconvenient forum, for the just adjudication of Plaintiff's claims.

45.     Plaintiff's claims for breach of warranty are barred, because Plaintiff failed to give timely notice of any alleged breach of warranty.

46.     Bayer HealthCare LLC did not sell or distribute Xarelto® to Plaintiff, and Plaintiff did not receive or rely upon any representations or warranties as alleged in the Complaint.  Plaintiff's claims for breach of warranty, express or implied, are barred by lack of privity between Plaintiff and Bayer HealthCare LLC.

47.     Plaintiff's claims for breach of warranty, express or implied, are barred by the applicable state's Uniform Commercial Code or other applicable law.

48.     Plaintiff's Complaint fails to state a claim upon which relief can be granted for punitive or exemplary damages.

49.     No act or omission of Bayer HealthCare LLC caused or contributed to Plaintiff's alleged injuries.  Further, the Complaint fails to allege conduct by Bayer HealthCare LLC upon which an award of punitive or exemplary damages can be based.  No act or omission of Bayer HealthCare LLC was outrageous, willful, unconscionable, oppressive, fraudulent, wanton, malicious, reckless, intentional, or with actual malice, with reckless disregard for the safety of Plaintiff or with conscious disregard and indifference to the rights, safety and welfare of Plaintiff.  Accordingly, Plaintiff's Complaint fails to state a claim upon which relief can be granted for punitive or exemplary damages.

50.     Bayer HealthCare LLC denies any conduct for which punitive or exemplary damages could or should be awarded and denies that sufficient evidence has been or can be

produced to support or sustain the imposition of punitive damages pursuant to the applicable standard(s) of proof.

51.     Permitting recovery of punitive or exemplary damages in this case would be unconstitutionally vague and/or overbroad and would violate Bayer HealthCare LLC's constitutional rights as secured by the Fifth and Seventh Amendments to the United States Constitution, would violate its rights to due process and equal protection under the Fourteenth Amendment of the United States Constitution and the prohibition against excessive fines in the United States Constitution, and would contravene other provisions of the United States Constitution and any applicable state constitution.

52.     Plaintiff cannot recover punitive or exemplary damages against Bayer HealthCare LLC, because such an award, which is penal in nature, would violate Bayer HealthCare LLC's constitutional rights under the United States Constitution and any applicable state constitution, unless Bayer HealthCare LLC is afforded the same procedural safeguards as are criminal defendants, including, but not limited to, the right to avoid self-incrimination, the right to forego production and disclosure of incriminating documents, and the right to the requirement of a level of proof beyond a reasonable doubt.

53.     Any imposition of punitive or exemplary damages in this case would contravene the Commerce Clause of the United States Constitution, in that such an award would constitute, if imposed, an undue and unreasonable burden on interstate commerce.

54.     Any award of punitive or exemplary damages is barred to the extent that it is inconsistent with the standards and limitations set forth in *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996), *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408

(2003), *Philip Morris USA v. Williams*, 549 U.S. 346 (2007), and *Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008).

55.    With respect to Plaintiff's demand for punitive or exemplary damages, Bayer HealthCare LLC specifically reserves the right to assert any and all standards or limitations regarding the determination and enforceability of punitive or exemplary damages awards under any state law that may be applicable to Plaintiff's claims, including, but not limited to, New Jersey law, including the provisions of the Punitive Damages Act, <u>N.J.S.A.</u> 2A:15-5.9 et seq., and/or any other applicable state law.   Bayer HealthCare LLC reserves the right to seek bifurcation of Plaintiff's punitive damages claims pursuant to any applicable law, including, but not limited to, <u>N.J.S.A.</u> 2A:15-5.13.

56.    Bayer HealthCare LLC asserts all available defenses under the Michigan Product Liability Act, MCL 600.2945 to 600.2949a, or any other applicable law.

57.    Plaintiff's damages, if any, must be reduced to the extent that they exceed the statutory amounts allowed pursuant to MCL 600.2946a.

58.    Plaintiff's claims are barred by MCL 600.2946(5), because Xarelto® was approved for safety and efficacy by the FDA.  Xarelto® and its labeling were in compliance with the FDA's approval.

59.    Plaintiff's damages, if any, must be reduced pursuant to MCL 600.2956 and 600.2959.

60.    Bayer HealthCare LLC will show upon trial of this action, and hereby gives notice pursuant to MCL 600.2957, that the negligence of persons or entities, currently not parties to this litigation, is the sole proximate cause, or at least a contributing cause, of the alleged damages and/or injuries complained of by Plaintiff and that notice as required pursuant to the

applicable court rule will be given with respect to the fault of such non-parties, identifying same to the extent possible.

61.     Plaintiff's strict liability claims fail to state a product liability claim under Michigan law.

62.     Plaintiff is not entitled to punitive or exemplary damages under Michigan law.

63.     Plaintiff's alleged injuries were proximately caused by circumstances, events, or persons over whom Bayer HealthCare LLC had no authority or control and for which Bayer HealthCare LLC is not answerable in damages to Plaintiff.

64.     Plaintiff's recovery, if any, must be reduced pursuant to 10 Del. Code § 8132.

65.     Plaintiff, or Plaintiff's physicians, were aware or should have been aware of any potential hazards reported to be associated with the use of Xarelto®, and appreciated or should have appreciated these potential hazards based, in part, on the directions, information, and warnings provided in the product labeling and on the information generally available in the medical and scientific literature.  Therefore, there was no duty to warn of any alleged danger or defect.

66.     Plaintiff is barred from recovering any damages to the extent that there was no practical or technically feasible alternative design or formulation that would have prevented the harm alleged by Plaintiff without substantially impairing the usefulness or intended purpose of Xarelto®.

67.     Plaintiff's failure to give notice of the alleged breach in the form and time required by 6 Del. Code § 2-607(3) and other UCC provisions bars Plaintiff from remedy.

68.  Bayer HealthCare LLC adopts and incorporates by reference all defenses pled by other defendants except to the extent that they are inconsistent with Bayer HealthCare LLC's defenses pled in this Answer.

69.  Bayer HealthCare LLC expressly reserves the right to amend this Answer to assert additional defenses or to make additional claims for relief that become available or apparent during the course of investigation, preparation, or discovery.

**WHEREFORE**, Bayer HealthCare LLC requests that Plaintiff's Complaint be dismissed with prejudice, that judgment be entered in favor of Bayer HealthCare LLC and against Plaintiff, and that Bayer HealthCare LLC be awarded the costs of this action, together with such other and further relief as may be appropriate.

## JURY DEMAND

Bayer HealthCare LLC hereby demands a trial by jury on all issues so triable.

Dated:  October 22, 2015

DRINKER BIDDLE & REATH LLP

By: */s/ Ryan T. Costa*
    Todd C. Schiltz (ID No. 3253)
    Ryan Costa (ID No. 5325)
    222 Delaware Ave. Ste. 1410
    Wilmington, DE 19801-1621
    Telephone: (302) 620-4209
    todd.schiltz@dbr.com
    ryan.costa@dbr.com

    *Attorneys for Defendant,*
    *Bayer HealthCare LLC*

82975291.1