```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


**************************************************************
IN RE:  XARELTO (RIVAROXABAN)
PRODUCTS LIABILITY LITIGATION

                           MDL No. 2592
                           Section "L"
                           Tuesday, February 12, 2019
                           New Orleans, Louisiana

THIS DOCUMENT RELATES TO ALL CASES
**************************************************************

           TRANSCRIPT OF STATUS CONFERENCE IN CHAMBERS
          HEARD BEFORE THE HONORABLE ELDON E. FALLON
                 UNITED STATES DISTRICT JUDGE


APPEARANCES:


FOR THE PLAINTIFFS' LIAISON COUNSEL


                    GERALD E. MEUNIER
                    GAINSBURGH, BENJAMIN, DAVID,
                    MEUNIER & WARSHAUER
                    1100 POYDRAS STREET
                    SUITE 2800
                    NEW ORLEANS, LA 70163

                    LEONARD A. DAVIS
                    HERMAN, HERMAN & KATZ, LLC
                    820 O'KEEFE AVENUE
                    NEW ORLEANS, LA 70113

FOR THE PLAINTIFFS:


                    ANDY BIRCHFIELD, JR.
                    BEASLEY, ALLEN, CROW, METHVIN,
                    PORTIS & MILES, PC
                    2118 COMMERCE STREET
                    MONTGOMERY, AL 36103

                    BRIAN H. BARR
                    LEVIN, PAPANTONIO, THOMAS, MITCHELL,
                    RAFFERTY & PROCTOR
                    316 SOUTH BAYLEN STREET
                    PENSACOLA, FL 32502
```

OFFICIAL TRANSCRIPT

FOR THE DEFENDANTS' LIAISON COUNSEL:

                *KIM E. MOORE*
                IRWIN, FRITCHIE, URQUHART & MOORE, LLC
                400 POYDRAS STREET
                SUITE 2700
                NEW ORLEANS, LA 70130

FOR THE DEFENDANTS:

                *SUSAN SHARKO*
                DRINKER, BIDDLE & REATH, LLP
                600 CAMPUS DRIVE
                FLORHAM PARK, NJ 07932

                *JOHN F. OLINDE*
                CHAFFE MCCALL, LLP
                1100 POYDRAS STREET
                SUITE 2300
                NEW ORLEANS, LA 70163

                *STEVEN JAY GLICKSTEIN*
                *ANDREW K. SOLOW*
                ARNOLD & PORTER KAYE SCHOLER, LLP
                250 WEST 55TH STREET
                NEW YORK, NY 10019

Official Court Reporter:     *Nichelle N. Drake, RPR, CRR*
                          500 Poydras Street, B-275
                          New Orleans, Louisiana 70130
                          (504) 589-7775

    Proceedings recorded by mechanical stenography,
transcript produced via computer.

1                 **P R O C E E D I N G S**

2               (Call to order of the court.)

08:33:19AM   3     THE COURT:  Hello.  Good morning, everyone.  This is

08:33:19AM   4 Judge Fallon.

08:33:20AM   5     Who is on the line for the plaintiff?

08:33:24AM   6     MR. BIRCHFIELD:  Good morning, Your Honor, Andy

08:33:24AM   7 Birchfield.

08:33:28AM   8     THE COURT:  All right, Andy.

08:33:28AM   9     MR. MEUNIER:  Good morning, Jerry Meunier.

08:33:36AM   10     MR. DAVIS:  Lenny Davis.

08:33:38AM   11     MR. BARR:  And Brian Barr, good morning, Your Honor.

08:33:39AM   12     THE COURT:  Hi, Brian.  Good morning.

08:33:39AM   13     Anyone else for the plaintiff?

08:33:39AM   14           (No response.)

08:33:41AM   15     How about for the defendants?

08:33:43AM   16     MS. SHARKO:  Susan Sharko and Kim Moore for Jansen.

08:33:48AM   17     THE COURT:  Okay.

08:33:48AM   18     MR. GLICKSTEIN:  Steve Glickstein here.

08:33:48AM   19     THE COURT:  All right, Steve.

08:33:48AM   20     MR. SOLOW:  Andy Solow here, Your Honor.

08:33:48AM   21     THE COURT:  All right, Andy.

08:33:56AM   22     MR. OLINDE:  John Olinde's here, good morning.

08:33:56AM   23     THE COURT:  All right, John.

08:33:57AM   24     Anyone else?

08:34:00AM   25           (No response.)

08:34:00AM 1      Okay.  Andy, you or Steve, you want to bring me up to

08:34:04AM 2 speed?  I know we had several issues.  I understand some of

08:34:04AM 3 them --

08:34:04AM 4      MR. BIRCHFIELD:  Yes.

08:34:07AM 5      THE COURT:  -- would be resolved?

08:34:09AM 6      MR. BIRCHFIELD:  Yes, Your Honor.

08:34:10AM 7      We have -- we've actually reached an agreement on all

08:34:14AM 8 the -- all the issues pertaining to CMO8.  We just need the

08:34:19AM 9 one issue that was submitted to you in letter brief to be

08:34:25AM 10 decided by the Court.

08:34:26AM 11      What we would like to do, Your Honor, if it's okay

08:34:29AM 12 with you, is walk through the key provisions, just a brief --

08:34:35AM 13 briefs on where we are, make sure the Court is okay with

08:34:39AM 14 those provisions.  And then once you decide the issue

08:34:48AM 15 regarding the defense requests for expert preservation depos,

08:34:56AM 16 when you reach that decision, we would submit probably within

08:35:00AM 17 a week, maybe even three days, Your Honor, a proposed order

08:35:06AM 18 on the provision.  But if it's okay with you, we'd like to

08:35:10AM 19 walk -- walk through kind of the key provisions.

08:35:12AM 20      THE COURT:  Sure.

08:35:13AM 21      MR. BIRCHFIELD:  One is pertaining to Wave 3.  The

08:35:20AM 22 first -- the first two waves, we had a mix of plaintiff

08:35:25AM 23 picks, defense picks, and Court's picks by random selection.

08:35:31AM 24 What we have agreed for Wave 3 is a pool of 1,000 cases, and

08:35:38AM 25 these would be randomly selected on April the 15th, and five

08:35:45AM **1** percent of those cases would be EDLA cases.  We told Your

08:35:54AM **2** Honor about needing to address the cases in EDLA.  So we

08:35:58AM **3** would say that five percent of those would be EDLA cases.

08:36:03AM **4**     The thousand cases would be divided into -- into two

08:36:09AM **5** pools.  The first pool would be 650 cases, and it would be

08:36:19AM **6** limited to, you know, firms that have less than two percent

08:36:21AM **7** of their inventory as plaintiff picks and either one or two,

08:36:25AM **8** or they have fewer than three cases in the -- in the mix.

08:36:28AM **9** And the idea or the objective there, Your Honor, is there are

08:36:34AM **10** -- there are more firms that have -- and some with

08:36:36AM **11** significant numbers of cases that have sat on -- sat on the

08:36:40AM **12** sideline.  And so we would -- we would draw more heavily from

08:36:47AM **13** them.

