```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


IN RE: XARELTO (RIVAROXABAN)      *    MDL 2592 "L"
PRODUCTS LIABILITY LITIGATION     *
                                  *
                                  *    May 14, 2019
                                  *
                                  *
THIS DOCUMENT RELATES TO          *    Judge Eldon E. Fallon
Boudreaux v Bayer Corp., Et Al,   *
14-2720; and Orr v Bayer Corp,    *
Et Al, 15-3708                    *    Mag. Judge Michael North
                                  *
******************************************************************

                    REPORTER'S OFFICIAL TRANSCRIPT OF THE
                             STATUS CONFERENCE
                    BEFORE THE HONORABLE ELDON E. FALLON,
                             UNITED STATES JUDGE.

******************************************************************
```

**APPEARANCES:**

FOR THE PLAINTIFFS:           Gerald Meunier, Esq.
                              Leonard Davis, Esq.
                              Andy Birchfield, Esq.




FOR THE DEFENDANTS:           John F. Olinde, Esq.
                              Kim Moore, Esq.
                              Susan Sharko, Esq.




**REPORTED BY:**              Mary V. Thompson, RMR, FCRR
                              500 Poydras St., Room B275
                              New Orleans, LA  70130


OFFICIAL TRANSCRIPT

1       **P R O C E E D I N G S**
2                       (Call to order of the court.)
3               THE COURT: Be seated, please.
4               Good morning, ladies and gentlemen.
5               Call the case, please.
6               THE CASE MANAGER: MDL No. 2592, *In Re: Xarelto*
7       *Products Liability* Litigation.
8               THE COURT: Make your appearances for the record,
9       please.
10              MR. MEUNIER: Jerry Meunier, co-liaison counsel with
11      Mr. Davis.
12              MS. MOORE: Kim Moore here on behalf of the Janssen
13      defendants.
14              MR. OLINDE: Your Honor, John Olinde, co-liaison for
15      the Bayer defendants.
16              THE COURT: We are here today for our monthly status
17      conference in this matter. I met a moment ago with lead liaison
18      counsel to discuss the proposed agenda. We'll take it in the
19      order it appears.
20              MR. MEUNIER: May it please the Court:
21              Jerry Meunier, Your Honor.
22              The focus, Your Honor, at this time is on the
23      settlement agreement that was effectuated on May 6th by the
24      execution of a master settlement agreement.
25              And our co-lead counsel, Andy Birchfield, will, in a

**OFFICIAL TRANSCRIPT**

    1 moment, run through the key features and the status of that
    2 agreement.
    3        There is an enrollment deadline we mentioned in the
    4 joint report, which is August 5th, which is an important date by
    5 which counsel have to either enroll or not in the settlement.
    6        We also discuss in the joint report the case management
    7 orders, several of which do relate in one way or another to the
    8 settlement.
    9        CMO 9 stayed further litigation proceedings in this
10 court pending the implementation of settlement.
11        CMO 10 called for the registration of claims.
12        And CMO 11 sets forth, for docket control purposes, the
13 activity to follow for those claims that are not enrolled in the
14 settlement.
15        We also mentioned that there is a deadline under CMO 10
16 for the submission of supplemental registration information, and
17 that pertains to all claims that are open and pending.
18        We have, Your Honor, in connection with the settlement,
19 sought a stay of appeals dealing with the three verdicts that
20 were reached in the bellwether trials in this MDL, and that stay
21 will be in effect in the Fifth Circuit.
22        There has also been a stay requested and implemented in
23 the state court for the Pennsylvania proceeding that resulted in
24 verdicts.
25        We do have a state/federal coordination section of the

OFFICIAL TRANSCRIPT

report. I'll just mention and make it clear that all claims in other courts which enroll in the settlement will be processed under the settlement protocol in a coordinated and consistent fashion.

With that, I would like to turn it over to Mr. Birchfield for further discussion of the settlement.

THE COURT: While Mr. Birchfield is coming up, to put this matter in perspective, as we know, this MDL was created a couple years ago. There were a number of state judges that were involved in state court proceedings.

The case proceeded. The state courts allowed the MDL to have several trials before they scheduled theirs.

We had a number of trials; one in Mississippi and the others here in Louisiana.

After that, learned counsel were able to analyze and consider the litigation by way of some global resolution. They came up with a creative plan to resolve the litigation, both state and federal.

But it's important that the litigants understand what the plan is and follow the rules provided by the plan. We have certain deadlines by which they have to act. It's important that they act by that deadline.

