# FIRST AMENDMENT

# TO THE MARY JANE KERSTON REVOCABLE TRUST

On March 28, 1995, MARY JANE KERSTON as Settlor, executed a certain trust agreement with MARY JANE KERSTON, as Trustee, which Trust agreement is designated as the MARY JANE KERSTON REVOCABLE TRUST, wherein I reserved the right, as stated in Article II of the Trust agreement, at any time or times to amend or revoke the Trust agreement in whole or in part by instrument in writing delivered to the Trustee.

On September 15, 2016, I amended the Trust agreement and delivered it in writing to the Trustee as follows.

I hereby amend Article IX - APPOINTMENT OF TRUSTEES (1) APPOINTMENT (a) Named Trustees: by revoking this Subsection and by inserting in lieu thereof:

# ARTICLE IX

# APPOINTMENT OF TRUSTEES

## (1)    APPOINTMENT

Named Trustees:  Settlor hereby nominates and appoints MARY JANE KERSTON as Trustee of this Trust. The Settlor appoints DEBRA A. BODZIAK as Successor Trustee.  In the event DEBRA A. BODZIAK cannot continue to serve as Successor Trustee, the Second Successor Trustee shall be HARRIET BRANNAN.

The rest of Article IX shall hereby remain unaltered.

1

I hereby amend Article IV - DISTRIBUTION UPON DEATH OF SETTLOR (a) Creation of Separate Shares: by revoking this Subsection and by inserting in lieu thereof:

## **ARTICLE IV**

## **DISTRIBUTION UPON DEATH OF SETTLOR**

Upon the death of the Settlor the Trustees shall place the balance of the trust estate shall be distributed as follows:

(a)    Creation of Separate Shares: Upon the death of the Settlor (the division date), the Trustees shall divide the total Trust Estate into percentages of the total Trust Estate as follows:

1.    Fifteen Percent (15%) of the Trust Estate shall be distributed to DEBRA A. BODZIAK.  If she shall predecease the division date then her share shall be distributed to her issue, share and share alike, per stirpes, subject to postponement of possession as provided in Paragraph (b) of this Section.

2.    Fifteen Percent (15%) of the Trust Estate shall be distributed to HARRIET BRANNAN.  If she shall predecease the division date then her share shall be distributed to her issue, share and share alike, per stirpes, subject to postponement of possession as provided in Paragraph (b) of this Section.

3.    Fifteen Percent (15%) of the Trust Estate shall be distributed to EDWARD SCHMETZER.  If he shall predecease the division date then his share shall be distributed to his issue, share and share alike, per stirpes, subject to postponement of possession as provided in Paragraph (b) of this Section.

2

4.      Fifteen Percent (15%) of the Trust Estate shall be distributed to JEFFREY SCHMETZER.  If he shall predecease the division date then his share shall be distributed to his issue, share and share alike, per stirpes, subject to postponement of possession as provided in Paragraph (b) of this Section.

5.      Fifteen Percent (15%) of the Trust Estate shall be distributed to WILLIAM SCHMETZER and JANE SCHMETZER, share and share alike.  If both WILLIAM SCHMETZER and JANE SCHMETZER have predeceased the division date, then this share shall be distributed to their issue, share and share alike, per stirpes, subject to postponement of possession as provided in Paragraph (b) of this Section.

6.      Twenty Percent (20%) of the Trust Estate shall be distributed to PAIGE BODZIAK.  If she shall predecease the division date then her share shall be distributed to her descendants, per stirpes, subject to postponement of possession as provided in Paragraph (b) of this Section.

7.      Five Percent (5%) of the Trust Estate shall be distributed to RANDY BODZIAK.  If he shall predecease the division date then his share shall be distributed to his descendants, per stirpes, subject to postponement of possession as provided in Paragraph (b) of this Section.

(b)      Continuing Trust for Younger Beneficiaries: Despite any of the above provisions of this Section:

1.      Property which is otherwise distributable to a beneficiary for whom a Trust is then held hereunder shall be added to that Trust; and

2.      The Trustees may elect to withhold any property otherwise

3

distributable under said provisions from any beneficiary who has not yet attained the age of twenty-three (23) years, and the Trustees may retain the property for that beneficiary in a separate Trust for that beneficiary in which his or her interest is indefeasibly vested. When the beneficiary reaches the age of twenty-three (23) years, his or her separate Trust shall terminate, and the remaining Trust principal shall be delivered over to him or her free of Trust. The Trustees shall apply as much of the net income and principal of the Trust so retained as the Trustees deem necessary or advisable for the health, education, and support in reasonable comfort of the beneficiary, considering all circumstances and factors deemed pertinent by the Trustees. Any undistributed net income shall be accumulated and added to principal of the Trust for such beneficiary. If, at the time a separate Trust is to be set apart for him or her under Paragraph (b) of this Section, a then living child of the Settlor has attained an age at which he or she would have been entitled to one or more distributions of principal under this Subparagraph, if such separate Trust had then been set apart for him or her, the Trustees shall immediately give the child the ability to withdraw the portion or portions of his or her Trust to which he or she would have been so entitled upon written request.

       (c)   <u>No Descendants</u>:  In the event that none of Settlor's descendants are surviving, then, upon the death of the Settlor's last descendant, the then remaining Trust Estate shall be distributed to Settlor's heirs at law under the laws of the State of Florida, the identity of such heirs to be determined as though the Settlor had died upon the death of the Settlor's last descendant.

The rest of Article IV shall hereby remain unaltered.

********

4

The Original provisions of the Trust agreement dated March 28, 1995, shall control if the terms and conditions of this First Amendment do not specifically address an issue that was contained in the Original Trust agreement.  If a term or condition, as stated in the Original Trust agreement, was addressed herein, then the terms and conditions of this First Amendment shall govern.

********

**IN WITNESS WHEREOF**, MARY JANE KERSTON has signed this First Amendment to his Trust Agreement and has acknowledged and declared it to be Settlor's First Amendment to Settlor's Trust, and MARY JANE KERSTON has accepted the First Amendment to the Trust imposed thereunder upon the terms and conditions contained therein, on September 15, 2016.

Witnesses as to Settlor:

_Bernadette Saunders_

_Melody Bush_

                                                 _Mary Jane Kerston_
                                                 MARY JANE KERSTON, Settlor

Witnesses as to Trustee:

_Bernadette Saunders_

_Melody Bush_

                                                 _Mary Jane Kerston_
                                                 MARY JANE KERSTON, Trustee

      We certify that the above instrument was on the date thereof signed, acknowledged and declared by MARY JANE KERSTON, the Settlor, as First Amendment to Settlor's Trust in our presence, and that we, at the Settlor's request and in Settlor's presence and in the presence of each other, have signed our names as witnesses thereto, believing MARY JANE KERSTON to be of sound mind and memory at the time of signing.

_Bernadette Saunders_
Witness #1 as to Settlor

                                _Cooper City_            _FL_
                                  City                          State

_Melody Bush_
Witness #2 as to Settlor

                                _Cooper City_            _FL_
                                  City                          State

STATE OF FLORIDA          )
                          )ss:
COUNTY OF BROWARD         )

We, MARY JANE KERSTON, **BERNADETTE SAUNDERS**, and **MELODY BUCHER**, the Settlor and the witnesses, respectively, whose names are signed to the attached or foregoing instrument declared to the undersigned officer that the Settlor in the presence of witnesses, signed the instrument as First Amendment to Settlor's Revocable Trust, that the Settlor signed, and that each of the witnesses, in the presence of the Settlor and in the presence of each other, signed the Revocable Trust as a witness.

_Mary Jane Kerston_
MARY JANE KERSTON, Settlor

_Bernadette Saunders_
Witness

**BERNADETTE SAUNDERS**
Print Name

_Melody Bucher_
Witness

**MELODY BUCHER**
Print Name

The foregoing instrument was acknowledged before me by the Settlor, MARY JANE KERSTON, who is personally known to me or who has produced _____ as identification, and by **BERNADETTE SAUNDERS**, who is personally known to me or who has produced _____ as identification, and by **MELODY BUCHER**, who is personally known to me or who has produced _____ as identification, the witnesses, on September 15, 2016.

_____
Notary Public - State of Florida
Commission Expires:

GREGORY EBENFELD
Notary Public - State of Florida
My Comm. Expires Jun 15, 2017
Commission # FF 022944
Bonded Through National Notary Assn.

