Exhibit C

# XARELTO SETTLEMENT PROGRAM
MDL 2592



## ENROLLMENT ELECTION FORM

I have been informed by my Counsel of the terms of the Xarelto Products Liability Settlement Agreement (the "Agreement") and the Xarelto Settlement Program Protocol (the "Program"). I understand that I may be eligible to participate in the Program to resolve any and all claims I may possess against the manufacturers of Xarelto (the "Defendants"). I understand that under the terms of the Program my claim will be reviewed by the Claim Administrator, utilizing objective criteria issued by the Special Master in consultation with the Plaintiffs' Counsel Leadership. I understand that my final base award points will be based upon the Claim Administrator's review of the facts of my claim in light of those objective criteria and that the value of my base award points will be determined once all claims enrolling in the Program are reviewed by the Claims Administrator. If the submitted facts of my claim do not support an award of a monetary amount, I will not receive a monetary amount. I understand I have the right to appeal the Claim Administrator's final allocation of my base claim to the Special Master whose decision on allocation will be final. The deadline to enroll in the Program and submit the required information is **August 5, 2019,** unless otherwise extended by thirty (30) days by agreement of Defendants and the Xarelto Plaintiffs' Counsel Leadership.

I further understand that if I enroll in the Program, that I am agreeing:

1. To be bound by the terms of the Agreement (including Exhibits), the Program protocol, and the jurisdiction of the Special Master and the MDL Court or the Pennsylvania Coordinated Proceeding Court, as applicable, with regard to all matters pertaining to the Agreement and the Program contained therein. The Agreement is available for review at www.mdlcentrality.com/mdl2592.

2. As required by the Agreement, I am submitting (or uploading) to the Claims Administrator contemporaneous with the completion and submission of this Form: (i) a Dismissal with Prejudice Stipulation, and (ii) a fully completed and valid Release bearing my Personal Signature that has been notarized.

3. That upon my election to enroll to the Program, Defendants shall be entitled to the dismissal with prejudice of my pending personal injury or wrongful death case allegedly resulting from the prescription and use of Xarelto. I acknowledge that upon my election to enroll to the Program, Defendants shall be entitled to file any Dismissal With Prejudice Stipulation or rely upon the Release submitted by me in any relevant action or proceeding in accordance with the terms of the Agreement.

4. That my election to enroll is irrevocable unless the Agreement is terminated in accordance with its terms.

5. That I will not be eligible for an award unless I timely submit to the Claims Administrator my Claims Submissions, which are identified in the Agreement, in a form that meets the requirements set forth in the Program.

6. That appeals of determinations by the Claims Administrator as to my eligibility to enroll in the Program, whether I qualify for a payment, and the amount of such payment under the terms of the Agreement and the Program, including determinations that I am not entitled to a payment and/or determinations to award Extraordinary Circumstances Payments under the terms of the Agreement and Program, will be resolved by the private Special Master, and that the Special Master's decisions will be final and binding.

7. That by checking the box below to enroll in the Program and executing this form and submitting it or having it submitted to the Claims Administrator with a Release and Dismissal With Prejudice Stipulation, I acknowledge that I have been fully advised of my rights under the Agreement and elect to enroll in the Program, and that such election is irrevocable.

8. That any Program Award Payments constitute damages on account of personal injuries or physical injuries or physical sickness within the meaning of Section 104 of the Internal Revenue Code of 1986, as amended, arising from the physical injuries alleged to have resulted from the prescription and/or use of Xarelto®, and no portion of the proceeds paid under the Settlement Program represents punitive or exemplary damages, penalties or fines nor prejudgment or post judgment interest, or non-physical injuries. All

1

546244
5/7/19

## ENROLLMENT ELECTION FORM

Program Award Payments are subject to the provisions on attorneys' fees and costs and Liens.

9. To waive and release any and all claims for punitive or exemplary damages allegedly due to the prescription and/or use of Xarelto, penalties or fines, prejudgment or post judgment interest, and non-physical injuries, in addition to the provisions of the Release provided.

| ☒ | I elect **TO ENROLL** in the Xarelto Settlement Program. |
| ☐ | I elect to **NOT** enroll in the Xarelto Settlement Program and understand that I must comply with the Docket Control Order (CMO 11) and follow all its requirements, including paying any unpaid MDL filing fee within 14 days and providing expert reports within the specified deadlines. |

### I. XARELTO USER INFORMATION

| Name of Xarelto User | First William | | M.I. L | Last Willis |
|---|---|---|---|---|
| Name of Legal Representative (if applicable) | Christina Willis, as surviving spouse and Anticipated Representative of the Estate of William Lee Willis, Deceased | | | |
| Case Number and Court | 2:16-cv-14757; USDC, Eastern District of Louisiana | | | |

### II. CLAIMANT'S SIGNATURE

**IMPORTANT:** This form must be Personally Signed by CLAIMANT (the Xarelto user or the Legal Representative of a deceased or incapacitated product user).

| Signature | *Christina Willis* | Date | 9 / 6 / 2019 (month) (day) (year) |
|---|---|---|---|
| Printed Name | First Christina Willis | MI | Last Willis |

### III. ENROLLING COUNSEL SIGNATURE

**IMPORTANT:** This form must be Personally Signed by ENROLLING COUNSEL.

I, the Enrolling Counsel for the above-named Claimant, represent and warrant that I have been authorized by all other Persons having an Interest in the Xarelto-related Claim of the Claimant (all terms as defined in the Agreement) to agree on their behalf to the terms and conditions of the Agreement and by my signature below do hereby agree to be bound to the terms of the Agreement on behalf of myself and all other Persons with an Interest in the Claimant's Xarelto-related Claim.

| Signature | *Wendy C. Elsey* | Date | 9 / 24 / 2019 (month) (day) (year) |
|---|---|---|---|
| Printed Name | First Wendy | MI C. | Last Elsey |
| Firm Name | Matthews & Associates | Firm Address | 2905 Sackett St., Houston, TX 77098 |

2

546244
5/7/19

## RELEASE OF ALL CLAIMS

**Recitals**

Christina Willis, as surviving spouse and Anticipated Representative of the Estate of

1.  I, William Lee Willis, Deceased   the undersigned Releasing Party ("Releasing Party"), am a plaintiff in a lawsuit filed in either federal or state court involving a claim of personal injury allegedly due to the prescription and use of Xarelto®. I have enrolled to participate in the private settlement resolution program (the "Settlement Program") set forth in the Settlement Agreement (the "Agreement") dated as of May 6, 2019 ("Execution Date"). I understand that the terms of the Agreement govern the resolution of my claim. I acknowledge that I have been given the opportunity to review the Agreement prior to my execution of this Release.

2.  I further understand that, in order to enroll and submit my claim into the Settlement Program under the Agreement, I am required to submit, among other things, a release of any and all claims for injury, damages and/or losses of any kind, or wrongful death that I (and any other Releasing Party below) have, or may have in the future, against the Defendants (as defined under "Releases" below) and all other Released Persons (as defined under "Releases" below) arising from, related to, or in any way allegedly caused by in whole or in part, or connected with the prescription and/or use of Xarelto®, and/or due to any treatment that allegedly occurred as a result of the prescription and/or use of Xarelto®.

