UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: XARELTO (RIVAROXABAN)     MDL No. 2592
PRODUCTS LIABILITY LITIGATION

SECTION L

THIS DOCUMENT RELATES TO:     JUDGE ELDON E. FALLON

MAGISTRATE NORTH

**Ballard, Joseph**
Civil Action No 2:19-cv-00116

**Coffield, Janice**
Civil Action No. 2:19-cv-08505

**Spence, Terry**
Civil Action No 2:19-cv-08148

**Eanni, Richard**
Civil Action No. 2:19-cv-08197

**Wagner, Jacob**
Civil Action No 2:19-cv-08422

**Featherstone, Sean**
Civil Action No. 2:19-cv-08107

**White, Darrell**
Civil Action No 2:19-cv-08125

**Jones, Andrea**
Civil Action No 2:19-cv-08597

**Wilson, Dwana**
Civil Action No 2:19-cv-07976

**Jordan, Anita**
Civil Action No 2:19-cv-08132

**Baugh, Roberta**
Civil Action No. 2:19-cv-03688

**Keller, Fred**
Civil Action No 2:19-cv-08312

**Yarbrough, Daniel**
Civil Action No. 2:19-cv-05281

**Molton, James**
Civil Action No 2:19-cv-08450

**Anderson, Samantha**
Civil Action No. 2:19-cv-03728

**Pollard, Lois**
Civil Action No 2:19-cv-08162

**Brown, Joyce**
Civil Action No. 2:19-cv-04464

**Reed, Melissa**
Civil Action No 21.9-cv-08309

**Neal, Mark**
Civil Action No. 2:19-cv-05269

**Richardson, Acquanetta**
Civil Action No 2:19-cv-08434

**Wetmore, William**
Civil Action No. 2:19-cv-03414

**Smith, Yolanda**
Civil Action No 2:19-cv-08187

**Williams, Patricia**
Civil Action No. 2:19-cv-03431

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR RELIEF FROM ORDER TO SHOW CAUSE**

Defendants hereby respond to the two nearly identical motions filed by the Law Offices of Seaton & Bates, PLLC ("the Seaton firm") (Doc. 17175) and the Law Offices of Sobo & Sobo, LLP ("the Sobo firm") (Doc. 17338), on behalf of seven Seaton clients and 16 Sobo clients (collectively, "Plaintiffs"), which challenge this Court's jurisdiction to enter case management orders and to dismiss certain cases pursuant to the order to show cause (OTSC) process established by CMOs 12, 12A, and 12B. The Court should deny the motions.[*]

\* \* \*

This Court has authority to enter case management orders to manage—and to ensure the orderly and efficient conduct of—this MDL proceeding, which involves thousands of cases. Plaintiffs and their counsel had nearly five months to question the Court's established process, but instead waited to file these motions at the eleventh hour and didn't even appear in court to answer or challenge the Court's OTSC orders, which required Plaintiffs' (and their counsel's) personal appearance. Plaintiffs had every opportunity to protect their rights to proceed with litigation if that was their choice—all they had to do was sign and file a Notice of Intent to Proceed with litigation ("Notice of Intent"), and that would have satisfied the OTSC process. This was not difficult to do, as evidenced by the fact that 43 Seaton clients and 19 Sobo clients filed the Notice of Intent. *See* Decl. of Chanda A. Miller ¶¶ 4–5 (attached hereto as Exh. A). The Court provided notice through *seven orders* over the course of nearly five months that cases would be dismissed if Plaintiffs did not sign a Notice of Intent or show good cause why they did not do so. The Court also provided the Seaton firm and the Sobo firm—and their clients—with an opportunity to appear in court to

---

[*] The Seaton firm's motion (Doc. 17175) purports to be filed on behalf of seven plaintiffs, but two of the plaintiffs named in the caption—Robert Baugh and Daniel Yarbrough—filed Notices of Intent before the October 7, 2019 hearing, so were not subject to dismissal. *See* Exh. A ¶ 4.

2

show good cause why their non-compliance should be excused, scheduling a hearing for October 7, 2019 ("OTSC hearing") and ordering both law firms and their clients to appear. Both the law firms and the clients ignored the Court's orders by neither seeking to be excused from the hearing nor attending, thereby waiving their opportunity to be heard. This Court was well within its authority to adopt its case management orders, including the OTSC process, and to dismiss these cases for non-compliance with the Court's case management orders.

