```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF LOUISIANA
 2   ******************************************************************

 3   IN RE:  XARELTO (RIVAROXABAN)        Docket No. MDL-2592
     PRODUCTS LIABILITY LITIGATION        Section "L"
 4                                        New Orleans, Louisiana
     THIS DOCUMENT RELATES TO:            Wednesday, March 21, 2018
 5   ALL CASES

 6   ******************************************************************

 7           TRANSCRIPT OF MONTHLY STATUS CONFERENCE PROCEEDINGS
               HEARD BEFORE THE HONORABLE ELDON E. FALLON
 8                    UNITED STATES DISTRICT JUDGE

 9
     APPEARANCES:
10
     FOR THE PLAINTIFFS'
11   LIAISON COUNSEL:                     HERMAN HERMAN & KATZ
                                          BY:  LEONARD A. DAVIS, ESQ.
12                                        820 O'Keefe Ave.
                                          New Orleans, LA 70113
13
     FOR THE DEFENDANTS'
14   LIAISON COUNSEL:                     IRWIN FRITCHIE URQUHART & MOORE
                                          BY:  JAMES B. IRWIN, ESQ.
15                                        400 Poydras St., Suite 2700
                                          New Orleans, LA 70130
16
     FOR THE DEFENDANT BAYER
17   HEALTHCARE PHARMACEUTICALS
     INC. and BAYER PHARMA AG:            KAYE SCHOLER, LLP
18                                        BY:  STEVEN J. GLICKSTEIN, ESQ.
                                          250 West 55th Street
19                                        New York, New York 10019-9710

20   ALSO PRESENT:                        BROWNGREER
                                          BY:  JACOB WOODY
21                                        250 Rockets Way
                                          Richmond, Virginia 23231
22
     Official Court Reporter:             Karen A. Ibos, CCR, RPR, CRR, RMR
23                                        500 Poydras Street, B-275
                                          New Orleans, Louisiana 70130
24                                        (504) 589-7776

25      Proceedings recorded by mechanical stenography, transcript
     produced by computer.
```

P R O C E E D I N G S

(WEDNESDAY, MARCH 21, 2018)

(MONTHLY STATUS CONFERENCE PROCEEDINGS)

(OPEN COURT.)

THE COURT: Be seated, please. Good morning, ladies and gentlemen. Let's call the case, please.

THE DEPUTY CLERK: MDL No. 2592, *in re: Xarelto Products Liability Litigation*.

THE COURT: Counsel, make your appearance, please. Liaison.

MR. DAVIS: Good morning, your Honor. Leonard Davis from the law firm of Herman, Herman, Katz, plaintiffs coliaison counsel.

MR. IRWIN: And Jim Irwin for the defendants, your Honor.

THE COURT: Okay. We're here today for our usual monthly status conference. I've had an opportunity to receive from the parties a proposed agenda. I met with them a moment ago to discuss it, and I'll hear from the parties in accordance with the agenda.

MR. DAVIS: Good morning, your Honor. We have an agenda and a status report, Joint Report No. 27, that was submitted to the Court that lays out the issues for today's conference, and I'll go through them.

As you can see, your Honor, the Court's pretty packed this morning. As you know and as we mentioned to you in the earlier conference, we have a plaintiffs only meeting this

afternoon after the status conference. And we appreciate the Court allowing us to use the courtroom for that meeting, where we will address the Court's most recent orders and the status of the case.

THE COURT: Let me mention that. What I see as a method in these cases, multidistrict litigation cases is that when I get the case I try to establish some infrastructure and then we proceed with the discovery aspect of the case.

As you all know, we pick about 40 cases, which are really the discovery pool. Those cases are discovered and then from those cases, the parties have an opportunity to pick bellwether cases.

The purpose of the bellwether cases, as I see it, is to give the lawyers, as well as the litigants, an opportunity to see the case in action. Those of us who've tried cases know that until you see a trial, you really don't know the full scope of the case. The witnesses that you thought were not going to do well turn out to be the stars of the thing and vice versa.

