09:00:10

```
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF LOUISIANA
 2

 3     ************************************************************

       IN RE:  XARELTO (RIVAROXABAN)        Docket No. MDL-2592
 4     PRODUCTS LIABILITY LITIGATION        Section "L"
                                            New Orleans, Louisiana
 5     THIS DOCUMENT RELATES TO:            Tuesday, March 12, 2019
       ALL CASES
 6

 7     ************************************************************

           TRANSCRIPT OF MONTHLY STATUS CONFERENCE AND RULE TO SHOW CAUSE
 8                              PROCEEDINGS
              HEARD BEFORE THE HONORABLE ELDON E. FALLON
 9                     UNITED STATES DISTRICT JUDGE


10

       APPEARANCES:
11
       FOR THE PLAINTIFFS'
12     LIAISON COUNSEL:                     HERMAN HERMAN & KATZ
                                            BY:  LEONARD A. DAVIS, ESQ.
13                                          820 O'Keefe Ave.
                                            New Orleans, LA 70113
14

15     FOR PLAINTIFFS:                      BARON & BUDD
                                            BY:  SINDHU S. DANIEL, ESQ.
16                                          3102 Oak Lawn Ave., Suite 1100
                                            Dallas, TX 75219
17
                                            LEVIN SEDRAN & BERMAN
18                                          BY:  MICHAEL M. WEINKOWITZ, ESQ.
                                            510 Walnut St., Suite 500
19                                          Philadelphia, PA 19106-3697

20
       FOR THE DEFENDANTS:                  IRWIN FRITCHIE URQUHART & MOORE
21                                          BY:  KIM E. MOORE, ESQ.
                                            400 Poydras St., Suite 2700
22                                          New Orleans, LA 70130

23                                          CHAFFE McCALL
                                            BY:  JOHN F. OLINDE, ESQ.
24                                          1100 Poydras St., Suite 2300
                                            New Orleans, LA 70163
25
```

```
 1
 2                                    DRINKER BIDDLE & REATH
                                      BY:  SUSAN M. SHARKO, ESQ.
 3                                    600 Campus Dr.
                                      Florham Park, NJ 07932
 4                                    DRINKER BIDDLE & REATH
                                      BY:  CHANDA A. MILLER, ESQ.
 5                                    One Logan Square, Suite 2000
                                      Philadelphia, PA 19103
 6
 7   ALSO PRESENT:                    THE MULLIGAN LAW FIRM
                                      BY:  CHARLES G. ORR, ESQ.
 8                                    3710 Rawlins St., #901
                                      Dallas, TX 75219
 9
                                      STERN LAW, PLLC
10                                    BY:  KENNETH A. STERN, ESQ.
                                      41850 W. 11 Mile Road, Suite 121
11                                    Novi, MI 48375
12                                    MARC J. BERN & PARTNERS
                                      BY:  GORDON KESSLER, ESQ.
13                                    111 Town Square Place, Suite 1203
                                      Jersey City, NJ 07310
14
                                      SCHNEIDER HAMMERS
15                                    BY:  ROBERT M. HAMMERS, ESQ.
                                      5555 Glenridge Connector, Suite 975
16                                    Atlanta, GA 30342
17                                    THE DRISCOLL FIRM
                                      BY:  KIM MORR, ESQ.
18                                    211 N. Broadway, 40th Floor
                                      St. Louis, MO 63102
19
20
     Official Court Reporter:         Karen A. Ibos, CCR, RPR, CRR, RMR
21                                    500 Poydras Street, B-275
                                      New Orleans, Louisiana 70130
22                                    (504) 589-7776
23
        Proceedings recorded by mechanical stenography, transcript
24   produced by computer.
25
```

1                          I N D E X

2                                              PAGE/LINE:

3

4    MONTHLY STATUS CONFERENCE                           4/6

5

6    RULES TO SHOW CAUSE                               11/11

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>P R O C E E D I N G S</u>

(TUESDAY, MARCH 12, 2019)

(MONTHLY STATUS CONFERENCE AND RULE TO SHOW CAUSE PROCEEDINGS)

09:01:19   (OPEN COURT.)

09:01:19   THE COURT:  Be seated.  Good morning, ladies and
09:01:21   gentlemen.  Let's call the case.

09:01:23   THE DEPUTY CLERK:  MDL No. 2592, *in re:  Xarelto Products*
09:01:27   *Liability Litigation*.

09:01:28   THE COURT:  Counsel make their appearance for the record,
09:01:30   please, liaison.

09:01:32   MR. DAVIS:  Good morning, your Honor.  Leonard Davis
09:01:35   co-plaintiff liaison counsel.

09:01:37   THE COURT:  Okay.

09:01:38   MS. MOORE:  Kim Moore on behalf of Janssen.

09:01:42   MR. OLINDE:  And John Olinde on behalf of the Bayer
09:01:44   defendants.

09:01:46   THE COURT:  I met with lead and liaison counsel a moment
09:01:49   ago to discuss a proposed agenda.  This is our monthly status
09:01:53   conference.  We'll take them in the order that's presented, Lenny.

09:01:57   MR. DAVIS:  Your Honor, there are a few items on the
09:02:04   joint report and I'll go through them, but there's not a whole lot
09:02:09   and I know that there are matters after the status conference that
09:02:12   are set.

09:02:13   THE COURT:  Yes.

09:02:14  1          MR. DAVIS:  With respect to item No. 1, Pre-Trial Order,
09:02:17  2  there were a few new matters that came up since the last report.
09:02:24  3  Pre-Trial Order 10C which deals with service on BACP and Bayer
09:02:30  4  Pharma AG.  Just so that folks are aware that if a motion to
09:02:36  5  dismiss for failure to serve is made, a meet and confer requirement
09:02:43  6  is required unless there is leave of court.  There were some issues
09:02:47  7  with respect to service that had arisen and parties should be aware
09:02:51  8  of that.  And that's Pre-Trial Order 10C.
09:02:56  9          There was also issued Pre-Trial Order 23B which addresses
09:03:01 10  the protocol for telephonic depositions of CMO 6 Detail
09:03:09 11  Representatives, and there were some issues with respect to that.
09:03:12 12  And again, if there are questions regarding scheduling of
09:03:16 13  depositions, Jerry Meunier is the person on the plaintiff end to
09:03:20 14  deal with if there are some issues that arise with respect to that.
09:03:25 15          And then finally, on February 13th this Court reappointed
09:03:29 16  the PSC for an additional term, and we appreciate that, your Honor.
09:03:36 17          THE COURT:  What about Pre-Trial Order 8 is it?
09:03:39 18          MR. DAVIS:  Your Honor, CMO 8 was issued by the Court,
09:03:46 19  and I'll go through a number of the issues in CMO 8.  It was just
09:03:51 20  issued, I believe, this past week, and it is something that all
09:03:56 21  counsel need to be aware of.  It addresses expert trial
09:04:00 22  presentation depositions for both plaintiff and defendant experts,
09:04:04 23  as well as the time for submission of expert reports; and there are
09:04:09 24  certain dates that are set forth in CMO 8 which the parties
09:04:13 25  continue to discuss, plaintiff and defendants executive or lead

09:04:20  1    liaison counsel continue to address those matters.

09:04:23  2         It also sets discovery deadlines for both Wave 1 and

09:04:28  3    Wave 2 cases, and folks should be aware of that.  It addresses the

09:04:33  4    time for selection of Wave 1 and Wave 2 remand cases, and that's

09:04:38  5    continuing to be discussed.  It addresses Wave 3 selection for

09:04:45  6    remand.

