09:00:10
```
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF LOUISIANA
 2   ************************************************************

 3   IN RE:  XARELTO (RIVAROXABAN)       Docket No. MDL-2592
     PRODUCTS LIABILITY LITIGATION       Section "L"
 4                                        New Orleans, Louisiana
     THIS DOCUMENT RELATES TO:           Thursday, November 8, 2018
 5   ALL CASES

 6   ************************************************************

 7          TRANSCRIPT OF MONTHLY STATUS CONFERENCE PROCEEDINGS
              HEARD BEFORE THE HONORABLE ELDON E. FALLON
 8                    UNITED STATES DISTRICT JUDGE

 9
     APPEARANCES:
10
     FOR THE PLAINTIFFS'
11   LIAISON COUNSEL:              GAINSBURGH BENJAMIN DAVID
                                   MEUNIER & WARSHAUER
12                                 BY:  GERALD E. MEUNIER, ESQ.
                                   2800 Energy Centre
13                                 1100 Poydras St.
                                   New Orleans, LA 70163-2800
14
     FOR THE DEFENDANTS'
15   LIAISON COUNSEL:              IRWIN FRITCHIE URQUHART & MOORE
                                   BY:  KIM E.  MOORE, ESQ.
16                                 400 Poydras St., Suite 2700
                                   New Orleans, LA 70130
17

18
     ALSO PRESENT:                 BROWNGREER
19                                 BY:  JACOB WOODY
                                   250 Rockets Way
20                                 Richmond, Virginia 23231

21
     Official Court Reporter:      Karen A. Ibos, CCR, RPR, CRR, RMR
22                                 500 Poydras Street, B-275
                                   New Orleans, Louisiana 70130
23                                 (504) 589-7776

24     Proceedings recorded by mechanical stenography, transcript
     produced by computer.
25
```

P R O C E E D I N G S

(THURSDAY, NOVEMBER 8, 2018)

(MONTHLY STATUS CONFERENCE PROCEEDINGS)

09:00:47    (OPEN COURT.)

09:00:47    THE COURT:  Be seated, please.  Good morning, ladies and
09:00:49    gentlemen.  Let's call the case, Dean.

09:00:52    THE DEPUTY CLERK:  MDL No. 2592, *in re:  Xarelto Products*
09:00:55    *Liability Litigation*.

09:00:56    THE COURT:  Counsel, make their appearance for the
09:00:58    record, please.

09:00:58    MR. MEUNIER:  Jerry Meunier, co-liaison counsel for
09:01:01    plaintiffs.

09:01:01    MS. MOORE:  Kim Moore, co-liaison counsel for the
09:01:05    defendants.

09:01:05    THE COURT:  We are here today for our monthly status
09:01:08    conference.  I met a moment ago with lead and liaison counsel to
09:01:12    discuss the proposed agenda.  I'll take them in the order
09:01:16    presented.

09:01:16    MR. MEUNIER:  Thank you, your Honor.

09:01:18    The joint report begins by identifying two Pre-Trial
09:01:22    Orders which have been entered since the last status conference,
09:01:25    and it's PTO No. 28B, which is Record Doc. 11123, and it deals with
09:01:33    contacting physicians who are involved with the discovery pool
09:01:37    cases under CMO 6; and Pre-Trial Order No. 10C, which is Record

09:01:44  1   Doc. 11124, which corrects an address with respect to service on

09:01:48  2   certain Bayer defendants.

09:01:52  3          Case Management Orders, Judge, CMO 6 is still the primary

09:01:56  4   structure for the processing of cases that have been selected for

09:02:00  5   discovery and potential trial on remand.  There have been several

09:02:07  6   supplements to CMO 6 which are entered since the last conference,

09:02:12  7   CMO 6A which sets forth the protocol for taking depositions in the

09:02:16  8   discovery phase for those cases, and that's Record Doc. 10660.

09:02:22  9          Associated with that there is an order the Court entered

09:02:25 10   on September 13 of this year, which sets forth the order for the

09:02:30 11   taking of prescribing and treating physicians, and certainly

09:02:35 12   counsel who have Wave 1 and Wave 2 cases should tend to that.  It's

09:02:38 13   been entered as Record Doc. 10882.

09:02:42 14          And then, finally, there's CMO 6B, which is Record

09:02:46 15   Doc. 11051, which addresses the issue of whether counsel need to

09:02:51 16   make special appearances for the record in the case specific

09:02:56 17   discovery activity under CMO 6.

