```
                      UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF LOUISIANA
****************************************************************


IN RE:  XARELTO (RIVAROXABAN)           Docket No. MDL-2592
PRODUCTS LIABILITY LITIGATION           Section "L"
                                        New Orleans, Louisiana
THIS DOCUMENT RELATES TO:               Wednesday, June 10, 2015
ALL CASES

****************************************************************


            TRANSCRIPT OF MONTHLY STATUS CONFERENCE PROCEEDINGS
               HEARD BEFORE THE HONORABLE ELDON E. FALLON
                      UNITED STATES DISTRICT JUDGE



APPEARANCES:

FOR THE PLAINTIFFS'
LIAISON COUNSEL:                 HERMAN HERMAN & KATZ
                                 BY:  LEONARD A. DAVIS, ESQ.
                                 820 O'Keefe Ave.
                                 New Orleans, LA 70113


                                 GAINSBURGH BENJAMIN DAVID
                                 MEUNIER & WARSHAUER
                                 BY:  GERALD E. MEUNIER, ESQ.
                                 2800 Energy Centre, 1100 Poydras
                                 New Orleans, LA 70163


FOR THE DEFENDANTS'
LIAISON COUNSEL:                 IRWIN FRITCHIE URQUHART & MOORE
                                 BY:  JAMES B. IRWIN, ESQ.
                                 400 Poydras St., Suite 2700
                                 New Orleans, LA 70130


FOR STATE/FEDERAL COMMITTEE:     BARRIOS, KINGSDORF & CASTEIX
                                 BY:  DAWN M. BARRIOS, ESQ.
                                 701 Poydras St., Suite 3650
                                 New Orleans, LA 70139-3650
```

```
1    ALSO PRESENT:                    JACOB WOODY - Representative for
                                      BrownGreer
2

3
     Official Court Reporter:         Karen A. Ibos, CCR, RPR, CRR, RMR
4                                     500 Poydras Street, B-275
                                      New Orleans, Louisiana 70130
5                                     (504) 589-7776

6
        Proceedings recorded by mechanical stenography, transcript
7    produced by computer.
```

```
                       P R O C E E D I N G S

                        (WEDNESDAY, JUNE 10, 2015)

                   (MONTHLY STATUS CONFERENCE PROCEEDINGS)


        (OPEN COURT.)
             THE COURT:  Be seated, please.  Good morning, ladies and
   gentlemen.  Let's call the case.
             THE DEPUTY CLERK:  MDL No. 2592, in re: Xarelto Products
   Liability Litigation.
             THE COURT:  Liaison counsel make their appearance for the
   record, please.
             MR. MEUNIER:  Good morning, your Honor.  Jerry Meunier,
   co-liaison counsel for plaintiffs.
             MR. IRWIN:  Jim Irwin for defendants, your Honor.  Good
   morning.
             THE COURT:  We're here today for our monthly status
   conference.  I met with liaison and lead counsel a moment ago to
   discuss the proposed agenda.
             I mentioned to them that I am going to need their input in
   the near future on a couple of areas:  One is discovery.  I see
   discovery proceeding from the standpoint of general causation.
             I also think that some initial culling is important at
   this stage in the case.  I say initial, underlining initial.  We
   find that in these cases sometimes for various reasons individuals
   sometimes show up in a pleading that probably they should be in a
```

```
09:02:53   1   different case.  They often times haven't taken the medication; or
09:02:58   2   if they have, they've taken the medication five years before.  It
09:03:01   3   just happens that way.  When you're dealing with 20, 30,000 people
09:03:07   4   that's what happens.  So I don't think it's good for -- certainly
09:03:13   5   not good for the litigation, not good for the system, but it's not
09:03:16   6   good for either side.  So an initial culling protocol is necessary
09:03:23   7   to deal with that.
09:03:24   8            Then with the help of Centrality, MDL Centrality, we
09:03:34   9   ought to be able to get our hands around this litigation, see
09:03:37  10   whether or not we can divide it into various categories.  And then
09:03:41  11   I'll give each side an opportunity to pick ten or 15 cases,
09:03:48  12   whichever, and we'll form a discovery pool that represents that
09:03:52  13   whole census of the litigation, 30, 40 cases; and then the parties
09:03:57  14   can drill down and discover that pool rather than have to use the
09:04:02  15   resources for discovering 26,000 people if that's the census of this
09:04:08  16   litigation.
09:04:08  17            So that discovery pool will be able to then be
09:04:13  18   discovered, and then from that we'll be able to pick bellwether
09:04:17  19   cases and both sides will have an opportunity to know a little bit
09:04:22  20   more about the cases when they get down to picking the cases.
09:04:26  21            So those are the three areas that I don't need any
09:04:31  22   information on it now, but I want the parties to begin focussing on
09:04:35  23   those.
09:04:36  24            We'll take the proposed agenda in order.  Pre-Trial
09:04:40  25   Orders, anything?
```

