```
                      UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF LOUISIANA
******************************************************************

IN RE:  XARELTO (RIVAROXABAN)          Docket No. MDL-2592
PRODUCTS LIABILITY LITIGATION          Section "L"
                                       New Orleans, Louisiana
THIS DOCUMENT RELATES TO:              Thursday, September 17, 2015
ALL CASES

******************************************************************


          TRANSCRIPT OF MONTHLY STATUS CONFERENCE PROCEEDINGS
               HEARD BEFORE THE HONORABLE ELDON E. FALLON
                      UNITED STATES DISTRICT JUDGE



APPEARANCES:

FOR THE PLAINTIFFS'
LIAISON COUNSEL:                  HERMAN HERMAN & KATZ
                                  BY:  LEONARD A. DAVIS, ESQ.
                                  820 O'Keefe Ave.
                                  New Orleans, LA 70113


                                  GAINSBURGH BENJAMIN DAVID
                                  MEUNIER & WARSHAUER
                                  BY:  GERALD E. MEUNIER, ESQ.
                                  2800 Energy Centre, 1100 Poydras
                                  New Orleans, LA 70163


FOR THE DEFENDANTS'
LIAISON COUNSEL:                  IRWIN FRITCHIE URQUHART & MOORE
                                  BY:  JAMES B. IRWIN, ESQ.
                                  400 Poydras St., Suite 2700
                                  New Orleans, LA 70130


FOR STATE/FEDERAL COMMITTEE:      BARRIOS, KINGSDORF & CASTEIX
                                  BY:  DAWN M. BARRIOS, ESQ.
                                  701 Poydras St., Suite 3650
                                  New Orleans, LA 70139-3650
```

```
 1   ALSO PRESENT:
     ALSO PRESENT:                    BROWNGREER
 2                                    BY:  JACOB WOODY
                                      250 Rockets Way
 3                                    Richmond, Virginia 23231

 4

 5   Official Court Reporter:         Karen A. Ibos, CCR, RPR, CRR, RMR
                                      500 Poydras Street, B-275
 6                                    New Orleans, Louisiana 70130
                                      (504) 589-7776
 7

 8      Proceedings recorded by mechanical stenography, transcript
     produced by computer.
 9
```

```
                    P R O C E E D I N G S
                 (THURSDAY, SEPTEMBER 17, 2015)
              (MONTHLY STATUS CONFERENCE PROCEEDINGS)


        (OPEN COURT.)
             THE COURT:  Be seated, please.  Good morning, ladies and
gentlemen.  Let's call the case, please.
             THE DEPUTY CLERK:  MDL-2529, in re: Xarelto Products
Liability Litigation.
             THE COURT:  Liaison counsel make their appearance for the
record, please.
             MR. DAVIS:  Good morning, your Honor, Leonard Davis from
Herman, Herman & Katz, co-plaintiffs liaison counsel.
             MR. IRWIN:  And Jim Irwin for defendants, your Honor.
             THE COURT:  This is our monthly status conference.  I've
had an opportunity to meet with liaison and lead counsel a moment
ago to discuss their proposed agenda.  I'll take it in the presented
order.
             Pre-Trial Orders.  Anything, Lenny?
             MR. DAVIS:  Thank you, your Honor.  Yes.  Pre-Trial Order
No. 14 -- I'm sorry, No. 11B is new and it's referenced in the joint
report.  That Pre-Trial Order governs the Joined Plaintiff's
responsibility for filing fees and modifies the second sentence of
Paragraph 1(a) of Pre-Trial Order No. 11.
             And I just point out to the Court, so that there is no
```

```
09:16:32   1   confusion to individuals, there are two Pre-Trial Order 11s.  It's
09:16:42   2   just a docketing issue.
09:16:43   3            THE COURT:  I post these on my web site and I would advise
09:16:49   4   everyone to take a look at the Pre-Trial Orders.  I think they plot
09:16:53   5   the course of the litigation, and particularly true with our next
09:16:58   6   item Case Management Orders.  Tell me about No. 2.
