```
 1                 UNITED STATES DISTRICT COURT

 2                 EASTERN DISTRICT OF LOUISIANA

 3

 4    IN RE:  XARELTO (RIVAROXABAN)  *        14-MD-2592
      PRODUCTS LIABILITY LITIGATION  *
 5                                    *        Section L
                                      *
 6    Relates to:  All Cases         *        November 7, 2019
                                      *
 7    * * * * * * * * * * * * * * * *

 8

 9                    MONTHLY STATUS CONFERENCE BEFORE
                     THE HONORABLE ELDON E. FALLON
10                    UNITED STATES DISTRICT JUDGE

11
      Appearances:
12

13    For the Plaintiffs:          Herman Herman & Katz, LLC
                                    BY:  LEONARD A. DAVIS, ESQ.
14                                  820 O'Keefe Avenue
                                    New Orleans, Louisiana 70113
15
      For the Defendants:          Irwin Fritchie Urquhart &
16                                    Moore, LLC
                                    BY:  KIM E. MOORE, ESQ.
17                                  400 Poydras Street, Suite 2700
                                    New Orleans, Louisiana 70130
18
      Also Participating:          Andy Birchfield, Esq.
19                                  Susan Sharko, Esq.
                                    Mike Love, Esq.
20                                  Gerald Meunier, Esq.

21    Official Court Reporter:     Toni Doyle Tusa, CCR, FCRR
                                    500 Poydras Street, Room B-275
22                                  New Orleans, Louisiana 70130
                                    (504) 589-7778
23

24
      Proceedings recorded by mechanical stenography using
25    computer-aided transcription software.
```

09:09

**PROCEEDINGS**

**(November 7, 2019)**

1
2
3      **THE COURT:**  Be seated, please.
4          Let's call the case.
5      **THE DEPUTY CLERK:**  MDL 2592, *In re Xarelto Products*
6  *Liability Litigation.*
7      **THE COURT:**  Counsel make their appearance for the
8  record, please.
9      **MR. DAVIS:**  Good morning, Your Honor.  Plaintiffs'
10  co-liaison counsel, Leonard Davis.
11      **MS. MOORE:**  Good morning, Your Honor.  Kim Moore,
12  defense co-liaison counsel.
13      **THE COURT:**  This is our monthly status conference.
14  We have a large number of people on the phone monitoring this,
15  so please speak from the microphones.
16          This is the status conference in the *Xarelto*
17  case.  I will hear from the parties.  I met a moment ago with
18  lead liaison counsel to discuss the proposed agenda.  I will
19  take the items in the order given to me in the proposed agenda,
20  first the settlement.
21      **MR. DAVIS:**  Yes, Your Honor.  Counsel recognizes that
22  Your Honor is in the middle of a trial.
23      **THE COURT:**  Right.
24      **MR. DAVIS:**  We will try to be as prompt as possible.
25  We also realize that there are 20-some-odd people on the phone.

09:36

1    I would encourage those individuals that are on the phone that
2    if they have questions specifically regarding matters, in
3    particular those who have not enrolled in the settlement, to
4    contact lead or liaison counsel on the plaintiffs' side.
5              We are available, and they should feel free to
6    reach out to us rather than addressing those matters today,
7    unless Your Honor cares to deal with those matters today, which
8    I know you may have.  We are available to answer questions
9    specifically with respect to some of the Court's orders and the
10   applications which the plaintiffs have done with respect to
11   trial package, remand, and things like that.
12        **THE COURT:**  Right.  Okay.  We have now 33,000
13   individual claims that have been filed in this matter.  We have
14   gone through six bellwether trials, one in Mississippi as well
15   as five in this area.  We have also had some in state court
16   with my brothers and sisters in the state court bench.  The
17   parties have had an opportunity now to discover the case for a
18   number of years.  They have produced thousands of depositions.
19   I have had maybe 1,500 motions that I have dealt with.
20             About three or four months ago the parties began
21   discussing a global resolution of this matter, and they have
22   apparently reached a satisfactory global resolution.  I will
23   hear from the parties as to what's happening with the
24   settlement.
25        **MR. BIRCHFIELD:**  Good morning, Your Honor.  Andy

09:38
1    Birchfield.

