# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | : : : : | MDL No. 2592 |
| | : | SECTION L |
| THIS DOCUMENT RELATES TO: | : | |
| *Catherine Robinson, No. 19-06876* | : | **JUDGE ELDON E. FALLON** |
| *Deborah Anderson, No. 19-07007* | : | |
| *Gayle Sellers, No. 19-12205* | : | **MAGISTRATE JUDGE NORTH** |
| *Francis Rixford, No. 19-06961* | : | |
| *George Malone, No. 19-06704* | : | |
| *Andre Hawley, No. 19-06794* | : | |
| *Thomas Kenny, No. 19-06806* | : | |
| *Doris Rotolo, No. 19-06706* | : | |
| *Claude Wood, No. 19-06997* | : | |
| *Curtis Jones, No. 19-06956* | : | |
| *Wallace La Londe, No. 19-06989* | : | |
| *Kathleen Brodkin, No. 19-06910* | : | |
| *Virginia Griffith, No. 19-06844* | : | |
| *Nancy Alexander, No. 19-06822* | : | |
| *Rafic Redwan, No. 19-06732* | : | |

## ORDER & REASONS

Before the Court is Movants' Objections to Certain Terms Contained in the Proposed Private Settlement in the multi-district case involving the prescription drug Xarelto. R. Doc. 17467. Plaintiffs' Steering Committee filed a response. R. Doc. 17502. Defendants also opposed the Objections. R. Doc. 17499-1. The Court now rules as follows.

**I.  BACKGROUND**

The current dispute arises out of the private settlement in the MDL case involving the medication known as Xarelto. To put this matter in perspective, a brief review of the litigation is helpful. Beginning in 2014, lawsuits were filed in federal courts throughout the nation against Defendants, Bayer Corporation, Bayer HealthCare LLC, Bayer HealthCare Pharmaceuticals Inc., Bayer HealthCare AG, Bayer Pharma AG, and Bayer AG, Janssen Pharmaceuticals, Inc., Janssen

Research & Development, LLC, Janssen Ortho LLC, and Johnson & Johnson. In their suits, the Plaintiffs specifically allege that they or their family members suffered severe bleeding and other injuries due to Xarelto's allegedly inadequate warning label as well as other theories.

The Judicial Panel on Multidistrict Litigation determined that the Plaintiffs' claims involved common questions of fact, and that centralization under 28 U.S.C. § 1407 would serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. Therefore, on December 12, 2014, the Judicial Panel on Multidistrict Litigation consolidated the Plaintiffs' Xarelto claims into a single multidistrict proceeding ("MDL 2592"). MDL 2592 was assigned to Judge Eldon E. Fallon of the United States District Court for the Eastern District of Louisiana to coordinate discovery and other pretrial matters in the pending cases. Subsequent Xarelto cases filed in federal court have been transferred to this district court to become part of MDL 2592 as "tag along" cases; at its peak, the Court had over 30,000 cases in the Xarelto MDL.

In February 2015, the Court issued Pretrial Order #7 appointing members to the Plaintiffs' Steering Committee ("PSC"). R. Doc. 169. Since their appointment, the members of the PSC, their firms, and coordinated counsel have worked on behalf of the plaintiffs in this litigation. The PSC has expended considerable time and resources to develop the plaintiffs' claims, including but not limited to the following: (1) conducting no less than 83 depositions of Defendants' executives, scientists, and other employees; (2) submitting a total of 16 thoroughly prepared expert reports issued by witnesses retained on the plaintiffs' behalf; (3) engaging in extensive briefing on dispositive issues, as well as on numerous critical evidentiary matters; (4) being involved in over 3,000 Orders entered by this Court to resolve discovery disputes, trial issues, and related matters; and (5) participating in a total of 6 bellwether trials (conducted both in the MDL and in parallel

2

state court proceedings in Pennsylvania), each of which proceeded for approximately two weeks and involved the presentation of evidence including substantial expert witness and corporate testimony. R. Doc. 17502 at 2. The PSC has assembled a "trial package" consisting of various depositions, expert reports, trial transcripts, law memoranda, and briefs used in the development of this litigation. This material is available to any litigant who decides to not opt into the settlement program and instead proceeds to trial. R. Doc. 17502 at 2.

