UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCT LIABILITY LITIGATION | ) ) MDL 2592 ) ) SECTION L ) ) HONORABLE ELDON E. FALLON ) ) MAG. JUDGE NORTH ) ) ) |
| **This Document Relates To: ALL CASES** | |

## ORDER TO ESTABLISH QUALIFIED SETTLEMENT FUND

THIS COURT, upon consideration of the following:

1. THIS MATTER HAVING come before the Court by the Xarelto Plaintiffs' Counsel Leadership ("XPCL") to approve an Order Establishing a Qualified Settlement Fund as required under the Xarelto Settlement Agreement and establishing ARCHER Systems, LLC as the Qualified Settlement Fund Administrator as selected by the XPCL and as authorized to do so under the Settlement Agreement:

2. Under the terms of the Settlement Agreement, Bayer Pharma AG and Janssen Pharmaceuticals, Inc. (collectively "Defendants"), will pay the Aggregate Settlement Amount, as defined in the Settlement Agreement, into the Qualified Settlement Fund in accordance with the terms and timing of the Settlement Agreement and an Escrow Agreement. Amegy Bank of Texas, a division of Zions Bancorporation, N.A., a financial institution headquartered in Texas, at the request and recommendation of the XPCL and the QSF Administrator, will serve as the Escrow Agent (hereinafter "Amegy" or "Escrow Agent" or "Bank").

3. By order of this Court, a Qualified Settlement Fund ("QSF") shall be established within the meaning of section 468B of the Internal Revenue Code of 1986, as amended ("Code") and Treasury Regulation sections 1.468B-1, *et seq.*, and remain subject to the continuing jurisdiction of this Court until the funds in the QSF are distributed in their entirety or upon further order of this Court, consistent with Treasury Regulation Section 1.468B-1(c)(1).

4. This Court has jurisdiction over this matter under Treas. Reg. Section 1.468B-1(c)(1), which states in relevant part that a QSF "is established pursuant to an order of, or is approved by, the United States, any state (including the District of Columbia), territory, possession, or political subdivision thereof, or any agency or instrumentality (including a court of law) … and is subject to the continuing jurisdiction of that governmental authority."

5. XPCL requests that the Court approve the engagement of ARCHER Systems, LLC as the administrator of the QSF ("QSF Administrator"). ARCHER possesses the requisite resources and experience to properly and effectively setup and administer the QSF. ARCHER's address is as follows: 1775 Saint James Place, Suite 200, Houston, Texas 77056. ARCHER submits personally to the jurisdiction of this Court. ARCHER, as the QSF Administrator, will be authorized to make distributions from the QSF consistent with the Settlement Agreement, the Escrow Agreement, and the orders of this Court. Should ARCHER experience dissolution or bankruptcy, its appointment as QSF Administrator shall terminate and XPCL will seek Court approval of a successor QSF Administrator.

6. The Aggregate Settlement Amount required to be paid by Bayer Pharma AG and Janssen Pharmaceuticals, Inc., under the terms of the Settlement Agreement, will be deposited into the QSF, pursuant to that Agreement. Any Liabilities of Defendants to the Enrolled Program Claimants, as

that term is defined in the Settlement Agreement, shall terminate with its payments of the Aggregate Settlement Amount into the QSF.

7. The QSF Administrator shall be empowered to take all actions the QSF Administrator deems necessary to assure that the QSF is treated as a "qualified settlement fund" under Section 468B of the Internal Revenue Code and the Regulations promulgated pursuant thereto.  In the event that any terms of this Order shall at any time be considered cause for the Fund to fail to qualify as a "qualified settlement fund" per Section 468B of the Code together with any and all Treasury Regulations and Internal Revenue Service notices, Announcements and directives thereunder, such offending portion of this Order shall be considered null, void, and of no effect, without any action by any court or by the QSF Administrator, so that this Fund continues to qualify as a "qualified settlement fund" in compliance with Section 468B of the Code and the applicable administrative authority and announcements thereunder.  In the event that this paragraph applies to rend an offending Section null, void, or of no effect, the XPCL and QSF Administrator shall so advise this Court and the remainder of this Order shall not be affected thereby, and each remaining term and Section of the Agreement shall be valid and enforced to the fullest extent permitted by law.

