```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

****************************************************************
IN RE:  XARELTO (RIVAROXABAN)
PRODUCTS LIABILITY LITIGATION

                         Civil Action No. 14-MD-2592
                         Section "L"
                         New Orleans, Louisiana
                         December 12, 2019

THIS DOCUMENT RELATES TO VARIOUS CASES
****************************************************************

                 TRANSCRIPT OF STATUS CONFERENCE
          HEARD BEFORE THE HONORABLE ELDON E. FALLON
                  UNITED STATES DISTRICT JUDGE
```

APPEARANCES:

FOR THE PLAINTIFFS' LIAISON COUNSEL:

```
                    LEONARD DAVIS
                    HERMAN HERMAN & KATZ
                    820 O'KEEFE AVENUE
                    NEW ORLEANS, LA 70113

                    GERALD E. MEUNIER
                    GAINSBURGH BENJAMIN DAVID AND WAUSHER
                    2800 ENERGY CENTRE
                    1100 POYDRAS STREET
                    NEW ORLEANS, LA 70163
```

FOR THE PLAINTIFFS:

```
                    ANTHONY BIRCHFIELD, JR.
                    BEASLEY ALLEN CROW METHVIN PORTIS & MILES
                    POST OFFICE BOX 4160
                    MONTGOMERY, AL 36103

                    DAWN BARRIOS
                    BARRIOS KINGSDORF & CASTEIX
                    701 POYDRAS STREET
                    SUITE 3650
                    NEW ORLEANS, LA 70139
```

```
FOR THE DEFENDANTS' LIAISON COUNSEL:

                         JAMES B. IRWIN
                         IRWIN FRITCHIE URQUHART & MOORE
                         TEXACO CENTER
                         400 POYDRAS STREET
                         SUITE 2700
                         NEW ORLEANS, LA 70130

FOR THE DEFENDANTS:

                         JOHN F. OLINDE
                         CHAFFE MCCALL
                         1100 POYDRAS STREET
                         NEW ORLEANS, LA 70163

                         SUSAN M. SHARKO
                         DRINKER BIDDLE & REATH
                         600 CAMPUS DRIVE
                         FLORHAM PARK, NJ 07932

                         CHANDA MILLER
                         DRINKER BIDDLE & REATH
                         1 LOGAN SQUARE
                         PHILADELPHIA, PA 19103

                         STEVEN JAY GLICKSTEIN
                         ARNOLD & PORTER KAYE SCHOLER
                         250 WEST 55TH STREET
                         NEW YORK, NY 10019


ALSO PRESENT:      MIKE LOVE
                   BENJAMIN MCCORKLE
                   CLINT MCGUIRE
                   DON MEDLEY
                   TOM SMITH
                   JULIE RAPHAEL
                   KEN STERN
                   TIM FARRIS

Official Court Reporter:     Nichelle N. Drake, RPR, CRR
                             500 Poydras Street, B-275
                             New Orleans, Louisiana 70130
                             (504) 589-7775


     Proceedings recorded by mechanical stenography,
transcript produced via computer.
```

1       **P R O C E E D I N G S**

2               (Call to order of the court.)

09:00:57AM   3   THE COURT:  Good morning, ladies and gentlemen.  Let's call

09:00:59AM   4   the case.

09:01:00AM   5           THE CASE MANAGER:  MDL No. 2952, *In Re:  Xarelto*

09:01:03AM   6   *Products Liability Litigation*.

09:01:05AM   7           THE COURT:  Liaison counsel, make their appearance

09:01:09AM   8   for the record, please.

09:01:12AM   9           MR. DAVIS:  Good morning, Your Honor, Leonard Davis

09:01:14AM   10  from the law firm of Herman, Herman & Katz, plaintiffs'

09:01:18AM   11  co-liaison counsel.

09:01:20AM   12          MR. OLINDE:  Your Honor, John Olinde for liaison

09:01:24AM   13  counsel for the Bayer defendants.  Kim Moore gives her

09:01:27AM   14  apologizes for not being here today.

09:01:29AM   15          THE COURT:  This is our monthly status conference.

09:01:31AM   16  What I do in these status conferences, is that three days

09:01:36AM   17  before the status -- every month, I have a status conference.

09:01:40AM   18  I open the status conference to telephone individuals who

09:01:45AM   19  wish to be on to monitor this.  Oftentimes, state judges

09:01:53AM   20  monitor it so they know what's happening in my court so it

09:01:57AM   21  can be of assistance to their court.  We work very closely

09:02:01AM   22  together, and that's one of the things we do with the status

09:02:04AM   23  conferences.

09:02:04AM   24          I also create a web page.  I put everything on the

09:02:08AM   25  web page, including the transcript of this conference in the

09:02:12AM   1   event people cannot be here, they know what's happening.  But

09:02:16AM   2   two days before the conference is set, I receive from the

09:02:20AM   3   parties a proposed agenda.  Half an hour before the status

09:02:26AM   4   conference, I meet with the liaison counsel and lead counsel

09:02:33AM   5   for both sides to discuss the proposed agenda.  Sometimes I

09:02:37AM   6   reshape it and things that are No. 1, I put No. 3, other

09:02:42AM   7   things I add to the agenda.  I've had that meeting today with

09:02:49AM   8   liaison and lead for both sides and discussed with them the

09:02:54AM   9   proposed agenda.

09:02:55AM  10        We'll take it in the order presented with the

09:02:59AM  11   exception that I will be hearing the motions after the

09:03:04AM  12   proposed agenda and we'll take it from the top in the

09:03:09AM  13   beginning.  Let me hear from liaison counsel.

09:03:15AM  14        MR. DAVIS:  Thank you, Your Honor.  This is Joint

09:03:16AM  15   Report No. 42, and it is the last report of the year and I

09:03:21AM  16   begin by wishing you and your entire staff and everyone here

09:03:25AM  17   a happy holiday season.

09:03:27AM  18        THE COURT:  Same from us.

09:03:29AM  19        MR. DAVIS:  I hope it's a good new year for everyone.

