```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


***************************************************************
IN RE:  XARELTO (RIVAROXABAN)
PRODUCTS LIABILITY LITIGATION

                         Civil Action No. 14-MD-2592
                         Section "L"
                         New Orleans, Louisiana
                         December 12, 2019

THIS DOCUMENT RELATES TO VARIOUS CASES
***************************************************************

  TRANSCRIPT OF MOTION HEARING IN RE:  RECORD DOCUMENT 17467
        HEARD BEFORE THE HONORABLE ELDON E. FALLON
                UNITED STATES DISTRICT JUDGE


APPEARANCES:

FOR THE PLAINTIFFS' LIAISON COUNSEL:

                    LEONARD DAVIS
                    HERMAN HERMAN & KATZ
                    820 O'KEEFE AVENUE
                    NEW ORLEANS, LA 70113

                    GERALD E. MEUNIER
                    GAINSBURGH BENJAMIN DAVID AND WAUSHER
                    2800 ENERGY CENTRE
                    1100 POYDRAS STREET
                    NEW ORLEANS, LA 70163

FOR THE PLAINTIFFS:

                    ANTHONY BIRCHFIELD, JR.
                    BEASLEY ALLEN CROW METHVIN PORTIS & MILES
                    POST OFFICE BOX 4160
                    MONTGOMERY, AL 36103
```

```
FOR THE DEFENDANTS' LIAISON COUNSEL:

                    JAMES B. IRWIN
                    IRWIN FRITCHIE URQUHART & MOORE
                    TEXACO CENTER
                    400 POYDRAS STREET
                    SUITE 2700
                    NEW ORLEANS, LA 70130

FOR THE DEFENDANTS:

                    JOHN F. OLINDE
                    CHAFFE MCCALL
                    1100 POYDRAS STREET
                    NEW ORLEANS, LA 70163

                    SUSAN M. SHARKO
                    DRINKER BIDDLE & REATH
                    600 CAMPUS DRIVE
                    FLORHAM PARK, NJ 07932

                    CHANDA MILLER
                    DRINKER BIDDLE & REATH
                    1 LOGAN SQUARE
                    PHILADELPHIA, PA 19103

                    STEVEN JAY GLICKSTEIN
                    ARNOLD & PORTER KAYE SCHOLER
                    250 WEST 55TH STREET
                    NEW YORK, NY 10019

ALSO PRESENT:       MIKE LOVE
                    202 EAST LUFKIN AVENUE
                    LUFKIN, TEXAS 75902

Official Court Reporter:     Nichelle N. Drake, RPR, CRR
                             500 Poydras Street, B-275
                             New Orleans, Louisiana 70130
                             (504) 589-7775


     Proceedings recorded by mechanical stenography,
transcript produced via computer.
```

**1**                     **P R O C E E D I N G S**

09:48:32AM  **2**              (Call to order of the court.)

09:48:32AM  **3**        THE COURT:  We have several motions.  What's the

09:48:35AM  **4**  first motion?

09:48:53AM  **5**        This is a motion to certify class and also to make

09:49:03AM  **6**  changes in the terms of the settlement.  Is that it?

09:49:10AM  **7**        MR. LOVE:  Your Honor, may it please the Court, Mike

09:49:16AM  **8**  Love on behalf of several of our firm's clients, and I think

09:49:21AM  **9**  there's other law firms that are here present today that

09:49:24AM  **10**  wanted to join in our motion.  They were not sure how to do

09:49:28AM  **11**  that with it being under seal, but they are here present in

09:49:32AM  **12**  court today and would like to verbally let the court know.

09:49:36AM  **13**        I apologize, Judge.  I've had -- if you remember last

09:49:41AM  **14**  time I was here, I was able to talk pretty well.

09:49:44AM  **15**        THE COURT:  Yeah.  I hope it's not our weather, Mike.

09:49:48AM  **16**        MR. LOVE:  I'm struggling a little bit.  But I'm

09:49:51AM  **17**  going to try to struggle through it, Judge, and I appreciate

09:49:53AM  **18**  the court's patience.

09:49:56AM  **19**        THE COURT:  Sure.

09:49:56AM  **20**        MR. LOVE:  Your Honor, one thing as a clarification

09:49:58AM  **21**  and I heard and understood your words earlier, I do

09:50:01AM  **22**  understand this is not a class action.  What I was referring

09:50:04AM  **23**  to in my motion and may not have done it completely clearly,

09:50:09AM  **24**  in the past, this court and other courts handling MDLs have

09:50:16AM  **25**  conditionally approved from a class -- just for purposes of

09:50:22AM 1  settlement only and conducted a fairness hearing in likeness

09:50:26AM 2  of Rule 23(e) and been involved in the settlements.  And in

09:50:34AM 3  my research -- and admittedly I don't have near the

09:50:38AM 4  experience of the guys over here.  I'm more of a single event

09:50:44AM 5  lawyer.  I'm new to mass torts.  I think I very confidently

09:50:48AM 6  represent my clients, but I am new to this formula.  So I'm

09:50:52AM 7  not an expert.  However, in what I've seen, that's how it's

09:50:55AM 8  been done in the past.  Okay?

09:50:57AM 9       And I think it's very important and I know the

09:51:03AM 10 court's read my motion and I wanted -- I felt it was really

09:51:07AM 11 critical to get the settlement agreement in front of the

09:51:11AM 12 court because this is -- this is not one of your smaller

09:51:16AM 13 MDLs.  This is a big MDL and -- and 30,000 claimants that

09:51:21AM 14 have alleged some pretty serious injuries and death.  I mean,

09:51:27AM 15 it's an important case.

09:51:28AM 16      And what I wanted the Court to see in this settlement

09:51:31AM 17 agreement and now what we've heard from counsel is that in

09:51:35AM 18 the settlement agreement, the very beginning when it was

09:51:38AM 19 announced in e-mail communications by subaerial terms, this

09:51:43AM 20 is intended to be a global settlement agreement.  It says it

09:51:47AM 21 is intended to dispose of all Xarelto litigation.  Well,

09:51:51AM 22 that's -- that's a global settlement agreement which is

09:51:55AM 23 habitually done with some sort of court overview.  Okay?

09:52:00AM 24      And so what is the difference between a global

09:52:05AM 25 settlement agreement where there's a fairness hearing and a

| | | |
|---|---|---|
| 09:52:09AM | 1 | private global settlement agreement where the PSC stipulates |
| 09:52:14AM | 2 | to these CMOs and things and then also disposes of all |
| 09:52:21AM | 3 | litigation?  Well, the difference is, we don't get your |
| 09:52:24AM | 4 | review and that's the only difference. |
| 09:52:29AM | 5 | THE COURT:  Yeah, the problem -- |
| 09:52:31AM | 6 | MR. LOVE:  There's no benefit this can pay. |
| 09:52:33AM | 7 | THE COURT:  I understand.  The difficulty to some |
| 09:52:36AM | 8 | extent is that -- under Rule 23, of course, the court is by |
| 09:52:42AM | 9 | virtue of the federal rules placed in that position.  They |
| 09:52:48AM | 10 | have a -- the court has a responsibility and duty to oversee |
| 09:52:52AM | 11 | the settlement and conduct fairness hearings and make some -- |
| 09:52:57AM | 12 | some rulings. |
| 09:52:58AM | 13 | The MDL is an aggregation, if you will, of |
| 09:53:05AM | 14 | independent cases, and while in some cases, they involve the |
| 09:53:12AM | 15 | court, I involve myself early on in the Vioxx cases that I |
| 09:53:18AM | 16 | handled. |
| 09:53:18AM | 17 | MR. LOVE:  I saw that. |
| 09:53:20AM | 18 | THE COURT:  We had 50,000 of those cases.  In that |
| 09:53:24AM | 19 | particular case, I was involved in discussions of the |
| 09:53:29AM | 20 | settlement and also involved with other state -- with state |
| 09:53:34AM | 21 | judges.  Some of my colleagues in state court.  And it was |
| 09:53:38AM | 22 | both the state and federal settlement, and all of us were |
| 09:53:46AM | 23 | involved in it and signed off on it. |
| 09:53:48AM | 24 | This settlement is a bit different.  I was not |
| 09:53:54AM | 25 | involved in the discussions of the settlement.  It's an |

09:54:02AM 1 aggregation of independent cases.  It's really not a class

09:54:07AM 2 action.  It doesn't satisfy the requirements of class action.

09:54:13AM 3 Even in the settlement aspect of it, you need the same

09:54:17AM 4 requirements for the settlement of a class action as you do

09:54:23AM 5 for the initiation of the class action.  So this is not a

09:54:29AM 6 class action.

09:54:31AM 7 I have some potential suggestions to parties, and

09:54:45AM 8 they generally seek to comply with the suggestions.  But it's

09:54:51AM 9 really voluntary more than mandatory.  And I don't get

09:54:54AM 10 involved in the drafting of the pleadings.  It's just like if

09:54:59AM 11 you have three cases and one of the cases settles and signs a

09:55:08AM 12 settlement agreement, generally the other two go to trial and

09:55:12AM 13 the court doesn't get into that.

09:55:15AM 14 MR. LOVE:  Absolutely.  I understand that, Judge.

09:55:17AM 15 The difference -- and let me just kind of zero in on

09:55:20AM 16 my point here.  The -- this case is no different in -- than

09:55:27AM 17 Vioxx or Chinese drywall in that it could have been done that

09:55:33AM 18 way.  It just wasn't.  Okay?

09:55:35AM 19 And that's really my point.  And -- but that's not a

09:55:38AM 20 killer in and of itself.  Okay?  I'm just saying, that's my

09:55:44AM 21 preface.  That's all I'm saying, is it could have been done

09:55:46AM 22 that way but it wasn't.

09:55:48AM 23 And I believe that the court always has inherent

09:55:51AM 24 authority to oversee the duties of the attorneys that they

09:56:00AM 25 appoint.  So let's just put in a box just for a second, it

09:56:03AM 1    could have been done that way and it wasn't.  Maybe no harm,

09:56:07AM 2    no foul.  Okay?  Maybe no harm, no foul.  Let's just proceed

09:56:12AM 3    on.  However, in this particular case, what we have is the

09:56:18AM 4    defendant -- normally, all the -- all the objective criteria

09:56:21AM 5    is done and everything is settled by objective criteria.

09:56:29AM 6    That's not the case in this case.  Okay?

09:56:31AM 7         And under Section 3.8, as I pointed out in my brief,

09:56:37AM 8    you got a different class, the people that have settled their

09:56:41AM 9    cases or pardon me.  The first prescription for Xarelto was

09:56:46AM 10   on or after December 2015, they got a 75 percent reduction,

09:56:49AM 11   okay?  So you got a different class out there and that's --

09:56:53AM 12   it would be okay if it was independently verified, but it

09:56:57AM 13   wasn't.  It was done at the dictation and requirement of the

09:57:02AM 14   defendants.  That -- a cap on anybody who is two days or less

09:57:07AM 15   in the hospital.

09:57:08AM 16        So it's not completely objective.  It is -- it is

09:57:13AM 17   partially controlled by the defendants.  So that sets up a

09:57:17AM 18   conflict between classes of plaintiffs.  It just does.

09:57:23AM 19   That's the definition of conflict.  And the PSC agreed to

09:57:25AM 20   that.  Okay?  So now we have -- I'm building kind of a

09:57:30AM 21   three-legged stool.  The PSC owes a fiduciary duty to

09:57:35AM 22   everybody, evenly, every single body.  Okay?  That's a

09:57:38AM 23   requirement of this Court's order.  The PSC agreed to

09:57:42AM 24   something that puts up a conflict.

09:57:44AM 25        Then, Judge, you go to Section 10 of the settlement

09:57:50AM 1  agreement, which has all of these improper provisions that

09:57:54AM 2  restrict the practice of law that say the attorneys are

09:58:00AM 3  required to recommend to all clients and fire any client that

09:58:05AM 4  doesn't agree to take the settlement.  And so, Judge, if you

09:58:11AM 5  want -- really, I think the best way I can emphasize this,

09:58:15AM 6  okay, and there's many sections I've talked about in my brief

09:58:18AM 7  and outlined for the court and highlighted, but Section I

09:58:24AM 8  think it's 10.26 says that I got to recommend it to my

09:58:27AM 9  client, if they don't take it, I got to fire them and I have

09:58:30AM 10  to use as my -- as my attorney, I have to use my best efforts

09:58:36AM 11  to get every other lawyer with an interest in the case to

09:58:39AM 12  also fire that client because he wouldn't take the

09:58:42AM 13  settlement.  That's a contractual requirement that the PSC

09:58:46AM 14  signed off on.

