1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF LOUISIANA
2

3  ****************************************************************

4  IN RE: XARELTO (RIVAROXABAN)          MDL NO. 2592

5  PRODUCTS LIABILITY LITIGATION         SECTION "L"

6                                        THURSDAY, FEBRUARY 6, 2020
   *This document relates to:*
7  *Various cases*
   ****************************************************************

8

9        TRANSCRIPT OF STATUS CONFERENCE AND MOTION HEARINGS
            HEARD BEFORE THE HONORABLE ELDON E. FALLON
10                  UNITED STATES DISTRICT JUDGE

11

12  <u>APPEARANCES</u>:

13  FOR PLAINTIFFS'
    LIAISON COUNSEL:              Gerald E. Meunier, Esquire
14                                GAINSBURGH, BENJAMIN, DAVID,
                                     MEUNIER & WARSHAUER
15                                1100 Poydras Street
                                  Suite 2800
16                                New Orleans, Louisiana  70163

17
    FOR PLAINTIFFS'
18  STEERING COMMITTEE:           Andy D. Birchfield, Jr., Esquire
                                  BEASLEY ALLEN
19                                218 Commerce Street
                                  Montgomery, Alabama  36104
20

21  FOR DEFENDANTS'
    LIAISON COUNSEL:              Kim E. Moore, Esquire
22                                IRWIN, FRITCHIE, URQUHART & MOORE
                                  400 Poydras Street
23                                Suite 2700
                                  New Orleans, LA  70130
24

25

                        OFFICIAL TRANSCRIPT

```
 1   APPEARANCES CONTINUED:

 2

 3   FOR JANSSEN DEFENDANTS:        Susan M. Sharko, Esquire
                                    Chanda A. Miller, Esquire
 4                                  DRINKER, BIDDLE & REATH
                                    600 Campus Drive
 5                                  Florham Park, New Jersey  07932

 6

 7   FOR DEFENDANT BAYER LIAISON:   John F. Olinde, Esquire
                                    CHAFFE, McCALL
 8                                  1100 Poydras Street
                                    Suite 2300
 9                                  New Orleans, Louisiana  70163

10

11

12   FOR YVONEE GOSNELL
     AND ANNETTE PRICE:             Timothy M. Farris, Esquire
13                                  TIM FARRIS LAW FIRM
                                    6645 US Highway 98, Suite 3
14                                  Hattiesburg, Mississippi  39402

15

16

17

18

19   Official Court Reporter:      Alexis A. Vice, CCR, RPR, CRR
                                    500 Poydras Street, HB-275
20                                  New Orleans, LA  70130
                                    (504) 589-7777
21                                  Alexis_Vice@laed.uscourts.gov

22

23

24   PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT
     PRODUCED BY COMPUTER.
25
```

OFFICIAL TRANSCRIPT

```
 1                    P-R-O-C-E-E-D-I-N-G-S

 2                 THURSDAY, FEBRUARY 6, 2020

 3           (STATUS CONFERENCE AND MOTION HEARINGS)

 4

 5                 (The Court was called to order.)

 6           THE COURT: Be seated, please.  Good morning, ladies

 7    and gentlemen.  Call the case.

 8           DEPUTY CLERK: MDL No. 2592, In Re Xarelto Products

 9    Liability Litigation.

10           THE COURT: Counsel, make your appearance for the

11    record, please.

12           MR. MEUNIER: Gerry Meunier, co-liaison counsel for

13    plaintiffs.

14           MS. MOORE: Kim Moore, co-liaison counsel for the

15    defense.

16           MR. OLINDE: And Your Honor, John Olinde as liaison

17    for the Bayer defendant.

18           THE COURT: Okay.  We're here today for our monthly

19    status report.  As you all know and the people on the phone

20    should know that we have monthly status conferences, in

21    addition to other matters, but we always have a monthly status

22    conference at which time the parties generally report as to the

23    status of the case.  We'll take up any issues that might be

24    involved with that.

25                 I'll hear from the parties at this time.
```

1          MR. MEUNIER: Good morning, Your Honor, Gerry Meunier

2    for the plaintiffs.  We would like to begin with the Court's

3    permission with a report on the settlement from our lead

4    counsel Mr. Birchfield.

