UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | CIVIL ACTION<br><br>MDL NO. 2592 |
| THIS DOCUMENT RELATES TO:<br>*Patricia Foss v. Janssen Research & Development LLC, et al.*<br>*No. 16-cv-1259* | SECTION "L" (5) |

### ORDER AND REASONS

Before the Court is Plaintiff Patricia Foss's Motion for Reconsideration and Motion to Vacate. R. Doc. 17610. Defendants oppose the Motion. R. Doc. 17627. The Court now rules as follows.

### I. BACKGROUND

The current matter arises out of the MDL case involving the prescription anticoagulant medication known as Xarelto. To put this matter in perspective, a brief review of the litigation is helpful. Beginning in 2014, lawsuits were filed in federal courts throughout the nation against Defendants, Bayer Corporation, Bayer HealthCare LLC, Bayer HealthCare Pharmaceuticals Inc., Bayer HealthCare AG, Bayer Pharma AG, and Bayer AG, Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC, Janssen Ortho LLC, and Johnson & Johnson. In their suits, the Plaintiffs specifically allege that they or their family members suffered severe bleeding and other injuries due to Xarelto's allegedly inadequate warning label, as well as other theories.

The Judicial Panel on Multidistrict Litigation determined that the Plaintiffs' claims involved common questions of fact, and that centralization under 28 U.S.C. § 1407 would serve

the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. Therefore, on December 12, 2014, the Judicial Panel on Multidistrict Litigation consolidated the Plaintiffs' Xarelto claims into a single multidistrict proceeding ("MDL 2592"). MDL 2592 was assigned to Judge Eldon E. Fallon of the United States District Court for the Eastern District of Louisiana to coordinate discovery and other pretrial matters in the pending cases. Subsequent Xarelto cases filed in federal court have been transferred to this district court to become part of MDL 2592 as "tag along" cases; at its peak, the Court had over 30,000 cases in the Xarelto MDL.

After years of discovery and bellwether trials, the Plaintiffs' Steering Committee ("PSC") and the Defendants entered into settlement discussions and in early 2019, reached a settlement. On March 25, 2019, the PSC and Defendants announced the Master Settlement Agreement, which resolves the claims of eligible Xarelto patients who suffered bleeding events, strokes, or cerebrovascular accident ("CVA"), venous thromboembolism ("VTE"), blood clots, and other various injuries that they associated with their use of Xarelto. R. Doc. 17623-1 at 6–7. This is an opt-in settlement program and thus far, over 99 percent of the plaintiffs in this litigation have chosen to opt into the settlement.

For the Plaintiffs who chose not to enroll in the Xarelto settlement program, the Court entered Case Management Order ("CMO") 11, which includes obligations with which the Plaintiffs must comply. R. Doc. 17627 at 2. Plaintiff Patricia Foss ("Foss") signed a Notice of Intent to Proceed stating that she chose to litigate her claims against Defendants and would not participate in the Xarelto settlement program. R. Doc. 17627 at 2. When she signed the Notice of Intent to Proceed, Foss acknowledged that she would need to comply with CMO 11 and all of its requirements. R. Doc. 17627 at 2. Pursuant to CMO 11, a plaintiff is required to, in relevant part:

(1) serve a complete and verified Short Form Plaintiff Fact Sheet ("Short Form PFS") with the required documents and records; (2) serve and complete and verified Plaintiff Profile and Consent Form ("PPCF") with the required documents and records; (3) serve a Preservation Notice Statement with the required associated documents; (4) serve a case-specific Rule 26(a)(2) report from a licensed physician; (5) produce all medical records required by CMO 11; and (6) serve an Affidavit of Compliance signed by plaintiff. *See* R. Doc. 12902. These CMO 11 requirements all have different deadlines that are dependent on when a plaintiff's case was filed in federal court and docketed in the MDL.

On January 16, 2020, the Court issued an Order to Show Cause to Foss for her failure to comply with CMO 11. R. Doc. 17559. Foss or her counsel were required to appear before this Court on February 6, 2020 to explain why she failed to comply with CMO 11, and Foss and her counsel were put on notice that their failure to appear at the Show Cause Hearing would result in the dismissal of Foss's case with prejudice. *See* R. Doc. 17559. Despite the Order, neither Foss nor her counsel appeared before this Court for the Show Cause Hearing and Foss's case was dismissed with prejudice as a result. R. Docs. 17590, 17593.

**II.    PRESENT MOTION**

Foss now moves to vacate the Court's Order dismissing her case pursuant to Federal Rule of Civil Procedure 60(b), or, in the alternative, Federal Rule of Civil Procedure 55(c). R. Doc. 17610 at 1. Specifically, Foss contends that the Court's Order of Dismissal was entered as a mistake under Rule 60(b) or that there is good cause for the Court to vacate its Order and reinstate Foss's case under Rule 55(c). R. Doc. 17610-1 at 2–3.

In opposition, Defendants argue that Foss has not established a valid basis under Rule 55(c) or Rule 60(b) to have the Court vacate its Order of Dismissal and reinstate Foss's case. R. Doc. 17627 at 1. Specifically, Defendants aver that Foss had not produced medical records to

3

demonstrate that she had experienced all the bleeding events she alleged was caused by Xarelto, as required by CMO 11. R. Doc. 17627 at 1. Moreover, as mentioned earlier, neither Foss nor her attorney attended the Show Cause Hearing as required by this Court's Order. *See* R. Docs. 17559, 17593. Defendants further contend that Foss only withdrew her claims regarding one of her alleged injuries, which was the subject of the Show Cause Hearing, after her case was dismissed. R. Doc. 17627 at 1. Defendants thus assert that Foss's case should not be reinstated.

