UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL NO. 2592 |
| | SECTION L |
| | JUDGE ELDON E. FALLON |
| | MAGISTRATE JUDGE NORTH |

THIS DOCUMENT RELATES TO:

*Brown, et al. v. Janssen Research & Development, LLC, et al.*
CA# 2:19-cv-14669

## ORDER AND REASONS

Before the Court is *pro se* Plaintiff Barbara Brown's Motion to Remand this action to the United States District Court for the Northern District of California, R. Doc. 17697. Defendants filed an opposition on June 11, 2020. R. Doc. 17714. Plaintiff filed a reply to this opposition on July 23, 2020. R. Doc. 17791. Having considered the parties' arguments and the applicable law, the Court now rules as follows.

I.      BACKGROUND

The current matter arises out of the multi-district litigation ("MDL") case involving the prescription anticoagulant medication known as Xarelto. To put this matter in perspective, a brief review of the litigation is helpful. Beginning in 2014, lawsuits were filed in federal courts throughout the nation against Defendants Bayer Corporation, Bayer HealthCare LLC, Bayer HealthCare Pharmaceuticals Inc., Bayer HealthCare AG, Bayer Pharma AG, Bayer AG, Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC, Janssen Ortho LLC, and Johnson & Johnson (collectively, "Defendants"). In their suits, plaintiffs assert that they or their family

members suffered severe bleeding and other injuries due to Xarelto's allegedly inadequate warning label, as well as other theories.

The Judicial Panel on Multidistrict Litigation ("JPML") determined that the plaintiffs' claims involved common questions of fact, and that centralization under 28 U.S.C. § 1407 would serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. Accordingly, on December 12, 2014, the JPML consolidated the plaintiffs' Xarelto claims into a single multidistrict proceeding ("MDL 2592"). MDL 2592 was assigned to Judge Eldon E. Fallon of the United States District Court for the Eastern District of Louisiana to coordinate discovery and other pretrial matters in the pending cases. Subsequent Xarelto cases filed in federal court have been transferred to this district court to become part of MDL 2592 as "tag along" cases. At its peak, the Court had over 30,000 cases in this MDL.

After years of discovery and bellwether trials, the Plaintiffs' Steering Committee ("PSC") and the Defendants entered into settlement discussions and reached a settlement in early 2019. On March 25, 2019, the PSC and Defendants announced the Master Settlement Agreement, which resolves the claims of eligible Xarelto patients who suffered bleeding events, strokes, or cerebrovascular accident, venous thromboembolism, blood clots, and other various injuries that they associated with their use of Xarelto. R. Doc. 17623-1 at 6–7. This is an opt-in settlement program and thus far, over ninety-nine percent of the plaintiffs in this litigation have chosen to opt into the settlement.

For the plaintiffs who chose not to enroll in or do not qualify for the Xarelto settlement program, the Court entered Case Management Order ("CMO") 11, which includes obligations with which the plaintiffs must comply. R. Doc. 12902. Pursuant to CMO 11, a plaintiff is required to, in relevant part: (1) serve a complete and verified Short Form Plaintiff Fact Sheet ("Short Form

PFS") with the required documents and records; (2) serve a complete and verified Plaintiff Profile and Consent Form ("PPCF") with the required documents and records; (3) serve a Preservation Notice Statement with the required associated documents; (4) serve a case-specific Rule 26(a)(2) report from a licensed physician; (5) produce all medical records required by CMO 11; and (6) serve an Affidavit of Compliance signed by plaintiff. *Id.* These CMO 11 requirements all have different deadlines that are dependent on when a plaintiff's case was filed in federal court and docketed in the MDL. Plaintiffs who filed suit after March 11, 2019, are ineligible for the Xarelto settlement program, so CMO 11 governs their claims. R. Doc. 12902 at 1-2.

