**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | : : : : : : : : : | MDL No. 2592 |
| | | SECTION L |
| THIS DOCUMENT RELATES TO: | | |
| *Barbara Brown, et al.*, No. 2:19-cv-14669 | | JUDGE ELDON E. FALLON |
| | | MAGISTRATE JUDGE NORTH |

**JANSSEN AND BAYER DEFENDANTS' JOINT OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION FOR DISQUALIFICATION OF DISTRICT COURT JUDGE**

For the past four years, this Court has fairly and impartially presided over this MDL involving approximately thirty thousand plaintiffs. The Court has entered multiple case management orders to enable the Court, counsel, and the parties to effectively manage those thousands of cases, and the Court has presided over three jury trials. Dkt. No. 2:14-md-02592 ("Dkt. No. 2592"), R. Doc. 17800; Dkt. No. 2592, R. Doc. 17828-1.

*Pro se* Plaintiffs Barbara Brown, Alice Brown, and Lora Orozco now seek to disqualify Your Honor from presiding over their case because the Court stated, under well-settled precedent cited in its August 6, 2020 Order denying remand, Dkt. No. 2592, R. Doc. 17800, that a motion to dismiss Plaintiffs' case would be ripe for consideration if Plaintiffs continued to fail to comply with Case Management Order No. 11 ("CMO 11")—despite already receiving three extensions to comply. *See* Pls.' Mot. For Disqualification, Dkt. No. 2592, R. Doc. 17827. Among other things, CMO 11 required Plaintiffs, pursuant to Federal Rule of Civil Procedure 26, to provide an expert report showing that Xarelto caused the injuries they alleged in this lawsuit. *See* Dkt. No. 2592, R. Doc. 17800. Despite their protestations to the contrary, Pls.' Mot. at 6, Plaintiffs *have conceded* that they lack the essential expert testimony they need to show that Xarelto caused the alleged

injuries and that they did not comply by the Court's fourth and final September 4, 2020 deadline. Plaintiffs state unequivocally that they "cannot comply with CMO 11's Rule 26(a)(2), obtaining a specific causation report due to the facts that the physicians are unwilling to prepare the report." Dkt. No. 2592, R. Doc. 17720 at 3. Indeed, Defendants have learned that, as part of two pending lawsuits in California state-court, Plaintiffs are attributing the alleged injuries (i.e., Dexter Brown's death) to a different cause altogether (namely, an overdose of lithium). *See infra* at 5.

Lacking the ability to prove their case, Plaintiffs turn to a litigation strategy they know well and have used before—they allege that the Court is biased and seeking disqualification under 28 U.S.C. § 455(a). Moving for disqualification is not a new tactic for these Plaintiffs. They have filed 17 cases (including this case) in federal courts—in those 17 cases, they have accused *six* different federal district court and magistrate judges of misconduct, and they have moved to disqualify the presiding judge in three of those cases. *See infra*. at 9-12. Each of the previous disqualification motions have appropriately been denied, and this Court should deny Plaintiffs' motion here too.

Here, Plaintiffs assert that it is "their perception that the Judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired" because "the Court has wrongly advised the Defendants to file a request for dismissal of my lawsuit on September 4, 2020." Dkt. No. 2592, R. Doc. 17827 at 1 (seeking "disqualification of District Court Judge pursuant to Title 28 U.S.C. Section 455(a)"). But well-settled precedent articulated by the U.S. Supreme Court in *Liteky v. United States*, 510 U.S. 540, 555 (1994), and the Fifth Circuit in *Tejero v. Portfolio* 955 F.3d 453 (5th Cir. 2020), makes clear that Court rulings and evidence considered as part of a judicial proceeding—Plaintiffs' alleged disqualification grounds here—are not a basis for disqualification. Instead, disqualification requires evidence that Plaintiffs lack—namely, that

2

the Court has "extrajudicial" opinions and views developed outside of the case that influenced its decision, and the existence of deep-seated favoritism and antagonism that makes impartial judgment impossible.  Here, the Court has a strong record of impartiality towards the thousands of plaintiffs in this litigation.

Plaintiffs' allegations of partiality and request for recusal here are not based on fact or law, and do not remotely support disqualification.  Accordingly, Plaintiffs' motion must be denied.

