# EXHIBIT E

Alice Helen Brown
c/o P.O. Box 436282
San Ysidro, California 92143

**RECEIVED**

AUG 1 5 2006

CLERK U.S. DISTRICT COURT
ANCHORAGE, ALASKA

# The United States of America

# The United States

# District Court of the United States

# District of Alaska

**Alice Helen Brown as the Natural Mother
On behalf of her Daughter**
REDACTED                  **(4 years old)**
**Without Assistance of Counsel**
*Petitioner*

*v.*

**Eric Smith**
*Respondent*

Case $3:06-CV-00186-TMB$

**Writ of Habeas Corpus Ad Subjiciendum
According to the Course of the Common Law
Arising under Article I Section 9 of
the Constitution of the United States**

Come now, Alice Helen Brown ("Brown"), as the Natural Mother of her daughter,

**REDACTED**                  (Brown's daughter"), being 4 years old with this Writ of

Habeas Corpus Ad Subjiciendum (hereafter "Habeas Corpus") according to the Course of the

Habeas Corpus                  Page 1 of 33

Common Law arising under Article I Section 9 Clause 2 of the Constitution of the United States and Bill of Rights as lawfully amended by the qualified Electors of the several States, arising under Article IV Section 2 Clause 1 Privileges and Immunities Clause and under the Northwest Ordinances of 1787 and the Treaty with Russia at 15 Stat 539 in the year of 1867 of which Brown's daughter is being unlawfully and illegally being restrained of her liberty of being traveling to California with Brown and of being in the protection and care of Brown.

## I. Jurisdiction

Jurisdiction arises under Article III of the Constitution of the United States in all Cases in Law and Equity under the authority of the United States exercising the judicial Power of the United States under the Authority of the United States in the several States.

Jurisdiction arises under the Constitution of the United States as lawfully amended by the qualified Electors of the several States and the laws, which shall be made pursuant thereof. And further the jurisdiction arising under Article IV Section 2 Clause 1 of the Privileges and Immunities Clause, under the Northwest Ordinance of 1787 and the Treaty with Russia at 15 Stat 539 in the year of 1867.

Jurisdiction of the Writ of Habeas Corpus Ad Subjiciendum (hereafter "Habeas Corpus") according to the Course of the Common Law arises under Article I Section 9 Clause 2 of the Constitution of the United States and Bill of Rights as lawfully amended by the qualified Electors of the several States and under the Northwest Ordinances of 1787, of which Brown's daughter is being unlawfully and illegally being restrained of her liberty and denied her right of being with her Natural Mother, being Brown.

And further the jurisdiction arises under the Privileges and Immunities Clause as both Brown and Brown's daughter are, American citizens, citizens of the United States of America,

and Natural Born Native of the foreign state of California for Brown domiciled in the territorial boundaries of California and Natural Born Native of the foreign state of Alaska for Brown daughter who is unlawfully and illegally being held in the territorial boundaries of Alaska against the will of Brown.    Both Brown, and Brown on behalf of Brown's daughter, claim to be American citizens, citizens of one of the several States and citizens of the United States of America and neither one is a *"citizen of the United States."*

And further, jurisdiction arises under Article VI of the Constitution of the United States, 1 Stat 23 (the very first Law of the United States), and Article XII Section 5 of the Constitution of the State of Alaska, as Eric Smith is bound to have a sworn and subscribed to an Oath of Office as a judicial Officer (public Officer) of one of the several States exercising the judicial Power of one of the several States and be bound thereby to support the "Constitution of the United States." Eric Smith is impersonating a judicial Officer of one of the several States, has no such "Oath of Office" sworn and subscribed to in the public record to the "Constitution of the United States, has no Civil Commission with a signature of an executive Officer of any of the several States, and it devolves upon the National government to take jurisdiction with this Habeas Corpus as the Superior Court of Alaska is acting in the administrative state and has no jurisdiction of Brown or Brown's daughter who are citizens of the several States under the protections of the Privileges and Immunities Clause.

Eric Smith, is "citizen of the United States" and he regularity empanels jury members as "citizens of the United States", and not as citizens of any of the several States.

As Brown has no court available in Alaska that has judicial Power of any of the several States to protect the Privileges and Immunities of the citizens of the several States; therefore, Brown has made application to a District Court of the United States arising under Article III in

Case 3:06-cv-00186-TMB   Document 1   Filed 08/15/06   Page 3 of 30

all Cases in Law and Equity exercising the judicial Power of the United States under the

Authority of the United States in the several States being prohibited with administrative issues

of "citizens of the United States." This is held in the adjudged decision of *Postum Cereal Co.*

*Inc. v. California Fig Nut Co.*, 272 U.S. 693, 700 (1927), to wit:

> The distinction between the jurisdiction of this court which is confined to the hearing and decision
> of cases in the **constitutional sense and that of administrative action and decision, power for**
> **which may be conferred upon courts of the District is shown in the case of** Keller v. Potomac
> Electric Company, 261 U. S. 428, 440, 442, 443, 43 S. Ct. 445, 67 L. Ed. 731. There it is pointed
> out that, while Congress in its constitutional exercise of **exclusive legislation over the District**
> **may clothe the courts of the District, not only with the jurisdiction and powers of the federal**
> **courts in the several states, but also with such authority as a state might confer on her courts**
> (Prentis v. Atlantic Coast Line Company, 211 U. S. 210, 225, 226, 29 S. Ct. 67, 53 L. Ed. 150),
> and so **may vest courts of the District with administrative or legislative functions which are**
> **not properly judicial, it may not do so with this court, or any federal court established under**
> **article 3 of the Constitution.** Of the jurisdiction of this court, we said, at page 444 of 261 U. S.
> (43 S. Ct. 449):
> **'Such legislative or administrative jurisdiction, it is well settled, cannot be conferred on this**
> **court either directly or by appeal.** The latest and fullest authority upon this point is to be found
> in the opinion of Mr. Justice Day, speaking for the court in Muskrat v. United States, 219 U. S.
> 346 (31 S. Ct. 250, 55 L. Ed. 246). **The principle there recognized and enforced on reason and**
> **authority is that the jurisdiction of this court and of the inferior courts of the United States**
> **ordained and established by Congress under and by virtue of the third article of the**
> **Constitution is limited to cases and controversies in such form that the judicial power is**
> **capable of acting on them, and does not extend to an issue of constitutional law framed by**
> **Congress for \*701 the purpose of invoking the advice of this court without real parties or a**
> **real case, or to administrative or legislative issues or controversies.'** *[Emphasis added]*

See also *Hayburn's case*, 2 U.S. 408 (1792); *U.S. v. Todd*, 54 U.S. 52 (1794); *United*

*States v. Ferreira*, 54 U.S. 40 (1851); *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211 (1995);

*Muskrat v. United States*, 219 U.S. 346, 353 (1911); *Buckley v. Valeo*, 424 U.S. 1, 123 (1976).

