UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | : : : | MDL No. 2592 |
| | : | SECTION L |
| THIS DOCUMENT RELATES TO: | : : | |
| *All Cases* | : : : | JUDGE ELDON E. FALLON MAGISTRATE JUDGE NORTH |

## ORDER AND REASONS

The Court has before it a motion to distribute the common benefit fee among counsel who performed common benefit work which produced a successful result in this multi district products liability litigation involving the prescription drug Xarelto. To put this matter in perspective a brief review of this litigation is appropriate.

**I.      BACKGROUND**

Beginning in 2014, lawsuits were filed in federal courts throughout the nation against Defendant manufacturers, Bayer Corporation, Bayer Healthcare LLC, Bayer Healthcare Pharmaceuticals Inc., Bayer Healthcare AG, Bayer Pharma AG, Bayer AG, and Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC, Janssen Ortho LLC and Johnson & Johnson. In their suits the Plaintiffs specifically allege that they or their family members suffered severe bleeding and other injuries due to Xarelto's allegedly inadequate warning label as well as other theories.

The Judicial Panel on Multidistrict Litigation determined that the Plaintiffs' claims involved common questions of fact, and that centralization under 28 U.S.C. §1407 would serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. Therefore, on December 12, 2014, the Judicial Panel on Multidistrict Litigation

consolidated the Plaintiffs' Xarelto claims into a single multidistrict proceeding bearing the designation of MDL 2592. This multidistrict litigation was assigned to Judge Eldon E. Fallon of the United States District for the Eastern District of Louisiana to coordinate discovery and other pretrial matters. Subsequent Xarelto cases filed in federal courts have been transferred to this district court to become part of MDL 2592 as "tag along" cases; at its peak, the Court had over 30,000 cases in MDL 2592.

In February 2015 the Court issued Pretrial Order #7 appointing attorneys to the Plaintiffs' Steering Committee (PSC). R. Doc. 169. The Court first appointed Leonard Davis and Gerald Meunier to serve as Co-Plaintiffs' Liaison Counsel and then on February 9, 2015, the Court appointed twelve attorneys to the PSC, designating Andy Birchfield and Brian Barr as Co-Lead Counsel for Plaintiffs. R. Doc. 17623-1 at 9. After appointing the Plaintiff leadership of this MDL, the Court met with this group and suggested that they handle their tasks by sub-committees wherever possible. Thereafter, at every monthly meeting the Court announced to all attending that if any plaintiff attorney wished to perform work on this MDL, they should contact Liaison Counsel and advise them of their interest. (This process was an attempt to afford young and diverse attorneys an opportunity to participate in an MDL, and many did as coordinated counsel). Since their appointment, the members of the PSC, their firms, and coordinated counsel have worked on behalf of the plaintiffs in this litigation. The PSC and coordinated counsel have expended considerable time and resources to develop the Plaintiffs' claims, including but not limited to the following: (1) conducting no less than 83 depositions of Defendants' executives, scientists, and other employees; (2) submitting a total of sixteen (16) thoroughly prepared expert reports issued by expert witnesses retained on Plaintiffs' behalf; (3) engaging in extensive briefing on dispositive issues, as well as on numerous critical evidentiary matters; (4) being involved in over 3,000 Orders

entered by this Court to resolve discovery disputes, trial issues, and related matters; and (5) participating in a total of six bellwether trials conducted both in this MDL and in parallel state court proceedings in Pennsylvania, each of which proceeded for approximately two weeks and involved the presentation of evidence including substantial expert witness and corporate testimony.

After years of discovery and bellwether trials, the PSC and Defendants entered into settlement discussions and reached a settlement in early 2019. On March 25, 2019 the PSC and the Defendants announced an opt-in settlement agreement that was negotiated over the course of several months, reflected compromises on both sides, and was informed by years of pretrial discovery, motion practice, and trials. This opt-in settlement agreement is in the total sum of $775,000,000 and resolves the claims of the eligible Xarelto claimants who opted into the agreement who suffered bleeding events, strokes, or a cerebrovascular accident (CVA), venous thromboembolism (VTE), blood clots, and other various injuries associated with their use of Xarelto. R. Doc. 17623-1 at 2-3.

Since the announcement of the settlement program the PSC has engaged in efforts to explain the details of the program and to ensure that the program is administered fairly and efficiently. The PSC's efforts in this regard have included the following: a number of "town hall" style meetings in various cities, as well as webinars and "all counsel" conference calls to explain all aspects of the settlement program; hiring and working with the Settlement Special Master to devise a settlement protocol that offers the fairest distribution of the settlement proceeds; hiring and working with a Settlement Administrator and Lien Resolution Administrator, respectively; and complying with numerous pretrial orders and case management orders to effectively manage the litigation and assist in the administration of the settlement program. As mentioned, this is an

opt-in settlement program and thus far over 99% of the plaintiffs in this litigation have chosen to opt into the settlement.

