UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO: ALL CASES | JUDGE ELDON E. FALLON |
| | MAGISTRATE NORTH |

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO AMEND PRESERVATION ORDERS TO PERMIT
RESUMPTION OF NORMAL DOCUMENT RETENTION POLICIES AND TO
<u>RELIEVE DEFENDANTS OF THEIR PRESERVATION OBLIGATIONS</u>**

<u>INTRODUCTION</u>

After nearly six years of Xarelto litigation -- including six bellwether trials that resulted in defense judgements, and the settlement or dismissal of over 99.9% of the Plaintiffs' lawsuits -- the Janssen and Bayer Defendants move for an order relieving them of their preservation obligations under Pretrial Order ("PTO") Nos. 1 (Doc. 2), 15 (Doc. 897), 15A (Doc. 1301) and 15B (Doc. 1477). This Court adopted the preservation orders early in the proceeding to facilitate document preservation and production. These Orders required Defendants to, among other things, preserve documents, email, and other media and to distribute "Hold Notices" to employees who were reasonably believed to be in possession of information relevant to the claims and defenses in this proceeding. Now that the litigation has reached its final stage, Defendants seek permission to resume their normal document retention policies and to be relieved from the burdensome obligations of preserving documents that are no longer needed for a fair adjudication of the remaining cases. The circumstances supporting this Motion are:

1

1. Out of what was once over 30,000 cases relating to Xarelto, there remain only seven personal injury cases that have not been settled or dismissed -- five in the MDL (three of which are the subject of pending motions to dismiss) and two in the PCCP (one of which is on appeal by plaintiffs after being dismissed with prejudice and the other is subject to a pending motion to dismiss) -- and one economic injury case filed five years ago in 2015 by health insurers which is now the subject of a dismissal motion.[1]  No new Xarelto case has been filed in the past year; the last action was filed on November 19, 2019.

2. At the Court's request, the PSC prepared a Trial Package that contains all of the key documents and materials that they determined are needed by the remaining plaintiffs to prosecute their cases, which has been "placed on a platform accessible by counsel upon their execution of the confidentiality agreement required by PTO No. 12." See Reply of Plaintiffs' Steering Committee to Certain Movants' Objections, etc. (R. Doc. 17502, filed under seal) at 2.  The Trial Package was described by the PSC to the Court as containing, among other things, the records from the six bellwether trials, 83 company-witness depositions, and extensive briefing on Daubert and dispositive motions. Id.  The Court acknowledged the importance of the Trial Package in its order overruling objections to the parties' settlement, noting that "[t]his material is available to any litigant who decides not to opt into the settlement program and instead proceeds to trial." See Order & Reasons, Dec. 17, 2019 (R. Doc. 17521) at 3; see also id. at 8.

3. It is extraordinarily burdensome and expensive for Defendants to have to continue to comply with the preservation obligations imposed under PTOs 1, 15, 15A and 15B.  Millions of documents have been preserved that are not part of the Trial Package and not reasonably necessary

---

[1] If the Court grants relief, Defendants will seek a parallel order from the Court in the PCCP.

for the prosecution of these lawsuits. Moreover, because Xarelto remains on the market and continues to be prescribed by physicians, millions of additional documents are required to be preserved on a going forward basis, even though the few remaining cases arise from historical events in the past. Collectively, Defendants have <u>several thousand</u> employees who are subject to the Xarelto litigation hold. As noted above, these employees continue to generate and receive Xarelto-related email and other documents in the ordinary course of business. Because of the preservation requirements Defendants cannot discard even the most mundane or routine business communications, causing unnecessary accumulation of documents that will never be needed, in this litigation or elsewhere, and which substantially adds to Defendants' cost of data storage and IT support.

Considering that (1) the Xarelto litigation is largely resolved with hardly any cases remaining, (2) the considerable burden and expense to Defendants of having to continue to preserve huge numbers of documents relating to Xarelto, and (3) the lack of prejudice to the remaining Plaintiffs given the availability of the Trial Package, Defendants request that they be permitted to resume their normal document retention policies and be relieved from PTOs 1, 15, 15A and 15B. See Point A below.

Alternatively, if any remaining Plaintiff requests continuing preservation of Xarelto documents beyond the Trial Package made available by the PSC, Defendants request that the Court enter an order requiring such Plaintiffs to pay the reasonable cost of compliance as permitted by Fed. R. Civ. P. 26(c). See Point B below.

For these and the following reasons, Defendants' motion should be granted.

