UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| | SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE ELDON E. FALLON |
| All Cases | MAGISTRATE NORTH |

# JANSSEN AND BAYER DEFENDANTS' REPLY IN SUPPORT OF MOTION TO AMEND PRESERVATION ORDERS TO RELIEVE DEFENDANTS OF THEIR <u>PRESERVATION OBLIGATIONS</u>

## INTRODUCTION

This MDL was established more than six years ago by personal injury plaintiffs who alleged the same facts and virtually identical theories asserted by the Class Plaintiffs here. In the personal injury litigation, now virtually concluded, Defendants produced millions of pages of documents in response to hundreds of discovery demands.[1] Those productions and an index of the documents produced to the Plaintiffs' Steering Committee ("PSC") presumably have been and will continue to remain available to the Class Plaintiffs through the Plaintiffs' Steering Committee ("PSC"). Class Plaintiffs, who filed their complaint more than five years ago on August 28, 2015 around the time that Defendants responded to the first set of document demands, including more than 100 demands, in the MDL in June, 2015, now assert they intend to pursue some hypothetical, yet-to-be identified "distinct" document demands that may or may not be part of the Trial Package or the broader set of documents produced to the PSC. Whatever discovery the Class Plaintiffs have in mind does not mean that Defendants should be required to continue all of their preservation obligations set forth in the Court's earlier preservation orders entered in 2014 and 2015.

---

[1] No personal injury Plaintiff has opposed Defendants' motion to be relieved of their preservation obligations.

Continuing those obligations imposes vastly overbroad and unnecessary burdens on Defendants, given the extensive discovery that has already been pursued in this MDL, the length of time the MDL has been pending and the conclusion of the nationwide personal injury settlement program. Defendants should be relieved of their preservation obligations under Pretrial Order ("PTO") Nos. 1 (Doc. 2), 15 (Doc. 897), 15A (Doc. 1301), and 15B (Doc. 1477) because the relevant documents provided to the PSC will be made available and the cost of continued "ongoing" compliance is substantial, far outweighing the Class Plaintiffs' position that some document somewhere might be relevant to some claim.  To the extent that Class Plaintiffs still demand that that all of the preservation obligations continue, Defendants will supply the court with an affidavit of the costs of continued compliance, and Class Plaintiffs should be ordered to pay these substantial costs, particularly in light of their failure to identify any sound basis that would warrant continuing these obligations.

For these and the reasons set forth in their motion, Defendants' motion to amend the preservation orders should be granted.

## ARGUMENT

### A. The Class Plaintiffs Allege the Same Facts and Theories as the Personal Injury Plaintiffs

As the Court is aware, in the six years since this MDL proceeding was established, vast amounts of discovery was pursued by the personal injury plaintiffs, and in response Defendants produced more than 100 million of pages of documents.  Although the Class Plaintiffs now assert they intend to pursue "additional and distinct discovery" (Pl. Opp. at 2), their factual allegations repeat verbatim those of the personal injury Plaintiffs:

- **PT Monitoring, Dose Adjustment and Twice a Day**.  Both allege "[t]he use of Xarelto without appropriate blood monitoring, dose adjustment and twice a day dosing can cause major, life-threatening bleeding events."  Class Compl. at ¶99; *see* PTO 11a Model Comp. at ¶69 (Personal injury plaintiffs alleged "the use of Xarelto without

appropriate blood monitoring, dose adjustment and twice a day dosing can cause major, life-threatening bleeding events.").

- **Rocket Studies**. Both allege "[f]urthermore, the FDA expressed desirability in monitoring Xarelto dosage within their NDA approval memo based on the ROCKET studies." Class Compl. at ¶93; *see* PTO 11a at ¶63 (Personal injury plaintiffs alleged "[f]urthermore, the FDA expressed desirability in monitoring Xarelto dosage within their NDA approval memo based on the ROCKET studies.")

- **Bleeding Events.** Both allege "Defendants' failure to disclose information that they possessed regarding the failure to adequately test and study Xarelto for life-threatening bleeding risk further rendered warnings for this medication inadequate." Class Compl. at ¶156; *see* PTO 11a at ¶104 (Personal injury plaintiffs alleged "Defendants' failure to disclose information that they possessed regarding the failure to adequately test and study Xarelto for life-threatening bleeding risk further rendered warnings for this medication inadequate.")

