## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

IN RE:  XARELTO (RIVAROXABAN)
PRODUCTS LIABILITY LITIGATION

MDL No. 2592

SECTION L

THIS DOCUMENT RELATES TO:

JUDGE ELDON E. FALLON

Louisiana Health Service Indemnity
Co. d/b/a Blue Cross and Blue Shield
Of Louisiana, et al. v. Janssen Research
& Development, LLC, et al.
Case No. 2:15-cv-03913

MAGISTRATE NORTH

**DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO
DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT OF THREE
HEALTH CARE THIRD-PARTY PAYORS UNDER FEDERAL RULES OF CIVIL
PROCEDURE 12(b)(6) and 9(b)**

TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

ARGUMENT .........................................................................................................4

I.    PLAINTIFFS' OPPOSITION CONFIRMS THAT THEIR ALLEGATIONS,
      EVEN IF ACCEPTED AS TRUE, ARE INSUFFICENT AS A MATTER OF
      LAW TO ESTABLISH PROXIMATE CAUSATION ........................................4

      A.    Under the Supreme Court's Direct Relation Requirement, the Law Does
            Not Permit a Claim by TPPs for Alleged Derivative Injuries Caused by
            Actions that Physicians or PBMs Took Due to Defendants' Alleged
            Tortious Conduct .................................................................................4

      B.    The Court Should Follow the Holdings of the Second, Seventh and
            Eleventh Circuits, Which are Faithful to Holmes and its Progeny .........................6

II.   PLAINTIFFS CANNOT AVOID THE OBLIGATION TO PLEAD FRAUD
      WITH PARTICULARITY AS REQUIRED BY FED. R. CIV. P. 9(b) BY
      ALLEGING THAT UNIDENTIFIED PHYSICIANS AND PBMS WOULD
      HAVE ACTED COLLECTIVELY IN A PARTICULAR WAY ...................................10

      A.    Plaintiffs Have Failed to Plead Fraud-Based Claims With Particularity ..............11

      B.    Plaintiffs' Generalized Fraud Allegations Are Insufficient as a Matter of
            Law .......................................................................................................12

III.  THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS ON
      ALTERNATIVE GROUNDS .........................................................................15

      A.    Plaintiffs Have  Failed to State a RICO Claim .......................................15

      B.    Plaintiffs Have Failed to State a Claim under Consumer Fraud Statutes ..............17

            1.    Allied Has Not Stated a Claim under the ICFA..........................................18

            2.    LABC and HMO Louisiana Have Not Stated a Claim under
                  LUTPA..........................................................................................19

            3.    Defendants Have Not Stated a Claim under the NJCFA ..........................19

      C.    The LPLA Exclusivity Provision Bars All of LABC's and HMO
            Louisiana's State Law Claims Except for Redhibition.........................................21

      D.    LABC and HMO Louisiana Have Failed to State a Claim for Redhibition .........21

E.      Plaintiffs Have Failed to State Claims for Unjust Enrichment Under
        Illinois, Louisiana or New Jersey Law ...................................................................22

        1.      Illinois Law ................................................................................................22

        2.      Louisiana Law.............................................................................................23

        3.      New Jersey Law ..........................................................................................24

CONCLUSION.....................................................................................................................24

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Anza v. Ideal Steel Supply Corp.*,
  547 U.S. 451 (2006).................................................................................4

*Bozeman v. State*,
  879 So. 2d 692 (La. 2004) ........................................................................7

*Bridge v. Phoenix Bond & Indemnity Co.*,
  553 U.S. 639 (2008)........................................................................ *passim*

*Central Regional Employees Ben. Fund v. Cephalon, Inc.*
  No. 09-3418 (MLC), 2009 WL 3245485 (D.N.J. Oct. 7, 2009) ............20

*Chricton v. Golden Rule Ins. Co.*,
  576 F.3d 392 (7th Cir. 2009) ...................................................................17

*City Check Cashing, Inc. v. Nat'l State Bank*,
  244 N.J. Super. 304, 582 A.2d 809 (N.J. App. Div. 1990)...................20

*City of Rockford v. Mallinckrodt ARD, Inc.*,
  360 F. Supp. 3d 730 (N.D. Ill. 2019) ......................................................23

*Cleary v. Phillip Morris Inc.*,
  656 F.3d 511 (7th Cir. 2011) ...................................................................22

*Colonial Oaks Assisted Living Lafayette, L.L.C. v. Hannie Dev. Inc.*,
  972 F.3d 684 (5th Cir. 2020) ...................................................................12

*Desiano v. Warner-Lambert Co.*,
  326 F.3d 339 (2d Cir. 2003).....................................................................21

*Ducote Jax Holdings LLC v. Bradley*,
  No. 04-1943, 2007 WL 2008505 (E.D. La. Jul. 5, 2007), *aff'd in part, rev'd in part* 335 F. App'x 392 (5th Cir. 2009)..............................................17

*Flowers v. Continental Grain Co., Wayne Poultry Div.*,
  775 F.2d 1051 (8th Cir. 1985) .................................................................12

*Forth v. Walgreen Co.*,
  No. 17-cv-2246, 2018 WL 1235015 (N.D. Ill. Mar. 9, 2018) ................19

*Hemi Group, LLC v. City of New York*,
  559 U.S. 1 (2010)............................................................................4, 9, 10

iii

*Holmes v. Secs. Investor Protection Corp.*,
    503 U.S. 258 (1992) ................................................................................................... *passim*

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*,
    No. 14-2722, 2020 WL 4470845 (E.D. La. Aug. 3, 2020) ......................................21

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs. & Prods. Liab. Litig.*,
    295 F. Supp. 3d 927 (N.D. Cal. 2018) ....................................................................14

*In re Lupron Mktg. & Sales Pracs. Litig.*,
    295 F. Supp. 2d 148 (D. Mass. 2003) .....................................................................16

*In re Neurontin Mktg. & Sales Pracs. Litig.*,
    712 F.3d 21 (1st Cir. 2013) ......................................................................................9

*In re Rezulin Prods. Liab. Litig.*,
    392 F. Supp. 2d 597 (S.D.N.Y. 2005) .....................................................................20

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*,
    No. 2:06-cv-5774 (SRC), 2009 WL 2043604 (D.N.J. July 10, 2009) .........................14, 20, 21

*In re Testosterone Replacement Therapy Prods. Liab. Litig.*,
    MDL No. 2545, 2019 WL 652217 (N.D. Ill. Feb. 14, 2019), *aff'd*, 784 F.
    App'x 457 (7th Cir. 2019) .......................................................................................5

*In re Vioxx Prods. Liab. Litig.*,
    MDL No. 1367, 2010 WL 11570867 (E.D. La.. Mar. 31, 2010) ..................................... *passim*

*Jennings v. Auto Meter Prods., Inc.*,
    495 F.3d 466 (7th Cir. 2007) ..................................................................................15

*Kavky v. Herbalife Int'l of Am.*,
    359 N.J. Super. 497, 820 A.2d 677 (N.J. Super. App. Div. 2003).............................20

*Malvino v. Delluniversita*,
    840 F.3d 223 (5th Cir. 2016) ..................................................................................15

