## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | * | MDL NO. 2592 |
| | * | |
| | * | |
| NICOLE NAILS STONE, INDIVIDUALLY, AND | * | |
| AS THE EXECUTRIX OF THE ESTATE OF | * | NO. 2:17-cv-05372 |
| RAYMOND FULTON NAILS | * | |
| | * | SECTION L |
| Plaintiff, | * | |
| | * | JUDGE ELDON E. FALLON |
| v. | * | |
| | * | MAG. JUDGE NORTH |
| JANSSEN RESEARCH & DEVELOPMENT LLC | * | |
| f/k/a JOHNSON AND JOHNSON | * | JURY TRIAL DEMANDED |
| PHARMACEUTICAL RESEARCH AND | * | |
| DEVELOPMENT LLC, JANSSEN ORTHO LLC, | * | |
| JANSSEN PHARMACEUTICALS, INC. f/k/a | * | |
| JANSSEN PHARMACEUTICA INC. f/k/a | * | |
| ORTHO-MCNEIL-JANSSEN | * | |
| PHARMACEUTICALS, INC., JOHNSON & | * | |
| JOHNSON COMPANY, BAYER HEALTHCARE | * | |
| PHARMACEUTICALS, INC., BAYER PHARMA | * | |
| AG, BAYER CORPORATION, BAYER | * | |
| HEALTHCARE LLC, BAYER HEALTHCARE | * | |
| AG, AND BAYER AG, | * | |
| | * | |
| Defendants. | * | |

## ANSWER AND ADDITIONAL DEFENSES OF DEFENDANTS JANSSEN RESEARCH & DEVELOPMENT LLC, JANSSEN ORTHO LLC, JANSSEN PHARMACEUTICALS, INC., AND JOHNSON & JOHNSON TO PLAINTIFF'S COMPLAINT

Defendants Janssen Research & Development, LLC ("JRD"), Janssen Ortho LLC, Janssen

Pharmaceuticals, Inc. ("JPI"), (collectively, the "Janssen Defendants"), and Johnson & Johnson,

improperly named in the complaint as Johnson & Johnson Company ("J&J"), by and through their

attorneys and in accordance with the Court's Order of June 1, 2021, submit their Answer and

Affirmative Defenses to Plaintiff's Complaint.  The Janssen Defendants and J&J incorporate by

reference and expressly preserve all defenses raised within their March 12, 2021 motion for summary judgment and otherwise respond to Plaintiff's Complaint as follows:

### ANSWER TO PLAINTIFF SPECIFIC ALLEGATIONS

1.      The Janssen Defendants and J&J admit only that Plaintiff's Decedent, Raymond Fulton Nails, died on September 14, 2016 and that Plaintiff's Decedent was prescribed Xarelto® at some point prior to his death.  The Janssen Defendants and J&J deny that Plaintiff's Decedent was using Xarelto® at or near the time of his death and deny that any of Plaintiff's Decedent's alleged injuries were a result of the ingestion of Xarelto®.  The Janssen Defendants and J&J deny the remaining allegations in Paragraph 1.

2.      The Janssen Defendants and J&J deny that Plaintiff is entitled to any relief, on behalf of the estate of Plaintiff's Decedent or otherwise.  The Janssen Defendants and J&J lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 2, and therefore deny those allegations.

### ANSWERS TO ALLEGATIONS REGARDING DEFENDANTS

3.      The Janssen Defendants and J&J admit that JRD is a limited liability company existing under the laws of New Jersey with its principal place of business in New Jersey.  The Janssen Defendants and J&J admit that JPI is a Pennsylvania corporation with its principal place of business in New Jersey.  The Janssen Defendants and J&J deny all remaining allegations in Paragraph 3.

4.      The Janssen Defendants and J&J admit that JRD did research, development, and testing on Xarelto®.  The Janssen Defendants and J&J deny all remaining allegations in Paragraph 4.

5.      The Janssen Defendants and J&J admit that JPI submitted the new drug applications ("NDAs") and supplemental new drug applications ("sNDAs") for Xarelto® to the United States Food & Drug Administration ("FDA") on behalf of JRD.  The Janssen Defendants and J&J deny all remaining allegations in Paragraph 5.

6.      The Janssen Defendants and J&J admit that JRD did research, development, and testing on Xarelto®.  The Janssen Defendants and J&J further admit Xarelto® is an oral anticoagulant medication.  The Janssen Defendants and J&J further admit that Xarelto® is approved to reduce the risk of stroke and systemic embolism in patients with nonvalvular atrial fibrillation, for the treatment of deep vein thrombosis (DVT), for the treatment of pulmonary embolism (PE), for the reduction in the risk of recurrence of DVT and/or PE in patients at continued risk for recurrent DVT and/or PE after completion of initial treatment lasting at least 6 months, for the prophylaxis of DVT, which may lead to PE in patients undergoing knee or hip replacement surgery, for the prophylaxis of venous thromboembolism (VTE) and VTE related death during hospitalization and post hospital discharge in adult patients admitted for an acute medical illness who are at risk for thromboembolic complications due to moderate or severe restricted mobility and other risk factors for VTE and not at high risk of bleeding, and in combination with aspirin to reduce the risk of major cardiovascular events (cardiovascular (CV) death, myocardial infarction (MI) and stroke) in patients with chronic coronary artery disease (CAD) or peripheral artery disease (PAD), as fully set forth in the FDA-approved package insert for Xarelto®.  The Janssen Defendants and J&J deny all remaining allegations in Paragraph 6.

7.      The Janssen Defendants and J&J admit that JPI is a Pennsylvania corporation with its principal place of business in New Jersey.  The Janssen Defendants and J&J deny any remaining allegations in Paragraph 7.

8.      The Janssen Defendants and J&J admit that Xarelto® is a product of JPI in the United States.  The Janssen Defendants and J&J deny all remaining allegations in Paragraph 8.

9.      The Janssen Defendants and J&J admit that Xarelto® is a product of JPI in the United States.  The Janssen Defendants and J&J further admit Xarelto® is an oral anticoagulant medication.  The Janssen Defendants and J&J further admit that Xarelto® is approved to reduce the risk of stroke and systemic embolism in patients with nonvalvular atrial fibrillation, for the treatment of deep vein thrombosis (DVT), for the treatment of pulmonary embolism (PE), for the reduction in the risk of recurrence of DVT and/or PE in patients at continued risk for recurrent DVT and/or PE after completion of initial treatment lasting at least 6 months, for the prophylaxis of DVT, which may lead to PE in patients undergoing knee or hip replacement surgery, for the prophylaxis of venous thromboembolism (VTE) and VTE related death during hospitalization and post hospital discharge in adult patients admitted for an acute medical illness who are at risk for thromboembolic complications due to moderate or severe restricted mobility and other risk factors for VTE and not at high risk of bleeding, and in combination with aspirin to reduce the risk of major cardiovascular events (cardiovascular (CV) death, myocardial infarction (MI) and stroke) in patients with chronic coronary artery disease (CAD) or peripheral artery disease (PAD), as fully set forth in the FDA-approved package insert for Xarelto®.  The Janssen Defendants and J&J deny all remaining allegations in Paragraph 9.

10.      The Janssen Defendants and J&J admit that Janssen Ortho LLC is a limited liability company existing under the laws of Delaware with its principal place of business in Puerto Rico.  The Janssen Defendants and J&J further admit that Janssen Ortho LLC's sole member is OMJ PR Holdings, a corporation incorporated in Ireland.  The Janssen Defendants and J&J deny all remaining allegations in Paragraph 10.

11.     The Janssen Defendants and J&J admit that Janssen Ortho LLC manufactures finished product of Xarelto®.  The Janssen Defendants and J&J deny all remaining allegations in Paragraph 11.

12.     The Janssen Defendants and J&J admit that Janssen Ortho LLC manufactures finished product of Xarelto®.  The Janssen Defendants and J&J further admit Xarelto® is an oral anticoagulant medication.  The Janssen Defendants and J&J further admit that Xarelto® is approved to reduce the risk of stroke and systemic embolism in patients with nonvalvular atrial fibrillation, for the treatment of deep vein thrombosis (DVT), for the treatment of pulmonary embolism (PE), for the reduction in the risk of recurrence of DVT and/or PE in patients at continued risk for recurrent DVT and/or PE after completion of initial treatment lasting at least 6 months, for the prophylaxis of DVT, which may lead to PE in patients undergoing knee or hip replacement surgery, for the prophylaxis of venous thromboembolism (VTE) and VTE related death during hospitalization and post hospital discharge in adult patients admitted for an acute medical illness who are at risk for thromboembolic complications due to moderate or severe restricted mobility and other risk factors for VTE and not at high risk of bleeding, and in combination with aspirin to reduce the risk of major cardiovascular events (cardiovascular (CV) death, myocardial infarction (MI) and stroke) in patients with chronic coronary artery disease (CAD) or peripheral artery disease (PAD), as fully set forth in the FDA-approved package insert for Xarelto®.  The Janssen Defendants and J&J deny all remaining allegations in Paragraph 12.

13.     The Janssen Defendants and J&J admit that Johnson & Johnson, improperly named in Plaintiff's Complaint as Johnson & Johnson Company, is a New Jersey corporation with its principal place of business in New Brunswick, New Jersey.  The Janssen Defendants and J&J deny all remaining allegations in Paragraph 13.

14.     The Janssen Defendants and J&J deny the allegations in Paragraph 14 and specifically deny that J&J is involved in the research, development, sale, and/or marketing of Xarelto®.

15.     The allegations in Paragraph 15 are not directed to the Janssen Defendants or J&J; accordingly, no response is necessary.

16.     The allegations in Paragraph 16 are not directed to the Janssen Defendants or J&J; accordingly, no response is necessary.

