UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION : : : THIS DOCUMENT RELATES TO: : : *Nicole Nails Stone, Individually, and as the Executrix of the Estate of Raymond Fulton Nails* Civil Action No. 2:17-cv-05372 : : : | MDL NO. 2592 SECTION L JUDGE ELDON E. FALLON MAGISTRATE JUDGE NORTH |

**THE JANSSEN AND BAYER DEFENDANTS' REPLY
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

The sole basis for Plaintiff's opposition to Defendants' motion for summary judgment is a lawyer-drafted affidavit from Mr. Nails' operating surgeon, Dr. Schwab ("Affidavit"). However, Dr. Schwab repudiated the Affidavit at his deposition, admitting that:

- He had never seen the Xarelto label until it was shown to him by defendants' counsel at his deposition, and he did not rely on any information from Janssen or Bayer in making his treatment decisions regarding Mr. Nails;

- He could not offer an opinion that any Xarelto remained in Mr. Nails' body at the time of his surgery, given that Mr. Nails had stopped taking Xarelto at least seven days before, and for the same reason he could not say that any theoretical amount of Xarelto remaining in Mr. Nails' body could have had any anticoagulation effect at the time of the surgery;

- He was not qualified to offer an opinion regarding whether Xarelto could cause a bleed so long after the last use and testified that he would leave that opinion to "other parties;"

1

- He could not and did not rule out alternative causes for the fatal bleed; and

- He could not offer an opinion that Xarelto caused or contributed to Mr. Nails' fatal bleed.

Dr. Schwab's deposition testimony confirms that there is no genuine issue of material fact regarding medical causation, warnings causation, or the adequacy of the Xarelto label. As a matter of Fifth Circuit law, summary judgment cannot be defeated by his Affidavit, which he fully disavowed at his deposition. *See Hacienda Recs., L.P. v. Ramos*, 718 F. App'x 223, 227, 235 (5th Cir. 2018) (district court did not abuse its discretion in applying "sham affidavit jurisprudence" and not considering, for summary judgment purposes, an affidavit that was contradicted at affiant's deposition taken four days later); *see also Belliveau v. Barco, Inc.*, 987 F.3d 122, 134 (5th Cir. 2021) (sworn statements in declaration could not defeat summary judgment where the declarant's "subsequent deposition testimony directly contradicts his assertions"). Plaintiff does not challenge the Defendants' summary judgment motion on her remaining claims for design defect, manufacturing defect, and non-LPLA claims. Defendants' motion for summary judgment should therefore be granted.

## ARGUMENT

I. **Plaintiff Provides No Evidence that the Xarelto Label Is Inadequate or that a Different or Additional Warning Would Have Changed Mr. Nails' Care.**

Dr. Schwab's testimony plainly establishes that he had never read or even seen the Xarelto label before his deposition.

> Q. Had you at any point ever read the Xarelto label before you treated Mr. Nails in June of 2016?
>
> A. No.
>
> . . .

2

> Q. . . . When was the first time you saw the Xarelto label?
>
> A. You're showing it to me for the first time.
>
> Q. Okay. You had not seen that at any point before today?
>
> A. No.

Ex. N, Deposition of Dr. Donald P. Schwab, Jr. taken on June 30, 2021 ("Schwab Dep.") at 42:1–18; *see also id.* at 43:9-12 ("Q. So as we sit here today, you don't have any – any recollection of ever seeing a Xarelto label before today; is that right? A. Correct."); *id.* at 68:23-69:5 ("What the label exactly says, again, and we've already talked about this, that I – not having read the label, I couldn't tell you."). Nor was Dr. Schwab able to identify anything "prepared by Bayer or Janssen . . . that informed [him] about Xarelto or how long Xarelto needed to be stopped before a surgical procedure." *Id.* at 49:13–23.

Because Dr. Schwab lacks personal knowledge of the contents of the label, he cannot offer evidence concerning the adequacy of the warnings on the label. *See Hall v. Sinn, Inc.*, 102 F. App'x 846, 849 (5th Cir. 2004) (physician who "failed to read the warnings provided [] could not truthfully testify as to whether the warnings were adequate"). In the face of clear and unequivocal testimony by Dr. Stagg, the prescribing physician on the label's adequacy, *see* Defs.' Mem. at 4-6, 15-17, Plaintiff offers no other evidence to support her claim that the label was inadequate. She cannot sustain a failure to warn claim without making this showing. *See* La. Rev. Stat. § 9:2800.57. Defendants are entitled to summary judgment as to Plaintiff's failure to warn claim.

