UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | * * * * * * * * | MDL 2592<br><br>SECTION L<br><br>JUDGE ELDON E. FALLON<br><br>MAG. JUDGE NORTH |

**THIS DOCUMENT RELATES TO:**

*Sophie Hu et al. v. Janssen Pharmaceuticals et al*
CA# 2:21-cv-002240

## ORDER AND REASONS

Before the Court is *pro se* Plaintiff Sophie Hu's *ex parte* Motion for Appointment of Counsel. R. Doc. 18052. Considering Plaintiff's motion, the applicable law, and the record, the Court now rules as follows.

I.   **BACKGROUND**

This matter arises from the Xarelto Multidistrict Litigation (MDL 2592) that the Judicial Panel on Multidistrict Litigation ("the MDL Panel") that has been consolidated in this Court for pretrial proceedings. Plaintiff Sophie Hu claims that her mother, Plaintiff Fumian Zhao, suffered damages from the manufacture, sale, distribution, and/or use of the medication known as Xarelto, an anti-coagulant used for a variety of blood-thinning medical purposes. Plaintiff contends that her mother experienced a severe headache and vomited on August 2, 2020 and had to be taken via ambulance to the Stanford Hospital Emergency Department. R. Doc. 1 at 3 (case no. 21-2240). Plaintiff Hu alleges that a "head CT" scan conducted of her mother's head and that Zhao was "diagnosed with and treated for cerebellar hemorrhage with posterior decompression and drain placement." *Id.* At some point, Ms. Zhao was administered Xarelto "to stop the uncontrollable

brain bleeding." *Id.* at 4. Hu also alleges that the "excessive bleeding was caused by Xarelto" and that her mother's "prothrombin time (PT) values were indicative of OVER anti-coagulation." *Id.* at 4.

Zhao "was admitted to the ICU, neuro cric units, transferred back to ICU, hospitalized" from August 2-20, 2020. *Id.* She was connected to a gastric tube that was used to feed her and deliver medicine. *Id.* The Complaint alleges that Zhao was brought to the ER on August 26, 2020 "due to dangerous vomiting and aspiration of gastric tube feeds." *Id.* Zhao was again hospitalized from August 28-September 18, 2020 and October 1-5, 2020 "due to severe complications." *Id.*

During her time in the hospital, Zhao suffered excruciating pain and jaw dislocation. She was treated in an operating room for bilateral jaw dislocation on November 6, 13-14, 2020; December 14, 2020; March 5, 8, 15, 27; April 20; and July 3, 2021. *Id.*

Zhao survived her hospitalizations but "her recovery has been extremely unbearable." *Id.* Plaintiffs allege Zhao was "neglected and possibly abused" while in the hospital. *Id.* Zhao not regained "basic survival functions" like swallowing and breathing and "is still not awake, still not verbal nor following commands." *Id.*

Plaintiff allege five claims against Defendants Janssen Pharmaceuticals[1] and Bayer: (1) failure to warn patients and physicians of serious bleeding risks from Xarelto; (2) failure to ensure safe monitoring by not advising patients and physicians to complete regular blood clot tests, such as prothrombin time; (3) failure to properly test Xarelto; (4) failure to warn and ensure safe use in geriatric patients; (5) failure "to optimal drug therapeutic window" because the 24-hour time period it takes for the drug "to clear" makes it a "source to trigger sever bleeding, especially for elderly patient[s] with prolonged clearance." *Id.* at 5-6.

---

[1] Plaintiffs incorrectly referred to Defendant as "Janssen Pharmaceuticals (Johnson and Johnson)". R. Doc. 1 at 5.

Plaintiffs filed their Complaint in the Northern District of California, the judicial district where they reside. *Id.* at 1, 3. The MDL Panel then transferred the matter to this Court.

## II.     PRESENT MOTION

Plaintiff Sophie Hu filed a *pro se* "Motion For Counsel Appointment" requesting that the Court appoint counsel for her mother because Ms. Hu has been unable to find an attorney to represent her and her mother. R. Doc. 18052.

## III.     DISCUSSION

In *Ulmer v. Chancellor*, the Fifth Circuit set forth a four-part test that district courts must apply in ruling on request to appoint counsel:

> (1) the type and complexity of the case;
> 
> (2) whether the indigent is capable of adequately presenting his case;
> 
> (3) whether the indigent is in a position to investigate adequately the case; and
> 
> (4) whether the evidence will consist in large part of conflicting testimony so as to require skill in the presentation of evidence and in cross examination.[23]

691 F.2d 209, 213 (5th Cir. 1982). A district court should also consider "whether appointed counsel would aid in the efficient and equitable disposition of the case." *Id.* Furthermore, "district courts should make specific findings on each of the *Ulmer* factors." *Jackson v. Dallas Police Dep't,* 811 F.2d 260, 262 (5th Cir. 1986). Significantly, "[b]ecause every litigant benefits from the assistance of counsel, the burden is on a plaintiff to demonstrate that he is unique as compared to other *pro se* litigants, and will have particular difficulty in investigating and presenting his case." *James v. City of Deer Park*, No. 4:18-CV-646, 2018 WL 11353746, at *2 (S.D. Tex. June 7, 2018).

Applying the *Ulmer* factors here, the Court finds that this case, although involving a certain level of complexity given scientific and medical issues, is not exceptional as it concerns

issues that have been briefed and analyzed in previous cases in this MDL. *See Lazard v. Gusman*, No. CIV.A. 14-2860, 2015 WL 5882984, at *2 (E.D. La. Oct. 8, 2015). Turning to the second and third factors, the Court finds that Ms. Hu has done a "credible job in presenting motions and in filing supporting papers on behalf" of her and her mother's case. *Jackson*, 811 F.2d 260, 262 (5th Cir. 1986). As to the final factor, it is unclear at this time whether the evidence would consist in large part of conflicting testimony, but much of the evidence will likely consist medical records relating to the drug Xarelto and records concerning Plaintiff's medical condition. Thus, the Court finds that this factor is neutral or weights slightly in favor of appointing counsel. On balance, the *Ulmer* factors weigh against appointing counsel.

The Court sympathizes with the difficulties Plaintiff faces in proceeding *pro se*; her task is by no means an easy one. Nonetheless, the Court finds that the challenges Plaintiff must navigate are not materially more severe than those experienced by a typical *pro se* litigant. *See James*, No. 4:18-CV-646, 2018 WL 11353746, at *2. Because Plaintiff has not shouldered her burden to show entitlement to court-appointed counsel under the relevant considerations, Plaintiff's motion must be denied.

## IV.    CONCLUSION

For these reasons,

**IT IS ORDERED** that Plaintiff Sophie Hu's *pro se* "Motion For Counsel Appointment," R. Doc. 18052, is **DENIED**.

New Orleans, Louisiana, this 24th day of May, 2022.

*[signature]*
**UNITED STATES DISTRICT JUDGE**