08:36:47AM **14**     So that Pool A would be 650 cases without

08:36:50AM **15** restrictions.  Pool B, the remaining 350 cases, would be

08:36:57AM **16** without limitation.  So it would be, you know, all the

08:37:00AM **17** remaining cases.

08:37:01AM **18**     And then what we would -- what we would propose is

08:37:03AM **19** that all thousand or 1,000 be drawn on April the 15th, but

08:37:08AM **20** they not all be rolled out on that date.  We would have

08:37:14AM **21** 400 cases that would be rolled out.  The firms would be

08:37:20AM **22** notified that their cases are active, in active discovery, on

08:37:24AM **23** April 15th, and that would be 400 from that first pool only.

08:37:28AM **24** And then on June 15th, we would roll out another 200;

08:37:34AM **25** September 15th, 200, and December 15, 200.  So by December,

**OFFICIAL TRANSCRIPT**

08:37:39AM 1   we would have all 1,000 of Wave 3 in active -- in active

08:37:45AM 2   discovery.  And, basically, the same provisions that we had

08:37:49AM 3   in Wave 1 and Wave 2 would apply.  Filing fee would be due

08:37:53AM 4   within 45 days after selection unless the case -- the case is

08:38:01AM 5   dismissed.

08:38:02AM 6        The second part of the CMO would involve remand cases

08:38:10AM 7   --

08:38:10AM 8        MR. GLICKSTEIN:  Andy, let me interrupt you one

08:38:10AM 9   second.

08:38:14AM 10       And in addition, Your Honor, at the time that the --

08:38:19AM 11  also within 45 days of being rolled out, the filing fee would

08:38:22AM 12  be due, if not already paid in those cases.

08:38:31AM 13       MR. BIRCHFIELD:  And then the second aspect would

08:38:34AM 14  involve remanded cases, and what we would propose is that on

08:38:38AM 15  March 15th, the plaintiff would select up to 30 of the Wave 1

08:38:44AM 16  cases for remand, and the defendants on that same date would

08:38:52AM 17  select up to 30 as well.  We would exchange those -- those

08:38:55AM 18  lists, and then we would meet and confer and see if we can

08:39:00AM 19  reach an agreement to submit to the Court a slate of cases to

08:39:07AM 20  be remanded back.  But each party's reserving their rights to

08:39:10AM 21  object.  And so we would -- if we cannot reach an agreement,

08:39:12AM 22  then on April the 15th or by April the 15th, we would be

08:39:16AM 23  prepared to submit cases for argument to the Court for

08:39:26AM 24  remand.  And so we would -- we would ask the Court at that

08:39:32AM 25  point to, you know, enter a suggestion of remand to the JPML.

OFFICIAL TRANSCRIPT

08:39:41AM  1    And, you know, we -- as part of this agreement, we've also

08:39:43AM  2    said that we would not -- the plaintiffs would not seek an

08:39:47AM  3    additional wave of remands before September the 15th of 2019.

08:39:54AM  4         The third aspect of the agreement involves a culling

08:40:03AM  5    mechanism, and that is -- that consists of a revised

08:40:10AM  6    plaintiff profile form and -- and consent form.  And that

08:40:15AM  7    would apply to -- it would apply to all of the Wave 3 cases,

08:40:20AM  8    and it would apply to any newly filed cases.  And so the idea

08:40:30AM  9    behind the revised plaintiff profile form is we've learned,

08:40:36AM  10   both sides have learned, you know, through the process there

08:40:39AM  11   -- there's additional information that is -- that would be

08:40:44AM  12   pertinent to our evaluation, you know, of these cases.  So

08:40:49AM  13   we've -- we've incorporated that.  This is a -- there's also

08:40:52AM  14   information that we know that is not -- not really needed in

08:40:56AM  15   the -- at that early vetting process, so we culled -- we

08:41:01AM  16   reduced the size of the, you know -- the plaintiff profile

08:41:06AM  17   form, but we're getting different -- different information in

08:41:09AM  18   the process.

08:41:10AM  19        It also has a consent component asking the plaintiff,

08:41:14AM  20   you know, whether they are prepared to, you know, sit for a

08:41:19AM  21   seven-hour deposition in the coming -- in the coming year,

08:41:23AM  22   just going through the wave process.  For various reasons, we

08:41:29AM  23   believe that plaintiffs are no longer in a position or no

08:41:33AM  24   longer willing to do that, and so we wanted to incorporate

08:41:37AM  25   that.  We think that will be an effective culling -- culling

OFFICIAL TRANSCRIPT

08:41:41AM 1  mechanism.

08:41:42AM 2       What we have -- what we have agreed, Your Honor, is

08:41:47AM 3  that if, when there is an order remanding cases that the PSC

08:42:01AM 4  would support entering that new profile form for all of the

08:42:07AM 5  filed cases, and, you know, the -- the thinking there, Your

08:42:10AM 6  Honor, is that, you know, we need -- before we impose an

08:42:15AM 7  additional requirement on the plaintiffs, they need to be --

08:42:22AM 8  we need to be able to show that there are cases that are

08:42:24AM 9  being remanded and are able to be set for trial.  So if the

08:42:29AM 10  Court hears our argument on April 15th or soon after there's

08:42:34AM 11  a remand order, at that point, we would -- the executive

08:42:38AM 12  committee would request the Court to apply the new profile

08:42:45AM 13  form to all of the cases.

08:42:47AM 14       It also is part of our agreement that -- we would

08:42:52AM 15  also have a short form that is only applicable to, you know,

08:42:58AM 16  cases that are selected for further workup.  This -- this

08:43:04AM 17  initial consent form and profile form, it's really limited to

08:43:11AM 18  the information that we need, both parties need in

08:43:18AM 19  identifying, evaluating, you know, cases, culling, but it

08:43:24AM 20  would be second additional information that would be helpful

08:43:27AM 21  for trial workup.  And so that would only be applicable to

08:43:32AM 22  cases once they are -- once they're selected as part of the

08:43:38AM 23  -- part of the wave.

08:43:39AM 24       Also, as part of the discussion and our agreement,

08:43:45AM 25  you know, we have -- we provide the -- you know, the

08:43:49AM   1    defense -- the defense fact sheet as -- as well to -- to

08:43:56AM   2    review, some to refine, the information that we -- that the

08:44:05AM   3    defendants would be required to what we -- what we truly

08:44:07AM   4    need, what we've learned through the process is more helpful

08:44:13AM   5    for us.

08:44:13AM   6         And then the last aspect is the preservation of

08:44:18AM   7    depositions for experts, and, you know, we have an agreement

08:44:24AM   8    where the plaintiff's expert depositions will be completed in

08:44:31AM   9    two waves.  The first wave would be done by June 15th, the

08:44:34AM  10    first four experts, and then the second wave of experts would

08:44:40AM  11    be completed -- the trial preservation depositions would be

08:44:45AM  12    completed by October.  So June 15th for the first,

08:44:48AM  13    October 15th for -- for the second.  And once we have the

08:44:55AM  14    Court's decision regarding whether or not the defendants get

08:44:59AM  15    expert depositions for a trial package, then we can develop a

08:45:05AM  16    schedule and submit all of it to the -- to the Court for an

08:45:11AM  17    order.