Both state and federal judges are aware of the program. They support the program; feel it's appropriate for the litigants, both plaintiffs and defendants, who are in that

**OFFICIAL TRANSCRIPT**

1 process now.
2 　　　　I had the good fortune to work with some outstanding
3 state court judges, Judge New of Philadelphia and Judge Freeman
4 from California. I've spoken to both of them. They understand
5 the program. They are happy that the cases have been resolved.
6 　　　　All of us urge the litigants to follow the program and
7 to act on the specific dates that are provided for in the
8 program. If not, then the Court will have to get involved in
9 some fashion.
10 　　　　Andy.
11 　　　　MR. BIRCHFIELD: Thank you, Your Honor.
12 　　　　And I know the Court is aware of these details, but
13 with the Court's permission, I would like to highlight several
14 features of the settlement agreement program and the deadlines in
15 place for the benefit of the lawyers that are here in the
16 courtroom as well as those that are participating by phone.
17 　　　　First, Your Honor, we are pleased that we have reached
18 this point offering a fair and reasonable settlement to the
19 claimants in this litigation.
20 　　　　The settlement protocol is a protocol that has been
21 developed and approved by a special master. Gary Russo is
22 serving as a special master in this litigation and in this
23 settlement program, and has extensive mass tort litigation
24 experience. He worked very closely with us in developing a
25 settlement protocol that would be a fair and reasonable

settlement offer to claimants at all ends of the spectrum.  We are pleased that we're at this place.  We are thankful to Special Master Russo for his extraordinary help in this regard.

As we were preparing the final settlement agreement, the Master Settlement Agreement -- as we were negotiating that, the plaintiffs' leadership retained an ethics expert, ethics counsel, to guide us so that we can be confident and plaintiffs' lawyers can be confident that this settlement protocol is sound, not only in the sense of offering fair compensation to the claimants, but also that the terms meet the ethical requirements. And so we're thankful for Rick Stanley's assistance in that regard as well.

Since the settlement was announced on March 25th, we -- on the plaintiffs' side we have been working to provide as much information about the settlement program as we could as quickly as possible to plaintiffs and plaintiffs' lawyers.

We have conducted a series of webinars where plaintiffs' counsel were invited to participate in webinars to learn the details of the settlement program.

We have conducted a series of town hall meetings where we have gone to various locations throughout the country to lay out the settlement program, the settlement protocol, and how claimants can assess where they would fall; what level of compensation, you know, they could reasonably expect under this settlement program.

OFFICIAL TRANSCRIPT

```
09:29:26

09:29:48

09:30:16

09:30:39

09:31:04
```

1    We've been working very closely with BrownGreer.
2 BrownGreer will serve as the claims administrator for this
3 settlement program.
4    And BrownGreer was brought in in the early days of this
5 litigation by the Court for the purpose of maintaining data,
6 gathering data about these claims, and so it was a very smooth
7 transition from what they had gathered in the plaintiff fact
8 sheet process to having information readily available for
9 evaluating the claims.
10    As Mr. Meunier mentioned, there is an upcoming deadline
11 of June 8, which will fall to June 10th, but that is a 75-day
12 registration deadline.  And that's important.  We want
13 plaintiffs' counsel to have that circled on their calendar.  We
14 gather key information on that deadline about the nature of these
15 claims, and it is of vital importance that all claimants provide
16 this information in a timely manner.  We are working diligently
17 to move this settlement program in an efficient manner so that we
18 can provide compensation as quickly as possible.  This is a key
19 deadline.
20    There is one point that I would like to clarify
21 regarding, you know, who must submit registration or new
22 information on this date.
23    All of the claimants who have a filed case must submit
24 the registration data on June 10th -- before June 10th.
25    If a case was closed -- it was an unfiled case but it

**OFFICIAL TRANSCRIPT**

```
 1  was closed prior to the deadline of filing a claim on
 2  April 4th -- if it is closed, then there is no responsibility.
 3  There is no obligation to register data.
 4          The only ones that need to submit registration data on
 5  June 10th are those that are open, whether they were filed or
 6  unfiled.  If they are open -- if it's an open Xarelto claim in
 7  the lawyer's office, they need to provide registration data.  If
 8  it has been closed, no need to submit any additional registration
 9  data.
10          Your Honor, one of the features of the settlement
11  program is that the evaluation of the claims will be driven by
12  the medical records; the proof of use, the proof that the
13  claimant was taking Xarelto at the time of an injury, at the time
14  of a bleeding event.  This is information that the Court
15  required.  Within just a short time of filing the lawsuit, the
16  plaintiff was required to submit plaintiff fact sheet data and
17  medical records showing proof of use and proof of injury.
18          So many claimants -- many claimants have already
19  submitted that information, and they can indicate that their
20  medical records are complete, and BrownGreer can move immediately
21  into evaluating those claims.  That's a feature of efficiency
22  that has been built in based on the Court involving BrownGreer
23  from the very, very beginning of the process.
24          There is a substantial extraordinary circumstances fund
25  that is available to claimants who have extraordinary
```