7

# MEMORANDUM AND DECLARATION OF TRUST

This Memorandum and Declaration of Trust is executed by MARY JANE KERSTON, as Settlor and as Trustee of the MARY JANE KERSTON REVOCABLE TRUST dated _March 28_, 1995, this _28_ day of _March_, 1995.

By this instrument, I declare that any real estate in any county which is deeded to me, "as Trustee" or "as Trustee of the MARY JANE KERSTON REVOCABLE TRUST dated _March 28_ 1995" will be held by me for the benefit of certain beneficiaries named in that certain Trust entitled the MARY JANE KERSTON REVOCABLE TRUST dated _March 29_, 1995 (the "Trust") which was executed by me as Settlor and as Trustee on _March 28_, 1995.

I declare that under the terms of the Trust, I have the power to alter, amend, revoke or terminate the Trust in its entirety and to remove any assets, including my homestead, therefrom at any time. I further declare that I am the sole beneficiary of the Trust during my lifetime and certain other individuals are beneficiaries of the Trust following my death. The purposes of the Trust are for the protection and preservation of my assets and for the care of myself for my lifetime and for the use and benefit of other individuals following the death of myself.

The Trustee and the Successor Trustee of the Trust are given broad authority to administer, invest, reinvest and distribute the assets of the Trust, including the power to open and maintain bank, credit union and brokerage accounts and to purchase, own,

1

I hereby amend Article IV - DISTRIBUTION UPON DEATH OF SETTLOR (a) Creation of Separate Shares: by revoking this Subsection and by inserting in lieu thereof:

## ARTICLE IV

## DISTRIBUTION UPON DEATH OF SETTLOR

Upon the death of the Settlor the Trustees shall place the balance of the trust estate shall be distributed as follows:

(a)      Creation of Separate Shares: Upon the death of the Settlor (the division date), the Trustees shall divide the total Trust Estate into percentages of the total Trust Estate as follows:

1.      Fifteen Percent (15%) of the Trust Estate shall be distributed to DEBRA A. BODZIAK.  If she shall predecease the division date then her share shall be distributed to her issue, share and share alike, per stirpes, subject to postponement of possession as provided in Paragraph (b) of this Section.

2.      Fifteen Percent (15%) of the Trust Estate shall be distributed to HARRIET BRANNAN.  If she shall predecease the division date then her share shall be distributed to her issue, share and share alike, per stirpes, subject to postponement of possession as provided in Paragraph (b) of this Section.

3.      Fifteen Percent (15%) of the Trust Estate shall be distributed to EDWARD SCHMETZER.  If he shall predecease the division date then his share shall be distributed to his issue, share and share alike, per stirpes, subject to postponement of possession as provided in Paragraph (b) of this Section.

2

4.      Fifteen Percent (15%) of the Trust Estate shall be distributed to JEFFREY SCHMETZER.  If he shall predecease the division date then his share shall be distributed to his issue, share and share alike, per stirpes, subject to postponement of possession as provided in Paragraph (b) of this Section.

5.      Fifteen Percent (15%) of the Trust Estate shall be distributed to WILLIAM SCHMETZER and JANE SCHMETZER, share and share alike.  If both WILLIAM SCHMETZER and JANE SCHMETZER have predeceased the division date, then this share shall be distributed to their issue, share and share alike, per stirpes, subject to postponement of possession as provided in Paragraph (b) of this Section.

6.      Twenty Percent (20%) of the Trust Estate shall be distributed to PAIGE BODZIAK.  If she shall predecease the division date then her share shall be distributed to her descendants, per stirpes, subject to postponement of possession as provided in Paragraph (b) of this Section.

7.      Five Percent (5%) of the Trust Estate shall be distributed to RANDY BODZIAK.  If he shall predecease the division date then his share shall be distributed to his descendants, per stirpes, subject to postponement of possession as provided in Paragraph (b) of this Section.

(b)      Continuing Trust for Younger Beneficiaries: Despite any of the above provisions of this Section:

1.      Property which is otherwise distributable to a beneficiary for whom a Trust is then held hereunder shall be added to that Trust; and

2.      The Trustees may elect to withhold any property otherwise

3

distributable under said provisions from any beneficiary who has not yet attained the age of twenty-three (23) years, and the Trustees may retain the property for that beneficiary in a separate Trust for that beneficiary in which his or her interest is indefeasibly vested. When the beneficiary reaches the age of twenty-three (23) years, his or her separate Trust shall terminate, and the remaining Trust principal shall be delivered over to him or her free of Trust. The Trustees shall apply as much of the net income and principal of the Trust so retained as the Trustees deem necessary or advisable for the health, education, and support in reasonable comfort of the beneficiary, considering all circumstances and factors deemed pertinent by the Trustees. Any undistributed net income shall be accumulated and added to principal of the Trust for such beneficiary. If, at the time a separate Trust is to be set apart for him or her under Paragraph (b) of this Section, a then living child of the Settlor has attained an age at which he or she would have been entitled to one or more distributions of principal under this Subparagraph, if such separate Trust had then been set apart for him or her, the Trustees shall immediately give the child the ability to withdraw the portion or portions of his or her Trust to which he or she would have been so entitled upon written request.

(c) <u>No Descendants</u>: In the event that none of Settlor's descendants are surviving, then, upon the death of the Settlor's last descendant, the then remaining Trust Estate shall be distributed to Settlor's heirs at law under the laws of the State of Florida, the identity of such heirs to be determined as though the Settlor had died upon the death of the Settlor's last descendant.

The rest of Article IV shall hereby remain unaltered.

********

4

The Original provisions of the Trust agreement dated March 28, 1995, shall control if the terms and conditions of this First Amendment do not specifically address an issue that was contained in the Original Trust agreement.  If a term or condition, as stated in the Original Trust agreement, was addressed herein, then the terms and conditions of this First Amendment shall govern.

********

**IN WITNESS WHEREOF**, MARY JANE KERSTON has signed this First Amendment to his Trust Agreement and has acknowledged and declared it to be Settlor's First Amendment to Settlor's Trust, and MARY JANE KERSTON has accepted the First Amendment to the Trust imposed thereunder upon the terms and conditions contained therein, on September 15, 2016.

Witnesses as to Settlor:



MARY JANE KERSTON, Settlor

Witnesses as to Trustee:

MARY JANE KERSTON, Trustee

We certify that the above instrument was on the date thereof signed, acknowledged and declared by MARY JANE KERSTON, the Settlor, as First Amendment to Settlor's Trust in our presence, and that we, at the Settlor's request and in Settlor's presence and in the presence of each other, have signed our names as witnesses thereto, believing MARY JANE KERSTON to be of sound mind and memory at the time of signing.

| | |
|---|---|
| _____ | _____Cooper City_____ _FL_ |
| Witness #1 as to Settlor | City                  State |
| _____ | _____Cooper City_____ _FL_ |
| Witness #2 as to Settlor | City                  State |

6

STATE OF FLORIDA             )
                                                )ss:

COUNTY OF BROWARD       )

We, MARY JANE KERSTON, _____**3ERNADETTE SAUNDERS**_____, and _____**MELODY BUCHER**_____, the Settlor and the witnesses, respectively, whose names are signed to the attached or foregoing instrument declared to the undersigned officer that the Settlor in the presence of witnesses, signed the instrument as First Amendment to Settlor's Revocable Trust, that the Settlor signed, and that each of the witnesses, in the presence of the Settlor and in the presence of each other, signed the Revocable Trust as a witness.

_____
MARY JANE KERSTON, Settlor

_____
Witness

_____**3ERNADETTE SAUNDERS**_____
Print Name

_____
Witness

_____**MELODY BUCHER**_____
Print Name

The foregoing instrument was acknowledged before me by the Settlor, MARY JANE KERSTON, who is personally known to me or who has produced _____ as identification, and by _____**3ERNADETTE SAUNDERS**_____, who is personally known to me or who has produced _____ as identification, and by _____**MELODY BUCHER**_____, who is personally known to me or who has produced _____ as identification, the witnesses, on September 15, 2016.

_____
Notary Public - State of Florida
Commission Expires:

GREGORY EBENFELD
Notary Public - State of Florida
My Comm Expires Jun 15, 2017
Commission # FF 022944
Bonded Through National Notary Assn.