3.  Accordingly, in consideration for Defendants' agreement to establish the Settlement Program and the amount being paid by the Defendants if the Effective Date (as defined in the Agreement) is reached, and the opportunity to enroll my claim in the Settlement Program to be evaluated and possibly recover from the Settlement Program according to the terms of the Agreement and the objective award criteria established by Special Master (as defined in the Agreement), in consultation and cooperation with the XPL (as defined in the Agreement) and applied by the Claims Administrator to all Qualified Claimants (as defined in the Agreement), I hereby acknowledge the above referenced consideration as adequate and in return give and make the following releases, waivers, acknowledgements and agreements for the benefit of the Released Persons (as defined under "Release" below) (this "Release").

4.  This Release is also entered into by any Derivative Claimant (as defined in Paragraph 45) who executes a signature page hereto. Any such Derivative Claimant will not be entitled to a separate payment under the Settlement Program.

5.  By signing this Release, both I and any such Derivative Claimant irrevocably agree to be bound by the Agreement and the Settlement Program and the decisions of the Claims Administrator, Special Master, Lien Administrator (all as defined in the Agreement) or other administrators under the Settlement Program and understand and acknowledge that there is no assurance as to the amount of payment, if any, to be made to me or to any claimant under the Settlement Program, and this fact shall in no way affect the validity or

effect of this Release or any Stipulation of Dismissal With Prejudice provided by me or on my behalf.  However, I also understand that under the terms of the Agreement, this Release and Dismissal Stipulation will be rescinded and have no effect if I am found not to be an Eligible Claimant under the Settlement Agreement or if the Effective Date of the Agreement is not reached, including without limitation, because the Agreement is terminated due to the level of participation in the Settlement Program.

## Release

6.   The term "Defendants" for purposes of this Release means Bayer Pharma AG and Janssen Pharmaceuticals, Inc.

7.   The term "Released Person" or "Released Persons" means (i) Bayer Pharma AG, Bayer HealthCare Pharmaceuticals Inc., Bayer HealthCare LLC, Bayer Corporation, Bayer AG, Bayer HealthCare AG, and Bayer BV; (ii) Janssen Pharmaceuticals, Inc., Janssen Ortho LLC, Janssen Research and Development LLC, and Johnson & Johnson; (iii) any other defendants currently or formerly named in any litigation Connected With Xarelto (as defined in the Agreement), including but not limited to McKesson Corporation and Walgreens Co.; (iv) any past or present physicians, scientists, distributors, distributor representatives, sales representatives, manufacturers, suppliers, suppliers of materials or components, distributors, wholesalers, or other Persons (as defined below) involved in the design, research, development, manufacture, testing, sale, marketing, regulatory approval, labeling, promotion, advertising, or distribution of Xarelto® at any time; (v) any physicians, physician assistants, healthcare professionals, pharmacists, pharmacies, or hospitals in any way connected with the sampling, prescription, administration, and/or use of Xarelto®; except any physician or healthcare provider who has a lawsuit pending against them by a Releasing Party as of the Execution Date for medical malpractice where the physician or healthcare provider did not prescribe the Xarelto® at issue and/or did not treat the Releasing Party for an alleged adverse event due to Xarelto®; (vi) for each Person described in clauses (i), (ii), (iii), (iv), and (v) of this paragraph, its respective past, present, and/or future parents, subsidiaries, divisions, affiliates, joint venturers, predecessors, successors, assigns, and transferees and its respective past, present and/or future shareholders (or the equivalent thereto), directors (or the equivalent thereto), officers (or the equivalent thereto), owners, managers, principals, employees, consultants, advisors, attorneys, agents, servants, representatives, heirs, trustees, executors, estate administrators, and the personal representatives (or the equivalent thereto), and (vii) the respective insurers of all such Persons referred to in clauses (i), (ii), (iii), (iv), (v), and (vi) of this paragraph to the extent of their capacity as the insurer of such Persons.

8.   The term "Releasing Party" or "Releasing Parties" means (i) me, (ii) any current spouse, or former spouse named as a plaintiff in my lawsuit and also executing the Release, and (iii) any and all persons who independently, derivatively or otherwise, by reason of their relationship with or to me, have sued or could have sued one or more Defendants or any other Released Person, including but not limited to, any and all of my respective heirs, beneficiaries, next of kin, executors, administrators, successors, and assigns.

9.    In return for good and valuable consideration, including the establishment and funding of
the Settlement Program under the Agreement in which I am allowed to enroll and the
potential for a monetary payment under the Settlement Program, the sufficiency of which
is acknowledged, I do hereby on my own behalf and on behalf of each other Releasing
Party, knowingly and voluntarily **RELEASE, REMISE, ACQUIT and FOREVER
DISCHARGE** the Released Persons and each of them from:

a.      any and all rights, remedies, actions, claims, demands, causes of action, suits at
law or in equity, verdicts, suits of judgments, judgments and/or Liens (as defined
below) (including any of the foregoing) for wrongful death, personal injury and/or
bodily injury, sickness, disease, emotional distress and/or injury, mental or
physical pain and/or suffering, emotional and/or mental harm, fear of disease or
injury, Bleeding Events (as defined in the Agreement), future Bleeding Events,
fear of future Bleeding Events, Strokes or CVAs (as defined in the Agreement),
future Strokes or CVAs, fear of future Strokes or CVAs, VTE (as defined in the
Agreement), future VTEs, fear of future VTEs, other blood clots, future blood
clots, fear of future blood clots, treatment or surgery, loss of enjoyment of life,
loss of society, loss of companionship, loss of income, loss of wages, loss of
consortium, past or future medical expenses, reimbursement, future cost of
insured services, past cost of insured services or any other form of injury, and
including any of the foregoing for direct damages, indirect damages,
consequential damages, incidental damages, punitive or exemplary damages,
statutory and other multiple damages or penalties of any kind, or any other form
of damages whatsoever, whether past, present or future, and whether based upon
contract, breach of contract, warranty or covenant, breach of warranty or
covenant, tort, negligence, strict liability, gross negligence, recklessness, willful
or wanton conduct, malice, oppression, conscious disregard, joint and several
liability, guarantee, contribution, reimbursement, subrogation, indemnity, defect,
failure to warn, fault, misrepresentation, common law fraud, statutory consumer
fraud, quantum meruit, breach of fiduciary duty, violation of statutes or
administrative regulations and/or any other legal (including common law),
statutory, equitable or other theory or right of action, whether presently known or
unknown, developed or undeveloped, discovered or undiscovered, foreseen or
unforeseen, matured or unmatured, accrued or not accrued, past, present or future,
or now recognized by law or that may be created or recognized in the future by
statute, regulation, judicial decision or in any other manner that in any way may
arise from, relate to, or are in any way connected with (1) the prescription and/or
use of Xarelto®, and/or any injury, losses, or damages of any kind ever claimed,
or may at any time in the future be claimed, to have been caused, in whole or in
part, by any such use of Xarelto® or from any medical treatments allegedly
occurring because of the use of Xarelto®; (2) claims relating to the availability of
future Medicare-covered expenses, and any arising out of such medical
treatments, private cause of action I or any other Releasing Party may have under
42 U.S.C. 1395y(b)(3)(A); and/or (3) claims arising from or related to the
Settlement Program and the decisions of the Claims Administrator, Special
Master, Lien Administrator and other administrators of the Settlement Program
(collectively subpart (a) are "<u>Claims</u>"), which any Releasing Party may have ever