We note, as well, that even in their last-minute motions, Plaintiffs make no attempt to excuse their non-compliance and make no request for additional time to comply. They do not argue hardship or provide any other reason they could not sign the Notice of Intent or otherwise comply as so many other Seaton and Sobo clients—and thousands of plaintiffs, represented by other firms—did. These Plaintiffs and their lawyers violated the Court's orders, plain and simple, and shirked their responsibilities as litigants. They should not now be heard to challenge the Court's well-established authority to manage its docket through case management orders only because they could not (or would not) comply with those orders.

## ARGUMENT

**I.   The Court has authority to enter orders to manage the MDL docket, and the case management orders entered in this litigation are appropriate, fair, and consistent with the common procedures used in other MDLs.**

Plaintiffs seem to believe that because the Court's case management orders reference a proposed settlement, the Court is somehow attempting to compel Plaintiffs to accept the settlement terms. *See, e.g.*, Doc. 17175, at 13–14; Doc. 17338, at 15. The case management orders do nothing of the sort. None of the Court's orders compels Plaintiffs to settle their cases. And Defendants have not requested that the Court do anything (directly or indirectly) to enforce the proposed settlement against Plaintiffs (or any plaintiffs who choose to proceed with their cases). Rather, the Court entered these orders to ensure that the docket accurately reflects plaintiffs who will join the

3

proposed settlement and those who intend to proceed with litigation. The Court is well within its discretion to manage its extensive docket by requiring plaintiffs' counsel to report on the status of their clients' cases and to make a timely election of whether to settle or to proceed under the Court's case management orders.

Plaintiffs also say that because the agreement is not "in the record" or is "contingent," there is no "case or controversy" that would confer this Court with Article III subject matter jurisdiction. *See* Doc. 17175, at 2–4; Doc. 17338, at 2–5; *see also* Doc. 17175, at 18–19 & Doc. 17338, at 20–21 (arguing under Fed. R. Civ. P. 60(b)(4) that the Court's orders are a "judgment [that] is void"). Plaintiffs misunderstand. There is active litigation ongoing based on the complaint that each of these Plaintiffs (and others) filed against the Defendants. The case and controversy is Plaintiffs' active case against Defendants, not the potential settlement.

The Court's docket control orders are plainly *litigation orders* (not settlement enforcement orders) directed at managing the pending litigation. As the Court explained in CMO 12B:

> In order to effectively manage future proceedings in this litigation, the Court needs to obtain an accurate census of those plaintiffs who desire to litigate their cases rather than participate in the settlement. In this regard, the Court needs to distinguish between those plaintiffs who genuinely intend to prosecute their actions from those who are non-responsive and have abandoned their claims. Absent a showing of good cause, the Court will treat plaintiffs who have not complied with CMO 12A—by neither enrolling in the settlement, nor dismissing their claims, nor filing a Notice of Intent to Proceed—as having abandoned their claims.

Moreover, in CMO 11, which is referenced in the Notice of Intent, the Court entered a *litigation* scheduling order that required, among other things, plaintiffs who desire to pursue their cases to preserve and produce medical records; to complete a Plaintiff Fact Sheet and Plaintiff Profile and Consent Form; and to serve an expert report that shows a good-faith basis for the claim that Xarelto caused their alleged injury. Mentioning the pendency of a proposed settlement in the CMOs did not convert these litigation requirements into settlement orders—the references only acknowledge

4

that the litigation is entering a new phase and that, assuming the settlement is ultimately consummated as to those plaintiffs who are settling, the Court needs to devise a litigation plan for the non-settling cases, including (importantly) distinguishing between those plaintiffs with unsettled cases in the MDL who do and don't have an intent to proceed with their filed lawsuits.

These sorts of litigation-management orders are well within a district court's authority, and they are routinely entered by MDL courts and upheld on appeal. District courts, of course, are vested with "certain inherent powers, not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S.Ct. 1178, 1186 (2017) (internal quotations omitted). In addition to those inherent powers to control their dockets, the Federal Rules of Civil Procedure give district courts the power to adopt "special procedures for managing potentially difficult or protracted actions that may involve complex issues" and to "facilitate[e] in other ways the just, speedy, and inexpensive disposition of the action." Fed. R. Civ. P. 16(c)(2). That is especially true for MDL proceedings—given the size and complexity of multi-district litigation, MDL courts have even "greater discretion to organize, coordinate and adjudicate [their] proceedings." *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 496 F.3d 863, 866–68 (8th Cir. 2007).