So after the discovery and after the bellwether cases, the MDL court has done about as much as it can with the litigation, the motions, motion practice, a lot of depositions, and cases are tried. We tried several cases in New Orleans, we tried one in Mississippi, and one was being teed up in Texas, but the law was such that the case did not go forward.

At this point the cases then are being tried at the state level. We've got several cases in the mill to be tried by the state. We've got one in April and May and June. I think there are

```
09:04:13  1   three cases teed up.  But at this point I've done about as much,
09:04:20  2   with the exception of some motions that are substantive motions
09:04:24  3   that I'll be dealing with, but I've done about as much as I can do
09:04:28  4   for the parties to give them an opportunity to see the case in
09:04:32  5   discovery, to see them, to give them an opportunity to see the case
09:04:37  6   tried.
09:04:38  7             So at this point rather than keep the cases and have the
09:04:42  8   MDL become simply a black hole, I think it's appropriate to begin
09:04:46  9   sending them back.
09:04:48 10             Now, I have about 22,000 cases in this district, and I
09:04:54 11   don't think it's helpful for the parties for me to send the entire
09:04:58 12   22,000 back, with the exception of the ones that I'll be trying
09:05:02 13   here.  So we do it in stages.  This is the first stage.  I have the
09:05:08 14   plaintiffs picking 400, the defendants picking 400, and then the
09:05:13 15   Court will pick 400 from various areas.  And then we'll stage those
09:05:21 16   cases to go back.
09:05:23 17             And the reason for the meeting with the plaintiffs'
09:05:26 18   attorneys is to see if you all can coordinate that, because it's
09:05:30 19   important that you take an interest in it, select the cases that
09:05:34 20   need to be tried immediately, those that can be tried later on.
09:05:41 21   You all know that better than anyone else.  So participate in the
09:05:45 22   meetings and give your input because that's very helpful to the
09:05:50 23   Plaintiffs Committee.
09:05:52 24             And also the defendants will have an opportunity to
09:05:56 25   logistically prepare for the onslaught of cases, and that's what
```

```
09:06:01  1   we're doing at this point.
09:06:04  2          MR. DAVIS:  Thank you, your Honor.  And you've touched
09:06:07  3   upon item No. 2, which is Case Management Orders that's in Joint
09:06:11  4   Report No. 27, which speaks about the waves of cases that'll come
09:06:18  5   in to this remand order pursuant to Pre-Trial Order No. 6, and that
09:06:24  6   is what we'll be addressing in this meeting.  And we appreciate the
09:06:27  7   Court.
09:06:28  8          THE COURT:  Does Jake have any input?
09:06:33  9          MR. WOODY:  I have an update.
09:06:34 10          MR. DAVIS:  Jake has an update with respect to Item
09:06:37 11   No. 4, Plaintiff Fact Sheets, and the status of the litigation.
09:06:41 12   And Jake is available.
09:06:42 13          THE COURT:  Why don't you do that.
09:07:01 14          MR. WOODY:  Good morning, your Honor.  Jake Woody from
09:07:04 15   BrownGreer.
09:07:05 16          I have a quick update for you on the status of plaintiff
09:07:07 17   fact sheets in this case.  So far we have 20,625 fact sheets
09:07:12 18   submitted, which is an increase of 331 since our last update at the
09:07:16 19   February status conference; we have another 1,655 in progress,
09:07:21 20   which gives us a total of 22,280 plaintiffs in our database.  There
09:07:27 21   are probably a few more cases filed than that because there's a lag
09:07:30 22   time between the case filing and the plaintiff fact sheet, but we
09:07:34 23   do have 22,280 plaintiffs so far.
09:07:38 24          Our average over the last year has been 475 plaintiff
09:07:42 25   fact sheets submitted a month.  So far in March we have 327, we
```

have another ten days or so left to get up to our average, so I expect that we will. And in February we had 445. But that average is pretty steady. There hasn't been really any changes over the last year.