09:04:47  7         It also introduces some new matters that people need to

09:04:51  8    be aware of, specifically the plaintiff profile and consent form is

09:04:56  9    a new requirement for Wave 3 cases and those cases that are filed

09:05:03 10    after the date of the order, which was March the 7th of 2019.  And

09:05:11 11    important to note is that this will also, down the road, be a

09:05:14 12    requirement in other cases it's anticipated.

09:05:18 13         CMO 8 also addresses a short form plaintiff fact sheet,

09:05:23 14    which is a new requirement for Wave 3 cases.  And a short form

09:05:29 15    defendant fact sheet which is to be completed, and it changes what

09:05:35 16    previously had been provided with respect to that.

09:05:37 17         Ultimately, what's contemplated under CMO 8 is that it's

09:05:42 18    expected to be extended to previously filed and transferred cases.

09:05:47 19    So it is important that individuals be aware of CMO 8 and they look

09:05:52 20    at that and pay attention to it.

09:05:54 21         THE COURT:  So it will be applicable to all of the cases?

09:05:58 22         MR. DAVIS:  That's what's anticipated, your Honor.  And

09:06:01 23    so I do encourage individuals to look closely at CMO 8, and in

09:06:07 24    particular for those who are in the wave process right now.

09:06:11 25         THE COURT:  What we've found in cases of this sort is

09:06:14  1   that oftentimes the profile forms need to be updated, just as

09:06:18  2   interrogatories occasionally have to be updated.  And at a

09:06:23  3   particular point in the litigation the parties could or should or

09:06:29  4   do have information to answer those provisions.  Early on they may

09:06:36  5   not, but now they should and, therefore, those profile forms will

09:06:43  6   have to be updated.  Okay.

09:06:46  7          MR. DAVIS:  Your Honor, I know that BrownGreer provided a

09:06:48  8   report.

09:06:49  9          THE COURT:  Yes.  I received a report from Jake Woody,

09:06:55 10   who was not able to be with us today.  It's just basically the fact

09:07:01 11   sheets submitted 23,011 and the fact sheets in progress are 1,289.

09:07:11 12   The total registered plaintiffs in the case is 24,300.  Of

09:07:18 13   particular note is that the numbers that came in this month are

09:07:28 14   considerably down, it's now 69 cases, whereas at the peak of the

09:07:33 15   litigation we received 590 in a month.  The average is about two to

09:07:42 16   300 a month.  So this month it was 69, so I think it's fair to say

09:07:47 17   that the case is pretty much solidified now.  We may have some

09:07:56 18   additional but it's not going to be a lot.  It looks like that the

09:07:59 19   census of the litigation will top out around 24,000, maybe

09:08:05 20   25,000 cases.  But they're down substantially this month.  That's

09:08:08 21   his report.

09:08:09 22          MR. DAVIS:  Your Honor, we continue to work on the wave

09:08:12 23   remand workups.  We had a meeting of plaintiffs' counsel yesterday,

09:08:19 24   and I encourage if any people have questions regarding the wave

09:08:24 25   process to reach out and we can try to answer those questions.  But

09:08:29   1   that is moving along and we continue to work on that.

09:08:32   2          With respect to Item 9 in the report, with respect to the

09:08:41   3   appeals, briefs have been filed with the U.S. Fifth Circuit and the

09:08:46   4   briefing is now complete, that's since the last report.

09:08:52   5          THE COURT:  And the briefing in the appeals are with

09:08:55   6   regard to the cases that have been tried?

09:08:57   7          MR. DAVIS:  Correct.  Correct.

09:08:59   8          With respect to State/Federal coordination, the briefing

09:09:07   9   in Philadelphia is due -- and I know Mike Weinkowitz is here if

09:09:12  10   your Honor has questions regarding the Philadelphia matter -- but

09:09:15  11   the briefing is due April the 10th, 2019, in the *Russell* appeal.

09:09:22  12   And the *Rush* case is scheduled for trial I believe it's May the

09:09:29  13   3rd, and then the *Lowe* case is scheduled October the 2nd of this

09:09:37  14   year.

09:09:38  15          THE COURT:  Mike, do you have anything on that?

09:09:41  16          MR. WEINKOWITZ:  Your Honor, for the *Hartman* case, the

09:09:43  17   first trial, we're just waiting for Judge Erdos to write his

09:09:48  18   opinion.

09:09:48  19          THE COURT:  And when is that?

09:09:51  20          MR. WEINKOWITZ:  At any time.  Once he does, that starts

09:09:53  21   the briefing process.  The reason we have a date in the *Russell*

09:09:56  22   case is because we received his opinion of the *Russell* case.

09:09:59  23          THE COURT:  And how many cases are y'all working up at

09:10:03  24   this point in the state?

09:10:04  25          MR. WEINKOWITZ:  We have worked up in the first 50 cases

09:10:07 1   and then we have a trial pool, and Lenny just gave you the dates

09:10:11 2   for the trials.  We have trials May 2nd, October 21st,

09:10:16 3   January 20th, and then the last trial case will be set for March of

09:10:20 4   2020.

09:10:21 5         THE COURT:  Okay.  I've been working closely with

09:10:25 6   Judge New, and he is very, very helpful to us in this particular

09:10:29 7   case, he's done a fantastic job over there.  Okay.

09:10:33 8         MR. DAVIS:  Other than that, your Honor, I believe there

09:10:35 9   are matters after the status conference that need to be addressed.

09:10:40 10  And we have to address the next status conference.

09:10:43 11        THE COURT:  Susan, do you have anything?

09:10:45 12        MS. SHARKO:  Just an update on the wave cases.  Wave 1,

09:10:51 13  we now have 283 cases dismissed, that's 47.2 percent of the pool.

09:10:58 14  The docket has really been cleaned up thanks to Mr. Birchfield's

09:11:03 15  help in particular.  We are down to four cases that are still

09:11:07 16  tolled because of PFS issues, four cases with service issues.

09:11:12 17        In Wave 2, we have 243 dismissed, that's 40.6 percent of

09:11:19 18  the pool; 70 are on discovery tolling because of issues.  Eighteen

09:11:26 19  of those belong to one individual law firm, and I've discussed that

09:11:31 20  with Mr. Birchfield.  And then we have two jurisdiction issues, 12

09:11:36 21  service issues.

09:11:37 22        So that's the report on the waves, Wave 1 and 2.

09:11:42 23        I have a number of corrections as people cured their

09:11:46 24  issues on the cases listed in the status report for the non-CMO

09:11:52 25  cases, I don't know if you want me to read those into the record?

09:11:57 1        THE COURT:  Sure.

09:11:58 2        MS. SHARKO:  On the orders to show cause, Overdue PFS,

09:12:10 3   there's 32 cases listed, 13 of those plaintiffs have served a PFS:

09:12:17 4   No. 1, Anzalone; No. 3, Barker; No. 6, Bratcher; No. 10, Campbell;

09:12:30 5   No. 11, Fanchier; No. 14, Gueli; No. 15, Hamade; No. 18, Kearney;

09:12:45 6   No. 20, Manus; No. 28, Sias; No. 29, Smith, Hershal; No. 30,

09:12:58 7   Taylor; No. 32, Yelton.

09:13:01 8        Eight plaintiffs have agreed to dismiss their cases and

09:13:05 9   will be filing steps:  No. 4, Bass; No. 5, Bishop; No. 16, Harper;

09:13:11 10  No. 19, Lumpkin; No. 21, May; No. 22, McAlister; No. 25, Morris;

09:13:19 11  No. 27, Russell.  And so there are 11 cases left for the hearing.