09:02:58 18          Otherwise, your Honor, as you know, the selection phase

09:03:03 19   of Wave 1 and Wave 2 is done.  We have now identified those

09:03:09 20   1,200 cases and the activity is centered on the plaintiff fact

09:03:13 21   sheets.  Those have to be completed in full, not just the core

09:03:17 22   section, for those cases to then trigger the obligation of the

09:03:21 23   defendant to do a fact sheet in those cases and that in turn

09:03:25 24   triggers the discovery period.

09:03:27 25          In Section 5 of today's report we've recited a number of

09:03:32  1    motions that the defendants have brought to address deficiencies,

09:03:36  2    late filings with respect to those fact sheets, and we've talked to

09:03:41  3    the Court this morning about an effort we'll make on our side to

09:03:44  4    present to you a more streamlined approach to handling fact sheets

09:03:49  5    that are not completed timely and not sufficient to allow them to

09:03:54  6    proceed under CMO 6.

09:03:55  7         THE COURT:  We've talked today about the question of

09:04:00  8    culling and that's always an important thing in a case of this

09:04:04  9    nature.  There are some cases that for various reasons are filed,

09:04:08 10    but later on or as the case proceeds, the cases have to be culled

09:04:15 11    or removed from the process for a number of reasons.  And one thing

09:04:20 12    we've done is early culling with some areas of whether or not you

09:04:27 13    took the drug, that is the first step in the culling.

09:04:32 14         We have to keep our eyes on the litigation as it proceeds

09:04:36 15    because there are some opportunities as the case goes further on

09:04:42 16    looking closely at the cases to see whether or not some of those

09:04:46 17    can be culled before counsel for each side invests a lot of money

09:04:51 18    and time in trying to get the case ready, only to find out that

09:04:55 19    they don't have a case or that the client is not available any

09:04:59 20    longer or not willing to proceed any longer.  So we're in the

09:05:03 21    process of doing that, and counsel for both sides are getting

09:05:08 22    together, keeping an eye on that type of situation.

09:05:12 23         MR. MEUNIER:  Your Honor, again, just to identify orders

09:05:15 24    that have been entered since the last conference.  We do have an

09:05:19 25    aging population and there is the issue that's come up with a

09:05:22  1   number of fact sheets is the authority of a representative of the

09:05:27  2   deceased plaintiff to fill out the fact sheet and sign the

09:05:30  3   necessary documents, so the Court has entered just recently

09:05:33  4   November 2nd an order applicable to CMO 6 cases -- non-CMO 6 cases,

09:05:42  5   rather, to streamline the method by which the authority of people

09:05:46  6   to sign the fact sheets can be addressed.  And that's Record

09:05:51  7   Doc. 11525, and we think that will, again, avoid unnecessary motion

09:05:56  8   practice on that issue of authority of a representative.

09:06:00  9           I think Jake Woody is here to report on the inventory and

09:06:03 10   fact sheet totals.

09:06:04 11           THE COURT:  Jake.

09:06:06 12           MR. WOODY:  Good morning, Judge Fallon.  Jake Woody from

09:06:20 13   BrownGreer.  I have a quick update for you on plaintiff fact sheets

09:06:24 14   in this MDL.

09:06:25 15           As of yesterday, we had 22,390 plaintiff fact sheets

09:06:29 16   submitted.  That number is for open cases.  We don't count

09:06:33 17   dismissed cases in that total.  The 22,390 is an increase of 45

09:06:38 18   since the last status conference.  We've received more than 45, but

09:06:42 19   with the dismissals, the net increase was 45.

09:06:45 20           We have another 1,364 fact sheets in progress that

09:06:50 21   haven't been submitted yet, which makes our total plaintiffs in our

09:06:53 22   system 23,753.

09:06:57 23           This slide shows the monthly submissions for the last two

09:07:03 24   years, almost two years.  As you can see in July of 2018, the total

09:07:08 25   started to go down every month.  Previously there had been almost

| | |
|---|---|
| 09:07:13 | 1 |
| 09:07:19 | 2 |
| 09:07:26 | 3 |
| 09:07:30 | 4 |
| 09:07:33 | 5 |
| 09:07:35 | 6 |
| 09:07:38 | 7 |
| 09:07:47 | 8 |
| 09:07:53 | 9 |
| 09:07:57 | 10 |
| 09:08:02 | 11 |
| 09:08:07 | 12 |
| 09:08:11 | 13 |
| 09:08:15 | 14 |
| 09:08:21 | 15 |
| 09:08:23 | 16 |
| 09:08:28 | 17 |
| 09:08:34 | 18 |
| 09:08:39 | 19 |
| 09:08:44 | 20 |
| 09:08:48 | 21 |
| 09:08:52 | 22 |
| 09:08:56 | 23 |
| 09:09:00 | 24 |
| 09:09:03 | 25 |

500 a month and since then in October we received 280, in September 286, August 298, and back in July 355, so they are going down. Again, there is a pretty clear trend over the last four or five months of a decrease in submissions.