MR. MEUNIER: Thank you, your Honor. The first item is a review of the pretrial orders, and since the last status conference of May 13, the court has entered: Pre-Trial Order No. 17, Record Document 924, dealing with electronic service through MDL Centrality for plaintiffs; Pre-Trial Order 18, Record Document 925, which deals with Science Day; and Pre-Trial Order 19, Record Document 951, which deals with the protocol for the treatment of privileged and work product materials.

Your Honor has also entered Case Management Order No. 1, which dealt with a number of important issues, and which, among other things, required the parties to meet and confer by the middle of this month and report to the court no later than the end of this month on CMO No. 2; and CMO No. 2, which will address the discovery plaintiff schedule and the bellwether selection and trial schedule.

And, your Honor, that meet and confer process has begun. We will be meeting again tomorrow with leadership from the defendant side, and we will be discussing some currently submitted to one another competing versions of CMO 2 dealing with the trial schedule and the discovery pool.

THE COURT: Well, keep me in the loop on that. If you have some difficulties, bring it to my attention immediately. I'll resolve it. I will get everybody on the line, I will hear from each side, I'll have a court reporter with me, and I will deal with it immediately so we can keep going.

I think the thrust of the litigation, of this type of

1  litigation initially, and we're just about finished with that aspect
2  of it, but I find it helpful to put some infrastructure in place so
3  that parties can move faster in it; things like discovery protocol,
4  who comes to depositions, how many people have the right to ask
5  questions, how long are the depositions, where they take place,
6  what's the proper notice, things of that sort.  We will have that
7  taken care of in the protocol so that everybody knows it.  Privilege
8  protocol, we ought to have that taken care of.  And the various
9  issues.
10           It's sort of like building a subdivision, you don't build
11 houses first and then try to figure out where to put the sewage
12 lines in or the electrical lines in, you put all of that in first
13 and then you begin the houses.  So it just works better and that's
14 what we're trying to do in this particular case.  So we are about
15 over that stage and now discovery will be taking place.
16           MR. MEUNIER:  And, your Honor, the next item is Counsel
17 Contact Information.  Your Pre-Trial Order 4 and 4A set forth
18 information and a form for that.  And as liaison counsel, we just
19 want to emphasize to all plaintiffs counsel the importance of
20 completing the counsel contact information.  Even among some counsel
21 who have expressed to us an interest in serving on subcommittees to
22 do work in the case, we found that some are not being diligent with
23 that; and so we hope that all counsel will take seriously the
24 requirement to fill that form out and keep the contact information
25 current for us.

```
09:07:57  1            THE COURT:  Good.  And I do urge anybody who is interested
09:08:00  2   in participating in the case, if you're not on the Plaintiff
09:08:07  3   Steering Committee, you still have a role but it's a role that you
09:08:10  4   have to work at, if you're going to assume that role.  But you have
09:08:15  5   a role on a subcommittee.  And talk to liaison counsel; if for some
09:08:20  6   reason you can't get their attention, get to me and we'll get you on
09:08:24  7   a subcommittee.  But it has to be coordinated and worked through the
09:08:29  8   PSC, but there's a role for you to play in it.
09:08:34  9            MR. MEUNIER:  Your Honor, the next item is MDL Centrality,
09:08:37 10   and as you know it's been set up for a twofold purpose:  First, as
09:08:42 11   discussed in item five on the agenda for the purpose of service of
09:08:46 12   pleadings for the plaintiffs counsel.  The defendants have not
09:08:49 13   agreed to use the MDL Centrality system for pleadings or discovery
09:08:53 14   documents.
09:08:54 15            And then as the next item discusses for Plaintiff Fact
09:08:57 16   Sheets and under PTO 13 there is a schedule set forth.  We, again,
09:09:03 17   as liaison want to emphasize to all plaintiffs counsel the
09:09:06 18   importance of becoming familiar with the deadline and being diligent
09:09:11 19   about compliance with the deadline to the extent possible.  And the
09:09:14 20   plaintiff fact sheet form is attached as an exhibit to PTO 13.
09:09:18 21            And I believe Jake Woody from BrownGreer is here to
09:09:21 22   briefly report on MDL Centrality for those purposes, Judge.
09:09:26 23            THE COURT:  Okay.  Jake.
09:09:27 24            MR. DAVIS:  And, your Honor, I just want to point out one
09:09:30 25   thing with respect to MDL Centrality just so folks on the phone know
```