09:17:02   7            MR. DAVIS:  Yes, your Honor.  The plaintiffs and the
09:17:05   8   defendants have submitted agreed upon CMO-2.  That was submitted to
09:17:10   9   the court on September 11.  At that same time the portions that were
09:17:18  10   not agreed to were also submitted to the court; and that dealt with
09:17:22  11   two issues, the geographic composition of the bellwether trial and
09:17:26  12   the discovery pool.  And your Honor addressed those matters with
09:17:31  13   individuals earlier, and we expect that the court will be issuing an
09:17:37  14   order in the near future.
09:17:38  15            THE COURT:  Yes.  The Court Management Order No. 2 deals
09:17:45  16   with the trial dates and deals with the discovery deposition
09:17:54  17   schedule, bellwether selection discovery, the discovery limits,
09:18:00  18   there's the initial bellwether discovery pool.  I find in these
09:18:03  19   cases that before we get to the bellwethers, we've got to have some
09:18:08  20   discovery as to which cases ought to be involved in the bellwethers.
09:18:13  21   It doesn't do any good to simply take the same case and try it over
09:18:18  22   and over and over again.  So what we try to do is get a discovery
09:18:23  23   pool that mimics the census of the litigation.  And from that
09:18:29  24   discovery pool then limit the discovery to that discovery pool, at
09:18:33  25   least from the plaintiffs' standpoint, so that you're not
```

```
09:18:37   1   discovering 2,000 or 3,000 or 4,000 cases, you're only discovering a
09:18:43   2   certain amount.
09:18:43   3           We put 40 cases in that discovery pool and each side gets
09:18:49   4   20 selections.  We makeup the discovery pool by random selection and
09:19:00   5   then various other methods of selecting, then the parties discover
09:19:04   6   those, that discovery pool; and from the discovery pool, they can
09:19:09   7   select then the cases to be tried.
09:19:13   8           In this particular case, we're getting cases from so far
09:19:19   9   I think every state has been represented, we have at least one case
09:19:23  10   from every state in the union.  I think it's helpful for both sides,
09:19:30  11   defendants as well as plaintiffs, to discover some cases that may
09:19:38  12   not be within the lexicon scope.  The parties have agreed that
09:19:45  13   they're willing to try cases in Louisiana, Mississippi, and Texas.
09:19:51  14   I would be going to Mississippi and I would be going to Texas to try
09:19:56  15   those cases from there.  And we may be limited to those three
09:20:03  16   states, although it's open at this point and we may not be limited
09:20:09  17   to those states.
09:20:10  18           But in any event, the discovery pool ought not to be
09:20:13  19   limited to those states.  I think the defendants miss an opportunity
09:20:19  20   to discover cases from other states.  They're not going to be a
09:20:24  21   little bit pregnant by doing that, and, therefore, give up their
09:20:28  22   right to object to Lexicon.  They have a right to object based on
09:20:35  23   Lexicon and this Court follows Lexicon, obviously, it's a Supreme
09:20:42  24   Court case.  The discovery of those cases may well be helpful and
09:20:45  25   may inform the parties as to the nature and the extent of the
```

09:20:48  1  litigation.
09:20:49  2           As I mentioned in our private hearing, I see my
09:20:53  3  responsibility to all of you all as a transferee judge as, first of
09:21:00  4  all, coordinating discovery so that you don't have to take the same
09:21:06  5  depositions in 50 states.  So it's coordinated here.
09:21:12  6           But there's got to be a purpose.  Why would you discover
09:21:15  7  it if there's no purpose.  The purpose is to inform you of the
09:21:19  8  nature and extent of the litigation so that you can make some
09:21:22  9  decisions on the scope of the litigation and what to do with it,
09:21:27 10  because you're problem solvers, you're not problem creators.  So
09:21:31 11  you're trying to solve these problems.  And so the discovery is
09:21:34 12  helpful.