2                    On behalf of the plaintiffs' leadership, we are

3    pleased with the current status of events.  The response from

4    the plaintiffs and plaintiffs' firms has been overwhelmingly

5    favorable.

6                    Where we are in the process of finalizing the

7    settlement agreement now is that BrownGreer is vetting the

8    enrollment documents.  There are some deficiencies that need to

9    be cleared up, and then the defendants will have an opportunity

10   to verify the information.

11                   I cannot say anything official, but from the

12   plaintiffs' leadership standpoint, from our viewing the

13   enrollment process and working with BrownGreer through the

14   process, it has been an overwhelmingly favorable response.  I

15   foresee us moving forward and issuing points awards in the near

16   term.  I anticipate that we will be in a place to start getting

17   payments to claimants in the first half of next year.

18                   I'm pleased with where we are and how the

19   overall litigation is progressing.  I understand that there are

20   a handful of firms who represent claimants who chose not to

21   participate, and the Court urged those firms to either appear

22   today or be here by phone.

23                   I understand that the Court is wanting to move

24   forward with those cases in a rapid fashion.  I'm here and

25   Brian Barr is available and Jerry Meunier and Lenny Davis.  If

09:40

1   you want us to work with them in developing a scheduling order

2   or something along these lines, we can certainly do that based

3   on our experience of what the Court has done in the past.

4          THE COURT:   This settlement is an opt-in settlement.

5   Anybody who doesn't want the settlement doesn't have to opt

6   into the settlement.  The deadline for doing it is passing.

7   Once the settlement gets solidified, which looks like that it

8   will be done by the end of December, then there will be no

9   further opportunities to get into the settlement because the

10  amount will be locked in.

11          The amount is $775 million.  That amount will be

12  allotted based on various criteria to the individuals inside of

13  the settlement.  So once that's done, then there will be no

14  further opportunity to get into the settlement.

15          What will happen at that point is that we will

16  start trials as quickly as possible with the individuals who

17  have chosen to opt out of the settlement.  I would like to have

18  a status conference on December 12 with those individuals who

19  intend to try their cases so that I can work with them on a

20  scheduling order for them to begin getting their cases ready

21  for trial.

22          They will have the opportunity to have at least

23  six of the trial transcripts from the various trials that have

24  been going on in this case.  They will know the experts.  They

25  will see the experts who have testified at the trials.  They

09:42

1    will have an opportunity, then, to contact those experts and

2    decide whether or not they are going to use those experts at

3    the trial.

4              Hopefully I will get finished with the trials in

5    a matter of months after the scheduling.  We will do what we

6    can do in the MDL area.  I will have a number of motions that

7    undoubtedly will be focused on the MDL aspect of the case.

8    Some of the deadlines are closing in or are imminent.  Those

9    deadlines, if they haven't been met, I expect that the

10   defendants will be filing motions to dismiss.  I will have a

11   rule to show cause why the case should not be dismissed.  If

12   the cases survive those motions to dismiss, then we will be

13   able to get them on a trial track as quickly as possible.

14             I will deal with the MDL motions.  Those cases

15   that I will be remanding to state court, I've already talked to

16   the judges in state court.  They are ready to proceed, and they

17   hope to finish those cases within six months to a year.  We

18   will fast-track them, and hopefully the entire litigation will

19   be able to be resolved in a short manner.

20             MR. BIRCHFIELD:  Your Honor, you had entered a minute

21   entry encouraging the lawyers representing those claimants that

22   had elected not to enroll to be here today for the purpose of

23   discussing that schedule.  For December 12, is it your

24   anticipation that those lawyers and the defendants be proposing

25   a scheduling order?

09:44

1          If that's the case, Your Honor, I know that

2   Mike Love and maybe other lawyers representing claimants that

3   opted out have appeared here today.  I can meet with them after

4   the status conference, give them the vantage point that I have

5   about what the Court will be looking for in a scheduling order,

6   and I will be glad to provide that assistance.