After years of discovery and bellwether trials, the PSC and the Defendants entered into settlement discussions and in early 2019, reached a settlement. On March 25, 2019, the PSC and Defendants announced the Master Settlement Agreement, a private agreement that was negotiated over the course of several months and reflected compromises on both sides that were informed by years of pretrial discovery, motion practice, and trials. R. Doc. 17499-1 at 2. This is an opt-in settlement program and thus far, over 99 percent of the plaintiffs in this litigation have chosen to opt into the settlement. After the settlement was reached, fifteen new plaintiffs retained the Mike Love Firm to file claims on their behalf. These new actions were consolidated with this MDL and have the opportunity to opt into the settlement. On November 6, 2019, the Mike Love Firm, representing the moving Plaintiffs ("Movants"), contacted the PSC and Defendants' counsel to express opposition to the proposed settlement. R. Doc. 17499-1 at 2. At the November 7, 2019 *Xarelto* monthly status conference, the Court was advised of the Love opposition and the Court instructed Mike Love to file his opposition to the proposed settlement agreement on the record and set the objections for hearing on December 12, 2019. R. Doc. 17440. Movants filed their objections on November 19, 2019, R. Doc. 17467, and the PSC and Defendants responded to the objections on December 6, 2019, R. Docs. 17502, 17499-1. The hearing on Movants' objections was held on December 12, 2019 following the monthly status conference.

## II. PRESENT MOTION

Movants' objections target certain terms in the proposed private settlement and seek the following relief: (1) an order striking a number of terms in the settlement agreement, including but not limited to all terms contained in section 10 of the agreement; (2) an order setting a hearing to determine if the Court should conditionally certify a settlement class; (3) an order setting a fairness hearing regarding the fairness of any revised global settlement proposal; (4) an Order striking section 3.8 of the proposed agreement; (5) an order that grants Plaintiffs additional time to consider enrollment in a court-supervised class settlement; (6) an order appointing additional counsel to serve on a second PSC for plaintiffs not enrolled in the settlement program; and (7) an order abating pending CMO deadlines applicable to non-settling plaintiffs until the second PSC is appointed. R. Doc. 17467 at 27.

In response, the PSC opposes Movants' first request because it asks that the Court "forcibly impose and certify a class settlement on the parties in litigation," which the Court is not authorized to do because this litigation is a multi-district litigation and not a class action under Federal Rule of Civil Procedure 23. R. Doc. 17502 at 5. Additionally, the PSC argues that Movants do not have standing to ask the Court to either set aside or modify the proposed settlement agreement because they have not opted into the program and are not bound by the terms of the settlement agreement. R. Doc. 17502 at 5. The PSC points to the fact that if Movants do not agree with the settlement agreement, they are not prejudiced or bound by its provisions and can take full advantage of the trial package made available by the PSC and proceed to trial. R. Doc. 17502 at 7. Moreover, the PSC disputes Movants' claim that provisions of the settlement agreement are unethical, highlighting the fact that the provisions were only agreed to after consultation with separate ethics

4

counsel and that all attorneys whose clients opt into the settlement can avail themselves of the "safe harbor" language included in the settlement agreement. R. Doc. 17502 at 9. Finally, the PSC does not see the need for a second PSC to be appointed, as only a small number of firms are declining to opt into the settlement process and all general discovery has already been completed, so only case-specific discovery may be required. R. Doc. 17502 at 10.

Defendants Bayer Corp. et al. also oppose Movants' objections and requested relief for several reasons. R. Doc. 17499-1. First, Defendants emphasize that the Court has no authority to overturn a private settlement agreement between consenting parties and this MDL does not involve a class-action that would authorize the Court to establish a settlement class. R. Doc. 17499-1 at 3. Second, Defendants contend Movants lack standing to challenge the settlement because they have declined to participate in the proposed settlement and are not bound by its provisions. R. Doc. 17499-1 at 3. Third, Defendants assert that the proposed settlement agreement does not impact Movants' legal rights because they have access to the relevant discovery previously taken in the case and can use this trial package to proceed with their respective cases. R. Doc. 17499-1 at 4. Finally, Defendants do not think there is a need to appoint a new PSC because generic discovery has already been completed and all that remains is case-specific work. R. Doc. 17499-1 at 5.

### III. LAW AND ANALYSIS

#### A. *Whether Movants have standing to challenge the private settlement*

Standing is a prerequisite to a court's exercise of jurisdiction. *Doe v. Tangipahoa Parish Sch. Bd.,* 494 F.3d 494, 496 n.1 (5th Cir. 2007). Moreover, "non-settling parties generally have no standing to challenge [a] settlement." *In re Vioxx Prod. Liab. Litig.*, 388 F. App'x 391, 395 (5th Cir. 2010) (citing *Transam. Refining Corp. v. Dravo Corp.,* 952 F.2d 898, 900 (5th Cir. 1992)); *see also Agretti v. ANR Freight Sys.,* 982 F.2d 242, 246 (7th Cir. 1992) ("'[N]on-settling defendants