8. The Aggregate Settlement Amount is the sole property of the QSF.  No portion of the Aggregate Settlement Amount shall be made available to the Qualified Claimants as determined by the Settlement Agreement in any fashion, except as specifically set forth in the Settlement Agreement and the orders of the Court.  Until such time as monies are distributed from the QSF, the Qualified Claimants and the XPCL shall not possess any rights to demand or receive any portion of the Aggregate Settlement Amount or to mortgage, pledge or encumber the same in any manner except as provided in the Settlement Agreement.  To the extent possible, this shall be construed so

as to prevent the Qualified Claimants and the XPCL from being in constructive receipt, as determined under federal income tax principles, of any amounts held by the QSF.

9. The XPCL requests that no bond be required, provided that all settlement proceeds, which include all principal and interest earned thereon, shall be deposited in an account held in custody at the Escrow Agent titled in the legal name of, the Xarelto Qualified Settlement Fund for the benefit of those authorized to benefit from it pursuant to the Settlement Agreement and the Orders of this Court. The Bank shall invest monies deposited pursuant to the instructions of the QSF Administrator. Such investments may be (a) with third parties in instruments/securities comprised of United States Agency, Government Sponsored Enterprises or Treasury debt securities or obligations (maturities not to exceed five years at a time of purchase) or mutual funds invested solely in such instruments (average maturity not to exceed five years); (b) with third parties in cash equivalent securities including SEC registered money market funds and collateralized money market accounts; (c) in one or more checking accounts at the Bank up to current FDIC insurance limits; and (d) certificates of deposit that are fully insured by the Federal Deposit Insurance ("FDIC") through use of the Certificate of Deposit Account Registry Services ("CDARS"), and/or Insured Cash Sweep ("ICS") pursuant to the CDARS/ICS Deposit Placement Agreement with the Bank. The Bank shall be responsible for following the written investment instructions of the QSF Administrator. The QSF Administrator shall be responsible for ensuring that a principal preservation investment policy is implemented. Notwithstanding the foregoing, the Bank shall not be allowed to distribute any income or principal from the QSF except upon written instructions of the QSF Administrator with the authorizations required under the Escrow Agreement and an order of this Court. The QSF Administrator retains the right to remove the Bank with or without cause;

in its sole and absolute discretion.  The QSF Administrator may designate a replacement bank upon the written consent of the XPCL and this Court.  In the event of such replacement, the terms and conditions of this paragraph, including without limitation, those addressing bond requirements, investments, and distributions from the QSF, shall apply to any such replacement bank.  The QSF Administrator shall not be liable for any losses as a result of investing the Aggregate Settlement Amount as directed by the Court.  Any such losses shall not be recoverable from the parties to the Settlement Agreement or Escrow Agreement, and those same parties shall have no responsibility for the QSF Administrator's performance.  Any interest or investment income earned on the account(s) of the QSF shall inure to the benefit of the QSF and shall be used first to pay any taxes and tax return administration/preparation costs for the QSFs, and second, if there are any funds left over, to contribute to the payment of claims administration costs (including without limitation, the expenses of tax attorneys and accountants, bank fees, wire fees, check stoppage fees, audits and legal costs), and any other costs associated with administration of the QSF.  The QSF Administrator shall direct any and all payments of such interest or investment income and any interest accrued on the QSF account consistent with the terms of the Settlement Agreement and with the authorizations required pursuant to the Escrow Agreement.

10.     The QSF Administrator shall disburse funds from the QSF in accordance with the terms of the Settlement Agreement, the Escrow Agreement, and the orders of the Court and shall withhold from payments to the Qualifying Claimants the amounts necessary for the common benefit fund and for the satisfaction of liens as required by the Settlement Agreement.  The common benefit fund and the amount of the withholdings shall only be established by the Court pursuant to an Aggregate Common Benefit Fee and Cost petition from the Plaintiffs' Steering Committee.

11. Within fifteen (15) days of the end of each calendar quarter, the QSF Administrator will prepare and deliver QSF Statements ("Statement") to the XPCL and the Court (if requested). The Statements shall include a statement of receipts, investment earnings, and disbursements. The management of the QSF shall be subject to review by this Court.

12. The QSF Administrator shall have the right to rely upon affidavit, certificate, letter, notice, electronic mail or other document believed by the QSF Administrator to be genuine and sufficient, and upon any other evidence believed by the QSF Administrator, in its reasonable judgment, to be genuine and sufficient, which may be provided to the QSF Administrator by the XPCL.

13. As provided in the terms of the Settlement Agreement, Defendants and other Released Persons, as defined in the Settlement Agreement, shall in no way be responsible for the expenses of the QSF Administrator or the administration of the Qualified Settlement Fund. Nor shall Defendants and other Released Persons in any way be associated with the administration of the Qualified Settlement Fund or have any liability with regard to the conduct of the QSF Administrator or the QSF itself. Further, upon payment of the Aggregate Settlement Amount as required by the Settlement Agreement, Defendants and other Released Persons shall have no liability to the Enrolled Program Claimants under the Settlement Agreement.