09:03:32AM  20        Your Honor, there are a number of items on the Joint

09:03:38AM  21   Report and there are also several items that will occur after

09:03:40AM  22   the Joint Report.  There are three particular items that will

09:03:45AM  23   be dealt with following the status conference.  One is a

09:03:48AM  24   motion by Mr. Love.  The other is CMO 12 issues, and the

09:03:55AM  25   third is an individual motion to reinstate.  So all of those

09:04:01AM  1   will occur after the status conference is over as I

09:04:05AM  2   appreciate.

09:04:06AM  3       With respect to the number of items in the joint

09:04:09AM  4   report, the first item for discussion is the settlement, and

09:04:13AM  5   Mr. Birchfield and Ms. Sharko are here to address issues if

09:04:19AM  6   there are anything that the Court specifically wants with

09:04:24AM  7   respect to settlement.

09:04:25AM  8       MR. BIRCHFIELD:  All right.  Good morning, Your

09:04:27AM  9   Honor.  Just a brief update on where we stand with the

09:04:29AM  10  settlement program.  The settlement, the settlement program,

09:04:31AM  11  that offer was announced on March 25th, and we had an

09:04:36AM  12  enrollment period that was initially August the 5th and that

09:04:39AM  13  was extended per terms of the agreement to September the 4th.

09:04:44AM  14  That enrollment, that enrollment period expired there.

09:04:49AM  15  There's a 60-day window for BrownGreer, the claims

09:04:54AM  16  administrator, to review the data and prepare a report to the

09:04:59AM  17  defendants and the defendants now have until December

09:05:02AM  18  the 18th to -- to determine whether there's an opportunity

09:05:06AM  19  for them to exercise their walkaway rights.

09:05:10AM  20      The terms of the settlement agreement require certain

09:05:14AM  21  participation thresholds be met, and so while we're not in a

09:05:18AM  22  position to say officially, because I can only see the data

09:05:23AM  23  from my -- my vantage point, the defendants have the

09:05:26AM  24  opportunity to vet all of the data up until December

09:05:30AM  25  the 18th.  But the overwhelming response of the plaintiffs is

```
09:05:34AM   1    in favor of this settlement agreement.  We're at
09:05:37AM   2    approximately 99 percent participation of the 20 -- nearly
09:05:44AM   3    29,000 eligible -- eligible claimants.  There are different
09:05:48AM   4    categories, and I'm confident that -- that by December
09:05:52AM   5    the 18th, we will -- we'll be in a place where it is shown
09:05:56AM   6    that we have met all of the thresholds here.
09:05:59AM   7          So I'm very pleased to report to the Court that the
09:06:05AM   8    settlement program is advancing favorably and efficiently,
09:06:09AM   9    Your Honor.
09:06:10AM  10          THE COURT:  All right.  This is an opt-in program.
09:06:12AM  11    People have an opportunity to opt in.  If they wish to opt
09:06:15AM  12    in, they can do so.  If they don't wish to opt in, they need
09:06:20AM  13    not opt in, and 99 percent of the census has agreed to now
09:06:26AM  14    opt in.  Is that what you're telling me?
09:06:28AM  15          MR. BIRCHFIELD:  Yes, Your Honor.
09:06:29AM  16          THE COURT:  Anything from the defendants?
09:06:31AM  17          MS. SHARKO:  No, Your Honor.
09:06:32AM  18          THE COURT:  All right.  Let's go to the next item.
09:06:35AM  19          MR. DAVIS:  Your Honor, Item No. 2 is a little
09:06:38AM  20    overlap with Item No. 4, specifically with respect to CMO 11.
09:06:47AM  21    There's a report with respect to compliance and documents
09:06:54AM  22    that are to be served under CMO 11, which are obligations
09:07:00AM  23    pursuant to the Court's order, and I remind individuals, when
09:07:03AM  24    they do that, the Court has used MDL Centrality, which is
09:07:10AM  25    where those documents are.
```

| | | |
|---|---|---|
| 09:07:11AM | 1 | I think Ms. Miller is prepared -- Ms. Sharko is |
| 09:07:16AM | 2 | prepared to address to CMO 11. |
| 09:07:17AM | 3 | THE COURT:  Let me mention that.  In these cases, I |
| 09:07:20AM | 4 | found over the years that the traditional discovery devices |
| 09:07:28AM | 5 | have to be tweaked a bit.  One of the discovery devices is |
| 09:07:33AM | 6 | interrogatories.  They simply do not work in an MDL |
| 09:07:35AM | 7 | proceeding.  The reason they don't work is that -- generally |
| 09:07:40AM | 8 | questions asked by a lawyer and questions answered by a |
| 09:07:45AM | 9 | lawyer, and in that type situation, the lawyer who is asking |
| 09:07:47AM | 10 | the questions wants everything from the beginning of time and |
| 09:07:51AM | 11 | the person answering the question, the lawyer answering the |
| 09:07:55AM | 12 | question, doesn't want to answer anything.  So it generates a |
| 09:07:58AM | 13 | lot of motions and that slows up matters in MDL proceedings. |
| 09:08:05AM | 14 | So we don't do interrogatories.  Instead, we have fact |
| 09:08:10AM | 15 | questions and we have other devices requiring both sides to |
| 09:08:17AM | 16 | answer certain questions and that goes out and the parties |
| 09:08:24AM | 17 | have an opportunity to answer the questions.  And if they |
| 09:08:30AM | 18 | don't answer the questions, then I rule them into the court |
| 09:08:35AM | 19 | to ask why they haven't answered the question.  If they don't |
| 09:08:38AM | 20 | have any reason or the reason is not appropriate, I dismiss |
| 09:08:41AM | 21 | the case.  And we've dismissed approximately 12,000 -- about |
| 09:08:47AM | 22 | 2,000 cases thus far, and I'll continue to dismiss it. |
| 09:08:52AM | 23 | I want to give people an opportunity to answer the |
| 09:08:55AM | 24 | questions, but they have a duty to answer.  And if they don't |
| 09:08:58AM | 25 | answer the questions, don't do anything to move the |

09:09:01AM  1    litigation, then I have no alternative but to dismiss the

09:09:09AM  2    case.

09:09:09AM  3         Let me hear from the parties on CMO 11.

09:09:12AM  4         MS. SHARKO:  Thank you, Judge.