09:58:47AM 15      Now, that is not only not in that client's best

09:58:52AM 16  interest.  Your Honor, I cannot think of anything -- I don't

09:58:56AM 17  think the court could or anybody could in this room think of

09:58:59AM 18  anything more adverse to a client's interest than saying your

09:59:06AM 19  lawyer's going to fire you and he's going to try to make sure

09:59:11AM 20  everybody else that knows anything about this case is going

09:59:14AM 21  to fire you and he's going to make sure that anybody else

09:59:17AM 22  that has handled Xarelto cases is not going to help you.

09:59:21AM 23  That is the definition of adverse.

09:59:23AM 24      So the PSC is adverse to nonparticipating clients.

09:59:30AM 25  So these nonparticipating clients need protection.  Okay?

09:59:36AM 1   All of these things in Section 10, things like nobody's going

09:59:42AM 2   to advertise anymore, nobody's going to handle these cases

09:59:45AM 3   anymore, okay?  And I appreciate what Your Honor said and now

09:59:50AM 4   they've changed their tune on this trial package.  But I gave

09:59:54AM 5   you a -- I submitted with my sealed brief an e-mail from Mr.

09:59:59AM 6   Barr that made it very clear that all we were going to get

10:00:03AM 7   was the live testimony at trial, exhibits that were entered

10:00:06AM 8   at trial and the depositions that were admitted in trial.

10:00:10AM 9   That was it.  No other trial package was going to be made

10:00:14AM 10  available.  That's an e-mail from the PSC.  That shows how

10:00:17AM 11  adverse they were.  They only changed that tune in response

10:00:20AM 12  to this court's instructions to them last month to make

10:00:25AM 13  things available to us.  And we've now got it made available,

10:00:28AM 14  but I haven't had a chance to review it all and see -- and

10:00:32AM 15  see where I'm at.

10:00:33AM 16         But my point with that, Judge, is I think we've got a

10:00:40AM 17  whole big issue with the fruit of the poison tree.  I know

10:00:44AM 18  that I felt a -- pardon of the expression -- hell of a lot of

10:00:48AM 19  pressure to take this settlement even though it was not in my

10:00:51AM 20  client's best interest because I'm reading this settlement

10:00:54AM 21  agreement saying I'm not going to have any cooperation,

10:00:57AM 22  literally the settlement agreement says they're not going

10:00:59AM 23  to -- they're going to interfere with my ability to get

10:01:03AM 24  experts.  I've got all this pressure.  I need to just take it

10:01:07AM 25  because I don't have any choice.

| | | |
|---|---|---|
| 10:01:09AM | 1 | How many of the 99 percent fell into the same |
| 10:01:12AM | 2 | category?  And I think that -- what I'm asking the court is |
| 10:01:20AM | 3 | really two primary things.  All I -- I would be happy and I |
| 10:01:26AM | 4 | think everybody that represents anybody on the plaintiff's |
| 10:01:30AM | 5 | side could only be improved if the court reviewed those two |
| 10:01:38AM | 6 | sections or appointed an independent person to say what |
| 10:01:43AM | 7 | that -- if there's any reduction for people after |
| 10:01:46AM | 8 | December 2015, what that is.  And I think you've got the |
| 10:01:51AM | 9 | inherent authority to do it, Judge, because there's been this |
| 10:01:54AM | 10 | conflict of interest set up. |
| 10:01:55AM | 11 | THE COURT:  Well, you made some comments, Mike, from |
| 10:02:03AM | 12 | the standpoint of your interpretation of the document.  And I |
| 10:02:05AM | 13 | need to hear from the other side on that. |
| 10:02:07AM | 14 | One thing with regard to the December 15th is that |
| 10:02:11AM | 15 | there's been a change in the label. |
| 10:02:11AM | 16 | MR. LOVE:  I understand that. |
| 10:02:13AM | 17 | THE COURT:  The whole concept of the case was the |
| 10:02:16AM | 18 | failure to inform the doctors, the treating physicians, |
| 10:02:19AM | 19 | because in these types of cases, this is a prescription drug |
| 10:02:24AM | 20 | and so the manufacturer has a duty not to advise the consumer |
| 10:02:31AM | 21 | of the problems, but to advise the learned-intermediary, the |
| 10:02:37AM | 22 | doctor, of the problems, so the doctor then can tell the |
| 10:02:41AM | 23 | consumer.  And there was a change in the label and that was |
| 10:02:45AM | 24 | the reason for the difference as I understand it. |
| 10:02:49AM | 25 | But there's also some -- you know, the language you |

10:02:56AM   1   interpret in the release, you know, I hear what you're --

10:03:00AM   2   what your interpretation is, but I should hear from your

10:03:04AM   3   other side.  I'll give you an opportunity to respond to them,

10:03:07AM   4   but let's hear what they say.

10:03:10AM   5        MR. LOVE:  Sure.  And I had a few more points, but

10:03:12AM   6   I'll step back.

10:03:13AM   7        THE COURT:  Okay.

10:03:17AM   8        MR. BIRCHFIELD:  Your Honor, it's my honor to rise in

10:03:51AM   9   defense of the PSC in this matter.

10:03:54AM   10       Our defense has two parts.  The first part pertains

10:04:02AM   11  to the law and the second part pertains to the facts.

10:04:08AM   12  Mr. Love, on behalf of his 15 objecting clients, his argument

10:04:16AM   13  is based on faulty legal reasoning and false factual

10:04:23AM   14  allegations.  And, first, I address Mr. Love's legal

10:04:27AM   15  reasoning.

10:04:27AM   16       The jurisprudence is clear.  The jurisprudence is

10:04:32AM   17  clear that a -- that someone that is not a party to an

10:04:37AM   18  agreement does not have standing.  They don't have any

10:04:40AM   19  prejudice.  They do not have standing to complain about the

10:04:44AM   20  terms of the agreement.  None.  None of Mr. Love's clients

10:04:51AM   21  are a party to this agreement.  As the court -- as the court

10:04:57AM   22  reviewed, this is an opt-in settlement agreement.  This is a

10:05:03AM   23  settlement offer that was made to each of the Xarelto

10:05:07AM   24  claimants.  They had the opportunity.  Most of Mr. Love's

10:05:12AM   25  clients, the ones that were eligible, the ones that had a

10:05:15AM  1   lawsuit on file by April the 4th, those clients were given an

10:05:21AM  2   opportunity, with the advice of counsel, to become a party to

10:05:25AM  3   this agreement.  They chose not to do so.  They are not

10:05:30AM  4   prejudiced by the terms of the agreement and, therefore, they

10:05:33AM  5   have no standing.

10:05:35AM  6        Mr. Love also raises the issue about a conflict, and

10:05:43AM  7   he suggests that there is a conflict between those claimants

10:05:48AM  8   that would not be subject to a major reduction, those that

10:05:56AM  9   use the product were injured after the label.  So if you've

10:06:01AM  10  got one class, he calls them a class, subject to the major

10:06:06AM  11  reductions and then you have other claimants, there are other

10:06:09AM  12  claimants in this program, who are not subject to a

10:06:11AM  13  reduction.  But none, none of Mr. Love's clients, none of

10:06:16AM  14  these objecting clients, fall into the category where they're

10:06:20AM  15  not subject to a major reduction.  There is no conflict from

10:06:23AM  16  a factual standpoint.  There is no conflict for Mr. Love and

10:06:29AM  17  his clients.  That is merely an academic hypothetical

10:06:36AM  18  situation that he is offering to the court.

10:06:42AM  19       And, Your Honor, I don't believe I need to address, I

10:06:46AM  20  think the court has already discussed the challenges on a

10:06:49AM  21  class action that he is asking for in his papers, the court

10:06:53AM  22  to impose out of thin air a settlement class that is a part

10:06:59AM  23  from any offer by the defendants or acceptance by the

10:07:03AM  24  parties, the court to impose a settlement class and whatever

10:07:08AM  25  terms the court sees fit.  I think that is legal fantasy

10:07:17AM  1   land.  I think that is -- I think that bears no further

10:07:20AM  2   discussion.

10:07:21AM  3        Your Honor, we really should be in a place where a

10:07:25AM  4   discussion of the legal reasoning should be sufficient.  He

10:07:30AM  5   has no legal standing.  His claimants have no legal standing.

10:07:34AM  6   That should be sufficient.  But the scurrilous nature of his

10:07:40AM  7   factual allegations compel me to move forward to discuss the

10:07:45AM  8   false factual allegations that Mr. Love on behalf of his 15

10:07:49AM  9   objecting clients have posed against this court's selected

10:07:57AM 10   and appointed PSC.

10:08:00AM 11        It puts us, it puts the PSC, in a very difficult

10:08:09AM 12   position.  This MDL was formed five years ago this month, and

10:08:15AM 13   for the past -- the past number of years, these past five

10:08:20AM 14   years, we have labored.  We have labored on behalf of all the

10:08:26AM 15   plaintiffs in this -- in this MDL.  We have labored with and

10:08:31AM 16   on behalf of a number of lawyers who represent these

10:08:35AM 17   claimants.  We have -- we have been in the trenches.  We have

10:08:39AM 18   tried cases.  We have taken depositions.  We have spent, Your

10:08:42AM 19   Honor, between held and shared costs, approximately

10:08:47AM 20   $18 million in advancing this litigation.  And so we are

10:08:53AM 21   heavily invested with the plaintiffs cause here.

10:08:58AM 22        And now, and now because of the allegations that

10:09:02AM 23   Mr. Love makes in his pleadings, we are put in a position to

10:09:07AM 24   rise in adversity to those positions.  And that is a -- that

10:09:13AM 25   is a difficult and extremely unpleasant place to be.

| | | |
|---|---|---|
| 10:09:18AM | 1 | Sacred text tells us there's nothing new under the |
| 10:09:27AM | 2 | sun.  So fortunately I was able to go back in history and see |
| 10:09:33AM | 3 | how others, wise men, have addressed this.  Demosthenes faced |
| 10:09:39AM | 4 | a similar situation in 330 BC.  Accusations were leveled |
| 10:09:46AM | 5 | against him.  And as he rose to give a defense, this is |
| 10:09:50AM | 6 | the -- this is the observation that I see as accurate and |
| 10:09:53AM | 7 | gives me comfort here.  He says that the -- that the |
| 10:10:02AM | 8 | uncomfortable position that he is put in is laid chargeable, |
| 10:10:08AM | 9 | is laid chargeable at his opponent's feet.  It is Mr. Love's |
| 10:10:14AM | 10 | position, the scurrilous nature of his factual allegations |
| 10:10:19AM | 11 | against this PSC that necessitates that we speak to the |
| 10:10:22AM | 12 | appropriateness of the terms of this agreement and lay bare |
| 10:10:27AM | 13 | and lay bare the reasoning supporting this and that is -- |
| 10:10:32AM | 14 | that is adverse.  But, unfortunately, it's not only adverse |
| 10:10:37AM | 15 | to Mr. Love and his 15 claimants, but there are approximately |
| 10:10:42AM | 16 | 250 to 300 claimants that chose not to partake in the |
| 10:10:49AM | 17 | settlement agreement and not to file an objection.  Maybe |
| 10:10:53AM | 18 | they're seeking to join now.  But because of this, because of |
| 10:10:57AM | 19 | the nature of these allegations, I must press on and address |
| 10:11:02AM | 20 | these factual allegations. |
| 10:11:03AM | 21 | The PSC was charged by this court in Pretrial Order |
| 10:11:07AM | 22 | 7, we were charged with conducting discovery, discovery on |
| 10:11:12AM | 23 | behalf of all the claimants in this -- in this case.  So we |
| 10:11:15AM | 24 | have done that.  We obtained over 6,000,000 documents from |
| 10:11:20AM | 25 | the defendants.  We have conducted 83 depositions of |

10:11:25AM 1   defendant's executives, their scientists and other employees,

10:11:29AM 2   both here in the US and in Europe.  That discovery process

10:11:35AM 3   was highly contested.  We wanted more.  The defendants wanted

10:11:40AM 4   less.  We argued.  We argued and briefed that and the court

10:11:43AM 5   decided what discovery we were entitled to.

10:11:46AM 6        In the process, we have retained and produced expert

10:11:56AM 7   reports on behalf of 16 highly qualified, highly credentialed

10:11:59AM 8   experts.  We have produced -- we produced those experts in

10:12:01AM 9   depositions and we have -- we've defended those experts in

10:12:05AM 10  Daubert briefing and in Daubert hearings.  We have done

10:12:09AM 11  extensive legal research and legal briefing.  We have -- we

10:12:13AM 12  have done the discovery on dozens of potential bellwether

10:12:18AM 13  trials.  We have coordinated efforts for six bellwether

10:12:23AM 14  trials, three in this MDL court, two here in New Orleans, one

10:12:27AM 15  in Mississippi, three in state court in Philadelphia.  And we

10:12:31AM 16  have -- we have trained -- not only did we handle these

10:12:36AM 17  Bellwether trials, but we also worked with plaintiff's

10:12:39AM 18  lawyers to -- share what we have learned, to work with them

10:12:43AM 19  in developing an understanding and an expertise of the case

10:12:49AM 20  so that they could go out and engage in the bellwether

10:12:52AM 21  process.  The court ordered 1,200 cases to be worked up

10:12:55AM 22  through the bellwether process and in fulfilling our

10:13:00AM 23  responsibility to the court of -- of doing the discovery, of

10:13:05AM 24  having hearings and meetings with lawyers, we conducted

10:13:09AM 25  training sessions, we invited large groups of lawyers, all

10:13:14AM  1    plaintiffs lawyers involved, to come here and work with us in

10:13:17AM  2    understanding this case.