5          THE COURT: Yes.

6          MR. BIRCHFIELD: Good morning, Your Honor.  The

7    settlement program is proceeding in an efficient manner.  We're

8    pleased with the current status.  There are just shy of 29,000

9    claimants that are enrolled in the settlement program.

10         BrownGreer is processing each of those claims.  They

11   will evaluate the claims according to the criteria of the

12   settlement agreement, and then they will issue a preliminary

13   points awards notice advising the claimant and the claimant's

14   counsel of their assessment of the case and how many points

15   that claimant would be entitled to.

16         The claimant and the counsel have an opportunity to

17   review that, to make sure that it is correct.  If there's any

18   issue, they have an opportunity to request reconsideration from

19   BrownGreer.  Once they go through the reconsideration process,

20   if they still disagree, then they have an opportunity to appeal

21   that to the special master.  So there are a number of checks

22   and balances in place to make sure that we get this right on

23   behalf of the claimants.

24         So BrownGreer has currently processed about

25   two-thirds of the total number of claimants for their initial

OFFICIAL TRANSCRIPT

1   points award.  We're on pace to complete this process --
2   currently, we're on pace to be able to pay the claimants by
3   early June is our -- that may slip, but we're pushing for that,
4   and right now we're on pace for that.
5          And the current point value is projected at 80 cents.
6   That too may change slightly.  We don't anticipate a
7   significant change since two-thirds of the claims have been
8   processed.
9          Once the base award is determined, then the payments
10  can be made to the claimants at that time.  We also have an
11  extraordinary circumstances fund that is part of the settlement
12  agreement.  Those are being evaluated, you know, as well now,
13  but those will not be completed until probably toward the end
14  of the summer.  So those awards will follow later.
15         But we're pleased with the way that the process is
16  working.  We have special masters both here and in -- two
17  special masters that are processing these claims, and that
18  process is working well.
19         THE COURT: How about with the state court?  I know
20  Philadelphia has a number and also California did have some.
21         MR. BIRCHFIELD: Yes.  So the cases, the claims that
22  were pending in California, the ones that are pending in
23  Philadelphia, they are all being processed all through
24  BrownGreer all part of the same settlement.  And any claims
25  that elected not -- and there were only a small, small

OFFICIAL TRANSCRIPT

1 percentage.  But any claims that are outside the settlement

2 program are being addressed by those courts.

3         My understanding is that all of the cases in

4 California have been cleared.  They're either in the settlement

5 program, or they have been dismissed.  And I think Judge New is

6 following a similar process as Your Honor in addressing any

7 claims that have not complied with court orders through an

8 order to show cause process.

9         THE COURT: Okay, thank you.

10         MR. BIRCHFIELD: Thank you, Your Honor.

11         THE COURT: Where are the funds, Andy?  Have you

12 gotten the funds?

13         MR. BIRCHFIELD: Yes, Your Honor.  The settlement was

14 finalized, and the defendants have made the deposit in the QSF

15 pursuant to the Court's order.

16         THE COURT: Okay.

17         MR. MEUNIER: Your Honor, before proceeding in the

18 joint report, I do want to give the document reference for what

19 Andy just mentioned which that since the last conference of

20 December 12, 2019 the settlement has been funded.  In

21 accordance with that, on January 6th of 2020, this Court

22 entered a QSF order which is Document 17548 which sets forth

23 the specifics of the bank and the administration

24 responsibilities with regard to the funds.

25         Your Honor, the joint report at pages 2 through 7 set

OFFICIAL TRANSCRIPT

1  forth a series of important case management orders which relate
2  both to the settlement and also to those plaintiffs who are not
3  enrolled in the settlement.  These are CMOs 9 and 9A, 10 and
4  10A, 11 and 11A, 12, 12A, and 12B.  And we want to call
5  particular attention to the deadlines set forth under CMO 11
6  which are specified at pages 3 through 6 of the joint report so
7  that plaintiffs' counsel are certainly conscious about the
8  deadlines that their cases face if they're not enrolled in the
9  settlement.