### III. LAW AND ANALYSIS

Pursuant to Federal Rule of Civil Procedure 60(b), "the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . (1) mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b). "The decision concerning a motion to vacate a final judgment pursuant to rule 60(b) is directed to the sound discretion of the district court and will only be reversed if there is an abuse of that discretion." *Stipelcovich v. Sand Dollar Marine, Inc.*, 805 F.2d 599, 604 (5th Cir. 1986) (citing *Roberts v. Rehoboth Pharmacy, Inc.*, 574 F.2d 846, 847 (5th Cir. 1978)). "It is not enough that the granting of relief might have been permissible, or even warranted—denial must have been so *unwarranted* as to constitute an abuse of discretion." *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 402 (5th Cir. 1981).

Pursuant to Federal Rule of Civil Procedure 55(c), "[t]he court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). To determine whether good cause to set aside a default judgment exists, the Fifth Circuit considers three factors: "whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented." *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000) (quoting *Dierschke v. O'Cheskey (In re Dierschke),* 975 F.2d 181, 184 (5th Cir. 1992)) (quotation marks omitted). Another factor that may be considered is whether "the defendant acted expeditiously to correct the default." *Id.* However, motions to set aside

judgment are properly denied when cases have been dismissed for failure to comply with a court's order. *See, e.g., C. Itoh & Co. (Am.), Inc. v. M/V Bright Star*, 825 F.2d 74, 77 (5th Cir. 1987) (concluding that the court did not abuse discretion in refusing to set aside default judgment dismissing a case as a result of a party's failure to comply with a court order).

In this case, Foss argues that her claim of vaginal bleeding was withdrawn and proof in support of her claim of a cerebral hemorrhage following Xarelto use has been submitted, so the Court must have mistakenly entered an Order of Dismissal in this case. R. Doc. 17610-1 at 2. In the alternative, Foss asserts that she has satisfied all the elements of the good cause analysis and so her case should be reinstated pursuant to Federal Rule of Civil Procedure 55(c). R. Doc. 17610-1 at 4. Specifically, Foss's counsel avers that: (1) Foss did not engage in any culpable action that led to the Court issuing its Order of Dismissal, (2) Foss has a meritorious cause of action, and (3) Defendants will not be prejudiced in any way by the Court granting this motion. R. Doc. 17610-1 at 4–6. Foss thus seeks that the Court exercise its discretion and vacate its Order dismissing Foss's case so that her claim is reinstated. R. Doc. 17610-1 at 6.

In opposition, Defendants emphasize that Foss only withdrew her claims that were subject to the Show Cause Hearing after she and her counsel failed to appear, and her case was dismissed with prejudice. R. Doc. 17627 at 1. Moreover, Defendants argue that Foss has still not fully complied with CMO 11 with respect to her remaining alleged injury, as she has not produced all of the records regarding her use of Xarelto, records relating to treatment for the one bleeding event that she still alleges was caused by Xarelto, and records of her related medical history and pharmacy visits. R. Doc. 17627 at 1–2. Defendants thus assert that Foss's motion to set aside this Court's judgment should be denied for failure to comply with this Court's Orders. R. Doc. 17627 at 2. Finally, Defendants allege that, in addition to the deficiencies in Foss's case that were ripe at

5

the time the Show Cause Order was issued, Foss has also failed to produce additional documents and medical records that will be ripe for another Show Cause Hearing if Foss's case is reinstated. R. Doc. 17627 at 4–5. Defendants thus argue that the Court's Order of Dismissal should stand because the proper administration of justice—and functioning of MDLs in particular—requires that court orders are followed and enforced, and dismissals for non-compliance with court orders should not be temporary. R. Doc. 17627 at 5.

As a preliminary matter, the Court notes that neither Foss nor her counsel complied with this Court's Order to appear at the February 6, 2020 Show Cause Hearing and Foss does not provide any explanation for this lack of attendance. The Court issued the Order to Show Cause on January 16, 2020, *see* R. Doc. 17559, which means Foss and her counsel were given three weeks' notice of the hearing that they did not attend. Moreover, Foss has not explained her failure to comply with CMO 11, which she acknowledged was a requirement to proceed with her litigation against Defendants in her Notice of Intent to Proceed. The Court thus did not make a "mistake" in dismissing Foss's case, pursuant to Federal Rule of Civil Procedure 60(b). Foss has also not demonstrated "good cause" for the Court to set aside its Order of Dismissal pursuant to Federal Rule of Civil Procedure 55(c): Foss and her counsel disregarded this Court's Order to Show Cause, and Defendants would be prejudiced if a case that was previously dismissed for failure to comply with this Court's Orders is reinstated despite the plaintiff still not complying with the obligations set out in CMO 11.

## IV. CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Reconsideration and Motion to Vacate, R. Doc. 17610, is **DENIED**.

New Orleans, Louisiana, this 27th of March, 2020.

                                                                                                  */s/ Eldon E. Fallon*
                                                                                                ELDON E. FALLON
                                                                                                UNITED STATES DISTRICT JUDGE