On November 19, 2019, the *pro se* Plaintiffs Barbara Brown, Alice Brown, and Lora Orozco (collectively, "Plaintiffs") filed a complaint in the Northern District of California seeking monetary damages against Defendants. Dkt. No. 2:19-cv-14669 ("Dkt. No. 14669"), R. Doc. 1. Plaintiffs believe that their family member Dexter Brown was prescribed Xarelto, suffered a brain hemorrhage, and then died on November 16, 2019, as a result of using the drug. *Id.* at 5; R. Doc. 17697-1 at 8. Plaintiffs were authorized by the Northern District of California to proceed in *forma pauperis* in this litigation. Dkt. No. 14669, R. Doc. 6. On December 13, 2019, the JPML conditionally transferred this case to MDL 2592 because it "involve[s] questions of fact that are common to the actions previously transferred to the Eastern District of Louisiana and assigned to Judge Fallon." R. Doc. 1546. On December 30, 2019, the case was officially transferred to this Court. Dkt. No. 14669, R. Doc. 12.

Since Plaintiffs filed suit well after the March 11, 2019 settlement program cutoff date, CMO 11 governs their claims. Dkt. No. 14669, R. Doc. 1; R. Doc. 12902 at 1-2. Although they received CMO 11 on January 3, 2020, Plaintiffs have not yet provided the required documentation to support their claims. R. Doc. 1769-1 at 2. On February 24, 2020, Plaintiffs petitioned this Court

3

to appoint *pro bono* counsel so an attorney could assist them in litigating the case. R. Doc. 17626. The Court denied this motion because "a litigant has no general right to a court-appointed attorney in a civil case" and because the Plaintiffs here "have not demonstrated that their case presents 'exceptional circumstances' that would warrant the appointment of counsel." R. Doc. 17629 at 1-2. Plaintiffs were required to submit a Rule 26(a)(2) causation report by April 28, 2020. R. Doc. 17714 at 3. This deadline was extended by Defendants to June 1, 2020. *Id.* at 3; R. Doc. 17697 at 1. Plaintiffs have not since provided the documentation required by CMO 11.

## II.     PRESENT MOTION

### A.     Plaintiff's Motion to Remand [R. Doc. 17697]

Plaintiffs[1] request remand of this case to the Northern District of California because they are "opting out of the multidistrict litigation due to it's [sic] impossible demands, etc." R. Doc. 1769-1 at 1. Plaintiffs contend that their lawsuit was transferred to the MDL 2592 without their consent, and they continue to oppose the transfer. *Id.* at 4, 9. Plaintiffs argue that they missed the deadline for opposing the lawsuit's conditional transfer to this Court due to the mistaken belief "that if they did not file notices of opposition, their case would be part of the settlement program in this MDL." *Id.* at 4. Further, Plaintiffs claim that CMO 11 is both unreasonable and unconstitutional. *Id.* Plaintiffs argue that compliance with CMO 11 is unduly expensive and burdensome, preventing indigent people such as themselves from seeking justice. *Id.* According to Plaintiffs, "physicians are not readily available to be available to read over one thousand pages of Dexter Brown's medical files and prepare a Rule 26(a)(2) report for free or at a cost." *Id.* at 9.

---

[1] Plaintiff Barbara Brown filed this motion on behalf of herself and the two other plaintiffs associated with this case, Alice Brown and Lora Orozco. All three Plaintiffs have been particularly active in this lawsuit, filing motions on behalf of themselves and the other two Plaintiffs. For the sake of clarity, the Court will refer to the pending motion and arguments as *Plaintiffs'* motion and arguments.

Therefore, Plaintiffs believe that they cannot and should not be required to comply with CMO 11 and demand that this case be remanded to the Northern District of California for trial purposes. *Id.*

### B.  Defendants' Opposition to Plaintiffs' Motion to Remand [R. Doc. 17714]

Defendants responded to Plaintiff's motion on June 11, 2020, arguing that remand is inappropriate in this case. R. Doc. 17714. Defendants first contend that Plaintiffs' compliance with CMO 11 is essential for management of MDL 2592, and "Plaintiffs cannot shirk their obligations by prematurely seeking remand to a different court." *Id.* at 1. Defendants stress that the Court was well within its inherent powers when it entered CMO 11, and Plaintiffs' case will benefit from further proceedings before this Court. *Id.* at 4. Second, Defendants argue that Plaintiffs' assertion that immediate remand is necessary due to a threat of dismissal by June 1, 2020, is mistaken. *Id.* at 1. Defendants claim they offered to extend the CMO 11 compliance deadline to August 3, 2020, making this point moot. *Id.* Lastly, Defendants contend that Plaintiffs have failed to show good cause for remanding the case at this early stage of litigation. *Id.* at 2. Defendants argue that "remand would unnecessarily duplicate efforts of this MDL Court and unduly burden the transferor district court." *Id.* For the foregoing reasons, Defendants ask the Court to deny Plaintiffs' Motion to Remand. *Id.*