## II.     PROCEDURAL HISTORY

This case was filed on November 19, 2019 in the Northern District of California and transferred to this Court on December 30, 2019.  Dkt. No. 2:19-cv-14669 ("Dkt. No. 14669"), R. Doc. 1, 12.  Because of the date Plaintiffs' case was filed, it is governed by CMO 11.  Under CMO 11, Plaintiffs are required to, *inter alia*, serve a case-specific Rule 26(a)(2) report from a licensed physician qualified to render a specific causation opinion and who will offer a specific causation opinion to a reasonable degree of medical probability that Dexter Brown's alleged bleeding event and death were caused by taking Xarelto as directed; Plaintiffs also must produce all medical records contemporaneous to the prescription and use of Xarelto and treatment on which the expert relies.  *See* R. Doc. 12902, Section I.  CMO 11 advises Plaintiffs that failure to comply with its terms could subject their case to dismissal with prejudice.  *See id.* Section II, C.

Under CMO 11, Plaintiffs' expert report was initially due on April 28, 2020.  In a motion docketed on April 7, 2020, Plaintiffs advised that they would be unable to meet the April 28, 2020 deadline.  *See* Dkt. No. 2592, R. Doc. 17636.  Defendants therefore agreed to extend the deadline to June 1, 2020.  *See* Dkt. No. 2592, R. Doc. 17637.  On June 1, 2020, Plaintiffs advised that they were still unable to identify an expert who was willing to prepare the report required by CMO 11. Defendants agreed to extend the deadline a second time, to August 3, 2020.  Plaintiffs then sought

to remand this case to the Northern District of California because they did not want to comply with CMO 11. Dkt. No. 2592, R. Doc. 17697. When the Court denied Plaintiffs' Motion to Remand, it also granted Plaintiffs a final extension to September 4, 2020 to produce the expert report required by CMO 11. Dkt. No. 2592, R. Doc. 17800 at 9. In response, Plaintiffs filed the instant motion.

### III.  ARGUMENT

**A.  There is ample, objective evidence warranting consideration of the dismissal of Plaintiffs' claims for failure to comply with CMO 11 and lack of proof on proximate causation.**

As a threshold matter, there is more than ample, objective evidence to justify the Court alerting Plaintiffs in its August 6, 2020 order to the possibility that their case could be dismissed for both failure to comply with CMO 11 and lack of proof of the necessary element of proximate causation. *See* Dkt. No. 2592, R. Doc. 17800 at at 9 ("**IT IS FURTHER ORDERED** that Plaintiffs be given until September 4, 2020 to comply with CMO 11. After that time, Defendants may file a motion to dismiss this case with prejudice."); *see also* Defs.' Mot. to Dismiss or Alt. Sum. Judg. for Lack of Proof (Dkt. No. 2592, R. Doc. 17828-1). Plaintiffs have conceded that they lack this essential evidence. *See* Dkt. No. 2592, R. Doc. 17720 at 3.

These Plaintiffs also have taken the position *in a different lawsuit* that an overdose of lithium—and *not Xarelto*—caused the death of decedent Dexter Brown. *See Brown v. Am. Global Med. Ctr.*, Case No. 30-2020-01124599 (Cal. Super. Ct., Orange Cty.). In that California state-court action, Plaintiffs have sued a California physician and two medical institutions, alleging that the physician "cause[d] the untimely and wrongful death of Dexter Elliot Brown during Mr. Brown's stay at Anaheim Global Medical Center" by "intentional[ly] administer[ing] a lethal dose of lithium (the wrong medication used to treat depression) to Dexter, which caused him to prematurely expire." Ex. A at 4, 6. And in *yet another, separate* California state-court action,

4

brought against one of the same medical institutions as the other California suit (for assault, battery, and intentional infliction of emotional distress), Barbara Brown has alleged that the hospital tried to "cover up the murder" of Dexter Brown; she also filed a supporting affidavit stating that the hospital "administered a lethal dose of Lith[i]um to Dexter Brown, an amputee, homeless, poor man on 8/30/17, 9/1/17, & 9/14/17 and [the hospital] delayed medical treatment which ultimately led to Dexter's early death, 11/16/18." Ex. B at 7, 24, *Brown v. Anaheim Global Med. Ctr.*, Case No. 30-2019-01096548 (Cal. Super. Ct., Orange Cty.). That Plaintiffs have sued someone else—alleging an entirely different cause—for the same injury (Dexter Brown's death) demonstrates in spades why there is a legal requirement that Plaintiffs present expert testimony that ties Mr. Brown's death to Xarelto.[1]