As held in the adjudged decision of *Bowen v. Johnston*, 306 U.S. 19, 24 (1939) when

the ***constitutional rights are violated***, the habeas corpus is a valid remedy, to wit:

> But if it be found that the court had no jurisdiction to try the petitioner, or **\*\*445 that in its**
> **proceedings his constitutional rights have been denied, the remedy of habeas corpus is**
> **available.** Ex parte Lange, 18 Wall. 163, 178, 21 L.Ed. 872; Ex parte Crow Dog, 109 U.S. 556,
> 572, 3 S.Ct. 396, 406, 27 L.Ed. 1030; In re Snow, 120 U.S. 274, 285, 7 S.Ct. 556, 561, 30 L.Ed.
> 658; Ex parte Coy, 127 U.S. 731, 751, 758, 8 S.Ct. 1263, 1268, 1272, 32 L.Ed. 274; Ex parte
> Hans Nielsen, Petitioner, 131 U.S. 176, 182, 9 S.Ct. 672, 674, 33 L.Ed. 118; In re Bonner, 151
> U.S. 242, 257, 14 S.Ct. 323, 325, 38 L.Ed. 149; Moore v. Dempsey, 261 U.S. 86, 91, 43 S.Ct. 265,
> 266, 67 L.Ed. 543; *Johnson v. Zerbst*, 304 U.S. 458, 467, 58 S.Ct. 1019, 1024, 82 L.Ed. 1461.
> *[Emphasis added]*

See also *Bowen v. Michigan Academy of Family Physicians, et al.*, 474 U.S. 667, 686 (1986); *State of Georgia v. Stanton*, 73 U.S. 50, 67 (1867).

## I.      Who is being Restrained of Liberty

Brown's daughter, who is 4 years old, is being restrained of her liberty in the territorial boundaries of Alaska and from being in the protection of Brown and traveling to one of the several States of the Union, being California with her mother Brown.  Brown's daughter is being setup for adoption terminating the natural Mother's, being Brown's fundamental rights, to have her Brown's daughter with her and under Brown's care and protection.

### A.      Three days under Authority of

## II.      Parties Whose Actions have Restrained the Liberty

Brown's daughter is being restrained of her liberty by the illegal and unlawful concerted combined actions and ORDERS of Eric Smith (purported Superior Court Judge of Alaska) directing various people to carry out his ORDERS and Brown's daughter is being held at an unknown location purportedly within the territorial boundaries of Alaska against the will of her natural mother, Brown.

## III.  Claim or Authority

### A.  Brief Overview

Eric Smith ("Smith") , who is impersonating a judicial Officer (public Officer) of the one of the several States in the Superior Court of Alaska exercising no judicial Power of any of the several States, cannot obtain cognizance of Brown or Brown's daughter who have unalienable rights (fundamental rights) secured *in the Privileges and Immunities Clause  in one of the several States of which Brown has undeniable rights (fundamental rights) as the natural mother to defend said unalienable rights (fundamental rights) of Brown's daughter until she attains the age of majority.*

Smith has applied the status of a "citizen of the United States" ("citizen of the U.S") upon the Brown and Brown's daughter, which is contrary to Brown and Brown's daughter true citizenship status.  A citizen of the U.S. means an "Individual," (see 5 U.S.C. § 552a(2) &

(13)), that is ***irrevocably conflated*** with all of the ***essential elements*** of being a citizen of the U.S., which are the following; first, the Social Security Act ("SSA") at 49 Stat. 620 as amended with the required Social Security Number ("SSN"); and, the IRS in 49 Stat 620 Titles VIII & IX; and, the denial of access to the Courts (28 U.S.C. § 1331) and any remedy in the Law in 42 U.S.C. § 405(g) & (h); and, with 26 U.S.C. § 6109(a) the Taxpayer Identification Number ("TIN") *shall be* the SSN; and, mandating the use of the SSN or TIN on the Form 1040 (OMB 1545-0074); and, the Cooperative Agreement of the Alaska Court System with Alaska Child Support Services Division ("CSSD") ("Cooperative Agreement") contained in Section VI Section A. - Title IV-D of the Social Security Act; and, 42 U.S.C. § 673b – Adoption incentive payments under Title 42 Chapter 7 Social Security; and, Chapter 7 of Social Security - 42 U.S.C. § 666(13) including ***all*** Child Support issues which includes adoption, Driver licenses and Passports; and, when rights (federal benefits within SSA) are created against the United States for Individuals, Congress can by statute for citizens of the U.S., deny access to all courts of the United States or the several States, and even deny a remedy as held in *U.S. v. Babcock*, 250 U.S. 328, 331(1919), *Dismuke v. U.S.*, 297 U.S. 167, 171-72(1936), *Garza v. Chater*, 891 F.Supp. 464, 466-67 (N.D. Ill 1995) and *Allen v. Graham*, 446 P.2d 240, 243-44 (Ct. App. Ariz. 1968).

Smith affirmed this receiving of federal benefits as the ***probable cause*** in open court of removing Brown's daughter and not some abuse or other safety issue, and as an Offer of Proof of same, Brown enters as a Offer of Proof four pages (788-791) transcribed of Case 3PA-02-00037ClP, being **Attachment 1**.

Brown was not informed that the receipt of any monies under the SSA required her to surrender all of her fundamental rights, surrender the protections of the Privileges and

Immunities Clause to all citizens of any of the several States and become a citizen of the US under the Plenary Power of Congress outside of the constitutional Protections for which limited delegation of Power from the People is secured constitutions of the several States and a grant to the Constitution of the United States.

Brown disavows in the strongest terms any association or status as a citizen of the US and the *essential elements* of a citizen of the US, and wishes not to receive any monies under the SSA in the future and will adjudicate this in the future

### B. Ultimate Facts

Brown has relied upon the holding in *People ex rel. v. Sexton et al.*, 444 N.Y.S.2d 884, 885 (Sup. Ct. NY County 1943) there are only two kinds of facts, being ultimate facts and evidentiary facts. Ultimate facts are essential for any determination or decision by the court, and evidentiary facts are necessary to prove essential or ultimate facts. See also *Perales v. Braslau's Furniture Co.*, 493 S.W.2d 638, 640 (Ct. of App. Tex. 1973); *Wichita Falls & Oklahoma Ry. Co. v. Pepper*, 135 S.W.2d 79, 84 (Sup. Ct. Tex. 1940).

In the adjudged decision of *Levins v. Rovegno*, 12 P. 161, 162-64 is the pronouncement of an ultimate fact is deduced from probative facts by a process of natural reasoning. The inference or conclusion of law is by a process of artificial reasoning. The evidentiary facts become the premises and the ultimate fact the conclusion.

*Ibid at 163,* "A presumption of fact is the natural connection of one fact with other by a combined process of proof and argument, while a presumption of law is a similar connection, artificially made by annexing a rule of law or legal incident to a particular fact proved. * * * . . . are all facts; and whether their existence or non-existence is reached by a process of natural

reasoning, or by artificial process known as a 'conclusion of law' does not in the least alter their *status* as facts."

### C. Public Officer and Creation of an Office Requirements
### Public Officer versus mere Employee

In the adjudged decision of *State v. Hawkins*, 257 P. 411, 413-418 (Sup. Ct. Mont. 1927) is an exhaustive examination of the ***essential elements*** of a  "public Officer" in any of the several States and the requirements pertaining to the creation of an "Office" in any of the several States based upon the holdings of many  decisions of numerous courts of the several States which are omitted for brevity, but are relied upon, and this holding is ibid at  418, to w

> After an exhaustive examination of the authorities, we hold that five elements are indispensable in any position of public employment, in order to make it **a public office of a civil nature**: (1) It **must be created by the Constitution or by the Legislature** or created by a municipality or other body through authority conferred by the Legislature; (2) it **must possess a delegation of a portion of the sovereign power of government,** to be exercised for the benefit of the public; (3) the **powers conferred, and the duties to be discharged, must be defined, directly or impliedly, by the Legislature or through legislative authority;** (4) the **duties must be performed independently and without control of a superior power, other than the law,** unless they be those of an inferior or subordinate office, created or authorized by the Legislature, and by it placed under the general control of a superior officer or body; (5) it **must have some permanency and continuity**, and not be only temporary or occasional. In addition, in this state, **an officer must take and file an official oath, hold a commission or other written authority, and give an official bond, if the latter be required by proper authority.** *[Emphasis added]*

This Court may not presume the existence that any of the Defendants are in fact either judicial Officers of the several States or executive Officers of the several States, *ibid* at 414, " . . . we may not presume he is an officer; it must be shown.  * * *  It must appear in the record" (citations omitted).