The settlement was fully funded by the Defendants as of January 17, 2020. R. Doc. 17623-1 at 4. On March 6, 2020, the PSC filed a motion seeking a common benefit fee. The motion was set for hearing in open court on March 19, 2020 following the monthly status conference. After hearing from counsel and considering the matter, the Court issued its Order and Reasons on March 23, 2020, setting the Common Benefit Fee in this case at 12% of the amount of the settlement to be deducted from the contract attorney's fee with the client and a cost reimbursement of 2.75%. R. Doc. 17634. Approximately 70 firms have applied for common benefit fees and costs. It is now appropriate to determine how these funds are to be allocated among counsel who performed the common benefit work which produced the result in this matter.

## II.    ALLOCATION

After examining the material submitted by the fee applicants, consulting the records kept by the Court appointed CPA, reviewing the analysis of the Fee Allocation Committee and drawing on the Court's experience in this case accumulated during the course of over six years, the Court now concludes that the time logged and work performed by each applicant is commensurate with the recommended allocation.  In view of the fact that no one objected to the Fee Allocation Committee's recommendation, the Court will adopt the recommendation and allocate common benefit and costs.

## III.    CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED that the fee allocation recommendation proposed by liaison counsel, R. Doc. 17830-1, is ADOPTED and the corresponding fee awards and costs DISBURSED to the enumerated law firms in the following amounts plus accumulated interest:

| FEE APPLICANT | RECOMMENDED COMMON BENEFIT FEE ALLOCATION | RECOMMENDED COMMON BENEFIT COST REIMBURSEMENT |
|---|---|---|
| **Aylstock Witkin Kreis & Overholtz** | $7,350,000 | $1,707,347.26 |
| **Baron & Budd** | $1,200,000 | $200,857.87 |
| **Barrios Kingsdorf** | $1,250,000 | $318,974.17 |
| **Beasley Allen** | $10,500,000 | $1,523,327.68 |
| **Bruno & Bruno** | $100,000 | $393.66 |
| **Capitelli Wicker** | $50,000 | $254.53 |
| **Childers Schlueter** | $500,000 | $23,030.56 |
| **Cory Watson** | $100,000 | $32,966.96 |
| **Douglas & Londobn** | $7,200,000 | $1,001,936.82 |
| **Douglas Haun** | $15,000 | $0 |
| **Feldman & Pinton** | $1,200,000 | $55,018.74 |
| **Ferrer & Poirot** | $1,150,000 | $928,234.47 |
| **Gainsburgh Benjamin** | $6,500,000 | $853,421.10 |
| **Gallagher Law Firm** | $50,000 | $18,037.38 |
| **Goza Honnold** | $5,700,000 | $1,022,855.54 |
| **Grant Eisenhofer** | $250,000 | $182,204.99 |
| **Heninger Garrison** | $250,000 | $92,348.85 |
| **Herman Herman Katz** | $6,500,000 | $927,659.23 |
| **Irpino Law** | $200,000 | $5,521.02 |
| **Keller Rohrback** | $150,000 | $90.81 |
| **Kirtland & Packard** | $50,000 | $0 |
| **Lambert Firm** | $3,300,000 | $195,968.01 |
| **Levin Papantonio** | $10,500,000 | $1,567,414.99 |
| **Levin Sedran** | $6,500,000 | $1,118,497.10 |
| **Linville Firm** | $55,000 | $0 |
| **Mahone Law Firm** | $10,000 | $718.35 |
| **Morgan & Morgan** | $500,000 | $905,104.47 |
| **Motley Rice** | $500,000 | $226,176.85 |
| **Nast Law Firm** | $2,300,000 | $1,090,289.62 |
| **Ross Feller Casey** | $250,000 | $911,366.45 |
| **Schlichter Bogard & Denton** | $7,200,000 | $1,347,040.11 |
| **Seeger Weiss** | $1,600,000 | $920,518.85 |
| **Stag Liuzza** | $80,000 | $0 |

| | | |
|---|---|---|
| **Weitz & Luxenberg** | $3,100,000 | $975,835.93 |
| **Whitehead Law Firm** | $500,000 | $39,610.51 |
| **Settlement Administration** | $0 | $1,672,066.62 |
| **TOTAL** | **$86,660,000.00** | **$19,865,089.50** |

**IT IS FURTHER ORDERED** that the disbursal agent Archer Systems, LLC, is authorized to withhold from the accrued interest portion of the funds to be disbursed, the amount required to pay taxes on the interest earned on the funds.

**IT IS FURTHER ORDERED** that each firm entitled to receive funds under this Order provide the disbursal agent a Social Security number or Tax Identification number prior to receiving any distribution.

The Court finds that, pursuant to Fed. R. Civ. P. 54(b) there is no just reason for delay of entry of final judgment with respect to the foregoing.

New Orleans, Louisiana, on this 28th day of September 2020.

_United States District Judge_