# ARGUMENT

A.     **There is good cause to relieve Defendants of their preservation obligations**

This Court may amend its discovery orders and discharge a parties' discovery obligations upon a showing of good cause. *King v. Dogan,* 31 F.3d 344, 346 (5th Cir.1994) ("Discovery matters are entrusted to the 'sound discretion' of the district court."); Fed. R. Civ. Proc. 26(c)(1) ("[C]ourt may, for good cause, issue an order [limiting discovery] to protect a party from annoyance, embarrassment, oppression, or undue burden or expense...."). In the case of preservation orders, courts may "reasonably limit the time frame for discovery" and limit the obligations of the parties. *US ex rel. King v. Solvay*, Case No. H–06–2662, 2013 WL 820498, at *4 (S.D. Tex. March 5, 2013).

Here, the Court's broad preservation and discovery orders facilitated the production by Defendants of over 100 million of pages of hard copy, email, and other electronic documents and media and databases. In adopting these orders, the parties and the Court considered the "proportional…needs of the case, . . . the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. . ." Fed. R. Civ. Proc. 26(b)(1); *Orbit One Commc'ns, Inc. v. Numerex Corp.,* 271 F.R.D. 429, 436 n. 10. (S.D.N.Y.2010) ("Reasonableness and proportionality are surely good guiding principles for a court that is considering imposing a preservation order...."). *See* PTO 15 ("The preservation obligations set out herein are explicitly intended to be reasonable in scope and to be interpreted and applied in a manner consistent with the factors set forth in Rule 26").

Now that a Trial Package containing the most important and relevant documents has been prepared by the PSC – after comprehensive fact and expert discovery and six bellwether trials—the purposes of the preservation orders have been fulfilled. As a result, the preservation orders are no longer necessary, and Defendants request that the Court relieve them of their preservation obligations under the prior orders of this court including the following:

1. **Pretrial Order No. 1** ("PTO 1") (modified by subsequent Orders), Paragraph 13, entered on December 17, 2014 required the parties "to preserve evidence that may be relevant to this action" including "documents, data, and tangible things in possession, custody and control of the parties to the action…"

2. **Pretrial Order No. 15** ("PTO 15," i.e. the Preservation Order) entered on May 4, 2015 states, "all Parties shall take reasonable steps to ensure the preservation of documents, data, and tangible things relevant to claims or defenses in this Litigation."  The order required Defendants to disseminate "Legal Hold Notices to Defendants' employees and/or departments reasonably believed to possess such material".  The parties also were required to "disable any auto-delete features in use as to any system or device to the extent reasonably known and necessary to preserve materials subject to this Order and, with respect to Defendants, [to] terminate or indefinitely suspend deletion policies and schedules for all employees and/or departments likely to possess information relating to Xarelto defenses and the claims at issue in this Action…"

3. **Pretrial Order No. 15A** ("PTO 15A") entered on September 17, 2015 set forth preservation obligations with respect to voicemail, text messages and instant messaging and required certain individuals to "refrain from initiating text messages, instant messages or voicemail for substantive communications relating to Xarelto; or (b) preserve or transcribe all

such text messages, instant messages or voicemails if the employee initiates such a substantive communication."

4.      **Pretrial Order No. 15B** ("PTO 15B") entered on October 21, 2015 amended PTO 15A to state "[f]rom September 17, 2015 forward, the only obligation [was] to preserve newly created text messages, instant messages or voicemail."

For the reasons previously stated these Orders should be amended to relieve Defendants of any further obligations as set forth in Proposed Case Management Order No. 14 attached hereto.

**B.      The Court should require any plaintiff seeking to continue the preservation orders to pay costs associated with compliance**

To the extent that any plaintiff to this proceeding seeks to continue the preservation obligations, Defendants respectfully request that they be required to pay the costs of compliance.

Federal Rule of Civil Procedure 26(c) permits a court to require a party seeking discovery to pay the reasonable costs to be incurred by the responding party necessary to comply with the discovery demand. Fed. Civ. Pro. 26(c) ("The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."); *Treppel v. Biovail*, 233 F.R.D. 363, 373 (S.D.N.Y. 2006) ("If the demanding party seeks the preservation of information that is likely to be of only marginal relevance but is costly to retain, then rather than deny a preservation order altogether, a court may condition it upon the requesting party assuming responsibility for part or all of the expense."); *see Murphy Oil USA, Inc. v. Fluor Daniel, Inc.*, 2002 WL 246439 (E.D. La. Feb. 19, 2002) (citing *Rowe Entm't, Inc. v. William Morris Agency, Inc.,* 205 F.R.D. 421, 429 (S.D.N.Y.2002); *Southern Capitol Enterprises, Inc. v. Conseco Services, L.L.C.*, Case No. 04-040-JJB-SCR, 2005 WL 8155415 (M.D. La. Oct. 6, 2005) (citing tests applied to cost shifting);