- **Record Study.** Both allege "[t]he findings of the RECORD studies showed that Xarelto was superior (based on the Defendants' definition), accompanied by similar rates of bleeding." Class Compl. at ¶83; *see* PTO 11a at ¶53 (Personal injury plaintiffs alleged "[t]he findings of the RECORD studies showed that Xarelto was superior (based on the Defendants' definition) to enoxaparin for thromboprophylaxis after total knee and hip arthroplasty, accompanied by similar rates of bleeding.")

- **Einstein Study.** Both allege "The EINSTEIN-PE study's findings showed that a Xarelto regimen was non-inferior to the standard therapy for initial and long-term treatment of PE. However, the studies also demonstrated an increased risk of adverse events with Xarelto, including those that resulted in permanent discontinuation of Xarelto or prolonged hospitalization." Class Compl. at ¶95; *see* PTO 11a at ¶65 (Personal injury plaintiffs alleged "The EINSTEIN-PE study's findings showed that a Xarelto regimen was non-inferior to the standard therapy for initial and long-term treatment of PE. However, the studies also demonstrated an increased risk of adverse events with Xarelto, including those that resulted in permanent discontinuation of Xarelto or prolonged hospitalization.")

- **Antidote or Reversal Agent**. Both allege "Importantly, Xarelto's significant risk of severe, and sometimes fatal, internal bleeding has no antidote to reverse its effects, unlike warfarin. Class Compl. at ¶100; *see* PTO 11a at ¶72 (Personal injury plaintiffs alleged "Importantly, Xarelto's significant risk of severe, and sometimes fatal, internal bleeding has no antidote to reverse its effects, unlike warfarin.").

Both the Class Plaintiffs and personal injury plaintiffs also allege that physicians and the medical community were not informed of Xarelto's risks. Class Compl. ¶147 ("Defendants, through their affirmative misrepresentations and omissions, actively concealed from the

3

Plaintiffs, patients, prescribing physicians, pharmacy benefits managers, and the medical community, the true and significant risks associated with Xarelto use."); *see also* PTO 11a at ¶194 ("Defendants expressly represented to Plaintiffs, Plaintiffs' physicians, healthcare providers, and/or the FDA that Xarelto was safe and fit for use for the purposes intended…").

Because the Class Plaintiffs allege facts that are identical, and because the Class Plaintiffs had more than ample time to participate in the MDL discovery, Defendants' prior production of millions of pages of documents should be sufficient for the Class Plaintiffs to purse their claims, and their boilerplate allegations of some unidentified additional discovery is insufficient to require Defendants to continue their broad preservation obligations. *US ex rel King v. Solvay, S.A.*, Case No. H-06-2662, 2013 WL 820498, at *3 (S.D. Tex. March 5, 2013). "[G]eneralized allegations that conduct" might warrant additional discovery "does not justify the burden and expense associated with unfettered discovery…" *Id.* at *4; *see also United States ex rel. Regan v. Medtronic, Inc.,* No. 95–1236–MLB, 2000 WL 1478476, at *3 (D. Kan. July 13, 2000) (determining that a discovery request spanning 20 years was overly broad and unduly burdensome and confining discovery to a "reasonable temporal scope" based on the factual allegations in the complaint).

### B. The Class Plaintiffs Have Not Identified Any Discovery Not Already Available

Without ever identifying their alleged new "broader" discovery (Pl. Opp. at 3), the Class Plaintiffs can make no representation whether the unknown discovery is included in the Trial Package or part of the broader set of discovery and document production provided to the PSC. Nor does their reliance on *In re Avandia Marketing, Sales and Products Liability Litigation*, 945 F.3d 749, 761 (3d Cir. 2019), support their position that Defendants should indefinitely continue to preserve a broad range of documents. In *In re Avandia*, the plaintiffs submitted a Rule 56(d)

4

affidavit attesting to specific discovery that was necessary to oppose the Defendants' summary judgment motion. *Id.* The court did not consider the affidavit before ruling on summary judgment. *Id.* ("The District Court granted summary judgment in favor of GSK on the Plans' RICO claims without considering their Rule 56(d) declaration and their supplemental Rule 56(d) declaration."). Unlike there, the issue here is not summary judgment but whether the court's six-year old preservation obligations should continue even though millions of pages of documents have been produced based on the same facts and allegations.