*Mihalich v. Johnson & Johnson*,
    Case No. 14-cv-600-DRH-SCW, 2015 WL 9455559 (S.D. Ill. Dec. 28, 2015)....................18

*Oliveira v. Amoco Oil Co.*,
    201 Ill.2d 134, 776 N.E.2d 151 (Ill. 2002) ...........................................................18

*Our Lady of the Lake Med. Ctr. v. Cropper*,
    401 So. 2d 403 (La. App. 1st Cir. 1981)................................................................23

*Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms.*
*Co.*,
943 F.3d 1243 (9th Cir. 2019) ........................................................................9

*Papergraphics Int'l, Inc. v. Correa*,
389 N.J. Super. 8, 910 A.2d 625 (N.J. App. Div. 2006)........................................20

*Rivera v. Wyeth-Ayerst Labs.*,
283 F.3d 315 (5th Cir. 2002) ........................................................................7

*Sergeants' Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP*,
806 F.3d 71 (2d Cir. 2015)...........................................................................2

*Sidney Hillman Health Ctr. of Rochester v. Abbott Labs.*,
873 F.3d 574 (7th Cir. 2017) ................................................................ *passim*

*Southeast Laborers Health & Welfare Fund v. Bayer Corp.*,
444 F. App'x 401 (11th Cir. 2011) ..................................................................2

*Stachon v. United Consumers Club, Inc.*,
229 F.3d 673 (7th Cir. 2000) ......................................................................16

*State Farm Mut. Auto. Ins. Co. v. Easterling*,
19 N.E.3d 156 (Ill. Ct. App. 2014) .................................................................7

*United Food & Commercial Workers Unions & Employers Health Benefits Fund*
*v. Walgreen Co.*,
719 F.3d 849 (7th Cir. 2013) ......................................................................17

*United States ex rel. Riley v. St. Luke's Episcopal Hosp.*,
355 F.3d 370 (5th Cir. 2004) ..................................................................11, 12

*Walker v. Beaumont Ind. School Dist.*,
938 F.3d 724 (5th Cir. 2019) ......................................................................15

*Wills v. Foster*,
229 Ill.2d 393, 892 N.E.2d 1018 (2008) ..........................................................3, 7

## Statutes

La. Civ. Code Ann. art. 1825 ........................................................................3

La. Civ. Code Ann. art. 2439 .......................................................................22

La. Code Civ. P. art. 697............................................................................3

## Other Authorities

Fed. R. Civ. P. 9(b) ............................................................................10, 11, 12

Fed. R. Civ. P. 12(b)(6)..............................................................................................................1, 2

## INTRODUCTION

Plaintiffs' opposition (Pls.' Mem.") confirms that their claims are purely derivative based entirely on the decision-making process of physicians and PBMs, and not direct claims that Plaintiffs themselves relied upon any alleged representation of the Defendants.  These indirect claims raise a pure question of law to be decided on a Rule 12(b)(6) motion because they do not satisfy the Supreme Court requirement that, to establish proximate causation, there must be "some direct relation between the injury asserted and the injurious conduct alleged."  *Holmes v. Secs. Investor Protection Corp.*, 503 U.S. 258, 268 (1992).  There is no "direct relation" here because, even accepting as true the allegation that Defendants "induce[d] physicians to prescribe Xarelto and pharmacy benefit managers to put Xarelto on their formularies" (Pls. Mem. at 20), the alleged injury does not flow directly from any action taken by Plaintiffs, but instead derives incidentally from decisions made by physicians and PBMs who exercise their own independent judgment about whether to prescribe Xarelto or place it on a formulary.

This Court held in *Vioxx* that the exact same derivative claims based on the independent decision-making of physicians presented a "tenuous causal connection" that was "insufficient" as a matter of law to establish proximate causation.  *In re Vioxx Prods. Liab. Litig.*, MDL No. 1367, 2010 WL 11570867, at *7 (E.D. La.. Mar. 31, 2010).  Plaintiffs do not argue that *Vioxx* was wrongly decided—rather they incorrectly argue that the decision turned on a question of fact. Plaintiffs' argument is belied by this Court's *Vioxx* opinion, which rejected the very "theory of causation" derivative of physician prescribing decisions that Plaintiffs assert here.  *Id.* at *6. Moreover, *Vioxx* is consistent with decisions in the Second, Seventh and Eleventh Circuits, which hold that allegations like Plaintiffs', even if true, fail as a *matter of law* because they do not satisfy the direct relation proximate causation requirement.  *See Sidney Hillman Health Ctr. of Rochester v. Abbott Labs.*, 873 F.3d 574 (7th Cir. 2017) (affirming dismissal on Rule 12(b)(6)

motion); *Sergeants' Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP*, 806 F.3d 71, 90 (2d Cir. 2015) (affirming denial of class certification where "Plaintiffs' theory of injury requires them to prove third-party reliance by doctors on Aventis's alleged misrepresentations in order to establish that those misrepresentations caused [TPPs] to pay for . . . prescriptions that would not have been written otherwise"); *Southeast Laborers Health & Welfare Fund v. Bayer Corp.*, 444 F. App'x 401 (11th Cir. 2011) (affirming dismissal on Rule 12(b)(6) motion).

Contrary to Plaintiffs' assertions, the Second, Seventh and Eleventh Circuit holdings that indirect claims fail to satisfy the proximate causation requirement, with which *Vioxx* is in accord, are more faithful to Supreme Court precedent than are the contrary decisions in the First and Ninth Circuits.  The Second, Seventh and Eleventh Circuit decisions also are consistent with *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008).  Plaintiffs' ignore that *Bridge* specified a very narrow circumstance (not alleged here) in which a plaintiff could allege a direct injury absent first-party reliance, *i.e.*, where the defrauded party exercised no independent judgment but instead took an *automatic, non-discretionary* action in response to defendants' fraud.  In that circumstance, where the first party exercised no judgment and its response was predetermined and non-discretionary, "there are no independent factors that account for respondents' injury."  *Id.* at 658.  The claims here allege that Defendants misrepresented facts to physicians and others, who exercise their own independent judgment in making treatment decisions.

The Supreme Court in *Bridge* affirmed a Seventh Circuit decision authored by Circuit Judge Frank Easterbrook, who later wrote the opinion in *Sidney Hillman* distinguishing *Bridge* and holding that the direct relation requirement is not satisfied in indirect claims brought by

2

TPPs.  That the same Court of Appeals (in opinions written by the same judge) found the direct relation standard satisfied in *Bridge* but not satisfied in a TPP case is proof positive that the decisions are easily reconciled.  *See* Defs.' Mem. at 26 and pp. 8–9, *infra*.