17.     The allegations in Paragraph 17 are not directed to the Janssen Defendants or J&J; accordingly, no response is necessary.

18.     The allegations in Paragraph 18 are not directed to the Janssen Defendants or J&J; accordingly, no response is necessary.

19.     The allegations in Paragraph 19 are not directed to the Janssen Defendants or J&J; accordingly, no response is necessary.

20.     The allegations in Paragraph 20 are not directed to the Janssen Defendants or J&J; accordingly, no response is necessary.

21.     The allegations in Paragraph 21 are not directed to the Janssen Defendants or J&J; accordingly, no response is necessary.

22.     The allegations in Paragraph 22 are not directed to the Janssen Defendants or J&J; accordingly, no response is necessary.

23.     The allegations in Paragraph 23 are not directed to the Janssen Defendants or J&J; accordingly, no response is necessary.

24.     The allegations in Paragraph 24 are not directed to the Janssen Defendants or J&J; accordingly, no response is necessary.

25.     The allegations in Paragraph 25 are not directed to the Janssen Defendants or J&J; accordingly, no response is necessary.

26.     The allegations in Paragraph 26 are not directed to the Janssen Defendants or J&J; accordingly, no response is necessary.

27.     The allegations in Paragraph 27 are not directed to the Janssen Defendants or J&J; accordingly, no response is necessary.

28.     The allegations in Paragraph 28 are not directed to the Janssen Defendants or J&J; accordingly, no response is necessary.

29.     The allegations in Paragraph 29 are not directed to the Janssen Defendants or J&J; accordingly, no response is necessary.

30.     The allegations in Paragraph 30 are not directed to the Janssen Defendants or J&J; accordingly, no response is necessary.

31.     The allegations in Paragraph 31 are not directed to the Janssen Defendants or J&J; accordingly, no response is necessary.

32.     The allegations in Paragraph 32 are not directed to the Janssen Defendants or J&J; accordingly, no response is necessary.

33.     The allegations in Paragraph 33 are not directed to the Janssen Defendants or J&J; accordingly, no response is necessary.

34.     The Janssen Defendants and J&J deny the allegations in Paragraph 34.

35.     The Janssen Defendants and J&J deny the allegations in Paragraph 35.

36.     The Janssen Defendants and J&J deny the allegations in Paragraph 36.

37.     The Janssen Defendants and J&J admit that Xarelto® is the product of JPI in the United States.  The Janssen Defendants and J&J admit that JRD did research, development, and

testing on Xarelto®.  The Janssen Defendants and J&J admit that Janssen Ortho LLC manufactures finished product of Xarelto®.  The Janssen Defendants and J&J deny all remaining allegations in Paragraph 37 and specifically deny that J&J is involved in the development, design, licensing, manufacture, distribution, sale, marketing, and/or introduction of Xarelto®.

## ANSWER TO ALLEGATIONS REGARDING JURISDICTION AND VENUE

38.     The allegations in Paragraph 38 state conclusions of law to which no response is required.  To the extent a response is required, the Janssen Defendants and J&J admit that this Court's jurisdiction is based on diversity of citizenship.  The Janssen Defendants and J&J specifically deny that Plaintiff is entitled to any damages.

39.     The allegations in Paragraph 39 state conclusions of law to which no response is required.  To the extent a response is required, the Janssen Defendants admit that Janssen products are sold in Louisiana.  The Janssen Defendants and J&J deny the remaining allegations contained in Paragraph 39 of Plaintiffs' Complaint and deny that the Court has personal jurisdiction over Janssen Ortho LLC and J&J.

40.     The allegations in Paragraph 40 state conclusions of law to which no response is required.  To the extent a response is required, without admitting the factual allegations in Paragraph 40, the Janssen Defendants will not assert the defense of improper venue in this action, without waiving such defense in any other case.

41.     The allegations in Paragraph 41 state conclusions of law to which no response is required.  To the extent a response is required, without admitting the factual allegations in Paragraph 41, the Janssen Defendants will not assert the defense of improper venue in this action, without waiving such defense in any other case.

## ANSWER TO FACTUAL ALLEGATIONS

42.     The Janssen Defendants and J&J admit that Xarelto® is the product of JPI in the United States.  The Janssen Defendants and J&J admit that JRD did research, development, and testing on Xarelto®.   The Janssen Defendants and J&J admit that Janssen Ortho LLC manufactures finished product of Xarelto®.  The Janssen Defendants and J&J specifically deny that J&J is involved in the design, manufacture, marketing, sale and/or distribution of Xarelto®.  The Janssen Defendants and J&J deny all remaining allegations in Paragraph 42 and specifically deny that Xarelto® caused any injury to Plaintiff or Plaintiff's Decedent.

43.     The Janssen Defendants and J&J admit that Xarelto® is the product of JPI in the United States.  The Janssen Defendants and J&J admit that JRD did research, development, and testing on Xarelto®.  The Janssen Defendants and J&J admit that Janssen Ortho LLC manufactures finished product of Xarelto®.  The Janssen Defendants and J&J further admit that Xarelto® is approved to reduce the risk of stroke and systemic embolism in patients with nonvalvular atrial fibrillation, for the treatment of deep vein thrombosis (DVT), for the treatment of pulmonary embolism (PE), for the reduction in the risk of recurrence of DVT and/or PE in patients at continued risk for recurrent DVT and/or PE after completion of initial treatment lasting at least 6 months, for the prophylaxis of DVT, which may lead to PE in patients undergoing knee or hip replacement surgery, for the prophylaxis of venous thromboembolism (VTE) and VTE related death during hospitalization and post hospital discharge in adult patients admitted for an acute medical illness who are at risk for thromboembolic complications due to moderate or severe restricted mobility and other risk factors for VTE and not at high risk of bleeding, and in combination with aspirin to reduce the risk of major cardiovascular events (cardiovascular (CV) death, myocardial infarction (MI) and stroke) in patients with chronic coronary artery disease

(CAD) or peripheral artery disease (PAD), as fully set forth in the FDA-approved package insert for Xarelto®.  The Janssen Defendants and J&J deny all remaining allegations in Paragraph 43 and specifically deny that J&J is involved in the design, research, manufacture, testing, advertising, promoting, marketing, sale and/or distribution of Xarelto®.

44.     The Janssen Defendants and J&J admit that the FDA first approved Xarelto® in the United States on July 1, 2011 and further admit that Xarelto® belongs to a class of medications sometimes referred to as new oral anticoagulant ("NOAC").  The Janssen Defendants and J&J deny all remaining allegations in Paragraph 44.

45.     The Janssen Defendants and J&J admit that warfarin has been approved to reduce the risk of stroke and systemic embolism in certain patients with atrial fibrillation and was the accepted treatment for preventing stroke and systemic embolism in certain patients with atrial fibrillation prior to the FDA approval of Xarelto®.  The Janssen Defendants and J&J deny all remaining allegations in Paragraph 45 insofar as they are directed to them.

46.     The Janssen Defendants and J&J admit that Xarelto® is an oral anticoagulant and a selective inhibitor of Factor Xa available by prescription.  The Janssen Defendants and J&J further admit that Xarelto® is available in 2.5, mg, 10 mg, 15 mg, and 20 mg tablets by prescription.  The Janssen Defendants and J&J deny all remaining allegations in Paragraph 46.

47.     The Janssen Defendants and J&J admit that the FDA first approved Xarelto® on July 1, 2011, for the prophylaxis of DVT which may lead to PE in patients undergoing knee or hip replacement surgery, with a dose of 10 mg orally once daily for 35 days (for patients undergoing hip replacement) or for 12 days (for patients undergoing knee replacement surgery).  The Janssen Defendants and J&J deny any remaining allegations in Paragraph 47.

48.     The Janssen Defendants and J&J admit that Xarelto® was studied in the RECORD clinical trials, which evaluated the use of Xarelto® for the prevention of venous thromboembolism in patients undergoing total knee replacement or total hip replacement surgery. The Janssen Defendants and J&J state that the protocols for and the results of the RECORD clinical trials speak for themselves. The Janssen Defendants and J&J further state that the publications in The New England Journal of Medicine and Lancet cited in Paragraph 48 speak for themselves. The Janssen Defendants and J&J deny Plaintiff's characterization of the RECORD clinical trials and the publications cited in Paragraph 48. The Janssen Defendants and J&J deny all remaining allegations in Paragraph 48.

49.     The Janssen Defendants and J&J deny the allegations in Paragraph 49.

50.     The Janssen Defendants and J&J admit that on November 4, 2011, the FDA approved Xarelto® to reduce the risk of stroke and systemic embolism in patients with nonvalvular atrial fibrillation. The Janssen Defendants and J&J admit that Xarelto® was studied in the ROCKET AF clinical trial. The Janssen Defendants and J&J deny all remaining allegations in Paragraph 50.

51.     The Janssen Defendants and J&J state that the protocols for and the results of the ROCKET AF clinical trial speak for themselves. The Janssen Defendants and J&J deny Plaintiff's characterization of the ROCKET AF clinical trial. The Janssen Defendants and J&J state that the publication in the New England Journal of Medicine cited in Paragraph 51 speaks for itself. The Janssen Defendants and J&J deny all remaining allegations in Paragraph 51.

52.     The Janssen Defendants and J&J state that the ROCKET AF trial was designed to compare once-daily oral rivaroxaban with dose-adjusted warfarin for the prevention of stroke and systemic embolism in patients with nonvalvular atrial fibrillation. The Janssen Defendants and J&J

deny Plaintiff's characterizations of the ROCKET AF clinical trial.  The Janssen Defendants and J&J deny all remaining allegations in Paragraph 52.

53.      The Janssen Defendants and J&J deny the allegations in Paragraph 53.

54.      The Janssen Defendants and J&J state that the FDA Advisory Committee Briefing Document cited in Paragraph 54 speaks for itself.  The Janssen Defendants and J&J deny Plaintiff's characterization of this FDA Advisory Committee Briefing Document.  The Janssen Defendants and J&J deny the allegations in Paragraph 54.