But even if Plaintiff could show that the Xarelto warnings were inadequate, she would still need to demonstrate that the alleged failure to provide an adequate warning was a cause of Mr. Nails' death. *See Stahl v. Novartis Pharma. Corp.*, 283 F.3d 254, 265 (5th Cir. 2002); *Zachary*

*v. Dow Corning Corp.*, 884 F. Supp. 1061, 1065 (M.D. La. 1995); *Willett v. Baxter Int'l, Inc.*, 929 F.2d 1094, 1098 (5th Cir. 1991).  There is no disputed issue of fact for trial on that issue.

Although Plaintiff claims that Dr. Schwab would have delayed his surgery on Mr. Nails if the Xarelto label had relayed the appropriate risks, Dr. Schwab never read the label before performing the surgery.  Regardless of what warning had been included in the label, Dr. Schwab would not have seen it.  Accordingly, Dr. Schwab cannot supply the missing causal link between the alleged inadequacy of the label and Mr. Nails' death.  *See Hall*, 102 F. App'x at 849.

In any event, a warning that Xarelto could have caused bleeding more than 48 hours after a patient stopped using it is irrelevant here where the undisputed record shows that Mr. Nails stopped using Xarelto more than seven days (not 48 hours) before his surgery.  There is no evidence that Xarelto can remain in a patient's system and cause bleeding in that circumstance, as confirmed by Dr. Schwab.  *See* Ex. N, Schwab Dep. at 63:24-65:14.

There also is no dispute about whether a different warning would have prevented Dr. Stagg from prescribing Xarelto to Mr. Nails in the first place.  While Plaintiff argues that Dr. Stagg did not specifically testify he was aware of a risk of bleeding more than 48 hours after Xarelto has been discontinued, Plaintiff has offered no evidence that such a risk exists.  Moreover, Dr. Stagg testified clearly that the Xarelto label informed him adequately of bleeding risks.  *See* Defs.' Mem. at 4-6, 15-17.  Nothing that Plaintiff's counsel "told [him] or 'showed [him] in the deposition [nor] anything [he] learned since May 2016 caused [him] to reconsider [his] decision to prescribe Xarelto for Mr. Nails."  Ex. A, Stagg Dep. 116:16–21; *see also id.* 39:19-22; 117:4-7.

Plaintiff also argues that Nurse Practitioner Windham was "equivocal" about whether Mr. Nails or someone else in his room informed her that he had discontinued Xarelto seven days before his surgery.  But even if the history recorded by Ms. Windham came from someone other

4

than Mr. Nails, she trusted that person as a reliable source and Dr. Schwab testified unequivocally (and without contradiction) that Mr. Nails stopped using Xarelto at least seven days before his surgery. Ex. N, Schwab Dep. at *Id.* at 22:25–23:9. Ms. Windham took the steps she deemed necessary to ensure that Mr. Nails had discontinued his Xarelto before the surgery; Plaintiff has identified no way in which a different warning would have caused her to act differently.

Accordingly, Plaintiff's failure to warn claim fails because she cannot identify any healthcare provider whose care of Mr. Nails would have changed had the Xarelto label contained a different or stronger warning. Plaintiff's express warranty claim should be dismissed for the same reason as her failure to warn claim. There is no evidence of an express warranty that was given, let alone breached, given that Dr. Stagg believed the risks were adequately disclosed and Dr. Schwab received no information from Bayer and Janssen.

## II. Plaintiff Provides No Evidence Xarelto Was the Medical Cause of Mr. Nails' Alleged Injuries.

Plaintiff fails to offer any admissible evidence that would support medical causation. The only "evidence" that Plaintiff submitted to support medical causation came from Dr. Schwab's Affidavit. However, Dr. Schwab testified unequivocally that he is not able to say to a reasonable degree of medical certainty that Mr. Nails' bleed and death were related to Xarelto:

> Q. So again, it -- is Xarelto, considering all of the other history and medications that Mr. Nails was taking, merely one of the possible reasons in your mind for this noncorrectable surgical bleeding he experienced?
>
> A. Correct.
>
> Q. Are you able to say to a reasonable degree of medical certainty that Xarelto was the cause in fact of the noncorrectable surgical bleeding in Mr. Nails' case, given these other possibilities?
>
> A. No.