08:45:12AM  18         Steve, Susan, Andy, is there anything to add --

08:45:17AM  19         MR. GLICKSTEIN:  Yeah, I want to add something on

08:45:20AM  20    some of these issues.  But you should describe we also have

08:45:22AM  21    an agreement on the EDLA cases --

08:45:25AM  22         MR. BIRCHFIELD:  Right.  We do.

08:45:29AM  23         MR. GLICKSTEIN:  In two respects, I mean, one, the

08:45:32AM  24    EDLA cases that are part of Wave 2, but also the cases -- the

08:45:36AM  25    EDLA cases that are part of Wave 1, the cases that are --

08:45:42AM  1    that are remaining, we agreed that those -- the discovery

08:45:46AM  2    would be completed.  The defendants would file a motion for

08:45:51AM  3    summary judgement or -- or Daubert motions on those cases

08:45:57AM  4    that -- that we would agree to a schedule so that those could

08:46:01AM  5    be heard early- to mid-September.

08:46:05AM  6            THE COURT:  And you all with the EDLA cases, you have

08:46:09AM  7    any problem with having them all here in New Orleans?

08:46:14AM  8            MR. BIRCHFIELD:  We don't, Your Honor.

08:46:16AM  9            MR. GLICKSTEIN:  I think by definition the cases are

08:46:19AM  10   in the Eastern District of Louisiana.

08:46:23AM  11           THE COURT:  Okay.  They're all -- I didn't know

08:46:27AM  12   whether they were just throughout Louisiana but, okay, all of

08:46:31AM  13   them there.

08:46:35AM  14           MR. GLICKSTEIN:  And there are -- there are four of

08:46:37AM  15   them.

08:46:37AM  16           Let me add a few things and maybe Andy and Susan will

08:46:42AM  17   have some other things to add.

08:46:44AM  18           Actually, Your Honor, when you reach a case

08:46:47AM  19   management order such as this, you know, it took a long time

08:46:52AM  20   to reach agreement, and both parties have retreated from

08:46:58AM  21   their ideal positions.  And so this really is a very

08:47:04AM  22   intricate fabric of the defendants accepting some things that

08:47:12AM  23   they would prefer not to accept and the plaintiffs accepting

08:47:15AM  24   some things that they prefer not to accept in order to reach

08:47:20AM  25   an agreement and move the case forward.  So I don't have

08:47:26AM **1**  anything to add on the thousand Wave 3 cases that will be

08:47:33AM **2**  selected for workup except to note that it's a very

08:47:40AM **3**  significant number.

08:47:42AM **4**  On the remands, I think there's an extra piece that

08:47:48AM **5**  we have to add which is -- Andy hinted at it, but I want to

08:47:57AM **6**  be very explicit.  The defendants' position has always been

08:48:03AM **7**  that -- that remands ought to wait until -- until the CMO7

08:48:18AM **8**  generic discovery is completed, and if there are expert

08:48:23AM **9**  preservation depositions, those are completed in -- or in

08:48:25AM **10** part at least first round and most importantly until the

08:48:30AM **11** Supreme Court addresses the preemption issue.  We know that

08:48:37AM **12** the Supreme Court's already heard oral argument.  The

08:48:41AM **13** plaintiff would obviously disagree with that position.

08:48:47AM **14** And so what we've done is that -- both parties

08:48:54AM **15** have -- we've agreed to a process whereby cases can be

08:48:58AM **16** selected for potential remand, but both parties have reserved

08:49:04AM **17** their right to urge, remand, or oppose remand on April 15th

08:49:12AM **18** and the -- and Your Honor will decide at that point whether

08:49:19AM **19** it's right or not right or if -- you know, what plan is

08:49:24AM **20** better than the next plan.

08:49:28AM **21** What we have given up in return is that the

08:49:31AM **22** defendants in the ideal world would have preferred a very

08:49:37AM **23** early culling process.  The new forms that plaintiffs would

08:49:43AM **24** be required to fill out is different in kind from the

08:49:49AM **25** existing plaintiff profile forms in that it requires the

| | | |
|---|---|---|
| 08:49:55AM | 1 | plaintiff to list, which is a various theory they might be |
| 08:50:04AM | 2 | pursuing, and to provide proof that they are eligible to |
| 08:50:06AM | 3 | assert that theory, and, you know, as well as -- as |
| 08:50:13AM | 4 | commitment that the plaintiff will, in fact, have appeared at |
| 08:50:19AM | 5 | their deposition among other requirements.  And I think that |
| 08:50:24AM | 6 | we are hopeful it will impress upon plaintiffs who perhaps |
| 08:50:32AM | 7 | just file cases and have no intention of pursuing them or |
| 08:50:37AM | 8 | perhaps, you know, as plaintiffs would say, maybe had that |
| 08:50:42AM | 9 | intention at one point in time, but because of circumstances, |
| 08:50:46AM | 10 | no longer have that intention to examine whether or not they |
| 08:50:55AM | 11 | want to pursue the cases, and if so -- if not, you know, to |
| 08:50:58AM | 12 | dismiss. |
| 08:50:59AM | 13 | We would have wanted that culling process early.  The |
| 08:51:02AM | 14 | plaintiffs were -- and then that except for the Wave 3 cases |
| 08:51:09AM | 15 | and the newly filed cases in which the requirement would be |
| 08:51:12AM | 16 | imposed right away, that it not be imposed on the remainder |
| 08:51:16AM | 17 | of the docket until there are remands.  So the necessary |
| 08:51:23AM | 18 | corollary is that if we are successful in convincing Your |
| 08:51:30AM | 19 | Honor that remands ought to wait further development in this |
| 08:51:35AM | 20 | court -- the culling for those other cases is deferred.  If |
| 08:51:45AM | 21 | we're unsuccessful, then -- |
| 08:51:45AM | 22 | (Court reporter asks for clarification.) |
| 08:51:45AM | 23 | THE COURT:  What did you say, if you're unsuccessful? |
| 08:51:46AM | 24 | MR. GLICKSTEIN:  The culling on the cases other than |
| 08:51:49AM | 25 | the newly filed cases in Wave 3 cases should be deferred |

OFFICIAL TRANSCRIPT

08:51:55AM **1**   until such time as Your Honor orders the suggested remand.

08:51:59AM **2**   It's probably not an arrangement that neither side is

08:52:02AM **3**   perfectly happy with, but, you know, I think it's where we

08:52:09AM **4**   ended up as a reasonable accommodation of two very competing

08:52:18AM **5**   views about what ought to be happening with -- with culling

08:52:24AM **6**   and remands.

08:52:24AM **7**         THE COURT:  Anyone else?

08:52:26AM **8**         MR. GLICKSTEIN:  The only other thing I would say is

08:52:29AM **9**   -- was going to get to the expert -- the trial preservation

08:52:34AM **10**  deposition in a second, but that is on the assumption that

08:52:40AM **11**  they go forward.  The defense position obviously is that

08:52:44AM **12**  their ought to be expert trial preservation depositions, at

08:52:49AM **13**  least the generic experts for both sides.