Timestamps: 09:31:27, 09:31:43, 09:32:06, 09:32:27, 09:32:51

1  circumstances; if they have an injury, a long-term disability, if
2  they had an excessive number of days in the hospital, if there
3  are -- if there are other factors.  And all of this is
4  information available on the BrownGreer portal, but that is also
5  a feature for claimants to be alert to, that there is the
6  opportunity to participate in this extraordinary circumstances
7  fund as part of the settlement program.
8          The key deadline is August 5th, and that is the
9  enrollment deadline.  So now the settlement protocol that allows
10 a claimant and claimant's counsel to evaluate their claim based
11 on objective criteria and have a reasonable expectation of what
12 the compensation amount would be that they would receive through
13 the settlement program -- that information is available on
14 BrownGreer's portal, and so these claimants and their counsel can
15 use the settlement protocol and make an informed decision about
16 whether they wish to participate in the settlement program or
17 not.
18         Once that decision is made, claimants are required to
19 sign an election form indicating, yes, I want to participate in
20 the settlement program.  They sign that election form and sign a
21 release and a stipulation of dismissal.  Submit that to
22 BrownGreer.  If the medical records are complete, indicate that,
23 and the claim begins the process of being evaluated for
24 compensation.  A points award will be determined by BrownGreer
25 and provided to counsel at that point.

OFFICIAL TRANSCRIPT

1  So once that determination is made, the claimant and
2  their counsel can evaluate that and make sure that BrownGreer's
3  determination aligns with their expectations.  If they think that
4  BrownGreer made a mistake or there is an error, they can ask for
5  reconsideration.  BrownGreer will reevaluate that claim.  If
6  additional records are required, additional records can be
7  submitted to BrownGreer.
8  If, on reconsideration, the claimant or claimant's
9  counsel chooses to appeal that decision, an appeal can be made to
10 the special master, Gary Russo, or there is a special master,
11 Justice Greenspan out of Philadelphia.  They are working together
12 to ensure consistency.  But an appeal can be made of that points
13 award determination to a special master.  There is an appeal fee
14 involved there.  That determination by the special master is
15 final.
16 So BrownGreer will make the initial determination; an
17 opportunity for reconsidering by BrownGreer; and an opportunity
18 for appeal to a special master to make sure that the points award
19 is accurate before payments are made in this case.
20 There is also an opportunity for BrownGreer to make a
21 determination about whether a claimant is eligible or not.  There
22 are some basic requirements to be eligible to participate in the
23 settlement program.
24 You must have a case that is filed.  The settlement
25 program is only available for filed cases, whether they were

OFFICIAL TRANSCRIPT

1  filed before the settlement was announced or after, but on or
2  before April 4th of this year.  One eligibility requirement is
3  that it be a filed case.
4          And so BrownGreer will make a determination whether the
5  claimant is eligible or not.  Eligibility determination will be
6  provided to claimants and their counsel, and there is an
7  opportunity for reconsideration and appeal there as well.
8          So it's vitally important that claimants and their
9  counsel begin the process now of going to the portal, downloading
10 the settlement protocol, making a determination about where their
11 claim would fall, and returning the election form.
12         We are confident -- the plaintiffs' leadership is
13 confident, based on our work with Special Master Russo, that each
14 claimant can look at this settlement protocol and determine that
15 they are receiving fair and equitable compensation under the
16 settlement program.
17         There are some factors that will result in a
18 substantial reduction of claims, but those factors are based on
19 the reality of the litigation.  As the Court mentioned, there
20 have been bellwether trials.  There were three in the MDL.  There
21 were three bellwethers in state court.  There have been
22 approximately 1200 cases involved in the process where
23 depositions were taken of the plaintiffs, the plaintiffs' doctors
24 themselves, or detail representatives; and through that learning
25 process, we have a good understanding of the realities of this