7

# MARY JANE KERSTON REVOCABLE TRUST

**THIS AGREEMENT** was made and entered into this _28_ day of _March_ , 1995, between MARY JANE KERSTON, the Settlor, County of BROWARD, State of Florida (hereinafter called the "Settlor") and MARY JANE KERSTON as Trustee (hereinafter referred to, along with any successor(s), as the "Trustee").

### W I T N E S S E T H:

That in consideration of the premises and the covenants hereinafter set forth, the Settlor hereby assigns, transfers and set over to the Trustee all of the rights, powers, options, title, claims, interest and benefits which the Settlor now has or hereinafter may have, including, without limitation, the right to receive the proceeds thereof and certain other property, all property listed in "Schedule A", hereto annexed, and as the same may be amended from time to time, to be held in trust together with any additions thereto.  Such properties in trust shall be administered upon the following terms:

## ARTICLE I

## GENERAL PROVISIONS

### *(1)    ADDITIONS TO CORPUS*

The Settlor, or any other person with the consent of the Trustee, may add to the principal of the Trust created herein by deed, by Will or otherwise.  Such additions of trust assets shall be governed by the provisions hereof as if said additions of trust assets were part of the original corpus.

2

(2) **LAWS GOVERNING**

This Agreement shall be construed and regulated in all respects by the laws of the State of Florida.

(3) **TRUSTEE'S PRIMARY RESPONSIBILITY**

Notwithstanding any other provisions herein to the contrary, with regard to the management, investment and distribution of this Trust Fund, the Trustee shall consider vested and first beneficiary, the Settlor, as the Trustee's primary interest and responsibility, and the Trustee shall consider contingent and/or remainder beneficiaries as the Trustee's secondary interest and responsibility.

(4) **NAME OF TRUST**

This Trust shall, for convenience, be known as the MARY JANE KERSTON REVOCABLE TRUST and it shall be sufficient that it be referred to as such in any deed, assignment, bequest or devise.   The Tax Identification Number is MARY JANE KERSTON own Social Security Number.  In the event a Sub-trust is formed, that trust will have its own Tax Identification Number.

(5) **FAMILY MEMBERS**

At the time of the execution of this Trust, Settlor's immediate family group consists of:

Settlor's family group, HARRIET BRANNAN, EDWARD SCHMETZER, JEFFERY SCHMETZER, RANDY BODZIAK, WILLIAM SCHMETZER and JANE SCHMETZER, herein sometimes referred to as "child" or "children".  The term "child" or "children", born of a person shall include any adopted child or children of that person.

3

### (6)   HEALTH

The term "health" shall include all forms of medical aid including but not limited to, hospital costs, surgical costs, drugs, psychiatric treatment, nursing home care, and private duty nursing care.

### (7)   EDUCATION

The term "education" shall include all forms of education, including, but not limited to, public and private schools, primary and secondary, college, advanced college and post-graduate, commercial, vocational, technical, business, art education, and any others.

### (8)   MAINTENANCE AND SUPPORT

The term "maintenance and support" shall include all forms of maintenance and support that will qualify this Trust and the following Sub-Trust for the Marital Deduction.

### (9)   THE CODE

The "Code" shall refer to the Internal Revenue Code of 1986, as amended from time to time, and all pertinent regulations and rulings, and any references to a section of the Code shall also refer to any future amendment or replacement section or law with substantially the same provisions.

## ARTICLE II

## ADMINISTRATION DURING LIFETIME OF SETTLOR

### (1)   RIGHT TO REVOKE AND AMEND THE TRUST

The Settlor expressly reserves the right, at any time during his lifetime, by instrument in writing delivered to the Trustee, to alter, amend, or revoke this Agreement,

4

either in whole or in part, provided, however, that if the Trust is altered or amended, the duties, powers, and responsibilities of the Trustee shall not be substantially changed without the Trustee's consent.  In case of any revocation, whole or partial, all insurance policies, securities, and property held in trust hereunder, or that part thereof as to which the Agreement may be revoked, shall be delivered by the Trustee to the Settlor or in accordance with the Settlors' written directions.

### (2)     DISPOSITION OF INCOME AND PRINCIPAL

(a)     Income Distributions:  During the Settlor's lifetime and while the Trust Estate shall include cash, securities, or other income producing property, the Trustee shall manage, invest, and reinvest the Trust Estate, shall collect the income therefrom, and shall pay over the net income to the Settlor or shall apply the same for the Settlor's benefit, in convenient installments, but at least quarter-annually, unless the Settlor directs, by written instrument, that the net income earned by this Trust shall be accumulated and reinvested as part of the Trust Estate.

(b)     Principal Distributions:  In addition, the Trustee, during the lifetime of the Settlor, is hereby authorized, at any time or from time to time, and in the Trustee's absolute discretion, to: (i) pay to the Settlor for Settlor's health, education, maintenance, and support, or to apply, for any such purposes, any part, or all, of any of the assets comprising the Trust Estate; (ii) to pay to, or on behalf of, the Settlor the amount of any and all taxes, state, county, or Federal or otherwise, which are caused by the sale or possession of any of the assets comprising the Trust Estate, or which are charged against the Settlor or the Trust Estate under the laws of the State of Florida, the United States of America, or other appropriate laws, which

5

deal with the taxation of tangible or intangible property or realty which is part of the Trust Estate; and (iii) pay to, or for, any other purpose or purposes, including, but not limited to, the support of Settlor's dependents, as the Trustee deems to be in the best interests of the Settlors, adding any undistributed income to principal.

### (3)   SEPARATE BANK ACCOUNT

While the Settlor is living, the Trustee is authorized to maintain a checking and/or savings account in such bank(s) and savings and loan association(s) as the Settlor directs, and to deposit into such account(s) all net income or principal funds from the Trust Estate as may become payable to the Settlor under the terms of this Trust. The Settlor reserve the right, and are authorized at any time, to withdraw, by check or otherwise, from said bank(s) and savings and loan association(s), against Settlor's account, check(s) signed in Settlor's individual names, and every check and savings withdrawal so drawn and presented for payment shall be charged to, and paid from, the account to the extent that the funds on deposit therein are sufficient to cover the checks and withdrawals. The account shall be considered at all times as part of the Trust Estate and upon the death of the Settlor any funds remaining in that account shall be added to the principal of the Trust Estate to be held, administered, and distributed in accordance with the provisions applicable subsequent to the death of the Settlor.

## ARTICLE III

## ADMINISTRATION UPON DEATH OF SETTLOR

Upon the death of the Settlor, this Trust shall become irrevocable and the Successor Trustees shall have the following duties and shall dispose of the Trust Estate in the

6

following manner:

### (1)   COLLECTION OF PROCEEDS AND POLICIES

(a)   <u>Collect Proceeds</u>:  The Trustees shall collect the proceeds of the life insurance policies subject hereto when said proceeds, by the terms thereof, become payable to the Trustees, and shall hold such proceeds together with any additional property heretofore or hereafter added to this Trust from any source.  Such proceeds and property shall constitute part of the Trust Estate.

(b)   <u>Authority to File Suit on Behalf of Trust</u>:  The Trustees shall have full authority to take any action in regard to the collection of the proceeds of the insurance policies or to file suit for any action that the Trustees deem advisable and to pay any expense relating thereto from the Trust Estate.   However, the Trustees shall not be required to enter into, or maintain, any litigation to enforce payment of such policies until the Trustees shall have been fully indemnified, to the Trustees' satisfaction, against all expenses and liabilities to which the Trustees might in the Trustees' judgment be subjected by any such action on the Trustees' part.  The Trustees shall have full authority to make any compromise or settlement with respect to such policies, or any action, which the Trustees may deem expedient, and to give to the insurance companies, or defendants, all the necessary and proper releases, acquittances, and full discharges of all their liabilities under such policies.

(c)   <u>Discharge of Insurance Company</u>:  No insurance company whose policy or policies shall be deposited hereunder or defendant in any civil action who shall make payments of the proceeds thereof to the Trustees shall be required to inquire into, or take notice of, any of the provisions of this Trust Agreement or see to the application or disposition of the

proceeds of such policies, and the receipt of the Trustees given to any such insurance company shall be effectual to release and discharge it for any payment so made and shall be binding upon the beneficiaries of the Trusts hereby created.