3

had, may now have, or at any time hereafter may have, against any Released Persons; and

**b.**     any and all debts, liabilities, covenants, promises, contracts, agreements and/or obligations of whatever kind, nature, description or basis, whether fixed, contingent or otherwise, whether presently known or unknown, developed or undeveloped, discovered or undiscovered, foreseen or unforeseen, matured or unmatured, or accrued or not accrued, which are, or may be, in any way connected with the prescription and/or use of Xarelto®, and/or with any injury, losses, or damages ever claimed, or may at any time in the future claim, to have been caused, in whole or in part, by any such use of Xarelto® or from any medical treatments allegedly occurring because of the use of Xarelto®; (collectively subpart (b) are "<u>Liabilities</u>"), which any Released Person may have ever had, may now have or at any time hereafter may have to me or any other Releasing Party.

These Claims and Liabilities are the "<u>Released Claims and Liabilities</u>." This Release is irrevocable by me upon my execution as of the date set forth beneath my name and my submission of it to the Claims Administrator of the Settlement Program, but shall be subject to return or being void if I do not meet the Eligibility Requirements to participate in the Settlement Program or if the Effective Date of the Agreement is not reached.

10.    Without in any manner limiting the foregoing, I, the Releasing Party, pursuant to New Jersey law or any other state's law found to be applicable, by signing this Release, specifically release and give up any and all right to and claim of pecuniary loss, injury or damage as those terms are defined in the New Jersey Wrongful Death Act, N.J.S.A. 2A:31-1, et seq., and as interpreted by the Courts of New Jersey, which might accrue to Releasing Party, his or her estate and others by virtue of the death of any Releasing Party, whether such claims are pursued directly or indirectly or by some person or persons in a representative capacity, if such claims arise in any way from or are in any way connected or related to Releasing Party's prescription and/or use of Xarelto®. It is expressly understood and agreed by Releasing Parties and Released Persons that a substantial reason and consideration of Released Persons in forbearing from any further steps in defending this claim and in agreeing to fund the Settlement as set forth in this Release and in the Agreement is the settlement, release and elimination at this time of any and all claims that Releasing Parties or others have now or in the future might have, absent this Release, for the wrongful death of any Releasing Party or Product User in relation to the prescription and/or use of Xarelto®.

11.    Releasing Parties further understand and agree that under the present state of the law in New Jersey that absent this Release and regardless of the entry of any judgment which might result in litigation by Releasing Parties against Released Persons, certain of Releasing Party's relatives, dependents or others might have claims for the death of Releasing Party against some or all Released Persons, *see Alfone v. Sarno*, 87 N.J. 99 (1981); and Releasing Parties further understand and agree that by executing this Release and enrolling in the Settlement Program and accepting any settlement awards issued, Releasing Parties acknowledge that they have received fair, just and adequate

4

consideration for any claims for the wrongful death of Releasing Party which may arise in relation to Releasing Party's prescription and/or use of Xarelto®. Releasing Parties further understand and agree that by executing this Release and enrolling in the Settlement Program, Releasing Parties, pursuant to New Jersey law or any other state's law found to be applicable, have forever remised, released, discharged and given up any and all Claims and Liabilities that Releasing Parties or others might have against the Released Persons for any actual or alleged wrongful death of a Releasing Party arising from or alleged to arise from Releasing Party's prescription and/or use of Xarelto®.

12.    I acknowledge that I (and/or any other Releasing Party) may in the future learn of additional or different facts as they relate to the Claims or Liabilities, the Released Persons' activities, and/or any injury I (and/or any other Releasing Party) have ever claimed, or may at any time in the future claim, was caused, in whole or in part, by the prescription and/or use of Xarelto®. I understand and acknowledge the significance and consequences of releasing all of the Released Claims and Liabilities and hereby (on my own behalf and on behalf of each other Releasing Party) assume full risk and responsibility for any and all such additional and/or different facts and any and all Released Claims and Liabilities that I (and/or any other Releasing Party) may hereinafter incur or discover. To the extent that any law, statute, ordinance, rule, regulation, case, court order, judicial process or other legal provision or authority (each a "Law"), including, but not limited to, the provisions of Section 1542 of the California Civil Code, may at any time purport to preserve my and/or any other Releasing Party's right to hereinafter assert any such unknown and/or unanticipated Claims and/or Liabilities, I hereby (on my own behalf and on behalf of each other Releasing Party) specifically and expressly waive (to the fullest extent permitted by applicable Law) each Releasing Party's rights under such Law, including, without limitation, Section 1542 of the California Civil Code, as amended, which provides as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

13.    I, on behalf of myself and other Releasing Parties, also hereby expressly waive and fully, finally and forever settle and release any and all Released Claims and Liabilities that I, and any other Releasing Party, may have against Released Persons under § 17200, et seq., of the California Business and Professions Code or by any law of the United States or of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable or equivalent to such provisions.

14.    On my own behalf and on behalf of each other Releasing Party, I acknowledge and agree that the releases set forth in this Release are irrevocable and unconditional, inure to the benefit of each Released Person, and are intended to be construed as broadly as possible so that Defendants and other Released Persons shall never be called upon to pay any further sums or expenses, including but not limited to compensatory or other damages of

any kind whatsoever, or be liable, directly or indirectly, to Releasing Parties, or any of them, or to any Person claiming by, through, under, the Releasing Parties, or any of them, for the Released Claims and Liabilities, or to any Person seeking contribution and/or indemnity from the Released Persons, or any of them, by reason of any legal actions brought against them by me or other Releasing Parties pertaining in any way to, or arising from, or connected with the Released Claims and Liabilities.

15.   WITHOUT LIMITING THE FOREGOING, THIS RELEASE IS SPECIFICALLY INTENDED TO OPERATE AND BE APPLICABLE EVEN IF IT IS ALLEGED, CHARGED OR PROVED THAT SOME OR ALL OF THE RELEASED CLAIMS AND LIABILITIES ARE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE, NEGLIGENCE PER SE, STRICT LIABILITY, GROSS NEGLIGENCE, BREACH OF WARRANTY, VIOLATION OF LAW, DEFECTIVE PRODUCT, CONSCIOUS DISREGARD, FRAUD, OPPRESSION, MISREPRESENTATION, MALICE, AND/OR CONDUCT OF ANY TYPE (INCLUDING, BUT NOT LIMITED TO, WILLFUL, WANTON, OR INTENTIONAL CONDUCT) BY ONE OR MORE RELEASED PERSON AND/OR ANY OTHER PERSON.  THIS RELEASE IS SPECIFICALLY INTENDED TO AND DOES INCLUDE, BUT IS NOT LIMITED TO, A RELEASE OF, AND COVENANT NOT TO SUE FOR, DAMAGES OF ANY KIND, OR FOR A WRONGFUL DEATH CLAIM THAT MAY BE BROUGHT AT ANY TIME BY OR ON BEHALF OF ANY OF THE RELEASING PARTIES,  THEIR ESTATES,  HEIRS OR BENEFICIARIES IN CONNECTION WITH ANY OF THE FACTS, EVENTS AND/OR INCIDENTS, THAT GAVE RISE TO OR ARE IN ANY WAY CONNECTED WITH ANY OF THE RELEASED CLAIMS AND LIABILITIES.