As this Court previously observed, docket control orders are "routinely used by courts to manage mass tort cases," *In re Vioxx Prod. Liab. Litig.*, 557 F. Supp. 2d 741, 743 (E.D. La. 2008), and the Fifth Circuit has said that MDL courts have "wide discretion" to use them because they "are designed to handle the complex issues and potential burdens on defendants and the court in mass tort litigation," *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000). Indeed, it is common practice for MDL courts to use docket control orders to establish the very sort of OTSC procedure that the Court entered here, where plaintiffs' claims are dismissed if they do not comply

5

with certain procedures adopted to determine whether plaintiffs will enroll in a potential settlement or continue to litigate their claims. *See, e.g.*, *In re Fluoroquinolone*, MDL No. 2642, PTO 18 (D. Minn. Jan. 2, 2019) (Tunheim, J.); *In re Testosterone Replacement Therapy Prods. Liab. Litig.* ("TRT"), MDL No. 2545, CMO 126 (N.D. Ill. June 11, 2018) (Kennelly, J.); *In re Benicar (Olmesartan) Prods. Liab. Litig.*, MDL No. 2606, CMO 39 (D.N.J. June 7, 2018) (Kugler, J.); *In re Am. Med. Sys., Inc. Pelvic Repair Sys. Prods. Liab. Litig.* ("AMS Mesh"), MDL No. 2325, PTO 239 (S.D. W.Va. June 7, 2017) (Goodwin, J.); *In re Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*, MDL No. 2385, CMO 78 (S.D. Ill. May 29, 2014) (Herndon, J.).

Numerous courts of appeals have affirmed dismissals for failure to follow MDL case management orders. The Fifth Circuit affirmed many *Vioxx* orders entered by this Court dismissing certain plaintiffs' cases for failure to comply with case management orders:

- Dismissal for failure to serve a required expert report. *See Schneller v. Merck & Co.*, *Iwobi v. Merck & Co.*, 509 F. App'x 383 (5th Cir. 2010); 452 F. App'x 500 (5th Cir. 2011); *Dier v. Merck & Co.*, 388 F. App'x 391 (5th Cir. 2010) (upholding the *Lone Pine* requirement in *Vioxx* PTO 28, citing *Acuna*).

- Dismissal for failure to comply with discovery orders. *See Chepilko v. Merck & Co.*, 393 F. App'x 242 (5th Cir. 2010); *Bilal v. Merck & Co.*, 499 F. App'x 362 (5th Cir. 2012); 509 F. App'x 383 (5th Cir. 2013).

- Dismissal for failure to disclose a prior bankruptcy claim. *Strujan v. Merck & Co.*, 532 F. App'x 551 (5th Cir. 2013); *see also Weeks v. Merck & Co.*, 412 F. App'x 653 (5th Cir. 2010) (affirming denial of motion to vacate plaintiff's settlement enrollment).

Other Circuits have affirmed similar orders of dismissal for failure to comply with MDL courts' procedures that were adopted, as is the case here, to facilitate the orderly and efficient management of thousands of claims pending on those MDL courts' dockets. *See, e.g.*, *Dzik v. Bayer Corp.*, 846 F.3d 211, 216 (7th Cir. 2017) (YAZ/Yasmin MDL) (affirming MDL court's dismissal for failure to comply with discovery order); *In re Avandia Marketing, Sales Practices & Prods. Liab. Litig.*, 687 F. App'x 210 (3d Cir. 2017) (Avandia MDL) (affirming MDL court's dismissal for failure to

comply with an order requiring future plaintiffs to provide an expert report); *Freeman v. Wyeth*, 764 F.3d 806, 809–10 (8th Cir. 2014) (Hormone Therapy MDL) (affirming MDL court's dismissal of claims for failure to provide medical authorizations); *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 496 F.3d 863, 866–68 (8th Cir. 2007) (implantable defibrillators MDL) (affirming MDL court's dismissal of claims for failure to comply with discovery orders); *In re Phenylpropanolamine Prod. Liab. Litig.*, 460 F.3d 1217, 1226 (9th Cir. 2006) (PPA MDL) (finding no abuse of discretion in MDL court's dismissal of claims for failure to comply with discovery and product-identification CMOs based on factors including "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions").

This Court had the authority to enter case management orders in this MDL and to dismiss Plaintiffs' claims for failure to comply with those orders.

**II. This Court's orders have been imminently fair, and Plaintiffs had an opportunity to—but did not—appear at (or seek to be excused from) the OTSC hearing.**

Plaintiffs' arguments also fail substantively. The case management orders in this litigation are not only consistent with similar orders in other litigation, they also are fair. Over the course of nearly five months, from May 24 through this past week, the Court entered seven orders that lay out in explicit detail the Notice of Intent process. *See* CMO 12 (May 24, 2019); CMO 12A (Aug. 8, 2019); CMO 12B (Aug. 29, 2019); Order to Show Cause for Failure to Comply with CMO 12A (Original List) (Doc. 15416) (Sept. 10, 2019); Order to Show Cause for Failure to Comply with CMO 12A (Supplemental List) (Doc. 16219) (Sept. 20, 2019); First Supplemental Orders to Show Cause for Failure to Comply with CMO 12A (Original and Supplemental Lists) (Docs. 16868 & 16875) (Oct. 2, 2019); Second Supplemental Order to Show Cause Regarding