We have obviously plaintiffs from all 50 states. The top five states are: Texas with 1,705 plaintiffs, Florida with 1,688, California with 1,059, New York with 1,024, and then North Carolina with 1,004. If it's important, we can use the zip code on the plaintiff fact sheet to figure out the district that the plaintiff resides in for purposes of remand.

And I won't go through the whole list, but we do have a number of plaintiffs from all 50 states and territories.

As far as the age information of the plaintiff population: 20 percent are between 60 and 69, 30 percent are between 70 and 79, 26 percent are between 80 and 89; and that's 76 percent of the entire MDL is between 60 and 89. And those numbers are steady. They actually didn't change at all since my last report, despite the fact that we had a few hundred new submissions.

Injury information. The most common alleged injury is gastrointestinal bleeding, 49 percent of all of the plaintiffs alleged that injury; the second most is the "other" category with 21 percent; and after that it drops down steadily. So the most common is the GI bleed.

Indication. The most common indication or reason for

```
09:09:28  1   taking Xarelto is reduction of risk of stroke, that's 53 percent of
09:09:32  2   all plaintiffs list that indication; and then it drops down to
09:09:35  3   treatment of DVT at 16 percent and "other" at 16 percent.  And
09:09:39  4   those numbers, along with the injury information, haven't changed
09:09:42  5   since my last update either.
09:09:44  6             That's my report.  I've put our contact information here
09:09:50  7   for anybody who needs help or needs any assistance with the system.
09:09:53  8   But that's my update for March.
09:09:56  9             THE COURT:  Okay.  Just this observation of the fact
09:10:01 10   sheets.  For those of you who may be visiting for the first time,
09:10:08 11   what we do in this type case -- I don't think interrogatories work
09:10:12 12   in this case.  It's really a feeble discovery device, it's
09:10:18 13   questions asked by the lawyer and generally questions answered by
09:10:21 14   the lawyer, and it just generates a lot of motion practice and it
09:10:26 15   slows the whole thing down.  So we try to meet early on with the
09:10:30 16   parties and have them indicate what information they need to get
09:10:37 17   started with the discovery, and from that input fact sheets are
09:10:43 18   generated and those fact sheets now can be filled out digitally.
09:10:49 19             And the neat thing is that we can search the fact sheets
09:10:52 20   to figure out various categories, as you've seen.  Over the period
09:10:57 21   of time we've refined these categories, but we know the age, we
09:11:02 22   know the indication, we know the injury, and that helps us in
09:11:07 23   deciding and picking the discovery pool.  And then from the
09:11:12 24   discovery pool, we have a large number of cases in the discovery
09:11:15 25   pool to kind of mimic the census of the whole litigation.  And then
```

```
09:11:22   1   from that discovery pool, we try to pick the bellwether cases with
09:11:29   2   some eye toward the various groupings that we've set in place with
09:11:38   3   the fact sheets.  And then we proceed that way.
09:11:42   4            And the same way with picking the cases.  We try to pick
09:11:45   5   the cases both where they are and some attention given to the type
09:11:54   6   of case.
09:11:55   7            One thing that you need to recognize is that this is an
09:11:59   8   older population for this drug.  It doesn't seem like it manifests
09:12:06   9   problems in the young area, so that is to some extent a challenge
09:12:12  10   with loss of wages and loss of future economics.  That's just a
09:12:22  11   fact in those situations.  Not always but at least it is apparent.
09:12:30  12   So in analyzing the cases, you kind of keep that in mind.
09:12:35  13            But we've used Centrality and it looks like it's working
09:12:41  14   for us and been a great help.  So I appreciate it, Jake.
09:12:44  15            MR. WOODY:  Thank you, your Honor.
09:12:46  16            THE COURT:  Okay, Lenny.
09:12:46  17            MR. DAVIS:  And, your Honor, just to follow-up on that.