09:13:27 12       On the Core Deficient PFS's, there were 32 cases listed

09:13:32 13  at page 65; eight have been resolved, the discovery issues have

09:13:39 14  been resolved:  No. 2, Boudreaux; No. 4, Collins; No. 6, Emberton;

09:13:50 15  No. 10, Herring; No. 12, Huacoto; 14, James; 23, Newer; 32, Wilson.

09:14:04 16  One plaintiff we'll be dismissing, No. 5, Daniels.

09:14:10 17       Then on the CMO 6 cases.  A number of those have been

09:14:15 18  resolved and the rest Ms. Miller will deal with in argument.

09:14:24 19       On the Overdue PFS's at page 11, it's still the same 57

09:14:30 20  first time and it's still the same 79 second time at page 15.  And

09:14:37 21  likewise, the Core Deficient PFS's - First Time Listed, there's 71

09:14:43 22  cases at page 20, they're still the same; and there's 101 second

09:14:47 23  time cases listed at page 35, and those are still the same.

09:14:52 24       THE COURT:  Okay.

09:14:53 25       MS. SHARKO:  Thank you.

09:14:54  1          THE COURT:  Okay.  Anything else?  The next meeting will

09:14:57  2   be April the 11th, and that meeting will be at two o'clock in the

09:15:03  3   afternoon.  I'll meet with the lead and liaison at 1:30.  And the

09:15:10  4   next one is May 16th and that's at 9 o'clock, and I'll meet with

09:15:16  5   liaison and lead at 8:30.

09:15:19  6          Anything else?  We'll take a couple of minute break and

09:15:22  7   we'll come back.  Court will stand in recess.

09:15:25  8          THE DEPUTY CLERK:  All rise.

09:15:27  9      (WHEREUPON, A RECESS WAS TAKEN.)

09:20:03 10      (OPEN COURT.)

09:20:04 11          THE COURT:  Be seated.  We have a number of motions

09:20:06 12   regarding cases in connection with the fact sheets, either failure

09:20:11 13   to file them or not properly answer them or not answered at all.

09:20:18 14   So we sent out a number of rules to show cause why the case should

09:20:24 15   not be dismissed.  I'll hear from counsel at this time.

09:20:28 16          MS. DANIEL:  Good morning, your Honor.  Sindhu Daniel for

09:20:31 17   the plaintiffs.

09:20:31 18          MS. MILLER:  Good morning, your Honor.  Chanda Miller,

09:20:33 19   I'll be speaking on behalf of the defendants.

09:20:36 20          MS. DANIEL:  Your Honor, we'll take the cases semi in the

09:20:42 21   order in which they were listed in the joint agenda.  We tried to

09:20:45 22   group them as much as we could.

09:20:47 23          THE COURT:  Okay.

09:20:49 24          MS. DANIEL:  Your Honor, the first for CMO 6 cases.

09:20:52 25   There are 17 cases that we are going to discuss today.  There was a

09:20:55  1   case James Embry for which a rec. doc. was not entered yet, so the

09:21:01  2   defendant -- we have agreed to pass that until the next hearing.

09:21:04  3          MS. MILLER:  Alternatively, your Honor, we understand

09:21:06  4   from Plaintiffs' counsel that they're not opposing our motion.  If

09:21:09  5   your Honor would prefer us to submit proposed orders to rule on the

09:21:13  6   papers, we can do that as well.

09:21:14  7          THE COURT:  Either way.

09:21:15  8          MS. DANIEL:  It's really up to your Honor.

09:21:18  9          THE COURT:  Let's do it that way, we'll do it on the

09:21:21  10  papers.

09:21:21  11         MS. MILLER:  Okay.  We'll do that, your Honor.

09:21:21  12         MS. DANIEL:  Thank you, your Honor.

09:21:22  13         On the first case, your Honor, Document 12580 is the case

09:21:26  14  of Reuben Cox.  The defendant has already agreed to pass this until

09:21:31  15  the next hearing.  Counsel is pursuing probate in this matter and

09:21:35  16  has encountered delays.  They also filed a response, which is Rec.

09:21:40  17  Doc. 12796 confirming the same.

09:21:43  18         MS. MILLER:  Yes, your Honor.  And this case was

09:21:45  19  originally heard last fall, we agreed to pass it or they were

09:21:50  20  working on setting up a guardianship.  In the interim Mr. Cox has

09:21:54  21  passed away and state law requires 60 days to pass before a probate

09:21:59  22  can be set up.  So under those circumstances, defendants agree this

09:22:02  23  should be passed until the April hearing.

09:22:03  24         THE COURT:  Okay.  Let's pass it.

09:22:05  25         MS. DANIEL:  Thank you, your Honor.  The next Document

09:22:07   1   12583, which is Dorothy Lamar; Document 12584, which is Jacqueline

09:22:14   2   Matthews; Document 12646, which is Robert Sladick; through no fault

09:22:20   3   of their own counsel has done everything in their power to cure

09:22:24   4   these fact sheets and has kept in contact with the plaintiffs as

09:22:27   5   they are able, but have been unable to cure the fact sheets

09:22:32   6   pursuant to CMO 6 and have no basis to oppose the motions.

09:22:36   7          THE COURT:  Okay.  I'll grant the motion to dismiss with

09:22:39   8   prejudice.

09:22:39   9          MS. DANIEL:  Thank you, your Honor.

09:22:40  10          MS. MILLER:  Thank you, your Honor.

09:22:42  11          MS. DANIEL:  The next case is Document 12693, which is

09:22:46  12   the estate of Shirley Griswold; 12581 in the case of Piper LeGrand;

09:22:53  13   Document 12679, Nellie Pitts; Document 12582, Doris Wallace; 12647,

09:23:06  14   Billy Owens; and 12694, Lena Giles; your Honor, by agreement those

09:23:13  15   cases are cured.

09:23:14  16          MS. MILLER:  Yes, your Honor.  For those six cases the

09:23:16  17   plaintiffs have addressed the deficiencies that were raised in the

09:23:19  18   motion.  I just, so that there's no surprise, want to point out for

09:23:24  19   the record that in Giles, which is Doc. 12694; Owens, which is

09:23:30  20   Document 12647; and the estate of Griswold, Document 12693, the

09:23:37  21   defendants received documents late last night that addressed the

09:23:40  22   issues raised in the motion.  Those documents did identify new

09:23:45  23   deficiencies, but as they were not raised in defendant's motion,

09:23:49  24   we've agreed that for purposes of today's hearing the cases can

09:23:54  25   move along and we'll work with plaintiffs to address the new

09:23:56  1    deficiencies.

09:23:56  2             THE COURT:  Okay.

09:23:57  3             MS. DANIEL:  Thank you, your Honor.  Document 12667 is

09:24:00  4    the case of Anita Brown; Document 12695, which is Kathleen Donovan,

09:24:07  5    case on behalf of her deceased husband John Donovan; Document 12668

09:24:13  6    is the case of Ronald Grignol; and Document 12643 is the case of

09:24:18  7    Randall Rager.  These cases have been previously dismissed.

09:24:24  8             Your Honor, the next case Document 12665, this is the

09:24:29  9    Gary Hellmer case.  This is by the Mulligan Law Firm.  This is an

09:24:35 10    issue that we will be bringing in front of the Court, your Honor.

09:24:38 11    It's in regards to a declaration.  Chip, are you on the line?  Did

09:24:43 12    you want to discuss it first?  Chip?