THE COURT: I think the parties ought to take a look at that because it looks to me like we're getting to the point of where there is a closed package, and that sometimes is significant, it at least lends itself to that observation, so we may be dealing with an end of the grouping at this time.

MR. WOODY: And then CMO 6, I have an update on that. As you know there were 1,200 cases selected for CMO 6. Of those, 863 are open, meaning they haven't been dismissed, that's 72 percent of the total; 337 have been dismissed, which is 28 percent. Of the dismissals, 195 were defendant selections, 113 were random selections, and 29 were plaintiff selections.

And finally, just an update on our sort of key statistics in this case. Plaintiffs who are 70 years or older make up 61 percent of the MDL, 53 percent of the plaintiffs in the MDL took Xarelto for a reduction of risk of stroke, and 49 percent alleged GI bleed. So those are sort of our key metrics.

As you can see from this slide, the CMO 6 percentages are a little bit higher than the MDL, but they were intentional, they were weighted to select those people. And these numbers are static for the most part, they're not changing. We're getting more fact sheets as you saw, but these statistics are not changing.

09:09:07 1          THE COURT:  Two things there:  One is, obviously, we have

09:09:10 2   an aging population, so we have to try to speed up the trial

09:09:15 3   aspects of the case to get these cases finished while the people

09:09:19 4   are still with us.  And secondly, for both sides, we're dealing

09:09:26 5   with a population that has limited wage loss for the most part.

09:09:34 6   That's something that I think is significant, too.  I am not saying

09:09:38 7   there's no wage loss because some people work after they're 70, but

09:09:44 8   that's something that at least the majority of them may have a

09:09:49 9   limited wage loss, if any, which is something.

09:09:54 10          MR. WOODY:  And that's my update for this month, your

09:09:57 11  Honor.

09:09:57 12          THE COURT:  Okay.  Thanks.

09:09:58 13          MR. WOODY:  If you have any questions, I'll be happy to

09:10:02 14  answer them.

09:10:03 15          THE COURT:  No, I don't.

09:10:04 16          In that regard, too, I met with counsel a moment ago to

09:10:07 17  talk about with the Louisiana cases, or the cases that are before

09:10:10 18  this Court.  I've got to focus on trying those cases or at least

09:10:15 19  some method of disposing of those cases.  And we talked about,

09:10:25 20  first of all, getting our hands around the numbers of cases that

09:10:29 21  we're dealing with and then coming up with some plan to resolve

09:10:34 22  those cases.  We can do it with either multiple trials or we can do

09:10:39 23  it in some mini trials or some method that can be dealt with that

09:10:48 24  can resolve the cases, either by trial or by some sort of mediation

09:10:55 25  or mixed process so we can get the cases over.

09:11:01 1          Anything else, Jerry?

09:11:05 2          MR. MEUNIER:  Judge, I want to mention Section 8,

09:11:05 3  Preservation Order, just because new lawyers come into the case,

09:11:10 4  there's CMO 6, and I want them to be aware of the obligation of all

09:11:13 5  parties to preserve voicemail, instant messaging, text messaging,

09:11:17 6  et cetera, pursuant to that earlier order of the Court.

09:11:20 7          Judge, the appeals in the Fifth Circuit of the three

09:11:28 8  bellwether trials that were before you - *Boudreaux, Orr, and*

09:11:32 9  *Mingo* - those appeals are consolidated.  The briefing has started.

09:11:37 10 There is still one remaining issue with respect to the completeness

09:11:41 11 of the record before that appeal can be perfected and submitted for

09:11:46 12 argument and decision.

09:11:47 13         Jake mentioned the CMO 6 case dismissals, that's also

09:11:53 14 mentioned in Section 11 of the report.

09:11:55 15         On State/Federal, your Honor, we gave you this morning

09:11:59 16 Dawn Barrios' spreadsheet showing not only the Philadelphia but

09:12:04 17 also other state court matters where Xarelto cases are pending.

09:12:09 18 Clearly in the Pennsylvania proceeding with 1,917 cases you have by

09:12:14 19 far the largest collection of cases pending outside of the MDL.

09:12:20 20         And we also report on the status of the Philadelphia case

09:12:25 21 and trial proceedings, there are appeals pending on some of the

09:12:30 22 earlier verdicts for defendants that were entered in those cases,

09:12:35 23 as well as a JNOV dismissal.  And then we have the next trial,

09:12:40 24 which is the *Rush* case, and that is now set for trial on May 6th of

09:12:47 25 2019.

09:12:48  1          There are some cases selected for a discovery pool in

09:12:51  2    Philadelphia.  We understand that ultimately six of those will be

09:12:55  3    picked for trial and those trials are due to start in the summer of

09:12:59  4    2019 in fairly close proximity to one another.