and the rest of counsel know. Plaintiffs liaison counsel is no longer distributing filings, and, in fact, we're relying upon MDL Centrality so that plaintiffs counsel does get notice of various filings and the like. And so it's even more important that folks register under the Pre-Trial Order 4 and Pre-Trial Order 17 so that they can get the information from Centrality, because they are not getting it from us any longer.

THE COURT: Okay. Fine. When you start this litigation what we do is appoint liaison counsel and give them the role, among other things, to notify all of the plaintiff counsel. But after a certain period of time, with technology's help, we're able to get them out of that role, and one of the ways of doing it now is with MDL Centrality. When something is filed in the federal clerk's office here, it's uploaded to Centrality and it goes out, e-mail blasts to all of the attorneys. But you'll only get it if you register, put in your information so that you can get that information. But you'll automatically get everything that's been filed in the federal court.

In addition to that, it allows us to digitize the plaintiff profile forms or the plaintiff fact sheets. That's helpful because you'll be able to, once we get all of those fact sheets in, we will be able to get a census of the litigation a little bit more, be a valid census. We will be able to figure out how many death cases, how many stroke cases, how many heart attack cases, how many other types of cases, and that will be where we'll

09:11:35 1 pick the discovery pool from. And that will be where you pick your
09:11:40 2 bellwether cases from. Rather than just go in blind, you'll have a
09:11:44 3 lot more information and you'll be able to pull that information and
09:11:49 4 massage that information a little bit.
09:11:51 5     Jake, do you want to give us an update?
09:11:55 6     MR. WOODY: Yes, your Honor. My name is Jake Woody from
09:11:58 7 BrownGreer. I just have a very brief report on MDL Centrality. To
09:12:02 8 date we have 176 firms registered with the program, with a total of
09:12:05 9 402 separate users.
09:12:08 10     As you mentioned, when documents, pleadings are filed
09:12:12 11 through ECF, we receive those and transmit them to all registered
09:12:16 12 users. We send an e-mail and attach the pleading to the e-mail. We
09:12:21 13 also store the pleading and the supportive order in MDL Centrality,
09:12:26 14 you can log in and search for them and view all of the pleadings
09:12:30 15 that we've received so far.
09:12:31 16     THE COURT: Now, when the attorney gets the information,
09:12:34 17 the e-mail from you that something has been filed, it's attached to
09:12:40 18 the e-mail?
09:12:40 19     MR. WOODY: Yes.
09:12:41 20     THE COURT: And they can click on the attachment and pull
09:12:43 21 up the document?
09:12:44 22     MR. WOODY: Yes. We put in the body of the e-mail the
09:12:47 23 name of the document, all of the pertinent information about it, and
09:12:49 24 also attach the actual document as a PDF to the e-mail along with
09:12:53 25 any exhibits. We do have a size limitation of one megabyte;