09:21:35 13           But in addition to the discovery, I also feel that I have
09:21:39 14  an opportunity to give you some other information.  That information
09:21:44 15  can be gleaned only from trying cases.  All of you all have tried
09:21:49 16  case, I have also, and I know that you can prepare a case to a fine
09:21:56 17  tune; but until you've tried that case, you really don't know that
09:22:00 18  case.  You learn something in every single trial, and so this is an
09:22:06 19  opportunity to get some information from juries, to get some
09:22:13 20  information from the method of trying those particular cases.
09:22:18 21           So that's where the bellwethers come in.  Discovery,
09:22:21 22  everybody does it.  I think the bellwether is helpful to you in
09:22:26 23  giving you the full course and full picture of the case so that
09:22:30 24  later on you can decide what to do with it.  So that's why we're
09:22:35 25  doing what we're doing.

```
09:22:37   1              The parties have reached an agreement on Case Management
09:22:40   2   Order 2.  They gave me Case Management Order 3, I met with them a
09:22:45   3   moment ago and made some suggestions; hopefully those suggestions
09:22:50   4   will resolve any disputes in Case Management Order 3.
09:22:54   5              MR. DAVIS:  Your Honor, the next item on the agenda is
09:22:57   6   Counsel Contact Information Form.  And I remind counsel, all
09:23:02   7   plaintiffs counsel, to look at the Pre-Trial Orders that are on the
09:23:05   8   court's web site, in particular Pre-Trial Order 4A, to fill out
09:23:13   9   counsel contact information form and turn it in.  And it's really
09:23:16  10   important with respect to the next item on the agenda, which is MDL
09:23:23  11   Centrality.
09:23:24  12              Your Honor, we understand that there are 58 overdue
09:23:29  13   Plaintiff Fact Sheets at this time, and we understand that primarily
09:23:35  14   those individuals have not signed up for MDL Centrality.  And I
09:23:41  15   don't know if any of those lawyers are participating on the phone or
09:23:44  16   listening in, but we strongly encourage them to send in the profile
09:23:51  17   forms -- the fact sheets, rather, and the profile forms, so that
09:23:56  18   they can get registered for MDL Centrality.
09:24:01  19              We will be reaching out to those 58 folks so that they
09:24:05  20   get an individual contact from the PSC, and we will be working with
09:24:10  21   defendants to make sure that those profile forms get turned in
09:24:14  22   timely.
09:24:15  23              THE COURT:  I would reinforce that and urge everybody to
09:24:20  24   comply with the informational requirements of MDL Centrality.  We're
09:24:29  25   trying a new approach with this particular case, we're putting the
```

09:24:33  1   fact sheets from both sides online so that they can be searchable
09:24:39  2   and we can collect the data.
09:24:41  3           The big problem in an MDL is the number of cases and the
09:24:47  4   number of cases present problems, and one of the problems that
09:24:50  5   presents is that you need to understand what the scope of the
09:24:54  6   litigation is.  And it's very difficult when you're looking at
09:25:00  7   thousands of pages of fact sheets to try to categorize those various
09:25:07  8   cases.  You can do it better online and put those cases in various
09:25:14  9   categories, and then from those categories pick the discovery group,
09:25:20 10   pool, and then from that discovery pool pick the bellwether cases so
09:25:25 11   that it represents or mimics the litigation as a whole, a census of
09:25:31 12   the litigation as a whole.  And this is an important part of it.
09:25:34 13           We've had some hiccups, sort of hiccups, but it's either
09:25:40 14   growing pains or attempts to meet the requirements of the parties
09:25:46 15   asking for information, but we're moving in the direction that
09:25:53 16   hopefully will give us all of the information that's necessary.
09:25:57 17           But we need everybody's cooperation on this, and if you
09:26:00 18   don't cooperate, then you're not going to be in the pool and you're
09:26:05 19   not going to have an opportunity to try the case, and it's going to
09:26:09 20   have an adverse effect, or may well have an adverse effect.  So I
09:26:14 21   urge you to take a look at it and get on the boat with Centrality.