7          **THE COURT:**  It seems to me that those individuals who

8   are going to be trying their case ought to be meeting as

9   quickly as possible with lead counsel to find out what's

10  available, if they don't know what's available, and which cases

11  have been tried, how to access those records, what records they

12  don't need to access because they already have copies of them,

13  things of that nature so that they are able, then, to be able

14  to, on December 12, have some idea of what's doable in a

15  scheduling order that needs to be put in place.

16          So I would urge that they get in contact with

17  lead liaison counsel to at least discuss some of the parameters

18  to inform them as to what's available because they will be

19  trying their cases.  They ought to know what has been utilized

20  or what is available for them to have in the trial of their

21  case.

22          **MR. BIRCHFIELD:**  Yes, Your Honor.  So the executive

23  committee, we will meet with those after the status conference,

24  those that are here, and then we can follow up with those that

25  are attending by phone.  Thank you.

09:45

1        **THE COURT:**  Let me also hear from the defendant on

2    this.

3        **MS. SHARKO:**  Thank you, Judge.  On behalf of the

4    defendants, we are pleased with the overwhelming positive

5    response to the settlement.  We look forward to getting to

6    December, when we make our final decision on whether to go

7    forward with it.

8            As to the cases who have chosen at this point to

9    proceed with litigation, I would just like to emphasize that

10   the CMOs in place -- and I think maybe Mr. Davis will go

11   through those in a little more detail -- provide a very clear

12   statement of what has to be done before a case can be actually

13   listed for trial and that we on the defense side intend to

14   aggressively enforce those deadlines that Your Honor set many

15   months ago.

16           I would note for the record that the deadlines

17   are on a rolling basis, but for the people who have deadlines,

18   virtually all of them are delinquent.

19           There's a filing fee payment deadline.  I can't

20   speak to that.  I suspect those fees have not been paid to the

21   Court.

22           The preservation order requirement, 89 out of 93

23   plaintiffs have failed to meet that deadline.

24           The affidavit of compliance and medical records,

25   92 out of 93 plaintiffs have failed to meet that.

09:47

1            The PFS and consent form and records,
2    production of medical records, 352 out of 442 plaintiffs have
3    failed to meet that deadline.  The short form PFS, 351 out of
4    442 plaintiffs have failed to meet those deadlines.
5            The defense firms have sent deficiency notices
6    out and will continue to send deficiency notices out.  We
7    intend to move for dismissal with prejudice and orders to show
8    cause for people who don't comply.
9            Then thereafter we have a robust list of motions
10   that will need to be addressed, either here by Your Honor or in
11   the remand courts, including a renewal of our preemption
12   motion, which we think is very significant post the recent
13   Supreme Court decision that came down after the settlement was
14   announced.  There's statute limitations motions, which
15   Your Honor has granted before under Louisiana law, learned
16   intermediary motions, and Michigan case motions, among others.
17   So we intend to pursue people aggressively on that, and we are
18   starting because a certain number of plaintiffs have indicated
19   that they are not going to proceed with the program.
20           I would urge these plaintiffs, to the extent
21   they don't understand the deadlines in the orders or what they
22   are supposed to do or how they are supposed to do it, to please
23   talk to Andy Birchfield, Brian Barr, or really anybody on the
24   PSC so they can offer their guidance.
25           **THE COURT:**  Yes.  Case Management Order 11 details

09:49

1   all the requirements of the parties.  There are several

2   requirements that the parties have to deal with in order to be

3   eligible for trial in the case.

4           In these matters, we try to streamline them.  We

5   have fact questionnaires as opposed to interrogatories.  There

6   are various motions that need to be dealt with.  I have set all

7   the deadlines in CMO 11.  If you have any questions at all,

8   anybody who is thinking about not opting in, please contact

9   lead liaison counsel to discuss it with them so that you have

10  access to whatever information they have.

11          **MS. SHARKO:**  Thank you.

12          **MR. DAVIS:**  Your Honor, just so that it's very clear,

13  the joint report, specifically at page 3, Section 4(c)

14  addresses CMO 11 and CMO 11A.