in a multiple defendant litigation context have no standing to object to the fairness or adequacy of the settlement by other defendants.'") (internal citation omitted). "The rationale behind this general rule is that settlement will not affect any substantive legal rights of non-settling parties." *Vioxx*, 388 F. App'x at 395 (citing *Transam. Refining Corp.,* 952 F.2d at 900). An exception to the general rule may apply if the settlement agreement results in "plain legal prejudice" to a non-settling party. *Id.* (citing *Agretti,* 982 F.2d at 246–47); *see also Bass v. Phoenix Seadrill/78, Ltd.,* 749 F.2d 1154, 1160 n.10 (5th Cir. 1985) (stating that the court may consider "an attempt by a non-party to the settlement to void portions of the agreement that purport to affect the rights of non-settlors"). But "[m]ere allegations of injury in fact or tactical disadvantage as a result of a settlement simply do not rise to the level of plain legal prejudice." *Agretti,* 982 F.2d at 247. Moreover, in *Vioxx*, the Fifth Circuit concluded that because the settlement agreement in question was structured as an "opt-in" private settlement agreement rather than an "opt-out" settlement agreement, the challenging plaintiffs could not demonstrate they had suffered the type of legal prejudice that would afford them standing to challenge the agreement. *Vioxx,* 388 F. App'x at 395.

In this case, Movants contend they have standing to object to the private settlement agreement because "certain terms of the agreement substantially impair the rights of non-settling plaintiffs (including Movants) resulting in a clear legal prejudice to Movants." R. Doc. 17467 at 2.

In opposition, the PSC and Defendants argue Movants do not have standing to challenge the private agreement. R. Docs. 17502 at 6, 17499-1 at 7. The PSC and Defendants highlight the fact that because Movants are non-participants in the settlement agreement, they are not prejudiced or bound by its provisions and are free to take full advantage of the trial package available to them. R. Docs. 17502 at 6, 17499-1 at 8–9. Moreover, Defendants contend that Movants do not suffer

6

any legal prejudice as a result of the agreement. R. Doc. 17499-1 at 9. Instead, Defendants assert that Movants only suffer from the "tactical disadvantage" of having to litigate the cases they brought, without having other plaintiffs' counsel (such as the PSC) do the work. R. Doc. 17499-1 at 9.

The Court concludes that the private settlement agreement does not legally prejudice Movants because they are free to not opt-in—as they have thus far decided—and proceed with their individual cases utilizing the trial package prepared by the PSC. At best, the Court only sees a potential "tactical disadvantage" that Movants may suffer; namely, that the plaintiffs' counsel who were involved throughout the course of this litigation will no longer be involved in this litigation and will not aid Movants in preparation of their individual cases beyond what they have already done in preparing the trial package materials. This is not sufficient to support a claim of legal prejudice. Thus, the Court concludes that Movants lack standing to contest the settlement agreement. Furthermore, even if Movants did have standing to challenge the private settlement agreement, the Court does not agree that the agreement is prejudicial to Movants for the reasons stated below.

### B. *Whether certain terms of the private settlement agreement are unfair and prejudicial to Movants*

Movants emphasize aspects of sections 3.8 and 10 of the private settlement agreement in support of their contention that the agreement is unfair and prejudicial to them. R. Doc. 17467 at 10, 16–25. Moreover, Movants contend that these sections are "punitive and illegal" and should be struck from the agreement by the Court. R. Doc. 17647 at 4.

The PSC consulted a qualified and independent ethics counsel to review and approve the provisions in Section 10 of the agreement and these provisions were only included after approval was given. R. Doc. 17502 at 5. Additionally, Movants' counsel—and all counsel—are protected

by the "safe harbor" provision language in the settlement agreement, which means the applicable restrictions of local ethics rules will govern and, if necessary, modify or override the agreement provisions. All the ethics issues raised by Movants have been addressed and resolved during the negotiation and execution of the settlement agreement and while Movants' counsel can disagree with the conclusions reached, he is not entitled to seek a court-ordered revision of the entire agreement, which has been reviewed and accepted without any suggested modifications by over 99 percent of the plaintiffs in this litigation.

A plain reading of the settlement agreement, along with the PSC's assurances that the entire trial package is available to all non-settling plaintiffs, leads the Court to conclude that the private agreement is not unfair, punitive, or prejudicial to non-settling plaintiffs. Movants are free to not opt into the settlement and instead, proceed with their individual cases. Moreover, because general discovery has concluded in this matter, the Court does not find it to be necessary to appoint a second PSC at this time.

## IV. CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that the Movants' Requested Relief is **DENIED** in its entirety.

New Orleans, Louisiana, on this 17th day of December, 2019.

_____
UNITED STATES DISTRICT COURT JUDGE