14. The QSF Administrator shall be indemnified and held harmless by the XPCL or any claimants and/or their counsel, (current and/or future, as applicable) from any claims made by any alleged lien holder, or other person or entity that attempts to assert a right of payment, reimbursement or garnishment of the QSF. Should the QSF Administrator be named as a party to, or threatened to be made a party to, any threatened, pending or completed action, suit or proceeding

of any kind, whether civil, administrative or arbitrative, and whether brought by or against or otherwise involving the QSF, by reason of the QSF Administrator having served in any capacity on behalf of the QSF, the QSF Administrator shall be indemnified and held harmless by the XPCL, and any Enrolled Program Claimant (current and/or future, as applicable) against reasonable expenses, costs and fees (including attorney fees), judgment, awards, costs, amounts paid in settlement, and liabilities of all kinds incurred by the QSF Administrator in connection with or resulting from such actual or threatened action, suit or proceeding; except to the extent that it is finally determined by this Court that the QSF Administrator was negligent or acted with willful misconduct in connection with the administration of the QSF.

15.     The QSF, by and through the QSF Administrator, may purchase and assign any structured settlements created under the release agreements with individual Qualified Claimants. Any structured settlement annuity contract shall be issued by a life insurance company that is rated A+ or better by A.M. Best Company.[1]     Such Qualified Claimants (and their attorneys, as applicable), shall agree in writing to a discharge of the proceeds from the QSF and the QSF Administrator's liabilities in the making of any structured settlement payments, also known as periodic payments, by executing, along with the QSF Administrator, any necessary documents required or related to the discharge of those liabilities.

---

[1] Structured Settlement Payments are assigned to a qualified assignee by entering into qualified assignments of such structured settlement payments within the meaning of Section 130(c) of the Code.  The qualified assignee shall, respecting each person who is to receive period payments under a settlement agreement, purchase one or more qualified funding assets within the meaning of Section 130(d) of the Code to fund any structured settlement payments assigned to the qualified assignee.

16.     Upon final distribution of all monies paid into the QSF, the QSF Administrator shall take appropriate steps to wind down the QSF, and, thereafter, be discharged from any further responsibility with respect to the settlement payment.

**DOES HEREBY FURTHER ORDER** that:

1.      The Xarelto Qualified Settlement Fund shall be established as a QSF within the meaning of Treas. Reg. § 1.468B-1 and pursuant to the jurisdiction conferred on this Court by Treas. Reg. § 1468B-1(c)(1) and shall be a trust under state law. The QSF shall remain subject to the continuing jurisdiction of this Court consistent with Treasury Regulation Section 1.468B-1(c)(1).

2.      ARCHER Systems, LLC, is hereby appointed as QSF Administrator pursuant to the terms, conditions, and restrictions of this Order, and is hereby granted the authority to conduct any, and all activities necessary to administer and ultimately wind down the QSF as described herein (including, without limitation, being authorized to make distributions from the QSF consistent with the Settlement Agreement, the authorizations required pursuant to the Escrow Agreement, and the orders of this Court, including any orders establishing an Aggregate Common Benefit Fee and Expense Award).

3.      Pursuant to the request and recommendation of the XPCL and the QSF Administrator, Amegy is hereby appointed the Escrow Agent and as the financial institution at which the QSF Administrator will establish bank and investment accounts for the QSF in accordance with this Order. The XPCL shall establish the account for the QSF at Amegy and provide wire instructions, to Defendants, within five (5) business days of the entry of this Order.

4.      Once the Aggregate Settlement Amount required to be paid by Bayer Pharma AG and Janssen Pharmaceuticals, Inc. under the terms of the Settlement Agreement, are deposited into

8

the QSF, any Liabilities of Defendants to the Enrolled Program Claimants, as that term is defined in the Settlement Agreement, shall be terminated, and Defendants shall have no further obligations to the QSF or the Enrolled Program Claimants.

5.   This Order is subject to amendment by the Court *sua sponte* or upon motion. The Court retains jurisdiction over all matters covered by, or related to, this Order.

New Orleans, Louisiana, this 6th day of January, 2020.

*[signature: Eldon E. Fallon]*

**HONORABLE ELDON E. FALLON**
**UNITED STATES DISTRICT JUDGE**