09:09:13AM  5         CMO 11 for those who are relatively new to this

09:09:17AM  6    spells out we think clearly and unequivocally what the

09:09:23AM  7    requirements are for people to prepare their cases because

09:09:26AM  8    that's the next phase of the litigation is preparation of the

09:09:29AM  9    individual cases that are left.  And so there's a summary of

09:09:32AM  10   CMO 11 on Page 4 of the agenda.

09:09:35AM  11        In addition, the parties jointly put together what I

09:09:40AM  12   think is a really easy and clear summary of the CMO 11

09:09:45AM  13   deadlines and obligations which Your Honor has posted on the

09:09:50AM  14   court's website.  So I won't take the time to go through all

09:09:56AM  15   of the requirements here, but those are several good

09:09:59AM  16   resources to see hear what's required under CMO 11.

09:10:04AM  17        THE COURT:  Why don't you just summarize what type of

09:10:06AM  18   information it is first we're talking about.

09:10:09AM  19        MS. SHARKO:  Sure.  So people have to pay their

09:10:11AM  20   filing fees.  People have to serve document preservation

09:10:17AM  21   notices by certified mail to healthcare providers.  Virtually

09:10:22AM  22   no one has done that.  And I'll go through the law firms in a

09:10:25AM  23   minute.

09:10:26AM  24        And that requirement, I have to say, is as important

09:10:30AM  25   for the plaintiffs as it is for the defendants.  Because

09:10:33AM  1   hospitals don't -- hospitals have strict and doctors have

09:10:37AM  2   strict record retention policies.  And what I'm seeing in

09:10:40AM  3   another MDL now where the plaintiffs didn't want to do the

09:10:45AM  4   preservation notice, people in 2019 who want to litigate

09:10:49AM  5   their cases have no medical records.  So it really behooves

09:10:54AM  6   the plaintiffs to get those notices out.

09:10:58AM  7        THE COURT:  Yeah.  And the same way with the paying.

09:10:59AM  8   I recognize at the outset that sometimes parties have

09:11:02AM  9   difficulty initially getting into the lawsuit, paying $400.

09:11:09AM  10  That sometimes is a problem, and I want to make sure that

09:11:12AM  11  people have an opportunity to get into the lawsuit.  And so I

09:11:16AM  12  cut some slack there and allow for that to be delayed, but it

09:11:25AM  13  comes a time when I can't delay it any longer.  And the

09:11:29AM  14  parties are in the lawsuit, they have monitored it over the

09:11:34AM  15  years, they know what the lawsuit is about, and it's now time

09:11:38AM  16  for them to pay their fees.  So I have to insist at that

09:11:43AM  17  point that the fee be paid.  If it's not paid, then I have no

09:11:48AM  18  choice but to dismiss the case.

09:11:50AM  19       MS. SHARKO:  CMO 11 further provides that the

09:11:53AM  20  defendants be given a list of healthcare providers with names

09:11:58AM  21  and addresses that's described in the order.  They have to

09:12:01AM  22  serve an affidavit of compliance that's described in the

09:12:05AM  23  order.  The plaintiffs have to give the defendants the

09:12:07AM  24  medical records they've collected and pay for the cost of

09:12:12AM  25  additional medical records as set forth in the order.

09:12:18AM 1      And then in lieu of interrogatories, the plaintiffs

09:12:20AM 2 have to serve a fully complete and verified short form

09:12:24AM 3 plaintiff fact sheet, produce all the documents and medical

09:12:30AM 4 records requested, serve a complete and verified patient

09:12:33AM 5 profile consent form, and produce those medical records.

09:12:39AM 6      And then given where we are in the litigation, the

09:12:44AM 7 Court has ordered the plaintiffs to serve a case-specific

09:12:48AM 8 Rule 26(a)(2) report from a licensed physician qualified to

09:12:54AM 9 render a specific causation opinion and who offers a specific

09:12:58AM 10 causation opinion to a reasonable degree of medical

09:13:01AM 11 probability that the event was caused by taking Xarelto as

09:13:05AM 12 directed.

09:13:06AM 13      So far, we've only gotten one such report.  It wasn't

09:13:12AM 14 signed.  It wasn't dated.  And it was written by a doctor who

09:13:16AM 15 apparently practices medicine in India.  And we'll get to

09:13:20AM 16 that case later this morning, but that's to me is a good

09:13:24AM 17 example of a report that does not meet the requirements of

09:13:27AM 18 the order.

09:13:27AM 19      THE COURT:  As an MDL court, my job is to deal with

09:13:33AM 20 the preliminaries of the litigation, to deal with discovery.

09:13:38AM 21 I also attempt to give the litigants on both sides of the V

09:13:46AM 22 the opportunity to see and know their case.  One way,

09:13:49AM 23 obviously, they begin to know their case and know the other

09:13:53AM 24 side is by discovery.  We deal with that.  And then after the

09:14:00AM 25 discovery process has gone along, it's time for me then to

09:14:05AM 1 give the parties an opportunity to further view their case,

09:14:10AM 2 view the case, view the issues outstanding, view each side by

09:14:16AM 3 trials.

09:14:17AM 4      We had about six trials in this particular case.  The

09:14:20AM 5 parties who participated in the trials and those who have not

09:14:27AM 6 participated in the trials will have an opportunity to look

09:14:30AM 7 at the records and see what has transpired.  Those who have

09:14:36AM 8 participated in the trials know what has happened, know what

09:14:41AM 9 witnesses have testified, know the basis of the litigation,

09:14:45AM 10 and that gives the parties from each side an opportunity to

09:14:49AM 11 view and know their case so that they can make some reasoned

09:14:54AM 12 decision as to whether or not to globally resolve the case.

09:15:00AM 13 That's where we've been for the last number of years.