10:13:18AM  3         The court in its Pretrial Order No. 7 also charges us

10:13:22AM  4    with not only with doing the -- doing the discovery and

10:13:25AM  5    having hearings and meetings, but also engaging in settlement

10:13:31AM  6    discussions to see if there is an opportunity.  All of this

10:13:34AM  7    is part of the responsibilities that the court has given to

10:13:40AM  8    the PSC.  In fulfilling those responsibilities, we negotiated

10:13:47AM  9    a settlement agreement for a global settlement agreement for

10:13:51AM  10   $775,000,000 on behalf of these clients.

10:13:56AM  11        Mr. Love says that we have the responsibility to

10:14:01AM  12   represent or to act on behalf of all of these claimants.

10:14:06AM  13   Your Honor, I submit that we have done that.  But that does

10:14:09AM  14   not mean that every plaintiff is to be treated evenly.  The

10:14:17AM  15   settlement agreement charges that this should be a -- that

10:14:24AM  16   our objective, the objective of this settlement, is for

10:14:27AM  17   100 percent participation, but it is voluntary.  It is an

10:14:31AM  18   opportunity for lawyers to meet with their clients and make a

10:14:35AM  19   decision should they opt in or not.

10:14:36AM  20        What that means, if we are devising a settlement

10:14:41AM  21   agreement, it must be fair, it must be fair across the

10:14:44AM  22   spectrum.  It must be fair to the, you know, claimant who has

10:14:47AM  23   a nose bleed and has a visit with the ER.  It has to be fair

10:14:54AM  24   to the brain bleed claimant who had 30 days of

10:14:57AM  25   hospitalization and decide.  And it must be fair to each and

10:15:01AM 1   every claimant, all along that spectrum.  We represent -- and

10:15:06AM 2   this settlement agreement does that.  But a brain bleed

10:15:09AM 3   plaintiff should not be treated the same as a plaintiff who

10:15:14AM 4   didn't even take Xarelto or didn't have Xarelto, but we're

10:15:17AM 5   charged with conducting this on behalf of all of them.

10:15:20AM 6        We have done that, Your Honor.  The settlement

10:15:23AM 7   agreement is -- I think speaks volumes about

10:15:29AM 8   the effectiveness that the PSC has done in working in

10:15:35AM 9   consultation with the special master in developing a

10:15:45AM 10  settlement protocol that is fair across the spectrum.  It is

10:15:46AM 11  fair to each and every plaintiff that is eligible to

10:15:49AM 12  participate.  There are approximately 29,000, just shy of

10:15:53AM 13  29,000 claimants.  There is -- we're at 99 percent of the

10:15:58AM 14  participating claimants that are eligible choosing to

10:16:02AM 15  participate.  There are in addition to the plaintiff's

10:16:06AM 16  leadership 73 percent of those, those claimants that are

10:16:10AM 17  choosing to participate are not plaintiff's leadership.

10:16:15AM 18  These are -- these are nonleadership eligible claimants.

10:16:19AM 19  Those that are choosing not to participate, our count is at

10:16:25AM 20  258 less than -- less than one percent.  In fulfilling our

10:16:29AM 21  obligations, Your Honor, before we had -- before we announced

10:16:32AM 22  the settlement, before we were at a place of reaching the

10:16:36AM 23  settlement agreement, we worked with lawyers and we met with

10:16:38AM 24  them to educate them on the case.  Once the settlement was

10:16:43AM 25  reached, we worked to -- to advise and educate and advise all

| | |
|---|---|
| 10:16:49AM | 1 |
| 10:16:53AM | 2 |
| 10:16:57AM | 3 |
| 10:17:02AM | 4 |
| 10:17:05AM | 5 |
| 10:17:08AM | 6 |
| 10:17:13AM | 7 |
| 10:17:18AM | 8 |
| 10:17:22AM | 9 |
| 10:17:27AM | 10 |
| 10:17:31AM | 11 |
| 10:17:37AM | 12 |
| 10:17:41AM | 13 |
| 10:17:45AM | 14 |
| 10:17:47AM | 15 |
| 10:17:53AM | 16 |
| 10:17:55AM | 17 |
| 10:18:03AM | 18 |
| 10:18:07AM | 19 |
| 10:18:12AM | 20 |
| 10:18:16AM | 21 |
| 10:18:19AM | 22 |
| 10:18:23AM | 23 |
| 10:18:25AM | 24 |
| 10:18:28AM | 25 |

1  plaintiff's counsel and to work with their clients.  The
2  settlement agreement was announced on March 25th, and there
3  was a registration deadline for March 28th.  There was a
4  deadline to file claims.  If you were going to participate in
5  the settlement, if you were eligible, you had to file -- any
6  unfiled claims had to be filed by April the 4th.  There was a
7  deadline of April the 9th to register all filed claims.  We
8  posted as soon as we could.  We posted just to give lawyers
9  as much time as we possibly could.  We posted an unsigned
10  master settlement agreement on BrownGreer's portal.  We did
11  that on April the 29th.  On May 8th, we posted a signed
12  agreement on the BrownGreer portal.  June 20th, June 20th,
13  the enrollment portal is opened and claimants can begin the
14  process.
15       Let me back up here, Your Honor.  So we had the
16  settlement agreement announced on March 25th.  The court held
17  -- holds monthly status conferences.  So every month, along
18  the way, anyone who had access -- who had claimants had
19  access to the master settlement agreement, had access to all
20  of these terms, could have addressed the plaintiff's
21  leadership, could have addressed the court each month.  At
22  the monthly status conference, the court affords lawyers or
23  claimants the opportunity to be heard if there are any
24  issues.  So all along the way, there was opportunities for
25  any concerns, these concerns that are raised now, were never

| | | |
|---|---|---|
| 10:18:33AM | 1 | raised, never ever raised until after the enrollment period |
| 10:18:39AM | 2 | was closed.  The settlement enrollment deadline was August |
| 10:18:44AM | 3 | the 5th.  That was extended pursuant to the agreement to |
| 10:18:48AM | 4 | September the 4th.  There are claim submission deadlines that |
| 10:18:51AM | 5 | are -- that are in place.  The settlement agreement has an |
| 10:18:53AM | 6 | extraordinary -- circumstance funds so it aids an element of |
| 10:18:59AM | 7 | fairness.  If there are extraordinary circumstances |
| 10:19:02AM | 8 | surrounding this, if there's extraordinary expenses that will |
| 10:19:06AM | 9 | take it out, there is a pool of $70 million that can be -- |
| 10:19:10AM | 10 | that can be used to address those extraordinary |
| 10:19:14AM | 11 | circumstances.  And as we mentioned earlier, the settlement |
| 10:19:17AM | 12 | timeline brings us to December the -- December the 18th for |
| 10:19:21AM | 13 | the defendants to exercise their walkaway rights.  During |
| 10:19:26AM | 14 | this period, Your Honor, we conducted, the PSC, the |
| 10:19:30AM | 15 | plaintiffs leadership, conducted all-counsel calls.  On |
| 10:19:34AM | 16 | March 25th, when we rolled this out, we provided information. |
| 10:19:36AM | 17 | We hosted a call for all plaintiffs' counsel to learn about |
| 10:19:41AM | 18 | the terms of the settlement agreement.  We made a |
| 10:19:43AM | 19 | presentation at the Mass Tort Made Perfect about the |
| 10:19:48AM | 20 | settlement on April -- on April 24th.  We conducted a webinar |
| 10:19:51AM | 21 | to provide education about the terms of the settlement |
| 10:19:56AM | 22 | agreement.  We had meetings.  We traveled to Atlanta.  We |
| 10:19:59AM | 23 | traveled to Houston in Mr. Love's backyard.  We traveled |
| 10:20:05AM | 24 | there to host meetings for any of the plaintiffs' lawyers who |
| 10:20:08AM | 25 | had questions about the settlement agreement, had any |

10:20:10AM 1    concerns about the settlement agreement to come and meet with

10:20:12AM 2    us and have discussions.  We had a meeting in Philadelphia

10:20:17AM 3    the first of May.  We had further all-counsel calls in June

10:20:21AM 4    and July and August.  We had hundreds, literally hundreds of

10:20:25AM 5    e-mails and calls with plaintiffs' -- plaintiffs' lawyers

10:20:29AM 6    across the country to address -- to address these -- these

10:20:33AM 7    issues.

10:20:33AM 8        Now, we're in a place of -- of being challenged after

10:20:40AM 9    28,000 -- I mean, 28,000 people have said we want to

10:20:45AM 10   participate in this settlement agreement.  Now we are

10:20:47AM 11   challenged on the allocation method.

10:20:50AM 12       Mr. Love says that the special master and the

10:20:56AM 13   plaintiff's leadership are solely responsible for

10:21:00AM 14   establishing the method of allocating the settlement funds,

10:21:02AM 15   and that is true and that is exactly what has happened.

10:21:06AM 16   Mr. Love charges that the defendants dictated a 75 percent

10:21:10AM 17   reduction for late-term injuries or users on Xarelto.  That

10:21:15AM 18   is absolutely false, Your Honor.  And there is no basis for

10:21:18AM 19   him to -- to make that claim.  We have met with him.

10:21:23AM 20       Following the November status conference when he

10:21:27AM 21   raised these issues for the first time, we met with him and

10:21:31AM 22   we laid this out for him.  Gary Russo with Jones Walker is

10:21:36AM 23   the special master that has been retained in this case.  It

10:21:40AM 24   is his responsibility in consultation with the plaintiffs

10:21:43AM 25   leadership to develop a settlement allocation protocol, one

| | |
|---|---|
| 10:21:48AM | **1** |
| 10:21:52AM | **2** |
| 10:21:57AM | **3** |
| 10:22:08AM | **4** |
| 10:22:13AM | **5** |
| 10:22:14AM | **6** |
| 10:22:18AM | **7** |
| 10:22:24AM | **8** |
| 10:22:30AM | **9** |
| 10:22:37AM | **10** |
| 10:22:40AM | **11** |
| 10:22:45AM | **12** |
| 10:22:50AM | **13** |
| 10:22:56AM | **14** |
| 10:23:01AM | **15** |
| 10:23:07AM | **16** |
| 10:23:11AM | **17** |
| 10:23:19AM | **18** |
| 10:23:25AM | **19** |
| 10:23:29AM | **20** |
| 10:23:32AM | **21** |
| 10:23:38AM | **22** |
| 10:23:41AM | **23** |
| 10:23:46AM | **24** |
| 10:23:49AM | **25** |

that is fair for each and every claimant across the spectrum.

Mr. Love says that the defendants dictated that 75 percent reduction.  Mr. Russo, Gary Russo, the special master, has never met with any of -- any defense counsel in this case, he has never met with any -- anybody on behalf of the defendants in this case.  That term, as has been explained to Mr. Love, was a -- reflects the reality of this litigation.  The defendants did as a -- as a term, one of the terms that the defendants insisted on was the -- was the requirement that there be a substantial reduction.  The defendants did not dictate 75 percent.  They did not say it is 60 percent or 70 percent or 90 percent.  That was left. The amount of the reduction was left to the special master, to Gary Russo.  He consulted with us and -- and the 75 percent reduction is solely based on the special master's approval here, not dictated by the defendants.

The less than two days hospitalization capped at 3.75 of the settlement agreement, Your Honor, that is, yes, it is required to be in there.  That's one that we readily accepted.  We don't want -- we would not want a settlement protocol that is unfairly tilted to those who have the least degree of injury.  This -- this provision is not anywhere near being in play here so.  So Mr. Love's primary objection deals with the -- with the 75 percent reduction.

And so, Your Honor, that raises the issue.  Is the

10:23:56AM  1   75 percent reduction, is it dictated by the defendants?  No.

10:24:03AM  2   Is it arrived at arbitrarily as Mr. Love claims?  Absolutely

10:24:09AM  3   not.  It reflects the reality of this litigation.