10        And there will be a hearing following the status
11  conference today dealing with a number of cases where the
12  defendants are addressing the failure to comply with CMO
13  deadlines.

14        In addition, on December 23rd of 2019, the Court
15  entered CMO 8A which is Document 17530 which fixes deadlines
16  for non-settling plaintiffs to submit through MDL Centrality a
17  signed and dated authorization for the release of medical and
18  pharmacy records.

19        And finally, in the category of CMOs, Judge, the
20  defendants submitted to you a proposed CMO 13 which sets forth
21  the process for continuing order to show cause hearings as to
22  plaintiffs who are not in compliance with CMO 11 deadlines, and
23  it also proposes further proceedings in this MDL, including,
24  discovery for those plaintiffs who are going forward with
25  litigation, Your honor, in compliance with the CMO deadlines.

OFFICIAL TRANSCRIPT

1            At the last status conference, we addressed the
2  proposed CMO 13.  Your Honor directed us to put that proposed
3  order on the Court's website and invite any comments or
4  feedback from plaintiffs' counsel.  That was done.  Counsel
5  were invited to give feedback before January 15, 2020.  My
6  understanding is that there has been no comment received or
7  feedback received in response to the posting of that order.
8            THE COURT: Okay.  This is an opt-in agreement that
9  has been reached in the beginning of May.  It was reached with
10 some of the deadlines have -- it took a while to get that
11 program up and working.  Thereafter, we've got to focus on the
12 people who have not opted in, who have decided not to opt in.
13 There's going to be a number of people who have simply lost
14 interest in litigation for various reasons.  Some of which may
15 be that they're doing well and haven't had any problems or
16 whatever it is.  In any event, they have a right to do that.
17 They're not interested in proceeding.  We have to give those
18 individuals an opportunity to get back into the swim of things
19 and move the case.  But if they don't, then we have to dismiss
20 the cases.
21           Then the cases left are those individuals who want to
22 proceed, and we then have to get some case management orders in
23 place so that the Court can finish its responsibility to those
24 individuals for discovery and finish the discovery aspect of
25 the case, and thereafter, make a decision as to whether the

OFFICIAL TRANSCRIPT

1  case can be tried here or the case can be tried or should be
2  tried some other place.
3          But we're not there yet.  We're at the point in
4  deciding who is left and who is interested in proceeding with
5  their case, and then we'll design a program to allow them to
6  proceed.
7          MR. MEUNIER: Judge, I think that concludes, save for
8  the setting of the next conference.  We want to confirm that
9  March 19th is the next status conference, and Your Honor has
10 assigned --
11          THE COURT: Right, March 19th is the next one, and
12 April the 21st is the following one, 9:00 o'clock.  I'll need
13 liaison and lead counsel to discuss the agenda and then proceed
14 with the conference thereafter.
15          MR. MEUNIER: Thank you, Judge.  I think we have the
16 show cause.
17          THE COURT: Anything from the defendants on that side
18 other than the rule to show cause?
19          MS. SHARKO: No, Your Honor.
20          THE COURT: Okay.  Dean, are we ready for rule to show
21 cause?
22          DEPUTY CLERK: Yes.
23          THE COURT: Let's move onto the rule to show cause in
24 this matter.
25          In connection with that, let me just say that the

OFFICIAL TRANSCRIPT

1    Court was assigned this case in December of 2014.  It took us a

2    month or so to organize the case insofar as appointing

3    committees and establishing some initial case management

4    orders, but then we proceeded in rapid pace with the discovery

5    aspect of the case.  The discovery consumed hundreds of

6    depositions, millions of documents, and a lot of motions in

7    between that the Court has handled.

8         Then we began keying up some trials, bellwether

9    trials, so that the parties could get a handle on litigation.

10   It's my view that the transferee judge's responsibility is to

11   give the lawyers an opportunity to discover the case before

12   them.  It's a different type case.  It's not a one plaintiff

13   one defendant case.  In this particular case, we had over

14   30,000 individual claims.  It's hard to get your hands around

15   those claims; but the lawyers, the capacity and ability of the

16   lawyers who handle these cases, it's able to be done.