### C.  Plaintiffs' Reply to Defendants' Opposition [R. Doc. 17791]

On July 23, 2020, Plaintiffs filed a Reply to Defendants' opposition to the Motion to Remand. R. Doc. 17791. Plaintiffs reiterate that they are "opting out" of this MDL and claim that they have not shirked their obligations under CMO 11. R. Doc. 17791 at 1. First, Plaintiffs argue that they have complied with CMO 11's requirements thus far but cannot locate a physician to complete the required Rule 26(a)(2) report. *Id.* at 2. Plaintiffs informed Defendants' counsel of this issue and proposed that the requirement be waived and Dexter Brown's medical records serve as a substitute. *Id.* Plaintiffs point out that Defendants' counsel did not agree to this proposed

stipulation, and they also accuse counsel of being unresponsive. R. Doc. 17791, Exhibit A. Second, Plaintiffs reassert that they never chose to opt out of the Xarelto settlement program and are now actively opting out of MDL 2592. *Id.* at 3. Lastly, Plaintiffs accuse this Court of exhibiting racial bias toward them because Defendants' counsel informed the Court that Plaintiffs Alice and Barbara Brown are black. *Id.* Plaintiffs assert that "[t]his Court's racially biased use of discretion—either intentional or unintentional—is the cause of the Plaintiffs[sic] inability to comply with the CMO 11." *Id.*

### III. LAW AND ANALYSIS

The JPML created this MDL by consolidating and transferring certain cases "shar[ing] common factual questions arising out of allegations that plaintiffs suffered bleeding or other injuries as a result of taking Xarelto (rivaroxaban) and that defendants did not adequately warn prescribing physicians or consumers of the risks." *In re* Xarelto (Rivaroxaban) Prods. Liab. Litig., 65 F. Supp. 3d 1402, 1405 (E.D. La. 2014). Specifically, it found that "[i]ssues concerning the development, manufacture, regulatory approval, labeling, and marketing of Xarelto thus are common to all actions. Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel and the judiciary." *Id*. 28 U.S.C. § 1407 provides that each transferred action in an MDL eventually be remanded "at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated." 28 U.S.C. § 1407(a).

When a party seeks remand in a case associated with an MDL, a court must consider "whether the case will benefit from further coordinated proceedings as part of the MDL." *Chau v. Aviva Life and Annuity Co.*, No. 3:09-cv-2305-B, 2011 WL 1990446, at *2 (N.D. Tex. May 20, 2011). The authority to remand a case lies with the JPML, but a transferee court may also issue a suggestion of remand, which the JPML will strongly consider. *Id. See also* 28 U.S.C. § 1407(a);

*In re* Holiday Magic Sec. & Antitrust Litig., 433 F. Supp. 1125, 1126 (J.P.M.L. 1977). The JPML will remand a case before completion of pretrial proceedings "only upon a showing of good cause," which the party seeking remand must demonstrate. *In re* CBS Color Tube Patent Litig., 342 F. Supp. 1403, 1405 (J.P.M.L. 1972). *See also Chau*, 2011 WL 1990446, at *2. Remand is not appropriate "when continued consolidation will eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary." *In re* Silica Prods. Liab. Litig., 398 F.Supp.2d 563, 668 (S.D. Tex. 2005) (citing *In re* Heritage Bonds Litig., 217 F. Supp. 2d 1369, 1370 (J.P.M.L. 2002)).