In any event, the Court's warning to Plaintiffs that failure to produce expert evidence that Xarelto was the cause of the death could potentially result in dismissal of their action (and concurrently granting Defendants permission to file such a motion if Plaintiffs continued to fail to provide the necessary expert evidence) is plainly not evidence of bias—it is well supported by the case law cited in the Court's opinion. The Court's granting of a third extension, along with providing notice of the potential consequence (i.e., dismissal) of continued non-compliance, evidences an effort by the Court to provide Plaintiffs with every reasonable opportunity to obtain the evidence necessary to support their claim. Indeed, Plaintiffs undoubtedly would have criticized the Court for not providing them with fair notice of the potential consequences of their continued non-compliance with CMO 11 had the Court not alerted Plaintiffs of the potential for dismissal.

---

[1] Plaintiffs did not disclose either of these lawsuits to counsel or the Court. They also failed to produce copies of the medical records attached to the Complaint filed by Ms. Barbara Brown, as required by CMO 11. Instead, they repeatedly reiterated that they had produced all records they were able to obtain.

5

As set forth in Defendants' "Motion to Dismiss for Failure to Comply with CMO 11, or Alternatively for Summary Judgment Based on Lack of Proof of Proximate Causation," Dkt. No. 2592, R. Doc. 17828-1, the objective record clearly supports permitting consideration of a motion to dismiss Plaintiffs' claims.

### B. Plaintiffs' disqualification motion is based solely on the Court's rulings and orders, and therefore lacks a proper legal basis.

Plaintiffs' requested relief "to recuse under 455(a) is discretionary," and because it is "not well grounded[,] it should be denied." *Breitly v. LNV Corp.*, 2016 WL 4126393, at 1 (*citing In re Chevron U.S.A.*, 121 F.3d 163, 165 (5th Cir. 1997)). It is well settled that disqualification motions based on "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky*, 510 U.S. at 555 (holding that a court's rulings "can only in the rarest circumstances evidence the degree of favoritism or antagonism required (as discussed below) when no extrajudicial source is involved"); *see also, e.g.*, *Jefferson v. Fannie Mae*, No. 4:13-CV-604, 2015 WL 3622549, *2 (E.D. Tex. June 10, 2015) ("[M]ere disputes as to rulings made are almost always insufficient to show bias or prejudice to justify recusal.").

Because Plaintiffs' motion is based on "judicial rulings [and] routine trial administration efforts," as articulated in the Court's August 6, 2020 Order requiring compliance with CMO 11, there is no legal basis for disqualification or recusal here. *Liteky*, 510 U.S. at 555; *see also Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 340–41 (5th Cir. 2000) ("It was within the court's discretion to take steps to manage the complex and potentially very burdensome discovery that the cases would require."). Therefore, Plaintiffs' motion must be denied.

> **C.   Plaintiffs have not proven any "extrajudicial" fact or opinion, or that the Court has deep-seated favoritism or antagonism making fair judgment impossible.**

Plaintiffs also have not satisfied any of the requirements to establish that the Court is partial under 28 U.S.C. § 455(a).  *See Tejero,* 955 F.3d 453 (5th Cir. 2020).  To prove bias and partiality, the Fifth Circuit has explained:

> [T]he Supreme Court has directed us to consider whether the judge's views are 'extrajudicial.' An opinion is not extrajudicial if it was 'formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings.' Non-extrajudicial facts 'do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.' Even the presence of extrajudicial facts, without something more, does not suffice to show bias.

*Id.* at 463 [citations omitted]; *Sieber & Callut v. Sphase*, 227 F. Supp. 2d 623, 625 (E.D. Tex. 2002) (quoting *United States v. Clark,* 605 F.2d 939, 942 (5th Cir.1979)) ("[T]he biased or prejudiced conduct 'must stem from an extrajudicial source and results in an opinion on the merits or some bias other than what the judge learned from his part in the case.'").