Another extensively researched case on "public Officer" and the requirement of the creation of an "Office" is *State v. Cole*,  148 P. 551, 552 *et seq.* (Sup. Ct. Nev. 1915) which is based upon the holdings of many decisions of numerous courts of the several States which are

omitted for brevity, but are relied upon, held *ibid* at 552 an Office can't spring into existence,

but must be created, to wit:

> An office does not spring into existence spontaneously. It is brought into existence, either under the terms of the Constitution, by legislative enactment, or by some municipal body, pursuant to authority delegated to it. "All public offices must originally have been created by the sovereign as the foundation of government."

In the adjudged decision in *Hawkins, supra.* at 415 citing the holding of *State v. Spaulding*, 72 N.W. 288, 291 (Sup. Ct. Iowa 1897), the distinction of a "position", i.e. mere

employee is explicated from an [public] officer, to wit:

> "A **position**, the **duties** of which * * * **can be changed at the will of the superior**, * * * is not an office, but a mere employment, and the incumbent is not an officer, but a **mere employee**." *[Emphasis added]*

And further, in the adjudged decision of *Hawkins, supra.*, at 417 explicating when a

"position" is created not by force of law, but by a contract of employment, it isn't an "office",

"When a position is created, not by force of law but by contract of employment, the

employment does not rise to the dignity of an office."

A "public Officer" as distinguished from an "employee" must be invested by law with a

portion of the state's sovereignty for the public benefit largely independent of the control of

others and authorized to exercise functions either of executive, legislative, or judicial character.

See *State Ex rel. Newman v. Skinner*, 191 N.E. 127, 128 (Sup. Ct. Ohio 1934);  *City of Groves

v. Ponder*, 303 S.W. 485, 488 (Tex. Civ. App. 1957);  *State ex rel. Milburn v. Pethtel*, 90

N.E.2d 686, 689 (Sup. Ct. Ohio 1950);  *Dunbar v. Brazoria County*, 224 S.W.2d 738, 740

(Tex. Civ. App. 1949);  *Application of Barber*, 100 N.Y:.S.2d 668, 670 (Sup. Ct. Albany

County, N.Y. 1951);  *Francis v. Iowa*, 98 N.W.2d 733, 735, 736 (Sup. Ct. Iowa);  *State ex rel.

Dunn v. Ayers*, 113 P.2d 785,  787 (Sup. Ct. Mont. 1941).

### D.  Eric Smith

Eric Smith ("Smith") has no Oath of Office as a judicial Officer of one of the several States to the "Constitution of the United States" arising under Article VI and 1 Stat 23, has no oath of Office as a public Officer of one of the several States to the "Constitution of the United States", has no Office created in any of the several States, and exercises no judicial Power of any of the several States. And as an Offer of Proof of this ultimate fact of Eric Smith's fiat Oath of Office ("Oath") having no Oath of Office sworn and subscribed to the "Constitution of the United States," being **Attachment 2**. Smith's Oath is to the "Constitution of the United States of America" and that most definitely isn't the same as the "Constitution of the United States", and as another ultimate fact that Smith's Oath does not meet the requirements that is in quotation marks in Article XII section 5 of the Constitution of the State of Alaska by comparison of Smith's fiat Oath to the mandated Oath of Office of all public Officer before entering into the duties of their Office.

Arising under the Constitution of the United States in Article II section 1 clause 7, before entering into the President's Office, the President takes the following Oath of Office and it is to the "Constitution of the United States", to wit:

> Before he enter on the Execution of his Office, he shall take the  following Oath or Affirmation:--
> ``I do solemnly swear (or affirm) that I  will faithfully execute the Office of President of the United States,  and will to the best of my Ability, preserve, protect and defend the  **Constitution of the United States**.'' *[Emphasis added]*

And further in 1 Stat 23, in the unambiguous language of the very first Law of the United States required that the Oath shall in the form of "I, A.B. do solemnly swear or affirm (as the case may be) that I will support the **Constitution of the United States**." *[Emphasis added]* As an Offer of Proof of the ultimate facts in the public record of 1 Stat. 23 that the Oath of Office of judicial Officers of the several States shall be to the "Constitution of the United States, I enter **Attachment 3**.

Smith has admitted to being a mere employee of the State of Alaska under his own signature, and as an Offer of Proof that Smith is a mere employee, I enter **Attachment 4**. An employee exercises no judicial Power of any of the several States and is not a judicial Officer (public Officer) of any of the several States and is bound to ministerial duties only. See *State v. Hawkins*, 257 P. 411, 413-418 (Sup. Ct. Mont. 1927); *State Ex rel. Newman v. Skinner*, 191 N.E. 127, 128 (Sup. Ct. Ohio 1934); *City of Groves v. Ponder*, 303 S.W. 485, 488 (Tex. Civ. App. 1957); *State ex rel. Milburn v. Pethtel*, 90 N.E.2d 686, 689 (Sup. Ct. Ohio 1950); *Dunbar v. Brazoria County*, 224 S.W.2d 738, 740 (Tex. Civ. App. 1949); *Application of Barber*, 100 N.Y:.S.2d 668, 670 (Sup. Ct. Albany County, N.Y. 1951); *Francis v. Iowa*, 98 N.W.2d 733, 735, 736 (Sup. Ct. Iowa); *State ex rel. Dunn v. Ayers*, 113 P.2d 785, 787 (Sup. Ct. Mont. 1941).

Smith does not have any Civil Commission under the signature of any executive Officer of any of the several States to perform the duties of any Office of any of the several States under the Seal of the Secretary of State of any of the several States and as an Offer of Proof, I have entered **Attachment 5**. To compare by natural reasoning with a real Civil Commission in Alaska of a judicial Officer, I enter as an Offer of Proof **Attachment 6**.

A civil commission issued under the signature of the person authorized and empowered to make the appointment and e under public seal for the public office is the evidence of the Appointment, being the signature of person authorized and empowered to Appoint.

This is held in the adjudged decision of the Supreme Court of the United States in *United States v. Le Baron,* 60 U.S. 73, 78 (1856), to wit:

> **"When a person has been nominated to an office by the President, confirmed by the Senate, and his commission has been signed by the President, and the seal of the United States affixed thereto, his appointment to that office is complete.** Congress may provide, as it has done in this case, that certain acts shall be done by the appointee before he shall enter on the possession of the office under his appointment. These acts then become conditions precedent to the complete investiture of the office; but they are to be performed by the

appointee, not by the Executive; all that the Executive can do to invest the person with his office has been completed when the commission has been signed and sealed; and when the person has performed the required conditions, his title to enter on the possession of the office is also complete." *[Emphasis added]*

This is also held in the adjudged decision of the Supreme Court of the United States in *Marbury v Madison*, 5 US 137, 157 (1803), to wit:

> **This is an appointment by the President, by and with the advice and consent of the senate, and is evidenced by no act but the commission itself. In such a case therefore the** commission and the appointment seem inseparable; **it being almost impossible to show an appointment otherwise than by proving the existence of a commission; still the commission is not necessarily the appointment;** though conclusive evidence of it.