In considering whether to shift the costs of discovery, the Middle District of Louisiana in *Southern Capitol Enterprises, Inc.* adopted the factors set forth in *Zubulake v. UBS Warburg, L.L.C.*, 217 F.R.D. 309, 316 (S.D.N.Y. 2003). 2005 WL 8155415, fn 5, at *4. Although *Southern Capital Enterprises* involved a new discovery demand, application of the *Zubulake* factors here clearly warrants cost shifting. The *Zubulake* factors include "(1) the extent to which the request is specifically tailored to discover relevant information; (2) the availability of such information from other sources; (3) the total cost of production, compared to the amount in controversy; (4) the total cost of production, compared to the resources available to each party; (5) the relative ability of each party to control costs and its incentive to do so; (6) the importance of the issues at stake in the litigation; and (7) the relative benefits to the parties of obtaining the information."[2]

Applying these factors here, at the outset of this proceeding, the parties considered the scope of discovery potentially relevant to the claims and defenses in this proceeding, and Defendants expended substantial resources and time to preserve and produced millions of documents and to respond to other expansive discovery demands. The PSC culled these documents in preparation for six bellwether trials, company witness and expert depositions, and for a multitude of Daubert and dispositive motions, resulting in a Trial Package that can be used by any remaining Plaintiff. Because the Trial Package is available to the few remaining Plaintiffs, continued compliance with the preservation orders is unnecessary. Accordingly, any Plaintiff who

---

[2] In *Murphy Oil*, this Court previously identified several factors based on *Rowe Entm't, Inc. v. William Morris Agency, Inc.,* 205 F.R.D. 421, 429 (S.D.N.Y.2002), including "(1) the specificity of the discovery requests; (2) the likelihood of discovering critical information; (3) the availability of such information from other sources; (4) the purposes for which the responding party maintains the requested data; (5) the relative benefits to the parties of obtaining the information; (6) the total cost associated with production; (7) the relative resources available to each party." 2002 WL 246439. *Rowe* was decided before *Zubulake* and both sets of factors warrant cost shifting here. *See Southern Capitol Enterprises,* 2005 WL 8155415.

seeks continued compliance with the obligations under PTO Nos. 1, 15, 15A and 15B should pay the costs associated with compliance.

C.  **The proportionality requirements of Fed.R.Civ.P. 26(b)1 further support the relief requested herein.**

The proportionality factors set forth in Rule 26(b)(1) apply to questions related to document preservation. *See* The Sedona Conference, *Commentary on Proportionality in Electronic Discovery*, 18 Sedona Conf. J. 141, 151 (2017); *see also The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 Sedona Conf. J. 1, 67 (2018) ("Proportionality should be considered and applied by the court and parties to all aspects of the discovery and production of ESI including: preservation").[3] The proportionality factors include: (1) the importance of the issues at stake in the action, (2) the amount in controversy, (3) the parties' relative access to relevant information, (4) the parties' resources, (5) the importance of the discovery in resolving the issues, and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit. FED. R. CIV. P. 26(b)(1).

In its notes discussing the 2015 amendments to Rule 37(e), the advisory committee stated that "a factor in evaluating the reasonableness of preservation efforts is proportionality." *See* FED. R. CIV. P. 37(e), advisory committee's note. The advisory committee acknowledged that because federal circuits had adopted significantly different standards regarding the imposition of sanctions for failure to preserve ESI, litigants were expending "excessive effort and money" on preservation to minimize their exposure to severe sanctions in the event a court found their preservation efforts lacking. *Id.* Drawing on the language of this advisory committee's note, courts regularly assess proportionality in evaluating a party's preservation obligation. *See, e.g., Sosa v. Carnival Corp.*,

---

[3] The Sedona Conference is a nonprofit legal policy research and education organization that has a working group comprised of judges, attorneys, and electronic discovery experts who are dedicated to resolving electronic discovery issues.