      **C.**    **Proportionality and the Cost of Continued Compliance Based on Some Hypothetical Discovery Is Unnecessary, Overly Broad and Unduly Burdensome**

The Class Plaintiffs' position that Defendants should be required to continue to preserve the full range of documents is not supported by proportionality rules set forth in Federal Rule of Civil Procedure 26(b)(2). *See Zubulake v. UBS Warburg, LLC*, 217 F.R.D. 316 (S.D.N.Y. 2003). It is clear here that Plaintiffs have the ability to first determine whether the documents they seek are "cumulative or duplicative" of the millions already produced and can be obtained from a "less burdensome" source, such as the Trial Package or the documents produced to the PSC. *Id.* at 316. But they have not done so. There has been more than "ample opportunity" to pursue relevant discovery in this MDL proceeding, and the expense of continued compliance far outweighs the need to extend the preservation obligations indefinitely. *Id.*

If the Class Plaintiffs want to continue the preservation obligations, then they should pay the costs of compliance because they have not identified with "specificity" any new documents, have not shown that this hypothetical information is "critical" or that the information is unavailable to them from the prior production. *Rowe Entm't, Inc. v. William Morris Agency, Inc.,* 205 F.R.D. 421, 429 (S.D.N.Y. 2002). All of this information is within their control, not the control of Defendants. *US ex rel King*, 2013 WL 820498, at *7 ("Solvay's discovery obligations (1) are

5

limited to the time period relevant to the well-pled allegations of the fifth amended complaint and no later than December 31, 2007; (2) do not require preservation of material beyond February 7, 2008, the date of the last state subpoena; and (3) do not require preservation of material relating to post-acquisition conduct after February 16, 2010."). The Class Plaintiffs should not be permitted to indefinitely extend the preservation obligations in this MDL without making the proper showing. *See Koch v. Koch Indus., Inc.,* 203 F.3d 1202, 1238 (10th Cir. 2000) (criticizing a plaintiff for pleading "its allegations in entirely indefinite terms, without in fact knowing of any specific wrongdoing by the defendant," and then basing "massive discovery requests upon those nebulous allegations, in the hope of finding particular evidence of wrongdoing").

## CONCLUSION

For these reasons and those stated in their moving papers, Defendants' motion should be granted.

Respectfully submitted,

FAEGRE DRINKER BIDDLE & REATH LLP

By: /s/ *Susan M. Sharko*
Susan M. Sharko
600 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
susan.sharko@faegredrinker.com

Rodney M. Hudson
Four Embarcadero Center, 27th Floor
San Francisco, CA 94111-4180
Telephone: (415) 591-7500
rodney.hudson@faegredrinker.com

Chanda A. Miller
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2700
chanda.miller@faegredirnker.com

ARNOLD & PORTER KAYE SCHOLER LLP

By: /s/ *Steven Glickstein*
Andrew K. Solow
Steven Glickstein
250 West 55th Street
New York, NY 10019-9710
Telephone: (212) 836-8485
andrew.solow@arnoldporter.com
steven.glickstein@arnoldporter.com

William Hoffman
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
william.hoffman@arnoldporter.com

| | |
|---|---|
| IRWIN FRITCHIE URQUHART & MOORE LLC | BRADLEY ARANT BOULT CUMMINGS LLP |
| By: /s/ *Kim E. Moore* <br> Kim E. Moore <br> 400 Poydras Street, Suite 2700 <br> New Orleans, LA 70130 <br> Telephone: (504) 310-2100 <br> kmoore@irwinllc.com | By: */s/ Lindsey C Boney IV* <br> Lindsey C Boney IV <br> One Federal Place, 1819 Fifth Avenue North <br> Birmingham, AL 35203-2119 <br> Telephone: (205) 521-8914 <br> lboney@bradley.com |
| *Attorneys for Janssen Research & Development, LLC f/k/a Johnson & Johnson Pharmaceutical Research & Development, LLC, Janssen Ortho LLC, Janssen Pharmaceuticals, Inc. f/k/a Janssen Pharmaceutica, Inc. f/k/a Ortho-McNeil-Janssen Pharmaceuticals, Inc., and Johnson & Johnson* | CHAFFE MCCALL L.L.P. <br><br> By: /s/ *John F. Olinde* <br> John F. Olinde <br> 1100 Poydras Street, Suite 2300 <br> New Orleans, LA 70163 <br> Telephone: (504) 585-7241 <br> olinde@chaffe.com <br><br> *Attorneys for Bayer Healthcare Pharmaceuticals, Inc., and Bayer Pharma AG* |

### **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on January 20, 2021, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs and Defendants by operation of the court's electronic filing system and served on all other plaintiff counsel via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre-Trial Order No. 17.

> */s/ Kim E. Moore* <br> **Kim E. Moore**