Nor is it true, as Plaintiffs assert, that adhering to the decisions of the Second, Seventh and Eleventh Circuits, as well as this Court's *Vioxx* ruling, would leave Plaintiffs without a remedy.  Pls.' Mem. at 2.  The law provides two potential remedies.  First, to the extent that a TPP wants to assert a derivative claim based on a fraud allegedly committed by pharmaceutical companies against physicians, the TPPs can bring a subrogation claim, in which they stand in the shoes of their insureds (the directly injured parties).  *See, e.g.*, La. Civ. Code Ann. art. 1825; La. Code Civ. P. art. 697; *Wills v. Foster*, 229 Ill.2d 393, 399, 892 N.E.2d 1018, 1022 (2008).  Second, to the extent that TPPs themselves received and acted upon information from pharmaceutical companies, as opposed to claiming derivative injury from actions taken by independent physicians or PBMs, the TPPs could potentially have a direct claim for alleged fraud that injured them directly.  The fact that Plaintiffs (1) have expressly abandoned their subrogation claims, having dismissed them on January 12, 2021(*see* Doc. No. 17924) and (2) have not alleged any direct injury claim (presumably because they have no proof), does not mean there are not potential remedies.

There is no legal basis for the Court to entertain Plaintiffs' indirect theory of causation— and to dispense with the direct injury requirement—simply because Plaintiffs have elected not to pursue other remedies that might be available to them.

## ARGUMENT

I. **PLAINTIFFS' OPPOSITION CONFIRMS THAT THEIR ALLEGATIONS, EVEN IF ACCEPTED AS TRUE, ARE INSUFFICIENT AS A MATTER OF LAW TO ESTABLISH PROXIMATE CAUSATION**

  A. **Under the Supreme Court's Direct Relation Requirement, the Law Does Not Permit a Claim by TPPs for Alleged Derivative Injuries Caused by Actions that Physicians or PBMs Took Due to Defendants' Alleged Tortious Conduct**

Plaintiffs agree that, to establish the proximate causation element of their RICO and state common law claims, Supreme Court precedent requires them to plead "some direct relation between the injury asserted [*i.e.*, their payments for Xarelto] and the injurious conduct alleged," *i.e.*, Defendants' alleged misrepresentations. *Holmes*, 503 U.S. at 268; *see* Pls.' Mem. at 17, 26–27.[1] By their own description of their allegations, Plaintiffs did not take any action based on Defendants' alleged conduct that caused their injuries. Instead, Plaintiffs' alleged injuries are "purely contingent" (*Holmes*, 503 U.S. at 271) on the actions of physicians whom Defendants allegedly "induc[ed] . . . to prescribe Xarelto" and PBMs that Defendants allegedly "induc[ed] . . . to put Xarelto on their formularies." Pls.' Mem. at 20.

That is precisely the "tenuous causal connection"—that "fewer doctors would have prescribed, and fewer patients would have filled, . . . prescriptions had [the manufacturer] not concealed information regarding the drug"—which this Court held is "insufficient" as a matter of law to establish proximate cause in *Vioxx*. *Vioxx*, 2010 WL 11570867, at *6–7. Relying on TPP cases holding that "'[p]laintiff's alleged harm is simply too remote from Defendants' alleged RICO violation to satisfy the proximate cause requirement,'" the Court concluded that the TPP's "theory of causation" would "require thousands of individual examinations to see whether

---

[1] *See also Hemi Group, LLC v. City of New York*, 559 U.S. 1, 9 (2010); *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639, 654 (2008); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006).

doctors and patients relied upon Merck's misrepresentations or whether their decisions were based on other factors." *Id.* (citation omitted).

The only TPP claim recognized in *Vioxx* is not (and cannot be) alleged here. In *Vioxx*, there was no PBM standing between the manufacturer and the TPP. The *Vioxx* TPP, the Louisiana Department of Health and Hospitals ("LDHH"), alleged a direct claim that *it* "had discretion to refuse payment for all Vioxx prescriptions by placing Vioxx on a restrictive formulary, and that *LDHH* would have done so if the true nature of the drug had been disclosed." *Id.* at *8 (emphasis added). Plaintiffs here disclaim any allegation that *they* made formulary decisions regarding Xarelto based on Defendants' alleged misrepresentations. Instead, they allege that PBMs—independent third parties that Plaintiffs concede are not their agents (Pls.' Mem. at 25)—did so.

*Vioxx* is therefore consistent with holdings of the Second, Seventh and Eleventh Circuits that "'RICO claims generally survive where TPPs allege that defendants made direct representations to them and fail where they do not.'" *In re Testosterone Replacement Therapy Prods. Liab. Litig.*, MDL No. 2545, 2019 WL 652217, at *8 (N.D. Ill. Feb. 14, 2019) (citation omitted), *aff'd*, 784 F. App'x 457 (7th Cir. 2019); *see* Defs.' Mem. at 17–18. Despite that, Plaintiffs do not address this Court's *Vioxx* holding other than to note that it arose in the context of summary judgment. *See* Pls.' Mem. at 30 n.184. But in *Vioxx*, this Court rejected the TPP's "*theory* of causation" without regard to any facts peculiar to the evidentiary record there. *Vioxx*, 2010 WL 11570867, at *6 (emphasis added). The FAC pleads the exact same theory. Accordingly, *Vioxx*'s procedural posture does not bear on whether the facts that Plaintiffs allege, if true, are insufficient as a matter of law to establish proximate causation.

**B.      The Court Should Follow the Holdings of the Second, Seventh and Eleventh Circuits, Which are Faithful to *Holmes* and its Progeny**

The Second, Seventh and Eleventh Circuits decisions rejecting indirect TPP claims—as well as this Court's decision in *Vioxx*—are more faithful to *Holmes* and its progeny than the contrary decisions in the First and Ninth Circuits.

Contrary to their contention (Pls.' Mem. at 19–20), the TPPs' derivative claims squarely implicate the "reasons" the Supreme Court identified to explain why "directness of relationship" between a plaintiff's asserted injury and the defendant's allegedly tortious conduct "has been one of [the] central elements" of proximate causation.  *Holmes*, 503 U.S. at 269.  One reason is that "the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors."  *Id.*  With respect to TPP claims like those asserted by Plaintiffs, "[i]t is simply impossible, or close to it, to determine the individual thought process of each of the thousands of doctors and patients involved," which is necessary to determine whether their decisions to prescribe and use a medicine were based on the manufacturer's "misrepresentations or whether their decisions were based on other factors."  *Vioxx*, 2010 WL 11570867, at *7.  Or, as the Seventh Circuit held in *Sidney Hillman*: "To calculate damages it would be necessary to determine the volume of off-label prescriptions that would have occurred in the absence of Abbott's unlawful activity," which "may not be an easy task" because "some physicians were apt to write such prescriptions whether or not Abbott promoted off-label uses."  873 F.3d at 577.

Another reason for the direct relation requirement is that "the need to grapple with these problems is simply unjustified by the general interest in deterring injurious conduct, since directly injured victims can generally be counted on to vindicate the law as private attorneys general, without any of the problems attendant upon suits by plaintiffs injured more remotely."