55.      The Janssen Defendants and J&J state that the Public Citizen Letter cited in Paragraph 55 speaks for itself.  The Janssen Defendants and J&J deny Plaintiff's characterization of this Public Citizen letter.  The Janssen Defendants and J&J deny all remaining allegations in Paragraph 55.

56.      The Janssen Defendants and J&J state that the FDA Advisory Committee Briefing Document cited in Paragraph 56 speaks for itself.  The Janssen Defendants and J&J deny Plaintiff's characterization of this FDA Advisory Committee Briefing Document.  The Janssen Defendants and J&J deny the allegations in Paragraph 56.

57.      The Janssen Defendants and J&J state that the FDA Advisory Meeting transcript cited in Paragraph 57 speaks for itself and the Janssen Defendants and J&J deny Plaintiff's characterization of this FDA Advisory Meeting Transcript.  The Janssen Defendants and J&J deny all remaining allegations in Paragraph 57.

58.      The Janssen Defendants and J&J state that the Summary Review cited in Paragraph 58 speaks for itself and the Janssen Defendants and J&J deny Plaintiff's characterization of this Summary Review.  The Janssen Defendants and J&J deny all remaining allegations in Paragraph 58.

59.      The Janssen Defendants and J&J admit that on November 2, 2012, the FDA approved Xarelto® for the treatment of DVT, PE, and for the reduction in the risk of recurrence of DVT and of PE.  The Janssen Defendants and J&J deny all remaining allegations in Paragraph 59.

60.      The Janssen Defendants and J&J admit that Xarelto® was studied in the EINSTEIN-DVT, EINSTEIN-PE, and EINSTEIN-Extension clinical trials.  The Janssen Defendants and J&J state that the protocols for and results of the EINSTEIN-DVT, EINSTEIN-PE, and EINSTEIN-Extension clinical trials speak for themselves.  The Janssen Defendants and J&J deny Plaintiff's characterization of the EINSTEIN-DVT, EINSTEIN-PE, and EINSTEIN-Extension clinical trials.  The Janssen Defendants and J&J state that the New England Journal of Medicine and Expert Review of Cardiovascular Therapy publications cited in Paragraph 60 speak for themselves and the Janssen Defendants and J&J deny Plaintiff's characterization of these publications.  The Janssen Defendants and J&J deny all remaining allegations in Paragraph 60.

61.      The Janssen Defendants and J&J state that the website for Xarelto® and the marketing and promotional materials for Xarelto®, which are consistent with the FDA-approved package insert for Xarelto®, speak for themselves.  The Janssen Defendants and J&J deny all remaining allegations in Paragraph 61.

62.      The Janssen Defendants and J&J state that the marketing and promotional materials for Xarelto®, which are consistent with the FDA-approved package insert for Xarelto®, speak for themselves.  The Janssen Defendants and J&J deny all remaining allegations in Paragraph 62.

63.      The Janssen Defendants and J&J state that the marketing and promotional materials for Xarelto®, which are consistent with the FDA-approved package insert for Xarelto®,

speak for themselves.  The Janssen Defendants and J&J deny Plaintiff's characterization of the marketing and promotional materials for Xarelto®.  The Janssen Defendants and J&J deny all remaining allegations in Paragraph 63.

64.     The Janssen Defendants and J&J deny the allegations in Paragraph 64.

65.     The Janssen Defendants and J&J state that the Plaintiff sponsored Institute for Safe Medication Practices ("ISMP") QuarterWatch publication cited in Paragraph 65 speaks for itself and the Janssen Defendants and J&J deny Plaintiff's characterization of this ISMP Quarter Watch publication.  The Janssen Defendants and J&J deny all remaining allegations in Paragraph 65.

66.     The Janssen Defendants and J&J deny the allegations in Paragraph 66.

67.     The Janssen Defendants and J&J admit that the July 2011 FDA-approved package insert for Xarelto® stated that "[a] specific antidote of rivaroxaban is not available."  The Janssen Defendants and J&J further state that the FDA-approved package inserts for Xarelto® speak for themselves.  The Janssen Defendants and J&J deny the remaining allegations in Paragraph 67.

68.     The Janssen Defendants and J&J deny the allegations in Paragraph 68.

69.     The Janssen Defendants and J&J lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 69 and therefore deny those allegations. The Janssen Defendants and J&J further state that the serious adverse event reports cited in Paragraph 69 speak for themselves.   The Janssen Defendants and J&J deny Plaintiff's characterization of these serious adverse event reports.

70.     The Janssen Defendants and J&J lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 70 and therefore deny those allegations.

The Janssen Defendants and J&J state that the serious adverse event reports cited in Paragraph 70 speak for themselves and the Janssen Defendants and J&J deny Plaintiff's characterization of these serious adverse event reports.

71.     The Janssen Defendants and J&J state that Plaintiff has excerpted and referenced selected portions of a quote from an ISMP QuarterWatch publication in Paragraph 71. The Janssen Defendants and J&J state that the ISMP QuarterWatch cited in Paragraph 71 speaks for itself and the Janssen Defendants and J&J deny Plaintiff's characterization of this publication. The Janssen Defendants and J&J deny all remaining allegations in Paragraph 71.

72.     The Janssen Defendants and J&J lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 72 and therefore deny those allegations. The Janssen Defendants and J&J state that the serious adverse event reports cited in Paragraph 72 speak for themselves and the Janssen Defendants and J&J deny Plaintiff's characterization of these serious adverse event reports.

73.     The Janssen Defendants and J&J lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 73 and therefore deny those allegations. The Janssen Defendants and J&J state that the serious adverse event reports cited in Paragraph 73 speak for themselves and the Janssen Defendants and J&J deny Plaintiff's characterization of these serious adverse event reports.

74.     The Janssen Defendants and J&J deny the allegations in Paragraph 74.

75.     The Janssen Defendants and J&J deny the allegations in Paragraph 75, including in subparagraphs (a) – (r).

76.     The Janssen Defendants and J&J admit that the FDA-approved package insert for Xarelto® has changed since the medication was first approved for use in the United States by

the FDA in July 2011.  The Janssen Defendants and J&J deny all remaining allegations in Paragraph 76.

77.      The Janssen Defendants and J&J deny the allegations in Paragraph 77.

78.      The Janssen Defendants and J&J admit that Xarelto® is sold in countries throughout the world and that JPI sells Xarelto® in the United States.  The Janssen Defendants and J&J lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 78 and therefore deny those allegations.

79.      The Janssen Defendants and J&J admit that money has been spent to promote Xarelto®.  The Janssen Defendants and J&J deny all remaining allegations in Paragraph 79 as phrased and as incompletely and inaccurately presented.

80.      The Janssen Defendants and J&J state that the marketing and promotional materials for Xarelto®, which are consistent with the FDA-approved package insert for Xarelto®, speak for themselves.  The Janssen Defendants and J&J deny Plaintiff's characterization of the marketing and promotional materials for Xarelto®.  The Janssen Defendants and J&J deny all remaining allegations in Paragraph 80.

81.      The Janssen Defendants and J&J deny the allegations in Paragraph 81.

82.      The Janssen Defendants and J&J admit that Xarelto® is sold worldwide and that JPI sells Xarelto® in the United States.  The Janssen Defendants and J&J state that the website for Xarelto®, which is consistent with the FDA-approved package insert for Xarelto®, speak for itself. The Janssen Defendants and J&J deny all remaining allegations in Paragraph 82 as stated.

83.      The Janssen Defendants and J&J admit that Xarelto® is sold worldwide and that JPI sells Xarelto® in the United States.  The Janssen Defendants and J&J lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding whether Xarelto®

"is now considered the leading anticoagulant on a global scale in terms of sales" and therefore deny those allegations. The Janssen Defendants and J&J deny all remaining allegations in Paragraph 83 as stated.

84. The Janssen Defendants and J&J state that the marketing and promotional materials for Xarelto®, which are consistent with the FDA-approved package insert for Xarelto®, speak for themselves. The Janssen Defendants and J&J deny all remaining allegations in Paragraph 84.

85. The Janssen Defendants and J&J deny the allegations in Paragraph 85.

86. The Janssen Defendants and J&J state that Plaintiff has excerpted and referenced a selected portion from correspondence from the FDA's Office of Prescription Drug Promotion ("OPDP") in Paragraph 86. The Janssen Defendants and J&J state that the correspondence OPDP cited in Paragraph 86 speaks for itself and the Janssen Defendants and J&J deny Plaintiff's characterization of this correspondence. The Janssen Defendants and J&J deny all remaining allegations in Paragraph 86.

87. The Janssen Defendants and J&J deny the allegations in Paragraph 87.

88. The Janssen Defendants and J&J deny the allegations in Paragraph 88. The Janssen Defendants and J&J further state that the promotional materials for Xarelto®, which are consistent with the FDA-approved package insert for Xarelto®, speak for themselves.

89. The Janssen Defendants and J&J deny all allegations in Paragraph 89.

90. The Janssen Defendants and J&J state that the FDA-approved medication guide for Xarelto® speaks for itself. The Janssen Defendants and J&J deny the remaining allegations in Paragraph 90.