Ex. N, Schwab Dep. 67:21-68:6. And again:

> Q. Since eight days had passed since he last used Xarelto and Effient before you began the surgery on June 14th, do you have any scientific basis to say to a reasonable degree of medical certainty that Xarelto played any role at all in his excessive bleeding during the surgery?
>
> A. Again, I'm going to go back to my original statement, which is that there was nonsurgically correctable bleeding at the time of surgery that may or may not have been caused by any of the above medicines that the patient was on. ***Could it have been Xarelto? I can't say yes or no. It's not my place.*** I just know that the bleeding he had was not a surgical bleed.

*Id.* at 77:3-21 (emphasis added); *id.* at 65:1–4 ("Could have Xarelto contributed to it. That's going to be ultimately for other parties to decide and debate.").

Not only was Dr. Schwab unable to say that Xarelto caused Mr. Nails' fatal bleed, but he was also unable to say that Xarelto could have caused Mr. Nails' bleed. When asked for the bases to support his Affidavit's "opinion that there is a risk of uncontrollable bleeding from Xarelto in patients who have stopped taking Xarelto 48 hours or more before surgery," Dr. Schwab admitted that "I don't have any – any – any per se facts to rely upon on that at all." *Id.* at 63:24-65:14.

Further, Dr. Schwab confirmed what is now the undisputed evidence from the medical records, the health care providers and Mr. Nails that Mr. Nails had stopped using Xarelto seven days or more before his surgery. *Id.* at 22:25–23:9. Given that undisputed fact, Dr. Schwab does not know whether there was *any* Xarelto in Mr. Nails' system when he began surgery on June 14, 2016 (more than a week later), let alone enough to have any effect on his coagulation profile.

> Q. Do you know if there was any Xarelto actually present in Mr. -- Mr. Nails' system when you began the surgery on him on June 14, 2016?
>
> A. No.
>
> . . .

6

> Q. . . . Even if somehow there was some amount of Xarelto left in Mr. Nails' system when you operated on June 14th, do you know if it was at a level where there was sufficient Xarelto to have an effect on his coagulation profile?
>
> A. I do not.

*Id.* at 75:10-13; 76:7-15; *see also* Ex. A., Stagg Dep. at 75:2-17. There is no basis to infer the presence of Xarelto in his system to explain the bleeding because Dr. Schwab has seen patients bleed to "the same extent as Mr. Nails that's uncontrollable" even when they have not been on blood thinners or anticoagulants. *Id.* at 102:15-103:2.

In short, Dr. Schwab cannot say that Xarelto (1) caused Mr. Nails' bleed, (2) could have caused Mr. Nails' bleed, (3) remained in Mr. Nails' system when Dr. Schwab operated or, (4) if it did, that any remaining Xarelto had any anticoagulant effect. Plaintiff has therefore failed to create a genuine dispute of material fact as to either specific or general medical causation.

### III. The Schwab Affidavit Does Not Compel a Different Result.

For the reasons set forth above, Dr. Schwab's testimony fails to establish a genuine issue of material fact for trial. In opposition to summary judgment, Plaintiff rests on Dr. Schwab's Affidavit signed before his deposition on March 23, 2021, five years after he performed the June 14, 2016 surgery during which Mr. Nails experienced a fatal hemorrhage. *See* Ex. G, Terrebonne Gen. Med. Center Discharge Summary; Schwab Aff. at ¶ 3. The Schwab Affidavit (i) makes representations about the Xarelto label's adequacy and about how Dr. Schwab purportedly would have acted if the label had provided a different warning (¶¶ 9, 13–16) despite Dr. Schwab's admission that he never read or saw the label; (ii) states that Xarelto caused Mr. Nails' fatal bleed (¶ 12) despite Dr. Schwab's testimony that he cannot say that to a medical certainty; and (iii) assumes that Xarelto presents a risk of bleeding 48 hours or more after a patient stops using it

7

(¶ 11) despite Dr. Schwab's admission that he has no facts to support that. The Court should not consider the Schwab Affidavit, which is directly contradicted by his deposition testimony.