08:52:54AM **14**        My fallback position is that if it's not going to be

08:52:57AM **15**  for both sides, then it should be for neither side.  So we've

08:53:02AM **16**  reached an agreement as to how to handle the plaintiffs

08:53:05AM **17**  assuming that Your Honor -- they do go forward, but, you

08:53:13AM **18**  know, the defendants have retained the position in their

08:53:18AM **19**  letter brief that it's going to be that expert trial

08:53:22AM **20**  preservations needs to be either mutual or not at all.

08:53:27AM **21**        THE COURT:  Okay.  Anyone else?

08:53:27AM **22**        MS. SHARKO:  Yes.

08:53:30AM **23**        THE COURT:  Go ahead, Susan.

08:53:31AM **24**        MS. SHARKO:  Thank you.

08:53:33AM **25**        So a couple things first, the new plaintiff profile

08:53:41AM 1   consent form, which the parties hope will aid in culling by

08:53:47AM 2   our agreement only applies to the 1,000 Wave 1 cases and the

08:53:54AM 3   newly filed cases and then to everybody if and when there's

08:53:58AM 4   an order of remand.  So I hope that the parties can continue

08:54:02AM 5   to talk about methods of culling other than this form.  It's

08:54:10AM 6   obviously a large docket, and we see from the dismissals that

08:54:15AM 7   we've gotten from Wave 1 and Wave 2 that there are a large

08:54:19AM 8   number of cases that probably still need to be culled.

08:54:24AM 9   That's my first general point.

08:54:25AM 10        MR. MEUNIER:  Susan, excuse me.  You said Wave 1,

08:54:27AM 11  1,000.  You meant Wave 3?

08:54:30AM 12        MS. SHARKO:  Wave 3, yeah.  The 1,000 Wave 3 cases.

08:54:30AM 13        MR. MEUNIER:  I want the record to be clear on that.

08:54:39AM 14        THE COURT:  Right.  Okay.

08:54:39AM 15        MS. SHARKO:  And just a couple things flushing out

08:54:42AM 16  what Andy Birchfield said, on Wave 3 selections, they'll be

08:54:44AM 17  from the entire inventory of cases without regard to PFS

08:54:50AM 18  compliance, and if the parties have agreed that if Wave 3

08:54:56AM 19  cases are then dismissed per the order to show cause

08:54:59AM 20  procedure or voluntarily, they won't be replaced.

08:55:02AM 21        And then on remand, the parties also agreed that any

08:55:06AM 22  second wave of remand in September would not exceed 60 cases.

08:55:16AM 23  That would be to Your Honor's approval of course.

08:55:19AM 24        And then finally on the new DFS, it's been revised as

08:55:26AM 25  Andy noted, and we've also agreed that it will not be due

08:55:30AM **1**   until after the plaintiff is deposed.  That way we avoid

08:55:35AM **2**   having to do DFS's in large numbers of cases which then get

08:55:43AM **3**   dismissed.

08:55:45AM **4**        MR. BIRCHFIELD:  The plaintiff's deposition -- the --

08:55:49AM **5**   the trigger date for the defense -- the defense fact sheet,

08:55:52AM **6**   Your Honor, and we -- we are certainly open to continue, you

08:55:58AM **7**   know, discussions about culling if the Court wants and the

08:56:02AM **8**   Court has urged that.

08:56:05AM **9**        But this new plaintiff profile form and consent form

08:56:10AM **10**  is a huge, huge culling mechanism, and -- and so I don't want

08:56:18AM **11**  that to be -- I don't want that to be understated because it

08:56:24AM **12**  is -- it is a significant requirement and for the -- for the

08:56:31AM **13**  plaintiffs and, you know, plaintiffs' counsel.  So we -- we

08:56:37AM **14**  have -- we urge you, Your Honor, in stressing the importance

08:56:44AM **15**  of culling and also in regards to the timing of the

08:56:49AM **16**  litigation.  And -- and I think that we are at a place now

08:56:54AM **17**  where -- in the litigation, where it is appropriate for us to

08:56:58AM **18**  do that, provided that we can -- that we can also show

08:57:02AM **19**  plaintiff and plaintiff counsel, you know, that there is a

08:57:05AM **20**  path to your daily quota as well at the same time.

08:57:11AM **21**        THE COURT:  All right.

08:57:12AM **22**        MR. BIRCHFIELD:  Your Honor, in regards to the

08:57:14AM **23**  preservation depositions --

08:57:17AM **24**        MR. SOLOW:  Andy, before we get to that, can I just

08:57:20AM **25**  give just one more clarification?

OFFICIAL TRANSCRIPT

08:57:21AM  1          Sorry to pile on, Judge.  Andy Solow.

08:57:26AM  2          Just on the EDLA cases that Your Honor had mentioned

08:57:32AM  3  that previously, when we had been with Your Honor, I just

08:57:32AM  4  want to make sure both sides are clear.  There are four

08:57:36AM  5  remaining Wave 1 Eastern District of Louisiana cases.  The

08:57:39AM  6  parties have an agreement on a schedule to complete that

08:57:43AM  7  discovery including expert discovery and motion practice.  At

08:57:46AM  8  that point in time, our agreement is both sides have reserved

08:57:51AM  9  their right to make plaintiffs -- to make an application to

08:57:55AM  10  Your Honor about how a trial of those EDLA cases will proceed

08:57:58AM  11  and defendants preserving all rights to object to any

08:58:03AM  12  consolidated trials.

08:58:03AM  13          THE COURT:  Yeah.

08:58:05AM  14          MR. SOLOW:  So there's an agreement on that, but I

08:58:06AM  15  just want to make sure that Your Honor knew that.

08:58:09AM  16          THE COURT:  Sure.  Okay.

08:58:11AM  17          MR. BIRCHFIELD:  Your Honor, on the preservation

08:58:13AM  18  depositions, we -- we agreed that not more than five -- five

08:58:20AM  19  for each party, but Brian would address that from the

08:58:25AM  20  plaintiffs' side if that's okay with you.

08:58:28AM  21          THE COURT:  Yeah, that's fine.  But before we get to

08:58:30AM  22  that, the reason we're doing it, the reason that at least I'm

08:58:34AM  23  doing it with waves is because I think it gives you all an

08:58:37AM  24  opportunity not only to get some order in it, but also to

08:58:42AM  25  learn from each wave.  So let's take advantage of that and

08:58:47AM  1    analyze whether Wave 3 works so that, if we go to Wave 4,

08:58:52AM  2    we'll at least have experience of three waves beforehand and

08:58:57AM  3    we're not repeating the same mistake and arguing the same

08:59:01AM  4    things that are either not germane, not relevant anymore.  So

08:59:06AM  5    it works by having it in waves as opposed to just everything

08:59:12AM  6    going back at one time.  It just gives you an opportunity to

08:59:17AM  7    regroup, see what works, come together, and deal with -- with

08:59:22AM  8    the next wave with some experience.  So take advantage of

08:59:26AM  9    that.

08:59:27AM  10          Okay.  Let's go to the generics, and I've read all of

08:59:31AM  11   your material, of course, but I'll hear from you.

08:59:34AM  12          Brian, you want to speak on behalf of the plaintiffs?

08:59:38AM  13          MR. BARR:  Yes.  Thanks, Your Honor.