**OFFICIAL TRANSCRIPT**

1  litigation.  And so those factors that result in a reduction are
2  based on the facts and the reality of this litigation.  They may
3  seem severe, but they are a reflection of the nature of this
4  litigation.
5       The key factors are tied to the September 2015 label
6  change.  There was a change to the product information package
7  insert for Xarelto in September of 2015 and so there are
8  substantial reductions that are tied to that.
9       If the first prescription was more -- was more than
10 three months after that label change or the first injury was more
11 than six months after that label change, those claimants are
12 subject to a substantial reduction.  But that does reflect the
13 liability challenges tied to that label.
14      With all of the factors that are in play here, and the
15 extraordinary circumstances fund, we are confident that this is a
16 settlement program that can and should be recommended to each
17 claimant here.
18      And we look forward to working with lawyers to -- in
19 providing information to help them and guide them in providing
20 informed consent to their claimants and to help them throughout
21 this process and bring this settlement program to a successful
22 conclusion.
23      And, Your Honor, I'll be glad to address any questions
24 that you may have.
25      THE COURT:  What are we talking about, the numbers of

OFFICIAL TRANSCRIPT

1  the litigation at this point?
2         MR. BIRCHFIELD: Your Honor, currently there are
3  approximately 31,230 eligible claimants. That's a preliminary
4  determination. That number may fluctuate slightly because there
5  are some duplicates and that is normal in a litigation of this
6  magnitude.
7         And then there are also some claimants who have an
8  initial determination of being ineligible. Perhaps they have not
9  provided adequate information that the claim is on file. We're
10 still working through that so there may be some slight
11 fluctuation.
12        But the eligibility number right now is 31,230, and I
13 don't anticipate it moving significantly from that number.
14        THE COURT: And that includes state court, too?
15        MR. BIRCHFIELD: Yes, Your Honor, it does.
16        And, Your Honor, let me add that, you know, through the
17 course of the webinars and the town hall meetings, we have --
18 we've had, you know, over 700 participant law firms that have
19 engaged in this process. You know, the feedback that we have
20 received so far is encouraging. It's a favorable response.
21        And we do applaud, you know, Gary Russo's extraordinary
22 work in developing a settlement protocol that is fair across the
23 spectrum from someone who has a -- you know, a minor -- a
24 relatively minor injury and a short hospital stay or no hospital
25 stay up to someone who had a significant brain bleed or even a

*09:40:28*
*09:40:49*
*09:41:07*
*09:41:29*
*09:41:59*

OFFICIAL TRANSCRIPT

1  death case.
2            THE COURT:  Would those litigants be able to figure out
3  what they are going to receive?
4            MR. BIRCHFIELD:  Yes, Your Honor.  So the settlement
5  protocol is based on objective criteria.  It is based -- and it's
6  determined by points.  If it is a non-death case -- so if it is a
7  brain bleed or a nosebleed -- and the vast majority of the cases
8  are GI bleeds -- then the base points are determined by the
9  number of days that the individual stayed in the hospital.  It's
10 not a perfect barometer, but it's the best initial indicator of
11 the severity of the injury.
12           So a claimant can look, determine the nature of their
13 injury, how many days they were in the hospital, and they can
14 see, you know, the base points award.
15           Based on the information that we have and an evaluation
16 of the data through the BrownGreer portal, what we have collected
17 through the process of the fact sheets and the records, we have
18 made projections of the point value.  We anticipate that the
19 point value will be approximately, you know, $1.
20           So a claimant and their counsel can look at the
21 settlement protocol and determine the number of days they had in
22 the hospital, and they can receive their base points award.
23           They can also look and see if they are subject to any
24 of the reductions.  There are not reductions for risk factors,
25 but there are reductions for whether -- if the claim was filed --

1  I mean if the claimant's first prescription of Xarelto was more
2  than three months after the September 2015 label change.  Then
3  that is subject to a reduction.  If their injury was more than
4  six months after the September 2015 label change, they are
5  subject to a reduction.
6      There are substantial reductions for claimants who are
7  residents of Texas or Michigan because the reality of those
8  states' laws makes it next to impossible to pursue those claims.
9      So the settlement protocol reflects the reality of the
10 litigation.  And so -- but a claimant can look and they can see
11 their base award.  They can see if any of the reductions apply.
12 If so, what amount.  And they can determine what their base
13 points award would be based on objective criteria.
14      In death cases, instead of the base points award being
15 driven by the days in the hospital, it is determined by the age
16 at the time of death.
17      THE COURT:  Anything from the defense, Susan?
18      MS. SHARKO:  Yes.  Thank you.
19      We appreciate that the settlement is intended to end
20 the Xarelto litigation for all time.  We're happy with the
21 enthusiastic response that Mr. Birchfield reports.  We believe
22 it's the right thing for patients and doctors.
23      Just to review the deadlines one more time, if you have
24 registered and you have a filed case, you have two choices.  You
25 can register on or before June 8th or your case should be