### (2)   *PAYMENTS FOR THE BENEFIT OF SETTLOR'S ESTATE*

(a)   <u>Settlor's Debts and Administrative Expenses</u>:  Upon the death of the Settlor, the Trustees shall exercise one or more of the following in order to meet the debts, expenses, and taxes of the Settlor's estate:

1.   <u>Payment From Trust Estate</u>:  The Trustees shall pay from the Trust Estate any part, or all, of the claims and debts of the Settlor's estates, including, but not limited, to expenses of last illnesses, funeral expenses and marker, lawful debts, together with all estate, inheritance, succession, and other death taxes (including interest and penalties thereon, if any) and all or part of the costs of the administration of the Settlors' estates.

2.   <u>Loan to Settlor's Estate</u>:  The Trustees shall lend to the estate of the Settlor sufficient funds, upon such terms regarding security, interest rate, and maturity which the Trustees may deem advisable, to pay all, or any part of, the above claims and debts.  Such loan need not be secured if, in the Trustees' opinion, it is in the best interests of the beneficiaries of the Trust not to obtain security in light of the overall objectives and requirements of the beneficiaries, the Settlor, and the Settlor's estate.

3.   <u>Purchase From Settlor's Estate</u>: The Trustees shall acquire, by purchase, exchange, or otherwise, sufficient assets from the estate of the Settlors to provide the estate of the Settlor with sufficient cash to pay the above claims and debts, even though such property may not be of the character prescribed by law, or by the terms of the Trust Agreement,

for the investment of other trust funds.  Although acquisition of such property may result in a large percentage of the Trust Estate being invested in one class of property, the Trustees may, without liability for loss or depreciation, except for willful or gross neglect, retain such property so acquired for as long as the Trustees may deem it advisable.

(a)   <u>Cash Bequests</u>:  After providing for any of the foregoing items delineated in Paragraph (a) of Section 2 of this Article, the Trustees shall distribute to Settlor's Personal Representative, or directly to the respective beneficiary, as the Personal Representative may direct, outright and free of trust, any cash bequests the Settlor have made in Settlor's Will (or any Codicils thereto).

(b)   <u>Specific Devises</u>:  The Trustees shall also deliver to the Settlor's Personal Representative any property in the Trust which is effectively devised by the Settlor's **Wills.**

(c)   <u>Personal Representative Certification</u>:  All payment(s) made under Paragraphs (a) and/or (b) shall be made upon demand of Settlor's Personal Representatives and upon certification by such Personal Representative that the assets of Settlor's probate estates are insufficient for that purpose, but the Trust shall only be liable to the extent of that shortage.

(d)   <u>Expenses Paid By Decedents Trust</u>:  All such payment(s) made under Paragraph (a) or (b) above including any Trustees' fees incurred by reason of such payment(s) shall be charged generally against and made from the Decedents Trust.

(e)   <u>Reliance on Personal Representatives</u>:  Even though one or more of the same person(s), or the same institution(s), or both, may be acting as the Trustee and as the Settlor's Personal Representative, the Trustees are authorized to rely conclusively upon the

Personal Representative's certification of: (1) estimation of all death taxes imposed upon the Settlor's estate; (2) the amount, if any, required to satisfy any claims and debts of the Settlor's estate; and (3) the amount, if any, required to satisfy the cash bequests made by the Settlor in Settlor's Will. The Trustees shall have no duty to: (1) determine the accuracy or propriety of any amount or sum so certified; (2) see to the application of any sum paid, or other property delivered, to the Settlor's Personal Representatives; or (3) withhold distribution of any asset, except as may be limited by other sections of this Trust.

# ARTICLE IV

# DISTRIBUTION UPON DEATH OF SETTLOR

Upon the death of the Settlor the Trustees shall place the balance of the trust estate shall be distributed as follows:

(a)     Creation of Separate Shares:  Upon the death of the Settlor, (the division date), the Trustees shall divide the total Trust Estate into percentages of the total Trust Estate as follows:

1.  HARRIET BRANNAN shall have a share of the estate which equals twenty percent (20%) of the total Trust Estate.  If she is deceased at the time of distribution, her share shall be divided into equal shares and distributed to her descendants, per stirpes, subject to postponement of possession as provided in Paragraph (c) of this Section.

2.  EDWARD SCHMETZER shall have a share of the estate which equals twenty percent (20%) of the total Trust Estate.  If he is deceased at the time of distribution, his share shall be divided into equal shares and distributed to his descendants, per

stirpes, subject to postponement of possession as provided in Paragraph (c) of this Section.

3. JEFFERY SCHMETZER shall have a share of the estate which equals twenty percent (20%) of the total Trust Estate. If he is deceased at the time of distribution, his share shall be divided into equal shares and distributed to his descendants, per stirpes, subject to postponement of possession as provided in Paragraph (c) of this Section.

4. WILLIAM SCHMETZER and JANE SCHMETZER (Sister-in-Law) shall have a share of the estate which equals twenty percent (20%) of the total Trust Estate. If they are deceased at the time of distribution, their share shall be divided into equal shares and distributed to their descendants, per stirpes, subject to postponement of possession as provided in Paragraph (c) of this Section.

5. RANDY BODZIAK shall have a conditional share of the estate which equals twenty percent (20%) of the total Trust Estate. This bequest is conditional in that the natural parents of RANDY BODZIAK, who have abandoned their child, shall have no right or control over this bequest. If this is not possible, this bequest is to be distributed to the beneficiaries designated from numbers 1 to 4 above of this section.

Each Share created for a beneficiary shall be administered as a separate Share under (b) of this Section.

(b)    Administration of Share for Each Child:  Commencing on the division date and continuing until distribution of the Trust Estate which occurs under Subparagraphs 1, 2, 3, and 4 of this Paragraph, the Share for each child shall be administered as provided below.

1.    Discretionary Distribution of Income:  The Trustees shall

11

distribute to the child, from time to time, as much income of the Trust as the Trustees believe desirable for the health, education, maintenance, and support of the child. Any undistributed income shall be added to the Share for such child.

    2.    Discretionary Distribution of Principal: The Trustees shall distribute, from time to time, to any one or more of the children and his or her descendants, as much of the principal of the Share, even to the extent of exhausting the principal, as the Trustees, from time to time, believe desirable: (i) for the health, education, maintenance, and support of the child and his or her descendants; (ii) to permit the child to enter into, or engage in, a business or profession in which the Trustees believe the beneficiary has reasonable prospects for success; and (iii) to permit the child to make a reasonable down-payment on a personal residence, in each case considering all circumstances and factors deemed pertinent by the Trustees. The Settlor's primary concern during the life of the child is for the health, education, maintenance, and support of the child and his or her descendants, rather than for the preservation of the principal of the Share for ultimate distribution. The Trustees may make unequal distributions to the descendants of the child or may exclude one or more of them, and the Trustees shall have no duty to equalize those distributions.

    3.    Distribution of Remaining Principal: At the division date, one-half (1/2) of the then principal of his or her separate Share shall be distributed to him or her when the child reaches the age of twenty-five (25) only if such child shall give written notice to the Trustee requesting such principal; and at age thirty (30) his or her separate Share shall terminate, and the then principal and accumulated income, if any, shall be delivered over to him or her free of trust only if such child shall give written notice to the Trustee requesting such

distribution.

If the child does not give written notice withdrawing such remaining principal and interest then it shall remain in trust until the death of such beneficiary.

4.   Death of a Child:  If a child should die prior to the complete distribution of the principal of the Share under Subparagraphs 2 and 3 of this Paragraph, then the Trustees, as soon as practical after the death of the child, shall distribute the remaining principal of the Share, to the descendants of the child living on the date of distribution, per stirpes, or, if none, to Settlor's descendants living on the date of distribution, per stirpes. Distributions under this provision may be subject to postponement of possession as provided in Paragraph (c) of this Section.