## Attorneys' Fees; Division of Any Program Award Payment

16.   I understand that the Released Persons are not responsible for any attorneys' fees, costs (including, but not limited to, court costs), ad litem fees, common benefit fees, costs or assessments, or fees and expenses that I or my Counsel have incurred or may at any time incur, including, but not limited to, in connection with the entering into this Release and having my pending lawsuit dismissed.  I understand that, with respect to any payment that may be made to me under the Settlement Program ("Program Award"), any division of such Program Award between me, any Derivative Claimant executing this Release, and our respective Counsel (if any) executing a Certification of Counsel attached to this Release shall be determined by me and such other Person(s), and such division, or any dispute in relation to such division, shall in no way affect the validity of this Release or any Stipulation of Dismissal With Prejudice provided to dismiss my pending lawsuit.

## Covenant Not To Pursue Certain Claims

17.   I hereby agree and covenant that I will never:  (i) take any legal, or other action to initiate, pursue or maintain, or otherwise attempt to execute upon, collect or otherwise enforce, any of the Released Claims and Liabilities of or against any Released Person, (ii) institute any new legal action against any Released Person relating to any injury I (and/or any other Releasing Party) have ever claimed, or may at any time hereafter claim, were caused in whole or in part by the prescription and/or use of Xarelto®, whether that use has occurred in the past or occurs in the future, and/or (iii) attempt to execute or collect on, or otherwise enforce, any judgment that may be entered against any Released Person

6

in any legal action described in clause (ii) or maintain my pending legal action against one or more Defendants or other Released Persons. I further agree and covenant that I will not take any legal or other action to initiate, pursue or maintain a claim against the Claims Administrator, Special Master, Lien Administrator, nor any employee, agent or representative of any of them, in connection with the Settlement Program, except, with respect to each such Person's own willful misconduct.

## Dismissal of Pending Action

18.   It is further agreed and understood that, to the extent applicable, the pending claim or cause of action brought by me or on my behalf as described above shall be concluded by entry of a Dismissal With Prejudice Stipulation with my consent and the consent of all Releasing Parties in accordance with the terms of the Agreement. However, under the terms of the Agreement, no Dismissal Stipulation will be entered in court if I do not meet the Eligibility Requirements to have my claim enrolled in the Settlement Program or if the Effective Date of the Agreement is not reached.

## Liens

19.   I understand that pursuant to the Agreement, if I become a Qualified Claimant under the Settlement Program entitling me to a Settlement Award, I will be responsible for the resolution of Liens, which will be negotiated and resolved on my behalf by the Lien Administrator using funds from my Settlement Award Payment. I agree to cooperate with procedures established by the Claims Administrator and/or Lien Administrator for the resolution of Liens.

20.   I agree that before any Settlement Award Payment is made to me, I shall identify to the Claims Administrator, Lien Administrator and my Counsel all Liens (as defined below) that are known to me and are held or asserted by Persons that have paid for, or asserted a Lien or other claim for reimbursement for, medical care associated with the prescription and/or use of Xarelto®, as well as other Persons who hold or assert any Lien with respect to any Settlement Program Award payment (and/or the right to receive such Settlement Program Award payment), through procedures and protocols to be established by the Claims Administrator and/or Lien Administrator for the Settlement Program.

21.   Releasing Parties agree to provide the Claims Administrator, Lien Administrator, and Defendants with their full name, gender, date of birth, address, Social Security Number and Health Insurance Claim Number, if applicable, for the purpose of Medicare Secondary Payer compliance. Releasing Parties also agree to indicate on this Release if they are, or ever were enrolled in Medicare and to provide any medical payment-related documents as may be requested by the Claims Administrator, Lien Administrator, and/or Escrow Agent. Releasing Parties also agree that Released Persons may use any personal or protected information (e.g., social security number, date of birth, protected health or medical information, etc.) to meet any reporting requirements that might be owed to the Centers for Medicare and Medicaid Services of the U.S. Department of Health and Human Services ("CMS") or its contractors arising out of this claim, and Releasing Parties agree to cooperate with the Claims Administrator and Lien Administrator to

provide such information or to perform other activities reasonably necessary to meet any CMS requirements to fulfill the Lien resolution obligations of Releasing Parties as specified in the Agreement and this Release, including but not limited to completion of an accurate Lien Disclosure Form (as part of the Claim Form defined in the Agreement) in the form and format provided by the Claims Administrator and/or Lien Administrator.

22.  I understand and acknowledge that Liens defined herein are the sole responsibility of me and any Derivative Claimant executing this Release.  Furthermore, I agree that I or my Counsel shall provide, or shall cause the Claims Administrator or Lien Administrator to provide, to Defendants confirmation of the satisfaction and discharge of any or all such Liens for which I or any Derivative Claimant executing this Release am or are responsible for their resolution.

23.  In addition to and without limitation of the foregoing, I hereby agree, jointly and severally with any Derivative Claimant executing this Release to indemnify and hold harmless the Released Persons from and against any and all damages, losses, costs (including, but not limited to, court costs), expenses (including legal fees and expenses), fines, penalties or Liabilities incurred or suffered by, or imposed on, any Released Person in connection with, arising out of or resulting from (i) any Claim made or asserted at any time against any of the Defendants, or any other Released Person, with respect to any Program Award payment made to me (or the right to receive any such Program Award payment), by any Person at any time holding or asserting any Lien arising from or pertaining to Medicare, Medicaid or other Governmental Authority benefits, workers' compensation benefits, medical, hospital or disability benefits, attorney liens, and/or other Liens for which I and any Derivative Claimant executing this Release are responsible under the Agreement, and/or (ii) the failure to properly provide the Lien information required by the Agreement or to cooperate with the Claims Administrator and/or Lien Administrator in the resolution of such Liens.

24.  I, on behalf of myself and all Releasing Parties and our Counsel, agree to cooperate fully with the Claims Administrator and Lien Administrator, by executing any and all documents and providing such additional information as may be requested for purposes of the resolution of Liens and/or required by or on behalf of the Released Persons to comply with the Medicare reporting or compliance requirements, such as Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007, if any.

### Nature of Settlement Award Payments

25.  I also hereby state and acknowledge, as set forth in the Agreement and agreed to by Released Persons, that all Settlement Award Payments paid pursuant to the Settlement Program constitute damages on account of personal injuries or physical injuries or physical sickness within the meaning of Section 104 of the Internal Revenue Code of 1986, as amended, arising from the physical injuries alleged to have resulted from the prescription and/or use of Xarelto®, and no portion of the proceeds paid under the Settlement Program represents punitive or exemplary damages, nor prejudgment or post-judgment interest, nor non-physical injuries.  I hereby waive and dismiss with prejudice

8

any and all present claims for punitive or exemplary damages and waive any and all
future claims for punitive or exemplary damages.