CMO 12A Non-Compliance (Original and Supplemental Lists) (Doc. 17174) (Oct. 4, 2019); *see also* CMO 11 (Mar. 25, 2019) (setting forth "obligations of plaintiffs who do not participate in the settlement program and plaintiffs who are not eligible to enroll in the settlement program"). Plaintiffs did not have to go looking for the necessary forms—they were attached to the orders themselves, which were available on PACER and on the Court's Xarelto MDL website. And the seven orders also explained that there would be OTSC dismissals for any non-compliance with the Court's established procedures. Plaintiffs had ample time to elect to either settle their cases or declare an intent to further litigate, but they failed to comply with the Court's orders and make any election. Accordingly, dismissal is warranted.

Plaintiffs' assertion (*see* Doc. 17175, at 27–28; Doc. 17338, at 30–32) that they were denied due process—or lacked notice and the opportunity to be heard—is ludicrous, and their failure to avail themselves of the Court-provided opportunities for objection until the very last minute constitutes a waiver anyway. In addition to giving Plaintiffs ample notice of the process, procedures, and deadlines in seven different orders over the course of nearly five months, Plaintiffs had several opportunities to object before these eleventh-hour motions. Plaintiffs could have objected to any of Court's orders to show cause, but they did not. The Court then gave Plaintiffs and both law firms the opportunity to appear; indeed, the Court ordered them to appear. Neither the law firms nor their clients appeared at the hearing, and neither the firms nor the clients sought to be excused from appearing. *See* Exh. A ¶¶ 4–5. The fact that the Seaton and Sobo law firms chose not to appear on behalf of their clients—and the fact that the clients themselves declined to appear—does not mean they lacked the opportunity. The Court's orders also allowed Plaintiffs' counsel to state any reason why a particular plaintiff could not comply with the orders, but Plaintiffs (and their counsel) made no such submission. The two motions at issue here make no

8

attempt to show why these particular Plaintiffs were unable to comply, in contrast to these two firms' other clients and the vast majority of other plaintiffs across the MDL who complied with the Court's orders by either enrolling in the settlement, filing a Notice of Intent, or by voluntarily dismissing without court order. *See id.* The Court is fully justified in dismissing these Plaintiffs' cases.

## CONCLUSION

For all of these reasons, the Court should deny the motions filed by certain plaintiffs represented by the Seaton firm (Doc. 17175) and the Sobo firm (Doc. 17338).

Respectfully submitted,

DRINKER BIDDLE & REATH LLP

By: /s/ *Susan M. Sharko*
Susan M. Sharko
Drinker Biddle & Reath LLP
600 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
susan.sharko@dbr.com

Rodney M. Hudson
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
Telephone: (415) 591-7500
Rodney.hudson@dbr.com

Chanda A. Miller
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2700
Chanda.Miller@dbr.com

ARNOLD & PORTER KAYE SCHOLER LLP

By: /s/ *Steven Glickstein*
Andrew K. Solow
Steven Glickstein
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8485
andrew.solow@apks.com
steven.glickstein@apks.com

William Hoffman
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
william.hoffman@apks.com

BRADLEY ARANT BOULT CUMMINGS LLP

By: */s/ Lindsey C Boney IV*
Lindsey C Boney IV
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place, 1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8914

| | |
|---|---|
| IRWIN FRITCHIE URQUHART & MOORE LLC<br><br>By: /s/ *Kim E. Moore*<br>Kim E. Moore<br>Irwin Fritchie Urquhart & Moore LLC<br>400 Poydras Street, Suite 2700<br>New Orleans, LA 70130<br>Telephone: (504) 310-2100<br>kmoore@irwinllc.com<br><br>*Attorneys for Defendants Janssen Pharmaceuticals, Inc. and Janssen Research & Development, LLC* | lboney@bradley.com<br><br>CHAFFE MCCALL L.L.P.<br>By: /s/ *John F. Olinde*<br>John F. Olinde<br>CHAFFE MCCALL L.L.P.<br>1100 Poydras Street, Suite 2300<br>New Orleans, LA 70163<br>Telephone: (504) 585-7241<br>olinde@chaffe.com<br><br>*Attorneys for Bayer HealthCare Pharmaceuticals Inc. and Bayer Pharma AG* |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 10th day of October 2019, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs by operation of the court's electronic filing system.

/s/      John F. Olinde