09:12:53  18   We have throughout this litigation used the information that
09:12:56  19   BrownGreer has provided from fact sheets, on both sides, have used
09:13:02  20   that information and used it to discuss.  And it's even more
09:13:06  21   important probably right now as we work on Pre-Trial Order No. 6,
09:13:11  22   because I remind folks that even though defendants are selecting
09:13:15  23   some cases and plaintiffs are selecting some cases, there are also
09:13:19  24   random selections.  And so the more information that we can get,
09:13:24  25   it's very helpful.
```

```
09:13:25   1              And so I do encourage folks to complete the fact sheet
09:13:30   2    and complete it timely and get that submitted to BrownGreer.  And
09:13:36   3    if there are any questions, Jerry Meunier, myself, Brian Barr, and
09:13:40   4    Andy Birchfield are certainly available and can answer questions if
09:13:45   5    folks have questions.
09:13:51   6              Again, I am going to go back to No. 3, Counsel Contact
09:13:55   7    Information.  Your Honor, we continue to receive those submissions
09:13:59   8    under PTO4A from new lawyers that get in the case, and as we just
09:14:04   9    got in the report from Jake Woody, there are new lawyers that are
09:14:08  10    continuing to come in to the case.  And so I encourage plaintiffs
09:14:12  11    lawyers to complete Pre-Trial Order 4A forms so that they can stay
09:14:17  12    abreast of what's happening in the case.
09:14:19  13              I don't know that there's anything on defendant fact
09:14:23  14    sheets, I don't know if defendants have any comment on that.
09:14:26  15              With respect to Item No. 6, Service of Process, the Court
09:14:36  16    issued an order on March 16 of this year which was due to the
09:14:44  17    backlog of cases in the clerk's office, and that extended the
09:14:49  18    deadline for service of process and allows the plaintiff for the
09:14:55  19    defendant for whom the summons was addressed 60 days from the date
09:14:58  20    on which the Court issues the summons to serve that particular
09:15:02  21    defendant.
09:15:03  22              That extension only applies when the plaintiff presents
09:15:06  23    or has presented the properly addressed summons to the clerk for
09:15:10  24    signature and sealed at the time of filing the complaint.
09:15:14  25              And so I do encourage individuals who are addressing
```

```
09:15:19  1   service to make sure that they comply with what's necessary in
09:15:23  2   order to get service.  And that order was issued for that purpose.
09:15:32  3            Your Honor, the next item is Item No. 9, which talks
09:15:37  4   about Bellwether Cases, and those appeals are in process on each of
09:15:44  5   those cases, and they are pending and we are working on those
09:15:48  6   matters.
09:15:49  7            With respect to Item No. 10, your Honor, there are a
09:15:54  8   number of trials that are set in Pennsylvania.  I've provided the
09:15:59  9   Court with an analysis of the state court matters, and we can make
09:16:05 10   that available if individuals want those statistics.  But there are
09:16:11 11   four trials that are set in Philadelphia, four state court trials
09:16:15 12   which the MDL is assisting counsel in the state court matter
09:16:18 13   through the coordination efforts that your Honor asked us to get
09:16:23 14   involved in.
09:16:25 15            THE COURT:  I've been in touch with the state judges, and
09:16:27 16   I give them whatever forms and whatever opinions that we've
09:16:34 17   generated.  And in many of these cases I've used jury
09:16:41 18   questionnaires, which have been helpful, and they've gotten all of
09:16:46 19   that information.
09:16:49 20            And one of the things we do in these meetings, of course,
09:16:53 21   is to open it to the state courts.  Oftentimes either the judge or
09:16:57 22   the law clerk will monitor our meetings here, as well as other
09:17:02 23   people.  We have several hundred on the line at this time, that's
09:17:05 24   why we go through some of these matters.  Some of the individuals
09:17:10 25   on the line may be there for the first time, so we keep that in
```