09:24:59 13             MR. ORR:  Oh, I'm sorry, I had my phone on mute.  This is

09:24:59 14    Charles Orr, Mulligan Law Firm.  Sorry about that.

09:25:02 15             MS. DANIEL:  That's all right.  You can go ahead.

09:25:05 16             MR. ORR:  Your Honor, this is a case where Mr. Hellmer

09:25:08 17    has been very responsive and we had a series of deficiencies for

09:25:13 18    failure to provide addresses.  Those arose through what I would

09:25:19 19    best characterize as a snafu.  When we print out a PFS from MDL

09:25:27 20    Centrality, it omits some of the information that needs to be input

09:25:31 21    into the PFS.  We had submitted Mr. Hellmer's PFS originally when

09:25:37 22    only Section 1 needed to be completed, but Mr. Hellmer had provided

09:25:41 23    us with information to answer the entire PFS.  So when he was

09:25:45 24    selected as a CMO 6 case, we went ahead and put all of the

09:25:49 25    information he had provided us originally on to Centrality, printed

09:25:54  1    out the PFS, sent it to him to attest that it was accurate still,

09:26:01  2    and he provided us some minor changes and provided us with a new

09:26:06  3    signed declaration.

09:26:08  4           We uploaded that new PFS in a timely fashion, and just

09:26:14  5    because of the way that the PFS printed from Centrality, we had

09:26:20  6    failed to get some addresses put onto the PFS and a couple of

09:26:24  7    provider names.  It looks like there's lot of deficiencies, but

09:26:29  8    they were really all of a similar kind and they all arose from that

09:26:32  9    type of issue.  So we were able to put in many of the addresses

09:26:37 10    from information we already had from Mr. Hellmer.  Others we had to

09:26:42 11    contact him and get.

09:26:44 12           So when it came time to answer the deficiencies, we

09:26:48 13    reached out to Mr. Hellmer.  We had an undated declaration already

09:26:52 14    from his first amended PFS, and we asked him for his permission to

09:27:03 15    date the declarations for the response to the deficiencies since we

09:27:06 16    had secured his help in curing some of the deficiencies.  He gave

09:27:10 17    us his express permission to date his declaration and submit it

09:27:14 18    with the cures to those deficiencies.  And now the defendants are

09:27:19 19    asserting that there's something amiss with that.

09:27:22 20           MS. MILLER:  Your Honor, the addresses that Mr. Orr was

09:27:27 21    speaking of were addresses and names associated with health care

09:27:30 22    providers who treated the plaintiff, which is why we need those so

09:27:35 23    that we can collect medical records.

09:27:37 24           The purposes of, as your Honor knows, the PFS is in lieu

09:27:41 25    of interrogatories.  The purpose of the declaration that

09:27:43 1   accompanies the PFS is for the plaintiff to confirm that he

09:27:49 2   reviewed it and declares under penalty of perjury that everything

09:27:52 3   in the PFS is accurate.

09:27:56 4         We have always asked that every time an amended PFS is

09:27:59 5   submitted, that a new declaration be signed by the plaintiff

09:28:01 6   confirming that he did, in fact, review that PFS and can, in fact,

09:28:05 7   confirm that it is accurate.  We have -- and that is something that

09:28:12 8   has been before your Honor before and we have all agreed.  I think

09:28:13 9   under the circumstances here, we understand that the plaintiff has

09:28:17 10  been actively working with counsel to address the deficiencies.  We

09:28:21 11  believe that what we've done in the past, which is giving them ten

09:28:25 12  days to submit a new declaration, would work here.

09:28:28 13        But we do need something from the plaintiff that confirms

09:28:31 14  in writing that he did in fact review these newly identified

09:28:37 15  providers and where they're from to confirm that they're accurate.

09:28:40 16  So ten days from the defense perspective would be sufficient.

09:28:45 17        MS. DANIEL:  Your Honor, if I could.  This is an issue

09:28:49 18  that is going to repeatedly come up throughout the hearing today.

09:28:51 19  It is a copy of the declaration that is signed by the plaintiff,

09:28:54 20  and we have the client's permission.  As is done in many offices

09:29:00 21  across the country, it is Fed-Exed back and forth.  Any change that

09:29:04 22  is made, any change that is made to a fact sheet creates an amended

09:29:08 23  fact sheet, even if you change the date from 2019 to 2018.

09:29:12 24        And so if we have the express permission of the plaintiff

09:29:16 25  and we are re-dating it for that express -- and we know the client,

09:29:21  1   the defendant certainly during the depositions that are taking

09:29:25  2   place can certainly ask the client, the plaintiff if they agreed to

09:29:28  3   this change or if this is their signature so they certainly will

09:29:31  4   have the opportunity.

09:29:32  5          In addition, your Honor, the defendant asks us all the

09:29:35  6   time, plaintiffs, to re-date an authorization to capture protected

09:29:40  7   health information, and they don't mind us putting a date in at

09:29:45  8   that time.  So we think -- and, your Honor, in interrogatories, I

09:29:48  9   as the Plaintiffs' counsel would be signing this on behalf of the

09:29:52  10  plaintiff.  So we do think that this is becoming more of an

09:29:55  11  administrative issue.

09:29:56  12         If there is some belief that counsel is not getting

09:29:59  13  permission or not seeking permission from their clients, we think

09:30:02  14  it's something that the defendant can bring up in court on an

09:30:05  15  individual basis.  We just think it's becoming much more

09:30:08  16  administrative necessarily than it needs to be, because the

09:30:11  17  defendant is now saying it's a copy of a declaration that is

09:30:14  18  correctly and timely signed.

09:30:16  19         MS. MILLER:  If I could just speak to a couple of things,

09:30:19  20  your Honor.  First, interrogatories do, in fact, have to be

09:30:21  21  verified by the plaintiff.

09:30:24  22         Secondly, with respect to the HIPAA authorizations, I

09:30:27  23  agree that there is a process in place where those can be re-dated.

09:30:32  24  The big distinction is that the HIPAA authorizations got to the

09:30:35  25  release of information, they don't go to confirming the accuracy

09:30:38 1    and veracity of newly identified information.

09:30:41 2           Third, there have been circumstances under which an

09:30:44 3    amended PFS is purely administrative due to a date change.  In

09:30:48 4    those circumstances, we are more than willing to work with

09:30:52 5    plaintiffs' counsel to determine whether an amended declaration is,

09:30:55 6    in fact, necessary.  But where there are substantive changes, we do

09:31:00 7    need a signed declaration from the plaintiff confirming the

09:31:03 8    veracity and accuracy.  If the plaintiff is giving someone else

09:31:07 9    permission to sign on his behalf, then you need a power of attorney

09:31:10 10   or something else confirming that the plaintiff has, in fact, given

09:31:14 11   that express permission.

09:31:15 12          In those circumstances, we don't have that.  Here it's

09:31:19 13   permission to sign the Plaintiff's name that he's verified under

09:31:23 14   penalty of perjury, we would need more than an oral statement that

09:31:27 15   the plaintiff has, in fact, given that permission.

09:31:30 16          THE COURT:  Let's see if we can figure out a method of

09:31:33 17   handling this.  One way of doing it, Chip, is to simply write the

09:31:39 18   plaintiff saying, "It's my understanding from talking with you that

09:31:43 19   I have the authority to sign your name, that you verify that the

09:31:49 20   information is true and correct.  Sign this document and send it

09:31:55 21   back to me," meaning a letter.  I am okay with a copy as long as

09:31:59 22   there's some sort of something so that you don't get in a position

09:32:03 23   where the client says I didn't tell my lawyer that, I didn't give

09:32:07 24   him authority for it.  I don't expect that this client will do

09:32:11 25   that, but you know and I know that that is potentially happening,

09:32:16  1  particularly where clients go to other lawyers later on in the

09:32:20  2  process.