09:13:02  5          THE COURT:  Do you know the method that the judge is

09:13:05  6    using, either Judge New or someone else in picking the trial?

09:13:09  7    Brian, do you know?  Susan?

09:13:12  8          MR. MEUNIER:  I think Brian knows.

09:13:12  9          MR. BARR:  Susan can correct me if I am wrong, your

09:13:15 10    Honor, but it's primarily first in, first out on the way they're

09:13:19 11    going to be picked is the order after the defendant's strikes.

09:13:22 12    They have the right to strike I think it's four cases of the group

09:13:25 13    of 12.  Some have already been dismissed.  We may end up with just

09:13:29 14    six and then they're going to be tried in the order of first in,

09:13:33 15    first out.

09:13:35 16          MS. SHARKO:  That's almost right.  Judge New let the

09:13:37 17    plaintiffs pick the cases for the pool subject to certain

09:13:41 18    restrictions - they had to be GI bleed cases, the plaintiff took

09:13:44 19    the medicine for atrial fibrillation, and they couldn't have any

09:13:51 20    complicating factors, I believe that's generally what the standards

09:13:53 21    were.  Plaintiffs then got to pick 12; two dropped out because

09:13:59 22    they, in fact, had complicating factors; we get to strike four; and

09:14:03 23    then Brian is right, they will be tried in order of filing.

09:14:06 24          THE COURT:  I see.  Okay.  All right.  Thank you very

09:14:08 25    much.

09:14:10  1          MR. MEUNIER:  Your Honor, it just remains to set the

09:14:12  2     January conference.  The status conference in December 12th at

09:14:16  3     9:00 A.M.

09:14:16  4          THE COURT:  We talked about January the 23rd at

09:14:19  5     9:00 A.M., that seems to be convenient for everyone.

09:14:23  6          Okay.  Anybody else have any comments or anything?

09:14:26  7          MR. MEUNIER:  Thank you, Judge.

09:14:27  8          THE COURT:  All right folks, thank you -- yeah, go ahead,

09:14:28  9     Susan.

09:14:29  10         MS. SHARKO:  Just an update on the wave cases.  Wave 1 is

09:14:33  11    deep in discovery now.  Mr. Birchfield has been extraordinarily

09:14:37  12    helpful in resolving issues so there's one person we have to go to.

09:14:44  13    230 of the cases have been dismissed so far.  There are about 50 to

09:14:49  14    70 cases that are stalled in discovery for a variety of reasons,

09:14:55  15    jurisdiction or estates or document issues, and Mr. Birchfield has

09:15:01  16    been cutting through those issues.  So Wave 1 is well underway.

09:15:05  17         THE COURT:  So that's the 1,200 cases, Susan?

09:15:08  18         MS. SHARKO:  That's 600.

09:15:10  19         THE COURT:  I'm sorry, 600.

09:15:12  20         MS. SHARKO:  The next 600, Wave 2, so far 110 have been

09:15:16  21    dismissed and then more than half of what remains have issues.

09:15:20  22    We're early in the process.  There are 175 where we don't have a

09:15:25  23    PFS, there's eight with jurisdiction issues, 22 with service

09:15:29  24    issues, et cetera.  And again, we've been working through the list

09:15:33  25    with Mr. Birchfield on a fairly regular basis.

09:15:36  1          THE COURT:  Good.  Andy, do you have anything to add?
09:15:40  2          MR. BIRCHFIELD:  No, your Honor.  There are issues, as
09:15:42  3  you've pointed out, with the plaintiffs, especially those that have
09:15:49  4  deceased, in getting records.  We appreciate the order that you've
09:15:51  5  entered, very helpful there.  But plaintiffs counsel have been
09:15:54  6  responsive and we're making progress through these issues.
09:15:57  7          THE COURT:  Okay.  All right.  Folks, thank you very
09:16:00  8  much.  The Court will stand in recess.
09:16:02  9          THE DEPUTY CLERK:  All rise.
09:16:03 10      (WHEREUPON, THE PROCEEDINGS WERE CONCLUDED.)

11

12                              * * * * * *

13

14                       REPORTER'S CERTIFICATE

15

16          I, Karen A. Ibos, CCR, Official Court Reporter, United
17  States District Court, Eastern District of Louisiana, do hereby
18  certify that the foregoing is a true and correct transcript, to the
19  best of my ability and understanding, from the record of the
20  proceedings in the above-entitled and numbered matter.

21

22

23               ___/s/ Karen A. Ibos_____

24               Karen A. Ibos, CCR, RPR, CRR, RMR

25               Official Court Reporter