09:12:59  1   however, every pleading so far has been under that number.
09:13:03  2              THE COURT:  I wouldn't anticipate pleadings to go over one
09:13:07  3   megabyte.  You might find that there's some briefs and some things
09:13:10  4   of that sort that might create a problem, but we'll remedy that.
09:13:16  5              MR. WOODY:  Yes.  And if that does happen, we will tell
09:13:19  6   the recipients that they need to log in to view it.  It hasn't
09:13:23  7   happened yet though.
09:13:24  8              THE COURT:  Right.
09:13:25  9              MR. WOODY:  Turning to fact sheets very quickly, we have
09:13:27 10   176 fact sheets in progress.  Two submitted so far.  I expect those
09:13:31 11   numbers to drastically increase as we approach the first deadline,
09:13:36 12   which I believe is in early July.
09:13:39 13              We also under PTO 17 were required to meet and confer
09:13:44 14   with the clerk regarding the case list.  We've done that.  We are
09:13:48 15   receiving counsel contact forms from plaintiffs firms, and we did
09:13:53 16   meet and confer with liaison counsel regarding the contact list.
09:13:53 17              THE COURT:  Okay.
09:14:00 18              MR. WOODY:  I'll be in the courtroom for anybody here who
09:14:02 19   has questions about MDL Centrality.  For anyone on the phone who
09:14:06 20   needs to contact us, you can e-mail us at
09:14:09 21   mdlcentrality@browngreer.com or you can call us at (804) 521-7200.
09:14:16 22   Since the last status conference I've done a number of online
09:14:20 23   Web-Ex's, tutorials, we've answered many, many questions by e-mail,
09:14:24 24   and will continue to do so.
09:14:25 25              THE COURT:  Okay.  Thank you very much.  This is a new

```
09:14:27   1   approach that we've used in this case for the first time, and
09:14:32   2   hopefully we will be able to work some of the -- if there are any
09:14:34   3   bugs, we will get the bugs out, and hopefully it will be able to be
09:14:39   4   used by my colleagues in the future.
09:14:41   5             MR. IRWIN:  Your Honor, with the court's permission, I
09:14:45   6   think the court knows that we're working on a supplemented PFS and
09:14:50   7   the DFS, and we expect -- we're basically in agreement.  When did we
09:14:57   8   think we could get that to the judge?
09:14:59   9             MR. DAVIS:  Your Honor, we should have that to you this
09:15:01  10   coming week.  What that deals with are some really HIPAA-type issues
09:15:05  11   and the like, and we will be submitting a joint order.
09:15:08  12             THE COURT:  Okay.
09:15:09  13             MR. IRWIN:  It's PTO's 13 and 14, your Honor.
09:15:14  14             THE COURT:  Okay.  Thank you.
09:15:14  15             MR. MEUNIER:  So it would be 13A and 14A dealing,
09:15:17  16   respectively, with PFS and DFS issues.
09:15:20  17             THE COURT:  Okay.
09:15:22  18             MR. MEUNIER:  So, your Honor, that covers the defendant
09:15:22  19   fact sheets.
09:15:23  20             The next item is the Bundling of Complaints and Responsive
09:15:27  21   Pleadings.  Some bundled complaints now have been filed.  We, as the
09:15:30  22   court knows, have received a proposal from defense counsel to
09:15:34  23   address certain end of case issues for the payment of filing fees
09:15:39  24   that are deferred under the bundling complaint order, and we will be
09:15:43  25   including that in our meet and confer discussions and reporting back
```

```
09:15:45  1   to the court.
09:15:47  2           We recognize that it's ultimately for your Honor to
09:15:50  3   approve any resolution of those concerns.
09:15:52  4           THE COURT:  Do we have a feel for how many cases are in
09:15:56  5   the MDL at this time?  Andy, do you have anything?
09:16:00  6           MR. BIRCHFIELD:  I have not received the updated numbers.
09:16:03  7           THE COURT:  Lenny?  Dawn, do you want to report?
09:16:05  8           MS. BARRIOS:  I believe Dean told me this morning it's
09:16:07  9   about 700; is that correct, Dean?
09:16:09 10           THE DEPUTY CLERK:  Yes.
09:16:10 11           THE COURT:  All right.
09:16:13 12           MR. MEUNIER:  Your Honor, the next item on the agenda is
09:16:15 13   the Preservation Order, and you entered PTO 15 for the preservation
09:16:19 14   of documents and electronically stored information.  There are
09:16:24 15   continuing issues dealing with the preservation of voicemail,
09:16:28 16   instant messaging, text messages, et cetera, and the PSC has
09:16:32 17   provided a 30(b)(6) notice related to ESI preservation, and we
09:16:38 18   expect that testimony to facilitate the resolution of those
09:16:41 19   remaining issues on preservation.
09:16:44 20           THE COURT:  Okay.
09:16:45 21           MR. MEUNIER:  The next item is Document Production
09:16:47 22   Protocol, and there is agreement now on that protocol among the
09:16:51 23   parties, and I believe an order, a pre-trial order dealing with the
09:16:54 24   document production protocol will be submitted shortly.
09:17:00 25           The next item is Discovery.  And, your Honor, early May
```

```
09:17:05  1   we propounded to the defendants, the PSC propounded a first request
09:17:09  2   for production.  We've had meet and confers about it, and the
09:17:13  3   agreement was that by June 8 the defendants were to begin with the
09:17:19  4   expression of any objections and also a rolling production.  And
09:17:22  5   we've discussed with the court issues regarding the prioritization
09:17:28  6   of custodial files and our concern on the PSC's side that the
09:17:32  7   quality of the initial production is obviously going to have a great
09:17:35  8   impact on the discovery plaintiff schedule, the bellwether trial
09:17:38  9   schedule.
09:17:39 10           But we appreciate your Honor's willingness to stand by as
09:17:43 11   we meet and confer, and we will report to you on the production
09:17:45 12   issues as well as we go forward.
09:17:48 13           THE COURT:  Let me hear from you all after you meet and
09:17:51 14   confer so that you can tell me whether or not there's any
09:17:55 15   outstanding issues.  If there are, I'll resolve them.
09:17:58 16           MR. MEUNIER:  The other thing to report on the subject of
09:18:01 17   discovery, Judge, is that we have provided draft 30(b)(6) notices to
09:18:07 18   the defendants regarding both the cooperate structure of Bayer and
09:18:12 19   the Bayer insurance issues, and we will again await further response
09:18:17 20   and continue to try to finalize those notices.
09:18:21 21           THE COURT:  Okay.
09:18:22 22           MR. MEUNIER:  On Deposition Guidelines, we are in the
09:18:26 23   process with defendants in preparing a PTO that will address
09:18:31 24   deposition guidelines.  If necessary, we'll submit competing
09:18:35 25   versions or confer with the court on those differences if they
```

```
09:18:38   1   exist.
09:18:38   2               THE COURT:  Okay.
09:18:39   3               MR. MEUNIER:  Discovery Issued to Third Parties, two
09:18:43   4   things there, your Honor:  One, is that we did issue a subpoena
09:18:47   5   duces tecum to the FDA.  We did receive a response, certain records.
09:18:52   6   We have provided those to the defendants.  We have had some
09:18:54   7   follow-up discussion with the FDA about further responsiveness, and
09:18:59   8   we appreciate the court's help if we need it on addressing that.
09:19:02   9               THE COURT:  Sometimes there's a little bureaucracy
09:19:05  10   involved.  Keep me advised on that because I'll get with the U.S.
09:19:10  11   Attorney's Office here and hopefully somebody will be assigned to
09:19:13  12   work with the FDA on those productions.
09:19:17  13               With regard to depositions, too, keep in mind that there
09:19:22  14   may be an opportunity or availability to take online depositions,
09:19:28  15   particularly with regard to Bayer because they're out of the
09:19:33  16   country; and oftentimes it's easier to do that than it is to have
09:19:38  17   everybody fly to Europe to do it, to participate in it.
09:19:45  18               What I've done in the past with online depositions is the
09:19:50  19   people from each side go or one from each side and another person
09:19:55  20   with a laptop, and you're able to pull up the depositions at your
09:20:01  21   office or home or wherever.  On the right-hand side is the
09:20:08  22   transcript, on the left-hand side is voice and image, you log in
09:20:12  23   with your Social Security number, and if you have any questions you
09:20:15  24   type it in and it goes to the person next to the questioner; and at
09:20:19  25   the appropriate time he elbows the questioner and asks him "New
```

```
09:20:24   1   Orleans wants this" or "Montana wants that," or whatever it is and
09:20:29   2   the question is asked.  So it's easier to be done.
09:20:32   3           If it's a problematic deposition, let me know and I'll log
09:20:35   4   in and I'll rule immediately with the objections.
09:20:41   5           It can be costly but with the numbers that we're dealing
09:20:44   6   with in this particular case, the number of attorneys, the costs is
09:20:51   7   well within a manageable area.
09:20:53   8           MR. MEUNIER:  Thank you, Judge.  The other item on third
09:20:56   9   party discovery was that the PSC has issued a subpoena to the Duke
09:21:01  10   Clinical Research Institute, and we will be following up on that
09:21:04  11   discovery as well.
09:21:05  12           The next item is the Science Day, which will be held
09:21:09  13   tomorrow in this courtroom starting at 9:00 A.M.  We have Pre-Trial
09:21:14  14   Order 18 which sets forth the protocol and the procedure for Science
09:21:19  15   Day.  And I know that both sides are prepared to conduct not an
09:21:22  16   adversarial event but one that is meant for the court's instruction.
09:21:27  17           THE COURT:  It is very helpful to me to have a feel for
09:21:30  18   what the science is involved in this particular case.  I've asked
09:21:35  19   the parties to give me a bibliography, they've done so, and each of
09:21:40  20   them has given me about ten articles, I've read all of the articles
09:21:44  21   on it; and tomorrow I'll hear from the experts who will go into
09:21:48  22   Science 101 and explain to me what the science is involving this
09:21:54  23   particular drug.
09:21:55  24           Everybody's invited.  You can come but we're not going to
09:22:00  25   have facilities for recording or anything of that sort because it's
```