09:26:18 22           MR. DAVIS:  Yesterday we have a lengthy meeting with
09:26:21 23   Centrality -- when I say "we," plaintiffs and defendants, all
09:26:25 24   parties.  We spent a lot of time going over Centrality.  And I am
09:26:30 25   happy to report that all parties are pleased with the system.  There

```
09:26:34   1   will be no delays.  It's working.
09:26:38   2           And as your Honor said, it's a normal system, it's new.
09:26:41   3   You do have some of the growing pains that you do have, but folks
09:26:45   4   are reminded that they really need to submit their materials and get
09:26:51   5   that in to the system so that the system works as it's designed.
09:26:57   6           And I am pleased and glad that we had an opportunity to
09:27:02   7   meet with Orren Brown and with Jake Woody, and all of the parties
09:27:06   8   did --
09:27:07   9           THE COURT:  Well, they're here today.  Do you have
09:27:10  10   anything, Jake or Orren, to report to us?
09:27:13  11           MR. BROWN:  Good morning, your Honor, Orren Brown from
09:27:15  12   BrownGreer, and Jake Woody is with me today.
09:27:18  13           And we want to say, first, we have been working the
09:27:22  14   parties, we're at the stage where people are using the system; and
09:27:24  15   it's much the way you described trying a case, you don't really know
09:27:28  16   how the fact sheet is going to work until you're actually doing it.
09:27:33  17   And a lot of what we're dealing with now are questions that would
09:27:36  18   come up even if this were being done the old fashion way or in PDFs:
09:27:40  19   "When can you amend?  When does it stop?  What do you do with the
09:27:44  20   amended ones?"
09:27:45  21            We're at the stage where we're hearing from the users -
09:27:46  22   the four defense firms, the two defendants, plaintiffs' leadership,
09:27:49  23   plaintiffs' counsel - we want to hear how they want it to work and
09:27:54  24   make adjustments, that's what we do, we're committed to making that
09:27:56  25   happen.  And here we are doing that.
```

```
09:27:57   1              Jake Woody is going to just give you a quick update on the
09:28:00   2   numbers and what we've gotten in.
09:28:02   3              THE COURT:  Okay.
09:28:07   4              MR. WOODY:  Good morning, your Honor.  My name is Jake
09:28:18   5   Woody, I am here from BrownGreer just to give you a quick update on
09:28:22   6   what's in MDL Centrality right now.
09:28:25   7              As you mentioned, MDL Centrality is an online platform for
09:28:30   8   anyone new to the litigation that allows you to fill out the fact
09:28:32   9   sheet online and upload supporting documents.  It's a secure portal
09:28:37  10   that we register firms for and then they can fill out these fact
09:28:41  11   sheets on the screens.
09:28:42  12              So far we have 1,316 Plaintiff Fact Sheets submitted;
09:28:46  13   another 855 are in progress, meaning they started the process, they
09:28:49  14   haven't yet submitted the fact sheet; that's a total of 2,171 fact
09:28:54  15   sheets either submitted or in progress.
09:28:56  16              Of the 1,316 that have been submitted, 313 have been
09:29:01  17   amended, meaning that the plaintiff made a change to the fact sheet
09:29:05  18   and re-submitted it.  We save the original fact sheet and the
09:29:08  19   amended fact sheet in the system so that you can see all versions of
09:29:12  20   the fact sheet, and you can amend the fact sheet as often as
09:29:15  21   necessary as you receive new information or need to supplement a
09:29:19  22   previous submission.
09:29:20  23              Our submission trend is on this slide here.  We received
09:29:28  24   687 submissions in July and that is because the first deadline to
09:29:33  25   submit fact sheets I believe was July 3rd, 60 days after your
```

```
                                                                              11
```

09:29:37  1   May 4th Pre-Trial Order.  We have 350 in August and 174 so far in
09:29:43  2   September, so you can see that at least for the first two regular
09:29:46  3   months of the program we're receiving between three and 400 fact
09:29:52  4   sheets a month, and we don't see any reason why that won't continue
09:29:56  5   for the foreseeable future.
09:29:58  6             THE COURT:  Okay.