15          I point out that CMO 11 was entered about seven

16  months ago, back in March, and 11A was in September.  There

17  were certain deadlines that are set forth in those CMOs.  I

18  won't go through what each of the requirements are, but there

19  were deadlines that began on October 4 for preservation notice

20  requirements.  Those are laid out in the order as well as in

21  the joint report.  There's also a deadline of October 9, 2019,

22  which required certain services, and then another deadline of

23  October 21.  Those deadlines have passed.

24          I point out that there is another deadline

25  that's coming up soon, which is January 2 for case-specific

09:51

1    reports, all of which Your Honor has ruled upon in prior

2    orders.  Individuals who are not enrolled in the settlement

3    need to be aware of those.

4              THE COURT:  We are talking about deadlines and CMOs.

5    This is an MDL matter, a multidistrict litigation matter.  As

6    we all know, the MDL was created in the '30s.  It has taken a

7    very active role since the 1990s.  Presently 40 percent of

8    every case filed in the United States courts is in an MDL

9    proceeding, and it looks like that it is growing.

10             These cases have to be managed by one court.

11   The court is designated by the MDL court, which is a court of

12   seven judges appointed by the Chief Justice of the

13   United States.  One court then is designated, and all of the

14   cases filed in the federal system, from wherever they may have

15   been filed, are transferred to that particular court.  I am the

16   MDL court for the *Xarelto* case.  All of the cases in the

17   United States federal courts throughout the country have been

18   forwarded to us.

19             We have to have some method of doing it.  To

20   alert everybody and to make it easier, I created a website for

21   this particular case.  I put everything on the website.  I have

22   status conferences every month.  We have a transcript prepared

23   of that status conference.  I invite anybody who wishes to

24   participate to come to court.  If they can't come to court, I

25   give them a phone number for them to come.  I have oftentimes

09:53   1   hundreds of people on the phone listening in.

2          In addition to that, the transcripts then are

3   posted on the website for those individuals who may not have

4   had an opportunity to listen to the monthly proceeding.  They

5   can look at it.  In addition to the transcripts, I post the

6   calendar.  I alert everybody.  Every deposition that is being

7   taken is placed on that calendar, so anybody who's interested

8   in the deposition will know when it is taking place.

9          I put all of the Court orders on the website so

10   that they have access to those Court orders.  All of the

11   decisions that the Court has made are on the website.  The

12   website is available to everyone.  Everyone can access the

13   website and know what's going on in this case.

14          Once I put the material up and once the

15   deadlines are established, then I have to enforce the

16   deadlines.  I don't do it willy-nilly.  I give people an

17   opportunity to show cause why their case should not be

18   dismissed if they haven't followed the deadlines, if they

19   haven't followed what the requirements are.  I invite them to

20   court.  I listen to them.  If they don't show up or don't wish

21   to proceed, I dismiss the case.  I have to enforce the

22   deadlines to keep this matter moving.

23          Litigation has to come to an end.  It can't just

24   linger forever.  This case, I hope we will be seeing the end of

25   it if not this year, hopefully next year.

09:55

1          Anything further from anyone?

2          I will have a status conference on December 12.

3 On that date we ought to have significant motions filed.

4          Is anybody in the courtroom that wishes to speak

5 at this time?  Sure.  Come forward, please.

6          **MR. LOVE:**  Your Honor, Mike Love.

7          My office represents a number of

8 nonparticipating plaintiffs.  I just want to make the Court

9 aware that we are anticipating filing today or tomorrow an

10 objection to certain terms of the settlement agreement and

11 requesting relief from the Court with regard to that.

12          **THE COURT:**  Okay.

13          **MR. LOVE:**  Those issues play into some of the

14 scheduling issues that we have talked about.  There are a

15 number of terms in the settlement agreement that have nothing

16 to do with compensating plaintiffs that are settling or the

17 release of the defendants.  There are terms that are punitive

18 to everyone outside of that agreement, the nonsettling

19 plaintiffs.

20          Specifically as relates to what you are talking

21 about today, Your Honor, there's numerous terms that say that

22 everybody that's participating, which includes the PSC, is not

23 going to have anything to do with ongoing litigation.  They are

24 not going to assist ongoing litigation.  They are not going to

25 provide discovery.  They are not going to provide experts.