09:15:03AM 14      I've tried cases here.  I've even moved one of the

09:15:06AM 15 cases to Mississippi to give the opportunity -- give the

09:15:09AM 16 parties an opportunity to see what different juries do and

09:15:13AM 17 how different juries handle the matters.  This has been

09:15:17AM 18 helpful, I think, for everybody.  As a result of that, there

09:15:24AM 19 has been some discussions about global resolution, global --

09:15:27AM 20 a program has been put into effect.  But it's an opt-in

09:15:32AM 21 program.  This is not a class action.  There cannot be a

09:15:36AM 22 class action in the Fifth Circuit for personal injury cases

09:15:39AM 23 because there's no predominance.  Rule 23 does not work for

09:15:45AM 24 personal injury cases.  There's too much difference.  There's

09:15:51AM 25 pre-existing conditions, there's the reaction to things,

09:15:55AM 1 there's too many separate issues that stop class actions.  So

09:16:02AM 2 these cases are handled as an MDL.  But once the case is

09:16:10AM 3 arrived at the point of where it is, I've done thousands of

09:16:18AM 4 documents, hundreds and hundreds of depositions, six trials,

09:16:23AM 5 about a thousand discovery motions.  It's at the point now

09:16:29AM 6 where those individuals who have not opted in to the

09:16:33AM 7 settlement have an opportunity and a right to try their case.

09:16:37AM 8 So I'm going to get ready to send them back to the many

09:16:42AM 9 districts from which they have come.  I've talked to the

09:16:46AM 10 judges in those districts.  They're ready to try the cases,

09:16:50AM 11 hopefully in a matter of months.

09:16:52AM 12 The cases that are here, I will then try them, and

09:17:00AM 13 they'll get preference because they've been waiting for a

09:17:04AM 14 long period of time.  So we're ready to go with those trials.

09:17:07AM 15 I'll be sending them back.  But in order to send them back, I

09:17:10AM 16 have to get them to a point where they're trial ready, where

09:17:18AM 17 they have the documents that they need, the documents that

09:17:21AM 18 defendants need, the documents that plaintiffs need, to try

09:17:26AM 19 their cases because they're going to be tried in a matter of

09:17:29AM 20 months.  And this is my last opportunity to get information

09:17:33AM 21 from the individuals who will be trying the case.  And that's

09:17:41AM 22 what this is about, and that's what I owe my brothers and

09:17:46AM 23 sisters in the courts that I will sending them back too.

09:17:52AM 24 They get a package and it's ready for trial and they then

09:17:57AM 25 proceed to trials, and hopefully it can be done in a matter

09:18:01AM 1    of months.

09:18:03AM 2         MR. DAVIS:  Your Honor, on behalf of PSC, the PSC has

09:18:08AM 3    spent a number of years and an expensive amount of time

09:18:12AM 4    putting together a trial package.  And I will report to Your

09:18:16AM 5    Honor that several individuals have requested the trial

09:18:19AM 6    package, and it has been made available to them.  And as Your

09:18:25AM 7    Honor would expect and just as a report, that trial package

09:18:31AM 8    has extensive depositions/trial transcripts, motions, trial

09:18:35AM 9    exhibits, discovery documents, and other things.  And I

09:18:38AM 10   expect that as we get into the motion later, Mr. Birchfield

09:18:43AM 11   will expand upon that when he talks about some of the efforts

09:18:48AM 12   that's been undertaken by the PSC, but that is available.

09:18:52AM 13        THE COURT:  Okay.

09:18:52AM 14        MS. SHARKO:  So on CMO 11, just wrapping up, there

09:18:58AM 15   are roughly 290 plaintiffs who have chosen the litigation

09:19:06AM 16   route and are subject to the requirements of CMO 11.  None of

09:19:10AM 17   those 290-some plaintiffs have complied with CMO 11.  There's

09:19:17AM 18   only a small number of law firms.  If it's okay, I'll tell

09:19:21AM 19   Your Honor who the law firms are --

09:19:21AM 20        THE COURT:  Sure.

09:19:23AM 21        MS. SHARKO:  -- and where they are.  I don't know if

09:19:24AM 22   the lawyers are in the courtroom or not.  I think they were

09:19:27AM 23   supposed to be here.

09:19:28AM 24        Bailey & Greer Firm.

09:19:34AM 25        MR. BIRCHFIELD:  Your Honor, I think that Bailey &

09:19:37AM   1   Greer has now effectively entered all of their settlement --

09:19:40AM   2   all of their cases into the settlement program.  I think they

09:19:43AM   3   are in compliance.

09:19:44AM   4            MS. SHARKO:  Good.

09:19:46AM   5            Beacon Law Group, Beacon Legal Group.

09:19:50AM   6            THE COURT:  Anybody from Beacon?  Would you announce

09:19:55AM   7   -- who are you, sir?

09:19:55AM   8            MR. MCCORKLE:  Benjamin McCorkle.

09:19:59AM   9            THE COURT:  Okay.  Thank you very much, Benjamin.

09:19:59AM   10           MS. SHARKO:  So Beacon Law Group has 12 opt-out

09:20:03AM   11  plaintiffs.  None of them are in compliance with CMO 11.

09:20:05AM   12  None of them have served the preservation notice.  None of

09:20:10AM   13  them have served the required affidavits of compliance.  12

09:20:13AM   14  have submitted the short form plaintiff fact sheets and we're

09:20:18AM   15  reviewing those now and we'll let them know if we see

09:20:21AM   16  deficiencies.

09:20:21AM   17           THE COURT:  I want to give the parties an opportunity

09:20:27AM   18  to do that, take a look at it, see if there's any problem.

09:20:31AM   19  Bring it to me.  I'll deal with it.  But I need to get these

09:20:34AM   20  cases trial-ready so that you're ready to try the case when

09:20:37AM   21  you go back.  I will instruct the liaison counsel for the

09:20:43AM   22  MDL, the plaintiff liaison, the plaintiff lead, to make sure

09:20:47AM   23  that you have the trial package or any material that you need

09:20:51AM   24  that has been collected so far.  I mean, we've taken a number

09:20:55AM   25  of hundreds of depositions, there's trial transcripts.  They

OFFICIAL TRANSCRIPT
Page 14

09:21:00AM   1   should be available to you.  You haven't been a member, but I

09:21:03AM   2   want to make sure that you have that available.  But I want

09:21:05AM   3   to get these matters in a packaged area so that when I send

09:21:11AM   4   them back to the judge they're ready to go.  So help me out

09:21:17AM   5   on that.

09:21:19AM   6        MR. MCCORKLE:  Just in terms of the compliance with

09:21:22AM   7   CMO 11, they -- the preservation letters are now being -- my

09:21:27AM   8   assistant is --

09:21:27AM   9        THE COURT:  Good.