10:24:14AM  4        Every single -- every single bellwether trial that

10:24:17AM  5   was tried in this case involved a plaintiff who was taking

10:24:22AM  6   Xarelto before the label changed.  All of the issues that we

10:24:27AM  7   raised -- so this litigation started in December of 2014.  In

10:24:34AM  8   September of 2015, so mid course in this litigation, the

10:24:38AM  9   defendants the changed the label and the label change

10:24:45AM  10  includes the information that we were fussing about.  It

10:24:48AM  11  includes the US bleed data, the GI bleeding data verse --

10:24:54AM  12  Xarelto versus warfarin.  It includes the information that

10:24:59AM  13  the FDA was telling the defendants to include in the label.

10:25:03AM  14  That poses a major problem for plaintiffs litigating these

10:25:07AM  15  cases.  We recognize that.  We had tried these cases.  We

10:25:11AM  16  have done focus groups.  We have taken depositions.  We knew

10:25:16AM  17  -- we knew that doctors are charged with knowing and

10:25:20AM  18  understanding the information in the label.

10:25:22AM  19       It also presented as we were developing an allocation

10:25:27AM  20  plan that would be fair across the spectrum, we also had to

10:25:30AM  21  be aware, had to be alert of the preemption issue.  The

10:25:36AM  22  Fosamax decision was pending before the US Supreme Court.  It

10:25:41AM  23  was decided just a matter of weeks after we roll out this

10:25:45AM  24  settlement agreement, we knew that the label change,

10:25:48AM  25  particularly the label change -- we fought hard.  As the

10:25:52AM  1  court knows, the preemption litigation was hotly contested

10:25:56AM  2  for the label before September 2015.  It was a hotly

10:26:04AM  3  contested issue.  We knew, we knew that the new label change

10:26:07AM  4  would pose major, major problems on the preemption front.  So

10:26:15AM  5  the 75 percent reduction, Your Honor, is anything but

10:26:18AM  6  arbitrary.  It is based on the facts, the reality of this

10:26:22AM  7  litigation.

10:26:24AM  8       One of the things that I think is most telling, Your

10:26:31AM  9  Honor, you've got the plaintiff's leadership.  The plaintiffs

10:26:36AM 10  leadership has -- all of our cases are in.  We know the

10:26:42AM 11  litigation, we have worked hard.  We understand the ins and

10:26:47AM 12  outs.  But beyond that, the court as I mentioned earlier the

10:26:50AM 13  court had 1,200 wave cases where discovery was ordered on

10:26:55AM 14  those wave cases to prepare them for remand.  The plaintiff's

10:27:01AM 15  deposition was to be taken.  The doctor -- prescribing doctor

10:27:03AM 16  and the treating doctor's deposition was to be taken and the

10:27:07AM 17  sales rep in some of those cases.

10:27:10AM 18       One of the -- one of the things that this settlement

10:27:14AM 19  reflects, every single lawyer, every single lawyer who

10:27:19AM 20  participated in the wave process, who had to defend a

10:27:23AM 21  plaintiff in a deposition, had to take a doctor's deposition.

10:27:28AM 22  Every single lawyer advised their clients to opt in to this

10:27:34AM 23  settlement agreement.  There is not one lawyer who has

10:27:38AM 24  advised their clients to stay out of this program who tried a

10:27:43AM 25  case, who took a deposition.  If they were engaged in this

| | | |
|---|---|---|
| 10:27:48AM | 1 | process to learn the facts of this litigation, they |
| 10:27:51AM | 2 | understand.  They understand that the -- that this settlement |
| 10:27:58AM | 3 | allocation program is objectively based and reflects the |
| 10:28:01AM | 4 | reality of this litigation. |
| 10:28:03AM | 5 | If you look at the overwhelming -- we got 15 -- 15 |
| 10:28:08AM | 6 | maybe -- maybe that's up a little bit.  Maybe it's half a |
| 10:28:13AM | 7 | percent in the courtroom today, but it is a tiny, tiny |
| 10:28:17AM | 8 | percent. |
| 10:28:17AM | 9 | One of the other allegations that Mr. Love makes |
| 10:28:23AM | 10 | against the PSC is that we agreed.  He charges that we agreed |
| 10:28:28AM | 11 | to unethical, improper, illegal terms and that we did that to |
| 10:28:36AM | 12 | advantage ourselves, putting our client's interest or the |
| 10:28:45AM | 13 | clients of this MDL behind our own interest.  That is false, |
| 10:28:49AM | 14 | Your Honor.  The PSC firms, we represent clients.  27 percent |
| 10:28:53AM | 15 | of our clients face these major reductions.  We understand |
| 10:28:58AM | 16 | the pinch of these reductions, but we also understand the |
| 10:29:02AM | 17 | fairness of these reductions. |
| 10:29:04AM | 18 | There is one common thread and here is the part, Your |
| 10:29:09AM | 19 | Honor.  He accuses us.  He accuses us of improper, unethical |
| 10:29:15AM | 20 | conduct.  We, as the court appointed PSC, Your Honor, I think |
| 10:29:24AM | 21 | the court has observed that we litigated vigorously.  We |
| 10:29:30AM | 22 | fought hard in the discovery process.  We fought hard through |
| 10:29:34AM | 23 | the bellwether trials.  We know this case.  When the -- |
| 10:29:39AM | 24 | the -- Mr. Love and the other firms that have opted out, yes, |
| 10:29:47AM | 25 | they are late to this -- to this litigation.  They did not |

10:29:52AM  1   get involved early.  But when they came in, they had a

10:29:58AM  2   choice.  They could have looked to the PSC, at least inquired

10:30:02AM  3   of the PSC, about the reasonableness of this settlement and

10:30:08AM  4   the allocation process.  Instead, instead, they opted to turn

10:30:16AM  5   instead to Mass Torts Nexus and Mr. John Ray, I think he's in

10:30:20AM  6   the courtroom today, non lawyer, look to him, get his advice

10:30:25AM  7   on this litigation and the arguments that we are seeing, the

10:30:29AM  8   arguments in these briefs, are mirrored in the writings and

10:30:34AM  9   the rantings of Mr. Ray in the Mass Torts Nexus outfit.

10:30:40AM  10         Here is what he has charged, Your Honor.  Mr. Love

10:30:45AM  11  has charged that thousands, thousands of plaintiffs are in

10:30:48AM  12  this settlement agreement against their best interest.

10:30:54AM  13  Mr. Love is charging lawyers, lawyers, to advising their

10:31:01AM  14  clients to act against their best interest for the lawyer's

10:31:08AM  15  own financial gain.  And, Your Honor, that is highly

10:31:14AM  16  offensive and it is absolutely false.  It comes from a

10:31:18AM  17  position.  It comes from a position of not understanding the

10:31:22AM  18  reality of this litigation.  And the most disturbing part is

10:31:27AM  19  this is not just innocent ignorance.  This is willful

10:31:35AM  20  blindness to the realities of this litigation.

10:31:39AM  21         Your Honor, I am proud to stand in defense of the PSC

10:31:44AM  22  and the work that we have done.  Demosthenes noted that he

10:31:51AM  23  stood, and he stood making his argument with two distinct

10:31:59AM  24  disadvantages.  The first disadvantage was risk.  Mr. Love,

10:32:03AM  25  this may be play to Mr. Love.  Mr. Love may not have much at

10:32:09AM    1    stake with his 15 claimants here.  We do.  We have labored

10:32:14AM    2    for 5 years in this litigation.  We have expended $15,000,000

10:32:21AM    3    in advancing this litigation.  We represent 28,000 people who

10:32:25AM    4    have reviewed this settlement agreement and said I want to

10:32:28AM    5    participate.  We have a lot at stake.  We have a distinct

10:32:32AM    6    advantage in standing here and risk, we have a lot at risk.

10:32:38AM    7    Mr. Love has very little.

10:32:39AM    8         The second, the second disadvantage, is that Mr. Love

10:32:44AM    9    is making these accusations hurdling these invectives in a

10:32:50AM   10    day, in our culture where that is popular sport.  But, Your

10:32:57AM   11    Honor, this is wrong.  It is wrong to come into court to make

10:33:03AM   12    arguments and hurl invectives, such scurrilous allegations

10:33:11AM   13    against the court's appointed PSC without factual or legal

10:33:15AM   14    basis and he has done that.  Thank you, Your Honor.

10:33:17AM   15         THE COURT:  Before you leave, talk to me about this

10:33:20AM   16    Section 10.  He's concerned that the lawyers must get out of

10:33:24AM   17    the litigation if they can't -- must, he says, fire their

10:33:31AM   18    client.  How do you see that?

10:33:34AM   19         MR. BIRCHFIELD:  Your Honor, that provision is borne

10:33:38AM   20    from defendant's wanting to avoid cherry picking a settlement

10:33:41AM   21    offer where they put in certain claimants but they keep out

10:33:45AM   22    the ones they think they can do better with in court.  That

10:33:50AM   23    settlement provision, Your Honor, it has a number of safe

10:33:58AM   24    harbors.  It has qualifying language here.  It says nothing

10:34:02AM   25    in this agreement.  The section that he refers to 1022,

```
10:34:06AM   1    nothing in this agreement is or will be intended to operate
10:34:09AM   2    as a restriction on the right of any plaintiffs' counsel or
10:34:12AM   3    law firm to -- in the practice of law.  It says that to the
10:34:17AM   4    extent permitted by ethical rules.  There is safe harbor
10:34:24AM   5    provisions here.  Your Honor, we retain -- the PSC retained
10:34:33AM   6    as our counsel ethics expert Rick Stanley.  He was involved
10:34:37AM   7    on the defense side of Vioxx litigation and he reviewed this
10:34:41AM   8    language to make sure we were within the ethical bounds.  It
10:34:45AM   9    is an effort to use their best efforts to disengage.
10:34:50AM   10          Here's what we know, Your Honor.  First of all, if it
10:34:53AM   11   is a situation where ethical rules would prohibit
10:35:00AM   12   disengagement, then it's not required.  The settlement
10:35:00AM   13   agreement has a safe harbor for that provision.  It is to use
10:35:04AM   14   the best efforts.  So any decision for a filed case for a
10:35:07AM   15   lawyer to withdraw must be presented to the court and the
10:35:11AM   16   court makes the decision about whether -- whether to allow
10:35:14AM   17   the counsel to withdraw here.
10:35:17AM   18          The settlement -- the terms of this, first of all,
10:35:22AM   19   are -- they're voluntary and, secondly, they have about
10:35:26AM   20   been -- they have been vetted by ethics counsel.  They
10:35:31AM   21   provide safe harbors.  And as Judge Underhill noted in the
10:35:36AM   22   Vioxx settlement agreement, just because lawyers are
10:35:38AM   23   presented with difficult decisions to make does not run afoul
10:35:44AM   24   of the ethical rules.  We have to make hard decisions.  And
10:35:48AM   25   Mr. Love has chosen to ignore or be dismissive towards the
```

| | | |
|---|---|---|
| 10:35:54AM | 1 | safe harbor provisions here and that is inappropriate. |
| 10:35:57AM | 2 | Your Honor, Vioxx raises one other issue that I |
| 10:36:02AM | 3 | wanted to -- wanted to make and that is Mr. Love even again |
| 10:36:06AM | 4 | this morning has -- has stated the position that defendants, |
| 10:36:12AM | 5 | if it's a global settlement, defendants don't have any say in |
| 10:36:16AM | 6 | the allocation and that's -- that's just completely false. |
| 10:36:21AM | 7 | The Vioxx settlement agreement, each of those provisions, |
| 10:36:26AM | 8 | the -- the matrix for the points awards, the amount of the |
| 10:36:34AM | 9 | deductions for risk factors, all of those were provisions |
| 10:36:36AM | 10 | that were in the settlement agreement; all of those were |
| 10:36:39AM | 11 | negotiated with the defendants.  All of those are provisions |
| 10:36:42AM | 12 | that the defendants were highly involved in.  The same thing |
| 10:36:46AM | 13 | with Actos in the Western District of Louisiana.  It is |
| 10:36:50AM | 14 | common for a global settlement agreement for the defendants |
| 10:36:53AM | 15 | to be involved in and even require certain provisions in the |
| 10:36:59AM | 16 | settlement agreement.  That does not make it a -- a class -- |
| 10:37:03AM | 17 | a class settlement. |
| 10:37:05AM | 18 | THE COURT:  All right.  Let me hear from Mr. Love who |
| 10:37:08AM | 19 | has a response. |
| 10:37:10AM | 20 | MR. RAY:  May I speak. |
| 10:37:10AM | 21 | THE COURT:  Your name, sir? |
| 10:37:11AM | 22 | MR. RAY:  My name is John Ray. |
| 10:37:14AM | 23 | THE COURT:  Are you a lawyer? |
| 10:37:16AM | 24 | MR. RAY:  No, I am not. |
| 10:37:17AM | 25 | THE COURT:  Well, who do you represent? |

10:37:20AM  1         MR. RAY:  Myself.  I was just disparaged,

10:37:22AM  2    mischaracterized before this court.  I was life size on the

10:37:23AM  3    thing.  I would like the opportunity to address, to retain

10:37:28AM  4    counsel and address the accusations made against me and my

10:37:31AM  5    organization by Mr. Bar before this court at the status

10:37:34AM  6    conference.