17        But my job as the transferee judge is to give them an

18   opportunity to really drill down and know the case.  And I'm

19   not talking about one case.  I'm talking about 30,000 cases.

20   And then we proceeded with discovery, with the various

21   bellwether trials.  We coordinated the litigation with my

22   colleagues in state court, primarily, Judge New in

23   Philadelphia.  We proceeded also with some trials.

24        Then in May of 2019, after those trials and after a

25   great deal of discovery, the parties began looking at looking

OFFICIAL TRANSCRIPT

1  for potential global solutions to resolve the entire census of
2  the litigation.  And finally, in May of 2019, we were able to
3  formulate a program, a settlement program.  The program is an
4  opt-in program.  Anyone interested in it can opt in to the
5  program.  If they're not interested, then they do not opt in.
6        The question then is what to do with the people who
7  have not opted in.  A large percentage of this census of the
8  litigation has opted in, some 99 percent, whatever it is, of
9  the census; but there are a number of claims that haven't opted
10 in.  Those claims are about maybe 50 or so that have not opted
11 in.
12        But a large number of those individuals, either for
13 various reasons, are not interested in opting in.  And they're
14 the master of their complaint, and they're the master of their
15 case.  They can do so.  But if they haven't opted in to the
16 litigation, then we have to deal with this non-opted-in census
17 to organize that aspect of the case.  And those individuals,
18 and after if they have not opted in and they wish to proceed,
19 have to abide by some rules so that we can get a handle on
20 those cases.  And that's where we are now.
21        I've prepared a number of CMOs in October and
22 November, and primarily, CMO 8, 11, 9, which requires them to
23 fill out certain forms, to instruct the medical facilities to
24 keep their records, to obtain some records or allow records to
25 be obtained, and they have to do that by a certain time frame.

OFFICIAL TRANSCRIPT

1  If they don't, I try to encourage them to do so and give them
2  another 30 days or whatever it is.
3         But we get to the point where many of them have not
4  done anything, and so we then set rules to show cause why those
5  cases should not be dismissed.  And that's where we are today.
6  So I'll hear from Defense.
7         MS. MILLER: Thank you, Your Honor.  Chandra Miller on
8  behalf of the Janssen defendants.  I'll be speaking for all of
9  the defendants.
10        We're here this morning on three orders to show
11 cause, Rec Doc 17557, 17558, and 17559.  There were originally
12 95 total cases in those three orders, and we're here today to
13 present a motion to dismiss on 45 of those cases.  And I can go
14 through them.
15        Before I start, I just wanted to make a few remarks
16 that are applicable to all of the cases that we're seeking
17 dismissal for today.  As Your Honor noted, it is for failure to
18 comply with this Court's case management orders, specifically
19 for these cases, Case Management Order 11 which was entered by
20 the Court in March of 2019.
21        All of the plaintiffs who are before the Court today
22 elected not to participate in the settlement program, and all
23 of the plaintiffs who are before the Court today, each one
24 individually signed a notice of intent to proceed that
25 acknowledged that CMO 11 and the Court's other orders set forth

OFFICIAL TRANSCRIPT

1  various obligations and deadlines that they had to comply with.
2  And they signed the forms acknowledging that those orders were
3  in place and that they would be complying with them in a timely
4  manner.

5        Each of the plaintiffs who are before the Court today
6  received notices from the defendants when their deadlines came
7  and went without submitting the required documents.  And for
8  each of the plaintiffs before the Court today, they had more
9  than 30 days notice before defendants filed a motion seeking an
10 order to show cause.  So at this point, the defendants believe
11 they've had ample notice and opportunity to comply with the
12 Court's orders.

13       The first order, Rec Doc 17557, there were originally
14 29 cases listed in the Court's order.  One case at Line No. 28,
15 the Kathryn Rizor case has since been dismissed with prejudice.
16 The case at Line No. 23 is not going to be presented for
17 dismissal today, but the remaining 27 cases, defendants would
18 seek dismissal with prejudice.