The Plaintiffs here seek remand due to their inability to comply with CMO 11, which is a type of pretrial order commonly known as a *Lone Pine* order. This name comes from *Lore v. Lone Pine Corp.*, in which the Superior Court of New Jersey approved of a pre-trial order requiring plaintiffs to provide some basic facts in the form of expert reports or run the risk of having their case dismissed. *See* 1986 WL 637507, *1–3 (N.J. Super. Nov. 18, 1986). *Lone Pine* orders "are designed to handle the complex issues and potential burdens on defendants and courts in mass tort litigation." *Acuna v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). "The basic purpose of a *Lone Pine* order is to identify and cull potentially meritless claims and streamline litigation in complex cases." *Baker v. Chevron USA, Inc.,* 2007 WL 315346, *1 (S.D. Ohio Jan. 30, 2007). Since the New Jersey court's decision, *Lone Pine* orders have been routinely used by courts to manage mass tort cases. *See, e.g., Acuna,* 200 F.3d at 340; *Nolan v. Exxon Mobil Corp.*, No. CV 13-439-JJB-EWD, 2016 WL 1213231 (M.D. La. Mar. 23, 2016); *In re* Vioxx Products Liability Litigation, 557 F. Supp. 2d 741, 743-44 (E.D. La. 2008), *aff'd*, 388 F. App'x 391 (5th Cir. 2010); *Burns v. Universal Crop Protection Alliance,* 2007 WL 2811533 (E.D. Ark. Sep. 25, 2007); *In re Rezulin Products Liability Litigation,* 441 F. Supp. 2d 567, 570 (S.D.N.Y. 2006); *In re Silica*

*Products Liability Litigation,* 398 F. Supp. 2d 563, 576 (S.D. Tex. 2005). The United States Court of Appeals for the Fifth Circuit has recognized the value of and approved the use of *Lone Pine* orders in mass tort litigation. For example, in *Vioxx*, the Fifth Circuit upheld this Court's usage of a *Lone Pine* order to manage the MDL and dismiss plaintiffs for failure to comply with the order. 388 F. App'x 391, 397 (5th Cir. 2010). Plaintiffs argued that the order imposed "too high a burden at too early a stage of litigation," but the Fifth Circuit disagreed, reiterating the clear holding in *Acuna* that "it is within a court's 'discretion to take steps to manage the complex and potentially very burdensome discovery that the cases would require.'" *Id.* (citing *Acuna,* 200 F.3d at 340).

  The Court finds that at this stage of litigation, Plaintiffs have not demonstrated good cause to support remand of their case to the Northern District of California. Pretrial proceedings are far from complete, and it is not overly burdensome to request that Plaintiffs comply with CMO 11 and in doing so provide some evidence to support their claims. Rather than tasking the transferee court with the same basic evidence issues, Plaintiffs' case will benefit from further proceedings in this MDL. Moreover, this Court was well within its judicial powers when it enacted CMO 11, so Plaintiffs' allegations that CMO 11 is unconstitutional and fueled by racial bias are without merit. The usage of *Lone Pine* orders in MDLs is supported by the Fifth Circuit and countless other federal courts. Further, CMO 11 applies to *all* plaintiffs who did not enroll in or do not qualify for the Xarelto settlement program without any regard to race or socioeconomic background. R. Doc. 12902.

  Defendants' counsel has extended the CMO Rule 26(a)(2) report deadlines multiple times, and Plaintiffs have been in possession of the CMO 11 for nearly eight months now. It is time for Plaintiffs to come forward and show the basis for their beliefs and demonstrate basic evidence of

causation. The Court urges these *pro se* Plaintiffs to seek representation so they may move this case forward and avoid dismissal. In civil cases such as the present one, attorneys are usually retained on a contingent fee arrangement. This arrangement allows a claimant to secure an attorney without paying any amount upfront. The attorney receives compensation only if the plaintiff is successful. If this case has merit these litigants should be able to obtain counsel on a contingent fee basis.

## IV.   CONCLUSION

For these reasons,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Remand is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs be given until September 4, 2020 to comply with CMO 11. After that time, Defendants may file a motion to dismiss this case with prejudice.

New Orleans, Louisiana, this 5th day of August 2020.

*[signature]*

UNITED STATES DISTRICT COURT JUDGE

CC:   Barbara Brown
      PO Box 5408
      Sugarloaf, CA 92386

      Alice Brown
      PO Box 60
      Crescent City, CA 95531