Plaintiffs' motion is not based on an extrajudicial opinion or fact.  Instead, the sole basis for their request is the Court's findings during the course of the litigation, including Plaintiffs' repeated failure to comply with CMO 11 and their concession that they lacked the requisite evidence.  Dkt. No. 2592, R. Doc. 17720 at 3; Dkt. No. 2592, R. Doc. 17800.[2]  The Court's order was clearly based on "facts introduced or events occurring in the course of the current proceedings"

---

[2] Plaintiffs allege bias because the Court indicated a motion to dismiss would be ripe and also allege that the Court erred in stating that "Plaintiffs themselves admit that they do not know if any documents, particularly medical records, exist to support their claim" in denying their motion for reconsideration of a prior motion for appointment of civil pro bono counsel.  Dkt. No. 2592, R. Doc.17827.  Plaintiffs did not submit evidence demonstrating that Dexter Brown's injuries were caused by Xarelto, and they have repeatedly failed to provide the expert report required by Federal Rule of Civil Procedure 26 and CMO 11.  ***And*** it has now come to light that Plaintiffs are claiming—in two separate lawsuits—that the administration of an entirely unrelated medicine (lithium) was the cause of Mr. Brown's death.  Regardless, Plaintiffs' assertions that the medical records show that Dexter Brown was taking Xarelto at the time of his death is insufficient evidence to prove a claim for relief and causation, which requires expert testimony of medical and proximate causation.  *See* Dkt. No. 2592, R. Doc. 17828-1.

that do not constitute "extrajudicial" opinion or facts required for a motion to disqualify. *Sieber & Callut,* 227 F. Supp. 2d at 625.

Nor does the Court's ruling display "deep-seated favoritism or antagonism that would make fair judgment impossible." *Tejero*, 955 F.3d at 463 (*citing Liteky*, 510 U.S. at 555). To the contrary, the Court's ruling was made after a strong, clear record of non-compliance and gave Plaintiffs the benefit of the doubt and even more time to comply. Doc. 17800; *see also In re Vioxx Prods. Liab. Litig. (Deir)*, 388 F. App'x 391 (5th Cir. 2010) (affirming dismissal for failure to provide expert affidavit required by MDL Court's case management orders). Plaintiffs were initially required to comply with CMO 11 by April 28, 2020, and when they failed to do so, Defendants granted them two additional extensions in June and then again August. Dkt. No. 2592, R. Doc. 17828-1. After Plaintiffs failed to comply with these extended deadlines, the Court granted them a fourth and final deadline until September 4, 2020. Dkt. No. 2592, R. Doc. 17800; Dkt. No. 2592, R. Doc. 17828-1. The Court's notice about potential dismissal was not remotely partial or antagonistic but was based on the facts and record, and resulted in another extension of the deadlines. Even Plaintiffs ultimately conceded they could not produce, now or in the future, the required evidence to proceed with their claims. Dkt. No. 2592, R. Doc. 17720 at 3.

### D. Plaintiffs have not proven that a reasonable person would harbor doubts concerning the Court's impartiality.

Nor have Plaintiffs produced any evidence even suggesting that a reasonable person would harbor doubts concerning the Court's impartiality. *Trejero*, 955 F.3d at 463; *United States v. Jordan*, 49 F.3d 152, 155 (5th Cir. 1995) ("Finally, when applying § 455(a), a court must determine "whether a reasonable and objective person, knowing all of the facts, would harbor doubts concerning the judge's impartiality."); *Breitling*, 2016 WL 4126393, at *1 ("A §455(a) movant 'must show that, if a reasonable man know of all the circumstances, he would harbor

8

doubts as to the judge's judgment.'"). "'In order to determine whether a court's impartiality is reasonably in question, the objective inquiry is whether a well-informed, thoughtful and objective observer would question the court's impartiality.' However, the alleged biased or prejudiced conduct must, as a general rule, be personal to mandate disqualification." *Sieber & Callut*, 227 F. Supp. 2d at 625 (quoting *Trust Co. v. N.N.P.,* 104 F.3d 1478, 1491 (5th Cir. 1997)).

The Court's August 6, 2020 Order was fair and impartial based on the facts, the law, and the evidence. Dkt. No. 2592, Doc. 17800. There is no reasonable argument that the Court's Order and ruling to enforce CMO 11 would call into question the Court's impartiality. The Court's rulings have been balanced and fair and based on the law applicable to this proceeding and Plaintiffs' case.

**E.     Plaintiffs have repeatedly accused federal judges of misconduct and moved for their disqualification.**

Finally, we note that Plaintiffs have a habit of accusing federal judges of misconduct and moving for their disqualification. Including this case, Plaintiffs Alice Brown and Barbara Brown have filed at least 17 different lawsuits, in five federal districts.[3] Of the federal district and magistrate judges who have handled those lawsuits, Alice and/or Barbara Brown have accused ***six*** of them (including your Honor) of bias or misconduct, and have moved to disqualify three of them (again, including, Your Honor).[4] Here is just a sampling of the allegations that Alice and/or Barbara Brown have made against these federal judges:

- "When offered evidence of perjury committed by the pro bono counsels, the court [Judge Dale S. Fischer] failed to review it, request it, set an evidentiary hearing, or even question about it and by doing so it covered it up or at the very least turned a blind eye to felonies committed in it's [sic] courtroom." Ex. D1 at 6.