In the adjudged decision of the Supreme Court of the United States of Ryder v. United States, 515 U.S. 177 (1995), the Plaintiff has a right to do a direct challenge to the appointment of public officers before the final judgment to see if there has been a trespass upon the executive power of appointment, the assure that it preserves another aspect of the Constitution's structural integrity by preventing the diffusion of the appointment power, and this being a basic constitutional protection designed in part for the benefit of litigants and citizens of the United States of America.

This is a direct challenge to lawful appointment of a judicial Officer of one of the several States and a direct challenge to the Oath of Office of a judicial Officer of one of the several States. This direct challenge is timely and not a collateral attack. This direct challenge is not frivolous, as I have rights secured in the organic Constitution of the United States of 1789 and the Bill of Rights as lawfully amended by the qualified Electors of the several States, the Laws of the United States made there under.

In the adjudged decision of Ryder v. United States, 515 U.S. 177, 182, 183 (1995) we find the following:

> [2] In the case before us, petitioner challenged the composition of the Coast Guard Court of Military Review while his case was pending before that court on direct review.   Unlike the defendants in *Ball, McDowell,* and *Ward,* petitioner raised his objection to the judges' titles before those very judges and prior to their action on his case.   And his claim is based on the Appointments Clause of Article II of the Constitution--a claim that there *has* been a **"trespass upon the executive power of appointment,"** *McDowell, supra,* at 598, 16 S.Ct., at 112, rather than a misapplication of a statute providing for the assignment of already appointed judges to serve in other districts.
>
> [3][4] In *Buckley v. Valeo, supra,* at 125, 96 S.Ct., at 685, we said "[t]he Appointments Clause could, of course, be read as merely dealing with etiquette or protocol in describing 'Officers of the United States' but the drafters had a less frivolous purpose in mind."   The Clause is a bulwark against one branch aggrandizing its power at the expense of another branch, but it is more:  it **"preserves another aspect of the Constitution's structural integrity by preventing**

Habeas Corpus                         Page 12 of 33

the diffusion of the appointment power." *Freytag v. Commissioner,* 501 U.S. 868, 878, 111 S.Ct. 2631, 2638, 115 L.Ed.2d 764 (1991). In *Glidden Co. v. Zdanok,* 370 U.S. 530, 82 S.Ct. 1459, 8 L.Ed.2d 671 (1962), we declined to invoke the *de facto* officer doctrine in order to avoid deciding a question arising under Article III of the Constitution, saying that the cases in which we had relied on that doctrine did not involve "**basic constitutional protections designed in part for the benefit of litigants.**" *Id.,* at 536, 82 S.Ct., at 1465 (plurality opinion). **We think that one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to a decision on the merits of the question and whatever relief may be appropriate if a violation indeed occurred.  Any other rule would create a disincentive to raise Appointments Clause challenges with respect to questionable judicial appointments.  [Emphasis added]**

The Court shall take mandatory judicial Notice of the adjudged decisions of the Supreme Court of the United States being,  *Ryder v. United States,* 515 U.S. 177, (1995), *Freytag v. Commissioner,* 501 U.S. 868 (1991), and *Glidden Co. v. Zdanok,* 370 U.S. 530, (1962).

As it is clearly explained and held that the *quo warranto* and *de facto* doctrine are in reality a way to deny a citizen of the United States of America a remedy and to insure that the public officers, i.e., judicial Officers, are indeed qualified as required by the Constitution. And further it does not require a litigant to perform any particular ritual to do a direct challenge.  In the adjudged decision of United States Court of Appeals in the District of Columbia in *Andrade v. Lauer,* 729 F. 2d 1475, 1496, 1497 (1983), to wit:

> The core purposes of the doctrine are served if a plaintiff challenging government action on the ground that the officials taking that action improperly hold office meets two requirements. **First, the plaintiff must bring his action at or around the time that the challenged government action is taken.  Second, the plaintiff must show that the agency or department involved has had reasonable notice under all the circumstances of the claimed defect in the official's title to office.  This does not require that the plaintiff perform any particular rituals before bringing suit, nor does it mandate that the agency's knowledge of the alleged defect must come from the plaintiff.  It does, however, require that the agency or department involved actually knows of the claimed defect.**
>
> n39 Adjudicating a challenge to an action taken by a government official on the ground that the official invalidly holds office has substantial support in the case law.  **Both the Supreme Court and lower federal courts have adjudicated challenges in a number of cases that would have been barred by the traditional form of the de facto officer doctrine.** *See, e.g., Mayor of Philadelphia v. Educational Equality League, 415 U.S. 605, 39 L. Ed. 2d 630, 94 S. Ct. 1323 (1974)* (challenge to appointment of Nominating Panel for Philadelphia School Board, in which plaintiffs sought to have actions taken by panel overturned); *Glidden Co. v. Zdanok, 370 U.S. 530, 8 L. Ed. 2d 671, 82 S. Ct. 1459 (1962)* (adjudicating challenge to conviction on ground that the judge allegedly did not hold office validly under Article III of the Constitution); *United States v. Woodley, 726 F.2d 1328 (9th Cir. 1983)* (adjudicating challenge to sentence on ground that recess appointment of judge was invalid); *Horn v. United States, 230 Ct. Cl. 18, 671 F.2d 1328, 1331 (Ct. Cl. 1982)* (adjudicating challenge to Army officer's failure to get promotion on ground that review board included ineligible officers); *cf. United States v. L.A. Tucker Truck Lines, Inc.,*

*344 U.S. 33, 38, 97 L. Ed. 54, 73 S. Ct. 67 (1952)* (defect in hearing examiner's appointment would invalidate a resulting order if objection were made at time of hearing). **[Emphasis added]**

Smith is not an independent judge of any of the several States, but is bound for performance under the Cooperative Agreement of the Alaska Court System with Alaska Child Support Services Division, Department of Revenue ("Cooperative Agreement"). The ultimate fact that the Cooperative Agreement is *irrevocably conflated* with the Social Security Act ("SSA) of 49 Stat 620 as amended contained in "VI. Other Terms and Conditions" is in section "A" of the Cooperative Agreement which I enter as an Offer of Proof of all of the facts contained therein, being **Attachment 7**, including but limited to this following essential fact, to wit:

A. In addition to the federal and state laws and regulations cited above, the parties agree to comply with the provisions of the **Title IV-D of the Social Security Act**, implementing regulations and any other federal or state law or regulation applicable to the contents, execution, performance and enforcement of this agreement. *[Emphasis added]*

And further that this Cooperative Agreement by and through the Alaska Court System of which Smith is an employee and is bound for performance of his decisions and the Alaska Court System will be rewarded or punished financially upon the approval or disapproval of the performance of "the Court" in Section B with federal audit people acting as a Court of Errors, to wit:

B. **Financial penalties or disallowances of federal financial participation** for incurred expenditure that are sustained by CSSD as a direct result of any federal audit or office review **finding of inadequate performance by the Court** under this agreement **shall be passed on to the Court** in the appropriate share upon receipt of official notice of such finding. *[Emphasis added]*

And further, the Alaska Court System in the Cooperative Agreement Section IV. C. is to "Calendar and hear civil and criminal complaints and proceedings related thereto filed by CSSD as may be required under 45 CFR 303.6(c)(2)" for the financial enrichment of the Alaska Court System.