No. 18-20957-CIV, 2019 WL 330865, at *6 (S.D. Fla. Jan. 25, 2019); *Small v. Univ. Med. Ctr.*, No. 2:13-cv-0298-APG-PAL, 2018 WL 3795238, at *65 (D. Nev. Aug. 9, 2018); *Bouchard v. United States Tennis Assoc., Inc.*, No. 15 CV 5920 (AMD)(LB), 2017 WL 10180425, at *6 (E.D.N.Y. Aug. 10, 2017); *Creative Movement & Dance, Inc. v. Pure Performance, LLC*, No. 1:16-CV-3285-MHC, 2017 WL 4998649, at *14 (N.D. Ga. July 24, 2017); *Hsueh v. New York State Dep't of Fin. Servs.*, No. 15 Civ. 3401 (PAC), 2017 WL 1194706, at *4 (S.D.N.Y. Mar. 31, 2017); *Cat3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 495 (S.D.N.Y. 2016); *Matthew Enterprise, Inc. v. Chrysler Grp.* LLC, No. 13-cv-04236-BLF, 2016 WL 2957133, at *1 (N.D. Cal. May 23, 2016); Marten *Transport, Ltd. v. Plattform Advertising, Inc.*, No. 14-cv-02464-JWL-TJJ, 2016 WL 492743, at *10 (D. Kan. Feb. 8, 2016).[4]

Applying the proportionality factors here, the few remaining Plaintiffs already have access to the information they need as a result of the Trial Package prepared by the PSC and therefore will not be prejudiced if Defendants are permitted to resume their normal document retention policies. On the other hand, Defendants are subject to substantial burdens by the continuing obligation to preserve documents that have not been used at trial or deposition or in connection with any Daubert or dispositive motion. Consequently, the burden and expense of continued preservation far outweighs any benefit of continued compliance with the preservation orders.

---

[4] *See also*, *e.g.*, *Washington v. Wal-Mart Louisiana LLC*, No. 16-1403, 2018 WL 2292762, at *4 (W.D. La. May 17, 2018) ("[T]he extent of any preservation duty is, as in other discovery contexts, proportional to the facts of the case.") (citing *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 613 (S.D. Tex. 2010)); *Lord Abbett Mun. Income Fund, Inc. v. Asami*, No. C-12-03694, 2014 WL 5477639, at *3 (N.D. Cal. Oct. 29, 2014) ("the proportionality principles applies to the duty to preserve potential sources of evidence"); *Tracy v. NVR, Inc.*, No. 04–CV–6541L, 2012 WL 1067889, at *9 (W.D.N.Y. Mar. 26, 2012) ("the court's determination of the scope of the duty to preserve is a highly fact-bound inquiry that involves considerations of proportionality and reasonableness"); *Pippins v. KPMG LLP*, 279 F.R.D. 245, 255 (S.D.N.Y. 2012) ("proportionality is necessarily a factor in determining a party's preservation obligations"); *Orbit One Commc'ns, Inc. v. Numerex Corp.*, 271 F.R.D. 429, 436 n.10 (S.D.N.Y. 2010) (discussing concept of reasonableness and proportionality as "good guiding principles . . . [when] evaluating the sufficiency of a party's efforts at preservation")

Indeed, "[r]equiring litigants to retain ESI on the chance that somewhere down the road a party may broaden the scope of a prior discovery request is the sort of burden the new rule was put in place to avoid." *Bouchard*, 2017 WL 10180425, at *6.

Respectfully submitted,

FAEGRE DRINKER BIDDLE & REATH LLP

By: /s/ *Susan M. Sharko*
Susan M. Sharko
600 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
susan.sharko@ faegredrinker.com

Rodney M. Hudson
Four Embarcadero Center, 27th Floor
San Francisco, CA 94111-4180
Telephone: (415) 591-7500
rodney.hudson@ faegredrinker.com

Chanda A. Miller
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2700
chanda.miller@faegredrinker.com

IRWIN FRITCHIE URQUHART & MOORE LLC

By: /s/ *Kim E. Moore*
Kim E. Moore
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
kmoore@irwinllc.com

*Attorneys for the Janssen Defendants*

ARNOLD & PORTER KAYE SCHOLER LLP

By: /s/ *Steven Glickstein*
Andrew K. Solow
Steven Glickstein
250 West 55th Street
New York, NY 10019-9710
Telephone: (212) 836-8485
andrew.solow@arnoldporter.com
steven.glickstein@arnoldporter.com

William Hoffman
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
william.hoffman@arnoldporter.com

BRADLEY ARANT BOULT CUMMINGS LLP

By: /s/ *Lindsey C Boney IV*
Lindsey C Boney IV
One Federal Place, 1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8914
lboney@bradley.com

CHAFFE MCCALL L.L.P.

By: /s/ *John F. Olinde*
John F. Olinde
1100 Poydras Street, Suite 2300
New Orleans, LA 70163
Telephone: (504) 585-7241
olinde@chaffe.com

*Attorneys for the Bayer Defendants*

**CERTIFICATE OF SERVICE**

      I hereby certify that on November 18, 2020, the foregoing pleading was filed electronically with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Liaison Counsel for Plaintiffs and Defendants, and served on all other plaintiff counsel via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre-Trial Order No. 17.

*/s/ John F. Olinde*