6

*Holmes*, 503 U.S. at 269–70.  Here, thousands of plaintiffs who allege to have been injured from Xarelto have already brought and settled their claims.  As in *Sidney Hillman*, "[t]he patients' health and financial costs come first in line temporally; that pharmacies then send bills to Payors, which cover the remainder of the expense, does not make those Payors the initial losers from the [manufacturer's] promotional scheme."  873 F.3d at 576.  Under Louisiana and Illinois law, if patients prevail, they are entitled to recover their medical costs, including payments for Xarelto, regardless of the extent to which those costs were paid by insurance.  *See Bozeman v. State*, 879 So. 2d 692, 697 (La. 2004); *Wills*, 229 Ill.2d at 400, 892 N.E.2d at 1023.  TPPs could (if they chose) pursue alleged economic injury through subrogation on a patient-by-patient basis, where they would stand in the shoes of their insureds.  *See* Defs.' Mem. at 12; *State Farm Mut. Auto. Ins. Co. v. Easterling*, 19 N.E.3d 156, 162 (Ill. Ct. App. 2014).[2]  The voluntary choice not to pursue their subrogation claims, however, does not permit Plaintiffs to avoid proving their insureds' claims on an individual basis.  The law does not allow such an end run around the requirements of a subrogation claim, and the TPPs here cannot substitute their own indirect claim for that of their insureds.  The TPPs' attempt to allege indirect claims—based on the same theories of liability pursued in the six bellwether trials involving Xarelto users (all of which resulted in judgments in favor of Defendants)—in order to avoid having to plead and prove the claims of Xarelto users as would be required in subrogation, is simply not permitted.

---

[2] Defendants do not agree that either a patient or an insurer sustains an injury-in-fact if a medicine works as intended to treat a patient's disease without any adverse effects.  *See Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 (5th Cir. 2002) (no cognizable injury where "plaintiffs do *not* claim [a medicine] caused them physical or emotional injury, was ineffective . . . , or has any future health consequences to users" (emphasis in original)).  But to the extent insurers seek to test whether there is a claim for an alleged mis-prescribed medicine, even if it was effective and caused no physical harm, it is the patient, not the insurer, who has the direct claim.

Contrary to Plaintiffs' assertions, the holdings of the Second, Seventh and Eleventh Circuits are completely consistent with the Supreme Court's holding in *Bridge*. *See* Pls.' Mem. at 17–19. Nothing in *Bridge* excuses Plaintiffs from the requirement to plead facts that, if proved, would establish "'some direct relation between the injury asserted and the injurious conduct alleged.'" *Bridge*, 553 U.S. at 654 (quoting *Holmes*, 503 U.S. at 268). Although *Bridge* permitted a claim to go forward absent first-party reliance, Plaintiffs ignore the very narrow circumstances in which *Bridge* held that a plaintiff might state a claim when the plaintiff itself did not act upon the alleged misrepresentation. In *Bridge*, defendants misrepresented to the government that they had complied with a rule limiting them to a single bid at tax auctions; instead, they covertly and fraudulently submitted multiple bids through straw bidders. The Supreme Court held that the plaintiff bidders had been directly injured by the defendant bidders' fraud because, in the event of ties, the government allocated the tax liens *automatically* on a rotational basis *without exercising any independent judgment*, thereby necessarily depriving the competing plaintiff bidders of acquiring some tax liens in the rotation. Because the first party (the government) had no discretion, but instead reacted to the fraud in a nondiscretionary predetermined way, the fraud operated directly in a single-step to injure plaintiffs (and only plaintiffs) with "no *independent* factors that account for respondents' injury." *Id.* at 658 (emphasis added).

Unlike *Bridge*, Plaintiffs' claims here are not based on a theory that Defendants provided incorrect information to parties that lacked discretion to act independently. Instead, in Plaintiffs' multi-step casual chain, Defendants' alleged fraud operated directly on physicians and PBMs. It affected Plaintiffs only to the extent those independent parties in the exercise of their own judgment decided to prescribe Xarelto or add it to their formularies based on Defendants'

representations rather than their own knowledge and investigation.  The causal link from Defendants' alleged fraud to Plaintiffs' alleged injury is interrupted by and dependent on the discretionary decisions of third parties—as opposed to the direct link between the defendants' fraud and the plaintiff bidders' injuries in *Bridge*, which passed directly through the nondiscretionary, automatic actions of the government.

Indeed, Judge Easterbrook who authored the opinions for the Seventh Circuit in both *Bridge* (which found the *Holmes* standard satisfied) and *Sidney Hillman* (which found it was not) distinguished the two holdings on that ground.  In *Sidney Hillman*, Judge Easterbrook wrote for the Court that "[t]o the extent the district judge believed that it is never permissible to base RICO damages on injury to one person caused by wrongs against another, the decision conflicts with *Bridge*."  *Sidney Hillman*, 873 F.3d at 576.  The Court nevertheless held that, unlike *Bridge*, TPPs that allege injury from the costs of increased prescriptions caused by alleged fraud against physicians cannot satisfy *Holmes* direct relation requirement because "[d]isentangling the effects of the improper [pharmaceutical manufacturer] promotions from the many other influences on physicians' prescribing practices would be difficult—much more difficult than following the one-step causal link in *Bridge*."  *Id.* at 577.

Finally, Plaintiffs fail to address the inconsistencies in the First and Ninth Circuit decisions with Supreme Court precedent.  Both the First and Ninth Circuit based their holdings, in part, on their conclusion that it was foreseeable to pharmaceutical manufacturers that their alleged misrepresentations to physicians could injure TPPs.  *See* Defs.' Mem. at 27 (citing *Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms. Co.*, 943 F.3d 1243, 1257 (9th Cir. 2019); *In re Neurontin Mktg. & Sales Pracs. Litig.*, 712 F.3d 21, 37 (1st Cir. 2013)).  But, in *Hemi Group*, decided *after Bridge*, the Supreme Court expressly rejected the

argument that "RICO's proximate cause requirement turn[s] on foreseeability, rather than on the existence of a sufficiently 'direct relationship' between the fraud and the harm." 559 U.S. at 12.

## II.   PLAINTIFFS CANNOT AVOID THE OBLIGATION TO PLEAD FRAUD WITH PARTICULARITY AS REQUIRED BY FED. R. CIV. P. 9(b) BY ALLEGING THAT UNIDENTIFIED PHYSICIANS AND PBMS WOULD HAVE ACTED COLLECTIVELY IN A PARTICULAR WAY

Defendants' contentions that (1) Plaintiffs fail to plead fraud with particularity as required by Fed. R. Civ. P. 9(b), and (2) Plaintiffs improperly attempt to substitute aggregate proof for individualized proof by alleging that physicians or PBMs collectively would have acted in a particular way, are interrelated. Both also underscore that Plaintiffs' theory here is too remote and conjectural. On the one hand, Plaintiffs seek to avoid pleading or proving what allegedly inaccurate statement any particular physician or any particular PBM saw, read or heard; how (if at all) that particular physician would have changed her decision to prescribe Xarelto had she received different information; or how (if at all) that particular PBM would have changed Xarelto's formulary status had it received different information. The 76-page FAC does not even name a single PBM or a single physician, much less the circumstances constituting the alleged fraud as Rule 9(b) requires.

Instead, the FAC is a hodgepodge of blanket allegations about what unidentified physicians and PBMs may have done collectively and in the aggregate. These generalized allegations of collective action are insufficient because (1) to the extent Plaintiffs assert a claim based on the individual actions of physicians and PBMs, the allegations do not satisfy the particularity requirements of Rule 9(b), and (2) to the extent Plaintiffs assert a claim based on the collective action of physicians and PBMs as opposed to what individual physicians and PBMs would have done, the allegations assert an impermissible theory of causation based on aggregate proof or fraud-on-the-market, which fails to state a claim upon which relief may be granted.