91. The Janssen Defendants and J&J deny the allegations in Paragraph 91.

92.     The Jansen Defendants and J&J deny the allegations in Paragraph 92.

93.     The Janssen Defendants and J&J deny the allegations in Paragraph 93.

94.     The Janssen Defendants and J&J deny the allegations in Paragraph 94.

95.     The Janssen Defendants and J&J deny the allegations in Paragraph 95.

96.     The Janssen Defendants and J&J deny the allegations in Paragraph 96.

97.     The Janssen Defendants and J&J deny the allegations in Paragraph 97.

98.     The Janssen Defendants and J&J deny the allegations in Paragraph 98.

99.     The Janssen Defendants and J&J deny the allegations in Paragraph 99.

100.    The Janssen Defendants and J&J deny the allegations in Paragraph 100.

101.    The Janssen Defendants and J&J deny the allegations in Paragraph 101.

102.    The Janssen Defendants and J&J deny the allegations in Paragraph 102.

## ANSWER TO COUNT I

103.    In response to the allegations in Paragraph 103, the Janssen Defendants and J&J restate and incorporate by reference their responses to all paragraphs of the Complaint as if fully set forth herein.  The Janssen Defendants and J&J deny all remaining allegations in Paragraph 103.

104.    The Janssen Defendants and J&J deny the allegations in Paragraph 104 and specifically deny that Xarelto® is defective.

105.    The Janssen Defendants and J&J admit that Xarelto is a product of JPI in the United States.  The Janssen Defendants and J&J admit that JRD did research, development, and testing on Xarelto®.  The Janssen Defendants and J&J admit that Janssen Ortho LLC manufactures finished product of Xarelto®.  The Janssen Defendants and J&J deny all remaining allegations in Paragraph 105 and specifically deny that J&J is involved in the design, research, manufacturing, testing, advertising, promoting, marketing, sale and/or distribution of Xarelto®.

106.    The Janssen Defendants and J&J admit that Xarelto® was expected to reach patients without substantial change from the condition in which Xarelto® was sold or distributed. The Janssen Defendants and J&J lack knowledge or information sufficient to form a belief as to whether Xarelto® did in fact reach patients in that condition and therefore deny those allegations. The Janssen Defendants and J&J deny all remaining allegations in Paragraph 106.

107.    The Janssen Defendants and J&J deny the allegations in Paragraph 107 and specifically deny that Xarelto® is defective.

108.    The Janssen Defendants and J&J deny the allegations in Paragraph 108 and specifically deny that Xarelto® is defective.

109.    The Janssen Defendants and J&J deny the allegations in Paragraph 109 and specifically deny that Xarelto® is defective.

110.    The Janssen Defendants and J&J deny the allegations in Paragraph 110 and specifically deny that Xarelto® is defective.

111.    The Janssen Defendants and J&J deny the allegations in Paragraph 111 and specifically deny that Xarelto® is defective.

112.    The Janssen Defendants and J&J admit that Xarelto® is approved to reduce the risk of stroke and systemic embolism in patients with nonvalvular atrial fibrillation, for the treatment of deep vein thrombosis (DVT), for the treatment of pulmonary embolism (PE), for the reduction in the risk of recurrence of DVT and/or PE in patients at continued risk for recurrent DVT and/or PE after completion of initial treatment lasting at least 6 months, for the prophylaxis of DVT, which may lead to PE in patients undergoing knee or hip replacement surgery, for the prophylaxis of venous thromboembolism (VTE) and VTE related death during hospitalization and post hospital discharge in adult patients admitted for an acute medical illness who are at risk for

thromboembolic complications due to moderate or severe restricted mobility and other risk factors for VTE and not at high risk of bleeding, and in combination with aspirin to reduce the risk of major cardiovascular events (cardiovascular (CV) death, myocardial infarction (MI) and stroke) in patients with chronic coronary artery disease (CAD) or peripheral artery disease (PAD), as fully set forth in the FDA-approved package insert for Xarelto®.  The Janssen Defendants and J&J lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 112 and therefore deny those allegations.

113.    The Janssen Defendants and J&J deny the allegations in Paragraph 113.

114.    The allegations in Paragraph 114 state conclusions of law to which no response is required.  To the extent a response is required, the Janssen Defendants and J&J deny the allegations in Paragraph 114.

115.    The Janssen Defendants and J&J deny the allegations in Paragraph 115.

116.    The Janssen Defendants and J&J deny the allegations in Paragraph 116.

117.    The Janssen Defendants and J&J deny the allegations in Paragraph 117 and specifically deny that Xarelto® is defective.

118.    The Janssen Defendants and J&J deny the allegations in Paragraph 118 and specifically deny that Xarelto® is defective.

119.    The Janssen Defendants and J&J deny the allegations in Paragraph 119 and specifically deny that Xarelto® was defective.

120.    The Janssen Defendants and J&J deny the allegations in Paragraph 120 and specifically deny that Xarelto® is defective.

121.    The Janssen Defendants and J&J deny the allegations in Paragraph 121 and specifically deny that Xarelto® is defective.

122.     The Janssen Defendants and J&J deny the allegations in Paragraph 122 and specifically deny that Xarelto® is defective.

123.     The Janssen Defendants and J&J lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 123 and therefore deny those allegations.

124.     The Janssen Defendants and J&J lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 124 and therefore deny those allegations.

125.     The Janssen Defendants and J&J deny the allegations in Paragraph 125, including in subparagraphs (a) – (f).

126.     The Janssen Defendants and J&J deny the allegations in Paragraph 126 and specifically deny that Xarelto® is defective.

127.     The Janssen Defendants and J&J deny the allegations in Paragraph 127 and specifically deny that Xarelto® is defective.

128.     The Janssen Defendants and J&J deny the allegations in Paragraph 128 and specifically deny that Xarelto® is defective.

129.     The Janssen Defendants and J&J deny the allegations in Paragraph 129.

130.     The Janssen Defendants and J&J deny the allegations in Paragraph 130.

## ANSWER TO COUNT II

131.     In response to the allegations in Paragraph 131, the Janssen Defendants and J&J restate and incorporate by reference their responses to all paragraphs of the Complaint as if fully set forth herein.  The Janssen Defendants and J&J deny all remaining allegations in Paragraph 131.

132.     The Janssen Defendants and J&J admit that Xarelto® is the product of JPI in the United States.  The Janssen Defendants and J&J admit that JRD did research, development and testing on Xarelto®.  The Janssen Defendants and J&J admit that Janssen Ortho LLC manufactures

finished product of Xarelto®.  The Janssen Defendants and J&J deny all remaining allegations in Paragraph 132 and specifically deny that J&J is involved in the design, manufacturing, marketing, promoting, sale and/or introduction of Xarelto®.

133.     The Janssen Defendants and J&J admit that Xarelto® was expected to reach patients without substantial change from the condition in which Xarelto® was sold or distributed. The Janssen Defendants and J&J lack knowledge or information sufficient to form a belief as to whether Xarelto® did in fact reach patients in that condition and therefore deny those allegations. The Janssen Defendants and J&J deny all remaining allegations in Paragraph 133.

134.     The Janssen Defendants and J&J deny the allegations in Paragraph 134 and specifically deny that Xarelto® is defective.

135.     The Janssen Defendants and J&J deny the allegations in Paragraph 135.

136.     The Janssen Defendants and J&J lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 136 regarding Plaintiff's alleged use of Xarelto® and therefore deny those allegations.  The Janssen Defendants and J&J deny all remaining allegations in Paragraph 136.

137.     The Janssen Defendants and J&J lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 137 and therefore deny those allegations.

138.     The Janssen Defendants and J&J deny the allegations in Paragraph 138.

## **ANSWER TO COUNT III**

139.     In response to the allegations in Paragraph 139, the Janssen Defendants and J&J restate and incorporate by reference their responses to all paragraphs of the Complaint as if fully set forth herein.  The Janssen Defendants and J&J deny all remaining allegations in Paragraph 139.

140.     The Janssen Defendants and J&J deny the allegations in Paragraph 140.

141.      The Janssen Defendants and J&J deny the allegations in Paragraph 141.

142.      The Janssen Defendants and J&J deny the allegations in Paragraph 142 and specifically deny that Xarelto® is defective.

143.      The Janssen Defendants and J&J deny the allegations in Paragraph 143 and specifically deny that Xarelto® is defective.

144.      The Janssen Defendants and J&J deny the allegations in Paragraph 144 and specifically deny that Xarelto® is defective.

145.      The Janssen Defendants and J&J deny the allegations in Paragraph 145.

146.      The Janssen Defendants and J&J deny the allegations in Paragraph 146.

147.      The Janssen Defendants and J&J deny the allegations in Paragraph 147 and specifically deny that Xarelto® is defective.

148.      The Janssen Defendants and J&J deny the allegations in Paragraph 148.

149.      The Janssen Defendants and J&J deny the allegations in Paragraph 149.

150.      The Janssen Defendants and J&J deny the allegations in Paragraph 150.

151.      The Janssen Defendants and J&J deny the allegations in Paragraph 151.

152.      The Janssen Defendants and J&J deny the allegations in Paragraph 152.

153.      The Janssen Defendants and J&J deny the allegations in Paragraph 153.

154.      The Janssen Defendants and J&J deny the allegations in Paragraph 154.

155.      The Janssen Defendants and J&J deny the allegations in Paragraph 155.

156.      The Janssen Defendants and J&J deny the allegations in Paragraph 156.

## ANSWER TO COUNT IV

157.     In response to the allegations in Paragraph 157, the Janssen Defendants and J&J restate and incorporate by reference their responses to all paragraphs of the Complaint as if fully set forth herein.  The Janssen Defendants and J&J deny all remaining allegations in Paragraph 157.

158.     The allegations in Paragraph 158 state conclusions of law to which no response is required.  To the extent a response is required, the Janssen Defendants and J&J state that the warnings and instructions in the FDA-approved package insert for Xarelto® speak for themselves. The Janssen Defendants and J&J deny the allegations in Paragraph 158 to the extent they seek to impose obligations on the Janssen Defendants and J&J beyond those required by law.