It is well-settled Fifth Circuit law that this Court can, and should, disregard Dr. Schwab's Affidavit based on his later, contradictory deposition testimony during which he repudiated the opinions supposedly offered in his Affidavit. *See Hacienda Recs., L.P. v. Ramos*, 718 F. App'x 223, 227, 235 (5th Cir. 2018) (district court did not abuse its discretion in applying "sham affidavit jurisprudence" and not considering, for summary judgment purposes, an affidavit that was contradicted at affiant's later deposition); *see also Belliveau v. Barco, Inc.*, 987 F.3d 122, 134 (5th Cir. 2021) (sworn statements in declaration could not defeat summary judgment where the declarant's "subsequent deposition testimony directly contradicts his assertions").

Dr. Schwab's repudiation of the Affidavit was complete. Dr. Schwab testified that Plaintiff's counsel drafted the Affidavit without any input from him. *Id.* at 30:23-31:4; 32:1-7; 32:20-23. He executed it after spending "minimal" time looking at it, noting that he changed "a couple things" but "didn't really go over it that well and signed it, basically." *Id.* at 32:24-33:8; 31:15-25; 32:14-19; 65:9–10 ("I can tell you that, again, I've read this [Affidavit] cursorily.").

Even if the Court considers the Schwab Affidavit, it does not create a genuine dispute as to a material fact because the "opinions" contained in it are inadmissible under Federal Rule of Evidence 702. An affidavit submitted in opposition to a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). That's not the situation here. First, Dr. Schwab is not qualified to opine on whether Xarelto caused Mr. Nails' bleed or the adequacy of the Xarelto label. While Plaintiff's counsel offered Dr. Schwab as an expert witness, Dr. Schwab disavowed such a role. Ex. N, Schwab Dep. at 37:5-

8

10; 38:13-17.  He does not claim to be an expert in pharmacology generally or as to Xarelto specifically and, while agreeing that it would be important to consider the pharmacologic properties of any medication before offering opinions of the medication's effects, admitted that he has never reviewed any literature or data on Xarelto's pharmacologic properties.  *Id.* at 37:5-10; 61:7-16; 60:9-11; 61:1-6.  Indeed, he has never even prescribed Xarelto for one of his patients or read the label.  *Id.* at 41:22-25; 42:5-15; 43:9-12.  Nor does Dr. Schwab claim to be an expert on pharmaceutical labeling.  *Id.* at 61:23–62:1.  He has never worked for FDA, served on an FDA advisory committee, drafted pharmaceutical labeling, studied FDA labeling regulations, or been qualified as an expert on pharmaceutical labeling.  *Id.* at 62:2–22.  He is plainly unqualified to offer opinions on Xarelto's bleeding risks or the adequacy of Xarelto's label.  Fed. R. Evid. 702(a).

Moreover, if Dr. Schwab had tried to offer such an opinion, it would be inadmissible under Federal Rule of Evidence 702 as an unreliable differential diagnosis.  First, his testimony shows that he should not have included Xarelto in the differential at all because, as noted above, he cannot "rule it in" as a possible cause of Mr. Nails' bleed.  *See Sims v. Kia Motors of Am. Inc.*, 839 F.3d 393, 401–02 (5th Cir. 2016) ("Other courts have explicitly cautioned that merely 'ruling out' other possible explanations is not enough to establish reliability; experts must also have some scientific basis for 'ruling in' the phenomenon they allege."); *Johnson v. Arkema, Inc.*, 685 F.3d 452, 469 (5th Cir. 2012) ("The district court did not abuse its discretion in excluding Dr. Grodzin's causation opinion because, irrespective of the differential diagnosis, Dr. Grodzin is unable to satisfy the general causation requirement.").  Second, Dr. Schwab failed to rule out other possible causes for Mr. Nails' bleed that he conceded should be included in a differential diagnosis, including his use of antiplatelet medications and his severely diseased blood vessels.  *Id.* at 90:4-17; 91:22-92:11.  *See* Fed. R. Evid. 702; *see also McNabney v. Laboratory Corp. of Am.*, 153 F. App'x 293, 295 (5th