08:59:39AM  14          Your Honor, as you know, the PSC has bartered through

08:59:43AM  15   PTO7 to create a trial package and trial preservation depos

08:59:48AM  16   of the PSC's generic experts.  That is a crucial piece of the

08:59:55AM  17   trial package, and it's crucial because these generic

08:59:57AM  18   experts -- these are the PSC's experts.  They aren't under

09:00:00AM  19   the control of any individual plaintiff.  They aren't

09:00:08AM  20   obligated to go testify for any individual plaintiff.

09:00:09AM  21   They're unavailable to individual plaintiffs.  So it's

09:00:09AM  22   crucial that we package their testimony as part of a trial

09:00:12AM  23   package, you know, to -- as you mentioned the last time we

09:00:16AM  24   spoke and largely in many ways, Judge, you get the benefit of

09:00:23AM  25   the work that the PSC has done.

09:00:26AM  1    So there's no question that the PSC has to be able to

09:00:31AM  2  conduct trial preservation depos of the PSC's generic

09:00:32AM  3  experts.  So the question then becomes, should the defendants

09:00:33AM  4  be able to --

09:00:33AM  5    THE COURT:  Wait.  Wait.  You're breaking up on me,

09:00:33AM  6  Brian.

09:00:44AM  7    MR. BARR:  Sounds like there was movement on the

09:00:46AM  8  other end there.

09:00:46AM  9    THE COURT:  Okay.  Go ahead.

09:00:47AM  10    MR. BARR:  For all reasons we sat out in our brief,

09:00:50AM  11  the answer to the question of whether the defendant should be

09:00:52AM  12  able to conduct trial preservation depositions is clearly no.

09:00:57AM  13  And it's not a question of equity.  It's not a question of

09:01:02AM  14  what's good for the goose.  It's a question of whether

09:01:07AM  15  spending the time and money to take trial preservation depos

09:01:07AM  16  of defendants' experts is consistent with the purposes of the

09:01:15AM  17  upcoming MDL and whether such depositions can be used in

09:01:18AM  18  trial, because if it can't actually be used in trial, there's

09:01:21AM  19  no point in doing a trial preservation deposition.

09:01:25AM  20    And so the defendants are arguing that there's no

09:01:28AM  21  legal basis to allow the plaintiffs to take trial

09:01:32AM  22  preservation depos and not allowing the defendants -- the

09:01:36AM  23  defendants to do the same.  But the legal basis is fairly

09:01:40AM  24  simple, number one, like we talked about under PTO7, we have

09:01:43AM  25  an obligation to create a trial package.  The defendants

09:01:44AM 1    don't have such an obligation.  The obligations of the PSC

09:01:52AM 2    and defense counsel are wildly different.  We -- the PSC

09:01:54AM 3    doesn't individually represent individual plaintiffs.  The

09:01:57AM 4    defendants directly represent the defendant.  So we are in

09:02:00AM 5    fundamentally different positions throughout this litigation,

09:02:04AM 6    and so the PSC has that obligation.

09:02:07AM 7         Rule 32 of the Federal Rules of Civil Procedure is

09:02:13AM 8    where we have to look to figure out whether or not these

09:02:16AM 9    depositions can be used.  Rule 32 is clearly meant for the

09:02:20AM 10    plaintiffs' generic experts.  It is not meant for the

09:02:23AM 11    defendants' experts.  Now, it's meant for the plaintiffs

09:02:26AM 12    because in every one of these trial preservation depos where

09:02:29AM 13    we preserved the testimony of our generic expert, we present

09:02:34AM 14    a -- you know, a direct of all the opinions they have to

09:02:36AM 15    offer.  The defendants will be directly represented in those

09:02:39AM 16    depositions by the counsel of their choice.  So they are

09:02:43AM 17    directly represented.  So under Rule 32, you get past

09:02:46AM 18    32(a)(1) because the defendants are present.

09:02:48AM 19         Then you go down further like I talked about.  These

09:02:51AM 20    experts, they're unavailable to individual plaintiffs.  None

09:02:55AM 21    of the experts that have been hired by the PSC has agreed to

09:03:00AM 22    be available to any and every individual plaintiff.  That's

09:03:03AM 23    not how one of these things works, Your Honor.  You know

09:03:07AM 24    that.  These are generic experts under the control of the

09:03:12AM 25    PSC.  They're not available.

**OFFICIAL TRANSCRIPT**

09:03:14AM   1      So we met Rule 32.  The defendants can't meet

09:03:17AM   2    Rule 32, and they don't meet Rule 32 because the individual

09:03:20AM   3    plaintiffs are not represented at any one of these

09:03:24AM   4    depositions.  And, you know, the defendants can argue that,

09:03:27AM   5    you know, look, the PSC, the lawyers, they'll do effective

09:03:32AM   6    cross-examination, et cetera.  And none of that matters.  The

09:03:35AM   7    individual plaintiffs are not represented, and that's what

09:03:39AM   8    Rule 32 expressly requires.  And under the processes we've

09:03:45AM   9    done, these depositions throughout this litigation, there's

09:03:46AM  10    no feasible mechanism to allow every one of these individual

09:03:46AM  11    plaintiffs or the counsel of their choice to be available and

09:03:55AM  12    to be present at one of these depositions.  And because of

09:03:57AM  13    that, you can't get past Rule 32.

09:04:00AM  14      But even if you could get past Rule 32 -- you know,

09:04:03AM  15    the defendants argued all about unavailability in their

09:04:06AM  16    brief.  Well, they can't show that any of their experts are

09:04:10AM  17    unavailable to them.  Their generic experts were directly

09:04:15AM  18    hired by the defendants.  They're clearly available to the

09:04:18AM  19    defendants, and, again, it goes back to the fundamental

09:04:22AM  20    different standing of the PCS versus defense counsel.

09:04:26AM  21      Now, Your Honor, one of the things that the

09:04:28AM  22    defendants talked about in their brief is they talked about,

09:04:31AM  23    you know, the various obligations of the PSC and how we

09:04:36AM  24    were -- we were authorized to represent all plaintiffs.  But

09:04:40AM  25    if you look at those orders, it was for purposes of

09:04:45AM  1   discovery, not for purposes of trial, which is what we're

09:04:49AM  2   doing here.  The PSC is not authorized under any of Your

09:04:53AM  3   Honor's orders, and I don't believe it would be -- I don't

09:04:56AM  4   believe there's a legal basis to authorize it except for in a

09:05:01AM  5   class action to represent individual plaintiffs.  So we don't

09:05:03AM  6   have the ability to go in and take over somebody's trial.  We

09:05:07AM  7   can't do that.  And that's essentially what the defendants

09:05:11AM  8   are trying to force here.

09:05:13AM  9           And so what is ultimately happening, Your Honor, is,

09:05:17AM  10  you know, when we create a trial package, as you know, it's a

09:05:21AM  11  completely voluntary trial package.  We will have a trial

09:05:24AM  12  package of depositions, exhibits, you know, outlines,

09:05:28AM  13  anything a plaintiff would want to use to put on in their

09:05:31AM  14  trial.  And it's completely voluntary whether they look at

09:05:35AM  15  it, use it or whatever part of it.  We can't force it on

09:05:41AM  16  them.  Nobody can force it on them.  They need to choose.