OFFICIAL TRANSCRIPT

```
         1  dismissed with prejudice.  But you must register.  If you
         2  registered and your case is unfiled, we are presuming that those
         3  cases have been closed or abandoned and are not going to proceed.
         4          Once you get past the registration date, you must
09:46:01 5  submit an enrollment form on or before August 5th stating either
         6  yes or no.  Not submitting an enrollment form is not an option.
         7  You have to submit the enrollment form.
         8          MR. BIRCHFIELD:  And, Your Honor, in the meeting that
         9  you had with leadership before this status conference, that was
09:46:26 10 an issue that the Court addressed, the enrollment.  And as I
         11 appreciate it, you invited the parties to submit a proposal to
         12 you so that we can help manage the docket here.
         13         THE COURT:  Yeah.
         14         MR. BIRCHFIELD:  And, Your Honor, one other thing that
09:46:45 15 we are hopeful to submit to the Court, and that is a proposal --
         16 a proposed order that would -- that -- where the Court could
         17 serve to make a determination about appropriate legal
         18 representatives so that a claimant -- if the original product
         19 claimant -- user of the product is now deceased, they need a
09:47:13 20 legal representative.  I think it would be helpful or efficient
         21 if the Court could assist in that process.  We want to submit,
         22 for your consideration, an order along those lines.
         23         THE COURT:  Okay.  Anything else from the --
         24         MR. MEUNIER:  Your Honor, just the next date.
09:47:28 25         Before doing that, I do want to -- I know I speak for
```

**OFFICIAL TRANSCRIPT**

```
09:47:49
```

1  all counsel -- express appreciation to this Court for your expert
2  management and patience with us as we've gotten to this important
3  stage of the litigation.  These complex cases don't resolve this
4  way without expert case management and seasoned judges on the
5  bench, and you certainly are a leader in that.
6          I just thought, for example, of MDL centrality, which
7  was a pioneering step that you allowed us to take in this case.
8  And I think all of us would agree that the claims management
9  process using technology in the best way has been important in
10 every respect, picking plaintiffs for trial as well as now
11 managing the process for settlement purposes.
12          So we appreciate the Court's leadership in those ways.
13          THE COURT:  As you've all heard me say before, in these
14 cases the reason that they are able to be handled efficiently and
15 effectively is because of the quality of counsel that these cases
16 bring to bear on both sides of the aisle.
17          It's been my experience that counsel in these
18 particular cases, given the opportunity to explore their case and
19 know their case, come to grips with their case and they are able
20 to resolve them some sort of way, either globally or in some
21 manifestation, and it comes out appropriately and the case ends.
22          These cases present a particular challenge to an end
23 game.  Not every case can be settled globally, but every case
24 ought to have an end game.  We have learned that, unfortunately,
25 through *Asbestos* where we are now 30 years into the case and it

OFFICIAL TRANSCRIPT

```
09:49:41
```

 1  is still chugging along.  That doesn't do well for the system.
 2  It's not good for lawyers.  It's not good for litigants.  And I'm
 3  glad that this one today can be resolved, and I appreciate the
 4  help that counsel has given to me.
 5              MR. MEUNIER:  Your Honor --
 6              THE COURT:  The next meeting date will be by phone.  It
 7  is on June 24th at 9:00 Eastern Standard Time -- not Eastern
 8  Standard, Central Standard.  9:00 New Orleans time by phone.  And
 9  we'll give you a call-in number or some way of dealing with it.

```
09:50:02
```

10              MR. MEUNIER:  Thank you, Your Honor.
11              THE COURT:  Thank you very much.  Court is in recess.
12                              (Proceedings adjourned.)
13
14                              * * *
15                           **CERTIFICATE**
16
17      **I hereby certify this 16th day of May, 2019, that the**
18  **foregoing is, to the best of my ability and understanding, a true**
19  **and correct transcript of the proceedings in the above-entitled**
20  **matter.**
21
22                              */s/ Mary V. Thompson*
23                           _____
                                **Official Court Reporter**
24
25

**OFFICIAL TRANSCRIPT**