(c)   Continuing Share for Younger Beneficiaries:  Despite any of the above provisions of this Section:

1.   Property which is otherwise distributable to a beneficiary for whom a Share is then held hereunder shall be added to that Share; and

2.   The Trustees may elect to withhold any property otherwise distributable under said provisions to any beneficiary who has not yet attained the age of twenty-five (25) years, and the Trustees may retain the property for that beneficiary in a separate Share for that beneficiary in which his or her interest is indefeasibly vested.  One-third (1/3) to be distributed to that beneficiary when he or she reaches the age of twenty-five (25) years if the Trustee is given written notification, or before then, if the Trustees so elect. One-half (1/2) of the then remaining principal is to be distributed when the beneficiary reaches the age of thirty (30) years if the beneficiary gives the Trustee written notification.  When the beneficiary reaches

13

the age of thirty-five (35) years, his or her separate Share shall terminate, and the remaining Trust principal shall be delivered over to him or her free of Trust.  The Trustees shall apply as much of the net income and principal of the Share so retained as the Trustees deem necessary or advisable for the health, education, and support in reasonable comfort of the beneficiary, considering all circumstances and factors deemed pertinent by the Trustees.  Any undistributed net income shall be accumulated and added to principal of the Share for such beneficiary.  If, at the time a separate Share is to be set apart for him or her under Paragraph (c) of this Section, a then living child of the Settlor has attained an age at which he or she would have been entitled to one or more distributions of principal under this Subparagraph, if such separate Share had then been set apart for him or her, the Trustees shall immediately give the child the ability to withdraw the portion or portions of his or her Share to which he or she would have been so entitled upon written request.

   (d)  <u>No Descendants</u>:  In the event that none of Settlors' descendants are surviving at the time the entire Trust Estate is to vest, then, upon the death of the Settlors' last descendant, the then remaining Trust Estate shall be distributed to Settlors' heirs at law under the laws of the State of Florida, the identity of such heirs to be determined as though the Settlors had died upon the death of the Settlor's last descendant.

# ARTICLE V

# SETTLOR'S INVESTMENT RIGHTS

   The Settlor does not reserve the right specifically to approve or disapprove of each and every Trust investment, purchase, or sale before it is made.  However, the Settlor does

reserve the right to elect, at any time, to advise the Trustee and to direct the Trustee concerning the purchase or sale of any investments. Should the Settlor elect to exercise Settlor's rights to advise or direct the Trustee to purchase or to sell any investment, Settlor shall do so in writing. If that is not practical, Settlor shall, as soon thereafter as it is practical, approve of such purchase or sale in writing, as requested or required by the Trustee. The Trustee is hereby specifically relieved of all liability for loss which may be occasioned by the purchase or sale of any asset of the Trust Estate when the Trustee has been directed or advised to make such purchase or sale by the Settlor, excepting any willful default or gross neglect by the Trustee. However, this Section shall not apply after the death of the Settlor, nor during such time as the Settlor is deemed incompetent or disabled under the terms of this Trust Agreement.

## ARTICLE VI

## DISABILITY OR INCOMPETENCY

During the Settlor's disability or incompetency as defined in this Article, the Settlor is relieved of all powers heretofore reserved by the Settlor in the Settlor's individual or fiduciary capacity. Such powers shall cease and terminate, and the Successor Trustees shall continue to have those powers with respect to the Trust Estate given in this Trust Agreement. Also, during the Settlor's disability or incompetency, and during the Settlor's lifetime, the Trustees may, in addition to the payments of income and principal for the benefit of the Settlor, pay to or apply for the benefit of Settlor's children, such sums from the net income and from the principal of this Trust, in such shares and proportions as in the Trustees' sole discretion, the Trustees shall determine to be necessary or advisable from time to time, for the health,

education, maintenance and support of Settlor's children, taking into consideration, to the extent that Trustees deem advisable, any other income or resources of Settlor's children.

### (1)   DEFINITION OF DISABILITY

Disability shall mean any time during the Settlor's lifetime, that any Trustee hereunder receives a notice in writing signed by (a) either one or both of the Settlors' physicians and (b) either spouse or another member of the Settlor's immediate family, indicating that the Settlor is too disabled to continue his involvement in this Trust, except as beneficiary hereunder.

### (2)   DEFINITION OF INCOMPETENCY

Incompetency shall mean any period of time in which any Trustee hereunder is in possession of any of the following: (a) a court order, which such Trustee deems jurisdictionally proper and still currently applicable, holding either one or both of the Settlors to be legally incompetent to act in Settlor's own behalf or appointing a guardian of Settlor's person and/or property to act for the Settlor; or (b) duly executed, witnessed and acknowledged written certificates of two board certified physicians who hold M.D. degrees or their equivalent, each certifying that such physician has examined the Settlor and has concluded that, by reason of accident, physical or mental illness, progressive or intermittent physical or mental deterioration, or other similar cause, the Settlor has, at the date of the written certificate, become incompetent to act rationally and prudently in Settlor's own best interests; or (c) evidence, which such Trustees deem to be credible and still currently applicable, that the Settlor has disappeared, is unaccountably absent, or is being detained under duress where the Settlor is unable, effectively and prudently, to look after Settlor's own financial best interests.

16

# ARTICLE VII

# PRESUMPTION OF SURVIVORSHIP

If any beneficiary other than the Settlor shall die simultaneously with the Settlor, or in such circumstances that there is not sufficient evidence to determine the order of their deaths, the Settlor shall be deemed to have survived such beneficiary, and the provisions of this Trust shall be construed on that assumption, unless otherwise provided herein. If any beneficiary shall die simultaneously with another beneficiary, or in such circumstances that there is not sufficient evidence to determine the order of their deaths, and if the rights of one of them depends upon his or her having survived the other, the beneficiary whose rights depend upon such survivorship shall be deemed to have predeceased the other beneficiary, and the provisions hereof shall be construed upon that assumption.

# ARTICLE VIII

# ADMINISTRATIVE PROVISIONS

The following provisions shall apply to the Trust Estate created hereunder, and to each Trust or Trust Share thereof:

### (1)   *DISABILITY OF BENEFICIARY*

In the event the income, or any discretionary payment of principal from the Trust Estate, or any Trust Share, becomes payable to a minor or to a person under legal disability, or to a person not adjudicated incompetent, but who, by reason of illness, or mental or physical disability, is, in the opinion of the Trustees, unable to administer properly such amount, then such amounts shall be paid out by the Trustees in such of the following ways as

17

the Trustees deem proper: (i) directly to such beneficiary; (ii) to the legally appointed guardian or conservator of such beneficiary; (iii) to some relative or friend for the health, education, maintenance, and support of such beneficiary; to the custodian of such beneficiary, including a custodian for such beneficiary under the Florida Uniform Transfers to Minor Act, with the power to select any person or entity to act as such custodian (who may be the personal representative of the Settlor's estate or the Trustee acting or appointed hereunder); (iv) or (v) by the Trustees, using such amounts directly for such beneficiary's health, education, maintenance, and support.  The Trustee shall have no obligation to see to the use or application of any such amount so paid or applied and the receipt of the person to whom any such payment or distribution is so made shall be a sufficient discharge therefore even though a Trustee hereunder maybe such person.

*(2)*     ***SPENDTHRIFT PROVISION***

The interest of each beneficiary in the income or the principal of any of the separate Trusts or Shares in trust, or any part thereof, shall be free from control or interference of any creditor of a beneficiary or of any spouse of a married beneficiary and shall not be subject to the claims for alimony or support and shall not be subject to the claims of creditors of any beneficiary, or to judgment, levy, execution, attachment, bankruptcy proceedings, or other legal or equitable process, or susceptible to anticipation or alienation, and each beneficiary shall be without the power, voluntarily or involuntarily, to sell, mortgage, pledge, or hypothecate any interest in or the income from such Trusts or Shares in trust.   No such income or principal, or any part thereof, shall in any way be liable to any claim of any creditor for any such beneficiary, except in those cases where the Trustees, in the Trustees' sole

18

and absolute discretion, approve the credit extended and the assignment of the beneficiary's interest hereunder as collateral therefor.   In exercising such discretion, the Trustees shall ascertain whether it would be in the best interest of the beneficiary that credit be accepted and collateral given.   Nothing contained in this section shall be construed, however, as restricting in any way the exercise of any power of appointment granted hereunder, or the right of Settlor's spouse to the income from any Trust qualifying for the Marital Deduction.

**(3)   *GIFTS DURING LIFETIME***

Any gifts of real or personal property, tangible or intangible, which the Settlor may, during Settlor's lifetime, make to any person, before or after the execution of this Trust, shall not be deemed to be an advancement or satisfaction to be applied to any Share of any beneficiary of this Trust and shall not be taken into account in connection with this Trust Estate.