**Indemnification for Released Claims and Liabilities: Contribution and Indemnity Claims**
**Extinguished**

26.      I hereby agree, jointly and severally with any Derivative Claimant executing this Release,
to INDEMNIFY and HOLD HARMLESS each Released Person from and against the
following:  (i) any and all Claims that may be asserted, made or maintained at any time
by, on behalf of, or for the benefit of, any Releasing Party, or someone claiming by,
through or under any Releasing Party, against any Released Person, with respect to any of
the aforementioned Released Claims and Liabilities; (ii) any and all damages, losses,
costs (including, but not limited to, court costs), expenses (including, but not limited to,
legal fees and expenses) and/or Liabilities incurred or suffered by, or imposed on, any
Released Person in connection with, arising out of or resulting from any Claim described
in clause (i) of this sentence (including, but not limited to, any amount paid or to be paid
in satisfaction of any such Claim) and/or, without limitation of the foregoing, any breach
by me, my representatives or Counsel (or any Derivative Claimant, his or her
representatives or Counsel executing this Release) of any of the terms of this Release;
(iii) any and all Claims made or asserted (prior to, on or after the date of this Release)
arising by virtue of any common law and/or statutory claim for wrongful death in any
way, arising out of, relating to, resulting from, in whole or in part, by the prescription
and/or use of Xarelto® brought by, or on behalf of, any heir, beneficiary, next-of-kin, or
estate of Releasing Party; and (iv) any and all Claims made or asserted (prior to, on or
after the date of this Release), including claims for contribution and/or indemnity, by any
other Person against any Released Person in any way, arising out of, relating to, resulting
from, in whole or in part, by the prescription and/or use of Xarelto® by me or my
Product User.  Further, to the extent necessary under law to give effect to this paragraph
and/or to extinguish claims for contribution and/or indemnity against any Released
Person for the Released Claims and Liabilities, or to satisfy such indemnity obligation
that arises due to a contribution or indemnity claim by a third party, I further agree,
jointly and severally with any Derivative Claimant executing this Release:  (x) to reduce
any judgment Releasing Parties might recover against any Persons other than a Released
Person by release and discharge in an amount, fraction, portion, or percentage necessary
under applicable state or federal law to bar, eliminate, or satisfy claims against the
Released Persons for contribution and/or indemnity to the fullest extent permitted by
applicable state or federal law arising from any Claims or Liabilities hereby released,
including any amount re-allocated by applicable state or federal statute or common law to
Released Persons resulting from uncollectibility and/or insolvency of other Persons
determined to be at fault, as well as (y) to indemnify and hold harmless any Released
Persons in accordance with this Paragraph 26 as may still be necessary after having
performed clause (x) above of this Paragraph 26.  Releasing Parties shall execute any
additional documentation that may be required under applicable state or federal law in
order to give effect to this provision.

9

## Confidentiality

27.   Releasing Parties and Released Persons recognize that all parties have an interest in
maintaining the confidentiality of the amount of any individual Settlement Program
Award Payment.  Neither party wishes to publicize the amount of individual Settlement
Program Award Payments.  All parties therefore agree not to publicize, or cause to be
publicized, the amount of Settlement Program Award Payment except as is necessary for
disclosure to family members, tax and estate planning, insurance coverage, Lien
resolution, and/or normal reporting business purposes, or as may be required in
connection with court proceedings or as otherwise required by law, judicial process, or
ethical requirements. This agreement of confidentiality extends to all parties, their heirs,
agents and representatives and, specifically, bars, but is not limited to, publication of the
amount of my Settlement Program Award Payment by radio, television, newspaper,
magazines, internet, texting, social media or other public announcement.  Released
Persons and Releasing Parties expressly have agreed that each other's reciprocal
confidentiality covenant is the sole consideration given in exchange for that of the other,
and that the parties specifically have in mind that no part of the settlement consideration
is paid for this reciprocal agreement to keep the amount of individual Settlement Program
Award Payments confidential.  If this covenant of confidentiality is breached, the party in
breach will be legally liable for any harm and loss which is shown in legal proceedings or
arbitration to have been proximately caused by the breach.  Nothing herein confers
confidentiality to the otherwise public nature of the gross settlement amounts and
settlement terms of this national settlement program and instead, the confidentiality
herein applies to any award specifically conferred to me.  I further agree that to the extent
information covered by this confidentiality provision is subpoenaed or disclosure is
required by court order, I will immediately inform Defendants.

28.   Releasing Parties agree that the Defendants,  may retain any medical records currently in
their possession, and may provide access to the medical records, to the extent allowed by
law, including the Health Insurance Portability and Accountability Act of 1996 (HIPAA),
42 U.S.C. § 1301, et seq., specifically limited to regulatory reporting or follow-up or
internal review pursuant to 21 CFR § 314.80(i) or other applicable law or regulation, or
upon the request of any of the Defendants' litigation counsel, insurance counsel,
securities and/or regulatory counsel and liability insurers and their reinsurers.  Further,
Releasing Parties and their counsel acknowledge and agree that the confidentiality of this
Release does not bar the Defendants from reporting information required to be disclosed
to Medicare or the Secretary under Section 111 of the MMSEA.

## Acknowledgement of Comprehension; No Guarantee of Amount of Payment

29.   I AM ENTERING INTO THIS RELEASE FREELY AND VOLUNTARILY, WITHOUT BEING
INDUCED, PRESSURED OR INFLUENCED BY, AND WITHOUT RELYING ON ANY
REPRESENTATION OR OTHER STATEMENT MADE BY OR ON BEHALF OF, DEFENDANTS OR
ANY OTHER PERSON. I UNDERSTAND, ACKNOWLEDGE AND ACCEPT THE NATURE, VALUE
AND SUFFICIENCY OF THE CONSIDERATION DESCRIBED IN THIS RELEASE, INCLUDING
THE POSSIBILITY, BUT NO GUARANTEE, OF A MONETARY AWARD FROM THE
SETTLEMENT PROGRAM PURSUANT TO THE AGREEMENT. I ACKNOWLEDGE THAT I

HAVE BEEN PROVIDED THE OPPORTUNITY TO REVIEW THE AGREEMENT AND HAVE READ THIS RELEASE, AND I HAVE HAD AN OPPORTUNITY TO OBTAIN ADVICE FROM, AND ASK QUESTIONS OF, COUNSEL OF MY CHOOSING REGARDING THE TERMS AND LEGAL EFFECT OF THE AGREEMENT AND THIS RELEASE AND MY DECISION TO PARTICIPATE IN THE SETTLEMENT PROGRAM FUNDED BY THE AGREEMENT.

30.   FURTHER TO THE EXTENT THAT I AM REPRESENTED BY COUNSEL, I ACKNOWLEDGE THAT I HAVE BEEN INFORMED OF ALL THESE MATTERS BY MY COUNSEL WHO IS EXECUTING A "CERTIFICATION OF COUNSEL" ATTACHED TO THIS RELEASE, AND SUCH COUNSEL HAS ANSWERED ALL MY QUESTIONS (IF ANY) TO MY SATISFACTION. I FURTHER ACKNOWLEDGE THAT I UNDERSTAND THIS RELEASE AND THE AGREEMENT AND THAT THERE IS NO GUARANTEE THAT I WILL RECEIVE ANY SPECIFIC AMOUNT OF MONETARY PAYMENT FROM THE SETTLEMENT PROGRAM. I FURTHER UNDERSTAND THAT ANY AMOUNTS PAID TO ME WILL BE PAID SUBJECT TO LIENS AND THE PROVISIONS OF THE AGREEMENT AND THIS RELEASE.