1  mind.
2          And of course we have a web site for this case.  Those of
3  you who want to see what's on the web site, you can pull it up.
4  It's accessible by everybody, including litigants, they can see
5  what's going on with their case.  We have a calendar on the web
6  site, they know what's coming up.  I put all of the transcripts of
7  these meetings on the web site and anything else that might be
8  helpful.
9          MR. DAVIS:  Your Honor, the first of the Pennsylvania
10 trials is scheduled to begin on April the 2nd, that's the *Russell*
11 case.  The next trial that's in Pennsylvania is the *Rush* case,
12 which is June the 11th, I believe, 2018.  And then the *Cooney* case
13 is the third one, which is scheduled sometime in August.  And as we
14 hear more from the Pennsylvania courts, we'll report more on the
15 dates of those trials and what's happening.
16         I believe that concludes the report, unless defendants
17 have something to add.
18         MR. IRWIN:  No, thank you, your Honor.  We appreciate
19 Mr. Davis.
20         THE COURT:  Go ahead, Steve.
21         MR. GLICKSTEIN:  One thing, your Honor.  We probably
22 should have put this in the report, but I would just comment that
23 Case Management Order 6 does modify a couple of Pre-Trial Orders,
24 it extends the -- relating to plaintiff fact sheets and defendant
25 fact sheets, it has provisions relating to the 1,200 selected

```
09:18:57   1   cases.
09:18:59   2              And with respect to the order on ex parte contacts with
09:19:02   3   physicians, it extends the record keeping and disclosure
09:19:09   4   requirements for plaintiffs' contacts with those physicians to the
09:19:14   5   1,200 selected cases.
09:19:16   6              THE COURT:  Okay.  And that restricts anybody from
09:19:18   7   contacting a physician other than the plaintiffs and the
09:19:21   8   plaintiffs' lawyers in those particular cases.
09:19:24   9              MR. DAVIS:  And as we get into those cases that are
09:19:27  10   selected, we will be dealing with those issues.
09:19:29  11              THE COURT:  Okay.  All right, folks.  Anything else?
09:19:32  12              MR. DAVIS:  Your Honor, the next conference.
09:19:34  13              THE COURT:  I'm sorry.  The next conference is April 24th
09:19:37  14   at nine o'clock, and the following one is May 25th at nine o'clock.
09:19:43  15   I'll meet with liaison counsel and lead counsel at 8:30 on those
09:19:47  16   dates.
09:19:48  17              Anything else?
09:19:48  18              MR. DAVIS:  No, your Honor, I think that's it.  And
09:19:51  19   again, I request that we only have plaintiffs' counsel in the
09:19:54  20   courtroom afterwards.
09:19:55  21              THE COURT:  Let's do that, we'll only have plaintiffs'
09:19:58  22   counsel.
09:19:59  23              MR. DAVIS:  Thank you, your Honor.
09:20:01  24              MR. IRWIN:  Thank you.
09:20:01  25              THE COURT:  Thank you.  The Court will stand in recess.
```

```
09:20:02   1              THE DEPUTY CLERK:  All rise.
09:20:03   2          (WHEREUPON, THE PROCEEDINGS WERE CONCLUDED.)
           3
           4                         *  *  *  *  *
           5
           6
           7                      REPORTER'S CERTIFICATE
           8
           9        I, Karen A. Ibos, CCR, Official Court Reporter, United
          10   States District Court, Eastern District of Louisiana, do hereby
          11   certify that the foregoing is a true and correct transcript, to the
          12   best of my ability and understanding, from the record of the
          13   proceedings in the above-entitled and numbered matter.
          14
          15
          16                         ___/s/ Karen A. Ibos_____
          17                         Karen A. Ibos, CCR, RPR, CRR, RMR
          18                         Official Court Reporter
          19
          20
          21
          22
          23
          24
          25
```