09:32:20  3        So I don't have any problem with the document, but you

09:32:26  4  ought to have something confirming, you write a letter to the

09:32:32  5  client confirming that, let the client write on the bottom of your

09:32:36  6  letter, let him sign that, and then you'll have something in

09:32:47  7  writing and we'll have everybody satisfied with that hopefully.

09:32:50  8        MR. ORR:  Your Honor, Charles Orr.  We do that with HIPAA

09:32:54  9  authorizations and other authorizations.  We do collect from our

09:32:59 10  clients a written permission to transfer their signature.  We're

09:33:06 11  using PDF's and so the technology enables us to cut and paste

09:33:12 12  signatures from that document that we collect from our clients on

09:33:15 13  to the HIPAA forms.  And in the CMO 6 process, in particular,

09:33:18 14  that's been very helpful because we receive frequent requests from

09:33:23 15  defendants to provide provider specific HIPPA forms, so we're happy

09:33:30 16  to do that.

09:33:31 17        We can certainly do the same thing with our declarations

09:33:33 18  for PFS's.  It's not something that my firm has done in the past,

09:33:39 19  but it makes sense to do it and we're happy to do that.

09:33:43 20        I do want to point out to the Court that this is going to

09:33:46 21  be a recurring issue.  I've counted the number of Core Deficient

09:33:51 22  PFS - First Time Listed cases where the sole act alleged deficiency

09:33:56 23  is failure to provide new declaration for amended plaintiff fact

09:34:00 24  sheet.  Of the 71 cases listed from page 20 to page 35 of the

09:34:05 25  status conference report, 22 cases in total have just that alleged

09:34:11 1   deficiency.  That's fully 31 percent of that 71 cases.

09:34:15 2          The second time listed cases, which go from page 35 to

09:34:20 3   page 62 of those 101, 22 of those cases, the only alleged

09:34:25 4   deficiency is failure to provide a new declaration for amended

09:34:29 5   plaintiff fact sheet submission.

09:34:31 6          I would propose to your Honor that we do something like

09:34:33 7   what we've done in *Taxotere* and the PFS process in *Taxotere*.  The

09:34:39 8   case management order, it's actually a PTO that applies to PFS's,

09:34:44 9   has a provision that amendments or supplements to the PFS may be

09:34:51 10  verified by signature of the Plaintiffs' attorney, so long as the

09:34:54 11  original PFS was verified by the plaintiff.  And I think that

09:34:58 12  process makes a lot of sense because most of the time I am curing

09:35:03 13  deficiencies without any input from my client.  All that's needed

09:35:07 14  is a date that I am going to get from records that I've already

09:35:10 15  produced to the defendant.

09:35:11 16         Having the client do a new declaration under those

09:35:16 17  circumstances is just a hoop.

09:35:16 18         THE COURT:  I agree with that.  We ought to get something

09:35:18 19  in writing from the client though, Chip, to give you that authority

09:35:23 20  just like you do with HIPAA.

09:35:26 21         MS. MILLER:  Your Honor, we would need to see that.  And

09:35:28 22  I just point out that this is not the motion which we're arguing

09:35:32 23  the non-CMO 6 cases.  But that non-CMO 6 cases, the only

09:35:37 24  information they have provided in the PFS are proof that they used

09:35:41 25  the product, proof that they were injured while using the product;

09:35:44  1   and if they are filling out the PFS on behalf of someone who is

09:35:48  2   deceased or incapacitated, their authority to do that.  Those are

09:35:52  3   sort of the three big issues that plaintiff really does, in fact,

09:35:56  4   need to verify under penalty of perjury.

09:35:58  5         The other thing I'd point out is CMO 8 and the new

09:36:02  6   consent forms have different provisions regarding the signatures

09:36:06  7   that are required, those have already been fully negotiated between

09:36:10  8   the parties and approved by the Court.  So under the new forms

09:36:14  9   there will be a different process in place.

09:36:18 10         MS. DANIEL:  Your Honor, if we could just maybe table

09:36:20 11   this, and we could meet and confer with the defendants to try to

09:36:22 12   come up with an easier process.

09:36:25 13         THE COURT:  Right.  Let's do that.  Get Chip's input,

09:36:28 14   too, on that, he's done it a bit.  What I am trying to do is to

09:36:33 15   figure out something that's practical.  We're getting bogged down

09:36:35 16   with issues that really don't deserve that kind of treatment.  I

09:36:39 17   think that the defendant ought to have something in writing

09:36:45 18   verified by the client.  The problem is that maybe the way of doing

09:36:50 19   that is to get the plaintiff to say I authorize my attorney to sign

09:36:56 20   something and then the attorney signs it under that letter and

09:37:07 21   we've got both the plaintiff and the attorney who has signed.

09:37:12 22   We've got to come up with some solution.

09:37:15 23         MS. MILLER:  That's fine, your Honor.  We can meet and

09:37:17 24   confer for the cases that won't be subject at least now to the new

09:37:21 25   forms under CMO 8.

09:37:23  1          MS. DANIEL:  Thank you, your Honor.  We'll move on.

09:37:25  2          Your Honor, Document 12644, is the case of Shirley

09:37:28  3  Johnson.  An order has been filed in the court substituting -- no,

09:37:32  4  I think it's actually substituting the plaintiff because they were

09:37:36  5  in the process of getting letters of administration, and the

09:37:40  6  defendant has already agreed to pass this until the next hearing.

09:37:44  7          MS. MILLER:  That's correct, your Honor.  We are still

09:37:46  8  unable to collect some critical records due to missing estate

09:37:50  9  documents.  We understand from Plaintiffs' counsel that they have

09:37:53 10  now just started working on them, and so we've agreed to pass this

09:37:57 11  to the next hearing.

09:37:59 12          THE COURT:  Okay.

09:37:59 13          MS. DANIEL:  Document 12664 is the case of Christopher

09:38:02 14  Worthington, your Honor.  This was amended again this morning.  I

09:38:07 15  haven't had a chance to check my e-mail to see if the defendant now

09:38:12 16  agrees.  There was just Section 3B that was missing on the latest

09:38:17 17  deficiency.

09:38:19 18          MS. MILLER:  Your Honor, we received notice less than

09:38:22 19  hour before the hearing started, so we will need the opportunity to

09:38:26 20  review.

09:38:26 21          THE COURT:  Sure.

09:38:26 22          MS. MILLER:  If they haven't, in fact, addressed the

09:38:29 23  issues raised in the motion, we would suggest ten days to do so.

09:38:32 24          THE COURT:  Okay.

09:38:33 25          MS. DANIEL:  Thank you, your Honor.

09:38:35 1          Your Honor, that is the end of the CMO 6 cases.  We'll

09:38:40 2   now move on to the non-CMO 6 cases.

09:38:41 3          THE COURT:  Okay.

09:38:43 4          MS. DANIEL:  The first document is 12586.  There are

09:38:45 5   three cases listed on this order that were held over from previous

09:38:49 6   hearings.  The first one is a pro se plaintiff, your Honor,

09:38:52 7   Jennifer Christie.  Ms. Christie, are you on the line?

09:39:01 8          THE COURT:  Apparently not.

09:39:02 9          MS. DANIEL:  Your Honor, pro se plaintiff's not on the

09:39:04 10  line.  I have e-mailed her on numerous occasions.