09:22:05 1 not on the record, it's simply -- the purpose is to educate the
09:22:10 2 judges involved. I'll have my state court colleagues on the line,
09:22:15 3 they'll be able to participate, and they'll also have websites that
09:22:23 4 they're able to look at the overheads that are presented.
09:22:32 5     So the whole purpose of it is just to educate the judges
09:22:36 6 so that we're better able to handle Daubert or Frye issues and
09:22:40 7 follow-up with the technical aspects and the science aspects of the
09:22:44 8 litigation.
09:22:46 9     MR. MEUNIER: The next item, your Honor, is State/Federal
09:22:49 10 Coordination, and the chair of the State Liaison Committee
09:22:54 11 Ms. Barrios is here to make a report.
09:22:56 12     MS. BARRIOS: Thank you, Mr. Meunier. Good morning, your
09:22:58 13 Honor. I make this report on behalf of the State/Federal Committee.
09:23:02 14 I would like to thank all of the defendants for complying so quickly
09:23:06 15 with your order to provide us with all of the state court cases and
09:23:10 16 the census, and they've been terrific in handling that for us.
09:23:14 17     I'd also like to thank the committee because our committee
09:23:17 18 has been incredibly responsive to any questions that we have. And
09:23:22 19 I'd also like to point out to the court that Dan Gallucci, who is
09:23:27 20 co-lead counsel in Philadelphia, is here today; and generally either
09:23:30 21 he or Mr. Yankowitz will appear before your Honor at every status
09:23:36 22 conference.
09:23:36 23     THE COURT: Okay.
09:23:37 24     MS. BARRIOS: For the record, we have provided or co-lead
09:23:40 25 counsel in Philadelphia has provided Judge New with all of the