09:29:58  7             MR. WOODY:  We do have some functionality in the system
09:30:02  8   that allows the defendants to review the fact sheets to determine if
09:30:05  9   the answers and documents that have been provided are sufficient.
09:30:11 10   And they look at the documents and when they make a determination
09:30:14 11   that something is missing, either an answer or information or a
09:30:17 12   document, they can issue what we call a deficiency notice.
09:30:20 13             So far we have 453 deficiency notices issued and 281
09:30:27 14   plaintiffs have amended a fact sheet after receiving that deficiency
09:30:30 15   notice.  So the system allows the defendants to notify the
09:30:33 16   plaintiffs of a deficiency and then the plaintiffs can amend the
09:30:37 17   fact sheet, essentially responding to the deficiency notice, and
09:30:41 18   hopefully curing whatever the problem is.
09:30:43 19             THE COURT:  What happens if they don't clear it up?
09:30:49 20   What's the next step?
09:30:51 21             MR. WOODY:  I will have to defer to the parties on how
09:30:53 22   that is handled.  We are certainly able to track what happens,
09:30:56 23   whether people respond not, how they respond, what they respond
09:30:59 24   with.  But MDL Centrality does not automatically take any action, we
09:31:05 25   defer to the parties on that.

```
09:31:06   1         THE COURT:  I think you ought to put it in the system so
09:31:09   2   that you can contact the plaintiffs' counsel; if it's defendants,
09:31:14   3   contact defense liaison counsel; if it's for plaintiffs, contact
09:31:17   4   plaintiffs liaison counsel, give them the name of people that are
09:31:21   5   having difficulty so that they can make personal calls to those
09:31:25   6   individuals.
09:31:25   7         MR. DAVIS:  Your Honor, what we will do is, when we get
09:31:28   8   that list from Jake, we will meet with defendants and address a
09:31:32   9   number of those issues.  I did hear comments yesterday about some of
09:31:38  10   the deficiency issues, and there are matters that need to be
09:31:41  11   discussed with defendants about some of those, and we will do that.
09:31:45  12         THE COURT:  Okay.  Great.
09:31:49  13         MR. WOODY:  We also issued what we call overdue notices, I
09:31:52  14   think Mr. Davis mentioned this earlier.  These are notices to people
09:31:55  15   who have not submitted a fact sheet and the fact sheet is now due.
09:31:58  16   We've issued 82 of those notices through MDL Centrality.  There are
09:32:03  17   another 58, as Lenny mentioned, who have not even taken the step to
09:32:07  18   register with us so it's impossible for us to send them a
09:32:10  19   notification.
09:32:10  20         In some cases people register with us but don't submit the
09:32:14  21   fact sheet timely, and we are able to issue them a notice -- or the
09:32:18  22   defendants are able to issue them a notice through MDL Centrality.
09:32:22  23   And the 82 that have been issued through MDL Centrality, we've
09:32:23  24   received 47 submitted fact sheets after that overdue notice was
09:32:27  25   issued.
```

09:32:30  1           This is just a sample of what the deficiency notice looks
09:32:33  2   like, it's basically a form letter, it's a PDF that we generate,
09:32:37  3   save in the file along with every other document.  We send an e-mail
09:32:42  4   notification to the plaintiff's firm that there is a deficiency
09:32:44  5   notice for a particular plaintiff.  This letter or notice lists the
09:32:50  6   exact things that are missing from the fact sheet, whether it's an
09:32:54  7   answer or a document.  We populate this table on the fact sheet with
09:32:57  8   all of that information so that it is saved in the file and everyone
09:33:02  9   can see what the deficiencies are.
09:33:06 10           We also make available to the plaintiffs firms a report,
09:33:11 11   Microsoft XL report; that's a spreadsheet that lites all of
09:33:15 12   deficiencies, it takes all of the deficiency notices that have been
09:33:19 13   issued, aggregates them into one place.  And we give you the name of
09:33:21 14   the plaintiff, the date that they submitted the fact sheet, the date
09:33:24 15   of the deficiency notice, and the date that the response is due,
09:33:26 16   which is generally 20 days after the notice.