09:56

1    They are going to tell their experts not to help.  If those

2    terms are allowed to stand when we are asking -- the motion we

3    will be filing will be asking the Court to strike those terms.

4    But if those terms are allowed to stand, then we are going to

5    have to essentially start a do-over.  We are going to have to

6    do new depositions, new experts, all kinds of things.

7              We talked about discovery being made available.

8    I'm hoping the Court will order those terms be stricken so we

9    have access to it.  In my request to the PSC for all the

10   discovery and stuff that's been filed -- because my firm is new

11   to this litigation -- I was told no.  I was told that all that

12   would be available was the transcripts from trial and the

13   expert testimony depositions that were played at the trial; not

14   everything they did, just the things that somebody else decided

15   to play is all that would be made available.

16             If those terms are allowed to stand to the

17   detriment of nonsettling plaintiffs, we are going to have

18   motions in front of the Court to start all over again.  One of

19   those things is going to be to appoint additional PSC members

20   that can represent nonsettling plaintiffs.  There's some issues

21   with that that I will bring in my motion, but I just wanted the

22   Court to be aware of that.  We have some struggles.

23             **THE COURT:**  No, I appreciate you bringing that to my

24   attention.  Let's file your motion.

25             What I would suggest that you do, Mike, is

09:57

1    contact the PSC, discuss it with them so that you can at least

2    in your motion -- if there is an issue, I will get involved in

3    it because it's not my intention that you have to start all

4    over again.

5              **MR. LOVE:**  Thank you, Your Honor.

6              **THE COURT:**  Do you want to respond, Andy?

7              **MR. BIRCHFIELD:**  Yes, Your Honor.

8              I will be glad to sit down and discuss this with

9    Mr. Love because it's apparent that there is some

10   misinformation about the terms of the settlement agreement.

11   There is no provision that says the PSC will instruct our

12   experts not to cooperate.  That's misinformation.

13             There is a tremendous amount of information that

14   has been put together through the trials of the bellwether

15   cases, both the cases here in New Orleans and Mississippi and

16   in Philadelphia, that is available to nonparticipating

17   claimants.  All that is available will be made available to

18   these.

19             So I will be glad to discuss this with Mr. Love

20   and the terms of the settlement agreement, and we will respond

21   to the motion as filed.

22             **THE COURT:**  Yes.  It's the intention of the Court

23   that anybody who opts out of the settlement will have access to

24   material that has been developed during the process.  It's just

25   not fair for them to have to start all over again.  I will be

09:59  1  interested in monitoring that.  Whatever it is, let's talk to
       2  make sure that there's a problem first.
       3          **MR. BIRCHFIELD:**  Thank you, Your Honor.
       4          **MR. LOVE:**  Your Honor, just so the Court understands
       5  what I'm looking at, in Section 1024 of the settlement
       6  agreement it says:  No member of the XPCL -- which includes the
       7  PSC -- will make any experts retained by them for the *Xarelto*
       8  litigation available to other plaintiffs' counsel with claims
       9  in the *Xarelto* litigation or facilitate the retention of
      10  experts by any other plaintiffs' counsel.
      11          That's a contractual term that they have agreed
      12  to, and that's my concern.
      13          **THE COURT:**  I think the way that at least I
      14  interpreted that is that you have a right to contact the
      15  experts and to make arrangements with the experts to work with
      16  you as opposed to having the PSC contact the experts and pay
      17  the experts to work for you.  At this point they're off the
      18  hook from the experts' costs.  You're on the hook for the
      19  experts' costs, but you have access to the experts.  I don't
      20  see how you can't have access to the experts.
      21          If that needs to be clarified with me, I will do
      22  so, but see whether or not it's a problem first.  It's not my
      23  intention that you have to start all over again.  That's not
      24  the process that we go through.
      25          **MR. BIRCHFIELD:**  Your Honor, your interpretation