09:21:28AM  10        MR. MCCORKLE:  -- today filing those.

09:21:30AM  11        THE COURT:  That's one thing that's very important.

09:21:32AM  12   I've found over the years -- and it's different in different

09:21:39AM  13   states, but because it's different in each state, I'm very

09:21:44AM  14   conscious of it.  And they destroy those records.  And when I

09:21:46AM  15   talk to them, they have a reason.  One of them told me,

09:21:50AM  16   Judge, we've got 50,000 records a year.  We can't store them

09:21:55AM  17   anymore.  So they just destroy them.  So I try to get that

09:22:00AM  18   done as quickly as possible so that you have the records that

09:22:03AM  19   you're going to need to try the case.

09:22:05AM  20        MR. MCCORKLE:  They have all been submitted to the

09:22:09AM  21   doctors, and, in fact, one of the doctors got confused and

09:22:12AM  22   sent us the records again.  He had already gathered all the

09:22:16AM  23   records and provided those.

09:22:17AM  24        THE COURT:  Great.

09:22:17AM  25        MR. MCCORKLE:  The causation letters are coming in

09:22:19AM   1   now, just got the first causation letter in a couple of days

09:22:24AM   2   before this meeting.

09:22:26AM   3        THE COURT:  And with the causation letter, let me

09:22:28AM   4   make clear that I'm not Daubertizing the person.  At this

09:22:34AM   5   point, they just need to -- a doctor simply says it's

09:22:37AM   6   connected so that you don't go to try the case and find out

09:22:41AM   7   that it's not even connected by the lawsuit and you spend a

09:22:44AM   8   ton of money doing this.  These cases, we've tried six of

09:22:48AM   9   them.  Each of them I think the plaintiffs have -- it costs

09:22:51AM   10  the plaintiffs $1,000,000 to try the case.  The defendants

09:22:55AM   11  about $2,000,000 to try the case.  So that's important for

09:22:59AM   12  you to know, that there's some basis for it.

09:23:05AM   13       MR. MCCORKLE:  As far as any of the certifications, I

09:23:09AM   14  thought I filed them all but if I missed one --

09:23:12AM   15       THE COURT:  Well, get with defense counsel and work

09:23:15AM   16  it out.  I'm not going to -- just do the best you can and

09:23:19AM   17  let's get this material to the defense counsel.

09:23:21AM   18       Thank you very much for being here.  I appreciate it.

09:23:25AM   19       MR. MCCORKLE:  Yes, Your Honor.

09:23:25AM   20       MS. SHARKO:  Leonard Gaba, they have 18 opt out

09:23:33AM   21  still.  None of the plaintiffs have done anything required by

09:23:36AM   22  CMO 11.

09:23:36AM   23       THE COURT:  Anything, Andy, on that?

09:23:38AM   24       MR. BIRCHFIELD:  Your Honor, based on our discussions

09:23:40AM   25  with Mr. Gaba, his claimants, the claimants that he has been

09:23:45AM  1    able to communicate with are all in the settlement program.

09:23:48AM  2    He advised us, I didn't know if he would be here today, but

09:23:52AM  3    he advised us that the remaining -- the remaining claimants

09:23:55AM  4    he has not been able to get to respond and he anticipates

09:24:00AM  5    that those will be addressed in an upcoming order to show

09:24:03AM  6    cause hearing because he can't get a response.

09:24:05AM  7          THE COURT:  And I find that over the years.  In this

09:24:09AM  8    particular case we've had 30,000 claimants.  But oftentimes a

09:24:14AM  9    claimant will file and talk to their lawyer and sign the

09:24:20AM  10   document of retainer, but somehow or another, they get on

09:24:26AM  11   with their lives.  And the lawyer either loses track of them

09:24:31AM  12   or they lose track of the lawyer.  You know, the lawyer, the

09:24:35AM  13   responsibility of the lawyer is to keep in touch with the

09:24:38AM  14   client, but the client also has a responsibility to keep in

09:24:42AM  15   touch with the lawyer.  They can't move without telling the

09:24:44AM  16   lawyer and expect the lawyer to hire an investigator to go

09:24:48AM  17   find them.  They have a responsibility.  But I've found over

09:24:51AM  18   the years that sometimes people simply want to move on with

09:24:55AM  19   their lives.  It's not as bad as they thought, or it didn't

09:25:01AM  20   work out or something else happened, and they just -- they

09:25:03AM  21   don't want to do it anymore.  And it's really not fair to the

09:25:07AM  22   lawyer to do that without telling the lawyer, but somehow or

09:25:11AM  23   another, that happens.  And when it happens, I try to get

09:25:15AM  24   notice to them, I do everything I possibly can to post it, to

09:25:20AM  25   tell them to get with their lawyer, but when they don't do

09:25:24AM 1    it, I just -- they have a right to dismiss their case and so

09:25:28AM 2    I dismiss their case.

09:25:30AM 3            MS. SHARKO:  The MacArthur Heder Law Firm.

09:25:39AM 4            THE COURT REPORTER:  I'm sorry, can you repeat that?

09:25:42AM 5            MS. SHARKO:  The MacArthur Heder Law Firm.

09:25:42AM 6            MR. LOVE:  We can't hear you back here, ma'am.

09:25:46AM 7            MacArthur Heder has 23 opt-outs.

09:25:49AM 8            MR. BIRCHFIELD:  Your Honor, the report from

09:25:51AM 9    MacArthur Heder is that all of their claimants -- all of

09:25:54AM 10   their claimants are now into the settlement program have

09:25:56AM 11   submitted a valid stipulation of dismissal and the firm has

09:26:03AM 12   submitted the election forms.

09:26:03AM 13           THE COURT:  Okay.

09:26:04AM 14           MR. BIRCHFIELD:  They do not have any claimants

09:26:06AM 15   remaining to be litigated.

09:26:07AM 16           MS. SHARKO:  Excellent.