10:37:35AM  7         THE COURT:  You can have a seat.  Let me hear from

10:37:38AM  8    Mr. Love.

10:37:38AM  9         MR. LOVE:  Thank you, Your Honor.

10:37:45AM  10        There's a lot of hard feelings I think.  Judge, I did

10:37:51AM  11   not make any dispersions against the PSC, but we just

10:38:03AM  12   listened to about 30 minutes of them beating up on me a

10:38:06AM  13   little bit.  The -- and most of what we just heard was stuff

10:38:09AM  14   I have no disagreement with, Judge, except for the part

10:38:13AM  15   picking on me a little bit.  I disagree with that a little

10:38:15AM  16   bit.  Most of the stuff we just heard was really focused on

10:38:19AM  17   the good work the PSC has done.  Okay?

10:38:22AM  18        And I have no dispute with that, Mr. Birchfield.

10:38:26AM  19        And I have no dispute with the Court, because I

10:38:31AM  20   wouldn't be here, okay?  And for what I know, they did a

10:38:37AM  21   fantastic job.  It looks like they do.  They got a good

10:38:43AM  22   reputation for doing hard work.  This is not their first

10:38:46AM  23   rodeo.

10:38:47AM  24        But Judge, in response to my very serious things that

10:38:51AM  25   I put in my motion, I didn't have time to put them all, but

10:38:55AM   1   in response to the issues of pointing out the conflict of

10:38:57AM   2   interest they had, that -- I'm not -- I'm not accusing them

10:39:02AM   3   of falsehoods at this point, but they have a conflict of

10:39:04AM   4   interest.  In response to that, you heard a 20-minute speech

10:39:10AM   5   about what good work they did up to this point.  Well, let's

10:39:14AM   6   just stipulate to that.  But where we are now with the graphs

10:39:21AM   7   and the charts that Mr. Birchfield just had up here, he did

10:39:24AM   8   not respond to anything I've said.  Nothing.

10:39:29AM   9           The problem is that they have a fiduciary duty to

10:39:35AM   10  everybody, and when they negotiate terms, that -- this is not

10:39:43AM   11  war.  One of my favorite movies is Star Trek, I've always

10:39:47AM   12  been a Star Trek fan and when Spock gives it up, the needs of

10:39:49AM   13  the many outweigh the needs of the few.  Okay?  The needs of

10:39:52AM   14  the many because of the problems that Mr. Birchfield feels he

10:39:56AM   15  has in his case, have outweighed the needs of the few in that

10:40:01AM   16  several -- a subclass of clients is getting quite frankly

10:40:09AM   17  screwed and the reason is, Judge, this is not like Vioxx

10:40:13AM   18  where -- it's not hard to figure out.  It's not like Vioxx

10:40:16AM   19  where it's off the market.  Xarelto is still being sold,

10:40:20AM   20  still being used, still being prescribed.  There's still

10:40:26AM   21  multiple label changes since the bellwether trials and since

10:40:30AM   22  the last label change that bring in new factors that's been

10:40:34AM   23  known to the defendant for a long time and they're having to

10:40:37AM   24  do discovery on.  There's exposure.

10:40:38AM   25           THE COURT:  But don't they then opt out?  In a class

10:40:42AM    1    action --

10:40:42AM    2         MR. LOVE:  Right.

10:40:44AM    3         THE COURT:  -- unless you do something.  Here you

10:40:46AM    4    have to do something.  You have to opt in to it.

10:40:50AM    5         MR. LOVE:  With respect -- not quite, Judge.  But I'm

10:40:52AM    6    not sure how important that is.  But the answer is no because

10:40:56AM    7    in this case, you have the opt in, if you're going to opt in

10:41:00AM    8    but you also, if you don't, you got to sign a document that

10:41:03AM    9    says my intent to proceed and I'll start filing all these

10:41:08AM   10    things.  That's the opt out.

10:41:09AM   11         THE COURT:  No.  No.  No.  That's separate.  If you

10:41:12AM   12    opt in, you're into the settlement.  If you don't opt in to

10:41:17AM   13    the settlement, then I have to deal with it from a standpoint

10:41:20AM   14    of an independent case.

10:41:22AM   15         MR. LOVE:  Absolutely.

10:41:23AM   16         THE COURT:  And that's what I'm doing at that point.

10:41:23AM   17         MR. LOVE:  I understand all that.

10:41:27AM   18         THE COURT:  It has nothing to do with --

10:41:28AM   19         MR. LOVE:  And I'm not trying to get drug down into

10:41:31AM   20    that argument.  That's not my point.  My point is this:  That

10:41:35AM   21    because the defendants, Judge -- and what I'm trying to bring

10:41:39AM   22    to the court's attention is just the realities of this.

10:41:42AM   23    Okay?  The defendants have a financial incentive to end the

10:41:49AM   24    litigation.

10:41:50AM   25         THE COURT:  Mike, there's been some change since the

```
10:41:54AM   1   settlement has been arrived at.  It's called the Fosamax
10:42:00AM   2   case.
10:42:00AM   3         MR. LOVE:  Right.
10:42:00AM   4         THE COURT:  If I destroy this concept, nobody may
10:42:02AM   5   have a case.  Nobody.  It's a question of preemption that
10:42:10AM   6   Fosamax is focused on.  It's a serious point.
10:42:13AM   7         MR. LOVE:  It is a serious point.
10:42:15AM   8         THE COURT:  You're asking me to throw 23,000 people
10:42:17AM   9   or 28,000 people out.
10:42:19AM  10         MR. LOVE:  I'm really not.  No, sir.  And thank you
10:42:23AM  11   for focusing on the hardest part of my job.  Judge, that's
10:42:28AM  12   not what I'm asking.  Okay?  All I'm saying is, that with the
10:42:32AM  13   realities of what's happened, whether they negotiated a great
10:42:40AM  14   deal in light of Fosamax or perfect deal or whatever, the
10:42:40AM  15   realities of what happened is, the defendant has got -- has
10:42:46AM  16   set these things, they're not based on criteria.
10:42:48AM  17         Now, Judge, real quickly, I mean, like I said, I need
10:42:53AM  18   to respond to something.  I brought this with me.  I haven't
10:42:59AM  19   made any false statements to this court.  I try real hard not
10:43:02AM  20   to disparage opposing counsel.  I hope the court can
10:43:06AM  21   appreciate that.
10:43:07AM  22         THE COURT:  I do.
10:43:08AM  23         MR. LOVE:  Okay.  However, on this point, I think Mr.
10:43:13AM  24   Birchfield has pushed the line a little bit.  I was at that
10:43:16AM  25   Mass Torts.  He said here that the defendants -- he said to
```

10:43:19AM  1   this court the defendants did not dictate it.  I got to tell

10:43:22AM  2   you, Judge, that's not true.  Okay?

10:43:25AM  3        I was at Mass Torts at the thing he's talking about

10:43:28AM  4   and he said this is being required by the defendants.  I'm

10:43:32AM  5   also going to show you something else.  I'd like to admit it.

10:43:35AM  6   I realize when you show that --

10:43:38AM  7        THE COURT:  Wait just a moment.

10:43:39AM  8        There it is.

10:43:40AM  9        MR. LOVE:  This is an e-mail from Joseph VanZandt

10:43:46AM  10  that is talking about -- sit on behalf of the committee

10:43:52AM  11  April 17, 2019.  It says:  Thank you for your patience --

10:43:59AM  12       THE COURT:  You can zoom that down from the top.

10:44:01AM  13       MR. LOVE:  Okay.  Thank you, Judge.  There you go.

10:44:04AM  14       All right.  And they've been working on the master

10:44:09AM  15  settlement agreement.  In the meantime, the attached document

10:44:11AM  16  provides a summary of the protocol being utilized to

10:44:15AM  17  administer the settlement agreement program.

10:44:18AM  18       So I'm going to show you -- it talks about it and it

10:44:22AM  19  gives an attachment.  Now, this is before the master

10:44:26AM  20  settlement agreement was even finalized, Judge, and way

10:44:28AM  21  before Mr. Russo is appointed to special master.  And this is

10:44:32AM  22  a document attached to an e-mail sent by the PSC on April 17,

10:44:38AM  23  2019.  Basics of Xarelto Settlement Program.  And it talks

10:44:43AM  24  about BrownGreer, et cetera, but the important parts are

10:44:50AM  25  right here on page -- the next two pages.

| | |
|---|---|
| 10:44:56AM | **1** |
| 10:44:59AM | **2** |
| 10:45:04AM | **3** |
| 10:45:07AM | **4** |
| 10:45:11AM | **5** |
| 10:45:15AM | **6** |
| 10:45:18AM | **7** |
| 10:45:22AM | **8** |
| 10:45:25AM | **9** |
| 10:45:33AM | **10** |
| 10:45:37AM | **11** |
| 10:45:39AM | **12** |
| 10:45:43AM | **13** |
| 10:45:51AM | **14** |
| 10:45:52AM | **15** |
| 10:45:56AM | **16** |
| 10:46:03AM | **17** |
| 10:46:07AM | **18** |
| 10:46:11AM | **19** |
| 10:46:16AM | **20** |
| 10:46:20AM | **21** |
| 10:46:28AM | **22** |
| 10:46:30AM | **23** |
| 10:46:32AM | **24** |
| 10:46:37AM | **25** |

1        The defendants' participation in the settlement
2   agreement was conditioned upon the restrictions below.  And
3   that's the substantial reduction we're talking about and the
4   3.75.  Other than those restrictions, the special master in
5   consultation with XPCL is solely responsible for establishing
6   the method in allocating settlement funds.  So other than
7   that, the special master will do it, but the defendants
8   require this substantial reduction in April of 2019.
9        And on the next page, two pages down, reduction of
10  base awards.  Settlement awards to qualified claimants are
11  subject to the following projected reductions:  First
12  prescription on or after December 2015, 75 percent reduction.
13  So that was decided by the defendants way before Mr. Russo
14  got involved.
15       Okay?  And my point with this, Judge, is that sets up
16  a conflict and the Section 10, which Mr. Birchfield did not
17  address at all, I mean he says, well, it's got a safe harbor.
18  As I pointed out in my brief, Your Honor, that's like saying
19  I'm contractually obligated to rob a bank to the extent
20  allowed by law.  And all of those things set up a pressure
21  point to everybody else and disadvantage the nonparticipating
22  plaintiffs.  That's what gives me standing.
23       THE COURT:  No, I understand.  But what you're saying
24  is, what your remedy is, to not opt in --
25       MR. LOVE:  No, sir.

10:46:39AM  1         THE COURT:  You don't need to opt in.  If you don't

10:46:43AM  2    like it, don't opt in.  You know from surely your own

10:46:45AM  3    experience in handling cases, the defendant -- you settle a

10:46:48AM  4    case with the defendant.  The defendant prepares a settlement

10:46:51AM  5    agreement.  And they send it to you.  If you don't like the

10:46:54AM  6    settlement agreement, you don't sign it.  The defendant is

10:46:57AM  7    the one who dictates the settlement agreement in every case.

10:47:01AM  8    Every case.

10:47:02AM  9         MR. LOVE:  Can I point out the big difference with

10:47:05AM 10    that, Judge?

10:47:06AM 11         THE COURT:  Go ahead.

10:47:07AM 12         MR. LOVE:  Okay.  First off, let me just say clearly

10:47:10AM 13    you're correct.  I agree with the Court.  The problem is it

10:47:14AM 14    doesn't end there.  This settlement agreement, okay,

10:47:19AM 15    Section 10, has nothing to do with compensation of the

10:47:24AM 16    settling claimants, nothing to do with money being paid by

10:47:26AM 17    the defendant.  Section 10 only interferes with the right to

10:47:29AM 18    practice law and it interferes with the people who could help

10:47:34AM 19    my clients.  So that's how I'm being affected, Judge.

10:47:38AM 20    Everybody that could -- all the experts I could use, all the

10:47:40AM 21    other lawyers I could coordinate with, this contract

10:47:44AM 22    absolutely affects me.  That's why I'm standing here.