19       It might help, Your Honor, if I could call them by
20 firm.  The Leonard Gabbay firm has 15 cases listed on the
21 order.  They were in Lines 1 through 15 of the order.  The
22 plaintiffs in these cases have not filed or served any of the
23 documents required by CMO 11.  They did not submit a Plaintiff
24 Profile and Consent Form, Short Form Plaintiff Fact Sheet,
25 medical records indicating proof of use, medical records

OFFICIAL TRANSCRIPT

1  indicating proof of injury, and they did not submit

2  Preservation Notice Statements.  Those are the reasons why we

3  filed the motion, subsequently filed the motion.  All of the

4  CMO 11 deadlines have passed, and we haven't received any of

5  the required documents from these 15 plaintiffs.  Defendants

6  would, therefore, seek dismissal of their cases with prejudice.

7          THE COURT: Anyone on the line for these particular --

8          DEPUTY CLERK: Judge, nobody is on the phone.

9          THE COURT: Okay, nobody is on the phone.

10         Anyone in court?  Hearing none, I'll dismiss those 15

11  with prejudice.  Dismiss those individual claims 1 through 15

12  with prejudice.

13         MS. MILLER: Thank you, Your Honor.

14         The next cases are in Lines 16 through 22 of the

15  order.  They are all cases that were filed by the MacArthur,

16  Heder & Metler firm.  These plaintiffs have also failed to

17  provide any of the documents required by CMO 11.  At this point

18  in time, defendants do not have the Short Form Plaintiff Fact

19  Sheet, the Plaintiff Profile and Consent Form, anything to

20  prove use of Xarelto, and anything to prove any bleeding that

21  was caused by Xarelto.  We would ask that the cases be

22  dismissed with prejudice in Lines 16 through 22.

23         THE COURT: Anyone in the courtroom for those

24  individual claims?  We've set this notice and sent it to

25  everyone and put it on the Court's website.  They had an

OFFICIAL TRANSCRIPT

1 opportunity not only to be in court, but also to call in court

2 if they had some issue with transportation.  No one is here.

3         I'll dismiss those cases with prejudice.

4         MS. MILLER: Thank you, Your Honor.

5         The next two cases are in Lines 24 and 25 of the

6 order.  They were cases filed by the Martinez & McGuire firm.

7 Similar to other plaintiffs, we have not received the required

8 documents, including, the documents that would prove use of

9 Xarelto and injuries caused by Xarelto.

10         We did have the opportunity to meet and confer with

11 the Martinez & McGuire firm on the cases listed in Lines 24

12 through 25, and they advised that despite their best efforts

13 and attempts to contact their clients they have been unable to

14 obtain their clients' cooperation and cannot bring them into

15 compliance with CMO 11.

16         THE COURT: In these matters, there's a requirement

17 and a duty to certainly keep in touch with the client, but

18 there is also a duty on the client's part to keep in touch with

19 the lawyer.  And if the client moves, the client really should

20 let the lawyer know that he moved, how he can get in touch with

21 him if he needs him.  He can't just forget the lawyer and not

22 tell him where you're going or where you're going to live or

23 respond to his request.

24         I'm sure that this firm has done everything possible,

25 but their clients haven't wished to proceed.  They have a right

1   to do that.  So I'll dismiss them with prejudice.

2           MS. MILLER: Thank you, Your Honor.  That was the

3   cases at Lines 24 and 25.

4           The last three cases on Rec Doc 17557 were all filed

5   by the law firm Mike Love & Associates.  Those are the

6   plaintiffs appearing in Lines 26, 27, and 29.  Similar to the

7   other plaintiffs we've already presented, these plaintiffs did

8   not submit the Short Form Plaintiff Fact Sheet, the Plaintiff

9   Profile and Consent Form, or records demonstrating that they

10  used Xarelto or had any bleeding events that were allegedly

11  caused by Xarelto.  We would ask that these three cases in

12  Lines 26, 27, and 29 be dismissed with prejudice.

13          THE COURT: I received an objection that applied to

14  the Mike Love & Associates requesting that the cases be

15  dismissed without prejudice.  In these particular cases, an end

16  has to be brought about.  The case has been now pending before

17  this Court since 2014.  A lot has been done, a lot of expense,

18  a lot of work has been performed in the cases.  It's not fair

19  to simply dismiss them without prejudice and let them continue

20  on and on and on.