---

[3] *See* attached Exs. C1 through C16.

[4] *See* attached pleadings with relevant sections yellow highlighted, attached as Exs. D1–D8. The other disqualification motions are in Exs. D5–D7.

9

- "Appellant will not be submitting any evidence in this Reply, it is a waste of my time, energy, effort and money to pretend I have any right to a fair trial, in that, all judges involved in this case [i.e., Judge Cormac J. Carney and Magistrate Judge Charles F. Eick] has prejudiced themselves against me and my kind, civilian Black Jews.  It is painfully obvious justice will not be done in this case when all the judges believed the many, many, many lies, half-truths and fraud presented by all appellees and their attorney even though appellant has presented the truth . . . ."  Ex. D2 at 4.

- "It appears District Judge Carney shows partiality towards my adversary it [sic] both related cases, in that, a declaration is to [sic] treated as the truth if ones [sic] signature follows, 'under penalty of perjury . . . that the foregoing is true and correct.'  Carney seems to believe their testimony and not Appellants [sic] testimony, even when contradictory evidence is presented. Magistrate Judge Eick also believes my adversary's lies, through falsifying records and withholding evidence." Ex. D3 at 2.

- "[Judge] Carney has criticized Appellants [sic] filings as 'incoherent' ramblings, and Carney refused to recuse himself after many improprieties including practicing law giving my defendants tactical advantage." Ex. D4 at 3.

- "Judge Carney's improprieties gave Plaintiff's adversarys [sic] tactical advantage in two (2) previous cases filed by Plaintiff, in that, [Judge] Carney sanctioned Plaintiff $100.00 two (2) times for failure to attend (2) two video depositions outside of Plaintiff's city when he knew Plaintiff's adversarys [sic] must travel to Plaintiff's city when they desire deposition. . . . Judge Carney's unconcious [sic] bias . . . is evident in his orders." Ex. D6 at 10.

- "The appearance of being biased & partial is proven in magistrate judges [sic] [Judge Eick] words he used in his reccomendations [sic] (Brown's 'alleged' this 'alleged' that but never an officer's statements, and Alice Brown was ordered counsel/pro bono)." Ex. D2 at 6.

- "Magistrate Judge Robert M. Illman, hereinafter referred to as 'You,' spent several minutes reprimanding me or rather scolding me for drawing a line through sentences and writing 'Lie!,' 'Lie!,' 'Lie!,' and 'This is a lie & fraud upon the court!!!' on a document entitled 'Joint Case Management Statement' that I didn't even file. . . .  You knew damn well that defendants' attorney, John Vrieze, had filed that document due to his business stamp is [sic] in the margin. . . . Furthermore, the unjustified and unsolicited scolding that I received from you [Judge Illman] clearly shows that you are utterly intolerant of me, the plaintiff, and any and all attempts to assert the truth by myself as the truth, the whole truth, and nothing but the truth, so help me God." Ex. D5 at 3–4.

- "But allowing lies, false statements, fraud upon the court is against my religion in that I am directed by my god to actively oppose evil and God himself considers liars to be evil.  Therefore you [Judge Illman] are violating my constitutional rights

10

to practice my religion, as a Christian, in everything I say and everything I do on a daily basis. And that's wrong!" Ex. D5 at 5.

- "I told you [Judge Illman] that 'I did not refuse to be deposed' but you refused to believe me even though I was the only one telling the truth. . . . You had no reason to believe that I was lying to you. . . . You had no business involving yourself as 'The Court' in the discovery process between me and my defendants." Ex. D5 at 6.

- "I believe that you [Judge Illman] have no intention on letting my lawsuit survive my defendants' motions for summary judgement. The sentence in the 'Civil Minutes' . . . , 'Further dates will be set if necessary,' is telling. . . . I have no faith in this system, your courtroom, and no faith in you being unbiased, impartial, fair, honest, or just." Ex. D5 at 8.

- "With me being black race, I truly believed that you [Judge Illman] have the same thought process regarding black people that Mark Fuhrman does . . . ." Ex. D5 at 15.