### E.  Brown and Brown's Daughter

Brown and Brown's daughter are, American citizens, citizens of the United States of America, and Natural Born Native of the foreign state of California for Brown domiciled in the territorial boundaries of California and Natural Born Native of the foreign state of Alaska for Brown daughter who is unlawfully and illegally being held in the territorial boundaries of Alaska against the will of Brown.     Both Brown, and Brown on behalf of Brown's daughter, claim to be American citizens, citizens of one of the several States and citizens of the United States of America and neither one is a *"citizen of the United States."*

Brown and Brown's daughter have no Social Security Number in our *true name*, being Christian Names and one Family name, with all being Proper Nouns, i.e. only the first letter being capitalized.

Brown and Brown's daughter are not a "citizen of the United States" as used by Congress as found 8 U.S.C. §§1401, 1404, and 5 U.SC. 552a(2) and (13), and have not knowingly and denies any application for any federal benefit that requires to knowingly and intelligently on the record waived our inalienable rights, fundamental rights, i.e. rights secured in the Constitution and other founding documents of the United States of America and the United States.

### F.  Rights Created Against the United States for Individuals

a. Arising under the adjudged decision of *Hayburn's case*, 2 U.S. 408 (1792) the Supreme Court of the United States attempted to accommodate an "Act of Congress", in which the United States created rights against itself for the benefit widows and orphans and to regulate the invalid pensions as found in 1 Stat 325.  The judges determined that there were two serious problems, even though it was a noble thing Congress was attempting to do.  First,

the judges would be "commissioners" holding another Office and not judges in a court of record, and second the appeal or errors of the judges' opinions could not be appealed in the judiciary, but instead went to the Secretary of War in the ***Executive Branch***.  The holding was that no executive or administrative duties can be assigned to judges under Article III and said judges decisions can not be appealed or under altered by the executive Branch.

b.  As adjudicated again in 1851, this court held in the decision of *United States v. Ferreira*, 54 U.S. 40, concerning the treaty with Spain over the Florida territory obtained by the United States that judges acting in such a capacity would be commissioners, that this practice has been done by some of the judges of the Article III courts of the United States in the past, but that it would cease in the future.  It was further held that in these types of situations, that the United States could not make an appearance, as the commissioners were not clothed with true judicial powers, and were only collecting evidence to which the Secretary of Treasury made the final determination.  This problem with the Executive Branch and Commissioners was again held in the adjudged decision of *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211 (1995).

c.  In *Muskrat v. United States*, 219 U.S. 346 (1911) it was again held that Congress could not enlarge the cognizance of the class of "Cases" of the Article III Courts, and also held that judges could not exercise the judicial Power of the United States under the Authority of the United States in Cases that could be altered, overturned, or changed by the Executive or Legislative Branch.  No executive Officer or even the legislatures are authorized to sit as a court of errors on judicial acts or opinions of this Court, *ibid* at 353.

d.  And being reaffirmed again in *Buckley v. Valeo*, 424 U.S. 1, 123 (1976) that executive or administrative duties of a nonjudicial nature may not imposed on judges holding

office under Article III.  *United States v. Ferreira*, 54 U.S. 40 (1952);  *Hayburn's Case*, 2 U.S. 409 (1792).

### G.  Sovereignity of the People – Citizen Status

a.  The Declaration of Independence, which was the first political act of the American people in their independent sovereign capacity, lays the foundation of our National existence upon this broad proposition: 'That all men are created equal; that they are endowed by their Creator with certain inalienable rights; that among these are life, liberty, and the pursuit of happiness.' Here again we have the great threefold division of the rights of freemen, asserted as the rights of man. Rights to life, liberty, and the pursuit of happiness are equivalent to the rights of life, liberty, and property. These are the fundamental rights which can only be taken away by due process of law, and which can only be interfered with, or the enjoyment of which can only be modified, by lawful regulations necessary or proper for the mutual good of all; and these rights, I contend, belong to the citizens of every free government.  The American people are a free and sovereign people being a most sacred right to be fiercely defended, and this sovereignty itself remains with the people.  *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886); *Boyd v. Nebraska*, 143 U.S. 135, 159 (1892).

### H.  American citizens

a. After the Revolution of 1776 there were the *original* States known as the "united States of America" (Declaration of Independence), American citizens being any of the people of any of the original States, and a citizen of New-York, citizen of Virginia, etc.   The allegiance to said *original* State(s) and the protections derived and secured therein were from being a citizen of New-York, citizen of Virginia, etc. and this hasn't changed.

Case 3:06-cv-00186-TMB   Document 1   Filed 08/15/06   Page 17 of 30

b. The people born after July 4, 1776, i.e. *post natus*, were are all of the status of an "American citizens." *Inglis v. The Trustees of the Sailor's Snug Harbour in the city of New York*, 28 U.S. 99, 101, 120-126, 160, **164-167**. (1830). The election of a change in allegiance ". . . rests on the ground of a mutual compact between the government and the citizen or subject, which it is said cannot be dissolved by either party without the concurrence of the other. It is the tie which binds the governed to their government, in return for the protection which the government affords them." *Ibid 124.* Justice Story's pronouncement in *Shanks v. Dupont*, 28 U.S. 242, 246 (1830) was "The general doctrine, is that no persons can by any act of their own, without the consent of the government, put off their allegiance, and becomes aliens" and this has not changed.

## I. citizens of the United States of America

a. The Articles of Confederation of July 8, 1778 established the several States, i.e., "[T]he free inhabitants of each of these States, paupers, vagabonds, and fugitives from justice excepted, shall be entitled to all privileges and immunities of free citizens in the several States" and "The United States of America." Even though the Naturalization laws authorized by Congress in the Constitution of the United States were not granted at this time, *a fortiori*, there were now "citizens of the United States of America."

b. An American citizen and "citizen of the United States of America" was also used in international citizen issues as evidenced by 1 Stat 477. The uniform Rule of Naturalization granted to Congress in Article I Section 8 Clause 4 is today codified in 8 U.S.C. § 1449 as a "citizen of the United States of America", remaining unchanged. The Naturalization Certificate today is still granted to the newly naturalized man/woman as a "citizen of the United States of America." There can be doubt as to the fact that a "citizen of the United

States of America" is a citizen of any of the several States, and upon being domiciled in any of the several States, he is then clothed with the inherent and unalienable rights secured in the constitution of that particular one of the several States.

c. Congress today still enters their Office as a "citizen of the United States of America" as, and not as a "citizen of the United States."