10

## A.    Plaintiffs Have Failed to Plead Fraud-Based Claims With Particularity

Plaintiffs claim that their injury was caused by decisions made by physicians and PBMs. Even assuming, contrary to law, that Plaintiffs' allegations were sufficient to satisfy the *Holmes* direct relation requirement, to the extent they are asserting that their alleged injuries resulted from those individual decisions, they have failed to satisfy their obligation under Rule 9(b) to plead the circumstances of the alleged fraud with particularity.

Plaintiffs do not dispute that they have not identified any specific physician or PBM who allegedly received any specific misrepresentation, when they received them or how such representations caused that person or entity to act; *i.e.*, all "the circumstances constituting fraud" as Rule 9(b) requires.  *See* Defs' Mem. at 37–38.  Instead, Plaintiffs say their general allegations should be construed as alleging that Defendants "*concealed* material information from *everyone*."  Pls.' Mem. at 16 (emphasis in original).  But Plaintiffs' "fraud in the air" allegations are insufficient to satisfy their obligation to plead the circumstances constituting fraud with particularity.

Plaintiffs contend that in cases involving alleged omissions, their obligation under Rule 9(b) is limited "'to plead[ing] the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the misrepresentations misleading.'"  Pls.' Mem. at 13 (quoting *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 381 (5th Cir. 2004)).  But while the incomplete excerpt from the case Plaintiffs cited clarifies how a plaintiff might plead the *content* of alleged fraudulent omissions, it does not excuse Plaintiffs from pleading all the *circumstances* constituting the alleged fraud

with particularity.[3]  For example, in *Colonial Oaks Assisted Living Lafayette, L.L.C. v. Hannie Dev. Inc.*, 972 F.3d 684 (5th Cir. 2020), where buyers of an assisted living facility alleged that the sellers failed to disclose that employees were violating government regulations, the Fifth Circuit held that plaintiff's allegations failed to satisfy Rule 9(b) because "[t]he pleadings are devoid of allegations regarding what instructions the employees received, who gave the instructions, whether anyone followed the instructions, and whether Sellers were aware of the specific instructions given."  972 F.3d at 694.

Plaintiffs' failure to plead the circumstances constituting fraud with particularity is especially prejudicial because the requirement is intended, among other things, "'to protect[] defendants from harm to their reputation and goodwill.'"  *Id.* at 687 n.4 (citation omitted).  That concern is heightened in a RICO action that labels defendants "racketeers."  *See Flowers v. Continental Grain Co., Wayne Poultry Div.*, 775 F.2d 1051, 1054 (8th Cir. 1985).  In *Flowers*, the Court held that "a defendant faced with allegations of criminal conduct is entitled to more clarity and specificity than was afforded in this rather vague complaint" where "there is no clear allegation that plaintiff has parted with property because of his reliance on representations made by defendants that they knew were false."  *Id.*

### B.    Plaintiffs' Generalized Fraud Allegations Are Insufficient as a Matter of Law

To the extent that Plaintiffs assert a claim based on the collective actions of physicians or PBMs, that is insufficient as a matter of law.  *See* Defs.' Mem. at 31–36.  Plaintiffs contend that they do not rely on an impermissible fraud-on-the-market theory, but their allegations say otherwise.  *See* Pls.' Mem. at 27–30.

---

[3] The *Riley* Court did not address whether plaintiff's allegations satisfied Rule 9(b), leaving that "in the first instance [to] the district court upon remand."  355 F.3d at 380.

As this Court recognized in *Vioxx*, with respect to TPP claims, "Courts have often rejected the argument that 'generalized allegations and aggregate proof' are sufficient to adequately prove causation." *Vioxx*, 2010 WL 11570867, at *7 (citation omitted).  That is true because permitting proximate causation in such cases requires indulging a presumption—on which Plaintiffs' allegations here rely—that physicians and PBMs act uniformly when presented with information from pharmaceutical manufacturers.  Such a presumption is not warranted because, as this Court explained in *Vioxx*, "[m]any patients may have chosen to use Vioxx even if they had been fully informed of the risks associated with it.  Likewise many doctors may have weighed the risks and benefits of the drug and felt that in a specific case, prescribing Vioxx was an acceptable risk." *Id.*

Plaintiffs' contention that, in the absence of Defendants' alleged misrepresentations, they would have paid to fill prescriptions for warfarin instead of Xarelto proves that the allegations rely on an impermissible theory or aggregate proof. *See* Defs.' Mem. at 29.  Plaintiffs' theory would require indulging a presumption that a collective group of unnamed physicians who prescribed Xarelto to Plaintiffs' insureds would not have done so had the physicians known what Plaintiffs allege Defendants concealed and, further, that the collective group of unnamed physicians would have prescribed warfarin instead.  Plaintiffs' theory further requires indulging a presumption that a collective group of unnamed PBMs either "would not have put [Xarelto] on the formulary" or "would have placed Xarelto in a disfavored tier," thereby resulting in warfarin ultimately being prescribed to Plaintiffs' insureds instead of Xarelto.  Pls.' Mem. at 29.

The law does not permit those presumptions.  The six defense judgments in Xarelto cases negate any legal presumption that physicians would uniformly have changed their prescribing decisions based on what Plaintiffs claim Defendants should have disclosed.  *See* Doc. No.

13

17890.[4]  Even assuming that some physicians would have made different prescribing decisions, or some PBMs would have changed their formulary decision, there is no legal basis to presume that physicians would have prescribed or PBMs would have mandated warfarin rather than other available and more costly alternative treatments in place of Xarelto.  That is why the law requires individualized pleading and proof.

Plaintiffs' citation to *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs. & Prods. Liab. Litig.*, 295 F. Supp. 3d 927 (N.D. Cal. 2018) does not help them.  That case involved an automaker defrauding the government to certify compliance with emission standards through devices designed to fool the testing regimen.  The court was undoubtedly influenced by the unique fact that not a single rational buyer would purchase a non-compliant vehicle because it was illegal to sell them.  *See id.* at 942.  Therefore, the fraud arguably affected buyers uniformly without reference to any particular individual.  That is not true with respect to a medicine still lawfully on the market and still prescribed by physicians and covered on PBMs' formularies.  Significantly, *Chrysler* expressly acknowledged that TPP cases were different, distinguishing itself from *Schering-Plough*, which this Court followed in *Vioxx* and which barred TPPs from using aggregate proof to establish the highly individualized prescribing decisions of physicians.  *See Vioxx*, 2010 WL 11570867, at *7.  Plaintiffs' claims mirror those in *Vioxx* and *Schering-Plough* and not those in *Chrysler*.

Whether it is described as "'generalized allegations and aggregate proof'" as this Court did in *Vioxx* or a "fraud-on-the-market theory" as other courts have done (Defs. Mem. at 31–36), the result is the same: claims based on allegations that require a presumption that unidentified

---

[4] Plaintiffs do not contest taking judicial notice of the trial judgments as Defendants requested.

physicians and PBMs would have reacted as a group rather than individually to information are insufficient as a matter of law to establish proximate cause.

## III.   THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS ON ALTERNATIVE GROUNDS

Defendants set forth in their opening memorandum alternative bases to dismiss each of Plaintiffs' claims.  Plaintiffs' assertions their claims should survive are not supported by the law.