159.     The Janssen Defendants and J&J deny the allegations in Paragraph 159.

160.     The Janssen Defendants and J&J deny the allegations in Paragraph 160.

161.     The Janssen Defendants and J&J deny the allegations in Paragraph 161.

162.     The Janssen Defendants and J&J admit that the FDA-approved package insert for Xarelto® has changed since the medication was first approved for use in the United States by the FDA in July 2011.  The Janssen Defendants and J&J further state that the FDA-approved package inserts speak for themselves.  The Janssen Defendants and J&J deny all remaining allegations in Paragraph 162.

163.     The Janssen Defendants and J&J deny the allegations in Paragraph 163 and specifically deny that Xarelto® is defective.

164.     The Janssen Defendants and J&J lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 164 and therefore deny those allegations.

165.     The Janssen Defendants and J&J deny the allegations in Paragraph 165 and specifically deny that Xarelto® is defective.

166.     The allegations in Paragraph 166 state conclusions of law to which no response is required.   To the extent a response is required, the Janssen Defendants and J&J deny the allegations in Paragraph 166.

167.     The Janssen Defendants and J&J deny the allegations in Paragraph 167.

168.     The Janssen Defendants and J&J lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 168 regarding what unidentified physicians relied upon and therefore deny those allegations.   The Janssen Defendants and J&J deny the remaining allegations in Paragraph 168.

169.     The allegations in Paragraph 169 state conclusions of law to which no response is required.   To the extent a response is required, the Janssen Defendants and J&J deny the allegations in Paragraph 169.

170.     The Janssen Defendants and J&J deny the allegations in Paragraph 170.

171.     The Janssen Defendants and J&J deny the allegations in Paragraph 171.

172.     The Janssen Defendants and J&J deny the allegations in Paragraph 172.

## ANSWER TO COUNT V

173.     In response to the allegations in Paragraph 173, the Janssen Defendants and J&J restate and incorporate by reference their responses to all paragraphs of the Complaint as if fully set forth herein.   The Janssen Defendants and J&J deny all remaining allegations in Paragraph 173.

174.     The allegations in Paragraph 174 state conclusions of law to which no response is required.   To the extent a response is required, the Janssen Defendants and J&J deny the allegations in Paragraph 174.

175.     The Janssen Defendants and J&J deny the allegations in Paragraph 175.

176.     The Janssen Defendants and J&J deny the allegations in Paragraph 176, including in subparagraphs (a) – (w).

177.     The Janssen Defendants and J&J deny the allegations in Paragraph 177.

178.     The Janssen Defendants and J&J deny the allegations in Paragraph 178.

179.     The Janssen Defendants and J&J deny the allegations in Paragraph 179, including subparagraphs (a) – (h).

180.     The Janssen Defendants and J&J deny the allegations in Paragraph 180.

181.     The Janssen Defendants and J&J deny the allegations in Paragraph 181.

182.     The Janssen Defendants and J&J deny the allegations in Paragraph 182.

183.     The Janssen Defendants and J&J deny the allegations in Paragraph 183.

184.     The Janssen Defendants and J&J deny the allegations in Paragraph 184.

## ANSWER TO COUNT VI

185.     In response to the allegations in Paragraph 185, the Janssen Defendants and J&J restate and incorporate by reference their responses to all paragraphs of the Complaint as if fully set forth herein.  The Janssen Defendants and J&J deny all remaining allegations in Paragraph 185.

186.     The allegations in Paragraph 186 state conclusions of law to which no response is required.  To the extent a response is required, the Janssen Defendants and J&J state that the warnings and instructions in the FDA-approved package insert for Xarelto® speak for themselves. The Janssen Defendants and J&J deny the allegations in Paragraph 186.

187.     The allegations in Paragraph 187 state conclusions of law to which no response is required.  To the extent a response is required, the Janssen Defendants and J&J state that the warnings and instructions in the FDA-approved package insert for Xarelto® speak for themselves. The Janssen Defendants and J&J deny the allegations in Paragraph 187.

188.     The allegations in Paragraph 188 state conclusions of law to which no response is required.  To the extent a response is required, the Janssen Defendants and J&J state that the

warnings and instructions in the FDA-approved package insert for Xarelto® speak for themselves. The Janssen Defendants and J&J deny the allegations in Paragraph 188.

189.     The allegations in Paragraph 189 state conclusions of law to which no response is required.  To the extent a response is required, the Janssen Defendants and J&J state that the warnings and instructions in the FDA-approved package insert for Xarelto® speak for themselves. The Janssen Defendants and J&J deny the allegations in Paragraph 189.

190.     The Janssen Defendants and J&J deny the allegations in Paragraph 190.

191.     The Janssen Defendants and J&J deny the allegations in Paragraph 191.

192.     The Janssen Defendants and J&J deny the allegations in Paragraph 192.

193.     The Janssen Defendants and J&J deny the allegations in Paragraph 193 and specifically deny Xarelto® is defective.

194.     The Janssen Defendants and J&J deny the allegations in Paragraph 194.

195.     The Janssen Defendants and J&J deny the allegations in Paragraph 195 and specifically deny that Xarelto® is defective.

196.     The Janssen Defendants and J&J deny the allegations in Paragraph 196.

197.     The Janssen Defendants and J&J deny the allegations in Paragraph 197.

## ANSWER TO COUNT VII

198.     In response to the allegations in Paragraph 198, the Janssen Defendants and J&J restate and incorporate by reference their responses to all paragraphs of the Complaint as if fully set forth herein.  The Janssen Defendants and J&J deny all remaining allegations in Paragraph 198.

199.     The allegations in Paragraph 199 state conclusions of law to which no response is required.  To the extent a response is required, the Janssen Defendants and J&J deny the allegations in Paragraph 199.

200.     The allegations in Paragraph 200 state conclusions of law to which no response is required.  To the extent a response is required, the Janssen Defendants and J&J deny the allegations in Paragraph 200.

201.     The Janssen Defendants and J&J deny the allegations in Paragraph 201.

202.     The Janssen Defendants state that the FDA has approved Xarelto® to be safe and effective for the indications set forth in the FDA-approved package insert for Xarelto®:  Xarelto® is approved to reduce the risk of stroke and systemic embolism in patients with nonvalvular atrial fibrillation, for the treatment of deep vein thrombosis (DVT), for the treatment of pulmonary embolism (PE), for the reduction in the risk of recurrence of DVT and/or PE in patients at continued risk for recurrent DVT and/or PE after completion of initial treatment lasting at least 6 months, for the prophylaxis of DVT, which may lead to PE in patients undergoing knee or hip replacement surgery, for the prophylaxis of venous thromboembolism (VTE) and VTE related death during hospitalization and post hospital discharge in adult patients admitted for an acute medical illness who are at risk for thromboembolic complications due to moderate or severe restricted mobility and other risk factors for VTE and not at high risk of bleeding, and in combination with aspirin to reduce the risk of major cardiovascular events (cardiovascular (CV) death, myocardial infarction (MI) and stroke) in patients with chronic coronary artery disease (CAD) or peripheral artery disease (PAD).  The Janssen Defendants and J&J deny the remaining allegations in Paragraph 202.

203.     The Janssen Defendants and J&J deny the allegations in Paragraph 203.

204.     The Janssen Defendants and J&J deny the allegations in Paragraph 204.

**ANSWER TO COUNT VIII**

205.     In response to the allegations in Paragraph 205, the Janssen Defendants and J&J restate and incorporate by reference their responses to all paragraphs of the Complaint as if fully set forth herein.  The Janssen Defendants and J&J deny all remaining allegations in Paragraph 205.

206.     The Janssen Defendants and J&J state that the marketing and promotional materials for Xarelto®, which are consistent with the FDA-approved package insert for Xarelto®, speak for themselves.  The Janssen Defendants and J&J deny Plaintiff's characterization of the marketing and promotional materials for Xarelto®.  The Janssen Defendants and J&J deny all remaining allegations in Paragraph 206.

207.     The Janssen Defendants and J&J state that the marketing and promotional materials for Xarelto®, which are consistent with the FDA-approved package insert for Xarelto®, speak for themselves.  The Janssen Defendants and J&J deny Plaintiff's characterization of the marketing and promotional materials for Xarelto®.  The Janssen Defendants and J&J deny all remaining allegations in Paragraph 207.

208.     The Janssen Defendants and J&J deny the allegations in Paragraph 208.

209.     The Janssen Defendants and J&J deny the allegations in Paragraph 209.

210.     The Janssen Defendants and J&J deny the allegations in Paragraph 210.

211.     The Janssen Defendants and J&J deny the allegations in Paragraph 211.

**ANSWER TO COUNT IX**

212.     In response to the allegations in Paragraph 212, the Janssen Defendants and J&J restate and incorporate by reference their responses to all paragraphs of the Complaint as if fully set forth herein.  The Janssen Defendants and J&J deny all remaining allegations in Paragraph 212.

213.     The Janssen Defendants and J&J deny the allegations in Paragraph 213.

214.     The Janssen Defendants state that the FDA has approved Xarelto® to be safe and effective for the indications set forth in the FDA-approved package insert for Xarelto®:  Xarelto® is approved to reduce the risk of stroke and systemic embolism in patients with nonvalvular atrial fibrillation, for the treatment of deep vein thrombosis (DVT), for the treatment of pulmonary embolism (PE), for the reduction in the risk of recurrence of DVT and/or PE in patients at continued risk for recurrent DVT and/or PE after completion of initial treatment lasting at least 6 months, for the prophylaxis of DVT, which may lead to PE in patients undergoing knee or hip replacement surgery, for the prophylaxis of venous thromboembolism (VTE) and VTE related death during hospitalization and post hospital discharge in adult patients admitted for an acute medical illness who are at risk for thromboembolic complications due to moderate or severe restricted mobility and other risk factors for VTE and not at high risk of bleeding, and in combination with aspirin to reduce the risk of major cardiovascular events (cardiovascular (CV) death, myocardial infarction (MI) and stroke) in patients with chronic coronary artery disease (CAD) or peripheral artery disease (PAD).  The Janssen Defendants and J&J deny all remaining allegations in Paragraph 214.