9

Cir. 2005) ("causation expert['s] . . . failure to consider and exclude other potential causes of McNabney's injury before offering an opinion renders his testimony unreliable."). Indeed, in response to questioning from Plaintiff's counsel, Dr. Schwab testified that uncontrolled bleeds like Mr. Nails had occur even absent the use of anticoagulant medicines:

> Q. . . . [H]ave you even seen a patient just bleed and not have been on blood thinners or anticoagulant?
>
> [A.] We have bleeding issues on patients who are not on anticoagulants.
>
> Q. To the extent -- as the same extent as Mr. Nails that's uncontrollable?
>
> A. Yes.

Ex. N, Schwab Dep. at 102:15–103:2.

Accordingly, the Schwab Affidavit does not defeat summary judgment.

### IV.     Plaintiff Does Not Challenge the Bases for Summary Judgment on Her Other Claims.

Plaintiff does not dispute that she lacks evidence to support her design defect and manufacturing defect claims. *See* Defs.' Mem. at 22–23. Nor does Plaintiff dispute that her claims for strict liability, negligence, negligent misrepresentation, breach of implied warranty, fraud, and violation of consumer protection statutes are precluded by the exclusivity provision of the LPLA, or that her survival, wrongful death, and loss of consortium claims are derivative of her LPLA claims. *See* Defs.' Mem. at 24. In addition, the absence of medical causation is fatal to every claim. Accordingly, the Court should grant summary judgment on those claims as well.

### CONCLUSION

For all the foregoing reasons, Defendants' motion for summary judgment as to all of Plaintiff's claims should be granted and the case dismissed with prejudice.

FAEGRE DRINKER BIDDLE & REATH LLP

By: */s/Susan M. Sharko*
Susan M. Sharko
600 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
susan.sharko@faegredrinker.com

Chanda A. Miller
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2700
chanda.miller@faegredrinker.com

IRWIN FRITCHIE URQUHART & MOORE LLC

By: */s/Kim E. Moore*
Kim E. Moore
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
kmoore@irwinllc.com

*Attorneys for Janssen Research & Development, LLC f/k/a Johnson & Johnson Pharmaceutical Research & Development, LLC, Janssen Ortho LLC, Janssen Pharmaceuticals, Inc. f/k/a/ Janssen Pharmaceutica Inc. f/k/a Ortho-McNeil-Janssen Pharmaceuticals, Inc., and Johnson & Johnson*

ARNOLD & PORTER KAYE SCHOLER LLP

By: */s/Andrew K. Solow*
Andrew K. Solow
Steven Glickstein
250 West 55th Street
New York, NY 10019-9710
Telephone: (212) 836-8485
andrew.solow@arnoldporter.com
steven.glickstein@arnoldporter.com

William Hoffman
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
william.hoffman@arnoldporter.com

BRADLEY ARANT BOULT CUMMINGS LLP
Lindsey C. Boney IV
One Federal Place, 1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8914
lboney@bradley.com

CHAFFE MCCALL L.L.P.

By: */s/John F. Olinde*
John F. Olinde
1100 Poydras Street, Suite 2300
New Orleans, LA 70163
Telephone: (504) 585-7241
olinde@chaffe.com

*Attorneys for Bayer Healthcare Pharmaceuticals, Inc. and Bayer Pharma AG*

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that on July 16, 2021, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Liaison Counsel for Plaintiffs and Defendants by operation of the court's electronic filing system and served on all other Plaintiff's counsel via MDL Centrality, which will send notice of electronic filing in accordance with the procedures established in MDL 2592 pursuant to Pre-Trial Order No. 17. A copy of this filing will also be sent by electronic mail to Plaintiff's counsel at the following address:

    Damon J. Baldone
    Thomas E. Dunn
    Damon J. Baldone & Associates
    162 New Orleans Blvd.
    Houma, LA 70364
    Email: damon@baldonelaw.com
    Email: thomas@baldonelaw.com

                                              */s/ Kim E. Moore*
                                              **Kim E. Moore**