09:05:42AM  17          What the defendants are trying to do is to flip out

09:05:45AM  18  on its head.  And so they would create a -- a -- you know, a

09:05:49AM  19  direct of one of their generic experts, and then an

09:05:52AM  20  individual plaintiff would be required to accept

09:05:56AM  21  cross-examination from the PSC, whether that

09:06:00AM  22  cross-examination was good for them, whether it had anything

09:06:01AM  23  to do with the applicable issues in their case, whether it

09:06:05AM  24  was even consistent with the issues in their case.

09:06:10AM  25          And, Your Honor, there are a lot of generic issues

OFFICIAL  TRANSCRIPT

09:06:16AM  1   that depending upon the theory you're proceeding under or the

09:06:16AM  2   individual facts and circumstances of your case, you would

09:06:21AM  3   address those issues very differently.  And the PSC's simply

09:06:25AM  4   not capable, I don't believe, of going and figuring out each

09:06:31AM  5   individual position we have to take with all of these

09:06:33AM  6   cross-examinations and -- and, frankly, doing very

09:06:38AM  7   inconsistent cross-examinations within the same depo.  It's

09:06:44AM  8   simply not possible, which is -- and that's why the trial

09:06:49AM  9   preservation -- that's why Rule 32 --

09:06:49AM  10          (Court reporter asks for clarification.)

09:06:56AM  11      The individual plaintiff gets to decide how they

09:07:01AM  12  cross-examination -- how they cross-examine someone for

09:07:02AM  13  purposes of trial.  The PSC doesn't have that authority, and

09:07:05AM  14  like I said, trial preservation is fundamentally different

09:07:11AM  15  than discovery which is where the PSC was authorized.

09:07:11AM  16          THE COURT:  All right.

09:07:13AM  17          MR. BARR:  So, Your Honor, as of all those reasons --

09:07:15AM  18  I probably -- I probably used my five minutes.

09:07:15AM  19          THE COURT:  Yeah.

09:07:18AM  20          MR. BARR:  I -- that's where the PSC is, and we don't

09:07:22AM  21  believe that the defendants should be able to do trial

09:07:25AM  22  preservation depos because they can't be used in trial.

09:07:29AM  23          THE COURT:  All right.  Let me hear the other side.

09:07:33AM  24          MR. GLICKSTEIN:  Your Honor, this is Steve

09:07:33AM  25  Glickstein.

09:07:37AM 1          I think Your Honor is faced with a binary choice.  I

09:07:43AM 2    mean, the defendants favor generic expert preservation

09:07:50AM 3    depositions, but the choice is either they're -- under the

09:07:55AM 4    rules, either they're going to be generic expert preservation

09:08:01AM 5    depositions for both plaintiff experts and defense experts or

09:08:05AM 6    you revert to the federal rules and everybody brings their

09:08:11AM 7    own experts live at trial.  And I think the way to analyze

09:08:17AM 8    this is, what would happen in a trial absent the stipulation

09:08:23AM 9    by the parties to allow any -- to allow hearsay testimony by

09:08:34AM 10   experts.  And then once you see what the rule -- the rules

09:08:38AM 11   that would apply absent agreement and accommodation, I think

09:08:43AM 12   Your Honor would come inextricably to the conclusion that the

09:08:44AM 13   only way to have any trial preservation deposition is by

09:08:50AM 14   agreement of the parties and that there's no basis for the

09:08:53AM 15   Court to order only one side's experts to be preserved.

09:08:58AM 16          So how would things work in an ordinary case?  So

09:09:03AM 17   there's no -- I think Your Honor made this point in the last

09:09:08AM 18   chambers conference.  There's no constitutional right that

09:09:13AM 19   individual plaintiffs have to the PSC preparing a quote,

09:09:20AM 20   unquote, "trial package" for each individual plaintiff that

09:09:25AM 21   enables them to call their expert through deposition at trial

09:09:32AM 22   rather than live.  The parties are required under the federal

09:09:38AM 23   rules to bring their experts live at trial.

09:09:42AM 24          I've heard -- a new argument I think I've heard from

09:09:48AM 25   Mr. Barr, that because the experts are controlled by the PSC,

09:09:57AM   1   they are, therefore, not under the control of the individual

09:09:59AM   2   plaintiffs and, therefore, unavailable to the individual

09:10:02AM   3   plaintiffs.  I think, one, that argument is a stretch, but if

09:10:09AM   4   it were true, the individual plaintiffs would be required

09:10:15AM   5   under the federal rule to obtain an expert who could be --

09:10:20AM   6   who could attend the trial and participate and be

09:10:28AM   7   cross-examined live in front of the jury.  That's what the

09:10:33AM   8   rules require.  They require you to retain an expert who will

09:10:35AM   9   be present at trial and who can be cross-examined in front of

09:10:42AM   10  a jury.

09:10:43AM   11          Now, we recognize that in certain circumstances of

09:10:49AM   12  this case where we're going to -- we may ultimately be faced

09:10:56AM   13  with a large number of remands.  You know, as a matter of

09:11:01AM   14  efficiency and accommodation, it might be worthwhile for the

09:11:06AM   15  parties to agree that that testimony could come in to a

09:11:12AM   16  hearsay deposition rather than live at trial.  And if the

09:11:18AM   17  plaintiffs are willing to -- to have that procedure and

09:11:25AM   18  process apply to both sides, the defendants are willing to

09:11:30AM   19  participate in it, but the -- but permission to have any

09:11:39AM   20  expert testify by deposition rather than live at trial is a

09:11:45AM   21  matter of stipulation agreement and accommodation.  It's not

09:11:48AM   22  a matter of right.  And, therefore, any lawyer that -- I

09:11:57AM   23  think the plaintiffs have a choice, either the trial package

09:12:06AM   24  includes the expert's report, it includes the expert's

09:12:11AM   25  discovery deposition, it includes any trial testimony that

09:12:15AM  1    the expert might have had in one of the six bellwether trials

09:12:24AM  2    that have occurred to date in the ECCT and in the MDL, but it

09:12:30AM  3    doesn't include a further quote, unquote, "trial deposition"

09:12:34AM  4    in this case whereby the plaintiffs can call their expert's

09:12:40AM  5    hearsay and the defendants cannot.  Or if the plaintiffs

09:12:46AM  6    prefer to have a procedure whereby the -- whereby they can

09:12:54AM  7    call their own experts and play their hearsay testimony at

09:13:01AM  8    trial, that has to apply equally to defendants.  There's no

09:13:06AM  9    exception to the rule that applies uniquely to plaintiffs

09:13:10AM 10    than defendants.

09:13:11AM 11         You know, Rule 32 requires that the witness be

09:13:14AM 12    available.  So either the expert is under the control of the

09:13:23AM 13    plaintiff and therefore available, but if the plaintiffs are

09:13:29AM 14    going to say that the expert is unavailable to them at trial,

09:13:37AM 15    they have no right to designate that expert.  The plaintiff

09:13:41AM 16    has to designate an expert that they can bring to the trial.

09:13:46AM 17         Similarly, there's an exception in Rule 32 for

09:13:48AM 18    exceptional circumstances.  I don't see what the -- how the

09:13:53AM 19    -- the facet -- there will be a large number of cases

09:13:58AM 20    potentially remanded, and, therefore, it's inconvenient,

09:14:00AM 21    although not impossible, to bring experts live at each trial

09:14:06AM 22    and can be exceptional for the plaintiffs and unexceptional

09:14:11AM 23    for the defendants.