**(4)   *PROTECTION AGAINST PERPETUITIES***

No Trust or Share herein created, or attempted to be created, shall fail, in whole or in part, by reason of the rule against perpetuities, to which end:

(a) <u>Powers and Contingencies Terminate</u>:  Each and every power granted herein is severable from the other, and all powers granted to each Trust or Share, are severable powers granted as to any other Trust or Share.   No valid Trust or Share shall fail by reason of its relationship to an invalid contingency; and into each invalid provision that in any event title to such Trust or Share portion shall vest within twenty-one (21) years after the death of last to die of the Settlor's issue living at the death of the Settlor.

(b)   <u>Trusts Terminate</u>:  Unless sooner terminated as herein provided,

19

each Trust or Share for a beneficiary hereunder shall terminate twenty-one (21) years after the death of the last to die of the Settlor's issue living at the death of the Settlor. Thereupon the principal of the Trust or Trust Share and any undistributed net income shall be distributed to the beneficiary free of Trust.

### (5)   MINIMUM TRUST FUND

Notwithstanding anything to the contrary herein contained in this Agreement, if the value of a Trust or Share created hereunder is less than Twenty-five Thousand ($25,000.00) Dollars on: (a) the date as of which it shall have become fully funded; or (b) on any subsequent date as of which it shall be valued, the Trustees may, in the Trustees' sole and absolute discretion,  transfer, convey, and pay over such Trust or Share to the then current income beneficiary(s) of such Trust or Share.

### (6)   ACCRUED INCOME

Any income accrued or undistributed at the termination of any estate or interest under this Trust or any Share thereof, shall be paid by the Trustees as income to the persons entitled to the next successive interest in the proportions in which they take such interest.

### (7)   TAX EQUALIZATION

The Trustees are authorized to equalize the tax treatment given each child or beneficiary due to this Trust being potentially complex in nature and subject to the throwback rules of the Internal Revenue Code of 1986, as amended.  Such equalization of tax treatment shall be in the sole and absolute discretion of the Trustees and the Trustees' decision shall be final.

# ARTICLE IX

## APPOINTMENT OF TRUSTEES

### (1)   APPOINTMENT

(a)   <u>Named Trustees</u>:  Settlor hereby nominates and appoints MARY JANE KERSTON as Trustee, of this Trust.  The Settlor appoints HARRIET BRANNAN as Successor Trustee(s).  In the event HARRIET BRANNAN cannot continue to serve as Successor TRUSTEE, the Second Successor TRUSTEE shall be JANE SCHMETZER.

(b)   <u>Resignation</u>:  Any Trustee or Successor Trustee may resign by instrument in writing.

(c)   <u>Successor Trustee Powers</u>:  Any Successor Trustee shall have all the rights, powers, duties and discretions conferred or imposed on the original Trustee.  No Successor Trustee shall be obliged to examine the accounts and actions of any previous Trustee. No Trustee shall be liable for any act or omission unless the same be due to such Trustee's own fault.  In no event shall a Corporate Trustee be a corporation owned or controlled by any beneficiary hereof. Any Successor Trustee shall become responsible for the applicable Trust Estate only when the same shall be received by said Trustee, and, in determining such estate, such Trustee shall only be responsible to make a reasonable inquiry from the records which are available of the prior Trustee.  In the event two or more Trustees share power, a majority vote will rule. In the event of a deadlock, the Trustees may appoint a third party arbiter whose decision shall be binding.

(d)   <u>Trustee Appointment</u>:  If any Successor Trustee fails to serve or if any Trustee or Successor Trustee resigns, the then current income beneficiary, or

21

beneficiaries, who are of legal age and the guardians of any current income beneficiary, or beneficiaries, where the beneficiary was deemed incompetent or a minor shall appoint a Successor Trustee.  In the event the current income beneficiary, or beneficiaries, shall fail to designate promptly a Successor Trustee, the then acting Trustees shall apply to a court of competent jurisdiction for such an appointment and for a settlement of account.

### (2)    BOND

To the extent that any such requirement can be legally waived, no Trustee shall ever be required to give bond, to qualify, or to make an accounting to any court, or courts under the provisions of any existing or future statutes of the State of Florida in Chapter 737 of the Florida Statutes, or any other state or territory, or to obtain the order or approval of any court in the exercise of any power or discretion herein given.

### (3)    COMPENSATION AND ACCOUNTING

(a)    Compensation:  Any Corporate Trustee may retain without judicial authorization the fees provided in its generally published schedule of rates in effect at the time such fee is payable.  Any individual Trustee shall be entitled to the fee which would be allowed to him or her by the laws and practices of the State of Florida.

(b)    Accounting:  The Trustees shall render, upon written request, to any beneficiary or beneficiaries who are eligible to receive current income from the Trust, annual statements of account of receipts and disbursements.

*****

22

# ARTICLE X

# POWERS AND DUTIES OF TRUSTEES

### (1)     INVESTMENTS

(a)     Investment Powers and Duties:   The Trustees of each Trust or Share established hereunder, including any Successor Trustees, shall have continuing, absolute, and discretionary powers to deal with any property, real or personal, held in such Trust(s) or Share(s).  Such power may be exercised independently and without the prior, or subsequent, approval of any court or judicial authority, and no person dealing with such Trustees shall be required to inquire into the propriety of any of the actions of such Trustees.  The Trustees shall not be limited as to the type and character of investments in which the Trustees may invest the funds of this Trust, so long as the Trustees use reasonable prudence and judgment in the selection of the investments.  The Trustees shall have the following general powers in addition to, and not by way of limitation of, the powers provided by law:

1.     To retain such property for any period, whether or not the same be of the character permissible for investments by fiduciaries under any applicable law, without regard to any effect said retention may have upon the diversification of the investments.

2.     To sell, transfer, exchange, convert, or otherwise dispose of, or grant options with respect to, any security or property, real or personal, held as part of the Trust Estate, at public or private sale, with or without security, and in such manner, at such time, for such purposes, for such prices and upon such terms, credits, and conditions as the Trustees may deem advisable.

3.     To invest and reinvest in common trust funds, common

23

stocks, preferred stocks, bonds, options, securities, mutual funds, money market funds, or other liquid asset funds, maintained by brokerage houses and other financial institutions, and other property, real or personal, foreign or domestic, whether or not such investments be of the character permissible by fiduciaries under any applicable law, without regard to the effect any such investment or reinvestment may have upon the diversity of the investments. This includes, but is not limited to, short sales, buying on margin, maintaining margin accounts, pledging any securities as security for and advances made to the Trustees and purchasing policies of life insurance of any kind on the life of any individual including, but not limited to, the Settlor and the Beneficiary(s), who the Trustee(s) in his or her sole discretion wants to insure.

4.     To render liquid the Trust Estate or any Trust or Share created hereunder, in whole or in part, at anytime, and to hold cash or readily marketable securities, of little or no yield, for such period as the Trustees may deem advisable.

5.     To lease any such property beyond the period fixed by statute for leases made by a Trustee, and beyond the duration of the Trust Estate or any Trust or Share created hereunder.

6.     To join in, become a part of, or oppose any reorganization, readjustment, recapitalization, foreclosure, merger, voting trust, dissolution, consolidation, or exchange; to deposit any securities with any committee, depository, or Trustee; to pay any and all fees, expenses, and assessments incurred in connection therewith, and to charge the same to principal; to exercise conversion, subscription, or other rights; to make any necessary payments in connection therewith; and to sell any such privileges.

7.     To vote in person at meetings of stock or security holders,

or any adjournment of such meetings, or to vote by general or limited proxy with respect to any such shares of stock or other securities held by the Trustees.

8.   To hold securities in the name of a nominee without indicating the trust character of such holding, whether unregistered or in such form as will pass by delivery.

9.   To pay, compromise, compound, adjust, submit to arbitration, sell, or release any claims or demands of the Trust Estate, or any Trust or Share created hereunder, against others, or of others against the same, as the Trustees may deem advisable, including the acceptance of deeds of real property in satisfaction of bonds and mortgages, and to make any payments in connection therewith which the Trustees may deem advisable.

10.   To borrow money for any purpose, from any source, including the Trustees, or any other fiduciary at any time acting hereunder, and to secure the repayment of any and all amounts so borrowed by mortgage or pledge of any property.