31.   I ALSO ACKNOWLEDGE THAT THE SETTLEMENT PROGRAM AND THE AGREEMENT ARE TO RESOLVE THE CLAIMS OF NUMEROUS CLAIMANTS AND THAT THE AWARD TO ME MAY BE FOR A SUM DIFFERENT THAN AWARDS TO OTHER CLAIMANTS BASED ON THE TERMS OF THE AGREEMENT AND THAT ALL AWARDS MAY BE REDUCED DEPENDING ON THE NUMBER OF CLAIMANTS AND THE AMOUNT OF AWARDS ISSUED UNDER THE SETTLEMENT PROGRAM AND I ACCEPT AND AGREE TO THOSE TERMS.

## Waiver of Certain Provisions Regarding Timing of Any Payments

32.   If I have any civil action pending in any jurisdiction that has enacted, promulgated or otherwise adopted any law containing provisions that establish specific time periods within which funds, if any, must be paid to me in connection with the release of such civil action (including, but not limited to, Pennsylvania Rule of Civil Procedure 229.1), I hereby (i) specifically and expressly waive (to the fullest extent permitted by applicable law) my rights under any such provisions and (ii) agree that any decision about any Settlement Program Award and the payment of any Settlement Program Award shall be made solely in accordance with the terms and conditions of the Settlement Program set forth in the Agreement, including the criteria and allocation established by the private Special Master.

## Common Benefit Deduction

33.   I acknowledge and agree that any Settlement Award Payment under the Agreement to which I become entitled will be reduced by the deduction of legal fees and costs. I specifically acknowledge and consent to the jurisdiction of the MDL Court for the purpose of any Orders entered by the MDL Court that assesses amounts to establish a fund to pay Counsel Seeking Reimbursement for Common Benefit Fees and Costs pursuant to Pre Trial Order No. 8 (Establishing Standards and Procedures for Counsel Seeking Reimbursement for Common Benefit Fees and Costs), *In Re: Xarelto (Rivaroxaban) Products Liability Litigation,* United States District Court, Eastern District of Louisiana, Case No. 2:14-md-02592, and any new Pre-Trial Order which sets the

11

assessment percentage and breakdown applicable to any Settlement Award Payment that I may receive and which allocates the payment of common benefit fees and costs among plaintiffs' counsel. I understand that any assessment by the MDL Court for legal fees will be deducted from that portion of a Settlement Award Payment subject to the contingency fee provisions of a retention agreement with Counsel.

## Informed Consent and Submission to Authority of Settlement Program

34.    I understand that I have the right to make an informed decision regarding participation in the Settlement Program. As such, my Counsel has carefully reviewed with me terms of the Agreement and this Release, including that the Settlement Program provides a means outside of the control of Defendants to make Settlement Awards based on objective criteria established by the Special Master in consultation and cooperation with the XPL, including categories subject to specified reductions which have been outlined to me, and which will be applied to my claim based on the facts of my claim by the Claims Administrator. I also acknowledge that the Claims Administrator and Special Master under the Settlement Program and the XPL have been available to assist me in the informed consent process and to answer any questions that I might have had about the Agreement, this Release, and the Settlement Program.

35.    I also understand and agree that by enrolling in the Settlement Program and submitting this Release, I am submitting my Settlement Program claim to the authority and decisions of those persons specified in the Agreement, including but not limited to the Claims Administrator and any privately appointed Special Master to whose authority under the Agreement I voluntarily submit and agree. I consent and agree that the Claims Administrator and Special Master making decisions regarding my claim to the Settlement Program shall each have the authority of an Arbitrator under the Federal Arbitration Act, 9 U.S.C. § 1 et seq., and each of their decisions are binding, final and Non-Appealable (as defined in the Agreement). I further agree and consent that, to the extent this Release is later rescinded because the Claims Administrator (and/or Special Master on appeal) decides that I am not an Eligible Claimant under the Settlement Agreement, any such decisions remain the decisions of an arbitrator and are final, binding and Non-Appealable, even if as a result of those decisions, this Release (except for the Confidentiality provision) is no longer binding and effective as to my claims.

## No Admission of Fault

36.    I understand and agree that Defendants have entered into the Agreement solely by way of compromise and resolution. The Agreement, and this Release, are not, and shall not be construed at any time to be, an admission of liability, responsibility or fault of or by Defendants or any other Released Person.

## Representations and Warranties

37.    I hereby represent and warrant that: I have full power, authority and capacity to enter into this Release, which is enforceable in accordance with its terms. Except as set forth in the second sentence under "Attorneys' Fees: Division of Any Program Award

Payment" above and the provisions with respect to Liens and common benefit assessments, I have the sole right to receive any and all Settlement Program Award Payments with respect to my claim under the Settlement Program. Neither I nor any other Releasing Party has sold, assigned, transferred or otherwise disposed of, or pledged or otherwise encumbered, any of the Released Claims and Liabilities in whole or in part.

38.     I and any Derivative Claimants executing this Release further specifically warrant and represent that to the extent any bankruptcy action is pending, I and other Releasing Parties will take all necessary actions to notify the Bankruptcy Court of this settlement and will fulfill all obligations to said Bankruptcy Court. I further agree, jointly and severally with any Derivative Claimant executing this Release, to indemnify, defend, and hold harmless, up to the amount of the Settlement Program award issued to me, the Released Persons from any loss, claim, expense, demand, or cause of action of any kind or character, including costs and attorneys' fees that result from the failure, if any, of any or all Releasing Parties to fulfill their obligations to said Bankruptcy Court. Bankruptcy proceedings will be sought in compliance with the confidentiality provisions of this Agreement. Upon request, Releasing Parties further agree that they will provide written confirmation that they fulfilled said Bankruptcy Court obligations. I and any Derivative Claimants executing this Release acknowledge that Defendants entered into the Agreement in reliance upon the representations and warranties made in this Release.

## Governing Law

39.     THIS RELEASE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE SUBSTANTIVE LAW OF THE STATE OF NEW JERSEY, WITHOUT REGARD TO ANY CHOICE-OF-LAW RULES THAT WOULD REQUIRE THE APPLICATION OF THE LAW OF ANOTHER JURISDICTION.

## Severability

40.     I agree that if any provision of this Release is adjudicated to be invalid, illegal or unenforceable in any jurisdiction, the relevant provision shall be deemed modified to the extent necessary to make it enforceable in such jurisdiction and, if it cannot be so modified, this Release shall be deemed amended to delete herefrom the invalid or unenforceable provision, and this Release shall be in full force and effect as so modified. Any such modification or amendment shall apply only to the operation of this Release in the particular jurisdiction in which such adjudication was made and shall not affect such provision in any other jurisdiction. To the fullest extent permitted by applicable law, I hereby (on my own behalf and on behalf of each other Releasing Party) specifically and expressly waive any provision of law that renders any provision of this Release invalid, illegal or unenforceable in any respect.