09:39:08 11         MS. MILLER:  This is at least the second hearing that

09:39:11 12  this case has been heard, and the PFS was due in March of 2018 so

09:39:17 13  at this point it's a year late.  We would ask that it be dismissed

09:39:21 14  with prejudice.

09:39:22 15         THE COURT:  I am going to have to dismiss this case with

09:39:24 16  prejudice.  We've given the plaintiff every opportunity to respond

09:39:27 17  and they haven't done so.  Even an opportunity to come on the line

09:39:33 18  and tell us on the phone, but she's not done so.  So I am going to

09:39:38 19  dismiss it with prejudice.

09:39:40 20         MS. DANIEL:  Thank you, your Honor.

09:39:41 21         For Nellie Harden, your Honor, this case was previously

09:39:45 22  dismissed.

09:39:45 23         And in regards to the last case on this document, Dorothy

09:39:49 24  Reese, is counsel on the line to address the court, the Stern Law

09:39:53 25  Firm?

09:39:54  1          MR. STERN:  Yes.  Good morning, your Honor.  This is

09:40:00  2    attorney Ken Stern.

09:40:01  3          THE COURT:  Go ahead, Ken.

09:40:03  4          MR. STERN:  Judge, I regret to report to the Court this

09:40:05  5    is one of those painful circumstances where we had not heard from

09:40:11  6    the decedent's family for several months.  And lo and behold,

09:40:14  7    within the past three days, quite literally, I was contacted by the

09:40:19  8    decedent's daughter.  Her name is Sheryl Parker.  Ms. Parker

09:40:23  9    informs me that she has been to the probate court, she has

09:40:29 10    submitted to me letters of administration, and she appears to be in

09:40:32 11    the process of securing appropriate authorization to permit her to

09:40:36 12    represent her mother's estate.

09:40:40 13          I am well aware that this matter has lingered for a

09:40:43 14    substantial period of time.  I can offer no legitimate reason for

09:40:47 15    the delay.  On the other hand, I am, as representative here,

09:40:53 16    feeling more compelled to request that she be given an additional

09:40:57 17    period of time to secure the appropriate letters of administration

09:41:01 18    and authorization to represent her mother's estate.  Failing

09:41:07 19    that --

09:41:07 20          THE COURT:  How long do you need, Ken?

09:41:09 21          MR. STERN:  I would request 60 to 90 days, Judge.  If it

09:41:13 22    doesn't happen within that period of time, I would totally

09:41:15 23    understand why the case should be dismissed.

09:41:17 24          THE COURT:  Ninety days is too long.

09:41:19 25          MS. MILLER:  It is, your Honor.  If I could provide some

09:41:19  1    background?

09:41:19  2              THE COURT:  Sure.

09:41:22  3              MS. MILLER:  Ms. Reese, the alleged Xarelto user, passed

09:41:23  4    away on July 23rd, 2017; so at this point, more than 18 months ago.

09:41:29  5    What defendants are missing most notably is, one, there is no

09:41:33  6    documentation, no medical record to show that Ms. Reese actually

09:41:37  7    took Xarelto; and No. 2, we have no documentation, no medical

09:41:41  8    record to show that Ms. Reese suffered an alleged injury while she

09:41:44  9    was allegedly taking Xarelto.  So the two big proof of use and

09:41:48  10   proof of injury are still missing.  At this point they're two

09:41:53  11   hundred and -- almost 300 days overdue.  It's 275 days since the

09:41:55  12   first notice.  This is at least the second hearing in which this

09:41:59  13   case has been set for dismissal due to failure to provide proof of

09:42:03  14   use and proof of injury.

09:42:05  15             I appreciate that within the last three days the daughter

09:42:08  16   has offered that she is getting letters of administration, but

09:42:11  17   under the circumstances we think it's lingered way too long.

09:42:15  18             MR. STERN:  I would only say in response, your Honor,

09:42:18  19   that I have not spoken with Sheryl Parker myself.  In a

09:42:22  20   circumstance like this, sometimes it's difficult to reach the

09:42:25  21   appropriate family members that are willing and have the necessary

09:42:28  22   initiative to move forward.  In this particular instance, this

09:42:32  23   having been my first contact with this particular woman Sheryl

09:42:35  24   Parker, I can't defend the delay here other than to suggest that

09:42:38  25   this is the first communication I've had from her, and I feel duty

09:42:42  1    bound to at least report all of this to the court.  I do understand

09:42:45  2    and I am sensitive to the defendant's predicament here, but this is

09:42:48  3    one of those circumstances where I don't think this particular

09:42:51  4    individual necessarily could be charged with the delay.

09:42:53  5              THE COURT:  Okay.  Let's do this.  Ken, I'll give you

09:42:56  6    30 days.  Let's look at it in 30 days and see what's the situation.

09:43:00  7    I am mainly interested in use, some information from a doctor or

09:43:05  8    letter or prescription or something that shows that that's done.

09:43:11  9    I'll pass it for 30 days and we'll look at it in 30 days.

09:43:15  10             MR. STERN:  I understand, your Honor.  Thank you very

09:43:17  11   much.

09:43:18  12             MS. MILLER:  Thank you, your Honor.

09:43:19  13             MS. DANIEL:  Thank you, your Honor.

09:43:20  14             The next is Document 12640.  There were 64 cases listed

09:43:27  15   on this order, your Honor.  And while they have been listed on the

09:43:31  16   joint agenda now twice, this is their first time being heard in an

09:43:35  17   Order to Show Cause hearing.

09:43:36  18             The following 22 cases are cured, your Honor.  And I know

09:43:40  19   Susan Sharko may have taken some of my job, but for the record to

09:43:45  20   be complete, we're going to read those cases that we believe are

09:43:47  21   cured.  They are:  Florence Anzalone, Gladys Barker, Thelma

09:43:53  22   Bratcher, Randy Brown --

09:43:56  23             MS. MILLER:  So on Randy Brown, your Honor, defendants

09:43:59  24   don't have documentation.  We understand maybe it was a late

09:44:02  25   submission.  We would agree to meet and confer and have that

09:44:06 1  resolved within ten days.

09:44:07 2         THE COURT:  All right.

09:44:08 3         MS. DANIEL:  John Campbell, Alton Fanchier, Carol Gueli,

09:44:13 4  Fida Hamade, Faye Kearney, L.B. Manus, Cynthia Sias, Hershal Smith,

09:44:21 5  James Taylor, Edna Williams.

09:44:24 6         MS. MILLER:  And with Edna Williams, again, defendants

09:44:28 7  have not had the opportunity to review to confirm the submission,

09:44:31 8  and we would agree to ten days.

09:44:32 9         THE COURT:  All right.

09:44:34 10        MS. DANIEL:  Eddith Yelton.

09:44:36 11        And for the core deficiency cases that were confirmed as

09:44:39 12  well as cured, they are:  Ruth Boudreaux, Elizabeth Collins,

09:44:44 13  Wendell Emberton, Henry Herring, Ringer James, Vaughan Newer, and

09:44:50 14  Devran Wilson.

09:44:53 15        The next case, your Honor, is Donna Watanabe.  This is

09:44:58 16  case by Douglas & London per their filed response, which is Rec.

09:45:02 17  Doc. 12801.  The firm has done everything they can to cure this

09:45:07 18  fact sheet, and through no fault of their own have been unable to

09:45:10 19  cure.  And even though they are aware of the practice of this

09:45:14 20  Court, they are asking for a dismissal without prejudice due to the

09:45:18 21  practices in their office.

09:45:19 22        MS. MILLER:  I'm sorry, are you going in order?  You're

09:45:22 23  not.