09:23:43  1   relevant documents for Science Day.
09:23:46  2           We are working with the PSC on the deposition protocol to
09:23:49  3   insure that there is some input from the states' counsel on that.
09:23:55  4           As far as the state court stats of today, your Honor, we
09:24:02  5   have two cases filed in Indiana, one in Missouri, six in New Jersey,
09:24:09  6   and Pennsylvania has 261 by the plaintiffs' count.  The defendant's
09:24:15  7   count was different, but obviously it's because of service and
09:24:18  8   filing.  So that would be a total of 270 cases outside of your
09:24:21  9   jurisdiction.
09:24:22 10           THE COURT:  Okay.
09:24:23 11           MS. BARRIOS:  Thank you, your Honor.
09:24:24 12           THE COURT:  I've been in communication with Judge New.  I
09:24:29 13   haven't touched base with the other judges, so if they do get a
09:24:34 14   number of cases there, get me the names and the addresses and
09:24:38 15   telephone numbers and I'll coordinate with them.
09:24:40 16           MS. BARRIOS:  Sure.
09:24:41 17           THE COURT:  We've been able to coordinate with Judge New
09:24:44 18   very well.  He is going to be terrific in the state aspect of the
09:24:53 19   case, and I look forward to working with him.
09:24:57 20           The next item proposed?  Anything?
09:24:59 21           MR. MEUNIER:  Yes.  Unless there's something else to be
09:25:02 22   discussed with counsel present, your Honor, the only other item is
09:25:05 23   the next status conference.  You scheduled July 9.
09:25:08 24           THE COURT:  Right.  July 9 and then August the 6th is the
09:25:11 25   following one, August the 6th.  July 9 is the next one.

1  Anything from anybody who is out in the audience, wants
2  to bring up anything for the good and welfare?
3  All right, folks, I'll see you next time then. Thank you
4  very much. The court will stand in recess.
5  THE DEPUTY CLERK: All rise.
6  (WHEREUPON, THE PROCEEDINGS WERE CONCLUDED.)

* * * * *

REPORTER'S CERTIFICATE

I, Karen A. Ibos, CCR, Official Court Reporter, United States District Court, Eastern District of Louisiana, do hereby certify that the foregoing is a true and correct transcript, to the best of my ability and understanding, from the record of the proceedings in the above-entitled and numbered matter.

/s/ Karen A. Ibos
Karen A. Ibos, CCR, RPR, CRR, RMR
Official Court Reporter