09:33:28 17           And we list the deficiency reasons, just like we list in
09:33:32 18   that table that I showed you earlier.  And then we also are able to
09:33:35 19   tell you whether or not you submitted an amended PFS after the
09:33:40 20   deficiency notices, essentially responding to it, or uploaded a new
09:33:43 21   document.  This report is available to each plaintiff firm and shows
09:33:47 22   only their plaintiffs.  We also have obviously a master copy that we
09:33:52 23   can share with Lenny and the PSC.
09:33:55 24           THE COURT:  Let's figure out a way of giving plaintiffs
09:34:00 25   liaison counsel a list of the people, the problems that you're

09:34:03 1  having, so that they can make contact because some individuals may
09:34:07 2  have difficulty doing this online and it's just a fact of the
09:34:10 3  matter.
09:34:11 4          MR. WOODY: Certainly. We will work with everyone to get
09:34:14 5  this information out.
09:34:15 6          We also issue Defendant Fact Sheets through MDL
09:34:19 7  Centrality. Obviously the Defendant Fact Sheets are a response to
09:34:24 8  the Plaintiff Fact Sheet that is submitted. Each defendant issues a
09:34:27 9  separate Defendant Fact Sheet. So far Bayer has submitted 165
09:34:32 10 defendant fact sheets, Janssen has submitted 160.
09:34:36 11         When a new Defendant Fact Sheet is submitted, we send an
09:34:40 12 e-mail notification to the plaintiff's firm who represents the
09:34:42 13 plaintiff to whom that fact sheet applies, notifying them that the
09:34:46 14 fact sheet is available, they can go online and see the actual fact
09:34:49 15 sheet in a PDF in the file, along with any documents that the
09:34:52 16 defendants upload in support of their defendant action.
09:34:56 17         THE COURT: Okay.
09:34:57 18         MR. WOODY: Finally, just some miscellaneous statistics
09:35:00 19 for you. We have 251 firms registered with MDL Centrality. 634
09:35:07 20 separate active users of MDL Centrality on the plaintiff side.
09:35:11 21 19,189 documents have been uploaded and are being stored in MDL
09:35:16 22 Centrality right now. The largest file is 443 megabytes. I mention
09:35:20 23 that because that is quite a large document. We have no trouble
09:35:24 24 accommodating documents of that size, we expect large documents in
09:35:28 25 any case like this where there are copious medical records and

09:35:31  1   things of that nature.  So there shouldn't be any problem with
09:35:34  2   people uploading any type of document they need to upload.
09:35:37  3           And finally, the pleadings component of MDL Centrality,
09:35:42  4   we have distributed 621 pleadings to plaintiffs firms, we get those
09:35:48  5   from the court's ECF system from the master docket.  We download
09:35:53  6   them, save them in MDL Centrality, they're searchable either by
09:35:58  7   docket title or date or by the text within the pleading itself, and
09:36:03  8   we issue an e-mail notification of every new pleading and attach the
09:36:06  9   pleading to the e-mail so that all plaintiffs users, if they want,
09:36:10 10   they can review every filing in the master docket.
09:36:12 11           THE COURT:  So the plaintiff, the litigants -- the
09:36:15 12   plaintiffs need to simply file in court and they don't need to file
09:36:19 13   with you, you pick it out of the court record and then disburse it?
09:36:23 14           MR. WOODY:  Correct.  We automatically download it, save
09:36:26 15   it, no one needs to do anything other than file with the court and
09:36:30 16   we're able to access those documents.
09:36:30 17           THE COURT:  And with regard to filing with the court,
09:36:32 18   electronic filing, we are having some difficulties.  I suggest to
09:36:35 19   everybody take a look at the court's web site on how to file.  If
09:36:41 20   you have any difficulties, simply call the clerk's office and there
09:36:45 21   is someone that will be designated to be of assistance to you.  So
09:36:51 22   take a look at the rules.  If you need to contact the court, the
09:36:56 23   clerk's office, and somebody will walk you through it.  Thank you.