10:01

1    certainly aligns with mine and the plaintiffs' leadership
2    committee.
3              Just two issues.  We can address that.  Then the
4    second part is that the master settlement agreement itself is a
5    confidential agreement, and all the parties agreed to maintain
6    the confidentiality.  It's available to every lawyer and
7    claimant, but it's not for public consumption.  I just want to
8    make sure that everyone is reminded of that fact.
9         **MR. LOVE:**  Your Honor, it does contain a
10   confidentiality agreement, but I'm not a party to it.  I'm not
11   bound by that.  I have complaints about it.  I need to file it
12   as an exhibit potentially.
13             **THE COURT:**  File it in the record.  That's fine.
14             **MR. LOVE:**  I will.  Thank you, Your Honor.
15        **MS. SHARKO:**  On behalf of the defendants, this is a
16   private settlement agreement.  It was not a Court settlement
17   agreement, number one.  We will deal with the motion when we
18   see it.
19             Number two, it is a confidential document.  I
20   understand that the plaintiffs' lawyers had to sign something
21   to get access to it, and so I would ask that it be filed under
22   seal.
23        **THE COURT:**  Well, you need to file it for sure.
24   Let's do this.  To make sure that you get it filed, let's file
25   it under seal.  I'm not going to keep the seal forever.  To get

10:02

1    you in court, I don't want to have to deal with this issue, so

2    let's file it.  You can file it under seal with the

3    understanding that I may lift the seal immediately, but let's

4    not create an issue that doesn't exist.

5              **MR. LOVE:**  I understand, Your Honor.  I will file it

6    under seal as directed.  I do not believe it should be

7    confidential and should be public record.

8              **THE COURT:**  I understand.  I'm not making any

9    decision on that at this point.  I just want you to be able to

10   file your motion as quickly as you can so that I can take it

11   up.

12             **MR. LOVE:**  Thank you, Your Honor.

13             **MR. DAVIS:**  Your Honor, Mr. Norris said he would be

14   filing that motion soon.  We would ask that it be set for the

15   December 12 date, please.

16             **THE COURT:**  Are you okay with that?

17             **MR. LOVE:**  He said "Norris," but he meant me?

18             **MR. DAVIS:**  Yes.

19             **MR. LOVE:**  I didn't know if there was somebody else

20   we were talking about.  I will be filing it very soon.

21             **THE COURT:**  Why don't you do that, and I will set it

22   for December 12.  I hate to ask you to come back again, but it

23   would be helpful if you would be in person to argue the matter.

24             **MR. LOVE:**  I will be, Your Honor.

25             **THE COURT:**  Okay.  Great.

10:03

1          Anything else from anybody?

2          MR. MEUNIER:  Judge, specifically there are rules for

3  filing an opposition, deadlines in the Local Rules of the

4  Court.  I think it's 15 days before the hearing for motions and

5  eight days before the hearing for opposition.  If we could stay

6  as close to that as possible, I think it would be appreciated.

7          THE COURT:  That's fine.

8          MR. LOVE:  You're talking about filing it before so

9  you have time?  Absolutely.  Absolutely.

10          THE COURT:  I suggest, Mike, that you talk to Andy or

11  someone at least to find out whether or not there's an issue.

12  On the issues, bring them to me and I will deal with them.  On

13  the issues that are nonissues, get something in writing that

14  makes it plain that it's a nonissue and we don't have to deal

15  with it.

16          MR. LOVE:  I will follow that instruction,

17  Your Honor.

18          THE COURT:  Good.  Anything else?

19          Folks, thank you very much.  The next status

20  conference, then, is December 12 at 9:00 a.m.

21          MR. MEUNIER:  8:30 in chambers, 9:00 a.m. in open

22  court, and then we will have the motion practice after the

23  status conference?

24          THE COURT:  Right.

25          MR. MEUNIER:  Thank you, Judge.

10:04

1      **THE COURT:**  Court will stand in recess.  Thank you.

2      **THE DEPUTY CLERK:**  All rise.

3      (Proceedings adjourned.)

4                              * * *

5                           <u>CERTIFICATE</u>

6          I, Toni Doyle Tusa, CCR, FCRR, Official Court

7   Reporter for the United States District Court, Eastern District

8   of Louisiana, certify that the foregoing is a true and correct

9   transcript, to the best of my ability and understanding, from

10  the record of proceedings in the above-entitled matter.

11

12

13                              */s/ Toni Doyle Tusa*
                                Toni Doyle Tusa, CCR, FCRR
14                              Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25