09:26:09AM 17           Martinez & McGuire have 58 opt-out plaintiffs, none

09:26:14AM 18   of whom are in compliance with CMO 11.  They owe preservation

09:26:20AM 19   notice statements; affidavits of compliance are due next

09:26:24AM 20   week; 57 of the 58 have submitted a short form PFS; and the

09:26:29AM 21   other document, they don't look compliant, and we will get in

09:26:34AM 22   touch with the plaintiffs with regard to deficiencies.  We're

09:26:34AM 23   still going through those.

09:26:38AM 24           THE COURT:  Okay.

09:26:38AM 25           MR. MCGUIRE:  Yes, Your Honor, Clint McGuire, and we

09:26:42AM 1   got the letters actually sent out a couple of days ago, and I

09:26:44AM 2   will be happy to sit down and discuss --

09:26:47AM 3          THE COURT:  Meet with defense counsel.  If you have

09:26:50AM 4   any issues, I'll work with you on them, but let's do what we

09:26:55AM 5   can to get in compliance.

09:26:56AM 6          MR. MCGUIRE:  All right.  Thank you, Your Honor.

09:26:59AM 7          THE COURT:  Thank you for being here.

09:27:01AM 8          MS. SHARKO:  The Medley Law Group has 20 people, none

09:27:05AM 9   of whom are in compliance.  They have submitted fact sheets,

09:27:10AM 10  which we're going throughout now.  The other requirements

09:27:12AM 11  remain outstanding.

09:27:12AM 12         MR. MEDLEY:  Yes, Your Honor, the same thing he said.

09:27:15AM 13  We have sent out letters.

09:27:19AM 14         THE COURT:  Would you give us your name for the

09:27:22AM 15  record?

09:27:22AM 16         MR. MEDLEY:  Don Medley.

09:27:22AM 17         THE COURT:  John Medley, okay.  All right, John.

09:27:29AM 18  Thank you for being here.

09:27:29AM 19         MR. MEDLEY:  It's Don.

09:27:30AM 20         THE COURT:  Don, yeah.  Okay.  And if you need

09:27:33AM 21  anything, get with defense counsel, clarify it and if you

09:27:35AM 22  have any problems, get it to me and I'll deal with it.  Thank

09:27:39AM 23  you, Don.

09:27:39AM 24         MS. SHARKO:  Mike Love & Associates has 27 people who

09:27:43AM 25  want to litigate.  All 20 have overdue preservation notices,

```
09:27:48AM   1    five owe fact sheets, 15 have submitted fact sheets, and
09:27:54AM   2    we're reviewing them.
09:27:56AM   3              THE COURT:  Okay.
09:27:56AM   4              MR. LOVE:  Mike Love on behalf of Mike Love &
09:28:00AM   5    Associates, Your Honor.  It was my understanding from talking
09:28:02AM   6    to my staff that we are not late on anything.  It's certainly
09:28:05AM   7    possible.  There's been a lot of efforts.  All my clients are
09:28:10AM   8    new to the litigation.  So it's a process to get the original
09:28:12AM   9    records and then find out there's more records to continue
09:28:15AM   10   that process.  So we'll certainly work with defense counsel
09:28:19AM   11   on that.
09:28:19AM   12             I would tell you, defense counsel and the court,
09:28:22AM   13   there's probably I think six or so.  Your number is higher
09:28:26AM   14   than mine, because there's six or seven or so that at least
09:28:30AM   15   we've been through the process of what you just described,
09:28:32AM   16   Your Honor, they're gone.  And some of them we identified,
09:28:36AM   17   they didn't even take Xarelto.  But I'm stuck because I filed
09:28:41AM   18   a case at the very beginning, so we'll go through the
09:28:43AM   19   process.
09:28:44AM   20             THE COURT:  Make sure you've got some preservation
09:28:48AM   21   because when you get into it sometimes late, they don't tell
09:28:51AM   22   you the documents that you need and then when you try to go
09:28:57AM   23   to them to get it, they've been just, you know, destroyed so
09:29:01AM   24   to speak.  And we all thought that when things went
09:29:06AM   25   electronic they would be forever, but we're finding more and
```

09:29:10AM   1   more that they don't -- they don't keep them forever.  They

09:29:14AM   2   just wipe them out.

09:29:16AM   3        MR. LOVE:  And if I can, because it's directly on

09:29:19AM   4   that point, Judge, one of the problems we got with the

09:29:22AM   5   affidavit, everybody on this side of the bar, is the

09:29:25AM   6   affidavits -- it's drafted and we're required to sign, says

09:29:30AM   7   the client is swearing that they know they've got all the

09:29:34AM   8   records.  Well, as the court knows, nobody knows that and

09:29:37AM   9   these clients we're ordering the first and we find more and

09:29:40AM   10  more and more.  And we're in that process right now.  So we

09:29:43AM   11  can give the affidavit, but I'm alternating affidavit to say

09:29:46AM   12  to the best --

09:29:46AM   13       THE COURT:  To the best of my knowledge.

09:29:48AM   14       MR. LOVE:  -- of my knowledge, that's all I know

09:29:49AM   15  about.

09:29:49AM   16       THE COURT:  Yeah, that's fair.  I think that's fair.

09:29:52AM   17  It's to the best of your knowledge, but the point is, we need

09:29:56AM   18  the material.

09:29:57AM   19       MR. LOVE:  Absolutely.

09:29:58AM   20       THE COURT:  Okay.

09:30:00AM   21       MS. SHARKO:  The Pierce Skrabanek Law Firm has one

09:30:05AM   22  opt-out client.  I don't know if they're here.  This

09:30:08AM   23  particular client had been represented by two or three

09:30:11AM   24  additional law firms.  Those other law firms have now

09:30:16AM   25  dismissed the cases for this particular plaintiff leaving the

09:30:22AM  1    Pierce -- the Pierce Law Firm as the lawyer as the client.

09:30:24AM  2            MR. SMITH:  Your Honor, Thomas Smith.  I've been

09:30:27AM  3    speaking with Sophia Bruera as part of the firm.  That's the

09:30:32AM  4    client I believe you're talking about and I've been in

09:30:34AM  5    communication with them about that.

09:30:36AM  6            THE COURT:  All right.  Thank you, Tom.

09:30:40AM  7            MS. SHARKO:  So hopefully they'll get in compliance

09:30:43AM  8    promptly.