10:47:47AM 23         If Section 10 was not in this contract, I would not

10:47:51AM 24    be standing here.  I would just say it's not a good deal for

10:47:54AM 25    my people.  Does that make sense?

| | | |
|---|---|---|
| 10:47:56AM | 1 | THE COURT:  Yeah.  I understand what you're saying. |
| 10:47:58AM | 2 | MR. LOVE:  I need Section 10 to be struck. |
| 10:48:02AM | 3 | THE COURT:  Okay.  You talked about -- let me hear |
| 10:48:06AM | 4 | from them. |
| 10:48:12AM | 5 | MR. GLICKSTEIN:  Good morning, Your Honor.  Steven |
| 10:48:17AM | 6 | Glickstein on behalf of the defendants. |
| 10:48:19AM | 7 | Let me -- let me get to -- so an esoteric concept, |
| 10:48:34AM | 8 | it's called the law.  And I think I want to start with the |
| 10:48:41AM | 9 | disagreement about a fundamental premise in Mr. Love's |
| 10:48:46AM | 10 | argument. |
| 10:48:47AM | 11 | He said that from a practical standpoint there's no |
| 10:48:51AM | 12 | difference between an MDL -- a resolution of a large number |
| 10:48:57AM | 13 | of claims in an MDL and the resolution of a large number of |
| 10:49:01AM | 14 | claims in a class action.  And, Your Honor, I think put his |
| 10:49:06AM | 15 | finger on the difference.  In a class action, people are |
| 10:49:11AM | 16 | bound by the judgment and bound by the settlement if they do |
| 10:49:19AM | 17 | nothing.  They have to opt out of a class action.  They are |
| 10:49:26AM | 18 | absent parties before the court, and it's because there are |
| 10:49:32AM | 19 | absent claimants that the court is endowed with permission to |
| 10:49:41AM | 20 | review, approve, or not approve a settlement.  But when |
| 10:49:48AM | 21 | you're dealing with individual actions, as Your Honor has |
| 10:49:51AM | 22 | pointed out, the plaintiff and their counsel have to take an |
| 10:49:56AM | 23 | affirmative step to enroll.  They participate.  And in those |
| 10:50:04AM | 24 | circumstances, the law does not give them -- this court any |
| 10:50:12AM | 25 | jurisdiction power or authority to review the settlement. |

10:50:17AM  1    Now, when do settlements occur?  Your Honor I think

10:50:21AM  2  put it succinctly to Mr. Love.  If the defendant offers

10:50:30AM  3  settlement terms, the Love clients -- Mr. Love doesn't like

10:50:33AM  4  the terms, he doesn't have to accept the settlement.  He has

10:50:38AM  5  every right not to do so.  He and his clients haven't done so

10:50:42AM  6  in this case.

10:50:42AM  7    Mr. Love then comes back to the defendants and says

10:50:45AM  8  will you change the settlement?  I've got different terms I

10:50:49AM  9  want to settle with you.  As much as a right of Mr. Love's

10:50:56AM 10  clients have to refuse the defendant's settlement offer, the

10:51:00AM 11  defendants have the right to refuse Mr. Love's counteroffer.

10:51:05AM 12  And in those circumstances, there's no meeting of the mind

10:51:08AM 13  and there's no settlement between the defendants and those

10:51:11AM 14  particular clients.  But the remedy, the remedy is, you don't

10:51:16AM 15  like the settlement that's on offer, you litigate your case

10:51:20AM 16  and try to do better in court.  Try and convince the judge

10:51:24AM 17  that you have a legal case that can survive preemption under

10:51:32AM 18  Fosamax, try to convince a jury if your case survives summary

10:51:39AM 19  judgment that you're entitled to more money than what the

10:51:41AM 20  defendant is offering.  You don't believe the label change is

10:51:44AM 21  significant?  You're not bound by the settlement's allocation

10:51:48AM 22  of a lesser amount to those individuals.  Go convince a jury

10:51:54AM 23  that that label change is meaningless.  Go convince the

10:52:02AM 24  courts that there's not a learned-intermediary defense

10:52:07AM 25  because of the information that was disclosed to the

10:52:11AM   1   physician.   That's the remedy.

10:52:13AM   2        And there are two branchs of legal authority that say

10:52:18AM   3   there is no other remedy.   It is not a remedy for Your Honor

10:52:25AM   4   to review and blow up the settlement on behalf of the almost

10:52:31AM   5   29,000 plaintiffs who have accepted it.   And there are two

10:52:39AM   6   branchs of legal authority.   One, which focuses on the

10:52:44AM   7   jurisdiction of the court, the authority and power of the

10:52:50AM   8   court to review a settlement that has been entered into by

10:52:55AM   9   private litigants, and the second branch deals with whether a

10:53:01AM   10   nonparty to the settlement focuses on the party who's making

10:53:06AM   11   the challenge rather than on the court and whether they have

10:53:10AM   12   legal standing to object to a state -- a settlement that they

10:53:15AM   13   have elected not to be party to and which they are not bound

10:53:20AM   14   by.

10:53:22AM   15        So let me start first with the first branch.   What is

10:53:26AM   16   the power of the court?   And I will start first with Rule 41

10:53:32AM   17   of the Federal Rules of Civil Procedure and 40 --

10:53:41AM   18   Rule 41(a)(1)(A)(2) provides that an action will be dismissed

10:53:50AM   19   without a court order upon presentation of a stipulation of

10:53:58AM   20   dismissal that has been signed by all parties.   There is no

10:54:04AM   21   role for the court in preventing the termination of a lawsuit

10:54:09AM   22   when it is stipulated to by all parties.   And if things go as

10:54:16AM   23   planned, sometime in January, Your Honor is likely or

10:54:25AM   24   slightly afterwards Your Honor will be or the court clerk

10:54:30AM   25   will be presented with twenty-some thousand stipulated

10:54:37AM  1  dismissals.  Federal Rule 41 does not provide for a role of

10:54:45AM  2  the court.  You can't force parties to litigate against their

10:54:52AM  3  will when they've resolved their action.

10:54:56AM  4       And both the Supreme Court and the Fifth Circuit have

10:55:01AM  5  made this very point.  Here's the United States Supreme

10:55:06AM  6  Court.  Because the arguments so far for Mr. Love had been

10:55:11AM  7  short on any legal authority or precedent.

10:55:16AM  8       United States Supreme Court Frank -- I'm sure I'm

10:55:22AM  9  pronouncing it wrong, but it's spelled G-a-o-s, I'm going to

10:55:27AM  10  say Gaos, but G-a-o-s, 139 Supreme Court Reporter and at

10:55:34AM  11  page 1046.  It says:  In ordinary nonclass litigation,

10:55:41AM  12  parties are free to settle their disputes on the -- on their

10:55:46AM  13  own terms and plaintiffs may voluntarily dismiss on their

10:55:52AM  14  claims without a court order.  That's the United States

10:55:59AM  15  Supreme Court.

10:56:03AM  16       Now, we have the Fifth Circuit.  *United States versus*

10:56:10AM  17  *City of Miami*, 614 F.2d at page 1330.  And what the Fifth

10:56:21AM  18  Circuit says is that in what can be termed ordinary

10:56:29AM  19  litigation -- that is, lawsuits brought by one private party

10:56:34AM  20  against another private party that will not affect the rights

10:56:38AM  21  of other persons, settlement of the dispute is solely in the

10:56:42AM  22  hands of the parties.  If the parties can agree to terms,

10:56:48AM  23  they're free to settle the litigation at any time and the

10:56:51AM  24  court need not and should not get involved.  Moreover,

10:56:58AM  25  procedurally, it would seem to be impossible for the judge to

10:57:03AM  1    be involved in overseeing a settlement because the parties

10:57:07AM  2    are free at any time to a -- to agree to a resolution of the

10:57:12AM  3    dispute by private contractual agreement and to dismiss the

10:57:18AM  4    lawsuit by this stipulation.  In this situation then, the

10:57:23AM  5    trial work plays no role in overseeing or approving any

10:57:32AM  6    settlement proposals.

10:57:33AM  7         That is what we -- where we are, absent the statute

10:57:37AM  8    or rule, private parties can settle on the terms that they

10:57:42AM  9    feel are fair and just.  To be sure, if a party who is

10:57:49AM  10   offered a settlement doesn't feel that the terms are fair and

10:57:55AM  11   just, they can reject the settlement.  What does Mr. Love say

10:57:59AM  12   in response?  He says, well, please certify -- convert this

10:58:08AM  13   settlement that was entered into between the defendants and

10:58:11AM  14   each of the 29,000 plaintiffs who has accepted it into a

10:58:18AM  15   settlement class.

10:58:23AM  16        There are multiple, multiple, multiple legal problems

10:58:29AM  17   with their attempt to do so at this late date.  First of all,

10:58:34AM  18   procedural difficulties.  There's no class action complaint,

10:58:39AM  19   not even by the Love plaintiffs.  There's no motion for class

10:58:46AM  20   certification, even by the Love plaintiffs.  To the extent

10:58:53AM  21   that their objection could be construed as a motion for class

10:59:01AM  22   certification, procedurally, it's untimely because under

10:59:06AM  23   Rule 23(c)(1), a motion for class certification has to be

10:59:09AM  24   made at an early practical time, not at the end of the case.

10:59:19AM  25   Procedurally and substantively, the objection, if construed

|   |   |   |
|---|---|---|
| 10:59:23AM | 1 | as a motion, fails to address any of the requirements of |
| 10:59:28AM | 2 | Rule 23(a) or Rule 23(b).  There's nothing about numerosity |
| 10:59:35AM | 3 | to focality, accuracy of representation, common questions of |
| 10:59:40AM | 4 | law or fact, nothing about the Rule 23(b)(3)(B) requirements |
| 10:59:47AM | 5 | of dominance or superiority.  The plaintiff has a burden of |
| 10:59:52AM | 6 | proof on class certification.  They don't any attempt to meet |
| 10:59:57AM | 7 | it in any way, probably for good reason because as Your Honor |
| 11:00:04AM | 8 | noted, the Fifth Circuit, and not just the Fifth Circuit, but |
| 11:00:07AM | 9 | the US Supreme Court and virtually every other circuit, has |
| 11:00:12AM | 10 | said that you can't get a class action certified in a |
| 11:00:20AM | 11 | personal injury case for settlement purposes or otherwise. |
| 11:00:25AM | 12 | And, Your Honor, we've cited in our brief the *Castano* |
| 11:00:34AM | 13 | case, the *Exxon Mobile* case, the *Amchem* case involving |
| 11:00:38AM | 14 | asbestos which is in the US Supreme Court and *In Re:* |
| 11:00:45AM | 15 | *American Medical Systems* in the Sixth Circuit, which I think |
| 11:00:50AM | 16 | summarizes the state of the law where they say there is a |
| 11:00:54AM | 17 | national trend to deny class certification in drug or medical |
| 11:00:58AM | 18 | products, product liability, personal injury cases. |
| 11:01:06AM | 19 | So whether for litigation purposes or settlement |
| 11:01:11AM | 20 | purposes, you can't get a class in this case.  Mr. Love |
| 11:01:19AM | 21 | referenced in a Chinese drywall, but as we all know, Chinese |
| 11:01:28AM | 22 | drywall is a property damage case, not a personal injury |
| 11:01:32AM | 23 | case.  And at page -- footnote 4, page 6, of our brief we |
| 11:01:36AM | 24 | cite the cases including several by Your Honor, which |
| 11:01:40AM | 25 | distinguish the personal injury and property damage |

11:01:43AM  1    situation.

11:01:44AM  2         Mr. Love says, well, I'm only asking for a settlement

11:01:53AM  3    class.  And that suffers from two infirmities, the first is

11:02:02AM  4    that as US Supreme Court said in *Amchem* you still have to

11:02:09AM  5    meet the requirements of Rule 23(a) and Rule 23(b)(3).  To

11:02:15AM  6    some extent, you don't have to consider manageability because

11:02:18AM  7    you're not going to try the case if it's a settlement class,

11:02:21AM  8    but all the other requirements have to be met and all the

11:02:25AM  9    appellate case law is it's not satisfied.

11:02:27AM  10        But the second more fundamental problem is that a

11:02:32AM  11   settlement class is submitted to Your Honor when the parties

11:02:38AM  12   have agreed to a settlement.  And then Your Honor gets to

11:02:44AM  13   approve or disapprove it.  Your -- a settlement class cannot

11:02:52AM  14   be imposed upon the parties for the purpose of resolving a

11:02:59AM  15   claim between pardons like Mr. Love's clients and the

11:03:04AM  16   defendants where no settlement exists.  That's not how

11:03:08AM  17   settlement classes work.  If -- if there is a certified class

11:03:12AM  18   action and it's presented to Your Honor, you get to approve

11:03:18AM  19   it or not.  But if there is no class action, you just don't

11:03:22AM  20   convert private settlements into class actions.  There's no

11:03:27AM  21   authority for that.  Mr. Love cites no authority for that.

11:03:31AM  22   He says, oh, it's done.  He's not going to find you any case

11:03:35AM  23   where that's ever been done.  That's not what happened in

11:03:38AM  24   Vioxx.

11:03:39AM  25        So the bottom line is, these are individual actions.