21          We've given them enough time to answer.  We've given

22  them enough time to follow the rules.  We've given them enough

23  time to make any objection if they have any objection at the

24  hearing.  I'll dismiss them without prejudice.

25          MS. MILLER: Thank you, Your Honor.  That concludes

OFFICIAL TRANSCRIPT

1  the cases listed in Rec Doc 17557.

2          Moving on to Rec Doc 17558, there were originally 53

3  cases listed in this order.  42 of the cases will not be

4  presented for dismissal today.  If Your Honor would like, I

5  could read those into the record or I could --

6          THE COURT: Sure.

7          MS. MILLER: Okay.  The cases that will not be

8  addressed today are those appearing in Lines 1, 5, 6, 7, 10,

9  11, 12, 13, 14, 16, Lines 20 through 23, Lines 26 through 50,

10  and then Lines 51 through 53.  Those are the cases that will

11  not be presented today for dismissal.

12          THE COURT: Okay.

13          MS. MILLER: The first cases that will be presented

14  for dismissal on Rec Document 17558 are those appearing in

15  Lines 2, 3, 4, 8, and 9.  Those are all cases that were filed

16  by the Martinez & McGuire firm.  With respect to these cases,

17  although the firm attempted to submit some of the documents on

18  behalf of these plaintiffs, they were not able to completely

19  fill out the documents.  And at this point in time, we don't

20  have sufficient medical records to move the cases forward

21  regarding the plaintiffs' medical histories, their proof of

22  use, and proof of any alleged bleeding events caused by

23  Xarelto.

24          And the Martinez & McGuire firm have advised that

25  they have, despite their best efforts, been unable to obtain

OFFICIAL TRANSCRIPT

1  their clients records.  Their clients have not complied, and
2  they can't bring their clients into compliance with CMO 11.

3          THE COURT: You want to just name the ones that you
4  move to dismiss for the McGuire firm?

5          MS. MILLER: Sure, Your Honor.  There's a few more.
6  Those are the cases listed in Lines 2, 3, 4, 8, 9, 15, 17, 18,
7  and 19.

8          THE COURT: Okay.  And what are they by names?

9          MS. MILLER: And those are Byron Black, James
10 Burchard, Donald Castillo, James Franco, James Giles, Nigel
11 Singleton, Floris Townes, Deanna Werner, and Andrew White.

12         And as I mentioned, the Martinez & McGuire firm has
13 confirmed that they have attempted to contact their clients and
14 to obtain the necessary information needed to comply with CMO
15 11 and have been unable to do so.

16         THE COURT: Okay.  Dismiss those with prejudice.

17         MS. MILLER: Thank you, Your Honor.

18         The last two cases on this order are Robbie Preston
19 appearing in Line 24 and Jennifer Troutt appearing in Line 25.
20 Both of these are cases that were filed by Medley Law Group.
21 In both of these cases, the medical records that have been
22 produced do not show use of Xarelto and do not show any alleged
23 bleeding events that could have been caused by Xarelto.  We
24 would ask that these cases be dismissed with prejudice.

25         THE COURT: Let them be dismissed with prejudice.

OFFICIAL TRANSCRIPT

1      MS. MILLER: Thank you, Your Honor.  That completes
2  the cases on Rec Doc 17558.
3      For the cases on 17559, there were originally 13
4  cases listed in the order.  Seven of those cases will not be
5  presented for dismissal today.  Those are the cases in Lines 1
6  which is Amanda Bedard; 2, Loriann Davis; Line 3, George Eitel;
7  Line 4, Tammy Graves; Line 6, Murray Mayor Malkowski; Line 7,
8  Gustena Napier; and Line 8, Johnetta Schoonver.  All of those
9  cases were filed by the Beacon Legal Group, and as I mentioned,
10 we'll not be presenting them for dismissal today.
11     For the six that we are presenting for dismissal
12 today, the first case is appearing at Line 5.  It's the case of
13 Angel Hedgepath filed by the Beacon Legal Group.  Although
14 there were a few forms submitted on this plaintiff's behalf,
15 the forms essentially gave us little more information than the
16 plaintiff's name, address, and date of birth.  We don't have
17 the identity of the doctor who prescribed Xarelto to the
18 plaintiff.  We don't have the identity of the doctors who
19 treated the plaintiff for the alleged bleeding events, and we
20 don't have records related to those events.  And we don't have
21 any information or records regarding the plaintiff's key
22 medical history.  We would ask that that case be dismissed with
23 prejudice.
24     THE COURT: Which one is that?
25     MS. MILLER: That is Line 5, Angel Hedgepath case.