- "Judge [Josephine L.] Staton intentionally or unintentionally failed to address the many serious improprieties of both District Court Judge Carney and Magistrate Judge Eick which gave Plaintiff's adversarys [sic] tactical advantage in this present action and three (3) previous cases filed." Ex. D7 at 4.

- "Due to the fact that defendants and their counsel committed perjury and fraud, Appellant has not been able to obtain justice in any level of the United States Judicial System including S.C.O.T.U.S [sic]. . . . This court, the district court and the United States Supreme Court has been made aware of the systemic Racism ingrained in America and my cases yet did nothing." Ex. D8 at 2.

- "District Court Judge Carney did violate his Oath of Office and is guilty of treason." Ex. D8 at 3.

- "The district court [Judge Charles F. Eick] erred [regarding denial of] appointment of counsel when the district court and defendants deliberately discriminated against Appellant on basis of my socioeconomic status i.e. based on my poverty." Ex. D8 at 4.

- "This court's [Judge Eldon Fallon's] racially biased use of discretion—either intentional or unintentional—is the cause of plaintiffs [sic] inability to comply with the CMO 11 Rule 26(a)(2) requirement due to socioeconomic inequalities. This systemic racism allowed the court to deprive plaintiffs of pro bono counsel appointment, knowing, along with the defendants [sic] counsel, the complexity of multidistrict litigation . . . . In this MDL, as black people, equal justice is only an illusion, like it was for the parents of Emmett Till, Louis and Mamie Till." Dkt. No. 2592, R. Doc. 17791 at 3.

11

- "Judge Eldon Fallon has intentionally made false statements of fact against the Plaintiffs in order to justify his latest actions and orders . . . directing the Defendants to file a motion to dismiss this case with prejudice. The Plaintiffs' perception of Judge Fallon's actions and orders shows bias and partiality toward the Defendants which constitutes serious improprieties [sic]." Dkt. No. 2592, R. Doc. 17827 at 6.

Plaintiffs' ire is not limited to the federal judiciary; one of their federal cases challenges the actions of an Alaska state court judge, accusing him of "impersonating a judicial Officer." Ex. E at 3.

Plaintiffs' previous two federal disqualification motions were denied.[5] This one should be as well.

## IV.   CONCLUSION

The Court's appropriate admonitions were part of rulings that "occurred in the course of judicial proceedings, *and* that neither (1) relied upon knowledge acquired outside such proceedings nor (2) displayed deep-seated and unequivocal antagonism that would render fair judgment impossible." *Liteky*, 510 U.S. at 554. Accordingly, the Court should deny Plaintiffs' motion to disqualify.

---

[5] See attached decisions Exs. F1, F2, F3.

Respectfully submitted,

**ARNOLD & PORTER KAYE SCHOLER LLP**

By: */s/Andrew Solow*
Andrew K. Solow
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8000
Facsimile: (212) 836-8689
William Hoffman
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
Facsimile: (202) 942-5999
andrew.solow@arnoldporter.com
william.hoffman@arnoldporter.com

*Attorneys for Defendant Bayer Corporation*

**FAEGRE DRINKER BIDDLE & REATH LLP**
By: */s/ Susan M. Sharko*
Susan M. Sharko
600 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
Facsimile: (973) 360-9831
susan.sharko@faegredrinker.com

*Counsel for Defendants Janssen Research & Development, LLC and Johnson & Johnson*

**IRWIN FRITCHIE URQUHART & MOORE LLC**
By: */s/ Kim E. Moore*
    Kim E. Moore
    400 Poydras Street
    Suite 2700
    New Orleans, LA 70130
    Telephone: (504) 310-2100
    Facsimile: (504) 310-2120
    kmoore@irwinllc.com

    *Defendants' Co-Liaison Counsel*

>**CHAFFE MCCALL L.L.P.**
>By: /s/ *John F. Olinde*
>    John F. Olinde
>    1100 Poydras Street
>    Suite 2300
>    New Orleans, LA 70163
>    Telephone: (504) 585-7241
>    Facsimile: (504) 544-6084
>    olinde@chaffe.com
>
>*Defendants' Co-Liaison Counsel*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 21, 2020, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs and Defendants by operation of the court's electronic filing system and served on all other plaintiff counsel via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre-Trial Order No. 17.

>*/s/ Kim E. Moore*
>**Kim E. Moore**

The undersigned hereby certifies that on September 21, 2020, the foregoing pleading was sent by U.S. mail, postage prepaid to each Plaintiff at her address of record.

>*/s/ Chanda A. Miller*
>**Chanda A. Miller**