### J. Fourteenth Amendment

a. The Fourteenth Amendment was ratified July 9, 1868 declaring that "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States;" The 14th Amendment ". . . speaks only of privileges and immunities of citizens of the United States and does not speak of the those of the citizens of the several States." *Slaughter-House Cases*, 83 U.S. 36, 24 (1872). And further *ibid 25*, ". . .but we wish to state here that it is only the former which are placed by this clause under the protection of the Federal Constitution, and that the latter, whatever they may be, are not intended to have any additional protection by this paragraph of the amendment." The privileges and immunities which belong to citizens of the several States are left to State governments and are not placed under the special care of the Federal government *ibid 27*.

b. Then *statutory* enactments of Congress under 14 Stat 27 were to clothe the Negroes as *citizens of the United States* with the same existing unalienable rights as the citizens of any of the several States, i.e. as white citizens already possessed arising under the constitutions of one of the several States in which the white citizen was domiciled, *ibid 27, sec.1*. See also 16 Stat. 144 sec. 16; 18 Stat. 336; R.S. 1878 §§ 1977, 1978.

c. The protections of the unalienable rights and allegiance of Petitioner and the Sovereignty and duty for the protection of same, rests alone with any of the several States for

it's citizens, and this still remains unaltered by the addition of the Fourteenth Amendment for "citizens of the United States" (national citizenship) as held in the adjudged decision of *United States v. Cruikshank*, 92 U.S. 542, 553- 555 (1875), to wit:

> The rights of life and personal liberty are natural rights of man. 'To secure these rights,' says the Declaration of Independence, 'governments are instituted among men, deriving their just powers from the consent of the governed.' **The very highest duty of the States, when they entered into the Union under the Constitution, was to protect all persons within their boundaries in the enjoyment of these 'unalienable rights with which they were endowed by their Creator.' Sovereignty, for this purpose, rests alone with the States. It is no more the duty or within the power of the United States to punish for a conspiracy \*554 to falsely imprison or murder within a State, than it would be to punish for false imprisonment or murder itself.**
> \* \* \*
> The fourteenth amendment prohibits a State from denying to any person within its jurisdiction the equal protection of the laws; **but this provision does not, any more than the one which precedes it, and which we have just considered, add any thing \*555 to the rights which one citizen has under the Constitution against another. The equality of the rights of citizens is a principle of republicanism**. Every republican government is in duty bound to protect all its citizens in the enjoyment of this principle, if within its power. **That duty was originally assumed by the States; and it still remains there. The only obligation resting upon the United States is to see that the States do not deny the right. This the amendment guarantees, but no more. The power of the national government is limited to the enforcement of this guaranty.** *[Emphasis added]*

### K. Privileges or Immunities of the citizens of the United States

a.   The unalienable rights secured and protected in the constitutions of the several States were not granted to the United States and was clearly withheld as stated in the 9th and 10th Amendments in the Bill of Rights.   There are few privileges and immunities of a citizen of the United States and in the adjudged decision of *Slaughter-House Cases*, 83 U.S. 36 (1872) articulated the certain privileges and immunities in the Constitution of the United States to people with the national citizenship, being a citizen of the United States imposed upon the States, *id.* at  26 being, to wit:

> [P]rohibition against *ex post facto laws*, *bills of attainder*, and *laws impairing the obligation of contracts. But with the exception of these and few other restrictions*, the entire domain of the privileges and immunities of citizens of the States, as above defined, lay within the constitutional and legislative power of the States, and without that of the Federal Government. *[Emphasis added]*

Case 3:06-cv-00186-TMB   Document 1   Filed 08/15/06   Page 20 of 30

b. Arising under the adjudged decision of *Crandal v. Nevada*, 73 U.S. 35 (1867) cited in *Slaughter-House Cases id.* at 27 are other privileges and immunities of a citizen of the United States enumerated, to wit:

> He has the ***right to come to the seat of government to assert any claim he may have upon that government***, or to ***transact any business*** he may have with it. To ***seek its protection***, to ***share its offices***, to ***engage in administering*** its functions. He has a right ***to free access to its sea-ports***, through which all the operations of foreign trade and commerce are conducted, ***to the sub-treasuries, the land offices, the revenue offices***, and the ***courts of justice in the several States***, and this right is in its nature ***independent of the will of any State over whose soil he must pass in the exercise of it. [Emphasis added]***

c. In *Slaughter-House Cases id* at 28 are some other privileges or immunities of a citizen of the United States, to wit:

> [A]nother privilege of a citizen of the United States is to demand the ***care and protection*** of the Federal government ***over his life, liberty, and property when on the high seas or within the jurisdiction of a foreign government***. . . . The ***right of peaceable assemble*** and ***petition for redress of grievances***, the ***privilege of the writ of habeas corpus***, are rights guaranteed by the Federal Constitution. The ***right to use the navigable waters of the United States***, however they may penetrate the territory of the several States, ***all rights secured to our citizens by treaties with foreign nations***, are dependent upon citizenship of the United States, and not citizenship of a State."

d. In the adjudged decision of *Williams v. State of Mississippi*, 170 U.S. 213 (1898), to wit:

> " . . . ultimately in the power of review which this court may exercise over their judgments whenever ***rights, privileges, or immunities claimed under the constitution or laws of the United States are withheld or violated***; and that the ***denial or inability to enforce in the judicial tribunals of the states rights secured by any law*** providing for the equal civil rights of citizens of the United States . . ." ***[Emphasis added]***

### L. Privileges and Immunities of the several States

a. In *Maxwell v. Dow*, 176 U.S. 581, 587-590 (1900) citing *Slaughter-House Cases*, 83 U.S. 36, 75-78 (1872) where Justice Miller did explicate the differences between the privileges and immunities of the several States and of the privileges and immunities of the citizens of the United States which *Slaughter-House Cases, supra.* has not been overturned and only some

negative history concerning applications to "persons" as in 28 U.S.C. § 1983, which has no

application to the on point explication of *Slaughter-House Cases ibid* in *Maxwell ibid 587-590.*

b.  In *Maxwell at 593* Justice Peckham for the Court states that "[T]he protection of the

citizen in his rights a citizen of the state still remains with the state."   Continuing on in

*Maxwell at 593* the principle of *U.S. v. Cruikshank*, 92 U.S. 542, to wit:

> [W]herein it is said that sovereignty, for the protection of the rights of life and personal
> liberty within the respective states, rests alone with the states. But if all these rights are
> included in the phrase 'privileges and immunities' of citizens of the United States, which the
> states by reason of the Fourteenth Amendment cannot in any manner abridge, then the
> sovereignty of the state in regard to them has been entirely destroyed, and the Slaughter-
> House Cases and United States v. Cruikshank are all wrong, and should be overruled.
> *[Emphasis added]*

c.  The *Slaughter-House Cases* and *U.S. v. Cruikshank* have never been overturned.

d.  And further, Justice Miller in the *Slaughter-House Cases*, 83 U.S. 36, 75 (1872)

"They are, in the language of Judge Washington, **those rights which the fundamental**.