### A.   Plaintiffs Have  Failed to State a RICO Claim

RICO "was never intended to allow plaintiffs to turn garden-variety state law fraud claims into federal RICO actions," which permit treble damages and tar defendants as "racketeers."  *Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466, 472 (7th Cir. 2007).  Plaintiffs here have failed to adequately plead two of RICO's requirements that are intended to "'prevent RICO from becoming a surrogate for garden-variety fraud actions properly brought under state law.'"  *Malvino v. Delluniversita*, 840 F.3d 223, 231 (5th Cir. 2016) (citations omitted).  Plaintiffs' allegations are far beyond the scope of anything Congress intended RICO to cover.

First, Plaintiffs have failed to allege a RICO enterprise distinct from the alleged pattern of racketeering activity.  *See* Defs.' Mem. at 38–40.  As the Fifth Circuit has held, in affirming dismissal of a RICO claim where allegations of a RICO enterprise were "wholly conclusory and unsupported by facts": "To establish a RICO 'enterprise,' a plaintiff must provide evidence of the existence of an entity separate and apart from the pattern of racketeering activity."  *Walker v. Beaumont Ind. School Dist.*, 938 F.3d 724, 738 (5th Cir. 2019).

On this issue, the FAC alleges only that Janssen and Bayer "combined . . . for the common purpose of engaging in a pattern of racketeering activity - specifically the development of a market for Xarelto through the fraudulent means and sell[ing] Xarelto at a premium price over other safer, less expensive drugs."  FAC ¶ 274.  In other words, the alleged enterprise exists

15

only to engage in the pattern of racketeering activity by fraudulently marketing Xarelto and selling it at a premium.  If that were sufficient to state a RICO claim, "'every conspiracy to commit fraud that requires more than one person to commit it is a RICO organization and consequently every fraud that requires more than one person to commit is a RICO violation.'"  *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 676 (7th Cir. 2000) (citation omitted).

Plaintiffs contend that their allegations are sufficient because they also allege that Defendants "[d]esign[ed], research[ed], manufacture[d], test[ed], . . . [sold] and distribute[d] the drug Xarelto' together."  Pls.' Mem. at 31.  But those activities are all incidental to the alleged pattern of racketeering activity for the common purpose of "development of a market through fraudulent means."  FAC ¶ 274.  Plaintiffs' theory that manufacturing and design of a product is separate from the product's marketing would convert every instance of alleged fraudulent marketing of a product by two or more persons into a pattern of racketeering activity conducted by a RICO enterprise.  That would render the requirement that Plaintiffs allege an enterprise distinct from the alleged pattern of racketeering activity meaningless and convert every such state law fraud claim into a federal RICO claim.  Congress did not intend that result.[5]

Second, Plaintiffs also have failed to allege that the Defendants acted to further the interests of a distinct RICO enterprise as opposed to their own interests, which requirement ensures that every commercial arrangement between two or more persons is not transformed into a RICO enterprise.  *See* Defs.' Mem. at 40–41.  Neither the FAC nor Plaintiffs' brief purports to allege how the cooperation between Defendants "exceeded that inherent in every [such] commercial transaction" between two pharmaceutical manufacturers.  *United Food &*

---

[5] Plaintiffs' reliance on *In re Lupron Mktg. & Sales Pracs. Litig.*, 295 F. Supp. 2d 148 (D. Mass. 2003) is misplaced.  *See* Pls.' Mem. at 32 n.194.  That case does not address whether plaintiffs had alleged an enterprise distinct from the pattern of racketeering activity.

16

*Commercial Workers Unions & Employers Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 856 (7th Cir. 2013).

Plaintiffs simply state *ipse dixit* that they satisfy this requirement without citing to any allegations in the FAC.  *See* Pls.' Mem. at 32 n.198.  Nor does this Court's decision in *Ducote Jax Holdings LLC v. Bradley*, No. 04-1943, 2007 WL 2008505 (E.D. La. Jul. 5, 2007), *aff'd in part, rev'd in part* 335 F. App'x 392 (5th Cir. 2009) (cited Pls.' Mem. at 32 n. 198), help them. *Ducote* did not address the requirements to establish the existence of a RICO enterprise; the defense was not raised as is evident from the Circuit's affirmance based on the defendant's "deemed admissions."  *See* 335 F. App'x at 398.  Moreover, the arrangement between lawyers and banks to promote illegal tax avoidance strategies bears no relationship to Plaintiffs' allegations about the co-marketing agreement between Defendants here, which is "consistent with the existence of a business partnership, not the prototypical RICO violation in which the defendant seizes control of an enterprise to accomplish an illegal purpose by using the enterprise's resources, contacts, and appearances of legitimacy."  *Chricton v. Golden Rule Ins. Co.*, 576 F.3d 392, 399 (7th Cir. 2009).  Accordingly, Plaintiffs' RICO claims fails as a matter of law.

### B.    Plaintiffs Have Failed to State a Claim under Consumer Fraud Statutes

While Plaintiffs claim that a choice-of-law analysis is premature (Pls.' Mem. at 33), the only state laws that the named Plaintiffs contend might apply to them are Illinois, Louisiana or New Jersey.  The FAC does not state a claim under those states' laws.  Plaintiffs' contention that the Court needs to consider other state's laws because they "have pleaded class action allegations" is a non-sequitur.  Pls.' Mem. at 34.  If Plaintiffs have not stated a claim for relief that can be granted on their individual claims, the whole action must be dismissed and they cannot represent a class.

17

### 1.    Allied Has Not Stated a Claim under the ICFA

Allied does not state a claim under the ICFA because it does not allege that it "saw, heard or read" any of Defendants' misrepresentations.  *See* Defs.' Mem. at 43 (citing *Oliveira v. Amoco Oil Co.*, 201 Ill.2d 134, 155, 776 N.E.2d 151, 163–64 (Ill. 2002)).  Allied contends that *Oliveira* "stands only for the proposition that an Illinois consumer protection claim plaintiff cannot simply allege that a market-wide fraud raised the price of the product above what the plaintiff would otherwise have paid."  Pls.' Mem. at 36.

Plaintiff misreads *Oliveira*.  The holding of *Oliveira* is directed to the requirement that an ICFA plaintiff plead and prove that it "saw, heard or read defendant's ads" without which "plaintiff could not allege that defendant's advertisements deceived him or misled him as to what he was receiving when he made his purchase."  *Oliveira*, 201 Ill.2d at 154–55, 776 N.E.2d at 163.

Plaintiffs ignore *Mihalich v. Johnson & Johnson*, Case No. 14-cv-600-DRH-SCW, 2015 WL 9455559 (S.D. Ill. Dec. 28, 2015), which proves the point and is directly relevant.  *See* Defs.' Mem. at 44.  In that case, plaintiff asserted an ICFA claim alleging that the manufacturer of baby powder failed to warn consumers about the risk of ovarian cancer.  The court dismissed the claim although plaintiff "note[d] multiple statements or websites of the defendant," which contained the alleged misrepresentations, because she "fail[ed] to allege the specific misrepresentations *she* saw, or how they were communicated to *her*."  *Id.* at *5 (emphasis added).  Here too, it is irrelevant that Allied has alleged that "third-party payors" detrimentally relied on Defendants' alleged misrepresentations.  Pls.' Mem. at 35–36.  As in *Mihalich*, Allied must plead that *it*—not TPPs generally—saw, heard or read Defendants' alleged misrepresentations.