215.     The Janssen Defendants and J&J deny the allegations in Paragraph 215.

216.     The Janssen Defendants and J&J deny the allegations in Paragraph 216.

217.     The Janssen Defendants and J&J deny the allegations in Paragraph 217.

218.     The Janssen Defendants and J&J deny the allegations in Paragraph 218 and specifically deny that Xarelto® is defective.

219.     The Janssen Defendants and J&J deny the allegations in Paragraph 219.

220.     The Janssen Defendants and J&J deny the allegations in Paragraph 220.

221.     The Janssen Defendants and J&J deny the allegations in Paragraph 221.

222.     The Janssen Defendants and J&J deny the allegations in Paragraph 222.

223.     The Janssen Defendants and J&J deny the allegations in Paragraph 223.

224.     The Janssen Defendants and J&J deny the allegations in Paragraph 224.

225.     The Janssen Defendants and J&J deny the allegations in Paragraph 225.

226.     The Janssen Defendants and J&J deny the allegations in Paragraph 226.

227.     The Janssen Defendants and J&J deny the allegations in Paragraph 227.

228.     The Janssen Defendants and J&J deny the allegations in Paragraph 228.

229.     The Janssen Defendants and J&J deny the allegations in Paragraph 229.

230.     The Janssen Defendants and J&J state that the marketing and promotional materials for Xarelto®, which are consistent with the FDA-approved package insert for Xarelto®, speak for themselves.  The Janssen Defendants and J&J deny Plaintiff's characterization of the marketing and promotional materials for Xarelto®.  The Janssen Defendants and J&J deny all remaining allegations in Paragraph 230.

231.     The Janssen Defendants and J&J state that the marketing and promotional materials for Xarelto®, which are consistent with the FDA-approved package insert for Xarelto®, speak for themselves.  The Janssen Defendants and J&J deny Plaintiff's characterization of the marketing and promotional materials for Xarelto®.  The Janssen Defendants and J&J deny all remaining allegations in Paragraph 231.

232.     The allegations in Paragraph 232 state conclusions of law to which no response is required.  To the extent a response is required, the Janssen Defendants and J&J deny the allegations in Paragraph 232 to the extent they seek to impose obligations on the Janssen Defendants beyond those required by law.

233. The Janssen Defendants state that the FDA has approved Xarelto® to be safe and effective for the indications set forth in the FDA-approved package insert for Xarelto®:  Xarelto® is approved to reduce the risk of stroke and systemic embolism in patients with nonvalvular atrial fibrillation, for the treatment of deep vein thrombosis (DVT), for the treatment of pulmonary embolism (PE), for the reduction in the risk of recurrence of DVT and/or PE in patients at continued risk for recurrent DVT and/or PE after completion of initial treatment lasting at least 6 months, for the prophylaxis of DVT, which may lead to PE in patients undergoing knee or hip replacement surgery, for the prophylaxis of venous thromboembolism (VTE) and VTE related death during hospitalization and post hospital discharge in adult patients admitted for an acute medical illness who are at risk for thromboembolic complications due to moderate or severe restricted mobility and other risk factors for VTE and not at high risk of bleeding, and in combination with aspirin to reduce the risk of major cardiovascular events (cardiovascular (CV) death, myocardial infarction (MI) and stroke) in patients with chronic coronary artery disease (CAD) or peripheral artery disease (PAD).  The Janssen Defendants and J&J deny all remaining allegations in Paragraph 233.

234. The Janssen Defendants and J&J deny the allegations in Paragraph 234.

235. The Janssen Defendants and J&J deny the allegations in Paragraph 235.

## ANSWER TO COUNT X

236. In response to the allegations in Paragraph 236, the Janssen Defendants and J&J restate and incorporate by reference their responses to all paragraphs of the Complaint as if fully set forth herein.  The Janssen Defendants and J&J deny all remaining allegations in Paragraph 236.

237. The Janssen Defendants and J&J deny the allegations in Paragraph 237.

238.     The Janssen Defendants and J&J deny the allegations in Paragraph 238, including subparagraphs (a) – (c).

239.     The Janssen Defendants and J&J deny the allegations in Paragraph 239.

240.     The Janssen Defendants and J&J deny the allegations in Paragraph 240.

241.     The Janssen Defendants and J&J deny the allegations in Paragraph 241.

242.     The Janssen Defendants and J&J deny the allegations in Paragraph 242.

243.     The Janssen Defendants and J&J deny the allegations in Paragraph 243.

**ANSWER TO COUNT XI**

244.     In response to the allegations in Paragraph 244, the Janssen Defendants and J&J restate and incorporate by reference their responses to all paragraphs of the Complaint as if fully set forth herein.  The Janssen Defendants and J&J deny all remaining allegations in Paragraph 244.

245.     The Janssen Defendants and J&J deny the allegations in Paragraph 245.

246.     The Janssen Defendants and J&J deny the allegations in Paragraph 246.

247.     The Janssen Defendants and J&J deny the allegations in Paragraph 247.

248.     The Janssen Defendants and J&J deny the allegations in Paragraph 248.

249.     The Janssen Defendants and J&J deny the allegations in Paragraph 249.

250.     The Janssen Defendants and J&J deny the allegations in Paragraph 250.

**ANSWER TO COUNT XII**

251.     In response to the allegations in Paragraph 251, the Janssen Defendants and J&J restate and incorporate by reference their responses to all paragraphs of the Complaint as if fully set forth herein.  The Janssen Defendants and J&J deny all remaining allegations in Paragraph 251.

252.     The Janssen Defendants and J&J deny the allegations in Paragraph 252.

253.     The Janssen Defendants and J&J deny the allegations in Paragraph 253.

254.     The Janssen Defendants and J&J deny the allegations in Paragraph 254.

## ANSWER TO COUNT XIII

255.     In response to the allegations in Paragraph 255, the Janssen Defendants and J&J restate and incorporate by reference their responses to all paragraphs of the Complaint as if fully set forth herein.  The Janssen Defendants and J&J deny all remaining allegations in Paragraph 255.

256.     The Janssen Defendants and J&J deny the allegations in Paragraph 256.

257.     The Janssen Defendants and J&J deny the allegations in Paragraph 257.

258.     The Janssen Defendants and J&J deny the allegations in Paragraph 258.

## ANSWER TO JURY TRIAL DEMAND

The paragraph under the heading "Jury Trial Demanded" contains no factual allegations and requires no response.  The Janssen Defendants and J&J demand a trial by jury on all issues so triable.

## ANSWER TO PRAYER FOR RELIEF

The Janssen Defendants and J&J deny the allegations contained in the unnumbered paragraph under the heading "Prayer for Relief" and its subparagraphs, and deny any wrongdoing whatsoever.  The Janssen Defendants and J&J deny they are liable to Plaintiff, either for damages, and/or any other relief or costs or attorneys' fees or interest in any amount whatsoever.

All allegations of the Complaint not expressly admitted are denied.

## ADDITIONAL DEFENSES

By setting forth these additional defenses, the Janssen Defendants and J&J do not assume the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to Plaintiff.  Further answering, and by way of additional defenses, the Janssen Defendants and J&J states as follows:

## FIRST AFFIRMATIVE DEFENSE

Plaintiff's Complaint fails in whole or in part to state a cause of action upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because Plaintiff's Decedent ceased taking Xarelto® before his death and therefore Xarelto® could not be the medical cause or proximate cause of his death.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the learned intermediary doctrine.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because the Xarelto® label adequately warned and instructed physicians of the use of Xarelto.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because Plaintiff's Decedent's physicians were independently aware of the risks associated with Xarelto®.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because of the absence of warnings causation or proximate causation in that a different warning or instruction would not have avoided or mitigated the alleged injury.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims for wrongful death, survival action, and loss of consortium are derivative of Plaintiff's Decedent's claim and therefore are barred by all of the defenses available against Plaintiff's Decedent.

## EIGHTH AFFIRMATIVE DEFENSE

This Court lacks personal jurisdiction over Johnson & Johnson, which is not a proper party defendant to this action, as it did not research, develop, manufacture, market, distribute, or sell Xarelto®.

## NINTH AFFIRMATIVE DEFENSE

This Court lacks personal jurisdiction over Janssen Ortho LLC with respect to Plaintiff's claims.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrines of informed consent and release.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's alleged damages, if any, are barred in whole or in part by Plaintiff's and/or Plaintiff's Decedent's failure to mitigate such damages.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's Decedent knowingly and voluntarily assumed any and all risks as to matters alleged in the Complaint, and such assumption of the risk bars in whole or in part the damages Plaintiff seeks to recover herein.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff's and/or Plaintiff's Decedent's alleged injuries attributable to the use of the products at issue in this case, if any, were not caused by the products at issue, but instead were caused by intervening and superseding causes or circumstances.

## FOURTEENTH AFFIRMATIVE DEFENSE

The Janssen Defendants and/or J&J did not make to Plaintiff and/or Plaintiff's Decedent nor did they breach any express or implied warranties and/or breach any warranties created by law.

Such claims are barred by applicable law, and for lack of privity with the Defendants and/or for failure of Plaintiff and/or Plaintiff's Decedent, or Plaintiff's representatives and/or Plaintiff's Decedent's representatives, to give timely notice to the Janssen Defendants and J&J of any alleged breach of warranty.  The Janssen Defendants and J&J further specifically plead as to any breach of warranty claim all affirmative defenses under the Uniform Commercial Code existing and which may arise in the future.

## FIFTEENTH AFFIRMATIVE DEFENSE

Any and all warranties that may form a basis for Plaintiff's claims for relief were adequately disclaimed.