09:14:12AM 24         And we are talking after all here about generic

09:14:19AM 25    experts.  We're not talking about a specific expert.  No --

09:14:25AM 1   none of these experts are going to give testimony about a

09:14:32AM 2   particular plaintiff's case or delve into a particular

09:14:37AM 3   plaintiff's medical record.  They're going to talk about the

09:14:40AM 4   general theories that have been articulated by the PSC as a

09:14:45AM 5   case.

09:14:47AM 6        If, in fact, a plaintiff has such unique issues that

09:14:53AM 7   their cross-examination of the defense experts are going to

09:14:59AM 8   be inadequate, I can't imagine that those unique issues would

09:15:04AM 9   permit them to use the plaintiffs' experts.  If you're truly

09:15:11AM 10  dealing with a unique case -- and I don't think we've seen

09:15:16AM 11  any unique cases that involve theories that haven't yet thus

09:15:20AM 12  far been promulgated by the PSC -- then most likely, both

09:15:25AM 13  sides are going to have to bring in their own unique experts

09:15:30AM 14  to deal with those unique issues.

09:15:32AM 15       So, in summary, you know, this really is a mutuality

09:15:35AM 16  and reciprocity situation.  We either default to the federal

09:15:41AM 17  rule where each side retains experts that they can control

09:15:47AM 18  and bring live at trial or we have a stipulation

09:15:52AM 19  accommodation whereby the generic experts of both sides are

09:15:57AM 20  preserved.

09:15:59AM 21       THE COURT:  Okay.  Has anybody -- anybody familiar

09:16:04AM 22  with any other case where this has come up?

09:16:10AM 23       MR. BARR:  Your Honor, I have -- go ahead, Steve.

09:16:10AM 24       MR. GLICKSTEIN:  Yeah, I have two orders.  I -- but I

09:16:15AM 25  don't know whether they're on consent or -- or whether the

09:16:23AM 1    issue was litigated.

09:16:24AM 2         In the PT -- PTA litigation, there is a June 23,

09:16:36AM 3    2004, order by Judge Rothstein which recites including trial

09:16:44AM 4    preservation depositions of several plaintiffs' and

09:16:48AM 5    defendants' generic experts are underway or have been taken.

09:16:52AM 6         In the latex glove litigation, I have an order by

09:17:01AM 7    Judge Ludwig dated July 26, 2001, which is not -- doesn't

09:17:09AM 8    deal explicitly with experts but deals with any situation in

09:17:15AM 9    which there is quote, "a demonstrable likelihood that a

09:17:18AM 10   witness may not be available and for -- and for future

09:17:23AM 11   trials," end quote.  And in that situation, either party can

09:17:29AM 12   notice a trial preservation deposition of that witness.

09:17:32AM 13        So I know it's been done, but I can't say that -- I

09:17:39AM 14   don't know, Your Honor, whether that was litigated over

09:17:44AM 15   opposition or was a result of stipulation --

09:17:45AM 16        THE COURT:  I don't know of any that's been litigated

09:17:48AM 17   to opposition.  Does anybody know that?

09:17:52AM 18                   (Simultaneous speaking.)

09:17:52AM 19        MS. SHARKO:  I don't know either, but I have a pretty

09:17:57AM 20   clear recollection -- and this goes back very far -- the

09:18:00AM 21   hemophilia AIDS litigation, which was in the Northern

09:18:06AM 22   District of Illinois, the trial package that went back on

09:18:09AM 23   remand had preservation depositions of both plaintiff and

09:18:13AM 24   defense experts.  Again, I don't remember and I couldn't --

09:18:16AM 25   we couldn't find whether that was litigated by the defense.

09:18:21AM **1**          THE COURT:  Brian, you wanted to say something --

09:18:21AM **2**          MR. SOLOW:  You Honor --

09:18:24AM **3**          THE COURT:  Andy?

09:18:24AM **4**          MR SOLOW:  Yeah, when I was -- when I was researching

09:18:27AM **5**   this issue, I certainly didn't find any reported cases on --

09:18:30AM **6**          THE COURT:  No, I didn't either.  Yeah.  Well, you

09:18:32AM **7**   know, I mean, we're writing on a blank slate really.  I'm

09:18:36AM **8**   familiar with the cases that were mentioned, but it really

09:18:38AM **9**   was just an agreement by and between the parties in all of

09:18:42AM **10**  those cases.  I remember Judge Rothstein particularly talking

09:18:47AM **11**  to me about it.

09:18:49AM **12**         In any event, you know, we've been there before,

09:18:51AM **13**  Susan, in -- in the -- our early case.  We had something with

09:19:01AM **14**  a panel of experts trying to resolve that matter and that was

09:19:11AM **15**  a new -- a new approach.

09:19:12AM **16**         Andy, in Vioxx, prior to Vioxx, there was no such

09:19:17AM **17**  thing as a trial package really.  It was refined in that

09:19:22AM **18**  particular case.  We looked for footsteps and couldn't find

09:19:26AM **19**  them.

09:19:27AM **20**         And, Steve, the same thing with the -- with drywall,

09:19:36AM **21**  trying to get some sort of plan to rehabilitate houses by

09:19:41AM **22**  factual evidence was -- was a new approach.  So I guess we

09:19:47AM **23**  look for footsteps, and in law, we call it precedent, but you

09:19:52AM **24**  look for footsteps when you don't -- don't find any.

09:19:56AM **25**         The first thing, it gives me a little bit of a pause

09:20:01AM 1    to think about it, a transferee, MDL transferee judge, making

09:20:09AM 2    a universal ruling on this particular issue, and maybe that's

09:20:14AM 3    why it hasn't been done because it does have to do with trial

09:20:18AM 4    procedure more than the admissibility of evidence or really

09:20:22AM 5    motions on various legal issues which -- which has been

09:20:25AM 6    accepted as being universally applicable.  Even in that type

09:20:31AM 7    situation, oftentimes, when it goes back, the other side

09:20:37AM 8    generally takes a position that either some or none of the

09:20:40AM 9    rulings of the prior court or the transferee court are

09:20:45AM 10   applicable and should not be followed by the court.  So

09:20:52AM 11   there's always that issue.  This is just trial procedure, and

09:20:57AM 12   it's a question oftentimes left up to the trial judge -- that

09:21:02AM 13   is to say the transferor judge.  We know depositions, of

09:21:09AM 14   course, can be used in lieu of live testimony in certain

09:21:12AM 15   instances, such as either the unavailability or permanent

09:21:22AM 16   unavailability like death or something.