11.   To possess, manage, insure against loss by fire or other casualties, develop, subdivide, control, partition, mortgage, lease, or otherwise deal with any and all real property; to satisfy, discharge, or extend the term of any mortgage thereon; to execute the necessary instruments and covenants to effectuate the foregoing powers, including the giving or granting of options in connection therewith; to make improvements, structural or otherwise, or to abandon the same if deemed to be worthless or not of sufficient value to warrant keeping or protecting; to abstain from the payment of taxes, water, rents, assessments, repairs, maintenance and upkeep of the same; to permit to be lost by tax sale or other proceeding; to

convey the same for a nominal consideration without any consideration; to set up appropriate reserves out of income for repairs, modernization, and upkeep of buildings, including reserves for depreciation and obsolescence, and to add such reserves to principal, and, if the income from the property itself should not suffice for such purposes, to advance out of other income any sums needed therefor, and, except in the case of a Trust for which the Marital Deduction is allowable in determining the Federal estate tax payable by Settlor's estate, to advance any income of the Trust for the amortization of any mortgage on property held in the Trust.

12.   To make distribution of the Trust Estate, or of the principal of any Trust or Share created hereunder, in kind, and to cause any Share to be composed of cash, property or undivided fractional shares in property, different in kind from any other Share.

13.   To execute and deliver any and all instruments in writing which are deemed advisable to carry out any of the foregoing powers.  No party to any such instrument in writing signed by the Trustees shall be obliged to inquire into its validity.

14.   To invest any part or all of the principal of the Trust Estate in any common trust fund, legal or discretionary, which may be established and operated by and under the control of the Trustees.

15.   Except as otherwise provided herein, all receipts of money or property paid or delivered to the Trustee and all expenses shall be allocated to principal or income in accordance with the laws of the State of Florida; provided, however, that with regard to any item not governed by such laws the Trustee shall have the discretion to determine whether items should be charged or credited to income or principal or allocated between income or principal as the Trustee may deem equitable and just under the circumstances.

16.   To employ such accountants, custodians, experts, counsel (legal and/or investment), and other agents as the Trustee shall deem advisable and to delegate discretionary powers to and to rely upon information or advice furnished by them.

The Trustee is authorized to employ the firm in which the Trustee is a partner or shareholder to perform any necessary legal and tax services which are not a normal function of a trustee, and the Trustee is authorized to pay as an expense of administration a normal and reasonable fee for such service.

17.   If at the time of Settlor's death, Settlor holds any interest or interests in oil, gas or mineral property or ventures either in any partnership or otherwise, Settlor authorizes but does not direct the Trustees to continue Settlor's interest therein, to enter into any agreements pertinent thereto and to make any contributions or expenditures necessary to continue such interests.  The Trustees shall not be liable for any loss sustained by Settlors' estates or any Trust established hereunder by reason of the retention of any interest which Settlor may have at the time of Settlor's death in any oil, gas or mineral properties or leases or any other interest in any oil, gas or mineral producing properties, or for making any agreements pertinent thereto or for making additional contributions or capital in connection therewith.

Settlor authorizes Trustees to drill, test, explore, mine, develop and other wise exploit any and all rights and interests of whatever kind or nature owned by the Settlors at the time of Settlor's death or at any time constituting part of the estate or held in any Trust hereunder in any oil, natural gas, mineral or other natural resources, whether held alone or jointly with others and in connection therewith to make oil, gas and mineral leases or subleases, to pay all delay rentals, lease bonuses, royalties, overriding royalties, taxes, assessments and

27

other charges; to sell, lease, exchange, mortgage, pledge or otherwise hypothecate any or all of such rights and interests, to surrender or abandon, with or without consideration, any or all such rights and interests and to enter into farmout, pooling or unitization agreements in connection therewith; to produce, process, sell or exchange all production from such rights and interests and to enter into contracts and agreements for or in respect of the installation or operation of absorption, reprocessing or other processing plants; to employ any business form in the exploitation of such rights and interests, including, but not by way of limitation, corporations, partnerships, limited partnerships, mining partnerships, joint ventures, co-tenancies or otherwise; to employ personnel, rent office space, buy or lease office equipment, contract and pay for geological surveys and studies, procure appraisals; to borrow money to finance any and all of the foregoing activities and in connection therewith to execute promissory notes or other obligations and to pledge or mortgage any such rights or interests as security therefor; all in such manner and to such extent as the Trustees holding such rights and interests deem advisable.

(b)  <u>Administration of Shares</u>:  Notwithstanding anything herein to the contrary, the Trustees shall administer any and all Trusts and Shares created herein as separate and distinct, but commonly administered, shares.

(c)  <u>Disposition of Business Interests</u>: If at any time the Settlors are the owner of any business, whether as sole proprietors or holders of majority interests in a partnership or holders of a majority of the outstanding stock of a corporation, including stock of a professional corporation, the Trustees shall complete the terms of any Agreement that may be in existence concerning the sale or disposition of any such business.  In the event there is no such Agreement, the Trustees may continue such business (provided such is not contrary to law),

28

so long as the Trustees shall deem it in the best interests of the beneficiaries and to exercise all powers with respect to such business which the Settlor could have exercised as owners. This shall include, not by way of limitation, the power to sell or liquidate said business at such price and upon such terms as the Trustees shall consider proper; the power to make or change officers, directors or employees; and, the power to expand, limit, alter, incorporate, merge, or reconstitute such business in any way which the Trustees deem advisable. In the absence of actual notice to the contrary, the Trustees may accept, as correct, financial or other statements rendered by the managers of the business from time to time as to its conditions and operations. If such business is retained or continued by the Trustees, the Trustees shall receive such compensation in addition to that which the Trustees would otherwise be entitled as Trustees, if any, as will reasonably compensate the Trustees for the Trustees' additional services in the management and operation of such business, and the Trustees shall in no way be liable for any loss resulting from such retention or continuance or from the operation of such business, the acts of such business, or the acts of the officers and directors of such business, except where such loss is a result of the Trustees' misconduct or gross negligence.

(d) <u>Co-Trustee Provisions</u>: While two or more Trustees are acting, the following provisions shall apply where the context permits:

1. <u>Custody of Assets</u>: One Trustee may have custody of the Trust Estate and of the books and records of the Trustees;

2. <u>Power to Buy and Sell Assets</u>: One Trustee shall have the power to sell or purchase any trust asset on his or her sole authority with the written approval of the other Trustee(s);

29

3.      <u>Delegation of Joint Powers</u>:  With respect to any matter as to which the Trustees have joint powers, a Trustee from time to time may delegate any or all of the Trustee's rights, powers, duties, and discretion as Trustee to the other Trustee(s), with the consent of the latter.

4.      <u>Sole Signature on Checks</u>:  The Trustees may establish bank accounts and may authorize that checks or drafts may be drawn on, or withdrawal made from, any such account on the individual signature of any Trustee.

(e)  <u>Tax Returns</u>:  The Trustees shall furnish to the Settlor's Personal Representatives such information with respect to the Trust and the value of the assets as such Personal Representatives may from time to time request for purposes of preparing all income and estate tax returns, and such other information as may be required or requested during the audit process relating to such returns.  The Trustees shall adjust their records to reflect the tax basis of each of the trust assets as may be finally determined in the Federal estate tax proceedings with respect to the Settlor's estate.

## ARTICLE XI

## MERGER OF TRUSTS

If at any time the Trustees are Trustees of two or more Trusts, with substantially the same terms and benefiting the same beneficiaries, created hereunder, or under any other instrument by the Settlor or by any other person, the Trustees may commingle the assets of such Trusts and hold them as a single Trust.

30

# ARTICLE XII

# RULES OF INTERPRETATION

### (1)  *HEADINGS*

The headings, titles, and subtitles in this Trust Agreement have been inserted solely for convenient reference and shall be ignored in its construction.

### (2)  *MISCELLANEOUS*

Whenever the context so requires, the masculine shall include the feminine and neuter, the feminine shall include the masculine and neuter, the singular shall include the plural, and the plural shall include the singular. If any portion of this Trust Agreement is held to be void or unenforceable, the balance of this Trust Agreement shall nevertheless be carried into effect.

# ARTICLE XIII

# SUBCHAPTER "S" ELECTION

### (1)  *ELECTION*

If at the time of Settlor's death, the Settlor holds any stock in a corporation that has continued its election to be taxed under Sections 1361 and 1368 of the Internal Revenue Code of 1986, as amended, then Settlor's Trustees may, in the Trustees' sole discretion, within sixty (60) days of the date of Settlor's deaths, affirmatively refuse to consent to the continuation of such election, and the determination of Settlor's Trustees shall be binding on all persons having any interest under this Trust.