## Legal Representatives

41.     If I am signing this Release as a legal representative of a person or an estate of such person who was injured or suffered death allegedly caused by the prescription and/or use of Xarelto® ("allegedly injured person or alleged decedent"), then (i) all references in

13

this Release to my injury from the prescription and/or use of Xarelto® shall also mean the injury from the prescription and/or use of Xarelto® of such allegedly injured person or decedent, all references in this Release to any person claiming by, through or under, or in relation to, me shall also mean any person claiming by, through or under, or in relation to such allegedly injured person or decedent, and all references to me in the definition of Derivative Claimant shall also mean such allegedly injured person or decedent, (ii) if such allegedly injured person or alleged decedent is not deceased, he or she shall also be a Releasing Party, (iii) if such allegedly injured person or decedent is deceased, I am executing this Release both individually and on behalf of the estate of such allegedly injured person or decedent, and (iv) prior to the submission of this Release to Defendants, I have or will obtain judicial approval of this Release at my own expense, to the extent required under applicable Law.

## Definitions

42. Unless otherwise defined in the body of this Release or below, all defined terms in this Release have the definitions set forth in the Agreement.

43. "Claims" has the meaning set forth in Paragraph 9 of this Release.

44. "Counsel" means, with respect to any particular Person, a lawyer or law firm who represents such Person pursuant to a written agreement or who has an Interest (as defined in the Agreement) in such Person's Claim Connected With Xarelto.

45. "Derivative Claimant" means, in relation to any particular Eligible Claimant (as defined in the Agreement) or Program Claimant (as defined in the Agreement), any Person having or asserting the right, either statutory or under applicable common law (including the laws of descent and distribution) or otherwise, to sue Defendants or any other Released Person, independently, derivatively or otherwise:

   (i)     by reason of their personal relationship with such Eligible Claimant or Program Claimant (or the Product User with respect to such Eligible Claimant or Program Claimant); and/or

   (ii)    otherwise by, through or under, or otherwise in relation to, such Eligible Claimant or Program Claimant (or the Product User with respect to such Eligible Claimant or Program Claimant);

including the heirs, beneficiaries, surviving spouse (including a putative or common law spouse), surviving domestic partner and next of kin of such Eligible Claimant or Program Claimant (or the Product User with respect to such Eligible Claimant or Program Claimant).

46. "Governmental Authority" means any government or political subdivision, department, commission, board, bureau, agency, or other governmental authority, whether United States federal, state, District of Columbia, city, county, municipal, territorial, or any agency, department, or instrumentality thereof, or any United States federal, state, District of Columbia, city, county, municipal, or territorial court.

47.  "Liabilities" has the meaning set forth in Paragraph 9 of this Release.

48.  "Lien" means any mortgage, lien, pledge, charge, security interest, encumbrance, assignment, subrogation right, third-party interest or adverse claim of any nature whatsoever, in each case, existing or asserted, whether statutory or otherwise, including but not limited to Medicare liens or right of reimbursement held by CMS or other Governmental Authority.

49.  "Person" means a natural person, partnership (whether general or limited), limited liability company, trust, estate, association (including any group, organization, co-tenancy, plan, board, council or committee), corporation, Governmental Authority, custodian, nominee or any other individual or entity (or series thereof) in its own or any representative capacity, in each case, whether domestic or foreign.

50.  "Product User" means, in relation to any particular Releasing Party, the natural person (including the deceased natural person) referred to in the definition of the term "Eligible Claimant" in the Agreement who was prescribed and used Xarelto® (as opposed to any Legal Representative in respect of such natural person).

51.  "Released Claims and Liabilities" has the meaning provided in Paragraph 9 of this Release.

52.  "Released Person" or "Released Persons" has the meaning provided in Paragraph 7 of this Release.

53.  "Releasing Party" or "Releasing Parties" has the meaning provided in Paragraph 8 of this Release.

54.  "Program Award Payment" means any payment resulting from a Program Award, which payment:  (i) is subject to Liens, the attorneys' fees and costs provision in a retention agreement with Counsel, other common benefit attorney fees and costs assessed by a court, and/or Administrative Expenses, and (ii) can only be made if the Effective Date is reached.

## Miscellaneous

55.  Where the context so requires, terms used in the singular in this Release shall be deemed to include the plural and *vice-versa*.

56.  This Release may be executed in counterparts (except that the notarizations of signatories must be made at the same time and place of the execution being notarized), each of which shall be an original and all of which shall together constitute one and the same instrument.

## Certification of Medicare Status

57.  Have you ever been enrolled in Medicare, now or in the past?   [Check one]

Yes: ✓          No: _____

**IN WITNESS WHEREOF,** I have executed this Release effective as of the date set forth under my name below:

| SIGNATURE BY RELEASING PARTY AND NOTARIZATION | |
|---|---|
| **Signature of Releasing Party:** | Christina Willis |
| **Printed Name:** | Christina Willis, as surviving spouse and Anticipated Representative of the Estate of William Lee Willis, Deceased |
| **Social Security No.:** | 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 |
| **Date of Birth:** | 10-12-1935 |
| **Date of Signature:** | 9 / 6 / 19<br>(month)  (day)  (year) |

---

ⁱ   INSTRUCTION: The Release must be executed with the Personal Signature of the Enrolling Eligible Claimant/Releasing Party and notarized. If executed on behalf of an enrolling Eligible Claimant by a Legal Representative (e.g., legal guardian), evidence of such authority must be attached and submitted with the Release executed with the Personal Signature of the Legal Representative and notarized.

16

## NOTARIZATION

| | |
|---|---|
| BEFORE ME, the undersigned authority, the Person known to be the Releasing Party named above personally appeared on the Signature Date shown and acknowledged under oath to my satisfaction that he/she has signed, sealed and delivered this document as his or her act and deed for the purposes therein expressed and in the capacity therein expressed. | |
| **Signature of Notary:** | *Dollie Burns* |
| **Notary Public in and for the State or Jurisdiction of:** | *W Va.* |
| **Date Notary Commission Expires:** | _2_ / _6_ / _23_<br>(month)  (day)  (year) | _____ Notary:  Check here if your Notary Commission has no expiration date under the law of your jurisdiction. |
| **Place Notary Seal or Stamp in this Space, or Notary Number:** | OFFICIAL SEAL - NOTARY PUBLIC<br>STATE OF WEST VIRGINIA<br>**DOLLIE BURNS**<br>First Community Bank<br>PO Box 3068<br>Bluefield, WV 24701<br>My Commission Expires February 6, 2023 |
| | _____ Notary:  Check here if your jurisdiction does not require a seal or stamp. |

## SPOUSE/DERIVATIVE CLAIMANT—RELEASING PARTY[2]

### Certification of Medicare Status

58.　Have you ever been enrolled in Medicare, now or in the past?　**[Check one]**

Yes: _✓_　　No: _____

| SIGNATURE BY SPOUSE/DERIVATIVE CLAIMANT/ RELEASING PARTY AND NOTARIZATION | |
|---|---|
| Signature of Spouse/Derivative Claimant: | *Christina Willis* |
| Printed Name: | Christina Willis |
| Social Security No.: | 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 |
| Date of Birth: | 10·12·1935 |
| Relationship to Claimant: | wife |
| Date of Signature: | 9 / 6 / 2019 (month) (day) (year) |