09:45:22 24        MS. DANIEL:  I was trying to.  Sorry.

09:45:24 25        THE COURT:  That's okay.  With regard to that last one,

09:45:26  1    I'll overrule their objection and dismiss with prejudice.

09:45:31  2              MS. MILLER:  Thank you, your Honor.

09:45:32  3              MS. DANIEL:  Thank you, your Honor.

09:45:37  4              Your Honor, the next case is Sharon Bonita Ross.  Counsel

09:45:41  5    should be on the line.  It is an overdue fact sheet.  Is anyone on

09:45:46  6    the line for Marc Bern & Partners?

09:45:51  7              MR. KESSLER:  Good morning, Gordon Kessler from Marc J.

09:45:55  8    Bern & Partners.  Your Honor, we would request an additional

09:45:57  9    30 days to get in contact with Ms. Ross.  The only deficiency is

09:46:01 10    the verified plaintiff fact sheet and getting the fact sheet

09:46:05 11    uploaded.  We have some letters sent out to her and we've left her

09:46:12 12    some voicemails, but we have not yet heard back.

09:46:15 13              MS. MILLER:  Your Honor, on this one we don't have a fact

09:46:17 14    sheet at all.  The fact sheet was due in September.  At this point

09:46:20 15    it's now almost 170 days overdue.  This is, in fact, the third time

09:46:25 16    the case has been listed as being deficient, and it wasn't listed

09:46:32 17    until more than 20 days had passed since the defendants had sent

09:46:36 18    the overdue notice.

09:46:37 19              Under the circumstances, it sounds like counsel has been

09:46:39 20    trying and hasn't been able to get a response from their client.

09:46:44 21    We think 30 days is too long and it should be dismissed with

09:46:46 22    prejudice.

09:46:47 23              THE COURT:  I think 30 days is too long.  What I'll do is

09:46:49 24    give you 15 days.  If you haven't gotten it by then, I'll dismiss

09:46:53 25    the case with prejudice.

09:46:55 1          MS. DANIEL:  Thank you, your Honor.

09:46:55 2          And, Mr. Kessler, while you're on the phone, would you

09:46:58 3  also like to address Savannah Robinson, the same issue?

09:47:05 4          MR. KESSLER:  Yes.  Similar issue, we have not been able

09:47:07 5  to contact the client, and we would request 30 days to get in

09:47:10 6  contact with them to get the declaration page.

09:47:11 7          THE COURT:  What's the situation there?

09:47:12 8          MS. MILLER:  This one, your Honor, we have the fact sheet

09:47:14 9  but it's not been actually verified by the plaintiff.  The

09:47:18 10  verification was due in -- was due last fall.  We've been

09:47:22 11  attempting to get it from them since October.  At this point in

09:47:26 12  time we do agree that 30 days is too long.  Generally when we're

09:47:33 13  waiting for a declaration, I think the Court has asked for them

09:47:34 14  within ten days of the hearing.

09:47:36 15          THE COURT:  That's all you need on that one, Gordon.

09:47:40 16  Let's get that done within 15 days.  I'll give you 15 days to do

09:47:47 17  it.

09:47:50 18          MR. KESSLER:  Thank you, your Honor.

09:47:50 19          MS. DANIEL:  Thank you, your Honor.

09:47:50 20          The next case is Linda Jones, your Honor.  The Driscoll

09:47:54 21  Firm I think is here per their response, which is Rec. Doc. 12813.

09:48:00 22  They are asking for additional time to locate the next of kin.

09:48:05 23  Counsel is here, your Honor.

09:48:06 24          MS. MORR:  Good morning, your Honor.  Kimberly Morr for

09:48:14 25  plaintiff.  This situation I believe the only thing missing right

09:48:16  1     now is the plaintiff verification of the form.

09:48:20  2              We actually learned on February 19th that the plaintiff

09:48:21  3     is now deceased, and we would request additional time to try to

09:48:25  4     locate the next of kin.  We have some letters to the estates.  We

09:48:28  5     have believe we located a daughter, have not heard back yet.

09:48:31  6              MS. MILLER:  When did the plaintiff pass away?

09:48:35  7              MS. MORR:  We are not sure of the date of death.

09:48:38  8              MS. MILLER:  That would be important to us to know in

09:48:41  9     terms of how to move forward.  We are missing medical records that

09:48:45 10     show any alleged injury, so that's one of the key proof of injury

09:48:49 11     pieces that's missing here.  We sent deficiency notices back

09:48:53 12     starting in September, so at this point in time we've been waiting

09:48:56 13     for them for about six months.

09:48:58 14              I understand that they just received notice that she

09:49:00 15     passed away, but we have no sense for when.  We would maybe ask for

09:49:04 16     ten days to have a sense for where things stand in probate.

09:49:09 17              THE COURT:  I'll do it for 30 days.  Let her know more

09:49:14 18     about the information and see if we can clear it up.  Pass it for

09:49:18 19     30 days.

09:49:20 20              MS. MORR:  Of course.  Will do, your Honor.  Thank you.

09:49:21 21              MS. DANIEL:  Your Honor, the next case Mary Hopper.

09:49:25 22     Defendants allege they are missing an amended declaration only.

09:49:30 23     Your Honor, there was a declaration uploaded yesterday, March 11th,

09:49:34 24     so I think what we would like to do is you guys can review it

09:49:38 25     again, I am not certain why there's still an issue.

09:49:43  1          MS. MILLER:  We're still missing medical records that

09:49:45  2    demonstrate proof of injury in addition to the declaration.

09:49:53  3          MS. DANIEL:  I would state that we -- that's not what's

09:49:58  4    on the -- it's just stated missing amended declaration only.  So

09:50:02  5    this is Mary Hopper?

09:50:04  6          MS. MILLER:  Yes.

09:50:06  7          MS. DANIEL:  So, your Honor, we'd request ten days to

09:50:08  8    review this case because I think clearly we have some records were

09:50:11  9    uploaded and perhaps it was just late last night.

09:50:15 10          MS. MILLER:  Perhaps it was.  Ten days would be fine,

09:50:18 11    your Honor.

09:50:19 12          MS. DANIEL:  The next case, your Honor, is Guadalupe

09:50:22 13    Morales.  There is a core deficiency here, your Honor.  The

09:50:25 14    remaining deficiency is just the authority to sign, meaning they

09:50:28 15    want the death certificate, next of kin, and counsel is working on

09:50:32 16    that, your Honor.  We would ask for some additional time for them

09:50:35 17    to cure this matter.

09:50:36 18          MS. MILLER:  Do you have any information on when she

09:50:38 19    passed away?

09:50:39 20          MS. DANIEL:  I don't.  Is anyone on the --

09:50:39 21          MR. HAMMERS:  Your Honor, this is Rob Hammers.  I

09:50:45 22    represent Guadalupe Morales.  He passed away in June of 2018, right

09:50:51 23    around the same time we filed.  We've been working with his primary

09:50:54 24    eldest heir Melinda Morales, and she is providing us with probate.

09:51:02 25    There are seven other heirs, so getting the consents and completing

09:51:06  1    it in East Texas is going to take a little time to get her subbed

09:51:11  2    in and get the suggestion of death and swap her out as the

09:51:16  3    administer, but we are in the process of doing that.  And I will

09:51:20  4    get a death certificate with the exact date of death in June of '18

09:51:23  5    to defense counsel within ten days.

09:51:24  6            MS. MILLER:  That's fine, your Honor.  We can pass this

09:51:27  7    for 30 days to the next hearing.