09:36:59 24           MR. WOODY:  Can I just give our contact information very
09:37:01 25   quickly, your Honor, in case anybody needs to contact us?

```
09:37:04   1              THE COURT:  Yes.
09:37:05   2              MR. WOODY:  The web site for the portal is
09:37:07   3    www.mdlcentrality.com/mdl2592.  You can email us at
09:37:09   4    mdlcentrality@browngreer.com.  And if you need to call us, you can
09:37:21   5    call us at (804) 521-7200.  Thank you, your Honor.
09:37:22   6              THE COURT:  All right.  Thank you very much.  So the
09:37:26   7    Centrality is really a twofer in a sense:  One is to -- it's really
09:37:30   8    to take the place of interrogatories.  It's been our experience over
09:37:34   9    the years with the MDLs, particularly is that interrogatories are a
09:37:40  10    lame discovery device, it's a device that's prepared by lawyers and
09:37:44  11    answered by lawyers.  And the people who prepare it want every
09:37:51  12    information known to the world and the person who is answering
09:37:53  13    doesn't want to give any information.  So we have a lot of motions
09:37:56  14    back and forth.
09:37:57  15              So we're trying to do away with interrogatories in the
09:38:01  16    MDLs and supplement that with fact sheets so that you can get the
09:38:05  17    information that you need, rather than -- in a time that's relevant.
09:38:10  18              And that's the big purpose of it, it takes the place of
09:38:15  19    interrogatories, it's less motion practice, and it's more efficient
09:38:18  20    to do.  But you need to cooperate with it.
09:38:20  21              In addition to that, the Centrality also allows for
09:38:26  22    e-mailing notices of all of the pleadings that have been filed so
09:38:29  23    that when you're in the system, you automatically get a notice of
09:38:33  24    all of the pleadings that have been filed in the case.
09:38:40  25              MR. DAVIS:  Your Honor, the next item on the agenda -- and
```

```
09:38:42  1   I don't need to cover, Plaintiff Fact Sheets or Defendant Fact
09:38:46  2   Sheets anymore, I don't believe -- is the Bundling of
09:38:50  3   Complaints/Answers/Responsive Pleadings.  There is nothing new on
09:38:53  4   that other than the Pre-Trial Order 11 that I mentioned earlier.
09:38:56  5            With respect to Preservation Orders, the parties have
09:39:01  6   submitted a proposed Pre-Trial Order that addresses voicemail,
09:39:05  7   instant messaging, and text, and we expect that the court will be
09:39:08  8   addressing that in the near future.
09:39:11  9            With respect to Discovery.  As your Honor is aware, we
09:39:18 10   have weekly or biweekly conferences with the court to report on
09:39:22 11   discovery.  Those have been very helpful, we appreciate the court
09:39:27 12   giving us that opportunity.
09:39:29 13            Pre-Trial Order 21 has been submitted to the court for
09:39:34 14   consideration, which deals with additional refinements to rolling
09:39:40 15   document production; and it's part and parcel of Pre-Trial Order
09:39:45 16   No. 2 and No. 3.
09:39:48 17            I also report to the court that plaintiffs and defendants
09:39:52 18   have meetings every other week by phone to address privilege issues,
09:39:58 19   so those matters are ongoing.
09:40:01 20            So discovery is in the process, it is moving forward, and
09:40:06 21   the PSC will be issuing very shortly 30(b)(6) notices for corporate
09:40:12 22   organization structural depositions; and we've been in communication
09:40:15 23   with defendants on that, and we expect to be getting dates to set
09:40:19 24   those depositions very shortly, and we expect to get those notices
09:40:25 25   issued in the very near short future.
```

```
09:40:27   1              The next item on the agenda is Deposition Guidelines.
09:40:34   2    The parties continue to work on that.  We expect that we will have a
09:40:38   3    proposed order to your Honor shortly.  I don't foresee problems with
09:40:44   4    that.
09:40:44   5              The next item on the agenda is Discovery Issued to Third
09:40:49   6    Parties and we continue to move forward with those matters, and as
09:40:58   7    documents come in we'll deal with it.