09:30:44AM  9            Next, we have the Seaton & Bates Law Firm.  They have

09:30:48AM 10    42 plaintiffs, none of whom are compliant, although they have

09:30:52AM 11    submitted fact sheets which we're now going through.

09:30:56AM 12            THE COURT:  Okay.

09:30:57AM 13            MR. SMITH:  Thomas Smith, again, Your Honor.  And

09:31:01AM 14    like everyone else has said, we'll get with defense and work

09:31:05AM 15    on it.

09:31:05AM 16            THE COURT:  All right.  Fine.

09:31:07AM 17            MS. SHARKO:  And I would just note for this

09:31:08AM 18    particular law firm, there are large sections of the fact

09:31:12AM 19    sheet where the questions just weren't answered, and all the

09:31:16AM 20    questions need to be answered.  We've litigated these forms,

09:31:20AM 21    presented them to the court, and so we do need answers.

09:31:22AM 22            THE COURT:  Let's meet -- meet with Tom at some time

09:31:26AM 23    and get some clarification on it.  If you have any issues,

09:31:29AM 24    I'll deal with them.

09:31:30AM 25            MS. SHARKO:  Thank you.

09:31:31AM  1        The Sobo & Sobo Law Firm has 19 opt-out plaintiffs
09:31:39AM  2   who are not in compliance.  They have submitted fact sheets,
09:31:42AM  3   which we're reviewing.
09:31:44AM  4        MS. RAPHAEL:  Julie Raphael --
09:31:44AM  5        THE COURT REPORTER:  Repeat your name.
09:31:47AM  6        MS. RAPHAEL:  Julie Raphael, R-a-p-h-a-e-l.  And we
09:31:51AM  7   will do what we need to get in compliance.
09:31:56AM  8        THE COURT:  Okay.  Fine.  Thank you for being here.
09:32:01AM  9        MS. SHARKO:  The Spiros Law Firm has three plaintiffs
09:32:05AM  10  who have submitted nothing.
09:32:08AM  11       MR. BIRCHFIELD:  Your Honor, the latest report that
09:32:10AM  12  we have is that the Spiros, those three claimants have now
09:32:15AM  13  been entered into the settlement program and have cured the
09:32:18AM  14  issues on the enrollment.
09:32:21AM  15       MS. SHARKO:  Great.
09:32:22AM  16       The Stern Law Firm has 60 opt-out plaintiffs who are
09:32:28AM  17  substantially not in compliance.  We're reviewing the fact
09:32:31AM  18  sheets that they've submitted.
09:32:33AM  19       MR. STERN:  I didn't hear the first part, excuse me.
09:32:36AM  20       MS. SHARKO:  The Stern Law Group has 60 plaintiffs.
09:32:40AM  21  They are substantially not in compliance.  They have
09:32:44AM  22  submitted fact sheets, which we're reviewing.
09:32:46AM  23       MR. STERN:  Good morning, Your Honor.  I'm Ken Stern
09:32:48AM  24  on behalf of Stern Law.  I appreciate the opportunity to
09:32:51AM  25  address the court and I'm back in the courtroom today.  I

09:32:55AM   1    apologize for that.

09:32:56AM   2         My understanding is that we're fully compliant.  How

09:33:00AM   3    much of that compliance has occurred over the past week and

09:33:02AM   4    it may just be a data catch-up process, but I'll be

09:33:06AM   5    cooperating here, and we'll find out what we're still missing

09:33:09AM   6    --

09:33:09AM   7         THE COURT:  And the reason I need the information is

09:33:11AM   8    so I can send them back.  I just don't want to keep you here

09:33:16AM   9    forever.  It's not fair to you all.  It's not fair to your

09:33:18AM   10   clients.  So I need them -- I need you to fill out the

09:33:22AM   11   material so when I send them back to the judges, they're

09:33:24AM   12   ready to go.

09:33:27AM   13        MR. STERN:  Understood, Your Honor.

09:33:28AM   14        THE COURT:  Thank you for being here.

09:33:30AM   15        MS. SHARKO:  Just a couple more.  The Tuttle Law Firm

09:33:33AM   16   has one plaintiff who is not in compliance.

09:33:39AM   17        THE COURT:  Anybody?  Andy?  Do you know anything

09:33:39AM   18   about that?

09:33:42AM   19        MR. BIRCHFIELD:  (Shakes head.)

09:33:43AM   20        MS. SHARKO:  The Tim Farris Law Firm has 11

09:33:47AM   21   plaintiffs.  They also are substantially not compliant.  They

09:33:51AM   22   have submitted fact sheets which we're reviewing.

09:33:54AM   23        MR. FARRIS:  Your Honor, we have addressed that.

09:33:56AM   24        THE COURT:  You want to give us your name, sir?

09:33:58AM   25        MR. FARRIS:  Yes, Tim Farris on behalf of Farris Law

```
09:34:01AM   1   Firm.  We sent out our preservation letters out.  We're also
09:34:05AM   2   getting affidavits back in.  I know some of the issues are
09:34:10AM   3   the same issues Ken has, it's a data catch up, but we'll be
09:34:13AM   4   happy to work with --
09:34:15AM   5         THE COURT:  Okay, fine.  Good.  Thank you very much.
09:34:17AM   6   Thanks for being here.
09:34:18AM   7         MS. SHARKO:  We have two pro ses and then finally we
09:34:21AM   8   have the Hatcher Law Office and Boler Law Office with one
09:34:25AM   9   plaintiff who has basically done nothing.
09:34:30AM  10         THE COURT:  Anything on that, Andy?
09:34:32AM  11         MR. BIRCHFIELD:  No, Your Honor.
09:34:40AM  12         THE COURT:  Anybody?
09:34:40AM  13         MS. SHARKO:  And Ms. Miller, who is the key person on
09:34:42AM  14   compliance, who all you guys will get to know well, points
09:34:49AM  15   out that our data is current as of last night.  We went on
09:34:53AM  16   BrownGreer and checked.
09:34:53AM  17         THE COURT:  Okay.
09:34:55AM  18         MS. SHARKO:  So that's a summary of CMO 11 compliance
09:34:58AM  19   and noncompliance.
09:35:01AM  20         THE COURT:  And give me the names of the lawyers who
09:35:03AM  21   are not here so I can deal with that.
09:35:05AM  22         MS. SHARKO:  Okay.  Thank you.
09:35:08AM  23         MR. DAVIS:  Your Honor, Item 3 of the Joint Report
09:35:14AM  24   addresses new pretrial orders, and I would encourage
09:35:20AM  25   individuals to look at Pretrial Order No. 33 that was entered
```

09:35:23AM 1    on December the 6th.  It deals with communications in receipt

09:35:27AM 2    of health information for the lien resolution administrator.