11:03:45AM  1    There's no class.  Never been a class and under binding legal

11:03:53AM  2    precedent never will be a class.  And so we revert to the

11:03:57AM  3    normal rule, that Rule 41 and under Supreme Court authority

11:04:01AM  4    and under Fifth Circuit authority, the parties are free to

11:04:04AM  5    settle their cases under their own terms.  And the court does

11:04:07AM  6    not have a role in approving or disapproving or changing the

11:04:14AM  7    settlement.

11:04:18AM  8         Then we get to the second branch, the legal branch

11:04:22AM  9    here, which is whether these particular plaintiffs have

11:04:29AM  10   standing to challenge the settlement, because after all,

11:04:35AM  11   they've rejected it.  They're under -- the settlement imposes

11:04:41AM  12   no obligations upon them.  And the Fifth Circuit has

11:04:49AM  13   addressed this question three times at least, two of the

11:04:55AM  14   cases involve class actions where the court actually has a

11:05:01AM  15   role in approving the settlement, and even when the court has

11:05:05AM  16   a role in approving or disapproving the settlement as in a

11:05:09AM  17   class action, if you opt out and you're not a party to it,

11:05:13AM  18   you have no standing to object.  That's the *In Re:  Beef*

11:05:19AM  19   case, 607 F.2d 172, and the *Trans Am* case 952 F.2d 900, both

11:05:29AM  20   Fifth Circuit cases, both binding precedent.

11:05:36AM  21        It follows I think like night after day that if you

11:05:44AM  22   don't have a class action and the court doesn't have a role

11:05:47AM  23   in approving or disapproving the settlement, if you're not a

11:05:51AM  24   party to it, you don't have standing and that's the Vioxx

11:05:54AM  25   case.  And I think it's interesting that Mr. Love holds out

| | | |
|---|---|---|
| 11:05:59AM | 1 | Vioxx as the model, but when push came to shove, the Fifth |
| 11:06:04AM | 2 | Circuit said in Vioxx, 388 federal appendix at 393, that if |
| 11:06:12AM | 3 | you're not a party to the settlement, you don't have standing |
| 11:06:16AM | 4 | to complain about it.  You're not bound by it.  Do your own |
| 11:06:20AM | 5 | thing. |
| 11:06:20AM | 6 | So Mr. Love comes back and says, but I'm -- it's |
| 11:06:30AM | 7 | different because I am prejudiced somehow.  And I'd say |
| 11:06:38AM | 8 | that's nonsense, and I'd like to address to the court why |
| 11:06:42AM | 9 | it's nonsense.  The first thing -- and I say it's pretty |
| 11:06:53AM | 10 | clear this is the motivating factor behind the challenge to |
| 11:06:57AM | 11 | the settlement is the provision in Section 3.8 which provides |
| 11:07:03AM | 12 | that there is a substantial reduction in the settlement |
| 11:07:08AM | 13 | amount for cases that were -- where either the person was |
| 11:07:13AM | 14 | prescribed or injured after the label was changed |
| 11:07:18AM | 15 | significantly. |
| 11:07:19AM | 16 | There's no legal prejudice there.  The Vioxx court |
| 11:07:31AM | 17 | and the Trans Am court in the Fifth Circuit, they distinguish |
| 11:07:37AM | 18 | between legal, actual legal prejudice, and strategic or |
| 11:07:44AM | 19 | practical disadvantage.  You're at a -- I'll agree.  When |
| 11:07:50AM | 20 | there's 29,000 cases and 28,700 settle, the 300 cases that |
| 11:08:00AM | 21 | remain are at a practical disadvantage in comparison to when |
| 11:08:05AM | 22 | they were with 29,000 cases.  But that's not legal prejudice. |
| 11:08:11AM | 23 | That's not the type of prejudice that the Vioxx and Trans Am |
| 11:08:18AM | 24 | cases -- they're -- both those cases mentioned as an example |
| 11:08:22AM | 25 | a settlement which cuts off a party's rights to contribution |

11:08:27AM 1    or indemnity.  That's not what's happened here.  We're not

11:08:30AM 2    cutting off the plaintiffs' rights to seek more money for

11:08:36AM 3    cases where the plaintiff took the drug after the label

11:08:40AM 4    change.  Nobody's cutting off their rights to seek that.  May

11:08:45AM 5    be more difficult for them because they don't have power in

11:08:50AM 6    numbers, but there's no legal prejudice there.

11:08:58AM 7         And I do want to say that there's nothing wrong or

11:09:03AM 8    untoward with the defendant asking for a substantial

11:09:07AM 9    reduction in the price for claims that arose after the label

11:09:16AM 10   change.  The defendants have an interest in making sure that

11:09:21AM 11   those who have the strongest claims participate.  Defendants

11:09:28AM 12   don't want money thrown after claims that have little or no

11:09:34AM 13   value so that there's not enough money left over for these

11:09:40AM 14   series of claims.

11:09:42AM 15        The defendants are only interested in settling with

11:09:48AM 16   plaintiffs' counsel who share their view that the world has

11:09:52AM 17   changed as a result of the label change.  Mr. Love and his

11:09:58AM 18   colleagues, they don't have to agree with it.  But that's

11:10:03AM 19   who they want to settle with.  If you don't agree with it

11:10:10AM 20   don't settle with us.  That's what they've done.  That's not

11:10:14AM 21   legal prejudice.

11:10:15AM 22        The second I take general area of prejudice that

11:10:20AM 23   they're asserting is that the PSC isn't going to do the work

11:10:22AM 24   for them anymore.  That's not legal prejudice.  They're all

11:10:28AM 25   counsel.  They filed the case.  They have to be prepared to

```
11:10:31AM   1    litigate it.  They don't have a right to have Mr. Birchfield
11:10:37AM   2    or Mr. Barr or Mr. Davis or Mr. Meunier do the work for them.
11:10:43AM   3    They don't have a right to have Fred Munder, is he still in
11:10:50AM   4    the courtroom, argue their motions.  They have access to all
11:10:57AM   5    of the briefing.  They can use that to help them design their
11:11:02AM   6    own oppositions to motion.  They have access to the trial
11:11:06AM   7    transcripts.  They have access to the expert reports.  They
11:11:12AM   8    have access to the depositions that were taken.  There's
11:11:17AM   9    been, you know, an enormous amount of work that they're
11:11:21AM  10    getting, but they don't have the right to have other lawyers
11:11:25AM  11    do it for them.  That's not legal prejudice.
11:11:29AM  12         And most of the provisions they are complaining about
11:11:34AM  13    result from a misreading of the settlement agreement.  The
11:11:40AM  14    settlement agreement says the PSC is not going to weigh in on
11:11:47AM  15    disputed motions anymore.  Well, they don't have any clients.
11:11:52AM  16    Of course they're not going to weigh in on disputed motions.
11:11:56AM  17    The PSC is not going to hire their experts.  Well, the PSC
11:12:01AM  18    has no clients.  Of course they're not going to hire the
11:12:05AM  19    experts.  But the agreement doesn't prevent the plaintiffs
11:12:07AM  20    from opposing the motions.  It doesn't prevent them from
11:12:12AM  21    hiring the experts.  Just the PSC is not going to do it for
11:12:16AM  22    them.  That's not legal prejudice.
11:12:18AM  23         And the third, you know -- the third group of
11:12:23AM  24    complaints have to do with Section 10, which is wrong --
11:12:37AM  25    their concerns are wrong on two levels.  You know, at the
```

11:12:40AM  **1**  most basic level, is they're not parties to the agreement.

11:12:46AM  **2**  They're not bound by any of those provisions.  Therefore,

11:12:52AM  **3**  those provisions, they don't have standing to object to them.

11:12:58AM  **4**  They're lawyers who brought the case -- any of Mr. Love's

11:13:02AM  **5**  clients lawyers who brought the case are available to

11:13:06AM  **6**  litigate the case.  If he wasn't prepared to litigate the

11:13:09AM  **7**  case, he shouldn't have brought it.

11:13:13AM  **8**         Factually, however, I'll just point out as Mr.

11:13:20AM  **9**  Birchfield said, every single one of those provisions have

11:13:25AM  **10**  caveats and safe harbors to them that in the generalization

11:13:34AM  **11**  of the description of the provision was lost when Mr. Love

11:13:38AM  **12**  described it.

11:13:40AM  **13**         So, for example, on whether or not lawyers are going

11:13:48AM  **14**  to recommend the settlement, first of all, I can't think of a

11:13:53AM  **15**  single settlement I've ever entered into where the plaintiff

11:13:59AM  **16**  is trying to disgorge money from my client, probably more

11:14:05AM  **17**  money than my client wants to pay, and I don't say, I'll go

11:14:14AM  **18**  back and see if I can get that amount from my client, but I'm

11:14:18AM  **19**  not going to do it unless I know you're going to recommend it

11:14:21AM  **20**  to your client.  That happens at every settlement that anyone

11:14:26AM  **21**  ever enters into.  And I imagine Mr. Love has -- it's

11:14:32AM  **22**  happened in settlements that Mr. Love has negotiated as well.

11:14:38AM  **23**  If not, he would be one of the very few lawyers who didn't.

11:14:41AM  **24**         But the provision, Section 10.3 says:  The obligation

11:14:48AM  **25**  is subject to the exercise of counsel's independent

11:14:57AM   1    professional judgment as to the circumstances of the

11:15:00AM   2    individual clients and that the plaintiffs counsel use best

11:15:04AM   3    efforts.  It's not as absolute as it has been characterized.

11:15:16AM   4         Similarly in the provision that Your Honor asked

11:15:23AM   5    for -- about, which is the withdraw provision, it says --

11:15:29AM   6    three safe harbors really.  One is not intended to restrict

11:15:33AM   7    the practice of law; two, the withdrawal is only -- can only

11:15:38AM   8    be sought if consistent with ethical principles; third, court

11:15:48AM   9    approval must be obtained.  Your Honor -- Your Honor, if

11:15:52AM   10   there is a motion to withdraw, Your Honor is not going to

11:15:55AM   11   grant it if it couldn't be done ethically.  And you can't

11:16:04AM   12   force lawyers who -- many of whom have lost contact with

11:16:11AM   13   their clients to continue in the case.  So you've got to --

11:16:16AM   14   you've got to read the actual provisions and this very issue

11:16:23AM   15   was litigated again in the Vioxx case.  I'll give you the

11:16:42AM   16   cite, *Faxon v. Merck* where I would say the counterpart in

11:16:45AM   17   that case to Mr. Love brought an independent action

11:16:48AM   18   challenging some of the provisions.  I think in that case it

11:16:53AM   19   was the requirement to -- to recommend the settlement to all

11:16:59AM   20   clients subject to -- if it could be ethically done and the

11:17:05AM   21   judge in the case dismissed that.  You're not a party to the

11:17:08AM   22   settlement.  You have a difficult choice to make in terms of

11:17:13AM   23   whether or not to recommend that settlement to your clients,

11:17:21AM   24   but lawyers make difficult decisions.  There's no case or

11:17:27AM   25   controversy to resolve.  If you don't feel like you can

11:17:30AM 1    recommend these provisions to your client, you don't do so

11:17:34AM 2    and that's as I said *Faxon v. Merck*, 2007 WL 4554190.

11:17:48AM 3        I think I heard -- I know I'm going -- I do want to

11:17:53AM 4    make sure I hit all of Mr. Love's points.  Mr. Love says

11:17:59AM 5    maybe there's prejudice because those who remain in

11:18:05AM 6    litigation have to comply with case management orders.  It's

11:18:09AM 7    a bit -- I don't think that argument got any traction with

11:18:16AM 8    Your Honor, but, obviously, if you're going to litigate your

11:18:19AM 9    case you have to litigate your case.  These kind of courts

11:18:23AM 10   are routine in MDL.  They've been upheld in Vioxx and on

11:18:29AM 11   multiple occasions by the Fifth Circuit.  The case law

11:18:32AM 12   supporting that is at pages 11 and 12 of our brief.

11:18:38AM 13       And I might say, we haven't heard anything about

11:18:41AM 14   Mr. Love about what's wrong with the orders, how -- how are

11:18:46AM 15   they harmful.  There's nothing wrong with you have to

11:18:49AM 16   preserve your medical records.  You have to produce your

11:18:52AM 17   medical records.  You have to fill out a fact sheet.  You

11:18:54AM 18   have to agree to appear for a deposition.  You have to get an

11:18:59AM 19   expert report.  This is what you do if you want to litigate a

11:19:02AM 20   case.