OFFICIAL TRANSCRIPT

1          THE COURT: Yeah, in these matters, oftentimes, at

2    least in the beginning, an individual thinks they took Xarelto,

3    or if they did take Xarelto, they think they've had problems

4    with Xarelto, and they put in a claim.

5          But as time goes on, they either discover that they

6    have not taken Xarelto, or it was another pharmaceutical that

7    they took, or they feel that they haven't had any adverse

8    result from taking it.  And as a result, they're not interested

9    in pursuing the case.  Sometimes people make the decision not

10   to pursue it for other reasons, but that's one of them.

11         In this particular case, they haven't filled out the

12   appropriate forms.  They haven't followed court orders.  We've

13   given them enough notice, given them an opportunity to do so.

14   I have no alternative, but to dismiss the case with prejudice.

15   I'll dismiss it.

16         MS. MILLER: Thank you, Your Honor.

17         The next case to be presented to Your Honor is in

18   Line No. 9.  It's the case of plaintiff Rafic Redwan, and it

19   was filed by the law firm Mike Love & Associates.  This case is

20   before Your Honor today for failure to produce the medical

21   records that the plaintiffs are required to produce regarding

22   their relevant medical history and medical records to prove

23   their failure to warn claims.

24         We gave the plaintiff's firm ample opportunity to

25   produce the necessary records, and they have not complied at

OFFICIAL TRANSCRIPT

1    this time.

2               THE COURT: I'll dismiss that with prejudice.

3               MS. MILLER: Thank you, Your Honor.

4               The next case to be presented is the case in Line 10,

5    the case of David Miller on behalf of the estate of Barbara

6    Miller.  This is a pro se plaintiff.  Defense counsel gave the

7    plaintiff written notice of today's hearing.  I understand that

8    the PSC spoke with the plaintiff and gave him notice of today's

9    hearing as well.

10              We brought this case before Your Honor because the

11   documents that we have received were only partially completed.

12   We don't have records indicating the time of Xarelto use, for

13   treatment from any alleged injuries, records regarding the

14   relevant medical history.  The plaintiff didn't answer all of

15   the questions regarding the alleged bleeding events that were

16   apparently caused by Xarelto.  So at this point in time, we're

17   not even sure what injuries they're alleging were caused by

18   Xarelto.

19              And the plaintiff also indicated that he is the

20   apparent representative of the estate, but didn't provide any

21   indication that he actually has legal authority to proceed with

22   a lawsuit.  And so for those reasons, and it's outlined in our

23   motion, we would ask that the case be dismissed with prejudice.

24              THE COURT: The plaintiffs have contacted the

25   individual about the hearing?


OFFICIAL TRANSCRIPT

1            MR. BIRCHFIELD: Your Honor, we've made a number of

2    attempts for this hearing.  But this case was actually set on

3    the December 12th order to show cause, and Your Honor

4    continued it then.  We had contact with him then.  We have

5    tried to follow up.

6            The case was originally filed by a law firm.  That

7    law firm moved to withdraw, and the Court granted that order.

8    So we had followed up to provide notice to this claimant.  But

9    as of recently, we have not received any response from him in

10   our efforts.

11           THE COURT: Okay.  Dismissed with prejudice.

12           MS. MILLER: Thank you, Your Honor.

13           The next case to be presented is the case appearing

14   in Line 11.  The plaintiff is Patricia Foss, and her claim was

15   filed by The Tuttle Law Firm.  Ms. Foss has alleged multiple

16   bleeding events were caused by Xarelto, but failed to produce

17   records verifying all these events were caused by Xarelto.  We

18   have not heard from the plaintiff's counsel to demonstrate

19   these records, whether they were going to appear today.