Throughout his opinion, they are spoken of as rights belonging to the individual as a citizen of

a State. They are so spoken of in the constitutional provision, which he was construing. **And**

**they have always been held to be the class of rights which the State governments were**

**created to establish and secure."** *[Emphasis added]*

e.  In *Corfield v. Coryell*, 6 F.Cas. 546, 551, 552 (1823), a case the Supreme Court of

the United States has described as, "the first, and long, leading explication of the [Privileges

and Immunities] Clause," see *Austin v. New Hampshire*, 420 U.S. 656, 661 (1975), Mr. Justice

Washington, sitting as Circuit Justice declared the following on Article IV, Section 2 on the

Privileges and Immunities of the several States, to wit:

> The inquiry is, what are the privileges and immunities of citizens in the several states?  We feel
> no hesitation in confining these expressions to those **privileges and immunities which are, in**
> **their nature, fundamental; which belong, of right, to the citizens of all free governments;**
> **and which have, at all times, been enjoyed by the citizens of the several States which**
> **compose this Union, from the time of their becoming free, independent, and sovereign.**
> What these fundamental principles are, it would perhaps be more tedious than difficult to
> enumerate.  They may, however, be all comprehended under the following general heads:

Habeas Corpus                              Page 22 of 33

Protection by the government; the enjoyment of life and liberty, with the right to acquire and possess property of every kind, *552 and to pursue and obtain happiness and safety; subject nevertheless to such restraints as the government may justly prescribe for the general good of the whole.  The right of a citizen of one state to pass through, or to reside in any other state, for purposes of trade, agriculture, professional pursuits, or otherwise; to claim the benefit of the writ of habeas corpus; to institute and maintain actions of any kind in the courts of the state; to take, hold and dispose of property, either real or personal; and an exemption from higher taxes or impositions than are paid by the other citizens of the state; may be mentioned as some of the particular privileges and immunities of citizens, which are clearly embraced by the general description of privileges deemed to be fundamental:  to which may be added, the elective franchise, as regulated and established by the laws or constitution of the state in which it is to be exercised.  These, and many others which might be mentioned, are, strictly speaking, privileges and immunities, and the enjoyment of them by the citizens of each state, in every other state, was manifestly calculated (to use the expressions of the preamble of the corresponding provision in the old articles of confederation) 'the better to secure and perpetuate mutual friendship and intercourse among the people of the different states of the Union.'

f.  Citing *Corfield, ibid,* see *Slaughter-House* Cases, 83 U.S. 36, 75, 76 (1872); *U.S. v. Wheeler*, 254 U.S. 281, 296, 297 (1920); Baldwin *v. Fish and Game Commission of Montana* 436 U.S. 371, 384, 383 (1978).

**g.**  In *Maxwell at 587-590* the *Slaughter-House Cases* are examined in length with *Maxwell* supporting *Slaughter-House Cases* in that the citizen of the several States are distinct and different from a citizen of the United States; and, that the security were not intended any additional protection by the 14th Amendment paragraph to the citizens of the several States; and, that the security and protection of the citizens of the several States still rests in the several States; and, that the 14th Amendment only enforces the equal protection of all within the several States; and, and if the 14th Amendment did subject the state governments of the several States to the will of Congress, it would fetter and degrade the state governments to the censoring of Congress, departing from the structure and spirit of our institutions; and, is convinced that no change in the privileges and immunities residing in the several States has changed.

### L. Naturalization only Power Granted to Congress on citizenship

a.    There is only one legislative Power granted to Congress arising under the Constitution of the United States on citizenship and it is posited in Article I Section 8 Clause 4 "To establish an uniform Rule of Naturalization."   Congress has no legislative Power to diminish, expand, or regulate citizenship, including by the Fourteenth Amendment.

b.  The legislative Power of Congress on Naturalization is clearly delineated in *Osborn v. Bank of the United States*, 22 U.S. 738, 827 (1824), to wit:

> A naturalized citizen is indeed made a citizen under an act of Congress, but the act does not proceed to give, to regulate, or to prescribe his capacities. He becomes a member of the society, possessing all the rights of a native citizen, and standing, in the view of the constitution, on the footing of a native. *The constitution does not authorize Congress to enlarge or abridge those rights.* The simple power of the national Legislature, is to prescribe a uniform rule of naturalization, and the exercise of this power exhausts it, so far as respects the individual. The constitution then takes him up, and, among other rights, extends to him the capacity of suing in the Courts of the United States, precisely under the same circumstances under which a native might sue. He is *828 distinguishable in nothing from a native citizen, except so far as the constitution makes the distinction. The law makes none.

c.  See also *United States v. Wong Kim Ark*, 169 U.S. 649, 703,704 (1898); *Schneider v. Rusk*, 377 U.S. 163, 166, 167 (1964); *Mackenzie v. Hare*, 239 U.S. 299, 31`0 (1915).

d.  In *Afroyim v. Rusk*, 387 U.S. 253, 267, 268 (1967), which also cited *Osborn ibid at 827*, the Court held that the Fourteenth Amendment does protect *every citizen of this Nation* against a congressional forcible destruction of his citizenship, to wit:

> Citizenship is no light trifle *268 to be jeopardized any moment Congress decides to do so under the name of one of its general or implied grants of power.  In some instances, loss of citizenship can mean that a man is left without the protection of citizenship in any country in the world--as a man without a country.  Citizenship in this Nation is a part of a cooperative affair. Its citizenry is the country and the country is its citizenry.  The very nature of our free government makes it completely incongruous to have a rule of law under which a group of citizens temporarily in office can deprive another group of citizens of their citizenship.  We hold that the Fourteenth Amendment was designed to, and does, protect every citizen of this Nation against a congressional forcible destruction of his citizenship, whatever his creed, color, or race. Our holding does no more than to give to this citizen that which is his own, a constitutional right to remain a citizen in a free country unless he voluntarily relinquishes that citizenship.

e. In *Smith v. Turner*, 48 U.S. 283, 394 (1849) "It is admitted that, in regard to the commercial, as to other powers, the States cannot be held to have parted with any of the attributes of sovereignty which are not plainly vested in the Federal government and inhibited to the States, either expressly or by necessary implication. This implication may arise from the nature of the power" with Naturalization being one the only Power authorized to Congress concerning citizenship.

## XVI. Citizen of the United States is primary citizenship and State citizenship is secondary

a. The inherent and unalienable rights of the people with their primary citizen status has always been secured in the *original* States and in the several States long before the United States was established. The created entity of the United States can not rise above its creators, being the people of *original* States and now the people of the several States.

b. There have been feeble attempts to encourage the primary citizen status as citizens of the United States as found in two *dissenting opinions* in *Slaughter-House Cases*, 83 U.S. 36, 112, 113 (1872), Justice Bradley *in dissenting opinion* stated which is cited in the *dissenting opinion* of Justice Field in *U.S. v. Wong Kim Ark.*, 169 U.S. 649, 677, 678 (1898) also in  to wit:

> The question is now settled by the fourteenth amendment itself, that citizenship of the United States is the primary citizenship in this country; and that State citizenship is secondary and derivative, depending upon citizenship of the United States and the citizen's place of residence.

c. But of course, the privileges and immunities of the several States secured in the Constitution remain unaltered. And further, if a "citizen of the United States" was in fact the primary citizen status of our constitutional Republic, with Congress' only granted legislative Power on Naturalization  arising under Article I Section 8 Clause 4 , the new members to our

Republic would be a "citizen of the United States" and not a "citizen of the United States of America."

   d.  And further, Congress would enter their constitutional Offices as a "citizen of the United States", but they enter said Offices as "citizens of the United States of America."

   e.  Another major problem would be that the "executive Power is vested a President of the United States of America" arising under Article II section 1 clause 1 and not in the President of the United States.