Equally misplaced is Allied's reliance on *Forth v. Walgreen Co.*, No. 17-cv-2246, 2018 WL 1235015 (N.D. Ill. Mar. 9, 2018). *Id.* at 36. In that case, the TPP saw the alleged misrepresentations forming the basis for its ICFA claim. There, the plaintiffs alleged that the defendant retail pharmacy engaged in "fraudulent pricing practices [that] sought to artificially inflate the 'usual and customary prices' *reported to health-insurance companies and related third-party payors* and resulted in Plaintiffs overpaying for generic drugs." *Id.* at *1 (emphasis added). Plaintiff relies on the court's holding that the TPP was a "consumer" within the meaning of the ICFA. But that has no bearing on whether a plaintiff asserting an ICFA claim must plead that it saw, heard or read the alleged misrepresentations that form the basis for its claim.

### 2. LABC and HMO Louisiana Have Not Stated a Claim under LUTPA

LABC and HMO Louisiana also have failed to state a claim under LUTPA because they have not alleged that they saw, heard or read Defendants' alleged misrepresentations, which is necessary to show that Defendants' alleged misconduct caused their damages. *See* Defs.' Mem. at 44. Plaintiffs contend that they have sufficiently pleaded causation because they allege that, "in disseminating deceptive materials for Xarelto, the defendants intended that BCBLSA and HMO Louisiana, among others, would rely on the materials to cause the payors to purchase Xarelto at higher costs and the payors did in fact overpay for Xarelto." Pls.' Mem. at 40. But regardless of Defendants' intentions, Plaintiffs do not allege that *they* received the allegedly "deceptive materials" and acted on them. Absent such an allegation, they cannot establish that Defendants' allegedly "deceptive materials" caused *their* injuries.

### 3. Defendants Have Not Stated a Claim under the NJCFA

Plaintiffs make no effort to justify applying New Jersey law to their claims, other than to say the Court should not bother to conduct a choice-of-law analysis. But Plaintiffs do not allege any facts to state a claim under the NJCFA (even if it applied) because TPPs are not

"consumers" that purchased Xarelto for their own use within the meaning of the NJCFA. *See* Defs.' Mem. at 45 (citing *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, No. 2:06-cv-5774 (SRC), 2009 WL 2043604 (D.N.J. July 10, 2009); *In re Rezulin Prods. Liab. Litig.*, 392 F. Supp. 2d 597 (S.D.N.Y. 2005)). Plaintiffs allege that they "paid or incurred costs for prescriptions of Xarelto dispensed to covered lives," but do not allege that *they*—as opposed to their insureds—used or consumed Xarelto. FAC ¶¶ 11–13.

Plaintiffs argue that it is sufficient that they "participated in consumer-oriented transactions by effectuating purchases by individual consumers, who used and consumed Xarelto by paying a portion of the price." Pls.' Mem. at 42. For that reason, Plaintiffs can bring a subrogation claim and stand in the shoes of those individual consumers if they want to assert those claims. But there is no basis to expand the NJCFA to non-consumers like Plaintiffs that neither use nor consume Xarelto.

*Kavky v. Herbalife Int'l of Am.*, 359 N.J. Super. 497, 820 A.2d 677 (N.J. Super. App. Div. 2003), cited by Plaintiffs is not on point. *See* Pls.' Mem. at 42–43. *Kavky* simply noted that "'some consumer goods may not be diminished or destroyed through use'"—in that case a distributorship— and as to those goods the result does not depend on the "dictionary definition of a consumer as 'one who uses (economic) goods, and so diminishes or destroys their utilities.'" 359 N.J. Super. at 504–05, 820 A.2d at 682 (citation omitted). Where, as here, a product is diminished or destroyed through use, New Jersey state court cases, including after *Kavky*, have held that only the person who does so is a "consumer" with a NJCFA claim. *See Papergraphics Int'l, Inc. v. Correa*, 389 N.J. Super. 8, 12, 910 A.2d 625, 628 (N.J. App. Div. 2006); *City Check Cashing, Inc. v. Nat'l State Bank*, 244 N.J. Super. 304, 309, 582 A.2d 809, 811 (N.J. App. Div. 1990); *see also Central Regional Employees Ben. Fund v. Cephalon, Inc.* No. 09-3418 (MLC),

2009 WL 3245485, at *3 (D.N.J. Oct. 7, 2009) (dismissing NJCFA claim by TPP against pharmaceutical manufacturer "[b]ecause third-party payors do not use or consume prescription medications themselves, they are not 'consumers' within the meaning of the NJCFA").[6]

### C.    The LPLA Exclusivity Provision Bars All of LABC's and HMO Louisiana's State Law Claims Except for Redhibition

LABC's and HMO Louisiana's state law claims other than for redhibition should be dismissed because those claims are barred by the LPLA's exclusivity provision.  *See* Defs.' Mem. at 46.  Plaintiffs contend that the LPLA does not apply because the FAC "does not allege this type of personal injury."  Pls.' Mem. at 43–44.  This Court already has rejected the argument that the LPLA only applies to personal injury claims, including with respect to TPP claims against a pharmaceutical manufacturer for alleged economic loss because "'damage' is expressly defined by the LPLA and includes economic loss."  *Vioxx*, 2010 WL 11570867, at *12; *see also In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, No. 14-2722, 2020 WL 4470845, at *4 & n.2 (E.D. La. Aug. 3, 2020).  Plaintiff does not address this Court's holdings.

### D.    LABC and HMO Louisiana Have Failed to State a Claim for Redhibition

LABC and HMO Louisiana have not stated claims for redhibition because they have not alleged facts that would establish that they are "buyers" of Xarelto.  Defs.' Mem. at 46–47.  Plaintiffs contend that the redhibition statute does not define buyer.  Pls.' Mem. at 44.  But Plaintiffs do not dispute that the statute defines "sale" as a transaction in which "a person

---

[6] Plaintiffs also note that *Schering-Plough* cites *Desiano v. Warner-Lambert Co.*, 326 F.3d 339 (2d Cir. 2003).  Pls.' Mem. at 43 n.251.  But *Schering-Plough* distinguished *Desiano* on the basis that "plaintiffs alleged that they were injured because they, themselves, were deceived by the manufacturer's alleged misrepresentations," while "Plaintiffs in the case at bar do not contend that they were deceived by Schering's alleged misrepresentations."  2009 WL 2043604, at *18.  Plaintiffs here, also do not contend "they, themselves, were deceived."  *Id.*

transfers ownership of a thing" and do not dispute that Plaintiffs never obtained ownership of Xarelto.  La. Civ. Code Ann. art. 2439.

Relying on *Vioxx*, which Defendants addressed comprehensively in their opening brief (at 47), Plaintiffs contend that they "have alleged that they paid for 'some or the entire purchase price for Xarelto,'" and, therefore, Plaintiffs "are the buyers without whom the transaction would never take place."  Pls.' Mem. at 45–46.  That does not make TPPs buyers of medicines any more than an auto insurer that pays some or all of the price to replace a stolen vehicle would be considered a "buyer" of the replacement vehicle.