## SIXTEENTH AFFIRMATIVE DEFENSE

At the time of sale or delivery, the products conformed to state-of-the-art for such products at that time.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiff's damages, if any, are barred or limited by the payments received from collateral sources.

## EIGHTEENTH AFFIRMATIVE DEFENSE

The injuries and damages claimed by Plaintiff and/or Plaintiff's Decedent, if any, were caused in whole or in part by the acts or omissions of persons over whom the Janssen Defendants and/or J&J have no control or right of control.

## NINETEENTH AFFIRMATIVE DEFENSE

Any award of punitive damages in this action would violate the Fourth, Fifth, Sixth, Eighth, and Fourteen Amendments to the United States Constitution and other applicable state and federal law, including *State Farm Mutual Automobile Insurance Co. v. Campbell et al.*, 538 U.S. 408

(2003), *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996), *Philip Morris USA v. Williams*, 549 U.S. 346 (2007), and *Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008).

## TWENTIETH AFFIRMATIVE DEFENSE

Any claim for punitive or exemplary damages against the Janssen Defendants and/or J&J is unconstitutional in that recovery of punitive or exemplary damages in this case would violate the constitutional rights of the Janssen Defendants and/or J&J to due process and equal protection under the Fourteenth Amendment to the Constitution of the United States and similar protections afforded by the Louisiana and New Jersey state constitutions, and that any law of the states of Louisiana or New Jersey, whether enacted by that state's legislature or founded upon a decision or decisions of the courts that would permit recovery of punitive or exemplary damages, is unconstitutional under these provisions.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

Any claim for punitive or exemplary damages against the Janssen Defendants and/or J&J is unconstitutional in that the standards for granting and asserting punitive or exemplary damages do not prohibit other Plaintiffs from seeking and recovering such damages against the Janssen Defendants and/or J&J for the same allegations of defect in the same products, and as such constitute multiple punishments for the same alleged conduct resulting in deprivation of the Janssen Defendants' and/or J&J's property without due process of law and will result in unjustified windfalls for Plaintiff and Plaintiff's counsel, in violation of the Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States and similar protections afforded by the Louisiana and New Jersey state constitutions.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

Any claim for punitive damages against the Janssen Defendants and/or J&J cannot be maintained because an award of punitive damages under current Louisiana and New Jersey law, and any other state's law deemed to apply to this action, would be void for vagueness, both facially and as applied.  Among other deficiencies, there is an absence of adequate notice of what conduct is subject to punishment; an absence of adequate notice of what punishment may be imposed; an absence of a predetermined limit, such as a maximum multiple of compensatory damages or a maximum amount, on the amount of punitive damages that a jury may impose; a risk that punitive damages will be imposed retrospectively based on conduct that was not deemed punishable at the time the conduct occurred; and it would permit and encourage arbitrary and discriminatory enforcement, all in violation of the due process clause of the Eighth and Fourteenth Amendments to the United States Constitution, the due process provisions of the Louisiana and New Jersey state constitutions, and the common law and public policies of the states of Louisiana and New Jersey, and similar protections afforded by any other state whose law is deemed to apply in this case.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

To the extent that the laws of Louisiana and New Jersey, and any other state whose law is deemed to apply in this case, permit punishment to be measured by the net worth or financial status of the Janssen Defendants and/or J&J and imposes greater punishment on defendants with larger net worth, such an award would be unconstitutional because it permits arbitrary, capricious, and fundamentally unfair punishments, allows bias and prejudice to infect verdicts imposing punishment, allows punishment to be imposed based on lawful profits and conduct of the Janssen Defendants and/or J&J in other states, and allows dissimilar treatment of similarly situated defendants, in violation of the due process and equal protection provisions of the Fourteenth

Amendment to the United States Constitution, the Commerce Clause of the United States Constitution, the state laws and constitutional provisions of Louisiana and New Jersey, and similar protections afforded by any other state whose law is deemed to apply in this case.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

With respect to Plaintiff's demand for punitive or exemplary damages, the Janssen Defendants and J&J specifically incorporate by reference any and all standards or limitations regarding the determination or enforceability of punitive or exemplary damages awards under federal law and the applicable state law.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

The Janssen Defendants and/or J&J reserve the right to assert any and all protections and limitations afforded under the New Jersey Punitive Damages Act, N.J.S.A. §§ 2A:15-5.9 *et seq.* and the New Jersey Product Liability Act, N.J.S.A. §§ 2A:58C-1 *et seq*.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

No act or omission of the Janssen Defendants and J&J was willful, unconscionable, oppressive, fraudulent, wanton, malicious, reckless, intentional, or with actual malice, with reckless disregard for the safety of Plaintiff and/or Plaintiff's Decedent, or with conscious disregard and indifference to the rights, safety, and welfare of Plaintiff and/or Plaintiff's Decedent, and therefore the Complaint fails to state a claim upon which relief can be granted for punitive or exemplary damages.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

The Janssen Defendants' and J&J's acts were at all times done in good faith and without malice, with respect to each and every purported cause of action in the Complaint.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint seeks damages in excess of those permitted by law. The Janssen Defendants and J&J assert any statutory or judicial protection from punitive or exemplary damages which is available under the applicable law, and any award of punitive or exemplary damages is barred.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

The acts and omissions of Plaintiff and/or Plaintiff's Decedent caused and/or contributed to the alleged damages, thereby barring or reducing the amount of recovery under the doctrines of contributory negligence and/or comparative negligence. Plaintiff's recovery, if any, therefore is barred or should be apportioned in accordance with applicable law.

## THIRTIETH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred as a matter of law pursuant to relevant provisions of the Restatement (Second) of Torts, including, but not limited to, § 402A, comment k and/or the Restatement (Third) of Torts: Products Liability §§ 2, 4, and 6 and comments thereto, and other applicable law.

## THIRTY-FIRST AFFIRMATIVE DEFENSE

Complete relief cannot be accorded among those already parties and, in the alternative, the disposition of this action without the presence of additional, unnamed persons may result in the Janssen Defendants being subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations.

### THIRTY-SECOND AFFIRMATIVE DEFENSE

Upon information and belief, if the injuries referred to in the Complaint were caused by the prescription medicine alleged to be at issue here, which is denied, the injuries are the result of an idiosyncratic reaction to the products.

### THIRTY-THIRD AFFIRMATIVE DEFENSE

To the extent Plaintiff's claims are based on alleged misrepresentations or omissions made to the FDA, such claims are barred pursuant to *Buckman Co. v. Plaintiffs' Legal Comm*., 531 U.S. 341 (2001).

### THIRTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiff has failed to plead allegations of fraud, mistake, or deception with the specificity or detail required.

### THIRTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims may be barred, in whole or in part, due to res judicata, collateral estoppel, or by release of claims.

### THIRTY-SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are preempted in whole or in part by federal law pursuant to the Supremacy Clause of the United States Constitution by reason of the federal regulation of prescription drug manufacturing, testing, marketing, promotion and labeling.

### THIRTY-SEVENTH AFFIRMATIVE DEFENSE

Upon information and belief, if the injuries referred to in the Plaintiff's Complaint were caused by the prescription medicine alleged to be at issue here, which is denied, the injuries are the results of pre-existing and/or related medical conditions and/or idiosyncratic reactions to the medicine.

## THIRTY-EIGHTH AFFIRMATIVE DEFENSE

If Plaintiff and/or Plaintiff's Decedent sustained injuries or incurred expenses as alleged, which is expressly denied, said injuries or expenses were caused by the unforeseeable alteration, unintended or improper handling or other unforeseeable misuse, or use inconsistent with the labeling of the prescription drug Xarelto®.  Plaintiff's recovery is accordingly barred.

## THIRTY-NINTH AFFIRMATIVE DEFENSE

The alleged injuries and/or damages of Plaintiff and/or Plaintiff's Decedent, if any, were the result of unavoidable circumstances that could not have been prevented by anyone.

## FORTIETH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because the benefits of Xarelto® outweigh the risks, if any, that might be associated with the product.

## FORTY-FIRST AFFIRMATIVE DEFENSE

At all relevant times the product was in compliance with all applicable statues and regulations, including those of the Food and Drug Administration.  Compliance with such regulations demonstrates that due care was exercised with respect to the design, manufacture, testing, marketing, promotion and sale of this prescription drug, and that was it was neither defective nor unreasonably dangerous.  Plaintiff's recovery is accordingly barred.

## FORTY-SECOND AFFIRMATIVE DEFENSE

The warnings and instructions accompanying Xarelto® at the time of the occurrence or injuries alleged by Plaintiff and/or Plaintiff's Decedent were legally adequate warnings and instructions.

**FORTY-THIRD AFFIRMATIVE DEFENSE**

The methods, standards, and techniques utilized with respect to the design, manufacture, marketing, promotion and sale of Xarelto®, including but not limited to adequate warnings and instructions with respect to the product's use included in the product's package insert and other literature, conformed to the applicable state of the art.  Xarelto®, including its labeling approved by the FDA, complied with the state of scientific and medical knowledge available at the time. Plaintiff's recovery accordingly is barred.

**FORTY-FOURTH AFFIRMATIVE DEFENSE**

Plaintiff's claims are barred because Xarelto® was neither defective nor unreasonably dangerous in its design, manufacture, marketing or promotion and was reasonably safe and reasonably fit for its intended uses, thereby barring Plaintiff's recovery.

**FORTY-FIFTH AFFIRMATIVE DEFENSE**

The Janssen Defendants and J&J did not misrepresent or conceal any fact material to Plaintiff's Decedent's treatment with Xarelto®.

**FORTY-SIXTH AFFIRMATIVE DEFENSE**

Plaintiff's claims purportedly asserted under statutes and regulations relating to prescription drugs fail in whole or in part because these statutes and regulations do not contain or create any private cause of action.