09:21:25AM 17        As the -- as the defendant points out -- the

09:21:30AM 18   witnesses or generic experts, I hear Brian arguing that --

09:21:41AM 19   that the experts for the plaintiff are really PSC experts and

09:21:48AM 20   not the individual lawyer experts.  But if you told that

09:21:52AM 21   lawyer, the contract attorney, that, he would want to fight

09:21:55AM 22   you, I think.  Why have a PSC if you're not going to share

09:22:01AM 23   the information or you're not going to produce the expert if

09:22:06AM 24   they, contract counsel, need it.  You're in a fiduciary

09:22:15AM 25   relationship with the individuals, and you have some

09:22:19AM  1    responsibility there.  But it's -- you know, availability can

09:22:24AM  2    be excused, of course, by a court under -- under 32(a)(4)(E),

09:22:29AM  3    and that is really factually pregnant.  I mean, it's -- it

09:22:33AM  4    may be a snow storm.  I've seen those cases where the expert

09:22:38AM  5    can't get there.  There may be a government shutdown, and --

09:22:43AM  6    and then they can't get a plane.  That's a new experience

09:22:50AM  7    that we're all dealing with.  That is so factually specific

09:22:56AM  8    that I think it has to be left to the transferor judge.

09:23:02AM  9         But that being said, let me share with you my views.

09:23:05AM  10   It seems to me obviously that it's more efficient and more

09:23:09AM  11   cost-saving to have -- to have both sides waive

09:23:15AM  12   unavailability or for the judge to excuse it under

09:23:23AM  13   32(a)(4)(E) although that's a -- that's a tentative kind of

09:23:26AM  14   and difficult approach.  It's obviously in the spirit of the

09:23:39AM  15   MDL that -- that efficiency, that cost-saving be done, but I

09:23:45AM  16   think if one side does it, the other side ought to have the

09:23:51AM  17   same opportunity.  I mean, you can't run an MDL by having one

09:23:56AM  18   side being the, you know, red-headed stepchild of the -- of

09:24:06AM  19   the court.  You can't -- it seems to me that both sides have

09:24:11AM  20   to have the same ability, the PSC in -- in taking these

09:24:20AM  21   depositions.

09:24:20AM  22        I mean, the PSC is the best of the best.  They're the

09:24:25AM  23   experts on general liability.  They know it better than

09:24:29AM  24   anybody knows it.  They've got better causation, general

09:24:36AM  25   causation feeling than -- than certainly independent lawyers

OFFICIAL TRANSCRIPT

09:24:41AM **1**   do.  That's why they pay the fee to have the PSC.  That's why

09:24:47AM **2**   their case is docked for the PSC's work.  The PSC is -- has

09:24:53AM **3**   done it in a number of cases.  So these experts ought to be

09:25:00AM **4**   put on, but it's up to the trial plaintiff.  He may say, "I

09:25:06AM **5**   don't want it.  You didn't do a good job on that.  I want my

09:25:09AM **6**   own expert."  He has a right to do it.

09:25:12AM **7**        But if he has a right to do it, how can you say the

09:25:15AM **8**   plaintiff can do it, but the defendant can't do it?  It just

09:25:19AM **9**   seems to me that the -- it ought to be the same for each

09:25:28AM **10**  side.

09:25:28AM **11**       Now, if the plaintiff doesn't want to do it, I can't

09:25:33AM **12**  imagine the defendant putting on a deposition if the

09:25:38AM **13**  plaintiffs' witness is live.  Chances are the defendants'

09:25:44AM **14**  witness is going to be live.  I don't -- I don't see this

09:25:52AM **15**  really as being a big issue in the real world.  Theoretically

09:25:57AM **16**  it is, but in the real world, I just -- I don't know whether

09:26:01AM **17**  it's going to rear its head any.

09:26:06AM **18**       If the -- if the plaintiff's expert is not germane to

09:26:10AM **19**  the facts of a particular case, then either the expert's

09:26:16AM **20**  going to show up at trial and be more specific about that

09:26:21AM **21**  particular case, and the defendants' expert's going to show

09:26:27AM **22**  up to rebut the plaintiffs' expert.  If the plaintiffs'

09:26:31AM **23**  expert is germane, relevant to the facts of that particular

09:26:37AM **24**  case, and the defendants' expert is not, then the defendants

09:26:45AM **25**  can produce his expert live so that he can -- he can rebut

09:26:49AM **1** the plaintiffs' expert.

09:26:51AM **2**     I just don't see it rearing its head often, but if it

09:26:56AM **3** does, it seems to me that the rule ought to be that it's the

09:27:02AM **4** plaintiff's choice.  The plaintiff has the opportunity, and

09:27:05AM **5** in most cases would take that opportunity, to utilize the

09:27:11AM **6** trial deposition of the generic expert.  But if they do that,

09:27:17AM **7** they -- the defendants ought to have that right too, to use

09:27:23AM **8** the generic -- the deposition of their generic expert.  But

09:27:28AM **9** they're not required to do it.  They can produce him live.

09:27:35AM **10** And so I think each side ought to have the right to either

09:27:38AM **11** bring their people live or utilize canned depositions.

09:27:47AM **12**     So I don't know whether I can help you by saying this

09:27:50AM **13** is the way it ought to be in every remanded case because it's

09:27:56AM **14** -- it's not -- it's not -- it's really a moving target in

09:28:00AM **15** those particular cases that -- and then it's also an area

09:28:05AM **16** where I don't know whether the transferee judge has a right

09:28:12AM **17** to tell the transferor judge how to try the case.  Trial

09:28:17AM **18** procedure is a little different than pretrial rulings on

09:28:20AM **19** evidence, and this issue involves trial procedure, and maybe

09:28:23AM **20** in a different form, but it certainly has to do with the

09:28:29AM **21** nature of the trial as opposed to motions, things of that

09:28:34AM **22** nature.

09:28:35AM **23**     But from my standpoint, I think it's the fair thing

09:28:40AM **24** to do, is to have either -- each side have the opportunity to

09:28:45AM **25** do it, not one side has the opportunity and the other side

**OFFICIAL TRANSCRIPT**

09:28:51AM   1    doesn't.  That just -- that's not what these cases are about.

09:28:55AM   2    That's not what the trial's about.  So that's my thinking on

09:29:00AM   3    it.

09:29:00AM   4         I don't know whether it's a great help to you all,

09:29:03AM   5    Andy, but -- and, Steve, but that's the way I see it.

09:29:10AM   6         MR. BIRCHFIELD:  Thank you, Your Honor.  We

09:29:11AM   7    appreciate that, and we certainly appreciate the Court's time

09:29:18AM   8    and availability to hear us this morning.

09:29:20AM   9         Is it okay with the Court, could we -- could we

09:29:26AM   10   submit a draft order on CMLA on these issues?

09:29:35AM   11        THE COURT:  Sure.

09:29:35AM   12        MR. BIRCHFIELD:  Next week, would that be okay?

09:29:35AM   13        THE COURT:  That's fine.  And I have this all

09:29:38AM   14   recorded, so if you all need it, just let me know.

09:29:43AM   15        All right, folks.  Thank you very much.

16                          * * * *

17             (WHEREUPON, the proceedings were adjourned.)

18                          * * * *

19                    REPORTER'S CERTIFICATE

20        I, Nichelle N. Drake, RPR, CRR, Official Court
     Reporter, United States District Court, Eastern District of
21   Louisiana, do hereby certify that the foregoing is a true and
     correct transcript, to the best of my ability and
22   understanding, from the record of the proceedings in the
     above-entitled and numbered matter.

23

24                    /s/ Nichelle N. Drake
                      Official Court Reporter

25

**OFFICIAL TRANSCRIPT**

Page 33