31

(2)    *TRUSTEES' DISCRETION*

The Trustees are authorized, in the Trustees' sole discretion, to cause any corporation whose shares are being held as an asset of the Trust Estate to be taxed pursuant to the provisions of Sections 1361 and 1368 of the Internal Revenue Code of 1986, as amended.

# ARTICLE XIV

# INDEMNIFICATION

No Personal Liability of Trustees.   With regard to any contract, agreement, undertaking, covenant or representation, entered into or made by, or on behalf of, the Trustees for the benefit of the Trust, any right, liability or obligation created by virtue of such contract, agreement, undertaking, covenant or representation shall be solely the right, liability and obligation of the Trust, and shall not be the personal right, liability or obligation of the Trustees, and, accordingly, no such liability or obligation shall at any time be asserted or enforceable against the Trustees personally, but only against the assets of the Trust.

Reimbursement for Tax Payments.  If the Trustees shall be compelled at any time during the existence of the Trust, or at any time thereafter, to pay any tax or penalty with respect to the Trust for any reason, the Trustees shall be entitled to be reimbursed from the property of the Trust, or to the extent that the property of the Trust shall then be insufficient, or if the Trust shall be terminated, the Trustees shall be reimbursed by the person or persons to whom any property of the Trust shall have been distributed to the extent of the amount received by each such person.  The Trustees, before making any distribution of either income or principal from the Trust, may accordingly require an undertaking by said person or persons

32

in form satisfactory to the Trustees to reimburse the Trustees for all such taxes and penalties, or the Trustees may withhold distribution of a reasonable amount required to meet any taxes, interest and penalties thereon pending release of any tax lien or the final determination of any tax controversy.

Trustees Liability.  The Trustees shall not be liable for any loss of the Trust Estate occasioned by acts in good faith in the administration of the Trust (including acts in reliance upon an opinion or counsel) and in any event the Trustees shall be liable only for willful wrongdoing, or gross negligence, but not for honest errors of judgment.

The Trust shall reimburse the Trustees for all expenses incurred by them in connection with their duties hereunder and shall indemnify the Trustees and hold them harmless from and against any and all liabilities, costs and expenses, including counsel fees, for anything done or omitted by them in the performance of their obligations under this Agreement, except as a result of the Trustees' own gross negligence or willful wrongdoing.

# ARTICLE XVI

# ARBITRATION

All claims, disputes and other matters in question between the parties included in this Trust shall be decided by arbitration in accordance with the rules of the American Arbitration Association, unless the parties mutually agree otherwise.  The parties to such arbitration proceedings shall be allowed disclosure privileges normally associated with disputes brought before State courts for resolution, with the exception that written interrogatories (in excess of five (5) double-spaced pages), bills of particulars and depositions upon written

33

questions shall not be used.  Toward the goal of swift determination of issues raised in the arbitration, the parties must agree in writing to conduct any needed discovery in an expeditious and uninterrupted manner and, if requested by either party, to jointly request that the panel set an expedited schedule for discovery.  Toward the goal of full disclosure the parties must, as a basis of resolution, agree (a) to use their best efforts to persuade non-party witnesses to appear voluntarily at a deposition; (b) to provide requested information promptly and completely; and (c) to apply jointly to any court with jurisdiction for judicial orders, or subpoenas for depositions of any witness no matter where located.  Subject to the availability of witnesses, the parties shall rotate taking depositions.

The award rendered by the arbitrators shall be final and judgment may be entered upon it in accordance with the applicable law in any court having jurisdiction thereof.

# ARTICLE XVII

# ALTERNATE VALUATION ELECTION

The Trustees may elect to value the assets in the gross estate at date of death or as follows: (1) In the case of property distributed, sold, exchanged, or otherwise disposed of, within six (6) months after the decedent's death such property shall be valued as of the date of distribution, sale, exchange or other disposition (2) In case of property not distributed, sold, exchanged, or otherwise disposed of, such property shall be valued as of the date six (6) months after the decedent's death.

*****

34

## ARTICLE XVIII

## ACCEPTANCE BY TRUSTEE

The Trustee acknowledges receipt of the property set forth on the attached Schedule A, accepts the Trust hereby created, and covenants that he will faithfully discharge all duty of his office as Trustee.

**IN WITNESS WHEREOF**, MARY JANE KERSTON has signed and sealed this Trust Agreement, consisting of thirty-eight (38) typewritten pages, including the next three pages, has acknowledged and declared it to be Settlor's Trust, and MARY JANE KERSTON has accepted the Trusts imposed thereunder upon the terms and conditions contained therein, on the _28_ day of _March_, 1995.

Witnesses as to Settlor:

_____   _____
                                   MARY JANE KERSTON, Settlor
_____

Witnesses as to Trustee:

_____   _____
                                   MARY JANE KERSTON, Trustee
_____

\* \* \* \* \*

35

We certify that the above instrument was on the date thereof signed, sealed, acknowledged and declared by MARY JANE KERSTON, the Settlor, as Settlor's Trust in our presence, and that we, at the Settlor's request and in Settlor's presence and in the presence of each other, have signed our names as witnesses thereto, believing MARY JANE KERSTON to be of sound mind and memory at the time of signing.

_____    _____    _____
Witness as to Settlor                   City                             State

_____    _____    _____
Witness as to Settlor                   City                             State

*******

36

STATE OF FLORIDA                )
                                )ss:
COUNTY OF BROWARD                )

We, MARY JANE KERSTON, _Andrew Rosenberg_ ,

and _Brenda A. Bullock_ , the Testator and the witnesses, respectively,

whose names are signed to the attached or foregoing instrument, having been sworn, declared

to the undersigned officer that the Settlor in the presence of witnesses, signed the instrument as

Settlor's Revocable Trust, that the Settlor signed, and that each of the witnesses, in the presence

of the Settlor and in the presence of each other, signed the Revocable Trust as a witness.

_Mary Jane Kerston_
MARY JANE KERSTON, Settlor

_Andrew Rosenberg_
Witness

_Andrew Rosenberg_
Print Name

_Brenda A. Bullock_
Witness

_Brenda A. Bulbock_
Print Name


SUBSCRIBED AND SWORN to before me by MARY JANE KERSTON, the

Settlor, and by _Andrew Rosenberg_ and _Brenda A. Bullock_ ,

the witnesses, on this _28_ day of _March_ , 1995.

_Gregory Ebenfeld_
Notary Public
Commission Expires:



GREGORY EBENFELD
My Commission CC294800
Expires Jun. 15, 1997
Bonded by HAI
800-422-1555

37

# APPOINTMENT AND ACCEPTANCE OF SUCCESSOR TRUSTEE(S)

I, the undersigned, hereby accept the appointment and duties which are required of me as the Successor Trustee under the unrecorded Revocable Living Trust Agreement, and such additional duties, if any, that are ordered by any court of competent jurisdiction.

## AS SUCCESSOR TRUSTEE, I WILL:

1. Locate all important papers of the Settlor and read them.

2. Make an inventory of the real and personal estate of the Settlor within three months after my appointment.

3. Preserve and follow the direction of all estate planning documents, including the Revocable Living Trust and any accompanying documents, as directed by said documents.

4. Obey all orders and judgments of any court of competent jurisdiction.

5. Notify all beneficiaries of the Trust of my appointment.

6. Deposit or distribute funds which come into my hands in a lawful depository located within this state, or to the Beneficiaries as designated in this Trust.

7. Invest funds, if appropriate, in a lawful manner.

8. Make and file an account of the estate annually, until the Trust is terminated.

I acknowledge that I am subject to removal as Trustee if I fail to perform such duties. I also acknowledge that I am subject to possible penalties for improper conversion of the property which I hold as Trustee.

Aug. 16, 1995
Date Signed

Harriet L. Brannen
Signature of Successor Trustee

COMMONWEALTH OF
State of PENNSYLVANIA )
                      )    ss.
County of ALLEGHENY   )

On the date below, the above-named fiduciary, personally known to me or proven to me on the basis of satisfactory evidence to be the person whose name is subscribed to this instrument, personally appeared before me, a NOTARY PUBLIC, and acknowledged executing this instrument.

Nancy L. Travisano
Notary Public
Date: August 16, 1995
My commission expires: 4-28-97

NOTARIAL SEAL
NANCY L. TRAVISANO, Notary Public
Pittsburgh, Allegheny County
My Commission Expires Apr. 28, 1997