---

[2]　[INSTRUCTION: The Release must be executed with the Personal Signature of any current spouse of the enrolling Eligible Claimant/Releasing Party and notarized. In connection with any divorced, separated, or estranged spouses who were spouses at the time of the Eligible Claimant's prescription and use of Xarelto® and alleged injury, an indemnity agreement in the form agreed to by the Parties shall be executed and supplied by the enrolling Eligible Claimant together with this executed and notarized Release in lieu of signature by such divorced, separated or estranged spouse.]

| NOTARIZATION | |
|---|---|
| BEFORE ME, the undersigned authority, the Person known to be the Spouse/Derivative Claimant/Releasing Party named above personally appeared on the Signature Date shown and acknowledged under oath to my satisfaction that he/she has signed, sealed and delivered this document as his or her act and deed for the purposes therein expressed and in the capacity therein expressed. | |
| Signature of Notary: | *Dollie Burns* |
| Notary Public in and for the State or Jurisdiction of: | W VA |
| Date Notary Commission Expires: | 2 / 6 / 23  <br> (month)  (day)  (year) | _____ Notary:  Check here if your Notary Commission has no expiration date under the law of your jurisdiction. |
| Place Notary Seal or Stamp in this Space, or Notary Number: | OFFICIAL SEAL · NOTARY PUBLIC <br> STATE OF WEST VIRGINIA <br> **DOLLIE BURNS** <br> First Community Bank <br> PO Box 3068 <br> Bluefield, WV 24701 <br> My Commission Expires February 6, 2023 | |
| | _____ Notary:  Check here if your jurisdiction does not require a seal or stamp. | |

## CERTIFICATION OF COUNSEL

### (COUNSEL FOR RELEASING PARTY)

I, ____Wendy C. Elsey____, hereby represent and declare that Christina Willis, as surviving spouse and Anticipated Representative of the Estate of William Lee Willis, Deceased ("Releasing Party") is currently represented by the undersigned counsel. I have provided Releasing Party with a copy of the Release to which this Certification of Counsel is attached and have made available to Releasing Party a copy of the Settlement Agreement referred to in the Release (which copies include all attachments). I informed Releasing Party of the terms and legal effect of all of the foregoing documents and Releasing Party's decision to enroll in the Settlement Program (as defined in the Release), and I answered any and all questions Releasing Party may have had. I hereby certify that Releasing Party, having had a full opportunity to read, understand, and inquire of counsel about the terms and conditions of the foregoing documents, does not have, and I do not have, any objection to the terms of this Release or any of the other foregoing documents. I further agree to be bound by the "Confidentiality" section and my obligations as Counsel in the "Liens" section in this Release and all of the terms of the Settlement Agreement applicable to Plaintiffs' Counsel.

COUNSEL FOR RELEASING PARTY:

By: _____

Name: Wendy C. Elsey

Title: Attorney

Dated: ____7/20/2019____

20

## CERTIFICATION OF COUNSEL

### (COUNSEL FOR SPOUSE/DERIVATIVE CLAIMANT/RELEASING PARTY)

I, __Wendy C. Elsey__ , hereby represent and declare that __Christina Willis__ ("Derivative Claimant") is currently represented by the undersigned counsel. I have provided Derivative Claimant with a copy of the Release to which this Certification of Counsel is attached and have made available to Derivative Claimant a copy of the Settlement Agreement referred to in the Release (which copies include all attachments). I informed Derivative Claimant of the terms and legal effect of all of the foregoing documents, and I answered any and all questions Derivative Claimant may have had. I hereby certify that Derivative Claimant, having had a full opportunity to read, understand, and inquire of counsel about the terms and conditions of the foregoing documents, does not have, and I do not have, any objection to the terms of this Release or any of the other foregoing documents. I further agree to be bound by the "Confidentiality" section and my obligations as Counsel in the "Liens" section in this Release and all of the terms of the Settlement Agreement applicable to Plaintiffs' Counsel.

BY COUNSEL FOR DERIVATIVE CLAIMANT:

By: _____
Name: Wendy C. Elsey
Title: Attorney
Dated: ___9/24/2019___

21

EXHIBIT D-1

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | )<br>)MDL No. 2592<br>)<br>)<br>) |
| THIS DOCUMENT RELATES TO:<br>Christina Willis as Surviving Spouse and Anticipated Representative of the Estate of William<br>Civil Action No.   2:16-cv-14757 | )<br>)SECTION L<br>)<br>)JUDGE ELDON E. FALLON<br>)<br>)MAGISTRATE JUDGE NORTH<br>) |

## STIPULATION OF DISMISSAL WITH PREJUDICE

IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned parties pursuant to Fed. R. Civ. P. 41, that the claims of Plaintiff in the above-captioned case be dismissed with prejudice against all Defendants in this action, each party to bear its own fees and costs.

**MATTHEWS & ASSOCIATES**

By: /s/David P. Matthews

    David P. Matthews
    Wendy C. Elsey
    2905 Sackett St.
    Houston, TX  77098
    Telephone:  (713) 522- 5250
    dmatthews@dpmlawfirm.com
    welsey@dpmlawfirm.com

    Attorneys For Plaintiff


Dated: _____, 2019


**DRINKER BIDDLE & REATH LLP**

By: /s/Susan M. Sharko

    Susan M. Sharko
    600 Campus Dr.
    Florham Park, NJ 07932
    Telephone: (973) 549-7000
    susan.sharko@dbr.com

    Attorneys for Defendants Janssen
    Pharmaceuticals, Inc., Johnson & Johnson,
    Janssen Research & Development, LLC, and
    Janssen Ortho LLC

    Dated: _____, 2019


**ARNOLD & PORTER KAYE SCHOLER LLP**

By: /s/Andrew K. Solow

    Andrew K. Solow
    250 West 55th Street
    New York, New York 10019-9710
    Telephone: (212) 836-8000
    Facsimile: (212) 836-8689
    William Hoffman
    601 Massachusetts Ave., NW
    Washington, D.C. 20001
    Telephone: (202) 942-5000
    Facsimile: (202) 942-5999
    andrew.solow@arnoldporter.com
    william.hoffman@arnoldporter.com

    Attorneys for Defendants Bayer HealthCare
    Pharmaceuticals Inc., and Bayer Pharma AG

    Dated: _____, 2019


**IRWIN FRITCHIE URQUHART & MOORE LLC**

By: /s/ Kim E. Moore

    Kim E. Moore
    400 Poydras St., Ste, 2700
    New Orleans, LA 70130
    Telephone: (504) 310-2100
    kmoore@irwinllc.com

    Liaison Counsel for Defendants

    Dated: _____, 2019

EXHIBIT D-1

## <u>CERTIFICATE OF SERVICE</u>

      The undersigned hereby certifies that on _____, 2019, the foregoing pleading was filed electronically with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs and Defendants by operation of the Court's electronic filing system and served on all other plaintiff counsel via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre-Trial Order No. 17.

               /s/ _____