09:51:29  8            THE COURT:  Let's pass it for 30 days, Rob.

09:51:33  9            MS. MILLER:  Thank you.

09:51:34 10            MR. HAMMERS:  Thank you, your Honor.

09:51:34 11            MS. DANIEL:  Thank you, your Honor.

09:51:34 12            The next case is Dianne Sunda.  This case was for a

09:51:37 13    decedent and now the decedent has passed away.  Actually, the next

09:51:44 14    of kin is now passed away, on February 23rd, 2019.  And counsel has

09:51:50 15    filed a notice of death, your Honor, so I think this gets passed

09:51:54 16    because they filed a notice of death, it's quite recent.

09:51:56 17            MS. MILLER:  So for this one, your Honor, the Xarelto

09:51:59 18    user actually passed away in November of 2015.  We understand that

09:52:03 19    the next of kin just passed away.  We are still waiting for

09:52:07 20    records, documentation, something to show that Ms. Sunda actually

09:52:13 21    used Xarelto; so that is pretty key missing component, and we've

09:52:17 22    been working on trying to get that since the fall.  Under the

09:52:20 23    circumstances, 30 days would be fine; but in addition to working on

09:52:25 24    the probate, we do need proof of use.

09:52:27 25            THE COURT:  Let's pass this one.

09:52:29  1          MS. DANIEL:  Thank you, your Honor.

09:52:30  2          The next ten cases, your Honor, they were deficient fact

09:52:35  3   sheets, they were previously dismissed or agreed to stipulations of

09:52:38  4   dismissal with prejudice.  Ms. Sharko read them into the record.  I

09:52:43  5   don't probably need to read them again then.

09:52:44  6          But on the core deficiency cases, there were also agreed

09:52:49  7   to dismissal are Janet Daniels and Eugenia Huacoto.  I think she

09:52:54  8   actually may have read those.  I just didn't check them.

09:52:57  9          The next two cases, your Honor, Ronald Weeks and Kenneth

09:53:01 10   Williams.  Mr. Kessler, are you on the line again?

09:53:04 11          This firm would like to withdraw as counsel on this

09:53:08 12   matter, your Honor.  They are aware of the Court's practice in

09:53:13 13   these matters of withdrawal of counsel without substitution.  Would

09:53:17 14   you like to address the Court on Ronald Weeks and Kenneth Williams?

09:53:22 15          MR. KESSLER:  We intend to file motions to withdraw as

09:53:27 16   counsel.  We informed defense counsel of this on March 8th.  The

09:53:33 17   Bayer and Janssen defendants both informed us on the 8th that they

09:53:35 18   planned to object to those motions.

09:53:37 19          MS. MILLER:  Your Honor, if we could take them one at a

09:53:39 20   time.

09:53:40 21          For Mr. Weeks, we don't have proof of use or proof of

09:53:42 22   injury.  We have been working since June of 2018 to try to obtain

09:53:46 23   that information.  We understand that Mr. Kessler has been working

09:53:51 24   trying to get that as well and the client has not been cooperating.

09:53:54 25   I think under the circumstances, given the length of time that has

09:53:57 1    passed, it should be dismissed with prejudice.

09:53:59 2         THE COURT:  The record is clear that counsel has done

09:54:02 3    everything they possibly can to encourage this client to respond.

09:54:08 4    They've gone above and beyond their ethical and moral

09:54:13 5    responsibilities, they've done everything they possibly can.  It's

09:54:17 6    unfair to that firm to be put in a position where they have done

09:54:24 7    what they can but still no response from the client.  I understand

09:54:28 8    the client has a right to control their case and they've done so,

09:54:35 9    notwithstanding the response of the lawyer and everything that they

09:54:42 10   have done, so I am going to dismiss the case with prejudice.

09:54:45 11        MS. MILLER:  Thank you, your Honor.

09:54:46 12        There's a similar circumstance with Kenneth Williams.  We

09:54:49 13   don't have information regarding the dates of the use of Xarelto,

09:54:55 14   the name and address of the prescribing physician, the pharmacy

09:54:57 15   where the prescriptions were filled, any documentation of an

09:54:59 16   injury, and no declaration to verify the limited information we do

09:55:02 17   have.  We've been working since September of 2018 to try to obtain

09:55:06 18   this information.  We understand that Mr. Kessler has been working

09:55:10 19   as well and his client has not been responsive at this point.

09:55:13 20        THE COURT:  It's clear to me that counsel has gone above

09:55:17 21   and beyond his responsibilities to get this information.  It's

09:55:21 22   really basic information that the client, only the client is able

09:55:27 23   to furnish and the client refuses to do so, notwithstanding the

09:55:33 24   requests of the lawyer multiple times.  We've this had matter

09:55:39 25   before, it's too long, I'll dismiss the case with prejudice.

09:55:42  1          MR. KESSLER:  Thank you, your Honor.

09:55:43  2          MS. MILLER:  Thank you, your Honor.

09:55:44  3          MS. DANIEL:  Thank you, your Honor.

09:55:44  4          In the next 18 cases, your Honor, through no fault of

09:55:46  5   their own, counsel has done everything in their power to cure these

09:55:48  6   fact sheets and have been diligent in their attempts to resolve

09:55:52  7   this matter with the plaintiff, but have been unable to cure and

09:55:55  8   have no basis to oppose the motions.

09:55:57  9          I'll read them into the record.  They are:  Jonathan

09:56:00 10   Austin, Frances Bryant, Aubrey Bullock, Jim Franke, April Grove,

09:56:07 11   Kenneth Henderson, Wesley Meeks, and Alvin Miller.

09:56:12 12          The remaining cases are core deficiency cases, your

09:56:16 13   Honor.  Same issue, they have been unable to cure the fact sheets

09:56:20 14   and have no basis to oppose the motions.  They are:  David

09:56:25 15   Anderson, Peter Graham, George Hart, Charles Jackson, Melissa

09:56:29 16   Johnson, Anthony Leary, Susan Luna, John Mancebo, Earnest Neal, and

09:56:37 17   Roy Rassi.

09:56:39 18          THE COURT:  Let those cases be dismissed with prejudice.

09:56:41 19          MS. MILLER:  Thank you, your Honor.

09:56:42 20          MS. DANIEL:  Thank you, your Honor.

09:56:43 21          The last document today is Document 12762, your Honor,

09:56:47 22   which contained 55 cases where there were unpaid filing fees.

09:56:52 23   These have all been resolved, your Honor, and counsel apologizes

09:56:55 24   for any inconvenience of the court.

09:56:57 25          THE COURT:  Okay.  Thank you all both.

09:56:59  1          MS. MILLER:  Thank you, your Honor.

09:57:00  2          MS. DANIEL:  Thank you, your Honor.

09:57:01  3          THE COURT:  The court will stand in recess.

09:57:03  4          THE DEPUTY CLERK:  All rise.

09:57:04  5       (WHEREUPON, THE PROCEEDINGS WERE CONCLUDED.)

          6

          7                    *  *  *  *  *  *

          8

          9                REPORTER'S CERTIFICATE

         10

         11       I, Karen A. Ibos, CCR, Official Court Reporter, United

         12  States District Court, Eastern District of Louisiana, do hereby

         13  certify that the foregoing is a true and correct transcript, to the

         14  best of my ability and understanding, from the record of the

         15  proceedings in the above-entitled and numbered matter.

         16

         17

         18          ___/s/ Karen A. Ibos_____

         19          Karen A. Ibos, CCR, RPR, CRR, RMR

         20          Official Court Reporter

         21

         22

         23

         24

         25