09:41:04   8              THE COURT:  Anything on State/Federal Coordination?
09:41:06   9              MR. DAVIS:  We have Ms. Barrios is here, and we also have
09:41:10  10    the representatives from the committee here.
09:41:14  11              THE COURT:  All right.
09:41:15  12              MS. BARRIOS:  Good morning, your Honor, Dawn Barrios for
09:41:17  13    the Federal/State Committee.
09:41:19  14              I would like to just note that the co-leads for
09:41:21  15    Philadelphia, Mr. Gallucci and Mr. Yankowitz are here in court, and
09:41:26  16    they are obviously much more qualified to answer any questions about
09:41:30  17    what's going on in their litigation than I am.
09:41:32  18              THE COURT:  Okay.  I appreciate you all being here and we
09:41:35  19    met a moment ago at the conference, and I am trying to coordinate
09:41:44  20    with the state, you've got a great state court judge doing terrific
09:41:51  21    work there, and I want to make sure that he has access and you have
09:41:54  22    access to all of the material that's been discovered here so that
09:41:58  23    it's more efficient for you and is less costly.
09:42:01  24              So I do appreciate you all being here and also cooperating
09:42:06  25    with the process.  I think that's been very helpful.  I look forward
```

1  to working with you throughout the litigation.  And if you have any
2  problems, bring it up at this conference so that we can deal with
3  it.
4          MS. BARRIOS:  Your Honor, I add my thanks and appreciation
5  because they constantly are e-mailing me, keeping me up-to-date, as
6  well as keeping the PSC up-to-date.
7          I prepared the usual state court stats based upon the
8  information that the defendants have provided me, and we have a
9  total of 328 state court proceedings and there are 320 in
10 Philadelphia.  So according to Mr. Longer's calculation, 98 percent
11 of the cases are in Philadelphia.  There are six in New Jersey and
12 two in Missouri.  Our committee has reached out to the plaintiff's
13 counsel in the other cases and asked if they would please cooperate
14 and work with us in discovery.  We received no push back on that.
15         I am planing on doing a draft of a letter to each trial
16 judge and giving them a dropbox with all of your orders in it.  I
17 will of course pass that by the PSC and defense counsel on that.
18         And if the defendants have any problems in any of the
19 state court cases, with someone trying to push something forward,
20 I'm sure they'll notify me and we will take care of it.
21         Thank you, your Honor.
22         THE COURT:  Thank you.  Anything from the defendants?
23 Jim?
24         MR. IRWIN:  Your Honor, only that Mr. Davis and I worked
25 closely this week on Joint Report No. 8.  We had our usual

```
09:43:44   1   conference yesterday in preparation, I appreciate his well said
09:43:47   2   words today.
09:43:48   3              THE COURT:  Good.  Okay.  And the next status conference
09:43:50   4   is October when?
09:43:53   5              THE LAW CLERK:  October 21st.
09:43:57   6              THE COURT:  October 21st and the following one is
09:44:00   7   November?
09:44:01   8              THE LAW CLERK:  16th.
09:44:03   9              THE COURT:  16th.  The November conference is at three
09:44:07  10   o'clock with a 2:30 meeting of liaison counsel.
09:44:11  11              Anything further from anyone in the audience?  All right,
09:44:14  12   Folks.  Thank you very much.  The court will stand in recess.
09:44:17  13              THE DEPUTY CLERK:  All rise.
09:44:18  14          (WHEREUPON, THE PROCEEDINGS WERE CONCLUDED.)
          15
          16                            * * * * *
          17
          18                       REPORTER'S CERTIFICATE
          19
                    I, Karen A. Ibos, CCR, Official Court Reporter, United
          20   States District Court, Eastern District of Louisiana, do hereby
               certify that the foregoing is a true and correct transcript, to the
          21   best of my ability and understanding, from the record of the
               proceedings in the above-entitled and numbered matter.
          22
          23                       /s/ Karen A. Ibos
                                   Karen A. Ibos, CCR, RPR, CRR, RMR
          24                       Official Court Reporter
          25
```