09:35:32AM 3         THE COURT:  What I recognize in these cases is that

09:35:36AM 4    these days there are many liens that are filed on the

09:35:42AM 5    claimant.  Had some involving Native Americans.  There's an

09:35:52AM 6    Indian lien.  There's a social security lien.  There's a

09:36:01AM 7    Medicare lien.  And the problem with these liens, they're not

09:36:03AM 8    only against the plaintiff, they're against the plaintiff

09:36:06AM 9    lawyer.  So if the plaintiff lawyer settles the case and

09:36:09AM 10   doesn't take into account the lien, the plaintiff as well as

09:36:13AM 11   the plaintiff lawyer is responsible.  So the lien has to get

09:36:17AM 12   resolved.  And it's been my experience that if we can package

09:36:22AM 13   these liens together in some way, a lien administrator then

09:36:29AM 14   can go to the lien holder and say I've got 10,000 of these

09:36:32AM 15   cases, can you reduce the lien?  And we've gotten liens

09:36:38AM 16   reduced to 20, 30 percent of what they would ordinarily be.

09:36:43AM 17   And it's good for the lien holder because the lien holder

09:36:46AM 18   gets it immediately as opposed to having to go throughout the

09:36:50AM 19   country finding these individuals.  And, of course, it's good

09:36:53AM 20   for the individual because it gets a substantial reduction on

09:36:58AM 21   his lien.  But we need some information in order to do that

09:37:02AM 22   for the plaintiffs.

09:37:03AM 23        MR. DAVIS:  Your Honor, moving along, the defendants

09:37:10AM 24   filed a proposed scheduling order with respect to a CMO.

09:37:15AM 25   That would be CMO 13, and I think the defendants are prepared

09:37:23AM 1   to address that with the court.

09:37:27AM 2       MS. SHARKO:  Yes, looking forward to what happens

09:37:29AM 3   next as we prepare these 200-some, 300-some individual cases

09:37:35AM 4   for trial, we sketched out our vision of the next three

09:37:40AM 5   months in the draft CMO 13.  There were no comments or

09:37:45AM 6   opposition filed to it.

09:37:47AM 7       THE COURT:  Yeah.  What I try to do there is to get

09:37:51AM 8   from counsel, from plaintiffs as well as defendants, some

09:37:55AM 9   idea as to what they see is necessary to go forward to the

09:38:00AM 10  next step to try the case and the defendant has produced a

09:38:07AM 11  draft of a CMO and I put it on the website and I invite the

09:38:12AM 12  plaintiffs who are going to have to live with this pretrial

09:38:18AM 13  order, so to speak, to give me some input so that I can

09:38:21AM 14  design it with that input and take into account.  So that's

09:38:27AM 15  why I posted on the website.  I'll keep it on the website

09:38:33AM 16  until the next meeting, and if anybody, any plaintiff has any

09:38:37AM 17  input in that web -- in that document, give it to me so that

09:38:41AM 18  I can take that into account, because in moving to the next

09:38:46AM 19  stage, the plaintiffs are going to need some material, the

09:38:52AM 20  defendants are going to need some material, and I like to get

09:38:56AM 21  input from both sides before I stamp the case management

09:39:02AM 22  order.  So take a look at it.  And if I don't get any input,

09:39:06AM 23  then I'll have to deal with just the defendant's impressions.

09:39:12AM 24      MS. SHARKO:  Your Honor, could we set a January

09:39:14AM 25  deadline for comment on the order?

09:39:17AM  1          THE COURT:  Yes.  Let's do that because my next

09:39:19AM  2    meeting I'm going to have to make it in February.  I can't do

09:39:21AM  3    it in January.  So let's do that by January the 15th.  That

09:39:28AM  4    will give you some time to think about it, to flesh out what

09:39:32AM  5    you think you're going to need and give me your input and

09:39:35AM  6    I'll take that into consideration.

09:39:37AM  7          MS. SHARKO:  Thank you.

09:39:38AM  8          MR. DAVIS:  Your Honor, I believe that's it for the

09:39:43AM  9    Joint Report and that concludes 2019 reports to the Court.

09:39:50AM 10          THE COURT:  Okay.  Our next meeting then will be

09:39:53AM 11    February the 6th and the following meeting on March 19th.

09:39:56AM 12          For those who are in the audience, you're invited.  I

09:40:01AM 13    have open court.  You're invited to come.  If you can't make

09:40:05AM 14    it because of difficult schedules, we post on our website a

09:40:12AM 15    call-in number so that you can call in and monitor what's

09:40:15AM 16    happening.  It's oftentimes helpful to you even though you

09:40:20AM 17    may not be here the rest of the time, it's helpful at least

09:40:24AM 18    to see what's happening in this jurisdiction and what

09:40:29AM 19    information you can get from this forum to help you with your

09:40:35AM 20    case as you proceed on.  So the next meeting is February 6th.

09:40:39AM 21    The following one is March the 19th.

09:40:42AM 22          We'll take a five-minute break here and come back and

09:40:47AM 23    deal with the motions.

09:40:49AM 24          Thank you very much.  And thank for those who are

09:40:51AM 25    being here for the first time.  Court will stand in recess.

```
1                           *  *  *  *

2            (WHEREUPON, the proceedings were adjourned.)

3                           *  *  *  *

4                     REPORTER'S CERTIFICATE

5            I, Nichelle N. Drake, RPR, CRR, Official Court
   Reporter, United States District Court, Eastern District of
6  Louisiana, do hereby certify that the foregoing is a true and
   correct transcript, to the best of my ability and
7  understanding, from the record of the proceedings in the
   above-entitled and numbered matter.

8

9                       /s/ Nichelle N. Drake
                        Official Court Reporter
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```