11:19:03AM 21       And I think the last thing that Mr. Love asked for is

11:19:10AM 22   appointment of a second PSC.  That is, of course, within Your

11:19:17AM 23   Honor's discretion to do or not do.  We would just say that

11:19:22AM 24   at this point it's like, maybe eight lawyers left, you can

11:19:28AM 25   see them all in the courtroom, it seems like it would

| | | |
|---|---|---|
| 11:19:31AM | 1 | complicate things rather than help things to have a PSC. |
| 11:19:35AM | 2 | There's no reason why there can't be informal coordination |
| 11:19:44AM | 3 | among the lawyers that are in this courtroom.  We've |
| 11:19:48AM | 4 | basically completed, not basically, we have completed generic |
| 11:19:52AM | 5 | discovery as Mr. Birchfield said, over 80 depositions of |
| 11:19:56AM | 6 | company witnesses, every theory known to man has been |
| 11:20:01AM | 7 | litigated.  What's left is case-specific discovery and that's |
| 11:20:06AM | 8 | the responsibility of the individual lawyer. |
| 11:20:08AM | 9 | And so let me just end the presentation on a personal |
| 11:20:12AM | 10 | note.  And that is litigation began in December of 2014.  You |
| 11:20:28AM | 11 | know, the parties have been at it fighting tooth and nail for |
| 11:20:35AM | 12 | over four years.  Your Honor's lived through it all of the |
| 11:20:42AM | 13 | wrangling of the discovery, all of the taking of discovery, |
| 11:20:48AM | 14 | we've been through the six bellwether trials.  Your Honor |
| 11:20:53AM | 15 | presided over three, two here in New Orleans, one as you said |
| 11:20:56AM | 16 | in Jackson, Mississippi.  The other three were in state court |
| 11:21:00AM | 17 | in Philadelphia.  They happen to all be defense judgments. |
| 11:21:08AM | 18 | And, you know, that influences, you know, what can be |
| 11:21:14AM | 19 | obtained in settlement.  Those trials are not for naught. |
| 11:21:21AM | 20 | You know, there are other litigations where that does -- |
| 11:21:28AM | 21 | where the plaintiffs are successful.  Plaintiffs have more |
| 11:21:33AM | 22 | bargaining position in those circumstances, in litigations |
| 11:21:36AM | 23 | where defendants are more successful, the defendants have |
| 11:21:40AM | 24 | more bargaining position.  But that's -- that's litigation. |
| 11:21:45AM | 25 | We were working up 1,200 plaintiff cases |

11:21:53AM  1    simultaneously at the time the settlement was reached, and

11:21:59AM  2    you know, we reached an agreement on March 25th.  So this is

11:22:08AM  3    worth saying for context.  On March 25th, when we reached the

11:22:14AM  4    settlement, Mr. Love didn't have a single case on file.  In

11:22:21AM  5    other words, none of the 15 plaintiffs who were before Your

11:22:27AM  6    Honor now even had a case at the time we settled.  And there

11:22:38AM  7    was in a negotiation, frankly, some discussion about whether

11:22:45AM  8    we should even make it available to later filed cases.  This

11:22:52AM  9    was something that was pushed hard for by the Plaintiffs'

11:22:59AM 10    Steering Committee, and it was through the efforts of the PSC

11:23:03AM 11    and Mr. Birchfield and the other members of the PSC that this

11:23:09AM 12    settlement was opened up to plaintiffs who filed cases

11:23:14AM 13    through April 4th.  It almost seems like no good deed goes

11:23:20AM 14    unpunished because the efforts of the PSC is what provided

11:23:24AM 15    Mr. Love with its the clients, the opportunity to consider

11:23:26AM 16    the settlement and participate in it if they wanted to.

11:23:31AM 17         They've elected not to.  That's their right.  I don't

11:23:36AM 18    think it was their right to sit on, you know -- to let the

11:23:42AM 19    deadline pass, have 29,000 people enroll and now try and

11:23:47AM 20    spoil it for the 29,000 who want to proceed.  The court

11:23:52AM 21    really doesn't have power or jurisdiction to intercede and

11:23:58AM 22    Mr. Love's clients don't have standing to make the challenge.

11:24:04AM 23         THE COURT:  Let's take a 10-minute break at this

11:24:06AM 24    time, and I'll give you a chance to respond because you

11:24:08AM 25    haven't had a chance yet.  Court will stand in recess.

11:24:12AM  1          (Recess taken.)

11:29:50AM  2          THE COURT:  Mike, you want to respond?  This is the

11:29:54AM  3  first time that you've heard that response.  Both of you all,

11:29:57AM  4  I understand the issues now, so -- but I'll let you respond.

11:30:01AM  5          MR. LOVE:  Thank you, Your Honor.  Let me grab my

11:30:04AM  6  water.

11:30:05AM  7          THE COURT:  Okay.

11:30:06AM  8          MR. LOVE:  I'm battling something.  I don't know what

11:30:10AM  9  it is, which really bothers me because my primary legal

11:30:14AM 10  talent usually my voice so I'm at a disadvantage today.

11:30:17AM 11          THE COURT:  You're doing fine.

11:30:21AM 12          MR. LOVE:  Judge, defense counsel actually kind of

11:30:25AM 13  covered some things that were outside of what I consider to

11:30:29AM 14  be the motion we're arguing about with regard to the CMO

11:30:33AM 15  orders and things like that.  And we do have some concerns,

11:30:38AM 16  me and the other counsel, but I think the court has expressed

11:30:43AM 17  an attempt not to arbitrarily dismiss people because, if

11:30:47AM 18  they're actively trying to get things done.

11:30:52AM 19          THE COURT:  I have done that throughout the

11:30:54AM 20  litigation.  I try to give them as much opportunity as I can.

11:30:56AM 21  I try to encourage them to do it.  I try to encourage them to

11:30:58AM 22  do.  I try to answer any questions that they have.  So I

11:30:59AM 23  don't willy-nilly dismiss cases.

11:31:02AM 24          MR. LOVE:  I understand that.  And so that's not

11:31:04AM 25  really been a primary focus of -- at all.  I figure we will

11:31:07AM  1    have an opportunity to address that with the court later.
11:31:10AM  2    There are some things that just so you know, heads up, there
11:31:14AM  3    are some things that you wouldn't necessarily know being the
11:31:18AM  4    judge, sign off on it, how this affects that, and we can --
11:31:22AM  5    now that we're kind of on our own, we can kind of address
11:31:26AM  6    that with defense counsel and bring it back to you.

11:31:30AM  7         I think from our standpoint, dealing with that coming
11:31:34AM  8    up, is we felt like the PSC wasn't maybe quite watching out
11:31:38AM  9    for us as much as they otherwise would because they didn't
11:31:42AM 10    have any clients anymore that were not participating.  And so
11:31:45AM 11    that has been something that I know in discussions with a lot
11:31:50AM 12    of other law firms, when trying to decide whether or not they
11:31:53AM 13    were going to accept this even though they didn't like it,
11:31:59AM 14    all those things played into account.

11:32:02AM 15         Where we're at now, we're told it's 99 percent.
11:32:06AM 16    That's the first time we've heard that today.  In fact, I'm
11:32:09AM 17    kind of curious.  I don't know that it matters now, but what
11:32:12AM 18    was it last month, what was it the month before and back in
11:32:15AM 19    August --

11:32:15AM 20         THE COURT:  What I usually have here and he's not
11:32:19AM 21    here at this time because it's not necessary, but they report
11:32:23AM 22    that, periodically.  Every meeting, BrownGreer stands up and
11:32:29AM 23    tells me a little bit about the litigation and what the
11:32:31AM 24    situation is.  So that hasn't been done, but that's what it
11:32:39AM 25    is.  As I understand it, it's 99 percent and there were

11:32:42AM   1   certain requirements.  And it's not unusual in these cases

11:32:45AM   2   for the defendant to say this is our position, we're going

11:32:48AM   3   to -- we'll settle a case provided we have a walkaway if more

11:32:53AM   4   than X don't apply.  And I've seen that in every case

11:32:59AM   5   throughout the country in every case.  That's the way it is.

11:32:59AM   6           MR. LOVE:  Me too.

11:33:04AM   7           THE COURT:  Because they don't want to put that out

11:33:06AM   8   and have five people decide and it doesn't do any good for

11:33:11AM   9   them so that's what they do.

11:33:11AM   10          MR. LOVE:  In preparing to try to respond to the

11:33:15AM   11  court's instruction about, you know, the CMOs and getting

11:33:19AM   12  some scheduling going forward, I tried to coordinate with

11:33:25AM   13  other attorneys and law firms who are representing

11:33:28AM   14  nonparticipating clients, I asked that information from PSC

11:33:32AM   15  and was refused and told that they won't give me that because

11:33:36AM   16  they want to be the only ones talking to firms so they can

11:33:40AM   17  talk them into the settlement.  That does put me at a bit of

11:33:46AM   18  a disadvantage, but I think we're past that bridge right now.

11:33:49AM   19          Yea, let me address a couple of the things right now.

11:33:52AM   20  And I appreciate the court has a good understanding of what

11:33:54AM   21  the issues are.  I feel like I'm being picked on a little

11:34:00AM   22  bit, that my arguments are being mischaracterized by very

11:34:04AM   23  good lawyers.  I'm not saying it's a class action.  I haven't

11:34:08AM   24  said that ever.  In the past, they've done fairness hearings

11:34:11AM   25  and I really anticipated that would have been done here.

| | | |
|---|---|---|
| 11:34:14AM | 1 | THE COURT:  No, that's not accurate.  From the |
| 11:34:16AM | 2 | standpoint -- I do fairness hearings in the class actions |
| 11:34:24AM | 3 | because it's necessary, but I don't do fairness hearings in |
| 11:34:26AM | 4 | every case that comes before me. |
| 11:34:26AM | 5 | MR. LOVE:  Of course. |
| 11:34:28AM | 6 | THE COURT:  And this is an MDL and I don't do |
| 11:34:30AM | 7 | fairness hearings in an MDL.  It's not required.  It's not |
| 11:34:33AM | 8 | even intended. |
| 11:34:37AM | 9 | MR. LOVE:  I was under the impression there was a |
| 11:34:41AM | 10 | fairness hearing in the Vioxx. |
| 11:34:43AM | 11 | THE COURT:  No. |
| 11:34:44AM | 12 | MR. LOVE:  So, Judge, with regard to standing, as |
| 11:34:48AM | 13 | I've said several times, the standing, the parties, when I |
| 11:34:55AM | 14 | say the parties, I mean, the PSC and the defendants, convey |
| 11:35:00AM | 15 | standing to nonparticipating parties to object because of |
| 11:35:04AM | 16 | Section 10. |
| 11:35:05AM | 17 | THE COURT:  No, I got that.  I'm aware of that.  Your |
| 11:35:09AM | 18 | position is that the reason you have standing is they are |
| 11:35:16AM | 19 | going to enter into the settlement provision says something |
| 11:35:22AM | 20 | that you feel will prejudice you in the future. |
| 11:35:25AM | 21 | MR. LOVE:  That's right.  In fact, Section 10, here's |
| 11:35:29AM | 22 | the point that they haven't responded to, Judge.  It doesn't |
| 11:35:32AM | 23 | affect them at all.  The parties to the agreement, Section 10 |
| 11:35:35AM | 24 | has nothing to do with that.  It only affects |
| 11:35:38AM | 25 | nonparticipating clients.  And not 3.8.  3.8, I don't like. |

11:35:43AM  **1**   I think it's unfair.  I think it creates a conflict for the

11:35:47AM  **2**   PSC that the court -- I was hoping would -- would want to

11:35:52AM  **3**   address, and if that's not the case, that's not the case.

11:35:58AM  **4**   But Section 10 actually affects me.  And by the way, all that

11:36:03AM  **5**   argument about even if they're right, it doesn't matter.

11:36:07AM  **6**   Mr. Medley who is joining my motion -- if you'll stand, sir

11:36:13AM  **7**   -- represents two participating clients.  And he -- even with

11:36:16AM  **8**   arguing, he's got standing and he's joining in my motion.

11:36:20AM  **9**        So that's really it.  The other thing I just wanted

11:36:25AM  **10**  to touch on -- I don't want to take up too much of the

11:36:29AM  **11**  court's time -- is -- well, I think -- I think I'll just

11:36:43AM  **12**  leave it there, Judge.

11:36:44AM  **13**       THE COURT:  I appreciate you coming and bringing it

11:36:46AM  **14**  to my attention.  It's meaningful to me.  I read your brief.

11:36:55AM  **15**       MR. LOVE:  I don't know if any of the people had

11:36:57AM  **16**  anything they wanted to say on the record.

11:36:59AM  **17**       THE COURT:  They don't need to.

**18**                          *  *  *  *

**19**            (WHEREUPON, the proceedings were adjourned.)

**20**                          *  *  *  *

**21**

**22**

**23**

**24**

**25**

1                    REPORTER'S CERTIFICATE

2          I, Nichelle N. Drake, RPR, CRR, Official Court
   Reporter, United States District Court, Eastern District of
3  Louisiana, do hereby certify that the foregoing is a true and
   correct transcript, to the best of my ability and
4  understanding, from the record of the proceedings in the
   above-entitled and numbered matter.

5

6                        /s/ Nichelle N. Drake
                         Official Court Reporter
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25