20           But because they have not complied with CMO 11, we

21   would ask that the case be dismissed with prejudice.

22           THE COURT: Anyone for the plaintiff Patricia Foss?

23           Dismiss it with prejudice.

24           MS. MILLER: Thank you, Your Honor.  The last two

25   cases appearing on the order are in Lines 12 and 13.  Both of

OFFICIAL TRANSCRIPT

1  those are represented by the Tim Farris Law Firm.  I understand
2  that Mr. Farris is here today.  I can speak on the cases, but I
3  know Mr. Farris wants to speak as well.

4          MR. FARRIS: Good morning, Your Honor.  Yes, Your
5  Honor, the two cases are Yvonee Gosnell and Annette Price.

6          Regarding Ms. Gosnell, my office has made numerous
7  attempts.  We've sent out letters.  We've sent Fed Ex
8  documents.  All of the letters, all the Fed Ex documents have
9  been delivered.  We've sent various emails to the client, and
10 we've gotten absolutely no response in the last three months
11 from her.  I had filed a motion to withdraw in the case.  I
12 would ask for leave of the Court to at least get my affidavits
13 on file of everything that we've done just so that my firm can
14 be protected in that regard.

15         THE COURT: Please do.  I'm familiar with the firm.  I
16 know they've done good work, and they've tried their best,
17 herculean efforts, to locate the individual, to keep in touch
18 with the individual.  But the individual also has a duty and
19 responsibility to keep in touch with the attorney, to respond
20 to the attorney.  It's not fair for the attorney to incur time,
21 effort, expenses to keep in touch with them to try to get the
22 party, their client, to respond.  Apparently, this person is
23 not interested in doing it notwithstanding the efforts of
24 counsel.  So I'm going to dismiss the case with prejudice.

25         MS. MILLER: Thank you, Your Honor.

                    OFFICIAL TRANSCRIPT

1         MR. FARRIS: Thank you, Your Honor.

2         The second case is Ms. Annette Price.  The issue that

3   we have with Ms. Price is that all throughout her medical

4   records, she's been diagnosed with paranoid schizophrenia and

5   delusional behavior.  We will talk to her one day, and she is

6   fine going forward with the settlement and opting in.  The next

7   day, we talk to her, and she does not want to go forward with

8   it.

9         We've attempted to gather the medical records that

10  are required.  For the last 12 years, she has given us the name

11  of the medical providers.  We have attempted to request those

12  records from the medical providers, and they do not have any

13  records that she's been at that facility.  She is unable to

14  provide us with any information that would help us to gather

15  that information.

16        And the same situation on that case, we filed a

17  motion to withdraw, and we'll file our affidavits.

18        THE COURT: That's fine.  I appreciate you being here,

19  and I know you've tried everything you can do to keep in touch

20  with your client.  Notwithstanding your efforts, the client

21  doesn't wish to proceed; so we're going to dismiss the case

22  with prejudice.  But I appreciate all your efforts.

23        MR. FARRIS: Thank you, Your Honor.  I appreciate it.

24        THE COURT: Thank you.

25        MS. MILLER: Thank you, Your Honor.  That concludes

OFFICIAL TRANSCRIPT

1  the cases we had listed for hearing today.  The parties can

2  prepare joint draft proposed orders and submit those to the

3  Court.

4          THE COURT: Good, thank you very much.

5          The Court's in recess.

6              (Whereupon this concludes the proceedings.)

7

8

9                          **CERTIFICATE**

10

11     I, Alexis A. Vice, RPR, CRR, Official Court Reporter for

12  the United States District Court, Eastern District of

13  Louisiana, do hereby certify that the foregoing is a true and

14  correct transcript, to the best of my ability and

15  understanding, from the record of the proceedings in the

16  above-entitled and numbered matter.

17

18                      */s/Alexis A. Vice, RPR, CRR*
                         Alexis A. Vice, RPR, CRR
19                       Official Court Reporter

20

21

22

23

24

25

                        OFFICIAL TRANSCRIPT