### M.  Citizen of the United States and Social Security

   a.  Brown and Brown's daughter do not claim to be a *citizen of the United States!* Brown and Brown's daughter are not an individual or a "citizen of the United States" as used by Congress in 5 U.S.C. § 552 or under the Social Security Act (49 Stat 620 as amended) wherein Brown and Brown's daughter would have relinquished their constitutionally secured Rights for possible gratuities or benefits, or under the same status as declared by Congress to Indians in 25 U.S.C. §§ 1401, 1404 as "citizens of the United States" that are *outside of the secured Rights of the people of the United States secured in the  Constitution of the United States and constitutions of the several States.* .  See  42 U.S.C. § 405(g-h);  *United States v. Babcock*, 250 U.S. 328, 331 (1919);  *Dismuke v. United States*, 297 U.S. 167, 171-172 (1936);  *Fleming v.* Nestor, 363 U.S. 603, 609-612 (1960);  *Hayburn's Case*, 2 Dall. 409, 409-411 (1792);  *United States v. Ferreira*, 13 How. 40, 48-50 (1851);  *Muskrat v. United States*, 219 U.S. 346, 352-362 (1911).

   b.  Brown and Brown's  are each an "American citizen"  having the right of Election and this was firmly established that said status attached for those who were *post natus* of the Declaration of Independence of July 4, 1776.  See *Inglis v. The Trustees of the Sailor's Snug*

*Harbour of the city of New York*, 28 U.S. 99, 9, 16-18, 25, 40, **42-43** (1830).  It is not, nor can it be disputed that the Petitioner is Natural born citizen and American citizen.

c.  Brown and Brown's daughter are each a "citizen of the United States of America" and this status attaches to any man or woman that is Native Born or is Naturalized. Naturalization is the *only Power* granted to Congress concerning any type of citizenship arising under the "Constitution of the United States" and this is evidenced today and codified in 8 U.S.C. § 1449 by "was entitled to be admitted a *citizen of the United States of America*, thereupon ordered that the applicant to be admitted as a citizen of the United States of America." *[Emphasis added]*  The status of being an American citizen and a "citizen of the United States of America" is also evidenced by 1 Stat 477.

d.  All of the members of the jury and voters in Alaska are "citizens of the United States" and "residents of Alaska" and not "citizens of Alaska" and this is evidenced by ©AS 09.20.010 and ©AS 15.05.010 respectively. This is exactly the same citizenship and residency status as under the Territory of Alaska found in *Anderson v. Scholes*, 83 F.Supp 681, 687 (DC Territory of Alaska 1949).

e.  Indian and Alaska Natives are also "citizens of the United States" and residents therein with SSNs. See 8 U.S.C. § 1401 & 1404 with a constitution, i.e. Bill of Rights, enacted by Congress in 25 U.S.C. § 1302.  Pray tell how can the Brown and Brown's daughter be a "citizen of the United States" as their *citizen status* and a citizen of one of the several States with inalienable rights secured in the Constitution of the United States and a constitution of any of the several States be on an equal footing with an Indian or Alaska Native that is a "citizen of the United States" as his *citizen status* and resident of Alaska that is under the plenary power of Congress?  See *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 57 (1978).

The answer of course is that a "citizen of the United States" with the Social Security Number attached has no constitutionally secured rights.

f. In the adjudged decision of the *United States v. Cruikshank*, 92 U.S. 542, 554 (1875) the fourteenth amendment secures "the individual from the arbitrary exercise of the powers of government, unrestrained by the established principles of private rights and distributive justice."   As Brown and Brown's daughter each owes allegiance to two sovereignties, one being the citizen of any of the several States their ***citizen status***, and possibly only a "citizen of the United States" for issues of national concern, and Brown and Brown's daughter can claim the protections of both citizenships within its respective jurisdiction, *id* at 550, 551.   And further, the United States has no voters of it's own, *id* at 555.

The unalienable rights of Petitioner and the Sovereignty and duty for the protection of same, rests alone with any of the several States for it's citizens, and this still remains unaltered by the addition of the Fourteenth Amendment for "citizens of the United States" (national citizenship) as held in the adjudged decision of *Cruikshank, id*  at 553, 554 and 555

g.   The citizens of the United States of America that ordained and established the government of the United States defined its powers by a Constitution.   The government created consisted of a political system that was twofold, a government of each of the several States with limited delegation of Power and then a grant of this limited delegation of Power to a government of the United States.   The independent governments of the several States brought forth privileges and immunities from the Articles of Confederation for the complete protections of their citizens, *United States v. Cruikshank*, 92 U.S. 542, 549-550 (1875).   It is "the very highest duty of the States" to protect all persons within their boundaries in their enjoyment of the unalienable rights as "*Sovereignty*, for this purpose, *rests alone with the States*." *Ibid,* 553.

"The right to vote in the States comes from the States," *Id.* 555, and this is the primary reason that the citizen of one of the several States, and not the United States, shall always exist under the guaranteed "Republican Form of Government" as found in the Constitution's Article IV, section 4.

h. A citizen's allegiance "is a political obligation" that depends on the enjoyment of the protection of government and not on ownership of land within one of the several states of the union of the United States. See *Wallace v. Harmstad*, 44 Pa. 492. Allegiance "binds the citizen to the observance of all laws" of his own sovereign, see *Adams v. People*, 1 N.Y. 173, and may be an absolute and permanent obligation or a qualified and temporary one. The doctrine of allegiance "rests on the ground of a mutual compact between the government and the citizen, which it is said cannot be dissolved by either party without the concurrence of the other. It is the tie which binds the governed to the government, in return for the protection which the government affords them," see *Inglis v. The Trustees of the Sailor's Snug Harbour in the city of New York* , 28 U.S. 99, 118 (1830). "The doctrines of allegiance must be looked for in the law of the state that has jurisdiction of the soil," see *Inglis* at 125. "Allegiance may be dissolved only by *mutual consent* of the government and its citizens" at *id* 118. Petitioner has NOT attempted to release by any act the renouncement of his citizenship the elective choice of a citizen of one of the several States for the exclusive status and primary citizen status to being a "citizen of the United States" as a ***primary citizen status***. It does not follow that a government can compulsively oblige the Petitioner to renounce his allegiance to his birthright to claim only the citizenship of a national government when he was born as a citizen to two sovereign governments, one of the several States and of the Nation. A citizen must, by some act, distinctly and knowingly renounce his allegiance in order to divest himself of

citizenship.  See *Carlisle v. U.S.*, 83 U.S. 154, 154 (1872). Petitioner does not, will not and has not divested his allegiance to citizenship of one of the several States.  Even if it could be declared that no citizen of one of the several States exists today, the sovereign state government has not noticed the Petitioner that it has dissolved or abolished such citizenship. There has been no mutual consent for the act to occur and therefore it must stand that the sovereign state citizenship does exist.

### N. Place where Restrained

Brown's daughter is being restrained of her liberty in the territorial boundaries of Alaska, being the land and not tidewaters or some other contrivance.

And further the Brown's daughter is being restrained of her liberty in purportedly a foster home in the territorial boundaries of Alaska and from traveling to California being one of the several States under the care and protection of Brown, the natural Mother.

### V. Petitioner should be Released from the Foster Home

Brown's daughter should be released from the foster home or wherever Brown's daughter is being held against the wishes of  the natural mother Brown under the ORDERS of Smith who exercises no judicial Power of any of the several States, has no Office established with Power and Duties in any of the several States, has no Oath of Office as a judicial Officer of any of the several States, isn't a public Officer in any of the several States, has no Civil Commission issued with a signature under the executive Power of any of the several States, isn't an independent judge in any of the several States, and receives pecuniary benefits for the Alaska Court System on his ministerial actions which are checked for compliance with the wishes of federal agency personell.

### Remedy

Brown's daugher should be immediately released from custody of the party or parties who are unknown under the ORDERS of Smith and others unknown; and, the liberty of the Brown's daughter is hereby returned to the natural mother, being Brown.

**My Hand,**

*Alice Brown*

Habeas Corpus                              Page 30 of 33