Plaintiffs' contention that dismissing their redhibition claims would render pharmaceutical manufacturers immune from redhibition also is misplaced.  *See* Pls.' Mem. at 45. Plaintiffs paid for Xarelto prescribed to their insureds who took ownership of it and who can assert redhibition claims; Plaintiffs may assert subrogation claims.  *See* Defs.' Mem. at 47.

### E.    Plaintiffs Have Failed to State Claims for Unjust Enrichment Under Illinois, Louisiana or New Jersey Law

#### 1.    Illinois Law

Allied does not state a claim for unjust enrichment because that equitable remedy is barred if there is an available legal claim.  *See* Defs.' Mem. at 48.  Allied contends that, under Illinois law, "'unjust enrichment is an independent cause of action.'"  Pls.' Mem. at 47 (quoting *Cleary v. Phillip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011)).  But that is not inconsistent with the legal principle also articulated in *Cleary* that where, as here, "an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim."  *Cleary*, 656 F.3d at 517.

The latter principle is a function of Illinois law, which "requires that relief under an unjust enrichment theory is obtainable only when there is no adequate remedy at law available to the plaintiff." *City of Rockford v. Mallinckrodt ARD, Inc.*, 360 F. Supp. 3d 730, 771 (N.D. Ill. 2019). In *Rockford*, the court held that a plaintiff "cannot maintain an unjust enrichment claim when in that same claim it references legal remedies available to it," although the plaintiff can "plead in the alternative, but in doing so within that claim, it will have to plead that none of the many other causes of action in the [complaint] in which it alleges it is entitled to damages is viable." *Id.* Here, Allied cannot plead that it has no adequate legal remedy because it can assert a subrogation claim even if it has not pleaded one.

### 2.    Louisiana Law

LABC's and HMO Louisiana's unjust enrichment claims are unsustainable on two grounds. First, Plaintiffs have available legal remedies, which preclude their unjust enrichment claims. *See* Defs.' Mem. at 49. Plaintiffs concede that, under Louisiana law, "an unjust enrichment remedy is available only to 'fill a gap in the law where no express remedy is provided,'" but contend that "[t]he availability of an unjust enrichment claim under Louisiana law . . . cannot be determined before a determination that the payors have 'no other remedy available.'" Pls.' Mem. at 48; *see also id.* ("either the plaintiffs' other claims should be dismissed, or the unjust enrichment claim should"). But Plaintiffs ignore the caselaw cited in Defendants' opening brief, which holds that the question is whether Plaintiffs have *available* legal remedies, not whether they will prevail. Plaintiffs have available legal remedies: subrogation. That they do not wish to assert those claims does not render them unavailable.

Second, LABC's and HMO Louisiana's unjust enrichment claims fail because Plaintiffs made the payments that they seek to recover pursuant to a legal obligation to their insureds. *See* Defs.' Mem. at 49 (citing *Our Lady of the Lake Med. Ctr. v. Cropper*, 401 So. 2d 403, 405 (La.

App. 1st Cir. 1981). Plaintiffs do cite any contrary legal authority. And they admit that they are "obliged to provide the benefits the offer to their members." Pls.' Mem. at 49. Plaintiffs contend, however, that "they have no legal obligation to pay the defendants for excess prescriptions written, or prices inflated, as a result of the defendants' fraud." *Id.* Plaintiffs' contention is misplaced. It is not a question of any legal obligation that Plaintiffs owed to the Defendants. They concede they had a legal obligation to their insureds to pay for their insureds' prescriptions. Under Louisiana law they cannot assert an unjust enrichment claim to recover those amounts.

### 3. New Jersey Law

Under New Jersey law, if applicable, Plaintiffs' unjust enrichment claims are essentially traditional tort claims that are subject to the *Holmes* direct relation requirement. *See* Defs.' Mem. at 50. Plaintiffs' unjust enrichment claims (if governed by New Jersey law) should be dismissed because they have not pleaded facts that would satisfy that requirement.

## CONCLUSION

For the reasons herein and in our initial brief, the Court should dismiss the FAC.

Respectfully submitted,

FAEGRE DRINKER BIDDLE & REATH LLP

By: */s/ Susan M. Sharko*
Susan M. Sharko
600 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
susan.sharko@faegredrinker.com

Rodney M. Hudson
Four Embarcadero Center, 27th Floor
San Francisco, CA 94111-4180
Telephone: (415) 591-7500
rodney.hudson@faegredrinker.com

ARNOLD & PORTER KAYE SCHOLER LLP

By: */s/ Steven Glickstein*
Andrew K. Solow
Steven Glickstein
Robert M. Grass
250 West 55th Street
New York, NY 10019-9710
Telephone: (212) 836-8485
andrew.solow@arnoldporter.com
steven.glickstein@arnoldporter.com
robert.grass@arnoldporter.com

Chanda A. Miller
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2700
chanda.miller@faegredrinker.com

IRWIN FRITCHIE URQUHART & MOORE LLC

By: */s/ Kim E. Moore*
Kim E. Moore
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
kmoore@irwinllc.com

*Attorneys for Janssen Research &
Development, LLC f/k/a Johnson & Johnson
Pharmaceutical Research & Development,
LLC, Janssen Ortho LLC, Janssen
Pharmaceutica, Inc. f/k/a Ortho-McNeil-
Janssen Pharmaceuticals, Inc., and Johnson
& Johnson*

William Hoffman
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
william.hoffman@arnoldporter.com

BRADLEY ARANT BOULT CUMMINGS LLP

By: */s/ Lindsey C Boney IV*
Lindsey C. Boney IV
One Federal Place, 1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8914
lboney@bradley.com

CHAFFE MCCALL L.L.P.

By: */s/ John F. Olinde*
John F. Olinde
1100 Poydras Street, Suite 2300
New Orleans, LA 70163
Telephone: (504) 585-7241
olinde@chaffe.com

*Attorneys for Bayer Healthcare
Pharmaceuticals, Inc. and Bayer Pharma AG*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 22, 2021, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs by operation of the court's electronic filing system and served on the following counsel for Plaintiffs by electronic transmission:

James R. Dugan, II
David S. Scalia
TerriAnne Benedetto
Dugan Law Firm
One Canal Place
365 Canal St., Suite 1000
New Orleans, LA 70130
Email: jdugan@dugan-lawfirm.com
Email: dscalia@dugan-lawfirm.com
Email: tbenedetto@dugan-lawfirm.com

25

Thomas M. Sobol
Hagens Berman Sobol Shapiro, LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Email: tom@hbsslaw.com

Richard A. Sherburne
Jessica W. Chapman
5525 Reitz Ave.
P.O. Box 98029
Baton Rouge, LA 70898
Email: Richard.Sherburne@bcbsla.com
Email: Jessica.Chapman@bcbsla.com

Art Sadin
Sadin Law Firm, PC
121 Magnolia, Suite 102
Friendswood, TX 77546
Email: asadin@sadinlawfirm.com

*/s/ John F. Olinde*