**FORTY-SEVENTH AFFIRMATIVE DEFENSE**

The Janssen Defendants and J&J assert that their conduct did not cause, proximately cause, solely cause, or solely proximately cause the injuries and/or damages alleged by Plaintiff and/or Plaintiff's Decedent.

## FORTY-EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part because the commercial speech relating to Xarelto® was not false or misleading and is protected under the First Amendment to the United States Constitution and the applicable state constitutions.

## FORTY-NINTH AFFIRMATIVE DEFENSE

Any claims by Plaintiff relating to alleged communications with regulatory agencies of the United States government are barred in whole or in part by operation of applicable law, including Third Amendment rights to petition the government.

## FIFTIETH AFFIRMATIVE DEFENSE

Plaintiff's claims regarding warnings and labeling are barred in whole or in part by the doctrine of primary jurisdiction, in that the FDA is charged under law with determining the contents of warnings and labeling for prescription drugs.

## FIFTY-FIRST AFFIRMATIVE DEFENSE

Plaintiff cannot state a claim with regard to warnings and labeling for prescription drugs because the remedy sought by Plaintiff is subject to the exclusive regulation of the FDA.

## FIFTY-SECOND AFFIRMATIVE DEFENSE

This Court should abstain from adjudicating Plaintiff's claims relating to warnings and labeling in deference to the interpretation of regulations relating to prescription drug labeling by the FDA.

## FIFTY-THIRD AFFIRMATIVE DEFENSE

If Plaintiff and/or Plaintiff's Decedent has filed bankruptcy during the relevant time period of the events alleged in the Complaint or file for bankruptcy at some point in the future, the claims of Plaintiff may be "property of the bankruptcy estate" which should be prosecuted by the

bankruptcy trustee rather than by Plaintiff, or, if not disclosed by Plaintiff on the scheduled and/or statement of financial affairs, may be barred by the doctrine of judicial estoppel.

### FIFTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint fails to state a claim against the Janssen Defendant and J&J upon which relief can be granted as to punitive or exemplary damages, costs, attorney's fees, expert fees, expenses, pre-judgment interest, post-judgment interest, refund, rescission, unjust enrichment, disgorgement or restitution.

### FIFTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims for strict liability, negligence, misrepresentation, implied warranty, fraud, and violation of consumer protection statutes are barred by the exclusivity provisions of the Louisiana Products Liability Act, La. Rev. Stat. 9:2800.51 *et seq*. (the "LPLA").

### FIFTY-SIXTH AFFIRMATIVE DEFENSE

Plaintiff's Decedent's prescribing physicians did not rely on any alleged misrepresentations or concealment by the Janssen Defendants or J&J in treating Plaintiff's Decedent.

### FIFTY-SEVENTH AFFIRMATIVE DEFENSE

Count X of the Complaint does not specify which state's consumer protection or consumer fraud laws Plaintiff is asserting a claim under.  The Janssen Defendants and J&J assume Plaintiff is asserting a claim under the Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. 51:1401 *et seq*.  To the extent Plaintiff seeks to assert a claim under another state's law, the claim is barred because (a) the complaint does not provide fair notice of the claim, and (b) such other state's law does not apply to this case under Louisiana choice of law principles.

Alternatively, the Janssen Defendants and J&J assert all available defenses under such other state's statutes.

## FIFTY-EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint fails to state a claim for unlawful conduct under the Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. 51:1401 *et seq*., because Janssen Pharmaceuticals, Inc. completely complied with the applicable law in connection with the promotion of Xarelto®.

## FIFTY-NINTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint fails to state a claim for misleading or unfair advertising or for deceptive business practices under the Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. 51:1401 *et seq.*, because Janssen Pharmaceuticals, Inc.'s promotion of Xarelto® was not misleading, unfair or deceptive.

## SIXTIETH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part because the Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. 51:1401 *et seq*., is insufficiently definite to provide adequate or fair notice of the conduct proscribed, in violation of the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution and the due process protections of the applicable state constitution.

## SIXTY-FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part because the Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. 51:1401 *et seq.*, unconstitutionally burdens interstate business practices relating to prescription drugs, which are heavily regulated by the FDA.

## SIXTY-SECOND AFFIRMATIVE DEFENSE

Plaintiff's action should be stayed or dismissed because Plaintiff has not exhausted the administrative remedies as required under the Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. 51:1401 *et seq.*

## SIXTY-THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims under the Louisiana Unfair Trade Practices and Consumer Protection Law are barred by the exclusivity provisions of the Louisiana Products Liability Act, La. Rev. Stat. 9:2800.51 *et seq.*

## SIXTY-FOURTH AFFIRMATIVE DEFENSE

The Janssen Defendants and J&J asserts all defenses and limitations under the Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. 51:1401 *et seq.*

## SIXTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims under the Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. 51:1401 *et seq.*, are barred to the extent that Plaintiff's claims were brought more than one year after the alleged transaction or act which Plaintiff alleges gives rise to Plaintiff's claim.

## SIXTY-SIXTH AFFIRMATIVE DEFENSE

Any claims for detrimental reliance are barred under Louisiana law.

## SIXTY-SEVENTH AFFIRMATIVE DEFENSE

The Janssen Defendants and J&J plead the provisions and limitations of the LPLA and all the limitations and defenses set forth therein, including but not limited to, industry custom, technological feasibility, and compliance with standards and regulations.

## SIXTY-EIGHTH AFFIRMATIVE DEFENSE

The Janssen Defendants and J&J specifically plead the applicability and exclusivity of the LPLA, and specifically aver that Plaintiff and Plaintiff's Decedent are not entitled to recovery under any of the exclusive theories of liability set forth in the LPLA.

## SIXTY-NINTH AFFIRMATIVE DEFENSE

Plaintiff's claims are limited to those allowed under the LPLA, and Plaintiff's relief, if any, is limited to relief allowed under the LPLA.  Plaintiff's claims are barred by applicable provisions of the LPLA.

## SEVENTIETH AFFIRMATIVE DEFENSE

Xarelto® possesses no characteristic that renders it unreasonably dangerous in a reasonably anticipated use as defined by the LPLA.

## SEVENTY-FIRST AFFIRMATIVE DEFENSE

La. Rev. Stat. 9:2800.59 applies, and Xarelto® was designed, manufactured, packaged, labeled, sold and distributed in conformity with the then-existing reasonably available scientific and technological knowledge, and, therefore the Janssen Defendants and J&J can have no liability in the premises.

## SEVENTY-SECOND AFFIRMATIVE DEFENSE

Plaintiff's compensatory damages, if any, are limited to those permitted under Louisiana Civil Code Article 2315.

## SEVENTY-THIRD AFFIRMATIVE DEFENSE

Under Louisiana Civil Code Articles 2323 and 2324, the Janssen Defendants and J&J are not liable for more than its own degree of fault, if any, and is not solidarily liable with other persons or entities for damages attributable to the fault of such persons or entities.

## SEVENTY-FOURTH AFFIRMATIVE DEFENSE

Under Louisiana Civil Code Article 2323, Plaintiff's claims are barred or limited by Plaintiff and/or Plaintiff's Decedent's own negligence, carelessness, and/or comparative fault, which was a direct and proximate cause of Plaintiff's Decedent's injuries or damages, if any.

## SEVENTY-FIFTH AFFIRMATIVE DEFENSE

With respect to each and every cause of action, Plaintiff is not entitled to relief to the extent that Plaintiff is unable to prove the identity of the manufacturer and/or supplier of the precise products used by Plaintiff's Decedent.

## SEVENTY-SIXTH AFFIRMATIVE DEFENSE

Plaintiff's demand for punitive damages is barred by the LPLA.

## SEVENTY-SEVENTH AFFIRMATIVE DEFENSE

The Janssen Defendants and J&J hereby give notice that they intend to rely upon any other affirmative defenses pled by any other defendant and not pled by themselves in this action to the extent they do not conflict with the Janssen Defendants and J&J's own affirmative defenses.  The Janssen Defendants and J&J reserve their rights to raise such further and additional defenses as may be available upon the facts to be developed in discovery and under other applicable substance of law.

**WHEREFORE**, the Janssen Defendants and J&J request that Plaintiff's Complaint be dismissed with prejudice, that judgment be entered in favor of the Janssen Defendants and against Plaintiff, and that the Janssen Defendants and J&J be awarded the costs of this action, together with such other and further relief as may be appropriate.

**JURY DEMAND**

The Janssen Defendants and J&J demand a trial by jury on all issues so triable.

Respectfully submitted:

FAEGRE DRINKER BIDDLE & REATH LLP

By: */s/Susan M. Sharko*
Susan M. Sharko
600 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
susan.sharko@faegredrinker.com

Chanda A. Miller
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2700
chanda.miller@faegredrinker.com

IRWIN FRITCHIE URQUHART & MOORE LLC

By: */s/Kim E. Moore*
Kim E. Moore
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
kmoore@irwinllc.com

*Attorneys for Janssen Research & Development, LLC f/k/a Johnson & Johnson Pharmaceutical Research & Development, LLC, Janssen Ortho LLC, Janssen Pharmaceuticals, Inc. f/k/a Janssen Pharmaceutica Inc. f/k/a Ortho-McNeil-Janssen Pharmaceuticals, Inc., and Johnson & Johnson*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on June 17, 2021, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to Liaison Counsel for Plaintiffs and Defendants by operation of the court's electronic filing system and served on all other Plaintiff's counsel via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre-Trial Order No. 17.  A copy of this filing will also be sent by electronic mail to Plaintiff's counsel at the following address:

Damon J. Baldone
Thomas E. Dunn
Damon J. Baldone & Associates
162 New Orleans Blvd.
Houma, LA 70364
Email: damon@baldonelaw.com
Email: thomas@baldonelaw.com

*/s/ Kim E. Moore*

**Kim E. Moore**